AMBER L. ECK (SBN: 177882)
HELEN I. ZELDES (SBN: 220051)
ALREEN HAEGGQUIST (SBN: 221858)
ZELDES & HAEGGQUIST, LLP
625 Broadway, Suite 906
San Diego, CA 92101
Telephone:  (619) 342-8000
Fax:  (619) 342-7272
ambere@zhlaw.com
helenz@zhlaw.com
alreenh@zhlaw.com

ROBBINS GELLER
RUDMAN & DOWD LLP
RACHEL L. JENSEN (211456)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: (619) 231-1058
Fax: (619) 231-7423
rjensen@rgrdlaw.com

Attorneys for Plaintiff and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF,  on Behalf of Herself and All Others Similarly Situated, | Case No. '10 CV 0940 IEG WVG |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | |
| TRUMP UNIVERSITY, LLC,  a New York Limited Liability Company, and DOES 1 through 50, inclusive, | JURY TRIAL DEMANDED |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiff Tarla Makaeff ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Trump University, LLC and DOES 1 through 50, inclusive (collectively "Defendant," "Trump University" or "Trump"). Plaintiff hereby alleges, on information and belief, except as to those allegations which pertain to the named Plaintiff, which allegations are based on personal knowledge, as follows:

## NATURE OF THE ACTION

1.     Trump University markets itself as a University driven by the mission to "train, educate and mentor entrepreneurs on achieving financial independence through real estate investing." It is anything but. In fact, rather than serving its students as a university or college, Trump University is more like an infomercial, selling non-accredited products, such as sales workshops, luring customers in with the name and reputation of its founder and Chairman, billionaire land mogul Donald J. Trump.   Trump and his so-called University promise "mentorships," urging consumers that it's the "next best thing" to being Donald Trump's next "Apprentice." But as class members quickly find out, all Trump University provides is empty promises. The primary lesson Trump University teaches its students is how to spend more money buying more Trump seminars.

2.     Plaintiff and class members attended Trump University's real estate investing classes, were promised a "complete real estate education," a "one year apprenticeship," a one-on-one mentorship, practical and fail-safe real estate techniques, a "power team" consisting of real estate agents, lenders, personal finance managers, property managers and contractors, and were assured that although the seminars were costly, they would make the money back in their first real estate deal, and could make up to tens of thousands of dollars per month or more.  Plaintiff and class members did not receive what they bargained for.

3.     Instead of a complete real estate education, students merely received an "infomercial" pushing additional seminars or workshops they were told they would need to take to succeed. The "one year apprenticeship" they were promised was actually just a 3-day seminar; the one-on-one year-long mentorship consisted of no practical insights and no mentorship, but rather

1

1    excursions to Home Depot and "mentors" who either recommend real estate deals that they stood to

2    benefit from financially, raising a conflict of interest, or quickly disappeared and failed to return

3    calls.

4         4.    Trump University representatives also told students during the 3-day seminar to

5    raise their credit card limits 2-4 times during the break for "real estate transactions," and had

6    students prepare detailed financial statements, presumably for real estate purchases, when in fact,

7    Trump's real reason for this was to assess how much money each student had to spend on the next

8    Trump seminar, and to persuade the students to use their increased credit limit to purchase the

9    Trump Gold Program for $34,995.

10        5.    Plaintiff thus brings this class action on behalf of herself and all other similarly

11   situated consumers who purchased seminars, workshops, mentorships, retreats and/or programs

12   (collectively "Seminars") from Trump University throughout the United States, asserting claims

13   under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL" or

14   "§17200"); the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"); the False

15   Advertising Law, Cal. Bus & Prof. Code § 17500 *et seq.* ("FAL" or "17500"); Breach of Contract;

16   Breach of the Covenant of Good Faith and Fair Dealing; Money Had and Received; Negligent

17   Misrepresentation; Fraud; and False Promises.  Plaintiff seeks damages and equitable relief on

18   behalf of the Class, which relief includes, but is not limited to, the following: refunding Plaintiff

19   and class members the full amount paid for Trump University Seminars; an order enjoining Trump

20   from falsely marketing and advertising its Seminars; costs and expenses, including attorneys' fees

21   and expert fees; and any additional relief that this Court determines to be necessary to provide

22   complete relief to Plaintiff and the Class.

23                        **JURISDICTION AND VENUE**

24        6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367,

25   because the Plaintiff resides in California and is therefore diverse from the Defendant Trump

26   University who resides in New York. The Court has supplemental jurisdiction over Plaintiff's state

27   law claims pursuant to 28 U.S.C. §1367(a).

28

CLASS ACTION COMPLAINT

7.      This Court also has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named Plaintiff and every member of the Class, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and members of the Class reside across the United States and are therefore diverse from Trump University.

8.      This Court has personal jurisdiction over Trump University because it is authorized to conduct business in California, it has significant minimum contacts with this state, and/or Trump University otherwise intentionally availed itself of the laws and markets of California through the promotion, marketing, and advertising of its Seminars in this state.

9.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper under 28 U.S.C. §1391(a)(3), because Trump University is subject to personal jurisdiction in this District as it transacts a substantial amount of its business in this District. Indeed, Trump University has offered and continues to offer numerous Seminars in San Diego, California. Plaintiff is filing concurrently herewith an affidavit stating facts showing that this action has been commenced in a proper county pursuant to Cal. Civ. Code § 1780(c).

**PARTIES**

10.      Plaintiff Tarla Makaeff resides in Corona Del Mar, California.  During the class period, in early August, 2008, Plaintiff was introduced to Trump University through a friend who attended the free introductory seminar and invited her to attend the three-day Trump University "Fast Track to Foreclosure Training" workshop for approximately $1,495.00.  During the three-day workshop, Plaintiff was told to raise her credit card limits so she could enter into "real estate transactions."  However, at the end of the session, Trump University told Plaintiff and the other Seminar attendees to use that credit to purchase an additional Trump "Gold" seminar for $34,995.  Based on Trump University's numerous misrepresentations, on or about August 10, 2008, Plaintiff enrolled in Trump University's "Trump Gold Elite" Program ("Trump Gold Program") for $34,995, plus the variable APR finances charges, interest fees, and late fees she has to pay her credit card

1 | company. Plaintiff ultimately spent nearly *$60,000* on Trump University Seminars, and/or
2 | seminars related to or endorsed by Trump University, over the course of one year.

3 |     11.    Defendant Trump University, LLC is a New York limited liability company
4 | registered in New York. Its executive offices and company headquarters are located in New York,
5 | New York. Donald J. Trump is the chairman of Trump University, as well as the chairman and
6 | president of The Trump Organization. Trump University conducts a substantial amount of business
7 | throughout the State, including marketing, advertising, and hosting Seminars in San Diego County
8 | and all over California.

9 |     12.    The true names and capacities of defendants sued herein as Does 1 through 50,
10 | inclusive, are presently unknown to Plaintiff who therefore sues these defendants by fictitious
11 | names. Plaintiff will amend this Complaint to show their true names and capacities when they have
12 | been ascertained. Each of the Doe Defendants is responsible in some manner for the conduct alleged
13 | herein.

