1    David K. Schneider (CSB 139288)
     YUNKER & SCHNEIDER
2    655 West Broadway, Suite 1400
     San Diego, California 92101
3    Telephone:  (619) 233-5500
     Facsimile:   (619) 233-5535
4    Email:  dks@yslaw.com

5    Attorneys for Defendant and Counterclaimant TRUMP UNIVERSITY, LLC

6

7

8                    **UNITED STATES DISTRICT COURT**

9                **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10   TARLA MAKAEFF, on Behalf of Herself        )    Case No. 10 CV 0940 IEG (WVG)
     and All Others Similarly Situated,          )
11                                               )
                        Plaintiff,               )
12                                               )    COUNTERCLAIM OF DEFENDANT
     v.                                          )    AND COUNTERCLAIMANT TRUMP
13                                               )    UNIVERSITY, LLC
     TRUMP UNIVERSITY, LLC, a New                )
14   York Limited Liability Company, and         )
     DOES 1 through 50, inclusive,               )
15                                               )    **JURY TRIAL DEMANDED**
                        Defendant.               )
16   _____         )
                                                 )
17   TRUMP UNIVERSITY, LLC, a New York           )
     Limited Liability Company,                  )
18                                               )
                        Counterclaimant,         )
19                                               )
     v.                                          )
20                                               )
     TARLA MAKAEFF, and                          )
21   ROES 1 through 10, inclusive,               )
                                                 )
22                      Counterdefendants.       )
23   _____         )

24

25           Defendant and Counterclaimant TRUMP UNIVERSITY, LLC ("Trump University") hereby

26   counterclaims against Plaintiff and Counterdefendant TARLA MAKAEFF ("Plaintiff") and

27   Counterdefendants ROES 1-10, and alleges as follows:

28   / / /

## **NATURE OF THE CASE**

1.      Trump University offers training, instruction, mentoring, and other support for motivated people interested in learning about — and hopefully profiting from — real estate and financial investment.  It has a well-staffed faculty and comprehensive curriculum that provides programs nationwide, with several levels of involvement, cost levels, and commitment available to its attendees.

2.      Like all legitimate and professional development, continuing education or self-improvement programs, Trump University promises to provide useful information, skills, and the opportunity to succeed.  Trump University does not and cannot promise specific results, profits, or wealth for its attendees — all of whom have widely varying abilities, experience, expectations, resources, educational levels, market conditions, local properties, and competition to work with.

3.      Moreover, the attendees also participate in different programs, in different cities, at different times, taught by different faculty members, at different cost levels and time commitment — and many have their own individual mentors as well.  The end result is that Trump University does not and cannot promise nor even aspire to similar experiences for its attendees, much less similar results for them once they put their training to work in the field.

4.      It is common sense that Trump University cannot guarantee riches any more than Harvard University can guarantee a Rhodes Scholarship, or MIT can guarantee a Nobel Prize, or any other educational enterprise can guarantee even an entry-level job.  Nevertheless, in an abundance of caution to confirm that its attendees accept this obvious fact, Trump University has them acknowledge in writing that it "has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy."  (Exhibit A — Plaintiff's "Terms and Conditions" of enrollment executed by Plaintiff on 8/10/08.)  Similarly, before Plaintiff attended any program, workshops or seminars, she signed the Enrollment Form which stated in pertinent part,"

> This Program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump U, their affiliates or their officers, principals, representatives, agents or employees.

(Exhibit B — Plaintiff's Enrollment Form executed by Plaintiff on 8/10/08.)

Trump University also provides other similar disclaimers as well.

5.      Plaintiff is a young adult woman, who contends that she is a shoe and handbag designer, and who evidently has been in financial difficulty since 2009 — well after she began attending several Trump University programs.  While she was attending those programs, she repeatedly extolled their virtues in writing and on videotape.  Nevertheless, once she was trained, Plaintiff evidently attempted exactly one real estate transaction with the help of a fellow Trump University student-mentor, and then turned on him and threatened to sue him personally when it took a few months for that investment to pay off.  The student-mentor ended up profiting on the investment after being forced by Plaintiff to buy her out.

