1  David K. Schneider (CSB 139288)
   YUNKER & SCHNEIDER
2  655 West Broadway, Suite 1400
   San Diego, California 92101
3  Telephone:  (619) 233-5500
   Facsimile:  (619) 233-5535
4  Email:  dks@yslaw.com

5  Attorneys for Defendant TRUMP UNIVERSITY, LLC

6

7

8  **UNITED STATES DISTRICT COURT**

9  **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10  TARLA MAKAEFF, on Behalf of Herself        )        Case No. 10 CV 0940 IEG (WVG)
    and All Others Similarly Situated,          )
11                                              )
                      Plaintiff,                )        MEMORANDUM OF POINTS AND
12                                              )        AUTHORITIES IN SUPPORT OF
    v.                                          )        DEFENDANT TRUMP UNIVERSITY,
13                                              )        LLC'S MOTION TO DISMISS UNDER
    TRUMP UNIVERSITY, LLC, a New                )        RULES 12(b)(6), 9(b), AND 8(a)(2)
14  York Limited Liability Company, and         )
    DOES 1 through 50, inclusive,               )
15                                              )
                      Defendant.                )        DATE:   July 12, 2010
16  _____)        TIME:   10:30 a.m.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...............................................................................................................1

II.  BACKGROUND FACTS ....................................................................................................3

    A.  Trump University ...................................................................................................3

    B.  Plaintiff ..................................................................................................................3

III.  ALLEGATIONS OF THE COMPLAINT...........................................................................4

    A.  The "Basic Nature of the Action" ..........................................................................4

    B.  "Defendant's Unlawful Conduct"...........................................................................4

    C.  "Plaintiff's Facts"...................................................................................................5

    D.  "Class Allegations" ................................................................................................5

    E.  The Actual Contract ...............................................................................................6

IV.  STANDARDS FOR ADJUDICATION ..............................................................................8

    A.  Rule 12(b)(6)..........................................................................................................8

    B.  Rule 9(b) .................................................................................................................8

    C.  Rule 8(a)(2) ............................................................................................................9

V.  DISCUSSION ....................................................................................................................10

    A.  The Basic Claim of This Case Is "Educational Malpractice," Which Is
        Barred in California ..............................................................................................10

        1.  California Law ..........................................................................................10

        2.  Other States Are In Accord......................................................................10

    B.  The Contract-Related Claims Do Not Avoid the "Educational
        Malpractice" Bar Because Plaintiff Concedes the Contractual Goods and
        Services Were Provided .........................................................................................11

        1.  The Key Defect of the Contract-Related Claims ......................................11

        2.  The Contract-Related Claims...................................................................12

            a.  Fourth Cause of Action for Breach of Contract............................12

            b.  Fifth Cause of Action for Breach of Implied Covenant.................13

            c.  Sixth Cause of Action for Money Had and Received....................13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

**TABLE OF CONTENTS (cont.)**

**Page**

C.   The Fraud-Related Claims Do Not Avoid the "Educational Malpractice" Bar Because No Reasonable Reliance Can Be Established.................................14

    1.   The Key Defect of the Fraud-Related Claims.............................................14

    2.   The Fraud Related Claims ..........................................................................15

        a.   Seventh Cause of Action for Negligent Misrepresentation ...........15

        b.   Eighth Cause of Action for Fraud...................................................15

        c.   Ninth Cause of Action for False Promise .......................................15

D.   The Remaining Statutory Claims Do Not Avoid the "Educational Malpractice" Bar Because None of the Statutory Standards Are Met.................15

    1.   The Key Defect of the Statutory Claims....................................................15

    2.   The Statutory Claims .................................................................................15

        a.   First Cause of Action for Violation of Section 17200 — The "UCL".....................................................................................15

        b.   Second Cause of Action for Violation of Section 1750 — The "CLRA" ...................................................................................17

        c.   Third Cause of Action for Violation of Section 17500 — The "False Advertising Law" .........................................................17

E.   All Claims Must Be Dismissed Under Rule 12(b)(6)............................................18

F.   All Fraud-Related Claims Also Must Be Dismissed Under Rule 9(b) ..................18

G.   The Purported Class Claims Must Be Dismissed Under Rule 8(a)(2), and the Purported Nationwide Statutory Class Claims Must Also Be Dismissed Under California Law ................................................................................................18

    1.   Rule 8(a)(2) and the Class Claims ............................................................18

    2.   California Law and the Nationwide Statutory Claims ...............................20

VI.   CONCLUSION..................................................................................................21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anuziato v. eMachines, Inc.*,
    402 F.Supp.2d 1133 (C.D. Calif. 2005)..................................................17

*Ashcroft v. Iqbal*,
    ___US___; 129 S.Ct. 1937 (2009).........................................................9

*B.L.M. v. Subo & Deitsch*,
    55 Cal.App.4th 823 (1997) ...................................................................14

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) ..................................................................8

*Baymiller v. Guarantee Mutual Life Company*,
    2000 WL 33774562 (CD Calif., 2000) ...................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 US 544 (2007)....................................................................................9

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) .....................................................................8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal.4th 163 (1999) ............................................................................16

*Cohen v. DIRECTV*,
    178 Cal.App.4th 966 (2009) ..................................................................20

*Continental Airlines, Inc. v. McDonnell Douglass Corp.*,
    216 Cal.App.3d 388 (1989) ...................................................................14

*County of Riverside v. Loma Linda Univ.*,
    118 Cal.App.3d 300 (1981) ...................................................................10

*Desaigoudar v. Meyercord*,
    223 F.3d 1020 (9th Cir. 2000) .................................................................8

*Epstein v. Washington Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ...................................................................8

*Guz. v. Bechtel National, Inc.*,
    24 Cal.4th 317 (2000) ............................................................................13

*In re GlenFed, Inc. Securities Litigation*,
    42 F.3d 1541 (9th Cir. 1994) ...................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

**TABLE OF AUTHORITIES (cont.)**

<u>Page</u>

*In re Stac Electronics Securities Litigation*,
     89 F.3d 1399 (9th Cir. 1996) ...............................................................6

*Kashmiri v. Regent of the Univ. of California*,
     156 Cal.App. 4th 809 (2007) .............................................................10

