ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PAULA M. ROACH (254142)
proach@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
625 West Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, PATRICIA MURPHY and SHERI WINKELMANN, on Behalf of Themselves and All Others Similarly Situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, and DOES 1 through 50, inclusive, )<br><br>Defendants. ) | No. 10-cv-00940-IEG(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFF/COUNTERDEFENDANT TARLA MAKAEFF'S MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE DEFENDANT/ COUNTERCLAIMANT TRUMP UNIVERSITY'S COUNTERCLAIM PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §425.16 |
| TRUMP UNIVERSITY, LLC, a New York Limited Liability Company, )<br><br>Counterclaimant, )<br><br>vs. )<br><br>TARLA MAKAEFF, and ROES 1 through 10, inclusive, )<br><br>Counterdefendants. ) | DATE: August 2, 2010<br>TIME: 10:30 a.m.<br>CRTM: 1<br>JUDGE: Honorable Irma E. Gonzalez |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS ....................................................................2

III.    LEGAL STANDARDS ........................................................................5

IV.    TRUMP UNIVERSITY'S COUNTERCLAIM FOR DEFAMATION MUST BE STRICKEN PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE ....................7

      A.     Trump University's Defamation Claim Arose out of Ms. Makaeff's Protected Petition or Free Speech Activities ...................................7

            1.    The Counterclaim Arose from Ms. Makaeff's Statements Made in a Public Forum about an Issue of Public Interest .........................7

            2.    The Counterclaim Arose from Ms. Makaeff's Complaints to Executive Agencies...................................................................10

            3.    The Counterclaim Arose from Ms. Makaeff's Anticipated Litigation...........................................................................11

            4.    The Counterclaim Arose from Ms. Makaeff's Exercise of Free Speech on an Issue of Public Interest .........................................13

      B.     Trump University Will Be Unable to Meet its Burden of Proving a Probability of Success on the Merits of Its Defamation Claim ..........................13

            1.    As a Public Figure, Trump University Cannot Show with Clear and Convincing Evidence that Ms. Makaeff Made the Statements with Actual Malice ..........................................................................14

                 a.     Trump University is Undeniably a Public Figure .........................15

                 b.     Trump University Cannot Show Ms. Makaeff Made the Alleged Statements with "Actual Malice" ....................................16

            2.    Trump University Cannot Prove that the Alleged Statements Were False, or Actionable Statements of Fact ................................18

            3.    Makaeff's Statements Are Protected by the Litigation Privilege .............19

            4.    Trump University Cannot Substantiate Its Claims of Actual Injury..........21

            5.    Trump University Cannot Prove Plaintiff's Statements Had a Natural Tendency to Injure .......................................................22

      C.     Ms. Makaeff Should be Entitled to Recover Her Attorneys' Fees ........................23

V.     CONCLUSION.....................................................................................24

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Albertini v. Schaefer,*
  97 Cal. App. 3d 822 (1979) ...............................................................22

*American Prods., Inc. v. Law Offices of Geller, Stewart & Foley, LLP,*
  134 Cal. App. 4th 1332 (2005) ..........................................................20

*Ampex Corp. v. Cargle,*
  128 Cal. App. 4th 1569 (2005) ...............................................9, 16, 17

*Baker v. Los Angeles Herald Examiner,*
  42 Cal. 3d 254 (1986) ........................................................................18

*Barrett v. Rosenthal,*
  40 Cal. 4th 33 (2006) ...........................................................................8

*Batzel v. Smith,*
  333 F.3d 1018 (9th Cir. 2003) .............................................................5

*Blanchard v. DIRECTV, Inc.,*
  123 Cal. App. 4th 903 (2004) .......................................................12, 20

*Briggs v. Eden Council for Hope & Opportunity,*
  19 Cal. 4th 1106 (1999) ..................................................................5, 11

*Buzayan v. City of Davis Police Dep't,*
  No. 2:06-cv-01576-MCE-DAD, 2007 WL 2288334
  (E.D. Cal. Aug. 8, 2007) ...............................................................13, 14

*Campanelli v. Regents of Univ. of Cal.,*
  44 Cal. App. 4th 572 (1996) ..............................................................18

*Castillo v. Pacheco,*
  150 Cal. App. 4th 242 (2007) ..............................................................5

*Church of Scientology v. Wollersheim,*
  42 Cal. App. 4th 628 (1996) ..............................................................10

*City of Cotati v. Cashman,*
  29 Cal. 4th 69 (2002) ...........................................................................6

*City of Los Angeles v. Animal Defense League,*
  135 Cal. App. 4th 606 (2006) ..............................................................8

Page

*ComputerXpress, Inc. v. Jackson*,
93 Cal. App. 4th 993 (2001) .................................................................................22

*Coulter v. Murrell*,
No. 10-CV-102-IEG (NLS), 2010 WL 1289070
(S.D. Cal. Mar. 30, 2010)................................................................................5, 6, 7

*Curtis Publ'g Co. v. Butts*,
388 U.S. 130 (1967).............................................................................................14

*Damon v. Ocean Hills Journalism Club*,
85 Cal. App. 4th 468 (2000) ..................................................................................9

*DCI Solutions, Inc. v. Urban Outfitters, Inc.*,
No. 10-CV-369-IEG (JMA), 2010 WL 1838303
(S.D. Cal. May 6, 2010).........................................................................................6

*Dove Audio v. Rosenfeld, Meyer & Susman*,
47 Cal. App. 4th 777 (1996) ...........................................................................12, 13

*Dupont Merck Pharm. Co. v. Superior Court*,
78 Cal. App. 4th 562 (2000) ................................................................................13

*Feldman v. 1100 Park Lane Assocs.*,
160 Cal. App. 4th 1467 (2008) ............................................................................20

*Ferlauto v. Hamsher*,
74 Cal. App. 4th 1394 (1999) ..............................................................................18

*Forsher v. Bugliosi*,
26 Cal. 3d 792 (1980) ..........................................................................................21

*Gallagher v. Connell*,
123 Cal. App. 4th 1260 (2004) .......................................................................13, 15

*Gertz v. Robert Welch*,
418 U.S. 323 (1974)........................................................................................16, 21

*Gilbert v. Sykes*,
147 Cal. App. 4th 13 (2007) ................................................................................15

*Global Telemedia Int'l, Inc. v. Doe 1*,
132 F. Supp. 2d 1261 (C.D. Cal. 2001) ....................................................... *passim*

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
63 F. Supp. 2d 1127 (N.D. Cal. 1999) .................................................................13

**Page**

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
129 Cal. App. 4th 1228 (2005) ...........................................................................................8

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) .....................................................................................................23

*Masson v. New Yorker Magazine*,
501 U.S. 496 (1991).............................................................................................................14

*McGarry v. Univ. of San Diego*,
154 Cal. App. 4th 97 (2007) ............................................................................................18

*Neville v. Chudacoff*,
160 Cal. App. 4th 1255 (2008) ...............................................................................11, 12

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964).............................................................................................................14

*Nygard, Inc. v. Uusi-Kerttula*,
159 Cal. App. 4th 1027 (2008) .............................................................9, 10, 18, 19

*OM Fin. Life Ins. Co. v. Keel*,
No. C 07-04723 MHP, 2008 WL 220084 (N.D. Cal. Jan. 25, 2008) .....................11

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*,
907 F. Supp. 1361 (N.D. Cal. 1995) ...............................................................................8

*Rivero v. Am. Fed'n of State, County & Mun. Employees, AFL-CIO*,
105 Cal. App. 4th 913 (2003) ............................................................................................8

