1   David K. Schneider (CSB 139288)
    YUNKER & SCHNEIDER
2   655 West Broadway, Suite 1400
    San Diego, California 92101
3   Telephone:  (619) 233-5500
    Facsimile:   (619) 233-5535
4   Email:  dks@yslaw.com

5   Attorneys for Defendant TRUMP UNIVERSITY, LLC

6

7

8                    **UNITED STATES DISTRICT COURT**

9           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10  TARLA MAKAEFF, on Behalf of Herself      )   Case No. 10 CV 0940 IEG (WVG)
    and All Others Similarly Situated,       )
11                                           )   OPPOSITION TO PLAINTIFF'S
                                             )   MOTION TO STRIKE DEFENDANT'S
                Plaintiff,                   )   COUNTERCLAIM
12                                           )
    v.                                       )
13                                           )
    TRUMP UNIVERSITY, LLC, a New             )   DATE:   8/2/10
14  York Limited Liability Company, and      )   TIME:   10:30 A.M.
    DOES 1 through 50, inclusive,            )   CRTM:  1
15                                           )   JUDGE: HON. IRMA E. GONZALEZ
                Defendant.                   )
16  _____ )

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS ......................................................................................3

    A. Trump University And Its Satisfied Attendees ...........................................3

    B. Makaeff And Her Participation In Trump University Programs ...............4

    C. Makaeff's Unrelated Financial Problems ................................................5

    D. Makaeff Turns Against Trump University And Defames Trump University Repeatedly.................................................................................5

    E. Trump University Has Been Damaged By Makaeff's Numerous and Repeated Defamatory Statements .............................................................7

III. TRUMP UNIVERSITY'S COUNTERCLAIM IS NOT AIMED AT ANY PROTECTED CONDUCT AND IS THUS NOT SUBJECT TO MAKAEFF'S SPECIAL MOTION TO STRIKE ...........................................................................7

    A. Makaeff's Defamatory Statements Do Not Constitute Protected Activity.............8

    B. Makaeff's Defamatory Statements Were Not Made Before A Legislative, Executive, Or Judicial Proceeding Or In Connection With An Issue Under Consideration Or Review By A Legislative, Executive Or Judicial Body, Or Any Other Proceeding Authorized By Law, And Therefore Are Not Protected .......................................................................................9

    C. Makaeff's Defamatory Statements Were Not Made In A Public Forum On A Matter Of Public Interest And Are Therefore Not Protected...........................10

IV. TRUMP UNIVERSITY IS LIKELY TO PREVAIL ON ITS COUNTERCLAIM AND THUS THE SPECIAL MOTION TO STRIKE CANNOT BE GRANTED ..........13

    A. Trump University Is Neither A Public Figure Nor A Limited Purpose Public Figure And Its Advertising Does Not Change That Fact ..........................14

    B. Trump University Is Likely To Prevail On Its Claim For Defamation Because Makaeff Made False Statements Of Fact Which Were Not Privileged And Which Have A Natural Tendency To Cause Damages ...............17

        1. Makaeff's false statements of "fact" are actionable because they are facts rather than opinions and admissible evidence shows they are demonstrably false ..........................................................................17

        2. Makaeff's statements were not protected by the litigation privilege.........19

        3. Makaeff's defamatory statements have a natural tendency to cause damages................................................................................................21

# TABLE OF CONTENTS (cont.)

**Page**

C.    Even If Trump University Is Seen As A Public Figure, Trump University Will Prevail Because It Can Prove Both That Makaeff Made Her Statements With Malice And Trump University Suffered Actual Damages .........22

    1.    The evidence shows that Makaeff acted with actual malice .....................22

    2.    The evidence shows that Trump University has incurred actual damages as a result of Makaeff's defamatory statements..........................24

D.    In Bringing A Frivolous Motion To Strike, Makaeff Is Responsible For Attorney's Fees ...............................................................................................24

V.    CONCLUSION.............................................................................................................24

OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S COUNTERCLAIM

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AMPEX Corp. v. Cargle*
        128 Cal.App.4th 1569 (2005) .................................................14

*Annette F. v. Sharon S.*
        119 Cal.App.4th 1146 (2004) .................................................23

*Barnes-Hind, Inc. v. Super. Ct.*
        181 Cal.App.3d 377 (1986) .................................................21

*Bates v. Campbell*
        213 Cal. 438 (1931) .................................................22

*Bosley Medical Institute, Inc. v. Kremer*
        403 F.3d 672 (9th Cir. 2005) .................................................8

*Budwin v. American Psy. Assn.*
        24 Cal. App. 4th 875 (1994) .................................................21

*Connick v. Myers*
        461 U.S. 138 (1983).................................................12

*Financial Corp. of America v. Wilburn*
        189 Cal.App.3d 764 (1987) .................................................19

*Flatley v. Mauro*
        39 Cal. 4th 299 (2006) .................................................8, 9

*Foundation for Taxpayer and Consumer Rights v. Garamendi*
        132 Cal. App. 4th 1375 (2005) .................................................24

*Gertz v. Robert Welch, Inc.*
        418 U.S. 323 (1974).................................................14

*Global Telemedia Int'l, Inc. v. Doe 1*
        132 F.Supp.2d 1261 (C.D. Cal. 2001) .................................................11, 17, 18

*Golden Bear Distributing Systems of Texas, Inc. v. Chase Revel, Inc.*
        708 F.2d 944, abrogated on other grounds in *Hiller v. Manufacturers Product
        Research Group of North America, Inc.*
        59 F.3d 1514 (1995).................................................15

**TABLE OF AUTHORITIES (cont.)**

<span style="float:right">**Page**</span>

*Hutchison v. Proxmire*
    443 U.S. 111 (1979)...........................................................................12

*Mann v. Quality Old Time Services, Inc.*
    120 Cal. App. 4th 90 (2004) ..........................................................11

*Manufactured Home Communities v. County of San Diego*
    544 F.3d 959 (9th Cir. 2008) .........................................................18

*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*
    99 Cal.App.4th 1179 (2002) ..........................................................13

*Milkovich v. Lorain Journal Co.*
    487 U. S. 1 (1990).............................................................................17

*Moore v. Shaw*
    10 Cal. App. 4th 182 (2004) ..........................................................24

*Moyer v. Amador Valley Joint Union High Sch. Dist.*
    225 Cal.App.3d 720 (1990) ...........................................................17

*Navellier v. Slettern*
    29 Cal. 4th 82 (2002) ...............................................................8, 13

*Nguyen-Lam v. Cao*
    171 Cal.App.4th 858 (2009) ..........................................................22

*Nygard, Inc. v. Uusi-Kerttula*
    159 Cal.App.4th 1027 (2008) ..................................................17, 18

*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO*
    105 Cal.App.4th 913 (2003) ....................................................10, 11

*Rodriguez v. Panayiotou*
    314 F.3d 979 (9th Cir. 2002) .........................................................17

*Rosenthal v. Great Western Fin. Securities Corp.*
    14 Cal.4th 394 (1996) .....................................................................13

*Rothman v. Jacson*
    49 Cal.App.4th 1134 (1996) ....................................................19, 20

*Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*
    473 F.Supp.2d 1083 (S.D. Cal. 2007)...........................................21

1

**TABLE OF AUTHORITIES (cont.)**

2

<u>Page</u>

3

*Silberg v. Anderson*

4
     50 Cal. 3d 205 (1990) .........................................................................................19

5

*Sipple v. Foundations for Nat. Progress*
     71 Cal.App.4th 226 (1999) ...........................................................................22, 23

