1  David K. Schneider (CSB 139288)
   YUNKER & SCHNEIDER
2  655 West Broadway, Suite 1400
   San Diego, California 92101
3  Telephone:  (619) 233-5500
   Facsimile:   (619) 233-5535
4  Email:  dks@yslaw.com

5  Attorneys for Defendant TRUMP UNIVERSITY, LLC

6

7

8                    **UNITED STATES DISTRICT COURT**

9            **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10 TARLA MAKAEFF, BRANDON          )   Case No. 10 CV 0940 IEG (WVG)
   KELLER, ED OBERKROM, PATRICIA   )
11 MURPHY and SHERI WINKELMANN     )
   on Behalf of Themselves and All Others )
12 Similarly Situated,             )   MEMORANDUM OF POINTS AND
                                   )   AUTHORITIES IN SUPPORT OF
13              Plaintiffs,        )   DEFENDANT TRUMP UNIVERSITY,
                                   )   LLC'S MOTION TO DISMISS FIRST
                                   )   AMENDED COMPLAINT UNDER
14 v.                              )   RULES 12(b)(6), 9(b), AND 8(a)(2)
                                   )
15 TRUMP UNIVERSITY, LLC, (aka     )
   Trump Entrepreneur Initiative) a New )   DATE:   September 13, 2010
16 York Limited Liability Company, and  )   TIME:   10:30 a.m.
   DOES 1 through 50, inclusive,   )   CTRM:  1
17                                 )   JUDGE: Hon. Irma E. Gonzalez
               Defendants.         )
18 _____)

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...............................................................................................1

II.    THE ORIGIN OF THIS LITIGATION ...........................................................2

    A.     The Original Plaintiff and Complaint ....................................................2

    B.     The New Plaintiffs and the First Amended Complaint..........................2

III.   THE BASIC LEGAL FAILINGS OF THE CASE ...........................................3

IV.    BACKGROUND FACTS ...................................................................................4

    A.     Trump University ...................................................................................4

    B.     Plaintiff Tarla Makaeff ..........................................................................5

    C.     Plaintiff Brandon Keller.........................................................................5

    D.     Plaintiff Ed Oberkrom............................................................................6

    E.     Plaintiff Patricia Murphy .......................................................................6

    F.     Plaintiff Sheri Winkelmann ...................................................................6

V.     ALLEGATIONS OF THE FIRST AMENDED COMPLAINT........................7

    A.     The "Basic Nature of the Action".........................................................7

    B.     "Defendant's Unlawful Conduct".........................................................7

    C.     "Plaintiffs' Facts"..................................................................................9

    D.     "Class Allegations"................................................................................9

    E.     The Actual Contract .............................................................................10

VI.    STANDARDS FOR ADJUDICATION ...........................................................12

    A.     Rule 12(b)(6)........................................................................................12

    B.     Rule 9(b) ..............................................................................................13

    C.     Rule 8(a)(2) ..........................................................................................13

VII.   DISCUSSION ...................................................................................................14

    A.     The Basic Claim of This Case Is "Educational Malpractice," Which Is Barred in California ...............................................................................14

        1.     California Law ............................................................................14

        2.     Other States Are In Accord........................................................15

i                          Case No. 10 CV 0940 IEG (WVG)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

B.    The Contract-Related Claims Do Not Avoid the "Educational Malpractice" Bar Because Plaintiffs Concede the Contractual Goods and Services Were Provided ............................................................................16

    1.    The Key Defect of the Contract-Related Claims ......................................16

    2.    The Contract-Related Claims ....................................................................17

C.    The Fraud-Related Claims Do Not Avoid the "Educational Malpractice" Bar Because No Reasonable Reliance Can Be Established ....................................18

    1.    The Key Defect of the Fraud-Related Claims............................................18

    2.    The Fraud-Related Claims .........................................................................19

D.    The Remaining Statutory Claims Do Not Avoid the "Educational Malpractice" Bar Because None of the Statutory Standards Are Met ..................20

    1.    The Key Defect of the Statutory Claims ...................................................20

    2.    The Statutory Claims ................................................................................20

E.    All Claims Must Be Dismissed Under Rule 12(b)(6) ...........................................22

F.    All Fraud-Related Claims Also Must Be Dismissed Under Rule 9(b) .................23

G.    The Purported Class Claims Must Be Dismissed Under Rule 8(a)(2), and the Purported Nationwide Statutory Class Claims Must Also Be Dismissed Under California Law ............................................................................................23

    1.    Rule 8(a)(2) and the Class Claims ...........................................................23

    2.    California Law and the Nationwide Statutory Claims...............................24

VIII.    CONCLUSION...............................................................................................................25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anuziato v. eMachines, Inc.*,
    402 F.Supp.2d 1133 (C.D. Calif. 2005)................................................................21

*Ashcroft v. Iqbal*,
    ___US___; 129 S.Ct. 1937 (2009)................................................................14

*B.L.M. v. Subo & Deitsch*,
    55 Cal.App.4th 823 (1997) ................................................................18

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) ................................................................12

*Baymiller v. Guarantee Mutual Life Company*,
    2000 WL 33774562 (CD Calif., 2000) ................................................................19

*Bell Atlantic Corp. v. Twombly*,
    550 US 544 (2007)................................................................14

*Bookout v. Nielsen*
    (2007) 155 Cal.App.4th 1131 ................................................................22

*Cohen v. DIRECTV*,
    178 Cal.App.4th 966 (2009) ................................................................25

*Continental Airlines, Inc. v. McDonnell Douglass Corp.*,
    216 Cal.App.3d 388 (1989) ................................................................19

*County of Riverside v. Loma Linda Univ.*,
    118 Cal.App.3d 300 (1981) ................................................................15

*Desaigoudar v. Meyercord*,
    223 F.3d 1020 (9th Cir. 2000) ................................................................13

*Epstein v. Washington Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ................................................................13

*Gilligan v. Jamco Development Corp.*
    108 F.3d 246 (9th Cir. 1997) ................................................................13

*Guz. v. Bechtel National, Inc.*,
    24 Cal.4th 317 (2000) ................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

1

**TABLE OF AUTHORITIES (cont.)**

2

<u>Page</u>

3

*In re GlenFed, Inc. Securities Litigation,*
    42 F.3d 1541 (9th Cir. 1994) ........................................................................13

4

*In re Stac Electronics Securities Litigation,*
    89 F.3d 1399 (9th Cir. 1996) ........................................................................10

5

6

*Kashmiri v. Regent of the Univ. of California,*
    156 Cal.App. 4th 809 (2007) ........................................................................14

7

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ................................................................13, 20

8

9

*Lozano v. AT&T Wireless Svcs., Inc.,*
    504 F.3d 718 (9th Cir. 2007) ........................................................................20

10

*McBride v. Boughton,*
    123 Cal.App.4th 379 (2004) ........................................................................18

11

12

*McKell v. Washington Mutual, Inc.,*
    142 Cal.App. 4th 1457 (2006) ......................................................................21

13

*Moore v. Brewster,*
    96 F.3d 1240 (9th Cir. 1996) ........................................................................13

14

15

*Moore v. Kayport Package Express, Inc.,*
    885 F.2d 531 (9th Cir. 1989) ........................................................................13

16

17

*Nordberg v. TrILEGIANT Corp.,*
    445 F.Supp.2d 1082 (N.D.Calif. 2006)........................................................25

