ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PAULA M. ROACH (254142)
proach@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
625 West Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, PATRICIA MURPHY and SHERI WINKELMANN, on Behalf of Themselves and All Others Similarly Situated,<br><br>  Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, and DOES 1 through 50, inclusive,<br><br>  Defendants. | No. 10-cv-00940-IEG(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFF'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE DEFENDANT TRUMP UNIVERSITY'S COUNTERCLAIM PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §425.16 |
| TRUMP UNIVERSITY, LLC, a New York Limited Liability Company,<br><br>  Counterclaimant,<br><br>vs.<br><br>TARLA MAKAEFF, and ROES 1 through 10, inclusive,<br><br>  Counterdefendants. | DATE: August 2, 2010<br>TIME: 10:30 a.m.<br>CRTM: 1<br>JUDGE: Honorable Irma E. Gonzalez |

573306_1

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................................... 1

II. Makaeff's Statements to Her Bank and the BBB Are Protected Speech by §425.16 ...................... 2

    A. Makaeff's Statements Were Not Illegal ............................................................................... 3

    B. Makaeff's Statements to the BBB and Her Bank Arose from Her Exercise of Free Speech on an Issue of Public Interest ............................................................................ 3

    C. Makaeff's Statements to the BBB and Her Credit Card Company Were Made in Anticipation of Litigation ................................................................................................. 5

III. Trump University Has Not Proffered Admissible Evidence Sufficient to Demonstrate a Probability of Success on Its Defamation Claim ........................................................................ 5

    A. As a Public Figure Trump University Has Failed to Demonstrate Makaeff Acted with Actual Malice ......................................................................................................... 5

        1. Trump University Is a Public Figure ........................................................................ 6

        2. Trump University Provides No Evidence of Actual Malice ...................................... 7

    B. Trump University Fails to Provide Any Evidence that Makaeff's Statements Were False or Actionable ................................................................................................. 7

    C. Trump University Offers No Evidence of Its Claim for Damages ........................................ 10

IV. Conclusion ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adoption Network Law Ctr., Inc. v. Tayyanipour*,
  No. G036870, 2007 WL 172365 (Cal. App. Jan. 24, 2007) .................................................................. 9

*Albertson v. Raboff*,
  46 Cal. 2d 375 (1956) .......................................................................................................................... 9

*Ampex Corp. v. Cargle*,
  128 Cal. App. 4th 1569 (2005) ........................................................................................................ 6, 7

*Annette F. v. Sharon S.*,
  119 Cal. App. 4th 1146 (2004) ........................................................................................................... 6

*Baker v. Los Angeles Herald Exam'r*,
  42 Cal. 3d 254 (1986) .......................................................................................................................... 8

*Copp v. Paxton*,
  45 Cal. App. 4th 829 (1996) ................................................................................................................ 8

*Ferlauto v. Hamsher*,
  74 Cal. App. 4th 1394 (1999) .............................................................................................................. 8

*Flatley v. Mauro*,
  39 Cal. 4th 299 (2006) ........................................................................................................................ 3

*Gallagher v. Connell*,
  123 Cal. App. 4th 1260 (2004) ........................................................................................................... 5

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
  63 F. Supp. 2d 1127 (N.D. Cal. 1999) ................................................................................................. 5

*Gugliotta v. Morano*,
  161 Ohio App. 3d 152 (2005) .............................................................................................................. 9

*Jensen v. Hewlett-Packard Co.*,
  14 Cal. App. 4th 958 (1993) ................................................................................................................ 8

*Jensen v. Times Mirror Co.*,
  634 F. Supp. 304 (D. Conn. 1986) ....................................................................................................... 6

*Masson v. New Yorker Magazine*,
  501 U.S. 496 (1991) ............................................................................................................................. 6

*Neville v. Chudacoff*,
  160 Cal. App. 4th 1255 (2008) ........................................................................................................... 5

*New.Net, Inc. v. Lavasoft*,
  356 F. Supp. 2d 1090 (C.D. Cal. 2004) ............................................................................................... 7

**Page**

*Nguyen-Lam v. Cao*,
 171 Cal. App. 4th 858 (2009)..................................................................................................... 10

*Nygard, Inc. v. Uusi-Kerttula*,
 159 Cal. App. 4th 1027 (2008)........................................................................................... 3, 4, 7, 8

*Rothman v. Jackson*,
 49 Cal. App. 4th 1134 (1996)........................................................................................................ 9

