1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
3  PAULA M. ROACH (254142)
proach@rgrdlaw.com
4  655 West Broadway, Suite 1900
San Diego, CA  92101
5  Telephone: 619/231-1058
619/231-7423 (fax)
6
ZELDES & HAEGGQUIST, LLP
7  AMBER L. ECK (177882)
ambere@zhlaw.com
8  HELEN I. ZELDES (220051)
helenz@zhlaw.com
9  ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
10  625 West Broadway, Suite 906
San Diego, CA  92101
11  Telephone:  619/342-8000
619/342-7878 (fax)
12
Attorneys for Plaintiff
13                            UNITED STATES DISTRICT COURT

14                          SOUTHERN DISTRICT OF CALIFORNIA

15  TARLA MAKAEFF, BRANDON KELLER,  )   No. 10-cv-00940-IEG(WVG)
ED OBERKROM, PATRICIA MURPHY and )
16  SHERI WINKELMANN, on Behalf of      )   CLASS ACTION
Themselves and All Others Similarly Situated, )
17                                              )   SUPPLEMENTAL DECLARATION OF
              Plaintiffs,              )   TARLA MAKAEFF IN SUPPORT OF
18                                              )   SPECIAL MOTION TO STRIKE TRUMP
    vs.                                       )   UNIVERSITY'S DEFAMATION
19                                              )   COUNTERCLAIM PURSUANT TO
TRUMP UNIVERSITY, LLC, (aka Trump   )   CALIFORNIA CODE OF CIVIL
20  Entrepreneur Initiative) a New York Limited )   PROCEDURE §425.16
Liability Company, and DOES 1 through 50,  )
21  inclusive,                                  )
              Defendants.              )
22  _____ )
TRUMP UNIVERSITY, LLC, a New York   )   DATE: August 2, 2010
23  Limited Liability Company,                  )   TIME: 10:30 a.m.
                       )   CRTM: 1
24             Counterclaimant, )   JUDGE: Honorable Irma E. Gonzalez
                       )
25      vs.                                       )
TARLA MAKAEFF, and                         )
26  ROES 1 through 10, inclusive,               )
                       )
27           Counterdefendants. )
_____ )
28

1    I, TARLA MAKAEFF, declare as follows:

2    1.    I submit this declaration in further support of my Special Motion to Strike

3  Defendant/Counterclaimant Trump University's Counterclaim Pursuant to California Civil Code

4  §425.16.  The facts stated in this declaration are true and based on my own personal knowledge and,

5  if called to testify to them, I would competently do so.

6    2.    Trump University's claim that I "praised Trump University in every single writing,

7  evaluation and testimonial [I] gave" (Opposition to Plaintiff's Motion to Strike Defendant's

8  Counterclaim ("Opp."), at 23) is not true.  As I explained in my letters to Bank of America and the

9  Better Business Bureau ("BBB"),[1] I complained and expressed dissatisfaction and concern to Trump

10  University both in writing and by phone on numerous occasions.  Specifically:

11    (a)    Around August 12, 2008, just a few days after paying for the $35,000 Trump

12  University seminar, I became concerned that some of the representations by Trump University

13  speakers concerning the $35,000 seminar and mentorship package might not be true, and I called

14  Tiffany Brinkman at Trump University to express my concern.  *See* Ex. A at 16, 29.

15    (b)    In September 2008, I met with my mentor for my three-day in-person

16  "mentorship" (valued by Trump University at $25,000) which consisted of two days of driving

17  around looking at real estate properties, a half day at a local Home Depot and lunch, and an hour or

18  so of discussing numbers.  On September 29, 2008, one day after my three-day mentorship ended, I

19  called and spoke with Jason Schauer at Trump University to express my concern that I had not

20  received the service promised, and to ask more questions.  *See id.*

21    (c)    In November 28, 2008, I complained to Trump University Instructor Tim

22  Gorsline about my mentors.  *See id.*

23    (d)    Around November 7, 2008, I again told Jason Schauer at Trump University's

24  corporate office that I was dissatisfied with my mentorship and that the mentors had failed to explain

25  how to prepare the contracts necessary for the real estate transactions, as was promised.  *Id.*

26  _____

27  [1]   *See* my letter to Bank of America Debit Dispute Department dated September 10, 2010, attached as Exhibit A to Declaration of Michael Sexton (hereinafter "Ex. A") at 16-20, and my letter

28  to the BBB dated November 2, 2009, Ex. A at 29-30.

