1  David K. Schneider (CSB 139288)
   YUNKER & SCHNEIDER
2  655 West Broadway, Suite 1400
   San Diego, California 92101
3  Telephone:  (619) 233-5500
   Facsimile:   (619) 233-5535
4  Email:  dks@yslaw.com

5  Attorneys for Defendant and Counterclaimant TRUMP UNIVERSITY, LLC

6

7

8                    **UNITED STATES DISTRICT COURT**

9                **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10 | TARLA MAKAEFF, BRANDON           ) | Case No. 10 CV 0940 IEG (WVG)
   | KELLER, ED OBERKROM, PATRICIA    ) |
11 | MURPHY and SHERI WINKELMANN      ) |
   | on Behalf of Themselves and All Others ) | SURREPLY IN OPPOSITION TO
12 | Similarly Situated,               ) | PLAINTIFF'S MOTION TO STRIKE
   |                                   ) | DEFENDANT'S COUNTERCLAIM
13 |         Plaintiffs,               ) |
   |                                   ) |
14 | v.                                ) | DATE:  October 4, 2010
   |                                   ) | TIME:  9:00 a.m.
15 | TRUMP UNIVERSITY, LLC, (aka      ) | CTRM:  1
   | Trump Entrepreneur Initiative) a New ) | JUDGE: Hon. Irma E. Gonzalez
16 | York Limited Liability Company, and ) |
   | DOES 1 through 50, inclusive,    ) |
17 |                                   ) |
   |         Defendants.               ) |
18 | _____ ) |
   |                                   ) |
19 | AND ALL RELATED COUNTERCLAIMS.    ) |
   | _____ ) |
20

Defendant and Counterclaimant Trump University, LLC hereby submits this Surreply, as permitted by this Court in its July 30, 2010 Order. This Surreply will focus primarily on two issues: (1) the complete lack of evidence to meet Makaeff's burden of proof on this Motion, notwithstanding her late-submitted Declaration; and (2) the insufficiency of the "evidence" recently submitted by Makaeff in her Reply Declaration.

A.   **Makaeff Failed to Offer Any Evidence to Satisfy Her Burden Under 425.16(e)**

It is Makaeff's burden on this Motion to prove that her defamatory statements were protected speech under California Civil Code section 425.16(e). She has failed to meet this burden.

First, Makaeff seems to concede, as she must, that she cannot meet the first two prongs of the anti-SLAPP statute as her defamatory statements in issue were not made in any type of governmental proceeding. Second, Makaeff twice represents to this Court (Reply, p. 2, l. 9 and p. 5, l. 3) that some of her defamatory statements were **not** made in a public forum, but rather in "private" letters to her bank and the Better Business Bureau. Because these letters were private, she cannot satisfy the third prong of Section 425.16(e) either.

Makaeff's final chance to establish that her defamatory statements are protected by section 425.16(e) is for Makaeff to prove, by the submission of admissible <u>evidence</u>, that her statements were made on a matter of public controversy. Remarkably, neither plaintiff's moving papers, nor her Reply nor even her latest Response offered any <u>evidence</u> on the issue. None. Putting aside for a moment whether such evidence would even be admissible, **Makaeff failed to submit a single document, article, declaration or expert opinion on the issue.** She has completely ignored — and thus failed to meet — her burden on this Motion. The Motion must be denied.

To meet the fourth prong of section 425.16(e), the party bringing the special Motion to Strike must <u>prove</u> that the subject matter of the defamatory statement was a matter of public interest. It is not enough that the matter be of some interest to the general public; there must exist a public controversy. *Vegod Corp. v. American Broadcasting Companies, Inc.*, 25 Cal.3d 763, 769 (1979); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). Under the public controversy test, there must be an active debate, and the defamed party must have attempted to influence the outcome. *Hutchinson v. Proxmire*, 443 U.S. 111, 134 (1979); *Carter v. Bonds*, 135 Cal.App.4th 328, 352 (2005). A

1  public controversy cannot be created simply by media coverage, notoriety or even newsworthiness.
2  *Nygard v. UUSI-Kettula*, 159 Cal.App.4th 1027, 1040 (2008).  Here, plaintiff failed to even <u>offer</u>
3  any evidence — let alone <u>prove</u> — any public controversy.

