UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TARLA MAKAEFF, on Behalf of Herself and All Others Similarly Situated,

Plaintiff,

vs.

TRUMP UNIVERSITY, LLC, a New York Limited Liability Company, and DOES 1 through 50, inclusive,

Defendants.

CASE NO. 10-CV-940-IEG (WVG)

**ORDER DENYING PLAINTIFF'S MOTION TO STRIKE COUNTERCLAIM**

[Doc. No. 14]

Presently before the Court is Tarla Makaeff's motion to strike Trump University's counterclaim against her for defamation, pursuant to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. Trump University filed an opposition, and Makaeff filed a reply. Trump University also filed a surreply with leave of the Court. Based on oral argument on August 2, 2010, and all the parties' arguments, the Court DENIES the motion to strike.

**BACKGROUND**

This case stems from Makaeff's participation in Trump University's real estate investment seminars. The following facts are drawn from Trump University's counterclaim unless otherwise noted. In 2008, Makaeff attended a free seminar offered by Trump University. Makaeff then attended a $1,500 seminar, and ultimately signed up for the $35,000 "Trump Gold Elite" program.

In April 2009, after completing five programs and workshops, and after seven months in the "Trump Gold Elite" program, Makaeff wrote a letter to Trump University stating she was having financial difficulties and demanded a refund. Trump University declined, but offered her additional free mentoring services, which she accepted.

Beginning in late summer of 2009, Makaeff published alleged defamatory statements in letters to her bank and the Better Business Bureau ("BBB") and to unknown third parties on the Internet. In her letter to the bank, she requested a refund of $5,100 charged for Trump University programs. And in her letter to the BBB, Makaeff requested a refund for services for which she paid but did not receive. Specifically, Makaeff allegedly stated in these letters and on the Internet that Trump University engaged in: (1) "fraudulent business practices," (2) "deceptive business practices," (3)"illegal predatory high pressure tactics," (4) a "clear practice of personal financial information fraud," (5) "illegal bait and switch," (6) a "brainwashing scheme," (7) "outright fraud," (8) "grand larceny," (9)"identify theft," (10) "unsolicited taking of personal credit and trickery into [sic] opening credit cards without approval," (11) "fraudulent business practices utilized for illegal material gain," (12) "felonious teachings," (14) "neurolinguistic programming and high pressure sales tactics based on the psychology of scarcity," (15) "unethical tactics," (16) a "gargantuan amount of misleading, fraudulent, and predatory behavior," (17) "blatant lies" when it represented that it provided "mentoring and coaching sessions," (18) "fraudulent misleading tactics," and (19) "brainwashing tactics" to manipulate everyone to lie about their training and experiences. (Counterclaim ¶¶ 22-23.) Makaeff also allegedly stated Trump University's teachings are "outright criminal" and its business practices are "criminal." (Counterclaim ¶¶ 22-23.)

On April 30, 2010, Makaeff filed a class action complaint against Trump University, alleging it engaged in deceptive business practices. (Doc. No. 1.) On May 26, 2010, Trump University filed a counterclaim against Makaeff for defamation per se. (Doc. No. 4.) Makaeff later filed an amended complaint, adding four additional plaintiffs. (Doc. No. 10.)

Makaeff brings this anti-SLAPP motion to strike the counterclaim, arguing that Trump University's motive in filing the counterclaim is to retaliate against her for her exercise of free speech and to intimidate her into dropping her lawsuit. (Doc. No. 14.)

**LEGAL STANDARD**

A Strategic Lawsuit Against Public Participation ("SLAPP") is a civil action "in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1109 (9th Cir. 2003). California's anti-SLAPP statute allows defendant to move to strike the plaintiff's cause of action if that cause of action arises from protected activity.[1] See Cal. Code Civ. P. § 425.16(b)(1). The statute was "enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Vess, 317 F.3d at 1109. The preamble to Section 425.16 states that its provisions "shall be construed broadly" to safeguard "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Nygard, Inc. v. Uusi-Kerttula, 72 Cal. Rptr. 3d 210, 218 (Ct. App. 2008).

