1  David K. Schneider (CSB 139288)
   YUNKER & SCHNEIDER
2  655 West Broadway, Suite 1400
   San Diego, California 92101
3  Telephone: (619) 233-5500
   Facsimile:  (619) 233-5535
4  Email: dks@yslaw.com

5  Attorneys for Defendant TRUMP UNIVERSITY, LLC

6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  TARLA MAKAEFF, on Behalf of Herself and All Others Similarly Situated, | Case No. 10 CV 0940 IEG (WVG) |
| 11 | |
| 12     Plaintiff, | REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2) |
| 13  v. | |
| 14  TRUMP UNIVERSITY, LLC, a New York Limited Liability Company, and DOES 1 through 50, inclusive, | |
| 15 | |
| 16     Defendant. | DATE: 9/13/10<br>TIME: 10:30 A.M.<br>CRTM: 1 |
| 17  AND ALL RELATED CROSS-ACTIONS. | JUDGE: Hon. Irma E. Gonzalez |

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................1

II. PLAINTIFFS CANNOT ESCAPE THE EDUCATIONAL MALPRACTICE BAR BECAUSE IT APPLIES TO TRUMP UNIVERSITY, AND PLAINTIFFS HAVE INDEED ALLEGED EDUCATIONAL MALPRACTICE. ..................................2

III. PLAINTIFFS' CONTRACT-RELATED CLAIMS ALSO FAIL BECAUSE THE CONTRACTED GOODS AND SERVICES WERE PROVIDED (IF THE CONTRACT WAS WRITTEN AS ALLEGED) OR THE CLAIMS ARE IMPERMISSIBLY VAGUE (IF THE CONTRACT WAS ORAL AS NEWLY ARGUED)...................................................................................................6

IV. PLAINTIFFS' FRAUD-RELATED CLAIMS ALSO FAIL BECAUSE THEY ARE BARRED BY THE DISCLAIMERS SIGNED BY PLAINTIFFS ...........................7

V. PLAINTIFFS' STATUTORY CLAIMS ARE ALSO BARRED BECAUSE THE STATUTORY REQUIREMENTS ARE NOT MET ..........................................................8

VI. PLAINTIFFS' FRAUD-RELATED CLAIMS MUST ALSO BE DISMISSED BECAUSE THE FAC DOES NOT STATE WITH PARTICULARITY THE ALLEGED MISREPRESENTATIONS ................................................................9

VII. PLAINTIFFS' CLASS CLAIMS MUST ALSO BE DISMISSED BECAUSE THEY ARE NOT PLAUSIBLE ON THEIR FACE .........................................................10

VIII. CONCLUSION..................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acciard v. Whitney*,
	2008 WL 5120901 (M. D. Fla.) ..................................................................................4

*Alcides v. Brown Institute Ltd.*,
	592 N.W.2d 468 (Minn. 1999)..............................................................................2, 4

*Ashcroft v. Iqbal,*
	129 S.Ct. 1937 (2009) ...............................................................................................10

*Blake v. Career Educ. Corp.*,
	2009 WL 2567011 *2 (E. D. Mo.)..................................................................3, 4, 5

*Chevlin v. Los Angeles College Dist.*,
	212 Cal.App.3d 382 (1989) .......................................................................................3

*Goshen v. Life Insurance Co. of New York*,
	730 N.Y.S.2d 46 (N.Y. App. Div. 2001) ................................................................9

*Harazim v. Lynam*
	267 Cal.App.2d 127 (1968) .......................................................................................4

*Jamieson v. Vetterott Educational Centers, Inc.*,
	259 F.R.D. 520 (D. Kan. 2009)...........................................................................2, 4

*Malone v. Academy of Court Reporting*
	64 Ohio App.3d 588 (1990) ......................................................................................5

*Neubrunner v. Milkey*,
	6 F.3d 666 (9th Cir. 1993) .......................................................................................10

*Peter W. v. San Francisco Unified Sch. Dist.*,
	60 Cal.App.3d 814 (1976) .....................................................................................3, 5

