IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA


TARLA MAKAEFF,                        )      10CV0940-IEG
          PLAINTIFF,                  )      _____
                                      )
VS.                                   )      SAN DIEGO, CA
                                      )      AUGUST 4, 2010
TRUMP UNIVERSITY, LLC, *ET AL.*,      )      11:00 A.M.
          DEFENDANTS.                 )



TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE IRMA E. GONZALEZ

UNITED STATES DISTRICT CHIEF JUDGE



APPEARANCES:

FOR THE PLAINTIFF:      ZELDES & HAEGGQUIST, LLP
                        BY:  AMBER L. ECK, ESQ.
                             HELEN I. ZELDES, ESQ.
                        625 BROADWAY, SUITE 906
                        SAN DIEGO, CA  92101

FOR DEFENDANT TRUMP:    YUNKER & SCHNEIDER
                        BY:  DAVID K. SCHNEIDER, ESQ.
                        655 W. BROADWAY, SUITE 1400
                        SAN DIEGO, CA  92101

COURT REPORTER:         FRANK J. RANGUS, OCR
                        U. S. COURTHOUSE, RM. 4194
                        940 FRONT STREET
                        SAN DIEGO, CA  92101
                        (619) 531-0171


PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I N D E X

ARGUMENTS:                    PAGE

MS. ECK                         4

MR. SCHNEIDER                   18

MS. ECK                         31

MR. SCHNEIDER                   39

24

25

```
 1              THE DEPUTY CLERK:  NUMBER TWO ON CALENDAR, CASE

 2   10CV0940, MAKAEFF VS. TRUMP UNIVERSITY, ET AL., FOR A MOTION

 3   HEARING.

 4              THE COURT:  YOUR APPEARANCES, PLEASE.

 5              MS. ECK:  GOOD MORNING, YOUR HONOR.

 6              AMBER ECK, ZELDES & HAEGGQUIST, FOR PLAINTIFF TARLA

 7   MAKAEFF, AND WE HAVE OUR PLAINTIFF HERE.

 8              MS. ZELDES:  HELEN ZELDES, ALSO FROM ZELDES &

 9   HAEGGQUIST, ON BEHALF OF PLAINTIFF.

10              MR. SCHNEIDER:  GOOD MORNING, YOUR HONOR.

11              DAVID SCHNEIDER, FROM YUNKER & SCHNEIDER, ON BEHALF

12   OF DEFENDANT TRUMP UNIVERSITY, LLC.

13              THE COURT:  GOOD MORNING.

14              THANK YOU FOR ACCOMMODATING MY SCHEDULE AND MOVING IT

15   AROUND FROM MONDAY TO TODAY AND THEN A DIFFERENT TIME.  SO

16   WE'RE HERE.

17              THIS IS THE PLAINTIFF'S MOTION TO STRIKE THE

18   COUNTERCLAIM AGAINST HER FOR DEFAMATION REGARDING STATEMENTS

19   SHE MADE TO, MY UNDERSTANDING, THE BETTER BUSINESS BUREAU, THE

20   BANK, AND THE UNKNOWN THIRD PARTIES ON THE INTERNET.  I MEAN,

21   THERE ARE QUITE A FEW MATTERS THAT HAVE TO BE DECIDED BEFORE I

22   EVEN EITHER GRANT OR DENY THE MOTION.

23              BUT I GUESS I WANT TO KNOW WHAT IS THE MOST IMPORTANT

24   ARGUMENT THAT YOU HAVE, MISS ECK, WITH REGARD TO WHY I SHOULD

25   GRANT THE MOTION.
```

