ROBBINS GELLER RUDMAN
   & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PAULA M. ROACH (254142)
proach@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, PATRICIA MURPHY and SHERI WINKELMANN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 10-cv-00940-IEG(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFF/COUNTERDEFENDANT TARLA MAKAEFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE TRUMP UNIVERSITY'S COUNTERCLAIM |
| TRUMP UNIVERSITY, LLC, a New York Limited Liability Company,<br><br>Counterclaimant,<br><br>vs.<br><br>TARLA MAKAEFF, and ROES 1 through 10, inclusive,<br><br>Counterdefendants. | DATE: October 25, 2010<br>TIME: 10:30 a.m.<br>CRTM: 1<br>JUDGE: Honorable Irma E. Gonzalez |

579161_1

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL STANDARD | 1 |
| III. | ARGUMENT | 2 |
| | A. Trump University Is a Public Figure | 2 |
| | 1. Trump University Is an All Purpose Public Figure Because It Is "Inextricably Intertwined" with an Individual Who Is a Public Figure | 2 |
| | 2. Trump University's Advertisements (Including Its Newly Revised Website) Converted It into a Limited-Purpose Public Figure | 4 |
| | 3. Trump University Is a Public Figure Because It Purports to Be an Educational Entity | 6 |
| | 4. Trump University's Insertion of Itself into the Public Marketplace Has at the Very Least Converted It into a Limited Purpose Public Figure | 7 |
| | B. Plaintiff's Statements Are Protected by the Common Interest Privilege | 10 |
| IV. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page

**CASES**

*American Future Sys., Inc. v. Better Bus. Bureau*,
    923 A.2d 389 (2007) ..................................................................................................6, 8, 9

*Brooks v. San Francisco Chronicle*,
    No. A125046, 2010 WL 3594489
    (Cal. Ct. App. 1st Dist. Sept. 16, 2010) ..............................................................................10

*Brueggemeyer v. American Broadcasting Cos.*,
    684 F. Supp. 452 (N.D. Tex. 1988) ......................................................................................8

*Circuit City Stores, Inc. v. Mantor*,
    417 F.3d 1060 (9th Cir. 2005) ..............................................................................................1

*Dairy Stores, Inc. v. Sentinel Publ'g Co., Inc.*,
    465 A.2d 953 (1983), *aff'd*, 486 A.2d 344 (1985) ...............................................................8

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)...........................................................................................................2, 8

*Gugliotta v. Morano*,
    161 Ohio App. 3d 152 (2005) .............................................................................................11

*Gugliotta v. Morano*,
    No. CV 2001-05-2114 (Ohio Court of Common Pleas 2001) ...........................................11

*Hentzen Contractors, Inc. v. Wichita*,
    814 P.2d 42, 1991 Kan. App. LEXIS 510 (Kan. App. 1991) ...............................................3

*Isuzu Motors Ltd. v. Consumers Union of United States*,
    66 F. Supp. 2d 1117 (C.D. Cal. 1999) ..............................................................................2, 5

*Ithaca Coll. v. Yale Daily News Publ'g Co. Inc.*,
    433 N.Y.S.2d 530 (NY 1980), *aff'd*, 85 A.D. 2d 817 (1981) ............................................7, 8

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) ..............................................................................................10

*Maheu v. CBS, Inc.*,
    201 Cal. App. 3d 662 (1988) ................................................................................................3

*Makaeff v. Trump Univ.*,
    No. 10-cv-00940-IEG (WVG),
    2010 WL 3341638 (S.D. Cal. Aug. 23, 2010) ..................................................................2, 4

**Page**

*Martin v. County of San Diego*,
    650 F. Supp. 2d 1094 (S.D. Cal. 2009)..................................................................................1

*Mattel Inc. v. MCA Records, Inc.*,
    28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002).........................2, 9

*Navajo Nation v. Norris*,
    331 F.3d 1041 (9th Cir. 2003) ..............................................................................................1

*New York Times v. Sullivan*,
    376 U.S. 254 (1964)..............................................................................................................5

*Presidio Components, Inc. v. Am. Technical Ceramics Corp.*,
    No. 08-CV-335-IEG (NLS),
    2010 WL 3384995 (S.D. Cal. Aug. 25, 2010) ......................................................................1

