1  David K. Schneider (CSB 139288)
   YUNKER & SCHNEIDER
2  655 West Broadway, Suite 1400
   San Diego, California 92101
3  Telephone:  (619) 233-5500
   Facsimile:  (619) 233-5535
4  Email:  dks@yslaw.com

5  Attorneys for Defendant TRUMP UNIVERSITY, LLC

6

7

8              **UNITED STATES DISTRICT COURT**

9        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10  TARLA MAKAEFF, on Behalf of Herself      )   Case No. 10 CV 0940 IEG (WVG)
    and All Others Similarly Situated,       )
11                                           )
              Plaintiff,                     )   DEFENDANT/COUNTERCLAIMANT'S
12                                           )   MEMORANDUM OF POINTS AND
    v.                                       )   AUTHORITIES IN OPPOSITION TO
13                                           )   PLAINTIFF/COUNTERDEFENDANT
    TRUMP UNIVERSITY, LLC, a New             )   TARLA MAKAEFF'S MOTION FOR
14  York Limited Liability Company, and      )   RECONSIDERATION OF THE
    DOES 1 through 50, inclusive,            )   COURT'S AUGUST 23, 2010 ORDER
15                                           )   DENYING HER MOTION TO STRIKE
              Defendant.                     )
16  _____ )   DATE:   10/25/10
                                             )   TIME:   10:30 a.m.
17  AND ALL RELATED CROSS-ACTIONS.           )   CRTM:   1
    _____ )   JUDGE: HON. IRMA E. GONZALEZ
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   MAKAEFF IS NOT ENTITLED TO RECONSIDERATION BECAUSE NO
      NEW FACTS OR LAW EXIST. ...........................................................................2

      A.    Standard for Reconsideration.........................................................................2

      B.    Makaeff Does Not Present New Law ..............................................................2

      C.    Makaeff Does Not Present New Evidence.......................................................3

      D.    Makaeff Does Not Present the Required Affidavit..........................................3

III.  NO NEW EVIDENCE OR LAW SUPPORTS A FINDING THAT TRUMP
      UNIVERSITY IS A PUBLIC FIGURE. ................................................................4

      A.    Trump University Is Not a Public Figure Merely Because of Its
            Association With Donald Trump.....................................................................4

      B.    Trump University Is Not a Public Figure Merely Because It Advertises Its
            Services.........................................................................................................7

      C.    Trump University's Website Revisions After the Lawsuit Are Completely
            Irrelevant.......................................................................................................9

      D.    Trump University Is Not a Public Figure Because It Provides Educational
            Seminars......................................................................................................10

      E.    Trump University Is Not a Public Figure Because of Its Presence in the
            Marketplace.................................................................................................11

IV.   THE COMMON INTEREST PRIVILEGE DOES NOT PROTECT MAKAEFF'S
      DEFAMATORY STATEMENTS BECAUSE MAKAEFF, HER BANK AND
      THE BETTER BUSINESS ARE NOT INTERESTED PARTIES. ................................12

V.    TRUMP UNIVERSITY IS LIKELY TO PREVAIL ON ITS DEFAMATION
      CLAIM EVEN IF IT IS REQUIRED TO PROVE MALICE. ...........................................15

VI.   CONCLUSION....................................................................................................17

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*389 Orange Street Partners v. Arnold*,
   179 F.3d 656 (9th Cir.1999) ............................................................2

*Alcides v. Brown Institute, Ltd.*,
   592 N.W. 2d 468 (Minn.App. 1999).............................................11

*American Future Systems, Inc. v. Better Business Bureau of Eastern Penn.*,
   923 A.2d 389 (Pa. 2007) ..............................................................12

*Brueggemeyer v. American Broadcasting Cos., Inc.*,
   684 F.Supp. 452 (N.D. Tex. 1988) ...............................................12

*Carver v. Bonds*,
   135 Cal.App.4th 328 (2005) ...........................................................8

*Christian Research Institute v. Alnor*,
   148 Cal.App.4th 71 (2007) ...........................................................16

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ........................................................4

*Fredrick S. Wyle Professional Corp. v. Texaco, Inc.*,
   764 F.2d 604 (9th Cir. 1985) ..........................................................2

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)...........................................................5, 6, 8

*Gugliotta v. Morano*,
   161 Ohio App. 3d 152 (2005) .......................................................15

*Hentzen Contractors, Inc. v. Wichita*,
   1991 Kan.App.LEXIS 510...............................................................5

*Hutchinson v. Proxmire*,
   443 U.S. 111 (1979)......................................................................10

*Isuzu Motors Ltd. v. Consumers Union of United States*,
   66 F.Supp.2d 1117 (C.D. Cal. 1999) .................................4, 7, 8, 10

*Ithaca College v. Yale Daily News Publishing Co., Inc.*,
   433 N.Y.S.2d 530 (1980)........................................................10, 11

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1

**TABLE OF AUTHORITIES (cont.)**

2

<u>Page</u>

*Jamieson v. Vetterott Educational Centers, Inc.*,
3      259 F.R.D. 520 (D. Kansas 2009)............................................................................11

4
*Jensen v. Times Mirror Co.*,
5      634 F.Supp. 304 (D. Conn. 1986) ...............................................................................5

6 *Maheu v. CBS, Inc.*,
     201 Cal.App.3d 662 (1988) ...........................................................................................7
7

8 *Marlyn Nutriceuticals v. Mucos Pharma*,
     571 F.3d 873, 880 (9th Cir. 2009) .............................................................................2
9
*Mattel, Inc. v. MCA Records, Inc.*,
10      28 F.2d 1120 (C.D. Cal. 1998),
     *aff'd* 269 F.3d 894 (9th Cir. 2002)............................................................................9
11

