# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, a New York Limited Liability Company, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 10-CV-940-IEG (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 16] |

Presently before the Court is Defendant Trump University's motion to dismiss Plaintiffs Tarla Makaeff, Brandon Keller, Ed Oberkrom, Patricia Murphy, and Sheri Winkelmann's First Amended Complaint. Plaintiffs filed an opposition, and Defendant filed a reply. Defendant's motion is suitable for disposition without oral argument pursuant to Local Civil Rule 7.1(d)(1). For the reasons stated herein, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss.

## **BACKGROUND**

This case stems from Plaintiffs' participation in Defendant's real estate investment seminars and related programs. The following facts are drawn from the First Amended Complaint ("FAC"). Defendant markets itself as a "University" driven by the mission to "train, educate and mentor

entrepreneurs on achieving financial independence through real estate investing." Plaintiffs allege Defendant's real estate seminars and programs, for which they paid up to $34,995, are more like infomercials designed to sell products instead of provide training in real estate. Plaintiffs allege the purpose of the free introductory seminar is to get people to sign up for the $1,495 seminar; the purpose of the $1,495 seminar is to get people to sign up for the $35,000 Trump Gold Program; and the purpose of Trump Gold Program is to get people to sign up for additional seminars, products, and books.

On April 30, 2010, Plaintiff Tarla Makaeff filed a class action complaint against Defendant, alleging deceptive business practices. (Doc. No. 1.) On May 26, 2010, Defendant filed a counterclaim against Makeaff for defamation per se. (Doc. No. 4.) Makaeff later filed an amended complaint, adding Plaintiffs Brandon Keller, Ed Oberkrom, Patricia Murphy, and Sheri Winkelmann.[1] (Doc. No. 10.) On August 23, 2010, the Court denied Plaintiff's anti-SLAPP motion to strike Defendant's counterclaim for defamation. (Doc. No. 24.)

The FAC asserts eleven causes of action: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; (3) violation of the False Advertising Law, Cal. Bus & Prof. Code § 17500 *et seq.*; (4) Breach of Contract; (5) Breach of the Covenant of Good Faith and Fair Dealing; (6) Money Had and Received; (7) Negligent Misrepresentation; (8) Fraud; (9) False Promises, (10) Financial Elder Abuse in violation of California Welfare & Inst. Code § 15600 *et seq.*; and (11) violation of § 39 of New York General Business Law.

On July 21, 2010, Defendant filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), 9(b), and 8(a)(2).

//

//

---

[1] In Plaintiffs' opposition to the motion to dismiss, Plaintiffs concede Plaintiff Sheri Winkelmann no longer has standing to serve as a named plaintiff because, after the FAC was filed, her credit card company refunded the money she paid for Defendant's real estate seminar. (Pls.' Opp'n at 8.)

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). A court need not accept "legal conclusions" as true. Iqbal, 129 S.Ct. at 1949. In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

**DISCUSSION**

**I.    Educational Malpractice**

Defendant contends that virtually all of Plaintiffs' claims are, in essence, for educational malpractice, and should be dismissed. Defendant, however, cites no cases applying the educational malpractice doctrine to private, unaccredited, and for-profit companies selling educational seminars such as Defendant.

Educational malpractice is a negligence theory of liability struck down by the California Court of Appeal in Peter W. v. San Francisco USD, 60 Cal. App. 3d 814, 825 (1976). In Peter W., an 18-year-old former public school student, who graduated high school with a fifth grade reading level, sued his school district for failure to provide an adequate education. The California Court of Appeal concluded that the complaint failed to allege a breach of a duty the law would recognize, noting that "classroom methodology affords no readily acceptable standards of care, or cause, or injury." Id. at 824. The court recognized the difficulties of assessing the wrongs and injuries involved, the lack of a workable rule of care against which a school district's conduct may be measured, and the incalculable burden which would be imposed on public school systems.

