David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535
Email:  dks@yslaw.com

Attorneys for Defendant Trump University, LLC

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, PATRICIA MURPHY and SHERI WINKELMANN on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Trump University, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 10 CV 0940 IEG (WVG)<br><br>REPLY IN SUPPORT OF EX PARTE MOTION TO CONFIRM APPELLATE STAY OR, IN THE ALTERNATIVE, TO REQUEST STAY PENDING APPEAL<br><br>CTRM:  1<br>JUDGE: Hon. Irma E. Gonzalez |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................1

II. THIS COURT SHOULD RECOGNIZE AN AUTOMATIC STAY FOR ALL UNDERLYING PROCEEDINGS BECAUSE SUCH A STAY IS MANDATED UNDER SUBSTANTIVE CALIFORNIA LAW, AND THE COMPAINT AND COUNTERCLAIM ARE SO RELATED THAT BOTH SHOULD BE STAYED............1

    A. This Court Should Find That The Automatic Stay Provisions Of The California Anti-SLAPP Statute Apply In Federal Court. .......................................2

    B. If The Automatic Stay Provision Applies, It Should Apply Equally To Both The Counterclaim And The Complaint..........................................................4

III. IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE ITS DISCRETION TO STAY THE UNDERLYING ACTIONS IN THE INTERESTS OF JUSTICE.................................................................................................................7

    A. Trump University Has Shown A Likelihood Of Prevailing On The Merits............7

    B. Trump University Will Suffer Irreparable Harm If The Stay Is Not Granted.................................................................................................................7

    C. The Balance Of Equities Supports The Issuance Of The Requested Stay...............9

    D. A Stay Is In The Public Interest. ..............................................................................9

IV. CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*All One God Faith, Inc. v. Hain Celestial Group, Inc.*,
    2009 WL 4907433 (N.D. Cal. 2009) ...................................................................................3

*Batzel v. Smith*,
    333 F.3d 1028 (9th Cir. 2003) ............................................................................................2

*Englert v. MacDonell*,
    551 F.3d 1099 (9th Cir. 2009) ............................................................................................2

*Greensprings Baptist Christian Fellowship Trust v. Cilley*,
    2010 WL 5294273 (9th Cir. 2010) .....................................................................................3

*Los Angeles Memorial Coliseum Comm'n v. NFL*,
    634 F.2d 1197 (9th Cir. 1980), quoting
    *Sampson v. Murray*,
    415 U.S. 61 (1974) ..............................................................................................................7

*Moser v. Encore Capital Group, Inc.*,
    2007 U.S. Dist. LEXIS 22970 (S.D. Cal. 2010) .................................................................3

*Salazar v. Avis Budget Group, Inc.*,
    2008 WL 5054108 (S.D. Cal.) ..........................................................................................10

*Verizon Del. Inc. v. Covad Comm. Co.*,
    377 F.3d 1081 (9th Cir. 2004) ............................................................................................3

**Statutes**

California Code of Civil Procedure § 916(a) ..............................................................................2, 6

## I.   INTRODUCTION

This Motion basically turns on one issue: whether Trump University's claim for defamation against Makaeff "embraces" the same issues involved in Makaeff's claims against Trump University for fraud, breach of contract, and consumer claims. While just a few of the facts alleged by Makaeff are not also the subject of the defamation action, the two actions are, in large part, mirror images of one another.

Makaeff claims that Trump University committed certain crimes and torts; Trump University claims that Makaeff's statements about Trump University's alleged criminal and tortious actions are defamatory and false. Thus, the truth of Makaeff's statements about Trump University is the common factor underlying both actions. Makaeff contends that her claims are identical to the other plaintiffs and therefore she can represent their interests as a potential class representative. Thus, <u>all</u> plaintiffs' claims are similarly affected by a determination whether Trump University did or did not engage in the alleged tortious and criminal conduct — which is also the basis of the defamation claim.

