David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone: (619) 233-5500
Facsimile: (619) 233-5535
Email: dks@yslaw.com

Attorneys for Defendants TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 10 CV 0940 IEG (WVG)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT DONALD J. TRUMP TO DISMISS SECOND AMENDED COMPLAINT UNDER FRCP 12(b)(6) AND 9(b)<br><br>DATE: March 21, 2011<br>TIME: 10:30 a.m.<br>CTRM: 1<br>JUDGE: Hon. Irma E. Gonzalez |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. THE CAUSES OF ACTION AGAINST DONALD J. TRUMP SHOULD BE DISMISSED BECAUSE PLAINTIFFS' ALLEGATIONS AGAINST HIM FAIL TO STATE ANY CAUSE OF ACTION ....................................................................2

    A. Alleged Bases of Liability ..........................................................................2

    B. As a Matter of Law, the Sparse Allegations Against Mr. Trump Do Not Support Any Cause of Action Against Him Personally............................2

        1. What Others Said ................................................................................4

        2. Mr. Trump's "Association" With Trump University, LLC .........................5

        3. Mr. Trump's Own Conduct...................................................................6

            a. Plaintiffs' Accusations Against Mr. Trump Do Not Create A Cause Of Action Under Any Of Plaintiffs' Fraud Theories.........................................................................................6

            b. The Statutory Actions Against Mr. Trump Should Be Dismissed Because None Of The Actions Attributed To Him As An Individual Constitute A Statutory Violation.................7

            c. The Consumer Legal Remedies Act Is Inapplicable Because Plaintiffs Concede There Was No Statutorily Required "Transaction" Between Plaintiffs and Mr. Trump. ..........8

            d. The CLRA and Unfair Competition Law Claims Brought by Plaintiffs Oberkrom and Murphy Are Barred, as a Matter of Law, Because Neither Meets the California Residency Requirement ...................................................9

III. ALL FRAUD AND STATUTORY CAUSES OF ACTION MUST BE DISMISSED UNDER RULE 9(b) ..................................................................10

IV. PLAINTIFFS' CAUSE OF ACTION FOR VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW SECTION 349 IS BARRED AS A MATTER OF LAW BECAUSE THE SAC FAILS TO ALLEGE THE EXISTENCE OF A NEW YORK PLAINTIFF OR AN UNFAIR ACT TAKING PLACE IN NEW YORK ..................................................................................................................14

V. CONCLUSION........................................................................................................15

**TABLE OF AUTHORITIES**

<u>Page</u>

**Cases**

*Anderson v. Deloitte and Touche*,
    56 Cal. App. 4th 1468 (1997) ..................................................................................6

*Anuziato v. eMachines, Inc.*,
    402 F.Supp.2d 1133 (C.D. Cal. 2005) .....................................................................7

*Cisneros v. Instant Capital Funding Group, Inc.*,
    263 F.R.D. 595 (E.D. Cal. 2009) ...........................................................................10

*Destfino v. Reiswig*,
    2011 WL 182241 (9th Cir. Jan. 21, 2011) .............................................................10

*Engalla v. Permanente Medical Group, Inc.*,
    15 Cal.4th 951 (1997) ..............................................................................................6

*Express, LLC v. Fetish Group, Inc.*,
    464 F.Supp. 965 (C.D. Cal. 2006) ..........................................................................8

*Goshen v. Mutual Life Ins. Co. of New York*,
    98 N.Y.2d 314 (Ct.App. N.Y. 2002)......................................................................14

*Michaelis v. Benavides*,
    61 Cal. App. 4th 681 (1998) ...................................................................................5

*Nordberg v. Trilegiant Corp.*,
    445 F.Supp.2d 1082 (N.D.Cal. 2006) .....................................................................9

*Norwest Mortgage, Inc. v. Superior Court*,
    72 Cal.App.4th 214 (1999) .....................................................................................9

*Oestreicher v. Alienware Corp.*,
    544 F.Supp.2d 964 (N.D. Cal. 2008) ......................................................................7

*People v. Toomey*,
    157 Cal.App.3d 1 (1984) ........................................................................................8

*Scott v. Bell Atlantic Corp.*,
    726 N.Y.S.2d 60 (N.Y. App. Div. 2001) ..............................................................14

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*,
    405 F. Supp.2d 1141 (C.D. Cal. 2005) ...................................................................9

