1  ZELDES & HAEGGQUIST, LLP
   AMBER L. ECK (177882)
2  ambere@zhlaw.com
   HELEN I. ZELDES (220051)
3  helenz@zhlaw.com
   ALREEN HAEGGQUIST (221858)
4  alreenh@zhlaw.com
   625 Broadway, Suite 906
5  San Diego, CA  92101
   Telephone:  619/342-8000
6  619/342-7878 (fax)

7  ROBBINS GELLER RUDMAN
     & DOWD LLP
8  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
9  655 West Broadway, Suite 1900
   San Diego, CA  92101
10 Telephone:  619/231-1058
   619/231-7423 (fax)

11
   Attorneys for Plaintiffs and Proposed Class
12
                    UNITED STATES DISTRICT COURT
13
                   SOUTHERN DISTRICT OF CALIFORNIA
14

15 | TARLA MAKAEFF, et al., on Behalf of | ) | No. 3:10-cv-00940-IEG(WVG) |
   | Themselves and All Others Similarly Situated, | ) | |
16 | | ) | CLASS ACTION |
   | Plaintiffs, | ) | |
   | | ) | PLAINTIFFS' OPPOSITION TO |
17 | vs. | ) | DEFENDANT DONALD J. TRUMP'S |
   | | ) | MOTION TO DISMISS SECOND |
18 | TRUMP UNIVERSITY, LLC, et al., | ) | AMENDED COMPLAINT UNDER RULES |
   | | ) | 12(b)(6) AND 9(b) |
19 | Defendants. | ) | |
   | | ) | DATE: March 21, 2011 |
20 | | ) | TIME:  10:30 a.m. |
   | | | CTRM: 1 |
21 | | | JUDGE: Hon. Irma E. Gonzalez |

22

23

24

25

26

27

28

611844_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS .......................................................................3

      A.    Misrepresentations by Trump University and Donald Trump ....................3

      B.    Donald J. Trump's Involvement and Misrepresentations ........................4

III.  APPLICABLE LEGAL STANDARD FOR MOTIONS TO DISMISS ..........................9

IV.   PLAINTIFFS HAVE SUFFICIENTLY STATED THEIR CLAIMS AGAINST
      DONALD J. TRUMP ............................................................................10

      A.    Plaintiffs Allege that Donald Trump Personally Participated, Authorized,
            and Directed the Alleged Misconduct .................................................10

      B.    Plaintiffs Were Harmed by Donald Trump's Misrepresentations ..............15

      C.    Plaintiffs Adequately Alleged Unfair Competition Law ("UCL") Claims
            Against Donald Trump ....................................................................15

            1.    Plaintiffs Have Alleged Unlawful Acts or Practices....................16

            2.    Plaintiffs Have Alleged Unfair Acts or Practices ......................17

            3.    Plaintiffs Have Alleged Fraudulent Acts or Practices ...............18

      D.    Plaintiffs Adequately Allege CLRA Claims Against Donald Trump.............19

            1.    Plaintiffs Satisfy the "Transaction" Element .............................19

            2.    Plaintiffs Makaeff and Keller Are California Residents with
                  Standing to Assert UCL and CLRA Claims .............................20

            3.    Donald Trump's Misrepresentations Are Not Puffery.................20

      E.    Plaintiffs Adequately Allege False Advertising by Donald Trump.............21

      F.    Plaintiffs Adequately Allege Fraud, Misrepresentation and False Promise
            Claims Against Donald Trump ..........................................................23

      G.    Plaintiffs Adequately Allege a Claim for Money Had and Received...........24

      H.    Plaintiffs Adequately Allege Violations of New York General Business
            Law §349 Against Donald Trump .......................................................25

V.    CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Acciard v. Whitney,*
No. 2:07-cv-476-UA-DNF, 2008 WL 5111307
(M.D. Fla. Dec. 4, 2008) .................................................................................................. 11, 12

*Bancroft-Whitney Co. v. Glen,*
64 Cal. 2d 327 (1966) ..................................................................................................... 12, 14

*Bardin v. DiamlerChrysler Corp.,*
136 Cal. App. 4th 1255 (2006) .............................................................................................. 17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ....................................................................................................... 10, 21

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996) .................................................................................................... 9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) .......................................................................................................... 16

*Chamberlan v. Ford Motor Co.,*
No. C 03-2628 CW, 2003 U.S. Dist. LEXIS 27912
(N.D. Cal. Aug. 6, 2003) ....................................................................................................... 19

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
173 F.3d 725 (9th Cir. 1999) ................................................................................................ 11

*Committee on Children's Television, Inc. v. General Foods Corp.,*
35 Cal. 3d 197 (1983) ........................................................................................................... 22

*Frances T. v. Village Green Owners Ass'n,*
42 Cal. 3d 490 (1986) ............................................................................................... 10, 11, 13

*Golden v. Anderson,*
256 Cal. App. 2d 714 (1967) ................................................................................................ 12

*Granoff v. Yackle,*
196 Cal. App. 2d 253 (1961) ................................................................................................ 12

*In re Sony VAIO Computer Notebook Trackpad Litig.,*
No. 09-cv-2109 BEN (RBB), 2010 WL 4262191
(S.D. Cal. Oct. 28, 2010) .................................................................................................. 18, 21

*In re Tobacco II Cases,*
46 Cal. 4th 298 (2009) .......................................................................................................... 22

**Page**

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................................... 10, 23, 24

*Keilholtz v. Superior Fireplace Co.*,
No. C 08-00836 CW, 2009 U.S. Dist. LEXIS 30732
(N.D. Cal. Mar. 30, 2009) ...................................................................................... 19, 20

*Klein v. Oakland Raiders, Ltd.*,
211 Cal. App. 3d 67 (1989) ........................................................................................ 12

*Legal Additions LLC v. Kowalski*,
No. C-08-2754 EMC, 2010 WL 1999894 (N.D. Cal. May 18, 2010) .............................. 10, 11

*Lima v. Gateway, Inc.*,
710 F. Supp. 2d 1000 (C.D. Cal. 2010) .................................................................. 16, 20, 21

*McKell v. Wash. Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) .................................................................................... 16

*Michaelis v. Benavides*,
61 Cal. App. 4th 681 (1998) .............................................................................. 10, 13, 14

*Microsoft Corp. v. A-Tech Corp.*,
855 F. Supp. 308 (C.D. Cal. 1994) .............................................................................. 16

*Moss v. United States Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ...................................................................................... 25

*People ex rel. Bill Lockyear v. Fremont Life Ins. Co.*,
104 Cal. App. 4th 508 (2002) ...................................................................................... 16

*People v. Conway*,
42 Cal. App. 3d 875 (1974) ......................................................................................... 23

*People v. Dollar Rent-A-Car Sys. Inc.*,
211 Cal. App. 3d 119 (1989) ....................................................................................... 23

*People v. First Fed. Credit Corp.*,
104 Cal. App. 4th 724 (2002) ............................................................................... 17, 22, 23

*PMC, Inc. v. Kadisha*,
78 Cal. App. 4th 1368 (2000) ............................................................................ 10, 11, 12

*Price v. Hibbs*,
225 Cal. App. 2d 209 (1964) ....................................................................................... 12

**Page**

*Puentes v. Wells Fargo Home Mortg., Inc.*,
   160 Cal. App. 4th 638 (2008) ...................................................................18

*Shin v. BMW of N. Am.*,
   No. CV 09-00398 AHM (AJWx), 2009 U.S. Dist. LEXIS 67994
   (C.D. Cal. July 16, 2009) .........................................................................19

*Spahn v. Guild Indus. Corp.*,
   94 Cal. App. 3d 143 (1979) ......................................................................11

*Trafficschool.com, Inc. v. Edriver, Inc.*,
   633 F. Supp. 2d 1063 (C.D. Cal. 2008) ....................................................23

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1985) ..................................................................11

*United States Liab. Ins. Co. v. Haidinger-Hayes*,
   1 Cal. 3d 586 (1970) ...........................................................................11, 13

*Vacco Indus., Inc. v. Van Den Berg*,
   5 Cal. App. 4th 34 (1992) ...................................................................11, 12

