David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535
Email:  dks@yslaw.com

Attorneys for Defendants TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 10 CV 0940 IEG (WVG)<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT DONALD J. TRUMP TO DISMISS SECOND AMENDED COMPLAINT UNDER RULES 12(b)(6), AND 9(b)<br><br>DATE:   March 21, 2011<br>TIME:    10:30 a.m.<br>CTRM:   1<br>JUDGE:  Hon. Irma E. Gonzalez |

After almost one year of litigation, the filing of two amended complaints, and numerous motions dealing with the pleadings, Plaintiffs still cannot clearly enunciate any viable cause of action against Donald J. Trump. Plaintiffs concede that Mr. Trump is not being sued as an alter ego of Trump University, nor is he being sued based on some sort of vicarious liability theory. Instead, Plaintiffs stress that Mr. Trump "is liable because he personally made misrepresentations and actively participated in the alleged misconduct." Plaintiffs' Opposition to Defendant Donald J. Trump's Motion to Dismiss Second Amended Complaint Under Rules 12(b)(6) and 9(b) ("Opposition") at 1:17-18. When asked what specific **mis**representations Mr. Trump personally made, Plaintiffs retreat and offer a completely amorphous response:  Mr. Trump "created, funded,

implemented, and benefitted from a scam." Opposition at 1:22. In other words, Plaintiffs still cannot point to any specific, actionable **mis**representations made by Mr. Trump.

Indeed, Plaintiffs' true motives for suing Mr. Trump are as transparent as they are improper. Plaintiffs baldly admit they are simply seeking a deep pocket: ". . . according to Plaintiffs' investigation, [Trump University] may soon be insolvent . . . However, such a consequence does not leave Plaintiffs and the Class without recourse; in accordance with a long line of authorities, Donald Trump may properly be held liable for the scam, too." Opposition at 13:8-11. However, the "long line of authorities" Plaintiffs refer to hold only that a corporate officer or director can be held liable for his own torts; it does not create any vicarious liability for corporate actions merely because the corporation may be insolvent. Opposition at 10-13.

If Mr. Trump is to be held liable for his own acts, Plaintiffs must adequately plead tortious conduct with specificity, including enough facts to show how these acts create liability under the claimed causes of action. Fed. Rule Civ. Proc. 9(b) and 8(a)(2). Since fraud is the central unifying theme of the entire case against Mr. Trump, Plaintiffs must satisfy the applicable provisions of the F.R.C.P. enforced in a case built on fraud. Not only have Plaintiffs failed to satisfy basic pleading requirements, but in many instances (discussed below) Plaintiffs simply ignore dispositive arguments and legal authority presented in Defendant's moving papers. Plaintiffs have failed to plead a single actionable wrongdoing on Mr. Trump's part, and this Motion should be granted.

**I.   PLAINTIFFS FAIL TO PROPERLY ALLEGE ANY CAUSES OF ACTION BECAUSE THEY CANNOT IDENTIFY A SINGLE ACTIONABLE MISREPRESENTATION MADE BY MR. TRUMP**

Despite Plaintiffs' apparent confusion, the parties agree on the essential law: an officer or director of a corporation is only liable for his own tortious conduct. *Francis T. v. Village Green Owners Assn.*, 42 Cal.3d 490, 503-04 (1986). Thus, Mr. Trump can only be liable for conduct which he actually undertook or directed. Plaintiffs have failed to identify the conduct that forms the basis of their causes of action other than vague generalizations that Mr. Trump financed a "scam." Such generalized allegations of "bad conduct" are insufficient to support any of Plaintiffs' causes of action. Plaintiffs do not cite a single case which holds someone liable because he provided the initial

capital of a corporation, or reviewed financial records of a corporation, or reviewed advertising for a corporation, or even a combination of those activities.

### A. Plaintiffs Allege No Viable Cause Of Action For Fraud Against Mr. Trump Because They Cannot And Do Not Allege Any False Statements Of Material Fact Made By Or At The Direction Of Mr. Trump

Plaintiffs are quite loose with the "facts" they allege, confusing representations about Mr. Trump's relationship with Trump University with alleged **mis**representations about Trump University made to consumers. In fact, Plaintiffs do not attribute a single **actionable** misrepresentation to Mr. Trump.

Plaintiffs present no authority to support their allegations that Mr. Trump can be liable for things other people said he said. Indeed, no such authority exists. To the extent that Plaintiffs' allegations are based on things **others** say Mr. Trump has said, these allegations cannot support a cause of action in fraud.

