1

2
ROBBINS GELLER RUDMAN
& DOWD LLP
RACHEL L. JENSEN (211456)
3 rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
4 tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
5 San Diego, CA 92101
Telephone: 619/231-1058
6 619/231-7423 (fax)

7 ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
8 ambere@zhlaw.com                          YUNKER & SCHNEIDER
HELEN I. ZELDES (220051)                  David K. Schneider (139288)
9 helenz@zhlaw.com                          dks@yslaw.com
ALREEN HAEGGQUIST (221858)                655 W. Broadway, Suite 1400
10 alreenh@zhlaw.com                         San Diego, CA 92101
625 Broadway, Suite 906                   Telephone: 619/233-5500
11 San Diego, CA 92101                       619/233-5535 (fax)
Telephone: 619/342-8000
12 619/342-7878 (fax)
                                           Attorneys for Defendants
13 Attorneys for Plaintiffs and Proposed Class

14

15                    UNITED STATES DISTRICT COURT

16                  SOUTHERN DISTRICT OF CALIFORNIA

17 TARLA MAKAEFF, et al., on Behalf of      )   No. 3:10-cv-00940-IEG(WVG)
   Themselves and All Others Similarly Situated, )
18                                          )   CLASS ACTION
                             Plaintiffs,    )
19                                          )   JOINT DISCOVERY PLAN
            vs.                             )
20                                          )   CMC Date:    October 7, 2011
   TRUMP UNIVERSITY, LLC, et al.,           )   Time:        7:00 a.m.
21                                          )   Judge:       Hon. William V. Gallo
                             Defendants.    )   Location:    Telephonic
22 _____ )

23

24

25

26

27

28

648085_1

Pursuant to Federal Rule of Civil Procedure 26(f) and this Court's August 15, 2011 Order following the Early Neutral Evaluation (Dkt. No. 80), the parties, by and through their respective counsel of record, respectfully submit the following joint discovery report. The parties' counsel met in person to discuss the items required under Rule 26(f) and this Court's August 15, 2011 Order on August 31, 2011.

The parties have attempted to reach agreement on how best to manage this case and hereby set forth the matters on which they agree and express their respective views where they differ.

## I.  PLAINTIFFS' STATEMENT OF THE CASE

This is a putative class action brought by consumers who enrolled in Trump University real estate investing seminars hoping to "Learn from the Master" Donald Trump, but instead "learned a different lesson than they bargained for." Order Granting in Part and Denying in Part Defendant Donald Trump's Motion to Dismiss, dated May 16, 2011 (Dkt. No. 69) ("Trump Order"); Order: (1) Granting in Part and Denying in Part Trump University's Motion to Dismiss; and (2) Denying Trump University's Motion to Strike, dated May 16, 2011 (Dkt. No. 70) ("University Order").

Trump University markets itself as a university driven by the mission to "train, educate and mentor entrepreneurs on achieving financial independence through real estate investing." It is anything but. In fact, rather than serving its students as a university or college, Trump University is more like an infomercial, designed to sell Trump seminars and products, instead of providing training in real estate. Trump University and Donald Trump lure consumers in with Donald Trump's name and reputation, and promise students mentors and experts "hand-picked by Donald Trump." But as these students quickly find out, the primary lesson Trump University teaches its students is how to spend more money buying more Trump University seminars. The purpose of the free introductory seminar is to get people to sign up for the $1,495 seminar; the purpose of the $1,495 seminar is to get people to sign up for the $35,000 Trump University Gold program, and the purpose of the Trump Gold Program is to get people to sign up for additional seminars, products and books.

Donald Trump, as founder and Chairman of Trump University, is personally liable due to his public misrepresentations and omissions about Trump University and his participation in the misconduct. As the face, voice and brand of Trump University, Donald Trump appeared on the

1  Trump University website and in advertisements, and on huge banners at the seminars.  The website

2  contained headings such as "Learn from the Master," and "Are YOU My Next Apprentice?  Prove it

3  to me!"  In some instances, the advertisements took the form of personal letters signed by Donald

4  Trump himself.  In one letter Trump stated: "I founded Trump University back in 2005 to teach go-

5  getters how to succeed in real estate.  We're the best of the best and we know what works."  In

6  another letter, Trump stated: "My handpicked instructors and mentors will show you how to use real

7  estate strategies. . . ."  However, Trump and his namesake failed to provide the services promised

8  and instead pocketed the tens of thousands of dollars Plaintiffs spent on the Trump seminars.

9       Plaintiffs brought this putative class action to recover the ill-gotten gains from Trump and his

10  so-called University on behalf of both themselves and all those similarly situated nationwide.

11  **II.     DEFENDANTS' STATEMENT OF THE CASE**

12       Defendant Trump University, LLC ("Trump University") is a New York for-profit company

13  which offered self-improvement seminars, training, mentoring and other programs for people

14  interested in learning about — and hopefully profiting from — real estate and financial investment.

15  It provided both online and in person programs nationwide, with several levels of involvement, cost,

16  and commitment available to participants.

17       The four named plaintiffs are a diverse group located by class counsel after a nationwide

18  publicity blitz and recruiting effort.  Plaintiffs' current claim is that the programs provided no value

19  to participants, and plaintiffs attack Trump University's business practices.  Plaintiffs filed their

20  claim as a putative "nationwide class action" on behalf of every person who ever participated in a

21  Trump University program — regardless of which programs were attended, or how many were

22  attended, or where they were taught, or when they were taught, or what they were taught, or who

23  taught them, or how much they paid, or what their background was, or what result they achieved, or

24  whether they were ultimately satisfied with what they learned.  Plaintiffs seek to recover all fees paid

25  by any person who ever participated in the program at any time anywhere in the country, despite the

26  fact that the vast majority of participants actually enjoyed and benefited from their experience.  In

27  fact, of all the participants who provided written evaluations, 95% of them — including two

28

1  plaintiffs — rated the programs "excellent," and 99% of all those participants — including two

2  plaintiffs — said they would recommend and would attend more seminars.

3  After litigating this case for more than six months, Plaintiffs named Donald Trump

4  personally as a defendant.  The ostensible reason is that his name and testimonials were used to

5  market Trump University's programs.  The real reason, as candidly admitted by class counsel, is

6  their concern that Trump University has financial difficulties.  Consequently, they named Mr. Trump

7  in hopes of keeping a deep pocket in the case.

