UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC *et al.*,<br><br>     Defendants. | Civil No. 10-CV-940-CAB (WVG)<br><br>ORDER ON DISCOVERY ISSUES |

### I. FACTUAL SUMMARY

On or about November 7, 2011, Defendants served Plaintiffs with Defendants' First Request for Production of Documents ("RFPs"). Specifically, RFP No. 15 asked Plaintiffs for, "Any and all DOCUMENTS to, from, by, and/or between YOU and putative class members, excluding communications between plaintiffs' counsel and putative class members actually represented by plaintiffs' counsel in this matter at the time of the communication."

Plaintiffs objected to production of the communications between Plaintiffs' counsel and putative class members on the ground that the communications are attorney-client and/or attorney work product privileged. Defendants countered that communications between non-represented putative class members and counsel are not privileged, and therefore must be produced.

//

//

## II. PROCEDURAL BACKGROUND

On February 13, 2012, this Court issued an Order on Discovery Disputes which addressed Plaintiffs' objections to RFP No. 15. (Doc. No. 93.) The Court described Plaintiffs' objections as boilerplate, inapplicable, or both. Id. The Court also observed that both parties failed to properly analyze the issue of the applicability of the attorney-client privilege. Id. Plaintiffs asserted that the communications were automatically privileged, while Defendants seemed to suggest that they were automatically discoverable.

The parties were directed to review this Court's reasoning in Taylor v. Waddell & Reed, Inc., 2011 U.S. Dist. WL 1979486 (S.D. Cal. May 20, 2011), which provides an in-depth analysis of the attorney-client privilege as applied to communications between counsel and putative class members. Plaintiffs were ordered to submit the Bates-stamped communication documents to chambers, along with a privilege log, for an *in camera* review to determine whether the communications were privileged. (Doc. No. 93 at 9.)

Before producing the documents, the parties sent a series of emails to the Court, asserting additional arguments about RFP No. 15. Plaintiffs argued that Costco Wholesale Corp. v. Superior Court, 219 P.3d 736 (Cal. 2009) supported their request for reconsideration of the Order requiring an *in camera* review. In Costco, the Supreme Court of California determined that a court may not order an *in camera* review of documents claimed to be attorney-client privileged. Id. at 743.

On March 2, 2012, the Court issued a subsequent Order, noting that it was persuaded by some of Plaintiffs' cases and would no longer require the documents to be reviewed *in camera*. (Doc. No. 95.) Instead, Plaintiffs were ordered to submit a privilege log and declarations to the Court in order to meet their burden to establish "facts necessary to support a prima facie claim of privilege…" Id. at 5. The Court ordered:

> When doing so, Plaintiffs should be mindful to fully discuss the dominant purpose of the subject communication(s) as well the participants' contemplated relationship. See generally Taylor v. Waddell & Reed, Inc., 2011 U.S. Dist. [WL 1979486] (S.D. Cal. May 20, 2011). In other words, Plaintiffs need show more than the mere fact that counsel simply sent general letters or e-mails to a putative class member because, as in Taylor, the pivotal question is the nature of the relationship as well as what counsel and the putative class members contemplated at the time of the communication.

Id.

1           On March 20, 2012, Plaintiffs submitted to the Court the declaration of Ms. Amber Eck, Plaintiffs' attorney ("Eck Decl."), as well as two privilege logs. One privilege log lists communications with putative class members that have since retained Plaintiffs' counsel ("Retained"), and the other privilege log lists communications with putative class members that have not retained Plaintiffs' counsel ("Not Yet Formally Retained"). Ms. Eck's declaration asserts that the documents on both privilege logs are subject to the attorney-client privilege.[1]

           Upon review of Plaintiffs' declaration and the privilege logs, and applying this Court's reasoning in Taylor, the Court finds that all communications listed on the "Retained" privilege log are attorney-client privileged and will not be produced to Defendants. However, for the reasons described below, the Court finds that all communications listed on the "Not Yet Formally Retained" privilege log are not protected by the attorney-client privilege and must be produced to Defendants in response to RFP No. 15.

### III. ANALYSIS

           "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." U.S. v. Richey, 632 F.3d 559, 566 (9th Cir. 2011). "The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication." Id. To determine whether a communication is privileged, "the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." Clark v. Superior Court, 196 Cal.App.4th 37, 51 (2011). "Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." Id.

