1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11 | TARLA MAKAEFF *et al.*,    )

12     Plaintiffs,   )

            )

v.           )

13             )

TRUMP UNIVERSITY, LLC, *et al.*,  )

14             )

    Defendants.   )

15             )

Civil No.  10-CV-0940-CAB (WVG)

ORDER ON DISCOVERY DISPUTES

16    Pending before the Court are numerous discovery disputes initiated by both parties in this case.  On

17 October 10, 2012, the Court held a telephonic Status Conference with counsel for all parties.  During the

18 Status Conference, counsel brought several discovery issues to the Court's attention.  Plaintiffs claim that

19 Defendants have failed to produce all relevant documents within their possession, custody, and control, and

20 that Defendants' litigation hold was untimely and insufficient.  Defendants argue that Plaintiffs have refused

21 to either provide documents responsive to Defendants' RFPs, or otherwise provide Bates stamp numbers

22 of the responsive documents.

23    On October 12, 2012, this Court Ordered the parties to meet and confer in good faith, and to lodge

24 two separate Joint Statements by October 31, 2012.  (Doc. No. 131.)  In one Joint Statement, the parties

25 were to outline their respective arguments on the issues of Defendants' document production and litigation

26

27

28

1  hold.[1] In a separate Joint Statement, they were to outline the issue of Defendants' request for Bates stamped

2  documents.[2] Id.

3  After the Court issued the October 12, 2012, Order, the parties notified the Court of yet another

4  discovery dispute.  The new dispute involved Plaintiffs' request to depose another Rule 30(b)(6)[3] witness

5  on November 6, 2012.  After being notified of the additional dispute, the Court held a telephonic Discovery

6  Conference on November 2, 2012, with counsel for all parties.  Rather than ordering the parties to lodge a

7  third Joint Statement, counsel were ordered to provide specific documents to the Court for review in

8  connection with the dispute. During the November 2, 2012, Discovery Conference, the Court heard brief

9  arguments from both parties and informed the parties that it would not issue a ruling prior to Plaintiffs'

10  desired Rule 30(b)(6) deposition date, which was a mere four days after the Conference.

11  On December 12, 2012, the Court held a Discovery Hearing to discuss all of the parties' disputes

12  on the record in open court.  Mr. Thomas Merrick and Ms. Amber Eck appeared on behalf of Plaintiffs, and

13  Mr. David Schneider appeared on behalf of Defendants.  During the Discovery Hearing, the Court asked

14  all counsel to clarify certain arguments outlined in their Joint Statements, and to expand on several factual

15  issues surrounding the disputes.  After reviewing the parties' Joint Statements, the documents lodged with

16  the Court, and the relevant case law, as well as arguments advanced by counsel for all parties, the Court

17  hereby issues the rulings set forth below.

18  **I. CONTROL OVER DOCUMENTS HELD BY DEFENDANTS' FORMER EMPLOYEES AND INDEPENDENT CONTRACTORS**

19

20  Plaintiffs claim that Defendants have failed to produce all relevant documents within their

      possession, custody, and control. (Joint Statement No. 1 at 3.)  They seek an order from the Court requiring
21
      Defendants to request and produce all relevant documents obtained from their former employees or
22
      independent contractors, and to provide an affidavit detailing attempts to obtain the documents, including
23
      when such attempts were made, and to whom.  Id.  Defendants assert that they have made inquiries of many
24

25

26  [1] This Joint Statement will be cited throughout this Order as "Joint Statement No. 1."

27  [2] This Joint Statement will be cited throughout this Order as "Joint Statement No. 2."

28  [3] Federal Rule of Civil Procedure 30(b)(6) regulates a Notice or Subpoena Directed to an Organization.
    Fed.R.Civ.P. 30(b)(6).

former employees and independent contractors to determine whether they have documents in their possession.  Id.

## A. DEFENDANTS DO HAVE CONTROL OVER 22 INDIVIDUALS REPRESENTED BY DEFENDANTS' COUNSEL

During the Discovery Hearing, Defendants represented to the Court that, in their Supplemental Initial Disclosures, they identified 22 former employees and independent contractors that would be represented by Defendants' counsel in this litigation.  Plaintiffs' attorneys were instructed not to contact the 22 represented individuals.  Plaintiffs contend that Defendants must seek and produce documents from these 22 individuals.         "A current or former employee may be considered under a Defendant's control for Rule 34 purposes[4] where that employee was...represented by counsel recommended, retained, or paid by a company representative or counsel."  In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 531 (S.D. N.Y. 1996).  Here, Defendants identified 22 former employees and independent contractors as individuals who would also be represented by their counsel in this litigation.  It follows that any representation of these individuals was likely recommended and retained by Defendants, and will be funded by Defendants.  The Court has not been presented with any evidence to suggest otherwise.  Therefore, Defendants have the requisite control over the represented individuals for purposes of producing documents under Rule 34.  See Id.

