ROBBINS GELLER RUDMAN
    & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 906
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>Defendants. | No. 3:10-cv-00940-GPC(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES AND APPOINTMENT OF CLASS COUNSEL<br><br>JUDGE:   Hon. Gonzalo P. Curiel<br>DATE:    June 28, 2013<br>TIME:    1:30 p.m.<br>CTRM:    9 (Schwartz) |

**[REDACTED]**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   DEFENDANTS' ARGUMENTS SUPPORT CLASS CERTIFICATION ........................ 3

    A.   COMMONALITY:  Readily Shown through Common Evidence
Establishing Defendants' Scheme Was Centrally Orchestrated ............................ 3

        1.   The PlayBook ................................................................................ 4

        2.   The Marketing Guidelines ............................................................. 6

        3.   Standardized PowerPoint Presentations with Talking Points .................... 6

        4.   Personnel Contracts ...................................................................... 7

    B.   TYPICALITY:  Defendants' Contention That "No Class Member Is
Typical" Proves Too Much ............................................................................ 7

    C.   PREDOMINANCE:  Common Questions Concerning Defendants'
Scheme Predominate Over Individualized Issues .............................................. 8

        1.   Reliance May Be Shown Classwide Due to the Centrally-
Orchestrated Scheme and Uniform Misrepresentations/Omissions ............ 9

        2.   Class Members' Expectations Do Not Defeat Predominance ................. 12

        3.   Individualized Damages Do Not Defeat Predominance ........................ 13

    D.   SUPERIORITY: This Class Action Is Manageable ............................................. 13

        1.   The Subclasses Are Sufficiently Numerous ...................................... 14

        2.   The Consumer Protection Statute Subclasses Are Certifiable ................. 14

        3.   The Senior Subclasses Are Certifiable ............................................ 14

        4.   The Common Law Subclasses Do Not Require Individual Inquiry .......... 15

III.  DEFENDANTS RAISE MERITS QUESTIONS COMMON TO THE CLASS ............... 16

    A.   Defendants Attempt to Convert this Motion into Summary Judgment ................. 16

    B.   Defendants' "Approval Rating" Is False and Raises Common Issues ................. 17

    C.   The Declarations of Former "Students" Should Be Disregarded as the
Fruit of Defendants' Misleading Communications ........................................... 19

    D.   Defendants' Rehash of Their Motion to Dismiss as to Donald Trump Does
Not Justify Denial of Certification as to that Defendant .................................... 20

IV.   CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................................8

*Beck-Ellman v. Kaz USA, Inc.*,
   283 F.R.D. 558 (S.D. Cal. 2012) .........................................................8, 15

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
   242 F.3d 290 (5th Cir. 2001)....................................................................19

*Black Diamond Props., Inc. v. Haines*,
   940 So.2d 1176 (Fla. Dist. Ct. App. 2006) ..............................................16

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975).....................................................................16

*Brazil v. Dell, Inc.*,
   No. c-07-01706 RMW, 2010 WL 5387831
   (N.D. Cal. Dec. 21, 2010)..........................................................................10

*Butler v. Sears*,
   702 F.3d 359, 2012 U.S. App. LEXIS 23284
   (7th Cir. 2012)............................................................................................8

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010).........................................................12, 13

*Davis v. Homecomings Fin.*,
   No. C05-1466RSL, 2006 WL 2927702 (W.D. Wash. Oct. 10, 2006)..........13

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009).....................................................................17

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011), *cert granted*, 285 F.R.D. 492 (2012).........2, 16

*Gonzalez v. P&G Co.*,
   247 F.R.D. 616 (S.D. Cal. 2007) ..........................................................11, 16

*Graham v. Sec. Sav. & Loan*,
   125 F.R.D. 687 (N.D. Ind. 1989) *aff'd*, 914 F.2d (7th Cir. 1990) .............15

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011).........................................................13, 17

**Page**

*In re First Alliance Mortg. Co.,*
   471 F.3d 977 (9th Cir. 2006)..................................................................................7, 10

*In re Live Concert Antitrust Litig.,*
   247 F.R.D. 98 (C.D. Cal. 2007)..................................................................................13

*In re Nat'l Western Life Ins. Deferred Annuities Litig.,*
   268 F.R.D. 652 (S.D. Cal. 2010)......................................................................12, 14, 20

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.,*
   No. ML 10-02199 DDP(RZx), 2012 U.S. Dist. LEXIS 141150
   (C.D. Cal. Sept. 28, 2012)...........................................................................................2, 10

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
   264 F.R.D. 603 (N.D. Cal. 2009)..................................................................................8

*In re Taco Bell Wage and Hour Actions,*
   No. 1:07cv1314 LJO DLB, 2012 WL 5932833 (E.D. Cal. Nov. 27, 2012) ...........................16

*In re TFT-LCD Antitrust Litig.,*
   No. M07-18275 SI, MDL No. 1827, 2011 U.S. Dist. LEXIS 84476
   (N.D. Cal. July 28, 2011)............................................................................................7

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ............................................................................................9, 11

*In re Wells Fargo Home Mortg.,*
   571 F.3d 953 (9th Cir. 2009)......................................................................................9

*Johnson v. General Mills, Inc.,*
   276 F.R.D. 519 (C.D. Cal. 2011)..................................................................................12, 13

*Johnston v. HBO Film Mgmt.,*
   265 F.3d 178 (3rd Cir. 2001)......................................................................................11

*Jones v. AIG Risk Mgmt.,*
   726 F. Supp. 2d 1049 (N.D. Cal 2010) ......................................................................11

*Krueger v. Wyeth, Inc.,*
   No. 03cv2496, 2011 U.S. Dist. LEXIS 154472
   (S.D. Cal. Mar. 29, 2011) ..........................................................................................10

*Lease Cruchter Lewis WA, LLC v. Nat'l Union Fire Ins. Co.,*
   No. C08-1862 RSL, 2009 WL 3444762
   (W.D. Wash. Oct. 20, 2009)........................................................................................20

**Page**

*Lozano v. AT&T Wireless Servs., Inc.,*
    504 F.3d 718 (9th Cir. 2007) .................................................................. 12

*Lubin v. Sybedon Corp.,*
    688 F. Supp. 1425 (S.D. Cal. 1988) ...................................................... 20

*Marascalco v. Int'l Computerized Orthokeratology Soc'y,*
    181 F.R.D. 331 (N.D. Miss. 1998) ........................................................ 15

*Mass. Mut. Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (2002) .................................................................. 9

*Mazza v. Am. Honda Motor Co., Inc.,*
    666 F.3d 581 (9th Cir. 2012) ............................................................ 10, 11

*McCracken v. Best Buy Stores, L.P.,*
    248 F.R.D. 162 (S.D.N.Y. 2008) .......................................................... 15

*Meyer v. Portfolio Recovery Assocs., LLC,*
    No. 11cv1008 AJB(RBB), 2011 U.S. Dist. LEXIS 156610
    (S.D. Cal. Sept. 14, 2011), *aff'd,* 696 F.3d 943 (2012) ......................... 3

*Mullaney v. Delta Airlines, Inc.,*
    258 F.R.D. 274 (S.D.N.Y. 2009) .......................................................... 16

*Nazir v. United Airlines, Inc.,*
    178 Cal. App. 4th 243 (2009) .................................................................. 3

*Philip Morris USA, Inc. v. Scott,*
    __ U.S. __, 131 S. Ct. 1 (2010) ............................................................ 20

*Plascencia v. Lending 1st Mortg.,*
    259 F.R.D. 437 (N.D. Cal. 2009) ............................................................ 9

