# EXHIBIT 94

Exhibit 94
- 659 -

Advisor: *Fast Track to Foreclosure*

**TRUMP** UNIVERSITY

Event Code: *Phoenix, AZ*

## ENROLLMENT FORM

655032

### CONTACT INFORMATION

| | |
|---|---|
| NAME Thomas W Stehower | GUEST NAME Cliff Sandys |
| ADDRESS 18624 N. 15 ST. | ADDRESS 3847 E Sunnyside Dr |
| CITY Phx  STATE AZ  ZIP 85034 | CITY Phx  STATE AZ  ZIP 85028 |
| EMAIL TStehower @ cox.net | EMAIL SkiCliff @ Yahoo.com |
| HOME PHONE 623 322 0182  WORK 480 266-7822 | HOME PHONE 602-976-3086  WORK |
| CELL (c) 623 734 5112  FAX | CELL 602-326-9224  FAX |

### PURCHASE(S)

| Item | Session & Date (if applicable) | Amount |
|---|---|---|
| 1. | | Objection: Financial Information Protected by Right to Privacy. |
| 2. Elite Gold | | |
| 3. | | |
| 4. | | |
| 5. | | |

| NOTES: Objection: Financial Information Protected by Right to Privacy. | Total Due | |
|---|---|---|
| | Paid at Enrollment | |
| | Balance Due | |
| | Balance Due Date | |

### PAYMENT

Objection: Financial Information Protected by Right to Privacy.

**You, the Buyer, may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right.**

This Program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump University, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

| SIGNATURE Thomas W Steh    DATE 10-21-07 | GUEST SIGNATURE    DATE 10/21/07 |
|---|---|

**White Copy:** TRUMP UNIVERSITY    **Yellow Copy:** ADVISOR    **Pink Copy:** CUSTOMER

TU 01636

Exhibit 94
- 660 -

Advisor: _____

# TRUMP
## UNIVERSITY

Event Code: _____

## Terms & Conditions

Trump University ("TU") Programs are provided for training and educational purposes only.

TU does not procure or identify specific real estate deals. You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment. We do not recommend or guarantee any investment or property.

You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy. Further, you agree that TU is not endorsing your project and you shall not represent same to any third-party. Further, TU is not rendering legal or financial advice.

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as Real Estate Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers.

You must be current on payments to attend Retreats.

| | | |
|---|---|---|
| *Thomas W. Stehaw* | THOMAS W. STELTOWER | 10/21/07 |
| Signature | Printed Name | Date |
| *Cliff Sf* | CLIFF SANDYS | 10/21/07 |
| Guest Signature | Printed Name | Date |

TU 01637

Exhibit 94
- 661 -

Advisor: ~~Oscar Harres~~     **TRUMP**    Event Code: RTRFTF
UNIVERSITY    3UU2O4HA
765182

## PREMIUM ENROLLMENT FORM
### CONTACT INFORMATION

NAME Lisa Kodiner
ADDRESS 1502 NE 83RD Court
CITY Vancouver, WA &    STATE WA    ZIP 98604
EMAIL Lisa7910@Yahoo.com
HOME PHONE (360) 253-4338    WORK 866-695-4430
CELL (541) 301-0920    FAX

### PREMIUM PURCHASE(S)

| | | |
|---|---|---|
| **Trump Gold Elite:**  $34,995 | | **Total Due** |
| • 3 Day In-Person Field Coaching | | |
| • Wealth Preservation Retreat | | **Paid at Enrollment** |
| • QuickTurn Real Estate Profits Retreat | | |
| • Commercial/ Multi-Unit Retreat | | |
| • Investor's Edge Real Estate Software ($29.95/month fee not included.) | | |
| ☐ **Trump Silver Elite:**  $19,495 | | **Balance** |
| • Personal Coaching | | |
| • Wealth Preservation Retreat | | |
| • QuickTurn Real Estate Profits Retreat | | |
| • Commercial/ Multi-Unit Retreat | | **Balance Due Date and Notes** |
| • Investor's Edge Real Estate Software ($29.95/month fee not included.) | | |
| ☐ **Trump Bronze Elite:**  $9,995 | | |
| • Wealth Preservation Retreat | | |
| • QuickTurn Real Estate Profits Retreat | | |
| • Investor's Edge Real Estate Software ($29.95/month fee not included.) | | |

Objection: Financial Information Protected by Right to Privacy

### PAYMENT

Objection: Financial Information Protected by Right to Privacy

You, the Buyer, may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right.

This Program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump University, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information. Trump University's obligation to start providing services starts when full payment is received.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

SIGNATURE Lisa Kodiner    DATE 4/12/08    GUEST SIGNATURE    DATE

**White Copy:** TRUMP UNIVERSITY        **Pink Copy:** CUSTOMER

4.1.08    Trump University    40 Wall Street 32nd Floor New York, NY  10005    P 212-248-1800    F  212-937-3830

Advisor: _____        Event Code: _____

## Terms & Conditions

Trump University ("TU") Programs are provided for training and educational purposes only.

TU does not procure or identify specific real estate deals. You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment. We do not recommend or guarantee any investment or property.

You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy. Further, you agree that TU is not endorsing your project and you shall not represent same to any third-party. Further, TU is not rendering legal or financial advice.

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as Real Estate Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers.

You must be current on payments to attend Retreats.

| _Lisa Rodner_ | _LISA RODNER_ | _4/12/08_ |
|---|---|---|
| Signature | Printed Name | Date |

| _____ | _____ | _____ |
|---|---|---|
| Guest Signature | Printed Name | Date |

Advisor: *Steve Goff*
*10·24·09*

RHR FTF-20091023A

# TRUMP

## ENROLLMENT FORM

Event Code: _____
Student ID: *1625886*

### CONTACT INFORMATION

NAME *ROBERT & CHARLOTTE LACY*

ADDRESS *12807 PALFREY DR.*

CITY *AUSTIN*          STATE *TX*          ZIP *78727*

EMAIL *Charlotte@austinexecutivehomes.com*

HOME PHONE *(512)218-9140*     WORK *(512)657-6365*     CELL *(512)657-6365*

### PURCHASE(S)

| | Retail Value | Event Special |
|---|---|---|
| ☐ **Trump Gold Elite:** | | **Event Special You Save 29%** |
| • 3 Day In-Field Mentorship | $25,000 | |
| • Wealth Preservation Retreat | $ 5,000 | |
| • Quick Start Real Estate Retreat | $ 5,000 | |
| • Creative Financing Retreat | $ 5,000 | |
| • Commercial & Multi-Family Retreat | $ 5,000 | |
| • Real Estate Investor Training Online Program | $ 3,000 | |
| • Incorporate Your Business (State Licensing fees not Included) | $ 995 | |
| • Foreclosure DealSource Property Listing Service (One Year Membership) | $ 420 | |
| | $49,415 | **$34,995** |
| ☐ **Trump Silver Elite:** | Retail Value | **Event Special You Save 19%** |
| • Wealth Preservation Retreat | $ 5,000 | |
| • Quick Start Real Estate Retreat | $ 5,000 | |
| • Creative Financing Retreat | $ 5,000 | |
| • Commercial & Multi-Unit Retreat | $ 5,000 | |
| • Real Estate Investor Training Online Program | $ 3,000 | |
| • Incorporate Your Business (State Licensing fees not Included) | $ 995 | |
| | $23,995 | **$19,495** |
| ☐ **Trump Bronze Elite:** | Retail Value | **Event Special You Save 9%** |
| • Wealth Preservation Retreat | $ 5,000 | |
| • Quick Start Real Estate Retreat | $ 5,000 | |
| • Incorporate Your Business (State Licensing fees not Included) | $ 995 | |
| | $10,995 | **$9,995** |

**Total Due**

**Paid at Enrollment**

**Balance**

**Balance Due Date and Notes**

Objection: Financial Information Protected by Right to Privacy

### PAYMENT

☐ **Credit Card**   VISA  MasterCard

NAME EXACTLY AS IT APPEARS ON THE CARD (Please Print)

CREDIT CARD NO

BILLING ADDRESS (If Different From Above)

EXP DATE          SECURITY CODE          CITY          STATE          ZIP

Objection: Financial Information Protected by Right to Privacy.

You, the Buyer, may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right.

*Data Subscription Fees: I hereby authorize Trump U to charge my bank account or credit card account, noted above, in the sum of $_____ per month 365 days after the signing of this contract, payable monthly as if I had personally signed a check or sales draft slip to Trump U. This authorization shall remain in effect unless and until I notify Trump U in writing that I wish to cancel this subscription, which I may do at any time whatsoever. A record of my payment will be included in my bank or credit card statement and will serve as my receipt. This subscription can be cancelled at any time. _____ Initials

Objection: Financial Information Protected by Right to Privacy.

This Program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump U, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information. Trump U's obligation to start providing services starts when full payment is received.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

SIGNATURE *Charlotte Lacy*   DATE *10/24/19*     GUEST SIGNATURE *Robert Lacy*   DATE *10-24-09*

White Copy: TRUMP U          Pink Copy: CUSTOMER

7.1.09          Trump U     40 Wall Street 32nd Floor New York, NY  10005     P 212-248-1800   F 212-937-3830

TU 16368

Exhibit 94
- 664 -

Advisor: _____                     Event Code: _____

# TRUMP

## Terms & Conditions

Trump U Programs are provided for training and educational purposes only.

TU does not procure or identify specific real estate deals. You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment. We do not recommend or guarantee any investment or property.

You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy.  Further, you agree that TU is not endorsing your project and you shall not represent same to any third-party.  Further, TU is not rendering legal or financial advice.

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as Real Estate Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers.

You must be current on payments to attend Retreats.

_____         ROBERT LACY              10-24-09
Signature                        Printed Name             Date

_____         CHARLOTTE LACY           10-24-09
Guest Signature                  Printed Name             Date

7.14.08

TU 16369

Exhibit 94
- 665 -

Advisor: _____        *Kevin Hassan*

# TRUMP

*239·313·1426*

Course Code: _____
Student ID #: *1106299*

## CONTACT INFORMATION

| | |
|---|---|
| NAME *Lillian Lucash* | PARTNER NAME *Kevin Lucash* |
| ADDRESS *5569 Princess Anne Rd.* | ADDRESS |
| CITY *Virginia Beach*  STATE *VA*  ZIP CODE *23462* | CITY  STATE  ZIP CODE |
| EMAIL *llucash@cox.net* | EMAIL |
| HOME PHONE  WORK PHONE | HOME PHONE  WORK PHONE |
| CELL PHONE *757-289-6963*  FAX | CELL PHONE  FAX |

## ENROLLMENT

**The Apprenticeship Program:**
(12 Month Audit Privileges)

~~Objection: Financial Information Protected by Right to Privacy.~~

**Guest or Business Partner**           **Free Bonus**

**Premium Membership**           **Free Bonus**
(12 months)

**Foreclosure DealSource**           **Free Bonus***
(Workshop attendance and credit card required to activate 30 Day Free Trial)

*Providing wire information to send payment 19th (Mon).*

## PAYMENT

☐ **Credit Card**  [VISA] [MasterCard] [■] [■]   NAME EXACTLY AS IT APPEARS ON THE CARD (Please Print)

| CREDIT CARD NO | | BILLING ADDRESS (if different from above) | | |
|---|---|---|---|---|
| EXP DATE | SECURITY CODE | CITY | STATE | ZIP |

☐ **Check**   ACCOUNT NO           CHECK NO

You may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right. _____ Initials

You, the Buyer, may withdraw without penalty from the training class scheduled above by the end of the first day of the next regularly scheduled training class as specified above, or within (14) days from the enrollment date, whichever occurs first. If you attend at a subsequent time, the cancellation option will not apply.

***Data Subscription Fees:** I hereby authorize Trump U to charge my bank account or credit card account, noted above, ~~Objection: Financial Information~~ monthly as if I had personally signed a check or sales draft slip to Trump U. This authorization shall remain in effect unless and until I notify Trump U in writing that I wish to cancel this subscription, which I may do at any time whatsoever. A record of my payment will be included in my bank or credit card statement and will serve as my receipt. This subscription can be cancelled at the first day of training. _____ Initials

****Guest Foreclosure DealSource Activation Fee (Optional):** I hereby authorize Trump U to charge my credit card account, noted below, ~~Objection:~~ month, payable monthly as if I had personally signed a check or sales draft slip to Trump U. This authorization shall remain in effect unless and until I notify Trump U in writing that I wish to cancel this subscription, which I may do at any time whatsoever. A record of my payment will be included in my bank or credit card statement and will serve as my receipt. This subscription can be cancelled at the first day of training. _____ Initials

☐ **Credit Card**   NAME EXACTLY AS IT APPEARS ON CARD   CREDIT CARD NO.   EXP DATE   SECURITY CODE
[VISA] [AmericanExpress] [■] [■]

This training is provided for education only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump U, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

| SIGNATURE *Lucash* | DATE *4/13/10* | PARTNER SIGNATURE | DATE |
|---|---|---|---|

03/2010

**White Copy:** TRUMP U           **Yellow Copy:** STUDENT

Trump U • The Trump Building • 40 Wall St Floor 32, New York, NY 10005 • 212-248-1800 • 212-937-3830

Advisor: _____        # TRUMP 🦁        Event Code: _____

## Terms & Conditions

Trump U Programs are provided for training and educational purposes only.

Trump U does not procure or identify specific real estate deals. You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment. We do not recommend or guarantee any investment or property.

You acknowledge and agree that Trump U has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy. Further, you agree that Trump U is not endorsing your project and you shall not represent same to any third-party. Further, Trump U is not rendering legal or financial advice.

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as Real Estate Agents and Brokers, Lawyers, Accountants and Mortgage Brokers.

All advanced training, mentoring and coaching must be completed within twelve (12) months of purchase. It is your responsibility to make certain that all sessions are scheduled within such twelve (12) month period and any exceptions to this policy must be requested in writing and will not be valid unless validated in writing by an authorized manager at Trump U. After the expiration of this twelve (12) month period, Trump U's obligation to fulfill these services shall be deemed fulfilled.

You must be current on payments to attend Retreats.

| | | |
|---|---|---|
| *Lillian Lucash* | LILLIAN LUCASH | 4/13/10 |
| Signature | Printed Name | Date |
| *Kevin Lucash* | KEVIN. LUCASH | 4/13/10 |
| Guest Signature | Printed Name | Date |

TU 20086

Exhibit 94
- 667 -



**TRUMP**
U N I V E R S I T Y

8/26 3PM

### Real Estate Investor Programs
### Enrollment Form

| CONTACT INFORMATION | | |
|---|---|---|
| NAME Barbora Gregory | PARTNER Arden Gregory | |
| ADDRESS 2711 Superba Ave. | | |
| CITY Kingman | STATE AZ | ZIP 86401 |
| EMAIL abgreg1992@aol.com | | |
| HOME PHONE 928-718-2911 | WORK | CELL 847·323·4522 | FAX |

| PURCHASE(S) | | |
|---|---|---|
| **Item** | **Session & Date (if applicable)** | **Amount** |
| 1. Fast Track | + #hr w/ | Objection: Financial Information Protected by Right to Privacy. |
| 2. | Steve | |
| 3. | | |
| 4. | & Workbook | $ |
| 5. | | $ |

| PAYMENT | | |
|---|---|---|
| Objection: Financial Information Protected by Right to Privacy. | ☐ Check | |
| | ACCOUNT NO | CHECK NO |
| | Total Due | |
| | Paid at Enrollment | |
| | Balance Due | |
| | Balance Due Date | |

| NOTES: | |
|---|---|

**You, the Buyer, may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right.**

This Program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump University, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success of failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information.

Within 30 days of payment of the Program fee, I may cancel enrollment if the Program has not been held and receive a full refund, minus a 10% processing/administrative fee.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

| SIGNATURE | DATE 8-25-07 | SPOUSE/PARTNER SIGNATURE | DATE |
|---|---|---|---|

TU 03309

Exhibit 94
- 668 -



### Terms & Conditions

Trump University ("TU") Programs are provided for training and educational purposes only.

TU does not procure or identify specific real estate deals. You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment. We do not recommend or guarantee any investment or property.

You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy. Further, you agree that TU is not endorsing your project and you shall not represent same to any third-party. Further, TU is not rendering legal or financial advice.

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as Real Estate Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers.

You MUST be current on payments to attend Retreats. You have the right within 2 weeks prior to a Retreat to transfer your registration to another Retreat without penalty or processing charge. If you do not attend a Retreat that you are scheduled for and do not reschedule within the 2 weeks you will be charged a $500 no-show fee.

