ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
    – and –
ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>　　　　　　　　Defendants. | No. 3:10-cv-00940-GPC(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO PLAINTIFFS' PROPOSED TRIAL PLAN FOR TRIAL OF CLASS CLAIMS<br><br>JUDGE:　Hon. Gonzalo P. Curiel<br>DATE:　June 28, 2013<br>TIME:　1:30 p.m.<br>CTRM:　9 (Schwartz)<br><br>No Oral Argument Unless Requested by the Court |

**REDACTED VERSION**

810800_1

## I. INTRODUCTION

At the outset, Defendants' Objection to Plaintiffs' Proposed Trial Plan for Trial of Class Claims ("Objection") is remarkable for what it does not address. Defendants' Objection does not challenge Plaintiffs' detailed proposal for applying multiple state laws to Plaintiffs' claims. Specifically Defendants do not object to the subclassing regimes Plaintiffs propose for proving their unfair and deceptive trade practices, statutory elder abuse, unjust enrichment, fraud, or breach of the implied covenant of good faith and fair dealing claims. Dkt. No. 122-7 at 11-15 (Plaintiffs' Proposed Trial Plan for Trial of Class Claims ("Trial Plan")).

Instead, Defendants' Objection is nothing more than a regurgitation of its opposition to class certification. It assumes Defendants' theory of what Plaintiffs must show in order to effectively try their claims on a class wide basis, focusing on supposed differences among the class members in their background and experience, and differences in the Live Events and advertising. As explained more fully in Plaintiffs' Reply in Support of Class Certification, this tactic is merely a smoke-screen intended to obscure the uniform nature of Defendants' own conduct, centrally orchestrated from Defendants' New York offices and required to be followed by all Trump "University" employees.

This uniform course of conduct can be shown using common evidence consisting largely of Defendants' own internal documents and testimony: its marketing guidelines, Play Book, former employees' testimony, personnel contracts, written PowerPoint slide presentations with talking points, transcriptions of those presentations, and prior judicial admissions. In addition, correspondence with the BBB and government agencies further shows the objectively misleading nature of Trump University. This evidence will be the core of what Plaintiffs propose to introduce at trial to prove Defendants' liability. That was the purpose of the Trial Plan, and all that is necessary at this stage of the litigation. Therefore, Defendants Objection should be overruled.

## II. DISCUSSION

Though not required under Rule 23, Plaintiffs submitted their Trial Plan to demonstrate to the Court how a trial on Plaintiffs' claims could be managed as a class action. *See Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010) ("Nothing in Rule 23 requires Plaintiff to submit a formal trial plan along with her motion for class certification."). Plaintiffs intended to show "a

viable method for managing this case as a class action" demonstrating that "common proof can be used to determine Defendants' liability."[1] *Id.*

A significant portion of the Trial Plan focuses on how the claims could be managed on a multistate basis. *See* Dkt. No. 122-7 at 11-15 & Exs. A-C (55 pages of analysis on multistate law). Tellingly, Defendants' Objection does not challenge the manageability of trying Plaintiffs' claims on a multistate basis. The issue is not even addressed. This in itself supports Plaintiffs' position that the claims can be managed at trial.

Instead of dealing with the substance of Plaintiffs' Trial Plan, Defendants simply repeat the arguments they make in their opposition to Plaintiffs' class certification motion. Even then, Defendants only challenge Plaintiffs' ability to produce common evidence of certain of Defendants' misrepresentations and damages. For the reasons set forth below and in Plaintiffs' Reply Memorandum in Support of Motion for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel ("Reply"), filed concurrently herewith, none of these arguments is sufficient to deny class certification.

**A.    Individual Class Members' Subjective Opinions Are Irrelevant**

Defendants' focus on the varied backgrounds, expectations, and experiences of class members misses the point entirely. It is always the case that consumers will have different backgrounds and experiences. If that were the standard for assessing class certification, Rule 23 would be rendered a nullity in consumer cases. Instead, "'[t]he overarching scheme is the linchpin of plaintiffs' . . . complaint, regardless of the product purchased, the market involved or the price ultimately paid.'"[2] *In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827, 2011 WL 3268649, at *5 (N.D. Cal. July 28, 2011); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006) (where a "'centrally-orchestrated scheme to mislead'" is alleged, it is scheme and not

---

[1] Defendants' initial argument in opposition to the Trial Plan is nonsensical in this light. Defendants argue that the Trial Plan is objectionable because it assumes class certification. Dkt. No. 138-5 (Objection) at 1-2. This is precisely its purpose. The Trial Plan is designed to show how, if a class were certified, it could be effectively tried. It would obviously therefore assume a certified class.

