1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
3  THOMAS R. MERRICK (177987)
   tmerrick@rgrdlaw.com
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone: 619/231-1058
   619/231-7423 (fax)
6
   ZELDES & HAEGGQUIST, LLP
7  AMBER L. ECK (177882)
   ambere@zhlaw.com
8  HELEN I. ZELDES (220051)
   helenz@zhlaw.com
9  ALREEN HAEGGQUIST (221858)
   alreenh@zhlaw.com
10 AARON M. OLSEN (259923)
   aarono@zhlaw.com
11 625 Broadway, Suite 906
   San Diego, CA  92101
12 Telephone: 619/342-8000
   619/342-7878 (fax)
13
   Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>Defendants. | No. 3:10-cv-00940-GPC(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTIONS TO EVIDENCE IN PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL<br><br>JUDGE: Hon. Gonzalo P. Curiel<br>DATE:  June 28, 2013<br>TIME:  1:30 p.m.<br>CTRM:  9 (Schwartz) |

**[REDACTED]**

810799_1

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | EVIDENTIARY STANDARD ON CLASS CERTIFICATION | 1 |
| II. | DEFENDANTS' OBJECTIONS LACK MERIT | 2 |
| | A. Objection Nos. 10 and 12 (PlayBook) | 2 |
| | B. Objection No. 15 (PowerPoint) | 3 |
| | C. Objection Nos. 16 and 17 (Scripts) | 4 |
| | D. Objection No. 24 (Advertisements) | 6 |
| | E. Objection Nos. 2, 6, 19, 21, 22 and 23 (Trump's Involvement) | 6 |
| | F. Objection No. 13 (Student Financial Statements) | 9 |
| | G. Objection No. 14 (Refunds) | 9 |
| | H. Objection Nos. 18, 25 and 26 (Speakers and Mentors – "Experts") | 10 |
| | I. Objection Nos. 27 and 28 (One-Year or Unlimited Mentoring Support) | 11 |
| III. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Alonzo v. Maximus, Inc.*,
   275 F.R.D. 513 (C.D. Cal. 2011) ............................................................................. 1

*Eisen v. Carlisle and Jacquelin*,
   417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ............................................ 1

*Gonzalez v. Millard Mall Servs.*,
   281 F.R.D. 455 (S.D. Cal. 2012) .......................................................................... 1, 2

*Keilholtz v. Lennox Hearth Prods, Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010) ............................................................................. 1

*Mazza v. Am. Honda Motor Co.*,
   254 F.R.D. 610 (C.D. Cal. 2008) ............................................................................. 1

**RULES**

Federal Rules of Civil Procedure
   Rule 30(b)(6) ............................................................................................................ 2

Federal Rules of Evidence
   Rule 602 ................................................................................................................... 1
   Rule 701 ................................................................................................................... 1

1  Plaintiffs respectfully submit this opposition to Defendants' Objections to Evidence in
2  Plaintiffs' Motion for Class Certification and Appointment of Counsel ("Obj." or "Objections").

**I.  EVIDENTIARY STANDARD ON CLASS CERTIFICATION**

Defendants lodged "objections" to evidence submitted by Plaintiffs with their class certification motion pursuant to "Federal Rules of Civil Procedure, including but not limited to Rules 602 and 701." *See* Dkt No. 138-4 at 1. Plaintiffs presume that Defendants intended to move under the Federal Rules of Evidence, as there is neither a Rule 602 or 701 in the Federal Rules of Civil Procedure. This presumption is substantiated by Defendants' citation to various Federal Rules of Evidence in their preceding objections. *See id.* at 2 (objecting to Plaintiffs' citation to the declaration of former employee Ron Schnackenberg based on, *inter alia*, "[i]mproper lay opinion").

Nevertheless, Defendants' objections are improper and should be overruled. As held in a case upon which by Defendants relied in their opposition to class certification:

> ***Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence.*** *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (The class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials."). At the class certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008).

