UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF *et al.*,<br><br>  Plaintiffs,<br>v.<br>TRUMP UNIVERSITY, LLC, *et al.*,<br><br>  Defendants. | Civil No.  10-CV-0940-GPC (WVG)<br><br>ORDER ON DISCOVERY DISPUTES |

Pending before the Court are several discovery disputes initiated by both parties in this case. On February 21, 2013, the parties submitted to the Court a Joint Statement for Determination of Discovery Disputes (hereafter "Joint Statement").

In the Joint Statement, Defendants claim that Plaintiffs failed to comply with this Court's Order[1] to provide responsive documents to Defendants' Fourth Set of Requests for Production of Documents ("RFPs"). Defendants also ask the Court to compel Plaintiffs to respond to fifty-eight subpoenas directed to witnesses represented by Plaintiffs' counsel and identified in Plaintiffs' Amended Initial Disclosures. Additionally, Plaintiffs argue that Defendants must seek documents from their remaining former employees and independent contractors listed in Defendants' Supplemental Disclosures.

---

[1] This Court issued an Order on Discovery Disputes on December 23, 2012. (Doc. No. 188.)

On February 22, 2013, this Court held a Discovery Hearing related to all of the parties' disputes on the record in open court. Mr. Thomas Merrick, Ms. Rachel Jensen, and Ms. Amber Eck appeared on behalf of Plaintiffs, and Mr. David Schneider appeared on behalf of Defendants. After reviewing the parties' Joint Statements, the documents lodged with the Court, additional exhibits cited by Plaintiffs during the Hearing, and the relevant case law, as well as arguments advanced by counsel for all parties, the Court hereby issues the rulings set forth below.

## I. PLAINTIFFS RESPONSE TO DEFENDANTS' RFPS
### A. BACKGROUND

On September 28, 2012, Defendants served their Fourth Set of RFPs upon Plaintiffs which included (1) one RFP for the "speaker's scripts" that Plaintiffs allege every Trump University instructor was required to use; (2) RFPs regarding the "guaranteed success" that Trump University purportedly represented, telling Plaintiffs that they would make all of their money back on their first or second deal; and (3) RFPs concerning Trump University's alleged representations of "unlimited mentoring" or "one-on-one year-long mentorship."

Defendants requested that Plaintiffs either produce the documents which contain the specific alleged misrepresentations, identify the Bates stamp numbers of the pages which contain the specific alleged misrepresentations, or state that no such documents exist. In response to the RFPs, Plaintiffs responded that all responsive, non-privileged documents had been produced.

After unsuccessful meet and confer efforts, the parties submitted a Joint Statement to the Court, and on December 12, 2012, the Court held a Discovery Hearing. At the Hearing, Plaintiffs objected to the requests as being unduly burdensome and oppressive, citing the fact that over 145,000 pages of documents had already been produced in this litigation. The Court noted that, at this stage in the proceeding, Plaintiffs should be able to identify without extraordinary effort, the representations that they have been relying upon for the entire lawsuit. The Court explained that Plaintiffs brought the lawsuit based on alleged misrepresentations by Defendants, and it is not unreasonable for Plaintiffs to have to identify

what they are relying on as a basis for their entire case. On December 23, 2012, the Court issued an Order requiring Plaintiffs to produce just one document in response to each of the three categories requested in the RFPs. (Doc. No. 188 at 15.)

In the instant dispute, Defendants argue that, although Plaintiffs did produce documents in response to the Court's Order, none of the documents produced were responsive to the RFPs, and therefore were not in compliance with the Order.

### 1. Speaker's Script

On September 24, 2012, Plaintiffs filed a Motion for Class Certification, in which they alleged that all of Defendant Trump University's presenters used the same, uniform, and standardized scripts. (Doc. No. 122.) Moreover, various paragraphs throughout Plaintiffs' Third Amended Complaint ("TAC") discuss the script used by speakers, teachers, and mentors. (Doc. No. 128 at 5, 68.) Plaintiffs allege in the TAC that,

> the in-person Seminars *were highly standardized*. Speakers used the same slide presentation, the same script, and even had detailed instructions for the presentation, down to where the speakers and coordinators should stand, the temperature of the room and the music to be played during the Introduction – "Money, Money, Money" from the Apprentice show.

(Doc. No. 128 at 5.)

