David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535
Email:  dks@yslaw.com

Attorneys for Defendants TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated, | Case No. 10 CV 0940 GPC (WVG) |
| Plaintiffs, | CLASS ACTION |
| v. | DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DECLARATIONS OF SCHNACKENBERG, SOMMER, NICHOLAS AND DONNELLY |
| TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative, LLC, a New York Limited Liability Company, DONALD J. TRUMP, and DOES 2 through 50, inclusive, | DATE: 6/28/13 TIME:  1:30 p.m. CTRM: 2D |
| Defendants. | |
| AND ALL RELATED CROSS-ACTIONS. | |

# TABLE OF CONTENTS
**Page**

I.     INTRODUCTION ............................................................. 1

II.    DISCUSSION ..................................................................... 1

     A.      Plaintiffs Do Not Even Address the Fatal Defects of the Declarations, and Instead Attempt to Create a Different, Confusing, and Irrelevant Record ............................... 1

     B.      Testimony Specifically Recanting the Declarations Is Not Overcome by Other, More General, and Different Testimony Cited by Plaintiffs ................................................. 2

         1.      Mr. Schnackenberg ........................................ 3

         2.      Ms. Donnelly .................................................. 5

         3.      Ms. Sommer ..................................................... 5

         4.      Mr. Nicholas ................................................... 6

     C.      The Four Recanted Declarations Should Be Stricken .......................... 7

III.   CONCLUSION ............................................................... 8

1

<u>**TABLE OF AUTHORITIES**</u>                                    <u>**Page**</u>

2

**Cases**

3

*Evans v. IAC/Interactive Corp.*,
       244 F.R.D. 568 (C.D. Cal. 2007) ....................................................................8

4

5

*Kennedy v. Allied Mutual Ins. Co.*,
       952 F.2d 262 (9th Cir. 1991) .........................................................................7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION

Plaintiffs realize that they cannot rehabilitate their witnesses nor save their declarations after each made a complete about-face on crucial issues during their subsequent depositions.  So, plaintiffs attempt to avoid those issues – which are clearly identified by defendants' motion to strike – and instead plaintiffs argue <u>other</u> more general issues with much irrelevant detail and boldface font.  The end result is a masterful job of muddying the water, but when it clears, plaintiffs' four declarations must be stricken.

# II.   DISCUSSION

## A.   <u>Plaintiffs Do Not Even Address the Fatal Defects of the Declarations, and Instead Attempt to Create a Different, Confusing, and Irrelevant Record</u>

In their moving papers, defendants specifically identified each material statement made in their declarations by four former TU employees (all represented by plaintiffs' counsel).  Defendants then compared their exactly corresponding deposition testimony obtained one month later on each of the <u>same</u> points.  As shown in the moving papers, the deposition questions were <u>open-ended, fair</u>, and gave each witness the opportunity to provide the factual basis for each material statement in his or her declaration.

As is also shown in the moving papers, each of the declarants responded by <u>conceding</u> that the material statements in their declarations either were "not true," or were "baseless," or were written by plaintiffs' counsel and "not their words," or were not based on information within their personal knowledge, or all of the above.  These simple and undeniable facts were shown by direct quotation of their actual testimony.

Faced with this clear and dispositive record, plaintiffs chose to ignore it, and to manufacture a different but irrelevant record designed to confuse the issues and mislead the Court.  Plaintiffs' deliberate attempt to obfuscate is immediately apparent in the four "tables" of carefully manipulated testimony they include within their opposition.

First, plaintiffs changed the order of the witnesses and their respective tables to make it difficult for the Court to compare their testimony cited in the moving and reply papers.  Next, the tables themselves are virtually incomprehensible in format and content: plaintiffs pepper argument within selected testimony; include only partial quotes; bold some text while minimizing or excluding other text; and frequently cite different testimony on different topics that is not even responsive to the issue supposedly addressed in the tables.  Finally, the tables do not "line up" at all with the issues and pertinent testimony cited in the moving papers.

But the worst failing of the tables, and of all plaintiffs' argument surrounding and within them, is that they basically address other issues – and non-issues – than the material issues addressed in the motion to strike.

As just one example, the Sommer declaration accused TU of – among many other things – ███████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████ Ms. Sommer's deposition testimony then specifically recanted every one of those accusations, and many others as well.  Plaintiffs' response?  Citation to snippets of other Sommer testimony critical of TU on other issues – many minor and subjective – and discussion of Ms. Sommer's military reservist duties, which supposedly caused her to be fired by TU.

In short, in their moving papers, defendants focused on the material statements in the declarations, and on the deposition testimony directly to the contrary.  In their opposition, plaintiffs focused on everything and anything else.

**B.   Testimony Specifically Recanting the Declarations Is Not Overcome by Other, More General, and Different Testimony Cited by Plaintiffs**

The goal of plaintiffs' opposing papers is to rehabilitate the four witnesses and their declarations.  The prior discussion has shown plaintiffs' general approach to achieve that goal, namely ignoring the witnesses' probative but fatal testimony, and

focusing instead on the witnesses' helpful but immaterial testimony.  The following discussion will show some of the more flagrant examples of that approach for each of the four witnesses.  The point is that none of the witnesses could be rehabilitated on any material issue.

