David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535
Email:  dks@yslaw.com

Attorneys for Defendants TRUMP UNIVERSITY, LLC and DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative, LLC, a New York Limited Liability Company, DONALD J. TRUMP, and DOES 2 through 50, inclusive,<br><br>Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS. | Case No. 10 CV 0940 GPC (WVG)<br><br>CLASS ACTION<br><br>DEFENDANTS' REPLY SUPPORTING OBJECTIONS TO EVIDENCE IN PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br>DATE: 6/28/13<br>TIME:  1:30 p.m.<br>CTRM: 2D |

**TABLE OF CONTENTS**         **Page**

I. INTRODUCTION ................................................................................................1

II. DISCUSSION ......................................................................................................1

    A. A Motion for Class Certification Must Be Decided on the Actual Evidence – Whether or Not It Is Admissible – and Not On Misstated Non-Evidence ..................................................................1

    B. Plaintiffs' Responses to 19 Objections Do Not Save Their "Evidence" ..............................................................................................3

        1. The Playbook (Objections Nos. 10 and 12) ...............................3

        2. PowerPoints (Objection No. 15) .................................................4

        3. Scripts (Objections Nos. 16-17) ..................................................5

        4. Advertisements (Objection No. 24) ............................................7

        5. Donald Trump's Involvement (Objections Nos. 2, 6, 19, 21, & 22-23) ...................................................................................7

        6. Student Financials .......................................................................8

        7. Refunds (Objection No. 14) ........................................................8

        8. Speakers and Mentors – Experts (Objections Nos. 18, 25, and 26) ............................................................................................9

        9. One Year of Unlimited Mentoring (Objections Nos. 27-28) ...............................................................................................10

    C. Plaintiffs Do Not Respond At All to 16 Objections ..........................10

III. CONCLUSION .................................................................................................10

**TABLE OF AUTHORITIES** **Page**

**Cases**

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970, 980 (9th Cir. 2011) ................................................................................. 2

*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147, 161 (1982) .............................................................................................. 2

*Gonzalez v. Millard Mall Services, Inc.*,
    281 F.R.D. 455 (S.D. Cal. 2012) ............................................................................... 1, 2

*Wal-Mart Stores, Inc. v. Dukes*,
    __ U.S. __; 131 S. Ct. 2541, 2551-52 (2011) 2

**Rules**

Rule 23 ................................................................................................................................. 2

Rule 23(a) ............................................................................................................................. 2

## I. INTRODUCTION

Plaintiffs confuse "inadmissible" evidence with no evidence, or misstated evidence, or even fabricated evidence. Defendants agree that the Court can consider for class certification credible evidence that may otherwise be inadmissible at trial. However, that liberal rule is not a license for plaintiffs to create, misstate, or overstate purported "facts" and call them "evidence."

After three years of litigation, plaintiffs presumably are well aware of the actual evidence – including key evidence only recently obtained by defendants from them with the assistance of the Court. Nevertheless, plaintiffs continually ignore the facts established by that record. Plaintiffs instead rely on the complexity and volume of that record to misstate it, and to test defendants' and the Court's ability to catch and correct their misstatements. That is a painstaking task, but essential here.

In their objections, defendants identified 33 of the most egregious examples of plaintiffs misstating the factual record for class certification in their moving papers.[1] Plaintiffs responded by arguing that the "evidentiary standard on class certification" does not allow for such objections, and by arguing the "merits" of only 17 objections. This reply will first address the applicable law, then refute plaintiffs' 17 "merits" arguments, and finally request that those 17 objections, plus the remaining 16 objections – which plaintiffs basically left substantively unopposed – be sustained.

## II. DISCUSSION

**A. A Motion for Class Certification Must Be Decided on the Actual Evidence – Whether or Not It Is Admissible – and Not On Misstated Non-Evidence**

Defendants' Memorandum opposing class certification cited *Gonzalez v. Millard Mall Services, Inc.*, 281 F.R.D. 455 (S.D. Cal. 2012) as authority for the Court to consider over 10,000 written evaluations of TU by its students when ruling on

---

[1] Plaintiffs did the same thing in their Reply papers for the certification motion, and defendants concurrently filed a Motion to Strike with objections to the purported "evidence" plaintiffs submitted with those Reply papers as well.

