ROBBINS GELLER RUDMAN
 & DOWD LLP
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>                              Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND OBJECTIONS TO IMPROPER EVIDENCE AND ARGUMENT IN PLAINTIFFS' CLASS CERTIFICATION REPLY PAPERS<br><br>DATE:        June 28, 2013<br>TIME:        1:30 p.m.<br>CTRM:       2D (Schwartz)<br>JUDGE:      Hon. Gonzalo P. Curiel |

**REDACTED**

850725_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.   PROCEDURAL BACKGROUND ...................................................................1

III.  ARGUMENT........................................................................................................2

    A.    Defendants' Motion to Strike Is Untimely.................................................2

    B.    Defendants' Motion to Strike and Objections to Evidence
        Constitutes an Improper Sur-reply ............................................................3

    C.    Defendants' Motion to Strike Should Be Denied as Defendants
        Have Now Taken Their Opportunity to Respond ...................................4

    D.    The Court Should Disregard Defendants' Evidentiary
        Objections at This Stage of the Proceedings...........................................7

    E.    The Court Should Disregard Defendants' Absurd Argument
        Blaming Their Regulatory Woes on a Victim of Their
        Fraudulent Scheme ......................................................................................8

    F.    Defendants Overreach by Trying to Leverage a Discovery
        Dispute About Defendants' Own Documents......................................10

        1.    Defendants' Own Personnel Contracts Show Instructors
            Were Required to Follow Scripts ...............................................12

        2.    Defendants' Own Transcribed Recordings Reveal that
            Students Were Promised One-Year or Unlimited
            Mentoring and Support ................................................................14

        3.    Plaintiffs' Class Certification Motion Does Not Rely on
            Misrepresentations Regarding Guarantees of Success.............15

    G.    Trump University's Advertising Campaign and PowerPoint
        Presentations Were Highly Standardized...............................................16

    H.    Plaintiffs' Class Certification Motion Stands on Its Own .................18

    I.    Defendants' Sur-reply Arguments Concerning Its Opposition
        Brief Should Be Disregarded ...................................................................18

IV.   CONCLUSION ..................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alonzo v. Maximus, Inc.,*
    275 F.R.D. 513 (C.D. Cal. 2011)................................................................7

*Arabian v. Sony Elecs., Inc.,*
    No. 05cv1741 WQH (NLS), 2007 U.S. Dist. LEXIS 67769
    (S.D. Cal. Sept. 13, 2007)........................................................................4

*Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,*
    215 F.3d 219 (2d Cir. 2000)......................................................................5

*Christian v. Mattel, Inc.,*
    286 F.3d 1118 (9th Cir. 2002)..............................................................1, 3

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
    No. 1:04-cv-3066-JEC, 2009 U.S. Dist. LEXIS 30937
    (N.D. Ga. Feb. 9, 2009)..........................................................................18

*Edwards v. Toys "R" Us,*
    527 F. Supp. 2d 1197 (C.D. Cal. 2007)....................................................5

*Eisen v. Carlisle and Jacquelin,*
    417 U.S. 156 (1974).................................................................................7

*Gonzalez v. Millard Mall Servs.,*
    281 F.R.D. 455 (S.D. Cal. 2012)..............................................................7

*In re E. Airport Dev.,*
    443 B.R. 823 (B.A.P. 9th Cir. 2011)........................................................5

*In re Ferrero Litig.,*
    278 F.R.D. 552 (S.D. Cal. 2011)............................................................20

*In re Flash Memory Antitrust Litigation,*
    No. C 07-0086 SBA, 2010 WL 2332081
    (N.D. Cal. June 9, 2010)...........................................................................5

*Leyva v. Medline Indus., Inc.,*
    No. 11-56849, 2013 U.S. App. LEXIS 10649
    (9th Cir. May 28, 2013)...........................................................................19

1

2                                                                                    **Page**

3   *Makaeff v. Trump Univ., LLC*,
4        No. 11-55016, 2013 U.S. App. LEXIS 7719
         (9th Cir. Apr. 17, 2013) .......................................................................10, 20
5
    *Provenz v. Miller*,
6        102 F.3d 1478 (9th Cir. 1996) ........................................................................4
7
    *Ries v. Ariz. Beverages USA, LLC*,
8        No. 10-01139 RS, 2012 U.S. Dist. LEXIS 169853
9        (N.D. Cal. Nov. 27, 2012) ............................................................................19

10  *Spencer v. Sharp*,
         487 Fed. Appx. 424 (9th Cir. 2012) ...............................................................4
11
12  *Waine-Golston v. Time Warner Entertainment-Advance/New House P'ship*,
         No. 11 cv 1057-GPB (RBB), 2012 U.S. Dist. LEXIS 179611
13       (S.D. Cal. Dec. 18, 2012) (Curiel, J.) ........................................................7, 8

14  *Y-Tex Corp. v. Schenker, Inc.*,
15       No. C10-1264 RSL, 2011 U.S. Dist. LEXIS 61267
         (W.D. Wash. June 8, 2011) ............................................................................3
16

17  **STATUTES, RULES AND REGULATIONS**

18  United States Constitution
19       First Amendment ..........................................................................................10

20  Federal Rules of Civil Procedure
         Rule 12(f)........................................................................................................2
21       Rule 12(f)(2)...................................................................................................2

22  California Civil Code
23       §1750. ...........................................................................................................18

24  California Welfare & Institutions Code
25       §15600 ..........................................................................................................18

26  California Business & Professions Code
         §17200. .........................................................................................................18
27       §17500. .........................................................................................................18

28

**Page**

Florida Statutes
   §501.201. ...................................................................................18
   §817.41. ....................................................................................18

New York General Business Law
   §349. .........................................................................................18

**SECONDARY AUTHORITIES**

Southern District of California Local Rules
   Civil Rule 7.1 ............................................................................1

1    Plaintiffs John Brown, J.R. Everett, Sonny Low, Tarla Makaeff, and Ed

2  Oberkrom (collectively, "Plaintiffs") respectfully submit this response to what is

3  tantamount to an improper sur-reply submitted by Defendants.

