1

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF CALIFORNIA

3    TARLA MAKAEFF, ON BEHALF OF )
     HERSELF AND ALL OTHERS       )
4    SIMILARLY SITUATED,          )
                                  )    CASE NO. 10CV0940GPC(WVG)
5              PLAINTIFF,         )
                                  )
6    VS.                          )    SAN DIEGO, CALIFORNIA
                                  )
7    TRUMP UNIVERSITY, LLC, A     )    FRIDAY,
     NEW YORK LIMITED LIABILITY   )    FEBRUARY 22, 2013
8    COMPANY, AND DOES 1 THROUGH  )    3:59 P.M.
     50, INCLUSIVE,               )
9                                 )
               DEFENDANTS.        )
10   _____ )

11

12          TRANSCRIPT OF DISCOVERY HEARING
          BEFORE THE HONORABLE WILLIAM V. GALLO
13           UNITED STATES MAGISTRATE JUDGE

14   APPEARANCES:

15   FOR THE PLAINTIFF:       ROBBINS, GELLER, RUDMAN & DOWD, LLP
                              BY:  THOMAS R. MERRICK, ESQ.
16                                 RACHEL L. JENSEN, ESQ.
                              655 WEST BROADWAY, SUITE 1900
17                            SAN DIEGO, CALIFORNIA  92101

18                            ZELDES, HAEGGQUIST & ECK, LLP
                              BY:  AMBER LEE ECK, ESQ.
19                            625 BROADWAY, SUITE 100
                              SAN DIEGO, CALIFORNIA  92101

20   FOR THE DEFENDANTS:      YUNKER & SCHNEIDER
                              BY:  DAVID K. SCHNEIDER, ESQ.
21                            655 WEST BROADWAY, SUITE 1400
                              SAN DIEGO, CALIFORNIA  92101

22

23   TRANSCRIPT ORDERED BY:   DAVID K. SCHNEIDER, ESQ.

24   TRANSCRIBER:             CAMERON P. KIRCHER

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION.

COMPUTER-AIDED TRANSCRIPTION

1           SAN DIEGO, CALIFORNIA – FRIDAY, FEBRUARY 22, 2013

2                            3:59 P.M.

3           THE COURT:  ALL RIGHT.  THIS IS MAKAEFF V. TRUMP,

4    10CV0940.  AND BOTH SIDES HAVE DISPUTES.

