David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535
Email:   dks@yslaw.com

Attorneys for Defendants,
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> TRUMP UNIVERSITY, LLC, et al., <br><br> Defendants. | Case No. 10cv0940GPC (WVG) <br><br> DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE AND OBJECTIONS TO IMPROPER EVIDENCE AND ARGUMENT IN PLAINTIFFS' CLASS CERTIFICATION REPLY PAPERS: <br><br> • New Evidence and Argument: Improper in Reply <br><br> • Known Adverse Evidence: Improperly Kept from Court <br><br> • Misstated Evidence:  Improper Anytime <br><br> DATE:       6/28/13 <br> TIME:        1:30 p.m. <br> CTRM:      2D (Schwartz) |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

II.   ARGUMENT .......................................................................................... 1

    A.   Plaintiffs' Procedural Arguments Are Inapplicable, Ignore the Reality of the Current Briefing Schedule, and Mistake the Purpose of this Motion (Plaintiffs' Issues A-C) .......................................................... 1

    B.   Plaintiffs' Evidentiary Argument Overlooks the Requirement for Rigorous Analysis of the Evidence, and Mistakes the Point of Defendants' Objections (Plaintiffs' Issue D) .................................... 2

    C.   If the (Irrelevant) Regulatory Contacts with TU Were Spontaneous, Then Why Did Plaintiffs' Conceal Their 2009 Solicitation of Those Contacts?  (Plaintiffs' Issue E) ........................................................ 2

    D.   Plaintiffs Misrepresent the Objections Made to Their False Arguments re "Scripts," and Their False "Closing Script" (Plaintiffs' Issues F(1)-(3)) ................................................................ 3

    E.   The Key Issues of Plaintiffs' Purported "Standardized" Documents Are Whether They Were Uniform, and What They (Don't) Show (Plaintiffs' Issue G) ................................................................. 5

    F.   Not Only Plaintiffs' Basic Theory of the Case, But Also Their Specific Claims, and Their Purported "Evidence," Have All Changed Repeatedly (Plaintiffs' Issue H) .................................................... 6

    G.   Plaintiffs Fail to Overcome Five Additional Issues in the Motion to Strike (Plaintiffs' Issue I) ................................................................. 7

        1.   Numerosity ........................................................................... 7

        2.   Individual Reliance and Inquiry ........................................ 8

        3.   Refunds ................................................................................. 9

        4.   TU's 97% Approval Rating .................................................. 9

        5.   1% Negative Responses to TU Email .................................. 10

III.   CONCLUSION AND REQUESTED RULING .................................................. 10

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>**Cases**</u>

4

*Campion v. Old Republic Home Protection Co.*

5

   272 F.R.D. 517 (S.D. Cal. 2011) ................................................................ 6, 8

6

*Comcast Corp. v. Behrend*

   133 S.Ct. 1426 (2013)........................................................................... 9

7

*Gonzalez v. Proctor & Gamble Co.*

8

   247 F.R.D. 616 (S.D. Cal. 2007) .......................................................... 8

9

*Moheb v. Nutramax Laboratories, Inc.*

10

   2012 WL 695190413 (C.D. Cal. 2012) ................................................ 9

11

*Poulos v. Caesars World, Inc.*

   379 F.3d 654 (9th Cir. 2004) ................................................................ 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiffs' class certification reply papers included 70 new exhibits – more than were filed with their moving papers, and the vast majority of which were in plaintiffs' possession before that filing – plus many misstatements of the evidence, and of TU's arguments.  TU filed a motion to strike and objections specifically directed to the improprieties of those reply papers.  Plaintiffs now oppose based on inapplicable procedural grounds, misstated substantive grounds, and seven more belated exhibits.

## II.     <u>ARGUMENT</u>

**A.     <u>Plaintiffs' Procedural Arguments Are Inapplicable, Ignore the Reality of the Current Briefing Schedule, and Mistake the Purpose of this Motion</u>**
<u>**(Plaintiffs' Issues A-C)**</u>

Plaintiffs devote the first quarter of their brief to the procedural arguments that TU's motion to strike is untimely under Rule 12(f), improper under Chamber Rule 2, and should be denied because TU has now responded to the objectionable arguments in plaintiffs' reply.  However, the 21-day requirement under Rule 12(f) is inapplicable because a certification motion is not a pleading under Rule 7, Chamber Rule 2 is inapplicable because TU's motion is not a sur-reply, and TU's motion addressed improper <u>evidence</u> needing to be stricken, and not simply improper arguments needing a response.

