ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br>CLASS ACTION<br><br>DECLARATION OF AMBER L. ECK IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' DECLARATIONS<br><br>Date: June 28, 2013<br>Time: 2:00 p.m.<br>Crtrm: 2D<br>Judge: Honorable Gonzalo P. Curiel |

**REDACTED**

852664_1

I, Amber L. Eck, declare as follows:

1. I am an attorney with the law firm Zeldes Haeggquist & Eck, LLP, one of Plaintiffs' counsel. I am duly licensed to practice before all state and federal courts in California, and have been practicing law for 18 years, since 1995. The facts stated in this declaration are true and based upon my own personal knowledge and, if called to testify to them, I would competently do so.

2. I submit this declaration in Support of Plaintiffs' Reply Memorandum in Support of Plaintiffs' Motion to Strike Defendants' Declarations.

3. I have reviewed Trump University's Opposition to Plaintiffs' Motion to Strike Defendants' Declarations (Dkt. No. 210) ("Defs' Opp.") filed April 26, 2013, and the exhibits submitted in support thereof, and submit this declaration to address certain inaccurate statements contained therein.

4. First and foremost, I have always informed students (and other witnesses) whom I have contacted in this action that I represented the plaintiff students in this class action lawsuit against Trump University. I never "posed as a TU representative," as defendants suggest (*see* Defs' Opp. at 1) or stated or implied that I was calling on behalf of Trump University.

5. The first thing that I always said to students and others in the case was that I was Amber Eck from Zeldes & Haeggquist (my firm's name at that time), we represented the plaintiff students in the class action lawsuit filed against Trump University, and I was calling as part of our investigation in the case.

6. In regard to the 14 students who submitted declarations for Defendants opposing class certification, after introducing myself, I told them I was calling in regard to the declarations that they had submitted to Defendant Trump University and told them I had some questions for them in regard to their declarations and their experience with Trump University.

7. It is certainly possible that one or more of these students were confused by being contacted two or more times by a female attorney (or paralegal) over the

course of a few months in regard to Trump University, when many of them had not had any contact with Trump University in years. However, I did not do anything to encourage such confusion, and, if at any point in the call the student displayed any confusion over who I represented, I very clearly reiterated that I represented the plaintiff students in the case, and reminded them that they submitted their declaration for Defendant Trump University.

**A.     Kissy Gordon**

8.     As a perfect example of how students can be confused in this case (without accusing opposing counsel of improper conduct), when I talked to Gordon in January 2013 and explained that I represented the plaintiff students in the case, she told me that she thought that Trump University's representative Irene O'Halloran had told her that she represented the students in the case, and Gordon thought she had submitted her declaration on behalf of the students.

9.     I explained to Gordon that the person she had been speaking with previously did not represent the students, but represented Trump University, and that she had submitted the declaration on behalf of Trump University. I first talked to Gordon on Thursday, December 13, 2012, and talked to her for over 25 minutes. *See* Ex. 151 (phone log). She called me on Sunday morning January 27, 2013 at 7:17 a.m., and I called her back around 7:30 a.m. from my home or cell phone and we talked for about 30 minutes. I asked if she was willing to submit a declaration for Plaintiffs explaining her confusion, and other things said, or not said, by Irene O'Halloran (she did not remember Irene's name at this point).

10.     I had always told Gordon that I represented the plaintiff students in the case, and she understood that I represented the plaintiff students.

11.     On Monday, January 28, 2013, I typed up and sent Gordon a draft declaration for her review, which memorialized our telephonic conversations. *See* Ex. 146, TU-PLTF02498-02505 ███████████
███████.

1   12.   ████████████████████████████████████████
2   ████████████████████████████████████████████████
3   ████████████████████████████████████████████████
4   ████████████████████████████████████████████████
5   ████████████████████████████████ *See* Ex. 146 ████
6   ████, ¶4.
7   13.   ████████████████████████████████████████
8   ████████████████████████████████████████████████
9   ████████████████████████████████████████████████
10  ████████████████████████████████████████████████
11  ████████████████████████████████████ *See id.*, ¶5.

