David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone: (619) 233-5500
Facsimile: (619) 233-5535
Email: dks@yslaw.com

Attorneys for Defendants,
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>  Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>  Defendants. | Case No. 10cv0940GPC (WVG)<br><br>**DECLARATION OF DAVID K. SCHNEIDER IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS' SUBMISSION OF SUPPLEMENTAL DOCUMENTS: SCRIPT AND DEPOSITION EXCERPT**<br><br>Date: 8/16/13<br>Time: 1:30 p.m.<br>Ctrm: 2D |

I, David K. Schneider, declare:

I am an attorney at law, licensed to practice before this Court, and am a partner with the law firm of Yunker & Schneider, counsel of record for defendants Trump University, LLC and Donald J. Trump. I make this declaration of my own personal knowledge, and if called to testify, I could and would testify competently to the facts stated herein.

1.  I have handled virtually all aspects of defendants' discovery in this matter, including production of documents. On May 29, 2012, defendants produced to plaintiffs many PowerPoint slides, among many other documents. One of the PowerPoints included what plaintiffs submitted to the Court with their certification reply papers as Ex. 86 (ECF

195-1, Pltf. Ex. 86 – the "Talking Points").  The Talking Points (or notes) within that PowerPoint are the verbatim text of the "Preview Script" defendants produced to plaintiffs on June 4, 2013, and which plaintiffs submitted in the "Supplemental Submission" as Ex. 2.  Plaintiffs also previously submitted the identical document as Pltf. Ex. 145 in opposition to Defendants' Objections to Plaintiffs' Reply papers.  Plaintiffs submitted that document to the Court on June 21, 2013.

      2.      The "Talking Points" of Ex. 86 in the PowerPoint presentation was last modified in December 2009, and if that PowerPoint was actually ever used, it would have been seen only by students who attended the "Apprentice" preview – one of at least three known different versions of the free 90-minute preview program.

      3.      TU did not withhold or conceal the "Preview Script."  The true facts are as follows:

          a.      TU has delivered more than 170,000 pages of documents to plaintiffs in 64 separate productions.  They included Pltf. Ex. 86 PowerPoint slides and "Talking Points" – which have a different format but identical content to Pltf. Ex. 145 and recently re-submitted Pltf. Ex. 2.  The "Talking Points" were produced in May 20<u>12</u>.

          b.      The TU productions are handled primarily by one remaining TU employee, among his many other responsibilities.  Responding to plaintiffs' document demands often has been a full-time job for him (and for me) for the past two years.

          c.      The 63rd TU production on June 4, 2013, which included Ex. 2, involved about 27,000 pages.  Most of the documents resulted from word searches through about 100 GB of data requested by plaintiffs and done by TU voluntarily – without formal discovery.

          d.      Plaintiffs' requested searches included (among many others) the words "script" and "approval" of slides in PowerPoint presentations in former TU employees' email accounts.  Those searches resulted in four copies of the 36-page "Preview Script," and 16 pages of cover emails.

///

e. I first became aware of and saw the "Preview Script" and the pertinent emails in about mid-May 2013. Repeated searches and client interviews over the past three years had led me and TU to believe – and represent to the Court – that no such "Preview Script" or other instructor script existed.

f. Prompt investigation and inquiry confirmed that the "Preview Script" was never implemented, as testified by Mr. Sexton in August 2012.

g. Additionally, the investigation also revealed that the content of Ex. 2 was identical to the Ex. 86 "Talking Points," which defendants had produced one year earlier.

h. The "Preview Scripts" and cover emails were produced on 6/4/13, along with all 27,000 pages of other documents located as a result of the numerous word searches proposed by plaintiffs. The production was large because many of the requests were extremely broad, but defendants voluntarily agreed to conduct them and produce responsive documents. For example, plaintiffs requested every document that included the word or letters "test" and "ad" or "full year" or "12 months."

i. Portions of two Sexton emails with business data were redacted, and included on the produced "redaction log," as was an entire email from Mr. Sexton to TU's outside counsel then reviewing all TU materials.

j. Three copies of the "Preview Script" which were circulated among the TU employees were produced without redaction. The fourth copy was identical to the first three, but was an attachment to the Sexton email sent to outside counsel. Out of an abundance of caution concerning potential waiver of the attorney-client privilege, I redacted that fourth copy. However, I produced all the redacted pages, so that plaintiffs could count them and be assured that the fourth copy of the "Preview Script" was the same as the three produced copies.

k. All pages in question were Bates-stamped and marked Confidential due to being proprietorial to TU.

///

4. In sum, during my review of tens of thousands of pages of documents, I became aware of the subject documents, investigated them, and immediately produced them with appropriate redactions and designations. Plaintiffs' suggestion that the production was "inadvertent" is wrong.

5. Plaintiffs noticed and conducted Ms. Levand's deposition. Based on the questioning, it was obvious that they did so in an unsuccessful attempt to have Ms. Levand recant her two declarations supporting TU in its opposition to class certification.

6. Ms. Levand instead stood by both her declarations, confirmed that she was completely satisfied with her TU programs and instructors, and did not expect more personal "involvement" by Mr. Trump than his founding and oversight. A true and correct copy of her deposition testimony confirming these facts is attached as Exhibit A.

7. Ms. Levand also confirmed that she had been badgered by plaintiffs' counsel to change her declaration, that plaintiffs' counsel did not clearly identify themselves or their side of the case when contacting her, and that they led her to believe that they were affiliated with TU. A true and correct copy of her deposition testimony confirming these facts is attached as Exhibit B.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed by me on July 3, 2013, in San Diego, California.

                                       s/David K. Schneider
                                       David K. Schneider

<u>MAKAEFF v. TRUMP UNIVERSITY, LLC, et al.</u>
USDC Case No. 10 CV 0940 CAB (WVG)

**<u>INDEX OF EXHIBITS</u>**

| <u>Exhibit No.</u> | <u>Description</u> | <u>Starting Page</u> |
|---|---|---|
| A | Deposition testimony of Paula Levand, taken on June 17, 2013 ("Levand Depo."), pages 137-140, 152-153, 165 and 170 | 6 |
| B | Levand Depo., pages 133, 134 and 188 | 16 |