# EXHIBIT A

Paula Levand                                    Makaeff v. Trump University

1            UNITED STATES DISTRICT COURT OF CALIFORNIA

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4    TARLA MAKAEFF, BRANDON          )
     KELLER, ED OBERKROM and         )
5    PATRICIA MURPHY, on behalf      )
     of themselves and all others   )
6    similarly situated,            )
                                    )
7              Plaintiffs,          )   Index No.
                                    )   3:10-CV-00940-CAB
8         VS.                       )
                                    )
9    TRUMP UNIVERSITY, LLC, (AKA     )
     TRUMP ENTREPRENEUR             )
10   INITIATIVE), a New York         )
     Limited Liability Company,     )
11   DONALD TRUMP, and DOES 1        )
     through 50, inclusive,         )
12                                  )
               Defendants.          )
13   _____)

14

15

16

17            DEPOSITION OF PAULA LEVAND

18              Los Angeles, California

19              Monday, June 17, 2013

20

21

22

23

24   Reported by:  NIKKI ROY
     CSR No. 3052
25   Job No.: 10006477

Paula Levand                                    **Makaeff v. Trump University**

1       Q.    And did you find through your attendance at

2    these various seminars that some instructors were

3    better than others?

4       A.    I liked -- I liked most all of them.

5       Q.    Did you find them to be experts in their

6    fields?

7       A.    Yes.

8             MR. FORGE:   Objection; foundation.

9             THE WITNESS:   Right, I did.   I thought they

10   seemed to be very knowledgeable and had -- all of

11   them gave us their experience, their past experience.

12   BY MR. SCHNEIDER:

13      Q.    The subject matter of the quick turn real

14   estate, was that different than the subject matter of

15   the commercial multi-family?

16      A.    Yes.

17      Q.    In comparing those two, were each of those

18   three-day workshop programs?

19      A.    I'm trying to think if it was two or three.

20      Q.    All right.   Multi-day, though, right?

21      A.    Yes.

22      Q.    Comparing the content of the information

23   that was provided during those two programs --

24      A.    The multi-family.

25      Q.    -- versus the quick turn real estate?

Paula Levand                                      Makaeff v. Trump University

```
1        A.    Okay.
2        Q.    What percentage would you say was the same,
3   the same information?
4        A.    I'd say they were two different topics.  One
5   was on -- I would say they were different.  They
6   were -- commercial and multi-family was -- they were
7   completely different.  The quick turn were not
8   acquiring the property ourselves.  It was just
9   called, you know, creating -- getting an option or
10  getting the assignment.  So that we're -- we can make
11  money, not as much as the other, but there's not the
12  risk.  You're not spending money.
13       Q.    Same question with regard to the wealth
14  preservation, was that program completely different
15  than the creative finance or the --
16       A.    Yes.
17       Q.    -- quick turn?
18            All right.  There's a claim in the lawsuit
19  by the plaintiffs, the parties suing, that all the
20  programs were the same.  They're all scripted.  All
21  the information was the same.  All the instructors
22  were basically the same.  They were inexperienced and
23  the information provided to the public was the same
24  and basically worthless.  That's the claim in the
25  lawsuit.
```

```
 1              Was that your experience?

 2              MR. FORGE:  Objection to form.

 3   BY MR. SCHNEIDER:

 4       Q.   Was that your experience?

 5       A.   No, it was not.

 6       Q.   How was your experience different than how I

 7   just described what the plaintiffs have alleged in

 8   the lawsuit?

 9       A.    I found them to be just very knowledgeable.

10   They presented a lot of information.  They presented

11   their experience, their -- and told how -- you know,

12   it's been a while.  But, I mean, they were very -- I

13   felt like I was sitting in a class and it was a lot

14   of information.

15       Q.   Did you find some of the Trump University

16   programs to be inspirational?

17       A.   Yes.

18       Q.   Motivational?

19       A.   Yes.

20       Q.   Did they help you take action in real

21   estate?

22       A.   Yes.

23       Q.   And would you say that those programs gave

24   you confidence to go out into the market and try your

25   hand at real estate?
```

Paula Levand                                    **Makaeff v. Trump University**

1        A.    Yes.

2        Q.    Did you have an understanding that the

3   programs -- I think you used the word "classes."  Did

4   you understand that the programs were for information

5   sort of similar to a classroom?

6        A.    Yes.

7        Q.    And did you understand that in real estate

8   there's risks involved with the investments?

