EXHIBIT A

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated, <br><br>                    Plaintiffs, <br><br>     vs. <br><br> TRUMP UNIVERSITY, LLC, et al., <br><br>                    Defendants. | No. 3:10-cv-0940-GPC(WVG) <br><br> <u>CLASS ACTION</u> <br><br> [PROPOSED] FOURTH AMENDED CLASS ACTION COMPLAINT |

862468_1

Plaintiffs John Brown, J.R. Everett, Sonny Low, Tarla Makaeff, and Ed Oberkrom (collectively, "Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Trump University, LLC and Donald J. Trump (collectively, "Defendants" or "Trump University").[1] Plaintiffs allege the following based upon information and belief, the investigation of counsel, discovery to date, and personal knowledge as to the allegations pertaining to them.

### NATURE OF THE ACTION

1.     Defendants ensnared Plaintiffs and thousands of other student-victims in a fraudulent scheme nationwide to sell real estate seminars and mentorships ("Live Events") by trading on the Trump moniker.  Defendants uniformly misled Plaintiffs and the Class that they would learn Donald Trump's real estate secrets through him and his handpicked professors at his elite "University."  The misleading nature of the enterprise is embodied by its very name.  That is because, though Defendants promised "Trump University," they delivered neither Donald Trump nor a University.

2.     Defendants expressly set out to leverage Donald Trump's fame and expertise as a real estate mogul by creating "Trump University," which Defendants marketed as a premier institution of higher learning rivaling Wharton Business School, and with which Trump was so integrally involved, students would effectively be learning from him.  Defendants marketed Trump University as 'the next best thing to being Trump's "Apprentice,"' referencing Trump's hit reality television series.

3.     In a promotional video for Trump University posted on YouTube, embedded in email blasts, and shown at Trump University Live Events (hereinafter the "Main Promotional Video"), Trump himself promised would-be student-victims:

> We're going to have ***professors and adjunct professors*** that are absolutely terrific.  Terrific people.  Terrific brains.  Successful.  The

---

[1]     As detailed herein, Trump University changed its name to Trump Entrepreneur Initiative on June 2, 2010.  As its name changed after the initial complaint was filed on April 30, 2010, it is referred to herein as Trump University.

best.  We are going to have the best of the best.  And, honestly, if you don't learn from them, *if you don't learn from me*, if you don't learn from the people that we're going to be putting forward, and these are all people that are *handpicked by me*, then, you're just not gonna make it in terms of the world of success.  And that's okay, but you're not gonna make it in terms of success.[2]

4.     Defendants mass mailed to Plaintiffs and the Class a "Special Invitation from Donald J. Trump" to the free introductory Live Event, adorned with the Trump University coat of arms and promising: "*My hand-picked instructors and mentors will show you how to use real estate strategies* . . . ."  The letter continues that with "ongoing support from your own *Team of Trump Experts* – you'll have what you need to succeed!"  The letter closes with Donald J. Trump's name, signature, and Trump University's address at 40 Wall Street, 32nd Floor, New York, NY 10005.

5.     Trump gave himself a prominent, if not exclusive, role in the national advertising campaign for "Trump University."  However, Trump did not fulfill the promises he made to student-victims around the country – he did not teach students his coveted real estate investing "secrets" at the Live Events, he did not contribute in any meaningful way to the curriculum for the Live Events, and he did not handpick the Live Event seminar instructors and mentors who "taught" student-victims at 3-day Live Events and Elite mentorship programs – both of which were upsells from the free introductory Live Event called the "Preview."

6.     Almost immediately after Trump founded Trump University, the New York State Education Department ("NYSED") wrote to Donald Trump on May 27, 2005, warning him that using the name "University" was illegal without a license, and asked Trump to stop using the name "Trump University."  Instead of complying, Defendants created a fictitious office in Dover, Delaware, and then continued to brazenly operate illegally out of their 40 Wall Street office in New York, New York for five years.  On March 30, 2010, the NYSED wrote to Donald Trump and again

---

[2]     Emphasis is supplied and citations and internal quotation marks omitted here and throughout unless otherwise noted.

advised that use of the title "University" in the name of his corporation was "misleading" and illegal.  On June 15, 2010, NYSED wrote to Trump University directing Defendants to cease any further training until Trump University obtained a license to operate as an institution of higher learning.  The NYSED demanded: "***All current students should be refunded***" and that failure to comply with the law "may result in disciplinary action."  Defendants did not give students refunds, but they did stop offering and selling their Live Events shortly thereafter in or about August 2010.

7.     The New York Attorney General has launched an investigation into Trump University's deceptive business practices, and the Texas Attorney General's investigation into misleading advertisements by Trump University ultimately led to the suspension of Live Events in that State.  At least 11 Attorneys General and the U.S. Department of Justice have received numerous complaints about Trump University.  And, due to Defendants' misleading advertisements and marketing of Trump University as a "University," the Better Business Bureau ("BBB") refused to accredit Trump University and gave it a D- grade due to the many complaints lodged by consumers.

8.     Plaintiffs bring this class action on behalf of themselves and all other similarly-situated consumers who purchased Trump University Live Events throughout the United States, asserting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO Statute"), 18 U.S.C. §§1962(c)-(d); California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"); the Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. ("CLRA"); the False Advertising Law, Cal. Bus & Prof. Code §17500, *et seq*. ("FAL" or "17500"); Financial Elder Abuse in violation of Cal. Welf. & Inst. Code §15600, *et seq.*; Unjust Enrichment; Fraud; §349 of New York General Business Law ("Deceptive Acts and Practices"); Florida Statute §501.201, *et seq*.; and Florida Stat. §817.41.

9.     Plaintiffs seek damages and equitable relief on behalf of themselves and the Class, including, but not limited to: treble their monetary damages; restitution;

1  injunctive relief; punitive damages; costs and expenses, including attorneys' and
2  expert fees; interest; and any additional relief that this Court determines to be
3  necessary or appropriate to provide complete relief to Plaintiffs and the Class.

4  **JURISDICTION AND VENUE**

5       10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1332
6  and 1367, because the Plaintiffs reside in various states, including California,
7  Missouri, Florida, and New York,  and are therefore diverse from Defendants Trump
8  University and Donald Trump who reside in New York.  The Court has supplemental
9  jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

10       11.    This Court has original jurisdiction over the subject matter of this action
11  pursuant to 28 U.S.C. §1331, because Plaintiffs' claims arise under the RICO Statute,
12  18 U.S.C. §1962.  This Court also has original jurisdiction over this action under the
13  Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named
14  Plaintiffs and every Class Member, because the proposed Class contains more than
15  100 members, the aggregate amount in controversy exceeds $5 million, and Class
16  Members reside across the United States and are therefore diverse from Trump
17  University and Donald Trump.

18       12.    This Court has personal jurisdiction over Trump University and Donald
19  Trump because they have significant minimum contacts with this State, and they
20  otherwise intentionally availed themselves of the laws and markets of California
21  through the promotion, marketing, and advertising of Trump University in this State
22  and on the Internet to consumers in California.

23       13.    Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2),
24  because a substantial part of the events or omissions giving rise to Plaintiffs' claims
25  occurred in this District.  Venue is also proper under 28 U.S.C. §1391(a)(3), because
26  Defendants are subject to personal jurisdiction in this District as they transact a
27  substantial amount of business in this District.  Indeed, Trump University has offered
28  numerous Live Events in San Diego, California.  Plaintiffs have filed affidavits

1   showing that this action has been commenced in a proper county pursuant to Cal. Civ.

2   Code §1780(c).

3                                    **PARTIES**

4   **A.    Plaintiffs**

5          14.    **Plaintiff Tarla Makaeff –** Plaintiff Tarla Makaeff resides in Los

6   Angeles County, California.  In late July 2008, a friend forwarded a promotional email

7   from Trump University regarding an upcoming Live Event, which included a link to

8   the Main Promotional Video stating: "Donald Trump, Founder and Chairman of

9   Trump U, created this video . . . ."  Ms. Makaeff's friend invited her to attend the 3-

10  day Fulfillment Live Event and split the cost of $1,495.  Ms. Makaeff agreed as she

11  was drawn in by the "Trump" name.  During the Live Event, Ms. Makaeff believes

12  that she and other attendees were shown the Main Promotional Video.  Based on

13  misrepresentations and material omissions that she would receive Donald Trump's

14  real estate secrets from his handpicked "professors" and mentors at his "University,"

15  Plaintiff Makaeff purchased the Gold Elite program for $34,995, on or about August

16  10, 2008, plus the interest, finances charges, and late fees paid to her credit card.

