# EXHIBIT 5

**EXHIBIT 5**

| **Purported "New Facts" in 4<sup>th</sup>AC (ECF 248-3)** | **Identical or Substantially Similar Allegations in TAC (ECF 112-4)** | **Identical or Substantially Similar Allegations or Argument in Earlier Pleadings and/or Verified Discovery Responses or Documents Produced Prior to Amendment Deadline** |
|---|---|---|
| Mail Fraud "Materials" | "Donald Trump sent signed letters to consumers nationwide, with Donald Trump's name and signature at the bottom, which stated: '[n]o course offers the same depth of insight, experience and support as the one bearing my name . . . . My hand-picked instructors and mentors will show you how to use real estate strategies . . . . With our simple instructions and practice exercises – and ongoing support from your own Trump Team of Experts – you'll have what you need to succeed! . . . The letter closes with Donald J. Trump's name, signature, and Trump University address . . . " TAC, at ¶¶ 19(f) & 67(f) | **Ex. 5 A**<br>• SAC, ¶¶ 18(f), 59(f) |
|  | "While consumers were in the midst of the Trump University $1,500 seminar and Trump University was trying to persuade them to sign up for the $35,000 course, each of the participants received a personalized (addressed to them by name) letter from | **Ex. 5 B**<br>• SAC, ¶¶ 18(g), 59(g) |

| Purported "New Facts" in 4<sup>th</sup>AC (ECF 248-3) | Identical or Substantially Similar Allegations in TAC (ECF 112-4) | Identical or Substantially Similar Allegations or Argument in Earlier Pleadings and/or Verified Discovery Responses or Documents Produced Prior to Amendment Deadline |
|---|---|---|
| | Donald J. Trump.  The letter bore the Trump logo at the top of the letter and the words "From the Office of Donald J. Trump."  The letters stated: 'Success in real estate begins with great training and proven strategies.  Without education you don't stand a chance.  I know how to make money in real estate. . . .  Now I want to teach you how to make money in real estate.  To be my apprentice you need to Think BIG and really want to succeed. . . .   I founded Trump University back in 2005 to teach go-getters how to succeed in real estate.  My team at Trump University is filled with real estate experts. . . .  If you think you've got what it takes to be my next Apprentice, come prove it to me and my team.'  The letter closes with 'See you at the top!'  And, it is signed, 'Donald J. Trump, Chairman, Trump University.'" TAC, at ¶¶ 19(g) & 67(g) | |

EXHIBIT 5 A

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PAULA M. ROACH (254142)
proach@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>                              Defendants. | No. 10-cv-00940-IEG(WVG)<br><br>CLASS ACTION<br><br>SECOND AMENDED CLASS ACTION COMPLAINT<br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

590148_1

1   including: "I can turn anyone into a successful real estate investor, including you. – Donald

2   Trump."[4]

3       (f)     Donald Trump sent signed letters to consumers nationwide, with Donald

4   Trump's *name and signature* at the bottom, which stated: "*[N]o course offers the same dept of*

5   *insight, experience and support as the one bearing my name* . . . .   My hand-picked instructors and

6   mentors will *show you how to use real estate strategies to: [s]upplement or even replace your*

7   *income*, [s]ecure your long-term financial future . . . [s]tart profiting today! Now is the time to create

8   your financial legacy.  *You can do it*, even if you only have five or ten hours a week to spare.  With

9   our simple instructions and practice exercises – *and ongoing support from your own Trump Team*

10   *of Experts – you'll have what you need to succeed!*"  (Emphasis in original).  The letter closes with

11   Donald J Trump's name, signature, and Trump University address, at 40 Wall Street, 32nd Floor,

12   New York, NY 10005.

13       (g)    While consumers were in the midst of the Trump University $1,500 seminar

14   and Trump University was trying to persuade them to sign up for the $35,000 course, each of the

15   participants received a personalized (addressed to them by name) letter from Donald J. Trump.  The

16   letter bore the Trump logo at the top of the letter and the words "From the Office of Donald J.

17   Trump."  The letters stated:

18       Success in real estate begins with great training and proven strategies.
     Without education you don't stand a chance.

19

20       *I know how to make money in real estate.*  I've been doing it for a long time
     with a lot of success.  *My family has been a leader in real estate* since my father –
     Fred Trump – started building residential homes in New York City 75 years ago.  My

21   father was my mentor and he taught me a lot.  *Now I want to teach you how to make*
     *money in real estate.*  To be my apprentice you need to Think BIG and really want to

22   succeed.  More than anything, you need to take action.

23       Do YOU have What It Takes to Be My Next Apprentice?

24       I only work with people who are committed to succeed.  I founded Trump
     University back in 2005 to teach go-getters how to succeed in real estate. My team at

25   Trump University is filled with real estate experts . . . proven winners.  We're the

26   _____

27   [4]   *See* Trump University Advertisement, New York Post, March 2, 2009.

28

Ex. 5 - 242

1       (e)    Trump University print advertisements were reviewed and authorized by

2   Donald Trump before they were released and contained quotes from Donald J. Trump, including: "I

3   can turn anyone into a successful real estate investor, including you. – Donald Trump."[15]

4       (f)    **Donald Trump sent signed letters to consumers nationwide, with his *name***

5   ***and signature*** at the bottom, which stated: "***[N]o course offers the same depth of insight,***

6   ***experience and support as the one bearing my name*** . . . . My hand-picked instructors and mentors

7   will ***show you how to use real estate strategies to: [s]upplement or even replace your income***,

8   [s]ecure your long-term financial future . . . [s]tart profiting today! Now is the time to create your

9   financial legacy. ***You can do it***, even if you only have five or ten hours a week to spare. With our

10   simple instructions and practice exercises – ***and ongoing support from your own Trump Team of***

11   ***Experts – you'll have what you need to succeed!***" (Emphasis in original). The letter closes with

12   Donald J. Trump's name, signature, and at the Trump University address, at 40 Wall Street, 32nd

13   Floor, New York, NY 10005.

14       (g)    While Plaintiffs and other Class members were in the midst of the Trump

15   University $1,500 seminar and Trump University was trying to persuade them to sign up for the

16   $35,000 course, each of the participants received a personalized (addressed to them by name) letter

17   from Donald J. Trump. The letter bore the Trump logo at the top of the letter and the words "From

18   the Office of Donald J. Trump." The letters stated:

19       Success in real estate begins with great training and proven strategies.
       Without education you don't stand a chance.

20

21       ***I know how to make money in real estate.*** I've been doing it for a long time
       with a lot of success. ***My family has been a leader in real estate*** since my father –

22   Fred Trump – started building residential homes in New York City 75 years ago. My
       father was my mentor and he taught me a lot. ***Now I want to teach you how to make***

23   ***money in real estate.*** To be my apprentice you need to Think BIG and really want to
       succeed. More than anything, you need to take action.

24       Do YOU have What It Takes to Be My Next Apprentice?

25       I only work with people who are committed to succeed. I founded Trump
       University back in 2005 to teach go-getters how to succeed in real estate. My team at

26

27   _____

    [15]   *See* Trump University Advertisement, New York Post, March 2, 2009.

28

# EXHIBIT 5 B



ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

ROBBINS GELLER RUDMAN
   & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PAULA M. ROACH (254142)
proach@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>                    Defendants. | No. 10-cv-00940-IEG(WVG)<br><br>CLASS ACTION<br><br>SECOND AMENDED CLASS ACTION COMPLAINT<br><br><br><br><br><br>JURY TRIAL DEMANDED |

590148_1

1    including: "I can turn anyone into a successful real estate investor, including you. – Donald
2    Trump."[4]

3         (f)     Donald Trump sent signed letters to consumers nationwide, with Donald
4    Trump's *name and signature* at the bottom, which stated: "*[N]o course offers the same dept of*
5    *insight, experience and support as the one bearing my name* . . . . My hand-picked instructors and
6    mentors will *show you how to use real estate strategies to: [s]upplement or even replace your*
7    *income*, [s]ecure your long-term financial future . . . [s]tart profiting today! Now is the time to create
8    your financial legacy. *You can do it*, even if you only have five or ten hours a week to spare.  With
9    our simple instructions and practice exercises – *and ongoing support from your own Trump Team*
10   *of Experts – you'll have what you need to succeed!*"  (Emphasis in original).  The letter closes with
11   Donald J Trump's name, signature, and Trump University address, at 40 Wall Street, 32nd Floor,
12   New York, NY 10005.

13        (g)     While consumers were in the midst of the Trump University $1,500 seminar
14   and Trump University was trying to persuade them to sign up for the $35,000 course, each of the
15   participants received a personalized (addressed to them by name) letter from Donald J. Trump.  The
16   letter bore the Trump logo at the top of the letter and the words "From the Office of Donald J.
17   Trump."  The letters stated:

18        Success in real estate begins with great training and proven strategies.
19   Without education you don't stand a chance.

20        *I know how to make money in real estate.*  I've been doing it for a long time
     with a lot of success.  *My family has been a leader in real estate* since my father –
21   Fred Trump – started building residential homes in New York City 75 years ago.  My
     father was my mentor and he taught me a lot.  *Now I want to teach you how to make*
22   *money in real estate.*  To be my apprentice you need to Think BIG and really want to
     succeed.  More than anything, you need to take action.

23        Do YOU have What It Takes to Be My Next Apprentice?

24        I only work with people who are committed to succeed.  I founded Trump
25   University back in 2005 to teach go-getters how to succeed in real estate. My team at
     Trump University is filled with real estate experts . . . proven winners.  We're the

26

27   ─────────────
     [4]    *See* Trump University Advertisement, New York Post, March 2, 2009.
28

best of the best and we know what works.  If you think you have what it takes to be my next apprentice, prove it to me.

We've trained thousands of real estate investors over the years and we know you will be most successful when you work with a partner. . . .

If you're serious about making money and safeguarding your future, **learn to invest in real estate.  Trump University will teach you how**.  **We'll give you the best training** and the confidence to succeed.  If you think you've got what it takes to be my next Apprentice, come prove it to me and my team.

The letter closes with "See you at the top!"  And, it is signed, "Donald J. Trump, Chairman, Trump University."

(h)     Donald Trump wrote 387 blogs posted on Trump University's website, and stated that he intended to be actively involved with Trump University. Donald Trump wrote:

Trump University **grew out of my desire to impart my business knowledge, accumulated over the years**, and my realization that there is a huge demand for practical, convenient education that teaches success.

**I want the people** who go to Trump University **to succeed, and I plan to do my part to help them. I'm not just putting my name on this venture; I plan to be an active presence** in the curricula. The website, www.trumpuniversity.com, will include such features as **"Ask Mr. Trump," in which I answer your questions**; the **blog** you're reading now; **video clips of me**; and more. **My words, ideas, and image will also be woven into the courses we create**. The reason I'm playing such an active role in Trump University is that I truly believe in the power of education . . . . [T]he people who go to Trump University want to be successful, and **I'm on their side**.[5]

In another blog, Trump wrote, "**I have to believe in whatever I put my name on**, and it has to reflect who I truly am. To do otherwise would be a disservice to me, my loyal customers, and prospective customers."[6]

(i)     Donald Trump personally financed Trump University;

(j)     Donald Trump personally reviewed Trump University's financials every month with Trump University President, Michael Sexton;

_____

[5]     http://www.trumpinitiative.com/blog/post/2005/06/why-i-started-trump-university-a-passion-for-learning.cfm (last visited 10-18-10).

[6]     http://www.trumpinitiative.com/blog/post/2005/06/on-being-a-brand-whats-in-a-nam e.cfm (last visited 10-18-10)

Ex. 5 - 247

1         (e)     Trump University print advertisements were reviewed and authorized by

2 Donald Trump before they were released and contained quotes from Donald J. Trump, including: "I

3 can turn anyone into a successful real estate investor, including you. – Donald Trump."[15]

4         (f)     Donald Trump sent signed letters to consumers nationwide, with his ***name***

5 ***and signature*** at the bottom, which stated: "*[N]o course offers the same depth of insight,*

6 *experience and support as the one bearing my name* . . . . My hand-picked instructors and mentors

7 will ***show you how to use real estate strategies to: [s]upplement or even replace your income***,

8 [s]ecure your long-term financial future . . . [s]tart profiting today! Now is the time to create your

9 financial legacy. ***You can do it***, even if you only have five or ten hours a week to spare. With our

10 simple instructions and practice exercises – ***and ongoing support from your own Trump Team of***

11 ***Experts – you'll have what you need to succeed!***" (Emphasis in original). The letter closes with

12 Donald J. Trump's name, signature, and at the Trump University address, at 40 Wall Street, 32nd

13 Floor, New York, NY 10005.

14         (g)     While Plaintiffs and other Class members were in the midst of the Trump

15 University $1,500 seminar and Trump University was trying to persuade them to sign up for the

16 $35,000 course, each of the participants received a personalized (addressed to them by name) letter

17 from Donald J. Trump. The letter bore the Trump logo at the top of the letter and the words "From

18 the Office of Donald J. Trump." The letters stated:

19         Success in real estate begins with great training and proven strategies.

20 Without education you don't stand a chance.

21         ***I know how to make money in real estate.*** I've been doing it for a long time

with a lot of success. ***My family has been a leader in real estate*** since my father –

22 Fred Trump – started building residential homes in New York City 75 years ago. My

father was my mentor and he taught me a lot. ***Now I want to teach you how to make***

23 ***money in real estate.*** To be my apprentice you need to Think BIG and really want to

succeed. More than anything, you need to take action.

24         Do YOU have What It Takes to Be My Next Apprentice?

25         I only work with people who are committed to succeed. I founded Trump

26 University back in 2005 to teach go-getters how to succeed in real estate. My team at

27 [15]    *See* Trump University Advertisement, *New York Post*, March 2, 2009.

28

1   Trump University is filled with real estate experts . . . proven winners.  We're the
2   best of the best and we know what works.  If you think you have what it takes to be
    my next apprentice, prove it to me.

3   We've trained thousands of real estate investors over the years and we know you will
4   be most successful when you work with a partner. . .

5        If you're serious about making money and safeguarding your future, *learn to
    invest in real estate.  Trump University will teach you how.  We'll give you the best
6   training* and the confidence to succeed.  If you think you've got what it takes to be
    my next Apprentice, come prove it to me and my team.

7   The letter closes with "See you at the top!"  And, it is signed, "Donald J. Trump, Chairman,
8   Trump University."

9        (h)        **Donald Trump wrote nearly 400 blogs posted on Trump University's**

10  **website, and stated that he intended to be actively involved with Trump University –** Donald

11  Trump regularly posts blogs on the Trump University website – he has posted 387 blogs from May

12  27, 2005, to as recently as August 18, 2010, and these blogs all remained on the website as of

13  October 18, 2010.[16]  In these blogs, Donald Trump stated that he intended to be actively involved

14  with Trump University and intended to personally help consumers who paid for Trump University

15  Seminars.  Donald Trump wrote: "I'm not just putting my name on this venture; I plan to be an

16  active presence in the curricula."  For example in the blog *Why I Started Trump University: A*

17  *Passion for Learning*," Donald Trump explains that:

18       Trump University **grew out of my desire to impart my business knowledge,
         accumulated over the years**, and my realization that there is a huge demand for
19       practical, convenient education that teaches success

20       ***I want the people*** who go to Trump University **to succeed, and I plan to do my part
         to help them. I'm not just putting my name on this venture; I plan to be an active**
21       **presence** in the curricula. The website, www.trumpuniversity.com, will include such
         features as "**Ask Mr. Trump,**" in which I answer your questions; the **blog** you're
22       reading now; **video clips of me**; and more. **My words, ideas, and image will also be
         woven into the courses we create**. The reason I'm playing such an active role in

23

24

25

_____

26  [16]        http://www.trumpinitiative.com/blog/author/donald-trump.cfm.  (After the name change, all
    references from Trump University were changed to Trump Entrepreneur Initiative, even in earlier
27  posts; for continuity, we use Trump University).

28

# EXHIBIT 6

EXHIBIT 6

| Purported "New Facts" in 4th AC (ECF 248-3) | Identical or Substantially Similar Allegations in TAC (ECF 112-4) | Identical or Substantially Similar Allegations or Argument in Earlier Pleadings and/or Verified Discovery Responses or Documents Produced Prior to Amendment Deadline |
|---|---|---|
| Wire Fraud "Materials" (Credit Cards) | "Trump University representatives also told students during the three-day seminar to raise their credit card limits four times during the break for 'real estate transactions,' and had students prepare detailed financial statements, presumably for real estate purchases.  In fact, Trump's real reason for having students increase their credit limits and provide detailed financial statements was to assess how much money each student had to spend on the next Trump seminar, and to persuade the students to use their increased credit limit to purchase the Trump Gold program for $34,995."  TAC, at ¶ 6 | **Ex. 6 A**<br>• Complaint, ¶¶ 91, 23-24<br>• FAC, ¶ 134<br>• SAC, ¶ 154 |
| | "Trump University representatives do not tell students that they are likely to incur finance charges, interest fees, and late fees by charging this expensive seminar on their credit cards.  Trump University also does not tell students that by increasing | **Ex. 6 B**<br>• Complaint, ¶ 24<br>• FAC, ¶ 40<br>• SAC, ¶ 44 |

| **Purported "New Facts" in 4th AC (ECF 248-3)** | **Identical or Substantially Similar Allegations in TAC (ECF 112-4)** | **Identical or Substantially Similar Allegations or Argument in Earlier Pleadings and/or Verified Discovery Responses or Documents Produced Prior to Amendment Deadline** |
|---|---|---|
| | their credit limits, they could damage their credit scores. Trump University representatives also never inform students that by 'maxing out' their credit cards, their credit scores could drop even more significantly." TAC at ¶ 52 | |
| | | **Ex. 6 C**<br>• Exemplars of Named Plaintiffs' Credit Card Transactions Pre-dating Original Complaint in 2010 |

# EXHIBIT 6 A

89.     As alleged herein, Trump falsely represented to Plaintiff and members of the Class that they would receive a "complete real estate education," a "one year apprenticeship," one-on-one mentorship, practical real estate techniques and contracts, a "power team" of real estate agents, lenders, personal finance managers, property managers and contractors, and were assured that although the seminars were costly, they would make the money back in their first real estate deal, and could make up to tens of thousands of dollars per month or more.

90.     Instead of a complete real estate education, students merely received an "infomercial" pushing additional seminars or workshops they were told they would need to take to succeed. The "one year apprenticeship" they were promised was actually just a 3-day seminar; the one-on-one year-long mentorship consisted of no practical insights and no mentorship, but rather excursions to Home Depot and "mentors" who either recommend real estate deals that they stand to benefit from financially, raising a conflict of interest, or immediately disappeared and failed to return calls.

91.     Trump University representatives also told students during the 3-day seminar to raise their credit card limits 2-4 times during the break for "real estate transactions," and had students prepare detailed financial statements, presumably for real estate purchases, when in fact, Trump's real reason for this was to assess how much money each student had to spend on the next Trump seminar, and to persuade the students to use their increased credit limit to purchase the Trump Gold Program for $34,995.

92.     Trump's misrepresentations were supplied for the purpose of affecting Plaintiffs and Class members' financial decisions.

93.     Trump had no reasonable grounds for believing that its misrepresentations were true.

94.     Trump failed to exercise reasonable care and/or diligence in communicating its misrepresentations.

95.     Trump's misrepresentations were objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

96.     Trump intended that Plaintiff and members of the Class would rely on its misrepresentations.

26

CLASS ACTION COMPLAINT

1   Cloud 9 because you get it; you know so much." The speaker says you can attend the first day and

2   then decide if the course is right for you.  Your "Satisfaction is 100% Guaranteed."  The speaker

3   even says he will give you his personal email; he wants that connection with you, so you can become

4   part of the Trump family.

5   **Second Tier: the 1-year "apprenticeship" (actually a three-day infomercial)**

6       22.    **One Year Apprenticeship** – Defendant describes the second tier as a one year

7   "apprenticeship" that allegedly provides a, "comprehensive real estate education."  In actuality, it is

8   merely a three-day infomercial to sell more Trump products.  Trump University tells students at the

9   free seminar that this one-year apprenticeship is "all you need." However, rather than teach students

10  actual real estate techniques and how to fill out the necessary contracts and forms (as promised in the

11  free seminar), the entire "apprenticeship" is a three-day long "infomercial" to "up-sell" students to

12  buy the Trump Gold Program for $34,995 to get a "full education."

