ROBBINS GELLER RUDMAN
 & DOWD LLP
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND<br><br>JUDGE: Hon. Gonzalo P. Curiel<br>DATE: August 30, 2013<br>TIME: 1:30 p.m.<br>CTRM: 2D (Schwartz) |

[REDACTED]

868286_1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 1

II. GOOD CAUSE EXISTS FOR ADDING THE RICO CLAIM ..................... 2

    A. Recent Discovery Satisfies "Good Cause" for Fed. R. Civ. P. 16 .......... 2

        1. The Script .................................................................................. 3

        2. 2005 NYSED Letter and Defendants' Fictitious Office ............ 5

        3. Trump and Sexton Depositions ................................................. 5

        4. Links to the Main Promotional Video in Email Blasts .............. 6

    B. This Case Is Readily Distinguishable from *Campion* .......................... 6

    C. Plaintiffs Expressly Requested Relief Under Fed. R. Civ. P. 16 ............ 7

III. LEAVE TO AMEND IS IN THE INTEREST OF JUSTICE ........................ 7

        1. Plaintiffs' Motion Is Not Brought in Bad Faith ......................... 8

        2. Plaintiffs Did Not Unduly Delay ............................................... 8

        3. Defendants Have Not Carried Their Heavy Burden to Show They Will Suffer Undue Prejudice ................................... 8

        4. The Proposed Amendment Would Not Be Futile ...................... 9

IV. CONCLUSION ......................................................................................... 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) .................................................................................... 10

*Campion v. Old Republic Home Prot., Co.*,
   861 F. Supp. 2d 1139 (S.D. Cal. 2012) ..................................................... 6, 7

*FDIC v. Jackson-Shaw Partners No. 46, Ltd.*,
   No. Civil 92-20556 SW, 1994 U.S. Dist. LEXIS 21477
   (N.D. Cal. Aug. 12, 1994) .............................................................................. 9

*Inside Radio v. Clear Channel Commc'ns*,
   209 F. Supp. 2d 302 (S.D.N.Y. 2002) .......................................................... 8

*Larios v. Nike Retail Servs.*,
   No. 11cv1600-GPC-NLS, 2013 U.S. Dist. LEXIS 112761
   (S.D. Cal. Aug. 9, 2013) ................................................................................ 8

*Padilla v. Bechtel Constr. Co.*,
   No. CV-06-286-PHX-LOA, 2007 U.S. Dist. LEXIS 14481
   (D. Ariz. Feb. 27, 2007) ................................................................................. 7

*Powell v. Metro One Loss Prevention Servs. Group, Inc.*,
   No. 12 Civ. 4221 (LAP)(DF), 2013 U.S. Dist. LEXIS 111601
   (S.D.N.Y. July 26, 2013) ........................................................................... 7, 9

*Ryskin v. Banner Health, Inc.*,
   No. 09-cv-01864-MEH-KMT, 2010 U.S. Dist. LEXIS 48035
   (D. Colo. Apr. 16, 2010) ............................................................................ 2, 7

*Schmuck v. United States*,
   489 U.S. 705 (1989) .................................................................................... 10

*Thompson v. Keane*,
   No. 95 Civ. 2442 (SHS)(AJP), 1996 U.S. Dist. LEXIS 8878
   (S.D.N.Y. June 21, 1996) .......................................................................... 8, 9

*United States v. Chung Lo*,
   231 F.3d 471 (9th Cir. 2000) ....................................................................... 10

|   | Page |
|---|---|

**STATUTES, RULES AND REGULATIONS**

18 United States Code
  § 1961, *et seq.* .......................................................................................... *passim*

Federal Rules of Civil Procedure
  Rule 15 ............................................................................................................. 7
  Rule 15(a) ........................................................................................................ 7
  Rule 16 ........................................................................................................ 2, 7
  Rule 23(c)(1)(A) .............................................................................................. 6

Plaintiffs John Brown, J.R. Everett, Sonny Low, Tarla Makaeff, and Ed Oberkrom (collectively, "Plaintiffs") respectfully submit the following reply:

## I. INTRODUCTION

Standing up to one of the most powerful men in the world is a daunting proposition. After Tarla Makaeff stood up to Donald Trump by initiating this case, Trump promptly used his enterprise, Trump University, LLC ("TU"), to sue her. Not because he needed her money, but to punish her. To intimidate her and others. During his subsequent deposition, Trump threatened to sue the law firm representing Ms. Makaeff: "I honestly look forward to winning this case and suing your law firm for as much as we can sue them for, and we will be doing that."[1] For the lawyer representing Ms. Makaeff, he added: "And you individually."[2] Trump greets nearly every step Plaintiffs take with the same vitriol, as in his opposition to Plaintiffs' present motion for leave to amend. Accusing Plaintiffs of bad faith under these circumstances is just another example of this cycle of intimidation. And it works.

