# EXHIBIT 1

Exhibit 1
- 1 -

1  David K. Schneider (CSB 139288)
   YUNKER & SCHNEIDER
2  655 West Broadway, Suite 1400
   San Diego, California 92101
3  Telephone: (619) 233-5500
   Facsimile: (619) 233-5535
4  Email: dks@yslaw.com

5  Attorneys for Defendants TRUMP UNIVERSITY, LLC and
   DONALD J. TRUMP

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated, | Case No. 10 CV 0940 CAB (WVG) |
| Plaintiffs, | CLASS ACTION |
| v. | DECLARATION OF ALAN G. GARTEN RE LITIGATION HOLD EFFORTS OF TRUMP UNIVERSITY, LLC |
| TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative, LLC, a New York Limited Liability Company, DONALD J. TRUMP, and DOES 2 through 50, inclusive, | |
| Defendants. | |

Pursuant to the Court's order dated December 24, 2012 (Docket 188), defendants respectfully submit this declaration describing its "litigation hold" efforts:

I, Alan G. Garten, declare:

1. I am Executive Vice President and Litigation Counsel for The Trump Organization ("Trump Org.") and its affiliated companies, including, without limitation, Trump University, LLC ("Trump U" and together with Trump Org., "Trump"). As such, I am fully familiar with the facts and circumstances set forth herein.

2. Since first being notified of Plaintiffs' claims, Trump, under my direct supervision and oversight, has undertaken extensive efforts to not only preserve, but also locate and produce all responsive documents in Trump's custody, possession or control.

3. By way of example, on May 12, 2010, the same day we received the complaint in this action, I instituted a formal "litigation hold" by preparing and circulating an email specifically advising various Trump employees of (i) the commencement of this class action by both the named plaintiff "and all others similarly situated" and (ii) their obligation to "not delete, destroy or transfer any tangible or intangible files (including emails and other electronic data) associated with this dispute, including documents on backup servers that are scheduled for automatic deletion."

4. Notably, the "litigation hold" was circulated to more than fifty-five (55) Trump Organization employees, including, without limitation, the company's chief financial officer, chief operating officer, general counsel, information technology director, various members of the Trump family, key members of both the legal and accounting departments and numerous administrative assistants.

5. More significantly, the "litigation hold" was sent out and received by all of the remaining executives at Trump University, including the company's Chief Executive Officer, Michael Sexton, and the company's comptroller. A list of those individuals (and their titles) who received the formal written litigation hold is attached hereto as **Exhibit A**.

6. Specifically, the types of documents and files covered under the "litigation hold" included "all files and information in (the employee's) possession," and directed employees not to delete or destroy "any tangible or intangible files (including emails and other electronic data) associated with the dispute, including documents on backup servers that are scheduled for automatic deletion." The language used would cover the entire universe of documents, both digital and physical.

7. Further, to the extent any employee was confused as to scope and breadth of the "litigation hold," a copy of the Summons and Class Action Complaint, which makes abundantly clear on the second page that it is being brought on behalf of all persons who "purchased seminars, workshops, mentorships, retreats and/or programs . . . from Trump University throughout the United

1  States," was attached. Additionally, recipients of the "litigation hold" were provided with both the
2  name and telephone number of a contact person within the legal department in case they had any
3  "questions concerning this information" whom they were advised to contact immediately.

4      8.    Efforts to enforce the "litigation hold" were carried out by the executive and IT teams
5  of Trump University as well as the legal and IT departments at The Trump Organization. At Trump
6  University, all employees were notified of the "litigation hold" either verbally or in writing and the
7  IT department immediately began to isolate all relevant documents and e-mails. Employees and
8  Independent Contractors were reminded that under their Confidentiality Agreements, "the Recipient
9  shall promptly return to Trump all written material containing or reflecting any Information,
10 including all copies thereof, whether physically or electronically recorded, and whether prepared by
11 Trump or otherwise. In addition, the Recipient and its representatives will not retain any copies,
12 extracts, or other reproductions, in whole or in part, of the Information. The Recipient shall
13 thereafter destroy all documents, memoranda, notes or other writings prepared by the Recipient, or
14 its representatives, which are based upon the Information, and will acknowledge such destruction in
15 writing to Trump." At The Trump Organization, the legal and IT department conducted a search of
16 all physical and digital files in the office, as well as in document storage and on computer servers
17 and prepared them for production.

18     9.    However, Trump's efforts to preserve, locate and produce documents did not end with
19 the implementation of a "litigation hold." To the contrary, the "litigation hold" instead merely
20 served as the launching point for Trump's efforts to gather, review and produce all documents in its
21 possession responsive to Plaintiffs' requests.

