ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>　　　　　　　　Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br><u>CLASS ACTION</u><br><br>SUPPLEMENTAL DOCUMENT |

870228_1

1   At the August 30, 2013 hearing on Plaintiffs' Motion for Leave to File an Amended Complaint, a factual dispute arose over former Trump University President Michael Sexton's testimony as to when the New York State Education Department ("NYSED") first informed Defendants that their use of the term "University" was unlawful because Trump University did not qualify as an actual University. Plaintiffs contended that Defendants had misrepresented that this notice first arrived in 2010, when, in fact, it was 2005 when the NYSED had instructed Donald Trump himself to stop using the term "University" – a fact Plaintiffs did not learn until April 2013, as a result of a second FOIA request to the NYSED (despite an October 2011 request for such documents from Defendants (*see* Dkt. No. 257-3 at 6)). At the hearing, however, Defendants represented to the Court that during Sexton's September 2012 deposition, he had testified as to the 2005 date, so the evidence Plaintiffs obtained in April 2013 was not new information. Plaintiffs disputed this representation, but did not have Sexton's deposition transcript to present to the Court at the hearing. In addition, unbeknownst to Plaintiffs (and unmentioned by Defendants in Court), the night before the hearing, Defendants produced a compact disc containing still more previously withheld emails concerning scripts *for Live Events* – the existence of which Defendants adamantly denied for the vast majority of this litigation.

Accordingly, Plaintiffs submit the following supplemental evidence in support of their Motion for Leave: (1) the excerpt from Sexton's deposition, confirming Sexton's misrepresentation during his deposition and Defendants' misrepresentation during the August 30, 2013 hearing; and (2) a very brief description of the additional "script" evidence that Defendants produced the night before the August 30, 2013 hearing.

### 1. Sexton's Deposition

Defendants' representation at the hearing:

> But on the specific New York SED issue, they examined Mr. Sexton extensively about this issue. ***Mr. Sexton testified they had been involved in discussions since '05 with the New York State Education***

***Department***. The plaintiffs never believed this issue first arose in 2010. In fact, they asked in-house counsel, George Sorial, about it. We submitted a declaration to the court with the class certification papers. They asked Mr. Sexton about it. They asked Mr. Trump about it.

*See* August 30, 2013 Hearing Transcript at 16-17 (emphasis added), attached as Exhibit 1 to the Declaration of Jason A. Forge ("Forge Decl."), filed concurrently herewith.

Plaintiffs' representation at hearing:

One thing I wanted to make clear, first of all -- I believe, and I don't have the transcript with me, but I am pretty certain that Mr. Sexton in his deposition said they heard about the New York State Education Department's issue with Trump University in 2010, and they acted immediately. Now -- so he did not say, "We have been battling them since 2005." Now, of course, his deposition was after the deadline also.

*Id.* at 30.

Sexton's actual deposition testimony:

Q. And in -- in New York, it's my presumption you didn't get a call until May of 2010, or did you get a call before then from --

A. No, we got a call -- if it's --spring of 2010, sometime in that time frame.

Q. Right.

A. Yes. And it was brought to our attention that there was an issue with the name and we quickly changed it.

*See* Dkt. No. 195-1, Ex. 85 at 160:6-14 (sealed, but Defendants withdrew any assertion of confidentiality as to this portion of the deposition by describing it, albeit misleadingly, in open Court).

The difference between Trump having received notice in 2005 versus 2010 is critical, as demonstrated by the communications alleged in the proposed Fourth Amended Class Action Complaint ("FAC") about which the Court inquired. *See* Dkt. No. 248-3 (FAC), ¶¶86(a) and (b). As Plaintiffs indicated during the hearing, Defendants withheld four of these eight communications until June 2013. But even as to the four communications that Plaintiffs possessed prior to the amendment deadline, they were all sent in ***2009***. *Id.* Although Plaintiffs were in possession of these 2009

1  communications prior to the deadline to amend, their relevance as racketeering acts
2  was dependent upon Trump having knowledge and a specific intent to defraud as of
3  the time they were sent.  Yet, because Defendants withheld and misrepresented the
4  timing of the directive from the NYSED, throughout all of 2012, Plaintiffs lacked the
5  direct evidence that Trump knew that his use of the term "University" was unlawful
6  and misleading as of 2009.  It was not until April 2013 that Plaintiffs obtained the
7  direct evidence establishing Trump's knowledge and specific intent to defraud *as of*
8  *2005*.  Therefore, it was only after April 2013 that Plaintiffs could definitively allege
9  these communications as racketeering acts related to ongoing mail and wire fraud
10 schemes.

