1
2
3
4
5
6
7
8
9          **UNITED STATES DISTRICT COURT**
10         **SOUTHERN DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| 12  TARLA MAKAEFF, et al, on behalf of herself and all others similarly | CASE NO.10cv0940-GPC-WVG |
| 13  situated | **ORDER DENYING PLAINTIFFS' MOTION TO** |
| 14                              Plaintiffs, | **AMEND THE SCHEDULING ORDER** |
| 15        vs. | [Dkt. No. 248] |
| 16  TRUMP UNIVERSITY, LLC, et al., | |
| 17                              Defendants. | |

18
19                        **INTRODUCTION**

20        Before the Court is Plaintiffs' motion for leave to amend the Court's Amended

21 Scheduling Order to file a Fourth Amended Complaint. (Dkt. No. 248.)  The motion

22 has been fully briefed. (Dkt. Nos. 253, 257.)  Following careful consideration of the

23 parties' oral arguments, review of the briefs and applicable law, the Court hereby

24 **DENIES** Plaintiffs' motion for leave to amend the Court's Rule 16 Scheduling Order.

25                        **BACKGROUND**

26        Plaintiff Tarla Makaeff commenced this class action on April 30, 2010. (Dkt.

27 No. 1.)  Since then, Plaintiff Makaeff and other named Plaintiffs have filed three

28 amended class action complaints on behalf of themselves and putative class

1  members. (See Dkt. Nos. 10, 41, 128.)

2      On October 7, 2011, Magistrate Judge Gallo held a case management

3  conference and subsequently issued the first scheduling order initiating discovery

4  and setting the deadline to add parties or amend the pleadings for July 31, 2012.

5  (Dkt. No. 88.)

6      On January 24, 2012, Magistrate Judge Gallo issued an Amended Scheduling

7  Order, which extended some of the discovery deadlines by two and three months,

8  but did not extend the deadline to amend the pleadings. (Dkt. No. 92.)

9      On June 7, 2012, Magistrate Judge Gallo issued an order granting the parties'

10  joint motion to revise the schedule for an additional three months. (Dkt. No. 108.)

11  Judge Gallo declined to extend the deadline to file additional pleadings, but

12  extended the deadline to file the motion for class certification to September 24,

13  2012. (Id. at 2.)

14      On July 31, 2012, Plaintiffs filed a motion for leave to file the third amended

15  complaint ("TAC"), which Defendants did not oppose. (Dkt. Nos. 112, 121.) The

16  Court granted the motion on September 25, 2012. (Dkt. No. 127.)

17      On September 26, 2012, Plaintiffs Tarla Makaeff, Brandon Keller, Ed

18  Oberkrom, Sonny Low, J.R. Everett and John Brown ("Plaintiffs") filed the TAC

19  against Defendants Trump University, LLC ("TU"), Donald J. Trump, and DOES 1

20  through 50 ("Defendants"). (Dkt. No. 128, TAC.)  The gravamen of the complaint is

21  that Defendants misrepresented the benefits of Trump University seminars

22  purchased by Plaintiffs with false promises of a "complete real estate education," a

23  "one year apprenticeship," access to a "power team" of advisors and "hand picked

24  instructors."  Plaintiffs allege Donald Trump, founder and Chairman of Trump

25  University, authorized print advertisements, email correspondence, letters and

26  website content that included false promises and misrepresentations of TU's

27  programs.  One such false promise was reflected by a nation-wide letter to

28  consumers featuring Donald Trump's name and signature with the statement, "No

course offers the same depth of insight, experience and support as the one bearing my name . . . my hand-picked instructors and mentors will show you how to use real estate strategies to supplement or even replace your income . . ."  Plaintiffs allege Donald Trump did not hand-pick the instructors and did not share Mr. Trump's real estate secrets.  In short, Plaintiffs allege TU's mission is to sell rather than to educate.

