David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535
Email:   dks@yslaw.com

Jill A. Martin (CSB 245626)
c/o Trump National Golf Club Los Angeles
One Trump National Dr.
Rancho Palos Verdes, CA  90275
Telephone:  (310) 303-3225
Facsimile:  (310) 265-5522
Email:  jmartin@trumpnational.com

Attorneys for Defendants TRUMP UNIVERSITY, LLC
and DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated, | Case No. 10cv0940GPC (WVG) |
| Plaintiffs, | CLASS ACTION |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE NOVEMBER 8, 2013 HEARING** |
| TRUMP UNIVERSITY, LLC, et al., | |
| Defendants. | |
| AND ALL RELATED CROSS-ACTIONS. | |

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ......................................................................... 1

II.    DEFENDANTS' RESPONSE TO PLAINTIFFS' REVAMPED CLASS ............... 1

    A.     The New "Common Questions" Show that Class Certification is Improper ............................................................................ 1

    B.     Plaintiffs' New Class Definition and Subclasses Suffer From the Same Defects as the Previously Proposed Class ........................ 4

        1.     Reliance Must be Shown on an Individual Basis for Fraud ................ 4

        2.     The Statutory Consumer Fraud Claims Require a Uniform Misrepresentation. .......................................................... 5

        3.     Plaintiffs have not Met their Burden on the Elder Abuse Claims. ....... 6

        4.     The Unjust Enrichment Claims Cannot be Certified. .......................... 6

        5.     A Class Action is not the Superior Mechanism. ................................. 7

        6.     The New York Attorney General's Nationwide Lawsuit Seeks The Same Relief As Plaintiffs Desire Here. ......................... 8

    C.     Plaintiffs' Proposed Class is Unmanageable .................................... 9

    D.     Defendants Preserve Their Right to a Jury Trial ........................... 10

III.    CONCLUSION .................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Bates-Farley Sav. Bank v. Dismukes*
   33 S.E. 175 (Ga. 1899) ......................................................................................... 7

*Brown v. Blue Cross and Blue Shield of Michigan, Inc.*
   167 F.R.D. 40 (E.D. Mich. 1996) ...................................................................... 8

*Castano v. American Tobacco Co.*
   84 F.3d 734 (5th Cir. 1996) ............................................................................... 4

*Chin v. Chrysler Corp.*
   182 F.R.D. 448 (D.N.J. 1998) ........................................................................... 8

*Commonwealth of Pennsylvania v. Budget Fuel Co, Inc.*
   122 F.R.D. 184 (E.D. Pa. 1988) ........................................................................ 8

*Farno v. Ansure Mortuaries of Indiana, LLC*
   953 N.E.2d 1253 (Ind. 2011) ............................................................................. 8

*Gibbs Properties Corp. v. CIGNA Corp.*
   196 F.R.D. 430 (MD Fla. 2000) ........................................................................ 4

*In re Flash Memory Antitrust Litig.*
   2010 WL 2332081 (N.D. Cal. June 9, 2010) .................................................... 1

*Kamm v. Cal. City Dev. Co.*
   509 F.2d 205 (9th Cir. 1975) ............................................................................. 8

*Kunzelmann v. Wells Fargo Bank, N.A.*
   2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ..................................................... 6

*Lohse v. Dairy Comm'n of the State of Nevada*
   1977 WL 1523 (D. Nev. Dec. 21, 1977) .......................................................... 8

*Mazza v. Am. Honda Motor Co., Inc.*
   666 F.3d 581 (9th Cir. 2012) ......................................................................... 4, 6

*O'Shea v. Epson America, Inc.*
   2011 WL 4252458 (C.D. Cal. Sept. 19, 2011) ................................................ 6

*Ostrof v. State Farm Mut. Aut. Ins. Co.*
   200 F.R.D. 521 (D. Md. 2001) .......................................................................... 8

*Pattillo v. Schlesinger*
   625 F.2d 262 (9th Cir. 1980) ............................................................................. 8

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

*Siegel v. Shell Oil Co.*
  256 F.R.D. 580 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010)...........6

*Sullivan v. Chase Inv. Services of Boston, Inc.*
  79 F.R.D. 246 (N.D. Cal. 1978).....................................................................8

