**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| TARLA MAKAEFF, on behalf of herself and all others similarly situated, | No. 11-55016 |
| *Plaintiff-counter-defendant - Appellant*, | D.C. No. 3:10-cv-00940- IEG-WVG |
| and | |
| BRANDON KELLER; ED OBERKROM; PATRICIA MURPHY, | ORDER DENYING THE PETITION FOR REHEARING EN BANC |
| *Plaintiffs*, | |
| v. | |
| TRUMP UNIVERSITY, LLC, a New York limited liability company, AKA Trump Entrepreneur Initiative, | |
| *Defendant-counter-claimant - Appellee*, | |
| and | |
| DONALD J. TRUMP, | |
| *Defendant*. | |

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted
January 18, 2012—Irvine, California

Filed November 27, 2013

Before: Alex Kozinski, Chief Judge, Kim McLane
Wardlaw and Richard A. Paez, Circuit Judges.

Order;
Concurrence by Judges Wardlaw and Callahan;
Dissent by Judge Watford

## SUMMARY[*]

### California Anti-SLAPP Statute

The panel denied a petition for panel rehearing and denied a petition for rehearing en banc on behalf of the court.

Concurring in the denial of rehearing en banc, Judge Wardlaw and Callahan, joined by Judges W. Fletcher and Gould, rejected the dissent's assertions that the motion to strike provision of California's anti-SLAPP statute collides with Federal Rules 12 and 56 and that this case needs to be taken en banc to overrule *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), and *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting from the denial of rehearing en banc, Judge Watford, joined by Chief Judge Kozinski and Judges Paez and Bea, stated that California's anti-SLAPP statute impermissibly supplements the Federal Rules' criteria for pre-trial dismissal of an action. Judge Watford believes that the court should have taken this case en banc to bring its line of case law in line with *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010), and the Supreme Court's decisions establishing the proper scope of the collateral order doctrine.

## ORDER

Chief Judge Kozinski and Judge Paez have voted to grant the petition for rehearing en banc. Judge Wardlaw has voted to deny the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35(f).

Appellee's petition for rehearing en banc, filed April 30, 2013, is **denied**. Judge Watford's dissent from denial of en banc rehearing, and Judges Wardlaw and Callahan's concurrence in the denial of en banc rehearing, are filed concurrently with this Order.

## IT IS SO ORDERED.

4                MAKAEFF V. TRUMP UNIVERSITY

WARDLAW and CALLAHAN, Circuit Judges, with whom Judges FLETCHER and GOULD join, concurring in the denial of rehearing en banc:

"En banc courts are the exception, not the rule." *United States v. American-Foreign S.S. Corp.*, 363 U.S. 685, 689 (1960). They are "not favored," Fed. R. App. P. 35, and "convened only when extraordinary circumstances exist," *American-Foreign S.S. Corp.*, 363 U.S. at 689. Because the panel opinion faithfully follows our circuit's precedent, creates no inter-circuit split, does not present an issue of exceptional importance, and because the contrary result would create a circuit split, a call to rehear this appeal en banc failed to gain the support of a majority of our active judges. We concur.

Our dissenting colleagues urge us to overrule our decisions in *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), and *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003). In *Newsham*, we held that the motion to strike and attorneys' fees provisions of California's anti-SLAPP statute apply in diversity cases; in *Batzel*, we held that the denial of an anti-SLAPP motion is immediately appealable under the collateral order doctrine. *Newsham* and *Batzel* were correctly decided. Not only is the dissent's desire to use this appeal as a vehicle to change our circuit's law based on a misreading of Supreme Court precedent; it also distorts our standard for rehearing an appeal en banc.

## I.

The dissent asserts that the motion to strike provision of California's anti-SLAPP statute collides with Federal Rules

12 and 56. This was exactly the argument advanced by the SLAPP plaintiff in *Newsham*. There, we concluded that there was no "direct collision" because the motion to strike and attorneys' fees provisions of the anti-SLAPP statute and Rules 12 and 56 "'can exist side by side . . . each controlling its own intended sphere of coverage without conflict.'" *Newsham*, 190 F.3d at 972 (ellipsis in original) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)). We reasoned that, under the anti-SLAPP statute, a SLAPP defendant may bring a special motion to strike. If he is successful, the SLAPP counterclaim will be dismissed and the plaintiff-counter-defendant may be entitled to attorneys' fees. If he is unsuccessful, he "remains free to bring a Rule 12 motion to dismiss, or a Rule 56 motion for summary judgment." *Id.*

