# EXHIBIT "A"

FILED: NEW YORK COUNTY CLERK 01/31/2014
NYSCEF DOC. NO. 58

INDEX NO. 451463/2013
RECEIVED NYSCEF: 01/31/2014

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: _____CYNTHIA S. KERN_____
                        Justice
                        J.S.C.

PART _____

Index Number : 451463/2013
PEOPLE OF THE STATE OF
vs.
TRUMP ENTREPRENEUR
SEQUENCE NUMBER : 002
DISMISS

INDEX NO. _____
MOTION DATE _____
MOTION SEQ. NO. _____

The following papers, numbered 1 to _____, were read on this motion to/for _____

| | |
|---|---|
| Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s)._____ |
| Answering Affidavits — Exhibits _____ | No(s)._____ |
| Replying Affidavits _____ | No(s)._____ |

Upon the foregoing papers, it is ordered that this motion is

is decided in accordance with the annexed decision.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S): _____

Dated: 1/30/14                                         _____, J.S.C.
                                                       CYNTHIA S. KERN
                                                                J.S.C.

1. CHECK ONE: ..................................... ☐ CASE DISPOSED         ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ................MOTION IS: ☐ GRANTED  ☐ DENIED   ☐ GRANTED IN PART   ☐ OTHER
3. CHECK IF APPROPRIATE: ................ ☐ SETTLE ORDER                    ☐ SUBMIT ORDER
                                          ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: Part 55
-----------------------------------------------------------------x
In the Matter of the Application of

THE PEOPLE OF THE STATE OF NEW YORK, by
ERIC T. SCHNEIDERMAN, Attorney General of the
State of New York,

                       Petitioner,           Index No. 451463/13

                                            **DECISION/ORDER**

               -against-

THE TRUMP ENTREPRENEUR INITIATIVE LLC
f/k/a TRUMP UNIVERSITY LLC, DJT
ENTREPRENEUR MEMBER LLC f/k/a DJT
UNIVERSITY MEMBER LLC, DJT ENTREPRENEUR
MANAGING MEMBER LLC f/k/a DJT UNIVERSITY
MANAGING MEMBER LLC, THE TRUMP
ORGANIZATION, INC., TRUMP ORGANIZATION LLC,
DONALD J. TRUMP and MICHAEL SEXTON,

                       Respondents.
-----------------------------------------------------------------x
**HON. CYNTHIA S. KERN, J.S.C.**

Recitation, as required by CPLR 2219(a), of the papers considered in the review of this motion for :_____

| Papers | Numbered |
|---|---|
| Notice of Petition and Petition Annexed................................. | 1 |
| Answering Affidavits................................................................ | |
| Notion of Motion and Affidavits Annexed................................. | 2,3 |
| Affidavits in Opposition to Motion........................................... | 4 |
| Replying Affidavits................................................................... | 5,6 |
| Exhibits..................................................................................... | 7 |

      Petitioner The People of the State of New York, by Eric T. Schneiderman, Attorney General of the State of New York ("petitioner") commenced the instant special proceeding pursuant to Executive Law ("Exec. Law") § 63(12) seeking an Order (1) enjoining respondents

from violating Exec. Law § 63(12), General Business Law ("GBL") §§ 349 and 350, Education Law ("Educ. Law") §§ 224 and 5001-5010 and 16 C.F.R. § 429 and from engaging in specific fraudulent, deceptive and illegal acts; (2) directing respondents to provide petitioner the name and address of each former customer of respondents and the amount of money received from each such former customer; (3) directing respondents to make full monetary restitution and pay damages to all injured persons or entities; (4) directing respondents to produce an accounting of profits and to disgorge all profits resulting from the alleged fraudulent and illegal practices; (5) directing respondents to pay a civil penalty to the State of New York of up to $5,000.00 for each violation of GBL Article 22-A pursuant to GBL § 350-d; and (6) awarding petitioner additional costs of $2,000.00 against each respondent pursuant to CPLR § 8303(a)(6). Respondents The Trump Entrepreneur Initiative LLC f/k/a Trump University LLC, DJT Entrepreneur Member LLC, DJT Entrepreneur Managing Member LLC, The Trump Organization, Inc., Trump Organization LLC and Donald J. Trump (collectively hereinafter referred to as the "Trump Respondents") move for an Order (1) pursuant to CPLR §§ 3211 dismissing the petition; or (2) pursuant to CPLR § 404(a) granting the Trump Respondents leave to serve and file an answer and opposition to the petition. Respondent Michael Sexton ("Mr. Sexton") also moves for relief identical to that of the Trump Respondents. The above motions are consolidated for disposition. For the reasons set forth below, the Trump Respondents and Mr. Sexton's (hereinafter referred to as "respondents") motions are granted in part and denied in part.

