David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535
Email:  dks@yslaw.com

Jill A. Martin (CSB 245626)
c/o Trump National Golf Club Los Angeles
One Trump National Drive
Rancho Palos Verdes, California 90275
Telephone:  (310) 303-3225
Facsimile:   (310) 265-5522
Email:   jmartin@trumpnational.com

Attorneys for Defendants,
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>          Defendants.<br><br>─────────────────────<br>AND ALL RELATED CROSS-ACTIONS. | Case No. 10cv0940GPC (WVG)<br><br>CLASS ACTION<br><br>**DEFENDANT/ COUNTER-CLAIMANT TRUMP UNIVERSITY'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF/ COUNTER-DEFENDANT TARLA MAKAEFF'S MOTION TO STRIKE TRUMP UNIVERSITY'S COUNTERCLAIM PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §425.16**<br>**[Conditionally Filed Under Seal]** |

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................1

II.  STATEMENT OF FACTS .................................................................................2

   A.   Makaeff's Prior Admissions That Trump University Did Not Commit the Specific Crimes ..................................................................................3

   B.   Makaeff's New Allegations ....................................................................4

   C.   Makaeff's Contradictory Explanations Are Not Credible ...................5

   D.   Makaeff Alleged Specific Crimes to Get the Bank to React ...............9

III. ARGUMENT.......................................................................................................9

   A.   Standard for Showing Actual Malice ...................................................9

   B.   Makaeff Made Her Defamatory Statements with Actual Malice .......11

      1.   Makaeff's allegations are not protected because they were fabricated statements she knew were false. .....................11

      2.   Makaeff's contradictory statements provide further evidence of actual malice..........................................................12

      3.   Trump University has presented ample evidence of Makaeff's anger, hostility and motive for publishing falsehoods. ..................................................................................13

      4.   Failure to investigate...................................................................15

      5.   Makaeff's justifications for her false allegations do not excuse her conduct.....................................................................17

         a.   Not a lawyer  ...................................................................17

         b.   Comingling of names  ....................................................21

         c.   The NY AG Action .........................................................22

IV.  CONCLUSION .................................................................................................23

TRUMP UNIVERSITY'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE ITS COUNTERCLAIM

# TABLE OF AUTHORITIES

**Page**

**Cases**

Alioto v. Cowles Comm., Inc.,
    430 F.Supp. 1363 (N.D. Cal. 1977) ...............................................................10

Annette F. v. Sharon S.,
    119 Cal. App. 4th 1146 (2004) .....................................................................9

Bose Corp. v. Consumers Union of United States, Inc.,
    466 U.S. 485 (1984).....................................................................................19

Chaplinsky v. New Hampshire,
    315 U.S. 568 (1942).......................................................................................1

Christian Research Inst. v. Alnor,
    148 Cal. App. 4th 71 (2007) ...............................................................11, 13

Garrison v. Louisiana,
    379 U.S. 64 (1964).........................................................................................1

Goldwater v. Ginzberg,
    414 F.2d 324 (2d Cir. 1969)...............................................................1, 10, 11

Harte-Hanks Commc'ns, Inc. v. Connaughton,
    491 U.S. 657 (1989).......................................................................10, 13, 15, 16

New York Times Co. v. Sullivan,
    376 U.S. 254 (1964).......................................................................................9

Nguyen-Lam v. Cao,
    171 Cal. App. 4th 858 (2009) ...................................................................11, 12

Reader's Digest Ass. v. Superior Court,
    37 Cal.3d 244 (1984) ...................................................................................10

Roe v. Doe,
    2009 WL 1883752 (N.D. Cal. June 30, 2009) ...........................................9, 18

St. Amant v. Thompson,
    390 U.S. 727 (1968).................................................................................10, 15

Widener v. Pacific Gas & Elec. Co.,
    75 Cal. App. 3d 415 (1977) (overruled on other grounds in
    McCoy v. Hearst Corp.,
    42 Cal. 3d 835 (1986) ...........................................................................10, 13, 15

## TABLE OF AUTHORITIES (cont.)

**Page**

**Statutes**

18 U.S.C. §1028(a)(7)............................................................................................20

Cal. Pen. Code §520.5(a) .....................................................................................20

TRUMP UNIVERSITY'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE ITS COUNTERCLAIM

1

## I.   __INTRODUCTION__

2

      A "knowingly false statement made with reckless disregard of the truth, does

3

not enjoy constitutional protection."  *Goldwater v. Ginzberg,* 414 F.2d 324, 336 (2d

4

Cir. 1969) (citing *Garrison v. Louisiana,* 379 U.S. 64, 75 (1964)).

5

                For the use of the known lie as a tool is at once at odds with

6

                the premises of democratic government and with the orderly

7

                manner in which economic, social, or political change is to

                be effected.  Calculated falsehood falls into that class of

8

                utterances which 'are no essential part of any exposition of

9

                ideas, and are of such slight social value as a step to truth

                that any benefit that may be derived from them is clearly

10

                outweighed by the social interest in order and morality.

