EXHIBIT "4"

Exhibit 4
-44-

# Attorney Client Privilege

From: **Eventide Partners** <epartnersinc@ Redacted
Date: Mon, Nov 9, 2009 at 6:06 PM
Subject: evidence
To: Tarla Makaeff <tmakaeff@ Redacted

## Federal Statutes Where the Services Contract Performance Results in Investigation, Civil, or Criminal Charges

As a result of following the methods taught I will include from the Trump Program and also identical methods taught by their affiliate groups, I was investigated by the DA of Orange County. This required me to consult a criminal attorney and attend a deposition as it was quickly established that I was a victim of a non-accredited so called Trump University, that uses many illegal tactics to sell services, which are not of value in California (where I paid for the program and reside) because they include many illegal methods governed by State, Federal, County, and the Department of Real Estate. Many of the techniques taught actually result in misdemeanors or even felonies for both the student and also the organization thus the many current investigations of Trump University and its Affiliates by many different enforcement agencies from BBB's to Supreme Courts across the nation. I have included information regarding my specific case and the numbers of those who concluded that I was duped by the teaching of illegal methods and never charged with a crime through initially I could have face hundreds of thousands in fines and up to six months in jail. This was an emotionally, mentally, physically, stressful and expensive

1



Δ π EXHIBIT. 34
Deponent T Makaeff
Date 4/10/14   Rptr
WWW.DEPOBOOK.COM

TU-MAKAEFF5369

Exhibit 4
-45-

issue for me as I had to defend myself for following what was taught.  Quickly, the DA saw that the educators were at fault not me and the investigation was closed on me, but continues with departments around the country.

If the services sold to a consumer uneducated in real estate are in many instances illegal in the state that they do business in if not the whole country, then the provisions of the Trump University indemnifications are null and void as the contract is violated by teaching methods that violate the law and therefore it would not be possible for the student to make money using the methods taught without breaking many laws.  This is strictly forbidden and there is ample evidence of the laws copied below and included documentation.

Bait and switch

California has a **bait** and **switch** law. It is part of the law BUSINESS AND PROFESSIONS CODE SECTION 17500-17509.

It States:

"17500. It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or

TU-MAKAEFF5370

Exhibit 4
-46-

proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning

any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm,

or corporation to so make or disseminate or cause to be so made or

disseminated any such statement as part of a plan or scheme with the

intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county

jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine."

http://www.leginfo.ca.gov/cgi-bin/displaycode?section=bpc&group=17001-18000&file=17500-17509

Told place in Universal City, CA.

They did this by implying a $1500 seminar would give me the beginning techniques to become educated in the investment of real estate with the promise that I would make around $10,000-$30,000 with the knowledge, books and support I would need to do so.  In reality, they then told me I would need to spend $34,995 on a package when they have me fill out a PERSONAL INFORMATION

3

TU-MAKAEFF5371

Exhibit 4
-47-

FORM OF MY PERSONAL FINANCIAL INFORMATION and then telling me AFTER THE FACT that the $1500 program wasn't sufficient and I needed more knowledge to complete the package. I paid the $34,995 because I was guaranteed and told in person it was all I would need to learn the many arrays of real estate investing when in fact when I got in their "retreats" on each of the 5 occasions it became an infomercial of them upselling me at every corner turn possible. And in reality I was left without the knowledge I needed for a high investment of $34,995. In other words they "baited" me with a $34,995 full real estate investing education the price of a costly university tuition while calling themselves a university: Trump University, and then they "switched" their story later saying I needed to buy numerous other courses to get the full education. Because I did not, I did not receive the full education they promised!  This Violated many of the California Codes and Laws listed below in addition to the bait and switch.


Bandit signs laws - CA (DA-take codes from letter)

I have included information from the Trump course discussing public advertising methods including Billboards or Bandit sign laws.  Though they say seek counsel to see if it is legal to do so in your city, it is illegal in all of CALIFORNIA to post the signs they taught me to post so why would they teach such tactics in a California course where I signed my contract?  This is another instance of misleading information in which the Trump Organization and I were investigated and they are hot on the trail of the Trump University right now for these types of violations.  As stated above, it is illegal in California to enter into a contract with someone in which they will need to violate legal code, statutes etc. in order to benefit from the services rendered.  I have included the letter I received from the DA and Investigators with the information from TRUMP UNIVERSITY that they investigated.  Fault was found to be

4

TU-MAKAEFF5372

Exhibit 4
-48-

at the level of Trump University and its affiliates so there are many interested government enforcement agencies taking a close look at their real estate teachings.

CALIFORNIA CODES
BUSINESS AND **PROFESSIONS CODE**
SECTION **17200**-17210

**17200.**  As used in this chapter, unfair competition shall mean and
include any unlawful, unfair or fraudulent business act or practice
and unfair, deceptive, untrue or misleading advertising and any act
prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of
Division 7 of the Business and **Professions Code.**

17201.  As used in this chapter, the term person shall mean and
include natural persons, corporations, firms, partnerships, joint
stock companies, associations and other organizations of persons.

5

TU-MAKAEFF5373

Exhibit 4
-49-

17201.5.   As used in this chapter:
   (a) "Board within the Department of Consumer
Affairs" includes any
commission, bureau, division, or other similarly
constituted agency
within the Department of Consumer Affairs.
   (b) "Local consumer affairs agency" means and
includes any city or
county body which primarily provides consumer
protection services.


17202.   Notwithstanding Section 3369 of the Civil
**Code,** specific or
preventive relief may be granted to enforce a
penalty, forfeiture, or
penal law in a case of unfair competition.


17203.   Injunctive Relief--Court Orders
   Any person who engages, has engaged, or
proposes to engage in
unfair competition may be enjoined in any court
of competent
jurisdiction. The court may make such orders or
judgments, including
the appointment of a receiver, as may be
necessary to prevent the use
or employment by any person of any practice which
constitutes unfair
competition, as defined in this chapter, or as
may be necessary to

6

TU-MAKAEFF5374

Exhibit 4
-50-

restore to any person in interest any money or property, real or
personal, which may have been acquired by means of such unfair
competition. Any person may pursue representative claims or relief on
behalf of others only if the claimant meets the standing
requirements of Section 17204 and complies with Section 382 of the
**Code** of Civil Procedure, but these limitations do not apply to claims
brought under this chapter by the Attorney General, or any district
attorney, county counsel, city attorney, or city prosecutor in this
state.


17204. Actions for Injunctions by Attorney General, District
Attorney, County Counsel, and City Attorneys
   Actions for relief pursuant to this chapter shall be prosecuted
exclusively in a court of competent jurisdiction by the Attorney
General or a district attorney or by a county counsel authorized by
agreement with the district attorney in actions involving violation
of a county ordinance, or by a city attorney of a city having a

7

TU-MAKAEFF5375

Exhibit 4
-51-

population in excess of 750,000, or by a city
attorney in a city and
county or, with the consent of the district
attorney, by a city
prosecutor in a city having a full-time city
prosecutor in the name
of the people of the State of California upon
their own complaint or
upon the complaint of a board, officer, person,
corporation, or
association, or by a person who has suffered
injury in fact and has
lost money or property as a result of the unfair
competition.


17205.  Unless otherwise expressly provided, the
remedies or
penalties provided by this chapter are cumulative
to each other and
to the remedies or penalties available under all
other laws of this
state.


17206.  Civil Penalty for Violation of Chapter
   (a) Any person who engages, has engaged, or
proposes to engage in
unfair competition shall be liable for a civil
penalty not to exceed
two thousand five hundred dollars ($2,500) for
each violation, which

TU-MAKAEFF5376

Exhibit 4
-52-

shall be assessed and recovered in a civil action brought in the name
of the people of the State of California by the Attorney General, by
any district attorney, by any county counsel authorized by agreement
with the district attorney in actions involving violation of a
county ordinance, by any city attorney of a city having a population
in excess of 750,000, by any city attorney of any city and county,
or, with the consent of the district attorney, by a city prosecutor
in any city having a full-time city prosecutor, in any court of
competent jurisdiction.

   (b) The court shall impose a civil penalty for each violation of
this chapter. In assessing the amount of the civil penalty, the court
shall consider any one or more of the relevant circumstances
presented by any of the parties to the case, including, but not
limited to, the following: the nature and seriousness of the
misconduct, the number of violations, the persistence of the
misconduct, the length of time over which the misconduct occurred,
the willfulness of the defendant's misconduct, and the defendant's
assets, liabilities, and net worth.

9

TU-MAKAEFF5377

Exhibit 4
-53-

(c) If the action is brought by the Attorney General, one-half of
the penalty collected shall be paid to the treasurer of the county in
which the judgment was entered, and one-half to the General Fund. If
the action is brought by a district attorney or county counsel, the
penalty collected shall be paid to the treasurer of the county in
which the judgment was entered. Except as provided in subdivision
(e), if the action is brought by a city attorney or city prosecutor,
one-half of the penalty collected shall be paid to the treasurer of
the city in which the judgment was entered, and one-half to the
treasurer of the county in which the judgment was entered. The
aforementioned funds shall be for the exclusive use by the Attorney
General, the district attorney, the county counsel, and the city
attorney for the enforcement of consumer protection laws.

(d) The Unfair Competition Law Fund is hereby created as a special
account within the General Fund in the State Treasury. The portion
of penalties that is payable to the General Fund or to the Treasurer
recovered by the Attorney General from an action or settlement of a

TU-MAKAEFF5378

Exhibit 4
-54-

claim made by the Attorney General pursuant to
this chapter or
Chapter 1 (commencing with Section 17500) of Part
3 shall be
deposited into this fund. Moneys in this fund,
upon appropriation by
the Legislature, shall be used by the Attorney
General to support
investigations and prosecutions of California's
consumer protection
laws, including implementation of judgments
obtained from such
prosecutions or investigations and other
activities which are in
furtherance of this chapter or Chapter 1
(commencing with Section
17500) of Part 3.
   (e) If the action is brought at the request of
a board within the
Department of Consumer Affairs or a local
consumer affairs agency,
the court shall determine the reasonable expenses
incurred by the
board or local agency in the investigation and
prosecution of the
action.
   Before any penalty collected is paid out
pursuant to subdivision
(c), the amount of any reasonable expenses
incurred by the board
shall be paid to the Treasurer for deposit in the
special fund of the
board described in Section 205. If the board has
no such special

11

TU-MAKAEFF5379

Exhibit 4
-55-

fund, the moneys shall be paid to the Treasurer. The amount of any reasonable expenses incurred by a local consumer affairs agency shall be paid to the general fund of the municipality or county that funds the local agency.

(f) If the action is brought by a city attorney of a city and county, the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment was entered for the exclusive use by the city attorney for the enforcement of consumer protection laws. However, if the action is brought by a city attorney of a city and county for the purposes of civil enforcement pursuant to Section 17980 of the Health and Safety **Code** or Article 3 (commencing with Section 11570) of Chapter 10 of Division 10 of the Health and Safety **Code**, either the penalty collected shall be paid entirely to the treasurer of the city and county in which the judgment was entered or, upon the request of the city attorney, the court may order that up to one-half of the penalty, under court supervision and approval, be paid for the

12

TU-MAKAEFF5380

Exhibit 4
-56-

purpose of restoring, maintaining, or enhancing the premises that
were the subject of the action, and that the balance of the penalty
be paid to the treasurer of the city and county.


17206.1.  (a) (1) In addition to any liability for a civil penalty
pursuant to Section 17206, any person who violates this chapter, and
the act or acts of unfair competition are perpetrated against one or
more senior citizens or disabled persons, may be liable for a civil
penalty not to exceed two thousand five hundred dollars ($2,500) for
each violation, which may be assessed and recovered in a civil action
as prescribed in Section 17206.
   (2) Subject to subdivision (d), any civil penalty shall be paid as
prescribed by subdivisions (b) and (c) of Section 17206.
   (b) As used in this section, the following terms have the
following meanings:
   (1) "Senior citizen" means a person who is 65 years of age or
older.
   (2) "Disabled person" means any person who has a physical or

13

TU-MAKAEFF5381

Exhibit 4
-57-

mental impairment that substantially limits one or more major life
activities.

(A) As used in this subdivision, "physical or mental impairment"
means any of the following:

(i) Any physiological disorder or condition, cosmetic
disfigurement, or anatomical loss substantially affecting one or more
of the following body systems: neurological; musculoskeletal;
special sense organs; respiratory, including speech organs;
cardiovascular; reproductive; digestive; genitourinary; hemic and
lymphatic; skin; or endocrine.

(ii) Any mental or psychological disorder, such as mental
retardation, organic brain syndrome, emotional or mental illness, and
specific learning disabilities.

"Physical or mental impairment" includes, but is not limited to,
such diseases and conditions as orthopedic, visual, speech, and
hearing impairment, cerebral palsy, epilepsy, muscular dystrophy,
multiple sclerosis, cancer, heart disease, diabetes, mental
retardation, and emotional illness.

(B) "Major life activities" means functions such as caring for one'

14

TU-MAKAEFF5382

Exhibit 4
-58-

s self, performing manual tasks, walking, seeing, hearing, speaking,
breathing, learning, and working.

(c) In determining whether to impose a civil penalty pursuant to
subdivision (a) and the amount thereof, the court shall consider, in
addition to any other appropriate factors, the extent to which one or
more of the following factors are present:

(1) Whether the defendant knew or should have known that his or
her conduct was directed to one or more senior citizens or disabled
persons.

(2) Whether the defendant's conduct caused one or more senior
citizens or disabled persons to suffer: loss or encumbrance of a
primary residence, principal employment, or source of income;
substantial loss of property set aside for retirement, or for
personal or family care and maintenance; or substantial loss of
payments received under a pension or retirement plan or a government
benefits program, or assets essential to the health or welfare of the
senior citizen or disabled person.

(3) Whether one or more senior citizens or disabled persons are
substantially more vulnerable than other members of the public to the

15

TU-MAKAEFF5383

Exhibit 4
-59-

defendant's conduct because of age, poor health or infirmity,
impaired understanding, restricted mobility, or disability, and
actually suffered substantial physical, emotional, or economic damage
resulting from the defendant's conduct.

