1

2

3

4

5

6          **UNITED STATES DISTRICT COURT**

7          **SOUTHERN DISTRICT OF CALIFORNIA**

8

9    TARLA MAKAEFF, on Behalf of          Case No. 10cv0940 GPC (WVG)
     Herself and All Others Similarly
10   Situated,                            **ORDER GRANTING
                                          PLAINTIFF/COUNTER
11                     Plaintiffs,        DEFENDANT'S SPECIAL
                                          MOTION TO STRIKE
12        vs.                             DEFENDANT/
                                          COUNTERCLAIMANT'S
13                                        DEFAMATION
     TRUMP UNIVERSITY, LLC, (aka          COUNTERCLAIM;
14   Trump Entrepreneur Initiative) a New
     York Limited Liability Company,
15   DONALD J. TRUMP, and DOES 1          [Dkt. Nos. 14, 282, 294.]
     through 50, inclusive,
16
                       Defendants.
17

18   ─────────────────────────────
     TRUMP UNIVERSITY, LLC,
19
                      Counterclaimant,
20
          vs.
21
     TARLA MAKAEFF, and ROES 1
22   through 10, inclusive,

23                 Counter Defendant.
     ─────────────────────────────
24

25                        **INTRODUCTION**

26        Before the Court is Plaintiff/Counter Defendant Tarla Makaeff's ("Makaeff")

27   and Defendant/Counterclaimant Trump University, LLC's ("Trump University")

28   supplemental briefing regarding Makaeff's special motion to strike Trump

University's counterclaim, (Dkt. No. 14). (Dkt. Nos. 294; 300; 312.) The Court held a hearing on the matter on June 13, 2014. Amber Eck, Esq. and Helen Zeldes, Esq. appeared on behalf of the moving party, defamation Defendant Tarla Makaeff, who was present in court. Nancy Stagg, Esq. and Benjamin Morris, Esq. appeared on behalf of defamation Plaintiff Trump University, LLC. Having considered the Ninth Circuit's mandate, (Dkt. No. 282), the Parties' submissions, oral argument by counsel, the applicable law, and for the reasons set forth below, the Court hereby GRANTS Makaeff's special motion to strike Trump University's counterclaim. (Dkt. No. 14.)

## **BACKGROUND**

### I.    Factual History

Between August 2008 and June 2009, Makaeff attended approximately seven real estate investing and finance seminars, workshops, and classes hosted by Trump University and spent a total of approximately $60,000 on the programs. (Dkt. Nos. 4 at 9; 14-1 at 11.)

Although Trump University asserts Makaeff was satisfied with the services Trump University provided to her, noting that Makaeff frequently provided excellent reviews of the programs, (Dkt. No. 4 at 7–8), Makaeff states the Trump University programs she attended were unsatisfactory. (Dkt. No. 14-1 at 10–11.) Specifically, Makaeff alleges the programs were shorter than advertised, (Dkt. No. 14-1 at 10–11), she was provided only a toll-free telephone number instead of a one-year mentorship of "expert, interactive support," (Dkt. No. 14-1 at 10), and her Trump University mentors were largely unavailable and offered no practical advice when she did speak with them, (Dkt. No. 14-1 at 11).

In addition, Makaeff alleges she was told by Trump University staff to raise her credit card limits to purchase real estate, but once she did, she was pressured by Trump University staff to instead use her elevated credit to purchase the Trump Gold Elite seminar for $34,995. (Dkt. No. 1 at 9.) Makaeff also claims she was told

by Trump University staff that her first real estate transaction after signing up for the Trump Gold Elite program would earn her approximately the amount she spent on the Trump Gold Elite program, which it did not. (Dkt. No. 1 at 17.)

Additionally, Makaeff alleges Trump University instructed her to engage in illegal real estate practices, such as posting advertising "bandit signs" on the sides of roadways.[1] (Dkt. No. 1 at 18.) On June 18, 2009, Makaeff received a letter from the Orange County District Attorney's Office informing her that posting bandit signs in California without lawful permission could subject her to fines, a misdemeanor charge, and up to six months in jail. (Dkt. No. 294 at 8.)

Furthermore, Makaeff alleges that in 2008, Trump University Coaching provided Makaeff's personal financial information to HSBC and opened a credit card on Makaeff's behalf without her authorization. (Dkt. No. 294 at 26.) During a phone interview with a Trump University Coaching representative, Makaeff was told she was pre-approved for an HSBC/Prosper Learning credit card. (Dkt. No. 294 at 26–27.) Makaeff testified to believing that because HSBC had sufficient information to pre-approve her for a credit card, Trump University Coaching provided Makaeff's personal and financial information to HSBC without Makaeff's authorization. (Dkt. No. 294 at 27.)

