UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF *et al.*,<br><br>                Plaintiffs,<br>v.<br>TRUMP UNIVERSITY, LLC, *et al.*,<br><br>                Defendants. | Civil No.  10-CV-0940-GPC (WVG)<br><br>ORDER ON DISCOVERY DISPUTE |

## I. INTRODUCTION

### A. INSTANT DISPUTE

Pending before the Court is the parties' Joint Statement for Determination of Discovery Dispute.  (Doc. No. 330.)  Plaintiffs[1] ask the Court for an Order to compel Defendants[2] to provide responses to Plaintiffs' Fifth Set of Interrogatories (ROGs), which consists of ROG Nos. 32-35.  (Doc. No. 330-2.)  Defendants argue that Plaintiffs had exceeded their allotted number of ROGs prior to serving Set Five.  (Doc. No. 330 at 7-8.)

The Court has reviewed the parties' Joint Statement, all of the ROGs at issue, several of the other relevant documents filed in this case, and listened to the arguments asserted by

---

[1] The named Plaintiffs are Tarla Makaeff, Brandon Keller, and Ed Oberkrom.

[2] The Defendants are Trump University, LLC ("Trump University") and Mr. Donald Trump ("Mr. Trump").

the parties during the Discovery Conference.  For the reasons set forth below, the Court hereby SUSTAINS Defendants' objections to Plaintiffs' Fifth Set of ROGs.

## B. BACKGROUND

On June 20, 2014, the Court was notified of a discovery dispute in this case, and counsel stated that they had met and conferred in person.  The Court ordered the parties to file a Joint Statement about the dispute by July 2, 2014.  (Doc. No. 329.)  The Court also set a telephonic Discovery Conference for July 7, 2014, at 9:30 a.m.  Id.

On July 2, 2014, in compliance with the Court's Order, the parties filed a Joint Statement for Determination of Discovery Dispute.  (Doc. No. 330.)  On July 7, 2014, at 9:30 a.m., the Court convened a telephonic Discovery Conference with counsel for all parties.  Mr. Jason Forge participated on behalf of Plaintiffs, and Mr. Benjamin Morris participated on behalf of Defendants.

## C. ROGS SERVED BY PLAINTIFFS

On October 11, 2011, Plaintiffs served ROGs Set One on Trump University and Mr. Trump.  (Doc. No. 330 at 7.)  The parties do not dispute that Plaintiffs served 9 ROGs in Set One.  Id.  On March 30, 2012, Plaintiffs served ROGs Set Two separately on Trump University and Mr. Trump.  Id.  The ROGs to Trump University were numbered 10 through 19 for a total of 10 ROGs, but Defendants state that, with discrete subparts, the total number of ROGs served was 17.  Id.  The ROGs to Mr. Trump were numbered 10 through 16 for a total number of seven ROGs, but Defendants state that, with discrete subparts, the total number of ROGs served was 10.  Id.  On November 20, 2012, Plaintiffs served ROGs Set Three on Trump University and Mr. Trump.  Id. at 8.  The parties do not dispute that Plaintiffs served six ROGs in Set Three.  Id.  On April 5, 2013, Plaintiffs served ROGs Set Four on Trump University and Mr. Trump.  Id.  The parties do not dispute that Plaintiffs served six ROGs in Set Four.  Id.  On May 8, 2014, Plaintiffs served ROGs Set Five on Trump University and Mr. Trump.  Id.  The ROGs were numbered 32-35 for a total of four ROGs, but Defendants state that, with discrete subparts, the total number of ROGs served was 24.  Id.

The dispute about the number of ROGs served primarily focuses on Plaintiffs' ROG No. 16 to both Trump University and Mr. Trump in ROGs Set Two. ROG No. 16. states:

> To the extent that any of your responses to any of Plaintiffs' requests for admissions is other than an unqualified admission, list all facts on which you based any part of your response that is not an unqualified admission, identify all documents memorializing each such fact, and identify all persons with knowledge of each such fact.

(Doc. No. 330-2 at 25.)

