NANCY L. STAGG CA Bar No. 157034
    nstagg@foley.com
BENJAMIN J. MORRIS CA BAR No. 260148
    bmorris@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130-3302
TELEPHONE:   858.847.6700
FACSIMILE:     858.792.6773

JILL A. MARTIN CA Bar No. 245626
    jmartin@trumpnational.com
C/O **TRUMP NATIONAL GOLF CLUB LOS ANGELES**
ONE TRUMP NATION DRIVE
RANCHO PALOS VERDES, CA 90275
TELEPHONE:   310.303.3225
FACSIMILE:     310.265.5522

Attorneys for Defendants Trump University, LLC
and Donald J. Trump

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, SONNY LOW, J.R. EVERETT, AND JOHN BROWN,  on behalf of themselves and all others similarly situated, ED OBERKROM, and BRANDON KELLER, individually,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC (aka Trump Entrepreneur Initiative), a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No:  10-cv-0940 GPC (WVG)<br><br><u>CLASS ACTION</u><br><br>**TRUMP UNIVERSITY, LLC'S OPPOSITION TO PLAINTIFF/COUNTER DEFENDANT TARLA MAKAEFF'S BILL OF FEES AND COSTS** |

4828-1152-3100.1

# <u>TABLE OF CONTENTS</u>

Page(s)

I.    INTRODUCTION ................................................................................ 1

II.   MAKAEFF FAILS TO ESTABLISH THE REASONABLENESS
      OF HER ATTORNEYS FEES INCURRED IN PROSECUTING
      HER ANTI-SLAPP MOTION ............................................................ 3

      A.   Makaeff has Failed to Meet Her Burden to Establish
           that Spending 2,225.85 Hours On An Anti-SLAPP Motion
           Challenging a Single Count Counter-claim Was Reasonable .................... 5

           (1)   Makaeff Did Not Break Out the Hours Billed by
                 Specific Attorneys on Specific Tasks to Establish
                 Reasonableness ............................................................. 5

           (2)   Time Spent Soliciting Amicus Briefs Was Not Directly
                 Related To The Motion and Thus, Not Compensable ................... 10

           (3)   Attorney Time Spent Educating the Lawyer is Not
                 Compensable and Certainly Not at Partner Rates ....................... 11

           (4)   Time Spent on the Unsuccessful Motion for Reconsideration
                 Should Not be Awarded ................................................... 11

           (5)   Time Spent Drafting Motions Should be Limited to the Reasonable
                 Hours Suggested by Trump University ................................... 12

           (6)   Time Spent on the Appeal Brief Should be Limited to the
                 Reasonable Hours Suggested by Trump University ..................... 12

           (7)   Time Spent on Identifying Particular Documents Containing the
                 Alleged Defamatory Statements Should be Limited to the
                 Reasonable Hours Suggested by Trump University ..................... 12

           (8)   Time Spent on "Mock" Exercises Should be Limited to the
                 Reasonable Hours Suggested by Trump University ..................... 13

           (9)   Time Spent Preparing Makaeff for Deposition Should be Limited to
                 4 Hours ..................................................................... 13

      B.   The Hourly Rates Sought By Counsel Are Not Reasonable .................... 13

      C.   The Court Should Not Apply An Upward Multiplier But
           Should Consider a Reduction Under the Facts of this Case .................... 16

III.  THE COSTS SHOULD BE DENIED .................................................. 20

IV.   CONCLUSION .............................................................................. 22

i

4828-1152-3100.1

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Federal Cases**

<u>Berman v. McManus,</u>
    2012 U.S. Dist. Lexis 58763 (ED CA April 26, 2012) ............................................ 15

<u>Brown v. Stackler,</u>
    612 F.2d 1057 (7th Cir. 1980) ...................................................................... 5

<u>Camacho v. Bridgeport Financial, Inc.,</u>
    523 F.3rd 973 (9th Cir. 2008) ..................................................................... 17

<u>Chalmers v. City of Los Angeles,</u>
    796 F.2d 1205 (9th Cir. 1986) ............................................................. 3, 4, 5

<u>Cornwell v. Belton,</u>
    2008 U.S. Dist. LEXIS 907, 2008 WL 80724
    (S.D. Cal. 2008) ....................................................................................... 15

<u>Gates v. Deukmejian,</u>
    987 F.2d 1392 (9th Cir. 1992) ............................................... 17, 18, 19, 20

<u>Hensley v. Eckerhart,</u>
    461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ............................ 3

<u>Jordan v. Multnomeh County,</u>
    815 F.2d 1258 (9th Cir. 1987) ............................................................... 4, 5

<u>Kearney v. Foley & Lardner</u>
    2008 U.S. Dist. Lexis 21115
    (USDC SD CA May 18. 2008) ................................................................. 15

<u>Kerr v. Screen Extras Guild, Inc.,</u>
    526 F.2d 67 (9th Cir. 1975), cert. denied 425 U.S. 951,
    48 L. Ed. 2d 195, 96 S. Ct. 1726 (1976) ....................................... 4, 16, 19

<u>Morales v. City of San Rafael,</u>
    96 F.3d 359 (9th Cir. 1996) .................................................................... 16

<u>Ravet v. Stern,</u>
    2010 U.S. Dist. LEXIS 79589 ........................................................... 14, 15

4828-1152-3100.1

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>Page(s)</u>

<u>United States of America v. City and County of San Francisco</u>
748 F. Supp. 1416 (1990) .................................................................... 10

<u>Zwebner, et al. v. Coughlin</u>
2008 U.S. Dist. Lexis 39702 (S.D. CA May 15, 2008)........................... 15

**California Cases**

<u>Christian Research Institute v. William Alnor,</u>
165 Cal. App. 4th 1315 (2008) ............................................................... 6

<u>City of Colton v. Singletary,</u>
206 Cal. App. 4th 751 (2013) ...................................................... 7, 8, 11

<u>Donahue v. Donahue,</u>
Cal. App. 4th 259, 271 (2010) ................................................................ 9

<u>EnPalm LLC v. Teitler,</u>
162 Cal. App. 4th 770 (2008) ............................................................. 3, 8

<u>Graham v. DaimlerChrysler Corp.,</u>
34 Cal. 4th 553 (2004) ......................................................................... 18

<u>Ketchum v. Moses,</u>
24 Cal. 4th 1122 (2001) ....................................................................... 18

<u>PLCM Group v. Drexler,</u>
22 Cal. 4th 1084 (2000) ......................................................................... 4

