ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                                   Plaintiffs,<br><br>     vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>                                   Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES |

982752_1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  RELEVANT PROCEDURAL HISTORY ....................................................... 2

III. GOOD CAUSE EXISTS FOR PLAINTIFFS TO USE THE
     BALANCE OF THEIR 7 HOURS TO EXAMINE DEFENDANT
     TRUMP ........................................................................................................ 3

     A.   Defendants' Failure to Provide Key Evidence Is Well
          Documented in This Case ..................................................................... 4

     B.   Courts Permit Additional Time When Relevant Documents Are
          Provided *After* the Deposition .............................................................. 5

     C.   Plaintiffs Requested the Relevant Documents Prior to the
          Depositions, but They Were Not Provided Until Afterwards, if
          at All ...................................................................................................... 7

IV.  PLAINTIFFS SHOULD BE PERMITTED 4 HOURS TO EXAMINE
     MR. SEXTON IN HIS PERSONAL CAPACITY ......................................... 13

V.   THE PARTIES SHOULD BE AFFORDED AN OPPORTUNITY TO
     DEPOSE THEIR OPPONENT'S TRIAL WITNESSES ............................. 16

VI.  CONCLUSION .......................................................................................... 18

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4
5
6

*All Star Seed v. Nationwide Agribusiness Ins. Co.*,
No. 12CV146-L (BLM), 2013 U.S. Dist. LEXIS 64587
(S.D. Cal. May 3, 2013) .......................................................................... 6

7
8

*Brown v. Deputy #1*,
No. 12-cv-1938-GPC (BGS), 2014 U.S. Dist. LEXIS 29130
(S.D. Cal. Mar. 5, 2014) ........................................................................ 18

9
10

*Cohen v. Trump*,
No. 3:13cv-2519-GPC (WVG).............................................................*passim*

11
12

*Dixon v. Certainteed Corp.*,
164 F.R.D. 685 (D. Kan. 1996) ............................................................... 7

13
14

*Dynetix Design Solutions, Inc. v. Synopsys Inc.*,
No. CV 11-05973 PSG, 2012 U.S. Dist. LEXIS 169015
(N.D. Cal. Nov. 27, 2012) ..................................................................... 13

15
16
17

*Kress v. Price Waterhouse Coopers*,
No. CIV S-08-0965 LKK GGH, 2011 U.S. Dist. LEXIS 126224
(E.D. Cal. Nov. 1, 2011)..................................................................... 6, 13

18
19

*Miller v. Fed. Express Corp.*,
186 F.R.D. 376 (W.D. Tenn. 1999).......................................................... 6, 7

20
21

*Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) ............................................................................ 11

22
23

*Oakes v. Halvorsen Marine Ltd.*,
179 F.R.D. 281 (C.D. Cal. 1998) ............................................................ 11

24
25

*SEC v. Aqua Vie Beverage Corp.*,
No. CV 04-414-S-EJL, 2006 U.S. Dist. LEXIS 59709
(D. Idaho Aug. 23, 2006)......................................................................... 5

26
27

*Shinde v. Nithyananda Found.*,
No. EDCV 13-0363 JGB (SPx), 2013 U.S. Dist. LEXIS 70002
(C.D. Cal. May 10, 2013) ...................................................................... 11

28

1
2                                                                          **Page**
3
4   *Trovan, Ltd. v. Pfizer, Inc.*,
        No. CV-98-0094 LGB, 2000 U.S. Dist. LEXIS 7522
5       (C.D. Cal. May 23, 2000) ................................................................... 11

6   *United States v. Procter & Gamble Co.*,
        356 U.S. 677 (1958) ......................................................................... 16
7

8   *Wesley v. Gates*,
        No. C 08-2719 SI, 2009 U.S. Dist. LEXIS 62814
9       (N.D. Cal. July 2, 2009) ................................................................... 13

10  **STATUTES, RULES AND REGULATIONS**
11
    Federal Rules of Civil Procedure
12      Rule 16 ............................................................................................. 4
13      Rule 26(a) ......................................................................................... 7
        Rule 26(a)(1)(A)(i) ......................................................................... 18
14      Rule 26(b)(2) ............................................................................... 5, 6
15      Rule 30(a)(1) ................................................................................... 2
        Rule 30(a)(2)(A) ............................................................................. 6
16      Rule 30(b)(1) ........................................................................... 13, 14
17      Rule 30(b)(6) ..................................................................... 1, 13, 14
        Rule 30(d) ....................................................................................... 5
18      Rule 30(d)(1) ................................................................................... 5
19
    California Civil Code
20      §1750. ........................................................................................... 10
21
    California Welfare & Institutions Code
22      §15600. ......................................................................................... 10
23  Florida Statutes
        §817.41 ......................................................................................... 10
24
25
26
27
28

1    Plaintiffs respectfully submit this memorandum concerning the following
2    discovery disputes:  (1) continuing the deposition of Donald Trump; (2) deposing
3    Michael Sexton in his personal capacity; and (3) requesting an order that the parties
4    will be afforded an opportunity to depose the opposing side's trial witnesses.[1]

5    **I.    INTRODUCTION**

6    The point of civil discovery under the Federal Rules of Civil Procedure
7    ("Rules") is to require transparency so there are no surprises at trial.  Mr. Trump's
8    approach to discovery is just the opposite.  Mr. Trump kept plaintiffs in the dark about
9    critical evidence until after defendants' depositions and refuses to answer to it now
10   that the true facts have come to light.  Plaintiffs are entitled to a fair examination of
11   Messrs. Trump and Sexton and thus must have an opportunity to ask them about later-
12   produced evidence before any trial in this case.

