Nancy L. Stagg (CSB 157034)
nstagg@foley.com
Benjamin J. Morris (CSB 260148)
bmorris@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130-3302
Telephone: 858.847.6700
Facsimile: 858.792.6773

Jill A. Martin (CSB 245626)
c/o Trump National Golf Club Los Angeles
One Trump National Drive
Rancho Palos Verdes, California 90275
Telephone:  (310) 303-3225
Facsimile:   (310) 265-5522
Email:   jmartin@trumpnational.com

Attorneys for Defendants,
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>        Defendants. | Case No. 10cv0940GPC (WVG)<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP'S OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES** |

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ...................................................................................1

II.     PROCEDURAL HISTORY ....................................................................2

III.    THERE IS NO GOOD CAUSE FOR REOPENING THE
        DEPOSITiON OF DONALD J. TRUMP ..............................................4

        A.      Key Documents                                                    6

                1.      The "scripts" ................................................7

                2.      NYSED Letter..............................................7

                3.      Email Exchange between Messrs. Weisselberg and
                        Sexton ...........................................................8

        B.      Key Evidence                                                     9

                1.      Mr. Sexton's testimony in the NYAG Action ...........9

                2.      Student testimony .......................................10

        C.      Punitive Damages                                                10

IV.     THERE IS NO GOOD CAUSE FOR REOPENING THE
        DEPOSITION OF MICHAEL SEXTON ...................................................11

        A.      Personal Capacity                                               11

        B.      Key Documents                                                   13

        C.      Mr. Sexton's Declaration                                        13

V.      ALLOWING ADDITIONAL TIME FOR MESSRS. TRUMP AND
        SEXTON'S DEPOSITIONS IS IMPROPER ...............................................14

        A.      Plaintiffs' Eleventh-Hour Request should be Denied as
                Untimely                                                        14

        B.      Allowing the Requested Amount of Time is Unwarranted          16

VI.     AN ORDER REGARDING DEPOSITONS OF TRIAL WITNESSES
        IS PREMATURE ......................................................................17

VII.    CONCLUSION ......................................................................19

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Couch v. Wan*,
  2012 WL 4433479 (E.D. Cal. Sept. 24, 2012) ....................................................... 4, 5

*Dixon v. Certainteed Corp.*,
  164 F.R.D. 685 (D. Kan. 1996) .................................................................................. 16

*Kress v. Price Waterhouse Coopers*,
  2001 WL 5241852 (E.D. Cal. Nov. 1, 2011) ............................................................ 4

*Miller v. Fed. Express Corp.*,
  186 F.R.D. 376 (W.D. Tenn. 1999) ........................................................................... 4

*Osakan v. Apple Am. Grp.*,
  2010 WL 1838701 (N.D. Cal. May 5, 2010) ............................................................. 15

*SEC v. Aqua Vie Beverage Commission*,
  2006 WL 2457525 (D. Idaho Aug. 23, 2006) ........................................................... 4

*Syncora Guarantee Inc. v. EMC Mortgage Corp.*,
  2013 WL 1208936 (N.D. Cal. March 25, 2013) ....................................................... 4

**Other Authorities**

Fed R. Civ. P Rule 26 ..................................................................................................... 4, 18

Fed. R. Civ. P 26(a)(3)(A) ............................................................................................. 17

Fed. R. Civ. P 26(a)(3)(B) ............................................................................................. 17

Fed. R. Civ. P 30(d)(1) ................................................................................................... 4

# I.    INTRODUCTION

The Court should deny Plaintiffs' various discovery motions.  Throughout this litigation, Plaintiffs have tried to get a second bite at the apple at every turn.  Using predominately the same arguments they do here, Plaintiffs first asked this court for a second chance in their Motion for Leave to Amend ("Motion to Amend") (Dkt. No. 248).  When that failed, they filed a second class action lawsuit which they admit is based on the same transaction and events, same facts, and involves the same parties. *See Cohen v. Donald J. Trump,* Case No. 3:13-cv-02519.  Now, as their *extended* discovery deadline fast approaches, Plaintiffs seek yet another do-over – this time asking the Court to allow them to reopen the depositions of Donald J. Trump and Michael Sexton, depositions that Plaintiffs took over two years ago.

Plaintiffs fail to provide any good cause for reopening Mr. Trump or Mr. Sexton's depositions.  Instead, Plaintiffs attack Defendants' efforts in producing hundreds of thousands of pages of documents, making the same arguments and citing the sample examples that Judge Curiel held did not warrant allowing leave to amend – as Plaintiffs had long possessed such information.  (Dkt. No. 271).  Plaintiffs also rely on the same evidence that they complained to this Court about in December 2012 (documents produced by the New York State Education Department), a situation for which this Court found to be "not nearly as dire as Plaintiffs contend."  (Dkt. No. 188 at 7).  As none of the alleged basis argued by Plaintiffs warrants the reopening of either deposition, Plaintiffs' motion must be denied.

