1   ROBBINS GELLER RUDMAN
        & DOWD LLP
2   RACHEL L. JENSEN (211456)
    rjensen@rgrdlaw.com
3   THOMAS R. MERRICK (177987)
    tmerrick@rgrdlaw.com
4   655 West Broadway, Suite 1900
    San Diego, CA 92101
5   Telephone: 619/231-1058
    619/231-7423 (fax)
6
    ZELDES & HAEGGQUIST, LLP
7   AMBER L. ECK (177882)
    ambere@zhlaw.com
8   HELEN I. ZELDES (220051)
    helenz@zhlaw.com
9   ALREEN HAEGGQUIST (221858)
    alreenh@zhlaw.com
10  AARON M. OLSEN (259923)
    aarono@zhlaw.com
11  625 Broadway, Suite 906
    San Diego, CA 92101
12  Telephone: 619/342-8000
    619/342-7878 (fax)
13
    Attorneys for Plaintiffs and Proposed Class
14
                    UNITED STATES DISTRICT COURT
15
                  SOUTHERN DISTRICT OF CALIFORNIA
16

| | |
|---|---|
| 17  TARLA MAKAEFF, et al., on Behalf of ) Themselves and All Others Similarly Situated, ) | No. 3:10-cv-00940-CAB(WVG) |
| 18                                  Plaintiffs, ) | CLASS ACTION |
| 19           vs.                               ) | PLAINTIFFS' FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP |
| 20  TRUMP UNIVERSITY, LLC, et al.,          ) | |
| 21                                  Defendants. ) | |
| 22 | |

23  PROPOUNDING PARTY:    PLAINTIFFS TARLA MAKAEFF, BRANDON KELLER, ED
                            OBERKROM, SONNY LOW, JOHN BROWN, AND J.R.
24                          EVERETT

25  RESPONDING PARTY:     DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J.
                            TRUMP
26
27  SET NUMBER:           FOUR

28

774856_1

Exhibit 1                                          000005

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rules of this Court, Plaintiffs Tarla Makaeff, Brandon Keller, Ed Oberkrom, Sonny Low, John Brown, and J.R. Everett (collectively, "Plaintiffs") request that defendants Trump University, LLC and Donald J. Trump (collectively, "Trump" or "Defendants") produce for inspection and copying the documents described below. These documents are to be produced within 30 days from the date of service of this request to the law office of Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, or at a mutually convenient time, date and location agreed to by the parties. These requests are continuing under Fed. R. Civ. P. 34 and all your answers must thus be supplemented in accordance with Fed. R. Civ. P. 26(e).

## I.      INSTRUCTIONS

1.      In responding to these requests, you shall furnish all responsive documents within your possession, custody or control as specified in Fed. R. Civ. P. 34.

2.      You are under a duty to supplement or correct your responses pursuant to Fed. R. Civ. P. 26(e).

3.      In producing documents, you are requested to produce the original of each document together with all non-identical copies and drafts of that document. If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

4.      Documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in the request. All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained. All documents shall be produced intact in their original files, without disturbing the organization of documents employed during the conduct of the ordinary course of business.

5.      Electronically stored information must be produced in their native format.

6.      Each request should be responded to separately; however, a document which is responsive to more than one request may, if the relevant portion is so marked or indexed, be produced and referred to in the later response.

7.     Each document requested shall be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document based upon attorney-client privilege or work-product doctrine, stamp the word "REDACTED" on each page of the document which you have redacted.

8.     If any document responsive to these requests is not produced in full or is redacted on the grounds that it is privileged or otherwise claimed to be protected against production, you are requested to provide the following information with respect to each such document or redaction:

     (a)    the date such document redaction was prepared;

     (b)    the document's author, signatory and every other person who prepared or participated in its preparation, and their affiliation at that time (*e.g.*, in-house attorney, executive, outside party);

     (c)    the type of document (*e.g.*, letter, chart, memorandum, etc.) and its page length;

     (d)    a description of the document's subject matter and purpose that is sufficient to challenge the purported privilege;

     (e)    a list of those persons and entities to whom the document was disseminated, together with their affiliation (*e.g.*, in-house attorney, executive, third party);

     (f)    each and every person having possession, custody or control of the document and all copies thereof; and

     (g)    the nature of the privilege or other rule of law relied upon and any facts supporting your position in withholding production of each document.

9.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by Trump or their employees, sales agents, managers, affiliates, contractors, investigators or attorneys (or their agents, employees, representatives or investigators).

10.     If an otherwise responsive document was, but is no longer in existence or in your possession, custody or control, identify its current or last known custodian and describe in full the

1  circumstances surrounding its disposition from your possession or control. All documents shall be

2  deemed to be in your control if you have the right to secure the document or copy thereof from

3  another person or private entity having possession or custody thereof.

4      11.    If any documents requested herein have been altered, lost, discarded or destroyed,

5  they shall be identified as completely as possible and shall include the following information:

6          (a)     the date of alteration or disposal;

7          (b)     the manner of alteration or disposal;

8          (c)     the reason for alteration or disposal;

9          (d)     the person áuthorizing alteration or disposal; and

10         (e)     the person altering or disposing of the document or documents in question.

11  **II.     DEFINITIONS**

12      The following definitions shall apply to each of the requests for documents set forth and are

13  deemed to be incorporated in each of the requests:

14      1.     "All documents" shall mean every document within the custody, possession or

15  control of you, your national, regional and local offices, and any of your attorneys, representatives,

16  employees and/or agents, whether an original or copy, as defined above, known to you, and every

17  such document or writing which you can locate or discover through reasonably diligent efforts.

18      2.     "Document" or "documents" shall be interpreted in the broadest possible sense and

19  includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized or

20  graphic matter and all other tangible things and media upon which any handwriting, typing, printing,

21  drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical

22  impulse, visual reproduction or communication is recorded, reproduced or represented, including

23  each and any book, record, correspondence, report, memoranda, electronic mail, contract, table,

24  tabulation, graph, chart, diagram, plan, schedule, appointment book, calendar, diary, time sheet,

25  report, study, analysis, draft, telegram, teletype or telecopy message, file, telephone log, telephone

26  message, check, microfilm, microfiche, picture, photographs, printout, electronic data compilation,

27  tape, diskette, drive, removable media, note, minutes or transcript of proceedings, including, but not

28  limited to, minutes of meetings, or other communications of any type, including interoffice

1 communications, questionnaires, surveys, charges, newspapers, booklets, circulars, work papers,

2 bulletins, notices, instructions, resolutions, reports, records, papers, bills or invoices, books of

3 account, financial statements, working papers, deeds, loan agreements, notes, ledgers, security

4 agreements, financing statements, tax returns, checks, receipts, journals and data of every description

5 and shall include each and any original produced or reproduced by any method, all non-identical

6 copies (whether different from the original because of notes made in, or attached to, such copy, or

7 otherwise), all other data compilations from which information can be obtained (translated, if

8 necessary, into usable form), and any preliminary versions, drafts or revisions of any of the

9 foregoing.

10      3.      "Regarding," "concerning" or "relating" shall mean documents which explicitly or

11 implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a

12 result of the subject matter of these requests, including all documents which reflect, record, specify,

13 memorialize, discuss, describe, consider, concern, relate to, constitute, embody, evaluate, analyze,

14 review, report on, comment on, impinge upon or impact the subject matter of the request.

15      4.      "Trump University" means Trump University, aka Trump Entrepreneur Initiative, any

16 predecessors, successors, agents, employees, officers, directors, independent contractors, attorneys,

17 accountants, or representatives or other persons occupying similar positions or /performing similar

18 functions.

19 **III.    RELEVANT TIME PERIOD**

20      Unless otherwise stated, these requests for production of documents seek information

21 concerning the period of time from April 30, 2006 to the present.

22 **IV.    DOCUMENT REQUESTS**

23 <u>REQUEST FOR PRODUCTION NO. 40</u>:

24      All Documents concerning Jason Nicholas, including, but not limited to, all agreements and

25 communications between Jason Nicholas and Defendants, and all Documents that Defendants

26 provided to Jason Nicholas during the course of his employment with Trump University.

27

28

Exhibit 1                                                          000009

REQUEST FOR PRODUCTION NO. 41:

1  REQUEST FOR PRODUCTION NO. 41:

2      All Documents concerning Cheryl Donnelly, including, but not limited to, all agreements and

3  communications between Cheryl Donnelly and Defendants, and all Documents that Defendants

4  provided to Cheryl Donnelly during the course of her employment with Trump University.

5  REQUEST FOR PRODUCTION NO. 42:

6      All Documents concerning Donald Schnackenberg, including, but not limited to, all

7  agreements and communications between Donald Schnackenberg and Defendants, and all

8  Documents that Defendants provided to Donald Schnackenberg during the course of his employment

9  with Trump University.

10  REQUEST FOR PRODUCTION NO. 43:

11      All Documents concerning Corinne Sommer, including, but not limited to, all agreements

12  and communications between Corinne Sommer and Defendants, and all Documents that Defendants

13  provided to Corinne Sommer during the course of her employment with Trump University.

14  DATED:  October 8, 2012                    ROBBINS GELLER RUDMAN
                                               & DOWD LLP
15                                             RACHEL L. JENSEN
                                               THOMAS R. MERRICK
16

17

18                                                   RACHEL L. JENSEN

19                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101
20                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)
21
                                               ZELDES & HAEGGQUIST, LLP
22                                             AMBER L. ECK
                                               HELEN I. ZELDES
23                                             ALREEN HAEGGQUIST
                                               AARON M. OLSEN
24                                             625 Broadway, Suite 906
                                               San Diego, CA  92101
25                                             Telephone:  619/342-8000
                                               619/342-7878 (fax)
26
                                               Attorneys for Plaintiffs and Proposed Class
27

28

Exhibit 1                                                            000010

<u>DECLARATION OF SERVICE</u>

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.     That on October 8, 2012 declarant caused to be served PLAINTIFFS' FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP by hand delivery to the parties listed below:

> David K. Schneider
> Yunker & Schneider
> 655 W. Broadway, Suite 1400
> San Diego, CA 92101

3.     That on October 8, 2012 declarant served PLAINTIFFS' FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP via email to the parties listed below:

> Amber L. Eck (ambere@zhlaw.com)
> Helen I. Zeldes (helenz@zhlaw.com)
> Alreen Haeggquist (alreenh@zhlaw.com)
> Aaron M. Olsen (aarono@zhlaw.com)
> Zeldes & Haeggquist, LLP
> 625 Broadway, Suite 906
> San Diego, CA  92101

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 8, 2012, at San Diego, California.

_____
HEATHER S. BROWN

774856_1

3:10-cv-00940-CAB(WVG)

Exhibit 1                                    000011

1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   RACHEL L. JENSEN (211456)
    rjensen@rgrdlaw.com
3   THOMAS R. MERRICK (177987)
    tmerrick@rgrdlaw.com
4   655 West Broadway, Suite 1900
    San Diego, CA 92101
5   Telephone: 619/231-1058
    619/231-7423 (fax)
6
    ZELDES & HAEGGQUIST, LLP
7   AMBER L. ECK (177882)
    ambere@zhlaw.com
8   HELEN I. ZELDES (220051)
    helenz@zhlaw.com
9   ALREEN HAEGGQUIST (221858)
    alreenh@zhlaw.com
10  AARON M. OLSEN (259923)
    aarono@zhlaw.com
11  625 Broadway, Suite 906
    San Diego, CA 92101
12  Telephone: 619/342-8000
    619/342-7878 (fax)
13
    Attorneys for Plaintiffs and Proposed Class
14
                    UNITED STATES DISTRICT COURT
15
                  SOUTHERN DISTRICT OF CALIFORNIA
16
17  TARLA MAKAEFF, et al., on Behalf of      )   No. 3:10-cv-00940-CAB(WVG)
    Themselves and All Others Similarly Situated, )
18                                            )   CLASS ACTION
                          Plaintiffs,         )
19                                            )   PLAINTIFFS' FIFTH SET OF REQUESTS
          vs.                                 )   FOR PRODUCTION OF DOCUMENTS TO
20                                            )   DEFENDANTS TRUMP UNIVERSITY, LLC
    TRUMP UNIVERSITY, LLC, et al.,            )   AND DONALD J. TRUMP
21                                            )
                          Defendants.         )
22  _____ )

23  PROPOUNDING PARTY:    PLAINTIFFS TARLA MAKAEFF, BRANDON KELLER, ED
24                        OBERKROM, SONNY LOW, J.R. EVERETT AND JOHN
                          BROWN
25  RESPONDING PARTY:     DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J.
26                        TRUMP
    SET NUMBER:           FIVE
27
28

790713_1

Exhibit 2                                                    000012

1   TO:      ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2          Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rules of this

3   Court, Plaintiffs Tarla Makaeff, Brandon Keller, Ed Oberkrom, Sonny Low, J.R. Everett, and John

4   Brown (collectively, "Plaintiffs") request that defendants Trump University, LLC and Donald J.

5   Trump (collectively, "Trump" or "Defendants") produce for inspection and copying the documents

6   described below.  These documents are to be produced within 30 days from the date of service of

7   this request to the law office of Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite

8   1900, San Diego, California 92101.  These requests are continuing under Fed. R. Civ. P. 34 and all

9   your answers must thus be supplemented in accordance with Fed. R. Civ. P. 26(e).

10  **I.       INSTRUCTIONS**

11         1.       In responding to these requests, you shall furnish all responsive documents within

12  your possession, custody and control as specified in Fed. R. Civ. P. 34.

13         2.       You are under a duty to supplement or correct your responses pursuant to Fed. R. Civ.

14  P. 26(e).

15         3.       In producing documents, you are requested to produce the *original* of each document

16  together with all non-identical copies and drafts of that document.  If the original of any document

17  cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled

18  in the same manner as the *original*.

19         4.       Documents shall be produced as they are kept in the ordinary course of business or

20  shall be organized and labeled to correspond with the categories in the request.  All documents shall

21  be produced in the file folder, envelope or other container in which the documents are kept or

22  maintained.  All documents shall be produced intact in their *original* files, without disturbing the

23  organization of documents employed during the conduct of the ordinary course of business.

24         5.       Electronically stored information ("ESI") must be produced in their native format,

25  including all metadata.

26         6.       Each request should be responded to separately; however, a document which is

27  responsive to more than one request may, if the relevant portion is so marked or indexed, be

28  produced and referred to in the later response.

7.     Each document requested shall be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document based upon attorney-client privilege or work-product doctrine, stamp the word "REDACTED" on each page of the document which you have redacted.

8.     If any document responsive to these requests is not produced in full or is redacted on the grounds that it is privileged or otherwise claimed to be protected against production, you are requested to provide the following information with respect to each such document or redaction:

        (a)     the date such document redaction was prepared;

        (b)     the document's author, signatory and every other person who prepared or participated in its preparation, and their affiliation at that time (*e.g.*, in-house attorney, executive, outside party);

        (c)     the type of document (*e.g.*, letter, chart, memorandum, etc.) and its page length;

        (d)     a description of the document's subject matter and purpose that is sufficient to challenge the purported privilege;

        (e)     a list of those persons and entities to whom the document was disseminated, together with their affiliation (*e.g.*, in-house attorney, executive, third party);

        (f)     each and every person having possession, custody or control of the document and all copies thereof; and

        (g)     the nature of the privilege or other rule of law relied upon and any facts supporting your position in withholding production of each document.

9.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by Trump or their employees, sales agents, managers, affiliates, contractors, investigators or attorneys (or their agents, employees, representatives or investigators).

10.    If an otherwise responsive document was, but is no longer in existence or in your possession, custody or control, identify its current or last known custodian and describe in full the

1 circumstances surrounding its disposition from your possession or control.  All documents shall be

2 deemed to be in your control if you have the right to secure the document or copy thereof from

3 another person or private entity having possession or custody thereof.

4       11.    If any documents requested herein have been altered, lost, discarded or destroyed,

5 they shall be identified as completely as possible and shall include the following information:

6           (a)    the date of alteration or disposal;

7           (b)    the manner of alteration or disposal;

8           (c)    the reason for alteration or disposal;

9           (d)    the person authorizing alteration or disposal; and

10           (e)    the person altering or disposing of the document or documents in question.

11 **II.    DEFINITIONS**

12       The following definitions shall apply to each of the requests for documents set forth and are

13 deemed to be incorporated in each of the requests:

14       1.    "All documents" shall mean every document within the custody, possession or

15 control of you, your national, regional and local offices, and any of your attorneys, representatives,

16 employees and/or agents, whether an original or copy, as defined above, known to you, and every

17 such document or writing which you can locate or discover through reasonably diligent efforts.

18       2.    "Consisting of" "reflecting" or "relating to" shall mean documents which explicitly or

19 implicitly, in whole or in part, compare, were received in conjunction with, or were generated as a

20 result of the subject matter of the request, including all documents which reflect, record, specify,

21 memorialize, discuss, describe, consider, concern, relate to, constitute, embody, evaluate, analyze,

22 review, report on, comment on, impinge upon or impact the subject matter of the request.

23       3.    "Document" or "documents" shall be interpreted in the broadest possible sense and

24 includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized or

25 graphic matter and all other tangible things and media upon which any handwriting, typing, printing,

26 drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical

27 impulse, visual reproduction or communication is recorded, reproduced or represented, including

28 each and any book, record, correspondence, report, memoranda, electronic mail ("email"), contract,

1   table, tabulation, graph, chart, diagram, plan, schedule, appointment book, calendar, diary, time

2   sheet, report, study, analysis, draft, telegram, teletype or telecopy message, file, telephone log,

3   telephone message, check, microfilm, microfiche, picture, photographs, printout, electronic data

4   compilation, tape, diskette, drive, removable media, note, minutes or transcript of proceedings,

5   including, but not limited to, minutes of meetings, or other communications of any type, including

6   interoffice communications, questionnaires, surveys, charges, newspapers, booklets, circulars, work

7   papers, bulletins, notices, instructions, resolutions, reports, records, papers, bills or invoices, books

8   of account, financial statements, working papers, deeds, loan agreements, notes, ledgers, security

9   agreements, financing statements, tax returns, checks, receipts, journals, and data of every

10   description and shall include each and any original produced or reproduced by any method, all non-

11   identical copies (whether different from the original because of notes made in or attached to such

12   copy, or otherwise), all other data compilations from which information can be obtained (translated,

13   if necessary, into usable form), and any preliminary versions, drafts or revisions of any of the

14   foregoing.

15         4.     "Seminar" means courses, seminars, workshops, mentorships, retreats and/or

16   programs from Trump University.

17         5.     "Trump University" means Trump University, LLC, aka Trump Entrepreneur

18   Initiative, any current and former predecessors, successors, agents, employees, officers, directors,

19   independent contractors, attorneys, accountants, or representatives or other persons occupying

20   similar positions or performing similar functions.

21   **III.**    **RELEVANT TIME PERIOD**

22         Unless otherwise stated, these interrogatories seek information concerning the period of time

23   from April 30, 2006 to the present.

24   **IV.**    **DOCUMENT REQUESTS**

25   REQUEST FOR PRODUCTION NO. 44:

26         All documents, including, but not limited to, marketing materials, advertisements, course

27   materials and PowerPoint presentations, audio or video recordings of same, training materials, and/or

28

1   correspondence concerning senior citizens or mentioning retirement or leaving property to one's

2   children.

3   REQUEST FOR PRODUCTION NO. 45:

4       All studies, testing, or analysis undertaken by you or a third party concerning Trump

5   University's target markets and/or demographics of students, including, but not limited to, the age of

6   students or prospective students.

7   REQUEST FOR PRODUCTION NO. 46:

8       All documents not yet produced that were requested in Plaintiffs' meet and confer letters of

9   the following dates: November 16, 2011; December 13, 2011; March 23, 2012; March 28, 2012;

10   May 4, 2012; May 16, 2012; June 25, 2012; August 14, 2012; August 31, 2012; October 11, 2012;

11   October 26, 2012; and November 14, 2012.

12   REQUEST FOR PRODUCTION NO. 47:

13       All documents and correspondence concerning student testimonials, including, but expressly

14   not limited to, efforts to obtain testimonials, correspondence reflecting any testimonial provided by a

15   student, your approval of the use of such testimonials, documents supporting any claims of success

16   made in such testimonials, any documents or correspondence that analyze whether such testimonials

17   were representative of actual results that a student might expect to obtain, and any follow up with

18   students to ascertain whether such claims continued to be true over time.

19   REQUEST FOR PRODUCTION NO. 48:

20       All documents concerning Plaintiffs Sonny Low, J.R. Everett, and John Brown.

21   REQUEST FOR PRODUCTION NO. 49:

22       Your sales documents, including, but not limited to, commission reports, sales goals,

23   documents memorializing sales meetings, scripts, as well as correspondence regarding any of the

24   foregoing.

25   REQUEST FOR PRODUCTION NO. 50:

26       All correspondence requesting a refund for a live event or mentorship, as well as

27   correspondence concerning requests for refunds, including correspondence among employees,

28

1    correspondence with students, and correspondence with third parties regarding student refund

2    requests.

3    REQUEST FOR PRODUCTION NO. 51:

4        All correspondence concerning the PowerPoint presentations given at the live events.

5    REQUEST FOR PRODUCTION NO. 52:

6        All correspondence concerning the topics contained in Plaintiffs' document requests,

7    including these document requests and requests previously propounded on Defendants.

8    REQUEST FOR PRODUCTION NO. 53:

9        Any correspondence showing that Donald J. Trump reviewed resumes for prospective

10   instructors for the live events and/or mentors.

11   REQUEST FOR PRODUCTION NO. 54:

12       All documents that support your answers to Plaintiffs' third set of interrogatories.

13   DATED:  November 20, 2012              ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
14                                           RACHEL L. JENSEN
                                             THOMAS R. MERRICK
15

16

17                                           RACHEL L. JENSEN

18                                           655 West Broadway, Suite 1900
                                             San Diego, CA  92101
19                                           Telephone:  619/231-1058
                                             619/231-7423 (fax)
20
                                             ZELDES & HAEGGQUIST, LLP
21                                           AMBER L. ECK
                                             HELEN I. ZELDES
22                                           ALREEN HAEGGQUIST
                                             AARON M. OLSEN
23                                           625 Broadway, Suite 906
                                             San Diego, CA  92101
24                                           Telephone:  619/342-8000
                                             619/342-7878 (fax)
25
                                             Attorneys for Plaintiffs and Proposed Class
26

27

28

Exhibit 2                                    000018

DECLARATION OF SERVICE

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.      That on November 20, 2012 declarant caused to be served PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP by hand delivery to the parties listed below:

> David K. Schneider
> Yunker & Schneider
> 655 W. Broadway, Suite 1400
> San Diego, CA 92101

3.      That on November 20, 2012 declarant served PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP via email to the parties listed below:

> Amber L. Eck (ambere@zhlaw.com)
> Helen I. Zeldes (helenz@zhlaw.com)
> Alreen Haeggquist (alreenh@zhlaw.com)
> Aaron M. Olsen (aarono@zhlaw.com)
> Zeldes & Haeggquist, LLP
> 625 Broadway, Suite 906
> San Diego, CA 92101

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 20, 2012, at San Diego, California.

