ROBBINS GELLER RUDMAN
   & DOWD LLP
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                                      Plaintiffs,<br><br>     vs.<br><br>TRUMP UNIVERSITY, LLC, et al.,<br><br>                                      Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFF/COUNTER DEFENDANT TARLA MAKAEFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF BILL OF FEES AND COSTS |

[Caption continued on following page.]

991135_1

1    TRUMP UNIVERSITY, LLC,                    )
                                              )
2                        Counterclaimant,     )
                                              )
3         vs.                                  )
                                              )
4    TARLA MAKAEFF, et al.,                    )
                                              )
5                        Counter defendants.  )
                                              )
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

991135_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.    ARGUMENT ....................................................................................... 2

    A.    The Requested Attorneys' Fees Are Reasonable Under the Unique Circumstances of This Long Battle with Trump .................... 2

        1.    The Sworn Supplemental Declarations of Counsel Reinforces the Reasonableness of the Hours Spent .................. 3

        2.    The Importance of the Anti-SLAPP Proceedings Supports the Reasonableness of the Time Spent ........................ 7

        3.    Trump's Opposition Only Shows What Was Necessary to Lose .................................................................................... 8

        4.    Collaboration Was Essential to Makaeff's Success ................. 10

    B.    The Court Should Reject Trump's Proposed Reductions to Time Spent ........................................................................................ 11

    C.    The Costs Are Reasonable ................................................................. 13

III.    CONCLUSION ................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ackerman v. W. Elec. Co.*,
   643 F. Supp. 836 (N.D. Cal. 1986), *aff'd*, 113 F.R.D. 143 (9th Cir. 1988) ......... 4

*Brandt v. Schal Assocs., Inc.*,
   960 F.2d 640 (7th Cir. 1992) ................................................................. 1

*Campbell v. Catholic Cmty. Servs.*,
   No. C10-1579-JCC, 2012 U.S. Dist. LEXIS 190096
   (W.D. Wash. Aug. 8, 2012)............................................................... 5, 12

*Chabner v. United of Omaha Life Ins. Co.*,
   No. C-95-0447 MHP, 1999 U.S. Dist. LEXIS 16552
   (N.D. Cal. Oct. 12, 1999) ...................................................................... 9

*Cohen v. Trump*,
   No. 3:13-cv-2519-GPC-WVG .............................................................. 10

*Ferland v. Conrad Credit Corp.*,
   244 F.3d 1145 (9th Cir. 2001) ........................................................ 2, 5, 9

*Frevach Land Co. v. Multnomah Cnty.*,
   No. CV-99-1295-HU, 2001 U.S. Dist. LEXIS 22255
   (D. Or. Dec. 18, 2001) ....................................................................... 11

*Gonzalez v. South. Wine & Spirits of Am., Inc.*,
   555 F. App'x 704 (9th Cir. 2014)........................................................... 3

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011), *aff'd*, 473 F. App'x 716
   (9th Cir. 2012) ...................................................................................... 4

*Jaffee v. Redmond*,
   142 F.3d 409 (7th Cir. 1998)............................................................... 12

*Johnson v. Univ. Coll. of Univ. of Ala.*,
   706 F.2d 1205 (11th Cir. 1983) ............................................................. 9

1

2                                                                                    **Page**

3

4    *Ketchum v. Moses*,
       24 Cal. 4th 1122 (2001) .................................................................. 2, 3

5

6    *Lobatz v. U.S. West Cellular of Cal., Inc.*,
       222 F.3d 1142 (9th Cir. 2000) ............................................................ 4

7

8    *Makaeff v. Trump Univ., LLC*,
       715 F.3d 254 (9th Cir. 2013) .............................................................. 8

9    *Mangold v. Cal. Pub. Utils. Comm'n*,
       67 F.3d 1470 (9th Cir. 1995) .............................................................. 3

10

11   *Martino v. Denevi*,
       182 Cal. App. 3d 553 (1986) .............................................................. 4

12

13   *Mirabal v. Gen. Motors Acceptance Corp.*,
       576 F.2d 729 (7th Cir. 1978) .............................................................. 7

14

15   *Monroe v. United Air Lines, Inc.*,
       565 F. Supp. 274 (N.D. Ill. 1983) ..................................................... 11

16

17   *Norman v. Housing Auth. of Montgomery*,
       836 F.2d 1292 (11th Cir. 1988) ........................................................... 9

18

19   *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
       743 F. Supp. 2d 1136 (C.D. Cal. 2010) ........................................ 10, 11

20

21   *Raining Data Corp. v. Barrenechea*,
       175 Cal. App. 4th 1363 (4th Dist. 2009) ............................................. 4

