```
 1                  UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

   TARLA MAKAEFF, et al., on        .
 4 Behalf of Themselves and All     .
   Others Similarly Situated,       .
 5                                  . Docket
                 Plaintiffs,        . No. 10-cv-00940-GPC-WVG
 6                                  .
                      v.            . December 11, 2014
 7                                  . 10:00 a.m.
   TRUMP UNIVERSITY, LLC,           .
 8 et al.,                          .
                                    .
 9               Defendants.        . San Diego, California
   . . . . . . . . . . . . . . . . .
10
             TRANSCRIPT OF TELEPHONIC DISCOVERY CONFERENCE
11              BEFORE THE HONORABLE GONZALO P. CURIEL
                   UNITED STATES DISTRICT JUDGE
12
                         A-P-P-E-A-R-A-N-C-E-S
13 For the Plaintiffs:     Robbins Geller Rudman & Dowd LLP
                           655 West Broadway, Suite 1900
14                         San Diego, California 92101
                           By:  RACHEL L. JENSEN, ESQ.
15                         - AND -
                           ZELDES HAEGGQUIST & ECK, LLP
16                         625 Broadway, Suite 1000
                           San Diego, California 92101
17                         By:  AMBER LEE ECK, ESQ.

18
   For the Defendants:     Foley & Lardner, LLP
19                         3579 Valley Centre Drive, Suite 300
                           San Diego, California 92130
20                         By:  NANCY L. STAGG, ESQ.
                                KATHRYN CATHERWOOD, ESQ.
21

22 Court Reporter:         Chari L. Possell, RPR, CRR
                           USDC Clerk's Office
23                         333 West Broadway, Suite 420
                           San Diego, California 92101
24                         chari_possell@casd.uscourts.gov
   Reported by Stenotype, Transcribed by Computer
25
```

```
 1            SAN DIEGO, CALIFORNIA; DECEMBER 11, 2014; 10:00 A.M.
 2                                 -o0o-
 3            THE COURT:  Good morning.  Can I please have
 4   appearances?
 5            MS. CATHERWOOD:  This is Kate Catherwood of Foley &
 6   Lardner, and also Nancy Stagg on the line as well, on behalf of
 7   Trump University.
 8            THE COURT:  Good morning.
 9            MS. JENSEN:  Good morning.  This is Rachel Jensen,
10   from Robbins, Geller, Rudman & Dowd, on behalf of the
11   plaintiff.
12            THE COURT:  Is that it?
13            MS. ECK:  Amber Eck of Zeldes, Haeggquist & Eck, on
14   behalf of the plaintiffs.
15            THE COURT:  Is that it?
16            ALL:  Yes.  Yes, Your Honor.
17            THE COURT:  Good morning to you all, and thank you
18   for being available for this telephonic discovery conference.
19       I have had the opportunity to review the submissions by
20   both sides, the letter briefs provided by each side and the
21   attached materials so that I understand everything.  Let me
22   explain how I see things at this point.
23       As I understand things, there were subpoenas issued by
24   Trump University for records that relate to the billing
25   incurred on the anti-SLAPP case, and those subpoenas were that
```

```
 1  were issued both to the Robbins firm and also to Ms. Eck's
 2  firm.  And there have also been requests for production
 3  propounded on Makaeff herself.  With respect to the subpoenas,
 4  there have been objections lodged by the plaintiffs, and that
 5  as of this moment, Trump has not yet moved for compliance;
 6  however, at this point, the Court views the letter submitted to
 7  the Court today, or December 10th, as essentially requesting
 8  the quashing of the subpoenas.  So then that requires the Court
 9  to determine whether or not the subpoenas are subject to being
10  quashed under Rule 45(d)(3).
11       As I understand it, the plaintiff is seeking to have the
12  subpoena quashed under the view that the requested information
13  is either work product or that this Court has not authorized
14  this discovery in connection with the pending bill of fees, and
15  finally, that the requested information has no relevance to any
16  claim or defense.
17       So at this point, does that correctly state the procedure
18  or where we are at this moment?
19            MS. STAGG:  Your Honor, this is Nancy Stagg.  I would
20  say, based on the discovery order by Judge Gallo, we were
21  attempting to move to compel production, but the process is
22  that we have to contact Magistrate Judge Gallo's chambers,
23  which we did do.  You are correct, but I think it's somewhat
24  incomplete in the sense that we did take the initial steps to
25  move to compel.
```

