NANCY L. STAGG CA Bar No. 157034
    nstagg@foley.com
BENJAMIN J. MORRIS CA BAR No. 260148
    bmorris@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130-3302
TELEPHONE:     858.847.6700
FACSIMILE:     858.792.6773

JILL A. MARTIN CA Bar No. 245626
    jmartin@trumpnational.com
C/O **TRUMP NATIONAL GOLF CLUB LOS ANGELES**
ONE TRUMP NATION DRIVE
RANCHO PALOS VERDES, CA 90275
TELEPHONE:     310.303.3225
FACSIMILE:     310.265.5522

Attorneys for Defendants Trump University, LLC
and Donald J. Trump

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, SONNY LOW, J.R. EVERETT, AND JOHN BROWN,  on behalf of themselves and all others similarly situated, ED OBERKROM, and BRANDON KELLER, individually,<br><br>                Plaintiffs,<br><br>        v.<br><br>TRUMP UNIVERSITY, LLC (aka Trump Entrepreneur Initiative), a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>                Defendants. | Case No. 10-cv-00940 GPC (WVG)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP'S MOTION FOR DECERTIFICATION OF CLASS ACTION**<br><br>**DATE:**      **May 15, 2015**<br>**TIME:**       **1:30 p.m.**<br>**CRTM:**     **2D (2nd Floor – Schwartz)**<br><br>**JUDGE:**    **Hon. Gonzalo P. Curiel** |

4842-2340-6625.3

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   LEGAL STANDARD FOR DECERTIFICATION ...................................................... 1

III.  ARGUMENT .................................................................................................................. 2

    A.   Plaintiffs' Damages Theory Is Flawed As A Matter Of Law. ............................ 2

        1.   As a matter of law, the Full-Refund model cannot accurately measure classwide damages for any of the certified California claims ............................... 3

        2.   As a matter of law, the Full-Refund model cannot accurately measure classwide damages for the certified Florida claims or New York claim .............. 10

    B.   Class Counsel Has Proven To Be Inadequate ................................................... 14

IV.   CONCLUSION ............................................................................................................. 16

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Hyland's Inc.*,
  300 F.R.D. 643 (C.D. Cal. 2014) .................................................................................6

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974) ..................................................................................................15

*Brazil v. Dole Packaged Foods, LLC*,
  2014 WL 5794873 (N.D. Cal. November 6, 2014) ....................................................3

*Caldera v. The J. M. Smucker Co.*,
  2014 WL 1477400 (C.D. Cal April 15, 2014) ..........................................................4

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663 (2006) ....................................................................................3

*Comcast v. Behrend*,
  133 S. Ct. 1426 (2013) ............................................................................................2, 4

*In re Conagra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ..........................................................................2, 3

*Dash v. Seagate Tech. (US) Holdings, Inc.*,
  2014 U.S. Dist. LEXIS 88780 (E.D.N.Y, June 30, 2014) ......................................10

*Dunkin v. Boskey*,
  82 Cal. App. 4th 171 (2000) ......................................................................................3

*Gen. Tel. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ...................................................................................................2

*Jones v. ConAgra Foods, Inc.*,
  2014 WL 2702726 (N.D. Cal. June 13, 2014) ..........................................................4

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .............................................................................................3

*Lanovaz v. Twinings North America, Inc.*,
  2014 WL 1652338 (N.D. Cal. April 24, 2014) .........................................................4

*Lightfoot v. District of Columbia*,
  273 F.R.D. 314 (D.D.C. 2011) ..................................................................................2

*London v. Wal-Mart Stores, Inc.*,
  340 F.3d 1246 (11th Cir. 2003) ...............................................................................14

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

*Marlo v. UPS, Inc.*,
   639 F.3d 942 (9th Cir. 2011) ................................................................................2

*Oosterhuis v. Palmer*,
   137 F.2d 322 (2nd Cir. 1943)...............................................................................10

*Ortega v. Natural Balance, Inc.*,
   300 F.R.D. 422 (C.D. Cal. 2014) ...........................................................................6

*In re: Pom Wonderful LLC*,
   2014 WL 1225184 (C.D. Cal. March 25, 2014) ................................................4, 5

