# EXHIBIT 3

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF CALIFORNIA

3

4    TARLA MAKAEFF, BRANDON KELLER,

5    ED OBERKROM, and PATRICIA

6    MURPHY, on Behalf of Themselves

     and All Others Similarly

7    Situated,

8                    Plaintiffs,

9       vs.                    No. 10 CV 0940 IEG (WVG)

10   TRUMP UNIVERSITY, LLC, (aka

11   Trump Entrepreneur Initiative) a

     New York Limited Liability

12   Company, DONALD J. TRUMP, and

13   DOES 1 through 50, inclusive,

14                   Defendants.

15   _____

16

17       CONTINUED VIDEOTAPED DEPOSITION of TARLA MAKAEFF

18                 San Diego, California

19              Tuesday, January 31, 2012

20                     Volume II

21

22   Reported by:

     Kae F. Gernandt

23   RPR, CSR No. 5342

24   Job No. 133737

25   PAGES 283 - 591

                                          Page 283

1           UNITED STATES DISTRICT COURT

2         SOUTHERN DISTRICT OF CALIFORNIA

3

4    TARLA MAKAEFF, BRANDON KELLER,

5    ED OBERKROM, and PATRICIA

6    MURPHY, on Behalf of Themselves

     and All Others Similarly

7    Situated,

8              Plaintiffs,

9       vs.                    No. 10 CV 0940 IEG (WVG)

10   TRUMP UNIVERSITY, LLC, (aka

11   Trump Entrepreneur Initiative) a

     New York Limited Liability

12   Company, DONALD J. TRUMP, and

13   DOES 1 through 50, inclusive,

14             Defendants.

15

16   _____

17

18        Continued Videotaped Deposition of TARLA MAKAEFF,

19   taken on behalf of defendants, at 655 West Broadway,

20   20th Floor, San Diego, California, beginning at

21   9:34 a.m. and ending at 4:36 p.m, on Tuesday,

22   January 31, 2012, before Kae F. Gernandt, RPR, Certified

23   Shorthand Reporter No. 5342.

24

25

                                              Page 284

```
 1    APPEARANCES:
 2
 3    For Plaintiffs:
 4         ZELDES & HAEGGQUIST, LLP
           BY:  AMBER L. ECK
 5         625 Broadway, Suite 906
           San Diego, California  92101
 6         619.342.8000
           ambere@zhlaw.com
 7
           ROBBINS, GELLER, RUDMAN & DOWD
 8         BY:  THOMAS R. MERRICK
                LAUREN LENDZION
 9         655 West Broadway, Suite 1900
           San Diego, California  92101
10         619.231.1059
           tmerrick@rgrdlaw.com
11
12    For Defendants Trump University, LLC, and Donald J.
      Trump:
13
           YUNKER & SCHNEIDER
14         BY:  DAVID K. SCHNEIDER
           655 West Broadway, Suite 1400
15         San Diego, California  92101
           619.233.5500
16         dks@yslaw.com
17    For Prosper, Inc.
18         HILL, JOHNSON & SCHMUTZ
           BY:  WM. KELLY NASH (morning session only)
19         RiverView Plaza, Suite 300
           4844 North 300 West
20         Provo, Utah  84604
           801.375.6600
21         knash@hjslaw.com
22    Also Present:
23         Jill A. Martin, Trump National Golf Club (morning
24    session)
25    Videographer:Scott Tanaka, Veritext
```

                                          Page 285

Exhibit 3 - Page 350

```
 1                    I N D E X

 2                   VOLUME II

 3

 4   TUESDAY, JANUARY 31, 2012

 5

 6   WITNESS

 7

 8   TARLA MAKAEFF

 9

10

11   EXAMINATION BY                              PAGE

12   Mr. Schneider . . . . . . . . . . . . . . . .289

13

14

15

16

17

18

19

20

21

22

23

24

25

                                         Page 286
```

```
 1                    DEPOSITION EXHIBITS

 2                 TARLA MAKAEFF, Volume II

 3

 4     NUMBER              DESCRIPTION              IDENTIFIED

 5     Exhibit 5      Trump University evaluation       386

 6                    sheet dated 10/24/08

 7                    (TU-MAKAEFF 2305)

 8     Exhibit 6      Trump University evaluation       401

 9                    sheet for Creative Financing

10                    Real Estate Workshop

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 287
```

```
 1      SAN DIEGO, CALIFORNIA, TUESDAY, JANUARY 31, 2012

 2                      9:34 A.M.

 3

 4      THE VIDEOGRAPHER:  Good morning.  We are on

 5   the record at 9:34 a.m. on January 31st, 2012.          09:34:02

 6   This is the video-recorded deposition of Tarla

 7   Makaeff, Volume II.  My name is Scott Tanaka, here

 8   with our court reporter, Kae Gernandt.  We're here

 9   from Veritext National Deposition & Litigation

10   Services at the request of counsel for the              09:34:19

11   defendant.  This deposition is being held at

12   655 West Broadway, Suite 1900, San Diego, California

13   92101.

14             Caption of this case is Tarla Makaeff --

15   Makaeff versus Trump University, LLC, Case No.          09:34:37

16   10-cv-0940 IEG (WVG).

17             Please take note that audio and video

18   recording will take place unless all parties agree

19   to go off the record.  Microphones are sensitive and

20   may pick up whispers, private conversations and        09:34:57

21   cellular interference.

22             At this time would counsel please

23   identify themselves for the record.

24      MS. ECK:  Good morning.  Amber Eck for

25   plaintiffs.                                             09:35:06
```

Page 288

```
 1            MR. MERRICK:  Thomas Merrick for plaintiffs.    09:35:07

 2            MS. LENDZION:  Lauren Lendzion for

 3    plaintiffs.

 4            MR. SCHNEIDER:  David Schneider for

 5    defendants.                                             09:35:13

 6            MS. HARRIS:  Jill Martin for defendants.

 7            THE VIDEOGRAPHER:  Court Reporter, please

 8    swear in the witness.

 9

10                    TARLA MAKAEFF,                          09:35:24

11    having been administered an oath, was examined and

12    testified as follows:

13

14                    EXAMINATION, Continued

15    BY MR. SCHNEIDER:                                       09:35:24

16            Q.   Good morning.  You understand you're

17    still under oath?

18            A.   Yes.

19            Q.   When you went to the three-day Fast

20    Track to Foreclosure workshop, did you see any         09:35:31

21    testimonials -- either see or hear any testimonials

22    from other attendees or students?

23            A.   Yes.

24            Q.   And were those testimonials generally

25    positive about Trump University?                        09:35:48
```

Page 289

1          Were those discussed during the seminar?   12:13:11

2      A.   I don't recall exactly what was

3  discussed.

4      Q.   And if you turn the page on -- on 1087,

5  "Agenda, Day 3," there's three bullet points before   12:13:23

6  graduation:   "Work with Hard-Money Lenders" and "20

7  Different Ways to Finance a Deal," Parts 4 and 5.

8          Were those addressed during the program?

9      A.   I don't believe we discussed five parts

10  of 20 different ways.   That would be 100 different   12:13:41

11  ways to finance a deal.   That doesn't seem like that

12  would have happened.   I know he discussed hard-money

13  lenders.

14      Q.   And had you ever heard of hard-money

15  lenders before this program?   12:13:53

16      A.   No.

17      Q.   That was something new that you learned

18  during the program?

19      A.   Yes.

20      Q.   After you completed the program, were   12:14:01

21  you asked to fill out an evaluation?

22      A.   I believe so.

23      Q.   Would you turn to page TU 1528.   That

24  would be in the small binder there.

25      A.   Oh.   12:14:25

Page 400

ERRATA SHEET

Deposition of Tarla Makaeff taken January 30, 2012-January 31, 2012

| Page | Line | Change |
|------|------|--------|
| 54 | 25 | Change "No," to "Yes, I did have an internet marketing mentor, but I'm not sure if it was prior to June of 2008 or after." |
| 361 | 17 | Change "Yes," to "No; I set up an account, but it was a Myspace account, not a Facebook account." |
| 554 | 5 | No," to "I didn't ask Internet Marketing Company for a refund.  I did ask Online Trading Academy for a partial refund, but only in regard to courses I had not yet taken; when they declined, I did not pursue it." |

Subject to the above changes, I certify that the transcript is true and correct.

_____                    4/13/2012
Signature                                          Date

Exhibit 3 - Page 356

```
 1          I, the undersigned, a Certified Shorthand

 2   Reporter of the State of California, do hereby certify:

 3          That the foregoing proceedings were taken before

 4   me at the time and place herein set forth; that any

 5   witnesses in the foregoing proceedings, prior to

 6   testifying, were placed under oath; that a verbatim

 7   record of the proceedings was made by me using machine

 8   shorthand which was thereafter transcribed under my

 9   direction; further, that the foregoing is an accurate

10   transcription thereof.

11          I further certify that I am neither financially

12   interested in the action nor a relative or employee of

13   any attorney of any of the parties.

14          IN WITNESS WHEREOF, I have this date subscribed

15   my name.

16

17   Dated:  2/13/2012

18

19

20

21

22
                 Kae F. Gernandt, CSR No. 5342
23

24

25
```

Page 591

# EXHIBIT 4

1          UNITED STATES DISTRICT COURT

2        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3    _____

                                    )
4    TARLA MAKAEFF, BRANDON KELLER,   )
     ED OBERKROM, and PATRICIA MURPHY, )
5    on Behalf of Themselves and All  )
     Others Similarly Situated,       )
6                                     )
              Plaintiffs,            ) Case No.
7                                     ) 10 CV 0940 CAB (WVG)
          vs.                        )
8                                     )
     TRUMP UNIVERSITY, LLC, (aka Trump )
9    Entrepreneur Initiative) a New   )
     York Limited Liability Company,  )
10   DONALD J. TRUMP, and DOES 1      )
     through 50, inclusive,          )
11                                    )
              Defendants.            )
12   _____)

13

14

15          Videotaped Deposition of Sonny Low

16          taken at 655 West Broadway, Suite 1900,

17          San Diego, California, commencing at

18          9:23 a.m., on Thursday, October 4, 2012,

19          before Kimberly S. Thrall, RPR, CSR No. 11594.

20

21

22

23   Reported by:  Kimberly S. Thrall, RPR, CSR. No. 11594

24               Job No.   54028

25

Page 2

```
 1     APPEARANCES OF COUNSEL:

 2          FOR THE DEFENDANTS:

 3               YUNKER & SCHNEIDER
                 BY:  DAVID SCHNEIDER, ESQ.
 4               655 West Broadway
                 San Diego, California 92101

 5

 6

 7          FOR THE PLAINTIFFS AND PROPOSED CLASS:

 8               ZELDES & HAEGGQUIST
                 BY:  AMBER ECK, ESQ.
 9               625 Broadway
                 San Diego, California  92101

10

11

                      - and -

12

13               ROBBINS GELLER RUDMAN & DOWD
                 BY:  RACHEL JENSEN, ESQ.
14               655 West Broadway
                 San Diego, California 92101

15

16

17

18

19

20     ALSO PRESENT:

21               Christopher Brooks, Video Operator

22               Jessica Labrencis, Law Clerk

23

24

25
```

Page 3

```
 1                        I N D E X

 2

 3    THURSDAY, OCTOBER 4, 2012

 4

 5    WITNESS

 6    SONNY LOW

 7

 8    EXAMINATION BY                              PAGE

 9    Mr. Schneider  ............................. 7, 216

10    Ms. Eck .....................................  214

11

12                       EXHIBITS

13    NUMBER             DESCRIPTION          PAGE   LINE

14    Exhibit No. 1   Notice of Taking Depositions
                      and Request to Produce

15                    Documents at Deposition    11     6

16    Exhibit No. 2   Profit from Real Estate
                      Investing Evaluation       61    23

17

      Exhibit No. 3   Trump Enrollment Form; Bates

18                    Stamp No. TU-LOW60         68    24

19    Exhibit No. 4   Quick Start Real Estate
                      Retreat Evaluation         75    21

20

      Exhibit No. 5   MLS Listings; Bates Stamp Nos.

21                    TU-LOW29 through TU-LOW2937  91   3

22    Exhibit No. 6   Geoff Nowlin's Notes; Bates
                      Stamp Nos. TU-LOW465 through

23                    TU-LOW507                  91    18

24    Exhibit No. 7   Mentoring Sonny Low, San Diego
                      2/19/10 by Geoff Nowlin; Bates Stamp

25                    Nos. TU 130026 and TU 130027  116   6
```

Page 4

|  | | EXHIBITS | | |
|---|---|---|---|---|
| 1 | | | | |
| 2 | NUMBER | DESCRIPTION | PAGE | LINE |
| 3 | Exhibit No. 8 | Letter to Dear Students from Geoff Nowlin; Bates Stamp No. | | |
| 4 | | TU-LOW64 | 127 | 4 |
| 5 | Exhibit No. 9 | Field Mentor Evaluation Form; Bates Stamp No. TU 130025 | 128 | 13 |
| 6 | | | | |
| 7 | Exhibit No. 10 | Program Director's Post Membership Interview dated 2/25/10; Bates Stamp No. | | |
| 8 | | TU 130030 | 136 | 14 |
| 9 | Exhibit No. 11 | Pre-Arrival Homework Documents; Bates Stamp Nos. TU-LOW65 | | |
| 10 | | through TU-LOW96 | 140 | 1 |
| 11 | Exhibit No. 12 | E-mail String between Mr. Low and Mr. Leroux; Bates Stamp Nos. | | |
| 12 | | TU-LOW 728 and 729, TU-LOW1087, TU-LOW1087 through TU-LOW1090, | | |
| 13 | | TU-LOW887 and TU-LOW888 | 141 | 10 |
| 14 | Exhibit No. 13 | Post Mentor Action Plan; Bates Stamp No. TU-LOW695 | 144 | 23 |
| 15 | | | | |
| 16 | Exhibit No. 14 | Memorandum to American Express from Sonny Low dated 6/5/10; Bates Stamp Nos. TU-LOW146 | | |
| 17 | | through TU-LOW150 | 148 | 1 |
| 18 | Exhibit No. 15 | E-mail to Sonny Low from Steve Goff dated 1/6/11; Bates Stamp | | |
| 19 | | No. TU-LOW57 | 156 | 9 |
| 20 | Exhibit No. 16 | Handwritten Notes; Bates Stamp Nos. TU-LOW520 through | | |
| 21 | | TU-LOW530 | 160 | 12 |
| 22 | Exhibit No. 17 | Handwritten Notes; Bates Stamp Nos. TU-LOW773 through | | |
| 23 | | TU-LOW791 | 161 | 6 |
| 24 | Exhibit No. 18 | Quick-Turn Flow Chart; Bates Stamp No. TU-LOW733 | 165 | 22 |
| 25 | | | | |

Page 5

EXHIBITS

| NUMBER | DESCRIPTION | PAGE | LINE |
|---|---|---|---|
| Exhibit No. 19 | Hard-Money Lender Documents; Bates Stamp Nos. TU-LOW399 through TU-LOW405 | 167 | 17 |
| Exhibit No. 20 | Enrollment Contract; Bates Stamp No. TU-LOW1119 | 170 | 20 |
| Exhibit No. 21 | Letter to Dear Friend from Donald Trump; Bates Stamp No. TU-LOW59 | 173 | 14 |
| Exhibit No. 22 | Letter to Sonny Low dated 4/26/10 from Citi Cards | 176 | 5 |
| Exhibit No. 23 | Letter to Donald Trump from Sonny Low; Bates Stamp Nos. TU 130023 through TU 130024 | 177 | 14 |
| Exhibit No. 24 | Letter to Sonny Low from Geoff Nowlin dated 12/8/10 and MLS Documents; Bates Stamp Nos. TU-LOW48 through TU-LOW53 | 178 | 7 |
| Exhibit No. 25 | Handwritten Notes; Bates Stamp Nos. TU-LOW701 through TU-LOW724 | 194 | 9 |
| Exhibit No. 26 | Hard-Money Lender Documents; Bates Stamp Nos. TU-LOW792, TU-LOW385, TU-LOW389 and TU-LOW397 | 208 | 16 |
| Exhibit No. 27 | Letter dated 8/18/09; Bates Stamp No. TU-LOW893 | 212 | 1 |

Page 6

1          SAN DIEGO, CALIFORNIA; THURSDAY, OCTOBER 4, 2012

2                              9:23 A.M.

3

4          THE VIDEOGRAPHER:   This is the start of Tape

5     labeled No. 1 of the videotaped deposition of Sonny Low,

6     in the matter of Makaeff, et al., versus Trump

7     University, LLC, et al., in the United States District

8     Court, Southern District of California.   The case number

9     is 10-CV-0940 CAB (WVG).

10          This deposition is being held at Robbins Geller

11    Rudman & Dowd, 655 West Broadway, Suite 1900, in

12    San Diego, California, on Augu- -- excuse me --

13    October 4th, 2012, at approximately 9:23 a.m.   My name

14    is Christopher Brooks from TSG Reporting, Incorporated,

15    and I am the legal video specialist.   The court reporter

16    is Kim Thrall in association with TSG Reporting.

17          Will counsel please introduce yourself.

18          MR. SCHNEIDER:   David Schneider on behalf of

19    defendants, Donald Trump and Trump University.

20          MS. ECK:   Amber Eck on behalf of plaintiffs.

21    And we have with us our law clerk, Jessica Labrencis,

22    who will just be observing today.   And Rachel Jensen of

23    Robbins Geller may be joining us later.

24          THE VIDEOGRAPHER:   Thank you.

25          Will the court reporter please swear in the

Page 7

1    witness.

2

3                          SONNY LOW,

4        called as a witness, having been first sworn, was

5        examined and testified as follows:

6

7                        EXAMINATION

8    BY MR. SCHNEIDER:

9        Q.    Good morning.   Please state your full name.

10       A.    Sonny Low.

11       Q.    Mr. Low, my name is David Schneider.   I

12   represent Donald Trump and Trump University in a lawsuit

13   that you have filed against my clients.   I'm going to be

14   asking you some questions today.   This process is called

15   a deposition.

