NANCY L. STAGG CA Bar No. 157034
  nstagg@foley.com
BENJAMIN J. MORRIS CA BAR No. 260148
  bmorris@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130-3302
TELEPHONE:   858.847.6700
FACSIMILE:   858.792.6773

JILL A. MARTIN CA Bar No. 245626
  jmartin@trumpnational.com
C/O **TRUMP NATIONAL GOLF CLUB LOS ANGELES**
ONE TRUMP NATION DRIVE
RANCHO PALOS VERDES, CA 90275
TELEPHONE:   310.303.3225
FACSIMILE:   310.265.5522

Attorneys for Defendants Trump University, LLC
and Donald J. Trump

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, SONNY LOW, J.R. EVERETT, AND JOHN BROWN, on behalf of themselves and all others similarly situated, ED OBERKROM, and BRANDON KELLER, individually,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC (aka Trump Entrepreneur Initiative), a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 10-cv-00940 GPC (WVG)<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRUMP UNIVERSITY, LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**DATE:** April 3, 2015<br>**TIME:** 1:30 p.m.<br>**CRTM:** 2D (2nd Floor – Schwartz)<br><br>**JUDGE:** Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

Page(s)

I. TRUMP UNIVERSITY IS ENTITLED TO SUMMARY JUDGMENT ................. 1

II. PLAINTIFFS FAILED TO PROVIDE EVIDENTIARY SUPPORT FOR RESTITUTION OR DAMAGES AND THE FULL REFUND THEORY DOES NOT APPLY ................................................................................................ 1

III. ADDITIONAL SUBCLASS SPECIFIC ISSUES THAT ENTITLE TU TO SUMMARY JUDGMENT .............................................................................. 5

    A. The California Classes ............................................................................. 5

        1. Plaintiffs Improperly Import New York Law Under The UCL ............ 5

        2. No Injunctive Relief Under The UCL, FAL, or CLRA ........................ 5

        3. The California Elder Abuse Claim Fails ............................................... 6

    B. The Florida Classes' Damages Claims Suffer The Same Evidentiary Failings ...................................................................................................... 6

    C. The New York Class ................................................................................. 7

IV. THE CASE SHOULD NOT CONTINUE TO TRIAL IF SUMMARY JUDGMENT IS GRANTED ........................................................................... 8

V. RULING ON THIS MOTION MUST BE DELAYED ................................... 9

VI. CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Brown v. Hain Celestial Group, Inc.*,
    2014 U.S. Dist. LEXIS 161036 (N.D. Cal. Nov. 18, 2014) ......................................... 10

*Campion v. Old Republic Home Prot. Co.*,
    861 F. Supp. 2d 1139 (S.D. Cal. 2012) ........................................................................5

*Corns v. Laborers Int'l Union of N. Am.*,
    2014 U.S. Dist. LEXIS 44997 (N.D. Cal. Mar. 31, 2014) ........................................... 10

*Dash v. Seagate Tech (US) Holdings, Inc.*,
    27 F. Supp. 3d 357 (E.D.N.Y. June 30, 2014) ..............................................................7

*In re Diamond Multimedia Sys., Sec. Litig.*,
    1997 U.S. Dist. LEXIS 21558 (N.D. Cal. Oct. 14, 1997) ........................................... 10

*Dietz v. Comcast Corp.*,
    2006 U.S. Dist. LEXIS 94333 (N.D. Cal. Dec. 21, 2006) ............................................6

*Gessele v. Jack in the Box, Inc.*,
    2012 U.S. Dist. LEXIS 120377 (D. Or. Aug. 24, 2012) ...............................................9

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006) .......................................................................................6

*Gomez v. Rossi Concrete, Inc.*,
    2011 U.S. Dist. LEXIS 15852 (S.D. Cal. Feb. 16, 2011) ........................................... 10

*Laster v. T-Mobile USA, Inc.*,
    2009 U.S. Dist. LEXIS 116228 (S.D. Cal. Dec. 14, 2009) ...........................................6

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ........................................................................................4

*Perez v. Nidek Co.*
    711 F.3d 1109 (9th Cir. 2013) ......................................................................................5

*In re POM Wonderful, LLC*,
    2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014) ............................................1

## **TABLE OF AUTHORITIES (CONTINUED)**

**Page(s)**

*Schwarzschild v. Tse*,
 69 F.3d 293 (9th Cir 1995) .................................................................................................. 9

