1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Herself and All Others Similarly Situated,<br><br>                                    Plaintiffs,<br><br>        vs.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>                                    Defendants. | Case No. 10cv0940 GPC (WVG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTER DEFENDANT TARLA MAKAEFF'S REQUEST FOR FEES AND COSTS**<br><br>[Dkt. No. 331.] |
| TRUMP UNIVERSITY, LLC,<br><br>                                    Counterclaimant,<br><br>        vs.<br><br>TARLA MAKAEFF, and DOES 1 through 10, inclusive,<br><br>                                    Counter Defendant. | |

## INTRODUCTION

Before the Court is Plaintiff/Counter Defendant Tarla Makaeff's ("Makaeff") Bill of Fees and Costs pursuant to California Code of Civil Procedure § 425.16, commonly known as California's Anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute. (Dkt. No. 331.) Defendant/Counterclaimant Trump

University, LLC ("Trump University") has opposed.  (Dkt. No. 335.)  Pursuant to this Court's order, the Parties also submitted supplemental briefing.  (Dkt. Nos. 358, 364, 367.)  For the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Makaeff's request for fees and costs.  The Court **AWARDS** Makaeff fees in the amount of **$790,083.40**, and costs in the amount of **$8,695.81**.

### BACKGROUND

Beginning in August 2008, Makaeff attended Trump University's real estate programs.   (Dkt. No. 1 ¶ 10.)  On April 30, 2010, Makaeff brought a class action lawsuit against Trump University accusing it of, among other things, deceptive business practices.  (Dkt. No. 1.)  On May 26, 2010, Trump University filed a defamation counterclaim against Makaeff. (Dkt. No. 4.)

On June 30, 2010, Makaeff filed a special motion to strike Trump University's defamation counterclaim under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  (Dkt. No. 14.)

On August 23, 2010, Judge Irma E. Gonzalez denied Makaeff's anti-SLAPP motion.  (Dkt. No. 24.)  Makaeff's subsequent motion for reconsideration was denied on September 20, 2010. (Dkt. No. 40.)

On January 3, 2011, Makaeff appealed the denial of her anti-SLAPP motion to the Ninth Circuit (Dkt. No. 43), which reversed and remanded on April 17, 2013.[1] *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 271 (9th Cir. 2013).  In addition, the Ninth Circuit granted Makaeff's unopposed request that the issue of appellate attorney's fees be transferred to the district court.  (Dkt. No. 284.)  On June 16, 2014, this Court granted Makaeff's anti-SLAPP motion to strike Trump University's defamation counterclaim.  (Dkt. No. 328.)

On July 3, 2014, pursuant to this Court's direction, Makaeff filed a Bill of Fees and Costs to substantiate the amount of reasonable attorney's fees and costs associated

---

[1] In the interim, the case was transferred to the undersigned judge.  (Dkt. No. 190.)

1   with bringing the anti-SLAPP motion, related appeal, and supplemental briefing. (*Id.*

2   at 18-19; Dkt. No. 331.)[2]  Trump University filed an opposition on July 18, 2014. (Dkt.

3   No. 335.)  On July 22, 2014, Makaeff filed a "Notice of Deficiency and Intended Non-

4   Response Absent Court Request."  (Dkt. No. 336.)

5          On November 18, 2014, this Court ordered Makaeff to submit "additional

6   briefing detailing the amount of time each attorney spent on each task" and further

7   "substantiating the costs requested."  (Dkt. No. 358.)  Makaeff filed her supplemental

8   briefing on December 15, 2014, and Trump University filed its supplemental

9   opposition on December 23, 2014.[3]  (Dkt. Nos. 364, 367.)  On January 7, 2015,

10  Makaeff filed an *ex parte* application for leave to file a limited response.[4]  (Dkt. No.

11  368.)

12                              **LEGAL STANDARD**

13         Under California's anti-SLAPP statute, "a prevailing defendant on a special

14  motion to strike *shall* be entitled to recover his or her attorney's fees and costs."

15  Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added); *see also Ketchum v. Moses*, 17

16  P.3d 735, 741 (Cal. 2001) ("[A]ny SLAPP defendant who brings a successful motion

17  to strike is entitled to mandatory attorney fees.").

18         To determine a reasonable attorney's fee award for an anti-SLAPP motion, the

19  California Supreme Court has found that "the lodestar adjustment approach should be

20  applied."  *Ketchum*, 17 P.3d at 744.  For the lodestar approach, the Court begins by

21  "multiplying the number of hours reasonably spent on the litigation by a reasonable

22  hourly rate."  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citing

23  *Hensley v. Eckerhart*, 461 U.S. 424, 433(1983)).

24  _____

25         [2]Page number citations such as this one are to the page numbers reflected on the
    Court's CM/ECF system and not to page numbers assigned by the parties.
26
         [3]On December 16, 2014, the Court granted Makaeff's motion to quash Trump
27  University's subpoenas of Plaintiffs' counsels' time records, and denied Trump
    University's motion to compel the production of documents.  (Dkt. No. 366.)
28
         [4]The Court **GRANTS** Makaeff's unopposed *ex parte* application.

1   An award of fees and costs in an anti-SLAPP case must be reasonable, and courts

2   have broad discretion in determining what is reasonable.  *See Metabolife Int'l, Inc. v.*

3   *Wornick*, 213 F. Supp. 2d 1220,1222 (S.D. Cal. 2002).

## DISCUSSION

5   In the instant case, Makaeff requests an award of attorney's fees in the amount

6   of $1,333,004.25, based on 2,226.35 hours incurred in the process of strategizing,

7   researching and briefing the anti-SLAPP motion, subsequent successful appeal and

8   opposing Trump University's petition for rehearing en banc, discovery, supplemental

9   briefing, and the fee brief.  (Dkt. No. 331 at 16, 18; Dkt. No. 331 (Jensen Decl.) ¶ 58;

10  Dkt. No. 331-2 (Eck Decl.) ¶ 55; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 2; Dkt. No.

11  364-2 (Eck Supp. Decl.) ¶ 2.)  Additionally, Makaeff requests costs in the amount of

12  $9,209.27.  (Dkt. No. 331 at 18; Dkt. No. 331 (Jensen Decl.) ¶ 59; Dkt. No. 331-2 (Eck

13  Decl.) ¶ 57; Dkt. No. 364 at 19 n.11; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶¶ 2, 31 n.1;

14  Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 33.)  Trump University counters that the Court

15  should deny Makaeff's fee request entirely, or substantially reduce the fees to no more

16  than $147,675.00, and deny all costs.  (Dkt. No. 335 at 27; Dkt. No. 367 at 27.)

17  **I.      Evidentiary Objections and Motions to Strike**

18  As a preliminary matter, the Court considers Trump University's evidentiary

19  objections and motions to strike.  Trump University objects to the majority of the two

20  supplemental declarations of Makaeff's counsel, Rachel L. Jensen and Amber L. Eck,

21  on the ground that they contain inadmissible hearsay.  (Dkt. Nos. 367-3, 367-4.)

22  Specifically, Trump University contends that the portions of the two supplemental

23  declarations regarding the time spent by other attorneys and paralegals – who did not

24  submit their own declarations – are inadmissible hearsay because the two declarants

25  do not purport to have personally observed the amount of time spent by these other

26  individuals.

27  Trump University relies on the Ninth Circuit's recent decision in *Muniz v. United*

28  *Parcel Serv., Inc.*, 738 F.3d 214, 222-23 (9th Cir. 2013), which held that an attorney's

declaration regarding his paralegal's hours was inadmissible hearsay.  In *Muniz*, the declaring attorney averred that he watched the paralegal reconstruct her hours and the spreadsheet he attached to his declaration showed her hours.  *Id.*  The Ninth Circuit held that the attorney's declaration stating the number of hours worked by the paralegal was inadmissible hearsay because it merely repeated the paralegal's out of court statements concerning the hours she had worked.  *Id.* at 223.  Therefore, the Ninth Circuit vacated in part and remanded to the district court "to determine, in the first instance, whether any hearsay exception applies to [the attorney's] declaration regarding fees for paralegal work in this case." *Id.* at 227.

Trump University argues that here, similar to *Muniz*, the two supplemental declarations regarding the time spent and tasks performed by other individuals are inadmissible hearsay because they are "undoubtedly based on out of court statements or [the declarant's] own opinion" and are not based on "personal knowledge or observation." (Dkt. No. 367-3 at 3; Dkt. No. 367-4 at 3.)  *See also Knickerbocker v. Corinthian Colls.*, No. 12-cv-1142-JLR, 2014 WL 3927227, at *3 n.2 (W.D. Wash. Aug. 12, 2014) (attorney's declaration of another attorney's hours worked was inadmissible hearsay based on *Muniz*); *Kranson v. Fed. Express Corp.*, No. 11-cv-5826-YGR, 2013 WL 6503308, at *5 (N.D. Cal. Dec. 11, 2013) (attorney's declaration of paralegal's hours worked was inadmissible hearsay based on *Muniz*).

Makaeff counters that *Muniz* is distinguishable because the initial and supplemental declarations of Makaeff's counsel, Ms. Jensen and Ms. Eck, regarding other individuals are based on their personal knowledge working on the matters, overseeing the work of others, and their personal review of their respective law firms' business records. (Dkt. No. 368-1 at 5-6.)  *See Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1275 n.2 (N.D. Cal. 2014) ("[P]ersonal knowledge can come from the review of the contents of business records and an affiant may testify to acts that she did not personally observe but which have been described in business records." (citing *Aniel v. GMAC Mortg., LLC*, No. 12-cv-4201-SBA, 2012 WL 5373388, *6 (N.D. Cal. Oct.

1   30, 2012))).  Both Ms. Jensen and Ms. Eck declare that they personally reviewed their

2   firm's time and expense records maintained in the ordinary course of business.  (Dkt.

3   No. 331-1 (Jensen Decl.) ¶¶ 43, 54-55, 61; Dkt. No. 331-2 (Eck Decl.) ¶ 53; Dkt. No.

4   364-1 (Jensen Supp. Decl.)  ¶ 4).

