NANCY L. STAGG CA Bar No. 157034
    nstagg@foley.com
BENJAMIN J. MORRIS CA Bar No. 260148
    bmorris@foley.com
**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130-3302
TELEPHONE:     858.847.6700
FACSIMILE:     858.792.6773

JILL A. MARTIN CA Bar No. 245626
    jmartin@trumpnational.com
C/O **TRUMP NATIONAL GOLF CLUB LOS ANGELES**
ONE TRUMP NATION DRIVE
RANCHO PALOS VERDES, CA 90275
TELEPHONE:     310.303.3225
FACSIMILE:     310.265.5522

Attorneys for Defendants Trump University, LLC
and Donald J. Trump

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, SONNY LOW, J.R. EVERETT, AND JOHN BROWN, on behalf of themselves and all others similarly situated, ED OBERKROM, and BRANDON KELLER, individually,<br><br>            Plaintiffs,<br><br>      v.<br><br>TRUMP UNIVERSITY, LLC (aka Trump Entrepreneur Initiative), a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. 10-cv-00940 GPC (WVG)<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRUMP UNIVERSITY, LLC AND DONALD J. TRUMP'S MOTION FOR DECERTIFICATION OF CLASS ACTION**<br><br>**DATE:      May 22, 2015**<br>**TIME:       1:30 p.m.**<br>**CRTM:    2D (2nd Floor – Schwartz)**<br><br>**JUDGE:    Hon. Gonzalo P. Curiel** |

Case No. 10-cv-0940 GPC (WVG)

4820-0392-3747.2

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF REASONS WHY THE CLASSES MUST BE DECERTIFIED.................................................................................................1

II.    ARGUMENT..................................................................................................2

    A.    Plaintiffs Have Failed to Meet their Burden of Proving that Rule 23's Certification Requirements are Still Met .........................................2

    B.    Plaintiffs' Self-Serving Damages Theory Is Insufficient Under *Comcast* ...................................................................................................5

    C.    Plaintiffs Improperly Seek a Windfall Recovery .............................6

    D.    Without a Valid Damages Theory, Plaintiffs' California Classes Must Be Decertified..................................................................................7

        1.    Plaintiffs' Full-Refund Theory is inconsistent with the law................7

        2.    The law relied on by Defendants is directly on point .........................10

        3.    Plaintiffs' argument that "satisfied" students can simply opt-out does not cure the defects in their damages model .............................11

        4.    Plaintiffs' lack of expert testimony proving a workable method for measuring damages is fatal to their claims ....................................12

    E.    Without a Valid Damages Theory, Plaintiffs' Florida and New York Classes Must Also be Decertified .................................................13

    F.    Plaintiffs' Counsel are Inadequate .................................................14

III.    CONCLUSION...........................................................................................15

Case No. 10-cv-0940 GPC (WVG)

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014)................................................................8

*Allen v. Similasan Corp.*,
    2015 WL 1533463 (S.D. Cal. Mar. 30, 2015) ...........................................8

*In re The Apple iPod iTunes Antitrust Litig.*,
    2014 WL 6783763 (N.D. Cal. November 25, 2014) ...................................3

*Arrendondo v. Delano Farms Co.*,
    301 F.R.D. 493 (E.D. Cal. 2014)................................................................4

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
    242 F.3d 290 (5th Cir. 2001) ...................................................................11

*Campbell v. Pricewaterhousecoopers, LLP*,
    287 F.R.D. 615 (E.D. Cal. 2012)................................................................3

*Chavez v. Blue Sky Nat'l Bev. Co.*,
    2011 U.S. Dist. LEXIS 109738 (N.D. Cal. Sept. 27, 2011).......................4

*Comcast v. Behrend*,
    133 S. Ct. 1426 (2013)............................................................................6, 7

*In re Conagra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014)................................................................6

*Donovan v. Philip Morris USA, Inc.*,
    2012 U.S. Dist. LEXIS 37974 (D. Mass. Mar. 21, 2012) ..........................5

*Fed. Trade Commission v. Ivy Capital*,
    2013 WL 1224613 (D. Nev. Mar. 26, 2013) ..............................................8

*FTC v. Figgie Int'l*,
    994 F.2d 595 (9th Cir. 1993) .....................................................................8

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................2, 4

4820-0392-3747.2

# <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Page(s)**

*Gonzales v. Arrow Fin. Servs. LLC*,
   489 F. Supp. 2d 1140 (S.D. Cal. 2007) .......................................................... 3

*Guadiana v. State Farm Fire & Cas. Co.*,
   2014 WL 977671 (D. Ariz. Mar. 13, 2014).................................................... 4

*Hahn v. Massage Envy Franchising, LLC*,
   2014 WL 5100220 (S.D. Cal. Sept. 25, 2014)............................................... 8

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
   2008 WL 8929013 (S.D. Cal. July 8, 2008) ............................................... 3, 4

