```
 1                     UNITED STATES DISTRICT COURT

 2                 FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3   TARLA MAKAEFF, et al., on       .
     Behalf of Themselves and All    .
 4   Others Similarly Situated,      .
                                     . Docket
 5              Plaintiffs,          . No. 10-cv-00940-GPC-WVG
                     v.              .
 6                                   .
     TRUMP UNIVERSITY, LLC,          .
 7   et al.,                         .
                Defendants.          . San Diego, California
 8   . . . . . . . . . . . . . . .   . December 4, 2015

 9                    TRANSCRIPT OF STATUS HEARING
                BEFORE THE HONORABLE GONZALO P. CURIEL
10                  UNITED STATES DISTRICT JUDGE

11                       A-P-P-E-A-R-A-N-C-E-S
     For the Plaintiffs:     Robbins Geller Rudman & Dowd LLP
12                           655 West Broadway, Suite 1900
                             San Diego, California 92101
13                           By:  JASON A. FORGE, ESQ.
                                  RACHEL L. JENSEN, ESQ.
14                                DANIEL J. PFEFFERBAUM, ESQ.
                             - and -
15                           Zeldes Haeggquist & Eck, LLP
                             625 Broadway, Suite 1000
16                           San Diego, California 92101
                             By:  AMBER LEE ECK, ESQ.
17
     For the Defendants:     Foley & Lardner, LLP
18                           3579 Valley Centre Drive, Suite 300
                             San Diego, California 92130
19                           By:  NANCY L. STAGG, ESQ.
                                  BENJAMIN J. MORRIS, ESQ.
20                           - and -
                             O'Melveny & Myers LLP
21                           1999 Avenue of the Stars, Suite 700
                             Los Angeles, California 90067
22                           By:  DAVID L. KIRMAN, ESQ.
                                  DANIEL M. PETROCELLI, ESQ.
23
     Court Reporter:         Chari L. Possell, RPR, CRR
24                           333 West Broadway, Suite 420
                             San Diego, California 92101
25   Reported by Stenotype, Transcribed by Computer
```

```
 1          SAN DIEGO, CALIFORNIA; DECEMBER 4, 2015; 1:51 P.M.
 2                                -o0o-
 3          THE CLERK:  Number 8 on calendar, Case 10-cv-0940,
 4   Makaeff v. Trump University, et al., for a status hearing.
 5          THE COURT:  Appearances, please.
 6          MS. STAGG:  Good afternoon, Your Honor.  Nancy Stagg
 7   on behalf of the defendants.  Along with me is Mr. Morris.  And
 8   then I would like to introduce Mr. Petrocelli and Mr. Kirman,
 9   who will be joining us.
10          THE COURT:  Mr. Petrocelli and Mr. Kirman, welcome.
11          MR. PETROCELLI:  Good afternoon, Your Honor.
12          MR. KIRMAN:  Good afternoon, Your Honor.
13          MR. FORGE:  Good afternoon, Your Honor.  Jason Forge
14   on behalf of the plaintiffs and the class.  With me at counsel
15   table is Rachel Jensen, Dan Pfefferbaum, and Amber Eck.
16          THE COURT:  Good afternoon to you all.  Thank you for
17   being here.  We are here on a status conference to address
18   issues relating to pretrial conference, meet-and-confers, and a
19   plan to get this case tried.
20      Just so you know, at this point, this is my oldest case
21   that I have on my docket -- well, not exactly.  I have one
22   older case, and that's from 1951, and it was first handled by
23   Judge Weinberger, who the bankruptcy court is named after, and
24   it involves water rights, and it will probably be around long
25   after we are all gone.  But after that one, this is my oldest
```

1   case, so I am anxious to move it forward.
2       Obviously, everyone knows this is a unique set of
3   circumstances that we have here.  There's not many cases where
4   there's a presidential candidate who is one of the parties in
5   the case, and I appreciate that Mr. Trump himself would like to
6   have a trial date for any number of reasons, vindication or for
7   purposes of finality.  The plaintiffs would like a trial date
8   for purposes of vindication, finality.  Everyone would like
9   some form of finality in the foreseeable future.  And I expect
10  that there's probably not a perfect date for a trial date in
11  the next year or two, but it is my goal to set a trial next
12  year, and hopefully the middle of next year.
13      So at this point, I have previously issued and withdrawn a
14  proposed schedule for pretrial disclosures, meet-and-confers,
15  and a final pretrial conference.  The parties asked me to set
16  that aside given your holiday schedules.  I have.  And you
17  offered, as a possible alternative, a schedule which would have
18  the pretrial disclosures made on or before February 5, meet and
19  confer by February 12, proposed pretrial order submitted by
20  March 5, and a final pretrial conference on March 12.  I am
21  inclined to go with that and just confirm that that is
22  something that would work for the parties.
23          MR. PETROCELLI:  May I address the Court?
24          THE COURT:  Yes.
25          MR. PETROCELLI:  Your Honor, first of all, I

