1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  DAVID L. KIRMAN (S.B. #235175)
   dkirman@omm.com
3  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars
4  Los Angeles, California  90067-6035
   Telephone:  (310) 553-6700
5  Facsimile:    (310) 246-6779

6  JILL A. MARTIN (S.B. #245626)
   jmartin@trumpnational.com
7  c/o TRUMP NATIONAL GOLF CLUB
   One Trump National Drive
8  Rancho Palos Verdes, CA 90275
   Telephone:  (310) 202-3225
9  Facsimile:    (310) 265-5522

10 Attorneys for Defendants
   DONALD J. TRUMP and TRUMP
11 UNIVERSITY, LLC

12                  UNITED STATES DISTRICT COURT

13                SOUTHERN DISTRICT OF CALIFORNIA

14

15 TARLA MAKAEFF, et al. on Behalf of        Case No. 10-CV-0940-GPC(WVG)
   Themselves and All Others Similarly
16 Situated,                                 **DEFENDANTS DONALD J.**
                                             **TRUMP'S AND TRUMP**
17                          Plaintiffs,       **UNIVERSITY'S**
                                             **MEMORANDUM OF POINTS**
18        v.                                  **AND AUTHORITIES IN**
                                             **OPPOSITION TO PLAINTIFF**
19 TRUMP UNIVERSITY, LLC et al.,             **TARLA MAKAEFF'S MOTION**
                                             **TO WITHDRAW**
20                          Defendants.
                                             **[DECLARATIONS OF DAVID L.**
21                                           **KIRMAN FILED**
                                             **CONCURRENTLY HEREWITH]**
22
                                             Hearing:  March 11, 2016
23                                           Time:  1:30 p.m.
                                             Courtroom:  2d
24                                           JUDGE:  Hon. Gonzalo P. Curiel
25

26

27

28
                                             DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
                                                  MOT. TO WITHDRAW
                                                  10-CV-0940-GPC(WVG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 2

    A.    TU's uniformly high approval rating reflected the quality of its programs. ........................................................................................... 2

    B.    Makaeff gave TU high praise until she had financial incentives to change her story. ............................................................................ 3

    C.    Makaeff has been the face of this class action case from the start. ....................................................................................................... 5

    D.    Other than Makaeff, Plaintiffs have played a game of musical chairs with their class representatives. ................................................. 6

    E.    Plaintiffs have relied on Makaeff in each and every key filing. ........... 7

III.  ANALYSIS ............................................................................................... 9

    A.    Legal standard .......................................................................................... 9

    B.    Makaeff was key to the Defendants' discovery strategy. ................... 10

    C.    Defendants formulated their trial strategy in reliance on Makaeff's sworn promise to testify at trial. ........................................ 11

    D.    Plaintiffs failed to provide any justifiable basis for their untimely request seeking Makaeff's withdrawal. .............................. 12

    E.    Plaintiffs' motion should be denied because it was brought in bad faith. ................................................................................................. 15

    F.    Key motions may have been decided differently without Makaeff as a class representative. ........................................................ 16

    G.    If Makaeff is dismissed from this action, dismissal is warranted. ....... 17

    H.    The Court must deny Makaeff's request for an unconstitutional prior restraint. ....................................................................................... 18

    I.    Final judgment is not appropriate. ....................................................... 18

IV.   CONCLUSION ...................................................................................... 22

1

# TABLE OF AUTHORITIES

2

3

**Page(s)**

4

**Cases**

5

6

*Becker v. Wells Fargo Bank, NA,*
   2012 U.S. Dist. LEXIS 91480 (E.D. Cal. June 29, 2012) ................................... 23

7

*Buller v. Owner Operator Indep. Driver Risk Retention Grp., Inc.,*
   461 F. Supp. 2d 757 (S.D. Ill. 2006) .................................................................... 16

8

9

*Catlin v. United States,*
   324 U.S. 229 (1945) ............................................................................................. 21

10

11

*Cent. Mont. Rail v. BNSF Ry. Co.,*
   422 F. App'x 636 (9th Cir. 2011) ........................................................................ 16

12

13

*Chambers v. Baltimore & Ohio R.R. Co.,*
   207 U.S. 142 (1907) ............................................................................................. 20

14

15

*Cromer v. Kraft Foods N. Am., Inc.,*
   390 F.3d 812 (4th Cir. 2004) ............................................................................... 20

16

17

*In re Currency Conversion Fee Antitrust Litig.,*
   No. M 21-95, 2004 WL 2453927 (S.D.N.Y. 2004) ............................................ 20

18

19

*Curtiss-Wright Corp. v. Gen. Elec. Co.,*
   446 U.S. 1 (1980) ................................................................................................. 21

20

21

*Davis v. Huskipower Outdoor Equip. Corp.,*
   936 F.2d 193 (5th Cir. 1991) ............................................................................... 16

22

*In re Exxon Valdez,*
   102 F.3d 429 (9th Cir. 1996) ............................................................................... 17

23

24

*In re Flash Memory Antitrust Litig.,*
   2010 U.S. Dist. LEXIS 59491 (N.D. Cal. June 9, 2010) .................................... 13

25

26

*In re Flash Memory Antitrust Litig.,*
   2010 U.S. Dist. LEXIS 66466 (N.D. Cal. June 9, 2010) .................................... 16

27

28

*Garcia v. Smith,*
   2014 U.S. Dist. LEXIS 5921 (S.D. Cal. Jan. 16, 2014) ............................... 19, 23

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

3

4

*Hamilton v. Firestone Tire & Rubber Co.*,
   679 F.2d 143 (9th Cir. 1982) ........................................................................ 9, 19

5

6

*Hamilton v. Rodriguez*,
   2013 U.S. Dist. LEXIS 107733 (N.D. Cal. July 31, 2013) ............................... 23

7

8

*Hancock v. Chi. Title Ins. Co.*,
   2010 U.S. Dist. LEXIS 102773 (N.D. Tex. Sept. 28, 2010) ............................. 16

9

*In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*,
   838 F.Supp. 109 (S.D.N.Y.1993) ....................................................................... 9

10

11

*Impact Fin. Servs., LLC v. Six400 Check Solutions, LLC*,
   2011 U.S. Dist. LEXIS 39738 (D. Ariz. Apr. 1, 2011) ..................................... 23