14 | **DEFENDANT'S UNLAWFUL CONDUCT**

15 |     13.    Trump University is an "education" company owned and founded by real estate
16 | tycoon Donald J. Trump, Sr., as part of the Trump Organization. It offers courses in real estate, asset
17 | management, entrepreneurship and wealth creation. It is not an accredited University.

18 |     14.    Trump University lures consumers in with a free introductory Seminar, which turns out
19 |
20 | to be nothing more than an infomercial used to "up-sell" and persuade students to purchase its $1,495
21 | "one year apprenticeship" course. If students purchase the $1,495 course, Trump University continues
22 | using misleading, fraudulent and predatory practices to convince students to purchase Trump
23 | University's $35,000 "Gold" course. Even then, after investing nearly $36,500, students still do not
24 | receive the information or training they were promised. The three "tiers" to the Trump University
25 | program are as follows:
26 |
27 |
28 |

4

CLASS ACTION COMPLAINT

**First tier: the Free Introductory Course**

15.     Trump University advertises extensively in local media and online, such as online local newspapers, on Facebook, and radio for "Free" introductory courses, which take place in cities across the country.  In marketing the Trump University program, Donald Trump claims: "I'm going to give you 2 hours of access to one of my amazing instructors AND priceless information ... all for FREE."[1]  An advertisement in the L.A. Times, for example, quoted Donald Trump as saying that "investors nationwide are making millions in foreclosures . . . and so can you!" It also promised two hours of "priceless information . . . all for free."[2]  Other advertisements urged consumers to "Learn from the Master" – Donald Trump," that "It's the next best thing to being his Apprentice," and told consumers that they would learn "insider success secrets from Donald Trump."

  

16.     At the free seminar, prospective customers are greeted by a large screen projector and two tall banners with Donald Trump's photo on them.  The speaker, who is following a Trump

---

[1] *See L.A. Times, "Trump Spins in Foreclosure Game,"* by David Lazarus, Dec. 12, 2009, http://www.latimes.com/business/la-fi-lazarus12dec12,0,7835610.column

[2] *See L.A. Times, "Trump's a grump about column on his 'priceless' tips"* by David Lazarus, Dec. 16, 2009, http://www.latimes.com/business/la-fi-lazarus16dec16,0,1670633.column.  When L.A. times reporter David Lazarus attended the Pasadena Hilton Trump seminar, he: "learned by attending the seminar, the event was a two-hour sales pitch for a three-day workshop that would cost people $1,495." *Id.*

[3] Screen shot from http://www.trumpurealestate.com/market-Phoenix.html?cid=726078 (last updated 2/3/2010).

[4] Screen shot from http://www.trumpuniversity.com/ (last updated 2/3/2010).

[5] Screen shot from http://www.trumptactics.com/ (last updated 2/3/2010).

5

University script, begins addressing the audience with scare tactics. A large portion of the audience is typically comprised of senior citizens, and the speaker plays on their fears, asking "How many of you lost a lot of your 401k investment in the market? How many of you are retired or want to retire? How many of you want to leave a legacy or property to your kids?"

17.    The speaker induces the audience to trust in the Trump name and "family" by walking through the history of the Trump Organization and Donald Trump's "humble beginnings." He tells the audience that 76% of all millionaires are created from real estate – that "anyone can do it," and that "it's not easy, but it's simple if you know what you're doing, and we'll teach you what you need to know." He states that the mission of Trump University is to "train, educate and mentor entrepreneurs on achieving financial independence through real estate investing."

 

18.    The speaker emphasizes that on the television show, "The Apprentice," Mr. Trump could only work with one person a year, so he created this University – not to make money for himself, but to teach others. With this apprenticeship program, the speaker claims, "Mr. Trump takes you through an entire apprenticeship for one year." The speaker emphasizes that ***"Trump University is owned, lock, stock and barrel by Mr. Trump – it's his 'baby,' his company***, designed to help him accomplish his goal of leaving a legacy." The presentation plays on consumers' reliance on the Trump name, Trump's Apprentice television show, the Trump reputation, Trump's wealth and Trump real estate expertise:

---

[6] These and the following slides are from the free online introductory Trump seminar.

CLASS ACTION COMPLAINT




19.     The presentation claims that the real estate transactions taught are safe and conservative. The speaker encourages members of the audience, including the elderly, to cash out their 401Ks so they can supposedly make a higher return. He tells them, "this is by the numbers, and the numbers don't lie. This isn't speculative. It's a good idea." These strategies will make you money – they are time tested strategies that have been in the Trump family for over 75 years. You can allegedly pay off your credit cards, pay off your cars, fully fund your retirement and send your kids to college.




20.     The whole presentation is essentially an "infomercial," designed to get members of the audience to sign up for the so-called one year Apprenticeship Program, which is purportedly going to be "A Comprehensive Real Estate Education." However, what the "one year apprenticeship" program actually turns out to be is merely a three-day workshop plus a phone number to call a "client advisor" for $1,495.

21.     Trump University promises "12 months of training," because "there's no shortcut to success." They also promise mentors who will be available for a *full year*. *"Other people don't have anyone to call, but you've got Trump. You'll call 40 Wall Street [Trump University], and they'll walk you through it."* They claim that after this seminar, "you're going to be walking on

CLASS ACTION COMPLAINT

Cloud 9 because you get it; you know so much." The speaker says you can attend the first day and then decide if the course is right for you. Your "Satisfaction is 100% Guaranteed." The speaker even says he will give you his personal email; he wants that connection with you, so you can become part of the Trump family.

**Second Tier: the 1-year "apprenticeship" (actually a three-day infomercial)**

22.     **One Year Apprenticeship** – Defendant describes the second tier as a one year "apprenticeship" that allegedly provides a, "comprehensive real estate education." In actuality, it is merely a three-day infomercial to sell more Trump products. Trump University tells students at the free seminar that this one-year apprenticeship is "all you need." However, rather than teach students actual real estate techniques and how to fill out the necessary contracts and forms (as promised in the free seminar), the entire "apprenticeship" is a three-day long "infomercial" to "up-sell" students to buy the Trump Gold Program for $34,995 to get a "full education."

23.     **Inducing students to increase credit card limits** - During the seminar, the speakers demand that students raise their credit card limits by "4 times" their current limits on class breaks so that they can be ready to immediately purchase property. The speakers also ask each student to fill out a detailed financial statement, presumably for real estate investment purposes, and personally sit down with each student to review and assess their financial situation under the guise of helping them - -- in fact, they assess how much money each student has to spend on the next Trump seminar. At the end of the workshop, Trump's real reason for urging attendees to extend their credit limits becomes clear: the Trump representatives ask the students to use their increased credit to purchase the next level of buy-in, the Trump University "Gold program," for $34,995.

24.     Trump representatives don't tell students that they are likely to incur finance charges, interest fees and late fees by charging this expensive seminar on their credit cards. Trump also does not tell students that by increasing their credit limits, they could damage their credit scores. Trump representatives also never inform students that by "maxing out" their credit cards, their credit scores

CLASS ACTION COMPLAINT

could drop even more significantly.   In fact, when Plaintiff "maxed out" her credit card, her previously high credit score immediately dropped.