6.      At about that point, Plaintiff began in earnest her ongoing campaign to get money from Trump University.  She has relied on two forms of extortion to do so.  The first form of extortion is actionable, and is the basis of this counterclaim: Plaintiff has repeatedly published statements to third parties about Trump University orally, in writing, and on the Internet that are per se defamatory, including many completely spurious accusations of actual crimes.  Plaintiff's tortious intent and methods are best summarized in her own words: "I am contacting the Better Business Bureau, the Federal Trade Commission, Bureau of Consumer Protection and the FDIC as well as posting the facts of my highly negative experience on a wide array of interest sites . . . I am contacting the media . . . so that they can expose this scam and am willing to go to whatever lengths to obtain my money back . . .."

7.      Plaintiff's second form of extortion is not actionable, at least not at this stage of the case: Plaintiff has brought her claims against Trump University in a purported "nationwide class action" managed, controlled, and financed by class action lawyers who may have written some if not all of Plaintiff's defamatory letters themselves.  Nevertheless, a class action is completely inappropriate for Trump University's attendees across the nation, not only because the vast majority of them report that they are very satisfied with their training and Trump University, but also because all of them had absolutely unique experiences, skills, resources, opportunities, successes, and failures

before, during, and after their enrollment.  The only justification for lumping these satisfied and completely diverse attendees into one class is that the cost of defense for any class action might possibly help extort money.

## JURISDICTION AND VENUE

8.     This Counterclaim is brought in this federal district before this Court pursuant to 28 USC section 1367(a) because Plaintiff has sued Trump University herein, and this pleading presents Trump University's compulsory counterclaim.

## PARTIES

9.     Defendant and Counterclaimant Trump University is a limited liability company registered and domiciled in the State of New York, with its principal place of business located in New York City.  Trump University provides a variety of classes, seminars, and other training programs throughout the United States, with most of them focused on real estate investing and finance.

10.     Plaintiff and Counterdefendant Tarla Makaeff allegedly is an Orange County resident who has chosen to sue in this District for unknown reasons.  She voluntarily attended about seven Trump University programs from August 2008 to June 2009.  Trump University is informed and believes that Plaintiff attended none of the programs in San Diego.  In fact, the only "relation" Plaintiff and her potential claims appear to have in San Diego is that her attorneys office here.

11.     Counterdefendants ROES 1-10 are parties presently unknown to Trump University, but they may be responsible together with Plaintiff for some or all of the defamations and/or other wrongdoing alleged herein.  Trump University will amend this Counterclaim to allege the true names and capacities of such ROE Counterdefendants if and when discovery reveals their identities.

12.     Trump University is informed and believes, and thereon alleges, that such ROE Counterdefendants were and are the agents, joint tortfeasors, co-conspirators, and/or aiders and abettors of Plaintiff in the defamations and/or other wrongdoing alleged herein, and that they were acting within the course and scope of such agency, conspiracy, and/or other relationship with Plaintiff at the material time.

/ / /

## FACTUAL ALLEGATIONS CONCERNING TRUMP UNIVERSITY

13.     Trump University was founded in 2005 to provide educational programs to the American public including seminars, workshops, training and mentoring services nationwide. Trump University specializes in programs concerning real estate investment, wealth preservation, entrepreneurship, marketing, and related personal financial topics.  Its faculty includes successful entrepreneurs and scholars from leading colleges and universities including Columbia, Northwestern, and Dartmouth.

14.     Trump University's attendees are regularly polled in writing to ensure that they are satisfied with the information, training, and support provided to them, and to get their input on suggested improvements and future topics.  As of 2010, over 95% percent of those responding to written surveys had given a rating of "excellent" to the quality, relevance, and usefulness of the presentations.  When asked to indicate whether the attendees would attend another Trump University program, and would recommend Trump University to others, over 99%, including Plaintiff, replied that they would do both.  (Exhibit C — Spreadsheet of Trump University attendee polling.)

15.     Based on these very high attendee-reported levels of satisfaction, as well as the individual success stories and other anecdotal evidence known to the faculty and management of Trump University, the company is informed and believes, and thereon alleges, that at least about 95% of its total attendees of Trump University were and are satisfied customers.

16.     By contrast, even assuming the grand total of seventeen complainants cited by Plaintiff in her complaint (including Plaintiff herself) were actual Trump University attendees — and not in reality an even smaller group using pseudonyms on the Internet to "manufacture" a record — those complainants represent far less than one percent of the total number of attendees at Trump University since 2005.  (Plaintiff's Complaint, pages 12-15.)

17.     Trump University is informed and believes, and thereon alleges, that its business as a provider of courses concerning real estate investment is very dependent upon the company's excellent and widespread reputation of providing unique, hands-on, essential, useful, and personal information and training to its attendees.  Consequently, false and intentional defamation of that reputation by Plaintiff and others — whether their defamation is carried out openly, or anonymously,

or under pseudonyms — is particularly harmful to Trump University, and can result in significant harm and financial loss to the company by unfairly and wrongly diminishing the public perception of its reputation, integrity, and credibility.