*Kearns v. Ford Motor Co.*,
     567 F.3d 1120 (9th Cir. 2009) ........................................................9, 15

*Lozano v. AT&T Wireless Svcs., Inc.*,
     504 F.3d 718 (9th Cir. 2007) ...........................................................16

*McBride v. Boughton*,
     123 Cal.App.4th 379 (2004) .............................................................13

*McKell v. Washington Mutual, Inc.*,
     142 Cal.App. 4th 1457 (2006) ..........................................................16

*Moore v. Brewster*,
     96 F.3d 1240 (9th Cir. 1996) .............................................................8

*Moore v. Kayport Package Express, Inc.*,
     885 F.2d 531 (9th Cir. 1989) .............................................................9

*Nordberg v. Trilegiant Corp.*,
     445 F.Supp.2d 1082 (N.D.Calif. 2006)...............................................20

*Norwest Mortgage, Inc. v. Superior Court*,
     72 Cal.App.4th 214 (1999) ...............................................................20

*OCM Principal Opportunities Fund v. CIBC World markets Corp.*,
     157 Cal.App.4th 835 (2007) .............................................................14

*Oestreicher v. Alienware Corp.*,
     544 F.Supp.2d 964 (N.D. Calif. 2008)................................................17

*Parks Sch. Of Business v. Symington*,
     51 F.3d 1480 (9th Cir. 1995) .............................................................8

*Peter W. v. San Francisco USD*,
     60 Cal.App.3d 814 (1976) ...............................................................10

*Ross v. Creighton Univ.*,
     957 F.2d 410 (7th Cir. 1992) .......................................................11, 12

iv      Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

**TABLE OF AUTHORITIES (cont.)**

<u>Page</u>

*Smith v. Alameda County Social Serv. Agency*,
     90 Cal.App.3d 929 (1979) ...................................................................................11

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
     72 Cal.App.4th 861 (1999) ..................................................................................16

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*,
     405 F. Supp.2d 1141 (C.D. Calif. 2005)............................................................20

*Swartz v. KPMG LLP*,
     476 F.3d 756 (9th Cir. 2007) .................................................................................6

*United States ex rel. Costner v. United States*,
     317 F.3d 883 (8th Cir. 2003) ...............................................................................18

*Utility Consumers' Action Network (UCAN) v. Sprint Solutions, Inc.*,
     259 F.R.D. 484 (S.D. Calif. 2009) ......................................................................20

*Vess v. Ciba-Geigi Corp. USA*,
     317 F.3d 1097 (9th Cir. 2003) ...............................................................................9

*Webb v. Smart Document Solutions, LLC*,
     499 F.3d 1120 (9th Cir. 2009) .............................................................................16

*Zumbrun v. Univ. of So. California*,
     25 Cal.App.3d. 1 (1972) .............................................................................11, 12


**Statutes**

28 USCA section 1332...............................................................................................19

California Business & Professions Code section 17200 *et seq.* ....................................15

California Business & Professions Code section 17500 *et seq.* ....................................17

California Civil Code section 1750, *et seq.* .................................................................17

California Civil Code section 1770(a) ..........................................................................17

California Code of Civil Procedure section 1856 .........................................................14

/ / /

v          Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

**TABLE OF AUTHORITIES (cont.)**

<u>**Page**</u>

Federal Rule of Civil Procedure 12(b)(6) ................................................................8, 13, 18, 19, 20

Federal Rule of Civil Procedure 8(a)(2) ............................................................................9, 19, 21

Federal Rule of Civil Procedure 9(b).................................................................................18, 19, 21

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

# I.    **INTRODUCTION**

Plaintiff Tarla Makaeff has attempted to bring claims against Defendant Trump University, LLC, that California law simply does not permit.  To make matters worse, Plaintiff has engaged in an ongoing campaign of virulent defamation against Defendant.  Because of plaintiff's misconduct, Defendant has suffered harm that can be remedied only by a dismissal of plaintiff's claims in this lawsuit and by an award of actual and exemplary damages, which Defendant is pursuing in its Counterclaim.

Plaintiff attended and benefitted from a series of seminars and mentoring sessions in California offered by Trump University over the course of ten months.  After she completed this training, Plaintiff found herself in desperate financial straits, based on circumstances completely unrelated to either Defendant or the training she received.  With no other place to turn, Plaintiff then proceeded to demand a full refund of the amount she paid for Defendant's training, even though she had already received all of its promised benefits.  Because she had already received the benefit of her bargain, Defendant justifiably refused to refund Plaintiff her money, but as a showing of good faith, offered to provide her, at no charge, with certain valuable additional services, which she accepted.  After accepting and receiving these additional services, she then stated in writing that she was "willing to go to whatever lengths to get my money back."  True to her word, and despite having attested to the quality of the program, she proceeded to defame Trump University and those associated with it.  No stranger to publicity, Plaintiff then agreed to act as the named Plaintiff in this baseless "nationwide class action" lawsuit.

As explained in this Motion, Plaintiff's lawsuit is fatally flawed because the essence of each of the claims in this action is nothing more than "educational malpractice," which has been barred by California law since 1976.  Plaintiff disingenuously attempts to get around this bar by repackaging these educational malpractice claims as "contract," "fraud," or "consumer protection" causes of action.  California courts, as well as those of other states, however, have proscribed attempts to recast educational malpractice claims, nominally, under other theories of recovery or provisions of law.

/ / /

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

In addition, Plaintiff's contract claims fail because Plaintiff received all the goods and services she contracted for, thus leaving only her non-actionable subjective complaints about the quality of the program.  The "fraud" claims also fail because Plaintiff signed extensive disclaimers confirming that the program "has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy."  Consequently, Plaintiff cannot demonstrate reasonable reliance.  Moreover, the allegations of fraud are vague, confused, and inadequate, even though the law requires great specificity.  Finally, the "consumer protection" claims fail because none of them meet their statutory requirements.