*Roberts v. Los Angeles County Bar Ass'n*,
105 Cal. App. 4th 604 (2003) ..........................................................................................13

*Roe v. Doe*,
No. C 09-0682 PJH, 2009 WL 1883752 (N.D. Cal. June 30, 2009) .....14, 15, 17, 18

*Rohde v. Wolf*,
154 Cal. App. 4th 28 (2007) .............................................................................................12

*Rubin v. Green*,
4 Cal. 4th 1187 (1993) .................................................................................................19, 20

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) .....................................................................................................19

**Page**

*Sacramento Brewing Co. v. Desmond, Miller & Desmond*,
    75 Cal. App. 4th 1082 (1999) .................................................................................20

*Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*,
    473 F. Supp. 2d 1083 (S.D. Cal. 2007)...................................................................20

*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990) ............................................................................................20

*Smith v. Maldonado*,
    72 Cal. App. 4th 637 (1999) ..................................................................................22

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ...........................................................................................14

*Terry v. Davis Cmty. Church*,
    131 Cal. App. 4th 1534 (2005) ..............................................................................13

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ...............................................................................5, 6

*Varian Med. Sys., Inc. v. Delfino*,
    35 Cal. 4th 180 (2005) .............................................................................................5

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................5, 6

*Weinberg v. Feisel*,
    110 Cal. App. 4th 1122 (2003) ................................................................................8

*Zwebner v. Coughlin*,
    Nos. 05-56756, 06-55427, 2007 WL 2141506 (9th Cir. Jul. 26, 2007)..................23

**STATUTES, RULES AND REGULATIONS**

California Code of Civil Procedure
    §46..........................................................................................................................22
    §425.16.................................................................................................11, 12, 23, 24
    §425.16(b) ..............................................................................................................11
    §425.16(b)(2) ..........................................................................................................13
    §425.16(c) ...............................................................................................................23
    §425.16(e) ...........................................................................................................6, 11
    §425.16(e)(1) ....................................................................................................10, 11
    §425.16(e)(2) ..........................................................................................................11
    §425.16(e)(3) ........................................................................................................7, 8
    §425.16(e)(4) ........................................................................................................8, 13

1

2                                                                          **Page**

3  California Civil Code

§45................................................................................................................14
§47(b)...................................................................................................11, 19, 20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff and Counterdefendant Tarla Makaeff, by and through her attorneys, respectfully

2    asks the Court to strike Defendant and Counterclaimant Trump University, LLC's ("Trump

3    University") counterclaim for defamation ("Counterclaim") in its entirety.

4    **I.      INTRODUCTION**

5    Trump University's Counterclaim for defamation is a predictable and transparent attempt to

6    intimidate Plaintiff Tarla Makaeff into dropping her consumer class action and silencing her exercise

7    of free speech rights to complain of its deceptive corporate practices and those of its namesake and

8    principal, Donald Trump.  In reaction to Plaintiff's lawsuit, Trump University brought a defamation

9    claim against her, alleging that she defamed Trump University by lodging complaints with state and

10   other agencies and on an Internet consumer website about the marketing and sale of its real estate

11   investment seminars, for which Plaintiff was duped into spending nearly $60,000.

12   Trump University's Counterclaim is a quintessential Strategic Lawsuit Against Public

13   Participation ("SLAPP") suit.  That is, a large, powerful corporation bringing a countersuit to

14   intimidate and silence an individual consumer who has exercised free speech rights on issues of

15   public significance in a public forum and to governmental agencies.  Indeed, if Trump University

16   were successful, all consumers would be discouraged from complaining about a corporation's

17   deceptive practices to government agencies or online for fear of being 'slapped' with a defamation

18   claim.  This is precisely what Trump University has attempted to do.  With the unfounded threat of

19   $1 million in damages against Plaintiff, Trump University seeks to scare and intimidate Plaintiff, an

20   individual with few resources, to drop her claim so it may continue to deceive other consumers and

21   rake in millions of dollars in profits.  Plaintiff will not succumb to these baseless threats.

22   Trump University goes so far as to accuse Ms. Makaeff of engaging in two forms of

23   extortion. Counterclaim, ¶¶6-7.  Particularly given Trump University's ostensible sensitivity, this is

24   a serious charge – extortion is a criminal offense whereby a person attempts to unlawfully obtain

25   money or property through force, intimidation or undue or illegal power.  However, the facts Trump

26   University allege as extortion are a far cry from the typical charges of extortion or blackmail.  Ms.

27   Makaeff's "first form of extortion [which] is actionable," according to Trump University, is filing

28   complaints with the Better Business Bureau ("BBB") and other government agencies.  *Id.*  Ms.

Makaeff's "second form of extortion," which Trump University acknowledges "is not actionable, at least not at this stage of the case," was filing the present lawsuit, which it claims has as its "only justification . . . possibly help[ing] extort money." *Id.*, ¶7.  Leaving aside the second extortion charge, which Trump University admits is not actionable, Ms. Makaeff requested a refund from Trump University on several occasions, but it refused to give her a refund.  Declaration of Tarla Makaeff in Support of Special Motion to Strike Trump University's Counterclaim ("Declaration"), ¶7. Only afterward, did Ms. Makaeff contact the BBB, other governmental authorities, and her bank and credit card companies in an effort to get them to intercede on her behalf and help her get money back – not to extort or blackmail Trump University.  *Id.*

Plaintiff brings this special motion to strike pursuant to California's anti-SLAPP law intended to protect her right to free speech and eliminate her need to defend against Trump University's Counterclaim.  As demonstrated below, Plaintiff's motion should be granted because: (1) Trump University's defamation claim arises from Ms. Makaeff's protected speech and petition activities; and (2) Trump University cannot meet its burden of presenting admissible evidence that it has a likelihood of prevailing on its defamation claim because it cannot show actual malice, that the statements were actionable statements of fact, or that they were unprivileged because they were made in anticipation of litigation.  Accordingly, Trump University's Counterclaim should be stricken in its entirety.

## II.      STATEMENT OF FACTS

On April 30, 2010, Ms. Makaeff filed a class action complaint against Trump University, alleging that it engaged in deceptive business practices and misrepresentations concerning its sale of real estate seminars and related products.  On June 16, 2010, Ms. Makaeff and four other plaintiffs filed an amended complaint against Trump University.  In her original complaint, Ms. Makaeff alleged that Trump University deceptively markets itself as an educational institution driven by the mission "'to train, educate and mentor entrepreneurs on achieving financial independence through

real estate investing.'"[1]  ¶3.  Trump University is owned and founded by real estate tycoon, Donald J. Trump, Sr., as a part of the Trump Organization and proudly compares itself to Harvard University.  ¶¶3, 7.  While the $35,000 Trump Gold enrollment fees are comparable to a year of tuition at Harvard, the similarities end there.  Rather than providing its students with a year-long education by qualified real estate experts, Trump instead provides a three-day infomercial delivered by professional salespeople paid on commission.  Trump University's business model was to lure consumers in with the name and reputation of Donald Trump, and then up-sell them to additional seminars and empty promises of year-long apprenticeships.  ¶¶3, 7, 9, 29, 35, 38.

Through its advertisements and as a part of its high-priced real estate investing classes, Trump University promises its students a '"complete real estate education,"' a '"one year apprenticeship,"' practical and fail-safe real estate techniques, and a '"power-team"' consisting of real estate agents, lenders, personal finance managers, property managers and contractors.  ¶¶4, 30, 45, 59.  Students are lured in with a "free" introductory seminar which is nothing more than an infomercial used to "up-sell" and persuade students to purchase its $1,495 course with the promise of a one-year mentorship.  ¶¶30, 35, 43.  Students, however, never get this mentorship but are instead provided with an 800-telephone number to call.  ¶43.