6

7

*Time, Inc. v. Firestone*
     424 U.S. 448 (1976)...........................................................................................16

8

*Vegod Corp. v. American Broadcasting Companies, Inc.*

9
     25 Cal.3d 763 (1979) .....................................................................................15, 22

10

*Weinberg v. Feisel*
     110 Cal.App 4th 1122 (2003) .........................................................10, 12, 16, 22

11

12

*Wilson v. Parker, Covert & Chidester*
     28 Cal. 4th 811 (2002) .......................................................................................13

13

**Statutes**

14

15

Cal. Civ. Code § 45(a) (2007)......................................................................................21, 22

16

Cal. Civ. Proc. Code. § 425.16 (West 2010)..............................................................8, 13

17

Cal. Civ. Proc. Code § 425.16(c) (2010) ........................................................................24

18

Cal. Civ. Proc. Code § 425.16(e) ....................................................................................13

19

Cal. Civ. Proc. Code § 425.16(e)(1) ...............................................................................10

20

Cal. Civ. Proc Code § 425.16(e)(2). ...............................................................................10

21

22

Cal. Civ. Proc. Code § 425.16(e)(3) ...............................................................................10

23

Cal. Civ. Proc. Code § 425.16(e)(4). ...............................................................................10

24

Cal. Penal Code § 518.........................................................................................................9

25

Cal. Penal Code § 519.........................................................................................................9

26

27

28

# I. **INTRODUCTION**

This matter began with a simple commercial transaction between plaintiff Tarla Makaeff ("Makaeff") and a small, private LLC, Trump University. Makaeff purchased a product from Trump University – a series of seminars and workshops designed to provide Makaeff and other attendees with information to better understand and potentially succeed in real estate investing. Makaeff was **very** pleased with the product. She filled out glowing course evaluations and even made a video praising the product and Trump University.

Ten months later, however, Makaeff found herself in difficult financial circumstances completely unrelated to her training and attendance at Trump University programs. Facing a personal financial crisis, Makaeff needed money and fast. Despite the fact that she had already attended every seminar she purchased, and had given Trump University great reviews, she demanded a full refund of the money she had spent on her real estate education. Trump University, too, recognized that Makaeff had already completely "consumed" the product and understandably refused. In a showing of good will, though, Trump University offered Makeff additional programs, free of charge, which Makaeff accepted and attended, presumably in an attempt to turn her fortunes around.

Unfortunately for Makaeff, that still did not solve her own unrelated financial problems, so she decided to turn on Trump University and created an extortion plan to carry it out. She began a concentrated campaign of defamation against Trump University, with her admitted goal being the return of her tuition for seminars which she began almost one year earlier. She accused Trump University not just of "useless" programs, but of committing very specific crimes, including: "opening credit cards in the names of its students, without those students' permission," "identity theft," "grand larceny," "illegal bait and switch tactics," and the "unsolicited taking of personal credit by trickery." She also called Trump University representatives "liars" and accused them of engaging in "blatant lies when they represented that they provided mentoring and coaching sessions." When Trump University refused to give in to her extortion efforts, Makaeff tried to turn this commercial dispute into a "federal case," hoping to create a "nationwide" federal class action.

/ / /

Case No. 10 CV 0940 IEG (WVG)
OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S COUNTERCLAIM

Makaeff now hopes to escape liability for her defamatory statements by re-characterizing the "forum" in which they were made, the plain meaning of those statements and by arguing that a basic $35K contract dispute somehow involves matters of "public importance." Plaintiff also must convince the Court — and ultimately the trier of fact — that Trump University LLC is a "public figure" and that the defamatory statements she made to uninterested third parties in the Summer of 2009 were somehow "in anticipation of litigation" which began in the Spring of 2010.

As discussed in detail below, Makaeff's statements were neither protected First Amendment speech, nor involve issues of public importance, nor made in anticipation of litigation. Despite Makaeff's argument, Trump University's defamation claim arises not from statements made to governmental entities, but rather from statements made to private third parties. Those statements certainly did not involve issues of public importance. Further, Trump University is not a public figure and did not voluntarily inject itself into a debate over an issue of significance to the public to become a public figure. Finally, Makaeff's defamatory statements were made neither in anticipation of litigation nor even in connection with it. In fact, Makaeff admits in her supporting declaration that she made the defamatory statements long before she even sought counsel or truly contemplated litigation. Her publications to uninterested third parties more than a half year before filing suit simply are not protected.

Ironically, Makaeff attempts to portray defendant Trump University as the "large powerful corporation" seeking to "intimidate" and "chill" speech of a "plaintiff with few resources." While the parties are not equal in size, in fact the efforts to "intimidate" and "chill" have come from Makaeff alone.

It was Makaeff who "reported" Trump University to no less than six state and federal agencies, including the Attorney General's office, the FBI, and District Attorney's office. It was Makaeff who threatened to report Trump University to the FTC, the FDIC, the Bureau of Consumer Protection and several other agencies if she did not get her money back. It was Makaeff who published her defamatory statements to third parties in letters and orally. It was Makaeff who admittedly went "viral" with her defamatory statements, all in an unfettered effort to, in her own

/ / /

1  words, "do whatever it takes" to get her money back from Trump University.  It was Makaeff who

2  made the defamatory statements in her effort to intimidate and extort money from Trump University.

3       The bottom line is that Makaeff falsely stated that Trump University committed specific

4  crimes.  Those defamatory statements caused specific and ultimately quantifiable economic injury

5  and damage to Trump University and as yet unknown but presumably serious harm to its reputation.

6  Trump University filed its counterclaim not to intimidate Makaeff, but to seek redress caused by

7  Makaeff's defamatory statements.[1]  Makaeff must be held accountable for her defamatory

8  statements.  Makaeff's Special Motion to Strike must be dismissed.

9       **II.**    **STATEMENT OF FACTS**

10  **A.**   **Trump University And Its Satisfied Attendees**

11       Trump University is a small, private company with 39 employees.  Trump University offers

12  training, instruction, mentoring and other support for people interested in learning about real estate

13  and financial investment.  Declaration of Michael Sexton ("Sexton Decl."), ¶ 2.  Trump University's

14  faculty includes successful entrepreneurs, and scholars from leading colleges and universities.

15  Trump University promises to provide useful information, skills and the opportunity to succeed.

16  Trump University does not promise specific results, profits or wealth of its attendees — all of whom

17  have varying abilities, experience, expectations, resources, educational levels, market conditions,

18  local properties and competition to work with.  Trump University offers its attendees a full money-

19  back guarantee if they cancel their contract within three days of enrollment.  Sexton Decl., ¶¶ 2 & 3.

20       Of all Trump University attendees who have responded to written surveys, over 95% rated

21  the programs, seminars and workshops as "excellent" in quality, relevance and usefulness.

22  Furthermore, over 99% who responded to written surveys stated that they would attend another

23  Trump University program and would recommend that others do so as well.  Sexton Decl., ¶ 4.

24  / / /

25  / / /

26

27  ------------------------

[1]    Trump University did not sue any of the other plaintiffs, nor did it seek an injunction to

28  prevent Makaeff from free speech.

**B.      Makaeff And Her Participation In Trump University Programs**

On August 8, 2008, Makaeff attended a three-day program entitled "Fast Track to Foreclosure Workshop."  At the end of the workshop, Makaeff signed up for the Trump University "Trump Gold Elite Program" which entitled Makaeff to: (1) attend four three-day advanced training workshops free of charge over the next year; (2) receive training publications, software and other materials; (3) get a three-day mentoring session in the field from a qualified mentor; and (4) have her business incorporated.  Makaeff accepted and utilized every one of those benefits.  Sexton Decl., ¶ 5.