18

*Norwest Mortgage, Inc. v. Superior Court,*
    72 Cal.App.4th 214 (1999) ....................................................................24, 25

19

20

*OCM Principal Opportunities Fund v. CIBC World markets Corp.,*
    157 Cal.App.4th 835 (2007) ........................................................................18

21

22

*Oestreicher v. Alienware Corp.,*
    544 F.Supp.2d 964 (N.D. Calif. 2008)........................................................21

23

*Parks Sch. Of Business v. Symington,*
    51 F.3d 1480 (9th Cir. 1995) ........................................................................12

24

25

*People v. Casa Blanca Convalescent Homes, Inc.,*
    159 Cal.App.3d 509 (1984) ..........................................................................20

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

**TABLE OF AUTHORITIES (cont.)**

<u>Page</u>

*Peter W. v. San Francisco USD,*
    60 Cal.App.3d 814 (1976) ........................................................................14, 15

*Ross v. Creighton Univ.,*
    957 F.2d 410 (7th Cir. 1992) .............................................................15, 16, 17

*Smith v. Alameda County Social Serv. Agency,*
    90 Cal.App.3d 929 (1979) ............................................................................15

*South Bay Chevrolet v. General Motors Acceptance Corp.,*
    72 Cal.App.4th 861 (1999) ...........................................................................20

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.,*
    405 F. Supp.2d 1141 (C.D. Calif. 2005)......................................................25

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) .......................................................................10

*United States ex rel. Costner v. United States,*
    317 F.3d 883 (8th Cir. 2003) .......................................................................23

*Utility Consumers' Action Network (UCAN) v. Sprint Solutions, Inc.,*
    259 F.R.D. 484 (S.D. Calif. 2009)...............................................................25

*Vess v. Ciba-Geigi Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .....................................................................13

*Webb v. Smart Document Solutions, LLC,*
    499 F.3d 1120 (9th Cir. 2009) .....................................................................20

*Zumbrun v. Univ. of So. California,*
    25 Cal.App.3d. 1 (1972) ...............................................................................16

**Statutes**

28 USCA section 1332.....................................................................................24
California Business & Professions Code section 17200 *et seq.* ....................20
California Business & Professions Code section 17500 *et seq.* ....................22
California Civil Code section 1750, *et seq.* ...................................................21
California Civil Code section 1770(a) .............................................................21
California Code of Civil Procedure section 1856 ...........................................19
California Welfare & Institutions Code section 15610.27...............................22
Federal Rule of Civil Procedure 12(b)(6) .............................12, 18, 24, 25
Federal Rule of Civil Procedure 8(a)(2) ...............................................13, 14, 24
Federal Rule of Civil Procedure 9(b)...............................................................23, 24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

# I.    __INTRODUCTION__

On May 26, 2010, Defendant filed a Motion to Dismiss detailing the legal deficiencies in Plaintiff Tarla Makaeff's Complaint.  In response, Ms. Makaeff filed the First Amended Complaint ("FAC") — not to address those deficiencies, but instead to spew more venom, be more sarcastic, and allege more irrelevant and implausible "facts."

After an entire month of self-promotion, a nationwide campaign, and an aggressive solicitation for more clients, plaintiffs' counsel has managed to find only four new plaintiffs to join Ms. Makaeff.  There are a grand total of five — out of the thousands who have attended Trump University programs, seminars, and workshops — who <u>now</u> claim they are unhappy with their experiences with Trump University.

Even this small collection of plaintiffs clearly reveals why this case cannot be a "nationwide class action."  Each of these plaintiffs attended entirely different types, levels and numbers of seminars, in different cities, over different periods of time, with different monetary and personal commitments, abilities and goals.  They each had entirely different backgrounds, markets, resources and experiences.  At least one actually invested in real estate based on the information and education provided in the programs.   Some of these plaintiffs fully participated in all of Trump University programs while others quit early and requested and received refunds.  Despite claiming that Trump University provides nothing but "empty promises," one of the Plaintiffs <u>continues</u> to attend Trump University programs, even after joining this lawsuit!  Further, these Plaintiffs purport to sue under various tort statutes from different states.  Some of the statutes have residency or age requirements, which Plaintiffs do not satisfy.  The end result is that this diverse collection of plaintiffs and claims are unrelated and unique, each with their own problematic liability issues and purported damages.

Moreover, the FAC does not address, let alone solve, the basic and fundamental problem with plaintiffs' entire case.  Plaintiffs have attempted to bring "educational malpractice" claims against Defendant Trump University, LLC, that California law simply does not permit.  To make matters worse, "lead" Plaintiff Tarla Makaeff has engaged in an ongoing campaign of virulent defamation against Defendant.  This entire case is unfounded as a matter of law, exaggerated and completely unworkable as a class action.

## II.   THE ORIGIN OF THIS LITIGATION

### A.   The Original Plaintiff and Complaint

Plaintiff Tarla Makaeff attended and benefitted from a series of seminars and mentoring sessions in California offered by Trump University over the course of ten months.  After she completed this training, Ms. Makaeff found herself in desperate financial straits, based on circumstances completely unrelated to either Defendant or the training she received.  With no other place to turn, Ms. Makaeff then proceeded to demand a full refund of the amount she paid for Defendant's training.  Because she had already received the benefit of her bargain, Defendant justifiably refused to refund Ms. Makaeff her money, but as a showing of good faith, offered to provide her, at no charge, with valuable additional services, which she accepted.

After accepting and receiving these additional services, Ms. Makaeff then stated in writing that she was "willing to go to whatever lengths to get my money back."  True to her word, and despite having attested to the quality of the program, she proceeded to defame Trump University and those associated with it.  No stranger to publicity, Ms. Makaeff then agreed to act as the named Plaintiff in this baseless "nationwide class action" lawsuit.  Ms. Makaeff also "went viral" with her false statements, posting them on websites, went to the press and, to the fullest extent possible, publicized her case and suit.  Her attorneys did the same — posting it on their website and actually soliciting information and clients — hoping to find others to join Ms. Makaeff.

### B.   The New Plaintiffs and the First Amended Complaint

Despite their nationwide campaign, and their pool of thousands of attendees of Trump University as potential clients, plaintiffs' counsel ended up with only four more named plaintiffs and putative class representatives.  Their only "common" factor is that they are all totally different from Ms. Makaeff and each other.

For example, Ms. Makaeff's purported claims arose in California.  So did plaintiff Brandon Keller's.  However, Mr. Keller did not actually attend the Gold Elite Program and received a $35,000 refund.  Ms. Makaeff attended all of the Programs so she did not receive a refund.  Ms. Makaeff actually invested in real estate and Mr. Keller never did.  Neither ever attended the same classes or shared the same mentors.

As for the three remaining plaintiffs, Ed Oberkrom's purported claims arose in Missouri, Patricia Murphy alleges that hers arose in New York, and Sheri Winkelmann's arose in Illinois. Mr. Oberkrom and Ms. Murphy did not get refunds; Ms. Winkelmann did. All three invested in different levels of training at Trump University. None invested in real estate. All had different resources. Finally, alone among the plaintiffs, Ms. Murphy has <u>no present record</u> of ever attending a Trump University, LLC seminar or ever paying the company anything. In short, Ms. Makaeff and the four new plaintiffs could not be more different. Nevertheless, the FAC makes no attempt to reconcile these disparities

### III.   THE BASIC LEGAL FAILINGS OF THE CASE

Plaintiffs' lawsuit is fatally flawed because the essence of each of the claims in this action is nothing more than "educational malpractice," which has been barred by California law since 1976. Plaintiffs disingenuously attempt to get around this bar by repackaging these educational malpractice claims as "contract," "fraud," or "consumer protection" statutory causes of action.