*Seelig v. Infinity Broad. Corp.*,
 97 Cal. App. 4th 798 (2002)........................................................................................................ 4

*Thermoview Indus. Inc. of Cal. v. Util. Consumers Action Network*,
 No. D042815, 2004 WL 2505157 (Cal. App. Nov. 8, 2004) ....................................................... 9

*Time, Inc. v. Firestone*,
 424 U.S. 448 (1976) ...................................................................................................................... 7

*USA Techs., Inc. v. John Doe*,
 No. C 09-80275 SI, 2010 WL 1980242 (N.D. Cal. May 17, 2010) .............................................. 8

*Weinberg v. Feisel*,
 110 Cal. App. 4th 1122 (2003).................................................................................................... 10


**STATUTES, RULES AND REGULATIONS**

California Civil Code
 §47(b) ........................................................................................................................................... 9

California Code of Civil Procedure
 §425.16 .................................................................................................................................. 2, 10
 §425.16(b)(2) ................................................................................................................................ 5
 §425.16(e)(2) ................................................................................................................................ 5
 §425.16(e)(3) ................................................................................................................................ 3
 §425.16(e)(4) ................................................................................................................................ 3

## I. Introduction

Contrary to Trump University's inflammatory language and red herring arguments, the facts of this case are simple. Trump University filed its defamation claim in retaliatory fashion only after Tarla Makaeff ("Makaeff") filed her class action lawsuit against Trump University for deceptive business practices. The class action that sparked Trump University's Counterclaim is a case in which thousands of consumers, including Makaeff, were misled into purchasing real estate investment seminars and apprenticeship programs from Trump University based on the notoriety of its Chairman, real estate mogul, Donald Trump. Upon discovering she had been duped, Makaeff (and other consumers), did exactly what consumers often do, and are entitled to do, when they feel they have been ripped off–she contacted Trump University and asked for the promised services or a refund. When it refused, she contacted her bank to dispute the debit card charges to recoup her money. She also felt compelled to warn other consumers and thus wrote the Better Business Bureau ("BBB"). This is protected speech, not defamation.

Despite Trump University's broad claims of defamation, it now admits that its allegations are limited to two documents – Makaeff's letter to her bank disputing the charges and her letter to the BBB.[1] Makaeff's letters undoubtedly constitute protected activity. First, her statements arose from her exercise of free speech on an issue of public interest. Notifying the BBB of her opinions that Trump University was engaging in misleading practices and taking money from thousands of students without providing the mentoring, apprenticeships and education promised is a matter of public interest. Second, her statements were made in anticipation of litigation – she expressly stated in her letter to the bank that if she did not receive a refund from Trump University, she would "tak[e] legal action at the state and federal levels." Declaration of Michael Sexton in Opposition to Plaintiff's Motion to Strike Defendant's Counterclaim ("Sexton Decl."), Ex. A ("Ex. A") at 11. Such statements are not criminal threats of force or fear as Trump University boldly implies, but simply a consumer pursuing legal and proper avenues for relief after being taken advantage of by a business.

---

[1] Makaeff's counsel requested that Trump University produce copies of the documents containing the alleged defamatory statements before filing the anti-SLAPP motion, but it did not do so until attaching the two documents to its Opposition to Plaintiff's Motion to Strike Defendant's Counterclaim, filed July 19, 2010 ("Opp."). *See* Declaration of Amber Eck in Support of Plaintiff's Reply in Support of Special Motion to Strike, ¶5, filed concurrently.

Moreover, Trump University fails to meet its burden of proving, with admissible evidence, that it is likely to prevail. As a public figure, Trump University cannot show that Makaeff made the statements with actual malice. However, even if this Court does not find that Trump University is a public figure, it has not shown that these statements, when viewed in context, were false statements of fact. In the letters, Makaeff sets forth her lay opinions of her experiences with Trump University and the reasons therefor. Even if Trump University demonstrated these opinions were false – which it has not – those statements are still unactionable as opinion, rhetoric or hyperbole.

Finally, Trump University cannot show it was damaged by Makaeff's letters to her bank and the BBB because, as it acknowledges, these letters were sent privately. Although Trump University claims generally that its profits began declining around the time these letters were written, it provides no evidence of its profits prior to September 2009, or a comparison of its profits after that time, and it provides no evidence whatsoever that any such decline in profits was due solely to Makaeff's two letters. Indeed, Trump University does not even allege that these letters were seen by potential students, and in fact, they were not–the bank letter was sent only to the bank, which then provided a copy to Trump University, and likewise, the BBB letter was not made available to the public or potential students.