1    (e)    Around April 3-14, 2009, after attending the Trump University "Commercial

2  and Multi-Family and Quick Turn Real Estate" seminar, I complained again that the mentors were

3  not providing me with the information and assistance that had been promised in the $35,000 one-

4  year mentorship I paid for. *Id.*

5    (f)    Around April 3-14, 2009, Trump University Program Director, Paul Reisner,

6  called to ask about my satisfaction, and I complained again.  I told him that the instructor did not

7  have the qualifications or expertise to teach real estate investing, as he had his own home foreclosed

8  on and had two bankruptcies.  I also complained that I had not received the mentoring experience

9  promised. *See* Ex. A. at 16, 29-30.

10    (g)    On April 13, 2009, I sent Brad Schneider at Trump University a lengthy

11  email, detailing my dissatisfaction with the Trump University seminars and mentorship, and spoke to

12  him about my concerns.  A true and correct copy of my April 13, 2009 e-mail is attached hereto as

13  Exhibit 1.

14    (h)    On September 10, 2009, I sent letters to Trump University again detailing my

15  dissatisfaction with Trump University, and the reasons for my dissatisfaction.  Ex. A at 17, 30.

16    3.    There was rampant dissatisfaction among students with whom I spoke who purchased

17  Trump University seminars.  Based on my conversations with these students and complaints I have

18  read online, I believe that the vast majority of Trump University students are dissatisfied because

19  they did not receive the products and services promised. *See, e.g.*, Ex. A at 17, 30.

20    4.    Trump University's claim that I "made a video praising the product [seminars] and

21  Trump University" (Opp. at 1, 4-5), is not true. First, their claim that I "made" a video implies that I

22  volunteered to make a video, when in fact, as I explained in my letter to Bank of America and the

23  BBB, I merely had a video camera thrust in my face unexpectedly after a June 13, 2009 seminar.

24  *See* Ex. A at 18, 30-31. Second, I did not praise the Trump University seminars or Trump University

25  mentors.  Instead, as I felt it would be inappropriate to bash the University or mentors on tape, my

26  recollection is that I said something polite about mentors generally, to the effect of "it's very

27  important to have a mentor to help you in any business, and I have had some mentors in my life that

28

1    have benefited me."  However, I never stated that I was happy with any of Trump University's

2    seminars or services.  *See id.*

3        5.    Trump University claims that I "found [my]self in difficult [or precarious] financial

4    circumstances completely unrelated to [my] training and attendance at Trump University programs."

5    (Opp. at 1, 23).  That is not true.  Any damages were caused by spending over $60,000 on the Trump

6    University seminars and related programs and not receiving what I was promised.

7        6.    Trump University claims that I gave Trump University and mentors "excellent"

8    ratings (*id.* at 4-5), but as I explained in my letters to Bank of America and BBB and in the Amended

9    Complaint, I paid $35,000 in September 2008 for a one-year mentorship ending September 2009.

10   When I made these comments in September and October 2008, I believed that I would get the

11   mentoring I was promised over the course of the year.  Also, there was no anonymity or privacy to

12   the surveys.  To the contrary, the mentors oversaw the surveys in person.  I did submit negative and

13   critical reviews of Trump University when I was allowed to submit the reviews anonymously.  *See*

14   Ex. A at 16-18, 30-31; First Amended Class Action Complaint, ¶64.

15       7.    Each of the statements I made about Trump University that it alleges were defamatory

16   were statements of my opinion based on my personal experience.  I did not make any statements that

17   I knew were false, nor did I have serious doubts about the truthfulness of any of these statements.  In

18   my letters to the BBB and Bank of America, I also set forth the bases and reasons for each of my

19   statements.