4        Makaeff certainly **argues** that the issue is of interest to "thousands of people," and **argues**
5  that web sites feature anonymous and unverifiable "complaints" about Trump University.  Yet
6  Makaeff has not submitted a single piece of admissible <u>evidence</u> to prove her claim of thousands of
7  dissatisfied customers, or even a handful for that matter.  Makaeff also fails to offer any evidence
8  that there is "an active debate" or that Trump University "attempted to influence the outcome."
9  Even if Makaeff could somehow overcome the hearsay and reliability objections to the alleged
10 anonymous web postings (some of which she has conceded making herself!), she has simply failed
11 to produce the evidence.  In fact, all of Makaeff's "citations" to "evidence" refer to her **unverified**
12 complaint, which obviously is not evidence and cannot carry her burden.

13       Further, Makaeff did not produce any evidence to controvert the plain fact that her letters
14 were directed at getting her money back, not at protecting other consumers.  However Makaeff now
15 wants to characterize her current lawsuit, the fact remains that the letters at issue in this Countersuit
16 were written with a single purpose-<u>stated by Makaeff</u> at the time she wrote them:  the return of her
17 money (*see* Exhibit A, p. 11).  This is not a matter of public controversy.

18       Makaeff's complete failure to produce any competent evidence that her speech is protected
19 by section 425.16(e) should end this Court's inquiry.  From an abundance of caution, however,
20 Trump University will also address Makaeff's failure to produce evidence to counter Trump
21 University's evidence that it is likely to prevail on the merits of this case.

22 **B.**    **<u>Makaeff Offered No Evidence That Trump University LLC is a Public Figure or Limited Public Figure</u>**
23

24       Makaeff has failed to present even a single piece of <u>evidence</u> to support her claim that Trump
25 University is a limited public figure.  Even the legal authority cited by Makaeff stands for the exact
26 opposite position advanced by her.

27       Makaeff argues that Trump University is a limited public figure by mere association with
28 Donald Trump, citing the Connecticut decision of *Jensen v. Times Mirror Comp.*, 634 F.Supp. 304

1  (D. Conn. 1986). The *Jensen* Court actually held that one does <u>not</u> become a limited public figure
2  merely because of a relationship to a public figure. *Id*. at 311. In that case, plaintiff's roommate was
3  a notorious criminal living underground until she was arrested for robbing an armored car. The
4  Times Mirror published stories suggesting plaintiff was aware of her roommate's true identity at
5  least a year before the armored car robbery. Plaintiff sued for defamation and the Times argued that
6  plaintiff was a public figure.

7      The *Jensen* Court found that plaintiff was a limited public figure — not because of her
8  association with her roommate, but because she intentionally injected herself into the controversy by
9  granting media interviews related to her roommate and agreeing to a movie on the subject. The
10 Court emphasized that "a positive course of action is required before one can be deemed to have
11 brought themselves into the public focus sufficient to be a public figure." *Id*. at 312. The Court
12 further emphasized that the party must "inject" itself into the controversy before being found to be a
13 limited public figure. In this case, Trump University has taken no positive action to inject itself into
14 this controversy, and Makaeff has presented no <u>evidence</u> to the contrary.

15 **C.**     **Makaeff's Latest Declaration Cannot Convert Her Statements of Fact to Opinions**

16     The only evidence submitted by Makaeff on her Special Motion to Strike are two personal
17 declarations, both **solely** devoted to her argument that her statements were statements of opinion, not
18 fact. As a matter of law, however, Makaeff's statements are actionable.

19     Under California law, a statement of fact — even couched as an opinion — is still actionable
20 if a reasonable person could think that a statement is a provable statement of fact. *Manufactured*
21 *Home Communities v. County of San Diego*, 544 F.3d 959, 963 (9th Cir. 2008). If a statement is
22 arguably fact or opinion, the party alleging the defamation has a right to have that question decided
23 by a jury. *Rodriguez v. Panayiotou*, 314 F.3d 979, 985-86 (9th Cir. 2002)

24     The authority Makaeff cites to argue that her statements are non-actionable is *USA*
25 *Technologies v. Doe*, 2010 WL 1980242. That case applied **Pennsylvania** law when it found that
26 calling someone a liar is not actionable defamation. Makaeff completely ignores established Ninth
27 Circuit precedent which, applying **California** law, holds the exact opposite: calling someone a liar
28 / / /

1  can be actionable. *Manufactured Home Communties,* 544 F.3d at 963-64.  Here, Makaeff calls
2  Trump University and its representatives liars at least four times (Exhibit A, pp. 10, 19, 25 & 32).