An anti-SLAPP motion to strike requires a two-step inquiry. First, the defendant must make a prima facie showing that the plaintiff's suit arises from the moving party's protected activity - i.e, an act in furtherance of that party's rights of petition or free speech. Id. at 1110. If the defendant meets its initial burden, the court proceeds to the second step and asks whether the plaintiff can establish by a "reasonable probability" that they will succeed on the merits of the challenged claims. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 971 (9th Cir. 1999); see also Cal. Code Civ. P. § 425.16(b). In order to establish the requisite probability, the plaintiff need only have "stated and substantiated a legally sufficient claim." Greka Integrated, Inc. v. Lowrey, 133 Cal. App. 4th 1572, 1580 (Ct. App. 2005). This requires the plaintiff to "make a 'prima facie showing of facts which would, if credited, support a judgment in his favor.'" Id. (quoting Conroy v. Spitzer, 70 Cal. App. 4th 1446, 1451 (Ct. App. 1999)).

[1] The anti-SLAPP statute explicitly applies to complaints and counter-complaints. See Jarrow Formulas, Inc. v. LaMarche, 3 Cal. Rptr. 3d 636 (Cal. 2003); Cal. Civ. P. Code § 425.16(h).

In making its determination, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Code Civ. P. § 425.16(b).

**DISCUSSION**

As explained below, although Makaeff has satisfied her initial burden of proving the counterclaim for defamation arises from protected activity, Trump University has met its burden of establishing by a reasonable probability that it will succeed on the merits of the claim.

**I. Protected Activity Under Section 425.16**

The Court must first determine whether Makaeff has made a prima facie showing that the Trump University's counterclaim arises from her protected activity. The anti-SLAPP statute explicitly defines four categories of acts that are protected. Cal. Code Civ. P. § 425.16(e). Most relevant here is subdivision 425.16(e)(4), which protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Id. § 425.16(e)(4).

An issue "'of public interest' within the meaning of the statute is any issue in which the public is interested." Nygard, Inc. v. Uusi-Kerttula, 159 Cal. App. 4th 1027, 1042 (Ct. App. 2008) (emphasis in original). "In other words, the issues need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes interest." Id. "The definition of 'public interest' has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." Damon v. Ocean Hills Journalism Club, 102 Cal. Rptr. 2d 205, 212 (Ct. App. 2000). Although the case law does not define the precise boundaries of "public issue," the most commonly articulated definitions of the term focus on: (1) a person or entity in the public eye; (2) conduct that could directly affect large numbers of people beyond the direct participants; and (3) a topic of widespread public interest. Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO, 105 Cal. App. 4th 913, 924 (Ct. App. 2003) (extensively discussing cases defining "public issue").

Here, Makaeff's statements about Trump University's alleged deceptive business practices are in connection with an issue of public interest because the statements concern consumer protection information. See Carver v. Bonds, 37 Cal. Rptr. 3d 480 (Ct. App. 2005) (holding a newspaper article was protected, where article warned readers not to rely on the podiatrist's ostensible experience and told a "cautionary tale" of the podiatrist's exaggerating his experience to market his practice); Wilbanks v. Wolk,17 Cal. Rptr. 3d 497 (Ct. App. 2004) (holding statements on website were protected, where the information provided was "in the nature of consumer protection information" and was "a warning not to use plaintiffs' services"). Here, Makaeff's statements were made, at least in part, to warn consumers of Trump University's alleged deceptive business practices. Makaeff submits her declaration, in which she states she "posted [her] opinion of Trump University anonymously on a consumer message board to alert other consumers of my opinions and experience with Trump University" and "to inform other consumers of my opinion that Trump University did not deliver what it promised."[2] (Declaration of Tarla Makaeff in Supp. of Mot. to Strike ¶¶ 3,7.)

In addition, Trump University's business practices could possibly affect a large number of people. Makaeff contends the BBB has received at least 70 complaints of deceptive practices from consumers nationwide, and Attorneys General in six states have also received numerous complaints. (FAC ¶¶ 9, 55, 87.) Trump University argues Makaeff presents no evidence of the number of people affected by this issue, claiming it is merely a small, privately-held company. As Makaeff points out, however, Trump University itself asserts "thousands" of people have attended its seminars and programs. (Trump University's Mot. to Dismiss at 1:8-10.)[3]

[2]Makaeff argues Trump University's opposition shows that the allegations are limited to the letters to her bank and the BBB, and the statements on the Internet are not at issue. If true, it is not clear that Makaeff's letters to the bank and the BBB concern consumer protection information. The letters themselves suggest Makaeff's sole motivation in writing these letters was to obtain a refund. Regardless, even if the Court finds Makaeff's statements protected, Makaeff's motion to strike fails because Trump University can prevail on the second prong of the anti-SLAPP test.