*Ross v. Creighton Univ.*,
	957 F.2d 410 (7th Cir. 1992) ..........................................................................4, 5, 6, 8

*Scott v. Bell Atlantic Corp.*,
	726 N.Y.S.2d 60 (N.Y. App. Div. 2001) ................................................................9

*Smith v. Alameda County Social Serv. Agency*,
	90 Cal.App.3d 929 (1979) .........................................................................................5

# TABLE OF AUTHORITIES (cont.)

**Page**

*State ex rel. Corbin v. Challenge Inc.*,
    725 P.2d 727 (Ariz. Ct. App. 1986) ..................................................................4

*Trutschel v. Kettering Medical Center*,
    2009 WL 1914549 *6 (Ohio App. 2 Dist.) ........................................................8

*Vasquez v. Superior Court of San Joaquin Cnty*,
    4 Cal.3d 800 (1971) ..........................................................................................8

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) ..............................................................................8

*Wells v. One2One Learning Foundation*,
    39 Cal.4th 1164 (2006) .....................................................................................5

*Wightwood School v. Fritz*,
    1999 WL 240727 *3 (Conn.) ...........................................................................8

*Zumbrun v. Univ. of So. California*,
    25 Cal.App.3d 1 (1972) ..........................................................................3, 4, 5, 6

**Statutes**

California Civil Code §1770(a)(10) ........................................................................5

California Welfare & Institutions Code section 15600 ...........................................9

FRCP 12(b)(6) .......................................................................................................10

FRCP 8(a)(2) .....................................................................................................1, 10

FRCP 9(b) .......................................................................................................1, 9, 10

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

# I.     INTRODUCTION

Plaintiffs' opposing papers attempt to distance themselves from their own FAC, and indeed to argue completely new claims for breach of some unspecified <u>oral contract</u>, and for unspecified fraudulent promises nowhere found in the FAC. Still, the central theme of this case <u>as actually alleged in the FAC</u> is that Trump University promised to educate aspiring real estate entrepreneurs, but in reality taught nothing worthwhile to its attendees: i.e., educational malpractice.

The dispositive issue for the Court is to decide whether the educational malpractice bar applies to this case. Trump University has already cited the settled law in California and many other states showing that it does apply. Plaintiffs attempt to avoid that law by arguing that it applies only to accredited, public institutions – a novel policy-based contention never adopted in any reported decision, and belied even by the cases cited by Plaintiffs. Plaintiffs also argue that their claims are not "really" based on educational malpractice – an argument overcome by the FAC itself. The reality is that the educational malpractice bar applies to private for-profit companies such as Trump University, and eliminates every cause of action in the FAC.

Should the Court allow Plaintiffs to escape that lawful bar, then all of the claims in the FAC have additional fatal flaws that were addressed in the moving papers, and not properly countered by the opposing papers. Moreover, the fraud-based claims still must be struck under Rule 9(b), and the class claims still must be struck under Rule 8(a)(2). Plaintiffs barely address those Rules in their opposing papers, and they certainly did not overcome any of Trump University's cited authority for applying those Rules.

Should the Court allow any portion of the FAC to be amended, then Plaintiffs still must resolve two fundamental contradictions between what the FAC actually alleges, and what the opposing papers now argue it alleged. The first contradiction is that the FAC alleges breach and related theories based on the <u>written contract</u> – which Plaintiffs attached to the FAC and describe as the Trump University "Standardized Contract" (FAC §119) – but the papers now argue breach of a different and apparently <u>oral contract</u> purportedly filled with unspecified terms set by unspecified

people at unspecified times.  Which contract is at issue – the "Standardized Contract," or some new oral contract?[1]  If oral, what are the specific terms stated by who, to who, and when?

The second contradiction is that the FAC is filled with disparagement of the <u>content and quality</u> of Trump University's education promised to its attendees, but the papers now argue that <u>other and unspecified promises</u> are the "real" basis of Plaintiffs' claims.  This flip-flop obviously is a tactic to avoid the educational malpractice bar, and plaintiffs' implicit acknowledgment that the courts cannot be dragged into evaluating the content and quality of any educational service.  If that tactic is successful, then which are the actual promises at issue in this case?  If those promises do not relate to the content and quality of the education provided by Trump University, then exactly what do they relate to?