1          FIRST OF ALL, WE HAVE TO DECIDE WHETHER TRUMP

2    UNIVERSITY IS A PUBLIC FIGURE AND WHETHER MALICE IS NECESSARY,

3    AND THEN, ULTIMATELY, I HAVE TO DECIDE IF YOU MADE OUT A *PRIMA*

4    *FACIE* CASE, AND THEN THE COUNTERCLAIMANTS, OR THE DEFENDANT

5    NEEDS TO SHOW THAT THEY WOULD MAKE A *PRIMA FACIE* CASE THAT

6    THEY WOULD PREVAIL ON THE DEFAMATION CLAIM.

7          SO, WHY DON'T YOU COME UP TO THE LECTERN, AND I'LL

8    HEAR FROM YOU.

9          MS. ECK:  ALL RIGHT.  THANK YOU, YOUR HONOR.

10          AS YOU KNOW, THE PURPOSE OF AN ANTI-SLAPP MOTION IS

11    TO PREVENT COMPANIES FROM INTIMIDATING INDIVIDUALS AND

12    CONSUMERS FROM CHILLING FREE SPEECH, AND THAT'S WHAT THIS

13    MOTION IS ABOUT.  OUR PLAINTIFF, TARLA MAKAEFF, PURCHASED

14    $35,000 WORTH OF REAL-ESTATE INVESTING SEMINARS FROM TRUMP

15    UNIVERSITY, AND SHE DIDN'T GET WHAT THEY HAD PROMISED.

16          THE COURT:  WELL, BUT DIDN'T SHE GIVE LOTS OF GREAT

17    REVIEWS ABOUT WHAT SHE WAS GETTING?  I MEAN, SHE WAS VERY

18    HAPPY UNTIL, FINANCIALLY, SHE COULDN'T AFFORD TO KEEP GOING.

19          MS. ECK:  RIGHT.  AS SHE SETS OUT IN HER DECLARATION,

20    SHE GAVE THEM POSITIVE REVIEWS FOR TWO MONTHS, IN SEPTEMBER

21    AND OCTOBER OF 2008, WHEN SHE STARTED THE SEMINARS, BUT ONE

22    THING, AN IMPORTANT THING THAT THE SEMINARS HAD PROMISED WAS

23    THAT SHE WOULD HAVE A ONE-YEAR APPRENTICESHIP.  THEY SAID,

24    IT'S LIKE DONALD TRUMP'S T.V. SHOW, *THE APPRENTICE*, BUT THERE

25    YOU CAN ONLY HAVE ONE PERSON AT A TIME.  HERE, YOU HAVE THE

1    OPPORTUNITY TO BE DONALD TRUMP'S APPRENTICE OR HAVE AN

2    APPRENTICESHIP WITH ONE OF HIS HAND-PICKED MENTORS FOR AN

3    ENTIRE YEAR.

4            SO, AFTER SHE FINISHED THE THREE-DAY SEMINAR, SHE

5    CONTINUED TO WORK WITH THESE MENTORS.  SHE KEPT THINKING THAT

6    SHE'D GET THE INFORMATION, THE MENTORING, AND EVERYTHING THAT

7    THEY HAD PROMISED.  IT WASN'T UNTIL LATER THAT SHE REALLY

8    REALIZED THAT SHE HADN'T GOTTEN WHAT SHE HAD PAID FOR AND WAS

9    PROMISED.

10           SO STARTING IN APRIL IS WHEN SHE WROTE THE E-MAIL

11   THAT'S ATTACHED TO HER DECLARATION DEMANDING HER MONEY BACK,

12   AND THEY REFUSED, AND IT'S AT THAT POINT THAT SHE WROTE THE

13   LETTER TO HER BANK DISPUTING THE CHARGES, AND TO THE BETTER

14   BUSINESS BUREAU, ALSO DETAILING WHAT SHE FELT WERE THEIR

15   IMPROPER BUSINESS PRACTICES, ASKING THEM TO INTERVENE ON HER

16   BEHALF, AND ALSO TO WARN OTHER CONSUMERS ABOUT WHAT SHE FELT

17   TRUMP UNIVERSITY WAS DOING.

18           THE COURT:  OKAY.  SO LET'S ASSUME THIS IS ALL A

19   MATTER OF PUBLIC IMPORTANCE, YOU KNOW, THE PUBLIC SHOULD KNOW

20   AND THEY SHOULD BE WARNED ABOUT, PERHAPS, SOME OF THESE

21   ISSUES, BUT DON'T YOU STILL HAVE TO SHOW THAT -- WELL, WHAT DO

22   YOU HAVE TO SHOW NEXT?  WHY DON'T YOU TELL ME?

23           MS. ECK:  OKAY.

24           THE FIRST THING IS, OUR BURDEN IS TO SHOW THAT THESE

25   STATEMENTS ARE PROTECTED SPEECH UNDER THE ANTI-SLAPP STATUTE.

1          THE COURT:  LET'S ASSUME THEY ARE.

2          MS. ECK:  OKAY.

3          SO, ONCE WE'VE PROVEN THAT THEY'RE PROTECTED SPEECH

4    UNDER ANTI-SLAPP, THEN THE BURDEN WILL MOVE TO TRUMP

5    UNIVERSITY TO ESTABLISH A *PRIMA FACIE* CASE THAT THEY

6    CONSTITUTE DEFAMATION.

7          FOR DEFAMATION, AS YOU MENTIONED, ADDRESSING THE

8    ISSUE OF WHETHER OR NOT TRUMP UNIVERSITY IS A PUBLIC FIGURE,

9    WE ALLEGE TRUMP UNIVERSITY IS A PUBLIC FIGURE BECAUSE THE

10   STATEMENTS CONCERN A PUBLIC CONTROVERSY REGARDING THESE

11   DECEPTIVE, ALLEGEDLY DECEPTIVE PRACTICES OF TRUMP UNIVERSITY.

12   HUNDREDS OF CONSUMERS, OF STUDENTS, WHO HAVE TAKEN THE COURSES

13   HAVE EXPLAINED ONLINE, ALLEGING THAT THEY DON'T DELIVER WHAT

14   THEY'RE PROMISED, AND ON THE OTHER HAND WE HAVE TRUMP

15   UNIVERSITY CLAIMING THAT THEY'RE PROVIDING A COMPLETE

16   REAL-ESTATE EDUCATION AND THAT THEY'RE WORTH THE $35,000 AND

17   THAT THEY HAVE A 98-PERCENT CONSUMER SATISFACTION RATE, THAT

18   THAT CREATES THIS PUBLIC CONTROVERSY.

19          ALSO, TRUMP UNIVERSITY INVITED ATTENTION AND COMMENT

20   THROUGH ITS USE OF DONALD TRUMP'S CELEBRITY STATUS TO SELL

21   THEIR REAL-ESTATE INVESTING SEMINARS, AND IT'S A PUBLIC FIGURE

22   BECAUSE OF DONALD TRUMP'S STRONG INVOLVEMENT IN THIS COMPANY.

23   HE'S NOT JUST A CELEBRITY ADVERTISER.  HE'S THE CHAIRMAN OF

24   TRUMP UNIVERSITY.  HE'S GIVEN IT HIS NAME.  THEY USE HIS NAME

25   AND LIKENESS ALL OVER ITS WEBSITE, ON ITS MARKETING MATERIALS,

1    ITS ADVERTISING, AND IN ITS SEMINARS.  WHEN YOU SHOW UP TO A

2    SEMINAR, THERE'S 20-FOOT-TALL BANNERS OF DONALD TRUMP'S FACE.

3    THEY'RE DOING THE *MONEY, MONEY, MONEY* SONG FROM *THE*

4    *APPRENTICE*, AND THERE ARE SLIDES SHOWING DONALD TRUMP AND HIS

5    FAMILY SECRETS AND WHAT YOU'RE GOING TO LEARN AND THE MENTORS

6    AND TEACHERS WHO ARE HAND-PICKED BY DONALD TRUMP.

7            THE COURT:  SO LET ME STOP YOU THERE.

8            ASSUMING THAT THE STATEMENTS INVOLVED A RIGHT OF FREE

9    SPEECH, WHICH I'M OBVIOUSLY LEANING TOWARD, BUT I GUESS I'M

10   STILL CONCERNED ABOUT WHAT YOU'RE ARGUING NOW, WHETHER IN FACT

11   THE UNIVERSITY ITSELF, I MEAN, IS A PUBLIC FIGURE.  I MEAN, A

12   PUBLIC FIGURE IS ONE THAT'S A PUBLIC FIGURE FOR ALL PURPOSES,

13   OR IS THE UNIVERSITY JUST IN A SPECIFIC INSTANCE A PUBLIC

14   FIGURE?  AND SO I GUESS I WANT YOU TO CONCENTRATE ON THAT FOR

15   A MINUTE.

16           MS. ECK:  SURE.

17           WE BELIEVE THAT TRUMP UNIVERSITY IS AN ALL-PURPOSE

18   PUBLIC FIGURE BECAUSE IT HAS ACTIVELY INSERTED ITSELF INTO THE

19   PUBLIC.  IT ADVERTISES HEAVILY ON THE INTERNET, ON FACEBOOK,

20   VIA E-MAIL, I BELIEVE TV AND RADIO, AND SO THAT IT'S REALLY

21   PUT ITSELF OUT THERE FOR ALL PURPOSES.

22           THE COURT:  NOW, MR. TRUMP DOES THAT, BUT DOES TRUMP

23   UNIVERSITY?

24           MS. ECK:  YES, IT DOES.  SO, IF YOU GO ONTO FACEBOOK,

25   THERE WILL BE AN AD, YOU KNOW, TAKE THIS FREE REAL-ESTATE

1    INVESTING SEMINAR AND LEARN DONALD TRUMP'S FAMILY REAL-ESTATE

2    INVESTING SECRETS.  YOU CAN CLICK ON THAT.  YOU CAN GO ONTO

3    THEIR INTERNET, SIGN UP FOR HIS FREE SEMINAR, OR THE

4    UNIVERSITY'S FREE SEMINAR.  AT THAT FREE SEMINAR IS WHERE THEY

5    SELL YOU THE $1500 SEMINAR.  ONCE YOU'VE TAKEN THE $1500

6    SEMINAR, THAT'S WHERE THEY UP-SELL YOU TO THE $35,000 SEMINAR.

7    SO THIS ISN'T DONALD TRUMP HIMSELF, BUT TRUMP UNIVERSITY.

8              THE COURT:  SO YOU'RE SAYING TRUMP UNIVERSITY IS AN

9    ALL-PURPOSE PUBLIC FIGURE AS OPPOSED TO A LIMITED-PURPOSE

10   PUBLIC FIGURE.  CORRECT?

11             MS. ECK:  RIGHT.

12             THE COURT:  BECAUSE I THINK THAT YOU HAVE TO

13   INTERJECT YOURSELF INTO THE CONTROVERSY IN ORDER TO BE A

14   LIMITED-PURPOSE PUBLIC FIGURE, AND I'M NOT SURE THAT WOULD

15   QUALIFY IN THIS CASE.  I MEAN, THE LAWSUIT DOESN'T COUNT, I

16   DON'T THINK.  A PUBLIC FIGURE FOR A LIMITED PURPOSE

17   VOLUNTARILY INJECTS ITSELF OR IS DRAWN INTO A PARTICULAR

18   PUBLIC CONTROVERSY AND THEREBY BECOMES A PUBLIC FIGURE FOR A

19   LIMITED RANGE OF ISSUES.

20             MS. ECK:  RIGHT.

21             THE COURT:  ARE YOU ARGUING BOTH IN THIS CASE?

22             MS. ECK:  IT'S REALLY WE'RE ARGUING THAT IT'S A

23   PUBLIC FIGURE, NOT JUST LIMITED PUBLIC FIGURE.

24             THE COURT:  SO FOR ALL PURPOSES.

25             MS. ECK:  FOR ALL PURPOSES, BY VIRTUE, YOU KNOW, OF

1    ITS ADVERTISING AND OF ITS, YOU KNOW, AND I BELIEVE, I BELIEVE

2    IT IS IMPORTANT, OF ITS STRONG TIES TO DONALD TRUMP.  I MEAN,

3    THIS ISN'T JUST A CELEBRITY WHO'S ADVERTISING FOR SHAMPOO,

4    AND, YOU KNOW, THAT ISN'T ENOUGH TO MAKE IT A PUBLIC, THE

5    COMPANY A PUBLIC FIGURE, BUT HE IS THE CHAIRMAN.  THEY REALLY

6    RELY ON HIS CREDIBILITY AND HIS REPUTATION IN GETTING ITS

7    STUDENTS AND SAYING, THIS IS DONALD TRUMP'S BABY.  THIS IS HIS

8    COMPANY LOCK, STOCK AND BARREL.  YOU KNOW, YOU'RE TAKING,

9    YOU'RE LEARNING DONALD TRUMP'S INVESTING SECRETS.

10         THE COURT:  OKAY.  IF IN FACT TRUMP UNIVERSITY IS A

11   PUBLIC FIGURE, THEN IS IT YOUR POSITION THAT MALICE HAS TO BE

12   SHOWN?

13         MS. ECK:  EXACTLY.  IF TRUMP UNIVERSITY IS A PUBLIC

14   FIGURE, THEN THEY NEED TO SHOW ACTUAL MALICE.  THEY NEED TO

15   SHOW THAT TARLA BELIEVED, KNEW THAT THE STATEMENTS SHE MADE

16   WERE FALSE AT THE TIME SHE MADE THEM OR THAT SHE HAD SERIOUS

17   DOUBTS AS TO WHETHER OR NOT THE STATEMENTS WERE TRUE, AND WE

18   BELIEVE TRUMP HAS NOT PROVIDED EVIDENCE OF ACTUAL MALICE.

19   THEY'VE NOT SHOWN THAT SHE BELIEVED THE STATEMENTS WERE FALSE.

20   THEY'VE NOT SHOWN THAT SHE HAD SERIOUS DOUBTS AS TO WHETHER OR

21   NOT THE STATEMENTS WERE FALSE.

22         AND IN FACT, THE ONLY, I MEAN, THE ONLY THING THEY'VE

23   DONE TO TRY TO HAVE EVIDENCE AS TO THE FALSITY OF THE

24   STATEMENTS IS SUBMIT A DECLARATION BY THEIR PRESIDENT, MICHAEL

25   SEXTON, WHO JUST SAYS GENERALLY, I DIDN'T KNOW OF ANY IMPROPER

1   PRACTICES GOING ON, AND THAT'S NOT SUFFICIENT.

2           THE COURT:  SO ASSUMING THAT I FIND THAT HE'S NOT A

3   PUBLIC FIGURE, THEN --

4           MS. ECK:  OKAY.

5           THE COURT:  -- THE THRESHOLD THAT, I GUESS THE *PRIMA*

6   *FACIE* CASE BECOMES EASIER, I GUESS, FOR THE DEFENDANT.