*Rancho La Costa, Inc. v. Superior Court*,
    106 Cal. App. 3d 646 (1980) ..............................................................................................10

*Schiavone Construction Co. v. Time, Inc.*,
    619 F. Supp. 684 (D.N.J. 1985) ...................................................................................3, 4, 8

*School Dist. No. 1J v. AC&S, Inc.*,
    5 F.3d 1255 (9th Cir.1993) ...................................................................................................1

*Sipple v. Found. For Nat'l Progress*,
    71 Cal. App. 4th 226 (1999) .................................................................................................3

*Steaks Unlimited v. Deaner*,
    623 F.2d 264 (3rd Cir. 1980) ............................................................................................5, 6

*Sunshine Sportswear & Electronics, Inc. v. WSOC Television*,
    738 F. Supp. 1499 (D.S.C. 1989).........................................................................................5

*Suzuki Motor Corp. v. Consumers Union of United States Inc.*,
    330 F.3d 1110 (9th Cir. 2003) .............................................................................................5

*Trans World Accounts v. AP*,
    425 F. Supp. 814 (N.D. Cal. 1977) ......................................................................................2

*Vegod Corp. v. American Broadcasting Cos.*,
    25 Cal. 3d 763 (1979)...........................................................................................................4

*Willis v. Centennial Mortgage & Funding, Inc.*,
    No. Civ 03-3641, 2004 WL 2075558
    (D. Minn. Sept. 16, 2004) .............................................................................................11, 12

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 59 ...........................................................................................................................1
    Rule 60(b) ......................................................................................................................1

California Civil Code
    §47(c) ...........................................................................................................................10

Local Rule
    Rule 7.1(i) .....................................................................................................................1
    Rule 7.1(i)(2).................................................................................................................1

**SECONDARY AUTHORITIES**

Restatement (Second) of Torts (2010)
    §594.............................................................................................................................11

Robert D. Sack, Sack on Defamation: Libel, Slander, and Related Problems
    (4th ed. 2010)
    §5:3.5 .............................................................................................................................8
    §9:2.1 ...........................................................................................................................11
    §9:2.5 ...........................................................................................................................12

9 Fletcher Cyclopedia of the Law of Corporations
    §4255.50 (2010)............................................................................................................3

Pursuant to Federal Rule of Civil Procedure 60(b) and Local Rule 7.1(i), Plaintiff Tarla Makaeff ("Plaintiff") respectfully submits this motion for reconsideration of the Court's Order denying her Anti-SLAPP motion to strike Trump University's defamation counterclaim.

## I.   INTRODUCTION

Plaintiff respectfully requests that the Court reconsider its order denying Plaintiff's Anti-SLAPP motion to avoid clear error or manifest injustice. Plaintiff respectfully urges the Court to reconsider whether Trump University is a public figure for purposes of its defamation counterclaim based on newly-discovered law and facts. Additionally, Plaintiff urges the Court to reconsider whether Plaintiff's statements were protected by "common interest" privilege, as Makaeff's statements to the Better Business Bureau ("BBB") and her bank were made *by* an interested person (Makaeff) *to* a person who shared the interest or duty. Plaintiff respectfully submits that the Court's denial of her anti-SLAPP motion will have the unintended consequence of chilling such speech by encouraging the threat of defamation claims in retaliation for consumer complaints to the proper reporting agencies. Thus, Plaintiff respectfully urges the Court to reconsider its decision and grant her anti-SLAPP motion.

## II.   LEGAL STANDARD

"A motion for reconsideration can be filed 'as may be allowed under Rules 59 and 60 of the Federal Rules of Civil Procedure.'" *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, No. 08-CV-335-IEG (NLS), 2010 WL 3384995, at *1 (S.D. Cal. Aug. 25, 2010) (I. Gonzalez) (citing L.R. 7.1(i)(2)). "'Reconsideration is appropriate if the district court . . . committed clear error or the initial decision was manifestly unjust.'" *Id.* (citing *School Dist. No. 1J v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993)); *see also Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063 n.1 (9th Cir. 2005). A party may be entitled to relief under Rule 60(b) based upon, *inter alia*, "any . . . reason justifying relief from the operation of the judgment." *Martin v. County of San Diego*, 650 F. Supp. 2d 1094, 1111 (S.D. Cal. 2009) (I. Gonzalez) (citing Fed. R. Civ. P. 60(b)). The decision whether to grant reconsideration "is committed to the sound discretion of the court." *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003).