12 *McGarry v. University of San Diego*,
     154 Cal.App.4th 97 (2007) ...........................................................................................4
13
*Nguyen-Lam v. CAO*,
14      171 Cal.App.4th 858 (2009) ......................................................................................16

15 *Novato Fire Protection Dist. v. U.S.*,
     181 F.3d 1135 (9th Cir. 1999) ...................................................................................13
16

17 *Presidio Components v. American Technical Ceramics*,
     2010 WL 3384995 (S.D. Cal.)..................................................................................2, 3
18
*Rancho La Costa, Inc. v.Superior Court*,
19      106 Cal.App.3d 646 (1980) .........................................................................6, 8, 9, 13

20
*Schiavone Construction Co. v. Time, Inc.*,
21      619 F.Supp. 684 (D. N.J. 1985) ......................................................................4, 6, 10

22 *School District No. 1J, Multnomah County v. ACandS, Inc.*,
     5 F.3d 1255 (9th Cir. 1993) .........................................................................................2
23

24 *Sipple v. Found. For Nat'l Progress*,
     71 Cal.App.4th 226 (1999) .....................................................................................7, 15
25
*St. Amant v. Thompson*,
26      390 U.S. 727 (1968).....................................................................................................16

27 *Steaks Unlimited, Inc. v. Deaner*,
     623 F.2d 264 (3d Cir. 1980).........................................................................................8
28

**TABLE OF AUTHORITIES (cont.)**

**Page**

*Sunshine Sportswear & Electronics, Inc. v. WSOC Television, Inc.*,
    738 F.Supp. 1499 (D.S.C. 1989) ........................................................................8

*Time, Inc. v. Firestone*,
    424 U.S. 448 (1976).............................................................................4, 6, 10

*Vegod Corp. v. American Broadcasting Cos.*,
    25 Cal.3d 763 (1979) ........................................................................5, 7, 8

*Weinberg v. Feisel*,
    110 Cal.App.4th 1122 (2003) .........................................................................10

*Willis v. Centennial Mort. & Funding, Inc.*,
    2004 WL 2075558 .........................................................................................15

*Zamani v. Carnes*,
    491 F.3d 990 (9th Cir. 2007) ...........................................................................3

**Statutes**

California Code of Civil Procedure section 47 ...................................................12

California Code of Civil Procedure section 47(3) ..........................................13, 15

**Rules**

Local Rule 7.1(i) ................................................................................................3

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1

I.      **INTRODUCTION**

2        Makaeff seeks the equivalent of a golfing "Mulligan" or "do over" on her Special Motion to

3   Strike.  Makaeff's request is improper because she has not satisfied any of the threshold

4   requirements to seek reconsideration.  Makaeff has failed to comply with the statutory requirements

5   as well as the local rules to bring a Motion for Reconsideration.  Specifically, Makaeff failed to

6   identify any new facts or new law which could allow the Court to reconsider Makaeff's motion.

7   Similarly, Makaeff failed to identify any "clear error" by this Court which also could allow the Court

8   to reconsider her motion.

9        Other than her throw-away line on page 2 that her motion is based on "newly discovered law

10  and facts," Makaeff actually provides <u>neither</u>.  Makaeff similarly states that her motion is "to avoid

11  clear error," but Makaeff actually fails to identify <u>any</u> error by this Court.  The bulk of Makaeff's

12  Motion for Reconsideration is simply a rehash of the arguments she made in her earlier motion.

13  Makaeff cites different — but not new — cases in support of the same old argument that Trump

14  University is a "public figure."  The one "new" argument concerning "common interest" is

15  completely inapplicable.  In addition, Makaeff fails to explain why this argument could not have

16  been brought in her original motion and thus it is not even properly before the Court.

17       Makaeff clearly has abused the very purpose of a motion for reconsideration.  The purpose is

18  to allow the court to consider <u>new</u> evidence (not previously available) or <u>new</u> law (changed since the

19  first motion).  It is not intended to re-argue the same points previously raised but lost, or raise new

20  arguments which previously should have or could have been brought.  Makaeff's motion now

21  requires that this Court and Trump University spend significant time and expense to review and

22  analyze more than two dozen cases, many of which are from out-of-state jurisdictions, or are

23  unpublished, or both, and all of which were available to Makaeff at the time she filed her original

24  motion.  Makaeff also asks the Court to ignore its earlier ruling and Order, without explanation, and

25  without identifying a single error by the Court.

26       In short, Makaeff has not even attempted to comply with the requirements to bring a Motion

27  for Reconsideration.  Because Makaeff has not met the most basic procedural requirements to

28  request reconsideration, Trump University respectfully requests that the Court deny the request.

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1   Even if Makaeff had complied with the requirements to bring a Motion for Reconsideration,

2   the outcome would be exactly the same because the law in California and the Ninth Circuit is very

3   clear:  a party does not become a public figure unless it <u>voluntarily</u> injected itself into the

4   controversy <u>prior</u> to the defamation. There is no such evidence in this case.

5   **II.     MAKAEFF IS NOT ENTITLED TO RECONSIDERATION BECAUSE NO NEW**
     **FACTS OR LAW EXIST.**

6

7   **A.     Standard for Reconsideration**

8   Motions for reconsideration are disfavored and "should not be granted, absent highly unusual

9   circumstances, unless the district court is presented with newly discovered evidence, committed

10  clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners*

11  *v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999) (citation omitted).    Failure of a party to present an

12  argument or to support an argument in its original briefing does not constitute "new" evidence or

13  "new" law. *School District No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.

14  1993).  A motion for reconsideration may not be used to raise arguments or present evidence for the

15  first time when they could reasonably have been raised earlier. *Presidio Components v. American*

16  *Technical Ceramics,* 2010 WL 3384995 *1 (S.D. Cal.), citing *Marlyn Nutriceuticals v. Mucos*

17  *Pharma*, 571 F.3d 873, 880 (9th Cir. 2009).  *See also*, *Fredrick S. Wyle Professional Corp. v.*

18  *Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (evidence available to party before it filed opposition

19  was not "newly discovered evidence" warranting reconsideration).