California cases have applied the educational malpractice bar to claims by students against public schools, private universities, and charter schools. See Wells v. One2One Learning Found., 48 Cal. Rptr. 3d 108 (Cal. 2006) (publicly-funded charter school); Chevlin v. Los Angeles College Dist., 212 Cal. App.3d 382 (Ct. App. 1989) (community college); Smith v. Alameda Cty. Soc. Servs. Agency, 153 Cal. Rptr. 712 (Ct. App. 1979) (public school district); Peter W. v. San Francisco Unified Sch. Dist., 60 Cal. App. 3d 814 (Ct. App. 1976) (public school district); Zumbrun v. Univ. of So. Cal., 25 Cal. App. 3d 1 (Ct. App. 1972) (private university). The out-of-district cases Defendant cites involve private colleges and vocational schools. Thus, the Court is not persuaded that Defendant is an educational institution to which this doctrine applies.

Even if the educational malpractice bar were to apply, reading the FAC in the light most favorable to Plaintiffs, Plaintiffs' contract, tort, and consumer claims do not implicate this doctrine. The considerations identified in Peter W. do not apply to claims where resolution "does not require judgments about pedagogical methods or the quality of the school's classes, instructors, curriculum, textbooks, or learning aids," nor "require evaluation of individual students' educational progress or achievement, or the reasons for their success or failure." Wells, 48 Cal. Rptr. 3d at 139 (permitting California False Claims Act claim that charter school did nothing more than collect students' attendance forms); Zumbrun, 25 Cal. App. 3d 1 (Ct. App. 1972) (permitting breach of contract claim where university gave plaintiff a "B" for the course but did not provide instruction for the last month of class).

Here, Plaintiffs assert their claims are not based on failure to adequately instruct, but stem from Defendant's failure to provide specific services. (Pls.' Opp'n to Mot. to Dismiss, at 12-13.) Indeed, the FAC states: "Plaintiffs are not bringing this action because they did not succeed in real estate - they are bringing this action because Trump University misrepresented what it was providing. It claimed it was providing a year-long real estate education and mentorship, when in actuality, it was providing only a 3-day long infomercial, designed to confuse, rather than educate, its students, and to persuade them to purchase even more seminars." (FAC ¶ 8.) Thus, construing the FAC in the light most favorable to Plaintiffs, their claim is not that Defendant failed to provide them an adequate education, but that it did not provide an education in real estate investment *at all*. In addition, Plaintiffs allege Defendant failed to provide certain services as promised.

For example, the FAC contains allegations that Defendant falsely represented it would provide instructors and mentors "hand-picked by Donald Trump." Plaintiff alleges, however, that in most cases Donald Trump did not even know who the instructors and mentors were and had never even met them. (FAC ¶¶ 37, 45.) Plaintiffs also allege Defendant promised for $1,495 a one-year "apprenticeship" which would provide a "comprehensive real estate education." Instead, Plaintiffs received a "three-day infomercial to sell more Trump products," and Defendant failed to "teach students actual real estate techniques and how to fill out the necessary contracts and forms." (FAC ¶¶ 35, 38.) Plaintiffs allege Defendant also failed to instruct Plaintiffs how to use the contracts in the $34,995 Trump Gold Program. (FAC ¶ 53.) In addition, the FAC alleges Defendant promised a one-year mentorship worth $25,000, but they received "no mentorship." (FAC ¶¶ 5, 16, 50.) Ruling on these issues would not require an inquiry into pedagogical methods, the quality of Defendant's instructors and curriculum, or an evaluation of Plaintiffs' "progress or achievement, or the reasons for their success or failure." See Wells, 48 Cal. Rptr. 3d at 139.

Therefore, the Court declines to dismiss Plaintiffs' claims as barred under the educational malpractice doctrine.

**II.    Contract Claims**

Plaintiffs' fourth cause of action is for breach of contract. Plaintiffs allege they entered into agreements with Defendant for the $1,495 seminar, and some of the Plaintiffs also entered into

agreements for the $34,995 Trump Gold Program. (FAC ¶ 116.) Defendant allegedly "breached the terms of its standardized contracts with Plaintiff and the Class by failing to provide them with the promised products and services as contracted." (FAC ¶ 119.) In addition, Plaintiffs assert related claims for breach of implied covenant and money had and received.[2]