Makaeff has appealed a ruling of this Court which found, in relevant part, that Trump University has shown a likelihood of prevailing on the merits of its is defamation claim, which necessarily means that Trump University is likely to prove that Makaeff's statements were false. The appellate court will now address that same issue, namely whether Makaeff's statements are more likely to be proven true, or proven false. While the appellate decision will not resolve all the issues in this case, it certainly will "embrace" the majority of the issues presented. Thus, whether the stay is determined to be automatic or discretionary, a stay serves the interests of the parties, promotes judicial economy, and serves public policy.

## II.   <u>THIS COURT SHOULD RECOGNIZE AN AUTOMATIC STAY FOR ALL UNDERLYING PROCEEDINGS BECAUSE SUCH A STAY IS MANDATED UNDER SUBSTANTIVE CALIFORNIA LAW, AND THE COMPAINT AND COUNTERCLAIM ARE SO RELATED THAT BOTH SHOULD BE STAYED.</u>

It is difficult to understand how Makaeff could argue that Trump University somehow tried to "mislead" this Court on the issue of the stay, when Trump University specifically began its motion with the correct acknowledgement that no published decision from this Circuit has ever

addressed the specific procedural question here: whether an appeal from the denial of an anti-SLAPP motion automatically stays the underlying proceedings. Indeed, Makaeff appears confused as to exactly what the effect of the appeal will be on the underlying proceedings.

First, Makaeff argues that California substantive law <u>does</u> apply and that the automatic stay <u>is</u> applicable to the Counterclaim against her. Makaeff then argues that California substantive law <u>does not</u> apply and that the automatic stay <u>is not</u> applicable to her Second Amended Complaint. Makaeff's position is inconsistent and completely self-serving. If the automatic stay provision of California law binds this Court, both the Complaint and Counterclaim must be stayed. If this Court is not bound to issue an automatic stay, neither action is stayed.

### A. This Court Should Find That The Automatic Stay Provisions Of The California Anti-SLAPP Statute Apply In Federal Court.

Once the denial of an anti-SLAPP motion is appealed, California law requires that proceedings in the trial court are stayed as to the alleged SLAPP complaint and all "the matters embraced therein or affected thereby." Cal. Code Civ. Proc. § 916(a). Further, federal courts have recognized that the California anti-SLAPP statute is not merely a procedural bar to suit, but rather affects the substantive rights of the parties and therefore a federal court sitting in diversity generally should apply California law regarding the statute. *Batzel v. Smith*, 333 F.3d 1028 (9th Cir. 2003). The Ninth Circuit has also recognized that while the right to an immediate appeal is generally a procedural decision subject to federal law in a diversity case, the special provisions of the California anti-SLAPP law allowing an immediate appeal are substantive, and therefore will be applied. *Englert v. MacDonell*, 551 F.3d 1099, 1107 (9th Cir. 2009).

The same reasoning applies here to the application, in federal court, of the automatic stay provisions of the California anti-SLAPP law. The automatic stay provision is an important part of the California anti-SLAPP law, designed to protect the substantive rights of the parties. Although the procedural posture of cases such as *Batzel* and *Englert* required those courts to consider the rights of the anti-SLAPP defendants, nothing in those courts' reasoning precludes the application of this rule to plaintiffs.