**TABLE OF AUTHORITIES (cont.)**

**Page**

*U.S. Liability Ins. Co. v. Haidenger-Hayes, Inc.*,
    1 Cal.3d 586 (1970) ...........................................................................................................5

*Utility Consumers' Action Network (UCAN) v. Sprint Solutions, Inc.*,
    259 F.R.D. 484 (S.D. Cal. 2009) .......................................................................................9

*Vess v. Ciba-Geigy Corp., USA*,
    317 F.3d 1097 (9th Cir. 2003) ....................................................................................7, 10

*Wiener v. Unumprovident Corp.*,
    202 F.Supp.116 (S.D. N.Y. 2002) ...................................................................................14

*Zelig v. County of Los Angeles*,
    27 Cal.4th 1112 (2002) ......................................................................................................4

**Statutes**

California Civil Code § 1761(e) .................................................................................................8

California Civil Code § 1770(a) .................................................................................................8

Federal Rule of Civil Procedure 9(b) ........................................................................................10

New York General Business Law § 349(a) ..............................................................................14

## I. INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC"), for the first time, names Donald J. Trump ("Mr. Trump") personally as a Defendant. Plaintiffs have decided that Trump University, LLC ("Trump University") may not be financially stable, so they went looking for a deep pocket to sue. *See* Plaintiffs' Opposition to Trump University's Motion to Stay (ECF No. 48, p.10, ll. 17-19.)

Plaintiffs sued Mr. Trump, despite the fact that not one of the Plaintiffs has ever met him, spoken to him, or entered into a contract with him. Despite Plaintiffs' efforts to "tar" Mr. Trump with the same broad brush they used against Trump University, LLC, Plaintiffs cannot state a viable cause of action against Mr. Trump, and the case against him must be dismissed.

In each of the causes of action now alleged against Mr. Trump, Plaintiffs fail to allege any specific facts giving rise to personal liability: Plaintiffs simply added an "s" to "defendant." Consequently, the claims against "defendant<u>s</u>" are so vague, that it is impossible to tell whether Plaintiffs now claim Mr. Trump personally engaged in the alleged tortious conduct — the same conduct that Plaintiffs have claimed for nine months was done by Trump University <u>alone</u>. Accordingly, all of the fraud and statutory causes of action in the SAC against Mr. Trump should be dismissed because they fail to satisfy even the most basic pleading requirements, including when, where, how and what Mr. Trump personally did.

In addition, the Consumer Legal Remedies Act ("CLRA") claims by Plaintiffs Oberkrom and Murphy are barred as Plaintiffs are not California residents and therefore, as a matter of law, they have no standing to enforce the CLRA against (either) defendant.

Finally, the Tenth Cause of Action for Violation of section 349 of New York's General Business Law fails, also as a matter of law, because none of the Plaintiffs meets the residency requirements of the statute.

/ / /

/ / /

/ / /

/ / /

/ / /

## II. THE CAUSES OF ACTION AGAINST DONALD J. TRUMP SHOULD BE DISMISSED BECAUSE PLAINTIFFS' ALLEGATIONS AGAINST HIM FAIL TO STATE ANY CAUSE OF ACTION

The parties have briefed the background facts extensively to the Court in previous motions, so defendant will not repeat them here. The primary difference in the SAC is that the "bad acts" which Plaintiffs, in two prior complaints, stated were done by Trump University alone, have suddenly become bad acts by Donald Trump personally.

### A. Alleged Bases of Liability

As an initial matter, Plaintiffs have <u>not</u> sued Mr. Trump as the "alter ego" of Trump University or for vicarious liability. This is so because Plaintiffs know that Mr. Trump has never even been a shareholder of Trump University. Indeed, it appears that Plaintiffs base their new claims against Mr. Trump on three specious, novel and unsupported grounds. Plaintiffs contend that Mr. Trump is personally liable based on: (1) representations made <u>by third parties</u> about something Mr. Trump purportedly said; (2) Mr. Trump's association with Trump University; and (3) purported representations Mr. Trump made on an Internet "blog" or in Trump University mailouts. For the reasons discussed in detail below, each of Plaintiffs' theories fail as a matter of law.

Mr. Trump cannot possibly be liable on either the first or second grounds because the law simply does not hold someone liable for what <u>others</u> say he said, nor because of a person's association with a potentially liable corporation. The last ground also fails because none of the purported representations are actionable, and Plaintiffs fail to allege reliance or damages on any of the purported statements in Mr. Trump's "blog" or Trump University mailouts, in any event.