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................15

*Vujacich v. S. Commercial Co.*,
   21 Cal. App. 439 (1913) ...........................................................................12

*Zelig v. County of Los Angeles*,
   27 Cal. 4th 1112 (2002) .......................................................................14, 15

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 9(b) ..................................................................... 10, 15, 16, 23
   Rule 12(b)(6).................................................................................10

California Business and Professions Code
   §17200 ..........................................................................................16
   §17201 ..........................................................................................19
   §17500 ................................................................................. *passim*

**Page**

California Civil Code
  §1572................................................................................................16, 17
  §1573................................................................................................16, 17
  §1709................................................................................................16, 17
  §1710................................................................................................16, 17
  §1750 ................................................................................................*passim*
  §1761(e) ....................................................................................................19

New York General Business Law
  §349................................................................................16, 17, 18, 25

**SECONDARY AUTHORITIES**

5 Witkin,
  Summary 10th Torts (2005)
  §30....................................................................................................11

1       Plaintiffs Tarla Makaeff, Brandon Keller, Ed Oberkrom, and Patricia Murphy (collectively

2   "Plaintiffs") respectfully submit this memorandum in opposition to Defendant Donald J. Trump's

3   ("Defendant" or "Trump") Motion to Dismiss the Second Amended Complaint Under Rules 12(b)(6)

4   and 9(b) ("Motion to Dismiss").

5   **I.      INTRODUCTION**

6       Donald Trump personally founded and financed Trump University, in his words, "to impart

7   my business knowledge, accumulated over the years" to the consuming public.[1]  ¶18(h).  Trump is

8   ***the name, the face, the voice, and the draw*** for Trump University.  The primary reason that

9   Plaintiffs paid huge fees for the real estate "courses" was because it was Donald Trump's University,

10  which Donald Trump and Trump University represented taught Donald Trump's tried-and-true real

11  estate investing secrets by his hand-picked team of experts.

12      Donald Trump attempts to escape liability primarily by arguing throughout his Motion to

13  Dismiss that he cannot be held liable merely as an officer or director of Trump University.  *See*

14  Memorandum of Points and Authorities in Support of Trump's Motion to Dismiss, filed February

15  15, 2011 ("Def's Mem.") at 5-7.  Defendant misunderstands Plaintiffs' claims.  Plaintiffs are not

16  alleging that Donald Trump is liable because he is an officer or director of Trump University;

17  Plaintiffs allege Donald Trump is liable because he personally made misrepresentations and actively

18  participated in the alleged misconduct.  In accordance with a long, well-established line of

19  authorities that Defendant cannot seriously dispute, such allegations are sufficient to hold Donald

20  Trump personally liable to Plaintiffs and consumers nationwide.

21      Defendant asks: "What specifically did Mr. Trump personally do to harm any of the Plaintiffs?"

22  Def's Mem. at 7.  Quite simply, he created, funded, implemented, and benefited from a scam that cost

23  them and the other Class Members thousands, even tens of thousands, of dollars each – Trump

24  University.  He asked the public, including Plaintiffs and Class Members: "Are YOU my next

25  apprentice?  Prove it to me!"  He promised that he and his team of hand-picked experts would

26

27  [1]      All references to "¶" or "¶¶" are to the Second Amended Class Action Complaint ("SAC"),

28  filed December 16, 2010, unless otherwise noted.

1    personally teach how to make money in real estate, that they would receive the "best of the best" real

2    estate training, and rest assured, they would have ongoing support from Donald Trump and his team of

3    experts.  ¶18(g).  Unfortunately, all of this was far from the truth.

4            To be clear, Donald Trump personally and directly participated in the scam.  He personally

5    participated in a misleading advertising campaign about the nature of Trump University, writing

6    blogs for the Trump University website, promising Trump University students that, if they purchased

7    Trump University seminars, they would receive his business and real estate knowledge, imparted by

8    teachers and mentors hand-picked by him, that he was committed to personally "do [his] part" to

9    help Trump University students succeed, and that he would play an active role in Trump University

10   and be an active presence in the seminars and curricula.  ¶¶18(h), 59(h).  Further, Donald Trump

11   personally approved all written Trump University advertisements. ¶¶18(e), 59(e).  Donald Trump

12   also represented that he was available to field questions from Trump University students (¶¶18(n),

13   59(o)), and promised that his words, ideas and image would be part of the courses (¶¶18(h), 59(h)).

14   *Id.*  Donald Trump sent letters and emails, complete with his photo and signature promising that "no

15   course offers the same depth of insight, experience and support as the one bearing my name . . . .

16   My hand-picked instructors and mentors will show you how to use real estate strategies to . . . start

17   profiting today."  ¶18(f).  Donald Trump also promised "ongoing support from your own Trump

18   Team of Experts," and Donald Trump told potential students: "*I'm ready to teach you how*" to make

19   money in real estate. ¶¶18(d) & (f).[2]

20           In the $1,500 seminar, to persuade students to sign up for the $35,000 seminar, Donald

21   Trump sent each student a personalized letter, with the Trump logo "From the Office of Donald J.

22   Trump," promising them, "*I* want to teach you how to make money in real estate."  ¶18(g).  "*My*

23   *team* at Trump University is filled with real estate experts . . . proven winners.  We're the best of the

24   best and we know what works." *Id.*  "Trump University will teach you how" to invest in real estate.

25   *Id.*  "*We'll give you* the best training." *Id.*  These representations by Donald Trump were misleading

26   and actionable.  Consumers were devastated to learn later that what they had paid up to $35,000 for

27   _____

28   [2]        Here, as elsewhere, emphasis is added and citations are omitted, unless otherwise noted.

was nothing more than a sham – a drawn-out infomercial with no purpose other than to try to sell them even more Trump products and services.  This class action seeks recovery for these consumers against Donald Trump nationwide and the University that bears his name.

## II.    STATEMENT OF FACTS

### A.    Misrepresentations by Trump University and Donald Trump

This Court is familiar with the facts of this case.  They are alleged in detail in Plaintiffs' Opposition to Trump University's Motion to Dismiss the First Amended Complaint.  *See* Dkt. No. 25 at 2-8.  For brevity, this statement of facts will focus on the allegations against Donald Trump.

Trump University is owned and was founded by real estate tycoon, Donald J. Trump, Sr., Chairman of Trump University.  ¶¶3, 18(a), 29.  Defendants Trump University and Donald Trump engaged in deceptive business practices in the sale of real estate seminars and related products.  Donald Trump and Trump University deceptively market the University as an educational institution driven by the mission "to train, educate and mentor entrepreneurs on achieving financial independence through real estate investing." ¶36.  However, rather than providing its students with a year-long education by qualified real estate experts, Trump University instead provides a three-day infomercial delivered by professional salespeople paid on commission.  ¶¶39, 42.

Donald Trump and Trump University created a business model of luring consumers in with Donald Trump's name and reputation, then continually up-selling them to additional services and products.  ¶42.  To get consumers in the door, Donald Trump sends emails and letters to potential students with his picture and signature on them, and Trump University issues advertisements (all of which were personally reviewed and approved by him) promising students "free" real estate investment seminars; a "complete real estate education"; a "one year apprenticeship"; practical and fail-safe real estate techniques; and a "power team" consisting of real estate agents, lenders, personal finance managers, property managers and contractors "hand-picked" by Donald Trump.  ¶¶4, 18, 34, 59.  This "free" seminar turns out to be a high-pressure sales tactic designed to persuade consumers to attend a three-day $1,500 seminar.  ¶39.  When consumers purchase the three-day seminar, rather than receiving the training promised, Trump University instead provides a three-day infomercial delivered by professional salespeople (not real estate experts) who are paid on commission.  The

1   primary focus is to up-sell consumers again to the "gold" level program.  ¶¶42, 51.  Yet, after

2   consumers purchase the "gold" level program to gain a "complete education" and year-long

3   mentorship, they find themselves again without access to the services promised.  ¶¶51-57.