Similarly, the allegations of Mr. Trump's representations about his relationship with Trump University are not actionable, primarily because Plaintiffs do not allege that any of these representations were false. Mr. Trump did indeed found Trump University and was a spokesperson. Because, as Plaintiffs stress, there are no allegations of alter ego or agency, Mr. Trump's actual relationship with Trump University is largely irrelevant because only Mr. Trump's own **mis**representations can form a basis for his liability.

If Plaintiffs' allegations are meant to imply that Mr. Trump somehow misrepresented his relationship with Trump University, it is certainly not clearly alleged in the Second Amended Complaint. There is not a **single allegation** in the Second Amended Complaint that any statement Mr. Trump made about his relationship with Trump University was false, much less an allegation that Plaintiffs relied on any such statement to their detriment.

Thus, the only statements allegedly made by Mr. Trump which could be actionable would be any false statements about Trump University. Mr. Trump is alleged to have made the following statements:

- "Are YOU my next apprentice? Prove it to me."
- "It's the next best thing to being his apprentice."

- "I can turn anyone into a successful real estate investor."
- "[N]o course offers the same depth of insight, experience and support as the one bearing my name. . . ."
- "My hand-picked instructors and mentors will show you how to use real estate strategies to:[s]upplement or even replace your income, [s]ecure your long term financial future. . . ."
- "My father did it, I did it, and now I'm ready to teach you how to do it too."

As discussed in detail in Mr. Trump's moving papers, none of these statements, or the substantially similar ones Plaintiffs allege, are actionable **mis**representations made by Mr. Trump. Most of the statements are demonstrably true. For example, Mr. Trump's father and Mr. Trump both made their fortunes in real estate. Plaintiffs do not, and cannot, allege that these statements are false, and therefore the statements are not actionable.

Many others are not statements of fact, but rather statements of opinion, which are not actionable. For example, "no other course offers the same depth of insight," "I can turn anyone into a successful real estate investor," and "are you my next apprentice?" are plainly statements of opinion, sales talk and advertising slogans which simply are not actionable. *Smith v. Allstate Ins. Co.*, 160 F.Supp.2d 1150, 1154 (S.D. Cal. 2001); *see, also, Gentry v. eBay*, 99 Cal.App.4th 816, 835 (2002) (Internet auction provider's statement that its positive rating was "worth its weight in gold" was opinion that could not support action for misrepresentation). In *Allstate*, the court held that the statement that Allstate Insurance Company puts their insureds in "good hands" was not an actionable misrepresentation. The court made this finding because the term contains a judgment about quality. In fact, "sales talk and advertising slogans are examples of such non-actionable statements." *Allstate*, 160 F.Supp.2d at 1154.

The remainder of the statements refers to the potential money students might make by taking Trump University courses. However, Plaintiffs have repeatedly contended that they are **not** seeking damages because they were not successful as real estate investors. SAC, ¶8. Instead, they claim that the damages they seek are due to the quality of education provided by Trump University. How, then, can statements about being able to "supplement or even replace your income" possibly be

actionable? Ultimately, not a single statement attributed to Mr. Trump in the Second Amended Complaint is actionable.

Further, none of the cases cited by Plaintiffs support any finding of liability against Mr. Trump. These cases merely state the agreed-upon law: a corporate officer or director is not liable for the acts of the corporation unless he directly participates in the misconduct or directs that it be done. It is no coincidence that Plaintiffs have not simply alleged that Mr. Trump represented "X," "X" is not true; Plaintiffs relied on "X to their detriment and were damaged. All Plaintiffs can state are vague generalities about Mr. Trump's "association" with Trump University or that he "financed" Trump University or that he "reviewed" Trump University's financials.

As another example, Plaintiffs allege that Mr. Trump posted hundreds of blogs. But, **not once** do Plaintiffs cite a single blog which they contend contained a **mis**representation. In the absence of any clear, specific allegations of actionable misrepresentations by Mr. Trump, these causes of action must be dismissed.

**B.      Plaintiffs Fail To Allege Any Actionable Statutory Cause of Action Against Mr. Trump.**

As a preliminary matter, Plaintiffs concede that Plaintiff Oberkrom and Plaintiff Murphy have no statutory causes of action against Mr. Trump, as a matter of law. The UCL cannot regulate conduct unconnected to California. *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222-23 (1999). Federal courts in California agree. *See, e.g.*, *Utility Consumers' Action Network (UCAN) v. Sprint Solutions, Inc.*, 259 F.R.D. 484, 487 (S.D. Cal. 2009) (California law cannot be extended to non-resident plaintiffs suing for conduct which took place outside of California); *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1096 (N.D.Cal. 2006 (only California residents can sue to enforce the CLRA); *Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp.2d 1141, 1147 (C.D. Cal. 2005) (no UCL claims between non-residents based on non-California transaction). Plaintiffs Oberkrom and Murphy have never been (and do not allege to be) California residents and never attended any Trump University programs in California. Therefore, their statutory claims must be dismissed, as a matter of law.