8  There are two sets of defenses in the case: those personally against the four named Plaintiffs,

9  and those against the putative class.  The defenses against the named Plaintiffs turn on their

10  individual experiences with Trump University – all radically different, but none remotely consistent

11  with their current claims.

12  Original plaintiff **Tarla Makaeff** attended Trump University programs for about ten months,

13  paying about $36,500.  During that time, she filled out multiple written evaluations and videotaped a

14  personal testimonial in which she said the programs were "excellent," "amazing," and "nothing

15  could be improved," and she would attend more and recommend them to others.  She then entered

16  into a real estate deal, got into financial difficulties unrelated to Trump University and demanded

17  that her partner buy her out (he did, and then went on to profit from the deal).  Meanwhile, Ms.

18  Makaeff demanded her money back from Trump University, accepted more mentoring instead, then

19  changed her mind again and threatened to "go public" and to "go to whatever lengths to obtain my

20  money back."  This included accusing Trump University of criminal acts in a letter-writing

21  campaign to her bank and the Better Business Bureau, and through statements to others through

22  Internet postings.  Her extortionate smearing persisted to the point that the company counterclaimed

23  against her individually for defamation.  That counterclaim was upheld by the Court against

24  Ms. Makaeff's SLAPP Suit motion, and found to have a probability of success on the merits.

25  Plaintiff **Brandon Keller** attended one Trump University program in San Diego for about

26  $1,500, and rated it "excellent" and "the best real estate training I have gone to."  He then signed up

27  for more programs.  However, when Trump University learned that Mr. Keller was not authorized by

28  his parents to incur expenses of additional programs on his credit card, the company promptly and

1   voluntarily refunded the full amount.  Since then, Mr. Keller has signed up for and attended yet more

2   programs, even <u>after</u> joining in this lawsuit.

3        Plaintiff **Ed Oberkrom** attended Trump University programs in Missouri with a partner –

4   with each paying $12,500.  He evidently never demanded a refund, nor attempted any real estate

5   transactions.  Meanwhile, his partner has taken still more Trump University programs and rated them

6   "excellent."

7        Finally, plaintiff **Patricia Murphy** — now living in New York — has never attended any

8   Trump University program anywhere.  Presumably she will soon be dropped from the case.

9        The defenses against the putative class include, among other reasons, a total lack of

10  commonality among Trump University attendees.  Indeed, the only truly common characteristic of

11  virtually all Trump University participants is fatal to the putative class: that almost all invariably

12  enjoyed and approved of the company's programs.  Plaintiffs also purportedly — and improperly —

13  seek a "nationwide" certification on claims limited to California, including their UCL and CLRA

14  causes of action.

15  **III.    DISCOVERY PLAN**

16        **A.    Initial Disclosures Pursuant to Rule 26(a)(1)**

17        Pursuant to the Court's August 15, 2011 Order, the parties will serve their initial disclosures

18  on September 19, 2011.

19        **B.    Anticipated Subjects of Discovery**

20             **1.    Plaintiffs' Proposal**

21                  **a.    Subjects on Which Discovery Is Needed**

22        Plaintiffs intend to seek discovery regarding, among other things: (i) Defendant Donald

23  Trump's involvement and role in Trump University and misrepresentations and omissions about

24  same; (ii) misrepresentations and omissions concerning Trump University to consumers, including

25  all contracts, advertisements, blog postings, websites, and marketing materials; (iii) the credentials of

26  instructors and mentors, the selection process for same, and all contracts with instructors and

27  mentors; (iv) scripts, playbooks, forms, and all other written materials used in Trump University

28  workshops, seminars, and courses, or used by Trump University instructors, representatives, or

1   mentors; (v) Trump University's credentials and statements concerning same; (vi) summaries,

2   memoranda, spreadsheets, reports, telephone call logs or audio recordings regarding customer

3   complaints and/or requests for refunds and communications with Trump University students;

4   (vii) customer service call scripts; (viii) any inquiry or investigation by the Better Business Bureau

5   or any governmental agency regarding Trump University; (ix) identification of class members and

6   number of consumers who paid for Trump University products and services, by product or service;

7   (x) Defendants' revenues, profits, liabilities, assets, and net worth, which are directly related to

8   whether a Rule 23(b)(1) class should be certified in this case due to a limited fund; (xi) information

9   about which products and services were offered in which states during what timeframe; (xii) Trump

10  University's "curriculum" and the process for developing same; (xiii) organizational charts and

11  information and documents sufficient to identify every current and former employee of Trump

12  University, and their role and involvement in same; (xiv) information and documents concerning any

13  ongoing activities of Trump University; and (xv) all communications with the named Plaintiffs.

14              **b.       Identity of Possible Deponents**

15      Possible deponents include Defendants and their current and former officers, management

16  personnel, employees, and independent contractors of Trump University, including but not limited

17  to: Donald Trump, Michael Sexton, those persons involved in the creation of Trump University's

18  marketing and advertising; seminar and course materials, "Playbooks," and scripts; instructors and

19  mentors; and persons with knowledge of consumer complaints.  Plaintiffs will also seek to depose

20  third parties with knowledge concerning any governmental or nongovernmental investigation into

21  Trump University.

22              **c.       Whether Discovery Should Be Conducted in Phases**

23                  **(1)       Bifurcation of Class and Merits Discovery**

24      All the parties appear to agree in principle that no formal bifurcation of class certification and

25  merits discovery is necessary or appropriate in this case.  Specifically, Plaintiffs believe that the

26  overlap between class and merits discovery in this case is such that bifurcation would lead to

27  needless litigation over the distinction between the two, and inefficiencies in the discovery process.

28

1   Further, Defendants appear to take the position that they should be able to take merits discovery of

2   the Plaintiffs immediately and not be limited to class discovery in the first instance.

3       As previewed at the Rule 26(f) conference, contrary to the mandate of Fed. R. Civ. P. 1, if

4   discovery were bifurcated, the parties would waste time and resources debating and litigating the

5   distinction over what is "class discovery" versus "merits discovery" due to the intermingling of

6   merits and class certification issues here.  *See Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D.