           However, "the privilege is not applicable when the attorney acts merely as a negotiator for the

---

[1] Ms. Eck's declaration only asserts that the communications are protected by the attorney-client privilege. Because Plaintiffs' initial objection to RFP No. 15 asserted both attorney-client and attorney work product privileges, the Court will briefly note that it does not find the documents to be protected by the attorney work product privilege. Both privilege logs list communications between putative class members who were not represented by Plaintiffs' counsel at the time, and the logs do not expressly list communications that include attorneys' mental impressions, conclusions, opinions, or legal theories. Hickman v. Taylor, 329 U.S. 495 (1947).

1  client or is providing business advice; in that case, the relationship between the parties to the
2  communication is not one of attorney-client." Costco, 219 P.3d 736, 743. Because the attorney-client
3  privilege has the effect of withholding relevant information from the factfinder, "the attorney-client
4  privilege is strictly construed." Weil v. Investment/Indicators, Research & Mgmt, Inc., 647 F.2d 18,
5  24 (9th Cir. 1981).

6  It well settled under California law that the attorney-client privilege applies to confidential
7  communications during preliminary negotiations with an attorney even if employment of the attorney
8  is declined. Rosso, Johnson & Ebersold v. Superior Court, 191 Cal. App. 3d 1514, 1518 (1987)[citing
9  Estate of Dupont, 60 Cal. App. 2d 276, 287-288 (1943)]. "The fiduciary relationship existing between
10 lawyer and client extends to preliminary consultations by a prospective client with a view to retention
11 of the lawyer, although actual employment does not result." People ex. rel. Department of Corps. v.
12 Speedee Oil Changes Systems, 20 Cal. 4th 1135, 1147-1148 (1999)[citing Westinghouse Elec. Corp.
13 v. Kerr-McGee Corp., 580 F.2d 1311, 1319 (7thCir. 1978)]. This legal principle is further supported
14 by California Evidence Code § 951, which states in pertinent part: "...(C)lient means a person who,
15 directly or through an authorized representative, consults a lawyer for the purpose of *retaining the*
16 *lawyer* or securing legal service or advice from him in his professional capacity..." (emphasis added).

17 Therefore, it is axiomatic that communications by prospective clients with a view toward
18 obtaining legal services are protected in California by the attorney-client privilege regardless of
19 whether they ever retain the attorney. Beery v State Bar of Cal., 43 Cal. 3d 802 (1987). But "while
20 lead counsel owes a generalized duty to unnamed class members, the existence of such a fiduciary
21 duty does not create an inviolate attorney-client relationship with each and every member of the
22 putative class." In re McKesson HBOC, Inc. Sec. Litig., 126 F.Supp. 2d 1239, 1245 (N.D. Cal. 2000).

23 Here, the question is whether communications made by putative class members that have not
24 retained Plaintiffs' counsel can be considered communications by prospective clients who were
25 considering whether to be represented by Plaintiffs' attorneys, or to opt into the lawsuit. The Court
26 finds that this was not the dominant purpose of the communications on the "Not Yet Formally
27 Retained" privilege log, but was the purpose of the communications on the "Retained" privilege log.
28 //

### A. "Not Yet Formally Retained" Privilege Log

When initially ordered to produce documents to this Court for an *in camera* review, Plaintiffs were directed to select the documents in good faith as protected by the attorney-client privilege, consistent with this Court's reasoning in Taylor. (Doc. No. 93 at 9; Taylor, WL 1979486.) The analysis in Taylor focused on whether putative class members' responses to letters sent by Plaintiffs' counsel were protected by the attorney-client privilege. Taylor, WL 1979486 at 1. The letters informed the putative class members of a lawsuit, sought further information about the lawsuit, and invited them to contact Plaintiffs' counsel if they wanted to learn more about the lawsuit. Id.

Finding that the communications were not attorney-client privileged, this Court noted that the letter did "not make clear that its purpose was to solicit responses only from persons who wanted to be represented by [Plaintiffs' attorney]." Taylor, WL 1979486 at 2; U.S. Equal Employment Opportunity Commission v. AMB Industries, Inc., 261 F.R.D. 503, 509 (E.D. Cal. 2009). Instead, the letter suggested that Plaintiffs' attorneys were "seeking information and also making themselves available to answer any questions about the lawsuit." Taylor, WL 1979486 at 2.