The issue of representation is particularly relevant in this situation, where Defendants instructed Plaintiffs' counsel that they are not authorized or permitted to contact these individuals due to representation by their counsel.  Counsel for Defendants asserted that even with respect to these 22 individuals, his contact has been limited and in some instances non-existent.  Nevertheless, and regardless of the degree of contact with these 22 individuals, until such time that Defendants' counsel no longer represents them, Defendants control them at least as far as Rule 34 is concerned.  Because Defendants have control over these individuals for Rule 34 purposes, an effort must be made to reach out to all 22 former employees and independent contractors represented by Defense counsel David Schneider, and determine whether they possess relevant documents.

---

[4] Federal Rule of Civil Procedure 34 governs requests for production of documents.  Fed.R.Civ.P. 34.

**IT IS HEREBY ORDERED**, with respect to the 22 represented individuals, that <u>within 30 days</u> of the issuance of this Order, Defendants shall:

        1.     Contact the individuals, and upon determining that they have documents in their possession, produce these documents to Plaintiffs; <u>or</u>

        2.     Contact the individuals, and upon determining that they do not possess documents, represent to Plaintiffs and the Court in a Declaration that they do not have documents; <u>or</u>

        3.     If unable to locate or contact the individuals, lodge a Declaration with the Court describing Defendants' good faith efforts to locate and contact them.

## B. <u>DEFENDANTS DO NOT HAVE CONTROL OVER FORMER EMPLOYEES AND INDE-PENDENT CONTRACTORS NOT REPRESENTED BY DEFENDANTS' COUNSEL</u>

Plaintiffs argue that Defendants have control over <u>all</u> of their former employees and independent contractors for Rule 34 purposes. However, Plaintiffs have failed to meet their burden of showing that Defendants have control over former employees and independent contractors that are not represented by Defendants' counsel. Therefore, Defendants do not have the authority to order the non-represented individuals to produce documents.

Federal Rule of Civil Procedure 34 requires a party to produce relevant, non-privileged documents in its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The Ninth Circuit defines "control" over documents as "the legal right to obtain [them] upon demand." In re Citric Acid Litig., 191 F.3d 1090, 1107 (9th Cir. 1999); <u>see</u> also Doe v. AT&T Western Disability Benefits Program, 2012 WL 1669882, 2 (N.D. Cal. May 14, 2012). The party seeking the documents bears the burden of demonstrating that the responding party exercises such control. In re NCAA Student-Athlete Name & Likeness Litig., 2012 WL 161240 at 2 (N.D. Cal., Jan. 17, 2012 (citing Int'l Union of Petroleum & Indus. Workers, 870 F.2d at 1542**).** "[P]roof of 'theoretical control is insufficient; a showing of actual control is required.' " In re NCAA Student-Athlete Name & Likeness Litig., 2012 WL 161240 at 2 (quoting In re Citric Acid Litig., 191 F.3d at 1107). A showing that a party has the "practical ability" to obtain the requested documents does not meet this standard because, for example, "the other entity 'could legally-and without breaching any contract-

1   continue to refuse to turn over such documents.' " Doe v. AT&T Western Disability Benefits Program,

2   2012 WL 1669882, 2 (N.D. Cal. May 14, 2012) (quoting In re Citric Acid Litig., 191 F.3d at 1108).

3       In Doe v. AT&T Western Disability Benefits Program, the parties argued about whether the

4   defendant's responses to the plaintiff's RFPs must include information obtained from a third party. AT&T

5   Western Disability Benefits Program, 2012 WL 1669882, 1.  There was a contract in place between the

6   defendant and the third party, which granted the defendant control of many documents sought by the

7   plaintiff. Id. at 3.  The court found that the contract gave the defendant a legal right to demand that the third

8   party grant it access to the documents, which therefore placed the documents within the defendant's control

9   for Rule 34 purposes. Id. at 4.

10      As discussed during the Discovery Hearing, the legal right to obtain documents on demand and the

11  practical ability to obtain documents are two distinct things. Micron Technology, Inc. v. Tessera, Inc., 2006

12  WL 1646133, at 1 (N.D. Cal. June 14, 2006).  Legal right suggests an ownership interest, a binding contract,

13  a fiduciary duty, or some other legally enforceable arrangement. Id.

14      The Central District of California recently noted:

15      …Control need not be actual control; courts construe it broadly as the legal right to obtain
        documents upon demand.  Legal right is evaluated in the context of the facts of each case.
16      The determination of control is often fact specific. **Central to each case is the relationship
        between the party and the person or entity having actual possession of the document.**
17      The requisite relationship is one **where a party can order** the person or entity in actual
        possession of the documents to release them.  This position of control is usually the result
18      of statute, affiliation or employment.  Control may be established by the existence of a
        principal-agent relationship.
19

20  MGA Entertainment, Inc. v. National Products Ltd., 2012 WL 182158, at 6 (C.D. Cal. Jan. 23, 2012);

21  quoting Allen v. Woodford, 2007 WL 209945, at 2 (E.D. Cal. Jan. 30, 2007) (emphasis added).