*Poulos v. Caesars World, Inc.,*
    379 F.3d 654 (9th Cir. 2004) ................................................................ 13

*Ramirez v. Smart Corp.,*
    863 N.E. 2d 800 (Ill. App. Ct. 2007) .................................................... 15

*Ries v. Ariz. Beverages USA, LLC,*
    No. 10-01139 RS, 2012 U.S. Dist. LEXIS 169853
    (N.D. Cal. Nov. 27, 2012) ............................................................... 12, 15

1

2                                                                                                    **Page**

3   *Rivera v. Bio Engineered Supplements & Nutrition, Inc.,*
        No. SACV 07-1306JVS, 2008 U.S. Dist. LEXIS 95083
4        (C.D. Cal. Nov. 13, 2008)...................................................................................................13

5   *Rollins, Inc. v. Butland,*
        951 So.2d 860 (Fla. Dist. Ct. App. 2006) ...................................................................14, 15
6

7   *Sarviss v. Gen. Dyn. Info. Tech., Inc.,*
        663 F. Supp. 2d 883 (C.D. Cal. 2009)..............................................................................7

8
    *Schwarm v. Craighead,*
9        233 F.R.D. 655 (E.D. Cal. 2006) ....................................................................................12

10  *Small v. Lorillard Tobacco Co., Inc.,*
        N.E. 2d 892 (N.Y. 1999) ..................................................................................................14
11

12  *Stearns v. Ticketmaster Corp.,*
        655 F.3d 1013 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1970 (2012) ........................13, 14
13

14  *Tait v. BSH Home Appliances Corp.,*
        No. SA CV 10-0711 DOC(ANx), 2012 U.S. Dist. LEXIS 183649
15       (C.D. Cal. Dec. 20, 2012) ...............................................................................................14

16  *Tanedo v. East Baton Rouge Parish Sch. Bd.,*
        No. LACV 10-01172 JAK(MLGx), 2011 U.S. Dist. LEXIS 152329
17       (C.D. Cal. Dec. 12, 2011) ...............................................................................................13

18  *United States v. Bentson,*
        947 F.2d 1353 (9th Cir. 1991) .........................................................................................17
19

    *Valentino v. Carter-Wallace, Inc.,*
20       97 F.3d 1227 (9th Cir. 1996) ...........................................................................................14

21  *Wal-Mart Stores, Inc. v. Dukes,*
        __ U.S. __, 131 S. Ct. 2541 (2011).........................................................................2, 3, 4, 16
22

23  *Wal-Mart Stores v. Lopez,*
        93 S.W.3d 548 (Tex. App. 2002) .....................................................................................16
24

25  *Wiener v. Dannon,*
        255 F.R.D. 658 (C.D. Cal. 2009).....................................................................................13

26  *Williams v. Veolia Transp. Servs., Inc.,*
        379 Fed. Appx. 548 (9th Cir. 2010) ..................................................................................9
27

28

|  |  | Page |
|---|---|---|
| *Wolin v. Jaguar Land Rover N. Am., LLC,* | | |
| 617 F.3d 1168 (9th. Cir. 2010) | | 8 |
| *Zinser v. Accufix Research Inst., Inc.,* | | |
| 253 F.3d 1180 (9th Cir. 2001) | | 14 |

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23.................................................................2, 8, 16
Rule 23(a)(2)................................................................3
Rule 23(b)(3)..............................................................12

California Civil Code
§§1668, 1751..............................................................16

**SECONDARY AUTHORITIES**

*Restatement (Second) of Torts*
§533.........................................................................11

## I.    INTRODUCTION

Defendants uniformly misled consumers that they would learn Donald Trump's real-estate secrets through his experts at his elite "University" ("TU"). From the 90-minute free "Preview," an advertisement for the 3-day Seminar, which defendants then used to up-sell the "Elite" Mentorships, the Trump branding machine's message was clear: We will teach you how to invest in real estate the Trump Way! It was the Trump name, reputation and expertise that was used as *the* selling point for everything TU did. How do you get someone to spend $35,000 on a real-estate class? By making them believe they will get the closely-held real-estate techniques of billionaire mogul, Donald Trump. Even the mass of papers filed by Defendants cannot hide that Defendants' deceptive scheme is readily shown by common proof.

The Proposed Class Representatives, like the Better Business Bureau ("BBB"), and state agencies, have challenged Defendants' deceptive practices. In 2005, the New York State Education Department ("NYSED") advised Defendants their title "University" was illegal and misleading, and they needed a license. ███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████[1] The BBB gave Trump University a "D-," and Texas' investigation led to Defendants shutting down in that State.[2]

Defendants' Opposition ("Opp.") to class certification is a classic attempt to deflect the Court's attention from the misrepresentations *at the heart of this action* by lobbing scattershot arguments about the "diversity" of the Class. Defendants' side show about individual backgrounds and experiences does not preclude certification. Consumers always hail from diverse walks of life with different motivations and opinions, yet consumer class actions are routinely certified. Where, as here, Defendants engage in a common course of conduct, portray their services in an objectively misleading manner to the "reasonable consumer," the Court may certify the Class.

---

[1]    *See* Ex. 67, TU 129818-129857. ███████████████████ Ex. 68, NYSED 000067-77. The NY AG still has an investigation pending. Ex. 69, TU-PLTF 02447-51. Here, and throughout, unless otherwise noted, references to "Exs. 1-66" are to Exhibits to the Declaration of Amber L. Eck in Support of Plaintiffs' Motion for Class Certification (Dkt. No. 122-2); references to "Ex. 67-137" are to the concurrently filed Jensen Declaration; and references to "DEx." herein are to the Declaration of David K. Schneider in Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 138-1). Further, emphasis is added and citations are omitted unless otherwise noted.

[2]    *See* Ex. 70, TU 135883 (workshops suspended in 2010 in Texas as a result of investigation).

1    Moreover, far from being "diverse," each Class Member is similarly situated in this respect: no matter which or

2    how many Live Events he or she bought, each was sold the same bill of goods: they would learn Trump's real

3    estate methods from his University. Defendants do not deny it. Defendants admit they claimed Donald Trump

4    "hand-picked" the "expert" faculty and his real-estate investing "secrets" would be taught. Defendants also

5    admit 80,304 consumers were subjected to the 90-minute "Preview" advertisement through standardized

6    PowerPoint presentations, and all initial sales calls, including calls to the 80,000-plus attendees of the free

7    Preview, were done by script. Since this lawsuit was filed, Defendants have announced they are "completely

8    revamping" TU to provide "more Trump" because "that's what students really want" – but did not get.[3]

9          Because Defendants cannot mount a serious challenge to class certification, they attempt to turn this into

10   a motion for summary judgment. However, even after *Wal-Mart Stores, Inc. v. Dukes,* __ U.S. __, 131 S. Ct.

11   2541 (2011), class certification is not a mini-trial. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 981, 983 n.8

12   (9th Cir. 2011), *cert granted,* 285 F.R.D. 492 (2012) (cited in *In re POM Wonderful LLC Mktg. & Sales*

13   *Practices Litig.,* No. ML 10-02199 DDP(RZx), 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. Sept. 28, 2012)).

14   This motion is not evaluated by who will prevail, but whether the claims are susceptible to common proof.

15          While long on paper. Defendants do not dispute certain Rule 23 factors, raise "straw man" arguments,

16   and aggressively misstate the facts. For example, Defendants contest neither numerosity nor adequacy, nor

17   application of multi-state law, and only vaguely argue why individual "inquiry" undermines predominance or

18   superiority. Indeed, Defendants' opposition demonstrates Class Members' claims may be tried together because

19   ███████████████████████████████████ *See, e.g.,* Ex. 72, Covais Dep. at 18:1-24, 21:4-13,

20   21:19-22:4, 23:15-18, 25:9-21, 32:10-34:2, 66:21-24, 119:22-121:9, 141:14-142:8, 157:7-25.