### NOTE:  IS THIS REALLY SOMETHING THAT YOU WANT?

You are provided a Satisfaction Guarantee. If you are not satisfied with the training attended, you may exchange it for another training or may receive a refund within thirty (30) days of purchase. You must participate in the Retreat through the end the second day and you must submit a written request for exchange to Trump University on the second day of the Retreat. All refund or exchange requests submitted under the Satisfaction Guarantee after 30 days will not be considered.

| _____ | _Barbara Gregory_ | _8-25-07_ |
|---|---|---|
| Signature | Printed Name | Date |
| _____ | _____ | _____ |
| Spouse Signature | Printed Name | Date |

TU 03310

Exhibit 94
- 669 -

Advisor: MARTIN



SEMINAR 2008 1118 Z

Event Code:
Client ID # 893508

## TRUMP UNIVERSITY

## CONTACT INFORMATION

| NAME Brian P. Bocash | GUEST NAME Guillermo Romero |
|---|---|
| ADDRESS 1501 Nestlewood Trail | ADDRESS 13833 Hawkeye Dr. |
| CITY Orlando  STATE FL  ZIP CODE 32877 | CITY Orlando  STATE FL  ZIP CODE 32837 |
| EMAIL godivajav@yahoo.com | EMAIL romegwillo@yahoo.com |
| HOME PHONE 407 812-9942  WORK PHONE | HOME PHONE  WORK PHONE |
| CELL PHONE 407 493-7939  FAX | CELL PHONE 407-693-2776  FAX |

## PURCHASE(S)

**Fast Track to Foreclosure 3-Day Training:**  $1,495
(12 Month Audit Privileges)

**Paid**

**Wealth Builder's Network Premium** (12 months) $1,188
- Weekly Online Classes
- Empire City
- Wealth Builder's Online Magazine
- Client Advisor
- Forms Vault
- Resource Library

**Notes**

**Real Estate Goldmine Audio Course**  $150
(Special Edition)

Objection: Financial Information Protected by Right to Privacy

## PAYMENT

☐ **Credit Card**  VISA  MasterCard  [ ]  [ ]  NAME EXACTLY AS IT APPEARS ON THE CARD (Please Print)

| CREDIT CARD NO | BILLING ADDRESS (if different from above) |
|---|---|
| EXP DATE | SECURITY CODE | CITY | STATE | ZIP |

☐ **Check**  ACCOUNT NO  CHECK NO

**You may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right.**

You, the Buyer, may withdraw without penalty from the training class scheduled above by the end of the first day of the next regularly scheduled training class as specified above, or within (14) days from the enrollment date, whichever occurs first. If you attend at a subsequent time, the cancellation option will not apply.

This Program is provided for information only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump University, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

| SIGNATURE Brian P. Bocash | DATE 11/18/2008 | GUEST SIGNATURE | DATE 11/18/2008 |
|---|---|---|---|

**White Copy:** TRUMP U          **Pink Copy:** CUSTOMER

Trump University  40 Wall Street 32nd Floor   New York, New York  10005   P. 212-248-1800  F. 212-937-3830

10.02.08

TU 08483

Exhibit 94
- 670 -

,Advisor: MARTIN

# TRUMP 

SEMPFF20081118Z

Event Code: _____

## Terms & Conditions

Trump U Programs are provided for training and educational purposes only.

TU does not procure or identify specific real estate deals. You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment. We do not recommend or guarantee any investment or property.

You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy.  Further, you agree that TU is not endorsing your project and you shall not represent same to any third-party.  Further, TU is not rendering legal or financial advice.

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as Real Estate Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers.

You must be current on payments to attend Retreats.

_Brian P. Bozak_
Signature

_Brian P. Bocash_
Printed Name

_11/18/08_
Date

_Guillermo Romero_
Guest Signature

_Guillermo Romero_
Printed Name

_11/18/08_
Date

7.14.08

TU 08484

Exhibit 94
- 671 -

Advisor: *Harris*

6·3·09

 **TRUMP**

Course Code: *S EMPP*
*20090603C*
Client ID #: *983212*

## CONTACT INFORMATION

| | |
|---|---|
| NAME *William Johnson* | GUEST NAME *Kerry Ann Lawson* |
| ADDRESS *1113 East 214 St* | ADDRESS *3921 Grace Avenue* |
| CITY *Bronx*   STATE *NY*   ZIP CODE *10469* | CITY *Bronx*   STATE *NY*   ZIP CODE *10466* |
| EMAIL *Progress4youth@yahoo.com* | EMAIL *kerryann.gentles@yahoo.com* |
| HOME PHONE | HOME PHONE |
| WORK PHONE | WORK PHONE |
| CELL PHONE *718 825-9570*   FAX | CELL PHONE *347-461-8609*   FAX |

## ENROLLMENT

Objection: Financial Information Protected by Right to Privacy

**Fast Track to Foreclosure 3-Day Training:** $1,495
(12 Month Audit Privileges)

**Guest or Business Partner**     Free Bonus

**Premium Membership**     Free Bonus
(12 months)

**Real Estate Breakthrough 2009**     Free Bonus
(Journal & Audio Course)

**Foreclosure DealSource**     Free Bonus*
(Workshop attendance and credit card required to activate 30 Day Free Trial)

## PAYMENT

Objection: Financial Information Protected by Right to Privacy

You may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right. ____ Initials

You, the Buyer, may withdraw without penalty from the training class scheduled above by the end of the first day of the next regularly scheduled training class as specified above, or within (14) days from the enrollment date, whichever occurs first. If you attend at a subsequent time, the cancellation option will not apply.

*Data Subscription Fees: I hereby authorize Trump University to charge my bank account or credit card account, noted below, Objection: Financial month, payable monthly as if I had personally signed a check or sales draft slip to Trump University. This authorization shall remain in effect unless and until I notify Trump University in writing that I wish to cancel this subscription, which I may do at any time whatsoever. A record of my payment will be included in my bank or credit card statement and will serve as my receipt. This subscription can be cancelled at the first day of training. ____ Initials

This training is provided for education only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump University, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

| SIGNATURE | DATE *06/03/09* | GUEST SIGNATURE *Kerry Ann Lawson* | DATE *6-3-09.* |
|---|---|---|---|

**White Copy: TRUMP U**          **Pink Copy: CUSTOMER**

Trump University  40 Wall Street 32nd Floor  New York, New York  10005  P. 212-248-1800  F. 212-937-3830

3.2.09

Advisor: _____          Event Code: _____

## Terms & Conditions

Trump U Programs are provided for training and educational purposes only.

TU does not procure or identify specific real estate deals. You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment. We do not recommend or guarantee any investment or property.

You acknowledge and agree that TU has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy. Further, you agree that TU is not endorsing your project and you shall not represent same to any third-party. Further, TU is not rendering legal or financial advice.

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as Real Estate Agents and Brokers, Appraisers, Lawyers, Accountants, and Mortgage Brokers.

You must be current on payments to attend Retreats.

_____          William Johnson            6-3-09
Signature                          Printed Name                 Date

Kerry-Ann Lawson                   Kerry-Ann Lawson            6-3-09
Guest Signature                    Printed Name                 Date

7.14.08

TU 19364

Exhibit 94
- 673 -

Advisor: *JAMIESON*

5.2.10

Course Code: *SEM AT 2010 0502B*

Student ID #: *117354*

# TRUMP EDUCATION

## CONTACT INFORMATION

| NAME | PARTNER NAME |
|---|---|
| Roy KAWANNI | LILIK KAWANNI |

| ADDRESS | ADDRESS |
|---|---|
| 5 Royview Crescent | |

| CITY | PROVINCE | POSTAL CODE | CITY | PROVINCE | POSTAL CODE |
|---|---|---|---|---|---|
| Woodbridge | ON | L4H 2T4 | | | |

| EMAIL | EMAIL |
|---|---|
| Kawanni@sympatico.ca | *Same* |

| HOME PHONE | WORK PHONE | HOME PHONE | WORK PHONE |
|---|---|---|---|
| (905) 417-7485 | (905) 669-3660 | | |

| CELL PHONE | FAX | CELL PHONE | FAX |
|---|---|---|---|

## ENROLLMENT

**Profit from Real Estate 3-Day Training:**
(12 Month Audit Privileges)

Objection: Financial Information Protected by Right to Privacy.

**Guest or Business Partner**          **Free Bonus**

**Premium Membership**                    **Free Bonus**
(12 months)

**Foreclosure DealSource**             **Free Bonus***
(Workshop attendance and credit card required to activate 30 Day Free Trial)

## PAYMENT

Objection: Financial Information Protected by Right to Privacy.

You may cancel this agreement without any penalty, at any time prior to midnight of the third business day after the date of this transaction. See cancellation notice on reverse side for explanation of this right. ___ Initials

You, the Buyer, may withdraw without penalty from the training class scheduled above by the end of the first day of the next regularly scheduled training class as specified above, or within (14) days from the enrollment date, whichever occurs first. If you attend at a subsequent time, the cancellation option will not apply.

***Data Subscription Fees:** I hereby authorize Trump Education to charge my bank account or credit card account, noted above, Objection: Financial payable monthly as if I had personally signed a check or sales draft slip to Trump Education. This authorization shall remain in effect unless and until I notify Trump Education in writing that I wish to cancel this subscription, which I may do at any time whatsoever. A record of my payment will be included in my bank or credit card statement and will serve as my receipt. This subscription can be cancelled at the first day of training. ___ Initials

****Guest Foreclosure DealSource Activation Fee (Optional):** I hereby authorize Trump Education to charge my credit card account, noted below, in the sum of Objection: payable monthly as if I had personally signed a check or sales draft slip to Trump Education. This authorization shall remain in effect unless and until I notify Trump Education in writing that I wish to cancel this subscription, which I may do at any time whatsoever. A record of my payment will be included in my bank or credit card statement and will serve as my receipt. This subscription can be cancelled at the first day of training. ___ Initials

| ☐ **Credit Card** VISA MasterCard | NAME EXACTLY AS IT APPEARS ON CARD | CREDIT CARD NO. | EXP DATE | SECURITY CODE |
|---|---|---|---|---|

This training is provided for education only and no guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by the Program, Program instructors, Trump Education, their affiliates or their officers, principals, representatives, agents or employees (collectively, "Principals"). I acknowledge that none of the Principals is engaged in rendering financial, investment, legal, accounting, or other professional services or advice. If such professional advice or other expert services are required, I acknowledge that I should seek the services of a competent professional who can consider my particular circumstances. I acknowledge that none of the Principals is responsible for, and they shall have no liability for, my business success or failure, my acts and omissions, the appropriateness of my business decisions, or my use of or reliance on Program information.

By signing below, I ("Participant") acknowledge that I have read and agree to the provisions on the front and back of this Enrollment Form.

| SIGNATURE | DATE | PARTNER'S SIGNATURE | DATE |
|---|---|---|---|
| | May 2/2010 | Lilik Kawani | May 2/2010 |

Trump Education • The Trump Building • 40 Wall Street 32nd Floor, New York, NY 10005 • P: 888-844-5072 • F: 212-937-3830

Advisor: _JAMIESON_          **TRUMP**
                              E D U C A T I O N          Event Code: _SEMPFF20100502B_

## Terms & Conditions

Trump Education Programs are provided for training and educational purposes only.

Trump Education does not procure or identify specific real estate deals. You may be exposed to real estate deals at the Retreats, but it is your sole responsibility to evaluate and act on those properties for your personal investment. We do not recommend or guarantee any investment or property.

You acknowledge and agree that Trump Education has not made any express or implied representation or assurance regarding the potential profitability, chances of funding or likelihood of success of any transaction, investment, opportunity or strategy. Further, you agree that Trump Education is not endorsing your project and you shall not represent same to any third-party. Further, Trump Education is not rendering legal or financial advice.

If you choose to pursue a transaction, it is your sole responsibility to seek independent advice from professionals such as Real Estate Agents and Brokers, Lawyers, Accountants and Mortgage Brokers.

All advanced training, mentoring and coaching must be completed within twelve (12) months of purchase. It is your responsibility to make certain that all sessions are scheduled within such twelve (12) month period and any exceptions to this policy must be requested in writing and will not be valid unless validated in writing by an authorized manager at Trump Education. After the expiration of this twelve (12) month period, Trump Education's obligation to fulfill these services shall be deemed fulfilled.

You must be current on payments to attend Retreats.

_____        _Roy Kawanni_____        _May 2/2010_
Signature                      Printed Name             Date

_Lilik Kawani_____             _LILIK KAWANNI_____      _May 2/2010_
Guest Signature                Printed Name             Date

01.26.10

TU 22170

Exhibit 94
- 675 -

# EXHIBIT 95

Exhibit 95
- 676 -

Page 1

1

2                  UNITED STATES DISTRICT COURT

3                  SOUTHERN DISTRICT OF NEW YORK

4      -------------------------------X

       TARLA MAKAEFF, et al., on

5      Behalf of Themselves and      Case No. 3:10-CV-00940-CAB(WVG)

       all Others Similarly Situated,

6

7                  Plaintiffs,

8             v.

       TRUMP UNIVERSITY, LLC, et al,

9

10                 Defendants.

       -------------------------------X

11

12                 VIDEOTAPED DEPOSITION

13                        OF

14                 CORINNE A. SOMMER

15                 New York, New York

16             Wednesday, November 7, 2012

17

18

19

20

21

22

23

24     Reported by:

       ANNETTE ARLEQUIN, CCR, RPR, CRR, CLR

25     JOB NO. 54530

Exhibit 95
- 677 -

Page 314

```
1              C. Sommer
2    Q.   Michael Dubin?
3    A.   No.
4    Q.   Michael Henson.
5    A.   No.
6    Q.   Michael Potter.
7    A.   No.
8    Q.   Noel Wells.
9    A.   No.
10   Q.   Omar Periu.
11   A.   No.
12   Q.   Roger LeFluer.
13   A.   No.
14   Q.   Sean Higgins.
15   A.   No.
16   Q.   Scott Lietzell.
17   A.   No.
18   Q.   Steve Gilpin?
19   A.   No.
20   Q.   Steven Libman.
21   A.   No.
22   Q.   Tad Lignell.
23   A.   No.
24   Q.   Tim Gorsline.
25   A.   No.
```

Page 315

```
1              C. Sommer
2    Q.   Tim Sardinia.
3    A.   No.
4    Q.   Troy Peterson.
5    A.   No.
6    Q.   William Cannon.
7    A.   No.
8         MR. SCHNEIDER:  Take a break.  Let's
9    go off the record.
10        THE VIDEOGRAPHER:  The time is 3:39.
11   We're going off the record.
12        (Recess is taken.)
13        THE VIDEOGRAPHER:  The time is 4:00.
14   We're back on the record.
15   BY MR. SCHNEIDER:
16   Q.   Ms. Sommer, who is your current
17   supervisor?
18   A.   At my job now?
19   Q.   Yes.
20   A.   George Molina.
21   Q.   M-o-l-i-n-a?
22   A.   Yes.
23        MR. SCHNEIDER:  I don't have any
24   other questions.
25        MS. ECK:  Okay.
```

Page 316

```
1              C. Sommer
2         MR. SCHNEIDER:  Do you have any
3    questions?
4         MS. ECK:  Just a couple, a few.
5    EXAMINATION BY
6    MS. ECK:
7    Q.   Ms. Sommer, you were reviewing what's
8    been marked Exhibit No. 29.
9         Do you have a recollection of whether
10   you attended a seminar in Dallas?
11   A.   After I reviewed this, yes, I
12   remember going to the event in Dallas.
13   Q.   Okay.  When students signed up for
14   Trump University courses or seminars, did they
15   all sign a same or uniform contract?
16   A.   Yes.
17   Q.   Was consistency among the contracts
18   and courses something that was important to
19   Trump University?
20   A.   That's what I was trying to bring, I
21   guess, into these events.  It didn't seem at the
22   time that it was very important.  For example, I
23   brought up the document that was incorrect that
24   was just thrown out there before I got there and
25   had been being used until I came to work and
```

Page 317

```
1              C. Sommer
2    realized that it was wrong, so I sort of -- I
3    thought my role was sort of trying to put some
4    organization and consistency and standardization
5    to these events, yes.
6    Q.   I'd like to show you a document that
7    bears Bates numbers TU132935 through 36.  It's a
8    series of emails between you, Brad Schneider,
9    David Highbloom, and Kendra and Jennifer
10   Baysinger.
11        If you could just take a minute and
12   look at that document.
13        MR. SCHNEIDER:  Can I take a look at
14   it first?
15        MS. ECK:  Sure.
16   A.   Yes.
17   Q.   Who were Kendra and Jennifer
18   Baysinger at ppgoffice.com?
19   A.   That was J.J.'s, I think it was his
20   law office.  Those were his assistants.
21   Q.   Okay.  And you indicate here in your
22   email to them on May 8, 2007, you say, "I need
23   to make sure we have consistency across the
24   board at retreats."
25        What did you mean by that?
```

# EXHIBIT 97

Exhibit 97
- 723 -

**Donald J. Trump, Sr.**                                                    **September 12, 2012**

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TARLA MAKAEFF, et al., on Behalf of

Themselves and All Others Similarly

Situated,

     Plaintiffs,                          Civil Action No.

         vs.                              3:10-CV-00940-

TRUMP UNIVERSITY, LLC, et al.,       CAB(WVG)

     Defendants.

————————— —————————————————————————

     Videotaped deposition of DONALD J. TRUMP, SR.