[2] Unless otherwise noted, citations are omitted and emphasis is added, here and throughout.

1 details of individual's experience that forms nucleus of class claims).  Here, the "overarching" 2 scheme is the aggressive up-sell and common misrepresentations and omissions that permeate every 3 aspect of Trump University's operations.  This scheme was common to all Class Members and can 4 be proven with common evidence.  *See* Reply, §II.A.

5 The real issue here – and the focus of the Trial Plan – is on ***Defendants'*** conduct, which was 6 the same as to all class members.  The entirety of the Trump University scheme was focused on the 7 up-sell, pedaling Donald Trump's supposed "University" through which qualified consumers could 8 learn from Donald Trump's hand-picked experts his very own real estate secrets, developed over the 9 course of his career.  None of this was true as to any of the Class Members.  Their individual 10 subjective opinions as to the value of what they received instead is irrelevant.  *See, e.g.*, *Ries v.* 11 *Arizona Beverages USA, LLC*, No. 10-01139 RS, 2012 WL 5975247, at *14 (N.D. Cal. Nov. 27, 12 2012) (rejecting defendants' argument that individual issues predominate because of "variation 13 among class members in their motivation for purchasing the product, the factual circumstances 14 behind their purchase, or the price that they paid"); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 15 268 F.R.D. 652, 664 (S.D. Cal. 2010) (rejecting defendant's argument that "since the putative class 16 members 'have different knowledge, motivations, and expectations relating to their annuity 17 purchases, . . . individual issues of reliance predominate'").

18 The same is true as to individual Class Members' subjective interpretations of what "hand-19 picked" and "expert" mean.  Dkt. No. 138-5 at 3-4.  Likewise, it will be shown that Donald Trump 20 had virtually no substantive involvement in the Trump University Live Events at issue, and had no 21 idea what "secrets" of his were or were not being taught.  Dkt. No. 138-5 at 4-5; *see* Reply at §III.D. 22 Again, this is true as to all Class Members and does not in any way depend on their subjective 23 opinions.  Reasonable consumers were likely to be deceived.  *See Johnson v. General Mills, Inc*., 24 276 F.R.D. 519, 522 (C.D. Cal. 2011) (holding that "the fact that some people bought the yogurt for 25 other reasons does not sufficiently rebut an inference of materiality to defeat certification, because it 26 does not as a matter of law contradict a finding that 'a reasonable man would attach importance to its 27 existence or nonexistence in determining his choice of action in the transaction in question.'").

28

1 Other recent class certification decisions are in accord. In *Johnson*, the court granted class certification in an action brought by consumers against General Mills, the manufacturer of Yoplait yogurt, alleging that it falsely represented that Yoplait provided a digestive health benefit that other yogurts did not. General Mills (like Defendants here) attempted to shift the focus from its conduct to the plaintiff class, arguing that consumers bought the yogurt for various reasons. That may be the case – some people may have bought Yoplait for its purported digestive benefits, some may have bought it because it contained calcium, some may have just wanted a snack. Nonetheless, the Court held that the focus of the inquiry should be on whether "[d]efendants made a material misrepresentation regarding the digestive health benefits of YoPlus." *Johnson*, 276 F.R.D. at 521. Because there was "a unitary message," which plaintiffs claimed was fraudulent, "class certification is warranted." *Id.*

Likewise, in *Ries*, the court granted class certification in an action brought by consumers against Arizona Beverages, claiming that its ice teas, which it claimed were "all natural," were made with high fructose corn syrup. Even the plaintiffs in that case agreed that they purchased the teas for various reasons. One plaintiff bought it bought it because she was thirsty and wanted a natural drink, something healthier than a soft drink; she also liked the bottle. *Ries*, 2012 WL 5975247, at *1. Another bought the tea in consideration of price, healthfulness, taste, thirst and the labeling of the bottle. *Id.* The Court confirmed in granting class certification that "the focus of the UCL and FAL is on the actions of the defendants, not on the subjective state of mind of the class members." *Id.* at *12. "Thus, for purposes of Rule 23(a)(2), a perfect identity of facts and law is not required; relative 'minimal' commonality will do." *Id.* at *13.