*Gonzalez v. Millard Mall Servs.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012)[1] (cited in Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel at 6).

Thus, as the *Gonzalez* court found: "[T]he Court may consider inadmissible evidence at the class certification stage. *Id.* (citing *Keilholtz v. Lennox Hearth Prods, Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010). Indeed, "'[t]he court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification].'" *Gonzalez*, 281 F.R.D. at 459 (quoting *Alonzo*, 275 F.R.D. at 519).

---

[1]  Unless otherwise noted, citations are omitted and emphasis is added, here and throughout.

Thus, according to Defendants' own authorities, their objections are not well founded and should be overruled. *See id.*

Additionally, Defendants' objections are baseless, an attempt to circumvent the page limits for their brief, and mislead the Court as to the merits of the case by, *inter alia*, inserting an "explanation of the issue, its significance, or other pertinent information." Obj. at 1. Though Defendants' objections should be overruled for the reason that evidence need not be "admissible" at the class certification stage, Plaintiffs highlight a few examples of how baseless Defendants' "explanation" objections are.[2] Plaintiffs' silence as to other "objections" should not be interpreted as acquiescence, but any such objections to evidence should be reserved for a motion for summary judgment or trial once the record is more developed. Indeed, many of these issues will be proven with common evidence, *i.e.*, either Donald Trump imparted his real estate secrets through TU or he did not. Finally, discovery is still ongoing, and there is no discovery cut off yet in this case.

## II. DEFENDANTS' OBJECTIONS LACK MERIT

Defendants' primary objections are put forward on the grounds that Plaintiffs various statements in their opening class certification brief "lack foundation" and/or are "misleading." They are neither. Moreover, Defendants' objections misstate the evidence in an attempt to undermine Plaintiffs' motion. Plaintiffs highlight a few examples below.

### A. Objection Nos. 10 and 12 (PlayBook)

As to Objection Numbers 10 and 12, Defendants object to Plaintiffs' statement that speakers, instructors, and mentors were required to abide by the PlayBook as lacking foundation. However,

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████ Ex. 17

---

[2] Plaintiffs address Defendants' individual objections to the declarations of TU's former employees in Plaintiffs' Opposition to Defendants' Motion to Strike Declarations of Schnackenberg, Sommer, Nicholas, and Donnelly, which is being filed and served concurrently herewith.

1 | at 196:16-198:10.[3] ████████████████
2 | ████████████████████████████████
3 | ████ Ex. 17 at 163:10-15; Ex. 14 at 306:7-12.

Moreover, the Defendants' "Explanation" attempts to mislead the Court because the PlayBook existed during the entire time that TU held Live Events (seminars and mentorships). Ex. 17 at 161:23-163:15; Ex. 12, TU 52934-3105, 2010 PlayBook; Ex. 75, TU 130419-550, 2009 PlayBook; Ex. 76, TU 130393-418, 2008 PlayBook; Ex. 77, TU 130294-340, 2007 PlayBook; Ex. 81 (2007 Sales Manual).

Further, the PlayBook speaks for itself ████████████████ ██████████████ Ex. 12, TU 52934-3105, 2010 PlayBook; Ex. 75, TU 130419-550, 2009 PlayBook; Ex. 76, TU 130393-418, 2008 PlayBook; Ex. 77, TU 130294-340, 2007 PlayBook. ██████ ████████████████████████ ████████████ Ex. 12. The PlayBook evidences Defendants' up-sell scheme and manipulative hard-sell tactics that they used, and Defendants' attempts to whitewash this damaging document should be overruled. *See id.*

### B.   Objection No. 15 (PowerPoint)

Defendants object to Plaintiffs' statement that TU had an "official" PowerPoint for lack of foundation. This objection is baseless. Indeed, ████████████████ ██████████████████████████████ Ex. 27 at TU 48961. ████████████████████████████████ ██████████████████ Ex. 12 at TU 53004. ████████