Defendants argue that their presenters did not use scripts, and they served the RFP in an effort to obtain the documents that Plaintiffs rely upon to support these allegations. Defendants now claim that, in response to the Court's Order, Plaintiffs did not produce a speaker's script. Instead, Plaintiffs provided a setter script used by individuals in the call center who set appointments. Defense counsel represented during the Discovery Hearing that none of the named Plaintiffs ever spoke with the call center. Plaintiffs contend that they are simply reading the documents differently than Defendants, and that this is a merits dispute, rather than a discovery dispute.

//
//
//
//

### 2. Guarantee of Success

In their TAC, Plaintiffs allege that they purchased courses from Defendants based on the representation that they were guaranteed to make their money back.[2] (TAC, Doc. No. 128 at 3, 53, 56, 59.) In response to the Court's Order, Plaintiffs produced a letter that was sent to individuals after they had already enrolled in Defendants' program. The letter did not contain any guarantees of success.

### 3. Year-Long or Unlimited Mentoring

Plaintiffs peppered the TAC with alleged quotes from Defendants, offering "unlimited mentoring," or "year-long mentoring." (TAC, Doc. No. 128 at 51, 55.) While Defendants claim that there is no dispute that mentors provided year-long phone support, they argue that there was never a promise of unlimited or year-long mentoring.

In response to the Court's Order, Plaintiffs produced two documents that do not reference unlimited or year-long mentoring. (Joint Statement, Defense Exh. E.) Instead, the documents reference the undisputed one year of support.

### B. LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) permits a Court to impose sanctions upon a party for failing to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A). Rule 37(b)(2)(A) states, "If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Rule 37(b)(2)(A)(ii) notes that possible sanctions may include prohibiting the disobedient party from supporting or

---

[2] "Plaintiffs and the other Class Members relied on the speakers' claims that they were 'guaranteed success' if they followed the techniques they would learn in the Gold seminar." (TAC, Doc. No. 128 at 26.) "Defendants told Low that if he signed up for the Trump University Elite program for $25,000, he was guaranteed to make his money back within the first one or two deals." Id. at 53. "Defendants told Everett that if she signed up for the Trump University Elite program for $35,000, she was guaranteed to make her money back within the first one or two deals, which would pay for the entire course." Id. at 56. "Defendants told Brown that if he signed up for the Trump University Elite program for $25,000, he was guaranteed to make his money back within the first one or two deals, which would pay for the entire course." Id. at 59.

opposing designated claims or defenses, or from introducing designated matters into evidence. Fed.R.Civ.P. 37(b)(2)(A)(ii).

## C. DISCUSSION

This Court finds that this is a discovery issue, and not a merits issue. Defendants propounded discovery upon Plaintiffs, and Plaintiffs responded that all documents were produced. A dispute arose, and the Court ordered Plaintiffs to produce sample documents in response to the RFPs. After reviewing the documents produced and comparing them against Plaintiffs' TAC, the Court finds that Plaintiffs failed to comply with its Discovery Order.

### 1. Speaker's Script

As Defendants noted during the Hearing, the RFP specifically asked for the script that Plaintiffs claim the speakers used. In the TAC, Plaintiffs refer to the scripts used by the speakers. Yet, in response to the Court's Order, Plaintiffs produced a script purportedly used by a setter in a call center, not a seminar speaker. (Bates Stamp Nos. TU 130313-130318.) Plaintiffs did not dispute this at the Discovery Hearing. Under no reasonable interpretation could the documents previously produced by Plaintiffs as "scripts" be construed as responsive to Defendants' RFPs, or in compliance with the Court's Order. If Plaintiffs are not in possession of a speaker's script, they should have so stated in response to the RFP. If Plaintiffs are relying instead on witness testimony to support their claims that all speakers used a script, they should have so stated. If Plaintiffs do in fact have a speaker's script in their possession, it should have been produced to Defendants in response to the Court's Order. (Doc. No. 188.)

During the Discovery Hearing, Plaintiffs claimed that Exhibit Number 86 to their Motion for Class Certification Reply is responsive to the scripts RFP. (Doc. No. 200; Exh. 86.)[3] The Court must note that it took the preparation and submission of two Joint Statements, at least two meet and confer sessions, and two formal hearings before the Court in order for Plaintiffs to identify a document that they now represent to be responsive to this

---

[3] Exhibit Number 86 was filed under seal.

RFP and the Court's Order. If Plaintiffs assert that Exhibit Number 86 is responsive, they shall immediately produce the document to Defendants, if it has not already been produced.