### 1.   Mr. Schnackenberg

Plaintiffs' <u>key</u> argument for class certification is that TU was "a fraudulent scheme designed to prey on the elderly and uneducated."  (Plf. Moving Papers, pp. 3, 5, 20 and 22.)  This was the <u>centerpiece</u> of plaintiffs' moving papers.  Plaintiffs' <u>only</u> "support" for this argument came from former TU employee Ronald Schnackenberg, whom they quoted at the outset of their brief and made <u>the</u> focus of their motion for certification.  Yet, in his deposition taken just one month later, Mr. Schnackenberg completely took it back.  He actually testified that ███████████████████ ██████████████████  (Def. MTS Ex. **2(a)**, p. 112:4-13), ██████████████████ (Def. MTS Ex. **2(g)**, p. 175:15-21), ████████████████████████████ ████████████████████ ██ ████████████████████████ ██ ██ ████████████████████████ ██ ██ (Def. MTS Ex. **2(a)**, p. 112:4-13.)

Plaintiffs' reply?  Plaintiffs cite to <u>different</u> testimony in order to make <u>different</u> arguments.  For example, plaintiffs now argue that TU somehow did not live up to <u>Mr. Schnackenberg's personal "ethics."</u>  (Pltf. Oppo. MTS, p. 17:22.)  But even that argument is not supported by Mr. Schnackenberg's testimony.  He actually testified ████████████████ ██ ██████████████████████ / / /

3

(Def. MTS, Ex. **2(a)**, p. 100:14-24)

Putting aside for a moment that Mr. Schnackenberg's <u>personal</u> ethics are undefined and amorphous, it is also completely <u>irrelevant</u> whether TU did or did not satisfy Mr. Schnackenberg's personal ethics.  This is especially true after he confirmed that TU <u>never</u> did <u>anything</u> unethical even by his standards.  Plaintiffs allege – and seek class certification – on the basis that TU was a "fraudulent scheme." Obviously there is no claim in the lawsuit – and TU cannot be liable – for breaching <u>Mr. Schnackenberg's</u> <u>personal ethics</u>, whatever they may be.  Yet, the <u>only</u> witness who supposedly supports plaintiffs' fundamental theory that TU was a "fraudulent scheme" recanted it, and admitted that he had <u>no</u> basis for it.  The bottom line is that plaintiffs have no evidentiary support for this key issue.

As another example, plaintiffs argue in their moving papers that TU unfairly took advantage of the elderly.  Mr. Schnackenberg's declaration identifies ██████ ████████████████████████████████████████████████ But, during Mr. Schnackenberg's deposition, ████████████████████████ ██████████████████████████████████████ █████████████████ Realizing that he had no support for his declaration, he actually admitted ████████████████████████ ██ ████████████████████████████ ████████████ ██ ████████████████████████

(Def. MTS Ex. **2(g)**, p. 175:15-21.)

As a final example, Mr. Schnackenberg stated in his declaration that TU instructors and mentors were not experienced.  But when asked during his deposition, he admitted that he did not know 65 of the 70 instructors, and of the few he did know, he thought three were experts.  In opposition to this motion, plaintiffs avoid his

testimony on point as usual, and instead argue that Mr. Schnackenberg "believed" or "understood" instructors were <u>selected</u> by third parties.  But once again, even this attempt to side-step the issue is not supported.  Mr. Schnackenberg testified that he had <u>no</u> personal knowledge about the <u>selection</u> of instructors <u>either</u>.  To the contrary, he admitted that 97% of the instructors and mentors either were unknown to him, or he considered them to be experts.

### 2.   <u>Ms. Donnelly</u>

Former TU employee Cheryl Donnelly stated in her declaration that ██████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ (Def. MTS Ex. **8(a)**, p. 43:19-23).

Plaintiffs' response?  Plaintiffs cite to <u>different</u> testimony by Ms. Donnelly on an <u>unrelated</u> topic, namely that Ms. Donnelly "had difficulty locating students who made $100,000 or more."  The cited testimony relied on by plaintiffs is completely non-responsive on the key issue presented by the Donnelly declaration, to say nothing of her recantation of that declaration.

Even Ms. Donnelly's new and irrelevant testimony cited by plaintiffs does not help them.  Ms. Donnelly admitted that ██████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ (Def. Ex. **23**.)  The key point of this example, however, is that the cited testimony and argument by plaintiffs in their opposition have <u>nothing</u> to do with the material issue of purportedly misleading student testimonials.

### 3.   <u>Ms. Sommer</u>

Plaintiffs do the exact same thing with Ms. Sommer.  She was already discussed above as having recanted a string of key claims by plaintiffs, who responded by trying to show she was fired by TU for being a military reservist.