certification. In *Gonzalez*, Judge Battaglia ruled that the court could consider 112 questionnaire responses of putative class members despite defense objections that none were signed under penalty of perjury, and some were not translated into English. *Id*. at 459-60. The rationale was that: "[a]t this stage of preliminary proceedings, the Court need not require strict adherence to the Federal Rules of Evidence." *Id.*

Plaintiffs seized on the *Gonzalez* case to support their opposition to defendants' objections to their evidence, arguing that the objections "are improper and should be overruled." However, nothing in *Gonzalez* allows <u>misstating</u> or <u>inventing</u> purported "evidence," or bars objecting to such improprieties. *Gonzalez* merely holds that the strict rules of evidence may be relaxed in the class certification context. It is not authority for relaxing the strict rules of honesty and professional duty.

Moreover, relaxation of the strict rules of evidence does not make the class certification analysis any less rigorous when the Court considers that evidence. To the contrary, the binding authority of the Ninth Circuit and the United States Supreme Court requires a "rigorous analysis of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements." *Ellis v. Costco Wholesale Corp*. 657 F.3d 970, 980 (9th Cir. 2011), *citing Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

That "rigorous analysis" specifically includes the determination of "common questions of law or fact." *Ellis v. Costco Wholesale Corp*., 657 F.3d at 980. Recent guidance by the U.S. Supreme Court on that determination is as follows: "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __; 131 S. Ct. 2541, 2551-52 (2011) (emphasis in original).

In short, the Court must make a "rigorous analysis" of the evidence to the extent it is necessary to determine whether plaintiffs have met their burden under Rule 23.

False, misstated, exaggerated, immaterial, and missing "evidence" will not suffice. When such purported "evidence" is offered to the Court, objections are perfectly proper and should be sustained.

**B.   Plaintiffs' Responses to 19 Objections Do Not Save Their "Evidence"**

   **1.   The Playbook (Objections Nos. 10 and 12)**

Plaintiffs continue to argue that the 2010 Playbook was the operative manual that all instructors and mentors used.[2] However, plaintiffs completely ignore the actual evidence. Declarations from the instructors, mentors, and former employees – including ones currently represented by plaintiffs' counsel – ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (See Def. Exs. **22**b, **80-83**, **1** and **6**.)

Plaintiffs also fail to address an even bigger fallacy in their argument: there was no Playbook at all in 2006 or 2007, and the Playbooks that existed in 2008 and 2009 were both very different from "the" Playbook of 2010. The pertinent facts: there was a 28-page "sales manual" in 2007, which is very different than the 200-page 2010 Playbook. Similarly, in 2008, there was a 43-page "sales" Playbook, again very different than the 2010 Playbook. In 2009, for the first time, TU actually utilized a "Playbook." However, it had only 128 pages, and did not include about 40% of the 2010 Playbook. The main similarity between these manuals, guides, and playbooks of 2006-2009 on the one hand, and "the" Playbook of 2010 on the other hand, is that none of them contained substantive content, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (See Def. Exs. **22**(a)-(d).)

Finally, plaintiffs also fail to address the biggest fallacy in their argument, namely, that they cannot identify a single purported misrepresentation in any of these

---

[2]   Plaintiffs completely ignore and avoid an obvious problem in their reasoning: The 2010 Playbook was not created until 2010. How can purchasers of TU programs in 2007, 2008 and 2009 be subjects of a purported "scheme" embodied in a Playbook that appeared for the first time in 2010?

various manuals, guides, and playbooks – even in the 2010 version which they now claim is "the" central document of their entire case. In short, even if "the" Playbook had existed in 2006-2010, and even if it had been used by every TU instructor and mentor throughout that time, it still would not be evidence supporting certification.

Plaintiffs filed a 35-page opening brief, a reply, an opposition to this motion, and 140 exhibits, yet plaintiffs still cannot identify a single misrepresentation in any of the various manuals, guides and playbooks.[3] Nowhere do plaintiffs identify the purported "orchestrated scheme" in any of the manuals, guides and playbooks. In fact, plaintiffs offer no evidence that the instructors and presenters actually ever saw or used any "Playbook."