4  **I.     INTRODUCTION**

5    Recognizing their challenges to class certification are easily refuted, Defendants

6  filed the instant motion in an attempt to circumvent this Court's Chambers' Rules for

7  sur-replies.  Defendants object that Plaintiffs' reply brief raises "new" arguments.

8  However, Defendants' motion largely re-hashes arguments previously raised.  Further,

9  any new information raised on reply was for rebuttal purposes, which is squarely

10  permitted by Local Rule 7.1.  Notwithstanding their gamesmanship, Defendants'

11  challenges still fail to demonstrate certification is not warranted.

12    The parties have submitted more than sufficient briefing on Plaintiffs' class

13  certification motion.  "The district court has considerable latitude in managing the

14  parties' motion practice and enforcing local rules that place parameters on briefing."

15  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002).  "At some point,

16  enough is enough." *Id.*  That point has been reached.  Defendants' attempt at a second

17  bite at the apple opposing class certification should be denied.

18  **II.    PROCEDURAL BACKGROUND**

19    On September 24, 2012, Plaintiffs filed their Memorandum of Points and

20  Authorities in Support of Motion for Class Certification, Appointment of Class

21  Representatives and Appointment of Class Counsel ("Opening Mem.").  Dkt. No. 122.

22  Plaintiffs' opening papers consisted of their Memorandum of Points and Authorities,

23  Proposed Trial Plan, and supporting declarations and exhibits.  Dkt. Nos. 122-1

24  through 122-7.

25    On November 30, 2012, Defendants filed their Memorandum of Points and

26  Authorities in Opposition to Plaintiffs' Motion for Class Certification and

27  Appointment of Class Counsel ("Opp.").  In addition, Defendants also filed a Motion

28

1   to Strike Declarations of Schnackenberg, Sommer, Nicholas, and Donnelly,

2   Objections to Evidence, and other declarations and exhibits. Dkt. Nos. 137-143.

3        On February 1, 2013, Plaintiffs filed their reply papers.  Their submissions

4   consisted of their Reply Memorandum in Support of Motion for Class Certification

5   ("Reply"), Opposition to Defendants' Objections to Evidence, Plaintiffs' Response to

6   Defendants' Objections to Plaintiffs' Proposed Trial Plan, Motion to Strike

7   Defendants' Declarations, an Opposition to Defendants' Motion to Strike, and

8   supplemental declarations and evidence. Dkt. Nos. 192-198.

9        In total, pending before this Court was 275 pages of briefing, 286 exhibits and

10  8,782 pages of evidence.  As if this was not enough, on April 26, 2013, Defendants

11  filed the instant Motion to Strike and Objections to Improper Evidence and Argument

12  in Plaintiffs' Class Certification Reply Papers ("Defs' MTS"), Defendants' Opposition

13  to Plaintiffs' Motion to Strike Declarations, Defendants' Reply Memorandum in

14  Support of Motion to Strike, Defendants' Reply to Objections to Evidence,

15  supplemental declarations and additional exhibits. Dkt. Nos. 204, 210-213.  In doing

16  so, Defendants added approximately 200 pages to the already voluminous record.

17  **III.   ARGUMENT**

18       **A.   Defendants' Motion to Strike Is Untimely**

19       The Federal Rules of Civil Procedure allow the Court to strike material from a

20  pleading that it finds "redundant, immaterial, impertinent, or scandalous" or defenses

21  that it finds legally insufficient.  Fed. R. Civ. P. 12(f).  However, Rule 12(f) also

22  requires the motion to strike be filed within 21 days if no responsive pleading is

23  allowed. Fed. R. Civ. P. 12(f)(2).  Here, Defendants did not file their MTS within the

24  21-day period.  In fact, Defendants' did not serve their MTS until *84 days after* being

25  served with Plaintiffs' reply, and no responsive pleading to the reply was due.  As

26  such, Defendants' MTS is extremely untimely and in violation of the Federal Rules.

27  Having elected not to follow Fed. R. Civ. P. 12(f), Defendants' MTS should be

28  disregarded.

**B.      Defendants' Motion to Strike and Objections to Evidence Constitutes an Improper Sur-reply**

Obviously, parties are obligated to comply with all applicable rules when submitting their papers to the Court. This Court's Chambers' Rules require leave of the Court through an *ex parte* request before filing a sur-reply. *See* Hon. Gonzalo P. Curiel Chambers' Rules at 2 (Hearing Dates). ("The parties must obtain leave of Court by filing an ex parte request before filing any sur-replies."). Under the clear mandate of this Court, Defendants should have submitted an *ex parte* request to the Court for leave before filing their sur-reply, but they decided to flout this rule and call their pleading a motion to strike instead.