5           LET'S HAVE THE PARTIES, THE ATTORNEYS STATE THEIR

6    APPEARANCES FOR THE RECORD, AND THEN WE'LL GET STARTED.

7           MR. MERRICK:  TOM MERRICK OF ROBBINS GELLER FOR THE

8    PLAINTIFFS.

9           MS. JENSEN:  RACHEL JENSEN, ROBBINS GELLER, ON

10   BEHALF OF PLAINTIFFS.

11          MS. ECK:  AMBER ECK, ZELDES, HAEGGQUIST, ON BEHALF

12   OF PLAINTIFFS.

13          MR. SCHNEIDER:  DAVID SCHNEIDER ON BEHALF OF

14   DEFENDANTS.

15          THE COURT:  ALL RIGHT.  MR. SCHNEIDER, WHY DON'T WE

16   START WITH YOU.

17          MR. SCHNEIDER:  THANK YOU, YOUR HONOR.

18          THE COURT:  AND IF WE COULD HAVE COUNSEL PLEASE RISE

19   WHEN THEY ARE ADDRESSING THE COURT, THAT WOULD BE

20   PREFERABLE.

21          MR. SCHNEIDER:  YES.

22          I'LL START WITH THE SAMPLE DOCUMENTS ON THE COURT'S

23   ORDER.  WE WERE HERE LAST YEAR, AND THE ISSUE THEN WAS THAT

24   WE WERE TRYING TO HAVE THE PLAINTIFFS IDENTIFY THE DOCUMENTS

25   WHICH SUPPORT ITS POSITION IN THE CASE.  AND IN REGARD TO THE

1    SCRIPTS -- LET ME GIVE THE COURT MAYBE A TWO-MINUTE

2    BACKGROUND WHY THESE ARE SO IMPORTANT.

3        IN THE THIRD AMENDED COMPLAINT -- SO THIS IS THE

4    FOURTH FINDING THAT THEY HAVE ALLEGED THAT'S IN THE ORIGINAL

5    COMPLAINT, ALTHOUGH IT'S THE THIRD AMENDED COMPLAINT.  WHAT

6    THE PLAINTIFFS ALLEGE IN THIS CASE IS THAT EVERYTHING WAS

7    SCRIPTED AT TRUMP UNIVERSITY, THAT THE SPEAKERS MADE A BUNCH

8    OF MISREPRESENTATIONS, WHICH ARE THE BASIS OF THEIR LAWSUIT;

9    THAT ALL OF THE PRESENTATIONS WERE EXACTLY THE SAME, THAT

10   THEY WERE UNIFORM, THAT THEY WERE STANDARDIZED, THAT THEY

11   USED A SPEAKER SCRIPT.

12       SO FROM THE PLATFORM, WHEN PEOPLE WOULD GO TO THESE

13   TRUMP UNIVERSITY PROGRAMS, THE SPEAKERS, THE PRESENTER IN

14   THESE THREE-DAY LONG PRESENTATIONS USED A SCRIPT, AND,

15   THEREFORE, THEY HAVE ARGUED THAT THEY DON'T HAVE TO SHOW

16   INDIVIDUAL RELIANCE FOR A CLASS CERTIFICATION BECAUSE

17   EVERYTHING WAS EXACTLY THE SAME.  AND THEY RELY ON A CASE

18   CALLED LINCOLN SAVINGS, IN WHICH BROKERS WERE READING FROM A

19   SCRIPT PROMISING THAT ADDITIONAL INVESTORS, WHEN THEY

20   INVESTED, THEIR INVESTMENTS WOULD BE SAFE.

21       AND THE COURT SAID THAT WHEN THERE IS AN

22   ORCHESTRATED SCHEME AND EVERYTHING IS THE SAME AND EVERYTHING

23   IS SCRIPTED, LITERALLY SCRIPTED, THEN YOU MAY NOT NEED TO

24   SHOW INDIVIDUAL RELIANCE.  SO THEY FILED A MOTION FOR CLASS

25   CERTIFICATION CONSISTENT WITH THE ALLEGATIONS IN THE THIRD

1    AMENDED COMPLAINT AND SAID THAT IT'S ALL SCRIPTED AND THE

2    PRESENTERS AND INSTRUCTORS ALL USED SCRIPTS.

3         SO WE SAID, ALL RIGHT, SHOW US THE SCRIPT.  BECAUSE

4    WE DISPUTE THAT ANY OF THE PRESENTERS USED SCRIPTS.  NONE OF

5    THE PLAINTIFFS SAID THEY EVER SAW SCRIPTS.  THEY HAVE FOUR

6    FORMER EMPLOYEES THAT THEY REPRESENT WHO TESTIFIED THAT THEY

7    WEREN'T AWARE OF ANY SPEAKER SCRIPTS.  WE HAVE DECLARATIONS

8    FROM INSTRUCTORS AND MENTORS THAT SAID THERE WEREN'T ANY

9    SCRIPTS.  BUT THEY CLAIM THAT IT'S ALL SCRIPTED.  AND SO WE

10   SAID, OKAY, PRODUCE THE SCRIPT.  WE SENT OUT ONE REQUEST FOR

11   PRODUCTION THAT SAID, WE WANT THE SPEAKER SCRIPT AS ALLEGED

12   IN THE THIRD AMENDED COMPLAINT.

13        WE CAME TO THE COURT LAST YEAR AND THE COURT SAID,

14   FOR THAT CATEGORY, PRODUCE THE SCRIPT.  SO, INSTEAD, THEY

15   PRODUCED A DIFFERENT SCRIPT.  WE DIDN'T ASK FOR THE SCRIPT

16   FROM THE SOUND OF MUSIC OR FROM SATURDAY NIGHT LIVE.  WE

17   ASKED FOR THE SPEAKER SCRIPT, BECAUSE THAT'S WHAT THEY

18   CLAIMED WAS IT.  THAT'S THEIR BE ALL END ALL, AT LEAST THAT'S

19   WHAT THEY CLAIMED UP UNTIL THIS ISSUE SORT OF CLAIM TO LIGHT.

20        I WAS THINKING OF THE ANALOGY THAT IF THIS WAS THE

21   SIMPLE FACT RED LIGHT/GREEN LIGHT, AND THE PLAINTIFF SAID

22   IT'S GREEN, GREEN, GREEN, THE LIGHT WAS GREEN, AND WE'VE GOT

23   PROOF OF IT.  AND WE SAID, OKAY, SHOW US A PICTURE OF THE

24   GREEN LIGHT.  WELL, YOU ALREADY GOT THE DOCUMENT.  SHOW US A

25   PICTURE OF THE GREEN LIGHT.  SO THEN THEY BRING US A PICTURE

1    OF A GREEN LIGHT FROM A DIFFERENT INTERSECTION.  NO, THAT'S

2    NOT WHAT WE ASKED FOR.  IF YOU DON'T HAVE THE DOCUMENT, THEN

3    THAT'S FINE.  YOU CAN SAY, WE'VE GOT OTHER TESTIMONY, WE'VE

4    GOT EYEWITNESSES.  BUT IF YOU DON'T HAVE THE PHOTOGRAPH, THEN

5    JUST SAY SO.

6         SO WHAT THEY ARE NOW ARGUING IN THIS HEARING IS THAT

7    IT'S A MERITS ARGUMENT, WHICH I'M PRESUMING MEANS THIS IS A

8    JURY ARGUMENT.  IT'S A DISCOVERY ISSUE.  EITHER THEY HAVE THE

9    SCRIPT OR THEY DON'T.  AND WE KNOW THAT THEY DON'T, THEY KNOW

10   THAT THEY DON'T, AND NOW THEY ARE TRYING TO SAY, WELL, THERE

11   IS NOTHING MAGICAL ABOUT THE WORD "SCRIPT," WHAT WE REALLY

12   MEANT WAS THAT IT'S JUST STANDARDIZED.  WELL, IF THAT'S TRUE,

13   THEN JUST SAY SO, SAY WE DON'T HAVE A SCRIPT, BUT THAT'S NOT

14   OUR BEST ARGUMENT.

15        BUT THEY ARE FIGHTING SO HARD, THAT IT CAN'T BE TRUE

16   THAT THIS ISN'T MATERIAL TO THEIR CASE.  THEY JUST SIMPLY

17   WON'T STATE, AFTER A REASONABLE INVESTIGATION, WE HAVE NO

18   SPEAKER SCRIPT.  THAT WOULD BE THE END OF IT.  AND THEN WE

19   COULD ADVISE THE DISTRICT COURT THAT THERE IS NO SCRIPT AND

20   THAT THESE WERE ALL ORAL REPRESENTATIONS MADE BY 20, 30, 40

21   DIFFERENT INSTRUCTORS IN DIFFERENT COURSES, AND THEN THE

22   DISTRICT COURT WILL AT LEAST HAVE THE TRUTH ON THIS ISSUE AND

23   CAN DECIDE WHETHER IT'S STILL APPROPRIATE FOR CLASS

24   CERTIFICATION ON THE RELIANCE ISSUE.

25        BUT RIGHT NOW, THE RECORD IS THAT EVERYTHING IS

1    SCRIPTED.  AND THEY ARGUE IT'S SCRIPTED, AND NOW THEY ARE

2    TRYING TO FINESSE IT SAYING, OKAY, WELL, A WITNESS HAS

3    TESTIFIED THAT THESE POWERPOINT PRESENTATIONS OVER HERE,

4    THOSE ARE LIKE SCRIPTS.  THAT'S WHAT THEY WRITE IN THE

5    REPORT, THEY ARE LIKE SCRIPTS.  WELL, AGAIN, IF THAT'S THEIR

6    POINT, THEN SAY, WE DON'T HAVE ANY SCRIPTS, BUT WE HAVE

7    POWERPOINTS.  SAY, ALL RIGHT, WHICH IS THE POWERPOINT?

8    BECAUSE THERE IS 14 POWERPOINTS THAT WERE SUBMITTED TO THE

9    DISTRICT COURT.  SO HAVE THEM IDENTIFY THE POWERPOINT THAT

10   THEY SAY EVERYBODY USED.

11        BUT THIS WHOLE 15 MONTHS OF DISCOVERY WE'VE BEEN

12   TRYING TO -- YOU KNOW, IT'S LAUGHABLE.  WHERE IS THE SCRIPT?

13   WHERE IS THE POWERPOINT?  WHERE ARE YOU SAYING -- WHERE IS

14   THE DOCUMENT OR DOCUMENTS THAT YOU'RE SAYING THAT EVERYBODY

15   RELIED ON, EVERYBODY USED, EVERYBODY SAID THE SAME THING,

16   EVERYBODY HEARD THE SAME THING, AND THEREFORE WE DON'T HAVE

17   TO SHOW INDIVIDUAL RELIANCE.  THAT'S THE ARGUMENT FROM

18   PLAINTIFFS.  WHAT WE'RE TRYING TO SAY IS THAT EITHER YOU HAVE

19   IT OR YOU DON'T.  AND WE KNOW YOU DON'T, BUT YOU JUST WON'T

20   BE FORTHRIGHT AND SAY, WE DON'T HAVE ANY SCRIPTS.

21        THE SETTER SCRIPT THAT THEY IDENTIFY IS A DIFFERENT

22   INTERSECTION.  IT'S A PERSON IN A CALL CENTER THAT SET

23   APPOINTMENTS.  THERE IS NO CLAIM IN THIS CASE THAT THAT

24   SETTER SCRIPT HAS MISREPRESENTATIONS WHICH ARE THE BASIS OF

25   THEIR LAWSUIT.  AND, IN FACT, THEY DON'T EVEN SUBMIT THE

1    SETTER SCRIPT IN THEIR MOVING PAPERS.  WE PROVIDED THAT TO

2    THE DISTRICT COURT AND SAID, HERE IS THE ONLY SCRIPT THAT

3    ANYBODY EVER SAID THAT WAS EVER USED.  IT WAS MADE BY

4    SOMEBODY SETTING APPOINTMENTS.

5          NONE OF THE SIX PLAINTIFFS WERE EVER CONTACTED BY

6    THE CALL CENTER.  NONE OF THEM TALKED TO THE SETTER.  IT'S

7    JUST A COMPLETE RED HERRING -- AND I HATE THAT OVERUSED

8    EXPRESSION, BUT IT REALLY IS NOT THE ISSUE.  THE ISSUE IS

9    WERE THERE SPEAKER SCRIPTS THAT WERE USED?  THAT'S A SCRIPT

10   ISSUE.

11         DO YOU WANT TO TAKE THIS ONE AT A TIME OR GO THROUGH

12   THE NEXT TWO DOCUMENTS?

13         THE COURT:  LET'S DO THE OTHER ONES, THE GUARANTY

14   AND THE MENTORS.

15         MR. SCHNEIDER:  ALL RIGHT.  THANK YOU.

16         ON THE GUARANTY, I THINK THIS ONE IS AN EASY ONE.

17   IF THE COURT LOOKS AT THE ALLEGATIONS IN THE THIRD AMENDED

18   COMPLAINT, WHAT THEY ALLEGE IS THAT THE REASON THAT THE

19   PLAINTIFFS PURCHASED THE 25,000 OR THE 35,000 THOUSAND DOLLAR

20   PACKAGE OR PROGRAM WAS BASED ON THE REPRESENTATION THAT THEY

21   WERE GUARANTEED TO GET THEIR MONEY BACK WITHIN THE FIRST OR

22   SECOND DEAL.  THOSE ARE THE WORDS THAT THEY USED.

23         SO WE SAID, OKAY, WHERE IS THE GUARANTY?  AGAIN, WE

24   DON'T THINK ONE EXISTS.  THEY CAN SIMPLY SAY, THERE AREN'T

25   ANY DOCUMENTS THAT SUPPORT THAT.  IT'S ALL ORAL TESTIMONY, OR

1    IT'S ALL VERBAL REPRESENTATIONS.  THAT'S FINE.  WE CAN TELL

2    THE DISTRICT COURT, HERE IT IS.  THE CASE IS BASICALLY A LOT

3    OF ORAL REPRESENTATIONS.  AT LEAST THE DISTRICT COURT WOULD

4    HAVE THE TRUTH ABOUT WHAT THIS CASE IS.

5              SO WE ASKED FOR THE GUARANTEES, AND INSTEAD THEY PUT

6    A WELCOMING LETTER FROM DONALD TRUMP THAT SAYS,

7    "CONGRATULATIONS ON YOUR PURCHASE."  SO IT OBVIOUSLY CAME

8    AFTER THE PURCHASE, AND SAID, "WE'RE GOING TO TEACH YOU WHAT

9    YOU NEED TO KNOW TO MAKE A MILLION DOLLARS."

10             NOW, IF YOU LOOK AT THE NEXT LINE IT SAYS, NOW,

11   WAIT, WE'RE NOT GOING TO GIVE YOU A MILLION DOLLARS.  I'M NOT

12   SAYING THAT BY YOU JUST ATTENDING A PROGRAM, YOU'RE GOING TO

13   GET A MILLION DOLLARS.  I'M SAYING THAT YOU'VE GOT TO GET OFF

14   YOUR CHAIR, YOU'VE GOT TO GO WORK AT IT, AND ALL THE

15   OPPORTUNITY IS THERE FOR YOU.  THAT'S VERY DIFFERENT THAN

16   WHAT THEY HAVE ALLEGED IN THEIR THIRD COMPLAINT, THAT MY

17   CLIENT GUARANTEED THAT THEY WOULD MAKE THEIR MONEY BACK

18   WITHIN ONE OR TWO TRANSACTIONS.  SO WE DON'T BELIEVE AGAIN

19   THAT THEY HAVE IDENTIFIED RESPONSIVE DOCUMENTS TO THE

20   REQUEST.

21             THOSE REQUESTS ARE VERY SPECIFIC AND ALL OF THEM

22   CONCERNS GUARANTEES RETURN ON INVESTMENT.  AND NOW THEY ARE

23   TRYING TO SUBSUME IT AND SAY, WELL, IF WE GET A MILLION

24   DOLLARS, THAT OBVIOUSLY PAYS FOR THE TUITION.  THAT'S TRUE.

25   BUT THAT'S NOT WHAT THE ISSUE IS.  THE ISSUE IS, THEY ARE NOT