Plaintiffs' inapposite procedural arguments also completely ignore the original briefing schedule for the underlying certification motion (ECF 88), <u>plaintiffs'</u> two requests for scheduling changes (ECF 92 & 106), <u>plaintiffs'</u> request for another 17-day continuance to file their reply (ECF 185), <u>plaintiffs'</u> two requests for increased page limits (ECF 117 & 185), the Court's continuance of the hearing date (ECF 191), and the result that certification briefing in this case has now been ongoing for <u>nine months</u>.  Plaintiffs also overlook that <u>their own</u> motion to strike (ECF 196) was filed **63** days after TU's declarations in question.  In short, plaintiffs cannot pretend that the briefing schedule for this motion has ever followed the 21-day requirement of Rule 12(f).

Finally, plaintiffs have missed the main point of TU's motion to strike.  TU indeed based the motion <u>in part</u> on plaintiffs' procedural impropriety of including extensive new

evidence and argument in a reply (ECF 211-1, §II(A)).  Possibly that impropriety could be cured by a fair opportunity to respond.  But, TU <u>also</u> based the motion on plaintiffs' many substantive improprieties of concealing adverse evidence, and including "evidence" that is improper, misstated, missing altogether, or belatedly revealed after TU's opposition (ECF 211-1, §§II(B)-(C)).  Those improprieties can only be cured by being stricken.

**B.**   <u>**Plaintiffs' Evidentiary Argument Overlooks the Requirement for Rigorous Analysis of the Evidence, and Mistakes the Point of Defendants' Objections**</u>
**(Plaintiffs' Issue D)**

Plaintiffs argue that the Federal Rules of Evidence should not be strictly applied for certification purposes.  TU agrees – formal admissibility, detailed foundations, and similarly demanding evidentiary standards can be relaxed for certification.  But, relaxed standards do not mean no standards.  The evidentiary issue raised by TU's motion is not admissibility; it is falsity.  Plaintiffs' exaggerated and misstated "evidence" which does not even exist must be stricken not because of technicalities in the Rules, but because – to put it charitably – it does not satisfy the "rigorous analysis" required for certification.

The shortcomings of plaintiffs' "evidence" are detailed in TU's motion (ECF 211-1, §§II(B)-(C)).  The point here is that plaintiffs' argument based on relaxed evidentiary standards for certification misses the mark.  They evidently hope the Court will not be able to conduct the detailed review of the voluminous record showing plaintiffs' colorful <u>argument</u> is not supported by the <u>evidence</u>.  But, that review is essential for the required "rigorous analysis" to determine whether plaintiffs can meet their burden for certification.

**C.**   <u>**If the (Irrelevant) Regulatory Contacts with TU Were Spontaneous, Then Why Did Plaintiffs' Conceal Their 2009 Solicitation of Those Contacts?**</u>
**(Plaintiffs' Issue E)**

Plaintiffs reserve their most extreme language (and 5 of their 7 new exhibits) to attack TU's contention that some of the regulatory contacts with TU likely were orchestrated by plaintiffs themselves – presumably with the help of their counsel.  TU's evidence for that contention is lead plaintiff Makaeff's "how to" blog post in late 2009 urging former TU students to contact state regulators and the BBB (Def. Ex 128).  Her authorship of that blog was concealed by plaintiffs for nearly three years of litigation and

discovery.  If plaintiff Makaeff and her counsel were not orchestrating those contacts exactly as she described in her "how to" blog, then why did they conceal its source?