12      14.    I spoke with Gordon on Tuesday afternoon, January 29, 2013, for about one minute, and she said that she had been very busy, but that she believed the declaration was accurate, and that she intended to sign it and try to return it to us that night.

16      15.    ████████████████████████████████████
17  ████████████████████████████████████████████████
18  ████████████████████████████████████████ *See*
19  Ex 146 at TU-PLTF02503 ██████████████████████████
20  ████████████████████████ *Id.*
21      16.    ██████████████████████████████
22  ████████████████████████████████████████████████
23  ████████████████████████████████████████████████
24  ████████████████████████████████████ Ex. 146.
25      17.    ██████████████████████████████
26  ████████████████████████████████████████████████
27  ████████████████████████████████████████████████
28  ████████████████ Ex. 146 at TU-PLTF02503. ████████

1 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

2 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3 ▬▬▬▬▬▬▬▬ *Id.*

4 18. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Rusty Taub and Archna Khattar, who she said had "horrific" experiences with Trump University. She only had a phone number for Taub. I have called Taub three times and left voicemail messages, but he has not returned the calls.

8 19. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬ I talked to Gordon only three times over two months (on December 13, 2012 for 25 minutes, on January 27, 2013 for about 20-30 minutes, and on January 29, 2013 for about 1 minute. In each conversation, she was friendly, indicated that she wanted to help us, and was willing to sign the declaration.

20. It wasn't until I received her email the morning of January 30, 2013, that she ever indicated she didn't want to help us or sign the declaration, and at that point, I did not contact her again.

21. During our phone call on Sunday morning, January 27, 2013, I asked Gordon the following five questions about the submission of her declaration in support of Trump University's opposition to class certification, and the following were her responses (as set out in more detail in the draft declaration I sent to her on January 28, 2013), *see* Ex. 146:

(a) I asked if Trump University drafted her declaration. Gordon said that in June 2012, she received a phone call from a woman (who she later on January 29, 2013 told me via email was Irene O'Halloran) who asked for her experience regarding Trump University. Gordon thought she was talking with an attorney for the plaintiff students in the case, and thought she was preparing a declaration to submit on behalf of the students in the case. She said that the woman (Irene O'Halloran) essentially interviewed her by phone, typed up a declaration for her to review and sign, and she did.

(b) I asked Gordon whether Trump University told her how her declaration would be used. She said that the woman (Irene O'Halloran) did not tell her how her declaration would be used or what it was for.

(c) I asked Gordon if Trump University (Irene O'Halloran) told her what our lawsuit was about, and she said that Trump University did not explain in any detail what the case against Trump University was about, or that it was a class action.

(d) I asked if Trump University (Irene O'Halloran) told her that she was a potential class member in the action against Trump University, and she said that she did not.

(e) I asked whether Trump University (Irene O'Halloran) told her that the lawsuit was requesting refunds on behalf of all students who purchased Trump University courses, including her, and she said that Trump University did not.

**B.    Mette Nielsen**

22. I first called Nielsen on Wednesday, December 12, 2012, and left a message at 12:21 p.m. She called back less than an hour later (at 1:31 p.m.), our receptionist would have answered the phone "Zeldes & Haeggquist" (not TU) and we talked for over nine minutes. *See* Ex. 151 (phone log). I told her that my name was Amber Eck, and that I represented the plaintiff students in the class action against Trump University. I explained that I had called her in regard to the declaration that she had submitted for Trump University. She was very friendly, and said I was welcome to call back.

23. I called Nielsen again on Wednesday January 30, 2013, and spoke to her for another 13 minutes. *See* Ex. 151 (phone log). Again, I told her that I represented the plaintiff students in the case.

24. ██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████ Dkt. No. 210-1, Ex. 146, Supp. Nielsen Decl., ¶4. That is correct.