9        A.    Yes.  And they -- yes.

10       Q.    And did they talk about that at all?

11       A.    Yes.  They -- anybody that I dealt with,

12  they -- it's not an absolute.  However, the

13  instructors that I had weren't -- they were promoting

14  the program.  Their experience was positive.

15  There -- there are different -- they were talking

16  about the different options you have to solve the

17  solution, to focus on solutions.  It's not just one.

18  But the different ways that you can -- if plan A

19  didn't work out you can go to plan B, C and D.

20       Q.    All right.  I'd like you to look at the

21  second page of Exhibit 2.  So this is your June 22

22  declaration.  It's -- it's actually the real first

23  page of the declaration.  I'm sorry.  The front page

24  is the cover page.  So this would be -- I think on

25  the bottom it has a mark on it that says EX 14

Paula Levand                                    Makaeff v. Trump University

1    those classes you found to be valuable?

2         A.    Yes.   I'm trying to think.   The asset

3    protection was the one I got a book from.   And I'm

4    trying to think, that was mainly the resources prior

5    to the -- and so a lot of it was the note taking in

6    the live events.

7         Q.    I'm sorry.   Could you say that again, I'm

8    not sure I understood your response.

9         A.    Well, the notes we took like during class

10   were -- were helpful.   The books that we could

11   purchase were -- you know, they're materials that I

12   could refer to.   And I have.

13        Q.    Do you recall any of the instructors' names

14   who taught any of the five or six workshops that you

15   attended?

16        A.    There was James Harris.

17        Q.    And what'd you think of him?

18        A.    He was very good.

19        Q.    Knowledgeable?

20        A.    Yes.   Very positive.

21             MR. FORGE:   Interject, lack of foundation.

22   BY MR. SCHNEIDER:

23        Q.    You found him to be knowledgeable, correct?

24        A.    Yes.   I respected him.

25        Q.    And energetic?

Page 152

www.aptusCR.com

Exhibit A
- 12 -

Paula Levand                                    **Makaeff v. Trump University**

1        A.   Yes.

2        Q.   Back to the area we talked about before, was

3   he motivating to you?

4        A.   Yes.

5        Q.   Got you excited about being an investor in

6   real estate?

7        A.   He -- sorry.

8        Q.   Did he get you excited about wanting to be

9   interested in real estate?

10        A.   Yes.   And he was responsible for me changing

11   from Trump Institute or transferring from Trump

12   Institute to Trump University.

13        Q.   In paragraph 8 of your declaration you state

14   that you could write to Trump representatives online

15   and they always responded and provided the support?

16        A.   Where is that?

17        Q.   Paragraph 8.

18        A.   Okay.

19        Q.   Line 13.

20        A.   Okay.

21        Q.   Could you read those first couple lines to

22   yourself.

23             (Document viewed by the witness.)

24             THE WITNESS:   Yes.

25   BY MR. SCHNEIDER:

Paula Levand                                    **Makaeff v. Trump University**

```
 1   and what was low so we didn't go the opposite way,
 2   not knowing.
 3        Q.   All right.  But did -- so, for example,
 4   there's a claim in the lawsuit by one of the
 5   plaintiffs that they were told to put a specific
 6   number down on the form.
 7             Were you ever -- were you ever --
 8        A.   No.
 9        Q.   -- told that?
10             MR. FORGE:  Object as to the form.
11             THE WITNESS:  No, I wasn't.
12   BY MR. SCHNEIDER:
13        Q.   The last numbered paragraph of your
14   declaration on page 5, number 12, states (reading:)
15             Trump University has given me a
16             new way of thinking, confidence and
17             helped me become more competent.
18             With their training, support and
19             guidance, I have learned what is
20             needed to be successful.
21             Was that true at the time you wrote this?
22        A.   Yes, and it still is.  I mean, it was the
23   beginning of a new mind set.
24        Q.   Let me ask you to look at Exhibit 3, which
25   is your March 26 declaration.
```

1        A.    No.

2        Q.    Okay.   And did you think that you were going

3    to be personally mentoring with him for your three

4    days, that he was going to be --

5        A.    No.

6        Q.    -- looking at properties?

7             All right.   So is it fair that you thought

8    he would have a much more overseeing responsibility

9    to make sure that the program is operating, if

10   there's problems they're being addressed, that sort

11   of thing?