17  Plaintiff Makaeff was also forced to retain a criminal attorney after being contacted by

18  the district attorney's office who advised that the "bandit signs" practice taught at

19  Trump University was illegal and could subject her to a fine of a thousand dollars per

20  sign, a misdemeanor charge and up to six months in jail.

21         15.    **Plaintiff Ed Oberkrom –** Plaintiff Ed Oberkrom is a senior citizen who

22  resides in St. Louis, Missouri.  In February 2009, Plaintiff Oberkrom was lured into

23  attending the Preview Live Event after receiving a personal "Special Invitation from

24  Donald J. Trump."  At the Preview, Plaintiff Oberkrom saw the Main Promotional

25  Video which promised his handpicked instructors.  Mr. Oberkrom purchased the

26  Fulfillment Live Event for approximately $1,495, which he split with a friend.  Based

27  on Defendants' misrepresentations and material omissions that he would receive

28  Donald Trump's real estate secrets from his handpicked "professors" and mentors at

his "University," in March 2009, Plaintiff Oberkrom was upsold to a $25,000 Elite mentorship, plus the interest, finances charges, and late fees paid to his credit card.

16.     **Sonny Low** – Plaintiff Sonny Low is a senior citizen and resident of San Diego County, who resides in Chula Vista, California.  He retired in 2005 as a U.S. Foreign Service Officer who served our country for 34 years.  Plaintiff Low received a personal "Special Invitation from Donald J. Trump" letter to attend a Preview Live Event in San Diego, California through the mails in August 2009.  Based on Trump's misrepresentations and material omissions that he would receive Donald Trump's real estate secrets from his handpicked "professors" and mentors at his "University," Low paid $1,495 to attend the Fulfillment Live Event on or about August 18, 2009, where he was then upsold to a $25,000 Elite mentorship, plus the interest, finances charges, and late fees paid to his credit card.

17.     **J.R. Everett** – Plaintiff J.R. Everett is a senior citizen and resident of Tampa, Florida.  Ms. Everett worked in systems development for 30 years for a large communications company.   After receiving a "Special Invitation from Donald J. Trump" in the mail, Everett attended the Preview Live Event in Tampa, Florida on or about October 7, 2009.   Based on Defendants' misrepresentations and material omissions that she would receive Donald Trump's real estate secrets from his handpicked "professors" and mentors at his "University," Everett paid for the $1,495 Fulfillment Live Event which she attended in Tampa, Florida, on or about October 16-18, 2009.  There, Everett was given a promotional letter signed by Donald Trump and upsold to the $35,000 Gold Elite program on or about October 16, 2009, plus the interest and finances charges paid to her credit card.

18.     **John Brown** – Plaintiff John Brown is 62-years old and resides in New York, New York.  Brown received an invitation to attend Trump University's Preview Live Event and was lured in by Donald Trump's name and reputation as a real estate expert.  Brown attended the Preview Live Event in New York, New York, on or about September 14, 2009, where Brown was shown the Main Promotional Video.  Based

on Defendants' misrepresentations and material omissions that he would receive Donald Trump's real estate secrets from his handpicked "professors" and mentors at his "University," on September 14, 2009, Brown purchased and attended the $1,495 Fulfillment Live Event at the New York Marriott East Side on or about September 25-27, 2009, where he was upsold to the Elite program.  Brown maxed out two credit cards to pay for a $25,000 Elite mentorship on September 26, 2009, plus the interest, finances charges, and late fees paid to his credit card.

19.    None of the Plaintiffs would have paid for any of the Trump University programs if he or she had known that Donald Trump had no meaningful role in Trump University's curriculum for the Live Events or selecting the instructors for its Live Events; that instead of professors, adjunct professors, and other instructors – "all handpicked by [Trump]," the Live Events were taught by commission-based sales people; and that the NYSED had declared Defendants' use of the title "University" to be misleading as they were unlicensed and unaccredited to do so.

**B.    Defendants**

20.    **Defendant Trump University, LLC –** Defendant Trump University, LLC (now The Trump Entrepreneur Initiative LLC) is a limited liability company registered in New York with its principal place of business at 40 Wall Street, New York, New York.   Trump University is one of the companies in the Trump Organization conglomerate located in New York, New York.  In response to renewed demands in 2010 by the NYSED, and after this lawsuit was filed, Trump University changed its name to "The Trump Entrepreneur Initiative" on or around June 2, 2010.

21.    Trump University has never been an accredited University or held a license to operate out of the State of New York as an educational institution.  Trump University does not offer any degrees, licenses or credits.

22.    With the assistance of Trump Organization, Trump University created a "fictitious office" at 160 Greentree Drive, Suite 101, Dover, Delaware in response to the NYSED's demand that it cease operating as a "University" without a license in

1  New York.  The Dover address appears on mass emails sent to Plaintiffs and the

2  Class.  However, Trump University has never operated out of Dover, Delaware.

3       23.     Trump University maintained a sales call center in Utah.  At all times

4  relevant hereto, Trump University conducted substantial business throughout the State

5  of California, including marketing, advertising, and hosting Live Events in San Diego

6  County and all over the State of California.

7       24.     At all times relevant hereto, Trump University acted for or on behalf of

8  Donald Trump in undertaking the acts and/or omissions alleged herein.

9       25.     **Defendant Donald J. Trump** – At all times herein mentioned, Donald J.

10 Trump ("Defendant Trump") was and is an individual residing in the State of New

11 York.  Trump was a founder and Chairman, officer, director, managing member,

12 principal and/or controlling shareholder of Trump University.  Defendant Trump is

13 also Chairman of the board of directors, President and CEO of the Trump

14 Organization.

15      26.     Defendant Trump received revenues paid to Trump University from

16 Plaintiffs and other Class Members through two or more shell companies, including

17 DJT University Managing Member LLC (now DJT Entrepreneur Managing Member

18 LLC), a NY Limited Liability Company, and DJT University Member LLC (now DJT

19 Entrepreneur Member LLC), a NY Limited Liability Company.

20      27.     Defendant Trump has conducted substantial business within the State of

21 California.

22      28.     Defendant Trump approved, authorized, either specifically and/or tacitly

23 directed, ratified and/or participated in the acts complained of herein engaged in by

24 Trump University.

25      29.     Trump University and Donald Trump are referred to herein collectively

26 as "Defendants."

27

28

## C.     Co-Conspirators

30.     **Michael Sexton** – At all times herein mentioned, Michael Sexton was and is an individual residing in the State of New York.  Mr. Sexton is the founder and former President of Trump University from its inception until his departure in the summer of 2010.  Since then, Sexton has had an ownership interest in Trump University.  Sexton approved, authorized, either specifically and/or tacitly directed, ratified and/or participated in the acts complained of herein engaged in by Trump University.

31.     **Trump Organization, LLC** – At all times herein mentioned, the Trump Organization was a limited liability company registered in New York.  Trump University falls within the Trump Organization conglomerate.  Defendant Trump is Chairman of the Board of Directors, President and CEO of the Trump Organization.  Trump Organization facilitated Trump University's illegal operation out of New York by setting up a fictitious office in Dover, Delaware and incorporating Trump University in Delaware.  Trump Organization also maintains Trump University's servers in New York, thus facilitating the wire fraud alleged herein.

**COMMON FACTUAL ALLEGATIONS**

## A.     The Scheme

32.     Defendant Trump and others devised and executed a scheme to make tens of millions of dollars by marketing Trump University as both: (1) a learning institution with which Donald Trump was so integrally involved that students would effectively be learning from him because, among other reasons, they would be learning his real estate secrets from instructors whom he had handpicked; and (2) an actual university with a faculty of professors and adjunct professors.

33.     This "Scheme" was fueled by a national advertising campaign, the cornerstone of which was the Main Promotional Video.  Defendant Trump caused the Main Promotional Video to be published to YouTube online so it would be viewed by prospective student-victims throughout the country.  Trump University operated an

extensive advertising campaign with an annual budget at one time of $6 million, and a database of over one million current and potential customers, which it targeted with frequent email blasts.  These e-blasts contained misrepresentations and/or links to view the Main Promotional Video on YouTube, and/or Trump University's Facebook page, Twitter account, and/or LinkedIn profile.  When Trump University introduced the Donald Trump "signature" campaigns (featuring Donald Trump's signature in letters and ads) including "Are YOU My Next Apprentice?" and "Learn From the Master," consumer responses jumped by over 50%.  And though internal documents show personnel knew it was false to claim the instructors were handpicked by Defendant Trump, Defendants continued to use this catch-phrase as a marketing hook.