13

14      23.    **Inducing students to increase credit card limits** - During the seminar, the speakers

15  demand that students raise their credit card limits by "4 times" their current limits on class breaks so

16  that they can be ready to immediately purchase property.  The speakers also ask each student to fill

17  out a detailed financial statement, presumably for real estate investment purposes, and personally sit

18  down with each student to review and assess their financial situation under the guise of helping them -

19  -- in fact, they assess how much money each student has to spend on the next Trump seminar.  At the

20  end of the workshop, Trump's real reason for urging attendees to extend their credit limits becomes

21  clear: the Trump representatives ask the students to use their increased credit to purchase the next

22  level of buy-in, the Trump University "Gold program," for $34,995.

23

24      24.    Trump representatives don't tell students that they are likely to incur finance charges,

25  interest fees and late fees by charging this expensive seminar on their credit cards.  Trump also does

26  not tell students that by increasing their credit limits, they could damage their credit scores.  Trump

27  representatives also never inform students that by "maxing out" their credit cards, their credit scores

28

8

CLASS ACTION COMPLAINT

1    could drop even more significantly.   In fact, when Plaintiff "maxed out" her credit card, her

2    previously high credit score immediately dropped.

3        25.    **Mentorship -** Trump University promises students who purchase the $1,495 seminar

4    an "entire year apprenticeship" --"one full year of expert, interactive support" where "you will be

5    trained properly by the best."  But in actuality, students get only a three-day seminar and an 800-

6    telephone number to call.  Trump does not provide the details, support or training the students need to

7    actually engage in the real estate transactions mentioned.   Nor does it provide any mentorship.

8        26.    **Illegal practices** – Furthermore, the real estate practices touted by Trump University

9    during the seminar include transactions that are illegal in certain states, including California, such as

10   posting anonymous "bandit signs."  These are signs placed by the roadway that mimic yellow and

11   black road warning signs and say, "WE BUY HOUSES, 619-222-2222."

12       27.    **Conflict of interest** – As part of the $1,495 seminar, Trump University promises to

13   introduce students to a Trump "power team" of mentors, real estate agents, brokers, contractors,

14   attorneys and accountants, who are supposedly there to help the student make money in real estate.

15   However, these Trump "mentors" and power team members often guide the students toward deals in

16   which they have a personal financial interest at stake – creating a severe conflict of interest, so that the

17   mentors profit while the student does not.

18       28.    **Money back guarantee** – students consistently complain that they have timely

19   requested refunds under Trump University's money-back guarantee, but that Trump University failed

20   to refund them their money.

21   **Third tier – the $35,000 Mentorship Program**

22       29.    By the end of the $1,495 seminar, Trump University did not teach students practical

23   real estate techniques.  Instead it merely gives them a high-pressure sales pitch to purchase another

24   program from Trump: the $34,995 "Trump Gold Program." Plaintiff and other students were clearly

9

CLASS ACTION COMPLAINT

1   although the seminars were costly, they would make the money back in their first real estate deal,

2   and could make up to tens of thousands of dollars per month or more.

3         133.   Instead of a complete real estate education, students merely received an

4   "infomercial" pushing additional seminars or workshops they were told they would need to take to

5   succeed.  The "one year apprenticeship" they were promised was actually just a 3-day seminar; the

6   one-on-one year-long mentorship consisted of no practical insights and no mentorship, but rather

7   excursions to Home Depot and "mentors" who either recommend real estate deals that they stand to

8   benefit from financially, raising a conflict of interest, or immediately disappeared and failed to return

9   calls.

10        134.   Trump University representatives also told students during the 3-day seminar to

11   raise their credit card limits 4 times during the break for "real estate transactions," and had students

12   prepare detailed financial statements, presumably for real estate purchases, when in fact, Trump's

13   real reason for this was to assess how much money each student had to spend on the next Trump

14   seminar, and to persuade the students to use their increased credit limit to purchase the Trump Gold

15   Program for $34,995.

16        135.   Trump's misrepresentations were supplied for the purpose of affecting Plaintiffs' and

17   Class members' financial decisions.

18        136.   Trump had no reasonable grounds for believing that its misrepresentations were true.

19        137.   Trump failed to exercise reasonable care and/or diligence in communicating its

20   misrepresentations.

21        138.   Trump's misrepresentations were objectively material to the reasonable consumer,

22   and therefore reliance upon such representations may be presumed as a matter of law.

23        139.   Trump intended that Plaintiffs and members of the Class would rely on its

24   misrepresentations.

25        140.   Plaintiffs and members of the Class reasonably and justifiably relied to their

26   detriment on Trump's misrepresentations.

27        141.   As a proximate result of Trump's misrepresentations, Plaintiffs and members of the

28   Class were damaged in an amount to be proven at trial.

41

FIRST AMENDED CLASS ACTION COMPLAINT

1

2  ZELDES & HAEGGQUIST, LLP
   AMBER L. ECK (177882)
3  ambere@zhlaw.com
   HELEN I. ZELDES (220051)
   helenz@zhlaw.com
4  ALREEN HAEGGQUIST (221858)
   alreenh@zhlaw.com
5  625 Broadway, Suite 906
   San Diego, CA  92101
6  Telephone:  619/342-8000
   619/342-7878 (fax)
7
   ROBBINS GELLER RUDMAN
8    & DOWD LLP
   RACHEL L. JENSEN (211456)
9  rjensen@rgrdlaw.com
   PAULA M. ROACH (254142)
10 proach@rgrdlaw.com
   655 West Broadway, Suite 1900
11 San Diego, CA  92101
   Telephone:  619/231-1058
12 619/231-7423 (fax)

13 Attorneys for Plaintiffs and the Proposed Class

14                UNITED STATES DISTRICT COURT

15             SOUTHERN DISTRICT OF CALIFORNIA

16 TARLA MAKAEFF, BRANDON KELLER,    )   No. 10-cv-00940-IEG(WVG)
   ED OBERKROM, and PATRICIA MURPHY, )
17 on Behalf of Themselves and All Others )   CLASS ACTION
   Similarly Situated,                )
18                                     )   SECOND AMENDED CLASS ACTION
                                       )   COMPLAINT
19                      Plaintiffs,    )
                                       )
20         vs.                         )
                                       )
21 TRUMP UNIVERSITY, LLC, (aka Trump   )
   Entrepreneur Initiative) a New York Limited )
22 Liability Company, DONALD J. TRUMP, and )
   DOES 1 through 50, inclusive,       )
23                                     )
                       Defendants.     )
24 _____ )   JURY TRIAL DEMANDED

25

26

27

28

590148_1

**EIGHTH CAUSE OF ACTION**

**(Fraud)**

151.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

152.    As alleged herein, Defendants intentionally and falsely represented to Plaintiffs and Class members that they would receive a "complete real estate education," a "one year apprenticeship," one-on-one mentorship, practical real estate techniques and contracts, a "power team" of real estate agents, lenders, personal finance managers, property managers and contractors, and were assured that although the Seminars were costly, they would make the money back in their first real estate deal, and could make up to tens of thousands of dollars per month or more.

153.    Instead of a complete real estate education, students merely received an "infomercial" pushing additional Seminars or workshops they were told they would need to take to succeed.  The "one year apprenticeship" they were promised was actually just a three-day seminar; the one-on-one year-long mentorship consisted of no practical insights and no mentorship, but rather excursions to Home Depot and "mentors" who either recommend real estate deals that they stand to benefit from financially, raising a conflict of interest, or immediately disappeared and failed to return calls. Defendants' representations were false and Defendants knew the representations were false at they time they were made, or made the representations recklessly and without regard for its truth.

154.    Trump University representatives also told students during the three-day seminar to raise their credit card limits four times during the break for "real estate transactions," and had students prepare detailed financial statements, presumably for real estate purchases, when in fact, Defendants' real reason for this was to assess how much money each student had to spend on the next Trump University seminar, and to persuade the students to use their increased credit limit to purchase the Trump University Gold Program for $34,995.

155.    Defendants falsified and at times completely fabricated testimonials of students and posted testimonials that were in violation of FTC regulations and guidelines.

156.    Defendants intended that Plaintiffs and Class members rely on the representations.

# EXHIBIT 6 B

1   Cloud 9 because you get it; you know so much." The speaker says you can attend the first day and

2   then decide if the course is right for you.  Your "Satisfaction is 100% Guaranteed."  The speaker

3   even says he will give you his personal email; he wants that connection with you, so you can become

4   part of the Trump family.

5   **Second Tier: the 1-year "apprenticeship" (actually a three-day infomercial)**

6       22.    **One Year Apprenticeship** – Defendant describes the second tier as a one year

7   "apprenticeship" that allegedly provides a, "comprehensive real estate education."  In actuality, it is

8   merely a three-day infomercial to sell more Trump products.  Trump University tells students at the

9   free seminar that this one-year apprenticeship is "all you need."  However, rather than teach students

10  actual real estate techniques and how to fill out the necessary contracts and forms (as promised in the

11  free seminar), the entire "apprenticeship" is a three-day long "infomercial" to "up-sell" students to

12  buy the Trump Gold Program for $34,995 to get a "full education."

13

14      23.    **Inducing students to increase credit card limits** - During the seminar, the speakers

15  demand that students raise their credit card limits by "4 times" their current limits on class breaks so

16  that they can be ready to immediately purchase property.  The speakers also ask each student to fill

17  out a detailed financial statement, presumably for real estate investment purposes, and personally sit

18  down with each student to review and assess their financial situation under the guise of helping them -

19  -- in fact, they assess how much money each student has to spend on the next Trump seminar.  At the

20  end of the workshop, Trump's real reason for urging attendees to extend their credit limits becomes

21  clear: the Trump representatives ask the students to use their increased credit to purchase the next

22  level of buy-in, the Trump University "Gold program," for $34,995.

23

24      24.    Trump representatives don't tell students that they are likely to incur finance charges,

25  interest fees and late fees by charging this expensive seminar on their credit cards.  Trump also does

26  not tell students that by increasing their credit limits, they could damage their credit scores.  Trump

27  representatives also never inform students that by "maxing out" their credit cards, their credit scores

28

8

**CLASS ACTION COMPLAINT**

clear: the Trump representatives ask the students to use their increased credit to purchase the next level of buy-in, the Trump University "Gold Elite" seminar, for $34,995. Trump reps predominantly pushed the "Trump Gold Elite" program for $34,995, but if they were unable to persuade students to purchase at this level (or if students did not have sufficient credit), Trump would encourage the students to purchase the "Trump Silver Elite" program for $19,495 or the "Trump Bronze Elite" seminar for $9,995. Each of these prices were purported to be "one-day-only" price savings off their "regular" prices of $48,490, $23,490 and $10,995, respectively. *See* Ex. A, Trump Enrollment Form.

40. Trump representatives don't tell students that they are likely to incur finance charges, interest fees and late fees by charging this expensive seminar on their credit cards. Trump also does not tell students that by increasing their credit limits, they could damage their credit scores. Trump representatives also never inform students that by "maxing out" their credit cards, their credit scores could drop even more significantly. In fact, when Plaintiff Makaeff "maxed out" her credit card, her previously high credit score immediately dropped.

41. Instead, Trump representatives encourage students to max out their credit cards to pay the for the $35,000 seminar, telling them to "not worry," because "you'll make it back in 30 or 60 or 90 days." They knew that this was extremely unlikely, and that few, if any students did so.

42. **Misrepresentations regarding calling student real estate "leads"** - students were also told at the free seminar that if they signed up for the $1,500 seminar, they could bring in five to ten real estate leads and Trump University representatives would call them during the seminar. Students were told: Go get 5 for-sale-by-owner leads (FSBOs) in lower-middle income areas, with a phone number and an address for each property, and 5 "for rent" ads. "***Our trainers, the best at Trump, will call these for you. If they close the deal, you get to keep the profits***. But at the very least, you get to watch and listen to the best deliver the correct words to get the right results, and you get to watch it happen. No one else will do that. But we do – we're Trump, we're bold; we're the

15

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PAULA M. ROACH (254142)
proach@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>                              Defendants. | No. 10-cv-00940-IEG(WVG)<br><br>CLASS ACTION<br><br>SECOND AMENDED CLASS ACTION COMPLAINT<br><br><br><br><br><br>JURY TRIAL DEMANDED |

590148_1

1    or the "Trump Bronze Elite" seminar for $9,995.  Each of these prices were purported to be "one-

2    day-only" price savings off their "regular" prices of $48,490, $23,490 and $10,995, respectively.

3    *See* Ex. A, Trump University Enrollment Form.

4          44.    Trump University representatives do not tell students that they are likely to incur

5    finance charges, interest fees and late fees by charging this expensive seminar on their credit cards.

6    Trump University also does not tell students that by increasing their credit limits, they could damage

7    their credit scores.  Trump University representatives also never inform students that by "maxing

8    out" their credit cards, their credit scores could drop even more significantly.  In fact, when Plaintiff

9    Makaeff "maxed out" her credit card, her previously high credit score immediately dropped.

10         45.    Instead, Trump University representatives encourage students to max out their credit

11   cards to pay the for the $35,000 seminar, telling them to "not worry," because "you'll make it back

12   in 30 or 60 or 90 days."  They knew that this was extremely unlikely, and that few, if any students

13   did so.

14         46.    **Misrepresentations regarding calling student real estate "leads" –** Students were

15   also told at the free seminar that if they signed up for the $1,500 seminar, they could bring in five to

16   ten real estate leads and Trump University representatives would call them during the seminar.

17   Students were told: Go get five for-sale-by-owner leads (FSBOs) in lower-middle income areas, with

18   a phone number and an address for each property, and five "for rent" ads.  "***Our trainers, the best at***

19   ***Trump, will call these for you.  If they close the deal, you get to keep the profits***.  But at the very

20   least, you get to watch and listen to the best deliver the correct words to get the right results, and you

21   get to watch it happen.  No one else will do that. But we do – we're Trump, we're bold; we're the

22   best."  However, at each $1,500 seminar, Trump representatives called the leads of only one or two

23   students, even if dozens of students had brought their leads in.

24         47.    **Mentorship –** Trump University promises students who purchase the $1,495 seminar

25   an "entire year apprenticeship" – "one full year of expert, interactive support" where "you will be

26   trained properly by the best."  But in actuality, students get only a three-day seminar and an 800-

27   telephone number to call.  Trump does not provide the details, support or training the students need

28   to actually engage in the real estate transactions mentioned.  Nor does it provide any mentorship.  In

# EXHIBIT 6 C
## [Filed Conditionally Under Seal]

Exhibit 6 C
Pages 265-289

# EXHIBIT 7

**EXHIBIT 7**

| Purported "New Facts" in 4<sup>th</sup>AC (ECF 248-3) | Identical or Substantially Similar Allegations in TAC (ECF 112-4) | Identical or Substantially Similar Allegations or Argument in Earlier Pleadings and/or Verified Discovery Responses or Documents Produced Prior to Amendment Deadline |
|---|---|---|
| Wire Fraud "Materials" (Emails) | "An email from Trump University [was sent] to thousands or tens of thousands consumers featured Donald Trump's photo with the words: 'Are you My Next Apprentice,' and stated: '76% of the world's millionaires made their fortunes in real estate.  Now it's your turn.  My father did it, I did it, and now I'm ready to teach you how to do it too.'  The signature line at the bottom of the email reads, Donald J. Trump, Chairman, Trump University, and even includes his signature." <br><br> TAC at ¶¶ 19(d) & 67(d) | **Ex. 7 A** <br> • SAC, ¶¶ 18(d), 59(d) |

# EXHIBIT 7 A

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
PAULA M. ROACH (254142)
proach@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 10-cv-00940-IEG(WVG)<br><br>CLASS ACTION<br><br>SECOND AMENDED CLASS ACTION COMPLAINT<br><br><br><br><br><br>JURY TRIAL DEMANDED |

590148_1

1    profit rather than net profit which is highly misleading. Indeed, when expenses are taken into

2    account, many of these "success stories" have not really made any money at all.  Many of Trump

3    University's testimonials violated FTC regulations and requirements.

4         18.    **Donald Trump's Involvement –** Donald Trump is personally liable due to his public

5    representations concerning Trump University and his involvement and role in the misconduct:

6         (a)    Donald Trump is the founder and Chairman of Trump University – according

7    to Trump University seminar presenters, Donald Trump owns Trump University "lock, stock and

8    barrel," and it is his "baby, his company";

9         (b)    Donald Trump authorized Trump University to use his name, photos and

10   quotes for all Trump University seminar presentations, website and advertising – the home page of

11   the website displays a large photo of Donald Trump along with the message from him: "***Are YOU***

12   ***My Next Apprentice?  Prove it to me!***";

13        (c)    Print advertisements featuring Donald Trump and his image included quotes

14   from him including: "***Don't think you can profit in this market? You can.  And I'll show you how***.

15   ***Learn from my handpicked expert*** how you can profit from the largest real estate liquidation in

16   history."[3]

17        (d)    An email from Trump University to thousands or tens of thousands consumers

18   featured Donald Trump's photo with the words: "***Are you My Next Apprentice***," and stated: "***76% of***

19   ***the world's millionaires made their fortunes in real estate.  Now it's your turn. My father did it, I***

20   ***did it, and now I'm ready to teach you how to do it too***."  The signature line at the bottom of the

21   email reads, Donald J. Trump, Chairman, Trump University, and even includes his signature.

22        (e)    Trump University print advertisements were reviewed and authorized by

23   Donald Trump before they were released and contained quotes from Donald J. Trump, himself,

24

25

26

27   [3]    *See* Trump University Advertisement, New York Post, March 2, 2009.

28

(c)      Print advertisements featuring Donald Trump and his image included quotes from him including: "***Don't think you can profit in this market? You can.  And I'll show you how***. ***Learn from my handpicked expert*** how you can profit from the largest real estate liquidation in history."[14]

(d)      An email from Trump University to thousands or tens of thousands consumers featured Donald Trump's photo with the words: "***Are you My Next Apprentice***," and stated: "***76% of the world's millionaires made their fortunes in real estate. Now it's your turn. My father did it, I did it, and now I'm ready to teach you how to do it too***."  The signature line at the bottom of the email reads, Donald J. Trump, Chairman, Trump University, and even includes his signature.

---

[14]      *See* Trump University Advertisement, New York Post, March 2, 2009.