Plaintiffs knew what would be waiting for them if they accused Donald Trump of committing wire and mail fraud. Of being a racketeer, a criminal. So Plaintiffs had to be sure they could prove such allegations. They had to depose Trump. They had to depose the President of Trump's enterprise. They had to fight their way through months of Trump delaying the production of key documents and denying the existence of any scripts for the Live Event instructors whom he had falsely claimed to have handpicked. As recently as April of this year, Trump was chiding Plaintiffs because they "did not include the purported 'script' in their moving papers – supposedly the *key* document in their entire case. The reason: there never was a script." Dkt. No. 213 at 5 (emphasis in original). But in June, Trump finally produced this "*key document*," which clearly buttresses the false impression that Trump was integrally involved with TU and its Live Event instructors. Less than two months later,

---

[1]   Dkt. No. 122-4, Ex. 28 at 48:11-17.

[2]   *Id.* at 48:20.

Plaintiffs moved for leave to amend. There was no lack of diligence, no bad faith. Nothing other than the cautiousness born of years of Trump's threats and scorched-earth tactics. As such, Plaintiffs respectfully request that the Court grant their motion.

## II.  GOOD CAUSE EXISTS FOR ADDING THE RICO CLAIM

### A.  Recent Discovery Satisfies "Good Cause" for Fed. R. Civ. P. 16

Plaintiffs have diligently pursued discovery in order to unearth the extent of Trump's misconduct. Neither Plaintiffs nor the Court anticipated defendants would delay so long in producing key documents, nor that belated discovery would cast such a different light on the case, compelling Plaintiffs to invoke the RICO statute.

Defendants do not acknowledge their belated document production, which provides ample "good cause" for the relief Plaintiffs seek because it was through these documents that Plaintiffs recently learned "certain facts regarding the Defendants' conduct and supporting the new claim . . . during the discovery period." *Ryskin v. Banner Health, Inc.*, No. 09-cv-01864-MEH-KMT, 2010 U.S. Dist. LEXIS 48035, at *6 (D. Colo. Apr. 16, 2010). Instead, defendants devote seven pages of their brief to a smattering of TAC allegations that can also be found in the FAC. *See* Defendants' Opposition to Plaintiffs' Motion for Leave to Amend, filed August 16, 2013 ("Defs' Mem.") at 6-12. This does not defeat good cause. Allegations common to the proposed Fourth Amended Class Action Complaint ("FAC") and Third Amended Class Action Complaint ("TAC") prove nothing more than the unremarkable proposition that this case is still about Trump's misrepresentations about his integral involvement with his so-called "University."

Though defendants argue the FAC contains no new evidence, a cursory review of the "blue line" provided with defendants' opposition shows this is simply not true.[3]

---

[3] Defendants' brief takes too many liberties with the facts for Plaintiffs to address each one. For example, defendants misquote the draft FAC as alleging Trump Organization ("Trump Org.") is a co-conspirator "because it 'shared a computer server' with Trump University." Defs' Mem. at 1 n.1. The FAC actually alleges: "Trump Organization also ***maintains*** Trump University's servers in New York." Dkt. No. 248-3, ¶31 (emphasis supplied and citations omitted here and throughout, unless

*See* Dkt. No. 253-2, Ex. 2. And defendants do not, and cannot, refute that Plaintiffs only recently were able to obtain many "key" documents as shown herein.

The following are just examples of documents Plaintiffs obtained only recently, despite having requested them nearly two years ago[4]: (1) the "Preview Script" ("Script"), the "key" document that defendants denied existed for years and withheld until June 2013[5]; (2) Sexton's transmittal email and additional emails in which Sexton explains how the "team" would be trained to use the Script – defendants withheld all of these documents until June 2013[6]; (3) a New York State Education Department ("NYSED") letter to Trump, providing direct evidence that he was on notice in 2005 that his "University" was unlawful, was produced by the NYSED in April 2013 after a second FOIA request[7]; and (4) emails showing Trump set up a fictitious office to elude the NYSED, which defendants withheld until January 2013.[8] Each of these documents provides evidence of Trump's specific intent for a RICO violation.