22     10.    Specifically, since the filing of the lawsuit, Trump has had two individuals, one
23 employed by Trump Org. and one employed by Trump U, whose primary responsibility has been to
24 oversee the gathering and production of responsive documents. Working under the supervision of
25 the legal department and in constant contact and consultation with both outside counsel and Trump's
26 information technology director, each of these individuals have spent literally hundreds upon
27 hundreds of hours performing countless electronic and physical file searches at the offices of both
28 companies. To the extent these searches were ever unsuccessful, the two individuals would

1  regularly consult with in-house, outside counsel and IT to further refine and modify the scope and
2  nature of the searches.

3       11.    In fact, when this lawsuit was first filed, Trump U retained the services of two of its
4  former information technology employees to develop a mechanism for Trump U's database to be
5  more easily searched. These two individuals alone spent over 100 hours in developing and
6  implementing such protocols. Separately, several individuals employed in Trump Org.'s IT
7  department have spent hundreds of hours (including weekends) searching the computer servers to
8  locate documents for your review. Over the last few years, this process of searching and gathering
9  electronic and physical documents and files has occurred countless times and continues, with the
10 same intensity as before, to this very day.

11      12.    Furthermore, as far as document preservation is concerned, since implementation of
12 the "litigation hold," all electronic data concerning the matters in dispute in this action, including,
13 without limitation, all emails, word documents, excel files and pdf's, have been preserved on
14 Trump's file servers and have not been destroyed. In fact, all electronic data concerning the matters
15 in dispute in this action have been preserved, at least as far back as 2009, and Trump U has produced
16 tens of thousands of documents dated between 2004 (before Trump U even began its operations) to
17 the present.

18      13.    The same is true with respect to physical files (i.e., not in electronic format), all of
19 which, whether located at Trump U's offices or Trump Org.'s offices, continue to remain intact and
20 are regularly reviewed and re-reviewed to ensure compliance with plaintiffs' multitude of document
21 requests. Trump and/or its counsel have contracted the 22 former employees and independent
22 contractors identified in defendants' Initial Disclosures, plus others, to inquire whether they retained
23 any Trump U files or documents, including any personal files. The vast majority confirmed that they
24 had no responsive documents. A few had a copy of their CV, or their independent contractor
25 agreement, or a few PowerPoint presentations, or old invoices, all of which were produced to
26 plaintiffs. One former mentor had approximately 2,500 pages of documents which were comprised
27 mostly of his personal files he created concerning each student he mentored. Those were all
28 produced to plaintiffs as well.

14. As a result of these extensive and diligent efforts, all told it is my understanding that Trump has produced tens of thousands of documents, more than 137,000 pages, more than 7,500 individual contracts, more than 10,000 individual evaluations and/or surveys, more than 7,000 pages from Trump U's website, more than 2,450 hours of audio tapes of Trump U recorded programs, more than 300 PowerPoint presentations, marketing material and advertisements, plus thousands and thousands of other emails, letters, memoranda, manuals, workbooks, videos, testimonials, HR files, employment contracts, financial information, BBB records, calendars, complaints, spreadsheets, consumer lists, refund lists, product lists, pricing lists, handbooks, company policies, etc.

I declare under penalty of perjury that the foregoing is true and correct as this declaration is executed by me on January 22, 2013 in New York, New York.

Alan G. Garten

## EXHIBIT A

List of employees and titles who received the 5/12/10 litigation hold

### THE TRUMP ORGANIZATION

| Employee | Title |
|---|---|
| Alfonsi, Jessica | Assoc. Project Manager/Asst. to Don Jr. |
| Artusa, Cammie | Asst - George Ross |
| Blacksberg, Jason | VP - Strategic Investments/Asst General Counsel |
| Boccio, Michael | Asst. General Counsel |
| Bohdan, Linda | Asst. - Andy Weiss & C. Procaccini |
| Borbet, Daniel | Legal and International Development Associate |
| Borg, Terry | Director of Operations |
| Calamari, Matthew | EVP,COO - Trump Properties |
| IT DEPARTMENT | IT Department |
| Cameron, Luis | IT Manager |
| Cho, Jae | IT Director |
| Choi, Evelyn | Director of Global Licensing |
| Cohen, Michael | EVP & Special Counsel to DJT |
| Colayco, Thuy | Assistant – Mr. Trump |
| Cox, Bradley | Legal/Development Senior Associate |
| Garten, Alan | Assistant General Counsel |
| Gellman, Alexandra | Asst. to Jonathan Gross and Jason Blacksberg |
| Glazer, Stacey | Risk Mgmt Coordinator - Property Admin |
| Glosser, Cathy | EVP – Global Licensing |
| Graff-Riccio, Rhona | VP - Asst. to the President |
| Greenblatt, Jason | EVP – Gen. Counsel |
| Gross, Jonathan | Asst. General Counsel |
| Hussey, Abigail | Assistant - Mr. Trump |
| Kennedy, Kacey | Asst. to Rhona Graff/Media Relations |
| Kidder, Donna | Senior Accountant |
| Kyprislidis, Lizebeth | Legal/Dev. Associate |
| Lafiosca, Steve | Dir. of Commercial Properties (TT & 40 Wall) |
| Langer, Selma | VP - Strategic Marketing |
| Lieberman, Ron | VP - Special Projects |
| Lorenzo, Holly | Asst. to Allen W/ Accounting Dept. |
| Madigan, Orla | Asst. to Jim Petrus |
| Majors, Sharon | Asst. to Ivanka Trump |
| Martin, Michael | Marketing Director (CPS) |