**2.     More "Script" Evidence**

12 The night before last Friday's hearing, Defendants produced a compact disc
13 containing still more previously withheld emails concerning scripts *for Live Events* –
14 the very type of document Defendants spent most of this case denying existed.  *See*
15 Forge Decl., Ex. 2.  At least one of these emails is dated February 28, 2008.  This
16 confirms not only what Defendants vehemently denied – the existence and use of
17 scripts for Live Events – but also that such scripts were distributed for use 14 months
18 earlier than the date of the first "script" email that Defendants belatedly produced in
19 June 2013.  Even this belated production is incomplete, however, as Defendants did
20 not include the attachments to these emails.  *Id.*  In fact, Defendants acknowledge that
21 there is *still* more to come:

> As mentioned in my 8/2/13 letter, my client voluntarily ran additional searches for scripts, PowerPoint approvals and Chapman through various email accounts which generated a significant number of "hits."  My review of those documents was delayed by plaintiffs' recent filing of their motion for leave to amend.  I have now continued to review documents, and defendants will produce non-privileged responsive documents on a rolling basis as the review of documents is completed.  The first batch of responsive documents is included on the attached disk and Bates stamped TU 168263-168522.

27 *Id.*

All of this underscores the central premise of Plaintiffs' motion:  If evidence that would be material to a charging decision is improperly withheld, misrepresented, and/or unavailable despite a plaintiff's diligence, the revelation or discovery of such evidence is good cause to permit the plaintiff to reassess her charging decision.  This is not asking a lot, and that is all Plaintiffs are asking for here:  to be afforded a fair opportunity to decide what claims to pursue in light of the material evidence that Defendants should have provided before the deadline to amend passed.  A charging decision has to be informed by the strength of the evidence, so the withholding of material evidence corrupts the decision-making process.  It is not enough to just say, "Well, you could have brought this claim before the deadline."  Such a standard would/will force plaintiffs to plead every technically colorable claim, regardless of realistic viability, and encourage Defendants to withhold and misrepresent evidence until leave-to-amend deadlines pass. We should encourage plaintiffs to set the bar for pleading decisions higher than Rule 11.  That is what Plaintiffs did here, and they should not be punished for it.  We should also discourage Defendants from withholding and misrepresenting evidence.  That is what Defendants and their agents did here, and they should not be rewarded for it.

The bottom line is that Plaintiffs would not have brought a RICO claim here without: (1) the admissions in Trump and Sexton's depositions, which occurred after the deadline because Plaintiffs were trying to gather evidence Defendants had withheld; (2) the actual Live Events script Sexton distributed (and related communications), which Defendants withheld and adamantly denied existed until nearly a year after the deadline; and (3) the *2005* NYSED letter to Trump, which Defendants still have not produced and which preceded by *five years* the year that Defendants and Sexton falsely represented as the one when the NYSED first told

Defendants that their use of the term "University" was unlawful.[1]  The materiality of this evidence is facially apparent and confirmed by the lengths to which Defendants went to keep it from, and misrepresent it to, Plaintiffs.  Moreover, as to the script evidence, Defendants conceded its materiality when they were denying its existence:

> Plaintiffs' entire case is built on the erroneous premise that TU instructors and mentors used a "script" that they followed "word-for-word" so that every presentation was identical – and hence filled with identical misrepresentations. However, plaintiffs did not include the purported "script" in their moving papers - supposedly the key document in their entire case. The reason: there never was a script.

*See* Dkt. No. 213 at 5 (Defendants' Reply Supporting Objections to Evidence in Plaintiffs' Motion for Class Certification) (emphasis in original).  Plaintiffs deserve the opportunity to make this important charging decision in light of this improperly withheld and misrepresented material evidence.

DATED:  September 3, 2013         Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN
THOMAS R. MERRICK

                                                s/ Jason A. Forge
                                             JASON A. FORGE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

---

[1] The additional emails showing wider spread use of the Trump videos, referenced in Plaintiffs' papers, are also important, but not as indispensable as these three categories of new evidence.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Attorneys for Plaintiffs and Proposed Class

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 3, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 3, 2013.

  s/ Jason A. Forge
JASON A. FORGE

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:jforge@rgrdlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG Makaeff v. Trump University, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com,efb@yslaw.com

- **Stephen F Yunker**
  sfy@yslaw.com,ewb@yslaw.com,efb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`