Plaintiffs are residents of California, New York and Florida, and each allege they paid anywhere from $1,495 for a three-day seminar up to $35,000 for the Trump Gold Elite Program, which boasted a year-long mentorship program to help students create a successful real estate business.  TU's allegedly fraudulent scheme lures customers to purchase seminars by showcasing the brand name of Donald Trump.  Plaintiffs assert fourteen causes of action against Defendants Donald Trump and others, including unfair business practices and misleading advertisement in violation of California Business and Professions Code § 17200 and § 17500 *et seq*, deceptive practices in violation of the Consumers Legal Remedies Act ("CLRA"), fraud, misrepresentation, breach of contract, and several other California, Florida, and New York state law claims.

On September 24, 2012, Plaintiffs filed a motion for class certification, which has been fully briefed by the parties. (Dkt. Nos. 122, 138, 195.)  The case was transferred to the undersigned judge in early 2013, and until a recent Court order vacating the hearing date to address the pending motion to amend, the class certification motion was to be heard on August 23, 2013. (Dkt. Nos. 190, 234.)

On August 2, 2013, Plaintiffs filed the present motion to amend this Court's Amended Scheduling Order deadline to permit Plaintiffs to file a Fourth Amended Complaint which adds new federal RICO claims. (Dkt. No. 248, "Motion to Amend.")  The motion to amend was filed approximately one year after the Amended Scheduling Order deadline of July 31, 2012 to amend the pleadings. (See Dkt. Nos. 88, 92, 108.)

## LEGAL STANDARD

Generally, Fed. R. of Civ. P. 15(a) liberally allows for amendments to pleadings. Coleman v. Quaker Oats, Co., 232 F.3d 1271, 1294 (9th Cir.2000). However, once the Court issues a pretrial scheduling order pursuant to Fed.R.Civ.P. 16(b) setting a deadline to amend the pleadings, the Court must look to that rule in determining whether amendment should be allowed. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607–08 (9th Cir.1992).  Under  Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  "'A court's evaluation of good cause [under Rule 16(b)] is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15.'" Johnson, 975 F.2d at 609 (citation omitted).  Rather, the "good cause" standard "primarily considers the diligence of the party seeking the amendment." Id.  "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' Id. (Internal citations omitted).  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." Id. (internal citation omitted).  Once "good cause" is shown, the moving party must also demonstrate the proposed amendment would be proper under Rule 15. Johnson, 975 F.2d at 608.

## DISCUSSION

In support of its motion for leave to amend, Plaintiffs argue good cause exists for the following reasons: (1) recently-discovered facts show a civil RICO claim is the most appropriate way to remedy harm in this case; (2) unanticipated delays in Defendants' production of relevant documents warrant leave to amend; (3) ongoing discovery shows leave to amend is not unreasonable at this time; and (4) the proposed Fourth Amended Complaint contains four fewer claims and simplifies the Court's consideration of Plaintiffs' motion for class certification. (Motion to Amend

1  at 2-4.)  In opposition, Defendants argue: (1) there is no newly discovered evidence

2  to support a RICO claim; (2) Plaintiffs fail to meet the good cause requirement of

3  Rule 16; and (3) Plaintiffs cannot meet the "interest of justice" standard under Rule

4  15(a).  (Dkt. No. 253, "Opposition.")

5      For purposes of determining "good cause," the Court considers whether

6  Plaintiffs could have timely alleged a RICO claim before expiration of the deadline

7  to amend under the management plan.  This requires a review of Plaintiffs'

8  proposed Fourth Amended Complaint, the requirements needed to allege a RICO

9  claim, and the evidence Plaintiffs possessed prior to the filing of the TAC.