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*
  546 F.3d 196  (2nd Cir. 2008) .......................................................................1

*Vega v. T-Mobile USA, Inc.*
  564 F.3d 1256 (11th Cir. 2009) .....................................................................6

*Virgilio v. Ryland Grp., Inc.*
  680 F.3d 1329 (11th Cir. 2012) .....................................................................7

*Wal-Mart Stores, Inc. v. Dukes*
  131 S.Ct. 2541 (2011).....................................................................................3

*Zamani v. Carnes*
  491 F.3d 990 (9th Cir. 2007) ..........................................................................1

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq* ............................................................6

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ...........................................................6

Cal. Civ. Code §1750 *et seq.*................................................................................4

Fed. R. Civ. Proc. 23(b)(3) ..................................................................................7

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE
NOVEMBER 8, 2013 HEARING

## I.   <u>INTRODUCTION</u>

More than one year after filing their motion for class certification, a motion for which Plaintiffs carried the burden of establishing that each of the Rule 23 prerequisites to class certification was met[1], and more than nine months after briefing was completed, Plaintiffs have now filed yet another brief -- without permission from the Court -- in a desperate attempt, once again, to revamp their case for class certification.[2]  The fact is, however, that Plaintiffs' latest filing is a complete ruse: submitted under the guise of a purported "correction" to an immaterial statement made by Plaintiffs' counsel at the November 8, 2013 hearing, only <u>one</u> sentence in the entire brief actually addresses that correction.[3]  The remainder is a last ditch attempt by Plaintiffs to redefine the proposed class before the Court has the opportunity to decide the motion and, once again, change the entire theory of their case.  By doing so, not only are Plaintiffs openly acknowledging that the classes they previously proposed are not certifiable, but are also effectively conceding that this entire dispute is not capable of being resolved in this manner and that their motion for class certification should be denied.

## II.   <u>DEFENDANTS' RESPONSE TO PLAINTIFFS' REVAMPED CLASS</u>

### A.   <u>The New "Common Questions" Show that Class Certification is Improper</u>

In an astonishing turn of events, and recognizing that their prior proposed classes are not certifiable, Plaintiffs have now scrapped every theory upon which they based their motion for class certification.  While Plaintiffs previously told the Court that this case

---

[1] Plaintiffs must prove each Rule 23 requirement by a preponderance of evidence.  *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 202 (2nd Cir. 2008).

[2] Plaintiffs' time for meeting their burden was when their motion was made almost one year ago.  Their post-hearing revamping of the case should be disregarded.  *See Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007); *In re Flash Memory Antitrust Litig.,* 2010 WL 2332081, at *15 (N.D. Cal. June 9, 2010).

[3] The only sentence addressing the correction is found on page one at lines 10-13:  "At the hearing, Plaintiffs' counsel recalled that the number of subclasses certified in *Bank Overdraft* was greater than the 14 subclasses that Plaintiffs had proposed here, but, in fact, the actual number of subclasses certified in *Bank Overdraft* was 13.  *Id.* at 682." (Hereinafter referred to as the "Correction Sentence").

centered on "common misrepresentations" that Mr. Trump "handpicked" Trump University speakers and mentors; that the speakers and mentors were experts; or that Trump University would provide one year of mentoring, Plaintiffs have now abandoned these alleged misrepresentations in favor of a completely new vague question:

> "Did the Preview seminar portray to a reasonable consumer that he would receive instruction from a university with which Donald Trump was ***integrally involved***?"

(emphasis added).

Thus, Plaintiffs have now departed from basing their case on any <u>actual</u> misrepresentation and instead ask this Court to certify a class based on a vague, ambiguous **feeling** that essentially asks whether there was "enough Trump" or as Plaintiffs now formulate the question: Was Mr. Trump "integrally involved?"

The obvious problem is that there is no way to objectively define or determine what this means? What do Plaintiffs have to prove to establish that Mr. Trump was not "integrally involved?" What is the criteria for determining it? And how much involvement is enough? Plaintiffs do not contend that Mr. Trump actually made a representation to every class member that he would be "integrally involved" so what is the legal basis to hold Mr. Trump liable for an undefined − and unanswerable − question concocted by Plaintiffs' counsel after all briefing and argument for certification was completed?