The Supreme Court's decision in *Shady Grove Orthopedic Associates v. Allstate Insurance Co.*, 559 U.S. 393 (2010), does not change this reasoning. There, the Supreme Court addressed whether a New York statute that precluded class actions in suits seeking penalties or statutory minimum damages collided with Federal Rule of Civil Procedure 23. The Court framed the "direct collision" inquiry in a new way: it asked whether the state statute at issue "attempts to answer the same question" as the Federal Rule. *Id.* at 399. To determine the questions answered by Rule 23, the Court looked to the plain language of the Rule, which "states that '[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id.* at 398 (alteration in original) (quoting Fed. R. Civ. P. 23(b)).

Focusing on Rule 23's use of the words "may be maintained," the Court continued:

> By its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action. (The Federal Rules regularly use "may" to confer categorical permission, *see, e.g.*, Fed. Rules Civ. Proc. 8(d)(2)-(3), 14(a)(1), 18(a)-(b), 20(a)(1)-(2), 27(a)(1), 30(a)(1), as do federal statutes that establish procedural entitlements, *see, e.g.*, 29 U.S.C. § 626(c)(1); 42 U.S.C. § 2000e–5(f)(1).)

*Id*. at 398–99.  The Rule "provides a one-size-fits-all formula for deciding the class-action question." *Id*. at 399.  The state statute directly conflicted with Rule 23's categorical rule because it "states that Shady Grove's suit 'may *not* be maintained as a class action' (emphasis added) because of the relief it seeks," even if Shady Grove's suit meets the requirements of Rule 23.  *Id*.

The dissent's assertion that Rules 12 and 56 together define a cohesive system for weeding out meritless claims that is akin to Rule 23's categorical rule turns *Shady Grove*'s lens into a kaleidoscope.  This assertion overlooks the Court's reliance on textual analysis in *Shady Grove*.  Rule 23 states that "[a] class action may be maintained" if certain requirements are met.  Therefore, Rule 23 provides a categorical rule: *if* the requirements are met, *then* a plaintiff is entitled to maintain his suit as a class action.

In contrast, Rules 12 and 56 do not provide that a plaintiff is entitled to maintain his suit if their requirements are met;

instead, they provide various theories upon which a suit may be disposed of before trial. California's anti-SLAPP statute, by creating a separate and additional theory upon which certain kinds of suits may be disposed of before trial, supplements rather than conflicts with the Federal Rules.[1]

Rule 12 provides a mechanism to test the legal sufficiency of a complaint. The question asked by Rule 12 is whether the plaintiff has stated a claim that is plausible on its face and upon which relief can be granted. California's anti-SLAPP statute does not attempt to answer this question; instead, California Code of Civil Procedure § 430.10, the state statutory analog of Rule 12, does. *See* Cal. Civ. Proc. Code § 430.10.[2] That the California legislature enacted both an

---

[1] *Cf. Godin v. Schencks*, 629 F.3d 79, 91 (1st Cir. 2010) ("Neither Rule 12 nor Rule 56 of the federal rules of procedure purport to be so broad as to preclude additional mechanisms meant to curtail rights-dampening litigation through the modification of pleading standards.").

[2] Section 430.10 provides:

> The party against whom a complaint or cross-complaint has been filed may object, by demurrer or answer as provided in Section 430.30, to the pleading on any one or more of the following grounds:
>
> (a) The court has no jurisdiction of the subject of the cause of action alleged in the pleading.
>
> (b) The person who filed the pleading does not have the legal capacity to sue.
>
> (c) There is another action pending between the same parties on the same cause of action.
>
> (d) There is a defect or misjoinder of parties.

analog to Rule 12 and, additionally, an anti-SLAPP statute is strong evidence that the provisions are intended to serve different purposes and control different spheres. Moreover, the anti-SLAPP statute asks an entirely different question: whether the claims rest on the SLAPP defendant's protected First Amendment activity and whether the plaintiff can meet the substantive requirements California has created to protect such activity from strategic, retaliatory lawsuits.