The relevant facts are as follows. In 2004, respondent Mr. Sexton, an entrepreneur, approached respondent Donald J. Trump ("Mr. Trump"), a real estate developer, with the concept of developing a company that would primarily use technology to provide an instructional curriculum to small business owners and individual entrepreneurs across a broad range of

2

business subjects such as marketing, finance, sales, entrepreneurship and real estate under the "Trump" name and brand. On October 25, 2004, "Trump University LLC" ("Trump University"), a New York limited liability company was formed with the New York Department of State, Division of Corporations, with the stated purpose of providing "education-related and educational products and services to individuals and businesses."

Throughout its operation, Trump University allegedly offered instruction and training in various business topics across a variety of platforms, including on-line courses, in-person seminars and one-on-one mentorships. On May 27, 2005, Trump University received a letter from the New York State Education Department ("SED") concerning its use of the word "University" in its name and the fact that it was not licensed by the SED. SED informed Trump University that it would not be subject to the licensure requirement if it maintained its place of business and its corporate organizations outside New York State and if it did not run live programs or other live training in New York State. Trump University responded that it would create a new LLC in Delaware, would merge the New York LLC into the Delaware entity and would refrain from holding live programs in New York State.

Petitioner alleges that Trump University continued its operations and failed to abide by the conditions by failing to merge the New York and Delaware LLCs, continuing to operate its business out of its office in New York City and continuing to hold live programs in New York. On March 30, 2010, the SED, allegedly in response to a Trump University student's complaint, sent Trump University a letter demanding that it cease using the word "University" in its name. On May 21, 2010, Trump University filed a certificate of amendment to its Articles of Organization formally changing its name to Trump Entrepreneur Initiative LLC ("TEI"). Additionally, respondents allege that as of May 31, 2010, TEI ceased its operations, allegedly due

3

to reduced market demand.

In early 2011, shortly after assuming office, Attorney General Eric T. Schneiderman (the "AG") commenced an investigation into for-profit universities and trade schools operating in New York State. On or about May 17, 2011, the AG issued TEI a subpoena *duces tecum* (the "Subpoena") seeking documents and information pertaining to its business practices. Over the next two years, TEI and the respondents allegedly complied with the Subpoena by turning over hundreds of thousands of pages of documents and making certain employees of TEI available for deposition. On August 24, 2013, petitioner commenced the instant special proceeding against the Trump Respondents and Mr. Sexton seeking, *inter alia*, an injunction and damages. Although the suit was filed on August 24, 2013, respondents previously agreed to toll the statute of limitations, effective May 31, 2013.

The court first turns to those portions of respondents' motions to dismiss the petition on the ground that it is time-barred. "[A]n action to recover upon a liability, penalty or forfeiture created or imposed by statute" must be commenced within three years. CPLR § 214(2). However, "CPLR 214(2) does not automatically apply to all causes of action in which a statutory remedy is sought, but only where liability 'would not exist but for a statute.'" *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 208 (2001). This means that CPLR § 214(2) "does not apply to liabilities existing at common law which have been recognized or implemented by statute." *Aetna Life & Cas. Co. v. Nelson*, 67 N.Y.2d 169, 174 (1986). Rather, in such cases, "the Statute of Limitations for the statutory claim is that for the common-law cause of action which the statute codified or implemented." *Gaidon*, 96 N.Y.2d at 208. To determine what statute of limitations applies, a court must "look to the essence of plaintiff's claim and not to the form in which it is pleaded." *State of New York v. Cortelle Corp.*, 38 N.Y.2d 83, 86

4

(1975).