11

*Goldwater*, 414 F.2d at 336 (2d Cir. 1969) (quoting *Chaplinsky v. New Hampshire*,

12

315 U.S. 568, 572 (1942)).

13

      Beginning in the summer of 2009, in an effort to "do whatever it takes" to get

14

the money she paid to Trump University back and prove that "the Davids [could] win

15

over Goliath," Tarla Makaeff published **known lies** accusing Trump University of

16

criminal acts in letters to her bank and the Better Business Bureau ("BBB").  Such

17

known lies included that Trump University engaged in:  (1) "grand larceny"; (2)

18

"identity theft"; and (3) the "unsolicited taking of personal credit and trickery into

19

[sic] opening credit cards without approval" (hereinafter referred to as the "Specific

20

Crimes").[1]  Despite publishing such known falsehoods, Makaeff now attempts to

21

22

_____

[1] Although Trump University has alleged that Makaeff made additional defamatory

23

statements, for purposes of this motion, Trump University focuses on the three

24

statements this Court has already held are libelous per se and that Trump University
made an adequate showing that such statements are false.  (ECF No. 24.)  Despite the

25

fact that this Court has already held that Trump University has met its burden with

26

respect to all elements of its defamation claim aside from a showing of actual malice,
Makaeff improperly reargues other elements of the defamation claim.  *See, e.g.,*

27

Plaintiff/ Counter Defendant Makaeff's Supplemental Brief Regarding Special Motion

28

to Strike Defendant/Counterclaimant Trump University's Counterclaim Pursuant to
California Code of Civil Procedure §425.16 ("Makaeff Supp. Brief") at p.1, n. 1

escape liability with yet another known lie by professing to this Court that she "reasonably believes" her statements to be true.  Her "reasonable belief" however, is based on nothing more than a nonsensical eleventh hour explanation that contradicts the evidence and her previous testimony.  As explained in detail below, because Makaeff fabricated her professions of criminal conduct, Trump University has met its burden of demonstrating a prima facie showing of actual malice.[2]

Accordingly, Makaeff's Special Motion to Strike must be dismissed.

## II.   STATEMENT OF FACTS[3]

In hopes of convincing Bank of America to refund the money she spent on purchases from Trump University and Profit Publishing Group ("Profit"), Makaeff, a self-proclaimed "writer" accused Trump University of committing "grand larceny", "identity theft", and "unsolicited taking of personal credit and trickery into opening

_____

(improperly arguing the element of damages); p. 11, n. 7 (improperly arguing the element of falsity).  As instructed by the Ninth Circuit and this Court, Trump University only addresses the malice issue herein.  As this Court has asked for supplemental briefing, Trump University will also not reargue the points made in its previous briefing and addressed by the Ninth Circuit, although addressed at length by Makaeff. (*See* Makaeff Supp. Brief at pp. 7-10.) Instead, Trump University hereby incorporates and references its Opposition to Plaintiff's Motion to Strike Defendant's Counterclaim ("Opposition"), ECF No. 15.

[2] Makaeff's cherry-picked quotes from the Ninth Circuit's opinion denying Trump University's request for rehearing en banc regarding Trump University's motives in suing Makaeff are nothing more than an effort to distract the Court from the issue at hand—whether Makaeff acted with malice.  Trump University's motive in suing Makaeff was not designed to "overwhelm Makaeff" or make it more difficult for her to pursue her claims, but simply to seek redress for the damage caused by her defamatory statements.  Nevertheless, even if Trump University's motive was as characterized by the Ninth Circuit, its motive has no bearing on the issue, as the only relevant question is whether the lawsuit has merit.

[3] In the interest of judicial economy, Trump University incorporates and references herein the Statement of Facts as provided in its Opposition.  Trump University supplements the Opposition with the additional background below.

credit cards without approval."  (Declaration of Rachel L. Jensen in Support of Plaintiff/Counter Defendant Makaeff's Supplemental Brief Regarding Special Motion to Strike Defendant/Counterclaimant Trump University's Counterclaim Pursuant to California Code of Civil Procedure §425.16, ECF No. 294-1 ("Jensen Decl."), Ex. 1 at p. 4 (ECF No. 294-2).)  Makaeff leveled her accusations against both Trump University and Profit as follows:

> This type of fraudulent sales techniques are governed by state and federal protection consumers such as me against this outright Fraud, **Grand Larceny, and Identity Theft by Trump University/Profit Publishing Group.**
>
> *          *          *
>
> I was tricked into signing up for this with my information was taken under high pressure sales tactics clearly in violation of State and Federal Statutes protecting consumers from high pressure sales tactics, bait and switch, **unsolicited taking of personal credit and trickery into opening credit cards without MY approval or understanding.**

(*Id.* at pp. 4-5 (emphasis added).)

### A.     Makaeff's Prior Admissions That Trump University Did Not Commit the Specific Crimes.

Despite specifically naming Trump University as a perpetrator of the Specific Crimes, in July 2010, Makaeff admitted in a sworn statement to this Court that Trump University **did not** commit the Specific Crimes:

> My letter to Bank of America was written to dispute not only debit charges to Trump University in the amount of $5,100, but also a November 3, 2008 debit of $4,995 to Profit Publishing Group – part of the Childers Financial Group, run by John V. ("JJ") Childers, one of Trump University's endorsed attorneys.  **My statements regarding 'grand larceny', 'identity theft', and 'unsolicited taking of personal credit and trickery into opening credit cards without MY approval or understanding', were not in relation to Trump University**, but regarding Profit Publishing Group/Childers Financial Group/JJ Childers.

(ECF No. 17-2 at p. 5) (emphasis added).