(d) Any court of competent jurisdiction hearing an action pursuant
to this section may make orders and judgments as may be necessary to
restore to any senior citizen or disabled person any money or
property, real or personal, which may have been acquired by means of
a violation of this chapter. Restitution ordered pursuant to this
subdivision shall be given priority over recovery of any civil
penalty designated by the court as imposed pursuant to subdivision
(a), but shall not be given priority over any civil penalty imposed
pursuant to subdivision (a) of Section 17206. If the court determines
that full restitution cannot be made to those senior citizens or
disabled persons, either at the time of judgment or by a future date
determined by the court, then restitution under this subdivision
shall be made on a pro rata basis depending on the amount of loss.

16

TU-MAKAEFF5384

Exhibit 4
-60-

17207.   (a) Any person who intentionally violates any injunction
prohibiting unfair competition issued pursuant to Section 17203 shall
be liable for a civil penalty not to exceed six thousand dollars
($6,000) for each violation. Where the conduct constituting a
violation is of a continuing nature, each day of that conduct is a
separate and distinct violation. In determining the amount of the
civil penalty, the court shall consider all relevant circumstances,
including, but not limited to, the extent of the harm caused by the
conduct constituting a violation, the nature and persistence of that
conduct, the length of time over which the conduct occurred, the
assets, liabilities, and net worth of the person, whether corporate
or individual, and any corrective action taken by the defendant.
    (b) The civil penalty prescribed by this section shall be assessed
and recovered in a civil action brought in any county in which the
violation occurs or where the injunction was issued in the name of
the people of the State of California by the Attorney General or by

TU-MAKAEFF5385

Exhibit 4
-61-

any district attorney, any county counsel
authorized by agreement
with the district attorney in actions involving
violation of a county
ordinance, or any city attorney in any court of
competent
jurisdiction within his or her jurisdiction
without regard to the
county from which the original injunction was
issued. An action
brought pursuant to this section to recover civil
penalties shall
take precedence over all civil matters on the
calendar of the court
except those matters to which equal precedence on
the calendar is
granted by law.

   (c) If such an action is brought by the
Attorney General, one-half
of the penalty collected pursuant to this section
shall be paid to
the treasurer of the county in which the judgment
was entered, and
one-half to the State Treasurer. If brought by a
district attorney or
county counsel the entire amount of the penalty
collected shall be
paid to the treasurer of the county in which the
judgment is entered.
If brought by a city attorney or city prosecutor,
one-half of the
penalty shall be paid to the treasurer of the
county in which the

TU-MAKAEFF5386

Exhibit 4
-62-

judgment was entered and one-half to the city, except that if the
action was brought by a city attorney of a city and county the entire
amount of the penalty collected shall be paid to the treasurer of
the city and county in which the judgment is entered.

(d) If the action is brought at the request of a board within the
Department of Consumer Affairs or a local consumer affairs agency,
the court shall determine the reasonable expenses incurred by the
board or local agency in the investigation and prosecution of the
action.

Before any penalty collected is paid out pursuant to subdivision
(c), the amount of the reasonable expenses incurred by the board
shall be paid to the State Treasurer for deposit in the special fund
of the board described in Section 205. If the board has no such
special fund, the moneys shall be paid to the State Treasurer. The
amount of the reasonable expenses incurred by a local consumer
affairs agency shall be paid to the general fund of the municipality
or county which funds the local agency.

19

TU-MAKAEFF5387

Exhibit 4
-63-

17208.   Any action to enforce any cause of action pursuant to this
chapter shall be commenced within four years after the cause of
action accrued. No cause of action barred under existing law on the
effective date of this section shall be revived by its enactment.


17209.   If a violation of this chapter is alleged or the application
or construction of this chapter is in issue in any proceeding in the
Supreme Court of California, a state court of appeal, or the
appellate division of a superior court, each person filing any brief
or petition with the court in that proceeding shall serve, within
three days of filing with the court, a copy of that brief or petition
on the Attorney General, directed to the attention of the Consumer
Law Section at a service address designated on the Attorney General's
official Web site for service of papers under this section or, if no
service address is designated, at the Attorney General's office in

TU-MAKAEFF5388

Exhibit 4
-64-

San Francisco, California, and on the district
attorney of the county
in which the lower court action or proceeding was
originally filed.
Upon the Attorney General's or district
attorney's request, each
person who has filed any other document,
including all or a portion
of the appellate record, with the court in
addition to a brief or
petition shall provide a copy of that document
without charge to the
Attorney General or the district attorney within
five days of the
request. The time for service may be extended by
the Chief Justice or
presiding justice or judge for good cause shown.
No judgment or
relief, temporary or permanent, shall be granted
or opinion issued
until proof of service of the brief or petition
on the Attorney
General and district attorney is filed with the
court.


17210.  (a) For purposes of this section, "hotel"
means any hotel,
motel, bed and breakfast inn, or other similar
transient lodging
establishment, but it does not include any
residential hotel as

21

TU-MAKAEFF5389

Exhibit 4
-65-

defined in Section 50519 of the Health and Safety
Code. "Innkeeper"
means the owner or operator of a hotel, or the
duly authorized agent
or employee of the owner or operator.
    (b) For purposes of this section, "handbill"
means, and is
specifically limited to, any tangible commercial
solicitation to
guests of the hotel urging that they patronize
any commercial
enterprise.
    (c) Every person (hereinafter "distributor")
engages in unfair
competition for purposes of this chapter who
deposits, places,
throws, scatters, casts, or otherwise distributes
any handbill to any
individual guest rooms in any hotel, including,
but not limited to,
placing, throwing, leaving, or attaching any
handbill adjacent to,
upon, or underneath any guest room door,
doorknob, or guest room
entryway, where either the innkeeper has
expressed objection to
handbill distribution, either orally to the
distributor or by the
posting of a sign or other notice in a
conspicuous place within the
lobby area and at all points of access from the
exterior of the
premises to guest room areas indicating that
handbill distribution is

TU-MAKAEFF5390

Exhibit 4
-66-

prohibited, or the distributor has received written notice pursuant
to subdivision (e) that the innkeeper has expressed objection to the
distribution of handbills to guest rooms in the hotel.

(d) Every person (hereinafter "contractor") engages in unfair
competition for purposes of this chapter who causes or directs any
other person, firm, business, or entity to distribute, or cause the
distribution of, any handbill to any individual guest rooms in any
hotel in violation of subdivision (c) of this section, if the
contractor has received written notice from the innkeeper objecting
to the distribution of handbills to individual guest rooms in the
hotel.

(e) Every contractor who causes or directs any distributor to
distribute, or cause the distribution of, any handbills to any
individual guest rooms in any hotel, if the contractor has received
written notice from the innkeeper or from any other contractor or
intermediary pursuant to this subdivision, objecting to the
distribution of handbills to individual guest rooms in the hotel has

23

TU-MAKAEFF5391

Exhibit 4

-67-

failed to provide a written copy of that notice to each distributor
prior to the commencement of distribution of handbills by the
distributor or by any person hired or retained by the distributor for
that purpose, or, within 24 hours following the receipt of the
notice by the contractor if received after the commencement of
distribution, and has failed to instruct and demand any distributor
to not distribute, or to cease the distribution of, the handbills to
individual guest rooms in any hotel for which such a notice has been
received is in violation of this section.

(f) Any written notice given, or caused to be given, by the
innkeeper pursuant to or required by any provision of this section
shall be deemed to be in full force and effect until such time as the
notice is revoked in writing.

(g) Nothing in this section shall be deemed to prohibit the
distribution of a handbill to guest rooms in any hotel where the
distribution has been requested or approved in writing by the
innkeeper, or to any individual guest room when the occupant thereof
has affirmatively requested or approved the distribution of the

24

TU-MAKAEFF5392

Exhibit 4
-68-

handbill during the duration of the guest's occupancy.

  CALIFORNIA CODES
**PENAL CODE**
SECTION **556-556.**4

**556.**   It is a misdemeanor for any person to place or maintain, or
cause to be placed or maintained without lawful permission upon any
property of the State, or of a city or of a county, any sign,
picture, transparency, advertisement, or mechanical device which is
used for the purpose of advertising or which advertises or brings to
notice any person, article of merchandise, business or profession, or
anything that is to be or has been sold, bartered, or given away.

**556.**1.   It is a misdemeanor for any person to place or maintain or
cause to be placed or maintained upon any property in which he has no
estate or right of possession any sign, picture, transparency,

TU-MAKAEFF5393

Exhibit 4
-69-

advertisement, or mechanical device which is used for the purpose of
advertising, or which advertises or brings to notice any person,
article of merchandise, business or profession, or anything that is
to be or has been sold, bartered, or given away, without the consent
of the owner, lessee, or person in lawful possession of such property
before such sign, picture, transparency, advertisement, or
mechanical device is placed upon the property.

**556**.2.   Sections **556** and **556**.1 do not prevent the posting of any
notice required by law or order of any court, to be posted, nor the
posting or placing of any notice, particularly pertaining to the
grounds or premises upon which the notice is so posted or placed, nor
the posting or placing of any notice, sign, or device used
exclusively for giving public notice of the name, direction or
condition of any highway, street, lane, road or alley.

26

TU-MAKAEFF5394
Exhibit 4
-70-

556.3.  Any sign, picture, transparency,
advertisement, or
mechanical device placed on any property contrary
to the provisions
of Sections 556 and 556.1, is a public nuisance.


556.4.  For purposes of this article, information
that appears on
any sign, picture, transparency, advertisement,
or mechanical device
such as, but not limited to, the following, may
be used as evidence
to establish the fact, and may create an
inference, that a person or
entity is responsible for the posting of the
sign, picture,
transparency, advertisement, or mechanical
device:
   (a) The name, telephone number, address, or
other identifying
information regarding the real estate broker,
real estate brokerage
firm, real estate agent, or other person
associated with the firm.
   (b) The name, telephone number, address, or
other identifying
information of the owner or lessee of property
used for a commercial
activity or event.
   (c) The name, telephone number, address, or
other identifying

27

TU-MAKAEFF5395

Exhibit 4
-71-

```
information of the sponsor or promoter of a
sporting event, concert,
theatrical performance, or similar activity or
event.
```

## Taking over payments laws - CA (DRE?)

This is a grey area, but I was instructed to do this illegally so I will pass on that attachment to you as well

## Transactions that only realtors should be doing, unlicensed people to do licensed work

California Code

```
10131.1.  (a) A real estate broker within the
meaning of this part

is also a person who engages as a principal in
the business of making

loans or buying from, selling to, or exchanging
with the public,

real property sales contracts or promissory notes
secured directly or

collaterally by liens on real property, or who
makes agreements with

the public for the collection of payments or for
the performance of
```

28

TU-MAKAEFF5396

Exhibit 4
-72-

services in connection with **real** property sales contracts or

promissory notes secured directly or collaterally by liens on **real**

property.

(b) As used in this section:

(1) "In the business" means any of the following:

(A) The acquisition for resale to the public, and not as an

investment, of eight or more **real** property sales contracts or

promissory notes secured directly or collaterally by liens on **real**

property during a calendar year.

(B) The sale to or exchange with the public of eight or more **real**

property sales contracts or promissory notes secured directly or

collaterally by liens on **real** property during a calendar year.

However, no transaction negotiated through a **real estate** licensee

shall be considered in determining whether a person is a **real estate**

29

TU-MAKAEFF5397

Exhibit 4
-73-

broker within the meaning of this section.

(C) The making of eight or more loans in a calendar year from the

person's own funds to the public when those loans are held or resold

and are secured directly or collaterally by a lien on residential

**real** property consisting of a single dwelling unit in a condominium

or cooperative or on any parcel containing only residential buildings

if the total number of units on the parcel is four or less. However,

no transaction negotiated through a **real estate** broker who meets the

criteria of subdivision (a) or (b) of Section 10232 shall be

considered in determining whether a person is a **real estate** broker

within the meaning of this section.

(2) "Sale," "resale," and "exchange" include every disposition of

any interest in a **real** property sales contract or promissory note

30

TU-MAKAEFF5398

Exhibit 4
-74-

secured directly or collaterally by a lien on **real** property, except

the original issuance of a promissory note by a borrower or a **real**

property sales contract by a vendor, either of which is to be secured

directly by a lien on **real** property owned by the borrower or vendor.

  (3) "Own funds" means either of the following:

  (A) Cash, corporate capital, or warehouse credit lines at

commercial banks, savings banks, savings and loan associations,

industrial loan companies, or other sources that are liability items

on the person's **financial** statements, whether secured or unsecured.

  (B) Cash, corporate capital, or warehouse credit lines at

commercial banks, savings banks, savings and loan associations,

industrial loan companies, or other sources that are liability items

on the **financial** statement of an affiliate of the person, whether

TU-MAKAEFF5399

Exhibit 4
-75-

secured or unsecured.

   (4) "Own funds" does not include funds provided by a third party

to fund a loan on condition that the third party will subsequently

purchase or accept an assignment of the loan.

10131.2.  A **real estate** broker within the meaning of this part is

also a person who engages in the business of claiming, demanding,

charging, receiving, collecting or contracting for the collection of

an advance fee in connection with any employment undertaken to

promote the sale or lease of **real** property or of a business

opportunity by advance fee listing, advertisement or other offering

to sell, lease, exchange or rent property or a business opportunity,

or to obtain a loan or loans thereon.

32

TU-MAKAEFF5400

Exhibit 4
-76-

10130.   It is unlawful for any person to engage in the business, act
in the capacity of, advertise or assume to act as a **real estate**
broker or a **real estate** salesman within this state without first
obtaining a **real estate** license from the department.

   The commissioner may prefer a complaint for violation of this
section before any court of competent jurisdiction, and the
commissioner and his counsel, deputies or assistants may assist in
presenting the law or facts at the trial.

   It is the duty of the district attorney of each county in this
state to prosecute all violations of this section in their respective
counties in which the violations occur.


10131.   A **real estate** broker within the meaning of this part is a
person who, for a compensation or in expectation of a compensation,
regardless of the form or time of payment, does or negotiates to do
one or more of the following acts for another or others:

   (a) Sells or offers to sell, buys or offers to buy, solicits

TU-MAKAEFF5401

Exhibit 4
-77-

prospective sellers or puchasers of, solicits or
obtains listings of,
or negotiates the purchase, sale or exchange of
**real** property or a
business opportunity.