In April 2009, approximately seven months after Makaeff began attending Trump University seminars, Makaeff wrote to Trump University stating she was having significant personal financial difficulties and requested a full refund. (Dkt. No. 4 at 8.) At that time, Trump University explained to Makaeff it could not offer her a refund "after she participated in every program and received the information, skill set, and mentoring she paid for." (Dkt. No. 4 at 8.)

---

[1] Trump University argues it specifically instructed Makaeff to seek local legal counsel to ensure that the signs are permissible in her community before she posts them. (Dkt. No. 300 at 10 n.5.) According to Trump University, notice was given to Makaeff in the form on a handout in a binder provided to her eight or nine months before she posted the signs. (Dkt. No. 300 at 10 n.5.) The form stated, "Make sure you check with the city first because you could have your signs removed or a potential fine." (Dkt. No. 300-2, Ex. 1 at 3.)

On or around September 10, 2009, Makaeff sent a four-page letter to Bank of America ("BofA"), her credit card company, complaining about Trump University and requesting a refund of the money she spent on Trump University programs. (Dkt. No. 294-2, Ex. 1.) In this letter, Makaeff accused Trump University of engaging in, among other wrongs: (1) grand larceny; (2) identify theft; and the (3) unsolicited taking of personal credit and trickery into opening credit cards without approval. Specifically, Makaeff stated:

> I want to make you aware that the HSBC bank has separated (March 17, 2009) from any relation with any Trump University, Trump Institute, Trump subsidiaries such as Prosper Inc., and any party related to the aforementioned because of cases such as mine in which the aforementioned companies participated in the dispersal of my personal financial information and opening of credit between a multitude of entitles including banks regulated by the FDIC. This type of fraudulent sales techniques are governed by state and federal protection consumers such as me against this outright Fraud, **Grand Larceny**, and **Identity Theft** by Trump University/Profit Publishing Group.
> . . .
>
> I was tricked into signing up for this with my information was taken under high pressure sales tactics clearly in violation of State and Federal Statutes protecting consumers from high pressure sales tactics, bait and switch, **unsolicited taking of personal credit and trickery into opening credit cards without MY approval or understanding**.

(Dkt. No. 294-2, Ex. 1 at 4–5) (emphases added). Trump University refers to the these three statements collectively as the "Specific Crimes."

Makaeff additionally lodged written complaints against Trump University with the Better Business Bureau Serving Metropolitan New York ("BBB"), the New York Attorney General's office, the New York State Education Department, the New York Bureau of Consumer Protection, the New York District Attorney, the FBI, the FTC, and on an Internet message board. (Dkt. No. 14-1 at 11.) Makaeff did not accuse Trump University of the Specific Crimes in these complaints.

## II.   Procedural History

Makaeff brought a class action lawsuit against Trump University on April 30, 2010. (Dkt. No. 1.) On May 26, 2010, Trump University filed a defamation counterclaim against Makaeff, alleging Makaeff "published statements to third parties

about Trump University orally, in writing and on the Internet that are per se defamatory, including many completely spurious accusations of actual crimes." (Dkt. No. 4 at 3.) Trump University alleges Makaeff's defamatory statements were a substantial factor in causing actual and significant economic damages amounting to or exceeding $1,000,000. (Dkt. No. 4 at 9–12.)

On June 30, 2010, Makaeff filed a special motion to strike Trump University's counterclaim on the ground the counterclaim is a strategic lawsuit against public participation, or "SLAPP suit," with the purpose of intimidating Makaeff into dropping her class action lawsuit. (Dkt. No. 14-1 at 8.) In her anti-SLAPP special motion to strike Trump University's counterclaim, filed pursuant to California Code of Civil Procedure section 425.16, Makaeff argued that Trump University is a public figure and in order to prevail on its defamation counterclaim, it must prove Makaeff acted with actual malice when she made the Specific Crimes statements. (Dkt. No. 14-1 at 21–24.)

On August 23, 2010, Judge Irma E. Gonzalez denied Makaeff's special motion to strike Trump University's counterclaim . (Dkt. No. 24.) Specifically, Judge Gonzalez found that Trump University is not a public figure and therefore did not need to prove Makaeff acted with actual malice when she made the Specific Crimes statements. (Dkt. No. 24 at 6–8.) Makaeff's subsequent motion for reconsideration of her special motion to strike Trump University's counterclaim was denied by Judge Gonzalez on September 20, 2010, on the basis that there was no intervening change in the law or any clear error committed by the court that would support reconsideration of the original motion. (Dkt. Nos. 31; 40 at 3.)