## II. ARGUMENT

### A. PLAINTIFFS' ARGUMENT

#### 1. NUMBER OF INTERROGATORIES

##### a. COURT'S ORDERS

Plaintiffs contend that each Plaintiff may propound 50 ROGs. (Doc. No. 330 at 3.) To support this assertion, Plaintiffs refer to this Court's Scheduling Order Regulating Pre-Class Certification Discovery, filed on October 14, 2011, and this Court's Amended Scheduling Order Regulating Pre-Class Certification Discovery, filed on January 24, 2012. (Doc. Nos. 88, 92.) The Court's Orders both read, "Plaintiffs are further granted leave to propound a total of 50 interrogatories...Defendants are further granted leave to propound a total of 50 interrogatories between them, divided however they wish so long as the total number of interrogatories for all Defendants does not exceed 50." (Doc. No. 88 at 1; Doc. No. 92 at 1.)

Plaintiffs argue that the Court used different language in describing the limit to Plaintiffs' number of ROGs versus Defendants' number of ROGs, and that the detailed language used for Defendants would be superfluous if the ROG limits were the same for both Plaintiffs and Defendants. (Doc. No. 330 at 4.) Therefore, Plaintiffs argue, **each** of the six Plaintiffs[3] may propound a total of 50 ROGs, which is a collective total of 300 ROGs available to be served by Plaintiffs. (Doc. No. 330 at 4.)

---

[3] Although there are three remaining named Plaintiffs listed on the case docket, Plaintiffs stated during the Discovery Conference that they believed there are currently six Plaintiffs in this case.

Federal Rule of Civil Procedure 33 allows each party to propound 25 ROGs. Fed.R.Civ.P. 33. Plaintiffs claim that courts have given the language of Rule 33(a)(1) its plain meaning and allowed **each** party to propound 25 ROGs. (Doc. No. 330 at 3; citing Trevino v. ABC Am., Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006); St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 217 F.R.D. 288, 289 (D. Mass. 2003) (emphasis in original). They argue that, here, the Court has allowed each Plaintiff to serve 50 ROGs and they have not yet exceeded their collective ROG limit of 300. Therefore, Plaintiffs assert that Defendants must respond to Plaintiffs' Fifth Set of ROGs.

### b. RFAS COUNTED AS ROGS

On March 30, 2012, Plaintiffs served their Second Set of ROGs on Defendants, which included ROG No. 16. (Doc. Nos. 330 at 7; 330-2 at 25.) Plaintiffs assert that ROG No. 16 must be counted as one ROG. They argue that Defendants seek to count as ROG responses RFA answers that did not provide the three categories of information sought in ROG No. 16. They claim that it is unreasonable for Defendants to attempt to transform the RFA responses, or non-responses, into ROG responses. (Doc. No. 330 at 5.)

Plaintiffs contend that labeling a discovery response as a "ROG" response, rather than an "RFA" response, does not transform the type of response. (Doc. No. 330 at 6.) They assert that discovery requests must be categorized by their substance, not their label, and that the same must hold true for discovery responses. (Doc. No. 330 at 6.)

### 2. GOOD CAUSE FOR ADDITIONAL ROGS

Plaintiffs argue that even if the Court finds that Plaintiffs have exceeded their allotted ROGs, they deserve leave to propound Set Five. Plaintiffs claim that these ROGs "go to the heart of this case." (Doc. No. 330 at 6.)

### 3. LIMITS ON ROGS APPLIED TO PRE-CLASS DISCOVERY

During the Discovery Conference, Plaintiffs noted that the limits on ROGs were set by the Court in an Order Regulating Pre-Class Certification Discovery. Plaintiffs argue that, if the Court determines that they have already exceeded their 50 ROG limit, and that the

ROG number was not reset after the class was certified, then the Court is taking the position that Plaintiffs have exceeded their ROG limit before the class was certified.