<u>Premier Med. Mgt. Sys. Inc. v. Cal. Ins. Guar. Assn,</u>
163 Cal. App. 4th 550 (2008) ................................................................. 6

<u>Serrano v. Unruh,</u>
32 Cal.3d 621 (1982) .............................................................. 3, 5, 10, 19

<u>Stefani Concepcion v. Amscan Holdings, Inc.,</u>
223 Cal. App. 4th 1309 (2014) .................................................... 8, 9, 10

<u>In re Vitamin Cases</u>
110 Cal. App. 4th 1041 (2003) ............................................................... 9

iii

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

Weber v. Langholz,
   39 Cal. App. 4th 1578 (1995) .................................................................. 6

**Federal Statutes/Rules**

28 U.S.C. § 1920 .................................................................................................. 21

28 U.S.C. § 1828 .................................................................................................. 21

28 U.S.C. § 1923 .................................................................................................. 21

**California Statutes/Rules**

Cal. Civ. Proc. Code § 425.16 ............................................................................ 15

Cal. Civ. Proc. Code § 425.16(c) .......................................................................... 3

Cal. Civ. Proc. Code § 1033.5(b) ...................................................................... 21

Cal. Civ. Proc. Code § 1033.5(b)(2) .................................................................. 21

Cal. Civ. Proc. Code § 1033.5(b)(3) .................................................................. 21

4828-1152-3100.1

Defendant/Counterclaimant Trump University, LLC ("Trump University"), hereby submits its opposition to Plaintiff/Counter Defendant Tarla Makaeff's ("Makaeff") Bill of Fees and Costs.

## I.    INTRODUCTION

On June 16, 2014, this Court issued its Order Granting Plaintiff/Counter Defendant's Special Motion to Strike Defendant/Counterclaimant's Defamation Counterclaim ("Order") and ordered that "on or before July 3, 2014, Plaintiff/Counter-Defendant Makaeff shall file with the Court substantiation of the reasonable attorneys' fees and costs associated with bringing the Motion to Strike, related appeal, and supplemental briefing." See Order, at 19:8-11 [Dkt. No. 328].[1]  Makaeff has not complied with the Court's request.  Rather, Makaeff has filed a two-inch thick stack of papers that spends considerable time demonizing Trump University, arguing that wealthy parties to litigation are not entitled to a defense, extolling the expertise of various attorneys for Makaeff to justify premium hourly rates notwithstanding the rate surveys included in their pleadings do not support the high rates (particularly given their admission of having no experience with Anti-SLAPP motions,[2] the only expertise relevant to this fee request), and seeking fees for preparing the attorneys' fee motion without specifying a dollar amount.  Most shocking is that in the two-inch pile of pleadings, there is no effort to break out the time spent on specific tasks to substantiate the reasonableness of spending over 2200 hours and seeking more than $1.3 million in fees.  Makaeff's counsel has actual invoices that presumably break out the hours by task but strategically decided not to share those invoices with this Court or Trump University when it filed its Motion.  Even Makaeff's purported "expert" on fees in the Anti-SLAPP

---

[1] The Court also required that any opposition to the motion be filed no later than July 18, 2014.

[2] See Declaration of Rachel L. Jensen in Support of Makaeff's Bill of Fees and Costs ("Jensen Dec.") at ¶¶ 7, 11, 13; Declaration of Amber L. Eck in Support of Makaeff's Bill of Fees and Costs ("Eck Dec.") at ¶¶ 6, 9, 21; Declaration of Eric Alan Isaacson in Support of Makaeff's Bill of Fees and Costs ("Isaacson Dec.") at ¶ 14; Declaration of Karl Olson ("Olson Dec.") at ¶ 15.

motion context, Ms. Carol A. Sobel, confirmed that breaking out time by task for the Court is prudent.[3]

Instead of focusing on the reasonableness of their fees, Makaeff's counsel has apparently taken a "blank check" approach to this litigation[4] and misleadingly tries to justify over $1.3 million in fees for a simple Anti-SLAPP motion by saying that the fees were incurred over 4 long years of scorched earth tactics of a billionaire.[5]  In reality, the actual services were performed in less than 15 months' time with long delays for rulings on the motions during which no fees should have been incurred.  Additionally, there were no "scorched earth" tactics imposed by Trump University[6] who utilized one in house counsel and a small, local San Diego law firm comprised of three former Luce Forward[7] attorneys with extensive litigation experience and hourly rates in line with what lawyers experienced with Anti-SLAPP motions in the San Diego community charge their clients, as evidenced by the rate surveys relied on by Makaeff and published decisions from San Diego cases.

---

[3] See Declaration of Carol A. Sobel ("Sobel Dec.") at Ex. "B," ¶ 3.

[4] An example is described in the Eck Dec. at ¶ 35 and Jensen Dec. at ¶ 29 where notwithstanding the engagement of an alleged experienced appellate lawyer, Makaeff's counsel spent considerable time on a mock appellate oral argument involving several attorneys.  Given this was a relatively simple straightforward Anti-SLAPP motion -- this time was excessive and not necessary.

[5] It is worth noting that Donald Trump was not a party to the counter-claim.  Moreover, this is not a popularity contest, the focus is on whether the time spent was reasonable, not on whether the Court likes a particular party and thus, Makaeff's mudslinging is non-productive and irrelevant.

[6] In fact, Trump University sought to stay the main case to avoid fees being incurred in that matter awaiting the outcome of the appeal.  This seemed prudent because if the counter-claim had been upheld, it may have convinced Makaeff that settlement was the preferred course of action.  The Court need only to look at the docket to confirm that Trump University has acted appropriately in defending itself and Makaeff has over-reached, including several amendments to her complaint.  See [Dkt. No. 10, 41] and the recent discovery ruling, in favor of defendants.  See Court Order on Discovery Dispute [Dkt. No. 333].

[7] Luce Forward is the law firm that Makaeff used as a baseline for hourly rates.  See Jensen Dec. at Ex. 3.  Although, as discussed below, the billing survey reports relied on by Makaeff support hourly rates in the San Diego community of $150-$327.50.  See Olson Dec., Ex. "A" at p. 62 at 135.

2

The evidence also confirms that Trump University did not escalate the litigation. Rather, it took its lead from the learned Judge Irma Gonzalez, who, not once, but twice upheld the counter-claim, justifying maintaining the counter-claim. Significantly, once the Ninth Circuit ruled, Trump University did not oppose Makaeff's motion to transfer the appellate fee issues to the District Court.[8]

Based upon the evidence provided in the Motion, the Court should resist any temptation to give Makeaff a second bite at the apple to provide the billing information about how much time was actually spent on each task[9] and deny the request outright for the deficient Motion for the reasons discussed below.