13   Specifically, before taking the depositions of defendant Trump as well as
14   Mr. Sexton in his Rule 30(b)(6) capacity on behalf of Trump University, LLC,
15   plaintiffs asked for relevant documents and even delayed the depositions until after
16   they were produced.  But, it turns out that key documents were not produced until
17   much later and even now defendants have never produced some of the most critical
18   evidence.  In fact, defendants have continued producing documents as recently as
19   today.  Plaintiffs are entitled to question Messrs. Trump and Sexton about the subject
20   matter of these later-produced documents and other recent evidence.

21   In addition, defendants refuse to exchange trial witness lists with plaintiffs or
22   otherwise agree that each side will get an opportunity before trial to depose anyone
23   appearing on a trial witness list who has not yet been deposed.  In a complex class
24   action case, like this, where the individuals appearing on defendants' initial

25
26   [1]  When the parties first contacted Chambers, several other disputes existed.
     However, the Court has since resolved two of those issues (*see* Dkt. No. 352).  The
27   parties will address merits discovery in the related matter of *Cohen v. Trump*, No.
     3:13cv-2519-GPC (WVG), in their Joint Discovery Plan, which is due on November
28   14, 2014.  *See Cohen* Dkt. No. 54 at 2.

1   disclosures far surpass the number of depositions allotted to plaintiffs, plaintiffs

2   should not have to take a shotgun approach or risk getting ambushed at trial.  Plaintiffs

3   thus request that the Court order that the parties will be given an opportunity before

4   trial to depose any individual not yet deposed who appears on a trial witness list.

5   **II.    RELEVANT PROCEDURAL HISTORY**

6          As this Court is aware, the parties have been working diligently to complete fact

7   discovery in this case.  As part of those ongoing discussions, on October 15, 2014,

8   class counsel reached out to defense counsel concerning a number of issues involving

9   the remaining depositions in this case as well as discovery in the related *Cohen* action.

10   *See* Declaration of Rachel L. Jensen in Support of Plaintiffs' Opening Memorandum

11   Regarding Discovery Disputes ("Jensen Decl."), ¶¶4-5, filed concurrently herewith.

12          Among other issues, plaintiffs asked defendants to agree that merits discovery

13   could proceed in the related *Cohen* action so that plaintiffs could take the depositions

14   of Messrs. Trump and Sexton in that case and avoid spending precious time and

15   resources squabbling with defendants about the propriety and/or scope of their

16   continued depositions in this case.  *Id.*, ¶4.  Plaintiffs' counsel  explained that, as a

17   practical matter, due to defendants' opposition to consolidation of the two cases, the

18   *Cohen* case remains a standalone case and thus plaintiff Cohen is entitled to 7 hours

19   with both of these witnesses about his class claims without leave of court pursuant to

20   Rule 30(a)(1).  However, defense counsel resisted producing either witness in *Makaeff*

21   and said it was premature to discuss *Cohen* merits discovery.  *Id.*, ¶6.  Given the

22   parties were unable to agree, plaintiffs advised that they would be forced to re-open

23   those depositions in this case.  *Id.*

24          Thereafter, on October 21, 2014, counsel for both sides met in person to confer

25   about this and other issues.  *Id.*, ¶7.  On October 22, 2014, defense counsel followed

26   up with an email rejecting plaintiffs' proposals and advising that defense counsel

27   would be available to call Chambers on October 27, 2014, which the parties did.  *Id.*,

28

¶8.  That same day, on October 27th, the Court granted class certification in *Cohen*, clearing the way for merits discovery to proceed in that case.  *See Cohen* Dkt. No. 53.

Also, during the parties' October 15, 2014 call, plaintiffs' counsel proposed that the parties should exchange trial witness lists prior to the discovery cut off so that each side could depose anyone on the other side's trial witness list who had not yet been deposed.  *See* Jensen Decl, ¶5.  Alternatively, plaintiffs proposed that, upon exchange of the trial witness lists prior to trial, each side would then have an opportunity to depose anyone on the other side's trial witness list who had not yet been deposed.  *See id*.  The parties met in person to confer about this issue on October 21, 2014, but the defendants ultimately rejected both of plaintiffs' proposals.  *Id.*, ¶¶7-8.

Plaintiffs believe these issues are now ripe and timely for the Court's assistance.

**III.    GOOD CAUSE EXISTS FOR PLAINTIFFS TO USE THE BALANCE OF THEIR 7 HOURS TO EXAMINE DEFENDANT TRUMP**

Plaintiffs have good cause to take the balance of their 7 hours to examine defendant Trump at deposition.  To date, plaintiffs have only used 3 hours, 19 minutes on the record.[2]  *See id*., ¶12.  Since then, defendants and third parties have produced thousands of pages of documents, as recently as today, including key evidence that plaintiffs believe support their class claims.  *See id.*, ¶21.  Defendants' failure to produce highly-relevant information in a timely fashion has been well documented in this case.  To have a fair examination, plaintiffs must be able to ask Mr. Trump about these documents and evidence that were not provided, if at all, until ***after*** his deposition.

---

[2]    The parties agreed to work cooperatively if either side believed in good faith they needed more time with a party witness, and plaintiffs have held up their side of the bargain by sitting for multiple days of deposition, including plaintiff Makaeff who sat for 15.5 hours of deposition in 4 sessions.  *See* Jensen Decl., ¶11.