Additionally, Plaintiffs seek to safeguard any of their failures to complete depositions of potential trial witnesses by the discovery cut-off by requesting that this Court issue an order allowing them to take an unspecified number of post-discovery-cut-off depositions of witnesses appearing on the parties' trial witness lists at a later date without the required showing of good cause.  Plaintiffs' request is clearly premature, as trial witness lists are not scheduled to be disclosed until May 2015.

///

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

1    Plaintiffs have not, and cannot, provide any basis now (before the disclosure), for an

2    order allowing them to take post-discovery-cut-off depositions.

3           Accordingly, this Court should deny Plaintiffs motion in its entirety.

4    **II.    PROCEDURAL HISTORY**

5           On March 14, 2014, this Court issued a Case Management Order Regulating

6    Discovery and Other Pretrial Proceedings ("Case Management Order"). (Dkt.

7    No. 309).  Pursuant to that Order, the discovery cut-off date was set for November 7,

8    2014.  (*Id.*)

9           On September 24, 2014, the parties filed a joint motion to revise the deadlines

10   set forth in the Case Management Order.  (Dkt. No. 348).  The agreed upon basis for

11   amending the discovery cut-off deadline was to allow enough time for Plaintiffs to

12   complete 10 depositions and for Defendants to complete an additional 8 depositions.

13   (Dkt. No. 348).  In fact, in Plaintiffs' counsel Rachel Jensen's declaration in support

14   of the motion to revise the deadlines, Ms. Jensen stated:

15                  There remain approximately 18 outstanding depositions that
                    the parties intend to take in locations around the country . . .
16                  Plaintiffs intend to take the depositions of 2 former
                    instructors now represented by defense counsel (Steve Goff
17                  and Steve Miller), 1 former instructor who is not represented
                    by defense counsel (James Harris), 2 NYSED witnesses
18                  (Carol Yates and Edward Kramer, 1 former "mentor" (Steve
                    Gilpin), 1 former marketing employee (Michael Bloom), 1
19                  former coordinator (Gillian Bernie), and 1 third party who
                    was involved in Trump University's operations (David
20                  Early), and likely 1 other third-party witness.  Plaintiffs have
                    reserved their rights to notice and take the deposition of 1 or
21                  2 additional witnesses.[1]
22
23
24   (Dkt No. 346-1 at ¶16).

25

26

27   [1] The 1-2 additional witnesses for which Plaintiffs' reserved their rights are apparently
28   Messrs. Nowlin and Childers as those witnesses were not previously identified but
     whose depositions have been noticed.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

1       At no time prior to filing the Joint Motion did Plaintiffs inform Defendants or

2   the Court that they would be seeking to re-open the depositions of Messrs. Trump and

3   Sexton.  To the contrary, in her declaration, Ms. Jensen affirmatively represented that

4   the parties had completed "nearly two-dozen depositions", including the deposition of

5   Messrs. Trump and Sexton.  (*Id.* at ¶ 14).

6       On October 1, 2014, the Court issued an Amended Case Management Order

7   Regulating Discovery and Other Pretrial Proceedings; Granting Parties' Joint Motion

8   to Revise Pretrial Schedule in which it extended the discovery cut-off date to

9   December 19, 2014 ("Amended Case Management Order").  (Dkt. No. 349).

10      After the Amended Case Management Order was issued, on October 15, 2014,

11  counsel for Plaintiff, Rachel Jensen, for the first time informed counsel for Defendant,

12  Benjamin Morris, that Plaintiffs intended to re-open the depositions of Mr. Trump and

13  Mr. Sexton and that they sought Defendants agreement regarding the ability of the

14  parties to take post-discovery-cut-off depositions of any witnesses not previously

15  deposed who appeared on the yet to be disclosed trial witness lists.  (Morris Decl. at

16  ¶ 3).  Mr. Morris informed Ms. Jensen that Defendants did not agree to the taking of a

17  second deposition of either witness and that her request for depositions of witnesses

18  disclosed as trial witnesses was premature.  (*Id.* at ¶ 3).  Ms. Jensen argued that

19  although merits discovery in the *Cohen* action was not yet open, Plaintiffs intended to

20  take Mr. Trump and Mr. Sexton's deposition in the *Cohen* case before the discovery

21  cut-off in *Makaeff* (presumably so that they could argue the testimony provided could

22  be used in the *Makaeff* matter). (*Id.* at ¶ 3).   As discovery had been stayed in the

23  *Cohen* matter pending a ruling on Plaintiff's Motion for Class Certification,

24  Mr. Morris informed Ms. Jensen that her request for depositions in the *Cohen* matter

25  was also premature.  (*Id.* at ¶ 3).  After further meeting and conferring without

26  resolution, Plaintiffs filed this motion.