HEATHER S. BROWN

790713_1

3:10-cv-00940-CAB(WVG)

Exhibit 2                                    000019

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
THOMAS R. MERRICK (177987)
tmerrick@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiffs and Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFFS' SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP |

PROPOUNDING PARTY:     PLAINTIFFS TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT AND JOHN BROWN

RESPONDING PARTY:      DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP

SET NUMBER:            SIX

828816_1

Exhibit 3                                                        000020

1   TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2          Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local

3   Rules of this Court, Plaintiffs Tarla Makaeff, Brandon Keller, Ed Oberkrom, Sonny

4   Low, J.R. Everett, and John Brown (collectively, "Plaintiffs") request that defendants

5   Trump University, LLC and Donald J. Trump (collectively, "Trump" or

6   "Defendants") produce for inspection and copying the documents described below.

7   These documents are to be produced within 30 days from the date of service of this

8   request to the law office of Robbins Geller Rudman & Dowd LLP, 655 W. Broadway,

9   Suite 1900, San Diego, California 92101.  These requests are continuing under Fed. R.

10  Civ. P. 34, and all your answers must thus be supplemented in accordance with Fed.

11  R. Civ. P. 26(e).

12  **I.     INSTRUCTIONS**

13         1.    In responding to these requests, you shall furnish all responsive

14  documents within your possession, custody and control as specified in Fed. R. Civ. P.

15  34, including documents in the possession of directors, officers, shareholders, owners,

16  current and former employees, parents, subsidiaries, and affiliates, as well as

17  attorneys, accountants, independent contractors, agents and representatives.

18         2.    You are under a duty to supplement or correct your responses pursuant to

19  Fed. R. Civ. P. 26(e).

20         3.    In producing documents, you are requested to produce the ***original*** of

21  each document together with all non-identical copies and drafts of that document.  If

22  the original of any document cannot be located, a copy shall be provided in lieu

23  thereof, and shall be legible and bound or stapled in the same manner as the ***original***.

24         4.    Documents shall be produced as they are kept in the ordinary course of

25  business or shall be organized and labeled to correspond with the categories in the

26  request.  All documents shall be produced in the file folder, envelope or other

27  container in which the documents are kept or maintained.  All documents shall be

28

Exhibit 3                                              000021

1  produced intact in their *original* files, without disturbing the organization of

2  documents employed during the conduct of the ordinary course of business.

3      5.  Electronically stored information ("ESI") must be produced in their

4  native format, including all metadata.

5      6.  Each request should be responded to separately; however, a document

6  which is responsive to more than one request may, if the relevant portion is so marked

7  or indexed, be produced and referred to in the later response.

8      7.  Each document requested shall be produced in its entirety and without

9  deletion or excisions, regardless of whether you consider the entire document to be

10  relevant or responsive to the request.  If you have redacted any portion of a document

11  based upon attorney-client privilege or work-product doctrine, stamp the word

12  "REDACTED" on each page of the document which you have redacted.

13      8.  If any document responsive to these requests is not produced in full or is

14  redacted on the grounds that it is privileged or otherwise claimed to be protected

15  against production, you are requested to provide the following information with

16  respect to each such document or redaction:

17          (a)  the date such document redaction was prepared;

18          (b)  the document's author, signatory and every other person who

19  prepared or participated in its preparation, and their affiliation at that time (*e.g.*, in-

20  house attorney, executive, outside party);

21          (c)  the type of document (*e.g.*, letter, chart, memorandum, etc.) and its

22  page length;

23          (d)  a description of the document's subject matter and purpose that is

24  sufficient to challenge the purported privilege;

25          (e)  a list of those persons and entities to whom the document was

26  disseminated, together with their affiliation (*e.g.*, in-house attorney, executive, third

27  party);

28

1          (f)    each and every person having possession, custody or control of the

2 document and all copies thereof; and

3          (g)    the nature of the privilege or other rule of law relied upon and any

4 facts supporting your position in withholding production of each document.

5        9.    In producing documents and other materials, you are requested to furnish

6 all documents or things in your possession, custody or control, regardless of whether

7 such documents or materials are possessed directly by Trump or their employees,

8 sales agents, managers, affiliates, contractors, investigators or attorneys (or their

9 agents, employees, representatives or investigators).

10      10.    If an otherwise responsive document was, but is no longer in existence or

11 in your possession, custody or control, identify its current or last known custodian and

12 describe in full the circumstances surrounding its disposition from your possession or

13 control.  All documents shall be deemed to be in your control if you have the right to

14 secure the document or copy thereof from another person or private entity having

15 possession or custody thereof.

16      11.    If any documents requested herein have been altered, lost, discarded or

17 destroyed, they shall be identified as completely as possible and shall include the

18 following information:

19          (a)    the date of alteration or disposal;

20          (b)    the manner of alteration or disposal;

21          (c)    the reason for alteration or disposal;

22          (d)    the person authorizing alteration or disposal; and

23          (e)    the person altering or disposing of the document or documents in

24 question.

25 **II.**     **RULES OF CONSTRUCTION**

26      1.    These requests shall be construed to be consistent with the prior Orders

27 of this Court relating to the conduct of the discovery in this Action.

28

2.     The term "all" means any and all, and the word "any" means any and all.

3.     The term "including," means "including, but not limited to."

4.     The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

5.     The use of the singular form of any word includes the plural and vice versa.

6.     The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

## III.   DEFINITIONS

The following definitions shall apply to each of the requests set forth below and are deemed to be incorporated in each of the requests:

1.     "You" and "your" shall mean Trump University and/or Donald J. Trump, including any of his employees, parents, subsidiaries, affiliates, officers, companies, independent contractors, attorneys, accountants, or representatives or other persons occupying similar positions or performing similar functions.

2.     "All documents" shall mean every document within the custody, possession or control of you, your national, regional and local offices, and any of your attorneys, representatives, employees and/or agents, whether an original or copy, as defined above, known to you, and every such document or writing which you can locate or discover through reasonably diligent efforts.

3.     "Document(s)" shall be interpreted in the broadest possible sense and includes, without limitation, all written, recorded, printed, typed, transcribed, filmed, digitized or graphic matter and all other tangible things and media upon which any handwriting, typing, printing, drawing, representation, electrostatic or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is recorded, reproduced or represented, including each and any book, record, correspondence, report, memoranda, electronic mail, contract, table,

1    tabulation, graph, chart, diagram, plan, schedule, appointment book, calendar, diary,

2    time sheet, report, study, analysis, draft, telegram, teletype or telecopy message, file,

3    telephone log, telephone message, check, microfilm, microfiche, picture, photographs,

4    printout, electronic data compilation, tape, diskette, drive, removable media, note,

5    minutes or transcript of proceedings, including, but not limited to, minutes of

6    meetings, or other communications of any type, including interoffice communications,

7    questionnaires, surveys, charges, newspapers, booklets, circulars, work papers,

8    bulletins, notices, instructions, resolutions, reports, records, papers, bills or invoices,

9    books of account, financial statements, working papers, deeds, loan agreements, notes,

10   ledgers, security agreements, financing statements, tax returns, checks, receipts,

11   journals and data of every description and shall include each and any original

12   produced or reproduced by any method, all non-identical copies (whether different

13   from the original because of notes made in or attached to such copy, or otherwise), all

14   other data compilations from which information can be obtained (translated, if

15   necessary, into usable form), and any preliminary versions, drafts or revisions of any

16   of the foregoing.

17        4.    "Consisting of," "reflecting" or "relating to" shall mean documents

18   which explicitly or implicitly, in whole or in part, compare, were received in

19   conjunction with, or were generated as a result of the subject matter of the request,

20   including all documents which reflect, record, specify, memorialize, discuss, describe,

21   consider, concern, relate to, constitute, embody, evaluate, analyze, review, report on,

22   comment on, impinge upon or impact the subject matter of the request.

23        5.    "Seminar(s)" or "event(s)" means courses, seminars, workshops,

24   mentorships, retreats, presentations, coaching, and/or programs from Trump

25   University.

26        6.    "Trump University" means Trump University, LLC, aka Trump

27   Entrepreneur Initiative, any current and former predecessors, successors, agents,

28   employees, officers, directors, independent contractors, attorneys, accountants, or

Exhibit 3                                              000025

1 representatives or other persons occupying similar positions or performing similar

2 functions.

3 **IV.    RELEVANT TIME PERIOD**

4     Unless otherwise stated, these requests seek information concerning the period

5 of time from January 1, 2005, to the present.

6 **V.    DOCUMENT REQUESTS**

7 REQUEST FOR PRODUCTION NO. 55:

8     All draft and final declarations, affidavits or any other statements Defendants

9 have sought or obtained from any person relating to the claims and defenses in this

10 action since the inception of this lawsuit, including drafts thereof and communications

11 concerning same.

12 REQUEST FOR PRODUCTION NO. 56:

13     Documents, including phone records, relating to any communication, whether

14 by phone, email, letter or otherwise, with any person who attended and/or purchased a

15 live event, concerning this litigation.

16 REQUEST FOR PRODUCTION NO. 57:

17     All internal correspondence concerning any governmental agency or the Better

18 Business Bureau.

19 REQUEST FOR PRODUCTION NO. 58:

20     All documents (including phone records) evidencing the date, time, and subject

21 matter of all communications, whether by telephone, email, letter or otherwise, with

22 the 14 class members (Amy Hinderer, Mette Nielsen, Paula Levand, Meena Mohan,

23 Charles Lee, Jesus Castillo, Marla Colic, Kissy Gordon, Greg Leishman, Stephen

24 Nesbit, Paul Canup, Robert Mulack, Scott Talhelm, and David Wright) who provided

25 a declaration in connection with Defendants' opposition to class certification.

26 REQUEST FOR PRODUCTION NO. 59:

27     All documents and communications concerning James Harris' termination from

28 Trump University.

REQUEST FOR PRODUCTION NO. 60:

All internal letters and emails providing notice of resignation from any Trump University officer, employee or independent consultant.

REQUEST FOR PRODUCTION NO. 61:

All studies, testing, or analysis undertaken by you or a third party concerning Trump University's advertising and marketing, including communications concerning the same.

REQUEST FOR PRODUCTION NO. 62:

All documents and communications concerning the decision to cease live events, as well as documents evidencing who the primary decisionmakers were.

REQUEST FOR PRODUCTION NO. 63:

All documents and communications concerning Michael Sexton's stepping down as President of Trump University.

REQUEST FOR PRODUCTION NO. 64:

To the extent defendant Donald J. Trump's responses to Plaintiffs' Request for Admission Nos. 10 through 15 is other than an unqualified admission, produce all documents memorializing each such fact.

REQUEST FOR PRODUCTION NO. 65:

To the extent defendant Trump University's responses to Plaintiffs' Request for Admission Nos. 14 through 20 is other than an unqualified admission, produce all documents memorializing each such fact.

1  REQUEST FOR PRODUCTION NO. 66:

2       The September 10, 2009 letter received by Trump University from Tarla

3  Makaeff referenced in TU 01473.

4  DATED:  April 5, 2013                    ROBBINS GELLER RUDMAN
                                             & DOWD LLP
5                                          RACHEL L. JENSEN
                                           THOMAS R. MERRICK
6

7

8                                          RACHEL L. JENSEN

9                                          655 West Broadway, Suite 1900
                                           San Diego, CA  92101
10                                         Telephone:  619/231-1058
                                           619/231-7423 (fax)
11
                                           ZELDES & HAEGGQUIST, LLP
12                                         AMBER L. ECK
                                           HELEN I. ZELDES
13                                         ALREEN HAEGGQUIST
                                           AARON M. OLSEN
14                                         625 Broadway, Suite 906
                                           San Diego, CA  92101
15                                         Telephone:  619/342-8000
                                           619/342-7878 (fax)
16
                                           Attorneys for Plaintiffs and Proposed
17                                         Class

18

19

20

21

22

23

24

25

26

27

28

Exhibit 3                                           000028

DECLARATION OF SERVICE

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.    That on April 5, 2013, declarant caused to be served PLAINTIFFS' SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP by hand delivery and email to his counsel as listed below:

> David K. Schneider (dks@yslaw.com)
> Yunker & Schneider
> 655 W. Broadway, Suite 1400
> San Diego, CA 92101

3.    That on April 5, 2013, declarant served PLAINTIFFS' SIXTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP via email to the parties listed below:

> Amber L. Eck (ambere@zhlaw.com)
> Helen I. Zeldes (helenz@zhlaw.com)
> Alreen Haeggquist
> (alreenh@zhlaw.com)
> Aaron M. Olsen (aarono@zhlaw.com)
> Zeldes & Haeggquist, LLP
> 625 Broadway, Suite 906
> San Diego, CA 92101

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 5, 2013 at San Diego, California.

_____
HEATHER S. BROWN

1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  JASON A. FORGE (181542)
   jforge@rgrdlaw.com
3  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
4  THOMAS R. MERRICK (177987)
   tmerrick@rgrdlaw.com
5  655 West Broadway, Suite 1900
   San Diego, CA  92101
6  Telephone:  619/231-1058
   619/231-7423 (fax)
7
   ZELDES HAEGGQUIST & ECK, LLP
8  AMBER L. ECK (177882)
   ambere@zhlaw.com
9  HELEN I. ZELDES (220051)
   helenz@zhlaw.com
10 ALREEN HAEGGQUIST (221858)
   alreenh@zhlaw.com
11 AARON M. OLSEN (259923)
   aarono@zhlaw.com
12 625 Broadway, Suite 1000
   San Diego, CA  92101
13 Telephone:  619/342-8000
   619/342-7878 (fax)
14
15 Class Counsel

16                    UNITED STATES DISTRICT COURT

17                  SOUTHERN DISTRICT OF CALIFORNIA

18 TARLA MAKAEFF, et al., on Behalf of )  No. 3:10-cv-0940-GPC(WVG)
   Themselves and All Others Similarly  )
   Situated,                            )  CLASS ACTION
19                                       )  _____
                                        )
20                         Plaintiffs,  )  PLAINTIFFS' SEVENTH SET OF
                                        )  REQUESTS FOR PRODUCTION OF
21       vs.                            )  DOCUMENTS TO DEFENDANTS
                                        )  TRUMP UNIVERSITY, LLC AND
22 TRUMP UNIVERSITY, LLC, et al.,       )  DONALD J. TRUMP
                                        )
23                         Defendants.  )
   _____ )

24 PROPOUNDING PARTY:        PLAINTIFFS TARLA MAKAEFF, BRANDON
                             KELLER, ED OBERKROM, SONNY LOW, J.R.
25                           EVERETT AND JOHN BROWN

26 RESPONDING PARTY:         DEFENDANTS TRUMP UNIVERSITY, LLC
                             AND DONALD J. TRUMP
27
28 SET NUMBER:               SEVEN

922038_1

Exhibit 4                                                    000030

1  TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2          Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local
3  Rules of this Court, Plaintiffs Tarla Makaeff, Brandon Keller, Ed Oberkrom, Sonny
4  Low, J.R. Everett, and John Brown (collectively, "Plaintiffs") request that defendants
5  Trump University, LLC and Donald J. Trump (collectively, "Trump" or
6  "Defendants") produce for inspection and copying the documents described below.
7  These documents are to be produced within 30 days from the date of service of this
8  request to the law office of Robbins Geller Rudman & Dowd LLP, 655 West
9  Broadway, Suite 1900, San Diego, California 92101.  These requests are continuing
10  under Fed. R. Civ. P. 34 and all your answers must thus be supplemented in
11  accordance with Fed. R. Civ. P. 26(e).

12  **I.    INSTRUCTIONS**

13          1.    In responding to these requests, you shall furnish all responsive
14  documents within your possession, custody and control pursuant to Fed. R. Civ. P. 34.

15          2.    You are under a duty to supplement or correct your responses on an
16  ongoing basis pursuant to Fed. R. Civ. P. 26(e).

17          3.    In producing documents, you are requested to produce the original of
18  each document together with all non-identical copies and drafts of that document.  If
19  the original of any document cannot be located, a copy shall be provided in lieu
20  thereof, and shall be legible and bound or stapled in the same manner as the original.

21          4.    Documents shall be produced as they are kept in the ordinary course of
22  business or shall be organized and labeled to correspond with the categories in the
23  request.  All documents shall be produced in the file folder, envelope or other
24  container in which the documents are kept or maintained.  All documents shall be
25  produced intact in their original files, without disturbing the organization of
26  documents employed during the conduct of the ordinary course of business.

27          5.    Electronically stored information ("ESI") must be produced in their
28  native format, including all metadata.

922038_i                                    - 1 -                      3:10-cv-0940-GPC(WVG)

Exhibit 4                                                                    000031

6. Each request should be responded to separately; however, a document which is responsive to more than one request may, if the relevant portion is so marked or indexed, be produced and referred to in the later response.

7. Each document requested shall be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any portion of a document based upon attorney-client privilege or work-product doctrine, stamp the word "REDACTED" on each page of the document which you have redacted.

8. If any document responsive to these requests is not produced in full or is redacted on the grounds that it is privileged or otherwise claimed to be protected against production, you are requested to provide the following information with respect to each such document or redaction:

(a) the date such document redaction was prepared;

(b) the document's author, signatory and every other person who prepared or participated in its preparation, and their affiliation at that time (*e.g.*, in-house attorney, executive, third party);

(c) the type of document (*e.g.*, letter, chart, memorandum, etc.) and its page length;

(d) a description of the document's subject matter and purpose that is sufficient to challenge the purported privilege;

(e) a list of those persons and entities to whom the document was disseminated, together with their affiliation (*e.g.*, in-house attorney, executive, third party);

(f) each and every person having possession, custody or control of the document and all copies thereof; and

(g) the nature of the privilege or other rule of law relied upon and any facts supporting your position in withholding production of each document.

9.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by Trump or their employees, sales agents, managers, affiliates, contractors, investigators, or attorneys (or their agents, employees, representatives or investigators).

10.    If an otherwise responsive document was, but is no longer in existence or in your possession, custody or control, identify its current or last known custodian and describe in full the circumstances surrounding its disposition from your possession or control.  All documents shall be deemed to be in your control if you have the right to secure the document or copy thereof from another person or private entity having possession or custody thereof.

11.    If any documents requested herein have been altered, lost, discarded or destroyed, they shall be identified as completely as possible and shall include the following information:

        (a)    the date of alteration or disposal;

        (b)    the manner of alteration or disposal;

        (c)    the reason for alteration or disposal;

        (d)    the person authorizing alteration or disposal; and

        (e)    the person altering or disposing of the document or documents in question.

## II.    RULES OF CONSTRUCTION

1.    These requests shall be construed to be consistent with the prior Orders of this Court relating to the conduct of the discovery in this Action.

2.    The term "all" means any and all, and the word "any" means any and all.

3.    The term "including," means "including, but not limited to."

Exhibit 4

1       4.     The terms "and" and "or" shall be construed either conjunctively or
2 disjunctively as necessary to bring within the scope of the request all responses that
3 might otherwise be construed to be outside of its scope.

4       5.     The use of the singular form of any word includes the plural and vice
5 versa.

6       6.     The use of any tense of any verb shall also include within its meaning all
7 other tenses of that verb.

8 **III.**   **DEFINITIONS**

9       The following definitions shall apply to each of the requests for documents set
10 forth and are deemed to be incorporated in each of the requests:

11       1.     "You" and "your" shall mean Trump University and/or Donald J. Trump,
12 including any of his employees, parents, subsidiaries, affiliates, officers, companies,
13 independent contractors, attorneys, accountants, or representatives or other persons
14 occupying similar positions or performing similar functions.

15       2.     "All documents" shall mean every document within the custody,
16 possession or control of you, your national, regional and local offices, and any of your
17 attorneys, representatives, employees and/or agents, whether an original or copy, as
18 defined above, known to you, and every such document or writing which you can
19 locate or discover through reasonably diligent efforts.

20       3.     "Concern," "consisting of," "reflecting," or "relating to" shall mean
21 documents which explicitly or implicitly, in whole or in part, compare, were received
22 in conjunction with, or were generated as a result of the subject matter of the request,
23 including all documents which refer, reflect, record, specify, memorialize, mention,
24 discuss, describe, consider, concern, relate to, constitute, embody, evaluate, analyze,
25 review, report on, comment on, impinge upon, or impact the subject matter of the
26 request.

27       4.     "Document" or "documents" shall be interpreted in the broadest possible
28 sense and includes, without limitation, all written, recorded, printed, typed,

922038_1

- 4 -         3:10-cv-0940-GPC(WVG)

1  transcribed, filmed, digitized or graphic matter and all other tangible things and media
2  upon which any handwriting, typing, printing, drawing, representation, electrostatic or
3  other copy, sound or video recording, magnetic or electrical impulse, visual
4  reproduction or communication is recorded, reproduced or represented, including each
5  and any book, record, correspondence, report, memoranda, electronic mail ("email"),
6  contract, table, tabulation, graph, chart, diagram, plan, schedule, appointment book,
7  calendar, diary, time sheet, report, study, analysis, draft, telegram, teletype or telecopy
8  message, file, telephone log, telephone message, check, microfilm, microfiche,
9  picture, photographs, printout, electronic data compilation, tape, diskette, drive,
10  removable media, note, minutes or transcript of proceedings, including, but not
11  limited to, minutes of meetings, or other communications of any type, including
12  interoffice communications, questionnaires, surveys, charges, newspapers, booklets,
13  circulars, work papers, bulletins, notices, instructions, resolutions, reports, records,
14  papers, bills or invoices, books of account, financial statements, working papers,
15  deeds, loan agreements, notes, ledgers, security agreements, financing statements, tax
16  returns, checks, receipts, journals, and data of every description and shall include each
17  and any original produced or reproduced by any method, all non-identical copies
18  (whether different from the original because of notes made in or attached to such
19  copy, or otherwise), all other data compilations from which information can be
20  obtained (translated, if necessary, into usable form), and any preliminary versions,
21  drafts or revisions of any of the foregoing.

22      5.    "Trump University" means Trump University, LLC, a/k/a Trump
23  Entrepreneur Initiative, any current and former predecessors, successors, agents,
24  employees, officers, directors, independent contractors, attorneys, accountants, or
25  representatives or other persons occupying similar positions or performing similar
26  functions.

27

28

Exhibit 4                                          000035

**IV.   RELEVANT TIME PERIOD**

Unless otherwise stated, these requests seek information concerning the period of time from April 30, 2006 to the present.

**V.   DOCUMENT REQUESTS**

REQUEST FOR PRODUCTION NO. 67:

All documents provided to the New York Attorney General ("NYAG") in response to the Subpoena Duces Tecum attached hereto as Attachment 1.