22   *Samuel v. Univ. of Pittsburgh*,
       80 F.R.D. 293 (W.D. Pa. 1978) ........................................................... 8

23

24   *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*,
       668 F.3d 677 (9th Cir. 2012) .............................................................. 5

25

26   *Stern v. Gambello*,
       480 F. App'x 867 (9th Cir. 2012) ........................................................ 4

27

28

1
2                                                                                    **Page**
3
*Sukenic v. County of Maricopa*,
    No. CV 02-02438-PHX-CRP, 2004 U.S. Dist. LEXIS 31837
    (D. Ariz. July 21, 2004) ..................................................................................... 12

*Thompson v. Barrett*,
    599 F. Supp. 806 (D.D.C. 1984) ........................................................................ 6

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ............................................................................ 12

*Williamsburg Fair Hous.Comm'n v. Ross-Rodney Hous. Corp.*,
    599 F. Supp. 509 (S.D.N.Y. 1984) ................................................................... 10

**STATUTES, RULES AND REGULATIONS**

California Code of Civil Procedure
    §1033.5(a)(3) ...................................................................................................... 13

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

Trump did not hesitate to pull the trigger on his million-dollar counterclaim against student-victim Tarla Makaeff, but now that it has backfired, Trump complains Makaeff's counsel responded with too much fire power.  But, as the Seventh Circuit put it, courts have "little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was only firing blanks." *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 648 (7th Cir. 1992).  Given the near certainty that a loss would have bankrupted Makaeff, and the importance to consumers nationwide (in this case and others) that class representatives are not bullied into dropping class actions, Class Counsel[1] had to give it their all.[2]

Trump's opposition (Dkt. No. 335) does not prove Makaeff could have invested something less to ensure victory – all it shows is what it took to lose.  This fact is amply demonstrated by Trump's misleading comparison of time billed by former counsel David Schneider (and not in-house counsel Jill Martin who argued the Ninth Circuit appeal), along with absurdly low proposals for various tasks.  For example, Trump asserts counsel should have spent four hours to prep Makaeff for her deposition, but that is less time than it takes to drive to Los Angeles for the deposition and back, much less do a thorough job prepping Makaeff.  Further, due to Schneider's contemptuous treatment of Makaeff at her prior three deposition sessions, Makaeff balked at the prospect of being subjected to a ***fourth*** deposition, and only agreed to sit for another deposition under very specific conditions, including her counsel's willingness to spend several days prepping and defending her.[3]

---

[1]   Class Counsel refers to Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Zeldes Haeggquist & Eck, LLP ("ZHE").

[2]   Trump concedes the purpose of his SLAPP suit was essentially to "convince[] Makaeff that settlement was the preferred course of action."  Dkt. No. 335 at 2 n.6. Given that the outcome of the SLAPP suit could have impacted the underlying class action, Class Counsel were duty bound to defend against it to the best of their abilities.

[3]   The parties (through Trump's in-house counsel, Jill Martin) engaged in negotiation over whether, and on what terms, Makaeff's fourth deposition would take place.

In the end, Makaeff and her counsel fought this battle to win it and were able to do so only after a long and arduous journey.  As set forth below, Makaeff's additional information provided herein and the sworn declarations of Class Counsel demonstrate that the number of hours spent by her attorneys on each task was reasonable. Alternatively, to the extent that this Court reduces any of the hours, Makaeff urges the Court to offset it by a multiplier for a high risk of non-payment over the past four years.  Makaeff should be awarded the amount sought in her Bill of Fees and Costs.[4]

## II.   ARGUMENT

### A.   The Requested Attorneys' Fees Are Reasonable Under the Unique Circumstances of This Long Battle with Trump

As this Court is aware, a successful SLAPP defendant is entitled to mandatory attorney fees typically determined by a lodestar figure. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001). "[I]n most cases, the lodestar figure is presumptively a reasonable fee award." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). Further, an upward multiplier is appropriate to offset any reduction in the time spent or the hourly rates here.  In arguing "[i]f this Court declines to apply Ninth Circuit law [by applying a multiplier], which Trump University believes would be in error," Trump actually invites this Court to commit error. *See* Dkt. No. 335 at 18.  In fact, the Ninth Circuit recently held:  "The district court abused its discretion in applying federal law instead of California substantive law to the calculation of attorney's fees.

---

Those negotiations, which ultimately resulted in specific stipulations regarding the time, place and manner of the deposition, took over four hours to iron out, including a call to Judge Gallo's Cambers, before prepping could even take place. *See* Supplemental Declaration of Rachel L. Jensen in Support of Makaeff's Bill of Fees and Costs ("Jensen Supp. Decl."), ¶¶33-35, filed concurrently herewith.