1      THE COURT: All right. But that would be move to
2 compel with respect to the motion to produce, or motion to
3 compel as to both the motion to produce as well as the
4 subpoenas?
5      MS. STAGG: The subpoenas, because the subpoenas had
6 a return date of last week.
7      THE COURT: All right. And so then, we can have the
8 record further reflect, then, that Trump University was in the
9 process of seeking production of the requested information.
10      And then ultimately, then, it appears that, as far as the
11 standard that applies, it is the standard that is provided
12 under (d)(3), and so we determine whether or not there is a
13 reasonable time to comply -- it doesn't appear that's the
14 issue -- whether or not a person is required to comply beyond
15 the geographical limits specified in Rule 45(c) -- that's not
16 an issue -- whether there's the disclosure of privileged or
17 other protected matter if no exception or waiver applies; and
18 finally, if it subjects a person to an undue burden.
19      As to the privilege, at this point, the Court is not in a
20 position to ascertain whether or not some privileged
21 information is contained within these records. There has been
22 reference to how the plaintiffs have offered to submit the
23 entirety of the billing records to the Court in camera. The
24 Court at this point isn't prepared to review all of the records
25 to determine whether or not they all contain privileged

1  information.
2      To the extent that the plaintiff is of the view that there
3  is such information and wishes to provide the Court with
4  exemplars to that effect, we would be in a position to
5  determine whether or not there is privileged information.  But
6  it seems to the Court, at the end of the day, that what we have
7  here is a request for information that does produce an undue
8  burden.  It certainly is a burden to collect all this
9  information and sort through it all to determine whether or not
10 there is privileged information, and the question becomes
11 whether or not this burden is undue or whether or not it is
12 proper under the circumstances.
13     And given the fact that the plaintiff is not required to
14 attach every billing statement or billing sheet with respect to
15 the requested fees, the Court would be inclined to find it is
16 an undue burden.
17     Ultimately, with respect to the plaintiff meeting her
18 burden to demonstrate that she is entitled to attorney fees,
19 those fees are reasonable, that they are not duplicative, I
20 have already identified what the applicable law is.  And I am
21 prepared to accept further filings so that the plaintiff can
22 meet their burden.  But beyond that, I am not going to order
23 specifically that the plaintiffs provide every bill, or provide
24 specific information.  It will be up to the plaintiff to make
25 that determination.

```
 1        If the Court finds that it's sufficient to justify the
 2   request, I will grant the motion.  If the Court finds it is not
 3   sufficient, that it's inadequate, then the Court will take the
 4   appropriate steps and will respond accordingly.
 5        So that is my tentative.  I am happy to hear from both
 6   sides on this issue.  Let me hear first from the Trump side.
 7             MS. CATHERWOOD:  Your Honor, this is Kate Catherwood.
 8   I appreciate the Court's comments.  I note we recognize the
 9   possibility of burdensomeness and did address that in our
10   letter brief to you.  These are essentially records that were
11   specifically referenced in the declarations that were filed
12   with the Court in connection with the bill of costs.  They
13   should be readily available, and the process of reviewing
14   those -- I have been doing this for over 24 years on bankruptcy
15   cases where I review two, three years' worth of bills, go
16   through to determine redactions and attach all those copies in
17   the fee application process.  It is, in my experience, not
18   overly burdensome to do that, to review the cost records.  And
19   by declarant's own statements, they have already done that and
20   had them compiled because they did that in connection with
21   preparing the motion.  That is all we are asking for, Your
22   Honor.
23        And in the cases that plaintiff cites to the Court in
24   their letter statement, I would direct -- apparently there's
25   really probably not an issue as to relevance.  They did raise
```

1  an issue about whether -- because this relates to something
2  that's been stricken, we can't look at these records, but the
3  *Oppenheimer* case they cite for that goes on to say that it's --
4  that only applies unless the information that we are seeking is
5  otherwise relevant to issues in the case. And Your Honor,
6  obviously, as pointed out in our brief, this is a huge issue in
7  the case. It's over a million dollars in fees, and therefore
8  it's relevant and subject to production.
9      The *Muniz* case they cite also is very helpful to our
10 position, Your Honor. In that case, it was a fee dispute. The
11 subpoenas were issued by the party seeking to oppose the fees.
12 The Court did an analysis of the request and found that, with
13 respect to the time records, et cetera, that the party seeking
14 the fees would need to produce those. The Court would not
15 quash that portion of the subpoena. And in addition, the Court
16 put the burden on the party seeking the fees to say -- make a
17 declaration to the Court that that was all of the documents
18 relating to their fee request, and so that, of course, our
19 position is that this would not be an unduly burdensome process
20 for the plaintiff.
21     And again, obviously, Your Honor, we would have to, in
22 response to their motion, point out specifically what issues we
23 have problems with. We couldn't do that last time, as this
24 Court recognized, because there really wasn't anything there to
25 do.