*In re: Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) ...............................................................................2

*Randolph v. J.M. Smucker Co.*,
   2014 WL 7330430 (S.D. Fla. Dec. 23, 2014) ......................................................10

*Red v. Kraft Foods, Inc.*,
   2012 WL 8019527 (C.D. Cal. Apr. 12, 2012) ........................................................4

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................2

*Rollins, Inc. v. Butland*,
   951 So.2d 860 (Fla. 2d DCA 2006) ......................................................................10

*Schwarzschild v. Tse*,
   69 F.3d 293 (9th Cir. 1995) .................................................................................14

*Sheinberg v. Sorensen*,
   2007 WL 496872 (D.N.J. Feb. 8, 2007) ..............................................................14

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) .................................................................................3

*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 2191901 (N.D. Cal., May 23, 2014) ......................................................4

**Statutes**

Fla. Stat. § 817.41 ........................................................................................................10

Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 ...................10

New York General Business Law § 349 ........................................................................10

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

**Other Authorities**

Fed.Rules Civ. Proc. Rule 23 (a)(4) .......................................................................................15

Fed. Rules Civ. Proc. Rule 23(b)(3) .....................................................................................2, 4

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

Defendants, Trump University, LLC and Donald J. Trump, hereby submit this Memorandum of Points and Authorities in Support of their Motion for Decertification of Class Action.

## I.    INTRODUCTION

In February 2014, this Court certified five Classes of consumers who purchased TU "Live Events" in three states:  California, New York, and Florida based on the alleged "core" misrepresentations:  "(1) TU was an accredited University; (2) students would be taught by real estate experts, professors, and mentors hand – selected by Mr. Trump; and (3) students would receive one year of expert support and mentoring." Dkt. No. 298 at 4.  Since that time, discovery has closed, revealing new information about the Classes' claims such that decertification is warranted.

When the original Classes were certified, the Court did not require that Plaintiffs prove a damages method that would work with certainty. Dkt. No. 298 at 27.  Now that discovery is complete, however, the time has come for Plaintiffs to prove such a workable method.  Plaintiffs, however, cannot meet this burden as they have no evidence of a workable model for measuring actual damages.  Instead, they propose an impermissible Full-Refund theory that has been resoundingly rejected in cases such as this, where consumers received at least some value for their purchase.  Accordingly, the Court must decertify the Classes.

Additionally, the Court should decertify the Classes because counsel has proven to be inadequate.  Despite the Classes being certified one-year ago, class counsel has not sent out class notice (or even submitted a notice to this Court for approval).  Their lack of diligence in this regard has resulted in a potential violation of the one-way intervention rule.  Therefore, for this additional reason, the Court should decertify the Classes.

## II.    LEGAL STANDARD FOR DECERTIFICATION

The Supreme Court has characterized class-certification orders as "inherently tentative," such that the trial court "remains free to modify them in the light of subsequent developments in the case" because "actual, not presumed, conformance" with

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

Rule 23's requirements is "indispensable." *Gen. Tel. of the Southwest v. Falcon,* 457 U.S. 147, 160 (1982) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 n. 11 (1978)).  The Court may decertify a class at any time. *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 966 (9th Cir. 2009);  *Lightfoot v. District of Columbia,* 273 F.R.D. 314, 322 (D.D.C. 2011) ("In fact, as the 'gatekeeper' in the certification context, district courts may abuse their discretion by failing to revisit their preliminary certification decisions where continued certification is no longer appropriate.").

It is Plaintiffs burden "to demonstrate that Rule 23's class-certification requirements" remain satisfied on a motion to decertify. *Marlo v. UPS, Inc.,* 639 F.3d 942, 947-48 (9th Cir. 2011) (holding district court "properly placed the burden on plaintiffs at decertification").  Here, Plaintiffs cannot meet this burden.