16             Have you had a deposition before?

17       A.    No.

18       Q.    Have you had a chance to speak with your

19   attorneys about what we're going to do here today?

20       A.    Yes.

21       Q.    All right.   So just a couple of -- of

22   guidelines I'd like you to consider as we go through the

23   morning and the afternoon.   The first is that this is

24   going to be a series of questions and responses back and

25   forth.   If you could wait for me to finish my question

Page 66

1    attend another Trump University seminar?"

2         And what did you respond?

3    A.    "Yes."

4    Q.    No. 4 stated:   "Would you recommend

5    Trump University seminars to a friend?"

6         And what did you state?

7    A.    "Yes."

8    Q.    And why would you recommend Trump University

9    seminars to a friend?

10   A.    Why?

11   Q.    Yes.

12   A.    Offered information.

13   Q.    Did you believe that you got value for your

14   $1,495?

15        MS. ECK:   Objection.   Vague.

16        THE WITNESS:   Not certain.

17   BY MR. SCHNEIDER:

18   Q.    Why is that?

19   A.    Because real estate investing is a very complex

20   business.

21   Q.    Is that your complete answer?

22   A.    That's my complete answer.

23   Q.    Well, what is it about the fact that real

24   estate investing is very complex that you're not sure if

25   you got value from the seminar?

Page 67

1    A.   Because of the different exit strategies,

2  they're all -- involved a number of steps.  Goff himself

3  as an instructor, I do not know whether he had applied

4  each one of the five I've cited for example.  And also

5  the five involved a number of steps, which he did not

6  have the time to go through each one.  So I stated it

7  was an introduction, possibly a good one, to learn some

8  information.  1,495 is a lot of money.

9    Q.   On the steps that you just mentioned, did

10 Mr. Goff go through some steps for some of the different

11 exit strategies, or did he go through all of the steps

12 for them or -- or what did he do in terms of going

13 through step by step?

14    A.   He went through some of them and was cursory.

15 Other ones that he had his own personal experience, he

16 went through in more detail.

17    Q.   Step by step?

18    A.   That he used for the Texas market.

19    Q.   Other than what you've already told us Mr. Goff

20 stated to you about a mentor, did anyone else make --

21 anybody from Trump University make any representations

22 to you about a mentorship before you purchased it?

23    A.   No.

24    Q.   Did you decide to purchase the mentorship at

25 the end of the three-day workshop, the 1,495 workshop or

Page 210

1   profitable -- Profit in Real Estate Investing, and a

2   thousand dollars for my lawyer, who I hired to do the

3   demand letter, and $25,000 for the in-field mentorship,

4   of which you subtract 7,500 that I've gotten back.

5       Q.   Now, the $995 for the LLC, you received what

6   you paid for for that, didn't you?

7           MS. ECK:   Objection.   Lack of foundation.

8           THE WITNESS:   The LLC was created.

9   BY MR. SCHNEIDER:

10      Q.   And that's what you paid for, right?

11      A.   Yes.

12      Q.   Okay.   And the $1,495 program, you participated

13   in that and enjoyed it, correct?

14          MS. ECK:   Objection.   Lack of foundation.

15   Misstates the witness's testimony.

16          THE WITNESS:   I attended it, but I found out

17   subsequently I could have gotten the same information, a

18   lot of it, from the Internet, and also the examples

19   which Steve Goff talked about were relevant for Texas.

20   And there was no indication that it would be -- it's

21   general information.   So I question the value of the

22   1,495.

23   BY MR. SCHNEIDER:

24      Q.   Do you believe you got any value from it?

25      A.   Very little, minimal.

Page 219

1    it, you'll be able to see it, and Ms. Eck can tell you

2    all about that as well.

3           So I want you to sign the transcript.  Towards

4    the back, there will be a page for your signature and

5    whatever your changes are, with the caution that I just

6    gave, and then return it to your attorney.  And she'll

7    help you work through all this.

8           And then, Counsel, if you'll advise us in

9    writing of any changes and of signature and retain the

10   signed original and make it available.  And in case the

11   signed original isn't available, we can use an unsigned

12   certified copy in place of a signed original?

13          MS. ECK:  That's fine.  And we'd just request

14   30 days for him to review it.

15          MR. SCHNEIDER:  That's fine.

16          Thank you, Mr. Low.  Nice meeting you.

17          MS. ECK:  Thanks.

18          THE VIDEOGRAPHER:  Off the record at 5:41 p.m.

19   And this concludes today's deposition.

20          (Time Noted:  5:41 p.m.)

21

                    _____
22                            SONNY LOW

23          Subscribed and sworn to before me

24          this 29th day of October      2012.

25          _____

Exhibit 4 - Page 368

| Pg. | Ln. | Now Reads | Should Read | Reason |
|---|---|---|---|---|
| 15 | 24 | I was named the urban development officer | as Housing Advisor | Verified after consulting personnel file. |
| 17 | 1-8 | Ronald Carlson/ Mr. Carlson's | Alexandria Panehal/ Ms. Panehal's | Consulted my personnel file. |
| 50 | 1-4 | After..... three days | Strike repetitions | Useless/incomplete verbage |
| 58 | 24-25 | Well, we....--we | Strike text, except last "we" and Ln. 25 text. | Useless/incomplete verbage |
| 64 | 14 | helped my y an -"- and | Strike verbage | Useless verbage |
| 99 | 21 | He | Geoff Nowlin | For clarity |
| 112 | 9 | Insert new text. | At a minimum, I wanted and expected Nowlin's comments on viability of each property to produce profits for me using Trump University's promoted "exit strategies". Since Mr. Nowlin did not do any of this he | For clarity |
| 112 | 11 | my ment--- | Strike useless verbage | For clarity |
| 112 | 12 | properties. | Add:  for us to look at." | For clarity |
| 112 | 13 | in here that | Insert between "here" and "that" | For clarity |
| 112 | 17 | He drove-- | One could drive | For clarity |
| 112 | 18 | flip and you'll | Add between flip and "through the pages in his notes | For clarity |
| 112 | 21-22 | I would say.... who do you-- | I was saying....and thinking, Strike who do you-- | For clarity |
| 117 | 13 | I had ever full-- I mean | me whether I filled out any | For clarity |

Exhibit 4 - Page 369

| Pg. | Ln. | Now Reads | Should Read | Reason |
|-----|-----|-----------|-------------|--------|
| 131 | 23 | that the be- — | Strike out useless verbage. | For clarity |
| 134 | 9 | two aster-- asterisks | two asterisks | For clarity |
| 134 | 24 | with homework. | other homework topics. | For clarity |
| 135 | 14 | "Post-Session Action Plan," | "Post-Mentor Action Plan," | For clarity |
| 136 | 4-13 | I'll move to strike *after, "Yes, I did"* | Leave text as is *lines 4 to 13.* | This is my recorded *testimony.* |
| 137 | 5 | completed by that-- | Strike "that--" | For clarity |
| 146 | 5 | Irving--. | Strike "Irving--" | For clarity |
| 166 | 20-21 | 1,495 when Steve Trump-- | 1,495 after which Steve Goff saw that I had paid $25,000 for the Trump Gold Elite Program for the 3 day In-Field Mentor-ship. | For clarity |
| 168 | 11 | per my re-collection. | Add: "Also, another friend in real estate suggested to me "hard money lenders" who she knew. | New information per my recollection. |
| 168 | 20 | the Internet myself. | Add: or they were suggested to me by my friend in real estate. | New information per my recollection. |
| 187 | 16 | That is not in here. | Add:  Then there was the description of the "In-Field-Mentorship" printed on Trump University letterhead that described what we could expect from a Trump Mentor for 3 days. | New information. |
| 199 | 7,8,9 | Okay.  Then-- I gave you the-- ....I understand. | Strike 7,8,9 text. | For clarity |

Exhibit 4 - Page 370

Page 220

REPORTER'S CERTIFICATION

I, Kimberly Thrall, Certified Shorthand Reporter and Registered Professional Reporter, in and for the State of California, do hereby certify:

That the witness named in the foregoing deposition was, before the commencement of the deposition, duly administered an oath in accordance with the Code of Civil Procedure Section 2094; that the testimony and proceedings were reported stenographically by me and later transcribed through computer-aided transcription under my direction and supervision; that the foregoing is a true record of the testimony and proceedings taken at that time.

IN WITNESS WHEREOF, I have hereunto subscribed my name this 16th day of October, 2012.

*Kimberly S. Thrall*

Kimberly S. Thrall, RPR, CSR No. 11594

# EXHIBIT 5

**Paula Levand**                                      **Makaeff v. Trump University**

```
 1        UNITED STATES DISTRICT COURT OF CALIFORNIA

 2         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4  TARLA MAKAEFF, BRANDON      )
    KELLER, ED OBERKROM and     )
 5  PATRICIA MURPHY, on behalf  )
    of themselves and all others )
 6  similarly situated,         )
                                )
 7             Plaintiffs,       )   Index No.
                                )   3:10-CV-00940-CAB
 8        VS.                    )
                                )
 9  TRUMP UNIVERSITY, LLC, (AKA )
    TRUMP ENTREPRENEUR          )
10  INITIATIVE), a New York     )
    Limited Liability Company,  )
11  DONALD TRUMP, and DOES 1    )
    through 50, inclusive,      )
12                              )
             Defendants.        )
13 _____)
   _____)

14

15

16

17           DEPOSITION OF PAULA LEVAND

18             Los Angeles, California

19             Monday, June 17, 2013

20

21

22

23

24  Reported by:  NIKKI ROY
    CSR No. 3052
25  Job No.: 10006477
```

**Paula Levand**                                **Makaeff v. Trump University**

1        Deposition of PAULA LEVAND, taken before NIKKI

2   ROY, CSR No. 3052, a Certified Shorthand Reporter for

3   the State of California, commencing at 9:40 a.m., on

4   Monday, June 17, 2013, in the offices of Glancy,

5   Binkow and Goldberg, LLP, 1925 Century Park East,

6   Suite 2100, Los Angeles, California on behalf of the

7   Plaintiffs.

8

9

10  APPEARANCES OF COUNSEL:

11

12  FOR THE PLAINTIFFS:

13       ROBBINS GELLER RUDMAN & DOWD LLP
         BY:  JASON FORGE, Attorney at Law
14       -- and -- RACHEL L. JENSEN, Attorney at Law
         655 West Broadway
15       Suite 1900
         San Diego, California 92101
16       619.231.1058
         jforge@rgrdlaw.com
17       rachelj@rgrdlaw.com

18

19  FOR THE DEFENDANTS:

20       YUNKER & SCHNEIDER
         BY:  DAVID K. SCHNEIDER, Attorney at Law
21       655 West Broadway
         Suite 1400
22       San Diego, California 92101
         619.233.550
23       dks@yslaw.com

24

25

**Paula Levand**                                              **Makaeff v. Trump University**

```
 1    APPEARANCES OF COUNSEL (CONTINUED):


 2


 3    FOR THE DEPONENT:

 4          HORN & LUSBY LLP
            BY:  PAUL H. LUSBY, Attorney at Law
 5          2600 Foothill Boulevard
            Suite 203
 6          Glendale, California 91214
            818.542.6300
 7          plusby@horn-lusby.com

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Page 3**

**Paula Levand**                                                                     **Makaeff v. Trump University**

```
 1                    I N D E X

 2

 3    WITNESS                EXAMINATION                      PAGE

 4   PAULA LEVAND

 5                      MR. FORGE                    6, 178, 190

 6                      MR. SCHNEIDER               131, 188,

 7                                                  192

 8

 9                    E X H I B I T S

10

11      NUMBER        DESCRIPTION                            PAGE

12   Exhibit 1      Subpoena to Testify At a              8
                    Deposition in a Civil Action
13
     Exhibit 1-A    Collection of documents               11
14
     Exhibit 2      Declaration of Paula Levand,          28
15                  Bates Nos. Ex. 14 - 3536 through
                    Ex. 14 - 3541
16
     Exhibit 2-A    Declaration of Paula Levand,         106
17                  Bates Nos. TU 140053 through
                    TU 140055
18
     Exhibit 3      Declaration of Paula Levand,          31
19                  Bates Nos. Ex. 148 - 150 through
                    Ex 148 - 152
20
     Exhibit 4      DVD Makaeff v. Trump University,      91
21                  Bates Nos. Ex. 1, TU 123460, Eck
                    Declaration in Support of
22                  Plaintiffs' Mtn for Class Cert,
                    Appt of Class Reps & Appt of
23                  Class Counsel

24   Exhibit 6      Document, Bates Nos. TU 137749       115
                    through TU 137759
25
```

**Paula Levand**                                    **Makaeff v. Trump University**

```
 1                    I N D E X (CONTINUED):

 2

 3                    EXHIBITS (CONTINUED):

 4      NUMBER          DESCRIPTION                    PAGE

 5   Exhibit 7      E-mail chain, Bates Nos.          185
                    TU 155039 through TU 155053
 6

 7

 8

 9             QUESTIONS INSTRUCTED NOT TO ANSWER

10                    Page      Line

11                    183        18
                      184         8
12                    185         8
                      186         9
13                    187        11

14

15

16             INFORMATION REQUESTED

17                    None

18

19

20

21

22

23

24

25
```

```
 1        LOS ANGELES, CALIFORNIA, MONDAY, JUNE 17, 2013

 2                          9:40 A.M.

 3

 4                        PAULA LEVAND,

 5              having been first duly sworn, was

 6              examined and testified as follows:

 7

 8                        EXAMINATION

 9   BY MR. FORGE:

10        Q.   Good morning, Ms. Levand.

11        A.   Good morning.

12        Q.   I know this is probably the top place you'd

13   want to be here today --

14        A.   Yes.

15        Q.   -- on a Monday morning, but I'm going to try

16   to make this as painless as possible.

17             I assume you've never been deposed before?

18        A.   No.

19        Q.   So I know you've had a chance to speak with

20   your attorney this morning; is that right?

21        A.   Yes.

22        Q.   And just for the record, your attorney's

23   name is?

24        A.   Paul Lusby.

25        Q.   How long have you known Mr. Lusby?
```

**Paula Levand**                                    *Makaeff v. Trump University*

```
 1   broad, it offered -- I have to say there was a lot of

 2   information.  I didn't utilize as much of the

 3   information as I could have, should have and would

 4   have -- if -- so I'm saying I still have the

 5   information I can turn to.

 6        Q.   Are the -- did you -- were you provided

 7   written materials when you went to the various

 8   workshops and programs?

 9        A.   Yes.

10        Q.   And do you ever reference those materials?

11        A.   Yes.

12        Q.   And are those of value to you?

13        A.   Yes, they are of value.  I've kind of gotten

14   away from real estate a little bit.

15        Q.   Well, let me ask it in this context.  For

16   your endeavors in real estate, did you refer to those

17   written materials as a resource?

18        A.   Yes.

19        Q.   And you found them to be valuable for that

20   purpose?

21        A.   Yes, and the notes I took.

22        Q.   And those were notes that you took during

23   the various seminars?

24        A.   Class, yes.

25        Q.   And the information that you received in
```

**Page 151**

**Paula Levand**                                                    *Makaeff v. Trump University*

1    those classes you found to be valuable?

2        A.   Yes.   I'm trying to think.   The asset

3    protection was the one I got a book from.   And I'm

4    trying to think, that was mainly the resources prior

5    to the -- and so a lot of it was the note taking in

6    the live events.

7        Q.   I'm sorry.   Could you say that again, I'm

8    not sure I understood your response.

9        A.   Well, the notes we took like during class

10   were -- were helpful.   The books that we could

11   purchase were -- you know, they're materials that I

12   could refer to.   And I have.

13       Q.   Do you recall any of the instructors' names

14   who taught any of the five or six workshops that you

15   attended?

16       A.   There was James Harris.

17       Q.   And what'd you think of him?

18       A.   He was very good.

19       Q.   Knowledgeable?

20       A.   Yes.   Very positive.

21           MR. FORGE:   Interject, lack of foundation.

22   BY MR. SCHNEIDER:

23       Q.   You found him to be knowledgeable, correct?

24       A.   Yes.   I respected him.

25       Q.   And energetic?

**www.aptusCR.com**
Exhibit 5 - Page 379

Paula Levand                                    *Makaeff v. Trump University*

1   loss money on your first real estate transaction?

2       A.   Or break even, yeah.  Your -- your profit is

3   going to be when you -- after you get to know the

4   area, when you get to know your -- the people that

5   you want to work with you.  So that you have your

6   team together.  And then you know what -- what you

7   can -- what -- how to do it, how to purchase, rehab.

8       Q.   Of all the instructors that you heard give

9   presentations at Trump University program, so these

10  would be the workshops, the fast track to

11  foreclosure.  Just the live events.  Putting aside

12  your mentorship for just a moment.

13      A.   And the Webinar trainings?

14      Q.   Right.  Let's put those aside just for a

15  moment.

16      A.   Okay.

17      Q.   Just for the live events, for you

18  personally, based on your knowledge of real estate,

19  did you find each of the experts to be knowledgeable

20  in their field?

21           MR. FORGE:  Objection to form and

22  foundation.

23           THE WITNESS:  I felt they were

24  knowledgeable.

25  ///

www.aptusCR.com
Exhibit 5 - Page 380

**Paula Levand**                              *Makaeff v. Trump University*

1    BY MR. SCHNEIDER:

2        Q.   And, in fact, you learned something from

3    each of them?

4        A.   Yes.

5        Q.   And did you feel that you got value for your

6    money?

7        A.   Yes.

8        Q.   Do you recall who taught the wealth

9    preservation program?

10       A.   Yes.  Let me think.  I just saw his name.

11   Michael Potter was the one that taught the second --

12   the second and third one I went to.  And it was out

13   of JJ Childers.  He was in his office.  JJ was there

14   at the beginning.  And then -- and I can't remember

15   his name.

16       Q.   So did JJ Childers teach some of the first

17   program?

18       A.   He taught just a few minutes because he had

19   to go somewhere.  So he was like there for like a

20   half-hour on the second.  And then Glen, I think

21   it's -- Glen Purdy was the one that taught the second

22   asset protection.

23       Q.   And Michael Potter taught which ones?

24       A.   He taught -- I'm losing track.  The one -- I

25   went to one in Southern California that he taught.

**Paula Levand**                                  **Makaeff v. Trump University**

```
1          DECLARATION UNDER PENALTY OF PERJURY

2

3      I, PAULA LEVAND, do hereby certify under penalty

4   of perjury that I have read the foregoing transcript

5   of my deposition taken June 17, 2013; that I have

6   made such corrections as appear noted herein, in ink,

7   initialed by me; that my testimony as contained

8   herein, as corrected, is true and correct.