*United States v. Austin*,
 54 F.2d 595 (9th Cir. 1993) .................................................................................................. 2

*Werdebaugh v. Blue Diamond Growers*,
 No. 12-cv-02724-LHK, 2014 WL 2191901 (N.D. Cal. Oct. 2, 2013) ........................... 1

**State Cases**

*Colgan v. Leatherman Toll Group, Inc.*,
 135 Cal. App. 4th 663 (2006) ......................................................................................... 2, 4

*People of the State of N.Y. v. Trump Entrepreneur Initiative LLC*,
 2014 N.Y. Misc. LEXIS 4533 (N.Y. Sup. Ct., Oct. 8, 2014) .......................................... 4

*Matter of People v. Applied Card Sys., Inc.*,
 41 A.D.3d 4 (N.Y. App. 2007) ............................................................................................ 7

*People v. Telehublink Corp*,
 301 A.D.2d 1006 (N.Y. App. 2003) ................................................................................... 7

*Tri-County Plumbing Servs. v. Brown*,
 921 So. 2d 20 (Fla. 3d DCA 2006) ................................................................................ 6, 7

*Urling v. Helms Exterminators, Inc.*,
 468 So. 2d 451 (Fla. 1st DCA 1985) .................................................................................. 6

I. **TRUMP UNIVERSITY IS ENTITLED TO SUMMARY JUDGMENT**

Plaintiffs have failed to submit admissible evidence to support their claims for restitution or damages for each cause of action against Trump University ("TU"). Lacking the necessary evidence, Plaintiffs implore the Court to shift the burden of proof to require TU to come forward with evidence regarding the valuation of the TU seminars and mentorships. This is not TU's burden. Plaintiffs' full refund damages model is not applicable to the facts or the claims of this case. Plaintiffs' failure to come forward with evidence that TU's seminars and mentorships were valueless or had a value less than Plaintiffs paid is fatal to their claims. There is no evidence from which the trier of fact could calculate restitution or damages, even assuming liability could be established. As a result, TU is entitled to summary judgment on all causes of action asserted in the Third Amended Complaint ("TAC").[1]

II. **PLAINTIFFS FAILED TO PROVIDE EVIDENTIARY SUPPORT FOR RESTITUTION OR DAMAGES AND THE FULL REFUND THEORY DOES NOT APPLY**

This is not a case of counterfeit artwork or a supplement with no active ingredient. *See* Opp. at 19-20. This is a false advertising case about whether the quality of the seminars and mentorships provided by TU were as advertised. This has always been the gravamen of Plaintiffs' claims throughout their four complaints. *See* TAC at ¶8 ("Plaintiffs are not bringing this action because they did not succeed in real estate – they are bringing this action because Defendants misrepresented what Trump University was providing.") In this type of case, Plaintiffs are not entitled to a windfall of receiving the value of the seminars and mentorships—whatever that value was *if* less than what was paid—<u>and</u> a full refund.[2] *See In re POM Wonderful, LLC*, 2014 U.S. Dist. LEXIS 40415

---

[1] Plaintiffs have agreed to dismiss all of their individual non-certified claims. *See* Dkt. No. 389, Joint Motion and Stipulation of Dismissal With Prejudice.

[2] The Court previously recognized that the full refund model is not appropriate in cases involving restitution. *See Cohen* Dkt. No. 53 at 21 ("Although some courts have found a 'full refund' model of damages inappropriate where the plaintiff's theory of liability seeks restitutionary damages, *see Werdebaugh v. Blue Diamond Growers*, No. 12-cv-

1  at *14 (C.D. Cal. Mar. 25, 2014) ("Because the Full Refund model makes no attempt to
2  account for benefits conferred upon Plaintiffs, it cannot accurately measure classwide
3  damages."). The law is clear that Plaintiffs must prove the existence of a "measurable
4  amount" of restitution supported by admissible evidence. *Colgan v. Leatherman Toll*
5  *Group, Inc.*, 135 Cal. App. 4th 663, 698-700 (2006). Plaintiffs have failed to meet this
6  burden. They have no evidence "to quantify either the dollar value of the consumer
7  impact or the advantage realized by [defendants]" if the misrepresentations are false. *Id*.
8  at 700.