5          The Court agrees with Makaeff that the portions of the two supplemental

6   declarations regarding the time spent by other attorneys and paralegals are not

7   inadmissible hearsay because they are based on Ms. Jensen's and Ms. Eck's personal

8   knowledge, including their overseeing of the work of others and their personal review

9   of business records.  *See Banga*, 29 F. Supp. 3d at 1275 n.2; *see also* Fed. R. Evid.

10  803(6) (outlining business records exception to hearsay rule).

11         Trump University also argues that the supplemental declarations disregard the

12  best evidence rule by describing the contents of writings (i.e., time and expense

13  records) not submitted into evidence.  (Dkt. No. 367-3 at 3; Dkt. No. 367-4 at 3)  *See*

14  Fed. R. Evid. 1002.  However, under California law, "an award of attorney fees may

15  be based on counsel's declarations, without production of detailed time records."

16  *Raining Data Corp. v. Barrenechea*, 97 Cal. Rptr. 3d 196, 205 (Ct. App. 2009).

17         Accordingly, the Court **DENIES** Trump University's evidentiary objections to

18  and motion to strike portions of the supplemental declarations of Ms. Jensen and Ms.

19  Eck on the grounds of hearsay and best evidence, as well as lack of foundation, lack

20  of personal knowledge, and improper opinion.[5]

21  **II.     Reasonable Attorney's Fees**

22         To determine a reasonable attorney's fee award under the lodestar approach, the

23  Court first considers whether Makaeff's counsel's hourly rates and number of hours

24

25

26         [5] Trump University also filed evidentiary objections to the original Declarations
   of Rachel L. Jensen, Amber L. Eck, Carol A. Sobel, Eric Alan Issacson, and Karl Olson
27  in support of Makaeff's Bill of Fees and Costs. (Dkt. Nos. 335-2, 335-3, 335-4, 335-5
   and 335-6.)  Makaeff argues that the objections are "not well-taken." (Dkt. No. 336 at
28  n.1.)  The Court notes the objections.  To the extent that the evidence is proper under
   the Federal Rules of Evidence, the Court considered the evidence.  To the extent the
   evidence is not proper, the Court did not consider it.

expended are both reasonable.  The Court then considers Makaeff's request for an upward multiplier.

### A.    Reasonable Hourly Rates

To determine the reasonable hourly rate, the Court looks to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal quotation marks and citation omitted).  In this case, the relevant community is the Southern District of California because it is "the forum in which the district court sits." *Id.*  The burden is on the party requesting attorney's fees to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Evidence that the Court should consider includes "[a]ffidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Makaeff's counsel seek attorney hourly rates ranging from $250 to $440 for associates, and $600 to $825 for partners. (Dkt. No. 331-1 (Jensen Decl.) ¶ 58; Dkt. No. 331-2 (Eck Decl.) ¶ 55.)  Makaeff's counsel argues that its rates are reasonable because the two law firms have extensive class action experience, and their hourly rates are comparable to those that have been previously approved by this Court and in this District in class action settlements. (Dkt. No. 331 at 14-15; Dkt. No. 331-1 (Jensen Decl., Ex. 4-7); Dkt. No. 331-2 (Eck Decl., Ex. 3-4.)  Makaeff's counsel also points to the National Law Journal's annual large law firm rate survey, which does not list any San Diego law firms for 2013, and lists only one San Diego law firm, Luce Forward Hamilton & Scripps LLC ("Luce Forward"), for 2007, who at that time charged

1   associate rates of $220 to $450 per hour, and partner rates of $325 to $725 per hour.

2   (Dkt. No. 331 at 14; Dkt. No. 331-1 (Jensen Decl., Ex. 3) at 120.)  Makaeff's counsel

3   contends its rates are within this range, given that the survey rates are from seven years

4   ago. (Dkt. No. 331 at 14.)  Further, Makaeff's counsel argues that even if their rates

5   are above average for the Southern District, it is justified by their credentials, track

6   record and the contingent nature of the litigation. (*Id.* at 14-15.)

7        Trump University argues that Makaeff's counsel's rates are unreasonable and

8   should be reduced to a blended rate of $300 per hour. (Dkt. No. 335 at 18-21.)  Trump

9   University points to Makaeff's own submission of a "Real Rate Report Snapshot,"

10  which lists for 2012: (1) San Diego average hourly rates of $278.30 for associates, and

11  $443.69 for partners; (2) law firms of 101-250 attorneys average hourly rates of

12  $277.81 for associates, and $422.35 for partners; (3) San Diego partner average hourly

13  rates of $483.88 for fewer than 21 years experience; (4) San Diego associate average

14  hourly rates of $318.52 for three to fewer than seven years experience; and (5) San

15  Diego litigation average hourly rates of $197.88 for associates, and $279.03 for

16  partners.  (Dkt. No. 331-4 (Olson Decl., Ex. A) at 27, 29, 33, 37, 62.)  Trump

17  University also notes that Makaeff's own expert declares that her counsel's rates

18  "appear to be higher than the average billing rates in San Diego." (*Id.* ¶ 14.)  In

19  addition, Trump University argues that Makaeff's counsel's rates should be reduced

20  because her counsel admits that they had no experience with anti-SLAPP motions, and

21  because they were improperly staffed with too many partners working on a simple

22  motion. (Dkt. No. 335 at 19.)  Trump University further relies on other cases in this

23  District awarding attorney's fees for anti-SLAPP motions which used lower hourly

24  rates. (*Id.* at 19-20.)  *See, e.g.*, *Ravet v. Stern*, No. 07-cv-31-JLS (CAB), 2010 WL

25  3076290, at *5 (S.D. Cal. Aug. 6, 2010) (finding $350 hourly rate reasonable for anti-

26  SLAPP motion based on attorney declarations, "the complex and lengthy nature of this

27  case, and the Court's familiarity of the rates charged in the San Diego community").

28

The Court determines that Makaeff has produced satisfactory evidence that the hourly rates for its associates and partners are reasonable.   The hourly rates are consistent with Luce Forward's 2007 rates in the National Law Journal survey, with those previously approved by this Court and in this District in class action settlements, and with this Court's familiarity of the rates charged in the San Diego community. Trump University's reliance on the average rates in the Real Rate Report Snapshot survey and other anti-SLAPP motion cases are misplaced given the complex and lengthy nature of the anti-SLAPP motion in the instant case.   Makaeff has also provided the declaration of an attorney with extensive experience with anti-SLAPP motions who opines that "the experience, credentials, and effectiveness of Makaeff's counsel in this case justify above-average billing rates." (Dkt. No. 331-4 (Olson Decl.) ¶ 14.)  As such, the Court finds that the associate and partner rates charged by Makaeff are reasonable.

However, the Court determines that Makaeff has failed to produce satisfactory evidence to support its requested rates for staff attorneys and paralegals.  Makaeff seeks hourly rates of $350 for "staff attorneys" and ranging from $250 to $295 for paralegals. (Dkt. No. 331-1 (Jensen Decl.) ¶ 58; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 2.)[6]  Makaeff has not provided sufficient evidence of the prevailing market rates for staff attorneys and paralegals in this District.  The only supporting evidence the Court located in the Makaeff's filings regarding prevailing rates in this District was that in prior class action settlements (which used the common fund approach rather than the lodestar approach), Makaeff's counsel submitted hourly rates of $380 for a "project attorney" and $280 for a "paralegal / law clerk" in one action, and $175 for a paralegal in two other actions. (Dkt. No. 331-1 (Jensen Decl. Ex. 7) at 211 ¶ 54; Dkt. No. 331-2 (Eck Decl. Ex. 3-4) at 46 ¶ 3, 60 ¶ 6.)   There is also some evidence regarding national rates for staff attorneys and paralegals, but it is Makaeff's burden to show prevailing rates in this

---

[6]The Court notes that Ms. Eck's initial declaration omitted the $125 in paralegal fees.  (Dkt. No. 331-2 (Eck. Decl.) ¶ 55.)

1   District.  (Dkt. No. 331-1 (Jensen Decl. Ex. 2) at 98, 100; Dkt. No. 331-4 (Olson Decl.
2   Ex. A) at 22.)

3        In addition, Makaeff has not provided any evidence as to the background and
4   experience of the staff attorneys or paralegals, which might allow the Court to conduct
5   an independent review to determine the prevailing rate.  For example, in *Brighton*
6   *Collectibles, Inc. v. Coldwater Creek Inc.*, No. 06-cv-1848-H (POR), 2009 WL 160235,
7   at * 4 (S.D. Cal. Jan. 20, 2009), the court concluded that $90 to $210 per hour was
8   reasonable for paralegal work.  However, $90 to $210 per hour is a wide range
9   depending on the education, skill and experience of the particular paralegal.  Here,
10  Makaeff offers no information or documentation justifying the rates for the staff
11  attorneys and paralegals, such as a curriculum vitae, resume, or description of the
12  individual's educational background or litigation experience.  For instance, for the staff
13  attorneys, there is no indication whether they are admitted to practice law in California,
14  and if so when.  In the absence of any evidence as to the background and experience
15  of the staff attorneys and paralegals, the Court is unable to determine the prevailing
16  rate.

17       Therefore, because Makaeff has failed to carry her burden to demonstrate that
18  the staff attorney and paralegal hourly rates are reasonable, the Court **DENIES**
19  Makaeff's request for staff attorney and paralegal fees.  *See Zest IP Holdings, LLC v.*
20  *Implant Direct Mfg., LLC*, No. 10-cv-541-GPC (WVG), 2014 WL 6851612, at *6 (S.D.
21  Cal. Dec. 3, 2014) (denying paralegal fees because insufficient facts were presented as
22  to the paralegal hourly rate); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No.
23  10-cv-419-GPC (WVG), 2014 WL 5438532, at *5 (S.D. Cal. Oct. 24, 2014) (same);
24  *J & J Sports Prods., Inc. v. Ortiz*, No. 12-cv-05766-LHK, 2014 WL 1266267, at *3-4
25  (N.D. Cal. Mar.24, 2014) (denying attorney's fees, including for "research attorney,"
26  because plaintiff failed to provide evidence of prevailing market rates or attorneys'
27  experience).