*Krueger v. Wyeth, Inc.*,
   2011 WL 8971449 (S.D. Cal. Mar. 30, 2011) ............................................. 12

*Marlo v. UPS*,
   251 F.R.D. 476 (N.D. Cal. 2008)..................................................................... 4

*Marlo v. UPS, Inc.*,
   639 F.3d 942 (9th Cir. 2011) ....................................................................... 2, 3

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ........................................................................ 13

*Mendez v. Radec Corp.*,
   260 F.R.D. 38 (W.D.N.Y. 2009) ................................................................... 15

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
   268 F.R.D. 652 (S.D. Cal. 2010) .................................................................. 11

*In re Nat'l West. Life Ins. Deferred Annuities Litig.*,
   2013 WL 593414 (S.D. Cal. Feb. 14, 2013)............................................... 3, 4

*Negrete v. Allianz Life Ins. Co of N. Amer.*,
   287 F.R.D. 590 (C.D. Cal 2012) ................................................................. 2, 3

*Ortega v. Natural Balance, Inc.*,
   300 F.R.D. 422 ( C.D. Cal. 2014)................................................................... 8

*Otsuka v. Polo Ralph Lauren Corp.*,
   2010 WL 366653 (N.D. Cal. Jan. 25, 2010)................................................... 4

4820-0392-3747.2

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*In re POM Wonderful LLC,*
    2014 WL1225184 (C.D. Cal. Mar. 25, 2014)................................5, 10, 11, 12

*Rikos v. The Proctor & Gamble Co.,*
    2014 U.S. Dist. LEXIS 109302 (S.D. Ohio June 19, 2014)........................ 8

*Schulein v. Petroleum Dev. Corp.,*
    2014 WL 2179341 (C.D. Cal. May 19, 2014) ................................. 2

*Stiller v. Costco Wholesale Corp.,*
    298 F.R.D. 611 (S.D. Cal. 2014) ................................. 3

*Sullivan v. Chase Inv. Services of Boston, Inc.,*
    79 F.R.D. 246 (N.D. Cal. 1978)................................. 14

*United States v. Kennedy,*
    726 F.3d 986 (7th Cir. 2013) ................................. 9

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. ___, 131 S.Ct. 2541 (2011)................................. 5

*Werdebaugh v. Blue Diamond Growers,*
    2014 WL 2191901 (N.D. Cal. Oct. 2, 2013) ........................6, 10, 11

**State Cases**

*Day v. AT & T Corp.,*
    63 Cal. App. 4th 325 (1998) ................................. 6

*Dunkin v. Boskey,*
    82 Cal. App. 4th 171 (2000) ................................. 12

*Duran v. U.S. Bank Nat'l Assoc.*
    59 Cal. 4th 1 (2014)................................. 5

*People ex rel Harris v. Sarpas,*
    225 Cal. App. 4th 1539 (2014) ................................. 8

*People ex rel. Kennedy v. Beaumont Invest., Ltd.,*
    11 Cal. App. 4th 102 (2003) ................................. 7

Case No. 10-cv-0940 GPC (WVG)

4820-0392-3747.2

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Lee v. Carter-Reed Co., LLC,*
   203 N.J. 496 (2010) ...................................................................... 8

*People of the State of N.Y. v. Trump Entrepreneur Initiative LLC,*
   2014 N.Y. Misc. LEXIS 4533 (N.Y. Sup. Ct., Oct. 8, 2014).......... 9

*People v. The Superior Court of Los Angeles County,*
   9 Cal. 3d 283 (1973) ...................................................................... 7

*Steroid Hormone Product Cases,*
   181 Cal. App. 4th 145 (2010) ........................................................ 9

*In re Vioxx Class Cases,*
   180 Cal. App. 4th 116, 131 (2009) .............................................. 12

**Federal Statutes/Rules**

18 U.S.C. § 1964(c) .............................................................................. 7

Fed. R. Civ. P. 23 .............................................................. 2, 3, 4, 15

Case No. 10-cv-0940 GPC (WVG)

Defendants, Trump University, LLC and Donald J. Trump, hereby submit this Reply Memorandum of Points and Authorities in Support of their Motion for Decertification of Class Action.

## I.   SUMMARY OF REASONS WHY THE CLASSES MUST BE DECERTIFIED

In their Motion for Decertification of Class Action ("Motion"), Defendants demonstrated that Plaintiffs' Full-Refund theory has been resoundingly rejected as an appropriate measure of damages in cases such as this – requiring that the Court decertify the classes for failure to provide evidence of a workable damages model.  Plaintiffs' opposition utterly fails to show otherwise.  Instead, Plaintiffs attempt to convince this Court to accept their Full-Refund theory based on inapposite cases dealing with counterfeit merchandise, "illegal" products, products with no inherent value (such as "health products" with no actual health benefits), or those where no product or service was actually provided – i.e. cases where the products or services were without question valueless.  None of these cases, however, are remotely close to the factual situation presented here – where there is indisputable testimony from the named Plaintiffs and class members that TU provided value.