1  appreciate Your Honor acknowledging the unique circumstances of
2  this case, and it is true that it poses some rather unique
3  challenges.
4      On the setting of the trial, certainly, as much as we
5  would like finality and like to have these matters put to rest,
6  given the primary season -- March 1 is Super Tuesday.  We will
7  know a lot more by the spring.  I think the convention on the
8  Republican side is in July.  We would certainly request that a
9  trial not be set sooner than July so that Mr. Trump has the
10 ability to complete that part of the campaign.
11     With respect to the immediate issues, Your Honor, I have
12 had a chance, with counsel on our side, and also briefly
13 discussed with plaintiffs' counsel before we came in here, some
14 issues that have been raised by Your Honor's recent order
15 decertifying the case as to damages.  And rather than try to
16 discuss, address, and let alone resolve all of those today on
17 the fly, what my suggestion was to plaintiffs' counsel and to
18 the Court is that we sit down together, go over these issues,
19 and present either a joint plan to the Court or competing plans
20 to the Court, and then the Court make some rulings.
21     It's our view that before the case can be tried, either
22 one or any phase of the case, we need some clarity and
23 certainty on exactly what the Court intends to try in which
24 phase of the case, and I have identified a couple of those
25 issues to plaintiffs' counsel.

1       And I think the best way to deal with this is our just
2  putting it in writing and letting the Court read it and
3  consider it and then come back, you know, whenever the Court's
4  calendar would permit early in the year to address these
5  issues.
6       It will also include, for example, the question of
7  whether, when we enter into the damages phase of this case, who
8  are the plaintiffs who are going to stand up and participate in
9  this case?  It's one thing not to opt out of a class when you
10 get a notice in the mail.  It's quite another thing to want to
11 be a natural plaintiff who has to come in and prove damages.
12 And I believe that due process and other considerations entitle
13 us to know who the plaintiffs are before we try any phase of
14 this case so we know what kind of claims and what kind of
15 exposure we are facing.  And that's one issue that I have
16 identified.
17      Another issue I have identified is we believe that
18 discovery should be allowed with respect to the plaintiffs who
19 intend to participate in any damages phase of this case so that
20 we can examine the plaintiffs before trial on whether and to
21 what extent they were harmed and whether any of these alleged
22 representations caused them any harm.
23      One of the questions on my mind is, for example, the issue
24 of causation.  In certain cases, causation is not really an
25 issue once you determine liability issues on a classwide basis.

1  I can think of a wage-and-hour or a number of employment cases
2  as an example.  But in a case like this, I don't think you can
3  extricate or decouple the question of causation from the
4  question of damage because, for example, if a person were to
5  say, when we were examining them on whether they got any value
6  from these courses, whether they were useful, whether they
7  learned anything, whether any of these representations mattered
8  to them, they might say no, they didn't.
9           THE COURT:  Mr. Petrocelli, I understand there are a
10 number of remaining questions, and I appreciate that you at
11 this point are thoughtfully identifying them, you are flagging
12 them.  And it's apparent that we are in an area that doesn't
13 have a lot of guidance in terms of what do we do next.  There's
14 hundreds if not thousands of cases that deal with issues
15 involving class certification, predominance as it relates to
16 damages and other issues; but once you get to class action
17 trials, there's not that many.  Once you get to class action
18 trials that are bifurcated, there's even less.  So there's not
19 a lot of guidance out there.
20      And you will have different commentators, from Newberg and
21 other sources, that provide possible suggestions, and they are
22 floated.  There's not a lot of, kind of, testing of these
23 models.  And it may be that that's what we are going to do, is
24 we are going to test some of these models.
25           So I am certainly open to hear from the parties what they