12

13

*James v. Price Stern Sloan*,
   283 F.3d 1064 (9th Cir. 2002) .......................................................................... 23

14

15

*Lancaster v. Tilton*,
   2007 WL 1807953 (N.D. Cal. June 21, 2007) .................................................... 9

16

17

*Lesti v. Wells Fargo Bank NA*,
   2014 U.S. Dist. LEXIS 27360 (M.D. Fla. Mar. 4, 2014) .................................. 16

18

19

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982) ......................................................................................... 20

20

*Manuel v. Shipyard Holdings*,
   2001 U.S. Dist. LEXIS 18097 (N.D. Cal. Nov. 5, 2001) .................................. 17

21

22

*Molski v. Evergreen Dynasty Corp.*,
   500 F.3d 1047 (9th Cir. 2007) .......................................................................... 20

23

24

*Morrison-Knudsen*,
   655 F.2d 962 (9th Cir. 1981) ............................................................................ 23

25

26

*Opperman v. Path, Inc.*,
   2015 U.S. Dist. LEXIS 171564 (N.D. Cal. Dec. 22, 2015) .............................. 10

27

28

*Osakan v. Apple Am. Grp.*,
   2010 U.S. Dist. LEXIS 53830 (N.D. Cal. May 5, 2010) ................................... 14

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Perdum v. Wells Fargo Bank, N.A.,*
   2015 U.S. Dist. LEXIS 122307 (N.D. Cal. Sept. 14, 2015) ................................ 16

*Robles v. Atl. Sounding Co.,*
   77 F. App'x 274 (5th Cir. 2003) .......................................................................... 16

*Schnall v. Annuity & Life Re (Holdings), Ltd.,*
   2007 U.S. Dist. LEXIS 74918 (D. Conn. Oct. 5, 2007) ...................................... 15

*Sears, Roebuck & Co. v. Mackey,*
   351 U.S. 427 (1956) ............................................................................................. 21

*Sherman v. Yahoo! Inc.,*
   2015 U.S. Dist. LEXIS 14032 (S.D. Cal. Feb. 5, 2015) .............................. 17, 19

*Sherman v. Yahoo! Inc.*
   2015 WL 473270 (S.D. Cal. Feb. 5, 2015) ......................................................... 10

*Soto v. Castlerock Farming & Transp., Inc.,*
   2011 U.S. Dist. LEXIS 87680 (E.D. Cal. Aug. 8, 2011) .................................... 13

*Stevedoring Servs. of Am. v. Armilla Int'l, B.V.,*
   889 F.2d 919 (9th Cir.1989) ................................................................................ 10

*United States v. Elliott,*
   2014 U.S. Dist. LEXIS 132942 (C.D. Cal. Sept. 3, 2014)................................... 23

*In re Urethane Antitrust Litig.,*
   2006 U.S. Dist. LEXIS 38503 (D. Kan. June 9, 2006) ....................................... 17

*In re Vitamins Antitrust Litig.,*
   198 F.R.D. 296 (D.D.C. 2000) ............................................................... 16, 19, 23

*Westlands Water Dist. v. United States,*
   100 F.3d 94 (9th Cir. 1996).......................................................................... 12, 19

*Wilkinson v. Greater Dayton Reg'l Transit Auth.,*
   2013 U.S. Dist. LEXIS 164382 (S.D. Ohio Dec. 10, 2013) ............................... 18

*Wood v. GCC Bend, LLC,*
   422 F.3d (9th Cir. 2005) ...................................................................................... 22

1
2

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

3
4

*Zagano v. Fordham Univ.,*
  900 F.2d 12 (2d Cir. 1990) ................................................................. 16

5

**Other Authorities**

6
7
8
9

*Buying a Trump Property, or So They Thought*,
  NY Times, May 12, 2011,
  http://www.nytimes.com/2011/05/13/nyregion/feeling-deceived-
  over-homes-that-were-trump-in-name-
  only.html?r=3&partner=rss&emc=rss.................................................... 7

10
11
12

*Lawsuit slams Donald Trump's online business school as a ripoff*,
  NY Daily News, May 4, 2010,
  http://www.nydailynews.com/news/money/lawsuit-slams-donald-
  trump-online-business-school-ripoff-article-1.446353 ......................... 7

13
14
15

*Trump Real Estate Courses Didn't Deliver, Suit Says*,
  SF Gate, May 4, 2011,
  http://www.sfgate.com/politics/article/Trump-real-estate-courses-
  didn-t-deliver-suit-2372823.php; .......................................................... 7

16

**Rules**

17
18

Fed. R. Civ. P. 41(a)(2).......................................................................... 9

19

Fed. R. Civ. P. 54(b) ..................................................................21, 22, 23

20
21
22
23
24
25
26
27
28

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

## I.    __INTRODUCTION__

After nearly six years of intensive litigation, well after the close of discovery, and in the midst of extensive trial preparation, Plaintiffs ask the Court not only to dismiss Tarla Makaeff as a named Plaintiff and lead class representative in this case, but also to allow her to renege on her sworn commitment to testify at trial. Make no mistake:  this would eviscerate much of what has transpired in this case and would cause irremediable prejudice to defendants.  Makaeff is *the* critical witness in this case—Plaintiffs deliberately, systematically, and successfully relied on her in every material respect in litigating this case:

- *The Complaint*.  Plaintiffs featured Makaeff to allege key claims against Trump University ("TU") and Donald J. Trump (collectively, "Defendants").

- *Class Certification*.  Plaintiffs relied heavily on Makaeff's two declarations—including her sworn promise to be available to testify at trial—and other key evidence to persuade the Court to certify the class.

- *Summary Judgment*.  Plaintiffs cited extensive Makaeff evidence to create disputes of material fact, which the Court relied upon to deny Defendants' motion for summary judgment.

- *Decertification*.  Plaintiffs cited Makaeff evidence on key issues to oppose Defendants' motion for decertification on liability.

Makaeff's central role in this litigation even extended beyond the courtroom and also included prosecuting Plaintiffs' claims in the press.  After filing this lawsuit, Makaeff embarked on a press tour to publicize her unproven allegations, conducting interviews with NBC, *Newsweek*, the *San Francisco Chronicle*, and the *New York Times*. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████

Now, after six years of using Makaeff to advance their positions in this case, Plaintiffs want to prevent Makaeff from being cross-examined by Defendants at

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT. TO WITHDRAW
10-CV-0940-GPC(WVG)

trial.  This demand for immunity is unprincipled, unjustified, and would cripple Defendants' ability to defend this case.  Makaeff's testimony, motives, and lack of credibility are all extremely damaging to Plaintiffs' case, and there is no basis whatsoever to insulate her from trial.  If Makaeff is no longer willing to perform as class representative or attend trial, dismissal of this case is warranted.