25.   **Mentorship** - Trump University promises students who purchase the $1,495 seminar an "entire year apprenticeship" --"one full year of expert, interactive support" where "you will be trained properly by the best."  But in actuality, students get only a three-day seminar and an 800-telephone number to call.  Trump does not provide the details, support or training the students need to actually engage in the real estate transactions mentioned.   Nor does it provide any mentorship.

26.   **Illegal practices** – Furthermore, the real estate practices touted by Trump University during the seminar include transactions that are illegal in certain states, including California, such as posting anonymous "bandit signs."  These are signs placed by the roadway that mimic yellow and black road warning signs and say, "WE BUY HOUSES, 619-222-2222."

27.   **Conflict of interest** – As part of the $1,495 seminar, Trump University promises to introduce students to a Trump "power team" of mentors, real estate agents, brokers, contractors, attorneys and accountants, who are supposedly there to help the student make money in real estate.  However, these Trump "mentors" and power team members often guide the students toward deals in which they have a personal financial interest at stake – creating a severe conflict of interest, so that the mentors profit while the student does not.

28.   **Money back guarantee** – students consistently complain that they have timely requested refunds under Trump University's money-back guarantee, but that Trump University failed to refund them their money.

**Third tier – the $35,000 Mentorship Program**

29.   By the end of the $1,495 seminar, Trump University did not teach students practical real estate techniques.  Instead it merely gives them a high-pressure sales pitch to purchase another program from Trump: the $34,995 "Trump Gold Program." Plaintiff and other students were clearly

9

CLASS ACTION COMPLAINT

reluctant to spend approximately $35,000 more on an additional program, after already paying Trump nearly $1,500.  However, Plaintiff and the other students relied on the speakers' claims that they were "guaranteed success" if they followed the techniques they would learn in the Gold seminar.

30.     Trump University's representatives told Plaintiff and class members that with the real estate mentorship they would receive in the Trump Gold Program, they could create a real estate investing business that could earn up to tens of thousands of dollars of monthly income, and potentially much more.

31.     The same misrepresentations regarding the "on-going apprenticeship," "hands-on mentorship," conflicts of interest with the mentors and "power team," teaching of illegal real estate practices, and failure to refund money timely requested also occurred during the Trump Gold Program.

32.     **Mentorship –** One of the biggest selling points of the Gold Program was the promise of a three-day Field Mentorship with real estate experts and investors.  Trump University represented to Plaintiff and class members that the value of this mentorship alone was worth $25,000.  *See* Ex. A (Contract for the Gold Program).  Plaintiff and class members were told that they would receive priceless insight and information from these mentors who were experts in the real estate industry, who would personally teach them what they would need to know.  Instead, during the 3-day mentorship, students typically spent two days looking at real estate properties (which they could have done with a realtor for free;  and were offered no unique insight or guidance), a half day at a local Home Depot and lunch, and an hour or so discussing numbers.  Mentors spent little to no time discussing the contracts essential to the real estate transactions mentioned in the seminar. After the 3-days, the mentors typically quickly disappeared, in complete contradiction to what was promised: an ongoing mentor who would personally assist the student for an entire year.

33. During the Gold Program, there was still constant up-sell pressure to purchase various other Trump University affiliate programs and products, varying in price from $495 to $9,995.

34. Plaintiff and the other students in her class who signed up for the $34,995 seminar were told that deals would now be coming their way via e-mail and that "these deals are starting to POUR IN NOW." However, few, if any deals came in, and those that did provided only minimal positive cash flow, generally not worth enough to make the deal worthwhile, and certainly not the "tens of thousands of dollars per month" promised by Trump.

35. Trump University promised students that it would give them the contracts they needed to conduct various complex real estate transactions and teach them how to fill them out – they never did. Even after the $35,495 program, and after numerous phone calls to Trump University, Plaintiff and other class members were not instructed how to use the contracts they would need to conduct the real estate transactions described.

**Trump University receives D- rating from Better Business Bureau**

36. In January, 2010, the Better Business Bureau gave Trump University a *D-minus rating*. In addition, the New York Department of Education has recently demanded that Trump University remove "University" from its title, insisting that the "use of the word 'university' by your corporation *is misleading and violates New York Education Law* and the Rules of the Board of Regents."[7]

///

///

///

_____

[7] *See* NY Daily News.com, "State Educrats Give Failing Grade to Donald Trump's 'Misleading' Trump University, by Douglas Feiden, April 16, 2010, and CBS MoneyWatch.com, "Is Trump University Flunking Out," by Lynn O'Shaughnessy, April 19, 2010.

CLASS ACTION COMPLAINT

**Complaints from Numerous Trump University Students Nationwide**

37.    Tarla Makaeff is not alone in her complaints regarding Trump University's misrepresentations and unscrupulous conduct. Indeed, there are endless complaints nationwide on the internet that echo Plaintiff's complaints, including, for example:

- This recent post on http://www.reviewopedia.com/trump-university.htm, from Susan in Michigan was posted on April 11th, 2010: "We purchased a mentor program for $19,000 in December 2008. *We did not receive the promised materials or mentor service.* We canceled immediately, calling both Rochester NY & Boca Raton FL. Unfortunately we paid by check and did not have a credit card company to help us get our money back. We have made several call, emails, faxes, etc. *We've been lied to, deceived,* promised the person with "authority" would call us back immediately (doesn't matter when you call, they are never in) and told there was a glitch in their system and our refund was being processed. *We still do not have our refund* and they continue to play the game. Does this sound like Donald Trump is an honest man concerned with helping you build wealth?"

- Charles from Florida posted this on September 21, 2009, "I was told that after taking the first 3 day seminar, which cost $1,500 I could go out start making deals. ... *The only thing they want you to do is sign up for the next seminar* which can cost up to $35,000." http://www.reviewopedia.com/trump-university.htm

- Joe from Florida posted this on September 18, 2009, "*What a SCAM* I attended the three day seminar and *really learned very, very little. [Their] goal is to talk you into joining the next seminar,* which can cost up to 35,000. They use almost Gestapo tactics to sign for this seminar. Any questions you ask are never answered." http://www.reviewopedia.com/trump-university.htm

- L. Heard from Georgia had this to say on June 23, 2009, "*I have been trying to get my money back* from attending one of the seminars and have yet to do so. *My contract stated that I had 3 days after date of purchase to cancel and I did so in 1 day.* I attended the seminar on March 22, 2009 and here it is June 22, 2009 all they can tell me is that they see that I have done all that I was supposed to do but they don't know what is taking so long to refund my money." http://www.reviewopedia.com/trump-university.htm