## FACTUAL ALLEGATIONS CONCERNING PLAINTIFF

18.     As of 2008, Plaintiff was about 35 years old, and evidently was a shoe and handbag designer.  Plaintiff freely and voluntarily began attending the programs offered by Trump University in Los Angeles in August 2008 when invited by a personal friend.  She did not begin her attendance due to any solicitation, advertising, or other communication by the company.

19.     Trump University is informed and believes, and thereon alleges, that the sequence of events concerning Plaintiff's involvement with the company was as follows:

a.      Beginning on 8/8/08, Plaintiff attended a three-day program entitled "Fast Track to Foreclosure Workshop" with a personal friend, allegedly splitting the cost of $1,495.

b.      On 8/10/08, at the end of the Workshop, Plaintiff signed up for the Trump University "Trump Gold Elite" program" at a cost of $34,995.  This program entitled Plaintiff to: (i) attend five other programs free of charge over the next six months; (ii) receive training publications, software, and other materials; (iii) get a three-day mentoring session in the field from other more advanced attendees and instructors; and (iv) have her business incorporated.  Plaintiff accepted and utilized every one of those benefits.

c.      Plaintiff never paid any more money for any purpose to Trump University thereafter.

d.      Plaintiff signed at least two documents on 8/10/08 verifying her personal awareness that Trump University did not and could not guarantee her success in real estate:

i.      The "Terms and Conditions" form (Exhibit A dated 8/10/08) provided in pertinent part:

> "Trump U programs are provided for training and educational purposes only. . . . TU does not procure or identify specific real estate deals.  You may be exposed to deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment.  We do not recommend or guarantee any investment or property. . . . You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitably, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy. . . . If you choose to pursue a transaction, it is your sole

1    responsibility to seek independent advice from professionals such as Real Estate
2    Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers."

3           ii.     The "Enrollment Form" (Exhibit B Page 1 dated 8/10/08) provided in
4    pertinent part:

5    "This program is provided for information only and no guarantees, promises,
     representations or warranties of any kind regarding specific or general benefits,
6    monetary or otherwise, have been or will be made by the Program, Program
     instructors, Trump U, their affiliates or their officers, principals, representatives,
7    agents or employees (collectively "Principals").  I acknowledge that none of the
     Principals is engaged in rendering financial, investment, legal, accounting, or other
8    professional services or advice.  If such professional advice or other exert services are
     required, I acknowledge that I should seek the services of a competent professional
9    who can consider my particular circumstances.  I acknowledge that none of the
     Principals is responsible for, and they shall have no liability for, my business success
10   or failure, my acts or omissions, the appropriateness of my business decisions, or my
     use of or reliance on Program information."

11

12          In addition, the contract included an absolute right to cancel within three days of the
13   program.  The Notice of Cancellation (Exhibit B Page 2) provided in pertinent part:

14   "You may cancel this transaction without any penalty or
     obligation within three business days from the above date.
15
     If you cancel, any property traded in, any payments made by
16   you under the contract of sale, and any negotiable instrument
     executed by you will be returned within ten business days
17   following receipt by the merchant of your cancellation notice,
     and any security interest arising out of the transaction will be
18   cancelled."

19          At no time did plaintiff ever attempt to cancel her contract during the provided three-day
20   period.  In fact, plaintiff made her request for a refund eight months after her enrollment, and after
21   she received and fully participated in every Trump University program provided by her contract.

22          e.     On 9/26/08, Plaintiff began her three-day "In-Field Mentorship."  At the
23   conclusion of that program, she filled out a "Field Mentor Evaluation Form" in which she described
24   her experience as "amazing," rated her mentor as "excellent," and rated every other one of the ten
25   facets of the program as "excellent" as well.  Her only suggestion was to make the program "4-7
26   days total," rather than just three.  (Exhibit D — Field Mentor Evaluation Form dated 9/28/08.)