In addition, though, the lawsuit suffers from another infirmity that bars it as alleged at the pleading stage.  Specifically, the case does not present a plausible claim as a putative class action insofar as it lacks the necessary element of commonality.  Plaintiff and her fellow participants in Defendant's programs attended different seminars, in different cities, taught by different instructors, at different cost levels and time commitments, and had different mentors over different periods of time.  They also started with different abilities, skills, education, resources, financial backing, and experience before their enrollment.  Then, they ended up with different goals, opportunities, local markets, successes, failures, rates of return, and levels of satisfaction after their enrollment.  This completely diverse collection of unique individuals with different experiences cannot possibly comprise a viable California class based on the boilerplate allegations of commonality in the complaint, much less a nationwide class.  Last but not least, the California consumer protection statutes cannot be enforced outside of California in any event.

Because of these glaring deficiencies, the Court should dismiss with prejudice each and every claim contained in the complaint under Rules 12(b)(6), 9(b), and 8(a)(2).  Indeed, even if Plaintiff could salvage an individual claim by extensive amendment, she could not pursue it before this Court because she does not even meet the jurisdictional minimum for this diversity case.  For these reasons, Trump University respectfully requests that the entire case be dismissed.

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

## II.   BACKGROUND FACTS

By law, the Court must rely almost exclusively on the allegations of the Complaint to decide this motion.  Unfortunately, those allegations ignore many of the true background facts which put the case in a very different light.  Trump University here offers the Court a very brief synopsis of a few of those true facts, but not as an argument supporting the motion.  Rather, they are simply provided to show that there are two very different sides to this story.

### A.   Trump University

Trump University began offering its courses to the public in 2005.  Trump University believes it offers a unique and practical program of seminars, materials, hands-on mentoring, and differing levels of training in real estate investment.  The faculty includes successful real estate entrepreneurs, and scholars from leading colleges and universities including Columbia, Northwestern, and Dartmouth.

The Complaint pretends that all attendees are brainwashed into throwing their money at Trump University.  Unfortunately, this is far from the truth.  In fact, the vast majority of people so far have attended only the initial introductory seminar, which is _free_.  Of those, less than 9% have paid for _any_ more training.  The overwhelming majority attend one three-day seminar costing about $1,500.  Only about 1-2% have ever gone on to additional training at greater expense.

One last important point about the other attendees is not found in the Complaint.  Plaintiff lists a grand total of 16 mostly anonymous (but presumably real and presumably different) people who have railed against the program on the Internet.  Plaintiff does not point out that these unknown people, even assuming they actually exist and attended any training, comprise less than 1% of all attendees.  She also does not point out that over 95% of all attendees who responded to written surveys rated the program's seminars as "excellent" in quality, relevance, and usefulness.  Furthermore, over 99% who responded in written surveys stated that they would attend another Trump University program and would recommend that others do so as well.

### B.   Plaintiff

Plaintiff's own Complaint curiously fails to mention that she too rated the seminars and mentoring in writing as "excellent," "amazing," and "nothing could be improved" except

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

1  lengthening some of them.  During and after the program, she made exactly one other actual

2  investment and rated her mentor as "excellent" in a lengthy videotape praising Trump University.

3  ### III.   ALLEGATIONS OF THE COMPLAINT

4  **A.   The "Basic Nature of the Action"**

5  The basic gist of the Complaint is found in Paragraphs 1-4 under "Nature of the Action."

6  Plaintiff alleges that Trump University promises a "complete real estate education" with

7  "mentorships" supported by a "power team."  Instead, the attendees got "infomercials" pushing for

8  paid attendance at "additional seminars or workshops."  The "mentorships" allegedly turned out to

9  consist of "no practical insights and no mentoring."  In short, "all Trump University provides is

10  empty promises," and "[p]laintiff and the class members did not receive what they bargained for."

11  These generalities are followed by more specific allegations concerning "Defendant's Unlawful

12  Conduct," "Plaintiff's Facts," and "Class Allegations."

13  **B.   "Defendant's Unlawful Conduct"**

14  To begin with "Defendant's Unlawful Conduct," Paragraphs 13-37 provide a colorful parody

15  of Trump University seminars and sales pitches, copies of pages from the program website, and a

16  host of complaints about the program supposedly gathered from unknown sources across the Internet

17  and the media allegedly who attended different courses in different cities and different times.

18  However, virtually none of these allegations have any relevance to Plaintiff:

19  (i) Paragraphs 15-21 concern the "Free Introductory Course," but there is no allegation that

20  Plaintiff ever attended it (she didn't), and hence Plaintiff implicitly concedes she never relied on or

21  even heard any of the alleged representations supposedly made there.  In short, they are irrelevant.

22  (ii) Paragraphs 22-28 concern the "1-year Apprenticeship," but most of them recite alleged

23  bad acts that are simply never mentioned or alleged in any cause of action or claim for relief by

24  Plaintiff.  They include allegedly inducing attendees to increase their credit card limits and hence

25  their fees and interest paid, harming their credit histories, teaching them to post signs allegedly

26  illegal in some jurisdictions, and subjecting them to conflicts of interest.  All these supposed bad acts

27  are irrelevant.  The only relevant allegations to Plaintiff's claims are that the promised mentorship

28  "does not provide the details, support or training the students need," and that there are no refunds.

(iii) Paragraphs 29-35 concern mostly irrelevant allegations about the "Trump Gold Program" costing $35,000, which allegedly came with promises of "guaranteed success," the training to create a business earning "up to tens of thousands of dollars of monthly income" or more, and the same "priceless" mentorship and "power team" that proved to be short-lived and useless – and no refunds.

(iv) Paragraphs 36-37 concern totally irrelevant allegations about a poor rating by the Better Business bureau, a New York Department of Education demand that the term "University" not be used, and 16 mostly anonymous complaints on the Internet.  None of these allegations are further alleged to have affected Plaintiff or even to have been known to Plaintiff at any material time.

**C.    "Plaintiff's Facts"**

Next are "Plaintiff's Facts" in Paragraphs 38-47.  Plaintiff never attended the initial free seminar, and she never alleges that she was solicited to attend the $1,500 seminar either.  In fact, she never alleges that she looked at the Trump University website and never alleges that she relied on or even saw any advertising by the company.  Instead, she claims that she did not get the personal instruction and contact she expected, that she was 'guaranteed" a profit of $35,000 on her first real estate transaction, and that the only two "deals" she was introduced to were somehow illegal, unprofitable, involved conflicts of interest, or all three.  She also makes the irrelevant allegation that she received a telephone call for putting out "illegal" signs.