In early August 2008, Ms. Makaeff attended the three-day Trump University "Fast Track to Foreclosure Training" workshop for $1,495.00.  ¶56.  Ms. Makaeff was unaware that once in the three-day seminar, Trump University would make empty promises of a "comprehensive real estate education" to up-sell her and other students to purchase the Trump Gold Program for $34,995.  ¶¶35, 47.  During the three-day session, Ms. Makaeff and other students were encouraged to raise their credit card limits so that they could enter into "real estate transactions."  ¶¶6, 22, 39, 68, 134, 146.  However, this was solely intended to free up additional money so that Ms. Makaeff could purchase the Gold Program.  ¶¶6, 22, 39, 68.  For her $34,995, Ms. Makaeff and other students were promised a three-day Field Mentorship with real estate experts and investors.  ¶50.  However, instead of a

---

[1]     All references to "¶" or "¶¶" are to the First Amended Class Action Complaint, filed June 16, 2010, unless otherwise noted.

three-day mentorship, Ms. Makaeff and other students spent two days looking at properties with no unique insight, a half-day at a local Home Depot, and an hour discussing numbers.  ¶50.  Mentors then quickly disappeared without providing the ongoing year-long mentorship as promised.  ¶¶50, 59.

After spending nearly $60,000 over the course of an entire year to attend Trump University related or endorsed seminars, not including related expenses, it became apparent that Ms. Makaeff did not receive what she bargained for.  Ms. Makaeff was also contacted by the District Attorney's Office after using "Bandit signs," an illegal technique taught by Trump University during the seminars.  ¶63.  Further, after the "mentors" assigned to Ms. Makaeff did not provide the assistance promised, she complained directly to Trump University.  ¶59.  However, despite her complaints, Ms. Makaeff was never provided with the represented services.  ¶¶59-62.

Thereafter, Plaintiff lodged complaints to the New York Attorney General's office, the New York BBB, The New York Department of Education, New York Bureau of Consumer Protection, New York District Attorney, FBI, FTC, the dispute departments of her credit card companies, and on an Internet message board in an attempt to persuade these entities to intercede on her behalf and require Trump University to refund her money.  Declaration, ¶¶3, 7.  At the time Ms. Makaeff made each of these statements regarding Trump University, she believed they were true.  *Id.*, ¶6.  When these efforts were unsuccessful in persuading Trump University to refund her money, Makaeff sought representation of counsel, and after a full investigation by counsel that corroborated her facts, filed the present class action lawsuit.  *Id.*, ¶8.

In response to numerous complaints regarding Trump University's deceptive practices, the BBB gave Trump University a ***D-minus rating***.  ¶54.  The New York Department of Education also recently demanded that Trump University remove the word "University" from its title, insisting that the "'use of the word "university" by your corporation is ***misleading and violates New York Education Law*** and the Rules of the Board of Regents.'"  *Id.* (emphasis in original).  Additionally, Attorneys General in six states have received numerous complaints concerning Trump University, and at least two have launched their own investigations into its practices.  ¶¶9, 10.

1    On May 26, 2010, only after Ms. Makaeff had filed her class action lawsuit, Trump

2    University 'slapped' her with this SLAPP suit for defamation per se in the amount of $1 million, in

3    an obvious effort to intimidate Ms. Makaeff into dropping her lawsuit for consumer protection

4    claims.  Such a tactic is not to be countenanced and should be stricken outright.

5    **III.    LEGAL STANDARDS**

6    A Strategic Lawsuit Against Public Participation ("SLAPP") is "one in which the plaintiff's

7    [Trump University's] alleged injury results from petitioning or free speech activities by a defendant

8    [Ms. Makaeff] that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp.*,

9    317 F.3d 1097, 1109 (9th Cir. 2003) (quoted in *Coulter v. Murrell*, No. 10-CV-102-IEG (NLS),

10   2010 WL 1289070, at *3 (S.D. Cal. Mar. 30, 2010)).  Such claims are brought to discourage free

11   speech about issues of public significance. *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.

12   4th 1106, 1109 n.1 (1999).  "While SLAPP suits masquerade as ordinary lawsuits such as

13   defamation . . ., they are generally meritless suits brought primarily to chill the exercise of free

14   speech or petition rights by the threat of severe economic sanctions against the defendant, and not to

15   vindicate a legally cognizable right."  *Castillo v. Pacheco*, 150 Cal. App. 4th 242, 249-50 (2007).

16   "The California Legislature adopted the anti-SLAPP statute in order to 'allow early dismissal

17   of meritless first amendment cases aimed at chilling expression through costly, time-consuming

18   litigation.'" [2] *Coulter*, 2010 WL 1289070, at *3.  "Indeed, '[t]he point of the anti-SLAPP statute is

19   that you have a right ***not*** to be dragged through the courts because you exercised your constitutional

20   rights.'"  *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 193 (2005) (emphasis in original).

21   The Ninth Circuit permits the use of anti-SLAPP motions in federal court on California state

22   law claims such as defamation.  *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,

23   190 F.3d 963, 971 (9th Cir. 1999); *see also Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003)

24   (recognizing the anti-SLAPP mechanism "as a substantive immunity from suit"); *see also Lockhead*

25

26   _____

27   [2]    Unless otherwise indicated, citations are omitted and emphasis is added.

28

1    *Missiles & Space Co.*, 190 F.3d at 970-72; *Coulter*, 2010 WL 1289070, at *5-*7 (granting anti-

2    SLAPP motion in federal court for state claims of fraud and conspiracy).

3            An anti-SLAPP motion to strike requires a two-step inquiry.  *Vess*, 317 F.3d at 1110.  "First,

4    the moving party must make an initial prima facie showing that the other party's suit arises from the

5    moving party's protected activity – i.e, an act in furtherance of that party's rights of petition or free

6    speech."  *DCI Solutions, Inc. v. Urban Outfitters, Inc.*, No. 10-CV-369-IEG (JMA), 2010 WL

7    1838303, at *2 (S.D. Cal. May 6, 2010) (citing *Vess*, 317 F.3d at 1110).  "The moving party need not

8    demonstrate that any speech was actually chilled."  *Id.* (citing *City of Cotati v. Cashman*, 29 Cal. 4th

9    69, 75-76 (2002)).

10           Protected activities include the following:

11           (1)  any written or oral statement or writing made before a legislative, executive, or
              judicial proceeding, or any other official proceeding authorized by law;

12

13           (2)  any written or oral statement or writing made in connection with an issue under
              consideration or review by a legislative, executive, or judicial body, or any other
              official proceeding authorized by law;

14

15           (3)  any written or oral statement or writing made in a place open to the public or a
              public forum in connection with an issue of public interest;

16           (4)  or any other conduct in furtherance of the exercise of the constitutional right of
              petition or the constitutional right of free speech in connection with a public issue or

17           an issue of public interest.

18    Cal. Code Civ. Proc. ("C.C.P.") §425.16(e); *Coulter*, 2010 WL 1289070, at *4.

19           "Step two of the inquiry shifts the burden to the plaintiff [Trump University] to 'establish by

20    a "reasonable probability"' that the plaintiff will succeed on the merits of the challenged claims."

21    *Coulter*, 2010 WL 1289070, at *4 (quoting *Lockheed Missiles & Space Co.*, 190 F.3d at 971).