Specifically, on September 26, 2008, Makaeff began her three-day "in-field mentorship."  At the conclusion of that program, she filled out a "Field Mentor Evaluation Form" in which she described the experience in her own words as "amazing," rated her mentor as "excellent," and rated every other one of the ten facets of the program as "excellent" as well.  Sexton Decl., ¶ 6.

On October 24, 2008, plaintiff began her three-day "Wealth Preservation Asset Protection Retreat."  At the conclusion of that program, she filled out a rating sheet with "excellent" marks for all four facets of the program, indicated that she would attend and recommend more Trump University seminars, and indicated she wanted to be contacted about upcoming programs and special events offered by the company.  Sexton Decl., ¶ 7.

On October 31, 2008, Makaeff began her three-day "Creative Financing Real Estate Workshop."  At the conclusion of that program, she filled out a rating sheet with "excellent" marks for all five facets of the program, indicating that she would attend and recommend more Trump University seminars, and indicating that "nothing could be improved."  Sexton Decl., ¶ 8.

On January 23, 2009, Makaeff began her three-day "Commercial and Multi-Family Retreat."  Makaeff fully participated and enjoyed the program.  She did not fill out the standard evaluation form, but she provided no negative comments orally or in writing about her experience.  Sexton Decl., ¶ 9.

On February 6, 2009, Makaeff began her three-day "Quick Turn Real Estate Retreat."  Makaeff fully participated and enjoyed the program.  She did not fill out the standard evaluation form, but she provided no negative comments orally or in writing about her experience.  Sexton Decl., ¶ 10.  Makaeff not only made <u>no</u> negative comments, but in fact she made a video filled with

1   <u>positive</u> comments more than four months after completing the Gold Elite Program.  Sexton Decl.,

2   ¶ 13.

3   **C.    Makaeff's Unrelated Financial Problems**

4   At no time did Makaeff ever seek to cancel her contract within the available Notice of

5   Cancellation period.  Yet, after completing the initial three-day program, and after then completing

6   five more programs and workshops, and after seven months in the "Trump Gold Elite" program, and

7   after providing glowing written reviews, Makaeff wrote to Trump University in April 2009 stating

8   that she was having significant personal financial difficulties and found herself in a "precarious

9   financial position."  She demanded a full refund.  Sexton Decl., ¶ 11.  Trump University explained

10  that it could not refund her money after she had already participated in every program and received

11  the information, skill set and mentoring she paid for.  Nevertheless, as a showing of good faith,

12  Trump University offered, and Makaeff accepted, additional free coaching services on April 21,

13  2009, May 12, 2009, and June 30, 2009, and Makaeff also had at least 15 telephone conferences and

14  email exchanges with another coach.  Sexton Decl., ¶ 12.

15  During this mentoring, Makaeff joined with another attendee who had considerable more real

16  estate experience, namely Robert Vargas.  Together they invested in a Las Vegas REO property for

17  reimbursement and re-sale.  Then, on June 13, 2009, Makaeff attended her last Trump University

18  program entitled "Wealth Summit."  At the conclusion of that program, Makaeff provided a

19  videotaped testimonial in which she praised both Mr. Vargas and Trump University.  Sexton Decl.,

20  ¶ 13.

21  **D.    Makaeff Turns Against Trump University And Defames Trump University Repeatedly**

22  After completing the last of all of these programs, Makaeff suddenly turned on Mr. Vargas

23  and Trump University apparently because her personal financial situation had deteriorated to the

24  point that she became desperate for cash and for a scapegoat.  Sexton Decl., ¶ 14.

25  As Makaeff's financial situation worsened, so did her defamatory rhetoric.  Beginning in at

26  least early as September 10, 2009, Makaeff began publishing defamatory statements to known third

27  parties in letters, including the Better Business Bureau and her bank, and unknown third parties on

28  the Internet, including but not limited to the following:

a.     Trump University engaged in "fraudulent business practices;"

b.     Trump University engaged in "deceptive business practices;"

c.     Trump University engaged in "illegal predatory high pressure tactics;"

d.     Trump University's "business practices are criminal;"

e.     Trump University engaged in a "clear practice of personal financial information fraud;"

f.     Trump University engaged in "illegal bait and switch;"

g.     Trump University engaged in a "brainwashing scheme;"

h.     Trump University engaged in "outright fraud;"

i.     Trump University engaged in "grand larceny;"

j.     Trump University engaged in "identity theft;"

k.     Trump University engaged in "unsolicited taking of personal credit and trickery into opening credit cards without approval;"

l.     Trump University engaged in "fraudulent business practices utilized for illegal material gain;"

m.     Trump University engaged in "felonious teachings;"

n.     Trump University's teachings "are outright criminal;"

o.     Trump University engaged in "neurolinguistic programming and high pressure sales tactics based on the psychology of scarcity;"

p.     Trump University engaged in "unethical tactics;" and

q.     Trump University engaged in "gargantuan amount of misleading, fraudulent, and predatory behavior."

Sexton Decl., ¶ 15.

On or about November 2, 2009, Makaeff continued her campaign to malign and defame Trump University by repeating her per se defamatory statements above and adding additional ones, including but not limited to:

a.     Trump University engaged in "blatant lies" when it represented that it provided "mentoring and coaching sessions";

b.     Trump University engaged in "fraudulent misleading tactics"; and

c.     Trump University used "brainwashing tactics" to manipulate everyone" to lie about their training and experiences.

Sexton Decl., ¶ 16.

Case No. 10 CV 0940 IEG (WVG)

OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S COUNTERCLAIM

1    Makaeff's defamatory statements are demonstrably false.  Trump University has never

2    engaged in illegal bait-and-switch tactics, brainwashing schemes, grand larceny, identity theft, the

3    unsolicited taking of personal credit and trickery, neurolinguistic programming or any of the other

4    illegal acts represented by Makaeff to third parties.  In fact, Trump University does not even obtain

5    credit information on attendees from any third party source or illegally.  It obtains it only with

6    specific authorization from attendees.  Further, Trump University has never been cited or charged for

7    any illegal activity.  Sexton Decl., ¶¶ 17-19.

8    **E.    Trump University Has Been Damaged By Makaeff's Numerous and Repeated**
     **Defamatory Statements**

9

10   As a direct result of Makaeff's defamatory statements, Trump University has suffered at least

11   three types of damages: (1) Trump University's revenues and profits began a sharp decline shortly

12   after – and as a result of – Makaeff's defamatory statements; (2) Trump University has incurred

13   large and unnecessary expenses to respond to and defend itself from Makaeff's defamatory

14   statements; and (3) Trump University's reputation may have been irreparably harmed.

15   Trump University's business as a provider of courses concerning real estate investment is

16   dependent upon the company's excellent reputation of providing unique, hands-on, useful

17   information and training to its attendees.  Consequently, false and intentional defamation of that

18   reputation, whether the defamation is carried out openly, or anonymously, is particularly harmful to

19   Trump University and very likely has resulted in significant harm and financial loss to the company.

20   Sexton Decl., ¶ 20.

21   **III.    TRUMP UNIVERSITY'S COUNTERCLAIM IS NOT AIMED AT ANY**
     **PROTECTED CONDUCT AND IS THUS NOT SUBJECT TO MAKAEFF'S**

22   **SPECIAL MOTION TO STRIKE**

23   The California anti-SLAPP statute allows certain parties limited immunity from suit for

24   statements made in pursuit of their First Amendment rights.  Neither the immunity nor its application

25   is absolute and even its fairly liberal reach does not extend to Makaeff's defamatory statements that

26   Trump University engaged in specific criminal acts.  The statute protects only:

27       1.    any written or oral statement or writing made before a legislative,
              executive, or judicial proceeding, or any other official proceeding
28            authorized by law;

2.      any written or oral statement or writing made in connection with an issue
under consideration or review by a legislative, executive, or judicial body,
or any other official proceeding authorized by law;

3.      any written or oral statement or writing made in a place open to the public
or a public forum in connection with an issue of public interest;

4.      or any other conduct in furtherance of the exercise of the constitutional
right of petition or the constitutional right of free speech in connection
with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e)(1)-(4).