However, Plaintiffs' contract claims fail because Plaintiffs received all the goods and services they contracted for, thus leaving only non-actionable subjective complaints about the quality of the program.

The "fraud" claims fail because Plaintiffs signed extensive disclaimers confirming that the program "has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy." Consequently, Plaintiffs cannot demonstrate reasonable reliance. Moreover, the allegations of fraud are vague, and inadequate, even though the law requires great specificity.

The "consumer protection" statutory claims also fail because none of them meet their statutory requirements. Additionally, Plaintiffs' cause of action for "Elder Abuse" under a California statute fails because neither of the two California plaintiffs is (or alleges to be) 65 or older and the statute is inapplicable to non-residents. Further, there are no allegations supporting such a claim, even if Plaintiffs were elders intended to be protected. Finally, the California consumer protection statutes cannot be enforced outside of California in any event.

/ / /

In addition, the case does not present a plausible claim as a putative class action because it lacks the necessary element of commonality.  Plaintiffs and their fellow participants in Defendant's programs attended different seminars, in different cities, taught by different instructors, at different cost levels and time commitments, and had different mentors over different periods of time.  They also started with different abilities, skills, education, resources, financial backing, and experience before their enrollment.  Then, they ended up with different goals, opportunities, local markets, successes, failures, rates of return, and levels of satisfaction after their enrollment.  This completely diverse collection of unique individuals with different experiences cannot possibly comprise a viable California class based on the boilerplate allegations of commonality in the First Amended Complaint, much less a nationwide class.

Because of these glaring deficiencies, the Court should dismiss with prejudice every claim contained in the complaint under Rules 12(b)(6), 9(b), and 8(a)(2).  Indeed, even if Plaintiffs could salvage individual claims by extensive amendment, they could not pursue them before this Court because they would not even meet the jurisdictional minimum for this diversity case.

## IV.   BACKGROUND FACTS

By law, the Court must rely almost exclusively on the allegations of the First Amended Complaint to decide this motion.  Unfortunately, those allegations ignore many of the true background facts which put the case in a very different light.  Trump University here offers the Court a very brief synopsis of a few of those true facts, but not as an argument supporting the motion.  Rather, they are simply provided to show that there are two very different sides to this story.

**A.   Trump University**

Trump University began offering its courses to the public in 2005.  Trump University believes it offers a unique and practical program of seminars, materials, hands-on mentoring, and differing levels of training in real estate investment.  The faculty includes successful real estate entrepreneurs, and scholars from leading colleges and universities including Columbia, Northwestern, and Dartmouth.

/ / /

4

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

1    The First Amended Complaint pretends that all attendees are brainwashed into throwing their

2    money at Trump University.  Unfortunately, this is far from the truth.  In fact, the vast majority of

3    people so far have attended only the initial introductory seminar, which is <u>free</u>.  Of those, less than

4    9% have paid for <u>any</u> more training.  The overwhelming majority of those attend one three-day

5    seminar costing about $1,500.  Only about 1-2% have ever gone on to additional training at greater

6    expense.

7         One last important point about the other attendees is not found in the First Amended

8    Complaint.  Plaintiffs list a grand total of 16 mostly anonymous (but presumably real and

9    presumably different) people who have railed against the program on the Internet.  Plaintiffs do not

10   point out that these unknown people, even assuming they actually exist and attended any training,

11   comprise far less than 1% of all attendees.  They also do not point out that over 95% of all attendees

12   who responded to written surveys rated the program's seminars as "excellent" in quality, relevance,

13   and usefulness.  Furthermore, over 99% who responded in written surveys stated that they would

14   attend another Trump University program and would recommend that others do so as well.

15        Finally, <u>four of the five plaintiffs</u> also joined with the overwhelming majority of Trump

16   University attendees in praising their training effusively and in writing.  The fifth plaintiff,

17   Ms. Murphy, has no record of attending any Trump University, LLC program.

18   **B.    Plaintiff Tarla Makaeff**

19        Plaintiff Makaeff is a California resident.  She participated in and received all of the benefits

20   of the $1,495 3-Day Training Program and the Trump Gold Elite Program.  Ms. Makaeff curiously

21   fails to mention that she rated the seminars and mentoring in writing as "excellent," "amazing," and

22   "nothing could be improved" except lengthening some of them.  She made exactly one actual

23   investment and rated her mentor as "excellent" in a lengthy videotape praising Trump University.

24   After Ms. Makaeff fully participated in and received all that she paid for, she requested a refund.

25   Instead, Trump University offered additional programs and information, which she accepted.

26   **C.    Plaintiff Brandon Keller**

27        Plaintiff Keller is a California resident.  He participated in and received all of the benefits of

28   the $1,495 3-Day Training Program.  He, too, was completely satisfied with the program.  His

1    evaluation scored the seminar as "Excellent" in every category.  Plaintiff Keller stated that it was

2    "the best real estate training I have gone to," and "all information was outstanding."  Plaintiff Keller

3    then enrolled in the Gold Program.  When Trump University learned that he had done so without his

4    parents' consent, Trump University voluntarily and completely refunded Plaintiff Keller's Gold

5    Program payment.  Four months later, Plaintiff Keller attended not one, but two more Trump

6    University programs.  Plaintiff Keller rated those programs as "excellent" in all eight categories as

7    well.  Plaintiff Keller also stated that he would attend additional Trump University programs, and he

8    would recommend them to his friends.  Indeed, _after_ joining this lawsuit, Plaintiff Keller attended

9    yet another Trump University program! Declaration of Michael Sexton ("Sexton Decl."), ¶8.

10   Nowhere does Plaintiff Keller allege that he did not receive exactly the program he paid for.

11   **D.    Plaintiff Ed Oberkrom**

12         Plaintiff Oberkrom is a Missouri resident and attended the initial workshop with his partner,

13   Michael Bahr.  After the workshop, Mr. Bahr filled out the evaluation giving glowing remarks.  He,

14   too, rated the program as "excellent" in all eight categories.  He stated that he would attend another

15   Trump University seminar, and he would recommend it to a friend.  In fact, Bahr then participated in

16   the Gold Elite Program and was completely satisfied with it as well.

17   **E.    Plaintiff Patricia Murphy**

18         Trump University has no record that Plaintiff Murphy ever paid Trump University, LLC for

19   any program or ever attended any Trump University, LLC program.  At a minimum, Plaintiff

20   Murphy is required to allege sufficient facts for Trump University to determine if Plaintiff Murphy

21   actually even contracted with Trump University, including the date and location she purportedly

22   contracted with Trump University and date(s) and location(s) she purportedly attended Trump

23   University programs.  Sexton Decl., ¶7.

24   **F.    Plaintiff Sheri Winkelmann**

25         Plaintiff Winkelmann is an Illinois resident and boasts that she is "an award winning actress

26   and entertainer."[1]  She attended and received the benefits of the 3-Day Training Program in February

27   _____

28   [1]    A quick Google search reveals that she is not exactly Meryl Streep.  Sheri Winkelmann is a
self-promoting Marilyn Monroe impersonator.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

2010.  She, too, then rated her experience as "excellent" in all eight categories.  She also stated that she would (and intended to) attend another Trump University seminar.  Contrary to Plaintiff Winkelmann's implication that Trump University somehow charged her credit cards without her knowledge, the true facts are as follows:  Plaintiff paid for the entire Gold Program with a check, signed by her, for $34,995.  Two days later, Plaintiff Winkelmann called to request that Trump University "void" her check and instead charge the amount on one Discover and four Visa credit cards, which Trump University did.  Almost one month later, and well past the three-day cancellation deadline, Plaintiff Winkelmann apparently changed her mind, quit the program, and demanded a refund.  Plaintiff Winkelmann concedes that she received her money back.