Trump University cites no cases in which a letter to the BBB or a letter to a consumer's bank constituted defamation. Neither does Trump University cite any cases in which "consumer fraud" claims by a plaintiff, such as Makaeff, have been found to constitute defamation, or have survived an anti-SLAPP Motion. Accordingly, Makaeff respectfully requests that this Court grant her anti-SLAPP motion and strike Trump University's Counterclaim in its entirety.

**II.     Makaeff's Statements to Her Bank and the BBB Are Protected Speech by §425.16**

Trump University admits that its defamation claim is limited to Makaeff's statements made to the BBB and her bank's debit card dispute department.[2] Opp. at 9. These statements arose from Makaeff's protected speech on an issue of public concern and made in anticipation of litigation. Specifically, Trump

---

[2] Additionally, while Trump University refers to statements made on the Internet that have gone "viral" (*see* Opp. at 2-3, 9), it provides no evidence of what these statements are, where the statements were allegedly posted, who made them, or when they were made.

University's deceptive business practices were matter of public concern, widely discussed by other students also duped by Trump University on Internet blogs and in news articles. Because this type of speech is so clearly protected, Trump University attempts to distract the Court with distorted caricatures of Makaeff that recast her sincere efforts as a consumer trying to get her money back when she did not get what she bargained for, into a criminal campaign to extort money from Trump University. However, these distortions do not further Trump University's cause here.

### A.   Makaeff's Statements Were Not Illegal

Trump University attempts to discredit Makaeff's protected speech by making the bold claim that her statements were illegal "[e]xtortionate speech," relying on *Flatley v. Mauro*, 39 Cal. 4th 299 (2006). Opp. at 8-9. However, the *Flatley* court expressly limited its holding to "the specific and extreme circumstances" of that case. *Id.* at 332 n.16. In *Flatley*, an attorney threatened to publicly and falsely accuse a well-known entertainer of rape and other crimes unless he paid $1 million. *Id.* at 305. The entertainer sued the attorney for extortion, and the attorney filed an anti-SLAPP motion. *Id.* The court denied the anti-SLAPP motion because "the evidence conclusively establishe[d], that the assertedly protected speech or petition activity was illegal as a matter of law." *Id.* at 320.

Makaeff's statements to her bank and the BBB do not amount to the criminal extortion found in *Flatley*. *See id*. at 332 n.16 ("[O]ur opinion should not be read to imply that rude, aggressive, or even belligerent prelitigation negotiations . . . that may include threats to file a lawsuit, report criminal behavior to authorities or publicize allegations of wrongdoing, necessarily constitute extortion."). Makaeff's statements were both legal and protected by California's anti-SLAPP statute.

### B.   Makaeff's Statements to the BBB and Her Bank Arose from Her Exercise of Free Speech on an Issue of Public Interest

Section 425.16(e)(4) broadly protects "any other conduct" in furtherance of free speech "in connection with a public issue or an issue of public interest." C.C.P. §425.16(e)(4). An issue is "'of public interest' within the meaning of Section 425.16(e)(3) is ***any issue in which the public is interested***."[3] *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original); *see also* Plaintiff's

---

[3]   Unless otherwise noted, citations are omitted and emphasis is added.

Memorandum in Support of Her Special Motion to Strike Trump University's Defamation Claim ("Motion"), at 8. "In other words, the issues need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes interest." *Id.* (defamatory statements about businessman and celebrity met public interest standard as there was interest in him and his "'famous Bahamas residence'"). *Id.*

Here, there is a public interest in Trump University because of its affiliation with businessman and celebrity, real estate mogul Donald Trump.[4] Indeed, even "tabloid" issues are in the public interest and protected by the anti-SLAPP statute. *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 801-06 (2002) (concerning "Who Wants to Marry a Multimillionaire"). Moreover, the communications involve issues of public interest as they pertain to society's interest in protecting consumers from deceptive and misleading practices, such as those alleged of Trump University. Makaeff "contact[ed] the Better Business Bureau (BBB) . . . to ensure that this organization [Trump University] at some point is stopped from defrauding others with its predatory behavior." Sexton Decl., Ex. A at 11.