20       8.    In regard to my statements that Trump University engaged in "fraudulent business

21   practices" (Ex. A at 8), "deceptive business practices" (*id.*), and "bait and switch" (*id.* at 9), that

22   "[t]hese business practices are criminal in nature" (*id.*), were "outright fraud" (*id.* at 10), and were

23   "another clear practice of personal financial information fraud" (*id.* at 9), I set out in detail in my 18-

24   page letter to Bank of America why I believed these statements were true.  For example, it was my

25   opinion that it was fraudulent, deceptive, criminal, and "bait and switch" to tell students at the three-

26   day $1,500 seminar to fill out detailed financial information forms (including credit card

27   information, bank information, investments, etc.) purportedly to purchase real estate, when in fact,

28   this financial information was to used to determine which students it could manipulate and coerce

1  into purchasing the $35,000 seminar. *See id.* at 8-10.  Also, I believed it was fraudulent, deceptive,

2  criminal in nature and "bait and switch" to tell students during the three-day $1,500 seminar to

3  increase their credit card limits during the break by four times to be ready to make real estate

4  purchases, when in fact, it then told students to use their increased credit to purchase Trump

5  University's $35,000 seminar. *Id.* at 9.

6          9.    My letter further explained that I believed Trump University's sales tactics were

7  "illegal predatory high pressure closing tactics" (*id.* at 8), and "liken[ed] to a brainwashing scheme"

8  (*id.* at 10), because Trump University told us that these were "one time limited offers," that this was

9  the only day we could purchase the $35,000 seminar at this price (it was supposedly usually

10  $50,000). *Id.* at 9-10.  When read in full context, my statement regarding brainwashing explained

11  that "I can only liken it to a brainwashing scheme that is so powerfully convincing that you do not

12  realize you are being severely taken advantage of until after you have completed the mentorships,

13  attended all courses, and paid for the entity creation only to find that true answers that are promised

14  to be revealed and services that are promised to be rendered at later courses and dates are never

15  finally given, requiring more and more spending." *Id.* at 10.

16          10.    My letter to Bank of America was written to dispute not only debit charges to Trump

17  University in the amount of $5,100, but also a November 3, 2008 debit of $4,995 to Profit

18  Publishing Group – part of the Childers Financial Group, run by John V. ("JJ") Childers, one of

19  Trump University's endorsed attorneys. *Id.* at 8, 20-25.  My statements regarding "grand larceny"

20  (*id.* at 10), "identity theft" (*id.*), and "unsolicited taking of personal credit and trickery into opening

21  credit cards without MY approval or understanding" (*id.* at 11), were not in relation to Trump

22  University, but regarding Profit Publishing Group/Childers Financial Group/JJ Childers. *Id.* at 10-

23  11.  As set forth in my letter, I believed that they had "participated in the dispersal of my personal

24  financial information and opening of credit between a multitude of entities including banks regulated

25  by the FDIC," without my approval, and I believed that this unauthorized practice constituted

26  "outright fraud, grand larceny, and identity theft." *Id.* at 10.  I am not a lawyer and I did indicate in

27  the letter that "[t]he particulars on the law are for you to judge." *Id.* at 21.

28

11.     Likewise, my statement regarding "[f]raudulent business practices utilized for illegal material gain," does not relate to Trump University, but Trump Institute and Prosper Inc. *Id.* at 11. The full sentence reads: "I am very pleased that HSBC has ceased doing business with Trump Institute/Prosper Inc. and are returning clients' funds to them as I think the HSBC bank legal department has seen the Fraudulent business practices utilized for illegal material gain by Trump Institute/Prosper Learning et al." *Id.*

12.     I explained in my letter that my opinions that Trump University engaged in "felonious teachings" (*id.* at 15), that "are outright criminal" (*id.*), were based on the fact that Trump University taught its students to post anonymous "bandit signs which is considered a misdemeanor that involves jail time." *Id.*   After I posted bandit signs, as taught by the Trump seminars I attended, I was investigated by the District Attorney's Office and faced a possibility of criminal violations of 6 months of jail time and a misdemeanor per offense (sign) and penalties of $1,000 per offense (sign) up to $1 million in fines. I was required to retain and pay for a criminal defense attorney in order to resolve the criminal investigation.