3        Makaeff's defamation did not end there, however.  While she makes an ex post facto attempt
4  to describe her very specific allegations of criminal and unethical behavior as "opinions," her very
5  words belie her.  For example, while Makaeff claims to have said that Trump University's classes
6  were "<u>like</u> brainwashing," she also very specifically stated "the main speaker Omar again used
7  group-think conditioning/brainwashing . . . Trump's use of brainwashing is downright
8  manipulative." (Exhibit A, pp. 18 and 31)  Her other defamatory statements include:  Trump
9  University engaged in "illegal predatory high pressure closing tactics" (Exhibit A, p. 8); Trump
10 University engaged in "illegal bait and switch" (Exhibit A, p. 9); Trump University engaged in the
11 "unsolicited taking of personal credit" ( Exhibit A, p. 11); Trump University engaged in "trickery
12 into opening credit cards" (Exhibit A, p. 11); Trump University engaged in "this and other felonious
13 teachings (Exhibit A. p. 15); [Trump University Representative] told me that there were no other
14 unhappy students which I know for a fact is a blatant lie." (Exhibit A, p. 5);  "These are blatant lies."
15 (Exhibit A, p. 6, ¶ 6).  Makaeff herself states that these are not opinions when she states "she knows
16 for a fact . . ."

17       Makaeff's "explanations" for her defamatory comments do not save her either.  "Even if the
18 speaker states the facts upon which he bases his opinions, if those facts are either incorrect or
19 incomplete, or his assessment of them is erroneous, the statement may still imply a false accusation
20 of fact."  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990).

21       Under established California law, and as recognized by the Ninth Circuit, these very specific
22 statements are provable or disprovable and thus are actionable.  Makaeff's eleventh hour claims of
23 "opinion" notwithstanding, Trump University has presented evidence that the statements are
24 demonstrably false.

25       Makaeff argues that declarations are insufficient to establish prima facie evidence of
26 defamation or falsehood of statements, citing *Nygard v. UUSI-Kettula*, 159 Cal.App.4th 1054.  The
27 *Nygard* Court actually stated that the particular declarations offered by co-workers were insufficient
28 because the declarants had no personal knowledge of the actual incident.  Here, Sexton's declaration

establishes that: (1) he has been the President of Trump University since the company began in about 2004; (2) he is familiar with the business practices and procedures of Trump University, including the day-to-day operations, financial condition of the company, instructional workshops, mentorships, field training and is frequent contact with Trump University instructors, employees and independent contractors who provide services for Trump University; (3) he is familiar with the claims and complaints or refund requests made to Trump University and oversees any investigation of those by Trump University as well; (4) he has personal knowledge of the defamatory statements and investigated and researched them all; and (5) the statements were false.

For example, Mr. Sexton provided uncontroverted evidence that Trump University does not obtain credit information of its attendees illegally or from third parties. Similarly, Mr. Sexton provided uncontroverted evidence that Trump University has never stolen the identity of its attendees nor committed identity theft. Similarly, Mr. Sexton provided uncontroverted testimony that, despite claims by Makaeff that Trump University has engaged in felonious criminal behavior, Trump University has not and has never been charged or even cited for any such crimes. Trump University has certainly provided sufficient evidence for the issue to be determined by a trier of fact.

**D.  Makaeff's Defamatory Statements To Her Bank, To BBB, And Postings On The Internet Had Absolutely Nothing To Do With Her Litigation**

Makaeff curiously argues that Trump University "does not dispute" that her statements were made in anticipation of litigation. Trump University provided legal authority and argument on pages 19, 20 and 21 of its Opposition specifically disputing that there was any "logical connection" between her letters and Internet postings and her lawsuit.

As the Court will recall, in April 2009, after attending every program Trump University offered, Makaeff demanded a full refund from Trump University, which she claims is $60,000. Makaeff now argues that "if she had been able to resolve those issues through her communications . . . with her bank, she would not have had to resort to litigation." Despite being completely illogical, there certainly is no <u>evidence</u> to support the position that a $5,100 credit from her bank would have resolved her $60,000 dispute with Trump University. Her bank letter clearly states that she requires to "be made whole" with a total refund, which the bank could never accomplish (Exhibit A, p. 20).