[3]Trump University's additional argument that Makaeff's statements constitute extortionate speech, and is therefore not protected speech, lacks merit. In the case Trump University relies on, Flatley v. Mauro, 39 Cal. 4th 299, 320 (Cal. 2006), the court expressly limited its holding to "the specific and extreme circumstances" of that case, finding criminal extortion as a matter of law. Id. at 332 n.16.

Because the Court finds Makaeff has satisfied her initial burden of making a prima facie showing the defamation claim arose out of acts in furtherance of her rights of petition or free speech under subdivision 425.16(e)(4), the Court does not address the other three subdivisions listed in Section 425.16.

**II. Probability of Success on the Merits**

The Court proceeds to the second step and asks whether Trump University can establish by a reasonable probability that it will succeed on the merits of its defamation claim. Defamation involves (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and that (5) has a natural tendency to injure or cause special damage. Taus v. Loftus, 54 Cal. Rptr. 3d 775, 804 (Cal. 2007); Cal. Civ. Code §§ 45-47. Defamation may be effected by either slander, or as in this case, libel. Id. § 44. Except for the element of publication, all the elements of defamation are in dispute in this case

**A. Public Figure**

Because public figures must prove by clear and convincing evidence that the allegedly defamatory statement was made with actual malice, the first issue is whether Trump University is a public figure. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, (1964); Curtis Pub. Co. v. Butts, 388 U.S. 130, 133-34 (1967). There are two types of public figures: (1) "all purpose" public figures, who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes"; and (2) "limited purpose" public figures, who have "voluntarily inject[ed] [themself] or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Gertz v. Robert Welch, Inc., 418 U.S. 323, 345, 351 (1974). "For the most part those who attain [public figure] status have assumed roles of special prominence in the affairs of society." Id. at 345.

The Court finds that Trump University is not a public figure. Trump University has assumed no role of "special prominence in the affairs of society." See id. at 351. Makaeff argues Trump University is an "all purpose" public figure because of its strong association with Donald Trump, a celebrity real estate entrepreneur. Donald Trump is the Chairman of Trump University

and featured prominently in its advertising. However, although Donald Trump himself may be an "all purpose" public figure, Makaeff points to no case supporting its argument that association with an "all purpose" public figure *by itself* confers public figure status. There is no showing that Trump University, as opposed to Donald Trump, occupies a position of such "persuasive power and influence" that it should be deemed a public figure for all purposes. See id. at 345. Trump University is a privately-held company with 39 employees, which has not sought the public's attention other than in advertising its services.

Nor is Trump University a "limited purpose" public figure. The elements that must be present in order to characterize a plaintiff as a limited purpose public figure are: (1) there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants; (2) the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy. Gilbert v. Sykes, 53 Cal. Rptr. 3d 752 (Ct. App. 2007). Here, even assuming a public controversy exists concerning Trump University's alleged deceptive business practices, Trump University's involvement in this controversy was not voluntary. Trump University did not voluntary inject itself into the controversy, or engage the public's attention in order to influence resolution of the controversy. See Wolston v. Reader's Digest Ass'n, Inc., 443 U.S. 157, 167 (1979) (holding plaintiff was not a public figure where he was dragged unwillingly into the controversy, never discussed the matter with the press, and did not voluntarily inject himself into the controversy); Time, Inc. v. Firestone, 424 U.S. 448 (1976) (the actions of a wife of a prominent citizen in filing for divorce and during divorce proceedings, where the proceedings attracted media publicity, were not "voluntary" so as to make her a public figure).

Makaeff argues Trump University has thrust itself in the public eye through its advertising. But as Trump University argues, aggressive advertising alone does not convert a company into a public figure. See Vegod Corp. v. Am. Broad. Cos., 25 Cal. 3d 763, 769 (Cal. 1979). In Vegod, the California Court of Appeal held that plaintiffs, corporations in the business of closing out

stores that are going out of business, were not public figures. The statements at issue were made by a local television news reporter, who broadcast a story that the plaintiffs were deceiving the public in conducting a close-out sale and promising bargains that were really not bargains at all. The California Supreme Court held plaintiffs were not required to prove actual malice to prevail on their defamation claim: "Criticism of commercial conduct does not deserve the special protection of the actual malice test. Balancing one individual's limited First Amendment interest against another's reputation interest, we conclude that a person in the business world advertising his wares does not necessarily become part of an existing public controversy." Id. at 770.