**II.  PLAINTIFFS CANNOT ESCAPE THE EDUCATIONAL MALPRACTICE BAR BECAUSE IT APPLIES TO TRUMP UNIVERSITY, AND PLAINTIFFS HAVE INDEED ALLEGED EDUCATIONAL MALPRACTICE.**

California recognizes the educational malpractice doctrine, and consequently, it bars virtually all of Plaintiffs' claims here.  Plaintiffs attempt to escape that bar by arguing that: (1) Trump University is not an accredited, publically-funded educational institution protected by the bar; and (2) Plaintiffs claims are not "really" based on educational malpractice.  Under both established California law and the allegations of the FAC, both arguments are demonstrably false.

First, Plaintiffs' argument that the ban on educational malpractice suits applies only to accredited, publicly funded schools is both false and disproven by the very cases <u>cited by plaintiffs</u>.  For example, in *Alcides v. Brown Institute Ltd.*, the court applied the educational malpractice bar to a case brought against a <u>private</u>, <u>for-profit</u> educational company.  (592 N.W.2d 468, 470 (Minn. 1999).)  Similarly, in *Jamieson v. Vetterott Educational Centers, Inc.*, also cited by plaintiffs, the Federal Court recognized a bar to educational malpractice claims against <u>private, for-profit</u> companies.  (259 F.R.D. 520 (D. Kan. 2009).)

---

[1] The FAC makes clear that all plaintiffs did not have even the same written contract. For example, Plaintiff Murphy's purported contract included the sale of software but not the 3-day Field Program.

Further, while *Chevlin* and *Peter W.* did both involve public schools, *neither court based its decision to prohibit the cause of action on this fact.* (*Chevlin v. Los Angeles College Dist.*, 212 Cal.App.3d 382 (1989); *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal.App.3d 814 (1976).) In fact, the quotes selected by Plaintiffs do not, despite Plaintiffs' misleading citations, emphasize the public nature of the institutions. Rather, the decisions are based on the common sense notion that courts are not in a position to judge the *quality* of an education. Indeed, one of the earliest California cases to recognize that there was no cause of action against an educational institution for the content of its courses involved a **private** institution – the University of Southern California. (*Zumbrun v. Univ. of So. California*, 25 Cal.App.3d 1 (1972).)

The policy reasons supporting the educational malpractice bar are not advanced by distinguishing between public and private institutions, whether for-profit or not, or whether accredited or not. As stated by the *Blake* court, the four primary policy reasons for recognizing the educational malpractice bar are: (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will 'embroil the courts into overseeing the day-to-day operations of the schools.' (*Blake v. Career Educ. Corp.,* 2009 WL 2567011 *2 (E. D. Mo.).)

Each of these policy reasons supports the fact that there is not, and should not be, any distinction between public and private schools, accredited or otherwise. Are the courts in a better position to evaluate the standard of care by which to evaluate an educator at public UCLA, as opposed to private USC? Are the uncertainties about causation and such intervening factors such as a student's attitude, motivation, temperament and experience any less important at the bar BRI review course as opposed to California Western?

Plaintiffs have not cited a single case, and Trump University is aware of none, where these distinctions were even considered by a court in deciding whether to apply the educational

1 malpractice bar.[2]  By contrast, many states have applied the bar in cases involving private and even
2 for-profit institutions.  (See, e.g., *Alcides*, 592 N.W.2d 4681(Minnesota); *Blake,* 2009 WL 2567001
3 (Missouri); *Zumbrun*, 25 Cal.App.3d 1 (California); *Jamieson*, 259 F.R.D. 520 (Kansas).)