7   CORRECT?

8           MS. ECK:  CORRECT.  IF YOU FIND THAT THEY'RE NOT A

9   PUBLIC FIGURE, THEN THE ANALYSIS, THEY STILL HAVE TO MAKE A

10  *PRIMA FACIE* SHOWING OF DEFAMATION AND THEY NEED TO SHOW THAT

11  SHE MADE FALSE STATEMENTS OF FACT AND THAT THOSE STATEMENTS

12  CAUSED THEM DAMAGE.

13          THE COURT:  IN YOUR SUPPLEMENTAL DECLARATION, IN THE

14  SUPPLEMENTAL DECLARATION, IT SAYS, THAT YOU SUBMITTED, IT

15  STATES THAT THE STATEMENTS ABOUT GRAND LARCENY AND IDENTITY

16  THEFT ARE NOT DIRECTED TO TRUMP UNIVERSITY.

17          MS. ECK:  RIGHT.  THAT'S CORRECT, YOUR HONOR, AND I

18  THOUGHT THAT MIGHT BE SOMETHING THAT DEFENDANTS WOULD RAISE IN

19  THEIR SURREPLY, BUT THEY DON'T ADDRESS THAT AT ALL.  BUT IN

20  FACT THE LETTER, TARLA'S LETTER TO THE BANK OF AMERICA, IF YOU

21  LOOK AT THAT, IT IS IN REGARD TO TWO DIFFERENT DISPUTES.  ONE

22  IS TO TRUMP UNIVERSITY FOR CHARGES, AND THEN SHE'S ALSO ASKING

23  TO REVERSE HER CHARGES TO PROFIT PUBLISHING GROUP, WHICH IS

24  PART OF CHILDERS FINANCIAL GROUP, AND SO THOSE STATEMENTS,

25  THERE'S FOUR DIFFERENT STATEMENTS OF THE GRAND LARCENY,

1   IDENTITY THEFT.

2            THE COURT:  RIGHT.

3            MS. ECK:  THOSE ALL RELATE TO PROFIT PUBLISHING OR

4   CHILDERS OR TO TRUMP INSTITUTE.

5            THE COURT:  AND SO IS IT PROTECTED?  I MEAN, IN OTHER

6   WORDS, SHE SAYS TO HER BANK THAT SHE'S PROTECTED BY LAW

7   AGAINST FRAUD, GRAND LARCENY, AND IDENTITY THEFT BY TRUMP

8   UNIVERSITY OR PROFIT PUBLISHING GROUP, AND SO WHAT'S THE BASIS

9   FOR HER MAKING THAT STATEMENT TO THE BANK?  I DON'T

10  UNDERSTAND.

11           MS. ECK:  THERE ARE TWO DIFFERENT ISSUES.  SHE'S

12  MAKING ALL OF THESE STATEMENTS TO THE BANK TO SHOW THAT --

13  SHE'S ASKING THE BANK TO REVERSE HER CHARGES.

14           THE COURT:  RIGHT.

15           MS. ECK:  YOU KNOW, I PAID THIS MONEY FOR THE

16  SEMINAR.  THE SEMINAR WAS MISLEADING.  IT DIDN'T PROVIDE WHAT

17  IT PROMISED.  IT'S ALMOST LIKE ORDERING A PAIR OF SHOES AND

18  WHEN YOU GET THE SHOES, THEY'RE NOT THE SHOES YOU ASKED FOR,

19  AND YOU TELL THIS COMPANY, I WANT MY MONEY BACK.  THEY SAY,

20  NO, AND YOU CHALLENGE IT WITH YOUR CREDIT CARD, AND IN THIS

21  CASE IT WAS A DEBIT CHARGE, AND SO SHE CHALLENGED IT WITH HER

22  BANK AND SAID, THIS ISN'T WHAT I ORDERED.  THIS ISN'T WHAT

23  THEY PROMISED.  I WANT MY MONEY BACK.

24           BUT IF YOU LOOK ON THE FIRST PAGE OF HER LETTER,

25  THERE WAS ONE CHARGE OF 5,000 TO TRUMP UNIVERSITY, ANOTHER

```
 1    CHARGE OF A HUNDRED DOLLARS TO TRUMP UNIVERSITY, AND THEN A
 2    CHARGE OF ALMOST $5,000 TO PROFIT PUBLISHING GROUP.  SO IT'S A
 3    BIT CONFUSING BECAUSE THE LETTER ADDRESSES BOTH TRUMP
 4    UNIVERSITY AND PROFIT PUBLISHING, AND IN MOST CASES THE PROFIT
 5    PUBLISHING ALLEGATIONS ARE AT THE END OF THE LETTER, BUT IN
 6    THAT PARAGRAPH SHE TALKS ABOUT BOTH -- THOSE STATEMENTS ARE IN
 7    REGARD TO PROFIT PUBLISHING, AND TRUMP UNIVERSITY, ALTHOUGH IT
 8    HAD THE CHANCE TO RESPOND TO THAT IN THE SURREPLY, DID NOT.
 9         THE COURT:  WHY HASN'T TRUMP UNIVERSITY MET ITS
10    BURDEN OF MAKING A PRIMA FACIE SHOWING THAT THE STATEMENTS
11    THAT I'M ABOUT TO DRAW YOUR ATTENTION TO ARE FALSE?  FIRST OF
12    ALL, WE'RE TALKING -- THERE WERE A LOT OF STATEMENTS THAT WERE
13    MADE.
14         MS. ECK:  YES.
15         THE COURT:  BUT THE ONES THAT I FIND THAT PERHAPS
16    TRUMP UNIVERSITY CAN SHOW ARE FALSE IS THAT, QUOTE, THE
17    UNSOLICITED TAKING OF PERSONAL CREDIT AND TRICKERY INTO
18    OPENING CREDIT CARDS WITHOUT APPROVAL, IDENTITY THEFT, AND
19    GRAND LARCENY.
20         MS. ECK:  RIGHT, AND THOSE THREE STATEMENTS ARE NOT
21    REGARDING TRUMP UNIVERSITY, AND SO SHE MADE A LOT OF
22    STATEMENTS ABOUT TRUMP.  THOSE STATEMENTS --
23         THE COURT:  WHAT ARE THEY?  I THOUGHT THEY WERE.
24    THEN, WHO DID THAT?
25         MS. ECK:  OKAY.  PROFIT PUBLISHING GROUP AND
```

1    CHILDERS.  SO HERE'S THE THING.  SHE TOOK TRUMP UNIVERSITY --

2    YOU KNOW, IT IS CONFUSING, SO I'LL BACK UP.  SHE STARTED OUT

3    BY TAKING THE $1500 TRUMP UNIVERSITY SEMINAR.  THEN, AFTER

4    THAT, SHE TOOK A $35,000 TRUMP UNIVERSITY SEMINAR.  AFTER

5    THAT, WHEN SHE STILL DIDN'T FEEL THAT SHE HAD THE INFORMATION

6    SHE NEEDED, SHE CONTINUED TO TAKE COURSES THROUGH OTHER

7    ENTITIES THAT WERE SOMEWHAT RELATED OR AFFILIATED WITH TRUMP

8    OR MAYBE TRUMP WILL SAY THAT THEY'RE NOT AFFILIATED OR RELATED

9    TO THEM.

10         BUT SHE NEXT WENT TO THIS CHILDERS, J. J. CHILDERS,

11   WHO WAS A TRUMP UNIVERSITY PROFESSOR, INSTRUCTOR, AND SHE

12   PURCHASED SEMINARS FROM HIM.  SHE PURCHASED AN ENTITY-CREATION

13   PACKAGE FOR $5,000, AND SHE PURCHASED AN ELITE MENTORSHIP FROM

14   J. J. CHILDERS FOR $12,500, AND THEN SHE ALSO PURCHASED A

15   FOUR- TO FIVE-MONTH PHONE-CALL MENTORSHIP WITH TRUMP

16   UNIVERSITY COACHING, WHICH IS ALSO KNOWN AS TRUMP INSTITUTE,

17   ALSO KNOWN AS PROFIT LEARNING, FOR $9,495.

18         SO THAT'S WHY IT'S SOMEWHAT CONFUSING.  THERE'S A LOT

19   OF CHARGES, AND THOSE ARE THE CHARGES THAT ADD UP TO

20   60,000-PLUS DOLLARS.  SO, WHEN TRUMP UNIVERSITY TALKS ABOUT

21   THE PHANTOM $60,000, THOSE ARE THE CHARGES ADDING UP TO

22   60,000, BUT THE CHARGES WITH TRUMP UNIVERSITY WERE $35,000,

23   $35,745.