**III.   ARGUMENT**

Newly discovered law and facts warrant reconsideration of the Court's Order on Plaintiff's Anti-SLAPP Motion.

**A.   Trump University Is a Public Figure**

At the outset, in determining whether a corporation is a public figure, California and Courts in the Ninth Circuit apply "the same standard to . . . corporations [that which was] articulated in *Gertz* respecting individual persons." *See Isuzu Motors Ltd. v. Consumers Union of United States*, 66 F. Supp. 2d 1117, 1122 (C.D. Cal. 1999) (citing *Mattel Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1162 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002)); *see also Trans World Accounts v. AP*, 425 F. Supp. 814, 819 (N.D. Cal. 1977) ("it seems that for purposes of applying the First Amendment to defamation claims, the distinction between corporations and individuals is one without a difference").

**1.   Trump University Is an All Purpose Public Figure Because It Is "Inextricably Intertwined" with an Individual Who Is a Public Figure**

Although defense counsel conceded at oral argument on Plaintiff's anti-SLAPP motion that Donald Trump, the founder and Chairman of Trump University is an "all purpose" public figure, due to his notoriety and celebrity status, the Court declined to find that Trump University was also an "all purpose" public figure because Plaintiff had not cited any "case supporting its **argument** that association with an 'all purpose' public figure, by itself confers public figure status." *Makaeff v. Trump Univ.*, No. 10-cv-00940-IEG (WVG), 2010 WL 3341638, at *4 (S.D. Cal. Aug. 23, 2010).

However, there is ample support for the proposition that public figure status may be imputed to a corporation (such as Trump University) when it is inextricably intertwined or associated with an individual by the same name who is a public figure by virtue of their celebrity (such as Donald Trump). The Fletcher Cyclopedia of the Law of Corporations provides that: "where a ***corporate officer and the corporation are inextricably interwound by name and corporate structure, if one is***

*deemed a public figure, so must the other*."[1]  9 Fletcher Cyclopedia of the Law of Corporations §4255.50 (2010).

*Hentzen Contractors, Inc. v. Wichita*, 814 P.2d 42, 1991 Kan. App. LEXIS 510 (Kan. App. 1991), is illustrative.  In that case, a construction company – Hentzen Contractors – which bore the name of its President Bud Hentzen, was found to be a public figure due to its association with Hentzen.  *Id.* at *16.  The court found that, "'where a corporate officer and the corporation are inextricably interwound by named and corporate structure if one is deemed a public figure so must the other.'"  *Id.* at *15.  There, Bud Hentzen was a public figure due to his notoriety in Wichita, and Hentzen Contractors bore his name.  *Id.* at *1, *12.  "Members of the public viewing [statements regarding the corporation] would conclude the two are 'inextricably intertwined by name and corporate structure.'"  *Id.* at *16.  Thus, the court concluded that "**Bud Hentzen's status as a public figure was properly imputed to Hentzen Contractors**."  *Id.*

Similarly, in *Schiavone Construction Co. v. Time, Inc.*, 619 F. Supp. 684 (D.N.J. 1985), a corporation – Schiavone Construction – filed a defamation case against Time Magazine after it published an article suggesting the company was linked to organized crime.  *Id.* at 686.  In that case, the court found that, because Ronald Schiavone and Schiavone Construction Company were "*inextricably intertwined by name and corporate structure . . . if one is deemed a public figure so must the other be*."[2]  *Id.* at 705 n.13.

Whereas Bud Hentzen was well-known in Wichita and Ronald Schiavone was well-known in New Jersey, Donald Trump is undeniably a household name nationwide.  Moreover, Trump University and Donald Trump are "inextricably intertwined," such that Donald Trump's public figure status may properly be imputed to his namesake, Trump University.  As explained in the First

---

[1]   Unless otherwise indicated, citations are omitted and emphasis is added.