20  **B.     Makaeff Does Not Present New Law**

21  Makaeff has not even attempted to comply with the requirements to seek reconsideration.

22  Although Makaeff asserts "newly discovered evidence and new law" as the basis for her motion, she

23  fails to cite a **single** new statute or case that has been enacted or decided since the original briefing

24  on this issue.  Indeed, Makaeff merely cites cases fully available to her at the time she filed her

25  original motion.  Makaeff presents redundant cases and arguments previously brought to this Court's

26  attention which do not constitute an "intervening change in the controlling law." *Fredrick S. Wyle*

27  *Professional Corp.*, 764 F.2d at 609.

28  / / /

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

**C.   Makaeff Does Not Present New Evidence**

Makaeff also fails to cite any newly discovered evidence in support of her Motion for Reconsideration.  Evidence is not considered "newly discovered" when a party simply fails to present evidence already in its possession or subject to discovery with reasonable diligence. *Presidio Components v. American Technical Ceramics*, 2010 WL 3384995 (S.D. Cal.).  In fact, the only evidence presented in Makaeff's Motion is a portion of Trump University's current website, which is not actually "new" evidence at all.  The revised website has been available since June 2, 2010 — one month <u>before</u> Makaeff filed her anti-SLAPP motion and two months <u>before</u> the hearing on her motion.  (Declaration of Michael Sexton ("Sexton Decl."), ¶ 2.)

Further, the revised website is completely irrelevant to the issues raised in this case.  The changed website was posted <u>after</u> Makaeff filed suit and after Trump University filed its Counterclaim against Makaeff, both of which were almost one year <u>after</u> the defamation occurred.  As discussed below, to become a limited public figure, one must "inject" itself into the controversy <u>before</u> the controversy (i.e., defamation) occurs.  Consequently, the change in Trump University's website one year <u>after</u> the defamation is irrelevant.

**D.   Makaeff Does Not Present the Required Affidavit**

Makaeff also failed to comply with the local rules to request reconsideration.  For example, Rule 7.1(i) required that Makaeff file an affidavit setting forth the material facts and circumstances surrounding "what new or different facts and circumstances are claimed to exist, or were not shown, upon such prior application."  Local Rule 7.1(i).  Makaeff filed no such affidavit.  This is more than a technicality; Makaeff could not file an affidavit because there are no new facts or circumstances justifying this Motion.  Makaeff cannot attempt to "cure" this fatal deficiency in her Reply.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (court properly excluded argument received for first time in reply brief on motion for reconsideration).

Because Makaeff failed to present any new law or evidence, or identify any clear error by this Court, Makaeff's Motion for Reconsideration is improper and should be denied.

/ / /

/ / /

1
2

### III.   NO NEW EVIDENCE OR LAW SUPPORTS A FINDING THAT TRUMP UNIVERSITY IS A PUBLIC FIGURE.

3
4
5
6
7
8

Makaeff's Motion for Reconsideration is based primarily on Makaeff's same argument that Trump University is a public figure.  Makaeff fully briefed this issue in her original anti-SLAPP motion.  *See, e.g.* Makaeff's Special Motion to Strike, pp. 15-16 and Reply, pp. 6-7.  The request for reconsideration presents no new law or evidence.  It merely takes this Court through yet another examination of cases, many of which are non-binding, out-of-jurisdiction cases, and some of those are unpublished and uncitable even within their own jurisdictions.

9
10
11

Although this Motion is not properly before this Court, and the cases cited by Makaeff are not in accord with established California and Ninth Circuit precedent, from an abundance of caution Trump University will address the "substantive" issues raised by Makaeff.

12
13
14
15
16
17
18
19
20
21
22
23
24

After all of Makaeff's latest cases are examined, one point remains clear and unchanged by the arguments:  under controlling California authority, to be a limited purpose public figure, the defamed party must <u>voluntarily</u> have taken steps to inject itself into the controversy <u>before</u> the defamation.  *See, e.g.*, *Flowers v. Carville*, 310 F.3d 1118, 1129 (9th Cir. 2002) (public figure is someone who voluntarily injects himself into a controversy); *McGarry v. University of San Diego*, 154 Cal.App.4th 97, 113 (2007) (same).  *See also, Isuzu Motors Ltd. v. Consumers Union of United States*, 66 F.Supp.2d 1117, 1123 (C.D. Cal. 1999) cited by Makaeff (Isuzu injected itself into the public controversy and attempted to influence the outcome <u>before</u> the defamation) and *Schiavone Construction Co. v. Time, Inc.*, 619 F.Supp. 684, 704-05 (D. N.J. 1985), also cited by Makaeff, (injection <u>after</u> defamation is "not probative of the efforts to influence the outcome of the controversy at issue.").  Makaeff still has failed to present any evidence that Trump University ever attempted to influence the outcome of the controversy before the defamation, or even before Makaeff filed her suit.

25
26

### A.   Trump University Is Not a Public Figure Merely Because of Its Association With Donald Trump

27
28

Makaeff argues that Trump University should be considered a limited public figure by reason of its association with Donald Trump.  If Makaeff's argument sounds familiar, it is because Makaeff

1   made this <u>exact same</u> argument in her original Reply brief.  This Court already has properly rejected

2   the argument.  No California or Ninth Circuit case holds that the status of a public figure

3   automatically transfers to another entity.