Defendant moves to dismiss these claims, arguing that Plaintiffs' claims are barred by the educational malpractice doctrine. For the reasons stated previously, the Court rejects that argument. Defendant also contends these claims should be dismissed because the allegations of the FAC establish that Plaintiffs received all the goods and services specified in the contracts. Defendants attach each Plaintiff's contract, which consists of an Enrollment Form and Terms and Conditions Sheet.[3] (Mot. to Dismiss, Exs. 1-4.) In response, Plaintiffs argue Defendant mistakenly assumes that these standardized form contracts contain all the terms of the parties' agreements. Plaintiffs contend that oral and written promises made during the free introductory seminar and the $1,495 seminar also form the basis of the parties' bargain. (Pls.'s Opp'n to Mot. to Dismiss, at 14.) Plaintiffs allege Defendant promised a year-long mentoring program, three-day field mentorship, and experienced real estate instructors and mentors hand-picked by Donald Trump. (FAC ¶¶ 5, 16, 35, 37, 38, 45, 50, 53.) Thus, although the FAC could certainly be more precise as to the terms of the contract, the FAC sets forth "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[2] The FAC alleges "Defendant did not provide and/or unfairly interfered with the right of Plaintiff and Class members to receive the benefits under their agreements with Defendant." (FAC ¶ 126.) The FAC further alleges Trump University has "wrongly and deceptively" obtained a benefit – namely payment for its educational goods and services – and that payment must be disgorged. (FAC ¶¶ 128-130.)

[3] The contract lists the following features for the $34,995 Trump Gold Program: 3 Day In-Field Mentorship, Wealth Preservation Retreat, Quick Start Real Estate Retreat, Creative Financing Retreat, Commercial & Multi-Family Retreat, Real Estate Investor Training Online Program, Incorporate Your Business (State Licensing Fees Not Included), and Foreclosure DealSource Property Listing Service (One Year Membership). (Mot. to Dismiss, Exs. 1, 2, and 4.) The contract for the $1,495 Profit from Real Estate 3-Day Training lists the following features: Profit from Real Estate 3-Day Training (12-Month Audit Privileges), Guest or Business Partner, Premium Membership (12 months), Real Estate Breakthrough 2009 (Journal & Audio Course), and Foreclosure DealSource (Workshop attendance and credit card required to activate 30 Day Free Trial). (Mot. to Dismiss, Ex. 3.)

Accordingly, Plaintiffs state a cause of action for breach of contract. Because Plaintiffs' causes of action for breach of implied covenant and money had and received are premised on the breach of contract claim, the Court also declines to dismiss these claims.

**III.     Fraud Claims**

Plaintiffs' seventh, eighth, and ninth causes of action are for negligent misrepresentation, fraud, and false promise. Plaintiffs allege Defendants misrepresented that Plaintiffs would get a "complete real estate education," a "one-year apprenticeship," "one-to-one mentorship," "practical real estate techniques and contracts," a "power team" of professionals, a money-back "guarantee" on their first real estate deals, and a promise of income "up to ten thousand dollars a month or more." (FAC ¶¶ 132, 144, 151-152.)

Defendant contends these causes of action fail because Plaintiffs cannot demonstrate reasonable reliance. Under California law, these claims of deception require reasonable reliance by Plaintiffs. See Gil v. Bank of Am., N.A., 42 Cal. Rptr. 3d 310, 317 (Ct. App. 2006); Fox v. Pollack, 226 Cal. Rptr. 532, 537 (Ct. App. 1986). Defendant argues Plaintiffs signed two disclaimers in their contracts with Trump University. Plaintiffs signed the Enrollment Sheet, which states:

> This training is provided for education only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program. . . . I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information.

(Mot. to Dismiss, Exs. 1-4.) Three of the Plaintiffs also signed the Terms and Conditions Sheet, which provides:

> You acknowledge and agree that [Trump University] has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy.

(Mot. to Dismiss, Exs. 1-3.) Defendant contends that any claim as to Plaintiffs' success or failure is therefore barred by these disclaimers. (Reply in Supp. of Mot. to Dismiss, at 7-8.)