1    Further, nothing in the cases cited by Makaeff changes the conclusion that the automatic stay
2    provisions should apply.  For example, in *Greensprings*, the Ninth Circuit did not consider the
3    application of a stay pending appeal.  Rather, it faced the question of whether it had jurisdiction over
4    the appeal (of the granting of an anti-SLAPP motion) **when the trial court had granted Plaintiffs**
5    **the right to amend their complaint**.  *Greensprings Baptist Christian Fellowship Trust v. Cilley*,
6    2010 WL 5294273 (9th Cir. 2010).  The Ninth Circuit noted that the decision of the trial court did
7    not finally dispose of any issues between the parties since the plaintiffs were free to amend their
8    complaint.  *Id*.  Similarly, while the Ninth Circuit in *Verizon* recognized that certain federal court
9    procedural rules applied in anti-SLAPP cases, the rules involved in that case also involved the
10   propriety of allowing amendments to the complaint, not the rules involving appeals and stays.
11   *Verizon Del. Inc. v. Covad Comm. Co.*, 377 F.3d 1081 (9th Cir. 2004).  The Ninth Circuit allowed
12   amendment because refusing to do so would directly violate Federal Rule of Civil Procedure 15(a),
13   which allows liberal amendment of complaints.  *Id*. at 1091.  In short, neither of these cases relied on
14   by Makaeff actually support her argument — legally or factually — because neither addressed the
15   issue before this Court.
16   Makaeff's argument that Trump University lacks "standing" to enforce the stay is also
17   meritless.  Makaeff does not cite a single authority which limits Trump University's ability to
18   request a confirmation of an automatic stay (or to request a discretionary stay).  While the primary
19   purpose of the anti-SLAPP statute is to protect defendants against unwarranted suits, nothing in the
20   statute purports to deprive a plaintiff of its due process rights under the statute.
21   Further, neither *Moser* (decided by this District Court) nor *All One God Faith* is rationally
22   distinguishable from this case.  *Moser v. Encore Capital Group, Inc.*, 2007 U.S. Dist. LEXIS 22970
23   (S.D. Cal. 2010); *All One God Faith, Inc. v. Hain Celestial Group, Inc.*, 2009 WL 4907433, fn. 2
24   (N.D. Cal. 2009).  In both of these cases, it was the defendant who requested the stay, but nothing in
25   either ruling would prevent a plaintiff from seeking a stay.  Neither *Moser* nor *All One God Faith*
26   drew any distinction between which party sought the stay, and certainly neither case denied a
27   plaintiff standing to seek a stay.  Further, if the stay is automatic under the law, it is illogical to
28   distinguish between a plaintiff and defendant who seeks to confirm that automatic stay.

**B. If The Automatic Stay Provision Applies, It Should Apply Equally To Both The Counterclaim And The Complaint.**

The anti-SLAPP statute requires that the automatic stay be applied to all matters "embraced" by the appeal.

Makaeff tries to avoid the consequences of the statute by arguing that the claims of the "class" are not affected by Makaeff's anti-SLAPP appeal. This argument fails for at least three reasons: (i) there is no class, and it is unlikely that there ever will be; (ii) the use of the collateral order doctrine as a basis for the Ninth Circuit's jurisdiction over the appeal has no bearing on the scope of a stay; and (iii) the failure to stay Makaeff's Complaint along with the Counterclaim will impact the effectiveness of the appeal. Each of these fatal flaws can be explained as follows:

(i) There Is No Class

Although Makaeff claims that a stay of the action on the Complaint will adversely affect the plaintiff class, Makaeff ignores the obvious fact that there is no plaintiff class to be affected. Makaeff has not yet even sought to certify a class. In fact, despite allegations of "thousands" of dissatisfied Trump University customers, Makaeff has brought only four before this Court.[1] Even one of these four, Patricia Murphy, likely will soon be dismissed, as she never attended a Trump University, LLC program, never contracted with Trump University, LLC, and never paid Trump University, LLC any money.[2] Declaration of David Schneider, ¶2. As discussed in previous court briefs, the putative "class" is made up of participants who attended different seminars, in different cities, taught by different instructors, at different cost levels and time commitments, and had different mentors over different periods of time. They also started with different abilities, skills, education, resources, financial backing, and experience before their enrollment. Then, they ended up with different goals, opportunities, local markets, successes, failures, rates of return, and levels of

---

[1] Former plaintiff Ms. Winkelmann has dropped her suit.

[2] Counsel have already informally discussed this issue. Unfortunately, Ms. Murphy still refuses to dismiss her suit, so it will be the subject of a Rule 56 motion.