### B. As a Matter of Law, the Sparse Allegations Against Mr. Trump Do Not Support Any Cause of Action Against Him Personally

The sum total of allegations pertaining to Mr. Trump's personal involvement and alleged liability can be found in the SAC at paragraphs 18 and 59.[1] They basically fall into three categories: (1) statements made <u>by others</u> about Mr. Trump' ownership interest or involvement with Trump

---

[1] These paragraphs are almost identical, and set forth the same set of "facts" regarding Mr. Trump. Because paragraph 59 contains one additional allegation, references will be made to that paragraph.

University (SAC, ¶¶59(a), (n) and (o)); (2) Mr. Trump's name and likeness were used to promote Trump University or he was purportedly "involved" or associated with Trump University (SAC, ¶¶ 59(b)-(c), (e), (g) and (j)-(k)); and (3) Mr. Trump made "representations" on an Internet blog or in Trump University mailouts (SAC, ¶¶ 59(f), (h) and (m)).

**Category 1 Allegations (Statements Made by Others):**

- According to Trump University seminar presenters, Donald Trump is the founder and chairman of Trump University and owns Trump University "lock, stock and barrel." (SAC, ¶59(a).)
- Trump University representatives stated that Donald Trump intended to appear at Fall 2010 events. (SAC, ¶59(n).)
- According to President Michael Sexton, Donald Trump would hold periodic live on-line Q&A sessions with Trump University students. (SAC, ¶59(o).)

**Category 2 Allegations (Mr. Trump's Name and Likeness Used and His Association With Trump University):**

- Donald Trump allowed Trump University to use his name, photos and quotes. His picture is on the home page of Trump University's web site along with the message "Are you my next apprentice? Prove it to me!" (SAC, ¶59(b).)
- Trump University sent print advertisements featuring Donald Trump. (SAC, ¶59(c) and (e).)
- Trump University sent literature to participants which stated: "Success in real estate begins with great training and proven strategies. Without education you don't stand a chance . . . I know how to make money in real estate. I've been doing it for a long time with a lot of success. My family has been a leader in real estate since my father Fred Trump — started building residential homes in New York City 75 years ago . . . We've trained thousands of real estate investors over the years and we know you will be most successful when you work with a partner . . . ." (SAC, ¶59(g).)
- Donald Trump financed Trump University and reviewed its financials and advertisements. (SAC, ¶59(j)-(l).)

**Category 3 Allegations (Purported Representations by Mr. Trump):**

- Donald Trump sent letters to consumers which stated "No course offers the same depth of insight, experience and support as the one bearing my name . . . Now is the time to create your financial legacy. . . ." (SAC, ¶59(f).)
- Donald Trump wrote nearly 400 blogs posted on Trump University's web site and stated that he intended to be actively involved with Trump University. "Trump University grew out of my desire to impart my business knowledge, accumulated over the years, and my realization that there is a huge demand for practical, convenient education that teaches success." (SAC, ¶59(h).)
- Donald Trump hand picked Trump University instructors and mentors. (SAC, ¶59(m).)

As the Court can see from the plain language of the allegations, not one of these supports personal liability against Mr. Trump.

### 1. What Others Said

First, Plaintiffs try to hold Mr. Trump liable for things <u>others</u> have claimed Mr. Trump said. For example, Plaintiffs allege that according to Trump University <u>seminar presenters</u>: "Donald Trump is the founder and chairman, Donald Trump owns Trump University 'lock, stock and barrel' and it is his 'baby, his company'." SAC ¶ 59(a). In fact, as stated above, Mr. Trump does not own any of the stock of Trump University, and Plaintiffs acknowledge this since they did not sue him as the "alter ego" of Trump University. What a Trump University instructor, or indeed any third party opines about Mr. Trump's ownership interest in Trump University is irrelevant to Mr. Trump's actual liability. If the instructor's representations were false, perhaps the instructor or Trump University could be liable for misrepresentation, but not Mr. Trump. Even if the statements were true, the statements cannot create liability for Mr. Trump simply because he owns the company. In short, Mr. Trump cannot be held liable for something someone else says he said. *See generally Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128 (2002) (a third party has no duty to protect a victim from the tort of another, absent a special relationship). Plaintiffs do not allege any relationship with Mr. Trump that would give rise to such third party liability.