4          During the seminars, Trump University made standardized representations in written

5   materials and scripted sales pitches.  ¶¶11, 13.  These included misrepresentations about the year-

6   long mentoring program (¶134), misrepresentations about the three-day field mentorship (¶136),

7   misrepresentations about instructors and mentors (¶¶15, 137), fabricated and misleading testimonials

8   from prior students (¶¶17, 138), misrepresentations about the training provided (¶140), and

9   misrepresentations that students should raise their credit card limits during the break to buy real

10  estate, when in fact, after the break Trump uniformly told students to use this increased credit to buy

11  the next level of the Trump University seminar scheme.  ¶142.

12         As a result of Defendants' failure to deliver what they promised, Trump University received

13  a failing **D-minus rating** from the Better Business Bureau.  ¶58.  The New York Department of

14  Education demanded that it remove the word "University" from its title, insisting that the "'use of

15  the word "university" by your corporation is **misleading and violates New York Education Law**.'"

16  *Id.* (emphasis in original).  Additionally, Attorneys General in at least six states have received

17  numerous complaints concerning Trump University, and at least two have launched their own

18  investigations into its practices.  ¶9.  Plaintiffs' counsel have been contacted by more than 70 Class

19  Members who paid for Trump University courses, but did not receive what they were promised by

20  Donald Trump and Trump University.

21      **B.    Donald J. Trump's Involvement and Misrepresentations**

22         The Trump University website and advertisements prominently featured Donald Trump's

23  photo and urged consumers to "Learn from the Master – Donald Trump."  ¶34.  The advertisement

24  shown below, quotes Donald Trump as saying: "I can turn anyone into a successful real estate

25  investor" and is signed by Donald Trump as Chairman of Trump University.  ¶59(e).  The website,

26

27

28

pictured below, also features Donald Trump's picture and asks consumers to: "Join Trump University – It's the next best thing to being his Apprentice."  ¶34.





Donald Trump is personally liable to Plaintiffs and the Class due to his public representations concerning Trump University and his involvement and role in the misconduct (¶¶18, 59):

(a) **Donald Trump is the founder and Chairman of Trump University**.  According to Trump University seminar presenters, Donald Trump owns Trump University "lock, stock and barrel," and it is his "baby, his company."  ¶¶3, 18(a), 29, 37.

(b) **Donald Trump is the face, the name, the voice, and the draw of Trump University**.  Donald Trump *is* the marketing strategy for Trump University.  He and Trump University used his name, likeness and statements for all Trump University seminar presentations, website and advertising.  In fact, the homepage of the website displayed a large photo of Donald Trump along with the personal message from him: "*Are YOU My Next Apprentice?  Prove it to me!*"  ¶¶18(b), 59(b).

---

3       Screen shot from http://www.trumprealestate.com/market-Phoenix.html?cid=726078 (last visited February 3, 2010).

4       Screen shot from http://www.trumptactics.com/ (last visited February 3, 2010).



(c)     **Donald Trump sent signed letters to consumers nationwide to get them to sign up for Trump University**.  One such letter stated: "[N]o course offers the same depth of insight, experience and support as the one bearing my name . . . . *My hand-picked instructors and mentors* will show you how to use real estate strategies to: [s]upplement or even replace your income, [s]ecure your long-term financial future . . . [s]tart profiting today!  Now is the time to create your financial legacy.  You can do it, even if you only have five or ten hours a week to spare.  With our simple instructions and practice exercises – and *ongoing support from your own Trump Team of Experts – you'll have what you need to succeed!*"  ¶¶18(f), 59(f) (emphasis in original).  The letter closes with Donald J. Trump's name, signature, and Trump University's address as – 40 Wall Street, 32nd Floor, New York, NY 10005.  *Id.*

(d)     **Donald Trump promised to teach consumers how to make money in real estate**.  Donald Trump sent emails to Class Members to sell Trump University's products and services, including Donald Trump's photo with his own words: "Are you My Next Apprentice," and stated: "76% of the world's millionaires made their fortunes in real estate.  Now it's your turn. My father

1    did it, I did it, and **now I'm ready to teach you how to do it too**." ¶¶18(d), 59(d).  The email was

2    signed by Donald J. Trump, Chairman, Trump University.  *Id.*

3



**From:** Trump University <email@info.trumpuniversity.com>
**To:** brandon
**Sent:** Thu, April 29, 2010 12:06:00 PM
**Subject:** Entrepreneurs Needed to be My Next Apprentice

## I want people who want success.

If you Think BIG and believe you've got what it takes to succeed, I want you!

**76% of the world's millionaires made their fortunes in real estate. Now it's your turn. My father did it, I did it, and now I'm ready to teach you how to do it too.**

▶ Register Now

My team of real estate experts at Trump University is coming to your area in the next few days to conduct my Free Intro Apprenticeship Workshop. If you think you've got what it takes to be my next Apprentice, step up and attend. You should also bring along a trusted partner. This is YOUR opportunity to create wealth and take control of your own financial future with proven strategies that work in the current real estate market.

**Attend the Free Intro Apprenticeship Workshop to learn how to:**

1. Buy properties from banks at DEEP discounts
2. Use short sales to CONTROL property
3. Increase your financial POWER with leverage
4. Negotiate PROFITABLE deals that meet your goals
5. Attend and learn how to develop the CONFIDENCE to succeed in real estate

▶ Register Now



I'm also going to give you my "Secrets of Real Estate Marketing" investor toolkit (a $50 value) absolutely FREE when you attend.

Don't waste time - seating is very limited and my Trump Workshops always fill up fast.

**See you at the top!**





Donald J. Trump
Chairman, Trump University

1      (e)     **Donald Trump reviewed all Trump University print advertisements**.  Donald

2  Trump reviewed and authorized advertisements before they were released, including advertisements

3  featuring Donald Trump, his likeness and his own words such as: "I can turn anyone into a

4  successful real estate investor, including you. – Donald Trump."  ¶¶18(e), 59(e).

5      (f)     **Donald Trump sent a personalized letter to consumers to up-sell them to the**

6  **$35,000 course**.  While consumers were being pressured into signing up for the $35,000 course,

7  each of the participants received a personalized (addressed to them by name) letter from Donald J.

8  Trump.  The letter bore the Trump logo at the top of the letter and the words "From the Office of

9  Donald J. Trump."  The letter stated:

10          Success in real estate begins with great training and proven strategies.
    Without education you don't stand a chance.

11

12          I know how to make money in real estate.  I've been doing it for a long time
    with a lot of success.  My family has been a leader in real estate since my father –
    Fred Trump – started building residential homes in New York City 75 years ago.  My

13  father was my mentor and he taught me a lot.  *Now __I want to teach you how to make__*
    *__money in real estate__*.  *__To be my apprentice__* you need to Think BIG and really want

14  to succeed.  More than anything, you need to take action.

15          Do YOU have What It Takes to Be *__My__* Next Apprentice?

16          *__I__* only work with people who are committed to succeed.  *__I__* founded Trump
    University back in 2005 to teach go-getters how to succeed in real estate. *__My team__* at

17  Trump University is filled with real estate experts . . . proven winners.  We're the
    best of the best and we know what works.  If you think you have what it takes to be

18  *__my__* next apprentice, prove it to *__me__*.

19          We've trained thousands of real estate investors over the years and we know
    you will be most successful when you work with a partner . . . .

20

21          If you're serious about making money and safeguarding your future, learn to
    invest in real estate.  Trump University will teach you how.  *__We'll give you the best__*

22  *__training__* and the confidence to succeed.  If you think you've got what it takes to be
    *__my__* next Apprentice, come prove it to *__me and my team__*.

23  The letter closes with "See you at the top!"  And, it is signed, "Donald J. Trump, Chairman,

24  Trump University."  ¶¶18(g), 59(g).

25      (g)     **As the public face and voice of Trump University, Donald Trump wrote 387**

26  **blogs posted on Trump University's website**.  Donald Trump represented that he was actively

27  involved with Trump University and its curricula.  Donald Trump wrote:

28

Trump University grew out of ***my desire to impart my business knowledge,*** accumulated over the years, and my realization that there is a huge demand for practical, convenient education that teaches success.