Turning to Plaintiffs Makaeff and Keller, their causes of action fail for two reasons. First, the plain language of the CLRA statute requires a "transaction" between the parties. The line of

cases cited by Plaintiffs is completely inapplicable because they all involve manufacturers and foreseeable end-users; clearly there was a direct transaction between the manufacturer to the supplier to the consumer.  Here, Plaintiffs claim Mr. Trump is liable because he was "associated" with Trump University, or provided capital to Trump University, or reviewed Trump University's financial records or posted blogs about Trump University.  There is no dispute Plaintiffs entered a transaction with Trump University, but they never had any transaction with Mr. Trump.  Since Plaintiffs do not claim vicarious liability or allege alter ego, Plaintiffs must establish that some type of transaction occurred between Mr. Trump and the Plaintiffs, which Plaintiffs cannot do.  Plaintiffs have already conceded that they never contracted with Mr. Trump.  Despite Plaintiffs' <u>argument</u> that Plaintiffs and Mr. Trump had some type of "agreement," that is obviously impossible, since none of the Plaintiffs ever spoke with Mr. Trump or even met him.  Plaintiffs simply cannot meet the plain language requirement of the statute.

Second, however one parses the Second Amended Complaint, the gravamen of it, including the statutory causes of action, sounds in fraud.  While pleading and proof requirements may differ slightly between each of Plaintiffs' causes of action, each relies upon the premise that Trump University and/or Mr. Trump promised or represented something to Plaintiffs which was not delivered at all.  The fact remains that on their third try, Plaintiffs have yet to point to a <u>specific</u> promise or representation made by Mr. Trump, which Plaintiffs' relied upon, which was not delivered as promised.  For example, Plaintiffs were promised mentors; they received mentors.  Plaintiffs simply were not satisfied with the quality of their mentors.  There is not a single allegation in the Second Amended Complaint that any Plaintiff was denied a mentor.  Even Plaintiffs' allegation that they were "told" that the mentors were only paid for six hours time per student is insufficient, as there is no allegation that any Plaintiffs actually sought and were denied mentoring time past the alleged six hour limit.

In the end, the best Plaintiffs are able to do is to repeat amorphous and vague representations that they were promised a "quality" real estate education, and that the education they received was not of the promised "quality."  To the extent that Plaintiffs allege specific promises, such as a three

day seminar on buying foreclosures, they do not allege that they did not actually receive what was promised. In fact, Plaintiffs admit that they did attend a three-day seminar.

What is notable is what Plaintiffs do not allege: they do not allege that Mr. Trump himself promised a three day seminar; if anyone did, it was Trump University. There is no allegation that the three day seminar was advertised in any of the advertisements allegedly "controlled" by Mr. Trump. The three day seminar was introduced as part of the previous seminars by Trump University presenters. While Plaintiffs allege that the presenters used prepared scripts, there is no allegation that Mr. Trump wrote the script, approved the script, or was even aware of the contents of the script. There are absolutely no facts alleged supporting an inference that Mr. Trump in any way participated in or controlled the purported falsification of student testimonials or student signatures. Plaintiffs' artful argument in Opposition to this Motion cannot hide these weaknesses in the Second Amended Complaint. The improperly pled fraud allegations should be dismissed.

**C. Plaintiffs Fail To Allege Any Cause Of Action For Violation Of New York General Business Law Because They Cannot And Do Not Allege That Any Transaction Took Place In The State Of New York**

Plaintiffs simply ignore the clear language in the controlling New York cases on the issue and the facts of this case. Plaintiffs' cause of action under New York law fails not only because none of the Plaintiffs were residents of New York at the operative time, but also because the transaction complained of did not take place in New York. The one limited exception allows non-residents the protection of the New York General Business Law section 349 when the transaction took place in New York. *Spitzer v. Telehublink*, 301 A.D. 2d 1006, 1009 (N.Y. App. 2003) (the court found that the defendant "complete[d] the deceptive transaction" in New York).