7   Cal. 1990) ("An order restricting discovery to class issues would be impracticable because of the

8   closely linked issues, and inefficient because it would be certain to require ongoing supervision of

9   discovery."); *Manual for Complex Litigation, Fourth*, §§11.213 (2007) (class and merits discovery

10  should "proceed concurrently if bifurcating class discovery from merits discovery would result in

11  significant duplication of effort and expense to the parties").  For this reason, many courts, including

12  this District, routinely allow class and merits discovery to proceed simultaneously because it is more

13  efficient, less duplicative, and leads to far fewer discovery battles over whether certain discovery

14  requests are proper class certification requests or improper merits requests.  *See, e.g.*, *Tourgeman v.*

15  *Collins Fin. Servs., Inc.*, No. 08-CV-1392-JLS (NLS), 2010 WL 3386009, at *2 (S.D. Cal. Aug. 26,

16  2010) ("[M]erits based discovery shall proceed at the same time as class certification discovery");

17  *Campion v. Old Republic Home Protection Co.*, No. 09-CV-748-JMA (NLS), 2011 WL 42759 (S.D.

18  Cal. Jan. 6, 2011) (allowing merits and class discovery to proceed simultaneously).

19      This is particularly true in light of the Supreme Court's decision in *Wal-Mart Stores, Inc. v.*

20  *Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551-52 (2011), which requires courts to conduct a "rigorous

21  analysis" to ensure that the prerequisites of Rule 23(b) are satisfied, which may "entail some overlap

22  with the merits of the plaintiff's underlying claim."  In declining to bifurcate class and merits

23  discovery in *Barnhart*, Magistrate Judge Moulds held it was "not the time to determine whether a

24  class would be certified," and that he would not be ruling on class certification – the district judge

25  would be – and "it is this court's duty to permit the parties to give the district court ***all*** information

26  that the district court ***might*** find relevant in making a class action determination."  *Barnhart v.*

27  *Safeway Stores, Inc.*, No. CIV. S-92-0803WBS JFM, 1992 WL 443561, at *3 (emphasis in original).

28

1       The likely discovery disputes to follow bifurcation are foreshadowed by cases such as

2  *Yingling v. Ebay, Inc.*, No. C09-CV-1733 JW (PVT), 2010 WL 373868 (N.D. Cal., Jan. 29, 2010), a

3  class action in which Cooley Godward represented defendant Ebay, and discovery was bifurcated.

4  Cooley Godward objected to ***every*** discovery request served, and their primary objection was that the

5  discovery sought was "merits" rather than "class" discovery. *Id.* at *3; *see also Yingling v. Ebay*,

6  No. C09-CV-1733 JW (PVT), 2009 WL 6326771 (N.D. Cal. Dec. 17, 2009).  Plaintiff asked the

7  Court to remove the bifurcation, arguing it was "unworkable and inefficient."  *Id.* at *6.  The

8  Magistrate Judge held the request needed to be made to the District Judge who entered the

9  Scheduling Order, but meanwhile was required to go through every discovery requests at issue to

10  ascertain whether it was "merits-based" or "class-based," which was not an easy task, in light of the

11  fact that "discovery can certainly be relevant both to class certification issues and to the merits." *Id.*

12  at *11 (citing *Ho v. Ernst & Young,* LLP, 2007 WL 1394007 (N.D. Cal. 2007)).

13       Here, Plaintiffs maintain that bifurcating discovery into class and merits discovery is likely to

14  lead to unnecessary disputes and to be duplicative.  Further, it is clear that Defendants wish to take

15  the depositions of Plaintiffs early in the proceedings, and Plaintiffs will not agree to sit for deposition

16  twice – as such, if Defendants wish to take their depositions early on the merits, bifurcation will not

17  be a workable rubric in this case.  Similarly, Plaintiffs wish to take the depositions of Defendants,

18  including Defendant Donald Trump, and if Defendant does not wish to be deposed twice, Plaintiffs

19  should not be limited to class issues alone.  Finally, as the financial condition of Defendants appear

20  to be an issue in this case, Plaintiffs believe that time is the essence in the prosecution of their case

21  and thus request that the Court permit the parties to conduct class certification and merits discovery

22  simultaneously to allow expeditious handling of this lawsuit.

23       For all these reasons, Plaintiffs respectfully urge the Court to reconsider its decision at the

24  ENE to bifurcate discovery, and instead allow discovery to proceed in a single phase as per the scope

25  allowed under Rule 26.

26

27

28

**(2)     Plaintiffs' Response to Defendants' Staged
Discovery Proposal**

Defendants propose staged discovery with written discovery to take place first, Plaintiffs Makaeff and Keller depositions to be held beginning December 15, 2011 and the depositions of the remaining Plaintiffs and all Defendants' witnesses stayed until March 1, 2012. Plaintiffs see no reason why Defendants should be entitled to take Plaintiffs' depositions before Plaintiffs have any opportunity to depose Defendants. Plaintiffs' proposal is that discovery proceed as it generally does, without any staging or a stay on Plaintiffs' deposition discovery of Defendants. A stay on Plaintiffs' ability to take deposition testimony of Defendants lacks any basis in the Rules of Civil Procedure or caselaw and can only be interpreted as an attempt of Defendants to seek a strategic advantage and prejudice Plaintiffs' ability to prepare for the filing of their class certification motion.

**2.     Defendants' Proposal**

**a.     Subjects on Which Discovery Is Needed**

Defendants intend to conduct discovery regarding, among other items: (i) plaintiffs' contracts and other agreements with defendants; (ii) communications between plaintiffs and defendants, and information and materials received by plaintiffs at Trump University programs; (iii) plaintiffs' participation in defendants' and like programs and application of information and materials, including transactions; (iv) plaintiffs' background, experience and training, including in real estate, investments, workshops and other programs; (v) complaints and postings and/or interactions with any non-defendant entities concerning defendants; (vi) communications with current and former defendant employees; (vii) factual, witness and documentary support for each of plaintiffs' causes of action in the operative complaint; and (viii) communications with Trump University attendees or putative class members. Trump University also intends to conduct discovery related to its Counterclaim after plaintiff Makaeff's appeal is resolved.

**b.     Identity of Possible Deponents**

Defendants currently intend to take the following depositions: (i) named plaintiffs; (ii) Michael Bahr; (iii) Mr. Keller's parents; and (iv) Ms. Makaeff's partners (business investing, and mentoring). Depending on plaintiffs' claims and evidence, defendants may also take the depositions

1 of: (i) former defendant employees; and (ii) certain attendees and/or putative class members.

2 Possible third-party deponents include representatives of other programs, companies, and workshops

3 attended by plaintiffs.

4                          **c.       Sequence of Discovery**

5        Defendants request that the Court set a general sequence of depositions to avoid the likely

6 dispute as to which party goes first.