Like the responses at issue in Taylor, a fair reading of the "Not Yet Formally Retained" privilege log suggests that the putative class members were contacting Plaintiffs' counsel to discuss their experience with Defendants, express interest in the lawsuit, ask for updates on the lawsuit, provide documents to Plaintiffs' counsel, and provide assistance with the lawsuit. Although Ms. Eck's declaration states that, with the exception of one individual, all putative class members "contacted Plaintiffs' counsel seeking legal advice regarding their negative experiences with [Defendant] Trump University, LLC," the bare bones descriptions in the privilege log do not support that statement. (Eck Decl. ¶ 1.) Instead, the boilerplate purposes listed throughout the privilege log suggest that the putative class members may have simply been contacting Plaintiffs' counsel to vent about their negative experience with Defendants, not with a view toward retaining Plaintiffs' counsel.

The phrase, "seeking legal advice" appears to be used liberally by Plaintiffs' in Ms. Eck's declaration. (Eck Decl. ¶ 1.) The absence of such a notation, as well as any notation about retaining Plaintiffs' counsel, in the majority of the privilege log entries is certainly indicative that there was no attorney-client relationship contemplated by either Plaintiffs' counsel or the putative class members

1   at the time of the communications. These individuals are not clients, and simply because they
2   contacted Plaintiffs' counsel at some point does not mean that the communications were made in the
3   course of an attorney-client relationship.

4   Ms. Eck's declaration also states, "the nature of the relationship contemplated by Plaintiffs'
5   counsel was one of attorney-client." (Eck Decl. ¶ 1.) As discussed in Taylor, "more important than
6   what the law firm intended is what the clients thought." Taylor, WL 1979486 at 3; quoting Barton
7   v. United States District Court for the Central District of California, 410 F.3d 1104, 1107 (9th Cir.
8   2005). The majority of these communications took place in 2011. If the putative class members have
9   not retained Plaintiffs' counsel by now, it is likely that retention is not, and never was, the dominant
10  purpose for the communications.

11  Plaintiffs were informed that they have the burden of establishing facts necessary to support
12  a prima facie claim of privilege, and were given the opportunity to describe the dominant purpose of
13  the comminations in the privilege logs. (Doc. No. 95 at 5.) The Court will assume that if the putative
14  class members were attempting to form an attorney-client relationship with Plaintiffs' counsel, that
15  information would have been provided in the logs. To the contrary, the majority of the privilege log
16  descriptions listed under "Purpose/Substance of the Communication" merely state the means by which
17  the putative class members contacted Plaintiffs' counsel - either by phone or email. Some entries list
18  the contemplated relationship as putative class members who wanted to be a part of the class action,
19  or sought legal advice. However, these general one-line descriptions do nothing to persuade the Court
20  that these are attorney-client privileged communications that must be withheld from Defendants. The
21  log shows that Plaintiffs' counsel sent nearly all of the putative class members a letter requesting
22  representation on September 28, 2011. In many instances, this letter was the end of the communica-
23  tion, or the only further communication was a request by Plaintiffs' counsel for factual information.

24  Given the opportunity, Plaintiffs have not convinced the Court that the dominant purpose
25  of the communications on the "Not Yet Formally Retained" log was to form an attorney-client
26  relationship. To the contrary, the descriptions reveal that the putative class members contacted
27  Plaintiffs' attorneys to seek information and ask if they could help with the lawsuit. To the extent that
28  some descriptions include buzzwords such as "seeking legal advice," or "expressing interest in being

a plaintiff," the log entries provide no further support. Accordingly, Plaintiffs have not met their burden of establishing that the communications were made in the course of an attorney-client relationship. Costco, 47 Cal.4th at 733.

### B. "Retained" Privilege Log

The communications listed on the "Retained" privilege log will not be ordered produced because the Court finds that the dominant purpose was to retain Plaintiffs' counsel and join the lawsuit as plaintiffs. The majority of the log entries state that the putative class members contacted Plaintiffs' counsel in order to retain the attorneys. The stated purpose of the communications is supported by the fact that these individuals did retain Plaintiffs's counsel. Therefore, the communications on the "Retained" log are protected by the attorney-client privilege.

## IV. ORDER

The Court concludes that the communications listed on the "Retained" privilege log are protected by the attorney-client privilege and therefore need not be produced to Defendants in response to RFP No. 15. The Court also concludes that the communications listed on the "Not Yet Formally Retained" privilege log are discoverable and not protected by the attorney-client privilege.

On or before May 28, 2012, Plaintiffs' counsel shall produce to Defendants the communications listed on the "Not Yet Formally Retained" privilege log. Plaintiffs' counsel may redact the e-mail addresses and/or telephone numbers, if any, contained in the documents. The parties shall proceed in accordance with this Order.

DATED: May 8, 2012

_____
Hon. William V. Gallo
U.S. Magistrate Judge