22      Guided by the Ninth Circuit's definition of control, this Court finds that Plaintiffs have failed to meet

23  their burden of establishing that Defendants have the legal right to obtain documents from former employees

24  and independent contractors upon demand.  Defendants reiterate that their company policy requires

25  employees to leave all company documents with Defendants upon termination of employment. The former

26  employees and independent contractors no longer work for Defendants in any capacity.  Therefore,

27  Defendants do not have the authority to order those individuals to produce documents, and the Court

28  declines to issue such an order.

1    //

2    //

3                 **C. DEFENDANTS FAILED TO PRODUCE SOME RELEVANT DOCUMENTS**

4            Plaintiffs allege that they have received numerous documents from non-parties that were responsive

5    to discovery requests served upon Defendants, yet Defendants failed to produce the documents.  Plaintiffs

6    are troubled that Defendants did not produce these documents, and ask the Court to order Defendants to

7    "perform a reasonable search of all the documents in their possession, custody, or control, including ESI,

8    and produce all relevant, non-privileged documents."  (Joint Statement No. 1 at 3.)

9            In response to a request by the Court, Plaintiffs provided the documents that they claim to have

10   received from secondary sources, and not from Defendants.  The documents produced by each secondary

11   source are discussed below.

12                 **1. Documents From the Texas Attorney General's Office**

13           There are a few documents in this production that are drafted on Trump University letterhead, and

14   are authored by a Trump University employee.  However, the majority of the documents produced by the

15   Texas Attorney General's Office do not cause the Court concern.  It is entirely possible that Defendants

16   never had access to most of these documents, as there is no evidence that these documents were sent to, or

17   shared with, Defendants.  The majority of the correspondence is between the Better Business Bureau

18   ("BBB") and individual consumers, and Defendants are not included in the communications. The Court is

19   puzzled by Plaintiffs' complaint here, as Defendants certainly cannot be faulted for failing to produce

20   documents that they did not posses or control.

21                 **2. Documents From the New York Attorney General's Office and New York Better
                     Business Bureau**

22

23           Unlike the documents produced by the Texas Attorney General's Office, the majority of the

24   documents produced by both the New York Attorney General's Office and the New York BBB clearly

25   should have been produced by Defendants.  Defendants' failure to produce these documents causes the

26   Court concern about the diligence of Defendants' document search and production.  While the Court is

27   aware that Defendants' production of documents has been quite voluminous, it is disconcerting that these

28   documents were not produced, especially in light of Defendants' firm assertions that they have conducted

                                                    6                                      10CV0940

1    diligent and thorough searches, and have produced everything that they have found.  The documents that

2    Plaintiffs have brought to the Court's attention are certainly a small fraction of the documents produced,

3    but it still causes concern that the production was incomplete.

4         Defendants claim that they have produced over 130,000 pages of documents in this case, dating from

5    2004.  (Joint Statement No. 1 at 9.)  Defendants currently have only one remaining employee.  The scale

6    of Defendants' production and the burden placed on Defendants' one remaining employee, are not in doubt.

7    That burden, however, does not negate Defendants' obligation to conduct a thorough and diligent search

8    for documents.

9         However, because of the voluminous production and the small fraction of documents presented to

10   the Court that were not produced, the Court will not order Defendants to conduct another full search of all

11   previously searched locations at this time.  The Court certainly reserves the right to order another search

12   at a later date, or possibly impose sanctions, particularly if it becomes clear that there is a flaw in

13   Defendants' search and production process.  To date, the Court has not been presented with enough

14   evidence to find that Defendants' search efforts have been less than diligent.

15   **3. <u>Documents From New York State Education Department</u>**

16        Almost all of the documents produced by the New York State Education Department were

17   communications to or from Defendants, although only a very small number of this agency's documents were

18   provided to the Court.  Again, this does cause the Court concern, but if the documents provided from these

19   four secondary sources are the extent of the documents that Defendants failed to produce, then the situation

20   is not nearly as dire as Plaintiffs contend.

21

22   **II. <u>DEFENDANTS' LITIGATION HOLD</u>**

23   **A. <u>LITIGATION HOLD WAS TIMELY</u>**

24        Plaintiffs claim that the commencement of Defendants' litigation hold was untimely because Plaintiff

25   Makaeff ("Ms. Makaeff") had repeatedly informed Defendants prior to filing the instant lawsuit that she

26   believed they were engaging in illegal activity.  (Joint Statement No. 1 at 4.)  Plaintiffs claim that

27   Defendants were under a duty to preserve evidence starting on September 10, 2009, "when Tarla Makaeff

28   sent Trump University a letter about her claims and plans to institute legal action if necessary."  (Joint

10CV0940

1  Statement No. 1 at 4.)  Defendants argue that they initiated a formal litigation hold on the day they were

2  served with Ms. Makaeff's Complaint, and they retained documents and evidence long before that date.