21          Further, Defendants rely on their purported 97% approval rating to show no one was harmed.

22   However, not only is their rating demonstrably false, it is an issue common to the Class. Defendants' tactics

23   backfired in ████████████████████████████████████████████████

24   ████████████████████████████████████████████████

25

26   _____

27   [3]     *See* Ex. 71, TU-PLTF0006-18 "New York Attorney General is Investigating Trump's For Profit
     School," May 19, 2011 *New York Times* article (students want to "inject more Trump" into the courses); Ex. 1
28   (handwritten notes of calls with Sexton/Sorial/Corvais); Ex. 28, Trump Dep. at 50:23-51:6 (recognizing that it
     was his name that drew people in).

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████████

5    In the end, common questions about Defendants' course of conduct predominate over any

6 individualized issues about Plaintiffs and the Class.  Either Donald Trump's University was a legitimate

7 academic institution or it was not, either Donald Trump "hand-picked" Trump University's faculty of "experts"

8 or he did not, either he was or was not "involved" in Trump University, and either he did or did not teach his real

9 estate "secrets" to "students."  These questions do not depend on any individualized inquiry but on Defendants'

10 common course of conduct toward the Class.  Plaintiffs respectfully request their motion be granted.

## II.   DEFENDANTS' ARGUMENTS SUPPORT CLASS CERTIFICATION

12    Notwithstanding their "kitchen sink" strategy, Defendants' opposition boils down to commonality,

13 typicality and predominance issues.[4]  They do not challenge numerosity of the Class overall or adequacy.  Once

14 one parses through the rhetoric, Defendants' documents show certification is appropriate.

### A.   COMMONALITY: Readily Shown through Common Evidence Establishing Defendants' Scheme Was Centrally Orchestrated

17    As Defendants admit, commonality is a low bar.  Even after *Dukes*, the requisite showing is "minimal."

18 *Meyer v. Portfolio Recovery Assocs., LLC.*, No. 11cv1008 AJB(RBB), 2011 U.S. Dist. LEXIS 156610, at *9

19 (S.D. Cal. Sept. 14, 2011), *aff'd*, 696 F.3d 943 (2012).  Plaintiffs have offered considerable evidence of common

20 questions as to Defendants' centrally-orchestrated scheme and misleading advertising campaign.  Dkt. No. 122-

21 1, §II.A-F.  Defendants' contention that commonality cannot be shown because "what each TU student got was

22 extremely varied" misses the mark.  Opp. at 18.  Commonality, is not based on individual consumers'

23 backgrounds and experiences, but *Defendants'* centrally-orchestrated scheme."

24    *Dukes* is instructive.  The Supreme Court did *not* require plaintiff to prove her case on the merits at class

25 certification; it merely required that common questions be susceptible to common answers.  For purposes of

26 Rule 23(a)(2), "[e]ven a single [common] question" will suffice so long as it provides "glue" amongst the

---

[4]    The girth of materials (over 6,700 pages) submitted by Defendants to clutter the record is inappropriate. *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 251 (2009).

1    various claims. *Dukes*, 131 S. Ct. at 2556, 2545. In *Dukes*, there was no "glue" because Wal-Mart had no

2    policy of discrimination, and the decisions were at the local level. *Id.* at 2557. In stark contrast, here, the "glue"

3    is the tight control of TU's sales strategy, advertising and marketing, and branding by Donald Trump and TU.

4    Individual instructors ***did not have discretion*** like the supervisors had in *Dukes*, as evidenced by the PlayBook,

5    Rules of Engagement, personnel contracts, and other documents. Indeed, Defendants admit "TU's 'Rules of

6    Engagement' and similar contractual controls ensured compliance by the TU faculty as a matter of TU policy."

7    Opp. at 10. It is disingenuous for Defendants to take great pains to ensure instructors and mentors did not

8    deviate from company-approved materials and then sweep them under the rug.

9        Unlike *Dukes*, direct evidence shows Defendants engaged in a common course of conduct that was

10   uniformly orchestrated via the PlayBook, through branding, advertisements, marketing, course materials, sales

11   scripts, visual and audio displays, and PowerPoint presentations. The chart submitted as Ex. 74 depicts how

12   tightly-controlled messaging was uniformly portrayed by TU in a misleading manner. Indeed, the ***same***

13   ***deceptive scheme*** was perpetrated by getting consumers to rely on Trump University's "marquee brand," tone

14   and message. Regardless of the medium–whether newspaper print ads, mailers, direct emails, Internet ads,

15   website, PowerPoint presentations, radio, visual and audio displays, or sales scripts, Defendants projected the

16   same misleading message to the public. No matter whether the Class Member saw the Trump Video or a

17   particular ad, no matter whether they bought the 3-day Seminar or Mentorship, Defendants' overarching

18   messaging touting Donald Trump's personal expertise was ***omnipresent in every aspect of TU advertising***.

19       **1.    The PlayBook**

20       If the Court were to review a single document, it is the PlayBook. ████████████

21   ████████████████████████████████████████████████

22   ████ *See, e.g.*, Ex. 12 (2010 PlayBook). Defendants downplay the PlayBook by characterizing it as a 2010

23   ████████████████████ ████████████████████████████

24   ████████████████████████████ Ex. 17 at 161:23-163:15; Ex. 12, TU 52934-

25   3105:2010; Ex. 75, TU 130419-550: 2009; Ex. 76, TU 130393-418: 2008; Ex. 77, TU 130294-340: 2007; Ex.

26   78, TU-DONNELLY00000475-503 at 503. ████████████████████████

27   ████████████████████████████████████████████████

28   ████████████████████████████████████████████████



1    ███ Ex. 17 at 163:10-15; Ex. 14 at 306:7-12. ████████████████

2    ███████████████████████████████████████████████████████████" Ex.

3    17 at 196:16-197:20. ██████████████████████████████████████████

4    ████████████████████████████████ Ex. 17 at 196:16-197:20.

5    ███████████████████████████ *See* Ex. 75, TU 130419-

6    550 (2009 PlayBook) at TU 130427; Ex. 12 at TU 52946-47, 52960 (2010 PlayBook). ███████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ███████ Ex. 75 at TU 130436. ████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ███████████████████████████████████████ Ex. 75 at TU 130434-35.

13   These are consistent with other ads. Ex. 79 (Ad Chart).

14        Defendants' misleadingly say ████████████ Opp. at 10 (emphasis in original). ████

15   ████████████████████████████

16
     ████████████████████████████████████████████████████
17   ████████████████████████████████████████████████

18   Ex. 12 at TU 53041, 53062-63.  In addition, salespersons (aka "setter" or "screener" who are not simply

19   "schedulers") used scripts to call all students who had attended the free Preview (over 80,000 people) to up-sell

20   them to another product. Ex. 80, Nicholas Dep. at 236:24-237:21; Ex. 72, Covais Dep. at 88:19-89:6 (███

21   ████████████████████), 173:5-174:25, 185:14-187:4, 198:5-13 (███████████████████████

22   ██████; 225:16-22 (████████████████████████████).[5]

23   ████████████████████████████████████████████████

24   ─────────────────

25   [5]    Salespersons followed the scripts "word for word," as they were "psychologically tested" for maximum
     impact. Ex. 80, Nicholas at 49:7-50:10; Ex. 81, Donnelly at 94:3-95:23, 203:3-10 ("I do know that there was a

26   script issued while I was there to make sure everything was *uniform*."); Ex. 77 (████████████████████

27   ██████); Ex. 82 (████████████████████████████████) Ex. 81, Donnelly Dep. at 31:18-22, 182:7-
     183:14, 208:13-209:1.  This was part of the "scarcity" model. *Id.* at 183:3-10; Ex. 72, Covais Dep. at 188:17-

28   189:2 (████████████████████████████████████████████████████████████████).