     New York, New York

     September 12, 2012

Reported by:

Gail L. Inghram Verbano:

RDR, CRR, CSR-CA (No. 8635)

Job No. 10003489

Exhibit 97
- 724 -

**Donald J. Trump, Sr.**                                    **September 12, 2012**

```
 1          IN THE UNITED STATES DISTRICT COURT
 2          SOUTHERN DISTRICT OF CALIFORNIA
 3
 4   TARLA MAKAEFF, et al., on Behalf of
 5   Themselves and All Others Similarly
 6   Situated,
 7         Plaintiffs,              Civil Action No.
 8         vs.                      3:10-CV-00940-
 9   TRUMP UNIVERSITY, LLC, et al.,    CAB(WVG)
10         Defendants.
11
12   _____
13
14          Videotaped deposition of DONALD J. TRUMP,
15   SR., taken on behalf of Plaintiffs, at The Trump
16   Organization, 725 Fifth Avenue, New York, New York
17   10022, beginning at 10:26 a.m., and ending at
18   3:06 p.m., on Wednesday, September 12, 2012, before
19   Gail Inghram Verbano, Registered Diplomate Reporter,
20   Certified Realtime Reporter, Certified Shorthand
21   Reporter-CA (No. 8635).
22
23
24
                                            Page 2
```

```
 1   APPEARANCES
 2   For Plaintiffs:
 3     ROBBINS GELLER RUDMAN & DOWD, LLP
          BY: RACHEL L. JENSEN, ESQUIRE
 4          655 West Broadway
            Suite 1900
 5          San Diego, California 92101
            619.231.1068
 6          619.231.7423 Fax
            rachelj@rgrdlaw.com
 7
 8     ZELDES & HAEGGQUIST, LLP
          BY: AMBER L. ECK, ESQUIRE
 9             and
          HELEN I. ZELDES, ESQUIRE
10          625 Broadway
            Suite 906
11          San Diego, California 92101
            619.342.8000
12          619.342.7878 Fax
            ambere@zhlaw.com
13          helenz@zhlaw.com
14
15   For Defendants:
16     YUNKER & SCHNEIDER
          BY: DAVID SCHNEIDER, ESQUIRE
17          YUNKER & SCHNEIDER
            655 West Broadway
18          Suite 1400
            San Diego, California 92101
19          619.233.5500
            619.233.5535 Fax
20          dks@yslaw.com
21   ALSO PRESENT:
22     Jonathan Popham,
23     Videographer
24
                                            Page 3
```

```
 1                  INDEX
 2   WITNESS:                              PAGE
 3   DONALD J. TRUMP, SR.
 4          By Ms. Jensen                     7
 5
 6          E X H I B I T S
 7   PLAINTIFFS'   DESCRIPTION              PAGE
 8     39    Notice of Taking of 30(b)(6)     11
             Deposition
 9
       40    2005 through 2009 DayPlanners;   91
10           TU71944 to 986
11     41    Photocopy of ticket and invitation;  116
             TU62079 through 2082
12
       42    Email communication, 10-30-09, with 133
13           attachments; TU102422 through 2426
14     43    Advertisement; TU69463          136
15     44    Advertisement; TU69434          137
16     45    Advertisement; TU62063          138
17     46    Trump Blog; TU64496 through 4497  138
       47    A Personal Message From Donald   140
18           Trump; TU60667
19     49    San Antonio Express-News         146
             advertisement; TU62091 through 2100
20
       50    Trump Blog, On Being a Brand;    157
21           TU-PLTF00199 through 0200
22     51    Donald J. Trump, An American Icon;  166
             TU59124
23
24
                                            Page 4
```

```
 1   QUESTIONS INSTRUCTED NOT TO ANSWER:
 2   PAGE   LINE
 3   67     14
 4
 5
 6
 7   PREVIOUSLY MARKED EXHIBITS REFERENCED:
 8   Plaintiffs' Exhibit 3
 9   Plaintiffs' Exhibit 7
10   Plaintiffs' Exhibit 19
11
12
13
14
15
16
17
18
19
20
21
22
23
24
                                            Page 5
```

2 (Pages 2 to 5)

**www.aptusCR.com**

Exhibit 97
- 725 -

**Donald J. Trump, Sr.**                                  **September 12, 2012**

```
 1              (Luncheon recess from 12:06 p.m.
 2         to 1:17 p.m.)
 3              THE VIDEOGRAPHER:  We are back on the
 4    record at 1:17 p.m.  This marks the beginning of Tape
 5    No. 2.
 6              MR. SCHNEIDER:  Before we get started, I
 7    want to strongly encourage you and suggest that you
 8    ask questions that pertain to Mr. Trump.
 9              We spent the morning talking about
10    reservations of rights letters and corporate
11    structure and document retention that other people
12    can respond to.  And you should ask your questions
13    that only Mr. Trump can respond to.
14              And, if necessary, we will make Alan
15    Garten or George Sorial available for those kind of
16    questions.  But spending Mr. Trump's time asking
17    about a reservation of rights letter from an
18    insurance company, you're just wasting time.
19              MS. JENSEN:  And, of course, for the
20    record, that was not the only question I asked.  I
21    asked many questions that pertained to Mr. Trump and,
22    of course, to Trump University; and, therefore,
23    plaintiffs, of course, disagree to -- with your
24    characterization of the morning.
                                              Page 90
```

```
 1    BY MS. JENSEN:
 2         Q   Now, Mr. Trump, did you have a day
 3    planner from 2004?
 4         A   Usually on a monthly basis; and when the
 5    date goes out, we usually throw them away.
 6         Q   Okay.  So is it your --
 7         A   You mean like a little notification of
 8    meetings and things?
 9         Q   Yes.
10              MR. SCHNEIDER:  We've produced -- I think
11    one of your secretaries had calendars, so we've
12    produced that to them.  So they know your
13    appointments with Don Sexton, and we produced all of
14    that to them.
15              THE WITNESS:  Fine.
16    BY MS. JENSEN:
17         Q   Did you keep more than one calendar?
18         A   No.
19              MS. JENSEN:  Now, I am handing to the
20    court reporter a document that bears the Bates stamp
21    TU71944 to 986, which I will ask to be marked as
22    Plaintiffs' Exhibit No. 40.
23              (Plaintiffs' Exhibit 40 was marked
24              for identification.)
                                              Page 91
```

```
 1    BY MS. JENSEN:
 2         Q   Mr. Trump, does this appear to be your
 3    monthly planner here?
 4         A   Yes.
 5         Q   And did you generally record all weekday
 6    meetings in this planner?
 7         A   Perhaps my secretary or myself, yes.
 8         Q   Okay.  Now, turning to the second page of
 9    this document, you'll see that the first page is the
10    2005 Executive's Weekly/Monthly Planner.  The second
11    page is January 17th through 19th.  Do you see
12    that?
13         A   Yes.
14         Q   And do you see that on the afternoon of
15    the 17th that you had a meeting with Michael Sexton
16    and -- is it Greg Topalian?  I can't quite make that
17    out, the writing there.
18         A   Yes, I see that.
19         Q   Is that your assistant's writing?
20         A   I believe so.
21         Q   And do you know what that meeting
22    pertained to?
23         A   I think it might have been about the
24    quality of the education.  We talked about concepts
                                              Page 92
```

```
 1    and the quality of the classes and the quality of
 2    what they would be discussing.
 3         Q   Sure.  And when you say "classes," what
 4    are you specifically referring to?
 5         A   I'm talking about the quality of the
 6    education that they would be teaching in the classes.
 7         Q   And which classes?
 8         A   All -- all of the classes, and some of
 9    the classes.  We -- as I told you, they're not -- I
10    wanted -- I thought specifically people should give
11    their own ideas and they should have their own
12    freedom to teach what they wanted to teach.
13              But we discussed with -- I think it was
14    Greg, but other people also.  I would ask them
15    questions about what they had in mind, what they
16    wanted to teach, how they taught, et cetera.
17         Q   And specifically was this for the online
18    classes?
19         A   I don't know.  I don't remember that.
20         Q   Okay.  Again, I have here on the next
21    page, we have March 23rd at "4:30 Michael Sexton
22    film."
23         A   Yeah.
24         Q   Do you know what that is referring to?
                                              Page 93
```

**www.aptusCR.com**

Exhibit 97
- 726 -

**Donald J. Trump, Sr.**                                             **September 12, 2012**

| | |
|---|---|
| 1    A   You'd have to ask Mr. Sexton. | 1   going.  He thought you needed a break.  We can drive |
| 2        But I did.  I made a million dollars or | 2   on unless you need a break. |
| 3   more, and using my own techniques, unlike a lot of | 3        THE WITNESS:  No, that's fine. |
| 4   instructors that teach real estate and never made 10 | 4        (Discussion off the stenographic |
| 5   cents. | 5        record.) |
| 6        MS. ZELDES:  I thought we weren't allowed | 6        MS. JENSEN:  Let the record reflect that |
| 7   to ask about that. | 7   we're showing a YouTube video entitled "Trump |
| 8        THE WITNESS:  What? | 8   University and Donald Trump." |
| 9        MR. SCHNEIDER:  She's just being a smart | 9        Can you see the screen? |
| 10  aleck. | 10       THE WITNESS:  Uh-huh. |
| 11       THE WITNESS:  That's okay. | 11       (Whereupon, YouTube video is |
| 12       MS. ZELDES:  So is he. | 12       played.) |
| 13  BY MS. JENSEN: | 13       MR. SCHNEIDER:  What's the site on that? |
| 14       Q   Which of your real estate courses were | 14       MS. ECK:  It is www.YouTube -- hold on. |
| 15  taught in the three-day seminar? | 15  player_detailpage&V=465TCEDzzoHO.  And I believe it |
| 16       A   You'd have to ask Mr. Sexton. | 16  is similar or identical to other videos that were |
| 17       Q   And which of your real estate secrets | 17  produced and Bates-stamped, and we just weren't able |
| 18  were taught as part of the mentorship? | 18  to access those here. |
| 19       A   You'd have to ask Mr. Sexton.  He has all | 19  BY MS. JENSEN: |
| 20  that information. | 20       Q   Mr. Trump, do you recognize this video? |
| 21       THE WITNESS:  Want to take a break? | 21       A   Yes. |
| 22       MS. JENSEN:  Let's go ahead and get | 22       Q   And what video is this? |
| 23  through one more thing and then we can take a break. | 23       A   Well, this was made for Trump University, |
| 24       MR. SCHNEIDER:  We're ready to keep | 24 |
| Page 130 | Page 131 |

| | |
|---|---|
| 1   yes. | 1   does a lot of other people in business.  You use your |
| 2        Q   Do you recall when it was made for Trump | 2   signature, yeah.  It's used consistently by many, |
| 3   University? | 3   many people in many, many big corporations in |
| 4        A   No. | 4   advertising. |
| 5        Q   Do you recall the purpose? | 5        MS. JENSEN:  I'm going to hand to the |
| 6        A   I was asked to do a video for Trump | 6   court reporter a document bearing the Bates stamp |
| 7   University. | 7   TU102422 to 426, which I will ask to be marked as |
| 8        Q   Was there any specific purpose? | 8   Plaintiffs' Exhibit No. 42. |
| 9        A   Just a general -- I mean, if you look at | 9        (Plaintiffs' Exhibit 42 was marked |
| 10  other colleges or if you look at other schools or if | 10       for identification.) |
| 11  you look at other training centers, they all do | 11  BY MS. JENSEN: |
| 12  videos and they say positive things, yeah. | 12       Q   Do you recognize this document? |
| 13       Q   And was that video scripted? | 13       A   I've seen it.  Vaguely, yes. |
| 14       A   No, I don't believe so. | 14       Q   And what is this document? |
| 15       Q   So that was in your words? | 15       A   This is a document talking about |
| 16       A   I think so.  It was -- I think it was in | 16  different locations, I believe, for the seminars. |
| 17  my words, yes.  I don't believe it was scripted. | 17       Q   Okay.  And it's kind of a bad copy.  But |
| 18       Q   Do you have involvement in advertising | 18  do you see the second page, 102423? |
| 19  and marketing of Trump University? | 19       A   Yes. |
| 20       A   Not too much. | 20       Q   And is that your picture there on the |
| 21       Q   Do you recall whose idea it was to use | 21  left? |
| 22  your signature as part of the advertising? | 22       A   Yes. |
| 23       A   I use it all the time.  It's part of | 23       Q   And is that your signature below the |
| 24  advertising.  I don't think it's anything unique.  So | 24  picture? |
| Page 132 | Page 133 |

34  (Pages 130 to 133)

Exhibit 97
- 727 -

**Donald J. Trump, Sr.**                                      **September 12, 2012**

```
 1        Q    Do you recognize this document,
 2   Mr. Trump?
 3        A    No, I don't believe I've seen it, but I
 4   may have.
 5        Q    Do you believe that you wrote this?
 6        A    Maybe I had something to do with it.  I'm
 7   not sure that I wrote it per se, but I might have had
 8   something to do with it.  I just don't recognize it
 9   at this moment.
10        Q    Do you see in the third paragraph, it
11   says:  "The Trump name carries with it a price tag.
12   People pay a lot more to live or rent commercial
13   space in my buildings because of the association with
14   me and my ideals."
15        A    Yes.
16        Q    Do you believe that that's true?
17        A    I do.
18        Q    What is your affiliation with Trump
19   Institute?
20        A    The Trump Institute?  I don't know what
21   the exact relationship is.  Again, you'd have to ask
22   Mr. Sexton about that.
23        Q    When was the last time you spoke with
24   Mr. Sexton?
```
                                               Page 158

```
 1        A    I don't know.  I'm not exactly sure.  A
 2   few months ago probably.  Four or five months.  I am
 3   not exactly sure.  I haven't spoken to him in a long
 4   time because we've become a little bit inactive with
 5   respect to this, unfortunately.
 6        Q    And so you said "a few months ago
 7   probably"?
 8        A    I don't remember.  I would say -- no,
 9   longer than that.  I would say for the most part he's
10   been dealing with my people and my lawyers.
11             I don't know.  Maybe six months ago.
12        Q    Okay.  Do you know what you spoke about
13   six months ago?
14        A    No, nothing much.  We have a very nice
15   relationship.
16        Q    So what was -- do you remember whether he
17   called you?
18        A    No, I don't remember.  I just vaguely
19   remember having spoken to him quite some time ago.
20        Q    It was about Trump University?
21        A    I don't know.  I don't really even know
22   that.  For the most part he's dealing with my
23   lawyers.
24        Q    Okay.  And did Mr. Sexton leave
```
                                               Page 159

```
 1   voluntarily?
 2        A    I would say we became more and more
 3   inactive, because of schedules -- my schedule in
 4   particular, I guess.
 5             And we'll possibly start this up again in
 6   a heavy way.  But yes, I would say the word would
 7   be -- he did leave voluntarily, yes.
 8        Q    Do you know whether one of the
 9   prerequisites for being an instructor or mentor was
10   that they were millionaires?
11        A    No, I don't know that.  You'd have to ask
12   Mr. Sexton.
13        Q    Now, handing to the court reporter a
14   document bearing the Bates stamp TU102907, which is
15   marked as Plaintiffs' Exhibit No. 19 and therefore
16   does not need to be re-marked.
17             Do you recognize this document?
18        A    No.  Let's see.  For Michael Bloom.
19             No, I don't know what it represents.
20        Q    Did you call Mr. Sexton on July 12th,
21   2010, to talk to them about how much negative stuff
22   there is out there?
23        A    Negative -- press?  I don't know what
24   they're talking about.
```
                                               Page 160

```
 1        Q    Do you recall?
 2        A    Negative stuff -- I don't remember having
 3   made a call.
 4        Q    Do you recall having that conversation?
 5        A    No, I don't.  I told you I don't.
 6        Q    And do you recall what it was referring
 7   to when it says "negative stuff"?
 8        A    No.  That's what I'm trying to figure
 9   out.  I don't know what the word "stuff" means.  No,
10   I don't really know what it means.
11        Q    Do you know who he's referring to when he
12   says "Have the reputation management people made any
13   progress"?
14        A    Have the reputation management people --
15             I really don't know what he means.
16        Q    So you don't know who the --
17        A    No.  I know the reputation of this was
18   very important and continues to be very important.
19        Q    Earlier I believe that we spoke about
20   J.J. Childers.
21        A    Yes.
22        Q    Who is Mr. Childers?
23        A    I don't know.  He was one of the
24   instructors, I believe.
```
                                               Page 161

                                    41 (Pages 158 to 161)