Finally, in *In re Ferrero Litig.*, 278 F.R.D. 552 H (CAB) (S.D. Cal. 2011), the court granted class certification in an action brought by consumers against the manufacturer of Nutella, based on defendants' advertising campaign that Nutella was healthy and beneficial to children, when in fact it contained dangerous levels of fat and sugar. The court found that commonality was satisfied because the claims were based on a common advertising campaign and focused on the common question of whether Ferrero misrepresented that Nutella was healthier or more nutritious than it actually is. *Id.* at 558.

It did not matter that people bought the yogurt or tea or Trump University courses or Nutella for various reasons, or even that they may have enjoyed it. As the court in *Johnson* explained: "That some consumers purchased the yogurt for other reasons does not defeat" class certification. *Johnson*, 276 F.R.D. at 523. Therefore, whether Trump University students purchased the courses for various reasons or had varying experience or backgrounds in real estate, or various success in investing in real estate is irrelevant. What matters is that Defendants made material misrepresentations and omissions about Trump University to the entire Class.

As detailed in Plaintiffs' opening and reply briefs, Defendants' centrally-orchestrated scheme is made apparent, and will be proved at trial, using Defendants' own internal documents and testimony: its marketing guidelines, Play Book, former employees' testimony, personnel contracts, PowerPoint slide presentations with talking points, transcriptions of those presentations and prior judicial admissions. *See* Reply at II.A.

### B. Plaintiffs Can Prove Damages at Trial

While not a relevant inquiry for the purposes of class certification,[3] Plaintiffs' ability to prove damages is simple: determine what each class member paid for their "University" education and refund them that amount, less any prior refunds they may have received. This can easily be determined through Trump University's records because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4] DEx. 6, Covais Decl., ¶6; Ex. 72, Covais Dep. at 18:1-24, 21:4-13, 21:19-22:4, 23:15-18, 25:9-21, 32:10-34:2, 66:21-24, 119:22-121:9, 141:14-142:8, 157:7-25. This is

---

[3] *See Johnson*, 276 F.R.D. at 522 ("'The amount of damages is invariably an individual question and does not defeat class action treatment.'") (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

[4] Here and throughout, unless otherwise noted, references to "DEx." are to the Declaration of David K. Schneider in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel; references to "Ex." are to the Declaration of Amber L. Eck in Support of Plaintiffs' Motion for Class Certification (Exhibits 1-66) (*see* Dkt. No. 122-2) and to the Declaration of Rachel L. Jensen in Support of Plaintiffs' Reply in Support of Motion for Class Certification, Appointment of Class Representative and Appointment of Class Counsel; Plaintiffs' Response to Defendants Objection to Plaintiffs' Proposed Trial Plan for Trial of Class Claims; Plaintiffs' Opposition to Defendants' Objection to Evidence in Plaintiffs' Motion for Class Certification; and Plaintiffs' Motion to Strike Defendants Declarations (Exhibits 67-137), filed concurrently herewith.

sufficient. *See, e.g., Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 569 (S.D. Cal. 2012) (reasoning that the defendants had the sales data from which damages and/or restitution may be determined). Plaintiffs' damages theory of full refunds is consistent with what the New York State Education Department believed was an appropriate remedy as to Trump University when it instructed Defendants: "All current students should be refunded." Jensen Decl., Ex. 68, NYSED 000067-68.

### III. CONCLUSION

Plaintiffs' Trial Plan has served its intended purpose: to demonstrate how Plaintiffs' claims can be proven at trial using common evidence applicable to the class. It largely focused on how Plaintiffs' claims could be tried on a multistate basis – a position that Defendants do not challenge. Defendants' regurgitation of its arguments in opposition to class certification do not preclude the introduction of the Trial Plan. The Objection should therefore be overruled.

DATED: February 1, 2013

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
THOMAS R. MERRICK

          s/ Rachel L. Jensen
          RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
625 Broadway, Suite 906
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 1, 2013.

 s/ Rachel L. Jensen
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  rjensen@rgrdlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`