---

[3] Here and throughout, unless otherwise noted, references to "DEx." are to the Declaration of David K. Schneider in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel; references to "Ex." are to the Declaration of Amber L. Eck in Support of Plaintiffs' Motion for Class Certification (Exhibits 1-66) (see Dkt. No. 122-2) and to the Declaration of Rachel L. Jensen in Support of Plaintiffs' Reply in Support of Motion for Class Certification, Appointment of Class Representative and Appointment of Class Counsel; Plaintiffs' Response to Defendants Objection to Plaintiffs' Proposed Trial Plan for Trial of Class Claims; Plaintiffs' Opposition to Defendants' Objection to Evidence in Plaintiffs' Motion for Class Certification; and Plaintiffs' Motion to Strike Defendants Declarations (Exhibits 67-137), filed concurrently herewith.

1 █
2 █
3 █ *See, e.g.*, Exs. 40, 86. █
4 █
5 *See, e.g.*, Ex. 87. █
6 █
7 █
8 *See, e.g.*, DEx. 39.

### C. Objection Nos. 16 and 17 (Scripts)

Defendants object to Plaintiffs statements that TU used sales scripts on the grounds that the statements lack foundation, are misleading and misstate the evidence. First, Defendants' argument relies on semantics in arguing there is no "script" for the Live Event, as though there is something magical about the term, as opposed to the practical point of standardization. But, █

█:

█

\* \* \*

█

Ex. 12, TU 53041 █

█

█ Ex. 12 at TU 53062.

█

Ex. 12 at TU 53063.

In addition, salespersons (a/k/a "setter" or "screener") used scripts to call all students who had attended the free Preview (over 80,000 people according to Defendants) to up-sell them to

1  another product. Ex. 80, Nicholas Dep. at 236:24-237:21. The salespersons were required to follow
2  a script "word for word" because the scripts had been "psychologically tested." Ex. 80, Nicholas
3  Dep. at 49:7-50:10; Ex. 81, Donnelly at 94:3-95:23 ("I do know that there was a script issued while I
4  was there to make sure everything was *uniform*."); Ex. 77 TU 130294-340 ▮▮▮▮
5  ▮▮▮▮. The purpose of the script was "to ensure that everybody was *uniform with what they*
6  *were saying to customers*." Ex. 81, Donnelly Dep. at 203:3-10. According to a former TU sales
7  consultant at the call center, they were required to:

> [P]ortray the image that [instructors and mentors] eat, slept and lived in the Trump towers with Mr. Trump, and that they were his right-hand man and they were going to help you . . . . [But,] [t]hey're just random people hired by Mr. Sexton or whoever to come in because they may have a little bit of real estate experience or they may have done a couple of properties. Now all of a sudden they're experts. That's what I mean it's a joke.

Ex. 80, Nicholas Dep. at 159:8-22. The sales consultants were instructed that all of the Live Event personnel were "experts," but "that doesn't necessarily mean that they were." *Id.* at 71:22-72:6. In the end, even for TU's own employees:

> It's – it's the *hard sell* that is a hard one to take because people get excited about the *Trump name*. They just do. So they want to be associated with that. And then you have a salesperson who is selling them on that and why they want to be included in that and convincing them that they should get their credit increased.

Ex. 81, Donnelly Dep. at 117:22-118:9. ▮▮▮▮
▮▮▮▮
▮▮▮▮ Defendants claim the speakers did not use scripts, but the
evidence shows that they were very much scripted. ▮▮▮▮
▮▮▮▮ *Id.* Further, ▮▮▮▮
▮▮▮▮
▮▮▮▮ Ex. 27 at TU
48961. Finally, ▮▮▮▮
▮▮▮▮ Ex. 12 at TU 53004.
▮▮▮▮
▮▮▮▮ In sum, Defendants' objections are baseless.