### 2. Guarantee of Success

In response to the guaranteed success category, Plaintiffs produced a letter (Bates Stamp No. TU 60667) that does not contain any guarantees, nor any language that can reasonably be construed to be a guarantee of success by Defendants. Moreover, the letter was sent to Plaintiffs after they had already enrolled in Defendants' program, so they could not have relied upon the letter when deciding to enroll. Plaintiffs failed to comply with the Court's Order.

### 3. Year-Long or Unlimited Mentoring

In response to the Court's Order to produce documents that reference year-long or unlimited mentoring, Plaintiffs provided two documents (Bates Stamp Nos. TU 69463, TU 130465), neither of which reference year-long or unlimited mentoring. Plaintiffs failed to comply with the Court's Order.

During the Hearing, Plaintiffs claimed that Exhibit Number 88[4] to Plaintiffs' Motion for Class Certification Reply is responsive to the Court's Order. They noted that the exhibit is a chart that lists all instances where unlimited or year-long mentoring has been referenced. Defense counsel argued that Exhibit Number 88 is an attorney-generated document, and therefore not responsive to the RFP. If Plaintiffs assert that Exhibit Number 88 is responsive, they shall immediately produce the document to Defendants, if it has not already been produced.

### 4. Conclusion

The Court will not tolerate gamesmanship during the discovery process, as it results in clogging the Court's calendar, unnecessarily expends judicial resources, and wastes the time and resources of opposing parties and their counsel. While the Court recognizes that it ordered Plaintiffs to produce only one document responsive to each category, it cannot overlook the fact that none of the documents produced were in any way responsive to the

---

[4] Exhibit Number 88 was filed under seal.

RFPs. In fact, none of the documents produced could reasonably be interpreted as responsive. If Plaintiffs are relying on oral representations to support the three categories at issue, then they should so state. They were given the opportunity to do so prior to the Court's December 23, 2012, Order, and they did not.

The Court has previously found that Defendants are entitled to at least one document for each of the three categories. During the February 22, 2013, Discovery Hearing, the Court contemplated recommending sanctions to the District Judge if, after review of Exhibits 86 and 88, it found the documents to be unresponsive. Because the Court does not find Exhibits 86 and 88 to be unresponsive, the Court will provide Plaintiffs with one <u>final</u> opportunity to comply with the Court's Order.

While it is true class certification motion briefing may be completed, Defendants assert that they may have certain avenues available to them to supplement their briefing. Defendants are entitled to receive documents responsive to discovery requests which the Court has previously found to be relevant and material. Defendants have not yet received the information, despite a Court Order.

On or before **March 18, 2013**, Plaintiffs shall provide at least one document that is responsive to each of the three RFP categories. If no such document exists, Plaintiffs shall so state. If Plaintiffs are relying on oral testimony to support their allegations, they shall so state. Further, Plaintiffs' counsel shall include with the production, a Declaration that indicates that Plaintiffs believe all documents produced to be responsive to this Court's Order.

Plaintiffs are on notice that failure to comply with this Discovery Order will result in a Report and Recommendation to the District Judge, recommending that Plaintiffs be precluded from presenting additional material in support of their claims that the speakers used scripts, Defendants guaranteed success, or promised year-long or unlimited mentoring. The Court will recommend that Plaintiffs be limited to the documents that they have provided in response to this Court's Discovery Orders. Federal Rule of Civil Procedure 37(b)(2)(A)(ii).

## II. DEFENDANTS' SERVICE OF FIFTY-EIGHT SUBPOENAS

## A. BACKGROUND

In Plaintiffs' Amended Initial Disclosures, they identified more than one hundred and fifty witnesses "who are likely to have discoverable information that [P]laintiffs may use to support their claims in this action." (Joint Statement, Defense Exh. J.) On December 20, 2012, Defendants served Plaintiffs with fifty-eight subpoenas directed to some of these witnesses. (Joint Statement at 3.)

Defendants claim that they subpoenaed these individuals because they were listed in the initial disclosures as likely to have discoverable information to support Plaintiffs' claims, and they are represented by Plaintiffs' counsel. They argue that Plaintiffs' counsel urged the putative class members not to speak with Defense counsel.

Plaintiffs' counsel accepted service of the subpoenas, and responded with a list of boilerplate objections for all of the subpoenas.[5] Plaintiffs now argue that Defendants already possess the requested information, they have failed to demonstrate necessity, the requests take undue advantage of class members, further assistance will be required by Plaintiffs' counsel, and the "control" standard of Federal Rule of Civil Procedure 34(a)(1) does not apply. (Joint Statement at 5.) Further, Plaintiffs argue that the subpoena requests are not narrowly defined.