1     As another similarly egregious example, Ms. Sommer stated in her declaration

2 that ██████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████  (Def. MTS Ex. **4(g)**, p. 76:5-18.)  Instead, plaintiffs argue

8 that Ms. Sommer heard someone else at TU tell other people to increase their credit

9 limit – yet another "fact' and argument with no support in Ms. Sommer's actual

10 testimony.

11     **4.**    <u>**Mr. Nicholas**</u>

12     Mr. Nicholas' sole job during his five-month employment at TU was to set

13 appointments for the Program Director at the call center in New York.  He never

14 attended a single live event.  He never sold a single TU program on the phone or

15 anywhere else.  He was a "setter," and by his own admission, he was required to use

16 the two-page "Setter's Script" word for word – a purely administrative scheduling

17 spiel which is not the basis of any of plaintiffs' claims.

18     Nevertheless, despite his very limited exposure to TU, plaintiffs had

19 Mr. Nicholas sign a declaration with many broad accusations against TU.  Then, in his

20 deposition, Mr. Nicholas admitted he had no basis for the statements, and no personal

21 knowledge.  This is not surprising testimony because even a cursory peel back of the

22 proverbial "onion" reveals that he had no basis for his statements.

23     For example, Mr. Nicholas stated in his declaration that ███████████

24 ██████████████████  Mr. Nicholas then admitted in deposition that he had no basis

25 for the statement because he never attended or witnessed a single live event – ever.

26 He personally <u>met</u> only one instructor (out of 75) and personally knew nothing about

27 / / /

28 / / /

that one or any of the other 74.[1]  As another example, Mr. Nicholas admitted in his deposition that he "had no idea" of Mr. Trump's involvement with TU.  Plaintiffs' response?  Plaintiffs cite testimony that Mr. Nicholas only met Mr. Trump in person one time.  Again, the cited testimony is completely unresponsive.

As a final example, Mr. Nicholas admitted in his deposition that ███████████ ████████████████████████████████████████████ (Def. MTS Ex. **6(g)**.) Plaintiffs' response?  Plaintiffs cite testimony that Mr. Nicholas <u>read</u> anonymous negative feedback posted on the Internet about TU student results.

## C.   <u>The Four Recanted Declarations Should Be Stricken</u>

Plaintiffs attempt to salvage some value out of their four declarations by arguing that any defects go to "weight," and so the declarations should not be stricken even if they are contradicted by deposition testimony.  Plaintiffs further argue that even weighing the declarations in the class certification context may not be proper – which makes one wonder why plaintiffs submitted the declarations at all.  Plaintiffs' goal seems to be to keep the declarations in the record, regardless of their lack of probative value, or even veracity.

Defendants recognize that striking declarations in the class certification context is an unusual remedy, but it remains a lawful one available to the Court in the proper circumstances.  As already pointed out in the moving papers for this motion, the Ninth Circuit has recognized that where a declaration directly contradicts deposition testimony, that declaration is determined to be a "sham" and the District Court may strike it. *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991).

---

[1]      Ironically, the witnesses represented by plaintiffs' counsel cannot even agree on the issue.  Mr. Nicholas opined that ████████████████████████████████ ████████████  Yet, <u>plaintiffs'</u> client and former TU event coordinator, Ms. Sommer, testified that ████████████████████████████████████████████████████ ████████████████████████████

(Def. MTS Ex. **4(b)**, p. 247:12-19)

As also pointed out in the moving papers, this principle has been applied by the district courts to disregard portions of "sham" declarations filed in support of motions for class certification, and ultimately to deny certification for that reason among others.  *See Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 571 (C.D. Cal. 2007).  In *Evans*, plaintiffs' counsel submitted "copied and pasted" declarations of potential class representatives "with numerous and substantial discrepancies" in support of a motion for class certification.  *Id*. at 571.  The declarations included statements that "were either admittedly false," or "were simply made up by the declarant," or for which the declarants "lacked actual knowledge."  *Id*. at 578.

Defendants respectfully submit that is exactly the situation here.  Plaintiffs' opposing papers argue that a specific finding of "sham declarations" by the Court is required for this case to fall under *Evans*, and for this Court to strike the declarations here.  Defendants respond that these four declarations are "sham" in all <u>material</u> respects.

### III.   <u>CONCLUSION</u>

Defendants respectfully request that the court strike plaintiffs' four TU ex-employee declarations of Mr. Schnackenberg, Ms. Donnelly, Ms. Sommer, and Mr. Nicholas.  Those declarations were completely recanted by the declarants in all material respects and are not worthy of belief.

Dated:    April 25. 2013                    YUNKER & SCHNEIDER


                                            By:    ___s/David K. Schneider___
                                            Attorneys for Defendant
                                            TRUMP UNIVERSITY, LLC and
                                            DONALD J. TRUMP
                                            Email:  dks@vslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 26, 2013.

                                   s/David K. Schneider
                                   DAVID K. SCHNEIDER

                                   YUNKER & SCHNEIDER
                                   655 West Broadway, Suite 1400
                                   San Diego, CA  92101
                                   Tel:    (619) 233-5500
                                   Fax:    (619) 233-5535

                                   Email: dks@yslaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)