Moreover, plaintiffs offered no evidence that opposes – or even addresses – the numerous declarations and testimony from former instructors, presenters, and mentors submitted by defendants ▓▓▓▓▓▓▓▓▓▓▓ The same is true of many witnesses represented by plaintiffs' counsel, including former TU employees who worked as a sales person, a setter, a marketing assistant, and an event coordinator. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓ (See Def. Exs. **22**(b), ¶6; **80**, p. 54:5-7; **81**, pp.117:20-118:8; **82**, p. 57:8-10; **83**, p. 305:8-15; **1**, ¶¶17-18; and **6**, ¶7.)

**2.   PowerPoints (Objection No. 15)**

Plaintiffs continue to argue that TU had an "official" PowerPoint, now belatedly identified as Plaintiffs' Exhibit 86. However, once again, plaintiffs ignore the actual evidence in the case. Defendants submitted nine TU PowerPoints, and all are different from each other, and from plaintiffs' Exhibit 86, and therefore they all confirm that there was no "official" PowerPoint. (Def. Ex. **39**.)

---

[3]   Plaintiffs also took more than five days of deposition testimony of founder and President Michael Sexton, COO David Highbloom, Director of Operations Mark Covais, Donald Trump and counsel George Sorial, yet plaintiffs cite no testimony from any of them even hinting – let alone supporting – any orchestrated scheme.

This exact point is further confirmed by <u>plaintiffs'</u> own submissions.  Plaintiffs submitted <u>four different TU PowerPoints</u> (Plaintiffs' Exhibits **40, 41, 47** and **49**) used for the <u>same</u> free 90-minute program, but they are all <u>very different</u>.  Thus, the Court now has 13 <u>different</u> PowerPoints, and there are dozens more already produced in this case by TU.  Even a cursory review will confirm that they are completely <u>different</u>.

Moreover, <u>even if</u> every PowerPoint was identical, plaintiffs have failed to identify even a single purported misrepresentation in any of the 13 PowerPoints offered as exhibits by both sides.  The same obviously is true of the <u>dozens</u> of other PowerPoints produced in the case but not submitted to the Court by plaintiffs.

Plaintiffs argue that the "Rules of Engagement" required that slides added to PowerPoint presentations must be approved.  Plaintiffs miss the point entirely. Defendants do not contend that presenters "went rogue" and taught unauthorized real estate techniques.  The point – and <u>undisputed evidence</u> – is that the presentations were all <u>different</u> – and not just stylistically.  The only <u>evidence</u> before the Court is that instructors and mentors used <u>different</u> slides, they taught <u>different</u> techniques, they used <u>different</u> approaches, and each program and presentation was <u>different</u>.

For example, <u>plaintiffs'</u> own witness, former TU events coordinator Ms. Sommer, ███████████████████████████████████████ ████████████████████████ (Def. MTS Ex. **4**(h), p. 280:2-12.) █████████ ████████████████████████████████████████████ Likewise, former President Sexton testified ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

### 3. Scripts (Objections Nos. 16-17)

Plaintiffs' entire case is built on the erroneous premise that TU instructors and mentors used a "script" that they followed "word-for-word" so that every presentation was identical – and hence filled with identical misrepresentations.  However, plaintiffs

1  did not include the purported "script" in their moving papers – supposedly the key
2  document in their entire case.  The reason:  there never was a script.

3  Instead, in opposition to the objections, plaintiffs identified a 3-line "welcoming
4  speech" contained in the 2010 Playbook only, which purportedly introduced speakers.
5  There is no evidence that even the 3-line welcoming speech was ever used by anyone,
6  and the 2007, 2008 and 2009 manuals and "playbooks" include no such welcoming
7  speech.  This means that plaintiffs' "evidence" that the TU 3-day workshop was an
8  orchestrated scheme of identical misrepresentations actually comes down to a three-
9  line welcoming speech that was never used before 2010 and possibly never thereafter.

10  The evolution of plaintiffs' "script" non-evidence did not end there.  Instead,
11  after many, many months of disputed discovery requests in which defendants sought
12  production of the purported "scripts," and after Magistrate Gallo twice ordered that
13  plaintiffs produce at least one example of a "script" (or admit there was none),
14  plaintiffs finally conceded that there was no such script.  Instead, plaintiffs now claim
15  that "**the script**" was a PowerPoint they submitted for the first time as Exhibit 86 with
16  their Reply papers.  However, the differences among the many PowerPoints just
17  discussed above means that Exhibit 86 cannot be evidence of "**the script**," and
18  moreover the briefest review of the document shows that it is not a "script" at all.