Notably, Defendants have had ample opportunity to be heard. Indeed, in submitting their opposition to class certification, Defendants filed a total of 74 pages of briefing (35-page opposition, 7-page motion to strike, 25-page objections to evidence, and 7-page objection to trial plan), along with 121 exhibits consisting of 6,338 pages of evidence (much of which was unnecessary and/or duplicative). Now, Defendants submit an additional 65 plus pages of briefing, including an additional 28 exhibits consisting of approximately 140 pages of evidence. Enough is enough. *Christian*, 286 F.3d at 1129.

It is clear from the arguments that Defendants are responding to Plaintiffs' reply. Defendants' misuse of the motion to strike as a sur-reply is most apparent in §C where Defendants directly respond to various arguments made on reply. *See* Defs' MTS at 13-20. The underlying purpose for Defendants' MTS is clear – to attempt to have the last word on Plaintiffs' class certification motion.

Further, Defendants' sur-reply re-hashes arguments previously made in their opposition. Sur-reply papers, even if allowed, must be narrowly confined to the issue which prompted them, not simply repeat arguments made in prior submissions. *See Y-Tex Corp. v. Schenker, Inc.*, No. C10-1264 RSL, 2011 U.S. Dist. LEXIS 61267, at *2

1 | (W.D. Wash. June 8, 2011) (denying motion to file sur-reply where Defendant
2 | repeated argument and re-hashed previously produced evidence).

3 |     The Court should deny Defendants' motion as an improper sur-reply filed
4 | without leave of Court. Alternatively, Defendants should not be permitted to file a
5 | reply in support of their MTS, as Defendants will then have a sur-sur-reply and add an
6 | unknown additional number of pages to the record.

7 |     **C.**    **Defendants' Motion to Strike Should Be Denied as**
                **Defendants Have Now Taken Their Opportunity to**
8 |                 **Respond**

9 |     Defendants contend that all new arguments and exhibits submitted on reply
10 | should be stricken if available to Plaintiffs at the time they submitted their opening
11 | brief. Defs' MTS at 2. Defendants miscomprehend the applicable standard.

12 |     At the outset, if the Court is not inclined to strike Defendants' MTS as an
13 | improper sur-reply, there is no colorable reason for the Court to strike anything in
14 | Plaintiffs' reply because Defendants have now seized their opportunity to respond.
15 | *See, e.g.*, *Arabian v. Sony Elecs., Inc.*, No. 05cv1741 WQH (NLS), 2007 U.S. Dist.
16 | LEXIS 67769, at *5-*6 & n.4 (S.D. Cal. Sept. 13, 2007) (denying as moot plaintiffs'
17 | motion to strike new arguments in defendants' reply brief because plaintiffs responded
18 | to those arguments); *Spencer v. Sharp*, 487 Fed. Appx. 424, 425 (9th Cir. 2012)
19 | (finding unpersuasive defendants' contention that court erred in considering new
20 | arguments because the court considered his sur-reply in which he addressed new
21 | arguments).

22 |     Defendants' own authorities prove no differently. For example, *Provenz v.*
23 | *Miller*, 102 F.3d 1478 (9th Cir. 1996) – which involved a motion for summary
24 | judgment, not a motion for class certification – only held it was error to refuse to
25 | consider the plaintiff's supplemental declaration filed in response to new evidence
26 | submitted on reply. *Id.* at 1483. In other words, the error was not submission of new
27 | evidence on reply, but the deprivation of the opportunity to respond. Here, as
28 | aforementioned, Defendants have responded.

Further, Defendants' reliance on dicta in *In re Flash Memory Antitrust Litigation*, No. C 07-0086 SBA, 2010 WL 2332081, at *15 (N.D. Cal. June 9, 2010), is not persuasive.   Defendants fail to acknowledge that even though the court admonished plaintiffs for submitting certain of their expert's opinions with their reply, the court nevertheless considered plaintiffs' expert reply declaration in evaluating the relevant issues at hand.  *Id.*

Here, Plaintiffs' exhibits do not constitute new evidence.  They touch upon the exact issues that were addressed in Plaintiffs' opening papers.  *See, e.g.*, *In re E. Airport Dev.*, 443 B.R. 823, 829 (B.A.P. 9th Cir. 2011) (email not new evidence where it touched upon the agreement that formed the basis for the motion).  There is a reason why parties are permitted a reply brief – precisely to respond to the other side's opposition.  If Defendants questioned Plaintiffs' initial proposition, as they did here, Plaintiffs are afforded an opportunity to present additional evidence or argument on reply.  *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) ("reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party"); *see also Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1205 (C.D. Cal. 2007)[1] ("Evidence is not 'new,' however, if it is submitted in direct response to proof adduced in opposition to a new motion.").

For example, Defendants' opposition argued that Plaintiffs exaggerated the investigations of the state attorneys general, the New York State Education Department ("NYSED"), and the Better Business Bureau ("BBB").  Opp. at 15.  In their reply, Plaintiffs rebutted this argument by offering argument and evidence that shows Plaintiffs are really not exaggerating.  Plaintiffs submitted documents recently provided by the NYSED showing that the NYSED advised Defendants *in 2005* that

---

[1]   Unless otherwise noted, citations are omitted and emphasis is added, here and throughout.

1  their use of the term "University" was illegal.  Ex. 68;[2] *see also* Ex. 138, NYSED

2  000106-07 (2005 letter recently produced by the NYSED). ████████████

3  ████████████████████████████████████ Ex. 73.  These

4  arguments and evidence were presented to rebut Defendants' claim of exaggeration

5  raised in their opposition.  This is exactly what a reply is supposed to do.