1    BUYING A GUARANTY.  THEY GUARANTY A RETURN.  AND IF SO, WAS

2    IT IN WRITING?  AND IF SO, SHOW ME THE DOCUMENT, SHOW US THE

3    DOCUMENT.

4         THE LAST ISSUE ON UNLIMITED MENTORING, I DO ADMIT,

5    THIS ONE IS MORE SUBTLE, AND I THINK THAT THEY HAVE -- THE

6    PLAINTIFFS HAVE SORT OF SOFTENED THEIR POSITION A LITTLE BIT.

7    WHERE THEY STARTED WAS THAT WE PROMISED UNLIMITED MENTORING

8    FOR A YEAR.  AND MENTORING HAD A MEANING.  AND THE PRESIDENT

9    OF TRUMP UNIVERSITY TESTIFIED IT HAS A MEANING.  IT MEANS

10   ONE-ON-ONE, IN-PERSON FIELD TRAINING.  THAT'S WHAT MENTORING

11   MEANT.

12        SO THEY WERE ASKED, DOES TRUMP UNIVERSITY PROVIDE

13   YEARLONG MENTORING?  AND MICHAEL SEXTON SAID, NO, WE DON'T

14   PROVIDE YEARLONG MENTORING.  MENTORING MEANS ONE-ON-ONE IN

15   PERSON.  SO THEN WE GET (INAUDIBLE) THAT SAYS, HEY, THEY

16   PROMISED YEARLONG SUPPORT, BUT MICHAEL SEXTON SAID, THERE IS

17   NO YEARLONG MENTORING.  SO WE BELIEVE THEY ARE PLAYING A

18   LITTLE BIT LOOSE WITH THE WORDS HERE.  BUT THE DISCOVERY

19   REQUEST ASKED FOR ANY DOCUMENT THAT SAID UNLIMITED MENTORING

20   OR YEARLONG MENTORING.

21        THERE HAS NEVER BEEN A DISPUTE ABOUT THAT MY CLIENTS

22   PROVIDED PHONE SUPPORT AFTER THE MENTORSHIP, SUPPORT.  SO,

23   AGAIN, WE ASKED FOR THE MENTORING, EITHER THEY HAVE THE

24   DOCUMENT OR THEY DON'T.  AND THEY CAN IDENTIFY THE DOCUMENT

25   OR NOT.  AGAIN, WE DON'T KNOW IF THESE DOCUMENTS EXIST.  I

1   HAVE NOT SEEN ANY DOCUMENTS.  AND THE COURT ASKED THEM WHEN

2   WE WERE HERE LAST YEAR, HAVE I SEEN ANYTHING THAT SAYS

3   "UNLIMITED MENTORING"; AND I HAVE NOT.  I HAVEN'T SEEN

4   ANYTHING THAT SAYS "YEARLONG MENTORING."  ALL THE

5   REPRESENTATIONS THAT I'VE SEEN HAVE BEEN, IF YOU PURCHASE

6   THIS PACKAGE, YOU GET A MENTOR FOR THREE DAYS IN THE FIELD

7   AND YOU GET PHONE SUPPORT FOR A YEAR.

8         NO DISPUTE ABOUT THAT.  THEY CAN CLAIM AT TRIAL THAT

9   THEIR CLIENTS DIDN'T GET THE SUPPORT THEY WANTED.  BUT THAT'S

10  DIFFERENT THAN CLAIMING THAT WE PROMISED UNLIMITED MENTORING,

11  BASICALLY 365 DAYS OF MENTORING, WHICH WE HAVE NEVER

12  PROMISED.  AND THAT'S WHY WE'D ASK FOR THOSE DOCUMENTS.

13        THE COURT:  ALL RIGHT.  LET ME GO OVER TO THE OTHER

14  SIDE AND ADDRESS THESE ISSUES, AND THEN WE'LL GO BACK.

15        MR. MERRICK:  DO YOU HAVE SPECIFIC QUESTIONS, OR DO

16  YOU JUST WANT ME TO GO THROUGH?

17        HERE IS, I THINK, THE THING WE NEED TO KEEP IN MIND.

18  THE POSTURE OF THIS CASE RIGHT NOW, CLASS CERTIFICATION HAS

19  ALREADY BEEN BRIEFED.  OUR OPENING BRIEF, THEIR 6700-PAGE

20  OPPOSITION, OUR REPLY BRIEF, IT'S ALL BEEN DONE.  ALL OF

21  THESE ISSUES THAT HE'S TALKING ABOUT WERE PART OF THAT

22  BRIEFING.  IT'S ALL IN FRONT OF JUDGE CURIEL FOR WHEN -- FOR

23  WHEN THE CLASS CERT HEARING OCCURS.  SO A LOT OF THIS REALLY

24  IS SIMPLY JUST A MERITS DISPUTE.

25        THEY DON'T LIKE THE DOCUMENTS THAT WE GAVE THEM, BUT

1  THAT DOESN'T MEAN -- WE DISAGREE ON WHETHER THAT WILL SUPPORT

2  THE ALLEGATIONS OF OUR COMPLAINT.  THAT'S HARDLY SURPRISING

3  THAT WE WOULD DISAGREE ON THAT.  BUT THEY HAVE HAD THE

4  OPPORTUNITY AND HAVE MADE THEIR ARGUMENT AT CLASS CERT THAT

5  WE DON'T HAVE ANY PROOF OF THAT.  SO WE'VE HAD TO SUBMIT

6  EVIDENCE, OUR DOCUMENTS THAT WE SAY PROVES THOSE ALLEGATIONS.

7  EXCEPT FOR THE GUARANTY OF SUCCESS, WHICH WAS NOT THE BASIS

8  OF CLASS CERTIFICATION MOTION.

9      FIRST OF ALL, LET'S SEE, FOR THE SCRIPTS, ONE IS

10  CALLED A SPEAKER INTRODUCTION SCRIPT; SO THAT IS A SPEAKER

11  SCRIPT BY DEFINITION.  THE OTHER -- THE SETTER IS NOT A

12  SPEAKER SCRIPT IN THE SENSE OF A PRESENTER.  HOWEVER, IT IS A

13  TRUMP EMPLOYEE THAT'S MAKING MISREPRESENTATIONS TO POTENTIAL

14  STUDENTS FROM A SCRIPT.  AND WE BELIEVE THAT'S RESPONSIVE.

15  THEY DISAGREE.  THAT DOESN'T MEAN -- THAT JUST MEANS THAT WE

16  DISAGREE AS TO WHETHER THAT EVIDENCE CARRIES THE SAME AMOUNT

17  OF WEIGHT.

18      IN ADDITION, IN OUR CLASS CERT REPLY, WE DID PRODUCE

19  THE POWERPOINT WITH TALKING POINTS, AND THIS IS A SCRIPT.  I

20  MEAN, IF YOU WANT TO LOOK AT THIS, IT'S EXHIBIT 86 TO

21  PLAINTIFFS' CLASS CERT REPLY.  I MEAN, IT EVEN INCLUDES

22  ESSENTIALLY STAGE DIRECTIONS.  YOU KNOW, THIS IS A TRIAL

23  CLOSE.  YOU KNOW, THIS -- IT'S AS CLOSE TO A SCRIPT AS YOU'RE

24  GOING TO HAVE WITHOUT IT BEING CALLED A SCRIPT.  AND WE'VE

25  GOT FORMER EMPLOYEE TESTIMONY THAT SAYS THAT THEY CONSIDERED

1   IT TO BE A SCRIPT.  THEY RELIED ON THE POWERPOINT

2   PRESENTATION WITH THE TALKING POINTS, AND THEY CONSIDERED IT

3   A SCRIPT.

4           SO IN THAT SENSE, WE'VE GIVEN THEM WHAT WE'VE GOT.

5   THEY DON'T LIKE IT.  THEY DON'T THINK IT'S ENOUGH.  GREAT.

6   THAT'S A MERITS ISSUE.  AND, YOU KNOW, IF IT'S NOT ENOUGH TO

7   SHOW RELIANCE, THEN WE WON'T WIN CLASS CERT OR WE WON'T HAVE

8   THE CLASS CERTIFIED, AND THAT'S THE BOTTOM LINE.

9           UNLIMITED MENTORING, AGAIN, THEY DON'T LIKE THE

10  DOCUMENTS THAT WE DID PRODUCE.  BUT IN ADDITION TO THAT, WE

11  PRODUCED AS PART OF EXHIBIT 88 TO OUR CLASS CERT REPLY, A

12  CHART THAT LAYS OUT ALL OF THE PLACES THAT WE FOUND A

13  MISREPRESENTATION OR OMISSION RELATING TO ONE YEAR OR

14  UNLIMITED EXPERT MENTORING AND SUPPORT.  IT'S APPROXIMATELY

15  48 TIMES THAT SOMETHING RELATED TO THAT IS MENTIONED.  WE

16  THINK THAT'S POWERFUL ENOUGH TO SHOW THAT THIS WAS A COMMON

17  MISREPRESENTATION AND OMISSION.

18          THE COURT:  THAT WAS EXHIBIT 88?

19          MR. MERRICK:  YES, 88.

20          SO, I MEAN, AT THE END OF THE DAY, WE EITHER HAVE

21  MET OUR BURDEN ON CLASS CERTIFICATION TO SHOW THAT THESE ARE

22  COMMON ISSUES, OR WE HAVEN'T; BUT IT ISN'T A DISCOVERY ISSUE.

23  IT'S A MERITS ISSUE.

24          THE COURT:  ALL RIGHT.

25          MR. SCHNEIDER:  YOUR HONOR, IF I MAY MAKE JUST TWO

1    QUICK RESPONSES.

2              THE COURT:  GO AHEAD.

3              MR. SCHNEIDER:  THE FIRST IS IS THAT WE REQUESTED

4    THIS INFORMATION LONG BEFORE OUR OPPOSITION PAPERS WERE DUE.

5    AND I DO FEEL LIKE THEY ARE TRYING TO RUN THE CLOCK OUT ON

6    US.  THAT RIGHT AFTER WE GOT THEIR MOVING PAPERS, WE SENT OUT

7    FOR DISCOVERY AND SAID, ALL RIGHT, HERE IS THE THREE THINGS

8    WE WANT:  SCRIPTS, UNLIMITED MENTORING AND GUARANTEES.  AND

9    THEY OBJECTED AND THEN THEY WOULDN'T RELEASE THE THINGS.  WE

10   FILED A MOTION TO COMPEL.  THE COURT ORDERED IT.  THEY FILED

11   REPLY PAPERS AND SAID, OH, ALL THE BRIEFING IS DONE.  SO HERE

12   WE ARE AGAIN, AND WE'RE STILL TRYING TO GET THESE DOCUMENTS.

13   SO I THINK IT'S A BIT DISINGENUOUS TO SAY, WELL ALL THE

14   BRIEFING IS FINISHED AND IT'S TOO LATE TO SUBMIT SOMETHING TO

15   THE COURT.

16             THE SECOND POINT ON EXHIBIT 88, THAT IS A

17   LAWYER-CREATED DOCUMENT BY THEIR FIRM.  THAT IS NOT SOMETHING

18   THAT REFLECTS REPRESENTATIONS THEY CLAIM WE MADE.  IF I'M

19   THINKING OF THE RIGHT CHART, THIS IS SOMETHING -- I DON'T

20   HAVE IT IN FRONT OF ME.  BUT I THINK 88 IS A CHART THAT THEY

21   PREPARED FOR THE COURT.

22             MR. MERRICK:  A SUMMARY.

23             MR. SCHNEIDER:  THAT'S SOMETHING YOUR LAW FIRM

24   PREPARED; RIGHT?  THIS ISN'T A TRUMP UNIVERSITY DOCUMENT IN

25   WHICH IT SAYS UNLIMITED MENTORING.  THIS IS THE LAWYERS

1   PREPARING A CHART OF WHAT THEY THINK THAT THEIR EVIDENCE

2   SHOWS.

3           MR. MERRICK:  IT HAS THE BATES NUMBERS ON IT.  YOU

4   KNOW, IT'S THEIR DOCUMENTS, THEY ARE ALL THEIR DOCUMENTS.  WE

5   REFERENCE THE BATES RANGES.

6           THE COURT:  ALL RIGHT.  HERE IS WHAT I CONCLUDE FROM

7   READING THE JOINT STATEMENT FOR TODAY'S HEARING AND LOOKING

8   AT THE EXHIBITS THAT WERE PROVIDED WITH RESPECT TO THESE

9   THREE ISSUES; THE SCRIPT, THE GUARANTY AND THE MENTORSHIP

10  COMPONENT.

11          MR. SCHNEIDER MAKES THE POINT THAT THESE DOCUMENTS

12  WERE REQUESTED SOME MONTHS AGO, AND OF COURSE THE COURT

13  ORDERED THE PLAINTIFFS TO PROVIDE ONE OF EACH, PROVIDE

14  SOMETHING THAT SUPPORTS THESE VARIOUS ALLEGATIONS THAT ARE

15  CONTAINED IN THE THIRD AMENDED COMPLAINT.  I'VE LOOKED AT

16  WHAT YOU'VE PROVIDED.  I'VE LOOKED AT THE SCRIPTS.  I'VE READ

17  THE SCRIPTS.  I'VE COMPARED IT AGAINST THE COMPLAINT.  AND

18  LOOKING AT THE COMPLAINT AND WHAT'S ALLEGED THERE AND

19  COMPARING IT AGAINST THE SCRIPT, I DON'T THINK IT'S A

20  MERITS-BASED ISSUE.  I THINK IT'S A DISCOVERY ISSUE.

21          I'M GUESSING, I'M PURELY SPECULATING HERE, THAT

22  WHENEVER I ORDERED YOU TO PROVIDE -- YOU KNOW, PICK OUT YOUR

23  ONE EXAMPLE OR SAMPLE FOR EACH ONE OF THESE ISSUES, THAT YOU

24  DIDN'T GO TO THE VERY FIRST DOCUMENT THAT YOU FOUND AND SAY,

25  THIS IS IT AND PROVIDE IT.  YOU PROBABLY WENT THROUGH THE

1    DISCOVERY AND FOUND THE SCRIPT THAT YOU THOUGHT WAS EITHER

2    BEST OR WORST, NOT ONE THAT WAS IN THE MIDDLE.

3            THE SCRIPT THAT I READ HERE DOESN'T ANSWER THE MAIL,

4    I BELIEVE, ON THE ISSUE THAT IS -- THAT MR. SCHNEIDER HAS

5    RAISED AS IT RELATES TO THE ALLEGATIONS IN THE COMPLAINT.

6    WITH RESPECT TO THE SCRIPT THAT WAS USED BY THE MENTORS IN

7    THE SEMINARS, THE STANDARDIZED SCRIPTS, THE IN-PERSON

8    SEMINARS WERE HIGHLY STANDARDIZED, SAME SCRIPTS, AND OVER AND

9    OVER AGAIN THROUGHOUT THE COMPLAINT, AS MR. SCHNEIDER POINTS

10   OUT, IT'S EXHIBIT -- IT IS EXHIBIT F FOR TODAY.

11           YOU KNOW, OVER AND OVER AGAIN VARIOUS PARAGRAPHS

12   THROUGHOUT THE COMPLAINT TALK ABOUT THIS STANDARDIZED SCRIPT

13   USED BY THE ACTUAL INFIELD SPEAKERS, THE MENTORS, NOT THE

14   TELEPHONE SCRIPT OR THE WELCOMING SCRIPT, WHICH MAY BE PART

15   AND PARCEL OF YOUR CASE, BUT WHAT WE'RE LOOKING FOR IS WHAT

16   THE SPEAKERS, THE TEACHERS, THE MENTORS WERE USING.  AND IF

17   IT WAS STANDARDIZED, IF IT WAS REDUCED TO A SCRIPT, IF IT WAS

18   REDUCED TO WRITING, REDUCED TO TALKING POINTS, THEN THAT'S

19   WHAT WAS ORDERED TO BE PROVIDED.  SO FAR, IN MY ESTIMATION,

20   THAT HAS NOT BEEN PROVIDED IF THIS WAS WHAT WAS PROVIDED TO

21   MR. SCHNEIDER.  IT SIMPLY WASN'T PROVIDED.