Plaintiffs do not answer that question.  Instead, they devote most of their argument to exaggerating the <u>only one</u> of four regulatory contacts that <u>predated</u> the 2009 blog, namely an NYSED demand that TU stop using the word "University" in its business name.  However, TU changed its name, and the matter was closed without action against TU (Def. Ex. 52, ¶3).  Three other state AG investigations likewise took no action against TU, and the supposedly "active" New York AG investigation so harped on by plaintiffs actually has been dormant for one year.[1]

Plaintiffs also do not answer the basic question why any of these regulatory non-events are even relevant to their certification motion.  How does TU using "University" in its business name, or undergoing an AG investigation, or getting a poor rating from the BBB, prove that plaintiffs meet the requirements of Rule 23?  What common question is answered?  TU moved to strike the regulatory "evidence" because plaintiffs evidently manufactured most of it.  But even if they did not, the evidence can be struck as irrelevant

## D.  <u>Plaintiffs Misrepresent the Objections Made to Their False Arguments re "Scripts," and Their False "Closing Script"</u>
### (Plaintiffs' Issues F(1)-(3))

Plaintiffs' arguments on these issues are a rehash of their new Ex. 143, which is merely a self-serving letter written by plaintiffs' counsel attempting to justify why they failed to comply with discovery orders.  Judge Gallo ordered plaintiffs to produce documents supporting three specific claims of fraud by TU (use of "scripts," promises of "year-long mentoring," and earnings "guarantees") (ECF 203).  Plaintiffs produced three non-probative documents.  Judge Gallo then provided plaintiffs a final opportunity to produce supporting documents before sanctioning plaintiffs.  Plaintiffs then conceded that there were no guarantees, and came up with the "talking points" to a PowerPoint as <u>the</u>

---

[1]  Plaintiffs <u>knowingly</u> submit irrelevant Ex.142, which pertains to a Florida investigation of Trump <u>Institute</u> – a then-licensee of the "Trump" name, and completely unrelated to TU.  Trump Institute is neither a party to this action, nor relevant to class certification.  The year-long inactivity of the NY AG investigation is also well-known to plaintiffs.

script to prove uniformity.  Yet, in their Reply plaintiffs re-argue that scripts are common, and they submitted a "closing script" as proof of uniformity and misrepresentations. Plaintiffs also argue that TU made scripted calls to 80,000 attendees, and that all of them saw a standardized PowerPoint presentation.  TU's response is that these arguments are false, and the supporting "evidence" was known by plaintiffs also to be false.

Turning first to the "Closing Script," the document is completely irrelevant as it does not even pertain to a TU live program.  It was not a TU document and not used by TU – both of those facts were known to plaintiffs before submitting it with the Reply. The Court can see that it invites prospective consumers to participate in weekly <u>phone and online courses</u> that are not included in the proposed class.  See Plf. Ex. 82-439, ¶¶4-5.  In short, it has absolutely nothing to do with plaintiffs' case, class, or certification motion, but is yet another example of plaintiffs manipulating facts and misleading the Court.

Next, plaintiffs cite to charts <u>created by their counsel</u> supposedly containing a "treasure trove" of "misrepresentations and omissions" in recorded lectures, and to TU instructor contracts requiring use of "the official approved PowerPoint presentation, audio, and script."  Putting aside plaintiffs' <u>argument</u>, and looking at the actual <u>evidence</u>, there was <u>no</u> "official PowerPoint, audio, [or] script," and each program and presentation was materially different.  These facts have been admitted by plaintiffs themselves (ECF 192, p. 7, ¶9), former TU employees <u>represented by plaintiffs' counsel</u> (Def. MTS Ex. 4) and every former TU instructor, mentor, officer, employee <u>and</u> student submitting a declaration.  (See Def. Exs. 1, 6, 14(a-n) & 22(a-d).)

When the Court reviews plaintiffs' submission, it will see that the purported "uniform presentation" is non-existent.  For example, Plf. Ex. 23 (actual transcript of one seminar) is completely different than Plf. Ex. 86 (Talking Points, which purportedly is <u>the</u> script), which is completely different than Plf. Exs. 40, 41, & 47 (PowerPoints), which are completely different from Def. Ex. 39 (9 PowerPoints), which is completely different from Def. Ex. 96 (Setter's Script, which plaintiffs previously represented was <u>the</u> script but now concede contains no misrepresentations).

**E.**  **The Key Issues of Plaintiffs' Purported "Standardized" Documents Are Whether They Were Uniform, and What They (Don't) Show**
**(Plaintiffs' Issue G)**

TU seeks to strike plaintiffs' misrepresentations concerning the purportedly "standardized" PowerPoint and Playbook – both supposedly acting as yet two more "scripts."  As just noted above, TU respectfully requests that the Court simply review the multiple PowerPoints to verify that they are <u>different</u>.  As should be obvious, there were many different PowerPoints for the many different TU classes.  Likewise, there was no Playbook at all in 2006-07, a Sales Manual in 2007-08, and a changing Playbook in 2008-10 – with only the last of these evolving documents ever being cited by plaintiffs.