1  25. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮ Dkt. No. 210-1, Ex. 146, Supp. Nielsen Decl., ¶4. She must have forgotten that she called me on December 12, 2012, and we talked then.

26. During our phone call on January 30, 2013, I asked Nielsen the following five questions about the submission of her declaration in support of Trump University's opposition to class certification, and the following were her responses:

(a) I asked if Trump University drafted her declaration. She said Trump University typed it up, but she reviewed it and made changes.

(b) I asked whether Trump University told her how her declaration would be used. She said she was told it would be used to defend in a lawsuit where certain people were trying to pursue claims for promises not fulfilled.

(c) I asked if Trump University told her what our lawsuit was about, and she said that Trump University did not discuss the lawsuit at all, but that she was aware of it.

(d) I asked if Trump University told her that she was a potential class member, and she said she did not remember them telling her that, but they said she could potentially be called as a witness.

(e) I asked whether Trump University told her that the lawsuit was requesting refunds on her behalf, and she said, no, that Trump University did not say anything about that.

27. I do not specifically remember Nielsen expressing confusion later in the conversation about who I represented, but if she did, of course I would have told her that I represented the plaintiff students. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 210-1, Ex. 146, Supp. Nielsen Decl., ¶5) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.*) ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   ████████████████████████████████████████

2   ██████████████

3   28.  During this conversation on January 30, 2013, I asked Nielsen if she would be willing to submit a declaration for Plaintiffs, and she initially said she would "absolutely" submit a declaration. However, later she said she did not want to "sit on both sides," and no longer wanted to sign a declaration.

### C. Amy Hinderer

29.  I first called Hinderer on Wednesday, December 12, 2012, and left a message at 12:18 p.m. She may have called me back, and if so, our receptionist would have answered the phone "Zeldes & Haeggquist," (not TU). In any event, I called Hinderer again at 1:16 p.m., and I introduced myself, telling her that my name was Amber Eck, and that I represented the plaintiff students in the class action against Trump University. I explained that I was calling in regard to the declaration that she had submitted for Trump University. She was very friendly, and we talked for about 13 minutes, and told me I was welcome to call back.

30.  ████████████████████████████████████████ ████████████████████████████████████ Dkt. No. 210-1, Ex. 147, Supp. Hinderer Decl., ¶5. That is simply not true. There is no possible way I would have said I was affiliated with Irene O'Halloran on December 12. ████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ *See* Ex. 146 at TU-PLTF02503.

31.  ████████████████████████ ██████████████ This is true. Hinderer called our office at 10:38 a.m., our receptionist was out, and I answered the phone as "Zeldes & Haeggquist." She asked for Irene O'Halloran, and I clearly told her that I was Amber Eck, counsel for the plaintiff students in the case, and she had called my office.

1  32.  I asked Hinderer if she was willing to discuss her experience with Trump
2  University and her prior conversations with Irene O'Halloran, and she agreed; we
3  talked for 15 minutes. I then asked whether she would be willing to submit a
4  declaration for Plaintiffs, and she agreed to consider it.
5  33.  About an hour later, on January 31, 2013 at noon, ▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮  *See* Ex. 152, TU-PLTF02470-71. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See id.*,
13 ▮▮▮▮▮▮▮▮▮▮
14  34.  During our phone call on January 31, 2013, I asked Hinderer the
15 following five questions about the submission of her declaration in support of Trump
16 University's opposition to class certification, and the following were her responses, as
17 set out in the draft declaration I emailed to her for review on January 31:
18  (a)  I asked if Trump University drafted her declaration. She said
19 Trump University drafted it, Irene O'Halloran sent it to her to review; she may have
20 made minor changes, and she signed it.
21  (b)  I asked whether Irene O'Halloran from Trump University told her
22 how her declaration would be used. She said that O'Halloran told her that it would be
23 "used as a package and given to opposing counsel."
24  (c)  I asked if Irene O'Halloran from Trump University told her what
25 our lawsuit was about, and she said that she already knew that there was a lawsuit
26 against Trump University, but that she did not believe that Irene O'Halloran went into
27 any details about the lawsuit itself.
28

1          (d)    I asked if Irene O'Halloran from Trump University told her that she was a potential class member, and she said that she did not believe that Irene O'Halloran told her that she was a potential class member.