12       A.    Yes.

13            MR. FORGE:   Objection to form.

14            THE WITNESS:   And I really -- I mean, I knew

15   that Michael Sexton was the president.   And some of

16   the e-mails that I got were from him.

17   BY MR. SCHNEIDER:

18       Q.    All right.   So you knew that the president

19   was somebody named Michael Sexton, right?

20       A.    Yes.

21       Q.    And did you understand that he would be

22   running the company?

23       A.    He was -- he would be actively involved in

24   the company.

25       Q.    Michael Sexton?

# EXHIBIT B

Paula Levand                                    **Makaeff v. Trump University**

```
1              UNITED STATES DISTRICT COURT OF CALIFORNIA

2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4   TARLA MAKAEFF, BRANDON         )
    KELLER, ED OBERKROM and        )
5   PATRICIA MURPHY, on behalf     )
    of themselves and all others   )
6   similarly situated,            )
                                   )
7             Plaintiffs,          )   Index No.
                                   )   3:10-CV-00940-CAB
8        VS.                       )
                                   )
9   TRUMP UNIVERSITY, LLC, (AKA    )
    TRUMP ENTREPRENEUR             )
10  INITIATIVE), a New York        )
    Limited Liability Company,     )
11  DONALD TRUMP, and DOES 1       )
    through 50, inclusive,         )
12                                 )
              Defendants.          )
13  _____ )

14

15

16

17              DEPOSITION OF PAULA LEVAND

18              Los Angeles, California

19              Monday, June 17, 2013

20

21

22

23

24  Reported by:  NIKKI ROY
    CSR No. 3052
25  Job No.: 10006477
```

Exhibit B
- 17 -

1      Q.   Okay.

2      A.   Caller ID.

3      Q.   I understand.

4           There were some questions by counsel about

5      the word "regarding" or "from," whether the caller,

6      the unknown caller, whether it was Ms. Eck or someone

7      from her office, or Jennifer, maybe that was Jensen,

8      Ms. Jensen sitting here, where they identified

9      themselves as being from Trump University or with

10     Trump University or regarding Trump University.

11          Is it a fair statement that whatever

12     preposition they used, they left you with the

13     impression that they were affiliated or associated

14     with Trump University?

15     A.   Yes.

16     Q.   I'll tell you that you are not the only

17     witness that this has happened to.  And in -- on

18     December 13 Ms. Eck wrote a letter to me in which she

19     agreed to the following protocol when talking with

20     witnesses in this case.  And the very first item in

21     Ms. Eck's agreement, which is dated December 13,

22     states that (reading):

23               We agree to and, in fact, always

24               have identified ourselves as counsel

25               for the plaintiff students in the

Paula Levand                                    **Makaeff v. Trump University**

1          lawsuit against Trump University.

2          All right.  So she was telling me in early

3    December after this issue already arose with another

4    witness, that they had and they always will identify

5    themselves in calls to witnesses as the lawyers for

6    the plaintiff students against Trump University.

7          Did she tell you that?

8     A.    No.

9     Q.    Her second point to me on December 13 was

10   (reading):

11              We agree to and have stated the

12          purpose of our call.

13          Did she do that?

14    A.    No.

15    Q.    I'd like to ask you some questions about

16   Exhibit 2, which is your first declaration about your

17   experiences, basically, at Trump University.  All

18   right?

19    A.    Okay.

20    Q.    It's my understanding that in addition to

21   having mentors you also went to some classroom

22   seminars; is that right?

23    A.    Yes.

24    Q.    Do you remember the general topic areas of

25   some of those seminars that you attended?

```
1                        EXAMINATION
2   BY MR. SCHNEIDER:
3        Q.    When the lawyer for the --
4              MR. LUSBY:  You're up against your 2:00
5   o'clock deadline.
6              MR. SCHNEIDER:  I know.  I've got three
7   minutes.  Thank you.
8        Q.    When the lawyer called you from the other
9   side and gave you the impression that she was with
10  Trump University, did she talk at all about any of
11  the students?
12             MR. FORGE:  Objection to form.
13             THE WITNESS:  No.
14  BY MR. SCHNEIDER:
15       Q.    As I understand, during the last
16  conversation that you had with her and you asked her
17  point blank do you represent the students, that's the
18  first time that she acknowledged that fact; is that
19  right?
20       A.    Yes.
21       Q.    Once she acknowledged the fact, did she
22  identify any of her of her clients?
23       A.    No.
24       Q.    Counsel spent some time talking about a
25  manual.  The evaluations that you filled out after
```