34.   Other methods and means that Defendant Trump and others used to execute and perpetuate the Scheme included the following:

(a)   Defendant Trump reviewing and approving advertisements before they were released, which featured quotes from Defendant Trump himself, such as: "I can turn anyone into a successful real estate investor, including you. – Donald Trump."

(b)   Using Defendant Trump's name, photos and/or quotes for all Live Events, website and advertising, and the website home page displayed a large photo of Defendant Trump along with the message from him: "Are YOU My Next Apprentice? Prove it to me!"



(c)     Using advertisements featuring Defendant Trump and his image with quotes such as: "Don't think you can profit in this market? You can. And I'll show you how. Learn from my handpicked experts how you can profit from the largest real estate liquidation in history."

(d)     Sending emails to thousands or tens of thousands consumers from Trump University's one million customer database that featured Defendant Trump's photo with the words: "Are you My Next Apprentice," and stated: "76% of the world's millionaires made their fortunes in real estate. Now it's your turn. My father did it, I did it, and now I'm ready to teach you how to do it too." The signature block at the bottom of the email read, Donald J. Trump, Chairman, Trump University, and above that is Defendant Trump's actual signature.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    (e)    Sending signed letters through the mails to consumers nationwide,

22    with Defendant Trump's name and signature at the bottom, stating: "[N]o course

23    offers the same depth of insight, experience and support as the one bearing my name .

24    . . . *My hand-picked instructors and mentors will show you how to use real estate*

25    *strategies* to: [s]upplement or even replace your income, [s]ecure your long-term

26    financial future . . . [s]tart profiting today!  Now is the time to create your financial

27    legacy. *You can do it*, even if you only have five or ten hours a week to spare. With

28

our simple instructions and practice exercises – ***and ongoing support from your own Trump Team of Experts – you'll have what you need to succeed!***"   (Second emphasis in original). The letter closed with Donald J. Trump's name, signature, and Trump University's address, at 40 Wall Street, 32nd Floor, New York, NY 10005.

(f)     Sending substantially-similar signed letters through the mails to consumers nationwide addressed as "Dear Friend" from Donald Trump promising: "Come to my ***free*** class.  In just 90 minutes, my hand-picked instructors will share my techniques, which took my entire career to develop," and signed "Sincerely, Donald Trump" with Defendant Trump's signature.  (Emphasis in original).   The letter enclosed two "VIP" tickets to an upcoming Preview Live Event in the consumer's area.

(g)     Delivering to student-victims, who were in the midst of the Trump University $1,495 Fulfillment Live Event and whom Trump University was trying to persuade to sign up for the Elite program, a personalized (addressed to them by name) letter from Donald J. Trump.  The letter bore the Trump logo at the top of the letter and the words "From the Office of Donald J. Trump." The letters stated:

> Success in real estate begins with great training and proven strategies.  Without education you don't stand a chance.
>
> I know how to make money in real estate. I've been doing it for a long time with a lot of success. My family has been a leader in real estate since my father – Fred Trump – started building residential homes in New York City 75 years ago. My father was my mentor and he taught me a lot. Now I want to teach you how to make money in real estate. To be my apprentice you need to Think BIG and really want to succeed. More than anything, you need to take action.
>
> ***Do YOU have What It Takes to Be My Next Apprentice?***
>
> I only work with people who are committed to succeed. I founded Trump University back in 2005 to teach go-getters how to succeed in real estate. My team at Trump University is filled with real estate experts . . . proven winners.  We're the best of the best and we know what works. If you think you have what it takes to be my next apprentice, prove it to me.
>
> We've trained thousands of real estate investors over the years and we know you will be most successful when you work with a partner. . . .

1
2
3

> If you're serious about making money and safeguarding your future, learn to invest in real estate. Trump University will teach you how. We'll **_give you the best training_** and the confidence to succeed. If you think you've got what it takes to be my next Apprentice, come prove it to me and my team.

4   The letter closes with "See you at the top!" And, it is signed, "Donald J. Trump,

5   Chairman, Trump University."

6   (h)   Promising students that "[t]here are many real estate investment

7   seminars available but this is the only one designed by Donald Trump's personal

8   advisors, to show you step-by-step how to create quick cash immediately, and how to

9   build a large monthly cash flow WITHOUT using any of your own money or credit."

10   (i)   Enforcing the uniform deceptive portrayal of Trump University

11   through policies and procedures, including Marketing Guidelines, the PlayBook, and

12   standardized PowerPoint presentations and scripts that instructors were contractually

13   required to use.  For example, the Marketing Guidelines were designed to "ensure

14   brand, tone and message across all Trump University's marketing efforts."  The

15   "tone" required by those Marketing Guidelines was to "Think of Trump University as

16   a real University with a real Admissions process, *i.e.*, not everyone who applies, is

17   accepted."  The Guidelines also required that personnel use the term "faculty" which

18   was to be marketed as comprised of Donald Trump's "top experts."

19   (j)   Sending scripts containing misrepresentations to instructors for use

20   at the Live Events through the interstate wires, such as the Preview Script sent from

21   Michael Sexton to primary instructors, including James Harris and Stephen Goff.  The

22   speaker was required to use the official Trump University script and PowerPoint, and

23   not make any changes without prior authorization pursuant to the PlayBook and

24   her/his contract.

25   (k)   Promising students in blogs posted on Trump University's website

26   that Defendant Trump would be actively involved in Trump University and its

27   courses:

28

862468_1

- 14 -

3:10-cv-0940-GPC(WVG)

> Trump University ***grew out of my desire to impart my business knowledge, accumulated over the years***, and my realization that there is a huge demand for practical, convenient education that teaches success.
>
> ***I want the people*** who go to Trump University ***to succeed, and I plan to do my part to help them. I'm not just putting my name on this venture; I plan to be an active presence*** in the curricula. The website, www.trumpuniversity.com, will include such features as "***Ask Mr. Trump," in which I answer your questions***; the ***blog*** you're reading now; ***video clips of me***; and more. ***My words, ideas, and image will also be woven into the courses we create***. The reason I'm playing such an active role in Trump University is that I truly believe in the power of education . . . . [T]he people who go to Trump University want to be successful, and ***I'm on their side***.

Another blog written under Defendant Trump's name promised:  "***I have to believe in whatever I put my name on***, and it has to reflect who I truly am. To do otherwise would be a disservice to me, my loyal customers, and prospective customers."

> (l)     Promising that he would personally select and answer students' questions in a forum called "Ask Donald Trump," when the questions were selected and the answers written by a same ghost writer (who was not a real estate expert).



**B.     The Truth**

35.     Defendants and co-conspirators knew that these representations were false, that Defendant Trump was not actively involved in Trump University's Live Events, did not select or interview Trump University's Live Event instructors or mentors, that Defendant Trump offered no input into the actual instruction provided to Trump University's victim-students, that a ghost writer wrote the Donald Trump blogs and wrote most or all of the answers to the "Ask Donald Trump" questions and that Trump University did not have a faculty of professors and adjunct professors, but rather independent contractors paid commissions for sales.   In other words, Defendants promised Trump University, but delivered neither Donald Trump nor a University.

**1.     Not Donald Trump**

36.     Though Defendants represented that Defendant Trump would be so integrally involved that Trump University was effectively learning from Donald Trump, Defendant Trump's involvement was "completely absent," as Defendant Trump has admitted in court filings in this action.  Defendant Trump had virtually no involvement in determining, nor was he even aware of, what the instructors actually taught or what the courses were.

37.     Though Defendants represented that all of Trump University's instructors would be handpicked by Donald Trump, thus implying that students would get the next best thing to Defendant Trump himself, it was Sexton and COO David Highbloom who interviewed the instructors and was in charge of hiring instructors.  It was also Sexton – not Defendant Trump –who would know what, if any, education, professional experience, testing, and/or licenses was required of instructors.  In most cases, Defendant Trump did not even know who the instructors or mentors were, nor had he met them.