Ex. 7 - 295

# EXHIBIT 8

**EXHIBIT 8**

| Purported "New Facts" in 4<sup>th</sup>AC (ECF 248-3) | Identical or Substantially Similar Allegations or Argument in Earlier Pleadings and/or Verified Discovery Responses or Documents Produced Prior to Amendment Deadline |
|---|---|
| Wire/Internet/Mail Fraud | **Ex. 8 A**<br>• Plaintiff Makaeff Complaint to NY Attorney General dated 9/24/09 re "TU advertise online everywhere and other media forms" (TU 01507 Produced 1/5/12)<br>• Transcript of 8/4/10 Plaintiff Motion to Strike Counterclaim (ECF 30), 6:24-7:1, 7:19-8:4<br>• Plaintiffs' Motion for Reconsideration (9/20/10, ECF 31-1), pp. 4:5-6, 9:11-13 & 9:24-25<br>• SAC, ¶¶ 18 (h), 18 (k) 18 (n), 22, 34, & 36 fn. 12<br>• Plaintiffs Oppo. DJT MTD SAC (3/7/11, ECF 62), pp. 2:4-6, 14, p. 9:4-5, p. 13:22-23, p. 17:8-12, p. 22:11-14<br>• Appellant's Opening Brief (5/26/11, 9th Cir. ECF 11-1), pp. 17-19<br>• Joint Discovery Plan: Plaintiffs' Statement of the Case (9/16/11, ECF 82), pp. 1:26-2:7, 4:22-25, 13:12-13,<br>• Plaintiffs' Response to Interrogatories Nos. 2, 4, 16, Set One (11/7/11)<br>• Plaintiffs' Supp. Response to Interrogatory No. 3, Set One (3/20/12)<br>• Plaintiffs Motion for Class Cert (9/24/12, ECF 122-1), 10:14-19, 11:6-7 |

EXHIBIT 8 A



ATTORNEY GENERAL ANDREW M. CUOMO
STATE OF NEW YORK
**OFFICE OF THE ATTORNEY GENERAL**
BUREAU OF CONSUMER FRAUDS AND PROTECTION
120 Broadway, 3rd Floor
New York, NY 10271-0332
Tel. (212) 416-8345   Fax (212) 416-8787

**COMPLAINT FORM**
Consumer Hotline    For Hearing Impaired
(800) 771-7755    TDD (800) 788-9898
http://www.oag.state.ny.us

NYS OFFICE OF THE ATTORNEY
RECEIVED **OCT 0 1** 2009
NEW YORK CONSUMER FRAUDS
& PROTECTION BUREAU

1. **PLEASE BE SURE TO COMPLAIN TO THE COMPANY OR INDIVIDUAL BEFORE FILING OF THIS FORM.**
2. **PLEASE TYPE OR PRINT CLEARLY IN DARK INK.**
3. **YOU MUST COMPLETE THE ENTIRE FORM. INCOMPLETE OR UNCLEAR FORMS WILL BE RETURNED TO YOU.**
4. **MAKE SURE YOU ENCLOSE COPIES OF IMPORTANT PAPERS CONCERNING YOUR TRANSACTION.**

## CONSUMER

| YOUR NAME | HOME TELEPHONE NUMBER |
|---|---|
| Tarla Makaeff | 949-387-8430 |

| STREET ADDRESS | BUSINESS TELEPHONE NUMBER |
|---|---|
| 3334 E Coast Hwy #423 | 949-387-8430 |

| CITY/TOWN | COUNTY | STATE | ZIP |
|---|---|---|---|
| Corona Del Mar | Orange | CA | 92625 |

## COMPLAINT

| NAME OF SELLER OR PROVIDER OF SERVICES | NAME OF OTHER SELLER OR PROVIDER OF SERVICES |
|---|---|
| Trump University | |

| STREET ADDRESS | STREET ADDRESS |
|---|---|
| 40 Wall Street, 32nd floor | |

| CITY/TOWN | STATE | ZIP | CITY/TOWN | STATE | ZIP |
|---|---|---|---|---|---|
| New York | NY | 10005 | | | |

| TELEPHONE NUMBER | TELEPHONE NUMBER |
|---|---|
| 888 826 5953 | |

| DATE OF TRANSACTION 8/10/2008 | COST OF PRODUCT OR SERVICE $ 34,995 | HOW PAID (Check those which apply) ☐ Cash ☑ Check ☑ Credit Card ☑ Other ATM/debit |
|---|---|---|

| DID YOU SIGN A CONTRACT? ☑ Yes ☐ No | WHERE DID YOU SIGN THE CONTRACT? At the Trump University Fast Track to Foreclosure Retreat | DATE SIGNED 8/12/2009 |
|---|---|---|

| WAS PRODUCT OR SERVICE ADVERTISED? ☑ Yes ☐ No | WHERE WAS IT ADVERTISED? I discovered them through a friend but they advertise online everywhere and other media forms | DATE ADVERTISED ongoing |
|---|---|---|

| TYPE OF COMPLAINT (e.g. car, mail order, etc. Use the reverse side of this form to provide details) |
|---|
| Fraudulent, deceptive, and unethical business practices utilizing bait and switch tactics, high pressure closes, and felonious real estate instruction |

| DATE YOU COMPLAINED TO THE COMPANY OR INDIVIDUAL 10/08-current ☐ By Mail ☑ By Telephone ☐ In Person | PERSON CONTACTED Jason Schauer/Paul Reisner | JOB TITLE Customer Service |
|---|---|---|

| NATURE OF RESPONSE Offered more useless services and unwilling to admit fault or refund any of my funds | DATE OF RESPONSE 10/08 through 4/09 |
|---|---|

| HAS MATTER BEEN SUBMITTED TO ANOTHER AGENCY OR ATTORNEY? (If "Yes," give name and address) ☑ Yes ☐ No   FTC and Consumer Bureau of Protection and planning on US Attorney General, BBB etc... |
|---|

| IS COURT ACTION PENDING?   (Please describe as necessary) ☐ Yes ☑ No   However I have retained counsel who has suggested a class action lawsuit |
|---|

## ADDITIONAL INFORMATION

| MANUFACTURER OF PRODUCT | PRODUCT MODEL OR SERIAL NUMBER |
|---|---|
| | |

| ADDRESS | WARRANTY EXPIRATION DATE |
|---|---|
| | |

| DID BUSINESS ARRANGE FINANCING? (If "Yes," give name and address of bank or finance company) ☐ Yes ☑ No   However they instructed us to call our credit card companies and ask to raise our credit limit 4x prior to them taking us to pay the $34,995 telling us we could then use that new limit to pay for the classes |
|---|

**PLEASE DESCRIBE COMPLAINT ON REVERSE SIDE**

CNS 001NY (1/07)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA


TARLA MAKAEFF,                    )    10CV0940-IEG
         PLAINTIFF,              )
                                 )
VS.                              )    SAN DIEGO, CA
                                 )    AUGUST 4, 2010
TRUMP UNIVERSITY, LLC, *ET AL.*, )    11:00 A.M.
         DEFENDANTS.            )


TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE IRMA E. GONZALEZ

UNITED STATES DISTRICT CHIEF JUDGE



APPEARANCES:

FOR THE PLAINTIFF:    ZELDES & HAEGGQUIST, LLP
                      BY:  AMBER L. ECK, ESQ.
                          HELEN I. ZELDES, ESQ.
                      625 BROADWAY, SUITE 906
                      SAN DIEGO, CA  92101

FOR DEFENDANT TRUMP:  YUNKER & SCHNEIDER
                      BY:  DAVID K. SCHNEIDER, ESQ.
                      655 W. BROADWAY, SUITE 1400
                      SAN DIEGO, CA  92101

COURT REPORTER:       FRANK J. RANGUS, OCR
                      U. S. COURTHOUSE, RM. 4194
                      940 FRONT STREET
                      SAN DIEGO, CA  92101
                      (619) 531-0171


PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

1              THE COURT:  LET'S ASSUME THEY ARE.

2              MS. ECK:  OKAY.

3              SO, ONCE WE'VE PROVEN THAT THEY'RE PROTECTED SPEECH

4    UNDER ANTI-SLAPP, THEN THE BURDEN WILL MOVE TO TRUMP

5    UNIVERSITY TO ESTABLISH A *PRIMA FACIE* CASE THAT THEY

6    CONSTITUTE DEFAMATION.

7              FOR DEFAMATION, AS YOU MENTIONED, ADDRESSING THE

8    ISSUE OF WHETHER OR NOT TRUMP UNIVERSITY IS A PUBLIC FIGURE,

9    WE ALLEGE TRUMP UNIVERSITY IS A PUBLIC FIGURE BECAUSE THE

10   STATEMENTS CONCERN A PUBLIC CONTROVERSY REGARDING THESE

11   DECEPTIVE, ALLEGEDLY DECEPTIVE PRACTICES OF TRUMP UNIVERSITY.

12   HUNDREDS OF CONSUMERS, OF STUDENTS, WHO HAVE TAKEN THE COURSES

13   HAVE EXPLAINED ONLINE, ALLEGING THAT THEY DON'T DELIVER WHAT

14   THEY'RE PROMISED, AND ON THE OTHER HAND WE HAVE TRUMP

15   UNIVERSITY CLAIMING THAT THEY'RE PROVIDING A COMPLETE

16   REAL-ESTATE EDUCATION AND THAT THEY'RE WORTH THE $35,000 AND

17   THAT THEY HAVE A 98-PERCENT CONSUMER SATISFACTION RATE, THAT

18   THAT CREATES THIS PUBLIC CONTROVERSY.

19             ALSO, TRUMP UNIVERSITY INVITED ATTENTION AND COMMENT

20   THROUGH ITS USE OF DONALD TRUMP'S CELEBRITY STATUS TO SELL

21   THEIR REAL-ESTATE INVESTING SEMINARS, AND IT'S A PUBLIC FIGURE

22   BECAUSE OF DONALD TRUMP'S STRONG INVOLVEMENT IN THIS COMPANY.

23   HE'S NOT JUST A CELEBRITY ADVERTISER.  HE'S THE CHAIRMAN OF

24   TRUMP UNIVERSITY.  HE'S GIVEN IT HIS NAME.  THEY USE HIS NAME

25   AND LIKENESS ALL OVER ITS WEBSITE, ON ITS MARKETING MATERIALS,

1    ITS ADVERTISING, AND IN ITS SEMINARS.  WHEN YOU SHOW UP TO A

2    SEMINAR, THERE'S 20-FOOT-TALL BANNERS OF DONALD TRUMP'S FACE.

3    THEY'RE DOING THE *MONEY, MONEY, MONEY* SONG FROM *THE*

4    *APPRENTICE*, AND THERE ARE SLIDES SHOWING DONALD TRUMP AND HIS

5    FAMILY SECRETS AND WHAT YOU'RE GOING TO LEARN AND THE MENTORS

6    AND TEACHERS WHO ARE HAND-PICKED BY DONALD TRUMP.

7              THE COURT:  SO LET ME STOP YOU THERE.

8              ASSUMING THAT THE STATEMENTS INVOLVED A RIGHT OF FREE

9    SPEECH, WHICH I'M OBVIOUSLY LEANING TOWARD, BUT I GUESS I'M

10   STILL CONCERNED ABOUT WHAT YOU'RE ARGUING NOW, WHETHER IN FACT

11   THE UNIVERSITY ITSELF, I MEAN, IS A PUBLIC FIGURE.  I MEAN, A

12   PUBLIC FIGURE IS ONE THAT'S A PUBLIC FIGURE FOR ALL PURPOSES,

13   OR IS THE UNIVERSITY JUST IN A SPECIFIC INSTANCE A PUBLIC

14   FIGURE?  AND SO I GUESS I WANT YOU TO CONCENTRATE ON THAT FOR

15   A MINUTE.

16             MS. ECK:  SURE.

17             WE BELIEVE THAT TRUMP UNIVERSITY IS AN ALL-PURPOSE

18   PUBLIC FIGURE BECAUSE IT HAS ACTIVELY INSERTED ITSELF INTO THE

19   PUBLIC.  IT ADVERTISES HEAVILY ON THE INTERNET, ON FACEBOOK,

20   VIA E-MAIL, I BELIEVE TV AND RADIO, AND SO THAT IT'S REALLY

21   PUT ITSELF OUT THERE FOR ALL PURPOSES.

22             THE COURT:  NOW, MR. TRUMP DOES THAT, BUT DOES TRUMP

23   UNIVERSITY?

24             MS. ECK:  YES, IT DOES.  SO, IF YOU GO ONTO FACEBOOK,

25   THERE WILL BE AN AD, YOU KNOW, TAKE THIS FREE REAL-ESTATE

1    INVESTING SEMINAR AND LEARN DONALD TRUMP'S FAMILY REAL-ESTATE

2    INVESTING SECRETS.  YOU CAN CLICK ON THAT.  YOU CAN GO ONTO

3    THEIR INTERNET, SIGN UP FOR HIS FREE SEMINAR, OR THE

4    UNIVERSITY'S FREE SEMINAR.  AT THAT FREE SEMINAR IS WHERE THEY

5    SELL YOU THE $1500 SEMINAR.  ONCE YOU'VE TAKEN THE $1500

6    SEMINAR, THAT'S WHERE THEY UP-SELL YOU TO THE $35,000 SEMINAR.

7    SO THIS ISN'T DONALD TRUMP HIMSELF, BUT TRUMP UNIVERSITY.

8            THE COURT:  SO YOU'RE SAYING TRUMP UNIVERSITY IS AN

9    ALL-PURPOSE PUBLIC FIGURE AS OPPOSED TO A LIMITED-PURPOSE

10   PUBLIC FIGURE.  CORRECT?

11           MS. ECK:  RIGHT.

12           THE COURT:  BECAUSE I THINK THAT YOU HAVE TO

13   INTERJECT YOURSELF INTO THE CONTROVERSY IN ORDER TO BE A

14   LIMITED-PURPOSE PUBLIC FIGURE, AND I'M NOT SURE THAT WOULD

15   QUALIFY IN THIS CASE.  I MEAN, THE LAWSUIT DOESN'T COUNT, I

16   DON'T THINK.  A PUBLIC FIGURE FOR A LIMITED PURPOSE

17   VOLUNTARILY INJECTS ITSELF OR IS DRAWN INTO A PARTICULAR

18   PUBLIC CONTROVERSY AND THEREBY BECOMES A PUBLIC FIGURE FOR A

19   LIMITED RANGE OF ISSUES.

20           MS. ECK:  RIGHT.

21           THE COURT:  ARE YOU ARGUING BOTH IN THIS CASE?

22           MS. ECK:  IT'S REALLY WE'RE ARGUING THAT IT'S A

23   PUBLIC FIGURE, NOT JUST LIMITED PUBLIC FIGURE.

24           THE COURT:  SO FOR ALL PURPOSES.

25           MS. ECK:  FOR ALL PURPOSES, BY VIRTUE, YOU KNOW, OF



1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
3  PAULA M. ROACH (254142)
   proach@rgrdlaw.com
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone:  619/231-1058
   619/231-7423 (fax)
6
   ZELDES & HAEGGQUIST, LLP
7  AMBER L. ECK (177882)
   ambere@zhlaw.com
8  HELEN I. ZELDES (220051)
   helenz@zhlaw.com
9  ALREEN HAEGGQUIST (221858)
   alreenh@zhlaw.com
10 625 Broadway, Suite 906
   San Diego, CA  92101
11 Telephone:  619/342-8000
   619/342-7878 (fax)
12
   Attorneys for Plaintiffs
13                      UNITED STATES DISTRICT COURT
14                   SOUTHERN DISTRICT OF CALIFORNIA
15 TARLA MAKAEFF, BRANDON KELLER,   )  No. 10-cv-00940-IEG(WVG)
   ED OBERKROM, PATRICIA MURPHY and )
   SHERI WINKELMANN, on Behalf of   )  CLASS ACTION
16 Themselves and All Others Similarly Situated, )
                                    )  PLAINTIFF/COUNTERDEFENDANT
17                      Plaintiffs,  )  TARLA MAKAEFF'S MEMORANDUM OF
                                    )  POINTS AND AUTHORITIES IN SUPPORT
18          vs.                      )  OF HER MOTION  FOR
                                    )  RECONSIDERATION OF THE COURT'S
19 TRUMP UNIVERSITY, LLC, (aka Trump )  AUGUST 23, 2010 ORDER DENYING HER
   Entrepreneur Initiative) a New York Limited )  MOTION TO STRIKE TRUMP
   Liability Company, and DOES 1 through 50, )  UNIVERSITY'S COUNTERCLAIM
20 inclusive,                       )
                                    )
21                      Defendants.  )
                                    )
22 TRUMP UNIVERSITY, LLC, a New York )  DATE: October 25, 2010
   Limited Liability Company,       )  TIME: 10:30 a.m.
23                                  )  CRTM: 1
                      Counterclaimant, )  JUDGE: Honorable Irma E. Gonzalez
24                                  )
            vs.                      )
25                                  )
   TARLA MAKAEFF, and              )
26 ROES 1 through 10, inclusive,    )
                                    )
27                Counterdefendants. )
28

579161_1

Ex. 8 - 304

1   Amended Class Action Complaint ("Complaint"), Donald Trump is the founder and Chairman of

2   Trump University (¶¶3, 27),[3] and Trump University advertises that its programs are "the next best

3   thing to being [Donald Trump's] Apprentice."  ¶30.  Trump University told consumers they would

4   learn "insider success secrets from Donald Trump," (*id.*), and promised to provide consumers with a

5   "power team" of instructors and mentors "hand-picked by Trump." ¶¶36-37.  Donald Trump's name

6   and photo appear prominently on every known advertisement, on Trump University's website, on

7   huge banners at the seminars, (¶¶30-33, 36-37), and the theme song to his apprentice program

8   ("Money, Money, Money") is played at the beginning of each seminar.  ¶11.  As for corporate

9   structure, Trump University told the public that "Trump University is owned lock, stock and barrel

10  by Mr. Trump – it's his 'baby,' his company."  ¶33.  It is not a coincidence that the only reason that

11  Plaintiffs ever signed up for a Trump University course was because of its close association with

12  Donald Trump.  ¶¶3, 29, 31.

13          These facts are sufficient to show that Trump University is inextricably intertwined with

14  Donald Trump.  Accordingly, the Court should reconsider its opinion that Trump University is not a

15  public figure based on its association with its admitted public figure founder, promoter and

16  namesake, Donald Trump.

17          **2.      Trump University's Advertisements (Including Its Newly
                        Revised Website) Converted It into a Limited-Purpose Public**
18          **Figure**

19          In concluding that Trump University was not a public figure, the Court found that

20  "aggressive advertising alone does not convert a company into a public figure." *Makaeff*, 2010 WL

21  3341638, at *5.  In so finding, the Court relied on *Vegod Corp. v. American Broadcasting Cos*., 25

22  Cal. 3d 763,769 (1979).  However, since *Vegod* was decided in 1979, courts in California and across

23  the country have held that an extensive advertising and/or promotional campaign ***can*** convert a

24  corporation into a public figure.

25

26

27  [3]          All "¶" and "¶¶" references are to the Complaint, filed June 16, 2010 (Docket No. 10).

28

1   on negative statements in a BBB report, including statements that consumers had complained

2   regarding its cancellation practices.  *Id.* at 390-93, 403-04.  There, the court found that, because the

3   company had widely advertised its cancellation policy, it was a limited public figure for alleged

4   defamatory statements about its sales practices.  *Id.* at 404; *see also Mattel*, 28 F. Supp. 2d at 1126,

5   1161-62 (finding MCA to be a public figure for purposes of its defamation claim against Mattel for

6   alleged statements referring to MCA as a "bank robber" which committed a "crime" or "theft"

7   during a "heist" because MCA had sought out publicity for its products and attempted to thrust itself

8   into the dispute regarding its product).

9        Here, Trump University voluntarily injected itself into the public controversy regarding its

10  real estate seminars and engaged the public's attention by widely advertising its services and

11  attempting to counteract consumer complaints that it was a scam.  In fact, Trump University

12  advertised extensively in local media in cities across the United States and online, in local

13  newspapers, on Facebook and on radio, (¶30), Trump University offered free seminars promising

14  two hours of "priceless information," and urging consumers to "learn from the Master – Donald

15  Trump."  *Id.*  Trump University then *held hundreds of free and paid seminars, open to the general*

16  *public nationwide*, in cities from coast to coast, traveling to approximately three dozen cities in three

17  months, and then starting over at the first city again.  When consumers began *complaining* online

18  and to the BBB that these seminars were a scam and a rip-off, Trump University again voluntarily

19  interjected itself in the debate by *changing* its website and advertising to claim that it had a *95-98%*

20  *consumer satisfaction rating*.  ¶13; *see also* Exs. A, B, printouts of Trump University before and

21  after Plaintiff's Complaint was filed.  As in the cases above, even if Trump University did not set out

22  to become a public figure, it became one by engaging in a course of conduct that *generated*

23  *hundreds of consumer complaints, several Attorney General investigations, BBB investigations*

24  *and media attention* by the New York Daily News, L.A. Times and numerous bloggers.  It also did

25  so by engaging in an extensive online campaign through its website and advertising that sought to

26  justify itself as a legitimate company that provided quality education seminars and services with

27  which consumers were satisfied.  *Id.*  Through this conduct, Trump University invited public

28  attention, comment and criticism and thus became a limited purpose public figure.

Ex. 8 - 306

1

2   ZELDES & HAEGGQUIST, LLP
    AMBER L. ECK (177882)
3   ambere@zhlaw.com
    HELEN I. ZELDES (220051)
4   helenz@zhlaw.com
    ALREEN HAEGGQUIST (221858)
5   alreenh@zhlaw.com
    625 Broadway, Suite 906
6   San Diego, CA  92101
    Telephone:  619/342-8000
7   619/342-7878 (fax)

8   ROBBINS GELLER RUDMAN
      & DOWD LLP
9   RACHEL L. JENSEN (211456)
    rjensen@rgrdlaw.com
10  PAULA M. ROACH (254142)
    proach@rgrdlaw.com
11  655 West Broadway, Suite 1900
    San Diego, CA  92101
12  Telephone:  619/231-1058
    619/231-7423 (fax)

13  Attorneys for Plaintiffs and the Proposed Class

14                 UNITED STATES DISTRICT COURT

15               SOUTHERN DISTRICT OF CALIFORNIA

16  TARLA MAKAEFF, BRANDON KELLER,  )   No. 10-cv-00940-IEG(WVG)
    ED OBERKROM, and PATRICIA MURPHY, )
17  on Behalf of Themselves and All Others  )   CLASS ACTION
    Similarly Situated,                              )
18                                                        )   SECOND AMENDED CLASS ACTION
                                                          )   COMPLAINT
19                          Plaintiffs,            )
                                                          )
20          vs.                                        )
                                                          )
21  TRUMP UNIVERSITY, LLC, (aka Trump  )
    Entrepreneur Initiative) a New York Limited  )
22  Liability Company, DONALD J. TRUMP, and )
    DOES 1 through 50, inclusive,           )
23                                                        )
                            Defendants.       )
24  _____ )   JURY TRIAL DEMANDED

25

26

27

28

590148_1

1    best of the best and we know what works.  If you think you have what it takes to be
2    my next apprentice, prove it to me.

     We've trained thousands of real estate investors over the years and we know you will
3    be most successful when you work with a partner. . . .

4        If you're serious about making money and safeguarding your future, ***learn to
     invest in real estate.  Trump University will teach you how***.  We'll give you the best
5    ***training*** and the confidence to succeed.  If you think you've got what it takes to be
     my next Apprentice, come prove it to me and my team.