### 1. The Script

Because defendants cannot deny that they just produced the Script, they argue "no harm, no foul" because they had produced a PowerPoint presentation with

---

otherwise noted). Michael Sexton confirmed this allegation when he testified that TU's mail server was managed by Trump Org.'s IT director, Jay Chao. Dkt. No. 122-2, Ex. 14 at 447:21-448:6 (sealed). In addition, Trump Org.'s in-house counsel, Alan Garten, submitted a declaration about the litigation hold in this case, which noted that 57 of 60 persons who received the "litigation hold" were employed by Trump Org., including its entire IT department. Ex. 1. (Here, and throughout, unless otherwise noted, all "Ex." references are to the Declaration of Jason A. Forge in Support of Plaintiffs' Reply, filed concurrently herewith.) Of course, Trump Org. and TU share the same owner – Trump – so his intent is attributed to both entities.

[4] Contrary to the suggestion that Plaintiffs requested documents at issue after the deadline to amend, each of these documents was requested in October 2011. *See* Ex. 2.

[5] Dkt. No. 237-1, Ex. 2 to Forge Decl. (sealed).

[6] *See id.*

[7] Dkt. No. 221-2, Ex. 138, NYSED 000106-07.

[8] Dkt. No. 195-1, Ex. 133, TU 129810-17 (sealed); Dkt. No. 221-2, Ex. 140, TU 137770 (sealed).

"verbatim" content in the margins of the slides.[9] Defendants argue these "talking points" are the same as the Script and, thus, the Script is not new. Defs' Mem. at 14-15. Defendants' reversal from their prior lambasting of Plaintiffs for calling the "talking points" the equivalent of a Script (*see* Dkt. No. 230 at 3-4) demonstrates that the belatedly-produced Script eliminated whatever room for argument that defendants had previously attempted to exploit. Now, even defendants must concede the existence of an actual script for TU's live instructors. In another reversal this previously withheld document triggered, defendants now admit the Script may have been used at Live Events, despite taking a contrary position just last month. *Compare* Dkt. No. 241 at 11 (conceding existence of the Script, but denying its use) *with* Defs' Mem. at 15 (arguing if the Script was used, it was at "Live Events," not transmitted to students via mail or wire (as shown below, this latter point is irrelevant)). Armed with the Script, Plaintiffs can now prove it was used.

Moreover, as described above, Sexton's transmission of the Script was far from an isolated event. Additional emails reflect efforts to hone the Script and train instructors to use it, all of which directly contradict Sexton's sworn deposition testimony – in response to his own counsel's question:



Dkt. No. 138-1, Ex. 38 (Sexton Dep. Vol. II at 512:17-21) (sealed). Sexton also submitted a sworn declaration, asserting that TU used no scripts for any Live Event. *See* Dkt. No. 138-1, Ex. 1 at 6 (sealed). Two instructors submitted similar declarations. It is difficult to overstate the significance of evidence that enables a plaintiff to discredit an alleged co-conspirator and other potential defense witnesses.

---

[9] Defendants did not produce native versions of the PowerPoints until Plaintiffs demanded them. And even then, Plaintiffs' counsel had to expand the margins and view the documents in a different format in order to find the talking points.

1 The Script and the related emails do just that, which is another reason why they were
2 keys to unlocking Plaintiffs' RICO claim.

### 2. 2005 NYSED Letter and Defendants' Fictitious Office

Defendants contend the NYSED allegations are not new because the TAC alleged that in *2010*, NYSED told Trump to stop using the title "University," and he did. *See* Defs' Mem. at 17-18. The TAC reflected Plaintiffs' *prior* misunderstanding that Trump immediately changed the name, as Sexton had falsely testified, and as suggested in Trump Org. attorney George Sorial's declaration. *See* Dkt. No. 195-1, Ex. 85 at 160:6-24 (sealed); Dkt. No. 138-1, Ex. 52-5807 (sealed).