Exhibit 1
- 7 -

| | |
|---|---|
| McConney, Jeff | Senior VP/Controller |
| McIver, Meredith | Media/Staff Writer |
| Miller, Amanda | Asst. to Selma Langer |
| Nelson, Nathan | VP- Leasing, Insurance, Finance |
| Ng, Tara | Assistant to Michael Boccio |
| Orowitz, David | Acquisition and Development |
| Petrus, Jim | COO – Hotel Group |
| Pienkos, Thomas | VP – Operations for Residential Buildings |
| Pierce, Tana | Assistant - Eric Trump |
| Robinson, Alexis | Staff Attorney |
| Ross, George | EVP - Senior Counsel |
| Seidner, Joshua | Director, Project Design & Development |
| Sorial, George | Managing Dir- Int'l Develop / Asst. Gen. Counsel |
| Steinfeldt, Amy | Licensing Assistant |
| Taddoni, Diana | Security - Matt Calamari's Asst. |
| Talesnik, Sonja | Asst. Gen. Counsel, Dir. of Prop. Admin. |
| Tarasoff, Deborah | Accounts Payable |
| Trump, Don Jr. | VP- Development |
| Trump, Eric | VP - Development |
| Trump, Ivanka | VP - Development |
| Tully, Lisa | Director of Marketing Trump Hotel Collection |
| Weiss, Andrew | EVP – Construction |
| Weisselberg, Allen | EVP – CFO |
| Winston, Brian | VP of Sales and Mktg - Trump Hotel Collection |

## TRUMP UNIVERSITY

| | |
|---|---|
| Bloom, Michael | Chief Marketing Officer |
| Matejek, Steven | Chief Financial Officer |
| Sexton, Michael | Chief Executive Officer |

Exhibit 1
- 8 -

MAKAEFF v. TRUMP UNIVERSITY, LLC, et al.
USDC Case No.  10 CV 0940 CAB (WVG)

**PROOF OF SERVICE**

    I am employed in the City and County of San Diego, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 655 West Broadway, Suite 1400, San Diego, California 92101.

    On January 22, 2013, I caused to be served the attached:

    DECLARATION OF ALAN G. GARTEN RE LITIGATION HOLD EFFORTS OF TRUMP UNIVERSITY, LLC

☐    [BY ELECTRONIC MAIL] Pursuant to the Court's CM/ECF Electronic Filing policies and procedures, I hereby certify that the above documents were electronically filed with the court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

☐    [BY MAIL] I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at Yunker & Schneider, San Diego, California, following ordinary business practices.  I am familiar with the practice of Yunker & Schneider for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

☐    [BY FACSIMILE] The document stated herein was transmitted by facsimile transmission and the transmission was reported as complete and without error.  A transmission report was properly issued by the transmitting facsimile machine and a copy of said transmission report is attached to the original proof of service indicating the time of transmission.

☐    [BY OVERITE EXPRESS - NEXT DAY DELIVERY] I placed the above documents in an envelope or package designated by the overnight service carrier for collection at the law offices of Yunker & Schneider, San Diego, California, following ordinary

business practices. I am familiar with the practice of the Yunker & Schneider for collection and processing of overnight deliveries, said practice being that in the ordinary course of business, overnight deliveries are deposited in the FedEx box the same day as it is placed for collection.

☒ [BY EMAIL] Copies of the above documents in .pdf format were transmitted to the e-mail addresses of the parties below. No delivery errors were reported.

| | |
|---|---|
| Amber L. Eck, Esq.<br>Aaron M. Olsen, Esq.<br>ZELDES & HAEGGQUIST, LLP<br>625 Broadway, Suite 906<br>San Diego, CA 92101<br>Tel:   (619) 342-8000<br>Fax:   (619) 342-7878<br><br>Attorneys for Plaintiffs TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT and JOHN BROWN | Rachel L. Jensen, Esq.<br>Thomas R. Merrick, Esq.<br>ROBBINS GELLER RUDMAN & DOWD, LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Tel:   (619) 231-1058<br>Fax:   (619) 231-7423<br><br>Attorneys for Plaintiffs TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT and JOHN BROWN |

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 22, 2013, at San Diego, California.

*Betsy Bertrand*
Betsy Bertrand