10      **A. Proposed Fourth Amended Complaint**

11      Similar to the TAC and previous complaints, Plaintiffs' proposed Fourth

12 Amended Complaint maintains that Defendants engaged in a fraudulent scheme to

13 sell real estate seminars and mentorship programs by marketing Trump University

14 as a learning institution run by Donald Trump.  (Motion to Amend, Ex. A,

15 "Proposed FAC.")  Plaintiffs allege Defendants falsely promised to deliver an

16 education through Trump University but in actuality, "delivered neither Donald

17 Trump nor a University." (Proposed FAC ¶ 1.)

18      New to the proposed FAC are Plaintiffs allegations that Defendant Donald

19 Trump engaged in a pattern of racketeering,[1] former TU President Michael Sexton

20 committed racketeering acts as a co-conspirator, and Donald Trump, through and

21 with Trump University, committed multiple  acts of mail and wire fraud in violation

22 of 18 U.S.C. §§ 1341 and 1343. (Proposed FAC ¶¶ 81-84.)  Plaintiffs allege

23 "Defendants used thousands of mail and interstate wire communications to create

24 and perpetuate their Scheme through virtually uniform misrepresentations,

25 concealments and material omissions." (Proposed FAC ¶ 84.)  Plaintiffs cite several

26 factual allegations to support the racketeering claims.  To support the mail fraud

27

28      [1]Plaintiffs allege Defendant Donald Trump "conducted or participated, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity with the meaning of 18 U.S.C. §§ 1961(a), 1961(5) and 1962(c)."  Proposed FAC ¶ 80.

allegation, Plaintiffs cite a "Special Invitation from Donald J. Trump" to attend a free preview seminar mailed to named Plaintiffs Low and Oberkrom in 2009. (Proposed FAC ¶ 86(a).)  To support the interstate wire fraud allegation, Plaintiffs cite the following email communications and credit card transactions: (1) Email to Plaintiff Makaeff's friend regarding a free preview seminar with a hyperlink to a promotional video; (2) Email from former TU President Michael Sexton to David Early and Mark Anthony attaching the "Preview Script - Version 3.0;" (3) Email correspondence from Allen Romrell at TU to Taylor Coleman regarding the possible sale of TU; and (4-5) Credit card transactions in the amount of $1,495 for Plaintiff Low's purchase of the fulfillment seminar. (Proposed FAC ¶ 86 (b).)

### B. Mail and Wire Fraud Elements

"'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime. Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1399 (9th Cir. 1986).  To allege a violation of the mail fraud statute, a plaintiff must show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. Id. (citing United States v. Green, 745 F.2d 1205, 1207–08 (9th Cir.), cert. denied, 474 U.S. 925, 106 (1985); United States v. Bohonus, 628 F.2d 1167, 1171 (9th Cir.), cert. denied, 447 U.S. 928 (1980)). Similarly, to allege a RICO wire fraud claim, a plaintiff must show: "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud." United States v. Green, 592 F.3d 1057, 1064 (9th Cir. 2010) (citing United States v. Shipsey, 363 F.3d 962, 971 (9th Cir.2004)).

### C. "New Evidence" in Support of Mail and Wire Fraud Allegations

Plaintiffs argue that Defendants' untimely production of documents revealed

1    newly discovered evidence that lead them to seek leave to add federal RICO claims

2    to the complaint. (Motion to Amend at 5-6.)  In opposition, Defendants argue

3    Plaintiffs have alleged, knew, or otherwise had in their possession every predicate

4    fact needed for the RICO claims at least one year ago when their last motion to

5    amend was filed. (Opposition at 21.)  During the motion hearing before the Court,

6    counsel for Plaintiffs stated that only four of the eight RICO factual allegations in

7    the proposed FAC were not previously known to Plaintiffs before the deadline to

8    amend the pleadings.  (Dkt. No. 260, "Transcript of Motion Hearing," at 6:6-12.)

9    When asked about the mail fraud factual allegations, Plaintiffs' counsel stated they

10   possessed or had knowledge of the two "Special Invitations" prior to the amended

11   scheduling order deadline. (Id.; see also Proposed FAC ¶ 86 (a).)  Thus, the Court

12   turns its focus to the purported new evidence in support of Plaintiffs' proposed wire

13   fraud claims.