The undisputed evidence submitted with Defendants' opposition to class certification shows that Donald J. Trump, among other involvement, personally met with the original six instructors, that he reviewed resumes of other instructors, wrote blogs, reviewed advertisements, met with Trump University President Michael Sexton regularly, and provided case studies and other information about his real estate transactions. (ECF No. 139 [Ex. 1, ¶¶3-6, Ex. 2, Ex. 4])[4]. Does this mean Mr. Trump was "integrally

---

[4] All Exhibit references are to the Exhibits filed in support of Defendant's Opposition to Plaintiffs' Motion for Class Certification (ECF No. 138).

involved"?  Will it entitle him to summary judgment?  What test or measuring stick will the jury be instructed to use to answer this question?  Fatal to class certification, the truth or falsity of this so-called "common question" cannot be determined in one stroke.  *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551-52 (2011) (To satisfy the commonality requirement of Rule 23(b), a determination of the "truth or falsity" of the common question must resolve an issue "central to the validity of each one of the claims in one stroke.").

Even assuming some type of quantifiable definition actually existed for what it means to be "integrally involved," Plaintiffs' common question remains flawed because not every member of the class could have "suffered the same injury." *Id.* at 2551.  For example, Plaintiffs' proposed common question mistakenly assumes that by virtue of using the word "university," such a representation was material to each consumer and uniformly caused injury.  The evidence Defendants submitted with their opposition illustrated that this cannot be true.  For example, anyone who paid for a seminar had the ability to attend the entire first day (of three) and then cancel and get a full refund.  Thus, if they thought that Trump University provided some educational structure different than what was actually provided (i.e. something more akin to an accredited college), they would have discovered it by the first day of instruction and could have cancelled their purchase.  The same is true for the students who continued through the remaining days of instruction and thought that the program was "excellent," as more than 97% of the attendees stated on their written evaluations.  Obviously, the word "university" was not material to them.  What about those who attended a seminar and then purchased additional seminars because Trump University provided <u>exactly</u> what they expected?  Apparently, they did not find the term "university" to be material to their purchase, or if it was material, they must have been satisfied that they received a "university" education, whatever that term meant to them.  (*See* ECF No. 139-5 [Exs. 11-14:  student evaluations, videotaped testimonials, and declarations]).  Clearly, this so-called "common question" is not common at all.

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE NOVEMBER 8, 2013 HEARING

B.    **Plaintiffs' New Class Definition and Subclasses Suffer From the Same Defects as the Previously Proposed Class**

1.    **Reliance Must be Shown on an Individual Basis for Fraud**

Class certification is improper where there are variations in the alleged misrepresentations and the degree of reliance by each class member. *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 595-96 (9th Cir. 2012) ("common questions of fact do not predominate where an individualized case must be made for each member showing reliance")*; see also Gibbs Properties Corp. v. CIGNA Corp.,* 196 F.R.D. 430, 440 (MD Fla. 2000) ("class certification has generally been rejected in fraud cases where the alleged misrepresentations were oral, due to the predominance of individual reliance issues"). Because reliance raises state of mind and credibility issues, each individual claim must be adjudicated separately, precluding class treatment. *Castano v. American Tobacco Co.,* 84 F.3d 734, 745 (5th Cir. 1996) ("fraud class action cannot be certified when individual reliance will be an issue").

Recognizing this problem, and the fact that their common law fraud claims and at least some of their statutory claims based on misrepresentations (e.g. Cal. Civ. Code §1750 *et seq.*), cannot survive without a presumption of reliance, Plaintiffs now attempt to narrow their proposed class to include only those who purchased a live event "after attending a Preview seminar, including guests of any Preview attendee who purchased a Live Event." Once again, however, this narrowing falls far short of solving Plaintiffs' "reliance problem" because Plaintiffs cannot credibly allege that everyone who attended the Preview seminar was exposed to the same alleged misrepresentation. Notably, the actual misrepresentation to which each class member was allegedly exposed at the Preview Seminar is still not identified by Plaintiffs, and Plaintiffs continue to misrepresent to the Court that "every" Preview featured the same representations[5]. The reason for this

---

[5] For example, Plaintiffs state that "[t]here is no dispute that every 'Trump University' Preview featured: (1) the name 'Trump University' . . . ." This is not true. It is undisputed that "Trump University" was not used after the company changed its name in 2010 to the Trump Entrepreneur Initiative.