Furthermore, the contention that California Code of Civil Procedure § 425.16 imposes a probability requirement at the pleading stage ignores California Supreme Court precedent. Although § 425.16 asks courts to determine whether "the plaintiff has established that there is a *probability* that the plaintiff will prevail on the claim," (emphasis added), the California Supreme Court has held that:

> past [California state] cases interpreting this provision establish that the Legislature did not

---

(e) The pleading does not state facts sufficient to constitute a cause of action.

(f) The pleading is uncertain. As used in this subdivision, "uncertain" includes ambiguous and unintelligible.

(g) In an action founded upon a contract, it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct.

(h) No certificate was filed as required by Section 411.35.

(i) No certificate was filed as required by Section 411.36.

> intend that a court . . . would weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim, but rather intended to establish a summary-judgment-like procedure available at an early stage of litigation that poses a potential chilling effect on speech-related activities.

*Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007). In other words, a reviewing court "should grant the motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Vargas v. City of Salinas*, 46 Cal. 4th 1, 20 (2009) (emphasis added). Thus, even if we were to conclude that § 425.16 and Rule 12 serve similar purposes, at worst, a motion to strike functions merely as a mechanism for considering summary judgment at the pleading stage as is permitted under Rule 12(d). *See* Fed. R. Civ. P. 12(d).

California also has a state statutory equivalent to Rule 56. *See* Cal. Civ. Proc. Code § 437c(c). ("The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). And as already explained, the test for legal sufficiency embodied in § 425.16 conflicts with neither Rule 12 nor Rule 56.

The Supreme Court's decision in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), is instructive. In *Cohen*, the Supreme Court determined that a New Jersey statute that required certain plaintiffs to post a bond in shareholder derivative suits could be enforced consistent with

former Federal Rule 23 (now Rule 23.1). 337 U.S. at 557. New Jersey enacted the statute at issue in *Cohen* to protect against so called "strike suits," that is, suits "brought not to redress real wrongs, but to realize upon their nuisance value." *Id.* at 547–48. The Court recognized that former Rule 23 "deals with plaintiff's right to maintain such an action in federal court," and places certain requirements on shareholder derivative suits, including that the stockholder's complaint be verified by oath and show that the plaintiff was a stockholder at the time of the transaction at issue, and that the action not be dismissed without approval of the court and notice to all parties. *Id.* at 556. However, former Rule 23, like current Rule 23.1, did not provide that a shareholder derivative suit "may be maintained" if the requirements were met. Instead, it set forth minimum requirements that were prerequisites— necessary, but not necessarily sufficient—to maintain a suit. Despite the fact that the state statute created an additional and indeed onerous requirement for the maintenance of a shareholder derivative suit, the Court determined that the state statute did not conflict with the requirements of Rule 23 and therefore should apply in federal court.

Just as the New Jersey statute in *Cohen* sought to limit frivolous strike suits, California's anti-SLAPP statute seeks to limit frivolous suits brought primarily for the purpose of chilling the valid exercise of First Amendment rights. And, just as the state statute in *Cohen* did not conflict with former Rule 23 even though it created supplemental, even onerous requirements for certain plaintiffs, the motion to strike and attorneys' fees provisions of California's anti-SLAPP statute do not conflict with Rules 12 and 56 even though they create supplemental requirements for certain plaintiffs.

California's interest in securing its citizens' free speech rights also cautions against finding a direct collision with the Federal Rules.  In *Shady Grove*, a majority of the justices recognized that state interests are significant, even in determining whether there is a conflict.  559 U.S. at 421 n.5 (Stevens, J., concurring in part and concurring in the judgment) (indicating that he agreed with the four dissenting justices that the Federal Rules must be interpreted in light of considerations including "sensitivity to important state interests").  Indeed, in *Godin*, the First Circuit thoroughly and persuasively analyzed *Shady Grove* before concluding that Maine's anti-SLAPP law was enforceable in federal court. 629 F.3d at 86–91.