As an initial matter, those portions of respondents' motions seeking to dismiss petitioner's general fraud claims pursuant to Exec. Law § 63(12) on the ground that such claims are time-barred are denied as such claims are timely as they are subject to the six-year statute of limitations for common-law fraud. Exec. Law § 63(12) empowers the Attorney General to seek permanent injunctive relief, restitution, disgorgement and damages whenever a person or business engages in "repeated or persistent fraud or illegality." Exec. Law § 63(12). "Executive Law § 63(12)...does not create independent claims, but merely authorizes the Attorney General to seek injunctive and other relief on notice prescribed by the statute in cases involving persistent fraud or illegality." *People v. Charles Schwab & Co., Inc.*, 109 A.D.3d 445, 449 (1st Dept 2013). "As used in this statute, the term 'fraud' includes 'any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions...[and] applies to fraudulent conduct actionable at common law, as well as to conduct for which liability arises solely from statute." *People v. Pharmacia Corp.*, 27 Misc.3d 368, 373 (Sup. Ct. Albany Cty. 2010), citing *State of New York v. Cortelle Corp.*, 38 N.Y.2d 83, 87 (1975). "While this provision may in part expand the definition of fraud so as to create a new liability in some instances, it also incorporates already existing standards applied to fraudulent behavior always recognized as such." *Cortelle Corp.*, 38 N.Y.2d at 87. Thus, if such common-law fraud is alleged in a complaint brought pursuant to Exec. Law § 63(12), then such fraud claims are subject to common-law fraud's six-year statute of limitations. *Id.*

In the instant proceeding, as the petition, brought pursuant to Exec. Law § 63(12), sufficiently alleges a claim for common-law fraud, petitioner's general fraud claims are subject to a six-year statute of limitations. To sufficiently plead a claim for common-law fraud, a petitioner

5

must allege misrepresentation of a material fact, falsity, scienter, reliance and injury. *See Barclay v. Barclay Arms Associates*, 74 N.Y.2d 644 (1989). A showing of gross negligence or reckless disregard of the truth is sufficient to draw the inference that a fraud was perpetrated. *See DaPuzzo v. Reznick Fedder & Silverman*, 14 A.D.3d 302 (1st Dept 2005). Here, the petition alleges that respondents engaged in deliberate, intentional fraudulent conduct that was designed to deceive consumers, that respondents knew or should have known that they were misrepresenting the nature of Trump University/TEI and the services provided and that the students relied on and suffered injury as a result of respondents' fraudulent conduct. Specifically, the petition alleges that "[t]hrough their deceptive and unlawful practices, respondents intentionally misled over 5000 individuals nationwide, including over 600 New Yorkers, into paying as much as $35,000 each to participate in live seminars and mentorship programs with the promise of learning Donald Trump's real estate investing techniques." The petition further alleges that respondents "repeatedly deceived students into thinking that they were attending a legally chartered 'university'" and that respondents intentionally misrepresented, through advertisements and oral misrepresentations, that prospective students would be taught by successful real estate "experts" who were "handpicked" by Mr. Trump when, as alleged by petitioner, not a single instructor was actually handpicked by Mr. Trump. As the petition sufficiently alleges conduct which, if proved, is a now classic wrong on a common-law theory of fraud, then respondents' alleged actions are and were wrongful prior to and independent of the Executive Law and are subject to a six-year statute of limitations.