Makaeff has also admitted at deposition that Trump University never committed identity theft, or engaged in "unsolicited taking of personal credit and trickery into opening credit cards without [her] approval or understanding." (Declaration of Jill A. Martin in Support of Defendant/Counterclaimant Trump University's Supplemental Opposition to Plaintiff/Counter-Defendant Makaeff's Supplemental Brief Regarding Special Motion to Strike Defendant/Counterclaimant Trump University's Counterclaim Pursuant to California Code of Civil Procedure §425.16 ("Martin Decl."), Ex. 2 - Makaeff Depo. Vol. III at 598:12-599:1 [stating that her claims of identity theft were with respect to Trump Institute]; Ex. 3 - Vol. IV at 775:16-20 ████████████████████████████████████████████ ████████████████████████████

Instead, Makaeff testified that Prosper (not Trump University) committed the Specific Crimes based on a situation where she was on the telephone with Prosper discussing enrollment for a coaching program to supplement her Trump University education. (ECF No. 17-2 at p. 5.) While on the telephone with Prosper, when she informed it that she did not have the money for the coaching program, Prosper "hot flashed" her to HSBC bank, who informed her that she was preapproved for a credit card. (Martin Decl., Ex. 2 – Makaeff Depo. Vol. III at 601:21-602:6.) HSBC then opened the credit card and charged the amount for the Prosper coaching program to the card, **with** Makaeff's authorization. (Martin Decl., Ex. 3 - Makaeff Depo. Vol. IV at 774:3-8; 762:7-20.) During the call, Makaeff did not object to HSBC opening the credit card or using it to pay for the Prosper courses. (*Id.* - Makaeff Depo. Vol. IV at 758:11-1; 760:23-761:11.)

**B.    Makaeff's New Allegations.**

Now, three and a half years later, although she previously admitted that Trump University did not commit the Specific Crimes, Makaeff has concocted a new story -- this time professing that she believed Trump University committed the Specific Crimes. She now alleges that she believed Trump University committed "grand

larceny" when it allegedly didn't fulfill its contractual promises.  (Makaeff Supp.
Brief at 18).  She also, for the first time, bases her allegations of "identity theft" and
"unsolicited taking of personal credit and trickery into opening credit cards without
MY approval or understanding" on not just the incident with Prosper (as she had
previously informed the Court), but now on an internet posting whereby an unknown
woman stated that she believed Trump University was using her name on a
testimonial that was not true[4]; and that Trump University used the financial
information she <u>consented</u> to give it for the purpose of determining whether she could
afford other programs, rather than its stated purpose of using it to determine whether
she could afford to invest in real estate.  (*Id.* at 20-21.)   Perhaps knowing that these
explanations are not credible, she also tries to justify her allegations by professing that
she was confused about the relationship between various entities and therefore
referred to them as one and the same.  (*Id.* at 12.)

### C.     Makaeff's Contradictory Explanations Are Not Credible.

Although she now professes her belief in the truth of her allegations of the
Specific Crimes, Makaeff's alleged basis for making her statements are not credible.
For example, although professing that her mission in posting her complaints on online
consumer complaint websites was to warn other consumers, Makaeff cannot recall
even one instance where she warned other consumers that Trump University
committed the Specific Crimes.  (Martin Decl., Ex. 3 - Makaeff Depo. Vol. IV at
830:18-25.)  **Yet, Makaeff admits that if Trump University had in fact committed
the Specific Crimes it would have been important for her to have warned other
consumers**.  (*Id.* – Makaeff Depo. Vol. IV at 831:24-832:20.)

Additionally, Makaeff admits that she never reported the Specific Crimes to any
government authority or otherwise took any action to address the crimes.  For

---

[4] Although Makaeff argues that the alleged internet posting by a consumer "said
Trump University stole her identity," such a claim is not consistent with her testimony
as she did not testify that the posting used the words "identity theft."

example, despite contacting the New York Attorney General ("NY AG"), the Federal Trade Commission, and the Federal Bureau of Investigation, Makaeff cannot recall accusing Trump University of the Specific Crimes to any of them.  (Martin Decl., Ex. 3 - Makaeff Depo. Vol. IV at 826:20-827:8 ████████████████████████ ████████████████; 839:12-840:9 ████████████████████████████ ████████████████████████████████████████████ 841:21-842:6 ████████████████████████████████████████████████████████.)  Her correspondence with the BBB, Manhattan District Attorney, and NY AG further reflect that Makaeff never alleged that Trump University committed the Specific Crimes.  (Jensen Decl., Ex. 2 [BBB correspondence]; Martin Decl., Ex. 8 [correspondence with Manhattan District Attorney]; Ex. 9 [correspondence to NY AG].)  Additionally, Makaeff took no action to ameliorate the alleged "identity theft" or wrongfully opened credit cards.  She didn't contact her banks or credit cards (Martin Decl., Ex. 3 – Makaeff Depo. Vol. IV at 772:24-774:8) and she didn't even cancel the credit card that she believed was the root of her "identity theft" allegation (*Id.* – Makaeff Depo. Vol. IV at 860:8-862:17).  In short, Makaeff made the defamatory statements that TU committed the Specific Crimes only when seeking a refund from her bank/credit cards.

Her only explanation for her inaction to report the Specific Crimes to government agencies that actually had authority to address them is as far-fetched as her belief in the truth of her accusations.  Makaeff states that she did not know that the Specific Crimes occurred until she received a notice—10 months later— that her posting of bandit signs was not legal.[5]  Makaeff's only explanation for how this

---

[5]  Makaeff dramatizes the issue regarding posting of bandit signs by professing that she could have been jailed.  The reality is that <u>before</u> posting bandit signs, she was specifically instructed that she should seek local legal counsel to ensure that they were permissible in her community.  (Martin Decl., Ex. 1 – Makaeff Depo. Vol. II, pp. 346:22-347:24). ████████████████████████████████████████████████████████

TRUMP UNIVERSITY'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE ITS COUNTERCLAIM

unrelated event has anything to do with her accusation of Specific Crimes is that she was blind to what happened until the letter came, at which time she had an awakening. Such an explanation is preposterous.

With respect to the opening of the credit card, Makaeff knew in 2008 when she was on the phone with Prosper/HSBC that a credit card was being opened for her, she consented to it being opened, and agreed to charging the Profit courses on the new card.  (*Id.* – Makaeff Depo. Vol. IV at 773:21-774:8; 762:7-20.)