(b) Leases or rents or offers to lease or
rent, or places for
rent, or solicits listings of places for rent, or
solicits for
prospective tenants, or negotiates the sale,
purchase or exchanges of
leases on **real** property, or on a business
opportunity, or collects
rents from **real** property, or improvements
thereon, or from business
opportunities.

(c) Assists or offers to assist in filing an
application for the
purchase or lease of, or in locating or entering
upon, lands owned by
the state or federal government.

(d) Solicits borrowers or lenders for or
negotiates loans or
collects **payments** or performs services for
borrowers or lenders or
note owners in connection with loans secured
directly or collaterally
by liens on **real** property or on a business
opportunity.

(e) Sells or offers to sell, buys or offers to
buy, or exchanges
or offers to exchange a **real** property sales
contract, or a promissory

34

TU-MAKAEFF5402
Exhibit 4
-78-

```
note secured directly or collaterally by a lien
on real property or
on a business opportunity, and performs services
for the holders
thereof.
```

In addition, Trump University and its affiliates take personal information for use that is prohibited by California Law.  It is against the law to take credit cards or open credit accounts without telling the consumer how they will be used and where the information will be sent.  Trump University distributes this information to its affiliates so they are able to extract the highest rate of payment from prospective students based upon the STATEMENT OF PERSONAL FINANCIAL INFORMATION that they require the students to fill out prior to telling them how much programs will cost.  They then use high pressure sales tactics with multiple sales men convincing the prospective student that this is a onetime offer and not allowing for sufficient time for the student to review the materials or go to the seminar so a 3 day cancellation policy is null and void as there is NO POSSIBLE WAY FOR THE STUDENT TO RENDER AN ACCURATE DECISION MAKING OPINION OF THE VALIDITY OF THE SERVICES AS THEY ARE NOT RENDERED UNTIL WEEKS, MONTHS, AND YEARS LATER...clearly a violation of law.  In addition to teaching illegal tactics such as posting bandit signs,  legally grey areas such as taking over payments, setting up corps to take phone calls from illegally solicited offers to buy or sell properties by mail, and email...this is a gross case of clear fraud and there is THE LAW IS 100% CLEAR AS TO THE VIOLATIONS MEANING THAT ALL FUNDS SHOULD BE CREDITED TO THE STUDENT IMMEDIATELY.

http://www.leginfo.ca.gov/cgi-bin/waisgate?WAISdocID=0264678337+35+0+0&WAISaction=retrieve

TU-MAKAEFF5403

Exhibit 4
-79-

## California Civil Code § 1747.08. Requiring identification information as condition of acceptance

(a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation which accepts credit cards for the transaction of business shall do either of the following:
(1) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal identification information upon the credit card transaction form or otherwise.
(2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.
(3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification information of the cardholder.

(b) For purposes of this section "personal identification information," means information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number.

(c) Subdivision (a) does not apply in the following instances:
(1) When the credit card is being used as a deposit to secure payment in the event of default, loss, damage, or other similar occurrence.
(2) Cash advance transactions.
(3) When the person, firm, partnership, association, or corporation accepting the credit card is contractually obligated to provide personal identification information in order to complete the credit card transaction or is obligated to collect and record the personal identification information by federal law or regulation.

36

TU-MAKAEFF5404

Exhibit 4
-80-

(4) When personal identification information is required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders.

(d) This section does not prohibit any person, firm, partnership, association, or corporation from requiring the cardholder, as a condition to accepting the credit card as payment in full or in part for goods or services, to provide reasonable forms of positive identification, which may include a driver's license or a California state identification card, or where one of these is not available, another form of photo identification, provided that none of the information contained thereon is written or recorded on the credit card transaction form or otherwise.If the cardholder pays for the transaction with a credit card number and does not make the credit card available upon request to verify the number, the cardholder's driver's license number or identification card number may be recorded on the credit card transaction form or otherwise.

(e) Any person who violates this section shall be subject to a civil penalty not to exceed two hundred fifty dollars ($ 250) for the first violation and one thousand dollars ($ 1,000) for each subsequent violation, to be assessed and collected in a civil action brought by the person paying with a credit card, by the Attorney General, or by the district attorney or city attorney of the county or city in which the violation occurred. However, no civil penalty shall be assessed for a violation of this section if the defendant shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error made notwithstanding the defendant's maintenance of procedures reasonably adopted to avoid such an error. When collected, the civil penalty shall be payable, as appropriate, to the person paying with a credit card who brought the

TU-MAKAEFF5405

Exhibit 4
-81-

action, or to the general fund of whichever governmental entity brought the action to assess the civil penalty.

(f) The Attorney General, or any district attorney or city attorney within his or her respective jurisdiction, may bring an action in the superior court in the name of the people of the State of California to enjoin violation of subdivision (a) and, upon notice to the defendant of not less than five days, to temporarily restrain and enjoin the violation. If it appears to the satisfaction of the court that the defendant has, in fact, violated subdivision (a), the court may issue an injunction restraining further violations, without requiring proof that any person has been damaged by the violation. In these proceedings, if the court finds that the defendant has violated subdivision (a), the court may direct the defendant to pay any or all costs incurred by the Attorney General, district attorney, or city attorney in seeking or obtaining injunctive relief pursuant to this subdivision.

(g) Actions for collection of civil penalties under subdivision (e) and for injunctive relief under subdivision (f) may be consolidated.

(h) The changes made to this section by Assembly Bill 1316 of the 1995-96 Regular Session of the Legislature apply only to credit card transactions entered into on and after January 1, 1996. Nothing in those changes shall be construed to affect any civil action which was filed before January 1, 1996.

[ **Notes:**
The civil penalty provision of the Song-Beverly Credit Card Act of 1971 (*CC § 1747.8(e)*)) does not mandate fixed penalties; rather, it sets maximum penalties of $ 250 for the first violation and $ 1,000 for each subsequent violation, thus providing an entire range of available penalties. *Linder v Thrifty Oil Co. (2000) 23 Cal 4th 429, 447, 97 Cal Rptr 2d 179, 2 P3d 27.*

TU-MAKAEFF5406

Exhibit 4
-82-

Retailer violated the Song-Beverly Credit Card Act by requesting a consumer's telephone number before ringing up purchases on a credit card because the addition of the word "request" to *Cal. Civ. Code § 1747.8* prohibited the retailer from seeking such information before the transaction; therefore, a trial court erred in granting the retailer's motion to dismiss the consumer's action. Florez v Linens *'N Things, Inc. (2003, 4th Dist) 108 Cal App 4th 447, 133 Cal Rptr 2d 465.*]

```
Civil Code Section

1798.82.   (a) Any person or business that
conducts business in
California, and that owns or licenses
computerized data that includes
personal information, shall disclose any breach
of the security of
the system following discovery or notification of
the breach in the
security of the data to any resident of
California whose unencrypted
personal information was, or is reasonably
believed to have been,
acquired by an unauthorized person. The
disclosure shall be made in
the most expedient time possible and without
unreasonable delay,
consistent with the legitimate needs of law
enforcement, as provided
in subdivision (c), or any measures necessary to
determine the scope
```

TU-MAKAEFF5407

Exhibit 4
-83-

of the breach and restore the reasonable
integrity of the data
system.

    (b) Any person or business that maintains
computerized data that
includes **personal information** that the person or
business does not
own shall notify the owner or licensee of the
**information** of any
breach of the security of the data immediately
following discovery,
if the **personal information** was, or is reasonably
believed to have
been, acquired by an unauthorized person.

    (c) The notification required by this section
may be delayed if a
law enforcement agency determines that the
notification will impede a
criminal investigation. The notification required
by this section
shall be made after the law enforcement agency
determines that it
will not compromise the investigation.

    (d) For purposes of this section, "breach of
the security of the
system" means unauthorized acquisition of
computerized data that
compromises the security, confidentiality, or
integrity of **personal
information** maintained by the person or business.
Good faith
acquisition of **personal information** by an
employee or agent of the

TU-MAKAEFF5408

Exhibit 4
-84-

person or business for the purposes of the person or business is not
a breach of the security of the system, provided that the **personal information** is not used or subject to further unauthorized disclosure.

(e) For purposes of this section, **"personal information"** means an individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted:

(1) Social security number.

(2) Driver's license number or California Identification Card number.

(3) Account number, credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's **financial** account.

(4) Medical **information.**

(5) Health insurance **information.**

(f) (1) For purposes of this section, **"personal information"** does not include publicly available **information** that is lawfully made available to the general public from federal, state, or local government records.

41

TU-MAKAEFF5409

Exhibit 4
-85-

(2) For purposes of this section, "medical
**information**" means any
**information** regarding an individual's medical
history, mental or
physical condition, or medical treatment or
diagnosis by a health
care professional.

(3) For purposes of this section, "health
insurance **information**"
means an individual's health insurance policy
number or subscriber
identification number, any unique identifier used
by a health insurer
to identify the individual, or any **information** in
an individual's
application and claims history, including any
appeals records.

(g) For purposes of this section, "notice" may
be provided by one
of the following methods:

(1) Written notice.

(2) Electronic notice, if the notice provided
is consistent with
the provisions regarding electronic records and
signatures set forth
in Section 7001 of Title 15 of the United States
Code.

(3) Substitute notice, if the person or
business demonstrates that
the cost of providing notice would exceed two
hundred fifty thousand
dollars ($250,000), or that the affected class of
subject persons to

TU-MAKAEFF5410

Exhibit 4
-86-

be notified exceeds 500,000, or the person or
business does not have
sufficient contact **information**. Substitute notice
shall consist of
all of the following:
    (A) E-mail notice when the person or business
has an e-mail
address for the subject persons.
    (B) Conspicuous posting of the notice on the
Web site page of the
person or business, if the person or business
maintains one.
    (C) Notification to major statewide media.
    (h) Notwithstanding subdivision (g), a person
or business that
maintains its own notification procedures as part
of an **information**
security policy for the treatment of **personal
information** and is
otherwise consistent with the timing requirements
of this part, shall
be deemed to be in compliance with the
notification requirements of
this section if the person or business notifies
subject persons in
accordance with its policies in the event of a
breach of security of
the system.


1798.83.  (a) Except as otherwise provided in
subdivision (d), if a
business has an established business relationship
with a customer and

TU-MAKAEFF5411
Exhibit 4
-87-

has within the immediately preceding calendar year disclosed
**personal information** that corresponds to any of the categories of
**personal information** set forth in paragraph (6) of subdivision (e) to
third parties, and if the business knows or reasonably should know
that the third parties used the **personal information** for the third
parties' direct marketing purposes, that business shall, after the
receipt of a written or electronic mail request, or, if the business
chooses to receive requests by toll-free telephone or facsimile
numbers, a telephone or facsimile request from the customer, provide
all of the following **information** to the customer free of charge:

   (1) In writing or by electronic mail, a list of the categories set
forth in paragraph (6) of subdivision (e) that correspond to the
**personal information** disclosed by the business to third parties for
the third parties' direct marketing purposes during the immediately
preceding calendar year.

   (2) In writing or by electronic mail, the names and addresses of
all of the third parties that received **personal information** from the

TU-MAKAEFF5412
Exhibit 4
-88-

business for the third parties' direct marketing purposes during the
preceding calendar year and, if the nature of the third parties'
business cannot reasonably be determined from the third parties'
name, examples of the products or services marketed, if known to the
business, sufficient to give the customer a reasonable indication of
the nature of the third parties' business.

   (b) (1) A business required to comply with this section shall
designate a mailing address, electronic mail address, or, if the
business chooses to receive requests by telephone or facsimile, a
toll-free telephone or facsimile number, to which customers may
deliver requests pursuant to subdivision (a). A business required to
comply with this section shall, at its election, do at least one of
the following:

   (A) Notify all agents and managers who directly supervise
employees who regularly have contact with customers of the designated
addresses or numbers or the means to obtain those addresses or
numbers and instruct those employees that customers who inquire about
the business's privacy practices or the business's compliance with

45

TU-MAKAEFF5413

Exhibit 4
-89-

this section shall be informed of the designated
addresses or numbers
or the means to obtain the addresses or numbers.
    (B) Add to the home page of its Web site a
link either to a page
titled "Your Privacy Rights" or add the words
"Your Privacy Rights"
to the home page's link to the business's privacy
policy. If the
business elects to add the words "Your Privacy
Rights" to the link to
the business's privacy policy, the words "Your
Privacy Rights" shall
be in the same style and size as the link to the
business's privacy
policy. If the business does not display a link
to its privacy policy
on the home page of its Web site, or does not
have a privacy policy,
the words "Your Privacy Rights" shall be written
in larger type than
the surrounding text, or in contrasting type,
font, or color to the
surrounding text of the same size, or set off
from the surrounding
text of the same size by symbols or other marks
that call attention
to the language. The first page of the link shall
describe a customer'
s rights pursuant to this section and shall
provide the designated
mailing address, e-mail address, as required, or
toll-free telephone

TU-MAKAEFF5414

Exhibit 4
-90-

number or facsimile number, as appropriate. If
the business elects to
add the words "Your California Privacy Rights" to
the home page's
link to the business's privacy policy in a manner
that complies with
this subdivision, and the first page of the link
describes a customer'
s rights pursuant to this section, and provides
the designated
mailing address, electronic mailing address, as
required, or
toll-free telephone or facsimile number, as
appropriate, the business
need not respond to requests that are not
received at one of the
designated addresses or numbers.

   (C) Make the designated addresses or numbers,
or means to obtain
the designated addresses or numbers, readily
available upon request
of a customer at every place of business in
California where the
business or its agents regularly have contact
with customers.

   The response to a request pursuant to this
section received at one
of the designated addresses or numbers shall be
provided within 30
days. Requests received by the business at other
than one of the
designated addresses or numbers shall be provided
within a reasonable

TU-MAKAEFF5415
Exhibit 4
-91-

period, in light of the circumstances related to how the request was
received, but not to exceed 150 days from the date received.