On January 3, 2011, Makaeff appealed Judge Gonzalez's August 23, 2010 order to the Ninth Circuit, (Dkt. No. 43), which reversed and remanded the order on April 17, 2013. Makaeff v. Trump University, LLC, 715 F.3d 254, 271(2013). Although the Ninth Circuit agreed with Judge Gonzalez's conclusion that Makaeff had met her initial burden of showing Trump University's defamation claim arose from an act in furtherance of Makaeff's free speech rights, and that Makaeff's statements were not

protected by California's litigation privilege, the Ninth Circuit reversed Judge Gonzalez's holding that Trump University was not a public figure. See id. In particular, the court of appeals found that Trump University is a limited-purpose public figure and therefore must show by clear and convincing evidence that Makaeff made her statements with actual malice. Id. at 270. The court remanded the matter for further factual findings as to whether Trump University can meet this burden. Id. at 271-72. In addition, the court of appeals granted Makaeff's unopposed request that the issue of appellate attorney's fees be transferred to the district court. (Dkt. No. 284.)

Pursuant to this Court's direction, (Dkt. No. 283), the parties have filed supplemental briefs on the issue of whether Makaeff made the statements at issue with actual malice. (Dkt. Nos. 294; 300; 312).

## DISCUSSION

### I.    Special Motion to Strike

SLAPP suits are lawsuits that " 'masquerade as ordinary lawsuits' but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003) (quoting Wilcox v. Superior Court, 27 Cal. App. 4th 809, 816 (1994), overruled on other grounds, Equilon Enter. v. Consumer Cause, Inc., 29 Cal. 4th 53 (2002)). The Ninth Circuit allows the use of motions to strike state law claims arising under California's anti-SLAPP statute, California Code of Civil Procedure section 425.16, in federal court. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003); but see Makaeff v. Trump University, LLC, 715 F.3d 254, 275 (2013) (Paez, J., concurring) ("California's anti-SLAPP statute is 'quintessentially procedural,' and its application in federal court has created a hybrid mess that now resembles neither the Federal Rules nor the original state statute.").

To prevail on an anti-SLAPP motion to strike, a party must satisfy a two-step inquiry. Vess, 317 F.3d at 1110. First, the defamation defendant moving to strike a SLAPP suit "must make an initial prima facie showing that the defamation plaintiff's

1  suit arises from an act in furtherance of the defendant's rights of petition or free

2  speech." Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F. Supp. 2d

3  1127, 1128 (N.D. Cal. 1999).

4       Once the defendant makes this initial prima facie showing, the burden shifts to

5  the defamation plaintiff (Trump University) to show with a "reasonable probability"

6  it will prevail on the merits of the challenged claim. Cal. Code Civ. P. § 425.16(b)(1);

7  Coulter v. Murrell, No. 10-cv-102-IEG (NLS), 2010 WL 1289070, at *4 (S.D. Cal.

8  Mar. 30, 2010). The defamation plaintiff must therefore demonstrate that the

9  defamation defendant (1) published a statement of fact that (2) is false; (3) is

10  defamatory; (4) is unprivileged; and (5) has a natural tendency to injure or cause

11  special damage. Taus v. Loftus, 40 Cal. 4th 683, 720 (2007) (citing 5 Witkin, Summary

12  of Cal. Law (10th ed. 2005) Torts, § 529). In cases where the defamation plaintiff is a

13  public figure, the plaintiff must also show by clear and convincing evidence that the

14  defendant made her statements with actual malice. Gertz v. Robert Welch, Inc., 418

15  U.S. 323, 342 (1974).

16       Here, the Ninth Circuit affirmed Judge Gonzalez's finding that defamation

17  defendant Makaeff has made an initial prima facie showing that Trump University's

18  defamation counterclaim arises out of Makaeff's protected rights.[2] See Makaeff, 715

19  F.3d at 263. Thus, the burden now shifts to Trump University to demonstrate a

20  reasonable probability of succeeding on the merits of its defamation claim. Because the

21  Ninth Circuit determined that Trump University was a "limited public figure," id. at

22

23       [2]The Court notes that, for the first time at oral argument, Trump University raised
    the argument that Makaeff has not made this prima facie showing as to the letter she
    sent to Bank of America seeking a refund. The Court rejects this argument for two
24  reasons. First, Trump University did not raise this issue in its briefing, and the Court
    need not consider issues raised for the first time during oral argument. See Visto Corp.
25  v. Sproqit Techs., Inc., 413 F. Supp. 2d 1073, 1088 n.8 (N.D. Cal. 2006); see also In
    re Pacific Pictures Corp., 679 F.3d 1121, 1130 (9th Cir. 2012). Second, the Ninth
26  Circuit already rejected Trump University's argument, stating that the judges had
    "doubts about Trump University's claim that Makaeff wrote her letters to her bank and
27  the Better Business Bureau with purely private motives" and affirming Judge
    Gonzalez's finding that Makaeff has made her initial prima facie showing. Makaeff v.
28  Trump University, LLC, 715 F.3d 254, 263 (9th Cir. 2013). The Ninth Circuit's
    determination is binding on this Court.