### B. DEFENDANTS' ARGUMENT

#### 1. NUMBER OF INTERROGATORIES

##### a. COURT'S ORDERS

Defendants argue that the Court limited Plaintiffs to a collective total number of 50 ROGs, and that Defendants do not have to provide responses to Set Five because Plaintiff has already exceeded their ROG limit. (Doc. No. 330 at 7.) Defendants argue that discrete subparts of a ROG are counted towards the limit allowed under Rule 33. (Doc. No. 330 at 7.) They also argue that in the parties' initial Joint Discovery Plan, Plaintiffs requested a collective total of 75 ROGs. Defendants state that Plaintiffs' request helps to place the Court's Scheduling Order into context and shows that the Court allotted Plaintiffs a collective total of 50 ROGs, and not 50 ROGs per Plaintiff.

##### b. RFAS COUNTED AS ROGS

Defendants claim that Plaintiffs are attempting to make an end run around the Court-ordered ROG limit of 50. (Doc. No. 330 at 9.) Defendants argue that ROG No. 16 is not just one ROG, but rather references each unadmitted RFA previously propounded by Plaintiffs. They argue that each RFA is a discrete subpart that counts against Plaintiffs' ROG limit. Defendants assert that ROG No. 16 to Trump University contains 8 discrete subparts addressing 8 separate unadmitted RFAs, and ROG No. 16 to Mr. Trump contains 4 discrete subparts, addressing 4 unadmitted RFAs.

Defendants argue that the plain language of ROG NO. 16 actually contains 3 distinct subparts for each RFA at issue : (1) identify facts; (2) identify docs; and (3) identify persons with knowledge. (330 at 9.) Therefore, Defendants claim, the 12 subparts should actually be multiplied by 3, and counted as 36 subparts. (Doc. No. 330 at 9.)

#### 2. NO GOOD CAUSE TO PROPOUND ADDITIONAL ROGS

Defendants argue that there is no good cause for Plaintiffs to exceed their 50 ROG limit. (Doc. No. 330 at 10.) They argue that the Court has already allowed Plaintiffs to

double the number of ROGs provided for in Rule 33, and Plaintiffs were free to determine how best to use their 50 ROGs. (Doc. No. 330 at 10.) Further, Defendants assert that Plaintiffs have the underlying information equally available to them, and they failed to articulate in the meet and confer process any facts that would support good cause to serve more ROGs than the number allowed by this Court. (Doc. No. 330 at 10.)

### 3. ROGS ARE OBJECTIONABLE FOR OTHER REASONS

Defendants argue that ROG Nos. 32 and 33 in Set Five would require Defendants to determine that 11 discrete events did not occur at each of the more than two thousand individual preview seminars and hundreds of "Live Events" taught around the country over four years. (Doc. No. 330 at 10.) They argue that this is unreasonable, unduly burdensome, over broad, and oppressive. (Doc. No. 330 at 10.) They claim that the ROGs require Defendant to prove a negative based on assumed facts, and that, to the extent Defendants have this information, it has already been provided to Plaintiffs. (Doc. No. 330 at 11.)

### 4. PLAINTIFFS' COMPLAINTS ARE UNTIMELY

Defendants argue that Plaintiffs now complain that Defendants failed to provide the information requested by ROG No. 16. They contend that Plaintiffs' failure to address this issue in May of 2012, when the responses were served, precludes a challenge to the responses at this time. (Doc. No. 330 at 10, n. 8.)

## III. RELEVANT LAW

### A. INTERROGATORIES

Rule 33(a)(1) states, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Fed.R.Civ.P. 33(a)(1). One issue that has arisen in implementing the numerical limit contained in Rule 33(a) is how interrogatories should be counted. Safeco Ins. Co. of Am. v. Rawstron, 181 F.R.D. 441, 442 (C.D. Cal. 1998). Although Rule 33(a) states that "discrete subparts" should be counted as separate interrogatories, it does not define that term. Id.

Some subparts to ROGs are explicit and separately numbered or lettered, while others are implicit and not separately numbered or lettered. Safeco Ins. Co. of Am. v. Rawstron, 181 F.R.D. 441, 443. As the court noted in Safeco, extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a) by rendering it meaningless, unless each subpart counts as a separate ROG. Id. However, the Safeco court also recognized that if all subparts count as separate ROGs, the use of ROGs might be unduly restricted or requests for increases in the numerical limit might become automatic. Id.