## II.    MAKAEFF FAILS TO ESTABLISH THE REASONABLENESS OF HER ATTORNEYS FEES INCURRED IN PROSECUTING HER ANTI-SLAPP MOTION

In initially determining reasonable attorneys' fees recoverable to the prevailing party on an Anti-SLAPP motion under California Code of Civil Procedure ("CCP") § 425.16(c), a court determines a lodestar amount by multiplying the number of hours reasonably expended by a reasonable hourly rate. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.

---

[8] Makaeff makes several references to Trump University's refusal to settle. However, why would a party that has prevailed offer to dismiss the meritorious counter-claim and pay the losing side's attorneys' fees? In Serrano v. Unruh, 32 Cal.3d 621, 635 (1982) the court noted that: "The federal rule does not license prevailing parties to force their opponents to a Hobson's choice of acceding to exorbitant fee demands or incurring further expense by voicing legitimate objections. *Prevailing parties* are compensated for hours reasonably spent on fee-related issues. A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." Refusing to settle when it had prevailed should not expose Trump University to an excessive fee award.

[9] The failure to provide this key information is amazing given the time spent to prepare the chart attached to the Eck Dec. at Ex. 2, which details the tasks, but omits the most critical information -- how many hours each attorney worked on those tasks. Should the Court decide that Makaeff should be given a second attempt to justify the excessive request for attorneys' fees and now provide the strategically omitted information, the Court should require that the bills be produced and provide Trump University the opportunity to review the bills and file supplemental briefing on the reasonableness of the requested fees. However, given that the lodestar calculation requires the Court to determine the reasonable and not actual number of hours, Trump University believes this is not warranted or necessary. See EnPalm LLC v. Teitler, 162 Cal. App. 4th 770, 774 n.4 (2008).

3

Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983)).  In calculating the lodestar, the Court may consider any of the factors listed in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67 (9th Cir. 1975), cert. denied 425 U.S. 951, 48 L. Ed. 2d 195, 96 S. Ct. 1726 (1976), that are relevant.  <u>See</u> <u>Jordan v. Multnomeh County</u>, 815 F.2d 1258, 1264, n. 11 (9th Cir. 1987) (noting that the Ninth Circuit no longer requires that the district court address every factor listed in <u>Kerr</u>).  The <u>Kerr</u>, factors for determining reasonable fees are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[10]

Counsel bears the burden of submitting detailed time records justifying the reasonableness of the hours claimed to have been expended.  <u>See</u> <u>Chalmers</u>, 796 F.2d at 1210.  It is within this Court's discretion to reduce the hours if the hours are excessive, redundant or otherwise unnecessary.  <u>See</u> <u>Id.</u>

In setting a reasonable hourly rate in connection with the lodestar calculation, the court considers the experience, skill and reputation of the attorney requesting fees, and is guided by the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience and reputation.  <u>See</u> <u>PLCM Group v. Drexler</u>, 22 Cal. 4th 1084, 1095 (2000).

Once the Court determines the proper lodestar amount and, to the extent that the <u>Kerr</u> factors are not already subsumed in that calculation, the Court may consider the remaining factors in determining whether the fee award should be adjusted upward or downward.  <u>Chalmers</u>, 796 F.2d at 1212.  However, there is a strong presumption that

---

[10] An analysis of these factors is set forth in Section II.C. below.

4828-1152-3100.1

the lodestar figure represents a reasonable fee.  <u>Jordan</u>, 815 F.2d at 1262.  An upward

adjustment of the lodestar is appropriate only in extraordinary cases, such as when the

attorneys faced exceptional risks of not prevailing or not recovering any fees.

<u>Chalmers</u>, 796 F.2d at 1212.  This is because the lodestar presumably already reflects

the novelty and complexity of the issues, the special skill and experience of counsel, the

quality of representation, and the results obtained from the litigation. <u>See</u> <u>Chalmers</u> at

1211, 1212.

As discussed below, the evidence justifies denial of the fees or, at best, a

substantially reduced award.

**A.**  **Makaeff has Failed to Meet Her Burden to Establish that Spending 2,225.85 Hours On An Anti-SLAPP Motion Challenging a Single Count Counter-claim Was Reasonable**

The Court should deny the request in its entirety for the failure to meet the

minimum standard to establish the reasonableness of the hours devoted to identified

tasks.  <u>See</u> <u>Serrano</u>, 32 Cal.3d at 635.

> If . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful. . . .

<u>Serrano</u>, 32 Cal. 3d at 635, citing <u>Brown v. Stackler</u> (7th Cir. 1980) 612 F.2d 1057,

1059.)  Given counsel's statements as to their vast experience in class action lawsuits,

and presumably filing fee requests, and their consultation with Ms. Carol Sobel, it is

inexcusable that the supporting declarations did not provide this Court with the critical

information about how much time was spent and how many attorneys worked on the

specific tasks described.  At face value, the time appears to be excessive to the point of

gluttony and should be denied as discussed below.

**(1)**  **Makaeff Did Not Break Out the Hours Billed by Specific Attorneys on Specific Tasks to Establish Reasonableness**

As the moving party, the prevailing defendant seeking fees and costs
"bear[s] the burden of establishing entitlement to an award and

5

4828-1152-3100.1

documenting the appropriate hours expended and hourly rates." [Citation.] . . . The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended. [Citation.]

Christian Research Institute v. William Alnor, 165 Cal. App. 4th 1315, 1320 (2008). Trump University recognizes that "[a]lthough a fee request ordinarily should be documented in great detail, it cannot be said … that the absence of time records and billing statements deprive[s] [a] trial court of substantial evidence to support an award …." Weber v. Langholz, 39 Cal. App. 4th 1578, 1587 (1995).  Here, however, the declarations fall short.  They are far less detailed than the sample attorney fee motion described by Ms. Sobel in her declaration at paragraph 9 and Exhibit "B," where her prudent practice is to provide billing records.  Notwithstanding knowledge of the need to provide as much detail as possible, Makaeff's counsel not only consciously declined to provide their billing records, but did not quantify how much time was spent on each identified task.