## A. Defendants' Failure to Provide Key Evidence Is Well Documented in This Case

There is ample evidence that, despite plaintiffs' repeated requests, defendants have failed to timely produce key documents in this case.   Judge Curiel has "frown[ed] upon Defendants' delay in producing highly relevant information" in this case.[3]  *See* Dkt. No. 271 at 8.  And this Court's December 23, 2012 order on discovery disputes noted its concern that defendants failed to produce relevant documents that plaintiffs had secured from third parties, including the New York Attorney General ("NYAG") and the New York Better Business Bureau:

> Defendants' failure to produce these documents causes the Court concern about the diligence of Defendants' document search and production. While the Court is aware that Defendants' production of documents has been quite voluminous, it is disconcerting that these documents were not produced, especially in light of Defendants' firm assertions that they have conducted diligent and thorough searches, and have produced everything that they have found.  The documents that Plaintiffs have brought to the Court's attention are certainly a small fraction of the documents produced, but it still causes concern that the production was incomplete.

Dkt. No. 188 at 6-7.

Moreover, as to key documents concerning the New York State Education Department's ("NYSED") 2010 investigation that defendants had failed to produce, the Court stated:  "Again, this does cause the Court concern, but if the documents provided from these four secondary sources are the extent of the documents that Defendants failed to produce, then the situation is not nearly as dire as Plaintiffs contend."  *Id.* at 7.

As is now apparent, the failures that caused this Court concern in its prior order were ***not*** the extent of the documents that defendants failed to produce.  First and foremost, despite defendants' assertions that they conducted diligent and thorough searches, defendants have produced an additional 172,000 pages since the Court's

---

[3]   Though Judge Curiel ultimately denied plaintiffs' motion for leave to amend, the inquiry regarding leave to amend under Rule 16 is distinct from whether to grant leave to re-open a deposition due to a party's failure to timely produce documents.

December 23, 2012 order.  *See* Jensen Decl., ¶13.  Second, one of the most damning pieces of evidence in this case is a ***2005*** letter from the NYSED to Donald Trump, directing him to stop using the title "university" because it was illegal and that he needed to get a license to operate.  *See* Dkt. No. 221-2, Ex. 138 (NYSED 000106-07). Instead of complying, defendant Trump flouted the NYSED's directive for 5 more years.  To this day, defendants have ***never*** produced this document (nor a similar 2005 letter to Sexton from the NYSED), and plaintiffs were only able to obtain the letters from the NYSED in April 2013 pursuant to a second FOIA request.  And defendants continue to produce relevant documents, as recent as today, that were requested long ago.  *See* Jensen Decl., ¶21.

### B.   Courts Permit Additional Time When Relevant Documents Are Provided *After* the Deposition

Rule 30(d)(1) provides that a "court ***must*** allow additional time [for a deposition] consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."  Fed. R. Civ. P. 30(d)(1).[4]  One of the circumstances warranting further time is when relevant documents were not produced before the deposition.  *See* Fed. R. Civ. P. 30(d) Notes of Advisory Committee on 2000 amendments.  "The comments to Rule 30(d) state that examples of instances in which an extended deposition would be called for include 'instances where documents were requested but not produced prior to the deposition.'"  *SEC v. Aqua Vie Beverage Corp.*, No. CV 04-414-S-EJL, 2006 U.S. Dist. LEXIS 59709, at *10-*13 (D. Idaho Aug. 23, 2006) (granting continued deposition of witness who produced documents on the day of the deposition as plaintiff did not have an opportunity to examine these documents in advance so as to fully examine the witness at his initial deposition).

---

[4]   Here, and throughout, emphasis is added and internal quotation marks and citations are omitted unless otherwise noted.

When a party seeks to continue a deposition for good cause, "the court ***must*** grant leave to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2)(A). There is good cause when new documents or evidence were provided after the deposition. *See, e.g.*, *Kress v. Price Waterhouse Coopers*, No. CIV S-08-0965 LKK GGH, 2011 U.S. Dist. LEXIS 126224, at *5-*6 (E.D. Cal. Nov. 1, 2011) (permitting further depositions) (citing authorities); *All Star Seed v. Nationwide Agribusiness Ins. Co*., No. 12CV146-L (BLM), 2013 U.S. Dist. LEXIS 64587, at *19 (S.D. Cal. May 3, 2013) (granting motion to re-open depositions due to late-produced documents); *see also Miller v. Fed. Express Corp*., 186 F.R.D. 376, 389 (W.D. Tenn. 1999).

For example, in *Kress*, 2011 U.S. Dist. LEXIS 126224, at *5-*6, the court granted five additional hours of deposition of two named plaintiffs where the original depositions focused on their position as "associates" at Price Waterhouse Coopers for their overtime claims, whereas they ultimately represented the "senior associates" class. *See id.* at *4. In granting defendant leave to reopen their depositions, the court reasoned that the prior focus had been on the plaintiffs' work as "associates" rather than "senior associates," and that the witnesses had not co-operated as to documentary evidence placed before them. *Id.* at *8-*9. The court also noted that the "defendant reserved the right to further depose these individuals" at the end of the deposition. *Id.* at *4. Further, the court rejected the plaintiffs' suggestion that the defendant could obtain the needed information by means other than depositions. As the court reasoned: "The deponents' apparent disavowal of some documents is also a reason why plaintiffs' suggestion to obtain the needed information in a more convenient, less burdensome and less expensive way, such as by written discovery, will not work." *Id.* at *9. The court explained: "Such discovery will be responded to by attorneys who aid the plaintiffs in framing answers which does not promote the truth seeking endeavor as well as depositions." *Id.*

In *Miller*, the court granted the plaintiff in an employment discrimination class action the opportunity to re-open the deposition of her former managing director

1    where defendant produced 500 pages of documents "the day after" the initial

2    deposition. 186 F.R.D. at 389. The court reasoned that "existing case law, as well as