27  ///

28  ///

3

Case No. 10cv0940GPC (WVG)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

## III.   THERE IS NO GOOD CAUSE FOR REOPENING THE DEPOSITION OF DONALD J. TRUMP

Federal Rule of Civil Procedure Rule 30(d)(1) provides:  "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours."  A Court need only allow additional time "if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."  *Id.*  Although "reopened depositions are disfavored" it is within the Court's discretion to determine whether there is good reason for re-opening a deposition.  *Couch v. Wan,* 2012 WL 4433479, *3 (E.D. Cal. Sept. 24, 2012) (citing *Dixon v. Certainteed Corp.,* 164 F.R.D. 685, 690 (D. Kan. 1996) ("Without a showing of need or good reason, courts generally will not require a deponent's reopened deposition.").  Reopening a deposition is not warranted where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  *Id.; see also Syncora Guarantee Inc. v. EMC Mortgage Corp.,* 2013 WL 1208936, at *2 (N.D. Cal. March 25, 2013) ("while generally contemplating broad discovery, Rule 26 requires the court to limit discovery when (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, (ii) the party has already had ample opportunity to obtain the information, or (iii) the burden of obtaining the information outweighs the expense").

Defendants do not dispute that in certain cases, based on their unique factual circumstances, reopening depositions is warranted.  *See, e.g., Miller v. Fed. Express Corp.,* 186 F.R.D. 376 (W.D. Tenn. 1999) (allowing the re-opening of a deposition where defendants produced 500 pages of previously withheld documents citing attorney-client privilege but decided to withdraw the objections and produce the documents one day after the completion of the witness' deposition); *Kress v. Price Waterhouse Coopers,* 2001 WL 5241852 (E.D. Cal. Nov. 1, 2011) (allowing the reopening of the depositions of two individuals named as potential class representations of a class for which they were not originally named as potential class

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

representatives at the time of their first deposition); *SEC v. Aqua Vie Beverage Commission,* 2006 WL 2457525 (D. Idaho Aug. 23, 2006) (continued deposition warranted when subpoenaed documents were not produced until 2:45 p.m. on the day of the witness' deposition).

However, when a party has had a fair opportunity to depose a witness and the proffered basis for re-opening a deposition does not sufficiently substantiate the need to re-open a deposition, a request to re-open a deposition must be denied. *Couch,* 2012 WL 4433479, at 4.

For example, in *Couch,* plaintiffs argued extensively about the failure to produce documents prior to the deposition of a third-party witness. *Id.* Plaintiff, however, failed to show good cause for reopening the witness' deposition where the only communications plaintiffs cited as substantiating the need for re-opening the deposition had questionable relevance. *Id.* The Court ruled that despite any alleged failures to produce documents, re-opening the witness' deposition "would be unreasonably cumulative or duplicative, and [plaintiffs] fail to demonstrate an absence of ample opportunity or likely benefit to warrant reopening [the witness'] deposition." *Id.*

Here, like in *Couch,* Plaintiffs have failed to show any good cause for reopening Mr. Trump's deposition. Instead, Plaintiffs focus on attempting to smear Defendants by recycling allegations of Defendants failing to timely produce documents. In doing so, Plaintiffs attempt to mislead the Court about the timing, extent, and relevance of the document productions made by Defendants. For example, Plaintiffs argue that Defendants have produced over 172,000 pages since Mr. Trump's deposition. What Plaintiffs fail to mention, however, is that the majority of those documents were

///

///

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

produced in response to the *five additional sets* of Requests for Production
propounded *after* Mr. Trump's deposition.[2] (Morris Decl. Exs. 1-5).

Plaintiffs also argue that "defendants continue to produce relevant documents,
as recent as today, that were requested long ago." (Dkt . No. 355 at 5).  The
documents produced, however, are certainly not relevant to Mr. Trump's (or
Mr. Sexton's) deposition, as the production made on the date of Plaintiffs' filing
contained communications between counsel for Defendants and a former student, Paul
Canup, in anticipation of Mr. Canup's deposition.  (Morris Decl. ¶ 5).  These
documents, like all of the other documents that defendants have produced since
Mr. Trump's deposition provide no basis for reopening Mr. Trump's deposition.

By their own choice, Plaintiffs took Mr. Trump's deposition on September 12,
2012.  Plaintiffs were provided with the opportunity to fully and fairly examine
Mr. Trump on that date, and Mr. Trump cooperated fully in the taking of his
deposition.   Nevertheless, Plaintiffs have manufactured several alleged reasons for
needing to re-open Mr. Trump's deposition.  As explained in detail below, none of
Plaintiffs proffered reasons are a legitimate basis for Plaintiffs to get a second chance
to depose Mr. Trump.

### A.    Key Documents

Plaintiffs argue that they need to reopen Mr. Trump's deposition to question
him about alleged "key documents" that Plaintiffs did not have in their possession at
the time of his deposition.  These "key documents" include the following:  "scripts"; a
2005 letter from the NYSED to Messrs. Trump and Sexton; and an email exchange
between The Trump Organization's CFO and Mr. Sexton.  As explained in detail
below, none of these arguments warrant re-opening Mr. Trump's deposition.