REQUEST FOR PRODUCTION NO. 68:

All documents provided to, or received from, the NYAG (directly or by a third party on behalf of the NYAG) relating to the New York Supreme Court Index No. 451463/2013.

REQUEST FOR PRODUCTION NO. 69:

All documents that concern or reference any video relating to Trump University in which Donald Trump appears (or a link to such video), including but not limited to, emails, correspondence, advertisements, promotional materials, registration notices, website pages, YouTube videos, social media, recordings, and or transcriptions of events.

REQUEST FOR PRODUCTION NO. 70:

All drafts, versions, and revisions of the website www.98percentapproval.com, including all communications regarding same.

DATED: March 6, 2014

ROBBINS GELLER RUDMAN
& DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN
THOMAS R. MERRICK

Rachel L. Jensen

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

| | |
|---|---|
| 1 | |
| 2 | ZELDES HAEGGQUIST & ECK, LLP |
| | AMBER L. ECK |
| 3 | HELEN I. ZELDES |
| | ALREEN HAEGGQUIST |
| 4 | AARON M. OLSEN |
| | 625 Broadway, Suite 1000 |
| 5 | San Diego, CA  92101 |
| | Telephone:  619/342-8000 |
| 6 | 619/342-7878 (fax) |
| 7 | Class Counsel |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

1  <u>DECLARATION OF SERVICE</u>

2  I, the undersigned, declare:

3  1.  That declarant is and was, at all times herein mentioned, a citizen of the

4  United States and a resident of the County of San Diego, over the age of 18 years, and

5  not a party to or interested party in the within action; that declarant's business address

6  is 655 West Broadway, Suite 1900, San Diego, California 92101.

7  2.  That on March 6, 2014, declarant served PLAINTIFFS' SEVENTH SET

8  OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

9  TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP via email to the parties

10  listed below:

11  Counsel for Defendants:

12  David K. Schneider (dks@yslaw.com)
    Yunker & Schneider
13  655 W. Broadway, Suite 1400
    San Diego. CA 92101
14
    Jill A. Martin (jmartin@trumpnational.com)
15  c/o Trump National Golf Club Los Angeles
    One Trump National Drive
16  Rancho Palos Verdes. CA 90275

17  Class Counsel:

18  Amber L. Eck (ambere@zhlaw.com)
    Helen I. Zeldes (helenz@zhlaw.com)
19  Alreen Haeggquist (alreenh@zhlaw.com)
    Aaron M. Olsen (aarono@zhlaw.com)
20  Zeldes, Haeggquist & Eck LLP
    625 Broadway, Suite 1000
21  San Diego, CA 92101

22
    I declare under penalty of perjury that the foregoing is true and correct.
23
    Executed on March 6, 2014, at San Diego, California.
24

25
                                    s/ Melissa A. Bacci
26                                  MELISSA A. BACCI

27

28

922038_1

-1-                    3:10-cv-0940-GPC(WVG)

Exhibit 4                    000038

# ATTACHMENT 1

Exhibit 4

000039

STATEMENT OF SERVICE BY MAIL AND
ACKNOWLEDGMENT OF RECEIPT BY MAIL OF
SUBPOENA DUCES TECUM TO

A.   **Statement of Service by Mail**

To:  **Trump Entrepreneur Initiative**
     **Attn: Donald Trump, CEO**
     **40 Wall Street., 32nd Floor**
     **New York, NY 10005-1304**

The enclosed subpoena duces tecum is served pursuant to sections 312-a and 2303 of the New York Civil Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and complete the acknowledgment part of this form and mail or deliver one copy of the completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay expenses incurred in serving the subpoena duces tecum in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

If you have received a complaint or petition with this statement, the return of this statement and acknowledgment does not relieve you of the necessity to answer the complaint or petition. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult with an attorney, you should do so as soon as possible before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgment.

CONFIDENTIAL - ATTORNEYS ONLY

TU 61503

Exhibit 4

000040

B.    Acknowledgment of Receipt of Subpoena Duces Tecum

I received a Subpoena Duces Tecum to Trump Entrepreneur Initiative at

_____

(address)

PLEASE CHECK ONE OF THE FOLLOWING:
IF 2 IS CHECKED, COMPLETE AS INDICATED:

1. /__ / I am not in military service

2. /__ / I am in military service, and my rank, serial number and branch of service are as follows:

Rank: _____.

Serial number: _____

Branch of service: _____

TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

Date: _____
(Date this acknowledgment is executed)

I affirm the above as true under penalty of perjury.

_____
Signature

_____
Print name

_____
Name of Subpoenaed Entity for which acting

_____
Position with Subpoenaed Entity for which
acting (i.e., officer, attorney, etc.)

**PLEASE COMPLETE ALL BLANKS INCLUDING DATES**

CONFIDENTIAL - ATTORNEYS ONLY

TU 61504

Exhibit 4                                    000041

## SUBPOENA DUCES TECUM
## THE PEOPLE OF THE STATE OF NEW YORK

**TO: Trump Entrepreneur Initiative**
    **Attn: Donald Trump, CEO**
    **40 Wall Street., 32ⁿᵈ Floor**
    **New York, NY 10005-1304**

**WE HEREBY COMMAND YOU,** Trump Entrepreneur Initiative, pursuant to Executive Law § 63(12) and General Business Law § 349, that, all business and excuses being laid aside, you deliver and turn over to **ERIC T. SCHNEIDERMAN,** Attorney General of the State of New York, or a designated Assistant Attorney General, on the 31st day of May, 2011, at 10 a.m., or any agreed upon adjourned date or time, at the Office of the Attorney General, 120 Broadway, 3rd Floor, New York, New York 10271, all documents requested in the attached Schedule in accordance with the instructions and definitions contained therein. Your response to this Subpoena, including the requested documents, may be submitted by mail provided the documents are received on or before the return date of May 31, 2011, or any agreed upon adjourned date and time.

**PLEASE TAKE NOTICE** that the Attorney General deems the documents requested by this subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest into whether Trump Entrepreneur Initiative or any of its employees, agents, directors, officers, representatives, partners, parent companies, affiliates, subsidiaries, attorneys, accountants, predecessors, successors and all other persons or entities acting on its behalf or under its control have violated Executive Law § 63(12), General Business Law § 349, or other relevant statutes.

**PLEASE TAKE FURTHER NOTICE** that failure to deliver the documents and information requested on the attached Schedule on or before the date, time and at the place stated above, or on any agreed upon adjourned date or time, may subject you to penalties and any other lawful punishment.

**WITNESS,** Honorable **ERIC T. SCHNEIDERMAN,** Attorney General of the State of New York, this 17ᵗʰ day of May, 2011.

By: _____

Melvin L. Goldberg
Assistant Attorney General
Bureau of Consumer Frauds and
Protection
(212) 416-8296

_____

Jane M. Azia
Bureau Chief
Bureau of Consumer Frauds and
Protection

CONFIDENTIAL - ATTORNEYS ONLY

TU 61505

Exhibit 4

000042

Office of the New York State Attorney General

### A. Definitions and Instructions

1.    "You" and "Your" means The Trump Entrepreneur Initiative, The Trump University, The Trump Institute (collectively referred to herein as "Trump") and any of its present or former parents, subsidiaries, directors, officers, partners, principals, owners, supervisors, employees, agents, representatives, attorneys or other persons acting on its behalf, its respective predecessors or successors or any of the affiliates of the foregoing.

2.    "Document(s)" is used herein in the broadest sense of the term and means each and every writing of whatever nature, whether an original, a draft, or a copy, however produced or reproduced, and each and every tangible thing from which information can be processed or transcribed, such as tape or other electronic data communications. The term includes, but is not limited to, letters, e-mails, voicemail, memoranda, notes, meeting reports, instructions, reports, analyses, press releases, certificates, telegrams, facsimiles, diaries, calendars, studies, logs, maps, journals, books, notebooks, plans, records, forms, charts, graphs, audio, visual and digital recordings, photographs (positive prints and negatives), slides, work-sheets, customer checks, credit card charge slips, expense reports, computation sheets, computer printouts and programs, tapes, videotapes, diskettes and CD-ROMs, microfilm, microfiche, any marginal comments appearing on any document, and copies of documents which are not identical duplications of the originals (*e.g.*, because handwritten or "blind" copy notes appear thereon or are attached thereto). A draft or non-identical copy is a separate document within the meaning of this term.

3.    The following rules of construction shall apply to all requests for production of documents:

(a) "Concerning" or "relating to" means referring to, relating to, concerning, describing, evidencing or constituting .

(b) The term "any" should be construed as "any and all."

(c) The connectives "and" and "or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses and production of Documents that might otherwise be construed to be outside of its scope.

(d) The term "each" shall be construed to include "every" and the term "every" shall be construed to include "each."

(e) The use of the singular form of any word includes the plural and vice versa.

(f) The present tense shall be construed to be the past tense and the past tense shall be construed to be the present tense.

2

CONFIDENTIAL - ATTORNEYS ONLY

TU 61506

Exhibit 4                                          000043

4.    Each page produced should be marked in the lower right corner with a two or three letter abbreviation of the producing entity's name, followed by an identifying consecutive document control number. All documents that are physically attached to each other in the files should be left so attached.

5.    Each Document should be produced in its original file folder, file jacket or cover (you may, in the alternative, designate in writing the titles of such folder, jacket or cover with respect to each such document) along with the identity of the individual from whose files the document is being produced or, if it is not in an individual's file, the department or area where the document was retained. In the event there is a titled folder that contains no Document, a copy of said empty folder showing its title should be provided.

6.    You should identify the number of the request to which the Documents purport to be responsive and set forth in full each request being submitted herein, immediately preceding each response. If there are no Documents responsive to any particular request, you should so state in writing.

7.    If any Document requested herein was formerly in your possession, custody or control and has been lost or destroyed, you should submit a written statement that: (a) describes in detail the nature of the Document and its contents; (b) identifies the person who prepared the Document and its contents; (c) identifies all persons who have seen or had possession of the Document; (d) specifies the dates on which the Document was prepared, transmitted or received; (e) specifies the date on which the Document was lost or destroyed, the conditions of and reasons for such destruction and the persons requesting and performing the destruction; and (f) identifies all persons with knowledge of any portion of the contents of the Document.

8.    The obligation to produce pursuant to this Subpoena is a continuing one. Documents located at any time after a response is due should be promptly produced at the place specified in the Document request.

9.    If any Document requested is withheld on ground of privilege or other legal doctrine, then you should submit, with the Documents produced, a statement in writing under oath, stating: (a) the type of the Document; (b) the date of the Document; (c) the author and recipient of the Document; (d) the general subject matter of the Document; and (e) the legal ground for withholding the Document.

10.    You should identify the persons responsible for preparing the response to this Subpoena and submit a copy of all instructions prepared by you relating to the steps taken to respond to this Subpoena. Where oral instructions were given, you should provide a written statement under oath from the person who gave such instructions, detailing the content of the instructions and the person(s) to whom the instructions were given. Identify each person who supplied any information given in answer to or relied upon in preparing the responses and identify each person to whom the information is a matter of personal knowledge.

3

CONFIDENTIAL - ATTORNEYS ONLY

TU 61507

Exhibit 4                                            000044

11.    In order for your response to this Subpoena to be complete, the attached statement under oath entitled "Verification" must be completed and executed by you and submitted with the responsive Documents.

12.    Unless otherwise specified, this Subpoena applies to all Documents in effect, created, recorded, compiled, transmitted or received since May 17, 2005.

### B. Format in Which Documents Should Be Produced

1.    Unless otherwise specified and agreed to by Office of Attorney General staff, responsive documents shall be produced in hard copy (paper format) and in electronic, native file format and also converted into Concordance load files in accordance with these instructions:

(a) The Concordance load file shall contain a hyperlink field that points to each produced native file.

(b) The Concordance load file shall also include all extracted metadata and bibliographical data in text delimited format (.DAT file).

(c) The .DAT file must include field headers. Note: Once metadata fields have been established, the field names and field order should be maintained throughout the course of production, unless they are being changed to solve a problem.

(d) The production must include searchable text for each document. The searchable text shall be extracted directly from the electronic document when an electronic document is available or OCRd when the document(s) exists only in paper form.

(e) The text shall be produced as either the last field in the concordance .DAT file or as separate document based text (.TXT) files.

(f) If the searchable text is being produced as .TXT files, it shall be named based on its associated document bates number.

(g) The production shall include single page, Tagged Imaged File Format (TIFF, black and white, Fax IV compressed, 300x 300dpi) image files. The image files shall be bates stamped, and the files shall be named based on their associated bates stamp.

(h) The production shall also include an Opticon (.opt) image base file. This file shall have one record for each image file. The image base shall be produced in sequential order with appropriate document break information.

(i) Unless otherwise indicated, documents are to be produced on computer CD/DVD media.

4

CONFIDENTIAL - ATTORNEYS ONLY

TU 61508

Exhibit 4                                                                    000045

(j) The production shall provide, as metadata fields, parent child relationships for all compound documents (emails, zip files, etc.).

(k) When a document cannot be converted to a static Concordance production the Native file must be provided and a link to that native file must be provided in the Concordance.DAT file.

Questions regarding electronic production should be directed to any of the Assistant Attorneys General whose telephone number appears on the subpoena. He or she will arrange for communication with the appropriate in-house technical expert.

2.      Each cover letter accompanying a production shall include an index that provides: (1) a description of the types of Documents, their contents and the corresponding Document control number(s); and (2) the Subpoena request(s) to which the Documents are responsive.

### C. Schedule

1.      Documents sufficient to describe the organizational structure of Trump, including but not limited to an organizational chart.

2.      Documents sufficient to describe the ownership interests of all individuals, corporations, partnerships or other legal entities currently or at any time since May 16, 2005 owning 5% or more of Trump.

3.      All Documents related to any change in ownership or control of Trump or any entity it acquired, including but not limited to communications with any accrediting agency or governmental regulatory agency regarding any change in ownership or control of Trump or any entity it acquired.

4.      Documents sufficient to show the contractual relationship with all licensees, affiliates, subsidiaries, sponsors, partnerships, corporations, or any other individual or legal entity or with whom you do or did business.

5.      A copy of each advertisement that was used to promote or otherwise relating to Trump, including but not limited to:

(a) A full-sized copy of each print advertisement;

(b) A DVD format copy of each television advertisement;

(c) A standard audio recording of each radio advertisement and audio portion of each internet advertisement;

(d) A copy of each direct mail advertisement, brochure, or other written promotional materials disseminated to the public;

5

CONFIDENTIAL - ATTORNEYS ONLY

TU 61509

Exhibit 4

000046

(e) A printout or screenshot of a copy of each advertisement, information, or communication used by Trump or used on behalf of Trump relating to Trump and provided via the internet, email, Facebook, Twitter, YouTube, Flickr, or other electronic communications system; and

(f) A copy of each point of sale promotional material used by Trump.

6.      A copy of each script, Frequently Asked Questions (FAQ), Q & A or other guidance Document that was created, used or instructed to be used by enrollment counselors, financial aid counselors, and instructors or presenters of seminars, workshops or mentoring programs of Trump or on its behalf in their communications with prospective students.

7.      All Documents relating to the training, instruction, shadowing or mentoring of admissions advisors, enrollment counselors, financial aid counselors, instructors or presenters of seminars, workshops or mentoring programs of Trump, and their supervisors and managers or its agents, or of their independent contractors, including but not limited to:

(a) Materials reflecting changes or proposed changes in training, instruction, shadowing or mentoring;

(b) Slide presentations, power points or videos;

(c) Written or printed notes from or video or audio recordings of seminars or conferences;

(d) Performance evaluations;

(e) Strategic planning Documents;

(f) Financial analyses; and

(g) Communications with the public and securities analysts.

8.      Documents sufficient to show all materials created, used or intended for use in your seminars, workshops or mentoring programs, including but not limited to:

(a) All course curricula and courses offered;

(b) Slide presentations, power points or videos;

(c) Worksheets;

(d) Testimonials;

6

CONFIDENTIAL - ATTORNEYS ONLY

TU 61510

Exhibit 4                    000047

(e) Scripts or talking points for instructors or presenters;

(f) Transcripts; and

(g) Contracts.

9.     All Documents relating to Trump's evaluation or review of the impact, success or effectiveness of each Document referenced in Demand Nos. 5 – 8, including but not limited to Documents discussing or referring in any way to:

(a) The effects of advertising campaigns or communications with students at seminars, workshops, training sessions, and mentoring sessions;

(b) Focus groups;

(c) Copy tests;

(d) Consumer perception;

(e) Market research;

(f) Consumer research; and

(g) Other study or survey or the reactions, perceptions, beliefs, attitudes, wishes, needs, or understandings of students relating to those Documents.

10.     All Documents relating to Trump's policies, procedures, or practices relating to marketing, advertising, soliciting, promoting, enrolling and communicating with prospective and current students.

11.     All Documents relating to contracts with all entities that have been responsible, in whole or in part, for developing, placing or evaluating any Documents referenced in Demand Nos. 5 - 10.

12.     Documents sufficient to identify all your current and former employees, agents or independent contractors that have or had direct or indirect responsibilities relating to marketing to, enrolling, providing financial counseling to, training, instructing or mentoring students, including but not limited to for each such employee, agent or independent contractor, any employment or similar contract and such other Documents that indicate:

(a) His or her title and a description of his or her responsibilities;

(b) His or her qualifications and experience;

(c) The period of his or her employment or affiliation with Trump;

7

CONFIDENTIAL - ATTORNEYS ONLY

TU 61511

Exhibit 4                                                    000048

(d) Performance evaluations;

(e) Salary history;

(f) Any bonuses, prizes or other things of value of any kind given to him or her and the reason for such bonuses, prizes or other things of value;

(g) Any reductions in salary and the reason for such reduction;

(h) Any free or reduced tuition at Trump given to him or her, and whether the value of that free or reduced tuition was ever increased or decreased and if so, the reason for the increase or decrease; and

(i) His or her last known address, email address and telephone number.

13.     All Documents relating to Trump's evaluations or review of the effectiveness of its enrollment counselors, financial aid counselors, seminar and workshop instructors or trainers, and mentors.

14.     All Documents relating to each student who has enrolled at Trump, including but not limited to, for each student:

(a) The student's current name and name at the time of enrollment, if different, and the current address, email address and phone number;

(b) The seminar(s), workshop(s) or training session(s) taken;

(c) The period of time during which the student was enrolled in each such seminar, workshop or training session;

(d) The name of the admission advisor, enrollment or financial aid counselors, instructor or presenter that were responsible for the student's enrollment;

(e) The cost to the student for each such seminar, workshop or training sessions;

(f) The grants, scholarships, or loans awarded to or taken out by the student or his or her parents for each such seminar, workshop or training session;

(g) The amounts billed to the student for each such seminar, workshop or training session;

(h) The degree or certificate earned for each such seminar, workshop or training session;

8

CONFIDENTIAL - ATTORNEYS ONLY

TU 61512

Exhibit 4                                                                           000049

(i) Whether the student withdrew from the seminar, workshop or training session before being awarded a degree or certificate, and if so, when;

(j) The current status of any loan for each such seminar, workshop or training session and whether such loan is current, has been written off, is in default, in arrears, in deferment or is in collection; and

(k) Any evidence that such person financially benefitted from your program.

15.    All Documents relating to complaints submitted by students to the Better Business Bureau, or to a federal, state or local regulatory agency or governmental body, including but not limited to Trump's response to the complaints.

16.    All Documents relating to any investigations of or legal actions taken against Trump by any federal, state or local regulatory agency or governmental body, including but not limited to all communications between Trump and those agencies or governmental bodies.

17.    Documents sufficient to identify: a) each lawsuit filed by a student against Trump in which it was named as a party; and b) each document filed in each such lawsuit, including but not limited to, all complaints, answers, cross-claims, third-party complaints, substantive pleadings, discovery demands and motions, motions to dismiss, motions for summary judgment, and supporting affidavits, together with responses, and all settlement agreements, decisions, court orders or final judgments.

18.    Documents sufficient to identify: a) each lawsuit filed by a current or discharged employee, independent contractor, agent, licensee, or any other individual or entity that did business with Trump in which it was named as a party; and b) each document filed in each such lawsuit, including but not limited to, all complaints, answers, cross-claims, third-party complaints, substantive pleadings, discovery demands and motions, motions to dismiss, motions for summary judgment, and supporting affidavits, together with responses, and all settlement agreements, decisions, court orders or final judgments.

19.    Documents sufficient to show any and all professional licenses and registrations held by you (or relied upon by you), your agents, your independent contractors, or your employees.

20.    Documents sufficient to show licenses, registrations or approvals under any department or agency of New York State or other state.

21.    Documents sufficient to show that Trump obtained any waivers of or is exempt from the requirements of Article 101 of the New York State Education Law or the basis for Trump's conclusion that no waiver was required.

9

CONFIDENTIAL - ATTORNEYS ONLY

TU 61513

Exhibit 4

000050

## Verification

This response to the Subpoena of the Attorney General of the State of New York dated _____, 2011, including without limitation production of the requested documents, was prepared and assembled under my personal supervision from the records of the Trump Entrepreneur Initiative in accordance with the instructions and definitions set forth in such Subpoena and is complete and correct to the best of my knowledge and belief. The documents produced in response to this Subpoena are authentic, genuine and what they purport to be.

_____
(Signature of Official)

_____
(Printed Name and Title)

Subscribed and sworn to before me this _____ day of _____, 2011.


_____
Notary Public

10

CONFIDENTIAL - ATTORNEYS ONLY

TU 61514

Exhibit 4                                    000051

STATEMENT OF SERVICE BY MAIL AND
ACKNOWLEDGMENT OF RECEIPT BY MAIL OF
SUBPOENA DUCES TECUM TO

**A.   Statement of Service by Mail**

**To:  Trump Entrepreneur Initiative**
**Attn: Donald Trump, CEO**
**40 Wall Street., 32nd Floor**
**New York, NY 10005-1304**

The enclosed subpoena duces tecum is served pursuant to sections 312-a and 2303 of the New York Civil Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and complete the acknowledgment part of this form and mail or deliver one copy of the completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay expenses incurred in serving the subpoena duces tecum in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

If you have received a complaint or petition with this statement, the return of this statement and acknowledgment does not relieve you of the necessity to answer the complaint or petition. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult with an attorney, you should do so as soon as possible before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgment.

CONFIDENTIAL - ATTORNEYS ONLY

TU 61515

Exhibit 4

000052

B.   Acknowledgment of Receipt of Subpoena Duces Tecum

I received a Subpoena Duces Tecum to Trump Entrepreneur Initiative at

_____

(address)

PLEASE CHECK ONE OF THE FOLLOWING:
IF 2 IS CHECKED, COMPLETE AS INDICATED:

1. /___ / I am not in military service.

2. /___ / I am in military service, and my rank, serial number and branch of service are as
follows:

Rank: _____

Serial number: _____

Branch of service: _____

TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

Date: _____
(Date this acknowledgment is executed)

I affirm the above as true under penalty of perjury.