[4]   To further demonstrate the reasonableness of the hours requested, Makaeff seeks only the amount in her original Bill of Fees and Costs and does not claim most of the time incurred for her bill or other proceedings since then.  Jensen Supp. Decl., ¶36; Dkt. No. 331-2, ¶31.  This means Makaeff is not charging Trump for most of the time preparing the Bill of Fees and Costs, analyzing Trump's opposition papers and meritless motions to strike, filing the notice of deficiency, and dealing with meritless discovery about fees and costs since then. *Id.*  However, if Trump creates any further vexatious litigation on fees and costs, Makaeff will add it to her bill in the future.

Because the district court exercised diversity jurisdiction over this case, California substantive law applies to the calculation of the attorney fee award." *Gonzalez v. South. Wine & Spirits of Am., Inc.*, 555 F. App'x 704 (9th Cir. 2014) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)).   California law applies in this diversity action and permits a multiplier in this contingency case. *See* Dkt. No. 331 at 13 (citing *Ketchum*, 24 Cal. 4th at 1132).

### 1. The Sworn Supplemental Declarations of Counsel Reinforces the Reasonableness of the Hours Spent

Pursuant to this Court's Order, Makaeff submits this brief and two detailed supplemental declarations of counsel, laying out the tasks and the time spent on each task by the various attorneys and paralegals involved in this case. *See* Dkt. No. 358 at 5.[5]  Specifically, in the sworn declarations of her counsel, Makaeff sets forth the total number hours spent by each of the attorneys successfully prosecuting this anti-SLAPP motion, broken out into 25 discrete tasks.   *See* Jensen Supp. Decl., ¶¶5-29; Supplemental Declaration of Amber L. Eck in Support of Makaeff's Bill of Fees and Costs ("Eck Supp. Decl."), ¶¶4-31, filed concurrently herewith.  These tasks are laid out in chronological order and, further within each task, counsel provides the specific amount of time spent by each billing professional on that task and the date ranges when he or she performed such task.  Thus, the Court can discern, for example, that on the initial research and work up of the anti-SLAPP motion, 6 attorneys at the 2 firms spent from 2.5 to 84.25 hours and 2 paralegals spent a combined 21.5 hours on this task during various date ranges from May 27 to July 1, 2010. *See* Jensen Supp. Decl., ¶5; Eck Supp. Decl., ¶4.

The information provided in the supplemental declarations, along with the information previously provided to the Court in connection with Makaeff's Bill of Fees and Costs, is sufficient to show the reasonableness of the hours spent and warrant

---

[5]   Makaeff remains willing to provide any additional information – including time entries upon request.

an award of the requested attorneys' fees.  In anti-SLAPP motions, "[t]he law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records."  *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375 (4th Dist. 2009); *Stern v. Gambello*, 480 F. App'x 867, 870 (9th Cir. 2012) (affirming award of attorneys' fees based on counsel's summaries of time spent and fees applicable for the services rendered); *Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 863 (N.D. Cal. 1986) ("the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all of the factors necessary to determine a reasonable attorney's fee award"), *aff'd*, 113 F.R.D. 143 (9th Cir. 1988). Accordingly, Class counsel's individual time entries are not necessary to support an award of fees and expenses.  *See Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1149 (9th Cir. 2000) (affirming attorneys' fee award without reviewing "class counsel's contemporaneous time records"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644-45 (S.D. Cal. 2011) (granting attorneys' fees based on attorney declarations from each firm attesting to the number of hours worked by each member of the firm and the expenses they incurred), *aff'd*, 473 F. App'x 716 (9th Cir. 2012); *Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1986) (finding testimony of attorney as to total hours work sufficient without time records).  Trump admits as much.  *See* Dkt. No. 335 at 3 n.9 & 6; *see also* Dkt. No. 336 at 2 n.1.

While in the aggregate, the total number of hours spent on the anti-SLAPP matter may appear high at first blush, a review of the sheer number of obstacles that had to be overcome, as well as the work that each motion and other proceeding entailed, coupled with the reality that Makaeff's counsel needed to perform ***better*** than opposing counsel to prevail, the time was not only reasonable but necessary to zealously represent Makaeff against Trump's million-dollar counterclaim.[6]  Indeed,

---

[6]    14.25 hours of time entries contain 2 different tasks (*e.g.*, work on the opening appeal brief and conferencing with amici) without specifying the time devoted to each and, therefore, cannot be definitely assigned to only one task. *See* Jensen Supp. Decl., ¶28  However, that does not negate the reasonableness of these hours. "[L]awyers are

1    the Ninth Circuit has cautioned "the number of hours expended in cases that are

2    relatively straightforward may often seem high if considered in the aggregate" but a

3    closer look reveals "the reason for the seemingly high fee was not inefficiency, but

4    careful compliance with the attorneys' responsibilities." *Ferland*, 244 F.3d at 1150-

5    51. This is absolutely true in this case.