1    What I had undertaken in our original objection, Your
2    Honor, in my declaration, was basically create a chart of the
3    categories and then provide the Court with what I felt, in my
4    experience and with what we had incurred, would be reasonable
5    with respect to each of those categories.
6         We are now faced with supplemental briefing where, again,
7    given the refusal to apparently turn over the time records in
8    redacted form, we may be again in a position where we are not
9    able to respond.  So we are kind of in a Catch-22.
10        And I appreciate the Court's comments, but I'd also like
11   to at least get on the record that in the event that records
12   aren't produced, certainly that will be something the Court
13   takes into consideration in reviewing the motion and
14   considering possibly, as we have suggested in our original
15   opposition, that the Court is within its discretion to deny the
16   request if there aren't sufficient evidence of the
17   reasonableness of the fees.
18             THE COURT:  All right.  Let me hear from the
19   plaintiffs.
20             MS. JENSEN:  Your Honor, this is Rachel Jensen on
21   behalf of the plaintiffs.  And I am -- the plaintiffs would be
22   pleased if the Court were to take the position set forth in
23   your tentative.  And if there's any point in particular that
24   you would like me to address, I would be happy to do that.
25             THE COURT:  Well, why don't you address the *Muniz v.*

1   *UPS* case that counsel just alluded to and relied upon for the
2   proposition that the request made here is appropriate.
3         MS. JENSEN: Your Honor, taking a quick step back,
4   defendants themselves have recognized within the letter brief
5   and previously that the underlying time bills are not required.
6   I don't think that's in dispute here. And the courts do
7   generally, from, you know, what we have seen, disfavor
8   satellite litigation regarding fees as opposed to the
9   substantive claims and offenses in the case.
10     It is a matter of ordinary course in our cases and in
11   these cases as far as we are aware that the declarations of
12   counsel provide the evidence that is necessary to ascertain the
13   reasonableness along the lines of what Your Honor has
14   indicated, and that is to provide the details regarding the
15   amount of time spent on the task, which we were prepared to do
16   in our supplemental briefing that Your Honor has ordered the
17   plaintiffs to submit.
18     But in terms of the discovery, we don't think here that
19   it's necessary or appropriate and that it could only lead to
20   additional satellite litigation, which the courts disfavor, as
21   to attorney's fees and costs.
22         THE COURT: All right. I am looking at the *Muniz v.*
23   *UPS* case. I am trying to find --
24         MS. CATHERWOOD: Your Honor, if I may, it begins at
25   page -- I am looking for the reference on the page number,

1  because this is -- when I printed it out on Lexis, it's page 5
2  of 11, but it has a Section B, Relevance of Subpoenaed
3  Information.  And it says, "As set forth below, the Court finds
4  that documents describing or recording the time spent on the
5  case, as well as previously ordered hourly rates, are relevant
6  to plaintiff's fee motion."  The Court then goes on to say, on
7  the documents, that "The UPS subpoena seeks documents
8  describing or recording the amount of time that plaintiff's
9  counsel and their employees spent on the case from January 1,
10 2007 to the present."  And this is a 2011 case, Your Honor.
11          THE COURT:  Let me ask -- because I don't have Lexis
12 but I have Westlaw -- is it the decision from August 23, 2011?
13          MS. CATHERWOOD:  No.  This one says January 28, 2011.
14 2011 U.S. District, Lexis 11219, Your Honor.  And of course,
15 that's Lexis, not -- but I can continue to read to the Court
16 what the Court's ruling was, if Your Honor would like me to.
17          THE COURT:  I just pulled up the January 2011 case so
18 I have that in front of me now.
19          MS. JENSEN:  Your Honor, this is Rachel Jensen again.
20 And I actually took a break from the deposition that we are
21 taking right now in Little Rock, Arkansas, and so I don't
22 have -- unfortunately, I don't have all of the pieces at my
23 fingertips because I have been traveling essentially since
24 yesterday afternoon, when the Court ordered the letter brief,
25 so I wanted to provide that information to you.