## III.   ARGUMENT

### A.   Plaintiffs' Damages Theory Is Flawed As A Matter Of Law.

In *Comcast v. Behrend,* 133 S. Ct. 1426, 1432-33 (2013), the Supreme Court made clear that class plaintiffs must identify a valid methodology "establishing that damages are capable of measurement on a classwide basis" to satisfy Rule 23(b)(3) predominance. If a damages model cannot withstand rigorous scrutiny, then a class cannot be certified: "No damages model, no predominance, no class certification." *In re:  Rail Freight Fuel Surcharge Antitrust Litig.,* 725 F.3d 244, 253-54 (D.C. Cir. 2013).  "[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory.  If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id; see In re Conagra Foods, Inc.*, 302 F.R.D. 537, 578 (C.D. Cal. 2014)("*Comcast* established that '"plaintiffs' method of proving damages must be tied to their theory of liability."'").

Here, Plaintiffs cannot satisfy the standard as articulated by *Comcast*.  Plaintiffs' damage model is flawed as a matter of law because it does not comport with the substantive law governing their claims.  The only theory of damages put forth by

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

Plaintiffs, without any expert support[1], is the Full-Refund model – providing a full refund for every student who purchased a "Live Event" from TU.  Fatal to this model, however, is its failure to provide any offset for the value received by the student.  This Full-Refund model has been resoundingly rejected as a model for measuring damages in misrepresentation-based cases such as this.

### 1. As a matter of law, the Full-Refund model cannot accurately measure classwide damages for any of the certified California claims

The remedy under the FAL, UCL, and CLRA is restitution.  The proper measure of restitution is the "difference between what the plaintiff paid and the value of what the plaintiff received."  *In re Vioxx Class Cases,* 180 Cal. App. 4th 116, 131 (2009); *see also Dunkin v. Boskey,* 82 Cal. App. 4th 171, 198 (2000) ("A party seeking restitution must generally return any benefit that it has received.") (internal quotations and citation omitted); *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1152 (2003) (California does not permit economic windfalls, such as "non-restitutionary disgorgement.").

In order to be entitled to restitutive recovery, plaintiffs must provide *evidence* of the actual value of what they received.  *In re Vioxx,* 180 Cal. App. 4th at 131.  The evidence required is expert testimony quantifying "either the dollar value of the 'consumer impact' [caused by a misrepresentation] or the advantage realized by [the defendant]."  *Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th 663, 694 (2006).  Where plaintiffs fail to provide admissible expert testimony supporting a damages methodology that can determine the price premium attributable to the use of a misleading statement, decertification is warranted.  *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 5794873, at *15 (N.D. Cal. November 6, 2014); *In re Conagra Foods Inc.,* 302 F.R.D. at

---

[1] Discovery in this case closed on December 19, 2014.  (Dkt. No. 309).  No expert discovery was included in the Case Management Order and Plaintiffs did not disclose any damages experts or provide any expert reports related to damages in this case. Declaration of Nancy Stagg ("Stagg Decl." at ¶¶ 3-4).

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

579 ("Under *Comcast,* therefore, [the expert] must be able to isolate the price premium associated with misleading consumers in a particular fashion . . . [his failure to do so] does not suffice under *Comcast.*").

As a matter of law, because the Full-Refund model fails to account for any possible benefits to consumers, under the FAL, UCL, and CLRA, the Full-Refund model fails. *In re: Pom Wonderful LLC,* 2014 WL 1225184, at *3 (C.D. Cal. March 25, 2014).[2]

For example, in *In re:  Pom Wonderful LLC,* plaintiffs alleged that defendant violated the FAL, UCL, and CLRA by advertising that defendant's juice products provided various health benefits.  *Id.* at *1.  The court certified a damages class, and upon the completion of discovery defendant moved to decertify on the ground, among others, that plaintiffs damages theory failed and therefore Rule 23(b)(3)'s predominance inquiry was not met.  *Id.* at *1.