9

10     DATED this   17   day of  July        ,

11  2013, at   Valencia        , California.

12

13

14

15

16

17

18

19

20              Paula Levand

21              PAULA LEVAND

22

23

24

25
```

**Paula Levand**                                    **Makaeff v. Trump University**

1    DEPOSITION ERRATA SHEET
2    CASE NAME: Makaeff v. Trump University
     DEPOSITION DATE: 06/17/2013
3    WITNESS NAME: Paula Levand
4    Reason Codes:  1. To clarify the record.
                    2. To conform to the facts.
5                   3. To correct transcription errors.
6    Page _121_ Line _2_ Reason Code _____
7    From _It was included_____ to _There was an additional charge_
8
     Page _174_ Line _23_ Reason Code _____
9
     From _less -- and asset protection_ to _less -- on asset protection_
10
11   Page _____ Line _____ Reason Code _____
12   From _____ to _____
13
     Page _____ Line _____ Reason Code _____
14
     From _____ to _____
15
16   Page _____ Line _____ Reason Code _____
17   From _____ to _____
18
     Page _____ Line _____ Reason Code _____
19
     From _____ to _____
20
21   Page _____ Line _____ Reason Code _____
22   From _____ to _____
23
     Page _____ Line _____ Reason Code _____
24
     From _____ to _____
25

**Page 196**

Errata Sheet

Page 174 line 23   From: less --and asset protection
To: less -- on asset protection was more ...

Page 121 line 2
    From : It was included (though they were referring to seminar)
    To : There was additional charge for asset protection's kidd package
        it was not included.

Exhibit 5 - Page 384

**Paula Levand**                                    **Makaeff v. Trump University**

1   Page _____ Line _____ Reason Code _____
2   From _____ to _____
3
    Page _____ Line _____ Reason Code _____
4
    From _____ to _____
5
6   Page _____ Line _____ Reason Code _____
7   From _____ to _____
8
    Page _____ Line _____ Reason Code _____
9
    From _____ to _____
10
11  Page _____ Line _____ Reason Code _____
12  From _____ to _____
13
    Page _____ Line _____ Reason Code _____
14
    From _____ to _____
15
16  Page _____ Line _____ Reason Code _____
17  From _____ to _____
18
19  _____ Subject to the above changes, I certify that the
            transcript is true and correct
20
21  _____ No changes have been made. I certify that the
            transcript is true and correct.
22
23
                        _Paula Levand_____
24                      PAULA LEVAND
25

**Page 197**

Exhibit 5 - Page 385

```
 1    STATE OF CALIFORNIA           )
                                    )   ss.
 2    COUNTY OF LOS ANGELES         )

 3

 4          I, NIKKI ROY, Certified Shorthand Reporter,

 5    certificate number 3052, for the State of California,

 6    hereby certify:

 7          The foregoing proceedings were taken before me

 8    at the time and place therein set forth, at which time

 9    the witness was placed under oath by me.

10          The testimony of the witness and all objections

11    at the time of the examination were recorded

12    stenographically by me and were thereafter transcribed;

13          The foregoing transcript is a true and correct

14    transcript of my shorthand notes so taken;

15          I further certify that I am neither counsel for

16    nor related to any party to said action nor in any way

17    interested in the outcome thereof.

18          In witness whereof I have hereunto subscribed my

19    name this  21   day of June, 2013.

20

21

22

23

24

25
```

Exhibit 5 - Page 386

# EXHIBIT 6

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

_____

ART COHEN, Individually and on Behalf    )
of All Others Similarly Situated,        )
                                         )
            Plaintiff,                   )
                                         ) Case No.:
        vs.                              ) 3:13-cv-02519-GPC-WVG
                                         )
DONALD J. TRUMP,                         )
                                         )
            Defendant.                   )
_____ )

Videotaped Deposition of ART COHEN

Volume I (Page Nos. 1 through 157, Inclusive)

Thursday, May 29, 2014

Reported by Lindy DeBoer, RPR, CSR No. 5405

Exhibit 6 - Page 387

Deposition of Art Cohen                                         COHEN, et al. vs. TRUMP

```
 1                          APPEARANCES

 2


 3         FOR THE PLAINTIFF:

 4              ROBBINS GELLER RUDMAN & DOWD, LLP
                BY:  JASON A. FORGE, ESQ.
 5              655 West Broadway, Suite 1900
                San Diego, CA 92101
 6              P (619) 231-1058
                F (619) 231-7423
 7              jforge@rgrdlaw.com

 8
                ZELDES HAEGGQUIST & ECK, LLP
 9              BY:  AMBER L. ECK, ESQ.
                625 Broadway, Suite 1000
10              San Diego, California 92101
                P (619) 342-8000
11              F (619) 342-7878
                ambere@zhlaw.com

12

13         FOR THE DEFENDANT:

14              FOLEY & LARDNER, LLP
                BY:  NANCY L. STAGG, ESQ.
15              3579 Valley Centre Drive, Suite 300
                San Diego, California  92130
16              P (858) 847-6700
                F (858) 792-6773
17              nstagg@foley.com

18
                JILL A. MARTIN, ESQ.
19              C/O Trump National Golf Club Los Angeles
                One Trump National Drive
20              Rancho Palos Verdes, California  90275
                jmartin@trumpnational.com

21

22

23

24

25
```

Case 3:10-cv-00940-GPC-WVG   Document 380-6   Filed 02/19/15   PageID.24586   Page 46 of 145

Deposition of Art Cohen                                                    COHEN, et al. vs. TRUMP

```
 1                    I N D E X  (CONTINUED)

 2

 3        THE VIDEOGRAPHER:

 4             CHRISTIAN TEARE, AJL LITIGATION MEDIA, INC.
               655 West Broadway, 17th Floor
 5             San Diego, California  92101
               P (619) 687-6600
 6             F (619) 645-0216

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21                    DEPOSITION OF ART COHEN,

22    taken on behalf of the Defendant, at 655 West Broadway,

23    Suite 1900, San Diego, California, commencing on

24    Thursday, May 29, 2014, 9:58 a.m., before Lindy DeBoer,

25    Certified Shorthand Reporter, RPR, CSR No. 5405.
```

```
 1                          I N D E X

 2

 3    DEPOSITION OF ART COHEN

 4    May 29, 2014

 5

 6    EXAMINATION                                      PAGE

 7

 8       By Ms. Stagg                              6, 140

 9       By Mr. Forge                                 129

10

11    DEFENDANT'S EXHIBITS

12    Exhibit 1      Copy of Complaint, Case             96
                     No. '13CV2519 DMS RBB (35 pages)
13
      Exhibit 2      Copy of invitation (4 pages)        97
14
      Exhibit 3      Copy of advertisement (1 page)     102
15
      Exhibit 4      Copy of Fast Track to Foreclosure  107
16                   Training survey (2 pages)

17    Exhibit 5      Copy of Declaration of Art Cohen in 110
                     Support of Plaintiff's Motion For Class
18                   Certification (4 pages)

19

20    INSTRUCTIONS NOT TO ANSWER:           PAGE     LINE
                                            145       14
21

22

23

24

25
```

Exhibit 6 - Page 390

|          |     |                                                                |
|----------|-----|----------------------------------------------------------------|
|          | 1   | SAN DIEGO, CALIFORNIA, THURSDAY, MAY 29, 2014, 9:58 A.M.        |
|          | 2   | * * *                                                          |
| 09:58:17 | 3   | THE VIDEOGRAPHER:  Good morning.  We are on the                |
| 09:58:18 | 4   | record.  This is the videotaped deposition of Art Cohen,       |
| 09:58:22 | 5   | taken in the matter of Art Cohen versus Donald Trump,          |
| 09:58:26 | 6   | U.S. District Court, Southern District of California.          |
| 09:58:30 | 7   | It's Case 13 cv-2519.  Today we are in the law offices of      |
| 09:58:37 | 8   | Robbins Geller, 655 West Broadway, Suite 1900, in              |
| 09:58:42 | 9   | San Diego.  Today's date is Thursday May 29, 2014, and         |
| 09:58:48 | 10  | the time is 9:58 a.m.                                          |
| 09:58:51 | 11  | My name is Christian Teare, a legal video                      |
| 09:58:55 | 12  | specialist with AJL Litigation Media, 655 West Broadway,       |
| 09:58:58 | 13  | 17th floor, in San Diego.                                     |
| 09:59:01 | 14  | The certified shorthand reporter is Lindy                      |
| 09:59:04 | 15  | DeBoer, with Kramm Court Reporting in San Diego.               |
| 09:59:08 | 16  | Video and audio recording will be taking place                 |
| 09:59:10 | 17  | at all times during this deposition unless counsel have        |
| 09:59:13 | 18  | specifically requested to go off the record.                   |
| 09:59:17 | 19  | If counsel would please state their appearances,               |
| 09:59:23 | 20  | the reporter will swear in the witness.                        |
| 09:59:24 | 21  | MS. ECK:  Amber Eck, for plaintiff.                            |
| 09:59:25 | 22  | MR. FORGE:  Jason Forge, for plaintiff.                        |
| 09:59:27 | 23  | MS. STAGG:  Nancy Stagg of Foley & Lardner, on behalf          |
| 09:59:30 | 24  | of the defendant Donald Trump.                                 |
| 09:59:32 | 25  | MS. MARTIN:  Jill Martin, for Defendant Donald Trump.          |

| | | |
|---|---|---|
| 09:59:33 | 1 | ART COHEN, |
| 09:59:33 | 2 | having been first duly sworn, testified as follows: |
| 09:59:47 | 3 | |
| | 4 | EXAMINATION |
| 09:59:47 | 5 | BY MS. STAGG: |
| 09:59:48 | 6 | Q    Good morning, Mr. Cohen. |
| 09:59:49 | 7 | A    Good morning. |
| 09:59:49 | 8 | Q    I introduced myself to you off the record.  My |
| 09:59:52 | 9 | name is Nancy Stagg and I represent the defendant in this |
| 09:59:54 | 10 | case, Donald Trump.  Thank you for coming in here this |
| 09:59:57 | 11 | morning.  I have some questions for you regarding the |
| 09:59:59 | 12 | lawsuit that you filed against Mr. Trump. |
| 10:00:02 | 13 | A    Yes. |
| 10:00:03 | 14 | Q    Do you understand that the oath that you just |
| 10:00:04 | 15 | took by the court reporter is the same oath that you |
| 10:00:07 | 16 | would take if you were testifying in a court of law? |
| 10:00:09 | 17 | A    I do. |
| 10:00:10 | 18 | Q    And that's to tell the truth, the whole truth, |
| 10:00:11 | 19 | and nothing but the truth, correct? |
| 10:00:13 | 20 | A    I do. |
| 10:00:13 | 21 | Q    Okay.  Have you ever had your deposition taken |
| 10:00:15 | 22 | before? |
| 10:00:15 | 23 | A    Yes. |
| 10:00:16 | 24 | Q    On how many occasions? |
| 10:00:19 | 25 | A    One. |

Deposition of Art Cohen                                    COHEN, et al. vs. TRUMP

| | | |
|---|---|---|
| 10:45:59 | 1 | A   That is correct. |
| 10:46:00 | 2 | Q   All right.  And were you expecting to get a |
| 10:46:03 | 3 | degree or certificate out of that program? |
| 10:46:08 | 4 | A   I was expecting to get a certificate, not a |
| 10:46:12 | 5 | degree from the three-day class. |
| 10:46:15 | 6 | Q   What kind of certificate were you understanding |
| 10:46:18 | 7 | you were going to receive? |
| 10:46:20 | 8 | A   That we attended the class. |
| 10:46:24 | 9 | Q   Did you get that? |
| 10:46:25 | 10 | A   I believe we did, yes. |
| 10:46:26 | 11 | Q   All right.  At the conclusion of that three-day |
| 10:46:33 | 12 | workshop, were you satisfied that you had received value |
| 10:46:38 | 13 | equal to what you had paid, $1,495? |
| 10:46:43 | 14 | A   Yes. |
| 10:46:45 | 15 | Q   What was your overall impression at the |
| 10:46:47 | 16 | conclusion of that three-day Fast Track to Foreclosure |
| 10:46:50 | 17 | workshop? |
| 10:46:51 | 18 | A   That it was a good program. |
| 10:46:54 | 19 | Q   Can you give me a description of why you thought |
| 10:46:57 | 20 | it was a good program. |
| 10:47:00 | 21 | A   I thought that James Harris did a good job in |
| 10:47:05 | 22 | explaining a number of different techniques related to |
| 10:47:13 | 23 | foreclosure at a very, very high level, and then thought |
| 10:47:20 | 24 | that there was an opportunity to learn a lot more, as he |
| 10:47:25 | 25 | stated, through one of the more elite-type programs, |

10:47:31   1    whether it be Silver or Gold or whatnot.

10:47:32   2        Q    Did you feel that your expectations for that

10:47:35   3    three-day workshop had been met at the conclusion of that

10:47:37   4    workshop?

10:47:39   5        A    Yes.

10:47:40   6        Q    Did you have any complaints whatsoever about

10:47:44   7    that three-day Fast Track to Foreclosure workshop at the

10:47:47   8    end of that workshop?

10:47:49   9        A    No.   No.

10:47:50   10       Q    At some point later in time did you become

10:47:53   11   dissatisfied with the workshop?   Again, the three-day.

10:47:59   12       A    No.

10:47:59   13       Q    All right.  Why are you suing Donald Trump with

10:48:05   14   regard to that workshop in your lawsuit?

10:48:09   15       A    Well, I learned in 2011 that Donald Trump had

10:48:17   16   nothing to do with this workshop, that he -- that what

10:48:23   17   was being taught were not Donald Trump's techniques,

10:48:28   18   secrets, or whatnot.   It was all just a giant fraud.   He

10:48:34   19   wasn't involved in the program at all, yet they were

10:48:37   20   using his name to entice me to invest $35,000

10:48:41   21   additionally in a program that he had nothing do with.

10:48:45   22   So that's why he's being sued.

10:48:48   23       Q    Okay.  So you're suing Donald Trump because he

10:48:51   24   had nothing to do with the program that you attended?

10:48:55   25       A    Because he perpetrated a fraud through --

*Art Cohen v. Donald J. Trump*, No. 3:13-cv-02519-GPC-WVG (S.D. Cal.)
ERRATA SHEET
for Transcript of Art Cohen, taken May 29, 2014 and produced June 12, 2014

| Page | Line | Errata Change |
|------|------|---------------|
| 37 | 5 | Change "Yes," to "Based on what I knew at the time, yes." |

Reason for the change: to clarify the record, which is what I tried to do 30 seconds later.

| 37 | 9 | Change, "No. No." To "Not at the time." |

Reason for change: to clarify the record, which is what I tried to do 20 seconds later.

| 37 | 12 | Change "No" to "Yes, once I learned that what Trump University had promised (instructors and mentors hand-picked by Donald Trump, Donald Trump's involvement, Donald Trump's real estate investing secrets, an accredited University) did not exist, I was dissatisfied with the workshop and my experience with Trump University." |

Reason for change: to clarify the record; I misunderstood and thought she was asking whether I became dissatisfied prior to learning the truth about Mr. Trump's lack of involvement. Obviously, I became dissatisfied upon learning that information, which I tried to clarify on the very next question and later in the transcript.

*See, e.g.* Transcript at 138:17-24:
MR. FORGE: "Would you have been satisfied if you had known the truth about Mr. Trump's lack of involvement in the curriculum for Trump University?
Ms. STAGG: Same objections.
THE WITNESS: I wouldn't have participated in the program at all if I had known that Trump was not involved in it. His name was all over it.
MR. FORGE: But had you gone through the program without knowing it and then found out immediately after the program, would you have been satisfied?
THE WITNESS: No."

| 40 | 20 | Change "strike" to "write" due to transcription error and/or to clarify the record in case I misspoke. |
| 54 | 13-16 | Change "There was nothing that I learned in particularly later other than he didn't understand that I could not be compensated for a – certain real estate transactions that he thought I could be," to "Yes, I do not believe Lucas was an expert in the techniques he was teaching, because he taught techniques involving referring potential buyers to brokers for compensation, which the brokers later told me was illegal, since I was not a real estate agent." |

Reason for change: to clarify the record, as I explained other places in the transcript at pp. 39-40, 49, 57-58.

| 57 | 17 | Change "mute issue," to "moot issue" due to transcription error. |
| 58 | 14 | Change "And how being a real estate -- " to "And how being a real estate |



Exhibit 6 - Page 395

agent" Reason for change: adding missing word "agent"

67  13  Change "Not that I recall, no" to " Yes, currently AJZN, Inc. is involved in a securities/commodities case filed June 28, 2012 in the Northern District of California, Case No. 2012-CV-03348, that was later transferred to the District Court in Delaware . Case No. 2013-CV-00149."

Reason for change: After reading the question starting on line 9 on Page 67, I realized that the question was broader than I thought at the time. I thought the question was asking about any other patent litigation, rather than all litigation.

68  2  Change "depositions" to "deposition transcripts" to clarify the record.

71  21  Change "no," to "Yes."

Reason for change: to clarify the record; I misunderstood and thought she was asking about my experience at the time, rather than later, after I learned the truth. I clarified this almost immediately and later in the transcript.

*See, e.g.* Transcript at 73:3-8:
THE WITNESS: "At the time I thought I got value. Today I thought – today I feel I was – I was misled, I was cheated because the information that was provided was not directly from Donald Trump, you know. He had nothing to do with the program, yet he used – yet he said that he did."

See also Transcript at 135:5-11:
MR. FORGE: "…[K]nowing what you now know about Mr. Trump's lack of any substantive involvement with Trump University, you don't feel that either of these programs that you paid for have any value whatsoever, is that true?
THE WITNESS: That is true."

77  22-23  Change the word "depositions" to "documents" to clarify the record.

Reason for change: I realized after my deposition that the papers I looked at were documents, letters and pleadings, not deposition transcripts.

79  7  Change "the deposition" to "a document – a pleading signed by Trump's attorney, David Schneider."

Reason for change: I realized after my deposition, that the document was a pleading, not a deposition transcript.

83  17-18  Delete "time, effort"

Reason for change: As I clarified later in my deposition, I am not seeking reimbursement for my time or investment effort, but only for money invested by myself and other Trump University members, treble damages, and other relief as requested in the Complaint.
*See, e.g.,* Transcript at 86-88, 134-135.

88  5  Change "Yes, I am still seeking everything I said," to "I am not seeking recovery for my time and effort"

Same reason as for page 83, lines 17-18.

89  15  Change "trouble damages" to "treble damages" to correct transcription error.

90  16  Change "trouble damages" to "treble damages" to correct transcription

Exhibit 6 - Page 396

| | | error. |
|---|---|---|
| 109 | 3 | Change "I don't value now today," to "I don't now think he's an expert." Reason: to clarify the record -- either I misspoke or this is a transcription error. |
| 112 | 15 | Change "No" to "Yes. I have been represented by contingency attorneys on a personal injury matter in the past: once when another vehicle hit my driver's side door after driving through a red light and another time when a car re-ended me on highway 101.  In both cases I hired counsel on a contingency basis to recover medical expenses and related damages.  I don't have records or recollection regarding the exact dates, other than one event happened sometime in the early 1990s, and the other in the late 1990s or early 2000s.  Both events occurred in the Santa Clara County, California.<br><br>Reason for change: At the time of questioning, I forgot about these relatively minor cases where I retained attorneys on a contingency basis. |
| 132 | 15 | Change "By Ms. Martin" to "By Mr. Forge" to correct transcription error. |
| 133 | 8 | Change "Donald truck" to "Donald Trump" to correct transcription error. |
| 144 | 5 | Change "In the news," to add "In the news and in a letter from the New York Department of Education to Donald Trump that I learned about prior to filing my complaint and looked at prior to my deposition."<br><br>Reason for the change: I remembered after the deposition that I had looked at the letter from the NY Department of Education to Donald Trump telling him that he could not call Trump University a University. |

Subject to the above changes, I certify that the transcript is true and correct.

PLAINTIFF ART COHEN                                                 July _13_ , 2014
1

925430 ‹ 925430 ›

Exhibit 6 - Page 397

of Art Cohen                                                      COHEN, et al. vs. TRUMP

1        I, Lindy DeBoer, Certified Shorthand Reporter

2   licensed in the State of California, Certificate No.

3   5405, hereby certify that the deponent was by me first

4   duly sworn, and the foregoing testimony was reported by

5   me and was thereafter transcribed with computer-aided

6   transcription; that the foregoing is a full, complete,

7   and true record of said proceeding.

8        I further certify that I am not of counsel or

9   attorney for either or any of the parties in the

10  foregoing proceeding and caption named or in any way

11  interested in the outcome of the cause in said caption.

12       The dismantling, unsealing, or unbinding of the

13  original transcript will render the reporter's

14  certificate null and void.

15       In witness whereof, I have hereunto set my hand

16  this 10th day of June, 2014.

17       ___X___ Reading and signing was requested.

18       _____ Reading and signing was waived.

19       _____ Reading and signing was not requested.

20

21

22

23   *Lindy DeBoer*

24   LINDY DeBOER, CSR No. 5405

25

Exhibit 6 - Page 398

# EXHIBIT 7

David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:  (619) 233-5535
Email:  dks@yslaw.com

Attorneys for Defendants TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative, LLC, a New York Limited Liability Company, DONALD J. TRUMP, and DOES 2 through 50, inclusive, <br><br> Defendants. <br> _____ <br> AND ALL RELATED CROSS-ACTIONS. <br> _____ | Case No. 10 CV 0940 CAB (WVG) <br><br> <u>CLASS ACTION</u> <br><br> DECLARATION OF MEENA MOHAN <br><br><br> DATE:  February 12, 2013 <br> TIME:  2:30 p.m. <br> CTRM:  2 — 4th Floor |

**DECLARATION OF MEENA MOHAN**

I, Meena Mohan, declare:

1.       I am over the age of 18 and not a party to this action. The following facts are based on my own personal knowledge and, if called as a witness, I would testify to them.

2.       I am providing this declaration freely and voluntarily. I have had the opportunity to review this declaration and make appropriate changes that captures my experiences with Trump Entrepreneur Initiative program. I understand that Trump University (aka Trump Entrepreneur Initiative) may use this declaration to support its defense in *Makaeff v. Trump University et al.*, a case described to me.

3.       Prior to joining Trump University, I was a homemaker with no experience in Real Estate business. My children had sufficiently grown up that I had time at hand to spend on learning more about Real Estate Business and Investments. I knew the best way to start would be to enroll in some sort of a mentoring program- I did my research online and found Trump University offering a program that matched my requirements.

4.       I enrolled in June 2009 and signed up first, for the three-day seminar. The course had great instructors and provided me with lots of good information on Real Estate Business. The program and instructions were very hands on, much to my liking. The instructors were very practical, demonstrating how to make enquiries, understand the seller motivation and then try to close out on the opportunities. Course participants were asked to bring in Real Estate leads from local newspapers and other Real Estate ads and the instructors demonstrated live to the class, how to close out on those opportunities - I was fascinated and impressed by what I saw and heard and decided to sign up for the mentorship program.

5.       Trump University assigned Bob Steenson as my mentor. Bob had lots of experience in the Real Estate field and worked closely with me on my Real Estate leads. He discussed with me on my financial, management and operational goals, and thereafter suggested that I focus on a very specific segment of the Real Estate market, that we mutually

Exhibit 7 - Page 400

agreed to be the best fit. He would then review my leads and guide me through the process of short listing properties that I could move forward with and separate out the ones that I should stay away from, by working through the numbers. It really made a big difference for me, as I completely understood the process of decision-making and risk mitigation, which is a key part of any successful business deal. Best of all, although he was in Florida, he was available for consultation whenever I needed him.

6. After enrolling in the Trump Entrepreneur Initiative program, under Bob Steeson's mentoring, I closed on the first property in September 2010. It is a six unit property which I still own and rent out, generating a healthy cash flow. I then purchased a second property, which I now live in as my primary residence. I still own my original primary residence and now lease that out to tenants. Bob was able to explain how to look for specific details when making these purchases, such as zoning laws, etc. Furthermore, using the knowledge that I acquired through the Trump Entrepreneur program and Bob's mentorship, I am currently looking for additional properties to purchase on my own.

7. As part of the Trump Entrepreneur Initiative program, I had to evaluate the program and my mentor. The questionnaire was fairly administered and I was able to turn in my honest assessment, never feeling pressurized to state something that was not true. Every rating I gave my mentor was always positive, and I still agree with what I said to this day.

8. I did not meet or speak with Donald J. Trump as part of my Trump Entrepreneur Initiative experience, nor did he make any promises to me about the education I would receive. In purchasing Trump Entrepreneur programs, I understood that I would not be working personally with Donald J. Trump.

9. I would like to state that I wish Trump University would go back into business. I would join right back up again, and continue with the mentorship program. I am shocked and do not even understand why there could be a lawsuit happening at all. The course materials, top class mentoring and hands on experience is something that is not readily available outside.

2

DECLARATION OF MEENA MOHAN

Exhibit 7 - Page 401

My entire experience has been extremely positive, and I owe it to the Trump Entrepreneur Program and my mentor Bob Steenson for imparting the knowledge and helping me establish my small Real Estate business in such a short period.

I, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this __3__ day of June 2012, at ___Tustin___, ___CA___.

                                      City                      State

_____
Meena Mohan

3
DECLARATION OF MEENA MOHAN

Exhibit 7 - Page 402

# EXHIBIT 8

**Gerald Martin**                                    **Makaeff vs. Trump University**

1           UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF FLORIDA
2

3  TARLA MAKAEFF, et al.,

4    Plaintiffs,

5    vs.                          CASE NO. 10CV0940GPC(WVG)

6  TRUMP UNIVERSITY, LLC, et
   al.,
7

   Defendants.
8  _____/

9

10

11

12           VIDEOTAPED DEPOSITION OF

13               GERALD MARTIN

14               Orlando, FL

15           November 05, 2013

16

17

18

19

20

21

22  Reported By:

23  Lori Bundy

24  RMR, FPR, RPR, CRR, CLR

25  Job No. 10008504

**Gerald Martin**                                                    **Makaeff vs. Trump University**