9        On summary judgment Plaintiffs can no longer just argue that their full refund
10 model matches their liability theory, as they did to survive class certification. Plaintiffs
11 have to come forward with admissible evidence to establish an entitlement to a full
12 refund, and they have not. Knowing that they lack evidence to support their claim that
13 TU's seminars and mentorships were worthless[3] (or any other valuation between zero and
14 what was paid), Plaintiffs simply implore the Court to find that the TU real estate
15 seminars and mentorships were an illegal scam that failed to provide <u>any</u> instruction or
16 value regarding strategies and actions related to real estate investing. Plaintiffs want the
17 Court to equate TU's programs with fake artwork and supplements that have no intrinsic
18 value if the ingredients don't provide the benefits advertised. However, even the main
19 case relied on by Plaintiffs for this argument based its determination that the artwork had
20 no value on testimony by the government's **experts** who extrapolated the value of what
21 defendant have sold. *See United States v. Austin*, 54 F.2d 595, 606 (9th Cir. 1993).
22 Plaintiffs' Opposition concedes all they have are "lay witnesses." Opp. at 1.
23 ///
24

---

25 02724-LHK, 2014 WL 2191901 at *22 (N.D. Cal. Oct. 2, 2013), Plaintiff brings this
26 claim under RICO, which provides for statutory trebled damages, attorney's fees, and
   cost of suit, 18 U.S.C. § 1964(c).").
27 [3] Plaintiffs and other class members have admitted that the TU programs had some value,
28 if not great value. *See* Dkt. No. 380-1 at 6-9 & 11-13.

-2-　　　　　　　　　　Case No. 10-cv-00940 GPC (WVG)

All of the other cases cited by Plaintiffs on this issue are distinguishable and inapplicable. *See Rikos, Ortega, Steroid Hormone, Allen* and *Hahn* at Opp. 20-22.  First, *Rikos, Ortega, Steroid Hormone*, and *Allen* were all decisions at class certification (or review of class certification decisions) where, as here, the Court allowed the full refund model to survive <u>at certification</u>; not a determination on summary judgment as to whether Plaintiffs had proven with admissible evidence that they could satisfy the damages model. Second, all of these cases involved products in which the only value was the single benefit represented: OTC probiotic supplement alleged to benefit digestive health (*Rikos*), sexual virility supplement (*Ortega*), bodybuilding supplement containing controlled steroid (*Steroid Hormone*), homeopathic remedies with insufficient amount of active ingredients (*Allen*); and forfeited pre-paid massages (*Hahn*). None of these cases are similar to the TU seminars and mentorships at issue. The seminars and mentorships happened; TU's programs were not illusory or non-existent. Plaintiffs have not proved that the seminars/mentorship had no other intrinsic value or did not provide real estate investing education, even if the seminars/mentorships were not presented by an "accredited" university, by instructors not selected by Mr. Trump, or that did not provide support from the NYC office and in-person mentorship as represented so as to justify application of the full refund model. Absent proof that TU's programs had no intrinsic value a full refund cannot be allowed without creating an improper windfall for Plaintiffs.

Moreover, Plaintiffs now insist that TU could not have provided any value unless students emerged from the programs with a degree, real estate license or credits (Opp. at 21)—none of which were ever promised by TU and none of which are at issue in this case. Even if a full refund model were allowed, Plaintiffs have still failed to come forward with evidence that none of TU's seminars or mentorships had any value at all to justify a full refund.

Plaintiffs also argue that a full refund is appropriate because TU was offering an unlawful service. However, there is nothing inherently unlawful about providing real

///

estate investment seminars, training, and mentorships.[4] Moreover, there is nothing inherently unlawful about selling these programs by introducing people to them at a free event and then offering additional instructional opportunities for additional cost to those that attend the initial 3-day workshops and wanted additional training. And even if TU ran afoul of New York's licensing regulations, that is not prima facie evidence of a deceptive business practice. *People of the State of N.Y. v. Trump Entrepreneur Initiative LLC*, 2014 N.Y. Misc. LEXIS 4533 at *21 (N.Y. Sup. Ct., Oct. 8, 2014). Plaintiffs have presented no evidence that either California or Florida have similar licensing requirements or restrictions on the use of the term "university" to allow for any argument that TU's operation in those states was inherently unlawful to justify a full refund.