28

In sum, the Court concludes that Makaeff has shown that the hourly rates for associates and partners are reasonable, but has not shown that the staff attorney and paralegal hourly rates are reasonable.  Accordingly, the Court **EXCLUDES** the staff attorney total fees of **$121,047.50** and the paralegal total fees of **$90,542.50**.  (Dkt. No. 331-1 (Jensen Decl.) ¶ 58; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 2.)

### B.   Reasonable Hours Expended

The party seeking fees bears the "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 649 (Ct. App. 2001) (internal quotation marks and citation omitted).  Although "it is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method," *Concepcion v. Amscan Holdings, Inc.*, 168 Cal. Rptr. 3d 40, 53 (Ct. App. 2014), the "evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor*, 81 Cal. Rptr. 3d 866, 870 (Ct. App. 2008).  To that end the Court may require a prevailing party to produce records sufficient to provide "a proper basis for determining how much time was spent on particular claims." *ComputerXpress, Inc.*, 113 Cal. Rptr. 2d at 649 (internal quotation marks and citation omitted).  The Court should exclude hours "'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434).

The Court previously determined that the declarations submitted by Makaeff failed to provide enough information to ascertain if the hours expended on this case were reasonable because Makaeff's attorneys provided only a summary chart showing the total amount of hours each individual spent on the anti-SLAPP litigation, and provided no showing of the specific tasks and the time spent on each task.  (Dkt. No 331-1 (Jensen Decl.) ¶ 58; Dkt. No. 331-2 (Eck. Decl.). ¶ 55; Dkt. No. 358.)  As such,

the Court ordered Makaeff to submit "additional briefing detailing the amount of time each attorney spent on each task." (Dkt. No. 358 at 6.)

In response, Makaeff has provided supplemental declarations for Ms. Jensen and Ms. Eck which divide the hours spent on the anti-SLAPP litigation into twenty-five procedural categories (e.g., initial anti-SLAPP motion before the district court, district court reply brief, etc.). (Dkt. No. 364-1 (Jensen Supp. Decl.); Dkt. No. 364-2 (Eck Supp. Decl.).) Trump University argues that these supplemental declarations still fail to provide sufficient information, and that the hours sought by Makaeff are unreasonable, and should be denied or substantially reduced, for three main reasons: (1) "lumped" descriptions of tasks; (2) duplicative hours; and (3) improper staffing. (Dkt. No. 367.) The Court considers each of Makaeff's twenty-five procedural categories, and Trump University's arguments, to determine whether the expended hours are reasonable.

### 1. Initial Anti-SLAPP Motion Before the District Court

Makaeff's counsel states that the following amount of time was spent on the initial anti-SLAPP motion by the various attorneys:[7]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen | RGRD[8] | Partner | $660 | 39.75 | $26,235.00 |
| Paula Roach | RGRD | Associate | $360 | 43.75 | $15,750.00 |
| Amber Eck | ZHE | Partner | $690 | 30.50 | $21,045.00 |
| Helen Zeldes | ZHE | Partner | $600 | 2.50 | $1,500.00 |
| Aaron Olsen | ZHE | Associate | $410 | 9.25 | $5,550.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 5; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 4.)

---

[7]Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 84.25 staff attorney hours and 21.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 5.)

[8]"RGRD" refers to Ms. Jensen's firm, Robbins Geller Rudman & Dowd LLP. "ZHE" refers to Ms. Eck's firm, Zeldes Haeggquist & Eck, LLP.

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen "spent several hours on the phone with other practitioners and my co-counsel to formulate our strategy," "met with our team," and "reviewed the research memoranda, read key cases, . . . made substantial revisions to the motion, including drafting, and then . . . reviewed and revised the supporting draft declarations." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 5; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 15.) Ms. Roach "provid[ed] a first draft of the opening motion and the declarations." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 5; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 15.) Ms. Eck's "firm's" tasks involved "reviewing Trump University's counterclaim; conducting extensive legal research; conversations and emails with defense counsel . . . requesting (unsuccessfully) that Trump University provide copies of the letters it contended were defamatory; conducting factual research and having numerous conversations with Tarla Makaeff regarding ascertaining the allegedly defamatory documents; and assisting Tarla Makaeff in preparing a detailed declaration." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 4; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 18-22.)

Trump University argues that these hours should be reduced because the descriptions lump together the time spent on multiple tasks, preventing the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 11.) For example, there is no break down of how many hours Ms. Roach spent on providing a first draft of the motion versus the declarations. (*Id.*) Trump University also argues that the time is duplicative, with three partners, two associates, and one staff attorney working on the motion. (*Id.*)

The Court agrees with Trump University that Makaeff's lumping together of time, rather than breaking down time by tasks, makes it difficult to assess whether the time spent on each discrete task was reasonable. Overall, the time spent on the initial anti-SLAPP motion seems high. The lumping together of tasks makes it hard to evaluate whether all of the time spent was necessary. For example, it is impossible to

determine how much time was spent on legal research, and as a result whether such amount of time was reasonable.

Makaeff's lumping together of multiple tasks is similar to "block billing." *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) ("'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" (citation omitted)). Although "block billing" is "not objectionable per se," its use may obscure "the nature of some of the work claimed." *Christian Research Inst.*, 81 Cal. Rptr. 3d at 873-74. As such, courts have discretion to reduce blocked billed hours because it "makes it more difficult to determine how much time was spent on particular activities." *Welch*, 480 F.3d at 948 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); *see also Heritage Pac. Fin., LLC v. Monroy*, 156 Cal. Rptr. 3d 26, 55 (Ct. App. 2013) ("Trial courts retain discretion to penalize block billing when the practice prevents them from discerning which tasks are compensable and which are not."). When presented with block billing in a fee request, "the trial court should exercise its discretion in assigning a reasonable percentage to the entries or simply cast them aside." *Bell v. Vista Unified Sch. Dist.*, 98 Cal. Rptr. 2d 263, 275 (Ct. App. 2000). However, an across-the-board reduction on hours should not be applied to all requested hours and should instead be specific to counsel's block billed hours, and the district court should "'explain how or why . . . the reduction . . . fairly balance[s]' those hours that were actually billed in block format." *Welch*, 480 F.3d at 948 (citation omitted).

The Court determines that a 20 percent reduction is warranted for the hours spent on the initial anti-SLAPP motion because the lumping together of tasks makes it difficult to evaluate whether a reasonable amount of time was expended. In *Welch*, the Ninth Circuit approved of a 20 percent fee reduction for block billing because a

California State Bar Committee report concluded that block billing "may increase time by 10% to 30%" and 20 percent was in the "middle range." *Welch*, 480 F.3d at 948. Similarly here, the Court finds a 20 percent reduction warranted.[9]

The Court also excludes Ms. Zeldes's and Mr. Olsen's time because there is no clear indication what tasks they performed.

Accordingly, the Court **EXCLUDES $19,656.00** in fees for the initial anti-SLAPP motion.

### 2.      District Court Reply Brief

Makaeff's counsel states that the following amount of time was spent on the district court reply brief by the various attorneys:[10]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen | RGRD | Partner | $660 | 6.00 | $3,960.00 |
| Paula Roach | RGRD | Associate | $360 | 20.75 | $7,470.00 |
| Amber Eck | ZHE | Partner | $690 | 27.00 | $18,630.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 6; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 5.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed.  Ms. Jensen "reviewed and edited Makaeff's supplemental declaration drafted by co-counsel."  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 6; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 17.)  Ms. Roach "drafted the

---

[9] The Court notes that Makaeff has offered to provide additional information to the Court, including the underlying time entries and records.  (Dkt. No. 364 at 9 n.5; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 3; Dkt. No. 364-2 (Eck Supp. Decl. ¶ 35.) However, the Court has already generously provided Makaeff two opportunities to offer sufficient evidence.  Moreover, the burden of culling sufficient information from contemporaneous records properly rests with the fee applicant, not the Court.  *See In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1327 (C.D. Cal. 1977) ("The burden is clearly on counsel to file adequately-documented applications for fees and those who fail to meet that burden do so at their own risk.").  As such, the Court will not entertain Makaeff's offer to provide additional information.

[10] Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 43.25 staff attorney hours and 16.50 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 6.)

reply brief." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 6; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 17.)  Ms. Eck's tasks involved "reviewing Trump University's Opposition to our Anti-SLAPP motion; conducting extensive legal research regarding the issues involved; numerous conversations with Makaeff regarding relevant facts; review of documents relating to the Bank of America letter and Better Business Bureau ('BBB') letter that Trump University produced for the first time, attached to their opposition; and assisting Makaeff in preparing a detailed supplemental declaration." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 5; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 23-24.)

Trump University argues that these hours should be reduced because Ms. Eck has provided a lumped description of her numerous tasks, making it difficult to determine whether the hours spent were reasonable. (Dkt. No. 367 at 12.)  In addition, Trump University argues that there appears to be duplication of efforts because two partners worked on Makaeff's declaration, and Ms. Eck spent time "conducting extensive legal research" at the same time that a staff attorney was conducting legal research. (*Id.*)

The Court agrees with Trump University that Ms. Eck's hours should be reduced due to the lumping together of tasks, which makes it difficult for the Court to determine if the hours spent are reasonable.  As such, for the reasons discussed above, the Court applies a 20 percent reduction to Ms. Eck's hours.  *See Welch*, 480 F.3d at 948. However, the Court does not reduce Ms. Jensen's and Ms. Roach's hours.

Accordingly, the Court **EXCLUDES $3,726.00** in fees for the district court reply brief.

### 3.     Opposition to Motion to Strike

Makaeff's counsel states that the following amount of time was spent on the opposition to Trump University's motion to strike by the various attorneys:[11]

---

[11]Because it has already excluded all paralegal fees, the Court does not include the 4.25 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 7.)