Plaintiffs also fail to distinguish the cases cited by Defendants.  Defendants' authority conclusively demonstrates that, at this stage of the case, Plaintiffs must have a workable damages model – not just rely on a self-serving theory that they should get all of their money back because they say so.  Plaintiffs cannot escape the reality that, regardless of what alleged misrepresentations were made about TU's services, TU provided the fundamental service it offered: a real estate education.  As such, it is directly comparable to cases where a consumer purchased a product, such as pomegranate juice, based on alleged representations about the benefits of such juice.  Just as in those cases where consumers allegedly did not receive the promised benefits of the product, but received something of intrinsic value (i.e. a juice that provided hydration or flavor, etc.) – ///

even if TU did not fulfill all of its promises, it still provided the core product: a real estate education which indisputably had value.

Thus, the Court should grant Defendants' Motion and decertify all of the classes.

## II.  ARGUMENT

### A.  Plaintiffs Have Failed to Meet their Burden of Proving that Rule 23's Certification Requirements are Still Met

Plaintiffs do not contest the Court's obligation to decertify a class where continued certification is not warranted.  *See, e.g., Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982) ("Even after a certification order is entered the judge remains free to modify it in light of subsequent developments in the litigation.").  Nevertheless, Plaintiffs implore the Court to rest on its initial class certification decision based on two procedural grounds: (1) that it is Defendants' burden to prove that the class certification requirements are no longer met; and (2) that Defendants are seeking a "do-over." Both of these grounds are meritless.

First, as Defendants pointed out in their Motion, the Ninth Circuit held in *Marlo v. UPS, Inc.,* 639 F.3d 942, 947-48 (9th Cir. 2011), that it is Plaintiffs' burden to prove that class certification remains appropriate on a motion to decertify.  Motion at p. 2; *see also Schulein v. Petroleum Dev. Corp.,* 2014 WL 2179341, at *3 (C.D. Cal. May 19, 2014) ("Even on a motion to decertify a class, the party seeking to maintain class certification bears the burden of demonstrating that the Rule 23 requirements are satisfied.")  While Plaintiffs attempt to minimize the binding nature of *Marlo*, the fact that Plaintiffs retain the burden of proving that the class certification requirements are met even after an initial class certification decision remains the law and is so for good reason.  "Because class certification decisions are 'inherently tentative' and *Dukes* teaches that the requirements of Rule 23 must 'actually' be met, plaintiffs bear the ultimate burden of demonstrating that the elements of class certification are satisfied."  *Negrete v. Allianz Life Ins. Co of N. Amer.,* 287 F.R.D. 590, 598 n.1 (C.D. Cal 2012).

///

Case No. 10-cv-0940 GPC (WVG)

Plaintiffs' rationale that the burden should fall on Defendants as the moving party is also unavailing and has been soundly rejected:

> According to the normal practice followed in regard to motions, the proponent of a motion bears the initial burden of showing that the motion should be granted. However, in the case of a motion to decertify a class, the Ninth Circuit rule is that the party resisting the motion bears the burden of showing that motion should not be granted.

*Campbell v. Pricewaterhousecoopers, LLP,* 287 F.R.D. 615, 619 (E.D. Cal. 2012) (citing *Marlo,* 639 F.3d at 947).

Plaintiffs' authority to the contrary, an unpublished district court decision, *In re The Apple iPod iTunes Antitrust Litig.,* 2014 WL 6783763, at *5 (N.D. Cal. Nov. 25, 2014), cannot overcome this well-reasoned precedent.[1] Without any substantive discussion of *Marlo,* the *Apple* court merely followed two other cases within the Northern District and summarily dismissed *Marlo* as not squarely addressing the issue of who bears the burden on a decertification motion. Contrary to these non-binding decisions, *Marlo* remains the law of the Ninth Circuit and is binding on this Court.

Second, Plaintiffs argue that Defendants have "no new facts, no new binding law, and no new developments that justify decertification." Plaintiffs' Opposition to

---

[1] Plaintiffs also cite *Stiller v. Costco Wholesale Corp.,* 298 F.R.D. 611, 623 (S.D. Cal. 2014), where this Court relied on a pre-*Marlo* case, *Iorio v. Allianz Life Ins. Co. of N. Am.,* 2008 WL 8929013, at *23 (S.D. Cal. July 8, 2008), which held that defendants carried the burden on a decertification motion. *Stiller* did not address *Marlo* and in relying on a pre-*Marlo* case, its rationale was in error. *See Negrete,* 287 F.R.D. at 598 ("To the extent that pre-*Marlo* cases conclude that a defendant bears the burden on a motion to decertify of demonstrating that 'the elements of Rule 23 have not been established,' these cases are no longer good law.") (internal citations omitted). *Stiller* also inexplicably departed from this Court's previous recognition that *Marlo* was binding authority on the standard for decertification in *In re Nat'l West. Life Ins. Deferred Annuities Litig.,* 2013 WL 593414, at *2 (S.D. Cal. Feb. 14, 2013) (holding that following *Marlo,* "[i]n considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met.") Similarly¸ *Gonzales v. Arrow Fin. Servs. LLC,* 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007), also relied on by Plaintiffs, was decided pre-*Marlo* and is therefore no longer good law.