1  think makes sense.  As a starting point, I would expect that
2  you all are going to look closely at the lay of the land in
3  terms of cases where you actually have had a class certified,
4  that you had a bifurcation, and what the court did at trial.
5  There's probably not going to be that many cases, but you are
6  going to be able to find them.  And you will hopefully be in a
7  position to see what worked, what didn't work, what made it to
8  the appellate level to be tested there.  And so you will start
9  with that as a starting point, and then you will meet and
10 confer, and to the extent that you can agree on something, you
11 will.  I expect that it won't be that easy.  I will have to
12 intervene -- that's my job -- and come up with a solution.
13      One of the things that I have been kicking around in my
14 mind -- because I have been thinking about this as well, as I
15 am sure you all have -- is the prospect of bifurcating as to
16 liability.  And keeping in mind that we have both issues at law
17 and equitable-based claims, 17200 and such.  And then as to the
18 named plaintiff representatives, in the event that the
19 plaintiffs prevail, maybe continue with damages only as to
20 those individuals.
21      I am not sure what your views on that are, that we would
22 do it with the same original jury that were to find liability
23 or at a later point in time.  But that's one of the things I am
24 thinking about; at a minimum, we would have the action
25 concluded as to the representative parties.  And then as to the

1  remaining parties, if liability was found, then we would be in
2  a position to determine how do we go forward?  Is it special
3  masters?  Or through some kind of identification of certain
4  types of plaintiffs that have similar, kind of, expressed views
5  or positions and group them?  I don't know.  But I am looking
6  to counsel, and we have learned counsel, so there's no reason
7  that, between all of us, we can't make it through this.  That's
8  how I see it.
9          MR. PETROCELLI:  I concur with that approach, Your
10 Honor.  That's what I would ask the Court to give us permission
11 to do.
12         THE COURT:  I expect that you all will be looking at
13 this very closely on your own.  And I will direct you to meet
14 and confer and try to arrive at as many agreements on this as
15 you can.
16    And then I expect that, prior to the motion in limine
17 hearing date, that's when we will have, kind of, a
18 crystallization of a lot of this.  We will have crystallization
19 as to the parties' respective positions, the oppositions, and
20 then I will be able to look at it and fashion what I think is a
21 means to get us through this in a fair, reasonable manner.
22         MR. PETROCELLI:  I would be -- could we schedule a
23 schedule for us to meet and confer, and then come back on a
24 date in -- let's say in January to address some of these open
25 issues?

1  THE COURT: Let me ask. Is there any reason why, as
2 a starting point, we can't adopt this offered schedule of
3 March 12 for the final pretrial conference? And I will take
4 seriously what you asked as far as avoiding a trial in May or
5 June. And frankly, I was hoping for trial in June, but I
6 understand that this is an out-of-the-ordinary case, and
7 perhaps I can hold off.
8  MS. STAGG: Yes, Your Honor. One question, though,
9 with regard to, for example, the February 4 date --
10  THE COURT: Yes. Or February 5th?
11  MS. STAGG: I thought the Court said February 4 for
12 the disclosures. I am sorry. The 5th.
13   Are we talking about just doing the disclosures for the
14 bifurcated liability phase of the trial? That's one of the
15 issues. I am not sure what we are supposed to be doing for
16 that date, for example.
17  THE COURT: One of the things that I floated right
18 now was the possibility of going forward not only as to the
19 liability issues at the bifurcated trial, but afterwards, if
20 there was liability found, that we would proceed with the
21 damages issues as to only those named or those representatives
22 of the class.
23   Do you have any position on that or how that would affect
24 pretrial disclosure?
25  MS. STAGG: Well, obviously, if we understand what

1  the Court is expecting -- because one of the issues is we don't
2  even know who the plaintiffs -- the non-representative
3  plaintiffs would be of the damages phase.  I heard what the
4  Court is saying; you are saying with regard to only those four
5  named plaintiffs who are remaining on the class claims.  So the
6  Court is saying that those disclosures in February should be on
7  the whole trial, or just the bifurcated?
8         THE COURT:  It would certainly be as to liability.
9  And then my view is it would also be as to the representative
10 parties, the plaintiffs.
11     And then as far as beyond that, I would be inclined to say
12 that let's just wait and see what happens with liability.  If
13 the jury comes back in favor of Mr. Trump, then this is all a
14 nonissue and we would have gotten all dressed up with nowhere
15 to go.  If there is liability found against Mr. Trump, then in
16 August or whenever this trial occurs, we can regroup and see
17 where do we go from here?
18     By that point, we will have been in the position to
19 address or start talking about moving forward beyond liability
20 and whether or not it would be through the use of a special
21 master or through grouping of plaintiffs or some other means.
22     As far as discovery, I would be inclined to find that
23 discovery would be appropriate to some extent.
24     But at the same time, I don't pretend to know all the
25 answers at this point.  I don't think anyone does.  I am