## II.   FACTUAL BACKGROUND

### A.   TU's uniformly high approval rating reflected the quality of its programs.

Between 2005 and 2010, over 10,000 students attended TU events and seminars.  Instructors, who were selected based on Mr. Trump's criteria and input, traveled to hotels across the country and taught real estate courses that incorporated Mr. Trump's case studies and philosophies.  TU's organizational mission was:

> [T]o provide educational programs and tools to help our clients achieve financial independence.  Our success is measured by the results that our clients achieve applying what they have learned from us in the real world.

Dkt. 195–4, Ex. 83, at 456.

TU executed its mission to provide students with high-quality real estate knowledge, while at the same time emphasizing that each student's potential—and in turn, their success—would be achieved only through the student's diligence, dedication, and hard work.  TU taught students these foundational principles, and the teachings were premised on Mr. Trump's own beliefs.  Indeed, on the back cover of TU's book, *Trump 101*, Mr. Trump encouraged TU students:

> I've known people who had fantastic ideas, but couldn't get them off the ground because they approached everything weakly.  They thought that their ideas would somehow take off by themselves, or that just coming up with an idea was enough.  Let me tell you something —it's not enough.  It will never be enough.  You have to put the idea into action.  If you don't have the motivation, and enthusiasm, your great idea will simply sit on top of your desk or inside your head and go nowhere.

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

Kirman Decl. Ex. 1.[1]

TU emphasized self-responsibility in its coursework.  As one student testified:

> One of the things that was brought out in basically every seminar -- I believe it was every seminar that we had -- is that not only did . . . the instructor need[] to present the ideas, but the individuals needed to actually act.  So the word "act" was used many times.  Now you've learned.  Now you need to act.  You need to take action.  You need to take the next step to learn.  The next step to learn is you have to actually do it yourself.  Just hearing about it is one thing, but you have to be able to act to learn the rest.

Ex 2 at 102:23–103:16.

TU's focus on student achievement earned it uniformly high approval ratings.  Makaeff was one of the many satisfied TU students, and she personally attended TU classes, gave TU positive reviews, and even provided a videotaped testimonial extolling TU's merits.  *See* Dkt. 4, Exs. C–F; Dkt. 128 ¶ 74.

### B.    Makaeff gave TU high praise until she had financial incentives to change her story.

In August 2008, Makaeff attended one of TU's three-day programs titled "Fast Track to Foreclosure Workshop," without availing herself of the free TU 90-minute preview.  She split the $1,495 fee for the three-day event with a friend (Dwin Ngo), who also attended.  There, Makaeff learned about the foreclosure process, how to structure foreclosure and short-sale transactions, how to use commercial financing, and how to improve her credit, among others.  At the end of the workshop, Makaeff expressed no dissatisfaction with the program.  She made no request for a refund.  Rather, she signed up for the TU "Trump Gold Elite" program at a cost of $34,995 entitling her to attend additional workshops, receive training publications, software, and other materials, and receive a three-day

---

[1] Unless otherwise indicated, all references to "Ex." refer to Exhibits attached to the Kirman Declaration.

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

1  mentoring session in the field from experienced instructors.  Makaeff accepted and

2  took advantage of every one of those benefits.

3      Indeed, Makaeff attended several additional TU courses and participated in

4  TU's in-field mentorship program, each time providing feedback exceeding her

5  rave reviews of the Fast Track to Foreclosure Workshop.  For example:

6          • Makaeff rated her field mentorship "excellent" in every category and

7            called her experience: "Amazing," *see* Dkt. 4, Ex D;

8          • Makaeff rated the asset protection retreat with J.J. Childers as

9            "excellent" in all categories, noting that the only things she wanted in

10           addition was for TU to provide "more experience in the field," *see*

11           Dkt. 4, Ex E; and

12         • Makaeff rated TU's Creative Financing workshop "excellent" across

13           the board, Dkt. 4, Ex. F.

14     This was a consistent theme:  while Makaeff was attending courses at TU,

15 she thought TU was "great" and was "taking [her] down a good path."  Ex 3 at

16 408:5–13. ███████████████████████████████

17 ████████████████████████████████████████████

18 ████████████████████████████████████████████

19 ████████████████████████████████████

20     Makaeff repeatedly asked for (and received) additional services from TU far

21 in excess of what she paid for and what TU was obligated to provide.  Consistent

22 with TU's educational mission, it provided Makaeff additional support and training,

23 instructing her over and over again that she could achieve success only through

24 hard work and action.  *See, e.g.*, Ex 5 (email from Makaeff's mentor stating: "When

25 you live your life in fea[r] it is not worth living at all.  You go into Real Estate to

26 create wealth not to make a living.  Jump in and do not look back.").

27     Despite her education, Makaeff failed to achieve success in real estate.

28 Discovery has confirmed this was due not to any failure by TU, but to her own lack

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

of effort.  She simply did not put in the time, work, and perseverance necessary to achieve success.  Ex 6 at 82:16–23 (Makaeff's mentor explaining that Makaeff "did not put forth the steps to complete the tasks that were put out there and she did not follow through and maintain her appointments and actually put the effort forth to do what was put in front of her").  In fact, in the one real estate investment she  made, where she used her mother's money to invest in a deal in Las Vegas, Makaeff backed out of it and demanded her money back.  Ex. 3 at 446:1–4, 535:15–536:23.  As Makaeff later learned, if she had put in the effort and stuck with the investment, it would have yielded a $35,000 profit.  Ex. 7.

### C. Makaeff has been the face of this class action case from the start.

Only after she extracted the full benefits of TU's program for over a year did Makaeff do an about-face and decide to pursue a class-action lawsuit hoping for a full refund windfall and even an incentive award.  Initially, she wrote complaint letters to banking institutions and consumer protection agencies, claiming she reluctantly purchased the Trump Gold Elite program because instructors "guaranteed success" and used "high pressured sales techniques."  Directly contradicting her many positive reviews, Makaeff now describes TU's courses as "infomercials" offering "little useful, and vague at best, information."  As Makaeff was penning these complaints, she was shopping the case to plaintiffs' class action law firms.  Ex. 8.