- Dorla from California posted this on, June 10, 2009, "Trump University is a major disappointment. *They charged me $35,000 for the program, which I would never have paid if I had known the info given to me was not true.* I based my decision on that info! They would not return even a portion of my money after several long and tearful conversations, even after agreeing the info was outdated and they would have to do something about it. I would strongly suggest never using them. There are other gurus out there that are honest and don't cost as much !!! *I can't believe Donald Trump would allow such mis-behaving to be associated with his name. Run fast and keep running* where they are involved!" http://www.reviewopedia.com/trump-university.htm

12

CLASS ACTION COMPLAINT

- Yu from Los Angeles posted this on March 25, 2009, "I signed up the tax lien products & as the organization promised "Full Money Back Guarantee" within 10 days. I called at least 10 times the organization & they keep on telling me different time frame & story about why they delayed to refund me. It's been the 25th business days, have *NOT yet received my refund. I checked BBB & found they did have a lot of fraud issues*." http://www.reviewopedia.com/trump-university.htm

- Linda from Newark, California had this to say on March 6, 2009, "I took several Trump classes and spent well over $15,000.... They give you a ton of information and then *leave you high and dry. No support what so ever!!!!*" http://www.reviewopedia.com/trump-university.htm

- Rhonda from Georgia claimed *her identity was used by Trump University without her permission* (post from September 30, 2009), "Just had someone write me and call that said that they graduated from Trump University's 3 day course and was led to me by *James Harris who said that I was a student there*. Okay - *that's not true*. Then, he also said that when I came to him as a student I was almost broke and that the course made me successful. Wrong again! I have never been a student of his or the school I and never been broke. That is slander and I would watch someone who makes up stuff to make their product look better. Hopefully the success of the school is not based on lies. Whereas I am successful - #1 Real Estate Agent in Georgia, 6 years in a row, it was not because of Trump University or James Harris which I had no idea existed until it was brought to my attention." http://www.reviewopedia.com/trump-university.htm

- On December 13, 2009 another consumer that was scammed by Trump University wrote, *"Do not trust Trump University! This company is a well designed scam using the name of Donald Trump who apparently doesn't care* how much more Americans get hurt this year and the next ones by a weak economy. Instead he's using it to take advantage of you. They will do whatever (and I mean, whatever) it takes to get you to open your pockets to invest in their company. I am sure there are tons of people like me who have lost precious money because of them. So if you have to borrow and have no credit to do this or even if you have good credit, don't! They will rob from you...*this is modern day robbery*...and then they will place in a very dangerous position. You could lose equity in your house if you have to borrow to attend, *you could damage your credit* if you have to max out your credit cards, or you could even lose your house like so many Americans because that last bit of money that was supposed to get you through another six months or year for mortgage payments is now gone based on a false promise! The scam in all of this is that the information always skims the surface. No matter the class, *you get loads of advice on buying more classes, not advice on execution*. They will never tell you that it takes 1000 steps to do something and instead magnify the few positive points of real estate. Don't be fooled by them or their grand statements of flipping a house with 10 hours of work. They are full of it! I know because I have been through it....*Oh and when they tell you they'll be there for you, they'll scram as soon as they've collected the dough*. The instructors are there for their 3 day classes and then off to the next city to convince more unsuspecting prospects to drop 15-35G's.... http://trump-university.pissedconsumer.com/trump-university-reviews-20091213164344.html

13

CLASS ACTION COMPLAINT

- On January 20, 2010, another consumer wrote, "*Trump U preys on the elderly*. This is the biggest SCAM I've ever seen! *My 82 year old father went to a free seminar* promising to make him rich through real estate. *The seminar was solely for the purpose of upselling him into attending a $1500 three day workshop* by promising him they would teach him how to buy and sell foreclosures for huge profits (which is totally unrealistic because the vast majority of foreclosures today are because people are upside down in their homes) Anyway, he goes to the 3 day workshop and when he comes home we find out that they pressured him into spending $35k MORE! I don't care who you are there is no real estate course worth $35k. Then he proceeds to tell us how *the majority of people there were SENIORS like him!* These aren't long term investors here, these are people being tricked into thinking they can make a quick profit! *If this isn't the definition of preying on the elderly then I don't know what is.*" http://www.moneystance.com/trump-university-reviews

- On December 13, 2009 another consumer stated that, "*Trump University and their staff should be ashamed of themselves! They RUINED my credit!!!* They told me I would get my large investment back in my first real estate deal because I would have access to amazing mentors and course content. I did what they told me in all of the courses and it was nonsense! *I maxed out my credit cards* because I thought Donald Trump wouldn't have such a sorry excuse for a school just to make more money. But he is a greedy man so I should have known. *Be aware that when they tell you to increase your credit limit to purchase real estate it's really to scam you out of tons of money* that you've worked so hard for." http://www.complaintsboard.com/complaints/trump-university-c288699.html

- On November 3, 2008, another victim stated, "At the retreat, the only three things that happened: they pre-qualify you for their $35,000.00 GOLD PACKAGE, [2] *they ask you to call all your credit card companies and request a credit limit increase (so you can pay for the 35K)*, then during three days the sell you over and over their mentoring services and keep telling you that the information you are waiting to hear is coming… three days later nothing worth is mention. Their material is completely worthless. 100+ pages of content-empty power point print outs. I requested a refund, both in person and in writing and was denied….BE AWEARE, THESE ARE MASTERS OF THE SCAM…" http://www.complaintsboard.com/complaints/trump-university-c118292.html

- On February 27, 2009, Patt from Sacramento, California wrote: "*Trump University real estate programs are ALL scams*. I paid the $1500 for the 3 day course which turned out to be three days of them trying to get me to sign up for the $21,000 gold course. They *ask for all your financial information* (which fortunately I refused to give them) and then spend the remaining "class time" pulling people out to *hard close them on the gold program and private coaching*." http://www.ripoffreport.com/seminar-programs/trump-university/trump-university-rip-off-of-th-99exd.htm

- On June 19, 2008, Truth from Brooklyn, New York stated: "I wished I saw this site BEFORE I fell for paying the $1,500 at the free seminars. *they will take your money and the 3 day event will be used to make you buy more stuff. and even after you buy more stuff, they will sell you more.* am not sure how much trump is making from this. But, i do feel that if he know what bull they are teaching, he would not authorize to use his name. as you may know, this is the same things that other companies are doing to sell you more and

14

more training. the only difference in this situation is that they use trump name."
http://www.ripoffreport.com/seminars/trump-university-tru/trump-university-trump-seminar-pcc44.htm

- On March 20, 2008, another consumer from Las Vegas, Nevada that was scammed by Trump University wrote: ***Trump University will rip you off.... They do not teach you what they say they will teach you and what you have paid for.*** They also do not deliver what they say they will deliver and if you ask for a refund on something that you have not received they will not give it to you. All that I can say is do your research."
http://www.ripoffreport.com/seminar-programs/trump-university/trump-university-is-a-scam-w-eba5e.htm