27          f.     On 10/24/08, Plaintiff began her three-day "Wealth Preservation/Asset
28   Protection Retreat."  At the conclusion of that program, she filled out a rating sheet with "excellent"

COUNTERCLAIM OF DEFENDANT AND COUNTERCLAIMANT TRUMP UNIVERSITY, LLC

marks for all four facets of the program, indicated she would attend and recommend more Trump University seminars, and indicated she wanted to be contacted about upcoming programs and special events offered by the company.  (Exhibit E — Rating Sheet dated 10/24/08.)

g.      On 10/31/08, Plaintiff began her three-day "Creative Financing Real Estate Workshop."  At the conclusion of that program, she filled out a rating sheet with "excellent" marks for all five facets of the program, indicated she would attend and recommend more Trump University Seminars, and indicated that "nothing could be improved."  (Exhibit F — Rating Sheet dated 11/2/08.)

h.      On 1/23/09, Plaintiff began her three-day "Commercial and Multi-Family Retreat."  Trump University has not yet located her rating sheet following that program, but the company is not aware of any negative comments from her at that time.

i.      On 2/6/09, Plaintiff began her three-day "Quick Turn Real Estate Retreat."  Trump University has not yet located her rating sheet following that program, but the company is not aware of any negative comments from her at that time.

j.      In April 2009, after completing five programs and workshops, and after seven months in the "Trump Gold Elite" program, and after providing glowing written reviews, Plaintiff wrote to Trump University stating that she was having significant personal financial difficulties and found herself in a "precarious financial position."  She demanded a full refund.  Trump University explained that it cannot refund her money <u>after</u> she had already participated in every program and received the information, skill set and mentoring she paid for.  Nevertheless, as a showing of good faith, Trump University offered, and Plaintiff accepted, additional free mentoring services on 4/21/09, 5/12/09, and 6/30/09, and Plaintiff also had at least fifteen telephone conferences or email exchanges with yet another mentor.

k.      In the midst of this mentoring, Plaintiff joined with another student/mentor who had considerably more real estate experience, namely Robert Vargas.  Together, they invested in a Las Vegas REO property for refurbishment and resale.  Then, on 6/13/09, Plaintiff attended her last Trump University program entitled "Wealth Summit."

/ / /

l.      At the conclusion of that program, after having demanded her money back about two months earlier, and then subsequently having invested in the Las Vegas property during extensive mentoring, Plaintiff was interviewed on videotape with Mr. Vargas in the background. She praised his expertise and help, praised the hands-on experience of the mentor program, spoke favorably about Trump University, mentioned how much information she had been exposed to, and said that her new real estate knowledge "is a life skill it's important to have."

20.     Plaintiff's entire involvement with and exposure to Trump University as an attendee lasted for about ten months, and involved attendance at seven known programs.  During that time, she made exactly one real estate investment that came to her through another attendee.  Trump University provided no advice or capital in that investment.  Just a few months into the investment, she backed out threatening litigation against her co-investor.

21.     Beginning in late summer 2009, Plaintiff suddenly turned on Trump University, her Las Vegas investment, and her student/mentor and co-investor Mr. Vargas.  Since that tumultuous period ended with a Notice of Default being recorded against her personal residence on 11/16/09, Trump University is informed and believes, and thereon alleges, that Plaintiff's entire reason for her unexpected about-face and attack on Trump University was that her personal financial situation had deteriorated to the point that she became desperate for cash, and for a scapegoat.

22.     As Plaintiff's financial situation worsened, so did her defamatory rhetoric.  Beginning at least as early as September 10, 2009, and continuing thereafter, her actual per se written defamatory statements published to known third parties in letters, and to unknown third parties and the general public on the Internet, include but are not limited to the following:

    a.      Trump University engaged in "fraudulent business practices;"

    b.      Trump University engaged in "deceptive business practices;"

    c.      Trump University engaged in "illegal predatory high pressure tactics;"

    d.      Trump University's "business practices are criminal;"

    e.      Trump University engaged in a "clear practice of personal financial information fraud;"

    f.      Trump University engaged in "illegal bait and switch;"

COUNTERCLAIM OF DEFENDANT AND COUNTERCLAIMANT TRUMP UNIVERSITY, LLC

1        g.     Trump University engaged in a "brainwashing scheme;"

2        h.     Trump University engaged in "outright fraud;"

3        i.     Trump University engaged in "grand larceny;"

4        j.     Trump University engaged in "identity theft;"

5        k.     Trump University engaged in "unsolicited taking of personal credit and

6    trickery into opening credit cards without approval;"

7        l.     Trump University engaged in "fraudulent business practices utilized for illegal

8    material gain;"

9        m.     Trump University engaged in "felonious teachings;"

10        n.     Trump University's teachings "are outright criminal;"

11        o.     Trump University engaged in "neurolinguistic programming and high pressure

12    sales tactics based on the psychology of scarcity;"

13        p.     Trump University engaged in "unethical tactics;" and

14        q.     Trump University engaged in "gargantuan amount of misleading, fraudulent,

15    and predatory behavior."