**D.    "Class Allegations"**

Next are the "Class Allegations" in Paragraphs 46 and 48-52.  These are pure boilerplate with no supporting factual allegations of commonality beyond the 16 mostly anonymous Internet postings in Paragraph 37.  Instead, Plaintiff simply alleges without any other factual support that her "experiences with Trump University are typical of the class and the many hundreds (if not thousands) of other Trump University students who have registered their complaints online and with defendants."  There are no other factual allegations whatsoever to overcome or even address the many personal, geographical, financial, timing, attendance, instructors, or any other differences among the attendees throughout the United States – over 91%  of whom <u>paid nothing</u>.

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

**E.**      **The Actual Contract**

Finally, we turn to the actual written contract between Plaintiff and Trump University.  Not surprisingly, it gets no mention at all in Plaintiff's 17 pages and 47 paragraphs of factual allegations.  Instead, the only specific mention of it is buried in Paragraph 73 of the Breach of Contract cause of action.  There, Plaintiff represents that she has attached a "true and correct copy" of the contract as Exhibit A to the complaint – a one-sided document.  However, the truth is that the contract consists of a two-sided document, and a "Terms and Conditions" page, both provided to Plaintiff and signed by her before she attended any Trump University program.  Both are attached hereto as Exhibit 1.

The Court may consider and rely on the correct, attached version of the complete contract.  *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (court may consider the full text of a document that the complaint quotes only in part).  The Ninth Circuit has also established that a plaintiff may not attempt to survive a Rule 12(b)(6) motion by deliberately omitting documents upon which claims are based.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned").

Consideration of the complete and correct contract is crucial for a number of reasons.  First, the exact goods and services that Plaintiff was to get from Trump University in return for her payment are listed under "Purchase(s)" next to her selected program, namely the "Trump Gold Elite."  There are seven items listed.  While the Complaint alleges that those items, in Plaintiff's opinion, were not as useful as represented, Plaintiff either explicitly concedes or does not deny in the complaint that she actually received each one.  Second, the front page of the contract submitted by Plaintiff contains a strong disclaimer that is not mentioned in the complaint, but that bears directly on Plaintiff's reasonable reliance:

> "This program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump U, their affiliates or their officers, principals, representatives, agents or employees (collectively "Principals").  I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice.  If such professional advice or other exert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular

6

1
2
3

circumstances.  I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts or omissions, the appropriateness of my business decisions, or my use of or reliance on Program information."

4   Third, the "Terms and Conditions" portion of the contract not submitted by Plaintiff contains

5   an even stronger underlined disclaimer that also bears directly on Plaintiff's reasonable reliance:

6
7

"Trump U programs are provided for training and educational purposes only.

8
9

TU does not procure or identify specific real estate deals.  You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment.  We do not recommend or guarantee any investment or property.

10
11
12
13
14

You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy.  Further, you agree that TU is not endorsing your project and you shall not represent same to any third-party.  Further, TU is not rendering legal or financial advice.

15
16

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as real estate Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers."

17   Directly above Plaintiff's signature on the front page of the contract is the following representation

18   by her:

19
20

"By signing below, I ('Participant') acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form."

21   Plaintiff similarly signed and dated the "Terms and Conditions" portion of the contract.

22   Finally, the contract includes an absolute right to cancel within three days of the program.

23   The Notice of Cancellation states in pertinent part:

24
25

"You may cancel this transaction without any penalty or obligation within three business days from the above date.

26
27
28

If you cancel, any property traded in, any payments made by you under the contract of sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the merchant of your cancellation notice, and any security interest arising out of the transaction will be cancelled."

At no time did Plaintiff ever attempt to cancel her contract during the provided three-day period.  In fact, Plaintiff waited 10 months before she demanded a refund, and only then after she had: (1) received and fully participated in every Trump University program provided by her contract; and (2) rated the programs she attended as "excellent."

## IV.   STANDARDS FOR ADJUDICATION

### A.   Rule 12(b)(6)

A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  See *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under FRCP 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Hence, the issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

When evaluating such a motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996).  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

### B.   Rule 9(b)

FRCP 9(b) specifically provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Although the substantive elements of fraud are determined by state law, the federal courts nonetheless require that those elements must be pled with particularity under the Rule.  *Moore v. Brewster*, 96 F.3d 1240, 1245-46 (9th Cir. 1996); see also *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000) (fraud must be pled "with a high degree of meticulousness").  It must be noted that the particularity requirement applies to all allegations of fraud, even if the alleged conduct is intended to bring the claims under state

/ / /

1   consumer protection statutes rather than an actual claim of common law fraud.  *Kearns v. Ford*

2   *Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009).

3        The courts apply this requirement of particularity by ensuring that allegations of fraud

4   specify the alleged fraudulent representations, confirm they were false when made, identify by

5   whom they were communicated, state when and where they were made, and state the manner in

6   which they were false or misleading.  *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547

7   n. 7 (9th Cir. 1994).  The obvious corollary is that allegations that are vague or conclusory are not

8   sufficient to satisfy the particularity requirement.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d

9   531, 540 (9th Cir. 1989).  Allegations of fraud that fail to meet the Rule 9(b) standard must be

10  disregarded, and hence the Court may only consider the remaining allegations to determine if a valid

11  claim has been stated.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

12  **C.**   <u>**Rule 8(a)(2)**</u>

13       FRCP Rule 8(a)(2) requires that a pleading must contain "a short and plain statement of the

14  claim <u>showing that the pleader is entitled to relief</u>."  The Supreme Court has recently explained that

15  this Rule means a complaint must allege "enough facts to state a claim to relief that is plausible on

16  its face."  *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007).  *Twombly* was an antitrust case,

17  but the Supreme Court has even more recently applied the "plausible claim" requirement to <u>all</u>

18  federal civil actions.  *Ashcroft v. Iqbal*, ___US___; 129 S.Ct. 1937, 1949 (2009).