22    "Plaintiff is required to 'make a "prima facie showing of facts which would, if credited, support a

23    judgment in his favor."'"  *Id.* "This 'implies a requirement of admissibility, because "otherwise there

24    would be nothing for the trier of fact to credit."'"  *Id.*  "If the court finds, as a matter of law, 'the

25    defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary

26    support,' it should grant the motion to strike."  *Id.*

27           As discussed below, Ms. Makaeff's statements are protected under one or more of the four

28    prongs of the test because they are protected speech, and Trump University will be unable to meet its

1    burden of demonstrating its probability of success on its defamation claim through admissible

2    evidence.[3]   Accordingly, Trump University's Counterclaim must be stricken.

3    **IV.    TRUMP UNIVERSITY'S COUNTERCLAIM FOR DEFAMATION MUST BE STRICKEN PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE**

4
          **A.    Trump University's Defamation Claim Arose out of Ms. Makaeff's Protected Petition or Free Speech Activities**
5

6          First, Ms. Makaeff can easily satisfy the first prong of the test for an anti-SLAPP motion

7    because Trump University's claim for defamation arose from her acts in "'furtherance of [her] right

8    of petition or free speech.'"   *Coulter*, 2010 WL 1289070, at *4.  While Ms. Makaeff's statements

9    need only fall under one of the statutory "acts" in furtherance of free speech or petition, several are

10   satisfied.  Specifically, Trump University's defamation claims arises from Ms. Makaeff's exercise of

11   free speech and right to petition in complaining of a deceptive business practice: (1) in a public

12   forum concerning a matter of public interest; (2) in a written statement to an executive body; (3) in a

13   writing in connection with an issue under consideration by a judicial proceeding; and (4) in

14   furtherance of her constitutional right to petition or free speech concerning a public issue or an issue

15   of public interest.

16              **1.    The Counterclaim Arose from Ms. Makaeff's Statements Made in a Public Forum about an Issue of Public Interest**
17

18         First, to the extent Trump University's Counterclaim for defamation arises out of Ms.

19   Makaeff's public complaints regarding Trump University's misrepresentations and deceptive

20   business practices made on the Internet to warn other consumers, these statements invoke the

21   protections of the anti-SLAPP statute because they were made in a public forum and involved an

22   issue of public interest.

23         California Code of Civil Procedure §425.16(e)(3) explicitly protects "any written or oral

24   statement or writing made in a place open to the public or a public forum in connection with an issue

25   [3]      Because Trump University has provided no specificity in its Counterclaim on when the
26   alleged statements were made and to whom they were made, or the context of the statements, it is
      difficult for Ms. Makaeff to respond specifically to its accusations or even to ascertain whether the
27   statements were made by her.  Ms. Makaeff's counsel requested that Trump University provide
      copies of the letters or postings containing the alleged defamatory statements, but it refused.

28

1  of public interest."  *Id.*  Publicly accessible websites are clearly a public forum.  *Barrett v.*

2  *Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006).  The Internet is, of course, by its very nature a "place open

3  to the public" and a "public forum" of massive scale, and may, indeed, constitute "the best public

4  forum for free speech yet devised."  *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs.*, 907 F.

5  Supp. 1361, 1377-78 (N.D. Cal. 1995); *see also City of Los Angeles v. Animal Defense League*, 135

6  Cal. App. 4th 606, 620 (2006) ("Demonstrations, leafleting and publication of articles on the Internet

7  . . . constitute a classic exercise of the constitutional rights of petition and free speech in connection

8  with a public issue or an issue of public interest within the meaning of section 425.16(e)(4).");

9  *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th

10  1228, 1245-46 (2005) (demonstrations and Internet postings against private laboratory's animal

11  testing based protected free speech).

12       In its Counterclaim, Trump University concedes that Ms. Makaeff's statements were made

13  "to the general public on the Internet."  Counterclaim, ¶22.  Accordingly, to the extent Trump

14  University's Counterclaim is based on Ms. Makaeff's Internet posting on a consumer website, these

15  statements fall squarely within C.C.P. §425.16 (e)(3) as "statement[s] or writing[s] made in a place

16  open to the public or a public forum in connection with an issue of public interest."  *Id.*

17       Moreover, the statements Ms. Makaeff made on a consumer website about the deceptive

18  practices of Trump University were made "in connection with an issue of public interest."  *Id.*

19  Although not explicitly defined, courts have identified three categories of statements that are "a

20  matter of public interest": (1) the subject of the statement concerned a person or entity in the public

21  eye; (2) the statement or activity involved conduct that could directly affect large numbers of people

22  beyond the direct participants; and (3) the statement or activity concerned a topic of widespread

23  public interest.  *Rivero v. Am. Fed'n of State, County & Mun. Employees, AFL-CIO*, 105 Cal. App.

24  4th 913, 924 (2003); *see also Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003) (Although

25  not defined in the anti-SLAPP statute, a matter of public interest is one that is "something of concern

26  to a substantial number of people."); *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261,

27  1265-66 (C.D. Cal. 2001) (finding that postings about a publicly-traded corporation with thousands

28

1   of investors in an Internet chat room were protected speech as a matter of "public interest" for

2   purposes of anti-SLAPP statute).

3        In *Global Telemedia*, for example, the court found that investors' online rantings and

4   complaints against Global Telemedia constituted an "exercise of their free speech in connection with

5   a public issue" because: (1) it "inserted itself into the public arena and made itself a matter of public

6   interest by means of numerous press releases"; (2) the statements had the potential to affect the

7   company's 18,000 investors; (3) the company "voluntarily trumpet[ed] its good news through media

8   in order to gain the attention of current and prospective investors"; and (4) the company was the

9   subject of thousands of Internet postings. *Id.* at 1265-66.  Likewise, in *Ampex Corp. v. Cargle*, 128

10  Cal. App. 4th 1569, 1576-77 (2005), the Court found that an employee's complaints about Ampex

11  on the Internet were protected free speech because the website was a public forum and the Internet

12  postings critical of Ampex constituted an issue of public importance.

13       Similarly here, Ms. Makaeff's statements satisfy all three categories of "matters of public

14  interest."  First, Trump University, the subject of all of Ms. Makaeff's statements, is an entity in the

15  public eye.  Like in *Global Telemedia,* Trump University has inserted itself into the public arena by

16  means of its significant advertisements.  *See* ¶30.  Additionally, Trump University is the subject of

17  numerous news articles, hundreds of Internet postings, several investigations by state attorneys

18  general, a public scolding by the New York Department of Education concerning Trump

19  University's use of the word "University," and the BBB's rating of Trump University at a ***D-minus***.

20  *See* ¶¶54, 55 (emphasis in original); *see also, e.g.*, *Global Telemedia*, 132 F. Supp. 2d at 1265.

21  Moreover, Trump University's owner and namesake, Donald Trump, is a high-profile business man

22  and celebrity who has been featured on several televisions shows.  *See, e.g.*, *Nygard, Inc. v. Uusi-*

23  *Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (finding that the statements concerned an issue of

24  public interest because there was "'extensive interest' [in the company's owner,] 'a prominent

25  business person and celebrity of Finnish extraction'").

26       Second, Ms. Makaeff's statements regarding Trump University concerned conduct that could

27  directly affect a large number of people.  *See, e.g.*, *Damon v. Ocean Hills Journalism Club*, 85 Cal.