Makaeff correctly acknowledges that she bears the burden of proof to show that her defamatory statements were protected. *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). Makaeff cannot meet her burden because her accusations of criminal conduct are not constitutionally protected free speech, as a matter of law. Further, there is no credible evidence that Makaeff's defamatory statements were made before legislative, executive or judicial bodies. They certainly did not involve issues of public interest, and were not made in anticipation of litigation. Therefore, the defamatory statements do not fall under the protection of the anti-SLAPP statute, and Makaeff's Special Motion to Strike must be denied.

**A.      Makaeff's Defamatory Statements Do Not Constitute Protected Activity**

To bring a Motion to Strike under § 425.16, Makaeff has the initial burden to make a prima facie showing that the statute applies by demonstrating that the lawsuit arises out of an "act in furtherance of a person's right of petition or free speech . . . in connection with a public issue." Cal. Civ. Proc. Code. § 425.16 (West 2010). In determining whether the statute applies, courts inquire whether the cause of action was based on an act in furtherance of the accused's right of petition or free speech. *Navellier v. Slettern*, 29 Cal. 4th 82, 89 (2002). While an exercise of protected activity falls within the scope of the statute, the California Supreme Court has held that § 425.16 cannot be invoked by a defendant whose asserted protected activity is illegal as a matter of law. *Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006). Where the "evidence conclusively establishes that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute." *Id.* Extortionate speech is not constitutionally protected. *Id.* at 328.

/ / /

1    The basis for Trump's Counterclaim rests, in part, on Makaeff's extortionate speech.  She has

2    repeatedly published statements to third parties about Trump University orally, in writing, and on the

3    Internet which accuse Trump University of criminal behavior.  Additionally, she has threatened

4    Trump University that she would publish her statements to other agencies if Trump Univeristy did

5    not pay her money with statements such as:  "I am contacting the Better Business Bureau, the

6    Federal Trade Commission, Bureau of Consumer Protection and the FDIC as well as posting the

7    facts of my highly negative experience on a wide array of interest sites . . . I am contacting the media

8    . . . so that they can expose the scam and am willing to go to whatever lengths to obtain my money

9    back . . ." *See* ¶ 6, Counterclaim of Trump, LLC.  The *Flatley* court made clear that extortion

10   precludes a prima facie showing for anti-SLAPP application.  *Id.* at 328-329.

11   Makaeff's attempt to get money from Trump University through the use of threats, coercion

12   or intimidation is extortion.  Cal. Penal Code §§ 518 and 519.  Makaeff's false claims that Trump

13   University engaged in criminal conduct, thereby exposing Trump University to unfounded public

14   ridicule in an effort to attain money is illegal.  Makaeff's conduct is not protected free speech,

15   therefore, Makaeff has failed to make a prima facie showing that the anti-SLAPP statute applies to

16   Trump University's defamation Counterclaim.

17   **B.    Makaeff's Defamatory Statements Were Not Made Before A Legislative, Executive, Or Judicial Proceeding Or In Connection With An Issue Under Consideration Or Review By A Legislative, Executive Or Judicial Body, Or Any Other Proceeding Authorized By Law, And Therefore Are Not Protected**

18

19

20   Makaeff claims confusion over which defamatory statements Trump University contends are

21   actionable.[2]  Trump University has not based its claim against Makaeff for statements she made to

22   the Federal Trade Commission, the FBI or any New York State Executive branch.  Trump

23   University filed suit against Makaeff for her defamatory statements to non-governmental agencies,

24   such as the Better Business Bureau ("BBB"), her bank and postings on the Internet.  The fact that

25

26   [2]     Makaeff's representation to the Court that Trump University "refused" to produce requested

27   documents is completely false.  The issue likely is irrelevant for purposes of this motion, but if the Court would like to review the true and actual facts, they are included in the accompanying

28   Declaration of David K. Schneider, ¶¶ 2 & 3.

Makaeff <u>also</u> published her defamatory statements to government agencies does not confer immunity for those same statements to non-governmental third parties.

The BBB is not a legislative, executive or judicial agency and there was no "proceeding" before the BBB, other than Makaeff's writings. Makaeff provides no authority which suggests — let alone establishes — that the BBB is afforded the protections provided to the judicial, legislative or executive branches of our government under the statute. Similarly, Makaeff provides no authority or support that financial institutions are considered judicial, legislative or executive branches for purposes of the statute. Makaeff's defamatory statements are not protected under California Code of Civil Procedure section 425.16 (e)(1) and (2).

## C.   **Makaeff's Defamatory Statements Were Not Made In A Public Forum On A Matter Of Public Interest And Are Therefore Not Protected**

Makaeff has not met her burden of proving that her defamatory statements were made exclusively in a public forum. Private complaints to the Better Business Bureau and private correspondence with one's bank are not communications made in a public forum. Makaeff's defamatory statements were made, among other places, in a written complaint to the BBB and in a letter to her bank. In the absence of a public forum, the defamatory statements are not protected by sections 425.16(e)(3) and (4).

Even if Makaeff could prove that her statements were made exclusively in a public forum, she would still fail to satisfy her burden because defamatory statements about Trump University were not a matter of public interest and therefore section 425.16 (e)(3) and (4) do not apply. Not all disputes are a matter of public interest for purposes of a special motion to strike. In order to be of "public interest," an issue must be one that "impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO*, 105 Cal.App.4th 913, 920 (2003). Makaeff cannot turn her personal dissatisfaction of a $35K contract dispute into a public issue merely by communicating it to a large number of people. *Weinberg v. Feisel*, 110 Cal.App 4th 1122, 1132 (2003). Thus, these statements are not protected by sections 425.16(e)(3) and (4).

/ / /

1    Makaeff's defamatory statements simply do not implicate a matter of public interest.  Trump

2    University is a small, privately held company.  The cases cited by plaintiff in support of her

3    argument that this dispute involves a public interest involve publically traded corporations with

4    literally thousands to millions of shareholders and investors.  See *Global Telemedia Int'l, Inc. v.*

5    *Doe 1*, 132 F.Supp.2d 1261 (C.D. Cal. 2001) (where thousands of shareholders were at risk).  Nor

6    are the issues raised by Makaeff of the type which could impact a "large segment" of society.

7    Makaeff's attempt to compile a "master list" of individual complaints from a handful of anonymous

8    internet posting does not somehow convert her small individual contract claim into a "public

9    interest."

10    The instant case is most like *Rivero*.  In that case, a janitorial supervisor at a public university

11    sued a union for defamation after he was accused of bribery, nepotism, theft and extortion.  The

12    Union's anti-SLAPP motion alleged that the issue was one of public concern because it involved

13    unlawful workplace activities which concerned the public and public policy, especially at a publicly

14    financed institution.  The court rejected this argument, finding that the dispute between the

15    supervisor and the union simply did not rise to a matter of public interest.  *Rivero*, 105 Cal.App.4th

16    at 924.