## V.   ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

### A.   The "Basic Nature of the Action"

The basic gist of the FAC is found in Paragraphs 3-17 under "Nature of the Action."  Plaintiffs allege that Trump University promises a "complete real estate education" with "mentorships" supported by a "power team."  Instead, the attendees got "infomercials" pushing for paid attendance at "additional seminars or workshops."  The "mentorships" allegedly turned out to consist of "no practical insights and no mentoring."  In short, "all Trump University provides is empty promises," and "[p]laintiffs and the class members did not receive what they bargained for."

The one set of "Basic Nature" facts materially changed in the FAC can be found in Paragraph 12.  Plaintiffs now allege that Trump University "targeted seniors" by using such "tactics" as asking all attendees if:  (1) they knew "they will need $250,000 in savings to generate $1,000 monthly income during retirement"; stating to attendees that (2) "if you're expecting to maintain your lifestyle during retirement based on an annual income of $70,000, you need to have $1.75 million in liquid assets"; and stating that (3) the "average savings of a 50-year old American is only $2,500. . . ."  With even the most nefarious light shone on these statements, these are not "scare tactics," are not inaccurate, do not constitute elder abuse, and are not actionable as a matter of law.

### B.   "Defendant's Unlawful Conduct"

Paragraphs 29-55 provide a colorful parody of Trump University seminars and sales pitches, copies of pages from the program website, and a host of complaints about the program supposedly

gathered from unknown sources across the Internet and the media allegedly who attended different courses in different cities and different times.  However, few of these allegations have any relevance to all Plaintiffs or to any of them:

(i) Paragraphs 30-37 concern the "Free Introductory Course," but there is no allegation that, for example Plaintiff Makaeff ever attended it (she didn't), and hence Plaintiff Makaeff implicitly concedes she never relied on or even heard any of the alleged representations supposedly made there.  In short, they are irrelevant as to her.

(ii) Paragraphs 38-46 concern the "1-year Apprenticeship," but most of them recite alleged bad acts that are simply never mentioned or alleged in any cause of action or claim for relief by Plaintiffs.  They include allegedly inducing attendees to increase their credit card limits and hence their fees and interest paid, harming their credit histories, teaching them to post signs allegedly illegal in some jurisdictions, and subjecting them to conflicts of interest.  All these supposed bad acts are irrelevant because none are tied to any cause of action.  The only relevant allegations to Plaintiffs' claims are that the promised mentorship "does not provide the details, support or training the students need," and that there are no refunds.  However, the "no refund" allegations are demonstrably false by Plaintiffs' own admission in Paragraphs 23 and 26:  Mr. Keller admits that he received a refund, and Ms. Winkelmann admits that she received her money back.

(iii) Paragraphs 47-55 concern allegations about the "Trump Gold Program" costing $35,000, which allegedly came with promises of "guaranteed success," the training to create a business earning "up to tens of thousands of dollars of monthly income" or more, and the same "priceless" mentorship and "power team" that proved to be short-lived and useless.  Unusually, these allegations are relevant to the one Plaintiff who actually attended this program (Ms. Makaeff only), but they remain irrelevant to the other Plaintiffs.  Nonetheless, they are not actionable as discussed in sections C(1) and C(2) below.

(iv) Paragraphs 54-55 concern totally irrelevant allegations about a poor rating by the Better Business Bureau, a New York Department of Education demand that the term "University" not be used, and 16 mostly anonymous complaints on the Internet.  None of these allegations are further alleged to have affected Plaintiffs, or even to have been known to Plaintiffs at any material time.

**C.    "Plaintiffs' Facts"**

Next are "Plaintiffs' Facts" in Paragraphs 56-88.  Plaintiff Makaeff never attended the initial free seminar, and she never alleges that she was solicited to attend the $1,500 seminar either.  In fact, she never alleges that she looked at the Trump University website, nor that she relied on or even saw any advertising by the company.  Instead, she claims that she did not get the personal instruction and contact she expected, that she was 'guaranteed" a profit of $35,000 on her first real estate transaction, and that the only two "deals" she was introduced to were somehow illegal, unprofitable, involved conflicts of interest, or all three.  She also makes the irrelevant allegation that she received a telephone call for putting out "illegal" signs.

Plaintiff Oberkrom alleges that he was told by one of the instructors that he would visit St. Louis "frequently" but "hasn't been back to town."  He concedes that he received the one-on-one mentoring but it "was completely unproductive."

Similarly, Plaintiff Murphy alleges that Trump University provided the agreed seminar, but in her opinion, Plaintiff Murphy felt the information was "not especially valuable advice."

Plaintiff Keller attended the three-day program and concedes that he received exactly what he paid for.  He then decided to pay for the Gold Program.  Before the Gold Program began, Keller alleges that he changed his mind and received a full refund.

Plaintiff Wilkelmann also paid for and received the three-day workshop.  She was completely satisfied, said so in writing and then decided to participate in the Gold Program as well.  Approximately one month later, she apparently changed her mind and admits that she received her money back.

**D.    "Class Allegations"**

Next are the "Class Allegations" in Paragraphs 89-93.  These are pure boilerplate with no supporting factual allegations of commonality beyond the 16 mostly anonymous Internet postings in Paragraph 55.  Instead, Plaintiffs simply allege without any other factual support that their "experiences with Trump University are typical of the class and the many hundreds (if not thousands) of other Trump University students who have registered their complaints online and with defendants."  There are no other factual allegations whatsoever to overcome or even address the

1    many differing personal, geographical, financial, timing, attendance, instructors, and other factors

2    among the attendees throughout the United States – over 91%  of whom <u>paid nothing</u> or the fact that

3    over 95% of the attendees who responded to the written surveys rated thm as excellent, including

4    plaintiffs.

5    **E.    <u>The Actual Contract</u>**

6           Finally, we turn to the actual written contract between Plaintiffs and Trump University.  Not

7    surprisingly, it gets no mention at all in Plaintiff's 32 pages and 86 paragraphs of factual allegations.

8    Instead, the only specific mention of it is buried in Paragraph 116 of the Breach of Contract cause of

9    action.  There, Plaintiffs represent that they has attached a "true and correct copy" of the contract as

10   Exhibit A to the First Amended Complaint – a one-sided document.  However, the truth is that the

11   contract consists of a two-sided document, and a "Terms and Conditions" page, both provided to

12   Plaintiffs and signed by them before they attended any Trump University program.  Sexton Decl.,

13   ¶ 2.  Both are attached hereto as Exhibit 1 (signed by Plaintiff Makaeff).  Identical contracts signed

14   by Plaintiffs Keller, Oberkrom and Winkelmann are attached as Exhibits 2-4.  Plaintiff Murphy

15   evidently never signed a contract because there is no record of her ever attending a Trump

16   University, LLC program.

17          The Court may consider and rely on the correct, attached version of the complete contract.  *In*

18   *re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (court may consider

19   the full text of a document that the First Amended Complaint quotes only in part).  The Ninth Circuit

20   has also established that a plaintiff may not attempt to survive a Rule 12(b)(6) motion by deliberately

21   omitting documents upon which claims are based.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th

22   Cir. 2007) ("a court may consider a writing referenced in a complaint but not explicitly incorporated

23   therein if the complaint relies on the document and its authenticity is unquestioned").