This is not, as Trump University claims, a private contract dispute between two parties, but rather business practices that affect thousands of students. ¶¶11, 89-93. Makaeff was not only concerned with getting her money back, but also concerned that Trump University was deceiving all of its students.[5] *See* Sexton Decl., Ex. A at 11. Indeed, Makaeff's statements are supported by evidence that numerous consumers nationwide have complained about the same conduct.[6] ¶55.

---

[4] Defendant attempts to argue that this is not a matter of public interest because it is just a "small, private" Trump LLC University (Opp. at 1, 3), but it provides no evidence of how many consumers have paid for its seminars, or what its profits are. Furthermore, for an operation which consists of a few instructors who travel around the nation full-time giving seminars, 39 employees and 35 independent contractors is not necessarily "small." Also, it consistently represents itself as a large company -- calling itself a "University" which connotes a large institution, and telling students that if ever they have questions, they can call "40 Wall Street." ¶36. All references to "¶" and "¶¶" are to the Amended Complaint filed June 16, 2010.

[5] That the underlying class litigation is represented by four plaintiffs, including Makaeff (*see* Opp. at 12-13), is irrelevant because in a representative class action, there is no need to name, as a plaintiff, everyone harmed by the allegations in the complaint. Indeed, the very purpose of the Makaeff's representative action is to obtain relief for herself and all of Trump University's students – the exact relief that she attempted to obtain through her letters to the BBB and her bank.

[6] Trump University contends that "Makaeff's personal dissatisfaction with Trump University does not amount to an issue of public concern," because other students were allegedly satisfied (Opp. at 3, 12), but provides no evidence to show how many people were surveyed, how many responded, and whether

Trump University's argument that Makaeff's statements do not become an issue of public interest merely because Makaeff published the statements "on the worldwide web" (Opp. at 12) is entirely misplaced because its defamation claim is expressly limited to two private statements Makaeff made to her bank and the BBB, neither of which was published on the Internet. Accordingly, Makaeff's statements were a matter of public concern covered by §425.16(e)(4).

### C. Makaeff's Statements to the BBB and Her Credit Card Company Were Made in Anticipation of Litigation

As stated in her opening brief, Makaeff's statements to the BBB and her credit card company were made in anticipation of litigation and thus are protected under §425.16(e)(2). Motion at 11-12. Importantly, Trump University does not dispute this point.[7]

### III. Trump University Has Not Proffered Admissible Evidence Sufficient to Demonstrate a Probability of Success on Its Defamation Claim

Additionally, Trump University fails to meet its burden of demonstrating, with admissible evidence, a likelihood of success on its defamation claim. *See* C.C.P. §425.16(b)(2); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999); *Gallagher v. Connell*, 123 Cal. App. 4th 1260, 1266 (2004). In fact, Trump University fails to provide ***any*** evidence that Makaeff acted with actual malice, made false statements of fact, or that Trump University suffered any damages as a result of her statements. Indeed, some of the alleged defamatory statements quoted by Trump University do not even appear in the letters as quoted. *See* Supp. Decl., ¶¶14-16. Other statements were not even made about Trump University, but about other entities or persons such as Trump Institute, Prosper, or Childers. *See id*, ¶¶10, 11.

### A. As a Public Figure Trump University Has Failed to Demonstrate Makaeff Acted with Actual Malice

Further, as a public figure, Trump University must demonstrate with clear and convincing evidence that the alleged defamatory statements were made with actual malice–with knowledge that they were false or

---

respondents were all paying consumers, or whether some reviews came from consumers who attended free seminars and would be more likely to be satisfied, as they did not pay for anything. *Cf*. ¶13.

[7]   While Trump University argues that Makaeff's statements are not protected by the litigation privilege for purposes of defamation (*see* Opp. at 19-21), it fails to argue they are not protected by §425.16(e)(2). Thus, if the Court finds that the statements were made in anticipation of litigation, they are protected by §425.16(e)(2). *See Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1263 (2008)

with reckless disregard to their falsity. *See Masson v. New Yorker Magazine*, 501 U.S. 496, 510-11 (1991). Trump University does neither.

### 1. Trump University Is a Public Figure

Makaeff has demonstrated that Trump University is at least a limited purpose public figure. *See* Motion at 15. In opposition, Trump University relies on an incorrect standard for determining whether a company is a limited public figure. *See* Opp. at 14 (citing *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005) (dealing with the issue of whether a statement concerned a matter of public interest, not whether a company is a public figure for purposes of defamation)).