13.     In regard to my statements that Trump University engaged in "neurolinguistic programming and high pressure sales tactics based on the psychology of scarcity" (*id.* at 15), I explained in my letter to Bank of America that they used a "'they must chose you' scarcity sales tactic . . . designed to make you feel once you are selected that you are one of the few chosen ones and so unbelievably fortunate." *Id.* at 10. I also explained that these statements were based on the high pressure sales tactics Trump University used "to get observers to become participants in their program," including telling students "to raise their credit limits for real estate transactions only to then tell the attendants to use that same credit limit to purchase their program as well as having representatives review attendants' financial statements to assess their investment capabilities, for the Trump University program, of course." *Id.* at 15. I stated that my final conclusion was that these were "unethical tactics" (*id.*), and that there was a "gargantuan amount of misleading, fraudulent, and predatory behavior taking place that suggests legal cause for action." *Id.*

14.     In my letter to the BBB (*id.* at 26-32), I was unable to find the exact quote cited by Trump University in its Counterclaim that "Trump University engaged in 'blatant lies' when it

1   represented that it provided 'mentoring and coaching sessions.'" Counterclaim, ¶23(a). However, I

2   did explain that when "Paul Reisner from Trump called to ask about my satisfaction . . . I

3   complained yet again." *Id.* at 29-30. I also stated that Paul Reisner "told me that there were no other

4   unhappy students," which I know for a fact is a blatant lie because there was "rampant dissatisfaction

5   amongst their students at the seminar." *Id.* at 30.

6       15.    The only other reference I could find to a "blatant lie" was on the following page of

7   the letter. *Id.* at 31. I explain that while Trump University claimed I had a coaching session with

8   Troy Peterson at the Wealth Summit retreat, valued at $1,500, this was a "blatant lie[]" because "I

9   had only one 5-minute conversation with Troy Petersen" at that retreat. *Id.*

10      16.    I was also unable to find the exact quote in my letter to the BBB cited by Trump

11  University in its Counterclaim that "Trump University used 'brainwashing tactics' to manipulate

12  everyone' to lie about their training and experiences.'" Counterclaim, ¶23(c). However, in my letter

13  to the BBB, I explained my opinion that Trump University engaged in brainwashing as follows: "Of

14  course, the main speaker Omar used again group-think conditioning/brainwashing where they have

15  you do cheers and use tactics of making those feel shunned that do not go ahead with the herd. . . .

16  In any regard, Trump's use of brainwashing is downright manipulative as everyone feels pumped

17  when they leave the events only to later realize they have once again been let down." Ex. A at 31.

18      17.    My statement that Trump University engaged in "fraudulent and misleading tactics"

19  (*id.*), is based on my opinions set forth in my letter to the BBB that "Trump University

20  representatives misled me consistently, and did not provide what I signed up for." *Id.* at 27. Trump

21  University promised me an ongoing mentorship for one year, but after the three-day mentorship,

22  both my mentors (Rick McNally and Mike Kasper) disappeared other than a couple of short two

23  minute phone calls. *Id.* at 28. The seminars did not provide the practical information promised, but

24  only insubstantial, general information, not the specific contracts and numbers which were essential.

25  *Id.* The Trump mentors also recommended deals in which they had conflicts of interest and in which

26  I was misquoted comps. *Id.*

27      I declare under penalty of perjury under the laws of the State of California that the foregoing
    is true and correct. Executed this 26th day of July, 2010, at _Corona Del Mar_, California.

28

                                        TARLA MAKAEFF

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 26, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 26, 2010.

<u>s/ Amber L. Eck</u>
AMBER L. ECK

ZELDES & HAEGGQUIST, LLP
625 West Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

E-mail:ambere@zhlaw.com

## Mailing Information for a Case 3:10-cv-00940-IEG -WVG

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paula M. Roach**
  proach@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Keith Schneider**
  dks@yslaw.com,dscardino@reedscardino.com,ewb@yslaw.com,mlokey@reedscardino.com,efb@yslaw.com,jjohnson@reedscardino.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)