She also does not explain how accusations of crimes (which did not even affect her) to an unrelated third party were in furtherance of her litigation.

To the extent Makaeff is suggesting that Trump University does not dispute that the litigation privilege satisfies her burden under 425.16, she is simply wrong. Trump University obviously disputes that Plaintiff can satisfy any of the four prongs of the anti-SLAPP statute, including the first two. (See Opposition, pp. 9-10, section B.) Her statements had nothing to do with any legislative, executive or judicial proceedings, and she cannot now cure that defect by a bootstrap argument that her letters to her bank, the BBB and Internet postings were "before a judicial proceeding." Makaeff has offered no evidence that the BBB or bank are provided the protections under the anti-SLAPP statutes.

Makaeff failed to meet her initial burden even for the protection of the anti-SLAPP statute to apply. If she could ever overcome that failure, her statements still are not afforded protection under the litigation privilege, since they were made neither in anticipation of litigation nor had any connection to her lawsuit, which was filed more than seven months later. The cases cited by Plaintiff, which extend the litigation privilege to pre-litigation communications, involve letters from counsel (*Dove Auto v. Rosenfeld*, 47 Cal.App.4th 777 (1996)), settlement demand letters (*Blanchard v. DirectTV, Inc.,* 123 Cal.App.4th 903 (2004)) and legal filings such as a lis pendens (*Alberton v. Raboff*, 46 Cal.2d 375 (1956)). Makaeff has provided no evidence that a declarant's letter to an unrelated third party — such as a bank — falls within the litigation privilege. If Makaeff's argument prevails, it would give any disgruntled person carte blanche to make false and defamatory statements, without consequences, for the entire time (i.e., years) before filing a lawsuit.

**E.   Makaeff's New Exhibit Is Further Evidence That She Made Her Defamatory Statements With Actual Malice**

As discussed above, Trump University is not a public figure nor a limited public figure, so Trump University's burden is simply to show that Makaeff's statements have a natural tendency to cause damages. "Almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation" is considered defamation *per se*. *Bates v. Campbell*, 213 Cal. 438, 441 (1931). Language that charges a person with a crime is

1  considered defamation *per se* and does not require a showing of actual damages.  *Weinberg v. Feisel*,
2  110 Cal.App.4th 1122, 1136 (2003).  Nonetheless, Trump University has presented <u>uncontroverted</u>
3  evidence of actual damages.  Sexton Declaration, ¶¶21 & 22.

4      Makaeff's new exhibit (4/13/08 email) also confirms that she could not have had any
5  reasonable belief in the veracity of her criminal accusations at the time she made them.  In April
6  2009, <u>after</u> she had completed all of her paid-for Trump University programs, she requested that
7  Trump University refund her money.  In her email, she writes that she "did not receive the value that
8  I thought I would for such a large expenditure," and that she "was under the impression that my
9  mentors would cover more of the contracts and numbers" and "I went ahead and purchased another
10 $10,000 phone package from Trump Institute . . . because I really wanted to get the knowledge I
11 didn't the first time around."  Conspicuously missing from her letter is any suggestion — let alone
12 accusation — of any criminal conduct or behavior.  Only after Trump University refused to refund
13 her money did Makaeff begin accusing Trump University of crimes, including "identity theft," grand
14 larceny, "taking of personal credit," "trickery into opening credit cards" and "other felonious
15 teachings."  These criminal accusations were all consistent with her stated purpose that she was
16 "willing to go to whatever lengths necessary to obtain [her] money back."

## CONCLUSION

18     Makaeff's Special Motion to Strike fails on both prongs before this Court.  Makaeff has
19 completely failed to submit any competent evidence to show her defamatory statements are
20 protected by section 435.16(e).  Additionally, Makaeff has failed to refute the evidence put forth by
21 Trump University, showing Trump University's likelihood of prevailing on the merits.  Makaeff's
22 Motion must therefore be denied.

23 Dated: August 2, 2010

Respectfully submitted,

YUNKER & SCHNEIDER

By:  s/ David K. Schneider
    Attorneys for Defendant and Counterclaimant
    TRUMP UNIVERSITY, LLC
    E-mail: dks@yslaw.com