Accordingly, the Court finds Trump University is not a public figure. Because Trump University is not a public figure, it need not prove actual malice to prevail on its defamation claim.

**B. Statements of Fact**

As another threshold matter, the Court must determine whether Makaeff's alleged defamatory statements are actionable statements of fact. "Under California law, recovery for defamation may be had only for false statements of fact. Statements of opinion are not actionable." Info. Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 783 (9th Cir. 1980). Whether a statement is of fact or opinion must be determined by the context in which the statement is made. Id. at 784. This determination is a question of law. Gregory v. McDonnell Douglas Corp., 131 Cal. Rptr. 641 (Cal. 1976). "[B]ut if the challenged statement or statements are 'reasonably susceptible of an interpretation which implies a provably false assertion of fact,' then they may be considered by the jury 'to determine whether such an interpretation was in fact conveyed.'" Kahn v. Bower, 284 Cal. Rptr. 244, 250 (Ct. App. 1991).

Here, Trump University alleges 21 different defamatory statements. While certain statements at issue are nonactionable opinions, hyperbole and rhetoric, at least some of the statements are actionable statements of fact. In particular, Makaeff allegedly stated that Trump University engaged in (1) a "clear practice of personal financial information fraud," (2) "grand larceny," (3)"identity theft," (4)"unsolicited taking of personal credit and trickery into [sic] opening credit cards without approval," and (5) "blatant lies" when it represented that it provided

"mentoring and coaching sessions." These statements are at least reasonably susceptible of an interpretation which implies a statement of fact. It cannot be said as a matter of law that no reasonable person could construe them as provably false.[4]

**C. Defamatory Character of Statement**

Next, the Court must determine whether Makaeff's statements were libelous per se. Where statements are libelous per se, "damage to plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages." Barnes-Hind, Inc. v. Superior Court, 226 Cal. Rptr. 354, 356 (Ct. App. 1986).

Defamatory language is libelous per se where it is "defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civil Code § 45a. "Perhaps the clearest example of libel per se is an accusation of crime." Barnes-Hind, Inc., 226 Cal. Rptr. at 358. However, the statement need not charge the commission of a crime: it is sufficient to be libelous per se if it reflects on the person's integrity as to bring him or her into disrepute. Maher v. Devlin, 203 Cal. 270, 276 (Cal. 1928), *abrogated on other grounds by* Lundquist v. Reusser, 7 31 Cal. Rptr. 2d 776, 788 (Cal. 1994).

Here, Makaeff accuses Trump University of crimes including "grand larceny" and "identify theft." These statements are libelous per se. Makaeff also accuses Trump University of engaging in the "unsolicited taking of personal credit and trickery into [sic] opening credit cards without approval" and "blatant lies." These statements are not ambiguous or innocent on their face, and do not require extrinsic evidence to establish a defamatory meaning. Such statements by their very nature would likely have the tendency to injure and cause special damage.

Therefore, at least some of the statements are actionable without proof of special damages.

**D. Falsity**

At a minimum, Trump University has made a prima facie showing that the following

---

[4]The Court need not parse out which of the 21 statements are actionable. "[O]nce a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff has established that its cause of action has some merit and the entire cause of action stands." Mann v. Quality Old Time Serv., Inc., 15 Cal. Rptr. 3d 215, 223 (Ct. App. 2004). "Thus, a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit." Id.

statements are false: the company engages in (1) the "unsolicited taking of personal credit and trickery into [sic] opening credit cards without approval," (2) "identify theft," and (3) "grand larceny."

Trump University submits the declaration of its president, Michael Sexton, who has personal knowledge as to the company's business practices. (Declaration of Michael Sexton in Supp. of Opp'n ("Sexton Decl.") ¶ 1.) Sexton states Trump University has never stolen the identity of an attendee or engaged in identity theft. (Sexton Decl. ¶ 19.) Nor has Trump University has never been charged with or convicted of any crime, including identity theft and grand larceny. (Sexton Decl. ¶ 19.) In addition, Sexton is not aware of any instance in which a Trump University employee, contractor, or representative opened a credit card for any of its attendees without approval or obtained an attendee's credit information in an improper or illegal manner. (Sexton Decl. ¶¶ 17-18.) The company does not obtain attendees' credit information from third parties. (Sexton Decl. ¶ 18.) Finally, the company's policy and practice is to require authorization before placing a charge on any attendee's credit card. (Sexton Decl. ¶ 17.)