Consequently, Plaintiff's related argument that New York law does not permit the term "university" to be used by an educational company such as Trump University is a non-issue and absolutely immaterial and irrelevant to whether Plaintiffs can bring an educational malpractice claim before a federal court sitting in diversity, based upon California law.  Trump University is a corporation providing educational services, and it is these educational services which form the basis of Plaintiffs' FAC – regardless if the company was named "Trump College," or "Trump School," or "Trump Self-Improvement Seminars."  The allegation that New York wants Trump University to use a different name obviously has nothing to do with California's ban on educational malpractice claims.  It is no surprise that Plaintiffs provide no authority to support this novel argument.

Finally, perhaps recognizing that the educational malpractice bar does indeed apply to this case as a matter of law, Plaintiffs' <u>now</u> argue that their causes of action are not "really" for educational malpractice.  But Plaintiffs' FAC tells a different story.  The FAC makes it very clear that Plaintiffs sued because Trump University does not "teach you what you need to know" to become successful in real estate (FAC ¶32), "does not provide the details, support or training the students need to actually engage in the real estate transactions" (FAC ¶43), and teaches improper or "illegal tactics."  (FAC ¶¶44, 63.)  As noted above, when a cause of action seeks damages based on the *content* of the instruction provided, as opposed to whether instruction was provided at all, it is barred by the educational malpractice doctrine.  (See, *Ross v. Creighton Univ.*, 957 F.2d 410, 416-

---

[2]     Plaintiffs' citation to *Acciard* to support their argument is in error, and seriously misleading to the Court.  (*Acciard v. Whitney*, 2008 WL 5120901 (M. D. Fla.).)  The defendant in that case was <u>not</u> Millionaire University, an educational institution, but rather a conglomerate of individuals and companies organized to offer real estate deals to Millionaire University's students.  Those entities, <u>not</u> the educational provider, allegedly falsified appraisals.  The case did not involve any claims of educational malpractice; rather claims against the non-educational entities for providing false appraisals.

Plaintiff's reliance on *Harazim v. Lynam* 267 Cal.App.2d 127 (1968) and *State ex rel. Corbin v. Challenge Inc.,* 725 P.2d 727 (Ariz. Ct. App. 1986) is no help either.  *Harazim* pre-dates California's recognition of education malpractice and concerned plaintiffs' investment in a company not receipt of educational services.  Similarly, *Corbin* concerned a pyramid scheme.

417 (7th Cir. 1992); *Zumbrun v. Univ. of So. California*, 25 Cal.3d. 1, 10 (1972).)  The FAC is replete with similar examples:

- Trump University provides "no unique insight."  FAC ¶50.
- Trump University did not spend enough time in the curriculum teaching students how to fill out forms.  FAC ¶53.
- Trump University "misadvised [plaintiff] regarding a property value in Las Vegas  FAC ¶59.
- Plaintiff's afternoon looking at properties was "unproductive."  FAC ¶69.
- Trump University's mentor provided "not especially valuable advice."  FAC ¶72.
- Trump University's education was "worthless."  FAC ¶72.

Similar allegations can be found in the FAC at ¶¶ 4, 5 and 8.

Each of these claims addresses <u>content</u> or value of the education and thus falls squarely within the doctrine of educational malpractice.  Similarly, claims based on the qualifications of the instructors and mentors – like Plaintiffs make here (FAC ¶7) – are specifically barred by the educational malpractice doctrine.  (See *Blake v. Career Educ. Corp.*, *supra* at *5 (also cited and relied on by Plaintiffs).)

A plaintiff can bring suit when an educational entity fails to provide an agreed <u>quantitative</u> item such as a specific number of classes (*Zumbrun*, 25 Cal.App.3d 1); or fails to provide <u>any</u> of the promised tutoring (*Ross v. Creighton University*, 957 F.2d 410 (7th Cir. 1992); or fails to provide promised <u>supplies</u>.  (*Wells v. One2One Learning Foundation*, 39 Cal.4th 1164 (2006).  These are the types of claims contemplated by California Civil Code §1770(a)(10), but Plaintiffs now concede that such a claim is "inapplicable."  (Oppo. p. 19.)