24         THE COURT:  BUT IT'S NOT CLEAR, IS IT, THAT THESE

25   STATEMENTS THAT I JUST DIRECTED YOUR ATTENTION TO ARE DIRECTED

1   TO PROFIT OR CHILDERS?  DOESN'T IT APPEAR THEY'RE DIRECTED TO

2   TRUMP UNIVERSITY AND THAT'S WHAT THE PUBLIC MAY THINK?

3          MS. ECK:  RIGHT.  WELL, FOR ONE THING, THIS LETTER

4   NEVER WENT TO THE PUBLIC.  THIS LETTER ONLY WENT TO THE BANK

5   OF AMERICA.  IT WENT TO HER BANK.  SO THE PUBLIC NEVER SAW IT.

6   THE ONLY PEOPLE THAT SAW IT WAS HER, BANK OF AMERICA, AND

7   TRUMP UNIVERSITY.  SO THERE WAS NO WAY FOR THE PUBLIC TO BE

8   CONFUSED.

9          THE COURT:  AND THESE WERE THE STATEMENTS THAT WERE

10  MADE IN THE LETTER TO THE BANK.

11         MS. ECK:  YES.

12         AND SECONDLY, IN HER DECLARATION, SHE CLARIFIES, I

13  DID NOT MAKE THESE STATEMENTS ABOUT TRUMP.  I SAID THESE

14  THINGS ABOUT PROFIT.  SHE'S NEVER SAYING THAT TRUMP ENGAGED IN

15  GRAND LARCENY.  SHE'S NOT SAYING THAT TRUMP ENGAGED IN OPENING

16  THE CREDIT CARDS.  THAT'S SOMETHING THAT J. J. CHILDERS AND

17  HIS PROFIT PUBLISHING GROUP WERE DOING, AND DEFENDANTS HAD THE

18  OPPORTUNITY TO RESPOND TO THAT AND THEY DID NOT.

19         THE COURT:  WELL, SHE DIDN'T SUE THEM, DID SHE?

20         MS. ECK:  NOT YET.  I MEAN, WE HAVE LOOKED INTO THESE

21  OTHER INSTITUTIONS.  THEY'RE VERY, LIKE I SAID, THEY'RE VERY

22  INTERRELATED.  J. J. CHILDERS WAS A TRUMP UNIVERSITY PROFESSOR

23  WHO THEN SHE TOOK ADDITIONAL COURSES FROM THAT WERE RELATED

24  WITH TRUMP.  SOMETIMES, THESE ENTITIES HAD MULTIPLE TITLES ON

25  THEM, SO TRUMP UNIVERSITY A/K/AS, ALSO KNOWN AS TRUMP

1    INSTITUTE, ALSO KNOWN AS CHILDERS.  CURRENTLY, THEY'RE NOT

2    DEFENDANTS NAMED IN THE CASE, BUT IT'S ONE THING WE'RE LOOKING

3    INTO.

4         THE COURT:  SO, IN ANY EVENT, YOU BELIEVE THAT IF

5    IT'S PROTECTED SPEECH, THAT THE DEFENDANT-COUNTERCLAIMANT

6    CANNOT MAKE A *PRIMA FACIE* CASE OUT FOR DEFAMATION.  CORRECT?

7         MS. ECK:  CORRECT, BECAUSE THEY HAVEN'T SHOWN THAT

8    THE STATEMENTS WERE FALSE.

9         YOU KNOW, FOR EXAMPLE, TARLA STATES IN ONE OF HER, IN

10   HER DECLARATION THAT THEY LIED TO HER WHEN THEY SAID THAT THEY

11   HAD GIVEN HER THREE COACHING SESSIONS, AND WHAT THEY WERE

12   CALLING THE THIRD COACHING SESSION WAS A FIVE-MINUTE

13   CONVERSATION AT A SEMINAR, AND SHE SAID, THAT CAN'T BE WORTH

14   $1500.  YOU KNOW, THEY DON'T COME BACK AND SAY, WELL, THAT

15   STATEMENT IS FALSE.  YOU KNOW, EITHER THAT CONVERSATION WAS

16   FOR $1500 OR THAT DOES CONSTITUTE A COACHING SESSION.

17        THE COURT:  DO THEY HAVE TO GO THROUGH EVERY

18   STATEMENT AND SHOW THAT IT'S FALSE, OR DOESN'T THE CASE LAW

19   SAY THAT AS LONG AS THEY CAN MAKE A *PRIMA FACIE* CASE FOR SOME

20   OF THE STATEMENTS THAT WERE A PART OF TWO, THREE, FOUR

21   STATEMENTS AS OPPOSED TO ALL 21, OR HOWEVER MANY THERE ARE?  I

22   MEAN, I DON'T THINK THERE HAS TO BE A FINDING THAT ALL THE

23   STATEMENTS ARE FALSE.

24        MS. ECK:  I DON'T BELIEVE THAT THEY'VE SHOWN THAT ANY

25   OF HER STATEMENTS ARE FALSE.

1          THE COURT:  SO THAT'S YOUR POSITION.

2          MS. ECK:  RIGHT, AND THAT JUST SIMPLY A DECLARATION

3    BY THEIR PRESIDENT SAYING, WE DIDN'T DO ANYTHING THAT SHE

4    TALKED ABOUT, WE DIDN'T DO ANYTHING WRONG, I THINK, ISN'T

5    SUFFICIENT.

6          AND THEN EVEN BEYOND THAT, IT'S SETTLED LAW THAT

7    STATEMENTS OF OPINION ARE NOT ACTIONABLE, AND WE BELIEVE THAT

8    ALL OF THE STATEMENTS THAT SHE MADE WERE STATEMENTS OF HER

9    OPINION BASED ON HER PERSONAL EXPERIENCE WITH TRUMP

10   UNIVERSITY.  SHE SAID, I TOOK THESE CLASSES FROM TRUMP

11   UNIVERSITY.  I THOUGHT THEY MISLED ME.  I THINK THAT WHAT THEY

12   DID WAS CRIMINAL.  I THINK WHAT THEY DID WAS, YOU KNOW, WAS

13   WRONG AND UNJUSTIFIED, AND SHE LAID THAT OUT.

14         THOSE ARE TYPICAL CONSUMER COMPLAINTS.  THAT'S WHAT

15   CONSUMERS ARE ALLOWED TO DO.  IF YOU BUY A PRODUCT AND YOU'RE

16   NOT HAPPY WITH IT, YOU CAN COMPLAIN TO THE COMPANY, AND IF

17   THEY DON'T LISTEN, YOU CAN COMPLAIN TO YOUR BANK AND SAY, YOU

18   KNOW, THIS IS WRONG.  I THINK THEY'RE CROOKS.  I THINK THEY'RE

19   CRIMINALS.  WE'VE CITED A LOT OF CASE LAW WHERE CASES SAY IF

20   YOU CALL SOMEONE A CROOK, YOU CALL THEM A CRIMINAL, YOU SAY

21   THEY ENGAGED IN THIS SOFT PONZI SCHEME, YOU KNOW, I THINK

22   THERE YOU CAN CALL THEM AN ASSORTMENT OF NAMES, THAT THAT IN

23   ITSELF ISN'T DEFAMATION BECAUSE THOSE ARE STATEMENTS OF

24   OPINION AND MAYBE STATEMENTS OF HEATED OPINION WHEN PEOPLE ARE

25   UPSET AND IT'S RHETORIC OR HYPERBOLE, BUT IT'S NOT A FALSE

1    STATEMENT OF FACT.

2            THE COURT:  OKAY.

3            MS. ECK:  OKAY, AND I GUESS JUST ONE OTHER THING ON

4    THE DEFAMATION, WHICH I THINK IS AN IMPORTANT POINT THAT THEY

5    HAVEN'T SHOWN, IS THAT TRUMP UNIVERSITY HAS TO SHOW THAT IT'S

6    DAMAGED BY HER STATEMENTS, AND HERE THEY HAVEN'T PRODUCED ANY

7    EVIDENCE OF HOW PROSPECTIVE STUDENTS, AS I MENTIONED BEFORE,

8    COULD HAVE BEEN DAMAGED BY THESE STATEMENTS, BECAUSE THEY WERE

9    PRIVATE STATEMENTS TO HER BANK -- LIKE I SAID, IT WAS ONLY

10   SEEN BY HER, HER BANK, AND TRUMP -- AND PRIVATE LETTERS TO THE

11   BETTER BUSINESS BUREAU.  THESE LETTERS TO THE BUSINESS BUREAU

12   AREN'T POSTED ON THE INTERNET.  THEY'RE NOT PUBLICLY

13   AVAILABLE.  THEY'RE ONLY PRIVATE TO THE BETTER BUSINESS

14   BUREAU, AND THE BETTER BUSINESS BUREAU PROVIDED A COPY TO

15   TRUMP.  WE HAVEN'T ALLEGED THAT ANY PROSPECTIVE STUDENTS OR

16   ANYONE ELSE SAW THESE LETTERS.

17            ALSO, THEY HAVE NOT SHOWN THAT ANY DAMAGES THAT IT

18   ALLEGES, THAT ANY DAMAGES THEY DID SUFFER WERE CAUSED BY TARLA

19   AS OPPOSED TO OTHER FACTORS.  FOR EXAMPLE, THERE'S HUNDREDS OF

20   COMPLAINTS ON THE INTERNET THAT THESE SEMINARS ARE A SCAM AND

21   THEY'RE WORTHLESS.  THERE'S NO SHOWING THAT IT WAS TARLA'S

22   STATEMENTS THAT HARMED THEM AS OPPOSED TO ALL THESE OTHER

23   COMPLAINTS OR, FOR THAT MATTER, THE FINDING BY THE NEW YORK

24   DEPARTMENT OF EDUCATION THAT IT COULDN'T CALL ITSELF A

25   UNIVERSITY, OR MEDIA ARTICLES BY THE NEW YORK *DAILY NEWS*, THE

1    INVESTIGATIONS BY THE STATE ATTORNEYS GENERAL.  THERE'S NO

2    SHOWING THAT ANY HARM IT DID SUFFER WAS DUE TO TARLA AND NOT

3    ANY OF THESE OTHER THINGS.

4            FINALLY, THEY HAVEN'T PRODUCED ANY EVIDENCE OF THE

5    AMOUNT OF ITS DAMAGES.  THEY DON'T SAY THAT OUR PROFITS BEFORE

6    WERE X AND OUR PROFITS NOW ARE Y.  IT'S JUST VAGUE, THAT THE

7    PROFITS HAVE GONE DOWN.

8            FINALLY, THERE'S NO EVIDENCE THAT THESE PRIVATE

9    STATEMENTS HAVE A NATURAL TENDENCY TO INJURE, BECAUSE THERE'S

10   NO NATURAL TENDENCY TO LESSEN A COMPANY'S PROFITS WHEN THESE

11   STATEMENTS AREN'T MADE PUBLIC.

12           SO, IN CLOSING, I WOULD SAY TRUMP UNIVERSITY'S

13   DEFAMATION CLAIM, IF IT'S ALLOWED TO STAND, BASICALLY,

14   CONSUMERS IN THIS STATE WON'T BE ALLOWED TO COMPLAIN TO THEIR

15   BANKS OR COMPLAIN TO THE BETTER BUSINESS BUREAU WHEN THEY FELT

16   THAT THEY'VE BEEN DEFRAUDED, AND THAT'S JUST NOT THE LAW OF

17   THIS STATE.

18           THE COURT:  THANK YOU.

19           OKAY, MR. SCHNEIDER.

20           MR. SCHNEIDER:  THANK YOU, YOUR HONOR.

21           IF I COULD, COULD I START ON THE FIRST HALF OF THE

22   PROTECTED-SPEECH ISSUE?

23           THE COURT:  YES.

24           MR. SCHNEIDER:  THE ANTI-SLAPP STATUTE ONLY PROTECTS

25   CERTAIN SPEECH, AND THAT SPEECH HAS TO OCCUR IN ONE OF FOUR

1     AREAS, EITHER BEFORE A JUDICIAL OR LEGISLATIVE OR EXECUTIVE

2     PROCEEDING, AND I THINK THAT THE PLAINTIFF HAS ESSENTIALLY

3     CONCEDED THAT THESE STATEMENTS WERE CERTAINLY NOT IN ANY OF

4     THOSE PROCEEDINGS.

5          SO THAT LEAVES THE THIRD OR FOURTH PRONG OF 425.16.

6     THE THIRD PRONG REQUIRES THAT THE STATEMENT BE MADE IN A