[2]   Similarly, individuals closely associated with public figures may be found to be public figures by virtue of their association with same.  *See, e.g.*, *Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662 (1988) (finding Howard Hughes' personal representative a public figure as he acted as Hughes' "alter ego" and functioned as his personal representative to the world); *Sipple v. Found. For Nat'l Progress*, 71 Cal. App. 4th 226 (1999) (noting that individuals closely associated with public figures can, themselves, become public figures).

1 Amended Class Action Complaint ("Complaint"), Donald Trump is the founder and Chairman of
2 Trump University (¶¶3, 27),[3] and Trump University advertises that its programs are "the next best
3 thing to being [Donald Trump's] Apprentice." ¶30.  Trump University told consumers they would
4 learn "insider success secrets from Donald Trump," (*id.*), and promised to provide consumers with a
5 "power team" of instructors and mentors "hand-picked by Trump." ¶¶36-37. Donald Trump's name
6 and photo appear prominently on every known advertisement, on Trump University's website, on
7 huge banners at the seminars, (¶¶30-33, 36-37), and the theme song to his apprentice program
8 ("Money, Money, Money") is played at the beginning of each seminar.  ¶11.  As for corporate
9 structure, Trump University told the public that "Trump University is owned lock, stock and barrel
10 by Mr. Trump – it's his 'baby,' his company." ¶33.  It is not a coincidence that the only reason that
11 Plaintiffs ever signed up for a Trump University course was because of its close association with
12 Donald Trump.  ¶¶3, 29, 31.

13 These facts are sufficient to show that Trump University is inextricably intertwined with
14 Donald Trump.  Accordingly, the Court should reconsider its opinion that Trump University is not a
15 public figure based on its association with its admitted public figure founder, promoter and
16 namesake, Donald Trump.

**2. Trump University's Advertisements (Including Its Newly Revised Website) Converted It into a Limited-Purpose Public Figure**

19 In concluding that Trump University was not a public figure, the Court found that
20 "aggressive advertising alone does not convert a company into a public figure." *Makaeff*, 2010 WL
21 3341638, at *5.  In so finding, the Court relied on *Vegod Corp. v. American Broadcasting Cos.*, 25
22 Cal. 3d 763, 769 (1979).  However, since *Vegod* was decided in 1979, courts in California and across
23 the country have held that an extensive advertising and/or promotional campaign ***can*** convert a
24 corporation into a public figure.

---

[3]     All "¶" and "¶¶" references are to the Complaint, filed June 16, 2010 (Docket No. 10).

Instructive is the *Isuzu* case, in which the court found that "Isuzu can be considered a public figure to the extent that it . . . . through its marketing and advertising, has made claims about the safety and performance of the Trooper."[4] 66 F. Supp. 2d at 1124. Similarly, in *Sunshine Sportswear & Electronics, Inc. v. WSOC Television*, 738 F. Supp. 1499 (D.S.C. 1989), the court found that an electronics store was a limited public figure with regards to statements by the BBB and others that it engaged in false and misleading advertising, deceptive business practices, bait-and-switch, and was a "scam" and "rip off." *Id.* at 1506. In that case, the BBB had received consumer complaints and the North Carolina Attorney General's office was investigating Sunshine. *Id.* at 1502. The company insisted it had not "created a controversy," but the court disagreed. *Id.* at 1507. The Court found that "[t]hrough their extensive advertising, the [company] engaged the public's attention and therefore, assumed the accompanying risk" and "were public figures with regard to the controversy." *Id.*

In *Steaks Unlimited v. Deaner*, 623 F.2d 264 (3rd Cir. 1980), a meat producer brought a defamation action against a consumer interest reporter and television station in regard to statements that the company had misrepresented the quality and type of beef sold. *Id.* at 274. The court found that by engaging in an extensive $16,000 advertising campaign, Steaks "voluntarily injected itself into a matter of public interest," and "created a controversy for the purposes of influencing the consuming public." *Id.* While Steaks claimed that its beef was from "'mature, grass-fed'" cattle, was the equivalent of USDA grade beef, and was a "'fantastic bargain at $21.75 per pack,'"