4         In her original motion, Makaeff ignored the controlling California Supreme Court authority

5   of *Vegod Corp. v. American Broadcasting Cos.*, 25 Cal.3d 763 (1979) and the U.S. Supreme Court

6   holding of *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), which refused to find corporations "per

7   se" public figures or find corporations to be limited public figures merely by association.  Instead,

8   Makaeff asked this Court to rely on the Connecticut decision of *Jensen v. Times Mirror Co.*, 634

9   F.Supp. 304 (D. Conn. 1986).  As the Court may recall, the *Jensen* decision provided no help to

10   Makaeff because *Jensen* found that plaintiff was a limited public figure — not because of her

11   "association with her roommate" but because she intentionally injected herself into the controversy

12   by granting media interviews related to her roommate and agreed to a movie on the subject.

13         In this motion, Makaeff once again asks the Court to ignore *Gertz* and *Vegod* and instead

14   consider two more out-of-state decisions.  Makaeff cites two cases from 1985 and 1991 (both

15   obviously available prior to her original briefing on this issue) which allegedly support her

16   argument.  Once again, Makaeff has misconstrued their holdings while ignoring controlling

17   precedent.

18         The first case cited by Makaeff, *Hentzen Contractors, Inc. v. Wichita*, 1991 Kan.App.LEXIS

19   510, is an unpublished case of a lower court in Kansas.  While the Kansas court assumed that the

20   corporation and its owner/operator, Bud Hentzen, were so intertwined that both were public figures,

21   the Court made clear that its decision was based on the key fact that the company's owner played an

22   integral role in the defamation by injecting himself into the controversy.  The court noted that: "[t]he

23   only reason any of this was news was because Bud Hentzen, a Sedgwick County Commissioner, was

24   involved.  Hentzen talked to high- ranking political official, conducted a news conference from the

25   county commission chambers, and used the opportunity to not only respond to the media coverage

26   but to point out his believed deficiencies in the CID."  *Id.*

27         By contrast, Donald Trump's involvement is completely absent here.  Neither Donald Trump

28   nor Trump University has spoken publically about this issue.  Unlike Bud Hentzen, Donald Trump is

1   not the operator of Trump University, and plays no part in the day-to-day operation of Trump

2   University.  There is simply no evidence that Donald Trump was involved before, during or after the

3   "controversy."  His ownership interest in Trump University does not convert the small private

4   company into a public figure.

5          The second case cited by Makaeff, *Schiavone Construction Co. v. Time, Inc.*, 619 F.Supp.

6   684, 705 (D.N.J. 1985), is similarly flawed.  In this New Jersey case, applying New Jersey law, the

7   court mentioned in a footnote that under Third Circuit precedent, a construction company and its

8   owner were public figures.  This finding was based on an earlier holding by that court that Schiavone

9   and his company had an identity of interest such that when one defamed the company, one also

10  defamed Schiavone as an individual.  Because of this finding, the court concluded, without

11  discussion, that if the individual was a public figure, the company must also be a public figure.

12  Significantly, the court emphasized that its determination that the company was a public figure was

13  justified because <u>both</u> the company and its namesake <u>had injected themselves into the controversy</u> by

14  attempting to influence others <u>prior</u> to the defamatory statements being made.  *Id.* at 704-05.  In

15  other words, on the key issue here, the *Schiavone* court <u>followed</u> controlling California law which

16  also requires the affirmative act of "injecting itself into the controversy" by the defamed party.

17  There is no evidence that Trump University ever did so here.  Certainly, Donald Trump never

18  claimed that defamation of Trump University is defamation of Trump as an individual.  Thus, the

19  logic of the *Schiavone* court, which is not binding on this Court in any case, is simply inapposite.

20         What is binding law in this Court are the decisions of the U.S. and California courts that

21  require a party purposefully to inject themselves into the controversy at issue before they may be

22  considered a limited purpose public figure.  *See, e.g.*, *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 343

23  (1974) and *Rancho La Costa, Inc. v.Superior Court*, 106 Cal.App.3d 646, 663 (1980).  Even if this

24  Court were to consider *Schiavone*, there is simply no evidence that Trump University ever injected

25  itself into the controversy — and certainly not <u>before</u> the defamation.

26         These allegedly "new" cases cited by Makaeff simply do not warrant a change in this Court's

27  decision.  Neither is binding authority; neither is even "new" law.  Most importantly, even a cursory

28  reading of these cases reveals that they do not support the argument that the "public figure" status of

1    Donald Trump automatically transfers to Trump University.  Not a single case holds that a business

2    becomes a public figure merely because it was owned by a public figure or utilized a celebrity

3    spokesperson.

4         In a footnote, Makaeff cites two California cases also allegedly supporting her position that

5    one can become a public figure merely by "association" with a public figure.  Makaeff is simply

6    wrong.  In *Maheu v. CBS, Inc.*, 201 Cal.App.3d 662 (1988), Howard Hughes' personal assistant was

7    found to be a public figure, not merely because of his association with Hughes, but because he was

8    Hughes' alter ego, "functioned as his personal representative to the world" and "was a public figure

9    in his own right." *Id.* at 675.  Similarly, in *Sipple v. Found. For Nat'l Progress*, 71 Cal.App.4th 226

10   (1999), the plaintiff was a nationally known political strategist who was actively sought out by the

11   media for his political opinions, who often called press conferences to express his views and

12   personally "used the media for his professional advantage many times." *Id.* at 248.

13        Mr. Trump had no involvement in the day-to-day activities of Trump University and does not

14   teach the seminars.  Further, Trump University has undertaken no act to inject itself into the

15   controversy; it has given no interviews nor held any press conferences.  This Court's original

16   decision was correct and it should stand.

17   **B.    <u>Trump University Is Not a Public Figure Merely Because It Advertises Its Services</u>**

18        Makaeff re-offers the same argument that Trump University is somehow converted into a

19   public figure merely because it advertises its services to the public.  Based on *Vegod Corp. v.*

20   *American Broadcasting Cos., Inc.*, 25 Cal.3d 763 (1979), this Court properly rejected Makaeff's

21   identical argument raised in her original motion.  Makaeff now cites two cases to argue that the law

22   has since changed. Once again, Makaeff is simply wrong.