At this stage, the Court declines to determine as a matter of law that the disclaimers preclude a finding of justifiable reliance. Plaintiffs assert their claims do not contradict the language of these disclaimers, because Plaintiffs do not claim that they were guaranteed to succeed. (Pls.' Opp'n to

Mot. to Dismiss, at 22.)  Rather, Plaintiffs contend their claims are for Defendant's failure to deliver promised services. (Pls.' Opp'n to Mot. to Dismiss, at 22.)   The Court agrees that at least some of the alleged misrepresentations do not relate to guarantees of success.   To the extent Plaintiffs base their claims on the allegation that Defendant promised a money-back "guarantee" on their first real estate deals and a promise of income "up to ten thousand dollars a month or more," whether Plaintiffs relied on these alleged misrepresentations is a question of fact. See City of Salinas v. Souza & McCue Const. Co., 57 Cal. Rptr. 337, 340 (Cal. 1967), *overruled in part on other grounds by*, 84 Cal. Rptr. 173 (Cal. 1970). Although the disclaimers are certainly a factor to consider in determining whether Plaintiffs justifiably relied on these representations, the Court declines to make this determination at this stage. See McClain v. Octagon Plaza, LLC, 71 Cal. Rptr. 3d 885, 893 (Ct. App. 2008).

The Court agrees with Defendants, however, that Plaintiffs fail to allege these claims with sufficient particularity.[4]  Federal Rule of Civil Procedure 9(b)  requires: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  In the Ninth Circuit, this rule "has been interpreted to mean the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Misc. Serv. Workers, etc. v. Philco-Ford Corp., WDL Div., 661 F.2d 776, 782 (9th Cir. 1981). Claims for negligent misrepresentation also must meet Rule 9(b)'s particularity requirements.  See, e.g., Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Although Plaintiffs allege the particular misrepresentations (FAC ¶ 144), it is not clear from the FAC to which Plaintiffs they were made and when.

Accordingly, the Court dismisses without prejudice Plaintiffs' causes of action for negligent misrepresentation, fraud, and false promise under Rule 9(b) for failure to allege the claims with sufficient particularity.

**IV.    California Unfair Competition Law**

Plaintiffs' first cause of action is for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  Section 17200 prohibits "any unlawful, unfair or fraudulent business act

---

[4]Plaintiffs appear to concede this is true with respect to Plaintiff Patricia Murphy. (Pls.' Opp'n to Mot. to Dismiss, at 24 n.14.)

or practice." Because Section 17200 is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 83 Cal. Rptr. 2d 548, 561 (Cal. 1999). By proscribing "unlawful" acts or practices, "Section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable." Id. at 539-40.

The definition of "unfair" acts or practices in consumer actions is uncertain. There are two opposing lines of California appellate court opinions. See, e.g., Morgan v. Harmonix Music Sys, Inc., 2009 WL 2031765, at *4 (N.D. Cal. July 7, 2009) (noting the split in authority); Bardin v. DaimlerChrysler Corp., 39 Cal. Rptr. 3d 634, 639-48 (Ct. App. 2006) (same). "One line defines 'unfair' as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Id. (citing Smith v. State Farm Mut. Auto. Ins. Co. 113 Cal. Rptr. 2d 399, 415 (Ct. App. 2001). "The other line of cases holds that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." Bardin, 39 Cal. Rptr. 3d at 636 (citing Scripps Clinic v. Superior Court, 134 Cal. Rptr. 2d 101, 116 (Ct. App. 2003)).

The term "fraudulent" as used in Section 17200 "does not refer to the common law tort of fraud" but only requires a showing members of the public "are likely to be deceived." Puentes v. Wells Fargo Home Mortg., Inc., 72 Cal. Rptr. 3d 903, 909 (Ct. App. 2008) (quoting Saunders v. Superior Court, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994). "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'" Puentes, 72 Cal. Rptr. 3d at 909 (quoting Aron v. U-Haul Co. of Cal., 49 Cal. Rptr. 3d 555, 562 (Ct. App. 2006)).