4          Case No. 10 CV 0940 IEG (WVG)
REPLY IN SUPPORT OF EX PARTE MOTION TO CONFIRM APPELLATE STAY OR, IN THE ALTERNATIVE, TO REQUEST STAY PENDING APPEAL

satisfaction after their enrollment. This completely diverse collection of unique individuals with different experiences cannot possibly comprise a viable California class.[3]

Thus, unless a class is ever certified, the only interests here are those of Makaeff and two other individuals who purportedly are suing about the exact same representations allegedly made by Trump University. Based on plaintiffs' own allegations in the Second Amended Complaint, the truth or falsity of these representations is just as material to the other plaintiffs as to Makaeff. If not, then there is no commonality of interests among the plaintiffs and no class could ever be certified. In the meantime, there simply is no class for the Court to consider here. Any speculation that maybe, someday, a class *might* be certified is not a basis for claiming that the currently non-existent class could be prejudiced by a stay.

(ii)     Collateral Order Doctrine Is Inapplicable

The use of the collateral order doctrine as a basis for jurisdiction does not relate to the question of whether an automatic stay is required, much less govern it. By Makaeff's reasoning, no stay of underlying proceedings would ever be granted on an appeal from a "collateral order." There would be no need for a stay because the underlying proceedings could never be affected by the appeal.

This is simply not the case. District Courts stay proceedings pending appeal every day. Whether these stays are automatic or discretionary, they are issued because the pendency of the appeal has some bearing on the other portions of the case. The collateral order doctrine simply is not applicable to the issues before the Court.

(iii)    Complete Stay Required for Effective Appeal

Finally, the failure to stay all underlying matters in this case would affect the effectiveness of the appeal, including the possibility of inconsistent judgments. Makaeff's confusion on this issue is

---

[3] While Trump University will not argue the merits of class certification in this document, it is worth noting that it is highly unlikely that a class will ever be certified. Much of Makaeff's claims involve alleged false advertisements and false representations. Unless Makaeff can establish that every member of the class saw the same advertisements or heard the same representations, and had an equivalent justifiable reliance, the commonality of facts necessary to class certification simply cannot be shown. In addition, many of the causes of action have California residency requirements that half of the <u>current</u> plaintiffs cannot even satisfy.

perhaps best summed up by a sentence in her opposition to this Motion: "Indeed, Plaintiffs' claims alleging Defendants failed to provide promised services have nothing to do with whether Ms. Makaeff is immune from a defamation suit." Opposition at 6:12-14. *This statement is obviously wrong*.

The basis of the Counterclaim for defamation is that Makaeff's statements regarding Trump University, including accusations of criminal conduct, are false. The basis of her Complaint against Trump University is that Trump University engaged in this same tortious and criminal conduct: making false statements about its courses, forging credit card applications, and the like.[4] A major component of Trump University's defense to the Complaint is that its statements about its courses were true; that is, that Makaeff's accusations are false. With a few exceptions, the very statements that constitute Makaeff's defamation **also** constitute the basis of her Complaint. For example, Makaeff charges that Trump University committed fraud by forging student signatures on contracts, encouraging the practice of real estate without a license, and fabricating testimonials. See, First Amended Complaint at ¶¶ 99, 101. These untrue statements are encompassed within the defamation action filed against Makaeff.

Trump University asserts that the automatic stay provisions of the anti-SLAPP statute in section 916(a) should be applied by this Court, and that the part of that section applying to all matters "embraced" by the appeal requires that both the Complaint and Counterclaim be stayed. If, however, this Court finds that the automatic stay provision does not operate to stay this action, and if the Court decides not to exercise its discretion to stay the action, then <u>neither</u> the Complaint <u>nor</u> the Counterclaim should be stayed. The remainder of this brief will explain why such discretion can and should be exercised.

---

[4] Makaeff's claim that only three defamatory statements are at issue in the anti-SLAPP appeal is a gross misstatement. This Court discussed three examples of defamatory statements in its Order (grand larceny, identity theft, and the taking of personal credit information without permission), but the Court in no way limited Makaeff's defamatory statements to only those three. Further, the fact that Makaeff removed the most offensive and libelous language from her Second Amended Complaint is irrelevant. These acts are still alleged; they are merely given a different spin. See, for example, paragraphs 60 and 99 of the Second Amended Complaint, which alleges criminal conduct, including elements of identity theft and the fabrication of testimonials.