Plaintiffs cannot get around this fatal defect by alleging that Trump University instructors worked from "standardized scripts." There is no allegation that Mr. Trump wrote the script, authorized any particular statements made by Trump University instructors or even knew about such statements. Even if Plaintiffs filed yet another Amended Complaint to try to cure the defect by (falsely) alleging that Mr. Trump "owned" Trump University, liability still would not attach because Mr. Trump is not personally liable for the acts of the corporation. *Michaelis v. Benavides*, 61 Cal. App. 4th 681, 684 (1998) ("Directors or officers of a corporation do not incur liability for torts of the corporation merely by reason of their official position.")

### 2. Mr. Trump's "Association" With Trump University, LLC

Next, Plaintiffs seek to hold Mr. Trump personally liable because <u>Trump University presenters</u> stated that Mr. Trump would be "involved" in Trump University or because of his actual involvement. SAC ¶ 59. For example, Plaintiffs allege: "Mr. Trump is indeed the founder of Trump University and its chairperson." "He also financed the formation of Trump University." "Mr. Trump intends to hold periodic live Q&A sessions" and "intends to appear at Fall 2010 events."[2] Again, as a matter of law, this does not create liability for an officer. Indeed, an officer of a corporation (or founder or financial backer) is not liable for the torts of the corporation merely because of his "involvement." *Id.*; *see also U.S. Liability Ins. Co. v. Haidenger-Hayes, Inc.*, 1 Cal.3d 586, 595 (1970). It is not enough that Mr. Trump reviewed advertising or even was actively involved in the corporation as an officer; there must be an allegation that he <u>directly</u> participated in each specific tort to hold him liable. *U.S. Liability Ins. Co.*, 1 Cal.3d at 595. Even then, recovery is usually restricted to compensation for physical harm, not pecuniary loss. *Id.* at 595. Defendant has found no California authority which holds an officer liable for the purported torts of a corporation unless that officer actually engages in the tortious conduct. Nothing in Plaintiffs' allegations against Mr. Trump indicates that Mr. Trump directly participated in a tort against Plaintiffs, and Plaintiffs do not seek recovery for any physical injuries. Therefore, Mr. Trump has no liability merely because of his "association" with Trump University.

---

[2]  Plaintiffs cannot allege reliance, as a matter of law, since Mr. Trump's purported appearance was for an event six months <u>after</u> they had already filed suit!

5

Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT DONALD J. TRUMP TO DISMISS SECOND AMENDED COMPLAINT UNDER FRCP 12(b)(6) AND 9(b)

### 3. Mr. Trump's Own Conduct

The sole basis on which Mr. Trump <u>potentially</u> could be liable to Plaintiffs would be if he <u>personally</u> engaged in tortious conduct. As discussed in detail below, however, none of Mr. Trump's purported own statements or conduct provide any basis for liability. Therefore, Mr. Trump should be dismissed from this action.

#### a. Plaintiffs' Accusations Against Mr. Trump Do Not Create A Cause Of Action Under Any Of Plaintiffs' Fraud Theories.

The purported statements by Mr. Trump do not give rise to any cause of action in fraud. Mr. Trump is accused of things such as being the "founder of Trump University" and of claiming to have "made millions in real estate." SAC ¶ 59(a) and 59(d). These representations are true, and thus cannot support a cause of action against Mr. Trump for fraud. *Anderson v. Deloitte and Touche*, 56 Cal. App. 4th 1468, 1474 (1997). Mr. Trump is also "accused" of claiming that he "made his fortune in real estate, as did his father." SAC ¶ 59(d). He "knows how to make money in real estate" and "want[s] to teach you to make money in real estate." SAC ¶ 59(g). Mr. Trump purportedly personally reviewed the financial statements of Trump University. SAC ¶ 59(k). Even if these "statements" were somehow false (which Plaintiffs do <u>not</u> contend), they are not actionable misrepresentations. What tort did Mr. Trump commit because he reviewed financial statements or because his father made his money in real estate? What is the alleged misrepresentation? Even if Plaintiffs could allege sufficient facts to spin these benign facts into a claim that these were "misrepresentations," they still cannot support a cause of action in fraud. *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974 (1997) (plaintiffs must allege they suffered damages as a result of relying on misrepresentations).

In fact, only a very few of the allegations against Mr. Trump even involve "representations" by him at all! And none of these statements – even if made by Mr. Trump, and even if false — can support Plaintiffs' causes of action.