I want the people who go to Trump University to succeed, and ***I plan to do my part to help them. I'm not just putting my name on this venture; I plan to be an active presence in the curricula***. The website, www.trumpuniversity.com, will include such features as "Ask Mr. Trump," in which I answer your questions; the blog you're reading now; video clips of me; and more. ***My words, ideas, and image will also be woven into the courses we create***. The reason I'm playing such an active role in Trump University is that I truly believe in the power of education . . . . [T]he people who go to Trump University want to be successful, and ***I'm on their side***.

¶¶18(h), 59(h).

In another blog, Trump wrote, "***I have to believe in whatever I put my name on***, and it has to reflect who I truly am. To do otherwise would be a disservice to me, my loyal customers, and prospective customers." These blogs were written by Donald Trump.  ¶59(i).

(h)      Donald Trump personally financed Trump University. ¶¶18(i), 59(j).

(i)      **Donald Trump personally reviewed Trump University's financials** every month with Trump University President, Michael Sexton. ¶¶18(j), 59(k).

(j)      **Donald Trump represented that he hand-picked the Trump University instructors and mentors**.  ¶¶18(l), 59(m).

(k)      **Donald Trump backed Trump University 100%** and intended to appear at a fall 2010 event, according to insiders.  ¶¶18(m), 59(n).

(l)      **Donald Trump claimed he would hold live online Q&A Sessions with Trump University students** and that twice a month, he would personally choose and answer the best questions from Trump members. ¶¶18(n), 59(o).  However, these statements were misleading and/or false, because if he did this at all, it was not frequently.

Contrary to Defendant's self-serving assertions, Plaintiffs' factual allegations are more than sufficient to demonstrate Donald Trump's ***own*** actions giving rise to personal liability.

## III.      APPLICABLE LEGAL STANDARD FOR MOTIONS TO DISMISS

As this Court previously held: "The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable interferences from them in favor of the nonmoving party." Dkt. No. 33 ("10/12/10 Order") at 3 (citing *Cahill v. Liberty Mut. Ins. Co.*,

1   80 F.3d 336, 337-38 (9th Cir. 1996)). "To avoid a Rule 12(b)(6) dismissal, a complaint need not

2   contain detailed factual allegations, rather, it must plead 'enough facts to state a claim to relief that is

3   plausible on its face.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4          Further, Rule 9(b), which governs the claims for negligent misrepresentation, fraud and false

5   promise, requires only that Plaintiffs allege the circumstances of the fraud "'specific[ally] enough to

6   give defendants notice of the particular misconduct . . . so that they can defend against the charge and

7   not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124

8   (9th Cir. 2009). Here, Plaintiffs adequately alleged their claims against Mr. Trump.

9   **IV.   PLAINTIFFS HAVE SUFFICIENTLY STATED THEIR CLAIMS
          AGAINST DONALD J. TRUMP**

10

11         **A.   Plaintiffs Allege that Donald Trump Personally Participated,
               Authorized, and Directed the Alleged Misconduct**

12          Donald Trump's primary contention is that he cannot be held liable merely because he is an

13   officer or director of Trump University. *See* Def's Mem. at 5-7. Defendant misses the point.

14   Contrary to Trump's self-serving assertion, Plaintiffs allege that he participated in the alleged

15   misconduct and thus is personally liable as a result. Try as he might, Donald Trump cannot distance

16   himself from the well-pleaded allegations of the SAC which demonstrate that, at this early stage of

17   the proceedings, Plaintiffs have stated legal claims against him.

18          "[C]orporate director or officer status does not immunize a person from personal liability."

19   *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379 (2000) (citing *Frances T. v. Village Green*

20   *Owners Ass'n*, 42 Cal. 3d 490, 507-08 (1986)). "The legal fiction of the corporation as an

21   independent entity ***was never intended to insulate officers and directors from liability for their own***

22   ***tortious conduct***." *Id.* at 1380; *Michaelis v. Benavides*, 61 Cal. App. 4th 681, 688 (1998); *Legal*

23   *Additions LLC v. Kowalski*, No. C-08-2754 EMC, 2010 WL 1999894, at *3 (N.D. Cal. May 18,

24   2010) (same). "A corporate officer or director like any other person, owes a duty to refrain from

25   injuring others." *PMC*, 78 Cal. App. 4th at 1381 (citing *Frances T.*, 42 Cal. 3d at 505). Officers and

26   directors must refrain from acts that could injure others even if that conduct is profitable or serves

27   the interests of the corporation. *Id.* Otherwise, "[i]f a corporate officer or director were not liable

28   for his or her own tortious conduct, he or she 'could inflict injuries upon others and then escape

1   liability behind the shield of his or her representative [corporation], even though the corporation

2   might be insolvent or irresponsible.'"  *Id.*

3        Accordingly, "'a ***corporate officer or director is***, in general, ***personally liable for all torts***

4   ***which he authorizes or directs or in which he participates***, notwithstanding that he acted as an

5   agent of the corporation and not on his own behalf.'"  *Coastal Abstract Serv., Inc. v. First Am. Title*

6   *Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (citing *Transgo, Inc. v. Ajac Transmission Parts Corp.*,

7   768 F.2d 1001, 1021 (9th Cir. 1985)).  In *Coastal Abstract*, the defendant, who was an officer of the

8   defendant company First American, was held personally liable because he made an actionable

9   misrepresentation that plaintiff Coastal was not paying its bills.  *Id.*  The court reasoned: "Having

10  made the statement as an officer of First American, Hollenbeck cannot 'hide behind the corporation

11  where he is an actual participant in the tort.'"  *Id.*

12       Moreover, a director or officer's participation in tortious conduct "may be shown ***not solely***

13  ***by direct action but also by knowing consent to or approval of unlawful acts***."  *PMC*, 78 Cal. App.

14  4th at 1380 (citing *Frances T.*, 42 Cal. 3d at 503-04); *Spahn v. Guild Indus. Corp.*, 94 Cal. App. 3d

15  143, 157 n.9 (1979) (holding officers and directors of corporation personally liable for fraud

16  committed by managers because they allowed the fraud to occur).

17       Corporate directors and officers may be personally liable even though the corporation is also

18  liable.  *PMC*, 78 Cal. App. 4th at 1380 (citing *Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th

19  34, 53 n.20 (1992)).  "***Directors are jointly liable with the corporation*** and may be joined as

20  defendants if they personally directed or participated in the tortious conduct."  *Frances T.*, 42 Cal. 3d

21  at 504 (citing *United States Liab. Ins. Co. v. Haidinger-Hayes*, 1 Cal. 3d 586,  595 (1970); *accord*

22  *Legal Additions*, 2010 WL 1999894, at *2 (citing 5 Witkin, Summary 10th  Torts, §30, p. 92

23  (2005))).  Individual defendants may be held "liable for the full amount of the damages suffered."

24  *PMC*, 78 Cal. App. 4th at 1381-82.

25       This case has striking similarities with *Acciard v. Whitney*, No. 2:07-cv-476-UA-DNF, 2008

26  WL 5111307  (M.D. Fla. Dec. 4, 2008), in which the court upheld RICO claims against individual

27  partners of "Millionaire University," a real estate investing scam which also involved real estate

28  seminars and the promise of a "Power Team" of experts.  *Id.* at *1-*2, *6.  Here, too, Donald Trump,

as the Chairman of Trump University, may be held for misleading the public and taking thousands of dollars from consumers who would never get what was promised.

*Acciard* is consistent with a long line of cases spanning a century.  *See, e.g.*, *PMC*, 78 Cal. App. 4th at 1380 (holding that corporation's majority shareholders were personally liable for misappropriation of trade secrets since they knew or should have known that former managers had misappropriated trade secrets); *Vacco Indus.*, 5 Cal. App. 4th at 53 n.20 (holding that corporate shareholders and officers were personally liable for misappropriation of trade secrets); *Klein v. Oakland Raiders, Ltd.*, 211 Cal. App. 3d 67, 76-79 (1989) (sole general partner could be personally liable for conspiring to violate the Sherman Act on behalf of limited partnership); *Golden v. Anderson*, 256 Cal. App. 2d 714, 719-20 (1967) (corporate officers conspired to interfere with contractual relationship); *Price v. Hibbs*, 225 Cal. App. 2d 209, 222 (1964) (corporate officials conspired to induce breach of contract and commit fraud); *Granoff v. Yackle*, 196 Cal. App. 2d 253, 256-57 (1961) (corporate officers personally liable for misappropriation of another's money or property); *Vujacich v. S. Commercial Co.*, 21 Cal. App. 439, 442-43 (1913) (director who had reason to know of corporation's misappropriation of another's money was personally liable).