In the *Gunther* case cited by Plaintiffs, the New York law applied only because the out-of-state deception regarding ATM fees led to a related action in New York — the plaintiff withdrew money from ATMs in New York, leading to the imposition of the improper fees. *Gunther v. Capital One, N.A.*, 703 F.Supp.2d 264, 276 (E.D.N.Y. 2010). In *Wiener*, a New Jersey resident contracted in New York for an insurance policy whose benefits were paid in New Jersey. Even though the contract was executed in New York, the court declined to apply section 349, finding that the plaintiff was a New Jersey resident and received benefits in New Jersey, and therefore failed to plead that the

1  transaction took place in New York. *Wiener v. Unumprovident Corp.*, 202 F.Supp. 2d 116, 120
2  (S.D.N.Y. 2002).

3  It is **not** enough to merely allege that a defendant's principal place of business is in New
4  York, or that the scheme "originated" in New York. *Goshen v. Mutual Life Ins. Co. v. New York*, 98
5  N.Y. 2d 314, 324 (2002); see also *Mayfield v. Gen. Elec. Capital Corp.*, 1999 WL 182586 *10
6  (SDNY March 31, 1999). Plaintiffs' allegations that the Trump University ads originated in New
7  York because Trump University has a New York address do not support a claim that New York law
8  applies. *Goshen*, 98 N.Y. 2d at 324.

9  In this case, there is no allegation that any transaction occurred in New York. Instead, a non-
10 New York resident, Plaintiff Murphy, contracted in Pennsylvania to attend seminars in Pennsylvania
11 and Florida.[1] The fact that seminars were also available in New York, or that Murphy read about
12 them in the New York Post, is completely irrelevant. **No part of the transaction was**
13 **accomplished in New York**. Under Plaintiffs' logic, New York General Business Law section 349
14 would protect everyone across the country who simply read the New York Post, even if they never
15 attended a Trump University program in New York, or even had been to New York, for that matter.
16 Thus, in the absence of any allegations that the transaction occurred in New York, there is no cause
17 of action stated under New York law for any of the Plaintiffs.

18 **II.    PLAINTIFFS SEEM TO CONCEDE THAT THEIR FRAUD AND STATUTORY**
        **CLAIMS AGAINST MR. TRUMP MUST BE DISMISSED UNDER RULE 9(b)**
19

20 Plaintiffs completely disregard the clear mandate of Ninth Circuit law, which requires a
21 plaintiff suing multiple defendants to differentiate their allegations against each defendant, rather
22 than lumping them together. *Cisneros v. Instant Capital Funding Group, Inc.*, 263 F.R.D. 595, 606-
23 07 (E.D. Cal. 2009). For example, in the portion of the Second Amended Complaint setting forth
24 Plaintiffs' factual allegations, Plaintiffs claim that Trump University falsified testimonials and
25 student signatures. In setting forth their causes of action, however, Plaintiffs allege that these acts

---

[1] Although Murphy alleges that she currently lives in New York, she does not allege that she lived in New York during the relevant time period. Indeed, she was not a New York resident when she took the real estate courses she took (which were not even Trump University courses).

were undertaken by "Defendant<u>s</u>," which apparently includes Mr. Trump. Defendant clearly raised the issue in its moving papers yet Plaintiffs once again completely <u>ignored</u> it. It is inconceivable that Plaintiffs actually are alleging that Mr. Trump personally falsified student signatures, or even ordered others to do so. The allegations are deficient as a matter of law.

As stated above, virtually all of Plaintiffs' claims against Mr. Trump are based on fraud. F.R.C. P. 9(b) requires specificity and individually <u>separate</u> allegations for each defendant. Defendant seeks to have the requirements of Rule 9(b) enforced in a case built on fraud.

### III.  CONCLUSION

After having taken three bites of this apple, it is unlikely that Plaintiffs could possibly amend their complaint to properly allege any sufficient cause of action against Mr. Trump. Plaintiffs still cannot specifically identify any actionable **mis**representation made by Mr. Trump.

Two of the four Plaintiffs do not meet the mandatory California residency requirements of the statutory claims, and therefore Plaintiffs Oberkrom and Murphy's statutory claims are barred as a matter of law. The remaining two Plaintiffs meet the residency requirements but have not satisfied the plain language requirements of the statute nor identified any specific violation by Mr. Trump.

Finally, the New York statutory claim also fails as a matter of law because no Plaintiff satisfies the basic requirement that the "act" must occur <u>in</u> New York.

Therefore, Mr. Trump respectfully requests that the causes of action against him be dismissed under Rules 12(b)(6) and 9(b), without leave to amend.

Respectfully submitted,

Dated:   March 14, 2011          YUNKER & SCHNEIDER

By:   s/ David K. Schneider
Attorneys for Defendants and Counterclaimant
TRUMP UNIVERSITY, LLC and DONALD J. TRUMP
E-mail: dks@yslaw.com