7        Defendants request to take the two local lead plaintiffs' depositions first (Ms. Makaeff and

8 Mr. Keller) because defendants still have limited information about many of plaintiffs' claims.  For

9 example, plaintiffs still have not yet identified the terms of the purported oral contract they claim

10 they had with defendants.  Similarly, plaintiffs have not identified the specific advertisements they

11 claim were fraudulent or the specific representations they claim Mr. Trump made which were false.

12 In her May 16, 2011 Order, the Court stated that plaintiffs can provide that information in discovery.

13 The two out-of-state plaintiffs, defendants and third-party depositions can follow in any order at any

14 time.

15        This proposed sequence will allow defendants to understand plaintiffs' claims first so they

16 can prepare their defenses and then allow plaintiffs to conduct discovery of the defenses and respond

17 to defendants' motion for summary judgment, as discussed below.

18        Plaintiffs have completely mischaracterized defendants' proposed discovery schedule.

19 Defendants never requested "staged discovery" nor a "stay on defendants' discovery until March 1,

20 2012."  Plaintiffs' representation to the Court is particularly troubling because plaintiffs' counsel

21 asked for clarification on this issue and defendants provided it, in writing, stating that the proposed

22 schedule requires defendants to be available for deposition no later than 3/1/12.  It does not propose

23 a stay on discovery.  Actually it does just the opposite.  Plaintiffs can take defendant depositions

24 whenever they want — before or after 3/1/12.  Defendants only request that the depositions of the

25 two local named plaintiffs take place first.

26

27

28

IV.   **ELECTRONICALLY-STORED INFORMATION**

   **A.     Plaintiffs**

   The parties have agreed to discuss a protocol for discovery and preservation of electronically-stored information ("ESI").

   However, Plaintiffs are concerned there is a risk that Defendants have not preserved all relevant ESI and documents in this case because Defendants have refused to confirm that they placed a litigation hold on relevant documents and preserved relevant evidence.  As this Court is aware, spoliation of relevant evidence is a serious infraction subject to sanctions.  As such, Plaintiffs respectfully request that Defendants should be compelled to state whether or not they placed a timely written litigation hold on relevant evidence relating to the putative class claims at issue in this case, and that the hold has been communicated to the appropriate parties.

   **B.     Defendants**

   Defendants anticipate that counsel will be able to coordinate scheduling issues without much Court intervention.  Defendants do request that plaintiffs make lead and local plaintiffs Makaeff and Keller available first for deposition.

   Defendants object to plaintiffs' counsel's mischaracterization of the issue and their attempt to paint defendants or their counsel in a bad light.  The actual facts are as follows:  During counsel's meet and confer, plaintiffs' counsel asked defense counsel to disclose what he advised his clients about their obligations regarding document retention.  Defense counsel responded that he would <u>not</u> disclose communications with his clients but that defendants <u>would</u> comply with their obligations under the Code.  Plaintiffs' counsel then stated that she would advise the Court that defendants "refused to confirm that they had placed a litigation hold on relevant documents and preserve relevant evidence," which was untrue and defense counsel stated so at the time.

V.    **PRIVILEGE PROCEDURE**

   The parties have agreed upon a procedure for asserting privilege.  Specifically, any party that withholds documents on the basis of privilege shall serve a privilege log that complies with the requirements of Federal Rules of Civil Procedure within 14 days after serving their responses to the document request to which the privilege was asserted.  Thereafter, the parties will meet and confer in

1   a good faith attempt to resolve any differences.  If the parties cannot agree upon resolution, the party

2   challenging the privilege designation will seek this Court's assistance in resolving any outstanding

3   dispute according to the procedures set forth in this Court's standing orders.

4   **VI.   SCOPE OF DISCOVERY REQUESTS**

5       **A.   Plaintiffs**

6           **1.   Depositions**

7       Plaintiffs propose that the parties coordinate with each other to identify, schedule, and

8   examine witnesses at deposition.  Plaintiffs propose that the limits on the number of depositions

9   imposed by the Federal Rules of Civil Procedure and Local Rules shall not apply in this matter

10   subject to the limitations set by the Court.

11       Plaintiffs request permission to take up to 20 depositions of Defendants without leave of

12   Court.  For good cause shown, Plaintiffs may seek additional depositions from the Court should they

13   believe in good faith that an additional deposition may provide necessary discovery.

14           **2.   Third-Party Discovery**

15       Plaintiffs intend to conduct third-party discovery of (i) the Better Business Bureau; (ii) New

16   York Attorney General's Office, (iii) Texas Attorney General's Office, (iv) Florida Attorney

17   General's Office; (v) all other governmental agencies that have launched an investigation into Trump

18   University; and (vi) current and former instructors and mentors of Trump University.  Plaintiffs

19   propose that they should be permitted to take a total of 15 depositions of non-parties, excluding

20   expert depositions.

21           **3.   Interrogatories**

22       Plaintiffs request that the parties have permission to serve upon the other side collectively 75

23   interrogatories.

24       **B.   Defendants**

25           **1.   Depositions**

26       Defendants object to plaintiffs' request for 35 depositions, including 20 defendant

27   depositions, without leave of court.  Defendants request that plaintiffs initially be limited to 10

28   defendant depositions without leave of Court.  In the event plaintiffs can show good cause for more

1  than 10 defendant depositions, plaintiffs can seek leave to request additional depositions of

2  defendants.

3  **2.   Third Party Discovery**

4  Defendants object to plaintiffs' request for 15 depositions of non-parties.  Defendants request

5  that plaintiffs initially be limited to 5 non-party depositions without leave of Court.  In the event that

6  plaintiffs can show good cause, plaintiffs can request additional depositions of non-parties.

7  **3.   Interrogatories**

8  Defendants object to plaintiffs' request for 75 interrogatories.  Defendants request that the

9  Court limit each side to 50 interrogatories without leave of court.

10  **VII.   WITNESSES**

11  **A.   Plaintiffs' Witnesses**

12  Possible witnesses include plaintiffs Tarla Makaeff, Ed Oberkrom, Brandon Keller and

13  Patricia Murphy, defendants Donald Trump, Michael Sexton, George Sorial, Alan Gartan,

14  Defendants' current and former employees including investors, members of the advertising and/or

15  marketing departments, Trump University instructors and mentors, and the following third parties:

16  the Better Business Bureau, New York Attorney General's Office, Texas Attorney General's Office,

17  Florida Attorney General's Office and any other governmental or non-governmental agency that has

18  investigated Trump University.