3  (Joint Statement No. 1 at 9.)  Defendants state that they have repeatedly assured Plaintiffs that nothing has

4  been lost or destroyed since at least 2009, and they have produced documents dating back to 2004.  Id.

5  　　　At the Discovery Hearing, the Court requested a copy of Ms. Makaeff's letter that Plaintiffs claim

6  triggered the obligation to impose a litigation hold.  In response, Plaintiffs provided two letters authored by

7  Ms. Makaeff.  One letter was sent to Bank of America on September 9, 2010, disputing charges from her

8  account to Defendants.  This letter was not sent to Defendants, it was sent to her bank, and certainly did not

9  trigger an obligation by Defendants' to initiate a litigation hold.  The other letter that Plaintiffs' provided

10  was sent by Ms. Makaeff's on September 10, 2009, to an individual named Tad Lignell.  However, it is

11  unclear what relationship Mr. Lignell, the only direct recipient of Ms. Makaeff's letter, had with Defendants.

12  His email address does not suggest any affiliation with Defendants, and Plaintiffs have failed to provide an

13  explanation as to how Mr. Lignell and Defendants are connected.

14  　　　It does appear that Mr. Lignell forwarded Ms. Makaeff's September 10, 2009, letter to Mr. Brad

15  Schneider.  Although Mr. Schneider's role in Defendants' companies is not clear from the letter submitted

16  to the Court, documents lodged in connection with a different dispute identify Mr. Schneider as being

17  affiliated with Defendants.[5]    Although Ms. Makaeff's letter to Mr. Lignell certainly is scathing, the

18  references made to a possible civil action are couched in a blatant request for a full refund, and more

19  importantly, a lawsuit against Mr. Lignell, not Defendants.  At best, it is ambiguous whether her threats of

20  litigation were directed to Trump University as well.  Ms. Makaeff wrote to Mr. Lignell,

21  　　　"...should Trump University chose (sic) not to refund my full **$34,995 plus the variable
　　　APR finance charges, interest fees, and late fees** unscrupulously charged to my account,
22  　　　I will have no choice but to hold **you** legally responsible for this entire amount as **you** have
　　　participated in this civil and criminal action."
23
(TU 71409).  She also stated,

24
　　　"After further discussions with counsel, albeit the gross negligence on **your** part, they are
25  　　　advising me that I make an attempt to settle with Trump University by obtaining a refund
　　　as previously mentioned so that we can go our separate ways.  While I do not like this idea
26  　　　as your organization has clearly misled me, I am willing to make this concession, take the
　　　refund, absorb the costs associated with time lost working on my other businesses, and not
27

28  　　　[5] Documents lodged with the Court in connection with another dispute listed Mr. Brad Schneider as the Customer
Service Director of Trump University.  (NYSED 000047, NYSED 000049)

10CV0940

further question **your** practices should I receive the **$34,995 plus the variable APR finance charges, interest fees, and late fees** refund mentioned above."

(TU 71409) (emphasis added to "you" and "your").

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Zublake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D.N.Y. 2003). Plaintiffs cite Zublake, 220 F.R.D. 212 (S.D.N.Y. 2003) to support their argument that Defendants had an obligation to institute a litigation hold on September 10, 2009, in response to Ms. Makaeff's letter to Mr. Lignell. (Joint Statement at 4.) However, the Zublake case can be easily distinguished from the instant situation. In Zublake, the court noted that it appeared almost everyone associated with the plaintiff recognized the possibility that she might sue. Zublake, 220 F.R.D. at 217. The court also determined that "the relevant people at UBS anticipated litigation in April 2001. The duty to preserve attached at the time that litigation was reasonably anticipated." Id. No similar showing has been made here as to any period prior to the filing of the instant lawsuit, and if the threat of litigation existed at all, it was as much directed to Mr. Lignell as to Defendants.

Here, the Court has not seen any evidence which would demonstrate that Defendants were put on notice that evidence related to Ms. Makaeff was relevant to litigation, or that Defendants should have known that such evidence may be relevant to litigation. First, it is not clear whether Mr. Lignell is a Trump University employee, or how he is affiliated with Defendants. Second, the Court agrees with Defendants' interpretation of the letter - that it was a request for a refund. Asking for a refund, albeit in an extremely demanding and accusatory manner, does not trigger an obligation to institute a litigation hold. The language in Ms. Makaeff's letter clearly shows that she was a disgruntled customer, but it did not rise to the standard set forth in Zublake, that Defendants should have known evidence related to Ms. Makaeff may be relevant to litigation. Plaintiffs have the burden to provide the Court with sufficient authority. The Court does not see this communication as being sufficient enough notice to Defendants.