1 ██████████████████████████ Ex. 75 at TU 130465 (2009 PlayBook). TU's website said:

2 "After completing the [3-day] program you will have **direct access to your Mentor for 12 months** to field any

3 questions that may arise." Ex. 46 at TU 69463. ████████████████ (Ex. 75 at TU 130471

4 (2009 PlayBook)), ███████████████████████████████

5 Ex. 75 at TU 130476. ████████████████████████████

6 ███████████████████████████████████ Ex. 12 at

7 TU 53031-53072. ████████████████████████████

8 ███████████████████████████████████████

9 ███████████████████████ Ex. 12 at TU 53062. ███████████

10 ████████████████████████ Ex. 12 at TU 52984-85.

11       **2.**      **The Marketing Guidelines**

12       TU was governed by corporate "Marketing Guidelines," designed to "***ensure brand, tone and message***

13 ***across all Trump University's marketing efforts***." Ex. 83 at TU-DONNELLY00000001-20 at 14 (Marketing

14 Guidelines); *see id.* (purpose "to define and establish Trump University's branding strategy across *all*

15 communication mediums both in visual and copy form."). The Guidelines were "to ensure everybody was

16 adhering to brand guidelines and how [TU] presented materials." Ex. 81, Donnelly Dep. at 204:23-205:10. The

17 Guidelines required use of "Ivy League quality" as "Catch Phrases/Buzz Words." Ex. 83 at 16. TU's "faculty"

18 was comprised of Donald Trump's "top experts." *Id.* at 15. The "tone" was to "Think of Trump University as a

19 real University with a real Admissions process, *i.e.*, not everyone who applies, is accepted." *Id.* at 17. Thus, the

20 deceptive brand, tone and message infected *all* the messaging for Trump University.[6]

21       **3.**      **Standardized PowerPoint Presentations with Talking Points**

22 ███████████████████████████████████

23 ██████████████████ Ex. 85, Sexton Dep. at 203:17-25, 219:11-21, 318:12-19.

24

---

25 [6]     Defendants reference online programs, DVDs and other products. But, the Class includes those

26 ensnared in the up-sell scheme depicted in the PlayBook – who were up-sold to the 3-day Seminar and/or the Elite programs, which includes Field Mentorships and the Apprentice program. *See* Ex. 12 at TU 52938; Ex.

27 84, TU 130015. Thus, all Class Representatives are Class Members. Moreover, while TU used different names (*e.g.*, fast track to foreclosure investing workshop, real estate blueprint, profit from foreclosure), they all referred

28 to the same 90-minute Preview or 3-day Seminar. *Id.*; Ex. 17 at 199:9-201:11, 235:18-236:24.



1

2        Ex. 86, TU 105520.

3

4 Ex. 26 at TU 48857.

5        ” Ex. 12 at TU 53004.

6        DEx. 39.

7        *See, e.g.*, Ex. 87, TU 121746.

8

9

10        *See* Ex. 88 (        ).

11        **4.**    **Personnel Contracts**

12

13        *See, e.g.*, Ex.

14 24 at TU 48770, ¶2.02; Ex. 26 at TU 48857.

15        *Id.*

16    **B.**    **TYPICALITY: Defendants' Argument "No Class Member Is Typical" Proves Too Much**

17        Under Defendants' standard, no class representative is typical. Yet, Defendants admit that typicality is a

18 "'low bar.'" Opp. at 19. "Factual differences will not render a claim atypical if the claim arises from the same

19 event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the

20 same legal theory." *Sarviss v. Gen. Dyn. Info. Tech., Inc.*, 663 F. Supp. 2d 883, 909 (C.D. Cal. 2009).

21        Here, Class Representatives Brown, Everett, Low, Makaeff, and Oberkrom's claims are fundamentally

22 identical to those of Class Members they seek to represent.[7] *See In re First Alliance Mortg. Co.*, 471 F.3d 977,

23 991 (9th Cir. 2006) ("centrally-orchestrated scheme to mislead" forms nucleus of class claims). "'[T]he

24 overarching scheme is the linchpin of plaintiffs' complaint, regardless of the product purchased, the market

25 involved or the price ultimately paid.'" *In re TFT-LCD Antitrust Litig.*, No. M07-18275 SI, MDL No. 1827,

26

27    [7]     Brandon Keller is not a class representative. Low, Oberkrom and Brown purchased Field Mentorship
as part of the up-sell from the 3-day Seminar – the "Gold Elite" without the "workshops." Ex. 84, TU 130015;

28 Ex. 89, TU 01335-36; Ex. 90, TU 129678-79.

1   2011 U.S. Dist. LEXIS 84476, at *26-*27 (N.D. Cal. July 28, 2011). The linchpin is the overarching deception

2   trading on Trump's brand and his proprietary "secrets" through a "University." Plaintiffs are typical.

3          Defendants' focus on purported differences among programs, prices, instructors, materials and

4   experiences misses the mark. "The typicality requirement does not mandate that the products purchased,

5   methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class

6   members." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal.

7   2009); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th. Cir. 2010) ("fact that [class

8   representatives] already received discounts and some free services also does not defeat typicality"). Regardless

9   whether Plaintiffs purchased the 3-day Seminar or Mentorship, had different instructors, or paid different

10  amounts does not make them atypical–they all bought Live Events based on the same deceptive portrayal of TU

11  by Defendants.[8]  *See Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566 (S.D. Cal. 2012).

12  **C.     PREDOMINANCE: Common Questions Concerning Defendants' Scheme
           Predominate Over Individualized Issues**

13         According to Defendants' reasoning about the Class' "diversity," no consumer-fraud class action could

14  be certified, is contrary to Rule 23 and Supreme Court precedent. *See* Fed. R. Civ. P. 23, Advisory Committee

15  Notes to 1966 Amendments, Subdivision (b)(3) (finding a "fraud perpetrated on numerous persons by use of

16  similar misrepresentations may be an appealing case for a class action."); *Amchem Prods., Inc. v. Windsor*, 521

17  U.S. 591, 625 (1997). As Judge Posner recently said: "Predominance is a question of efficiency." *Butler*, 2012

18  U.S. App. LEXIS 23284, at *5.  In Butler, the court reversed denial of class certification as to 27 different

19  models of washing machines and five different design changes under six states' laws, reasoning that a class

20  action is more efficient to determine liability where defendants "may have imposed costs on tens of thousands of

21  consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit." *Id.* at *5-

22  *6. The court found that the predominating issues surrounded the defects, even though the answers could vary

23  in designs, harm and damages to individual class members. *Id.* at *6. Here, too, it would be far more efficient to

24  try these claims together. Predominating common issues include, *inter alia*: (1) whether Defendants engaged in

---

[8]     The Court may create subclasses to address any material differences among the Live Programs. *See, e.g., Butler v. Sears*, 702 F.3d 359, 2012 U.S. App. LEXIS 23284, at *7-*8 (7th Cir. 2012) ("should it turn out as the litigation progresses that there are large differences . . . among the five differently designed washing machines, the judge may wish to create subclasses; but that possibility is not an obstacle to [class] certification").