Exhibit 97
- 728 -

**Donald J. Trump, Sr.**                                    **September 12, 2012**

| | |
|---|---|
| 1    Q   And how do you know him? | 1    Q   And when you did meet with him, do you |
| 2    A   I don't know him.  But I believe he was a | 2   recall what you discussed? |
| 3   highly respected gentleman who worked for the school. | 3       MR. SCHNEIDER:  With Don Sexton? |
| 4    Q   And so you've never met him? | 4       MS. JENSEN:  Yes. |
| 5    A   I don't know.  I don't remember.  I may | 5       MR. SCHNEIDER:  He went through all this |
| 6   have, but I don't remember. | 6   this morning.  You went through the calendar, every |
| 7    Q   And Don Sexton?  Who is he? | 7   single day. |
| 8    A   I believe I did meet Mr. Sexton.  He's an | 8       MS. ZELDES:  Michael, that was Michael |
| 9   instructor.  Highly respected. | 9   Sexton. |
| 10    Q   When you say "instructor," do you mean he | 10       MR. SCHNEIDER:  I apologize.  Some of |
| 11   wrote a book? | 11   those were Don Sexton, actually, but -- do you |
| 12    A   No, I believe he taught classes. | 12   remember any specific -- |
| 13    Q   Okay.  Did he teach online courses; | 13       THE WITNESS:  Don Sexton was actually one |
| 14   correct? | 14   of them.  No, not specifically other than I -- I did |
| 15    A   I believe so, yes. | 15   say "I want everybody, including him, to do a great |
| 16    Q   He did not teach the live events; | 16   job." |
| 17   correct? | 17   BY MS. JENSEN: |
| 18    A   I don't know that.  You'd have to ask | 18    Q   Who is Robert Caplan? |
| 19   Mr. Sexton, Michael Sexton. | 19    A   I believe he was an instructor. |
| 20    Q   Do you remember how many times you met | 20    Q   When you say "instructor," it was online |
| 21   with him? | 21   courses; correct? |
| 22    A   No. | 22    A   Online, yes, but could be other also. |
| 23    Q   Don Sexton? | 23   You'd have to ask Michael. |
| 24    A   Yeah, no. | 24    Q   Okay.  And did you meet Mr. Caplan? |
|                  Page 162 |                  Page 163 |
| 1    A   I believe so.  But I'm not sure. | 1    A   I may have, yes. |
| 2    Q   Okay. | 2    Q   Okay.  But you can't recall specifically? |
| 3    A   Long time ago.  Many years ago. | 3    A   No.  Too many years ago. |
| 4    Q   You're not sure that you did? | 4    Q   And you don't recall what you discussed? |
| 5    A   I'm not sure that I did. | 5    A   No. |
| 6    Q   Right.  How about I believe you mentioned | 6    Q   Now, Mr. Trump, do you recall seeing any |
| 7   Gary Eldred? | 7   discovery responses in this case? |
| 8    A   Yes. | 8    A   No. |
| 9    Q   And who is Mr. Eldred? | 9    Q   Do you know who Mr. Roger Schank is? |
| 10    A   I don't remember; he's an instructor. | 10    A   No. |
| 11    Q   For the online courses? | 11    Q   Mr. John Vogel? |
| 12    A   I don't know.  I think it's online, but | 12    A   No.  I mean, I may have met these people, |
| 13   perhaps also the regular. | 13   but I don't remember them. |
| 14    Q   But you don't know? | 14       MS. JENSEN:  We're just going to take a |
| 15    A   I don't know what? | 15   quick break.  We'll be right back.  If you would, |
| 16       MR. SCHNEIDER:  He just told you what he | 16   we'll be right back. |
| 17   believes. | 17       (Discussion off the stenographic |
| 18   BY MS. JENSEN: | 18       record.) |
| 19    Q   Would I have to ask Mr. Sexton, Michael | 19       THE VIDEOGRAPHER:  Off the record. |
| 20   Sexton? | 20   3:20 p.m. |
| 21    A   Yes. | 21       (Recess taken.) |
| 22    Q   And did you ever meet him in person? | 22       THE VIDEOGRAPHER:  We are back on the |
| 23    A   Who? | 23   record at 3:37 p.m. |
| 24    Q   Mr. Eldred. | 24       MS. JENSEN:  I'm now going to hand to the |
|                  Page 164 |                  Page 165 |

42 (Pages 162 to 165)

Exhibit 97
- 729 -

**Donald J. Trump, Sr.**                                     **September 12, 2012**

| | |
|---|---|
| 1   court reporter a document which is a portion of a | 1      A   No, other than speeches, which is |
| 2   PowerPoint presentation produced by Trump University, | 2   separate. |
| 3   which bears the Bates stamp TU59124, which I will ask | 3      Q   Do you recall that when Michael Sexton |
| 4   be marked as Plaintiffs' Exhibit No. 51. | 4   first came to you about Trump University, he had |
| 5      (Plaintiffs' Exhibit 51 was marked | 5   originally offered a licensing agreement? |
| 6      for identification.) | 6      A   No.  It's possible that that happened, |
| 7   BY MS. JENSEN: | 7   but I don't remember. |
| 8      Q   Do you recognize this document? | 8      Q   Are you familiar with a New York Real |
| 9      A   I think I do, yes. | 9   Estate Institute? |
| 10      Q   And what is this document? | 10      A   New York Real Estate Institute?  Not |
| 11      A   It's various properties that I've built, | 11   particularly, no. |
| 12   owned, or something.  But it's a list of properties | 12      Q   So you don't have any type of interest in |
| 13   that I've been involved with. | 13   the New York Real Estate Institute? |
| 14      Q   And would you say that this slide | 14      A   You'd have to speak to my lawyers.  It |
| 15   contains images of buildings that are representative | 15   doesn't sound like it, unless it's an offshoot or |
| 16   in your real estate portfolio? | 16   something.  But you'd have to speak to my lawyers. |
| 17      A   Yes. | 17      MS. JENSEN:  That's all my questions for |
| 18      Q   And would you say that you've been | 18   now.  Plaintiffs will reserve their right to reopen |
| 19   primarily involved in large-scale real estate | 19   this deposition in the event that the Court rules |
| 20   projects? | 20   that the topic for which Mr. Trump was designated |
| 21      A   Yes, among other things.  Yes. | 21   should be testified by him; or in addition to the |
| 22      Q   Do you currently have any ownership or | 22   extent that the defendants have not provided all |
| 23   licensing interest in any other real estate investing | 23   relevant documents, plaintiffs also reserve our |
| 24   courses other than Trump University? | 24   rights. |
| Page 166 | Page 167 |

| | |
|---|---|
| 1      MR. SCHNEIDER:  That concludes the | 1      CERTIFICATE OF SHORTHAND REPORTER |
| 2   deposition. | 2 |
| 3      THE WITNESS:  Thank you.  Thank you. | 3      I, Gail Inghram Verbano, Registered |
| 4      THE VIDEOGRAPHER:  This concludes the | 4   Diplomate Reporter, Certified Realtime Reporter, |
| 5   testimony of Donald J. Trump.  We are going off the | 5   Certified Shorthand Reporter (CA) and Notary Public, |
| 6   record at 3:06 p.m.  This concludes Tape No. 3. | 6   the officer before whom the foregoing proceedings |
| 7      (Videotaped deposition concluded | 7   were taken, do hereby certify that the foregoing |
| 8      at 3:06 p.m.) | 8   transcript is a true and correct record of the |
| 9 | 9   proceedings; that said proceedings were taken by me |
| 10 | 10   stenographically and thereafter reduced to |
| 11 | 11   typewriting under my supervision; and that I am |
| 12      C E R T I F I C A T I O N | 12   neither counsel for, related to, nor employed by any |
| 13 | 13   of the parties to this case and have no interest, |
| 14 | 14   financial or otherwise, in its outcome. |
| 15      I hereby certify that I have read the | 15 |
| 16   foregoing transcript of my deposition testimony, and | 16 |
| 17   that my answers to the questions propounded, with the | 17 |
| 18   attached corrections or changes, if any, are true and | 18 |
| 19   correct. | |
| 20 | 18 _____ |
| | 19      Gail Inghram Verbano, CSR, RDR, CRR |
| 21   _____ | CA-CSR No. 8635 |
| DONALD J. TRUMP, SR. | 20 |
| 22 | 21 |
| 23 | 22 |
| 24 | 23 |
| Page 168 | Page 169 |

43 (Pages 166 to 169)

Exhibit 97
- 730 -

# EXHIBIT 100

Exhibit 100
- 743 -

Message

| From: | Lauren Lendzion [/O=LC/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=LLENDZION] |
|---|---|
| Sent: | 1/15/2013 7:19:26 PM |
| To: | Brad Freer [/O=LC/OU=First Administrative Group/cn=Recipients/cn=BFreer] |
| Subject: | FW: Share Your Success! |

**From:** Amber Eck [mailto:ambere@zhlaw.com]
**Sent:** Monday, January 14, 2013 5:35 PM
**To:** Rachel Jensen; Lauren Lendzion
**Subject:** FW: Share Your Success!

**From:** giti irani [mailto: **Redacted**
**Sent:** Wednesday, November 14, 2012 6:57 PM
**To:** Giti Irani
**Subject:** Fw: Share Your Success!

# Giti Irani

----- Forwarded Message -----
**From:** Customer Support <customersupport@trumpinitiative.com>
**To:**
**Sent:** Monday, November 12, 2012 12:49 PM
**Subject:** Share Your Success!

Dear Valued Customer, you have been identified as someone who has participated in our mentorship program and has had achievements to share. We would love to hear and use your success stories.  Please contact us immediately by either responding to this email or by leaving us a voicemail at 646-810-7358 referencing this email. One of our representatives will contact you back as soon as possible.


Thank You For Contacting Trump Entrepreneur Initiative!

Trump Entrepreneur Initiative
40 Wall Street
New York, NY 10005
Phone: 646.810.7358
Fax: 212.937.3830
www.trumpinitiative.com


The Trump Entrepreneur Initiative is not responsible for, and shall have no liability for any business success or failure, acts and/or omissions; the appropriateness of its student's business decisions; or, the use of or reliance on this information. The Trump Initiative does not render legal, accounting, investment or tax advice. It is your responsibility to engage appropriate professional advisors to evaluate the propriety of any transaction, strategy or approach. No guarantees, promises, representations or warranties of any kind regarding specific or general benefits, monetary or otherwise, have been or will be made by The Trump Initiative, its affiliates or their officers, principals, representatives, agents or employees.

TU-PLTF02453

Exhibit 100
- 745 -

# EXHIBIT 101

Exhibit 101
- 746 -

1  Randall Knox, State Bar No. 113166
2  870 Market Street, Suite 415
   San Francisco, CA 94102
3  (415) 765-7500

4  Attorney for Jason Sanders

5

6                    UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  UNITED STATES OF AMERICA,          } No. CR 08-0552 CRB
                                      }
10         Plaintiff,                 } **DEFENDANT'S SENTENCING**
                                      } **MEMORANDUM**
11                                    }
                                      }
12         v.                         } Date: October 14, 2009
                                      }
13                                    } Time: 2:15 p.m.
                                      }
14  JASON SANDERS,                    }
                                      }
15         Defendant.                 }
                                      }
16  _____ }

17                      **INTRODUCTION**

18       Defendant Jason Sanders submits this sentencing memorandum
19
   in support of his request for a downward departure from the U.S.
20
   Sentencing Guidelines.
21
22                  **STATEMENT OF THE CASE**

23       Defendant Jason Sanders has pled guilty to theft within the

24  territorial jurisdiction of the United States, a violation of 18

25  U.S.C. § 661.  The plea was open to the Court and without a plea

26  agreement with the Government.

27  ///

28
                            - 1 -

Exhibit 101
-  747 -

1

### STATEMENT OF FACTS

2

3
    The charge arises from Sanders' work as an employee at Tides

4
Foundation ("Tides"), where Sanders began working as an

5
administrative assistant in 1993.  Beginning in 2005, Sanders

6
submitted invoices for On Point, a for-profit consulting firm

7
created by Sanders.  The work ostensibly performed by On Point

8
was work that was done by Sanders as part of his responsibilities

9
at Tides.  Sanders masked his ownership of On Point from Tides.

10
    Between 2005 and early 2008, Tides paid invoices from On

11
Point, and in essence paid Sanders, in 17 separate amounts

12
totaling $132,600.

13

14
    In early 2008, during a routine audit, Tides discovered

15
discrepancies in Sanders' transactions.  Sanders admitted his

16
responsibility immediately when questioned by Tides.  Sanders'

17
employment was then terminated.

18
    Sanders met with Tides' CEO and management and apologized

19
for his conduct.  Sanders has repaid over $50,000 to Tides so

20
far.

21

22
    The context in which this unexpected and uncharacteristic

23
behavior occurred is both illuminating and relevant.  Sanders,

24
the only child of a single mother, moved to California from Texas

25
to attend the California College of Arts and Crafts in Oakland in

26
1989.  He received a Bachelor of Fine Arts in Metal Arts in 1993.

27

28

- 2 -

Exhibit 101
- 748 -

1    Sanders began temporary work at Tides and was hired full

2  time as an administrative assistant in November, 1993, making

3  $21,000 annually.

4    Tides is a tax-exempt social welfare organization under

5  I.R.C. §§ 501(c)(3) and 501(c)(4) that manages donor-advised

6  funds.  In 2008, its assets exceeded $150 million, and its annual

7

8  income was over $125 million.

9    Although Sanders was promoted at Tides, at all times his

10  work was essentially administrative.  Sanders was one of

11  approximately 10 employees at Tides who were each assigned 300 or

12  more donor-advised funds that Tides managed.  After donors

13  contributed funds to Tides, they would recommend, through Sanders

14

15  and others, where the donors wanted those funds distributed,

16  which included both non-profit and for-profit entities.  Sanders,

17  and other Philanthropic Advisors at Tides, simply administered

18  the accounts, handling invoices and payments.

19    In 2004, Sanders was divorced by his first wife, another

20  former Tides employee.  The divorce left Sanders feeling

21  abandoned and deeply in debt.  When he met his current wife, whom

22  he married in 2006, Sanders felt compelled to provide a

23

24  heightened level of financial support and standard of living.

25    It was about that time that Sanders created On Point, a for-

26  profit, sole proprietorship consulting firm.  Sanders then billed

27  Tides for work that Sanders was performing on behalf of Tides for

28

- 3 -

Exhibit 101
- 749 -

1    the 21st Century Foundation.  At no time was On Point represented

2    to anyone as a charitable or non-profit organization.  This was

3    confirmed in the Presentence Report, ¶ 12, where the CEO of Tides

4
     stated: "[w]hile he [Sanders] made a range of misrepresentations,
5
6    he did not to our knowledge hold himself or the fictitious

7    business entity he created, out to be a charitable organization."

8         Although Sanders at first considered On Point as a "side

9    job" that he did not disclose to Tides, he came to appreciate the

10   wrongfulness of his actions and his betrayal of his closest

11   colleagues and supporters.
12
          Contrary to the assertion in the Presentence Report, Sanders
13
14   paid taxes on the income from On Point.

15        From the outset, Sanders admitted his culpability.  He has

16   met with Tides Chief Executive Officer Drummond Pike, Chief

17   Financial Officer Lauren Webster and Vice President Ellen

18   Friedman and apologized for his actions.  He has repaid Tides

19   over $50,000 so far and is attempting to repay the balance on an
20
     expedited schedule.
21
22        Although Sanders is currently self-employed working with

23   distressed properties, a job with another non-profit organization

24   was terminated when Sanders disclosed this pending case.

25        Tides is confident that it will recover all the restitution

26   owed and believes that Sanders is genuinely contrite about his

27   actions.

28
                                - 4 -

Exhibit 101
                                                          - 750 -

1    Tides does not want Sanders imprisoned and expressed that to

2    the Government in a letter dated December 1, 2008.  In that

3    letter, Lauren Webster, Tides' CFO, on behalf of Tides, stated

4    that if Sanders were convicted and made a substantial payment

5    towards restitution, Tides "believe[d] there would be little

6    further benefit derived from incarceration."  She further stated:

7
8        Instead, we recommend that Mr. Sanders be required to
         fulfill a suitable term of Community Service under Court
9        Supervision.  Our objectives in this area lie in choosing a
         path that may have the greatest likelihood of remediation
10       and protecting the public from future harm.  We are cautious
         about service of prison time and its link to recidivism.  We
11       would therefore support a term of Community Service either
         alone or in combination with other programming focused on
12       deterrence.

13   A copy of the letter is attached as Exhibit A.  That letter was

14   not disclosed to the defense by the Government.

15
                              **ARGUMENT**
16
17       The defense is seeking a sentence that is a downward

18   departure from the Guidelines that would allow Sanders to

19   continue to work, repay Tides and avoid imprisonment.  A sentence

20   that would accomplish this is within the court's discretion.

21
                         SENTENCING STANDARDS
22
23       In fashioning an appropriate sentence under 18 U.S.C. §

24   3553(a), the Court should consider:

25       (1) the nature and circumstances of the offense and the

26       history and characteristics of the defendant;

27       (2) the need for the sentence imposed-

28
                              - 5 -

Exhibit 101
-   751 -

(A) to reflect the seriousness of the offense, to

promote respect for the law, and to provide just

punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes by the

defendant; and

(D) to provide the defendant with needed educational or

vocational training, medical care, or other

correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range

established for-

(A)   the applicable category of offense committed by

the applicable category of defendant as set forth

in the guidelines issued by the Sentencing

Commission pursuant to section 994(a)(1) of title

28, United States Code, and are in effect on the

date the defendant is sentenced; or

(B)   ***

(5) any pertinent policy statement issued by the Sentencing

Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect

on the date the defendant is sentenced;

- 6 -

Exhibit 101
- 752 -

1    (6) the need to avoid unwarranted sentence disparities among

2    defendants with similar records who have been found guilty

3    of similar conduct; and

4    (7) the need to provide restitution to any victims of the

5    offense.

6    Federal sentencing law provides that "[n]o limitation shall

7    be placed on the information concerning the background,

8    character, and conduct of the person convicted of the offense

9    which a Court ... might receive and consider for the purpose of

10   imposing an appropriate sentence."  18 U.S.C. § 3661; see <u>United</u>

11   <u>States v. Duarte</u>, 901 F.2d 1498, 1500 (9th Cir. 1990).  The law

12   expressly limits the Court to fashion a sentence that is

13   sufficient, but not greater than necessary, to achieve the

14   sentencing goals reflected in 18 U.S.C. § 3553(a)(2).

<u>CRIMINAL HISTORY CATEGORY</u>

17   Sanders has never been arrested.  Both the defense and the

18   Government agree that Sanders is Criminal History Category I.

<u>BASE OFFENSE LEVEL</u>

21   Under U.S.S.G. § 2B1.1(a), the base offense level for this

22   type of theft is 6.  Because the loss was greater than $120,000,

23   but less than $200,000, ordinarily 10 points would be added, for

24   a total of 16 points.

26   Under U.S.S.G. § 2B1.1, application note 3(E)(i), a

27   defendant is credited for money returned to the victim by him if

28

- 7 -

Exhibit 101
-  753  -

1    it is returned before the offense is detected.  Although

2    technically not applicable here, if that credit were employed,

3    only 8 points would be added for a total of 14 points.