### D. Objection No. 24 (Advertisements)

Defendants object to Plaintiffs statement that TU used ubiquitous advertisements on the grounds that this statement lacks foundation. Citing almost entirely to Sexton's declaration, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Yet, all the evidence speaks otherwise, even Mr. Sexton's deposition testimony, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 17 at 230:14-231:6. As discussed in Plaintiffs' Reply Memorandum in Support of Motion for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 75 at TU 130427 (2009 PlayBook); Ex. 12 at TU 52946-47, 52960. TU's Marketing Guidelines also ensured uniformity through controlling the same deceptive "brand, tone and message across all TU's marketing efforts" (Ex. 83 at 014 (Marketing Guidelines)), ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*see, e.g.*, Ex. 24 at TU 48770, ¶2.02; Ex. 26 at TU 48857), and substantiated through the uniform ads themselves (Ex. 79 (Ad Chart)), ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See, supra*, §II.B. & C.

### E. Objection Nos. 2, 6, 19, 21, 22 and 23 (Trump's Involvement)

Defendants object to Plaintiffs' statements that Donald Trump did not "handpick" the mentors and instructors and that Donald Trump was otherwise not substantively involved in TU as represented to the public and the Class. Passing it off as "evidence," Defendants *argue* via its "Explanation" section to the objections, that "Mr. Trump did hand-pick the *original* TU faculty" and "Mr. Trump personally selected the resumes of all later faculty members." Thus, Defendants object that Plaintiffs' statement lacks foundation and is misleading. These objections are baseless. Defendants' assertion that Donald Trump "selected the resumes of all later faculty members" raises

1  credibility issues for the fact finder or jury, and their attempt to involve Donald Trump by stating
2  that he handpicked the original faculty is misleading.
3      Preliminarily, Defendants' technically formalistic "Explanation" concerning the term
4  "handpicked" misses the point.  The fundamental underlying deceptive message relayed by
5  Defendants is that students will be learning from Donald Trump's *right-hand men* (a/k/a top experts
6  personal advisors, etc.) to advise them as they had advised Donald Trump in making his millions (so
7  almost as good as being taught by Donald Trump).  Nevertheless, Defendants objections lack merit.
8  Defendants cite Donald Trump's interrogatory response (DEx. 4, Rog. No. 10) for the proposition
9  that he selected all later faculty members' resumes, but *nowhere* in the interrogatory response is this
10  stated.  *See id.*  With respect to Donald Trump's involvement, unbelievably, Defendants refer to
11  ▮
12  ▮
13  ▮
14  ▮  Ex. 97, Trump Dep. at 162:20-163:2, 13-16.
15      Defendants use vague language that Donald Trump was involved in the "formation," "initial
16  direction," and "original" "faculty" for the online programs.  However, Donald Trump had virtually
17  nothing to do with the Live Events except their publicity and branding.  From its inception in 2004,
18  TU's business model completely changed by mid-2007 (from e-learning to Live Events), with new
19  players creating and operating the same, which had very little involvement of Donald Trump or his
20  "personal advisors."  Indeed, the only evidence Defendants proffer in support of Donald Trump's
21  limited involvement, via Sexton's Declaration (DEx. 1, ¶¶4-5) and Donald Trump's interrogatory
22  response (DEx. 4, Rog. No. 10), does not establish that Donald Trump had meaningful involvement
23  *in the Live Events* at issue.
24      Through their "'explanatory" objections, Defendants' *argue* that with "Mr. Trump's
25  approval, Mr. Sexton hired" professors, among others "to *prepare* the curriculum." ▮
26  ▮
27  ▮
28  ▮