While Defendants acknowledge that discovery from absent class members is ordinarily not permitted, they cite cases which show that the Court has flexibility on this issue. See Antoninetti v. Chipotle, Inc., 2011 WL 2003292 (S.D. Cal. May 23, 2011); Rojas v. Zaninovich, 2011 WL 2636071 (E.D. Cal. Jul. 5, 2011); Mas v. Cumulus Media, Inc., 2010 WL 4916402 (N.D. Cal. Nov. 22, 2010).

Additionally, Plaintiffs argue that these are Rule 45 subpoenas to non-parties, and all but two of the subpoenas were issued in other districts. Therefore, they contend, the

---

[5] Plaintiffs asserted boilerplate objections to the subpoenas, including, but not limited to, harassing, unduly burdensome, publically available information, attorney-client privilege, and vague and ambiguous. Their objections were identical for each subpoena.

subpoenas should be enforced in those other districts. At the Hearing, Defendants responded that Plaintiffs represent these individuals under Rule 34.

## B. LEGAL STANDARD

### 1. Federal Rule of Civil Procedure 45

"Rule 45 allocates authority over subpoenas to the court for the district from which they are issued...'[O]nly the issuing court has the power to act on its subpoenas.'" Limon v. BerryCo Barge Lines, LLC, 2009 WL 1347363, 1 (S.D. Tex. May 13, 2009) (holding that court lacked jurisdiction over motion to compel compliance with subpoena duces tecum) (quoting In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998); Curry v. Delta Intern. Machinery Corp., 2008 WL 2620103, 1 (W.D. Pa. Jul. 2, 2008) ("This court did not issue the subpoena and this court has no power to grant defendants the relief sought in their motion to compel."); United States v. Star Scientific, Inc., 205 F.Supp.2d 482, 485 (D.Md. 2002) ("The language of Rule 45 clearly contemplates that the court enforcing a subpoena will be the court that issued that subpoena.")

### 2. Discovery from Absent Class Members

Discovery from absent class members is ordinarily not permitted. McPhail v. First Command Financial Planning, 251 F.R.D. 514 (S.D. Cal. 2008). In McPhail, the defendants served the plaintiffs with a set of interrogatories that contained an interrogatory with seven subparts, directed to "Each Absent Class Member Represented by Lead Plaintiffs and Lead Counsel." Id. at 515. There were 178,527 absent class members. Id. at 516. The court determined that the discovery requests would have the effect of requiring an opt-in procedure, particularly given the defendants' reservation of their right to "seek appropriate relief" (i.e., a dismissal of claims) as to any class members who did not timely respond to the discovery. Id. at 518.

//
//
//
//

The <u>McPhail</u> court noted,

> While some courts have permitted discovery of absent class members, they have done so only where the proponent of the discovery establishes that (1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class, (2) the discovery is necessary, (3) responding to the discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent.

<u>Id.</u> at 517.

In <u>Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.</u>, 2012 WL 4829802 (M.D. Tenn. Oct. 10, 2012), the defendants' filed a motion for leave to conduct discovery of absent class members with interrogatories and depositions. <u>Id.</u> at 1. The court noted that, "courts have ruled that discovery of absent class members, while not forbidden, is rarely permitted." <u>Id.</u> at 2.

However, in <u>Antoninetti</u>, a court in this judicial district noted that federal courts in California allow discovery of absent potential class members when they are identified as witnesses, or submit declarations, or are represented by the plaintiffs' counsel. <u>Antoninetti</u>, 2011 WL 2003292, 2. In <u>Antoninetti</u>, witnesses were identified in the plaintiff's supplemental disclosures, and signed declarations as putative class members in support of the motion for class certification. <u>Id.</u> at 1. The court stated that, "[a]lthough Courts do not usually allow discovery from absent class members, the rules pertaining to such discovery are flexible, especially where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation." <u>Antoninetti</u>, 2011 WL 2003292, 1; <u>see also</u> <u>Rojas</u>, 2011 WL 2636071, 4; <u>Mas</u>, 2010 WL 4916402, 3.

In <u>Mas</u>, a case where the individuals from whom documents were requested were identified as witnesses in the plaintiff's initial disclosures, the court stated, "Discovery has been permitted in certain circumstances where the information sought is relevant, not readily obtainable from the representative parties or other sources, and the request is not unduly burdensome and made in good faith." <u>Mas</u>, 2010 WL 4916402, 3.