19  In fact, the only actual evidence submitted to the Court concerning "scripts" is
20  that TU instructors, speakers, and mentors never used scripts (Def. Exs. **1**, **90-94**, **22**a-
21  d, **95** and **96**).  The only "script" ever used was by a scheduler at the TU call-in center
22  (Def. Exs. **1**, ¶¶17-18; **90**, pp. 512:17-514:20; **96**, pp. 47:16-23, p. 48:25.), and it
23  contains no purported misrepresentations.  Moreover, the call-in center only
24  communicated with a fraction of potential TU students, and not one of the six named
25  plaintiffs ever even spoke with the call center.  Consequently, if the Court accepts
26  plaintiffs' evidence of the scheduling "script" as being class-wide proof of some
27  fraud, then the six named plaintiffs are not "typical" of the class, and the class is a
28  fraction of what plaintiffs alleged.

### 4. Advertisements (Objection No. 24)

Plaintiffs completely misrepresent this "evidence" to the Court. Plaintiffs' purported "evidence" that "uniform advertisements were placed" is the deposition testimony of former TU CEO Mr. Sexton. In fact, the actual evidence is that Mr. Sexton testified ████████████████████████████████████ ████████████████████████████

Mr. Sexton actually testified ████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ The actual evidence on this key issue can be found in Def. Exs. **1**, **107-109** and **43**.

### 5. Donald Trump's Involvement (Objections Nos. 2, 6, 19, 21, & 22-23)[4]

Again, plaintiffs misrepresent the pertinent evidence to the Court. They say that "nowhere in the interrogatory responses" is it stated that Mr. Trump selected faculty members' resumes. That is true, but he was never asked by any interrogatory if he selected resumes. The actual evidence of Mr. Trump's selection of faculty resumes is his deposition testimony (Def. Ex. **72**) in which he confirmed that exact point.

Plaintiffs' opposition now raises an entirely new and different theory. For three years, plaintiffs have argued that TU promised to teach Mr. Trump's secrets. Now, plaintiffs argue that TU instructors failed to teach the secrets of advisors to

---

[4] Plaintiffs list Objection Nos. 19 and 23 in Section E under the heading "Trump's involvement." Objection No. 19 actually addressed the unsupported allegation of "copycat workshops," and Objection No. 23 addressed the unsupported allegation that speakers were "high-pressure, front-end salesmen." Neither concerned Mr. Trump's involvement. Plaintiffs provided no substantive response to either of these objections, and the Court should sustain them as well.

Mr. Trump: TU instructors supposedly were to "advise [TU students] as they had advised Donald Trump to make his millions." (Oppo. p. 7:5-7.) This basic shift in plaintiffs' case demonstrates that plaintiffs' "evidence" is as malleable as their claims.

Similarly, in multiple pleadings, plaintiffs allege that Mr. Trump is "liable due to his active involvement" with TU. Plaintiffs do not dispute his role in development of the curriculum, the concept of experiential learning, the philosophy of TU, etc. Instead, plaintiffs shift theories once again to argue that he was <u>not involved enough</u> in the "live events." However, there is no <u>evidence</u> that Mr. Trump or TU ever represented that Mr. Trump would personally teach or even attend live events.

Plaintiffs' argument that defendants failed to present evidence that Mr. Trump selected instructors and presenters is false. (See Def. Exs.**103**, p. 52:19-54; pp. 59:9-60:6; **4**, Supplemental Response to Interrogatory No. 10; **1**, ¶¶4-6.) These exhibits confirm that Mr. Trump personally spoke with and selected many of the instructors, including Professors Sexton and Kaplan of Columbia University, Professor Eldred of Stanford University and Wealth Specialist J.J. Childers. Dr. Eldred taught and mentored many students, and Mr. Childers even taught lead plaintiff Makaeff herself.

**6.     Student Financials**

Plaintiffs contend that TU engaged in improper conduct by: (1) determining whether students could afford certain TU programs; and (2) meeting some students (who wanted to meet) to discuss potential real estate options and strategies available based on resources, market conditions, ability, etc. However, plaintiffs fail to show that TU did <u>anything</u> improper by meeting with students to discuss their financial backgrounds. Plaintiffs also overlook that any information provided by students was <u>completely</u> voluntary. (See Def. Exs. **1**, ¶10 and **86**, p. 164:5-14.)