6         In another example, Defendants' opposition raised their purported approval

7  rating based upon certain student evaluation forms.  Opp. at 1, 6-8.  Rebutting

8  Defendants' argument in their reply, Plaintiffs showed that Defendants' numbers do

9  not add up – not even close.  Reply at 17-19.  The arguments and evidence were

10  provided to rebut and respond to one of Defendants' defenses.  This was an entirely

11  proper use of Plaintiffs' reply.

12         Moreover, a number of the documents submitted as exhibits on reply were not

13  produced to Plaintiffs until after Plaintiffs submitted their opening brief on September

14  24, 2012.  For example, Defendants' did not produce Exhibits 70, 73, 75, 76, 77 and

15  84 until after Plaintiffs filed their motion for class certification.  Moreover, third

16  parties produced additional documents after September 24, 2012, as recently as last

17  month.

18         Indeed, in their opening brief in support of their motion for class certification,

19  Plaintiffs noted that the parties were still producing relevant documents and expressly

20  reserved their rights to cite additional evidence on reply.  *See* Opening Mem. at 4 n.6.

21  In fact, Defendants are still producing documents to this day and have notified

22  Plaintiffs that they are going to continue to do so on a rolling basis.  There should be

23  no surprise, then, that Plaintiffs cited new documents with their reply.

---

[2]  Here, and throughout, unless otherwise noted, references to Exhibits 1-66 are to the Declaration of Amber L. Eck (Dkt. No. 122-2) in support of Plaintiffs' motion for class certification, references to Exhibits 67-137 are to the Declaration of Rachel L. Jensen (Dkt. No. 195-1) in support of Plaintiffs' reply, and references to Exhibits 138-144 are to the Declaration of Rachel L. Jensen in support of Plaintiffs' opposition to Defendants' MTS.

Finally, Defendants' requested relief is not sufficiently tailored to the issue that they raise. Defendants ask the Court to strike all 71 exhibits without regard to whether they were submitted in response to Defendants' arguments or even produced after the date on which Plaintiffs filed their motion for class certification. Defendants' motion to strike should be denied.

**D.   The Court Should Disregard Defendants' Evidentiary Objections at This Stage of the Proceedings**

Defendants also lodge a number of evidentiary objections, asking the Court to either sustain or overrule their objections. Setting aside that they are baseless, Defendants' objections are also inappropriate at this stage of the proceedings.

Indeed, this Court has previously declined such objections:

> Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. . . . At the class certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." Therefore, the Court may consider inadmissible evidence at the class certification stage. "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]."

> Here, Plaintiffs present evidentiary objections to evidence submitted by Defendant in support of its opposition to Plaintiffs' motion for class certification. At this stage of preliminary proceedings, the Court need not require strict adherence to the Federal Rules of Evidence. Accordingly, the Court overrules Plaintiffs' evidentiary objections.

*Waine-Golston v. Time Warner Entertainment-Advance/New House P'ship*, No. 11 cv 1057-GPB (RBB), 2012 U.S. Dist. LEXIS 179611, at *23 (S.D. Cal. Dec. 18, 2012) (Curiel, J.) (citing, *inter alia*, *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974)); *see also Gonzalez v. Millard Mall Servs.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012) ("[t]he court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]") (quoting *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011)).

1    Consistent with this Court's prior ruling in *Waine-Golston* and other courts

2    declining to rule on the admissibility of non-expert evidence at the class certification

3    stage, Defendants' evidentiary objections should be overruled.

4    **E.     The Court Should Disregard Defendants' Absurd**
         **Argument Blaming Their Regulatory Woes on a Victim of**
5        **Their Fraudulent Scheme**

6    Defendants proffer a number of illogical and inconsistent arguments in their

7    MTS, but none reveals their lack of credibility more than their argument that their

8    regulatory woes across the country were masterminded by a lone consumer, Plaintiff

9    Tarla Makaeff. Not only is this argument preposterous on its face, as it purports to

10   give Ms. Makaeff far more power and influence over government regulators than is

11   even remotely plausible, it is also beyond the realm of possibility because Defendants'

12   regulatory woes pre-date the enrollment of any class member, much less Ms. Makaeff.

13   As previously pointed out, in 2005, Defendants were notified by the NYSED

14   that their use of the title "University" without proper licensing was illegal. Ex. 68 &

15   Ex. 138, NYSED 000106-07. In a letter dated May 27, 2005, that Plaintiffs only

16   recently obtained from the NYSED, and which Defendants have never produced either

17   in its original form or as an attachment to a 2010 letter from the NYSED, Joseph Frey

18   of the NYSED informed Defendants: "After reviewing the information included on

19   your Web site about the purpose and operation of 'Trump University,' and based on

20   the relevant laws and regulations cited above, I must ask you to discontinue the use of

21   the name, 'Trump University.'" *Id.* The probe by the NYSED only ended at that time

22   because on June 28, 2005, Defendants told the NYSED they had set up an office in

23   Dover, Delaware and would no longer operate out of New York. Ex. 139, NYSED

24   000100. This was a lie. ███████████████████████████████

25   ███████████████████████████████████████████████

26   ███████████████████████████████████████   *See*

27   Ex. 140, TU 137770.

28

1     It was only after dozens of new complaints rolled in (many pre-dating Ms.

2   Makaeff's) that the NYSED found out that Trump University was still illegally

3   operating out of New York and again directed Defendants to discontinue the use of the