22           WITH RESPECT TO THE GUARANTY --

23           MR. MERRICK:  YOUR HONOR, IF I MAY.  ALSO IN THE

24   MEET AND CONFER, WE DID DISCUSS WITH MR. SCHNEIDER AND HIS

25   COLLEAGUE WHAT I CALLED EXHIBIT 86 OF OUR CLASS CERT REPLY

1    BRIEF, WHICH IS THE POWERPOINT PRESENTATION, WHICH OUR

2    EMPLOYEE, FORMER EMPLOYEE TESTIFIED THAT THEY CONSIDERED A

3    SCRIPT.  SO IN ADDITION TO WHAT WAS PROVIDED WITH THE MOTION

4    TODAY, THERE IS THAT, WHICH WE HAVE DISCUSSED WITH DEFENSE

5    COUNSEL.

6           THE COURT:  OKAY.  I MADE A NOTE OF THAT.  YOU HAVE

7    EXHIBIT 86 AND EXHIBIT 88.

8           MR. MERRICK:  YES, SIR.

9           THE COURT:  SO WE'LL TAKE A LOOK AT THAT.  BUT FOR

10   THE PURPOSES OF WHAT WAS REQUIRED AND ORDERED BY THE COURT TO

11   BE PRODUCED IN DISCOVERY, IF THIS IS WHAT WAS PRODUCED, IT

12   DOESN'T COMPLY WITH THE ORDER IN MY VIEW.  AND I DON'T

13   BELIEVE IT'S A MERITS-BASED DISCOVERY -- MERITS-BASED ISSUE.

14   I BELIEVE IT'S A DISCOVERY ISSUE.

15          TRUE, THE BRIEFING MAY BE COMPLETED.  AND AS

16   MR. SCHNEIDER TALKS ABOUT, YOU KNOW, SORT OF PLAYING OUT THE

17   FLOCK HERE, HE MAY HAVE CERTAIN AVENUES AND OPTIONS AVAILABLE

18   TO HIM IF THIS DISCOVERY IS PROVIDED THAT MAY ALLOW HIM TO

19   SUPPLEMENT HIS BRIEFING.  I DON'T KNOW WHAT JUDGE CURIEL IS

20   GOING TO DO, IF THAT WAS TO BE DONE.

21          IS THIS BEFORE CURIEL NOW?

22          MR. SCHNEIDER:  YES, YOUR HONOR.

23          THE COURT:  RIGHT.  BUT HE'S ENTITLED TO RECEIVE

24   THESE DOCUMENTS THAT ARE RESPONSIVE TO THE DISCOVERY REQUESTS

25   WHICH I HAVE FOUND TO BE RELEVANT AND MATERIAL, AND HE'S NOT

1    RECEIVED IT, IN MY ESTIMATION.

2            WITH RESPECT TO THE GUARANTY, I'M LOOKING ONCE AGAIN

3    AT THE DOCUMENT THAT WAS PROVIDED, THE LETTER BY DONALD TRUMP

4    WITH HIS AUTOGRAPH ON IT.  I DON'T THINK THERE IS ANY

5    REASONABLE INTERPRETATION OF THAT DOCUMENT THAT COULD BE --

6    THAT ONE CAN CONCLUDE THAT THERE WAS A GUARANTY MADE IN IT.

7    AND YOU MAY SAY THAT IT'S A MATTER OF INTERPRETATION, WE GAVE

8    THEM WHAT WE ARE RELYING UPON, AND IF HE DOESN'T LIKE IT,

9    TOUGH.  BUT I DON'T THINK THAT THAT'S A MERITS-BASED

10   DISCUSSION EITHER.

11           THE COMPLAINT -- AND I'M LOOKING NOW AT EXHIBIT G

12   THAT WAS PROVIDED, AND THE EXCERPTS THAT WERE HIGHLIGHTED BY

13   MR. SCHNEIDER.  YOU KNOW, PEPPERED THROUGHOUT THERE ARE

14   GUARANTEES, GUARANTY THIS, GUARANTY THAT.  A GUARANTY IS WHAT

15   IT MEANS.  A SOLEMN PROMISE THAT YOU WILL OBTAIN CERTAIN

16   RESULTS, AND IF YOU DON'T, THERE IS SOME RECOURSE THAT YOU

17   MIGHT BE ABLE TO HAVE THROUGH TRUMP, MONEY BACK OR WHATEVER.

18   THAT'S WHAT A GUARANTY IS.  I GUARANTY THESE RESULTS, AND IF

19   WE DON'T GET THESE RESULTS, THERE IS SOME RECOURSE.

20           BUT, NEVERTHELESS, WHAT I READ IN THAT LETTER, IF

21   THAT'S WHAT WAS PROVIDED AND IF THAT'S WHAT WAS GIVEN TO

22   MR. SCHNEIDER IN RESPONSE TO THE COURT'S ORDER TO PROVIDE THE

23   DOCUMENT THAT YOU'RE RELYING UPON TO SHOW A GUARANTY, THAT

24   DOESN'T CUT IT.  THAT DOESN'T ANSWER THE MAIL EITHER IN MY

25   ESTIMATION, AND THAT'S A DISCOVERY ISSUE.

1           MR. MERRICK:  OKAY.  IF I MAY RESPOND.  THAT IS THE

2    ONLY DOCUMENT THAT WE WERE ABLE TO FIND.  AND, AGAIN, THIS IS

3    A DOCUMENT REQUEST WE'RE TALKING ABOUT.  WE DO HAVE OTHER

4    TESTIMONY, OTHER DEPOSITION TESTIMONY AND THE LIKE THAT

5    ADDRESSES THAT ISSUE AS WELL.

6           THE COURT:  ALL RIGHT.  AND THAT'S WHAT

7    MR. SCHNEIDER IS GOING THROUGH.  IF THIS IS WHAT YOUR -- IF

8    THIS IS THE DOCUMENT, AND WHAT YOU'RE RELYING UPON PRIMARILY

9    IS ORAL TESTIMONY, THEN THAT'S WHAT -- YOU KNOW, SO SAY THAT.

10   AND NOW WE GOT THAT REPRESENTATION, SO YOU HAVE THAT.

11          WITH RESPECT TO THE MENTORSHIP, I'VE LOOKED AT THE

12   DOCUMENTS THAT WERE PROVIDED.  A FAIR READING OF THOSE

13   DOCUMENTS, I COULD NOT CONCLUDE FROM THERE THAT THERE WAS A

14   PROMISE TO PROVIDE ONE-ON-ONE MENTORING, AS I BELIEVE THAT

15   THAT TERM IS COMMONLY UNDERSTOOD, FOR AN ENTIRE YEAR.  THE

16   WAY I READ THOSE DOCUMENTS IS THAT YOU GET THE MENTORING FOR

17   THE SHORT PERIOD OF TIME OF THE ACTUAL SEMINAR, THE TWO OR

18   THREE DAYS, AND, THEREAFTER, IT WOULD BE TELEPHONE SUPPORT.

19   YOU'D HAVE SUPPORT, CALL UP WITH QUESTIONS.  TO ME, THAT'S

20   NOT ONE-ON-ONE, YEAR-LONG MENTORING.  YOU GET A YEAR'S WORTH

21   OF SUPPORT, BUT NOT THE KIND OF MENTORING THAT I THINK IS

22   IMPLIED BY YOUR COMPLAINT.

23          AND IN THAT REGARD, I'M LOOKING AT, YOU KNOW,

24   EXHIBIT H AND THE HIGHLIGHTED PORTIONS THEREIN THAT TALK

25   ABOUT THIS YEAR-LONG MENTORING.  AND, AGAIN, IF THIS IS THE

1    DISCOVERY THAT WAS PROVIDED TO ANSWER THAT SPECIFIC REQUEST,

2    WHICH THE COURT HAD ORDERED, THAT DOESN'T ANSWER THE MAIL.

3    IF THAT'S ALL YOU HAVE, THEN I WOULD AGREE WITH

4    MR. SCHNEIDER, YOU SHOULD STATE THIS IS ALL WE HAVE AND THERE

5    ISN'T ANYTHING ELSE THEY ARE RELYING UPON EXCEPT ORAL

6    REPRESENTATIONS MADE BY VARIOUS CLIENTS AND PARTICIPANTS IN

7    THIS -- IN THE SEMINARS.

8          SO I'LL TAKE A LOOK AT EXHIBIT 86 AND 88 AND SEE

9    WHAT THEY SAY, BUT, YOU KNOW, TENTATIVELY, I FIND THAT THERE

10   HAS BEEN NONCOMPLIANCE IN ALL THREE OF THESE AREAS WITH THE

11   COURT'S ORDER TO PROVIDE THE DEFENDANT WITH ONE DOCUMENT THAT

12   IS RESPONSIVE TO HIS DISCOVERY REQUEST.  IF 86 AND 88 ANSWER

13   THE MAIL FOR ME, THAT WILL BE ONE MATTER.  IF THEY DON'T,

14   THEN IT'S GOING TO BE A MATTER OF FASHIONING A REMEDY.

15         THE REMEDY THAT I'M CONTEMPLATING -- AND THIS IS

16   SIMPLY TENTATIVE.  BECAUSE YOU'RE RIGHT, THE MOTIONS AND THE

17   ANSWERS -- AND THE RESPONSES FOR THE CLASS CERTIFICATION HAVE

18   ALREADY BEEN FILED, AND WHETHER JUDGE CURIEL WILL ALLOW ANY

19   ADDITIONAL BRIEFING, I DON'T KNOW.

20         BUT DISCOVERY NOW FOR CLASS CERTIFICATION, BECAUSE

21   WE ALL KNOW THAT EVEN THOUGH WE BIFURCATED THE DISCOVERY

22   PROCESS, CLASS CERTIFICATION AND MERITS, THERE IS OFTENTIMES

23   A LOT OF OVERLAP BETWEEN THE TWO.  AND WHAT MAY BE RELEVANT

24   FOR CLASS CERTIFICATION MAY ALSO HAVE RELEVANCE ASSUMING THAT

25   THERE IS A LIFE AFTER THE CLASS CERTIFICATION MOTION ON THE

1    MERITS, AND IF THERE IS GOING TO BE A TRIAL.  SO ONE REMEDY

2    THAT I'M TINKERING WITH IS IF I FIND THAT 86 AND EXHIBIT 88

3    AREN'T RESPONSIVE TO MR. SCHNEIDER'S REQUEST, IS TO RECOMMEND

4    TO JUDGE CURIEL THAT THE PLAINTIFFS BE LIMITED IN THEIR

5    PRESENTATION WITH RESPECT TO THE DOCUMENTS THAT THEY HAVE

6    PROVIDED.  AND THAT'S ALL THEY CAN USE.

7            SO THAT'S ONLY TENTATIVE, THAT WOULD BE A DISCOVERY

8    SANCTION THAT ULTIMATELY MAY HAUNT YOU IF THERE IS A LIFE IN

9    THIS CASE AFTER THE CLASS CERTIFICATION MOTION, TO PREVENT

10   YOU FROM USING ANY OTHER EVIDENCE, BECAUSE YOU WERE TO

11   PROVIDE DOCUMENTS THAT ANSWERED THOSE SPECIFIC QUESTIONS, AND

12   I FIND THAT YOU HAVE NOT.

13           WE DO HAVE THE ISSUE WITH THE GUARANTY NOW THAT WE

14   DO KNOW THAT THAT'S THE ONLY DOCUMENT THERE IS, AND SO THAT'S

15   FINE.

16           MR. MERRICK:  YEAH.  THAT WE'VE DISCOVERED SO FAR,

17   YOUR HONOR.  I WILL JUST REMIND THE COURT THAT THE ORDER WAS

18   TO PROVIDE A SINGLE EXEMPLAR DOCUMENT TO DEFENDANTS.

19           THE COURT:  CORRECT.

20           MR. MERRICK:  SO LIMITING THEM TO THE ONE EXEMPLAR

21   DOCUMENT THAT WE PROVIDED WOULD SEEM A RATHER HARSH

22   PENALTY.

23           THE COURT:  WELL, IT MAY SEEM HARSH, BUT YOU WERE TO

24   PROVIDE THE ONE DOCUMENT THAT WAS RESPONSIVE TO THE

25   DISCOVERY.  AND IF THERE WAS SOME GAMESMANSHIP GOING ON HERE

1   TO SORT OF SANDBAG AND HOLD ON TO THE REAL DOCUMENT THAT

2   WOULD BE RESPONSIVE TO SOME LATER POINT IN TIME, THEN YOU

3   SHOULDN'T HAVE DONE THAT.

4          WE WERE LOOKING FOR THE DOCUMENT THAT TALKED ABOUT

5   THE END -- THE FIELD SEMINAR SCRIPTS AND WE DIDN'T GET ONE OF

6   THOSE.  IT WASN'T EVEN CLOSE.  THIS WAS A TELEPHONE GREETING

7   SCRIPT.

8          MS. ECK:  AND, YOUR HONOR, JUST TO ADDRESS YOUR

9   CONCERNS.  I CAN ASSURE YOU THAT WE HAVE NOT WITHHELD

10  DOCUMENTS, AND THAT, IN FACT, THE DOCUMENTS PRODUCED THAT WE

11  POINTED TO WERE ACTUALLY DOCUMENTS THAT HAD BEEN PRODUCED BY

12  DEFENDANTS, AND WE'RE NOT TRYING, AGAIN, TO ANY KIND OF

13  GAMESMANSHIP OR HOLD DOCUMENTS.

14         THESE ALLEGATIONS -- I MEAN, IN SOME SENSE THIS

15  DISCOVERY IS STILL CONTINUING.  IN REGARD TO THE SCRIPTS, YOU

16  KNOW, AS WE'VE SAID, I'VE SPOKEN TO FORMER EMPLOYEES, THEY

17  HAVE ALL INFORMED ME THAT THERE WAS ESSENTIALLY A SCRIPT THAT

18  THEY FOLLOWED.  VERY LITTLE HAS BEEN PRODUCED REALLY IN THIS

19  REGARD AS TO SCRIPTS OR AS TO THE TRAINING.  WE'VE LISTENED

20  TO DOZENS, IF NOT HUNDREDS OF THE PROGRAMS.  THEY ARE NEARLY

21  IDENTICAL WORD FOR WORD, AND WE PRODUCED SOME OF THESE

22  SUMMARIES OF THE PRESENTATIONS, BUT WE DON'T HAVE REALLY A

23  LOT OF THE UNDERLYING SCRIPTS OR THE POWERPOINTS.  AND THAT'S

24  WHEN THEY SAID, WELL, MAYBE BY "SCRIPT," WE REALLY MEANT IT

25  WAS THE POWERPOINT WITH TALKING POINTS.

1          AND SO THE TRUTH IS DEFENDANTS ARE IN A LOT BETTER

2    POSITION TO KNOW THAN WE ARE WHAT WAS IT EXACTLY, WAS IT AN

3    ACTUAL THING CALLED SCRIPT OR WAS IT A POWERPOINT OR WAS IT A

4    POWERPOINT WITH TALKING POINTS.  IT MAY HAVE BEEN ONE OF

5    THOSE THREE THINGS.  BUT IT'S NOT THAT WE'RE HOLDING SOME

6    DOCUMENTS ASIDE THAT WE'RE TRYING TO USE AGAINST THEM.

7          THE COURT:  ARE YOU TELLING ME THAT WHAT WAS

8    PROVIDED THEN PURSUANT TO THE COURT'S ORDER TO PROVIDE A

9    SCRIPT OF THE STANDARDIZED SCRIPT THAT YOU ALLEGE IN YOUR

10   COMPLAINT UPON SEVERAL OCCASIONS WAS THE BEST SCRIPT THAT YOU

11   COULD FIND TO ANSWER THAT PARTICULAR QUESTION?

12         MS. ECK:  YEAH.

13         THE COURT:  AND IF THAT'S WHAT YOU'RE TELLING ME --

14         MS. ECK:  YES, I BELIEVE SO.

15         THE COURT:  -- THEN --

16         MS. ECK:  I MEAN, SOMETHING THAT SAYS THE WORD

17   "SCRIPT" ON IT.