Nevertheless, plaintiffs now ignore those facts, repeat their prior misstatements about the two purportedly "standardized" documents, and add new misstatements concerning TU's supposedly "standardized" ad campaign as well (an issue completely beyond the motion to strike, and hence improper).  Plaintiffs now even argue that <u>admittedly</u> different PowerPoints – such as one concerning a TU class on real estate tax liens – are "irrelevant evidence."  In fact, this highly relevant <u>evidence</u> destroys plaintiffs' mere <u>argument</u> that all PowerPoints and presentations were the same.  Moreover, rather than repeat its arguments about these documents, TU respectfully suggests that the Court consider that plaintiffs have not pointed out <u>any actual misrepresentation</u> in <u>any</u> version of <u>any</u> PowerPoint or <u>any</u> Playbook, let alone all of them.

As for the purported "standardized ads," earlier briefing by <u>both</u> sides already has established that their only arguable "misrepresentations" concern whether TU instructors were "expert" and "handpicked" by Mr. Trump, and the extent of Mr. Trump's personal involvement in TU.  However, many ads had no such representations, and the ads varied over time and based on location, so they were never uniform or standardized (Def. Ex. 1, ¶¶ 12-13; Ex. 43).  In addition, even assuming <u>some</u> ads might be "misrepresentations" for <u>some</u> TU students (i.e., the TU instructors they had were not "expert" or "hand-picked" by Mr. Trump), the earlier briefing has also established that the ads are perfectly accurate for <u>other</u> TU students (i.e., the TU instructors they had <u>were</u> "expert" <u>and</u> "hand-

picked" by Mr. Trump).  Finally, plaintiffs ignore the most important – and undisputed – point:  the ads marketed a <u>free</u> seminar.  There were <u>no ads for any paid programs</u>.  So, because <u>only</u> paid programs define the putative class, the ads are irrelevant to certification <u>even if</u> they somehow "misrepresented" a material fact (Def. Ex. 1, ¶¶ 12 and 15).

The basic point is that plaintiffs devote all their energies to sweeping <u>arguments</u> that various TU documents are "standardized," or "scripts," or otherwise essentially identical, but the <u>evidence</u> simply does not support their arguments.  Moreover, to get class certification, a standardized script <u>must</u> contain a specific misrepresentation that <u>every</u> class member was exposed to.  *Campion v. Old Republic Home Protection Co,*. 272 F.R.D. 517, 534 (S.D. Cal. 2011).  Plaintiffs never meet this critical threshold issue.  They instead argue strenuously that TU used scripts in a desperate effort to shoe-horn this case into the *Lincoln Savings* fact pattern, and thus get a "presumption of reliance" to avoid individual inquiry.  But, *Lincoln* was a <u>securities case</u> involving an undisputed script and documented fraud signed off by <u>every class member</u> – all exceptional circumstances allowing presumed reliance for a UCL claim alone.  Plaintiffs here satisfy <u>none</u> of those requirements.

## F.   <u>Not Only Plaintiffs' Basic Theory of the Case, But Also Their Specific Claims, and Their Purported "Evidence," Have All Changed Repeatedly</u> (Plaintiffs' Issue H)

TU's motion to strike listed in detail plaintiffs' many changes, flip-flops, new claims, and abandoned claims since inception and – more to the point – since their certification motion was filed.  Plaintiffs' opposition cites irrelevant cases concerning the evolution of a class definition in litigation.  That is not the issue here.  The issue here is that plaintiffs' <u>specific claims and evidence</u> keep changing, <u>not</u> their class definition.