        (e)    I asked whether Irene O'Halloran from Trump University told her that the lawsuit was requesting refunds on her behalf, and she said "that did not come up."

### D.    Paula Levand

35.    I first called Levand on Wednesday, December 12, 2012, and when I reached her on the phone, I started by telling her that my name was Amber Eck, and that I represented the plaintiff students in the class action against Trump University. I explained that I was calling in regard to the declaration that she had submitted for Trump University. She was friendly, and we talked for about 30 minutes, and she told me I was welcome to call back.

36.    On January 9, 2013, I called Levand at 3:04 p.m., left a message, and she called me back at 3:35 p.m., and we talked for about 7 minutes. During this call, I had called to ask whether she had received a $25,000 refund from Trump University. She stated that it was not a refund in that she did not receive a check for $25,000, but explained (as I understood it) that she had initially purchased a seminar/mentorship from Trump Institute, but that she somehow transferred from Trump Institute to Trump University, and Trump University gave her a "credit" for the $25,000 she had paid to Trump Institute.

37.    [REDACTED]

[REDACTED] I did call and speak with Levand two times – first on December 12, 2012, for about a half hour and then on January 9, 2013, for about seven minutes. Those were the only times I, or anyone from my office ever called or spoke with Levand. We do not have a Jennifer working for us. And each time I contacted

Levand, I gave her my name and explained that I was calling on behalf of the plaintiff students in the case against Trump University. I may have said that I was calling regarding Trump University, but I certainly never said that I was calling from Trump University.

38. On January 10, 2013, I called Levand at 3:04 p.m. and left a message. Levand called me back half an hour later at 3:35 p.m. *See* Ex. 151 (phone log). When she called my office, the receptionist would have answered the phone "Zeldes & Haeggquist" (not Trump University).

39. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Dkt. No. 210-1, Ex. 148, Supp. Levand Decl., ¶10. That is correct. If at any time I became aware of any confusion on behalf of any students I was speaking with, I would always, as here, immediately make clear that I was calling on behalf of the students against Trump University.

**E.   Paul Canup**

40. I spoke to Paul Canup several times between December 13, 2012 and January 28, 2013. He agreed to submit a declaration on behalf of Plaintiffs, and based on our conversations, I prepared the draft declaration attached as Ex. 153 (TU-PLTF02516-19), which I emailed him on Monday January 28, 2013, at 5:26 p.m. PST to review. *See id.* at TU-PLTF02474. The statements contained therein accurately reflect what Canup told me, to the best of my recollection.

41. During our phone call on or about January 28, 2013, I asked Canup the following five questions about the submission of his declaration in support of Trump University's opposition to class certification, and the following were his responses (as set forth in the draft declaration I sent him on January 28, 2013), Ex. 153:

(a)   I asked Canup if Trump University drafted his declaration. Canup initially thought that Trump University sent him a form to fill out, which he completed and returned to TU, but later he recalled that he received a phone call from Trump

University, and the caller interviewed him about his experience with Trump University, asked if he would be willing to sign a declaration, and he agreed. Trump University prepared the declaration, sent it to him, he added several comments and details, signed it, and returned it to TU.

(b) I asked Canup whether Trump University told him how his declaration would be used. Canup said Trump University did not tell him how his declaration would be used or what its purpose was.

(c) I asked Canup if Trump University told him what our lawsuit was about, and he said that Trump University did not explain in any detail what the case against Trump University was about or explain that it was a class action.