38.     Though the entirety of Trump University's marketing and advertising campaigns were centered around Defendant Trump's real estate expertise and access to Defendant Trump's coveted real estate "secrets," Defendants did not teach Donald Trump's real estate "secrets" as promised.  Rather, Sexton (who had no real estate experience) was responsible for compiling course materials and largely handed this task over to third parties in the industry such as Dynetech, Mark Dove, and David Early.

**2.     Not a University**

39.     Though Defendants portrayed Trump University as a University with an admissions process and "Ivy League quality" rivaling Wharton Business School, Trump University was unaccredited and unlicensed to operate as an institution of higher learning.  Trump University provided no degrees, no credits, no licenses, nor anything else of marketable value to student-victims.

40.     Though Donald Trump in the Main Promotional Video and elsewhere represented to would-be students that they would be taught by a faculty of "professors and adjunct professors," Trump University had no such faculty.   Rather, the instructors were high-pressure salespeople hired as independent contractors and paid on a commission basis based on the number and amount of Live Event sales made.

41.     The Trump University PlayBook (*see* below) refers to students as "Buyers" and directs "instructors" to prepare to "Sell, Sell, Sell!"

**C.     Trump University "Live Events"**

42.     Defendants literally had a "PlayBook" for their Scheme and their nationwide advertising campaign to mislead student-victims.  The PlayBook contains a chart depicting the upsell scheme executed across the country.

43.     Specifically, Defendants first lured consumers in with a free 90-minute Live Event called the Preview.  The Preview is used to persuade students to purchase the $1,495 "one year apprenticeship" course called the Fulfillment.  If student-victims purchased the Fulfillment, Defendants used the Live Event to convince them to

1    purchase Trump University's $35,000 Gold Elite program.  Even then, after investing

2    nearly $36,500, students still do not receive Defendant Trump's "secrets" they were

3    promised, but are constantly subjected to upsells of additional Live Events, products

4    and books.

5         44.    The Preview and Fulfillment were standardized through PowerPoint

6    presentations.  For the upsell, speakers used standardized slides and worked from the

7    same script.  There are detailed instructions in the PlayBook, down to where the

8    speakers and coordinators stand, the temperature of the room and music to be played

9    during the Introduction – "Money, Money, Money" from The Apprentice show.

10        **1.    The Preview**

11        45.    Trump University conducted a massive advertising campaign with a

12   multi-million dollar annual budget for the Preview, through mainstream newspapers,

13   its website, online newspapers, Facebook, Twitter, YouTube, radio, email blasts, and

14   direct mail.  Seven to ten days prior to the Preview, ads proclaimed: Donald Trump is

15   "ready to share – with Americans like you – his best advice on investing in today's

16   'once-in-a-lifetime' real estate market" directly from "***Donald Trump's hand-picked***

17   ***instructors*** a ***systematic method*** for investing in real estate that anyone can use

18   effectively."  Defendants mailed letters from Donald Trump inviting consumers to

19   learn from "one of ***my world-class instructors***" about Defendant Trump's "***proven***

20   ***system*** for profitable real estate investing that anyone can use, right away, to score big

21   profits in today's market."  A L.A. Times article quoted Donald Trump as saying that

22   "[i]nvestors nationwide are making millions in foreclosures . . . and so can you!"[3]

23   Other advertisements urged consumers to "Learn from the Master" – Donald Trump,"

24

25

---

[3]    David Lazarus, *Trump's a grump about column on his 'priceless' tips*, L.A.
26   Times,      Dec.      16,      2007,      http://www.latimes.com/business/la-fi-
     lazarus16dec16,0,1670633.column.   When Lazarus attended the Pasadena Hilton
27   Trump seminar, he "learned by attending the seminar, the event was a two-hour sales
     pitch for a three-day workshop that would cost people $1,495."  *Id.*
28

1   that "It's the next best thing to being his Apprentice," and promised would-be students

2   that they would learn "insider success secrets from Donald Trump."

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


4


5


6

46.     At the Preview, students were greeted by a large screen projector and two tall banners of Donald Trump's photo.  The presentation opens with the song "Money, Money, Money," and the Main Promotional Video is shown.

47.     The instructor is introduced as one of Donald Trump's top instructors who was **hand selected** because of his **expertise** and knowledge in the real estate business.

48.     The speaker induces the audience to trust in the Donald Trump name and "family" by walking through the history of the Trump Organization and Defendant Trump's 'humble beginnings.'  The speaker tells the audience that 76% of all millionaires are created from real estate – that "anyone can do it," and that "it's not easy, but it's simple if you know what you're doing, and we'll teach you what you need to know."  He states that the mission of Trump University is to "train, educate

---

4       Screen       shot       from       http://www.trumpurealestate.com/market-Phoenix.html?cid=726078 (last visited February 3, 2010).

5       Screen shot from http://www.trumpuniversity.com/ (last visited February 3, 2010).

6       Screen shot from http://www.trumptactics.com/ (last visited February 3, 2010).

1  and mentor entrepreneurs on achieving financial independence through real estate

2  investing" the Donald Trump way.



4    49.    The speaker emphasizes that on the television show, "The Apprentice,"

Donald Trump could only work one-on-one with one person a year, so he created

Trump University – not to make money for himself, but so that he could teach others.

With this program, "Mr. Trump takes you through an entire apprenticeship for one

year."  The speaker emphasizes that "***Trump University is owned, lock, stock and***

***barrel by Mr. Trump – it's his 'baby,' his company***, designed to help him accomplish

his goal of leaving a legacy."  The presentation plays on consumers' trust in the

Donald Trump name, Apprentice show, Defendant Trump's wealth and Defendant

Trump real estate expertise.  Student-victims are shown slides that portray Trump

University as the latest Donald Trump achievement.

---

7       These and the following slides are from the official approved Trump University PowerPoint presentation which was presented at a February 12, 2010 Preview Live Event advertised to prospective customers via email blast, and provided in an online Live Webinar format on or about February 12, 2010.

 



50.     Throughout, the instructor portrays him or herself as knowledgeable in the Donald Trump way of investing and that he or she is close to Defendant Trump through firsthand accounts of Defendant Trump.

51.     The instructor also plays on the fears of the audience, which includes a significant percentage of senior citizens.  "How many of you lost a lot of your 401k investment in the market?  How many of you are retired or want to retire?  How many of you want to leave a legacy or property to your children or grandchildren?"  The speaker encourages attendees, including the elderly, to cash out their 401K's or increase their credit limits so they can supposedly make a higher return on their investments in the foreclosure market.  Consumers are told these strategies will make them money – they are time-tested strategies that have been in the Trump family for 75 years.  Consumers are told they will pay off their credit cards, pay off their cars, and fully fund their retirement.




52.    The staff at the Live Events are taught to close sales "armed with objections and rebuttals" set forth in the PlayBook and to "work the room with special attention to team members in ***possession of a credit card that needs to be run***."

**2.    The Fulfillment**

53.    The Preview was a 90-minute advertisement to persuade attendees to sign up for the "Fulfillment," which purportedly provides a one-year "Comprehensive Real Estate Education."  However, for $1,495 the Fulfillment is a 3-day workshop plus a phone number to call a "client advisor."  Defendants promise mentors who will be available for a full year.  ***"Other people don't have anyone to call, but you've got Trump.  You'll call 40 Wall Street and they'll walk you through it***."  The emphasis is on persuading consumers that in signing up for Trump University, they can join the Trump "family."

54.    At the Fulfillment, the Main Promotional Video is shown and students are given personally-addressed letters from Defendant Trump.

55.    At the end of Day 1, the students are asked to fill out a detailed financial goal statement presumably to help them with their financial goals.  Instead, these statements are used for Trump University personnel to assess the liquid assets that each student has to spend on the next Trump University program.

56.    Students are told at the Preview that the Fulfillment is "all you need."  However, at the Fulfillment, student-victims all told what they really need is the Gold

1   Elite program for $34,995 to get a "full education."  To make the upsell, instructors

2   make standardized pitches using a separate PowerPoint slide presentation.

3       57.    The PlayBook directed personnel to convince student-victims that the 3-

4   day Fulfillment is not enough (even though it was pitched as such at the Preview) and

5   emphasized that all personnel must follow this procedure to ensure sales of Elite

6   programs.