6    The letter closes with "See you at the top!"  And, it is signed, "Donald J. Trump, Chairman,
7
     Trump University."

8        (h)    Donald Trump wrote 387 blogs posted on Trump University's website, and
9
     stated that he intended to be actively involved with Trump University. Donald Trump wrote:
10
11   Trump University ***grew out of my desire to impart my business knowledge,
     accumulated over the years***, and my realization that there is a huge demand for
     practical, convenient education that teaches success.
12
13   ***I want the people*** who go to Trump University ***to succeed, and I plan to do my part
     to help them. I'm not just putting my name on this venture; I plan to be an active
     presence*** in the curricula. The website, www.trumpuniversity.com, will include such
14   features as ***"Ask Mr. Trump," in which I answer your questions***; the ***blog*** you're
     reading now; ***video clips of me***; and more. ***My words, ideas, and image will also be
15   woven into the courses we create***. The reason I'm playing such an active role in
     Trump University is that I truly believe in the power of education . . . . [T]he people
16   who go to Trump University want to be successful, and ***I'm on their side***.[5]

17       In another blog, Trump wrote, "***I have to believe in whatever I put my name on***, and it has to
18   reflect who I truly am. To do otherwise would be a disservice to me, my loyal customers, and
19   prospective customers."[6]

20       (i)    Donald Trump personally financed Trump University;

21       (j)    Donald Trump personally reviewed Trump University's financials every
22   month with Trump University President, Michael Sexton;

23

24   _____

25   [5]    http://www.trumpinitiative.com/blog/post/2005/06/why-i-started-trump-university-a-passion-
26   for-learning.cfm (last visited 10-18-10).

27   [6]    http://www.trumpinitiative.com/blog/post/2005/06/on-being-a-brand-whats-in-a-nam e.cfm
     (last visited 10-18-10)

28

1          (k)     Donald Trump personally reviewed all print, newspaper and direct mail

2    advertisements before they went out;

3          (l)     Trump University presenters told consumers that Donald Trump hand-picked

4    the Trump University instructors and mentors;

5          (m)     According to insiders, Donald Trump backed Trump University 100% and

6    intended to appear at a fall 2010 event; and

7          (n)     Donald Trump held periodic live online Q&A Sessions with Trump

8    University students, according to Michael Sexton's interview with *Business Week*. Also, according

9    to the Trump University website, twice a month Donald Trump would personally choose and answer

10   the best questions from Trump members:

11          ***Ask Donald Trump: Have you ever wanted to ask Donald Trump a***
           ***question? Now's your chance! Mr. Trump loves hearing from Trump University***
12         ***members***, especially members with great questions!  But as you can probably guess,
           he's got a hectic schedule.  That means Mr. Trump only has time for the most
13         interesting and direct questions.  ***Twice a month, he will choose the best questions***
           ***and respond in true Donald Trump fashion***.  Look for answers to your questions (if
14         answered) and previous questions and answers posted on the Trump Blog.

15   (Last visited 5/4/10).

16

17   

18

19

20

21

22

23

24

25

26

27

28

19.     Plaintiffs bring this class action on behalf of themselves and all other similarly-situated consumers who purchased Seminars, workshops, mentorships, retreats and/or programs (collectively "Seminars") from Trump University throughout the United States, asserting claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL" or "§17200"); the Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. ("CLRA"); the False Advertising Law, Cal. Bus & Prof. Code §17500, *et seq*. ("FAL" or "17500"); Breach of Contract; Breach of the Covenant of Good Faith and Fair Dealing; Money Had and Received; Negligent Misrepresentation; Fraud; False Promises; and §39 of New York General Business Law ("Deceptive Acts and Practices").  Plaintiffs seek damages and equitable relief on behalf of the Class, which relief includes, but is not limited to, the following: refunding Plaintiffs and class members the full amount paid for Trump University Seminars; an order enjoining Trump from falsely marketing and advertising its Seminars; costs and expenses, including attorneys' fees and expert fees; and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiffs and the Class.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1332 and 1367, because the Plaintiffs reside in various states, including California, Missouri, and New York,  and are therefore diverse from Defendants Trump University and Donald Trump who reside in New York.  The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

21.     This Court also has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named Plaintiffs and every member of the Class, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and members of the Class reside across the United States and are therefore diverse from Trump University and Donald Trump.

22.     This Court has personal jurisdiction over Trump University and Donald Trump because they are authorized to conduct business in California, they have significant minimum contacts with this State, and/or they otherwise intentionally availed themselves of the laws and

1   markets of California through the promotion, marketing, and advertising of Trump University

2   Seminars in this State and on the Internet to consumers in California.

3       23.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2), because a

4   substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

5   Venue is also proper under 28 U.S.C. §1391(a)(3), because Defendants are subject to personal

6   jurisdiction in this District as they transact a substantial amount of business in this District. Indeed,

7   until recently, Trump University has offered numerous Seminars in San Diego, California. Plaintiffs

8   have filed affidavits showing that this action has been commenced in a proper county pursuant to

9   Cal. Civ. Code §1780(c).

10                         **PARTIES**

11       24.     **Plaintiff Tarla Makaeff –** Plaintiff Tarla Makaeff resides in Corona Del Mar,

12   California. During the class period, in early August 2008, Plaintiff Makaeff was introduced to

13   Trump University through a friend who attended the free introductory seminar and invited her to

14   attend the three-day Trump University "Fast Track to Foreclosure Training" workshop for

15   approximately $1,495. During the three-day workshop, the attendees, including Plaintiff Makaeff,

16   were told to raise their credit card limits so they could enter into "real estate transactions." However,

17   at the end of the session, Trump University told Plaintiff Makaeff and the other seminar attendees to

18   use that credit to purchase an additional Trump "Gold" seminar for $34,995. Based on Trump

19   University's numerous misrepresentations, on or about August 10, 2008, Plaintiff Makaeff enrolled

20   in Trump University's "Trump Gold Elite" Program ("Trump Gold Program") for $34,995, plus the

21   variable APR finances charges, interest fees, and late fees she has to pay her credit card company.

22   Plaintiff Makaeff ultimately spent nearly ***$60,000*** on Trump University Seminars, and/or Seminars

23   related to or endorsed by Trump University, over the course of one year.

24       25.     **Plaintiff Brandon Keller –** Plaintiff Brandon Keller is a San Diego resident who

25   resides in Del Mar, California. During the class period, in the fall of 2009, Plaintiff Keller received

26   an email advertisement about Trump University and, as a result thereof, on November 18, 2009, he

27   attended the free introductory real estate seminar at the Marriott in La Jolla, California. At the free

28   introductory seminar, Plaintiff Keller was lured by the Trump University speaker into purchasing a

31.     The true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, are presently unknown to Plaintiffs who therefore sue these defendants by fictitious names.  Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained.  Each of the Doe Defendants is responsible in some manner for the conduct alleged herein.

### DEFENDANTS' UNLAWFUL CONDUCT

32.     Trump University is an "education" company owned and founded by real estate tycoon Donald J. Trump, as part of the Trump Organization.  It offers courses in real estate, asset management, entrepreneurship and wealth creation.  It is not an accredited University.

33.     Trump University lures consumers in with a free introductory Seminar, which turns out to be nothing more than an infomercial used to "up-sell" and persuade students to purchase its $1,495 "one year apprenticeship" course. If students purchase the $1,495 course, Trump University continues using misleading, fraudulent and predatory practices to convince students to purchase Trump University's $35,000 "Gold" course.  Even then, after investing nearly $36,500, students still do not receive the information or training they were promised. The three "tiers" to the Trump University program are as follows:

**First Tier: the Free Introductory Course**

34.     Trump University advertises extensively in local media and online, such as its website, online local newspapers, on Facebook, and radio for "Free" introductory courses, which take place in cities across the country.  In marketing the Trump University program, Donald Trump claims: "I'm going to give you 2 hours of access to one of my amazing instructors AND priceless information . . . all for FREE."[7]  An advertisement in the L.A. Times, for example, quoted Donald Trump as saying that "investors nationwide are making millions in foreclosures . . . and so can you!"

---

[7]     David Lazarus, *Trump Spins in Foreclosure Game*, L.A. Times, Dec. 12, 2009 http://www.latimes.com/business/la-fi-lazarus12dec12,0,7835610.column.

1  you lost a lot of your 401k investment in the market?  How many of you are retired or want to retire?

2  How many of you want to leave a legacy or property to your kids?"

3       36.  The speaker induces the audience to trust in the Trump name and "family" by

4  walking through the history of the Trump Organization and Donald Trump's "humble beginnings."

5  He tells the audience that 76% of all millionaires are created from real estate – that "anyone can do

6  it," and that "it's not easy, but it's simple if you know what you're doing, and we'll teach you what

7  you need to know."  He states that the mission of Trump University is to "train, educate and mentor

8  entrepreneurs on achieving financial independence through real estate investing."

 

16       37.  The speaker emphasizes that on the television show, "The Apprentice," Mr. Trump

17  could only work one-on-one with one person a year, so he created this University – not to make

18  money for himself, but so that he could teach others.  With this apprenticeship program, the speaker

19  claims, "Mr. Trump takes you through an entire apprenticeship for one year."  The speaker

20  emphasizes that "***Trump University is owned, lock, stock and barrel by Mr. Trump – it's his 'baby,'***

21  ***his company***, designed to help him accomplish his goal of leaving a legacy."  The presentation plays

22  on consumers' reliance on the Trump name, Trump's Apprentice television show, the Trump

23  reputation, Trump's wealth and Trump real estate expertise:

24

25

26  _____

27  12  These and the following slides are from the free online introductory Trump seminar.

28



1   ZELDES & HAEGGQUIST, LLP
    AMBER L. ECK (177882)
2   ambere@zhlaw.com
    HELEN I. ZELDES (220051)
3   helenz@zhlaw.com
    ALREEN HAEGGQUIST (221858)
4   alreenh@zhlaw.com
    625 Broadway, Suite 906
5   San Diego, CA  92101
    Telephone:  619/342-8000
6   619/342-7878 (fax)

7   ROBBINS GELLER RUDMAN
      & DOWD LLP
8   RACHEL L. JENSEN (211456)
    rjensen@rgrdlaw.com
9   655 West Broadway, Suite 1900
    San Diego, CA  92101
10  Telephone:  619/231-1058
    619/231-7423 (fax)

11
    Attorneys for Plaintiffs and Proposed Class
12
                    UNITED STATES DISTRICT COURT
13
                 SOUTHERN DISTRICT OF CALIFORNIA
14
    TARLA MAKAEFF, et al., on Behalf of      )   No. 3:10-cv-00940-IEG(WVG)
15  Themselves and All Others Similarly Situated, )
                                              )   CLASS ACTION
16                          Plaintiffs,       )
                                              )   PLAINTIFFS' OPPOSITION TO
17         vs.                                )   DEFENDANT DONALD J. TRUMP'S
                                              )   MOTION TO DISMISS SECOND
18  TRUMP UNIVERSITY, LLC, et al.,            )   AMENDED COMPLAINT UNDER RULES
                                              )   12(b)(6) AND 9(b)
19                          Defendants.       )
                                              )   DATE: March 21, 2011
20  ──────────────────────────────────────   )   TIME:  10:30 a.m.
                                                  CTRM: 1
21                                                JUDGE: Hon. Irma E. Gonzalez

22

23

24

25

26

27

28

611844_1

1   personally teach how to make money in real estate, that they would receive the "best of the best" real

2   estate training, and rest assured, they would have ongoing support from Donald Trump and his team of

3   experts.  ¶18(g).  Unfortunately, all of this was far from the truth.

4          To be clear, Donald Trump personally and directly participated in the scam.  He personally

5   participated in a misleading advertising campaign about the nature of Trump University, writing

6   blogs for the Trump University website, promising Trump University students that, if they purchased

7   Trump University seminars, they would receive his business and real estate knowledge, imparted by

8   teachers and mentors hand-picked by him, that he was committed to personally "do [his] part" to

9   help Trump University students succeed, and that he would play an active role in Trump University

10  and be an active presence in the seminars and curricula.  ¶¶18(h), 59(h).  Further, Donald Trump

11  personally approved all written Trump University advertisements.  ¶¶18(e), 59(e).  Donald Trump

12  also represented that he was available to field questions from Trump University students (¶¶18(n),

13  59(o)), and promised that his words, ideas and image would be part of the courses (¶¶18(h), 59(h)).

14  *Id.*  Donald Trump sent letters and emails, complete with his photo and signature promising that "no

15  course offers the same depth of insight, experience and support as the one bearing my name . . . .

16  My hand-picked instructors and mentors will show you how to use real estate strategies to . . . start

17  profiting today."  ¶18(f).  Donald Trump also promised "ongoing support from your own Trump

18  Team of Experts," and Donald Trump told potential students: "***I'm ready to teach you how***" to make

19  money in real estate.  ¶¶18(d) & (f).[2]

20         In the $1,500 seminar, to persuade students to sign up for the $35,000 seminar, Donald

21  Trump sent each student a personalized letter, with the Trump logo "From the Office of Donald J.

22  Trump," promising them, "***I*** want to teach you how to make money in real estate."  ¶18(g).  "***My***

23  ***team*** at Trump University is filled with real estate experts . . . proven winners.  We're the best of the

24  best and we know what works."  *Id.*  "Trump University will teach you how" to invest in real estate.

25  *Id.*  "***We'll give you*** the best training."  *Id.*  These representations by Donald Trump were misleading

26  and actionable.  Consumers were devastated to learn later that what they had paid up to $35,000 for

27  ───────────────

28  [2]      Here, as elsewhere, emphasis is added and citations are omitted, unless otherwise noted.

Ex. 8 - 315

Trump University grew out of *my desire to impart my business knowledge,* accumulated over the years, and my realization that there is a huge demand for practical, convenient education that teaches success.

I want the people who go to Trump University to succeed, and *I plan to do my part to help them. I'm not just putting my name on this venture; I plan to be an active presence in the curricula.* The website, www.trumpuniversity.com, will include such features as "Ask Mr. Trump," in which I answer your questions; the blog you're reading now; video clips of me; and more. *My words, ideas, and image will also be woven into the courses we create.* The reason I'm playing such an active role in Trump University is that I truly believe in the power of education . . . . [T]he people who go to Trump University want to be successful, and *I'm on their side*. ¶¶18(h), 59(h).

In another blog, Trump wrote, "*I have to believe in whatever I put my name on*, and it has to reflect who I truly am. To do otherwise would be a disservice to me, my loyal customers, and prospective customers." These blogs were written by Donald Trump.  ¶59(i).

(h)    Donald Trump personally financed Trump University. ¶¶18(i), 59(j).

(i)    **Donald Trump personally reviewed Trump University's financials** every month with Trump University President, Michael Sexton. ¶¶18(j), 59(k).

(j)    **Donald Trump represented that he hand-picked the Trump University instructors and mentors**.  ¶¶18(l), 59(m).

(k)    **Donald Trump backed Trump University 100%** and intended to appear at a fall 2010 event, according to insiders.  ¶¶18(m), 59(n).

(l)    **Donald Trump claimed he would hold live online Q&A Sessions with Trump University students** and that twice a month, he would personally choose and answer the best questions from Trump members. ¶¶18(n), 59(o).  However, these statements were misleading and/or false, because if he did this at all, it was not frequently.

Contrary to Defendant's self-serving assertions, Plaintiffs' factual allegations are more than sufficient to demonstrate Donald Trump's *own* actions giving rise to personal liability.

## III.    APPLICABLE LEGAL STANDARD FOR MOTIONS TO DISMISS

As this Court previously held: "The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable interferences from them in favor of the nonmoving party."  Dkt. No. 33 ("10/12/10 Order") at 3 (citing *Cahill v. Liberty Mut. Ins. Co.*,

1   committed on behalf of the corporation." *United States Liab. Ins.*, 1 Cal. 3d at 595 (cited in Def's

2   Mem. at 5).  Donald Trump also cites *Michaelis*, 61 Cal. App. 4th at 684; however, *Michaelis* held

3   that directors or officers are personally liable for torts of the corporation if "they participate in the

4   wrong or authorize or direct it be done."  *Id.*  Otherwise, an officer or director "could inflict injuries

5   upon others and escape liability behind the shield of his or her representative character, even though

6   the corporation might be insolvent or irresponsible."  *Id.* at 685 (citing *Frances T.*, 42 Cal. 3d at

7   505).[5]  As in *Michaelis*, Donald Trump is trying to, but cannot successfully, escape liability by

8   hiding behind the shield of Trump University – a corporation which was a scam and, according to

9   Plaintiffs' investigation, may soon be insolvent because of its misconduct.  However, such a

10  consequence does not leave Plaintiffs and the Class without recourse; in accordance with a long line

11  of authorities, Donald Trump may properly be held liable for the scam, too.

12       To be clear, Plaintiffs are not alleging that Donald Trump is liable merely because he is an

13  officer or director of Trump University.  Plaintiffs allege Donald Trump is personally liable because

14  he personally made misrepresentations, and participated in or authorized Trump University's

15  misrepresentations and wrongful conduct.  Defendant asks: "What specifically did Mr. Trump

16  personally do to harm any of the Plaintiffs?"  Def's Mem. at 7.  He created, funded, participated in,

17  and benefited from this scam that cost Plaintiffs and the Class millions of dollars collectively –

18  Trump University.  As a consequence of his and Trump University's marketing and advertising

19  campaign that relied heavily on the name, voice, and likeness of Donald Trump, Plaintiffs and other

20  Class Members were harmed by paying $1,500 to $35,000 for these real estate seminars that simply

21  did not deliver the services that were promised.

22  Specifically, Donald Trump's words and image were plastered all over the website, he sent

23  letters and emails to potential and actual Trump University students and potential students, complete

24

25  [5]       Notably, *Michaelis* held that the defendant Anthony Benavides, president and majority owner

26  of a construction corporation, was personally liable to the plaintiff in an action alleging negligent
    construction of a patio and driveway at the plaintiff's home, even though he did not physically do the

27  construction of the driveway and patio, because of his "participation" in the wrongdoing – he
    directed the construction and made the decisions to use cheaper materials and construction methods

28  which resulted in the defects.  61 Cal. App. 4th at 686.

1  discussed herein, Plaintiffs properly allege the remaining alleged violations of law, including the

2  CLRA and N.Y. Gen. Bus. Law §349.  The UCL unlawful counts must stand.

3      Defendant's only argument is that Plaintiffs have failed to specify unlawful conduct by

4  Donald Trump.  Def's Mem. at 7, 10-11.  However, as detailed above, Plaintiffs have alleged that

5  Donald Trump personally and directly participated in the unlawful conduct alleged in the SAC.  *See*

6  *People v. First Fed. Credit Corp.*, 104 Cal. App. 4th 724, 734-35 (2002) (officer or director is

7  personally liable if he was aware of false advertising or other wrongful conduct, was in a position of

8  control, yet permitted it to continue).  ==Specifically, Donald Trump made numerous==

9  ==misrepresentations to Plaintiffs and other Class Members in letters, emails and on the Trump==

10  ==University website, Donald Trump personally approved advertisements that were false or==

11  ==misleading, and Donald Trump wrote blogs regarding Trump University that were misleading,==

12  ==fraudulent, and deceitful.  This is more than sufficient.==

13      In addition, Plaintiffs allege that Trump University advertised using student testimonials

14  which were misleading, and in some cases, completely fabricated by Trump University employees.

15  ¶¶17, 139.  Plaintiffs allege that Donald Trump personally reviewed and approved all Trump

16  University written advertising.  ¶¶18(k), 59(l).  As such, these false and misleading testimonials also

17  form the basis of a UCL claim against Donald Trump under the "unlawful" prong.  *First Fed. Credit*,

18  104 Cal. App. 4th at 734-35.  Plaintiffs' UCL claims based on the "unlawful" prong of the statute

19  clearly must stand.

20          **2.      Plaintiffs Have Alleged Unfair Acts or Practices**

21      As this Court is aware, there is a split in authority concerning the definition of unfair under the

22  UCL.  10/12/10 Order at 9 (citing *Bardin v. DiamlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260-61

23  (2006)).  However, as this Court previously found in regard to Trump University, this split in authority

24  is not a barrier to Plaintiffs' claims because Plaintiffs have stated a claim against Donald Trump under

25  the "unfair" prong, regardless which of the two tests is applied.  *Id.* at 9-10.