What Plaintiffs, and the rest of the public, had no way of knowing at the time was that on May 27, *2005*, the NYSED directed Trump himself to stop using the title "University" because, among other reasons, TU did not qualify to use a name reserved for "higher education[al] institution[s]" that offered registered curricula, degrees, *and* doctoral programs – TU failed to meet any of these three required criteria. Dkt. No. 221-2, Ex. 138, NYSED 000106-07. To this day, defendants have not produced the May 27, 2005 letter, and Plaintiffs had to submit a second FOIA request to the NYSED before obtaining it in April 2013. Other documents that defendants produced this year show Trump's response was not to comply or to cease his illegal enterprise, but to set up a fictitious office in Delaware to elude authorities and continue operating illegally in New York for five years. Dkt. No. 195-1, Ex. 133, TU 129810-17 (sealed). It should go without saying that this condemnation by the NYSED would have been material to any reasonable prospective student. Such evidence casts a longer shadow on the misconduct here and again shows specific intent supporting the RICO claims.

### 3. Trump and Sexton Depositions

Defendants cannot refute that Trump and Sexton's depositions occurred after the deadline to amend the pleadings. And Trump's testimony proved his lack of involvement in the curriculum and selection of instructors for the Live Events. His

knowing deception. Similarly, Sexton's deposition revealed Trump's lack of involvement in the selection of the Live Event instructors.[10] Defendants argue the depositions were 'voluntarily' taken after the deadline to amend. Defs' Mem. at 18-19. Plaintiffs waited until August and September 2012 as they were waiting to receive and review documents from defendants. Still, defendants withheld key documents until *after* Plaintiffs deposed Trump and Sexton.

### 4. Links to the Main Promotional Video in Email Blasts

Defendants blame Plaintiffs for not discovering earlier links to the Main Promotional Video sent via one or two emails, but defendants never disclosed the wider spread use of the Main Promotional Video (*see* Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Leave to Amend, filed August 2, 2013 ("Pltfs' Mem.") at 4), and they cannot deny their belated productions reveal links to the Video that were previously undisclosed.

### B. This Case Is Readily Distinguishable from *Campion*

Defendants rely heavily on *Campion v. Old Republic Home Prot., Co.*, 861 F. Supp. 2d 1139 (S.D. Cal. 2012). But there, the court granted summary judgment to defendants contemporaneously with denying plaintiff's motion to amend. *Id.* at 1153. Unlike here, the plaintiff in *Campion*: (1) did not argue newly-developed evidence supported his "new" claims; and (2) filed his motion over *two years* after the deadline to amend and a year after class certification was denied. *Id.* at 1151.

Indeed, *Campion* simply reflects the vast difference between moving for leave to amend before summary judgment has been briefed versus after. *Id.* at 1152 (citing authorities). Class certification is hardly analogous to summary judgment because class certification is not dispositive, but rather a preliminary procedural motion to be decided "[a]t an early practicable time after a person sues ... as a class representative." Fed. R. Civ. P. 23(c)(1)(A). Here, no dispositive motion has been

---

[10] *See, e.g.*, Dkt. No. 195-1, Ex. 85 at 186:15-20, 226:15-227:22 (sealed); Dkt. No. 122-2, Ex. 14 at 360:15-362:3, 380:18-384:7 (sealed).

filed, discovery is ongoing, and no trial date set.

Unlike the summary judgment motion in *Campion*, even if Trump defeated class certification, there would be nothing to prevent an unnamed victim from filing a new class action with civil RICO claims. In fact, a Class Member in this District has indicated interest in filing a RICO claim in this Court to proceed side-by-side with this action even if leave is denied. As one court put it, "because Plaintiff's proposed new claims rely on essentially the same facts as were set out in his original Complaint, forcing Plaintiff 'to institute a new action against the . . . defendant[] would run counter to the interests of judicial economy.'" *Powell v. Metro One Loss Prevention Servs. Group, Inc.*, No. 12 Civ. 4221 (LAP)(DF), 2013 U.S. Dist. LEXIS 111601, at *13 (S.D.N.Y. July 26, 2013). Because recently-discovered evidence supports the addition of a RICO claim, Plaintiffs should be permitted file their FAC. *See, e.g., Ryskin*, 2010 U.S. Dist. LEXIS 48035.