14              **1. Sexton Emails and Evidence of a "Script"**

15              In June 2013, Defendants produced an email from former TU President

16   Michael Sexton to TU instructors attaching a document entitled "Preview Script -

17   Version 3.0," ("Script").  Plaintiffs argue Defendants previously denied the Script

18   ever existed, and, despite Plaintiffs' requested for such scripts since October 2011,

19   Defendants' delayed production of the email supports good cause for leave to

20   amend. (Motion to Amend at 3.)  Plaintiffs further argue the Sexton email proves

21   Defendants used the interstate wires in furtherance of their scheme, and cite to the

22   Sexton email to support wire fraud allegations in the proposed FAC. (Id.; Proposed

23   FAC ¶ 86 (b).)  Defendants respond that the content of the Preview Script is not

24   new, nor relevant to the RICO claim. (Opposition at 14.)

25              There are two distinct issues related to the Sexton email and attached Script.

26   First, the record shows the content of the Script was previously known to Plaintiffs

27   well before June 2013.  On February 2, 2013, Plaintiffs provided the Court a copy

28   of a TU PowerPoint presentation in their reply certification papers. (Dkt. No. 195,

Ex. 86.)  A review of this PowerPoint and the Script shows the content is identical. (See Dkt. No. 195, Ex. 86; compare to Dkt. No. 239, Ex. 2.)  Plaintiffs admittedly contend the PowerPoint presentation reflects the "functional equivalent of a script." (Transcript of Motion Hearing at 9:18-21.)  Thus, Plaintiffs cannot rely on the content of the Script as recently discovered evidence.

Second, the Sexton email constitutes recently discovered evidence that Defendants admittedly delayed producing to Plaintiffs. (Transcript of Motion Hearing at 20:24-21:1.)  Although the Court frowns upon Defendants' delay in producing highly relevant information, the Court concludes that the Sexton email speaks more to the weight of Plaintiffs' class action allegations than a showing of good cause.  In support of the motion for class certification, Plaintiffs produced Sexton's email and the attached Script to the Court, shortly after its discovery, arguing the evidence proves Defendants engaged in a uniform scheme to misrepresent TU. (Dkt. No. 239, "Supplemental Document," at 6-8.)  As such, even Plaintiffs recognize that the evidence largely speaks to the validity of their class action claims.  Moreover, since the inception of this case, Plaintiffs have relied upon a theory that TU speakers utilized scripts at the seminars.  (See Dkt. No. 1, Complaint at ¶ 16, "At the free seminar . . . the speaker, who is following a Trump script, begins addressing the audience with scare tactics;" TAC at ¶ 12, "[T]he in-person Seminars were highly standardized. Speakers used the same slide presentation, the same script, and even had detailed instructions for the presentation.")  Thus, while the Sexton email may offer evidence supporting Plaintiffs' long standing class action allegations, it does not show Plaintiffs were unaware of the existence or use of a script prior to the amended scheduling order deadline.

### 2. The NYSED Letters

Plaintiffs contend that in April 2013, pursuant to a Freedom of Information Act ("FOIA") request, they were provided a copy of a letter from New York State

1   Education Department's ("NYSED") dated May of 2005. (Motion to amend at 4-5.)

2   The NYSED letter was addressed to Donald Trump and warned him that use of the

3   name "university" was illegal without a license. (Id.)  Plaintiffs further assert that on

4   January 25, 2013, additional documents on this matter were produced indicating

5   that TU changed their name to Trump Entrepreneur Initiative, LLC as a result of the

6   NYSED inquiry. (Id.)  In response, Defendants argue Plaintiffs knew about the

7   University name issue prior to filing of the lawsuit, as evidenced by reference to the

8   NYSED correspondence in Plaintiffs' previously complaints. (Opposition at 17-18.)

9   Plaintiffs reply that the NYSED letters show the specific intent to deceive needed to

10  allege a RICO claim against Mr. Trump. (Dkt. No. 257, "Pl. Reply," at 5; Transcript

11  of Motion Hearing at 7:15-22.)