4

hide-the-ball tactic is simple − the undisputed evidence reflects that:  (1) the video featuring Donald J. Trump (which Plaintiffs allege contain misrepresentations) was not played at all Preview seminars, and when it was played, different versions were used[6]; and (2) the Preview seminars varied based on the instructor, location, and date of the seminar. In fact, 3 of the 6 named plaintiffs admitted that they never saw the Trump video. (ECF No. 143 [Ex. 37]).  Even if Plaintiffs could somehow establish that the same video was played (it was not), Plaintiffs would then need to establish that each and every plaintiff who attended the Preview was actually in the room when the alleged misrepresentation was played.

Because the content of each Preview Seminar was different, Plaintiffs cannot show that the <u>same misrepresentation</u> was made to each member of the proposed class.  Without this showing, a presumption of reliance is improper.  Without a presumption of reliance, a class cannot be certified because individual issues of reliance predominate.  Compounding the problem, Plaintiffs' new common question does not even involve an actual misrepresentation, but, at best, an amorphous idea, or concept, or feeling.  Since this does not involve an actual misrepresentation or even a statement, then obviously there cannot be a "presumption of reliance," as there was nothing to "rely on."

## 2. The Statutory Consumer Fraud Claims Require a Uniform Misrepresentation.

Plaintiffs' subclasses based on state consumer protection statutes also cannot be certified because, even under those statutes where reliance need not be shown, Plaintiffs must still demonstrate that all class members were exposed to the same misrepresentation. *See, e.g., O'Shea v. Epson America, Inc.,* 2011 WL 4252458 (C.D. Cal. Sept. 19, 2011) (class certification denied for Cal. Bus. & Prof. Code §§ 17200 *et seq.* and 17500 *et seq.* where the injury of each class member could not be traced to the same alleged misrepresentation because the evidence demonstrated that some putative class members

---

[6] In fact, the undisputed evidence shows that it was not used in 2007, optional for use in 2008, and rarely used in 2009-10.  (ECF No. 139 [Ex. 1, ¶15]).

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE
NOVEMBER 8, 2013 HEARING

were not exposed to the alleged misrepresentation).  Because Plaintiffs cannot show that the same alleged misrepresentation was made at every event, the statutory consumer fraud claims must all fail.

### 3.   Plaintiffs have not Met their Burden on the Elder Abuse Claims.

Although Plaintiffs have offered no evidence of any conduct by Defendants targeting the elderly, in their new proposed subclasses, Plaintiffs now attempt to tack on elder abuse claims to the California and Florida subclasses.  These claims cannot be included in any subclass definition, however, as Plaintiffs have failed to meet their burden of demonstrating numerosity or ascertainability as to these claims.

### 4.   The Unjust Enrichment Claims Cannot be Certified.

Courts routinely find that nationwide unjust enrichment classes, or subclasses grouped based on state laws, are improper for class certification.  *Mazza,* 666 F.3d at 591 (reversing class certification because of state variations in unjust enrichment claim).[7] While Plaintiffs attempt to group the unjust enrichment claims into subclasses to account for state law variations, in doing so they purposely over simplify the differences in the laws among the states and ignore key differences which make unjust enrichment claims unsuitable for certification.  *See Siegel v. Shell Oil Co.,* 256 F.R.D. 580, 584 (N.D. Ill. 2008), *aff'd,* 612 F.3d 932 (7th Cir. 2010) (denying certification of a nationwide class because "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone among the fifty states") (internal quotation marks and citation omitted).

For example, with respect to the "benefit" element of an unjust enrichment claim, Florida law requires that the benefit be directly conferred.  *Virgilio v. Ryland Grp., Inc.,*

---

[7] *See also Kunzelmann v. Wells Fargo Bank, N.A.,* 2013 WL 139913, at *9 (S.D. Fla. Jan. 10, 2013) (because variations in state laws and the fact-specific nature of the inquiry, "an unjust enrichment claim is almost always- and certainly here- not suitable for class action treatment."); *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1274 (11th Cir. 2009) ("Due to the necessity of this inquiry into the individualized equities attendant to each class member, courts, including ours, have found unjust enrichment claims inappropriate for class action treatment.").