Where there is no direct collision between a Federal Rule and a state statute, we must make the "typical, relatively unguided *Erie* Choice."  *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).  Every circuit that has considered the issue has agreed with our conclusion in *Newsham* that anti-SLAPP statutes like California's confer substantive rights under *Erie*.[3]  If we

---

[3] *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 144–48 (2d Cir. 2013) ("[T]he aspects of California's anti-SLAPP rule considered substantive by federal law continue to apply in this case . . . .  California's anti-SLAPP rule reflects a substantive policy favoring the special protection of certain defendants from the burdens of litigation because they engaged in constitutionally protected activity."); *Godin*, 629 F.3d at 87–88 ("[W]e hold that the dual purposes of *Erie* are best served by enforcement of [Maine's anti-SLAPP statute] in federal court. . . . Maine has not created a substitute to the Federal Rules, but instead created a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities."); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168–69 (5th Cir. 2009) ("Louisiana law, including the nominally-procedural [Louisiana anti-SLAPP] statute, governs this diversity case." (citing *Newsham*, 190 F.3d at 972–73)).

12          MAKAEFF V. TRUMP UNIVERSITY

had taken this appeal en banc, and decided the other way (as our colleagues advocate in their concurrences), we would have created an inter-circuit split; a result at odds with Rule 35 of the Federal Rules of Appellate Procedure.

## II.

Our colleagues also want us to overrule *Batzel*—not because of any intervening Supreme Court decision or conflicting circuit opinion, but because they find *Batzel*'s reasoning "unpersuasive."[4] In *Batzel*, we held that the denial of an anti-SLAPP motion to strike is immediately appealable under the collateral order doctrine. 333 F.3d at 1024–26. For the collateral order doctrine to apply, the order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted). In the dissent's view, the denial of an anti-SLAPP motion to strike fails the second and third prongs of the test.

---

[4] Judge Paez's concern over the "significant state-by-state variations within the circuit" regarding whether the denial of an anti-SLAPP motion is immediately appealable, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Paez, J., concurring, and Kozinski, C.J., concurring), ignores our instruction that although the state "statutes have common elements, there are significant differences as well, so that each state's statutory scheme must be evaluated separately," *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 799 (9th Cir. 2012). For instance, in *Ferrell* we concluded that Nevada's anti-SLAPP statute did not satisfy the collateral order doctrine because "its underlying values and purpose are satisfied without resort to an immediate appeal." *Id.* at 800–01.

In *Batzel*, we determined that a denial of an anti-SLAPP motion resolves a question separate from the merits in that the purpose of an anti-SLAPP motion is to determine whether a party suffers harassment by the prosecution of a frivolous lawsuit designed to chill otherwise constitutionally-protected expressive conduct. 333 F.3d at 1024–25. In contrast, the question on the merits is whether the defendant is ultimately liable for defamation (or whatever the underlying claim might be). *Id.* at 1025.

For example, here Tarla Makaeff sued Trump University accusing it of, among other things, deceptive business practices. *Makaeff*, 715 F.3d at 260. Trump University counterclaimed, alleging that Makaeff's letters and online postings, written months prior to the filing of this action and complaining of Trump University's business practices, constituted defamation. *Id.* Using California's anti-SLAPP law, Makaeff moved to strike Trump University's defamation counterclaim.**[5]** *Id.* at 260, 270–71. Trump University's counterclaim was obviously designed to overwhelm Makaeff by making it more burdensome and expensive for her to pursue her deceptive business practices claims against Trump University. Makaeff's motion to strike concerned the frivolity of Trump University's allegation that her speech about its deceptive business practices was defamatory; its very purpose was to determine whether Trump University's counterclaim was designed to chill Makaeff's valid exercise

---

**[5]** We reversed the denial of the anti-SLAPP motion because the district court erroneously concluded that Trump University was not a public figure, and therefore was required to demonstrate actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Trump University may ultimately demonstrate actual malice upon remand, however, this is a demanding standard to meet.

of her First Amendment rights.[6]    The issue adjudicated through the mechanism of the motion to strike was not whether Makaeff was liable for defamation because of her statements condemning Trump University's alleged deceptive business practices—the question at the heart of Trump University's underlying counterclaim.[7]    Thus, while the inquiry on the motion to strike may glance at the merits, its central purpose is to provide an added statutory protection from the burdens of litigation that is unavailable during the ultimate merits inquiry.

The Supreme Court has held that issues concerning immunity from suit are often separate from the merits of the underlying dispute in the litigation, even though part of the traditional inquiry touches on the merits: whether a particular constitutional right was clearly established at the time of the alleged governmental misconduct.  *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985) (noting that a claim of

---

[6] Like in *Batzel*, the anti-SLAPP inquiry here tested whether the defamation claim was "brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." 333 F.3d at 1024. That was the ultimate question. Assessments of whether Makaeff's allegedly defamatory statements were protected activity under § 425.16 or whether Trump University had a reasonable probability of prevailing on its defamation claim were merely intermediate steps used to answer that core inquiry—was Trump University's defamation counterclaim filed to chill Makaeff's speech.