Respondents' reliance on cases such as *State of New York v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301 (1st Dept 2007), *People v. City Model & Talent Dev.*, 29 Misc.3d 1205 (Sup. Ct. Suffolk Cty. 2010) and *Gaidon* for the proposition that petitioner's Exec. Law § 63(12) fraud

claim is subject to a three-year statute of limitations is misplaced pursuant to this court's explicit finding that petitioner has sufficiently pled allegations of common-law fraud, which is undisputedly subject to a six-year statute of limitations. The above cases are distinguishable from the instant proceeding as the allegations put forth by the plaintiff/petitioner in those cases were found not to amount to common-law fraud. *See Daicel*, 42 A.D.3d at 301(finding that because the claims in the complaint "rely on allegations of conduct made illegal by statute, *and do not even allege all the elements of common-law fraud,*...they are covered by CPLR § 214(2)")(emphasis added); *see also City Model*, 29 Misc.3d at 1205("[w]hile the six-year limitation period would apply if the conduct alleged were sufficient to constitute common-law fraud, here the petitioner does not plead the elements of fraud but only statutory violations which do not rise to the level of fraud.").

Those portions of respondents' motions which seek to dismiss petitioner's claims brought pursuant to GBL §§ 349 and 350 on the ground that such claims are time-barred are granted only as to those claims which accrued prior to May 31, 2010 as such claims are subject to CPLR § 214's three-year statute of limitations and are therefore time-barred. It is well-settled that claims brought pursuant to GBL § 349 are subject to a three-year statute of limitations. *See Morelli v. Weider Nutrition Group*, 275 A.D.2d 607, 608 (1st Dept 2000)("[c]laims pursuant to [GBL] § 349 are governed by the three-year limitation period set forth in CPLR 214(2)"); *see also Gaidon*, 96 N.Y.2d at 209 (in determining that plaintiff's GBL § 349 claims were subject to a three-year statute of limitations, the court held that "[w]hile [GBL] § 349 may cover conduct 'akin' to common-law fraud, it encompasses a far greater range of claims that were never legally cognizable before its enactment.") Additionally, GBL § 350 is subject to CPLR § 214's three-year statute of limitations. GBL § 350 prohibits "false advertising in the conduct of any business,

trade or commerce or in the furnishing of any service in this state..." GBL § 350. "The standard for recovery under GBL § 350, while specific to false advertising, is otherwise identical to section 349." *Kelly v. Legacy Benefits Corp.*, 34 Misc.3d 1242 (Sup. Ct. N.Y. Cty. 2012), citing *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314 (2002). Thus, as GBL § 350 encompasses claims that were not legally cognizable before its enactment, claims pursuant to such statute are subject to a three-year statute of limitations.

Petitioner's assertion that its GBL § 349 claim is subject to a six-year statute of limitations because respondents' conduct constituted "continuing violations" which tolled the limitations period is without merit. The "'continuing violation' doctrine...is usually employed where there is a series of continuing wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." *Selkirk v. State of New York*, 249 A.D.2d 818, 819 (3d Dept 1998). However, "[t]he continuing violation doctrine may not be based on the continuing effects of earlier unlawful conduct." *Day v. Moscow*, 769 F.Supp. 472, 477 (S.D.N.Y. 1991). Here, petitioner alleges wrongs which were independent, discrete events that occurred on particular, definitive dates. As a result, the "continuing violation" doctrine may not be applied in this case.

Additionally, petitioner's assertion that its GBL § 349 claim is timely even for those claims which accrued prior to May 31, 2010, on the ground that actions brought by the AG do not accrue until the AG subjectively believes that a person, firm, corporation or associations has or is about to violate the statute is without basis. Pursuant to GBL § 349(b), the Attorney General has the authority to bring an action "to enjoin such unlawful acts or practices and to obtain restitution of any moneys or property obtained directly or indirectly by any such unlawful acts or practices." "The statutory period of limitations is computed from ...the time of the

8

commission of the fraudulent practices, not from the time they were discovered by the Attorney-General." *People v. Minuse*, 273 A.D.2d 457, 458 (1st Dept 1948). Petitioner has not offered any evidence to support its contention that the GBL § 349 cause of action accrues at a later date and has not attempted to distinguish the line of cases that hold that GBL § 349 claims are subject to a three-year statute of limitations from the date the fraud occurred. *See People v. Katz*, 16 Misc.3d 1104 (Sup. Ct. N.Y. Cty. 2007)("[t]he limitations period for claims brought under GBL § 349 is three years from the time of the deceptive act or behavior"), citing *Gaidon*, 96 N.Y.2d 201 and *Morelli*, 275 A.D.2d 607.