Additionally, Makaeff was not in the dark in any way with respect to her experiences with Trump University.[6]  For example, although Makaeff now complains that the seminars she attended and her mentorship were worthless (and apparently a basis for her allegations of "grand larceny"), her contemporaneous accounts of her experiences demonstrate that she was more than satisfied with what she received.  In an email to her mentors after her mentorship was complete, Makaeff wrote:

████████████████████████ (Martin Decl. Ex 1- Makaeff Depo. Vol. IV at 817:17-24; Ex.4 at TU-MAKAEFF5372.)   Furthermore, like her statements of Specific Crimes, Makaeff falsely accused Trump University of "felonious teachings", knowing that the penalty for posting bandit signs was not a potential felony, but only a misdemeanor.  Her own experience resulted in no punishment whatsoever – she was not jailed, charged with any crime, fined or even given a citation.  Instead, the Assistant District Attorney asked her to remove the signs, and the issue was over. (Martin Decl., Ex. 1 – Makaeff Depo. Vol. II at 348:9-349:4.)

---

[6] Although the Ninth Circuit noted, based on plaintiff's argument (no evidence was presented to it), that Makaeff's positive reviews before engaging in her mentorship or other programs she purchased were not probative of the issue of malice (*See Makaeff v. Trump Univ., LLC,* 715 F.3d 254, 271 (9th Cir. 2013) ("Makaeff's initial enthusiasm for Trump University's program is not probative of whether she acted with actual malice"), the same cannot be said of Makaeff's unsolicited praise of Trump University, including her mentorship, after she had received such training.

Hi homies!!!
I had a blast with you the last few days.  Words cannot
express my gratitude for how you have opened up my eyes
to the new possibilities and give me a glimmer of hope
during this difficult time…thank you for paying it forward
and sharing your knowledge and skills with me.  It is a
privilege.  I got emotional when you left because it's not
often that people take the time to help others change their
life…it's also something I'm not used to.  I've always done
it on my own which can be lonely..so it felt as though I had
a dad and brother helping me which touched my heart :) It's
nice to know you have someone to lean on..I think we all
need that sometimes.
So ok enough seriousness…BofI and 430, I can't wait to do
some more deals with you!! If I can help in any way, I'm
more than willing and interested so take that as a big
compliment! I love you both and feel blessed that you came
into my life :) Please call on me any time you need anything
as well…

(Martin Decl., Ex. 5).

Makaeff cannot credibly explain away her satisfaction with Trump University

and her mentorship by arguing that "she did not want to offend or risk alienating the

same Trump University personnel who were promising to help her" (Makaeff Supp.

Brief at p. 8), as Makaeff shared her sentiments with others. (Martin Decl. Ex. 6

[writing that "My mentorship with Rick and Mike went great!  I'm very pleased"]).

She even praised her mentors and her Trump University education on video 9 months

later after she had <u>completed</u> all of her TU programs.  (Martin Decl. Ex. 14).

While Makaeff would like this Court to believe that her situation is akin to the

Bernie Madoff Ponzi scheme, where consumers passively received false information

that they have no way of knowing if it was true or not (e.g. receiving financial

statements showing they are making money), Makaeff was an active participant in

every aspect of her Trump University experience.  She attended the courses,

participated in the 3-day, in-filed, one-on-one mentorship, and was given the

information to get involved in real estate transactions.  Makaeff knew exactly what she received at the time she received it – and was happy with it.

### D.   Makaeff Alleged Specific Crimes to Get the Bank to React.

As a self-proclaimed "writer", Makaeff knew that if she made grandiose allegations to her bank of specific criminal conduct, she would have a better chance of getting a refund than if she simply explained what really happened – i.e. she was not satisfied with the services provided to her.  Her explanation of why she accused Trump University of the Specific Crimes, rather than just recounting her experiences confirms this:



(Martin Decl., Ex 2 - Makaeff Depo. Vol. IV at 771:21-772:6.)

## III.   <u>ARGUMENT</u>

### A.   Standard for Showing Actual Malice.

In order to defeat Makaeff's special motion to strike, Trump University's burden is to "demonstrate a probability that [it] will prevail on [its] claim."  *Roe v. Doe,* 2009 WL 1883752 (N.D. Cal. June 30, 2009).  This means that Trump University need only "make a prima facie showing of facts that would, if proved at trial, support a judgment in [its] favor."  *Id.*

As a limited purpose public figure, Trump University must establish a probability that it can produce clear and convincing evidence that a libelous statement was made with "knowledge that it was false or with reckless disregard of whether it was false or not."  *Annette F. v. Sharon S.,* 119 Cal. App. 4th 1146, 1166 (2004); *see New York Times Co. v. Sullivan,* 376 U.S. 254, 279 (1964); *Roe,* 2009 WL 1883752, at *13 ("In the context of a special motion to strike pursuant to the anti-SLAPP statute, a limited purpose public figure such as [plaintiff] must establish a probability

that he can produce clear and convincing evidence that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity.")

To meet this burden, Trump University must provide "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.  Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."  *St. Amant v. Thompson,* 390 U.S. 727 (1968).  The test for malice is a "subjective test, under which the defendant's actual belief concerning the truthfulness of the publication is the crucial issue." *Reader's Digest Ass. v. Superior Court,* 37 Cal.3d 244, 256 (1984) (citing *Alioto v. Cowles Comm., Inc.,* 430 F.Supp. 1363, 1365-66 (N.D. Cal. 1977)).