(2) A business that is required to comply with this section and
Section 6803 of Title 15 of the United States Code may comply with
this section by providing the customer the disclosure required by
Section 6803 of Title 15 of the United States Code, but only if the
disclosure also complies with this section.

(3) A business that is required to comply with this section is not
obligated to provide **information** associated with specific
individuals and may provide the **information** required by this section
in standardized format.

(c) (1) A business that is required to comply with this section is
not obligated to do so in response to a request from a customer more
than once during the course of any calendar year. A business with
fewer than 20 full-time or part-time employees is exempt from the
requirements of this section.

(2) If a business that is required to comply with this section
adopts and discloses to the public, in its privacy policy, a policy

TU-MAKAEFF5416

Exhibit 4
-92-

of not disclosing **personal information** of customers to third parties
for the third parties' direct marketing purposes unless the customer
first affirmatively agrees to that disclosure, or of not disclosing
the **personal information** of customers to third parties for the third
parties' direct marketing purposes if the customer has exercised an
option that prevents that **information** from being disclosed to third
parties for those purposes, as long as the business maintains and
discloses the policies, the business may comply with subdivision (a)
by notifying the customer of his or her right to prevent disclosure
of **personal information**, and providing the customer with a cost-free
means to exercise that right.

   (d) The following are among the disclosures not deemed to be
disclosures of **personal information** by a business for a third party's
direct marketing purposes for purposes of this section:

   (1) Disclosures between a business and a third party pursuant to
contracts or arrangements pertaining to any of the following:

   (A) The processing, storage, management, or organization of

TU-MAKAEFF5417

Exhibit 4
-93-

**personal information**, or the performance of services on behalf of the
business during which **personal information** is disclosed, if the
third party that processes, stores, manages, or organizes the
**personal information** does not use the **information** for a third party's
direct marketing purposes and does not disclose the **information** to
additional third parties for their direct marketing purposes.
    (B) Marketing products or services to customers with whom the
business has an established business relationship where, as a part of
the marketing, the business does not disclose **personal information**
to third parties for the third parties' direct marketing purposes.
    (C) Maintaining or servicing accounts, including credit accounts
and disclosures pertaining to the denial of applications for credit
or the status of applications for credit and processing bills or
insurance claims for payment.
    (D) Public record **information** relating to the right, title, or
interest in real property or **information** relating to property
characteristics, as defined in Section 408.3 of the Revenue and

50

TU-MAKAEFF5418
Exhibit 4
-94-

Taxation Code, obtained from a governmental agency or entity or from
a multiple listing service, as defined in Section 1087, and not
provided directly by the customer to a business in the course of an
established business relationship.

(E) Jointly offering a product or service pursuant to a written
agreement with the third party that receives the **personal
information**, provided that all of the following requirements are met:

(i) The product or service offered is a product or service of, and
is provided by, at least one of the businesses that is a party to
the written agreement.

(ii) The product or service is jointly offered, endorsed, or
sponsored by, and clearly and conspicuously identifies for the
customer, the businesses that disclose and receive the disclosed
**personal information.**

(iii) The written agreement provides that the third party that
receives the **personal information** is required to maintain the
confidentiality of the **information** and is prohibited from disclosing
or using the **information** other than to carry out the joint offering

51

TU-MAKAEFF5419

Exhibit 4
-95-

or servicing of a product or service that is the subject of the
written agreement.

(2) Disclosures to or from a consumer reporting agency of a
customer's payment history or other **information** pertaining to
transactions or experiences between the business and a customer if
that **information** is to be reported in, or used to generate, a
consumer report as defined in subdivision (d) of Section 1681a of
Title 15 of the United States Code, and use of that **information** is
limited by the federal Fair Credit Reporting Act (15 U.S.C. Sec. 1681
et seq.).

(3) Disclosures of **personal information** by a business to a third
party **financial** institution solely for the purpose of the business
obtaining payment for a transaction in which the customer paid the
business for goods or services with a check, credit card, charge
card, or debit card, if the customer seeks the **information** required
by subdivision (a) from the business obtaining payment, whether or
not the business obtaining payment knows or reasonably should know
that the third party **financial** institution has used the **personal**

52

TU-MAKAEFF5420

Exhibit 4

-96-

**information** for its direct marketing purposes.

    (4) Disclosures of **personal information** between a licensed agent and its principal, if the **personal information** disclosed is necessary to complete, effectuate, administer, or enforce transactions between the principal and the agent, whether or not the licensed agent or principal also uses the **personal information** for direct marketing purposes, if that **personal information** is used by each of them solely to market products and services directly to customers with whom both have established business relationships as a result of the principal and agent relationship.

    (5) Disclosures of **personal information** between a **financial** institution and a business that has a private label credit card, affinity card, retail installment contract, or cobranded card program with the **financial** institution, if the **personal information** disclosed is necessary for the **financial** institution to maintain or service accounts on behalf of the business with which it has a private label credit card, affinity card, retail installment contract, or cobranded card program, or to complete, effectuate,

TU-MAKAEFF5421

Exhibit 4
-97-

administer, or enforce customer transactions or transactions between
the institution and the business, whether or not the institution or
the business also uses the **personal information** for direct marketing
purposes, if that **personal information** is used solely to market
products and services directly to customers with whom both the
business and the **financial** institution have established business
relationships as a result of the private label credit card, affinity
card, retail installment contract, or cobranded card program.

   (e) For purposes of this section, the following terms have the
following meanings:

   (1) "Customer" means an individual who is a resident of California
who provides **personal information** to a business during the creation
of, or throughout the duration of, an established business
relationship if the business relationship is primarily for **personal,**
family, or household purposes.

   (2) "Direct marketing purposes" means the use of **personal**
**information** to solicit or induce a purchase, rental, lease, or
exchange of products, goods, property, or services directly to

TU-MAKAEFF5422

Exhibit 4
-98-

individuals by means of the mail, telephone, or electronic mail for
their **personal**, family, or household purposes. The sale, rental,
exchange, or lease of **personal information** for consideration to
businesses is a direct marketing purpose of the business that sells,
rents, exchanges, or obtains consideration for the **personal
information.** "Direct marketing purposes" does not include the use of
**personal information** (A) by bona fide tax exempt charitable or
religious organizations to solicit charitable contributions, (B) to
raise funds from and communicate with individuals regarding politics
and government, (C) by a third party when the third party receives
**personal information** solely as a consequence of having obtained for
consideration permanent ownership of accounts that might contain
**personal information**, or (D) by a third party when the third party
receives **personal information** solely as a consequence of a single
transaction where, as a part of the transaction, **personal information**
had to be disclosed in order to effectuate the transaction.

(3) "Disclose" means to disclose, release, transfer, disseminate,

TU-MAKAEFF5423

Exhibit 4
-99-

or otherwise communicate orally, in writing, or by electronic or any
other means to any third party.
    (4) "Employees who regularly have contact with customers" means
employees whose contact with customers is not incidental to their
primary employment duties, and whose duties do not predominantly
involve ensuring the safety or health of the business's customers. It
includes, but is not limited to, employees whose primary employment
duties are as cashier, clerk, customer service, sales, or promotion.
It does not, by way of example, include employees whose primary
employment duties consist of food or beverage preparation or service,
maintenance and repair of the business's facilities or equipment,
direct involvement in the operation of a motor vehicle, aircraft,
watercraft, amusement ride, heavy machinery or similar equipment,
security, or participation in a theatrical, literary, musical,
artistic, or athletic performance or contest.
    (5) "Established business relationship" means a relationship
formed by a voluntary, two-way communication between a business and a
customer, with or without an exchange of consideration, for the

TU-MAKAEFF5424
Exhibit 4
-100-

purpose of purchasing, renting, or leasing real
or **personal** property,
or any interest therein, or obtaining a product
or service from the
business, if the relationship is ongoing and has
not been expressly
terminated by the business or the customer, or if
the relationship is
not ongoing, but is solely established by the
purchase, rental, or
lease of real or **personal** property from a
business, or the purchase
of a product or service, and no more than 18
months have elapsed from
the date of the purchase, rental, or lease.
    (6) (A) The categories of **personal information**
required to be
disclosed pursuant to paragraph (1) of
subdivision (a) are all of the
following:
    (i) Name and address.
    (ii) Electronic mail address.
    (iii) Age or date of birth.
    (iv) Names of children.
    (v) Electronic mail or other addresses of
children.
    (vi) Number of children.
    (vii) The age or gender of children.
    (viii) Height.
    (ix) Weight.
    (x) Race.
    (xi) Religion.
    (xii) Occupation.
    (xiii) Telephone number.

TU-MAKAEFF5425
Exhibit 4
-101-

(xiv) Education.

(xv) Political party affiliation.

(xvi) Medical condition.

(xvii) Drugs, therapies, or medical products or equipment used.

(xviii) The kind of product the customer purchased, leased, or rented.

(xix) Real property purchased, leased, or rented.

(xx) The kind of service provided.

(xxi) Social security number.

(xxii) Bank account number.

(xxiii) Credit card number.

(xxiv) Debit card number.

(xxv) Bank or investment account, debit card, or credit card balance.

(xxvi) Payment history.

(xxvii) **Information** pertaining to the customer's creditworthiness, assets, income, or liabilities.

(B) If a list, description, or grouping of customer names or addresses is derived using any of these categories, and is disclosed to a third party for direct marketing purposes in a manner that permits the third party to identify, determine, or extrapolate any other **personal information** from which the list was derived, and that **personal information** when it was disclosed identified, described, or

58

TU-MAKAEFF5426

Exhibit 4

-102-

was associated with an individual, the categories set forth in this
subdivision that correspond to the **personal information** used to
derive the list, description, or grouping shall be considered
**personal information** for purposes of this section.

    (7) **"Personal information"** as used in this section means any
**information** that when it was disclosed identified, described, or was
able to be associated with an individual and includes all of the
following:

    (A) An individual's name and address.
    (B) Electronic mail address.
    (C) Age or date of birth.
    (D) Names of children.
    (E) Electronic mail or other addresses of children.
    (F) Number of children.
    (G) The age or gender of children.
    (H) Height.
    (I) Weight.
    (J) Race.
    (K) Religion.
    (L) Occupation.
    (M) Telephone number.
    (N) Education.
    (O) Political party affiliation.
    (P) Medical condition.
    (Q) Drugs, therapies, or medical products or equipment used.

TU-MAKAEFF5427
Exhibit 4
-103-

(R) The kind of product the customer purchased, leased, or rented.

(S) Real property purchased, leased, or rented.

(T) The kind of service provided.

(U) Social security number.

(V) Bank account number.

(W) Credit card number.

(X) Debit card number.

(Y) Bank or investment account, debit card, or credit card
balance.

(Z) Payment history.

(AA) **Information** pertaining to creditworthiness, assets, income,
or liabilities.

(8) "Third party" or "third parties" means one or more of the
following:

(A) A business that is a separate legal entity from the business
that has an established business relationship with a customer.

(B) A business that has access to a database that is shared among
businesses, if the business is authorized to use the database for
direct marketing purposes, unless the use of the database is exempt
from being considered a disclosure for direct marketing purposes
pursuant to subdivision (d).

(C) A business not affiliated by a common ownership or common

60

corporate control with the business required to comply with
subdivision (a).

(f) (1) Disclosures of **personal information** for direct marketing
purposes between affiliated third parties that share the same brand
name are exempt from the requirements of paragraph (1) of subdivision
(a) unless the **personal information** disclosed corresponds to one of
the following categories, in which case the customer shall be
informed of those categories listed in this subdivision that
correspond to the categories of **personal information** disclosed for
direct marketing purposes and the third party recipients of **personal
information** disclosed for direct marketing purposes pursuant to
paragraph (2) of subdivision (a):

(A) Number of children.
(B) The age or gender of children.
(C) Electronic mail or other addresses of children.
(D) Height.
(E) Weight.
(F) Race.
(G) Religion.
(H) Telephone number.
(I) Medical condition.
(J) Drugs, therapies, or medical products or equipment used.

TU-MAKAEFF5429

Exhibit 4
-105-

(K) Social security number.
(L) Bank account number.
(M) Credit card number.
(N) Debit card number.
(O) Bank or investment account, debit card, or credit card
balance.
(2) If a list, description, or grouping of customer names or
addresses is derived using any of these categories, and is disclosed
to a third party or third parties sharing the same brand name for
direct marketing purposes in a manner that permits the third party to
identify, determine, or extrapolate the **personal information** from
which the list was derived, and that **personal information** when it was
disclosed identified, described, or was associated with an
individual, any other **personal information** that corresponds to the
categories set forth in this subdivision used to derive the list,
description, or grouping shall be considered **personal information** for
purposes of this section.
(3) If a business discloses **personal information** for direct
marketing purposes to affiliated third parties that share the same
brand name, the business that discloses **personal information** for

TU-MAKAEFF5430

Exhibit 4
-106-

direct marketing purposes between affiliated
third parties that share
the same brand name may comply with the
requirements of paragraph
(2) of subdivision (a) by providing the overall
number of affiliated
companies that share the same brand name.

(g) The provisions of this section are
severable. If any provision
of this section or its application is held
invalid, that invalidity
shall not affect other provisions or applications
that can be given
effect without the invalid provision or
application.

(h) This section does not apply to a **financial**
institution that is
subject to the California **Financial Information**
Privacy Act
(Division 1.2 (commencing with Section 4050) of
the **Financial** Code)
if the **financial** institution is in compliance
with Sections 4052,
4052.5, 4053, 4053.5, and 4054.6 of the **Financial**
Code, as those
sections read when they were chaptered on August
28, 2003, and as
subsequently amended by the Legislature or by
initiative.

(i) This section shall become operative on
January 1, 2005.