270, this Court must first determine if Makaeff made her allegedly defaming statements with "actual malice"; if Trump University cannot make such a showing, "it has no possibility of success on the merits" and the Court must grant Makaeff's motion to strike. Id. at 265. As directed by the Ninth Circuit, the Court may "assume the falsity of the statements [at issue] and proceed directly to the actual malice inquiry." Id. at 270 n. 13.

### A.   Actual Malice

#### 1.   Legal Standard

To prove actual malice, a defamation plaintiff must show by clear and convincing evidence that the defendant knew her statements were false at the time she made them, or that she acted with reckless disregard of the truth or falsity of the statements made. Gertz v. Robert Welch, Inc., 418 U.S. 323, 328 (1974). The clear and convincing standard "requires that the evidence be such as to command the unhesitating assent of every reasonable mind." Rosenaur v. Scherer, 105 Cal. Rptr. 2d 674, 684 (Ct. App. 2001). "A defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice." Christian Research Inst. v. Alnor, 55 Cal. Rptr. 3d 600, 612 (Ct. App. 2007) (citing Reader's Digest Assn v. Superior Ct., 208 Cal. Rptr. 137, 145–46 (1984)).

Actual malice is a subjective standard. See St. Amant v. Thompson, 390 U.S. 727, 731 (1968). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [her] publication." Id.

Actual malice "has nothing to do with bad motive or ill will," and "may not be inferred alone from evidence of personal spite, ill will or intention to injure on the part of the writer." Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 666 n.7 (1989). However, in appropriate cases, factors such as "[a] failure to investigate, anger and hostility toward the plaintiff, reliance upon sources known to be unreliable, or

known to be biased against the plaintiff . . . may . . . indicate that the publisher [herself] had serious doubts regarding the truth of [her] publication." <u>Reader's Digest</u>, 208 Cal. Rptr. at 145-46 (citations omitted).

## 2.    Discussion

Although Trump University's defamation counterclaim alleges Makaeff published at least twenty defamatory statements to various third parties in various forums, (Dkt. No. 4 at ¶ 22), Trump University focuses its showing of "actual malice" for the purposes of the present motion to three statements made by Makaeff in her letter to Bank of America. (Dkt. No. 300 at 5 n.1.) In particular, Trump University claims in making her accusations that Trump University committed "grand larceny," "identity theft," and "unsolicited taking of personal credit and trickery into opening credit cards without approval" (collectively, the "Specific Crimes"), Makaeff demonstrated knowledge of falsity or reckless disregard for falsity of the statements sufficient to meet the "actual malice" standard. (<u>Id.</u> at 14.) Trump University makes four main arguments in favor of a finding of "actual malice": (1) that Makaeff's testimony shows Makaeff knew the Specific Crimes accusations were false when she made them; (2) Makaeff's actions were inconsistent with the actions of someone who genuinely believed the Specific Crimes had been committed; (3) an inference of actual malice arises from Makaeff's anger and hostility toward Trump University; and (4) Makaeff's failure to investigate her Specific Crimes accusations demonstrates actual malice. The Court addresses each argument in turn.

### a.    Knowledge of Falsity

Trump University first argues it can demonstrate Makaeff acted with actual malice because Makaeff's Specific Crimes statements were fabricated and Makaeff knowingly and selectively published these false statements only to her credit card company in order to seek a refund. (Dkt. No. 300 at 8, 15.) In support of its claim, Trump University argues Makaeff's Specific Crimes statements are false, as Makaeff herself admitted in both a July 2010 declaration and an April 2012 deposition. (Dkt.

No. 300 at 7) (citing Dkt. No. 17-2, Makaeff Decl. at 5) (declaring that the specific crimes statements were not in relation to Trump University); (Dkt. No. 300 at 8) (citing Dkt. No. 300-2 Ex. 3, Makaeff Depo. at 775) (Makaeff responded "no" when asked "Did Trump University ever open a credit card in your name without your approval?").

Trump University claims this case is similar to Nguyen-Lam v. Cao, 171 Cal. App. 4th 858 (2009), in which the California Court of Appeals upheld a trial court's conclusion that malice could be inferred "where, for example, a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call." Id. at 869 (citing Christian Research Institute v. Alnor, 148 Cal. App. 4th 71, 85 (2007)) (internal quotation marks omitted). Trump University argues Makaeff, like the defamation defendant in Nguyen-Lam, "has no 'place to go for her belief' that Trump University illegally took the property of anyone, stole anyone's identity, or opened any credit card without approval." (Dkt. No. 300 at 15-16.)