The court in Trevino v. ABC Am., Inc., also discussed numerical limits on ROGs. Trevino v. ABC Am., Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006). The court noted, "[a]lthough the term 'discrete subparts' does not have a precise meaning, courts generally agree that 'interrogatory subparts are to be counted as one interrogatory ... if they are logically or factually subsumed within and necessarily related to the primary question. Id.; citing Safeco, 181 F.R.D. at 445.

### B. INTERPLAY BETWEEN ROGS AND RFAS

The purpose of Rule 36(a), which governs RFAs, is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial. Asea, Inc. v. Southern Pacific Transportation Co., 669 F.2d 1242, 1245 (9th Cir.1981). "Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admissions were based...essentially transforms each request for admission into an interrogatory. This is not the purpose requests for admissions were intended to serve, and because Rule 36 imposes no numerical limit on the number of requests for admissions that may be served, condoning such a practice would circumvent the numerical limit contained in Rule 33(a)." Safeco, 181 F.R.D. at 445; citing 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, § 2252, at 524–525.

In Safeco, the court noted that "efforts to use other devices such as requests for admissions to circumvent the limitation on number of interrogatories should not be sustained." Safeco, 181 F.R.D. at 447. The court determined that "an interrogatory that asks

the responding party to state facts, identify witnesses, or identify documents supporting the denial of each request for admission contained in a set of requests for admissions usually should be construed as containing a subpart for each request for admission contained in the set." Id. at 446. The court reached this conclusion by analyzing the respective purposes of RFAs and ROGs. The court noted that, where the underlying requests for admissions concern different, separate, or discrete matters, the interrogatory should be viewed as containing a subpart for each request. Id. at 445. The court stated that this will almost always be the case. Id.

The Safeco court also noted that, "a strong presumption that each underlying request for admission constitutes a separately countable subpart should be adopted. Though it falls slightly short of constituting a bright-line test, such a presumption will tend to conserve litigants' resources by making it relatively clear what is and is not permitted, and will tend to avoid "sap[ping] the court's limited resources in order to resolve hypertechnical disputes." Id; citing Ginn v. Gemini, Inc., 137 F.R.D. 320, 322 (D. Nev. 1991).

The court in Jovanovich v. Redden Marine Supply, Inc., also found that a ROG that asked for a response regarding every RFA in which the plaintiff responded with anything other than an unqualified admission, effectively constituted separate interrogatories. Jovanovich v. Redden Marine Supply, Inc., 2011 U.S. Dist. LEXIS 110020 at *8 (W.D. Wash. Sept. 26, 2011). However, in St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, each of the three defendants served 25 ROGs on the plaintiff, for a total of 75 ROGs which had been served by the defendants' side of the case. St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 217 F.R.D. 288, 289 (D. Mass. 2003). The court discussed the interplay between the Federal Rules and the Local Rules of the District of Massachusetts. Id. The court determined that, under the plain terms of Rule 33(a), each defendant could, without leave of court, serve 25 interrogatories on the plaintiff. Id. However, the court also questioned the propriety of the defendants each serving 25 interrogatories on the plaintiff.

## IV. DISCUSSION AND RULING

### A. MEET AND CONFER

In Plaintiffs' portion of the Joint Statement, Plaintiffs' counsel states that counsel for all parties met and conferred in person on June 20, 2014, in an attempt to resolve the dispute. (Doc. No. 330-1 at 2.) As the Court observed during the Discovery Conference, it is hard to imagine that a meet and confer session that lasted a mere fifteen minutes qualified as meeting and conferring "in good faith" as required by this Court's Chambers Rules. Judge Gallo's Chambers Rule IV(A).