Notwithstanding their deficient Motion, Makaeff states that if the fees are challenged, "it is the burden of the challenging party to point to the specific items challenged with sufficient argument and citations to evidence," citing, Premier Med. Mgt. Sys. Inc. v. Cal. Ins. Guar. Assn, 163 Cal. App. 4th 550, 564 (2008).  See Makaeff's Bill of Fees and Costs at p. 8, lines 1-5 [Dkt. No. 331].  However, it is impossible to point to specific evidence in the Motion given its deficiencies, including the failure to break out the hours by task.  How many of the seven partners, four associates, two staff attorneys and one paralegal worked on each task?  Was there duplication of efforts?[11]  Certainly, there is a huge discrepancy between what Trump University incurred with only three lawyers at Yunker & Schneider and one in house

///

---

[11] The declarations appear to support such a finding of duplicative billing.  For example: See Eck Dec. at ¶¶ 27, 35; Jensen Dec. at ¶¶ 15, 17, 21, 23, 24, 27, 29; Isaacson Dec. at ¶ 16, all which admit involving many attorneys on a single task.

10-CV-0940 GPC (WVG)

4828-1152-3100.1

counsel working on the case,[12] when compared to Makaeff's 13 attorneys and one paralegal across two law firms, none of whom have any Anti-SLAPP experience. Given the deficiencies of the Motion, Trump University has looked at reported decisions ruling on fees and Anti-SLAPP motions, and what its own counsel spent to support the inescapable conclusion that Makaeff's request is monumentally unreasonable.

One such reported decision is <u>City of Colton v. Singletary</u>, 206 Cal. App. 4th 751 (2013). In that case Singletary's trial counsel, Courtney M. Coates, attached a declaration to Singletary's motion for attorneys' fees after defamatory causes of action for unfair business practices and injunctive relief. In the declaration, Coates declared he was charging Singletary an hourly rate of $250. Coates explained he was transitioning into running his own firm, and that at his prior firm, his hourly rate was $320. Coates declared he "spent 30.4 hours in connection with defeating the fourth and sixth causes of action."[13] Coates wrote that he performed all the work in connection with the matter, and provided a breakdown of his activities. <u>Id.</u> Coates further declared he spent 9.3 hours working on the motion for attorneys' fees, and he estimated another five hours would be expended at the hearing and responding to the City's opposition.[14] In total, Coates declared Singletary should be awarded $7,600 in attorneys' fees for the Anti-SLAPP motion, and $3,700 for the fee motion, for a grand total fee amount of $11,300.

---

[12] In support of this opposition, Trump University's counsel has reviewed the bills of Yunker & Schneider in providing the Court with a breakdown of what Trump University believes would be reasonable hours spent on each task. <u>See</u> Declaration of Kathryn M.S. Catherwood filed in support hereof ("Catherwood Dec.") at ¶ 9.

[13] In the case at bar, Makaeff only had to defend a single cause of action and thus should have expended fewer hours. Coates practiced in San Bernardino County, California. The rate surveys, attached to the Olson Dec. at Ex. A, p. 62 of 135, list San Diego partners billing at the median rate of $237 and $175 for associates in litigation matters which appear more in line with Mr. Coates in San Bernardino than Ms. Sobel in Los Angeles.

[14] Makaeff's counsel did not describe how much time it spent on the attorneys' fees motion and thus its notice is procedurally defective, denying Trump University of due process. Therefore, any fees sought in connection with the attorneys' fees motion must be denied. Alternatively, allocating at most ten hours to that task seems reasonable and supported by <u>City of Colton</u>, <u>supra</u>.

4828-1152-3100.1

In light of the time spent by Singletary in the City of Colton case, supra, and the time spent by Yunker & Schneider in this case, (see Catherwood Dec. at ¶ 9 and Ex. 1) the time spent by Makaeff's counsel is grossly excessive. The Motion evidences a "blank check" mentality adopted by Makaeff's counsel who repeatedly commented on the wealth of Donald Trump, who was not even a party to the counter-claim. Had counsel spent as much time breaking out the hours spent on each task as they did in attempting to vilify their opponent, the Motion would have given this Court what it ordered—"substantiation of the reasonable attorney's fees. . ."

Further support for a fee reduction is provided by a very recent decision regarding an award of fees in a class action settlement in Los Angeles. See Stefani Concepcion v. Amscan Holdings, Inc., 223 Cal. App. 4th 1309 (2014). In Concepcion, the trial court reviewed invoices in camera after its determination that the declarations were deficient because the court could not assess reasonableness due to the failure to breakdown time by category. In ultimately reversing the trial court, including finding the in camera review improper, the appellate court noted:

> Of particular significance here, this initial calculation requires the court to determine the reasonable, not actual, number of hours expended by counsel entitled to an award of fees. (See EnPalm, LLC v. Teitler (2008) 162 Cal.App.4th 770, 774 & fn. 4 [75 Cal. Rptr. 3d 902].) Thus, class counsel "are not automatically entitled to all hours they claim in their request for fees. They must prove the hours they sought were reasonable and necessary." (El Escorial Owners' Assn. v. DLC Plastering, Inc. (2007) 154 Cal.App.4th 1337, 1366 [65 Cal. Rptr. 3d 524].) "The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." (Christian Research Institute v. Alnor (2008) 165 Cal.App.4th 1315, 1320 [81 Cal. Rptr. 3d 866].) Indeed, "[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (Serrano v. Unruh (1982) 32 Cal.3d 621, 635 [**50] [186 Cal. Rptr. 754, 652 P.2d 985]; accord, Chavez v. City of Los Angeles (2010) 47 Cal.4th 970, 990 [104 Cal. Rptr. 3d 710, 224 P.3d 41]; see Ketchum v. Moses, supra, 24 Cal.4th at p. 1132 ["[i]n referring to 'reasonable' compensation, we indicated that trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation"].)

Stefani Concepcion v. Amscan Holdings, Inc., 223 Cal. App. 4th at 1320.

///

8

In criticizing the way in which movants failed to provide the court with the tools necessary to assess reasonableness, the appellate court further stated:

> Each of the initial declarations submitted in support of class counsel's request for attorney fees reported the total number of hours spent in various generalized categories of services (ranging from six to 12) by all firm lawyers working on the . . . matter. . . .  Although most of the declarations also included the total number of hours spent by each lawyer on the case, none indicated how much time a specific lawyer spent on the tasks in a category, let alone on discrete projects. No time records were attached.

Id. at 1325.