3    common sense, supports allowing redeposal where a party fails to disclose relevant

4    information in its Rule 26(a) disclosure which it later reveals only after an intervening

5    deposition has occurred." *Id.* (citing *Dixon v. Certainteed Corp.*, 164 F.R.D. 685,

6    690-92 (D. Kan. 1996)). Accordingly, the court ordered the "deposition be reopened

7    for the limited purpose of questioning him concerning the subject matter of the

8    documents produced the day after Bartosch was first deposed." *Id.*

9          **C.   Plaintiffs Requested the Relevant Documents Prior to the Depositions, but They Were Not Provided Until Afterwards, if at All**

10

11         On October 11, 2011, plaintiffs propounded their first set of document requests

12   ("RFPs") and other written discovery requests. Jensen Decl., ¶14. Plaintiffs' first set

13   of RFPs included requests for documents concerning any government investigation or

14   inquiry into Trump University, Better Business Bureau investigation or inquiry, Mr.

15   Trump's involvement in Trump University, scripts for the Live Events, customer

16   complaints, and financial information about defendants. *See* Ex. 1.[5] Plaintiffs

17   propounded additional document requests on March 30, 2012. *See* Jensen Decl., ¶15;

18   Ex. 2 (plaintiffs' second set of RFPs).

19         In May of 2012, plaintiffs noticed defendant Trump's deposition. *See* Jensen

20   Decl., ¶16. However, the deposition was continued several times, ultimately until

21   September, largely because defendants were still producing documents, and plaintiffs

22   wanted a chance to review and analyze the documents prior to this important

23   deposition. *See, e.g.*, Dkt. No. 104. At the end of the initial deposition session with

24   Mr. Trump, plaintiffs reserved their rights to continue the deposition if defendants

25   later produced relevant documents. *See* Ex. 3 (excerpts from Sept. 12, 2012

26   Videotaped Deposition of Donald J. Trump) at 1, 167:17-24.

27   _____

[5]   Here, and throughout, references to "Ex." are to the Exhibits 1-13 attached to the Jensen Declaration, unless otherwise noted.

28

It is now clear that plaintiffs' reservation of rights was justified.  In hindsight, defendants had produced only a fraction of the total relevant documents.  To give the Court some context, prior to Mr. Trump's deposition, defendants had produced 131,888 pages of documents.  Jensen Decl., ¶20.  Now, that number has jumped to 311,807 pages of documents.  *Id.*, ¶21.  That means nearly 180,000 pages of documents have been produced since Mr. Trump's deposition.[6]  This number does not include many documents produced to plaintiffs by third parties, including key documents that defendants have never produced to plaintiffs.

For illustration purposes, plaintiffs provide a chart of a sampling of key documents that were requested before Mr. Trump's deposition that were not produced (if at all) until after the deposition.  *See* Ex. 4.  The following are just examples of those key documents that plaintiffs obtained only after the depositions, despite having requested them beforehand.  First, plaintiffs demanded that defendants produce any scripts in their first set of RFPs served in October 2011.  *See* Ex. 1.  However, it was not until June 2013 that defendants finally produced a "Preview Script" ("Script"), containing misrepresentations about Mr. Trump's integral involvement in Trump University that defendants had denied existed to both this Court and plaintiffs for years.  *See* Dkt. No. 237-1, Ex. 2 to Forge Decl. (filed under seal).

In fact, defendants falsely represented to this Court in February 2013 that such scripts did not exist and accused plaintiffs of falsely alleging that they did:

> We have declarations from instructors and mentors that said there weren't any scripts.  But they [plaintiffs] claim that it's all scripted.  And so we said, okay, produce the script.

Dkt. No. 239 at 3 (citing transcript of February 22, 2013 hearing before the Honorable William V. Gallo ("Feb. 22, 2013 Hrg. Tr.") at 4:7-10).

---

[6]   Defendants may argue some of the pages produced since Mr. Trump's deposition are duplicates also produced to the New York Attorney General.  However, plaintiffs believe at least 121,638 pages were not duplicates.  Jensen Decl., ¶21.

1

> Either they [plaintiffs] have the script or they don't.  And we know that they don't, they know that they don't . . . .

2

3

*Id.* (citing Feb. 22, 2013 Hrg. Tr. at 5:8-9).

> But this whole 15 months of discovery we've been trying to – you know, it's laughable.  Where is the script?

4

5  *Id.* (citing Feb. 22, 2013 Hrg. Tr. at 6:11-12).  Clearly, plaintiffs cannot be faulted for

6  not questioning Trump earlier about the Script that defendants denied existed and

7  withheld until June 2013.

8        Similarly, Sexton's transmittal email attaching the Script and additional emails

9  in which Sexton explains how the presenters would be trained to use the Script were

10  withheld until June 2013.  *See* Dkt. No. 237-1, Ex. 2 to Forge Decl. (filed under seal).

11  And as recently as June 11, 2014, defendants have produced even more emails

12  referencing the Script.  *See* Jensen Decl., ¶21.

13        And, though plaintiffs demanded all documents relating to government inquiries

14  and investigations in October 2011 (*see* Ex. 1), it was not until April 2013 that they

15  obtained from the NYSED (not defendants), copies of the 2005 NYSED letters to

16  Messrs. Trump and Sexton, providing direct evidence of defendants' knowledge that

17  the "university" enterprise was unlawful.  *See* Dkt. No. 221-2, Ex. 138 (NYSED

18  000106-07); Ex. 5 (NYSED 000101).

19        Finally, emails showing that Mr. Trump's attorneys at Trump Organization set

20  up a "fictitious office" for Trump University to elude the NYSED in 2005 were

21  withheld until January 2013.  *See* Dkt. No. 221-2, Ex. 140 (TU 137770).