---

[2] Even after filing their Motion, Plaintiffs propounded their Eighth Set of Requests for
Production of Documents on Defendants.  (Morris Decl. Ex. 5).  Plaintiffs' complaints
about the additional documents produced following Mr. Trump's deposition is of their
own doing – and continues to be of their own doing as they continue to seek
additional discovery.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

### 1.     The "scripts"

Plaintiffs have attempted to use the alleged failure to produce "scripts" at every possible chance in this litigation.  They first unsuccessfully tried to use it as an excuse in their Motion to Amend (Dkt. No. 248).  Just as Defendants previously explained to the court in their Opposition to Plaintiff's Motion to Amend (Dkt. No. 253) – Plaintiffs have had the verbatim content of the "script", with the corresponding PowerPoint slides since May 2012 – *four months before* Mr. Trump's deposition.  In its Order Denying Plaintiffs' Motion to Amend the Scheduling Order, the Court recognized the flaws in Plaintiffs' argument that the "script" was not previously produced, finding that "the record shows that the content of the Script was previously known to Plaintiffs well before June 2013. . . Thus, Plaintiffs cannot rely on the content of the Script as recently discovered evidence."  (Dkt. No. 271).

Furthermore, Plaintiffs provide no basis for their alleged need to question Mr. Trump about the "script" or the email from Sexton transmitting the script to TU personnel.  Plaintiffs already extensively questioned Mr. Trump about his involvement with TU and his knowledge of what was presented at TU seminars, including whether he viewed any of the PowerPoint presentations (Morris Decl. Ex. 8: Trump Depo. at 89:11-19); his involvement in the preparation of any TU materials (*Id.* at 102:24-103:24); who prepared course materials (*Id.* at 106:1-10); and his knowledge about the differences in course presentations (*Id.* at 115:1-17).

As Plaintiffs already questioned Mr. Trump about the content of TU's courses and had the content of the "script" in their possession at the time of Mr. Trump's deposition, they do not provide any legitimate basis, let alone good cause, for reopening Mr. Trump's deposition.

### 2.     NYSED Letter

Similar to their argument about the "scripts", Plaintiffs have also previously, and unsuccessfully, tried to use the 2005 NYSED letter as an excuse to take a second bite at the apple in this litigation. (*See* Dkt. No. 271).  The NYSED letter does not

Case No. 10cv0940GPC (WVG)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES**

4848-9408-4128.2

provide a basis for re-opening Mr. Trump's deposition – as Mr. Trump cannot be faulted for failing to produce a document that he has been unable to locate, despite making a diligent search and reasonable inquiry.  Furthermore, Plaintiffs were well aware of the issues with the NYSED prior to Mr. Trump's deposition, as they asked Mr. Sexton about them at his deposition (which took place prior to Mr. Trump's).  (Morris Decl. Ex. 6:  Sexton Depo. Vol. I at 137:14-19; 164:4-166:16).  Plaintiffs also already asked Mr. Trump about letters from the NYSED.  (Morris Decl. Ex. 8: Trump Depo. at 83:13-19).

Thus, as Plaintiffs were well aware of issues with the NYSED, as demonstrated by their questioning of both Mr. Trump and Mr. Sexton on this topic, Plaintiffs cannot now rely on this issue for reopening their depositions.  As Plaintiffs were well aware of the NYSED issues, if they felt that having certain documents prior to taking depositions was necessary, they certainly could have served their FOIL request on the NYSED with enough lead time to receive a response prior to taking Mr. Trump's deposition.[3]

### 3.   Email Exchange between Messrs. Weisselberg and Sexton

Plaintiffs, perhaps intentionally, also rely on a document they falsely describe as "emails showing that Mr. Trump's attorneys at Trump Organization set up a 'fictitious office' for Trump University to elude the NYSED in 2005."  The document they identify, TU 137770, however, does not involve Trump Organization attorneys or show that they set up an office to elude the NYSED.  Instead, the email reflects communications between the Trump Organization CFO, Allen Weisselberg, and Michael Sexton.  Neither Mr. Trump nor his attorneys were involved in these communications.  Thus, Plaintiffs have provided no basis for how this email (which they contend relates to their arguments regarding the NYSED which is discussed above), provides any basis for reopening Mr. Trump's deposition.

---

[3] Instead, Plaintiffs waited until just weeks before the deposition to submit their FOIL request to the NYSED. (Morris Decl. Ex. 11.)

Case No. 10cv0940GPC (WVG)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

**B.** **Key Evidence**

Plaintiffs also argue that other "evidence" they obtained after Mr. Trump's deposition provides good cause for re-deposing Mr. Trump. This "key evidence" is testimony from Mr. Sexton in July 25, 2012, in the New York Attorney General's investigatory proceedings and recent testimony from two former students of Trump University about their dealings with Mr. Trump. This new "key evidence" does not warrant reopening Mr. Trump's deposition.