_____
Signature

_____
Print name

_____
Name of Subpoenaed Entity for which acting

_____
Position with Subpoenaed Entity for which
acting (i.e., officer, attorney, etc.)

**PLEASE COMPLETE ALL BLANKS INCLUDING DATES**

CONFIDENTIAL - ATTORNEYS ONLY

TU 61516

Exhibit 4                                                                          000053

1  ROBBINS GELLER RUDMAN
   &amp; DOWD LLP
2  JASON A. FORGE (181542)
   jforge@rgrdlaw.com
3  RACHEL L. JENSEN (211456)
   rjensen@rgrdlaw.com
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone:  619/231-1058
   619/231-7423 (fax)
6
   ZELDES HAEGGQUIST &amp; ECK, LLP
7  AMBER L. ECK (177882)
   ambere@zhlaw.com
8  HELEN I. ZELDES (220051)
   helenz@zhlaw.com
9  ALREEN HAEGGQUIST (221858)
   alreenh@zhlaw.com
10 AARON M. OLSEN (259923)
   aarono@zhlaw.com
11 625 Broadway, Suite 1000
   San Diego, CA  92101
12 Telephone:  619/342-8000
   619/342-7878 (fax)
13
   Class Counsel
14
   [Additional counsel appear on signature page.]
15
                UNITED STATES DISTRICT COURT
16
              SOUTHERN DISTRICT OF CALIFORNIA
17 TARLA MAKAEFF, et al., on Behalf of )  No. 3:10-cv-0940-GPC(WVG)
   Themselves and All Others Similarly  )
18 Situated,                            )  CLASS ACTION
                                        )
19                         Plaintiffs,  )  PLAINTIFFS' EIGHTH SET OF
                                        )  REQUESTS FOR PRODUCTION OF
20         vs.                          )  DOCUMENTS TO DEFENDANTS
                                        )  TRUMP UNIVERSITY, LLC AND
21 TRUMP UNIVERSITY, LLC, et al.,       )  DONALD J. TRUMP
                                        )
22                         Defendants.  )
   _____)
23

24 PROPOUNDING PARTY:    PLAINTIFFS JOHN BROWN, J.R. EVERETT,
                         BRANDON KELLER, SONNY LOW, TARLA
25                       MAKAEFF, AND ED OBERKROM

26 RESPONDING PARTY:     DEFENDANTS TRUMP UNIVERSITY, LLC
                         AND DONALD J. TRUMP
27
   SET NUMBER:           EIGHT
28

978543_1

Exhibit 5                                                    000054

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

     Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Rules of this Court, plaintiffs John Brown, J.R. Everett, Brandon Keller, Sonny Low, Tarla Makaeff, and Ed Oberkrom (collectively, "plaintiffs") request that defendants Trump University, LLC and Donald J. Trump (collectively, "Trump" or "defendants") produce for inspection and copying the documents described below.  These documents are to be produced within 30 days from the date of service of this request to the law office of Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, California 92101.  These requests are continuing under Fed. R. Civ. P. 34 and all your answers must thus be supplemented in accordance with Fed. R. Civ. P. 26(e).

**I.    INSTRUCTIONS**

     1.    In responding to these requests, you shall furnish all responsive documents within your possession, custody and control pursuant to Fed. R. Civ. P. 34.

     2.    You are under a duty to supplement or correct your responses on an ongoing basis pursuant to Fed. R. Civ. P. 26(e).

     3.    In producing documents, you are requested to produce the original of each document together with all non-identical copies and drafts of that document.  If the original of any document cannot be located, a copy shall be provided in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

     4.    Documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in the request.  All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained.  All documents shall be produced intact in their original files, without disturbing the organization of documents employed during the conduct of the ordinary course of business.

     5.    Electronically stored information ("ESI") must be produced in their native format, including all metadata.

Exhibit 5

000055

6.  Each request should be responded to separately; however, a document which is responsive to more than one request may, if the relevant portion is so marked or indexed, be produced and referred to in the later response.

7.  Each document requested shall be produced in its entirety and without deletion or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests.  If you have redacted any portion of a document based upon attorney-client privilege or work-product doctrine, stamp the word "REDACTED" on each page of the document which you have redacted.

8.  If any document responsive to these requests is not produced in full or is redacted on the grounds that it is privileged or otherwise claimed to be protected against production, you are requested to provide the following information with respect to each such document or redaction:

(a)  the date such document redaction was prepared;

(b)  the document's author, signatory and every other person who prepared or participated in its preparation, and their affiliation at that time (*e.g.*, in-house attorney, executive, third party);

(c)  the type of document (*e.g.*, letter, chart, memorandum, etc.) and its page length;

(d)  a description of the document's subject matter and purpose that is sufficient to challenge the purported privilege;

(e)  a list of those persons and entities to whom the document was disseminated, together with their affiliation (*e.g.*, in-house attorney, executive, third party);

(f)  each and every person having possession, custody or control of the document and all copies thereof; and

(g)  the nature of the privilege or other rule of law relied upon and any facts supporting your position in withholding production of each document.

9.     In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by Trump or their employees, sales agents, managers, affiliates, contractors, investigators, or attorneys (or their agents, employees, representatives or investigators).

10.     If an otherwise responsive document was, but is no longer in existence or in your possession, custody or control, identify its current or last known custodian and describe in full the circumstances surrounding its disposition from your possession or control. All documents shall be deemed to be in your control if you have the right to secure the document or copy thereof from another person or private entity having possession or custody thereof.

11.     If any documents requested herein have been altered, lost, discarded or destroyed, they shall be identified as completely as possible and shall include the following information:

      (a)     the date of alteration or disposal;

      (b)     the manner of alteration or disposal;

      (c)     the reason for alteration or disposal;

      (d)     the person authorizing alteration or disposal; and

      (e)     the person altering or disposing of the document or documents in question.

## II.     RULES OF CONSTRUCTION

1.     These requests shall be construed to be consistent with the prior Orders of this Court relating to the conduct of the discovery in this action.

2.     The term "all" means any and all, and the word "any" means any and all.

3.     The term "including," means "including, but not limited to."

1       4.    The terms "and" and "or" shall be construed either conjunctively or

2   disjunctively as necessary to bring within the scope of the request all responses that

3   might otherwise be construed to be outside of its scope.

4       5.    The use of the singular form of any word includes the plural and vice

5   versa.

6       6.    The use of any tense of any verb shall also include within its meaning all

7   other tenses of that verb.

8   **III.   DEFINITIONS**

9       The following definitions shall apply to each of the requests for documents set

10   forth below and are deemed to be incorporated in each of the requests:

11       1.    "You" and "your" shall mean Trump University and/or Donald J. Trump,

12   including any of their employees, parents, subsidiaries, affiliates, officers, companies,

13   independent contractors, attorneys, accountants, or representatives or other persons

14   occupying similar positions or performing similar functions.

15       2.    "All documents" shall mean every document within the custody,

16   possession or control of you, your national, regional and local offices, and any of your

17   attorneys, representatives, employees and/or agents, whether an original or copy, as

18   defined above, known to you, and every such document or writing which you can

19   locate or discover through reasonably diligent efforts.

20       3.    "Concern," "consisting of," "reflecting," or "relating to" shall mean

21   documents which explicitly or implicitly, in whole or in part, compare, were received

22   in conjunction with, or were generated as a result of the subject matter of the request,

23   including all documents which refer, reflect, record, specify, memorialize, mention,

24   discuss, describe, consider, concern, relate to, constitute, embody, evaluate, analyze,

25   review, report on, comment on, impinge upon, or impact the subject matter of the

26   request.

27       4.    "Document" or "documents" shall be interpreted in the broadest possible

28   sense and includes, without limitation, all written, recorded, printed, typed,

1  transcribed, filmed, digitized or graphic matter and all other tangible things and media

2  upon which any handwriting, typing, printing, drawing, representation, electrostatic or

3  other copy, sound or video recording, magnetic or electrical impulse, visual

4  reproduction or communication is recorded, reproduced or represented, including each

5  and any book, record, correspondence, report, memoranda, electronic mail ("email"),

6  contract, table, tabulation, graph, chart, diagram, plan, schedule, appointment book,

7  calendar, diary, time sheet, report, study, analysis, draft, telegram, teletype or telecopy

8  message, file, telephone log, telephone message, check, microfilm, microfiche,

9  picture, photographs, printout, electronic data compilation, tape, diskette, drive,

10  removable media, note, minutes or transcript of proceedings, including, but not

11  limited to, minutes of meetings, or other communications of any type, including

12  interoffice communications, questionnaires, surveys, charges, newspapers, booklets,

13  circulars, work papers, bulletins, notices, instructions, resolutions, reports, records,

14  papers, bills or invoices, books of account, financial statements, working papers,

15  deeds, loan agreements, notes, ledgers, security agreements, financing statements, tax

16  returns, checks, receipts, journals, and data of every description and shall include each

17  and any original produced or reproduced by any method, all non-identical copies

18  (whether different from the original because of notes made in or attached to such

19  copy, or otherwise), all other data compilations from which information can be

20  obtained (translated, if necessary, into usable form), and any preliminary versions,

21  drafts or revisions of any of the foregoing.

22      5.    "Financial statements" includes, without limitation, the following,

23  whether audited or unaudited; whether draft, final, interim or pro forma; whether

24  complete or partial; and whether consolidated, consolidating or unconsolidated:

25  balance sheets; statements of financial position; income statements; statements of

26  earnings, revenues, expenses, profits and losses; statements of equity, additional paid-

27  in capital and retained earnings; cash flow statements and source of application of

28

Exhibit 5                              000059

1  funds; notes to each of such statements; and any and all other statements and notes
2  that relate Trump's past or present financial condition.

3      6.    "Trump University" means Trump University, LLC, a/k/a Trump
4  Entrepreneur Initiative, any current and former predecessors, successors, agents,
5  employees, officers, directors, independent contractors, attorneys, accountants, or
6  representatives or other persons occupying similar positions or performing similar
7  functions.

8  **IV.    RELEVANT TIME PERIOD**

9      Unless otherwise stated, these requests seek information concerning the period
10 of time from January 1, 2005 to the present (the "Relevant Time Period").

11 **V.    DOCUMENT REQUESTS**

12 REQUEST FOR PRODUCTION NO. 71:

13     All documents that support your responses to Plaintiffs' Third Set of Requests
14 for Admission, served concurrently herewith.

15 REQUEST FOR PRODUCTION NO. 72:

16     All documents that support the allegations of the Third Amended Class Action
17 Complaint (Dkt. No. 128).

18 REQUEST FOR PRODUCTION NO. 73:

19     All documents reflecting the age of any Trump University students, including
20 but not limited to, registration cards, Profiles, Goal Setting Sheets, and/or any
21 documents, analysis, reports or information that included information regarding the
22 age of Trump University's students whether via "overlay" of such data, or otherwise.

23
24
25
26
27
28

1 | <u>REQUEST FOR PRODUCTION NO. 74</u>:

2 |   All documents concerning Ed2Go, including but not limited to, draft or

3 | executed contracts with Ed2Go; communications with Ed2Go, and any and all links to

4 | Trump University contained on any Ed2Go partner websites, and any contacts to

5 | Trump University resulting from such links.

6 | DATED:  November 12, 2014

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN


RACHEL L. JENSEN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL J. PFEFFERBAUM
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

1                         <u>DECLARATION OF SERVICE</u>

2     I, the undersigned, declare:

3      1.     That declarant is and was, at all times herein mentioned, a citizen of the

4 United States and a resident of the County of San Diego, over the age of 18 years, and

5 not a party to or interested party in the within action; that declarant's business address

6 is 655 West Broadway, Suite 1900, San Diego, California 92101.

7      2.     That on November 12, 2014, declarant caused to be served

8 PLAINTIFFS' EIGHTH SET OF REQUESTS FOR PRODUCTION OF

9 DOCUMENTS TO DEFENDANTS TRUMP UNIVERSITY, LLC AND DONALD J.

10 TRUMP by hand delivery to the counsel as listed below:

11     Counsel for Defendants

12                Nancy L. Stagg
13                Benjamin J. Morris
                   FOLEY & LARDNER LLP
14                3579 Valley Centre Dr., Suite 300
                   San Diego, CA 92130-3302

15

16      3.     That on November 12, 2014 declarant served PLAINTIFFS' EIGHTH

SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
17

TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP via email to the parties
18

19 listed below:

                   Counsel for Defendants:
20
                   Jill A. Martin (jmartin@trumpnational.com)
21                c/o Trump National Golf Club Los Angeles
                   One Trump National Drive
22                Rancho Palos Verdes. CA 90275

23                Nancy L. Stagg
                   (nstagg@foley.com, smoreno@foley.com)
24                Benjamin J. Morris
                   (bmorris@foley.com; vgoldsmith@foley.com)
25                FOLEY & LARDNER LLP
                   3579 Valley Centre Dr., Suite 300
26                San Diego. CA 92130-3302

27

28

3:10-cv-0940-GPC(WVG)

Exhibit 5

1    Class Counsel:

2    Amber L. Eck (ambere@zhlaw.com;
     robyns@zhlaw.com; winkyc@zhlaw.com)
3    Aaron M. Olsen (aarono@zhlaw.com)
     ZELDES, HAEGGQUIST & ECK LLP
4    625 Broadway, Suite 1000
     San Diego. CA 92101
5
     I declare under penalty of perjury that the foregoing is true and correct.
6
     Executed on November 12, 2014, at San Diego, California.
7

8                              _____
                                          MELISSA BACCI
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 5                                    000063

```
        ** CONFIDENTIAL ** CONFIDENTIAL **
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
CASE NO.: 10 CV 0940 EIG (WVG)
-----------------------------------------x
TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM
and PATRICIA MURPHY, on Behalf of Themselves
and all others Similarly Situated,


                    Plaintiffs,

    -against-


TRUMP UNIVERSITY, LLC (AKA TRUMP
ENTREPRENEUR INITIATIVE) a New York
Limited Liability Company, DONALD J. TRUMP,
and DOES 1 through 50, inclusive,


                    Defendants.
-----------------------------------------x
                    August 22, 2012
                    9:57 a.m.



    VIDEOTAPED DEPOSITION of MICHAEL SEXTON,
30(b)(6) Witness in the above-captioned matter,
taken by Plaintiffs, held at 725 Fifth Avenue,
New York, New York, before Eileen Mulvenna,
CSR/RMR/CRR, Certified Shorthand Reporter,
Registered Merit Reporter, Certified Realtime
Reporter and Notary Public of the State of
New York.
```

www.aptusCR.com
Exhibit 6
000064

```
 1              SEXTON - CONFIDENTIAL
 2         Haeggquist, representing the plaintiffs.
 3              MR. SCHNEIDER:  David Schneider for
 4         Trump University and Donald Trump, the
 5         defendants.
 6              THE VIDEOGRAPHER:  Will the court
 7         reporter please swear in the witness.
 8    MICHAEL SEXTON,
 9           having been duly sworn by Eileen Mulvenna,
10           a Notary Public of the State of New York,
11           was examined and testified as follows:
12    EXAMINATION
13    BY MS. JENSEN:
14         Q.    Good morning, Mr. Sexton.
15         A.    Good morning.
16         Q.    I'm Rachel Jensen.  I'm here
17    representing the plaintiffs.
18              And if you would, before we get
19    started, could you just please state your name
20    and your full address for the record.
21         A.    Sure.  It's Michael Sexton.  And my
22    address is 31 Rye Road, that's in Rye, New York
23    10580.
24         Q.    Okay.  Perfect.
25              And, Mr. Sexton, what is your place
```

Michael Sexton                                    **Makaeff v. Trump University**

```
1                    SEXTON - CONFIDENTIAL
2    and date of birth?
3           A.      Washington, D.C.  July 26, 1966.
4           Q.      Have you ever been deposed before?
5           A.      I have.
6           Q.      Okay.  And how many times have you
7    been deposed before?
8           A.      Twice.
9           Q.      And could you tell me the occasions
10   that you've been deposed in the past?
11          A.      Certainly.  The first time was for a
12   traffic accident in 1992, give or take a couple
13   years.  And then the second was last month for --
14   with the Attorney General's Office here in
15   New York.
16          Q.      And what were the matters that were
17   covered by your deposition with the New York AG?
18          A.      A series of questions relating to
19   the operations of the company.
20          Q.      And what specifically?
21          A.      Very wide-ranging conversations
22   beginning with -- chronologically with the
23   formation of the company through examination of
24   the initial products, the initial mission, the
25   initial participants, the initial instructors,
```

**Michael Sexton**                                **Makaeff v. Trump University**

```
1                   SEXTON - CONFIDENTIAL
2     subject matter experts.  Fairly lengthy amount of
3     time spent on understanding e-learning and what
4     that was trying to accomplish.
5          Q.      I'm sorry, "e-learning"?
6          A.      E-learning.
7          Q.      Okay.
8          A.      All the way through an -- the
9     evolution of the start-up as we evolved and
10    changed products or added products and services
11    and -- you know, and the organization and
12    players, that sort of thing.
13         Q.      Is there anything else that you can
14    think of that you discussed with the -- at the
15    New York AG deposition?
16         A.      Examination of products.  Price
17    points, how those changed over time.  Different
18    sales channels, how those changed over time.  It
19    was quite lengthy, but I think that covers the
20    bulk of it.
21         Q.      Okay.  Thank you.
22                 And is there an action pending by
23    the New York AG?
24                 MR. SCHNEIDER:  Objection.
25    Foundation.
```

**Michael Sexton**                                    **Makaeff v. Trump University**

```
 1              SEXTON - CONFIDENTIAL
 2    BY MS. JENSEN:
 3         Q.      You can answer.
 4         A.      Not that I'm aware of.
 5         Q.      Do you know whether the New York AG
 6    intends to file an action?
 7                 MR. SCHNEIDER:  Objection.
 8    Speculation and foundation.
 9                 THE WITNESS:  Not that I'm aware of.
10    BY MS. JENSEN:
11         Q.      And the traffic accident, could you
12    briefly just tell me what the traffic accident
13    matter involved?
14         A.      It was snowing in Boston and I
15    couldn't stop in time.  And it was a
16    fender-bender.  And about a year later, I got a
17    notice that the individual was suing.  And the
18    insurance company sent a representative and we
19    did a brief deposition and it was resolved.
20         Q.      No one was killed or --
21         A.      No, no.
22         Q.      -- okay.  Nothing like that?  Okay.
23                 I just wanted to go over a couple of
24    ground rules with you before we get into the real
25    substance of the deposition.
```

**Michael Sexton**                                    **Makaeff v. Trump University**

```
 1                  SEXTON - CONFIDENTIAL
 2                  MR. SCHNEIDER:  I don't know
 3            offhand.
 4                  MS. JENSEN:  Okay.  We will reserve
 5            on this line of questioning.
 6                  (Discussion off the record.)
 7       BY MS. JENSEN:
 8            Q.     Have you personally been asked to --
 9       strike that.
10                   Have you been asked to search for
11       documents for this case?
12            A.     I was asked as part of the subpoena
13       to provide any documents I had.
14            Q.     I'm sorry, for which subpoena?
15            A.     To testify today.  If I understand
16       your question correctly.
17            Q.     Okay.  When -- when were you asked
18       to search for documents?
19            A.     When I received the copy of the
20       subpoena in the spring of 2012.
21            Q.     And by "subpoena," do you mean this
22       document that we're looking at?
23            A.     Yes, I do.
24            Q.     Do you see here any request for --
25       for your documents?
```

Page  32

**Michael Sexton**                                    **Makaeff v. Trump University**

1                  SEXTON - CONFIDENTIAL

2              **(Witness peruses the exhibit.)**

3         A.      No.  Perhaps I'm thinking of a

4    different document.

5         Q.      Okay.  **Was it a subpoena directed to**

6    **you for your deposition?**

7         A.      I believe so.  This was going back

8    months, yes.

9         Q.      Okay.  **It has been some months.**

10        A.      Yes, I apologize.

11        Q.      **That's okay.**

12        A.      I'm not referring to this document.

13        Q.      **That's fine.**

14              MR. SCHNEIDER:  Just for the record,

15    I don't think Mr. Sexton's ever been

16    subpoenaed in this matter.

17              MS. ECK:  There's a subpoena issued

18    on -- about May 15th, 2012.

19              MR. SCHNEIDER:  To Mr. Sexton?

20              MS. ECK:  Yes, or deposition notice.

21              MR. SCHNEIDER:  I think you served a

22    deposition notice.  I don't think he's ever

23    been subpoenaed with anything.  Have you

24    ever subpoenaed him?