6      Here, the hours spent by Makaeff's counsel were necessary under the

7    circumstances to achieve the precedent-setting result in the Ninth Circuit against a

8    celebrity like Donald Trump and his so-called "University," whose million-dollar

9    SLAPP suit against a class representative is virtually without precedent and whose

10   litigation abuses are well documented. *See* Dkt. No. 312 at 1 & n.1. Makaeff's

11   attorneys are some of the finest litigators in their fields and they followed best

12   practices at every juncture. *See* Dkt. No. 331-3, ¶¶5-11; Dkt. No. 331-1, ¶¶8-11 & Ex.

13   1 at 22-34; Dkt. No. 331-2, ¶¶2-3, 10-14 & Ex. 1 at 1-6. As firms that regularly

14   litigate consumer fraud actions, the outcome of the SLAPP proceeding had critical

15   precedential value going forward with respect to the ability of consumers to bring

16   class action lawsuits without fear of counterclaims designed solely to intimidate them

17   into silence.

18     For example, some of the most significant work in the anti-SLAPP litigation

19   revolved around the research, strategizing, drafting, and filing of the 75-page opening

20   appeal brief to the Ninth Circuit and crucial accompanying request for judicial notice

21   on behalf of Makaeff. Once the district court denied the anti-SLAPP motion, Class

22   Counsel knew that they had to do what it took to win before the Ninth Circuit.

23   Convinced that they were in the right, Robbins Geller and ZHE attorneys and other

---

24   not required to record in great detail how each minute of their time is spent on a case;
     rather, they must only provide enough evidence to show that the effort expended
25   during those hours was reasonable." *Campbell v. Catholic Cmty. Servs.*, No. C10-
     1579-JCC, 2012 U.S. Dist. LEXIS 190096, at *13-*15 (W.D. Wash. Aug. 8, 2012)
26   (refusing to reduce hours for "block billing") (citing *Secalt S.A. v. Wuxi Shenxi
     Constr. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012)). Makaeff is willing to provide
27   these entries to the Court, or alternatively reduce her Bill of Fees and Costs for these
28   14.25 hours.

professionals poured themselves into the appeal, conducting due diligence on its viability, researching and analyzing the law and facts, preparing the lengthy briefing and requests for judicial notice, followed by review and revision with input from other attorneys as well as outside experts, then reviewing, editing, paralegaling and finalizing the briefing.   Dkt. No. 331-1, ¶¶22-35.   Eric Isaacson, an immensely accomplished and revered appellate attorney with more than 20 years of experience, "immers[ed] [him]self in the treatises and the extensive and sometimes complicated case law dealing with defamation and with Anti-SLAPP litigation." *See* Dkt. No. 331-3, ¶¶6-7 (listing 38 published appellate opinions in which Isaacson has handled briefing, argument or both), ¶14.[7]   Isaacson researched and analyzed the legality of Trump's business practices – as this was the subject of the purported defamation claim and reviewed texts related to marketing techniques to better contextualize Makaeff's statements that Trump used high-pressure sales techniques.  *See id.*, ¶15.  All in all, Robbins Geller and ZHE invested 367 hours to ensuring these Ninth Circuit filings were compelling and of the highest quality.  For a project of this magnitude and import, such a time investment is wholly reasonable to produce the positive result obtained at the Court of Appeals level.  *See, e.g.*, *Thompson v. Barrett*, 599 F. Supp. 806, 811 (D.D.C. 1984) (finding 1,600 billable hours to write opening and reply appellate briefs and to prepare for and argue the appeal to be reasonable).  In sum, the time invested to masterfully convince the Ninth Circuit to overturn the district court's denial, and not reverse the panel decision *en banc*, was reasonable.

Not only does a review of each task reinforce the reasonableness of Makaeff's Bill of Fees and Costs, but the supplemental declarations reveal the sheer number of tasks, all of which counsel were forced to undertake due to Trump's scorched-earth

---

[7]    Trump's position – devoid of citation – that Isaacson's time should be reduced because he had not previously handled anti-SLAPP litigation is meritless.  *See* Dkt. No. 335 at 11.  Isaacson has handled multiple constitutional law issues at the appellate level.  *See* Dkt. No. 331-3, ¶14.  That he had not previously handled this particular first-amendment issue and thus immersed himself fully into its nuances and complexities to produce a prevailing brief provides no basis to reduce a fee award.