1             MS. CATHERWOOD: And Your Honor, this is a case they
2    cited in their letter brief. And it says that, specifically,
3    "The party opposing the (c) motion should have access to
4    information essential in the calculation of fee awards
5    regarding the nature and extent of work done by the fee
6    applicant's counsel on various phases of the case."
7         And then it goes on to say, "Rather, it is the burden of
8    the challenging party to find specific evidence that hours
9    spent by opposing counsel are duplicative or excessive. As a
10   result, the party opposing the fee award can be expected to
11   identify the particular charges it considers objectionable. In
12   turn, the trial court must carefully review attorney
13   documentation of hours expended. Padding in the form of
14   insufficient or duplicative effort is not subject to
15   compensation. To this end, the evidence should allow the Court
16   to consider whether the case was overstaffed, how much time the
17   attorneys spent on particular claims, and whether the hours
18   were reasonable. The Court recognizes that in contrast to some
19   federal courts, California courts do not require
20   contemporaneous time records in order to recover fees."
21        And I am leaving out some of this, but it says, "However,
22   the fact that California courts do not mandate the submission
23   of contemporaneous time records in order to prevail on a fee
24   motion does not mean that a Court may not find time records
25   relevant when a fee opponent challenges the reasonableness of

1  the fee." And they cite a case called *Christian Research*.
2  "The Court may require fee applicants to produce records
3  sufficient to provide a proper basis for determining how much
4  time was spent on a particular claim."
5  And then the Court goes on to say, "Here, UPS may properly
6  seek information that would enable it to challenge plaintiff's
7  fee motion and ascertain if specific evidence exists of
8  duplicative, excessive, or unrelated hours." And then he
9  points out that the party filing the application, Stephen
10 Jaffe, has attested that because he worked on a contingency fee
11 basis, he did not maintain separate time records of the
12 services he performed in the matter. And the Court went on to
13 say you have to provide whatever you said you looked at then so
14 that the opposing party can have access to that and prepare a
15 defense.
16 So that's the case that plaintiffs cited, Your Honor, and
17 we think that supports Your Honor granting our request.
18          THE COURT: Any response?
19          MS. ECK: Your Honor, this is Amber Eck. I'd like to
20 respond briefly.
21 The cases -- I think just part of the language that was
22 just read was that it said it may require the fee applicant to
23 produce records sufficient to provide a proper basis for
24 determining how much time was spent on particular claims. And
25 I guess in our view, that's what the Court asked us to do in

```
 1   its order, is to provide a breakdown, either by task or by
 2   things that we worked on.  That's what we intend to do in our
 3   declaration that we are submitting tomorrow.  We think that
 4   that will comply with that.
 5        I think the case that we cited in our letter brief, the
 6   Hartless v. Clorox case -- which is out of the Southern
 7   District of California, Judge Bencivengo -- specifically is a
 8   case very similar to ours in the anti-SLAPP context, that
 9   individual time entries are not required to have the Court
10   award fees and expenses.  And that really is the clear law.
11   It's just we didn't have a lot of time to submit briefing on
12   this, although we could submit supplemental briefing if the
13   Court would like it.
14        But there's actually a Rutter Group guide on the
15   anti-SLAPP motions, and that Rutter Group guide, Section 298,
16   specifically states -- and it quotes the case of Raining Data
17   Corp. v. Barrenechea, which is a California court decision,
18   175 Cal.App.4th 1363, the pin cite of 1375.  And it states,
19   "The law is clear that an award of attorney fees may be based
20   on counsel's declaration without production of detailed time
21   records."
22        And that is specifically in the anti-SLAPP context.  The
23   Hartless case that's cited in our brief is in the anti-SLAPP
24   context.  The Muniz case is not, but I don't think it's
25   inconsistent with what we are saying.  As the Court recognized,
```