The plaintiffs presented two alternative damages theories, the first being the Full-Refund model.  *Id.* The plaintiffs' expert opined that under the Full-Refund model, "if the

---

[2] *See also Lanovaz v. Twinings North America, Inc.,* 2014 WL 1652338, *6 (N.D. Cal. April 24, 2014) (rejecting outright a damages model proposing a refund of the entire purchase price of product); *Jones v. ConAgra Foods, Inc.,* 2014 WL 2702726, at *19 (N.D. Cal. June 13, 2014) ("Return of the full retail or wholesale prices is not a proper measure of restitution, as it fails to take into account the value class members received by purchasing the products."); *Caldera v. The J. M. Smucker Co.*, 2014 WL 1477400, at *4 (C.D. Cal April 15, 2014) (Plaintiff's damage model of relying on defendants sales data alone insufficient because "[r]estitution based on a full refund would only be appropriate if not a single class member received any benefit from the products."); *Red v. Kraft Foods, Inc.,* 2012 WL 8019527, at *11 (C.D. Cal. Apr. 12, 2012) ("The Court thus cannot approve Plaintiffs proposal that Kraft disgorge the full profits earned from sales of the Products within the class period, as Plaintiffs received some benefit from the Products and thus awarding class members full refunds on their purchases would constitute nonrestitutionary disgorgement."); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, (N.D. Cal., May 23, 2014) (rejecting Full-Refund model of damages because "the California consumer protection statutes upon which Werdebaugh brough this case authorize the recovery only of whatever price premium is attributable to [defendant's] use of the allegedly misleading label statements").

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

health benefits were what caused the purchase, at least predominantly, then a [full] refund would be appropriate." *Id.* (internal citation omitted).  Plaintiffs also argued that "if a jury determines that consumers did not receive any *wanted* benefit from Defendant's juices, a full refund would be appropriate." *Id.* at *3.

The defendant argued, and the plaintiffs' expert acknowledged, that this Full-Refund model failed to account for any value received by consumers.  *Id.*  As such, it could not accurately measure class-wide damages.  *Id.*

In rejecting the Full-Refund model, the court agreed with defendant, holding that: "Because the Full-Refund model makes no attempt to account for benefits conferred upon Plaintiffs, it cannot accurately measure classwide damages." *Id.*  The Court further recognized that "the Full-Refund model depends on an assumption that not a single consumer received a single benefit, be it hydration, flavor, energy, or anything else of value," and therefore was not proper, as these benefits were realized by at least some consumers.  *Id.*  The Court also rejected the plaintiffs' theory that a jury could simply decide a full refund was appropriate if no *wanted* benefit was received by finding that:

> In determining the appropriate amount of restitution, however, the question is not whether a plaintiff received the particular benefit he sought or what the value of that benefit was or would have been.  Plaintiffs do not cite, nor is the court aware of, any authority for the proposition that a plaintiff seeking restitution may retain some unexpected boon, yet obtain the windfall of a full refund and profit from a restitutionary award.  Nor can Plaintiffs plausibly contend that they did not receive any value at all from Defendant's products.

*Id.*

While the law is clear that the Full-Refund model is improper in a case such as this, Defendants anticipate that Plaintiffs will argue that they are entitled to full restitution because such recovery is linked to their theory that the products they paid for are worthless.  While a handful of cases have allowed such full recovery based on a worthless product theory, those cases are limited factually to products such as medicinal products that have no inherent value if they do not provide the advertised benefits.  *See,*

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

*e.g., Allen v. Hyland's Inc.,* 300 F.R.D. 643, 671 n. 25 (C.D. Cal. 2014) (where homeopathic drugs marketed as remedies for various ailments but were completely ineffective, a Full-Refund model was appropriate); *Ortega v. Natural Balance, Inc.,* 300 F.R.D. 422, 430 (C.D. Cal. 2014) (recovery of full purchase price model was sufficient where dietary supplement "was valueless because it provided none of the advertised benefits and was illegal").

Here, TU provided at least some value through the information it taught to students, notwithstanding the alleged "core" misrepresentations - as admitted to by the class representatives and class members.