```
 1   APPEARANCES:

 2   For the Plaintiffs:        AMBER L. ECK, ESQ.
                                Zeldes Haeggquist & Eck
 3                              625 Broadway
                                Suite 1000
 4                              San Diego, CA  92101
                                (619) 342-8000
 5
                                JASON FORGE, ESQ.
 6                              Robbins Geller Rudman & Dowd, LLP
                                655 West Broadway
 7                              Suite 1900
                                San Diego, CA  92101
 8                              (619) 231-1058

 9   For the Defendants:        HERMAN J. RUSSOMANNO, III, ESQ.
                                Law Offices of
10                              Russomanno & Borrello
                                Museum Tower
11                              Penthouse 2800
                                Miami, FL  33130
12                              (305) 373-2103

13   Videographer:             FRANCOIS MIGNON

14

15

16                                  -  -  -

17

18

19

20

21

22

23

24

25
```

**Page 2**

**Gerald Martin**                                    **Makaeff vs. Trump University**

```
 1                        I N D E X

 2    WITNESS:                                    PAGE:

 3    GERALD MARTIN
      DIRECT EXAMINATION                             6
 4    BY MS. ECK:
      CONTINUED DIRECT EXAMINATION                 135
 5    BY MR. FORGE:
      CROSS-EXAMINATION                            168
 6    BY MR. RUSSOMANNO:
      REDIRECT EXAMINATION                         181
 7    BY MR. FORGE:
      RECROSS EXAMINATION                          182
 8    BY MR. RUSSOMANNO:

 9                         -   -   -

10                      E X H I B I T S

11                         -   -   -

12                                               PAGE

13    Plaintiff's          Amended Deposition Subpoena   11
      Exhibit 52
14    Plaintiff's          Bates Number TU 168227         26
      Exhibit 53           through 228
15    Plaintiff's          Bates number TU 172247         45
      Exhibit 54           through TU 172251
16    Plaintiff's          Bates numbers TU 126061        46
      Exhibit 55           through 126071
17    Plaintiff's          Bates numbers TU 126045        63
      Exhibit 56           through 126060
18    Plaintiff's          PowerPoint and Talking         91
      Exhibit 57           Point
19    Plaintiff's          Letter From the State         124
      Exhibit 58           Education Department of New
20                         York to Donald Trump
      Plaintiff's          Transcript of Presentation    135
21    Exhibit 59
      Plaintiff's          Fast Track To Foreclosure     147
22    Exhibit 60           Investing
      Plaintiff's          Free Introductory Class       150
23    Exhibit 61           Transcript
      Plaintiff's          Fast Track to Foreclosure     153
24    Exhibit 62

25
```

www.aptusCR.com
Exhibit 8 - Page 405

**Gerald Martin**                                    **Makaeff vs. Trump University**

```
 1   EXHIBITS
     CONTINUED:
 2
     Plaintiff's          Fast Track to Foreclosure    158
 3   Exhibit 63           Oakland Training
     Plaintiff's          February 9 Free              160
 4   Exhibit 64           Introductory Class
     Plaintiff's          E-Mail With Feedback         162
 5   Exhibit 65
     Plaintiff's          Trump Creative C Script      164
 6   Exhibit 66           Final
     Plaintiff's          Creative C Script Final      165
 7   Exhibit 66A          Attachment
     Plaintiff's          Transcript of Free           165
 8   Exhibit 67           Presentation
     Plaintiff's          PowerPoint For Creative      167
 9   Exhibit 68           Financing Seminar
     Defendant's Martin   Quality Survey               175
10   Exhibit 1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Gerald Martin**                                        **Makaeff vs. Trump University**

1      VIDEOGRAPHER:  The time on the record is 9:10

2    a.m.  Today's date is November 5th, 2013.  My name is

3    Francois Mignon of Aptus Court Reporting.  The court

4    reporter today is Lori Bundy of Aptus Court Reporting

5    located at 600 West Broadway, Suite 300, San Diego,

6    California 92101.  This begins the video recorded

7    deposition of Gerald Martin taken in the matter of

8    Tarla Makaeff, et al. versus Trump University, LLC, et

9    al, pending in the United States District Court,

10   Middle District of Florida.  Case number 10CV 00940

11   GPC(WEG) taken at 255 South Orange Avenue, Suite 750,

12   Orlando, Florida 32801.  The video and audio

13   recordings will take place at all times during this

14   deposition unless all counsel agree to go off the

15   record.  The beginning and end of each video recording

16   will be announced.

17       Will counsel please identify yourselves and state

18   whom you represent?

19       MS. ECK:  This is Amber Eck from Zeldes

20   Haeggquist & Eck on behalf of the plaintiffs.

21       MR. FORGE:  Jason Forge on behalf of the

22   plaintiffs.

23       MR. RUSSOMANNO:  Good morning, Herman Russomanno

24   with the law firm of Russomanno & Borrello in Miami.

25   I'm local counsel on behalf of Donald Trump, Trump

```
 1        University and today's third-party deponent,

 2      Mr. Gerald Martin.

 3           VIDEOGRAPHER:  The court reporter may now swear

 4      in or affirm the deponent.

 5  THEREUPON,

 6                          Gerald Martin,

 7  a witness, having been first duly sworn, upon his oath,

 8  testified as follows:

 9           THE WITNESS:  I do.

10           VIDEOGRAPHER:  Counsel, you may proceed.

11                     DIRECT EXAMINATION

12  BY MS. ECK:

13      Q.   Good morning, Mr. Martin.

14      A.   Good morning.

15      Q.   We met earlier, but my name is Amber Eck, and I

16  represent the plaintiffs in this case.  Could you please

17  state and spell your name for the record?

18      A.   Yes, Gerald Martin, G-E-R-A-L-D, M-A-R-T-I-N.

19      Q.   What is your place and date of birth?

20      A.   Wichita Falls, Texas, March 12th, 1960.

21      Q.   Have you ever had your deposition taken before?

22      A.   Once before.

23      Q.   And what kind of case was that?

24      A.   An insurance matter.

25      Q.   Were you the plaintiff or the defendant in the
```

Gerald Martin                                        Makaeff vs. Trump University

1       Q.    Who taught the real estate seminar?

2       A.    Ron LeGrand.

3       Q.    Was that in Orlando?

4       A.    No, that was -- I went to several of the -- I

5    went to several.  I mean, I went to a lot of these real

6    estate seminars, and I went to one in Tampa, Jacksonville,

7    several other places around the state.  But the one in

8    Tampa is where I literally just signed up and started, you

9    know, buying real estate and investing in real estate.

10   But I was doing it part time.

11      Q.    And that was a seminar that -- were all these

12   seminars taught by Ron LeGrand?

13      A.    Yes.

14      Q.    The one in Tampa was one that's taught by Ron

15   LeGrand?

16      A.    I do believe so.

17      Q.    What was the cost of that seminar?

18      A.    Roughly 15, $20,000, somewhere in that ballpark.

19      Q.    What was the time period that you took this?

20      A.    You mean the time line, the date, the year?

21      Q.    Yeah, the approximate date or year.

22      A.    2000.

23      Q.    And then you started investing in real estate at

24   that point?

25      A.    Yes.

Page 22

**Gerald Martin**                                    **Makaeff vs. Trump University**

1    Q.   And you said you did it part-time.  What were you

2  doing the other part-time?

3    A.   Working in a software support business.

4    Q.   Okay.  What did you do next?

5    A.   I started doing real estate full-time, investing

6  in real estate.

7    Q.   Okay.  What year did you start investing in real

8  estate full-time?

9    A.   2000 -- the dates, I'm really bad on dates, maybe

10  2003, 2002, 2003.

11    Q.   All right.  And then did you have any other jobs

12  or positions before you joined Trump University?

13    A.   I don't recall.

14    Q.   Were you a speaker for any other real estate

15  companies?

16    A.   I'm sorry, yeah, as far as independent

17  contractor, yeah, so in about 2000 -- well, after a few

18  years investing, I was approached by a gentleman that was

19  in the training business, real estate investment training

20  business, and I started doing seminars and training with

21  him.  And I did that for maybe a couple years.

22    Q.   Who was that person?

23    A.   Don Burnham.

24    Q.   And what time frame was that?

25    A.   It was a couple years, roughly a couple of years.

**Gerald Martin**                                          **Makaeff vs. Trump University**

1   to overcome your fear and get out of your comfort zone.  I

2   mean, I had to overcome my fear to make an investment in

3   real estate because I never bought property before, I

4   never, you know, I went to a seminar and learned how to do

5   it.