Finally, it is Plaintiffs' burden to prove their entitlement to restitution and/or damages and to prove the amount of restitution and/or damages that should be awarded. *Colgan*, 135 Cal. App. 4th at 698-700. It is not TU's burden to advise Plaintiffs how to prove their damages case or to inform Plaintiffs they need a damages expert to prove their case. Plaintiffs' argument that Defendants agreed that no experts were necessary is a red herring; Defendants simply did not alert Plaintiffs to this defect. It is not a "gotcha" argument for TU to now point out the evidentiary failure of Plaintiffs, when Plaintiffs carry the evidentiary burden. Plaintiffs were free to litigate this case as they saw fit. Also, TU does not contest that the fact finder is able to do basic math; however, TU does contend that determining the value of TU's programs and mentorship to even allow for a basic mathematic calculation requires the specialized knowledge, skill or education that a lay-person could not provide. Absent an expert to provide such an evaluation, there is no evidentiary basis for the fact-finder to make a determination on restitution and/or damages. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) ("[S]ummary judgment is appropriate where appellants have no expert witness or

---

[4] This is contrary to the *Steroid Hormone* case cited by Plaintiffs in which defendants were selling a controlled substance that was by definition illegal to possess without a prescription. 181 Cal. App. 4th 145 (2010).

designated documents providing competent evidence from which a jury could fairly estimate damages."). This failing entitles TU to summary judgment on all of the causes of action asserted in the TAC and is fatal to the Classes' claims.

## III. ADDITIONAL SUBCLASS SPECIFIC ISSUES THAT ENTITLE TU TO SUMMARY JUDGMENT

### A. The California Classes

#### 1. Plaintiffs Improperly Import New York Law Under The UCL

Without citing any authority for the proposition that the law of a foreign jurisdiction, here New York, can be imported to support a claim under the "unlawful" prong of the UCL, Plaintiffs do just that.[5] Plaintiffs urge the Court to find that New York's Education Law should be imported under the UCL when Plaintiffs have identified no such California law which similarly regulates the use of "university" or would have required TU be licensed in California. Absent a showing by Plaintiffs that California similarly regulates the use of "university," Plaintiffs' argument that a licensing violation in New York supports this claim under California law (or any claim under Florida law when Plaintiffs have identified no similar statute in Florida) lacks merit. The UCL may have a broad reach, but cannot regulate conduct that the federal government or California has not deemed unlawful.

#### 2. No Injunctive Relief Under The UCL, FAL, or CLRA

The California Plaintiffs are not entitled to injunctive relief because they lack Article III standing to pursue such relief under the UCL, FAL, and CLRA because they have not proven a definitive likelihood of further purchases from Defendants. *See Perez v. Nidek Co.* 711 F.3d 1109, 1114 (9th Cir. 2013); *see also Campion v. Old Republic*

---

[5] None of the cases cited by Plaintiffs in their Opposition at page 26 found that a foreign state's law that was in potential conflict with California law could be the basis for a UCL "unlawful" prong claim. Instead, *McKell*, *Saunders*, and *People ex rel. Bill Lockyer* all involved violation of either federal law or other California laws. TU does not contest that federal laws, other California laws, or local laws can support a claim under the "unlawful" prong.

*Home Prot. Co.*, 861 F. Supp. 2d 1139, 1149-50 (S.D. Cal. 2012) (J. Adler) ("Article III imposes a jurisdictional requirement that is more stringent than the UCL"); *Laster v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 116228, at 8-10 (S.D. Cal. Dec. 14, 2009) (J. Sabraw) (no Article III standing UCL injunctive relief claim when plaintiff's knowledge precluded showing of likelihood of future injury); *Dietz v. Comcast Corp.*, 2006 U.S. Dist. LEXIS 94333, at 9-11 (N.D. Cal. Dec. 21, 2006) (plaintiff who failed to show a definitive likelihood of future injury lacked Article III standing for UCL injunction in federal court). Plaintiffs have no standing because they are not realistically threatened with a repetition of any violation. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). Defendants' intentions regarding TU are irrelevant to Article III standing analysis in light of the lack of evidence that Plaintiffs are threatened with future harm.[6]

### 3. The California Elder Abuse Claim Fails

Low has failed to prove damages due to the lack of evidence of the value of services received versus what he paid for TU seminars and mentorship. The financial elder abuse claim against TU fails.