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen | RGRD | Partner | $660 | 1.50 | $990.00 |
| Paula Roach | RGRD | Associate | $360 | 2.75 | $990.00 |
| Amber Eck | ZHE | Partner | $690 | 9.75 | $6,727.50 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 7; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 6.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen states that her "firm took the lead in researching and drafting the opposition brief." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 7; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 18.) Ms. Eck states that "we were required to research, prepare, and file an Opposition to the motion to strike." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 6; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 25.)

Trump University argues that these hours should be reduced because the descriptions lump together the time spent on multiple tasks, preventing the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 12.) Trump University also argues that the time spent by two firms researching and drafting is duplicative. (*Id.*)

The Court agrees with Trump University that the hours should be reduced due to lumping together of tasks, which makes it difficult for the Court to determine if the hours spent are reasonable. For example, Ms. Jensen states that her counsel at her firm "took the lead," and yet Ms. Eck's firm spent over twice as much time on the opposition. Moreover, Ms. Eck vaguely describes tasks that "we" performed, even though she is the only individual from her firm who expended hours. As such, the Court applies a 20 percent reduction to the hours expended on the opposition to the motion to strike. *See Welch*, 480 F.3d at 948.

In addition, the Court excludes Ms. Roach's hours because there is no clear indication what tasks she preformed.

Accordingly, the Court **EXCLUDES $2,533.50** in fees for the opposition to the motion to strike.

### 4.    District Court Hearing and Preparation

Makaeff's counsel states that the following amount of time was spent on the district court hearing regarding the anti-SLAPP motion by the various attorneys:

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen | RGRD | Partner | $660 | 1.25 | $825.00 |
| Paula Roach | RGRD | Associate | $360 | 1.00 | $360.00 |
| Amber Eck | ZHE | Partner | $690 | 23.5 | $16,215.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 8; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 7.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen's "firm assisted co-counsel with preparation for the hearing and reviewed Trump's sur-reply." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 8; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 19.) Ms. Eck, who "personally argued" the anti-SLAPP motion, "spent a substantial amount of time preparing for the hearing, which included: additional research regarding the issues involved; additional review and analysis of all cases cited in our briefs and Trump University's briefs; and further conversations with Makaeff." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 7; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 26.) Additional attorneys from both firms attended the hearing, but Makaeff is not seeking reimbursement for their time. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 8; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 7.)

Trump University argues that the hours should be reduced because the lumping together of tasks makes it impossible to assess the reasonableness of hours, and there appears to be duplication of efforts, with two attorneys preparing a third attorney for the hearing. (Dkt. No. 367 at 12-13.)

The Court agrees with Trump University that the hours should be reduced due to lumping together of tasks, which makes it difficult for the Court to determine if the

hours spent are reasonable.  For example, Ms. Eck's declaration lumps together the time for additional research, review of cases, conversations with Makaeff, and the actual argument.  As such, the Court applies a 20 percent reduction to the hours expended on the district court hearing and preparation. *See Welch*, 480 F.3d at 948.

In addition, the Court excludes Ms. Roach's hours because there is no clear indication what tasks she preformed.

Accordingly, the Court **EXCLUDES $3,768.00** in fees for the district court hearing and preparation.

### 5.    Motion for Reconsideration

Makaeff's counsel states that the following amount of time was spent on the motion for reconsideration by the various attorneys:[12]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 1.50 | $1,237.50 |
| Rachel Jensen | RGRD | Partner | $660 | 9.50 | $6,270.00 |
| Paula Roach | RGRD | Associate | $360 | 4.50 | $1,620.00 |
| Amber Eck | ZHE | Partner | $690 | 66.00 | $45,540.00 |
| Helen Zeldes | ZHE | Partner | $600 | 5.00 | $3,000.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 9; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 8.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed.  Mr. Isaacson, Ms. Jensen, and Ms. Roach all helped revise the motion.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 9; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 20.)  Ms. Eck "spent a considerable amount of time researching for the motion for reconsideration, including: reviewing treatises on defamation and Anti-SLAPP motions; reading a large number of cases; and speaking with numerous first amendment and Anti-SLAPP experts, professors, and consultants."

---

[12]Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 22.00 staff attorney hours and 17.50 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 9.)

(Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 8; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 27-28.) In addition, "[w]e then spent additional time preparing" the motion.  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 8.)

Trump University argues that these hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 13.)  Trump University also argues that the hours are duplicative, because it took four partners, an associate, and a staff attorney to prepare a simple, and ultimately unsuccessful, motion for reconsideration. (*Id.*)

The Court excludes Ms. Zeldes's time because there is no indication what tasks she performed.  In addition, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable.  As such, the Court applies a 20 percent reduction to the other hours expended on the motion for reconsideration.  *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $13,933.50** in fees for the motion for reconsideration.

### 6.    Motion for Reconsideration Reply Brief

Makaeff's counsel states that the following amount of time was spent on the motion for reconsideration reply brief by the various attorneys:[13]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen | RGRD | Partner | $660 | 3.00 | $1,980.00 |
| Amber Eck | ZHE | Partner | $690 | 27.50 | $18,975.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 10; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 9.)

---

[13]Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 24.00 staff attorney hours and 16.50 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 10.)

1  Ms. Jensen's and Ms. Eck's supplemental declarations provide the following

2  additional descriptions of the tasks performed.  Ms. Jensen declares that "[w]e . . .

3  reviewed and revised the reply brief drafted by co-counsel." (Dkt. No. 364-1 (Jensen

4  Supp. Decl.) ¶ 10; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 21.)  Ms. Eck declares that

5  "[p]reparation of the Reply in support of our Motion for Reconsideration involved:

6  reviewing and analyzing Defendant's motion for reconsideration . . . , including all

7  cases cited therein; additional legal research; additional consultation with Anti-SLAPP

8  experts; and preparation of the Reply."  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 9.)

9  Trump University argues the hours should be reduced because the descriptions

10  lump together time spent on multiple tasks, which prevents the Court from determining

11  if the hours spent are reasonable. (Dkt. No. 367 at 14.)  Trump University also argues

12  that Ms. Jensen's declaration vaguely states that "we" reviewed and revised the reply

13  brief, which evidences duplicative efforts.  (*Id.*)

14  The Court agrees with Trump University that the lumping together of tasks

15  makes it difficult for the Court to evaluate whether the hours are reasonable.  As such,

16  the Court applies a 20 percent reduction to the hours expended on the motion for

17  reconsideration reply brief.  *See Welch*, 480 F.3d at 948.

18  Accordingly, the Court **EXCLUDES $4,191.00** in fees for the motion for

19  reconsideration reply brief.

20  ### 7.   Appeal Opening Brief

21  Makaeff's counsel states that the following amount of time was spent on the

22  appeal opening brief by the various attorneys:[14]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 221.75 | $182,943.75 |
| Rachel Jensen | RGRD | Partner | $660 | 10.00 | $6,600.00 |

28  [14]Because it has already excluded all paralegal fees, the Court does not include the 77.50 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 11.)

| Amanda Frame | RGRD | Associate | $440 | 45.50 | $20,020.00 |
| Amber Eck | ZHE | Partner | $690 | 12.50 | $8,625.00 |
| Helen Zeldes | ZHE | Partner | $600 | 0.50 | $300.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 11; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 10.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. Mr. Isaacson "took the lead on researching and briefing the appeal," while Ms. Jensen "reviewed and revised the brief and request for judicial notice." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 11; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 22.) Mr. Isaacson declares that he read a variety of legal research, consulted with outside attorneys, and briefed the appeal. (Dkt. No. 331-3 (Isaacson Decl.) ¶¶ 14-15, 19, 22.) Ms. Eck declares that: "I and my firm assisted in research, preparation, and revision of the appellate brief, and in compiling Trump University and Donald Trump articles, letters, emails, advertisements, website snapshots, and other such documents for use on appeal." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 10; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 35-36.)

Trump University argues that these hours should be reduced for several reasons. (Dkt. No. 367 at 14.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) Second, Trump University argues that there is duplication, with Ms. Jensen and Ms. Eck reviewing the work of Mr. Isaacson. (*Id.*) Third, Trump University argues that there was improper staffing, with Ms. Eck, a partner, working on relatively simple tasks. (*Id.*) Finally, Trump University argues that Mr. Isaacson spent excessive time on the opening brief, because it was unnecessary for him to consult with outside attorneys and read books on Trump University and Donald Trump. (Dkt. No. 367-2 at 79.)

The Court excludes Ms. Frame's and Ms. Zeldes's time because there is no indication what tasks they performed. The Court also excludes Ms. Eck's time because

her tasks were either duplicative of other attorneys, or improper tasks for a high billing partner. For Mr. Isaacson and Ms. Jensen, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $66,853.75** in fees for the appeal opening brief.

### 8.    Opposition to Motion to Stay

Makaeff's counsel states that the following amount of time was spent on the opposition to Trump University's motion to stay the action pending appeal by the various attorneys:[15]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 4.75 | $3,918.75 |
| Rachel Jensen | RGRD | Partner | $660 | 9.00 | $5,940.00 |
| Amber Eck | ZHE | Partner | $690 | 27.50 | $18,975.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 12; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 13.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Eck spoke with Trump University's counsel regarding withdrawing the motion, and then "research[ed] and draft[ed] [the] opposition." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 12; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 32-34.) Ms. Jensen and Mr. Isaacson "reviewed and edited the opposition brief prepared by co-counsel." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 12; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 23.)

Trump University argues that the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from

---

[15]Because it has already excluded all paralegal fees, the Court does not include the 13.75 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 12.)

determining if the hours spent are reasonable.  (Dkt. No. 367 at 15.)  Trump University also argues that the time is duplicative, with two partners reviewing the work of a third partner.  (*Id.*)

The Court agrees with Trump University that some of the hours are duplicative, and it was unnecessary for the opposition drafted by one partner to be reviewed by two other partners.  As such, the Court excludes Ms. Jensen's hours.  For Ms. Eck and Mr. Isaacson, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable, and therefore applies a 20 percent reduction to their hours.  *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $10,518.75** in fees for the opposition to the motion to stay.