Defendants' Motion for Decertification of Class Action ("Opp.") at p. 4. This is also without merit.

On a motion for decertification, the court must consider "subsequent developments in the litigation," *Falcon,* 457 U.S. at 160, including "previous substantive rulings in the context of the history of the case, and . . . the nature and range of proof necessary to establish the class-wide allegations." *Marlo v. UPS,* 251 F.R.D. 476, 479 (N.D. Cal. 2008). Plaintiffs' authority does not contest this; but rather supports the Court's ability to reopen the class certification analysis at any time there is *any* change in the litigation. *See, e.g., In re Nat'l West. Life Ins. Deferred Annuities Litig.,* 2013 WL 593414, at *2 (S.D. Cal. July 12, 2010) (decertification analysis appropriate in light of new case law and the taking of class member depositions); *Guadiana v. State Farm Fire & Cas. Co.,* 2014 WL 977671, at *3 (D. Ariz. Mar. 13, 2014) (re-addressing whether class certification was appropriate in light of new case law).[2] Further, in the decertification context, arguments that Defendants are rehashing arguments made at the class certification stage are not well-taken:

> Plaintiffs assert that because Defendants are presenting arguments already addressed in the class certification process, the motion should be construed as a motion for reconsideration. Given the clarity of the above-cited law governing decertification, this contention by Plaintiffs is rejected.

*Arrendondo v. Delano Farms Co.,* 301 F.R.D. 493, 502 (E.D. Cal. 2014).

Plaintiffs' position also ignores the key change in the procedural posture of this case. At the class certification stage, discovery (including expert discovery) was still open. Thus, Plaintiffs needed to only show a "theory" of damages in order to survive the

---

[2] Plaintiffs' alleged authority supporting its argument that "do-overs" are not permitted similarly do not support the proposition for which they are cited. In *Chavez v. Blue Sky Nat'l Bev. Co.,* 2011 U.S. Dist. LEXIS 109738, at *31-32 (N.D. Cal. Sept. 27, 2011), *Otsuka v. Polo Ralph Lauren Corp.,* 2010 WL 366653, at *5-6 (N.D. Cal. Jan. 25, 2010) and *Ilorio,* 2008 WL 8929013, at *27, the decertification motions were not denied for failure to present new facts or law, but because the new evidence and argument presented did not show a failure to meet the Rule 23 requirements.

initial class certification hurdle.  Now, discovery (including expert discovery) is closed.  As a result, Plaintiffs must do more than present a "theory" – they must be able to show that such theory translates into a workable model for proving damages, *see, e.g., In re POM Wonderful LLC,* 2014 WL1225184, at *3 (C.D. Cal. Mar. 25, 2014).  This is something they have failed to do.  Worse, the deadline for Plaintiffs to designate a damage expert has now passed.  These facts alone are enough to constitute a changed circumstance warranting decertification.

Plaintiffs also ignore the *new* evidence presented to the Court, namely, the deposition testimony of class members who admit to receiving value from Trump University.  Motion at pp. 6-9; 11-13.  While Plaintiffs, citing *Donovan v. Philip Morris USA, Inc.,* 2012 U.S. Dist. LEXIS 37974, at *27 (D. Mass. Mar. 21, 2012), argue that this *new* deposition testimony should be ignored because it "echoes" evidence submitted in support of Defendants' opposition to class certification, *Donovan* doesn't even address the issue, but rather contains a thorough analysis by the court of whether decertification was appropriate under the particular circumstances of the case.[3]  In any event, the Court cannot, at this stage, simply turn a blind eye to the definitive proof that Plaintiffs' damages "theory" has proven to be unworkable in the context of this case.

In sum, this is not a "do-over."  To the contrary, the procedural posture of the case and Plaintiffs' failure to provide any evidence of a workable damages model makes decertification appropriate here.

## B.   Plaintiffs' Self-Serving Damages Theory Is Insufficient Under *Comcast*

At this stage of the case, there is no doubt that Plaintiffs' case boils down to three claimed misrepresentations: "(1) TU was an accredited University; (2) students would be taught by real estate experts, professors, and mentors hand-selected by Mr. Trump; and

---

[3] Moreover, Plaintiffs' argument to that effect invites the Court to commit a due process violation:  "a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Duran v. U.S. Bank Nat'l Assoc.*, 59 Cal. 4th 1, 35 (2014) (citing *Wal-Mart Stores, Inc. v. Dukes* 564 U.S. ___, 131 S.Ct. 2541, 2561 (2011)).