1   looking for counsel to provide the Court with their expert
2   advice, opinions, pleadings on these issues.
3            MS. STAGG:  And one other issue in regard to those
4   disclosures, we may not, until we hear from the Court and have
5   met and conferred and have the Court resolve the issue,
6   understand where the line is between the liability and the
7   damages phase even as to those plaintiffs because of some of
8   the issues that counsel raised about causation.  And so, again,
9   I don't know that we are in a position -- nor may plaintiffs
10  be -- to say "This is Phase I, and this is Phase II."  We may
11  have to do the disclosures.  I just wanted to run that issue by
12  the Court as well.
13           THE COURT:  I think that brings up a fair question as
14  to whether or not this is a case that perhaps deserves a couple
15  of pretrial conferences.  And as a starting point, a pretrial
16  conference on March 12 I think does make sense.  And it may not
17  fully get us there, but I would hope that it would move us in
18  the right direction.  It would get us close to where we need to
19  be to set a motions in limine hearing date and a trial date.
20           MR. FORGE:  Jason Forge, Your Honor, for the
21  plaintiffs.
22       Your Honor, I don't think we have a whole lot of
23  disagreement with -- I don't think we have any disagreement
24  whatsoever with anything the Court raised.
25       The only thing I would ask, with respect to these dates --

1  obviously, we proposed them to the Court, so I am not
2  suggesting they are not doable.  They are doable.  Ideally, I
3  would ask for a little bit lengthier windows between the
4  different milestones because I think this is a case where we
5  have a majority of the witnesses who are not susceptible to
6  process in this district.  So we have taken roughly four dozen
7  depositions, and I have roughly 1,000 unique deposition
8  exhibits.  There's a lot of paperwork to get through.  There's
9  a lot of work to be done with the deposition designations.  And
10 I think that there's -- although we obviously have disagreed on
11 quite a lot of points, I think that building in a couple more
12 weeks here and a couple more weeks there would enable the
13 parties to at least pursue to a logical conclusion whether we
14 can reach some agreement on issues such as objections to
15 exhibits and deposition designations.  And I am happy to do it
16 now, or I can confer with counsel after, and we can make a new
17 proposal.
18       It would still have us on schedule for a trial in August,
19 if that winds up working out.  It just wouldn't be quite as
20 aggressive as the one that we proposed before, but it would
21 still work in terms of the timing that Your Honor suggested.
22           THE COURT:  All right.  I am amenable.  I am flexible
23 with respect to a little bit more give on those dates.
24       What are we are talking about?  Adding another two or
25 three weeks to each one of the dates?

1       MR. FORGE:  Basically, Your Honor, what we had
2  sketched out is we would wind up with a hearing on April 15.
3  The first date, the 26(a)(3) date, would move to February 12.
4  We would --
5       THE COURT:  I am sorry?  The pretrial disclosures?
6       MR. FORGE:  The pretrial disclosures date would be
7  February.  The parties would exchange objections to exhibits
8  and designations as well as counter-designations by March 4.
9  And essentially, from March 11 to 18, we would be meeting and
10 conferring about those issues.  I don't think, with this number
11 of depositions and this number of exhibits, setting one date to
12 meet and confer is realistic.
13      THE COURT:  So the meet-and-confer would need to
14 occur on or before March 18?
15      MR. FORGE:  Yes, Your Honor.
16    And then two weeks later, by April 1, plaintiffs would
17 provide the defendants with a draft trial order.  The parties
18 would meet and confer again.  And by April 8, we would submit
19 the pretrial order, pretrial conference order for the case, and
20 the hearing on April 15.
21      THE COURT:  All right.
22   Ms. Stagg?
23      MS. STAGG:  That's fine, Your Honor.
24      THE COURT:  Mr. Petrocelli?
25      MR. PETROCELLI:  Yes.