When the class action complaint in this case was filed on April 30, 2010, the allegations closely mirrored Makaeff's complaint letters.  *See* Dkt. 1.  On June 6, 2010, Plaintiffs filed their First Amended Complaint ("FAC").  Dkt. 10.  Although the FAC listed additional class representatives, Makaeff remained the central figure.  *See* Dkt. 10 at 7.  Indeed, some allegations in the FAC expressly refer *only* to "Plaintiff" or "Makaeff" to support the class-wide allegations.  *See* Dkt. 10 at 17–18.

1      The Second Amended Complaint ("SAC") filed on December 16, 2010 was

2   no different:  Makaeff remained the only class representative singled out in the

3   complaint.  *See* Dkt. 41 at 22.  Plaintiffs subsequently filed the operative Third

4   Amended Complaint on September 26, 2012, which Defendants did not challenge,

5   based in part on allegations related to Makaeff.[2]  Dkt. 128.

6      After filing suit, Makaeff embarked on a press tour to publicize her

7   allegations, conducting interviews with multiple news organizations ████████

8   ████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11     **D.    Other than Makaeff, Plaintiffs have played a game of musical**

12         **chairs with their class representatives.**

13     While Makaeff remained the focus of this lawsuit, other class representatives

14  entered and exited this case.  In June 2010, Plaintiffs named four additional class

15  representatives in their FAC:  Brandon Keller, Ed Oberkrom, Patricia Murphy, and

16  Sheri Winkelmann.  *See* Dkt. 10.  Plaintiffs changed their mind and dropped

17  Winkelmann when they filed their SAC in December 2010.  *See* Dkt. 41.  Two

18  years later, Plaintiffs filed their TAC, which dropped Murphy and added three new

19  class representatives:  Sonny Low, J.R. Everett, and John Brown.  *See* Dkt. 128.

20  Keller and Oberkrom were later dismissed after the Court granted in part Plaintiffs'

21  motion for certification.

22     The only constant in this six-year-old case has been Makaeff, both in and out

23  of court, frequently promoting her role as lead Plaintiff through numerous media

24  outlets.[3]  ███████████████████████████████████████████████████████

---

[2]  Notably, Makaeff was also the only Plaintiff involved in TU's counterclaim,
which alleged causes of action based on defamation for the disparaging remarks
Makaeff made publicly about Trump University.  *See* Dkt. 4.

[3]  *Trump Real Estate Courses Didn't Deliver, Suit Says*, SF Gate, May 4, 2011,
http://www.sfgate.com/politics/article/Trump-real-estate-courses-didn-t-deliver-
suit-2372823.php; *Buying a Trump Property, or So They Thought*, NY Times, May
12, 2011,  http://www.nytimes.com/2011/05/13/nyregion/feeling-deceived-over-

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

1

2                                                                          Unsurprisingly,

3  Defendants have allocated countless resources during discovery toward Makaeff

4  and other class members whom Plaintiffs have since removed.  For example,

5  Defendants deposed Makaeff four times and Keller twice, exceeding the deposition

6  resources used for the remaining class representatives combined.

7        **E.     Plaintiffs have relied on Makaeff in key filings.**

8         The operative TAC contains numerous allegations that are specific to

9  Makaeff and that the other class representatives did not provide.  *See, e.g.*, TAC

10 ¶¶ 26, 50, 62, 68–74, 173.  Many of these allegations provided the foundation for

11 issues that Plaintiffs have raised throughout this litigation.  *See, e.g.*, TAC ¶ 70

12 (insufficient mentoring issue:  Makaeff alleges that her mentors would speak to her

13 for "two to three minutes, offering no practical advice" and then "mostly

14 disappeared"); ¶¶ 62, 73 (reliance issue:  Makaeff was allegedly told by TU that

15 "these deals are starting to POUR IN NOW"); ¶¶ 74, 173 (illegal practices issue:

16 Makaeff alone alleges that she was approached by the District Attorney's Office for

17 "illegal" practices taught to her by TU).

18        Indeed, Makaeff's factual allegations are by far the most robust of any class

19 representative, which Plaintiffs then used to achieve and maintain certification and

20 avoid dismissal.  In their opposition to Defendants' motion to dismiss, Plaintiffs

21 asserted Makaeff's standing to assert California statutory fraud claims against

22 Defendants.  *See* Dkt. 62 at 20.  In seeking class certification, Plaintiffs submitted

23 and cited to Makaeff's two declarations throughout their motion, Dkt. 122-1 at 31,

24 43, and reply, Dkt. 195 at 18, 19 n.12, 25, and this constituted important evidence

25 on the issues of class representative typicality and adequacy.  Of crucial

26 _____

27 homes-that-were-trump-in-name-only.html?r=3&partner=rss&emc=rss; *Lawsuit
   slams Donald Trump's online business school as a ripoff*, NY Daily News, May 4,
   2010, http://www.nydailynews.com/news/money/lawsuit-slams-donald-trump-

28 online-business-school-ripoff-article-1.446353.

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

significance, Makaeff swore: "**I also understand that I may be called to testify at trial in this case.  I am willing and able to fulfill all of my duties as a class representative.**"  Dkt. 122–3, Ex. 6 at 2 (emphasis added).

In opposing summary judgment, Plaintiffs again relied heavily on Makaeff evidence (including her declarations submitted in support of class certification) in successfully opposing Defendants' motion for summary judgment.  *See, e.g.*, Dkt. 386 at 17; 25 & nn.42, 45–46; 26 nn.48–49; 42–44.  For example, in arguing the issues of causation and reliance, Plaintiffs cited evidence from Makaeff to argue: (1) Makaeff "said it was important to her to be a part of TU because it had Trump's name and reputation behind it," *id.* at 42; (2) "[a] material question of fact exists as to whether Makaeff viewed the Trump video during the Fulfillment," *id.* at 42 n.61; (3) it was "important" to Makaeff that Mr. Trump "hand-picked" the "experts" teaching TU courses, *id.* at 43; and (4) "Makaeff . . . would not have purchased Trump programs had they known the truth," *id.* at 44.  The Court relied on these arguments and Makaeff-specific evidence in its order denying summary judgment to find that there was "a genuine dispute of material fact" regarding reliance "on core misrepresentations made by Mr. Trump."  *See* Dkt. 423 at 25–28.