- On August 7, 2007, a real estate investor from New York, New York wrote: "***Trump University is the biggest scam EVER!!!*** After speaking with most everyone employed ***there only ONE yes, ONE person on their staff invests in real estate***. I have tried to blog several times asking if Mr. Michael Sexton (President of Trump University) has properties and I have never received a response. I paid over $20,000.00 after they told me that I would get personalized service and all I got was a box filled with books to read and terrible software that costs under $500.00 when buying from Barnes & Noble. The live events were a total joke and even the main presenter there barely has investing experience. I fortunately have enough money to not go broke because of them but ***almost everyone there took out loans or maxed out their credit cards to get this trash service***. It is just like every other late night infomercial and am disgusted by Mr. Trump being affiliated or supporting this program. I have talked to several different people there because each person I get handed off to quits or got fired from the organization. They don't know what they are doing ***and are preying on the weak who are just trying to make it in life***!!!!!!!! SHAME ON YOU MR TRUMP AND TRUMP UNIVERSITY...." http://www.ripoffreport.com/seminar-programs/trump-university/trump-university-scam-to-steal-s3c7s.htm

## PLAINTIFF'S FACTS

38.    Plaintiff Tarla Makaeff purchased the three-day Trump University "Fast Track to Foreclosure Training" workshop for approximately $1,495. Two people were permitted to attend for the $1,495 price, so Plaintiff attended with a friend and split the cost. During the three-day workshop, Plaintiff was told to raise her credit card limits four times so she could enter in to "real estate transactions." However, at the end of the session, Trump University revealed its real reason for pushing Plaintiff and class members to extend their credit limits: to use that credit to purchase an additional $35,000 Trump seminar. Based on Defendant's numerous misrepresentations, on or about August 10, 2008, Plaintiff enrolled in Trump's Gold Program for $34,995, plus the variable APR finances charges, interest fees, and late fees she had to pay her credit card company.

39.     The day Plaintiff signed up for the $34,995 program, James Harris immediately told Plaintiff that he would now be personally available to her by phone and e-mail, and shortly thereafter e-mailed to her "we can do a ton together." Then, she never heard from him again.

40.     **"Guarantee" that her first deal would pay for her $35,000 seminar** - While Plaintiff was on the fence about spending the additional money, Trump University speaker Tiffany Brinkman persuaded Plaintiff to sign up by "guaranteeing" Plaintiff that her first real estate deal would earn her in the ballpark of $35,000, so that she could immediately pay off her Trump University debt, leaving only profits for the future. Although Plaintiff signed up for the seminar in reliance on this representation, it could not have been farther from the truth – Plaintiff participated in *no* real estate deals, and never made *any* money.

41.     **Mentors** - Plaintiff was assigned two mentors, and initially, the mentors would return calls, but would only speak to Plaintiff for 2-3 minutes, offering no practical advice. After that, although they were supposed to provide "mentorship" to Plaintiff for a full year, they mostly disappeared.  After Plaintiff complained about the lack of assistance provided by her assigned mentors, Rick McNally and Mike Kasper, Tad Lignell, the mentor with the "power team," offered to help her personally, but then engaged in misappropriate conduct and misadvised her regarding a property in Las Vegas in which he had a personal financial interest.

42.     After spending approximately *$60,000* over the course of an entire year to attend numerous Trump University related or endorsed seminars, only two real estate deals ever came to Plaintiff, and Plaintiff did not accept either, as both were flawed and appeared unprofitable.

43.     In the first deal offered to Plaintiff, Trump mentor Tad Lignell introduced Plaintiff to a real estate agent, Noah Herrera of Las Vegas regarding a property purchase in Las Vegas. Lignell did not disclose to Plaintiff that he had a financial interest in referring Trump students to Noah Herrera. *The Power Team then misquoted comps to Plaintiff.* Rather than making a profit on the deal, as she

CLASS ACTION COMPLAINT

would have made if the comps had been correct, she would have likely suffered a 20% *loss* on the transaction. When she discovered that the comps were incorrect and that she was likely to lose money on the deal, she looked for a way out. As it turned out, Mr. Lignell's protégé fraudulently and illegally altered the real estate documents Plaintiff had previously signed at the escrow office without Plaintiff's authorization or approval. As a result of this illegal and fraudulent conduct, Plaintiff was permitted to void the transaction, which she did.

44.     The second, and only other, real estate transaction that came Plaintiff's way involved a Houston property. After being told by Trump representatives that the deals "are staring to POUR IN NOW," the only deal that came in was a Houston deal. It was outside of Trump University's recommended guidelines for real estate investing, as it would provide only $40/month positive cash flow, and Trump's own representative, Stephen Gilpin instructed Plaintiff never to accept a deal under $100/month positive cash flow. Furthermore, this potential deal raised an inherent and improper conflict of interest, as it was referred by a partner (Mike Kasper) to the Trump mentor, Rick McNally, who stood to financially benefit from the deal.

45.     **Bandit signs** - Furthermore, certain real estate practices that Trump University taught Plaintiff and other class members during the Seminars included transactions that are *illegal* in California and other states, such as posting anonymous "bandit signs." These are the signs that are posted by the side of the roadway, mimic black and yellow road warning signs and say, "WE BUY HOUSES, 619-222-2222." Plaintiff was posting bandit signs, as taught by the Trump seminars she attended, and had no idea they were illegal until she was contacted by the District Attorney's Office and told that those techniques could subject her to *hundreds of thousands of dollars in fines, a misdemeanor charge, and up to six months in jail*. As a result, she was required to retain a criminal attorney.

46.     Plaintiff's experiences with Trump University are typical of the class and the many hundreds (if not thousands) of other Trump University students who have registered their complaints online and with Defendant.

47.     Plaintiff has suffered injury in fact and loss of money or property. She has been damaged by, *inter alia*, the amounts she has paid for Trump University Seminars.

## CLASS ALLEGATIONS

48.     Plaintiff brings this class action on behalf of herself individually and all others similarly situated, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

49.     The proposed class consists of all persons who purchased Seminars from Trump University throughout the United States from April 30, 2006 to the present. Excluded from the Class are Trump University, its affiliates, employees, officers and directors, persons or entities that distribute or sell Trump University products or programs, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

50.     This action is properly brought as a class action for the following reasons:

(a)     the proposed class is so numerous and geographically dispersed throughout the United States that the joinder of all class members is impracticable. While Plaintiff does not know the exact number and identity of all class members, Plaintiff is informed and believe that there are thousands, if not tens or even hundreds, of thousands of class members. The precise number of members can be ascertained through discovery;

(b)     the disposition of Plaintiff's and proposed class members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)     the proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

(d)     there are questions of law and fact common to the proposed class which predominate over any questions that may affect particular class members. Such common questions of law and fact include, but are not limited to:

(i)     Whether Trump University's conduct was unlawful, unfair or fraudulent;

18

CLASS ACTION COMPLAINT

1      (ii)    Whether Trump University's advertising is likely to deceive the

2  public;

3      (iii)    Whether Trump University's conduct was false, misleading or likely

4  to deceive;

5      (iv)    Whether Trump University violated the UCL;

6      (v)    Whether Trump University violated the CLRA;

7      (vi)    Whether Trump University violated the FAL;

8      (vii)    Whether Trump University has received funds from Plaintiff and

9  class members that they unjustly received;

10      (viii)    Whether Trump University is in breach of contract;