16      23.    On or about November 2, 2009, Plaintiff continued her campaign to malign and

17    defame Trump University by repeating the per se defamatory statements above and adding others,

18    including but not limited to:

19        a.     Trump University engaged in "blatant lies" when it represented that it

20    provided "mentoring and coaching sessions";

21        b.     Trump University engaged in "fraudulent misleading tactics"; and

22        c.     Trump University used "brainwashing tactics" to manipulate everyone" to lie

23    about their training and experiences.

24    Plaintiff intended and did publish those statements to third parties as part of her campaign described

25    in her own words of her intentions that she was "willing to go to whatever lengths to obtain my

26    money back . . .."

27      24.    Plaintiff's blatant plan of defamation as set out in her own words — or quite possibly

28    in her counsel's words ratified by her signature demonstrate that Plaintiff's defamation of Trump

COUNTERCLAIM OF DEFENDANT AND COUNTERCLAIMANT TRUMP UNIVERSITY, LLC

1    University was knowing, intentional, and carried out pursuant to plan and/or conspiracy with the

2    ROE Counterdefendants.

3         25.    Based on Plaintiff's positive personal experiences with Trump University, its

4    programs, its faculty, and its mentors from 8/8/08 to 6/13/09, and based on her consistently favorable

5    comments about Trump University in writing and on videotape throughout that period, the company

6    is informed and believes, and thereon alleges, that Plaintiff knew that her per se defamatory

7    statements were false, and/or she had serious doubt as to whether they were true.

8         26.    Trump University is further informed and believes, and thereon alleges, that

9    investigation and discovery herein will result in further evidence of per se defamation by Plaintiff,

10   and in further evidence that Plaintiff knew that her per se defamatory statements were false, and/or

11   she had serious doubt as to whether they were true.

12                              **PER SE DEFAMATION**

13        27.    Trump University hereby re-alleges and incorporates by reference herein Paragraphs

14   1-26 above.

15        28.    Plaintiff's publication by letter, email, and Internet of her accusations of criminal,

16   unethical, and immoral conduct by Trump University were and are false, and constitute defamation

17   per se under California Civil Code sections 44, 45, and 46, and under the common law and case law

18   of California.

19        29.    Trump University is informed and believes, and thereon alleges, that Plaintiff

20   published her defamatory statements knowing they were false, or having serious doubts that they

21   were true.

22        30.    Trump University is informed and believes, and thereon alleges, that the third parties

23   to whom Plaintiff published her defamatory statements reasonably understood that the statements

24   were about the company, and that such third parties further reasonably understood the statements to

25   mean that the company had committed criminal, unethical, and/or immoral conduct in fact, and not

26   merely as a matter of Plaintiff's opinion.

27        31.    Trump University is informed and believes, and thereon alleges, that Plaintiff's per se

28   defamation was a substantial factor in causing actual and significant economic damages to the

COUNTERCLAIM OF DEFENDANT AND COUNTERCLAIMANT TRUMP UNIVERSITY, LLC

company, including but not limited to harm to the company's business, increased or additional expenses and/or loss of productive time imposed on the company, and/or loss of reputation, which economic damages may equal or exceed $1,000,000.00, in a total amount to be proven at trial.

32.     Plaintiff's intentional and knowing per se defamation of Trump University constitutes malice, oppression, and fraud under California Civil Code section 3294, and therefore the company is entitled to punitive damages against Plaintiff in an amount sufficient to punish and set an example of her, which amount is to be proven at trial.

## PRAYER

Wherefore, Trump University prays for judgment in favor of the company, and against Plaintiff and all ROE Counterdefendants, as follows:

1.     For economic damages according to proof at trial;

2.     For punitive damages according to proof at trial;

3.     For prejudgment interest to the extent recoverable by law;

4.     For attorney's fees to the extent recoverable by law or contract;

5.     For costs of suit; and

6.     For such other and further relief as the Court may deem just and proper.


Dated:     May 26, 2010                          YUNKER & SCHNEIDER


                                    By:     _____s/ David K. Schneider_____
                                            Attorneys for Defendant and
                                            Counterclaimant
                                            TRUMP UNIVERSITY, LLC
                                            E-mail: dks@yslaw.com