19       The Rule 8(a)(2) requirement of a "plausible claim" means that the complaint must contain

20  "more than labels or conclusions" or "formulaic recitations of the elements of a cause of action," and

21  instead must contain factual allegations "above the speculative level."  *Twombly* at 555 & 570.

22  Mere legal conclusions "must be supported by factual allegations," and whether a complaint states a

23  plausible claim is "a context-specific task that requires the court to draw on its judicial experience

24  and common sense."  *Iqbal* at 1950.  Claims involving complex elements, such as the complaint

25  here, require more extensive factual allegations to establish "plausibility" than simpler cases and

26  claims.  *Twombly* at 566.  Both *Twombley* and *Iqbal* upheld dismissal of implausible claims at the

27  pleading stage under Rule 8(a)(2).  *Twombley* at 567; *Iqbal* at 1952.

28  / / /

9                                   Case No. 10 CV 0940 IEG (WVG)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

# V.   DISCUSSION

## A.   The Basic Claim of This Case Is "Educational Malpractice," Which Is Barred in California

### 1.   California Law

Stripped of all irrelevant factual allegations, and momentarily putting aside Plaintiff's attempted "end runs" based on contract, fraud, and statutory theories, Plaintiff's basic claim is that she was not given a meaningful education by Trump University that properly prepared her for investing in real estate.  This is "educational malpractice," and this negligence theory of liability was first struck down in California in 1976.  *Peter W. v. San Francisco USD*, 60 Cal.App.3d 814, 825 (1976).

*Peter W.* was a public high school student, and that early holding focused closely on the budgetary limitations and many other regulatory constraints of American public schools.  *Peter W., supra,* 60 Cal.App.3d at 825-27.  In the 35 years since then, however, the "educational malpractice" theory has been broadened to bar all inquiries into the nuances of the educational process.  *See, e.g., Kashmiri v. Regent of the Univ. of California*, 156 Cal.App. 4th 809, 826 (2007) (court could hear school fee dispute case because it did not involve inquiry into educational processes); *County of Riverside v. Loma Linda Univ.*, 118 Cal.App.3d 300, 317 (1981) (same).

A consistent concern of the California courts has been that there is no satisfactory standard of care by which to evaluate an educator.  *Peter W., supra,* 60 Cal.App.3d at 824.  Can Trump University reasonably be shown to have failed to meet a sensible and practical educational standard of care because Plaintiff did not become a successful real estate entrepreneur?  Only if the myriad of other issues affecting human success – and beyond the control of any educator – could somehow be factored out, including the student's intelligence and drive, his or her financial resources, the economy, the regulatory climate, upbringing, health, real estate inventory, competition, luck, etc.  The California courts have recognized that this kind of inquiry obviously is endless and hopeless.

### 2.   Other States Are In Accord

Most of the more recent case law concerning "educational malpractice" has arisen under the laws of other states.  One very instructive case from the Seventh Circuit arose under Illinois law, in

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

which the court struck down a claim for "educational malpractice" against a private university that allegedly did not properly educate a student athlete who read at grade school level.  *Ross v. Creighton Univ.*, 957 F.2d 410, 414-15 (7th Cir. 1992).  The *Ross* court also surveyed the law on point across the United States.

The Seventh Circuit noted that the "overwhelming majority of states that have considered this type of claim have rejected it," including at least eleven states (as of 1992 – nearly twenty years ago), among which were California, New York, New Jersey, Florida, Maryland, Iowa, and Wisconsin.  *Ross, supra,* 957 F.2d at 414 & n.2.  The common rationales included the lack of a satisfactory standard of care (citing *Smith v. Alameda County Social Serv. Agency*, 90 Cal.App.3d 929 (1979)), varying theories of education, varying "attitude, motivation, temperament, past experience and home environment" of students, and the risk of embroiling the courts in overseeing the day-to-day operation of schools of all kinds.  *Id.* at 414-15 (citing numerous cases).  The Seventh Circuit also rejected the *Ross* plaintiff's attempt to "repackage" his "educational malpractice" negligence claim as a contract claim – just as our Plaintiff has attempted to do here.  *Id.* at 416-17.

**B.**     **The Contract-Related Claims Do Not Avoid the "Educational Malpractice" Bar Because Plaintiff Concedes the Contractual Goods and Services Were Provided**

**1.     The Key Defect of the Contract-Related Claims**

As noted above, Plaintiff either admits or does not deny that she received all seven items of goods and services included in the "Trump Gold Elite" program that she purchased from Trump University.  These allegations (or lack of same) are fatal to Plaintiff's contract-related claims because – if the underline quality of those goods and services are judicially considered, rather than the simple fact that the correct underline quantity was provided – then the courts will indeed be making the barred inquiry into educational processes.

That is exactly the holding of the Seventh Circuit in *Ross* just touched on above.  The Court noted that almost all states – including California – see the basic relationship between school and student as contractual.  *Ross, supra*, 957 F.2d at 416 (*citing Zumbrun v. Univ. of So. California*, 25 Cal.App.3d. 1, 10 (1972).  Nevertheless, the *Ross* court upheld dismissal of two breach of contract claims at the pleading stage on the following analysis directly on point here:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

"There is no question, we believe, that <u>Illinois would adhere to the great weight of authority and bar any attempt to repackage an educational malpractice claim as a contract claim.  As several courts have noted, the policy concerns that preclude a cause of action for educational malpractice apply with equal force to bar a breach of contract claim attacking the general quality of an education.</u>  'Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction . . . [and] is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution.

"<u>To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough.  Instead, he must point to an identifiable contractual promise that the defendant has failed to honor.</u>  Thus, as was suggested in [the New York case of] *Paladino*, if the defendant took tuition money and then provided no education, or alternatively, promised a set number of hours of instruction and then failed to deliver, a breach of contract action may be available. . . . [S]ee also [the California case of] *Zumbrun* (breach of contract action allowed against university when professor declined to give lectures and final exam, and all students received a grade of 'B').  Similarly, a breach of contract action might exist if a student enrolled in a course explicitly promising instruction that would qualify him as a journeyman, but in which the fundamentals necessary to attain that skill were not even presented.  <u>In these cases, the essence of the plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all.  Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise.</u>"  *Ross, supra,* 957 F.2d  at 416-17 (citations omitted, emphasis added).