28  App. 4th 468, 479 (2000) ("'"[M]atters of public interest . . . include activities that involve private

persons and entities, especially when a large, powerful organization may impact the lives of many individuals.'''").  As in *Global Telemedia* where the company had thousands of investors that could be affected (132 F. Supp. 2d at 1265), by Trump University's own claims, thousands of people have attended its real estate courses since 2005 (*see* Counterclaim, ¶16) and presumably many more people have seen advertisements and may be considering enrolling.  Ms. Makaeff's statements regarding Trump University's deceptive business practices and efforts to misrepresent and misguide those attending its courses were made in an effort to express her experiences with Trump University and communicate these concerns to other Trump University students.  Accordingly, these statements could directly affect a large number of people.

Third, Ms. Makaeff's statements on a consumer website regarding her experiences with Trump University and her opinion that Trump University engaged in deceptive practices were a topic of widespread public interest as these issues were discussed on public forums and were the topic of investigations by state attorneys general.  *See, e.g.*, *Global Telemedia*, 132 F. Supp. 2d at 1265; *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 650-51 (1996) (holding that matters of public interest include "product liability suits, real estate or investment scams, etc.").  "[T]he issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes interest." *Nygard*, 159 Cal. App. 4th at 1042.  Given the discussions on the Internet and in news articles, the public has clearly taken an interest in Trump University's practices and alleged misrepresentations making it a topic of widespread public interest.

### 2.   The Counterclaim Arose from Ms. Makaeff's Complaints to Executive Agencies

Second, in addition to being "matters of public interest," many of Makaeff's statements are protected because they were made to executive governmental agencies, including the Federal Trade Commission, New York Attorney General, New York District Attorney, New York Bureau of Consumer Protection and New York Department of Education.

California Code of Civil Procedure §425.16(e)(1) explicitly protects "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." *Id.*  "A lawsuit filed in state court is a writing or statement made

1  before a judicial proceeding, just as a consumer complaint filed with a state agency is also a writing

2  or statement made before an official proceeding authorized by law." *OM Fin. Life Ins. Co. v. Keel*,

3  No. C 07-04723 MHP, 2008 WL 220084, at *4 (N.D. Cal. Jan. 25, 2008); *see also Briggs*, 19 Cal.

4  4th at 1115 (finding prior complaint to HUD was protected under section 425.16(e) as statement in

5  an official proceeding).   Under §425.16(e)(1), there is no requirement that the subject of the

6  statements concern "matters of public interest."  *Id.*

7          Here, Ms. Makaeff's complaints to the governmental entities listed above concerning Trump

8  University were acts in furtherance of her right of petition and constitute "a writing or oral statement

9  made before an official proceeding authorized by law" under §425.16(e)(1).  *OM Fin.*, 2008 WL

10  220084, at *4 ("[T]here is no doubt that defendant Keel's previous state court action and DOI

11  consumer complaint are acts in furtherance of her right of petition as defined under California's anti-

12  SLAPP statute.").  To the extent that Trump University's defamation claim is based on statements

13  made to these agencies, the claim must be stricken because it plainly "arises from" Ms. Makaeff's

14  exercise of her right to petition and free speech.  *See* C.C.P. §425.16(b).

15          Accordingly, Trump University's defamation claim as to these statements should be stricken

16  under §425.16(e)(1).

17                     **3.     The Counterclaim Arose from Ms. Makaeff's Anticipated**
                                **Litigation**
18

19          Third, Trump University's defamation claim should be stricken because it concerns

20  statements made by Ms. Makaeff in anticipation of litigation.  California Code of Civil Procedure

21  §425.16(e)(2) explicitly protects "any written or oral statement or writing made in connection with

22  an issue under consideration or review by a . . . judicial body. . . ."  Statements made "in connection

23  with ***anticipated*** litigation are considered to be 'under consideration or review by a . . . judicial

24  body'" and are subject to a special motion to strike.  *Neville v. Chudacoff*, 160 Cal. App. 4th 1255,

25  1263 (2008); *see also Briggs*, 19 Cal. 4th at 1115 ("'[j]ust as communications preparatory to or in

26  anticipation of the bringing of an action or other official proceeding are within the protection of the

27  litigation privilege of Civil Code section 47, subsection (b), . . . such statements are equally entitled

28  to the benefits of section 425.16'").

1    For example, in *Neville*, an employer fired one its employees based on allegations that the

2    employee misappropriated customer lists to start a competing business.  160 Cal. App. 4th at 1259.

3    Several months before the employer filed suit against the employee, the employer sent a letter to its

4    customers and accusing the former employee of misappropriation and warning customers not to do

5    business with the former employee.  *Id.*  The employee filed a defamation claim against its former

6    employer and the former employer responded with an anti-SLAPP suit.  *Id.*  The California Court of

7    Appeal affirmed the lower court's grant of the anti-SLAPP motion and found the letter written

8    months before the litigation was protected.  *Id.* at 1268.  The court reasoned that, "although litigation

9    may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in

10   anticipation of litigation "contemplated in good faith and under serious consideration"' then the

11   statement may be petitioning activity protected by section 425.16."  *Id.*  The court further held that it

12   was clear from the letter that litigation was anticipated because the letter stated that the former

13   employee had been "'notified . . . of his breach'" and that the employer was going to "'aggressively

14   pursue . . . all available remedies.'"  *Id.* at 1269.

15   Similarly, here, Ms. Makaeff's statements about Trump University's deceptive practices were

16   related to the contemplated (and now actual) litigation seeking a refund of fees paid to Trump

17   University.  Additionally, Trump University was acutely aware that Ms. Makaeff would be seeking

18   legal redress if her complaints went unanswered.  For example, in a letter by Ms. Makaeff to her

19   credit card company dated September 10, 2009, which the credit card company provided to Trump

20   University, Ms. Makaeff stated that she intended to take whatever steps were necessary to get her

21   money back "including taking legal action at the state and federal levels."

22   Courts have consistently held that communications such as these are subject to anti-SLAPP

23   scrutiny.  *See, e.g.*, *Rohde v. Wolf*, 154 Cal. App. 4th 28, 37 (2007) (pre-litigation communications

24   that defendant would take appropriate action if his demands were not met were subject to section

25   425.16); *Blanchard v. DIRECTV, Inc.*, 123 Cal. App. 4th 903, 918-19 (2004) (defendant's demand

26   letter "sent in advance of, or to avoid, litigation" to vindicate its rights was subject to 425.16); *Dove

27   Audio v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996) (defendant's

28   communications to others related to anticipated action were subject to §425.16).  Thus, the anti-

SLAPP statute applies because Ms. Makaeff made her statements in the context of anticipated litigation.

### 4. The Counterclaim Arose from Ms. Makaeff's Exercise of Free Speech on an Issue of Public Interest

Finally, Ms. Makaeff's statements are protected under C.C.P. §425.16(e)(4) as an exercise of free speech on an issue of public interest.  Section 425.16(e)(4) explicitly protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  *Id.*  Section 425.16(e)(4) is an especially broad catch-all provision.  *See Roberts v. Los Angeles County Bar Ass'n*, 105 Cal. App. 4th 604, 614 (2003) (subsection covers "any other conduct" in support of petition or speech rights).  Even private statements that concern an issue of public interest are protected.  *See Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1546 (2005).

Therefore, the communications vaguely alleged by Trump University to have taken place between Ms. Makaeff and any "known" or "unknown third parties" (Counterclaim, ¶22) are also covered by the anti-SLAPP statute because they concern the same issues of public interest as discussed above.  *See* discussion, *supra*, §IV.A.1 (explaining why Ms. Makaeff's alleged statements concern an issue of public interest); *Buzayan v. City of Davis Police Dep't*, No. 2:06-cv-01576-MCE-DAD, 2007 WL 2288334, at *6 (E.D. Cal. Aug. 8, 2007) (conduct in furtherance of free speech on a matter of public interest falls under §425.16(e)(4)).