17    Similarly, the dispute between Trump University and Makaeff does not rise to the level of an

18    issue of public interest.  Trump University is neither large nor publicly traded.  Even the subject

19    matter is not a matter of great "public interest."  Trump University sells educational real estate

20    seminars, not pharmaceuticals affecting health and safety.  Additional evidence of the lack of public

21    interest in this case is Makaeff's own claim that she made these defamatory statements to the BBB

22    and others, and threatened to contact even more, to get money out of Trump University.  Makaeff's

23    motives in making the defamatory statements could not be clearer:  she was attempting to extort

24    money from Trump University due to her own financial circumstances.  Compare, *Mann v. Quality*

25    *Old Time Services, Inc.* 120 Cal. App. 4th 90, 111 (2004) (former employee's statements to

26    governmental agencies and third parties about employer's unlawful dumping of toxic waste was not

27    a statement of public interest involving toxic waste dumping generally, but rather about the

28    Plaintiff's specific business).

Case No. 10 CV 0940 IEG (WVG)
OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S COUNTERCLAIM

1    Makaeff's personal dissatisfaction with Trump University does not amount to an issue of

2    public concern simply because she posted her alleged personal dissatisfaction on the worldwide web

3    either. *See Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003) (a person cannot turn otherwise

4    private information into a matter of public interest simply by communicating it to a large number of

5    people); s*ee also Connick v. Myers*, 461 U.S. 138, 148-49 (1983) (the focus of the speaker's conduct

6    should be the public interest rather than the mere effort to "gather ammunition for another round of

7    private controversy").  The assertion of a broad and amorphous public interest is not sufficient.

8    *Hutchison v. Proxmire*, 443 U.S. 111, 135 (1979).  Rather, there must be some degree of closeness

9    between the challenged statements and the asserted public interest. *Connick*, 461 U.S. 138 at 148-

10   49.

11      Trump University has experienced remarkable reported levels of satisfaction with more than

12   95% of reporting attendees stating that they were completely satisfied with their experiences and

13   almost 100% of attendees stating that they were interested in additional Trump University programs

14   and would recommend Trump University to their friends.  Sexton Decl., ¶ 4.  Although Makaeff

15   asserts that her statements were made for purposes of consumer protection, this "broad and

16   amorphous" assertion could be used as an attempt to justify any defamatory remark made about any

17   entity that sells a product.  Makaeff's defamatory remarks and threats were made entirely in her

18   personal interest with the sole intent to extort funds from Trump University.  Her defamatory

19   remarks did not concern public issues of wide concern; instead, they were based on personal issues

20   and made to criticize Trump University's specific business practices for her own personal gain.  This

21   admitted purpose is clear in her defamatory statements and again in her moving papers.  In short,

22   these statements concerned an entirely private dispute between a buyer and a seller of services.

23      Finally, Makaeff argues that this issue affects "thousands," but Makaeff offered no evidence

24   that it affected anyone except the parties to this lawsuit.  The mere fact that Makaeff filed this case

25   as a purported nationwide class action does not establish the number of potentially affected parties

26   — if ever certified.  It is noteworthy that even after an aggressive nationwide campaign to find and

27   / / /

28   / / /

1  solicit more plaintiffs, Makaeff and her counsel were able to find a grand total of four people who

2  now claim that they are unhappy with Trump University services and arguably are "interested."[3]

3       It is Makaeff's burden on this Motion to prove that this is an issue affecting a large segment

4  of society <u>now</u> — long prior to any potential (and totally problematic) class certification.  She has

5  failed to do so, and section 425.16 (e) simply does not apply.  The Special Motion to Strike must be

6  denied.

7  **IV.      TRUMP UNIVERSITY IS LIKELY TO PREVAIL ON ITS COUNTERCLAIM AND THUS THE SPECIAL MOTION TO STRIKE CANNOT BE GRANTED**

8

9       For the reasons discussed above, plaintiff has failed to meet her burden to prove that her

10  accusations of specific criminal acts by Trump University are free speech.  The Court's analysis

11  should end there.  Even if Makaeff had made a prima facie showing that § 425.16 applies, Trump

12  has already demonstrated that its defamation claim is legally sufficient and supported by a prima

13  facie showing of facts to support a favorable judgment. See *Wilson v. Parker, Covert & Chidester,*

14  28 Cal. 4th 811, 821 (2002). A cause of action is subject to being stricken under the anti-SLAPP

15  statute only if it "arises from protected speech or petitioning *and* lacks even minimal merit."

16  *Navellier*, 29 Cal.4th at 89.  A claimant is not required "to prove the specified claim to the trial

17  court;" rather, the appropriate inquiry is whether the claimant has stated and substantiated a legally

18  sufficient claim.  *Rosenthal v. Great Western Fin. Securities Corp.* 14 Cal.4th 394, 411-412 (1996);

19  *see also, Mattel, Inc. v. Luce, Forward, Hamilton & Scripps,* 99 Cal.App.4th 1179, 1188- 89 (2002)

20  (the motion must be denied if the claimant establishes a prima facie case with evidence, that if

21  believed by the trier of fact, will result in a favorable judgment).

22       The threshold question, which will determine exactly what elements on which Trump

23  University must prevail, is whether Trump University is a public figure or a limited public figure.

24  Because Trump University is not a public figure, it need only prove that it has a prima facie case that

25

26  [3]       Even that number is exaggerated.  One of the four new plaintiffs never attended a Trump

27  University, LLC program.  Another one of the new plaintiffs apparently is not actually dissatisfied either because he <u>continues</u> to attend Trump University programs even after joining the underlying

28  suit as a plaintiff!  Sexton Decl., ¶ 23-24.

Makaeff made false statements of fact, the statements were not privileged, and the false statements had a natural tendency to cause injury.  Trump University has ample evidence to support each of these elements.

In the unlikely event this Court determines that Trump University is a limited public figure, Trump University can also show that Makaeff acted with malice by making statements she knew to be false, or she acted with reckless disregard to their falsity, or both.  Trump University can also show, even at this early stage of the litigation, actual damages as a result of Makaeff's defamatory statements.

Thus, under either of these scenarios, Makaeff's Special Motion to Strike cannot stand.

## A.   Trump University Is Neither A Public Figure Nor A Limited Purpose Public Figure And Its Advertising Does Not Change That Fact

Trump University is neither a public figure nor a limited public figure.  Public figures are entities which, "by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974).  Trump University is a small, privately held LLC with 39 employees.  Sexton Decl., ¶ 2.  Trump University has never sought the public's attention other than advertising its services for sale.  As a result, Trump University cannot be considered a general purpose public figure.[4]

Trump University is not a limited purpose public figure either.  A limited public figure is one who injects himself into a particular public controversy.  *Gertz*, 418 U.S. at 351.  In determining if a business is a limited purpose public figure the Fourth District Court of Appeal provided the necessary factors to consider: (1) if the company is publicly traded; (2) the number of investors and (3) whether the company has promoted or injected itself into the controversy by means of numerous press releases.  *AMPEX Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576 (2005).  In this case, none of

---

[4]      Plaintiff's use of Donald Trump as a celebrity advertiser for Trump University, a legally separate entity, is simply an attempt to disguise this fatal flaw in Makaeff's Motion.  Trump University is not Donald Trump, but a limited liability company duly incorporated under the laws of the State of New York.  As a legally separate entity, Trump University's status is not dictated by the status of a shareholder or a celebrity advertiser.