24          Consideration of the complete and correct contract is crucial for a number of reasons.  First,

25   the exact goods and services that Plaintiffs were to get from Trump University in return for her

26   payment are listed under "Purchase(s)" next to her selected program.  For Plaintiff Makaeff, for

27   example, there are seven items listed for "Trump Gold Elite."  While the First Amended Complaint

28   alleges that those items, in Plaintiff Makaeff's opinion, were not as useful as represented, <u>Plaintiff</u>

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

Makaeff either explicitly concedes or does not deny in the First Amended Complaint that she actually received each one.  The other Plaintiffs are identically situated.

Second, the front page of the contract submitted by Plaintiffs contains a strong disclaimer that is not mentioned in the First Amended Complaint, but that bears directly on Plaintiffs' reasonable reliance:

> "This program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump U, their affiliates or their officers, principals, representatives, agents or employees (collectively "Principals").  I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice.  If such professional advice or other exert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances.  I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts or omissions, the appropriateness of my business decisions, or my use of or reliance on Program information."

Third, the "Terms and Conditions" portion of the contract also not submitted by Plaintiffs contains an even stronger disclaimer that also bears directly on Plaintiffs' reasonable reliance:

> "Trump U programs are provided for training and educational purposes only.
>
> TU does not procure or identify specific real estate deals.  You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment.  We do not recommend or guarantee any investment or property.
>
> You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy.  Further, you agree that TU is not endorsing your project and you shall not represent same to any third-party.  Further, TU is not rendering legal or financial advice.
>
> If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as real estate Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers."

Directly above Plaintiff Makaeff's signature on the front page of the contract is the following representation by her:

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

> "By signing below, I ('Participant') acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form."

Plaintiff Makaeff similarly signed and dated the "Terms and Conditions" portion of the contract, as did all the other Plaintiffs except non-attendee Ms. Murphy.[2]  Sexton Decl., ¶¶3-6.

Finally, the contract includes an absolute right to cancel within three days of the program. The Notice of Cancellation states in pertinent part:

> "You may cancel this transaction without any penalty or obligation within three business days from the above date.
>
> If you cancel, any property traded in, any payments made by you under the contract of sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the merchant of your cancellation notice, and any security interest arising out of the transaction will be cancelled."

At no time did Plaintiff Makaeff, or any of the Plaintiffs, ever attempt to cancel their contract during the provided three-day period.  In fact, Plaintiff Makaeff, for example, waited 10 months before she demanded a refund, and only then after she had:  (1) received and fully participated in every Trump University program provided by her contract; and (2) rated the programs she attended as "excellent." Plaintiff Winkelmann, for example, waited one month before demanding a refund.  Despite their failure to timely cancel, Trump University still refunded Plaintiff Keller's amount, and Plaintiff Winkelmann received all of her Gold Program money back as well.

## VI.   STANDARDS FOR ADJUDICATION

**A.   Rule 12(b)(6)**

A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  See *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under FRCP 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Hence, the issue on a motion to dismiss for failure

---

[2]     Trump University has not yet located the Terms and Conditions sheet signed by Ms. Winkelmann.

1   to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled

2   to offer evidence to support the claims asserted.  *Gilligan v. Jamco Development Corp.*, 108 F.3d

3   246, 249 (9th Cir. 1997).   "[C]onclusory allegations of law and unwarranted inferences are

4   insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Washington Energy*

5   *Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

6   **B.**   **Rule 9(b)**

7        FRCP 9(b) specifically provides that "[i]n alleging fraud or mistake, a party must state with

8   particularity the circumstances constituting fraud or mistake."  Although the substantive elements of

9   fraud are determined by state law, the federal courts nonetheless require that those elements must be

10   pled with particularity under the Rule.  *Moore v. Brewster*, 96 F.3d 1240, 1245-46 (9th Cir. 1996);

11   see also *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000) (fraud must be pled

12   "with a high degree of meticulousness").  It must be noted that the particularity requirement applies

13   to <u>all</u> allegations of fraud, even if the alleged conduct is intended to bring the claims under state

14   consumer protection statutes rather than an actual claim of common law fraud.  *Kearns v. Ford*

15   *Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009).

16        The courts apply this requirement of particularity by ensuring that allegations of fraud

17   specify the alleged fraudulent representations, confirm they were false when made, identify by

18   whom they were communicated, state when and where they were made, and state the manner in

19   which they were false or misleading.  *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547

20   n. 7 (9th Cir. 1994).  The obvious corollary is that allegations that are vague or conclusory are not

21   sufficient to satisfy the particularity requirement.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d

22   531, 540 (9th Cir. 1989).  Allegations of fraud that fail to meet the Rule 9(b) standard must be

23   disregarded, and hence the Court may only consider the remaining allegations to determine if a valid

24   claim has been stated.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

25   **C.**   **Rule 8(a)(2)**

26        FRCP Rule 8(a)(2) requires that a pleading must contain "a short and plain statement of the

27   claim <u>showing that the pleader is entitled to relief</u>."  The Supreme Court has recently explained that

28   this Rule means a complaint must allege "enough facts to state a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007).  *Twombly* was an antitrust case, but the Supreme Court has even more recently applied the "plausible claim" requirement to <u>all</u> federal civil actions.  *Ashcroft v. Iqbal*, ___US___; 129 S.Ct. 1937, 1949 (2009).

The Rule 8(a)(2) requirement of a "plausible claim" means that the complaint must contain "more than labels or conclusions" or "formulaic recitations of the elements of a cause of action," and instead must contain factual allegations "above the speculative level." *Twombly* at 555 & 570. Mere legal conclusions "must be supported by factual allegations," and whether a complaint states a plausible claim is "a context-specific task that requires the court to draw on its judicial experience and common sense." *Iqbal* at 1950.  Claims involving complex elements, such as the First Amended Complaint here, require more extensive factual allegations to establish "plausibility" than simpler cases and claims. *Twombly* at 566.  Both *Twombly* and *Iqbal* upheld dismissal of implausible claims at the pleading stage under Rule 8(a)(2).  *Twombly* at 567; *Iqbal* at 1952.

## VII.   DISCUSSION

### A.   The Basic Claim of This Case Is "Educational Malpractice," Which Is Barred in California

#### 1.   California Law

Stripped of all irrelevant factual allegations, and momentarily putting aside Plaintiffs' attempted "end runs" based on contract, fraud, and statutory theories, Plaintiffs' basic claim is that they were not given a meaningful education by Trump University that properly prepared them for investing in real estate.  This is "educational malpractice," and this negligence theory of liability was first struck down in California in 1976. *Peter W. v. San Francisco USD*, 60 Cal.App.3d 814, 825 (1976).