Under the correct standard cited in *Ampex*, and in Makaeff's opening brief, Trump University is a public figure because Makaeff's statements concern a "public controversy" related to deceptive practices that will impact thousands of Trump University's students and other unwary members of the general public. *Id.* at 1577; Motion at 15. Additionally, Trump University did not become a public figure merely because Makaeff "thrust [Trump University] into the limelight" (*see* Opp. at 16), as it suggests, but because it has invited attention and comment through its use of Donald Trump's celebrity status to sell its real estate seminars. *See Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1164 (2004) (public controversy is "'a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants'").

Indeed, Trump University is a public figure because of its strong association with Donald Trump. *See Jensen v. Times Mirror Co.*, 634 F. Supp. 304 (D. Conn. 1986). Mr. Trump is certainly much more than a "celebrity advertiser": Trump University heavily draws on his name, his and his family's success in real estate and his purported credibility to attract students to its seminars. Trump University tells its students they will learn the "Trump family real estate investing secrets" from teachers "hand-picked by Donald Trump." ¶¶36, 37. Additionally, Donald Trump is literally the "face" of Trump University as his likeness is used all over its website, its marketing materials, and during its seminars. *See, e.g.*, ¶¶30-33, 36, 37. Not to mention Mr. Trump is the Chairman of Trump University.[8] ¶27. Trump University advertises that "It's the next best thing

---

[8] Trump University states that there are two investors in Trump University (Opp. at 15); while it does not reveal who they are, there is a strong possibility that these investors are Donald Trump and Michael Sexton.

to being [Donald Trump's] Apprentice" and told consumers they would learn "insider secrets from Donald Trump." ¶30. Finally, Trump University emphasizes that "Trump University is owned lock, stock and barrel by Mr. Trump – it's his 'baby,' his company." ¶33.

The statements at issue here are entirely unlike those in *Time, Inc. v. Firestone*, 424 U.S. 448, 454-55 (1976), which concerned a divorce. *See* Opp. at 16. Here, Makaeff's statements of opinion regarding Trump University's deceptive and misleading business practices impact thousands of students and potential students and thus, are clearly public.

Because Trump University is a public figure for purposes of defamation, it must provide evidence of actual malice but failed to do so.

**2.     Trump University Provides No Evidence of Actual Malice**

Trump University fails to provide any evidence that Makaeff acted with actual malice–that is, that she made the statements knowing that they were false or acted with reckless disregard for their falsity. *Ampex*, 128 Cal. App. 4th at 1578. Makaeff did not make any statements about Trump University that she knew were false, nor did she have serious doubts about the truthfulness of any of the statements she made about Trump University. Makaeff Declaration in Support of Special Motion to Strike, ¶5; Supp Decl., ¶¶2-4, 7. Likewise, Makaeff has explained the basis for each alleged defamatory statement and why she believed each was true. *See* Supp. Decl., ¶¶2-4, 8-17.

**B.     Trump University Fails to Provide Any Evidence that Makaeff's Statements Were False or Actionable**

Additionally, Trump University is unable to demonstrate a probability of success on the merits because it provides no evidence that Makaeff's statements were false or otherwise actionable. The only evidence Trump University proffers is the self-serving declaration of Trump University President, Michael Sexton, who claims that after "review[ing] and research[ing]" Makaeff's claims, the "statements are false" because he is not aware of the deceptive practices that Makaeff claims exist. Sexton Decl., ¶¶17-19. This however, is certainly not sufficient evidence to demonstrate a "probability" of success in demonstrating that Makaeff's statements are false, especially in light of Makaeff's declaration setting forth her opinions on why each statement was not false. *See Nygard*, 159 Cal. App. 4th at 1054 (declarations of alleged defamed party were insufficient to establish prima facie evidence of defamation or falsity of the statements); *see also New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1108-09 (C.D. Cal. 2004).