As to these particular statements, Makaeff does not present any evidence to the contrary. Makaeff submits a declaration stating she "believe[s] that the opinions and statements [she] expressed are true." (Decl. of Makaeff in Supp. of Motion to Strike ¶ 6.) This is insufficient to defeat Trump University's prima facie showing of falsity. Makaeff also submits a supplemental declaration, in which she states the statements regarding "grand larceny" and "identity theft" were directed at other entities, not Trump Institute. (Suppl. Decl. of Makaeff in Supp. of Motion to Strike ("Suppl. Decl.") ¶ 10.) This argument has no merit. In Makaeff's letter to her bank, she states she is protected by state and federal laws against "Fraud, Grand Larceny, and Identity Theft by Trump University/Profit Publishing Group." (Opp'n, Ex. A, at 10.)

Therefore, Trump University has made a prima facie showing that at least some of the alleged defamatory statements are false.

**<u>E.</u>** **<u>Litigation Privilege</u>**

The final issue is whether Makaeff's statements are protected by California's litigation

privilege, California Civil Code § 47(b). This privilege protects any "publication or broadcast" made in a judicial proceeding or "in the initiation or course of any other proceeding authorized by law." Cal. Civ. Code § 47(b). The purpose of this privilege is to afford litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." Edwards v. Centex Real Estate Corp., 53 Cal. App. 4th 15, 29 (Ct. App. 1997).

The litigation privilege has been extended to reach any communications and all torts, except for malicious prosecution. Silberg v. Anderson, 50 Cal. 3d 205, 212 (Cal. 1990). The requirements are that the communication must be (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) have some connection or logical relation to the action. Id. Where a party asserts the litigation privilege in the prelitigation context, "the privileged communication must have some relation to an imminent lawsuit or judicial proceeding which is actually contemplated seriously and in good faith to resolve a dispute, and not simply as a tactical ploy to negotiate a bargain." Edwards, 53 Cal. App. 4th at 36.

Makaeff argues her statements are protected because she made them in anticipation of litigation and in an effort to resolve her dispute with Trump University. The Court disagrees. There is no showing that at the time Makaeff made these statements, litigation was "no longer a mere possibility, but had instead ripened into a *proposed proceeding*." See Edwards v. Centex Real Estate Corp., 53 Cal. App. 4th 15, 39 (Ct. App. 1997) (emphasis is original); see also Rothman v. Jackson, 49 Cal. App. 4th 1134, 1146 (Ct. App. 1996) (explaining that the privilege does not apply to "public mudslinging" and the mere airing of disputes outside the courts). Rather, the evidence shows litigation was only a possibility at that time, because Makaeff was attempting in obtain a refund in order to avoid litigation.

In addition, Makaeff's statements do not have the requisite "connection or logical relation" to her subsequent lawsuit against Trump University. Although courts have found the "connection or logical relation" test satisfied where the communication was directed towards settlement of an

anticipated lawsuit, these cases involve communications in the form of demand letters and similar communications between litigants or their attorneys. See, e.g., Passman v. Torkan, 40 Cal. Rptr. 2d 291 (Ct. App. 1995); Costa v. Superior Court, 204 Cal.Rptr. 1 (Ct. App. 1984); Izzi v. Rellas, 163 Cal. Rptr. 689 (Ct. App. 1980). As Trump University argues, statements to nonparticipants in the action are generally not privileged under Section 47. Rothman, 49 Cal. App. 4th at 1141. Finally, an analysis of the policies which underlie the litigation privilege suggest that Makaeff's statements do not have the requisite "connection or logical relation." The purposes of the litigation privilege are to ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation. Silberg v. Anderson, 50 Cal. 3d 205, 214-15 (Cal. 1990). Application of the litigation privilege in this case would not further any of these policies.

Therefore, the litigation privilege does not apply to the statements at issue.

## CONCLUSION

Makaeff has satisfied the first prong of the anti-SLAPP test, because the alleged defamatory statements at issue constitute an exercise of free speech about a public issue or issue of public interest. However, Makaeff's motion fails on the second prong. Trump University has made the requisite prima facie showing of facts which would, if credited, support a judgment in its favor. Accordingly, the Court DENIES Makaeff's motion to strike.

**IT IS SO ORDERED.**

**DATED: August 23, 2010**

Irma E. Gonzalez

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**