By contrast, suits are not permitted when they involve consideration of content, quality or methodology of the class, program or curriculum.  (See *Smith v. Alameda County Social Serv. Agency*, 90 Cal.App.3d 929 (1979); see also *Peter W.*, *supra,* 60 Cal.App.3d at 814.)[3]  In this case,

---

[3] Plaintiffs' reliance on *Malone v. Academy of Court Reporting* as an example where an educational malpractice claim was allowed to proceed is again misplaced and wrongly stated to the Court.  (64 Ohio App.3d 588 (1990).)  That court specifically found that the claim was not one of educational malpractice.  (*Id.* at 593-94.)

Plaintiffs' claims concern the <u>content</u> or quality of the programs provided by Trump University, not the existence of the programs, or their number of classes, or their supplies.

For example, Plaintiffs' Opposition claims the three-day Field Mentorship Program did not provide services "worth $25,000" (See Oppo, p. 1). Plaintiffs' **do not** claim that Trump University failed to provide these services, or did not produce a mentor, or did not produce the supplies used by attendees with their mentor. In fact, the FAC specifically alleges that the services and mentors <u>were</u> provided. (See FAC ¶50.) Instead, Plaintiffs contend that the provided services – i.e., the mentorship curriculum – simply were inadequate.

As an additional example, Plaintiffs' Opposition argues that Trump University misrepresented that it would provide a "year-long apprenticeship program." Once again, the FAC is telling. Plaintiffs concede that Trump University <u>did</u> provide mentors and <u>did</u> provide a toll-free number with which to reach their mentors. (FAC ¶¶43, 59.) There is no allegation that Plaintiffs were denied access to these mentors when calling the numbers. Plaintiff Makaeff even received *additional* mentoring when she requested it. (FAC ¶59.) Plaintiffs' true complaint concerns the purported poor *quality* of the mentors and their advice to plaintiffs. Again, this is ***precisely*** what California law prohibits by the educational malpractice doctrine. (*Ross v. Creighton Univ.*, 957 F.2d at 416-417; *Zumbrun v. Univ. of So. California*, 25 Cal.App.3d at 10.)

### III. PLAINTIFFS' CONTRACT-RELATED CLAIMS ALSO FAIL BECAUSE THE CONTRACTED GOODS AND SERVICES WERE PROVIDED (IF THE CONTRACT WAS WRITTEN AS ALLEGED) OR THE CLAIMS ARE IMPERMISSIBLY VAGUE (IF THE CONTRACT WAS ORAL AS NEWLY ARGUED).

Plaintiffs' contract-related causes of action fail for a second reason unrelated to the educational malpractice bar, namely that the goods and services contracted for under the "Standardized Contract" were actually delivered as also stated in the FAC. This point was made in the moving papers, and is not meaningfully responded to in the opposing papers.

Instead, Plaintiffs present a totally new argument not based on the "Standardized Contract." Plaintiffs suddenly claim all sorts of "terms" and "conditions" which are outside the corners of that written contract, and so evidently Plaintiffs will now contend breach of some oral contract. However, terms and conditions of that oral contract are not stated in the FAC at all, and hence are

certainly not alleged with any degree of specificity which would allow Trump University to defend against these claims. Who made these alleged oral terms and conditions? Were they modifications to the written contract? Where and when were they made? What are they?

Plaintiffs' contract-related claims should be dismissed as barred by the educational malpractice doctrine. If they could survive that, they should be dismissed because the allegations of the FAC establish that the promised goods and services under the "Standardized Contract" were delivered. Finally, if Plaintiffs are allowed to proceed with any contract-related claims, they must be required to amend the next version of their complaint to specify exactly what contract is being sued on – written or oral, and its exact terms.

### IV. PLAINTIFFS' FRAUD-RELATED CLAIMS ALSO FAIL BECAUSE THEY ARE BARRED BY THE DISCLAIMERS SIGNED BY PLAINTIFFS

The opposing papers argue that the disclaimers signed by Plaintiffs are unclear, misleading, and unconscionable – specious arguments that the Court itself can assess and reject based on the plain language of the disclaimers. The opposing papers also argue that the disclaimers apply only to predictions of future income of attendees, and hence are not applicable to Plaintiffs' claims and unhappiness with Trump University.