7     PUBLIC FORUM, AND AS PLAINTIFF'S COUNSEL JUST REPRESENTED TO

8     THE COURT, THESE WERE PRIVATE LETTERS, AS SHE DESCRIBED THEM.

9     SHE ALSO PUT THAT IN HER RESPONSIVE BRIEF.  SO, CLEARLY, THEY

10    WERE NOT MADE IN A PUBLIC FORUM, AND SHE JUST WENT ON TO SAY

11    THAT THESE COULD HAVE NOT CAUSED DAMAGES.  WE'LL GET TO THAT

12    IN A MOMENT, BUT SHE CONCEDED THAT THE THIRD PRONG CANNOT

13    APPLY BECAUSE THESE WERE NOT MADE IN A PUBLIC FORUM.  SO IT'S

14    NOT AFFORDED PROTECTION OF 425.16 UNDER THE THIRD PRONG,

15    EITHER.

16         SO THE ONLY WAY THEY CAN SATISFY THEIR BURDEN IS IF

17    THEY CAN SOMEHOW ESTABLISH BY EVIDENCE THE FOURTH PRONG, WHICH

18    IS THAT THIS IS A MATTER OF PUBLIC CONTROVERSY.  AND TO DO

19    THAT, THE CASE LAW REQUIRES THAT THEY SUBMIT EVIDENCE, AND THE

20    ONLY EVIDENCE THAT'S BEFORE THIS COURT ARE TWO DECLARATIONS

21    FROM MISS MAKAEFF TALKING ABOUT OPINION-VS.-FACT ISSUES.

22    THERE'S NO EVIDENCE THAT THERE IS THE THOUSANDS OR NOW THE

23    CLAIM OF HUNDREDS OF PEOPLE ON THE INTERNET COMPLAINING ABOUT

24    BEING DUPED.  THERE'S NO EVIDENCE.

25         PUTTING ASIDE FOR A MINUTE THE PROBLEM THAT THAT

1    WOULD BE HEARSAY AND RELIABILITY ISSUES, AS MISS MAKAEFF HAS

2    ALREADY STATED IN ONE OF HER DECLARATIONS, THAT SHE POSTS HER

3    OWN INTERNET POSTING UNDER AN ANONYMOUS NAME, OR PSEUDO-NAME.

4    SO THERE ARE CREDIBILITY ISSUES, BUT THAT EVIDENCE ISN'T EVEN

5    BEFORE THE COURT THAT THERE'S ANY PUBLIC ISSUE.

6            AND THE FOURTH PRONG, THE CASE LAW IS VERY CLEAR THAT

7    IT'S NOT JUST SOMETHING OF PUBLIC INTEREST, THAT THE PUBLIC

8    MIGHT BE INTERESTED IN.  IT ACTUALLY HAS TO BE A PUBLIC

9    CONTROVERSY, AND THERE'S NO EVIDENCE BEFORE THE COURT THAT

10   THIS IS A PUBLIC CONTROVERSY.

11           NOW, THE DECLARATION THAT MISS MAKAEFF FILED,

12   PARAGRAPH SEVEN, SHE STATES VERY CLEARLY THAT THE REASON THAT

13   SHE WROTE HER LETTER TO THE BANK WAS TO GET HER MONEY BACK.

14   SHE WAS NOT WRITING ABOUT A PUBLIC CONTROVERSY.  SHE WAS

15   TRYING TO GET HER $5,000 CREDIT BACK FROM THE BANK.  THERE WAS

16   NO ISSUE OF PUBLIC CONTROVERSY EVEN MENTIONED THERE IN HER

17   LETTER OR EVEN IN HER DECLARATION THAT SHE FILED WITH THIS

18   MOTION.

19           SO THERE'S SIMPLY NO EVIDENCE BEFORE THE COURT THAT

20   THERE IS A PUBLIC CONTROVERSY, AND BECAUSE OF THAT, YOUR

21   HONOR, I DON'T BELIEVE THAT THEY CAN EVEN GET OVER THE FIRST

22   HURDLE TO ESTABLISH THAT THIS IS PROTECTED SPEECH, THESE

23   LETTERS TO THE BANK AND THE CREDIT CARD AND TO THE BETTER

24   BUSINESS BUREAU.  IF THEY CAN'T GET OVER THAT FIRST HURDLE,

25   THEN THE BURDEN NEVER SHIFTS OVER TO OUR SIDE, BUT LET'S

1    ASSUME FOR A MINUTE THAT THEY CAN GET OVER THIS AND ADDRESS

2    THESE ISSUES.

3           THE COURT:  YES, WE NEED TO MAKE THOSE ASSUMPTIONS

4    FOR ARGUMENT'S SAKE.

5           MR. SCHNEIDER:  I UNDERSTAND.

6           THE COURT:  SO ASSUMING, OKAY, ASSUMING THAT SHE, YOU

7    KNOW, CAN MEET HER BURDEN OF SHOWING A *PRIMA FACIE* CASE, THEN.

8           MR. SCHNEIDER:  THE NEXT ISSUE, AS THE COURT

9    IDENTIFIED EARLIER, IS WHETHER OR NOT TRUMP UNIVERSITY, LLC, A

10   PRIVATELY-HELD COMPANY OF 39 EMPLOYEES, IS A PUBLIC FIGURE,

11   AND AGAIN THERE'S BEEN NO EVIDENCE SUBMITTED TO THIS COURT

12   THAT TRUMP UNIVERSITY, LLC, IS A PUBLIC FIGURE.  I THINK THAT

13   WE WOULD READILY CONCEDE THAT DONALD TRUMP IS A PUBLIC FIGURE.

14   I DON'T THINK THAT THERE NEEDS TO BE EVIDENCE SUBMITTED TO THE

15   COURT, BUT I SUSPECT THAT THE COURT NEVER EVEN HEARD OF TRUMP

16   UNIVERSITY, LLC, BEFORE THIS MATTER WAS BROUGHT TO THE COURT'S

17   ATTENTION.  THERE'S NO EVIDENCE THAT'S BEEN SUBMITTED BY MISS

18   MAKAEFF OR COUNSEL THAT IT'S A PUBLIC COMPANY.

19           AND IN FACT, THE CASES THAT TALK ABOUT PUBLIC, THE

20   PUBLIC FIGURE ARE COMPANIES THAT ARE PUBLICLY TRADED, THAT

21   HAVE SOMEWHERE IN THE NEIGHBORHOOD OF THOUSANDS TO TENS OF

22   THOUSANDS TO MILLIONS OF SHAREHOLDERS.  IN THE AMPEX CASE, THE

23   CONCERN THERE WAS NOT ONLY THE TENS OF THOUSANDS OF

24   SHAREHOLDERS, BUT ALSO THE MARKET WAS GOING TO BE AFFECTED BY

25   WHAT WAS GOING ON WITH THAT COMPANY.  SO THERE WAS AN ENTIRE

 1   FINANCIAL MARKET THAT COULD BE AFFECTED BY WHAT WAS GOING ON

 2   IN THOSE ALLEGATIONS, NOT JUST THE 18,000 SHAREHOLDERS.

 3        HERE, WE HAVE A COMPANY THAT IS PRIVATELY HELD, WITH

 4   39 EMPLOYEES.  THERE JUST SIMPLY ISN'T ANY EVIDENCE BEFORE THE

 5   COURT THAT THIS IS A PUBLIC FIGURE.  IT DOESN'T BECOME A

 6   PUBLIC FIGURE UNLESS IT INJECTS ITSELF INTO THE CONTROVERSY,

 7   AND AGAIN THERE'S NO EVIDENCE THAT'S BEEN SUBMITTED TO THE

 8   COURT THAT IT DID ANYTHING.  THE ONLY PRESS RELEASES THAT HAVE

 9   BEEN ISSUED IN THIS CASE HAVE BEEN BY MISS MAKAEFF AND HER

10   COUNSEL.  TRUMP UNIVERSITY, LLC, HAS ISSUED NO PRESS RELEASES.

11   IT'S HELD NO PRESS CONFERENCES.  IT HAS NOT INJECTED ITSELF

12   INTO THIS CONTROVERSY.

13        AND THE CASE LAW THAT WE CITED IN OUR BRIEF ALSO

14   SPECIFICALLY ADDRESSES THE ISSUE ABOUT ASSOCIATION WITH PUBLIC

15   FIGURES, AND THE CASE CITED BY MISS MAKAEFF'S COUNSEL, THE

16   JENSEN CASE IN CONNECTICUT, SAID EVEN IN THAT CASE WHEN

17   THERE'S AN ASSOCIATION WITH A PUBLIC FIGURE, YOU DON'T BECOME

18   A PUBLIC FIGURE MERELY BY THE ASSOCIATION; YOU MUST DO SOME

19   POSITIVE ACT TO INJECT YOURSELF INTO THE CONTROVERSY TO BECOME

20   A LIMITED PUBLIC FIGURE.  AND THERE'S NO EVIDENCE OR EVEN AN

21   INFERENCE THAT TRUMP UNIVERSITY HAS DONE ANYTHING TO INJECT

22   ITSELF INTO THIS CONTROVERSY.

23        NEXT --

24        THE COURT:  LET ME GO BACK TO THE STATEMENTS

25   THEMSELVES.  I JUST WANT TO MAKE SURE.  IT'S YOUR POSITION

1  THAT THE STATEMENTS IN THE LETTER SHE WROTE, THEY STILL ARE

2  NOT PROTECTED SPEECH BECAUSE SHE -- ISN'T SHE WARNING OTHER

3  CONSUMERS, THOUGH?  I MEAN, CAN'T I INTERPRET SOME OF HER

4  STATEMENTS, EVEN THOUGH SHE WANTS HER MONEY BACK, SHE'S STILL

5  WARNING CONSUMERS?

6          MR. SCHNEIDER:  WELL, BY HER OWN ADMISSION, SHE SENT

7  THE LETTER TO THE BANK ONLY.  SO, IF HER ARGUMENT WAS, I WAS

8  TRYING TO NOTIFY THE BANK OFFICER NOT TO INVEST IN TRUMP

9  UNIVERSITY, I GUESS THAT WOULD BE THE MOST THAT SHE COULD DO.

10 BUT SHE CAN'T BE NOTIFYING OR WARNING CONSUMERS, BECAUSE SHE'S

11 ALREADY CONCEDED THAT SHE SENT THIS LETTER TO HER BANK TO GET

12 HER MONEY BACK.  SO THAT NOT ONLY WASN'T HER PURPOSE STATED IN

13 THE LETTER, SHE'S FILED THE DECLARATION IN THIS PROCEEDING

14 THAT SAID, I SENT THE LETTER TO THE BANK TO GET MY MONEY BACK.

15 SO THAT WAS HER STATEMENT UNDER OATH AS TO HER DECLARED

16 PURPOSE.

17          I WAS GOING TO NEXT TURN TO --

18          THE COURT:  OKAY, SO YOU'RE BASICALLY RELYING ON THE

19 PLAINTIFF'S COMPLAINT IN BEING ABLE TO ARGUE THAT SHE HASN'T

20 MET HER BURDEN.  CORRECT?

21          MR. SCHNEIDER:  WELL, ON HER COMPLAINT, THE

22 DECLARATIONS THAT SHE FILED --

23          THE COURT:  RIGHT.

24          MR. SCHNEIDER:  -- AND, PROBABLY MORE IMPORTANTLY,

25 THE LACK OF EVIDENCE, THAT SHE HASN'T FILED ANY DECLARATIONS

1    SHOWING ANY OF THESE OTHER ISSUES THAT I'VE ALREADY OUTLINED.

2    I WON'T REPEAT THEM HERE.

3            THE COURT:  OKAY.

4            MR. SCHNEIDER:  THEN I WAS GOING TO ADDRESS THE --

5            THE COURT:  SO PUBLIC FIGURE, YOU ADDRESSED THAT.

6            MR. SCHNEIDER:  THE FACT VS. OPINION.

7            THE COURT:  OKAY, LET ME GO BACK.  SO, IF TRUMP

8    UNIVERSITY IS NOT A PUBLIC FIGURE, THEN MALICE DOESN'T HAVE TO

9    BE SHOWN AND THE BURDEN WOULD BE ON YOUR CLIENT TO SHOW THAT.

10           MR. SCHNEIDER:  CORRECT.  IF THEY'RE NOT A PUBLIC

11   FIGURE.

12           THE COURT:  RIGHT.

13           MR. SCHNEIDER:  ASSUMING THEY GET OVER THE PROBLEM OF

14   425.16.