---

[4] Importantly, on appeal, the Ninth Circuit noted the "omnipresent" public policy concern in defamation suits that "'would-be critics may be deterred from voicing their criticism . . . because of doubt whether it can be proved in court or fear of the expense of having to do so.'" *Suzuki Motor Corp. v. Consumers Union of United States Inc.*, 330 F.3d 1110, 1115 (9th Cir. 2003) (citing *New York Times v. Sullivan*, 376 U.S. 254, 279 (1964)). The court acknowledged that even if the defamation suit "ultimately fails after trial is little solace to a defendant crushed by the sheer expense of litigation." *Id.* In *Suzuki*, Consumers Union spent more than $10 million defending its statements, while Suzuki spent more than $25 million. *Id.*

Here, too, even if Makaeff ultimately succeeds in defeating Trump University's defamation claim, requiring her to litigate the claim will cause both sides to spend tens of thousands of dollars in attorneys' fees and costs, and even more importantly, may have a chilling effect on consumer speech – deterring consumers from complaining about companies they believe are misleading and defrauding them, for fear that they may be targeted by a retaliatory defamation claim.

1 consumers complained that the beef was of poor quality, and that after calculating the price per
2 pound, the meat wasn't much cheaper than that sold in local supermarkets or meat markets. *Id.* at
3 268, 274 n.45. The court concluded that, "through its advertising blitz, Steaks invited public
4 attention, comment and criticism" and therefore "created the controversy on which Steaks' status as
5 a public figure is premised." *Id.* at 274.

6 Likewise, through Trump University's nationwide advertising campaign, featuring high-
7 profile celebrity Donald Trump, Trump University has invited public attention, comment and
8 criticism regarding its real estate investment seminars, and has created the controversy at issue:
9 whether the seminars provided what was promised. In fact, when consumers began ***complaining***
10 online and to the Better Business Bureau that these seminars were a scam and a rip-off, Trump
11 University again voluntarily interjected itself in the debate by ***changing*** its website and advertising
12 to claim that it had a ***95-98% consumer satisfaction rating***. *Compare* Ex. A, *with* Ex. B.[5] By
13 seeking to influence the public debate about whether its seminars and mentorship programs brought
14 value through its online advertising campaign, there can be little doubt that Trump University
15 converted itself into a public figure.

16        **3.   Trump University Is a Public Figure Because It Purports to Be
                an Educational Entity**
17
   Trump University argued throughout its motion to dismiss that it is an educational entity,
18
shielded from liability by the "educational malpractice" doctrine, just like the University of
19
California, USC, San Francisco Unified School District, Los Angeles Unified School District and
20
other public and private educational institutions in the cases it cited. Trump University's Motion to
21
Dismiss (Docket No. 16-1), at 3, 14-17. While Plaintiff contends that Trump University is more
22
akin to a telemarketer than a school,[6] to the extent that Trump University argues it is a place of
23

---

24

25 [5]   All "Ex." And "Exs." references are to the Declaration of Amber Eck in Support of Plaintiff's Motion for Reconsideration, submitted herewith.

26 [6]   *See, e.g.*, *American Future Sys., Inc. v. Better Bus. Bureau*, 923 A.2d 389 (2007)
27 (telemarketer was limited public figure for purposes of defamation action against BBB regarding negative statements in BBB report).

28

1  learning, caselaw holds that it is an "all purpose" public figure. *See Ithaca Coll. v. Yale Daily News*
2  *Publ'g Co. Inc.*, 433 N.Y.S.2d 530, 533-34 (NY 1980), *aff'd*, 85 A.D. 2d 817 (1981).

3  In *Ithaca College*, a small, liberal arts institution with approximately 2,000 students, sued for
4  libel after Defendant published an unflattering review in its "Insider's Guide to Colleges."[7] *Id.* at
5  531. In that case, the court noted that the category of public figures is "'of necessity quite broad,'"
6  and include corporations who are "either deemed public figures generally, or deemed so because of
7  actions taken by them which invite public comment." *Id.* at 533. The court found that assumption of
8  its role as an educator of students "precludes the private nature of its claims for libel purposes." *Id.*
9  at 534. The court concluded that a school, such as Ithaca, ***could not be viewed "as other than a***
10 ***public figure for all purposes***." *Id.* The court went on to find that even if Ithaca were not an all-
11 purpose public figure that it would be a ***limited*** public figure because "the nature of its environment
12 and . . . ***its education efforts are 'arguably within the sphere of legitimate public concern***.'" *Id.*