23        In *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 66 F.Supp.2d 1117, 1123

24   (C.D. Cal 1999), cited by Makaeff, the court found Isuzu to be a public figure not because it

25   advertised extensively, but primarily because "the record contain[ed] evidence that Isuzu had already

26   injected itself into the public controversy concerning rollover standards."  The advertising was

27   relevant only because Isuzu was such an active advertiser, including advertisements aimed

28   exclusively at the rollover issue, that its advertising had a substantial effect on the market.  *Id.* at

1122-1134  The *Isuzu* court reiterated that to be a "public figure" one must "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issue involved." *Id.* at 1122, citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

Similarly, Makaeff's out-of-jurisdiction cases, which do not apply California law, also do not address whether advertising alone can convert a vendor into a public figure.  In *Sunshine*, for example, the issue before the court was whether the defamed party had created a controversy. *Sunshine Sportswear & Electronics, Inc. v. WSOC Television, Inc.*, 738 F.Supp. 1499 (D.S.C. 1989). Similarly, in *Steaks, Unlimited*, which was decided under Pennsylvania law, the focus of the court was whether the advertising campaign of the defamed party served to create a public controversy. *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264 (3d Cir. 1980).  Neither case even addressed the issue Makaeff claims it resolved, namely whether Trump University's advertising alone could convert it into a public figure.  Even if the cases Makaeff cited could support her argument, neither of them applied California law and neither has precedential value to overturn existing California law.

As recently as 2005, long *after Isuzu Motors*, *Sunshine Sportswear* and *Steaks Unlimited*, the court revisited *Vegod* and again upheld its principles.  In *Carver v. Bonds*, 135 Cal.App.4th 328 (2005), the California Appellate Court held that *Vegod* rejected "precisely the same public figure argument being advanced in this case by:

> "business practice critic[s]" who are "denigrat[ing]" plaintiff for the content of his advertising.  Nothing in *Vegod* suggests that the result would be different where the plaintiff is selling professional services rather than commercial goods; in either case, the false advertising would be a matter of public interest, but not one of public controversy. Moreover *Vegod*'s observation that the plaintiff must "become part of an existing public controversy" to be considered a limited purpose public figure . . . confirms that the Newspaper could not create a public controversy simply by publishing an article that put plaintiff's behavior in the spotlight."  *Id.* at 354.  (citations omitted).

California courts are clear that neither advertising, being in the public eye or having significant access to the media alone are sufficient to make an individual or an entity a "public figure."  *Rancho La Costa,* 106 Cal.App.3d at 658.  In *Rancho La Costa*, the court held that merely because a corporation sells services to the public, and merely because it employs and has access to the media to advertise its services does not mean that such ability gives a corporation a status of one

Case No. 10 CV 0940 IEG (WVG)
TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1   with greater power of persuasion on public issues, controversial or not, or all persuasive influence.

2   Upholding *Vegod*, the *Rancho La Costa* court stated that "the holding of *Vegod* sufficiently answers

3   that advertising is not thrusting oneself into the vortex of a controversy.  Similarly, the 'great access'

4   to 'the media' is not the same thing as having or seeking to have persuasive or pervasive influence

5   on the **outcome** of controversial issues."  *Id*. at 660-661 (emphasis in original).  In short, the court

6   rejected the proposition that public figure status can be established by significant publicity or

7   advertising.  *Id.* at 663.

8        The court further held that "no amount of publicity can involuntarily convert the private

9   individual into a public figure.  There must be 'evidence' or facts showing that plaintiff intentionally

10   or voluntarily sought publicity or entered into a particular controversy to affect its outcome.  Plaintiff

11   must show that the defendant intentionally intended to affect the outcome."  *Id.* at 664.

12        In *Mattel, Inc. v. MCA Records, Inc.*, 28 F.2d 1120 (C.D. Cal. 1998), *aff'd* 269 F.3d 894 (9th

13   Cir. 2002), another case cited by Makaeff, the court held that a public figure plaintiff must have

14   undertaken some voluntary act which he seeks to influence the resolution of the public issues

15   involved.  *Id.* at 1162.  When called upon to make a determination of public figure status, the court

16   should look for evidence of affirmative actions by which purported public figures have thrust

17   themselves into the forefront of particular public controversies.  *Id.*  Makaeff has simply failed to

18   present any such evidence.  The bottom line is that *Vegod* is still controlling authority and California

19   law requires the voluntary and purposeful injection into the controversy before they may be

20   considered a public figure.

21   **C.    Trump University's Website Revisions After the Lawsuit Are Completely Irrelevant**

22        Makaeff next argues that Trump University "injected itself into the public controversy" by

23   revising its website, thereby making it a limited public figure.  Makaeff's argument fails for two

24   reasons.  First, Trump University revised its website on June 2, 2010, almost one year <u>after</u>

25   Makaeff's defamation and more than one month after Makaeff filed suit.  (Sexton Decl., ¶ 2.)[1]  As

26

27

28   [1]     Trump University changed its website before Makaeff filed her original anti-SLAPP.
     Makaeff has failed to explain why she could not have raised the argument in her first motion.