Here, Defendant contends Plaintiffs fail to state a claim under any of the three prongs. The Court disagrees. Under the "unlawful" prong, Plaintiffs allege the predicate acts are fraud and deceit in violation of California Civil Code §§ 1572, 1573, 1709, 1710; violation of the Consumer Legal Remedies Act; violation of California's false advertising law; California elder abuse law; New York's General Business Law; and common law violations. (FAC ¶ 96.) As discussed elsewhere in this

order, the FAC states claims for violation of the Consumer Legal Remedies Act and California's false advertising law. Therefore, these alleged violations may serve as the predicate acts under the "unlawful" prong.[5] In addition, Plaintiffs allege Defendant engaged in the following unlawful conduct: (1) instructing students to engage in real estate practices that are illegal, such as posting "bandit" signs and engaging in the practice of real estate without a real estate license; (2) issuing student testimonials which are misleading, and in some cases, completely fabricated by Trump employees; and (3) forging student signatures on seminar contracts when students have forgotten to sign the contracts. (FAC ¶ 97.) Defendant does not address whether these acts can form the basis for a claim under the "unlawful" prong.[6]

Plaintiffs also state a claim under the "unfair" prong under either of the two tests set forth by the California Court of Appeal. Plaintiffs allege Defendant's conduct is unfair because it violates certain statutes, as stated under the "unlawful" prong. (FAC ¶ 100.) The FAC also alleges conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious" to consumers. (FAC ¶ 100.)

Finally, Plaintiffs state a claim under the "fraudulent" prong. Plaintiffs "need only show that 'members of the public are likely to be deceived'" by misrepresentations. See Puentes, 72 Cal. Rptr. 3d at 909. Defendant asserts deception of the public is not possible given the disclaimers in the contracts, and that any alleged misrepresentations were mere "puffery." The Court cannot determine as a matter of law that members of the public cannot possibly be deceived by the alleged misrepresentations. In addition, although some of Defendant's statements may constitute puffery, Defendant does not specify these statements.

Therefore, Plaintiffs state a cause of action under California's Unfair Competition Law.

---

[5] In the reply, Defendants argue the New York General Business Law claim fails because, the FAC does not allege any New York plaintiff resident. Plaintiffs now admit that plaintiff Patricia Murphy purportedly attended Trump University programs only in Florida and Pennsylvania (Oppo. p. 8),

[6] Defendant's only argument is that Plaintiff does not allege any damage caused by the alleged teaching of posting "bandit" signs. (Mot. to Dismiss, at 20.) Plaintiff, however, alleges she was investigated by the District Attorney's Office as a result of her posting these signs and she suffered physical and emotional damage as a result. (FAC ¶ 63.)

**V.     Consumer Legal Remedies Act**

Plaintiffs' second cause of action is for violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. The CLRA prohibits various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Plaintiffs allege four acts by Defendants that violate the CLRA:

> (a) In violation of Cal. Civ. Code § 1770(a)(5), Defendant's acts and practices constitute misrepresentations that the Seminars in question have characteristics, benefits or uses which they do not have;
>
> (b) In violation of Cal. Civ. Code § 1770(a)(7), Defendant has misrepresented that the Seminars are of particular standard, quality and/or grade, when they are of another;
>
> (c) In violation of Cal. Civ. Code § 1770(a)(9), Defendant advertised the Seminars with the intent not to sell them as advertised or represented; and
>
> (d) In violation of Cal. Civ. Code § 1770(a)(10), Defendant advertised the Seminars with intent to not supply reasonably expectable demand.

(FAC ¶ 104.)

Defendant contends Plaintiff sets forth no factual allegations supporting these alleged violations. With respect to the first three alleged violations, Defendant argues these are based on Plaintiffs' claim for fraud, and fail for the same reasons Plaintiffs' claim for fraud fails. The FAC, however, sets forth numerous allegations of misrepresentations regarding the characteristics, benefits, standard, and quality of Defendant's seminars. Therefore, the FAC sets forth "enough facts to state a claim to relief that is plausible on its face."[7] See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Defendant is correct, however, that there are no factual allegations in the FAC supporting the fourth alleged violation. Paragraph 104(d) of the FAC alleges that "Defendant advertised the Seminars with intent not to supply reasonably expected demand." Plaintiffs do not allege they tried to get into the Trump University program and could not because of limited supply. Therefore,

---

[7] The fact that the Court dismissed Plaintiffs' fraud claims under Rule 9(b) for failure to allege the claims with sufficient particularity does not compel the Court to dismiss Plaintiffs' CLRA claim. Rule 9(b)'s particularity requirement is not necessarily applicable to claims under the CLRA. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[F]raud is not an essential element of a claim under [Cal. Civ.Code § 1770].").

although Plaintiffs state a claim for violation of the CLRA, the Court dismisses such claim to the extent it is based on the allegation that Defendant advertised the Seminars with the intent not to supply reasonably expected demand as set forth in Paragraph 104(d).