### III. IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE ITS DISCRETION TO STAY THE UNDERLYING ACTIONS IN THE INTERESTS OF JUSTICE

#### A.     Trump University Has Shown A Likelihood Of Prevailing On The Merits.

Makaeff misunderstands or misstates the relationship between the Complaint and Counterclaim in this case. As detailed above, the fact that Trump University has proven a likelihood of success on the merits of its defamation claim — that is, has proven the likelihood that Makaeff's statements were false and defamatory — means that Makaeff likely cannot prove the threshold element of her fraud claims — that is, Trump University has engaged in criminal and tortious conduct. Although not all of the claims in the Second Amended Complaint are coextensive with the defamatory statements, a great many are. Thus, Trump University has met the requirement of showing a likelihood of success on the merits of the case.

The fact that this Court determined that plaintiff's fraud claims are not barred as a matter of law by the educational malpractice doctrine (addressed in Trump University's 12(b)(6) Motion) certainly does not mean that Trump University has failed to satisfy its burden. As Makaeff is well aware, a 12(b)(6) motion measures only the sufficiency of the pleadings, not the likelihood of success. Trump University has met the "likely to succeed" prong of its burden.

#### B.     Trump University Will Suffer Irreparable Harm If The Stay Is Not Granted.

Makaeff simply misrepresents the law to this Court. As set forth in Trump University's moving papers, monetary damages **do** constitute irreparable harm **when those damages are not recoverable**. Even the case cited by Makaeff makes this clear:

> "(T)he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury ... 'The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended ... are not enough. **The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm**.'"

*Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980), quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (emphasis added). In this case, the wasted time, energy, and money which Trump University will be forced to expend if this case is allowed to

proceed pending appeal will largely take the form of attorney's fees, which are **not** recoverable. Therefore, these damages are irreparable. Trump University has met the "irreparable damages" prong as well.

Plaintiff next argues that Trump University's Motion is a "transparent" intent by Donald Trump to avoid having to account for his actions. Putting aside the fact that plaintiff's comment is unsupported and pure speculation, the truth is that plaintiff hopes the Court will not actually consider <u>her</u> own motive in naming Donald J. Trump personally <u>nine months</u> after filing this suit. As Makaeff is well aware, Donald Trump is not even a shareholder of Trump University, LLC. Donald Trump has never spoken with, met, contracted with, or had any other contact with Makaeff or the other plaintiffs. So why have plaintiffs now named him personally? Obviously plaintiff named Mr. Trump personally in response to plaintiff's expressed concern (Opposition, p. 10) for Trump University's "financial condition." Makaeff apparently hopes to have a "deep pocket" defendant in this case, regardless of liability. A stay would maintain the status quo pending appeal, preventing **Makaeff's** transparent attempt to gain an improper tactical advantage. It would also prevent the expenditure of non-recoverable fees and costs in Mr. Trump's defense — an "irreparable harm."

Finally, Makaeff argues that Trump University will not be hampered in its defense based apparently on her "good faith" in allowing discovery. This argument belies the legal reality of the effect of not granting a stay. Trump University will be forced to engage in needless and expensive duplicative discovery, especially if the Counterclaim is stayed and the Complaint is not.

As one example, Trump University potentially could question Makaeff about statements made by Trump University that she believes to be false, but would be barred from developing evidence regarding her investigation of those purported facts, who she spoke with, and her publication of her statements. Nor would Trump University be able to explore the basis for Makaeff's claim that these statements are false. At a minimum, Trump University would be forced to redepose Makaeff, as well as duplicate other discovery after the appeal is decided. Such duplicative discovery costs are not recoverable and therefore meet the legal standard for "irreparable harm."

**C.    The Balance Of Equities Supports The Issuance Of The Requested Stay.**

Next, Makaeff complains that the delay caused by the stay would "prejudice" both her and the class. Trump University has already addressed the fact that there is no "class" and the previous 12(b)(6) motion explains why the case is completely unworkable as a class action. A non-existent group cannot be prejudiced by a minor delay in the proceedings.