For example, Plaintiffs allege that Mr. Trump falsely stated that he "hand-picked" his experts. SAC ¶ 59(c). Even if this were actually a misrepresentation, Plaintiffs do not and cannot claim that they heard it, relied on it, and were damaged because Mr. Trump failed to "hand-pick"

every instructor. How have Plaintiffs been damaged if a specific instructor had been selected by Trump University President Michael Sexton rather than Mr. Trump? The allegations are also completely inconsistent. Plaintiffs argue that Mr. Trump is liable because he was "very involved" with every aspect of Trump University (appeared in advertising, reviewed financials, etc.), then Plaintiffs allege that Mr. Trump is liable because was not involved (i.e., did not select instructors, etc.).

Plaintiffs' allegations against Mr. Trump are merely a smokescreen designed to hide the fact that there is no claim against Mr. Trump personally. What is the basis of his liability? What <u>specifically</u> did Mr. Trump personally do to harm any of the Plaintiffs? Plaintiffs can barely even identify specific representations Mr. Trump made. Of these few, none can support a cause of action for fraud because they are either true (and not even alleged by Plaintiffs to be false) and/or did not damage Plaintiffs in any way. The fraud causes of action against Mr. Trump should be dismissed.

### b. The Statutory Actions Against Mr. Trump Should Be Dismissed Because None Of The Actions Attributed To Him As An Individual Constitute A Statutory Violation.

Plaintiffs have used the same allegations of misrepresentation against Mr. Trump to support their causes of action for violation of California Business and Professions Code sections 17200 and 17500, and the Consumer Legal Remedies Act. Plaintiffs have not set forth a single "representation" made by Mr. Trump which would support these statutory causes of action.

First, when fraud is the basis of the statutory claims against a defendant, as here, the fraud must be pled with the same particularity as the fraud claim itself. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (special fraud pleading requirements apply to CLRA claims when the complaint sounds in fraud). While the SAC ascribes a few statements to Mr. Trump, those claims are not actionable as a matter of law. For example, Mr. Trump's purported statement that "no course offers the same depth of insight, experience and support as the one bearing my name" is simply not actionable. *See, e.g., Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 973 (N.D. Cal. 2008) (advertisements for "superb," "more powerful," "more innovative" computers of "uncompromising quality" not actionable); *Anuziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1140-41 (C.D. Cal. 2005) (advertisements for "high quality," reliable," "high performance" and "latest

technology" are not actionable). In addition, the SAC completely neglects to allege that Plaintiffs relied on these particular statements, or to allege how Plaintiffs were damaged by these statements. Damage is an element of both the CLRA and Business and Professions Code section 17200. *See, e.g.*, *Express, LLC v. Fetish Group, Inc.*, 464 F.Supp. 965, 979 (C.D. Cal. 2006) (damages are a required element under section 17200).

To repeat an example, Plaintiffs allege that Mr. Trump stated that he "hand-picked" the Trump University instructors. If this statement is false, then what harm has come to Plaintiffs as a result of this misrepresentation? Plaintiffs do not allege that they would not have purchased the seminars if Mr. Trump did not himself pick every instructor. They do not contend they received some "lesser" value or education because all of the instructors were not selected by Mr. Trump. The statutory causes of action should therefore be dismissed because the underlying fraud is not, and cannot be, pled with sufficient particularity, nor can requisite damages be shown.

Specifically in regard to claims under sections 17200 and 17500, to find a corporate officer liable for a tort of the corporation, the officer must have engaged in the unlawful conduct. Section 17200 cannot be predicated on vicarious liability. *People v. Toomey*, 157 Cal.App.3d 1, 14 (1984) ("the concept of vicarious liability has no application to actions brought under the Unfair Business Practices Act"). Plaintiffs have not and cannot meet their pleading burden.