In *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327 (1966), a corporate officer was found liable where he was aware of wrongful conduct, cooperated, and benefited from the misconduct.  *Id.* at 332-33.  Specifically, John Bender was the president of Matthew Bender & Co., and Judson Glen was the president of Bancroft-Whitney – both were in the business of publishing law books.  *Id.* at 332. Without resigning from Bancroft-Whitney, Judson Glen entered into a contract with John Bender to become president of its new division and disclosed Bancroft-Whitney's trade secrets and confidential information to Mr. Bender.  *Id.*  The court held that Judson Glen and Matthew Bender & Co. engaged in unfair competition.  *Id.*  However, the court also held that John Bender was personally liable because he "encouraged the sowing and reaped the benefit" and "cannot now disclaim the burden." *Id.* at 353.

Indeed, Defendant's own authorities recognize as much.  A case cited by Donald Trump held: "Directors or officers [may be personally liable if] they participate in the wrong or authorize or direct that it be done.  They may be liable, under the rules of tort and agency, for tortious acts

1   committed on behalf of the corporation." *United States Liab. Ins.*, 1 Cal. 3d at 595 (cited in Def's

2   Mem. at 5).  Donald Trump also cites *Michaelis*, 61 Cal. App. 4th at 684; however, *Michaelis* held

3   that directors or officers are personally liable for torts of the corporation if "they participate in the

4   wrong or authorize or direct it be done." *Id.*  Otherwise, an officer or director "could inflict injuries

5   upon others and escape liability behind the shield of his or her representative character, even though

6   the corporation might be insolvent or irresponsible." *Id.* at 685 (citing *Frances T.*, 42 Cal. 3d at

7   505).[5]  As in *Michaelis*, Donald Trump is trying to, but cannot successfully, escape liability by

8   hiding behind the shield of Trump University – a corporation which was a scam and, according to

9   Plaintiffs' investigation, may soon be insolvent because of its misconduct.  However, such a

10  consequence does not leave Plaintiffs and the Class without recourse; in accordance with a long line

11  of authorities, Donald Trump may properly be held liable for the scam, too.

12          To be clear, Plaintiffs are not alleging that Donald Trump is liable merely because he is an

13  officer or director of Trump University.  Plaintiffs allege Donald Trump is personally liable because

14  he personally made misrepresentations, and participated in or authorized Trump University's

15  misrepresentations and wrongful conduct.  Defendant asks: "What specifically did Mr. Trump

16  personally do to harm any of the Plaintiffs?"  Def's Mem. at 7.  He created, funded, participated in,

17  and benefited from this scam that cost Plaintiffs and the Class millions of dollars collectively –

18  Trump University.  As a consequence of his and Trump University's marketing and advertising

19  campaign that relied heavily on the name, voice, and likeness of Donald Trump, Plaintiffs and other

20  Class Members were harmed by paying $1,500 to $35,000 for these real estate seminars that simply

21  did not deliver the services that were promised.

22          Specifically, Donald Trump's words and image were plastered all over the website, he sent

23  letters and emails to potential and actual Trump University students and potential students, complete

---

5          Notably, *Michaelis* held that the defendant Anthony Benavides, president and majority owner
of a construction corporation, was personally liable to the plaintiff in an action alleging negligent
construction of a patio and driveway at the plaintiff's home, even though he did not physically do the
construction of the driveway and patio, because of his "participation" in the wrongdoing – he
directed the construction and made the decisions to use cheaper materials and construction methods
which resulted in the defects.  61 Cal. 4th at 686.

1   with his photo, signature, and address at Trump University headquarters on 40 Wall Street,

2   promising that "no course offers the same depth of insight, experience and support as the one bearing

3   my name. . . .   My hand-picked instructors and mentors will show you how to use real estate

4   strategies to. . . start profiting today."  ¶¶18(f), 59(f).  Donald Trump also promised that students

5   would get "ongoing support from your own Trump Team of Experts – you'll have what you need to

6   succeed."  *Id.*  Donald Trump told potential students: "I'm ready to teach you how" to make money

7   in real estate.  ¶¶18(d), 59(d).  Further, at the up-sell portion of the $1,500 seminar, Class Members

8   were provided with Donald Trump's personalized letter addressed to them by name, with the Trump

9   logo and "From the Office of Donald J. Trump," promising them; "*I* want to teach you how to make

10  money in real estate." "*My team* at Trump University is filled with real estate experts . . . proven

11  winners.  We're the best of the best and we know what works."  He continued, "Trump University

12  will teach you how" to invest in real estate.  ¶¶18(g), 59(g).  "*We'll give you* the best training."  *Id.*

13  These statements turned out to be untrue.

14         Finally, Donald Trump personally approved Trump University advertisements containing his

15  likeness, signature and representations, such as: "I'll show you how" to profit in the real estate

16  market.  ¶¶18(c), 18(d), 18(e).  Donald Trump promised potential students that they could "learn

17  from my handpicked expert" how to profit in real estate.  ¶¶18(c), 59(c).  Donald Trump agreed to

18  personally choose and answer questions from Trump University students, according to the Trump

19  University website and Trump University President Michael Sexton.  ¶18(n).

20         As Donald Trump "encouraged the sowing and reaped the benefit" of his and Trump

21  University's wrongful conduct, he "cannot now disclaim the burden." *Bancroft-Whitney*, 64 Cal. 2d at

22  353.  As Defendant's own cited authority held, "[t]he corporate fiction was never intended to insulate

23  officers from liability for their own tortious conduct.  This is sound and settled public policy."

24  *Michaelis*, 61 Cal. App. 4th at 688.[6]  So, too, may Donald Trump be liable to Plaintiffs and the Class

25

26  _____

27  [6]      Donald Trump also cites *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112 (2002), but this
    case is inapposite as it involved a woman who was shot and killed by her ex-husband at the
28  courthouse awaiting their divorce proceeding; the issue was whether police officers at the court

1    for the misconduct.  The Court should deny Defendant's motion to dismiss and find that Plaintiffs may

2    state claims for personal liability against Donald Trump.

3         **B.    Plaintiffs Were Harmed by Donald Trump's Misrepresentations**

4         Donald Trump boldly suggests that Plaintiffs and Class Members were not damaged or

5    harmed by his misrepresentations.  Def's Mem. at 6-7.  For example, he states that even if his

6    representation that he hand-picked the instructors was (as Plaintiffs allege) false, that Plaintiffs were

7    not harmed or damaged by this.

8         In fact, Plaintiffs and other Class Members were harmed because they paid large (up to

9    $35,0000) amounts of money for these real estate seminars as a result of Defendant's representations

10   that Trump University provided top-notched training based upon Donald Trump's real estate investing

11   secrets and strategies and taught by Donald Trump's hand-picked "Power Team."  ¶¶18(f), 34.  And,

12   Defendants represented that the materials and forms used were "the best of the best," perfected by

13   Donald Trump's lawyers, real estate gurus and advisors.  Instead, Trump University provided little

14   more than professional salesmen, paid on commission, whose primary experience was not in the real

15   estate transactions they were teaching, but in high-pressure sales tactics. ¶¶15, 18(c), 18(f), 18(g).

16   Plaintiffs did not receive the "best training" from "hand-picked Trump experts" but merely worthless

17   generalizations by scam artists and pitch-men. ¶¶14-15.  In short, Plaintiffs and the Class were

18   damaged to the tune of millions of dollars collectively because of Defendants' misleading marketing

19   practices in which Donald Trump was an active participant.