19  **B.   Defendants' and Counterclaimant's Witnesses**

20  Possible witnesses include plaintiffs Tarla Makaeff, Ed Oberkrom, Brandon Keller and

21  Patricia Murphy, Mr. Bahr, Mr. Keller's parents, Ms. Makaeff's various partners in programs,

22  investments and mentoring, defendants, current and former employees of defendants, Trump

23  University attendees, and mentors of Trump University programs.  Third party witnesses may

24  include:  representatives of other companies, programs and workshops attended by plaintiffs,

25  representatives of plaintiffs' banks and BBB representatives.

26

27

28

# VIII.   CATEGORIES OF DOCUMENTS

## A.   Plaintiffs' Proposal

Plaintiffs believe that key categories of documents will include, but are not limited to the following:

1.   Class list of all persons who have taken Trump University courses or seminars, description of the course taken, dates of the course, and their contact information;

2.   A list or documents evidencing amount paid by every person who has taken Trump University courses or seminars;

3.   Documents regarding any and all partial or full refunds given for Trump University seminars or courses, including whether the refund was awarded by the consumer's credit card company or Trump University, and the basis or reason for the refund;

4.   Documents demonstrating Defendant Donald Trump's involvement and role in Trump University and misrepresentations and omissions about same;

5.   Documents containing representations concerning Trump University and its products and services to consumers, including but not limited to, all contracts, advertisements, blog postings, websites, and marketing materials;

6.   All evaluations completed by students in regard to Trump University courses or seminars;

7.   Documents demonstrating the credentials of instructors and mentors, the selection process for same, and all contracts with instructors and mentors;

8.   Scripts, Powerpoint presentations, playbooks, forms, and all other written materials used in Trump University workshops, seminars, and courses, or used by Trump University instructors, representatives, or mentors;

9.   Documents demonstrating Trump University's credentials and public statements concerning same;

10.   Summaries, memoranda, spreadsheets, reports, telephone call logs or audio recordings regarding customer complaints and/or requests for refunds and communications with Trump University students;

11.     Customer service call scripts;

12.     Documents reflecting any communications with, inquiry or investigation by the Better Business Bureau or any governmental agency regarding Trump University;

13.     Documents demonstrating the number of consumers who paid for Trump University products and services, by product or service and how much they paid;

14.     Documents demonstrating Defendants' revenues, profits, liabilities, assets, and net worth;

15.     Documents containing information about which Trump University products and services were offered in which states during what timeframe;

16.     Documents reflecting all monies paid from Trump University to Donald Trump, whether directly or indirectly;

17.     Documents reflecting Trump University's "curriculum" and the process for developing same;

18.     Organizational charts and documents sufficient to identify every current and former employee of Trump University, and their role and involvement in same;

19.     Documents concerning any ongoing activities of Trump University;

20.     Documents containing all communications with, or about, the named Plaintiffs, their partners (if any) in the Trump University seminars, and/or their parents;

21.     Documents concerning the relationship between Trump University and Trump Institute; and

22.     Financial worksheets completed by consumers during seminars and all contracts signed by consumers for Trump University seminars.

**B.     Defendants' Proposal**

1.     Documents which support each of the allegations, claims and causes of action in plaintiffs' operative complaint.

2.     Documents reflecting plaintiffs' contracts and agreements with defendants.

3.      Documents reflecting plaintiffs' participation in defendants' programs and application of information and materials, records of payment, refund requests and responses from defendants or third parties.

4.      Trump University materials received, reviewed or purchased by plaintiffs at any workshops, seminars, programs or courses.

5.      Documents reflecting plaintiffs' background, experience and training, including in real estate investments, workshops and other programs.

6.      Documents supporting each of plaintiffs' damage claims.

7.      Documents, blogs, Internet postings or other writings by plaintiffs regarding defendants.

8.      Documents reflecting BB&B postings and ratings regarding defendants, and any complaints or criticisms of defendants in any forum.

9.      Documents reflecting credit issues, including plaintiffs' claim of damage to credit, interest fees, late payments, and defendants purportedly misusing credit information.

10.     Documents reflecting Plaintiff Makaeff's financial problems referenced in her letters to defendants and third parties.

11.     All journals, calendars, diaries or other writings regarding defendants and/or contact with them or instructors/mentors, as well as contacts, meetings or other communications between plaintiffs and defendants.

12.     All communications to/from current or former employees and/or attendees or putative class members.

13.     All statements, declarations or affidavits of current or former employees or attendees of Trump University.

14.     All real estate or financial transactions considered, attempted or discussed by or between plaintiffs and defendants.

15.     Defendants may seek additional documents, depending on plaintiffs' discovery responses and information obtained from the initial round of discovery.

## IX.     SETTLEMENT DISCOVERY

As explained in their Early Neutral Evaluation Statement, Plaintiffs request the Court's assistance in obtaining basic information from Defendants in order to be able to make a settlement demand that would resolve all claims, including those of the putative class: (1) the total number of consumers who have taken Trump University seminars; and (2) the total amount that each consumer paid.  Plaintiffs have also requested documents and information about Plaintiff Patricia Murphy, including the relationship between Trump University and Trump Institute to be able to evaluate Defendants' claims that Plaintiff Patricia Murphy did not take a Trump University course.

## X.     EXPERT EVIDENCE AND *DAUBERT* MOTIONS

The parties believe it is premature to set forth any expert evidence they believe to be relevant to the claims and defenses in this case.

## XI.     THRESHOLD LEGAL ISSUES FOR SUMMARY JUDGMENT

### A.     Plaintiffs' Position

Plaintiffs object to Defendants' proposal to stage discovery (*see* §III.B.2 above) and for a proposed schedule that would allow for summary judgment as to the claims against Mr. Trump prior to Plaintiffs moving for Class Certification.  Rule 23 explicitly calls for class certification motions to be brought and decided as early as practicable in the case.  *See* Fed. R. Civ. P. Rule 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").  "Courts have held that in general, issues relating to class certification should be decided before a decision on the merits is rendered."  *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 44-45 (W.D.N.Y. 2009) (citing, *inter alia, Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir.2007) ("Class-action status must be granted (or denied) early . . . to clarify who will be bound by the decision."); *Philip Morris Inc. v. National Asbestos Workers Medical Fund*, 214 F.3d 132, 135 (2d Cir. 2000) (stating that "it is 'difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits'") (citation omitted).  Indeed, the Ninth Circuit has observed that "the Advisory Committee on Federal Rules concluded that class members should be brought in ***prior*** to the determination of defendant's liability . . . ."  *Schwarzschild v. Tse*, 69 F.3d 293, 295-96 (9th Cir. 1995) (emphasis in original).