Plaintiffs also cite Apple Inc. v. Samsung Elecs. Co., 2012 WL 3627731, 10 (N.D. Cal., Aug. 21, 2012) for the proposition that "there is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced." (Joint Statement No. 1 at 4; quoting Apple Inc., 2012 WL 3627731, 10.) Defendants do not appear to dispute the proposition that, in some cases, the duty to preserve

10CV0940

1   relevant evidence may arise even before litigation is formally commenced.  The Court certainly does not

2   dispute that proposition.  However, based on the evidence presented to the Court, this is just not one of those

3   cases.  Accordingly, the Court rejects Plaintiffs' argument that Defendants' litigation hold was untimely.

4

5                   **B. LITIGATION HOLD WAS SUFFICIENT**

6           Plaintiffs also allege that Defendants' litigation hold may not have been sufficient.  However,

7   Plaintiffs offered no rebuttal to Defense counsel's argument that Defendants have produced documents as

8   far back as 2004.  Nor have Plaintiffs shown that Defendants' document production was insufficient.

9   Moreover, the fact that some documents may be misplaced, and Plaintiffs secured documents from

10  secondary sources is not tantamount to a wholesale disregard of discovery obligation by Defendants.

11          If in fact a litigation hold should have been instituted when Ms. Makaeff sent the letter, which this

12  Court does not believe to be the case, the obligation to impose a litigation hold only arose as to documents

13  pertaining to Plaintiff Ms. Makaeff.  Plaintiffs conceded this point during the Discovery Hearing.

14

15  **C. NO REQUIREMENT TO NOTIFY FORMER EMPLOYEES AND INDEPENDANT CON-
    TRACTORS OF LITIGATION HOLD**

16              **1. Non-Represented Former Employees and Independent Contractors**

17          Plaintiffs claim that "Defendants may not have notified former employees and independent

18  contractors of the hold."  (Joint Statement No. 1 at 5.)

19          In FTC v. Lights of America, Inc., an unreported case from the Central District of California, the

20  court found that the plaintiff, FTC, had no obligation or right to issue a litigation hold on non-parties

21  Department of Energy ("DOE") or Pacific Northwest National Laboratory ("PNNL") because it did not have

22  possession or control over their documents.  FTC v. Lights of America, Inc., 2012 WL 695008 (C.D. Cal.

23  Jan. 20, 2012); MGA Entm't, Inc. v. Nat'l Prods. Ltd., 2011 WL 4550287, at 2 (C.D. Cal. Oct. 3, 2011).

24  The defendants argued that the plaintiff should have warned non-parties DOE and PNNL that they should

25  preserve information relevant to the investigation because it knew it would be relying on DOE and PNNL

26  studies in the litigation.  FTC v. Lights of America, Inc., 2012 WL 695008, at 6.

27          The defendants, like Plaintiffs in this case, cited the decision in World Courier v. Barone, 2007 WL

28  1119196 (N.D. Cal. April 16, 2007), to support their argument that the opposing party had an obligation to

1    impose a litigation hold on non-parties.  FTC v. Lights of America, Inc., 2012 WL 695008, at 6.  However,

2    World Courier is not applicable to either situation, as the defendant and the non-party in that case were

3    married and the defendant "at least had access to or maintained indirect control over" the spoliated evidence,

4    and thus had a duty to preserve it.  Id.  In contrast, the court found that the FTC is an agency entirely

5    independent of the DOE or PNNL, and the FTC did not have access or control - direct or indirect - over

6    those agencies' records.  Id.  Here, as discussed above, the Court finds that Defendants do not have control

7    over documents held by the majority of Defendants' former employees and independent contractors, and

8    therefore, Defendants did not have an obligation to notify them of the litigation hold.

9                    **2. Represented Former Employees and Independent Contractors**

10         As for the 22 individuals that are represented by Defense counsel, the Court finds that Defendants

11   did have an obligation to inform them of the litigation hold, which was implemented on the date that

12   Defendants were served with Ms. Makaeff's Complaint.  However, it is not entirely clear whether Plaintiffs

13   are claiming that these individuals were not notified.  Plaintiffs assert in their Joint Statement that

14   Defendants "may" not have notified former employees and independent contractors of the hold, and concede

15   that Defense counsel has advised that Defendants' representatives, Mr. Sexton, Mr. Bloom, and Mr. Matejek

16   were aware of the litigation hold, although Mr. Sexton could not recall when formers were notified.  (Joint

17   Statement No. 1 at 5.)  Defendants assert that, on May 12, 2010, the day that Trump University was served

18   with Plaintiff Ms. Makaeff's Complaint, it "initiated a company-wide litigation hold on all files and

19   information pertaining to the claim."  (Joint Statement at 8.)