1  a deceptive up-sell scheme through their purported "University"; (2) whether Defendants' advertisements and

2  marketing of TU were objectively misleading or deceptive to a reasonable consumer; and (3) whether

3  Defendants' misconduct justifies punitive damages.  These issues will be proven with evidence common.[9]

**1.    Reliance May Be Shown Classwide**

5  At the outset, Defendants do not argue individualized reliance must be shown as to Plaintiffs' contract-

6  based claims, unjust-enrichment, senior-abuse claims, New York and Florida consumer protection statutes, or

7  unlawful and unfair prongs of the UCL claims. Further, Defendants acknowledge individualized reliance is not

8  required for the fraud claims, UCL fraudulent prong and CLRA claims *if* there is evidence of a centrally-

9  orchestrated campaign. Opp. at 8. In arguing a lack of evidence regarding the centrally-orchestrated strategy for

10  purposes of a presumption of reliance, Defendants ignore the PlayBook, Marketing Guidelines, written

11  PowerPoints, personnel contracts, and ads. §II.A. These internal documents, along with Defendants' testimony

12  and former employees, are sufficient. Thus, as to the UCL fraudulent prong and CLRA claims, "a presumption

13  or at least an inference, of reliance arises." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009).  Plaintiffs may

14  prove these claims with evidence that Defendants' misrepresentations and omissions were "likely to deceive"

15  members of the public. *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) (UCL claims);

16  *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002) (CLRA claims).

17  Plaintiffs will be able to show a reasonable consumer was likely to be deceived through common

18  evidence of, *inter alia*, testimony, internal documents showing ads were tested for materiality, BBB and

19  government correspondence, declarations by Plaintiffs, and other customer complaints. *See, e.g.*, Ex. 91. ■

20  ■

21  ■                                                        Ex. 17 at 66:11-69:6, 163:16-

22  164:3; Ex. 85, Sexton I Dep. at 114:12-117:24. Defendants' ads confirm this: "There are many real estate

23  investment seminars available but this is the only one designed by Donald Trump's personal advisors." Ex. 31.

---

25  [9]    Defendants' authorities that vaguely deal with "individual inquiry" are unpersuasive. *In re Wells Fargo Home Mortg.*, 571 F.3d 953 (9th Cir. 2009), dealt with exemption policies, not at issue here. Moreover, the court noted that "centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof." *Id.* at 958-59. Similarly, here, Defendants' PlayBook, marketing guidelines, PowerPoints, and personnel contracts suggest such uniformity. *Williams v. Veolia Transp. Servs., Inc.*, 379 Fed. Appx. 548 (9th Cir. 2010), is a one-page unpublished decision based on a violation of Industrial Welfare Commission Order 9-2001.

1 ███████████████████████████████████████████████████

2 ████████████████████ *See* Ex. 73, TU 137793-819. "Plaintiff[s] must only demonstrate at this stage of the

3 litigation that the common proof can be used to show that failure to disclose was material to the putative class

4 members. The final determination of materiality is a question of fact for the jury . . . ." *Krueger v. Wyeth, Inc.,*

5 No. 03cv2496, 2011 U.S. Dist. LEXIS 154472, at*28-*29 (S.D. Cal. Mar. 29, 2011). Such findings cannot be

6 defeated, by submitting statements from a few cherry-picked "students." *See Brazil v. Dell, Inc.,* No. c-07-

7 01706 RMW, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010) ("under California law, plaintiffs need not

8 establish that each and every class member based his or her decision on the misrepresentation").

9        Defendants argue they had different advertisements over time in different markets. Even assuming that

10 is true, courts routinely reject such arguments where, as here, defendants adopted a consistent advertising

11 strategy over time. For example, in *POM Wonderful,* "Pom had directed its marketing staff that Pom's '[m]ain

12 messaging should be about heart health or longevity,' and that 'pomegranate juice[] promotes health and

13 prolongs life.'" 2012 U.S. Dist. LEXIS 141150, at *15. "As in other consumer fraud cases, the mere fact that

14 [the Defendant] used several different advertisements to convey its [] message is not dispositive." *Id.* at *14. "A

15 false or misleading advertising campaign need not 'consist of a specifically-worded false statement repeated to

16 each and every [member] of the plaintiff class.'" *Id.* (quoting *First Alliance,* 471 F.3d at 992). Defendants'

17 Marketing Guidelines required the same messaging to be disseminated uniformly and consistently. §II.A.2.

18 Even if the advertisements differed slightly, which is to be expected in any advertising campaign over the course

19 of years, the ads, PlayBook, and Marketing Guidelines all conveyed the *same* deceptive messaging through the

20 Class Period.[10] *See, e.g.,* Ex. 79 (advertising chart); Ex. 33, Rog. No. 7 & Ex. C.

21        The cases cited by Defendants do not prove otherwise. In *Mazza v. Am. Honda Motor Co., Inc.,* 666

22 F.3d 581 (9th Cir. 2012), plaintiffs challenged Honda's false advertising about certain vehicles' Collision

23 Mitigation Braking System ("CMBS"). *Id.* at 585. The CMBS was not a core feature but an optional "add on"

24 at the dealer. *Id.* at 585-86. Honda issued few advertisements about the CMBS to the public and for only a brief

25 time. *Id.* at 586-87. The Court held that the "small scale" advertising as to CMBS could not support a

26

27 ─────────────────────────────
    [10]     It is worth noting that TU's Chief Marketing Officer has touted Defendants' $6M annual marketing

28 budget, hardly a small amount of advertisements. *See* Ex. 129, TU-PLTF 00256.

1  presumption of reliance as the ads were "limited in nature such that many class members were likely never

2  exposed to them." *Id.* at 595-96 n.4. Here, in contrast, Defendants' misrepresentations and omissions were

3  broadly disseminated. ███████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████████

6  ████████████████████  Ex. 85, Sexton Dep. at 229:14-230:25, 459:11-18; Ex. 72, Covais Dep. at

7  88:19-89:6, 173:5-174:25, 185:14-187:4, 188:17-189:2, 198:5-13, 225:16-22; Ex. 80, Nicholas Dep. at 236:24-

8  237:21.  Unlike the Honda advertisements in *Mazza*, which related to an obscure feature, the misleading

9  statements here relate to core features of Trump University down to its very name.[11]

10      Though Defendants concede four of the five Class Representatives saw ads before attending, they argue

11  Ms. Makaeff proves their point Class Members were not all exposed to the advertising.  However, under the

12  UCL, plaintiffs do "not need to demonstrate individualized reliance on specific misrepresentations to satisfy the

13  reliance requirement" where there is a long-term advertising campaign.  *Tobacco II*, 46 Cal. 4th at 327.