4                    SPECIFIC OFFENSE CHARACTERISTICS

5        The Presentence Report adds two additional guideline points

6    based on the assumption that the offense involved a

7

8    misrepresentation that the defendant was acting on behalf of a

9    charitable organization under U.S.S.G. § 2B1.1(b)(8)(A).  The

10   defense submits that this enhancement is inapplicable.

11       U.S.S.G. § 2B1.1(b)(8)(A) provides for a two-level increase

12   where the defendant misrepresented that he was acting on behalf

13   of a charitable organization.  This requires more than the

14   defendant simply working for a charitable organization.  The

15   defendant must have misrepresented that he was seeking the funds

16

17   for, or performing work for, a charitable entity in order for

18   this increase to apply.

19       Application note 7(B) of U.S.S.G. § 2B1.1, provides that the

20   enhancement applies only when "the defendant represented that the

21   defendant was acting to obtain a benefit on behalf of a

22

23   charitable, educational, religious, or political organization..."

24   It provides as examples:

25       (i)   A defendant who solicited contributions for a non-
                existent famine organization.
26
27       (ii)  A defendant who solicited donations from church
                members by falsely claiming to be a fundraiser for a
28                religiously affiliated school.

                              - 8 -

Exhibit 101
                                   -  754 -

1

2
        (iii)    A defendant, chief of a local fire department, who
3
                    conducted a public fundraiser representing that the
                    purpose of the fundraiser was to procure sufficient
4
                    funds for a new fire engine when, in fact, the
                    defendant intended to divert some of the funds for
5
                    the defendant's personal benefit.

6
    This enhancement is not applicable where, as here, the
7
defendant misrepresents that the beneficiary of the funds is a
8
for-profit consulting firm.
9
    Every reported case interpreting U.S.S.G. § 2B1.1(b)(8)(A)
10
has required that the defendant receive money on behalf of, or
11
for work performed on behalf of, a charitable or educational
12
organization.
13
    In <u>U.S. v. Lambert</u>, 498 F.3d 963, 971-92 (9th Cir. 2007),
14
the defendant was convicted of conspiring with his wife to
15
defraud the United States by receiving money for grant writing on
16
behalf of the Fort Peck Indian Tribes from the Tribes' Education
17
Department.  The court noted that even though the benefit went
18
directly to the defendant, he had billed for work performed on
19
behalf of an educational organization.  Further, the court held
20
that the enhancement was proper because Lambert was convicted of
21
conspiring with his wife, who had obtained the payments on behalf
22
of the Tribes' Education Department.  <u>Lambert</u>, <u>supra</u> at 971-72.
23
<u>See also</u> <u>U.S. v. Thornton</u>, 511 F.2d 1221, 1228 (9th Cir. 2008)
24
(defendant embezzled money from a charitable foundation that he
25

26

27

28

- 9 -

Exhibit 101
-  755  -

1    established to raise money for kidney research at the University

2    of Southern California.)

3        The Fifth Circuit in U.S. v. Reasor, 541 F.3d 366, 372 (5th

4    Cir. 2008) adopted the rationale in Lambert, but upheld the

5    enhancement only because the defendant, a church bookkeeper, had

6    clearly represented that she was the cashing checks drawn on the

7    church account on behalf of the church.

8

9        In this case there is no dispute that On Point was not a

10   charitable, educational or other non-profit entity.  The invoices

11   were on behalf of, and for work performed by, a for-profit

12   consultancy.  In the Presentence Report, ¶ 12, Tides' CEO stated:

13   "[w]hile he [Sanders] made a range of misrepresentations, he did

14   not to our knowledge hold himself or the fictitious business

15   entity he created, out to be a charitable organization."

16

17       Accordingly, the two level enhancement under U.S.S.G. §

18   2B1.1(a)(8) is inapplicable.

19                    ADJUSTMENT FOR ROLE IN THE OFFENSE

20       The Presentence Report also includes a two-level increase

21   because, according to the report, Sanders had "professional and

22   managerial discretion with minimal supervision."  Although not

23   specified in the report, presumably this is based on the

24   enhancement for abuse of trust under U.S.S.G. § 3B1.3.

25

26       U.S.S.G. § 3B1.3 provides for a two-level increase where the

27   defendant abused a position of trust in a manner that

28

                                - 10 -

Exhibit 101
- 756 -

significantly facilitated the commission or concealment of the

offense.

    Application note 1 of U.S.S.G. § 3B1.3 limits that

enhancement to defendants who have "substantial discretionary

judgment that is ordinarily given considerable deference."  As

examples, the note uses "embezzlement of a client's funds by an

attorney serving as a guardian, a bank executive's fraudulent

loan scheme, or the criminal sexual abuse of a patient by a

physician under the guise of an examination."  The guideline note

expressly excludes embezzlement or theft by employees whose

responsibilities are primarily non-discretionary in nature, like

bank tellers or hotel clerks, "because such positions are not

characterized by the above described factors."

    The Ninth Circuit has held that this application note

"places a significant limit on the types of positions subject to

the abuse-of-trust enhancement."  U.S. v. Contreras, ---F.3d ---

(9th Cir. 2009), 09 Cal. Daily Op. Serv. 11,873, 2009 WL 2960623,

(9/17/09) quoting U.S. v. West, 56 F.3d 216, 220 (D.C. Cir.

1995).  Based on that application note, the Ninth Circuit

overruled U.S. v. Hill, 915 F.2d 502 (9th Cir. 1990) and rejected

the holding in Hill that "the hallmark of a position of trust was

'the extent to which the position provides the freedom to commit

a difficult-to-detect wrong.'"  Contreras, supra.  The court

ruled that "the element of discretion-not ease of detection- was

- 11 -

Exhibit 101
- 757 -

1    the decisive factor in the enhancement." <u>Contreras</u>, <u>supra</u>,

2    <u>citing</u> <u>U.S. v. Tribble</u>, 206 F.3d 634, 637 (6th Cir. 2000).

3         The Ninth Circuit had "previously held that the listing of

4    professions in the commentary demands 'reasoning by analogy, not

5    just reference to dictionary definitions,'" and that a position

6    of trust refers to "'people trained and employed at a high

7    level.'" <u>Contreras</u>, <u>supra</u>.

8

9         In <u>U.S. v. Thornton</u>, <u>supra</u>, the Ninth Circuit upheld

10   application of the abuse of trust enhancement because the

11   defendant was the president of a charitable foundation paid by

12   USC to raise money for kidney research.  <u>Thornton</u> at 1221.  The

13   enhancement was upheld in <u>U.S. v. Feingold</u>, 454 F.3d 1001, 1013

14   (9th Cir. 2006) because the defendant was a physician who had

15   abused the trust of his patients.

16

17        Sanders' position lacked the fiduciary or high-level

18   characteristics found in the examples given in application note 1

19   to U.S.S.G. § 3B1.3 and in Ninth Circuit cases applying the

20   enhancement.  Sanders administered, not managed, the donor-

21   advised funds.  The invoices submitted on behalf of On Point were

22   similar in nature to phony withdrawal slips prepared by an

23   embezzling bank teller.  This was corroborated by the discovery

24   of the invoices during a routine audit by Tides.  Sanders'

25   discretionary judgment was not given the considerable deference

26

27

28

                              - 12 -

                                        Exhibit 101
                                      -  758 -

of a person with professional or managerial discretion.  The

misfeasance was discovered and Sanders was fired.

Accordingly, the enhancement for abuse of trust should not

be applied.

<u>STANDARD ACCEPTANCE OF RESPONSIBILITY</u>

Under U.S.S.G. § 3E1.1(a) and (b), where, as here, the

offense level is 16 or greater, a defendant is entitled to a

three-point reduction by timely notifying the Government of his

intention to plead guilty.  That three-point reduction applies

here.

<u>EXTRAORDINARY ACCEPTANCE OF RESPONSIBILITY</u>

The United States Court of Appeals for the Ninth Circuit has

authorized trial courts to allow a downward departure based on

extraordinary acceptance of responsibility.  <u>United States v.</u>

<u>Brown</u>, 985 F.2d 478, 482-83 (9th Cir. 1993).  In <u>Brown</u>, the Ninth

Circuit allowed a downward departure of four points based on the

defendant's cooperation, even though U.S.S.G. § 3E1.1 provides

for only a three level decrease.

Sanders contrition, cooperation and efforts to pay

restitution warrant an additional point reduction for his

extraordinary acceptance of responsibility.

**CONCLUSION**

Because the Guidelines are advisory, and not binding on the

court after <u>U.S. v. Booker</u>, 543 U.S. 220 (2005), the court should

- 13 -

Exhibit 101
- 759 -

1  fashion a sentence sufficient, but not greater than necessary, to

2  achieve the sentencing goals reflected in 18 U.S.C. § 3553(a)(2).

3      The defense requests that the court depart downward from the

4  Guidelines and sentence the defendant to five years probation,

5  one year of home detention, 2,000 hours of community service and

6  a requirement that restitution be completed within one year.

7  This sentence would satisfy the goals of 18 U.S.C. § 3553(a)(2)

8  and the desires of Tides and its management.

9      Some of the consequences of a federal felony conviction have

10  already been felt by Sanders in the guilt, shame and damage to

11  his reputation that he has inflicted upon himself.  Future

12  employment with non-profits and other non-governmental

13  organizations is unlikely.  The friendships and collegiality that

14  he enjoyed at Tides are irreparably diminished.

15      An appropriate sentence would consider these collateral

16  consequences on Sanders and his family, the repayment of a

17  substantial portion of the restitution and the extraordinary

18  acceptance of responsibility demonstrated by Sanders, and allow

19  him to avoid imprisonment.

20  Dated:  October 4, 2009          Respectfully submitted,

26                         _____/s/_____
                                   Randall Knox
27                                 Attorney for Jason Sanders

                                   - 14 -

Exhibit 101
                                              -  760 -

PROOF OF SERVICE BY PERSONAL SERVICE

<u>U.S. v. Jason Sanders</u>                      CR 08-0552 CRB

I, the undersigned, declare: I am a citizen of the United States,
over the age of eighteen years and am not a party to the within
action.  My business address is 870 Market Street, Suite 415, San
Francisco, CA 94102.  I served a true copy of the attached
**DEFENDANT JASON SANDERS SENTENCING MEMORANDUM** upon the below
named persons at the address given below by personal service on
October 4, 2009.

     I declare under penalty of perjury that the foregoing is
true and correct and that this declaration was executed in the
City and County of San Francisco, CA on the date next given
below.

            **Acadia Senese, Esq.**
            **Assistant U.S. Attorney**
            **450 Golden Gate Ave, 11th Floor**
            **San Francisco, CA 94105**

            **Insa Bel'Ochi**
            **U.S. Probation Officer**
            **450 Golden Gate Ave., 17th Floor**
            **San Francisco, CA 94102**


Dated:  October 4, 2009

                              _____/s/_____
                              Randall Knox

- 15 -

Exhibit 101
- 761 -



# TIDES

SENT VIA FAX:     415.436.7234

December 1, 2008

Wendy Thomas, United States Attorney
U.S. Department of Justice
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Ms. Thomas,

We write on behalf of the Tides Foundation, its Board, donors, and staff, with
regard to the resolution of the theft of substantial funds from Tides by Jason R.
Sanders, a long time employee who was entrusted with oversight over
grantmaking through Donor Advised Funds at Tides for fourteen years.

Tides was deeply affected by this series of malfeasant acts. Trust with donors
was eroded and unwelcome publicity attended the matter in a variety of ways. In
addition, colleagues and co-workers were deeply shocked and saddened at the
breach of trust and ongoing dishonesty over three years that these acts
represented.

We understand Mr. Sanders has come forward with a proposal for complete
restitution, the offer of which we welcome. In this regard, we make the following
comments:

- Mr. Sanders should be held accountable and future employers
  need to know of this history so as to appropriately manage security.
  Similarly, those who might engage in any number of business
  transactions with Mr. Sanders may benefit from this information
  available to them as part of public record. A conviction on felony
  charges significantly contributes to this.

- Mr. Sanders should render restitution requiring an initial payment of
  the largest amount possible of the lost funds ($75,000) and they

TIDES
The Presidio
P.O. Box 29198
San Francisco, CA
94129-0198

t| 415.561.6400
f| 415.561.6401

www.tides.org

Exhibit 101
- 762 -



# TIDES

- should be due upon sentencing. The balance should be due regularly on a schedule approved by the Court.

- If these first two conditions are met, we believe there would be little further benefit derived from incarceration. Instead, we recommend that Mr. Sanders be required to fulfill a suitable term of Community Service under Court supervision. Our objectives in this area lie in choosing a path that may have the greatest likelihood of remediation and protecting the public from future harm. We are cautious about service of prison time and its link to recidivism. We would therefore support a term of Community Service either alone or in combination with other programming focused on deterrence.

- Finally, and solely at our discretion, Mr. Sanders should be required to attend all of three potential meetings: one with executives from Tides, one with a larger staff group, and one with our CEO and the donor from whose accounts most of the funds were taken.

We appreciate the Court's consideration of our views. We remain deeply saddened by the unfolding of these events. We cannot fathom what motivated Mr. Sanders to do what he did after a distinguished track record of service at Tides Foundation. We truly hope that he will be able to learn from this tragedy and return to a productive place in society.

Sincerely,

Drummond Pike, CEO

Lauren Webster, CFO

Cc:     Cynthia Rowland, Coblentz, Patch, Duffy and Bass

TIDES
The Presidio
P.O . Box 29198
San Francisco, CA
94129-0198

t] 415.561.6400
f] 415.561.6401

www.tides.org

Exhibit 101
-   763 -

# EXHIBIT 102

Exhibit 102
- 764 -

Order documents from our nationwide document retrieval service.
- OR - Call **1.866.540.8818**.

# US District Court Criminal Docket

## U.S. District - California Northern
## (San Francisco)

## 3:08cr552

## USA v. Sanders

This case was retrieved from the court on Wednesday, September 26, 2012

| | | | |
|---|---|---|---|
| **Date Filed:** | **08/19/2008** | **Class Code:** | **CLOSED** |
| **Other Docket:** | **None** | **Closed:** | **yes** |

### Defendants

| Name | Attorneys |
|---|---|
| Jason Ramon Sanders(1)<br>[Term: 02/24/2010] | Randall Gary Knox, Attorney at Law<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>870 Market Street, Suite 415<br>San Francisco, CA 94102<br>USA<br>415-765-7500<br>Fax: 415-765-7501<br>Designation: Retained<br>Email: randyknox@aol.com |

### Charges

**Complaints:** none

**Pending:** 18:661 Theft Within the Special Maritime and Territorial Jurisdiction of the United States(1)
**Offense Level (Opening): Felony**

### Disposition

Defendant is sentenced to a term of 24 months in custody, 3 years supervised release; Assessment fee $100.00; Fine: waived; Restitution in the amount of $132,600.00

**Terminated:** none

**Case Assigned to:** Honorable Charles R. Breyer

### U. S. Attorneys

Acadia Leigh Senese
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
United States Attorney's Office
450 Golden Gate Avenue 11th Floor
San Francisco, CA 94102
USA
415-436-6809
Fax: 415-436-7234
Email: acadia.senese@usdoj.gov

Wendy May Thomas
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
[Term: 07/30/2009]
U.S. Attorney's Office
450 Golden Gate Avenue
San Francisco, CA 94102
USA
415-436-6809
Fax: 415-436-7234
Email: wendy.thomas@usdoj.gov