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Defendants have set forth no competent evidence that these particular
2  "professors" hired by Sexton (but purportedly "approved" by Donald Trump) actually had any active
3  involvement in the creation or operation of the Live Events. Defendants deal with this issue by
4  asserting a new defense, heard only now for the first time, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7  ▓▓▓▓▓▓▓▓▓▓ Opp. at 11-12. This contradicts all the other evidence in this case. **Prior** to seeing
8  Plaintiffs' opening brief, Donald Trump's interrogatory responses said his "secrets" were "course
9  materials attendees were given access to after purchase, . . . lessons taught at the three-day retreats, .
10 . . coaching and lessons taught in the three-day in-field mentorships." Ex. 105 at Resp. to Rog. No.
11 16. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
13 Ex. 77 at TU 130314 (2007 PlayBook). And at his deposition, not once did Donald Trump assert
14 that his "secret" was a ▓▓▓▓▓▓▓▓ of ▓▓▓▓▓▓▓▓▓ or the like. Rather, when directly asked
15 "which of your real estate secrets were taught as part of the mentorship," Donald Trump responded:
16 "You'd have to ask Mr. Sexton. He has all that information." Ex. 28, Trump Dep. at 130:14-20.
17 Donald Trump said he had no idea what students received, or even what his own purported
18 "foreclosure system" was. Ex. 28 at 107:10-110:12.
19       This is because Donald Trump's purported "secrets" to real estate success never made an
20 appearance at the Live Events because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Nowhere do Defendants dispute this. ▓▓▓▓▓
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24 ▓▓▓▓▓[4] In sum, Defendants' "explanatory" objections lack merit and should be overruled.
25 _____
26 [4]   *See* Dkt. No. 122-1 (Plaintiffs' Memorandum of Points and Authorities in Support of Motion
27 for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel) at
   12; Ex. 108, TU 102483; Ex. 14 at 463:25-464:24 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
28 ▓▓▓▓▓▓); Ex. 109 at TU 102753-54 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; Ex. 110 at TU 102707-

### F. Objection No. 13 (Student Financial Statements)

Defendants object to Plaintiffs statement that TU had students prepare detailed financial statements on the grounds that it lacks foundation and is misleading. Defendants' "Explanation" is that "TU never required students to provide financial information," citing to Sexton's declaration. The misleading nature of Defendants' objection is evident through Defendants' own documents that ███████████████████████████████████████████████████████████████████████████████. *See, e.g.*, Ex. 106, TU96855 - 56 ███████████; Ex. 107, TU-BROWN0000066-67 █████████████; Ex. 77 at TU 130315 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 12 at TU 52969. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 17 at 251:23-252:11; Ex. 85, Sexton II Dep. at 312:11-25. Ex. 80, Nicholas Dep. at 62:6-63:24 (getting financial information was a "part of our job"). Defendants' objection should be overruled.

### G. Objection No. 14 (Refunds)

Defendants object to Plaintiffs' reference that students were denied refunds on the grounds that it lacks foundation because "TU generously provided refunds to the vast majority of students who requested one, even outside the various warranty periods." Contrary to Defendants' *argument* that refunds were "generously" provided, the actual evidence tells a far different story. *See, e.g.*, Ex.111, TU 95873-97 (██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████
08; Ex. 110, TU 102808 ██████████████████████████████████████████ *See* Ex. 19 at 103:17-105:4.

1    ██████). ████████████████████████████████████████

2    ████████████████████████████████████████████████

3    ███████████████ See Ex. 72, Covais Dep. at 100:21-101:5, 104:22-105:2, 107:13-108:24, 109:12-

4    110:16, 110:20-111:5, 113:13-114:2, 122:20-122:21, 123:12-19. Defendants' objection lacks merit

5    and should be overruled.