This district has determined that "such discovery may be taken even prior to certification where 'the proponent of the deposition demonstrates discovery is not sought to take undue advantage of class members or to harass class members, and is necessary to the

trial preparation (or in this instance for preparation of the opposition to class certification." Antoninetti, 2011 WL 2003292, 1; quoting Moreno v. Autozone, 2007 228165, 1 (N.D. Cal. Aug. 3, 2007).

### 3. Boilerplate Objections

Where, as here, the responding party provides a boilerplate or generalized objection, the "objections are inadequate and tantamount to not making any objection at all." Walker v. Lakewood Condominium Owners Associations, 186 F.R.D. 584, 587 (C.D.Cal. 1999). See Ritacca v. Abbott Laboratories, 203 F.R.D. 332, 335 n.4 (N.D.Ill. 2001) ("As courts have repeatedly pointed out, blanket objections are patently improper,...[and] we treat [the] general objections as if they were never made.")

### C. RULING

The Court must first address Plaintiffs' assertion of boilerplate objections. During the Hearing, the Court reminded Plaintiffs that they have previously been admonished for providing boilerplate objections in this litigation,[6] and that there are cases that state that boilerplate objections waive the objections.

On February 13, 2012, this Court admonished Plaintiffs by stating,

> In response, most of Plaintiffs' responses are devoid of substance, include repeated, identical boilerplate objections, and are non-responsive and evasive. Any further objections shall be individually tailored to the specific ROG or RFP, shall actually be applicable, and shall not be boilerplate. Plaintiffs should note that if their revised responses again lack substance, the Court will not entertain the dispute through its informal dispute resolution process, and Defendants may bring a motion to compel and for sanctions. If any party is withholding documents or other responses until the other side responds, the withholding party shall immediately produce all such document. The Court will not tolerate such blatant gamesmanship...

(Doc. No. 93 at 1-2.)

Plaintiff shall note that any boilerplate objections asserted in the future will result in the objections being waived. The law is clear on this issue and the Court was quite direct in its previous order that boilerplate objections will not be well received.

---

[6] On February 13, 2012, this Court issued an Order on Discovery Disputes. (Doc. No. 93.)

The Court has reviewed the subpoenas, which were issued pursuant to Rule 45.[7] (Joint Statement, Exhibit L.) By their request to enforce the Rule 45 subpoenas, Defendants seek an order from this Court compelling production of all documents sought in the subpoenas to the fifty-eight individuals. While the Court is dismayed by Plaintiffs' assertion of boilerplate objections, the Court finds that it lacks jurisdiction to order compliance with fifty-six of the subpoenas, which were issued in other districts.

Rule 45 provides that when, as here, any objection is made to such a subpoena, a motion to compel by the serving party is to be filed in the court that issued the subpoena. Fed.R.Civ.P. 45(c)(2)(B)(i). All but two of the fifty-eight subpoenas were issued out of other districts. Pursuant to Rule 45(c)(2)(B)(i), those courts, not this one, are the proper forums to resolve Defendants' request to compel production pursuant to the subpoenas.

With respect to the two subpoenas that were issued out of this district, using the factors set forth in McPhail, the Court is not convinced that Defendants served these subpoenas for the purpose of reducing the class size, or to take undue advantage of class members. Defendants have explained that they were told not to contact the individuals listed in Plaintiffs' Amended Initial Disclosures, and they chose to subpoena only fifty-eight of the one hundred and fifty individuals listed in the Disclosures. However, the Court is also not convinced that the requested discovery is necessary. While Defendants insist that the documents are necessary because "[r]eliance is a key issue in the case," "documents will show inconsistencies [in the absent class members'] positions," and some documents will "show how individualized each claim is," the timing of the subpoenas conflicts with Defendants' claim of necessity. (Joint Statement at 4.)

On November 30, 2012, Defendants filed their Response in Opposition to Plaintiffs' Motion to Certify the Class. (Doc. Nos. 138-143.) Unlike the circumstances surrounding the RFP dispute discussed above where Defendants have attempted to obtain documents for

---

[7] The subpoenas state, "The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45(d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached." (Joint Statement, Exh. L.)

several months, Defendants did not serve these subpoenas until December 20, 2012. Defendants filed their Response to Plaintiffs' Motion to Certify the Class one month before issuing the subpoenas. Plaintiffs' Amended Initial Disclosures are dated October 6, 2011. (Joint Statement, Exh. J.) If the requested information was necessary, the Court subpoenas presumably would have been issued prior to filing the Response.