**7.     Refunds (Objection No. 14)**

Defendants objected to plaintiffs' erroneous and unsupported statement that TU students could not receive refunds after the first day of the 3-day introductory seminar.
/ / /

1  The actual evidence on the point (Def. Exs. **87**, **1**, **88** and **6**) confirms that many
2  students got later refunds, and is not even addressed by plaintiffs.
3     Instead, plaintiffs attempt to use this non-issue as an opportunity to smear TU
4  for taking too long to make a refund to <u>one</u> student. Defendants agree that the refund
5  for this <u>one</u> student took too long, but the student did get the refund. Moreover, the
6  fact that one student's refund was unreasonably delayed is not "evidence" that
7  students could not receive refunds after the first day of the introductory seminar.
8  Indeed, that fact is evidence to the contrary. Defendants provided full refunds to more
9  than 2,300 students, including many outside the usual refund period.[5] Plaintiffs ignore
10 this evidence, and instead address <u>one</u> late refund which is no help to their case.
11     **8.     Speakers and Mentors – Experts (Objections Nos. 18, 25, and 26)**
12     Plaintiffs' moving papers <u>argued</u> that TU faculty members were not "experts."
13 Defendants objected and provided the <u>evidence</u> of their resumes. Plaintiffs' irrelevant
14 "evidence" offered in response: TU mentor Mr. Peterson had a prior bankruptcy.
15     The actual <u>evidence</u> concerning Mr. Peterson's expertise is that ▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Def. Ex. **22**(b)).
18 In addition, TU's mentor evaluations and recent declarations ▓▓▓▓▓
19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
20 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (See Def. Exs. **14**-3539; ¶5; **14**-3547, ¶5; see
22 also Def. Ex. **12**-3243 to 3250 and 3252 to 3261.) Lead plaintiff Makaeff herself
23 stated that he was "awesome." (See Def. Ex. **27**.)

---

[5] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Def. Ex. **128**.)

### 9. One Year of Unlimited Mentoring (Objections Nos. 27-28)

Plaintiffs' moving papers completely fabricated the <u>argument</u> that TU offered "unlimited mentoring" for one year, but never provided it to TU students. Defendants objected, pointing out the <u>evidence</u> that TU actually offered a variety of programs which included a <u>three day</u> in-person mentoring, with <u>follow-up support for one year</u>.

Plaintiffs are now backpedalling, saying that they "never alleged the programs were represented as including one year of 'in-person' mentoring." Instead, plaintiffs cite TU documents referring to "direct access," "ongoing support," "year-long mentor access," and "one full year of mentorship and support" as supposedly misleading. But that was not plaintiffs' previous argument that drew defendants' objection. The point is that none of TU's programs were ever represented as including "unlimited mentoring" for one year, and plaintiffs have offered no contrary evidence.

### C. <u>Plaintiffs Do Not Respond At All to 16 Objections</u>

Defendants objected to 33 of plaintiffs' most egregious examples of purported "evidence." Plaintiffs made no substantive response to 14 of the 33 objections, namely Nos. 1, 3-5, 7-9, 11, 20, and 29-33. As noted above in footnote 4, plaintiffs also provided no substantive response to Objections Nos. 19 or 23 either. Defendants respectfully request that the Court sustain all 16 substantively unopposed objections.

### III. <u>CONCLUSION</u>

Defendants respectfully request that the Court sustain all 33 objections of defendants to plaintiffs' "evidence." None of the "evidence" under objection remotely meets the "rigorous standard" required for certification, and much of that "evidence" is simply false and misleading.

Respectfully submitted,

Dated:   April 25, 2013                    YUNKER & SCHNEIDER
                                           By:   s/David K. Schneider
                                                 Attorneys for Defendants
                                                 TRUMP UNIVERSITY, LLC and
                                                 DONALD J. TRUMP
                                                 Email:  dks@yslaw.com

CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 26, 2013.

          s/David K. Schneider
          DAVID K. SCHNEIDER

YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, CA  92101
Tel:    (619) 233-5500
Fax:    (619) 233-5535

Email: dks@yslaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)