4   name "Trump University." Ex. 68. Then, on June 15, 2010, state regulators told

5   Trump University that "[a]ll current students should be refunded" and that "[f]ailure to

6   comply with the Education Law may result in disciplinary action." *Id.* at NYSED

7   000067-68. Nevertheless, Defendants still disregarded these warnings. ████████

8   ███████████████████████████████████████████████████████

9   ████████████████████████ Ex. 67, TU 129818-57. And to this day, the

10   NYAG has an open investigation, taking depositions and collecting documents from

11   Defendants and their former employees and independent contractors. Ex. 68 at

12   NYSED 000067-77.

13     Further, it is ludicrous for Defendants to suggest that Ms. Makaeff influenced

14   the Texas Attorney General's investigation into Trump University. On January 6,

15   2010, the Texas Attorney General served a civil investigative demand on Trump

16   University after receiving a substantial number of complaints from consumers

17   (including a letter from the Florida Attorney General, dated November 7, 2008,

18   predating Ms. Makaeff's involvement). Ex. 141, TX FL 00001-05; Ex. 142, TX FL

19   00131-37. Ultimately, the Texas Attorney General investigation led to Defendants

20   shutting down in Texas – a state to which Ms. Makaeff has no connection. Ex. 70, TU

21   135883.

22     Moreover, Defendants have presented no evidence that any of the hundreds of

23   individuals who complained did so because they saw Ms. Makaeff's posts. It strains

24   credulity to argue any of the other complaints had anything to do with Ms. Makaeff.

25   However, it does reveal the improper tactics and blaming the victim that Defendants

26   have engaged in since the inception of this litigation. Indeed, they took it so far that

27   Trump University countersued Ms. Makaeff for defamation as retaliation for

28   complaints to her bank and the BBB, which the Ninth Circuit recently roundly

1   rejected in reversing Judge Gonzalez's denial of Makaeff's anti-SLAPP motion. *See*

2   *Makaeff v. Trump Univ., LLC*, No. 11-55016, 2013 U.S. App. LEXIS 7719 (9th Cir.

3   Apr. 17, 2013). Tarla Makaeff was entitled to exercise her First Amendment rights to

4   warn others about Defendants' fraudulent practices. Defendants' attempt to demonize

5   her for speaking out against them should be rejected by this Court.

### F.   Defendants Overreach by Trying to Leverage a Discovery Dispute About Defendants' Own Documents

6

7        Defendants again attempt to distract from the merits of Plaintiffs' motion by

8   accusing Plaintiffs of keeping adverse evidence from the Court. Their argument is

9   patently false. As a starting point, the timeline of events reveals this argument to be a

10  non-starter. The discovery order that Defendants reference was issued on March 12,

11  2013 – well over a month after Plaintiffs submitted their *reply* papers. *See* Dkt. No.

12  203. And, it is ridiculous for Defendants to assert that Plaintiffs would try to hide this

13  discovery order as it is on the public docket. In any event, the ruling concerned only

14  the discrete issue as to whether Plaintiffs' production of certain documents in

15  *Defendants' possession* was responsive to particular requests for production.

16       To recap the dispute for the Court – Defendants asked Plaintiffs to produce

17  documents in support of certain allegations in their Third Amended Class Action

18  Complaint ("TAC") or identify by Bates number documents previously produced.[3]

19  All of the requests related to allegations concerning Defendants' statements and thus

20  to the extent responsive documents existed, they were already in Defendants'

21  possession. Plaintiffs objected on the grounds that all responsive documents in *their*

22  possession had been produced, and requiring them to review over 145,000 pages of

23  documents produced in this action, mostly by Defendants, in order to identify

24  Defendants' own documents, was burdensome.

25

26  _____

27  [3]   Notably, Plaintiffs' TAC was based not only on documentary evidence, but the testimony of multiple former employees, four of whom have submitted sworn declarations in support of Plaintiffs' motion for class certification. *See* Exs. 8-11.

28

At the December 12, 2012 discovery hearing, defense counsel proposed a compromise whereby Plaintiffs would provide one sample document to each general category of requests. Magistrate Judge Gallo's December 23, 2012 discovery order found "both sides have reasonable requests and objections" and took Defendants up on their compromise. Dkt. No. 188 at 13. Accordingly, Magistrate Judge Gallo ordered Plaintiffs to provide "one sample document in response to each general category in Defendants' Fourth Set of [Requests For Productions ("RFPs")]: (1) one year mentorship; (2) guarantee of success; and (3) scripts." *Id.* at 15. The order did not specify to which particular RFP or TAC allegation the sample document should relate for each category. *See id.* Plaintiffs timely provided several samples of documents produced by Defendants that they believed in good faith to be generally supportive of the TAC allegations as intended by Plaintiffs. Defendants objected that the documents were not responsive, and ultimately, Magistrate Judge Gallo agreed and ordered Plaintiffs to supplement their sample documents. Dkt. No. 203 at 7.

On March 18, 2013, Plaintiffs sent to Defendants a supplemental letter and declaration regarding Defendants' Fourth Set of RFPs with more sample documents. *See* Ex. 143. Defendants did not raise this issue with either the Plaintiffs or Magistrate Judge Gallo since that time. Indeed, Defendants have not mentioned the issue again until filing this motion.