18         THE COURT:  WELL, MR. SCHNEIDER MAKES THE POINT, WE

19   WEREN'T LOOKING FOR THE SCRIPT FOR SATURDAY NIGHT LIVE.  WE

20   WERE LOOKING FOR THE SCRIPT FOR THE SEMINARS, THE

21   STANDARDIZED SCRIPT FOR THE SEMINARS.

22         MS. ECK:  RIGHT.  SO I MEAN, I THINK -- IN MY

23   OPINION, I THINK THE POWERPOINT WITH TALKING POINTS LOOKS A

24   LOT MORE LIKE A SCRIPT.  BUT, AGAIN, WHEN WE MET AND

25   CONFERRED ON THAT, THEY SAID, YOU KNOW, NO, BECAUSE THAT

1   DOESN'T HAVE THE WORD "SCRIPT" ON IT.  YOU KNOW, WE DON'T

2   BELIEVE IT'S A SCRIPT.  TO ME, THE FORMER EMPLOYEES TOLD US

3   THAT THEY BELIEVED THAT THAT WAS A SCRIPT.

4            IN REGARD TO THE -- THE SAME IN REGARD TO THE

5   GUARANTY OF SUCCESS.  YOU KNOW, I'VE SPOKEN TO OVER 200

6   STUDENTS NOW OF TRUMP UNIVERSITY, AND NEARLY EVERY SINGLE ONE

7   HAS TOLD ME THAT TRUMP REPRESENTATIVES AT THE SEMINAR TOLD

8   THEM, YOU KNOW, DON'T WORRY, IT SOUNDS LIKE A LOT OF MONEY,

9   $35,000, OR $1500, BUT DON'T WORRY ABOUT IT, YOU'LL MAKE IT

10  ALL BACK IN YOUR FIRST DEAL OR TWO, SO, YOU KNOW, JUST PUT IT

11  DOWN.  IT'S A GOOD INVESTMENT.

12           AND THEN WHEN I PUSHED THEM ON IT AND SAID, WELL,

13  DID THEY SAY THAT TO YOU ORALLY OR WAS IT IN A POWERPOINT OR

14  WAS IT IN WRITTEN MATERIAL?  I MEAN, FOR A LOT OF THEM, THIS

15  HAPPENED YEARS AGO, THEY SAID, I DON'T REMEMBER.  I THINK

16  THERE MAY HAVE BEEN A SEPARATE POWERPOINT, OR I THINK THAT I

17  DID GET SOMETHING IN WRITING.  SO THEN I SAID, WELL, YOU

18  KNOW, GET ME YOUR DOCUMENTS.  AND A LOT OF THEM HAVE WRITTEN

19  THIS IN LETTERS TO TRUMP UNIVERSITY.  A LOT OF THEM HAVE

20  NOTES WHERE THEY HAVE WRITTEN IT DOWN.

21           BUT AS FAR AS THE DOCUMENT FROM TRUMP SAYING, YOU

22  KNOW, YOU WILL MAKE YOUR MONEY BACK IN YOUR FIRST DEAL OR

23  TWO, WE HAVEN'T FOUND THE DOCUMENT THAT SAYS THAT.  I MEAN,

24  TO THE EXTENT IT EXISTS, YOU KNOW, I THINK IT WOULD BE IN

25  DEFENDANT'S POSSESSION.  BUT, AGAIN, WE'RE NOT WITHHOLDING

1    THIS AS SOME SORT OF GAMESMANSHIP.  I REALLY THINK IT COULD

2    STILL EXIST.

3         THE COURT:  THAT I ACCEPT.  WE'VE HEARD THE

4    REPRESENTATION MADE A MOMENT AGO THAT THE GUARANTY, YOU WERE

5    GOING TO RELY UPON ORAL TESTIMONY OF VARIOUS WITNESSES TO

6    SUPPORT THAT.  IN EFFECT, THAT IS WHAT IT IS, AND THAT'S

7    FINE.  MR. SCHNEIDER RECOGNIZES THAT.  I RECOGNIZE THAT.

8         BUT TO THE EXTENT THAT THERE WAS IMPLICATIONS THAT

9    THERE WAS A DOCUMENT OUT THERE THAT SAID, I GUARANTY, I,

10   DONALD TRUMP, GUARANTY THAT YOU WILL RECOUP YOUR -- THE PRICE

11   OF THIS -- OF ADMISSION OF THE SEMINAR WITHIN ONE OR TWO

12   DEALS, THE DOCUMENT THAT WAS PROVIDED WITH DONALD TRUMP'S

13   PICTURE ON IT, THAT DOESN'T COME EVEN CLOSE TO A GUARANTY.

14   IT ISN'T.

15        MS. ECK:  I UNDERSTAND THAT.  AND, AGAIN, TO THESE

16   SORTS OF THINGS, I DO THINK THE DISCOVERY IS ONGOING AND THAT

17   THESE DOCUMENTS MAY EXIST AND MAY NOT HAVE BEEN PROVIDED YET.

18   I MEAN, WE GET DOCUMENTS EVERY DAY.  WE GET DOCUMENTS FROM

19   THE DEPARTMENT OF EDUCATION, FROM THE A.G.'S OFFICE AND FROM

20   OTHER SOURCES, FROM CLASS MEMBERS THAT CONTACT US THAT WE'VE

21   NEVER SEEN BEFORE.  SO I THINK IT IS POSSIBLE THESE DOCUMENTS

22   EXIST, BUT WE'RE NOT WITHHOLDING THEM.

23        AND THE SAME THING IN REGARD TO THE ONE-YEAR

24   MENTORSHIP.  YOU KNOW, HAVING SPOKEN TO OVER 200 CLASS

25   MEMBERS, EVERY ONE THAT I'VE SPOKEN TO THAT HAS PURCHASED A

1    ONE-YEAR MENTORSHIP SAID -- OR THE MENTORSHIP HAS SAID, YOU

2    KNOW, I UNDERSTOOD THAT WHEN I PURCHASED IT, I WAS GETTING A

3    THREE-DAY FIELD, IN-PERSON MENTORSHIP, BUT THEN I UNDERSTOOD

4    THAT THIS MENTOR WOULD BE AVAILABLE TO ME FOR AN ENTIRE YEAR.

5         THEY SAID, YOU KNOW, ANY TIME YOU HAVE A QUESTION,

6    IF YOU HAVE ANY CONCERNS, GIVE ME A CALL, I'M GOING TO WALK

7    YOU THROUGH THIS HAND IN HAND, ALL THE WAY, HELP YOU MAKE

8    YOUR FIRST DEAL, YOU KNOW, HELP YOU THROUGH EVERY STEP OF THE

9    PROCESS.  AND, YOU KNOW, IT'S NOT A THREE-DAY MENTORSHIP,

10   IT'S A ONE-YEAR MENTORSHIP, EVEN THOUGH I'M ONLY IN PERSON

11   WITH YOU FOR THREE DAYS.  THAT IS HOW ALL THESE PEOPLE

12   UNDERSTOOD IT.  IN FACT, OVER AND OVER AGAIN THEY SAY, I

13   NEVER IN MY LIFE WOULD HAVE PAID $35,000 TO MEET WITH SOMEONE

14   FOR THREE DAYS, BUT THEY SAID, YOU KNOW, WE WILL BE WITH YOU

15   EVERY STEP OF THE WAY UNTIL YOU ARE SUCCESSFUL IN REAL ESTATE

16   INVESTING.

17        AND SO I THINK -- AND IT MAY BE THAT TRUMP

18   UNIVERSITY KIND OF TRIED TO CONFLATE THESE TWO IMAGES AND

19   SAY, YOU KNOW, YOU HAVE A YEAR -- AND SAY YOU HAVE A YEAR OF

20   SUPPORT AND YOU HAVE A THREE-DAY MENTORSHIP, BUT IN THE

21   SEMINARS, THEY TOLD STUDENTS THAT YOU WERE GOING TO GET A

22   YEAR OF WORKING WITH YOUR MENTOR AND SUPPORT FROM YOUR

23   MENTOR, AND THAT MEANT YOU COULD CALL THEM ANY TIME FOR AN

24   ENTIRE YEAR.  AND THEN IT TURNED OUT THAT WHEN THEY TRIED TO

25   AFTER THESE INITIAL THREE DAYS, THE MENTORS WERE OFTEN

1    UNAVAILABLE.

2              THE COURT:  OKAY.  MR. SCHNEIDER.

3              MR. SCHNEIDER:  YES.

4              THE COURT:  ONE FINAL COMMENT.

5              MR. SCHNEIDER:  IT'S ONE COMMENT WITH TWO PARTS.

6              THE SUGGESTION THAT MS. ECK JUST SAID, THAT WE TOLD

7    HER THAT THE POWERPOINT WAS NOT ADEQUATE IS NOT ONLY NOT

8    ACCURATE, IT DOESN'T MAKE COMMON SENSE.  ALL WE HAVE DONE IS

9    ASK THEM, GIVE US THE SCRIPT THAT YOU CONTEND WAS THE ONE

10   THAT WAS UNIFORM TO EVERYBODY.  IF THEY WANT TO IDENTIFY THE

11   SETTER SCRIPT AND THEY SAY, THIS IS IT, THIS IS ALL WE'VE

12   GOT, THEN WE'RE DONE.  BUT THEY HAVEN'T DONE THAT.  SO WE

13   HAVE NOT TOLD THEM WHAT THE SCRIPT IS.  WE'VE ASKED THEM TO

14   IDENTIFY THE SCRIPT.  SO THAT STATEMENT IS COMPLETELY FALSE,

15   THAT WE TOLD THEM THAT WON'T DO.

16             THERE ARE DOZENS OF DIFFERENT POWERPOINTS THAT HAVE

17   BEEN SUBMITTED.  I CAN'T TELL YOU THE EXACT NUMBER, BUT

18   THERE -- AND THEY ARE ALL DIFFERENT.  SO IF THEY WANT TO NOW

19   CHANGE COURSE AGAIN AND SAY, OKAY, FORGET ABOUT THAT SCRIPT,

20   NOW WE'RE GOING TO IDENTIFY THIS NEW POWERPOINT, WELL, THEN,

21   LET'S SEE WHICH ONE THEY ARE GOING TO IDENTIFY NOW.  IT'S

22   JUST A MYSTERY TO US.

23             THIS (INAUDIBLE) IS THAT THEY REPRESENTED THAT THIS

24   FORMER EMPLOYEE TESTIFIED THAT THE POWERPOINTS WERE THE

25   SCRIPTS.  THAT WAS NOT AN INSTRUCTOR OR MENTOR.  THIS IS AN

1    EVENT COORDINATOR WHO HAD NOTHING TO DO WITH TEACHING THE

2    PROGRAMS.  SHE WORKED FOR THEM FOR FIVE OR SIX MONTHS BACK IN

3    '07.  SHE'S NOT AN INSTRUCTOR.  SHE'S NOT A MENTOR.  SHE

4    NEVER TAUGHT A PROGRAM.  SHE NEVER STOOD ON THAT STAGE.  SO

5    HER UNDERSTANDING AS TO WHAT THE POWERPOINT PRESENTATIONS ARE

6    IS COMPLETELY IRRELEVANT.  SHE DIDN'T USE THEM.  SHE DIDN'T

7    PRESENT WITH THEM.

8            SO THIS IS SOMEBODY THAT THEY REPRESENTED, THAT I

9    DEPOSED, THAT THEY MADE AVAILABLE AND THAT FILED A

10   DECLARATION IN SUPPORT OF A MOTION.  AND HER OPINION THAT SHE

11   THINKS THAT THE POWERPOINTS WERE LIKE A SCRIPT, THAT'S --

12   THAT DOESN'T DO THE JOB.  THE PLAINTIFFS NEED TO COMMIT ONE

13   WAY OR THE OTHER AS TO WHAT THE SCRIPT IS, OR JUST SAY, WE

14   DON'T HAVE A SCRIPT.

15           THE COURT:  OKAY.  LET'S MOVE ON TO THE NEXT ISSUE.

16   THAT'S ALSO YOURS, MR. SCHNEIDER, WITH RESPECT TO THE 58

17   FORMERS -- EXCUSE ME, THE SUBPOENAS.

18           MR. SCHNEIDER:  YES, YOUR HONOR.

19           THE COURT:  THE 58 CLASS MEMBERS THAT YOU WOULD LIKE

20   TO --

21           MR. SCHNEIDER:  YES.

22           THE COURT:  -- SUBPOENA.

23           MR. SCHNEIDER:  THERE IS TWO LINES OF CASES ON

24   GETTING DISCOVERY FROM PUTATIVE CLASS MEMBERS.  AND, BY THE

25   WAY, YOUR HONOR, NOT ALL OF THESE ARE EVEN PUTATIVE CLASS

1    MEMBERS.  SOME OF THESE ARE JUST PURE WITNESSES THAT THEY

2    REPRESENT.

3           FOR EXAMPLE, BRANDON KELLER, WHO IS A NAMED

4    PLAINTIFF, TWO OF THE WITNESSES ARE HIS PARENTS, WHO HAVE

5    INFORMATION IN THE CASE.  AND WE BELIEVE THAT THERE ARE

6    OTHERS THAT AREN'T PUTATIVE CLASS MEMBERS AS WELL.  ONE OF

7    OUR REQUESTS WAS, DID YOU GO TO THE PROGRAM?  THE COURT MIGHT

8    REMEMBER AT THE END OF LAST YEAR, THEY WERE SENDING LISTS TO

9    US OF PEOPLE THAT WE CAN'T EVEN FIND IN THE SYSTEM.  SO WE

10   KNOW THAT THE 58 PEOPLE DO NOT INCLUDE ALL PUTATIVE CLASS

11   MEMBERS.

12          SO THE TWO LINES OF CASES BASICALLY COME DOWN TO

13   THIS, THAT THE LAW SEEMS TO BE THAT IT'S A FLEXIBLE STANDARD,

14   THAT IF IT IS INTENDED TO HARM THE CLASS, THAT THERE IS NO

15   OTHER WAY TO GET THE INFORMATION, AND IF IT LOOKS LIKE IT'S

16   WITH AN OPT-IN, REQUIRING TO OPT IN OR OPT OUT AND IT'S GOING

17   TO HURT THE CLASS AND BURDEN THEM AND POTENTIALLY ABUSE THEM,

18   THEN THE COURTS HAVE SAID, YOU CAN'T DO THAT, YOU CAN'T DO

19   THAT KIND OF DISCOVERY.

20          IN THOSE CASES, THE RITE-AID CASE AND THE OTHERS

21   ONE, THOSE WERE ATTEMPTS BY THE DEFENDANT TO PROPOUND

22   DISCOVERY TO 272,000 CLASS MEMBERS IN ONE CASE, 38,000 IN

23   ANOTHER CASE.  AND THEY WEREN'T JUST FOR DOCUMENTS.  THEY

24   WERE REQUESTS FOR ADMISSIONS WITH THE DEFENDANT STATING, IF

25   THEY DON'T ANSWER THE QUESTION, THEN IT'S GOING TO BE DEEMED

1    ADMITTED AGAINST YOU.  CLEARLY DESIGNED TO HARM THE CLASS.

2    AND IF THEY DON'T TAKE ANY ACTION, THEN THEY WOULD BE

3    PREJUDICED BY NOT TAKING ANY ACTION.  AND THE COURT I THINK

4    RECOGNIZED THAT THE WHOLE CONSTRUCT OF THAT DISCOVERY WAS SET

5    UP TO KIND OF HARM THE CLASS.

6            IN THIS CASE, THE POTENTIAL CLASS IS 6500 PEOPLE.

7    WE'VE PREPARED SUBPOENAS TO 58 OF THEM.  WHY THOSE 58?

8    BECAUSE THOSE 58 ARE NOT ONLY REPRESENTED BY PLAINTIFFS, THEY

9    WERE IDENTIFIED BY THE PLAINTIFFS AS HAVING DISCOVERABLE

10   INFORMATION; NOT JUST FACTS RELEVANT TO THE CASE, BUT

11   DISCOVERABLE INFORMATION.  AND THEY STATE IN THEIR DISCLOSURE

12   THAT THEY ARE WITNESSES LIKELY TO BE CALLED BY THE

13   PLAINTIFFS.  SO THEY HAVE IDENTIFIED 58 WITNESSES THAT HAVE

14   DISCOVERABLE INFORMATION, LIKELY TO BE CALLED IN THEIR

15   INITIAL DISCLOSURE.  SO WE SENT OUT DISCOVERY JUST TO THOSE

16   58.