Plaintiffs' opposition also cites their original causes of action, and argues that they have "always" basically alleged TU "engaged in a fraudulent up-sell scheme."  However, the problem for plaintiffs is that "up-selling" is not actionable.  Plaintiffs need proof of fraud for TU <u>paid</u> programs, but that proof is completely missing.  Moreover, it bears repeating that the TU ads for the <u>free</u> programs – even if supposedly "fraudulent" for

some TU students – cannot be "fraudulent" for them all.  Finally, there is no valid dispute that not even lead plaintiff Makaeff – much less all TU students – ever saw the ads that contain the purported misrepresentations.  Any one of these <u>facts</u> – each supported by <u>evidence</u> rather than mere argument – is fatal to certification.  This of course is why plaintiffs have repeatedly changed their theories, claims, and "evidence." [2]

## G.    <u>Plaintiffs Fail to Overcome Five Additional Issues in the Motion to Strike</u>
### (Plaintiffs' Issue I)

Plaintiffs offered a cursory opposition to five issues in the final section of TU's motion to strike.  The five issues are as follows.

### 1.    Numerosity

TU opposed certification in part on the basis that plaintiffs did not show numerosity for any of the subclasses, let alone all of them, and likewise that plaintiffs failed to provide any factual or legal support for the senior subclasses.  Plaintiffs <u>falsely</u> argued in their reply that TU "conceded" numerosity, including for the seniors.  TU moved to strike that argument, citing TU's specific arguments in the opposition.

Plaintiffs now belatedly argue numerosity to the effect that "35% of [TU] students were seniors and the smallest subclass is in the hundreds."  However, the <u>only</u> factual support cited by plaintiffs for <u>one</u> senior subclass is an exhibit showing some unattributed demographics for TU seniors in a lecture slide (Plf. Ex. 16 at Bloom 0519).  Plaintiffs offer no foundation for the slide, nor explanation, nor analysis, nor even argument for what it pertains to, nor whether any of those seniors ever purchased a live seminar or anything else, nor whether the demographics pertain to the proposed class period or

---

[2] Buried in plaintiffs' argument of the reliance issue (*infra*), they inserted an unrelated footnote belatedly arguing that plaintiff Makaeff saw a TU ad after all, namely new plaintiff Ex. 144.  That exhibit – produced to TU on 6/6/13 – is an email from a friend of Makaeff's who invited her to be her <u>free</u> guest at the three-day Fast-Track to Foreclosure workshop, and who attached the TU <u>confirmation</u> of the friend's reservation for the seminar.  As the Court can easily see, Ex. 144 is not an ad, nor does it contain any misrepresentations by TU.  It is, however, an excellent illustration of plaintiffs' willingness to withhold and mischaracterize evidence.

members, nor what year the data reflects, nor what geographical area, etc.  One completely indeterminate data point does not prove numerosity for <u>any</u> subclass.

### 2.    Individual Reliance and Inquiry

TU opposed certification in part on the basis that individual reliance had to be proved for the misrepresentation claims, and that individual inquiry was necessary for all claims.  Plaintiffs argued in their reply that TU had conceded no "individualized reliance" must be shown for the non-misrepresentation claims.  TU moved to strike that argument, citing TU's specific arguments for individual inquiry in the opposition.

Plaintiffs now argue that individual reliance and inquiry are two different concepts, which is only partly true.  Plaintiffs cannot prove facts sufficient for the presumption of reliance for <u>any</u> cause of action.  So, individual inquiry into reliance will be required for <u>every</u> cause of action in which reliance is an element.  As stated above, plaintiffs cannot even get over the <u>first</u> mandatory hurdle that <u>every</u> member <u>must</u> have seen the <u>same</u> advertising that forms the basis of plaintiffs' claim, or a class cannot be certified. *Campion*, *supra*, 272 F.R.D. at 536.  In *Gonzalez v. Proctor & Gamble Co.,* 247 F.R.D. 616, 626 (S.D. Cal. 2007), the Court addressed this exact issue:

> The Court finds that there are significant individualized issues related to proof of reliance.  The evidence shows that Defendant employed a wide variety of representations in its labeling, television commercials, website promotions and other promotions as to a wide variety of . . . products. . . class members may have relied on different representations, while some may not have relied on, or even have been exposed to, any of the alleged false misrepresentations.  When a class of consumers may have seen all, some or none of the advertisements that form the basis of plaintiff's suit, an inference of common reliance or liability is not permitted.

In short, there is <u>no</u> evidence that <u>all</u> members saw the purported misrepresentations, and – once again – lead plaintiff Makaeff has admitted that she did not.  Plaintiffs also have made <u>no</u> showing how they can establish reliance without individual inquiry for the claims in the 49 other states.  Finally, the presumption "is permitted in securities fraud cases" where there was "an omission as opposed to affirmative representations" *only*.  *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664-68 (9th Cir. 2004).