(d) I asked Canup if Trump University told him that he was a potential class member, and he said that Trump University did not tell him that he was a potential class member.

(e) I asked whether Trump University told him that the action against Trump University was requesting refunds on behalf of all students (including him) who purchased Trump University courses, and he said Trump University did not tell him that.

F. **Defendants' Documents Show My Voicemails Stated that I Was Calling "Regarding" Trump University, Not "From" Trump University**

42. When I left voicemails for the Trump University students who submitted declarations for Defendants, the voicemail was brief and along the following lines: "Hello. My name is Amber Eck and I'm calling regarding Trump University. Could you please give me a call back when you get the chance at 619-342-8000? Thank you."

43. Then, when the student called back, or I had the chance to personally talk with them, I would explain in more detail, along the lines of the following: "Hello, I'm Amber Eck, calling from Zeldes & Haeggquist. We represent the plaintiff students in a class action filed against Trump University. I was calling about the

1 | declaration you submitted for Trump University in the case, and had a few questions
2 | for you as part of our investigation . . . ."

3 |     44.    I told students that I was calling "*regarding*" Trump University, but I
4 | never told students I was calling "*from*" Trump University.

5 |     45.    For example, I left four voicemails for Marla Rains Colic, who submitted
6 | a declaration for Trump University. ███████████████
7 | ███████████████████████████████████████
8 | ███████████████████████████████████████
9 | ███████████████████████████████████████
10 | *See* Ex. 148, TU15501318 at 13 ███████████████
11 | ███████████████ *see also* Ex. 149, TU155011-12 at 11 ██
12 | ███████████████████████████████████████
13 | ███████████████████████████████████████.
14 |     46.    Likewise, ████████████████████████
15 | ███████████████████████████████████████
16 | ███████████████████████████████████████ Ex.
17 | 150, TU155019-20 at 19 (emphasis added).

18 | **G.**    **Carl Miller, Danny Williams and Laura Holbert**

19 |     47.    █████████████████████████
20 | ███████████████████████████████████████
21 | ██████████ *See* Dkt. No. 193-1, Ex. 73 to Class Cert reply. I would
22 | characterize their e-mail responses as "neutral," *i.e.*, not showing satisfaction or
23 | dissatisfaction with Trump University, but essentially providing contact information.
24 | However, I spoke to each of these students, and each of them told me that they were
25 | dissatisfied with Trump University.

48. Attached hereto are true and correct copies of the following exhibits:

| Exhibit | Document Description | Page Nos. |
|---|---|---|
| Exhibit 145 | TU 154665-702 **(sealed)**; | 1-39 |
| Exhibit 146 | TU-PLTF02498-2505 **(sealed)**; | 40-48 |
| Exhibit 147 | Relevant excerpts from the deposition transcript of Paula Levand, taken June 17, 2013; | 49-61 |
| Exhibit 148 | TU 155013-18 **(sealed)**; | 62-68 |
| Exhibit 149 | TU 155011-12 **(sealed)**; | 69-71 |
| Exhibit 150 | TU 155019-20 **(sealed)** | 72-74 |
| Exhibit 151 | Phone logs of calls between Amber Eck and Kissy Gordon, Amber Eck and Mette Nielsen, Amber Eck and Amy Hinderer and Amber Eck and Paula Levand **(sealed)**; | 75-81 |
| Exhibit 152 | TU-PLTF02470-2471 and TU-PLTF02483-85 **(sealed)**; and | 82-87 |
| Exhibit 153 | TU-PLTF02474-76 and TU-PLTF02516-19 **(sealed)**. | 88-95 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 21st day of June, 2013, at San Diego, California.

s/Amber L. Eck
AMBER L. ECK

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 21, 2013.

      s/ Amber L. Eck
AMBER L. ECK

ZELDES HAEGGQUIST & ECK, LLP
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone: 619/342-8000
619/342-7878 (fax)

E-mail: ambere@zhlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

- **Stephen F Yunker**
  sfy@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)