7       58.    During the Fulfillment, the speakers pressure students to raise their credit

8   card limits on the pretext of purchasing property.  At the end of the workshop,

9   Defendants' representatives asked students to use their credit cards to purchase the

10  Gold Elite program for $34,995.  If they were unable to persuade students to purchase

11  at this level (or if students did not have sufficient funds or credit), Defendants would

12  encourage the students to purchase the "Trump Silver Elite" program for $19,495, the

13  "Trump Bronze Elite" program for $9,995, or an Elite mentorship for approximately

14  $25,000.  Each of these prices was pitched as "one-day-only" sales off the "regular"

15  prices of $48,490 for Gold, $23,490 for Silver and $10,995 for Bronze.

16      59.    Trump University representatives do not warn students they were likely

17  to incur finance charges, interest fees and late fees by charging the program on their

18  credit cards, but say they will quickly make the money back.  Trump University also

19  does not tell students that by increasing their credit limits, they could damage their

20  credit scores.  Trump University representatives never warn students that by "maxing

21  out" their credit cards, their credit scores could drop even more significantly.

22      **3.    The Elite Mentorship Program**

23      60.    The Gold Elite program was sold on the promise of a mentorship with

24  Defendant Trump's handpicked real estate experts who would personally teach them

25  Donald Trump's real estate strategies.  Instead, none of the mentors was handpicked

26  by Donald Trump or taught his investing "secrets."

27      61.    During the Gold Elite program, there was still constant up-sell pressure to

28  purchase other Trump University affiliate programs and products, varying in price

1  from $495 to $9,995.  As a result, Class Members, including seniors, could ultimately

2  spend upwards of $70,000 after being lured in by a free Live Event.

3  **C.**    **Governmental Investigations into Trump University**

4       62.    In addition to the actions of the NYSED described above, Maryland and

5  Massachusetts required Trump University to change its name for all Live Events held

6  in those states.

7       63.    Attorneys General in 11 states and the U.S. Department of Justice

8  received numerous complaints against Trump University, and at least two Attorneys

9  General launched investigations.  In January 2010, Texas Attorney General Greg

10  Abbott's office launched a probe of Trump University's advertising and business

11  practices after getting two dozen complaints.  Abbott said he was probing "possibly

12  deceptive trade practices" dating back to 2008.  Abbott's investigation resulted in

13  Defendants' ultimate suspension of all Live Events in Texas in May 2010.

14       64.    The New York State Attorney General's Office is also investigating

15  whether Trump University "has engaged in illegal business practices."[8]   The

16  investigation was described by the New York Times as "the latest problem" in "a

17  string of consumer complaints, reprimands from state regulators and a lawsuit from

18  dissatisfied former students," and was prompted by about a dozen complaints

19  concerning Trump University that Attorney General Eric T. Schneiderman found to be

20  "credible" and "serious."[9]

21       65.    Florida Attorney General Bill McCollum's office is "reviewing" 20

22  complaints from consumers who paid up to $35,000 for various Live Events.

23

24

25

26  [8]       *See* Michael Barbaro, *New York Attorney General Is Investigating Trump's*
    *For-Profit School*, New York Times, May 19, 2011.

27

28  [9]       *Id.*

**D.      The BBB Gives Trump University a Failing Grade**

66.      The BBB refused to accredit Trump University due to its misleading marketing, explaining that amongst other things, its classification as a "school/academy/college/university" with "professors" was misleading to a reasonable consumer.

> Another factor contributing to your firm's ineligibility [for accreditation as a BBB business] is your firm's name "Trump University," which may potentially lead reasonable consumers to believe that your firm is an academic institution. As you acknowledged in your correspondence dated 1/4/2010, your firm does not meet the established definition of a "university." However, your instructors and program experts are referred to as "professors" and "faculty" in your promotional materials and on your web site. Both terms are potentially misleading as they are generally reserved for the teaching and administrative staff and members holding academic rank in an educational institution.

67.      The BBB also found Trump University's website misleading in stating:

> Trump University's School of Real Estate is accredited and we back up our assertions with unequalled educational and mentoring tools, such as retreats, phone and email coaching and on-site coaching, where we actually send a Donald Trump recommended real estate professional to your town to work with you for 3 days.

68.      In addition, the BBB also found, that Trump University's classification as a "School/Academy/College/University" is misleading:

> [Trump University's] services, as listed in your promotional materials and on your web site, are inconsistent with the established definition for this classification as you do not grant academic degrees or certification and do not appear to have recognized academic charter. Further, your company does not appear to be recognized as an academic institution that is accredited by accrediting agencies recognized by the Secretary of Education.

69.      For these reasons, along with numerous consumer complaints, the BBB gave Trump University a "D-" rating.  After Defendants changed Trump University's name in mid-2010, Defendants demanded an "A+" evaluation, and when the BBB was unable to issue a good "grade" due to ongoing consumer complaints, Defendant Trump called the BBB and his lawyer threatened to sue the BBB.  As a result, the BBB changed Trump University's "grade" to "NR" for "Not Rated."

1    **RICO ALLEGATIONS**

2  **A.    The Trump University Enterprise**

3        70.    Trump University, LLC (now The Trump Entrepreneur Initiative LLC) is

4  an "enterprise" within the meaning of 18 U.S.C. §1961(4), through which Defendant

5  Donald J. Trump conducted the pattern of racketeering activity described herein.

6  Throughout its existence, the Trump University Enterprise engaged in, and its

7  activities affected interstate commerce because it involved commercial activities

8  across state lines, including national marketing campaigns, multi-state Live Events,

9  and the solicitation and receipt of money from victims located throughout the country.

10        71.    Defendant Donald J. Trump exercised substantial control over the affairs

11  of the Trump University Enterprise, through, among other methods and means, the

12  following:

13        (a)    Providing the initial operating capital and holding an

14  approximately 93% ownership stake;

15        (b)    Creating and approving marketing and advertising materials, which

16  featured his name, likeness (in most), voice (in the Main Promotional Video);

17        (c)    Selecting both the original name of Trump University and, five

18  years after the Trump University name was determined to be misleading by the

19  NYSED, finally approving the change to the current name of Trump Entrepreneur

20  Initiative;

21        (d)    Regularly reviewing financial records; and

22        (e)    Negotiating and authorizing others to negotiate significant

23  contracts, such as the lease for the Enterprise's headquarters.

24        72.    At all relevant times, each participant in the Trump University Enterprise

25  was aware of the Scheme.

26        73.    Defendant Trump was a knowing and willing participant in the Scheme,

27  and reaped revenues and/or profits therefrom.

28

74.     The Trump University Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendant Trump has engaged.  The Trump University Enterprise is separate and distinct from Donald J. Trump.

**B.     RICO Conspiracy**

75.     Defendant Trump has not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy.

76.     Defendant Trump and others have engaged in a conspiracy to obtain money through the Scheme.

77.     Defendant Trump and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct to commit acts of fraud in executing the Scheme.

78.     Indeed, for the conspiracy to succeed, Defendant Trump and each co-conspirator had to agree to implement and use the similar devices and fraudulent tactics against their intended targets.

79.     As a result of the Scheme and conspiracy, Plaintiffs and the Class paid for Live Events that were connected to Donald Trump in name only.  But for Defendant Trump's Scheme, none of these student-victims would have paid for the Live Events and mentorships.  Therefore, the damages that Defendant Trump caused Plaintiffs and the Class may be measured, at a minimum, by each dollar paid for Live Events, which upon information and belief amounts to over $30 million.

**C.     Pattern of Racketeering Activity**

80.     Defendant Trump, who is a person associated-in-fact with the Trump University Enterprise, knowingly, willfully, and unlawfully conducted or participated, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1), 1961(5) and 1962(c).  The racketeering activity was made possible by the regular and repeated use of the

facilities, services, distribution channels, and employees of the Trump University Enterprise.

81.   Defendant Trump committed multiple "Racketeering Acts," as described below, including aiding and abetting such acts.

82.   The Racketeering Acts were not isolated, but rather were related in that they had the same or similar purposes and results, participants, victims, and methods of commission.   Further, the Racketeering Acts were continuous, occurring on a regular (daily) basis throughout a time period beginning in mid-2007 and, upon information and belief, continuing through 2010.

83.   Defendant Trump participated in the operation and management of the Trump University Enterprise by directing its affairs, as described above.