26      Here, Donald Trump's conduct is unfair because he made misrepresentations to consumers

27  about Trump University as specified in the SAC, and he violated common law and statutory law,

28  including California Civil Code §§1572 (actual fraud), 1573 (constructive fraud), 1709 and 1710

1   for failing to plead the exact language of every statement.[7]   *Committee on Children's Television*, 35

2   Cal. 3d at 217.  A violation of the UCL's fraudulent prong is also a violation of the False

3   Advertising Law.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  As discussed above, because

4   Plaintiffs properly plead a violation of the UCL's "fraudulent" prong, they also properly plead a

5   violation of the FAL and vice versa.

6          As the Court found that Plaintiffs have adequately alleged violations of the FAL against

7   Trump University, Plaintiffs likewise set forth enough facts in the SAC to state a plausible false

8   advertising claim as to Donald Trump.  *See* ¶¶18, 59, 112-115.

9          Donald Trump also erroneously asserts that Plaintiffs "fail to identify any specific statements

10  attributed to Mr. Trump."  Def's Mem. at 11.  A quick review of the SAC reveals this statement to

11  be untrue.  In fact, Plaintiffs allege specific statements made by Donald Trump on the Trump

12  University website, in Trump University advertisements, in standardized sales presentations, in

13  blogs posted on the Trump University website, in mass letters and emails, and specific statements

14  made by Donald Trump in Trump University advertisements which he reviewed and approved.  *See*

15  ¶¶18, 59.  Indeed, Plaintiffs even included a screen shot of an email from Donald Trump to Plaintiff

16  Brandon Keller with Donald Trump's signature at the bottom, and Donald Trump's representation:

17  "I want you!  76% of the world's millionaires made their fortunes in real estate.  Now it's your turn.

18  My father did it, I did it, and now *I'm ready to teach you how to do it too*."  ¶59(d).

19         Moreover, Donald Trump is liable for violation of the FAL because he was aware of the false

20  advertising campaign concerning Trump University, reviewed and approved it, and permitted it to

21  continue in violation of §17500.  *See* ¶¶18(e), 59(e).  As the Court held in *First Fed. Credit.*, 104

22  Cal. App. 4th at 734-35, a principal of corporation is liable for violation of the false advertising law

23  even though he does not physically send out deceptive advertisements so long as he was aware of the

24  false advertising, was in a position of control, yet permitted the false advertising to continue.  *See id.*;

25  _____

26  [7]     Plaintiffs in *Committee on Children's Television, Inc. v. General Foods Corp.* alleged
    thousands of misrepresentations in various media.  The court held that a complaint which set out

27  each advertisement verbatim and specified the time, place, and medium, would have provided less
    effective notice and been less useful in framing the issues than would be a shorter, more generalized

28  version.  35 Cal. 3d 197, 217 (1983).

No. 11-55016

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

TARLA MAKAEFF, Individually and on Behalf of All Others Similarly Situated,

Plaintiff-Counter-Defendant-Appellant,

vs.

TRUMP UNIVERSITY, LLC,

Defendant-Counter-Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of California
No. 3:10-cv-00940-IEG(WVG)
The Honorable Irma E. Gonzalez

## PLAINTIFF-COUNTER-DEFENDANT-APPELLANT'S OPENING BRIEF

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIC ALAN ISAACSON (120584)
RACHEL L. JENSEN (211456)
AMANDA M. FRAME (253603)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiff-Counter-Defendant-Appellant

==The basic theme of Trump University's print ads in major papers such as the *Los Angeles Times* was replicated across the Internet.  The complaint presents several examples, showing how Donald Trump promoted Trump University as his own personal operation.   One, telling consumers they can "Learn from the Master," portrayed Donald Trump speaking in the first-person as Trump University's Chairman, declaring that "I can turn anyone into a successful real estate investor":==



ER0266(CR10:¶30).

==Another typical Trump University Internet ad said "It's the next best thing to being his Apprentice," picturing Donald Trump as it offered the opportunity through his Trump University to "Learn the Trump System of Real Estate Investing" and to "Discover Donald Trump's strategies for wealth creation":==



ER0266(CR10:¶30).

Yet another promotional advertisement, styled as "A Private, Limited-Time Only Invitation from Trump University," promised "Insider Success Secrets from Donald Trump":



ER0266(CR10:¶30).

The point of these and other ads was clearly to tie Trump University directly to Donald Trump's conspicuous public persona, and to trade on his image as a public figure.



1

2  ROBBINS GELLER RUDMAN
   & DOWD LLP
3  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
4  THOMAS R. MERRICK (177987)
   tmerrick@rgrdlaw.com
5  655 West Broadway, Suite 1900
   San Diego, CA  92101
6  Telephone:  619/231-1058
   619/231-7423 (fax)
7
   ZELDES & HAEGGQUIST, LLP
8  AMBER L. ECK (177882)
   ambere@zhlaw.com                    YUNKER & SCHNEIDER
9  HELEN I. ZELDES (220051)            David K. Schneider (139288)
   helenz@zhlaw.com                    dks@yslaw.com
10 ALREEN HAEGGQUIST (221858)          655 W. Broadway, Suite 1400
   alreenh@zhlaw.com                   San Diego, CA 92101
11 625 Broadway, Suite 906            Telephone: 619/233-5500
   San Diego, CA  92101               619/233-5535 (fax)
12 Telephone:  619/342-8000
   619/342-7878 (fax)
13                                     Attorneys for Defendants
   Attorneys for Plaintiffs and Proposed Class
14

15                   UNITED STATES DISTRICT COURT

16                 SOUTHERN DISTRICT OF CALIFORNIA

17 TARLA MAKAEFF, et al., on Behalf of   )  No. 3:10-cv-00940-IEG(WVG)
   Themselves and All Others Similarly Situated, )
18                                        )  CLASS ACTION
                Plaintiffs,              )
19                                        )  JOINT DISCOVERY PLAN
          vs.                            )
20                                        )  CMC Date:   October 7, 2011
   TRUMP UNIVERSITY, LLC, et al.,        )  Time:       7:00 a.m.
21                                        )  Judge:      Hon. William V. Gallo
                Defendants.              )  Location:   Telephonic
22 _____ )

23

24

25

26

27

28

648085_1

1   Pursuant to Federal Rule of Civil Procedure 26(f) and this Court's August 15, 2011 Order

2   following the Early Neutral Evaluation (Dkt. No. 80), the parties, by and through their respective

3   counsel of record, respectfully submit the following joint discovery report.  The parties' counsel met

4   in person to discuss the items required under Rule 26(f) and this Court's August 15, 2011 Order on

5   August 31, 2011.

6   The parties have attempted to reach agreement on how best to manage this case and hereby

7   set forth the matters on which they agree and express their respective views where they differ.

8   **I.       PLAINTIFFS' STATEMENT OF THE CASE**

9   This is a putative class action brought by consumers who enrolled in Trump University real

10   estate investing seminars hoping to "Learn from the Master" Donald Trump, but instead "learned a

11   different lesson than they bargained for."  Order Granting in Part and Denying in Part Defendant

12   Donald Trump's Motion to Dismiss, dated May 16, 2011 (Dkt. No. 69) ("Trump Order"); Order:

13   (1) Granting in Part and Denying in Part Trump University's Motion to Dismiss; and (2) Denying

14   Trump University's Motion to Strike, dated May 16, 2011 (Dkt. No. 70) ("University Order").

15   Trump University markets itself as a university driven by the mission to "train, educate and

16   mentor entrepreneurs on achieving financial independence through real estate investing."  It is

17   anything but.  In fact, rather than serving its students as a university or college, Trump University is

18   more like an infomercial, designed to sell Trump seminars and products, instead of providing

19   training in real estate.  Trump University and Donald Trump lure consumers in with Donald Trump's

20   name and reputation, and promise students mentors and experts "hand-picked by Donald Trump."

21   But as these students quickly find out, the primary lesson Trump University teaches its students is

22   how to spend more money buying more Trump University seminars.  The purpose of the free

23   introductory seminar is to get people to sign up for the $1,495 seminar; the purpose of the $1,495

24   seminar is to get people to sign up for the $35,000 Trump University Gold program, and the purpose

25   of the Trump Gold Program is to get people to sign up for additional seminars, products and books.

26   Donald Trump, as founder and Chairman of Trump University, is personally liable due to his

27   public misrepresentations and omissions about Trump University and his participation in the

28   misconduct.  As the face, voice and brand of Trump University, Donald Trump appeared on the

1   Trump University website and in advertisements, and on huge banners at the seminars.  The website

2   contained headings such as "Learn from the Master," and "Are YOU My Next Apprentice?  Prove it

3   to me!"  In some instances, the advertisements took the form of personal letters signed by Donald

4   Trump himself.  In one letter Trump stated: "I founded Trump University back in 2005 to teach go-

5   getters how to succeed in real estate.  We're the best of the best and we know what works."  In

6   another letter, Trump stated: "My handpicked instructors and mentors will show you how to use real

7   estate strategies. . . ."  However, Trump and his namesake failed to provide the services promised

8   and instead pocketed the tens of thousands of dollars Plaintiffs spent on the Trump seminars.

9           Plaintiffs brought this putative class action to recover the ill-gotten gains from Trump and his

10   so-called University on behalf of both themselves and all those similarly situated nationwide.

11   **II.    DEFENDANTS' STATEMENT OF THE CASE**

12           Defendant Trump University, LLC ("Trump University") is a New York for-profit company

13   which offered self-improvement seminars, training, mentoring and other programs for people

14   interested in learning about — and hopefully profiting from — real estate and financial investment.

15   It provided both online and in person programs nationwide, with several levels of involvement, cost,

16   and commitment available to participants.

17           The four named plaintiffs are a diverse group located by class counsel after a nationwide

18   publicity blitz and recruiting effort.  Plaintiffs' current claim is that the programs provided no value

19   to participants, and plaintiffs attack Trump University's business practices.  Plaintiffs filed their

20   claim as a putative "nationwide class action" on behalf of every person who ever participated in a

21   Trump University program — regardless of which programs were attended, or how many were

22   attended, or where they were taught, or when they were taught, or what they were taught, or who

23   taught them, or how much they paid, or what their background was, or what result they achieved, or

24   whether they were ultimately satisfied with what they learned.  Plaintiffs seek to recover all fees paid

25   by any person who ever participated in the program at any time anywhere in the country, despite the

26   fact that the vast majority of participants actually enjoyed and benefited from their experience.  In

27   fact, of all the participants who provided written evaluations, 95% of them — including two

28

1  voluntarily refunded the full amount.  Since then, Mr. Keller has signed up for and attended yet more

2  programs, even <u>after</u> joining in this lawsuit.

3       Plaintiff **Ed Oberkrom** attended Trump University programs in Missouri with a partner –

4  with each paying $12,500.  He evidently never demanded a refund, nor attempted any real estate

5  transactions.  Meanwhile, his partner has taken still more Trump University programs and rated them

6  "excellent."

7       Finally, plaintiff **Patricia Murphy** — now living in New York — has never attended any

8  Trump University program anywhere.  Presumably she will soon be dropped from the case.

9       The defenses against the putative class include, among other reasons, a total lack of

10  commonality among Trump University attendees.  Indeed, the only truly common characteristic of

11  virtually all Trump University participants is fatal to the putative class: that almost all invariably

12  enjoyed and approved of the company's programs.  Plaintiffs also purportedly — and improperly —

13  seek a "nationwide" certification on claims limited to California, including their UCL and CLRA

14  causes of action.

15  **III.    DISCOVERY PLAN**

16       **A.     Initial Disclosures Pursuant to Rule 26(a)(1)**

17       Pursuant to the Court's August 15, 2011 Order, the parties will serve their initial disclosures

18  on September 19, 2011.

19       **B.     Anticipated Subjects of Discovery**

20            **1.    Plaintiffs' Proposal**

21                 **a.     Subjects on Which Discovery Is Needed**

22  Plaintiffs intend to seek discovery regarding, among other things: (i) Defendant Donald

23  Trump's involvement and role in Trump University and misrepresentations and omissions about

24  same; (ii) misrepresentations and omissions concerning Trump University to consumers, including

25  all contracts, advertisements, blog postings, websites, and marketing materials; (iii) the credentials of

26  instructors and mentors, the selection process for same, and all contracts with instructors and

27  mentors; (iv) scripts, playbooks, forms, and all other written materials used in Trump University

28  workshops, seminars, and courses, or used by Trump University instructors, representatives, or

648085_1                                          - 4 -

1   **VIII.   CATEGORIES OF DOCUMENTS**

2   **A.        Plaintiffs' Proposal**

3   Plaintiffs believe that key categories of documents will include, but are not limited to the

4   following:

5   1.        Class list of all persons who have taken Trump University courses or seminars,

6   description of the course taken, dates of the course, and their contact information;

7   2.        A list or documents evidencing amount paid by every person who has taken Trump

8   University courses or seminars;

9   3.        Documents regarding any and all partial or full refunds given for Trump University

10  seminars or courses, including whether the refund was awarded by the consumer's credit card

11  company or Trump University, and the basis or reason for the refund;

12  4.        Documents demonstrating Defendant Donald Trump's involvement and role in

13  Trump University and misrepresentations and omissions about same;

14  5.        Documents containing representations concerning Trump University and its products

15  and services to consumers, including but not limited to, all contracts, advertisements, blog postings,

16  websites, and marketing materials;

17  6.        All evaluations completed by students in regard to Trump University courses or

18  seminars;

19  7.        Documents demonstrating the credentials of instructors and mentors, the selection

20  process for same, and all contracts with instructors and mentors;

21  8.        Scripts, Powerpoint presentations, playbooks, forms, and all other written materials

22  used in Trump University workshops, seminars, and courses, or used by Trump University

23  instructors, representatives, or mentors;

24  9.        Documents demonstrating Trump University's credentials and public statements

25  concerning same;

26  10.       Summaries, memoranda, spreadsheets, reports, telephone call logs or audio

27  recordings regarding customer complaints and/or requests for refunds and communications with

28  Trump University students;

648085_1

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
625 Broadway, Suite 906
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
ambere@zhlaw.com
helenz@zhlaw.com
alreenh@zhlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
THOMAS R. MERRICK (177987)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
rjensen@rgrdlaw.com
tmerrick@rgrdlaw.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, Inclusive,<br><br>        Defendants. | Case No.:  3:10-CV-00940-IEG(WVG)<br><br><u>CLASS ACTION</u><br><br><mark>PLAINTIFFS' RESPONSES TO DEFENDANT DONALD J. TRUMP'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS</mark><br><br>Judge:    Honorable Irma E. Gonzalez<br>Courtroom: F, First Floor<br><br><br><u>JURY TRIAL DEMANDED</u> |

PROPOUNDING PARTY:    DEFENDANT DONALD J. TRUMP
RESPONDING PARTIES:    PLAINTIFFS TARLA MAKAEFF, BRANDON KELLER,
                       ED OBERKROM AND PATRICIA MURPHY
SET NUMBER:            ONE

1   Plaintiffs also object to this interrogatory on the grounds that it calls for an expert

2   opinion, legal conclusion and/or legal statement of the law.

3   Plaintiffs also object on the grounds that such contention discovery is premature and

4   presumptively improper given that discovery in this case has only just begun.   Plaintiffs'

5   investigation into the issues and witnesses pertaining to this action is still continuing.

6   INTERROGATORY NO. 2:

7   Please state all facts which support plaintiffs contention that Donald J. Trump

8   personally made misrepresentations, including each and every alleged misrepresentation, the

9   date of each, location of each purported misrepresentation, and date each plaintiff relied on the

10  misrepresentation.

11  RESPONSE TO INTERROGATORY NO. 2:

12  Plaintiffs specifically incorporate its General Objections set forth above as though fully

13  set forth herein to the extent applicable to this interrogatory.   Plaintiffs object to this

14  interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information

15  in Defendants' possession, custody or control.

16  Plaintiffs also object to this interrogatory on the grounds that the term "personally" is

17  vague and ambiguous.

18  Plaintiffs further object to this interrogatory on the grounds that it calls for an expert

19  opinion, legal conclusion and/or legal statement of the law.

20  Plaintiffs also object on the grounds that such contention discovery is premature and

21  presumptively improper given that discovery in this case has only just begun.   Plaintiffs'

22  investigation into the issues and witnesses pertaining to this action is still continuing.

23  Subject to and without waiving the foregoing General and Specific Objections,

24  Plaintiffs respond as follows: Donald Trump's misrepresentations include the following, as set

25  forth in ¶59 of the Second Amended Complaint:

26  (a)   Donald Trump allowed Trump University to represent that he is the

27  founder and Chairman of Trump University, that he owned Trump University "lock, stock and

28  barrel," and that Trump University is his "baby, his company."

4                           No. 3:10-CV-00940-IEG(WVG)

*ZELDES & HAEGGQUIST, LLP*

ZELDES & HAEGGQUIST, LLP

1    (b)    Donald Trump allowed Trump University to use his name, photos and

2    quotes for all Trump University seminar presentations, advertising, including on the home

3    page of Trump University's website, along with a personal message from him: "Are YOU My

4    Next Apprentice?  Prove it to me!"   Other advertisements purported to provide "insider

5    success secrets from Donald Trump," and the opportunity to "Learn from the Master," next to

6    Donald Trump's image.   Consumers are told that the seminar is based on the "investing

7    experience of Donald Trump."

8    (c)    Donald Trump approved print advertisements featuring his image and

9    quotes attributed to him including: "Don't think you can profit in this market? You can.  And

10   I'll show you how.  Learn from my handpicked expert how you can profit from the largest real

11   estate liquidation in history."

12   (d)    Donald Trump approved e-mails from Trump University to thousands or

13   tens of thousands consumers featuring Donald Trump's photo with the words: "Are you My

14   Next Apprentice," and stated: "76% of the world's millionaires made their fortunes in real

15   estate. Now it's your turn. My father did it, I did it, and now I'm ready to teach you how to do

16   it too."   The signature line at the bottom of the email reads, Donald J. Trump, Chairman,

17   Trump University, and even includes his signature.

18   (e)    Donald Trump represented in print advertisements containing his

19   signature that ""I can turn anyone into a successful real estate investor, including you. –

20   Donald Trump."

21   (f)    Donald Trump sent signed letters to consumers nationwide, with his

22   name and signature at the bottom, which stated: "[N]o course offers the same depth of insight,

23   experience and support as the one bearing my name ….   My hand-picked instructors and

24   mentors will show you how to use real estate strategies to: [s]upplement or even replace your

25   income, [s]ecure your long-term financial future ... [s]tart profiting today! Now is the time to

26   create your financial legacy.  You can do it, even if you only have five or ten hours a week to

27   spare.  With our simple instructions and practice exercises – and ongoing support from your

28   own Trump Team of Experts – you'll have what you need to succeed!"   (Emphasis in

original).  The letter closes with Donald J. Trump's name, signature, and at the Trump

University address, at 40 Wall Street, 32nd Floor, New York, NY 10005.

(g)    While Plaintiffs and other Class members were in the midst of the Trump University $1,500 seminar and Trump University was trying to persuade them to sign up for the $35,000 course, each of the participants received a personalized (addressed to them by name) letter from Donald J. Trump.  The letter bore the Trump logo at the top of the letter and the words "From the Office of Donald J. Trump."  The letters stated:

> Success in real estate begins with great training and proven strategies.  Without education you don't stand a chance.
>
> I know how to make money in real estate.  I've been doing it for a long time with a lot of success.  My family has been a leader in real estate since my father – Fred Trump – started building residential homes in New York City 75 years ago.  My father was my mentor and he taught me a lot.  Now I want to teach you how to make money in real estate.  To be my apprentice you need to Think BIG and really want to succeed.  More than anything, you need to take action.
>
> Do YOU have What It Takes to Be My Next Apprentice?
>
> I only work with people who are committed to succeed.  I founded Trump University back in 2005 to teach go-getters how to succeed in real estate.  My team at Trump University is filled with real estate experts ... proven winners.  We're the best of the best and we know what works.  If you think you have what it takes to be my next apprentice, prove it to me.
>
> We've trained thousands of real estate investors over the years and we know you will be most successful when you work with a partner....
>
> If you're serious about making money and safeguarding your future, learn to invest in real estate.  Trump University will teach you how.  We'll give you the best training and the confidence to succeed.  If you think you've got what it takes to be my next Apprentice, come prove it to me and my team.

The letter closes with "See you at the top!"  And, it is signed, "Donald J. Trump, Chairman, Trump University."