### C. Plaintiffs Expressly Requested Relief Under Fed. R. Civ. P. 16

Defendants argue that Plaintiffs' request is procedurally infirm because it did not formally request modification of the scheduling order, but Plaintiffs' request for relief from the scheduling order was implicit in their motion for leave, which began by addressing Rule 16: "Under Rule 16, a scheduling order may be modified for good cause and with the Court's consent." Pltfs' Mem. at 2. Plaintiffs explained that "good cause" exists under Rule 16 due to recent discovery revealing RICO to be an appropriate remedy. *Id.* Other courts in the Ninth Circuit have modified scheduling orders and permitted leave to amend even without a titled motion. *See Padilla v. Bechtel Constr. Co.*, No. CV-06-286-PHX-LOA, 2007 U.S. Dist. LEXIS 14481, at *21 (D. Ariz. Feb. 27, 2007) (modifying scheduling order *sua sponte*).

### III. LEAVE TO AMEND IS IN THE INTEREST OF JUSTICE

Once a movant demonstrates good cause, as Plaintiffs have, the focus shifts from Fed. R. Civ. P. 16 to Fed. R. Civ. P. 15. As this Court recently held: "Because FRCP 15(a) favors a liberal policy, the nonmoving party bears the burden of

demonstrating why leave to amend should not be granted." *Larios v. Nike Retail Servs.*, No. 11cv1600-GPC-NLS, 2013 U.S. Dist. LEXIS 112761, at *6 (S.D. Cal. Aug. 9, 2013). "The single most important factor is whether prejudice would result to the nonmovant as a consequence of the amendment." *Id.* at *8. "The party opposing amendment bears the heavy burden of overcoming the presumption in favor of amendment which arises absent a demonstration of prejudice or a strong showing of any of the remaining factors." *Id.* Each of these considerations favors leave here.

### 1. Plaintiffs' Motion Is Not Brought in Bad Faith

Plaintiffs will not respond in kind to Trump's mudslinging. The objective record here, including the previously withheld and newly obtained evidence, makes it abundantly clear that Plaintiffs have not brought this motion in bad faith.

### 2. Plaintiffs Did Not Unduly Delay

Having falsely denied the existence of the Script until June 2013, and having withheld other documents described above, defendants add insult to these injuries by accusing **Plaintiffs** of undue delay. Leave to amend is appropriate because the "material produced by defendants in discovery," albeit belatedly, transformed a possible RICO case into a strong one. *See Thompson v. Keane*, No. 95 Civ. 2442 (SHS)(AJP), 1996 U.S. Dist. LEXIS 8878, at *4 (S.D.N.Y. June 21, 1996).

### 3. Defendants Have Not Carried Their Heavy Burden to Show They Will Suffer Undue Prejudice

Defendants contend leave to amend will cause them prejudice. Defs' Mem. at 24. But any amendment is "prejudicial" in the literal sense. That is not the standard. *See Inside Radio v. Clear Channel Commc'ns*, 209 F. Supp. 2d 302, 305 (S.D.N.Y. 2002) (issue is not whether the amendment would be prejudicial but "whether the prejudice the opposing party will suffer is the sort that the law will protect against").

Defendants concede the factual allegations for the RICO claims are largely the same as in the TAC. In fact, defendants spend nearly 10 pages of their brief arguing this point. *See* Defs' Mem. at 4-14. This concession defeats defendants' prejudice

argument because this is precisely the type of consideration to discern whether undue prejudice would result. *See Thompson*, 1996 U.S. Dist. LEXIS 8878, at *4 ("Thompson's new claims arise from the same facts as his existing claims. Moreover, it is unclear what discovery defendants need, since defendants know what they did and what their motive was, and defendants already took . . . Thompson's deposition."); *Powell*, 2013 U.S. Dist. LEXIS 111601, at *13 (new claims relied on same facts).

Defendants argue without support that the RICO claims will result in a redirection of the case. But the only claimed additional discovery is to "re-depose . . . Plaintiffs to learn exactly which 'mail' or 'wire' communications they claim they saw and relied on, and how it caused direct injury." Defs' Mem. at 24. Defendants already examined Plaintiffs about communications received from Trump and their viewing of the Main Promotional Video. *See, e.g.*, Dkt. No. 253-3, Ex. 10; Dkt. No. 253-4, Exs. 11-12. More fundamentally, as explained below, defendants' argument is based on their misunderstanding of the mail and wire fraud statutes, which do ***not*** require actual reliance or any awareness of mailings or wires. Thus, defendants have failed to demonstrate the need for any additional "RICO discovery," let alone any that is "unduly burdensome." *FDIC v. Jackson-Shaw Partners No. 46, Ltd.*, No. Civil 92-20556 SW, 1994 U.S. Dist. LEXIS 21477, at *19 (N.D. Cal. Aug. 12, 1994).[11]