12        A review of the record shows that Plaintiffs were aware of the 2005 NYSED

13  compliance issue at least by February 2013, when Plaintiffs produced to the Court

14  information dated June 2005 regarding NYSED's notice to Defendants that the use

15  of the name "University" was illegal and misleading without a license. (See Dkt.

16  No. 195, Ex. 133 (under seal); see also Dkt. No. 195, Ex. 67 (under seal).)  A review

17  of Plaintiffs' TAC also indicates Plaintiffs were aware of the NYSED compliance

18  issue at a minimum by the filing of the proposed TAC on July 31, 2012. (Dkt. No.

19  112-4, Ex. A; see also TAC at ¶¶ 2, 32, 66.)

20        The question then becomes whether Plaintiffs' April 2013 receipt of the 2005

21  NYSED letter shows evidence of Donald Trump's specific intent to deceive which

22  Plaintiffs did not know prior to the filing of the TAC.  For the reasons stated below,

23  the Court concludes the NYSED letter does not weigh as heavily as Plaintiffs have

24  presented to the Court.

25        Plaintiffs' past four complaints have included substantial allegations of

26  Donald Trump's misrepresentations sufficient to, at a minimum, show an allegation

27  of specific intent needed to allege mail and wire fraud claims.  "The requirement of

28  specific intent under these [mail and wire fraud] statutes is satisfied by the existence

of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension,' and this intention is shown by examining the scheme itself." Schreiber, 806 F.2d at 1399 (citing Green, 745 F.2d at 1207).  "The scheme to defraud must only include an 'affirmative, material misrepresentation.'" Green, 592 F.3d at 1064 (quoting United States v. Benny, 786 F.2d 1410, 1418 (9th Cir.1986).  Here, the alleged scheme throughout each of the four complaints alleges specific and numerous material misrepresentations by Donald Trump. (See generally, Dkt. Nos. 1, 10, 41, 128.)  For example, in the first-filed Complaint, Plaintiffs point to a TU false marketing advertisement in which, "Donald Trump claims: 'I'm going to give you 2 hours of access to one of my amazing instructors AND priceless information . . . all for FREE.'" (Complaint at ¶ 15.)  To show Defendant Donald Trump's involvement and liability, Plaintiffs allege in the TAC, "An email from Trump University to thousands or tens of thousands consumers feature Donald Trump's photo with the words: 'Are you My next Apprentice,' and stated: '76% of the world's millionaires made their fortunes in real estate. Now it's your turn. My father did it, I did it, and now I'm ready to teach you how to do it too.' The signature line at the bottom of the email reads, Donald J. Trump, Chairman, Trump University, and even includes his signature."  (TAC ¶ 19(d).) Plaintiffs could have, but chose not to, utilize these specific allegations to support mail and wire fraud claims. As the Ninth Circuit has noted, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986).  The assertion that Plaintiffs had insufficient knowledge of Defendant Donald Trump's "specific intent to deceive," only recently revealed by the 2005 NYSED letter, is belied by the previous complaints which make clear allegations of Trump's false statements and communications as part of a general fraudulent scheme.

### 3. Trump and Sexton Depositions

Plaintiffs further argue the depositions of Messrs. Trump and Sexton, taken following the deadline to amend the pleadings, confirmed that Mr. Trump was not meaningfully involved in developing the TU curriculum, Mr. Trump did not "hand-pick" the instructors, and TU did not teach Mr. Trump's real estate investing "secrets." (Motion to Amend at 5.)  Defendants respond that the depositions were taken nearly one year ago due to Plaintiffs' own postponements, and Plaintiffs failure to seek leave to amend one year ago shows a lack of diligence. (Opposition at 18-19.)  During the motion hearing, counsel for Plaintiffs argued the Sexton email contradicts Sexton's deposition testimony, revealing the specific intent needed to name Sexton as a co-conspirator. (Transcript of Motion Hearing at 10:9-18.)