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE NOVEMBER 8, 2013 HEARING

680 F.3d 1329, 1337 (11th Cir. 2012).  In contrast, Georgia law allows for recovery where the benefit was indirectly conferred.  *Bates-Farley Sav. Bank v. Dismukes,* 33 S.E. 175, 178 (Ga. 1899).  Despite such differences, Plaintiffs grouped Florida and Georgia in the same subclass.

The differences among state laws are compounded by the necessity for individualized fact determinations.  For example, many of the putative class members and Plaintiffs cannot deny that they received at least some benefit from Defendants, such that it would <u>not</u> be unjust for Donald J. Trump to retain any benefit he received.  (ECF No. 139- [Exs. 11-14]).  In any event, making a determination of how much each student in fact benefitted would require individualized determinations.

### 5.   A Class Action is not the Superior Mechanism.

Plaintiffs have also now offered to withdraw their fraud and unjust enrichment subclass if a class is certified in the related case, *Cohen v. Trump,* No. 3:13-cv-02519-GPC-WVG.  By so doing, Plaintiffs acknowledge that certifying a class in this action is not the superior mechanism for adjudicating the dispute.  While Plaintiffs seem to believe that the superiority test consists of determining which case has the best chance of winning, that is not the test. To certify a class here, the Court must affirmatively find that the proposed class is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).  If, as Plaintiffs admit, the claims here would be more appropriately addressed by *Cohen*, the Court must deny certification in its entirety.

Plaintiffs' offer to forego the claims in this case in favor of a different class action also demonstrates counsel's conflict of interest, a conflict that precludes them from providing adequate representation.  *Sullivan v. Chase Inv. Services of Boston, Inc.,* 79 F.R.D. 246, 258 (N.D. Cal. 1978) (counsel cannot represent two classes against the same defendants).

/ / /

/ / /

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE NOVEMBER 8, 2013 HEARING

### 6.      The New York Attorney General's Nationwide Lawsuit Seeks The Same Relief As Plaintiffs Desire Here.

Furthermore, Plaintiffs cannot overcome the fact that the more appropriate forum for adjudicating this dispute is through the currently pending state government action, filed by the New York Attorney General.  *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205 (9th Cir. 1975) ("a class action is not superior to other available methods for the fair and efficient adjudication of the controversy herein, especially in light of proceedings already brought by the California Attorney General and Real Estate Commissioner") (internal quotations omitted).[8]  Where a government action can achieve the same relief as a class action, as is the case here, the class action is inferior because any relief achieved in the class action would be significantly reduced by attorneys' fees.  *Pattillo v. Schlesinger,* 625 F.2d 262, 265 (9th Cir. 1980) ("this court cannot be unaware of the fact that the principle beneficiaries of the class action would be plaintiffs' attorneys").[9]

Applied here, the New York Attorney General action seeks the same remedy – the return of all sums paid to Trump University by students nationally – as Plaintiffs would like here.  The only difference is that, in the New York action, the students would not have to share the recovery with the lawyers as Plaintiffs would here.  Indeed, even many

---

[8] Following *Kamm,* many other courts similarly found a state government action to weigh against class certification.  *See, e.g., Ostrof v. State Farm Mut. Aut. Ins. Co.,* 200 F.R.D. 521, 532 (D. Md. 2001) (due to availability of administrative remedy, "it is clear that adding a class action overlay in federal court makes little sense"); *Chin v. Chrysler Corp.,* 182 F.R.D. 448, 464 (D.N.J. 1998) (plaintiffs' class claims failed to meet the superiority requirement because, among other reasons, an administrative remedy "is more appropriate than civil litigation seeking equitable relief and money damages in a federal court.); *Lohse v. Dairy Comm'n of the State of Nevada,* 1977 WL 1523, at *7 (D. Nev. Dec. 21, 1977) ("state action is much preferred to a punitive treble damage antitrust private civil remedy the proceeds from which will only slightly benefit any individual plaintiff"); *Farno v. Ansure Mortuaries of Indiana, LLC,* 953 N.E.2d 1253, 1275-76 (Ind. 2011) (denying class certification for lack of superiority because an action by the Securities Commissioner was "better suited for 'handling the total controversy'").