[7] While the original action was Makaeff's deceptive business practices suit, the underlying action for purposes of the separateness inquiry under the collateral order doctrine is Trump University's defamation counterclaim. If, *arguendo*, we compared the district court's order denying Makaeff's anti-SLAPP motion to the merits of Makaeff's deceptive business practices claim, the divide separating those two is even greater.

qualified immunity "is conceptually distinct from the merits of the plaintiff's claim"); *Abney v. United States*, 431 U.S. 651, 659 (1977) (holding that denial of a claim of double jeopardy immunity is separate from the question of whether the defendant is guilty of the charged crime). As the Fifth Circuit reasoned in its separability analysis concerning an analogous Louisiana anti-SLAPP statute:

> The immunity decisions indicate that some involvement with the underlying facts is acceptable, as the Court has found the issue of immunity to be separate from the merits of the underlying dispute "even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue."

*Henry*, 566 F.3d at 175 (quoting *Mitchell*, 472 U.S. at 529). In other words, an order can touch on the merits and still be sufficiently separate from the merits to satisfy the requirements of the collateral order doctrine. As we concluded in *Batzel*, "[t]he purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim," not to determine whether the defendant actually committed the relevant tort. *Batzel*, 333 F.3d at 1025. The motion to strike thus "exists separately from the merits of the defamation claim itself." *Id*. Furthermore, § 425.16 does not conflict with *Johnson v. Jones*, 515 U.S. 304 (1995), because the "probability" inquiry asks a purely legal question: "whether the facts alleged . . . support a claim" that survives a motion to strike. *Id.* at 313 (internal quotation marks omitted). Unlike the sufficiency of evidence inquiry at issue in *Johnson*, it does "not consider the correctness of the plaintiff's version of the facts." *Id.*

Finally, the policy animating the separability requirement favors our determination in *Batzel* that the motion to strike inquiry is separable.  As the Fifth Circuit observed in *Henry*, the separability requirement furthers the purpose of the final order rule "by preventing appeals on issues that will be definitively decided later in the case."  566 F.3d at 176. However, issues that are decided before trial and then not normally revisited, such as immunity, do not implicate this concern.  The denial of an anti-SLAPP motion is similar: "although an [anti-SLAPP] motion looks to the plaintiff's probability of success, the court decides it before proceeding to trial and then moves on."  *Id*.

We recently reaffirmed the validity of *Batzel* in light of the Supreme Court's intervening decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009).  *See DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009 (9th Cir. 2013). We remarked that *Mohawk Industries* redirected our focus towards "whether delaying review would imperil a substantial public interest or some particular value of a high order."  *Id*. at 1015 (internal quotation marks and citations omitted). Applying this rule, we held:

> [T]he denial of a motion to strike made pursuant to California's anti-SLAPP statute remains among the class of orders for which an immediate appeal is available.  This is especially so given the particular public interests that the anti-SLAPP statute attempts to vindicate.  It would be difficult to find a value of a "high[er]" order" than the constitutionally-protected rights to free speech and petition that are at the heart of California's anti-SLAPP statute.  Such

> constitutional rights deserve particular solicitude within the framework of the collateral order doctrine. The California legislature's determination, through its enactment of the anti-SLAPP statute, that such constitutional rights would be imperiled absent a right of interlocutory appeal deserves respect. We must make particular efforts to accommodate the substantive aims of states when, as here, we entertain state law claims as a federal court sitting in diversity.

*Id*. at 1015–16 (second alteration in original; citation omitted).