Those portions of respondents' motions which seek to dismiss petitioner's claim brought pursuant to Educ. Law § 224 on the ground that it is time-barred are granted in their entirety as such claim is subject to the three-year statute of limitations pursuant to CPLR § 214. Educ. Law § 224 prohibits the use of the term "University" in the name of an institution that is not licensed as such. As such cause of action is clearly based on a statutory prohibition which would not exist but for the Educ. Law statute, such cause of action is subject to the three year statute of limitations. Further, as it is undisputed that TEI ceased using the term "University" in its name prior to May 31, 2010 and petitioner has not alleged the use of the term "University" by TEI anytime after May 31, 2010, petitioner's Educ. Law § 224 claim must be dismissed in its entirety as untimely.

Those portions of respondents' motions which seek to dismiss petitioner's claims brought pursuant to Educ. Law Article 101 (§§ 5000-5010) on the ground that they are time-barred are granted only as to those claims which accrued prior to May 31, 2010 as such claims are subject to the three year statute of limitations pursuant to CPLR § 214. Educ. Law Article 101 is a comprehensive statutory scheme for licensing and regulating for-profit proprietary schools.

9

Specifically, petitioner alleges that respondents unlawfully operated an unlicensed school and otherwise failed to comply with the statutory prohibitions of Article 101. As such causes of action are clearly based on statutory prohibitions which would not exist but for the Educ. Law statute, they are subject to the three-year statute of limitations and are time-barred if they accrued prior to May 31, 2010. To the extent petitioner seeks a summary determination on its claims pursuant to Educ. Law §§ 5001-5010 on the ground that it is undisputed TEI was unlicensed, such request is denied as there exists an issue of fact as to whether TEI was operating in New York State on or after May 31, 2010.

Those portions of respondents' motions which seek to dismiss petitioner's claims brought pursuant to 16 C.F.R. § 429 on the ground that they are time-barred are granted only as to those claims which accrued prior to May 31, 2010 as such claims are subject to the three-year statute of limitations prescribed in CPLR § 214. 16 C.F.R. § 429 prohibits any seller engaged in a "door-to-door sale" to "fail or refuse to honor any valid notice of cancellation by a buyer...within 10 business days after the receipt of such notice." 16 C.F.R. § 429.1. As a seller's obligations pursuant to that statute exist solely by virtue of this regulation and did not exist at common law, such claim is subject to a three-year statute of limitations pursuant to CPLR § 214.

The court next turns to those portions of respondents' motions which seek to dismiss petitioner's Educ. Law §§ 5001-5010 claims on the grounds that petitioner lacks standing to maintain such claim against them and that petitioner has failed to exhaust its administrative remedies prior to commencing this proceeding. As an initial matter, this court finds that petitioner has standing to assert a claim against respondents pursuant to Educ. Law §§ 5001-5010. When dealing with an unlicensed institution such as TEI, the Attorney General has independent authority to bring such an action pursuant to the Educ. Law "in his or her own

10

capacity, or at the request of the commissioner...in any court of competent jurisdiction to recover a fine or otherwise enforce any provision of this article." Educ. Law § 5003(5). Here, SED referred the matter to petitioner in 2011 "for further investigation and appropriate action in accordance with Section 5003(5) of the New York State Education Law" after SED made a determination that "there exist reasonable grounds that Trump University LLC, also known as Trump Institute and Trump Entrepreneur Initiative is operating an unlicensed proprietary school in violation of Article 101 of the Education Law." Therefore, petitioner has standing to bring such claims.