Actual malice can be proven by circumstantial evidence.  *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 669 (1989) ("a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence")*.*  Factors such as "evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity."  *Goldwater,* 414 F.2d at 342.  Other factors include failure to investigate or anger and hostility toward the plaintiff. *Widener v. Pacific Gas & Elec. Co.,* 75 Cal. App. 3d 415, 434, 435 (1977) (overruled on other grounds in *McCoy v. Hearst Corp.,* 42 Cal. 3d 835, 846, n. 9 (1986); *see also Harte-Hanks Commc'ns, Inc.,* 491 U.S. at 692 ("Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category.") (internal citations omitted).

While Trump University acknowledges that establishing malice can be a challenge, this case provides a clear example of when the malice standard is met.

**B.    Makaeff Made Her Defamatory Statements with Actual Malice.**

      **1.    Makaeff's allegations are not protected because they were fabricated statements she knew were false.**

"[M]alice may be inferred where, for example, 'a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.'" *Christian Research Inst. v. Alnor,* 148 Cal. App. 4th 71, 85 (2007).  Where a defendant fails to present any evidence that the defamatory statements are in fact true, "a jury could reasonably determine [defendant] lied in leveling the charge . . . and, moreover, could infer malice from the lie." *Nguyen-Lam v. Cao,* 171 Cal. App. 4th 858 (2009); *see also Goldwater,* 414 F.2d at 336 (one factor a jury could use to find malice was that defendant made statements in an article "for which he could not establish a basis").

In *Nguyen-Lam,* a former appointee for school board superintendent filed a defamation action against defendant for telling school board members she was a Communist.  *Id.* at 864.  In analyzing whether Plaintiff presented evidence of actual malice, the court recognized that "defendant admitted in his first declaration he had never met plaintiff and knew her only through media reports.  Nothing in those reports hinted she was a Communist."  *Id.* at 868-69.  Further, it found that the trial court's finding that "nowhere does he say, 'I learned she is a Communist from this source or that source or from her own words.' If you put both of those together, what do you have? You have no place to go for his belief that she's a Communist'" was adequate to infer malice.  *Id.* at 869.  Thus, the court of appeal held that "the trial court did not err in concluding plaintiff demonstrated the requisite probability a jury would find defendant's baseless accusations and contradictory explanations constituted clear and convincing evidence he harbored actual malice."  *Id.*

Just like in *Nguyen-Lam,* Makaeff's allegations of Specific Crimes were fabricated.  Makaeff charges Trump University with the Specific Crimes but has no "place to go for her belief" that Trump University illegally took the property of

anyone, stole anyone's identity, or opened any credit card without approval.  Knowing that she had no "place to go for her belief" that Trump University committed such crimes, Makaeff stated, under oath, that the allegations of "grand larceny," "identity theft," and the "unsolicited taking of personal credit and trickery into opening credit cards without [her] approval" were "**not in relation to Trump University**, but regarding Profit Publishing Group/Childers Financial Group/JJ Childers."  (ECF No. 17-2 at p. 5)(emphasis added).  This admission alone can support a jury finding that Makaeff harbored actual malice.

## 2.    Makaeff's contradictory statements provide further evidence of actual malice.

Also similar to *Nguyen-Lam,* Makaeff's about face in manufacturing a new basis for her allegations provides additional evidence from which a jury could find Makaeff's "contradictory explanations constitute[] clear and convincing evidence [s]he harbored actual malice." *Id.*

In addition to contradicting her previous testimony, a jury could find Makaeff's new allegations not credible for the independent reason that her story does not make sense.  As explained in Section II(C), Makaeff's actions, or lack thereof, are inconsistent with the actions of someone who genuinely believed that the Specific Crimes were committed.  Her admissions that she did not warn other consumers of the Specific Crimes, did not notify any government agency, did not report the conduct to credit agencies, or even cancel the credit card provide clear and convincing evidence for a jury to find Makaeff acted with malice.

Furthermore, her story, in addition to contradicting her own testimony, is in and of itself not credible.  If Makaeff, while on the phone with Prosper or HSBC did not want to sign up for Prosper courses, or did not want to have a credit card opened so she could pay for the courses, she simply could have said so or even hung up the phone.  There is no "trickery" when she admittedly consented to paying for courses with a credit card she was offered and accepted.  (Martin Decl., Ex. 3 – Makaeff

Depo. Vol. IV at 773:21-774:8; 762:7-20.)  Clearly, at the time, Makaeff knew what was going on.  It was not until she tried to get her money back because she wasn't happy with the services she received that she concocted a story of wrongdoing.

### 3.   Trump University has presented ample evidence of Makaeff's anger, hostility and motive for publishing falsehoods.

Where there is evidence that a defendant acted with anger and hostility toward plaintiff, such evidence may support an inference of actual malice.  *Christian Research,* 148 Cal. App. 4th at 84-85 ("'anger and hostility toward the plaintiff . . . may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication'") (internal citations omitted); *Harte-Hanks Commc'ns, Inc.,* 491 U.S. at 669 ("it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry").

For example, in *Widener,* a film producer sued an engineer and a public utility for libel after the engineer published a letter accusing the film producer of secretly recording a response in a pre-interview question and then inserting it out of context in the film.  *Widener,* 75 Cal. App. 3d at 422-23.  The engineer conceded at trial, however, that the charge was false, but argued that at the time he made the statements he believed them to be true because he didn't remember giving the response that was shown in the film and therefore believed it must have been a response given by him in a pre-interview.  *Id.* at 436.  There was evidence however, that the engineer was "upset and angry" with the film producer and wanted to suppress the film.  *Id.* Based on the engineer's motive of wanting to suppress the film and his anger toward plaintiff, the court held there "was sufficient evidence from which the jury could have found that [the engineer] knew the charge was false, or was recklessly indifferent as to whether his statement was accurate or not."  *Id.*

Similar to *Widener,* Makaeff knew that Trump University did not commit "grand larceny," "steal her identity," or "open credit cards without approval."  As discussed above, Makaeff previously admitted as much.