TU-MAKAEFF5431

Exhibit 4
-107-

1798.84.   (a) Any waiver of a provision of this title is contrary to
public policy and is void and unenforceable.
   (b) Any customer injured by a violation of this title may
institute a civil action to recover damages.
   (c) In addition, for a willful, intentional, or reckless violation
of Section 1798.83, a customer may recover a civil penalty not to
exceed three thousand dollars ($3,000) per violation; otherwise, the
customer may recover a civil penalty of up to five hundred dollars
($500) per violation for a violation of Section 1798.83.
   (d) Unless the violation is willful, intentional, or reckless, a
business that is alleged to have not provided all the **information**
required by subdivision (a) of Section 1798.83, to have provided
inaccurate **information**, failed to provide any of the **information**
required by subdivision (a) of Section 1798.83, or failed to provide
**information** in the time period required by subdivision (b) of Section
1798.83, may assert as a complete defense in any action in law or
equity that it thereafter provided regarding the **information** that was
alleged to be untimely, all the **information**, or accurate

TU-MAKAEFF5432

Exhibit 4
-108-

**information**, to all customers who were provided incomplete or
inaccurate **information**, respectively, within 90 days of the date the
business knew that it had failed to provide the **information**, timely
**information**, all the **information**, or the accurate **information**,
respectively.

   (e) Any business that violates, proposes to violate, or has
violated this title may be enjoined.

   (f) A prevailing plaintiff in any action commenced under Section
1798.83 shall also be entitled to recover his or her reasonable
attorney's fees and costs.

   (g) The rights and remedies available under this section are
cumulative to each other and to any other rights and remedies
available under law.

In addition, the Trump University promises that students who follow their program (including the illegal teachings and practices) will reap back their investment.  In addition, they promised that the first month would produce $30,000 in returns equally about ½ of the total investment the Student paid for the services.  The Student had no former training in the Real Estate market and was relying on the promises of return on their investment for training and continuing services to replace the initial investment in the

TU-MAKAEFF5433

Exhibit 4
-109-

Trump University books, seminars, retreats, and ongoing mentor training.  In reality, because the books, seminars, retreats and ongoing mentor training required that the student violate California Codes in order to "potentially" make money in real estate transactions acting as a Real Estate Agent in Violation of DRE, Federal, and California Code in addition to Nevada Law, Arkansas Law, Florida Law, and New York Law.  This is clearly a violation of the code below again requiring that THE STUDENT BE REFUNDED ALL MONEY SPENT ON THE REAL ESTATE PROGRAM by TRUMP UNIVERSITY.

CALIFORNIA CODES
**CIVIL CODE**
SECTION 1812.200-1812.221

Broad Fraud Federal and State Provisions

## *Prohibited Acts and Practices*

Most state deceptive trade practices statutes include broad restrictions on "deceptive" or "unfair" trade practices. These states often include prohibitions against <u>FRAUDULENT</u> practices and unconscionable practices. The Federal Trade Commission, when interpreting the FTCA, does not require that the person committing an act of deception have the intent to deceive. Moreover, the FTC does not require that actual deception occur. The FTC merely requires that a party have the capacity to deceive or commit an unfair trade practice. If a business or individual has this capacity or tendency to

TU-MAKAEFF5434
Exhibit 4
-110-

deceive, the FTC under the FTCA may order the company to cease and desist the deceptive or unfair practice. State statutes similarly do not require that a company specifically intends to deceive, nor must a company always have knowledge that a statement is false to be liable for misrepresentations made to a consumer.

A consumer who has been victimized by a potential deceptive or unfair trade practice should consult the deceptive trade practice statute in that state, plus consult CASE LAW applying this statute, to determine whether he or she has a cause of action. In addition to the broad prohibition against deception, most state statutes also include a list of practices that are defined as deceptive. Under the Uniform Deceptive Trade Practices Act, if a business or person engages in the following, the action constitutes a deceptive trade practice:

- Passes off goods or services as those of another
- Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services
- Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another
- Uses deceptive representations or designations of geographic origin in connection with goods or services
- Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsor-ship, approval, status, affiliation, or connection that he does not have

67

TU-MAKAEFF5435

Exhibit 4
-111-

- Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or second-hand
- Represents that goods or services are of particular standard, quality, or grade, or that goods are of particular style or model, if they are of another
- Disparages the goods, services, or business of another by false or misleading misrepresentation of fact
- Advertises goods or services with intent not to sell them as advertised
- Advertises goods or services with intent not to supply reasonably expected public demand, unless advertisement discloses a limitation of quantity
- Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions
- Engages in any other conduct which similarly creates the likelihood of confusion or of misunderstanding

Most states include similar items in their lists of deceptive trade practices violations, even if those states have not adopted the uniform act. In addition, the FTC and many states prohibit other unfair practices, including the following:

- Unfair provisions in contracts of adhesion
- Coercive or high-pressure tactics in sales and collection efforts
- Illegal conduct
- Taking advantage of bargaining power of vulnerable groups
- Taking advantage of emergency situations

68

TU-MAKAEFF5436

Exhibit 4
-112-

- Unconscionable activities, including outrageous and offensive conduct by a business in the sale of goods or services

1812.200.   (a) The Legislature finds and declares that the widespread sale of seller assisted marketing plans, often connected with the sale of vending machines, racks or work-at-home paraphernalia, has created numerous problems in California for purchasers which are inimical to good business practice. Often purchasers of seller assisted marketing plans are individuals inexperienced in business matters who use their life savings to purchase the seller assisted marketing plan in the hope that they will earn enough money in addition to retirement income or salary to become or remain self-sufficient. Many purchasers are the elderly who are seeking a way to supplement their fixed incomes. The initial payment is usually in the form of a purchase of overpriced equipment or products. California purchasers have suffered substantial losses when they have failed to receive full and complete information regarding the seller assisted marketing plan, the amount of money they can reasonably expect to earn, and the previous experience of the seller assisted marketing plan seller. Seller assisted marketing plan sellers have a significant impact upon the economy and well-being of this state and its local communities. The provisions of his title relating to seller assisted marketing plans are necessary for the public welfare.

TU-MAKAEFF5437
Exhibit 4
-113-

(b) It is the intent of this title to provide each prospective
seller assisted marketing plan purchaser with the information necessary to make an intelligent decision regarding seller assisted marketing plans being offered; to safeguard the public against deceit and **financial** hardship; to insure, foster and encourage competition and fair dealing in the sale of seller assisted marketing plans by requiring adequate disclosure; to prohibit representations that tend to mislead; and to prohibit or restrict **unfair** contract terms. This title shall be construed liberally in order to achieve the foregoing purposes.


1812.201.  For the purposes of this title, the following definitions
shall apply:
   (a) "Seller assisted marketing plan" means any sale or lease or offer to sell or lease any product, equipment, supplies, or services that requires a total initial payment exceeding five hundred dollars ($500), but requires an initial cash payment of less than fifty thousand dollars ($50,000), that will aid a purchaser or will be used by or on behalf of the purchaser in connection with or incidental to beginning, maintaining, or operating a business when the seller assisted marketing plan seller has advertised or in any other manner solicited the purchase or lease of the seller assisted marketing plan and done any of the following acts:

TU-MAKAEFF5438
Exhibit 4
-114-

(1) Represented that the purchaser will earn, is likely to earn,
or can earn an amount in excess of the initial payment paid by the purchaser for participation in the seller assisted marketing plan.

(2) Represented that there is a market for the product, equipment,
supplies, or services, or any product marketed by the user of the product, equipment, supplies, or services sold or leased or offered for sale or lease to the purchaser by the seller, or anything, be it tangible or intangible, made, produced, fabricated, grown, bred, modified, or developed by the purchaser using, in whole or in part, the product, supplies, equipment, or services that were sold or leased or offered for sale or lease to the purchaser by the seller assisted marketing plan seller.

(3) Represented that the seller will buy back or is likely to buy
back any product made, produced, fabricated, grown, or bred by the purchaser using, in whole or in part, the product, supplies, equipment, or services that were initially sold or leased or offered for sale or lease to the purchaser by the seller assisted marketingplan seller.

(b) A "seller assisted marketing plan" shall not include:

(1) A security, as defined in the Corporate Securities Law of 1968
(Division 1 (commencing with Section 25000) of Title 4 of the **Corporations Code**), that has been qualified for sale by the Department of **Corporations**, or is exempt under Chapter 1

TU-MAKAEFF5439

Exhibit 4
-115-

(commencing with Section 25100) of Part 2 of Division 1 of Title 4 of the **Corporations Code** from the necessity to qualify.    (2) A franchise defined by the Franchise Investment Law (Division5 (commencing with Section 31000) of Title 4 of the **Corporations Code**) that is registered with the Department of **Corporations** or is exempt under Chapter 1 (commencing with Section 31100) of Part 2 of Division 5 of Title 4 of the **Corporations Code** from the necessity of registering.

   (3) Any transaction in which either the seller or purchaser or the lessor or lessee is licensed pursuant to and the transaction is governed by the Real Estate Law, Division 4 (commencing with Section
10000) of the Business and **Professions Code.**
   (4) A license granted by a general merchandise retailer that allows the licensee to sell goods, equipment, supplies, products, or services to the general public under the retailer's trademark, trade name, or service mark if all of the following criteria are satisfied:
   (A) The general merchandise retailer has been doing business in this state continually for five years prior to the granting of the
license.
   (B) The general merchandise retailer sells diverse kinds of goods,
equipment, supplies, products, or services.
   (C) The general merchandise retailer also sells the same goods,
equipment, supplies, products, or services directly to the general

TU-MAKAEFF5440

Exhibit 4
-116-

public.

(D) During the previous 12 months the general merchandise retailer' s direct **sales** of the same goods, equipment, supplies, products, or services to the public account for at least 50 percent of its yearly **sales** of these goods, equipment, supplies, products, or services made under the retailer's trademark, trade name, or service mark.

(5) A newspaper distribution system distributing newspapers as defined in Section 6362 of the Revenue and Taxation **Code.**

(6) A sale or lease to an existing or beginning business enterprise that also sells or leases equipment, products, supplies, or performs services that are not supplied by the seller and that the purchaser does not utilize with the equipment, products, supplies, or services of the seller, if the equipment, products, supplies, or services not supplied by the seller account for more than 25 percent of the purchaser's gross **sales.**

(7) The sale in the entirety of an "ongoing business." For purposes of this paragraph, an "ongoing business" means a business that for at least six months previous to the sale has been operated from a particular specific location, has been open for business to the general public, and has had all equipment and supplies necessary for operating the business located at that location. The sale shall be of the entire "ongoing business" and not merely a portion of theongoing business.

73

TU-MAKAEFF5441

Exhibit 4
-117-

(8) A sale or lease or offer to sell or lease to a purchaser (A)
who has for a period of at least six months previously bought
products, supplies, services, or equipment that were sold under the
same trademark or trade name or that were produced by the seller and,
(B) who has received on resale of the product, supplies, services,
or equipment an amount that is at least equal to the amount of the
initial payment.

(9) The renewal or extension of an existing seller assisted
marketing plan contract.

(10) A product distributorship that meets each of the following
requirements:

(A) The seller sells products to the purchaser for resale by the
purchaser, and it is reasonably contemplated that substantially all
of the purchaser's **sales** of the product will be at wholesale.

(B) The agreement between the parties does not require that the
purchaser pay the seller, or any person associated with the seller, a
fee or any other payment for the right to enter into the agreement,
and does not require the purchaser to buy a minimum or specified

74

TU-MAKAEFF5442

Exhibit 4
-118-

quantity of the products, or to buy products for a minimum or
specified period of time. For purposes of this paragraph, a "person
associated with the seller" means a person, including an individual
or a business entity, controlling, controlled by, or under the same
control as the seller.

(C) The seller is a corporation, partnership, limited liability
company, joint venture, or any other business entity.

(D) The seller has a net worth of at least ten million dollars
($10,000,000) according to audited **financial** statements of the seller
done during the 18 months preceding the date of the initial sale of
products to the purchaser. Net worth may be determined on a
consolidated basis if the seller is a subsidiary of another business
entity that is permitted by generally accepted accounting standards
to prepare **financial** statements on a consolidated basis and that
business entity absolutely and irrevocably agrees in writing to
guarantee the seller's obligations to the purchaser. The seller's net
worth shall be verified by a certification to the Attorney General

75

TU-MAKAEFF5443
Exhibit 4
-119-

from an independent certified public accountant that the audited
**financial** statement reflects a net worth of at least ten million
dollars ($10,000,000). This certification shall be provided within 30
days following receipt of a written request from the Attorney
General.

(E) The seller grants the purchaser a license to use a trademark
that is registered under federal law.

(F) It is not an agreement or arrangement encouraging a
distributor to recruit others to participate in the program and
compensating the distributor for recruiting others into the program
or for **sales** made by others recruited into the program.

(c) "Person" includes an individual, corporation, partnership,
limited liability company, joint venture, or any business entity.

(d) "Seller" means a person who sells or leases or offers to sell
or lease a seller assisted marketing plan and who meets either of the
following conditions:

(1) Has sold or leased or represents or implies that the seller
has sold or leased, whether in California or elsewhere, at least five

TU-MAKAEFF5444

Exhibit 4
-120-

seller assisted marketing plans within 24 months prior to a
solicitation.

(2) Intends or represents or implies that the seller intends to
sell or lease, whether in California or elsewhere, at least five
seller assisted marketing plans within 12 months following a
solicitation.

For purposes of this title, the seller is the person to whom the
purchaser becomes contractually obligated. A "seller" does not
include a licensed real estate broker or salesman who engages in the
sale or lease of a "business opportunity" as that term is used in
Sections 10000 to 10030, inclusive, of the Business and **Professions
Code,** or elsewhere in Chapter 1 (commencing with Section 10000),
Chapter 2 (commencing with Section 10050), or Chapter 6 (commencing
with Section 10450) of Part 1 of Division 4 of the Business and
**Professions Code.**

(e) "Purchaser" means a person who is solicited to become
obligated or does become obligated on a seller assisted marketing
plan contract.

(f) "Equipment" includes machines, all electrical devices, video

77

TU-MAKAEFF5445

Exhibit 4
-121-

or audio devices, molds, display racks, vending machines, coin
operated game machines, machines that dispense products, and display
units of all kinds.

(g) "Supplies" includes any and all materials used to produce,
grow, breed, fabricate, modify, develop, or make any product or item.

(h) "Product" includes any tangible chattel, including food or
living animals, that the purchaser intends to:

(1) Sell or lease.

(2) Use to perform a service.

(3) Resell or attempt to resell to the seller assisted marketing
plan seller.