The Court finds Nguyen-Lam distinguishable from the present matter. In that case, the California Court of Appeals considered a defamation defendant who had learned about the defamation plaintiff, then a candidate for a public position, only through media reports yet accused her of being a Communist. 171 Cal. App. 4th at 868-69. The evidence in Nguyen-Lam indicated the defamation defendant had no personal knowledge of the defamation outside of the media reports, none of which had mentioned Communism, and thus had no basis for his claim that the defamation plaintiff was in fact a Communist. Id. at 869.

Here, Makaeff's "Specific Crimes" statements to her bank were made in the context of a detailed four-page letter setting forth Makaeff's personal experiences with Trump University and the interactions that formed the bases for her accusations. Furthermore, although Makaeff has since testified that Trump University did not commit the Specific Crimes, Makaeff has set forth many reasons why she believed entities related to Trump University, including Profit Publishing Group, were

1   "indistinguishable in her mind" when she made the Specific Crimes accusations.[3] (Dkt.

2   No. 294 at 18.) In particular, Makaeff argues: "(1) both entities' names contain the

3   words 'Trump University'; (2) payment was made to 'Trump University'; (3) Trump

4   University Coaching personnel, Justin Kramer, said he was with 'Trump University's

5   Educational Department'; (4) Trump University Coaching shared the same name, logo,

6   coat of arms and company branding [as Trump University]; (5) there was a link to

7   'Trump University Coaching' on the Trump University website; and (6) the Trump

8   Entities routinely promoted each other to students." (Dkt. No. 294 at 18, 27.) In

9   addition, Makaeff asserts Trump University "pitched" "Childers Financial Group aka

10  Childers Finley, PA, aka Profit Publishing Group" to Trump University students as

11  "experts in corporate structure, real estate structure, [and] the legalities of such

12  transactions" who would help them create real estate entities such as limited liability

13  companies and trusts to assist them in protecting their assets while investing in real

14  estate transactions. (Dkt. No. 294-2 at 14.)

15      Having reviewed Makaeff's deposition testimony, the Court finds that Makaeff

16  has consistently testified that at the time she wrote her letter to Bank of America, she

17  referred to the "Trump Entities" "all together," (Dkt. No. 300-2, Martin Decl. Ex. 2,

18  Makaeff 2012 Depo at 601:7-8), "comingled . . . in [her] writing," (Dkt. No. 300-2,

19  Martin Decl. Ex. 3, Makaeff 2014 Depo at 774:22-23). As such, the Court concludes

20  that while Trump University has introduced evidence that Makaeff no longer believes

21  Trump University (rather than the affiliated entities) committed the Specific Crimes in

22  question, Trump University has failed to show that Makaeff "fabricated" her

23  allegations. Accordingly, the Court finds Trump University's evidence of Makaeff's

24  current knowledge of the falsity of her statements to Bank of America fail to

25  demonstrate with clear and convincing evidence that Makaeff made the Specific

26  Crimes statements with actual malice.

27

28      [3]These entities included: (i) Trump University Coaching; (ii) Trump Institute; (iii) Profit Publishing Group; and (iv) Prosper, Inc. (Dkt. No. 294 at 18.)

b.     **Contradictory Statements**

Second, Trump University argues Makaeff's actions contradict her claim that she believed her accusations were true. Specifically, Trump University argues: (1) Makaeff did not object when Trump University Coaching informed her that she was pre-approved for a credit card, (Dkt. No. 300 at 8) (citing Dkt. No. 300-2, Ex. 3, at 774; 762); and (2) Makaeff's subsequent actions were "inconsistent with the actions of someone who genuinely believed that the Specific Crimes were committed," (Dkt. No. 300 at 16).

As to Makaeff's failure to protest Trump University Coaching's opening of a credit card for her in 2008, Trump University claims Makaeff "knew in 2008 . . . that a credit card was being opened for her, she consented to it being opened, and agreed to charging the Profit courses on the new card." (Dkt. No. 300 at 11) (citing Dkt. No. 300-1, Ex. 3 at 773; 762). Trump University further argues Makaeff did not immediately contact her banks or credit card companies, cancel the credit card, or even hang up the phone when she found out the credit card had been opened. (Dkt. No. 300 at 9; 16.). According to Trump University, it was not until Makaeff tried to get her money back that Makaeff "concocted a story of wrongdoing" regarding the credit card. (Dkt. No. 300 at 17).