Further, counsel are required to meet and confer in good faith on all disputed issues. This Court's Chambers Rules state that, "[c]ounsel are to promptly meet and confer regarding all disputed issues, pursuant to the requirements of Civil Local Rule 26.1.a." Judge Gallo's Chambers Rule IV(A). In Defendants' portion of the Joint Statement, they note that during the meet and confer process, Plaintiffs focused their dispute solely on the ROG numbering issue and were silent as to Defendants' other objections. (Doc. No. 330 at 11.) Defendants argue that Plaintiffs' failure to meet and confer on the remaining objections warrants sustaining them. (Doc. No. 330 at 11.)

In their Joint Statement, Plaintiffs did not address Defendants' argument that their alleged failure to meet and confer on Defendants' other objections warrants sustaining them, and the Court did not elicit argument on that specific point during the Discovery Conference. However, Defendants' argument here is moot based on the Court's rulings set forth below, which sustain Defendants objections to Plaintiffs' Fifth Set of ROGs.

### B. NUMBER OF ROGS

The parties dispute the number of ROGs that Plaintiffs were allotted, the number of ROGs that Plaintiffs have served, whether the pre-class certification limits extend to post-class certification, and whether good cause exists to allow Plaintiffs to serve ROGs over the Court-ordered limit.

### 1. **PLAINTIFFS WERE ALLOTTED A COLLECTIVE TOTAL OF 50 ROGS**

The Court understands Plaintiffs' argument about the language discrepancy in its Scheduling Orders. In its Scheduling Order Regulating Pre-Class Certification Discovery, issued on October 14, 2011, the Court stated, "Plaintiffs are further granted leave to propound a total of 50 interrogatories...Defendants are further granted leave to propound a total of 50 interrogatories between them, divided however they wish so long as the total number of interrogatories for all Defendants does not exceed 50." (Doc. No. 88 at 1.) This Order was issued nearly three years ago, and the Court does not independently recollect why disparate language was used to describe the parties' respective ROG limits.

However, the parties' initial Joint Discovery Plan, filed on September 16, 2011, provides context for and explains unequivocally the language used in the Court's Scheduling Order. (Doc. No. 82.) In the Joint Discovery Plan, filed one month before the Court issued its Scheduling Order, Plaintiffs requested "that the parties have permission to serve upon the other side collectively 75 interrogatories." (Doc. No. 82 at 12.) It appears that the Court considered Plaintiffs' request to collectively serve 75 ROGs, and instead allowed Plaintiffs and Defendants to serve a collective total of 50 ROGs per side. "Collective" is defined as: of, relating to, or being a group of individuals; shared or assumed by all members of the group.[4] Therefore, it is clear to the Court that Plaintiffs were allotted a combined or collective total of 50 ROGs, and that, contrary to Plaintiffs' argument, the Court did not allow each Plaintiff to serve 50 ROGs. The Court acknowledges that the language in its Scheduling Orders is confusing when read independently, but when read with the Joint Discovery Plan, it is clear that Plaintiffs are limited to a total of 50 ROGs collectively.

Further, the Court is convinced that Plaintiffs have exceeded their 50 ROG allotment. The cases cited by both parties support the Court's conclusion that ROG No. 16 contains 3 discrete subparts and these subparts must be multiplied by the number of RFAs that were

---

[4] Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/collective.

not unqualified admissions. Plaintiffs claim that, prior to serving their Fifth Set of ROGS, they had propounded 31 numbered ROGs upon Defendants. (Doc. No. 330 at 3.) However, Plaintiffs only count ROG No. 16 as one ROG. Defendants claim that, prior to Plaintiffs serving their Fifth Set of ROGs, Plaintiffs propounded 48 ROGs, including discrete subparts. (Doc. No. 330 at 7.) They argue that Plaintiffs Fifth Set of ROGs contains 24 ROGs, including discrete subparts, and therefore, Plaintiffs have exceeded the Court ordered limit of 50 ROGs. (Doc. No. 330 at 7.) The Court agrees with Defendants' interpretation of the Rules, the case law, and its ultimate calculation. As in <u>Safeco</u>, extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a) by rendering it meaningless, unless each subpart counts as a separate ROG. <u>Safeco Ins. Co. of Am. v. Rawstron</u>, 181 F.R.D. 441, 443.