In Concepcion, the trial court's tentative ruling included that the 720 hours seemed high and that it was unable to assess from the information provided in the declarations whether the time expended by the firms was necessary and nonduplicative, relying on In re Vitamin Cases, 110 Cal. App. 4th 1041, 1054 (2003) (expressing concern with "specter of duplicative and superfluous litigation and hence unnecessary fees and costs" in fee request following settlement of multiple, overlapping private putative class actions).  Concepcion, 223 Cal. App. 4th at 1325.

In Concepcion the trial court gave movants the opportunity to provide additional documentation of the fees and costs incurred to allow it to determine the number of hours reasonably worked for inclusion in the lodestar calculation.  Id.  Here, however, Trump University cautions the Court in providing Makaeff's counsel with this courtesy given the tenor of their Motion and cavalier attitude toward their burden of proof— thinking that vilifying Trump University will convince this Court to simply rubber stamp the request.  However "[a] trial court may not rubberstamp a request for attorney fees, but must determine the number of hours reasonably expended."  Donahue v. Donahue, Cal. App. 4th 259, 271 (2010).  Moreover, the actual time is not controlling[15] and thus providing the invoices at this late stage will only serve to increase fees in connection with this Motion.  The Court is well within its discretion to deny the request ///

---
[15] See footnote 9, supra.

outright for failing to provide the necessary information in the first place.  See Serrano, 32 Cal.3d at 635.

Absent an outright denial, Trump University submits that further briefing is not necessary.  Having been provided no breakdown of hours by tasks, Trump University has undertaken the burden of reviewing each described task and ascribing a reasonable time commitment for each task on a chart attached as Exhibit 1 to the Catherwood Dec. ("Trump University Chart").  As discussed below, the reduction of hours spent in connection with the Anti-SLAPP motion from the 2225.85 down to 492.25 hours as outlined in the Trump University Chart is appropriate.  Support for denial or substantial reduction of fees for some of the specific task categories is set forth below and supports Trump University's request that the Court adopt the analysis provided in the Trump University Chart.[16]

### (2)   Time Spent Soliciting Amicus Briefs Was Not Directly Related To The Motion and Thus, Not Compensable

Trump University recognizes that courts have, in limited circumstances, allowed recovery for the time spent soliciting public support if it is directly related to furthering the Anti-SLAPP motion.  See United States of America v. City and County of San Francisco, et al., 748 F. Supp. 1416, 1423 (1990).  However, in this case the time described in the Eck Dec. at ¶¶ 7, 32 and Isaacson Dec. at ¶¶ 16, 17, 22 regarding lobbying for amicus support is excessive and billed at partner level rates with no explanation as to why the lowest billing associate or paralegal did not perform this task. Moreover, there is no nexus between this activity and the success of the motion.  In fact, the BBB declined to submit a brief.  See Eck Dec at ¶ 38.  This time should be denied.

---

[16] If the Court considers allowing additional evidence at this late juncture, it must permit Trump University access to whatever is provided to the Court.  As we learned in Concepcion, supra, it is not permissible, for the Court to invite an in camera review of timesheets and billing records not also made available to the opposing side and an opportunity for further argument based on the supplemental evidence presented. Concepcion, 223 Cal. App. 4th at 1327.

### (3)   Attorney Time Spent Educating the Lawyer is Not Compensable and Certainly Not at Partner Rates

Makaeff's counsel admits it has no experience with Anti-SLAPP motions and had seven partners, four associates, two staff attorneys, and a paralegal working on this motion.  See Eck Dec. at ¶¶ 6, 9, 21; Jensen Dec. at ¶¶ 7, 11, 13; Isaacson Dec. at ¶ 14. The excessive staffing when compared to the three outside attorneys working for Trump University on the Motion and one in house counsel working on the appeal supports a conclusion that Makaeff's fees include duplicative work and that higher billers were performing services that were better allocated to those with lower billing rates. Additionally, time spent talking with outside "experts, professors and experienced practitioners" (see Eck Dec. at ¶ 6) should not be compensable.  An experienced partner should be able to file a simple Anti-SLAPP motion without essentially going back to school.  Further, Isaacson states he reviewed publications, etc. in Paragraph 15 of his declaration.  Such review is not relevant to the appeal because it is not part of the record on appeal.  Mr. Isaacson's work should have been limited to the Court's record.  These facts justify a substantial reduction in fees.

### (4)   Time Spent on the Unsuccessful Motion for Reconsideration Should Not be Awarded

Here, in addition to the original motion, which only involved a counter-claim with a single cause of action as compared to the two causes of action dealt with by Attorney Coates in the City of Colton case, supra, Makaeff admittedly expended time on an unsuccessful motion for reconsideration.  Although Makaeff did not disclose just how much that was spent, her counsel said it was a "considerable amount of time."  Eck Dec. at ¶¶ 27, 28.  This time should be eliminated because there is no evidence that it assisted in the ultimate success to the Anti-SLAPP motion on remand from the Ninth Circuit and Judge Gonzalez found there was no proper basis for the motion.  At most, the Court should allow no more than 60.25 hours total as set forth in the Trump University Chart (Task Nos. 9, 11, 12).

**(5)     Time Spent Drafting Motions Should be Limited to the Reasonable Hours Suggested by Trump University**

The Court should adopt the hours for time related to preparing the motion suggested in the Trump University Chart  (Task Nos. 2, 4, 6, 7, 9, 11, 14, 15, 37, 39), with a further reduction of 60.24 hours discussed in Section (4), above, because the relevant case law and confirmation of time spent by Yunker & Schneider supports a finding that the suggested hours for these tasks is reasonable.

**(6)     Time Spent on the Appeal Brief Should be Limited to the Reasonable Hours Suggested by Trump University**

The Court should adopt the hours for time related to the appeal suggested in the Trump University Chart (Task Nos. 13, 17, 18, 20, 22, 24, 25, 28, 31) because based on the relevant case law and confirmation of time spent by in house counsel for Trump University on these tasks, the hours are reasonable.  For example, on Task No. 31, Isaacson states he spent considerable time on the motion to transfer jurisdiction on the appellate fees to the District Court but he declined to advise the Court that he met and conferred with Ms. Martin who advised him that Trump University would not oppose the motion.  See Catherwood Dec. at ¶ 12.  This time should be denied as unnecessary, but if allowed, a reasonable time to prepare the motion is no more than one hour.