22        At the time of Mr. Trump's deposition, defendants maintained that the NYSED

23  had not contacted them until 2010.  The fact that the 2005 NYSED letter was sent

24  directly to Mr. Trump personally, and that he purposefully evaded authorities in the

25  aftermath of the NYSED's inquiry, changes the entire line of questioning that

26  plaintiffs would ask on that topic at Mr. Trump's deposition.

27        Other evidence has also come to light, providing good cause to re-open Mr.

28  Trump's deposition.  For example, Mr. Sexton provided sworn testimony in the

1   NYAG investigatory proceedings on July 25, 2012, which contradicts his and Mr.

2   Trump's testimony about Mr. Trump's substantive involvement in the selection of

3   Live Events instructors and the Live Events curriculum.   This testimony was

4   responsive to plaintiffs' RFP No. 13 served on October 11, 2011, yet plaintiffs were

5   unable to obtain a copy from defendants or the NYAG until the NYAG publicly filed

6   portions of Mr. Sexton's testimony on August 24, 2013.   *See* Ex. 6 (Exhibit B to

7   NYAG Petition).   Plaintiffs are entitled to examine Mr. Trump about Mr. Sexton's

8   testimony about his role in Trump University.

9       Additionally, testimony of two former "students" whose declarations were

10   submitted by defendants in opposition to class certification warrant further

11   examination of Mr. Trump.   First, Paula Levand testified in June 2013 about a

12   conference call that she believed Mr. Trump was on.   *See* Ex. 7 (excerpts from the

13   June 17, 2013 Videotaped Deposition of Paula Levand) at 102:15-104:25.   And,

14   another "student" Michelle Gunn testified last month that Mr. Trump endorsed her

15   teenage son's book around the same time that she provided feedback that resulted in a

16   declaration on behalf of defendants in opposition to class certification in *Cohen*.   *See*

17   Ex. 8 (excerpts from the Rough Draft of the Oct. 28, 2014 Videotaped Deposition of

18   Michelle Gunn) at 121:2-122:5.   Plaintiffs deserve an opportunity to examine Mr.

19   Trump as to his dealings with Ms. Gunn if defendants intend to present her testimony

20   in this case at trial.

21       Finally, plaintiffs have obtained publicly-available information about Mr.

22   Trump's net worth, but need to confirm it with Mr. Trump for purposes of punitive

23   damages.   Specifically, plaintiffs' class claims for violations of the California

24   Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §1750, *et seq.*), California

25   Financial Elder Abuse ("CFEA") (Cal. Welf. & Inst. Code §15600, *et seq.*), and the

26   Florida Misleading Advertising Law ("FMAL") (Fla. Stat. §817.41), all include

27   demands for punitive damages.   *See* Dkt. No. 128, ¶¶142, 211, 229; *see also* Dkt. No.

28   298 at 36 (certifying CLRA, CFEA and FMAL claims).   Plaintiffs' Prayer for Relief

1  in the Third Amended Class Action Complaint ("Complaint") asks for an award of

2  "compensatory, statutory and/or punitive damages."  Dkt. No. 129 at 82 (Prayer for

3  Relief, "B").   Defendants neither moved to dismiss nor strike these allegations;

4  instead, they answered the Complaint.  *See* Dkt. No. 132.

5       Mr. Trump's finances are directly relevant to assessing punitive damages.  *See*

6  *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) (holding that "evidence of a

7  tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive

8  damages that should be awarded"); *see, e.g.*, *Oakes v. Halvorsen Marine Ltd.*, 179

9  F.R.D. 281, 284-85 (C.D. Cal. 1998) ("[E]vidence of the net worth of the

10  counterdefendants is crucial to the issue of punitive damages.").  There must be "some

11  reasonable relationship between the punitive damage award and the defendant's

12  financial status."  *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-0094 LGB (MCx), 2000

13  U.S. Dist. LEXIS 7522, at *94-*95 (C.D. Cal. May 23, 2000).  "Just as a large

14  punitive damage award may be needed to punish and deter a wealthy defendant, a

15  smaller award is appropriate for a less wealthy defendant."  *Id.* at *95.  "A necessary

16  prerequisite to such a determination is the presence of meaningful evidence in the

17  record of the defendant's financial status." *Id.*

18       Plaintiffs seek verification of the publicly-available information about Mr.

19  Trump's wealth to present admissible evidence at the damages phase of any trial. This

20  will involve less than a dozen questions and not impose undue burden on defendant.[7]

21       Defendants are likely to argue that plaintiffs elected to take the deposition of

22  Mr. Trump when they did and now they are out of luck.  However, plaintiffs had

23  pushed back the depositions previously so they would take place after the production

24  ───────────────
[7]  Plaintiffs will forgo these questions if defendants will agree to stipulate to Mr.

25  Trump's net worth for purposes of any trial.  Should defendants argue plaintiffs failed
   to comply with state law procedures for punitive damages, that argument would fail

26  because state law procedures for punitive damages do not apply in federal court.  *See,*
   *e.g.*, *Shinde v. Nithyananda Found.*, No. EDCV 13-0363 JGB (SPx), 2013 U.S. Dist.

27  LEXIS 70002, at *46 (C.D. Cal. May 10, 2013) (rejecting defendants' argument that
   plaintiffs could not bring a claim for punitive damages because they failed to comply

28  with California's state law procedures for punitive damages against a religious entity).