**1.** **Mr. Sexton's testimony in the NYAG Action**

Plaintiffs argue that they should be able to reopen Mr. Trump's deposition because they did not obtain Mr. Sexton's testimony in the NYAG investigatory proceedings until it was publicly filed in August 2013. Plaintiffs argue that their obtaining of this information entitles them to re-open Mr. Trump's deposition "to examine Mr. Trump about Mr. Sexton's testimony about his role in Trump University."

Plaintiffs' argument is meritless for two reasons. First, like Plaintiffs, Defendants were not able to obtain a copy of Mr. Sexton's testimony in the NYAG investigatory proceedings until it was made public when the NYAG published it in August 2013. Thus, Defendants cannot be faulted for failing to produce something they did not have in their possession, custody, or control.

Second, as Plaintiffs admit, Mr. Sexton provided his testimony to the NYAG in July 2012, two months before they deposed Mr. Trump in this matter. Plaintiffs also knew, *before* taking Mr. Trump's deposition, that Mr. Sexton had provided the NYAG with testimony, as Mr. Sexton testified extensively about his deposition with the NYAG during his deposition in this case. (Morris Decl. Ex. 6: Sexton Depo. Vol. I at p. 6:9-7:21; Morris Decl. Ex. 7: Sexton Depo. Vol. II at 418:21-424:16). If Plaintiffs thought that this testimony was important to their examination of Mr. Trump, they certainly could have postponed Mr. Trump's deposition until after they had obtained a copy of the transcript. Plaintiffs, however, chose to proceed with Mr. Trump's

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES**

4848-9408-4128.2

deposition without this information.  Accordingly, they cannot now use this as an excuse to re-depose Mr. Trump.

Third, Plaintiffs' position that they need to depose Mr. Trump about what Mr. Sexton said is nonsensical.  Plaintiffs had the opportunity to ask Mr. Trump directly about his "role in Trump University."  To the extent Plaintiffs believe that differs from Mr. Sexton's testimony about Mr. Trump's role, so be it.  The fact that two witnesses recount something differently does not provide grounds to reopen a deposition.

### 2.    Student testimony

Grasping at straws, Plaintiffs also argue that testimony of two former students provided after Mr. Trump's deposition is a basis for reopening Mr. Trump's deposition.  According to Plaintiffs' logic, every time a witness provides any testimony that in some way mentions Mr. Trump, they have a basis for re-opening his deposition.  Clearly, this cannot be the case.  Plaintiffs had the opportunity to examine Mr. Trump about any communications he had with students of Trump University during his deposition.  Re-opening his deposition because a student testified that she believed Mr. Trump participated on a conference call, or that Mr. Trump had endorsed a student's son's book (more than a year *after* his deposition) is simply unwarranted.

### C.    Punitive Damages

Finally, Plaintiffs argue that they need to ask Mr. Trump less than a dozen questions to confirm information about his net worth they obtained from publically-available sources. (See Dkt. No. 355 at 10-11.)  This argument lacks merit.  The Court has twice made clear that

> Defendant Trump's financial wherewithal cannot seriously be in question by Plaintiff.  If Plaintiffs truly believe that Defendant Trump's net worth information is necessary to this litigation, there are other, less burdensome avenues available to them to obtain that information.  As the Court noted in its February Order, 'Defendant Donald Trump's net worth is publically-available information and can be obtained through a simple Google search, which reveals sources for this information. The publically-available

Case No. 10cv0940GPC (WVG)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

1    information is sufficient to evidence Trump's ability to pay
2    any judgment.'

3    (Dkt. No. 111 at 4 (citing Dkt. No. 93 at 13).)

4    The Court's prior Orders apply whether Plaintiffs can prove an entitlement to

5    either compensatory or punitive damages.  Therefore, questioning Mr. Trump

6    regarding this publically-available information is unnecessary, unduly burdensome,

7    contrary to the Court's prior Orders and does not provide a basis for reopening

8    Mr. Trump's deposition.  Additionally, the Court's February 12, 2012 Order (Dkt. No.

9    93), directed Plaintiffs to obtain information about Mr. Trump's finances from public

10   sources <u>seven</u> months before Mr. Trump was deposed.   Therefore, Plaintiffs were on

11   notice and had every opportunity to question Mr. Trump about this information at his

12   September 2012 deposition.  Plaintiffs did not.  Plaintiffs' failure cannot provide a

13   basis for reopening Mr. Trump's deposition two years later.