25              MS. ECK:  I believe that he was one

**Michael Sexton**                                    **Makaeff v. Trump University**

```
1              SEXTON - CONFIDENTIAL
2         of the people that we served the deposition
3         notices on in May.  And there were certain
4         people that you indicated that you did not
5         represent and we would have to subpoena
6         individually.  And Mr. Sexton was not one
7         of them.
8              MR. SCHNEIDER:  All I'm saying right
9         now is you're talking about a subpoena.
10        And I don't think you've ever subpoenaed
11        Mr. Sexton; correct?
12             MS. ECK:  I just said that I believe
13        it was a deposition notice.
14             MR. SCHNEIDER:  I received a
15        deposition notice.
16             MS. ECK:  Did you forward that to
17        your client?
18             MR. SCHNEIDER:  I'm not going to
19        talk about what communications I've had
20        with my client.
21             MS. JENSEN:  I think what we'll do
22        is we'll get into the subpoena tomorrow or
23        the deposition notice tomorrow.  Is that
24        fair?
25
```

Page  34

**Michael Sexton**                                **Makaeff v. Trump University**

```
 1                    SEXTON - CONFIDENTIAL
 2      BY MS. JENSEN:
 3           Q.      Okay.  We can cover that ground
 4      tomorrow in terms of the subpoena.  But what I am
 5      interested in for today's purposes is I'd like to
 6      know what documents you were told to search for.
 7                   MR. SCHNEIDER:  Well, he's not going
 8           to talk about attorney-client
 9           communications.  So those would be
10           communications with counsel.
11      BY MS. JENSEN:
12           Q.      Let me ask it this way:  What types
13      of documents did you search for?
14           A.      It was a very broad definition.  Any
15      documents relating to or communications with the
16      company.
17           Q.      And did you search for documents?
18           A.      I did.
19           Q.      Where did you search for documents?
20           A.      In my home.
21           Q.      In your home files?
22           A.      Home office.
23           Q.      Did that include hard copy files?
24           A.      Yes, it did.
25           Q.      And did it also include a computer
```

www.aptusCR.com
Exhibit 6                                          000072

**Michael Sexton**                                    **Makaeff v. Trump University**

```
 1                SEXTON - CONFIDENTIAL
 2    at home?
 3          A.      Yes, it did.
 4          Q.      And did it also include a laptop?
 5          A.      Let me amend that.  My home computer
 6    is a laptop.
 7          Q.      Sure.  As many of ours are at this
 8    point.
 9                  Any tablets or other devices?
10          A.      No.
11          Q.      And do you recall what documents you
12    found?
13          A.      I found an employment agreement.
14          Q.      Any others?
15          A.      No.
16          Q.      Do you still have your e-mail
17    address from -- from Trump University?
18          A.      I do not.
19          Q.      Did you at the time?
20          A.      No.
21          Q.      Did you have access to those
22    e-mails?
23          A.      No.
24          Q.      Do you have an e-mail with The Trump
25    Organization?
```

Page  36

**Michael Sexton**                                    **Makaeff v. Trump University**

1                          SEXTON - CONFIDENTIAL
2              A.      I do not.
3              Q.      Did you direct anybody else to
4      search for documents?
5              A.      I did not.
6              Q.      Did you review anything else to
7      assist you for this deposition?
8              A.      I did not.
9              Q.      I understand that you looked at your
10     computer -- or laptop at home.  Did anybody ever
11     ask you for your laptop to search for relevant
12     documents?
13             A.      They did not.
14             Q.      Could you tell me in your words what
15     this case is about.
16             A.      I believe it's about Tarla Makaeff,
17     who is a former student, who is alleging that she
18     wasn't satisfied -- or didn't get what she paid
19     for and was dissatisfied with the relationship
20     with the company.  I think there are other
21     plaintiffs as well.
22             Q.      That was exactly the question I was
23     about to ask.
24                     Have you ever met Tarla Makaeff?
25             A.      I have.

www.aptusCR.com
Exhibit 6                                              000074

**Michael Sexton**                              **Makaeff v. Trump University**

```
 1              SEXTON - CONFIDENTIAL
 2         Q.      And when did you meet her?
 3         A.      It would have been the summer of
 4    2010, I believe.
 5         Q.      And what occasion did you meet her?
 6         A.      It was an event that we held in
 7    Marina del Rey, California.
 8         Q.      Do you remember the month?
 9         A.      It would have been June or July of
10    that year, I believe.
11         Q.      Did you speak to her?
12         A.      I did.
13         Q.      And what was your conversation
14    about?
15         A.      It was about her experience with the
16    company, specifically about her experience with
17    Troy Peterson.  And she introduced me to some
18    other students that she had met through the
19    process.
20         Q.      What did she say about her
21    experience?
22         A.      She said it was a very positive
23    experience.  She had very positive things to say
24    specifically about Troy Peterson and her work
25    with him.
```

Page  38

**Michael Sexton**                              **Makaeff v. Trump University**

```
 1                    SEXTON - CONFIDENTIAL
 2               Do I have the year wrong on that?
 3          Q.   I think you might.
 4          A.   Did I get it wrong?  This all goes
 5    back a while.  It could have been 2009.  Should
 6    be fairly easy to find out.
 7          Q.   Is -- is the fact of your meeting
 8    documented somewhere?
 9          A.   That I met with her?  In writing?
10    No.
11          Q.   Okay.
12          A.   I don't believe so.
13          Q.   I'm sorry, so when you said it was
14    easy to find, what did you mean exactly?
15          A.   I meant it would be easy to find
16    when we were at -- I imagine when we were in
17    Marina del Rey, just going back through the
18    records.  I specifically remember it was at the
19    Ritz Carlton, Marina del Rey.
20          Q.   That's fair.
21               Have you -- do you know who the
22    other plaintiffs are?
23          A.   I know their names.  I'm familiar
24    with one of them, one of their experiences, case
25    history.
```

**Michael Sexton**                                    **Makaeff v. Trump University**

```
1                    SEXTON - CONFIDENTIAL
2            Q.      And who was that?
3            A.      I don't recall at this time.  If you
4    told me the name, I would remember.
5            Q.      Let's see.  Does Brandon Keller --
6            A.      Yes.
7            Q.      What did you recall about Brandon?
8            A.      I recall that there was an issue
9    that was escalated to me through our standard
10   customer service process relating to that
11   individual.  And it was -- it was an assessment
12   that -- he was trying to purchase products that
13   weren't -- they didn't meet our suitability
14   guidelines.  We didn't feel it was appropriate.
15   And I know I had to approve canceling the order.
16           Q.      What were the circumstances under
17   which an issue would be escalated to you?
18           A.      So we had a normal customer service
19   process that handled any issues relating to
20   students.  And if there were exceptions, they
21   were typically handled by a customer service
22   manager.  And if there was something that was out
23   of the ordinary, that was exceptional, it would
24   be escalated either to David Highbloom or myself.
25           Q.      And by "exceptional," what do you
```

Page  40

Michael Sexton                                   **Makaeff v. Trump University**

1                        SEXTON - CONFIDENTIAL

2     mean exactly?

3            A.       We treated everything on a

4     case-by-case basis.  So this was a good example

5     of one where somebody wanted to purchase a

6     product, but we didn't feel it was right for him.

7     And you could see how -- we were concerned that

8     he would have a negative reaction to us telling

9     him that, and so that was very -- obviously that

10    was unusual.  The service team wanted to talk it

11    through, make sure it was appropriate, and that's

12    what we did.

13           Q.       And you referred to suitability

14    guidelines.  Is that something that was in -- in

15    writing?

16           A.       I believe it was.

17           Q.       Do you know whether that document

18    was produced in this case?

19           A.       I believe it was.

20           Q.       Do you know who -- who drafted or

21    created the suitability guidelines?

22           A.       It was part of training materials

23    that were created initially by -- I believe it

24    was David Highbloom and April Neumann.

25           Q.       So that might be something we could

```
 1                     SEXTON - CONFIDENTIAL
 2      going to strike that question because she's no
 3      longer a plaintiff.  It's not that relevant.
 4                     Also John Brown?
 5           A.    Yes, I was made aware of John Brown.
 6           Q.    And what about John Brown?
 7                 MR. SCHNEIDER:  Attorney-client
 8           privilege.
 9      BY MS. JENSEN:
10           Q.    All these questions, to the extent,
11      of course, you have any knowledge independent of
12      your communications with counsel.
13           A.    Understood.
14           Q.    I just want to make sure we
15      understand each other.
16                 J.R. Everett?
17                 MR. SCHNEIDER:  Same objection.
18      BY MS. JENSEN:
19           Q.    And Sonny Low?
20                 MR. SCHNEIDER:  Same objection.
21      BY MS. JENSEN:
22           Q.    Does Trump University have a
23      document retention policy?
24           A.    A formal document retention policy,
25      not that I recall.
```

Page  43

**Michael Sexton**                                              **Makaeff v. Trump University**

```
 1                 SEXTON - CONFIDENTIAL
 2          Q.      Informal?
 3          A.      Not that I recall.
 4          Q.      Did Trump University institute a
 5   litigation hold in this case once the action was
 6   filed?
 7                  MR. SCHNEIDER:  Objection.
 8          Foundation.
 9   BY MS. JENSEN:
10          Q.      You can answer.
11          A.      Yes.
12          Q.      Do you know when?
13          A.      When -- when we received the
14   document pertaining to the lawsuit.
15          Q.      Who implemented the litigation hold?
16          A.      I'm not sure I understand what
17   "implemented" means in this context.
18          Q.      Who ensured that documents were
19   being retained?
20          A.      Well, everybody was made aware to
21   retain everything from that point on, so it was
22   up to the individuals to -- to comply, if that
23   answer your question.
24          Q.      It does.
25                  Did -- did you send out an e-mail
```

Page  44

Michael Sexton                                    **Makaeff v. Trump University**

```
 1                  SEXTON - CONFIDENTIAL
 2     or -- strike that.
 3                  Who sent -- who communicated to the
 4     employees of Trump University that they needed to
 5     keep their documents?
 6          A.      As a management team, we discussed
 7     it.  Who specifically, it would have been either
 8     myself or probably maybe Steven Matejek, who
 9     dealt with much of the administrative roles of
10     the business.
11          Q.      Do you remember how that was
12     communicated?
13          A.      I don't.
14          Q.      Do you remember if it was an e-mail?
15          A.      I don't.
16          Q.      Do you remember -- do you recall to
17     whom it was sent?
18          A.      I don't.
19          Q.      So there was no mechanism for
20     enforcing the litigation hold?
21                  MR. SCHNEIDER:  Objection.
22          Foundation.
23                  THE WITNESS:  Not that I'm aware of.
24     BY MS. JENSEN:
25          Q.      Do the Trump U employees or former
```

Page  45

Michael Sexton                                          **Makaeff v. Trump University**

1               SEXTON - CONFIDENTIAL

2       employees -- did they keep their documents on

3       a -- on a mainframe computer system or --

4              A.     No.

5              Q.     -- did they keep them on personal

6       laptops?

7              A.     Personal laptops, although obviously

8       e-mails were stored on, I assume, an exchange

9       server somewhere.

10             Q.     The documents that were saved on

11      laptops wouldn't have been on the -- the server;

12      right?

13             A.     Not that I'm aware of.

14             Q.     Did all of the Trump University

15      employees have e-mail addresses?

16             A.     Yes, they did.

17             Q.     How about the independent

18      contractors?

19             A.     I believe they all did.

20                    You're referring to a Trump

21      University e-mail address?

22             Q.     Or any company e-mail address.

23             A.     Yes.

24             Q.     How about all of the mentors?

25             A.     I believe they did.

**Michael Sexton**                                              **Makaeff v. Trump University**

```
 1                  SEXTON - CONFIDENTIAL
 2          Q.      And that would also include
 3   speakers?
 4          A.      Yes.
 5          Q.      Instructors?
 6          A.      I believe so, yes.
 7          Q.      Where does Trump University store
 8   its documents?
 9                  MR. SCHNEIDER:  Objection.  Vague.
10                  THE WITNESS:  40 Wall Street, at the
11          corporate offices.
12   BY MS. JENSEN:
13          Q.      And are those documents still there
14   now?
15          A.      I have --
16                  MR. SCHNEIDER:  Objection.
17          Foundation.
18                  THE WITNESS:  -- no idea.
19   BY MS. JENSEN:
20          Q.      Does or did Trump University have
21   specific custodians for certain documents?
22                  Like to clarify, perhaps, were there
23   certain -- were there certain employees who
24   had -- who stored the documents relating to their
25   departments?
```

Page  47

**Michael Sexton**                                        **Makaeff v. Trump University**

```
                    SEXTON - CONFIDENTIAL
 1
 2          A.        Yes.
 3          Q.        Okay.   And to the extent that you
 4   can recall, could you let me know which employees
 5   had -- or custodians for which types of
 6   documents?
 7          A.        Sure.
 8                    So Steve Matejek, our controller,
 9   would have stored everything related to anything
10   financial.   He also had records for all of the
11   orders placed because, again, that was related to
12   finances.   He also had anything related to
13   returns, refunds.
14                    Brad Schneider and David Highbloom
15   would have been responsible for any sort of
16   customer service files.
17          Q.        I'm sorry, just to clarify, both of
18   them were custodians for those documents or one
19   of them or --
20          A.        Yes.
21          Q.        -- how did it work?
22          A.        It would have been Brad Schneider
23   kind of day-to-day tactically responsible for
24   those.
25                    And then Michael Bloom would have
```

Page  48

**Michael Sexton**                    **Makaeff v. Trump University**

```
 1              SEXTON - CONFIDENTIAL
 2    been responsible for all the marketing
 3    collateral.
 4          Q.        Did you say "collateral"?
 5          A.        Uh-huh.
 6          Q.        Would you define that term?
 7          A.        Certainly.
 8                    Tear sheets for ads.  Direct mail.
 9    Mockups.  Samples.  Copy that was written.  Any
10    sort of -- really any sort of e-mail copy.
11    Anything related to direct-to-consumer marketing
12    activities.
13          Q.        Were there any other employees who
14    were custodians of documents?
15          A.        Not that I can recall.
16          Q.        Did you personally store any types
17    of documents related to Trump University?
18          A.        I did.
19          Q.        And what were those?
20          A.        It really wasn't for me any specific
21    functional area.  It was really everything on my
22    hard drive.  Anything that -- correspondence.  A
23    little bit of everything.  Certainly some
24    marketing.  Certainly communications that just
25    arose in the natural course of business.
```

Page  49

```
 1              SEXTON - CONFIDENTIAL
 2    ceased to -- to offer education and training
 3    along the same lines.
 4         Q.    So it was only the economy, in your
 5    opinion?
 6         A.    No.  I think it was a number of
 7    issues.  Candidly, I think this lawsuit had a
 8    very negative impact on the public perception of
 9    the products we offered.  I think the economy
10    certainly didn't help.  I think there's a
11    cyclicality to this business, and it was time
12    to -- to potentially think about different ways
13    to deliver education and training.
14         Q.    Do you think it had anything to do
15    with the timing of the New York Department of
16    Education asking Trump University to change its
17    name from University?
18         A.    No, I don't think that had any
19    meaningful impact.
20         Q.    How about the State Attorney General
21    investigations?
22         A.    Which State Attorney General
23    investigations?
24         Q.    For instance, I think in Texas --
25    did Trump University stop its operations in Texas
```

Page 137

**Michael Sexton**                                **Makaeff v. Trump University**

```
 1              SEXTON - CONFIDENTIAL
 2      amount of sense; but at the end of the day, the
 3      brand was critical to the business.
 4              Q.      When the New York Department of
 5      Education contacted Trump University, do you know
 6      whether it did so by letter?
 7              A.      It did so by letter, yes.
 8              Q.      And to whom was it addressed?  Do
 9      you know?  Was it addressed to you?
10              A.      I believe it was.  I believe it was.
11              Q.      What did Trump University do in
12      response to the letter?
13              A.      We spoke to Joseph Frey at the
14      Department of Education.
15              Q.      Can you spell Joseph's name for the
16      record?
17              A.      Last name F-R-E-Y.
18                      We obviously referred it immediately
19      to counsel as well.
20              Q.      By "counsel," who do you mean?
21              A.      George Sorial.
22              Q.      George Sorial, for the record, is
23      with?
24              A.      Trump Organization.
25              Q.      And did you -- did you -- did you
```

**Michael Sexton**                                    **Makaeff v. Trump University**

```
 1                    SEXTON - CONFIDENTIAL
 2      ever respond by letter or in writing?
 3            A.      I didn't.
 4            Q.      Do you know whether Trump University
 5      did?
 6            A.      I don't know.  I imagine we did.  I
 7      don't know.
 8            Q.      Do you know whether any documents
 9      were produced to the New York Department of
10      Education?
11            A.      I don't believe so, but I don't know
12      for sure.
13            Q.      Do you know who would know?
14            A.      George Sorial.
15            Q.      Would -- George Sorial would also
16      know if there was any letter of response to the
17      New York Department of Education?
18            A.      Yes.
19            Q.      And to your understanding, did the
20      New York Department of Education notify Trump
21      University that the use of the term "university"
22      violated the rules of the board of regents?
23            A.      Yes.
24            Q.      And, again, that was by a letter as
25      well, that same letter that you received?
```

Page 165

1                    SEXTON - CONFIDENTIAL

2          A.       Yes.

3          Q.       So to tie this up, in -- the upshot

4     of this investigation, as I understand it, was

5     that Trump University changed its name; correct?

6          A.       (Witness nods head in the

7     affirmative.)

8          Q.       Were there any other consequences or

9     actions taken as a result of that investigation?

10         A.       No.

11         Q.       Were there any fines imposed?

12         A.       No.

13         Q.       Penalties?

14         A.       No.

15         Q.       Anything else?

16         A.       No.

17         Q.       Besides the companies that we've

18    discussed, does Trump University have any parent

19    company?

20         A.       No.

21         Q.       Actually, let me take that

22    disclaimer out of there.

23              Does Trump University have a parent

24    company?

25         A.       No.

ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:     Makaeff v. Trump University
Case Number:   10 CV 0940 EIG (WVG)
Dep. Date:     August 22, 2012
Deponent:      Michael Sexton

To assist you in making corrections to your deposition testimony,
please follow the directions below.
If additional pages are necessary, please provide them and attach
the pages to the back of the errata sheet.

If you find any errors or changes you wish to make, insert the
corrections on the errata sheet beside the page and line numbers.
Please do not make any changes directly on the ORIGINAL
transcript. Do not change any of the questions.

After completing your review, please sign the errata sheet, above
the "signature" line.

CORRECTIONS:

| Pg./Ln. | Should Read | Reasons Therefore |
|---------|-------------|-------------------|
| 79 12 | WAS BSG | |
| 158 4 | IACET | |
| 158 5 | I-A-C-E-T | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |

Exhibit 6

000090

____ / ____      _____      _____

____ / ____      _____      _____


_____ ✓  Subject to the above changes, I certify that the
transcript is true and correct.


_____  No changes have been made. I certify that the transcript is
true and correct.


_____
                      Signature of Deponent

Exhibit 6                                              000091

**Michael Sexton**                                    **Makaeff v. Trump University**

```
2              C E R T I F I C A T I O N

3

4     STATE OF NEW YORK      )

5                            ) ss:

6     COUNTY OF WESTCHESTER )

7

8            I, Eileen Mulvenna, CSR/RMR/CRR and a

9     notary public within and for the State of New

10    York, do hereby certify:

11           That I reported the proceedings in the

12    within-entitled matter, and that the within

13    transcript is a true record of such proceedings.

14           I further certify that I am not related

15    by blood or marriage to any of the parties in

16    this matter and that I am in no way interested in

17    the outcome of the matter.

18           IN WITNESS WHEREOF, I have hereunto set

19    my hand this 5th day of September, 2012.

20

21                          ------------------------------

22                          Eileen Mulvenna, CSR/RMR/CRR

23

24

25
```

Page 278

**C O N F I D E N T I A L**

**Michael Sexton**                                    **Makaeff v. Trump University**

```
        ** CONFIDENTIAL ** CONFIDENTIAL **
    UNITED STATES DISTRICT COURT
    FOR THE SOUTHERN DISTRICT OF CALIFORNIA
    CASE NO.: 10 CV 0940 EIG (WVG)
    ----------------------------------------x
    TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM
    and PATRICIA MURPHY, on Behalf of Themselves
    and all others Similarly Situated,


                    Plaintiffs,

        -against-


    TRUMP UNIVERSITY, LLC (AKA TRUMP
    ENTREPRENEUR INITIATIVE) a New York
    Limited Liability Company, DONALD J. TRUMP,
    and DOES 1 through 50, inclusive,


                    Defendants.
    ----------------------------------------x
                    August 23, 2012
                    9:14 a.m.


        CONTINUED VIDEOTAPED DEPOSITION of
    MICHAEL SEXTON, 30(b)(6) Witness in the
    above-captioned matter, taken by Plaintiffs, held
    at 725 Fifth Avenue, New York, New York, before
    Eileen Mulvenna, CSR/RMR/CRR, Certified Shorthand
    Reporter, Registered Merit Reporter, Certified
    Realtime Reporter and Notary Public of the State
    of New York.
```

Page 279

**C O N F I D E N T I A L**

**Michael Sexton**                                    **Makaeff v. Trump University**

```
 1                    SEXTON - CONFIDENTIAL
 2                    THE VIDEOGRAPHER:  Good morning.
 3                    This is the continuation of the
 4           videotaped deposition of Michael Sexton in
 5           the matter of Tarla Makaeff, et al., versus
 6           Trump University LLC, et al., on 8/23/2012
 7           at approximately 9:14 a.m.
 8                    My name is Richard Ramos, the video
 9           specialist.  The court reporter is Eileen
10           Mulvenna.
11                    Will the court reporter please swear
12           in the witness, please.
13    MICHAEL SEXTON,
14           having been duly resworn by Eileen Mulvenna,
15           a Notary Public of the State of New York,
16           was examined and testified further as
17           follows:
18    EXAMINATION (Cont'd)
19    BY MS. ECK:
20           Q.     Good morning, Mr. Sexton.
21           A.     Good morning.
22           Q.     My name is Amber Eck.  I'm one of
23    the attorneys for the plaintiffs in this matter.
24    We're continuing your 30(b)(6) deposition from
25    yesterday.
```

CONFIDENTIAL

Michael Sexton                                    Makaeff v. Trump University

```
 1                  SEXTON - CONFIDENTIAL
 2   Institute?
 3        A.    No, I don't believe so.
 4        Q.    Steven Goff is referenced by name
 5   two times.  Do you know why they were
 6   particularly looking into Steven Goff?
 7        A.    I don't.  I -- he lived in Texas,
 8   but I don't know specifically why they were
 9   targeting him.
10        Q.    Did the Texas Attorney General's
11   office take any action after receiving these
12   documents?
13        A.    What kind of action?
14        Q.    Did they take disciplinary action or
15   impose a fine?
16        A.    No, the only -- the only action was
17   we filed to do business in the state of Texas
18   late and paid a small amount of back taxes that
19   were due for activities in Texas, and that was
20   the only consequence.
21        Q.    When you were you first contacted by
22   the New York Attorney General's office?
23        A.    I don't recall.
24             MS. ECK:   I'd like to mark Exhibit
25   No. 14, Subpoena from the New York Attorney
```

Page 418

**C O N F I D E N T I A L**

Michael Sexton                                              Makaeff v. Trump University

```
 1              SEXTON - CONFIDENTIAL
 2         General's office bearing Bates Nos. TU61503
 3         through 61516.
 4              (Plaintiffs' Exhibit 14, Bates Nos.
 5         TU 61503 through 16, Subpoena to Trump
 6         Entrepreneur Initiative, marked for
 7         identification.)
 8              (Witness peruses the exhibit.)
 9    BY MS. ECK:
10         Q.   Have you seen this document before?
11         A.   This document, no.
12         Q.   Did you see another document from
13    the New York Attorney General's office?
14         A.   I did.
15         Q.   What document did you see?
16         A.   It was a request for an interview
17    with myself.
18         Q.   When did you receive that?
19         A.   I don't have the exact date.  I
20    believe April of this year.
21         Q.   What date was your interview?
22         A.   It was in the month of -- actually,
23    it was I believe June.
24         Q.   Was it an informal interview or was
25    it a formal deposition with a court reporter?
```

Page  419

**C O N F I D E N T I A L**

**Michael Sexton**                                              **Makaeff v. Trump University**

```
 1              SEXTON - CONFIDENTIAL
 2         A.      There was a court reporter there.
 3         Q.      Was a transcript prepared?
 4         A.      If there was, I haven't seen it.
 5         Q.      Do you know whether a copy of the
 6  transcript was provided to Trump University?
 7         A.      I do not know.
 8         Q.      How long was your deposition?
 9         A.      It was a day.
10         Q.      Was it approximately eight hours?
11         A.      No, it was -- it began at 10 in the
12  morning and, with breaks and lunch, went through
13  5 p.m.
14         Q.      Who took the deposition?
15         A.      I believe his name was Mel Goldberg.
16         Q.      Was he a New York Assistant Attorney
17  General?
18         A.      Yes, I believe he was.
19         Q.      Had you spoken with him previously?
20         A.      I had not.
21         Q.      Did Trump University provide counsel
22  for you?
23         A.      Yes.
24         Q.      Who was your counsel?
25         A.      Avi Schick.
```

Page  420

**C O N F I D E N T I A L**

Michael Sexton                              Makaeff v. Trump University

```
 1                SEXTON - CONFIDENTIAL
 2        Q.        How do you spell that?
 3        A.        I believe S-C-H -- S-C-H-I-C-K.
 4        Q.        And Avi is A-V-I?
 5        A.        Correct.
 6        Q.        What firm is that person with?
 7        A.        SNR Denton, D-E-N-T-O-N.
 8        Q.        Is that a New York law firm?
 9        A.        I don't know.  They have an office
10   here, but I don't know where they're
11   headquartered.
12        Q.        Did you meet with -- is that Mr. or
13   Mrs.?
14        A.        Mr.
15        Q.        Did you meet with Mr. Schick before
16   the deposition?
17        A.        I did.
18        Q.        On what day?
19        A.        I don't have the exact dates.
20        Q.        Was it a day before or a week
21   before?
22        A.        So I believe the deposition was on a
23   Wednesday.  And so I met with him the previous, I
24   believe, Thursday for three hours.  And then --
25                  MR. SCHNEIDER:  Don't -- don't get
```

Page  421

**C O N F I D E N T I A L**

Michael Sexton                                                    Makaeff v. Trump University

```
1              SEXTON - CONFIDENTIAL
2          into any discussion or anything about
3          the dynamics about your meeting with
4          counsel.
5                   THE WITNESS:  Okay.
6                   I met with him three times.
7     BY MS. ECK:
8          Q.      On three separate days?
9          A.      Correct.
10         Q.      Did you review documents during your
11    meetings?
12                 MR. SCHNEIDER:  They're not going to
13         talk about what they did.  This is --
14                 MS. ECK:  Whether he reviewed
15         documents is proper testimony.
16                 MR. SCHNEIDER:  I'm not going to get
17         into what the lawyer and him did, whether
18         they talked or whether they looked at
19         documents together or how they prepared.
20    BY MS. ECK:
21         Q.      Did you review any documents that
22    refreshed your recollection?
23                 MR. SCHNEIDER:  You know, this line
24         of questioning is proper for a sitting
25         deposition, that you can ask if a witness
```

Page  422

**C O N F I D E N T I A L**

Michael Sexton                                    Makaeff v. Trump University

1                 SEXTON - CONFIDENTIAL

2          reviewed documents to refresh his

3          recollection for the testimony that he's

4          going to give.