1    tactics in the filing and then refusing to withdraw the counterclaim and the

2    proceedings that followed.  For example, Makaeff was forced to oppose Trump's

3    petition for rehearing *en banc*; oppose Trump's motion to stay the underlying class

4    case, despite providing defense counsel with clear authority contrary to their position;

5    reply to Trump's opposition to Makaeff's request for judicial notice; respond to

6    Trump's opposition to Makaeff's supplemental request for judicial notice; prepare

7    Makaeff for a ***fourth*** deposition with two attorneys present due to Makaeff's concerns

8    over the conduct of defense counsel; and reply to Trump's opposition brief on actual

9    malice.  Dkt. No. 331-1, ¶¶23, 26, 28, 37, 39; Eck Supp. Decl., ¶¶11, 17, 20, 23, 28.

10        Even after this Court struck the counterclaim, Trump has shown no signs of

11   abatement.  After Makaeff filed her Bill of Fees and Costs, Trump filed five meritless

12   motions to strike all the declarations submitted in support of the Bill.  *See* Dkt. No.

13   335.  And after the Court issued its November 18, 2014 Order, Trump served

14   unauthorized subpoenas on both law firms representing Makaeff, and requests for the

15   production of documents on Makaeff, seeking virtually every shred of paper

16   referenced in counsel's prior declarations.  *See* Jensen Supp. Decl., ¶37.  This

17   discovery required Class Counsel to research, prepare and serve objections and

18   responses to the subpoenas, meet and confer with Trump's counsel about the

19   discovery requests and Makaeff's intention to move to quash the subpoenas, and

20   participate on calls both with Judge Gallo's Chambers and this Court.  *See* Jensen

21   Supp. Decl., ¶¶38-39.  Notably, even though Makaeff does not request most of the

22   attorneys' fees and expenses incurred since the Court struck the counterclaim, *see id.*,

23   ¶30, Trump should not be rewarded for its tactics since it brought it on itself.

### 2.    The Importance of the Anti-SLAPP Proceedings Supports the Reasonableness of the Time Spent

25        The significance of the Ninth Circuit appeal and its precedential value in the

26   context of anti-SLAPP litigation necessitated a greater investment of time and

27   resources for Makaeff's counsel than for defense counsel.  *Mirabal v. Gen. Motors*

*Acceptance Corp.*, 576 F.2d 729, 731 (7th Cir. 1978) ("a given case may have greater precedential value for one side than the other"); *Samuel v. Univ. of Pittsburgh*, 80 F.R.D. 293, 294 (W.D. Pa. 1978) (same).   A successful counterclaim against Makaeff would have had a chilling effect on the underlying class case – where any potential lead plaintiff willing to step forward could face the threat of ruinous litigation – and in consumer fraud cases nationwide.   The precedential value of the appeal was evidenced by the filing of amicus briefs by the American Civil Liberties Union Foundation of San Diego and Imperial Counties ("ACLU") and the Consumer Attorneys of California.   The Ninth Circuit selected the case for a special sitting of the court at the University of California Irvine School of Law.   Dkt. No. 331-1, ¶30.   And, the case produced a published decision which has already been widely cited by dozens of other decisions.   Jensen Supp. Decl., ¶40 & Exs. 1-2.

The stakes were then raised further by two concurring opinions, including one by the Chief Judge, that indicated a desire to overturn Ninth Circuit precedent and thereby reverse the Ninth Circuit's opinion in an *en banc* setting.   *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272-76 (9th Cir. 2013).   These federalism issues dramatically raised the stakes in opposing Trump's *en banc* petition and resulted in a fresh round of extensive research and analysis as well as a new round of consultation with amici.   Trump's suggestion that the opposition to the *en banc* petition should have taken just 20 hours demonstrates that their figures have absolutely no connection to reality.   Dkt. No. 335-1, Ex. 1 at 000013.   Makaeff faced a clear indication that the Chief Judge sought to abolish the legal precedent supporting the Ninth Circuit's first opinion given the chance for *en banc* review.   *Makaeff*, 715 F.3d at 275.   This reasonably increased the amount of time and effort by counsel.