1  we have a duty to produce sufficient evidence that our time was
2  reasonable, what it was spent on, that it was non-duplicative.
3  We intend to set that forth in our declaration, and the Court
4  can consider that and determine whether it believes it is
5  sufficient.
6      THE COURT: Let me ask about *Hartless*. Looking at
7  *Hartless*, what I understood it to be was a class action
8  settlement involving the Clorox automatic toilet bowl cleaner
9  and not anti-SLAPP. And Judge Bencivengo, in *Hartless*,
10 considered the fact that this had been a settlement, that you
11 had an objector who was challenging the settlement and was also
12 challenging the amount of the attorney fees, and this objector
13 was requesting all of the time records from the plaintiffs'
14 attorneys' work. So that's a far cry and a different situation
15 than what we have; isn't that right?
16     MS. ECK: Actually, I am looking at this, and I
17 thought I was looking at the *Hartless* case, and I think I was
18 actually looking at the other case I just mentioned to you,
19 which was the *Raining Data Corp.* case. I think you are right.
20 I think your description of the facts of that case is accurate,
21 although the Court did find that the declarations were
22 sufficient rather than time records.
23    The case that I did previously mention, which was the fact
24 pattern I am thinking of, was the *Raining Data Corp. v.*
25 *Barrenechea* case, and that was an anti-SLAPP case, where the

```
 1   Court found specifically in a fee for -- motion for fees under
 2   the anti-SLAPP statute that the law was clear that award of
 3   attorneys' fees can be based on declarations without time
 4   records.  And that's at page 1374.
 5              THE COURT:  All right.  Well, let me just make this
 6   observation.  It's clear that Muniz, at page 5 of the Westlaw
 7   decision, does provide the general law as to what the Court is
 8   entitled to consider, what it can order as far as additional
 9   specificity and information.  And I am well aware of what
10   California law is, what the federal law is.  And at this point,
11   we have issued our order with respect to, at this point, the
12   Court finds that what has been provided is lacking.
13        However, having said that, that doesn't mean that the
14   Court at this point is looking for all of the time records.  As
15   far as the Court's exercise of its discretion, keeping in mind
16   this is an anti-SLAPP action, that this relates to a class
17   action that's being taken on a contingency, much as the Court
18   in Hartless and I believe Judge Moskowitz thereafter in another
19   case, where he distinguished Hartless but recognized that
20   Hartless was a class action case and was taken on contingency,
21   that those facts made it unnecessary to have the level of
22   specificity that one might otherwise need in a different type
23   of case.
24        So I am not convinced at this point, based upon my review
25   of Muniz, that it's necessary to have all of the time records
```

1 provided to the Court or that it's appropriate to have them the
2 subject of a subpoena or a discovery request.
3     And so, at this point, I am prepared to issue an order
4 which would quash the subpoena based upon undue burden, and
5 then also find that the information is not discoverable
6 pursuant to a request for production. And as I stated earlier,
7 if the Court is not satisfied with the level of specificity
8 that's provided by the plaintiffs in their further pleadings,
9 then the Court will make the appropriate ruling.
10     But at this point, then, before we conclude, is there
11 anything else that either side wishes to add?
12       MS. CATHERWOOD: Your Honor, this is Kate Catherwood.
13 Just to make sure that we are fully addressing, kind of -- the
14 distinction here, I think, is a little bit subtle. But I want
15 to make sure Your Honor has considered this, and that is the
16 difference between, Your Honor, what you need to consider and
17 what is required to be presented to you in connection with
18 reviewing the motion versus what is an appropriate subject of
19 discovery in connection with such a motion to allow the party
20 objecting to that motion to be in a position to provide the
21 best defense for the client.
22     And it's that second aspect that I think was acknowledged
23 in the *Muniz* case, where it wasn't the Court asking for the
24 information but it was the party that was going to be required
25 to object. And we believe that we will be put at a

```
 1  disadvantage if we don't have the records.
 2       And I understand the Court's ruling, if you are going to
 3  proceed with that.  But what I suggest is perhaps providing the
 4  ability, once the motion is filed, for us to seek a further
 5  extension to respond if it seems like there's not sufficient
 6  information there.
 7            THE COURT:  Well, you are going to, obviously, have
 8  the opportunity to respond to the additional filing by the
 9  plaintiffs.
10       But I do recognize the subtlety and I have balanced the
11  need for this information in the context of allowing the
12  defense to respond to the motion with the concern of the
13  satellite proceedings, these mini trials, that would occur as a
14  result of this fee motion.  So I am well aware of the subtlety,
15  the secondary issue.
16       And at this point, then, if there's nothing else, that
17  will conclude this proceedings.  Thank you all so much.
18            ALL:  Thank you, Your Honor.
19       (End of proceedings at 10:30 a.m.)
20                              -oOo-
21
22
23
24
25
```

```
 1                    C-E-R-T-I-F-I-C-A-T-I-O-N
 2
 3           I hereby certify that I am a duly appointed,
 4   qualified and acting official Court Reporter for the United
 5   States District Court; that the foregoing is a true and correct
 6   transcript of the proceedings had in the aforementioned cause;
 7   that said transcript is a true and correct transcription of my
 8   stenographic notes; and that the format used herein complies
 9   with rules and requirements of the United States Judicial
10   Conference.
11             DATED:  December 15, 2014, at San Diego,
12   California.
13
14                            /s/   Chari L. Possell
                              _____
15                            Chari L. Possell
                              CSR No. 9944, RPR, CRR
16
17
18
19
20
21
22
23
24
25
```