For example, class representative Tarla Makaeff testified about the extensive amount of content that was provided by TU, including by providing workbooks in which Makaeff took extensive handwritten notes on a myriad of real estate topics.[3] (*See, e.g.,* DEx. 1[4] at 74:16-76:18; 77:11-24; 78:25-81:3; 81:4-88:13; 89:1-92:17; DEx. 2). Makaeff admitted to learning about many of the topics, including: REOs; wholesaling; identifying

_____

[3] Topics included: foreclosure statistics; causes of foreclosures; market advantages in the current economy; understanding the foreclosure process; types of foreclosures; judicial timeline and non-judicial timeline; locating a great deal; what makes a property a bargain; finding real estate with motivated sellers; analyzing lis pendens; choosing an area; determining factors for choosing an area; categorizing neighborhoods as A, B, C or D; creating a functional plan; methods for finding properties; contacting owner strategies; options for homeowners in foreclosure; foreclosure attitudes and behaviors; structuring the deal; establishing property value; determining AVR; contract requirements; building a buyers list; ways to find buyers; showing properties; assigning the deal; understanding short sales; why banks sell short; what you need to negotiate a short sale; the short sale process; investing in bank REOs; commercial financing; when to use commercial financing; the lender's view of LTV versus true LTV; working with banks and mortgage brokers; quick-turning real estate; five ways to quick turn real estate; the difference between wholesaling and retailing; wholesaling; retailing; and option and lease options; and owner financing.

[4] All references to "DEx." are to the exhibits to the Declaration of Nancy L. Stagg in support of Defendants' Motion for Decertification of Class Action, filed concurrently herewith.

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

properties as A, B and C properties; and hard-money lenders for the first time through TU.  (DEx. 1 at 79:10-15; 80:15-24; 85:5-13; DEx. 3 at 400:4-19).

Class representative Sonny Low also admitted that he at least got some "minimal" value (or the value was unquantifiable) from TU.  (DEx. 4 at 66:13-67:20; 210:12-25).

Additionally, class member Paula Levand testified about the value to her of what she learned from TU:

> Q.    Are the - - did you - - were you provided written materials when you went to the various workshops and programs?
> A.    Yes.
> Q.    And do you ever reference those materials?
> A.    Yes.
> Q.    And are those of value to you?
> A.    Yes, they are of value.  I've kind of gotten away from real estate a little bit.
> Q.    Well, let me ask it in this context.  For your endeavors in real estate, did you refer to those written materials as a resource?
> A.    Yes.
> Q.    And you found them to be valuable for that purpose?
> A.    Yes, and the notes I took.
> Q.    And those were notes that you took during the various seminars?
> A.    Class, yes.
> Q.    And the information that you received in those classes you found to be valuable?
> A.    Yes . . .
>
> *       *       *
>
> Q.    Just for the live events, for you personally, based on your knowledge of real estate, did you find each of the experts to be knowledgeable in their field?
> THE WITNESS:  I felt they were knowledgeable.
> Q.    And, in fact, you learned something from each of them.
> A.    Yes.
> Q.    And did you feel that you got value for your money?
> A.    Yes.

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

(DEx. 5 at 151:6-152:12; 172:17-173:7)[5].

Class member Art Cohen also admitted to receiving value from TU:

> Q.     All right.  At the conclusion of the three-day workshop, you were satisfied that you had received value equal to what you had paid, $1,495?
> A.     Yes.
> Q.     What was your overall impression at the conclusion of the three-day Fast Track to Foreclosure workshop?
> A.     That it was a good program.
> Q.     Can you give me a description of why you thought it was a good program.
> A.     I thought that James Harris did a good job in explaining a number of different techniques related to foreclosure at a very, very high level, and then thought that there was an opportunity to learn a lot more, as he stated, through one of the more elite-type programs, whether it be Silver or Gold or whatnot.
> Q.     Did you feel that your expectations for that three-day workshop had been met at the conclusion of that workshop?
> A.     Yes.
> Q.     Did you have any complaints whatsoever about that three-day Fast Track to Foreclosure workshop at the end of that workshop?
> A.     No. No.
> Q.     At some point later in time did you become dissatisfied with the workshop?  Again, the three-day.
> A.     No.

(DEx. 6 at 36:11-37:12).

Class member Meena Mohan found her experience with Trump University to be so valuable that she testified:

> I would like to state that I wish Trump University would go back into business.  I would join right back up again, and continue with the mentorship program.  I am shocked and do not even understand why there could be a lawsuit happening at all.  The course materials, top class mentoring and hands on

---

[5] Objections and attorney commentary have been omitted for all deposition quotations herein.