6       Q.   Okay.  Where are you currently employed?

7       A.   With a group called Flipping Boston.

8       Q.   And what's that?

9       A.   They flip houses in Boston.  The A & E show,

10   Flipping Boston.

11      Q.   It's what?

12      A.   A & E.

13      Q.   Oh, it's a television show?

14      A.   Uh-huh, Flipping Boston.

15      Q.   What do you do with them?

16      A.   I'm a trainer.

17      Q.   Are you on air?

18      A.   No, no, I'm not on the show.

19      Q.   So who do you train?

20      A.   I train students.  They have a seminar company,

21   and so they've taken the show and now they have a seminar

22   company and they're training students just like other

23   people train; just like Than Merrill at, you know, Flip

24   This House and all the rest of them.

25      Q.   How long have you been with them?

www.aptusCR.com
Exhibit 8 - Page 411

**Gerald Martin**                                    **Makaeff vs. Trump University**

1    A.    Three, four months, five months; something like
2    that.

3    Q.    What -- do you do three-day programs with them?

4    A.    Uh-huh.

5    Q.    What do you charge -- what is the cost for the
6    three-day programs?

7    A.    Somewhere in the ballpark of $1,900, something
8    like that.

9    Q.    And what do they receive for that?

10   A.    They receive three days of training.

11   Q.    Do they receive a phone number to call or
12   anything?

13   A.    They have a customer service number, I believe.

14   Q.    And is there an advanced training that they can
15   purchase after the three day seminar?

16   A.    Yes.

17   Q.    How much is the advanced training?

18   A.    $25,000.

19   Q.    What do they receive for the advanced training?

20   A.    A mentor and several on site -- it's onsite
21   mentor, 101 mentor, a three, four -- four different
22   training events that they attend live, software, software
23   application, a software -- real estate software tool.

24   Q.    Do you do mentoring for them or just instruction?

25   A.    Just instruction.

www.aptusCR.com
Exhibit 8 - Page 412

**Gerald Martin**                                          **Makaeff vs. Trump University**

```
 1   DEPOSITION ERRATA SHEET

 2   Case Name: Makaeff vs. Trump University
     Name of Witness: Gerald Martin
 3   Date of Deposition: 11/05/2013
     Job No.: 10008504
 4   Reason Codes:  1. To clarify the record.
                    2. To conform to the facts.
 5                  3. To correct transcription errors.

 6   Page _____ Line _____ Reason _____

 7   From PLEASE SEE ATTACHED_____

 8   Page _____ Line _____ Reason _____

 9   From _____ to _____

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22   Page _____ Line _____ Reason _____

23   From _____ to _____

24   Page _____ Line _____ Reason _____

25   From _____ to _____
```

Page 186

**Gerald Martin**                                      **Makaeff vs. Trump University**

```
1    DEPOSITION ERRATA SHEET

2    Page _____ Line _____ Reason _____

3    From _____ to _____

4    Page _____ Line _____ Reason _____

5    From _____ to _____

6    Page _____ Line _____ Reason _____

7    From _____ to _____

8    Page _____ Line _____ Reason _____

9    From _____ to _____

10   Page _____ Line _____ Reason _____

11   From _____ to _____

12   Page _____ Line _____ Reason _____

13   From _____ to _____

14   Page _____ Line _____ Reason _____

15   From _____ to _____

16   Page _____ Line _____ Reason _____

17   From _____ to _____

18   Page _____ Line _____ Reason _____

19   From _____ to _____

20   Page _____ Line _____ Reason _____

21   From _____ to _____

22    ___X___   Subject to the above changes, I certify that the
                transcript is true and correct
23    _____   No changes have been made. I certify that the
                transcript  is true and correct.
24
                _____
25                   GERALD MARTIN
```

<u>Attachment A</u>

Page 8            Line 25            Reason 3

From:  No, Jo Martin.

To:  No, Jill Martin.


Page 16           Line 4             Reason 1

From:  Correct.

To:  Correct, for the free previews at which I was the speaker, I tried to follow the script but I was not very good at doing so.


Page 85           Line 23            Reason 1

From:  Correct.

To:  Correct, it was played at the 90-minute preview seminars at which I was the speaker.


Page 95           Lines 21-22        Reason 1

From:  I don't know about that.  I think buying low and selling low makes more sense.

To:  I don't think it is "unique" to Donald Trump in the sense that he is the only one who follows that principle, but I do believe it is a technique he follows.


Page 97           Line 9             Reason 1

From:  During the three-days, yes.

To:  During the three days, yes, we did teach them general real estate techniques.  We also focused specifically on the real estate opportunities as they existed in the current market.  For example, we taught how to structure the pre-forclosure and the short sale opportunitites which were prevalent during the time when I was presenting.  These strategies were specifically geared toward the given market at the specific time I was giving the presentations.  The software we used tracked the pre-forclosures in the market and market values.  This unique software, created by Trump University, was specifically designed to identify the defaulted properties.

Exhibit 8 - Page 415

Page 97          Line 16          Reason 1

From:  Right.

To:  Right, the techniques I taught were not "unique" to Donald Trump in the sense that he was the only one using the techniques, but I did teach the Trump strategy of how to find, structure, fund, and flip properties.


Page 102          Line 5          Reason 3

From:  bed

To:  be


Page 105          Line 16          Reason 2 - misprint

From:  No.

To:  I don't know.


Page 109          Line 13          Reason 1

From:  Yes.

To:  Yes, it was played at the 90-minute preview seminars at which I was the presenter.


Page 138          Line 25          Reason 1

From:   Yes, uh huh.

To:  Yes, the organization which Donald Trump was an owner.


Page 161          Line 10          Reason 1

From:   Uh-huh, yes.

To:  Yes, it was played at the 90-minute preview seminars at which I was the presenter.


Page 176          Line 18          Reason 1

From:  No.

To:  Correct, I was not aware of any incentive for students to give me a higher rating versus a lower rating.

Exhibit 8 - Page 416

Page 182          Line 19          Reason 1

From:  Yes, that's fair.

To:  Yes, that's fair to say that generally during the preview seminars I made various statements to emphasize the Trump brand, but the ways I emphasized the brand were different.  Each time I made different statements to try to improve my delivery, but in working to make my presentations better, the content of what you are referring to as the "hooks" was different.

Exhibit 8 - Page 417

**Gerald Martin**                                        **Makaeff vs. Trump University**

```
 1                        CERTIFICATE OF OATH

 2

 3   STATE OF FLORIDA)

 4   COUNTY OF COLLIER)

 5

 6           I, the undersigned authority, certify that Gerald

 7   Martin personally appeared before me and was duly sworn.

 8

 9           WITNESS my hand and official seal this 15th day

10   of November, 2013.

11

12

13                          _____
                            Lori L. Bundy
14                          Notary Public – State of Florida
                            My Commission No.:  EE 132707
15                          Expires:  September 22, 2015

16

17

18

19

20

21

22

23

24

25
```

**Page 184**

**Gerald Martin**                              **Makaeff vs. Trump University**

```
 1              REPORTER'S DEPOSITION CERTIFICATE

 2

 3   STATE OF FLORIDA)

 4   COUNTY OF COLLIER)

 5

 6      I, Lori L. Bundy, Certified Court Reporter and Notary

 7   Public in and for the State of Florida at Large, certify

 8   that I was authorized to and did stenographically report

 9   the deposition of Gerald Martin; that a review of the

10   transcript was requested and that the transcript is a true

11   and complete record of my stenographic notes.

12

13      I further certify that I am not a relative, employee,

14   attorney, or counsel of any of the parties; nor am I a

15   relative or employee of any of the parties' attorney or

16   counsel connected with the action; nor am I financially

17   interested in the action.

18

19      DATED this 15th day of November, 2013.

20

21

22                                   _____
                                     Lori L. Bundy,
23                                   RMR, FPR, RPR, CRR, CLR

24

25
```

**Page 185**

# EXHIBIT 9

Page 1

1                     UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3    _____
                                     )
4    TARLA MAKAEFF, BRANDON KELLER,  )
     ED OBERKROM, and PATRICIA MURPHY, )
5    on Behalf of Themselves and All  )
     Others Similarly Situated,      )
6                                     )
              Plaintiffs,            ) Case No.
7                                     ) 10 CV 0940 CAB (WVG)
              vs.                    )
8                                     )
     TRUMP UNIVERSITY, LLC, (aka Trump )
9    Entrepreneur Initiative) a New    )
     York Limited Liability Company,  )
10   DONALD J. TRUMP, and DOES 1      )
     through 50, inclusive,          )
11                                    )
              Defendants.            )
12   _____)

13

14

15           Videotaped Deposition of Joann Everett

16           taken at 655 West Broadway, Suite 1900,

17           San Diego, California, commencing at

18           9:31 a.m., on Wednesday, October 3, 2012,

19           before Kimberly S. Thrall, RPR, CSR No. 11594.

20

21

22

23

24   Reported by:  Kimberly S. Thrall, RPR, CSR. No. 11594

25                 Job No. 54027

Page 2

```
1    APPEARANCES OF COUNSEL:

2         FOR THE DEFENDANTS:

3              YUNKER & SCHNEIDER
               BY:  DAVID K. SCHNEIDER, ESQ.
4              655 West Broadway
               San Diego, California 92101
5

6

7         FOR THE PLAINTIFFS AND PROPOSED CLASS:
8              ZELDES & HAEGGQUIST
               BY:  AMBER L. ECK, ESQ.
9              625 Broadway
               San Diego, California  92101
10

11

12

13             ROBBINS GELLER RUDMAN & DOWD
               BY:  RACHEL L. JENSEN, ESQ.
14             655 West Broadway
               San Diego, California 92101
15

16

17

18

19

20   ALSO PRESENT:
21             Christopher Brooks, Video Operator
22

23

24

25
```

Page 3

1                         I N D E X

2

3     WEDNESDAY, OCTOBER 3, 2012

4

5     WITNESS

6     JOANN EVERETT

7

8     EXAMINATION BY                                    PAGE

9     Mr. Schneider  ................................     6

10

11                        EXHIBITS

12    NUMBER            DESCRIPTION            PAGE   LINE

13    Exhibit 1   Notice of Taking Depositions
                  and Request to Produce
14                Documents at Deposition       6      5

15    Exhibit 2   Declaration of J.R. Everett in
                  Support of Plaintiffs' Motion
16                for Class Certification       16     14

17    Exhibit 3   Joann Everett's Contract;
                  Bates Stamp No. TU-EVERETT4   92     24
18

      Exhibit 4   Profit from Real Estate Investing
19                Location & Agenda; Bates Stamp
                  No. TU-EVERETT12              97     22
20

      Exhibit 5   Joann Everett's Enrollment Form;
21                Bates Stamp Nos. TU-EVERETT1
                  through TU-EVERETT2          107     20
22

      Exhibit 6   Terms & Conditions; Bates Stamp
23                No. TU-EVERETT3             123      2

24

25

Page 4

```
 1   EXHIBITS
 2   NUMBER              DESCRIPTION                  PAGE    LINE
 3   Exhibit 7    PowerPoint Presentation from
                  the Three-Day Workshop; Bates
 4                Stamp Nos. TU 56156-TU 56244,
                  TU 56245-TU 56325 and
 5                TU 56326-TU 56398               169      24
 6   Exhibit 8    E-mail to Joann Everett from
                  Trump University dated 10/7/09;
 7                Bates Stamp Nos. TU-EVERETT48
                  through TU-EVERETT49            169      12
 8
     Exhibit 9    Letter to "Dear Friend" from
 9                Donald Trump; Bates Stamp No.
                  TU-EVERETT8                     324       8
10
     Exhibit 10   Copy of File Folder Labeled
11                "Joann Everett & JR"; Bates
                  Stamp Nos. PETERSON0240
12                through PETERSON0244            343       1
13   Exhibit 11   Letter to Joann Everett from
                  Gerald Martin dated 10/8/09;
14                Bates Stamp No. TU-EVERETT322  352      24
15
16
17
18        QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER
19                   PAGE       LINE
20                    44          5
21
22
23
24
25
```

Page 5

1        SAN DIEGO, CALIFORNIA, WEDNESDAY, OCTOBER 3, 2012

2                            9:31 A.M.

3

4            THE VIDEOGRAPHER:  This is the start of tape

5    labeled No. 1 of the videotaped deposition of Joann

6    Everett in the matter Makaeff, et al., versus Trump

7    University, LLC, et al., in the United States District

8    Court, Southern District of California.  The case number

9    is 10 CV 0940CAB (WVG).

10            This deposition is being held at Robbins Geller

11   Rudman & Dowd, 655 West Broadway, Suite 1900, San Diego,

12   California, on October 3rd, 2012, at approximately

13   9:31 a.m.

14            My name is Christopher Brooks from TSG

15   Reporting, Incorporated, and I am the legal video

16   specialist.  The court reporter is Kim Thrall in

17   association with TSG Reporting.

18            Will counsel please introduce yourselves.

19            MR. SCHNEIDER:  David Schneider on behalf of

20   defendants, Trump University, LLC and Donald Trump.

21            MS. ECK:  Amber Eck on behalf of plaintiffs.

22            MS. JENSEN:  Rachel Jensen on behalf of

23   plaintiffs.

24            THE VIDEOGRAPHER:  Thank you.  Will the court

25   reporter please swear in the witness.

Page 6

1                        JOANN EVERETT,

2       called as a witness, having been first sworn, was

3       examined and testified as follows:

4

5              (Defendants' Exhibit 1, the Notice of

6              Deposition, was marked for identification.)

7

8                        EXAMINATION

9   BY MR. SCHNEIDER:

10      Q.    Good morning.  Please state your name.

11      A.    Joann Everett.

12      Q.    Ms. Everett, we met just before the deposition

13  started.  My name is David Schneider.  I represent

14  Donald Trump and Trump University in a lawsuit that you

15  have filed against my clients.

16             I've marked as Exhibit 1, a notice of taking

17  your deposition, which includes a request that you bring

18  with you documents responsive to 12 categories.

19             Have you brought any documents with you today?

20      MS. ECK:  We've produced documents on behalf of

21  Joann Everett previously, and then we've produced the

22  additional responsive documents to you yesterday.

23  BY MR. SCHNEIDER:

24      Q.    Okay.  So Category No. 1 asks for you to bring

25  with you documents which reflect complaints that you

Page 203

1    A.    Not at that time.

2    Q.    You mean outlay the money at that time?

3    A.    Outlay the money at that time.

4    Q.    All right.

5    A.    I wanted to make a couple deals, then outlay

6    some money if you want to move forward.

7    Q.    How many conversations would you estimate you

8    had with Mr. Peterson?

9    A.    We talked several months, like once a month.

10   Q.    For how many months?

11         MS. ECK:   Objection.   Asked and answered.

12         THE WITNESS:   I don't remember.   Several.   I

13   don't remember exactly.

14   BY MR. SCHNEIDER:

15   Q.    Okay.   So do you think you had more than five

16   conversations with him?

17   A.    Yes.

18   Q.    More than 10?

19   A.    No.   I'd say more than -- it could have been a

20   few more than five.   We had brief conversations now and

21   then on different topics that I'd have questions on and

22   I'd call him.

23   Q.    All right.   And did you have a phone number to

24   reach him?

25   A.    Yes.

Page 283

1    A.    Not that I remember.

2    Q.    Okay.  I'd like you to look at the binder, and

3  let's start on page 91, EVERETT91.

4    A.    Uh-huh.

5    Q.    All right.

6    A.    Uh-huh.

7    Q.    Is this the workbook that was provided to you

8  for the three-day training that you attended --

9    A.    Yes.

10    Q.    -- of Quick Start Real Estate?

11    A.    Yes.

12    Q.    Okay.  If you'll look at the -- the page where

13  you're on right now --

14    A.    Uh-huh.

15    Q.    -- which is 92, the -- the very last paragraph,

16  it states:  "This course is provided for information

17  only and no guarantees, promises, representations or

18  warranties of any kind regarding specific or general

19  benefits, monetary or otherwise, have been or will be

20  made by Trump University, its affiliates or their

21  officers, principals, representations, agents and

22  employees."

23        Do you see that?

24    A.    Yes.

25    Q.    All right.  And this was provided to you before

Page 284

1  you actually went through the program, correct?

2          MS. ECK:   Objection.   Misstates the witness's

3  testimony.

4          THE WITNESS:   Yes, as part of the package.

5  BY MR. SCHNEIDER:

6      Q.   All right.   I'd like you to look at page

7  Everett95.

8      A.   Okay.

9      Q.   And was this all-cash offer, this was a topic

10 that was discussed during the program?

11     A.   Yes.

12     Q.   And these are notes that you took --

13     A.   Yes.

14     Q.   -- during the program?

15     A.   Yes.

16     Q.   And this is all about the content of the topic

17 at the time?

18     A.   Yes.

19     Q.   All right.   Would you turn to the next page,

20 which is EVERETT96.

21          Was there a discussion about neighborhoods and

22 strategies and how to identify different types of

23 properties?

24     A.   This discussion -- these are the notes that I

25 made.

Page 285

1      Q.   All right.   And --

2      A.   They're -- they're not detailed.   They're just

3   general comments on how to find a neighborhood.

4      Q.   All right.   That was discussed during the

5   program, correct?

6      A.   Yes.

7      Q.   All right.   Would you turn to page 103.

8      A.   You can see in the others, you get this heading

9   and no -- and all these blank lines to fill in.

10        MS. ECK:   There's no question --

11        THE WITNESS:   Yeah.

12        MS. ECK:   -- pending right now.

13        THE WITNESS:   Okay.

14   BY MR. SCHNEIDER:

15      Q.   All right.   So you raised a good point.   Some

16   of the topics you didn't write notes and some you --

17      A.   Yeah.

18      Q.   -- did, correct?

19      A.   Right.

20      Q.   All right.   The ones that you thought the

21   information was helpful or interesting, did you take

22   notes?

23      A.   I don't remember what was discussed on this

24   one, so -- but I've obviously taken notes here.

25      Q.   All right.   And this is your handwriting,

Page 286

1    correct?

2         A.    Yes.

3         Q.    So far everything we've looked at in this

4    document is your handwriting --

5         A.    Yes.

6         Q.    -- for the handwriting portion?

7               All right.   And these are notes that you took

8    concerning owner financing?

9         A.    Yes.

10        Q.    Was there --

11        A.    But it doesn't indicate that one can -- it's

12   just information pertinent to owner financing.   It's not

13   an instructional -- a step by step of what you do to --

14   to set up owner financing.   It's just a definition -- a

15   further definition of this topic.   That was my problem

16   with the course.

17        Q.    Did you understand in the course that there was

18   some people that were not realtors or brokers?