### B. **The Florida Classes' Damages Claims Suffer The Same Evidentiary Failings**

Everett does not contest that the proper measure of damages under FDUPTA or MAL is "the difference in market value of the product or service in the condition it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985).[7] Rather she, like the other Plaintiffs, simply argues

---

[6] Plaintiffs conflate standing to assert a UCL claim with Article III standing to seek injunctive relief in federal court.

[7] The only Florida authority cited on this issue by Plaintiffs is *Tri-County Plumbing Servs. v. Brown,* 921 So. 2d 20, 22 (Fla. 3d DCA 2006) which merely states an exception to this controlling rule for calculating damages when the product provided is completely worthless. *Id.* at 21. In *Tri-County*, the court upheld a damages award of the full amount paid for a plumber's services, when the plumber abandoned the job leaving plaintiff with

1 without evidentiary support that TU seminars and mentorships (which she refused to
2 participate in) were valueless and therefore she and the Florida Class are entitled to a
3 complete refund. As discussed in detail in TU's opening brief and above, there is no
4 entitlement to a full refund.

      C.    **The New York Class**

Brown's claim is just the type of false advertising claim that falls within the holdings of *Dash v. Seagate Tech* and *Small v. Lorillard Tobacco*, which bar claims for full refunds when "consumer may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying." *Dash v. Seagate Tech (US) Holdings, Inc.*, 27 F. Supp. 3d 357, 361-62 (E.D.N.Y. June 30, 2014). *Small* does not bar Brown from seeking the difference in value between what he received and what he paid for TU, but like the other Plaintiffs, Brown has no admissible evidence of value to support that result.

The cases cited by Plaintiffs do not compel a contrary result. In *Matter of People v. Applied Card Sys., Inc.*, 41 A.D.3d 4 (N.Y. App. 2007), the court merely upheld on appeal an award of restitution for the entire amount paid based on the discretion of the court and <u>the existence of sufficient evidence</u> of the *di minimis* value of the product received. Here there is no such evidence that TU's seminars and mentorship had no value. *People v. Telehublink Corp*, 301 A.D.2d 1006 (N.Y. App. 2003) is also not persuasive because in that case consumers paid for a credit card, but did not receive any credit card at all. Brown cannot state a full refund claim on behalf of himself or the Class and failed to provide any evidence to prove the entitlement or amount of any differential in value between the TU's seminars as promised and as allegedly delivered.

///

///

---

no water, holes in the walls and a trench around her house. *Id.* When plaintiff hired the plumber to fix her water and he did not, the court found the services valueless.

## IV. THE CASE SHOULD NOT CONTINUE TO TRIAL IF SUMMARY JUDGMENT IS GRANTED

Contrary to Plaintiffs' argument, once summary judgment is granted as to the Plaintiffs' claims against TU, those claims will also be extinguished as to the Classes. TU's arguments are not just directed to the class representatives' claims, but are applicable to the Classes as a whole. None of the cases cited by Plaintiffs allow a class action to continue with new plaintiffs when a summary judgment ruling in favor of defendants defeats the claims of the entire class.[8] The failure of the full refund model and the failure to present admissible evidence of restitution or damages is fatal to the Classes as well. Even if the Court allowed substitution of plaintiffs, which it should not, fact and expert discovery is now closed and good cause does not exist to reopen it. Plaintiffs did not move to reopen discovery before the dispositive motion cutoff even after they had Defendants' motions for summary judgment in hand before the cut-off date . The Court should not reward Plaintiffs a do-over for making strategic decisions to litigate the case in the manner they have which would now prejudice TU if permitted.

///

---

[8] In *Fed'n of the Blind*, when ruling on class certification and a motion for summary judgment simultaneously the court, without detailed analysis, allowed substitution of a plaintiff on a single ADA claim, when the proposed class representative was still a valid representative on other claims and other potential representatives existed who did not have the same defect as the proposed ADA representatives. 582 F. Supp. 2d 1185 (N.D. Cal. 2007). In *McAnaney*, the court allowed substitution of a representative plaintiff whose claim was barred by the statute of limitations because others had timely claims and the ruling on defendants' summary judgment motion did not moot the suit or make a merits determination that undermined the potential class members where were within the statute of limitations. 2007 U.S. Dist. LEXIS 67552 (E.D.N.Y Sept. 12, 2007). Finally, *Edwards*, is not persuasive because it contains no analysis relating to why a state court, before removal, allowed substitution of plaintiffs after granting defendant's MSJ. 2009 U.S. Dist. LEXIS 61996 (C.D. Cal. July 2, 2009).