### 9.    Ninth Circuit Settlement Conference

Makaeff's counsel states that the following amount of time was spent on the Ninth Circuit Settlement Conference by the various attorneys:

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 4.50 | $3,712.50 |
| Rachel Jensen | RGRD | Partner | $660 | 1.25 | $825.00 |
| Amber Eck | ZHE | Partner | $690 | 2.75 | $1,897.50 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 13; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 14.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed.  Mr. Isaacson and Ms. Jensen prepared for and participated in the telephonic settlement conference.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 13.)  Ms. Eck attended the conference, and "had conversations with Makaeff both before and after the" conference, "in order to prepare a settlement offer and to relay the results."  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 14; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 31.)  Ms. Eck notes that she did not charge two of the hours she

spent preparing for and attending the conference.  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 14.)

Trump University argues that the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 15.)  Trump University also argues that the time is duplicative, with three partners participating in the telephonic conference.  (*Id.*)

The Court agrees with Trump University that it was excessive to have three partners participating in the settlement conference, and therefore excludes Ms. Jensen's hours.  The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable, and as such, applies a 20 percent reduction to the other hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $1,947.00** in fees for the Ninth Circuit Settlement Conference.

### 10.    Work with Amicus on Appeal

Makaeff's counsel states that the following amount of time was spent soliciting public support and coordinating amici and amicus briefs by the various attorneys:

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 12.75 | $10,518.75 |
| Kevin Green | RGRD | Partner | $720 | 7.75 | $5,580.00 |
| Rachel Jensen | RGRD | Partner | $660 | 3.50 | $2,310.00 |
| Amber Eck | ZHE | Partner | $690 | 6.00 | $4,140.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 14; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 16.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed.  Mr. Isaacson, Mr. Green, and Ms. Jensen "consulted with lawyers for the American Civil Liberties Union ('ACLU') and Consumer Attorneys of California concerning issues

relevant to the opening appeal brief and reply appeal brief, as well as providing feedback on amicus briefs they submitted to the Ninth Circuit and keeping amici informed of developments." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 14; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 25; Dkt. No. 331-3 (Isaacson Decl.) ¶¶ 16-18.)  Ms. Eck spoke with attorneys for the Consumer Attorneys of California and the BBB regarding submitting amicus briefs, reviewed amicus briefs filed by the ACLU and Consumer Attorneys of California, and communicated with amici and Makaeff regarding the briefs.  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶¶ 15-16; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 37-38.)

Trump University argues that the hours should be denied entirely as unnecessary, duplicative, and excessive. (Dkt. No. 367 at 16.)  Trump University questions why it took four partners to consult with amici.  (*Id.*)  Further, the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable.  (*Id.*)

The Court agrees with Trump University that much of the time appears duplicative, which is exacerbated by the failure to differentiate how much time was spent on different tasks by different attorneys.  For example, it is unclear whether all four partners consulted with the Consumer Attorneys of California.  Therefore, the Court excludes the hours of Mr. Green and Ms. Jensen as duplicative.  The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Mr. Isaacson and Ms. Eck are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $10,821.75** in fees for working with amicus on appeal.

///

///

///

///

### 11.   Request for Judicial Notice Reply Brief

Makaeff's counsel states that the following amount of time was spent on the request for judicial notice reply brief by the various attorneys:[16]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 26.50 | $21,862.50 |
| Thomas Merrick | RGRD | Partner | $685 | 0.75 | $513.75 |
| Rachel Jensen | RGRD | Partner | $660 | 0.25 | $165.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 15.)

Ms. Jensen's supplemental declaration provides the following additional descriptions of the tasks performed.  Mr. Isaacson "took the lead on researching and drafting the request for judicial notice reply brief."  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 15; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 26.)  Mr. Merrick and Ms. Jensen reviewed the brief.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 15.)

Trump University argues that these hours should be reduced for several reasons.  (Dkt. No. 367 at 16.)   First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable.  (*Id.*)  Second, Trump University argues that there was improper staffing, with an $825 per hour partner researching and drafting a simple request for judicial notice reply brief.  (*Id.*)  Third, Trump University argues that the time is duplicative in having two partners review the work of a third partner.  (*Id.*)

The Court agrees with Trump University that Mr. Merrick's and Ms. Jensen's time appears duplicative, and therefore excludes their time.  The Court also agrees with Trump University that Mr. Isaacson's hours seem excessive and improperly staffed for a request for judicial notice reply brief.  As such, the Court reduces Mr. Isaacson's time by 50 percent, which would make his hourly rate more in line with that of an associate.

---

[16]Because it has already excluded all paralegal fees, the Court does not include the 8.00 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 15.)

1  Accordingly, the Court **EXCLUDES $11,610.00** in fees related to the request

2  for judicial notice reply brief.

3  **12.    Appeal Reply Brief**

4  Makaeff's counsel states that the following amount of time was spent on the

5  appeal reply brief by the various attorneys:[17]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 88.00 | $72,600.00 |
| Thomas Merrick | RGRD | Partner | $685 | 2.50 | $1,712.00 |
| Amanda Frame | RGRD | Associate | $440 | 14.50 | $6,380.00 |
| Amber Eck | ZHE | Partner | $690 | 3.25 | $2,242.50 |

12  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 16; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 17.)

13  Ms. Jensen's and Ms. Eck's supplemental declarations provide the following

14  additional descriptions of the tasks performed.  Mr. Isaacson "took the lead in

15  researching and preparing the reply brief, with research assistance from Ms. Frame."

16  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 16; *see also* Dkt. No. 331-1 (Jensen Decl.)

17  ¶ 27.)  Mr. Merrick "also assisted with reviewing and revising the brief."  (Dkt. No.

18  364-1 (Jensen Supp. Decl.) ¶ 16.)  Ms. Eck's time reflects reviewing and revising both

19  the appeal reply brief and the supplemental request for judicial notice.  (Dkt. No. 364-2

20  (Eck Supp. Decl.) ¶ 17; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 39.)

21  Trump University argues that these hours should be reduced for several reasons.

22  (Dkt. No. 367 at 16-17.)  First, Trump University argues that the descriptions lump

23  together time spent on multiple tasks, which prevents the Court from determining if the

24  hours spent are reasonable.  (*Id.*)  Second, Trump University argues that there was

25  improper staffing, with a $685 per hour partner reviewing the work of an $825 per hour

26  partner.  (*Id.* at 17.)  Third, Trump University argues that the time is duplicative

27

28  _____

[17]Because it has already excluded all paralegal fees, the Court does not include the 33.00 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 16.)

because two partners reviewed the work of a third partner, and because Ms. Frame and Mr. Isaacson both conducted research.  (*Id.*)

The Court agrees with Trump University that Mr. Merrick's and Ms. Eck's hours, reviewing and revising Mr. Isaacson's work, reflect improper staffing and duplication of effort.  As such, the Court excludes their hours.  The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Mr. Isaacson and Ms. Frame are reasonable, and therefore, applies a 20 percent reduction to their hours.  *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $19,751.00** in fees related to the appeal reply brief.

### 13.   Supplemental Request for Judicial Notice

Makaeff's counsel states that the following amount of time was spent on the supplemental request for judicial notice by the various attorneys:[18]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 13.50 | $11,137.50 |
| Thomas Merrick | RGRD | Partner | $685 | 0.75 | $513.75 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 17.)

Ms. Jensen's supplemental declaration provides the following additional descriptions of the tasks performed. Mr. Isaacson "researched and prepared Makaeff's supplemental request for judicial notice and reply." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 17; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 28.)  There is no mention of Mr. Merrick's tasks.

Trump University argues that these hours should be reduced for several reasons. (Dkt. No. 367 at 17.)  First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the

---

[18]Because it has already excluded all paralegal fees, the Court does not include the 7.25 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 17.)

hours spent are reasonable. (*Id.*)  Second, Trump University argues that there was improper staffing, with an $825 per hour partner researching and drafting a supplemental request for judicial notice. (*Id.*)  Third, Trump University argues that there is  no explanation for why Mr. Merrick needed to spend any time on the supplemental request. (*Id.*)

The Court agrees with Trump University that Mr. Merrick's time should be excluded because there is no indication what tasks he performed.  The Court also agrees with Trump University that Mr. Isaacson's hours seem excessive and improperly staffed for a supplemental request for judicial notice.  As such, the Court reduces Mr. Isaacson's time by 50 percent, which would make his hourly rate more in line with that of an associate.

Accordingly, the Court **EXCLUDES $6,082.50** in fees related to the supplemental request for judicial notice.

### 14.    Ninth Circuit Appeal Strategy

Makaeff's counsel states that the following amount of time was spent by the various attorneys on strategy for the Ninth Circuit appeal:

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 1.75 | $1,443.75 |
| Rachel Jensen | RGRD | Partner | $660 | 0.25 | $165.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 18.)

Ms. Jensen's supplemental declaration provides the following additional descriptions of the tasks performed.  Mr. Isaacson and Ms. Jensen spent a total of two hours "strategizing and thinking about our approach to the anti-SLAPP litigation that does not easily fit into another category" such "as "exploring potential avenues to bring to the Court's attention misrepresentations made by Trump's counsel." (*Id.*)

 Trump University argues that these two hours should be denied entirely because the descriptions lump time together and the time is duplicative. (Dkt. No. 367 at 17.)

The Court disagrees with Trump University, and determines that these two hours were reasonably expended.

Accordingly, the Court does not exclude any fees for the Ninth Circuit Appeal strategy.

### 15.   Ninth Circuit Hearing

Makaeff's counsel states that the following amount of time was spent on the Ninth Circuit hearing by the various attorneys:[19]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 69.50 | $57,337.50 |
| Thomas Merrick | RGRD | Partner | $685 | 9.50 | $6,507.50 |
| Amanda Frame | RGRD | Associate | $440 | 8.50 | $3,740.00 |
| Amber Eck | ZHE | Partner | $690 | 1.00 | $690.00 |
| Jessica Labrencis | ZHE | Associate | $250 | 1.00 | $250.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 19; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 19.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. According to Ms. Jensen, Mr. Isaacson "spent a substantial amount of time over the course of weeks prepar[ing] for the oral argument, including holding a mock argument in which two attorneys from [her] firm participated."[20]  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 19; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 29.)  Mr. Isaacson declares that he "devot[ed] many hours to" "preparing for oral argument" and "personally argued the appeal."  (Dkt. No. 331-3 (Isaacson Decl.) ¶ 19.)  Ms. Eck's "firm spent a total of one hour talking and e-mailing with Makaeff over the course of three separate days in preparation for the hearing, and one hour assisting in preparation for the Ninth Circuit

---

[19]Because it has already excluded all paralegal fees, the Court does not include the 3.50 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 19.)