(3) students would receive one year of expert support and mentoring." Dkt. No. 298 at 4.
It is therefore Plaintiffs' "theory" that because Defendants allegedly made such
misrepresentations, Plaintiffs did not get what they paid for.  Of course, seeking the
highest recovery possible, Plaintiffs seek a full-refund of their purchase price paid to TU.
However, to meet the requirements of *Comcast v. Behrend,* 133 S. Ct. 1426 (2013),
Plaintiffs must have a **method** of proving damages based on their liability theories.
Motion at 2 (citing *In re Conagra Foods, Inc.,* 302 F.R.D. 537, 578 (C.D. Cal. 2014)
("*Comcast* established that 'plaintiffs' method of proving damages must be tied to their
theory of liability.'")).

Here, Plaintiffs have failed to provide any **method** of proving their damages.
Instead, they ask this Court to simply rely on their own self-serving claim that they
received nothing of value despite their own testimony (and that of class members) that
what they received from TU had at least *some* value.  Motion at 6-9; 11-13.  As discussed
in the Motion and further below, without any expert testimony providing a method
whereby Plaintiffs' can prove that TU was in fact valueless as to every class member, the
California, Florida, and New York classes must all be decertified.[4]

**C.**   **Plaintiffs Improperly Seek a Windfall Recovery**

Defendants do not contest that the proper measure of damages seeks to "make
whole, equitably, the victim of an unfair practice."  *Day v. AT & T Corp.*, 63 Cal. App.
4th 325, 339 (1998).  However, as recognized in *Day*, to make a party whole, they are

---

[4] Plaintiffs' reliance on the Court's order certifying a class in *Cohen v. Trump,* No. 3:13-cv-02519-GPC (WVG) for its position that a full-refund damages model comports with *Comcast* is misleading.  In *Cohen,* the Court recognized that the full refund model is **not** appropriate in cases involving restitution.  *See Cohen* Dkt. No. 53 at 21 ("Although some courts have found a 'full refund' model of damages inappropriate where the plaintiff's theory of liability seeks restitutionary damages, *see Werdebaugh v. Blue Diamond Growers,* 2014 WL 2191901, at *22 (N.D. Cal. Oct. 2, 2013), Plaintiff brings this claim under RICO, which provides for statutory trebled damages, attorney's fees, and cost of suit, 18 U.S.C. § 1964(c).").  Thus, the *Cohen* class certification order supports Defendants' position here – that the full-refund model is not appropriate in this case, where Plaintiffs seek restitution.

only entitled to "measurable amounts which are wrongfully taken." *Id.* The cases cited by Plaintiffs arguing that the Court may order full-recovery as restitution actually prove Defendants' point – that full-restitution is inappropriate if the alleged victims received some value.  For example, in *People ex rel. Kennedy v. Beaumont Invest., Ltd.*, 11 Cal. App. 4th 102, 132 (2003), a case involving a violation of a mobile home rent control ordinance, the restitution awarded by the court was only the amount above what was allowed by the ordinance.  In other words, those class members did not receive their entire rent back, just the amount above what they would have otherwise paid.

The "seminal" case relied on by Plaintiffs, *People v. The Superior Court of Los Angeles County*, 9 Cal. 3d 283 (1973), does not provide otherwise.  Instead, in *People*, the court merely ruled that the court below erred in striking restitution from the prayer for relief in Plaintiff's complaint.  Thus, contrary to what Plaintiffs lead this Court to believe, their authority does not support a full-refund theory where there is evidence that the alleged victims received value.  The law simply does not support providing Plaintiffs with an amount beyond what would make them whole – which is what Plaintiffs seek here.

### D. <u>Without a Valid Damages Theory, Plaintiffs' California Classes Must Be Decertified</u>

#### 1. *Plaintiffs' Full-Refund Theory is inconsistent with the law*

In their Motion, Defendants demonstrated that the full-refund model is entirely inconsistent with the well-established case law finding that where a product has at least some value, the full-refund model is improper.  Motion at 4-5.  Nevertheless, as anticipated by Defendants, Plaintiffs attempt to fit a square peg into a round hole by analogizing their case to those where a full-refund was appropriate.  None of the cases cited by Plaintiffs are persuasive, however, as each involved a product or service that clearly had no value – either because (i) the product was a "health" or medicinal product

///

///

Case No. 10-cv-0940 GPC (WVG)

that didn't provide any health benefit[5] or (ii) the consumer did not receive **anything** for their purchase price.[6]

Plaintiffs also rely on *FTC v. Figgie Int'l*, 994 F.2d 595, 605-06 (9th Cir. 1993), a case involving heat detectors which was brought under the Federal Trade Commission Act ("FTC Act"). However, not only is the FTC Act inapplicable here, but in *Figgie*, the court held that consumers were only eligible for a full-refund if they had returned the heat detectors they had purchased. *Id.* Those consumers who chose to keep the product could not recover any refund. *Id.*

Similarly misplaced is Plaintiffs' reliance on *Fed. Trade Commission v. Ivy Capital*, 2013 WL 1224613, at *17 (D. Nev. Mar. 26, 2013), where the Court reasoned that a full-recovery was proper because "Defendants have not shown a single customer that paid off their investment. Nor have defendants shown a single business, after being 'coached' by defendants that could be defined as "successful" under any proper definition of the term." *Id.* at *16.