1              THE COURT:  I think that makes sense.
2              MR. FORGE:  Thank you, Your Honor.
3              THE COURT:  Then with respect to a follow-up pretrial
4    conference, I think we would be looking at a date around June.
5    I don't know if I need to set that at this point, but just to
6    let you know, that's kind of what I think makes sense with an
7    August trial date.  And then we would have motions in limine in
8    July, and then a trial date in August.  So that would be the
9    plan moving forward.
10             MR. FORGE:  Your Honor, I don't know if the Court
11   would -- if we want to tackle some of the issues and questions
12   Mr. Petrocelli raised, if we want to set up a schedule for that
13   now, we could work through concurrently.
14        What we are planning on doing is presenting the
15   disclosures and preparing this case for trial as we see it,
16   which is kind of along the lines of what Your Honor said:
17   Everything having to do with liability and taking it all the
18   way through damages with the named plaintiffs.  That might not
19   wind up being the case.  We might wind up doing something
20   differently.  But we are going to do that.
21             THE COURT:  Let me ask you, Mr. Forge, as to the case
22   in chief you will be presenting, do you have an estimate how
23   long it would take to present your case in chief?
24             MR. FORGE:  I think two weeks, Your Honor.  I think
25   two weeks.  I was thinking three weeks for the whole trial in

1  terms of liability, I was thinking, so roughly two weeks.

2              THE COURT:  Ms. Stagg, do you have any different view
3  on that?

4              MS. STAGG:  Your Honor, we had originally said 15
5  days, which was three weeks, for the whole trial.  So somewhere
6  in that vicinity I think is right.

7              THE COURT:  I see that this case could be presented
8  between two and three weeks on the liability, which I think is
9  one of the benefits of bifurcation, is that we don't have to go
10 another week, or two or three, with the damages if we don't
11 need to.

12      All right.  So I think that suggestion as far as other
13 dates to address issues Mr. Petrocelli identified -- rather
14 than I guess at this point etch it in stone, perhaps after
15 counsel gets moving on the disclosures, starts looking at the
16 issues, is able to identify a number of set issues that should
17 be addressed, perhaps before the pretrial conference or at
18 around the time of the pretrial conference.  And to the extent
19 that the parties have dates in mind, I would be inclined to
20 grant those requests.

21             MR. FORGE:  Okay.  We will speak with counsel, and I
22 am sure that's something on which we can agree.

23             THE COURT:  Yes.  I am sure.  So when it comes to
24 this, as a starting point, meet and confer; but then,
25 ultimately, by default, I will look at this and then see what

1  makes the most sense for everyone.
2              MR. FORGE:  Thank you, Your Honor.
3              MR. PETROCELLI:  Your Honor, it would be my thought
4  that, after going through the process you have described, if
5  there are issues that we believe need to be decided by the
6  Court, that we would be able to present those so that the Court
7  could consider them perhaps at the first pretrial conference?
8              THE COURT:  On one hand, I am not looking to revisit
9  motions, motion for summary judgment, motion for class
10 decertification.  At the same time, it may be, because of the
11 unique nature of this case, that almost two different motion in
12 limine hearing dates would be appropriate, one a month before,
13 which would relate to the evidentiary issues, and perhaps
14 another one at around the time of the pretrial conference, that
15 would look at some of the substantive issues.
16     So I am not promising you at this time that I will decide
17 any number of substantive issues if I believe it's kind of an
18 end run or trying to circumvent the Court's earlier rulings,
19 but I do agree that it makes sense to look at what we have and
20 identify potential problems so that we could avoid any issues
21 with the Ninth Circuit at some point in time.
22             MR. PETROCELLI:  Very well, Your Honor.
23             MR. FORGE:  Thank you, Your Honor.
24             THE COURT:  Is there anything else to address at this
25 moment?

```
 1             MR. FORGE:  Not from plaintiffs, Your Honor.
 2        Your Honor, would you like us to submit a proposed order
 3   with those dates I described?
 4             THE COURT:  We will issue an order.
 5             MR. FORGE:  Thank you, Your Honor.
 6             THE COURT:  Anything else from anyone?
 7             MS. STAGG:  No.  Thank you, Your Honor.
 8             THE COURT:  Thank you all for being here.  And I will
 9   see you soon.
10        (End of proceedings at 2:16 p.m.)
11                              -o0o-
```

```
 1                     C-E-R-T-I-F-I-C-A-T-I-O-N
 2
 3            I hereby certify that I am a duly appointed,
 4   qualified and acting official Court Reporter for the United
 5   States District Court; that the foregoing is a true and correct
 6   transcript of the proceedings had in the aforementioned cause;
 7   that said transcript is a true and correct transcription of my
 8   stenographic notes; and that the format used herein complies
 9   with rules and requirements of the United States Judicial
10   Conference.
11            DATED:  December 9, 2015, at San Diego,
12   California.
13
14                             /s/   Chari L. Possell
                               _____
15                             Chari L. Possell
                               CSR No. 9944, RPR, CRR
16
17
18
19
20
21
22
23
24
25
```