Finally, in opposing decertification, Plaintiffs again cited extensively to Makaeff evidence.  *See, e.g.*, Dkt. 405 at 21, 23.  Plaintiffs used Makaeff to support their arguments that:  (1) "Trump's involvement with TU was the selling point," (2) "very little" information was taught at TU fulfillment workshops, (3) mentors provided only generic information that students could have obtained from a bookstore, and (4) the information taught by TU was illegal "and exposed Makaeff to the risk of criminal prosecution."  *Id.*  Based in part on this evidence, the Court denied Defendants' motion to decertify the class on liability issues.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# III.   ANALYSIS

## A.   Legal standard

Although Plaintiffs concede that Rule 41(a)(2) of the Federal Rules of Civil Procedure governs whether the Court should permit Makaeff to withdraw as a class representative, *see* Dkt. 443-1 at 6, Plaintiffs fail to articulate the correct legal standard.  Cherry-picking from *Lancaster v. Tilton*, 2007 WL 1807953, at *2 (N.D. Cal. June 21, 2007), Plaintiffs frame the legal standard for voluntary dismissal as a one-sided inquiry into the changed circumstances of the party seeking withdrawal, *see* Dkt. 443-1 at 5–6.  That is not the law.[4]

As this Court observed in *Sherman v. Yahoo! Inc.*, "In resolving a motion under Rule 41(a)(2), the Court must make three separate determinations: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed."  2015 WL 473270, at *2 (S.D. Cal. Feb. 5, 2015) (Curiel, J.).  The purpose of Rule 41(a)(2), this Court acknowledged, "is to permit a plaintiff to dismiss an action without prejudice *so long as the defendant will not be prejudiced, or unfairly affected by dismissal*."  *Id.* (quoting *Stevedoring Servs. of Am. v. Armilla Int'l, B.V.*, 889 F.2d 919, 921 (9th Cir. 1989)) (emphasis added).

---

[4]  Plaintiffs' own authority dispels their position.  *See Lancaster*, 2007 WL 1807953, at *2 ("[A] district court must not only consider the criteria of Rule 23(a) and (b) in light of factual and legal developments, but also whether the parties or the class would be unfairly prejudiced by a change in proceedings at that point." (emphasis added) (internal quotation marks omitted)).  The Ninth Circuit does, too.  *See Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982) ("[T]he district court must consider the prejudice to the defendant when considering plaintiffs' request for voluntary dismissal"); *see also In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F.Supp. 109, 115 (S.D.N.Y.1993) (denying request to allow withdrawal of named plaintiffs from class action suit where no new factual or legal developments were shown and where defendants had claimed the withdrawal would impair their defense).

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### B.      Makaeff was pivotal to the Defendants' discovery strategy.

Makaeff's role as the lead class representative shaped Defendants' discovery and litigation strategy.  Her removal would severely undermine much of the Defendants' substantial discovery efforts.  Courts have deemed this sufficient to constitute legal prejudice under Rule 41(a)(2).  *See Sherman*, 2015 WL 473270, at *4 ("The inability to conduct sufficient discovery for a defense can amount to legal prejudice."); *Opperman v. Path, Inc.*, 2015 U.S. Dist. LEXIS 171564, at *11 (N.D. Cal. Dec. 22, 2015) (same).

Defendants deposed Makaeff on four separate occasions, fully appreciating that this entire case could rise or fall based on Makaeff's testimony at trial on behalf of the class.  Defendants formulated their deposition strategy in reliance on Makaeff's sworn representations that she would testify at trial, *see, e.g.*, Dkt. 122-3, Ex. 6, and undertook her deposition to elicit admissions and evidence to disprove Makaeff's claims and expose her lack of credibility.  For example, during Makaeff's deposition:



- She admitted that her glowing video testimonial of TU was honest, explaining:  "At the time, I was about to do, I believe, the Vegas house deal with Robert [Vargas], and I was excited.  And so, that excitement came across in that video," Ex. 3 at 554:8–555:24;

- She contradicted her allegations that her mentors "disappeared" immediately after her in-field mentorship, testifying that she maintained email communications for over a month, Ex. 3 at 612:23– 613:13.

To be sure, this discovery deposition is no proxy for presenting Makaeff's testimony at trial, and surely her deposition would have been conducted differently had Makaeff not been the lead plaintiff who committed to testify at trial. Furthermore, Defendants would have sought additional evidence from absent class members residing in California or otherwise within the subpoena power of the Court. Defendants would have focused greater discovery on Sonny Low, the other California class representative. Instead, Defendants spent minimal time conducting discovery related to Low and other class members. For example, Low's deposition testimony spans 220 pages of transcript, while Makaeff's required 900 pages.

With discovery closed for over fourteen months, dismissing Makaeff at this late stage would preclude Defendants from mounting a full and fair defense. *See Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996) ("In this circuit, we have stated that a district court properly identified legal prejudice when the dismissal of a party would have rendered the remaining parties unable to conduct sufficient discovery to untangle complex . . . claims and adequately defend themselves against [the] charges[.]").

C.     **Defendants formulated their trial strategy in reliance on Makaeff's sworn promise to testify at trial.**

Defendants' defense at trial is centered on Makaeff. Defendants' recent pretrial disclosure filings make this abundantly clear. For example, in addition to calling Makaeff as a key defense witness, Defendants anticipate seeking a court order to compel two witnesses (Walter Grieves and Dwin Ngo) (1) who have intimate knowledge of Makaeff's experience at TU, and (2) who—unlike many of the witnesses in this case—are believed to be within the subpoena power of the

1  Court.  Defendants expect Grieves and Ngo to testify about Makaeff's positive

2  experience with TU as well as her pattern of starting but failing to complete

3  seminar programs.

4        In sum, Makaeff is not just a key witness, she has been an indispensable

5  party to this litigation since the outset.  Makaeff's participation in this case,

6  particularly as a live trial witness, is essential to the trial strategy and defense

7  Defendants have been developing for almost six years.  Courts have regularly

8  denied substitution of class representatives where, as here, allowing substitution

9  would prejudice defendants' ability to prepare their defense.  *See, e.g., Soto v.*

10 *Castlerock Farming & Transp., Inc.*, 2011 U.S. Dist. LEXIS 87680, at *19 (E.D.