11      (ix)    Whether Trump University is in breach of the implied covenant of

12  good faith and fair dealing;

13      (x)    Whether Trump University is liable for intentional and/or negligent

14  misrepresentations;

15      (xi)    Whether Trump University is liable for making false promises;

16      (xii)    Whether Plaintiff and proposed class members have been harmed and

17  the proper measure of relief;

18      (xiii)    Whether Plaintiff and proposed class members are entitled to an

19  award of punitive damages, attorneys' fees and expenses against Defendant; and

20      (xiv)    Whether, as a result of Defendant's misconduct, Plaintiff is entitled to

21  equitable relief, and if so, the nature of such relief;

22      (e)    Plaintiff's claims are typical of the claims of the members of the proposed

23  class.  Plaintiff and all class members have been injured by the same wrongful practices of

24  Defendant. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of

25  all class members and are based on the same legal theories;

26      (f)    Plaintiff will fairly and adequately protect the interests of the proposed class

27  in that she has no interests antagonistic to those of the other proposed class members, and Plaintiff

28  has retained attorneys experienced in consumer class actions and complex litigation as counsel;

19

CLASS ACTION COMPLAINT

(g) A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(i) Given the size of individual proposed class member's claims and the expense of litigating those claims, few, if any, proposed class members could afford to or would seek legal redress individually for the wrongs Defendant committed against them and absent proposed class members have no substantial interest in individually controlling the prosecution of individual actions;

(ii) This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured; and

(iii) Without a class action, proposed class members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct.

(iv) Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

51. Defendant has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this class action.

52. Plaintiff seeks damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

**FIRST CAUSE OF ACTION**

**(Violations of California Business and Professions Code § 17200)**

53. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

54. California Business & Professions Code § 17200 prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice" and any act prohibited by Cal. Bus. & Prof. Code § 17500.

55. Defendant violated Cal. Bus. & Prof. Code § 17200's prohibition against engaging in an "**unlawful**" business act or practice by, *inter alia*, making the material misrepresentations

20

CLASS ACTION COMPLAINT

1  regarding its Seminars as set forth more fully elsewhere in this Complaint, in violation of Cal. Civ.

2  Code §§ 1572 (actual fraud), 1573 (constructive fraud), 1709 and 1710 (deceit), 1750 *et seq.* (the

3  CLRA), Cal Bus. & Prof. Code §17500 (false advertising), and the common law, including the

4  breach of contract, breach the covenant of good faith and fair dealing and breach of the duty to

5  disclose.

6       56.     Plaintiff reserves the right to allege other violations of law which constitute other

7  unlawful business acts and practices. Such conduct is ongoing and continues to this date.

8       57.     Defendant violated Cal. Bus. & Prof. Code § 17200's prohibition against engaging in

9  a "**fraudulent**" business act or practice by, *inter alia,* disseminating, through common advertising,

10  untrue statements about its Seminars that have a tendency to mislead the public and making

11  numerous common material misrepresentations about its Seminars with the intent to induce reliance

12  by consumers to purchase Defendant's Seminars. Furthermore, Defendant violated § 17200 by

13  issuing misrepresentations and untrue statements at the Trump University Seminars.

14       58.     The foregoing conduct also constitutes "**unfair**" business acts and practices within

15  the meaning of Cal. Bus. & Prof. Code § 17200. Defendant's practices offend public policy and are

16  unethical, oppressive, unscrupulous and violate the laws stated. Defendant's conduct caused and

17  continues to cause substantial injury to consumers and their property, including Plaintiff and

18  proposed class members. The gravity of Defendant's alleged wrongful conduct outweighs any

19  purported benefits attributable to such conduct. There were also reasonably available alternatives to

20  Defendant to further its business interests.

21       59.     Plaintiff and Class members have suffered injury in fact and have lost money and/or

22  property as a result of Defendant's unlawful, fraudulent and unfair business practices and are

23  therefore entitled to the relief available under Cal. Bus. & Prof. Code §17200 *et seq.*, as detailed

24  below.

25

26

27

28

CLASS ACTION COMPLAINT

**SECOND CAUSE OF ACTION**

**(Violations of the Consumer Legal Remedies Act,
California Civil Code § 1750 *et seq.*)**

60.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

61.     This cause of action arises under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*  Plaintiff is a consumer as defined by Cal. Civ. Code § 1761(d). Defendant's Seminars constitute "services" and/or "products" as defined by Cal. Civ. Code § 1761(a) and (b).  At all times relevant hereto, Defendant constituted a "person" as that term is defined in Cal. Civ. Code § 1761(c), and Plaintiff's and class members' purchases of Defendant's Seminars constitute "transactions," as that term is defined in Cal. Civ. Code § 1761(e).

62.     Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code § 1770(a), in transactions with Plaintiff and class members that were intended to result or which resulted in the sale or lease of goods or services to consumers:

    (a)     In violation of Cal. Civ. Code § 1770(a)(5), Defendant's acts and practices constitute misrepresentations that the Seminars in question have characteristics, benefits or uses which they do not have;

    (b)     In violation of Cal. Civ. Code § 1770(a)(7), Defendant has misrepresented that the Seminars are of particular standard, quality and/or grade, when they are of another;

    (c)     In violation of Cal. Civ. Code § 1770(a)(9), Defendant advertised the Seminars with the intent not to sell them as advertised or represented; and

    (d)     In violation of Cal. Civ. Code § 1770(a)(10), Defendant advertised the Seminars with intent to not supply reasonably expectable demand.

63.     Defendant's uniform representations as set forth more fully elsewhere in this Complaint were false, deceptive, and/or misleading and in violation of the CLRA.

64.     Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing by certified mail of the particular violations of Cal. Civ. Code § 1770 alleged herein, and has demanded

1    that Defendant rectify the problems associated with the actions detailed above and give notice to all

2    affected consumers of its intent to so act.  Plaintiff sent this notice by certified mail, return receipt

3    requested, to Defendant's principal place of business.

4        65.    If Defendant fails to rectify or agree to rectify the problems associated with the

5    actions detailed above and give notice to all affected consumers within 30 days after receipt of the

6    Civil Code § 1782 notice, Plaintiff will amend this Complaint to seek actual, punitive and statutory

7    damages and all other relief available to Plaintiff and the Class under Civil Code § 1780.

8        66.    In addition, pursuant to Civil Code § 1780(a)(2), Plaintiff is entitled to, and therefore

9    seeks, a Court order enjoining the above-described wrongful acts and practices that violate Cal. Civ.

10   Code § 1770.

11       67.    Plaintiff and the class are also entitled to recover attorneys' fees, costs, expenses and

12   disbursements pursuant to Cal. Civ. Code §§ 1780 and 1781.

### THIRD CAUSE OF ACTION

**(Untrue and Misleading Advertising in Violation of**
**Cal. Bus. & Prof. Code § 17500 *et seq.*)**

16       68.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

17   paragraphs above as if fully set forth herein.