In this case, Plaintiff has not and cannot allege that she did not get the exact goods and services that Trump University contracted to provide.  She has instead repeatedly alleged that those goods and services were "not good enough," to quote the Seventh Circuit.  That is a "repackaged" educational malpractice negligence claim masquerading as a contract claim.  Trump University respectfully asks this Court to join with the "great weight of authority" and "bar [Plaintiff's] breach of contract claim attacking the general quality of an education."

## 2. **The Contract-Related Claims**

### a. **Fourth Cause of Action for Breach of Contract**

This contract claim is found in Paragraphs 72-77.  It flatly alleges in Paragraph 76 that "Trump University breached the terms of its standardized contracts with Plaintiff and the Class by failing to provide them with the promised products and services as contracted."

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

Since Plaintiff does not deny getting her seven contracted items on Exhibit 1, this contract claim can only go to the "general quality" of her education through that program.  Consequently, this contract claim is merely a "repackaged" negligence claim for "educational malpractice," and barred by California law.

### b.      Fifth Cause of Action for Breach of Implied Covenant

This contract-related claim is found in Paragraphs 78-84.  The key allegation is in Paragraph 83: "Defendant did not provide and/or unfairly interfered with the right of Plaintiff and Class members to receive the benefits under their agreements with Defendant."

The covenant of good faith and fair dealing exists in every contract under California law, but it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Guz. v. Bechtel National, Inc.*, 24 Cal.4th 317, 349-50 (2000).  As already covered above under the breach of contract discussion, Trump University met all of its "substantive duties" under the contract when it provided all seven specific goods and services called for by Exhibit 1.  As a matter of law, the company has also met its duties under the covenant as well.

### c.      Sixth Cause of Action for Money Had and Received

This final contract-related claim is a so-called "common count" found in Paragraphs 85-87.  The key allegations are that Trump University has "wrongly and deceptively" obtained a benefit – namely payment for its educational goods and services – and that payment must be "disgorged" for unspecified reasons.  Based on the incorporation boilerplate in Paragraph 85, Plaintiff claims disgorgement based on her allegation that those educational services were "not good enough."

Under California law, a common count such as this claim is not a specific cause of action, but instead is merely "an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts."  *McBride v. Boughton*, 123 Cal.App.4th 379, 394 (2004).  If that specific cause of action is "demurrable" – i.e., fails to state a cause of action as under Rule 12(b)(6) – then the common count based on it is also demurrable.  *Ibid.*  That is exactly the situation we have here, in which Plaintiff's contract claim is barred, and hence so is this common count.

**C.    The Fraud-Related Claims Do Not Avoid the "Educational Malpractice" Bar Because No Reasonable Reliance Can Be Established**

### 1.    The Key Defect of the Fraud-Related Claims

All viable claims of deception in California – whether intentional or negligent – require reasonable reliance on the plaintiff's part.  *OCM Principal Opportunities Fund v. CIBC World markets Corp.*, 157 Cal.App.4th 835, 845 (2007); *B.L.M. v. Subo & Deitsch*, 55 Cal.App.4th 823, 834 (1997).  Here, the claimed deceptions are the same litany already noted above in the discussion of Plaintiff's allegations: Trump University supposedly misrepresented or otherwise deceived Plaintiff to the effect that she would get a "complete real estate education," a "one-year apprenticeship," "one-to-one mentorship," "practical real estate techniques and contracts," a "power team" of professionals, a money-back "guarantee" on her first real estate deal, and a promise of income "up to ten thousand dollars a month or more."  Paragraphs 89, 101, and 108-09.

The common problem with these fraud-related claims is that Plaintiff cannot establish the essential element of reasonable reliance.  She cannot do so because she signed not just one, but indeed <u>two</u> disclaimers in her contract with Trump University that specifically disavowed any and all "guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, [that] have been or will be made by the Program."  *See* Ex. 1 attached hereto.  The disclaimer in the "Terms and Conditions" further provided that "[y]ou acknowledge and agree that [Trump University] has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy."

These broad disclaimers directly contradict Plaintiff's allegations concerning the purported promises, misrepresentations, guarantees, and the like that her fraud-related claims rely on.  California law prohibits so-called "evidence" of pre-contractual representations when they directly contradict the terms of the written contract between the parties.  *See, e.g.*, Cal.Civ.Proc. Code §1856; *Continental Airlines, Inc. v. McDonnell Douglass Corp.*, 216 Cal.App.3d 388, 419 (1989).  The federal courts in California dismiss fraud-related claims in the 12(b)(6) context on the grounds that "there cannot be reasonable reliance upon misrepresentations or a failure to disclose that are

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

contradicted by the express language" of the contracts in question.  *Baymiller v. Guarantee Mutual Life Company*, 2000 WL 33774562, 4 (CD Calif., 2000).

### 2. The Fraud Related Claims

#### a. Seventh Cause of Action for Negligent Misrepresentation

This fraud-related claim is found in Paragraphs 88-99.  The operative misrepresentations have already been cited above – they are found in Paragraph 89.  The disclaimers overcome Plaintiff's boilerplate allegations of reasonable reliance in Paragraph 97, so this claim is not viable.

#### b. Eighth Cause of Action for Fraud

This fraud claim is found in Paragraphs 100-107.  The operative misrepresentations have already been cited above – they are found in Paragraph 101.  The disclaimers overcome Plaintiff's boilerplate allegations of reasonable reliance in Paragraph 105, so this claim too is not viable.

#### c. Ninth Cause of Action for False Promise

This fraud-related claim is found in Paragraphs 108-114.  The operative misrepresentations have already been cited above – they are found in Paragraphs 108-09.  The disclaimers overcome Plaintiff's false allegations of reasonable reliance in Paragraph 111, so this claim is not viable either.

### D. The Remaining Statutory Claims Do Not Avoid the "Educational Malpractice" Bar Because None of the Statutory Standards Are Met

#### 1. The Key Defect of the Statutory Claims

The three statutory claims of Plaintiff each have their specific elements set by the California legislature and interpreted by the courts.  However, Plaintiff's allegations do not meet the statutory standards for any of those claims.