For all the foregoing reasons, Ms. Makaeff has made a prima facie showing that her statements constitute protected activity under the anti-SLAPP statute.

### B. Trump University Will Be Unable to Meet its Burden of Proving a Probability of Success on the Merits of Its Defamation Claim

Since Ms. Makaeff has established a prima facie showing that her statements are protected speech, the burden shifts to Trump University to demonstrate a probability of success on its defamation claim.  *See Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999).  To meet this burden, Trump University must show with admissible evidence that it will probably win at trial.  *See* C.C.P. §425.16(b)(2); *Gallagher v. Connell*, 123 Cal. App. 4th 1260, 1266 (2004); *Dupont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562,

1    568 (2000).  Simply claiming that proving its allegations are sufficient to state a claim is not

2    adequate – Trump University must present affirmative evidence to support a judgment on the merits.

3    *See Buzayan*, 2007 WL 2288334, at *6 ("the evidence presented must be admissible" evidence).

4    Trump University cannot meet this burden.

5           To prove a claim for defamation under California law, Trump University must demonstrate

6    Ms. Makaeff: (1) intentionally published a statement of ***fact***; (2) that is ***false***; (3) that is

7    ***unprivileged***; and (4) has a natural tendency to injure or causes special damage.  *See Taus v. Loftus*,

8    40 Cal. 4th 683, 720 (2007).  "'Defamation in written form is called libel, which is defined as 'a

9    false and unprivileged publication by writing . . . which exposes any person to hatred, contempt,

10   ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to

11   injure him in his occupation.'"  *Roe v. Doe*, No. C 09-0682 PJH, 2009 WL 1883752, at *9 (N.D. Cal.

12   June 30, 2009) (quoting Cal. Civ. Code §45).

13          Where as here, the case involves a public figure, the plaintiff must prove ***actual malice*** in the

14   alleged defamatory statements.  *See Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 134 (1967) (applying

15   "actual malice" standard to statements by about "public figures").  Trump University cannot show a

16   likelihood of success in proving ***any*** of these elements at trial.

17          **1.      As a Public Figure, Trump University Cannot Show with Clear
                      and Convincing Evidence that Ms. Makaeff Made the
18                    Statements with Actual Malice**

19          At the outset, Trump University cannot prove a probability on the merits at trial because it

20   will not be able to surmount the hurdle of showing with admissible evidence that Ms. Makaeff made

21   the alleged statements with actual malice.  This is fatal to its defamation claim.

22          The Supreme Court holds the "First Amendment limits California's libel law in various

23   respects.  When, as here, the plaintiff is a public figure, he cannot recover unless he proves by clear

24   and convincing evidence that the defendant published the defamatory statement with actual malice,

25   *i.e.*, with 'knowledge that it was false or with reckless disregard of whether it was false or not.'"

26   *Masson v. New Yorker Magazine*, 501 U.S. 496, 510-11 (1991) (quoting *New York Times Co. v.*

27   *Sullivan*, 376 U.S. 254, 279-80 (1964)).

28

### a.      Trump University is Undeniably a Public Figure

It cannot seriously be disputed that Trump University is a public figure for purposes of defamation claims.  *Roe*, 2009 WL 1883752, at *12.

> The rationale for treating public figures differently from private citizens is that: (1) "public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy"; and (2) "public figures have invited the attention and comment they receive and must accept certain necessary consequences will be made about them.'"

*Id.* (quoting *Gallagher*, 123 Cal. App. 4th at 1272).

Defamation claimants are limited purpose public figures where, as here: (1) there is a "public controversy"; and (2) the claimant "under[took] some voluntary act through which he or she sought to influence resolution of the public issue"; and (3) the alleged defamation is "germane to the plaintiff's participation in the controversy."  *Id.* (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 24 (2007)).  "[L]imited purpose public figure loses certain protection for his or her reputation only to the extent that the allegedly defamatory communication relates to his role in a public controversy." *Id.*

Here, the controversy regarding Trump University and its real estate investing seminars is a matter of public dispute because it involves thousands of consumers and their claims that Trump University engaged in misleading and improper conduct, which Trump University has categorically denied.  Trump University has voluntarily entered the public arena by providing real estate courses and programs around the country, advertising extensively online, in newspapers, on Facebook, and the radio, and by publicly denying in the press that it has acted improperly.  ¶¶13, 30.  Because the challenged statements arose out of Trump University's performance in the public role it voluntarily undertook, Trump University is at least a limited public figure for purposes of analyzing its defamation claim.  *See Roe*, 2009 WL 1883752, at *12.  Accordingly, Trump University must show actual malice on Ms. Makaeff's part.

Moreover, Donald Trump, Chairman of Trump University, is an "all purpose" public figure for purposes of analyzing this defamation claim and is the intended "face" of Trump University. ¶¶27, 30.  An "all purpose" public figure is a person "who, by reason of the notoriety of their

achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures." *Gertz v. Robert Welch*, 418 U.S. 323, 342 (1974).  In other words, public figures "assumed roles of special prominence in the affairs of society."  *Id.* at 345.

Donald Trump's name and likeness is known in households across the country by virtue of his notoriety as one of the nation's top entrepreneurs and real estate moguls, as well as his celebrity status as a TV personality, and most recently as the creator and host of "The Apprentice" and "The Celebrity Apprentice," nationally syndicated television programs on NBC.  *See, e.g.*, http://www.nbc.com/the-apprentice/ (last visited on June 30, 2010).

### b. Trump University Cannot Show Ms. Makaeff Made the Alleged Statements with "Actual Malice"

As a public figure (whether "all purpose" or "limited purpose"), Trump University must show that Ms. Makaeff made the alleged misstatements with actual malice for purposes of its defamation claim.  This high standard requires that Trump University show that Ms. Makaeff knew her statements were false at the time she made them or that she acted with reckless disregard of their truth or falsity.  *Ampex*, 128 Cal. App. 4th at 1578.  Reckless disregard requires proof that there was "a high degree of awareness of the probable falsity of [Ms. Makaeff's] statements" or proof that she "'"in fact entertained serious doubts as to the truth of [her statements].'"'"  *Id.* at 1579.  Actual malice cannot be inferred from an "ill will, personal spite or bad motive."  *Id.*

For example, in *Ampex Corp. v. Cargle*, a former employee of Ampex made several comments on an online message board concerning the management practices of Ampex and its chairman.  Ampex sued Cargle for defamation, and Cargle filed an anti-SLAPP motion.  *Id.* at 1577.  Ampex contended that there was actual malice because the statements were made after the employee had been terminated, the "tone and substance of the speech 'are hallmarks of ill-will and vindictiveness'" and certain statements indicate that the former employee was "'angry, hostile and spiteful.'"  *Id.* at 1579.  The court found that Ampex "have not carried their burden" because it failed to provide "evidence concerning Cargle's attitude or state of mind with respect to the veracity of the messages he posted on the Yahoo! message board."  *Id.*

Similarly here, Trump University cannot prove that Ms. Makaeff made the alleged statements with actual malice – that is, that she knew the statements were false at the time she made them or that she had serious doubts that the statements were true.  To the contrary, Ms. Makaeff firmly believed that not only was she speaking the truth as to the nature of Trump University's deceptive and misleading business practices, but that she needed to do so to protect other unwitting members of the general public from being duped and taken advantage of as she had been.  Declaration, ¶¶6-7.