1   the *AMPEX* factors are met.  Trump University is not a publicly traded corporation.  There are only

2   two investors in the company.  Trump University has not issued press releases nor held press

3   conferences about this controversy or otherwise injected itself into the "controversy."  Under the

4   *AMPEX* holding, Trump University is not a limited public figure.

5          Despite Makaeff's claim to the contrary, a company is not converted into a limited public

6   figure merely because it aggressively advertises its goods or services.  *Vegod Corp. v. American*

7   *Broadcasting Companies, Inc.,* 25 Cal.3d 763, 769 (1979).  As the Fifth Circuit recognized, such a

8   rule would convert almost all businesses, big or small, into a limited purpose public figures any time

9   the business decided to advertise a sale.  *Golden Bear Distributing Systems of Texas, Inc. v. Chase*

10  *Revel, Inc.*, 708 F.2d 944, 952, abrogated on other grounds in *Hiller v. Manufacturers Product*

11  *Research Group of North America, Inc.*, 59 F.3d 1514 (1995).  Similarly, if Makaeff's position were

12  accepted, virtually every advertising private company would be a "public figure."

13         The California Supreme Court has already considered this issue and held that a business is

14  not a limited public figure merely because it operates as a business, and advertises the goods or

15  services it sells.  In *Vegod*, a business well known to the public conducted "close-out" sales for its

16  stores going out of business.  The Court held that it was not a limited purpose public figure even

17  though it was considered a "landmark store" in San Francisco and the sale was aggressively

18  advertised.  The California Supreme Court noted that although a sale of goods might be of interest to

19  the public, "this is not the test."  *Vegod*, 25 Cal.3d at 769.  Instead, the Court concluded that "a

20  person in the business world advertising his wares does not necessarily become part of an existing

21  public controversy.  It follows those assuming the role of business practice critic do not acquire the

22  First Amendment privilege to denigrate such entrepreneur." *Id.* at 770.

23         Here, Trump University is a small, private limited liability company.  It is not publicly

24  traded.  The only "public" component is that it advertises its products – the Trump University real

25  estate seminars.  Under controlling law, it is not a limited public figure.  Because Trump University

26  is not a public figure, it need satisfy only the standard requirements of proving defamation, and need

27  not meet a heightened standard.

28  / / /

1    Makaeff cannot "push" Trump University into the controversy and then claim that it is a

2  limited public figure.  "Those charged with defamation cannot, by their own conduct, create their

3  own defense by making the claimant a public figure." *Weinberg*, 110 Cal.App.4th at 1133.  Trump

4  University has not thrust itself into this controversy.  Unlike Makaeff and her counsel, Trump

5  University has sought no publicity about this issue.  Trump University has not sought media

6  interviews about this issue.  This "issue" was, in fact, <u>created</u> by Makaeff when she defamed Trump

7  University, and tried to extort a refund for products she had purchased and completely used up

8  beginning almost one year earlier.

9    Makaeff touts the number of agencies which have investigated Trump University as "proof"

10  that Trump University is a public figure or the issue is of public concern.  Of course, Makaeff admits

11  that she was the one who unleashed those agencies on Trump University and <u>caused</u> the multiple

12  investigations.

13    When an entity is involuntarily thrust into the limelight, such as by being sued, it does not

14  become a public figure.  *Time, Inc. v. Firestone*, 424 U.S. 448, 454-55 (1976).  In *Firestone*, the

15  United States Supreme Court held that Mrs. Firestone, wife of a wealthy and well known industrial

16  family, was not a limited purpose public figure when she filed for divorce from her husband.  Even

17  though Mrs. Firestone initiated the lawsuit, the Court noted that Mrs. Firestone was drawn to "resort

18  to the judicial process," which the Court recognized was not a voluntary action.  *Id.*  Like Mrs.

19  Firestone, Trump University has had to resort to the judicial process both to defend Makaeff's suit

20  and to protect its business interests from Makaeff's defamation.  Neither is voluntary in any sense of

21  the word.

22    A business cannot become a limited purpose public figure without <u>voluntarily</u> injecting itself

23  into a controversy.  Trump University has not sought the limelight on this issue.  It has not thrust

24  itself into any controversy; it has merely defended its legal rights by resort to the judicial system.

25  / / /

26  / / /

27  / / /

28  / / /

OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S COUNTERCLAIM

**B.** **Trump University Is Likely To Prevail On Its Claim For Defamation Because Makaeff Made False Statements Of Fact Which Were Not Privileged And Which Have A Natural Tendency To Cause Damages**

Makaeff's defamatory statements are demonstrably false, are not opinions and were not made in furtherance of a judicial proceeding. Further, the very nature of Makaeff's statements prove a natural tendency to cause damages. Thus, Makaeff's Special Motion to Strike must be denied.

**1.** **Makaeff's false statements of "fact" are actionable because they are facts rather than opinions and admissible evidence shows they are demonstrably false**

Generally, statements of fact are actionable. *Global Telemedia Intern., Inc. v. Doe 1,* 132 F.Supp.2d 1261, 1267-68 (C.D. Cal. 2001). A defendant cannot hide behind a claim of "opinion" when the statement in question – however phrased – states a provable (or disprovable) fact. *Rodriguez v. Panayiotou*, 314 F.3d 979, 985 (9th Cir. 2002); *Milkovich v. Lorain Journal Co.*, 487 U. S. 1, 19 (1990). The dispositive question is whether a reasonable fact finder could conclude that the relevant statements imply a provably false factual assertion. *Milkovich*, 497 U.S. at 19.

The United States Supreme Court affirmed this rule in *Milkovich* when it stated, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false statement of fact." *Id.* at 19-20. Thus, "a false assertion of fact [can] be libelous even though couched in terms of opinion." *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal.App.3d 720, 723 (1990).

In this case, Makaeff's colorful language cannot obscure actionable statements. The cases cited by Makaeff deal with unprovable hyperbole; for example, that a computer product worked "too slowly" or that an employee "slaved . . . without a break." *See Global Telemedia Intern., Inc. v. Doe 1,* 132 F.Supp.2d 1261, 1267-68 (C.D. Cal. 2001); *Nygard, Inc. v. Uusi-Kerttula,* 159 Cal.App.4th 1027, 1052-53 (2008).

By contrast, Makaeff made clearly "<u>factual</u>" statements such as:

    a.   Trump University took "personal credit" and "opened credit cards [for their students] without approval";

    b.   Trump University engaged in "grand larceny";

    c.   Trump University engaged in "identity theft";

    d.   Trump University engaged in "illegal predatory high pressure tactics";

OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S COUNTERCLAIM

e.   Trump University "lied when it represented that it provided mentoring and coaching sessions";

f.   Trump University engaged in "neurolinguistic programming" of its students;

g.   Trump University engaged in a "brainwashing scheme;"

h.   Trump University's business practices were criminal; and

i.   Trump University "lied about providing mentoring and coaching."

Each of these is a statement of fact which is demonstrably false, and Makaeff simply calling them "opinions" in her declaration does not make them so.  *Moyer*, 225 Cal.App.3d at 723.  For example, grand larceny and identity theft are specific crimes.  Trump University can prove that it has never been charged with, much less convicted of, any crime.  Sexton Decl., ¶ 19.  Trump University has never opened credit cards for any of its attendees without approval.  Trump University has never attempted to "brainwash" its attendees, or used neurolinguistic programming on its attendees. Trump University has never committed identity theft, or grand larceny, or lied about providing mentoring and coaching sessions.  Sexton Decl., ¶¶ 17-19.