*Peter W.* was a public high school student, and that early holding focused closely on the budgetary limitations and many other regulatory constraints of American public schools. *Peter W., supra,* 60 Cal.App.3d at 825-27.  In the 35 years since then, however, the "educational malpractice" theory has been broadened to bar all inquiries into the nuances of the educational process. *See, e.g., Kashmiri v. Regent of the Univ. of California*, 156 Cal.App. 4th 809, 826 (2007) (court could hear

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

school fee dispute case because it did not involve inquiry into educational processes); *County of Riverside v. Loma Linda Univ.*, 118 Cal.App.3d 300, 317 (1981) (same).

A consistent concern of the California courts has been that there is no satisfactory standard of care by which to evaluate an educator.  *Peter W., supra,* 60 Cal.App.3d at 824.  Can Trump University reasonably be shown to have failed to meet a sensible and practical educational standard of care because Plaintiffs did not become successful real estate entrepreneurs?  Only if the myriad of other issues affecting human success – and beyond the control of any educator – could somehow be factored out, including the student's intelligence and drive, his or her financial resources, the economy, the regulatory climate, upbringing, health, real estate inventory, competition, luck, etc.  The California courts have long recognized that this kind of inquiry obviously is endless and hopeless.

### 2.  Other States Are In Accord

Most of the more recent case law concerning "educational malpractice" has arisen under the laws of other states.  One very instructive case from the Seventh Circuit arose under Illinois law, in which the court struck down a claim for "educational malpractice" against a private university that allegedly did not properly educate a student athlete who read at grade school level.  *Ross v. Creighton Univ.*, 957 F.2d 410, 414-15 (7th Cir. 1992).  The *Ross* court also surveyed the law on point across the United States.

The Seventh Circuit noted that the "overwhelming majority of states that have considered this type of claim have rejected it," including at least eleven states (as of 1992 – nearly twenty years ago), among which were California, New York, New Jersey, Florida, Maryland, Iowa, and Wisconsin.  *Ross, supra,* 957 F.2d at 414 & n.2.  The common rationales included the lack of a satisfactory standard of care (citing *Smith v. Alameda County Social Serv. Agency*, 90 Cal.App.3d 929 (1979)), varying theories of education, varying "attitude, motivation, temperament, past experience and home environment" of students, and the risk of embroiling the courts in overseeing the day-to-day operation of schools of all kinds.  *Id.* at 414-15 (citing numerous cases).  The Seventh Circuit also rejected the *Ross* plaintiff's attempt to "repackage" his "educational malpractice" negligence claim as a contract claim – just as our Plaintiffs have attempted to do here.  *Id.* at 416-17.

**B.** **The Contract-Related Claims Do Not Avoid the "Educational Malpractice" Bar Because Plaintiffs Concede the Contractual Goods and Services Were Provided**

**1.** **The Key Defect of the Contract-Related Claims**

As noted above, Plaintiffs either admit or do not deny that they received all the items of goods and services included in their contract that they purchased from Trump University.  These allegations (or lack of same) are fatal to Plaintiffs' contract-related claims because – if the <u>quality</u> of those goods and services are judicially considered, rather than the simple fact that the correct <u>quantity</u> was provided – then the courts will indeed be making the barred inquiry into educational processes.

That is exactly the holding of the Seventh Circuit in *Ross* mentioned above.  The Court noted that almost all states – including California – see the basic relationship between school and student as contractual.  *Ross, supra,* 957 F.2d at 416 (*citing Zumbrun v. Univ. of So. California*, 25 Cal.App.3d. 1, 10 (1972).  Nevertheless, the *Ross* court upheld dismissal of two breach of contract claims at the pleading stage on the following analysis directly on point here:

> "There is no question, we believe, that <u>Illinois would adhere to the great weight of authority and bar any attempt to repackage an educational malpractice claim as a contract claim.  As several courts have noted, the policy concerns that preclude a cause of action for educational malpractice apply with equal force to bar a breach of contract claim attacking the general quality of an education.</u>  'Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction . . . [and] is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution.
>
> "<u>To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough.  Instead, he must point to an identifiable contractual promise that the defendant has failed to honor.</u>  Thus, as was suggested in [the New York case of] *Paladino*, if the defendant took tuition money and then provided no education, or alternatively, promised a set number of hours of instruction and then failed to deliver, a breach of contract action may be available. . . . [S]ee also [the California case of] *Zumbrun* (breach of contract action allowed against university when professor declined to give lectures and final exam, and all students received a grade of 'B')….  <u>In these cases, the essence of the plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all.  Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective</u>

assessment of whether the institution made a good faith effort to
perform on its promise." *Ross, supra,* 957 F.2d at 416-17 (citations
omitted, emphasis added).

In this case, Plaintiffs have not and cannot allege that they did not get the exact goods and services that Trump University contracted to provide.  They have instead repeatedly alleged that those goods and services were "not good enough," to quote the Seventh Circuit.  That is a "repackaged" educational malpractice negligence claim masquerading as a contract claim.  Trump University respectfully asks this Court to join with the "great weight of authority" and "bar [Plaintiffs'] breach of contract claim attacking the general quality of an education."

### 2.   The Contract-Related Claims

#### a.   Fourth Cause of Action for Breach of Contract

This contract claim is found in Paragraphs 115-120.  It flatly alleges in Paragraph 119 that "Trump University breached the terms of its standardized contracts with Plaintiff and the Class by failing to provide them with the promised products and services as contracted."

Since Plaintiffs do not deny getting the contracted items on Exhibits 1-4, this contract claim can only go to the "general quality" of the education through that program.  Consequently, this contract claim is merely a "repackaged" negligence claim for "educational malpractice," and barred by California law.

#### b.   Fifth Cause of Action for Breach of Implied Covenant

This contract-related claim is found in Paragraphs 121-127.  The key allegation is in Paragraph 126: "Defendant did not provide and/or unfairly interfered with the right of Plaintiff and Class members to receive the benefits under their agreements with Defendant."

The covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Guz. v. Bechtel National, Inc.*, 24 Cal.4th 317, 349-50 (2000).  As already covered above under the breach of contract discussion, Trump University met all of its "substantive duties" under the contract when it provided all the specific goods and services called for by Exhibit 1-4.  As a matter of law, the company has also met its duties under the covenant as well.

/ / /

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY,
LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

**c.**      **Sixth Cause of Action for Money Had and Received**

This final contract-related claim is a so-called "common count" found in Paragraphs 128-130. The key allegations are that Trump University has "wrongly and deceptively" obtained a benefit – namely payment for its educational goods and services – and that payment must be "disgorged" for unspecified reasons. Based on the incorporation boilerplate in Paragraph 128, Plaintiffs claim disgorgement based on their allegation that those educational services were "not good enough."

Under California law, a common count such as this claim is not a specific cause of action, but instead is merely "an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts." *McBride v. Boughton*, 123 Cal.App.4th 379, 394 (2004). If that specific cause of action is "demurrable" – i.e., fails to state a cause of action as under Rule 12(b)(6) – then the common count based on it is also demurrable. *Ibid*. That is exactly the situation we have here, in which Plaintiffs' contract claim is barred, and hence so is this common count.

**C.      The Fraud-Related Claims Do Not Avoid the "Educational Malpractice" Bar Because No Reasonable Reliance Can Be Established**

**1.      The Key Defect of the Fraud-Related Claims**

All viable claims of deception in California – whether intentional or negligent – require reasonable reliance on the plaintiffs' part. *OCM Principal Opportunities Fund v. CIBC World markets Corp.*, 157 Cal.App.4th 835, 845 (2007); *B.L.M. v. Subo & Deitsch*, 55 Cal.App.4th 823, 834 (1997). Trump University supposedly misrepresented or otherwise deceived Plaintiffs to the effect that they would get a "complete real estate education," a "one-year apprenticeship," "one-to-one mentorship," "practical real estate techniques and contracts," a "power team" of professionals, a money-back "guarantee" on their first real estate deals, and a promise of income "up to ten thousand dollars a month or more." Paragraphs 132, 144, and 151-152.