Moreover, Makaeff's statements, when read in full context, are unactionable opinions, not statements of fact. *See* Motion at 18-19; *Nygard*, 159 Cal. App. 4th at 1049, 1053 (holding that the court must look to the "totality of the circumstances" to determine if the statements were "provably false factual assertions[]"). Opinions are not actionable for defamation claims. *Baker v. Los Angeles Herald Exam'r*, 42 Cal. 3d 254, 259-260 (1986). In drawing the line between fact and opinion, courts have regarded opinions to include any "'broad, unfocused and wholly subjective comment,'" such as statements that plaintiff was a "'shady practitioner,'" "'crook'" or "'crooked politician.'"[9] *Copp v. Paxton*, 45 Cal. App. 4th 829, 837 (1996). In opposition, Trump University argues that alleged statements concerning legal conclusions such as "grand larceny," "identity theft," and "criminal conduct" are factual because they can be proven. Opp. at 17-18. However, at the outset, the statements regarding "grand larceny" and "identity theft were not made regarding Trump University, but Trump Institute, Prosper and/or Childers. *See* Supp. Decl., ¶10. Further, Makaeff's statement that the conduct was "criminal" was her opinion after being criminally investigated for using is suggested technique of the "bandit signs" which exposed her to possible jail time and up to 1 million in penalties. *Id.*, ¶12. However, Makaeff is not an attorney and never held herself out to be one – she is merely a consumer complaining about the manner in which she was deceived and mislead by Trump University.[10] Even opinions that are "objectively unjustified or made in bad faith" cannot form the basis for a defamation claim. *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 971 (1993). Under the applicable caselaw, the statements cited by Trump University do not constitute defamation.

---

[9] *See also USA Techs., Inc. v. John Doe*, No. C 09-80275 SI, 2010 WL 1980242, at *2 (N.D. Cal. May 17, 2010) (statements that a corporation and its officers fleeced people, were liars, embezzlers, skimmed $30 million, and engaged in a "soft Ponzi" scheme were not defamatory as a matter of law). "Thus, rhetorical hyperbole, vigorous epithet[s], lusty and imaginative expression[s] of . . . contempt and language used in a loose figurative sense have all been accorded constitutional protection." *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999) (holding "loser wannabe lawyer," "creepazoid attorney," "little f***er," and "meanest, greediest, low-blowing motherf***ers" non-actionable statements) (quotations omitted).

[10] Trump University also contends that Makaeff's statements are "demonstrably false," because "Trump University has never been cited or charged for any illegal activity." Opp. at 7. However, that it may not yet face criminal charges does not mean that it has not engaged in the misleading business practices complaint of by Makaeff. Furthermore, Attorneys General of Texas, Florida, and other states are investigating or considering an investigation into Trump University. ¶¶9,10. Also, Makaeff did not "unleash" these agencies on Trump University as it contends (Opp. at 16); clearly, Makaeff has no power to force governmental agencies to investigate, and indeed never even contacted the Texas Attorney General's Office or the New York Department of Education.

Further, Trump University quotes Makaeff's statements out of context. For example, Trump University asserts that Makaeff stated that it engaged in a "brainwashing scheme." Opp. at 18. However, the full statement reads, "I can only liken it to a brainwashing scheme that is so powerfully convincing initially that you do not realize you are being severely taken advantage of until you have completed the mentorships, attended all the courses, and paid . . . ." Ex. A at 10. Makaeff thus stated that what she experienced was so powerful that it was *like* brainwashing. *Id*. This is not a provable fact that is actionable as defamation.

Moreover, Makaeff's statements are protected by the litigation privilege under Cal. Civ. Code §47(b). Trump University claims that Makaeff's statements to the BBB and her bank are not protected because these entities are not "participants in the litigation," and the statements "were not made to serve the purpose of furthering the litigation at issue." Opp. at 19-20. However, the litigation privilege "is not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits." *Albertson v. Raboff*, 46 Cal. 2d 375, 381 (1956). Rather, "[i]f the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches." *Id.* Certainly, Makaeff is permitted by law to contact the BBB[11] or her bank[12] as a consumer and complain about the deceptive practices of a business that took advantage of her. Additionally, Makaeff's statements had "a reasonable relation to the action" as her communications with the BBB and her bank were both made in an effort to resolve the issues without resort to litigation. *See Albertson*, 46 Cal. 2d at 381. Accordingly, her statements were "a necessary or useful step in the litigation process" and are thus, protected speech and non-actionable.[13] *See Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1146 (1996).

---

[11]   *See, e.g.*, *Gugliotta v. Morano*, 161 Ohio App. 3d 152, 172 (2005) (statements made by a consumer to the BBB that services she received seemed "like a scam" were not defamatory where not made with actual malice); *Adoption Network Law Ctr., Inc. v. Tayyanipour*, No. G036870, 2007 WL 172365, at *8 (Cal. App. Jan. 24, 2007) ("contacting the Better Business Bureau . . . may have been protected activity" if it was the gravamen of the defamation complaint); *Thermoview Indus. Inc. of Cal. v. Util. Consumers Action Network*, No. D042815, 2004 WL 2505157, at *1 (Cal. App. Nov. 8, 2004).