However, all pertinent allegations in the FAC very clearly do make the point that Plaintiffs are indeed unhappy with the *result* of their education, i.e., the fact that they did not make money in real estate:

- Plaintiffs "relied on the speakers' claims that they were 'guaranteed success' if they followed the techniques they learned." FAC ¶47.

- Trump University represented that plaintiffs "could earn up to the tens of thousands of dollars of monthly income, and potentially much more." FAC ¶48.

- Trump University "guaranteed Plaintiff Makaeff that her first real estate deal would earn her in the ballpark of $35,000." FAC ¶58.

- Only two real estate deals ever came to plaintiff Makaeff. FAC ¶60.

Similar allegations can be found in the FAC at ¶¶26, 41, 82 and 132.

Every one of these allegations pertains to hoped-for <u>outcomes</u> or "guaranteed" results based on participation in Trump University programs. However, any claim as to Plaintiffs' success or

failure is specifically barred by the multiple disclaimers signed by Plaintiffs. The disclaimers could not be clearer: Trump University cannot and does not guarantee its students' success. (See Ex. 1 attached to Sexton Decl.) Plaintiffs' citations to cases which held certain disclaimers unenforceable are inapposite because they refer to cases in which the disclaimers are confusing and buried in long, prolix contracts. In this case, the disclaimers are <u>short</u> and <u>clear</u>:

> This program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits or otherwise, have been or will be made by the Program, Program instructors, Trump University, their affiliates or their officers, principals, representatives, agents or employees . . .
>
> Trump University does not procure or identify specific real estate deals . . . we do not recommend or guarantee any investment or property.
>
> You acknowledge and agree that Trump University has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy.

Significantly, the FAC does not allege that Plaintiffs did not see, understand or sign the disclaimers. When "reasonable minds" cannot disagree about the meaning of a disclaimer, dismissal on a 12(b)(6) motion is appropriate. (*Warshaw v. Xoma Corp.,* 74 F.3d 955, 959 (9th Cir. 1996).)[4]

### V.  PLAINTIFFS' STATUTORY CLAIMS ARE ALSO BARRED BECAUSE THE STATUTORY REQUIREMENTS ARE NOT MET

The statutory causes of action are merely a reiteration and repackaging of the barred educational malpractice claims. These claims are barred by the educational malpractice doctrine whether they are stated as tort claims, breach of contract claims, or statutory claims. (See e.g., *Trutschel v. Kettering Medical Center*, 2009 WL 1914549 *6 (Ohio App. 2 Dist.) (education malpractice claim couched as a statutory consumer protection claim was barred); *Wightwood School v. Fritz*, 1999 WL 240727 *3 (Conn.)(same).) Thus, Plaintiffs' claims that the education they received was somehow deficient cannot survive the educational malpractice bar, no matter how labeled, re-labeled or re-packaged. (See *Ross v. Creighton Univ.*, 957 F.2d at 414-415.)

---

[4] Plaintiffs' reliance on *Vasquez v. Superior Court of San Joaquin Cnty*, 4 Cal.3d 800 (1971) does not help. *Vasquez* did not even involve a disclaimer. Moreover, the Court held that reliance may be presumed only "in the absence of evidence to the contrary." Here, Plaintiffs signed a very clear disclaimer that they specifically were <u>not</u> relying on any representations.

8

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP UNIVERSITY, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULES 12(b)(6), 9(b), AND 8(a)(2)

But if the educational malpractice doctrine is not applied by the Court, then the statutory claims still fail because the FAC does not and cannot allege that their statutory standards were met. The key standards not met are as follows: (1) for the UCL, none of the three liability "prongs" are met; (2) for the CLRA and the False Advertising Law, neither the FAC nor even Plaintiffs' opposition alleges what specific advertisements misled the attendees, (3) for the Elder Abuse Law, the FAC does not allege an elder plaintiff resident in California;[5] and (4) for the New York General Business Law, the FAC does not allege any New York plaintiff resident.[6] Each of these failings was noted in the moving papers, and got no meaningful response in the opposing papers. For example, for numbers (1) and (2) above, plaintiffs completely gloss over the critical issue: what **specific** advertisements misled the attendees?