15           THE COURT:  CORRECT.

16           MR. SCHNEIDER:  OKAY, THEY'RE OVER THAT HURDLE.  WE

17   THEN HAVE TO SHOW A NATURAL TENDENCY TO HARM, AND THE CASE LAW

18   IS PRETTY CLEAR THAT DEFAMATION *PER SE* OF ACCUSING SOMEBODY OF

19   A CRIME, THERE'S A PRESUMPTION OF DAMAGES, THERE'S A

20   PRESUMPTION THAT YOU'VE BEEN HARMED.  SO WE WOULDN'T ACTUALLY

21   EVEN HAVE TO OFFER EVIDENCE OF DAMAGES, BUT THE UNCONTROVERTED

22   TESTIMONY OR DECLARATION BY MR. SEXTON IS THAT THEY HAVE SPENT

23   TIME AND MONEY SIMPLY RESPONDING TO THESE DEFAMATORY CHARGES

24   THAT THEY WERE NOTIFIED OF THROUGH THE BANK OF AMERICA AND

25   THROUGH THE BETTER BUSINESS BUREAU.  THAT IS A DAMAGE, AND

1    EVEN IF IT'S NOMINAL, AND WE'RE NOT SUGGESTING OR CONCEDING

2    THAT IT IS, THEY DON'T HAVE TO BE SIGNIFICANT DAMAGES.  THEY

3    JUST HAVE TO BE DAMAGES.

4         SO, PUTTING ASIDE EVEN THE PRESUMPTION, THE

5    UNCONTROVERTED EVIDENCE THAT WE HAVE SUBMITTED IS THAT TRUMP

6    UNIVERSITY, LLC, HAS INCURRED EXPENSES AS A DIRECT RESULT OF

7    MISS MAKAEFF'S DEFAMATORY LANGUAGE, RESPONDING TO THESE

8    CLAIMS.

9         IN ADDITION, THE DECLARATION OF MR. SEXTON IS THAT

10   THE REPUTATION HAS BEEN HARMED AND THAT THEIR PROFITS HAVE

11   DECLINED, PERHAPS COINCIDENT WITH THE TIMING.  PERHAPS THERE'S

12   ADDITIONAL FACTORS AND REASONS WHY, BUT WORD BACK FROM THE

13   TEACHERS AND ATTENDEES IS THESE POSTINGS, ONE OF WHICH MISS

14   MAKAEFF MADE.  SO THERE'S CERTAINLY EVIDENCE BEFORE THE COURT

15   THAT TRUMP UNIVERSITY HAS SUSTAINED DAMAGE.

16        THE COURT:  DOESN'T TRUMP UNIVERSITY HAVE TO SHOW

17   FALSITY, ASSUMING THAT THE *PRIMA FACIE* CASE HAS BEEN MET BY

18   THE PLAINTIFF IN THIS CASE?

19        MR. SCHNEIDER:  WE HAVE TO SHOW WE'RE LIKELY TO

20   PREVAIL, WHICH MEANS WE WOULD HAVE TO ESTABLISH AT THIS EARLY

21   JUNCTURE THAT THOSE STATEMENTS ARE FALSE, AND HERE'S WHAT

22   WE --

23        THE COURT:  HOW HAVE YOU DONE THAT?

24        MR. SCHNEIDER:  WE'VE DONE THAT TWO WAYS, AND IF I

25   COULD (PAUSE) -- WELL, ONE WAY:  FROM THE DECLARATION OF MR.

1    SEXTON.  MR. SEXTON IS THE PRESIDENT OF THE COMPANY.  HIS

2    DECLARATION MAKES CLEAR THAT HE IS COMPLETELY FAMILIAR WITH

3    THE OPERATION OF THE COMPANY.  THIS IS NOT A LARGE COMPANY.

4    IT'S 39 EMPLOYEES.  HE'S FAMILIAR WITH THE EMPLOYEES, THE

5    INSTRUCTORS, THE PROGRAMS, THE FINANCIAL SITUATION OF THE

6    COMPANY.  HE'S SPOKEN TO THE INSTRUCTORS.  HE IS FAMILIAR WITH

7    THEIR PRACTICES.  HE'S FAMILIAR WITH THE BUSINESS PRACTICES.

8    AND HIS DECLARATION, WHICH IS UNCONTROVERTED, IS THAT THEY

9    NEVER OPEN UP AN ATTENDEE'S CREDIT WITHOUT SPECIFIC

10   AUTHORIZATION.  THEY NEVER GO TO THIRD-PARTY SOURCES TO CHECK

11   ANYBODY'S CREDIT.  THEY'VE NEVER TAKEN ANYBODY'S IDENTITY

12   IMPROPERLY OR ILLEGALLY.  SO HE HAS SPECIFICALLY ADDRESSED THE

13   SPECIFIC DEFAMATORY COMMENTS THAT MISS MAKAEFF MADE.

14        THE COURT:  BUT THE PLAINTIFF SAYS THESE PARTICULAR

15   STATEMENTS, WHICH, I FIND, ARE THE MOST EGREGIOUS, WEREN'T

16   DIRECTED TO TRUMP UNIVERSITY.  THEY WERE DIRECTED TO CHILDERS

17   AND PROFIT.

18        MR. SCHNEIDER:  TWO THINGS, YOUR HONOR.

19        FIRST OF ALL, IT'S CURIOUS THAT IN THE COMPLAINT THAT

20   MISS MAKAEFF FILED SHE SUED TRUMP UNIVERSITY, LLC, FOR

21   $60,000.  SHE DIDN'T SUE CHILDERS; SHE DIDN'T SUE TRUMP

22   INSTITUTE; SHE DIDN'T SUE THE PUBLISHING COMPANY.  AND SHE

23   ALLEGES IN HER COMPLAINT THAT TRUMP UNIVERSITY IS RESPONSIBLE

24   FOR THE $60,000 AND ALL OF THE BAD THINGS THAT HAPPENED TO

25   HER.  WHEN WE FILED THIS COUNTERCLAIM, NOW SHE'S SAYING, OKAY,

1    WELL, REALLY, IT'S NOT $60,000.  IT'S $35,000, AND THESE ARE

2    DIFFERENT COMPANIES, AND I WAS TALKING ABOUT STATEMENTS TO

3    DIFFERENT ENTITIES, AND I MAY GO SUE THEM NOW, BUT THAT'S NOT

4    WHAT SHE SAID IN THE COMPLAINT.

5            NUMBER TWO IS, IF THE COURT LOOKS AT EXHIBIT A, PAGE

6    TEN, NOWHERE DOES IT SAY THAT THIS IS TALKING ABOUT JUST THE

7    PUBLISHING COMPANY.  IT SAYS, I WAS TRICKED INTO SIGNING UP

8    WITH THIS, WITH MY INFORMATION WAS TAKEN UNDER HIGH-PRESSURE

9    SALES TACTICS, IN VIOLATION OF STATE AND FEDERAL PROCEEDINGS,

10   BAIT-AND-SWITCH, UNSOLICITED TAKING OF PERSONAL CREDIT,

11   TRICKERY AND OPENING CREDIT CARDS WITHOUT MY APPROVAL.

12   NOWHERE DOES THIS SAY THIS IS TALKING ABOUT PROFIT PUBLISHING

13   GROUP, AND THE FACT THAT NOW MISS MAKAEFF COMES IN WITH A

14   DECLARATION SAYING, WELL, THAT'S WHAT I REALLY MEANT, THAT'S

15   NOT WHAT THE STATEMENT SAYS, AND NOWHERE DOES SHE LIMIT THIS

16   TO PROFIT PUBLISHING, AND IN FACT SHE SAYS TRUMP UNIVERSITY

17   SLASH PROFIT PUBLISHING, TWO PARAGRAPHS ABOVE.  SO THE

18   INFERENCE IS THAT IT EITHER ALSO INCLUDES TRUMP UNIVERSITY OR

19   IT ONLY INCLUDES TRUMP UNIVERSITY.

20            THE COURT:  OKAY.

21            MR. SCHNEIDER:  ALSO, ON THE FALSEHOOD, I JUST WANT

22   TO ADDRESS THIS ONE POINT, THAT THE CASE LAW IS CLEAR.  IT'S

23   ACTUALLY INTERESTING.  THE NINTH CIRCUIT IN THE MANUFACTURED

24   HOMES CASE -- THAT'S THE ONE INVOLVING DIANE JACOBS -- THE

25   COURT SAID THAT THERE'S NO CATEGORICAL EXEMPTION FOR OPINIONS.

1    THERE'S SORT OF A MYTH THAT IF YOU SAY, WELL, THAT'S MY

2    OPINION, THAT SOMEHOW PROTECTS THE SPEECH.  THERE'S NO

3    CATEGORICAL EXEMPTION FOR OPINION.

4         THE ISSUE IS WHETHER OR NOT A REASONABLE PERSON WOULD

5    INTERPRET THE CHALLENGED STATEMENT TO BE CONVEYING A FALSE

6    IMPUTATION.  SO YOU CAN'T SAY, WELL, IN MY OPINION, JOHN SHOT

7    AND KILLED HIS WIFE.  THAT DOESN'T MAKE IT AN OPINION JUST

8    BECAUSE YOU COUCH IT OR TRY AND SHROUD IT INTO AN OPINION.

9    THE ISSUE IS WHETHER OR NOT IT'S PROVABLE OR NOT PROVABLE AS A

10   FACT, AND MISS MAKAEFF STATING THAT TRUMP UNIVERSITY OPENS

11   PEOPLE'S CREDIT CARDS WITHOUT THEIR AUTHORIZATION, IN MY

12   HUMBLE OPINION, DOESN'T CHANGE THAT IT'S A FACT THAT WE CAN

13   PROVE OR NOT PROVE, AND THE EVIDENCE BEFORE THE COURT IS THAT

14   TRUMP UNIVERSITY DOES NOT DO THAT.

15        WE'VE CERTAINLY MET THE BURDEN AT THIS STAGE, AND THE

16   CASE LAW IS CLEAR THAT IF IT COULD BE AN OPINION OR A FACT,

17   EITHER WAY, THAT THAT'S A JURY DETERMINATION.  THE COURT

18   DOESN'T HAVE TO FIND AS A MATTER OF LAW THAT WE CAN OR

19   ABSOLUTELY WILL WIN ON THE ISSUE.  WE SIMPLY HAVE TO PRESENT

20   THE EVIDENCE THAT IT IS DISPROVABLE.

21        WERE THERE ANY OTHER ISSUES, YOUR HONOR?

22        I THINK IN MY NOTES I (PAUSE) --

23        THE COURT:  AND THEN AS FAR AS DAMAGES ARE CONCERNED

24   (PAUSE) -- WELL, WHY DON'T YOU ADDRESS THAT AGAIN?  ON THE

25   DAMAGES ISSUE.

1              MR. SCHNEIDER:  YES, YOUR HONOR.

2          I THINK IT'S A TWO-STEP ANALYSIS.

3          IF WE'RE NOT A PUBLIC FIGURE, THEN THERE'S A

4    PRESUMPTION OF DAMAGES, AND I THINK WE'VE MET OUR BURDEN.  AS

5    I MENTIONED A MOMENT AGO, THE CASE LAW IS CLEAR THAT

6    DEFAMATION *PER SE*, ACCUSING SOMEONE OF A CRIME, IS, THERE'S A

7    PRESUMPTION OF DAMAGES.  SO WE'VE MET THAT BURDEN.

8          IF WE MUST SHOW ACTUAL MALICE, I AGREE IT'S A MUCH

9    TOUGHER CALL TO GET INSIDE OF MISS MAKAEFF'S HEAD AND KNOW AT

10   THE TIME THAT SHE DID NOT REASONABLY BELIEVE THE STATEMENTS

11   THAT SHE WAS MAKING WERE TRUE.  I THINK THE REASON THAT THE

12   SHARON DECISION STATES THAT YOU CAN USE CIRCUMSTANTIAL

13   EVIDENCE IS BECAUSE IT IS SO DIFFICULT TO GET INSIDE OF THE

14   DECLARANT'S MIND AT THE TIME.

15         I DO THINK THAT IT IS SIGNIFICANT, THE TIMING AND

16   SEQUENCE OF THESE EVENTS, AND IT WASN'T JUST TWO MONTHS THAT

17   MISS MAKAEFF WAS SINGING THE PRAISES.  SHE WENT THROUGH ALL OF

18   THESE PROGRAMS, FILLED OUT ALL OF THESE EVALUATIONS, AND THEN,

19   IN APRIL, SHE WRITES HER LETTER, AND THIS WAS IN HER

20   SUPPLEMENTAL DECLARATION.  SHE ATTACHES A LETTER THAT SHE

21   WROTE TO MY CLIENT.  SO SHE'S BEEN IN THE PROGRAM EIGHT

22   MONTHS, AND IN THAT LETTER SHE SAYS THINGS LIKE COUNSEL SAYS

23   TODAY, THAT SHE FELT LIKE SHE WASN'T GETTING ALL THAT SHE

24   THOUGHT SHE WAS GOING TO GET, OR SHE THOUGHT SHE WAS GOING TO

25   GET MORE INSTRUCTION ABOUT A, B, AND C, OR SHE WASN'T SURE IF

1      THE VALUE WAS THERE FOR HER.  SO SHE PURCHASED MORE PRODUCTS.

2      THERE WAS NO STATEMENT IN APRIL OF '09 THAT MY CLIENT WAS

3      COMMITTING CRIMES, THAT MY CLIENT WAS STEALING CREDIT CARDS