13 Likewise, Trump University should be treated as an "all-purpose" public figure for
14 defamation purposes to the extent that it argues it is a place of education. Indeed, consumers –
15 members of the general public – pay for and take its purported courses and seminars on real estate
16 investment. Even if Trump University is not an all-purpose public figure, it is at least a limited
17 purpose public figure as to whether it has misrepresented to consumers the nature of its courses and
18 mentorships because the representations it makes regarding its purported educational services and
19 quality of those services are a matter of "legitimate public concern." *Id.* at 534.

20 **4.  Trump University's Insertion of Itself into the Public Marketplace Has at the Very Least Converted It into a Limited**
21 **Purpose Public Figure**

22 Trump University is also a public figure as to its consumer services by virtue of its business
23 in the public marketplace. As the preeminent authority on defamation law has stated: "***someone***

---

[7]  The review stated: "Life at Ithaca is anything but harsh. . . . Sex, drugs and booze are the staples of life. If Ithaca has a reputation as a party school, it is well deserved. The predominant attitude among the upper-middle-class student body is that 'we are only here to party.' Sex is casual, and formal dating is unheard of . . . . The use of pot is a foregone conclusion, and cocaine occasionally manages to wend its way into the hands of those who can afford it. Speed and downers are common, but acid enjoys healthy disuse." *Id.* at 531.

1  *doing business in the public marketplace should be considered 'public' to that extent* for purposes
2  of comment about that activity." Robert D. Sack, Sack on Defamation: Libel, Slander, and Related
3  Problems §5:3.5 (4th ed. 2010).  "A public business does, indeed, volunteer goods or services for
4  public evaluation and criticism, which also comports with the common-law concept of public figure
5  for purposes of applying the fair comment privilege." *Id.*  Further, companies providing consumer
6  services are public figures because "'a "consumer's interest in the free flow of commercial
7  information . . . may be as keen . . . [as] his interest in the day's most urgent political debate."
8  Therefore, *customers have a First Amendment interest in obtaining information about the*
9  *products and services they buy* which is comparable to their interest in being informed about
10 political and social issues.'" *Schiavone Const. Co.*, 619 F. Supp. at 706-07 (citing *Dairy Stores, Inc.*
11 *v. Sentinel Publ'g Co., Inc.*, 465 A.2d 953 (1983), *aff'd*, 486 A.2d 344 (1985)).  Thus, consumers
12 who complain about a corporation's products or services should enjoy the same protection against
13 defamation that the New York Times enjoys when it reports a public official is unfit.  *Id.*  Any
14 conclusion otherwise "*would violate the first amendment, and impermissibly chill the public right*
15 *to comment* on persons and matters which ought to be the subject of such dialogue." *Id.* at 707.
16         Moreover, companies' deceptive business conduct in itself constitutes voluntary injection
17 into a controversy such that they should be found a public figure.  *See Gertz v. Robert Welch, Inc.*,
18 418 U.S. 323, 351 (1974).  For example, in *Brueggemeyer v. American Broadcasting Cos.*, 684 F.
19 Supp. 452 (N.D. Tex. 1988), a bulk meat seller filed a defamation suit against ABC after it ran a
20 story claiming the meat seller engaged in false and misleading advertising and bait-and-switch sales
21 practices.  The court rejected Brueggemeyer's contention that he was not a public figure "because he
22 did not, of his own volition, undertake to become one." *Id.* at 458.  The court found it was
23 "sufficient that Brueggemeyer 'voluntarily engaged in a course that was bound to invite attention
24 and comment." *Id.*  There, "*the course of conduct in which Brueggemeyer engaged generated*
25 *consumer complaints, government legal actions, BBB investigations and media attention*." *Id.*
26         Likewise, in *American Future Systems*, 923 A.2d 389, the court found that a telemarketer
27 who published newsletters targeted to "career-oriented individuals" on business-related topics was a
28 limited public figure. *Id.* at 390.  In that case, the telemarketer sued the BBB for defamation based

1  on negative statements in a BBB report, including statements that consumers had complained
2  regarding its cancellation practices. *Id.* at 390-93, 403-04.  There, the court found that, because the
3  company had widely advertised its cancellation policy, it was a limited public figure for alleged
4  defamatory statements about its sales practices. *Id.* at 404; *see also Mattel*, 28 F. Supp. 2d at 1126,
5  1161-62 (finding MCA to be a public figure for purposes of its defamation claim against Mattel for
6  alleged statements referring to MCA as a "bank robber" which committed a "crime" or "theft"
7  during a "heist" because MCA had sought out publicity for its products and attempted to thrust itself
8  into the dispute regarding its product).