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1  discussed above, to constitute "injection into the controversy," the act must occur <u>before</u> the

2  defamation.  *See Isuzu Motors Ltd.,* 66 F.Supp.2d at 1123 and *Schiavone Construction Co.* 619

3  F.Supp. at 705.

4        Second, controlling authority holds that one cannot become a public figure by <u>responding</u> to

5  allegations of misconduct.[2]  *Weinberg v. Feisel*, 110 Cal.App.4th 1122 (2003); *Time, Inc. v.*

6  *Firestone*, 424 U.S. 448, 454-55 (1976).  Trump University is fully entitled to defend itself.  It is not

7  considered a public figure when it is dragged into the controversy and then must defend itself.  *Isuzu*

8  *Motors, Ltd.*, 66 F.Supp.2d at 1123, citing *Hutchinson v. Proxmire*, 443 U.S. 111, 134 (1979).

9  Trump University revised its website after Makaeff posted her Complaint on the Internet.  (Sexton

10 Decl., ¶ 2.)  As detailed in Trump University's original Opposition to Makaeff's Motion to Strike,

11 Makaeff cannot "push" Trump University into the controversy and then claim that it is a limited

12 public figure.  "Those charged with defamation cannot, by their conduct, create their own defense by

13 making the claimant a public figure."  *Weinberg*, 110 Cal.App.4th at 1132.  Trump University has

14 never thrust itself into this controversy.  When an entity is involuntarily thrust into the limelight,

15 such as being sued, it does not become a public figure.  The holdings of the California Supreme

16 Court in *Vegod* and its progeny continue to be binding on this Court.  Thus, this Court's original

17 decision was correct, and Makaeff's Motion for Reconsideration should be denied.

18 **D.    Trump University Is Not a Public Figure Because It Provides Educational Seminars**

19       Makaeff's next argument that Trump University is a public figure because it is an educational

20 institution also must be rejected.  The entire argument is premised on a case decided under New

21 York law which found that Ithaca College was a public figure.[3]  *Ithaca College v. Yale Daily News*

22 *Publishing Co., Inc.*, 433 N.Y.S.2d 530 (1980).  In that case, Ithaca College sued a college guide for

23

24 [2]       Makaeff has failed to explain how Trump University's statement that 95% of its attendees are

25 satisfied with Trump University has anything to do with the "controversy," namely Trump
   University purportedly engaging in criminal conduct such as stealing credit card information,

26 engaging in grand larceny, etc.

27 [3]       The *Ithaca College* case was decided in 1980, approximately 30 years before Plaintiff's
   original motion on this issue, and thus was fully available to Makaeff at that time.  Makaeff has

28 failed to explain why she could not have raised this argument in her first motion.

        TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
        RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1   defamation after that guide cast Ithaca as a "party school."  Applying New York law, the court found

2   that Ithaca College had a "diverse undergraduate enrollment," assumed the role of "a qualified

3   educator of a large number of students" and assumed a prominent role in local society and thus was a

4   public figure.  *Id.*, at 533-34.

5          Two points are immediately apparent.  First, Trump University is not, and has never claimed

6   to be an undergraduate institution.[4]   Trump University contends that the educational malpractice

7   doctrine applies whether an entity is a public educational institution like UCLA, a private

8   educational institution like USC, or a for-profit business like Bar Bri or Trump University.  *See*

9   *Alcides v. Brown Institute, Ltd.*, 592 N.W. 2d 468, 470 (Minn.App. 1999); *Jamieson v. Vetterott*

10  *Educational Centers, Inc.*, 259 F.R.D. 520 (D. Kansas 2009).  Unlike Ithaca College, it has no

11  physical presence in any local community and has assumed no role in "local society."  Comparison

12  of Ithaca College and Trump University, **for the purpose of determining public figure status**, is

13  inappropriate.

14         Secondly, the *Ithaca* decision has no application to this Court's decision.  It is a New York

15  case, decided under New York law, and does not bind this Court in any way.  It is noteworthy that

16  the case has <u>never</u> been cited or followed by any California or federal court — or any other state

17  court, for that matter.  This Court's original denial of Makaeff's motion was proper and based on

18  controlling California law.

19  **E.     <u>Trump University Is Not a Public Figure Because of Its Presence in the Marketplace</u>**

20         Makaeff next argues that Trump University is a public figure because of its "presence in the

21  marketplace."  This is essentially a reiteration of her argument that Trump University is a public

22  figure because it advertises heavily.  In support, Makaeff continues her pattern of ignoring

23  controlling law and instead relying on irrelevant, out-of-jurisdiction cases.

24  _____

25  [4]      Makaeff's novel argument is particularly curious because until her Motion for
26  Reconsideration, Makaeff consistently has represented to this Court that Trump University is <u>not</u> an
    educational institution.  *See* Plaintiff's Oppo. to 12(b)(6) (ECF No. 25):  "Trump University is not an
27  accredited school, much less a public school or university."  (Oppo., p. 9); "Trump University is not
    a public school or even a college or university."  (Oppo., p. 10); "Trump University is not a
28  'university' or an educational institution."  (Oppo. p. 11)

In both cases cited by Makaeff, *Brueggemeyer* and *American Future Systems*, the courts applied standards particular to their circuits in order to find corporations to be public entities. *Brueggemeyer v. American Broadcasting Cos., Inc.*, 684 F.Supp. 452 (N.D. Tex. 1988) (applying Fifth Circuit law); *American Future Systems, Inc. v. Better Business Bureau of Eastern Penn.*, 923 A.2d 389 (Pa. 2007) (applying Pennsylvania and Fourth Circuit law). Again, however, these cases do **not** support the proposition that corporations can be found to be public figures based solely upon their advertising. In both cases, the courts found a direct "nexus" between the advertising and the defamation. In *American Future Systems*, for example, the Court noted that the alleged defamation was a claim that the corporation refused to cancel newsletter subscriptions, while their advertising focused heavily on their "no risk" policy. *American Future Systems*, 923 A.2d at 404. Thus, the advertising was directly linked to the defamation.