**VI.   False Advertising Law**

Plaintiff's third cause of action is for false advertising in violation of the California False Advertising Law, California Business & Professions Code §§ 17500 *et seq.* Section 17500 provides it is unlawful to make an advertisement which is "untrue, misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.  Plaintiffs allege "Defendant disseminated, through common advertising, untrue statements about its Seminars and Defendant knew or should have known that the Seminars did not conform to the advertisements representations [sic] regarding the Seminars."  (FAC ¶ 113.) Throughout the FAC, Plaintiffs make numerous allegations of promises and representations by Defendant. Although the FAC is unclear as to which misrepresentations were contained in advertising and which were made during the seminars, the FAC sets forth "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

However, with respect to Plaintiff Tarla Makaeff, Defendant is correct that the FAC does not allege she was solicited by advertising or relied on any advertising. Therefore, the FAC fails to state a claim under the False Advertising Law as to that particular plaintiff. As to the other plaintiffs, Defendant concedes the FAC alleges they were solicited, but argues they cannot demonstrate reasonable reliance. For the reasons previously discussed, the Court declines to find as a matter of law that Plaintiffs cannot have reasonably relied on Defendant's advertising.

Accordingly, the FAC states a claim under the False Advertising Law, except as to Plaintiff Tarla Makaeff.

**VII.   Elder Abuse**

Plaintiff's tenth cause of action is for financial elder abuse in violation of California Welfare and Institutions Code § 15610.30. Section 15610.30 provides: "'[f]inancial abuse' of an elder or dependent occurs when a person or entity . . . takes . . . real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud." Cal. Welf. & Inst. Code §

15610.30(a)(1). Plaintiffs allege Defendant took money from Plaintiff Ed Oberkrom, who is over 65-years-old, for a wrongful use and with the intent to defraud. (FAC ¶¶ 160-161.)

Defendant is correct that the FAC fails to allege any of the Plaintiffs are persons protected under this statute. Section 15610.27 defines an "elder" as "any person *residing in this state*, 65 years of age or older." Cal. Welf. & Inst. Code § 15610.27 (emphasis added). Plaintiff Oberkrom, is alleged to be a Missouri resident, not a California resident. (FAC ¶ 24.) Plaintiffs do not allege that either of the two plaintiffs residing in California is 65-years-old or older. Accordingly, Plaintiffs fail to state a cause of action for elder abuse.

The Court declines Plaintiffs' request for leave to add additional plaintiffs who are 65-years-old or older and plead violation of elder abuse statutes for those states in which they reside. If Plaintiffs wish to add additional plaintiffs, they must file a separate motion for leave to amend.

**V.     Class Allegations**

Defendant acknowledges that the pleading stage is not the time to consider class certification under Rule 23 (Mot. to Dismiss, at 24), but argues it is proper to consider whether the class allegations in the FAC make certification plausible on its face. Defendant cites no case in which a court has addressed class certification issues at the motion to dismiss stage. The Court, therefore, declines to address class certification issues at this stage.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss.

(1)     The motion is denied as to Plaintiffs' claims for breach of contract, breach of implied covenant, money had and received, and violation of California's Unfair Competition Law.

(2)     The motion is granted as to Plaintiffs' claims for negligent misrepresentation, fraud, and false promise, under Rule 9(b) for failure to allege the claims with sufficient particularity.

(3)     The motion to dismiss Plaintiffs' CLRA claim is granted to the extent this claim is based on advertisement of the seminars with intent to not supply reasonably expectable demand.

(4)     The motion to dismiss Plaintiffs' claim for violation of the False Advertising Law is granted as to Plaintiff Tarla Makaeff.

     (5)    The motion is granted as to the claim for elder abuse.

Plaintiffs may file a Second Amended Complaint to cure the deficiencies set forth above within 20 days of the filing date of this order.

**IT IS SO ORDERED**.

**DATED: October 12, 2010**

*(signature)*

**IRMA E. GONZALEZ, Chief Judge**

**United States District Court**