More importantly, Makaeff ignores the obvious fact that any delay in the proceedings is completely self-inflicted. Makaeff decided to file the anti-SLAPP motion. After she lost that motion, she then decided to request reconsideration of the Court's decision on that Motion. When that failed, she chose to appeal that decision. Now, Makaeff seeks a tactical advantage by "tying up" the claims against her while proceeding with the claim against Trump University.

Makaeff's sudden concern about delay is also inconsistent with her actions to date. Makaeff has already delayed the case by requesting three extensions, the latest being a 45-day extension to file the Second Amended Complaint. Makaeff has presented no <u>evidence</u> that she or her co-plaintiffs would actually suffer any damage by a stay.

Further, Makaeff's speculation about the financial condition of Trump University does nothing to tip the equities in her favor. Her concern is pure speculation and there is no evidence that a stay of her appeal would affect the financial condition of Trump University, in any event. The balance of equities in this case mitigates in favor of the stay, especially since Makaeff filed the appeal and would enjoy a significant tactical advantage if she could fully pursue her claims while Trump University either was left to wait for the outcome of the appeal or forced to conduct duplicative discovery. The balance of equities favors maintaining the status quo pending the appeal, and avoiding the waste of time and resources.

**D.    A Stay Is In The Public Interest.**

The public has no interest in seeing this case go forward pending an appeal. The waste of court time and resources, as well as the time and resources of the parties, is not in the public interest. This fact is not changed by Makaeff's allegation that a currently non-existent class will proceed against Trump University regardless of the outcome of the appeal. The case currently before this Court involves Makaeff and three other individuals who are claiming the same set of facts regarding

1 allegedly fraudulent statements made by Trump University — the same statements which the
2 Counterclaim maintains are false and defamatory. Plaintiffs would like the Court to "balance" what
3 they hope would be a large "class," but the reality is that there are only four plaintiffs.

4     Moreover, none of the plaintiffs' claims even meet the jurisdictional limit of this Court. In
5 fact, **collectively**, the plaintiffs' total damages do not meet the $75,000 minimum jurisdictional limit.
6 For example, Mr. Keller's <u>maximum</u> potential recovery is $1,495. The largest of the claims —
7 Makaeff's — has a <u>maximum</u> potential value of $34,995. In the likely event that a class is not
8 certified, the Court will have no choice but to remand the case for lack of jurisdiction. See, *e.g.*,
9 *Salazar v. Avis Budget Group, Inc.*, 2008 WL 5054108 (S.D. Cal.). In that event, Mr. Keller's claim
10 will be resolved by Small Claims Court, and Mr. Oberkrom will be required to file in Missouri,
11 where he lives and attended Trump University programs. The point is that plaintiffs' claims — even
12 collectively — are small and likely will not survive a jurisdictional challenge. Trump University has
13 its own monetary claims that potentially far exceed the minimum jurisdiction of the Court. Trump
14 University's claims are entitled to equal treatment by a stay of the case pending appeal.

15     The outcome of the appeal will undoubtedly affect the manner in which this case continues,
16 if not helping to dispose of it completely. Maintenance of the status quo through the issuance of the
17 stay promotes the public's interest in the efficient administration of justice. The stay is therefore
18 appropriate and equitable.

### IV. CONCLUSION

20     The appellate court's determination whether Trump University is likely to prevail on its
21 Counterclaim will affect the manner in which Trump University will defend itself against Makaeff's
22 claims. The issues are completely intertwined whether Trump University engaged in criminal and
23 tortious conduct, and thus, whether Makaeff's statements to that effect are defamatory or true.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

At this point, the plaintiffs' claims collectively <u>total</u> about $60,000.  Trump University has its own potentially valuable Counterclaim, and thus has procedural rights.  Trump University requests that the Court stay all proceedings because it is equitable, in the public interest, and to avoid irreparable harm to Trump University.

                                                           Respectfully submitted,

Dated:       January 24, 2011            YUNKER & SCHNEIDER

                                                           By:     s/ David K. Schneider
                                                                Attorneys for Defendant and Counterclaimant
                                                                TRUMP UNIVERSITY, LLC
                                                                E-mail: dks@yslaw.com