**c.    The Consumer Legal Remedies Act Is Inapplicable Because Plaintiffs Concede There Was No Statutorily Required "Transaction" Between Plaintiffs and Mr. Trump.**

With respect to Plaintiffs' Second Cause of Action for violation of the Consumer Legal Remedies Act, California Civil Code section 1750 *et seq.* ("CLRA"), in order to state a claim Plaintiff must allege a violation of the Act by a "person in a transaction." Civ. Code § 1770(a). Under the CLRA, a "transaction" is "an agreement between a consumer and any other person." Civ. Code § 1761(e). Nowhere do Plaintiffs allege that they entered into an agreement or "transaction" with Mr. Trump.[3] Instead, like their other causes of actions, Plaintiffs, without alleging alter ego,

---

[3]    Plaintiffs essentially concede that they cannot meet this element by the fact that they did not sue Mr. Trump for breach of contract or breach of the implied covenant of good faith and fair dealing. Plaintiffs had no agreement or transaction with him whatsoever.

attempt to hold Mr. Trump liable for a "transaction" between them and Trump University. Under the plain language of the statute, because Plaintiffs do not, and cannot, allege that Mr. Trump was involved in a "transaction," Plaintiffs' CLRA claim against him cannot survive.

### d. The CLRA and Unfair Competition Law Claims Brought by Plaintiffs Oberkrom and Murphy Are Barred, as a Matter of Law, Because Neither Meets the California Residency Requirement

The CLRA and Unfair Competition Law ("UCL") claims are available only to California residents and thus these purported claims by Plaintiffs Oberkrom and Murphy must be dismissed. In *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999), the court held that the UCL could not regulate conduct unconnected to California. *Id*. at 229. Federal courts in California that have considered this issue have also reached the same conclusion. *See, e.g., Utility Consumers' Action Network (UCAN) v. Sprint Solutions, Inc.*, 259 F.R.D. 484, 487 (S.D. Cal. 2009) (California law cannot be extended to non-resident plaintiffs suing for conduct which took place outside of California); *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1096 (N.D.Cal. 2006) (only California residents can sue to enforce the CLRA); *Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp.2d 1141, 1147 (C.D. Cal. 2005) (no UCL claims between non-residents based on non-California transaction).

The same is true for CLRA claims. *See Nordberg v. Trilegianto Corp.*, 445 F.Supp.2d at 1096 ("Only plaintiffs residing in California . . . [have] standing to enforce the CLRA against defendants."). Plaintiff Oberkrom is a Missouri resident and Plaintiff Murphy was a Philadelphia and is now a aNew York resident. At no time were either of these Plaintiffs California residents and at no time did either attend or participate in Trump University programs in California. Thus, the CLRA and UCL claims by Plaintiffs Oberkrom and Murphy must be dismissed.

Plaintiffs' statutory causes of action against Mr. Trump suffer from the same fatal flaws as the fraud causes of action. Without alleging alter ego, Plaintiffs can only try to cast Mr. Trump in a negative light. But, Plaintiffs have identified no actual statements that he personally made that can constitute "misrepresentations." Even if the limited nature of statements Mr. Trump purportedly made were not true, Plaintiffs cannot state any fraud or statutory claims against Mr. Trump because

/ / /

9   Case No. 10 CV 0940 IEG (WVG)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT DONALD J. TRUMP TO DISMISS SECOND AMENDED COMPLAINT UNDER FRCP 12(b)(6) AND 9(b)

the other elements of fraud, including reasonable reliance and damages, are not alleged and cannot be shown.

### III. ALL FRAUD AND STATUTORY CAUSES OF ACTION MUST BE DISMISSED UNDER RULE 9(b)

Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This rule requires that, where there are multiple defendants, fraud must be pled as to <u>each</u> defendant, individually. As the Ninth Circuit reiterated last month: "Rule 9(b) 'does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *Destfino v. Reiswig*, 2011 WL 182241, at *5 (9th Cir. Jan. 21, 2011) (quoting *Cisneros v. Instant Capital Funding Group, Inc.*, 263 F.R.D. 595, 606-07 (E.D. Cal. 2009)). This rule of particularity also applies to statutory causes of action which are based on fraud. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). Where this rule is violated, dismissal of those causes of action is proper. *Destfino,* at *5.

Plaintiffs have violated Rule 9(b) by doing just that — lumping the alleged fraud of Trump University with the alleged fraud of Mr. Trump, despite the fact that there are no allegations that Mr. Trump is vicariously liable for the acts of Trump University. A review of the pleadings reveals that all Plaintiffs have done in the various causes of action in the SAC is simply add an "s" to "defendant" without any specific mention or allegation of the purported tortious conduct by Mr. Trump personally. Mr. Trump therefore requests dismissal of the following causes of action under Rule 9(b), for the following reasons:

- First Cause of Action: Violations of California Business and Professions Code §17200

Paragraph 99: Plaintiffs allege "Defendant<u>s</u>" instructed them to engage in illegal practices, issued false testimonials, and falsified student signatures. Nowhere else in the SAC is Mr. Trump accused of these actions; rather, these actions are attributed to various unnamed Trump University instructors and salespeople. Plaintiffs fail to specify whether Mr. Trump is individually accused of

/ / /

these misrepresentations and illegal acts and, if so, where and when these actions took place, that each Plaintiff was aware of them, relied on them, and was damaged by them.