20        **C.    Plaintiffs Adequately Alleged Unfair Competition Law ("UCL")
             Claims Against Donald Trump**

21

22        Donald Trump asserts that the UCL claims fail because they are not adequately alleged under

23   Rule 9(b).  First, Plaintiffs' UCL claims are not subject to Rule 9(b) standards.  *See* 10/12/10 Order at

24   11 n.7 (citing *Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1104-05 (9th Cir. 2003) (reversing dismissal

25   of UCL and CLRA claims because the claims did not solely depend on averments of fraud, and thus,

26

27   could be held liable for her wrongful death when they did not harm the deceased or engage in any

28   affirmative act that increased the risk of harm to her.  *Id.* at 1128-30.

1    Rule 9(b) did not apply)). Further, even if they were, Plaintiffs have more than met this standard by

2    putting Defendant on notice of their claims. *See, e.g.*, ¶¶96-103.

3         As this Court is aware, there are three prongs under Cal. Bus. & Prof. Code §17200, *et. seq.*:

4    (1) unlawful acts or practices; (2) unfair acts or practices; and (3) fraudulent acts of practices.

5    10/12/10 Order at 8-9 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th

6    163, 180-81 (1999)).   A business practice need only violate one prong to violate the UCL.  *See*

7    *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).  Claims "are governed by the

8    'reasonable consumer' test, under which a plaintiff must show that 'members of the public are likely

9    to be deceived.'" *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007 (C.D. Cal. 2010).  "Whether a

10   business practice is deceptive will usually present a question of fact and therefore dismissal of a

11   UCL claim for failure to state a deceptive practice will be appropriate only in 'the rare case.'" *Id.*

12   Here, Plaintiffs have adequately alleged violations under each prong of the UCL, thus their claims

13   must stand.

14              **1.       Plaintiffs Have Alleged Unlawful Acts or Practices**

15        To adequately allege an "unlawful" practice, a plaintiff need only identify the law violated

16   and allege facts showing the violation.  *See, e.g.*, *Microsoft Corp. v. A-Tech Corp.*, 855 F. Supp. 308,

17   313 (C.D. Cal. 1994); *People ex rel. Bill Lockyear v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508,

18   515 (2002) ("'With respect to the unlawful prong, "[v]irtually any state, federal or local law can

19   serve as the predicate for an action" under section 17200.'").

20        Here, Donald Trump engaged in unlawful predicate acts, including violations of California

21   Civil Code §§1572 (actual fraud), 1573 (constructive fraud), 1709 and 1710 (deceit); §1750 of the

22   California Consumer Legal Remedies Act ("CLRA"); California's False Advertising Law ("FAL"),

23   Cal. Bus. & Prof. Code §17500, *et. seq.*; New York's General Business Law §349; and various

24   common law violations, including misrepresentation and fraud. *See* ¶98.  This Court previously held

25   that "these alleged violations may serve as the predicate acts under the 'unlawful' prong." 10/12/10

26   Order at 10.   Because Defendant does not challenge that Plaintiffs have stated violations of

27   constructive fraud, deceit, and the FAL, the UCL "unlawful" prong necessary survives.  Further, as

28

1    discussed herein, Plaintiffs properly allege the remaining alleged violations of law, including the

2    CLRA and N.Y. Gen. Bus. Law §349.  The UCL unlawful counts must stand.

3       Defendant's only argument is that Plaintiffs have failed to specify unlawful conduct by

4    Donald Trump.  Def's Mem. at 7, 10-11.  However, as detailed above, Plaintiffs have alleged that

5    Donald Trump personally and directly participated in the unlawful conduct alleged in the SAC.  *See*

6    *People v. First Fed. Credit Corp.*, 104 Cal. App. 4th 724, 734-35 (2002) (officer or director is

7    personally liable if he was aware of false advertising or other wrongful conduct, was in a position of

8    control, yet permitted it to continue).  Specifically, Donald Trump made numerous

9    misrepresentations to Plaintiffs and other Class Members in letters, emails and on the Trump

10   University website, Donald Trump personally approved advertisements that were false or

11   misleading, and Donald Trump wrote blogs regarding Trump University that were misleading,

12   fraudulent, and deceitful.  This is more than sufficient.

13       In addition, Plaintiffs allege that Trump University advertised using student testimonials

14   which were misleading, and in some cases, completely fabricated by Trump University employees.

15   ¶¶17, 139.  Plaintiffs allege that Donald Trump personally reviewed and approved all Trump

16   University written advertising.  ¶¶18(k), 59(l).  As such, these false and misleading testimonials also

17   form the basis of a UCL claim against Donald Trump under the "unlawful" prong.  *First Fed. Credit*,

18   104 Cal. App. 4th at 734-35.  Plaintiffs' UCL claims based on the "unlawful" prong of the statute

19   clearly must stand.

20               **2.**      **Plaintiffs Have Alleged Unfair Acts or Practices**

21       As this Court is aware, there is a split in authority concerning the definition of unfair under the

22   UCL. 10/12/10 Order at 9 (citing *Bardin v. DiamlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260-61

23   (2006)).  However, as this Court previously found in regard to Trump University, this split in authority

24   is not a barrier to Plaintiffs' claims because Plaintiffs have stated a claim against Donald Trump under

25   the "unfair" prong, regardless which of the two tests is applied.  *Id.* at 9-10.

26       Here, Donald Trump's conduct is unfair because he made misrepresentations to consumers

27   about Trump University as specified in the SAC, and he violated common law and statutory law,

28   including California Civil Code §§1572 (actual fraud), 1573 (constructive fraud), 1709 and 1710

1  (deceit); the CLRA, FAL, Cal. Bus. & Prof. Code §17500; and New York Gen. Bus. Law §349.

2  ¶¶18, 59, 102.  The SAC also alleges conduct by Donald Trump that is immoral, "unethical,

3  oppressive, unscrupulous" or substantially injurious to consumers.  ¶102.  It is unscrupulous and

4  unethical for Donald Trump to promise consumers that his University is like becoming his "next

5  apprentice" with unfettered access to his "Power Team" and him, that he will teach them how to

6  make money in real estate, and that he will provide them with the "best of the best" instruction,

7  teachers and mentors, and then deliver nothing more than a drawn-out infomercial with no purpose

8  other than to try to sell these consumers additional Trump products and services.  *See* ¶¶18, 59.  At

9  the pleadings stage, this is sufficient to make out a UCL claim under the unfair prong.

10          **3.       Plaintiffs Have Alleged Fraudulent Acts or Practices**

11          Finally, to state a claim under the "fraudulent" prong, Plaintiffs "'need only show that

12  members of the public are likely to be deceived.'"  10/12/10 Order at 10 (citing *Puentes v. Wells*

13  *Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 644-45 (2008)).  As this Court previously held,

14  "[t]he Court cannot determine as a matter of law that members of the public cannot possibly be

15  deceived by the alleged misrepresentations."  *Id.*

16          Members of the public were likely to be deceived, and were in fact deceived, by Donald

17  Trump's promises that he and his team of hand-picked experts would personally teach them how to

18  make money in real estate, that they would be his "apprentices," and would receive the "best of the

19  best" real estate training and ongoing support from Donald Trump and his team of experts, that they

20  would receive his business and real estate knowledge, imparted by teachers and mentors hand-picked

21  by him, that he would "do [his] part" to help them succeed, and be an active presence in the seminars

22  and curricula.  ¶¶18, 59.  Indeed, Plaintiffs and thousands of other Class Members were fooled based

23  upon myriad representations made by Defendants.  The Court should refrain from determining, as a

24  matter of law, that members of the public could not possibly be deceived by Donald Trump's

25  misrepresentations.  Such a question is better suited for summary judgment.  *See* 10/12/10 Order at

26  10; *In re Sony VAIO Computer Notebook Trackpad Litig.*, No. 09-cv-2109 BEN (RBB), 2010 WL

27  4262191, at *6 (S.D. Cal. Oct. 28, 2010) (upholding UCL claim because "factual dispute [is] not

28  appropriate for resolution on a motion to dismiss when the Court must accept the truth of Plaintiffs'

1  allegations"). Plaintiffs respectfully submit that the Court should deny Donald Trump's motion to

2  dismiss their UCL claims.