1   Generally, a class certification motion is brought prior to summary judgment so that

2   summary judgment would apply to the entire putative class.  Defendants' proposal turns the usual

3   scheduling contemplated by the Federal Rules of Civil Procedure on its head for no particular reason

4   other than to try to gain strategic advantage in obtaining discovery before Plaintiffs are permitted to

5   do so and attempt to get Mr. Trump removed from the case prior to class certification.

6   Defendants' citation to *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984), in support of their

7   proposal to stage discovery and impose an arbitrary schedule of hearing summary judgment prior to

8   class certification is unavailing.  As the Ninth Circuit observed in *Wade v. Kirkland*, 118 F.3d 667

9   (1997), *Wright* is limited to situations where it "may be appropriate in the interest of judicial

10   economy to resolve a motion for summary judgment or motion to dismiss prior to ruling on class

11   certification." *Id.* at 670.  However, *Wright* is inapplicable where, as here, plaintiffs or class

12   members would suffer prejudice, *see Wright*, 742 F.2d at 545, and/or where there are countervailing

13   considerations, such as a potentially transitory claim, so that there is a need for "a ruling on class

14   certification as rapidly as possible." *Wade*, 118 F.3d at 670.

15   However, here it would not be in the interest of judicial economy to resolve a summary

16   judgment motion prior to class certification because it would not have a *res judicata* effect on absent

17   class members, and members of the putative class could simply re-file identical claims against

18   Defendants in this or another Court.  *Schwarzschild*, 69 F.3d at 295-96; *In re Diamond Multimedia*

19   *Sys., Sec. Litig.*, 1997 WL 77373, at *2 (N.D. Cal. Oct. 14, 1997) (citing *Wright*, 742 F.2d at 544).

20   As such, no economies would be achieved.  And, to the contrary, Plaintiffs would suffer prejudice in

21   the delay of their ability to prosecute this case, particularly given the questionable financial condition

22   of Defendants, especially Trump University, and the possible loss of evidence, as Defendants have

23   not confirmed they are preserving documents. *See Wright*, 742 F.2d at 545; *Wade*, 118 F.3d at 670.

24   Accordingly, Plaintiffs respectfully submit that the Court should not diverge from the ordinary

25   course of permitting Plaintiffs to proceed with their discovery and file their class certification motion

26   as early as practicable and to permit and hear dispositive motions thereafter.

27

28

## B.     Defendants' Position

Plaintiffs' claims against Donald Trump personally are limited to personal representations he purportedly made to attendees of Trump University.  Plaintiffs did not allege breach of contract nor breach of the implied covenant of good faith and fair dealing against Mr. Trump.  Plaintiffs also do not allege alter ego.

Defendants intend to file a motion for summary judgment to dismiss Mr. Trump from the case as soon as practical (ie., after some limited discovery and plaintiffs have an opportunity to conduct whatever discovery they need to respond to the MSJ).  The discovery necessary to file and oppose that motion should be fairly limited since plaintiffs concede that their claims against Mr. Trump are based on <u>his</u> personal representations and writings only.  Defendants request that the Court address this issue before class certification, since it will significantly impact the case and the prospects of settlement or other resolution of the matter.  See *Wright v. Schock*, 742 F.2d 541, 545 (9th Cir. 1984) ("it is reasonable to consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect the parties and the Court from needless and costly further litigation").  Plaintiffs argue (above) that class certification should or must be addressed first, but the Ninth Circuit specifically rejected the identical argument in *Wright*.  *Id.* at 543.

Plaintiffs argue that "no economies would be achieved" because the putative class could simply re-file identical claims.  First, as a practical matter, if the Court determines that Mr. Trump has no personal liability, it is extremely unlikely that putative class members would file a new suit alleging the same claims.  Second, the *Wright* court addressed the argument plaintiffs make here and held that putative class members will "of course, be faced with the stare decisis effect of the decision."  *Wright*, supra, 742 F.2d at 545.

Plaintiffs' argument that they would suffer prejudice because of Trump University's financial condition makes no sense.  Even assuming plaintiffs' premise is true, plaintiffs are in a better

1   position knowing earlier whether a viable defendant even exists before the parties and the Court

2   spend time and resources addressing class certification.[1]

3     Finally, plaintiffs' tired argument that defendants have not confirmed that they are preserving

4   documents is both untrue and another attempt to cast aspersions on defendants and defense counsel.

5     Defendants also intend to file a motion for summary judgment later in the case regarding:

6   (i) liability and causation issues as to Trump University; (ii) lack of standing as to plaintiff Murphy;

7   (iii) statute of limitations on contract claims; (iv) reliance as to all plaintiffs; (v) accord and

8   satisfaction as to plaintiff Makaeff; (vi) waiver as to plaintiff Makaeff; (vii) and one or more

9   plaintiffs' purported damages.  Defendants may address additional claims/issues in their motion,

10  depending on information obtained from discovery.

11  **XII. PROTECTIVE ORDER**

12    **A. Plaintiffs**

13    Plaintiffs do not object to the entry of an appropriate Protective Order.  Plaintiffs have

14  already proposed that the parties adopt the  sample protective order included in the Southern District

15  local rules, and have recommended this to Defendants, but to date, Defendants have not responded.

16  Defendants request the entry of some other Protective/Gag Order which would improperly "order

17  counsel to discontinue the[ir] [purported] media campaign," but to date, Defendants have not

18  provided this proposed Order for Plaintiffs to review.

19     **1. Defendants' Statements Regarding a "Media Campaign" by
          Plaintiffs Are Misleading**

20

21    As is becoming all too familiar in this litigation, Defendants lob baseless accusations that the

22  four plaintiffs in this case were "located by class counsel after a nationwide publicity blitz and

23  recruiting effort."  *See supra* at 1.  That is not true.  After plaintiff Tarla Makaeff filed her initial

24  class action complaint on April 30, 2010, Plaintiff's counsel did not engage in any "publicity blitz"

25  or "recruiting effort."  Counsel also did not "locate" these additional three plaintiffs – each of them

26  ──────────────

    [1] Plaintiffs inserted this latest argument and new authority on this issue at 4:00 p.m. Friday

27  afternoon and requested a response within the hour, so defendants have not had an opportunity to
    fully brief the issue.