20         Defendants state that company policy requires all employees and contractors to leave all documents

21   with Defendants upon termination of employment.  Therefore, even if the former employees were not

22   notified of the litigation hold after leaving the company, they presumably would no longer have documents

23   in their possession.  Based on the lack of any real assertions or arguments in this section of Plaintiffs' Joint

24   Statement, Plaintiffs' motion is DENIED.

25   **D. OBLIGATION TO PROVIDE REQUESTED DOCUMENTS REGARDING LITIGATION**
                                                     **HOLD**

26

27         In their Joint Statement, Plaintiffs request that the Court order Defendants to produce all documents

28   relevant to the litigation hold, including documents sufficient to show: (1) the names and titles of the

     persons notified of the litigation hold and the dates of such notifications; (2) the types of documents and

                                                          11                                              10CV0940

1   files (including ESI) subject to the litigation hold; and (3) any efforts to enforce the litigation hold.  (Joint

2   Statement No. 1 at 5.)

3        Although a litigation hold letter is likely not discoverable, particularly where it is shown that the

4   letter includes material protected by the attorney-client privilege or the work product doctrine, the basic

5   details surrounding the litigation hold are not.  See Cannata v. Wyndham Worldwide Corp, 2011 WL

6   3495987, at 2, 3 (D. Nev. Aug. 10, 2011).  A party may not foreclose *any* inquiry into the contents of those

7   notices at deposition or through other means.  Id. at 2; In re Ebay Seller Antitrust Litig., 2007 WL 2852364,

8   at 2 (N.D. Cal. Oct. 2, 2007).

9        In Cannata, the court stated that the plaintiffs were entitled to know "what kinds and categories of

10  ESI [the defendant's] employees were instructed to preserve and collect, and what specific actions they were

11  instructed to undertake to that end."  Id.  The court noted that the conclusion was supported by the Advisory

12  Committee's comments to Federal Rule of Civil Procedure 26(b)(2): "[t]he responding party must also

13  identify, by category or type, the sources containing potentially responsive information that it is neither

14  searching nor producing."  Advisory Committee Notes, 2006 Amendment.

15       Plaintiffs insist that the only way to resolve the efficacy of Defendants' litigation hold efforts, is to

16  depose a witness with knowledge.  The Court disgarees.  The Court is satisfied, based upon the record as

17  it exists, that Defendants have not destroyed or lost any documents, and in fact, have produced documents

18  dating back to 2004, six years before the Complaint was filed and four years before Ms. Makaeff sent her

19  letter to Mr. Lignell.  The few documents Plaintiffs obtained from third parties do not alter the Court's

20  conclusion that, with or without a litigation hold, Defendants did nothing to obstruct the discovery process

21  or to lose relevant documents.  A Declaration, in the Court's opinion, should address these concerns.  If the

22  Declaration is insufficient, then perhaps a Rule 30(b)(6) deposition may be appropriate.  Although

23  Defendants have offered to provide a sworn Declaration of their in-house counsel detailing their litigation

24  hold efforts, the proposed Declaration provided to the Court does not specifically address Plaintiffs' three

25  requests.

26  **IT IS HEREBY ORDERED** that within 30 days of the issuance of this Order, Defendants shall provide

27  Plaintiffs and the Court with a sworn Declaration detailing their litigation hold efforts and directly

28  addressing Plaintiffs three requests:  (1) the names and titles of the persons notified of the litigation hold

10CV0940

1 and the dates of such notifications; (2) the types of documents and files (including ESI) subject to the

2 litigation hold; and (3) any efforts to enforce the litigation hold.  (Joint Statement No. 1 at 5.)

3 ### III. **PLAINTIFF SHALL IDENTIFY RESPONSIVE DOCUMENTS**

4 On September 28, 2012, Defendants served their Fourth Set of Reqeusts for Production of

5 Documents ("RFPs") upon Plaintiffs.  (Joint Statement No. 2 at 1.)  Defendants asked for documents that

6 demonstrated the alleged misrepresentations which are central to Plaintiffs' claims in this case.  They

7 specifically asked for documents relating to Plaintiffs' claims about a one-year mentorship, guaranteed

8 success, and the use of scripts.  Plaintiffs' response to all of the RFPs was that all responsive, non-privileged

9 documents had already been produced.  (Joint Statement No. 2 at 1.)

10 Defendants have requested that Plaintiffs either produce the documents which contain the specific

11 alleged misrepresentations, identify the Bates stamp numbers of the pages which contain the specific alleged

12 misrepresentations, or state that no such documents exist.  (Joint Statment No. 2 at 1.)  Plaintiffs have

13 objected to this request as being unduly burdensome and oppressive, citing the fact that over 145,000 pages

14 of documents have already been produced in this litigation.