14  Defendants' misrepresentations need not be the sole or predominant, but merely a substantial factor, for

15  Plaintiffs' injury. *Id.* at 326. Further, Defendants may be liable for misrepresentations to a person expecting to

16  induce third-party reliance. *See Jones v. AIG Risk Mgmt.*, 726 F. Supp. 2d 1049, 1058 (N.D. Cal 2010) (citing

17  *Restatement (Second) of Torts* §533).  Makaeff was recruited to attend the 3-day Seminar by a friend who saw

18  an ad, attended the Preview, and invited Makaeff as her guest, █████████████████████████

19  ██████████  Opp. at 4 ████████████████████████████████████████

20  ████████████████████; Ex. 93, Makaeff Supp. Decl, ¶2.  There, she was exposed to the

21  misrepresentation and up-sold to the Gold Elite.  Significantly, ████████████████████████

22  ██████████████████████████████████████████████████████████

23  Opp. at 4. Defendants induced third-party reliance and thus should not be permitted to use their tactics as both a

24  _____

25  [11]     In *Gonzalez v. P&G Co.*, 247 F.R.D. 616 (S.D. Cal. 2007), defendant had "employed a wide variety of representations" in various promotional materials. *Id.* at 623. Here, in contrast, Defendants' conveyed the same overarching messaging to the Class with similar representations. All Class members were exposed to Trump's

26  University was *the* selling point and displayed prominently in all marketing and advertising. *Johnston v. HBO Film Mgmt.*, 265 F.3d 178 (3rd Cir. 2001), was a securities fraud lawsuit involving varied, oral

27  misrepresentations by different brokers that were not standardized. *Id.* at 189-190, 194.  Here, the

28  misrepresentations were part of standardized pitches and disseminated to the Class uniformly.

1   sword (marketing strategy) and shield (legal immunity).  No individual reliance is required.[12]

2   **2.    Class Members' Expectations Do Not Defeat Predominance**

3   Defendants contend common issues do not predominate due to different Class Members' "knowledge,

4   motivations and expectations." Opp. at 22-24, 28.  It is *always* the case that individual consumers have different

5   backgrounds, motivations, factual circumstances surrounding their purchases, and even achieve different results,

6   yet consumer class actions are routinely certified.  Indeed, predominance does not mean Class Members are

7   fungible.  As the Ninth Circuit said, "individual circumstances . . . would not destroy predominance." *Lozano v.*

8   *AT&T Wireless Servs., Inc.*, 504 F.3d 718, 737 (9th Cir. 2007).  "The requirement of predominance in Rule

9   23(b)(3) itself implies that a court may certify a class even though there will, at some point, be issues that must

10   be determined individually." *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011); *Schwarm v.*

11   *Craighead*, 233 F.R.D. 655, 663 (E.D. Cal. 2006) ("significant individual questions" of reliance do not

12   predominate over questions of defendants' misrepresentations).  Whether a student was happy, had different

13   expectations, took different courses, or paid a different price, all do not defeat predominance.

14   Courts routinely find predominance even where class members' knowledge, motivations and

15   expectations vary.  *See, e.g.*, *In re Nat'l Western Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 664 (S.D.

16   Cal. 2010) (rejecting argument that "since the putative class members 'have different knowledge, motivations,

17   and expectations relating to their annuity purchases, . . . individualized issues of reliance predominate"); *Ries v.*

18   *Ariz. Beverages USA, LLC*, No. 10-01139 RS, 2012 U.S. Dist. LEXIS 169853, at *39 (N.D. Cal. Nov. 27,

19   2012) (rejecting the argument that individual issues predominate due to "variation among class members in their

20   motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they

21   paid").  In *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010), plaintiffs challenged

22   defendant's advertising beverages from Santa Fe, New Mexico when they were not.  *Id.* at 368.  Defendant

23   asserted class members had other reasons to buy.  *Id.* at 378.  The district court certified the class, noting that

24   "the substantive right extended to the public by the UCL is the right to protection from fraud, deceit and

25   unlawful conduct, and the focus of the statute is on defendant's conduct," not consumers' subjective state of

26   _____

27   [12]    Even if the Court found that Ms. Makaeff's indirect reliance is insufficient as to her purchase of the 3-

28   day Seminar, she can nevertheless serve as a Class Representative for the UCL and CLRA claims because she
was exposed to Defendants' misrepresentations before purchasing the Gold Elite.

1   mind.  *Id.*  Likewise, in *In re Ferrero Litig.*, 278 F.R.D. 552, 559-560 (S.D. Cal. 2011), plaintiffs alleged

2   defendant misleadingly promoted Nutella as healthy and beneficial, despite high levels of fat and sugar.  *Id.* at

3   556.  The court certified the class over an objection that, whether a class member was injured was an individual

4   inquiry as one plaintiff did not regret buying Nutella and another's children loved the spread. *Id.* at 560; *see also*

5   *Johnson*, 276 F.R.D. at 522 ("[T]hat some people bought the yogurt for other reasons does not sufficiently rebut

6   an inference of materiality to defeat certification, because it does not as a matter of law contradict a finding that

7   'a reasonable man would attach importance to its existence or nonexistence" for the purchase).

8          The cases Defendants cites are inapposite.  *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 655-66 (9th

9   Cir. 2004), is "case-specific" to civil RICO claims involving gamblers.  Since then, the Ninth Circuit reaffirmed

10   classwide inferences of reliance for claims at issue here, reaffirming that *Poulos* is no bar to certification.  *See*

11   *Johnson*, 276 F.R.D. at 522 (relying on *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), *cert.*

12   *denied*, 132 S. Ct. 1970 (2012)).  Whether plaintiffs were entitled to a "presumption of reliance" in a civil RICO

13   action has little bearing here under these circumstances.[13]  *See Rivera v. Bio Engineered Supplements &*

14   *Nutrition, Inc.*, No. SACV 07-1306JVS, 2008 U.S. Dist. LEXIS 95083, at *31-*32 (C.D. Cal. Nov. 13, 2008).

### 3.   Individualized Damages Do Not Defeat Predominance

16          Individualized damages defeat class certification.  That Class Members did not spend money on the free

17   90-minute Preview is a given; their damage is the money they spent showing up and being up-sold.  To the

18   extent Defendants argue that Class Members received some value, which Plaintiffs dispute, certification is still

19   appropriate.  *See In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 141 (C.D. Cal. 2007) (certification not

20   precluded "to the extent that Defendants might ultimately demonstrate on the merits that some class members

21   were not harmed."). ████████████████████████████████

22   ████████████   *See Wiener v. Dannon*, 255 F.R.D.  658, 669-70 (C.D. Cal. 2009); DEx. 6, ¶¶4, 6.

### D.   SUPERIORITY: This Class Action Is Manageable

24          Defendants contend that this case does not meet superiority based on the need for individualized

---

26   [13]   Defendants' other cases are inapplicable. *Tanedo v. East Baton Rouge Parish Sch. Bd.*, No. LACV 10-
27   01172 JAK(MLGx), 2011 U.S. Dist. LEXIS 152329, at*25-*26 (C.D. Cal. Dec. 12, 2011), also involved civil
     RICO claims and did not involve standardized sales pitches. *Davis v. Homecomings Fin.*, No. C05-1466RSL,
     2006 WL 2927702, at *7 (W.D. Wash. Oct. 10, 2006), involved Washington statutory claims that required
28   proof class members consented to payment, which necessarily implicated their subjective states of mind.

1  inquiry.  However, "[w]here classwide litigation of common issues will reduce litigation costs and promote

2  greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace,*

3  *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Defendants' citation to *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d

4  1180 (9th Cir. 2001), is easily disposed of.  *Zinser* involved negligence and medical monitoring for defective

5  Pacemakers where "many factors may contribute to 'J' wire deformation, including manufacturing and shipping

6  history and handling of the lead by physicians or staff."  *Id.* at 1192.  As explained in Plaintiffs' opening brief,

7  trial plan, and herein, this case can be efficiently tried classwide to prevent a multiplicity of suits.  Defendants

8  have not shown thousands of individual actions would be superior to trying the claims together.