Exhibit 102
- 765 -

| 08/19/2008 | 1 | INDICTMENT as to Jason Ramon Sanders (1) count(s) 1. (rhw, COURT STAFF) (Filed on 8/19/2008) (Entered: 08/20/2008) |
|---|---|---|
| 08/19/2008 | | CASE DESIGNATED for Electronic Filing. (Entered: 08/20/2008) |
| 08/26/2008 | 2 | Minute Entry for proceedings held before Judge Magistrate Judge Joseph C. Spero:Initial Appearance as to Jason Ramon Sanders held on 8/26/2008, Added attorney Randall Gary Knox for Jason Ramon Sanders. Arraignment as to Jason Ramon Sanders (1) Count 1 held on 8/26/2008 ; not guilty plea entered. Attorney Appointment Hearing set for 8/27/2008 09:30 AM before Judge Magistrate Judge Joseph C. Spero. Trial Setting Hearing set for 9/17/2008 02:15 PM before Hon. Charles R. Breyer. (Tape #FTR 9:42 to 9:48.) (rhw, COURT STAFF) (Filed on 8/26/2008) (Entered: 08/29/2008) |
| 08/26/2008 | 3 | ORDER Setting Conditions of Release as to Jason Ramon Sanders (1) $25,000 unsecured. Signed by Judge Magistrate Judge Joseph C. Spero on 8/26/08. (rhw, COURT STAFF) (Filed on 8/26/2008) (Entered: 08/29/2008) |
| 08/27/2008 | 4 | Minute Entry for proceedings held before Judge Magistrate Judge Joseph C. Spero:Attorney Appointment Hearing as to Jason Ramon Sanders held on 8/27/2008 (Tape #FTR 9:32-9:33.) (rhw, COURT STAFF) (Filed on 8/27/2008) (Entered: 08/29/2008) |
| 08/28/2008 | 5 | No Bail Warrant Returned Executed on 8/25/08 as to Jason Ramon Sanders. (rhw, COURT STAFF) (Filed on 8/28/2008) (Entered: 08/29/2008) |
| 09/11/2008 | 6 | Proposed Order by USA as to Jason Ramon Sanders and Stipulation Excluding Time from August 26, 2008 to September 17, 2008 (Thomas, Wendy) (Filed on 9/11/2008) (Entered: 09/11/2008) |
| 09/17/2008 | 7 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Status Conference as to Jason Ramon Sanders held on 9/17/2008 Status Conference set for 10/22/2008 02:15 PM in Courtroom 8, 19th Floor, San Francisco. (Court Reporter Sylvia Russo.) (be, COURT STAFF) (Filed on 9/17/2008) (Entered: 09/17/2008) |
| 10/21/2008 | 8 | STIPULATION and Proposed Order Continuing Status Conference by Jason Ramon Sanders (Knox, Randall) (Filed on 10/21/2008) (Entered: 10/21/2008) |
| 10/21/2008 | 9 | ORDER as to Jason Ramon Sanders re 8 Stipulation filed by Jason Ramon Sanders Status Conference set for 12/3/2008 02:15 AM in Courtroom 8, 19th Floor, San Francisco.. Signed by Judge Hon. Charles R. Breyer on 10/21/08. (be, COURT STAFF) (Filed on 10/21/2008) (Entered: 10/21/2008) |
| 12/01/2008 | 10 | STIPULATION AND ORDER EXCLUDING TIME FROM AUGUST 26, 2008 TO SEPTEMBER 17, 2008 as to Jason Ramon Sanders. Signed by Judge Magistrate Judge Joseph C. Spero on 12/1/8. (klh, COURT STAFF) (Filed on 12/1/2008) (Entered: 12/02/2008) |
| 12/03/2008 | 11 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Status Conference as to Jason Ramon Sanders held on 12/3/2008 Status Conference set for 1/7/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco. (Court Reporter Catherine Edwards.) (be, COURT STAFF) (Filed on 12/3/2008) (Entered: 12/03/2008) |
| 01/07/2009 | 12 | Proposed Order by USA as to Jason Ramon Sanders and Stipulation Excluding Time From September 17, 2008, to October 22, 2008 (Thomas, Wendy) (Filed on 1/7/2009) (Entered: 01/07/2009) |
| 01/07/2009 | 13 | Proposed Order by USA as to Jason Ramon Sanders and Stipulation Excluding Time from December 3, 2008 to January 7, 2009 (Thomas, Wendy) (Filed on 1/7/2009) (Entered: 01/07/2009) |
| 01/07/2009 | 14 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Status Conference as to Jason Ramon Sanders held on 1/7/2009 Motion Hearing set for 2/18/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco. (Court Reporter Kelly Bryce.) (be, COURT STAFF) (Filed on 1/7/2009) (Entered: 01/08/2009) |
| 01/08/2009 | 15 | ORDER excluding time from September 17, 2008 to October 22, 20008 as to Jason Ramon Sanders re 12 Proposed Order filed by USA. Signed by Judge Hon. Charles R. Breyer on 1/08/09. (be, COURT STAFF) (Filed on 1/8/2009) (Entered: 01/08/2009) |
| 01/08/2009 | 16 | ORDER excluding time from December 3, 2008 to January 7, 2009 as to Jason Ramon Sanders re 13 Proposed Order filed by USA. Signed by Judge Hon. Charles R. Breyer on 1/08/09. (be, COURT STAFF) (Filed on 1/8/2009) (Entered: 01/08/2009) |
| 02/17/2009 | 17 | STIPULATION and Proposed Order Continuing Status Conference by Jason Ramon Sanders (Knox, Randall) (Filed on 2/17/2009) (Entered: 02/17/2009) |
| 02/17/2009 | 18 | ORDER as to Jason Ramon Sanders re 17 Stipulation filed by Jason Ramon Sanders Status Conference set for 3/25/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco.. Signed by Judge Hon. Charles R. Breyer on 2/17/09. (be, COURT STAFF) (Filed on 2/17/2009) (Entered: 02/17/2009) |
| 03/25/2009 | 19 | CLERK'S NOTICE of Referral to Probation (be, COURT STAFF) (Filed on 3/25/2009) (Entered: 03/25/2009) |
| 03/25/2009 | 20 | Application for Permission to Enter Plea of Guilty and ORDER Accepting PLEA as to Jason Ramon Sanders.. Signed by Judge Hon. Charles R. Breyer on 3/25/09. (be, COURT STAFF) (Filed on 3/25/2009) (Entered: 03/26/2009) |
| 03/25/2009 | 21 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Change of Plea Hearing as to Jason Ramon Sanders held on 3/25/2009, Plea entered by Jason Ramon Sanders (1) Guilty Count 1. Sentencing set for 7/1/2009 02:15 PM before Hon. Charles R. Breyer. (Court Reporter Katherine Sullivan.) (rhw, COURT STAFF) (Filed on 3/25/2009) (Entered: 03/30/2009) |
| 03/25/2009 | | Terminate Past Deadlines and Hearings as to Jason Ramon Sanders (rhw, COURT STAFF) (Filed on 3/25/2009) (Entered: 03/30/2009) |
| 06/25/2009 | 22 | STIPULATION and Proposed Order Continuing Sentencing by Jason Ramon Sanders (Knox, Randall) (Filed |

Exhibit 102
- 766 -

| | | |
|---|---|---|
| 06/26/2009 | 23 | ORDER Continuing Sentencing as to Jason Ramon Sanders re 22 Stipulation filed by Jason Ramon Sanders Sentencing set for 8/26/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco before Hon. Charles R. Breyer.. Signed by Judge Hon. Charles R. Breyer on 6/26/09. (be, COURT STAFF) (Filed on 6/26/2009) (Entered: 06/26/2009) |
| 07/30/2009 | 24 | NOTICE of Substitution of Attorney as to Jason Ramon Sanders NOTICE OF CHANGE OF COUNSEL (Senese, Acadia) (Filed on 7/30/2009) (Entered: 07/30/2009) |
| 08/17/2009 | 25 | CLERKS NOTICE Continuance of Hearing. Sentencing reset to 9/9/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco before Hon. Charles R. Breyer. (be, COURT STAFF) (Filed on 8/17/2009) (Entered: 08/17/2009) |
| 09/07/2009 | 26 | STIPULATION and proposed order continuing sentencing by Jason Ramon Sanders (Knox, Randall) (Filed on 9/7/2009) (Entered: 09/07/2009) |
| 09/08/2009 | 27 | ORDER continuing sentencing and excluding time as to Jason Ramon Sanders re 26 Stipulation filed by Jason Ramon Sanders Sentencing set for 10/14/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco before Hon. Charles R. Breyer.. Signed by Judge Hon. Charles R. Breyer on 9/08/09. (be, COURT STAFF) (Filed on 9/8/2009) (Entered: 09/08/2009) |
| 10/04/2009 | 28 | SENTENCING MEMORANDUM by Jason Ramon Sanders (Attachments: # 1 Exhibit Letter from Tides' CFO) (Knox, Randall) (Filed on 10/4/2009) (Entered: 10/04/2009) |
| 10/07/2009 | 29 | SENTENCING MEMORANDUM by USA as to Jason Ramon Sanders (Senese, Acadia) (Filed on 10/7/2009) (Entered: 10/07/2009) |
| 10/13/2009 | 30 | STIPULATION and Proposed Order Continuing Sentencing by Jason Ramon Sanders (Knox, Randall) (Filed on 10/13/2009) (Entered: 10/13/2009) |
| 10/13/2009 | 31 | ORDER as to Jason Ramon Sanders re 30 Stipulation filed by Jason Ramon Sanders Sentencing set for 11/18/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco before Hon. Charles R. Breyer.. Signed by Judge Hon. Charles R. Breyer on 10/13/09. (be, COURT STAFF) (Filed on 10/13/2009) (Entered: 10/13/2009) |
| 11/18/2009 | 32 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Status Conference as to Jason Ramon Sanders held on 11/18/2009 Evidentiary Hearing set for 11/30/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco. (Court Reporter Joan Columbini.) (be, COURT STAFF) (Filed on 11/18/2009) (Entered: 11/20/2009) |
| 11/27/2009 | 33 | Declaration by USA as to Jason Ramon Sanders In Support of United States' Sentencing Memorandum (Attachments: # 1 Exhibit Exhibit A, B, and C)(Senese, Acadia) (Filed on 11/27/2009) (Entered: 11/27/2009) |
| 11/30/2009 | 34 | Declaration of Detective Larry Morales by USA as to Jason Ramon Sanders In Support of United States' Sentencing Memorandum (Senese, Acadia) (Filed on 11/30/2009) (Entered: 11/30/2009) |
| 11/30/2009 | 35 | MOTION to Continue Evidentiary and Sentencing Hearing by Jason Ramon Sanders. Motion Hearing set for 11/30/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco. (Knox, Randall) (Filed on 11/30/2009) (Entered: 11/30/2009) |
| 11/30/2009 | 36 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Status Conference as to Jason Ramon Sanders held on 11/30/2009 Evidentiary Hearing set for 12/10/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco. (Court Reporter Katherine Sullivan.) (be, COURT STAFF) (Filed on 11/30/2009) (Entered: 12/01/2009) |
| 12/01/2009 | 37 | ORDER granting 35 Motion to Continue as to Jason Ramon Sanders (1). Signed by Judge Hon. Charles R. Breyer on 11/30/09. (be, COURT STAFF) (Entered: 12/01/2009) |
| 12/01/2009 | | Terminate Deadlines and Hearings as to Jason Ramon Sanders: past date(lsk, COURT STAFF) (Filed on 12/1/2009) (Entered: 12/02/2009) |
| 12/09/2009 | 38 | SENTENCING MEMORANDUM by Jason Ramon Sanders First Supplemental Sentencing Memorandum (Knox, Randall) (Filed on 12/9/2009) (Entered: 12/09/2009) |
| 12/10/2009 | 39 | Second MOTION to Continue Evidentiary Hearing by Jason Ramon Sanders. Motion Hearing set for 12/10/2009 02:15 PM in Courtroom 8, 19th Floor, San Francisco. (Knox, Randall) (Filed on 12/10/2009) (Entered: 12/10/2009) |
| 12/14/2009 | 40 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Evidentiary Hearing as to Jason Ramon Sanders held on 12/14/2009 Evidentiary Hearing/Sentencing set for 1/20/2010 01:30 PM in Courtroom 8, 19th Floor, San Francisco before Hon. Charles R. Breyer. (Court Reporter Joan Columbini.) (be, COURT STAFF) (Filed on 12/14/2009) (Entered: 12/15/2009) |
| 12/14/2009 | 41 | Sealed Document as to Jason Ramon Sanders (rhw, COURT STAFF) (Filed on 12/14/2009) (Entered: 12/15/2009) |
| 01/19/2010 | 42 | Declaration of Randall Knox in Support of 38 Sentencing Memorandum, 28 Sentencing Memorandum by Jason Ramon Sanders as to Jason Ramon Sanders (Attachments: # 1 Exhibit A and B)(Knox, Randall) (Filed on 1/19/2010) (Entered: 01/19/2010) |
| 01/20/2010 | 43 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Evidentiary Hearing as to Jason Ramon Sanders held on 1/20/2010 Sentencing set for 2/24/2010 02:15 PM in Courtroom 8, 19th Floor, San Francisco before Hon. Charles R. Breyer. (Court Reporter Kelly Bryce.) (be, COURT STAFF) (Filed on 1/20/2010) (Entered: 01/25/2010) |
| 01/20/2010 | | Exhibit Location : 1 envelope (Government's). Shelf: 47 (rhw, COURT STAFF) (Filed on 1/20/2010) (Entered: 02/17/2010) |

Exhibit 102
- 767 -

Ramon Sanders held on 2/24/2010, Defendant's motion to bail pending appeal - denied; Judgment and Sentencing held on 2/24/2010 for Jason Ramon Sanders (1), Count 1, Defendant is sentenced to a term of 24 months in custody, 3 years supervised release; Assessment fee $100.00; Fine: waived; Restitution in the amount of $132,600.00. (Court Reporter James Yeomans) (sv, COURT STAFF) (Filed on 2/24/2010) (Entered: 02/26/2010)

| 02/25/2010 | 44 | JUDGMENT in a Criminal Case as to Jason Ramon Sanders. Signed by Judge Hon. Charles R. Breyer on 2/25/2010. (be, COURT STAFF) (Filed on 2/25/2010) (Entered: 02/25/2010) |
|---|---|---|
| 02/25/2010 | 45 | Sealing Order - General Order 54 as to Jason Ramon Sanders.. Signed by Judge Hon. Charles R. Breyer on 2/25/2010. (be, COURT STAFF) (Filed on 2/25/2010) (Entered: 02/25/2010) |
| 03/01/2010 | 47 | PAYMENT RECORD CARD : payment of Special Assessment in the amount of $100.00 paid on 2/26/10 on behalf of Jason Ramon Sanders (sv, COURT STAFF) (Filed on 3/1/2010) (Entered: 03/01/2010) |
| 03/05/2010 | 48 | MOTION Bail Pending Appeal by Jason Ramon Sanders. Motion Hearing set for 3/24/2010 02:15 PM in Courtroom 8, 19th Floor, San Francisco. (Knox, Randall) (Filed on 3/5/2010) (Entered: 03/05/2010) |
| 03/08/2010 | 49 | NOTICE OF APPEAL by Jason Ramon Sanders re 44 Judgment in a Criminal Case and request for appointment of counsel. Filing fee $ 455 not paid. Appeal Record due by 4/7/2010. (rhw, COURT STAFF) (Filed on 3/8/2010) (Entered: 03/10/2010) |
| 03/17/2010 | 50 | RESPONSE to Motion by USA as to Jason Ramon Sanders UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL (Senese, Acadia) (Filed on 3/17/2010) (Entered: 03/17/2010) |
| 03/18/2010 | 51 | USCA Memorandum as to Jason Ramon Sanders re 49 Notice of Appeal - Final Judgment (rhw, COURT STAFF) (Filed on 3/18/2010) (Entered: 03/18/2010) |
| 03/24/2010 | 52 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Motion Hearing as to Jason Ramon Sanders held on 3/24/2010 re 48 MOTION Bail Pending Appeal filed by Jason Ramon Sanders (Court Reporter Catherine Edwards.) (be, COURT STAFF) (Filed on 3/24/2010) (Entered: 03/25/2010) |
| 05/03/2010 | 53 | Transcript of Proceedings as to Jason Ramon Sanders held on March 24, 2010, before Judge Charles R. Breyer. Court Reporter/Transcriber Catherine Edwards, Telephone number (510) 886-2427. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 8/2/2010.(djc, COURT STAFF) (Filed on 5/3/2010) (Entered: 05/03/2010) |
| 05/04/2010 | 54 | Proposed Order by USA as to Jason Ramon Sanders MOTION TO UNSEAL and (PROPOSED) UNSEALING ORDER (Frick, Erika) (Filed on 5/4/2010) (Entered: 05/04/2010) |
| 05/05/2010 | 55 | Transcript of Proceedings as to Jason Ramon Sanders held on March 25, 2009, before Judge Charles R. Breyer. Court Reporter/Transcriber Katherine Powell Sullivan, RPR, CRR, CSR, Telephone number 415-794-6659/Katherine_Sullivan@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 8/3/2010.(Sullivan, Katherine) (Filed on 5/5/2010) (Entered: 05/05/2010) |
| 05/05/2010 | 56 | ORDER to Unseal as to Jason Ramon Sanders. Signed by Judge Hon. Charles R. Breyer on 5/5/2010. (be, COURT STAFF) (Filed on 5/5/2010) (Entered: 05/05/2010) |
| 05/05/2010 | 57 | Transcript of Proceedings as to Jason Ramon Sanders held on 02/24/10, before Judge Charles R. Breyer. Court Reporter/Transcriber James Yeomans, Telephone number (415) 863-5179. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 8/3/2010.(jjy, COURT STAFF) (Filed on 5/5/2010) (Entered: 05/05/2010) |
| 05/09/2010 | 58 | Transcript of Proceedings as to Jason Ramon Sanders held on 1/20/10, before Judge Charles R. Breyer. Court Reporter/Transcriber Kelly Bryce Shainline, E-mail courtreporter232@aol.com Telephone number (510)828-9404. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 8/9/2010.(Bryce, Kelly) (Filed on 5/9/2010) (Entered: 05/09/2010) |
| 05/25/2010 | 59 | Transcript of Proceedings as to Jason Ramon Sanders held on November 30, 2009, before Judge Charles R. Breyer. Court Reporter/Transcriber Katherine Powell Sullivan, RPR, CRR, CSR, Telephone number 415-794-6659/Katherine_Sullivan@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 8/23/2010.(Sullivan, Katherine) (Filed on 5/25/2010) (Entered: 05/25/2010) |
| 06/01/2010 | 60 | Transcript of Proceedings as to Jason Ramon Sanders held on November 18, 2009, before Judge Charles R. Breyer. Court Reporter/Transcriber Joan Marie Columbini, Telephone number 415-255-6842, Joan_Columbini@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court |