### H. Objection Nos. 18, 25 and 26 (Speakers and Mentors – "Experts")

Defendants object to Plaintiffs' statements that, despite Defendants' representations that students would be taught by Donald Trump's experts, TU had no real set standards other than being compelling speakers and good at sales. Defendants ignore the evidence, including former employees' testimony, TU's written corporate policies, admissions, and its mentors and speakers credentials. Preliminarily, however, Defendants ignore the fact that it is not only that TU lacked standards to determine whether these individuals were in fact real estate experts, but that these were purportedly Donald Trump's right-hand men that could advise consumers as they had advised Donald Trump in making his millions. TU's former salesperson succinctly illustrates this fact:

> [These "experts"] were . . . supposedly Donald Trump's right-hand man who would come into the office and I would be like, "Have you ever met Mr. Trump?" And they'd say, "No" or "I'm going to meet him today for the first time." I wouldn't define that as a right-hand man and that's what the *script* says . . . , *that these people that are paying money are going to be with Donald Trump's right-hand* man and they're going to hold their hands and lead them how to be successful *and teach them secrets*.

Ex. 80, Nicholas Dep. at 73:11-74:2. A former Senior Marketing Manager also poignantly testified that it was misleading to consumers to state that "experts were handpicked by Donald Trump":

> Q.   Why would it be misleading to consumers?
>
> A.   Because people are buying into the program with the assumption that they are getting *Donald Trump's best of the best and there are people that are hand chosen by him*. So Donald Trump is known for wanting the best. Why wouldn't he put this forward with his people that he is getting $25,000, $35,000 to teach me how to invest in real estate.

1  Ex. 81, Donnelly Dep. at 2010:2-19. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
2  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
3  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Ex. 19 at
4  126:9-127:1. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Ex. 19 at
5  118:11-23. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
6  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See, e.g.*, Ex.124,
7  PETERSON 1060-64.

### I. Objection Nos. 27 and 28 (One-Year or Unlimited Mentoring Support)

Defendants object to Plaintiffs' statement that TU represented that students would receive one-year or unlimited mentoring support. Defendants contend these statements lack foundation and are misleading.

Defendants never actually dispute this fact, but say that no program offered "one year of *in-person* mentoring"; and *only* the Gold Elite program included *any* mentoring. Plaintiffs have never alleged the programs were represented as including one year of "in-person" mentoring.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

5

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

1  ▬▬▬. Ex. 75 at TU 130465 (2009 PlayBook).  On its own website, TU admits that "[a]fter
2  completing the [3-day] program you will have **direct access to your Mentor for 12 months** to field
3  any questions that may arise." Ex. 46, TU 69463; *See also* DEx. 6, ¶6d (Covais Decl.) ▬▬▬
4  ▬▬▬
5  ▬▬▬
6  ▬▬▬ *See* Ex. 88 ▬▬▬
7  ▬▬▬
8  ▬▬▬ Ex. 86
9  at TU 105225.  Of course, this is a far cry from Defendants' argument in its objections seeking to
10 mislead the Court that "TU never even represented that one year of in-person mentoring was
11 available, much less 'unlimited mentoring.'"
12 ▬▬▬
13 ▬▬▬
14 ▬▬▬ *See* Ex.125, TU 129457-60 at 57, 59 (▬▬▬
15 ▬▬▬
16 ▬▬▬
17 ▬▬▬
18 ▬▬▬
19 ▬▬▬
20 DEx. 22b, ¶11 (Peterson Decl.); *see also* Ex.126, TU 95922-26.
21     Defendants' objections should be overruled.
22 **III.   CONCLUSION**
23     Plaintiffs could provide other substantive responses should the Court require them; however,
24 Plaintiffs believe the authorities are clear that such evidentiary rulings are not to be made at the class
25 certification stage but rather at summary judgment or trial.  In fact, the only thing Defendants'
26 objections demonstrate is that this case is suitable for class certification because whether the ultimate
27 answer to these issues is true or false is proven with evidence common to the class.
28



For the foregoing reasons, Plaintiffs respectfully submit that the Court should overrule Defendants' purported objections to Plaintiffs' evidence in their entirety.

DATED: February 1, 2013

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
THOMAS R. MERRICK

s/ Rachel L. Jensen
RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
625 Broadway, Suite 906
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 1, 2013.

s/ Rachel L. Jensen
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: Rachelj@rgrdlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)