Moreover, because Plaintiffs represent these absent class members, it is possible that responding to the discovery requests would require the assistance of counsel, especially considering there are twenty-one categories of document requests. Further, the McPhail court directs that the subpoenas to absent class members must seek information that is not already known by the proponent. McPhail, 251 F.R.D. at 517. While some of Defendants' requests do appear to seek information that is not already known to Defendants, such as which advertising materials each individual purportedly relied on before purchasing a program, many of the requests appear to seek information that is already known to Defendants. For example, the subpoenas seek testimonials that the individuals provided to Defendants, complaints made to Defendants, and responses received from Defendants about each individual's complaints, if any. Defendants' argument that they do not have this information does not hold up to scrutiny.

Considering the rationale set forth in Walker and Ritacca, and noting the clear admonishment in this Court's prior Order, the Court hereby GRANTS in part Defendants' request for an order for Plaintiffs to comply with the two subpoenas issued in this district to Jim Bayne and Kenny Schwing. Had Plaintiffs not again responded with boilerplate objections, this ruling may well have been different, as alluded to above. But given Plaintiffs' repeated disobedience, it is appropriate to "sanction" Plaintiffs in this limited way.

### III. CONTROL OVER DOCUMENTS HELD BY DEFENDANTS' FORMER EMPLOYEES AND INDEPENDENT CONTRACTORS

Plaintiffs assert that Defendants failed to comply with this Court's December 23, 2012, Discovery Order. (Doc. No. 188.) In their Joint Statement, Plaintiffs claim that the Court's Order directed Defendants to reach out to all represented former employees and independent contractors ("formers"), including persons listed in Defendants' Supplemental

Disclosures, to determine whether they had documents relevant to this litigation. (Joint Statement at 9.)

On December 23, 2012, after a Joint Statement was submitted by the parties and the Court convened a Discovery Hearing, the Court ordered Defendants to contact all twenty-two represented formers discussed during the December 12, 2012, Hearing, to determine whether they had documents in their possession, custody, or control. (Doc. No. 188 at 4.) Plaintiffs now argue that there were thirty-four former employees and independent contractors listed in Defendants' Supplemental Disclosures, rather than the twenty-two formers discussed at the Hearing and referenced in the Order. Plaintiffs now claim that the number twenty-two came from Defense counsel during the Discovery Hearing on December 12, 2012. Plaintiffs seek clarification that Defendants have made efforts to secure documents from all thirty-four former employees and independent contractors.

On October 6, 2011, Defendants identified thirty-four formers in their Supplemental Disclosures. Defendants argue that, of the thirty-four formers identified in their Supplemental Disclosures, Plaintiffs selected twenty-two individuals to subpoena. They claim that, throughout the litigation, the issue has been these twenty-two formers, and now, after meet and confer sessions, a Joint Statement submitted to the Court, a Discovery Hearing in the undersigned's courtroom, and a Discovery Order, Plaintiffs demand documents from twelve additional formers. Plaintiffs, however, claim that neither the Joint Statement nor the Court's Order reference subpoenas, and their request has always involved all formers.

Defendants argue that Plaintiffs now seek documents from witnesses whom they have never subpoenaed, and despite knowing that thirty-four formers were identified in Defendants' October 6, 2011, Supplemental Disclosures, Plaintiffs did not object during the discussion with the Court about twenty-two formers at the Discovery Hearing, nor did they mention any discrepancies when the Court issued its December 23, 2012, Order directing Defense counsel to contact the twenty-two formers.

Plaintiffs requested documents from the additional formers on January 23, 2013. This was one month after the Court issued its ruling, and six weeks after the Discovery Hearing where the parties discussed documents from only twenty-two individuals. Defendants have asked Plaintiffs to serve subpoenas for these twelve formers, but, as of the February 22, 2013, Discovery Hearing, no subpoenas had been served.

This Court's Chambers Rules require a party to notify the Court within thirty days of the date upon which the event giving rise to a dispute occurred. (Judge Gallo's Chambers Rule IV.) During the Discovery Hearing on December 12, 2012, Plaintiffs did not dispute that they wanted documents from the more than twenty-two formers that were discussed. Instead, they waited until January 23, 2013, to request that Defendants seek documents from the remaining twelve formers. Plaintiffs failed to comply with the Chambers Rules and the Court hereby DENIES Plaintiffs' request to issue an order requiring Defendants to seek documents from the remaining twelve formers.

IT IS SO ORDERED.

DATED: March 12, 2013

Hon. William V. Gallo
U.S. Magistrate Judge