Plaintiffs continue to believe the sample documents initially provided to Defendants are relevant to the claims at issue, which importantly, is a separate issue from their responsiveness to a particular document request for purposes of a discovery dispute. Additionally, the documents are not exhaustive of all evidence relevant to the claims pending before the Court, especially given the sworn declarations of four former employees, other documents produced by Defendants that show "scripts" exist, the transcribed recordings of presentations, and given discovery is ongoing. Nevertheless, Plaintiffs will address each of Defendants' challenges in turn.

### 1.   Defendants' Own Personnel Contracts Show Instructors Were Required to Follow Scripts

Defendants' RFP No. 24 requested scripts that Plaintiffs alleged were used consistent with ¶12 of their TAC.  Paragraph 12 of the TAC alleges in turn:

> 12. **Standardized scripts** – Representations made to consumers about the Trump Seminars were standardized.  When consumers made calls to or received calls from Trump University, they spoke with a member of the Trump sales team.  Each member of the sales team was given a five to six page sales script, and was required to stick to the script word-for-word.  Likewise, the in-person Seminars *were highly standardized*.  Speakers used the same slide presentation, the same script, and even had detailed instructions for the presentation, down to where the speakers and coordinators should stand, the temperature of the room and the music to be played during the Introduction – "Money, Money, Money" from the Apprentice show.

Dkt. No. 128, ¶12.

Ex. 77 at TU 130313-18; Ex. 12 at TU 53041.

*See* Ex. 86,

---

[4]   *See infra*, §III.G.



1      Ex. 77 at TU 130313-14.

8      Ex. 86 at 61 (slide 46).

10   Once again, it is a clear example of a scripted up-sell.

15      Ex. 27 at

16   TU 48961.  If there were no such scripts, why would such a provision be included in

17   the speakers' employment agreements that were drafted by Defendants and executed

18   as legally binding contracts?  To the extent Defendants persist in arguing the scripts

19   do not exist in the face of these contracts, it is Defendants, not Plaintiffs, who should

20   have to explain.

21       Furthermore, it is important to put this issue in proper perspective for class

22   certification.  The Court's inquiry is not about scripts – it is about standardization.

---

[5]

25      Ex. 72, Covais Dep. at 191:18-192:7.

1  There is no requirement that a document formally entitled a "script" exist as opposed

2  to another means of ensuring or proving standardization.  Here, Plaintiffs have more

3  than adequately shown that common evidence will demonstrate Defendants' common

4  course of conduct, as well as the standardization of their misrepresentations and

5  omissions.  ████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████

8  ███████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████

10 ████████████████████████████  *See* Opening Mem., §II.

11     Defendants' campaign that scripts do not exist is a blatant attempt to turn the

12 Court's inquiry on its head.  The reason why scripts may become important in class

13 cases involving oral misrepresentations is because there may be no other common

14 evidence of the misrepresentations and omissions in some cases.  Here, however,

15 Plaintiffs have not only submitted myriad sources of documentary and testimonial

16 evidence of the common misrepresentations and omissions, but the Court also will

17 have access to a treasure trove of information through the recordings of the actual

18 presentations.  ████████████████████████████████████████████

19 ███████████████████████████████████████████████████████████

20 █████████████████████████████████  *See, e.g.*, Exs. 79 & 88.

21 These recordings provide additional proof of the misrepresentations and omissions

22 made class-wide.  As such, the issue of the scripts, to the extent that Defendants

23 continue to argue it, is simply a red herring.

**2.   Defendants' Own Transcribed Recordings Reveal
       that Students Were Promised One-Year or Unlimited
       Mentoring and Support**

26     If there is any doubt that Defendants' MTS is anything more than an improper

27 attempt to have the last word, the Court need only look at Defendants' argument that

28 there is no probative evidence of promises of year-long or unlimited mentoring and

1  support.  Plaintiffs provided documents in their opening papers, including transcribed

2  recordings, which provide irrefutable evidence of these promises.  *See* Opening Mem.,

3  §II.D. & Exs. 40, 46, 88.



4

5

6                                                                                              (Ex.

7  88).

8                                                                                  Ex. 40, 46, 88;

9  *see also* Opening Mem., §II.D.

10

11              *See, e.g.*, Ex. 88 at TU 97655-79 at TU 97670 (

12

13                                                           ), TU 97588-621 at TU 97602

14 (

15                                                                                        ).

16      Defendants attempt to say Magistrate Judge Gallo found no evidence of

17  unlimited or year-long mentoring.  First, respectfully, that determination was not

18  before Judge Gallo as it was a discovery dispute concerning particular document

19  requests.  Second, Magistrate Judge Gallo explicitly found to the contrary, stating "the

20  Court does not find Exhibits 86 and 88 [transcription summaries] to be unresponsive."

21  Dkt. No. 203 at 7.   As such, common evidence demonstrates Defendants

22  misrepresented that students would receive a one-year comprehensive real estate

23  education with unlimited mentoring and support by Mr. Trump's purportedly hand-

24  picked experts.

25          **3.      Plaintiffs' Class Certification Motion Does Not Rely**
           **on Misrepresentations Regarding Guarantees of**
26          **Success**

27      Once again Defendants misrepresent the record to the Court as to the issue of

28  "guarantees."  As the Court can readily confirm, Plaintiffs' class certification motion

makes *no* mention of any guarantee of success, yet Defendants still argue that there is no probative evidence of such a guarantee.  Plaintiffs have never relied on guarantees of success in moving for class certification; thus, it is a non-issue manufactured by Defendants.[6]  The fact that Plaintiffs' class certification motion (or reply) does not mention – much less rely on – misrepresentations regarding guarantees of success renders implausible Defendants' argument that Plaintiffs kept relevant evidence from the Court.