17           IT'S NOT ONLY NOT ABUSIVE, IT'S NOT -- A LOT OF

18   THESE CASES TALK ABOUT DEPOSITIONS.  SOME OF THE CASES TALK

19   ABOUT 400 HOURS FOR DEPOSITIONS.  THIS IS A DOCUMENT REQUEST.

20   SO WE'RE NOT EVEN INVOLVED IN THE PROCESS.  WE CAN'T ABUSE

21   THE SITUATION.  WE'RE NOT TRYING TO INTIMIDATE THEM.  WE WANT

22   TO SEE WHAT THEY HAVE.  SO FOR THOSE 58 WITNESSES WE'VE ASKED

23   FOR DOCUMENTS IN EIGHT GENERAL CATEGORIES.  WE LIST SPECIFIC

24   REQUESTS, WHICH BOILS DOWN TO EIGHT GENERAL CATEGORIES, A LOT

25   OF WHICH WE DON'T HAVE.

1          FOR EXAMPLE, ON THE RELIANCE ISSUE, WHAT DID THEY

2     SEE OR RELY ON?  MS. MAKAEFF, THE LEAD PLAINTIFF, TESTIFIED

3     IN THIS CASE, SHE SAW NO ADS, SAW NO MATERIALS, ADVERTISING,

4     NO COMMERCIALS OR VIDEO.  SHE DIDN'T KNOW ONE THING ABOUT

5     TRUMP UNIVERSITY WHEN SHE WALKED IN WITH A FRIEND TO GO TO

6     THE PROGRAM.  THAT'S AN IMPORTANT ISSUE ON CLASS

7     CERTIFICATION AND MERITS, IN TERMS OF RELIANCE.  SHE WAS

8     ASKED, WHAT DID YOU ALL SEE BEFORE YOU PURCHASED THE TRUMP

9     UNIVERSITY PROGRAM?  WAS IT AN AD?  DID YOU GO AT ALL.

10          THERE IS A CLAIM THAT A LOT OF PEOPLE HAVE

11     COMPLAINED, AND THERE HAS BEEN THIS CONSTANT MONIKER BY THE

12     PLAINTIFFS THAT WE HAVEN'T PRODUCED DOCUMENTS, THAT THEY ARE

13     AWARE OF COMPLAINTS THAT WE HAVEN'T PRODUCED.  ALL RIGHT.

14     ARE THESE ANY OF THE PEOPLE THAT YOU REPRESENT?  WHERE IS

15     THIS STATEMENT COMING FROM?  IS IT COMING FROM THE PEOPLE

16     THAT YOU REPRESENT?  DO THEY HAVE DOCUMENTS THAT WE DON'T

17     HAVE THAT ARE COMPLAINTS, EITHER TO TRUMP UNIVERSITY, WHICH

18     WE DIDN'T GET, OR TO GOVERNMENT AGENCIES, WHICH WE DIDN'T

19     NECESSARILY GET.  AND THERE HAS BEEN A LOT OF DOCUMENTS THAT

20     WERE ADDRESSED IN THE LAST HEARING ON THIS THAT WENT DIRECTLY

21     TO GOVERNMENT AGENCIES THAT WE NEVER GOT.  AND THAT'S WHY WE

22     DIDN'T PRODUCE THEM.

23          WE HAVE NOW LEARNED IN THE LAST COUPLE OF WEEKS,

24     AFTER OBJECTIONS AND A LONG DELAY, THAT IT TURNS OUT THAT

25     MS. MAKAEFF PREPARED A BLOG IN WHICH SHE PUT ON THE INTERNET

1    A HOW TO REPORT TO THE DEPARTMENT OF JUSTICE, THE BETTER

2    BUSINESS BUREAU, THE NEW YORK ATTORNEY GENERAL'S OFFICE, LIKE

3    A 20-POINT STEP OF HOW TO FOLLOW A COOKBOOK ABOUT HOW TO

4    REPORT TRUMP UNIVERSITY TO EVERY AGENCY.

5            SO WE SAID, OKAY, DID THESE PEOPLE DO THAT?  IS THIS

6    WHAT'S GOING ON?  IS THIS WHY -- BECAUSE THE REPLY PAPERS BY

7    THE PLAINTIFFS HAVE FOCUSED HEAVILY ON THE FACT THAT THE

8    BETTER BUSINESS BUREAU AND THESE VARIOUS GOVERNMENT AGENCIES

9    HAVE BEEN LOOKING INTO TRUMP UNIVERSITY.  AND IT TURNS OUT

10   THAT BACK IN '09, MS. MAKAEFF WROTE LITERALLY A COOKBOOK, A

11   TO-DO, HOW TO -- IT'S LITERALLY CALLED HOW TO -- MADE WITH

12   THE ASSISTANCE OF COUNSEL OR NOT -- OF HOW TO REPORT TRUMP

13   UNIVERSITY TO A DOZEN DIFFERENT AGENCIES.

14           SO THEY CLAIM, THE PLAINTIFFS CLAIM THAT THERE ARE

15   OTHER COMPLAINTS TO AGENCIES OUT THERE.  SO WE BELIEVE THAT

16   THIS MIGHT SHED SOME LIGHT INTO HOW THESE INVESTIGATIONS

17   STARTED.  AND WE DON'T HAVE THESE DOCUMENTS EITHER.

18           I ADDRESSED SOME OF THE OTHER CATEGORIES.  I DON'T

19   KNOW IF THE COURT WANTS ME TO --

20           THE COURT:  I'VE LOOKED AT THEM ALL.  LET ME ASK YOU

21   THIS BEFORE THE PLAINTIFF GETS UP TO MAKE THEIR ARGUMENT.

22           ONE OF THE POINTS THAT THEY RAISE IS THAT THE 58

23   SUBPOENAS, 56 OF THESE INDIVIDUALS DO NOT RESIDE OR ARE

24   LOCATED HERE IN THIS DISTRICT.  AND ACCORDING TO RULES OF

25   CIVIL PROCEDURE, ANY LITIGATION REGARDING THAT SUBPOENA WOULD

1    HAVE TO OCCUR IN THE DISTRICT WHERE THAT INDIVIDUAL RESIDES.

2             HOW DO YOU RESPOND THAT TO THAT?

3             MR. SCHNEIDER:  I THOUGHT IT WAS AN INTERESTING

4    ARGUMENT, BUT THE CASE LAW SAID, IF YOU WANT TO BRING A

5    MOTION TO QUASH, IT NEEDS TO BE BROUGHT IN THE DISTRICT WHERE

6    THE SUBPOENA WAS ISSUED.  THAT'S NOT THE ISSUE.  WE'RE NOT

7    SEEKING TO MODIFY THE SUBPOENA, AND THEY DIDN'T BRING A

8    MOTION TO QUASH.

9             IN THAT ONE CASE, IT WAS A THIRD PARTY, NONPARTY

10   WITNESS, THE SEC HAD FILED -- HAD ISSUED A SUBPOENA TO GET

11   BANK RECORDS TO A BANK, AND A LAWYER IN NEVADA BROUGHT A

12   MOTION TO QUASH IN NEVADA.  AND THE COURT SAID, YOU GOT TO

13   BRING IT IN THE COURT THAT'S ISSUING THE SUBPOENA.  SO THEY

14   DIDN'T BRING A MOTION TO QUASH.  THEY DIDN'T MENTION IT IN

15   THE MEET AND CONFER.  THE FIRST TIME WE SAW THIS WAS

16   YESTERDAY IN THEIR JOINT STATEMENT.

17            THE SECOND POINT IS THAT THE COURT MAY RECALL -- AND

18   THIS IS GOING TO BE IN THE NEXT ARGUMENT.  IT'S ACTUALLY SORT

19   OF INTERESTING -- THAT WHAT'S GOOD FOR THE GOOSE IS GOOD FOR

20   THE GANDER; RIGHT.  THAT WHAT THEY HAVE BEEN ARGUING ABOUT

21   THESE FORMERS IS THAT THIS ISN'T A SUBPOENA ISSUE.  THIS IS A

22   RULE 34 ISSUE.  SO RULE 34 REQUIRES THAT MY CLIENT GO GET

23   DOCUMENTS FROM EVERYBODY THAT HAS CONTROL OF THEM.  THEY NOT

24   ONLY HAVE CONTROL OVER THESE 58 WITNESSES, THEY REPRESENT

25   THEM IN THE CASE.  THEY HAVE IDENTIFIED THEM AS WITNESSES

1  WITH DISCOVERABLE INFORMATION AND WITH INFORMATION THAT THEY

2  ARE LIKELY TO USE TO SUPPORT THEIR CLAIMS.

3          AND FINALLY ON THE TECHNICAL ISSUE, WE COULD ALWAYS

4  REISSUE THE SUBPOENAS WITH THIS COURT.  MY PRACTICE HAS BEEN

5  THAT YOU USE THE COURT WHERE THE WITNESS RESIDES.  AND I

6  THINK THE COURT HAS JURISDICTION ACROSS THE COUNTRY, IF I WAS

7  GOING TO REISSUE IT.  BUT I THINK RULE 34 AVOIDS THE WHOLE

8  ISSUE ANYWAY.  AND, AGAIN, IT'S FOR A MOTION TO QUASH, WHICH

9  HAS NEVER BEEN BROUGHT BEFORE THE COURT.

10          THE COURT:  THANK YOU.

11          MR. MERRICK:  I'LL ADDRESS THE LAST ISSUE FIRST.

12          THIS ISN'T A RULE 34 REQUEST OF PRODUCTION.  THIS IS

13  A RULE 45, NONPARTY SUBPOENA.  THESE ARE NOT PARTIES TO THE

14  CASE AT THIS POINT.  AND SO REALLY THE RULES OF CIVIL

15  PROCEDURE WOULD REQUIRE THAT ANY MOTION PRACTICE AS TO THESE

16  SUBPOENAS WOULD HAPPEN IN THOSE DISTRICTS.  JUST BECAUSE THE

17  CASE THAT WE CITED WAS FOR A MOTION TO QUASH.  WE HAVE

18  OBJECTED, THEY HAVE NOT MOVED TO COMPEL COMPLIANCE WITH THE

19  SUBPOENAS, AND THOSE MOTIONS WOULD ALSO HAVE TO BE IN THE

20  OTHER DISTRICTS.

21          AS TO THE TIT-FOR-TAT ARGUMENT THAT, WELL, BECAUSE

22  THEIR FORMER EMPLOYEES THAT THEY HAVE CONTROL OVER WERE --

23  THE COURT DECIDED, WERE SUBJECT TO THE RULE 34 REQUEST FOR

24  PRODUCTION IS A COMPLETELY DIFFERENT THING THAN A NONPARTY.

25  AND THE RULE 34 REQUEST WAS TO A PARTY.  THESE WERE EMPLOYEES

1    OF THE PARTY WHO HAD CONTROL OVER, AT LEAST THEORETICAL

2    CONTROL OVER THESE PARTIES THAT THEY COULD PRODUCE DOCUMENTS.

3    THIS IS A RULE 45 SUBPOENA TO NONPARTIES.  THERE IS NO

4    CONTROL ISSUE EVEN INVOLVED IN THIS.  THEY ARE CONFLATING TWO

5    DIFFERENT THINGS.

6            I THINK -- GOING BACK TO THE BEGINNING OF

7    MR. SCHNEIDER'S ARGUMENT, I DON'T THINK THAT THE IMPORTANT

8    THING IN THE CASES WHERE THEY DIDN'T ALLOW -- WHERE THEY

9    DIDN'T ALLOW THE SUBPOENAS OR THIRD PARTY DISCOVERY WAS

10   BECAUSE OF HOW BROAD IT WAS.  FOR EXAMPLE, THE WASHINGTON

11   MUTUAL CASE, WHICH IS IN OUR -- CITED IN OUR PAPERS, IT WAS

12   ONLY 12 SUBPOENAS ISSUED IN THAT CASE, AND THERE IS 58 IN

13   THIS CASE.  SO IN THAT SENSE, I THINK REALLY THE ISSUE IS

14   WHETHER OR NOT THE RULES THAT ARE LAID OUT IN THE MCPHAIL

15   CASE THAT JUDGE ADLER DOES A GOOD JOB OF SUMMARIZING HAVE

16   BEEN MET, AND THAT'S HOW THE COURT DOES THE ANALYSIS.

17           YOU KNOW, WHETHER OR NOT THE DISCOVERY WAS --

18           THE COURT:  BUT IN JUDGE ADLER'S CASE, THAT WAS A

19   CLASS ACTION WHERE THERE WAS A 170 SOME THOUSAND PUTATIVE

20   CLASS MEMBERS AND DISCOVERY IS GOING OUT TO ALL OF THEM;

21   RIGHT?  SO DON'T YOU THINK THAT THAT SOMEHOW -- THAT'S THE

22   CASE; RIGHT?

23           MR. MERRICK:  YES.  BUT THAT ISN'T -- BUT THAT'S NOT

24   THE ANALYSIS THAT HE GOES THROUGH.  IT'S NOT THAT IT WAS

25   BURDENSOME BECAUSE IT WAS GOING TO EVERYBODY.  IT WAS THAT

1   THEY DIDN'T NEED THE -- THEY DIDN'T NEED THE DISCOVERY.

2          LIKE, FOR EXAMPLE, MR. SCHNEIDER BRINGS UP THE

3   RELIANCE ISSUE.  AND, AGAIN, THE MCPHAIL CASE IS PERFECTLY ON

4   POINT FOR THIS.  IT SAYS THE PRESUMPTION OF RELIANCE FOUND IN

5   THIS CASE RESTS UPON A SHOWING -- JUST LIKE IN OUR CASE -- BY

6   PLAINTIFFS THAT THE SCRIPT USED BY DEFENDANT'S SALES

7   REPRESENTATIVES CONTAIN MATERIAL MISREPRESENTATIONS AND THAT

8   THE SALES REPRESENTATIVES USED A UNIFORM SCRIPT.  THE

9   DEFENDANTS CAN REBUT THE PRESUMPTION BY SHOWING THAT THE

10  SCRIPT DID NOT CONTAIN MATERIAL MISREPRESENTATIONS OR THAT

11  THE ORAL MISREPRESENTATIONS WERE NOT UNIFORM.

12          SO THE ENTIRE RELIANCE ISSUE CAN BE PROVEN WITHOUT

13  HAVING TO ISSUE SUBPOENAS TO ABSENT CLASS MEMBERS.  AND AS

14  THE COURT IS AWARE, GENERALLY, ABSENT CLASS MEMBERS ARE NOT

15  SUBJECT TO DISCOVERY IN A CLASS ACTION.

16          THE COURT:  DID YOU RESPOND TO MR. SCHNEIDER'S

17  COMMENT MADE IN HIS PAPERS THAT THE OBJECTIONS THAT YOU LODGE

18  WERE SIMPLY ALL BOILERPLATE?  AND I HAVE TO SAY THAT AS I

19  READ THROUGH ALL THOSE OBJECTIONS, EACH AND EVERY ONE OF THEM

20  WAS A BOILERPLATE OBJECTION, THAT THERE WAS NO SUBSTANCE TO

21  ANY OBJECTION THERE, NO SPECIFIC INDICATION AS TO WHY A

22  PARTICULAR REQUEST WAS IRRELEVANT OR WHY IT WAS INAPPROPRIATE

23  OR WHY IT WAS BURDENSOME.  THERE WERE JUST BOILERPLATE,

24  STANDARDIZED OBJECTIONS THAT I FREQUENTLY SEE, AFTER YOU HAD

25  BEEN ADMONISHED FROM DOING -- FROM GIVING AND PROVIDING

1   BOILERPLATE OBJECTIONS.

2         HOW DO YOU RESPOND TO THAT?

3         MR. MERRICK:  WELL, WE DID MEET AND CONFER ON OUR

4   OBJECTIONS WITH DEFENSE COUNSEL AFTER THE FACT AND GAVE THEM,

5   YOU KNOW, THE ARGUMENTS THAT WE'RE MAKING HERE TODAY.  SO, I

6   MEAN, WE PRESERVED THOSE OBJECTIONS, BUT OBVIOUSLY WE