### 3.    Refunds

TU opposed certification in part on the basis that many refunds paid by TU would require individual inquiry to establish the reasons refunds were sought and paid, which reasons varied from student to student.  Plaintiffs argued in their reply that the refunds were merely a damages issue not to be considered for certification.  TU moved to strike that argument because it misstated TU's refund contention.  Plaintiffs' opposition simply repeats the same argument.  Refunds are indeed a damages issue, but they are <u>also</u> an issue requiring individual inquiry into substantial performance, accord, satisfaction, waivers, releases, etc.  The <u>reasons</u> for refunds are material <u>now</u>, and highly individual.

Plaintiffs have no "safe harbor" from discussion of damages at certification.  The Supreme Court recently held that certification is <u>improper</u> when plaintiffs do not provide a credible class-wide method to calculate damages.  *Comcast Corp. v. Behrend* 133 S.Ct. 1426, 1433 (2013).  Plaintiffs here provided <u>no</u> "method" other than suggesting full reimbursement for all class members, which fails to allow for <u>any</u> factor noted above.

### 4.    TU's 97% Approval Rating

TU opposed certification in part on the basis that putative class members had to be subject to individual inquiry concerning their expectations and what they received, which are often reflected in their evaluations of TU classes – 97% of which were very positive. Plaintiffs argued in their reply that the 97% figure was suspect, and cited misleading data or mischaracterized evidence in "support."  TU moved to strike that "support."

Plaintiffs now evidently abandon that "support," and instead argue the evaluations cannot "negate the underlying deception [that] can still be shown on a class-wide basis," and that whether TU students were happy with TU "initially" or "to this day" does not prove whether they were deceived.  That is not the law.  The Court may indeed deny class certification because some class members were "satisfied users of the product" and therefore "had no injury."  *See, e.g., Moheb v. Nutramax Laboratories, Inc.* 2012 WL 695190413, *3 (C.D. Cal. 2012).  In addition, the probative value of the evaluations is not to be decided by plaintiffs, but rather by the finder of fact after individual inquiries of all

putative class members submitting them.  For example, evaluations stating that the TU students got "exactly what they expected," or that the TU programs "exceeded their expectations," obviously are probative of whether those students received the benefit of the bargain of their contract, and require individual inquiry.[3]

### 5.    1% Negative Responses to TU Email

One of plaintiffs' misstated reasons in their certification reply papers for the 97% figure supposedly being misleading was that 81% of TU students contacted by TU for potential declarations purportedly "were dissatisfied" with TU.  There was no support offered for this reason.  TU moved to strike the reason on that basis, and based on the fact that of about 1,000 TU students who were contacted for potential declarations, only 10 responded negatively – i.e., 1% – and many responded positively.

Plaintiffs now argue that TU misled the Court by not counting non-responders as "dissatisfied."  However, it is absurd for plaintiffs to claim "irrelevance" for the thousands of evaluations, dozens of testimonials, and 20 declarations by a wide variety of TU student "responders," and yet insist "non-responders" are relevant and assumed adverse.

### III.    CONCLUSION AND REQUESTED RULING

TU respectfully requests that the Court grant its motion to strike the misleading and misstated portions of plaintiffs' reply papers.

Dated:  June 21, 2013                              YUNKER & SCHNEIDER
                                                   By:    s/David K. Schneider
                                                          David K. Schneider
                                                          Attorneys for Defendants
                                                          Email:  dks@yslaw.com

---

[3] In a footnote, plaintiffs make another misleading argument that "Defendants' numbers once again do not add up" concerning the evaluations.  The purported basis is that TU responded to a written discovery request that "90% or more" (versus 99%) of the evaluations were for paid programs.  That response was absolutely true, and concerns paid programs versus all programs.  This non-issue is a typical example of plaintiffs' misleading efforts to evade the fact that 97% of students attending all TU programs thought they were excellent and met their expectations, and that they wanted to attend more TU programs and would recommend them to others.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 21, 2013.

s/David K. Schneider
DAVID K. SCHNEIDER

YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535

Email:  dks@yslaw.com