84.   In devising and executing the Scheme, Defendant Trump and his co-conspirators committed acts constituting indictable offenses under 18 U.S.C. §§1341 and 1343, in that they devised and knowingly carried out a material scheme or artifice to defraud or to obtain money by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts.   For the purpose of executing the Scheme, Defendants committed these Racketeering Acts, which number in the thousands, intentionally, and knowingly with, the specific intent to advance the Illegal Scheme.

85.   Defendants used thousands of mail and interstate wire communications to create and perpetuate their Scheme through virtually uniform misrepresentations, concealments and material omissions.

86.   Defendants' fraudulent use of the mails and wires included the following items and communications sent by Defendants to each other, Plaintiffs and third parties via U.S. mail, commercial carrier, interstate wire, and/or other interstate electronic media:

(a)   Throughout the Class Period, including on or about the dates set forth below, Defendant Trump and his co-conspirators, for the purpose of executing

the above-described Scheme, caused to be delivered by mail or by a private or commercial interstate carrier, or received therefrom, according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, the items described above, including those alleged below:

| From | To | Date | Description |
|------|-----|------|-------------|
| Donald J. Trump, New York, New York | Sonny Low, Chula Vista, California | August 2009 | "Special Invitation from Donald J. Trump" to attend Preview in San Diego, California |
| Donald J. Trump, New York, New York | Ed Oberkrom, St. Louis, Missouri | March 2009 | "Special Invitation from Donald J. Trump" to attend Preview in St. Louis, Missouri |

(b)      Throughout the Class Period, including on or about the dates set forth below, Defendant Trump and his co-conspirators, for the purpose of executing the above-described Scheme caused to be transmitted in interstate commerce by means of wire communications, certain writings, signs, signals and sounds, including those alleged below:

| From | To | Date | Description |
|------|-----|------|-------------|
| Trump University, New York, New York | Duyen Nguyen, California | July 29, 2008 | Email to Tarla Makaeff's friend re: Preview event linking to Main Promotional Video |
| Michael Sexton at Trump University, New York | David Early, Arizona | April 14, 2009 | Email attaching Preview Script – Version 3.0 |
| Michael Sexton at Trump University, New York, New York | Mark Anthony, California | April 14, 2009 | Email attaching Preview Script – Version 3.0 |
| Allen Romrell at Trump University, New York, New York | Taylor Coleman, California | August 11, 2009 | Email correspondence regarding possible sale of Trump |

| From | To | Date | Description |
|------|-----|------|-------------|
| | | | University product and linking to Main Promotional Video |
| Sonny Low, San Diego, California | Bank of America, Missouri | August 17, 2009 | Credit card transaction in the amount of $1,495 for Sonny Low's purchase of the Fulfillment Seminar |
| Bank of America, Missouri | | August 19, 2009 | Confirmation of credit card transaction in the amount of $1,495 for Sonny Low's purchase of the Fulfillment Seminar |

## CLASS ALLEGATIONS

87.     Plaintiffs bring this class action on behalf of themselves individually and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23.

88.     The proposed Class consists of all persons who purchased Live Events from Trump University throughout the United States from January 1, 2007 to the present.  Excluded from the Class are Trump University, its affiliates, employees, officers and directors, persons or entities that distribute or sell Trump University products or programs, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

89.     This action is properly brought as a class action because:

(a)     The proposed Class is so numerous and geographically dispersed throughout  the United States that the joinder of all Class Members is impracticable;

(b)     The disposition of Plaintiffs' and proposed Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)     The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class Member were infringed or violated in the same fashion;

(d)     There are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

(i)      Whether Defendants engaged in a fraudulent scheme;

(ii)     Whether Defendants' advertising campaign was deceptive;

(iii)    Whether Donald Trump violated 18 U.S.C. §§1962(c) or (d);

(iv)     Whether Defendants violated the UCL;

(v)      Whether Defendants violated the CLRA;

(vi)     Whether Defendants violated the FAL;

(vii)    Whether Defendants violated California's Elder Abuse Statute, Cal. Welf. & Inst. Code §15600;

(viii)   Whether Defendants received funds from Plaintiffs and Class Members that they unjustly received;

(ix)     Whether Defendants violated §349 of New York's General Business Law;

(x)      Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.*;

(xi)     Whether Defendants violated the Florida Misleading Advertising Law, Fla. Stat. §817.41;

(xii)    Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

(xiii)   Whether Plaintiffs and Class Members are entitled to an award of treble, punitive damages, attorneys' fees and expenses; and

(xiv)    Whether, Plaintiffs and Class Members are entitled to equitable relief, and if so, the nature of such relief; and

(e)     Plaintiffs' claims are typical of the claims of the members of the proposed Class.   Plaintiffs and Class Members have been injured by the same wrongful practices of Defendants.  Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f)     Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interests antagonistic to those of the other Class Members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel;

(i)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(ii)     Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(iii)     This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

(iv)     Without a class action, Class Members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendants continue to reap and retain the proceeds of their wrongful conduct; and

(v)     Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude class certification.

90.     Defendants have, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the class action.

91.     Plaintiffs seek damages and equitable relief on behalf of the Class on grounds generally applicable to the entire proposed Class.

**COUNT I**

**Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1962(c) and (d)**

**(On Behalf of All Plaintiffs Against Defendant Donald J. Trump Only)**

92.    Plaintiffs re-allege and incorporate by reference the above allegations contained in the paragraphs above as if fully set forth herein.

93.    This claim arises under 18 U.S.C. §§1962(c) and (d), which provides in relevant part:

>    (c)    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

>    (d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

94.    At all relevant times, Defendant Donald J. Trump was a "person" within the meaning of 18 U.S.C. §1961(3), because he was "capable of holding a legal or beneficial interest in property."  Defendant Trump was associated with the Trump University Enterprise and conducted and participated in that enterprise's affairs though a pattern of racketeering activity, as defined by 18 U.S.C. §1961(5), consisting of numerous and repeated uses of the mails and interstate wire communications to execute a scheme to defraud in violation of 18 U.S.C. §1962(c).

95.    The Trump University Enterprise was created and/or used as a tool to carry out the Scheme and pattern of racketeering activity.

96.    Defendant Trump and his co-conspirators have committed or aided and abetted the commission of at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. §§1341 and 1343, within the past ten years.  The multiple acts of racketeering activity that they committed and/or conspired to, or aided and abetted in the commission of, were related to each other, pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity."

97.     Defendant Trump and his co-conspirators' predicate acts of racketeering within the meaning of 18 U.S.C. §1961(1) include, but are not limited to:

(a)     **Mail Fraud**: Defendant Trump and his co-conspirators have violated 18 U.S.C. §1341, by sending or receiving materials via U.S. mail or commercial interstate carriers for the purpose of executing the Scheme, which amount to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions. The materials include, but are not limited to, letters promoting the Scheme and bearing Defendant Trump's signature or image; and

(b)     **Wire Fraud**: Defendant Trump and his co-conspirators have violated 18 U.S.C. §1343, by transmitting and receiving materials by wire for the purpose of executing the Scheme, which amounts to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and/or omissions.  The materials transmitted and/or received include, but are not limited to, interstate credit card transactions, emails promoting the Scheme, and the Main Promotional Video.

98.     Defendant Trump and his co-conspirators knowingly and intentionally made these misrepresentations, acts of concealment and failures to disclose. Defendant Trump and his co-conspirators either knew or recklessly disregarded that these were material misrepresentations and omissions.

99.     Defendant Trump and his co-conspirators have obtained money and property belonging to Plaintiffs and the Class as a result of these statutory violations. Plaintiffs and other Class Members have been injured in their business or property by Defendant Trump and his co-conspirators' overt acts of mail and wire fraud, and by their aiding and abetting each other's acts of mail and wire fraud.

100.    In violation of 18 U.S.C. §1962(d), Defendant Trump and his co-conspirators conspired to violate 18 U.S.C. §1962(c), as described herein.  Various other persons, firms and corporations, not named as defendants in this Complaint,

1    have participated as co-conspirators with Defendant Trump and his co-conspirators in

2    these offenses and have performed acts in furtherance of the conspiracy.

3           101.   Defendant Trump and his co-conspirators aided and abetted violations of

4    the above laws, thereby rendering them indictable as a principal in the 18 U.S.C.

5    §§1341 and 1343 offenses pursuant to 18 U.S.C. §2.