(h)    Donald Trump wrote nearly 400 blogs posted on Trump University's website, and stated that he intended to be actively involved with Trump University – Donald Trump regularly posts blogs on the Trump University website – he has posted 387 blogs from May 27, 2005, to as recently as August 18, 2010, and these blogs all remained on the website as of October 18, 2010.  In these blogs, Donald Trump stated that he intended to be actively involved with Trump University and intended to personally help consumers who paid for

6

No. 3:10-CV-00940-IEG(WVG)

ZELDES & HAEGGQUIST, LLP

Trump University Seminars.  Donald Trump wrote: "I'm not just putting my name on this venture; I plan to be an active presence in the curricula."  For example in the blog "Why I Started Trump University: A Passion for Learning," Donald Trump explains that:

> Trump University grew out of my desire to impart my business knowledge, accumulated over the years, and my realization that there is a huge demand for practical, convenient education that teaches success.  I want the people who go to Trump University to succeed, and I plan to do my part to help them.  I'm not just putting my name on this venture; I plan to be an active presence in the curricula.  The website, www.trumpuniversity.com, will include such features as "Ask Mr. Trump," in which I answer your questions; the blog you're reading now; video clips of me; and more.  My words, ideas, and image will also be woven into the courses we create.  The reason I'm playing such an active role in Trump University is that I truly believe in the power of education ....  [T]he people who go to Trump University want to be successful, and I'm on their side.

(i)     Donald Trump misrepresented in written and video advertisements that students would learn from instructors, experts and mentors who would be "hand-picked" by him.

(n)     Trump University website misrepresented that Donald Trump would hold periodic live online Q&A Sessions with Trump University students, and twice a month Donald Trump would personally choose and answer the best questions from Trump University members.

INTERROGATORY NO. 3:

Please state with specificity all facts which support plaintiffs' contention that writing(s) by Donald J. Trump contain false and/or misleading statements, including a description of each writing, date of each writing, the specific portions plaintiffs contend contains false or misleading statements and date each plaintiff relied on it.

RESPONSE TO INTERROGATORY NO. 3:

Plaintiffs specifically incorporate its General Objections set forth above as though fully set forth herein to the extent applicable to this interrogatory.  Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information in Defendants' possession, custody or control.

ZELDES & HAEGGQUIST, LLP

ZELDES & HAEGGQUIST, LLP

1    Plaintiffs further object to this interrogatory because it seeks information duplicative of

2    information that Plaintiffs have disclosed under Rule 26(a)(1) of the Federal Rules of Civil

3    Procedure.  Plaintiffs have already identified all currently known documents and individuals

4    who may have discoverable information to support Plaintiffs' claims.  *See* Plaintiffs' Amended

5    Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1).

6    Plaintiffs further object to this interrogatory on the grounds that it seeks information

7    protected by the attorney-client privilege and/or attorney work product doctrine.  *See Hickman*

8    *v. Taylor*, 329 U.S. 495, 511 (1947) (work product protection is afforded to materials that

9    reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses,

10   and inferences drawn from interviews). This interrogatory improperly seeks, and if responded

11   to would reveal, Plaintiffs' counsel's opinions regarding the relative importance of these

12   witnesses, the highlights of their testimony/factual knowledge, and would link any future

13   statements by the witnesses with counsel's legal theories and conclusions as outlined in the

14   complaint.

15   Plaintiffs also object to this interrogatory on the grounds that it calls for an expert

16   opinion, legal conclusion and/or legal statement of the law.

17   Plaintiffs also object on the grounds that such contention discovery is premature and

18   presumptively improper given that discovery in this case has only just begun.  Plaintiffs'

19   investigation into the issues and witnesses pertaining to this action is still continuing.

20   Subject to and without waiving the foregoing General and Specific Objections,

21   Plaintiffs respond as follows: *See* Response to Interrogatory No. 2.

22   <u>INTERROGATORY NO. 4:</u>

23   Please state with specificity all facts which support plaintiffs' contention that Donald J.

24   Trump personally violated any law or statute, including each specific act by Mr. Trump, each

25   specific law or statute plaintiffs contend he violated, the date of each and the IDENTITY of all

26   witnesses who support plaintiffs' claims.

27

28

ZELDES & HAEGGQUIST, LLP

RESPONSE TO INTERROGATORY NO. 4:

Plaintiffs specifically incorporate its General Objections set forth above as though fully set forth herein to the extent applicable to this interrogatory. Plaintiffs object to this interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information in Defendants' possession, custody or control.

Plaintiffs further object to this interrogatory because it seeks information duplicative of information that Plaintiffs have disclosed under Rule 26(a)(1) of the Federal Rules of Civil Procedure. Plaintiffs have already identified all currently known documents and individuals who may have discoverable information to support Plaintiffs' claims. *See* Plaintiffs' Amended Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1).

Plaintiffs further object to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (work product protection is afforded to materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses, and inferences drawn from interviews). This interrogatory improperly seeks, and if responded to would reveal, Plaintiffs' counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future statements by the witnesses with counsel's legal theories and conclusions as outlined in the complaint

Plaintiffs also object to this interrogatory on the grounds that the term "personally" is vague and ambiguous.

Plaintiffs further object to this interrogatory on the grounds that it calls for an expert opinion, legal conclusion and/or legal statement of the law.

Plaintiffs also object on the grounds that such contention discovery is premature and presumptively improper given that discovery in this case has only just begun. Plaintiffs' investigation into the issues and witnesses pertaining to this action is still continuing.

Subject to and without waiving the foregoing General and Specific Objections, Plaintiffs respond as follows: Plaintiffs contend that Donald Trump violated the Unfair

1  Competition Law ("UCL,"), Cal. Bus. & Prof. Code, §17200 (*see* Complaint, ¶¶96-103), the

2  Consumer Legal Remedies Act ("CLRA,"), Cal. Civil Code §1750, *et seq.*) (*see* Complaint,

3  ¶¶104-111), and Cal. Bus. & Prof. Code §§17500, *et seq.* ==by disseminating untrue and==

4  ==misleading advertising== (*see* Complaint, ¶¶112-115).

5  <u>INTERROGATORY NO. 5:</u>

6       Please state with specificity all facts which support plaintiffs' allegations in Paragraph

7  41 of the Second Amended Complaint that "in most cases [Mr. Trump] didn't even know who

8  [the instructors and mentors] were, and in most cases, he had never even met them," including

9  the IDENTITY of each witness who supports plaintiffs' allegations.

10  <u>RESPONSE TO INTERROGATORY NO. 5:</u>

11       Plaintiffs specifically incorporate its General Objections set forth above as though fully

12  set forth herein to the extent applicable to this interrogatory. Plaintiffs object to this

13  interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information

14  in Defendants' possession, custody or control.

15       Plaintiffs also object to this interrogatory because it seeks information duplicative of

16  information that Plaintiffs have disclosed under Rule 26(a)(1) of the Federal Rules of Civil

17  Procedure.  Plaintiffs have already identified all currently known documents and individuals

18  who may have discoverable information to support Plaintiffs' claims. *See* Plaintiffs' Amended

19  Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1).

20       Plaintiffs further object to this interrogatory on the grounds that it seeks information

21  protected by the attorney-client privilege and/or attorney work product doctrine. *See Hickman*

22  *v. Taylor*, 329 U.S. 495, 511 (1947) (work product protection is afforded to materials that

23  reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses,

24  and inferences drawn from interviews). This interrogatory improperly seeks, and if responded

25  to would reveal, Plaintiffs' counsel's opinions regarding the relative importance of these

26  witnesses, the highlights of their testimony/factual knowledge, and would link any future

27  statements by the witnesses with counsel's legal theories and conclusions as outlined in the

28  complaint.

ZELDES & HAEGGQUIST, LLP

10

No. 3:10-CV-00940-IEG(WVG)

ZELDES & HAEGGQUIST, LLP

1  Plaintiffs further object to this interrogatory on the grounds that it seeks information

2  protected by the attorney-client privilege and/or attorney work product doctrine. *See Hickman*

3  *v. Taylor*, 329 U.S. 495, 511 (1947) (work product protection is afforded to materials that

4  reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses,

5  and inferences drawn from interviews). This interrogatory improperly seeks, and if responded

6  to would reveal, Plaintiffs' counsel's opinions regarding the relative importance of these

7  witnesses, the highlights of their testimony/factual knowledge, and would link any future

8  statements by the witnesses with counsel's legal theories and conclusions as outlined in the

9  complaint.

10  Plaintiffs further object to this interrogatory on the grounds that it calls for an expert

11  opinion, legal conclusion and/or legal statement of the law.

12  Plaintiffs also object on the grounds that such contention discovery is premature and

13  presumptively improper given that discovery in this case has only just begun. Plaintiffs'

14  investigation into the issues and witnesses pertaining to this action is still continuing.

15  INTERROGATORY NO. 16:

16  Please state with specificity all facts which support plaintiffs' allegations in Paragraph

17  114 of the Second Amended Complaint that "defendants disseminated through common

18  advertising ... untrue statements about Trump University and its Seminars," including each

19  specific untrue statement, the date and location of each untrue statement and the IDENTITY of

20  each author, speaker and/or publication.

21  RESPONSE TO INTERROGATORY NO. 16:

22  Plaintiffs specifically incorporate its General Objections set forth above as though fully

23  set forth herein to the extent applicable to this interrogatory. Plaintiffs object to this

24  interrogatory on the grounds that it is overly broad, unduly burdensome and seeks information

25  in Defendants' possession, custody or control.

26  Plaintiffs also object to this interrogatory because it seeks information duplicative of

27  information that Plaintiffs have disclosed under Rule 26(a)(1) of the Federal Rules of Civil

28  Procedure. Plaintiffs have already identified all currently known documents and individuals

ZELDES & HAEGGQUIST, LLP

1   who may have discoverable information to support Plaintiffs' claims.  *See* Plaintiffs' Amended

2   Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1).

3       Plaintiffs further object to this interrogatory on the grounds that it seeks information

4   protected by the attorney-client privilege and/or attorney work product doctrine.  *See Hickman*

5   *v. Taylor*, 329 U.S. 495, 511 (1947) (work product protection is afforded to materials that

6   reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses,

7   and inferences drawn from interviews).  This interrogatory improperly seeks, and if responded

8   to would reveal, Plaintiffs' counsel's opinions regarding the relative importance of these

9   witnesses, the highlights of their testimony/factual knowledge, and would link any future

10  statements by the witnesses with counsel's legal theories and conclusions as outlined in the

11  complaint.

12      Plaintiffs also object on the grounds that such contention discovery is premature and

13  presumptively improper given that discovery in this case has only just begun.  Plaintiffs'

14  investigation into the issues and witnesses pertaining to this action is still continuing.

15      Subject to and without waiving the foregoing General and Specific Objections,

16  Plaintiffs respond as follows: Defendants are, or should be, in possession of all such

17  advertisements, as well as the dates each advertisement ran, the location of these

18  advertisements, and the identity of the author, speaker or publication, but such advertisements

19  include those listed in Response to Interrogatory No. 2, as well as the following:

20      An email from Trump University to thousands or tens of thousands consumers featured

21  Donald Trump's photo with the words: "*Are you My Next Apprentice*," and stated: "*76% of the*

22  *world's millionaires made their fortunes in real estate. Now it's your turn. My father did it, I*

23  *did it, and now I'm ready to teach you how to do it too.*"  The signature line at the bottom of

24  the email reads, Donald J. Trump, Chairman, Trump University, and even includes his

25  signature:

26

27

28

22                    No. 3:10-CV-00940-IEG(WVG)

**From:** Trump University <email@info.trumpuniversity.com>
**To:** brandon
**Sent:** Thu, April 29, 2010 12:06:00 PM
**Subject:** Entrepreneurs Needed to be My Next Apprentice



# I want people who want success.

If you Think BIG and believe you've got what it takes to succeed, I want you!

**76% of the world's millionaires made their fortunes in real estate. Now it's your turn. My father did it, I did it, and now I'm ready to teach you how to do it too.**



My team of real estate experts at Trump University is coming to your area in the next few days to conduct my Free Intro Apprenticeship Workshop. If you think you've got what it takes to be my next Apprentice, step up and attend. You should also bring along a trusted partner. This is YOUR opportunity to create wealth and take control of your own financial future with proven strategies that work in the current real estate market.

**Attend the Free Intro Apprenticeship Workshop to learn how to:**



I'm also going to give you my "Secrets of Real Estate Marketing" investor toolkit (a $50 value) absolutely FREE when you attend.

Don't waste time - seating is very limited and my Trump Workshops always fill up fast.

1. Buy properties from banks at DEEP discounts
2. Use short sales to CONTROL property
3. Increase your financial POWER with leverage
4. Negotiate PROFITABLE deals that meet your goals
5. Attend and learn how to develop the CONFIDENCE to succeed in real estate



See you at the top!

Donald J. Trump
Chairman, Trump University

Ex. 8 - 339

ZELDES & HAEGGQUIST, LLP

DATED: November 7, 2011

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)


AMBER L. ECK

625 Broadway, Suite 906
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
THOMAS R. MERRICK
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs and the Proposed Class

24                    No. 3:10-CV-00940-IEG(WVG)



**VERIFICATION**

1       I, Tarla Makaeff, declare as follows:

       I am the Plaintiff in the above-entitled action.  I have read Plaintiffs' Responses to Defendant Donald J. Trump's First Set of Interrogatories to Plaintiffs and I know the contents thereof.  I declare under penalty of perjury under the laws of the State of California that the responses therein are correct to the best of my knowledge.  Executed this ___7th___ day of ___November___, 2011.

_____
TARLA MAKAEFF

ZELDES & HAEGGQUIST, LLP

Case No  3:10-CV-00940-IEG(WVG)

VERIFICATION

Ex. 8 - 341

Nov 06 11 10:55a    Keller Family          858-755-0852      p.2

1                       **VERIFICATION**

2       I, Brandon Keller, declare as follows:

3       I am the Plaintiff in the above-entitled action. I have read Plaintiffs' Responses to

4 Defendant Donald J. Trump's First Set of Interrogatories to Plaintiffs and I know the contents

5 thereof. I declare under penalty of perjury under the laws of the State of California that the

6 responses therein are correct to the best of my knowledge. Executed this ____5____ day of

7 _November_____, 2011.

8

9                                     **BRANDON KELLER**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                           Case No. 3:10-CV-00940-IEG(WVG)

                                              **VERIFICATION**

ZEILDES & HAEGGQUIST, LLP

## VERIFICATION

1
2      I, Ed Oberkrom, declare as follows:

3      I am the Plaintiff in the above-entitled action.  I have read Plaintiffs' Responses to
4  Defendant Donald J. Trump's First Set of Interrogatories to Plaintiffs and I know the contents
5  thereof.  I declare under penalty of perjury under the laws of the State of California that the
6  responses therein are correct to the best of my knowledge.  Executed this _7th__ day of
7  _November_____, 2011.

8
9                                              _Ed Oberkrom_____
10                                                   ED OBERKROM
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                                                   Case No. 3:10-CV-00940-IEG(WVG)
                                    VERIFICATION

ZELDES & HAEGGQUIST, LLP

Ex. 8 - 343

**PROOF OF SERVICE**
C.C.P. §1013(A), C.R.C. 2003(3), 2005(i)

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 625 Broadway, Suite 906, San Diego, CA 92101.

1.     On November 7, 2011, I served the foregoing document described as PLAINTIFFS' RESPONSES TO DEFENDANT DONALD J. TRUMP'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS on all parties in this action by attaching a true copy thereof to an email addressed to the parties listed below:

| | |
|---|---|
| David K. Schneider (139288)<br>YUNKER & SCHNEIDER<br>655 West Broadway, Suite 1400<br>San Diego, CA 92101<br>Telephone: (619) 233-5500<br>Facsimile: (619) 233-5535<br>dks@yslaw.com | Rachel L. Jensen (211456)<br>Thomas R. Merrick (177987)<br>ROBBINS GELLER RUDMAN<br> & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Facsimile: (619) 231-7423<br>rjensen@rgrdlaw.com<br>tmerrick@rgrdlaw.com |
| Counsel for Defendants | Counsel for Plaintiffs |

2.     I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

EXECUTED on November 7, 2011, at San Diego, California.

RUTH A. CAMERON

ZELDES & HAEGGQUIST, LLP

Ex. 8 - 344

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
625 Broadway, Suite 906
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878
ambere@zhlaw.com
helenz@zhlaw.com
alreenh@zhlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
THOMAS R. MERRICK (177987)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
rjensen@rgrdlaw.com
tmerrick@rgrdlaw.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, Inclusive,<br><br>        Defendants. | Case No.:  3:10-CV-00940-CAB (WVG)<br><br>CLASS ACTION<br><br>PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT DONALD J. TRUMP'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS<br><br>District Judge:     Hon. Cathy Ann Bencivengo<br>Magistrate Judge: Hon. William V. Gallo<br><br>Courtroom: 1, 4th Floor<br><br><br>JURY TRIAL DEMANDED |

PROPOUNDING PARTY:    DEFENDANT DONALD J. TRUMP
RESPONDING PARTIES:    PLAINTIFFS TARLA MAKAEFF, BRANDON KELLER,
                                          ED OBERKROM AND PATRICIA MURPHY
SET NUMBER:                 FIRST SUPPLEMENTAL

*Left margin vertical text:* ZELDES & HAEGGQUIST, LLP

ZELDES & HAEGGQUIST, LLP

1   who may have discoverable information to support Plaintiffs' claims.  *See* Plaintiffs' Amended

2   Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1).

3        Plaintiffs further object to this interrogatory on the grounds that it seeks information

4   protected by the attorney-client privilege and/or attorney work product doctrine.  *See Hickman*

5   *v. Taylor*, 329 U.S. 495, 511 (1947) (work product protection is afforded to materials that

6   reveal an attorney's strategy, intended lines of proof, evaluation of strengths or weaknesses,

7   and inferences drawn from interviews). This interrogatory improperly seeks, and if responded

8   to would reveal, Plaintiffs' counsel's opinions regarding the relative importance of these

9   witnesses, the highlights of their testimony/factual knowledge, and would link any future

10  statements by the witnesses with counsel's legal theories and conclusions as outlined in the

11  complaint.

12       Plaintiffs also object to this interrogatory on the grounds that it calls for an expert

13  opinion, legal conclusion and/or legal statement of the law.

14       Plaintiffs also object on the grounds that such contention discovery is premature and

15  presumptively improper given that discovery in this case has only just begun.  Plaintiffs'

16  investigation into the issues and witnesses pertaining to this action is still continuing.

17       Subject to and without waiving the foregoing General and Specific Objections,

18  Plaintiffs respond as follows: *See* Response to Interrogatory No. 2.

19  SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

20       Plaintiffs specifically incorporate their General and Specific Objections to

21  Interrogatory No. 3 set forth above as though fully set forth herein to the extent applicable to

22  this interrogatory.  Plaintiffs also object to this interrogatory on the grounds that the term "by"

23  is vague and ambiguous.  As set forth in Plaintiffs' Supplemental Response to Interrogatory

24  No. 6 herein below, Donald Trump personally reviewed all print ads.  In this sense, *all* ads by

25  Trump University could be considered to be "by" Donald Trump, in addition to the ads and

26  marketing which feature photographic images of Trump making declarations *in the first-*

27  *person*.

28

Subject to and without waiving the foregoing General and Specific Objections, pursuant to the Court's Discovery Order, in addition to Plaintiffs' initial response to this Interrogatory, Plaintiffs respond as follows:

Defendant Donald J. Trump made the following false and/or misleading written statements, which were made ***throughout*** the United States and Canada ***continuously throughout the class period*** (*see* Exhibit C attached to Plaintiffs Supplemental Responses to Defendant Trump University, LLC's First Set of Interrogatories to Plaintiffs (chart identifying relevant documents of which identify dates and target locations of the advertisements and marketing materials)):

- "Learn from the Master";
- "Are YOU ***My Next Apprentice***? Prove it to me!";
- "Learn ***my proven, specialized Trump process*** for real estate investing.  ***My handpicked expert*** will show you how to find properties....";
- "***I*** can turn anyone into a successful real estate investor";
- "...who's helping you?  ***I will***. There is no question in my mind ***I can turn you into a successful real estate investor***";
- "Don't think you can profit in this market?  You can.  And ***I'll show you how***";
- "***I'm deeply and actively involved*** in Trump University ....";
- "76% of the world's millionaires made their fortunes in real estate. Now it's your turn.  My father did it, I did it, and now ***I'm ready to teach you*** how to do it too;
- "***I'm going to give you*** 2 hours of access to one of ***my*** amazing instructors AND priceless information ....";
- "***I'm*** sharing ***my*** proprietary 'Blueprint for Real Estate Success ....  ***My handpicked*** instructors and mentors will show you how to use real estate strategies to ....";
- Learn "Insider success secrets ***from Donald Trump***"; and
- Trump University represented to Plaintiffs and consumers that Donald Trump owns Trump University "lock, stock and barrel," and it is his "baby, his company."