### 4. The Proposed Amendment Would Not Be Futile

Trump's entire futility argument rests on his contentions that "RICO claims can only be alleged by parties who saw the purported mail or wire frauds, and were directly injured by them." *See* Defs' Mem. at 3. Taking these contentions in reverse order, by definition, each Class Member is a direct victim of Trump's mail and wire fraud schemes – as pled, the purpose of the schemes was to victimize these people by obtaining their money under materially false pretenses. *Compare* Dkt. No. 248-3,

---

[11] Defendants also argue they will be prejudiced because class certification has been briefed, but Trump has only himself to blame for withholding key evidence until after class certification briefing. Moreover, as explained above, in light of the previously withheld evidence, Trump is going to face the RICO claims in this action or a newly filed one, so it is actually much more cost effective to face these claims here.

¶¶32-34 & ¶¶84-85, *with* Ninth Cir. Model Crim. Jury Instr. No. 8.121.

Trump's other contention, that the victims of his scheme are limited to those "parties who saw the purported mail or wire frauds," is nonsensical. Defs' Mem. at 3. Even if Trump meant to assert that the only direct victims of mail or wire fraud schemes are those individuals who receive, or see, an actual mailing or wire transmission, such an assertion would reflect a fundamental misunderstanding of these crimes. The victims of these offenses are victims of the ***schemes***, regardless of their awareness, let alone observation, of any mailing or wire transmission. In fact, it is black-letter law that mailings or wires "can occur after the defendant has obtained her fee, if 'the mailing is part of the execution of the scheme as conceived by the perpetrator at the time.'" *United States v. Chung Lo*, 231 F.3d 471, 478 (9th Cir. 2000) (quoting *Schmuck v. United States*, 489 U.S. 705, 715 (1989)); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008) ("RICO's text provides no basis for imposing a first-party reliance requirement.").

In *Schmuck*, the Supreme Court affirmed the defendant's mail-fraud conviction, which was based on a scheme to sell used cars whose odometers the defendant had rolled back. 489 U.S. at 711. The mailings alleged in *Schmuck* were not sent to the victim car buyers, but rather were title-application forms that the defendant mailed to the state *after* he had already taken the victims' money. *Id.* at 712. The question is not whether the victims saw the mailings (or wires), but rather whether the mailings or wires were "'incident to an essential part of the scheme.'" *Id.* Here, there is no question that Plaintiffs alleged facts sufficient to satisfy this element that the mailings and wires were an essential part of the scheme, regardless of whether any plaintiff or Class Member saw them. Accordingly, Trump's futility argument is, well, futile.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully ask the Court to modify the scheduling order in order to grant Plaintiffs' leave to file their proposed FAC.

| | | |
|---|---|---|
| 1 | DATED: August 23, 2013 | Respectfully submitted, |
| 2 | | ROBBINS GELLER RUDMAN |
| 3 | |   & DOWD LLP<br>JASON A. FORGE |
| 4 | | RACHEL L. JENSEN<br>THOMAS R. MERRICK |
| 5 | | |
| 6 | |           s/ Jason A. Forge<br>JASON A. FORGE |
| 7 | | |
| 8 | | 655 West Broadway, Suite 1900<br>San Diego, CA 92101 |
| 9 | | Telephone: 619/231-1058<br>619/231-7423 (fax) |
| 10 | | ZELDES HAEGGQUIST & ECK, LLP |
| 11 | | AMBER L. ECK<br>HELEN I. ZELDES |
| 12 | | ALREEN HAEGGQUIST<br>AARON M. OLSEN |
| 13 | | 625 Broadway, Suite 1000<br>San Diego, CA 92101 |
| 14 | | Telephone: 619/342-8000<br>619/342-7878 (fax) |
| 15 | | Attorneys for Plaintiffs and Proposed Class |

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 23, 2013.

    s/ Jason A. Forge
JASON A. FORGE

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: jforge@rgrdlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG Makaeff v. Trump University, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

- **Stephen F Yunker**
  sfy@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)