Plaintiffs' arguments are unavailing.  The Trump and Sexton depositions were taken in August and September of 2012 and Plaintiffs do not state a valid reason for the year-long delay after taking the depositions to seek leave to amend. Moreover, Plaintiffs could have sought an extension of the deadline to amend the pleadings when they realized they were unable to take the critical deposition testimony until after the deadline.  Such conduct demonstrates a lack of diligence. See Osakan v. Apple Am. Grp., C 08-4722 SBA, 2010 WL 1838701 (N.D. Cal. May 5, 2010) ("[T]o the extent that Plaintiff believed that Defendants were impeding his ability to prepare his case by failing to comply with their discovery obligations, he should have promptly sought relief from the assigned discovery magistrate.")

### 4. Makaeff Friend Email

Plaintiffs contend that on April 26, 2013, Defendants produced an email sent to Plaintiff Makaeff by her friend, which includes a link to a Main Promotional Video.  (Motion to Amend at 4.)  Plaintiffs assert that it was not until the discovery of this email that they became aware that Defendants had a pattern of using interstate wires to promote the scheme. (Id.) Defendants respond that Plaintiff Makaeff had access to the email for five years, and Plaintiffs' failure to produce the

1   email constitutes a lack of diligence. (Opposition at 16.)  Defendants also point out

2   that Plaintiffs had ample evidence that TU disseminated hyperlinks and videos in its

3   advertisement to the general public. (Id.)

4          Upon review of the record, the Court concludes that the email to Plaintiff

5   Makaeff could have been discovered earlier.  Plaintiffs admit that Ms. Makaeff had

6   "forgotten" to search her dormant email account, and it wasn't until Defendants'

7   production of a related email that she searched and found the document. (Motion to

8   Amend at 4 n. 3.)  Thus, the Court concludes Plaintiffs could have accessed this

9   email since the filing of this action.

10         Yet even if Plaintiffs had been diligent in pursuing the Makaeff email,

11  Plaintiffs have relied upon Defendants' use of emails, credit card transactions,

12  hyperlinks, website and video communications in several previous pleadings and

13  complaints. (See Dkt. No. 118, Motion to Allow the Non-electronic filing of

14  Videos; Complaint at ¶ 15; Dkt. No. 41, "Second Amended Complaint," at ¶ 34;

15  TAC at ¶ 42.)  Thus, there is nothing "new" about the Makaeff email that wasn't

16  already previously relied upon to show Defendants' use of the interstate wires to

17  communicate the allegedly fraudulent scheme.

18         In short, Plaintiffs have not shown that they were diligent in seeking leave to

19  amend the scheduling order.  A case management scheduling order "is not a

20  frivolous piece of paper, idly entered, which can be cavalierly disregarded by

21  counsel without peril." Johnson, 975 F.2d at 610 (9th Cir. 1992) (internal citation

22  omitted).  It is clear to the Court that Plaintiffs have failed to make any adequate

23  showing of "good cause" why the Amended Scheduling Order of July 31, 2012, as

24  entered by Magistrate Judge Gallo, should be amended.  Accordingly, Plaintiffs'

25  motion for leave to amend is hereby **DENIED**.

26                                **CONCLUSION**

27         After a careful review of the parties' oral arguments, submissions and the

28  records in this matter, and for the foregoing reasons, the Court **DENIES** Plaintiffs'

1  motion for leave to amend the scheduling order.

2      **IT IS SO ORDERED.**

3

4  DATED:  October 7, 2013

5

6                                    HON. GONZALO P. CURIEL
                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10cv0940-GPC-WVG