[9] *See, e.g., Brown v. Blue Cross and Blue Shield of Michigan, Inc.,* 167 F.R.D. 40, 45 (E.D. Mich. 1996) (in action by the state, the plaintiff class will not "suffer" from the attendant attorney fee award to plaintiffs' counsel in the class action); *Commonwealth of Pennsylvania v. Budget Fuel Co, Inc.,* 122 F.R.D. 184, 186 (E.D. Pa. 1988) ("there is no need to have a second class representative when the class is adequately represented by the Attorney General . . . Any monies recovered on behalf of the consumer class should be used to pay consumer claims and not additional plaintiffs' attorneys' fees and costs.").

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE NOVEMBER 8, 2013 HEARING

of the claims are effectively, if not actually, the same.  For instance, while Plaintiffs now propose a class consisting of "[a]ll Class Members who made their purchase in New York for violations of NY Gen. Bus. Law §349," the New York Attorney General's second cause of action already alleges "Violations of GBL § 349."  Moreover, the New York Attorney General has gone on record as stating that he is seeking over $40 million in damages on behalf of all former students nationally.

## C.   **Plaintiffs' Proposed Class is Unmanageable.**

While Plaintiffs' apparent purpose in redefining their class was to address the Court's concern about the unmanageability of their previously proposed class, Plaintiffs' new class and subclasses serve only to further illustrate that a class action trial on Plaintiffs' claims is not practical.

The new subclass definitions, framed to include only those persons who "made their purchase" in a particular state will require an individual inquiry of each person who made a purchase from Trump University to determine where such person "made their purchase."  To illustrate the problem with Plaintiffs' subclass definition, consider the following:  Under Plaintiffs' new subclass definitions, an individual residing in New York, who attended a Preview in Baltimore, but decided to "make a purchase" of a seminar from his computer while sitting at an airport in Los Angeles, would apparently be part of the first subclass for violations of California statutes.

Putting aside whether this person would even be entitled to avail himself of California law, this type of individual inquiry would be required to determine who belonged in each subclass, making Plaintiffs' subclass definitions not certifiable.

Plaintiffs also continue to propose that Tarla Makaeff remain a class representative, yet she is not a proposed representative of any subclass and is not even a member of the newly proposed class, as she never attended a Preview seminar.[10]  Plaintiffs' new class

---

[10] Plaintiffs also include "guests of any Preview attendee who purchased a Live Event" in their new definition.  Although unclear from the definition, if this is meant to capture those persons who did not attend a Preview, and therefore could not have relied on any alleged misrepresentation, such as Tarla Makaeff, it further illustrates the unworkable nature of Plaintiffs' class.

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE NOVEMBER 8, 2013 HEARING

definition remains as riddled with problems as their original, further proving that a trial on a class wide basis is infeasible.

### D.   <u>Defendants Preserve Their Right to a Jury Trial</u>

During oral argument, the Court expressed its concern about the anticipated difficulty of trying this case – with multiple claims involving multiple subclasses involving different state interests and different laws with different burdens of proof, etc. The Court noted that the preparation of jury instructions alone could take many days.  In an apparent attempt to "solve" the Court's concern, Plaintiffs now represent that they waive their right to a jury trial.  Defendants, however, have not waived their rights in this regard and hereby preserve such rights.  Accordingly, Plaintiffs waiver has no impact on the complex and unmanageable nature of this case.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should disregard the entirety of Plaintiffs' Notice of Correction Regarding the November 8, 2013 Hearing with the exception of the Correction Sentence.  This Court should also deny Plaintiffs' Motion for Class Certification and Appointment of Class Counsel.

Respectfully submitted,

Dated:    November 22, 2013

By:   s/ Jill A. Martin_____
Jill A. Martin
Attorney for Defendants
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF CORRECTION REGARDING THE NOVEMBER 8, 2013 HEARING

CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 22, 2013.

s/ Jill A. Martin

JILL A. MARTIN
c/o Trump National Golf Club Los Angeles
One Trump National Dr.
Rancho Palos Verdes, CA 90275
Tel:  310-303-3225
Fax:  310-265-5522

Email:   jmartin@trumpnational.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG Makaeff v. Trump University, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,robyns@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com

- **Stephen F Yunker**
  sfy@yslaw.com,ewb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)