### III.

Through anti-SLAPP laws, the legislatures of Arizona, California, Guam, Hawaii, Nevada, Oregon, and Washington have decided to impose substantive limitations on certain state law actions. *See* Thomas R. Burke, *Anti-SLAPP Litigation* App. B (2013) (listing the text of each state's anti-SLAPP statute). Refusing to recognize these limitations in federal court is bad policy. If we ignore how states have limited actions under their own laws, we not only flush away state legislatures' considered decisions on matters of state law,[8] but we also put the federal courts at risk of being swept

---

[8] Notably, under the Rules Enabling Act, the Federal Rules of Civil Procedure cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). The failure to enforce the anti-SLAPP laws would arguably enlarge state law causes of action and abridge state law speech protections. *See Shady Grove*, 559 U.S. at 416–17 (Stevens, J., concurring in part and concurring in the judgment) (agreeing that "there are some state procedural rules that federal courts must apply in diversity cases

away in a rising tide of frivolous state actions that would be filed in our circuit's federal courts. Without anti-SLAPP protections in federal courts, SLAPP plaintiffs would have an incentive to file or remove to federal courts strategic, retaliatory lawsuits that are more likely to have the desired effect of suppressing a SLAPP defendant's speech-related activities.[9] Encouraging such forum-shopping chips away at "one of the modern cornerstones of our federalism." *Hanna*, 380 U.S. at 474 (Harlan, J., concurring).

\* \* \*

*Newsham* and *Batzel* were correctly decided. Every circuit to consider these issues has agreed with our holdings in these cases, concluding that similar anti-SLAPP provisions apply in federal court and rulings on the motions are immediately appealable. Our dissenting colleagues wanted to take this case en banc to overrule *Newsham*, *Batzel*, and their progeny, and, in so doing, create an inter-circuit split. But our circuit has already held that citizens of the seven jurisdictions within our circuit that have anti-SLAPP laws should not be stripped of their state's free speech protections whenever they step inside a federal court.

En banc review is not an opportunity for us to dig through our circuit's trove of opinions and call cases that we would

---

because they function as part of the State's definition of the substantive rights and remedies").

[9] *See, e.g.*, Eliza Krigman, *Yelp Pushes for Federal Anti-SLAPP Laws*, Politico (Jan. 4, 2013, 4:40 AM), http://www.politico.com/story/2013/01/yelp-pushes-for-federal-anti-slapp-laws-85737.html (noting that a lawsuit was filed in Virginia instead of the District of Columbia because Virginia had no anti-SLAPP law).

have decided differently. "We must recognize that we are an intermediate appellate court," *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), and that we should only invoke the en banc process to secure or maintain uniformity of our decisions or because a question of exceptional importance is involved. *See* Fed. R. App. Proc. 35. Supreme Court precedent does not require us to change course and the majority of active judges in our court wisely refused to grant en banc consideration.

---

WATFORD, Circuit Judge, joined by KOZINSKI, Chief Judge, and PAEZ and BEA, Circuit Judges, dissenting from the denial of rehearing en banc:

In *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999), we held that California's anti-SLAPP statute must be applied in federal court. *Id.* at 972–73. In *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), we compounded that mistake by holding that litigants are entitled to take interlocutory appeals from rulings on anti-SLAPP motions. *Id.* at 1024–26. Neither of those decisions is consistent with controlling Supreme Court precedent, and both warranted reexamination by the court sitting en banc.

I

The Supreme Court has long held that federal courts may not apply state statutes that interfere with the operation of the Federal Rules of Civil Procedure. In *Hanna v. Plumer*, 380 U.S. 460 (1965), the Court established the governing test. "When a situation is covered by one of the Federal Rules," a

federal court must apply the Federal Rule, notwithstanding the existence of a conflicting state statute. *Id.* at 471. The Federal Rule governs so long as it "trangresses neither the terms of the [Rules] Enabling Act nor constitutional restrictions." *Id.*; *see also Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941); 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4510, p. 293 (2d ed. 1996). Only if the Federal Rule is inapplicable or invalid must the court "wade into *Erie*'s murky waters." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

The Supreme Court's recent decision in *Shady Grove* sheds new light on how this conflict analysis should proceed. That case concerned a challenge to a New York statute precluding class certification of any action seeking penalties or statutory minimum damages. *Id.* at 396–97 & n.1. The Court held that the statute conflicted with Federal Rule of Civil Procedure 23. The conflict arose because Rule 23 sets out "a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action," while the New York statute "attempts to answer the same question—*i.e.*, it states that Shady Grove's suit 'may *not* be maintained as a class action' (emphasis added) because of the relief it seeks." *Id.* at 398–99. The Court found a conflict between the two provisions because it viewed Rule 23 as establishing an exclusive set of criteria governing class certification that States may not supplement. *See id.* at 398–400.