Additionally, this court finds that petitioner did not fail to exhaust any administrative remedies prior to commencing this proceeding. Although the Educ. Law prescribes certain disciplinary actions and procedures that must be taken against a proprietary school that is found to violate the Educ. Law, which involves a hearing, the opportunity to take part in such process only applies to licensed proprietary schools and not unlicensed schools such as TEI. Pursuant to Educ. Law §§ 5003(2) & (3), which governs disciplinary proceedings,

> Disciplinary action. a. The commissioner for good cause, after affording a school an opportunity for a hearing, may take disciplinary action as hereinafter provided against any school *authorized to operate under this article*.

Educ. Law § 5003(1)(a)(emphasis added). Thus, such disciplinary process does not apply to TEI and does not obligate petitioner to afford respondents an opportunity for a hearing. Therefore, those portions of respondents' motions to dismiss petitioner's Educ. Law §§ 5001-5010 claims on the grounds that petitioner lacks standing to bring such claims and that petitioner failed to exhaust its administrative remedies prior to commencing the instant proceeding are denied.

Finally, the court turns to those portions of respondents' motions which seek to dismiss petitioner's request for an injunction enjoining respondents from violating Exec. Law § 63(12), GBL §§ 349 and 350, Educ. Law §§ 224 and 5001-5010 and 16 C.F.R. § 429 and from engaging in the fraudulent, deceptive and illegal acts and practices alleged in the petition. In proceedings brought pursuant to Exec. Law § 63(12) and GBL § 349, the court has broad authority to grant injunctive relief. *See State of New York v. Princess Prestige Co., Inc.*, 42 N.Y.2d 104 (1977); *see also People of the State of New York v. Empyre Inground Pools Inc.*, 227 A.D.2d 731 (3d Dept 1996). Here, the court declines to dismiss petitioner's request for an injunction at this stage of the proceeding. Respondents' assertion that petitioner's request for injunctive relief must be dismissed as moot because TEI ceased its operations in 2010 and is no longer training or taking on new students is without merit. The fact that respondents have voluntarily ceased its alleged deceptive practices does not obviate the need for injunctive relief as neither petitioner nor the court has any assurance that the alleged fraudulent and deceptive practices will not be renewed at a later date. *See People v. General Elec. Co.*, 302 A.D.2d 314, 316 (1st Dept 2003)("Even though GE voluntarily ceased its deceptive practices, the IAS court in the context of this consumer protection proceeding nonetheless retained the power to grant injunctive relief.") Additionally, petitioner has alleged that Mr. Trump has recently stated in television interviews that he intends to reopen TEI "in a heavy way" and that it only ceased its operations temporarily. Thus, respondents' motion to dismiss petitioner's request for an injunction prohibiting respondents from violating the above statutes or engaging in fraudulent or deceptive acts is denied.

Accordingly, the petition and respondents' motions are resolved as follows: (1) those of petitioner's claims brought pursuant to GBL §§ 349 and 350, Educ. Law §§ 5001-5010 and 16 C.F.R. § 429 that accrued before May 31, 2010 are dismissed as time-barred; (2) those of

12

petitioner's claims brought pursuant to GBL §§ 349 and 350, Educ. Law §§ 5001-5010 and 16 C.F.R. § 429 that accrued on or after May 31, 2010 are timely and remain as claims in this proceeding; (3) those of petitioner's claims for fraud brought pursuant to Exec. Law § 63(12) are timely and remain as claims in this proceeding; (3) petitioner's Educ. Law § 224 claim is dismissed in its entirety as untimely; (4) respondents' motion to dismiss petitioner's request for an injunction is denied; and (5) respondents are directed to answer the remaining claims in the petition within thirty days of the date of this decision. This constitutes the decision and order of the court.

Dated: 1/30/14

Enter: _____
J.S.C.

CYNTHIA S. KERN
J.S.C.