Trump University has also submitted ample evidence of Makaeff's anger and hostility toward Trump University. While her anger and hostility is evident in her letters containing the defamatory statements, it is also apparent in her internet postings and correspondence threating Trump University if it did not succumb to her demands.

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ (Martin Decl. Ex. 7)

In a draft email to Trump University, Makaeff threatened:

> I am using my Internet and SEO Marketing background to start a blog as well as Twitter, Facebook, MySpace, and YouTube pages, among others, about Trump University's practices. I will recount my story and the statements of fact as well as take an active role in communicating with my audience of which I know how to generate tens of thousands [sic] friends and followers. I will also now move forward with my public relations contacts as well as cooperate with any media attention and legal requests generated from my blog of which I expect significant interest given the recent wave of real estate fraud nationwide.

(Martin Decl. Ex. 10).

Makaeff's anger, hostility, and mindset of revenge is also evident from her determination to smear Trump University in the media and get government agencies to create problems for Trump University. This can be seen from her jubilation when bragging to her then-boyfriend in an email that she was responsible for a negative New York Daily News article about Trump University. (Martin Decl., Ex. 11.) In the email she takes credit for the article, based on her reporting Trump University to the New York State Education Department. (*Id.*)

Finally, Makaeff's motive of being "willing to go to whatever lengths necessary" to get her money back from Trump University (ECF No. 294-2, Ex. 1 at p.

5), is similar to the motive of wanting to suppress the film in *Widener*.  Makaeff's motive adds an additional basis for which a jury can find that Makaeff acted with malice.

Accordingly, like in *Widener,* there is ample evidence from which a jury can find that Makaeff acted with malice.

### 4.    Failure to investigate.

Makaeff professes that she believed, and still believes, her allegations of Specific Crimes to be true.  A defendant, however, cannot "automatically insure a favorable verdict by testifying that he published with a belief that the statements were true."  *St. Amant,* 390 U.S. at 732.  "Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." *Harte-Hanks Commc'ns, Inc.,* 491 U.S. at 692 (internal citations omitted).

Makaeff attempts to substantiate her alleged beliefs by arguing that (1) she spent time investigating the statements before making them; (2) spoke with other students and reviewed complaints posted online; and (3) "talked to loved ones, friends, and attorneys and did online research."  (Makaeff Supp. Brief at 5.)  While she makes these broad claims, when probed regarding the Specific Crimes, Makaeff admits that she did **no investigation** whatsoever regarding the Specific Crimes.  She did not ask her lawyer if her allegations of Specific Crimes were accurate and she did not research the meaning of the legal terms she was using.  (Martin Decl., Ex 3 - Makaeff Depo. Vol. IV at 754:4-17; 768:1-769:12; 795:18-796:2; 799:23-800:4.)  The only thing she did before accusing Trump University of the Specific Crimes was to talk to her then boyfriend (who was not a lawyer) about them.[7]  (*Id.*)  Makaeff's

---

[7] Makaeff attaches her evidence of investigating her claims as Exhibit 2 to the Declaration of Tarla Makaeff in Support of Supplemental Brief Regarding Special Motion to Strike Trump University's Counterclaim Pursuant to California Code of

failure to investigate is sufficient evidence that her statements were made with actual malice.

On point is *Harte-Hanks Communications, Inc.,* where a candidate for judicial office sued a newspaper for libel after it published a story based on an informant's accusations that plaintiff used "dirty tricks" and essentially bribed her for helping him expose corruption with the incumbent judicial candidate's staff. *Id.* After a trial, the jury found by clear and convincing evidence that the story was published with actual malice and the Court of Appeals affirmed. *Id.* at 661.

The Supreme Court affirmed, finding that several key pieces of evidence supported the inference that the newspaper acted with actual malice, including that the newspaper failed to even attempt to interview a key witness who could corroborate or refute the informant's story: "It is utterly bewildering in light of the fact that the Journal News committed substantial resources to investigating [the informant's] claims, yet chose not to interview the one witness who was most likely to confirm [the informant's] account of the events." *Id.* at 681. The Supreme Court further found that the jury could have found that "the failure to conduct a complete investigation involved a deliberate effort to avoid the truth." *Id.* at 685. Such avoidance of the truth was enough to support a finding of actual malice. *Id.* at 692 ("Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category.") (internal citations omitted).

Thus, just like in *Harte-Hanks,* Makaeff cannot be excused for her ignorance, when such ignorance was a result of a conscious decision to avoid the truth. Akin to *Harte-Hanks,* a jury could support a finding of malice based on Makaeff's failure to consult with her counsel or do any research whatsoever before accusing Trump University of the Specific Crimes.

Civil Procedure §425.16. Noticeably absent from this exhibit is any research on the Specific Crimes.

### 5.  Makaeff's justifications for her false allegations do not excuse her conduct.

In an attempt to justify her knowingly false accusations against Trump University, Makaeff makes a myriad of rationalizations, including that: (1) she is not a lawyer; (2) she was confused about the relationship between various entities from which she purchased services[8]; and (3) a later-filed action by the NY AG bolsters her allegations.   These excuses are meritless.

#### a.   Not a lawyer.

Makaeff references a single line in her letter to Bank of America in which she states the "particulars on the law are for you to judge" to argue that her knowingly false accusations should be excused.  The context of the letter demonstrates, however, that this statement was made only with respect to a specific allegation – one that was not even made against Trump University.[9]  Makaeff's position is meritless for two additional reasons.