(4) Provide or attempt to provide to the seller assisted marketing
plan seller or to any other person whom the seller suggests the
purchaser contact so that the seller assisted marketing plan seller
or that other person may assist, either directly or indirectly, the
purchaser in distributing, selling, leasing, or otherwise disposing
of the product.

(i) "Services" includes any assistance, guidance, direction, work,
labor, or services provided by the seller to initiate or maintain or
assist in the initiation or maintenance of a business.

78

TU-MAKAEFF5446

Exhibit 4
-122-

(j) "Seller assisted marketing plan contract"
or "contract" means
any contract or agreement that obligates a
purchaser to a seller.
(k) "Initial payment" means the total amount a
purchaser is
obligated to pay to the seller under the terms of
the seller assisted
marketing plan contract prior to or at the time
of delivery of the
equipment, supplies, products, or services or
within six months of
the purchaser commencing operation of the seller
assisted marketing
plan. If the contract sets forth a specific total
sale price for
purchase of the seller assisted marketing plan
which total price is
to be paid partially as a downpayment and then in
specific monthly
payments, the "initial payment" means the entire
total sale price.
(l) "Initial cash payment" or "downpayment"
means that portion of
the initial payment that the purchaser is
obligated to pay to the
seller prior to or at the time of delivery of
equipment, supplies,
products, or services. It does not include any
amount financed by or
for which financing is to be obtained by the
seller, or financing
that the seller assists in obtaining.

TU-MAKAEFF5447

Exhibit 4
-123-

(m) "Buy-back" or "secured investment" means any representation
that implies in any manner that the purchaser's initial payment is
protected from loss. These terms include a representation or
implication of any of the following:

(1) That the seller may repurchase either all or part of what it
sold to the purchaser.

(2) That the seller may at some future time pay the purchaser the
difference between what has been earned and the initial payment.

(3) That the seller may in the ordinary course buy from the
purchaser items made, produced, fabricated, grown, bred, modified, or
developed by the purchaser using, in whole or in part, the product,
supplies, equipment, or services that were initially sold or leased
to the purchaser by the seller.

(4) That the seller or a person to whom the seller will refer the
purchaser may in the ordinary course sell, lease, or distribute the
items the purchaser has for sale or lease.


1812.202.  (a) An offer to sell or offer to lease a seller assisted

TU-MAKAEFF5448

Exhibit 4
-124-

marketing plan shall occur in this state
whenever:
    (1) The offer to sell or offer to lease is
made in this state;
    (2) The purchaser resides in this state at the
time of the offer;
or
    (3) The offer to sell or offer to lease either
originates from
this state or is directed by the seller or lessor
to this state and
received at the place to which it is directed.
    (b) A sale or lease of a seller assisted
marketing plan shall
occur in this state whenever:
    (1) The offer to sell or offer to lease is
accepted in this state;
    (2) The purchaser resides in this state at the
time of the sale;
or
    (3) The acceptance is communicated to a seller
situated in this
state.


1812.203.  (a) The seller of any seller assisted
marketing plan
shall pay an annual fee in the amount of one
hundred dollars ($100)
and annually file with the Attorney General a
copy of the disclosure
statements required under Sections 1812.205 and
1812.206, as well as

81

TU-MAKAEFF5449
Exhibit 4
-125-

a list of the names and resident addresses of
those individuals who
sell the seller assisted marketing plan on behalf
of the seller. The
first filing shall be made at least 30 days prior
to placing any
advertisement or making any other representations
to prospective
purchasers. The first filing shall not be deemed
to be effective
until a notice of filing has been issued by the
Attorney General. The
seller may not make any advertisement or other
representation to
prospective purchasers until a notice of filing
has been issued by
the Attorney General. The disclosure statements
on file shall be
updated through a new filing and payment of a fee
in the amount of
thirty dollars ($30), whenever material changes
occur during the year
following the annual filing and the updated
filing shall include all
disclosure statements required by Sections
1812.205 and 1812.206 and
a list of the names and resident addresses of all
current
salespersons and all salespersons who have acted
on behalf of the
seller since the previous filing, whether the
annual filing or an
updated filing, indicating which salespersons are
still active and

TU-MAKAEFF5450
Exhibit 4
-126-

which no longer act on behalf of the seller. Each
seller of a seller
assisted marketing plan shall file the annual
renewal filing, whether
or not any update filings have been made, at
least 10 days before
one year has elapsed from the date of the notice
of filing issued by
the Attorney General, and at least 10 days before
the same date every
year thereafter. The annual renewal filing shall
include all
disclosure statements required by Sections
1812.205 and 1812.206 and
a list of the names and addresses of the
residences of all current
salespersons and all salespersons who have acted
on behalf of the
seller since the previous filing (whether the
annual filing or an
updated filing), indicating which salespersons
are still active and
which no longer act on behalf of the seller. The
annual renewal
filing fee shall be one hundred dollars ($100).
If an annual renewal
filing is not filed as required, the previous
filing shall be deemed
to have lapsed and the seller shall be prohibited
from placing any
seller assisted marketing plan advertisements or
making any other
representations to prospective purchasers of
seller assisted

TU-MAKAEFF5451
Exhibit 4
-127-

marketing plan until a new annual filing is made and a new notice of
filing has been issued by the Attorney General.

(b) The Attorney General may send by certified mail to the address
set forth in the seller assisted marketing plan filing an intent to
issue a stop order denying the effectiveness of or suspending or
revoking the effectiveness of any filing if he or she finds the
following:

(1) That there has been a failure to comply with any of the
provisions of this title.

(2) That the offer or sale of the seller assisted marketing plan
would constitute a misrepresentation to, or deceit of, or fraud on,
the purchaser.

(3) That any person identified in the filing has been convicted of
an offense under paragraph (1) of subdivision (b) of Section
1812.206, or is subject to an order or has had a **civil** judgment
entered against him or her as described in paragraphs (2) and (3) of
subdivision (b) of Section 1812.206, and the involvement of that
person in the sale or management of the seller assisted marketing
plan creates an unreasonable risk to prospective purchasers.

84

(c) The notice referred to shall include facts supporting a
suspension or revocation. If the seller assisted marketing plan does
not submit to the Attorney General, under penalties of perjury signed
by an owner or officer of the seller assisted marketing plan, within
10 days of receipt of the intent to issue a stop order, a refutation
of each and every supporting fact set forth in the notice, and each
fact not refuted shall be deemed, for purposes of issuance of the
order, an admission that the fact is true. If, in the opinion of the
Attorney General, and based upon supporting facts not refuted by the
seller assisted marketing plan, the plan is offered to the public
without compliance with this title, the Attorney General may order
the seller to desist and refrain from the further sale or attempted
sale of the seller assisted marketing plan unless and until a notice
of filing has been issued pursuant to this section. Until that time,
the registration shall be void. The order shall be in effect until
and unless the seller assisted marketing plan files a proceeding in
superior court pursuant to Section 1085 or 1094.5 of the **Code** of

TU-MAKAEFF5453

Exhibit 4
-129-

**Civil Procedure** or seeks other judicial relief
and serves a copy of
the proceeding upon the Attorney General.


1812.204.  In selling, leasing, or offering to
sell or lease a
seller assisted marketing plan in this state,
sellers shall not:
   (a) Use the phrase "buy-back" or "secured
investment" or similar
phrase orally or in writing when soliciting,
offering, leasing, or
selling a seller assisted marketing plan if the
"security" is the
value of the equipment, supplies, products or
services supplied by
the seller to the purchaser.
   (b) Use the phrase "buy-back" or "secured
investment" or similar
phrase orally or in writing when soliciting,
offering, leasing, or
selling a seller assisted marketing plan unless
there are no
restrictions or qualifications whatsoever
preventing or limiting a
purchaser from being able to invoke the "buy-
back" or "secured"
portion of the seller assisted marketing plan
contract at any time
the purchaser desires during the one-year period
following the

86

TU-MAKAEFF5454
Exhibit 4
-130-

contract date. Upon invocation of the "buy-back" or "security" provision, the minimum amount a purchaser shall be entitled to have returned to him is the full amount of his initial payment, less the amount actually received by him from the operation of the seller assisted marketing plan. The "amount actually received" means either the amount the purchaser actually obtained from the seller for any product resold to the seller or the amount of money the purchaser received for use of the purchaser's product, equipment, supplies or services, less any amount: (1) the purchaser has paid the owner or manager of the location at which the purchaser's products, equipment, supplies or services are placed; and (2) the purchaser has paid to obtain other items needed in order to sell, make, produce, fabricate, grow, breed, modify, or develop the item which the seller assisted marketing plan purchaser intends to sell, lease, distribute, or otherwise dispose of.

(c) Represent that a purchaser's initial payment is "secured" in any manner or to any degree or that the seller provides a "buy-back"

87

TU-MAKAEFF5455

Exhibit 4
-131-

arrangement unless the seller has, in conformity
with subdivision (b)
of Section 1812.214, either obtained a surety
bond issued by a
surety company admitted to do business in this
state or established a
trust account at a federally insured bank or
savings and loan
association located in this state.

(d) Represent that the seller assisted
marketing plan provides
income or earning potential of any kind unless
the seller has data to
substantiate the claims of income or earning
potential and discloses
this data to the purchaser at the time the claim
is made, if made in
person, or if made through written or telephonic
communication, at
the first in-person communication thereafter and,
when disclosed, the
data is left with the purchaser. A mathematical
computation of the
number of **sales** multiplied by the amount of
profit per sale to reach
a projected income figure is not sufficient data
to substantiate an
income or earning potential claim. Income or
earning potential claims
cannot be made or implied at all unless they are
based on the
experience of at least 10 purchasers from the
seller assisted

88

TU-MAKAEFF5456
Exhibit 4
-132-

marketing plan being offered. The data left by
the seller must, at a
minimum, disclose:
   (1) The length of time the seller has been
selling the particular
seller assisted marketing plan being offered;
   (2) The number of purchasers from the seller
known to the seller
to have made at least the same **sales**, income or
profits as those
represented; and
   (3) The percentage the number represents of
the total number of
purchasers from the seller.
   (e) Use the trademark, service mark, trade
name, logotype,
advertising or other commercial symbol of any
business which does not
either control the ownership interest in the
seller or accept
responsibility for all representations made by
the seller in regard
to the seller assisted marketing plan, unless the
nature of the
seller's relationship to such other business
entity is set forth
immediately adjacent to and in type size equal to
or larger than that
used to depict the commercial symbol of such
other business. If a
member of a trade association, the seller may use
the logo or
registration mark of the trade association in
advertisements and

TU-MAKAEFF5457

Exhibit 4
-133-

materials without regard to this subdivision.

   (f) Place or cause to be placed any advertisement for a seller
assisted marketing plan which does not include the actual business
name of the seller, and if it differs, the name under which the
seller assisted marketing plan is operated and the street address of
the principal place of business of the seller.


1812.205.  At the first in-person communication with a potential
purchaser or in the first written response to an inquiry by a
potential purchaser, whichever occurs first, wherein the seller
assisted marketing plan is described, the seller or his or her
representative shall provide the prospective purchaser a written
document, the cover sheet of which is entitled in at least 16-point
boldface capital letters "DISCLOSURE REQUIRED BY CALIFORNIA LAW."
Under the title shall appear in boldface of at least 10-point type,
the statement: "The State of California has not reviewed and does not
approve, recommend, endorse or sponsor any seller assisted marketing

TU-MAKAEFF5458

Exhibit 4
-134-

plan. The information contained in this disclosure has not been
checked by the state. If you have any questions about this purchase,
see an attorney or other **financial** adviser before you sign a contract
or agreement." Nothing shall appear on the cover sheet except the
title and the statement required above. The disclosure document shall
contain the following information:

(a) The name of the seller, the name under which the seller is
doing or intends to do business and the name of any parent or
affiliated company that will engage in business transactions with
purchasers or accept responsibility for statements made by the
seller.

(b) A statement of the initial payment to be paid by the purchaser
to the seller, or when not known, a statement of the approximate
initial payment charged, the amount of the initial payment to be paid
to a person inducing, directly or indirectly, a purchaser to
contract for the seller assisted marketing plan.

(c) A full and detailed description of the actual services the
seller will undertake to perform for the purchaser.

TU-MAKAEFF5459

Exhibit 4
-135-

(d)  When the seller makes any statement concerning earnings or
range of earnings that may be made through the seller assisted
marketing plan, he must comply with subdivision (d) of Section
1812.204 and set forth in complete form in this disclosure statement
the following:

"No guarantee of earnings or ranges of earnings can be made. The
number of purchasers who have earned through this business an amount
in excess of the amount of their initial payment is at least _____,
which represents ___ percent of the total number of purchasers of
this seller assisted marketing plan."

(e)  If training of any type is promised by the seller, a complete
description of the training and the length of the training.

(f)  If the seller promises services to be performed in connection
with the placement of the equipment, product or supplies at a
location from which they will be sold or used, the full nature of
those services as well as the nature of the agreements to be made
with the owner or manager of the location at which the purchaser's
equipment, product or supplies will be placed, must be set forth.

TU-MAKAEFF5460

Exhibit 4
-136-

(g) If the seller represents orally or in
writing when soliciting
or offering for sale or lease or selling or
leasing a seller assisted
marketing plan that there is a "buy-back"
arrangement or that the
initial payment is in some manner protected from
loss or "secured,"
the entire and precise nature of the "buy-back",
"protection" or
"security" arrangement shall be completely and
clearly disclosed.


1812.206.  At least 48 hours prior to the
execution of a seller
assisted marketing plan contract or agreement or
at least 48 hours
prior to the receipt of any consideration,
whichever occurs first,
the seller or his or her representative shall
provide to the
prospective purchaser in writing a document
entitled "SELLER ASSISTED
MARKETING PLAN INFORMATION SHEET." The seller may
combine the
information required under this section with the
information required
under Section 1812.205 and, if done, shall
utilize the single title
"DISCLOSURES REQUIRED BY CALIFORNIA LAW," and the
title page required

TU-MAKAEFF5461

Exhibit 4
-137-

by Section 1812.205. If a combined document is used, it shall be
given at the time required by Section 1812.205, provided that this
time meets the 48-hour test of this section. The information sheet
required by this section shall contain the following:

(a) The name of and the office held by the seller's owners,
officers, directors, trustees and general or limited partners, as the
case may be, and the names of those individuals who have management
responsibilities in connection with the seller's business activities.