As to Makaeff's subsequent actions, Trump University argues Makaeff admitted at her February 10, 2014 deposition that "if Trump University had in fact committed the Specific Crimes it would have been important for her to have warned other consumers." (Dkt. No. 300 at 9) (citing Dkt. No. 300-2, Ex. 3, at 831–32). Despite this admission, Makaeff admitted she did not accuse, and cannot recall accusing, Trump University of the Specific Crimes to any government agency with which she filed a complaint, (Dkt. No. 300 at 10) (citing Dkt. No. 300-2, Ex. 3, at 826–27), or to other consumers, (Dkt. No. 300 at 9) (citing Dkt. No. 300-2, Ex. 3, at 830).

The Court finds that neither alleged inconsistency demonstrates by clear and convincing evidence that Makaeff made the Specific Crimes statements to Bank of

America with actual malice. Throughout Makaeff's deposition testimony and briefing, Makaeff explains that she did not publish the Specific Crimes statements until October 2009 because her negative experiences with Trump University culminated on June 18, 2009, when she received a letter from the Orange County District Attorney's Office regarding the illegal posting of bandit signs. (See Dkt. No. 294 at 8.) According to Makaeff, this letter "pulled back the curtain" and allowed her "to begin to realize that she had been had" by Trump University. (Id. at 8.) Makaeff asserts that after she received the letter from the District Attorney, she took time to reflect on her experiences with Trump University and conduct her own investigations, which included gathering information from other former Trump University students, talking to friends and family, and doing online research. (Id. at 8–9.) Makaeff then made the decision to expose Trump University's "scam and recover her money." (Id. at 9.)

Furthermore, as to Makaeff's failure to repeat the Specific Crimes statements in other writings, Makaeff asserts that after she sent the letter to Bank of America, Trump University Coaching said it would provide a refund in connection with the HSBC charge and subsequently resolved the matter. (Dkt. No. 312 at 13) (citing Dkt. No. 312-1, Jensen Decl. Ex. 17, Makaeff Depo. at 603:1-7.) Makaeff asserts her additional letters to the Better Business Bureau and draft letters to the New York Attorney General and District Attorney are all dated after Trump University Coaching issued a refund for the HSBC credit card. In these letters, she only accused Trump University of engaging in "unlawful" conduct, but not the Specific Crimes. (Dkt. No. 312 at 13.)

As the Ninth Circuit found,

> The gist of Makaeff's complaint about Trump University is that it constitutes an elaborate scam. As the recent Ponzi-scheme scandals involving one-time financial luminaries like Bernard Madoff and Allen Stanford demonstrate, victims of con artists often sing the praises of their victimizers until the moment they realize they have been fleeced. Makaeff's initial enthusiasm for Trump University's program is not probative of whether she acted with actual malice.

Makaeff v. Trump University, LLC, 715 F.3d 254, 271 (9th Cir. 2013). Similarly, the Court finds Makaeff's initial consenting to the charging of additional Profit courses on

1    a new credit card not probative of whether she acted with actual malice. As Makaeff

2    testified in her deposition, she "agreed to sign up for the program after three hours of

3    being – using reverse psychology and being berated . . ." (Dkt. No. 294-2, Jensen Decl.

4    Ex. 7, Makaeff Depo at 23:22-24.) The Court finds Makaeff's explanation consistent

5    with her claim to be a victim of a scam and of identity theft and therefore her initial

6    consent to the charges is not probative of whether she acted with actual malice when

7    later complaining about the charges to her bank.

8         Likewise, the Court rejects Trump University's claim that if Makaeff believed

9    she was a victim of the Specific Crimes, Makaeff would have reported the crimes to the

10   authorities and warned other consumers. As an initial matter, the Court notes "actual

11   malice" is a subjective, not objective standard. See St. Amant v. Thompson, 390 U.S.

12   727, 731 (1968). Arguments regarding what a reasonable person would do in Makaeff's

13   shoes are not evidence of whether Makaeff made the statements in question with actual

14   malice. Id. at 731 ("[R]eckless conduct is not measured by whether a reasonably

15   prudent man would have published, or would have investigated before publishing.

16   There must be sufficient evidence to permit the conclusion that the [defamation]

17   defendant in fact entertained serious doubts as to the truth of his publication.").

18        Furthermore, both parties have submitted substantial evidence that Makaeff

19   wrote many complaint letters, complained about Trump University on the internet, and

20   brought the present lawsuit to address what Makaeff appears to perceive as various and

21   substantial wrongs committed by Trump University. Although the three "Specific

22   Crimes" statements focused on by Trump University only appear in Makaeff's letter

23   to Bank of America, the letter contains many other allegations of wrongdoing by

24   Trump University over the course of its four pages. The Court is not convinced by

25   Trump University's argument that the Specific Crimes were made with actual malice

26   because they differ in kind from Makaeff's other serious charges of fraud, bait and

27   switch, "illegal predatory high pressure closing tactics," and "enrolling students for

28   new credit cards they cannot afford." (Dkt. No. 294-2, Jensen Decl. Ex. 1.) The Court

1   therefore does not find Makaeff's failure to report the three Specific Crimes to the

2   authorities probative of whether she made the Specific Crimes statements with actual

3   malice.