## 2. NO BIFURCATION OF CLASS AND MERITS DISCOVERY

The 50 ROG limitation for both Plaintiffs and Defendants did not end with the class certification Order, but extends through the entire discovery period in this case. In the Joint Discovery Plan under "Plaintiffs' Proposal," Plaintiffs note that, "All the parties appear to agree in principle that no formal bifurcation of class certification and merits discovery is necessary or appropriate in this case. Specifically, Plaintiffs believe that the overlap between class and merits discovery in this case is such that bifurcation would lead to **needless litigation** over the distinction between the two, and **inefficiencies in the discovery process**." (Doc. No. 82 at 6) (emphasis added). Plaintiffs further state that, "if discovery were bifurcated, the parties would waste time and resources debating and litigating the distinction over what is 'class discovery' versus 'merits discovery' due to the intermingling of merits and class certification issues here." (Doc. No. 82 at 7.) Plaintiffs also noted that "bifurcating discovery into class and merits discovery is likely to lead to unnecessary disputes and to be **duplicative**." (Doc. No. 82 at 8) (emphasis added). Plaintiffs stated, "For all these reasons, Plaintiffs respectfully urge the Court to reconsider its decision at the ENE to bifurcate discovery, and instead **allow discovery to proceed in a single phase** as per the scope allowed under Rule 26." (Doc. No. 82 at 8) (emphasis added).

The parties clearly contemplated that there would be no distinction between pre-class discovery and post-class merits. In its Scheduling Order Regulating Pre-Class Certification Discovery, the Court stated, "Discovery will neither be bifurcated between class certification and the merits, nor conducted in stages." (Doc. No. 88 at 1.) Therefore, the ROG limits set forth in the Court's Pre-Class Certification Scheduling Order applies not only to pre-class certification discovery, but to all discovery in this litigation.

### C. **PLAINTIFFS' COMPLAINTS ARE UNTIMELY**

Defendants provided responses to Set Two, including ROG No. 16, in May of 2012. This Court's Chambers Rules require that parties notify the Court of a discovery dispute **within thirty days** of the date upon which the event giving rise to the dispute occurred. Judge Gallo's Chambers Rule IV(C). In their Joint Statement filed on July 2, 2014, Plaintiffs claim that they are not satisfied with discovery responses from Defendants that were received **more than two years earlier**, in May of 2012. The Court is at a loss to understand why Plaintiffs waited more than two years, and after class certification, to notify the Court of this dispute.

This dispute is untimely. There must be some finality to discovery disputes and when they can be resolved. Plaintiffs have failed to explain to the Court why this dispute is not time-barred pursuant to this Court's Chambers Rules. Therefore, Plaintiffs are precluded from complaining about Defendants' responses to ROG No. 16.

### D. **NO GOOD CAUSE FOR ADDITIONAL ROGS**

Plaintiffs argue that discovery disputes should be resolved on the merits. This Court agrees. However, even if the Court determined that Plaintiffs were each allotted 50 ROGs, the Court would sustain Defendants' objections to ROG Nos. 32-35.

Plaintiffs claim that these ROGs "go to the heart of this case." (Doc. No. 330 at 6.) The Court is not making a determination as to whether or not this is true. However, discovery began in this case on October 14, 2011. (Doc. No. 88.) The Court has to believe that, nearly three years into discovery, with numerous documents produced, information exchanged, and witnesses deposed, and many discovery disputes, conferences, and hearings,

Plaintiffs would have requested, and Defendants would have provided, information related to ROG Nos. 32, 33, and 34.