**(7)     Time Spent on Identifying Particular Documents Containing the Alleged Defamatory Statements Should be Limited to the Reasonable Hours Suggested by Trump University**

Makaeff's counsel makes numerous references to Trump University's alleged refusal to provide the defamatory documents.  See Eck Dec. at ¶¶ 18, 22, 23, 24.  What they do not tell the Court is that Trump University offered to provide the documents as part of a mutual exchange and Makaeff's counsel refused.  See Catherwood Dec. at ¶ 10.  Moreover, Makaeff could have identified the documents given they were quoted in the counter-claim at ¶¶ 6, 22, 23.  Finally, Makaeff's counsel admits to her client withholding documents which she alleges she just found when the deposition was scheduled on the malicious intent issue.  Eck Dec. ¶ 46.  Clearly there are two sides to ///

12

the alleged behavior of counsel and the Court's focus should remain on reasonable hours spent.

### (8)    Time Spent on "Mock" Exercises Should be Denied

The mock argument for the appeal, described by Eck at paragraph 35 of her declaration, appears to be excessive time and duplicative.  Moreover, it should be unnecessary for someone of Isaacson's experience and time for this should be denied.  Thus, the time suggested for Task No. 25 in the Trump University Chart of 25 hours total should be found reasonable.

### (9)    Time Spent Preparing Makaeff for Deposition Should be Limited to 4 Hours

The time spent preparing Makaeff for a fourth deposition, although not quantified, appears excessive – "Numerous hours over the course of a week."  Eck Dec. ¶ 45.  The fact that so much time was spent with Makaeff raises concerns as to whether more was occurring than just deposition preparation.  The parties agreed to limit the scope to the issue of malice and the time to no more than two hours.  Preparing a witness over several days, who had already been prepared for prior deposition, appears more than excessive.  Thus, the time suggested in the Trump University Chart for Task No. 34 of 4.0 hours should be found to be reasonable.

In addition to the excessive total hours spent, the proposed rates for attorneys with no experience with Anti-SLAPP motions are unreasonable.

### B.    The Hourly Rates Sought by Counsel Are Not Reasonable

The standard for determining hourly rates for the lodestar calculation as correctly described by Makaeff citing PLCM Group v. Drexler "is that prevailing in the community for similar work."  See Motion at p. 10, ll. 2-3.  After identifying the correct standard, Makaeff's counsel ignored their burden and instead spent considerable time extolling their professional accomplishments in class action litigation (not Anti-SLAPP litigation) outside of the San Diego community in the hopes of justifying their premium hourly rates.  However, even Makaeff's own "expert" opines that the rates charged are

13

high.  See Olson Dec. at ¶ 15.  [Dkt. No. 331-4.]  The rate surveys attached as Exhibit "A" to the Olson Dec. lists San Diego hourly rates for associates between $262.08-$290.28 and partners of $423.78-$443.69 in 2012.  See Olson Dec. at Ex. "A," p. 27 of 135.  The surveys further lists rates for law firms of 101-250 attorneys at $254.59-$277.81 for associates and $399.72-$422.35 for partners.  See Olson Dec. at Ex. "A," p. 29 of 135.  The rate surveys for experience level of less than 21 years has partners billing at $460.75-$483.88.  See Olson Dec. at Ex. "A," p. 33 of 135.  Associates with 3-7 years' experience bill at $313.27-$318.52.  See Olson Dec. at Ex. "A," p. 37 of 135.  Finally, the rates in San Diego for litigation matters for partners run from $175.00-$327.50 and for associates $150.00-215.00.  See Olson Dec. at Ex. "A," p. 62 of 135.  Given the admission of no experience with Anti-SLAPP motions and what appears to be too many partners working on a simple motion that typically would be managed by a lower billing associate, the blended rate should be no more than $300 per hour.  This is supported by reported decisions involving San Diego law firms seeking fees for Anti-SLAPP motions.

In Ravet v. Stern, 2010 U.S. Dist. LEXIS 79589, the court provides a good description of the hourly rates in San Diego.[17]  In that case,  the court considered the declaration of attorney Stern who established that the hourly rate he charged was $350. In support of this hourly rate, Stern discussed his qualifications. Specifically, Stern had practiced in California since 1981, had experience in handling complex civil litigation, and had ten years of litigation experience with Ravet involving four separate lawsuits. Stern also argued that the present proceeding was complex and involved multiple motions and an appeal.  The court also considered the supporting declaration of Attorney Grebing[18] which stated that the "customary hourly rates of attorneys

---

[17] The entire fee request in this complex case was only $43,185.00.

[18] Mr. Grebing appears to have appeared in a capacity similar to that of Ms. Sobel or Mr. Olsen.

performing this type of work range between $285 and $375 per hour." Based on these documents, the complex and lengthy nature of this case, and the Court's familiarity of the rates charged in the San Diego community, the Court found that the $350 hourly rate was reasonable citing Fleming v. Coverstone, 2009 U.S. Dist. LEXIS 22083, 2009 WL 764940, at *7 (S.D. Cal. 2009) (finding that $425 for the shareholder, $245 for the senior associate, and $220 for the junior associate were reasonable hourly rates for Anti-SLAPP attorneys' fees based on the Court's "knowledge of prevailing standards in the community and absent any objection to the attorneys' per hour fees"); and Cornwell v. Belton, 2008 U.S. Dist. LEXIS 907, 2008 WL 80724 (S.D. Cal. 2008) (granting attorneys' fees pursuant to Cal. Civ. Proc. Code § 425.16 in a case where attorneys charged hourly rates of $400 for the lead counsel and partner in the firm, $350 for appellate and law and motion counsel, and $250 for associates in an Anti-SLAPP proceeding). See Ravet v. Stern, 2010 U.S. Dist. LEXIS 79589. See also Michael J. Zwebner, et al. v. James W. Coughlin aka Irishjim44, 2008 U.S. Dist. Lexis 39702 (S.D. CA May 15, 2008) (The Court awarded $39,754.16 in attorneys' fees and costs pursuant to CCP § 425.16 (c))[19]; John Brown Kearney v. Foley & Lardner 2008 U.S. Dist. Lexis 21115 (USDC SD CA May 18. 2008) (billing rates for Anti-SLAPP motion ranged from $72-170 per hour); Stanley P. Berman v. Julie McManus 2012 U.S. Dist. Lexis 58763 (ED CA April 26, 2012) (Time spent on Anti-SLAPP motion 5.6 hours by Partner and 60.1 hours by Associate). These cases establish that a reasonable rate for Anti-SLAPP motions in the San Diego community is less than $400 per hour, with less experienced counsel commanding rates closer to $200 per hour.