1   of the key documents.  In fact, as evidenced in court filings in this case, plaintiffs

2   noticed the depositions in May 2012, but subsequently delayed the depositions in

3   large part because they wanted an opportunity to review relevant documents prior to

4   taking the deposition of Mr. Trump.  *See* Dkt. No. 106 at 3.  Plaintiffs cannot be

5   faulted for taking the depositions when defendants had represented they produced the

6   relevant documents.  Given that defendants were the ones who failed to timely

7   produce the documents, it should be defendants that have to deal with the

8   consequences, not plaintiffs.

9        Defendants may argue, on the other hand, that plaintiffs should have re-opened

10   Mr. Trump's deposition earlier.  If defendants also criticize plaintiffs for choosing to

11   take the deposition earlier, this is certainly a heads 'I win', tales 'you lose' argument.

12   Defendants cannot credibly accuse plaintiffs of not waiting long enough on the one

13   hand and then accuse them of waiting too long on the other.  Certainly, defendants

14   would not have been receptive to multiple requests by plaintiffs to continue Mr.

15   Trump's deposition in a piecemeal fashion whenever additional relevant documents

16   came to light.  Instead, plaintiffs were prudent to bring the issue to a head only once it

17   appeared that many of the relevant documents had been unearthed.  Further, in terms

18   of timely bringing this dispute to the Court, plaintiffs recently brought the issue to

19   defendants' attention and sought to reach agreement that these depositions could be

20   taken in *Cohen* because plaintiff Cohen is entitled to depose these witnesses without

21   leave of Court, and thus the parties would not have to needlessly spend time and

22   resources bickering and briefing this issue before the Court.  However, on October 22,

23   2014, the defendants rejected this proposal. Jensen Decl., ¶8.  Plaintiffs then brought

24   this issue promptly to the Court's attention on October 27, 2014, which was the first

25   day that defense counsel said they were available to call Chambers.  *Id.*

26        Plaintiffs are willing to go to New York to take Mr. Trump's deposition at his

27   office on a morning or afternoon of his choosing to minimize any inconvenience to

28   defendant.  Considering the importance of the issues at stake in this action, the amount

in controversy, and the needs of the case, the burden on Mr. Trump to sit for the balance of his 7 hours does not outweigh the benefit.  And, in the interest of a fair examination, plaintiffs are entitled to examine Mr. Trump directly without the interference of carefully crafted responses by his attorneys.[8]  *See Kress*, 2011 U.S. Dist. LEXIS 126224, at *9.

In light of defendants' failures to timely produce key documents, it would be manifestly unfair to deprive plaintiffs of the opportunity to examine Mr. Trump as to this evidence that was not produced until ***after*** his deposition, if at all.  Plaintiffs request the balance of their 7 hours to depose Trump.

## IV.   PLAINTIFFS SHOULD BE PERMITTED 4 HOURS TO EXAMINE MR. SEXTON IN HIS PERSONAL CAPACITY

Defendants also refuse to produce Michael Sexton, the former President of Trump University, who previously testified as a corporate designee in his Rule 30(b)(6) capacity.  *See* Ex. 9 (plaintiffs' Rule 30(b)(6) notice); Ex. 10 (excerpts from Aug. 22, 2012 Rule 30(b)(6) Videotaped Deposition of Michael Sexton ("Vol. I Sexton")) at 23:10-25:20.  Plaintiffs seek now to examine Mr. Sexton in his Rule 30(b)(1) personal capacity, or alternatively, continue his deposition for good cause.

"[D]epositions of an individual who is noticed as an individual witness pursuant to Fed. R. Civ. P. 30(b)(1) and who is also produced as a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) are presumptively subject to independent seven-hour time limits."  *Wesley v. Gates*, No. C 08-2719 SI, 2009 U.S. Dist. LEXIS 62814, at *4 (N.D. Cal. July 2, 2009); *Dynetix Design Solutions, Inc. v. Synopsys Inc.*, No. CV 11-05973 PSG, 2012 U.S. Dist. LEXIS 169015, at *6 (N.D. Cal. Nov. 27, 2012) ("The designation of Chan as Dynetix's 30(b)(6) witness does not somehow divest Synopsys' right to take the individual deposition of Mr. Chan.").

---

[8]   The Court may recall plaintiffs' view that they have received less than straightforward responses from defendants to their written discovery in the past. *See, e.g.*, Dkt. No. 330 at 3-4 (discussing defendants' evasive responses to plaintiffs' Requests for Admission).

1    Here, plaintiffs have taken the position that Mr. Sexton's prior deposition was

2    on behalf of defendant Trump University in his Rule 30(b)(6) capacity.[9]  Mr. Sexton

3    testified that he was designated as to the vast majority of the 18 topics set forth in

4    plaintiffs' Rule 30(b)(6) notice.  *See* Ex. 10 (Vol. I Sexton) at 23:10-24:21.  The

5    transcript reflects that both days of testimony were taken in Mr. Sexton's Rule

6    30(b)(6) capacity.  *Id.* at 1, 12:21-13:8, 14:20-22, 16:18-25:20, 271:24-272:5; Ex. 11

7    (excerpts from Aug. 23, 2012 Rule 30(b)(6) Videotaped Deposition of Michael Sexton

8    ("Vol. II Sexton")) at 279 ("Continued Videotaped Deposition of Michael Sexton,

9    30(b)(6) Witness"), 281:22-25 (Ms. Eck introducing herself to the witness and stating:

10   "We're continuing your 30(b)(6) deposition from yesterday[]" without objection from

11   defense counsel).  Accordingly, plaintiffs believe they are still entitled to examine Mr.

12   Sexton in his personal capacity in this case.

13       However, even if defendants take the position that some of Mr. Sexton's

14   testimony was in his personal capacity, good cause exists to re-open his deposition.