14   **IV.   THERE IS NO GOOD CAUSE FOR REOPENING THE DEPOSITION OF MICHAEL SEXTON**

15   In addition to arguing that they should be able to reopen the deposition of

16   Mr. Trump, Plaintiffs also argue that they should be able to reopen the deposition of

17   Michael Sexton, despite Mr. Sexton having already been deposed for two days,

18   providing just shy of 12 hours of deposition testimony.  As with their request

19   regarding Mr. Trump's deposition, Plaintiffs have failed to show any good cause why

20   Mr. Sexton's deposition should be reopened.

21   **A.   Personal Capacity**

22   Blatantly misrepresenting that they did not previously take Mr. Sexton's

23   deposition in his personal capacity, Plaintiffs argue that they should be able to reopen

24   his deposition for this reason.  The communications with counsel prior to

25   Mr. Sexton's deposition, the deposition itself, and Plaintiffs' own admission that they

26   noticed Mr. Sexton's deposition in his personal capacity (Dkt. No. 355 at fn. 9)

27   irrefutably demonstrate that during his previous two-day deposition, Mr. Sexton was

28   questioned in his personal capacity.  For example, in an email to counsel for Plaintiff,

11                     Case No. 10cv0940GPC (WVG)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES**

Amber Eck, dated July 31, 2012, counsel for Defendants, David Schneider, laid out the deposition schedule as follows:

> The deposition schedule for New York is as follows:
> 8/22 Donald Trump
> 8/23 Michael Sexton Individually and 30(b)(6)
> Representative
> 8/24 Trump University 30(b)(6) Representative TBD

(Morris Decl. Ex. 9).

Ms. Eck confirmed the taking of Mr. Sexton in his individual capacity in her response email dated July 31, 2012:

> In regard to order, we'd like to take:
>
> 8/22:  30(b)(6) rep – we've had this outstanding for over 2 months, please let us know by this Friday Aug. 3 the deponent's(s) name.
>
> 8/23:  Michael Sexton
>
> 8/24:  Donald Trump – we don't want to waste Mr. Trump's time getting preliminary info we can get from the 30(b)(6) rep and Michael Sexton; I'm sure you and he will appreciate that.

(*Id.*).

Additionally, Plaintiffs questioned Mr. Sexton in his personal capacity extensively during his two-day deposition.  A small example of some of the topics Plaintiffs examined Mr. Sexton on (that were not categories of testimony in his capacity as a 30(b)(6) witness) include:

- Mr. Sexton's previous testimony provided to the New York Attorney General (Morris Decl. Ex. 6:  Sexton Depo. Vol. I at 6:9-8:9);

- His personal search for documents pursuant to a notice of deposition in his personal capacity (*Id.* at 32:8-37:13);

- His communications with the named plaintiffs (*Id.* at 37:22-41:12); and

Case No. 10cv0940GPC (WVG)
DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

- Trump University's and his own document preservation efforts (*Id*. at 43:22-49:25).

As Plaintiff's already took Mr. Sexton's deposition in his personal capacity, their attempt to reopen his deposition for this reason fails.

## B.    Key Documents

Citing the same alleged document production deficiencies as they did in arguing for reopening Mr. Trump's deposition, Plaintiffs also argue that Mr. Sexton's deposition should be reopened.  As explained in detail in Section III above, Plaintiffs' arguments in this regard are meritless and fail to establish good cause to reopen Mr. Sexton's deposition.

## C.    Mr. Sexton's Declaration

Finally, Plaintiffs' argue that Mr. Sexton's deposition should be reopened because he "submitted a declaration after his deposition that contradicted his earlier testimony." (Dkt. No. 355 at 14).  As a preliminary matter, Plaintiffs have not shown any testimony in Mr. Sexton's declaration that contradicts his deposition testimony. Instead, they argue that Mr. Sexton's testimony is inconsistent with Plaintiffs' position based on documents produced in the case.  Their argument is based on one document, the "script", that as discussed in Section III.A.1. above, was already in Plaintiffs' possession at the time of Mr. Sexton's original deposition.  Accordingly, had Plaintiffs wanted to challenge Mr. Sexton's testimony they certainly could have done so during his deposition.  Plaintiffs chose not to.  They cannot now use the later production of duplicative content as a basis to reopen Mr. Sexton's deposition.

As Plaintiffs have not provided good cause for the reopening of Mr. Sexton's deposition, their request must be denied.

///

///

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

4848-9408-4128.2

## V.   ALLOWING ADDITIONAL TIME FOR MESSRS. TRUMP AND SEXTON'S DEPOSITIONS IS IMPROPER

In addition to their failure to provide good cause for reopening Messrs. Trump and Sexton's depositions, Plaintiffs' request should be denied as untimely and unwarranted.

### A.   Plaintiffs' Eleventh-Hour Request should be Denied as Untimely

Plaintiffs took Mr. Sexton and Mr. Trump's depositions in August and September 2012, respectively.  Now, over two-years later, and just weeks before the *extended* discovery cut-off, Plaintiffs for the first time seek an order allowing them to reopen these depositions.  Plaintiffs make this request despite not once informing Defendants or the Court of their intentions when requesting an extension to the previously scheduled discovery cut-off date of November 7, 2014.  In fact, Plaintiffs represented to both the Court and Defendants that the purpose of the requested discovery cut-off extension was so that they could take 10 specifically identified depositions – not to reopen the depositions of Mr. Trump and Mr. Sexton.  (Dkt. No. 346-1 at ¶¶ 14, 16).   Because Plaintiffs had not made their request to reopen the depositions until after the discovery cut-off was extended, and misled the Court and Defendants about their true motive in extending the discovery cut-off, their Motion should be denied.