5                  Now you're asking about his

6          relationship in a different matter that is

7          not this matter about what he and the

8          lawyer did.

9                  So the purposes of asking about

10         refreshing recollection is that you're

11         entitled to know how he refreshed it for

12         this testimony.  That's not what you're

13         asking now, about a different proceeding

14         altogether.

15                  So I'm not going to allow him to

16         talk about what he did with another lawyer

17         in another case.

18     BY MS. ECK:

19          Q.     Did the New York Attorney General's

20     office depose anyone else from Trump University?

21          A.     Yes, they did.

22          Q.     Who else?

23          A.     Steven Matejek.

24          Q.     Anybody else?

25          A.     Steven Gilpin.

Page  423

CONFIDENTIAL

Michael Sexton                                    Makaeff v. Trump University

```
 1              SEXTON - CONFIDENTIAL
 2        Q.       Anyone else?
 3        A.       Not that I'm aware of.
 4        Q.       Did they depose Donald Trump?
 5        A.       Not that I'm aware of.
 6        Q.       Did they depose David Highbloom?
 7        A.       No.
 8        Q.       Did they tell you what the status of
 9   their investigation is?
10        A.       They did not share that with me.
11        Q.       Did the subpoena you received
12   request that you produce documents?
13        A.       I don't specifically recall.
14        Q.       Did you produce any documents?
15        A.       I did not.  I don't believe it
16   requested any documents.
17        Q.       Was Trump University ever contacted
18   by the Federal Trade Commission?
19        A.       No, not that I'm aware of.
20        Q.       Was Trump University concerned about
21   FTC guidelines or regulations?
22              MR. SCHNEIDER:  Objection.  Vague as
23        to "concerned."
24              THE WITNESS:  We were cognizant of
25        them and compliant with them.
```

Page 424

**C O N F I D E N T I A L**

Michael Sexton                                    Makaeff v. Trump University

```
 2   STATE OF NEW YORK      )
 3                          SS:
 4   COUNTY OF WESTCHESTER  )
 5
 6
 7          I, MICHAEL SEXTON, the witness herein,
 8   having read the foregoing testimony of the pages
 9   of this deposition, do hereby certify it to be a
10   true and correct transcript, subject to the
11   correction, if any, shown on the attached page.
12
13                        oOo
14
15
16
17   _____
18                    MICHAEL SEXTON
19
20
21   Subscribed and sworn before me
22   this _____ day of_____, 2012.
23   _____
24
25
```

ERRATA SHEET FOR THE TRANSCRIPT OF:

Case Name:     Makaeff v. Trump University
Case Number:   10 CV 0940 EIG (WVG)
Dep. Date:     August 23, 2012
Deponent:      Michael Sexton

To assist you in making corrections to your deposition testimony,
please follow the directions below.
If additional pages are necessary, please provide them and attach
the pages to the back of the errata sheet.

If you find any errors or changes you wish to make, insert the
corrections on the errata sheet beside the page and line numbers.
Please do not make any changes directly on the ORIGINAL
transcript. Do not change any of the questions.

After completing your review, please sign the errata sheet, above
the "signature" line.

CORRECTIONS:

| Pg./Ln. | Should Read | Reasons Therefore |
|---|---|---|
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |
| ___ / ___ | | |

Exhibit 7                                000103

___ / ___      _____      _____

___ / ___      _____      _____

_____ Subject to the above changes, I certify that the
transcript is true and correct.

_____ No changes have been made. I certify that the transcript is
true and correct.

                                          _____
                                                    Signature of Deponent

Exhibit 7                                                          000104

2                    C E R T I F I C A T I O N

3

4      STATE OF NEW YORK       )

5                             ) ss:

6      COUNTY OF WESTCHESTER )

7

8             I, Eileen Mulvenna, CSR/RMR/CRR and a

9      notary public within and for the State of New

10     York, do hereby certify:

11             That I reported the proceedings in the

12     within-entitled matter, and that the within

13     transcript is a true record of such proceedings.

14             I further certify that I am not related

15     by blood or marriage to any of the parties in

16     this matter and that I am in no way interested in

17     the outcome of the matter.

18             IN WITNESS WHEREOF, I have hereunto set

19     my hand this 5th day of September, 2012.

20

21                              ------------------------------

                                Eileen Mulvenna, CSR/RMR/CRR

22

23

24

25

**Donald J. Trump, Sr.**                                    **September 12, 2012**

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


TARLA MAKAEFF, et al., on Behalf of

Themselves and All Others Similarly

Situated,

     Plaintiffs,                Civil Action No.

        vs.                  3:10-CV-00940-

TRUMP UNIVERSITY, LLC, et al.,    CAB(WVG)

     Defendants.

_____


     Videotaped deposition of DONALD J. TRUMP, SR.

     New York, New York

     September 12, 2012


Reported by:

Gail L. Inghram Verbano:

RDR, CRR, CSR-CA (No. 8635)


Job No. 10003489

**Donald J. Trump, Sr.**                                    **September 12, 2012**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF CALIFORNIA

 3

 4    TARLA MAKAEFF, et al., on Behalf of

 5    Themselves and All Others Similarly

 6    Situated,

 7         Plaintiffs,                    Civil Action No.

 8              vs.                       3:10-CV-00940-

 9    TRUMP UNIVERSITY, LLC, et al.,      CAB(WVG)

10         Defendants.

11    _____

12

13

14              Videotaped deposition of DONALD J. TRUMP,

15    SR., taken on behalf of Plaintiffs, at The Trump

16    Organization, 725 Fifth Avenue, New York, New York

17    10022, beginning at 10:26 a.m., and ending at

18    3:06 p.m., on Wednesday, September 12, 2012, before

19    Gail Inghram Verbano, Registered Diplomate Reporter,

20    Certified Realtime Reporter, Certified Shorthand

21    Reporter-CA (No. 8635).

22

23

24
```

**Donald J. Trump, Sr.**                           **September 12, 2012**

```
 1                MS. JENSEN:  Rachel Jensen on behalf of
 2     the plaintiffs.
 3                MS. ECK:  Amber Eck on behalf of
 4     plaintiffs.
 5                MS. ZELDES:  Helen Zeldes on behalf of
 6     the plaintiff.
 7                THE VIDEOGRAPHER:  The court reporter is
 8     Gail Verbano.  Would you please swear in the witness.
 9                        -   -   -
10                DONALD J. TRUMP, SR., having first been
11     duly sworn according to law, was examined and
12     testified as follows:
13                        -   -   -
14                       EXAMINATION
15     BY MS. JENSEN:
16          Q    Good morning, Mr. Trump.
17          A    Good morning.
18          Q    My name is Rachel Jensen.  I'm here on
19     behalf of the plaintiffs.
20                If you could please first state and spell
21     your name and your date of birth for the record.
22          A    Donald John Trump, T-R-U-M-P.
23     June 14th, 1946.
24          Q    And what is your address?
```

www.aptusCR.com
Exhibit 8                                    000108

**Donald J. Trump, Sr.**                    **September 12, 2012**

```
1    LLC?
2         A   No.  I think Mr. Sexton could answer that
3    question.  I'm not exactly sure, but they did change
4    the name somewhere along the line.
5              I think we were requested to because of
6    something having to do with the word "university."
7         Q   You can't remember what --
8         A   No, I don't remember exactly the details
9    of it.  But Mr. Sexton was requested to at some point
10   along the way and he changed the name.
11        Q   Do you remember who requested it?
12        A   No, I don't.
13        Q   Do you remember seeing any letter from
14   the New York Department of Education about the use of
15   the word "university"?
16        A   No.  I think there was a negotiation that
17   went on for a period of time; and then Mr. Sexton
18   said rather than arguing about it, we'll change the
19   name.  It wasn't a big deal.
20        Q   Okay.  Do you know if any other -- if any
21   other states asked Trump University to change its
22   name?
23        A   That, I don't know.
24        Q   Now, at the beginning of Trump
```

**Donald J. Trump, Sr.**                    **September 12, 2012**

1        A    -- Iowa is different than California.

2   They have different rules, regulations.  New York is

3   different than California.

4        Q    **Sure.**

5        A    Different cities are different.  So we

6   have different cities, different states, different

7   areas.  And you can't really tailor it as -- you

8   can't make it a one-blanket policy.  Everything was

9   different.  But most importantly, the instructors and

10  their stories were different.

11       Q    **Sure.  And did you see -- did you see any**

12  **of the presentations, the PowerPoint presentations**

13  **that were to be provided at the courses?**

14       A    I believe they were sent to me at certain

15  points, yes.

16       Q    **Okay.  And do you recall, sitting here**

17  **today, how those PowerPoints differed from state to**

18  **state?**

19       A    No, I don't.

20            MS. JENSEN:  All right.  Let's go ahead

21  and break.  Take a short break.  I don't know -- we

22  can go off the record.

23            THE VIDEOGRAPHER:  Off the record at

24  12:06 p.m.  This marks the end of Tape No. 1.

**Donald J. Trump, Sr.**                                   **September 12, 2012**

1   Champion" video was?

2           A    I remember vaguely, but I don't remember.

3           Q    **What do you recall about it?**

4           A    Just that I did a video.

5           Q    **What was the video about?**

6           A    "Think Like a Champion."

7           Q    **What was it for?**

8           A    I think it was for Michael Sexton for the

9   school, the students.

10          Q    **Do you recall whether it was for an**

11  **online program?**

12          A    No, I don't.  That I don't remember.

13          Q    **2010, do you recall any other meetings**

14  **than were recorded here in this planner?**

15          A    No.

16          Q    **And do you recall any of the meetings**

17  **that are recorded here?**

18          A    No.

19          Q    **Do you know whether Michael Sexton took**

20  **any notes?**

21          A    I don't know.

22          Q    **Do you recall how long the meetings were?**

23          A    No.

24          Q    **Did you prepare any of the Trump**

Page 102

Donald J. Trump, Sr.                                    September 12, 2012

1    University materials?

2         A    Not per se, no.  I would look at it as it

3    was prepared on occasion, and they would send it to

4    me because they wanted to get an approval.  But a lot

5    of it -- I'm not sure that I've looked at all of it;

6    probably not, but I've looked at some of it.

7         Q    Do you recall anything specifically you

8    looked at?

9         A    Just general material.

10        Q    What types of materials?

11        A    Instructional material and perhaps

12   promotional material.

13        Q    As to the promotional material, what did

14   you look at?

15        A    I don't remember.

16        Q    As to the instructional material, what

17   did you look at?

18        A    I think just the general basics of the

19   courses.  But you'd have -- if you presented it to

20   me, I could tell you whether or not I saw it, I

21   think.

22        Q    And what specifically are you talking

23   about?  Are you talking about for the online courses?

24        A    Maybe both.

**Donald J. Trump, Sr.**                    **September 12, 2012**

1    Q    And Mr. Sexton was in charge of creating
2    the course materials; correct?
3         A    Well, sort of indirectly.  I think the
4    different professors created their own material.  But
5    he oversaw that, yes.
6         Q    And was he -- as you said, maybe
7    different professors came up with different
8    materials.  But ultimately he was in charge of
9    approving that material; correct?
10        A    I would say so, yes.
11        Q    And did Mr. Sexton interview instructors?
12        A    Yes, he did.
13        Q    Did anybody else?
14        A    I don't know.  You'd have to ask him.
15        Q    Okay.  Did he interview the mentors?
16        A    I believe he did, yes.
17        Q    And he had the ultimate approval for the
18    hiring of the instructors; correct?
19        A    Yes, he did.
20        Q    And he had the ultimate approval for
21    hiring the mentors; correct?
22        A    Yes.
23        Q    What is DynaTech?
24        A    I don't know.

**Donald J. Trump, Sr.**                                     **September 12, 2012**

1       Q    Different instructors.  Okay.

2            And do you know, sitting here, that the

3   materials, the PowerPoint presentations actually were

4   different?

5       A    You'd have to speak to Mr. Sexton.  But

6   the PowerPoint is one thing; but the instructors are

7   an entirely different thing and they would teach the

8   courses different ways.

9       Q    Okay.  But sitting here, you don't know

10  how they taught them in different ways?

11      A    Different people and they had different

12  experiences.  And a big part of what I wanted taught

13  was life -- real-life situations.  I thought that was

14  very important for people to hear.

15           PowerPoint was almost the least of it.  I

16  really thought that the real-life situations were

17  very important for people to hear.

18      Q    Do you have 10 steps of closing any real

19  estate deal?

20      A    Yes.  We wrote some out a long time ago.

21  I did something on that, yeah.

22      Q    What were those 10 steps --

23      A    I don't know now.  It's been a long time

24  ago.

Donald J. Trump, Sr.                                      September 12, 2012

```
 1              CERTIFICATE OF SHORTHAND REPORTER

 2

 3              I, Gail Inghram Verbano, Registered

 4    Diplomate Reporter, Certified Realtime Reporter,

 5    Certified Shorthand Reporter (CA) and Notary Public,

 6    the officer before whom the foregoing proceedings

 7    were taken, do hereby certify that the foregoing

 8    transcript is a true and correct record of the

 9    proceedings; that said proceedings were taken by me

10    stenographically and thereafter reduced to

11    typewriting under my supervision; and that I am

12    neither counsel for, related to, nor employed by any

13    of the parties to this case and have no interest,

14    financial or otherwise, in its outcome.