### 3.   Trump's Opposition Only Shows What Was Necessary to Lose

The Court should give short shrift to Trump's Exhibit 1 (Dkt. No. 335-1), in which it baselessly claims that the successful prosecution of this action should have

taken only 492 hours over the course of 4 years – a misleading calculation purportedly based upon a review of time billed by former outside counsel, David Schneider, from Yunker & Schneider.  Dkt. No. 335-1, Ex. 1 at 000009.  Schneider was involved in handling the anti-SLAPP proceedings for Trump, along with in-house counsel, Jill Martin, prior to being fired and replaced by current outside counsel.  *See* Dkt. No. 335 at 7 n.12; Dkt. No. 335-1 at 4.[8]  Numerous courts have rejected this argument, including the Ninth Circuit:  "opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated . . . . ***Comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party, therefore, does not necessarily indicate whether the hours expended by the party seeking fees were excessive***."  *Ferland*, 244 F.3d at 1151[9]; *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1305 n.3 (11th Cir. 1988) (time spent by opposing counsel is seldom relevant to a determination of the hours reasonably expended); *Johnson v. Univ. Coll. of Univ. of Ala.*, 706 F.2d 1205, 1208 (11th Cir. 1983) (the amount of hours needed by one side to prepare adequately may differ substantially from that for opposing counsel because the work may vary dramatically).

More importantly, Trump's estimate does not reflect what it took to win this four-year battle from the district court to the Ninth Circuit and back again.  The most likely reason for the difference in Trump's proposal and the actual hours undertaken is simple:  "***the prevailing party's attorney – who, after all, did prevail – spent more time because she did better work***."  *Ferland*, 244 F.3d at 1151; *Chabner v. United of Omaha Life Ins. Co.*, No. C-95-0447 MHP, 1999 U.S. Dist. LEXIS 16552, at *9 (N.D.

---

[8]    It is unclear if current defense counsel reviewed and included the billing statements of Trump in-house counsel, Jill Martin, or other members of in-house counsel in preparing Exhibit 1.  An omission of in-house counsel's hours would further undermine an already whimsical document.

[9]    Here, and throughout emphasis is added and citations are omitted, unless otherwise noted.

1   Cal. Oct. 12, 1999) ("[the losing party's] approach does not recommend a model for

2   conducting litigation").  Indeed, Trump University and Donald Trump have since

3   replaced Yunker & Schneider with a national firm, Foley & Lardner LLP, the same

4   firm that now represents them in the underlying class action.[10]

5          **4.    Collaboration Was Essential to Makaeff's Success**

6          The Court should not reduce Makaeff's fees simply because "multiple"

7   attorneys worked on the various tasks.  *See, e.g.*, Dkt. No 335-1, Ex. 1 at 00009 (Task

8   Nos. 2 & 4).  Collaboration between and among the attorneys representing Makaeff

9   was critical to producing a successful outcome.  More to the point, courts award fees

10  for time spent collaborating.  "'Multiple attorneys may be essential for planning

11  strategy, eliciting testimony or evaluating facts or law.'" *PSM Holding Corp. v. Nat'l*

12  *Farm Fin. Corp*., 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010) (citing *Williamsburg*

13  *Fair Hous.Comm'n v. Ross-Rodney Hous. Corp*., 599 F. Supp. 509, 518 (S.D.N.Y.

14  1984)).  "'Indeed, division of responsibility may make it necessary for more than one

15  attorney to attend activities such as depositions and hearings.'" *Id*.

16         Here, the Jensen Declaration (Dkt. No. 331-1) describes the collaboration

17  among the various attorneys that was necessary and appropriate to obtain the victory

18  on the SLAPP suit.  For example, while there was a point person for each filing, other

19  attorneys undertook research and commented on drafts and the paralegal checked the

20  law and quotes in drafts before finalizing and filing them with the Court.  These were

21  important checks to ensure a quality work product was provided to the Court.  *See*

22  Dkt. No. 331-1, ¶¶15, 17, 24, 29, 32, 38.  At times, the client demanded the

23  involvement of more than one attorney.  For example, Makaeff had specific directions

24  ---
    [10]  Makaeff limits her argument to the reasonableness of the time spent and costs.
25  However, as to hourly rates, it is worth noting the 2013 National Law Journal Billing
    Summary submitted by Makaeff reports that Trump's counsel, Foley & Lardner LLP,
26  charges $405 to $860 for partners and $470 to $600 for associates. *See* Dkt. No. 331-
    4 (Ex. B).  In other words, after Yunker & Schneider filed a counterclaim that was
27  stricken, lost at the Ninth Circuit, lost class certification in this case and *Cohen v.*
    *Trump*, No. 3:13-cv-2519-GPC-WVG, Trump has now hired a national firm whose
28  hourly rates are comparable or even higher than those sought by Makaeff's counsel.

to her counsel to help prep and defend her **fourth** deposition due to the conduct of Schneider at her prior depositions.  *See* Dkt. No. 331-1, ¶37.  Further, Makaeff's "strenuous object[ion]" to sitting for further questioning necessitated strict stipulations put in place prior the deposition, and thus two attorneys from Makaeff's counsel were present to ensure enforcement.  *Id.*  Contrary to Trump's unsupported argument that this work was duplicative, it was in fact entirely reasonable and necessary to achieve a successful outcome.  Dkt. No. 335 at 11-13; Dkt. No. 335-1, Ex. 1 at 000014-15.