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

> experience is something that is not readily available outside. My entire experience has been extremely positive, and I owe it to the Trump Entrepreneur Program and my mentor Bob Steenson for imparting the knowledge and helping me establish my small Real Estate business in such a short period.

(DEx. 7 at ¶ 9).

Although Plaintiffs attempt to self-servingly assign TU's worth as zero in order to support their damages model, their theory is implausible and contrary to the evidence. Just like the juice in *In re Pom Wonderful*, there is some inherent value to the real estate education provided by TU, regardless of whether the value was what the Plaintiffs wanted upon purchase. It cannot be disputed that TU taught students about various real estate strategies and provided documents, tools, mentoring, and advice. Thus, regardless of whether those strategies came from an accredited university, were made with the promise of a year-long mentoring and support, or were taught by Mr. Trump's handpicked experts – there is still inherent value to what was taught.[6]

This is in stark contrast to a medical product, like a weight loss supplement, that is intended to do one thing – help people lose weight. If a product such as a weight loss product is ineffective, it has no independent value. This case, however, is not one where no value can be obtained from any consumer. Like *In re Pom Wonderful*, because TU programs had at least some value, Plaintiffs have failed to provide a workable damages model and therefore the California Classes must be decertified.

---

[6] A further example of why the Full-Refund model is inappropriate is demonstrated by the fact that many of TU's instructors or mentors attended or worked for competitors of TU in the real estate seminar business either before or after working for TU. While those competitors did not make the "core" misrepresentations, they still charged similar prices to those charged by TU. For example, former TU instructor Gerald Martin testified to attending a real estate seminar taught by Ron LeGrand for which he paid $15,000 or $20,000 (DEx. 8 at 22:1-18); working for Don Burnham's real estate investment training business (DEx. 8 at 23:14-23); and also working for the real estate seminar company called "Flipping Boston", which charges $1,900 for its three-day program and $25,000 for its advanced training. (DEx. 8 at 68:6-69:23).

-9-

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

### 2.    *As a matter of law, the Full-Refund model cannot accurately measure classwide damages for the certified Florida claims or New York claim*

Similar to the California claims, Plaintiffs must be able to prove actual damages under their Florida statutory claims for misleading advertising (Fla. Stat. § 817.41), violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, and violations of New York General Business Law § 349.

Under Florida Law, actual damages are defined as "the difference in the market value of the product or service in its condition and its market value in the condition in which it should have been delivered . . . ." *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006). A valid measurement of actual damages is one which can measure the value associated with the misrepresentation, taking into account the value of the product without the misrepresentation. *See, e.g., Randolph v. J.M. Smucker Co.,* 2014 WL 7330430 (S.D. Fla. Dec. 23, 2014) (Plaintiff failed to present a sufficient damages model when there was no evidence that the price premium associated with the misrepresentation was capable of measurement).

Similarly, under New York law, damages for misrepresentations are measured as "the difference between the value of the thing as represented and as it was in actual fact." *Oosterhuis v. Palmer,* 137 F.2d 322 (2nd Cir. 1943). New York law does not provide a cause of action for refund of the full purchase price of a service on the basis that it would not have been purchased absent defendant's acts or practice under GBL §349. *Dash v. Seagate Tech. (US) Holdings, Inc.*, 2014 U.S. Dist. LEXIS 88780 at *9 (E.D.N.Y, June 30, 2014) *citing Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (N.Y. 1999) (rejecting argument "that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices have suffered an injury under General Business Law §349.").

Plaintiffs have failed to provide any evidence of their actual damages—instead Plaintiffs rely solely on their faulty theory that damages can be calculated on a Full-Refund basis. Such is clearly not the case, as there is at least some value attributable to

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

Trump University's products.  For example, the Florida and New York class representatives, Joann Everett and John Brown, admitted to obtaining at least some value from TU.