19        A.    Most of them were not.

20        Q.    All right.   And did you believe you probably

21   had more information and expertise in real estate than

22   some of the other people there?

23        A.    I understood --

24               MS. ECK:    Objection.   Calls for speculation.

25        ///

Page 287

BY MR. SCHNEIDER:

Q.   If you know.

A.   I know that real estate terms were used, and I knew I understand them.  I don't know about an individual that did not have their real estate license.

Q.   All right.  Did you -- did you meet anybody else other than the one person you told me that was a real estate agent or a broker?

A.   You know, I did.  I just saw the note that I made here.  At the three-day session, there was an individual from Massachusetts that I talked to.  He sat just in front of us.

Q.   And did he tell you what he thought of the program?

A.   Well, he had completed the mentorship, the $25,000.  A guy from Texas had flown in, and he had made no progress.  He was getting concerned about having gone through the mentorship and still not understanding how to buy and invest in real estate.

Q.   Okay.  What was it that you thought you still needed to know to -- to invest?  What piece were you missing?

A.   I think the infrastructure available, that if they're going to go into a marketplace, in my opinion they needed to set up a system that you step into.  You

Page 288

1   just don't walk off the street and say, okay, let's try

2   to find a house and an investor.   I mean, that's too

3   vague.   They needed a tool set to assist.

4           If they're going to sell these techniques

5   and -- and think you can do something in three days, you

6   certainly have to have more than just a -- a mentor

7   generally flown in from another part of the country that

8   has no knowledge of the -- of the marketplace -- of the

9   local marketplace.

10      Q.   Did Troy Peterson have a knowledge of the

11  marketplace?

12      A.   He did not have a knowledge of Tampa.

13      Q.   How about of Florida?

14      A.   He had -- well, Florida is different.   He

15  worked in Orlando.

16      Q.   How far is Orlando from Tampa?

17      A.   Orlando is completely different.

18      Q.   How far is Orlando from Tampa?

19      A.   It's about 75 miles.

20      Q.   Okay.   And did he have an understanding of

21  the --

22      A.   I don't know if he had an understanding.

23  That's where he worked.   I don't know what he had as far

24  as an understanding.

25      Q.   Do you know what his understanding was of those

Page 289

1   two markets between Orlando and Tampa?

2            MS. ECK:   Objection.   Calls for speculation.

3            THE WITNESS:   He hadn't worked -- he told me he

4   had never worked in Tampa, so I presume he didn't know.

5   BY MR. SCHNEIDER:

6      Q.   So you said that you would expect or think that

7   there should be some kind of tool set in place.

8            What does that mean?   And be specific.

9      A.   In my view, if they were setting up --

10  Trump University, if they were marketing in Tampa, they

11  would have a satellite office set up with contacts, the

12  title company, mortgage people, hard-money lenders if

13  that's what they're recommending, subscribe to a site so

14  you can get to those listings and -- and, you know, beat

15  the other competitors out, and set up a website, recruit

16  investors, have them available.

17           Then you'd walk in.   You'd say, okay, this is

18  how you do this.   This is here -- you sign on here.   You

19  need to have this on your computer, and you get this,

20  and these are how -- this is how you're going to find

21  the investors.   Now, if you want to find these homes,

22  this is the criteria.   You sign on here.   You look at

23  them, find out something that's in their price range,

24  and give step-by-step instructions as to what to do.

25     Q.   Did you discuss with --

Page 290

1      A.    If you need to set up a website so that you can

2    attract investors, then recommend, use this website.

3    It's so much a month, if that's what it is.    This is the

4    content that we found to be successful.    And if you need

5    testimonials, provide them from the Trump University and

6    work under that, under that umbrella until you get

7    established, until you get your own testimonials.

8      Q.    Did you --

9      A.    Those are the types of things that I think you

10   would do to be successful.

11     Q.    Did you discuss with Troy Peterson utilizing a

12   title company?

13     A.    Yes.    I said maybe we can use your title

14   company, because not all of them knew how to do the flip

15   thing.    It was a -- you have one in one room here and

16   the other one over here.    And this one signs, and he

17   doesn't know this one's signing, and you sign and --

18     Q.    And what did he say about that?

19     A.    -- you don't switch money or anything.

20          He thought I should -- I -- I don't remember

21   specifically, but I -- I -- he -- he had people

22   available, but they were working over there, you know.

23   It's more feasible to find someone obviously in the

24   Tampa market.

25     Q.    Okay.    Did he --

Page 291

1    A.   I don't remember.  I just remember discussions

2  about what he had in place and how to replicate it in

3  Tampa, because he didn't know anyone in Tampa.

4    Q.   Okay.  So he told you that he had a system, all

5  of these things that you just talked about, he had that

6  in place, correct?

7    A.   He had -- I don't know if everything he had in

8  place.

9    Q.   He had a lot --

10   A.   He was --

11   Q.   -- of that in place?

12   A.   Yes.  He had contractors that could do work.

13 He had a realtor.  He had the -- I -- I -- I think he

14 had -- he definitely had -- had joined investors clubs,

15 and he had a full-time partner, and they worked -- you

16 know, I presume they shared.

17   Q.   All right.  And these are the things that he

18 told you that you should do as well, right?  He told you

19 that you should join investors clubs?

20   A.   Which I -- I attended.  You know, again,

21 they --

22   Q.   Okay.

23   A.   -- they weren't --

24   Q.   I understand that it wasn't successful for you,

25 but he told you that he was part of investors clubs and

Page 292

1    he recommended that you do that, correct?

2         A.    Yes.

3              MS. ECK:   Object.

4              THE WITNESS:   Okay.

5    BY MR. SCHNEIDER:

6         Q.    He told you that he used contractors, and he

7    suggested that you locate contractors?

8         A.    I -- I don't need contractors because I'm not

9    going to buy and hold.

10        Q.    Okay.

11        A.    -- if you -- what he would do --

12        Q.    All right.   All right.   So that wasn't a

13   strategy that you needed, correct?

14        A.    That's right.

15        Q.    All right.   How about realtors?   You didn't

16   need one because you already are a realtor?

17        A.    I am a realtor.

18        Q.    All right.

19        A.    I'd have to join the Board.

20        Q.    All right.   What else did he have in place that

21   you needed?

22             MS. ECK:   Objection.   Asked and answered.

23             THE WITNESS:   Probably the software.

24   BY MR. SCHNEIDER:

25        Q.    A website, right?

Page 293

1      A.    A website.

2      Q.    All right.   And he suggested that --

3      A.    Open Road.

4      Q.    -- you start a -- he suggested that you start a

5  website, right?

6      A.    Yeah.

7      Q.    All right.   So he was sharing with you --

8      A.    Well, he said he had a website.   That's how he

9  attracted investors.

10     Q.    Okay.   So that's --

11     A.    He has one.

12     Q.    -- something that you could have done, right --

13     A.    I could --

14     Q.    -- started a website to attract investors?

15     A.    The misrepresentation goes that -- and if you

16  read this document -- you do not need any money to start

17  up.   You're going to be working with professionals, and

18  they can make -- you can start making money immediately.

19  It's stated in numerous instances.

20          I had no intention of investing in this type of

21  operation at the -- at the onset.   After I had several

22  transactions down, I would consider obviously going into

23  it in a much more aggressive fashion.   Initially, I

24  wanted to see if it works.   I wanted to test their

25  techniques.   Once I got the money, I would move on to

Page 294

1   the bigger and better things.

2       Q.   All right.   During the three-day program, what

3   did Gerald tell you was the technique where you could do

4   this business without spending a penny?

5       A.   The -- on -- on the buy and flip, he would wear

6   old clothes, drive a beat-up truck, go down into a

7   depressed area, find the areas, buy the house.   And I

8   don't know where he got his investors, but that was kind

9   of his approach.   You didn't need any money.   You

10  just -- he'd drive areas and look for -- look for houses

11  on the weekends.   That's what he did.

12      Q.   All right.   And did you try to replicate that?

13      A.   I drove areas, yeah, that I was interested in.

14      Q.   All right.   And did you make offers on

15  properties?

16      A.   I told you earlier, there were very few signs,

17  "For Sale By Owner."

18      Q.   The ones that you saw, did you make any offers

19  on those properties?

20      A.   No.

21      Q.   Why?

22      A.   The one had a permanent sign in the yard with a

23  wooden thing, and it had been on -- for sale for about

24  three years.   He was just looking for the highest and

25  best buyer.   He wasn't looking to sell it a low price or

Page 295

1  a discounted price.

2      Q.    Did you talk to the seller?

3      A.    Yeah.

4      Q.    And you thought that the price was too high?

5      A.    Yeah.  He was -- he was just fishing for

6  someone, anyone that wants to buy it.  He -- he could

7  move today or he could move two years from today.  So he

8  wasn't a -- a prime candidate.

9      Q.    Did you make any kind of offer on the property?

10     A.    No.

11     Q.    Any other properties that you saw for sale by

12  owner?

13     A.    Very few.

14     Q.    Did you talk to the owners?

15     A.    Very few in the areas that I was interested in

16  working with.  No, I did not.  I -- no, I did not --

17     Q.    Okay.

18     A.    -- to my -- to my recollection.

19     Q.    So did you try any of the strategies that were

20  recommended by Gerald?

21          MS. ECK:   Objection.  Asked and answered.

22          THE WITNESS:   I -- we called several hundred

23  off the database in attempting to do that.  We attended

24  the investors clubs, which he also mentioned.  We drove

25  around neighborhoods looking and also used that site for

Page 296

1  for sale by owners.

2  BY MR. SCHNEIDER:

3      Q.   Did you try to get any information as to what

4  the costs would be, if any, to start a website?

5      A.   No.

6      Q.   Would you look at page 134.   These are all your

7  handwritten notes?

8      A.   Uh-huh.

9      Q.   Yes?

10     A.   Yes.

11     Q.   All right.   And this is a -- a discussion about

12  financing techniques, correct?

13     A.   Uh-huh.

14     Q.   Yes?

15     A.   Yes.

16     Q.   All right.   And these were techniques that were

17  discussed during the seminar about how you get

18  financing?

19     A.   They are points of -- let me look at it just a

20  moment.   We have a diagram here, "Discount and Terms."

21  So it's a list of types of properties and if you should

22  use cash or use terms.   Cash means you use cash.   Terms

23  means you finance.   And -- so it's just saying if it's

24  for sale by owner, you can either use cash or that.

25          It doesn't -- doesn't give you any specific

Page 297

1    instruction as to how to go about it.  It's just telling

2    in -- in his terms what is most -- you know, what's

3    appropriate or generally used for this type of a -- a

4    short sale, REO, commercial, realtor listing.  It's no

5    information.  It's just other bullets.

6         Q.   So you wanted more detailed information than --

7         A.   Well, of course.  Wouldn't you?  This is just a

8    list.  This is a -- you're saying what -- what is all

9    cash.  In his opinion, it's this type of property.

10   That's a bunch of bull.  And if you have cash, you can

11   buy anything you want.

12        Q.   All right.  Would you look at --

13        A.   If you have good credit, you can finance

14   anything you want.

15        Q.   If you'd look at page 143.

16        A.   Sorry.  I didn't mean to --

17        Q.   This is a discussion during the workshop about

18   researching properties?

19        A.   Uh-huh.

20        Q.   Yes?

21        A.   Yes.

22        Q.   Okay.  And this is how to determine -- the

23   first step is to determine who the property owner is?

24        A.   Yes.

25        Q.   And those are your handwritten notes about how

Page  298

1    to do that?

2         A.    Yes.

3         Q.    Then if you turn to --

4         A.    Well, I've known as a realtor how -- and have

5    used many times how to access public records, county

6    records.    This is an obvious statement so you can find

7    out who the owner is.    I mean, the problem with this is

8    there are no phone numbers.    The addresses many times

9    are not correct, and there are no e-mails.    And right

10   now if you're not doing things, if you're trying to mail

11   anything, you can forget it.    It goes into reports --

12   studies have shown that it's very ineffective.    So

13   getting this information without a valid telephone

14   number or e-mail is not very good.

15        Q.    Okay.    And then --

16        A.    But he was just explaining how to do that,

17   which is an obvious thing.    Anyone can do it.    You can

18   do it.

19        Q.    All right.    If you turn --

20             MS. ECK:    Even me.

21   BY MR. SCHNEIDER:

22        Q.    -- two pages -- even me.

23             If you turn two pages to 145, it tells you

24   actually how to -- to locate people.    It gives you some

25   suggestions about some --

Page 299

1          MS. ECK:   Objection.

2    BY MR. SCHNEIDER:

3       Q.   -- some websites, correct?

4          MS. ECK:   Objection.   The document speaks for

5    itself.

6          THE WITNESS:   Yeah.   And this is very -- trying

7    to get a phone number is -- is very difficult now.

8    BY MR. SCHNEIDER:

9       Q.   So this gives you four ideas or suggestions

10   about how to track down phone numbers for people that

11   might have property for sale?

12      A.   And particularly if they have a cell number and

13   do not have a landline, this is totally ineffective, and

14   many are nonpublished and non- -- so this is -- if I

15   wanted to look for a phone number, I'd look in the -- on

16   Yellow Pages or Super Pages --

17      Q.   Okay.   This --

18      A.   -- period.   So this is not a revelation.   This

19   doesn't assist with any of this.   And, again, to find a

20   number is -- is difficulty.

21      Q.   This is giving step by step of ways to

22   potentially find sellers of property, right?

23          MS. ECK:   Objection.

24          THE WITNESS:   Yeah.   This is an obvious -- this

25   is an obvious thing to -- to do that.

Page 300

1          MS. ECK:   Objection.   Misstates the -- the

2    documents.   The documents --

3          THE WITNESS:   Uh-huh.

4          MS. ECK:   -- speak for themselves.

5    BY MR. SCHNEIDER:

6      Q.   Would you look at page 168.   What was the

7    discussion concerning this repaired value form?

8      A.   This was an attempt -- which isn't a technique

9    that I'm using, but if one wanted to buy a property that

10   required extensive repairs, these are guidelines in his

11   view of how much you're going to allow for a new roof,

12   for a -- you know, a -- an estimate of trying to figure

13   out what the value is going to be after it's repaired.

14          MR. SCHNEIDER:   Madam Court Reporter, when you

15   listen to the record on the previous answer, it's

16   transcribed as:   "This is an obvious thing to do."   I

17   think that the testimony is:   "Yeah.   This is an obvious

18   thing to do."   So make sure that the response is there.

19   BY MR. SCHNEIDER:

20     Q.   So this is information that was discussed

21   including some calculations on how to determine repair

22   value?

23     A.   A -- a rough estimate, yeah, of how to --

24     Q.   If we look at 183.   Was there a discussion

25   about all-cash offers?

Page 301

1    A.    Yes.

2    Q.    And you all worked through some numbers during

3  the workshop?

4    A.    Yes.

5    Q.    If you'll turn to page 192.  This is an

6  affidavit and memorandum of agreement.

7          Did you all discuss how to fill out this --

8  this form or this -- this agreement?

9    A.    Yes.

10   Q.    Page 196.  Was there information provided about

11  how to build a buyers' list?

12   A.    It tells you what to put on there.  It doesn't

13  tell you how to contact the -- how to find the buyers,

14  put the name and ask certain questions in a record that

15  you're going to keep to build a buyers' list, but not

16  how to find the buyers.

17   Q.    That was in the earlier section we looked at

18  about how to potentially find sellers of property,

19  right?  We talked about that earlier, correct?

20   A.    Yes.  Yes.

21   Q.    Okay.  Then page 205 and 206, those are two

22  different types of contracts, one to purchase real

23  estate and an assignment of contract?

24   A.    Yes.

25   Q.    Basically, you all discussed how to contract

Page 302

1   for property?

2        A.   2-0 what?

3             MS. ECK:   Look at the documents first, 205 --

4             MR. SCHNEIDER:   205 and 206.

5             MS. ECK:   Objection.   Compound.

6             THE WITNESS:   Could you please restate the

7   question?

8             MR. SCHNEIDER:   Sure.

9   BY MR. SCHNEIDER:

10       Q.   205, that's a contract to purchase real estate.

11            Did you all discuss that contract?

12       A.   Yes, but this is not the -- this is not a

13  contract.

14       Q.   Yeah.   The specific forms you use in Florida,

15  right?

16       A.   No.   This isn't a -- a contract to purchase

17  real estate.   It's usually 20, 30 pages.

18       Q.   The next page, 206, an assignment of contract.

19            Did you all discuss that?

20       A.   Yes.

21       Q.   Would you look at page 228.   What was being

22  discussed here?

23       A.   Ways to add incentives when trying to sell your

24  property.

25       Q.   And on the next page, the retailing example,

Page 303

1    what was that?

2       A.   Creative ads into a -- an example.  I'm

3    offering $10,000 cash back at closing trying to -- if

4    you can have a -- of course, this is retailing, which is

5    really almost like having a real estate license because

6    what you're selling -- you're buying property and you're

7    selling it at retail value, which is not appropriate.

8    So obviously I took notes.  I mean, he's saying do some

9    incentive, give 10,000 cash back, trying to give an

10   incentive to buy your property.

11      Q.   From the time that you got your real estate

12   license to today, have you ever listed a property?

13      A.   Yes.

14      Q.   Have you ever sold a property?

15      A.   Yes.

16      Q.   How many would you estimate you've sold in your

17   career?

18      A.   Well, I've just gotten back into it, so I've

19   listed three or four and -- we actually work as

20   partners, one lists and one sells.  We were doing

21   this -- we're now into short sale.

22      Q.   But -- but you personally, you've had your

23   license for almost 15 years, right?

24      A.   Yeah.  I just became active, yeah, in '10.  And

25   I worked a very short period of time, but that's when

Page 378

1          THE WITNESS:  Okay.

2          MR. SCHNEIDER:  You'll have 30 days from the

3    time you get it to --

4          THE WITNESS:  Okay.

5          MR. SCHNEIDER:  -- to do all of that.  And then

6    if you'll get it back to her.