V. **RULING ON THIS MOTION MUST BE DELAYED**[9]

Plaintiffs have created a procedural conundrum for the Court and prejudiced Defendants by waiting almost a year after class certification was granted to seek approval for notice to the putative class. To avoid running afoul of the "one-way intervention rule"[10] the Court must defer ruling on Defendants' summary judgment motions until after the Plaintiffs' proposed class notice is approved, sent, and the period for opt-outs has expired or the need for notice is mooted by a ruling granting decertification. A ruling on the motion before the opt-out period expires would severely prejudice Defendants by allowing the absent class members to await a ruling on the summary judgment motions and then remain in the Class or opt-out in the manner most favorable to their interests. This is not a situation of Defendants' making; Defendants were required to file their summary judgment motions by the dispositive motion cutoff date previously ordered by the Court. Plaintiffs did not move the Court for class notice until the day of the dispositive motion deadline. Dkt. No. 381. Allowing Plaintiffs' lack of diligence in providing timely class notice to create a violation of the "one-way intervention rule" should not be allowed. Therefore, the Court should delay ruling on both of Defendants' motions for summary judgment until after class notice has been sent and the opt-out period has passed so that the rulings (whatever they may be) are binding on the Class. *See*

---

[9] Defendants intend to brief this issue in more detail for the Court prior to the hearing on Defendants' Motions for Summary Judgment.

[10] "[D]istrict courts generally do not grant summary judgment on the merits of a class action until the class has been properly certified and notified. *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir 1995). This is to prevent the intervention of a plaintiff in a class action after an adjudication favoring the class had taken place. Such intervention is termed 'one way' because the plaintiff would not otherwise be bound by an adjudication in favor of the defendant. *Id* (citation omitted). One-way intervention is unfair to the defendant because it places a putative class member in a no-lose position by knowing the outcome as to liability before deciding to opt in or out of the class." *Gessele v. Jack in the Box, Inc.*, 2012 U.S. Dist. LEXIS 120377 at *6-7 (D. Or. Aug. 24, 2012) (internal quotations omitted).

4824-3810-7682.4

*Corns v. Laborers Int'l Union of N. Am.*, 2014 U.S. Dist. LEXIS 44997, 13-14 (N.D. Cal. Mar. 31, 2014).[11]

## VI. CONCLUSION

For all of the foregoing reason and for the reason presented in TU's opening brief, TU respectfully requests that the Court grant its Motion for Summary Judgment as to all of the remaining claims in this case.

DATED:  March 13, 2015

**FOLEY & LARDNER LLP**
NANCY L. STAGG
BENJAMIN J. MORRIS

By: *s/ Nancy L. Stagg*
NANCY L. STAGG
Attorneys for Defendants Trump University, LLC and Donald J. Trump
nstagg@foley.com

---

[11] S*ee also Brown v. Hain Celestial Group, Inc.*, 2014 U.S. Dist. LEXIS 161036 at *22 (N.D. Cal. Nov. 18, 2014) (Court suspended ruling on plaintiffs' summary judgment motion until after class certification and notice to ensure that benefits and burdens of a favorable or unfavorable merits ruling would be borne by both parties and not promote one-way intervention); *Gomez v. Rossi Concrete, Inc.*, 2011 U.S. Dist. LEXIS 15852 at *5 (S.D. Cal. Feb. 16, 2011) (Court granted defendants' application to take plaintiffs' motion for summary judgment off calendar until after class certification issues were resolved and notice had been given to avoid the problem of one-way intervention); *In re Diamond Multimedia Sys., Sec. Litig.*, 1997 U.S. Dist. LEXIS 21558 at*6 (N.D. Cal. Oct. 14, 1997) (Court delayed ruling on defendants' motion to dismiss until after plaintiffs had sought class certification and notice had been given to avoid prejudice and unfairness to defendants presented by plaintiffs' failure to seek certification).

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 13, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*s/ Nancy L. Stagg*
Nancy L. Stagg