[20]Ms. Eck and Ms. Labrencis also participated in the mock argument, but have not charged for this time.  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 19.)

hearing." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 18; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 35.)  Makaeff only seeks to recoup Mr. Isaacson's time and expenses for attending the hearing itself, even though additional attorneys also attended the hearing. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 19; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 19; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 30.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 18.)   First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*)  For example, there is no indication how much of Mr. Isaacson's time was spent on the actual argument, the mock argument, and other preparation. (*Id.*)  Second, Trump University argues that Mr. Isaacson's time appears excessive, and that it should not have taken him several weeks to prepare. (*Id.*)  Third, Trump University contends that a mock argument was unnecessary for an experienced attorney like Mr. Isaacson, and that participation in the mock argument should not be billed as it is educational.[21]   (*Id.*; *see also* Dkt. No. 335 at 18.)   Finally, Trump University argues that Ms. Labrencis's time is duplicative. (*Id.*)

The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable.  As such, the Court applies a 20 percent reduction to the hours expended on the Ninth Circuit hearing. *See Welch*, 480 F.3d at 948.  The Court disagrees with Trump University that a mock argument was unnecessary to prepare for the hearing.

Accordingly, the Court **EXCLUDES $13,705.00** in fees related to the Ninth Circuit hearing.

### 16.   Research Regarding Possible 28(j) Letter

Makaeff's counsel states that the following amount of time was spent on researching submitting a letter under Federal Rule of Appellate Procedure 28(j):

---

[21]Makaeff counters that it is precisely because of Mr. Isaacson's experience that he knew that a mock argument is the best way to prepare for a Ninth Circuit oral argument.  (Dkt. No. 364 at 17.)

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 7.50 | $6,187.50 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 20.)

Ms. Jensen's supplemental declaration provides the following additional descriptions of the tasks performed: "My firm considered submitting a Rule 28(j) letter to the Ninth Circuit with supplemental authorities that had come to our attention.  We also considered sending a letter to the Ninth Circuit correcting misrepresentations made to the Court.  However, we ultimately decided against submitting such a letter. . . .  Mr. Isaacson spent [time] reviewing the record and researching a possible Rule 28(j) letter to submit to the Ninth Circuit." (*Id.*)

Trump University argues that these hours should be denied entirely because the descriptions lump time together and the time appears excessive and unnecessary. (Dkt. No. 367 at 18.)

The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable.  The Court also agrees that these hours appear excessive and unnecessary.  In addition, these hours appear duplicative because the Ninth Circuit appeal strategy category already included "exploring potential avenues to bring to the Court's attention misrepresentations made by Trump's counsel."  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 18.) As such, the Court excludes Mr. Isaacson's hours.

Accordingly, the Court **EXCLUDES $6,187.50** in fees related to the Ninth Circuit hearing.

///

///

///

///

///

### 17.   Opposition to Petition for Rehearing *En Banc*

Makaeff's counsel states that the following amount of time was spent on the opposition to Trump University's petition for rehearing *en banc* by the various attorneys:[22]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 183.75 | $151,593.75 |
| Kevin Green | RGRD | Partner | $720 | 0.50 | $360.00 |
| Thomas Merrick | RGRD | Partner | $685 | 9.25 | $6,336.25 |
| Rachel Jensen | RGRD | Partner | $660 | 10.50 | $6,930.00 |
| Amanda Frame | RGRD | Associate | $440 | 8.20 | $3,608.00 |
| Amber Eck | ZHE | Partner | $690 | 13.00 | $8,970.00 |
| Helen Zeldes | ZHE | Partner | $600 | 0.50 | $300.00 |
| Jessica Labrencis | ZHE | Associate | $250 | 1.25 | $312.50 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 21; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 20.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. Ms. Jensen declares that Mr. "Isaacson, with the assistance of Ms. Frame and [a staff attorney], drafted an opposition that was reviewed and revised by additional attorneys at my firm, including myself." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 21; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 32.)  Mr. Isaacson declares that: "[The fact that] separate concurring opinions both urged *en banc* rehearing meant that I would have to devote considerable time to review the law of federal courts and federal jurisdiction, and as well as the collateral-order doctrine – none of which had previously been at issue in the litigation." (Dkt. No. 331-3 (Isaacson Decl.) ¶ 21.)  "Because the concurring opinions and Trump University's petition for en banc rehearing focused on questions of

---

[22]Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 84.55 staff attorney hours and 11.00 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 21.)

constitutional law and federal jurisdiction that had never been at issue in the litigation, I could not rely on my previous work in the case, but instead had to review and digest a further vast body of law in order to effectively oppose en banc rehearing." (*Id.*)  Ms. Eck "communicated with Makaeff on several occasions regarding the Appeal and the en banc petition" and her "firm assisted in researching and preparing the opposition to the en banc petition." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 20; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 41.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 18-19.)  First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable.  (*Id.*)  Second, there appears to be duplication of efforts, with several attorneys researching and drafting the opposition.  (*Id.* at 19.)  Third, Trump University argues that there is no description of what was done by Mr. Green and Mr. Merrick.  (*Id.*)

The Court excludes the time for Mr. Green, Mr. Merrick, Ms. Zeldes, and Ms. Labrencis because there is no clear indication what tasks they performed.  The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the other hours are reasonable.  As such, the Court applies a 20 percent reduction to the hours expended by Mr. Isaacson, Ms. Jensen, Ms. Frame, and Ms. Eck.  *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $41,529.10** in fees for the opposition to the petition for rehearing *en banc*.

### 18.   Work with Amicus on *En Banc* Opposition

Makaeff's counsel states that the following amount of time was spent working with amicus on the opposition to Trump University's petition for rehearing *en banc* by the various attorneys:

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|

| Eric Isaacson | RGRD | Partner | $825 | 12.25 | $10,106.25 |
|---|---|---|---|---|---|
| Kevin Green | RGRD | Partner | $720 | 2.25 | $1,620.00 |
| Thomas Merrick | RGRD | Partner | $685 | 2.50 | $1,712.50 |
| Amber Eck | ZHE | Partner | $690 | 3.25 | $2,242.50 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 22; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 21.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. Ms. Jensen declares that: [m]y partners also met with lawyers from the ACLU and Consumer Attorneys of California and with a number of anti-SLAPP practitioners concerning strategy, soliciting public support, and considering the submission of additional briefs in support of our opposition to the en banc petition." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 22; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 32.) Mr. Isaacson declares that he "again consulted extensively with lawyers from the ACLU and the Consumer Attorneys of California, and also with experienced practitioners specializing in Anti-SLAPP litigation," and that "[o]nce again, the Consumer Attorneys of California submitted an amicus curiae brief supporting Makaeff, this time opposing the petition for *en banc* rehearing." (Dkt. No. 331-3 (Isaacson Decl.) ¶¶ 22-23.) Ms. Eck "personally spoke with attorneys for the Consumer Attorneys and the BBB, and participated in various communications with them" regarding submitting amicus curiae briefs. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 21.)

Trump University argues that these hours should be denied entirely for several reasons. (Dkt. No. 267 at 19.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) Second, there appears to be duplication of efforts, with four partners soliciting support from amici. (*Id.*) Third, Trump University argues that there is improper staffing, with high billing partners doing the task of an associate. (*Id.*)

The Court agrees with Trump University that much of the time appears duplicative, which is exacerbated by the failure to differentiate how much time was spent on different tasks by different attorneys.  For example, it is unclear whether all four partners consulted with the Consumer Attorneys of California.  Therefore, the Court excludes the hours of Mr. Green and Mr. Merrick as duplicative.  The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Mr. Isaacson and Ms. Eck are reasonable, and as such, applies a 20 percent reduction to their hours.  *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $5,802.25** in fees for working with amicus on the *en banc* opposition.

### 19.   Strategy Regarding the Remand and the Motion to Transfer Fee Motion to District Court

Makaeff's counsel states that the following amount of time was spent on strategizing about the remand and researching the best vehicle for addressing attorney's fees by the various attorneys:[23]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 18.30 | $15,097.50 |
| Kevin Green | RGRD | Partner | $720 | 1.00 | $720.00 |
| Rachel Jensen | RGRD | Partner | $660 | 2.75 | $1,815.00 |
| Amber Eck | ZHE | Partner | $690 | 6.25 | $4,312.50 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 23; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 22.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed.  Mr. Isaacson "researched, drafted, and filed a motion asking the Ninth Circuit to transfer jurisdiction over the award of those fees to this Court."  (Dkt. No. 331-3 (Isaacson

---

[23]Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 30.80 staff attorney hours and 3.75 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 23.)

Decl.) ¶ 25; *see also* Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 23; Dkt. No. 331-1 (Jensen Decl.) ¶ 35.)  Mr. Green reviewed the motion "after reading some relevant opinions." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 23.)  Ms. Jensen "spoke to Mr. Isaacson and reviewed the applicable rules and commented on the strategy and the draft as well." (*Id.*)  Ms. Eck "researched the logistics for submitting a motion for fees and transferring the issue of the fee motion to the District Court." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 22.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 19-20.)  First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable.  (*Id.* at 19.)  Second, there appears to be duplication of efforts.  (*Id.* at 20.)  For example, Ms. Eck was conducting research at the same time as Mr. Isaacson and a staff attorney.  (*Id.*)  Third, Trump University argues that there was improper staffing because the drafting by Mr. Isaacson could have been done by a lower rate biller.  (*Id.*)

The Court agrees that the hours by the four partners appear duplicative.  As such, the Court excludes the hours of Mr. Green, Ms. Jensen, and Ms. Eck.  The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Mr. Isaacson are reasonable, and as such, applies a 20 percent reduction to his hours.  *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $9,867.00** in fees for the strategy regarding remand and motion to transfer fee motion to district court.