Here, unlike *Figgie*, TU students certainly cannot return the knowledge and experience that they obtained from TU. Further, unlike *Ivy Capital*, Defendants have shown that students who utilized its teachings have made money and parlayed what they learned into successful businesses. *See*, *e.g.*, ECF No. 380-6 at Ex. 7; 380-6 at Ex. 11. Thus, it cannot be said that there was no possible value to TU's services. To the contrary,

---

[5] *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014) (homeopathic drugs that were completely ineffective had no value); *Rikos v. The Proctor & Gamble Co.*, 2014 U.S. Dist. LEXIS 109302, at *45 (S.D. Ohio June 19, 2014) (probiotic supplement filled with bacteria was valueless if the bacteria did nothing); *Ortega v. Natural Balance, Inc.,* 300 F.R.D. 422, 430 ( C.D. Cal. 2014) (ineffective dietary supplement was valueless); *Allen v. Similasan Corp.,* 2015 WL 1533463 (S.D. Cal. Mar. 30, 2015) (homeopathic products without benefit were valueless); *Lee v. Carter-Reed Co., LLC,* 203 N.J. 496, 527-28 (2010) (ineffective dietary supplement was valueless).
[6] See *Hahn v. Massage Envy Franchising, LLC*, 2014 WL 5100220, at *17 (S.D. Cal. Sept. 25, 2014) (customer did not receive what they paid for - a monthly massage); *People ex rel Harris v. Sarpas*, 225 Cal. App. 4th 1539, 1546 (2014) (home loan modification company had no evidence they "ever obtained a loan modification, or did anything of value, for any customer").

4820-0392-3747.2

numerous students have testified under oath that they received value from Trump University.

Equally unavailing is Plaintiffs' attempt to analogize this to a series of counterfeit products cases.  In those cases, including *United States v. Kennedy,* 726 F.3d 986 (7th Cir. 2013) – a criminal case where restitution to the purchasers of counterfeit artwork was the amount paid for the artwork – there was never a question as to whether the counterfeit artwork was valueless.  Instead, the issue was whether the government had sufficient proof of payments of victims in order to determine their actual loss.

Finally, Plaintiffs' attempt to analogize TU to an "illegal" product is meritless.  Plaintiffs' authority, in *Steroid Hormone Product Cases,* 181 Cal. App. 4th 145, 160 (2010), did not even address value because the product in question was a controlled substance that was by definition illegal to possess without a prescription.  Unlike the controlled substance in *Steroid Hormone,* there is nothing inherently illegal about providing a real estate education.[7]  Nor does the use of an improper name for a business make the services provided by such business illegal.  Furthermore, the use of the term "university" in its name without a license as required by the State of New York, cannot be grounds for holding that an entire operation is "illegal" – especially extraterritorially.  No law in California or Florida prohibits the use of the name "university" by a business.

In short, none of the cases relied on by Plaintiffs are analogous to the facts here.  Here, the seminars and mentorships happened; TU's programs were not illusory.  Plaintiffs have not proved that the seminars/mentorship had no other intrinsic value or did not provide real estate investing education.  Simply put, absent proof that TU's programs

///

///

---

[7] Even if TU ran afoul of New York's licensing regulations, doing so is not prima facie evidence of a deceptive business practice. *People of the State of N.Y. v. Trump Entrepreneur Initiative LLC*, 2014 N.Y. Misc. LEXIS 4533, at *21 (N.Y. Sup. Ct., Oct. 8, 2014).

Case No. 10-cv-0940 GPC (WVG)

had no intrinsic value, a full refund cannot be allowed without creating an improper windfall for Plaintiffs.[8]

### 2.    The law relied on by Defendants is directly on point

Plaintiffs attempt to minimize the import of the cases cited by Defendants demonstrating that where there is an alleged misrepresentation in the marketing of a product but the product still has some value independent of the misrepresentation, a full-refund theory is inappropriate, falls flat.  Plaintiffs try to distinguish the case law by arguing that in the "mislabeling cases," "plaintiffs received essentially what they set out to buy, but allege some lesser attribute lacking" but here, Plaintiffs did not receive any of what they set out to buy.  Opp. at 18.  This position could not be farther from reality.

For example, Plaintiffs attempt to distinguish *POM Wonderful,* 2014 WL 1225184, at *3 by claiming that defendant's promised health benefits were simply an ancillary benefit to the product consumers purchased – pomegranate juice.  Opp. at 18.  Similarly, Plaintiffs characterize the alleged misrepresentations in *Weredebaugh v. Blue Diamond Growers,* 2014 WL 2191901 (N.D. Cal. May 23, 2014) as "not the essence of what consumers purchased" and the promised benefits were only "minor" because consumers still received the core product – almond milk.  Opp. at 19.  Plaintiffs argue that the alleged misrepresentations by Defendants here are different because the only thing TU students purchased were the alleged core misrepresentations.  Opp. at 19 ("plaintiffs did not merely pay a "price premium" for Trump's secrets and mentoring from handpicked professors at his elite university – that was ***all*** defendants marketed and all students paid for, yet received ***none*** of it.").