11 Cal. Aug. 8, 2011) ("[A]llowing the naming of a new class representative would

12 unduly prejudice Defendant, because Defendant has been preparing arguments and

13 defenses based upon the identity of the class representatives who have been named

14 since 2009."); *In re Flash Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 59491,

15 at *74 (N.D. Cal. June 9, 2010) (defendants were entitled to prepare their defense

16 "based on the identities of the class representatives identified in the pleadings"); *see*

17 *also Osakan v. Apple Am. Grp.*, 2010 U.S. Dist. LEXIS 53830, at *13–14 (N.D.

18 Cal. May 5, 2010) (denying motion to amend because there was undue prejudice in

19 the "proposed joinder of four new class representatives [because]

20 Defendants . . . have been preparing their defense based on the identity of the class

21 representative  . . . identified in the original complaint as well as the amended

22 complaint").

23        **D.     Plaintiffs failed to provide any justifiable basis for their untimely**
24                **request seeking Makaeff's withdrawal.**

25        Plaintiffs assert that Makaeff should be dismissed from this case and from

26 any obligation to testify at trial because she has "endured health problems, family

27 loss, and financial troubles in the years since this case began."  Dkt. 443-1 at 3.

28 Makaeff also argues that her dismissal is warranted because "no one could have

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

1    anticipated that [Mr. Trump] would become a viable presidential candidate and a

2    24/7 media obsession as this case neared trial."  *Id.*

3          None of these excuses is a valid ground for Makaeff's withdrawal, let alone

4    her desire not to appear at trial.  Nor are they true.

17         After six years, Makaeff has few remaining duties as a lead class

18   representative; her only obligation of consequence is to appear at trial.  Makaeff

19   brought this lawsuit, allowed herself to become the public poster child for it, and

20   should be required to finish what she started and keep her sworn promises to the

21   class, the Defendants, and the Court to testify at trial.

22         Litigation is hard.  Witnesses are compelled all the time to testify in criminal

23   and civil trials across the country, whether young or old, rich or poor, healthy or ill.

24   This duty to participate in the court process is necessary to assure the reliability and

25   integrity of our justice system.  If third-party witnesses who have no stake in the

26   outcome of litigation can be—and are regularly—ordered to provide testimony at

27   trial, certainly the lead class representative who actively sought out this lawsuit

28   should not be permitted to disavow her commitment to testify, particularly in view

of her wholly inadequate reasons.[5]

Plaintiffs' unjustified delay in filing this motion is a well-recognized ground for denying Plaintiffs' motion.  *See, e.g.*, *Perdum v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 122307, at *3 (N.D. Cal. Sept. 14, 2015) ("When determining prejudice, a district court may consider such factors as the stage of litigation and the moving party's delay in requesting voluntary dismissal . . . ."); *see also Cent. Mont. Rail v. BNSF Ry. Co.*, 422 F. App'x 636, 638 (9th Cir. 2011) (upholding district court's consideration of delay in denying motion for voluntary dismissal); *In re Flash Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 66466, at *35–36 (N.D. Cal. June 9, 2010) (denying leave to amend and finding prejudice and undue delay in seeking to substitute new class representative thirty months after commencing suit and eighteen months after an amended complaint).[6]

---

[5] *Cf. Schnall v. Annuity & Life Re (Holdings), Ltd.*, 2007 U.S. Dist. LEXIS 74918, at *7–9 (D. Conn. Oct. 5, 2007) ("Although it is certainly within the lead plaintiffs' discretion to propose their own withdrawal and substitution should it be discovered that they may no longer adequately represent the interests of the purported plaintiff class, here, Midstream has offered no justification for its withdrawal at this late stage of the litigation other than its desire to avoid complying with outstanding discovery.  Absent more, and in light of Defendant's objection to the withdrawal, this court cannot grant Midstream's request." (internal citations and quotation marks omitted)).

[6] Moreover, courts in other circuits have routinely rejected motions under Rule 41(a)(2) either for undue delay or for bringing the motions too late in the course of litigation.  *See, e.g., Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 199 (5th Cir. 1991); ("When a plaintiff fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort, then a court may, in its discretion, refuse to grant a voluntary dismissal."); *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990) ("Under any test, the motion was made far too late. The action had been pending for over four years, during which it was contested vigorously, if sporadically, and extensive discovery had taken place."); *Robles v. Atl. Sounding Co.*, 77 F. App'x 274, 275 (5th Cir. 2003) ("[F]iling a motion for voluntary dismissal at a late stage in the litigation can be grounds for denying the motion."); *Lesti v. Wells Fargo Bank NA*, 2014 U.S. Dist. LEXIS 27360, at *6–7 (M.D. Fla. Mar. 4, 2014) (finding denial of motion to substitute class representative appropriate when motion was filed after "an Answer and Motion for Summary Judgment were filed" and "litigation [had] been ongoing for several years"); *Hancock v. Chi. Title Ins. Co.*, 2010 U.S. Dist. LEXIS 102773, at *6–7 (N.D. Tex. Sept. 28, 2010) ("[F]iling a motion for voluntary dismissal at a late stage in the litigation can be grounds for denial."); *In re Vitamins Antitrust Litig.*, 198 F.R.D. at 305 ("Most denials of voluntary dismissals are justified by the fact that defendants had already filed motions for summary judgment or that the parties were on the eve of trial."); *cf. Buller v. Owner Operator Indep. Driver Risk Retention Grp., Inc.*,

1

2

**E.    Plaintiffs' motion should be denied because it was brought in bad faith.**

3       Plaintiffs' refusal to provide either justification for or timely notice of

4   Makaeff's desire to withdraw evidences bad faith.  From the outset, this case has

5   been a moving target.  There has been a revolving door of class representatives.