18       69.    California Business & Professions Code § 17500 prohibits various deceptive

19   practices in connection with the dissemination in any manner of representations which are likely to

20   deceive members of the public to purchase products and services such as the Trump University

21   Seminars.

22       70.    Defendant disseminated, through common advertising, untrue statements about its

23   Seminars and Defendant knew or should have known that the Seminars did not conform to the

24   advertisements representations regarding the Seminars.  Defendant intended consumers to rely upon

25   the advertisements and numerous material misrepresentations as set forth more fully elsewhere in the

26   Complaint.  Plaintiff and the Class relied upon the advertisements and misrepresentations to their

27   detriment.

28

CLASS ACTION COMPLAINT

71.     As a result of the foregoing, Plaintiff, and other Class members, and consumers are entitled to injunctive and equitable relief and damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Breach of Contract)

72.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

73.     Contracts exist between Plaintiff, class members and Trump University. Plaintiff and Class members entered into agreements with Trump University for a three-day Seminar for which they paid approximately $1,495. Plaintiff and some class members also entered into an agreement with Trump University for the Trump Gold Program for which they paid about $34,995, plus the variable APR finances charges, interest fees, and late fees they had to pay to their credit card companies. Attached hereto as Exhibit A is a true and correct copy of a contract for the Trump Gold Program.

74.     Under Plaintiff's and each Class member's contracts, Plaintiff and the Class members were only required to pay the amount of the Seminar in each Class member's contract.

75.     All conditions precedent under the contracts have been performed by Plaintiff and the Class, including the payment amount of the Seminars.

76.     Trump University breached the terms of its standardized contracts with Plaintiff and the Class by failing to provide them with the promised products and services as contracted.

77.     As a result of Defendant's breach of its contracts, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

78.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

79.     The law implies a covenant of good faith and fair dealing in every contract.

CLASS ACTION COMPLAINT

80.     Defendant violated this covenant of good faith and fair dealing in its contract with Plaintiff and members of the Class by, *inter alia,* misrepresenting to Plaintiff and the Class the true nature of the Seminars as alleged more fully elsewhere in the Complaint.

81.     Plaintiff and members of the Class performed all, or substantially all, of the significant duties required under their agreements with Defendant.

82.     The conditions required for Defendant's performance under the contract agreements had occurred.

83.     Defendant did not provide and/or unfairly interfered with the right of Plaintiff and Class members to receive the benefits under their agreements with Defendant.

84.     Plaintiff and the Class have been damaged by Defendant's breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Money Had and Received)

85.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

86.     Defendant improperly received and continues to improperly receive from Plaintiff and class members millions of dollars as a result of the conduct alleged above.

87.     As a result, Plaintiff and the class have conferred a benefit on Defendant to which Defendant is not entitled.  Defendant has knowledge of this benefit, wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained the benefit conferred on it. Defendant will be unjustly enriched if it is allowed to retain such funds and, therefore, a constructive trust should be imposed on all monies wrongfully obtained by Defendant and the money should be disgorged from Defendant, and returned to Plaintiff and the class.

## SEVENTH CAUSE OF ACTION

### (Negligent Misrepresentation)

88.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

CLASS ACTION COMPLAINT

89.     As alleged herein, Trump falsely represented to Plaintiff and members of the Class that they would receive a "complete real estate education," a "one year apprenticeship," one-on-one mentorship, practical real estate techniques and contracts, a "power team" of real estate agents, lenders, personal finance managers, property managers and contractors, and were assured that although the seminars were costly, they would make the money back in their first real estate deal, and could make up to tens of thousands of dollars per month or more.

90.     Instead of a complete real estate education, students merely received an "infomercial" pushing additional seminars or workshops they were told they would need to take to succeed. The "one year apprenticeship" they were promised was actually just a 3-day seminar; the one-on-one year-long mentorship consisted of no practical insights and no mentorship, but rather excursions to Home Depot and "mentors" who either recommend real estate deals that they stand to benefit from financially, raising a conflict of interest, or immediately disappeared and failed to return calls.

91.     Trump University representatives also told students during the 3-day seminar to raise their credit card limits 2-4 times during the break for "real estate transactions," and had students prepare detailed financial statements, presumably for real estate purchases, when in fact, Trump's real reason for this was to assess how much money each student had to spend on the next Trump seminar, and to persuade the students to use their increased credit limit to purchase the Trump Gold Program for $34,995.

92.     Trump's misrepresentations were supplied for the purpose of affecting Plaintiffs and Class members' financial decisions.

93.     Trump had no reasonable grounds for believing that its misrepresentations were true.

94.     Trump failed to exercise reasonable care and/or diligence in communicating its misrepresentations.

95.     Trump's misrepresentations were objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

96.     Trump intended that Plaintiff and members of the Class would rely on its misrepresentations.

CLASS ACTION COMPLAINT

97.     Plaintiff and members of the Class reasonably and justifiably relied to their detriment on Trump's misrepresentations.

98.     As a proximate result of Trump's misrepresentations, Plaintiff and members of the Class were damaged in an amount to be proven at trial.

99.     Trump directly benefited from, and was unjustly enriched by, its misrepresentations.

**EIGHTH CAUSE OF ACTION**

**(Fraud)**

100.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

101.    As alleged herein, Trump has intentionally and falsely represented to Plaintiff and members of the Class that they would receive a "complete real estate education," a "one year apprenticeship," one-on-one mentorship, practical real estate techniques and contracts, a "power team" of real estate agents, lenders, personal finance managers, property managers and contractors, and were assured that although the seminars were costly, they would make the money back in their first real estate deal, and could make up to tens of thousands of dollars per month or more.

102.    Instead of a complete real estate education, students merely received an "infomercial" pushing additional seminars or workshops they were told they would need to take to succeed. The "one year apprenticeship" they were promised was actually just a 3-day seminar; the one-on-one year-long mentorship consisted of no practical insights and no mentorship, but rather excursions to Home Depot and "mentors" who either recommend real estate deals that they stand to benefit from financially, raising a conflict of interest, or immediately disappeared and failed to return calls. Trump's representations were false and Trump knew the representations were false when it made them, or made the representations recklessly and without regard for its truth.