#### 2. The Statutory Claims

##### a. First Cause of Action for Violation of Section 17200 — The "UCL"

The Unfair Competition Law ("UCL") is codified at Business & Professions Code section 17200 *et seq.* and prohibits business practices which are unlawful, unfair, or fraudulent.  Each of these three "prongs" has different elements, and thus each constitutes a separate theory of liability.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  The complaint lists all three prongs and their purported support in Paragraphs 53-59, but the allegations fail to satisfy any of them.

The "unlawful" prong requires an independent and illegal statutory violation.  *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1120, 1127 (9th Cir. 2009).  However, the only statutes alleged to support the "unlawful" prong concern the fraud claims already disposed of above or the three consumer protection statutes now under discussion.  Paragraph 55.  As will be seen, none of those consumer protection statutes has been violated.  The only other purported "illegal" activity alleged in the complaint is the recurring mention of the so-called "bandit" signs in Paragraphs 26, 31, and 45, but that activity is <u>not</u> included in Paragraph 55 as a basis for the "unlawful" UCL prong.  Even if it was, Plaintiff claims no damages or other loss based on that activity.

Turning next to the "unfair" prong of the UCL, the law is in flux for consumer cases (versus cases between business competitors), and there are two potential tests for unfairness.  *Lozano v. AT&T Wireless Svcs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007).  The first test is clearly required for cases between competitors and further requires that the unfairness be "tethered" to a "legislatively declared policy."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 185 (1999).  This case meets neither requirement because it is not between competitors and because it lacks a statutory violation contrary to a legislatively declared policy as already discussed above.

The second test is better suited to consumer cases and requires a balancing of the utility of defendant's conduct against the gravity of harm to plaintiff.  *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861 (1999).  In this case, Plaintiff has suffered no harm at all.  As already discussed above, Plaintiff got exactly the educational goods and services she contracted for.  Her complaint about quality is non-actionable "educational malpractice."  As for the corresponding utility of Trump University's programs, the satisfied customers greatly outnumber the dissatisfied ones in reality.

Turning last to the "fraudulent" prong of the UCL, the applicable measure under the statute is whether the alleged fraudulent business practice is likely to deceive the public.  *McKell v. Washington Mutual, Inc.*, 142 Cal.App. 4th 1457, 1471 (2006).  Here, deception of the public simply is not possible given the broad disclaimers signed and acknowledged by every attendee entering into a contract for Trump University's goods and services.  Additionally, the federal courts in California reject claims of optimistic, aggressive, or even potentially unrealistic descriptions of goods and

services for sale as mere "puffery" well-known to ordinary people that are not sufficient to satisfy the "fraudulent" prong of the UCL.  *See, e.g., Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 973 (N.D. Calif. 2008) (advertisements for "superb," "more powerful," "more innovative" computers of "uncompromising quality" not actionable); *Anuziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1140-41 (C.D. Calif. 2005) (advertisements for "high quality," reliable," "high performance" and "latest technology" are actionable).

### b.      Second Cause of Action for Violation of Section 1750 — The "CLRA"

The Consumer Legal Remedies Act ("CLRA") is codified in the California Civil Code at section 1750, *et seq*.  Acts in violation of the CLRA are listed in section 1770(a).  The complaint alleges violation of the CLRA in Paragraphs 60-67, and lists four specific acts of violation in Paragraph 62, but none are actually established by the pertinent factual allegations.

Three of the four alleged violations are based on Plaintiff's fraud theory, namely that representations about Trump University's program did not match reality.  Paragraph 62(a)-(c), alleging violation of CLRA subsections 1770(a)(5), (7), and (9).  As already covered in detail above, this theory fails on reasonable reliance, and the representations are non-actionable puffery at worst.

The fourth alleged violation is that ""Defendant advertised the Seminars with intent not to supply reasonably expected demand."  Paragraph 62(d), alleging violation of CRLA subsection 1770(a)(10).  This claim has no support at all in the factual allegations, which require some showing that Plaintiff tried to get into the Trump University program and could not due to limited supply.

### c.      Third Cause of Action for Violation of Section 17500 — The "False Advertising Law"

The "False Advertising Act" is codified at California Business & Professions Code section 17500 *et seq*.  It prohibits untrue and misleading advertising.  Violation of the False Advertising Act is alleged in Paragraphs 68-71.  The purported violations are unspecified "untrue" statements that Trump University supposedly "disseminated, through common advertising."

Putting aside that Plaintiff has failed to identify with any specificity an actual false advertisement, the fatal problem with this claim is that Plaintiff nowhere alleges that she was solicited by Trump University's advertising, or that she relied on that advertising, or that she was

1  ever even aware of that advertising – whether a specific advertisement or a campaign.  In short, if

2  Plaintiff saw no "evil" and heard no "evil," she cannot allege any "evil."

3  **E.    All Claims Must Be Dismissed Under Rule 12(b)(6)**

4          The judicial standard for this FRCP Rule 12(b)(6) motion has already been stated above.  The

5  discussion thereafter has shown that all of Plaintiff's nine causes of action fail to state a claim upon

6  which relief can be granted under California law – which is the operative law for this diversity

7  action.  Consequently, all of Plaintiff's claims must be dismissed under Rule 12(b)(6).  This is the

8  only lawful outcome even though Plaintiff's allegations must be taken as true.  The allegations,

9  whether true or false in the real world, fail to supply the essential legal elements needed for any of

10  her nine theories of liability even under the generous standards of Rule 12(b)(6).