Ms. Makaeff's belief in the truth of her statements is buttressed by the views of others.  Not only are there hundreds of other complaints posted online concerning the precise same practices, and news stories concerning these practices, but the BBB has given Trump University a D-minus rating, the New York Department of Education has issued a scathing reprimand of Trump University for even using the word "University" in its business name, and several state attorneys general are investigating the practices of Trump University.  ¶¶54, 55.  Ms. Makaeff is in no way alone in her belief concerning the truth of her allegations that Trump University has engaged in deceptive and misleading business practices.  Indeed, there are endless complaints nationwide on the Internet that echo Ms. Makaeff's statements regarding Trump University's misrepresentations and unscrupulous conduct.  ¶¶55-86.

Trump University's conclusory claim that the "entire reason" for Ms. Makaeff's statements "was that her personal financial situation had deteriorated to the point that she became desperate for cash, and for a scapegoat" does nothing to demonstrate actual malice because Trump University offers no evidence concerning Makaeff's state of mind other than this conclusory (and untrue) statement, and in any event, it would still not prove that Ms. Makaeff believed the statements to be false.  *See Ampex*, 128 Cal. App. 4th at 1579.

Even if Ms. Makaeff's statements are  ultimately found to be incorrect, this still could not provide a basis for Trump University's defamation claim.  *See Roe*, 2009 WL 1883752 at *15 (it is insufficient for purposes of establishing actual malice to show that the statements were inaccurate or unreasonable).  Under these circumstances, Trump University fails to show actual malice because it has not produced evidence that Ms. Makaeff knew her statements were false or had serious doubts as to their truthfulness.

## 2. Trump University Cannot Prove that the Alleged Statements Were False, or Actionable Statements of Fact

Additionally, Trump University cannot prove that Ms. Makaeff's alleged statements were false. "There can be no recovery for defamation without a falsehood." *Roe*, 2009 WL 1883752, at *9 (citing *Baker v. Los Angeles Herald Examiner*, 42 Cal. 3d 254, 259 (1986)). "Statements of opinion are not actionable." *Id.* (citing *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (2007)). This is so even if the statements of opinion "are objectively unjustified or made in bad faith." *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 578 (1996). Indeed, statements made with rhetorical hyperbole, vigorous epithets, expressions of contempt, and language used in a loose, figurative sense are not actionable. *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999). The court must look to the "totality of the circumstances" to determine if the statements were "provably false factual assertions." *Nygard*, 159 Cal. App. 4th at 1049.

For example, in *Nygard*, a former employee of Nygard, Inc. made statements in a published magazine article concerning the working conditions at Nygard. *Id.* at 1032. The former employee stated that he "'slaved . . . without a break,' endured 'pestering/taunting round the clock,' 'had to' 'slave/drudge almost without a break the whole time,' and felt himself 'used.'" *Id.* at 1033. The company sued the former employee for defamation and in response the former employee brought an anti-SLAPP suit. In determining whether the company had a probability of succeeding on the merits of its defamation claim, the court found that the former employee's statements were not "provably false" but instead were non-actionable statements of opinion concerning the working conditions at Nygard. *Id.* at 1052.

Likewise, in *Global Telemedia*, the Court held that the following rantings against Global Media were non-actionable statements of opinion and thus granted consumers' anti-SLAPP motion: statements that the company's "'product is so slow or non-existent,'" that it was a "'sinking ship,'" that investors should "'trust your stomach,'" management would "'fly the coop again,'" that "'you have been screwed out of your hard earned money here its time to talk about a lawsuit,'" that there was "'blatant mis-management, these people hold our money and they dictate after they lie how it will be used . . . greatest joke on the boards.'" 132 F. Supp. 2d at 1267-70.

Similarly here, any statements made by Ms. Makaeff were non-actionable statements of lay opinion concerning Trump University's business practices rather than provably false statements of fact. Trump University has vaguely attributed statements to Ms. Makaeff about its "deceptive business practices." Such statements, when viewed in the context in which they were written, are Ms. Makaeff's opinions as a consumer and layperson concerning her experience with Trump University and its real estate seminars upon finding out that she had been duped and was not going to receive what she had bargained for. Declaration, ¶4. Just as the former employee in *Nygard* complained about his prior work experiences and working conditions, Ms. Makaeff so too complained about her experiences with Trump University. Accordingly, these are non-actionable statements of opinion.

In any event, even if Ms. Makaeff's statements could be construed as statements of fact, which they were not, Trump University cannot show that they were false. Ms. Makaeff believed that her statements regarding Trump University's business practices were true when she wrote them, and still believes so today. Declaration, ¶¶5-6. Indeed, as Ms. Makaeff will show in the underlying class action, Trump University's business practices in the marketing and sale of its real estate seminars were, in fact, deceptive and misleading. ¶¶94-114, 132-157, 167-169.

### 3.     Makaeff's Statements Are Protected by the Litigation Privilege

Additionally, Trump University's defamation claim is barred because Ms. Makaeff's alleged statements were ***privileged***. Indeed, the alleged statements are protected by the litigation privilege because Ms. Makaeff made them in anticipation of the underlying lawsuit. In the course of the underlying consumer class action, Ms. Makaeff will in due course prove her allegations that Trump University engaged in misleading and deceptive practices. As such, even if Ms. Makaeff's statements are defamatory, the litigation privilege is a complete bar to Trump University's claim. *See* Cal. Civ. Code §47(b); *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993).

"For well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b)." *Rubin*, 4 Cal. 4th at 1193. Indeed, the privilege was derived "from common law principles establishing a defense to the tort of defamation." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). To be protected, the

1    communication must have "some connection or logical relation to the action." *Silberg v. Anderson*,

2    50 Cal. 3d 205, 212 (1990).  The privilege "should be denied only where [the communication] is so

3    palpably irrelevant to the subject matter of the action that no reasonable person can doubt its

4    irrelevancy." *Sacramento Brewing Co. v. Desmond, Miller & Desmond*, 75 Cal. App. 4th 1082,

5    1089 (1999).

6         Given the broad application of the privilege, courts have been clear that section 47(b) applies

7    to communications made in the pre-litigation context.  *See Rubin*, 4 Cal. 4th at 1194; *Blanchard*, 123

8    Cal. App. 4th at 919; *see also Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*, 473 F.

9    Supp. 2d 1083, 1088 (S.D. Cal. 2007) ("'[I]f the statement is made with a good faith belief in a

10   legally viable claim and in serious contemplation of litigation, then the statement is sufficiently

11   connected to [the] litigation and will be protected by the litigation privilege.  If it applies, the

12   privilege is absolute.'") (quoting *Blanchard*, 123 Cal. App. 4th at 919).  "'The litigation privilege is

13   absolute; it applies, if at all, regardless whether the communication was made with malice or the

14   intent to harm.  Put another way, application of the privilege does not depend on the publisher's

15   "motives, morals, ethics or intent."'" *American Prods., Inc. v. Law Offices of Geller, Stewart &*

16   *Foley, LLP*, 134 Cal. App. 4th 1332, 1342 (2005).  "'If there is no dispute as to the operative facts,

17   the applicability of the litigation privilege is a question of law. Any doubt about whether the

18   privilege applies is resolved in favor of applying it.'" *Id.* at 1343.

19        Ms. Makaeff's alleged statements, taken in context, were pre-litigation demands for the

20   return of the money she paid for Trump University's seminars and related products based on its

21   misrepresentations to attendees of its seminars.  *See* Counterclaim, ¶¶22, 23.  Indeed, Ms. Makaeff's

22   complaints to the BBB and state agencies of Trump University's business practices and

23   misrepresentations form the basis of her current class action.  ¶¶56-64.  Trump University was on

24   notice as early as September 10, 2009, that Ms. Makaeff was considering initiating litigation, as she

25   said so in a letter to her credit card company, which the credit card company provided to Trump

26   University.  Ms. Makaeff's statements therefore, easily meet the "some relation" requirement

27   because they are directly related to the primary issue in this class action lawsuit – whether Trump

28   University engaged in misrepresentations, deceptive practices and wrongful conduct.  *See Feldman*

1   *v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1489 (2008) (statements made prior to litigation

2   concerning the threat of legal action and the alleged basis for the threatened legal action were

3   protected by the litigation privilege and did not constitute a defamation).