Makaeff's statements, while sometimes couched as opinion, are actionable.  As the Ninth Circuit stated, "if the challenged statements are "reasonably susceptible of an interpretation which implies a provable false assertion of facts, then they might be considered by the jury to determine whether such in interpretation was in fact conveyed.'"  *Manufactured Home Communities v. County of San Diego*, 544 F.3d 959, 963 (9th Cir. 2008).

In *Manufactured Home*, public official San Diego County Supervisor Dianne Jacob allegedly called plaintiff company "a liar," among other things.  The Ninth Circuit recognized that this statement, taken along with other accusations of specific criminal acts involving a sewage spill, were actionable statements of fact, not opinions.  *Id.* at 964.  Similarly, Makaeff's statements (made without even the guise of being a public official) are actionable statements of fact.

In sum, Makaeff's demonstrably false statements of "fact" are quite distinct from the statements of opinion made in cases cited by her.  It is unlikely that any reasonable fact finder would find that the employee in *Nygard* was actually a "slave," or that Global Telemedia's board was a "joke."  *Nygard*, 159 Cal.App.4th at 1052-53; *Global Telemedia*, 132 F.Supp.2d at 1269.  By

1    contrast, Makaeff did not simply complain that Trump University did not provide her "money's

2    worth" or Trump University "failed to deliver quality programs" as promised.  Instead, Makaeff

3    falsely accused Trump University of *specific* acts and *specific* crimes, which the Ninth Circuit has

4    held are actionable and are not protected free speech, as a matter of law.

5    **2.    Makaeff's statements were not protected by the litigation privilege**

6    Makaeff next tries to bootstrap her defamatory statements to her litigation, arguing that her

7    statements were made in anticipation of the underlying lawsuit.  Makaeff argues that her defamatory

8    statements were "pre-litigation demands for return of the money she paid for Trump University's

9    seminars."  Motion at 20:19-20.   However, the litigation privilege of Civil Code section 47(b) does

10   not provide unfettered protection to all statements made at any time by parties to a judicial

11   proceeding.  The litigation privilege applies only to communications (1) made in the judicial or

12   quasi-judicial proceedings; (2) by litigants or others authorized by law; (3) to achieve the objects of

13   the litigation; and, (4) that have some connection or logical relations to the action.  *Silberg v.*

14   *Anderson*, 50 Cal. 3d 205, 212 (1990).  Communications to non-participants in the proceedings are

15   usually not covered by the litigation privilege.  *Rothman v. Jacson*, 49 Cal.App.4th 1134, 1141

16   (1996).  Further, merely because a lawsuit is ultimately filed does not extend "ex post facto"

17   protection to defamatory statements made long before judicial action is undertaken.

18   Makaeff's defamatory statements are not protected by the litigation privilege.  First, her

19   letters and internet postings were published to non-participants in the litigation.  Makaeff's

20   defamatory statements do not encompass the privity of interest required for application of the

21   privilege; the privilege does not apply.  See, *Financial Corp. of America v. Wilburn*, 189 Cal.App.3d

22   764, 778 (1987).

23   Second, application of the litigation privilege requires a "connection or logical relation"

24   where the communication must "function as a necessary or useful step in the litigation process and

25   must serve its purposes."  *Rothman,* 49 Cal.App.4th at 1141. Communications which simply serve

26   interests that happen to complement a party's interest in the litigation do not satisfy the test for

27   litigation privilege protection.  *Id.* at 1147.  Here, Makaeff's angry, defamatory statements made in

28   letters to unrelated third-parties and posted on the Internet only served her self-interests of

1   vindication and were not made to serve the purpose of furthering the litigation at issue.  Merely

2   threatening litigation as part of a defamatory statement does not mean that the statement is

3   privileged; "trial by press" is especially disfavored.  *Rothman*, 49 Cal.App.4th at 1149.  Even

4   statements which complement a party's interest in litigation are not privileged.  *Id.*

5       For example, in *Rothman*, the court refused to apply the litigation privilege to defamatory

6   statements made to advance a party's case in the media.  Singer Michael Jackson had been accused

7   of molesting a minor.  In a press conference, Mr. Jackson's representatives defamed the minor's

8   attorney, Mr. Rothman, implying his actions in representing the boy were criminal and constituted

9   extortion.  Rothman sued for defamation.  Jackson demurred on the grounds that the statements were

10  protected by the litigation privilege.  The court declined to apply the privilege, noting that it is not

11  enough that the **content** of the defamatory statement bear some relationship to the contemplated

12  litigation, but that the communicative act be a necessary or useful step in the litigation process.  *Id.*

13  at 1146-48.

14      In this case, Makaeff's own writings show that her defamatory statements were not a

15  necessary or useful step in the litigation process.  Instead, Makaeff essentially threatened "trial by

16  press," stating her intent to "[post] the facts of my highly negative experience on a wide array of

17  interest sites . . . I am contacting the media. . . so that they can expose the scam."  These threats are

18  not reflective of a good faith consideration of litigation; these statements instead show exactly the

19  kind of threat of "trial by press" that was excluded from the litigation privilege by the *Rothman*

20  court.  The defamatory statements may have been, in Makaeff's mind, a useful step in achieving her

21  goal of a monetary windfall from Trump University, but these statements did not further the

22  litigation process.

23      Significantly, most of Makaeff's defamatory statements had absolutely nothing to do with

24  any claims asserted by Makaeff.  For example, nowhere does Makaeff allege in her complaint that

25  Trump University opened and charged <u>her</u> credit card without permission.  Nowhere does Makaeff

26  allege in her complaint that Trump University stole <u>her</u> identity.  Nowhere in her complaint does

27  Makaeff allege that Trump University used brainwashing on <u>her</u>.

28

In addition, Makaeff's declaration confirms that she made the defamatory statements long before she even consulted with counsel and at least seven months before she actually filed suit. There is no credible evidence that Makaeff's defamatory statements were in anticipation of litigation and they certainly were not in furtherance of it or even connected to it.

The principal public policy furthered by the litigation privilege is to ensure free access to courts, to promote truthful testimony, and to devoid unending litigation. *Budwin v. American Psy. Assn.,* 24 Cal. App. 4th 875, 880 (1994). Applying the litigation privilege to defamatory rhetoric published to non-parties in letters and to the general public on the Internet — on issues and purported criminal conduct which did not even affect Makaeff — undermines the legislative intent of the privilege and would allow an unfettered application of the privilege to all forms of defamatory statements. If Makaeff's position were accepted, anyone could pay the standard filing fee, file a complaint, and then claim absolute immunity from liability for a year's worth of "pre-litigation" accusations of criminal conduct not even related to the declarant.

When applying the California litigation privilege to specific situations, courts must keep in mind the general purpose of the litigation privilege, and whether applying the privilege will further the public interest of encouraging truthfulness in testimony. *Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.*, 473 F.Supp.2d 1083, 1087 (S.D. Cal. 2007). Applying the litigation privilege to Makaeff's defamatory conduct would not further any of the purposes of the privilege; rather, it would shield all defamation statements from any sort of repercussion. As such, Makaeff's argument that her defamatory remarks are protected by the litigation privilege must fail. The litigation privilege does not apply.