The common problem with these fraud-related claims is that Plaintiffs cannot establish the essential element of reasonable reliance. They cannot do so because they signed not just one, but indeed <u>two</u> disclaimers in their contracts with Trump University that specifically disavowed any and all "guarantees, promises, representations or warranties of any kind regarding specific or general

1  benefits, monetary or otherwise, [that] have been or will be made by the Program." *See* Exs. 1-4

2  attached hereto.  The disclaimer in the "Terms and Conditions" further provided that "[y]ou

3  acknowledge and agree that [Trump University] has not made any express or implied representation

4  or assurance regarding the potential profitability, chances of funding or likelihood of success of any

5  transaction, investment, opportunity or strategy."

6        These broad disclaimers directly contradict Plaintiffs' allegations concerning the purported

7  promises, misrepresentations, guarantees, and the like that their fraud-related claims rely on.

8  California law prohibits so-called "evidence" of pre-contractual representations when they directly

9  contradict the terms of the written contract between the parties.  *See, e.g.*, Cal.Civ.Proc. Code §1856;

10 *Continental Airlines, Inc. v. McDonnell Douglass Corp.,* 216 Cal.App.3d 388, 419 (1989).  The

11 federal courts in California dismiss fraud-related claims in the 12(b)(6) context on the grounds that

12 "there cannot be reasonable reliance upon misrepresentations or a failure to disclose that are

13 contradicted by the express language" of the contracts in question.  *Baymiller v. Guarantee Mutual*

14 *Life Company*, 2000 WL 33774562, 4 (CD Calif., 2000).

15       **2.    The Fraud-Related Claims**

16            **a.    Seventh Cause of Action for Negligent Misrepresentation**

17       This fraud-related claim is found in Paragraphs 131-142.  The operative misrepresentations

18 have already been cited above – they are found in Paragraph 132.  The disclaimers overcome

19 Plaintiffs' boilerplate allegations of reasonable reliance in Paragraph 140, so this claim is not viable.

20            **b.    Eighth Cause of Action for Fraud**

21       This fraud claim is found in Paragraphs 143-150.  The operative misrepresentations have

22 already been cited above – they are found in Paragraph 144.  The disclaimers overcome Plaintiffs'

23 boilerplate allegations of reasonable reliance in Paragraph 148, so this claim too is not viable.

24            **c.    Ninth Cause of Action for False Promise**

25       This fraud-related claim is found in Paragraphs 151-157.  The operative misrepresentations

26 have already been cited above – they are found in Paragraphs 151-152.  The disclaimers overcome

27 Plaintiffs' false allegations of reasonable reliance in Paragraph 154, so this claim is not viable either.

28 / / /

**D.    The Remaining Statutory Claims Do Not Avoid the "Educational Malpractice" Bar Because None of the Statutory Standards Are Met**

      **1.      The Key Defect of the Statutory Claims**

The four statutory claims of Plaintiffs each have their specific elements set by the California legislature and interpreted by the California courts.  However, Plaintiffs' allegations do not meet the statutory standards for any of those claims.

      **2.      The Statutory Claims**

        **a.      First Cause of Action for Violation of Section 17200 — The "UCL"**

The Unfair Competition Law ("UCL") is codified at Business & Professions Code section 17200 *et seq.* and prohibits business practices which are unlawful, unfair, or fraudulent.  Each of these three "prongs" has different elements, and thus each constitutes a separate theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  The First Amended Complaint lists all three prongs and their purported support in Paragraphs 53-59, but the allegations fail to satisfy any of them.

The "unlawful" prong requires an independent and illegal statutory violation.  *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1120, 1127 (9th Cir. 2009).  However, the only statutes alleged to support the "unlawful" prong concern the fraud claims already disposed of above or the three consumer protection statutes now under discussion.  Paragraph 96.  As will be seen, none of those consumer protection statutes has been violated.  The only other purported "illegal" activity alleged in the First Amended Complaint is the recurring mention of the so-called "bandit" signs in Paragraphs 44 and 63, but that activity is <u>not</u> included in Paragraph 96 as a basis for the "unlawful" UCL prong.  Even if it was, Plaintiffs claim no legitimate damages or other loss based on that activity other than "injury" caused by a telephone call from the district attorney's office.

Turning next to the "unfair" prong of the UCL, the law is in flux for consumer cases (versus cases between business competitors).  See *Lozano v. AT&T Wireless Svcs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007).  The law best suited to consumer cases requires a balancing of the utility of defendant's conduct against the gravity of harm to plaintiff.  *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th 861 (1999).  In this case, Plaintiffs have suffered no harm at all.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

As already discussed above, Plaintiffs got exactly the educational goods and services they contracted for.  Their FAC complaining about the quality of their education is non-actionable "educational malpractice."

Turning last to the "fraudulent" prong of the UCL, the applicable measure under the statute is whether the alleged fraudulent business practice is likely to deceive the public.  *McKell v. Washington Mutual, Inc.*, 142 Cal.App. 4th 1457, 1471 (2006).  Here, deception of the public simply is not possible given the broad disclaimers signed and acknowledged by every attendee entering into a contract for Trump University's goods and services.  Additionally, the federal courts in California reject claims of optimistic, aggressive, or even potentially unrealistic descriptions of goods and services for sale as mere "puffery" well-known to ordinary people that are not sufficient to satisfy the "fraudulent" prong of the UCL.  *See, e.g., Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 973 (N.D. Calif. 2008) (advertisements for "superb," "more powerful," "more innovative" computers of "uncompromising quality" not actionable); *Anuziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1140-41 (C.D. Calif. 2005) (advertisements for "high quality," reliable," "high performance" and "latest technology" are not actionable).

### b.    Second Cause of Action for Violation of Section 1750 — The "CLRA"

The Consumer Legal Remedies Act ("CLRA") is codified in the California Civil Code at section 1750, *et seq*.  Acts in violation of the CLRA are listed in section 1770(a).  The FAC alleges violation of the CLRA in Paragraphs 102-110, and lists four specific acts of violation in Paragraph 104, but none are actually established by the pertinent factual allegations.

Three of the four alleged violations are based on Plaintiffs' fraud theory, namely that representations about Trump University's program did not match reality.  Paragraph 104(a)-(c).  As already covered in detail above, this theory fails on reasonable reliance, and the representations are non-actionable puffery at worst.

The fourth alleged violation is that ""Defendant advertised the Seminars with intent not to supply reasonably expected demand."  Paragraph 104(d), alleging violation of CRLA subsection 1770(a)(10).  This claim has no support at all in the factual allegations, which require some showing that Plaintiffs tried to get into the Trump University program and could not due to limited supply.

c.    **Third Cause of Action for Violation of Section 17500 — The "False Advertising Law"**

The "False Advertising Act" is codified at California Business & Professions Code section 17500 *et seq.*  It prohibits untrue and misleading advertising.  Violation of the False Advertising Act is alleged in Paragraphs 111-114.  The purported violations are unspecified "untrue" statements that Trump University supposedly "disseminated, through common advertising."