[12]   Trump University cites no cases where a consumer's letter to the dispute department of her bank disputing charges constitute defamation, and Makaeff could find no such case either.

[13]   In *Rothman*, 49 Cal. App. 4th 1134, the court there found that the defamatory statements made to the press were not "a necessary or useful step in the litigation process." *Id.* at 1146. By contrast here, Makaeff complained to the BBB and her bank in an effort to resolve the dispute that is at issue in the underlying class

### C. Trump University Offers No Evidence of Its Claim for Damages

Finally, Trump University offers absolutely no evidence that it was damaged by Makaeff's statements in the exorbitant amount of 1 million. Counterclaim, ¶31. Trump University provides no evidence of its actual damages or justification for this figure, and now contends it cannot yet quantify its damages. Opp. at 24. However, the statements that form the basis of Trump University's defamation claim were made in September and November 2009. Sexton Decl., ¶¶15, 16. While Sexton claims that Trump University's "sales and instructional teams have spent hundreds of hours overcoming negative perceptions created by Ms. Makaeff's defamatory statements," it is unable to explain how attendees and prospective students could have become aware of Makaeff's private statements to the BBB and her bank. *See id.*, ¶22. Additionally, while Trump University claims that its profits have been declining since Makaeff's statements, it provides no evidence of such decline. *Id.*, ¶21. Finally, Trump has produced no evidence that any damages it sustained were caused by Makaeff's private statements, rather than by the declining economy, statements made by other students, investigations conducted by governmental agencies, the New York Department of Education's reprimand of Trump University for use of the term "university," or the quality of Trump University's seminars and products.[14]

## IV. Conclusion

For the foregoing reasons, Makaeff's Special Motion to Strike Defendant/Counterclaimant Trump University's Counterclaim Pursuant to California Code of Civil Procedure §425.16, should be granted.

DATED: July 26, 2010                                    Respectfully submitted,

s/ Amber L. Eck<br>AMBER L. ECK

---

litigation. Had Makaeff been able to resolve these issues through her communications with the BBB or her bank, she would not have had to resort to litigation.

[14]   Nor does Trump University demonstrate that Makaeff's statements have a natural tendency to injure. *See* Opp. at 22-23. As the cases cited by Trump University find, accusations of criminal conduct only constitute defamation *per se* when there is evidence of actual malice. *See Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1135-36 (2003) (statements of criminal conduct defamation *per se* where there was no evidence the speaker ever reported the conduct or pursued civil charges); *Nguyen-Lam v. Cao*, 171 Cal. App. 4th 858, 868 (2009) (requiring actual malice). Because there is no evidence that Makaeff acted with actual malice or even that the accusations are in fact false, the statements do not have a natural tendency to injure. *Id.*

| | |
|---|---|
| 1 | |
| 2 | ZELDES & HAEGGQUIST, LLP<br>AMBER L. ECK |
| 3 | HELEN I. ZELDES<br>ALREEN HAEGGQUIST |
| 4 | 625 West Broadway, Suite 906<br>San Diego, CA  92101 |
| 5 | Telephone:  619/342-8000<br>619/342-7878 (fax) |
| 6 | ROBBINS GELLER RUDMAN |
| 7 |   & DOWD LLP<br>RACHEL L. JENSEN |
| 8 | PAULA M. ROACH<br>655 West Broadway, Suite 1900 |
| 9 | San Diego, CA  92101<br>Telephone:  619/231-1058 |
| 10 | 619/231-7423 (fax) |
| 11 | Attorneys for Plaintiffs |

(Lines 12–28 blank)

CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 26, 2010.

        s/ Amber L. Eck
        AMBER L. ECK

        ZELDES & HAEGGQUIST, LLP
        625 West Broadway, Suite 906
        San Diego, CA  92101
        Telephone:  619/342-8000
        619/342-7878 (fax)

        E-mail:  ambere@zhlaw.com

## Mailing Information for a Case 3:10-cv-00940-IEG -WVG

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paula M. Roach**
  proach@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Keith Schneider**
  dks@yslaw.com,dscardino@reedscardino.com,ewb@yslaw.com,mlokey@reedscardino.com,efb@yslaw.com,jjohnson@reedscardino.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`