### VI. PLAINTIFFS' FRAUD-RELATED CLAIMS MUST ALSO BE DISMISSED BECAUSE THE FAC DOES NOT STATE WITH PARTICULARITY THE ALLEGED MISREPRESENTATIONS

The FAC also does not satisfy the strict pleading requirements for fraud as required by Rule 9(b). For example, in response to the requirement that plaintiffs provide "the who, what, where and when" for their fraud claims, plaintiffs merely state that "Trump University" made the purported misrepresentations. Who specifically made the purported misrepresentation, and when? "When" is particularly important because "representations" made during seminars after Plaintiffs already contracted are irrelevant. In response to "what" misrepresentations were made, Plaintiffs merely argue the "false and misleading representations made by Trump." Again, this circular response fails to provide the specific representations Plaintiffs contend were false, as required by Rule 9(b).

---

[5] Plaintiffs concede that no plaintiff meets the residency requirements of California Welfare & Institutions Code §15600 (Elder Abuse Statute) (Oppo. p. 20), Putting aside the fatal "no plaintiff" problem, plaintiffs failed even to address the substantive argument that asking all attendees if they knew "they will need $250,000 in savings to generate $1,000 monthly income during retirement," or if they knew the "average savings of a 50-year old American is $2,500," does not constitute "elder abuse" or a statutory violation, as a matter of law. This cause of action must be dismissed.

[6] Plaintiffs now admit that plaintiff Patricia Murphy purportedly attended Trump University programs only in Florida and Pennsylvania (Oppo. p. 8), so this cause of action must be dismissed as well. (See *Scott v. Bell Atlantic Corp.*, 726 N.Y.S.2d 60, 63 (N.Y. App. Div. 2001) (court dismissed §349 claim of non-New York residents who did not receive services within New York State); *Goshen v. Life Insurance Co. of New York*, 730 N.Y.S.2d 46, 47 (N.Y. App. Div. 2001) (protections of New York Business Law § 349 not available to Florida resident).)

Plaintiffs argue that the pertinent facts are "peculiarly within the defendant's knowledge or are readily obtainable by him," and hence need not be alleged.[7] This is nonsense. Plaintiffs claim to have been told one thing and to have experienced another. If those facts are peculiarly within any parties' knowledge, it must be Plaintiffs themselves.

### VII. PLAINTIFFS' CLASS CLAIMS MUST ALSO BE DISMISSED BECAUSE THEY ARE NOT PLAUSIBLE ON THEIR FACE

The moving papers set out the inescapable argument that the class claims were hopeless as alleged, because the entire thrust of the case required individualized proof of each attendee's pertinent seminars, mentors, goals, motivation, resources, opportunities, successes, failures, etc. Moreover, California law prohibited outright the putative national class based on California statutes. The proper end result was dismissal under Rule 8(a)(2).

Plaintiffs' sole response was to argue that consideration of class certification was premature. This is true, but irrelevant. Trump University's Rule 8 argument does not concern whether the class should be certified, but rather whether the class allegations in the FAC satisfy the standards of Rule 8(a)(2) by making certification plausible on its face. Just as the Supreme Court held in *Ashcraft*, this Court's "experience and common sense" will confirm that the current class allegations do not remotely state a plausible claim under Rule 8(a)(2). (See *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009).)

### VIII. CONCLUSION

Trump University respectfully requests that its motion be granted in full pursuant to Rules 12(b)(6), 9(b), and 8(a)(2).

Dated:   September 7, 2010          YUNKER & SCHNEIDER

                                    By:  /s/ David K. Schneider
                                         David K. Schneider
                                         Attorneys for TRUMP UNIVERSITY, LLC

---

[7] Plaintiffs' cite *Neubrunner v. Milkey,* 6 F.3d 666 (9th Cir. 1993), but it was a securities fraud case. Obviously, only a defendant would have information of its own insider trading.