4      AND COMMITTING LARCENY AND LYING TO PEOPLE, AND SO FORTH.

5      THAT'S JUST ABSENT FROM THAT LETTER IN APRIL.

6              AND THEN, WHEN MY CLIENT DENIES HER REQUEST FOR A

7      FULL REFUND BUT OFFERS TO PROVIDE MORE SERVICES, MORE

8      PROGRAMS, MORE INSTRUCTION, SHE ACCEPTS THAT.  SHE GOES TO YET

9      ANOTHER PROGRAM.  SHE GIVES A VIDEO TESTIMONIAL, SAYING, I

10     REALLY LIKE THE PROGRAM.  I LIKE MY MENTOR.  I LIKE ALL OF

11     THIS.  SHE TALKS 15 MORE TIMES.  THIS IS IN THE DECLARATION BY

12     MR. SEXTON.  SHE SPEAKS TO 15, 15 MORE TELEPHONE CONVERSATIONS

13     WITH TRUMP UNIVERSITY MENTORS AND PEOPLE TRYING TO HELP HER

14     WITH HER CONTRACTS, AND SO FORTH, ALL THE WAY THROUGH JUNE;

15     AND THEN, WHEN THEY WILL NOT GIVE HER HER MONEY BACK, THEN SHE

16     STARTS ACCUSING THEM OF CRIMES.

17             NOT ONLY DOES SHE ACCUSE THEM OF CRIMES, SHE ACCUSES

18     THEM OF CRIMES THAT HAD NOTHING TO DO WITH HER.  THERE'S NO

19     CLAIM THAT TRUMP UNIVERSITY STOLE HER IDENTITY.  THERE'S NO

20     CLAIM THAT TRUMP UNIVERSITY STOLE, OPENED CREDIT CARDS WITHOUT

21     HER AUTHORIZATION.  SO NOW SHE'S MAKING STATEMENTS THAT ARE

22     NOT ONLY NEW, BUT THEY'RE INCONSISTENT WITH HER OWN

23     EXPERIENCE, AND WE BELIEVE THAT THAT CIRCUMSTANTIAL EVIDENCE

24     IS A VERY GOOD INDICATION THAT SHE COULD NOT HAVE REASONABLY

25     BELIEVED THOSE STATEMENTS WHEN SHE MADE THEM.

1      WHAT I BELIEVE LIKELY OCCURRED IS THAT SHE WENT ON

2   THE INTERNET AND SHE SAW SOME ANONYMOUS POSTINGS, AND SHE JUST

3   DECIDED TO PICK AND CHOOSE OTHER PEOPLE'S CONCERNS, AND WHO

4   KNOWS IF THOSE ARE ACCURATE OR NOT?  BECAUSE THERE'S NO

5   EVIDENCE BEFORE THIS COURT OF EVEN THOSE KINDS OF STATEMENTS.

6   BUT SHE WAS NEVER ACCUSING TRUMP UNIVERSITY OF ANY OF THESE

7   BAD ACTS AND CRIMINAL CONDUCT UP THROUGH APRIL OR MAY OR JUNE,

8   WHEN SHE WAS STILL TAKING ALL THE PROGRAMS, AND THEN IT WAS

9   FINALLY WHEN TRUMP UNIVERSITY SAID, WE'RE NOT GOING TO GIVE

10   YOU BACK YOUR MONEY AFTER YOU'VE CONSUMED ALL OF THE PRODUCTS,

11   THAT SHE BEGAN THESE STATEMENTS.

12      THE COURT:  THANK YOU.

13      MR. SCHNEIDER:  THANK YOU, YOUR HONOR.

14      THE COURT:  MISS ECK.

15      LET ME ASK YOU ABOUT THE VERY FIRST ISSUE THAT THE

16   DEFENDANT ADDRESSED HERE.  I MEAN, THAT THIS IS NOT EVEN

17   PROTECTED SPEECH.  THESE WERE PRIVATE LETTERS, NOT MADE IN A

18   PUBLIC FORUM AND NOT A MATTER OF A PUBLIC CONTROVERSY, BECAUSE

19   SHE WANTS A REFUND.

20      MS. ECK:  RIGHT.  WE CONCEDE THAT IT'S NOT MADE IN A

21   PUBLIC FORUM.  AT THE TIME WE PREPARED OUR OPENING BRIEF, THEY

22   HADN'T NARROWED DOWN WHERE THESE STATEMENTS OCCURRED.

23   FINALLY, ON OPPOSITION, THEY ATTACHED THE TWO LETTERS AND WE

24   LEARNED FOR THE FIRST TIME THAT THE TWO STATEMENTS, OR THE

25   STATEMENTS ARE CONTAINED IN TWO LETTERS, THE LETTER TO HER

1    BANK AND THE LETTER TO THE BETTER BUSINESS BUREAU.

2         SO, BASED ON THAT, WE ARE NOT ARGUING THAT IT

3    CONSTITUTES PROTECTED SPEECH UNDER THE PUBLIC-FORUM

4    SUBSECTION.  WE'RE ARGUING THAT IT DOES CONSTITUTE PROTECTED

5    SPEECH UNDER PUBLIC-INTEREST SUBSECTION (4) THAT PROTECTS

6    EXERCISING THE RIGHT OF PETITION OR THE CONSTITUTIONAL RIGHT

7    OF FREE SPEECH ON AN ISSUE OF PUBLIC INTEREST, AND THEY

8    MISCITE THE STANDARD ON THAT TEST.  I MEAN, THE STANDARD FOR

9    THAT TEST IS WHETHER IT'S AN ISSUE OF PUBLIC INTEREST, NOT

10   WHETHER IT'S AN ISSUE OF PUBLIC CONTROVERSY.  PUBLIC

11   CONTROVERSY GOES TO WHETHER OR NOT THEY'RE A PUBLIC FIGURE.

12   SO THAT'S A SEPARATE TEST.

13        THE COURT:  WHY IS IT A MATTER OF PUBLIC INTEREST?

14        MS. ECK:  IT'S A MATTER OF PUBLIC INTEREST BECAUSE,

15   NUMBER ONE, CONSUMER INFORMATION IS A MATTER OF PUBLIC

16   INTEREST, OF INTEREST IN ALLOWING CONSUMERS TO EXPRESS THEIR

17   CONCERNS, VOICE THEIR COMPLAINTS AGAINST COMPANIES, AND IN

18   PROTECTING CONSUMERS FROM DECEPTIVE AND MISLEADING PRACTICES.

19        IT'S ALSO AN ISSUE OF PUBLIC INTEREST BECAUSE IT

20   AFFECTS A SUBSTANTIAL NUMBER OF PEOPLE.  THERE ARE THOUSANDS

21   OF PEOPLE WHO HAVE TAKEN TRUMP UNIVERSITY SEMINARS AND PERHAPS

22   THOUSANDS MORE THAT MAY TAKE THEM IN THE FUTURE.

23        THE COURT:  HOW DO I KNOW THAT?  I DIDN'T KNOW ABOUT

24   THIS.  I MEAN, I DIDN'T KNOW ANYTHING ABOUT TRUMP UNIVERSITY

25   AND WHAT THE COURSES WERE.  SO, IS THERE ANY EVIDENCE OF THAT?

1    ARE THERE THOUSANDS?

2         MS. ECK:  THE DEFENDANTS ACKNOWLEDGE IN THEIR INITIAL

3    MOTION TO DISMISS THAT (PAUSE) -- I THINK THEY SAY 2,000

4    PEOPLE HAVE TAKEN THEIR SEMINARS.  WE BELIEVE THE NUMBER IS

5    ACTUALLY HIGHER, BUT THAT'S A NUMBER THAT WILL COME FORWARD IN

6    DISCOVERY.  BUT THAT'S CERTAINLY A SIGNIFICANT ENOUGH NUMBER

7    OF CONSUMERS THAT WOULD BE CONSIDERED SUBSTANTIAL, AND THE

8    AMOUNT IS SUBSTANTIAL.  THESE AREN'T PEOPLE WHO ARE BUYING,

9    YOU KNOW, A $1 CONSUMER PRODUCT.  THESE SEMINARS RANGE IN

10   PRICE FROM $1500 TO $35,000.

11        IT'S ALSO AN ISSUE OF PUBLIC INTEREST BECAUSE, LIKE

12   THE NYGARD CASE THAT WE CITE, IT SAYS IT'S OF PUBLIC INTEREST

13   IF IT'S ONE IN WHICH THE PUBLIC TAKES AN INTEREST, AND TRUMP

14   UNIVERSITY IS SOMETHING IN WHICH THE PUBLIC TAKES INTEREST.

15   IT'S, LIKE I SAID, IT'S ADVERTISED HEAVILY.  YOU SEE IT ON THE

16   INTERNET, ON FACEBOOK, IN E-MAILS.  IT'S CHAIRED BY A

17   HIGH-PROFILE BUSINESSMAN, DONALD TRUMP, WHOSE NAME AND PHOTOS

18   ARE ALL OVER THEIR ADVERTISING, ALL OVER ITS SEMINARS AND

19   MARKETING MATERIALS, AND THE COMPANY IS THE SUBJECT OF

20   HUNDREDS OF INTERNET COMPLAINTS BY CONSUMERS ALLEGING THE SAME

21   THING THAT TARLA SAYS.  THEY PURCHASED THESE SEMINARS, THAT

22   THEY WENT EXPECTING TO GET THIS KNOWLEDGE, AND THEY SHOWED UP

23   AND IT WAS JUST AN UP-SELL TO THE NEXT PROGRAM.  THEY PAID FOR

24   THE NEXT PROGRAM.  THEY DIDN'T RECEIVE WHAT THEY PAID FOR.  IT

25   WAS JUST AN UP-SELL FOR THE NEXT PROGRAM, AND THEY'RE ASKING,

1    WHEN ARE WE GET GOING TO GET THE VALUE THAT WE PAID FOR?  SO

2    THERE ARE HUNDREDS OF POSTINGS ON THE INTERNET.  YOU CAN GO

3    ONLINE AT RIPOFFREPORT.COM AND COMPLAINTSBOARD.COM AND SEE

4    THESE COMPLAINTS.  IT'S BEEN INVESTIGATED BY STATE ATTORNEYS

5    GENERAL.

6            SO TRUMP UNIVERSITY IS OF PUBLIC INTEREST, AND IT'S

7    IN THE PUBLIC EYE.

8            THE COURT:  AND YOU'RE SAYING THAT IT'S A PUBLIC

9    FIGURE, ALSO.

10            MS. ECK:  A PUBLIC FIGURE.  BUT, I MEAN, THAT'S A

11    SEPARATE TEST.  BUT WE'RE SAYING IT'S PUBLIC FIGURE, ALSO.

12            THE COURT:  LET'S GO TO THAT, BECAUSE I HAVE TO

13    CONCLUDE.

14            MS. ECK:  OKAY.

15            THE COURT:  SO THE DEFENDANT SAYS, WELL, WE'RE NOT

16    REALLY A PUBLIC FIGURE.  I MEAN, DONALD TRUMP IS, BUT WE'RE

17    NOT PUBLICLY TRADED.  WE HAVE ONLY 39 EMPLOYEES.  WE JUST

18    DON'T MEET THE STANDARD.

19            MS. ECK:  I MEAN, I THINK, FOR THE REASONS I STATED

20    BEFORE, THEY'VE INJECTED THEMSELVES INTO THE PUBLIC AND

21    ADVERTISING HEAVILY AND THE INTEREST IN THEM BECAUSE OF ITS

22    STRONG CONNECTION WITH DONALD TRUMP, THAT IT IS A PUBLIC

23    FIGURE.  BUT EVEN IF IT'S NOT A PUBLIC FIGURE, THEY FAILED TO

24    ESTABLISH A *PRIMA FACIE* CASE OF DEFAMATION.

25            I THINK ANOTHER IMPORTANT THING THAT WE HAVEN'T

1    MENTIONED YET UNDER THE, UNDER IT BEING PROTECTED SPEECH UNDER

2    ANTI-SLAPP IS THAT WE ALSO FALL UNDER SUBSECTION (2) OF THE

3    ANTI-SLAPP STATUTE, WHICH IS ANTICIPATION OF LITIGATION, AND

4    THE CASES SAY THAT THAT'S VERY BROAD AND THE STATEMENTS CAN BE

5    CONSIDERED IN ANTICIPATION OF LITIGATION EVEN IF THEY AREN'T

6    TO PARTIES TO THE LAWSUIT.

7        SO, AS AN EXAMPLE IN THE NEVILLE CASE WE CITE, AN

8    EMPLOYER WROTE LETTERS TO ALL ITS CUSTOMERS TELLING THEM THAT

9    ITS EMPLOYEE HAD ENGAGED IN MISAPPROPRIATION OF TRADE SECRETS,

10   DON'T DO BUSINESS WITH THIS EMPLOYEE, AND THE COURT SAID THAT

11   EVEN THIS LETTER TO THIRD PARTIES, WRITTEN MONTHS BEFORE THE

12   LITIGATION, CONSTITUTED SOMETHING IN ANTICIPATION OF

13   LITIGATION AND WAS PROTECTED SPEECH UNDER THE ANTI-SLAPP

14   STATUTE.

15       SO WE ARGUE THAT WE FALL UNDER THOSE TWO PRONGS OF

16   SUBSECTION (2) AND SUBSECTION (4)

17       THE COURT:  OKAY, LET'S GO TO THE ACCUSING SOMEONE OF