9        Here, Trump University voluntarily injected itself into the public controversy regarding its
10 real estate seminars and engaged the public's attention by widely advertising its services and
11 attempting to counteract consumer complaints that it was a scam.  In fact, Trump University
12 advertised extensively in local media in cities across the United States and online, in local
13 newspapers, on Facebook and on radio, (¶30), Trump University offered free seminars promising
14 two hours of "priceless information," and urging consumers to "learn from the Master – Donald
15 Trump." *Id.*  Trump University then ***held hundreds of free and paid seminars, open to the general***
16 ***public nationwide***, in cities from coast to coast, traveling to approximately three dozen cities in three
17 months, and then starting over at the first city again.  When consumers began ***complaining*** online
18 and to the BBB that these seminars were a scam and a rip-off, Trump University again voluntarily
19 interjected itself in the debate by ***changing*** its website and advertising to claim that it had a ***95-98%***
20 ***consumer satisfaction rating***. ¶13; *see also* Exs. A, B, printouts of Trump University before and
21 after Plaintiff's Complaint was filed.  As in the cases above, even if Trump University did not set out
22 to become a public figure, it became one by engaging in a course of conduct that ***generated***
23 ***hundreds of consumer complaints, several Attorney General investigations, BBB investigations***
24 ***and media attention*** by the New York Daily News, L.A. Times and numerous bloggers.  It also did
25 so by engaging in an extensive online campaign through its website and advertising that sought to
26 justify itself as a legitimate company that provided quality education seminars and services with
27 which consumers were satisfied.  *Id.*  Through this conduct, Trump University invited public
28 attention, comment and criticism and thus became a limited purpose public figure.

### B. Plaintiff's Statements Are Protected by the Common Interest Privilege

In determining the legal sufficiency of defamation claims, the court must also examine whether there are any privileges or defenses applicable to the claim.[8] California Civil Code §47(c) codifies the common law privilege of common interest "which protected communications made in good faith on a subject in which the speaker and hearer *shared an interest or duty*." Cal. Civ. Code §47(c); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 914 (2002). Civil Code §47(c) provides that a privileged statement is one made "[i]n a communication, without malice, *to* a person interested therein, . . . *by* one who is also interested."[9] Cal. Civ. Code §47(c). An "interest" includes the speaker's "'own pecuniary or proprietary interest.'" *Kashian*, 98 Cal. App. 4th at 914 (citing *Rancho La Costa, Inc. v. Superior Court*, 106 Cal. App. 3d 646, 664-665 (1980)).

Application of the privilege involves a two-step analysis. The speaker has the initial burden of showing the allegedly defamatory statements fall within the privilege, whereupon the burden shifts to the party claiming defamation to provide evidence that the statement was made with malice. *Kashian*, 98 Cal. App. 4th at 915. The existence of privilege is ordinarily a question of law for the court to decide. *Id.*

Here, Makaeff's statements to her bank and to the BBB were made without malice, *by* an interested person (Makaeff was interested in getting her money back and in warning consumers of Trump University's improper conduct) to a person who shared the *interest or duty* – Makaeff's bank has an interest and duty in allowing its customers to dispute improper charges, and the Better Business Bureau has an interest and duty to compile and provide consumer protection information and complaints regarding businesses such as Trump University.

---

[8]   *See, e.g.*, *Brooks v. San Francisco Chronicle*, No. A125046, 2010 WL 3594489 (Cal. Ct. App. 1st Dist. Sept. 16, 2010) (affirming trial court's grant of Anti-SLAPP motion because the statements were "absolutely shielded from liability by the fair and true report privilege, and Brooks is unable to show a probability of success on the merits of her defamation claim").