In this case, Makaeff's defamation consisted of claims of criminal conduct by Trump University, such as opening credit cards without authorization, committing grand larceny, etc. Trump University's advertising obviously was not directed at denying spurious allegations of criminal conduct or related to credit cards. Thus, the nexus between the defamation and the advertising is completely absent. Further, neither decision addresses the requirement that a party still must insert itself into the controversy — the standard Makaeff must prove under California law. These cases therefore provide no support for Makaeff's Motion for Reconsideration.

## IV.   THE COMMON INTEREST PRIVILEGE DOES NOT PROTECT MAKAEFF'S DEFAMATORY STATEMENTS BECAUSE MAKAEFF, HER BANK AND THE BETTER BUSINESS ARE NOT INTERESTED PARTIES.

Makaeff's one "new" argument is that her defamatory statements are protected by the "common interest privilege." The Court should reject Makaeff's new argument on two grounds: (1) the issue is not properly before this Court, and (2) Makaeff and the recipients of her defamatory statements are not "interested parties" within the meaning of the privilege.

First, Makaeff cannot argue that the common interest privilege argument is based on new law or new evidence. California Code of Civil Procedure section 47, which is the statute codifying the privilege, was enacted in 1872 — hardly new law! Further, Makaeff already unsuccessfully argued in her original anti-SLAPP Motion that a different subsection of this same statute protected this

communication. Makaeff is not permitted in a Motion for Reconsideration to simply re-argue the application of the same statute by raising a <u>newly thought-of argument</u> for the first time. *See, e.g., Novato Fire Protection Dist. v. U.S.*, 181 F.3d 1135, 1142 (9th Cir. 1999). Of course, Makaeff makes no attempt to explain why the issue could not have been raised in her original motion, and therefore the new argument is barred.

Second, the common interest privilege simply does not apply to this case. California Code of Civil Procedure section 47(3) provides for a qualified privilege:

> In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

It is instructive that the statute details the very circumstances of its application:

> This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant. This subdivision authorizes a current or former employer, or the employer's agent, to answer whether or not the employer would rehire a current or former employee.

California courts have applied this statute narrowly and only in limited circumstances outside the employment context. As the *Rancho La Costa* court stated: the word "interested" as used in the statute refers to a more direct and immediate concern. That concern is something other than mere general or idle curiosity of the general readership of newspapers and magazines. The *Rancho La Costa* court explained the statutory interest as follows:

> (1) The "interest" applies to a defendant who "is protecting his own pecuniary or proprietary interest." (2) The required "relation" between the parties to the communication is a contractual, business or similar relationship, such as "between partners, corporate officers and members of incorporated associations," or between "union members [and ] union officers." (3) The "request" referred to must have been in the course of a business or professional relationship. *Rancho La Costa*, 106 Cal.App.3d at 664-65 (citations omitted).

Makaeff has not cited a single California or Ninth Circuit case which would allow this statute to be applied in this situation. Instead, Makaeff again turns to the law of two <u>other</u> states — one an

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1   unpublished decision — in an attempt to bootstrap these decisions to the California statute.

2   However, Makaeff cannot avoid the fact that the California common interest privilege has never

3   been applied between a consumer and her bank, or a consumer and a private entity such as the Better

4   Business Bureau.  There is neither authority nor reason to do so in this case.

5           The defamatory statements Makaeff made were not statements of "common interest" to the

6   recipients.  Contrary to Makaeff's claim that Trump University seeks to "chill speech," Trump

7   University has never disputed Makaeff's right to complain, in an appropriate manner, about her <u>own</u>

8   experiences to the BBB, or to request assistance from her bank in reversing credit charges.  But this

9   is not the defamation of which Trump University complains.  Makaeff accused Trump University

10  with, among other things, identity theft and credit card fraud against <u>other</u> people.  Makaeff had no

11  personal experience with either and thus had no "interest" in these issues.  She was not the victim of

12  these alleged crimes and had no pecuniary or proprietary interest in these alleged crimes.  Certainly

13  the BBB and Makaeff's bank had no "interest" in the alleged criminal activity involving <u>others</u>,

14  especially when Makaeff had absolutely no personal knowledge of such alleged crimes.  Makaeff's

15  <u>stated</u> purpose for her communications with these entities was solely to recover her <u>own</u> money; the

16  false accusations of crimes against unknown <u>third parties</u> are in no way related to this interest.

17          This point is even more obvious in the communication between Makaeff and her bank.

18  Makaeff admits that the communication with her bank was solely to request a $5,000 reimbursement

19  for a credit card charge.  What Trump University purportedly did to <u>other</u> students, who were not

20  even known to Bank of America, in no way can be considered "of interest" to Bank of America.

21          Further, there simply is no relationship between Makaeff and the Better Business Bureau

22  and/or Bank of America which would support the existence of a privilege here.  Makaeff is not a

23  "partner" of either entity, and shares no common memberships with them.  The best Makaeff can say

24  is that she is a customer of Bank of America.  However, because the defamation had nothing to do

25  with Makaeff's relationship with her bank, even this argument is unavailing.

26          Makaeff's citations to an Ohio case and an unpublished Minnesota case are also unavailing

27  because neither of these cases applied the California statute, but rather interpreted their own states'

28  common law.  These cases are simply irrelevant to the instant case.

Further, while both cases do afford a limited privilege for a consumer to communicate with the Better Business Bureau, neither case supports an unlimited privilege to such communications.  In each case, the communication between the consumer and the Bureau pertained directly to the consumer's <u>own</u> injuries at the hands of a vendor, not to unsubstantiated claims of third parties. *Gugliotta v. Morano*, 161 Ohio App. 3d 152, 172 (2005); *Willis v. Centennial Mort. & Funding, Inc.*, 2004 WL 2075558.  Indeed, the *Willis* court stressed that a limited privilege applied because plaintiff was reporting her firsthand experiences.  *Willis* at *4.  Neither case extended any privilege to defamatory comments such as those made by Makaeff against Trump University about third parties.