Paragraph 101:  Plaintiffs allege that misrepresentations were made at Trump University seminars and that student signatures were forged by "Defendants."  Nowhere do Plaintiffs allege that Mr. Trump personally forged students' signatures.  Plaintiffs also fail to specify where and when these actions took place, that each Plaintiff was aware of them, relied on them and was damaged by them.

Paragraph 102:  Plaintiffs again refer to the unfair business acts and practices of "defendants" and allege that "defendants" engaged in "unethical oppressive and unscrupulous acts" without specifying which of the two separate Defendants allegedly took these actions.  Fatally, Plaintiffs fail to contend that Mr. Trump personally engaged in this conduct, and to specify where and when those actions took place, that each Plaintiff was aware of them, relied on them and was damaged by them.

- Second Cause of Action:  Violations of the Consumer Legal Remedies Act

Paragraph 106 and 107:  Defendants are accused of representations violating the Consumer Legal Remedies Act, but Plaintiffs make no attempt to distinguish which Defendant made what representations.  As with the first cause of action, Plaintiffs failure to contend that Mr. Trump personally violated the Act, and to specify when and where he engaged in that activity, that each Plaintiff was aware of it, relied on it and was damaged by it is fatal.

- Third Cause of Action:  Untrue and Misleading Advertising in Violation of California Business and Professions Code §17500 et seq.

Paragraph 114:  Defendants are accused of disseminating untrue statements through "advertisements or representations."  Plaintiffs fail to specify what alleged "untrue statements" were made by Mr. Trump, or where and when these representations are made.  Plaintiffs again fail to identify any specific statements attributed to Mr. Trump, when and where he made such statements, that each Plaintiff saw or heard them, relied on them and each was damaged by them.

/ / /

/ / /

1    •    Sixth Cause of Action:  Money Had and Received

2    Paragraphs 130 and 131:   Once again, Plaintiffs improperly lump Trump University and Mr. Trump together, failing to distinguish what alleged conduct supports the cause of action against Mr. Trump personally.

5    •    Seventh Cause of Action:  Negligent Misrepresentation

6    Paragraphs 133 through 150, inclusive:   In perhaps the most egregious example of an improperly pled cause of action, Plaintiffs (in alleging negligent misrepresentation) completely fail to distinguish between the alleged misrepresentations of Trump University and those of Mr. Trump. For example, Paragraph 134 alleges misrepresentations about the year-long mentoring program. However, Plaintiffs do not allege that Mr. Trump personally made representations about the mentoring program, nor do Plaintiffs claim elsewhere in the SAC that he does.  In Paragraph 139, "Defendants" are accused of fabricating student testimonials.  Are Plaintiffs seriously maintaining that Mr. Trump personally fabricated these testimonials?  If so, they must allege exactly where and when Mr. Trump ever personally communicated these fabricated testimonials to Plaintiffs, that they relied on them and were damaged by them.  Paragraph 145 alleges that "Defendants' real reason [for encouraging students to raise their credit card limits] was to assess how much money each student had to spend on the next Trump University seminar." (This allegation is repeated in Paragraph 154.) Again, when and where did Mr. Trump ever personally communicate with Plaintiffs and encourage them to raise their limits?  When did Mr. Trump "assess" each of their financial statements?

20    •    Eighth Cause of Action:  Fraud

21    Paragraphs 154-155, inclusive:   In Plaintiffs' Eighth Cause of Action for Fraud, Plaintiffs again improperly treat Defendants as a single entity.  For example, Paragraph 155 states, "Defendants falsified and at times completely fabricated testimonials of students and posted testimonials that were in violation of FTC regulations and guidelines."  Again, do Plaintiffs contend that Mr. Trump personally fabricated these testimonials?  If so, exactly where and when did Mr. Trump ever personally communicate these fabricated testimonials to Plaintiffs?  The SAC cannot survive as to Mr. Trump, as these crucial facts do not exist.