3        **D.**    **Plaintiffs Adequately Allege CLRA Claims Against Donald Trump**

4             **1.**    **Plaintiffs Satisfy the "Transaction" Element**

5        Donald Trump argues without authority that Plaintiffs' CLRA claims fail because they have

6  not alleged that they entered into a "transaction" directly with Donald Trump. Def's Mem. at 8-9.

7        However, the CLRA broadly defines a transaction as "an agreement between a consumer and

8  any other person, whether or not the agreement is a contract enforceable by action, and includes the

9  making of, and the performance pursuant to, that agreement." Cal. Civ. Code §1761(e); *see also*

10 *Shin v. BMW of N. Am.*, No. CV 09-00398 AHM (AJWx), 2009 U.S. Dist. LEXIS 67994, at *9 (C.D.

11 Cal. July 16, 2009). Moreover, the plain language of the CLRA states that claims may be brought

12 against individuals or "persons," not just business entities. *Id.* This is similar to the UCL which

13 defines "person" to include "natural persons, corporations, firms, partnerships, joint stock

14 companies, associations and other organizations of persons." Cal. Bus. & Prof. Code §17201. It is

15 no coincidence that Trump fails to cite any authority to support his argument that there was no

16 statutorily required "transaction." Def's Mem. at 8-9. This is because "[n]othing in the language of

17 the CLRA states that only a defendant who directly engaged in a completed transaction with a

18 plaintiff may be liable to that plaintiff." *Chamberlan v. Ford Motor Co.*, No. C 03-2628 CW, 2003

19 U.S. Dist. LEXIS 27912, at *19-*21 (N.D. Cal. Aug. 6, 2003) (finding Ford's alleged concealment

20 of product defects from plaintiffs sufficient to constitute a transaction under the CLRA even though

21 plaintiffs bought their cars used and not directly from Ford); *Keilholtz v. Superior Fireplace Co.*, No.

22 C 08-00836 CW, 2009 U.S. Dist. LEXIS 30732, at *9-*10 (N.D. Cal. Mar. 30, 2009) (finding

23 sufficient plaintiffs' allegations that defendant Superior Fireplace sold fireplaces to home builders,

24 who installed them in the homes that were later sold to plaintiffs).

25       Here, Donald Trump induced students, with his representations, to enter into a transaction with

26 Trump University. In addition, there was an "agreement" between Donald Trump and Trump

27 University students because Donald Trump agreed to give students his business and real estate

28 knowledge, imparted by teachers and mentors hand-picked by him, agreed to "do [his] part" to help

1    Trump University students succeed, agreed to play an active role in Trump University and be an active

2    presence in the seminars and curricula.  ¶¶18(h), 59(h).  Donald Trump agreed to answer questions

3    from Trump University students, and agreed that his words, ideas and image would be part of the

4    courses.  *Id.*  He agreed to provide Trump University students with a course of "depth of insight,

5    experience and support" above and beyond all other real estate investing courses, agreed to provide

6    instructors and mentors hand-picked by him to show students how to make money in real estate and

7    agreed to provide students with "ongoing support from your own Trump Team of Experts."  ¶18(f).

8    Donald Trump wrote letters to all students in the $1,500 seminar, agreeing to "teach you how to make

9    money in real estate," "give you the best training," and provide them with a team of real estate experts

10   who are "proven winners," promising that "[w]e're the best of the best and we know what works."

11   ¶18(g).  These statements and representations are sufficient to hold Donald Trump liable at the

12   pleadings stage for purposes of the CLRA.

**2.      Plaintiffs Makaeff and Keller Are California Residents with Standing to Assert UCL and CLRA Claims**

14           Finally, Donald Trump argues that Plaintiffs Oberkrom and Murphy cannot assert CLRA and

15   UCL claims because non-California residents cannot assert CLRA and UCL claims.  Def's Mem. at

16   9.  However, Donald Trump neglects that California residents Tarla Makaeff and Brandon Keller can

17   clearly assert the UCL and CLRA claims on behalf of the Class.  ¶¶24-25.  As such, their UCL and

18   CLRA claims must be upheld.

**3.      Donald Trump's Misrepresentations Are Not Puffery**

20           Donald Trump broadly asserts that his misrepresentations are mere "puffery."  Def's Mem. at

21   7-8.  However, Plaintiffs' claims relate to objective features of the Trump University program that

22   were misrepresented which are actionable.  *Lima*, 710 F. Supp. 2d at 1007 (finding representations

23   actionable because "they contribute to the deceptive context of the advertising as a whole").

24           For example, Donald Trump represented that "I'll show you how to make money in real

25   estate" (¶¶18(c), 18(d), 18(g)), and said he "hand-picked" Trump University's instructors and

26   mentors, which was material to consumers and outright false (¶¶18(c), 18(f)).   Trump also

27   represented that students would receive "ongoing support from your own Trump Team of Experts"

28

1    which was not true. ¶18(f).  Trump asked: "Are YOU My Next Apprentice? Prove it to me!"

2    (¶59(b)), and told consumers they could "Learn from the Master" (¶34).

3          Further, as in Trump University's first motion to dismiss, Defendant fails to specify which

4    statements were puffery.  10/12/10 Order at 9-10.  Indeed, the only statement Trump identifies that

5    he views to be puffery is the statement that "no course offers the same depth of insight, experience

6    and support as the one bearing my name."  Def's Mem. at 7.  This statement was false because the

7    instructors were not knowledgeable about the real estate investing techniques they were teaching,

8    and Trump University did not provide the ongoing support and mentoring promised.  Moreover,

9    these misrepresentations are actionable as they contributed to Trump University's overall deceptive

10   scheme to mislead consumers into purchasing real estate seminars and mentoring services for

11   thousands, or tens of thousands, of dollars each.  As the court held in *Lima*, the relevant question is

12   "whether the statements, taken as a whole, are likely to deceive members of the public."  *Lima*, 710

13   F. Supp. 2d at 1008; *see also Sony*, 2010 WL 4262191, at *5 (holding that misrepresentation or

14   omission is material if plaintiff would have acted differently had he known the truth).

15         Here, Donald Trump's statements, as a whole, are likely to deceive (and did deceive) the

16   public, and had they known the truth, Plaintiffs and other Class Members would have acted

17   differently – they never would have paid $35,000, or even $1,500, for Trump University.  Thus, the

18   misrepresentations are actionable.

19         **E.    Plaintiffs Adequately Allege False Advertising by Donald Trump**

20         The Court has previously upheld Plaintiffs' false advertising campaign allegations as to

21   Trump University, finding that the complaint set forth "'enough facts to state a claim to relief that is

22   plausible on its face.'"  10/12/10 Order at 11 (citing *Twombly*, 550 U.S. at 570).  Section 17500

23   renders unlawful an advertisement which is "untrue or misleading, and which is known, or which by

24   the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof.

25   Code §17500.  A complaint describing and alleging a scheme that misled consumers is not deficient

26

27

28

for failing to plead the exact language of every statement.[7]  *Committee on Children's Television*, 35 Cal. 3d at 217.  A violation of the UCL's fraudulent prong is also a violation of the False Advertising Law.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  As discussed above, because Plaintiffs properly plead a violation of the UCL's "fraudulent" prong, they also properly plead a violation of the FAL and vice versa.

As the Court found that Plaintiffs have adequately alleged violations of the FAL against Trump University, Plaintiffs likewise set forth enough facts in the SAC to state a plausible false advertising claim as to Donald Trump.  *See* ¶¶18, 59, 112-115.

Donald Trump also erroneously asserts that Plaintiffs "fail to identify any specific statements attributed to Mr. Trump."  Def's Mem. at 11.  A quick review of the SAC reveals this statement to be untrue.  In fact, Plaintiffs allege specific statements made by Donald Trump on the Trump University website, in Trump University advertisements, in standardized sales presentations, in his blogs posted on the Trump University website, in mass letters and emails, and specific statements made by Donald Trump in Trump University advertisements which he reviewed and approved.  *See* ¶¶18, 59.  Indeed, Plaintiffs even included a screen shot of an email from Donald Trump to Plaintiff Brandon Keller with Donald Trump's signature at the bottom, and Donald Trump's representation: "I want you!  76% of the world's millionaires made their fortunes in real estate.  Now it's your turn. My father did it, I did it, and now *I'm ready to teach you how to do it too*."  ¶59(d).