28

1   contacted Plaintiffs' counsel after learning of the Complaint.  Plaintiffs filed an amended complaint

2   approximately 45 days later, on June 16, 2010.  Defendants also state that during the last 18 months,

3   Plaintiffs and their counsel have repeatedly contacted the press, posted materials on the Internet and

4   websites and conducted a nationwide campaign to solicit former attendees to join the case.  *Id.* at __.

5   That is also not true.  Counsel have not posted any materials on the Internet, other than on the firm

6   website and Facebook page, and have not engaged in any campaign to solicit attendees to "join the

7   case."  Likewise, counsel has instructed Plaintiffs not to post materials on the website or contact the

8   press.  That Defendant Donald Trump's presidential bid caused a flurry of publicity about his

9   involvement in various legal controversies, including claims of fraud concerning Trump University,

10  is not of Plaintiffs' making, and Defendants have not been shy in "making their case" in the press at

11  every turn.  It is disingenuous for Defendants to accuse Plaintiffs of trying their case in the press.

12          **2.      A Gag Order Imposing Prior Restraint on the Parties' Right to
                      Free Speech Is Unconstitutional and Not Warranted in This
13                    Case**

14          Plaintiffs agree that this case should be tried in the Court, rather than in the Press.  However,

15  a gag order prohibiting the parties in advance from talking to the press is not warranted or

16  permissible in this case.  Indeed, "Gag orders on trial participants are unconstitutional" prior

17  restraints on speech in violation of the First Amendment and California State Constitution "unless:

18  (1) the speech sought to be restrained poses a ***clear and present danger or serious and imminent***

19  ***threat to a protected competing interest***; (2) the order is ***narrowly tailored*** to protect that interest;

20  and (3) no ***less restrictive alternatives*** are available."  *Hurvitz v. Hoefflin*, 84 Cal. App. 4th 1232,

21  1241-42 (2001) (emphasis added); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("prior

22  restraints on speech and publication are the most serious and the least tolerable infringement on First

23  Amendment rights," and are "presumptively unconstitutional"); *Levine v. U.S. Dist. Ct. for the*

24  *Central Dist. of Cal.*, 764 F.2d 590, 595 (9th Cir. 1985) (striking down protective order in criminal

25  espionage case which prohibited the attorneys from talking to the media regarding the merits of the

26  case, stating that such prior restraint on free speech is only proper if: "(1) the activity restrained

27  poses either a clear or present danger or a serious and imminent threat to a protected competing

28  interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available").  As

1   such, Plaintiffs object to any proposal by Defendants that would have the effect of a Gag Order in

2   this case.

3       **B.    Defendants**

4       Plaintiffs purportedly "agree" that the "case should be tried in the Court, rather than in the

5   Press," but their conduct certainly is not consistent with their representation.  During the last 18

6   months, plaintiffs and their counsel repeatedly have contacted the media and press concerning this

7   matter.  They have posted materials on the Internet and on their website and conducted a nationwide

8   campaign to solicit former attendees to join the case.  Those contacts include calls or writings to

9   ABC, CNN, The Huffington Post, Newsweek, Forbes Magazine, the New York Post, San Francisco

10  Chronicle, New York Daily News and other press and media.  During the last 18 months, Plaintiffs'

11  counsel and plaintiff Makaeff repeatedly have provided statements and interviews to the press.  They

12  have posted pleadings on the Internet, and they have advertised the case and counsel's potential

13  representation of former attendees.  Plaintiffs contend that defendants have not been shy in "making

14  their case in the press."  The claim is false.  Defendants never have approached the press concerning

15  this matter.  Defendants have repeatedly been contacted by the press requesting comment in response

16  to claims made by plaintiffs' counsel.  Defendants have been advised multiple times that plaintiffs'

17  counsel affirmatively contacted the press to argue their case.

18      During the ENE, the Court specifically advised counsel not to contact the media regarding

19  this matter.  Nonetheless, within days of the ENE, plaintiffs' counsel contacted the Union Tribute to

20  advise the press why Mr. Trump was in town and to argue her case to the press.

21      Plaintiffs proposed that the parties use the "standard" protective order adopted by this

22  District, which is fine with defendants.  In addition, defendants request that the Court order counsel

23  to discontinue the media campaign and trying their case in and to the press.  Defendants further

24  request that the Court order the parties and counsel not to share with the press or media discovery

25  responses, documents, deposition testimony or transcripts.

26

27

28

# XIII.   PROPOSED PRE-TRIAL SCHEDULE

### A.   Plaintiffs

#### 1.   Motions to Amend Pleadings

The parties reserve their rights to amend the operative complaint and answer to add additional parties, claims, or defenses on or before July 31, 2012.

#### 2.   Discovery

Plaintiffs propose the following schedule for fact discovery through class certification briefing:

| | |
|---|---|
| Rule 26(a) initial disclosures | September 19, 2011 |
| Service of first written discovery requests, including requests for admission, document requests and interrogatories | October 7, 2011 |
| Service of parties' first notices of deposition and third-party subpoenas | October 17, 2011 |

#### 3.   Class Certification Deadlines

Plaintiffs believe that document discovery, some written discovery, and some depositions should be completed before they submit their class certification motion.  The parties propose the following schedule related to the class certification motion:

1.   On or before March 20, 2012, Plaintiffs shall file their motion to certify any proposed class under Rule 23 and a memorandum setting forth their arguments.  At the time of filing their motion, Plaintiffs will identify all experts and witnesses upon whose opinion they rely for purposes of class certification, if any, and submit any expert reports or affidavits in support of their motion;

2.   Defendants shall be given an opportunity to depose Plaintiffs' experts, if any, prior to filing their opposition brief;

3.   Defendants shall file any opposition brief on or before April 30, 2012.  Upon filing its opposition to class certification, Defendants must identify all experts and witnesses upon whose opinion they rely and submit any expert reports or affidavits, rebuttal or otherwise;

4.   Plaintiffs shall be given an opportunity to depose Defendants' experts and witnesses prior to filing a reply brief in support of their class certification motion; and

5.      Plaintiffs' shall file their reply brief in support of their class certification motion on or before May 30, 2012.