15 The Court finds that both sides have reasonable requests and objections.  Plaintiffs argue that Federal

16 Rule of Civil Prcoedure 34 requires a party responding to discovery to "produce documents as they are kept

17 in the usual course of business or must organize and label them to correspond to the categories in the

18 request."  Fed.R.Civ.P. 34(b)(2)(E)(i).  Plaintiffs also contend that, "'...where the documents produced are

19 responsive to the production requests, a responding party that produces documents as they are usually

20 maintained in the ordinary course of business bears no duty to label or otherwise organize the documents.'"

21 (Joint Statement No. 2 at 3; quoting AIG Centennial Ins. Co. v. O'Neil, 2010 WL 4116555, 13 (S.D. Fla.,

22 Oct. 18, 2010).

23 On the other hand, "Rule 34 is generally designed to facilitate discovery of relevant information by

24 preventing 'attempts to hide a needle in a haystack by mingling responsive documents with large numbers

25 of nonresponsive documents."  Community House, Inc. v. City of Boise, Idaho, 2009 WL 1650463, 2 (D.

26 Idaho Jun. 12, 2009); quoting Armor Screen Corp. v. Storm Catcher, Inc., 2009 WL 291160 (S.D. Fla. Feb.

27 5, 2009).  The Federal Rules should be interpreted to require ESI productions to be organized in such a way

28 as to facilitate, not hinder, the usefulness of the information produced.  City of Colton v. American

1  Promotional Events, Inc., 277 F.R.D. 578, 584 (C.D. Cal. 2011). "Rule 34(b)(2)(E)(i) is meant to prevent

2  a party from obscuring the significance of documents by giving some structure to the production." Id.;

3  quoting Consolidated Rail Corp. v. Grand Trunk Western R.R. Co., 2009 WL 5151745, 3 (E.D. Mich.

4  2009). In revising Rule 34(b), the Advisory Committee expressed its intent to discourage parties from

5  raising "unnecessary obstacles for the requesting party" in the production of ESI. Fed.R.Civ.P. 34 Advisory

6  Committee's notes (2006 Amendment, subdivision (b)).

7      In Community House v. City of Boise, Idaho, the plaintiffs repeatedly argued that the defendants

8  had done just that, hiding pivotal documents in the midst of nonresponsive documents. Community House,

9  Inc., 2009 WL 1650463, at 2. However, the court found two facts that argued against such a determination.

10  Id. First, the plaintiffs' RFPs were extremely broad and generalized. Id. Second, the court determined that

11  the twenty-six boxes of documents produced by the defendants was not an unreasonable production in

12  response to over one hundred broad requests. Id.

13      In City of Colton, the Central District of California found that the production of ESI must be

14  rationally organized to enable the parties to determine if responsive documents have been produced. City

15  of Colton, 277 F.R.D. at 584. The court explained that a producing party fails to meet its Rule 34

16  obligations by producing a mass of undifferentiated documents for the responding party to inspect. Id. at

17  584-585.

18      While Rule 34 does not obligate a producing party to *per se* organize and label usable
        documents for the requesting party's convenience, a party exercising Rule 34's option to
19      produce records as they are kept in the usual course of business should organize the
        documents in such a manner that the requesting party may obtain, with reasonable effort, the
20      documents responsive to their requests....

21  Id.

22      The court determined that the correct standard was whether the production of documents allowed

23  the requesting party to reasonably determine what documents were responsive to its requests. Id. If so, the

24  production complied with Rule 34(b)(2)(E)(i). Id. If not, then the production did not comply. Id.

25      Here, in contrast to the over one hundred broad discovery requests propounded in Community

26  House, Inc., Defendants' Fourth Set of RFPs consist of twelve narrowly tailored requests for documents that

27  contain fairly specific information or language central to Plaintiffs' claims. The Court is persuaded by the

28  case law that has determined a party has not fully complied with Rule 34 if responsive documents are hidden

1   within a large amount of non-responsive documents.  Plaintiffs' refusal to identify documents responsive

2   to the twelve RFPs resembles an attempt to hide a needle in a haystack.

3        During the Discovery Hearing, Defendants offered a reasonable compromise.  They asked Plaintiffs

4   to identify only one document for each main category of RFPs.  The Court does not find Defendants' request

5   to be unreasonable, especially considering that Plaintiffs, at this stage in the proceeding, should be able to

6   identify without extraordinary effort, the representations that they have been relying upon for the entire

7   lawsuit.  Plaintiffs brought the lawsuit based on alleged misrepresentations by Defendants, it is certainly

8   not unreasonable for Plaintiffs to have to identify what they are relying on as a basis for their entire case.