### 1.   The Subclasses Are Sufficiently Numerous

10  Defendants' argument that Plaintiffs have not shown numerosity as to the subclasses is not persuasive.

11  The smallest subclass (Unjust Enrichment Subclass No. 4) is in the hundreds. Dkt. No. 122-7 at 13.

### 2.   The Consumer Protection Statute Subclasses Are Certifiable

13  Defendants do not challenge certification of the UCL claims under the unlawful and unfair prongs, nor

14  certification of the FAL claims.  Plaintiffs' UCL fraudulent prong claims are also certifiable. *See Stearns*, 655

15  F.3d at 1020 ("individualized proof of deception, reliance and injury" is not required).  And while Defendants

16  acknowledge individual reliance is not required for New York or Florida, they say exposure and harm are. Opp.

17  at 33.  But, in *Tait v. BSH Home Appliances Corp.*, No. SA CV 10-0711 DOC(ANx), 2012 U.S. Dist. LEXIS

18  183649, at *32-*33 (C.D. Cal. Dec. 20, 2012), the court rejected arguments plaintiff had to show each product

19  manifested the defect.  In *Keegan*, the court certified California, New York, and Florida consumer claims over

20  similar objections. *Id.* at 542.  Here, too, as Defendants failed to disclose that "Trump University" was neither,

21  Plaintiffs will have no difficulty in showing causation classwide.[14]  *See id.*

### 3.   The Senior Subclasses Are Certifiable

23  Defendants argue Plaintiffs have not proven Defendants targeted seniors.  Opp. at 33.  All Plaintiffs

24  need show at this stage is the claims are susceptible to common proof, which they will be as they focus on

25  Defendants' conduct. *See, e.g., Nat'l Western*, 268 F.R.D. at 669 ("since the elder abuse claim is premised on

---

[14]   *Small v. Lorillard Tobacco Co., Inc.*, N.E. 2d 892 (N.Y. 1999), involved uniquely individual issues of proving addiction.  Further, *Rollins, Inc. v. Butland*, 951 So.2d 860 (Fla. Dist. Ct. App. 2006), involved questions of whether termite re-infestation occurred and triggered additional services. *Id.* at 873.

1   the same acts, the Court again finds that common questions predominate"). ███████████

2   ████████████████████████████████████████████████████

3   ██████████████ *See Ries*, 2012 U.S. Dist. LEXIS 169853, at *35 (40 people meet numerosity).

4              **4.**    **The Common Law Subclasses Do Not Require Individual Inquiry**

5         This District recently affirmed "unjust enrichment claims are appropriate for class certification as they

6   require common proof of the defendant's conduct and raise the same legal issues for all class members." *Beck-*

7   *Ellman*, 283 F.R.D. at 568. Plaintiffs' claims are certifiable as they allege "deceptive conduct by Defendants in

8   marketing their products."[15]  *Id.*  As to the fraud claims, Plaintiffs only include states that do not require

9   individualized reliance. Dkt. No. 122-7, §III.D. And, though Plaintiffs primarily allege misrepresentations

10   reduced to writing (ads and PowerPoint slides with talking points, and sales scripts), even Defendants'

11   authorities show claims based on oral misrepresentations pose no barrier to certification if susceptible to

12   "generalized proof." *McCracken v. Best Buy Stores, L.P.*, 248 F.R.D. 162, 168 (S.D.N.Y. 2008) (sales scripts

13   are sufficient, but not necessary, to show material uniformity); *Graham v. Sec. Sav. & Loan*, 125 F.R.D. 687,

14   690 n.3 (N.D. Ind. 1989) (exception where oral communications are standardized) *aff'd*, 914 F.2d (7th Cir.

15   1990); *Marascalco v. Int'l Computerized Orthokeratology Soc'y*, 181 F.R.D. 331, 339 (N.D. Miss. 1998) (oral

16   statements were different). Given the standardized presentations for the up-sell, they are distinguishable.

17         Defendants do not provide any reasoned basis why the breach of good faith and fair dealing claims

18   cannot be certified, as they may be proven by common evidence of defendant's bad faith or objectively

19   unreasonable conduct. *See* Dkt. No. 122-1 at 33; Dkt. No. 122-7 at 9-10. As to breach of contract claims,

20   Plaintiffs' class claims relate to the ***written*** form contracts, which include Enrollment and Terms & Conditions

21   forms. *See* Dkt. No. 122-1 at 33; Dkt. No. 122-7 at 9-10. Ex. 12 (PlayBook, *e.g.*, at TU52973-74) ("█████

22   ████); Ex. 94, TU 01636-37, TU 10455-56, TU 16368-69, TU 22085-86, TU 03309-10, TU 08483-84, TU

23   19363-64, TU 22169-70 (██████████████████████████) ; Ex. 95, Sommer Dep.

24   316:13-16 (consumers "all sign[ed] a same or uniform contract"), Ex. 72, Covais Dep. at 219:8-21 (█████

25   ████████████████████████████████████████████████████

26

27   [15]    In *Rollins*, plaintiffs had additional individual obligations related to the termite inspection contracts. *See*

28   951 So.2d at 877. *Ramirez v. Smart Corp.*, 863 N.E. 2d 800, 813-15 (Ill. App. Ct. 2007), is no bar because TU's liability is in the alternative and there is no breach of contract claim against Donald Trump.

1  ████████████████████████████ [16] *Id.* ████████████████████████████████

2  ██████████████████████ *See, e.g.*, DEx. 8 at 379-80. ███████████████████████

3  ████████████████████████ *See, e.g.*, DEx. 8 at 377-78, 382. ██████████████

4  ████████████████████████████████████████████████████████████████████████

5  ████████████ *see, e.g.*, Ex. 84, TU 130015.  These claims may be certified.[17]

6  ## III.   DEFENDANTS RAISE MERITS QUESTIONS COMMON TO THE CLASS

7  ### A.   Defendants Attempt to Convert this Motion into Summary Judgment

8  Defendants ask the Court to decide the merits and rule on the admissibility of Plaintiffs' evidence as if

9  this were summary judgment or trial.  That is improper.  There need only be enough "material sufficient to form

10  a reasonable judgment on each [Rule 23] requirement," *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir.

11  1975), which means in this Circuit a prima facie showing even after *Dukes*. *See In re Taco Bell Wage and Hour*

12  *Actions*, No. 1:07cv1314 LJO DLB, 2012 WL 5932833, at *3 (E.D. Cal. Nov. 27, 2012); *see also Ellis*, 657

13  F.3d at 983 n.8 (not a mini-trial on the merits).  Defendants' citation to *Ellis* to argue Plaintiffs must submit

14  admissible evidence is misplaced as that portion of the decision related to experts challenged under *Daubert*. *Id.*

15  at 982.  And elsewhere, Defendants cite *Gonzalez*, 281 F.R.D. at 459-60, to argue their inadmissible

16  "evaluations" should be considered.  Opp. at 6.  But, admissibility is not a one-way street only for Plaintiffs.

17  Here, Defendants argue the merits strenuously, but that is not before the Court.  For example, contrary

18  to earlier in this litigation, ██████████████████████████████████████████████████

19  ████████████████████████████████████ [18]  These facts are disputed and raise

20  ─────────────────────

21  [16]    Defendants do not show how the cancellation periods are material.  Defendants' purported disclaimers
are no bar as they are unenforceable, such as waiver of liability for misrepresentations which are void for public

22  policy.  *See, e.g.*, Cal. Civ. Code §§1668, 1751.