Exhibit 102
- 768 -

obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 8/30/2010.(Columbini, Joan) (Filed on 6/1/2010) (Entered: 06/01/2010)

| Date | No. | Description |
|---|---|---|
| 06/01/2010 | 61 | Transcript of Proceedings as to Jason Ramon Sanders held on December 10, 2009, before Judge Charles R. Breyer. Court Reporter/Transcriber Joan Marie Columbini, Telephone number 415-255-6842, Joan_Columbini@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 8/30/2010.(Columbini, Joan) (Filed on 6/1/2010) (Entered: 06/01/2010) |
| 06/03/2010 | | USCA Appeal Fees received $ 455.00, receipt number 34611046541 as to Jason Ramon Sanders re 49 Notice of Appeal - Final Judgment : (sv, COURT STAFF) (Filed on 6/3/2010) (Entered: 07/26/2010) |
| 06/08/2010 | 62 | ORDER of USCA as to Jason Ramon Sanders re 49 Notice of Appeal - Final Judgment (rhw, COURT STAFF) (Filed on 6/8/2010) (Entered: 06/08/2010) |
| 07/26/2010 | 63 | ORDER of USCA as to Jason Ramon Sanders re 49 Notice of Appeal - Final Judgment (rhw, COURT STAFF) (Filed on 7/26/2010) (Entered: 07/26/2010) |
| 08/06/2010 | 64 | ORDER of USCA as to Jason Ramon Sanders re 49 Notice of Appeal - Final Judgment (rhw, COURT STAFF) (Filed on 8/6/2010) (Entered: 08/06/2010) |
| 10/13/2010 | 65 | Judgment Returned Executed as to Jason Ramon Sanders on 9/28/10. (lsk, COURT STAFF) (Filed on 10/13/2010) (Entered: 10/13/2010) |
| 12/01/2010 | 66 | MOTION Remove or Reduce Lien by Jason Ramon Sanders. Motion Hearing set for 12/8/2010 02:15 PM in Courtroom 8, 4th Floor, San Jose. (Attachments: # 1 Exhibit Exhibits A-C)(Knox, Randall) (Filed on 12/1/2010) (Entered: 12/01/2010) |
| 12/08/2010 | 67 | Minute Entry for proceedings held before Judge Hon. Charles R. Breyer:Motion Hearing as to Jason Ramon Sanders held on 12/8/2010 re 66 MOTION Remove or Reduce Lien filed by Jason Ramon Sanders (Court Reporter Katherine Sullivan.) (be, COURT STAFF) (Filed on 12/8/2010) (Entered: 12/10/2010) |
| 03/21/2011 | | Certified and Transmitted Record on Appeal as to Jason Ramon Sanders to US Court of Appeals re 49 Notice of Appeal - Final Judgment (rhw, COURT STAFF) (Filed on 3/21/2011) (Entered: 03/22/2011) |
| 04/06/2011 | 68 | ORDER of USCA as to Jason Ramon Sanders (svS, COURT STAFF) (Filed on 4/6/2011) (Entered: 04/08/2011) |
| 05/19/2011 | 69 | USCA Memorandum as to Jason Ramon Sanders re 49 Notice of Appeal - Final Judgment (rhw, COURT STAFF) (Filed on 5/19/2011) (Entered: 05/19/2011) |
| 06/21/2011 | 70 | MANDATE of USCA (certified copy) as to Jason Ramon Sanders (rhw, COURT STAFF) (Filed on 6/21/2011) (Entered: 06/21/2011) |
| 06/21/2011 | 71 | CLERKS Letter Spreading Mandate to Counsel (rhw, COURT STAFF) (Filed on 6/21/2011) (Entered: 06/21/2011) |

Copyright © 2013 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

Exhibit 102
- 769 -

# EXHIBIT 104

Exhibit 104
- 774 -

1   ROBERT W. FISCHER, JR. (CA Bar No. 57001)
    PETER H, MASON (CA Bar No. 71839)
2   SPENCER PERSSON (CA Bar No. 235054)
    **FULBRIGHT & JAWORSKI L.L.P.**
3   555 South Flower Street, Forty-First Floor
    Los Angeles, California 90071
4   Telephone: (213) 892-9200
    Facsimile: (213) 892-9494
5   Email: rfischer@fulbright.com
            pmason@fulbright.com
6
    Lead Counsel for Defendant
7   National Western Life Insurance Company

8   KENT R. KELLER (CA Bar No. 43463)
    LARRY M. GOLUB (CA Bar No. 110545)
9   **BARGER & WOLEN LLP**
    633 West Fifth Street, 4th Floor
10  Los Angeles, California 90071
    Telephone: (213) 680-2800
11  Facsimile: (213) 614-7399
    Email: kkeller@barwol.com
12          lgolub@barwol.com

13  Co-Counsel for Defendant
    National Western Life Insurance Company
14
                    UNITED STATES DISTRICT COURT
15
                  SOUTHERN DISTRICT OF CALIFORNIA
16

17
    In re NATIONAL WESTERN LIFE          )  Case No.: 05CV1018 JM (LSP)
18  INSURANCE DEFERRED ANNUITIES         )
    LITIGATION,                          )  CLASS ACTION
19                                       )
                                         )
20  _____ )
                                         )  **DECLARATION OF**
21  This Document Relates To:            )
                                         )  **QUENTIN CORRELL**
22      ALL ACTIONS.                     )
                                         )
23                                       )
                                         )
24                                       )

25

26

27

28

DOCUMENT PREPARED      65163866.1                                    05CV1018 JM (LSP)
ON RECYCLED PAPER

1

2    1.    My name is Quentin Correll.  I am 73 years old, a citizen of the United States and a

3          resident of California.  The matters stated below are based on my personal knowledge

4          and, if called to testify thereto, I could and would do so competently.

5    2.    I am a semi-retired software consultant living in Northern California.  I have worked in

6          the computer industry since 1955 and have held jobs ranging from customer engineer to

7          CEO.  My wife still works but will retire soon.  We live together in an apartment in

8          Sunnyvale.  Our retirement is funded by income from a number of sources including my

9          wife's job, my consulting work, social security, my National Western annuities and my

10         poker winnings. As a hobby and source of additional income, I play in poker tournaments,

11         including the World Series of Poker.  Because of a negative experience with stocks, we

12         are not as comfortable in retirement as we had once hoped.

13   3.    I received and reviewed the notice of class certification in the Clark v. National Western

14         Life Insurance case.  I decided not to participate in that lawsuit because my annuities were

15         satisfactory to me.  I have no complaints with the company.  Only after I excluded myself

16         from the Clark class was I contacted by a representative of National Western.

17   4.    I went to work for Applied Materials in the mid 1990's as a software engineer.  I took the

18         job specifically to build up my retirement funds.  This plan worked very well as my 401k

19         and my options soon represented well over $1 million in retirement assets.  The 2002

20         technology market crash was devastating to my retirement account and I lost 88% of the

21         money I saved.  My wife and I were forced to move into a one-bedroom apartment.

22   5.    I was 66 years old and left with approximately $300,000 to fund my retirement.  I could

23         afford to lose no more of my principal and decided to devise a plan that would make my

24         money last.  I independently consulted actuarial tables to determine my life expectancy

25         and added five years as a cushion.  I calculated all of my expenses and knew that I needed

26         a plan that would allow me to cover all of them to age 90.  I independently investigated

27         my investment options and decided to split my money between CD's and annuities.  I

28         invested $100,000 in CD's and bought two $100,000 annuities from National Western.  I

DOCUMENT PREPARED
ON RECYCLED PAPER

65163866.1                              1                         05CV1018 JM (LSP)

EXHIBIT A

6

Exhibit 104
- 776 -

1    sought out these annuities specifically because of the 8% bonus. Because of the reduction

2    in principal I suffered, this bonus was very important to my personal plan.

3  6.    I now receive monthly distributions from my National Western annuities. Along with

4    Social Security, I am able to pay for all the expenses of my life. Without the distributions

5    from my National Western annuities, I would not be able to afford basic necessities. The

6    protection of my principal, safety and security provided by my annuities is vitally

7    important to me. I have been able to relax now that I have purchased my National

8    Western annuities as they are stable investments with no chance of a reduction in

9    principal.

10  7.    At the initial sale, my agent was very professional and provided a full explanation of the

11    terms of the annuities prior to my purchase. My agent and I reviewed the disclosure

12    statement in great detail and on receipt of the policy, we reviewed the entire contract line

13    by line. I felt the contract was consistent with my understanding of the terms the agent

14    and the disclosure statement provided.

15  8.    I understood at the time I received my annuities that I had thirty days to return them if I

16    was dissatisfied for any reason. I decided to keep the annuities and to this day, still have

17    no complaints with the annuities or with National Western.

18  9.    I understand that the monies in the annuities are subject to a 25% surrender charge but

19    may be distributed to me without these charges by annuitizing the full account balance

20    after five years over a period of at least five additional years. These points were clearly

21    stated in the policy and disclosure brochure and were elements discussed with my agent at

22    the time of sale. These items did not concern me as I will not surrender the annuities since

23    I need the money to last for the next 16 years. I read the policy and decided to change my

24    annuity date to the end of the 5th policy year. At that time I will annuitize and choose

25    between a 16-year fixed payout and a lifetime payout based on which option provides a

26    more beneficial amount of money.

27  10.   I feel that my annuities are precisely the correct investments for me. I resent the

28    implication that I cannot choose the proper investments for myself. I have played poker

EXHIBIT A

1   and invested my life savings in stocks.  My experience has proven that stock investments

2   are the real gamble.

3

4   I declare under penalty of perjury under the laws of the State of California and the laws of the

5   United States that the foregoing is true and correct.

6

7

8   *Quentin E. Correll*

9   Quentin Correll

10

11  Executed on June 11, 2008, at Sunnyvale, California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

65163866.1                                    3                         05CV1018 JM (LSP)

8

EXHIBIT A

8

Exhibit 104
- 778 -

1   ROBERT W. FISCHER, JR. (CA Bar No. 57001)
    PETER H. MASON (CA Bar No. 71839)
2   SPENCER PERSSON (CA Bar No. 235054)
    **FULBRIGHT & JAWORSKI L.L.P.**
3   555 South Flower Street, Forty-First Floor
    Los Angeles, California 90071
4   Telephone: (213) 892-9200
    Facsimile: (213) 892-9494
5   Email: rfischer@fulbright.com
           pmason@fulbright.com
6
    Lead Counsel for Defendant
7   National Western Life Insurance Company

8   KENT R. KELLER (CA Bar No. 43463)
    LARRY M. GOLUB (CA Bar No. 110545)
9   **BARGER & WOLEN LLP**
    633 West Fifth Street, 4th Floor
10  Los Angeles, California 90071
    Telephone: (213) 680-2800
11  Facsimile: (213) 614-7399
    Email: kkeller@barwol.com
12         lgolub@barwol.com

13  Co-Counsel for Defendant
    National Western Life Insurance Company
14
15              UNITED STATES DISTRICT COURT
16            SOUTHERN DISTRICT OF CALIFORNIA
17

| 18 | In re NATIONAL WESTERN LIFE INSURANCE DEFERRED ANNUITIES LITIGATION, | ) ) ) | Case No.: 05CV1018 JM (LSP) |
|---|---|---|---|
| 19 | | ) | CLASS ACTION |
| 20 | ─────────────────────── | ) ) | DECLARATION OF ROWENA LANTZ |
| 21 | This Document Relates To: | ) ) | |
| 22 | ALL ACTIONS. | ) ) | |
| 23 | | ) ) | |
| 24 | | ) ) | |

25
26
27
28

DOCUMENT PREPARED
ON RECYCLED PAPER       65163866.1                                05CV1018 JM (LSP)

1.   My name is Rowena Lantz.  I am 74 years old, a citizen of the United States and a resident of California.  The matters stated below are based on my personal knowledge and, if called to testify thereto, I could and would do so competently.

2.   I am a retired draftsman who worked for 31 years at United Iron Works/United Centrifugal Pump.  I am now a community volunteer providing general aid to people in need.  Throughout my life I have enjoyed many different hobbies and interests, including book collecting, golf and Porsche car racing.  I helped raise five children during my life who now live independently.  My retirement is funded mainly by social security although I have a few investments including my National Western Life Insurance Company ("National Western") annuity.

3.   My National Western annuity represents my savings from a lifetime of work.  My employer, United Iron Works, set up a retirement program during my working years and I contributed $30 a month which was matched by the company.  The monies were invested in a diversified portfolio by the company and grew to over $216,000.  Seeking a safe place for my nest egg, I deposited my $216,000 with National Western in early 2003.  I was given a 4% bonus on my investment.  I also have a smaller National Western annuity containing approximately $9000.

4.   I am very happy to have chosen an annuity instead of any other type of investment because of the certainty of the return.   There is no risk, my money grows steadily and I am able to leave it in a safe place in case of an emergency.  The annuity also serves as a source for liquidity.  I originally deposited $216,000 and have withdrawn over $42,000 from my annuity.  Despite this, my annuity is still worth over $216,000.  I think this is great.  The annuity gives me the feeling of solidity and peace of mind as I know my money is safe.   As a child of the Depression, I am not interested in any investment that contains an element of risk.

5.   I received and reviewed the notice of class certification in the Clark v. National Western Life Insurance case.  After considering it, I decided not to participate in that lawsuit

DOCUMENT PREPARED
ON RECYCLED PAPER

65163866.1

1

05CV1018 JM (LSP)

EXHIBIT D

54

Exhibit 104
- 780 -

1    because I have no complaint with my policy or the company.  Only after I excluded

2    myself from the Clark class was I contacted by a representative of National Western.

3  6.    At the original sale, my agent provided great service and support for me.  He carefully

4    explained the terms of the annuity prior to my purchase.  On receipt of the policy, I

5    reviewed the terms and they were consistent with the representations of my agent.

6  7.    I understood that at the time of purchase I had thirty days to return the annuity if I was

7    dissatisfied for any reason.  I decided to keep the annuity and to this day, still have no

8    complaints with the annuity or with National Western.  In fact, I think that my choice of

9    an annuity has contributed to my happiness.

10  8.    I understand that the monies in the annuity may be distributed to me or to my beneficiary

11    by annuitizing the full account balance over a period of five years.  I think the five year

12    payout is a beneficial method of distributing money to my heirs.  At the time of purchase,

13    I was aware of the 15-year withdrawal charge period which started at 25%.  These points

14    were clearly stated in the policy and disclosure brochure and were elements discussed

15    with the agent at the time of sale.  These items did not concern me as this is a long term

16    investment.

17

18    I declare under penalty of perjury under the laws of the State of California and the laws of the

19    United States that the foregoing is true and correct.

20

21

22    _Rowena Lantz_

23    Rowena Lantz

24

25    Executed on May 22, 2008, at Cupertino, California

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

65163866.1

2

05CV1018 JM (LSP)

EXHIBIT D

55

Exhibit 104
- 781 -



1    ROBERT W. FISCHER, JR. (CA Bar No. 57001)
     PETER H, MASON (CA Bar No. 71839)
2    SPENCER PERSSON (CA Bar No. 235054)
     **FULBRIGHT & JAWORSKI L.L.P.**
3    555 South Flower Street, Forty-First Floor
     Los Angeles, California 90071
4    Telephone: (213) 892-9200
     Facsimile: (213) 892-9494
5    Email: rfischer@fulbright.com
           pmason@fulbright.com
6

7    Lead Counsel for Defendant
     National Western Life Insurance Company

8    KENT R. KELLER (CA Bar No. 43463)
     LARRY M. GOLUB (CA Bar No. 110545)
9    **BARGER & WOLEN LLP**
     633 West Fifth Street, 4th Floor
10   Los Angeles, California 90071
     Telephone: (213) 680-2800
11   Facsimile: (213) 614-7399
     Email: kkeller@barwol.com
12              lgolub@barwol.com

13   Co-Counsel for Defendant
     National Western Life Insurance Company

14

15                 UNITED STATES DISTRICT COURT

16             SOUTHERN DISTRICT OF CALIFORNIA

17

18   In re NATIONAL WESTERN LIFE      )   Case No.: 05CV1018 JM (LSP)
     INSURANCE DEFERRED ANNUITIES   )
19   LITIGATION,                    )   <u>CLASS ACTION</u>
                                  )
20                             )   **DECLARATION OF CHRISTINE**
     This Document Relates To:        )   **WRIGHT**
21                             )
         ALL ACTIONS.            )
22                             )
                            )
23                             )
                            )
24                             )

25

26

27

28

1

2   1.   My name is Christine Wright.  I am 76 years old, a citizen of the United States and a

3        resident of California.  The matters stated below are based on my personal knowledge

4        and, if called to testify thereto, I could and would do so competently.

5   2.   I received and reviewed the notice of class certification in the Clark v. National Western

6        Life Insurance case.  I independently decided not to participate in that lawsuit because I

7        had no complaints with the company.  Only after I excluded myself was I contacted by a

8        representative of National Western.

9   3.   I bought my National Western annuity in 2003 because I was searching for a safe

10       investment with good interest.  National Western immediately credited my account with a

11       4% bonus and has always paid at or above the minimum guaranteed interest rate.  This

12       rate of return has been satisfying to me, especially in light of the volatility in the stock

13       markets during the time I have owned my annuity. My annuity represents qualified funds

14       and is structured as a stretch IRA.  This reduces the amount of my required distributions

15       and saves additional funds for my retirement.

16  4.   My understanding of the deal I have made with National Western is that they will pay me

17       the bonus and at least the minimum interest rate in the contract.  I expect that National

18       Western has made profits on the money I have deposited in addition to covering the costs

19       of my annuity.  I further understand that my interest crediting is influenced by the initial

20       commission and the bonus on the contract.  Any reductions in interest crediting are subject

21       to the minimum interest rate promised by the company.