### G.   Trump University's Advertising Campaign and PowerPoint Presentations Were Highly Standardized

Defendants also re-hash arguments about the PlayBook and PowerPoint presentations.  As they did in Defendants' opposition, such arguments again fall flat.

As Plaintiffs have previously shown, Defendants engaged in a common course of conduct through the PlayBook and other policies and procedures that emanated from Trump University's headquarters.  Trump University's advertising campaign, marketing, and presentations were highly standardized. *See* Opening Mem., §II.B.-D.; Reply, §II.A.

In an attempt to get a second bite at the apple, Defendants again argue that no standardized PowerPoint or PlayBook existed.  ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[6]  Though Plaintiffs do not rely on any such representations for their class certification motion, evidence of such guarantees certainly exists. *See, e.g.,* Ex. 88 ███████████████████████ TU 97255-82 at TU 97262 ███████████████████ TU 97655-79 at TU 97672 (███████████████████████████████████).



1  ████████████████ *See id.* ████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████ *See* Defs' Ex. 39-5608.

5  ██████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ████████████████████████████████████████████████[7]

10  Trump University's presentations were highly standardized.

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ██████████████████████████████  That is sufficient.  It is unrealistic to

15  expect that any business would be static over the period of three years, and that is not

16  the standard imposed for purposes of certifying a class.

17  Furthermore, Plaintiffs' introduction of additional PlayBooks as exhibits with

18  their reply papers provides a perfect example of why Plaintiffs reserved their rights to

19  submit additional exhibits with their reply.  Plaintiffs could not have provided these

20  substantially-similar PlayBooks with their moving papers as Defendants did not even

21  produce the PlayBooks for years 2007, 2008 or 2009 until October 22, 2012, a full

22  month *after* Plaintiffs submitted their opening brief.

23  In summary, Defendants' common course of conduct, advertising campaign,

24  marketing, and sales presentations at the seminars, were standardized.  Common

[7]  Due to the sheer size and number of transcriptions, Plaintiffs could not possibly have included all of the PowerPoints or transcriptions with their papers.  Instead, Plaintiffs prepared a summary of the misrepresentations in the transcriptions and included them in Exhibit 88.  Plaintiffs are happy to provide others upon request.

1   questions about Defendants' advertising and presentations will predominate over any

2   individualized issues about Plaintiffs and the Class.

3   **H.    Plaintiffs' Class Certification Motion Stands on Its Own**

4          Plaintiffs' class certification submissions provide sufficient basis to certify this

5   as a class action.  Despite Defendants' argument to the contrary, Plaintiffs have not

6   flip-flopped as to their theory of the class case.  Regardless, it is well recognized the

7   "'act of refining a class definition is a natural outcome of federal class action

8   practice,'" and "[a]s a result, it is not uncommon for a class to change 'radically as

9   discovery progresses.'"  *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No.

10  1:04-cv-3066-JEC, 2009 U.S. Dist. LEXIS 30937, at *20 (N.D. Ga. Feb. 9, 2009).

11         Plaintiffs' class certification papers speak for themselves.   Through their

12  motion, Plaintiffs seek to certify a class for violations of the California Uniform

13  Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 *et seq.*, §17500 *et seq.*;

14  Cal. Welf. & Inst. Code §15600 *et seq.*; California Civil Code, Cal. Civ. Code §1750

15  *et seq.*; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.*

16  and §817.41 *et seq.*; New York General Business Law, N.Y. Gen. Bus. Law §349 *et*

17  *seq.*; common law fraud; unjust enrichment; breach of contract; and breach of the

18  covenant of good faith and fair dealing.  And Plaintiffs have always alleged that

19  Defendants engaged in a fraudulent up-sell scheme to induce consumers to pay money

20  for Trump University based on the lure of Donald Trump's name and reputation, and

21  in their class certification papers, demonstrated how their common course of conduct

22  and those misrepresentations and omissions will be proven by class-wide common

23  evidence.  Plaintiffs' class certification motion may be readily granted.

24  **I.    Defendants' Sur-reply Arguments Concerning Its
        Opposition Brief Should Be Disregarded**

25         As stated above, Defendants' arguments from pages 13 to 20 of their MTS are

26  improper and cannot be fairly characterized as a motion to strike.  Defendants are

27  seeking to bolster their arguments from their opposition brief (even providing citations

28

1    to it) in an attempt to have the last word. They will again seek to have the "last word"

2    when they file a reply in support of this motion. This is entirely inappropriate.

3        First, Defendants' argument regarding numerosity is baseless. ███████

4    ███████████████████████████████████████████████████████████████

5    ███████████████████ Ex. 16 at BLOOM 0519. Hence, the senior subclass

6    clearly satisfies the numerosity requirement. *See Ries v. Ariz. Beverages USA, LLC*,

7    No. 10-01139 RS, 2012 U.S. Dist. LEXIS 169853, at *35 (N.D. Cal. Nov. 27, 2012)

8    (40 people meet numerosity).