7   DISCUSSED OTHER OBJECTIONS WITH DEFENSE COUNSEL AS WELL, OR

8   THE OTHER REASONS.  SO IN THAT SENSE, IT WASN'T ALL

9   BOILERPLATE.

10        THE COURT:  WELL, WHAT I HAVE IN FRONT OF ME IS ALL

11  BOILERPLATE.  AND, OF COURSE, YOU KNOW, LIVE BY THE SWORD,

12  DIE BY THE SWORD.  AND WE CAN RELY UPON THE RULES OF CIVIL

13  PROCEDURE, AND, OF COURSE, THOSE RULES AND THE CASES THAT

14  FLOW FROM THEM ALL TALK ABOUT THAT BOILERPLATE OBJECTIONS ARE

15  SIMPLY -- YOU KNOW, WAIVE THE OBJECTION AND THE DISCOVERY

16  MUST BE PRODUCED.

17        MR. MERRICK:  THEY STILL HAVE THE BURDEN, THOUGH,

18  YOUR HONOR, TO SEEK A SUBPOENA FROM A THIRD PARTY ABSENT

19  CLASS MEMBER TO MEET THE CRITERIA IN ORDER TO MAKE THAT -- IN

20  ORDER TO SEEK THAT DISCOVERY.

21        THE COURT:  SAY THAT AGAIN.

22        MR. MERRICK:  THEY STILL HAVE THE BURDEN, THE

23  DEFENDANTS STILL HAVE THE BURDEN UNDER THE CASE LAW THAT THEY

24  HAVE TO MEET CERTAIN CRITERIA IN ORDER TO HAVE A LEGITIMATE

25  SUBPOENA TO AN ABSENT THIRD-PARTY CLASS MEMBER.

1      THE COURT:  WELL, THERE IS PLENTY OF CASES OUT

2  THERE -- AND MR. SCHNEIDER CITES THEM -- AND THEY ARE ALL

3  VALID CASES, THAT TALK ABOUT THE FLEXIBILITY AND THE

4  DISCRETION THAT THE COURT HAS IN CLASS ACTION LAWSUITS TO

5  ALLOW DISCOVERY FLOWING FROM THE UNNAMED PLAINTIFFS AND THE

6  PUTATIVE CLASS MEMBERS, SO THERE IS SOME FLEXIBILITY THERE.

7  IT'S NOT A HARD-AND-FAST RULE.  WE ALL RECOGNIZE THAT.

8      MR. MERRICK:  SURE.  THERE IS FLEXIBILITY AS LONG AS

9  THE CRITERIA HAS BEEN MET, WHICH DEFENDANTS DON'T MEET.  BUT,

10  I MEAN, USING THE ANTONETTI (PHONETIC) CASE AND THE ROJAS

11  CASE, THOSE ARE WHERE CLASS MEMBERS SUBMITTED DECLARATIONS IN

12  SUPPORT OF CLASS CERTIFICATION.  I MEAN, THAT'S A BIG

13  DIFFERENCE.  THEY GAVE TESTIMONY.  AND IN THE OTHER CASE, THE

14  MOSS CASE, THE PLAINTIFFS AGREED TO ALLOW THE DEPOSITIONS TO

15  GO FORWARD.  SO THOSE CASES, ON THEIR FACE, ARE INAPPOSITE.

16      THE COURT:  ALL RIGHT.  ANYTHING ELSE ON THIS?

17      MR. MERRICK:  YEAH.  AGAIN, GOING THROUGH THE FOUR

18  CRITERIA, MOST OF THIS INFORMATION IS ALREADY IN DEFENDANT'S

19  POSSESSION.  THE ADS THAT THEY ARE LOOKING FOR ARE THEIR ADS.

20  ABSENT THIRD-PARTY CLASS MEMBERS HAD NO OBLIGATION TO

21  MAINTAIN ANY ADS FROM TRUMP UNIVERSITY ANYWAY.

22      THE COMPLAINTS THAT THEY ARE TALKING ABOUT, WE DON'T

23  KNOW THAT THERE IS ANY OUT THERE, THEY DON'T KNOW THAT THERE

24  IS ANY OUT THERE FROM THESE PARTICULAR WITNESSES THAT THEY

25  ARE LOOKING FOR.  KEEP IN MIND, THE ONLY WITNESSES THAT THEY

1    HAVE SUBPOENAED ARE PEOPLE WHO AGREED, WHO WANTED TO BE

2    REPRESENTED BY US AND CONTACTED THE DEFENDANTS.

3         ALL OF THE OTHER CLASS MEMBERS, THE ENTIRE RANGE OF

4    OTHER CLASS MEMBERS ARE STILL AVAILABLE TO DEFENDANTS TO GO

5    OUT AND LOOK FOR OTHER THINGS.  AND THEY HAVE BEEN DOING

6    THAT.  THEY THEY HAVE BEEN CONTACTING OTHER PUTATIVE CLASS

7    MEMBERS AND TRYING TO GET INFORMATION.  THAT'S KIND OF TAKING

8    UNDUE ADVANTAGE OF THE CLASS MEMBERS IN THIS CASE, THAT

9    SIMPLY BECAUSE THEY AGREED TO TALK TO US, THAT, THEREFORE,

10   THEY WOULD BE SUBJECT TO SUBPOENAS.  I MEAN, THAT'S HARASSING

11   JUST FOR THAT REASON.

12        THE STANDARD ALSO FOR THE INITIAL DISCLOSURES IS

13   THESE ARE PEOPLE WHOSE TESTIMONY MAY BE USED TO SUPPORT THE

14   CLAIMS.  THEORETICALLY ALL FORMER STUDENTS TESTIMONY COULD BE

15   USED TO SUPPORT OUR CLAIMS.  SO THE FACT THAT THESE PEOPLE

16   WANTED TO TALK TO US SPECIFICALLY, WHICH IS THE ONLY REASON

17   WHY THE DEFENDANTS GOT THEIR NAMES, REALLY DOESN'T MAKE THEM

18   ANY DIFFERENT OR ANY MORE SPECIAL THAN EVERY OTHER

19   NONREPRESENTED PUTATIVE CLASS MEMBER.

20        AGAIN, THESE ARE NOT NARROWLY DEFINED.  THERE IS 58

21   SUBPOENAS, THERE IS 21 DOCUMENT REQUESTS IN EACH SUBPOENA.

22   RESPONDING TO THEM WOULD REQUIRE THE ASSISTANCE OF COUNSEL.

23   A COUPLE OF THEM IN PARTICULAR, LEGAL ISSUE WHETHER RECORDS

24   LIMITATIONS THAT YOU RELIED ON OR THAT REFERS TO, REFLECTS OR

25   RELATES TO A SETTLEMENT AGREEMENT OR RELEASE.  I MEAN, THOSE

1    ARE ALL LEGAL ISSUES THAT THEY WOULD NEED COUNSEL IN ORDER TO

2    DO.

3              WE WOULD ALSO HAVE TO SEARCH, CALL, CATALOG AND

4    PRODUCE ANY DOCUMENTS FROM THESE PEOPLE.  SO, AGAIN, IT ISN'T

5    A DIRECT THIRD-PARTY SUBPOENA.  THEY WOULD REQUIRE THE

6    ASSISTANCE OF COUNSEL, WHICH IS, AGAIN, ONE OF THE -- ONE OF

7    THE CRITERIA.  I MEAN -- AND ALSO, OF COURSE, THAT'S

8    EXPENSIVE AND TIME CONSUMING BOTH FOR THE PUTATIVE CLASS

9    MEMBER AND FOR COUNSEL.

10             AND WITH THAT, I'LL LET YOU ASK ME QUESTIONS OR I'LL

11   SET DOWN.

12             THE COURT:  YOU CAN HAVE A SEAT.

13             MR. SCHNEIDER, WHAT ABOUT THE POINT THAT OTHER THAN

14   THE 58 THAT HAVE BEEN IDENTIFIED AS BEING REPRESENTED BY THE

15   PLAINTIFFS' COUNSEL, THERE IS THOUSANDS OF OTHER PUTATIVE

16   CLASS MEMBERS OUT THERE THAT ARE UNREPRESENTED, AND YOU'RE

17   MAKING EFFORTS TO TRACK THOSE FOLKS DOWN AND TALK TO THEM AND

18   SEEK THESE SAME SORT OF DOCUMENTS.  WHY ISN'T THAT

19   SUFFICIENT?

20             MR. SCHNEIDER:  THE ANSWER TO THAT IS IN TWO PARTS.

21   THE FIRST IS THAT PLAINTIFFS' COUNSEL BLANKETED THE PUTATIVE

22   CLASS WITH A LETTER, WHICH WE INCLUDED, TO HUNDREDS OF PEOPLE

23   URGING THEM NOT TO TALK TO US.  AND WHILE I THINK THAT'S

24   INAPPROPRIATE, THAT'S ONE OF THE REASONS.

25             THE SECOND IS IS THAT THESE AREN'T WITNESSES THAT

1    WERE -- WE'RE NOT CONTACTING OR SUBPOENAING THESE 58

2    WITNESSES BECAUSE THEY CALLED PLAINTIFFS' COUNSEL.  WE

3    SUBPOENAED THESE 58 WITNESSES BECAUSE THEY SAID TWICE IN

4    THEIR DISCLOSURE, QUOTE, PLAINTIFFS ARE LIKELY TO CALL

5    WITNESSES WHO HAVE DISCOVERABLE INFORMATION THAT SUPPORT

6    THEIR CLAIMS, INCLUDING THESE CERTAIN CLASS MEMBERS.

7    PLAINTIFFS ARE AWARE OF THE FOLLOWING INDIVIDUALS WHO ARE

8    LIKELY TO HAVE DISCOVERABLE INFORMATION THAT PLAINTIFFS MAY

9    USE TO SUPPORT THEIR CLAIMS.

10         SO I DON'T KNOW ABOUT THE OTHER 6,000 PEOPLE,

11   WHETHER THEY HAVE INFORMATION OR NOT, THAT ARE GOING TO

12   SUPPORT THE PLAINTIFFS' CLAIMS.  BUT THE PLAINTIFFS HAVE

13   IDENTIFIED, OR PLAINTIFFS' COUNSEL HAS IDENTIFIED THESE 58

14   THAT THEY REPRESENT THAT HAVE DISCOVERABLE INFORMATION THAT

15   SUPPORT THE CLAIMS.  SO I WANT TO DISCOVER THE INFORMATION

16   THAT THEY HAVE TO SUPPORT THEIR CLAIMS.  SO THAT'S WHY WE

17   SELECTED THEM.

18         THE COURT:  OKAY.  THANK YOU.

19         QUICKLY.

20         MR. MERRICK:  OKAY.  TWO THINGS.  ONE IS, AS FAR AS

21   BOILERPLATE OBJECTIONS IS CONCERNED, ONE OF OUR OBJECTIONS IS

22   UNDUE BURDEN AND EXPENSE ON A PERSON SUBJECT TO SUBPOENA,

23   WHICH ALSO -- AND THEY'RE BURDENSOME, OPPRESSIVE AND

24   UNNECESSARILY CUMULATIVE AND DUPLICATIVE BECAUSE THEY ARE

25   DOCUMENTS THAT ARE ALREADY IN THE DEFENDANT'S POSSESSION.

1    BOTH OF THOSE THINGS ARE MAJOR PARTS OF WHAT OUR ARGUMENT IS

2    ABOUT THESE SUBPOENAS.

3            THE OTHER POINT AS FAR AS THE LETTERS ARE CONCERNED,

4    WHAT WE DID -- AS YOU MAY RECALL, THE COURT REQUIRED US TO

5    TURN OVER CONTACT INFORMATION FOR ANY CLASS MEMBERS THAT HAD

6    CONTACTED US THAT WE TALKED TO.  THAT'S WHERE THOSE NAMES

7    CAME FROM.  SO WHAT WE SIMPLY DID WAS SEND THEM A LETTER

8    WARNING THEM THAT THE COURT HAS REQUIRED US TO TURN OVER

9    CONTACT INFORMATION FROM YOU.  YOU ARE UNDER NO OBLIGATION TO

10   SPEAK TO THE DEFENDANTS, AND IF YOU WANT US TO REPRESENT YOU

11   IN THE LIMITED CAPACITY OF YOUR CONTACT WITH DEFENSE COUNSEL,

12   LET US KNOW.  THAT WAS IT.

13           I MEAN, IT MAKES IT SOUND NEFARIOUS, BUT IT

14   CERTAINLY ISN'T.

15           THE COURT:  I'VE READ THE LETTER.  AND, I MEAN, THAT

16   PORTION THAT YOU DON'T HAVE TO TALK IS BOLDED AND IT'S

17   HIGHLIGHTED AND IT'S -- THE FONT IS LARGER.  BUT THAT

18   LETTER -- DID THAT LETTER GO OUT TO ALL PUTATIVE CLASS

19   MEMBERS?

20           MR. MERRICK:  NO.  WE DON'T HAVE A LIST OF ALL

21   PUTATIVE CLASS MEMBERS.

22           THE COURT:  ALL RIGHT.

23           MR. MERRICK:  IT WAS ONLY THE PEOPLE THAT HAD

24   PREVIOUSLY CONTACTED US BECAUSE THE COURT HAD REQUIRED US TO

25   TURN OVER THE CONTACT INFORMATION.

1          THE COURT:  ALL RIGHT.  I THINK THAT'S IT FOR YOUR

2     ISSUES, MR. SCHNEIDER.  IS THAT RIGHT?

3          MR. SCHNEIDER:  YES, YOUR HONOR.

4          THE COURT:  ALL RIGHT.  SO LET'S MOVE ON TO I THINK

5     THE SOLE ISSUE THAT YOU MAY HAVE.

6          MR. MERRICK:  YES.

7          THE COURT:  AND THAT'S WITH THE FORMERS.

8          MR. MERRICK:  YEAH.  I THINK -- FRANKLY, I THINK

9     THAT MR. SCHNEIDER MAY HAVE FORGOTTEN WHAT THE LAST HEARING

10     WAS ABOUT.  THE LAST HEARING WAS NOT ABOUT ENFORCING OUR

11     SUBPOENAS.  IT WAS ABOUT THE SCOPE OF TRUMP UNIVERSITY'S DUTY

12     TO SEARCH FOR AND PRODUCE DOCUMENTS FOR FORMER EMPLOYEES OVER

13     WHICH IT HAD CONTROL.  AND YOU REMEMBER, I GOT UP HERE AND

14     MADE AN ARGUMENT THAT IT SHOULD BE ALL FORMER EMPLOYEES, THAT

15     THEY SHOULD HAVE CONTACTED AND TRIED TO GET DOCUMENTS IF

16     THERE WERE ANY THAT WERE DISCOVERABLE.

17          THE COURT NARROWED THAT UNDERSTANDABLY TO THOSE

18     WHICH THEY SAID THAT THEY REPRESENTED THAT THEY -- YEAH, THAT

19     THEY REPRESENTED.  I THINK THAT'S FINE.  BUT THIS ISN'T ABOUT

20     THE SUBPOENAS.  MR. SCHNEIDER TRYING TO MAKE THIS ABOUT THE

21     22 SUBPOENAS IS A RED HERRING -- AGAIN, AN OVERUSED TERM --

22     BUT IT'S CONFUSING TWO DIFFERENT THINGS.

23          THE NUMBER 22 CAME FROM MR. SCHNEIDER'S

24     REPRESENTATION TO THE COURT THAT THAT'S HOW MANY THERE WERE.

25     AS HE POINTED OUT, IN OUR SUBMISSION, OUR MOVING PAPERS, WE

1    SAID THERE WERE 34 PEOPLE THAT DEFENDANTS SAID THAT THEY

2    REPRESENTED, DEFENSE COUNSEL SAID THEY REPRESENTED.  AND THAT

3    ALL 34 OF THOSE PEOPLE AT LEAST SHOULD BE SUBJECT TO THE RULE

4    34 DOCUMENT REQUEST REQUIREMENT.