6           102.   Plaintiffs and the Class have been injured in their property by reason of

7    Defendant Trump and his co-conspirators' violations of 18 U.S.C. §§1962(c) and (d),

8    including the price paid for the Live Events.  In the absence of Defendant Trump and

9    his co-conspirators' violations of 18 U.S.C. §§1962(c) and (d), Plaintiffs and the Class

10   would not have incurred these losses.

11          103.   Plaintiffs' and the Class's injuries were directly and proximately caused

12   by Defendant Trump and his co-conspirators' racketeering activity.

13          104.   Defendants knew and intended that Plaintiffs and the Class would rely on

14   the Scheme's fraudulent representations and omissions.  Defendant Trump and his co-

15   conspirators knew and intended Plaintiffs and the Class would pay fees as a result of

16   same.

17          105.   Under the provisions of 18 U.S.C. §1964(c), Plaintiffs are entitled to

18   bring this action and to recover treble damages, the costs of bringing this suit and

19   reasonable attorneys' fees.

20          106.   Defendant Trump is accordingly liable to Plaintiffs for three times their

21   actual damages as proved at trial plus interest and attorneys' fees.

22                                    **COUNT II**

23               **Violations of Cal. Bus. and Prof. Code §17200, _et seq._**

24          **(On Behalf of Plaintiffs Sonny Low and Tarla Makaeff Against
              Defendant Donald J. Trump and Trump University)**

25          107.   Plaintiffs re-allege and incorporate by reference the allegations contained

26   in the paragraphs above as if fully set forth herein.

27

28

108.   California Business & Professions Code §17200 prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice" and any act prohibited by Cal. Bus. & Prof. Code §17500.

109.   Defendants violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in an "*unlawful*" business act or practice by making material misrepresentations and omissions regarding Trump University in violation of Cal. Civ. Code §§1572 (actual fraud), 1573 (constructive fraud), 1709 and 1710 (deceit), 1750 *et seq.* (CLRA); Cal. Bus. & Prof. Code §17500 (FAL); Cal. Welf. & Inst. Code §15600 (elder abuse); §349 of New York's General Business Law; 18 U.S.C. §§1962(c) and (d) (RICO); and the common law, including the breach of contract; breach of the covenant of good faith and fair dealing; and breach of the duty to disclose.  Plaintiffs reserve the right to allege other violations of law which constitute other unlawful business acts and practices.

110.   Defendants violated Cal. Bus. & Prof. Code §17200's prohibition against "*fraudulent*" business acts or practices through their misrepresentations regarding Trump University that had a tendency to mislead the public and with intent to induce reliance of Plaintiffs and the Class.  Furthermore, Defendants violated §17200 by issuing misrepresentations and untrue statements about Trump University.

111.   The foregoing conduct also constitutes "*unfair*" business acts and practices within the meaning of Cal. Bus. & Prof. Code §17200.  Defendants' practices offend public policy and are unethical, oppressive, unscrupulous and violate the laws stated.  Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and Class Members.  The gravity of Defendants' alleged wrongful conduct outweighs any purported benefits attributable to such conduct.  There were also reasonably available alternatives to Defendants to further their business interests.

112.   Plaintiffs and Class Members have suffered injury in fact and have lost money and/or property as a result of Defendants' unlawful, fraudulent and unfair business practices and are entitled to relief.

113.   Pursuant Cal. Civ. Code §3345, Defendants are liable for treble damages and penalties to Plaintiff Low and California Class Members aged 65 or older because: (a) Defendants knew or should have known their conduct was directed to a senior citizen; (b) Defendants' conduct caused a senior citizen to suffer substantial loss of property set aside for retirement, and assets essential to their health and welfare; (c) Plaintiff Low and California Class Members aged 65 or older are senior citizens who are more vulnerable than others to Defendants' conduct due to age; and (d) Plaintiff Low and California Class Members aged 65 or older actually suffered substantial economic damages resulting from Defendants' conduct.

## COUNT III

### Violations of Cal. Civ. Code §1750, *et seq.*

#### (On Behalf of Plaintiffs Sonny Low and Tarla Makaeff Against Defendant Donald J. Trump and Trump University)

114.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

115.   This cause of action arises under the CLRA, Cal. Civ. Code §1750, *et seq.*  Plaintiffs and California Class Members are consumers as defined by Cal. Civ. Code §1761(d).  The Live Events constitute "services" and/or "products" as defined by Cal. Civ. Code §§1761(a) and (b).  Defendants constituted "persons" under Cal. Civ. Code §1761(c), and Plaintiffs' and Class Members' purchases of Trump University Live Events constitute "transactions," as that term is defined in Cal. Civ. Code §1761(e).

116.   Defendants violated and continue to violate the CLRA by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code §1770(a), in transactions with Plaintiffs and Class Members that were intended to result or which resulted in the sale or lease of goods or services to a consumer:

1    (a)    In violation of Cal. Civ. Code §1770(a)(5), Defendants' acts and

2    practices constitute misrepresentations that the Live Events in question have

3    characteristics, benefits or uses which they do not have;

4    (b)    In violation of Cal. Civ. Code §1770(a)(7), Defendants

5    misrepresented that the Live Events are of particular standard, quality and/or grade,

6    when they are of another; and

7    (c)    In violation of Cal. Civ. Code §1770(a)(9), Defendant advertised

8    the Live Events with the intent not to sell them as advertised or represented.

9        117.    Defendants' uniform representations as set forth herein were false,

10   deceptive, and/or misleading and in violation of the CLRA.

11       118.    Pursuant to Cal. Civ. Code §1782, Plaintiffs notified Trump University in

12   writing by certified mail of the violations of Cal. Civ. Code §1770, and have

13   demanded that Defendants rectify the problems associated with the actions detailed

14   above and give notice to all affected consumers of its intent to so act.  Plaintiffs sent

15   this notice by certified mail, return receipt requested, to Trump University's principal

16   place of business.  Plaintiffs notified Defendant Trump of same.

17       119.    Defendants failed to rectify the problems or give notice to all affected

18   consumers within 30 days after receipt of the Cal. Civ. Code §1782 notice, thus

19   Plaintiffs seek actual damages and punitive damages for violation of the CLRA.

20       120.    Pursuant to Cal. Civ. Code §1780(a)(2), Plaintiffs seek a Court order

21   enjoining wrongful acts and practices that violate Cal. Civ. Code §1770.

22       121.    Plaintiffs and the Class are also entitled to recover attorneys' fees, costs,

23   expenses and disbursements pursuant to Cal. Civ. Code §§1780 and 1781.

24       122.    Pursuant to Cal. Civ. Code §1780(b)(1), Plaintiff Low and other

25   California Class Members aged 65 or older are also entitled to an additional $5,000

26   each because they: (a) suffered substantial economic damage resulting from

27   Defendants' conduct; (b) Defendants knew or should have known that their conduct

28

1  was directed to one or more senior citizens pursuant to Cal. Civ. Code §3345(b)(1);
2  and (c) the additional award is appropriate.

**COUNT IV**

**Untrue and Misleading Advertising in Violation of
Cal. Bus. & Prof. Code §17500, *et seq*.**

**(On Behalf of Plaintiffs Sonny Low and Tarla Makaeff Against
Defendant Donald J. Trump and Trump University)**

123.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

124.   California Business and Professions Code §17500 prohibits deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive members of the public to purchase services such as the Live Events.

125.   Defendants disseminated, through common advertising, untrue statements about Trump University Live Events.  Defendants intended Plaintiffs and the Class to rely upon the advertisements and numerous material misrepresentations, and they relied upon the advertisements and misrepresentations to their detriment.

126.   As a result, Plaintiffs and Class Members are entitled to injunctive and equitable relief and damages in an amount to be proven at trial.

**COUNT V**

**Fraud**

**(On Behalf of All Plaintiffs Against Defendants
Donald J. Trump and Trump University)**

127.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

128.   As alleged herein, Defendants engaged in a fraudulent scheme intentionally and falsely misrepresenting Trump University to Plaintiffs and the Class.

129.   Defendants intended Plaintiffs and Class Members to rely on the representations.

130.   Plaintiffs and Class Members reasonably and justifiably relied to their detriment on Defendants' misrepresentations.

131.   As a proximate result of Defendants' misrepresentations, Plaintiffs and Class Members were damaged in an amount to be proven at trial.