The center of gravity of the fraudulent scheme was designed to, and did, make reasonable consumers, including Plaintiffs, want to sign up for Trump University Seminars for

No. 3:10-CV-00940 CAB(WVG)

Ex. 8 - 347

ZELDES & HAEGGQUIST, LLP

ZELDES & HAEGGQUIST, LLP

a specific reason: to "Learn *from the Master*," *Donald Trump*.  This was the primary reason Plaintiffs and consumers were drawn to and participated in Trump University and spent large sums of money, as is evidenced by Trump's own words: "*When I speak, people listen.  And, when I send out invitations, people attend because they know that my invitation means one thing – there is money to be made*."  *See, e.g.*, TU 62079.  Defendant Trump knows that the "'Trump' name is a powerful one."  With the "Trump stamp of approval comes immediate recognition and an expectation of quality and success."  *See* TU 64496.  In a blog post, Trump further states that "[t]he Trump name carries with it a price tag: people pay a lot more to live or rent commercial space in my buildings because of the association with me and my ideals." "The Trump brand carries a promise that whatever bears the name will be elite."  *See* TU-PLT00199.  According to Trump University's President, Michael Sexton, "[u]ndoubtedly, the magic of the Trump name is largely responsible for [the] outpouring of interest" in Trump University.  (*See* TU 64475.)  As the face of Trump University, Donald Trump's image was omnipresent, appearing on, among other things, the Trump University website, in advertising and marketing, at seminars/workshops/retreats, and in the course materials.

The advertisements also took the form of *personal letters from Donald Trump*, with his name and signature at the bottom, which stated, among other things:

> My family has been a leader in real estate since my father – Fred Trump – started building residential homes in New York City 75 years ago …. Now *I want to teach you* how to make money in real estate.  To be *my Apprentice* you need to Think Big and really want to succeed ....
>
> Do YOU have what it takes to be *My* Next Apprentice?
>
> *I* only work with people who are committed to succeed.  *I* founded Trump University back in 2005 to teach go-getters how to succeed in real estate.  *My team* at Trump University *is filled with real estate experts ... proven winners*. *We're the best of the best* and we know what works.  If you think you have what it takes to be *my next apprentice*, prove it to me.
>
> Now is the Perfect Time to Attend *My* Intro Apprenticeship Workshop

Trump personally invited consumers to the free workshops by enclosing "two complimentary VIP tickets to give to you and a guest the chance to learn how to create wealth *the Trump Way*."  *See, e.g.*, TU 62065 - TU 62069.

1    Moreover, Trump wrote hundreds of blog posts on Trump University's website, stating

2    that he intended to be actively involved with Trump University.  Trump wrote, among other

3    things: "I want the people who go to Trump University to succeed, and I plan to do my part to

4    help them. ***I'm not just putting my name on this venture; I plan to be an active presence in***

5    ***the curricula***."  *See* TU-PLT00204-TU-PLT00205.

6    Trump also authored a number of books sold to students, one of which was entitled

7    "Trump 101, the Way to Success," wherein Trump states: "***I'm deeply and actively involved***

8    ***in Trump University*** because I firmly believe in the power of education and its function as an

9    engine of success," and "I want to help people, and, simply put, the Trump University students

10   want to be successful.  ***I'm*** on their side."  *See* TU_KELLER-575; TU-MAKAEFF0013.

11   Trump University, a for-profit "University," was built entirely around the prestige and

12   prominence of a single individual, Donald Trump. Trump University identified its program

13   with Donald Trump in his capacity as an ostentatious public figure, deliberately blurring any

14   line in the public mind between Donald Trump himself, and the University as an independent

15   entity. Yet, despite Defendants' extensive uniform advertising and marketing campaign

16   wherein Defendants shamelessly traded on the identification with Donald Trump's name,

17   reputation, and imaging – typically picturing Trump as speaking in the first person on its

18   behalf, Donald Trump, admittedly, was not "deeply" and "actively" involved, nor did

19   Plaintiffs or any other Trump University student become (or have a chance at becoming)

20   Trump's "next Apprentice," or learn from the Master himself or learn ***his*** master techniques.

21   In fact, Defendants admit that its aggressive advertising and marketing campaign contained

22   material misrepresentations, now stating in sworn statements to the judiciary that "Trump

23   University ***is separate and distinct*** from Donald Trump," and that Trump "simply" "endorsed"

24   Trump University and merely allowed Trump University to bear his name – ***nothing more***.

25   *See also* Plaintiffs' Supplemental Response to Defendant Trump University's Interrogatory

26   No. 7, which is incorporated herein as if set forth in full.

27   Discovery is continuing and Plaintiffs reserve the right to supplement/amend this

28   Response upon the discovery of relevant, responsive and non-privileged information.

ZELDES & HAEGGQUIST, LLP

PROOF OF SERVICE
C.C.P. §1013(A), C.R.C. 2003(3), 2005(i)

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is 625 Broadway, Suite 906, San Diego, CA 92101.

1.     On March 20, 2012, I served the foregoing document described as PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT DONALD J. TRUMP'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS on all parties in this action by attaching a true copy thereof to an email addressed to the parties listed below:

| David K. Schneider (139288)<br>YUNKER & SCHNEIDER<br>655 West Broadway, Suite 1400<br>San Diego, CA 92101<br>Telephone: (619) 233-5500<br>Facsimile: (619) 233-5535<br>dks@yslaw.com | Rachel L. Jensen (211456)<br>Thomas R. Merrick (177987)<br>ROBBINS GELLER RUDMAN<br> & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Facsimile: (619) 231-7423<br>rjensen@rgrdlaw.com<br>tmerrick@rgrdlaw.com |
| --- | --- |
| Counsel for Defendants | Counsel for Plaintiffs |

2.     I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

EXECUTED on March 20, 2012, at San Diego, California.

RUTH A. CAMERON

Ex. 8 - 350



1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   RACHEL L. JENSEN (211456)
    rjensen@rgrdlaw.com
3   THOMAS R. MERRICK (177987)
    tmerrick@rgrdlaw.com
4   655 West Broadway, Suite 1900
    San Diego, CA  92101
5   Telephone:  619/231-1058
    619/231-7423 (fax)
6
    ZELDES & HAEGGQUIST, LLP
7   AMBER L. ECK (177882)
    ambere@zhlaw.com
8   HELEN I. ZELDES (220051)
    helenz@zhlaw.com
9   ALREEN HAEGGQUIST (221858)
    alreenh@zhlaw.com
10  AARON M. OLSEN (259923)
    aarono@zhlaw.com
11  625 Broadway, Suite 906
    San Diego, CA  92101
12  Telephone:  619/342-8000
    619/342-7878 (fax)
13
14  Attorneys for Plaintiffs and Proposed Class

15              UNITED STATES DISTRICT COURT

16            SOUTHERN DISTRICT OF CALIFORNIA

17  TARLA MAKAEFF, et al., on Behalf of    )  No. 3:10-cv-00940-CAB(WVG)
    Themselves and All Others Similarly Situated, )
18                                          )  CLASS ACTION
                         Plaintiffs,        )
19                                          )  PLAINTIFFS' MEMORANDUM OF
         vs.                                )  POINTS AND AUTHORITIES IN SUPPORT
20                                          )  OF MOTION FOR CLASS
    TRUMP UNIVERSITY, LLC, et al.,          )  CERTIFICATION, APPOINTMENT OF
21                                          )  CLASS REPRESENTATIVES AND
                         Defendants.        )  APPOINTMENT OF CLASS COUNSEL
22  _____ )
                                               JUDGE:   Hon. Cathy Ann Bencivengo
23                                             DATE:    February 12, 2013
                                               TIME:    2:30 P.M.
24                                             CTRM:    2 – 4th Floor

25                                                 Oral Argument Requested Subject to
                                                        Court Approval

26                          [FILED UNDER SEAL]

27

28

766171_1

Ex. 8 - 351

# EXHIBIT 8 A
# Pages 352-353
## [Filed Conditionally Under Seal]

Exhibit 8 A
Pages 352-353

# EXHIBIT 9

**EXHIBIT 9**

| Purported "New Facts" in 4<sup>th</sup>AC (ECF 248-3) | Identical or Substantially Similar Allegations or Argument in Earlier Pleadings and/or Verified Discovery Responses or Documents Produced Prior to Amendment Deadline |
|---|---|
| Main Promotional Video | **Ex. 9 A**<br>• Video Produced 1/5/12 (TU 62975) and again 5/29/12 (TU 123460), and hence not attached hereto<br>• Plaintiffs' Supplemental Response to Interrogatory No. 2 (h) & (i) (Set One) (3/20/12)<br>• Plaintiffs 9/20/12 Motion to file Videos (TU 62975 and TU-PLTF02441) as Exs. 1 & 2 to Plaintiffs' Motion for Class Cert (ECF 118)<br>• Plaintiffs' Motion for Class Cert. MPA (9/24/12, ECF 122-1), 11:6-9 |

# EXHIBIT 9 A

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
HELEN I. ZELDES (220051)
ALREEN HAEGGQUIST (221858)
625 Broadway, Suite 906
San Diego, CA 92101
Telephone:  (619) 342-8000
Facsimile:  (619) 342-7878
ambere@zhlaw.com
helenz@zhlaw.com
alreenh@zhlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
THOMAS R. MERRICK (177987)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423
rjensen@rgrdlaw.com
tmerrick@rgrdlaw.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, and PATRICIA MURPHY, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, Inclusive,<br><br>        Defendants. | Case No.:  3:10-CV-00940-CAB (WVG)<br><br>CLASS ACTION<br><br>PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT DONALD J. TRUMP'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS<br><br>District Judge:     Hon. Cathy Ann Bencivengo<br>Magistrate Judge:  Hon. William V. Gallo<br><br>Courtroom:  1, 4th Floor<br><br><br>JURY TRIAL DEMANDED |

PROPOUNDING PARTY:    DEFENDANT DONALD J. TRUMP
RESPONDING PARTIES:    PLAINTIFFS TARLA MAKAEFF, BRANDON KELLER,
                                        ED OBERKROM AND PATRICIA MURPHY
SET NUMBER:                  FIRST SUPPLEMENTAL

(h)     Donald Trump wrote nearly 400 blogs posted on Trump University's website, and stated that he intended to be actively involved with Trump University – Donald Trump regularly posts blogs on the Trump University website – he has posted 387 blogs from May 27, 2005, to as recently as August 18, 2010, and these blogs all remained on the website as of October 18, 2010.  In these blogs, Donald Trump stated that he intended to be actively involved with Trump University and intended to personally help consumers who paid for Trump University Seminars.  Donald Trump wrote: "I'm not just putting my name on this venture; I plan to be an active presence in the curricula."  For example in the blog "Why I Started Trump University: A Passion for Learning," Donald Trump explains that:

> Trump University grew out of my desire to impart my business knowledge, accumulated over the years, and my realization that there is a huge demand for practical, convenient education that teaches success.  I want the people who go to Trump University to succeed, and I plan to do my part to help them. I'm not just putting my name on this venture; I plan to be an active presence in the curricula. The website, www.trumpuniversity.com, will include such features as "Ask Mr. Trump," in which I answer your questions; the blog you're reading now; video clips of me; and more. My words, ideas, and image will also be woven into the courses we create. The reason I'm playing such an active role in Trump University is that I truly believe in the power of education .... [T]he people who go to Trump University want to be successful, and I'm on their side.

(i)     Donald Trump misrepresented in written and video advertisements that students would learn from instructors, experts and mentors who would be "hand-picked" by him.

(n)     Trump University website misrepresented that Donald Trump would hold periodic live online Q&A Sessions with Trump University students, and twice a month Donald Trump would personally choose and answer the best questions from Trump University members.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO 2:

Plaintiffs specifically incorporate their General and Specific Objections to Interrogatory No. 2 set forth above as though fully set forth herein to the extent applicable to this interrogatory.

ZELDES & HAEGGQUIST, LLP

PROOF OF SERVICE
C.C.P. §1013(A), C.R.C. 2003(3), 2005(i)

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action; my business address is 625 Broadway, Suite 906, San Diego, CA 92101.

    1.    On March 20, 2012, I served the foregoing document described as PLAINTIFFS' SUPPLEMENTAL RESPONSES TO DEFENDANT DONALD J. TRUMP'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS on all parties in this action by attaching a true copy thereof to an email addressed to the parties listed below:

| | |
|---|---|
| David K. Schneider (139288)<br>YUNKER & SCHNEIDER<br>655 West Broadway, Suite 1400<br>San Diego, CA 92101<br>Telephone: (619) 233-5500<br>Facsimile: (619) 233-5535<br>dks@yslaw.com | Rachel L. Jensen (211456)<br>Thomas R. Merrick (177987)<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Facsimile: (619) 231-7423<br>rjensen@rgrdlaw.com<br>tmerrick@rgrdlaw.com |
| Counsel for Defendants | Counsel for Plaintiffs |

    2.    I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

    EXECUTED on March 20, 2012, at San Diego, California.

RUTH A. CAMERON

ZELDES & HAEGGQUIST, LLP

39          No. 3:10-CV-00940 CAB(WVG)

1  ZELDES & HAEGGQUIST, LLP
   AMBER L. ECK (177882)
2  ambere@zhlaw.com
   HELEN I. ZELDES (220051)
3  helenz@zhlaw.com
   ALREEN HAEGGQUIST (221858)
4  alreenh@zhlaw.com
   AARON M. OLSEN (259923)
5  aarono@zhlaw.com
   625 Broadway, Suite 906
6  San Diego, CA  92101
   Telephone:  619/342-8000
7  619/342-7878 (fax)

8  ROBBINS GELLER RUDMAN
     & DOWD LLP
9  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
10 THOMAS R. MERRICK (177987)
   tmerrick@rgrdlaw.com
11 655 West Broadway, Suite 1900
   San Diego, CA  92101
12 Telephone:  619/231-1058
   619/231-7423 (fax)
13
   Attorneys for Plaintiffs and Proposed Class
14
                  UNITED STATES DISTRICT COURT
15
                SOUTHERN DISTRICT OF CALIFORNIA
16
   TARLA MAKAEFF, et al., on Behalf of      )   No. 3:10-cv-00940-CAB(WVG)
17 Themselves and All Others Similarly Situated, )
                                             )   CLASS ACTION
18                    Plaintiffs,            )
                                             )   JOINT MOTION FOR LEAVE TO ALLOW
19          vs.                              )   THE NON-ELECTRONIC FILING OF
                                             )   VIDEOS AS EXHIBITS IN SUPPORT OF
20 TRUMP UNIVERSITY, LLC, et al.,            )   PLAINTIFFS' MOTION FOR CLASS
                                             )   CERTIFICATION
21                    Defendants.            )
                                             )
22

23

24

25

26

27

28

763003_1

1       Pursuant to Section 2k, Exhibits, of the Southern District of California's Electronic Case

2  Filing Administrative Policies and Procedures Manual, the parties, by and through their undersigned

3  counsel, respectfully move this Court for an order for leave allowing the non-electronic filing of

4  videos as exhibits in support of Plaintiffs' motion for class certification.

5       Specifically, the parties request the Court for leave allowing Plaintiffs to non-electronically

6  file the following:

7      1.    TU 123460 – a video on a CD; and

8      2.    TU-PLTF02441 – YouTube video found here:  http://www.youtube.com/

9  watch?v=465T6EDzoH0 on a CD.

10       Plaintiffs met and conferred with Defendants by email on September 20, 2012 regarding

11  Plaintiffs' request.  Defendants replied by email that they had no objection to filing these videos non-

12  electronically.

13  DATED:  September 20, 2012         ROBBINS GELLER RUDMAN
                      & DOWD LLP

14                       RACHEL L. JENSEN
                       THOMAS R. MERRICK

15

16

17                         s/ Rachel L. Jensen
                       RACHEL L. JENSEN

18                       655 West Broadway, Suite 1900
                       San Diego, CA  92101

19                       Telephone:  619/231-1058
                       619/231-7423 (fax)

20

21                       ZELDES & HAEGGQUIST, LLP
                       AMBER L. ECK

22                       HELEN I. ZELDES
                       ALREEN HAEGGQUIST

23                       AARON M. OLSEN
                       625 Broadway, Suite 906
                       San Diego, CA  92101

24                       Telephone:  619/342-8000
                       619/342-7878 (fax)

25

26                       Attorneys for Plaintiffs and Proposed Class

27

28

1   DATED:  September 20, 2012                    YUNKER & SCHNEIDER
                                                 DAVID K. SCHNEIDER
2

3                                                     s/ David K. Schneider
                                                 _____
                                                 DAVID K. SCHNEIDER
4

5                                                655 West Broadway, Suite 1400
                                                 San Diego, CA  92101
                                                 Telephone:  619/233-5500
6                                                619/233-5535 (fax)

7                                                Attorney for Defendants

8

                                        ECF CERTIFICATION
9

        The filing attorney attests that she has obtained concurrence regarding the filing of this
10

document from the signatories to this document.
11

12   Dated:  September 20, 2012              By:    s/ Rachel L. Jensen
                                                 _____
13                                               RACHEL L. JENSEN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

763003_1                                       - 2 -                    3:10-cv-00940-CAB(WVG)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 20, 2012.

s/ Rachel L. Jensen
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:rjensen@rgrdlaw.com

763003_1

3:10-cv-00940-CAB(WVG)

1   ROBBINS GELLER RUDMAN
       & DOWD LLP
2   RACHEL L. JENSEN (211456)
    rjensen@rgrdlaw.com
3   THOMAS R. MERRICK (177987)
    tmerrick@rgrdlaw.com
4   655 West Broadway, Suite 1900
    San Diego, CA 92101
5   Telephone: 619/231-1058
    619/231-7423 (fax)
6
    ZELDES & HAEGGQUIST, LLP
7   AMBER L. ECK (177882)
    ambere@zhlaw.com
8   HELEN I. ZELDES (220051)
    helenz@zhlaw.com
9   ALREEN HAEGGQUIST (221858)
    alreenh@zhlaw.com
10  AARON M. OLSEN (259923)
    aarono@zhlaw.com
11  625 Broadway, Suite 906
    San Diego, CA 92101
12  Telephone: 619/342-8000
    619/342-7878 (fax)
13
14  Attorneys for Plaintiffs and Proposed Class

15              UNITED STATES DISTRICT COURT

16           SOUTHERN DISTRICT OF CALIFORNIA

17  TARLA MAKAEFF, et al., on Behalf of      )   No. 3:10-cv-00940-CAB(WVG)
    Themselves and All Others Similarly Situated, )
18                                           )   CLASS ACTION
                            Plaintiffs,      )
19                                           )   PLAINTIFFS' MEMORANDUM OF
         vs.                                 )   POINTS AND AUTHORITIES IN SUPPORT
20                                           )   OF MOTION FOR CLASS
    TRUMP UNIVERSITY, LLC, et al.,           )   CERTIFICATION, APPOINTMENT OF
21                                           )   CLASS REPRESENTATIVES AND
                            Defendants.      )   APPOINTMENT OF CLASS COUNSEL
22                                           )
                                                 JUDGE:  Hon. Cathy Ann Bencivengo
23                                               DATE:   February 12, 2013
                                                 TIME:   2:30 P.M.
24                                               CTRM:   2 – 4th Floor

25                                                  Oral Argument Requested Subject to
                                                          Court Approval
26
                            [FILED UNDER SEAL]
27
28

766171_1

Ex. 9 - 364

1   learn his insider success secrets about how he made his billions.[11]   Mr. Trump's personal letters

2   invited consumers to seminars by enclosing "two complimentary VIP tickets to give to you and a

3   guest the chance to learn how to create wealth ***the Trump Way***."   Ex. 38, at TU 62068.

4        Similarly, Live Events were standardized so as to maximize the "Trump Brand."   Trump

5   University engaged in "visual merchandizing" to "brand the room" with Trump banners.   Ex. 17,

6   Sexton Dep. I at 217:22-218:10.   Fifteen minutes prior to all Live Events, the "Apprentice Song

7   Transitions Into Trump Video" (Ex. 12, Sexton Dep. Ex. 8, at TU 52954), featuring Mr. Trump

8   representing to attendees that they are going to learn from his "handpicked" experts that would

9   "teach you better than the business schools are going to teach you."   Ex. 1, at TU 123460; *see also*

10  Ex. 2, TU-PLTF02441; Ex. 39, Rog. No. 2.   Trump University set the stage so the only thing

11  consumers could see, hear and feel was Trump.   *See, e.g.*, Ex. 40, at TU 59122-25.

12       Though students signed up in droves to get access to Mr. Trump and his best-kept real estate

13  secrets, they did not get any of these things.   Instead, they got platitudes like "buy low, sell high"

14  (Ex. 41, at TU 59008) and dangerous advice like, call your credit card company on the break and ask

15  for an instant credit limit increase to invest in real estate, when in fact it was so was so they could

16  pay for the $35,000 Elite program.   Ex. 23, at TU 97153 (transcript of seminar saying: "the

17  investment for this Gold Elite Program, you have a 100% return on your investment, so whether you

18  put it on credits cards, five of them, ten of them").   In a moment of total irony, Donald Trump

19  testified that one of his secrets was to teach people "not to buy real estate" – while "his" University's

20  "classes" were doing the exact opposite.   *See* Ex. 28 at 143:11-23.