Viewed through *Shady Grove*'s lens, California's anti-SLAPP statute conflicts with Federal Rules 12 and 56. Taken together, those rules establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court.

*See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, C.J., concurring) ("The Federal Rules aren't just a series of disconnected procedural devices. Rather, the Rules provide an integrated program of pre-trial, trial and post-trial procedures . . . ."). California's anti-SLAPP statute impermissibly supplements the Federal Rules' criteria for pre-trial dismissal of an action.

Let's take the conflict with Rule 12 first. Rule 12 provides the sole means of challenging the legal sufficiency of a claim before discovery commences. To survive a Rule 12(b)(6) motion to dismiss—the closest Rule 12 analog to an anti-SLAPP motion to strike—the plaintiff must allege facts stating a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard "does not impose a probability requirement at the pleading stage." *Id.* at 556. Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is *improbable*." *Id.* (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a probability requirement . . . ." (internal quotation marks omitted)).

Any attempt to impose a probability requirement at the pleading stage would obviously conflict with Rule 12. Yet that is exactly what California's anti-SLAPP statute does. It bars an action from proceeding beyond the pleading stage "unless the court determines that the plaintiff has established that there is a *probability* that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1) (emphasis added). By forcing the plaintiff to establish that success is not merely plausible but probable, the anti-SLAPP statute effectively stiffens the Rule 12 standard for testing the legal sufficiency of a claim. Just as the New York statute in *Shady*

*Grove* impermissibly barred class actions when Rule 23 would permit them, so too California's anti-SLAPP statute bars claims at the pleading stage when Rule 12 would allow them to proceed.

Similar problems plague the interaction between California's anti-SLAPP statute and Rule 56. Motions to strike almost invariably require consideration of matters outside the pleadings, and in those circumstances the Federal Rules state that "the motion *must* be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (emphasis added). Under Rule 56, a party is entitled to summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Conversely, to avoid summary judgment, the non-movant need only "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). The anti-SLAPP statute eviscerates Rule 56 by requiring the plaintiff to prove that she will probably prevail if the case proceeds to trial—a showing considerably more stringent than identifying material factual disputes that a jury could reasonably resolve in the plaintiff's favor.

Our decision in *Metabolife International, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001), further highlights the conflict between the anti-SLAPP statute and Rule 56. California's anti-SLAPP statute mandates a stay of all discovery pending the court's resolution of a motion to strike. Cal. Civ. Proc. Code § 425.16(g). In *Metabolife*, we held that "the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56," and we therefore refused to apply the statute's discovery provisions in federal

court. *Metabolife*, 264 F.3d at 846 (internal quotation marks omitted). At the same time, however, we allowed the motion-to-strike regime to stand. As Chief Judge Kozinski has noted, the resulting amalgamation of anti-SLAPP and Rule 56 procedures has "crippled" the anti-SLAPP statute, leaving us with "a hybrid procedure where neither the Federal Rules nor the state anti-SLAPP statute operate as designed." *Makaeff*, 715 F.3d at 275 (Kozinski, C.J., concurring).

In short, California's anti-SLAPP statute creates the same conflicts with the Federal Rules that animated the Supreme Court's ruling in *Shady Grove*. That intervening decision should have led us to revisit—and reverse—our precedent permitting application of state anti-SLAPP statutes in federal court.

## II

Even if anti-SLAPP motions may be brought in federal court, we should stop entertaining interlocutory appeals from rulings on such motions. In *Batzel*, we held that interlocutory appeals are authorized under the collateral order doctrine, which applies only if three conditions are met. The order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). Orders granting or denying anti-SLAPP motions don't satisfy the second condition of this test, because California's anti-SLAPP statute requires courts to assess the merits of the action when ruling on a motion to strike.

California's anti-SLAPP statute states that a motion to strike shall be granted "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). In *Batzel*, we held that a ruling under this provision involves a question completely separate from the merits because "it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed." *Batzel*, 333 F.3d at 1025. *Batzel*'s reasoning on this point is unpersuasive. A court cannot gauge the probability of success on a claim without assessing the merits of the claim itself. Such a predictive analysis may not amount to *deciding* the claim on the merits, but there's no credible argument that it's "*completely* separate from the merits." *Will*, 546 U.S. at 349 (emphasis added). For proof, we need look no further than the panel's opinion in this case, which engages in an exhaustive analysis of the merits of Trump University's defamation claim. *See Makaeff*, 715 F.3d at 261–71.