First, simply because she is not a lawyer does not grant her a license to haphazardly use legal terminology and then take the position that her "lay"

---

[8] Makaeff also argues that when reviewed in the context of her letters, the Specific Crimes were "hyperbolic opinions" and the letters "provided enough context to allow the readers to make their own assessment."  (Makaeff Supp. Brief at 3:2-5.)  This argument already has been rejected by this Court in its finding that the Specific Crimes as well as other statements made by Makaeff are actionable statements of fact. (ECF No. 24 at 8-9.)

[9] The statement was made by Makaeff under the heading:  "WHY I AM NOT SATISFIED AND WHAT WAS PROMISED VERSUS PROVIDED WITH PROFIT PUBLISHING GROUP."  The entire sentence referred to by Makaeff states:  "The particulars on the law are for you to judge, but I was informed transferring assets from my name to an entity I control in order to avoid paying taxes as the personal owner is unethical and could be illegal as 'fair consideration' is not provided for the transfer of said property as the model presented just had me moving assets from my personal name to a[n] entity with a separate TIN that I was still in control of and the direct beneficiary of."  (Jensen Decl., Ex. 1 at pp. 14, 15.)

understanding of the terms, although incorrect (and not credible), is excusable. Simply stated, Makaeff's argument boils down to the following: I am not a lawyer, so when I accuse someone of specific crimes, I should not be responsible for such statements. This is not the law, and Makaeff's authorities do not support such a position.

Makaeff's reliance on *Roe* is no help as the facts are completely distinguishable. In *Roe,* plaintiff, an employee for the Dallas Mavericks sued defendant, the team owner, for statements he made during a radio show alleging that defendant defamed him by falsely recounting the details of a dispute regarding his employment contract. *Roe,* 2009 WL 1883752, at *4 (N.D. Cal. June 30, 2009). Plaintiff alleged that defendant erroneously recounted details such as who commenced discussions regarding the parties' contractual obligations; who initiated a suggestion that plaintiff accept a reduced payment; who was involved in discussions regarding the contract; terms of a proposed settlement to end the contract; etc. *Id. at *4.

Defendant's anti-SLAPP motion was granted because plaintiff presented **no** evidence that defendant had any "awareness of the probable falsity of his statements." *Id.* at *14. In fact, defendant presented evidence to the contrary, providing email correspondence he wrote prior to making the alleged defamatory statements that were consistent with his version of events. *Id.*

Here, by contrast, Trump University's defamation claims are based on allegations of specific crimes – not a difference in characterization of a contract dispute. Makaeff also has no proof to show any consistent belief that her allegations were true. To the contrary, the evidence proves that the only time Makaeff ever accused Trump University of the Specific Crimes was in her quest for a refund from her banks/credit cards. Notably, as detailed above, Makaeff did not accuse Trump University of the Specific Crimes when contacting anyone else, including the NY AG, or when posting her complaints on consumer message boards. Despite admitting that if Trump University had actually stolen her identity it would be important to warn

other consumers, Makaeff cannot recall one instance, aside from when she was trying to get a refund from her bank/credit cards, of accusing Trump University of stealing her identity – not in her postings on consumer message boards, not to the NY AG during her numerous communications, and not to the BBB.  Thus, unlike *Roe,* Makaeff's selective decision to accuse Trump University of specific crimes only when seeking a refund demonstrates actual malice.

Similarly, Makaeff's reliance on *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485 (1984) is misplaced.  In *Bose,* a manufacturer of a speaker system sued a consumer product testing organization for a review of the manufacturer's speakers that stated that the speakers caused the sound of musical instruments to wander "about the room."  *Id.* at 487-88.  The manufacturer contended the statement was false because the accurate finding was that the sound wandered "along the wall."  *Id.* at 487.

In evaluating whether the statement was made with malice, the Supreme Court recognized that the only evidence relied on by the trial court in its finding of malice was an inference that defendant must have known his statement was incorrect because he knew what he heard and knew the language he used did not accurately describe what he heard.  *Id.* at 512.  The Court found that this was not enough because "adoption of the language chosen was 'one of a number of possible rational interpretations' of an event 'that bristled with ambiguities' and descriptive challenges for the writer."  *Id.* 513.  Thus, while defendant used a description that wasn't entirely accurate, in the context of which the statement was made, the inaccurate word choice was not sufficient to show malice.

Here, the situation is much different.  Makaeff's statements were not word choices with "a number of possible rational interpretations."  Makaeff accused Trump University of Specific Crimes, using terms that have very precise and understood meanings.  For example, the phrase "identity theft" has a very distinct meaning – a meaning that portrays a serious crime based on the unauthorized taking of the

identification of a person and using that identification information for an unlawful purpose. *See,* 18 U.S.C. §1028(a)(7); Cal. Pen. Code §520.5(a). Makaeff cannot escape this meaning by professing a belief that her understanding of the term is something much different. The pre-approval and opening of a credit card **with her consent** clearly is not "identity theft." Similarly, an allegedly false testimonial or Trump University's alleged use of financial information Makaeff **willingly** provided to it are far cries from commissions of crimes, and a jury could find that such explanations are not a reasonable basis for accusing Trump University of committing "identity theft."

Similarly, as Makaeff admits she consented to the opening of the credit card by HSBC and authorized the charge for Prosper courses on the card, her statement that Trump University engaged in "unsolicited taking of personal credit and trickery into opening credit cards without my approval or understanding" cannot be excused as a simple word choice error. As detailed in Section II(D), as a self-proclaimed "writer", Makaeff knew the best way to get the bank's attention and better her chances of getting a refund was to use language of serious crimes, rather than simply tell the truth. The bottom line is that Makaeff lied, and intended to do so in an effort to prompt her bank to refund her money.