(b) A statement whether the seller, any person identified in
subdivision (a), and any other company managed by a person identified
in subdivision (a):

(1) Has been convicted of a felony or misdemeanor or pleaded nolo
contendere to a felony or misdemeanor charge if the felony or
misdemeanor involved an alleged violation of this title, fraud,
embezzlement, fraudulent conversion or misappropriation of property.

(2) Has been held liable in a **civil** action by final judgment or
consented to the entry of a stipulated judgment if the **civil** action

TU-MAKAEFF5462
Exhibit 4
-138-

alleged a violation of this title, fraud,
embezzlement, fraudulent
conversion or misappropriation of property or the
use of untrue or
misleading representations in an attempt to sell
or dispose of real
or personal property or the use of **unfair,**
unlawful or deceptive
business **practices.**
   (3) Is subject to any currently effective
agreement, injunction,
or restrictive order, including, but not limited
to, a "cease and
desist" order, an "assurance of discontinuance,"
or other comparable
agreement or order, relating to business activity
as the result of an
action or investigation brought by a public
agency or department,
including, but not limited to, an action
affecting any vocational
license.
   The statements required by paragraphs (1), (2)
and (3) of this
subdivision shall set forth the terms of the
agreement, or the court,
the docket number of the matter, the date of the
conviction or of
the judgment and, when involved, the name of the
governmental agency
that initiated the investigation or brought the
action resulting in
the conviction or judgment.

TU-MAKAEFF5463

Exhibit 4
-139-

(4) Has at any time during the previous seven fiscal years filed
in bankruptcy, been adjudged a bankrupt, been reorganized due to
insolvency, or been a principal, director, officer, trustee, general
or limited partner, or had management responsibilities of any other
person, as defined in subdivision (b) of Section 1812.201, that has
so filed or was so adjudicated or reorganized, during or within one
year after the period that the individual held that position. If so,
the name and location of the person having so filed, or having been
so adjudged or reorganized, the date thereof, the court which
exercised jurisdiction, and the docket number of the matter shall be
set forth.

(c) The length of time the seller:

(1) Has sold seller assisted marketing plans.

(2) Has sold the specific seller assisted marketing plan being
offered to the purchaser.

(d) If the seller is required to secure a bond or establish a
trust account pursuant to the requirements of Section 1812.204, the
information sheet shall state either:

(1) "Seller has secured a bond issued by

TU-MAKAEFF5464

Exhibit 4
-140-

___,
                (name and address of surety company)


    a surety company admitted to do business in
this state. Before
signing a contract to purchase this seller
assisted marketing plan,
you should check with the surety company to
determine the bond's
current status," or
    (2) "Seller has deposited with the office of
the Attorney General
information regarding its trust account. Before
signing a contract to
purchase this seller assisted marketing plan, you
should check with
the Attorney General to determine the current
status of the trust
account."
    (e) A copy of a recent, not more than 12
months old, **financial**
statement of the seller, together with a
statement of any material
changes in the **financial** condition of the seller
from the date
thereof. That **financial** statement shall either be
audited or be under
penalty of perjury signed by one of the seller's
officers,
directors, trustees or general or limited
partners. The declaration
under penalty of perjury shall indicate that to
the best of the

97

TU-MAKAEFF5465

Exhibit 4
-141-

signatory's knowledge and belief the information
in the **financial**
statement is true and accurate; the date of
signature and the
location where signed shall also be indicated.
Provided, however,
that where a seller is a subsidiary of another
corporation which is
permitted by generally accepted accounting
standards to prepare
**financial** statements on a consolidated basis, the
above information
may be submitted in the same manner for the
parent if the
corresponding **financial** statement of the seller
is also provided and
the parent absolutely and irrevocably has agreed
to guarantee all
obligations of the seller.
   (f) An unexecuted copy of the entire seller
assisted marketing
plan contract.
   (g) For purposes of this section, "seller's
owners" means any
individual who holds an equity interest of at
least 10 percent in the
seller.


1812.207.  Every contract for sale or lease of a
seller assisted
marketing plan in this state shall be in writing
and shall be subject

TU-MAKAEFF5466
Exhibit 4
-142-

to the provisions of this title. A copy of the
fully completed
contract and all other documents the seller
requires the purchaser to
sign shall be given to the purchaser at the time
they are signed.

1812.208.  The purchaser shall have the right to
cancel a seller
assisted marketing plan contract for any reason
at any time within
three business days of the date the purchaser and
the seller sign the
contract. The notice of the right to cancel and
the procedures to be
followed when a contract is canceled shall comply
with Section
1812.209.

1812.209.  Every seller assisted marketing plan
contract shall set
forth in at least 10-point type or equivalent
size if handwritten,
all of the following:
    (a) The terms and conditions of payment
including the initial
payment, additional payments, and downpayment
required. If the

TU-MAKAEFF5467
Exhibit 4
-143-

contract provides for the seller to receive more than 20 percent of
the initial payment before delivery to the purchaser of the
equipment, supplies or products or services to be furnished under the
terms of the contract, the contract shall clearly set forth for the
escrow account established pursuant to subdivision (b) of Section
1812.210 and the name and address of the escrow account holder, as
well as the institution, branch, and account number of the escrow
account. If the contract provides for payment of any amount in excess
of 20 percent of the initial payment prior to delivery of the
equipment, supplies or products or services to be furnished under the
terms of the contract, the contract shall set forth that payment of
the amount in excess of 20 percent shall be by separate instrument
made payable to the escrow account.

   (b)  Immediately above the place at which the purchaser signs the
contract the following notification, in boldface type, of the
purchaser's right to cancel the contract:

   "You have three business days in which you may cancel this

TU-MAKAEFF5468

Exhibit 4
-144-

contract for any reason by mailing or delivering written notice to
the seller assisted marketing plan seller. The three business days
shall expire on

_____

   (last date to mail
   or deliver notice)
and notice of cancellation should be mailed or delivered to

_____.

(seller assisted marketing
  plan seller's name and
  business street address)
If you choose to mail your notice, it must be placed in the United
States mail properly addressed, first-class postage prepaid, and
postmarked before midnight of the above date. If you choose to
deliver your notice to the seller directly, it must be delivered to
him by the end of his normal business day on the above date. Within
five business days of receipt of the notice of cancellation, the
seller shall return to the purchaser all sums paid by the purchaser
to the seller pursuant to this contract. Within five business days
after receipt of all such sums, the purchaser shall make available at
his address or at the place at which they were caused to be located,

TU-MAKAEFF5469

Exhibit 4
-145-

all equipment, products and supplies provided to the purchaser
pursuant to this contract. Upon demand of the seller, such equipment,
products and supplies shall be made available at the time the
purchaser receives full repayment by cash, money order or certified
check."

(c) A full and detailed description of the acts or services the
seller will undertake to perform for the purchaser.

(d) The seller's principal business address and the name and the
address of its agent, other than the Secretary of State, in the State
of California authorized to receive service of process.

(e) The business form of the seller, whether corporate,
partnership or otherwise.

(f) The delivery date or, when the contract provides for a
staggered delivery of items to the purchaser, the approximate
delivery date of those products, equipment or supplies the seller is
to deliver to the purchaser to enable the purchaser to begin or
maintain his business and whether the products, equipment or supplies

TU-MAKAEFF5470

Exhibit 4
-146-

are to be delivered to the purchaser's home or business address or
are to be placed or caused to be placed by the seller at locations
owned or managed by persons other than the purchaser.

(g) A complete description of the nature of the "buy-back",
"protection", or "security" arrangement, if the seller has
represented orally or in writing when selling or leasing, soliciting
or offering a seller assisted marketing plan that there is a
"buy-back" or that the initial payment or any part of it is
"protected" or "secured."

(h) A statement which accurately sets forth a purchaser's right to
void the contract under the circumstances and in the manner set
forth in subdivisions (a) and (b) of Section 1812.215.

(i) The name of the supplier and the address of such supplier of
the products, equipment, or supplies the seller is to deliver to the
purchaser to enable the purchaser to begin or maintain his business.

103

TU-MAKAEFF5471

Exhibit 4
-147-

1812.210.   (a) No seller assisted marketing plan contract shall
require or entail the execution of any note or series of notes by the
purchaser which, when separately negotiated, will cut off as to
third parties any right of action or defense which the purchaser may
have against the seller.

   (b) If the contract referred to in Section 1812.209 provides for a
downpayment to be paid to the seller, the downpayment shall not
exceed 20 percent of the initial payment amount. In no event shall
the contract payment schedule provide for the seller to receive more
than 20 percent of the initial payment before delivery to the
purchaser, or to the place at which they are to be located, the
equipment, supplies or products, unless all sums in excess of 20
percent are placed in an escrow account as provided for in
subdivision (c) of Section 1812.214. Funds placed in an escrow
account shall not be released until the purchaser notifies the escrow
holder in writing of the delivery of such equipment, supplies or
products within the time limits set forth in the seller assisted

TU-MAKAEFF5472
Exhibit 4
-148-

marketing plan contract. Notification of delivery
by the purchaser to
the escrow holder shall not be unreasonably
withheld.


1812.211.  Any assignee of the seller assisted
marketing plan
contract or the seller's rights is subject to all
equities, rights
and defenses of the purchaser against the seller.


1812.212.  No seller shall make or authorize the
making of any
reference to its compliance with this title.


1812.213.  Every seller shall at all times keep
and maintain a
complete set of books, records and accounts of
seller assisted
marketing plan **sales** made by the seller. All
documents relating to
each specific seller assisted marketing plan sold
or leased shall be
maintained for four years after the date of the
seller assisted
marketing plan contract.

TU-MAKAEFF5473

Exhibit 4
-149-

1812.214.   (a) Every seller of seller-assisted marketing plans other
than a California corporation shall file with the Attorney General
an irrevocable consent appointing the Secretary of State or successor
in office to act as the seller's attorney to receive service or any
lawful process in any noncriminal suit, action or proceeding against
the seller or the seller's successor, executor or administrator,
which may arise under this title. When service is made upon the
Secretary of State, it shall have the same force and validity as if
served personally on the seller. Service may be made by leaving a
copy of the process in the office of the Secretary of State, but it
shall not be effective unless:
     (1) The plaintiff forthwith sends by first-class mail a notice of
the service upon the Secretary of State and a copy of the process to
the defendant or respondent at the last address on file with the
Attorney General; and
     (2) The plaintiff's affidavit of compliance with this section is
filed in the case on or before the return date of the process, if

TU-MAKAEFF5474

Exhibit 4
-150-

any, or within such further time as the court
allows.

(b) If, pursuant to subdivision (c) of Section
1812.204, a seller
must obtain a surety bond or establish a trust
account, the following
procedures apply:

(1) If a bond is obtained, a copy of it shall
be filed with the
Attorney General; if a trust account is
established, notification of
the depository, the trustee and the account
number shall be filed
with the Attorney General.

(2) The bond or trust account required shall
be in favor of the
State of California for the benefit of any person
who is damaged by
any violation of this title or by the seller's
breach of a contract
subject to this title or of any obligation
arising therefrom. The
trust account shall also be in favor of any
person damaged by these
**practices.**

(3) Any person claiming against the trust
account for a violation
of this title may maintain an action at law
against the seller and
the trustee. The surety or trustee shall be
liable only for actual
damages and not the punitive damages permitted
under Section

TU-MAKAEFF5475
Exhibit 4
-151-

1812.218. The aggregate liability of the trustee to all persons
damaged by a seller's violation of this title shall in no event
exceed the amount of the trust account.

(4) The bond or the trust account shall be in an amount equal to
the total amount of the "initial payment" section of all
seller-assisted marketing plan contracts the seller has entered into
during the previous year or three hundred thousand dollars
($300,000), whichever is less, but in no case shall the amount be
less than fifty thousand dollars ($50,000). The amount required shall
be adjusted twice a year, no later than the tenth day of the first
month of the seller's fiscal year and no later than the tenth day of
the seventh month of the seller's fiscal year. A seller need only
establish a bond or trust account in the amount of fifty thousand
dollars ($50,000) at the commencement of business and during the
first six months the seller is in business. By the tenth day of the
seller's seventh month in business, the amount of the bond or trust
account shall be established as provided for herein as if the seller
had been in business for a year.

108

TU-MAKAEFF5476

Exhibit 4
-152-

(c) If, pursuant to subdivision (b) of Section 1812.210, a seller
utilizes an escrow account to receive those portions of the
downpayment in excess of 20 percent of the initial payment before
delivery to the purchaser of the equipment, supplies or products or
services to be furnished under the terms of the contract, the
following procedures shall apply:

(1) The holder of the escrow account shall be independent of the
seller, and the seller shall not have any authority to direct
disbursements from the escrow account by the holder except upon
written notification by the purchaser to the holder of the escrow
account of the delivery of the equipment, supplies, or products as
required by and within the time limits set forth in the seller
assisted marketing plan contract.

(2) The name and address of the escrow account holder, the name of
the institution, the branch and account number of the escrow account
shall be reported to the Attorney General by the seller.

(3) Any person claiming against the escrow account for a violation
of this title may maintain an action at law against the seller and

109

TU-MAKAEFF5477

Exhibit 4
-153-

the escrow account holder. The escrow account
holder shall be liable
only for actual damages and not the punitive
damages permitted under
Section 1812.218. The aggregate liability of the
escrow account
holder to all persons damaged by a seller's
violation of this title
shall in no event exceed the amount of the escrow
account.