### c.    Hostility and Motive

5        Third, Trump University points to evidence of Makaeff's anger and hostility

6   toward Trump University, as well as a motive to get a refund, as evidence of actual

7   malice. (Dkt. No. 300 at 17) (citing Christian Research Institute v. Alnor, 148 Cal.

8   App. 4th 71, 84-85 (2007) ("anger and hostility toward the plaintiff . . . may, in an

9   appropriate case, indicate that the publisher himself had serious doubts regarding the

10  truth of his publication"); Harte-Hanks Commc'ns, Inc., 491 U.S. 657, 669 ("it cannot

11  be said that evidence concerning motive or care never bears any relation to the actual

12  malice inquiry"); Widener v. Pacific Gas & Elec. Co., 75 Cal. App. 3d 415, 436 (1977)

13  (finding an engineer's motive of wanting to suppress the making of a film and his anger

14  with the film's producer "sufficient evidence from which the jury could have found that

15  [the engineer] knew [his libelous statement about the producer] was false, or was

16  recklessly indifferent as to whether his statement was accurate or not")). Trump

17  University asserts anger and hostility is evident in Makaeff's letters, in an Internet

18  posting entitled *20 Ways to Trump Them*, in an e-mail to her then-boyfriend where she

19  took credit for a negative New York Daily News article about Trump University, and

20  in her statement to Trump University that she was "willing to go to whatever lengths

21  necessary" to get her money back from Trump University. (Dkt. No. 300 at 18.) Trump

22  University further argues Makaeff only made the Specific Crimes statements because

23  she knew if she made grandiose allegations of specific criminal conduct to her bank,

24  she would have a better chance of getting a refund than if she simply explained what

25  really happened – that "she was not satisfied with the services provided to her." (Dkt.

26  No. 300 at 13.) Trump University grounds this argument in the following testimony

27  from Makaeff's February 10, 2014 deposition:

28        I'm a writer and this—I write certain ways and this is how I write, and I
          felt like if I included anything to do with the law, which I felt these laws

were broken, the bank would understand that this is an important issue, and they need to look into this matter.

(Dkt. No. 300 at 13) (citing Dkt. No. 300-2, Ex. 3, at 771–72).

However, as the court in Christian Research Institute recognized, although a defamation plaintiff "may rely on inferences drawn from circumstantial evidence to show actual malice," 148 Cal. App. 4th at 84 (citing Reader's Digest Ass'n v. Superior Court, 37 Cal. 3d 224, 257-58 (1984)), the "clear and convincing" burden of proving actual malice "requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind." 148 Cal. App. 4th at 84 (citing Copp v. Paxton, 45 Cal. App. 4th 829, 846 (1996)) (internal quotation marks omitted). Thus, the court held that a court "may consider a defendant's anger or hostility toward a plaintiff in determining the presence of malice only to the extent it impacts the defendant's *actual belief* concerning the truthfulness of the publication." Id. at 91 (emphasis in original). The Christian Research Institute court therefore found evidence that a former employee's harboring of ill will toward the defamation plaintiff failed to demonstrate a connection between the alleged ill will and the former employee's belief about the truth of his publication. Id. ("That [defendant's] objectivity and judgment may have been impaired by hostility toward plaintiffs does not by itself demonstrate malice.").

Here, Trump University's only argument linking Makaeff's palpable hostility toward Trump University to the Specific Crimes statements made in her letter to Bank of America is a purported motive to accuse Trump University of exaggerated crimes in order to obtain a refund. However, even in the quoted statement from her deposition testimony, above, Makaeff qualified the testimony with the clause, "which I felt these laws were broken." (Dkt. No. 300-2, Ex. 3, at 771-72.) This qualification indicates that Makaeff did not fabricate the Specific Crimes charges solely to obtain a refund, but rather sought a refund because she believed the Specific Crimes had been committed. Furthermore, as discussed above, the sentences in which the Specific Crimes

accusations appear in Makaeff's letter to Bank of America also charge Trump University with "outright fraud," "high pressure sales tactics," and "bait and switch." The fact that these surrounding statements have formed the basis of Makaeff's class action lawsuit against Trump University casts doubt on Trump University's claim that Makaeff fabricated crime allegations solely to obtain a refund. Accordingly, the Court finds that Trump University's evidence of Makaeff's hostility toward Trump University and motive to obtain a refund fail to demonstrate actual malice by clear and convincing evidence.