The Court is not depriving Plaintiffs of the opportunity to have this case resolved on the merits. As Defendants assert in the Joint Statement, the information sought has already been provided to Plaintiff in other forms. (Doc. No. 330 at 10.) The Court agrees, as it has observed that the first several subparts of ROG No. 33 seek information that, through the process of simple deduction, has already been provided by Mr. Trump in his responses to Plaintiffs' RFAs.[5] (Doc. No. 330-2; Exh. 4.) Defendants argue that they should not be burdened with reviewing documents to summarize or compile the information sought by Plaintiffs because Plaintiffs have the underlying information equally available to them. Id. The Court agrees that Plaintiffs can just as easily review the discovery previously provided and determine whether there were events that did not show the Trump Promotional Video, Mr. Trump's personal image, or quotes or statements attributed to Mr. Trump. The Court will not require Defendants to do Plaintiffs' work. To the extent that Defendants object that some of the requested information is inaccessible to them because the information may be in the possession of Defendants' ex-employees, ex-contractors, and ex-agents, Plaintiffs can serve subpoenas on those individuals.

Like the parties, the Court has an interest in cases being tried on the merits and does not believe that the discovery process should be hindered by technicalities. However, both the Court and the parties also have an interest in an expeditious resolution of the case. It may seem absurd to discuss an expeditious resolution when this case was filed over four years ago, but nevertheless, there must be limits on what the parties can do in discovery. The

---

[5] ROG No. 33 asks Defendants to "Identify the date, location, instructors, presenters, and other Trump University employees, contractors, or agents in attendance at any and all Trump University Preview Seminars or Live Events during which attendees were told verbally or in writing: (a) that Donald Trump had NOT handpicked any of the Preview Seminar presenters; (b) that Donald Trump had NOT met any of the Preview Seminar presenters; (c) that Donald Trump had NOT handpicked any of Trump University's mentors; (d) that Donald Trump had NOT met any of Trump University's mentors; (e) that Donald Trump had NOT handpicked any of Trump University's Live Event instructors..." (Doc. No. 330-2 at 5.) In his responses to Plaintiffs' RFA Nos. 1 and 2, dated May 29, 2012, Mr. Trump denied that he did not handpick every one of Trump University's speakers, instructors, or mentors. Id. at 35-36.

Court has done nothing to frustrate its objective to have this case tried on the merits by denying Plaintiffs' request to exceed the allotted number of ROGs in order to obtain duplicative information.

Moreover, ROG No. 32 would require Defendants to prove a negative. To attempt to prove a negative and show that the Trump Promotional Video, Mr. Trump's personal image, and no quotes or statements attributed to Mr. Trump were played at thousands of events across the country over a period of years is overly burdensome. See Reece v. Basi, 2014 WL 2565986, at 5 (E.D.Cal. Jun. 6, 2014) (noting that the plaintiff's RFP would require the defendant to prove a negative, the court stated, "discovery cannot be compelled with respect to these requests as framed"); OMG Fidelity Inc. v. Sirius Technology, Inc., 2007 WL 1994230, at 1 (N.D.Cal. Jul. 5, 2007) (court stated that it would be inappropriate to allow trade secret plaintiffs to make competitors prove a negative through discovery); Guidiville Rancheria of California v. United States, 2013 WL 6571945, at 5 ((N.D.Cal. Dec. 12, 2013) (court observed that if party seeking discovery bears no burden to show how privilege was waived, then party asserting privilege must prove a negative, and placing the entire burden on asserting party is "unsustainable"). Further, the discrete subsections in ROG No. 32 would count as individual ROGs.

ROG No. 33 also would be unduly burdensome to Defendants. It would also require Defendants to prove a negative, and contains many discrete subparts.

ROG No. 35 would also be unduly burdensome to Defendants. It contains at least 12 discrete subparts and asks detailed questions about the factual basis for a Declaration provided by Mark Covais in November of 2012. (Doc. No. 330 at 11.) Since producing this Declaration, Plaintiffs deposed Mr. Covais and had every opportunity to follow up on the information in his Declaration. Id. The Court will not allow parties numerous bites at the apple simply because they were unprepared.

//
//
//

## V. CONCLUSION

For the reasons stated above, the Court hereby SUSTAINS Defendants' objections to Plaintiffs' ROGs Set Five.

IT IS SO ORDERED.

DATED: July 11, 2014

Hon. William V. Gallo
U.S. Magistrate Judge