At best, associate level billing rates should be applied for all tasks given the lack of experience of the partners on the file with respect to Anti-SLAPP motions. The fact that the associate and staff attorneys working on the case only billed 516.55 hours

---

[19] The law firm representing the defendant was Luce Forward, the same firm identified in the rate surveys relied on by Makaeff. Thus, this is evidence that the time spent on the Anti-SLAPP motion should not exceed $39,000.

collectively, and the seven partners billed 1402.80 hours collectively, evidences the top-heavy staffing resulting in unreasonable high lodestar sought by Makaeff.  The Court should impose an across the board rate, blended hourly rate of no more than $300 per hour.

Based upon the forgoing, the lodestar fee should be calculated using no more than 492.25 hours times $300 blended hourly rate for a total lodestar fee of $147,675.00.  See Catherwood Dec. at Ex. 1.

### C.    The Court Should Not Apply An Upward Multiplier But Should Consider a Reduction Under the Facts of this Case

In most cases, the lodestar figure is presumptively a reasonable fee award, but the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it.  Morales v. City of San Rafael, 96 F.3d 359, 364 (9th Cir. 1996), Camacho v. Bridgeport Financial, Inc., 523 F.3rd 973, 978 (9th Cir. 2008).  The district court may make upward or downward adjustments to the presumptively reasonable lodestar based on the facts set out in Kerr, 526 F.2d at 69-70.

Here the Court should reduce Makaeff's lodestar calculation of $1,333,004.25 to no more than $147,675.00 as set forth in the Trump University Chart and reported decisions involving San Diego attorneys dealing with Anti-SLAPP motions.  This is justified given the applicable factors for any adjustment weigh in favor of reducing any award as discussed below.

The first factor (time and labor required) was at best, average, or wasted on motions that were unsuccessful.  See Catherwood Dec. at Ex. 1 (original motion and motion for reconsideration failed.)  This factor weighs in favor of reducing fees.

The second factor (novelty and difficulty) also weighs in favor of reducing the fees.  This was a relatively straight forward case involving a single count counter-claim from Defendant and Makaeff's excessive and top-heavy staffing, consultants with numerous outside partners, including professors, holding mock arguments, and the like ///

16

was simply not warranted as evidenced by the reported decision in the San Diego community (not Los Angeles where Ms. Sobel practices).

The third factor (skill) weighs in Defendant's favor as well given that much of the work done by partners should have been done by associates or secretaries and both law firms working for Makaeff admit to having no experience with Anti-SLAPP motions.

The fourth factor (whether Makaeff's counsel were precluded from other employment) weighs in favor of a reduction of fees. Robbins Geller is a national firm with over 200+ lawyers, and given the excessive staffing, this factor does not warrant any upward adjustment.

The fifth factor (customary fee) weighs in favor of a reduction. Counsel admittedly has no experience with Anti-SLAPP motions and has relied on billing surveys for locations other than San Diego (which Trump University moves to strike).

The sixth factor (fixed or contingent fee) is the only factor addressed by Makaeff. However, this case is pending in Federal Court, and contingency multipliers are not allowed in fee shifting cases. This Court should not apply a contingency multiplier. See Gates v. Deukmejian, 987 F.2d 1392 (9th Cir. 1992). In Gates, the court, in declining to apply a multiplier on a contingency case in the fee shifting context stated:

> In Dague the Supreme Court addressed whether, in determining an award of attorney's fees under section 7002(e) of the Solid Waste Disposal Act, 90 Stat. 2826, as amended 42 U.S.C. § 6972(e), or section 505(d) of the Federal Water Pollution Control Act, 86 Stat. 889, as amended, 33 U.S.C. § 1365(d), a court "may enhance the fee above the 'lodestar' amount in order to reflect the fact that the party's attorneys were retained on a contingent-fee [**31] basis and thus assumed the risk of receiving no payment at all for their services. City of Burlington v. Dague, 120 L. Ed. 2d 449, 112 S. Ct. 2638, 2639 (1992).

> In its June 24, 1992 opinion in Dague the Court answered this query with a resounding "no," when it held "that enhancement for contingency is not permitted under the fee shifting statutes." Id. at 2643-44. Although the Solid Waste Disposal and Federal Water Pollution Control Acts and not § 1988 were at issue in Dague, the Dague Court expressly noted that the language of both of these sections "is similar to that of many other federal fee-shifting statutes, see, e.g., 42 U.S.C. §§ 1988, 2000e-5(k), 7604(d); our case law construing what is a 'reasonable' fee applies uniformly to all of them." Id. at 2641 (citing Flight Attendants v. Zipes, 491 U.S. 754, 758 n. 2, 105 L. Ed. 2d 639, 109 S. Ct. 2732 (1989)).

17

4828-1152-3100.1

> Given the Court's holding in <u>Dague</u>, it is clear that contingency multipliers are no longer permitted under § 1988.  Thus, we reverse the portion of the district court's amended order awarding a 2.0 [**32] contingency multiplier in this case.

<u>Gates</u>, 987 F.2d at 1403.

If this Court declines to apply Ninth Circuit law, which Trump University believes would be in error, Trump University acknowledges that in California superior courts "[a]n enhancement of the lodestar amount to reflect the contingency risk is "[o]ne of the most common fee enhancers …." <u>Graham v. DaimlerChrysler Corp.</u>, 34 Cal. 4th 553, 579 (2004).

> The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights … into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis."

<u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (2001).  Thus, as explained in <u>Ketchum</u>, the lodestar enhancement "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees."  Id. at p. 1138.  However, here, the attorneys are not sole practitioners, in fact they had seven partners working on a simple Anti-SLAPP motion at hourly rates ranging from $600-825, as compared to Trump University's three lawyer team who are based in San Diego all with rates of $400 or less and San Diego rates in the $200-400 range based upon reported decisions and Exhibit "A" to the Olson Dec. at p. 62 of 135.  <u>See</u> Catherwood Dec. at ¶ 7.  Additionally, although the matter extended for four years, the actual time elapsed during the actual working periods related to the Motion was approximately 15 months.  <u>See</u> Catherwood Dec. at Ex 1.

The seventh factor (exigent time constraints) does not appear applicable.

The eighth factor (amount involved and results obtained) weights in favor of a decrease.  Makaeff obtained no certain or proven public benefit.  Additionally, Trump University prevailed at all levels until the Ninth Circuit overturned Judge Gonzalez's ruling.  Additionally, the Chief Judge of the Ninth Circuit essentially invited Trump

18

4828-1152-3100.1

University to file its request for en banc rehearing.  Although, this was denied, it was certainly filed in good faith.