15   As shown above, good cause exists because key documents and other evidence

16   requested prior to Mr. Sexton's deposition in August 2012 came to light after the

17   deposition.  §III.  Further, plaintiffs reserved their rights to continue Mr. Sexton's

18   deposition at a later point and expressed their concerns that the documents produced

19   may have been incomplete.  *See* Ex. 10 (Vol. I Sexton) at 272:6-18.  Not only was

20   defendants' production incomplete as to documents provided but, as shown above, it

21   turned out that key documents were withheld by defendants until later, if they were

22   ever produced.  §III.C.

23       In addition to the documents discussed above as to Mr. Trump, Mr. Sexton

24   submitted a declaration after his deposition that contradicted his earlier testimony.

25   Mr. Sexton's declaration in opposition to class certification inaccurately represented,

26   among other things, that there was no script, that there was no PlayBook before 2010,

27

28   [9]   Plaintiffs also noticed the deposition of Mr. Sexton in his Rule 30(b)(1) capacity.

1    and that the Trump Main Promotional Video was only used sporadically.  *See* Dkt.

2    No. 138-3, Ex. 1 (Sexton declaration in opposition to class certification) (filed under

3    seal).  All of these propositions (and others) have been disproven since Mr. Sexton's

4    deposition.  Plaintiffs are entitled to cross-examine him on his later-filed declaration.

5         Though Mr. Sexton's declaration asserted that Trump University used no script

6    at any Live Event, *see id.* at 6, the Script documents produced in June 2013 squarely

7    disprove his testimony.  Further, the Script and related documents directly contradict

8    Mr. Sexton's sworn deposition testimony – in response to his own counsel's question:

9         Q.    Mr. Sexton, at any time, did Trump University provide its
          instructors or mentors with scripts to use for the 90-minute preview
10        presentation?

11        A.    No, we did not.

12   Ex. 11 (Vol. II Sexton) at 512:17-21.  Plaintiffs deserve an opportunity to examine

13   Mr. Sexton about this before trial.  And plaintiffs should get an opportunity to ask him

14   about the substance of the Script, which makes numerous representations to

15   consumers about Mr. Trump's involvement.

16        Similarly, when asked about the name change, Mr. Sexton testified that

17   defendants were contacted by the NYSED in spring of 2010.  *See* Ex. 10 (Sexton Vol.

18   I) at 160:6-14.  Further, Mr. Sexton testified that once the NYSED contacted them,

19   they changed the name from "Trump University" to "Trump Entrepreneur Initiative"

20   quickly.  *Id.*  Obviously, that testimony was inaccurate given what plaintiffs now

21   know about the 2005 letters from the NYSED to Mr. Trump and him, which were

22   obtained in April 2013.  §III.C.  And, the facts concerning the 2005 letter from the

23   NYSED and its aftermath changes the entire line of questioning that plaintiffs would

24   pursue at Mr. Sexton's deposition.

25        Accordingly, plaintiffs seek 4 hours to examine Mr. Sexton in his personal

26   capacity.  Again, they are willing to take the deposition at a date, time and location

27   convenient to Mr. Sexton to minimize the burden.  But it would be manifestly unfair

28   for plaintiffs to be foreclosed from examining Mr. Sexton considering the record here.

**V.     THE PARTIES SHOULD BE AFFORDED AN OPPORTUNITY TO DEPOSE THEIR OPPONENT'S TRIAL WITNESSES**

Finally, plaintiffs seek an order from this Court permitting each side to take additional depositions after the close of discovery of any individual appearing on the trial witness list of the opposing party who has not previously been deposed.  This order will mitigate the undesirable element of ambush or surprise at trial where the number of depositions afforded to the parties is far smaller than the universe of potential trial witnesses.

It is well established that the purpose of discovery is to "make a trial less a game of blindman's b[l]uff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).  Courts recognize that allowing pre-trial depositions, such as those potentially sought here, is particularly appropriate in complex litigation like this multi-state class action.  Indeed, the U.S. District Court for the Southern District of New York's Standing Order for the Pilot Project Regarding Case Management Techniques for Complex Civil Cases advises that "the Court should confirm that prior to trial the parties will be permitted to depose any trial witnesses who were not deposed prior to the filing of the Joint Final Pretrial Report."  Ex. 13 (Standing Order, Pilot Project Regarding Case Management Techniques for Complex Civil Cases (S.D.N.Y. Oct. 31, 2011)), at 1, 2, & 11-12.

Here, under the Court's current case management order, fact discovery is set to end on December 19, 2014.  *See* Dkt. No. 349.  However, because defendants will not agree to exchange their trial witness list before then, plaintiffs will not get a chance to review their trial witnesses until May 2015.  *Id.* at 3.  Obviously, that will be too late for plaintiffs to take the depositions of trial witnesses if not already deposed, unless the Court provides an opportunity for plaintiffs to take them after defendants provide their trial witness list.  And, in that regard, what is good for the goose is good for the

gander.  Plaintiffs agree that the same opportunity should be afforded to defendants so they may take the deposition of any witness who has not yet been deposed in this case.

Defendants may argue this order is unnecessary because the witnesses will be chosen from their Supplemental Initial Disclosures ("Defs' Supp. Initial Disclosures").  However, defendants' disclosures identify 43 individuals,[10] plus broad categories of persons who are not listed by name.  These vague categories include: (i) "Attendees of Trump University Programs"; (ii) "Former Defendants Employees and Contractors"; (iii) "Persons employed by or affiliated with programs, companies and workshops attended by plaintiffs"; and (iv) "Persons employed by or affiliated with plaintiffs' financial institutions."  Ex. 12 (Defs' Supp. Initial Disclosures) at 6. These vague categories of individuals, any of whom defendants may call at trial, number in the thousands, if not tens of thousands.