Additionally, as with their Motion to Amend, Plaintiffs cannot hide their lack of diligence in pursuing the reopening of the requested depositions.  Plaintiffs' alleged excuse for not pursuing the reopening of the depositions earlier is that they wanted to wait until "many of the relevant documents had been unearthed" and they had recently tried to avoid the issue by obtaining an agreement with Defendants' counsel about the taking of Mr. Trump and Mr. Sexton's depositions in the Cohen matter.  (Dkt. No. 355 at 12).

Plaintiffs' position that they were holding out for the production of all relevant documents is clearly flawed, as not only do the documents that they rely on not justify

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES

1   the reopening of the depositions as discussed above, such documents have been in

2   Plaintiffs' possession for months, if not years.  For example, Plaintiffs admit that they

3   have had the documents from the NYSED since April 2013.  (Dkt. No. 355 at 9).

4   Similarly, the transmittal email from Sexton related to the scripts was produced in

5   June 2013.  (*Id.*).  Just as Judge Curiel recognized in his denial of the Motion to

6   Amend, Plaintiffs' excuses for failing to act on alleged problems in Defendants'

7   document production are nothing more than poor excuses used to try to cover up a

8   lack of diligence.  (Dkt. No. 271 at 11:  "The Trump and Sexton depositions were

9   taken in August and September of 2012 and Plaintiffs do not state a valid reason for

10  the year-long delay after taking the depositions to seek leave to amend . . . Such

11  conduct demonstrates a lack of diligence.").  If Plaintiffs had a valid basis for

12  reopening Mr. Trump and Mr. Sexton's depositions, they should have sought to do so

13  long ago – when the alleged reasons they needed to reopen the depositions came to

14  light.  *See Osakan v. Apple Am. Grp.,* 2010 WL 1838701 (N.D. Cal. May 5, 2010)

15  ("[T]o the extent that Plaintiff believed that Defendants were impeding his ability to

16  prepare his case by failing to comply with their discovery obligations, he should have

17  promptly sought relief from the assigned discovery magistrate.").  Plaintiffs' failure to

18  timely address any discovery disputes is also in violation of this Court's Chambers

19  Rules, which provides that in the event of such disputes, the parties must notify the

20  Court "within thirty (30) days of the date upon which the event giving rise to the

21  dispute occurred."  (Chamber Rules of Judge Gallo at Section IV.B.)  The Court's

22  Chambers Rules make clear that it is the date of service of the response or insufficient

23  document production that starts this thirty-day clock, not the date counsel decides to

24  raise the issue.  If it were otherwise, the Court's Chambers Rules regarding the timely

25  resolution of discovery disputes would be meaningless.

26      Plaintiffs' argument regarding their seeking Messrs. Trump and Sexton's

27  depositions in *Cohen* is a red herring.  *Cohen* is a separate case, proceeding on a

28  separate schedule.  The propriety of taking and limitations of these depositions in the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

*Cohen* case have no bearing on whether Plaintiffs should get a second bite at the apple here.  Plaintiffs had their chance, and already took Mr. Trump and Mr. Sexton's depositions in this case.

### B.    Allowing the Requested Amount of Time is Unwarranted

Tellingly, Plaintiffs do not request that this Court allow the re-opening of Mr. Trump and Mr. Sexton's depositions for the purpose of addressing the alleged "key documents" or newly discovered information, but rather seek an order allowing for the unrestricted questioning of Mr. Trump for an additional 3 hours and 41 minutes and 4 hours of questioning for Mr. Sexton.  As is clear from this request, Plaintiffs real motive in reopening Mr. Trump and Mr. Sexton's depositions is for purposes of cleaning up and supplementing their prior examinations – not to question the witnesses about documents that were not timely produced by Defendants.  Such an open ended reopening of the depositions is not supported by law.  In the rare circumstance where the reopening of a deposition is warranted (which is not the case here), the reopening is narrowly tailored to address specific topics not previously addressed.  *See, e.g., Dixon v. The Certainteed Corp.,* 164 F.R.D. 685, 692 (D. Kansas 1996).

Additionally, Plaintiffs' "offer" to take Messrs. Trump and Sexton's depositions in New York at a time of their choosing is disingenuous as the current discovery cut-off is December 19, 2014.  With just five weeks before this date (and the Thanksgiving holiday during this time), and 12 depositions, scheduled to occur all over the United States, including in Arizona, Arkansas, Texas, Los Angeles, and Florida, there is certainly a hardship in trying to find a date at this late time that works for Messrs. Trump and Sexton's schedules as well as their counsel.