15

16

17

18    _____
      Gail Inghram Verbano, CSR, RDR, CRR
19    CA-CSR No. 8635

20

21

22

23
```

Exhibit 8                                                        000115

**Farrar, Kerry A.**

| | |
|---|---|
| **From:** | David K. Schneider <dks@yslaw.com> |
| **Sent:** | Tuesday, October 21, 2014 12:23 PM |
| **To:** | Morris, Benjamin J. |
| **Cc:** | 'jmartin@trumpnational.com' |
| **Subject:** | FW: Trump; NY Depositions |

Dear Ben:

David.

_____

David K. Schneider



655 West Broadway, Suite 1400
San Diego, CA  92101

619-233-5500 (main)
619-233-5535 (fax)
619-233-5562 (direct)

http://www.yslaw.com

**From:** Amber Eck [mailto:ambere@zhlaw.com]
**Sent:** Tuesday, July 31, 2012 9:53 AM
**To:** David K. Schneider
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** RE: Trump; NY Depositions

David,

In regard to order, we'd like to take:

8/22: 30(b)(6) rep – we've had this outstanding for over 2 months, please let us know by this Friday Aug. 3 the deponent'(s) name.

Exhibit 9

8/23 Michael Sexton
8/24 Donald Trump – we don't want to waste Mr. Trump's time getting preliminary info we can get from the 30(b)(6) rep and Michael Sexton; I'm sure you and he will appreciate that.

Please confirm.  Also, when and where will James Harris and Mike Kasper be made available for deposition?  I believe Kasper is here in So. Cal.  If so, let's try to do him the week of Aug. 6 or Aug. 13.  Thanks.

Amber

---

**From:** David K. Schneider [mailto:dks@yslaw.com]
**Sent:** Tuesday, July 31, 2012 9:36 AM
**To:** Amber Eck
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** RE: Trump; NY Depositions

Amber:

The deposition schedule in New York is as follows:

8/22 Donald Trump
8/23  Michael Sexton Individually and 30(b)(6) Representative
8/24  Trump University 30(b)(6) Representative  TBD

I will identify the 30(b)(6) representative scheduled for 8/24 prior to the deposition.

As I advised in my earlier email to you, I am not available for depositions on 8/20 or 8/21, as I will be meeting with clients in preparation for their depositions.  David.
_____

David K. Schneider



A LAW PARTNERSHIP

655 West Broadway, Suite 1400
San Diego, CA  92101

619-233-5500 (main)
619-233-5535 (fax)
619-233-5562 (direct)

http://www.yslaw.com

---

**From:** Amber Eck [mailto:ambere@zhlaw.com]
**Sent:** Monday, July 30, 2012 5:07 PM
**To:** David K. Schneider
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** Trump; NY Depositions

David,

  We have been cooperative with you about Plaintiff's depositions. We would like to pin down Defendants' New York depositions.  We have noticed and would like to take the week of Aug. 20:

    (1)  Trump U 30(b)(6) depo
    (2)  Michael Sexton
    (3)  Donald Trump
    (4)  James Harris; and
    (5)  Mike Kasper.

Please provide us with the identity of the 30(b)(6) deponents ASAP and let us know which dates these individuals will be available.  Thank you.

Amber

---

**From:** Amber Eck
**Sent:** Monday, July 30, 2012 4:08 PM
**To:** 'David K. Schneider'
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** RE: Subpoenas and NY Depositions of Brown Low and Everett

David,

OK. If we do Everett Sept. 13, can you do Low Sept. 11?

Amber

---

**From:** David K. Schneider [mailto:dks@yslaw.com]
**Sent:** Monday, July 30, 2012 3:20 PM
**To:** Amber Eck
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** RE: Subpoenas and NY Depositions of Brown Low and Everett

Thanks Amber.  September 13 or 14 are good for me in San Diego.

_____

David K. Schneider



655 West Broadway, Suite 1400
San Diego, CA  92101

619-233-5500 (main)
619-233-5535 (fax)

Exhibit 9                                                              000118

619-233-5562 (direct)

http://www.yslaw.com

---

**From:** Amber Eck [mailto:ambere@zhlaw.com]
**Sent:** Monday, July 30, 2012 3:11 PM
**To:** David K. Schneider
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** RE: Subpoenas and NY Depositions of Brown Low and Everett

I just talked to Joann Everett, and she can do her depo in San Diego or Tampa FL -- Sept. 6 or 7 or Sept. 12, 13 or 14.

---

**From:** Amber Eck
**Sent:** Monday, July 30, 2012 2:48 PM
**To:** 'David K. Schneider'
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** RE: Subpoenas and NY Depositions of Brown Low and Everett

David,

As I mentioned before, I will be out of town for a family wedding the last week of August – Sat. Aug. 25 – Sun. Sept. 2, so that week is out for me for plaintiff depos, and I will likely be the one defending them.

I do have a calls in to John Brown and Joann Everett regarding their availability, and whether they are available to come to San Diego, or want to do the depos here or in NY/FL, and will let you know.

Are you available for depos in San Diego and/or FL the week of Sept. 10?
What dates are you available in San Diego for plaintiffs' depos in Sept. other than 9/13 and 9/25?

Amber

---

**From:** David K. Schneider [mailto:dks@yslaw.com]
**Sent:** Monday, July 30, 2012 2:39 PM
**To:** Amber Eck
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** Subpoenas and NY Depositions of Brown Low and Everett

Amber:

I will try to meet the schedule I mentioned in my earlier email.  As I said, if I receive documents earlier, I will produce them earlier, if I can.

I am working with a dozen witnesses in 7 different states.  There are several witnesses who have not yet identified the amount of documents they have or when I will receive them, so I cannot represent that I will produce them by a date certain.  As a reminder, it took your office more than one month to produce documents in response to one subpoena (to Todd Madison).

Turning to the depositions, I'm trying to confirm plans for the NY trip. Are you going to make Mr. Brown available for deposition while we are there? I had proposed Saturday, 8/25, or Monday, 8/27. Please let me know.

Also, I want to depose Ms. Everett and Mr. Low. Will Ms. Everett's deposition be in Florida? If so, I will need a travel day. One possibility is to have Mr. Brown's deposition in New York on 8/25 and Ms. Everett's deposition in Florida on 8/27.

I am currently available for Ms. Everett's deposition in Florida on 8/27 (if Brown is Saturday, 8/25), 8/30, 9/24, 9/27 and 9/28. I have a trial in Ventura scheduled to start on 9/17. If the trial is continued or otherwise does not start that week, I am available that entire week (9/17-9/21). If Ms. Everett's deposition takes place in San Diego, I am also available 9/13 and 9/25. We can schedule Mr. Low for one of the San Diego dates as well.

I would like to complete these depositions in September and would appreciate you providing available dates as soon as possible. Thank you. David.

_____

David K. Schneider



655 West Broadway, Suite 1400
San Diego, CA  92101

619-233-5500 (main)
619-233-5535 (fax)
619-233-5562 (direct)

http://www.yslaw.com

**From:** Amber Eck [mailto:ambere@zhlaw.com]
**Sent:** Monday, July 30, 2012 12:19 PM
**To:** David K. Schneider
**Cc:** 'Rachel Jensen'; Aaron Olsen
**Subject:** RE: Trump; Subpoenas

David,

Just writing to follow-up. Do you agree to get us the documents for your clients by Aug. 15? Thanks.

Amber

**From:** Amber Eck
**Sent:** Wednesday, July 25, 2012 1:27 PM
**To:** David K. Schneider
**Cc:** Rachel Jensen; Aaron Olsen
**Subject:** Trump; Subpoenas

David,

  We agree to accept service on behalf of our clients in exchange for you accepting service for your clients, but we need to get their documents by Aug. 15, so we have a week to review in advance of the depositions the week of Aug 20.

Amber

---

**From:** David K. Schneider [mailto:dks@yslaw.com]
**Sent:** Monday, July 23, 2012 3:09 PM
**To:** Rachel Jensen; Amber Eck
**Cc:** tom@tomlambertcpa.com
**Subject:** Subpoenas

Rachel and Amber:

The following witnesses have authorized my firm to accept service of the subpoena to produce documents:

Michael Bloom
Kevin Derrick
Gene Guarino
Howard Haller
Michael Hinson
Johnny Horton
Roger LeFleur
Scott Leitzell
Jack Mahoney
Steven Matejek
Troy Peterson
Gary Sturgeon

The witnesses will need time to determine whether they have responsive documents, and if so, to locate and send them to me.  I will then need time to review, bates stamp and produce them.  I will be out of state and unavailable 8/3/12-8/12/12.  Depending on when I receive documents from these witnesses, I will attempt to produce responsive documents by 8/17.  If I receive documents well in advance of August 2, and I have an opportunity

to review, bates stamp and produce them, then I will produce those documents before I leave town.  David.

---

David K. Schneider



655 West Broadway, Suite 1400
San Diego, CA  92101

619-233-5500 (main)
619-233-5535 (fax)
619-233-5562 (direct)

http://www.yslaw.com

1 ROBBINS GELLER RUDMAN
    & DOWD LLP
2 JASON A. FORGE (181542)
  jforge@rgrdlaw.com
3 RACHEL L. JENSEN (211456)
  rjensen@rgrdlaw.com
4 655 West Broadway, Suite 1900
  San Diego, CA  92101
5 Telephone:  619/231-1058
  619/231-7423 (fax)
6
  ZELDES HAEGGQUIST & ECK, LLP
7 AMBER L. ECK (177882)
  ambere@zhlaw.com
8 HELEN I. ZELDES (220051)
  helenz@zhlaw.com
9 ALREEN HAEGGQUIST (221858)
  alreenh@zhlaw.com
10 AARON M. OLSEN (259923)
   aarono@zhlaw.com
11 625 Broadway, Suite 1000
   San Diego, CA  92101
12 Telephone:  619/342-8000
   619/342-7878 (fax)
13
   Class Counsel
14
   [Additional counsel appear on signature page.]
15
                    UNITED STATES DISTRICT COURT
16
                  SOUTHERN DISTRICT OF CALIFORNIA
17
18 ART COHEN, Individually and  on        )   No. 3:13-cv-02519-GPC-WVG
   Behalf of All Others Similarly Situated, )
19                                          )   CLASS ACTION
                              Plaintiff,    )
20                                          )   JOINT DISCOVERY PLAN
           vs.                              )
21                                          )
   DONALD J. TRUMP,                         )
22                                          )
                              Defendant.    )
23 —————————————————————————————— )

24

25

26

27

28

984370_1

Exhibit 10                                                     000123

1    Pursuant to Federal Rule of Civil Procedure 26(f), this Court's April 10, 2014

2  Order following the Early Neutral Evaluation (Dkt. No. 26), and this Court's October

3  30, 2014 Order (Dkt. No. 54), the parties, by and through their respective counsel of

4  record, respectfully submit this Joint Discovery Plan.  The parties have attempted to

5  reach agreement on how best to manage this case and hereby jointly set forth the

6  matters on which they agree and express their respective views where they differ.

7  **I.    Plaintiff's Statement of the Case**

8     As set forth in detail elsewhere, Defendant Donald J. Trump ("Trump") used his

9  celebrity to promote "Trump University," which he promised would offer students the

10  opportunity to learn his real estate secrets from him and an entire faculty of professors

11  and instructors whom he had handpicked.  Despite uniform promises of Trump's

12  integral involvement with his eponymous "university," he played no meaningful role

13  whatsoever in educating students at the Live Events.  Trump did not create or even

14  review Trump University's Live Events curricula, he did not select the Live Events

15  instructors, and the New York State Education Department ("NYSED") expressly told

16  him in 2005 that what he was marketing was not a university and directed him to stop

17  using that title and get a license to operate – yet, he defied that directive.

18     This is a classic fraud scheme, and Plaintiff Art Cohen and the Class were taken

19  in by it.  As such, Plaintiff alleged a single cause of action for mail and wire fraud in

20  violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

21  U.S.C. §1962(c), which the Court upheld on a motion to dismiss.  *See* Dkt. No. 21.

22     Pursuant to this Court's order, the parties have engaged in limited class

23  certification discovery and briefed Plaintiff's motion for class certification, which the

24  Court granted on October 27, 2014.  *See* Dkt. No. 53.

25  **II.   Defendant's Statement of the Case**

26     Plaintiff has alleged a single count against Defendant Donald J. Trump alleging

27  violation of 18 U.S.C. §1962(c) in connection with Plaintiff's purchase of two Trump

28  University real estate programs in 2009.  Defendant denies the allegations in

Plaintiff's complaint and has asserted affirmative defenses to the Complaint. Defendant also denies the allegations in Plaintiff's Statement of the Case.

**III.   Discovery Plan**

   **A.   Conference**

Prior to filing this Joint Discovery Plan, the parties met and conferred telephonically on May 14, 2014, and again on November 13, 2014.  The November conference was attended by Rachel Jensen and Amber Eck on behalf of Plaintiff Cohen, and Nancy Stagg, Jill Martin, and Benjamin Morris on behalf of Defendant Trump.

   **B.   Related Cases**

Plaintiff filed a notice of related case to *Makaeff, et al. v. Trump University, LLC et al.*, No. 3:10-cv-0940-GPC (WVG).  Defendant has not agreed that this case is related to the *Makaeff* case for purposes of case deadlines and trial.  The New York Attorney General's ("NYAG") state action, *People of the State of New York v. Trump Entrepreneur Initiative*, No. 451463/2013 (NY Sup. Ct. NY Cnty., Part 55), also involves the same defendant (and many others) and similar (though certainly not the same) claims.  Defendant does not agree that this action is related to the NYAG action cited in Plaintiff's portion of the report as per the definition of "Related Action" in Local Civil Rule 40.1(g).

   **C.   Additional Parties**

Currently, the parties do not contemplate the addition of parties.

   **D.   Anticipated Interventions**

Currently, the parties do not contemplate any interventions.

   **E.   Class Action Issues**

On October 27, 2014, District Judge Curiel granted Plaintiff's motion for class certification. *See* Dkt. No. 53.  On November 10, 2014, Defendant filed a Petition for Permission to Appeal Pursuant to Rule 23(f) in the United States Court of Appeals for the Ninth Circuit, Case No. 14-80162.  *See* Dkt. No. 57.

1    **F.    The Parties' Initial Disclosures**

2    The parties exchanged their Rule 26(a) initial disclosures on May 28, 2014.

3    **G.    Discovery Plan**

4         **1.    Anticipated Subjects of Discovery**

5              **a.    Plaintiff's Proposal**

6                   **(1)    Subjects on Which Discovery Is Needed**

7    Many of the documents that Plaintiff will need in this case have been requested,

8    and in some cases, already produced in the *Makaeff* case.  However, Defendants have

9    not timely produced documents in *Makaeff* (*see, e.g.*, *Makaeff* Dkt. No. 355), and

10   continue to produce documents weeks before the current fact discovery cut off of

11   December 19, 2014.   Defendants indicated just yesterday that they need until

12   December 5, 2014, to supplement their document production and discovery responses.

13   Given that Defendants are not confident about the completeness of their document

14   production in *Makaeff*, Plaintiff Cohen has no reason to rely on the discovery provided

15   in *Makaeff* and objects to any limitation on his entitlement to take the depositions and

16   documentary discovery of Defendant and the witnesses in his case, as he sees fit.

17   Plaintiff Cohen should not be prejudiced due to Defendants' failures to meet their

18   deadlines for producing documents in the *Makaeff* case.

19   Plaintiff intends to pursue and complete discovery regarding, among other

20   things: (i) Defendant Trump's involvement and role in Trump University, and

21   representations and omissions about same; (ii) representations and omissions

22   concerning Trump University to consumers, including all contracts, advertisements,

23   blog postings, websites, and marketing materials; (iii) the selection process for

24   instructors and mentors; (iv) scripts, PlayBooks, forms, and all other written materials

25   used in Trump University workshops, seminars, and courses, or used by Trump

26   University instructors, representatives, or mentors, as well as transcripts and

27   recordings of any presentations; (v) communications between Defendant Trump,

28   Trump University, and Trump Organization, and any government or consumer

984370_1

- 3 -                    3:13-cv-02519-GPC-WVG

Exhibit 10                    000126

1  watchdog agencies (including Defendant's actions in response thereto); (vi)

2  summaries, memoranda, spreadsheets, reports, telephone call logs or audio recordings

3  regarding customer complaints and/or requests for refunds and communications with

4  Trump University students; (vii) all communications and documents between Trump

5  University and Plaintiff; (viii) Defendant's control over Trump University and its

6  operations; (ix) financial documents; (x) the document search and production in

7  *Makaeff*; and (xi) discovery into documents produced about the Live Events, sales and

8  refunds.

9  **(2)    Identity of Possible Deponents**

10  Plaintiff anticipates that he will need to depose some of the following

11  individuals or representatives, although this is a preliminary list which will likely

12  change when Plaintiff starts taking discovery.

| | Names | Areas of Testimony |
|---|---|---|
| 1 | Donald Trump, Defendant | His involvement in Trump University and his misrepresentations and omissions |
| 2 | Michael Sexton, President, Trump University | Trump University's misrepresentations, advertising, marketing, day-to-day business operations, finances, instructors, mentors, etc. |
| 3 | Alan Garten, Assistant General Counsel, Trump Organization | Trump University operations, finances, unlawful and wrongful conduct by Donald Trump and Trump University |
| 4 | George Sorial, Managing Director, Trump Organization | Trump University operations, finances, unlawful and wrongful conduct by Donald Trump and Trump University |
| 5 | Michael Bloom, Chief Marketing Officer at Trump University | Trump University operations, marketing, advertising, courses, materials, instructors, mentors, data analysis, and customer satisfaction |
| 6 | Mark Covais, Director of Operations at the Trump Entrepreneur Initiative (formerly Trump University) | Trump University operations, marketing, advertising, live events, materials, instructors, mentors, and customer complaints, search and production of documents, declarations of students |
| 7 | David Highbloom, Chief Operating Officer at Trump University | Trump University operations, programs, instructors, mentors, and customer satisfaction |

|    | Names | Areas of Testimony |
|----|-------|--------------------|
| 8  | Joseph Katz, Vice President of Marketing, Trump University | Marketing, advertising, Donald Trump's involvement, blogs |
| 9  | Mark Dove, Third-Party Consultant for Trump University | Hiring and training of Trump instructors and mentors, Live Events, misrepresentations |
| 10 | David Early, Third-Party Consultant for Trump University | Trump University Live Events, presentations and "curriculum" materials, hiring and training of Trump University instructors and mentors, misrepresentations |
| 11 | April Neumann, Director of Operations, Trump University from August 2007 to December 2010 | Trump University operations, instructors, speakers, mentors, and customer satisfaction |
| 12 | Paul Reisner,  Program Director at Trump University | Trump University operations, instructors, speakers, mentors, and customer satisfaction |
| 13 | Jason Schauer, Senior Program Director at Trump University from July 2007 to July 2010; Client Advisor and Event Coordinator at Trump University | Trump University programs, services, instructors, mentors, purchases, customer service and attendee satisfaction |
| 14 | Brad Schneider, Director of Service and Sales at Trump University from October 2006 to April 2010 | Trump University programs, sales, customer service and attendee satisfaction |
| 15 | Gillian Bernie, Director of Student Services at Trump University from August 25, 2008 to June 15, 2010 | Trump University operations, instructors, speakers, mentors, sales, customer service and attendee satisfaction |
| 16 | Tiffany Brinkman, Event Program Coordinator at Trump University from October 2007 to August 2010. | Trump University operations, instructors, speakers, mentors, sales, customer service and attendee satisfaction |
| 17 | Adam Eisenstat, Director of Communications at Trump University from May 31, 2005 to May 12, 2006 | Trump University operations, programs, services, marketing and advertising |
| 18 | Eleanor Daniels, Live Event Planner at Trump University from April 1, 2009 to September 15, 2010 | Trump University operations, instructors, speakers, mentors, sales, customer service and attendee satisfaction |
| 19 | Michael Hinson, Senior Sales Coordinator at the Trump Entrepreneur Initiative | Trump University operations, instructors, speakers, mentors, and customer satisfaction |
| 20 | Jack Mahoney, Vice President of Sales and Service at Trump University from 2008-2010 | Trump University operations, instructors, speakers, mentors, and customer satisfaction |
| 21 | Denise Ong, Live Events | Trump University operations, |

| | Names | Areas of Testimony |
|---|---|---|
| | Manager at Trump University | instructors, speakers, mentors, and customer satisfaction |
| 22 | Gerald Martin, Trump University instructor/presenter | Trump University Live Events, speakers, mentors, qualifications, misrepresentations, student satisfaction |
| 23 | Keith Sperry, Trump University instructor/presenter | Trump University Live Events, speakers, mentors, qualifications, misrepresentations, student satisfaction |
| 24 | James Harris, Trump University instructor/presenter | Trump University Live Events, speakers, mentors, qualifications, misrepresentations, student satisfaction |
| 25 | Steve Goff, Trump University instructor/presenter | Trump University Live Events, speakers, mentors, qualifications, misrepresentations, student satisfaction |
| 26 | Steve Gilpin, Trump University mentor, or one or more mentors | Trump University mentorships, qualifications, misrepresentations, student satisfaction |
| 27 | Vikas Sharma, Trump University | Customer satisfaction |
| 28 | Sonya Wren, Trump University student | Student satisfaction, misrepresentations regarding Trump University and mentorship |
| 29 | Corinne Sommer, Trump University | Defendant's misrepresentations; customer satisfaction; Trump University instructors and operations |
| 30 | One or more of Trump University's "Advanced Workshop" instructors | Trump University Live Events, speakers, mentors, qualifications, misrepresentations, student satisfaction |
| 31 | Edward Kramer, NYSED, Bureau of Proprietary School Supervision ("BPSS") | Misrepresentations regarding Trump University's representation of itself as a university, investigation, and communications with Trump University and Donald Trump |
| 32 | Joseph Frey, formerly NYSED | Misrepresentations regarding Trump University's representation of itself as a university, investigation, and communications with Trump University and Donald Trump |
| 33 | Carole Yates, NYSED, BPSS | Misrepresentations regarding Trump University's representation of itself as a university, investigation, and communications with Trump University and Donald Trump |
| 34 | PMK at Better Business Bureau | Complaints by consumers about Trump University |
| 35 | PMK at Texas Attorney General | Complaints by consumers about Trump University, investigation by Texas Attorney General |
| 36 | PMK at New York Attorney | Complaints by consumers about |

Exhibit 10                                    000129

| Names | Areas of Testimony |
|---|---|
| General | Trump University, investigation by New York Attorney General |
| 37  PMK at Florida Attorney General | Complaints by consumers about Trump University, investigation by Florida Attorney General |
| 38  Denise Devoe, Trump University instructor/presenter | Trump University Live Events, speakers, mentors, qualifications, misrepresentations, student satisfaction |
| 39  Christy Duckett, Trump University instructor/presenter | Trump University Live Events, speakers, mentors, qualifications, misrepresentations, student satisfaction |
| 40  PMK at Trump University | Trump University litigation hold, ESI systems and document search and production |

**b.    Defendant's Proposal**

**(1)    Subjects on Which Discovery Is Needed**

Defendant intends to conduct discovery regarding, among other items: (i) plaintiff's and other class members' or opt-outs' agreements with Trump University; (ii) communications between plaintiff/other class members/opt-outs and defendant, communications between plaintiff/other class members/opt-outs and Trump University, and information and materials received by plaintiff/other class members/opt outs from Trump University, including at Trump University programs; (iii) plaintiff's/other class members'/opt-outs' participation in Trump University's and other similar programs and plaintiff's/other class members'/opt-outs' application of information and materials, including transactions; (iv) plaintiff's/other class members'/opt-outs' background, experience and training, including in real estate, investments, workshops and other programs; (v) complaints and postings and/or interactions with any non-defendant entities concerning defendant and/or Trump University; (vi) communications with current and former employees of Trump University; (vii) factual, witness and documentary support for plaintiff's RICO claim in the complaint and Defendant's affirmative defenses to the claim; (viii) communications with defendant and Trump University attendees or other class members/opt-outs; and (ix) Plaintiff's allegations of representations made by

1    Defendant to Plaintiff and the class.  Given Defendant's agreement that *Makaeff* case

2    discovery and deposition testimony can be cross-designated and used in this Action,

3    apart from discovery that may focus specifically on the Plaintiff's RICO allegations

4    against Defendant, Defendant's defenses to the RICO claim and the nationwide aspect

5    of the currently certified class, minimal additional discovery should be necessary in

6    this Action.  "Do-overs" or a "back-door" continuation of discovery in the *Makaeff*

7    case should not be permitted in this Action.

8                    **(2)    Identity of Possible Deponents**

9             Defendant intends to complete the deposition of plaintiff Cohen and take the

10   depositions of other absent class members or persons opting out of the class.

11   Defendant may also take the depositions of: (i) former Trump University employees;

12   and (ii) Trump University attendees and/or absent class members.  Possible third-party

13   deponents include representatives of other programs, companies, and workshops

14   attended by plaintiff or absent class members, plaintiff's business partners, and

15   persons plaintiff or absent class members communicated with regarding Defendant or

16   Trump University.  Defendant has identified specific categories of witnesses and not

17   specific individuals by name, other than Defendant and Plaintiff Cohen because: 1)

18   Defendant identified 49 witnesses in his initial disclosures served on May 28, 2014;

19   2) Defendant contends discovery should be stayed during the period while the Petition

20   for Interlocutory Appeal is pending; and 3) Defendant has not yet completed

21   Plaintiff's deposition, which deposition may provide information regarding the names

22   of other witnesses who may be deposed.  If the Court requires a specific list

23   identifying by name deponents and witnesses, the Court should set a further deadline

24   to occur after the completion of the Plaintiff's deposition and after class notice has

25   been provided and opt-outs identified.  Given Defendant's agreement that *Makaeff*

26   case discovery and deposition testimony can be cross-designated and used in this

27   Action, apart from discovery that may focus specifically on the Plaintiff's RICO

28   allegations against Defendant, Defendant's defenses to the RICO claim and the

nationwide aspect of the currently certified class, minimal additional discovery should be necessary in this Action.  "Do-overs" or a "back-door" continuation of discovery, particularly depositions, in the *Makaeff* case should not be permitted in this Action.

### (3)   Whether Discovery Should Be Conducted in Phases

The Court has previously phased discovery and ordered that all discovery relating to class certification issues be completed by May 20, 2014 (excluding Plaintiff Cohen's deposition on May 29, 2014).

### c.   Cross-Designation of Discovery

As set forth in the parties' May 16, 2014 Joint Discovery Plan, the parties have already agreed that all written discovery and depositions from the *Makaeff* case may be designated for use in either case by either Plaintiff or Defendant, subject to the following caveats: (1) admissibility of the proffered evidence is fully reserved (however neither Plaintiff nor Defendant will object to the deposition or written discovery or deposition on the basis of lack of foundation or authenticity because the discovery was taken in the other case; for sake of clarity, this agreement does not alter the normal rules about objections to the form of the questions at deposition); (2) this agreement does not affect the discovery schedule/cut off previously set in *Makaeff* (meaning Plaintiff and Defendant will not point to this agreement as a basis for extending the discovery cut off in *Makaeff*); and (3) any deposition taken going forward that is taken in *Cohen* and is cross-designated in *Makaeff* counts against the *Makaeff* deposition limit (as well as the *Cohen* Fed. R. Civ. P. limit).[1]

Importantly, Plaintiff expressly reserves his rights pursuant to Rule 30(a)(1) to depose any of the witnesses who have been deposed in *Makaeff* (*e.g.*, Defendant and Michael Sexton).  In addition to his entitlement to do so under the Federal Rules of

---

[1]   Plaintiff has proposed that the parties enter into a stipulation regarding the authenticity and admissibility of documents produced in either *Makaeff* or *Cohen*, which would apply to both cases.  Defendant indicated his willingness to entertain such a stipulation, but must first see the terms to give it due consideration.