## B.   The Court Should Reject Trump's Proposed Reductions to Time Spent

Trump's opposition contains a laundry list of reductions to Makaeff's fees, none of which is supported by analogous case law.  As indicated above, limiting the deposition preparation to four hours is absurd as it does not even cover the travel time.  And it was of Trump and its counsel's own making that Makaeff balked at being subjected to counsel for another deposition and expressly conditioned her agreement to sit for deposition on several days of preparation.  *See* Jensen Supp. Decl., ¶¶33-35.

Further, time spent on the motion for reconsideration is compensable.  The fact that she did not prevail on that motion does not preclude recovery because Makaeff ultimately prevailed on the same claim.  "Plaintiff may recover fees for time spent on unsuccessful motions if it later prevailed on a particular claim."  *Frevach Land Co. v. Multnomah Cnty.*, No. CV-99-1295-HU, 2001 U.S. Dist. LEXIS 22255, at *24 (D. Or. Dec. 18, 2001); *Monroe v. United Air Lines, Inc.*, 565 F. Supp. 274, 286 (N.D. Ill. 1983) (fees awarded for unsuccessful preliminary injunction when won on merits).

That Trump's arguments are entirely divorced from reality is illustrated by its argument that, if Mr. Isaacson was so experienced in appellate practice, he would not need a mock argument.  It is precisely due to Mr. Isaacson's decades of experience that he knows a mock argument is the **best** way to prepare for a Ninth Circuit panel.  And indeed, his performance was so compelling that he convinced the Ninth Circuit to reverse the denial.  In any event, courts award fees for mock trials or argument so long

as the time spent is reasonable.  *See, e.g.*, *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Campbell*, 2012 U.S. Dist. LEXIS 190096, at *18 (refusing to reduce hours spent on mock argument).

As to the amicus briefs, Trump admits that time spent soliciting public support is allowable.  *See* Dkt. No. 335 at 10.  Counsel expended time consulting with amici on both the opening appeal brief and the opposition to the *en banc* petition.  *See* Jensen Supp. Decl., ¶¶14, 22; Eck Supp. Decl., ¶¶15-16, 21.  Because solicitation of public support and coordinating amici is inherently a matter of public relations, it requires finesse.  Trump does not have any basis for asserting that paralegals must perform such tasks.  In any event, the communications between counsel and amici – particularly, the ACLU and the Consumer Attorneys of California – led to better-informed and more sophisticated briefing which was critical to Makaeff's three successful briefs filed with the Ninth Circuit.  *See* Dkt. No. 331-3, ¶¶17-18.  Just because the Better Business Bureau ultimately did not submit an amicus brief does not mean counsel's efforts were for naught or that it was time spent unreasonably trying.  *See, e.g.*, *Sukenic v. County of Maricopa*, No. CV 02-02438-PHX-CRP, 2004 U.S. Dist. LEXIS 31837, at *32 (D. Ariz. July 21, 2004) ("An unsuccessful but reasonable argument in support of a successful claim may be compensable.") (citing *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998)).  Trump's argument that the work with amici were not "directly related to the motion" is contradicted by Isaacson's and Eck's sworn declarations.

Finally, time spent attempting to identify the allegedly defamatory statements was essential to adequately argue the relevant issues in the anti-SLAPP motion.  *See* Dkt. No. 335 at 12.  However, this was made extremely difficult because Trump did not (and would not, despite Makaeff's request) attach or identify which letters contained the statements it contended were defamatory upon Makaeff's request.  *See, e.g.*, Eck Supp. Decl., ¶4.  While this time spent could have been avoided if Mr. Schneider had identified the documents when requested instead of holding them

1  hostage until Makaeff acquiesced to his demands.  Instead Makaeff's counsel had to

2  spend additional time chasing these documents down.

3  　　In sum, Trump's proposed reductions are nothing more than a self-serving

4  attempt to avoid responsibility for its vexatious litigation and bullying.  Though

5  Trump does not want to pay the consequences for its actions, it only has itself to

6  blame for the attorneys' fees incurred by Makaeff in defeating its SLAPP suit.