Class representative Joanne Everett admitted that there was content provided by her purchase from TU, including substantive material in the form of a workbook provided to her at her three-day training, in which she took extensive amounts of notes about substantive teachings of TU including all-cash offers, strategies on how to identify different properties, financing techniques, steps to take when researching properties, forms to use for determining repaired value, how to build a buyers list, contracts, and more.  (DEx. 9 at 283:7- 303:10).  She also admitted to having more than five substantive conversations with a TU mentor.  (DEx. 9 at 203:7-22).  Thus, regardless of whether Everett believes she is entitled to all of her money back, by admitting that there was at least some substantive content provided by TU, a Full-Refund model is not available.

New York class representative John Brown also admitted to receiving value from TU, including:

- Value in being able to observe the TU instructor calling someone on the phone and discussing potential investment opportunities:

> Q.     So you were able to observe his conversation, sort of see a how-to, right?
> A.     Yes.
> Q.     And did you find that to be of some value
> A.     Well, I said here some – minimal value . . .

(DEx. 10 at 76:8-77:13).

- by learning during the three-day seminar he attended:

> Q.     And did you learn anything during those three days?
> A.     I think I learned minimal, but some of it I already knew from investing with the - - the real estate agent that I did.
> Q.     And some concepts –
> A.     I –

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

Q.      -- were new to you, correct?

A.      One was wholesaling . . .

Q.      Did you run through examples during the three days, monetary examples, look at a piece of property and – and run through different figures about purchase price, rehab prices, that sort of thing?

A.      I vaguely remember something about that, yes.

(DEx. 10 at 86:19-87:10).

- And, by learning real estate terminology from his mentor:

Q.      What did you mean here when you said –

A.       I –

Q.      -- you learned a few things?

A.      I learned some terminology, what wholesaling is, what foreclosures are, that kind of thing.  I learned - - I only learned a little bit, but it was really zero.

(DEx. 10 at 254:18-24).

Brown even admitted that there was at least some monetary value attributable to TU's three-day program he attended:

Q.      Did you believe it was worth any amount of money?

A.      What?

Q.      The three-day program - -

A.      The three-day?

Q.      -- you went through?

A.      It certainly wasn't worth $1,500.

Q.      Do you believe it was worth any amount of money?

THE WITNESS:  I –

Q.      You can answer the question.

A.      I would – I would have paid $199 for it maybe or $200.

(DEx. 10 at 171:10-25).

Florida class member Mette Neilsen adamantly explained the value she received from TU:

- When asked at deposition why she provided a declaration to support TU, Ms. Nielsen explained:  "Because I – like I told you earlier, I had value.  I received value for the payments that I put in." (DEx. 11 at 80:3-9).

- She unequivocally testified to learning useful, valuable information:

-12-

4842-2340-6625.3

> Q.     All right.  Miss Nielsen, we talked a little bit earlier about the fact that you made significantly more money than you invested in Trump University investing in real estate.  Would it be fair to say you think you got your money's worth from Trump University?
> A.     Yes.
> Q.     And as you sit here today, do you think that what you learned from Trump University was useful information?
> A.     Yes.
> Q.     Do you think that what you learned from Trump University was valuable information?
> A.     Absolutely.

(DEx. 11 at 71:9-25).

- She even attributes her real estate success to TU:

> Q.     At the three-day seminar, do you remember anything you learned?
> A.     **I learned my whole foundation for what I did for the next five years.**

(DEx. 11 at 39:24- 40:2).

As this testimony shows[7], Plaintiffs cannot argue that TU's products were valueless.  Accordingly, the Florida and New York claims must also be decertified for lack of a viable damages model.

---

[7] Other class members have also described the value they obtained from TU.  For example, New York class member Charles Lee explained:  "At the end of my mentorship, I felt the program was very knowledgeable, fair, and a good experience.  Even though there still be some places that should be improved, I felt that the education from Trump University got us started in the real estate business.  I cannot imagine how my business would have been now without my experience with Trump and the knowledge, skills from the Trump education."  (DEx. 12 at ¶ 8).  Florida class member Robert Mulack testified:  "I found the classes and course materials extremely helpful and beneficial.  I especially found the website to be useful.  It was very interactive and gave me everything I needed.  I made use of a good amount of info from it, including the lease forms that are provided which I use for all of my rental properties."  (DEx. 13 at ¶ 5).