7          Then, Amber, if you'll notify me of signature,

8    of any changes in writing, hang on to the transcript,

9    make it available upon reasonable request.  If for some

10   reason the signed original isn't available, we can use

11   an unsigned certified copy in place of the signed

12   original.

13         MS. ECK:  Okay.

14         THE VIDEOGRAPHER:  Off the record at 6:26 p.m.

15   And this concludes today's deposition.

16         (Time Noted: 6:26 p.m.)

17

18

19

20   _____

21        JOANN EVERETT

22

23        Subscribed and sworn to before me

24        this      day of           2012.

25   _____

Page 379

REPORTER'S CERTIFICATION

1

2

3         I, Kimberly Thrall, Certified Shorthand

4  Reporter and Registered Professional Reporter, in and

5  for the State of California, do hereby certify:

6

7         That the witness named in the foregoing

8  deposition was, before the commencement of the

9  deposition, duly administered an oath in accordance

10 with the Code of Civil Procedure Section 2094; that

11 the testimony and proceedings were reported

12 stenographically by me and later transcribed through

13 computer-aided transcription under my direction and

14 supervision; that the foregoing is a true record of the

15 testimony and proceedings taken at that time.

16

17        IN WITNESS WHEREOF, I have hereunto subscribed

18 my name this 15th day of October, 2012.

19

20

21  _____

22  Kimberly S. Thrall, RPR, CSR No. 11594

23

24

25

# EXHIBIT 10

Page 1

1             UNITED STATES DISTRICT COURT

2        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3     _____
                                     )
4     TARLA MAKAEFF, BRANDON KELLER,  )
      ED OBERKROM, and PATRICIA MURPHY, )
5     on Behalf of Themselves and All  )
      Others Similarly Situated,       )
6                                       )
                Plaintiffs,            ) Case No.
7                                       ) 10 CV 0940 CAB (WVG)
           vs.                         )
8                                       )
      TRUMP UNIVERSITY, LLC, (aka Trump )
9     Entrepreneur Initiative) a New    )
      York Limited Liability Company,   )
10    DONALD J. TRUMP, and DOES 1       )
      through 50, inclusive,            )
11                                      )
                Defendants.            )
12    _____)

13

14

15           Videotaped Deposition of John Brown

16           taken at 655 West Broadway, Suite 1900,

17           San Diego, California, commencing at

18           9:18 a.m., on Monday, October 8, 2012,

19           before Kimberly S. Thrall, RPR, CSR No. 11594.

20

21

22

23

24    Reported by:  Kimberly S. Thrall, RPR, CSR. No. 11594

25               Job No. 54027

Exhibit 10 - Page 450

```
 1    APPEARANCES OF COUNSEL:

 2         FOR THE DEFENDANTS:

 3              YUNKER & SCHNEIDER
                BY:  DAVID SCHNEIDER, ESQ.
 4              655 West Broadway
                San Diego, California 92101
 5

 6

 7         FOR THE PLAINTIFFS AND PROPOSED CLASS:

 8              ZELDES & HAEGGQUIST
                BY:  AMBER L. ECK, ESQ.
 9              625 Broadway
                San Diego, California  92101
10

11                   - and -

12

13              ROBBINS GELLER RUDMAN & DOWD
                BY:  RACHEL L. JENSEN, ESQ.
14              655 West Broadway
                San Diego, California 92101
15

16

17

18

19

20    ALSO PRESENT:

21              Christopher Brooks, Video Operator

22

23

24

25
```

Exhibit 10 - Page 451

```
 1                    I N D E X

 2

 3   MONDAY, OCTOBER 8, 2012

 4

 5   WITNESS

 6   JOHN BROWN

 7

 8   EXAMINATION BY                              PAGE

 9   Mr. Schneider  .................................    6

10

11                    EXHIBITS

12   NUMBER          DESCRIPTION             PAGE   LINE

13   Exhibit No. 1   Notice of Taking Depositions
                     and Request to Produce
14                   Documents at Deposition    43      1

15   Exhibit No. 2   Contract; Bates Stamp No.
                     TU-BROWN1 and TU-BROWN2    49      2
16
     Exhibit No. 3   Profit from Real Estate
17                   Investing Evaluation; Bates
                     Stamp Nos. TU 130017 and
18                   TU 130018                  53      3

19   Exhibit No. 4   Trump Enrollment Contract Form
                     for the Three-Day In-Field
20                   Mentorship; Bates Stamp No.
                     TU 130015 and TU 130016    91      1
21
     Exhibit No. 5   E-mail String; Bates Stamp
22                   Nos. TU 130032 through
                     TU 130034                 159     17
23
     Exhibit No. 6   Affidavit of John Brown; Bates
24                   Stamp Nos. TU-BROWN376 through
                     TU-BROWN380               174     25
25
```

Exhibit 10 - Page 452

Page 4

```
 1                          EXHIBITS

 2     NUMBER         DESCRIPTION                    PAGE   LINE

 3     Exhibit No. 7  Declaration of John Brown in
                      Support of Plaintiffs' Motion
 4                    for Class Certification        209    23

 5     Exhibit No. 8  E-mail from Mark Covais dated
                      6/22/11 Re: Trump Initiative;
 6                    Bates Stamp No. TU-BROWN12
                      and TU-BROWN13                 221    14
 7
       Exhibit No. 9  Document Entitled "Howard Edward
 8                    Haller, Ph.D."; Bates Stamp
                      Nos. TU-BROWN6 through
 9                    TU-BROWN8                       221    21

10     Exhibit No. 10 One-to-One Mentoring Information;
                      Bates Stamp Nos. TU-BROWN16
11                    through TU-BROWN19             232    25

12     Exhibit No. 11 Advanced Real Estate Training
                      Options; Bates Stamp Nos.
13                    TU-BROWN41 and TU-BROWN42      235     1

14     Exhibit No. 12 Black-and-White Photograph;
                      Bates Stamp No. TU-BROWN65     236     2
15

16

17

18

19

20

21

22

23

24

25
```

Exhibit 10 - Page 453

Page 5

1        SAN DIEGO, CALIFORNIA; MONDAY, OCTOBER 8, 2012

2                          9:18 A.M.

3

4              THE VIDEOGRAPHER:   This is the start of tape

5    labeled No. 1 of the videotaped deposition of

6    John Brown, in the matter Makaeff, et al., versus

7    Trump University, LLC, et al., in the United States

8    District Court, Southern District of California.   The

9    case number is 10 CV 0940 CAB (WVG).

10             This deposition is being held at Robbins Geller

11   Rudman & Dowd, 655 West Broadway, Suite 1900, in

12   San Diego, California, on October 8th, 2012, at

13   approximately 9:18 a.m.

14             My name is Christopher Brooks from

15   TSG Reporting, Incorporated, and I'm the legal video

16   specialist.   The court reporter is Kim Thrall in

17   association with TSG Reporting.

18             Will counsel please introduce yourself.

19             MR. SCHNEIDER:   David Schneider for defendants,

20   Donald Trump and Trump University.

21             MS. ECK:   Amber Eck for plaintiffs.   And Rachel

22   Jensen may be joining us later.

23             THE VIDEOGRAPHER:   Thank you.

24             Will the court reporter please swear in the

25   witness.

Exhibit 10 - Page 454

Page 6

1                          JOHN BROWN,

2              called as a witness, having been first

3              affirmed, was examined and testified as

4              follows:

5

6              THE COURT REPORTER:   Thank you.

7

8                          EXAMINATION

9   BY MR. SCHNEIDER:

10     Q.    Good morning.  Please state your full name.

11     A.    My full name is John Christopher Brown.

12     Q.    Mr. Brown, my name is David Schneider, and I

13  represent Donald Trump and Trump University in a lawsuit

14  which you have filed against my clients.  This is a

15  deposition.

16              Have you been through a deposition process

17  before?

18     A.    No.

19     Q.    Have you ever been a party to a lawsuit before?

20     A.    No.

21     Q.    What do you do for a living?

22     A.    I am the director of committees and content

23  development for the New York Society for Security

24  Analysts.

25     Q.    What does the New York Society of Security

Exhibit 10 - Page 455

Page 76

1    the time and my feelings at the time and the excitement

2    I was experiencing, I inflated those numbers.  And I

3    didn't do it purposely, you know.  I didn't consciously

4    say, oh, I'm going to give them a 5 because I think

5    they're the best thing in -- since sliced bread.  I did

6    it because I was excited.  Today I would give 3s.  I can

7    go right down through these if you want me to.

8         Q.   No.  I -- I understand your position.

9              No. 2, "What topics would you like to see

10   cover-" -- "like to see covered in future Trump

11   University seminars?"  You stated: "Practice telephone

12   conversations."

13             What did you mean by that?

14        A.   Mr. Harris called someone on the telephone --

15   and it's interesting because now I think about it -- and

16   he could have been calling somebody from Trump

17   University on the telephone.  We don't know who he

18   called.  And there was this conversation on the phone

19   about do you want -- are you interested in selling your

20   house?  Have you thought about renting your house?  Have

21   you gone through all this?  And everybody, of course,

22   was listening because it was on speaker.

23        Q.   Did he --

24        A.   And I thought --

25        Q.   I'm sorry.

Exhibit 10 - Page 456

Page 77

1    A.   I thought those -- that kind of a conversation

2    would be important for me to learn so that if I made

3    telephone calls, I would know the right questions to

4    ask.

5    Q.   So you were able to observe his conversation,

6    sort of see a how-to, right?

7    A.   Yes.

8    Q.   And did you find that to be of some value?

9         MS. ECK:   Objection.   Vague.   Lacks foundation.

10        THE WITNESS:   Well, I said here some -- minimal

11   value.   I said here that's -- that I wanted -- that I

12   would like to see more practice or learn how to

13   practice.

14   BY MR. SCHNEIDER:

15   Q.   So did you want to see more of what he had just

16   done?

17   A.   I wanted -- I wanted to learn how to conduct

18   these conversations.

19   Q.   Were you asked to bring in leads of potential

20   sellers so he can make these calls?

21   A.   I don't remember.

22   Q.   Did you bring in any leads for Mr. Harris or

23   any presenter to make calls?

24   A.   No.   That's why I said I don't know where -- he

25   could have been calling someone at Trump University for

Exhibit 10 - Page 457

Page 86

1    thought that was it.  I didn't know there was something

2    else coming.  I didn't know --

3        Q.   So --

4        A.   I didn't know --

5        Q.   So --

6        A.   -- what the purpose of filling out --

7            MS. ECK:  Yeah.  Go ahead.

8            THE WITNESS:  I didn't know what the purpose of

9    filling out the -- my income level, my credit card

10   amounts, I didn't -- I had no idea what any of that was

11   for, and they didn't tell us what it was for.

12   BY MR. SCHNEIDER:

13       Q.   So you believed that everything that you'd need

14   to know about being a real estate investor, you could

15   learn in three days?

16       A.   I felt that I could learn the most important

17   points in three days, certainly not everything.  That

18   would be impossible.

19       Q.   And did you learn anything during those three

20   days?

21       A.   I think I learned minimal, but some of it I

22   already knew from investing with the -- the real estate

23   agent that I did.

24       Q.   And some concepts --

25       A.   I --

Exhibit 10 - Page 458

Page 87

1    Q.    -- were new to you, correct?

2    A.    One was wholesaling.  I didn't know what that

3    was.  I gave you that as an example.  But to pay $1,500

4    to learn about wholesaling, which you can explain to

5    someone in 10 minutes, is not value for me.

6    Q.    Did you run through examples during the three

7    days, monetary examples, look at a piece of property

8    and -- and run through different figures about purchase

9    price, rehab prices, that sort of thing?

10   A.    I vaguely remember something about that, yes.

11   Q.    Did you review contracts?

12   A.    Not -- I don't remember.

13   Q.    All right.  So you were meeting with people in

14   the back of the room and expressing an interest, but you

15   also expressed your -- your concerns about whether or

16   not you wanted to go forward with purchasing other

17   Trump University products?

18   A.    Right.

19   Q.    And you expressed your concern about whether or

20   not the company was shady.

21   A.    I told them it -- I told them it doesn't feel

22   quite right to me, plus it's expensive.  It's very

23   expensive.

24   Q.    And in response, at least on the expense side,

25   somebody told you that one of the ways that you can pay

Exhibit 10 - Page 459

Page 171

```
 1      A.   It was slightly better than day two.

 2      Q.   Okay.  Why?

 3      A.   I don't know.  I would have to -- I really

 4  don't remember at this point.

 5      Q.   All right.  At the end of the third day --

 6      A.   Uh-huh.

 7      Q.   -- what was your satisfaction level?

 8      A.   I'd say it was sort of mediocre.  I wasn't sure

 9  if it was valuable or not.

10      Q.   Did you believe it was worth any amount of

11  money?

12      A.   That?

13      Q.   The three-day program --

14      A.   The three-day?

15      Q.   -- you went through.

16      A.   It certainly wasn't worth $1,500.

17      Q.   Do you believe it was worth any amount of

18  money?

19           MS. ECK:   Objection.  Calls for speculation.

20  Hypothetical.

21           THE WITNESS:   I --

22  BY MR. SCHNEIDER:

23      Q.   You can answer the question.

24      A.   I would -- I would have paid $199 for it maybe

25  or 200.
```

Exhibit 10 - Page 460

Page 254

1          That was Steve Gilpin, right?

2     A.   Yes.

3     Q.   And then you said a two-day personal excursion

4  with the same coach to look at real estate.

5          It was actually three days, wasn't it?

6     A.   I -- yeah.  Wait.  It was -- I can't remember

7  if it was two or three.  I thought it was three.

8     Q.   And then four lines up -- or five lines up from

9  the bottom, it says, "Although I learned a few things

10  from my coach, what I got for" --

11     A.   Uh-huh.

12     Q.   -- "my $25,000 was not anything that I

13  expected."

14          Do you see that?

15     A.   Correct, yes.

16     Q.   What did you learn from your coach?

17     A.   Nothing really.

18     Q.   What did you mean here when you said --

19     A.   I --

20     Q.   -- you learned a few things?

21     A.   I learned some terminology, what wholesaling

22  is, what foreclosures are, that kind of thing.  I

23  learned -- I only learned a little bit, but it was

24  really zero.

25     Q.   The -- the next sentence states that --

Exhibit 10 - Page 461

Page 296

1    and of signature and hang on to the original and make it

2    available.  And if for some reason, the signed original

3    isn't available, then we can use an unsigned, certified

4    copy in place of the signed original.

5              MS. ECK:  That's fine.

6              MR. SCHNEIDER:  All right.  Mr. Brown, thank

7    you.

8              THE WITNESS:  Thank you.

9              THE VIDEOGRAPHER:  Off the record at 5:13 p.m.

10   And this concludes today's deposition.

11             (Time Noted:  5:13 p.m.)

12

13

14              _____

15              JOHN BROWN

16

17             Subscribed and sworn to before me

18             this 12 day of November 2012.

19              _____

20

21

22

23

24

25

Exhibit 10 - Page 462

Page 297

1                REPORTER'S CERTIFICATION

2

3          I, Kimberly Thrall, Certified Shorthand

4    Reporter and Registered Professional Reporter, in and

5    for the State of California, do hereby certify:

6

7          That the witness named in the foregoing

8    deposition was, before the commencement of the

9    deposition, duly administered an oath in accordance

10   with the Code of Civil Procedure Section 2094; that

11   the testimony and proceedings were reported

12   stenographically by me and later transcribed through

13   computer-aided transcription under my direction and

14   supervision; that the foregoing is a true record of the

15   testimony and proceedings taken at that time.

16

17         IN WITNESS WHEREOF, I have hereunto subscribed

18   my name this 18th day of October, 2012.