### 20.    Makaeff Deposition Preparation and Document Production

Makaeff's counsel states that the following amount of time was spent preparing Makaeff for an additional deposition and further discovery by the various attorneys:[24]

---

[24]Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 27.25 staff attorney hours and 24.50 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 24.)

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|---|---|---|---|---|---|
| Jason Forge | RGRD | Partner | $740 | 22.00 | $16,280.00 |
| Rachel Jensen | RGRD | Partner | $660 | 43.50 | $28,710.00 |
| Amber Eck | ZHE | Partner | $690 | 55.50 | $38,295.00 |
| Aaron Olsen | ZHE | Associate | $410 | 0.25 | $102.50 |
| Jessica Labrencis | ZHE | Associate | $250 | 2.25 | $562.50 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 24; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 26.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed.  Ms. Jensen declares that she and Mr. Forge performed the following tasks "in connection with the negotiation of the Makaeff deposition terms and conditions, strategizing, traveling back and forth to Los Angeles, preparing Ms. Makaeff for her deposition, reviewing her anti-SLAPP documents and producing them to Trump's counsel":

> My colleague Jason Forge and I had calls with Ms. Makaeff to discuss sitting for deposition again, had calls with our co-counsel Ms. Eck about the same, calls and emails with Trump's counsel at first objecting to Ms. Makaeff sitting for another deposition session, calling Judge Gallo's chambers, and then spending hours negotiating the terms and conditions of the deposition.  Thereafter, I spent time strategizing about the deposition and helping Ms. Makaeff draft a supplemental declaration. After we finished a draft, Mr. Forge reviewed the draft declaration and provided comments.  Then, my partner Jason Forge and I both spent separate days traveling to Los Angeles and meeting with Ms. Makaeff to prepare and defend her for the deposition.  In the course of those meetings, Ms. Makaeff provided documents that were relevant to the SLAPP proceedings (which were previously stayed before the matter was remanded to this Court).  I spent a day reviewing all the potentially responsive documents before they were produced, and finalized Makaeff's supplemental declaration.

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 24; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 37.)  Ms. Eck declares that "the Court . . . permitted additional discovery on the issue of actual malice" and "[w]e spent a substantial amount of time conferring with Makaeff and compiling, reviewing, and producing all potentially responsive documents, including hundreds of pages of e-mails and other documents that she discovered upon further review of her files."  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 23; *see also* Dkt. No.

331-2 (Eck Decl.) ¶ 46.)  In addition, "we spent numerous hours over the course of a week to prepare Makaeff for her deposition."[25] (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 25; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 45.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 20.)  First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable.  (*Id*.)  For example, there is no break down of how much time was spent on negotiations, deposition preparation of Makaeff, travel time, etc. (*Id.*)  Second, there appears to be duplication of efforts.  (*Id*.)  Third, Trump University argues that the hours were excessive because the deposition was limited to two hours and the issue of "actual malice," and Makaeff was familiar with the deposition process having already sat for three depositions.  (*Id.*)

The Court agrees with Trump University that much of the time appears duplicative and excessive, which is exacerbated by the failure to differentiate how much time was spent on different tasks by different attorneys.  For example, it is unclear why it was necessary for at least three attorneys, two of which had to travel to Los Angeles, to prepare Makaeff for her two-hour deposition.  Therefore, the Court excludes the time of Mr. Forge.  The Court also excludes the time of Mr. Olsen and Ms. Labrencis because it is unclear what tasks they preformed.  In addition, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Jensen and Ms. Eck are reasonable, and as such, applies a 20 percent reduction to their hours.  *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $30,346.00** in fees for Makaeff deposition preparation and document production.

///

///

---

[25]Ms. Eck notes that she has not charged for her time in preparing for the deposition of Makaeff's former boyfriend, which was later taken off-calendar.  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 26.)

### 21.   Supplemental Brief Regarding Actual Malice

Makaeff's counsel states that the following amount of time was spent on this Court's request for supplemental briefing on the issue of actual malice by the various attorneys:[26]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 4.00 | $3,300.00 |
| Jason Forge | RGRD | Partner | $740 | 7.00 | $5,180.00 |
| Rachel Jensen | RGRD | Partner | $660 | 39.75 | $26,235.00 |
| Amber Eck | ZHE | Partner | $690 | 36.75 | $25,357.50 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 25; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 27.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed.  Ms. Jensen personally drafted the supplemental brief, and Mr. Forge and Mr. Isaacson reviewed it.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 25; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 38; Dkt. No. 331-3 (Isaacson Decl.) ¶ 27.)  Ms. Eck "spent a considerable amount of time preparing the supplemental brief and supplemental declaration of Makaeff, including legal research, factual research and review of relevant documents, and communications with Anti-SLAPP and actual malice experts."  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 27; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 43.)  In addition, Ms. Eck "had numerous conversations with Makaeff throughout the briefing process."  (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 27.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 20-21.)  Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable.  (*Id*.)   In addition, Trump University argues that there is

---

[26]Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 29.75 staff attorney hours and 23.75 paralegal hours.  (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 25.)

duplicative, excessive, and overstaffed time, with two partners reviewing Ms. Jensen's brief, and Ms. Eck also working on the supplemental brief. (*Id.*)

The Court agrees with Trump University that Mr. Isaacson's and Mr. Forge's time is duplicative with that of Ms. Jensen and Ms. Eck, and therefore excludes their time. The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Eck are reasonable, and as such, applies a 20 percent reduction to her hours. *See Welch*, 480 F.3d at 948. The Court does not reduce the hours of Ms. Jensen because all of her time was spent on the single task of drafting.

Accordingly, the Court **EXCLUDES $13,551.50** in fees for the supplemental brief regarding actual malice.

### 22.    Supplemental Reply Brief Regarding Actual Malice

Makaeff's counsel states that the following amount of time was spent on the supplemental reply brief regarding actual malice by the various attorneys:[27]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 3.25 | $2,681.25 |
| Rachel Jensen | RGRD | Partner | $660 | 25.75 | $16,995.00 |
| Amber Eck | ZHE | Partner | $690 | 18.00 | $12,420.00 |
| Aaron Olsen | ZHE | Associate | $410 | 0.50 | $205.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 26; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 28.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen researched and prepared the supplemental reply brief, and Mr. Isaacson reviewed it and commented on it. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 26; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 39; Dkt. No. 331-3 (Isaacson Decl.) ¶ 27.) Ms. Eck's "firm" also "researched for and prepared a

---

[27]Because it has already excluded all paralegal fees, the Court does not include the 12.25 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 26; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 28.)

Reply." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 28; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 48.)

Trump University argues that the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 21.) For example, there is no breakdown of how much time was spent on research versus drafting. (*Id.*) In addition, Trump University argues that Ms. Eck's time appears duplicative of Ms. Jensen's firm. (*Id.*)

The Court agrees with Trump University that Ms. Eck's time appears duplicative, which is exacerbated by the failure to differentiate how much time was spent on different tasks. Therefore, the Court excludes Ms. Eck's hours. The Court also excludes Mr. Olsen's hours because it is not clear what tasks he performed. The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Jensen and Mr. Isaacson are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $16,560.25** in fees for the supplemental reply brief regarding actual malice.

### 23.    Hearing on Actual Malice

Makaeff's counsel states that the following amount of time was spent on the hearing regarding actual malice by the various attorneys:[28]

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 0.25 | $206.50 |
| Jason Forge | RGRD | Partner | $740 | 0.75 | $555.00 |
| Rachel Jensen | RGRD | Partner | $660 | 1.50 | $990.00 |

---

[28]Because it has already excluded all paralegal fees, the Court does not include the 2.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27.)

| Amber Eck | ZHE | Partner | $690 | 26.75 | $18,457.50 |
|---|---|---|---|---|---|
| Helen Zeldes | ZHE | Partner | $600 | 5.00 | $3,000.00 |
| Aaron Olsen | ZHE | Associate | $410 | 3.50 | $1,435.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 30.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen prepared for oral argument, before it was rescheduled and Ms. Eck ultimately appeared at the oral argument (because Ms. Jensen was then out on maternity leave.) (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶¶ 40-41.) Mr. Isaacson and Mr. Forge assisted Ms. Eck with her preparation for the hearing. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27; Dkt. No. 331-3 (Isaacson Decl.) ¶ 27.) Ms. Jensen notes that additional attorneys also attended the hearing, but they are not seeking that time. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 41.)

Ms. Eck "spent a considerable amount of time preparing for this hearing, reviewing all of the Anti-SLAPP motions and Orders to date, a voluminous amount of case law, the four volumes of Makaeff's deposition testimony, Makaeff's several declarations, and voluminous documents and exhibits submitted by both parties." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 29; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 49.) Ms. Eck notes that she is not seeking seven hours of her preparation time for the hearing. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 29.) Ms. Zeldes and Mr. Olsen assisted in Ms. Eck's preparation for the hearing. (*Id.*) Ms. Eck argued at the hearing before this Court. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 30; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 50.)

Trump University argues that the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 21.) For example, there is no breakdown of how much time Ms. Eck spent preparing for the hearing, reviewing documents, and arguing at the hearing itself. (*Id.*) In addition, Trump University

argues that there is a duplication of efforts, with three partners and one associate preparing another partner arguing the motion. (*Id.*)

The Court disagrees with Trump University that the time is duplicative. However, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Eck are reasonable, and as such, applies a 20 percent reduction to her hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $3,691.50** in fees for the hearing on actual malice.

### 24.   Time Spent on Multiple Tasks

Makaeff's counsel states that the following amount of time was spent on "multiple tasks" by the various attorneys:

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 8.50 | $7,012.50 |
| Rachel Jensen | RGRD | Partner | $660 | 5.75 | $3,795.00 |

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 28.)