---

[8] Plaintiffs incorrectly argue that "Defendants did not challenge certification of the California Financial Elder Abuse subclass."  Opp. at 8, fn. 8.  This is incorrect, as Defendants Motion seeks decertification of *all* certified class.  *See, e.g.* Motion at p. 3, heading 1 ("As a matter of law, the Full-Refund model cannot accurately measure classwide damages for <u>any</u> of the certified California claims.") (emphasis added).  Nor is Defendants argument premised on damages under the CLRA limited to restitution.

Plaintiffs' argument is nonsensical.  At its very core, just like the pomegranate juice in *POM Wonderful* and the almond milk in *Weredebaugh*, TU offered a product to consumers independent of the alleged misrepresentations – a real estate education. Whether students chose to attend TU's courses over another real estate education company because of the alleged misrepresentations that they would receive mentoring from handpicked instructors or that TU was an accredited university, does not change that TU provided a product, with at least some inherent value to its students.

Additionally, while Plaintiffs attempt to characterize the misrepresentations in the "mislabeling cases" as "minor," the plaintiffs in those cases would certainly disagree. Just as here, the "mislabeling cases" plaintiffs alleged to have purchased the products *because of* the alleged misrepresentations and would not have purchased them otherwise. *See, e.g.,Weredebaugh,* 2014 WL 2191901, at *1 ("Weredebaugh asserts that he 'reasonably relied on those statements for his purchase decision, and would not have bought the product otherwise.'").

### 3.    *Plaintiffs' argument that "satisfied" students can simply opt-out does not cure the defects in their damages model*

Recognizing that the evidence demonstrates that TU provided students with a least some value, Plaintiffs argue that any student believing that TU was not valueless can simply opt out of the lawsuit – essentially arguing that defects in allowing class certification can simply be cured through the opt-out mechanism.  Opp. at 17.  Such a proposition is simply not supported by the law, including the cases Plaintiffs cite.  For example, in *Bertulli v. Indep. Ass'n of Cont'l Pilots,* 242 F.3d 290, 298 (5th Cir. 2001), the Court held that the entire class had the same injury making certification appropriate and merely noted that to the extent class members were dissatisfied with the class representatives, they could opt-out of the class.  In *In re Nat'l W. Life Ins. Deferred Annuities Litig.,* 268 F.R.D. 652 (S.D. Cal. 2010) the court did not even discuss the opt-out procedure; it certified a class because all class members had the same injury.

///

There is no authority allowing a class to remain certified with a defective damages model, simply by reasoning – and assuming, without any basis in fact – that the damage model can be fixed through the opt-out process.  Such an argument simply demonstrates that the class mechanism is improper.

### 4. Plaintiffs' lack of expert testimony proving a workable method for measuring damages is fatal to their claims

Defendants have demonstrated that the law is clear – in order for this case to be properly maintained as a class action Plaintiffs must be able to establish a model that accounts for the "difference between what the plaintiff paid and the value of what the plaintiff received."  Motion at 3 (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009); *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 198 (2000) ("A party seeking restitution must generally return any benefit it has received.") (internal quotations and citations omitted)).  Plaintiffs' model: we say there is no value, so we get all of our money back and get to keep anything we learned or earned in real estate – just doesn't cut it.

While Defendants certainly do not contest that the fact finder is able to do basic math, because this is not a case where Plaintiffs are entitled to a full refund, a simple mathematical calculation is not possible.  As demonstrated in *POM Wonderful*, even expert testimony was not enough to demonstrate a workable method for computing damages.  Because the full-recovery theory does not work here (just as it did not work in *POM Wonderful*), Plaintiffs must present expert testimony of a workable method for proving damages – i.e. some valid method for determining the actual value (not a self-serving zero value).[9]  Such method requires the specialized knowledge, skill or education

---

[9] Plaintiffs also cannot credibly argue that a full-refund method is appropriate because there are no competitors in the marketplace, or that Defendants must prove competitors are not illegal.  *See* Opp. at p. 14 (citing *Krueger v. Wyeth, Inc.,* 2011 WL 8971449 (S.D. Cal. Mar. 30, 2011).  Unlike *Krueger,* involving a hormone therapy drug that was a unique product in the market, here it cannot be said that there are no other similar real estate seminar companies in the marketplace.  *See, e.g.* ECF No. 380-6 at Ex. 8

that a lay-person cannot provide.  Absent an expert to provide such a method, there is no evidentiary basis for the fact-finder to make a determination on restitution and/or damages.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988).  With no valid method for proving class-wide damages, the classes must be decertified.