6   Each iteration of the complaint has produced new class representatives, requiring

7   Defendants each time to shift their analysis and adapt their strategy to whomever

8   Plaintiffs wish to name at that time.  This gamesmanship is improper, and should

9   not be reinforced and remedied by allowing Makaeff to withdraw and depriving

10  Defendants of an integral part of their defense.

11      As this Court has ruled in the past, such "vexatious tactics" and other

12  evidence of bad faith are reason alone to deny a motion under Rule 41(a)(2).  *See*

13  *Sherman*, 2015 WL 473270, at *3 (Curiel, J.) ("'Ninth Circuit caselaw intimates

14  that a district court may refuse to grant dismissal under Rule 41(a)(2) when

15  exceptional circumstances suggest bad faith and/or vexatious tactics on the part of

16  the plaintiff, and that the defendant may suffer the "legal prejudice" of never having

17  claims resolved.'"  (quoting *Manuel v. Shipyard Holdings*, 2001 U.S. Dist. LEXIS

18  18097 (N.D. Cal. Nov. 5, 2001))); *accord In re Exxon Valdez*, 102 F.3d 429, 432

19  (9th Cir. 1996) (affirming denial of Rule 41(a)(2) and Rule 42(a)(2) motions

20  because, among other reasons, the court considered them to be "thinly-veiled

21  attempts to avoid discovery" where there had been total refusal to provide

22  discovery); *In re Urethane Antitrust Litig.*, 2006 U.S. Dist. LEXIS 38503, at *19

23  (D. Kan. June 9, 2006) ("The court may allow a plaintiff to withdraw as a class

24  representative when the withdrawal *is sought in good faith* and the withdrawal

25

26  ─────────────────────────
    461 F. Supp. 2d 757 (S.D. Ill. 2006) (finding dismissal appropriate because,
27  "[a]lthough this case has been pending in this Court since March 2005, it is not
    close to trial and procedurally is not at an advanced stage; in fact, most of the
28  litigation in this case to date has been about the threshold issue of subject matter
    jurisdiction").

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

1    would not prejudice the defendant's ability to defend itself, including the ability to

2    conduct sufficient discovery."  (emphasis added)); *see also Wilkinson v. Greater*

3    *Dayton Reg'l Transit Auth.*, 2013 U.S. Dist. LEXIS 164382, at *5 (S.D. Ohio Dec.

4    10, 2013) (holding that court approval was not yet required to replace class

5    representatives (because no class had been certified) but noting that "Plaintiffs'

6    Motion to Dismiss is more akin to a tactical withdrawal of Gray and Mitchell,

7    rather than a Rule 41(a)(2) dismissal of them as named plaintiffs/putative class

8    representatives," and that "[p]erhaps Plaintiffs' counsel believes that by dropping

9    the unenthusiastic Gray and Mitchell as putative class representatives, Plaintiffs'

10   pending Amended Motion for Class Certification would be strengthened by leaving

11   only enthusiastic putative class representatives.").

12          **F.    Key motions may have been decided differently without Makaeff**
13                 **as a class representative.**

14          Makaeff's dismissal will cause Defendants incurable prejudice for the

15   additional reason that Defendants would have developed alternative legal

16   arguments had Makaeff not been involved in this litigation.  Stripping Plaintiffs'

17   complaint of all its Makaeff-related allegations a completely different case.  Doing

18   so, for example, eviscerates Plaintiffs' allegations concerning TU's "constant up-

19   sell pressure."  *See* Dkt. 128 at 26.  Indeed, the TAC contains specific allegations

20   stating:

21          Plaintiff Makaeff and the other students in her class who signed
22          up for the $34,995 seminar were told that deals would now be coming
            their way via email and that "these deals are starting to POUR IN
23          NOW."  However, few, if any deals came in, and those that did
            provided only minimal positive cash flow, generally not worth enough
24          to make the deal worthwhile, and certainly not the "tens of thousands
25          of dollars per month" of opportunity promised by Trump University.

26   *Id.*  If removed, Plaintiffs are left with nothing more than a conclusory allegation

27   that "there was still constant up-sell pressure" during the Trump Gold Program.

28   Plaintiffs' contention that TU instructed its students to engage in illegal practices—

DEFS.' OPP. TO PLAINTIFF MAKAEFF'S
MOT TO WITHDRAW
10-CV-0940-GPC(WVG)

such as allegedly instructing TU students to use bandit signs in California—would likewise be completely wiped out. *See* Dkt. 128 at 71.

### G.   If Makaeff is dismissed from this action, dismissal is warranted.

If Makaeff is allowed to withdraw, dismissal of this six-year-old case is warranted. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) ("[T]he inherent powers permit a district court to go as far as to dismiss entire actions to rein in abusive conduct"). Defendants have been defending this case for years and should not be required to defend what amounts to a new case. There is no principled way to mitigate prejudice related to Makaeff's withdrawal because she is so integrally embedded in this case. Further, if the Court permits Makaeff's dismissal, Defendants must be awarded all costs related to litigating this case against Makaeff, including vacating the anti-SLAPP award of attorneys' fees and costs and reimbursement of Defendants' costs associated with litigating the counterclaim. *See Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982) (if the district court does not deny request for dismissal, it may "address[] and dispos[e] of the issue of possible prejudice by awarding costs to defendant upon dismissal"); *Sherman*, 2015 WL 473270, at *4 (Curiel, J.) (quoting *Westlands Water Dist.*, 100 F.3d at 97) ("[T]he defendants' interests can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees."). To the extent the Court permits Makaeff's dismissal, Defendants request supplemental briefing to account for the multitude of unnecessary expenses dedicated to conducting discovery and litigating this case in reliance on Makaeff's involvement. *See In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 304 (D.D.C. 2000) ("to the extent that defendants can show unnecessary expenses, the proper remedy for such wasted expenditures would be reimbursement of costs"); *In re Currency Conversion Fee Antitrust Litig.*, 2004 WL 2453927, at *2 n.4 (S.D.N.Y. 2004) (same).

**H.   The Court must deny Makaeff's request for an unconstitutional prior restraint.**

Plaintiffs ask the Court to enter an order preventing Mr. Trump "from using [Makaeff's] withdrawal as a basis for any claim of attorneys' fees or costs, malicious prosecution, abuse of process, bad faith, or the like, against plaintiff/counter-defendant or her counsel."  Dkt. 443-1 at 11.  Apparently concerned about their legal exposure, Plaintiffs wish to be immunized from legal actions against Makaeff or her law firms.

Plaintiffs fail to cite any authority to support their request for a facially unconstitutional order.  This is not surprising since their proposed order is an impermissible—and unconstitutional—prior restraint.  *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429 (1982) ("Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances."); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) ("pre-filing orders are an extreme remedy that should rarely be used" because such orders "can tread on a litigant's due process right of access to the courts"); *see also Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) ("[T]he Supreme Court has explained that the particular constitutional protection afforded by access to the courts is 'the right conservative of all other rights, and lies at the foundation of orderly government.'"  (quoting *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907))).  The Court should decline Plaintiffs' invitation to impose an unconstitutional prior restraint and make clear that Defendants to reserve all rights to redress any grievances.