103.    Trump University representatives also told students during the 3-day seminar to raise their credit card limits 2-4 times during the break for "real estate transactions," and had students prepare detailed financial statements, presumably for real estate purchases, when in fact, Trump's real reason for this was to assess how much money each student had to spend on the next

27

1  Trump seminar, and to persuade the students to use their increased credit limit to purchase the
2  Trump Gold Program for $34,995.
3      104.    Trump intended that Plaintiff and the members of the Class rely on the
4  representations.
5      105.    Plaintiff and members of the Class reasonably and justifiably relied to their
6  detriment on Trump's misrepresentations.
7      106.    As a proximate result of Trump's misrepresentations, Plaintiff and members of the
8  Class were damaged in an amount to be proven at trial.
9      107.    Plaintiff and members of the Class' reliance on Trump's representations were a
10  substantial factor in causing their harm.
11                              **NINTH CAUSE OF ACTION**
12                                  **(False Promise)**
13      108.    Plaintiff re-alleges and incorporates by reference the allegations contained in the
14  paragraphs above as if fully set forth herein.
15      109.    As alleged herein, Trump made a number of promises to Plaintiff and members of
16  the Class, which were important to Plaintiff and members of Class' decision to purchase Trump's
17  Seminars.
18      110.    Trump did not intend to perform these promises when it made them.
19      111.    Trump intended that Plaintiff and members of Class rely on these promises and
20  Plaintiff and members of Class did reasonably rely on Trump's promises.
21      112.    Trump did not perform any of the promised acts.
22      113.    As a proximate result of Trump's failure to act on its promises, Plaintiff and
23  members of the Class were damaged in an amount to be proven at trial.
24      114.    Plaintiff and members of the Class' reliance on Trump's promises were a substantial
25  factor in causing their harm.
26                              **PRAYER FOR RELIEF**
27      WHEREFORE, Plaintiff prays this Court enter a judgment against Trump University that:
28

A. This action be certified and maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and certify the proposed class as defined, appointing Plaintiff as representative of the Class, and appointing the attorneys and law firms representing Plaintiff as counsel for the Class;

B. Awards compensatory, statutory and/or punitive damages for Defendant's breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation and false promises, where such relief is permitted;

C. Awards Plaintiff and proposed class members the costs of this action, including reasonable attorneys' fees and expenses;

D. Orders Trump University to immediately cease its wrongful conduct as set forth above; enjoins Trump University from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; orders Trump University to engage in a corrective notice campaign, and requires Trump University to refund to Plaintiff and all of the class members the funds paid to Defendant for the subject Programs;

E. Awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendant's ill-gotten gains, to ensure that Plaintiff and proposed class members have an effective remedy;

F. Awards pre-judgment and post-judgment interest at the legal rate; and

G. Such further legal and equitable relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2     Plaintiff demands a trial by jury on all issues so triable.

3

4   DATED: April 30, 2010.              ZELDES & HAEGGQUIST, LLP

5                              AMBER L. ECK
                             HELEN I. ZELDES

6                              ALREEN HAEGGQUIST

7

8                              AMBER L. ECK

9

10                              ZELDES & HAEGGQUIST, LLP
                             625 Broadway, Suite 906

11                              San Diego, California 92101
                             Telephone: (619) 342-8000

12                              Facsimile: (619) 342-7272

13                              ROBBINS GELLER
                             RUDMAN & DOWD LLP

14                              RACHEL L. JENSEN (211456)
                             655 West Broadway, Suite 1900

15                              San Diego, CA 92101
                             Telephone: (619) 231-1058

16                              Fax: (619) 231-7423
                             rjensen@rgrdlaw.com

17

18                              Attorneys for Plaintiff Tarla Makaeff,
                             Individually and On Behalf of All Others

19                              Similarly Situated

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

Advisor: _James Harris_

# TRUMP 

Event Code: _PTT 20080608g_
Client ID: _____

## ENROLLMENT FORM

### CONTACT INFORMATION

**NAME** _Tarla MaKaeff_

**ADDRESS** ███████████████

**CITY** _Cardiff Del Mar_  **STATE** _CA_  **ZIP** _92025_

**EMAIL** ███████████████

**HOME PHONE** _____  **WORK** _____

**CELL** ███████████  **FAX** _____

### PURCHASE(S)

☑ **Trump Gold Elite:**
- 3 Day Field Mentorship — $25,000
- Wealth Preservation Retreat — $5,000
- QuickTurn Real Estate Retreat — $5,000
- Creative Financing Retreat — $5,000
- Commercial & Multi-Family Retreat — $4,000
- Investor's Edge Real Estate Software ($39.95/month database fee not included) — $2,495
- Incorporate Your Business (State Licensing fees not included) — $995

|  | Event Special You Save 28% |
| --- | --- |
| $48,490 | **$34,995** |

Amount Due: _34,995.00_
Paid at Enrollment: _5,000.00_
Balance: _29,995.00_
FedEx _38056 332 2570_

☐ **Trump Silver Elite:**
- Wealth Preservation Retreat — $5,000
- QuickTurn Real Estate Retreat — $5,000
- Creative Financing Retreat — $5,000
- Commercial & Multi-Unit Retreat — $5,000
- Investor's Edge Real Estate Software ($39.95/month database fee not included) — $2,495
- Incorporate Your Business (State Licensing fees not Included) — $995

|  | Event Special You Save 17% |
| --- | --- |
| $23,490 | $19,495 |

Balance Due Payment Notes: _____

☐ **Trump Bronze Elite:**
- Wealth Preservation Retreat — $5,000
- QuickTurn Real Estate Retreat — $5,000
- Incorporate Your Business (State Licensing fees not Included) — $995

|  | Event Special You Save 9% |
| --- | --- |
| $10,995 | $9,995 |

### PAYMENT

☑ **Credit Card**   NAME EXACTLY AS IT APPEARS ON THE CARD (Please Print) _Tarla A MaKaeff_

**CREDIT CARD NO** ███████████   BILLING ADDRESS (if different from above)

**EXP DATE** _____  **SECURITY CODE** _____  **CITY** _____  **STATE** _____  **ZIP** _____

☐ **Check**   ACCOUNT NO _____   CHECK NO _____

**You, the Buyer, may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right.**

This Program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program Instructors, Trump U, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts or omissions, the appropriateness of my business decisions, or my use of or reliance on Program information. Trump U's obligation to start providing services starts when full payment is received.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

**SIGNATURE** _____  **DATE** _6/19/08_  **GUEST SIGNATURE** _____  **DATE** _____

White Copy: TRUMP U          Pink Copy: CUSTOMER

7.14.08   Trump U   40 Wall Street 32ⁿᵈ Floor New York, NY 10005   P 212-248-1600   F 212-937-3830

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

MAKAEFF, TARLA, on Behalf of Herself and All Others Similarly Situated

**DEFENDANTS**

TRUMP UNIVERSITY, LLC, a New York Limited Liability Company, and DOES 1 through 50, inclusive,

**(b)** County of Residence of First Listed Plaintiff   Orange County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   New York
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

ZELDES & HAEGGQUIST, LLP, 625 Broadway, Suite 906, San Diego, CA 92101. Tel: 619-342-8000

Attorneys (If Known)

'10 CV 0940 IEG   WVG

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

| | | | | | | | Appeal to District |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment | |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Sections 1332 and 1367

Brief description of cause:
Consumer class action

**VII. REQUESTED IN COMPLAINT:**

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):

JUDGE                DOCKET NUMBER

DATE
04/30/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  13089   AMOUNT  $350—   APPLYING IFP                JUDGE                MAG. JUDGE

PD 04-30-10

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS013039
Cashier ID: mbain
Transaction Date: 04/30/2010
Payer Name: KNOX ATTORNEY SERVICES
----------------------------------
CIVIL FILING FEE
 For: MAKAEFF V TRUMP UNIVERSITY
 Case/Party: D-CAS-3-10-CV-000940-001
 Amount:        $350.00
----------------------------------
CHECK
 Check/Money Order Num: 6019
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.