11  **F.    All Fraud-Related Claims Also Must Be Dismissed Under Rule 9(b)**

12          The judicial standard for this additional FRCP Rule 9(b) motion has also already been stated

13  above.  That Rule requires factual specificity and particularity in allegations of fraud.  Even putting

14  aside the legal deficiencies of those allegations, their factual deficiencies mandate that they be

15  disregarded and ultimately dismissed under the Rule.  This is so because the allegations do not

16  establish the time, location, perpetrator, content, or impact of the purported deceptions.  If Plaintiff

17  cannot even allege the "who, what, when, where, and why" of the purported frauds – much less do

18  so with specificity or particularity – then the Court cannot consider those fraud-related claims.  See

19  *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

20  **G.    The Purported Class Claims Must Be Dismissed Under Rule 8(a)(2), and the Purported**

21  **Nationwide Statutory Class Claims Must Also Be Dismissed Under California Law**

22          **1.    Rule 8(a)(2) and the Class Claims**

23          The final judicial standard already stated above was for this additional Rule 8(a)(2) motion.

24  That Rule requires allegations of only "plausible claims," and dismissal of claims that are not

25  "plausible," that lack supporting factual allegations, that entail speculation, and that – in short – do

26  not meet the basic test of judicial experience and common sense.

27          In this case, Plaintiff's class allegations cannot meet that basic test.  The Court can plainly

28  see that a nationwide program based on real estate investment, and offered to many people from

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

1   around the country, would result in many different experiences, results, opinions, transactions, and
2   levels of investment.  Plaintiff's boilerplate and generalized allegations of commonality do not
3   remotely address the obvious deficiencies of a putative class whose members attended different
4   programs, taught by different teachers, in different cities, at different levels of expense and
5   involvement, with different life experiences going in, and with different business experiences
6   coming out.

7        Ultimately, the value of the Trump University program is subjective to each one of the
8   attendees.  Each one of them also made an individual decision as to how far he or she would go in
9   the program, how much he or she would spend on the program, and how hard he or she would work
10  at the skills gained through the program.  If some of those unique entrepreneurs made many millions
11  of dollars, could Plaintiff adequately represent them when she made nothing?  At the other end of the
12  spectrum, could Plaintiff adequately represent the many people who spent nothing, invested nothing,
13  and – after one free seminar – learned that they had no interest or ability in pursuing real estate
14  investments after all?

15       The pleading stage is not the time to consider class certification under Rule 23.  Still, it is
16  proper to consider whether the allegations in the complaint – <u>including</u> the class allegations – satisfy
17  the standards of Rules 12(b)(6), 9(b), and 8(a)(2).  Trump University respectfully submits that the
18  Court's "experience and common sense" will confirm that the current class allegations do not
19  remotely state a plausible claim under Rule 8(a)(2) – even if the class is restricted to California.
20  See *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1950.

21       If the class allegations are dismissed under Rule 8(a)(2), then the entire case likewise must be
22  dismissed even if some of Plaintiff's claims survive this challenge under Rules 12(b)(6) and 9(b).
23  This is so because Plaintiff has alleged individual monetary damages of only $60,000 (which amount
24  is false in reality – her total payment to Trump University was exactly $35,742.50).  But even at the
25  mythical $60,000 figure, Plaintiff individually cannot meet the jurisdictional minimum of $75,000
26  under 28 USCA section 1332.  The only lawful option at that point is dismissal of the entire action.
27  / / /
28  / / /

1

### 2.   California Law and the Nationwide Statutory Claims

2   The final legal defect of the complaint is that the putative class is not restricted to California.

3   Plaintiff instead alleges that the class should be certified nationwide.  Needless to say, a class which

4   clearly cannot meet commonality standards in one state will be extremely hard pressed to meet those

5   standards in all 50 states.

6   But even if the putative class could be certified nationwide, and even if Plaintiff's common

7   law claims likewise could be enforced nationwide, California statutory claims under the UCL, the

8   CLRA, and the False Advertising Act cannot be enforced outside of California as a matter of law.

9   The leading case on this issue is *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th

10   214 (1999).  In *Norwest*, the Fourth District Court of Appeals in San Diego reversed the Superior

11   Court certification of a nationwide class under the UCL.  *Id.* at 222-27.  Primarily for reasons of due

12   process, the *Norwest* court held that the UCL could not regulate conduct unconnected to California,

13   and hence a nationwide class based on claims under the UCL could not be certified.  *Id.* at 229.  A

14   Second District Court of Appeals court in Los Angeles recently reached the same holding on a

15   CRLA claims brought in a nationwide class action.  *Cohen v. DIRECTV*, 178 Cal.App.4th 966, 972

16   (2009).

17   Federal courts in California that have considered this issue have also reached that same

18   conclusion.  *See, e.g., Utility Consumers' Action Network (UCAN) v. Sprint Solutions, Inc.*, 259

19   F.R.D. 484, 487 (S.D. Calif. 2009) (California law cannot be extended to non-resident plaintiffs

20   suing for conduct which took place outside of California); *Nordberg v. Trilegiant Corp.*, 445

21   F.Supp.2d 1082, 1096 (N.D.Calif. 2006) (only California residents can sue to enforce the CLRA);

22   *Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp.2d 1141, 1147

23   (C.D. Calif. 2005) (no UCL claims between non-residents based on non-California transaction).

24   The end result is that Plaintiff's claims for nationwide class action claims under the UCL, the

25   CLRA, and the False Advertising Act must be dismissed under Rule 12(b)(6) because they are

26   barred by law.

27   / / /

28   / / /

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

1

## VI.  <u>CONCLUSION</u>

2     Trump University respectfully requests that the Court dismiss the entire action as barred

3  under Rules 12(b)(6), 9(b), and 8(a)(2).  All causes of action fail as a matter of law under these

4  Rules.

5     Additionally, all fraud-related claims are further barred under Rule 9(b), and all class claims

6  are further barred under Rule 8(a)(2).

7     If some of Plaintiff's individual claims survive this motion, but no class claims do, then the

8  entire action must be dismissed for Plaintiff's failure to meet the jurisdictional amount.

9     Finally, even if some class claims survive this motion, the claim for a nationwide class based

10  on California's UCL, CLRA, and False Advertising Law must be dismissed.

11

12                                    Respectfully submitted,

13  Dated:      May 26, 2010          YUNKER & SCHNEIDER

14                                    By:    s/ David K. Schneider
15                                    Attorneys for Defendant and Counterclaimant
                                      TRUMP UNIVERSITY, LLC
16                                    E-mail: dks@yslaw.com

17

18

19

20

21

22

23

24

25

26

27

28