4        Additionally, Ms. Makaeff's statements were made with a good faith belief that she had a

5   legally cognizable claim against Trump University.   After participating in Trump University

6   seminars and seeking to utilize, without success, the "one-year" mentorship that was promised to

7   her, Ms. Makaeff realized that she had been duped.  Ms. Makaeff complained to Trump University

8   without recourse and then lodged complaints in a public forum and to governmental agencies in an

9   attempt to get her money back.   Thereafter, she brought this lawsuit.  It is of no significance that

10   immediately after attending seminars Ms. Makaeff did not give bad reviews of employees on their

11   presentations.  Counterclaim, ¶19f, g.  It was not until later that she realized the promises made at the

12   seminars were empty and the apprenticeship program a scam.  ¶64.

13        Trump University's Counterclaim for defamation concerns statements protected by the

14   litigation privilege.  As such, there is no likelihood it would succeed on its claim.

15        **4.   Trump University Cannot Substantiate Its Claims of Actual
             Injury**

16

17        Moreover, Trump University offers no proof of actual injury.  Because Ms. Makaeff's

18   alleged statements concerned matters of public concern and Trump University is unable to prove

19   actual malice, as demonstrated above, Trump University is not entitled to presume damages, but

20   instead must state and substantiate claims of actual injury.  *See Gertz*, 418 U.S. at 349-50 ("It is

21   necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless

22   disregard for the truth to compensation for actual injury.").  For example, in *Global Telemedia*, the

23   Court held that even if the investor's negative online postings were actionable statements of fact and

24   not opinion, the Company "must show damages as a result of the postings," and the Company failed

25   to show any "correlation between his postings and the [company's] drop in stock prices."  132 F.

26   Supp. 2d at 1270.

27        Actual injury requires proof of a specific injury to property or business.  *Forsher v. Bugliosi*,

28   26 Cal. 3d 792, 807 (1980).  Trump University has the burden of presenting evidence to permit the

1   court to determine that there is a probability of demonstrating actual injury and cannot simply rely

2   on its complaint.  *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001).  Trump

3   University's conclusory allegations that Ms. Makaeff's statements were "a substantial factor in

4   causing actual and significant damages to the company, . . . which economic damages may equal or

5   exceed $1,000,000" are insufficient to meet this burden.  *See* Counterclaim, ¶31.  Indeed, there is ***no***

6   ***evidence*** that the statements alleged in the Counterclaim, to the extent that they can be proven to be

7   attributed to Ms. Makaeff, caused actual injury to Trump University.

8        Moreover, if Trump University suffered any damages, it is due to the chorus of governmental

9   and private agencies, as well as hundreds of other individuals, that have complained of Trump

10  University's misleading and deceptive practices.  As previously mentioned, based on ***numerous***

11  complaints, the BBB gave Trump University a ***D-minus rating***.  ¶54.  The New York Department of

12  Education demanded that Trump University remove the word "University" from its title because the

13  "'use of the word "university" by your corporation is ***misleading and violates New York Education***

14  ***Law*** and the Rules of the Board of Regents.'"  *Id.* (emphasis in original).  Additionally, at least six

15  state attorneys general have received complaints concerning Trump University, and at least two have

16  launched their own investigations into its practices.  ¶¶9, 10.

17       Accordingly, because Trump University is unable to present evidence that substantiates its

18  claim of actual injury as to Ms. Makaeff's consumer complaints ***alone***, its defamation claim must be

19  stricken.

20  ### 5.   Trump University Cannot Prove Plaintiff's Statements Had a Natural Tendency to Injure

21

22       Finally, even if the Court does not find that Trump University must substantiate its claim for

23  $1 million with an actual showing of damages, Trump University's Counterclaim fails because it

24  does not provide any evidence that Plaintiff's statements had "a natural tendency to injure."  *Smith v.*

25  *Maldonado*, 72 Cal. App. 4th 637, 645 (1999).  A statement has a natural tendency to injure if on its

26  face it has a natural tendency to lessen a company's profits.  C.C.P. §46; *Albertini v. Schaefer*, 97

27  Cal. App. 3d 822, 829 (1979).  Trump University has failed to provide any evidence that Ms.

28

1  Makaeff's statements had a tendency to lessen Trump University's profits or that her statements (and

2  hers alone) did in fact lessen its profits.

3      Trump University alleges in conclusory fashion that Ms. Makaeff's statements are

4  defamatory per se.  Specifically, Trump University claims "Plaintiff's per se defamation was a

5  substantial factor in causing actual and significant economic damages to the company, including but

6  not limited to harm to the company's business, increased or additional expenses and/or loss or

7  productive time imposed on the company, and/or loss of reputation."  Counterclaim, ¶31.  Because

8  Trump University has failed to provide any evidence that it has actually incurred significant

9  economic losses, and that it was Ms. Makaeff's statements specifically that caused it to incur these

10  losses, Trump University cannot meet its burden of demonstrating a probability of success on the

11  merits of its claim.  Accordingly, Trump University's Counterclaim should be stricken in its entirety

12  pursuant to C.C.P. §425.16.

13      **C.   Ms. Makaeff Should be Entitled to Recover Her Attorneys' Fees**

14      If the Court grants Ms. Makaeff's anti-SLAPP motion, she is entitled to recover her

15  attorneys' fees and costs as the prevailing party on her motion pursuant to C.C.P. §425.16(c).  The

16  fee award is mandatory.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) ("[A]ny SLAPP

17  defendant who brings a successful motion to strike is entitled to mandatory attorney fees."); *see also*

18  *Zwebner v. Coughlin*, Nos. 05-56756, 06-55427, 2007 WL 2141506, at *1 (9th Cir. Jul. 26, 2007)

19  (recognizing that attorneys' fees are mandatory for a party's success in brining an anti-SLAPP

20  motion).  Accordingly, Ms. Makaeff is entitled to recover attorneys' fees and costs expended in

21  litigating her anti-SLAPP motion.

22

23

24

25

26

27

28

**V.      CONCLUSION**

For the foregoing reasons, Ms. Makaeff respectfully submits that her special motion to strike Trump University's state defamation claim should be granted pursuant to C.C.P. §425.16, and she should be awarded attorneys' fees and costs for same.  Trump University's Counterclaim must be stricken in its entirety.

DATED:  June 30, 2010

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST


                    s/ Amber L. Eck
                   AMBER L. ECK

625 West Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
PAULA M. ROACH
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 30, 2010.

s/ Amber L. Eck
AMBER L. ECK

ZELDES & HAEGGQUIST, LLP
625 West Broadway, Suite 906
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

E-mail:ambere@zhlaw.com

Case 3:10-cv-00940-GPC-WVG   Document 14-1   Filed 06/30/10   PageID.216   Page 33 of 33

## Mailing Information for a Case 3:10-cv-00940-IEG -WVG

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paula M. Roach**
  proach@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Keith Schneider**
  dks@yslaw.com,dscardino@reedscardino.com,ewb@yslaw.com,mlokey@reedscardino.com,efb@yslaw.com,jjohnson@reedscardino.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)