### 3.     Makaeff's defamatory statements have a natural tendency to cause damages

The accompanying declaration of Trump University's President, Michael Sexton, clearly establishes a decline in revenues and profits caused in part by Makaeff's defamation. Even without such uncontroverted evidence, Trump University is entitled to a presumption of damages. When a written statement is defamatory on its face, it is defamation per se and actionable without proof of special damages. Cal. Civ. Code § 45(a) (2007); *Barnes-Hind, Inc. v. Super. Ct.,* 181 Cal.App.3d 377, 381 (1986). More specifically, "almost any language which, upon its face, has a natural

1   tendency to injure a person's reputation, either generally, or with respect to his occupation" is

2   considered defamation per se. *Bates v. Campbell*, 213 Cal. 438, 441 (1931). False accusations of a

3   crime is considered defamation per se. Cal. Civ. Code § 45(a) (2007); *Weinberg*, 110 Cal. App. 4th

4   1122, 1136. By statute, language that charges any person with a crime is considered defamation per

5   se and does not require a showing of actual damages. *Id.*; *Nguyen-Lam v. Cao*, 171 Cal.App.4th

6   858, 868 (2009). There is "no distinction between the protectable interest in reputation of

7   corporations and individuals." *Vegod*, 25 Cal.3d at 770.

8         Makaeff's long list of Trump University's criminal activities included "grand larceny,"

9   "identity theft," "unauthorized use of credit cards," and "illegal bait and switch tactics." The

10   publication of these defamatory remarks meets the requisite offensiveness and intensity for

11   defamation per se. Trump University is therefore not required to show special or actual damages.

12   The defamatory nature of these statements, on their face, evidences the requisite harm for an

13   actionable claim.

14   **C.   Even If Trump University Is Seen As A Public Figure, Trump University Will Prevail**
     **Because It Can Prove Both That Makaeff Made Her Statements With Malice And**

15   **Trump University Suffered Actual Damages**

16         In the unlikely event that this Court considers Trump University LLC a public figure, Trump

17   University must show actual malice and actual damages. Because Trump University can present

18   evidence to support a prima facie showing of both, it is likely to prevail on this element as well.

19   Trump University therefore meets its burden on the Special Motion to Strike, which must be

20   dismissed.

21         **1.   The evidence shows that Makaeff acted with actual malice**

22         Makaeff's defamatory conduct easily meets the actual malice standard for proving

23   defamation against public figures. Malice is shown when a person publishes a false statement, either

24   (1) knowing the statement was false or (2) with reckless disregard for whether the statement is true

25   or not. *Sipple v. Foundations for Nat. Progress*, 71 Cal.App.4th 226, 247 (1999). In determining

26   whether the speaker acted with reckless disregard, the Court must consider evidence of the speaker's

27   anger or hostility to the target of the defamation, the speaker's investigations into the truth of the

28   matters stated, and any subsequent conduct by the speaker. *Id.* While any of the factors, taken

alone, might not suffice to show malice, they can and should be considered in the totality of circumstances.  Malice can be proven by direct or circumstantial evidence.  *Annette F. v. Sharon S.,* 119 Cal.App.4th 1146, 1167 (2004).

Makaeff's statements constitute serious allegations of criminal activity that lack any merit or factual basis.  Makaeff's self serving declaration that she "reasonably believes" her statement to be true belies the true circumstances when she made the defamatory statements in 2009.

First, the timing of her defamatory statements is particularly instructive and provides direct evidence of her malice.  For ten months, Makaeff praised Trump University <u>in every single writing, evaluation and testimonial</u> she gave.  She scored Trump University a "5 out of 5" in every category.  She stated that Trump University was "amazing" and she <u>would not change a thing</u> except to actually lengthen some of the programs.  Only when she fell into financial crisis, completely unrelated to any actions of Trump University, and only after Trump University refused to refund plaintiff's money (after she had enjoyed all of the benefits of seven programs over a ten-month period) did she completely reverse course and allege criminal conduct against Trump University.

Conspicuously missing from her declaration is any denial that her "precarious financial situation" resulted in her misdirected anger at Trump.  Her defamatory assertions regarding Trump directly correlate with her personal financial circumstances, making it obvious that such serious criminal allegations were not rooted in a good faith belief of their veracity but in her personal financial condition and resulting vendetta.  In short, Makaeff could not have had a subjective belief that her allegations were true.

Second, and as discussed in more detail in Secton IV(B)(2) above, Makaeff published defamatory statements to uninterested third parties that Trump University engaged in criminal activity and behavior that did not actually involve her (i.e., Makaeff does not claim Trump University stole <u>her</u> identity, committed larceny against <u>her</u>, opened <u>her</u> credit cards in <u>her</u> name / / /

without authorization, etc.)  Makaeff was not the victim of any such purported crimes.  Her declaration is completely silent that she did anything which could give her any reasonable belief in the truth of her statements about those crimes.  At best, it appears that she simply repeats statements

1   she read from anonymous sources.  Those statements were completely contradictory to her own

2   experiences, so she knew they could not be true.  At a minimum, Makaeff made the statements with

3   "reckless disregard for whether the statements were true."

>   **2.    The evidence shows that Trump University has incurred actual damages as a
>            result of Makaeff's defamatory statements**

6           Finally, Trump University is likely to prevail on the issue of actual damages.  At this stage of

7   the proceedings, a mere month into the litigation, Trump University cannot yet quantify with

8   precision the amount of actual damages, but it can provide evidence of the <u>fact</u> of actual damages.

9   In addition to the damages Trump University expects to prove at trial involving loss of sales due to

10  Makaeff's defamation, Trump University can now present evidence of other actual damages.  As set

11  forth in the accompanying declaration of Michael Sexton, beginning in the Fall 2009, Trump

12  University has already incurred actual damage in the form of money spent to respond to Makaeff's

13  claims of crimes.  For example, upon Makaeff's defamatory statements to the BBB and others,

14  Trump University was forced to expend time and money to research and respond to Makaeff's

15  accusations of criminal conduct.  Sexton Decl., ¶¶21-22.  The costs associated with these actions are

16  items of actual damages sufficient to carry Trump University's burden on this motion.

17  **D.    In Bringing A Frivolous Motion To Strike, Makaeff Is Responsible For Attorney's Fees**

18          As provided in § 425.16 (c), "[i]f the court finds that a special motion to strike is frivolous or

19  is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's

20  fees to a plaintiff prevailing on the motion.  Cal. Civ. Proc. Code § 425.16(c) (2010); *see also*

21  *Foundation for Taxpayer and Consumer Rights v. Garamendi,* 132 Cal. App. 4th 1375, 1387-88

22  (2005) (where anti-SLAPP motion is found to be frivolous, attorney's fees are mandatory).  A

23  motion to strike under the anti-SLAPP statute is frivolous where any reasonable attorney would

24  agree that the motion would not lie under the circumstances.  *Moore v. Shaw*, 10 Cal. App. 4th 182,

25  199 (2004).  This motion certainly qualifies as frivolous.

>   **V.    CONCLUSION**

27          All speech is not protected.  Makaeff accused Trump University of crimes.  Her statements

28  are defamatory per se.  Makaeff made those statements to private, uninterested third parties, long

before litigation was ever contemplated and in an effort to extort money from Trump University, or as part of her vendetta against Trump University, or both.  Makaeff had no reasonable belief in the veracity of her statements – and frankly, she didn't care.  As she made clear, she was willing to "go to whatever lengths" to get her money!

Accusations of criminal behavior to uninterested third parties is not provided constitutional protection.  Extortionate speech is not protected.  Makaeff's defamatory statements are actionable.

For these reasons, the court should dismiss Makaeff's Motion to Strike and award Trump University its attorneys' fees for having to oppose this frivolous motion.

Dated:      July 19, 2010                    YUNKER & SCHNEIDER


                                             By:      /s/ David K. Schneider
                                                      David K. Schneider
                                                      Attorneys for Defendant
                                                      Trump University, LLC