Plaintiffs have failed to identify with any specificity an actual false advertisement.  In addition, nowhere does Plaintiff Makaeff allege that she was solicited by Trump University's advertising, or that she relied on that advertising, or that she was ever even aware of that advertising – whether a specific advertisement or a campaign.  The remaining plaintiffs allege they were solicited, but they cannot demonstrate reliance as discussed under the "fraud" analysis.

d.    **Tenth Cause of Action for Violation of Section 15610 *et seq* — "Elder Abuse"**

Plaintiffs have failed to allege even the minimum threshold requirements of the statute and their allegations conclusively establish that they are not within the "protected class."  California Welfare & Institutions Code section 15610.27 defines an elder as "any person <u>residing in this state</u>, 65 years of age or older."  (Emphasis added.)  Plaintiffs have not, and cannot allege that either of the two Plaintiffs residing in California is 65 or older.  The only Plaintiff identified by age is Mr. Oberkrom, a <u>Missouri</u> resident, who is not eligible for the protection of the California statute.  See also *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1141 (plaintiff was eligible for the protection of the statute because he was a 78-year old California resident).

E.    <u>**All Claims Must Be Dismissed Under Rule 12(b)(6)**</u>

All of Plaintiffs' nine causes of action fail to state a claim upon which relief can be granted under California law.  Consequently, all of Plaintiffs' claims must be dismissed under Rule 12(b)(6).  The allegations, whether true or false in the real world, fail to supply the essential legal elements needed for any of the ten theories of liability even under the generous standards of Rule 12(b)(6).

/ / /

/ / /

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

**F.**      **All Fraud-Related Claims Also Must Be Dismissed Under Rule 9(b)**

FRCP Rule 9(b) requires factual specificity and particularity in allegations of fraud.  Even putting aside the legal deficiencies of those allegations, their factual deficiencies mandate that they be disregarded and ultimately dismissed under the Rule.  This is so because the allegations do not establish the time, location, perpetrator, content, or impact of the purported deceptions.  If Plaintiffs cannot even allege the "who, what, when, where, and why" of the purported frauds – much less do so with specificity or particularity – then the Court cannot consider those fraud-related claims.  See *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

**G.**      **The Purported Class Claims Must Be Dismissed Under Rule 8(a)(2), and the Purported Nationwide Statutory Class Claims Must Also Be Dismissed Under California Law**

**1.**      **Rule 8(a)(2) and the Class Claims**

Rule 8(a)(2) requires allegations of only "plausible claims," and dismissal of claims that are not "plausible," that lack supporting factual allegations, that entail speculation, and that – in short – do not meet the basic test of judicial experience and common sense.

In this case, Plaintiffs' class allegations cannot meet that basic test.  A nationwide program based on real estate investment, and offered to many people from around the country, would result in many different experiences, results, opinions, transactions, and levels of investment.  Plaintiffs' boilerplate and generalized allegations of commonality do not remotely address the obvious deficiencies of a putative class whose members attended different programs, taught by different teachers, in different cities, at different levels of expense and involvement, with different life experiences going in, and with different business experiences coming out.

Ultimately, the value of the Trump University program is subjective to each one of the attendees.  Each one of them also made an individual decision as to how far he or she would go in the program, how much he or she would spend on the program, and how hard he or she would work at the skills gained through the program.  If some of those unique entrepreneurs made many millions of dollars, could Plaintiffs adequately represent them when they made nothing?  At the other end of the spectrum, could Plaintiffs adequately represent the many people who spent nothing, invested

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

1  nothing, and – after one seminar – learned that they had no interest or ability in pursuing real estate

2  investments after all?

3       The pleading stage is not the time to consider class certification under Rule 23.  Still, it is

4  proper to consider whether the allegations in the FAC – <u>including</u> the class allegations – satisfy the

5  standards of Rules 12(b)(6), 9(b), and 8(a)(2).  Just as the Supreme Court held in *Ashcraft*, this

6  Court's "experience and common sense" will confirm that the current class allegations do not

7  remotely state a plausible claim under Rule 8(a)(2) – even if the class is restricted to California.

8  See *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1950.

9       If the class allegations are dismissed under Rule 8(a)(2), then the entire case likewise must be

10  dismissed, even if some of Plaintiffs' claims survive this challenge under Rules 12(b)(6) and 9(b).

11  This is so because Plaintiffs' largest alleged individual monetary damages are only $60,000 for

12  Ms. Makaeff (which amount is false in reality – her total payment to Trump University was exactly

13  $35,742.50).  But even at the maximum mythical $60,000 figure, Plaintiffs individually cannot meet

14  the jurisdictional minimum of $75,000 under 28 USCA section 1332.  The only lawful option for

15  their individual claims is dismissal of the entire action.

16      **2.**     **<u>California Law and the Nationwide Statutory Claims</u>**

17       The final legal defect of the FAC is that the putative class is not restricted to California.

18  Plaintiffs instead allege that the class should be certified nationwide.  Needless to say, a class which

19  clearly does not meet commonality standards in one state cannot meet those standards in all 50

20  states.

21       But even if the putative class could be certified nationwide, and even if Plaintiffs' common

22  law claims likewise could be enforced nationwide, California statutory claims under the UCL, the

23  CLRA, the False Advertising Act, and the Elder Abuse law cannot be enforced outside of California

24  as a matter of law.

25       The leading case on this issue is *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th

26  214 (1999).  In *Norwest*, the Fourth District Court of Appeal in San Diego reversed the Superior

27  Court certification of a nationwide class under the UCL.  *Id*. at 222-27.  The *Norwest* court held that

28  the UCL could not regulate conduct unconnected to California, and hence a nationwide class based

on claims under the UCL could not be certified. *Id*. at 229. A Second District Court of Appeal court recently reached the same holding on a CRLA claims brought in a nationwide class action. *Cohen v. DIRECTV*, 178 Cal.App.4th 966, 972 (2009).

Federal courts in California have also reached that same conclusion. *See, e.g., Utility Consumers' Action Network (UCAN) v. Sprint Solutions, Inc.*, 259 F.R.D. 484, 487 (S.D. Calif. 2009) (California law cannot be extended to non-resident plaintiffs suing for conduct which took place outside of California); *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1096 (N.D.Calif. 2006) (only California residents can sue to enforce the CLRA); *Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp.2d 1141, 1147 (C.D. Calif. 2005) (no UCL claims between non-residents based on non-California transaction).

The end result is that Plaintiffs' claims for nationwide class action claims under the UCL, the CLRA, the False Advertising Act, and the Elder Abuse law must be dismissed under Rule 12(b)(6) because they are barred by law.

## VIII.   CONCLUSION

Trump University respectfully requests that the Court dismiss the entire FAC as barred under Rules 12(b)(6), 9(b), and 8(a)(2). All causes of action fail as a matter of law under these Rules.

If some of Plaintiffs' individual claims survive this motion, but no class claims do, then the entire action must be dismissed for Plaintiffs' failure to meet the jurisdictional amount.

Finally, even if some class claims survive this motion, the claim for a nationwide class based on California's UCL, CLRA, False Advertising Law, and Elder Abuse law must be dismissed.

Respectfully submitted,

Dated:      July 21, 2010                          YUNKER & SCHNEIDER

By:    s/ David K. Schneider
Attorneys for Defendant and Counterclaimant
TRUMP UNIVERSITY, LLC
E-mail: dks@yslaw.com