18   A CRIME.  ISN'T THAT *PER SE* HARMFUL?

19       MS. ECK:  I MEAN, IN THIS CASE, TARLA ACCUSED THEM OF

20   A CRIME BECAUSE SHE BELIEVED THAT THEY HAD ENGAGED IN CRIMINAL

21   CONDUCT.  THEY TAUGHT HER DURING THEIR SEMINARS THAT SHE

22   SHOULD POST THESE BANDIT SIGNS TO GET REAL-ESTATE BUSINESS.

23   SO SHE POSTED THE BANDIT SIGNS, AND SHE FOUND HERSELF BEING

24   INVESTIGATED BY THE DISTRICT ATTORNEY'S OFFICE.  SHE HAD TO

25   HIRE CRIMINAL COUNSEL.  SO SHE BELIEVED THAT SINCE THEY HAD

1    SUBJECTED HER TO CRIMINAL PROSECUTION OR CRIMINAL

2    INVESTIGATION BASED ON WHAT THEY TAUGHT HER, THAT THEY WERE

3    TEACHING, YOU KNOW, CRIMINAL STEPS AND THAT THEY WERE

4    CRIMINALS.

5            THE COURT:  BUT THIS ISN'T IN HER COMPLAINT, IS IT?

6            MS. ECK:  IT IS IN HER COMPLAINT.

7            THE COURT:  OH, IT IS.

8            I GUESS YOU'RE SAYING (PAUSE) -- NOW, ARE YOU SAYING

9    THAT THESE STATEMENTS WERE DIRECTED TO TRUMP UNIVERSITY?  I

10   MEAN, IN YOUR ARGUMENT A FEW MINUTES AGO, YOU SAID THEY WERE

11   DIRECTED TO PROFIT AND CHILDERS.

12           MS. ECK:  RIGHT.  THE FOUR STATEMENTS THAT ARE

13   IDENTIFIED IN HER DECLARATION -- THE GRAND LARCENY, THE

14   IDENTITY THEFT, THE OPENING OF CREDIT CARDS, AND ALSO THE

15   FRAUDULENT BUSINESS PRACTICES FOR ILLEGAL MATERIAL GAIN --

16   THOSE ARE ALL RELATED TO CHILDERS.  SHE STATES THAT IN HER

17   SUPPLEMENTAL DECLARATION WHEN SHE SAID, I BELIEVE, YOU KNOW,

18   THEY'RE CRIMINALS, THEY'RE ENGAGED IN CRIMINAL CONDUCT.

19   THAT'S WHAT THAT WAS BASED ON, THAT THEY SUBJECTED HER TO.

20           AND AGAIN, THE CASE LAW IS VERY CLEAR.  EVEN IF HER

21   OPINION IS LATER FOUND TO BE INCORRECT OR EVEN IF IT WAS MADE

22   IN BAD FAITH OR HER OPINION ISN'T JUSTIFIED, IT'S HER OPINION.

23   SHE'S A LAY PERSON.  SHE'S NOT AN ATTORNEY.

24           THE COURT:  ALL RIGHT.

25           MS. ZELDES:  AND THERE IS CASE LAW, YOUR HONOR, THAT

1   SAYS THAT EVEN WHEN YOU CALL SOMEONE A CROOK OR A CROOKED

2   POLITICIAN, THAT THAT'S AN OPINION.  THAT'S NOT DEFAMATION

3   ACTIONABLE UNDER THE DEFAMATION LAWS.  YOU'RE ALLOWED TO SAY,

4   THEY'RE CROOKS.  THEY RIPPED ME OFF.  THAT'S WHAT THEY DO

5   EVERY DAY.  THAT'S WHAT THE BETTER BUSINESS BUREAU SAID.

6   LET'S KEEP THIS IN CONTEXT.  ONE OF THE LETTERS THEY'RE

7   TALKING ABOUT IS A LETTER TO THE BETTER BUSINESS BUREAU.

8   WHERE ELSE ARE CONSUMERS SUPPOSED TO GO?  A LAY PERSON SAYS, I

9   GOT RIPPED OFF.  SHE'S NOT SPEAKING AS AN ATTORNEY.  SHE'S NOT

10  (PAUSE) --

11          THE COURT:  I UNDERSTAND.

12          MS. ZELDES:  THANK YOU.

13          THE COURT:  THANK YOU.

14          DO NOT INTERRUPT AGAIN.

15          GO AHEAD.

16          MS. ECK:  OKAY, AND LET'S SEE.

17          SO THERE ARE JUST DIFFERENT COMMENTS.  THERE'S THE

18  COMMENT ABOUT -- THE CRIMINAL CONDUCT WAS IN RELATION TO HER

19  DEALINGS, AND THOSE ARE THE BANDIT SIGNS, AND I KNOW WE HAVE

20  CITES TO THOSE IN OUR MOTION AND IN THE COMPLAINT AS WELL, AND

21  I JUST HAVE ANOTHER COMMENT I WANTED TO MAKE.

22          OH.  IN RELATION TO HER COMMENTS, THERE'S HER

23  STATEMENTS TO THE BETTER BUSINESS BUREAU.  HER INTENTION WAS

24  NOT ONLY TO GET HER MONEY BACK, BUT ALSO TO WARN OTHER

25  CONSUMERS.  CLEARLY, THAT'S WHY CONSUMERS MAKE COMPLAINTS TO

1    THE BETTER BUSINESS BUREAU, SO THAT THEY'LL INVESTIGATE AND

2    WARN OTHER CONSUMERS, AND SHE INDICATES THAT IN HER INITIAL

3    DECLARATION, THAT SHE INTENDED TO WARN OTHER CONSUMERS AS

4    WELL.

5            THE COURT:  THANK YOU.

6            MS. ZELDES:  YOUR HONOR, MAY I MAKE ONE COMMENT --

7            THE COURT:  YES.

8            MS. ZELDES:  -- ABOUT THE PUBLIC-FIGURE ANALYSIS THAT

9    I THINK IS CRITICAL HERE AND DIFFERENT THAN IN MOST CASES?

10           AND ALSO JUST AS AN ASIDE, THE BETTER BUSINESS BUREAU

11   HAS GIVEN TRUMP UNIVERSITY A D-MINUS RATING.  SHE'S NOT THE

12   ONLY ONE COMPLAINING ABOUT THESE PROBLEMS.

13           BUT ABOUT TRUMP UNIVERSITY BEING A PUBLIC FIGURE,

14   LET'S BE REAL.  THERE IS NO DIFFERENCE BETWEEN DONALD TRUMP

15   THE PUBLIC PERSONA AND TRUMP UNIVERSITY.  IT IS HIS NAME.

16   HE'S THE CHAIRMAN.  HE'S THE FOUNDER.  IT IS HIS FACE.  IF YOU

17   GO TO ANY, GO TO HIS WEBSITE, LOOK AT ANY OF THE --

18           THE COURT:  YOU'RE NOT TELLING ME ANYTHING THAT IS

19   NOT IN YOUR PAPERS.

20           MS. ZELDES:  I'M SORRY, YOUR HONOR.

21           MY POINT IS, THERE IS NO DISTINCTION.  HE IS THE

22   PUBLIC PERSONA.  HE IS TRUMP UNIVERSITY.  IT'S NOT THIS SMALL,

23   LITTLE, YOU KNOW, JOE'S REAL ESTATE COURSE THAT WE'RE TALKING

24   ABOUT HERE.

25           THE COURT:  I UNDERSTAND.

1          MS. ECK:  A MINOR POINT JUST ON THE OPINION.  IN THE

2     GLOBAL TELEMEDIA CASE THAT WE CITE, IT HAS A QUOTE ON PAGE

3     1267 THAT WHEN YOU DETERMINE WHETHER STATEMENTS AND OPINION OF

4     FACT, THAT THE COURT SHOULD LOOK TO THE TOTALITY OF THE

5     CIRCUMSTANCES, LOOK AT THE STATEMENT IN ITS BROAD CONTEXT,

6     WHICH INCLUDES THE GENERAL TENOR OF THE ENTIRE WORK, THE

7     SUBJECT OF THE STATEMENT, THE SETTING AND THE FORMAT OF THE

8     WORK.  AND I THINK, VIEWED IN CONTEXT, THE LETTER SETS OUT IN

9     DETAIL WHY TARLA FEELS THAT THIS COMPANY RIPPED HER OFF, WHY

10    SHE FELT THAT ITS PRACTICES WERE IMPROPER, AND WHY SHE WAS

11    ASKING FOR HER MONEY BACK AND ALERTING THEM, AND I THINK THE

12    FEW KEY STATEMENTS SHOULD BE READ IN LIGHT OF THE CONTEXT OF

13    HER WHOLE LETTER.

14          THE COURT:  THANK YOU.

15          MS. ECK:  THAT'S ALL.

16          THE COURT:  OKAY.

17          I DON'T KNOW IF YOU WANT TO HAVE ANY LAST WORDS,

18    WITHOUT ADDRESSING EVERYTHING, BUT --

19          MR. SCHNEIDER:  THANK YOU, YOUR HONOR.

20          THE COURT:  -- LET'S TALK ABOUT THE PUBLIC FIGURE.

21          WELL, I DON'T KNOW IF I WANT TO GET INTO IT.  I KNOW

22    WHAT THEIR ARGUMENT IS.  I UNDERSTAND WHAT YOUR ARGUMENT IS.

23          IS THERE ANYTHING YOU WANT TO ADD?

24          MR. SCHNEIDER:  JUST TWO THINGS ON THIS LAST POINT,

25    YOUR HONOR, AND I WILL BE BRIEF.

1          THE COURT:  ALL RIGHT.

2          MR. SCHNEIDER:  THE CONCEPT THAT TRUMP UNIVERSITY

3    ADVERTISES HEAVILY, THAT WAS DISPELLED BY THE CALIFORNIA

4    SUPREME COURT IN THE VEGOD CASE, AND THAT'S CITED IN OUR

5    PAPERS.  IT SAYS THAT HEAVILY ADVERTISING DOES NOT MAKE A

6    COMPANY A PUBLIC FIGURE OR A LIMITED PUBLIC FIGURE, AND

7    THERE'S NO EVIDENCE BEFORE, THAT'S BEEN SUBMITTED OR ANY CAUSE

8    THAT'S BEEN SUBMITTED THAT EVEN SUGGESTS THAT AN ASSOCIATION

9    WITH A PUBLIC FIGURE MAKES A SEPARATE ENTITY A PUBLIC FIGURE.

10          AND AGAIN, THE ONLY CASE THAT WAS CITED WAS THE

11    JENSEN CASE, THAT CONNECTICUT CASE, WHICH SAID JUST THE

12    OPPOSITE.  IT SAYS YOU DON'T BECOME A PUBLIC FIGURE OR EVEN A

13    LIMITED PUBLIC FIGURE BY ASSOCIATION WITH SOMEBODY NOTORIOUS.

14    YOU MUST DO SOMETHING MORE THAN THAT.  YOU'VE GOT TO INJECT

15    YOURSELF INTO THIS CONTROVERSY, AND THERE'S BEEN NO EVIDENCE.

16          THE NEXT POINT, OR THE FINAL POINT, IS THAT THERE

17    SEEMS TO BE SORT OF A BLURRING HERE THAT THIS WAS TO WARN

18    CONSUMERS AND TO TELL THE PUBLIC AND IT'S A PUBLIC INTEREST.

19    COUNSEL'S ALREADY CONCEDED THAT THESE WERE PRIVATE LETTERS,

20    THAT THERE WAS GOING TO BE NO WARNING TO THE PUBLIC.

21          THE LAST POINT -- I'M SORRY.  I DID HAVE THREE.  THE

22    LAST ONE WAS THE *IN ANTICIPATION OF LITIGATION*.

23          THE COURT:  OH, I DON'T NEED ARGUMENT ON THAT.

24          MR. SCHNEIDER:  OKAY.  THANK YOU, YOUR HONOR.

25          THE COURT:  OKAY, I'LL TAKE IT UNDER ADVISEMENT, AND

1       I'LL ISSUE A WRITTEN ORDER.

2               THANK YOU.

3               MS. ECK:  THANK YOU, YOUR HONOR.

4               MS. ZELDES:  THANK YOU, YOUR HONOR.

5               MR. SCHNEIDER:  THANK YOU, YOUR HONOR.

6               (PROCEEDINGS ADJOURNED AT 12:03 P.M.)

7    -------------------------------------------------------------

8                       (END OF TRANSCRIPT)

9

10              I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

11   HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

12   ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

13

14              S/FRANK J. RANGUS

15              FRANK J. RANGUS, OCR

16

17

18

19

20

21

22

23

24

25