[9]   The common interest privilege is usually described as a qualified or conditional one, meaning that it can be overcome by a showing of malice. *Kashian*, 98 Cal. App. 4th at 914.

Statements, such as Makaeff's, to a Better Business Bureau have been held to be conditionally privileged:

> The interest that the speaker seeks to protect must, in the words of the Restatement, be sufficiently important, and the recipient of the communication must be a proper person, that is, one whose knowledge of the defamatory matter will be of service in the lawful protection of that interest. The speaker's reasonable belief that the subject of the communication affects the speaker's interest and that the recipient is a proper person with whom to communicate is sufficient to sustain the privilege.

Sack on Defamation §9:2.1 (citing Restatement (Second) of Torts §594 (2010)).

This principle was applied in *Gugliotta v. Morano*, a case in which a client complained to the BBB (and state Bar) about her attorney's "unsatisfactory legal services." Ex. C, *Gugliotta v. Morano*, No. CV 2001-05-2114, slip op. at 1 (Ohio Court of Common Pleas 2001). In dismissing the attorney's defamation suit against the client, the court found that statements made to the BBB "enjoy the protections of qualified privilege as long as the statements were made absent actual malice." *Gugliotta v. Morano*, 161 Ohio App. 3d 152, 172 (2005). "To find otherwise, from a public policy perspective, would discourage other consumers from contacting the BBB with similar inquiries." Ex. C, *Gugliotta*, No. CV-2001-05-2114, slip op. at 4.

Similarly, in *Willis v. Centennial Mortgage & Funding, Inc.*, No. Civ 03-3641 RHK/AJB, 2004 WL 2075558 (D. Minn. Sept. 16, 2004), the court found protected a consumer's complaints to the BBB about defendant's mortgage services. "[O]ne who makes a defamatory statement will not be held liable if the statement is published under circumstances that make it qualifiedly privileged and if the privilege is not abused." *Id.* at* 4. The *Willis* court reasoned:

> [The plaintiff's] statements [to the BBB and AG's office] were made in good faith, upon a proper occasion, from a proper motive, and based upon reasonable or probable cause. First, she chose the proper occasion to make her complaints, as both the BBB and the AG's Office provide consumer protection services. Second, she had a proper motive in that she "wanted someone to investigate the way BlackDiamond was doing business and make sure it was not mishandling mortgages for its other customers. Finally, her statements were based on reasonable or probable cause resulting from her firsthand experiences with BlackDiamond and Willis. ***In sum, a qualified privilege applies in this case because statements made in the context of reporting consumer complaints "'should be encouraged despite the risk that the statements might be defamatory.'"***

*Id.*

1   Like *Willis*, Plaintiff Makaeff here chose the proper vehicle to lodge complaints about Trump University. Specifically, she complained to the BBB and her credit card company as they both provide consumer protection services. *Id.* at *4; Sack on Defamation §9:2.5. Moreover, she had a proper motive in that she sought an investigation into the way Trump University was doing business. *Willis*, 2004 WL 2075558, at *4. Finally, her statements were based on reasonable or probable cause resulting from her firsthand experiences with Trump University. *Id.*

As Makaeff's statements to her bank and to the BBB were made ***by*** an interested person ***to*** an interested person, Makaeff has met her burden to demonstrate that the statements are conditionally privileged. Trump University has produced no evidence of malice. Consequently, Defendant has failed to meet its burden of establishing it would prevail at trial on its defamation claim.

## IV.  CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court reconsider its denial of Plaintiff's anti-SLAPP motion.

DATED: September 20, 2010               Respectfully submitted,

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST


        s/ Amber L. Eck
        AMBER L. ECK

625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
PAULA M. ROACH
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 20, 2010.

    s/ Amber L. Eck
AMBER L. ECK

ZELDES & HAEGGQUIST, LLP
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

E-mail:ambere@zhlaw.com

## Mailing Information for a Case 3:10-cv-00940-IEG -WVG

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paula M. Roach**
  proach@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Keith Schneider**
  dks@yslaw.com,dscardino@reedscardino.com,ewb@yslaw.com,mlokey@reedscardino.com,efb@yslaw.com,jjohnson@reedscardino.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`