As evidenced by the complete lack of California or Ninth Circuit law supporting Makaeff's argument, the common interest privilege simply does not apply here.

## V.   TRUMP UNIVERSITY IS LIKELY TO PREVAIL ON ITS DEFAMATION CLAIM EVEN IF IT IS REQUIRED TO PROVE MALICE.

Makaeff's Motion for Reconsideration should be denied for one additional reason.  Even if Trump University is considered a public figure, or Makaeff and the recipients of her defamatory remarks are "interested parties" and fit within the limited qualified privilege of Section 47(3), Trump University still is likely to prevail on its defamation claim because it has presented prima facie evidence of malice.  Since Trump University fully addressed the issue in its original opposition, it will only briefly address it here.

Malice is shown when a person publishes a false statement, either (1) knowing the statement was false or (2) with reckless disregard for whether the statement is true or not.  *Sipple*, 71 Cal.App.4th at 247.  Here, the evidence is clear that Makaeff made her defamatory statements with a complete and reckless disregard for the truth.

First, Makaeff admits that she had no personal knowledge of any criminal activity by Trump University against other attendees.  Makaeff simply read some <u>anonymous</u> postings on the Internet, then adopted those claims as if they were her own, and then broadcasted to her bank, to the BBB and on the Internet that Trump University engaged in criminal conduct, even though she conducted no investigation and had no personal knowledge as to their veracity.  California courts have consistently

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1   found that such conduct constitutes malice.  *Nguyen-Lam v. CAO*, 171 Cal.App.4th 858, 869 (2009)

2   ("malice may be inferred where . . . a story is based solely on an unverified anonymous telephone

3   call"); *Christian Research Institute v. Alnor*, 148 Cal.App.4th 71, 85 (2007) (same); *see also, St.*

4   *Amant v. Thompson*, 390 U.S. 727, 732 (1968).

5        Second, Makaeff's actions leading up to her defamatory comments further highlight that she

6   made them with malice.  Makaeff participated in her three-day mentorship program with Trump

7   University in September 2008.  During the next nine months, she attended five more workshops.

8   Throughout these nine months, she gave Trump University glowing reviews.  In every single

9   evaluation, she rated Trump University's programs, seminars, workshops and mentoring "5 out of

10  5."  She stated that her experience was "excellent," "amazing," and that "nothing could be

11  improved."  She stated that she would attend even more Trump University programs, and she would

12  recommend that her friends do so as well.

13       Makaeff now claims in her motions that it took her "months" to realize that she did not

14  actually like the seminars or her mentor.  She represented to this Court, under penalty of perjury, that

15  she never "praised Trump University seminars or Trump University mentors" and "never stated that

16  I was happy with any of Trump University's seminars or services."  ECF No. 17-2, p. 2, ¶4.

17  Makaeff's litigation "posture" is illogical and her declaration is untrue.

18       In June 2009, after fully participating in all of Trump University's programs and almost nine

19  months after her three-day mentorship programs, she provided a video testimonial in which she

20  stated the exact opposite.  Makaeff stated that her mentor "is awesome for me" and "he's great,

21  because he's just like me — very detail oriented, very analytical — we have the same thought

22  patterns — it's awesome.  He's really helping work through things."  (Sexton Decl., ¶ 2.)

23       The undisputed fact remains that she did not seek her money back until her personal financial

24  situation deteriorated.  Again, contrary to her litigation "posture," Makaeff admitted in writing that

25  her precarious financial condition was not due to Trump University.  In Makaeff's email to Trump

26  University dated April 13, 2007 (ECF No. 17-3, Ex. 1), she states that she "has earned 6 figures in

27  the past but lost marketing business when my client restructured due to the economy . . . .  I seriously

28  need the money.  I am under an insane amount of stress."

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE

1    The point is that Makaeff fully participated in, "consumed" and enjoyed <u>every</u> benefit of her

2    contract.  Only after Trump University then refused to refund her money, and only after Makaeff had

3    serious <u>unrelated</u> financial problems and stress, did Makaeff state, in writing, that she was "willing

4    to go to whatever lengths to get my money back" and begin her campaign of defamation.  That

5    defamation includes accusations of crimes and criminal activity which did not even involve her and

6    of which she had no personal knowledge.  There is ample evidence that Makaeff acted without

7    regard for the truth, supporting a finding of malice.

8                                    **VI.   <u>CONCLUSION</u>**

9    Makaeff's motion is improper.  She has not complied with any of the requirements to seek

10   reconsideration.  She has failed to identify any new law or facts or error by this Court.  Makaeff's

11   arguments are simply a rehash of her earlier arguments.

12   Makaeff again ignores controlling California, Ninth Circuit and even U.S. Supreme Court

13   authority and instead relies on unpublished out-of-jurisdiction cases.  Even those cases do not

14   change the key issue already determined by this Court:  Trump University did not voluntarily inject

15   itself into the controversy, and certainly not before Makaeff's defamation.  Therefore, Trump

16   University is not a public figure.

17   Finally, in the event the Court is now persuaded that Makaeff has met her burden to seek

18   reconsideration, and the Court now believes Trump University was a limited public figure, Trump

19   University respectfully requests that the Motion still be denied as Trump University still is likely to

20   succeed on the merits because Makaeff made her defamatory statements with reckless disregard for

21   the truth.

22   Dated:      October 12, 2010              YUNKER & SCHNEIDER

23

24                                    By:      /s/ David K. Schneider
25                                             David K. Schneider
                                               Attorneys for Defendant
26                                             Trump University, LLC

27

28

TRUMP UNIVERSITY'S MEMORANDUM IN OPPOSITION TO TARLA MAKAEFF'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 23, 2010 ORDER DENYING HER MOTION TO STRIKE