/ / /

1        •        Ninth Cause of Action:   False Promise

2        Paragraphs 161 and 162:  "Defendant<u>s</u>" are accused of making false promises without the intent to perform them.  What promises did Mr. Trump personally make to Plaintiffs?  When did he make them?  Given that Mr. Trump never met or spoke to Plaintiffs, how were these promises made?  When did Plaintiffs hear them, rely on them and how were they damaged by them?  Without such facts, Plaintiffs have failed to state a cause of cause against Mr. Trump.

As shown above, each causes of action alleged against Mr. Trump fails because it is not properly pled.  Plaintiffs cannot "cure" any of these defects because Plaintiffs cannot <u>honestly</u> allege that Mr. Trump personally engaged in <u>any</u> of the conduct Plaintiffs once attributed to Trump University alone.

The appropriateness of such a dismissal is easily demonstrated by considering that if the causes of action survived, Mr. Trump will be successful on a Motion for Summary Judgment, because Plaintiffs are well aware that there is no evidence Mr. Trump ever falsified a testimonial, forged a student signature, taught a seminar, or the like.  Dismissal of these causes of action now will save this Court and the parties the time and expense of such a Motion.

Plaintiffs' motivation for naming Mr. Trump is as obvious as it is disappointing.  Nowhere do Plaintiffs allege that his blog had anything to do with their decision to take Trump University seminars.  They do not even allege that they saw it, and they certainly do not allege that they each relied on it to their detriment.  Thus, Plaintiffs are left with a claim that Mr. Trump should be personally liable because <u>others</u> said he owned the company and because he was very <u>involved</u> with the company.  Those are not proper or legal grounds to maintain a lawsuit against Mr. Trump.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### IV. PLAINTIFFS' CAUSE OF ACTION FOR VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW SECTION 349 IS BARRED AS A MATTER OF LAW BECAUSE THE SAC FAILS TO ALLEGE THE EXISTENCE OF A NEW YORK PLAINTIFF OR AN UNFAIR ACT TAKING PLACE IN NEW YORK

Plaintiffs' cause of action for violation of New York's General Business Law fails because no Plaintiff satisfies the residency requirement of the statute. This Court has already recognized that Plaintiff Patricia Murphy, an alleged resident of New York now, did not contract for or attend any Trump University classes in New York.[4] (ECF No. 33, fn. 5.)

Section 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service **in this state** are hereby declared unlawful." New York courts consistently have held that this law applies only to New York residents when the deceptive act occurs within New York. *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (Ct.App. N.Y. 2002) ("the transaction in which the consumer is deceived must occur in New York" and protections of New York Business Law § 349 not available to Florida resident.); *Wiener v. Unumprovident Corp.,* 202 F.Supp.116, 120 (S.D. N.Y. 2002) (New Jersey resident who received benefits from insurance policy in New Jersey could not sue under section 349 even though insurance application was submitted in New York); *Scott v. Bell Atlantic Corp.*, 726 N.Y.S.2d 60, 63 (N.Y. App. Div. 2001) (court dismissed § 349 claim of non-New York residents who did not receive services within New York State).

In this case, Murphy attended programs in Florida and Pennsylvania only, not in New York. Further, there is no allegation in the SAC that any Plaintiff attended Trump University programs in the State of New York which potentially would subject it to the terms of section 349(a). Thus, there is simply no basis in the SAC to support a cause of action for an alleged violation of New York law. Accordingly, this cause of action must be dismissed.

/ / /

/ / /

---

[4] Plaintiffs have already conceded that plaintiff Patricia Murphy attended programs only in Philadelphia and Florida. (See, ECF No. 25, p. 8.)

## V.     CONCLUSION

The allegations against Mr. Trump in the SAC are spurious and do not support any cause of action against him. Mr. Trump therefore requests that all causes of action against him be dismissed under Federal Rule of Civil Procedure 12(b)(6), without leave to amend. In the alternative, Mr. Trump requests that the fraud and statutory causes of action against him be dismissed under Federal Rule of Civil Procedure 9(b), without leave to amend. Mr. Trump further requests that the Tenth Cause of Action against him be dismissed since no Plaintiff meets the statutory residency requirement.

Respectfully submitted,

Dated:     February 15, 2011     YUNKER & SCHNEIDER

By:    s/ David K. Schneider
Attorneys for Defendant and Counterclaimant
TRUMP UNIVERSITY, LLC and Defendant
DONALD J. TRUMP
E-mail: dks@yslaw.com