Moreover, Donald Trump is liable for violation of the FAL because he was aware of the false advertising campaign concerning Trump University, reviewed and approved it, and permitted it to continue in violation of §17500.  *See* ¶¶18(e), 59(e).  As the Court held in *First Fed. Credit.*, 104 Cal. App. 4th at 734-35, a principal of corporation is liable for violation of the false advertising law even though he does not physically send out deceptive advertisements so long as he was aware of the false advertising, was in a position of control, yet permitted the false advertising to continue.  *See id.*;

---

[7]      Plaintiffs in *Committee on Children's Television, Inc. v. General Foods Corp.* alleged thousands of misrepresentations in various media.  The court held that a complaint which set out each advertisement verbatim and specified the time, place, and medium, would have provided less effective notice and been less useful in framing the issues than would be a shorter, more generalized version.  35 Cal. 3d 197, 217 (1983).

*see also People v. Conway*, 42 Cal. App. 3d 875, 884-86 (1974) (finding that Conway, president of a Ford dealership "was in a position to **control** the advertising of the [corporation] and thus could be held criminally liable for false advertising") (emphasis in original); *Trafficschool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1081-83 (C.D. Cal. 2008) (holding that two individual defendants and their companies were liable as joint tortfeasors for false advertising campaign).

Finally, Defendant erroneously argues that Plaintiffs' claims under Cal. Bus. & Prof Code §17500, *et seq*. fail because they do not allege they saw advertisements. Not so. All of the Plaintiffs besides Makaeff allege they saw and relied on Defendant's deceptive advertising campaign in purchasing Trump University's products and services. ¶¶70, 76, 79, 114. In addition, oral representations can constitute false advertising (*see People v. Dollar Rent-A-Car Sys. Inc.*, 211 Cal. App. 3d 119, 128 (1989)), and Tarla Makaeff was told numerous false and misleading statements about the $35,000 seminar during the $1,500 seminar she attended in August 2007. ¶¶24, 61-62. This is more than sufficient to state claims under the FAL on behalf of all Plaintiffs. *First Fed. Credit*, 104 Cal. App. 4th at 734-35.

### F. Plaintiffs Adequately Allege Fraud, Misrepresentation and False Promise Claims Against Donald Trump

Plaintiffs adequately alleged their claims for misrepresentation, fraud, and false promise against Donald Trump. The Ninth Circuit has held that Rule 9(b) only requires Plaintiffs' allegations to "'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns*, 567 F.3d at 1124.

Here, Plaintiffs have not only provided enough particulars for Donald Trump to understand the misconduct alleged, they have provided exact quotes of misrepresentations by Donald Trump, with the time, place, and manner of such statements. These misrepresentations are set out specifically in detail in the SAC, including the following:

- Donald Trump promised consumers, including Plaintiffs that he and his "Power Team" would show them how to make money in real estate. ¶¶59(c), 59(d), 59(g).

- Donald Trump promised he and his Trump team would give consumers, including Plaintiffs "the best training," and that "no course offers the same depth of insight, experience and support as the one bearing my name." ¶¶59(f), 59(g).

- Donald Trump promised that "my hand picked instructors and mentors will show you how to use real estate strategies to. . . start profiting today!"  ¶59(f).

- Donald Trump promised "ongoing support from your own Trump Team of Experts – you'll have what you need to succeed!"  *Id.*

- Donald Trump promised on his blog on the Trump University website, which each of the Plaintiffs viewed, to  play an "active role" in Trump University, that "I plan to do my part to help" Trump University students, and that "I plan to be an active presence in the curricula."  ¶59(h).

- Donald Trump promised that "My words, ideas and image will also be woven into the courses we create," and "I [will] answer your questions."  *Id.*

Moreover, Plaintiffs allege ***when*** these misrepresentations were made to each plaintiff. ¶¶18, 59, 133-142.  These representations were made to Tarla Makaeff at the $1,500 seminar in August 2007 (¶¶24, 61-62); to Brandon Keller in email advertisements on or about November 18, 2009 (¶¶25, 79); Patricia Murphy heard these representations in a radio or TV advertisement prior to January 27, 2007 (¶¶27, 76); and the representations were made to Ed Oberkrom in an advertisement in about February 2009, and during the $1,500 seminar he attended in February 2009 (¶¶26, 70). Plaintiffs also allege that each of these misrepresentations were made to the public and other Class Members.  ¶59.  Finally, the fraud and false promise claims incorporate the specific allegations set forth in the SAC.  ¶¶151-166.

Thus, the SAC alleges the fraud and misrepresentation claims with ""'specific enough'"" allegations ""'to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."""  *Kearns*, 567 F.3d at 1124.  Plaintiffs' misrepresentation, deceit and fraud claims should be upheld.

## G.   Plaintiffs Adequately Allege a Claim for Money Had and Received

Plaintiffs allege a claim against Donald Trump for money had and received on the grounds that Donald Trump improperly received money from Plaintiffs and Class Members as a result of his wrongful conduct, and that he will be unjustly enriched if he is allowed to retain these funds.  ¶¶130-131.  Donald Trump only devotes one sentence to rebutting this claim, arguing simply that Plaintiffs fail to sufficiently allege Donald Trump's wrongdoing.  However, as detailed herein, and in the SAC, Plaintiffs have specified Donald Trump's wrongdoing and participation in the scheme.  Therefore, Plaintiffs' money had and received claims should be upheld as to Donald Trump.

1

   **H.      Plaintiffs Adequately Allege Violations of New York General Business Law §349 Against Donald Trump**

2

   Plaintiffs respectfully refer the Court to §III.D. of Plaintiffs' Opposition to Trump

3

University's Motion to Dismiss which addresses this argument.

4

**V.      CONCLUSION**

5

   For the foregoing reasons, Plaintiffs respectfully submit that the Court should deny Donald J.

6

Trump's Motion to Dismiss in its entirety.  However, should the Court decide to grant any portion of

7

Defendant's motion, Plaintiffs respectfully seek leave to amend their Complaint.[8]

8

DATED:  March 7, 2011                        Respectfully submitted,

9

                                             ZELDES & HAEGGQUIST, LLP

10                                            HELEN I. ZELDES
                                             ALREEN HAEGGQUIST
11                                            AMBER L. ECK

12

13                                                    s/ Amber L. Eck
                                                     AMBER L. ECK

14

15                                            625 Broadway, Suite 906
                                             San Diego, CA  92101
16                                            Telephone:  619/342-8000
                                             619/342-7878 (fax)

17                                            ROBBINS GELLER RUDMAN
18                                              & DOWD LLP
                                             RACHEL L. JENSEN
19                                            655 West Broadway, Suite 1900
                                             San Diego, CA  92101
20                                            Telephone:  619/231-1058
                                             619/231-7423 (fax)

21                                            Attorneys for Plaintiffs and Proposed Class

22

23

24

25

26    ───────────────

27    [8]     *Moss v. United States Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) ("requests for leave
should be granted with 'extreme liberality'"; failure to dismiss "'"without leave to amend is
28    improper unless it is clear . . . that the complaint could not be saved by any amendment"'").

1

<u>CERTIFICATE OF SERVICE</u>

2       I hereby certify that on March 7, 2011, I authorized the electronic filing of the foregoing with

3   the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4   e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5   caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6   CM/ECF participants indicated on the attached Manual Notice List.

7       I certify under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct.  Executed on March 7, 2011.

9

10                                           s/ Amber L. Eck
                                            AMBER L. ECK

11                                          ZELDES & HAEGGQUIST, LLP
                                            625 Broadway, Suite 906
12                                          San Diego, CA  92101
                                            Telephone:  619/342-8000
13                                          619/342-7878 (fax)

14                                          E-mail:ambere@zhlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

611844_1

## Mailing Information for a Case 3:10-cv-00940-IEG -WVG

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Keith Schneider**
  dks@yslaw.com,dscardino@reedscardino.com,ewb@yslaw.com,mlokey@reedscardino.com,efb@yslaw.com,jjohnson@reedscardino.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)