The parties propose that the Court set a case management conference ("CMC") within thirty (30) days of the Court's decision on class certification, at which the remainder of the pre-trial schedule may be set.   At that CMC, the parties propose that the Court also hold a settlement conference.

### 4.      Settlement Conference

As aforementioned, the parties propose that the Court hold a settlement conference, simultaneous with a CMC, within thirty (30) days of the Court's decision on class certification.

### 5.      Pretrial Conference

The parties respectfully submit that it is premature to set a pretrial conference until after a decision on the class certification motion.

### B.      Defendants

#### 1.      Discovery

Defendants suggest a discovery and motion schedule which is most likely to efficiently narrow the issues for a potential resolution of the case and/or settlement.

Defendants request that discovery, potentially dispositive motions and plaintiffs' motion for class certification proceed in the following order:

1.      Exchange of written discovery, documents and third-party subpoenas anytime after the Status Conference with the Court on 10/7/11;

2.      Depositions of lead Plaintiff Makaeff and local Plaintiff Brandon Keller (to be made available for depositions by 12/15/11);

3.      Depositions of two out-of-state plaintiffs (Oberkrom and Murphy) defendants and third parties (in no particular order, anytime after plaintiffs Makaeff's and Keller's depositions, and all to be made available no later than 3/1/12);

4.      Defendants' Motion for Summary Judgment re Donald Trump (please see proposed briefing schedule below);

1    5.    Plaintiffs' Motion for Class Certification (please see proposed briefing schedule

2  below);

3    6.    Defendants' Motion for Summary Judgment re Trump University and/or Plaintiffs.

4    **2.    Class Certification Deadlines**

5    Defendants object to plaintiffs' proposed schedule for their motion for certification. As stated

6  above, defendants intend to file a motion for summary judgment which could result in the dismissal

7  of defendant Donald Trump, and which will significantly impact the case.  Before the Court

8  considers class certification on claims against a party who may be dismissed, defendants suggest that

9  the logical sequence would be for the Court to hear defendants' motion for summary judgment first

10  and then address class certification.  See *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984).

11    Defendants propose filing their motion for summary judgment by April 15, 2012.  To provide

12  plaintiffs ample opportunity to conduct any additional needed discovery, defendants propose that

13  plaintiffs file their opposition by June 15, 2012.  Defendants propose filing their Reply by June 29,

14  2012, with a hearing date of July 16, 2012.  If plaintiffs believe they can file their opposition with

15  less time, defendants have no objection to an accelerated briefing schedule.

16    Defendants propose that plaintiffs file their class certification motion after the Court rules on

17  defendants' motion for the summary judgment.  Defendants request 60 days to prepare and file their

18  opposition to plaintiffs' motion for class certification to ensure that they have an opportunity to

19  conduct any additional needed discovery on issues raised by the class certification motion.

20    Accordingly, defendants propose the following discovery and motion schedule:

21    Rule 26(a) Initial Disclosures                                        9/19/11

22    First Date to Serve Written Discovery                          10/11/11

23    Deposition of Tarla Makaeff                    Made available NLT 12/15/11

24    Deposition of Brandon Keller                   Made available NLT 12/15/11

25    Deposition of Ed Oberkrom          Any time after depositions of plaintiffs
                                                                  Makaeff and Keller NLT 3/1/12

26

27    Deposition of Patricia Murphy      Any time after depositions of plaintiffs
                                                                  Makaeff and Keller NLT 3/1/12

28    Deposition of Defendants             Any time after depositions of plaintiffs

| | |
|---|---|
| 1 | Makaeff and Keller NLT 3/1/12 |
| 2 | Filing of MSJ re Donald Trump | 4/15/12 |
| 3 | Opposition to MSJ | 6/15/12 |
| 4 | Reply to MSJ | 6/29/12 |
| 5 | Filing of Motion for Class Certification | 9/4/12 |
| 6 | Opposition to Motion for Class Certification | 10/30/12 |
| 7 | Reply to Motion for Class Certification | 11/20/12 |

8   DATED:  September 16, 2011                    Respectfully submitted,

9                                                ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
10                                               RACHEL L. JENSEN
                                                 THOMAS R. MERRICK
11

12                                                       s/ THOMAS R. MERRICK
13                                                     THOMAS R. MERRICK

14                                               655 West Broadway, Suite 1900
                                                 San Diego, CA  92101
15                                               Telephone:  619/231-1058
                                                 619/231-7423 (fax)
16
                                                 ZELDES & HAEGGQUIST, LLP
17                                               AMBER L. ECK
                                                 HELEN I. ZELDES
18                                               ALREEN HAEGGQUIST
                                                 625 Broadway, Suite 906
19                                               San Diego, CA  92101
                                                 Telephone:  619/342-8000
20                                               619/342-7878 (fax)

21                                               Attorneys for Plaintiffs and Proposed Class

22

23

24

25

26

27

28

648085_1                              - 25 -

1

2  DATED:  September 16, 2011                    Respectfully submitted,

3                                               YUNKER & SCHNEIDER
                                                DAVID K. SCHNEIDER
4

5                                                    s/ DAVID K. SCHNEIDER
6                                                  DAVID K. SCHNEIDER

7                                               655 W. Broadway, Suite 1400
                                                San Diego, CA 92101
8                                               Telephone: 619/233-5500
                                                619/233-5535 (fax)
9
                                                Attorneys for Defendants
10
                                                Plaintiffs' counsel has Mr. Schneider's
11                                              permission to file this document using an
                                                electronic signature
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on September 16, 2011, I authorized the electronic filing of the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4 the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5 caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6 CM/ECF participants indicated on the attached Manual Notice List.

7      I certify under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct.  Executed on September 16, 2011.

9

10                                                       s/ THOMAS R. MERRICK
                                                        THOMAS R. MERRICK

11                                                      ROBBINS GELLER RUDMAN
                                                            & DOWD LLP
12                                                      655 West Broadway, Suite 1900
                                                        San Diego, CA  92101-3301
13                                                      Telephone:  619/231-1058
                                                        619/231-7423 (fax)
14
                                                        E-mail:tmerrick@rgrdlaw.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

648085_1

## Mailing Information for a Case 3:10-cv-00940-IEG -WVG

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **David Keith Schneider**
  dks@yslaw.com,dscardino@reedscardino.com,ewb@yslaw.com,mlokey@reedscardino.com,efb@yslaw.com,jjohnson@reedscardino.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)