9

10        Plaintiffs argue that they have already identified the Bates stamp numbers for responsive documents

11   in their Motion for Class Certification.  Having reviewed the documents identified in Plaintiffs' Motion, the

12   Court does not agree that this is a sufficient response to Defendants' RFPs.  Several of the documents cited

13   have been filed under seal, with their descriptions redacted in the Motion.  However, even if the documents

14   identified in the Motion for Class Certification are in fact the documents that Plaintiffs believe to be

15   responsive to Defendants' RFPs, or to be a sample of the responsive documents, they must respond to

16   Defendants' RFPs in a straightforward manner.

17   **IT IS HEREBY ORDERED** that <u>within 30 days</u> of the issuance of this Order, Plaintiffs shall provide <u>one</u>

18   sample document in response to each general category in Defendants' Fourth Set of RFPs:  (1) one year

19   mentorship; (2) guarantee of success; and (3) scripts.  After Plaintiffs have complied with this Order, if

20   Defendants still have objections to Plaintiffs' respones, Defendants shall contact the Court immediately.

21   **IV. <u>RULE 30(b)(6) WITNESS DEPOSITION REQUEST</u>**

22

23        Plaintiffs served Defendants with a Rule 30(b)(6) deposition notice dated May 18, 2012.  Plaintiffs

    then deposed several witnesses pursuant to that notice.  On October 12, 2012, Plaintiffs served Defendants

24   with a second Rule 30(b)(6) deposition notice with topics that relate to Defendants' document production,

25   litigation hold, and preservation.  (Joint Statement No. 1 at 6.)  These topics were not listed in the first

26   deposition notice.  However, Defendants argue that the Rule 30(b)(6) witnesses already produced were

27   questioned, without objection, about the topics listed in the second notice.  Defendants also offered to

28

1   provide a Declaration from their in-house counsel, detailing their litigation hold and preservation efforts.

2   At the request of the Court, Defendants provided excerpts from the deposition transcripts of the

3   Defense Rule 30(b)(6) witnesses that have already been deposed, Mr. Highbloom and Mr. Sexton.  The

4   excerpts show that Mr. Highbloom was asked numerous questions about Defendants' document retention

5   policy, but the excerpts from his deposition did not include questions regarding a litigation hold.  Mr. Sexton

6   was asked questions about both document retention and a litigation hold.

7   Federal Rule of Civil Procedure 26 governs the scope and limits of discovery.  Fed.R.Civ.P.

8   26(b)(2). Federal Rule 26(b)(2)(C) states that, on motion or on its own, the court must limit the frequency

9   or extent of discovery otherwise allowed by the Rules or by local rule if it determines that:

10
11   (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from
some other source that is more convenient, less burdensome, or less expensive;

12   (ii) the party seeking discovery has had ample opportunity to obtain the information by
discovery in the action; or

13   (iii) the burden or expense of the proposed discovery outweighs its likely benefit,
considering the needs of the case, the amount in controversy, the parties' resources, the
14   importance of the issues at stake in the action, and the importance of the discovery in
resolving the issues.

15

16   Here, Defendants have offered to provide a sworn Declaration detailing their litigation hold and

17   preservation efforts.  Plaintiffs argue that a Declaration is not good enough, and contend that Defendants

18   must make Rule 30(b)(6) witnesses available to respond to questions on these topics.  At this time, the Court

19   finds that another Rule 30(b)(6) witness deposition on these topics would be unreasonably cumulative, as

20   the information sought can be obtained from a Declaration which is certainly more convenient, less

21   burdensome, and less expensive than making Defendants' one remaining employee, former Trump

22   executives, and all counsel attend yet another Rule 30(b)(6) deposition.  Fed.R.Civ.P. 26(b)(2)(C)(i).

23   Moreover, the burden and expense of another Rule 30(b)(6) deposition outweights its likely benefit,

24   considering that Plaintiffs' desire to take this deposition appears to be for the sole purpose of determining

25   whether all documents have been searched and relevant documents have been produced.  If Plaintiffs had

26   provided the Court with more compelling evidence that documents are being lost, destroyed, or simply not

27   produced, this outcome would likley be different.  However, as discussed above, Plaintiffs have provided

28   the Court with a small fraction of documents missing from Defendants' production, and in light of the

1  130,000 documents that Defendants have produced to date, the Court finds that a Rule 30(b)(6) deposition

2  on these topics would be unreasonably cumulative and the desired information can be obtained from a

3  Declaration.

4  **V. <u>CONCLUSION</u>**

5          The parties shall comply with all orders set forth above.  Further, the parties shall thoroughly meet

6  and confer <u>in good faith</u> if additional discovery disputes arise.  (Judge Gallo's Chambers Rule IV.)

7  IT IS SO ORDERED.

8  DATED:  December 24, 2012

9

10                                          Hon. William V. Gallo

11                                          U.S. Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17