23  [17]    In *Mullaney v. Delta Airlines, Inc.*, 258 F.R.D. 274 (S.D.N.Y. 2009), plaintiff forfeited his claim by not
surrendering his airline ticket.  *Id.* at 276.  *Wal-Mart Stores v. Lopez*, 93 S.W.3d 548 (Tex. App. 2002), and

24  *Black Diamond Props., Inc. v. Haines*, 940 So.2d 1176 (Fla. Dist. Ct. App. 2006), concern oral contracts

[18] ████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████████

1   credibility issues for Defendants due to their prior judicial admissions and other contradictory evidence. *See,*

2   *e.g.*, Dkt. No. 32 at 5-6 ("Donald Trump's involvement is completely absent here.'"); *United States v. Bentson*,

3   947 F.2d 1353, 1356 (9th Cir. 1991) (party cannot make arguments contrary to judicial admissions). It even

4   contradicts Defendants' argument against certifying a class against Donald Trump due to his lack of

5   involvement in this venture. Opp. at 13. Nevertheless, these will also be proven with common evidence.

6          Defendants cannot seriously argue TU was a legitimate academic institution. Nevertheless, whether

7   Defendants' representations and omissions to the contrary were false is, again, a merits argument that uniformly

8   applies to all Class Members and supports class certification. Whether TU is not accredited, lacked a license to

9   operate as an institution of higher learning, and/or provided a real education will be proven with common

10  evidence. Whether the PlayBook and other corporate policies prove that TU is not a legitimate academic

11  institution, but a fraudulent up-sell scheme will likewise be proven with common evidence.

12         **B.     Defendants' "Approval Rating" Is False and Raises Common Issues**

13         Defendants' core defense is their "97%" approval rating based upon a subset of dubious "student"

14  evaluations. Opp. at 1, 6-8. At the outset, TU's approval rating is a common issue and does not defeat

15  certification. Further, whether some students were initially "happy" is irrelevant where, as here, Defendants

16  disseminated uniformly misleading information. *See, e.g.*, *Ferrero*, 278 F.R.D. at 559-60 (certifying class over

17  defendant's objection and evidence that some class members liked Nutella). It is the nature of fraud that the

18  truth is hidden. *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009). That Class Members did

19  not realize they were taken in, even to present day, does not negate the underlying deception.

20         And, the numbers simply do not add up. Defendants base their 97% approval rating on their tally of

21  10,000 evaluations with "1 to 5" scores unrelated to the alleged common misrepresentations and omissions upon

22  which this motion is based. ███████████████████████████

23  ██████████. DEx. 6, ¶6. ██████████████████████████

24  ██████████ *See* DEx. 49 at 25952 ███████████████████; Ex. 72, Covais Dep. at

25  213:24-214:3 (███████████████████████████████████

26  ████████████████████████████████████████████

27  ███████████ *See* Ex. 98, TU 48488-89 (████████████████████

28  ██████████████████████ DEx. 6, ¶6. █████████████



Ex. 62, TU 102318-400

Ex. 99 at TU 129579. For them, as with many others, it was not until after the dust settled, long after the evaluations were done, that they realized that they would never get what was promised. The same holds true for the testimonials that Defendants misguidedly rely on. *See, e.g.*, Ex. 93, Makaeff Supp. Decl., ¶8.

Further undercutting the "approval" rating is Defendants' own recent "survey," an e-blast sent, from TU's "Customer Service" at the direction of defense counsel to obtain student declarations, but under the guise of requesting "success stories." Ex. 100, TU-PLTF02452-53.



[20] Responses included:







Defendants' self-serving survey backfired and provides more common proof of what Plaintiffs alleged.

**C.      The Declarations of Former "Students" Should Be Disregarded as the Fruit of Defendants' Misleading Communications**

Even the few examples of purportedly satisfied students Defendants were able to find (of thousands of Class Members), undermine Defendants' arguments. Two of the 14 "student" declarations are not from Class Members.[21] Two others requested refunds. Ex. 62 at TU 102398 (Hinderer refund for $995 for creative financing), TU 102324 (according to Defendants documents, Levand purportedly received refund for $24,995 for mentorship). ████████████████████████████████████████████████████████████ ████████████████████████████████████████ DEx. 14f, ¶4. Jason Sanders, whom Johnny Horton trumpets as a success, was sentenced to two years for stealing $132,600 from a charity. Ex. 101 (Sentencing Memorandum); Ex. 102 (CourtLink Docket). Moreover, the "students" do not contradict Plaintiffs' basic allegations. *See, e.g.*, DEx. 14a (Hinderer Decl.) (████████████████ ██████████████████████████████████ " Ex. 103 (█████████ ██████████████████████████████ *Id.* Of course, no declarant said she was aware Donald Trump was a deceptive up-sell scheme or deceptively advertised, but did not care.

In any event, if any of these students are truly satisfied, they can opt out of the suit. *See Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) ("dissatisfied class members have the right to opt out of

---

[21]      *See* DEx. 14m (Talhelm Decl.) (██████████████████████████████████); DEx. 14n (Wright Decl.) (purchased 6-month online REIT).

1   the class"); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1459 (S.D. Cal. 1988) ("any class conflicts could be

2   ameliorated through the 'opt out' mechanism); *Nat'l Western*, 268 F.R.D. at 658 (certifying class despite

3   defendant's submission of class member declarations stating that they were satisfied); Ex. 104 .

### D.   Defendants' Rehash of Their Motion to Dismiss as to Donald Trump Does Not Justify Denial of Certification

Defendants contradict themselves by arguing the Court should not certify a class against Donald Trump because there is "no showing" that he participated or authorized the wrong, and if he did, it would contradict Plaintiffs' theory. Opp. at 13. Defendants' argument misses the mark. First, it is a merits question rejected on his motion to dismiss. *See* Dkt Nos. 59, 63 and 69. Second, there is common evidence of Donald Trump's liability, which is not contradicted by the fact that he was not as involved as he represented to the public. Donald Trump *was* the selling point for Trump University, and he lent his name, image, and likeness to advertisements and materials that facilitated Defendants' marketing ploy. ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████   *See, e.g.*, Ex. 14 at 396:25-397:7, 398:7-399:7; Ex. 28 at 136:4-138:15. Whether Donald Trump is ultimately liable raises a common legal issue.[22]

## IV.   CONCLUSION

For all these reasons, as well as those contained in Plaintiffs' opening papers, Plaintiffs respectfully submit that their class certification motion should be granted.

DATED: February 1, 2013

Respectfully submitted,

ROBBINS GELLER RUDMAN
   & DOWD LLP

_____
          s/ Rachel L. Jensen
          RACHEL L. JENSEN

---

[22]   Defendants' cases are inapplicable. *Philip Morris USA, Inc. v. Scott*, __ U.S. __, 131 S. Ct. 1, 3-4 (2010), dealt with a stay of a monetary judgment, not class certification. Additionally, *Lease Cruchter Lewis WA, LLC v. Nat'l Union Fire Ins. Co.*, No. C08-1862 RSL, 2009 WL 3444762 (W.D. Wash. Oct. 20, 2009), was decided at the motion to dismiss stage.

RACHEL L. JENSEN
THOMAS R. MERRICK
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

<u>CERTIFICATE OF SERVICE</u>

1

2       I hereby certify that on February 1, 2013, I authorized the electronic filing of the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5  caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6  CM/ECF participants indicated on the attached Manual Notice List.

7       I certify under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on February 1, 2013.

9

10                        s/ Rachel L. Jensen
                            RACHEL L. JENSEN

11                        ROBBINS GELLER RUDMAN
                            &amp; DOWD LLP

12                        655 West Broadway, Suite 1900
                        San Diego, CA  92101-3301

13                        Telephone:  619/231-1058
                        619/231-7423 (fax)

14

15                        E-mail:rachelj@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)