22  5.   I am not interested in stock investments.  I do not have the time left in my life to make up

23       losses that may occur.  Whether or not stocks are a better alternative in the long term does

24       not matter to me as I do not have time to recover from any downturns.  Annuities are the

25       most appropriate investment for me.  I am happy to forego the chance for a higher return

26       related to stocks for the certainty of a fixed and constant return on my annuity.

27  6.   My agent provided a full explanation of the terms of my annuity prior to my purchase.  On

28       receipt of the policy, I reviewed the terms and they were consistent with the

1    representations of my agent.  My agent, the National Western disclosure form and the

2    National Western contract all provided adequate notice of the surrender charges that

3    would apply on the annuity.

4  7.    I understood at the time that I received the annuity that I had thirty days to return the

5    annuity if I was dissatisfied for any reason.  I made the conscious decision, after reviewing

6    the terms, not to return my annuity.   To this day, I still have no complaints with my

7    annuity or with National Western.

8  8.    I understand that my annuity lets me, or my beneficiary, annuitize the full account balance

9    after five years for a period of five years.  At the time of purchase, I was aware of the fact

10    that there was a 15-year withdrawal charge period that applied to my National Western

11    annuity which started at 25%.  These points were clearly stated in the policy and

12    disclosure brochure and were elements discussed with my agent at the time of sale.  These

13    items did not concern me as I intend to keep the money on deposit and not surrender the

14    policy.

15  9.    I have exercised the right to penalty free distributions to access my money.  Based on my

16    particular financial circumstances, this beneficial liquidity feature is sufficient as

17    supplemental income.   I originally deposited $100,000, have taken out over $10,500 and

18    still have more than $103,000 in my National Western account.  I believe that this is an

19    adequate return.

21

22    I declare under penalty of perjury under the laws of the State of California and the laws of the

23    United States that the foregoing is true and correct.

24    _Christine Wright_ (signature)

25

26    Christine Wright

27

28    Executed on May 20, 2008, at Petaluma, California.

EXHIBIT 105

Exhibit 105
- 785 -

1   David K. Schneider (CSB 139288)
    YUNKER & SCHNEIDER
2   655 West Broadway, Suite 1400
    San Diego, California 92101
3   Telephone:  (619) 233-5500
    Facsimile:  (619) 233-5535
4   Email:  dks@yslaw.com

5   Attorneys for Defendants TRUMP UNIVERSITY, LLC and
    DONALD J. TRUMP

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 10 | TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and | )   Case No. 10 CV 0940 IEG (WVG) |
| 11 | PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly | ) |
| 12 | Situated, | )   RESPONSE OF DONALD J. TRUMP )   TO SECOND SET OF |
| 13 | Plaintiffs, | )   INTERROGATORIES BY PLAINTIFFS ) |
| 14 | v. | ) ) |
| 15 | TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New | ) |
| 16 | York Limited Liability Company, DONALD J. TRUMP, and DOES 1 | ) |
| 17 | through 50, inclusive, | ) |
| 18 | Defendants. | ) |

19

20   PROPOUNDING PARTY:   Plaintiffs TARLA MAKAEFF, BRANDON KELLER, and ED
                             OBERKROM
21

22   RESPONDING PARTIES:   Defendants DONALD J. TRUMP

23   SET NUMBER:               Two

24        The following are Donald J. Trump's Responses to Plaintiffs' Interrogatories (Set Two).

25        PLEASE TAKE NOTICE that the following Responses are made subject to the fact that

26   investigation and discovery are ongoing, and consequently the parties may learn additional facts

27   presently unknown, or may locate additional facts presently unknown, or may locate additional

28   documents presently not identified, which may alter or invalidate this Response.  Consequently,

                                          1                Case No. 10 CV 0940 IEG (WVG)
         RESPONSE OF DONALD J. TRUMP TO SECOND SET OF INTERROGATORIES BY PLAINTIFFS

Exhibit 105
    -  786  -

1    these Responses are made without prejudice to the right to produce at any future time, including the

2    time of trial, subsequently discovered material facts and documents.

3         PLEASE NOTE FURTHER that these Responses are made solely for the purpose of, and in

4    relation to, the above-entitled action.  Except for admissions explicitly made herein, no admission of

5    any nature whatsoever is to be implied or inferred.  The fact that these Responses may contain

6    answers or admissions to certain requests or questions should not be taken as an admission or

7    concession of the existence of any facts set forth or assumed by such requests or questions, or that

8    such Responses constitute evidence of any such fact set forth or assumed.

9         PLEASE NOTE FURTHER that any request or question that was propounded to be

10   continuing is objected to as oppressive, burdensome, and not in proper compliance with Federal

11   Rules of Civil Procedure, and will not be regarded as continuing in nature.  The fact that such

12   purportedly continuing request or question is responded to herein is not a waiver of such objection.

13        PLEASE NOTE FURTHER that these Responses must be construed as given on the basis of

14   present recollection.  The Responses are made subject to all appropriate objections, including but not

15   limited to objections concerning competency, relevancy, materiality, propriety, and admissibility,

16   which objections may require the exclusion of any fact contained herein if the same response were

17   sought from a witness present and testifying at time of trial.  All such objections and grounds

18   therefor are reserved and may be interposed at time of trial.

19                    **RESPONSES TO INTERROGATORIES**

20   INTERROGATORY NO. 10:

21        Describe in detail your involvement with Trump University, including, without limitation,

22   identifying any and all meetings you attended and all documents relating to Trump University that

23   you reviewed or prepared or both.

24   **RESPONSE TO INTERROGATORY NO. 10:**

25        From 2006 to the present, Mr. Trump has had significant involvement with both the

26   operation and overall business strategy of Trump University.  Mr. Trump's involvement has

27   included, but not been limited to, the following: attending frequent meetings over the years with

28   Trump University's (former) President, Michael Sexton, to discuss Trump University's operations,

1  the company's philosophy, the development of Trump University's curriculum as well as the

2  company's overall business strategy; attending periodic meetings with various experts responsible

3  for drafting and developing Trump University course materials, including, Columbia University

4  Business School professor, Don Sexton, former Stanford University, University of Virginia and

5  University of Illinois business professor, Gary W. Eldred, PhD, Babson Professor Michael Gordon,

6  Columbia Business School Adjunct Profession Jack Kaplan, and recognized wealth preservation

7  author, speaker and mentor, J.J. Childers, all for the purpose of communicating and integrating

8  Mr. Trump's ideas, strategies and overall business philosophy; reviewing and approving various

9  Trump University newsletters, blog entries and essays featured on Trump University's website,

10  including, without limitation, "Inside Trump Tower", "Ask Mr. Trump", "Trump University

11  Magazine" and "Trump University Online"; reviewing and approving Trump University

12  publications, including, without limitation, "Never Give Up" and "Trump 101"; providing Trump

13  University management with actual real estate case studies for integration in Trump University

14  course materials, seminars and presentations including, without limitation, the acquisitions of 40

15  Wall Street, Trump Tower (New York), Mar-A-Lago and the Palm Beach, Florida home.

16  INTERROGATORY NO. 11:

17      Identify all Trump University speakers, instructors and mentors that you contend were

18  experts in real estate.

19  **RESPONSE TO INTERROGATORY NO. 11:**

20      Trump University objects to this request as overbroad, vague and ambiguous.

21  Notwithstanding the foregoing objections, Trump University states that numerous individuals

22  associated with and/or who provided services to Trump University could reasonably be considered

23  to possess expertise in various aspects of business, real estate, teaching and/or mentoring.  These

24  individuals include, without limitation, the following:

25  Don Sexton

26  Gary Eldred

27  JJ Childers

28  Michael Gordon

1    Jack Kaplan

2    Michael Potter

3    Roger Schank

4    Howard E. Haller

5    Steve Miller

6    Alex Grist

7    Stephen Gilpin

8    Bob Steenson

9    Troy Peterson

10   Roger Lafleur

11   Tad Lignell

12   Kevin Derrick

13   Johnny Horton

14   Gene Guarino

15   Kerry Lucas

16   Mike Kasper

17   Medith Webb

18   Chris Lombardo

19   Keith Sperry

20   John Jamieson

21   Mike Biglane

22   Scott Leitzell

23   Tim Gorsline

24   James Harris

25   Geoff Nowlin

26   Chris Goff

27   Mike Dubin

28   Rick McNally

4

Case No. 10 CV 0940 IEG (WVG)

RESPONSE OF DONALD J. TRUMP TO SECOND SET OF INTERROGATORIES BY PLAINTIFFS

Exhibit 105
- 789 -

1   Joe Lahore

2   Stephen Libman

3   Gary Sturgeon

4   Koz Khosravani

5   Billy Cannon

6   Omar Periu

7   Keith Sperry

8   <u>INTERROGATORY NO. 12:</u>

9        For all of the Trump University speakers, instructors and mentors that you contend were

10  experts in real estate (as identified in Interrogatory No. 11), describe in detail why such speakers,

11  instructors and mentors are considered by you as experts in real estate.

12  **RESPONSE TO INTERROGATORY NO. 12:**

13        Trump University objects to this request as overbroad, vague and ambiguous.

14  Notwithstanding the foregoing objections, Trump University states that the individuals identified in

15  response to Interrogatory No. 11 could reasonably be considered to possess expertise in various

16  aspects of business, real estate, teaching and/or mentoring because they either had proven

17  experience, possessed sufficient academic credentials or underwent in-depth training in such areas.

18  <u>INTERROGATORY NO. 13:</u>

19        Identify all Trump University speakers, instructors and mentors that were hand-picked by

20  you.

21  **RESPONSE TO INTERROGATORY NO. 13:**

22        Trump University objects to this request as vague and ambiguous and susceptible to different

23  interpretations.  Notwithstanding the foregoing, Mr. Trump personally was involved in the selection

24  of Don Sexton, Gary Eldred, Michael Gordon and Jack Kaplan.  Additionally, most if not all

25  speakers, instructors and mentors were selected by Trump University representatives because they

26  possessed certain attributes and/or fulfilled certain qualifications identified by Mr. Trump, had prior

27  relevant industry experienced and/or were interviewed, vetted, referred and were certified by

28  individuals considered to be leaders in their respective fields.

RESPONSE OF DONALD J. TRUMP TO SECOND SET OF INTERROGATORIES BY PLAINTIFFS

Exhibit 105
- 790 -

1   INTERROGATORY NO. 14:

2       For all of the Trump University speakers, instructors and mentors that were hand-picked by

3   you (as identified in Interrogatory No. 13), describe in detail the process by which you hand-picked

4   such speakers, instructors and mentors, including how these speakers were located, and which, if

5   any, agencies or other entities were involved.

6   **RESPONSE TO INTERROGATORY NO. 14:**

7       See response to Interrogatory No. 13.

8   INTERROGATORY NO. 15:

9       Identify all of the Trump University speakers, instructors and mentors that you contend are

10  "proven winners" and describe in detail how or why they are "proven winners."

11  **RESPONSE TO INTERROGATORY NO. 15:**

12      See response to Interrogatory No. 12.

13  INTERROGATORY NO. 16:

14      To the extent that any of your responses to any of Plaintiffs' requests for admissions is other

15  than an unqualified admission, list all facts on which you based any part of your response that is not

16  an unqualified admission, identify all documents memorializing each such fact, and identify all

17  persons with knowledge of each such fact.

18  **RESPONSE TO INTERROGATORY NO. 16:**

19      **Request for Admission No. 1**

20      Responding Party objects to the request on the grounds that "hand pick" is susceptible to

21  various interpretations.  Subject to and without waiving said objection, Responding Party may not

22  have vetted every mentor, instructor and speaker, but he did convey his thoughts and insight into the

23  types of people he wanted teaching the course and those insights and ideas were followed by other

24  individuals responsible for selecting the teachers.

25      **Request for Admission No. 2**

26      Responding Party objects to the request on the grounds that "hand pick" is susceptible to

27  various interpretations.  Subject to and without waiving said objection, Responding Party may not

28  have vetted every mentor, instructor and speaker, but he did convey his thoughts and insight into the

Exhibit 105
- 791 -

1 | types of people he wanted teaching the course and those insights and ideas were followed by other

2 | individuals responsible for selecting the teachers.

3 | **Request for Admission No. 3**

4 | Defendant objects to this request as phrased.  Subject to and without waiving said objection,

5 | Responding Party admits that Trump University sold goods and services, in part, utilizing the name,

6 | reputation and involvement of Donald Trump.  Trump University also marketed and sold Trump

7 | University goods and services based on the quality of its instructors and mentors, the quality of its

8 | goods and services, referrals, evaluation, recommendations of attendees, and other reasons.

9 | **Request for Admission No. 5**

10 | "Secrets" included but were not limited to course materials attendees were given access to

11 | after purchase, the members only website, the webinars, the wealth builder's blueprint, lessons

12 | taught at the three-day retreats, lessons taught via phone, coaching and lessons taught in the three-

13 | day in-field mentorships.  Defendants have previously produced documents supporting this response.

14 | Witnesses include Donald J. Trump, Michael Sexton, Don Sexton, Gary Eldred, Mark Covais,

15 | Meredith McIver, Roger Schank, April Neumann, Brad Schneider, Joseph Katz and Michael Bloom.

16 |

17 | Dated:     May 29, 2012               YUNKER & SCHNEIDER

18 |                                      By:

19 |                                      Attorneys for Defendants and Counterclaimant
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP
E-mail: dks@yslaw.com

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

RESPONSE OF DONALD J. TRUMP TO SECOND SET OF INTERROGATORIES BY PLAINTIFFS

Exhibit 105
- 792 -

# EXHIBIT 107

Exhibit 107
- 796 -



# TRUMP

## Goal Setting Sheet

### 1. Student Information

Student
Name   JOHN BROWN

Phone   **Redacted**

Age: ☐ 18- 24  ☐ 25-34  ☐ 35-44  ☐ 45-54  ☒ 55-64  ☐ 65+

Student's Partner
Name

Phone

Age: ☐ 18- 24  ☐ 25-34  ☐ 35-44  ☐ 45-54  ☐ 55-64  ☐ 65+

### 2. Financial Goals

Short-Term (less than 3 months)  Pay off BofA credit card. ($20,000)

Intermediate (3-6 months)  Pay off 2 other credit cards and increase savings balance by $5,000

Long-Term (1 year or more)  Add $100,000 to income.

### 3. Personal or Investment Property Information

HELOC

$60,000

**A. Primary Residence** (Please Circle):

☒ Own/Rent/Lease
   Years you own/rent it:  9 YRS
   ☐ Heloc?: Amount:  Ø   Owe:
   Equity:  $60,000:

☒ Present Market Value  $300,000
☐ Amount of Mortgages & Liens  $240,000
☐ Mortgage Payments  $1250
☐ Interest Rate  5.0  %

**B. Investment Property (1):**  22 TAHOE, NEW HOPE, PA 18938
☐ Occupancy Status:  Rent/Lease/Vacant
☐ Years you have owned it:  0.5 YRS
☐ Heloc?: Amount:  Ø   Owe:
   Equity:  $100,000

☐ Present Market Value  $350,000
☐ Amount of Mortgages & Liens  $250,000
☐ Mortgage Payments  $1850
☐ Interest Rate  6.0  %  (7:1)

60K?!

**C. Investment Property (2)**
☐ Occupancy Status:  Rent/Lease/Vacant
☐ Years you have owned it:
☐ Heloc?: Amount:   Owe:
   Equity:

☐ Present Market Value
☐ Amount of Mortgages & Liens
☐ Mortgage Payments
☐ Interest Rate  %

heloc ?  60K

CONFIDENTIAL

TU-BROWN0000066

Exhibit 107
- 797 -

## 4. Asset Information (Do not write Account Numbers)

Checking Account       Amount: $ *3,000—*
Savings Account       Amount: $ *2,000—*
Money Market account       Amount: $ *0*
~~401K~~ 403B       Amount: $ ~~~~ *20,000'*
IRA — *Self-directed ROTH*       Amount: $ *60,000*
HELOC (Available)       Amount: $ *0*
Other: *IRA*       Amount: $ *10,000*

*75K   80,000   90K*

## 5. Leverage Ability (Do not write Account Numbers)

| Credit Card | Credit Limit | Owe | Available Credit |
|---|---|---|---|
| *B of A* | $ *29,000* | $ *21,000* | $ *8,000* |
| *B of Omaha* | $ *10,000* | $ *6,000* | $ *4,000* |
| *Citicards* | $ *20,000* | $ *11,000* | $ *9,000* |
| | $ | $ | $ |
| | $ | $ | $ |

Do you have a (please circle) (Home Depot) or Lowes credit card?

*21K*

## 6. Credit and Asset Information

1. Do you believe your credit is (please circle) (Excellent)   Average   Poor
2. Do you know your current credit score? ~~Yes~~ If yes, what is it? *(I'm told it's excellent.)*  *740-780?*
3. Have you had a bankruptcy in the last 3 years? *NO*
4. Have you been employed at the same job or line of work for the past 2 years? *YES*
5. What is your occupation? *HR DIRECTOR*
6. Are you self-employed and if so for how long? *NO*
7. Monthly Net Income $ ~~5250—~~  *5250—*  Annual Net Income $ ~~94,500~~ *68000*

*NEW YORK REAL ESTATE INSTITUTE (for Real Estate licensing).*  *owner seller financing*

*Lease option*
*Assignment of Contract*  *New Construction*
*Joint Venture*

V 70/09