9        Second, Defendants' argument regarding individual reliance is misplaced.

10   Defendants have not once argued individualized reliance must be shown as to

11   Plaintiffs' contract-based claims, unjust-enrichment claims, New York and Florida

12   consumer protection statute claims, or unlawful and unfair prongs of the UCL claims.

13   They did not argue this in their opposition, and they still do not address reliance in

14   their instant motion. Instead, Defendants conflate individualized inquiry with

15   individualized reliance, which are two distinct concepts. *See* MTS, §II.C.1. Plaintiffs

16   will be able to show through common evidence that a reasonable consumer was likely

17   to be deceived.[8] *See* Reply, §II.C. That is sufficient.

18       Third, Defendants already raised the issue of "refunds" in their opposition. In

19   their MTS, they now try to get a second bite at the apple by contending Plaintiffs'

20   class definition includes 80,000 individuals who never paid for anything and

21   consumers who got refunds. This point barely deserves attention because it runs

22   directly contrary to what Plaintiffs have said. *See* Reply, §II.C.3. In any event,

23   refunds are a damages issue, and the Ninth Circuit recently reaffirmed that

24   individualized damages do not defeat predominance. *See Leyva v. Medline Indus.*,

25   _____

26   [8] ███████████████████████████████████████████████████████

27   ███████████████████████████████████ Ex. 144,

TU-MAKAEFF5181-82.

28

*Inc.*, No. 11-56849, 2013 U.S. App. LEXIS 10649, at *11-*12 (9th Cir. May 28, 2013) (finding the district court abused its discretion when it based its manageability concerns on the need to individually calculate damages).

Fourth, Defendants' purported approval rating is a common issue no matter how much Defendants would like to twist it into an individualized issue for class certification. Plaintiffs' class claims are not about a popularity contest for Trump or turn on how "happy" class members were. *See, e.g., In re Ferrero Litig.*, 278 F.R.D. 552, 559-60 (S.D. Cal. 2011) (certifying class over Defendant's objection and evidence that some class members like Nutella). As previously noted, that class members did not realize they were taken in does not negate the underlying deception and can still be shown on a class-wide basis.[9]

Indeed, as Judge Wardlaw of the Ninth Circuit recently held in reversing denial of Tarla Makaeff's anti-SLAPP motion in this case:

> [I]t is plausible that Makaeff sincerely believed in Trump University's offerings when she submitted her written [evaluation form] and videotaped testimonials. The gist of Makaeff's complaint about Trump University is that it constitutes and elaborate scam. As the recent Ponzi-scheme scandals involving onetime financial luminaries like Bernard Madoff and Allen Stanford demonstrate, victims of con artists often sing the praises of their victimizers until the moment they have been fleeced.

*Makaeff*, 2013 U.S. App. LEXIS 7719, at *41.

Similarly, that class members may have been initially satisfied or happy with Trump University, even to this day, is not probative of whether Defendants deceived class members with their common course of conduct.

Lastly, Defendants' argument that only about 1% of those recently contacted by Defendants, under the guise of marketing but really to obtain declarations for this

---

[9]  Moreover, Defendants numbers once again do not add up. Defendants now tell the Court that 99% of the 10,000 evaluations were for paid programs. However, in Response to Request for Admission No. 16, Defendants admit that 90% or more of the evaluations were for paid programs. In any event, this issue is simply a side show and does not defeat class certification.

1  litigation, resulted in negative responses, is again an improper sur-reply and simply

2  does not defeat class certification.  Plaintiffs put all of the responses that Defendants

3  produced in this litigation before the Court.[10]  *See* Ex. 73.  Plaintiffs' percentages were

4  based on those responses.  Defendants' suggestion that those who did not respond to

5  their email means they were satisfied is absurd.   If anything, as Defendants

6  specifically asked for "success stories," silence would presumably mean they had

7  nothing good to say, not the other way around.  Regardless, once again, Defendants'

8  underlying deception may be shown on a class-wide basis, and their argument that

9  Plaintiffs cherry-picked ten negative comments, while not true, also does not defeat

10  certification.  This argument should be rejected out of hand.

11  **IV.    CONCLUSION**

12        For the foregoing reasons, the Court should deny Defendants' motion to strike

13  in its entirety as untimely or an improper sur-reply submitted in violation of the

14  Court's rules.  Alternatively, Plaintiffs respectfully submit that Defendants' motion

15  should be denied and they should not be permitted to file a reply, which would be

16  tantamount to a sur-sur-reply.

17  DATED:  June 14, 2013                    Respectfully submitted,

18                                           ROBBINS GELLER RUDMAN
                                                & DOWD LLP
19                                           JASON A. FORGE
                                             RACHEL L. JENSEN
20                                           THOMAS R. MERRICK

21

22                                           _____s/ Rachel L. Jensen_____
                                             RACHEL L. JENSEN
23
                                             655 West Broadway, Suite 1900
24                                           San Diego, CA  92101
                                             Telephone:  619/231-1058
25                                           619/231-7423 (fax)

26        _____

27  [10]   Again, these documents were not produced to Plaintiffs until the eve of the
     deadline for their Reply – on January 25, 2013.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed
Class

CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 14, 2013.

                                        s/ Rachel L. Jensen
                                        RACHEL L. JENSEN

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        655 West Broadway, Suite 1900
                                        San Diego, CA 92101-3301
                                        Telephone: 619/231-1058
                                        619/231-7423 (fax)

                                        E-mail: riensen@rgrdlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

- **Stephen F Yunker**
  sfy@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)