5         THE JOINT STATEMENT DOESN'T EVEN TALK ABOUT

6    SUBPOENAS.  YOUR ORDER DOESN'T TALK ABOUT SUBPOENAS.  SO THE

7    SUBPOENA THING, I JUST DON'T KNOW WHERE THAT'S COMING FROM.

8    SO WHEN WE MET AND CONFERRED, ALL WE WANTED TO DO IS THERE

9    ARE SIX MORE PEOPLE THAT THEY CLAIM TO REPRESENT THAT THEY

10   HAVE NOT GONE BACK AND SEARCHED FOR THE DOCUMENTS IN

11   ACCORDANCE WITH THE ORDER THAT THE COURT PROVIDED LAST TIME.

12   WE'RE JUST ASKING THEM TO GO BACK AND DO THOSE SIX.  THEY

13   REFUSED.  THAT'S WHY WE'RE IN FRONT OF THE COURT.

14        MR. SCHNEIDER:  THAT'S NOT ENTIRELY ACCURATE, YOUR

15   HONOR.  IF THE COURT LOOKS AT EXHIBIT R, WHERE THIS ALL

16   STARTED.

17        THE COURT:  ALL RIGHT.

18        MR. SCHNEIDER:  I RECEIVED THIS LETTER ON MAY 15 OF

19   LAST YEAR FROM MS. ECK, AND SHE SAID IN THE LETTER, HERE ARE

20   22 SUBPOENAS.  THE SUBPOENAS HAD SPECIFIC DOCUMENTS THAT THEY

21   WANTED FROM THESE FORMER EMPLOYEES AND FORMER INDEPENDENT

22   CONTRACTORS.  SHE ASKED US TO GO GET THOSE DOCUMENTS.  AND

23   THE COURT MAY RECALL THAT I AGREED, OR OFFERED TO CONTACT

24   THEM AND SEE IF THEY WANTED ME TO HANDLE THE SUBPOENA; THAT

25   WAS THE ISSUE, HANDLE THE SUBPOENAS.

1           SO I SENT OUT LETTERS AND E-MAILS TO THEM ALL AND

2    SAID, DO YOU WANT ME TO HANDLE THE SUBPOENA?  AND AS YOU MAY

3    RECALL, MR. MERRICK WAS HERE SAYING, WELL, THERE IS MORE THAN

4    ONE WAY TO SUGGEST -- DO YOU WANT ME TO HANDLE THE SUBPOENA

5    FOR YOU, YOU CAN SAY IT IN A WAY THAT THEY WOULDN'T WANT TO

6    DO IT.  SO THE WHOLE THING STARTED FROM THE SUBPOENA.  THAT

7    WAS THE LIST OF DOCUMENTS THAT THEY SOUGHT FROM THESE

8    WITNESSES.

9           THE ISSUE ON THE 34, THE RULE 34 WAS CONTROL ISSUE.

10   DID WE HAVE CONTROL OF THESE?  AND THE COURT DETERMINED THAT

11   BECAUSE I'M REPRESENTING THEM FOR THE LIMITED PURPOSE OF

12   DISCOVERY IN THIS CASE, THAT I HAVE SUFFICIENT CONTROL TO AT

13   LEAST CONTACT THEM AND SEE IF THEY ARE GOING TO RESPOND.  AND

14   THE COURT ASKED ME, OR ORDERED ME TO PRODUCE DOCUMENTS TO

15   HAVE THEM -- LET COUNSEL KNOW OF MY EFFORTS, IF THEY DIDN'T

16   RESPOND AND IF THEY DON'T HAVE ANY DOCUMENTS, LET THEM KNOW.

17          SO THAT WAS THE REASON WHY WE WERE HERE, WAS ABOUT

18   THE DELTA BETWEEN WHO AUTHORIZED ME TO ACCEPT SERVICE AND WHO

19   DIDN'T IN RESPONSE TO A SUBPOENA.  THAT'S HOW THIS STARTED,

20   WAS A SUBPOENA FOR 22 WITNESSES.  AFTER WE FULLY COMPLIED,

21   THEY MUST HAVE GONE BACK AND LOOKED AT THEIR LETTER AND

22   LOOKED AT THE INITIAL DISCLOSURE AND SAID, OOPS, YOU KNOW

23   WHAT, WE FORGOT TO SUBPOENA THE OTHER 12 PEOPLE; WE WANT ALL

24   OF THEIR RECORDS.

25          SO MS. JENSEN WROTE ME A LETTER AND SAID, WE WANT

1    YOU TO GO BACK AND GET DOCUMENTS FROM THE OTHER 12.  SO I

2    SAID, JUST SEND OVER A SUBPOENA.  THESE ARE INDEPENDENT

3    CONTRACTORS.  I NEED A SUBPOENA TO GO TO THEM.  WHO DO YOU

4    WANT, TELL ME WHAT YOU WANT.  THIS IS TWO DAYS LATER,

5    JANUARY 25.  I SAID, SEND ME A SUBPOENA.

6         FOUR TIMES, INCLUDING WITH THE COURT'S CLERK ON THE

7    LINE WHEN WE'RE DISCUSSING THIS ISSUE OF SCHEDULING, I SAID,

8    JUST SEND A SUBPOENA.  I NEED A SUBPOENAED BECAUSE THEY ARE

9    INDEPENDENT CONTRACTORS.  THIS ISSUE WOULD NOT EVEN BE BEFORE

10   THE COURT 20 DAYS UNDER SUBPOENA, COULD HAVE HANDLED IT.  BUT

11   I NEED A SUBPOENA FOR THESE INDEPENDENT CONTRACTORS.

12        NOW THE ARGUMENT SEEMS TO BE, FORGET ABOUT THE

13   SUBPOENA.  YOU HAVE AN OBLIGATION TO RESPOND TO 55 REQUESTS

14   FOR PRODUCTION SO EVERY TIME THEY SEND A REQUEST FOR

15   PRODUCTION, I GUESS THE INFERENCE IS THAT I'VE GOT TO CIRCLE

16   BACK AROUND TO 34 PEOPLE AND ASK THEM ALL ON A NEW REQUEST

17   FOR PRODUCTION, BECAUSE THEY ARE THEORETICALLY UNDER MY

18   CONTROL.  I HAVE TO ASK THEM EACH TIME, OKAY, DO YOU HAVE

19   THIS DOCUMENT.  I DON'T BELIEVE THAT THE COURT WAS TRYING TO

20   CONVERT THESE THIRD-PARTY WITNESSES INTO PARTIES.

21        THESE ARE FORMER EMPLOYEES AND FORMER INDEPENDENT

22   CONTRACTORS, WHICH I ONLY HAVE THEORETICAL CONTROL OVER

23   BECAUSE WE ASKED THEM AT THE INCEPTION OF THE CASE IF THEY

24   WANTED TO BE REPRESENTED FOR PURPOSES OF THE DISCOVERY.  THEY

25   ARE NOT PARTIES, THEY ARE NOT CURRENT EMPLOYEES OR CURRENT

COMPUTER-AIDED TRANSCRIPTION

1   INDEPENDENT CONTRACTORS.  WE HAVE NO CONTROL OF THEM AT ALL.

2   WE DON'T COMPENSATE THEM, ET CETERA.  SO I SIMPLY ASKED FOR A

3   SUBPOENA.  I HAVE NO IDEA WHY THEY REFUSED TO SEND ONE AND

4   IDENTIFY WITNESSES.

5          SECOND, I ASKED THEM TO IDENTIFY WHO THEY STILL

6   WANTED TO SUBPOENA, AND SHE SAID EVERYONE.  I SAID, YOU'VE

7   ALREADY DEPOSED DONALD TRUMP, YOU'VE ALREADY DEPOSED MICHAEL

8   SEXTON.  SEND ME A LIST OF WHO YOU WANT.  SEND ME A SUBPOENA.

9   AGAIN, I HAVE NO IDEA WHY THEY WON'T SEND A LIST OF IT'S

10  THESE FIVE PEOPLE.  THE FIRST TIME I SAW THE LIST WAS IN THE

11  JOINT STATEMENT WHERE IT SAYS, OH, HERE IS THE PEOPLE.

12         SO I DON'T KNOW WHY THEY ARE DOING THIS.  I'M NOT

13  SURE IF THEY ARE HOPING TO SCORE SOME POINTS THAT I DID

14  SOMETHING WRONG.  BUT THIS ALL STARTED BY SUBPOENAS, AND NOW

15  THEY HAVE SHIFTED GEARS AND SAY, OH, THIS ISN'T A SUBPOENA

16  ISSUE AT ALL.  THAT'S HOW THIS WHOLE ISSUES WITH THE FORMERS

17  STARTED.  IF THEY SEND A SUBPOENA, I'LL RESPOND.  I MADE THAT

18  REPRESENTATION TO YOUR CLERK.  WELL, FIRST OF ALL, I MADE IT

19  ON THE 25TH OF JANUARY.  I'VE WRITTEN IT AT LEAST TWICE SINCE

20  THEN, SAID IT ON THE PHONE WITH YOUR CLERK, SEND A SUBPOENA

21  AND I'LL RESPOND.  I WANT TO KNOW WHAT WITNESSES AND WHAT

22  DOCUMENTS.  AND THAT'S WHERE WE'RE LEFT AT.

23         MR. MERRICK:  THE ARGUMENT THAT WE HAD THE LAST TIME

24  WE WERE HERE, IF THE COURT WILL GO BACK AND LOOK AT THE

25  BRIEFING OF THAT AND, OF COURSE, YOUR ORDER, HAD NOTHING TO

1  DO WITH THE SUBPOENAS.  THERE WAS OTHER REASONS WHY WE ONLY

2  SUBPOENAED 22 PEOPLE.  SOME OF IT HAD TO DO WITH COST

3  SAVINGS.  WE WANT BACK AND REALIZED, YOU KNOW WHAT, WE DON'T

4  REALLY NEED SUBPOENAS.  THESE PEOPLE, THEY HAD CONTROL OVER

5  THEM UNDER RULE 34.  THEY ARE SUBJECT TO DOCUMENT REQUESTS.

6  THAT'S THE ISSUE THAT WE BROUGHT BEFORE THE COURT.

7       MR. SCHNEIDER WANTS TO MAKE THIS ABOUT SUBPOENAS

8  BECAUSE SOMEHOW WE'RE GOING TO SCORE POINTS ON THAT.  IT

9  ISN'T THAT.  IT IS SIMPLY A MATTER OF CIVIL PROCEDURE AND

10  IT'S EXACTLY WHAT WE ARGUED TO THE COURT LAST TIME.  HE WANTS

11  TO REVISIT THIS IDEA OF WHETHER OR NOT THEY HAVE CONTROL.

12  THAT IS A DECIDED ISSUE.  THE COURT SAID THE ONES THAT THEY

13  REPRESENT, THEY HAVE CONTROL OVER FOR THE PURPOSES OF

14  RULE 34.

15       I MEAN, I JUST DON'T UNDERSTAND WHERE THE SUBPOENA

16  THING IS COMING FROM.

17       MR. SCHNEIDER:  YOUR HONOR, I'LL TELL YOU EXACTLY

18  WHERE IT'S COMING FROM.  I WANT TO KNOW WHAT DOCUMENTS THEY

19  WANT SO I CAN SEND IT TO THE WITNESSES AND SAY, HERE IS THE

20  DOCUMENTS.  IT CANNOT BE 55 REQUESTS FOR PRODUCTION OF

21  DOCUMENTS THAT WERE SENT TO TRUMP UNIVERSITY, THAT THAT NOW

22  IS THE SCOPE THAT I'VE GOT TO GO BACK TO INDEPENDENT

23  CONTRACTORS AND SAY, OKAY, INSTEAD OF THE 10 THAT YOU

24  PREVIOUSLY SOUGHT FROM SUBPOENA, NOW IT'S 54, OR 55.  AND

25  EVERY TIME YOU SENT A REQUEST FOR PRODUCTION TO TRUMP

1    UNIVERSITY, FOUR, FIVE, SIX, EACH TIME I'VE GOT TO CIRCLE

2    BACK AROUND TO 34 FORMER EMPLOYEES.

3         THAT'S WHY I SAID, SEND ME A SUBPOENA SO I KNOW WHAT

4    DOCUMENTS YOU WANT, IDENTIFY WHICH WITNESSES YOU WANT.  I

5    MEAN, I DON'T THINK THIS IS UNREASONABLE.  THEY WANT ME TO

6    GET DOCUMENTS FROM WITNESSES WHO HAVEN'T BEEN SUBPOENAED, AND

7    THEY WANT TO IDENTIFY WHICH DOCUMENTS THEY WANT, AND UNTIL

8    YESTERDAY THEY DIDN'T IDENTIFY WITNESSES.

9         MR. MERRICK:  YOUR HONOR, WE ARE SIMPLY ASKING THAT

10   THE COURT EXTEND THE ORDER BEYOND THE NUMBER 22, WHICH WAS

11   BASED ON MR. SCHNEIDER'S REPRESENTATION THAT IT HAD NOTHING

12   TO DO WITH THE SUBPOENAS BECAUSE WE WERE ALWAYS TALKING ABOUT

13   THEIR INITIAL DISCLOSURES, AND TO SIX MORE PEOPLE.  IN OTHER

14   WORDS, JUST DO EXACTLY THE SAME THING WITH THOSE ADDITIONAL

15   SIX PEOPLE THAT MR. SCHNEIDER ATTESTED TO THE COURT THAT HE

16   DID FOR THE OTHER 22.  IT'S THAT SIMPLE.  THAT'S REALLY ALL

17   IT IS.  IT'S A VERY, VERY NARROW ISSUE.

18        THE COURT:  ALL RIGHT.  THANK YOU.

19        ANYTHING ELSE?

20        MR. MERRICK:  NO.

21        MR. SCHNEIDER:  JUST THIS:  THAT THE INITIAL

22   DISCLOSURE --

23        THE COURT:  I KNOW.  I CAN SEE THAT.

24        MR. SCHNEIDER:  THE INITIAL DISCLOSURE DIDN'T HAVE

25   22 WITNESSES, EITHER.  THE INITIAL DISCLOSURE HAD 32.  THE

1    SUPPLEMENTAL HAD 34. AND THEY HAD THAT SEVEN MONTHS BEFORE

2    THEY ISSUED THE SUBPOENA. SO THEY KNEW ALL OF THE PEOPLE

3    THAT WE WERE REPRESENTING, FORMERS AND INDEPENDENT

4    CONTRACTORS. THEY SELECTED 22. NOW HE'S SAYING NOW IT'S TO

5    SAVE MONEY. THEY DIDN'T SERVE ANY OF THE SUBPOENAS. THEY

6    SEND THEM TO ME.

7         I WORK IN THE SAME BUILDING WITH THEM, A FEW FLOORS

8    DOWN, SO IT DIDN'T COST THEM ANY MONEY --

9         THE COURT:  MUST BE A FRIENDLY BUILDING.

10        MR. SCHNEIDER:  OH, IT'S GREAT. IT'S WARM AND

11   FUZZY.

12        SO I'M NOT SURE WHAT THE COST SAVINGS WAS BECAUSE

13   THEY DIDN'T SERVE A SINGLE ONE, THEY DIDN'T TRY TO SERVE A

14   SINGLE ONE. THEY SEND THEM TO MY OFFICE, WALK THEM

15   DOWNSTAIRS, SO IT JUST COST THEM THE FIVE MINUTES OR TWO

16   MINUTES TO TAKE THE ELEVATOR DOWN AND HAND ME THE SUBPOENAS.

17        SO IT'S NOT ACCURATE THAT I SAID THAT THERE WAS ONLY

18   22, AND THAT THEY BASED IT ON THE INITIAL DISCLOSURE OF 22,

19   BECAUSE IT WAS 32 IN THE INITIAL DISCLOSURE, 34 IN THE

20   SUPPLEMENTAL DISCLOSURE AND THEN THEY WAITED SEVEN MONTHS

21   LATER, SO THEY HAD ALL OF THAT, AND THEN SELECT WHICH 22 THEY

22   WANT.

23        THE COURT:  ALL RIGHT. THANK YOU.

24        MS. ECK:  AND, YOUR HONOR, JUST TO POINT OUT ONE

25   THING IN REGARD TO THE 22. IT'S ACTUALLY 27. IF YOU LOOK AT

1   MY LETTER, WHICH IS EXHIBIT R, WE SERVED 27 SUBPOENAS; 22 OF

2   THEM WERE FOR DOCUMENTS ONLY AND 5 WERE FOR DEPOSITION AND

3   DOCUMENTS.

4            THE COURT:  ALL RIGHT.

5            MR. SCHNEIDER:  NOTHING FURTHER, YOUR HONOR.

6            THE COURT:  THANK YOU.  ALL RIGHT.

7            HAVE A GOOD WEEKEND.  WE'LL TRY TO GET AN ORDER OUT

8   HERE VERY QUICKLY AFTER WE LOOK AT THOSE TWO EXHIBITS.

9            MS. ECK:  THANK YOU, YOUR HONOR.

10           MR. MERRICK:  THANK YOU, YOUR HONOR.

11           MR. SCHNEIDER:  THANK YOU, YOUR HONOR.

12           THE COURT:  HAVE A GOOD WEEKEND.

13           (PROCEEDINGS CONCLUDED AT 5:06 P.M.)

14                    -- OO0OO --

15           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

16   FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

17   ABOVE-ENTITLED MATTER.

18

19   /S/CAMERON P. KIRCHER            6-17-13
     TRANSCRIBER                      DATE
20

21

22

23

24

25