## COUNT VI

**Deceptive Acts and Practices in Violation of §349 of New York's General Business Law**

**(On Behalf of John Brown Against Defendants Donald J. Trump and Trump University)**

132.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

133.   Plaintiff John Brown is a resident of New York who purchased and attended Trump University Live Events in New York.

134.   Defendants' acts and practices as detailed herein constitute unlawful, unfair, deceptive and fraudulent business practices in violation of §349 of New York's General Business Law ("GBL").

135.   Defendants' misleading and deceptive business practices adversely impacted Plaintiff Brown and Class Members who purchased Live Events in New York, and therefore constitutes consumer-oriented conduct under GBL §349, which resulted in a direct harm to Plaintiff Brown and other Class Members.

136.   Plaintiff Brown seeks injunctive relief and damages pursuant to GBL §349.

## COUNT VII

**Financial Elder Abuse in Violation of Cal. Welf. & Inst. Code §15600, *et seq.***

**(On Behalf of Sonny Low Against Defendants Donald J. Trump and Trump University)**

137.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

138.   Plaintiff Sonny Low is a senior citizen resident of California who attended Trump University Live Events in California.

139.   California Welfare and Institutions Code §15610.30(a) provides:

(a)   "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(1)   Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

(2)   Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both.

140.   Defendants' conduct constitutes financial abuse under Cal. Welf. & Inst. Code §15657.5, *et seq.*, as defined in Cal. Welf. & Inst. Code §15610.30.

141.   At all relevant times, Defendants took and/or assisted in the taking of property from Plaintiff Low and other California Class Members aged 65 or older for its own wrongful use and/or with intent to defraud.  Plaintiff Low and other Class Members trusted and relied on Defendants.

142.   Defendants manipulated Plaintiff Low and other California Class Members aged 65 or older into purchasing Trump University Live Events.

143.   Defendants' wrongful acts were done maliciously, oppressively, and with the intent to mislead or defraud, thereby warranting punitive and exemplary damages in an amount to be proven pursuant to Cal. Civ. Code §3294, *et seq.*

144.   Under Cal. Welf. & Inst. Code §15657.5, *et seq.*, Defendants are liable for reasonable attorneys' fees and costs for investigating and litigating this claim.

## COUNT VIII

### Violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.*

### (On Behalf of J.R. Everett Against Defendants Donald J. Trump and Trump University)

145.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

146.   Plaintiff J.R. Everett is a senior citizen under Fla. Stat. §501.2077(a). Plaintiff Everett is a resident of Florida and attended Trump University Live Events in Florida.

147.   This cause of action arises under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.204(1).   Under the FDUTPA, it is unlawful to engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. §501.204(1).  In construing the terms "unfair or deceptive," "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [the FTCA (15 U.S.C. §45(a)(1))]." Fla. Stat. §501.204(2).

148.   Plaintiff Everett and other Florida Class Members are consumers as defined under the FDUTPA.  Fla. Stat. §501.203(7).

149.   "Trade or commerce" means "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated," and "shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity." Fla. Stat. §501.203(8).

150.   Defendants violated the FDUTPA by making material misrepresentations regarding Trump University.  Defendants disseminated, through their Live Events, advertising and marketing, common, untrue statements about Trump University that have a tendency to mislead the public, and made common material misrepresentations with the intent to induce reliance by consumers to purchase Live Events. Defendants' practices are unfair because they offend established public policy and are unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

151.   Defendants' conduct set forth herein caused Plaintiff Everett and other Florida Class Members to suffer substantial injury.   The gravity of Defendants'

1    alleged wrongful conduct outweighs any purported benefits attributable to such

2    conduct.  There were also reasonably available alternatives to Defendants to further

3    their business interests.

4         152.    Because Plaintiff Everett and other Florida Class Members have suffered

5    injury in fact and have lost money and/or property as a result of Defendants'

6    violations of the FDUTPA, they are entitled to damages.  Fla. Stat. §501.211.

7         153.    Plaintiff Everett and other Florida Class Members are also entitled to

8    recover attorneys' fees, costs and expenses pursuant to Fla. Stat. §501.2105(1).

9         154.    Defendants willfully used a method, act or practice in violation of the

10   FDUTPA, which method, act or practice victimized or attempted to victimize senior

11   citizens.  Defendants committed such violation knowing that their conduct was unfair

12   or deceptive, and are therefore liable for civil penalties in the amount of $15,000 for

13   each such violation pursuant to Fla. Stat. §501.2077(2).

14                              **COUNT IX**

15   **Violations of the Florida Misleading Advertising Law, Fla. Stat. §817.41**

16            **(On Behalf of J.R. Everett Against Defendants
17            Donald J. Trump and Trump University)**

18        155.    Plaintiffs re-allege and incorporate by reference the allegations contained

19   in the paragraphs above as if fully set forth herein.

20        156.    Plaintiff Everett is a resident of Florida and attended Trump University

21   Live Events there.

22        157.    This cause of action arises under Florida's Misleading Advertising Law,

23   which provides it "shall be unlawful for any person to make or disseminate or cause to

24   be made or disseminated before the general public of the state . . . any misleading

25   advertisement.   Such making or dissemination of misleading advertising shall

26   constitute and is hereby declared to be fraudulent and unlawful, designed and intended

27   for obtaining money or property under false pretenses."  Fla. Stat. §817.41(1).

28

158.   Defendants violated the Misleading Advertising Law by making material misrepresentations regarding Trump University.  Defendants disseminated, through their Live Events, advertising and marketing, common, untrue statements about Trump University that have a tendency to mislead the public, and made common material misrepresentations with the intent to induce reliance by consumers.

159.   Defendants' conduct caused Plaintiff Everett and other Florida Class Members to suffer substantial injury.  Because Plaintiff Everett and other Florida Class Members have suffered injury in fact and have lost money and/or property as a result of Defendants' misleading advertising, they are entitled to damages pursuant to Fla. Stat. §817.41(6).

160.   Plaintiff Everett and other Florida Class Members are also entitled to recover "costs, including reasonable attorney's fees, and may be awarded punitive damages in addition to actual damages proven."  Fla. Stat. §817.41(6).

**COUNT X**

**Unjust Enrichment**

**(On Behalf of All Plaintiffs Against Defendants
Donald J. Trump and Trump University)**

161.   Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

162.   A party cannot induce, accept or encourage another to furnish or render something of value to such party and avoid payment for the value received.

163.   As a result of the conduct describe above, Defendants have been, and continue to be, unjustly enriched at the expense of Plaintiffs and the Class.

164.   Defendants have received, and are holding, funds belonging to Plaintiffs and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiffs and Class Members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray this Court to enter a judgment against Defendants that:

A.      Certified the Class under Rule 23 of the Federal Rules of Civil Procedure, as well as any appropriate subclasses, appointing Plaintiffs as Class Representatives, and appointing their attorneys as counsel to represent the Class;

B.      Awards actual, compensatory, statutory, consequential damages;

C.      Awards punitive and treble damages as provided under relevant laws;

D.      Awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendants' ill-gotten gains, to ensure an effective remedy;

E.      Awards Plaintiffs and Class Members the costs of this action, including reasonable attorneys' fees and expenses and expert fees;

F.      Orders  Defendants to immediately cease their wrongful conduct; enjoins Defendants from continuing to falsely market and advertise, conceal material information from the public, and commit unlawful and unfair business acts and practices; orders  Defendants to engage in a corrective notice campaign, and requires Defendants to refund to Plaintiffs and all Class Members the funds paid;

G.      Awards declaratory relief;

H.      Awards pre-judgment and post-judgment interest at the highest rate allowed by law; and

I.      Grants such further relief as this Court may deem just and proper.

DATED:  August 2, 2013               ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                     JASON A. FORGE
                                     RACHEL L. JENSEN
                                     THOMAS R. MERRICK

**DRAFT**

1

2

3    655 West Broadway, Suite 1900
     San Diego, CA  92101
4    Telephone:  619/231-1058
     619/231-7423 (fax)
5

6    ZELDES HAEGGQUIST & ECK, LLP
     AMBER L. ECK
7    HELEN I. ZELDES
     ALREEN HAEGGQUIST
8    AARON M. OLSEN
     625 Broadway, Suite 1000
9    San Diego, CA  92101
     Telephone:  619/342-8000
10   619/342-7878 (fax)

11

12   Attorneys for Plaintiffs and Proposed
     Class
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28