21       This is because, contrary to defendants' misrepresentations and omissions, Donald Trump

22  has admitted he was not "deeply" and "actively" involved.   Trump University's Live Events were

23

---

24  [11]     *See, e.g.*, Ex. 34, at TU-PLTF00142-43 ("Are YOU My Next Apprentice?  Prove it to me!";

25  "My team at Trump University is filled with real estate experts ... proven winners.  We're the best of
    the best and we know what works.  If you think you have what it takes to be my next apprentice,

26  prove it to me); Ex. 35, at TU-MAKAEFF3686 ("Do you want to be a part of Donald Trump's
    exclusive club"); Ex. 36, TU 69434 ("Learn from the Master"); Ex. 37, at TU 62096 ("Learn my

27  proven, specialized Trump process for real estate investing.  My handpicked expert will show you
    how to find properties . . . .").

28

# EXHIBIT 10

1        UNITED STATES DISTRICT COURT

2        SOUTHERN DISTRICT OF CALIFORNIA

3

4   TARLA MAKAEFF, BRANDON KELLER,

5   ED OBERKROM, and PATRICIA

6   MURPHY, on Behalf of Themselves

    and All Others Similarly

7   Situated,

8              Plaintiffs,

9      vs.                    No. 10 CV 0940 IEG (WVG)

10  TRUMP UNIVERSITY, LLC, (aka

11  Trump Entrepreneur Initiative) a

    New York Limited Liability

12  Company, DONALD J. TRUMP, and

13  DOES 1 through 50, inclusive,

14             Defendants.

15  _____

16

17    CONTINUED VIDEOTAPED DEPOSITION of TARLA MAKAEFF

18            San Diego, California

19          Tuesday, January 31, 2012

20                Volume II

21

22  Reported by:

    Kae F. Gernandt

23  RPR, CSR No. 5342

24  Job No. 133737

25  PAGES 283 - 591

                                      Page 283

```
 1          A.   I believe that's everything.                01:02:31

 2          Q.   Did Donald Trump make any appearance at

 3     the Fast Track to Foreclosure three-day seminar?

 4          A.   No.

 5          Q.   Was there ever any representation or         01:02:41

 6     promise that he would appear?

 7          A.   I believe that there was some discussion

 8     that he might appear at some event at some point.  I

 9     don't clearly recall.

10          Q.   Did -- did they show any videotape of --    01:02:55

11     well, first of all, was there any type of live

12     statement by Donald Trump, if it was via Internet or

13     Skype or something, where you could actually see

14     him, and he was talking with anybody at the program?

15          A.   No.                                         01:03:11

16          Q.   Was there any type of video recording of

17     him at the three-day foreclosure workshop?

18          A.   There may have been.  I don't recall.

19          Q.   Can you remember any representations

20     that Donald Trump made during the three-day Fast      01:03:21

21     Track to Foreclosure program to you?

22          A.   You mean in written --

23          Q.   Writing, verbal, live, taped.

24          A.   In my book, there are no ads that I see;

25     however, I believe that there were ads on the slides  01:03:40
```

Page 100

Ex. 10 - 368

```
 1              UNITED STATES DISTRICT COURT

 2             SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   TARLA MAKAEFF, BRANDON KELLER,

 5   ED OBERKROM, and PATRICIA

     MURPHY, on Behalf of Themselves

 6   and All Others Similarly

 7   Situated,

 8                              No. 10 CV 0940 IEG (WVG)

 9       vs.     Plaintiffs,

10   TRUMP UNIVERSITY, LLC, (aka

     Trump Entrepreneur Initiative) a

11   New York Limited Liability

12   Company, DONALD J. TRUMP, and

13   DOES 1 through 50, inclusive,

14              Defendants.

15   _____

16

17            DEPOSITION of BRANDON KELLER

18              San Diego, California

19            Tuesday, January 17, 2012

20                   Volume I

21   Reported by:

22   Kae F. Gernandt

     RPR, CSR No. 5342

23   Job No. 130453

24

25   PAGES 1 - 264

                                        Page 1
```

```
 1          A.   No.                                  01:09:58

 2          Q.   Had you ever spoken to him?

 3          A.   No.

 4          Q.   Had you ever communicated with him in

 5     writing in any way?                            01:10:01

 6          A.   No.

 7          Q.   Did he personally appear at the free

 8     seminar?

 9          A.   No.

10          Q.   Did he appear via live video?  Live  01:10:07

11     video.

12          A.   I don't recall -- live video, that means

13     that -- okay.  What is -- I guess -- what's the

14     difference between -- I guess I just want to hear

15     the clarification "live video" and "video" just to 01:10:30

16     get --

17          Q.   Sure.  Something like Skype or something

18     where you're realtime talking to somebody would be

19     live.  And on tape would mean that it was recorded

20     prior to you seeing him.                       01:10:42

21          A.   I don't recall seeing any live video

22     talking directly with Trump with him on Skype or a

23     video.

24          Q.   All right.  And how about on videotape?

25          A.   I'm trying to -- I'm thinking about  01:11:22
```

Page 109

```
 1    that, trying to remember.  I think there were        01:11:24

 2    videos, just recorded videos of him saying stuff.  I

 3    don't think -- I -- I -- I can't recall the

 4    specifics or when or where, but I think I kind of

 5    remember some recorded videos.                        01:12:04

 6              And again, I'll have to rely on my

 7    attorneys' research, investigation.  That's my

 8    answer.  In terms of videos, I have to rely on my

 9    attorneys' research and investigation on that

10    answer -- to answer that question -- to answer that   01:12:22

11    question, I have to rely on my attorneys' research

12    and --

13              MS. ECK:  That's enough.

14    BY MR. SCHNEIDER:

15         Q.   What I want to understand today from        01:12:31

16    you --

17         A.   Yes.

18         Q.   -- is what you specifically can recall

19    Donald Trump personally ever representing to you.

20              MS. ECK:  And by "personally" --            01:12:42

21              THE WITNESS:  Yeah.

22              MS. ECK:  -- do you mean via videotape?

23              MR. SCHNEIDER:  Either videotape, live,

24    something that you heard words coming out of his

25    mouth.                                                01:12:50
```

                                                     Page 110

1          MS. ECK:  Are you talking about only oral          01:12:50

2     representations or e-mails from Donald Trump?

3          MR. SCHNEIDER:  I'm asking -- right now we're

4     starting with oral representations.  What statements

5     did he make that you heard come out of his mouth.          01:12:57

6          MS. ECK:  So, whether live or on videotape

7     or -- okay, so not slides.  Only videotape or live.

8          THE WITNESS:  Okay.  I don't recall live

9     videotapes.

10          MS. ECK:  How about taped videotapes?          01:13:16

11          THE WITNESS:  I'm -- I think I remember the

12     videotapes, but I can't remember exactly where, when

13     I saw videotapes.  But for some reason, I think I

14     have a feeling I saw videotape -- recorded

15     videotapes, but I can't pinpoint the specifics, is          01:13:43

16     what I'm trying to say.  I recollect kind of

17     remembering videotapes.  But --

18     BY MR. SCHNEIDER:

19          Q.   You don't know whether it was at the

20     free seminar or at the three-day workshop?          01:13:54

21          A.   I -- yeah, I -- I can't recall where it

22     was.  I think I saw the recorded videotapes.

23          Q.   All right.

24          A.   But --

25          Q.   Now, tell me what he said, what you          01:14:15

                                                       Page 111

Ex. 10 - 372

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3

    TARLA MAKAEFF, BRANDON KELLER,

 4  ED OBERKROM, and PATRICIA

    MURPHY, on Behalf of Themselves

 5  and All Others Similarly

 6  Situated,

 7             Plaintiffs,

 8     vs.                    No. 10 CV 0940 IEG (WVG)

 9  TRUMP UNIVERSITY, LLC, (aka

    Trump Entrepreneur Initiative) a

10  New York Limited Liability

11  Company, DONALD J. TRUMP, and

12  DOES 1 through 50, inclusive,

13             Defendants.

    _____

14

15        DEPOSITION of EDWARD C. OBERKROM, JR.

16             San Diego, California

17          Wednesday, April 11, 2012

18                  Volume I

19  Reported by:

20  Kae F. Gernandt

21  RPR, CSR No. 5342

22  Job No. 135652

23

24

25  PAGES 1 - 384

                                        Page 1
```

```
 1          Q.   Had you and Mike Bahr actually talked      11:02:10

 2    about that?

 3          A.   We had talked about it.  When, I don't

 4    really remember.

 5          Q.   All right.  Now, again, you understood     11:02:18

 6    that you were -- you were not going to be mentored

 7    by Donald Trump himself, correct?

 8          A.   No, I did not understand that.

 9    Mentoring takes on several different aspects of

10    learning.  It could be the instructor is the one      11:02:33

11    that's going to guide you through, but you're going

12    to get videos or some kind of communication from

13    Donald Trump, either through letters, e-mails, on

14    the website, CDs, some -- some kind of communication

15    with Donald Trump.                                    11:02:51

16          Q.   All right.  So, let's break those down,

17    sir.

18               As of the Fast Track program, was there

19    any videos in which you saw Donald Trump?

20          A.   I believe there was.                       11:03:04

21          Q.   All right.  Do you remember anything

22    about it?

23          A.   It was just an introductory thing,

24    welcoming us -- welcoming us to the three-day

25    seminar and how our futures were going to change      11:03:11
```

Page 91

Ex. 10 - 374

Page 1

1          UNITED STATES DISTRICT COURT

2        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3  _____

                                          )
4  TARLA MAKAEFF, BRANDON KELLER,         )
   ED OBERKROM, and PATRICIA MURPHY,      )
5  on Behalf of Themselves and All        )
   Others Similarly Situated,             )
6                                         )
             Plaintiffs,                  ) Case No.
7                                         ) 10 CV 0940 CAB (WVG)
          vs.                             )
8                                         )
   TRUMP UNIVERSITY, LLC, (aka Trump      )
9  Entrepreneur Initiative) a New         )
   York Limited Liability Company,        )
10 DONALD J. TRUMP, and DOES 1            )
   through 50, inclusive,                 )
11                                        )
             Defendants.                  )
12 _____)

13

14

15         Videotaped Deposition of Joann Everett

16         taken at 655 West Broadway, Suite 1900,

17         San Diego, California, commencing at

18         9:31 a.m., on Wednesday, October 3, 2012,

19         before Kimberly S. Thrall, RPR, CSR No. 11594.

20

21

22

23

24 Reported by:  Kimberly S. Thrall, RPR, CSR. No. 11594

25              Job No. 54027

Ex. 10 - 375

1    testimonials in the 90-minute program?

2         A.   I don't remember.

3         Q.   Did you see any kind of video from Donald Trump

4    at the 90-minute program?

5         A.   They started with a -- oh, geez.   I'm sorry.

6    That's been so long ago.   I -- I don't specifically

7    remember.   And I -- I don't have any notes from that

8    time during -- I was writing, again, on notepads.   That

9    could have refreshed my memory, the things I had written

10   down.   The thing that I -- that stands out --

11        Q.   There's -- there's no question pending.

12        A.   Okay.

13        Q.   All right.   Let me hand you back the binder --

14        A.   Okay.

15        Q.   -- and ask you to look at the first document in

16   there, which is page EVERETT001.   And I'm going to mark

17   that as Exhibit -- what are we on?   Four or five?

18             MS. ECK:   I think it's actually 5.

19             THE WITNESS:   Five.   Yeah.

20             (Defendants' Exhibit 5, the Contract, was

21             marked for identification.)

22             MR. SCHNEIDER:   All right.   Five.   Put that on

23   there.

24   ///

25

1    it -- is it true that you've never personally heard

2    words out of his mouth either on a video or in person or

3    on the phone making representations to you?  Is that

4    true?

5         A.   Well, I've attended -- I've listened to tapes,

6    and so forth, quite a few of them --

7         Q.   No.

8         A.   -- and reads book, so . . .

9         Q.   Representations to you that caused you to

10   purchase the program?

11        A.   Well, I -- I received them as part of the

12   program.

13        Q.   You had --

14        A.   He sent out tapes.

15        Q.   -- already purchased it, right?

16        A.   Yeah.  I had already purchased it.

17        Q.   Okay.  Prior to you purchasing the program, did

18   he make any statements to you personally via video, on

19   the phone?

20        A.   There was a video I believe from the first

21   session that I -- I told you I received several videos.

22   I -- it's now unclear exactly when I received them, but

23   I played several videos from Trump talking about real

24   estate --

25        Q.   Well, you would have gotten --

Page 150

1      A.    -- investment.

2      Q.    -- the videos after you purchased something,

3   correct?

4      A.    Yeah.

5      Q.    All right.  So can you state right now as you

6   sit here that you're aware of any statement, either in

7   writing or -- or in the video that you received, that

8   Donald Trump promised a one-year mentorship with all the

9   access and contracts needed?

10     A.    I would need to review all the documents that I

11  have, but he did not personally talk to me orally.  But

12  in writing, I've received several letters and

13  information -- this whole binder is full of them -- that

14  states what this program was about.

15     Q.    Okay.  The -- the ones from Donald Trump

16  personally, we looked at those earlier this morning,

17  correct?

18     A.    I'm not certain I have all of those letters.

19  I'm -- I remember this one.  I'd have to look through

20  this document to see if there were any other letters

21  sent.

22     Q.    All right.  Would you look at line 17.  It

23  states that:  "When plaintiffs did not get the promised

24  information at the seminars, defendants promised that it

25  was still coming.  They could get it from their mentors,

Ex. 10 - 378

Page 1

1                    UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3    _____

                                           )
4    TARLA MAKAEFF, BRANDON KELLER,        )
     ED OBERKROM, and PATRICIA MURPHY,     )
5    on Behalf of Themselves and All       )
     Others Similarly Situated,            )
6                                          )
                   Plaintiffs,             ) Case No.
7                                          ) 10 CV 0940 CAB (WVG)
            vs.                            )
8                                          )
     TRUMP UNIVERSITY, LLC, (aka Trump     )
9    Entrepreneur Initiative) a New        )
     York Limited Liability Company,       )
10   DONALD J. TRUMP, and DOES 1           )
     through 50, inclusive,                )
11                                         )
                   Defendants.             )
12   _____)

13

14

15           Videotaped Deposition of Sonny Low

16           taken at 655 West Broadway, Suite 1900,

17           San Diego, California, commencing at

18           9:23 a.m., on Thursday, October 4, 2012,

19           before Kimberly S. Thrall, RPR, CSR No. 11594.

20

21

22

23   Reported by:  Kimberly S. Thrall, RPR, CSR. No. 11594

24                 Job No.  54028

25

Ex. 10 - 379

Page 25

```
 1   was --
 2       A.   No.
 3       Q.   -- to live in it, right?
 4       A.   Yes.
 5       Q.   All right.  And how did you first hear about
 6   Trump University?
 7       A.   Full-page advertisements he had in the
 8   San Diego Union-Tribune.
 9       Q.   And do you still have a copy of that
10   advertisement?
11       A.   No.
12       Q.   Do you remember what it said?
13       A.   I remember the gist of what it said.  I cannot
14   quote word by word.
15       Q.   What's your best memory of what the ad --
16       A.   My best memory -- I cannot be literal with
17   this.  I can give you the gist.  In 2009, we were having
18   a crisis in this country in terms of real estate.
19   Mr. Trump's ads stated profit from real estate
20   investing.  Learn from me secrets.  If you want sec- --
21   secure your income, come to one of my free seminars.
22   That was the gist of the important stuff that caught my
23   attention.  Free seminar.
24       Q.   Did that part particularly interest you, that
25   it was free?
```

Ex. 10 - 380

Page 37

1     Q.   And in the questions and answers, he answered a

2   question that said he will be at a live event?

3     A.   Don't recall.

4     Q.   All right.   So where is the information that

5   you saw or heard that Donald Trump was going to be at a

6   live event?

7     A.   I don't recall.

8     Q.   Did you ever submit a question online to be

9   answered by Mr. Trump?

10    A.   No.

11    Q.   Did you ever read the question-and-answer

12   information online?

13    A.   No.

14    Q.   And what you're talking about is there's a

15   forum on the Internet for Trump University in which

16   there's a question-and-answer portion of the website,

17   correct?

18    A.   Yes.

19    Q.   That's what you were referring to?

20    A.   I do not recall a hundred percent, but I

21   believe in the ads, the information that he sent me,

22   that we -- that he -- that -- that he sent all of us,

23   that you were going to learn from Mr. Trump his secrets.

24    Q.   Do you -- do you understand the difference in

25   these two questions:   Whether there was a representation

Ex. 10 - 381

Page 188

1    is part of the contract?

2          MS. ECK:  Objection.  Calls for a legal

3    conclusion.

4          THE WITNESS:  I believe there should have been

5    an attachment that described fully, especially when you

6    pay the amount of monies we're talking about.

7    BY MR. SCHNEIDER:

8        Q.   You're saying that you think that would have

9    been more appropriate?

10       A.   Yes.

11       Q.   Did you ever see any kind of video of

12   Donald Trump regarding Trump University?

13       A.   Per my recollections, no.

14       Q.   During the three-day -- well, let's start with

15   the James Harris program.

16          Was that a PowerPoint presentation, the free

17   90-minute program?

18       A.   Per my recollections, he had flip charts, and

19   he was writing stuff with a felt pen.

20       Q.   So when you say a flip chart, you're talking

21   about pieces of paper?

22       A.   Well, flip charts, yeah.  You know, the -- that

23   is per my recollection.

24       Q.   I understand.

25          And he was talking as he would flip through the

Page 1

1            UNITED STATES DISTRICT COURT

2        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3    _____
                                          )
4    TARLA MAKAEFF, BRANDON KELLER,       )
     ED OBERKROM, and PATRICIA MURPHY,    )
5    on Behalf of Themselves and All      )
     Others Similarly Situated,           )
6                                         )
              Plaintiffs,                 )  Case No.
7                                         )  10 CV 0940 CAB (WVG)
          vs.                             )
8                                         )
     TRUMP UNIVERSITY, LLC, (aka Trump    )
9    Entrepreneur Initiative) a New       )
     York Limited Liability Company,      )
10   DONALD J. TRUMP, and DOES 1          )
     through 50, inclusive,               )
11                                        )
              Defendants.                 )
12   _____)

13

14

15        Videotaped Deposition of John Brown

16        taken at 655 West Broadway, Suite 1900,

17        San Diego, California, commencing at

18        9:18 a.m., on Monday, October 8, 2012,

19        before Kimberly S. Thrall, RPR, CSR No. 11594.

20

21

22

23

24   Reported by:  Kimberly S. Thrall, RPR, CSR. No. 11594

25            Job No. 54027

1   because you're afraid he's going to say something that's

2   harmful to your case, and that's not proper.

3          MS. ECK:  Objection.  Misstates the witness's

4   testimony.  Objection.  Asked and answered.  Objection.

5   Lacks foundation.

6          MR. SCHNEIDER:  Okay.  So I want to walk

7   through this with Mr. Brown.

8   BY MR. SCHNEIDER:

9       Q.   Mr. Trump made no personal statements, words

10  out of his mouth at the free program, correct?

11      A.   Mr. Trump?

12      Q.   Right.

13      A.   No.

14      Q.   Okay.

15      A.   He wasn't there.

16      Q.   Right.  And did he say anything in the video

17  you saw about the $1,495 program?

18      A.   He didn't mention it specifically, no.

19      Q.   All right.  Did you see any writings from

20  Donald Trump about the 1,495 program before you

21  purchased it?

22      A.   Any writings?  You mean like a -- a letter in

23  the mail or --

24      Q.   Anything, whether it was a -- a letter in the

25  mail or something that was from Donald Trump that you

Page 42

1   reviewed or read or received before you purchased the

2   1,495 program.

3       A.   Not directly from Mr. Trump, but it was

4   implied.

5       Q.   Now, what are you referring to that was

6   implied?

7       A.   The people in the back of the room were saying

8   this is the program that would make you a success.

9       Q.   Anything else?

10      A.   Which is exactly what Mr. Trump had said.

11  This --

12      Q.   Did he --

13      A.   This -- these programs, this information, this

14  education would make you a success.

15      Q.   Now, did anybody tell you that you were

16  guaranteed to be successful?

17      A.   Not guaranteed, no.

18      Q.   Can you remember anything else that you

19  received or reviewed before you decided to purchase the

20  1,495 program?

21      A.   There was a document that -- it was like a

22  purchase statement or something that had the prices on

23  it.  There was writing at the bottom, and I -- I signed

24  the bottom, which is what you typically do when you buy

25  something.