The absence of an issue completely separate from the merits is sufficient, without more, to preclude application of the collateral order doctrine, since all three of the doctrine's conditions must be met. But hold on, some have objected, that can't be right. California's anti-SLAPP statute is intended to afford an immunity *from trial*, not just from liability, and without the ability to take an immediate appeal that immunity may well be lost. However, even if California's anti-SLAPP statute provides an immunity from trial, as we concluded in *Batzel*, 333 F.3d at 1025–26, that doesn't make anti-SLAPP rulings immediately appealable. (As Judge Paez has noted, we've held that similar anti-SLAPP statutes in other States do *not* afford immunity from trial and thus do not trigger application of the collateral order

doctrine. *See Makaeff*, 715 F.3d at 276 (Paez, J., concurring). That has added yet another layer of incoherence to our circuit's anti-SLAPP jurisprudence.)

The Supreme Court has specifically resisted the notion that all claims of a right to avoid trial satisfy the collateral order doctrine's requirements. In *Will*, the Court cautioned: "Those seeking immediate appeal therefore naturally argue that any order denying a claim of right to prevail without trial satisfies the third condition. But this generalization is too easy to be sound and, if accepted, would leave the final order requirement of § 1291 in tatters." 546 U.S. at 350–51. Thus, even cases squarely presenting a claimed right not to stand trial must be treated with skepticism. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994).

We should be skeptical here. The Supreme Court has permitted immediate appeals of immunity rulings in part because immunity questions generally involve issues distinct from the merits and don't require extensive factual inquiry. For example, the Court has allowed immediate appeals of absolute and Eleventh Amendment immunity determinations, both of which turn on the legal status of the defendant. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–47 (1993); *Nixon v. Fitzgerald*, 457 U.S. 731, 741–43 (1982).

Similarly, the Court has allowed immediate appeals of many, but not all, qualified immunity determinations. Under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), courts must determine whether the law the defendant allegedly violated was "clearly established." *Id.* at 818. In holding that such determinations are immediately appealable under the collateral order doctrine, the Court stressed: "An appellate

court reviewing the denial of the defendant's claim of immunity *need not consider the correctness of the plaintiff's version of the facts*, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (plurality opinion) (emphasis added).

In cases where the qualified immunity inquiry strays beyond a purely legal question, however, the Court has refused to entertain immediate appeals. In *Johnson v. Jones*, 515 U.S. 304 (1995), the Court held that defendants asserting qualified immunity may not appeal "a *fact*-related dispute"—sufficiency of the evidence—under the collateral order doctrine. *Id.* at 307. The Court later explained that *Johnson*'s holding is rooted in separability concerns: "[I]f what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim . . . ." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996).

This type of determination—"whether the evidence could support a finding that particular conduct occurred"—is exactly what California's anti-SLAPP statute requires. To assess the "probability that the plaintiff will prevail," Cal. Civ. Proc. Code § 425.16(b)(1), the reviewing court must assess the strength of the evidence supporting the plaintiff's allegations. The statute clearly contemplates such a fact-bound inquiry: "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." § 425.16(b)(2). Indeed, in this very case the panel characterized the anti-SLAPP inquiry as "inherently fact-

intensive." *Makaeff*, 715 F.3d at 271. Engaging in this exercise under the collateral order doctrine is plainly at odds with *Johnson*.

The Court recognized in *Johnson* that denying immediate appeals of qualified immunity decisions "threatens to undercut the very policy (protecting public officials from lawsuits)" that would ordinarily justify immediate appellate review. *Johnson*, 515 U.S. at 317. But the Court concluded that when the immunity issues are not distinct from the merits, "precedent, fidelity to statute, and underlying policies" do not permit interlocutory appeals. *Id.* Thus, even if California's anti-SLAPP statute confers a right not to stand trial, that fact alone is not enough to satisfy the collateral order doctrine's requirements.

*        *        *

Our circuit's anti-SLAPP jurisprudence runs afoul of two separate lines of Supreme Court precedent, both of which involve matters fundamental to the operation of the federal courts. We should have taken this case en banc to bring our case law in line with *Shady Grove* and the Supreme Court's decisions establishing the proper scope of the collateral order doctrine.