Second, as Makaeff specifically noted in her letter to the bank in hopes that it would legitimize her allegations, she stated that she was represented by both "criminal and real estate counsel" at the time of writing her letters. (Jensen Decl. Ex. 1; *see also* Martin Decl., Ex. 3 - Makaeff Depo. Vol. IV at 741:22- 742:21.) Her excuse now that she is not an attorney is specious because she intended to convey to the reader of her letters the exact opposite, namely, that she was making accusations as a party who consulted an attorney. Further, she had counsel who she easily could have consulted before making such serious allegations, but intentionally did not do so to "purposefully avoid the truth." Instead, she consulted with her ex-boyfriend who had

no legal education.[10]  (Martin Decl. Ex. 3 - Makaeff Depo. Vol. IV. at 744:2-15; 785:10-15.)

### b.   Comingling of names.

Acknowledging that she had no basis for accusing Trump University of the Specific Crimes, Makaeff attempts to justify her falsehoods by proclaiming she "was not just referring to Trump University, but at times, related entities which were indistinguishable in her mind at the time."  (Makaeff Supp. Brief at 12.)  Because of her alleged confusion, she rationalizes her knowingly false accusations by stating that "she used [various] company names interchangeably at times."  (*Id.*)  Makaeff's explanations, while convenient now, are belied by her very correspondence containing the defamatory statements and in other correspondence.

For example, in the letter to Bank of America, Makaeff demonstrates her understanding that Profit and Trump University are separate entities throughout the letter.  First, she identifies those charges incurred by her for her purchase with Trump University, and separately those charges made to Profit. (Jensen Decl. Ex. 1 at 1 – distinguishing two debits made to Trump University in the amounts of $5,000 and $100 from a $4,995 debit made to Profit; Martin Decl. Ex. 3 – Makaeff Depo. Vol. IV at 803:6 – 804:18 [recognizing that she knew she purchased services from two separate businesses, with different addresses].)  In the letter, she also identifies her specific experiences with Trump University as opposed to the specific conduct engaged in by Profit by identifying each entities' conduct separately when recounting the details of her specific complaints.  (Jensen Decl., Ex. 1 pp. 6-25.)[11]

---

[10] In her brief, Makaeff even acknowledges that she consulted with counsel before sending her letter to Bank of America about issues other than the Specific Crimes. (Makaeff Supp. Brief at p. 9.)

[11] When discussing the alleged wrongdoing by Trump University, Makaeff did so under the heading "WHY I AM NOT SATISFIED AND WHAT WAS PROMISED VERSES PROVIDED WITH TRUMP UNIVERSITY", then separately addressing

Her knowledge that Profit was an entity separate and apart from Trump University is further demonstrated by her various correspondence seeking to obtain refunds from Profit wherein the correspondence does not mention her charges and experiences with Trump University.  (Martin Decl., Exs. 12, 13.)

Thus, regardless of whether Makaeff thought the entities were in some way related, she knew exactly which entity was responsible for the conduct upon which she based her allegations, but chose to "commingle" her allegations of Specific Crimes to give her a better chance at obtaining a refund.

### c.    The NY AG Action.

In her case against Trump University, Makaeff has repeatedly sought to substantiate her claims by arguing that they must be true because the NY AG also filed suit against Trump University.  What Makaeff fails to disclose to the Court, however, is that she was the catalyst for the NY AG investigation in the first place. Makaeff admits that she not only contacted the NY AG with her own complaints about Trump University, but she also encouraged others to do so as well. (Martin Decl. Ex. 7.)

Then, she makes the incredible argument that if she "acted with actual malice, so must have the NY AG."  (Makaeff Supp. Brief at p. 2.)  Makaeff's argument has an obvious fatal flaw – the NY AG at no time accused Trump University of the Specific Crimes.  Makaeff even admits that she did not tell the NY AG that Trump University committed the Specific Crimes.  (Martin Decl. Ex. 3 – Makaeff Depo. Vol. IV at 826:20-827:8.)  Thus, rather than the NY AG action supporting her "reasonable belief" in the truth of her allegations, the NY AG Action does the opposite – it demonstrates that Makaeff knowingly had no basis for her accusations.

---

Profit's conduct under the heading "WHY I AM NOT SATISFIED AND WHAT WAS PROMISED VERSUS PROVIDED WITH PROFIT PUBLISHING GROUP." (Jensen Decl., Ex. 1 at pp. 6, 14).

Case No. 10cv0940GPC (WVG)

TRUMP UNIVERSITY'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE ITS COUNTERCLAIM

1

## IV.   <u>CONCLUSION</u>

2

For the above reasons, Trump University has demonstrated the requisite

3

probability that Makaeff acted with actual malice.  Therefore, the Court must deny

4

Makaeff's special motion to strike.

5

6

Dated:  February 28, 2014

7

8

9

By:      s/Jill A. Martin

10

Jill A. Martin
Attorneys for
Defendants/Counterclaimant

11

TRUMP UNIVERSITY, LLC

12

Email:  jmartin@trumpnationl.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 28, 2014.

s/ Jill A. Martin
JILL A. MARTIN
c/o Trump National Golf Club Los Angeles
One Trump National Dr.
Rancho Palos Verdes, CA 90275
Tel:  310-303-3225
Fax:  310-265-5522

Email:   jmartin@trumpnational.com

Case No. 3:10 CV 0940 GPC (WVG)

CM/ECF - casd-

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG Makaeff v. Trump University, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,robyns@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **David Keith Schneider**
  dks@yslaw.com,ewb@yslaw.com

- **Stephen F Yunker**
  sfy@yslaw.com,ewb@yslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)