1812.215.   (a) If a seller uses any untrue or
misleading statements
to sell or lease a seller assisted marketing
plan, or fails to comply
with Section 1812.203, or fails to give the
disclosure documents or
disclose any of the information required by
Sections 1812.205 and
1812.206, or the contract does not comply with
the requirements of
this title, then within one year of the date of
the contract at the
election of the purchaser upon written notice to
the seller, the
contract shall be voidable by the purchaser and
unenforceable by the
seller or his assignee as contrary to public
policy and the purchaser
shall be entitled to receive from the seller all
sums paid to the

110

TU-MAKAEFF5478

Exhibit 4
-154-

seller when the purchaser is able to return all
equipment, supplies
or products delivered by the seller; when such
complete return cannot
be made, the purchaser shall be entitled to
receive from the seller
all sums paid to the seller less the fair market
value at the time of
delivery of the equipment, supplies or products
not returned by the
purchaser, but delivered by the seller. Upon the
receipt of such
sums, the purchaser shall make available to the
seller at the
purchaser's address or at the places at which
they are located at the
time the purchaser gives notice pursuant to this
section, the
products, equipment or supplies received by the
purchaser from the
seller. Provided, however, if the seller
inadvertently has failed to
make any of the disclosures required by Section
1812.205 or 1812.206
or the contract inadvertently fails to comply
with the requirements
of this title, the seller may cure such
inadvertent defect by
providing the purchaser with the correct
disclosure statements or
contract if at the time of providing such correct
disclosures or
contract the seller also informs the purchaser in
writing that

TU-MAKAEFF5479

Exhibit 4
-155-

because of the seller's error, the purchaser has an additional 15-day
period after receipt of the correct disclosures or contract within
which to cancel the contract and receive a full return of all moneys
paid in exchange for return of whatever equipment, supplies or
products the purchaser has. If the purchaser does not cancel the
contract within 15 days after receipt of the correct disclosures or
contract, he may not in the future exercise his right to void the
contract under this section due to such noncompliance with the
disclosure or contract requirements of this title.

(b) If a seller fails to deliver the equipment, supplies or
product within 30 days of the delivery date stated in the contract,
unless such delivery delay is beyond the control of the seller, then
at any time prior to delivery or within 30 days after delivery, at
the election of the purchaser upon written notice to the seller, the
contract shall be voidable by the purchaser and unenforceable by the
seller or his assignee as contrary to public policy.

The rights of the purchaser set forth in this section shall be

TU-MAKAEFF5480

Exhibit 4
-156-

cumulative to all other rights under this title
or otherwise.

1812.216.  (a) Any waiver by a purchaser of the
provisions of this
title shall be deemed contrary to public policy
and shall be void and
unenforceable. Any attempt by a seller to have a
purchaser waive
rights given by this title shall be a violation
of this title.
    (b) In any proceeding involving this title,
the burden of proving
an exemption or an exception from a definition is
upon the person
claiming it.

1812.217.  Any person, including, but not limited
to, the seller, a
salesman, agent or representative of the seller
or an independent
contractor who attempts to sell or lease or sells
or leases a seller
assisted marketing plan, who willfully violates
any provision of this
title or employs, directly or indirectly, any
device, scheme or
artifice to deceive in connection with the offer
or sale of any

TU-MAKAEFF5481

Exhibit 4
-157-

seller assisted marketing plan, or willfully engages, directly or
indirectly, in any act, practice or course of business which operates
or would operate as a fraud or deceit upon any person in connection
with the offer, purchase, lease or sale of any seller assisted
marketing plan shall, upon conviction, be fined not more than ten
thousand dollars ($10,000) for each unlawful transaction, or
imprisoned in the state prison, or imprisoned in county jail for not
more than one year, or be punished by both such fine and
imprisonment.


1812.218.   Any purchaser injured by a violation of this title or by
the seller's breach of a contract subject to this title or of any
obligation arising from the sale or lease of the seller assisted
marketing plan may bring any action for recovery of damages. Judgment
shall be entered for actual damages, plus reasonable attorney's fees
and costs, but in no case shall the award of damages be less than
the amount of the initial payment provided the purchaser is able to

TU-MAKAEFF5482
Exhibit 4
-158-

return all the equipment, supplies or products delivered by the
seller; when such complete return cannot be made, the minimum award
shall be no less than the amount of the initial payment less the fair
market value at the time of delivery of the equipment, supplies or
products that cannot be returned but were actually delivered by the
seller. An award, if the trial court deems it proper, may be entered
for punitive damages.


1812.219.  The provisions of this title are not exclusive. The
remedies provided herein for violation of any section of this title
or for conduct proscribed by any section of this title shall be in
addition to any other procedures or remedies for any violation or
conduct provided for in any other law.
   Nothing in this title shall limit any other statutory or any
common law rights of the Attorney General, any district attorney or
city attorney, or any other person. If any act or practice proscribed
under this title also constitutes a cause of action in common law or

TU-MAKAEFF5483
Exhibit 4
-159-

a violation of another statute, the purchaser may
assert such common
law or statutory cause of action under the
procedures and with the
remedies provided for in such other law.


1812.220.  If any provision of this act or if any
application
thereof to any person or circumstance is held
unconstitutional, the
remainder of the title and the application of
such provision to other
persons and circumstances shall not be affected
thereby.


1812.221.  (a) When a deposit has been made in
lieu of bond pursuant
to paragraph (1) of subdivision (b) of Section
1812.214 and Section
995.710 of the **Code** of **Civil Procedure,** the
person asserting a claim
against the deposit shall, in lieu of the
provisions of Section
996.430 of the **Code** of **Civil Procedure,** establish
the claim by
furnishing evidence to the Attorney General of a
money judgment
entered by a court together with evidence that
the claimant is a

116

TU-MAKAEFF5484
Exhibit 4
-160-

person described in paragraph (2) of subdivision
(b) of Section
1812.214.
   (b) When a person has completely established
the claim with the
Attorney General, the Attorney General shall
forthwith review and
approve the claim and enter the date of approval
thereon. The claim
shall be designated an "approved claim. "
   (c) When the first claim against a particular
deposit account has
been approved, it shall not be paid until the
expiration of a period
of 240 days after the date of its approval by the
Attorney General.
Subsequent claims which are approved by the
Attorney General within
the same 240-day period shall similarly not be
paid until the
expiration of the 240-day period. Forthwith upon
the expiration of
the 240-day period, the Attorney General shall
pay all approved
claims from that 240-day period in full unless
there are insufficient
funds in the deposit account in which case each
approved claim shall
be paid a proportionate amount to exhaust the
deposit account.
   (d) When the Attorney General approves the
first claim against a
particular deposit account after the expiration
of a 240-day period,

TU-MAKAEFF5485
Exhibit 4
-161-

the date of approval of that claim shall begin a new 240-day period
to which subdivision (c) shall apply with respect to the amount
remaining in the deposit account.

(e) After a deposit account is exhausted, no further claims shall
be paid by the Attorney General. Claimants who have had their claims
paid in full or in part pursuant to subdivisions (c) and (d) shall
not be required to make a contribution back to the deposit account
for the benefit of other claimants.

(f) When a deposit has been made in lieu of bond, the amount of
the deposit shall not be subject to attachment, garnishment, or
execution with respect to an action or judgment against the seller,
other than as to an amount as no longer needed or required for the
purpose of this title which would otherwise be returned to the seller
by the Attorney General.

Civil Code Section

1770.   (a) The following **unfair** methods of competition and **unfair** or
deceptive acts or **practices** undertaken by any person in a
transaction intended to result or which results in the sale or lease

TU-MAKAEFF5486
Exhibit 4
-162-

of goods or services to any consumer are
unlawful:

(1) Passing off goods or services as those of
another.

(2) Misrepresenting the source, sponsorship,
approval, or
certification of goods or services.

(3) Misrepresenting the affiliation,
connection, or association
with, or certification by, another.

(4) Using deceptive representations or
designations of geographic
origin in connection with goods or services.

(5) Representing that goods or services have
sponsorship,
approval, characteristics, ingredients, uses,
benefits, or quantities
which they do not have or that a person has a
sponsorship, approval,
status, affiliation, or connection which he or
she does not have.

(6) Representing that goods are original or
new if they have
deteriorated unreasonably or are altered,
reconditioned, reclaimed,
used, or secondhand.

(7) Representing that goods or services are of
a particular
standard, quality, or grade, or that goods are of
a particular style
or model, if they are of another.

(8) Disparaging the goods, services, or
business of another by
false or misleading representation of fact.

119

TU-MAKAEFF5487

Exhibit 4
-163-

(9) Advertising goods or services with intent not to sell them as advertised.

(10) Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.

(11) Advertising furniture without clearly indicating that it is unassembled if that is the case.

(12) Advertising the price of unassembled furniture without clearly indicating the assembled price of that furniture if the same furniture is available assembled from the seller.

(13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

(15) Representing that a part, replacement, or repair service is needed when it is not.

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

TU-MAKAEFF5488
Exhibit 4
-164-

(17) Representing that the consumer will receive a rebate,
discount, or other economic benefit, if the earning of the benefit is
contingent on an event to occur subsequent to the consummation of
the transaction.

(18) Misrepresenting the authority of a salesperson,
representative, or agent to negotiate the final terms of a
transaction with a consumer.

(19) Inserting an unconscionable provision in the contract.

(20) Advertising that a product is being offered at a specific
price plus a specific percentage of that price unless (A) the total
price is set forth in the advertisement, which may include, but is
not limited to, shelf tags, displays, and media advertising, in a
size larger than any other price in that advertisement, and (B) the
specific price plus a specific percentage of that price represents a
markup from the seller's costs or from the wholesale price of the
product. This subdivision shall not apply to in-store advertising by
businesses which are open only to members or cooperative
organizations organized pursuant to Division 3 (commencing with

121

TU-MAKAEFF5489
Exhibit 4
-165-

Section 12000) of Title 1 of the **Corporations Code** where more than 50
percent of purchases are made at the specific price set forth in the
advertisement.

(21) Selling or leasing goods in violation of Chapter 4
(commencing with Section 1797.8) of Title 1.7.

(22) (A) Disseminating an unsolicited prerecorded message by
telephone without an unrecorded, natural voice first informing the
person answering the telephone of the name of the caller or the
organization being represented, and either the address or the
telephone number of the caller, and without obtaining the consent of
that person to listen to the prerecorded message.

(B) This subdivision does not apply to a message disseminated to a
business associate, customer, or other person having an established
relationship with the person or organization making the call, to a
call for the purpose of collecting an existing obligation, or to any
call generated at the request of the recipient.

(23) The home solicitation, as defined in subdivision (h) of
Section 1761, of a consumer who is a senior citizen where a loan is
made encumbering the primary residence of that consumer for the

TU-MAKAEFF5490
Exhibit 4
-166-

purposes of paying for home improvements and
where the transaction is
part of a pattern or practice in violation of
either subsection (h)
or (i) of Section 1639 of Title 15 of the United
States **Code** or
subsection (e) of Section 226.32 of Title 12 of
the **Code** of Federal
Regulations.

    A third party shall not be liable under this
subdivision unless
(A) there was an agency relationship between the
party who engaged in
home solicitation and the third party or (B) the
third party had
actual knowledge of, or participated in, the
**unfair** or deceptive
transaction. A third party who is a holder in due
course under a home
solicitation transaction shall not be liable
under this subdivision.

    (24) (A) Charging or receiving an unreasonable
fee to prepare,
aid, or advise any prospective applicant,
applicant, or recipient in
the procurement, maintenance, or securing of
public social services.

    (B) For purposes of this paragraph, the
following definitions
shall apply:

    (i) "Public social services" means those
activities and functions
of state and local government administered or
supervised by the State

TU-MAKAEFF5491
Exhibit 4
-167-

Department of Health Care Services, the State
Department of Public
Health, or the State Department of Social
Services, and involved in
providing aid or services, or both, including
health care services
and medical assistance, to those persons who,
because of their
economic circumstances or social condition, are
in need of that aid
or those services and may benefit from them.
    (ii) "Unreasonable fee" means a fee that is
exorbitant and
disproportionate to the services performed.
Factors to be considered,
when appropriate, in determining the
reasonableness of a fee, are
based on the circumstances existing at the time
of the service and
shall include, but not be limited to, all of the
following:
    (I) The time and effort required.
    (II) The novelty and difficulty of the
services.
    (III) The skill required to perform the
services.
    (IV) The nature and length of the professional
relationship.
    (V) The experience, reputation, and ability of
the person
providing the services.
    (C) Paragraph (24) shall not apply to
attorneys licensed to

TU-MAKAEFF5492
Exhibit 4
-168-

practice law in California, who are subject to
the California Rules
of Professional Conduct and to the mandatory fee
arbitration
provisions of Article 13 (commencing with Section
6200) of Chapter 4
of Division 3 of the Business and **Professions
Code**, when the fees
charged or received are for providing
representation in
administrative agency appeal proceedings or court
proceedings for
purposes of procuring, maintaining, or securing
public social
services on behalf of a person or group of
persons.
　　(b) (1) It is an **unfair** or deceptive act or
practice for a
mortgage broker or lender, directly or
indirectly, to use a home
improvement contractor to negotiate the terms of
any loan that is
secured, whether in whole or in part, by the
residence of the
borrower and which is used to finance a home
improvement contract or
any portion thereof. For purposes of this
subdivision, "mortgage
broker or lender" includes a finance lender
licensed pursuant to the
California Finance Lenders Law (Division 9
(commencing with Section
22000) of the **Financial Code**), a residential
mortgage lender licensed

125

TU-MAKAEFF5493
Exhibit 4
-169-

pursuant to the California Residential Mortgage Lending Act
(Division 20 (commencing with Section 50000) of the **Financial Code**),
or a real estate broker licensed under the Real Estate Law (Division
4 (commencing with Section 10000) of the Business and **Professions Code**).

    (2) This section shall not be construed to either authorize or
prohibit a home improvement contractor from referring a consumer to a
mortgage broker or lender by this subdivision. However, a home
improvement contractor may refer a consumer to a mortgage lender or
broker if that referral does not violate Section 7157 of the Business
and **Professions Code** or any other provision of law. A mortgage
lender or broker may purchase an executed home improvement contract
if that purchase does not violate Section 7157 of the Business and
**Professions Code** or any other provision of law. Nothing in this
paragraph shall have any effect on the application of Chapter 1
(commencing with Section 1801) of Title 2 to a home improvement
transaction or the financing thereof.

126

TU-MAKAEFF5494
Exhibit 4
-170-

127

TU-MAKAEFF5495
Exhibit 4
-171-