### d.   Failure to Investigate

Finally, Trump University argues that although a failure to investigate will not alone support a finding of actual malice, Makaeff's failure to investigate the Specific Crimes supports the finding that Makaeff acted with actual malice. (Dkt. No. 300 at 19–20) (citing Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 692 (1989)). Trump University argues despite Makaeff's claims that she (1) spent time doing online research and investigating all of her statements before making them; (2) spoke with other students and reviewed complaints posted online; and (3) talked to loved ones, friends, and attorneys, (Dkt. No. 300 at 19) (citing Dkt. No. 294 at 11), Makaeff "did not ask her lawyer if her allegations of Specific Crimes were accurate and she did not research the meaning of the legal terms she was using." (Dkt. No. 300 at 19) (citing 300-2, Ex. 3 at 754; 768-69; 795-96; 799–800). Trump University argues that by failing to consult her lawyer before accusing Trump University of the Specific Crimes, Makaeff made a conscious decision to avoid the truth. (Dkt. No. 300 at 20) (citing Harte-Hanks, 491 U.S. at 692 (holding that a purposeful avoidance of the truth "is in a different category" from a failure to investigate)).

Trump University relies heavily on Harte-Hanks to support its claim that a "jury could support a finding of malice based on Makaeff's failure to consult with her counsel or do any research whatsoever before accusing Trump University of the

1   Specific Crimes." (Dkt. No. 300 at 20.) In <u>Harte-Hanks</u>, the California Supreme

2   Court affirmed a finding that the evidence supported a finding of actual malice

3   where a newspaper defamation defendant relied on a third-party source without

4   interviewing a key witness or listening to a tape recording provided by the

5   defamation plaintiff. 491 U.S. at 692. The evidence showed that, prior to

6   publication, the published charges had been "denied not only by [the defamation

7   plaintiff], but also by five other witnesses." <u>Id.</u> at 691.

8        The Court finds <u>Harte-Hanks</u> distinguishable. Here, Makaeff did not rely on a

9   third-party source that she failed to investigate. To the contrary, the evidence shows

10  that Makaeff based her claims on her personal experiences with Trump University

11  rather than charges made by unreliable third-party sources with indicia of

12  unreliability. Furthermore, Trump University has failed to demonstrate that

13  sufficient evidence permits "the conclusion that [Makaeff] actually had a 'high

14  degree of awareness of . . . probable falsity.'" <u>Harte-Hanks</u>, 491 U.S. at 688 (citing

15  <u>Garrison v. Louisiana</u>, 379 U.S. 64, 74 (1964)). As the Supreme Court recognized in

16  <u>Harte Hanks</u>, "failure to investigate before publishing, even when a reasonably

17  prudent person would have done so, is not sufficient to establish reckless

18  disregard." <u>Id.</u> Finding Trump University has failed to demonstrate, with clear and

19  convincing evidence, that Makaeff made the Specific Crime statements with actual

20  malice, the Court GRANTS Makaeff's motion to strike Trump University's

21  defamation counterclaim pursuant to California's anti-SLAPP statute. Cal. Civ.

22  Proc. Code § 425.16(c)(1).

23  **II.    Attorney's Fees**

24       California's anti-SLAPP statute allows a prevailing defamation defendant to

25  recover attorney's fees and costs, unless the anti-SLAPP motion is frivolous or

26  intended to cause unnecessary delay. Cal. Civ. Proc. Code § 425.16(c)(1). As stated

27  above, the Ninth Circuit remanded the issue of appellate attorney's fees to this

28  Court. Accordingly, Makaeff shall file a bill of fees and costs detailing the

1   reasonable attorney's fees and costs incurred to bring the original anti-SLAPP

2   motion, appeal, and supplemental briefing. Trump University shall have the

3   opportunity to file objections to the bill of costs.

4                                    **CONCLUSION**

5          For the reasons set forth above, **IT IS HEREBY ORDERED** that Makaeff's

6   Special Motion to Strike Trump University's Counterclaim is **GRANTED**. (Dkt.

7   No. 14.)

8          **IT IS FURTHER ORDERED** that on or before July 3, 2014,

9   Plaintiff/Counter-Defendant Makaeff shall file with the Court substantiation of the

10  reasonable attorney's fees and costs associated with bringing the Motion to Strike,

11  related appeal, and supplemental briefing. Any objections to Plaintiff/Counter-

12  Defendant Makaeff's bill of fees and costs shall be filed in writing and served on

13  Plaintiff/Counter-Defendant no later than July 18, 2014.

14         **IT IS SO ORDERED.**

15  DATED:  June 16, 2014

16                                    _____
                                      HON. GONZALO P. CURIEL
17                                    United States District Judge

18

19

20

21

22

23

24

25

26

27

28