The ninth factor (experience, reputation and ability of counsel) weighs in favor of reduction given that it appears the case was over staffed with partners with no experience with Anti-SLAPP motions.

The tenth factor is at best neutral as there is no undesirability.  Additionally, the payment risk is known by Makaeff and her counsel.

The eleventh factor (relationship with client) also weighs in Trump University's favor since counsel continues to represent Makaeff in the main case.

Finally, Makaeff's mudslinging that Trump University used scorched earth tactics is not true and not relevant.  This was an ordinary Anti-SLAPP motion that Trump University appropriately and reasonably defended and should not be penalized for refusing to settle as noted by Serrano, supra, that such imposition of a Hobson's choice is not permitted in Federal Court.  See footnote 8, supra.

Based upon the Kerr factors and Serrano, supra, reducing the fees to $0 would not be an abuse of discretion.  However, should the Court contemplate awarding any amount of attorneys' fees to Makaeff, those fees should reflect an appropriate allocation and be reduced as set forth in the Trump University Chart and reject Mr. Olson's suggestion that a 1.5 upward multiplier should be applied.

In support of his position that a 1.5 upward multiplier is appropriate, Mr. Olson states:

> Floating over $1 million of fees and costs for years, and risking their non-payment could endanger the viability of a small firm and could be financially devastating to a solo practitioner.  For that reason, it would be justifiable for counsel to request a multiplier of 1.5 for contingent risk because if they had lost the anti-SLAPP motion they would not have been paid.

See Olson Dec. at paragraph 15.  This analysis is flawed.  First, Gates, supra, does not allow a multiplier in matters involving fee shifting statutes in Federal Court.  Given that the Ninth Circuit ruled that Anti-SLAPP motions apply in federal court, the federal

19

standard for denying a multiplier under <u>Gates</u>, should apply.  Moreover, the contingent nature of the work was mitigated by the fact that there is a statutory right to recover attorneys' fees for this work.  Thus, there was no risk.  Makaeff cannot have it both ways, she cannot argue on the one hand that it was outrageous for Trump University to refuse to dismiss its counter-claim and this failure caused increased fees, while on the other hand, admit that this was a close case requiring extensive attorney time at exorbitant billing rates.

Finally, and perhaps the most compelling facts to decline to impose an upward multiplier suggested by Mr. Olson, Trump University prevailed at the trial court level and defeated Makaeff's meritless motion for reconsideration.  Additionally, the ruling of the Ninth Circuit included an invitation from Judge Kozinski to file the motion for <u>en banc</u> review.  Thus, it is hard to find fault for Trump University following the lead of those learned jurists.  Thus, a conclusion that the filing of the counter-claim and defending through the appeal was in good faith and that the lodestar suggested above is adequate is more than justified.

## III.   THE COSTS SHOULD BE DENIED

Makaeff seeks to recover costs in the following categories:  (1) Meals, hotels & transportation; (2) photocopies; (3) facsimile; (4) messenger, overnight delivery; (5) video deposition of Makaeff; (6) Lexis, Westlaw, online library research; (7) publications; and (8) Miscellaneous deposition costs.  The Court should deny the request.

There is no detailed explanation as to the use of messengers and those costs should be disallowed.  There is no detailed explanation of what "Miscellaneous deposition costs" consist of and should be disallowed.  Likewise, there is no detailed explanation as to the copy costs or online research to indicate that it was limited to the Anti-SLAPP motion.  As for the request for reimbursement for meals, hotels & transportation, Makaeff's counsel is aware that seeking recovery of such costs is not appropriate without a very detailed explanation as it was admonished for seeking such

costs in an unrelated proceeding.  See Catherwood Dec., Ex. 2.  The purchase of publications is not warranted given the free access to public law libraries in this state. Moreover, the publications were used by the appellate lawyer, Mr. Isaacson, whose analysis should have been limited to the record not reading books authored by Donald Trump, who was not even a party to the counter-claim.

To the extent that the Court believes California state law should apply to the reimbursement of costs on an Anti-SLAPP motion in Federal Court, CCP § 1033.5(b) limits what are appropriate costs.  This section specifically excludes the recovery of certain costs.  Specifically, § 1033.5(b) states:

> (b) The following items are not allowable as costs, except when expressly authorized by law:
>
> (1) Fees of experts not ordered by the court.
> (2) Investigation expenses in preparing the case for trial.
> (3) Postage, telephone, and photocopying charges, except for exhibits.
> (4) Costs in investigation of jurors or in preparation for voir dire.
> (5) Transcripts of court proceedings not ordered by the court.

As provided in CCP § 1033.5(b)(2), costs of Mr. Isaacson's investigation are not recoverable.  This statute also supports a denial of copy costs, except for trial exhibits, and the video deposition.  CCP § 1033.5(b)(3) and (5).

In the event that the Court believes the federal standard for costs should apply, the costs are also limited.  Specifically, 28 USC § 1920 "Taxation of costs"  provides for the following costs:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title [28 USCS § 1923];
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].

///

21

4828-1152-3100.1

In <u>Berman</u>, <u>supra</u>, the court denied recovery of copy costs where the record made it impossible to tell whether these charges were actually incurred in furtherance of the anti-SLAPP motion given that the nature of the copies was unexplained, and the copies were made long after the anti-SLAPP motion was filed.  <u>Berman</u>, 2012 U.S. Dist. Lexis 58763.  Here, the actual bills for the copy costs were not provided and thus, this Court cannot confirm whether the copies were for this motion of for other matters in the un-stayed portion of the case.

As noted above, Makaeff's counsel is well aware that the costs must be explained in detail with backup.  <u>See</u> Catherwood Dec. at Ex. 2.  This was not done.  The costs should be denied in their entirety.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully request that the Court deny Makaeff's Motion, or at a minimum substantially reduce the requested fees to no more than $147,675.00, deny all costs, and grant such further and other relief the Court may deem appropriate.

Dated:  July 18, 2014

**FOLEY & LARDNER LLP**
NANCY L. STAGG
BENJAMIN J. MORRIS


By:   *s/ Nancy L. Stagg*
NANCY L. STAGG
Attorneys for Defendants Trump
University, LLC and Donald J. Trump
nstagg@foley.com

4828-1152-3100.1

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 18, 2014 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.


      *s/ Nancy L. Stagg*
      Nancy L. Stagg

4828-1152-3100.1