Compounding the problem, even where defendants have specifically identified witnesses by name in their Supplemental Initial Disclosures, the vague and generic subject matters fail to provide any indication as to their particular importance to defendants' case in chief.[11]  *See, e.g.*, Ex. 12 (Defs' Supp. Initial Disclosures) at 2-3 (repeating entries of "Trump University speakers, mentors and attendee satisfaction").

Plaintiffs have prioritized their depositions through their investigation and the evidence in the case and attempted to target individuals most likely to play a significant role in their case in chief and the defendants' defenses at trial.  However, defendants' universe of potential trial witnesses – comprised of potentially thousands of individuals if not more – is vastly larger than the permitted 20 party depositions and

---

[10]   Five of these individuals are named plaintiffs or their family members.

[11]   For example, while defendants identify Alex Grist as a person likely to have discoverable information to support their defenses on the subject matters of TU "speakers, mentors and attendee satisfaction," they produced no documents from Mr. Grist's files and his name appears in just 26 documents produced to date by defendants and third parties.  Ex. 12 (Defs' Supp. Initial Disclosures) at 2; Jensen Decl., ¶22.  In light of Mr. Grist's minimal appearance in the documents produced, it would clearly be an inefficient use of plaintiffs' time and expenses to depose Mr. Grist in the off chance that he appears on defendants' list of trial witnesses in this case.

1   10 non-party depositions allotted to plaintiffs. *See* Dkt. No. 92. And defendants have

2   not revealed who is most likely to appear on their trial witness list, other than

3   indicating that their motivation for taking many of the depositions currently on deck is

4   to preserve their testimony for trial.

5        Thus, even if plaintiffs were to utilize every deposition allotted to them, it is

6   highly likely that individuals appearing on defendants' trial witness list will not have

7   been deposed. Plaintiffs need not try to guess and hope they get lucky about which

8   witnesses defendants call at trial, or take a shotgun approach to depositions in this

9   case. That result would waste resources and run contrary to the spirit and purpose of

10   pre-trial civil discovery. *See Brown v. Deputy #1*, No. 12-cv-1938-GPC (BGS), 2014

11   U.S. Dist. LEXIS 29130, at *3-*4 (S.D. Cal. Mar. 5, 2014) (stating the oft-quoted

12   proposition that the "purpose of discovery is to remove surprise from trial preparation

13   so the parties can obtain evidence necessary to evaluate and resolve their dispute").

14        For these reasons, plaintiffs respectfully request that the Court enter an order

15   providing that, prior to any trial, the parties will have an opportunity to depose any

16   individuals who appear on the other side's trial witness list, but whom were not

17   deposed prior to disclosure. Plaintiffs also request an order compelling defendants to

18   properly identify "the name . . . address and telephone number of each individual

19   likely to have discoverable information" and to withdraw the broad categories of

20   people that appear at §1.B.-F. of defendants' Supplemental Initial Disclosures. *See*

21   Fed. R. Civ. P. 26(a)(1)(A)(i); *see also* Ex. 12 (Defs' Supp. Initial Disclosures) at 6.

22   **VI.   CONCLUSION**

23        For these reasons, plaintiffs respectfully request an opportunity to use the

24   balance of their 7 hours to examine Mr. Trump at deposition, have 4 hours to examine

25

26

27

28

1   Mr. Sexton in his personal capacity, and for an order affording the parties an

2   opportunity before trial to take the depositions of any trial witnesses who, at the time

3   of the pretrial disclosures, have not yet been deposed.

4   DATED:  November 7, 2014                    Respectfully submitted,

5                                                                 ROBBINS GELLER RUDMAN
                                                                      & DOWD LLP
6                                                                 JASON A. FORGE
                                                                 RACHEL L. JENSEN
7

8                                                                      s/ Rachel L. Jensen
9                                                                    RACHEL L. JENSEN

10                                                                655 West Broadway, Suite 1900
                                                                 San Diego, CA  92101
11                                                                Telephone:  619/231-1058
                                                                 619/231-7423 (fax)
12
                                                                 ROBBINS GELLER RUDMAN
13                                                                    & DOWD LLP
                                                                 DANIEL J. PFEFFERBAUM
14                                                                Post Montgomery Center
                                                                 One Montgomery Street, Suite 1800
15                                                                San Francisco, CA  94104
                                                                 Telephone:  415/288-4545
16                                                                415/288-4534 (fax)

17                                                                ROBBINS GELLER RUDMAN
                                                                      & DOWD LLP
18                                                                MAUREEN E. MUELLER
                                                                 120 East Palmetto Park Road, Suite 500
19                                                                Boca Raton, FL  33432
                                                                 Telephone:  561/750-3000
20                                                                561/750-3364 (fax)

21                                                                ZELDES HAEGGQUIST & ECK, LLP
                                                                 AMBER L. ECK
22                                                                HELEN I. ZELDES
                                                                 ALREEN HAEGGQUIST
23                                                                AARON M. OLSEN
                                                                 625 Broadway, Suite 1000
24                                                                San Diego, CA  92101
                                                                 Telephone:  619/342-8000
25                                                                619/342-7878 (fax)

26                                                                Class Counsel

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 7, 2014.

<u>   s/ Rachel L. Jensen   </u>
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:        rachelj@rgrdlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG Makaeff v. Trump University, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,robyns@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Benjamin James Morris**
  bmorris@foley.com,vgoldsmith@foley.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Nancy L. Stagg**
  nstagg@foley.com,smoreno@foley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`