Plaintiffs' position that written discovery responses cannot accomplish their discovery needs is also contradicted by Plaintiffs' own position taken in the *Cohen* matter.  In the parties' Joint Discovery Plan lodged with this Court on May 16, 2014, Plaintiffs' complained about Mr. Trump's lack of knowledge or memory regarding

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

several topics and therefore argued for additional interrogatories beyond the limitations found within the Federal Rules, stating:  "Interrogatories are the most efficient method to obtain the type of detailed information that some witnesses claim not to recall in a deposition setting, but could easily ascertain through the exercise of reasonable diligence."  (Morris Decl. Ex. 10:  *Cohen* Joint Discovery Plan at p. 10).

Accordingly, Plaintiffs' request for additional time with Messrs. Trump and Sexton must be denied.

## VI.    AN ORDER REGARDING DEPOSITIONS OF TRIAL WITNESSES IS PREMATURE

Pursuant to Federal Rule of Civil Procedure Rule 26(a)(3)(A) and (B), a party must make pretrial disclosures, including a witness list, "at least 30 days before trial." Pursuant to the Amended Case Management Order, the deadline to make Pretrial Disclosures is May 22, 2015.  (Dkt. No. 349).  Despite this clear rule and the deadline set by this Court, Plaintiffs have requested an order from this Court now, allowing them to take the an unspecified number of depositions of any persons identified on Defendants' yet to be disclosed witness lists who were not deposed *before* the discovery cut-off.

Pretrial disclosures are not due for six months, Plaintiffs' request is premature. There is no good cause for the Court to make an order now, as it is entirely uncertain as to whether there will even be a need for additional depositions, or whether there will be good cause for Plaintiffs to take any such depositions.

Plaintiffs' reliance on a Standing Order from the U.S. District Court for the Southern District of New York is misplaced.  The case management procedures in the Southern District of New York do not apply in the Southern District of California. This Court, following its procedures, has already set its schedule for discovery and pre-trial disclosures.  In light of the schedule set by this Court, Defendants declined Plaintiffs' demand that the parties produce trial witness lists now, six months before the deadline.

17                          Case No. 10cv0940GPC (WVG)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM REGARDING DISCOVERY DISPUTES

Plaintiffs' position that they are somehow prejudiced because Defendants' disclosures identified more witnesses than their allotted number of depositions also does not justify a Court order allowing additional depositions after the close of discovery.  The frivolity of Plaintiffs' position is apparent when considering that Plaintiffs were permitted 20 party depositions and 10 non-party depositions.  (Dkt. No. 92).  Yet, as of the date of this filing Plaintiffs have only taken a total of 11 depositions:  10 party and 1 third-party.  (Morris Decl. ¶ 6).  In the remaining weeks before the discovery cut-off, Plaintiffs have scheduled another 7 depositions:  4 party and 3 third-party.  (Morris Decl. ¶ 6).  Thus, Plaintiffs are foregoing their opportunity to take 6 party and 6 non-party depositions.

The only explanation for this is the lack of diligence on Plaintiffs' part. Plaintiffs had plenty of time to take their allotted number of depositions, but instead waited until the last minute to try to squeeze in their discovery before the cut-off.  For example, prior to Plaintiffs' recent barrage (and planned barrage) of depositions that began on October 30, 2014, Plaintiffs only took <u>two</u> depositions in the last year: one on September 4, 2014 and the other on November 5, <u>2013</u>.  (Morris Decl. ¶ 7).  Thus, Plaintiffs went almost an entire year without taking any depositions in this case. Plaintiffs cannot now use this lack of diligence as an excuse for taking additional, post-discovery-cut-off depositions – especially when they had every opportunity to take the depositions while discovery was open.

Additionally, while Plaintiffs now seemingly complain that Defendants' Rule 26 disclosures are too vague for them to have properly selected whose depositions they would take, this argument is far from timely and yet again demonstrates a complete lack of diligence on Plaintiffs' part. Plaintiffs' cherry-picked example of one individual identified on Defendants' disclosures, Alex Grist, demonstrates the prematurity of Plaintiffs' request as it is yet to be determined whether Alex Grist will ever be identified as a trial witness.  As there is no present issue regarding Mr. Grist, it is improper for the Court to make a ruling based on a hypothetical example of what

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

may happen in future.  And, as is demonstrated above, if Plaintiffs were concerned about Mr. Grist's relevance to the case, they had every opportunity to engage in discovery but choose not to.

Thus, as Plaintiffs' request is premature and meritless, it must be denied.

## VII.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion be denied in its entirety.

Dated:  November 17, 2014

By:     _s/ Benjamin J. Morris_
Benjamin J. Morris
Attorneys for Defendants
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP
Email:  bmorris@foley.com

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 17, 2014 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.


_s/ Benjamin J. Morris_____

Benjamin J. Morris

DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPENING MEMORANDUM
REGARDING DISCOVERY DISPUTES

4848-9408-4128.2