1   Civil Procedure without leave of court, Plaintiff Cohen has good reason to elect to

2   take any of these depositions again:  Defendants Trump and Trump University, LLC

3   failed to produce relevant documents prior to the depositions in the *Makaeff* case,

4   including but expressly not limited to, the depositions of Donald Trump, Michael

5   Sexton, Mark Covais, Michael Bloom, and Michelle Gunn.[2]  Plaintiff respectfully

6   submits that it would be manifestly unfair to curtail his right to a fair and full

7   examination of each of the witnesses for use in prosecuting his RICO claim.

8       Defendant is opposed to Plaintiff deposing any witnesses who have already

9   been deposed in *Makaeff*.  Defendant contends that once the *Makaeff* discovery cut off

10  has passed, *Cohen* discovery may not be used in *Makaeff* (otherwise it would render

11  the *Makaeff* discovery cut off meaningless and provide incentive for Plaintiff's

12  counsel to continue *Makaeff* discovery in *Cohen*).  Defendant disputes Plaintiff's

13  characterization of the status of Defendant's document production in the *Makaeff* case

14  and denies there is any failure to produce relevant documents.

15      Plaintiff objects to Defendant's belated attempt to undo his prior agreement

16  about the cross-designation of future discovery taken in *Cohen* for use in the *Makaeff*

17  case.  The parties' agreement was reduced to writing in the May 16, 2014 Joint

18  Discovery Plan and acknowledged by this Court during the May 23, 2014 telephonic

19  hearing that followed.  Plaintiffs in *Makaeff* and *Cohen* relied on the parties'

20  agreement to allow cross-designations of discovery taken in either case in these

21  intervening months by not moving immediately to consolidate the two cases,

22  commence merits discovery in *Cohen*, or re-open all the depositions taken in *Makaeff*.

23  In any event, the parties' agreement reflects the reality under the Federal Rules of

24  Evidence that Plaintiffs will be able to admit deposition testimony in either case at

25  trial.

26  _____

27  [2]   Plaintiff is happy to provide more specifics to the Court upon request.  However,
    Plaintiff proposes that any such information be provided *in camera* so that he is not
28  forced to reveal his deposition strategy to Defendant prior to the depositions.

2. **Number of Depositions (*see* Fed. R. Civ. P. 30(a))**

    a.      **Plaintiff's Proposal**

Number of depositions:  30 party and 10 non-party (the term "party" includes all present and former Trump University employees, instructors, contractors, and the employees or agents of any other Trump-affiliated entity who performed any services related to Trump University).  This number of depositions is necessary because there are dozens of witnesses in this case, yet few can be compelled to testify at trial under Fed. R. Civ. P. 45(c).  In addition to using some depositions to gather information, Plaintiff needs to prepare virtually his entire case through deposition testimony.

Also, Plaintiff proposes that the parties will be given an opportunity to depose any individual who appears on the other side's trial witness list who has not yet been deposed.  Such depositions will be excluded from the deposition limit.

Finally, Plaintiff proposes that any later declarants for Defendant be excluded from the deposition limit.

    b.      **Defendant's Proposal**

Defendant proposes that the limits on the number of depositions imposed by the Federal Rules of Civil Procedure and the Local Rules shall apply in this matter. Plaintiff's request for depositions in excess of the statutory limits is unnecessary in light of the agreement of the parties to allow use of the *Makaeff* case depositions in this action.  Defendant objects to any "exclusions" of "later declarants" from the deposition limits as requested above by Plaintiff.

3. **Number of Interrogatories (*see* Fed. R. Civ. P. 33(a))**

    a.      **Plaintiff's Proposal**

Plaintiff proposes that he be allowed to serve 50 interrogatories to streamline discovery and maximize efficiency.  For example, during Defendant's deposition in the *Makaeff* case, he responded that he "didn't know," or "didn't remember" approximately 40 times.  Interrogatories are the most efficient method to obtain the type of detailed information that some witnesses claim not to recall in a deposition

1   setting, but could easily ascertain through the exercise of reasonable diligence.  The

2   additional interrogatories will also enable a more surgical approach to Plaintiff's

3   depositions (both in terms of selecting deponents and conducting the depositions).

4                       **b.    Defendant's Proposal**

5        Defendant proposes that the limits on the number of interrogatories imposed by

6   the Federal Rules of Civil Procedure and the Local Rules shall apply in this matter.

7             **4.    Number of Requests for Admission ("RFAs")**

8                       **a.    Plaintiff's Proposal**

9        Plaintiff proposes that, in addition to the 25 RFAs permitted pursuant to Civil

10  Local Rule 36.1, he be permitted to serve unlimited RFAs related specifically to the

11  genuineness and admissibility of discovery for trial purposes.  Because Defendant has

12  not yet agreed to enter into any stipulation regarding the authenticity or admissibility

13  of discovery in *Makaeff* or in this case (*see* n.1), Plaintiff respectfully submits that

14  RFAs will provide an efficient and effective method of establishing the authenticity

15  and admissibility of evidence in preparation for any trial in this matter.

16                      **b.    Defendant's Proposal**

17       Defendant proposes that the limits on the number of RFAs imposed by the

18  Federal Rules of Civil Procedure and the Local Rules shall apply in this matter.  While

19  Defendant will review in good faith any future proposed stipulation Plaintiff proposes

20  as to genuineness and admissibility of discovery for trial purposes, this case is not

21  exceptional in the number of documents likely to be produced or likely trial exhibits

22  such that at this time the number of RFAs should be "unlimited."  Defendant is

23  concerned about the undue burden and expense unlimited RFAs would impose in this

24  case.

25            **5.    Issues About Disclosure or Discovery of Electronically
                     Stored Information ("ESI")**

26

27       The parties shall produce documents as TIFF images with load files compatible

28  with industry standard software such as Relativity, Clearwell, Summation, and

1  Concordance or as searchable PDFs.  To the extent that documents exist in formats
2  not readily readable and useable other than in their native format, such as Excel
3  spreadsheets and any documents that will not image properly, the parties shall meet
4  and confer in good faith as to whether such documents shall be produced in native
5  format.  The parties will also meet and confer about appropriate ESI search protocols,
6  including agreement on custodians and search terms, file type, and date ranges.

7              **6.      Witnesses**

8                  **a.      Plaintiff's Witnesses**

9         At the present time, Plaintiff anticipates naming some or all of the deponents
10  listed in the chart above and his initial disclosures as trial witnesses.  However, this
11  list may be revised as discovery continues.  Again, Plaintiff proposes that, given the
12  complex nature of this nationwide class action, the parties agree that, before trial, each
13  side will get an opportunity to depose any witness who appears on a trial witness list
14  and has not yet been deposed.

15                  **b.      Defendant's Witnesses**

16         Defendant's witnesses anticipated at the present time include plaintiff Art
17  Cohen, Mr. Cohen's various partners in businesses, programs, investments and
18  mentoring, Defendant, current and former employees and independent contractors of
19  Trump University, Trump University attendees (including but not limited to, opt-outs
20  or absent class members), and mentors of Trump University programs.  Defendant
21  reserves the right to revise this list as discovery and investigation continue.  Defendant
22  opposes any requirement that Defendant "agree" that un-deposed trial witnesses may
23  be deposed if the opposing party had knowledge of or reasonably could have had
24  knowledge of the trial witness prior to the discovery cut-off.  Such a requirement or
25  order would render any discovery or motion cut-off deadlines meaningless.

26

27

28

984370_1

- 13 -                    3:13-cv-02519-GPC-WVG

Exhibit 10                                         000136

**7.      Categories of Documents**

**a.      Plaintiff's Proposal**

Plaintiff believes that key categories of documents will include, but are not limited to, the following (most of which has been previously requested, and Defendants have produced some of these documents in *Makaeff*):

1.      Class list of all persons who have taken Trump University courses or seminars, description of the course taken, dates of the course, and their contact information;

2.      List or documents evidencing amount paid by every person who has taken Trump University courses or seminars;

3.      Documents regarding any and all partial or full refunds given for Trump University seminars or courses, including whether the refund was awarded by the consumer's credit card company or Trump University, and the basis or reason for the refund;

4.      Documents relating Donald Trump's involvement and role in the Trump University Live Events (including meeting or selecting instructors and designing or reviewing the curricula), or lack thereof, and representations and omissions related to such involvement including in promotional materials, advertisements, marketing guidelines and materials, and other documents;

5.      Donald Trump's control over the enterprise;

6.      Documents relating to the identities of the individuals who were substantively involved in meeting or selecting instructors and designing or reviewing the curricula for Trump University Live Events;

7.      Communications between the NYSED and Trump or Trump University, as well as documents related to Trump or Trump University's response to such communications;

8.      Transcripts of Trump University's "Preview" seminars;

9.      Scripts, PowerPoint presentations, PlayBooks, forms, and all other written materials used in Trump University workshops, seminars, and courses, or used by Trump University instructors, representatives, or mentors for the Live Events and mentorships;

10.     Documents demonstrating Trump University's credentials, or lack thereof;

11.     Summaries, memoranda, spreadsheets, reports, telephone call logs or audio recordings regarding customer complaints and/or requests for refunds and communications with Trump University students;

12.     Customer service call scripts;

13.     Documents reflecting any communications with, inquiry or investigation by the Better Business Bureau or any governmental agency regarding Trump University;

14.     Documents demonstrating the number of consumers who paid for Trump University products and services, by product or service and how much they paid;

15.     Documents reflecting Trump University's Live Events curricula and the processes for developing same;

16.     Organizational charts and documents sufficient to identify every current and former employee of Trump University, and their role and involvement in same; and

17.     Documents containing all communications with, or about, the named Plaintiff, their partners (if any) in the Trump University seminars, and/or their parents.

**b.      Defendant's Proposal**

1.      Documents which support allegations, claims and cause of action in plaintiff's complaint.

2.      Documents reflecting plaintiff's and absent class members or opt-outs' contracts and agreements with defendant and Trump University.

Exhibit 10                                    000138

3.  Documents reflecting plaintiff's and absent class members or opt-outs' participation in defendant's programs and application of information and materials, records of payment, refund requests and responses from defendants or third parties.

4.  Trump University materials received, reviewed or purchased by plaintiff, absent class members or opt-outs at any workshops, seminars, programs or courses.

5.  Documents reflecting plaintiff's, absent class members' or opt-outs' background, experience and training, including in real estate investments, workshops and other programs.

6.  Documents supporting plaintiff's and the class's damages claim.

7.  Documents, blogs, Internet postings or other writings by plaintiff, absent class members or opt-outs regarding defendant.

8.  Documents reflecting BBB postings and ratings regarding defendant or Trump University, and any complaints or criticisms of defendant in any forum.

9.  Documents reflecting credit issues, including plaintiff's or the class's claim of damage to credit, interest fees, late payments, and defendant's purportedly misusing credit information.

10.  All journals, calendars, diaries or other writings regarding defendant and/or contact with Trump University or instructors/mentors, as well as contacts, meetings or other communications between plaintiff/ absent class members/ opt-outs and defendant or Trump University.

11.  All communications to/from current or former employees and/or Trump University attendees or class members.

12.  All statements, declarations or affidavits of current or former employees or attendees of Trump University.

13.  All real estate or financial transactions considered, attempted or discussed by or between plaintiff/absent class members/ opt-outs and defendant or Trump University.

14.     Defendant may seek additional documents, depending on Plaintiff's discovery responses and information obtained from discovery.  For purposes of clarity, Defendant does not agree that he has made any representations about the production of a "class list" applicable to this case as stated by Plaintiff in his portion above.

**H.      Prompt Settlement and Alternative Dispute Resolution**

Though the parties had previously indicated that they would attend a settlement conference with Judge Gallo after the ruling on the motion for class certification, Defendant now requests that any such settlement conference take place after the Ninth Circuit resolves his Rule 23(f) petition for permission to appeal the Court's class certification order.  Plaintiff does not object to waiting for a settlement conference, but as indicated above, objects to waiting for discovery.

**I.      Expert Evidence and *Daubert* Motions**

**1.      Plaintiff's Position**

Plaintiff does not anticipate any *Daubert* issues at this time, but reserves his right to designate experts in this case.

**2.      Defendant's Position**

It is premature to anticipate expert evidence issues or *Daubert* motions until after expert designations occur.

**J.      Threshold Legal Issues that May Be Resolved by Summary Judgment**

**1.      Plaintiff's Position**

Plaintiff believes the deceptiveness of certain of Defendant's representations may be appropriate for partial summary judgment.

**2.      Defendant's Position**

Defendant intends to bring a motion for summary judgment at the earliest opportunity in the case.

**K.   Issues About Claims of Privilege**

**1.   Plaintiff's Position**

Plaintiff expects that the parties will exchange detailed privilege logs, which will be addressed in the protective order to be negotiated between the parties.

**2.   Defendant's Position**

The parties shall have the right to claw back inadvertently produced privileged or work-product documents.  The parties agree to provide privilege logs for document productions within 30 days of a production in which privileged documents were withheld.   The parties shall have no obligation to log privileged attorney-client communications or attorney work product related to this matter that were created after the time the *Makaeff* case was filed.  Further, the parties agree to abide by the procedure set forth in Fed. R. Civ. P. 26(b)(5)(A) and (B) regarding privilege logs and information inadvertently produced in discovery that is subject to a claim of privilege or protection as trial preparation material.  The parties will seek to negotiate a Stipulated Protective Order and submit it to the Court in due course that will address these issues in detail.  If a dispute as to a claim of privilege remains after service of a privilege log, the parties will meet and confer in a good faith attempt to resolve any differences.  If the parties cannot agree upon resolution, the party challenging the privilege designation will seek this Court's assistance in resolving any outstanding dispute according to the procedures set forth in this Court's standing orders.

Further, the parties shall agree that Fed. R. Civ. P. 26(b)(4)(B) and (C) relating to work-product protection of expert-report drafts and communications will apply to this case.  For avoidance of doubt, the parties shall agree that draft reports, notes, or outlines of draft expert reports are exempt from discovery.

**L.   Protective Order**

The parties agree that a protective order should be entered in the case and will submit a stipulated protective order to the Court.

1    **M.    Pending Motions**

2        There are no pending motions.  However, Plaintiff intends to circulate a draft

3    stipulation for class notice to Defendant in the coming week.  If the parties are unable

4    to reach agreement, Plaintiff will file a motion for class notice.

5    **N.    Matters that Deserve Special Attention of the Court**

6        **1.    Coordination of *Makaeff* and *Cohen***

7    **Plaintiff's Position:**  Plaintiff posits that the Court should align the scheduling

8    of the related *Makaeff* and *Cohen* cases, and extend the *Makaeff* deadlines to be co-

9    extensive with the deadlines set forth below for *Cohen*.  As pointed out above, the

10   deadlines in *Makaeff* should also be extended because Defendants in that case are still

11   searching for, and producing, documents that Plaintiffs requested long ago.[3]  The

12   alleged underlying scheme is the same, the facts and evidence have substantial

13   overlap, the parties and Classes overlap in certain states, the counsel in both cases are

14   identical, and the witnesses are nearly identical.  The parties have already agreed that

15   any depositions taken may be cross-designated in either case.  Thus, the discovery cut

16   off in *Makaeff* would be artificial, and the schism of different deadlines will work

17   mischief at depositions and in written discovery by creating disputes and needless

18   distractions as to whether the questions or other discovery requests relate to issues in

19   *Cohen* versus the issues in *Makaeff*.  Further, it is likely that any motions for summary

20   judgment would address overlapping factual and legal issues and therefore should also

21   be coordinated.  Most significantly, there is no reasonable debate that the *Makaeff* and

22   *Cohen* actions should be tried together, as to do otherwise would be a needless waste

23

24   _____
     [3]    For example, at the November 4, 2014 deposition of the former Chief Marketing
25   Officer, Michael Bloom, confirmed that Trump University undertook extensive testing
     and analytics about its target market and advertising.  Plaintiffs had requested those
26   documents on November 20, 2012, but Defendants had not yet produced them.  As a
     result, Plaintiffs did not have the relevant documents for Mr. Bloom's deposition, and
27   they still do not have those documents weeks before the discovery cut off.  Further,
     the parties currently have a dozen depositions scheduled in locations scattered around
28   the country prior to the current *Makaeff* discovery cut off of December 19, 2014.

1    of judicial time and resources.  There is no good reason why the schedules of these

2    two cases should not be aligned.

3           **Defendant's Position:**  Defendant opposes any schedule which seeks to

4    consolidate for trial the much earlier-filed *Makaeff* case with the later-filed *Cohen*

5    case.  The District Court previously rejected the *Makaeff* plaintiff's attempts to assert

6    the claims in this action in the *Makaeff* case.  The parties in the two cases are not

7    identically aligned, the nature of the claims and applicable law are substantially

8    different and even Plaintiff's class is substantially different than the *Makaeff* classes.

9    While the cases may be "related" factually to some extent, legally they are

10   significantly different.  Defendant should not be prejudiced by a compressed case

11   schedule in *Cohen*.

## 2.    Defendant's Rule 23(f) Petition

13          **Plaintiff's Position:**  Though Defendant has not moved for a stay, he is taking

14   the position that discovery should be stayed indefinitely pending the outcome of his

15   Rule 23(f) petition.  Plaintiff objects to prolonging the stay of discovery in this case,

16   and will oppose any motion, if and when Defendant files it, in due course.  However,

17   this Joint Discovery Plan is not the appropriate vehicle for raising the issue.  Rule 23

18   specifically provides that any stay must be granted, if at all, by the district judge or

19   court of appeals.  *See* Fed. R. Civ. P. 23(f).  And, there is no reason to believe any

20   such motion would be successful in any event as Rule 23(f) specifically provides:

21   "An appeal does ***not*** stay proceedings in the district court unless the district judge or

22   the court of appeals so orders."  Fed. R. Civ. P. 23(f) (emphasis added).  "Rule 23(f)

23   contemplates that in most cases discovery (at the very least, merits discovery) will

24   continue notwithstanding the pendency of an appeal of the class certification order."

25   *Prado-Steiman v. Bush*, 221 F.3d 1266, 1273 n.8 (11th Cir. 2000).  Notably, Judge

26   Curiel recently denied a motion for stay pending the outcome of a Rule 23(f) petition

27   challenging denial of class certification.  *See Stiller v. Costco Wholesale Corp.*, No.

28   3:09-cv-2473-GPC-BGS, 2014 U.S. Dist. LEXIS 140435, at *8-*9 (S.D. Cal. Oct. 1,

Exhibit 10

1   2014) (Curiel, J., presiding) (reasoning that plaintiffs had not presented any evidence

2   of likelihood of success on their Rule 23(f) petition).

3         Mr. Cohen's RICO claim has been upheld by the Court against attack on

4   Defendant's motion to dismiss so the scope of his claim is certain.  Moreover, his

5   claim has been certified for class treatment precisely because regardless of whether

6   Plaintiff is proving his claim individually or for all class members, the proof will be

7   the same.  Regardless of the outcome of the Rule 23(f) petition, Mr. Cohen's case is

8   not going anywhere.  There is no justification for a continued stay of merits discovery.

9         **Defendant's Position:**  Defendant contends the Court's current stay on

10  discovery should be extended while the Petition for Permission to file Interlocutory

11  Appeal is pending.  As a practical matter, the parties are completing *Makaeff* case

12  discovery given that case's impending extended discovery cut-off date of December

13  19, 2014.  Since that discovery can be used in this case by the parties' agreement (see

14  above), there is no prejudice to Plaintiff in this continuation of the existing stay on

15  discovery.  If the Petition is granted, given the burden and expense of the anticipated

16  discovery relating to class issues, Defendant will, if necessary, then seek an order

17  staying the entire case pending the appeal.

18        **O.    Consent to Jurisdiction of Magistrate Judge**

19        The parties are willing to explore consent to the jurisdiction of the assigned

20  Magistrate Judge for trial.

21        **P.    Jury Demand**

22        Plaintiff did not demand a jury.  Defendant made a timely jury demand in his

23  Answer.

24        **Q.    The Parties' Proposed Schedule**

25        The parties have reached agreement on all dates except the deadline to amend

26  the complaint or add parties.[4]  Although Plaintiff has no current plans to amend his

27  _____

28  [4]   Defendant proposes the Court refrain from setting case dates and continue the stay
      of all discovery pending resolution of the Petition for Interlocutory Appeal; however if

984370_1

Exhibit 10                                  000144

1  complaint or add parties, he reserves the right to do so until after some discovery.

2  Accordingly, he requests up until March 13, 2015, to amend his complaint or add

3  parties.  Defendant asserts the deadline should be no later than February 15, 2015.

| Event | Proposed Date |
|---|---|
| Deadline to amend complaint or add parties | *See* discussion above. |
| Completion of Fact Discovery | July 2, 2015 |
| Simultaneous Designation of Expert Witnesses (if at all) | May 8, 2015 |
| Simultaneous Supplemental Designation of Expert Witnesses (if at all) | May 29, 2015 |
| Completion of Expert Discovery (if at all) | August 3, 2015 |
| Deadline to file dispositive motions | August 31, 2015 |
| Settlement Conference | Set at the Court's convenience. |
| Pretrial Conference Date | Set at the Court's convenience. |

DATED:  November 14, 2014          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE
RACHEL L. JENSEN

s/ Rachel L. Jensen
RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL J. PFEFFERBAUM
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco. CA  94104

the Court declines to do so at this time, Defendant proposes this alternative schedule.
As stated above, Plaintiff objects to any stay of discovery or otherwise and asserts that
this discovery plan is not the appropriate vehicle to raise the issue. *See supra* at §N.2.

1                              Telephone:  415/288-4545
                              415/288-4534 (fax)

2

3                               ROBBINS GELLER RUDMAN
                                & DOWD LLP

4                               MAUREEN E. MUELLER
                              120 East Palmetto Park Road, Suite 500

5                               Boca Raton, FL  33432
                              Telephone:  561/750-3000

6                               561/750-3364 (fax)

                              ZELDES HAEGGQUIST & ECK, LLP

7                               AMBER L. ECK
                              HELEN I. ZELDES

8                               ALREEN HAEGGQUIST
                              AARON M. OLSEN

9                               625 Broadway, Suite 1000
                              San Diego, CA  92101

10                             Telephone:  619/342-8000
                            619/342-7878 (fax)

11                             Class Counsel

12 DATED:  November 14, 2014        FOLEY & LARDNER LLP
                            NANCY L. STAGG

13                             BENJAMIN J. MORRIS

14

                                  s/ Nancy L. Stagg

15                             NANCY L. STAGG

16                             3579 Valley Centre Drive, Suite 300
                            San Diego, CA 92130

17                             Telephone:  858/847-6750
                            858/792-6773 (fax)

18                             Attorneys for Defendant

19

20                          **ECF CERTIFICATION**

21        The submitting attorney attests that she has obtained concurrence regarding the

22 lodging of this document from the signatories of this document.

23        DATED:      November 14, 2014

24

25                                    s/ Rachel L. Jensen
                            RACHEL L. JENSEN

26

27

28

**Robbins Geller**
**Rudman & Dowd LLP**

| Atlanta | Melville | Philadelphia | San Francisco |
|---|---|---|---|
| Boca Raton | New York | San Diego | Washington, DC |

Rachel L. Jensen
RachelJ@rgrdlaw.com

August 15, 2012

VIA U.S. MAIL

Records Access Officer
NYS Education Department
89 Washington Avenue
Room 121 EB
Albany, NY 12234

Re:     *Freedom of Information Law Request for Records*

Dear Records Access Officer:

Under the provisions of the New York Freedom of Information Law, Article 6 of the Public Officers Law, I hereby request a copy of records or portions thereof concerning Trump University, LLC ("Trump University") and/or Trump Entrepreneur Initiative LLC ("Trump Entrepreneur Initiative") between April 30, 2006, through present. Specifically, I am interested in all complaints made by consumers regarding Trump University and/or Trump Entrepreneur Initiative, all responses to these complaints, all investigations regarding Trump University and/or Trump Entrepreneur Initiative, and all documents provided by Trump University and/or Trump Entrepreneur Initiative to the New York State Department of Education.

I understand there is a fee of $.25 per page for duplication of records requested. If the fee exceeds $250, please contact me before duplicating the records.

Please exercise your discretion to release the maximum amount of information allowable. If for any reason any portion of my request is denied, please inform me of the reasons for the denial in writing and provide the name and address of the person or body to whom an appeal should be directed.

As you know, the Freedom of Information Law requires that an agency respond to a request within five business days of receipt of a request. Therefore, I would appreciate a response as soon as possible and look forward to hearing from you shortly. I can be reached at the above number or email if you need to discuss this request, or if I might assist you in your search for specific information.

Thank you in advance for your cooperation.

Very truly yours,

RACHEL L. JENSEN

RLJ:hsb

744851_1
655 West Broadway, Suite 1900      San Diego, CA 92101      Tel 619 231 1058      Fax 619 231 7423      rgrdlaw.com

202   115

NYSED 000084

Exhibit 11                                        000147