7  ### C.   The Costs Are Reasonable

8  　　At the Court's request, Makaeff provides "additional information

9  substantiating" the costs incurred.  *See* Jensen Supp. Decl., ¶¶31-32; Eck Supp. Decl.,

10  ¶¶3-33.  As demonstrated by the declarations of counsel, Makaeff incurred costs

11  which were necessary for the successful prosecution of the anti-SLAPP motion.[11]

12  　　In regard to the largest cost, Lexis, Westlaw and Online Library Research

13  ($4,931 for Robbins Geller and $2,057 for ZHE), counsel has broken down these costs

14  by task and billing professional (comparable to Makaeff's hours), demonstrating that

15  the hours and costs for legal research were commensurate with the complexity of the

16  issues presented in the briefs.  For example, Isaacson incurred $1,569 in charges on

17  the opening appellate brief and $1,361 on the opposition to the *en banc* petition.[12]  *See*

18  Jensen Supp. Decl., ¶¶32(B), 32(K).  Likewise, Eck reviewed all such costs and avers

19  through her declaration that all charges were necessary and reasonably incurred in

20  relation to the Anti-SLAPP proceedings.  *See* Eck Supp. Decl., ¶¶33-34.

21

---

22  [11]  In light of Trump's observation that the California Code of Civil Procedure
23  applies, Makaeff will not pursue the costs of postage, telephone, and photocopying
    charges, totaling $603.  However, contrary to Trump's suggestion, Cal. Code Civ. P.
24  §1033.5(a)(3) explicitly allows the costs of video recording and transcribing of
    depositions.

25  [12]  Trump's speculation that the legal research for which Makaeff seeks costs was not
26  limited to the anti-SLAPP motion is, once again, just that. Indeed, out of an abundance
    of caution, counsel from Robbins Geller seeks an award of costs only for those
27  research expenses incurred by Isaacson and Frame whose role in this matter was
    limited to the anti-SLAPP appeal during the relevant time frames. Jensen Supp. Decl.,
28  ¶¶32(A)-32(L), 32(N)-32(O).

1      As to the meals, hotels, and transportation costs, counsel previously provided a

2  list of trips accounting for the $836.49 incurred by Robbins Geller and $280.88 by

3  ZHE. *See* Dkt. No. 331-1, ¶59-60; Dkt. No. 331-2, ¶57.  These costs are now broken

4  down into separate components. *See* Jensen Supp. Decl., ¶¶32(I), 32(M); Eck Supp.

5  Decl., ¶33.

6      Further, the "Miscellaneous Deposition Costs" were incurred in renting an

7  office space for two days for the preparation of Makaeff in Los Angeles for her fourth

8  deposition, which Trump demanded over her objection. *See* Jensen Supp. Decl., ¶35.

9      Makaeff's counsel incurred in $299 purchasing publications related to Donald

10  Trump, Trump University and neurolinguistic programing which Mr. Isaacson ordered

11  and believed was reasonably necessary for preparing the Ninth Circuit appeal briefing.

12  Dkt. No. 331-1, ¶60(d); Dkt. No. 331-3, ¶15.[13]

13      In sum, Makaeff's counsel's costs were reasonably incurred in litigating the

14  anti-SLAPP proceedings over the course of the past four years.

15  **III.   CONCLUSION**

16      Makaeff respectfully requests that the Court award her full amount of requested

17  attorneys' fees and costs.  If the Court reduces any of the time, Makaeff requests that

18  the Court offset any such reduction with a multiplier of equivalent effect.

19  DATED:  December 12, 2014       Respectfully submitted,

20                             ROBBINS GELLER RUDMAN

                             & DOWD LLP

21                             JASON A. FORGE

                           RACHEL L. JENSEN

22

23                                s/ Rachel L. Jensen

24                              RACHEL L. JENSEN

---

25  [13]  Trump's contention that Mr. Isaacson's factual investigation could not be informed

26  by anything but the record should be rejected.  Mr. Isaacson explained that these publications informed his analysis of the defamation counterclaim and the anti-

27  SLAAP motion which ultimately prevailed at the Ninth Circuit.  Trump's contention that these costs should be denied because they speculate the materials could have been

28  obtained from a public library is notable only for its lack of seriousness.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL J. PFEFFERBAUM
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
MAUREEN E. MUELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
625 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 12, 2014.

s/ Rachel L. Jensen
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:       rachelj@rgrdlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG Makaeff v. Trump University, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,robyns@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Benjamin James Morris**
  bmorris@foley.com,vgoldsmith@foley.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

- **Nancy L. Stagg**
  nstagg@foley.com,smoreno@foley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`