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

**B.** **Class Counsel Has Proven To Be Inadequate**

One year ago, this Court certified the Classes in this case. Dkt. No. 298. Since the Classes were certified, discovery has closed and Defendants have filed motions for summary judgment. Dkt. Nos. 375 & 377. Yet, Plaintiffs have failed to provide notice to the Classes. In fact, it was not until January 16, 2015, that Plaintiffs first provided a draft notice to counsel for Defendants (a draft that Defendants object to and which will require approval of this Court). Stagg Decl. at ¶ 5.

Where class counsel does not timely provide notice to the class, the class should be decertified due to inadequate representation. *Sheinberg v. Sorensen,* 2007 WL 496872, *3 (D.N.J. Feb. 8, 2007) (decertifying class for lack of adequate representation where class counsel failed to send notice to the class). Counsel's inadequate representation in this regard has created the possibility that the rule against one-way intervention will be violated. "'One-way intervention' occurs when the potential members of a class action are allowed to 'await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests." *London v. Wal-Mart Stores, Inc.,* 340 F.3d 1246, 1252 (11th Cir. 2003) (citing *Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538, 547 (1974). The history of the notice requirements of Rule 23 make clear that the purpose of requiring plaintiffs to provide notice to the class "well *before* the merits of the case are adjudicated" is to avoid one-way intervention. *Schwarzschild v. Tse,* 69 F.3d 293, 295 (9th Cir. 1995); *see* Fed. Rules Civ. Proc., rule 23, advisory com. note on 1966 amendments ("Under proposed subdivision (c)(3), one-way intervention is excluded: the action will have been early determined to be a class or a nonclass action, and in the former case the judgment, whether or not favorable, will include the class, as above stated."). As explained by the Supreme Court, Rule 23 was designed so that "potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation 'as soon as practicable after the commencement of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class. Thereafter they are either non-parties

to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse." *Am. Pipe & Const. Co.,* 414 U.S. at 549.

Here, both Defendants have filed motions for summary judgment which are scheduled to be heard on April 3, 2015. Dkt. Nos. 375 & 377. Despite having a year to do so, Plaintiffs have intentionally delayed, and have not yet provided notice to the Classes. They have done so with the knowledge that Defendant's deadline to file motions for summary judgment is February 20, 2014. Dkt. No. 349 at 2 ("All motions, other than motions to amend or join parties, or motions in limine, **shall be filed** on or before <u>February 20, 2015.</u>") As Plaintiffs have not provided a proposed notice to the court for its approval, and with a standard 60-day response time (following the administrative time to finalize and mail the notice), the deadline for class members to respond to the notice will be well-beyond the hearings on Defendants motions for summary judgment. As such, class members may be in a position to wait to decide to opt-out until a ruling is made on the motions. That way, a class member could elect to opt-out only after a motion is granted, thus avoiding being bound by any adverse decision on the motions. This would be a clear violation of the one-way intervention rule and the mandate of Rule 23 requiring that class membership be determined prior to any rulings on dispositive motions.

As class counsel has delayed in providing class notice, presenting a potential violation of the one-way intervention rule, they have proven to be inadequate counsel, such that certification fails under Rule 23 (a)(4) because the representative parties cannot fairly and adequately protect the interest of the Classes. For this additional reason, the Court should decertify the Classes.

///

///

///

///

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

## IV.   CONCLUSION

For the forgoing reasons, Defendants respectfully request that the Court decertify the Classes.

DATED:  February 19, 2015          **FOLEY & LARDNER LLP**
NANCY L. STAGG
BENJAMIN J. MORRIS


By:   *s/ Nancy L. Stagg*
NANCY L. STAGG
Attorneys for Defendants Trump
University, LLC and Donald J. Trump
nstagg@foley.com

MEMO OF POINTS & AUTHORITIES
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 19, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

<u>*s/ Nancy L. Stagg*</u>
Nancy L. Stagg

CERTIFICATE OF SERVICE
Case No. 10-cv-0940 GPC (WVG)

4842-2340-6625.3