19

20

21   _____

22   Kimberly S. Thrall, RPR, CSR No. 11594

23

24

25

Exhibit 10 - Page 463

Page 298

1          ERRATA SHEET FOR THE TRANSCRIPT OF:

2     Case Name:              Makaeff vs. Trump

3                             University

4     Dep. Date:              October 8, 2012

5     Deponent:               John Brown

6     Pg.      Ln.     Now Reads        Should Read       Reason

7     _80_     _2_     The last Saturday   Last Saturday   extra word

8     _33_     _6_     take                talk            wrong word

9     _106_    _14_    you have to         you have too    wrong word

10    _187_    _4_     the business        the best business   omitted word

11    ____     ____    _____       _____    _____

12    ____     ____    _____       _____    _____

13    ____     ____    _____       _____    _____

14    ____     ____    _____       _____    _____

15    ____     ____    _____       _____    _____

16    ____     ____    _____       _____    _____

17    ____     ____    _____       _____    _____

18    ____     ____    _____       _____    _____

19

20

21

22

23

24

25

Exhibit 10 - Page 464

# EXHIBIT 11

Case 3:10-cv-00940-GPC-WVG   Document 380-6   Filed 02/19/15   PageID.24667   Page 127 of 145

Deposition of Mette Nielsen          MAKAEFF, et al. vs. TRUMP UNIVERSITY, LCC, et al.

```
 1                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF CALIFORNIA
 2              CASE NO.:  10-cv-00940 GPC (WVG)
                         CLASS ACTION
 3    TARLA MAKAEFF, SONNY LOW, J.R.
      EVERETT, and JOHN BROWN, on behalf of
 4    themselves and all others similarly
      situated, ED OBERKROM, and BRANDON
 5    KELLER, individually,

 6
          Plaintiffs,
 7
      -vs-
 8
      TRUMP UNIVERSITY, LLC (a/k/a Trump
 9    Entrepreneur Initiative), a New York
      Limited Liability Company,
10    DONALD J. TRUMP, and
      DOES 1 through 50, inclusive,
11
          Defendants.
12    _____/

13

14
              VIDEOTAPED DEPOSITION OF METTE NIELSEN
15

16

17              Friday, December 19, 2014
                 9:07 a.m. - 1:25 p.m.
18
                   One Biscayne Tower
19              2 South Biscayne Boulevard
                      Suite 1900
20               Miami, Florida 33131

21

22

23
                Stenographically Reported By:
24                Barbie Gallo, RMR-CRR
                      www.kramm.com
25                   800-939-0080
```

Case 3:10-cv-00940-GPC-WVG   Document 380-6   Filed 02/19/15   PageID.24668   Page 128 of 145

Deposition of Mette Nielsen                                    MAKAEFF, et al. vs. TRUMP UNIVERSITY, LCC, et al.

```
 1    APPEARANCES:

 2

      On behalf of the Plaintiffs:
 3        ROBBINS, GELLER, RUDMAN & DOWD, LLP
          120 East Palmetto Park Road
 4        Boca Raton, Florida 33432
          (561)750-3000
 5        BY:  MAUREEN E. MUELLER, ESQUIRE
          mmueller@rgrdlaw.com
 6
          ROBBINS, GELLER, RUDMAN & DOWD, LLP
 7        655 West Broadway
          Suite 1900
 8        San Diego, California 92101
          (619)231-1058
 9        BY:  RACHEL L. JENSEN, ESQUIRE
          rachelj@rgrdlaw.com
10        (via telephone)

11

      On behalf of the Defendants:
12        TRUMP INTERNATION GOLF CLUB
          One Trump National Drive
13        Rancho Palos Verdes, California 33134
          (310)303-3225
14        BY:  JILL A. MARTIN, ESQUIRE
          jmartin@trumpnational.com

15

16    Also present:
        Chris Kennedy
17

18

19

20

21

22

23

24

25
```

```
 1                        INDEX OF PROCEEDINGS
      WITNESS:                                        PAGE
 2
      METTE NIELSEN
 3
           Direct Examination by Ms. Martin...............4
 4         Cross-Examination by Ms. Mueller..............81
           Redirect Examination by Ms. Martin...........169
 5         Certificate of Oath..........................176
           Certificate of Reporter......................177
 6

 7                        DEFENSE EXHIBITS

 8    NO.                   DESCRIPTION                 PAGE

 9    1 2/11/13    Declaration of Mette Nielsen          13
      2 11/15/12   Declaration of Mette Nielsen          31
10    3 12/19/14   Subpoena to Testify at a              76
                   Deposition in a Civil Action
11

12                      PLAINTIFFS' EXHIBITS

13    NO.                   DESCRIPTION                 PAGE
      1 11/14/12-  E-Mail String between Jill Martin/    82
14       11/19/14  Mette Nielsen
                   TU 319692-TU319698
15    2 10/19/09   The Miami Herald "The Time            99
                   to Invest in Florida Real Estate is Now"
16                 TU 305606
      3 2009       Trump University Playbook 2009       115
17                 TU 130419-TU 130550
      4 11/12/12   E-mail From:  Mette Nielsen          141
18                 To:  Customer Support
                   Subject:  Re:  Share Your Success!
19    5 12/10/14   E-Mail From:  Jill Martin            151
                   To:  Benjamin Morris
20                 Subject:  Declaration of
                   Mette Nielsen doc
21

22

23

24

25
```

```
 1    Thereupon,

 2    the following proceedings began at 9:07 a.m.:

 3              THE VIDEOGRAPHER:  Okay.  We're on the

 4         record.  This is the digital video deposition of

 5         Mette Nielsen testifying in the matter of

 6         Makaeff, et al. versus Trump University, LLC, et

 7         al.  The Case Number 10-cv-00940.

 8              This deposition is being conducted at

 9         2 South Biscayne Boulevard in Miami, Florida.

10         Today's date is December 19th, 2014.  The time

11         on the video monitor is 9:07 a.m.

12              My name is Chris Kennedy from Legal Video

13         Specialists Jordan Media, Inc. at 1228 Madison

14         Avenue in San Diego, California.

15              The court reporter today is Barbie Gallo.

16              Will counsel announce their appearances for

17         the record.

18              MS. MARTIN:  Jill Martin for the defendants.

19              MS. MUELLER:  Maureen Mueller for the

20         plaintiffs and the class from Robbins, Geller,

21         Rudman & Dowd.

22              MS. JENSEN:  Rachel Jensen from Robbins,

23         Geller, Rudman & Dowd on behalf of plaintiffs

24         and the class.

25
```

Case 3:10-cv-00940-GPC-WVG   Document 380-6   Filed 02/19/15   PageID.24671   Page 131 of 145

Deposition of Mette Nielsen                    MAKAEFF, et al. vs. TRUMP UNIVERSITY, LCC, et al.

1    THEREUPON,

2                          METTE NIELSEN,

3    Being by me, as hereinafter certified, first duly sworn

4    to tell the whole truth testified as follows:

5                        DIRECT EXAMINATION

6    BY MS. MARTIN:

7         Q.    Good morning, Miss Nielsen.

8         A.    Good morning.

9         Q.    Thank you very much for being here.  As you

10   know, my name is Jill Martin, and I'm an attorney who

11   represents Trump University and Mr. Donald Trump who

12   are defendants in a lawsuit that you're here to testify

13   about today.  Before we get started, I just want to go

14   over a few of the ground rules of a deposition so we

15   kind of know our rules of engagement here today.

16        A.    Um-hum.

17        Q.    You just took an oath.  Do you understand

18   that the oath you took requires you to answer my

19   questions truthfully?

20        A.    Yes.

21        Q.    Do you understand that the testimony you

22   give here today is no different than the testimony you

23   would be giving if you were sitting in a courtroom?

24        A.    Yes.

25        Q.    As you can see, we have a court reporter

1    Q.    And you mentioned a little bit earlier when

2    you went to the three-day seminar, the instructor there

3    was James Harris, correct?

4    A.    Yes.

5    Q.    And that took place approximately end of

6    October, around Halloween?

7    A.    That was the end of October.

8    Q.    Was that seminar in Miami as well?

9    A.    That was in Miami as well.

10    Q.    And your experience with James Harris, did

11    think that what he was presenting was substantive

12    information?

13         MS. MUELLER:  Objection; leading.

14         THE WITNESS:  I don't know if I had any

15         thoughts about that.  I was taking in the

16         information I was given.  And most of what I had

17         from, at least the first part of it was if

18         you're going to do something, do it well and

19         then get up and do it.  And he was very adamant

20         about that part.

21         And later on then came the theory of doing

22         the numbers and all of that, and I did that.

23    BY MS. MARTIN:

24    Q.    At the three-day seminar, do you remember

25    anything you learned?

1       A.      I learned my whole foundation for what I did

2   for the next five years.

3       Q.      Can you describe for me a little bit more

4   what you mean by that, any specifics to what is your

5   whole foundation?

6       A.      I was told -- I was told by James Harris,

7   because my situation wasn't one that I could invest

8   myself.  I did not have capital to go invest myself,

9   and he realized that.  And then he laid out the options

10  that were available for me in my particular situation.

11          I have to say, too, along with James Harris,

12  I was in contact before Bob Steenson as well who was in

13  commercial real estate.  He was a commercial real

14  estate mentor.

15          And he probably -- after that three-day

16  course, he's probably the one that kicked me around the

17  most on a personal level and just said, you've got to

18  get out there, you have to go and meet with other

19  investors and be a part of.  If you say you're a part

20  of it, go be a part of it.

21          And I was terrified, but I went.  I went.

22  On his word, I went and met with investors and investor

23  clubs and said ridiculous things for a couple of months

24  and didn't know anything about what was what.  It was

25  very embarrassing.

Case 3:10-cv-00940-GPC-WVG   Document 380-6   Filed 02/19/15   PageID.24674   Page 134 of
145
Deposition of Mette Nielsen                          MAKAEFF, et al. vs. TRUMP UNIVERSITY, LCC, et al.

1           a quick break.  Let's go off the record.

2                 THE VIDEOGRAPHER:  Going off the record.

3           The time is 1:28.

4        (A recess was taken from 10:44 a.m. to 10:50 a.m.)

5                 THE VIDEOGRAPHER:  The time is 10:50 a.m.

6           This is the beginning of tape number two.  We're

7           back on the record.

8     BY MS. MARTIN:

9        Q.     All right.  Miss Nielsen, we talked a little

10     bit earlier about the fact that you made significantly

11     more money than you invested in Trump University

12     investing in real estate.  Would it be fair to say you

13     think you got your money's worth from Trump University?

14        A.     Yes.

15                 MS. MUELLER:  Objection; leading.

16     BY MS. MARTIN:

17        Q.     And as you sit here today, do you think that

18     what you learned from Trump University was useful

19     information?

20                 MS. MUELLER:  Objection; form.

21                 THE WITNESS:  Yes.

22     BY MS. MARTIN:

23        Q.     Do you think that what you learned from

24     Trump University was valuable information?

25        A.     Absolutely.

1        THE WITNESS:   No.

2    BY MS. MARTIN:

3        Q.    And why did you decide to provide statements

4    that Trump University could use in the lawsuit?

5        A.    Because I -- like I told you earlier, I had

6    value.   I received value for the payments that I put

7    in.   And I -- yeah, I -- we have always had -- whenever

8    I have spoken with you or e-mailing or whatever it has

9    been, it's always been very pleasant and very free.

10        And I feel that has not been the case

11   necessarily when I have had phone calls from plaintiff.

12   It's been a bit of a push maybe for me to do or to say

13   or to engage or -- so and that's probably why I didn't.

14        MS. MARTIN:   I have no further questions.

15        MS. MUELLER:   I'm going to have some

16        questions, but I'd like to take a break before I

17        get into those questions.

18        Do you guys want to do -- do you want to go

19        off the record really quickly, we can discuss --

20        MS. MARTIN:   Sure.

21        THE VIDEOGRAPHER:   Going off the record.

22        The time is 11:02.

23      (A recess was taken from 11:02 a.m. to 11:24 a.m.)

24        THE VIDEOGRAPHER:   The time is 11:24 a.m.

25        We're back on the record.

Case 3:10-cv-00940-GPC-WVG   Document 380-6   Filed 02/19/15   PageID.24676   Page 136 of 145

te Nielsen                                                MAKAEFF, et al. vs. TRUMP UNIVERSITY, LCC, et al.

CERTIFICATE OF OATH

E STATE OF FLORIDA )

UNTY OF PALM BEACH COUNTY)


I, the undersigned authority, certify that

TE NIELSEN personally appeared before me and was

ly sworn on the 19th day of December, 2014.

gned this 22nd day of December, 2014.



_Barbara Gallo_

BARBIE GALLO, RMR-CRR

Notary Public - State of Florida

My Commission No. EE13403

My Commission Expires:   October 21, 2015

Exhibit 11 - Page 474

MAKAEFF, et al. vs. TRUMP UNIVERSITY, LCC, et al.

of Mette Nielsen

## CERTIFICATE OF REPORTER

THE STATE OF FLORIDA )

COUNTY OF PALM BEACH )


    I, Barbie Gallo, RMR-CRR, Registered Merit
Reporter-Certified Realtime Reporter, certify that I
was authorized to and did stenographically report the
deposition of METTE NIELSEN, pages 1 through 177; that
a review of the transcript was requested; and that the
transcript is a true and complete record of my
stenographic notes.

    I further certify that I am not a relative,
employee, attorney, or counsel of any of the parties,
nor am I a relative or employee of any of the parties'
attorney or counsel connected with the action, nor am I
financially interested in the action.


    DATED this 22nd day of December 2014.


*Barbara Gallo*

Barbie Gallo, RMR-CRR

Exhibit 11 - Page 475

# EXHIBIT 12

David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:  (619) 233-5535
Email:  dks@yslaw.com

Attorneys for Defendants TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative, LLC, a New York Limited Liability Company, DONALD J. TRUMP, and DOES 2 through 50, inclusive, <br><br> Defendants. <br>─────────────────────── <br> AND ALL RELATED CROSS-ACTIONS. <br>─────────────────────── | Case No. 10 CV 0940 CAB (WVG) <br><br> <u>CLASS ACTION</u> <br><br> DECLARATION OF CHARLES LEE <br><br><br> DATE:   February 12, 2013 <br> TIME:    2:30 p.m. <br> CTRM:   2 — 4th Floor |

## DECLARATION OF CHARLES LEE

I, Charles Lee, declare:

1.     I am over the age of 18 and not a party to this action.  The following facts are based on my own personal knowledge and, if called as a witness, I could testify to them.

2.     I am providing this declaration freely and voluntarily.  I have had the opportunity to review the contents of this declaration and to make any changes I believe are necessary so that it is accurate.  I understand that Trump University (aka Trump Entrepreneur Initiative) may use this declaration to support its defense in *Makaeff v. Trump University et al.,* a case described to me.

3.     I heard about Trump University sometime in 2007.  They held a seminar in Secaucus New Jersey. It was very informative and eye-opening.  I was in flooring business at the time and doing well.  2 years later, the economy was in bad shape, and flooring business was not as good.  I saw the ad by Trump University online, and decided to attend a seminar again in Saddle Brook New Jersey.  My wife and I were convinced it was the right step, and sign up for a three-day workshop in Manhattan, New York City in December.   After attending the workshop and seminar, it appeared apparently to us that the real estate business is much better than the flooring business in terms of the profitability and the financial future of our family. Therefore we decided to enroll in Trump University.

4.     After enrolling at Trump University, I purchased several properties with the help of my mentor, Troy Peterson.  Unfortunately I was not able to flip those properties at a price I felt would be beneficial to me, so I currently lease these properties to tenants.  I have been able however to sell two other properties at a profit.  I have also purchased another property last year, and lease that one as well.   The houses are in Montclair , Bloomfield and Passaic of New Jersey.  We have sold the houses and made close to ▮▮▮▮ profit. The renting is also giving positive cash flows.

5.     There was excellent communication between myself and my mentor, Troy Peterson,  he came to my place for a three-day on-site training, analyzed all of the details about producing a property, and got us started.

1    6.    As part of the Trump Entrepreneur Initiative programs, I filled out evaluations.  I

2    never felt pressured to say something that was not true on the evaluations, and I filled them out

3    honestly.  I felt they were administered fairly.  Every rating I gave my mentor was always

4    positive, and I still agree with what I said to this day.

5    7.    I did not meet or speak with Donald J. Trump as part of my Trump Entrepreneur

6    Initiative experience, nor did he make any promises to me about the education I would receive.

7    In purchasing Trump Entrepreneur programs, I understood that I would not be working

8    personally with Donald J. Trump.   Even though we really hoped that we could meet Mr. Trump,

9    it never happened.

10    8.    At the end of my mentorship, I felt the program was very knowledgeable, fair,

11    and a good experience.   Even though there still be some places that should be improved, I felt

12    that the education from Trump University got us started in real estate business.  I cannot imagine

13    how my business would have been now without my experience with Trump and the knowledge,

14    skills from the Trump education.

15    I declare under penalty of perjury under the laws of the United States of America that the

16    foregoing is true and correct.

17    Executed this _17_ th day of  September 2012 at  _Lyndhurst_ , _NJ_ .

18    City,                          State.

20    Charles Lee

# EXHIBIT 13

David K. Schneider (CSB 139288)
YUNKER & SCHNEIDER
655 West Broadway, Suite 1400
San Diego, California 92101
Telephone:  (619) 233-5500
Facsimile:   (619) 233-5535
Email:  dks@yslaw.com

Attorneys for Defendants TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, BRANDON KELLER, ED OBERKROM, SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative, LLC, a New York Limited Liability Company, DONALD J. TRUMP, and DOES 2 through 50, inclusive,<br><br>            Defendants.<br><br>AND ALL RELATED CROSS-ACTIONS. | Case No. 10 CV 0940 CAB (WVG)<br><br>CLASS ACTION<br><br>DECLARATION OF ROBERT MULACK<br><br><br>DATE:   February 12, 2013<br>TIME:    2:30 p.m.<br>CTRM:   2 — 4th Floor |

# DECLARATION OF ROBERT MULACK

I, Robert Mulack, declare:

1.      I am over the age of 18 and not a party to this action.  The following facts are based on my own personal knowledge and, if called as a witness, I could testify to them.

2.      I am providing this declaration freely and voluntarily.  I have had the opportunity to review the contents of this declaration and to make any changes I believe are necessary so that it is accurate.  I understand that Trump University (aka Trump Entrepreneur Initiative) may use this declaration to support its defense in *Makaeff v. Trump University et al.,* a case described to me.

3.      Prior to enrolling in Trump University, I worked for Wal-Mart, and had no experience in real estate.  I had known for awhile that I wanted to learn how and to start investing in real estate.  I happened to see an advertisement for Trump University offering a free seminar.  After attending, I decided to enroll, and signed up for one of the three day seminars in Orlando; Fast Track to Foreclosure Investing.  This was around the beginning of 2008.

4.      While I was a student, I began making my first of many purchases of properties, all in Florida.  My first property I bought in March of 2008.  It's a single family home which I still own, and rent out at a profit.  I now have a total of nine properties.  Seven are all similar to the first; single family homes which I currently rent out.  The other two are a triplex and a duplex, which I also rent out.

5.      I found the classes and course materials extremely helpful and beneficial.  I especially found the website to be useful.  It was very interactive and gave me everything I needed.  I made use of a good amount of info from it, including the lease forms that are provided, which I use for all of my rental properties.

6.      As part of the Trump Entrepreneur Initiative programs, I filled out evaluations.  I never felt pressured to say something that was not true on the evaluations, and I filled them out honestly.  I felt they were administered fairly.  Every rating I gave my mentor was always positive, and I still agree with what I said to this day.

7.     I did not meet or speak with Donald J. Trump as part of my Trump Entrepreneur Initiative experience, nor did he make any promises to me about the education I would receive. In purchasing Trump Entrepreneur programs, I understood that I would not be working personally with Donald J. Trump.

8.     I was very happy and satisfied throughout the year I was a student at Trump University. I never felt like they made promises of any kind. All they simply did was provide you with the tools and resources for you to put to use, in order to learn the world of real estate investing. Of course you need to do the work yourself.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _13_ day of June 2012, at _Ormond Beach, FL_.

                   City                        State

_____
Robert Mulack

2

DECLARATION OF ROBERT MULACK

Exhibit 13 - Page 481