Ms. Jensen's supplemental declaration states that these 14.25 hours pertain to multiple tasks related to the anti-SLAPP proceedings, but cannot be definitely assigned to the above procedural categories. (*Id.*) For example, Mr. Isaacson "spent time researching the potential for a Rule 28(j) letter and also preparing for 9th Circuit oral argument (which were occurring contemporaneously)." (*Id.*) Makaeff notes that she is willing to reduce her requested fees by these 14.25 hours. (Dkt. No. 364 at 11 n.6.)

Trump University argues that the hours should be denied entirely because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 21-22.) For example, there is not breakdown between how much time Mr. Isaacson spent researching versus preparing. (*Id.* at 22.) In addition, Trump University notes that the time appears duplicative of category 16 above, concerning research of a possible 28(j) letter. (*Id.*)

The Court agrees with Trump University that these hours should be denied entirely.  The vague description of "multiple tasks" related to the anti-SLAPP litigation prevents the Court from determining if these hours were reasonable.   Moreover, Makaeff has stated that she is willing to omit these hours.

Accordingly, the Court **EXCLUDES $10,807.50** in fees for work on multiple tasks.

### 25.    Bill of Fees and Costs

Makaeff's counsel states that the following amount of time was spent on the preparation of the Bill of Fees and Costs by the various attorneys:

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Amber Eck | ZHE | Partner | $690 | 22.25 | $15,352.50 |
| Aaron Olsen | ZHE | Associate | $410 | 10.00 | $4,100.00 |

(Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 31.)

Ms. Eck states that "we spent considerable time researching and preparing the motion, compiling all of our time records and expenses related to the Anti-SLAPP issues over the past four years, and preparing a detailed declaration setting forth our work performed in the case, time, lodestar, and expenses." (*Id.*)  She states that her firm does not seek fees for additional time spent on the brief after June 27, 2014, or for time spent preparing the supplemental brief or declarations. (*Id.*)  Ms. Jensen states that her firm also spent a "substantial amount of time" on the Bill of Fees and Costs, but is not claiming this time to "demonstrate the reasonableness of the requested fees." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 28.)

Trump University argues the hours should be denied entirely because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 22.) Trump University also argues that this Court's supplemental briefing order did not explicitly invite Makaeff to include these fees. (*Id.*)

The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Eck and Mr. Olsen are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948. The Court appreciates that Ms. Jensen's firm does not seek time for preparation of the Bill of Fees and Costs.

Accordingly, the Court **EXCLUDES $3,890.50** in fees for the preparation of Bill of Fees and Costs.

### C.   Upward Multiplier

Makaeff argues that any reduction in fees should be offset by an upward multiplier because this is a contingency fee case. (Dkt. No. 331 at 17-18; Dkt. No. 364 at 8, 20.) Trump University counters that no upward multiplier is justified here because, among other reasons, Makaeff's counsel are not sole practitioners, but rather a large team of high billing attorneys. (Dkt. No. 335 at 21-25; Dkt. No. 367 at 23-25.)

The California Supreme Court has held that a court may adjust the lodestar figure based on various factors, including the contingent nature of the fee award. *Ketchum*, 17 P.3d at 741. "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the anti-SLAPP provision, into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Id.* at 742. A contingency enhancement "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Id.* at 746.

The Court declines to apply an upward multiplier here due to the contingency fee nature of this case. The Court notes that Makaeff already argued that its higher than average hourly rates were also justified because this is a contingency case. (Dkt. No. 331 at 15.) As such, an upward multiplier would be duplicative. Moreover, the basic lodestar figure adequately compensates Makaeff's counsel, and Makaeff has not met her burden that a contingency fee enhancement is appropriate here. *See Ketchum*, 17

P.3d at 746 ("Of course, the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof.").

### D.   Conclusion

In sum, Makaeff has sought $1,333,004.25[29] in fees, and the Court has excluded a total of $542,920.85 in fees as follows:

| Category | Fees Excluded |
|---|---|
| Staff Attorney Fees | $121,047.50 |
| Paralegal Fees | $90,542.50 |
| 1. Initial Anti-SLAPP Motion | $19,656.00 |
| 2. District Court Reply Brief | $3,726.00 |
| 3. Opposition to Motion to Strike | $2,533.50 |
| 4. District Court Hearing and Preparation | $3,768.00 |
| 5. Motion for Reconsideration | $13,933.50 |
| 6. Motion for Reconsideration Reply Brief | $4,191.00 |
| 7. Appeal Opening Brief | $66,853.75 |
| 8. Opposition to Motion to Stay | $10,518.75 |
| 9. Ninth Circuit Settlement Conference | $1,947.00 |
| 10. Work with Amicus on Appeal | $10,821.75 |
| 11. Request for Judicial Notice | $11,610.00 |
| 12. Appeal Reply Brief | $19,751.00 |
| 13. Supplemental Request for Judicial Notice | $6,082.50 |
| 14. Ninth Circuit Appeal Strategy | $0.00 |
| 15. Ninth Circuit Hearing | $13,705.00 |

---

[29]The Court notes that the breakdown of fees in Ms. Jensen's and Ms. Eck's supplemental declarations actually totals $1,333,659.50, which is a difference of $655.25. (Dkt. No. 364-1 (Jensen Supp. Decl.); Dkt. No. 364-2 (Eck Supp. Decl.).) However, since neither party raised this difference, and using the lower figure benefits Trump University, the Court uses $1,333,004.25. (Dkt. No. 331 at 18; Dkt. No. 331 (Jensen Decl.) ¶ 58; Dkt. No. 331-2 (Eck Decl.) ¶ 55; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 2; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 2.)

| | |
|---|---|
| 16. Research Regarding Possible 28(j) Letter | $6,187.50 |
| 17. Opposition to Petition for Rehearing *En Banc* | $41,529.10 |
| 18. Work with Amicus on *En Banc* Opposition | $5,802.25 |
| 19. Strategy Regarding Remand and Motion to Transfer Fee Motion to District Court | $9,867.00 |
| 20. Makaeff Deposition Preparation and Document Production | $30,346.00 |
| 21. Supplemental Brief Regarding Actual Malice | $13,551.50 |
| 22. Supplemental Reply Brief Regarding Actual Malice | $16,560.25 |
| 23. Hearing on Actual Malice | $3,691.50 |
| 24. Work on Multiple Tasks | $10,807.50 |
| 25. Preparation of Bill of Fees and Costs | $3,890.50 |
| **TOTAL FEES EXCLUDED** | **$542,920.85** |

Accordingly, the Court **AWARDS** Makaeff **$790,083.40** in fees.

## III.    Reasonable Costs

In addition to attorney's fees, a prevailing defendant on an anti-SLAPP motion is entitled to recover reasonable costs. Cal. Civ. Proc. Code § 425.16(c)(1).  Here, Makaeff seeks $9,209.27 in costs for successfully litigating the anti-SLAPP motion.[30] (Dkt. No. 331 at 18; Dkt. No. 364 at 19 n.11.)  Specifically, Makaeff seeks the following costs:

| Category | RGRD Costs | ZHE Costs | Total |
|---|---|---|---|
| Meals, Hotel & Transportation | $836.49 | $280.88 | $1,117.37 |
| Messenger, Overnight Delivery | $57.85 | | $57.85 |

---

[30]Makaeff originally sought $9,812.11 in costs, but is no longer seeking approximately $603 for the costs of postage, telephone, and photocopying charges, in light of Trump University's observation that California Code of Civil Procedure § 1033.5(b) applies.  (Dkt. No. 335 at 26; Dkt. No. 364 at 19 n.11; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 31 n.1; Dkt. No. 367 at 26.)

| | | | |
|---|---|---|---|
| Video Deposition of Makaeff | $290.00 | | $290.00 |
| Lexis, Westlaw, Online Library Research | $4,931.21 | $2,057.80 | $6,989.01 |
| Publications | $299.79 | | $299.79 |
| Miscellaneous Deposition Costs | $455.25 | | $455.25 |
| **TOTAL COSTS** | $6,870.59 | $2,338.68 | **$9,209.27** |

(Dkt. No. 331-1 (Jensen Decl.) ¶ 59); (Dkt. No. 331-2 (Eck Decl.) ¶ 57.)

The Court ordered Makaeff to "submit additional information substantiating the costs requested." (Dkt. No. 358 at 6.) The supplemental declarations of Ms. Jensen and Ms. Eck provide additional details regarding costs. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶¶ 31-32; Dkt. No. 364-2 (Eck Supp. Decl.) ¶¶ 33-34.) Trump University argues that the Court should deny the costs entirely for various reasons. (Dkt. No. 367 at 26-27.)

The Court agrees with Trump University that the charge of $225.05 for lunch after the Ninth Circuit hearing is not compensable since it was for the "team" and Makaeff admits that not all who attended the hearing were necessary. (*Id.*) The Court also excludes Mr. Forge's $288.41 in expenses for meals and hotel accommodations for preparing Makaeff for her deposition since the Court has already determined that his time was duplicative. (*Id.*) Otherwise, the Court determines that Makaeff's costs are reasonable. For example, Trump University argues that the Court should not allow Mr. Isaacson's online research costs because he has a high hourly rate. (*Id.* at 26.) However, the fact that Mr. Isaacson is a more experienced attorney would likely reduce his research costs.

Therefore, the Court excludes $513.46 in costs. Accordingly, the Court **AWARDS** Makaeff **$8,695.81** in costs.

///

**CONCLUSION AND ORDER**

For the reasons set forth above, **IT IS HEREBY ORDERED**:

(1)    the Court **GRANTS IN PART AND DENIES IN PART** Makaeff's request for fees and costs (Dkt. No. 331);

(2)    the Court **AWARDS** Makaeff **$790,083.40** in fees;

(3)    the Court **AWARDS** Makaeff **$8,695.81** in costs;

(4)    the Court **GRANTS** Makaeff's *ex parte* application to file a limited response (Dkt. No. 368).

**IT IS SO ORDERED.**

DATED:  April 9, 2015

HON. GONZALO P. CURIEL
United States District Judge