**E.**  **Without a Valid Damages Theory, Plaintiffs' Florida and New York Classes Must Also be Decertified**

For the same reasons the California classes must be decertified, so too must the Florida and New York classes.  Like the California classes, Plaintiffs' theory that TU was valueless and therefore a full refund is appropriate simply is not supported by the law.  Nor is their argument that the evidence definitely showing that TU provided value should be disregarded simply because those students who admit to receiving value can opt-out of the class.  Even if those students choose to opt-out, it doesn't change the fact that TU provided at least some value to students, making a full-refund theory improper.

Just as with the California class members, Plaintiffs attempt to minimize the import of the admissions that TU provided at least some value to the Florida and NY class is unavailing.  For example, whether the Florida class representative JoAnn Everett self-servingly characterizes the information she received as "basic" or whether the information she received from her mentor came "only after TU refused to refund her money," the crucial flaw in Plaintiffs' damage theory remains – TU provided at least some value.  Similarly, whether New York class representative Brown characterizes what he learned as "minimal" or "too basic," it doesn't change the fact that he acknowledged that he did receive some value (Motion at 12:  "I would have paid $199 for it maybe $200.  As Trump University was clearly not valueless, Plaintiffs' damages theory fails and the Florida and New York subclasses must also be decertified.[10]

---

(testimony of instructor Gerald Martin regarding teaching at three other similar real estate investment seminar companies).

[10] Plaintiffs' "evidence" of actual damages – the total amount paid to TU (Everett paying $35,000 and Brown paying $25,000) is unavailing because it relies on their faulty full-refund theory.  Plaintiffs' introduction of a new element of their damages - that their

### F.   <u>Plaintiffs' Counsel are Inadequate</u>

Incredibly, Plaintiffs blame their inadequacy on Defendants – because Defendants object to Plaintiffs providing a single class notice for two separate and distinct cases.  In doing so, Plaintiffs ignore the simple truth – they waited almost an entire year, just weeks before the motion cut-off deadline, to even propose a class notice, causing a potential violation of the one-way intervention rule.[11]  Motion at 14.

Plaintiffs admit that this delay was not of Defendants' doing, but rather because they decided to postpone notice in this case until they sent notice in *Cohen*.  Thus, just as Defendants cautioned the Court at the class certification stage, with Plaintiffs' counsel representing two competing classes in two separate cases, there was a danger that class counsel would sacrifice one class for another.  ECF No. 280 at 7 ("Plaintiffs' offer to forego the claims in this case in favor of a different class action also demonstrates counsel's conflict of interest, a conflict that precludes them from providing adequate representation.  *Sullivan v. Chase Inv. Services of Boston, Inc.,* 79 F.R.D. 246, 258 (N.D. Cal. 1978) (counsel cannot represent two classes against the same defendants)").

///

///

---

actual damages include costs associated with withdrawals from an IRA (Everett) and credit card interest accrued (Brown) – demonstrates that damages cannot be determined on a class-wide basis but would be subject to individual inquiries of any purported additional damages of each class member.

[11] Defendants acknowledge that the one-way intervention rule is no longer a concern because the Court moved the hearings on Defendants motions until a date to be determined after the classes receive notice and an opportunity to opt-out or the Court decertifies the classes.  *See* Dkt. No. 403.  Nevertheless, Plaintiffs' counsels' delays resulted in the Court needing to postpone the hearings on Defendants' Motions for Summary Judgment solely due to Plaintiffs' unjustified delay.

1
2
3
4

Defendants' concern has proven correct, as Plaintiffs' counsel has done exactly that – they sacrificed the *Makaeff* classes (by not sending timely notice) for their bigger, potentially more lucrative class in *Cohen*.  In doing so, Plaintiffs' counsel have proven that they are inadequate.[12]

5

### III.   CONCLUSION

6
7

For the forgoing reasons, Defendants respectfully request that the Court decertify the Classes.

8
9

DATED:  April 24, 2015

**FOLEY & LARDNER LLP**
NANCY L. STAGG
BENJAMIN J. MORRIS

10
11

BY:   *S/ NANCY L. STAGG*

12
13

NANCY L. STAGG
**Attorneys for Defendants Trump University, LLC and Donald J. Trump**
nstagg@foley.com

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[12] Plaintiffs' argument that their delay should be excused because they were not ordered to send a notice by the Court is a red-herring.  Opp. at 24 (citing *Mendez v. Radec Corp.,* 260 F.R.D. 38 (W.D.N.Y. 2009)).  Federal Rule of Civil Procedure Rule 23 unambiguously provides that class members be notified "as soon as practicable" after a class is certified.  Plaintiffs cannot ignore this obligation simply because the Court did not first order them to comply.

-15-                    Case No. 10-cv-0940 GPC (WVG)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on **April 24, 2015** to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

*s/ Nancy L. Stagg*
Nancy L. Stagg

CERTIFICATE OF SERVICE
Case No. 10-cv-0940 GPC (WVG)

4820-0392-3747.2