**I.   Final judgment is not appropriate.**

The Court should deny Plaintiffs' request for final judgment under Federal Rule of Civil Procedure 54(b).  Under Rule 54(b), "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one

or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  A judgment is final "in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'"  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)).  A final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Catlin v. United States*, 324 U.S. 229, 233 (1945).

Plaintiffs' motion requests entry of a final judgment that is conditioned as follows:  (1) withdrawing Makaeff from this case without prejudice as to her rights as an absent Class member but with prejudice with respect to the individual claims she asserted against defendants;[7] (2) dismissing TU's defamation counterclaim with prejudice; and (3) commanding the payment of the Anti-SLAPP fees awarded to Makaeff.  The Court should deny each of Plaintiffs' requests for a number of reasons.

If the Court denies Makaeff's motion to withdraw, there is no reason to further consider this request.  Even if granted, the Court should deny Makaeff's request to enter final judgment on her individual claims because they overlap with factual issues related to the class-wide claims.  *See Wood v. GCC Bend, LLC*, 422 F.3d, 873, 882 (9th Cir. 2005) ("[T]he guiding principle is that '[a] similarity of legal or factual issues will weigh heavily against entry of judgment under [Rule 54(b)].'").  Indeed, Makaeff's common law claims present the same factual issues

---

[7]  On March 16, 2015, the Court granted the parties' joint motion to dismiss Makaeff's non-certified individual claims for:  (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) money had and received, (4) negligent misrepresentation, (5) fraud, (6) false promise, and (7) unjust enrichment.  (Dkt. No. 394.)  Although Plaintiffs do not identify which "individual claims" they are referring to in seeking Rule 54(b) certification, (Dkt. 443-1 at 11), Defendants assume Plaintiffs are referring to these claims.

as the class claims for consumer fraud. *See, e.g.*, TAC ¶¶ 149–54 (breach of contract claim based on sole allegations that TU did not provide "the promised products and services" in TU seminars and programs); ¶¶ 155–61 (breach of implied covenant of good faith and fair dealing claim alleges that TU "misrepresent[ed] to Plaintiffs and the Class the true nature of the Seminars as alleged more fully elsewhere in the Complaint"); ¶¶ 162–64 (money had and received claim based on allegation that defendants have improperly received money "as a result of the conduct alleged above"); ¶¶ 165–83 (negligent misrepresentation claim identifies alleged misrepresentations made "in written materials and scripted sales pitches by instructors" of TU that include the core misrepresentations that the Court has identified in the class consumer fraud claims); ¶¶ 184–92 (fraud claim based on the same alleged misrepresentations by TU); ¶¶ 193–99 (false promise claim based on same alleged promises made by TU instructors); ¶¶ 230–33 (unjust enrichment claim asserts that, "[a]s a result of the conduct describe above, Defendants have been, and will continue to be, unjustly enriched at the expense of Plaintiffs and the Class"). Given that Plaintiffs have not asserted any pressing need for entering a final judgment as to Plaintiffs' individual claims, the Court should deny the request. *See Wood*, 422 F.3d at 880 (reversing certification of plaintiff's claim under Rule 54(b) where plaintiff's "legal right to relief stem[med] largely from the same set of facts and would give rise to successive appeals that would turn largely on identical, and interrelated, facts").

Second, as Defendants note above, to the extent the Court grants Makaeff's request for dismissal, there is just reason to delay final entry of judgment related to TU's counterclaim and Makaeff's Anti-SLAPP judgment because TU will be entitled to an offset of costs related to unnecessary expenses litigating this case against Makaeff. *See In re Vitamins Antitrust Litig.*, 198 F.R.D. at 304. Regardless, the Court should deny Plaintiffs' request for final judgment because they have failed to identify any "pressing needs" for early resolution of the

counterclaim.  Despite Plaintiffs' reliance on a footnote noting that the "issuance of a Rule 54(b) order is a fairly routine act that is reversed only in the rarest instances," *James v. Price Stern Sloan*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002), it is well established in the Ninth Circuit that "'[j]udgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties,'" *Becker v. Wells Fargo Bank, NA*, 2012 U.S. Dist. LEXIS 91480, at *6 (E.D. Cal. June 29, 2012) (quoting *Morrison-Knudsen*, 655 F.2d 962, 965 (9th Cir. 1981)); *accord United States v. Elliott*, 2014 U.S. Dist. LEXIS 132942, at *4 (C.D. Cal. Sept. 3, 2014) (same); *Garcia v. Smith*, 2014 U.S. Dist. LEXIS 5921, at *8–9 (S.D. Cal. Jan. 16, 2014) (same); *Hamilton v. Rodriguez*, 2013 U.S. Dist. LEXIS 107733, at *2 (N.D. Cal. July 31, 2013).

Lastly, entry of final judgment under Rule 54(b) would be highly disruptive to Defendants in the impending trial in *Makaeff* and upcoming deadline for filing dispositive motions in *Cohen*.  Plaintiffs entirely fail to justify why the Defendants should be forced to litigate both cases while balancing piecemeal entry of judgment in this significant case.  *See Impact Fin. Servs., LLC v. Six400 Check Solutions, LLC*, 2011 U.S. Dist. LEXIS 39738, at *3–4 (D. Ariz. Apr. 1, 2011) ("Moreover, the individual defendants are members of Six400 and trial is scheduled to occur in about five months. . . .  Any hardship to the individual defendants caused by their having to wait is outweighed by the burden of piecemeal appeals and motions for attorneys' fees.  We, therefore, exercise our discretion and deny the motion for entry of judgment under Rule 54(b).").

1

**IV.    CONCLUSION**

2

Makaeff's motion to withdraw should be denied in its entirety.

3

Dated:  February 26, 2016

4                                                    O'MELVENY & MYERS LLP
                                                     DANIEL M. PETROCELLI
                                                     DAVID L. KIRMAN
5

6

                                                     By:     /s/Daniel M. Petrocelli
7                                                            Daniel M. Petrocelli
                                                     Attorneys for Defendant
8                                                    DONALD J. TRUMP and TRUMP
                                                     UNIVERSITY, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28