ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN (111070)
patc@rgrdlaw.com
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
BRIAN E. COCHRAN (286202)
bcochran@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
HELEN I. ZELDES (220051)
helenz@zhlaw.com
ALREEN HAEGGQUIST (221858)
alreenh@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARLA MAKAEFF, SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, a New York Limited Liability Company and DONALD J. TRUMP,<br><br>Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br>CLASS ACTION<br><br>REPLY IN FURTHER SUPPORT OF PLAINTIFF/COUNTER-DEFENDANT TARLA MAKAEFF'S MOTION TO WITHDRAW<br><br>DATE:    March 11, 2016<br>TIME:    1:30 p.m.<br>CTRM:    2D<br>JUDGE:    Hon. Gonzalo P. Curiel |

[Caption continued on following page.]

1124391_1

1  TRUMP UNIVERSITY, LLC,                      )
                                               )
2                          Counterclaimant,    )
                                               )
3         vs.                                  )
                                               )
4  TARLA MAKAEFF,                              )
                                               )
5                          Counter defendant.  )
                                               )
6  _____)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.       INTRODUCTION

Tarla Makaeff ("Makaeff") made a few mistakes.  She trusted Donald Trump.  She took him at his word.  She wanted to learn from him.  When Trump personally promised that he had handpicked instructors to teach his secret real estate techniques at Trump University ("TU"), Makaeff believed him.  Trump has confessed to making these representations about TU in order to influence people to enroll.  And it worked.  Makaeff, like others, paid tens of thousands of dollars to enroll in TU's live events.

In recent sworn testimony that Trump tried to keep secret, he finally confessed that the representations he had made to influence people to enroll in TU were false.  He did not handpick any of TU's live events instructors.  He did not even meet them.  When shown the sworn testimony of a "top Trump certified mentor" explaining his complete lack of experience, Trump remarked:  "He defrauded us" and "sue him."  Trump acknowledged that other instructors' presentations showed they lied to students about their connections to him, and that he had no idea how many of TU's live events instructors had "slipped through cracks."  Trump also confessed that he had no real estate techniques beyond those described in his publicly-available books.

Trump, who falsely represented he had handpicked all of TU's "people," asserts he did not defraud those he influenced to enroll at TU.  Rather, it is all somehow Makaeff's fault.  Trump's big secret would have stayed secret if she had quietly accepted getting fleeced, so taking her money is not enough.  Trump's opposition and recent stump speech, in which he denigrated her on national television, confirm that Trump wants to punish Makaeff.  Because Makaeff had nothing to do with Trump's fraud, her withdrawal has nothing to do with any legitimate defense.  "Prejudicing" Trump's desire to turn this trial into a circus of gratuitous personal attacks is not the type of prejudice the law protects against.  For Makaeff's well-being and the dignity of these proceedings, the Court should grant her motion to withdraw.

## II.      ARGUMENT

Since Makaeff filed her motion, Trump has: (i) designated Makaeff's former

1  acquaintances as trial witnesses, but not done so for any other class representatives[1];

2  (ii) filed an opposition confirming that personal attacks on Makaeff are the central

3  focus of his defense, going so far as to say it "would cripple Defendants' ability to

4  defend this case" if they cannot make these attacks against one of the 7,000 student-

5  victims taken in by Trump's scheme (Dkt. 458 at 2); and (iii) used a national

6  campaign speech to denigrate Makaeff – by name – as a "horrible horrible witness."

7  *See* Ex. 1.[2]  Understandably, Makaeff wants her life back without living in fear of

8  being disparaged by Trump on national television.

### A. This Case Is About Trump's Admittedly False Promises to Thousands of Victims, Not Just One

10  Trump wants to make this case about anything other than his and TU's actions,

11  but this Court's class certification orders confirm otherwise.  *See* Dkts. 298, 418.

12  Indeed, the liability phase of trial will focus on defendants' objectively false or

13  misleading representations in TU's advertising and promotional campaign and thus

14  has nothing to do with Makaeff's motives, credibility or effort, as Trump contends.

15  *See* Dkt. 458 at 2.  For example, California's Unfair Competition Law "requires only a

16  showing that members of the public are likely to be deceived, rather than actually

17  deceived or confused by the conduct or business practice in question," and relief "is

18  available without any proof of deception, reliance, or damages."[3]  Dkt. 298 at 19.  The

19  same goes for California's False Advertising Law.  *Id.*  For liability on the class

20  claims, plaintiffs will prove Trump falsely promised to teach his secrets through his

21  handpicked professors, and that doing so likely deceived the public.  *Id.*

---

[1]  Defendants refer to Makaeff as "lead" plaintiff or "lead" class representative in their brief, but she has never sought, nor been appointed by this Court, as either. She is one of four equal class representatives appointed at the same time.  *See* Dkt. 298.

[2]  Unless otherwise noted, references to "Ex." are to the Exhibits attached to the Declaration of Rachel L. Jensen ("Jensen Decl."), filed concurrently herewith.

[3]  Here, and throughout, citations and quotation marks are omitted, and emphasis supplied, unless otherwise noted.

1

2

### 1.   Trump Recently Confessed that He Did Not "Handpick" the Live Events Instructors

Trump recently testified that he is an influential person, who wants to be perceived as reliable and trustworthy. *See* Ex. 2 at 377:22-379:8. Trump admitted that he promoted TU to influence students to enroll, including by starring in a nationwide ad campaign and promotional video that was linked to mass email blasts and played at the start of preview seminars. *See id.* at 388:4-9, 391:17-392:7. In the video, Trump promises that he handpicked all of TU's instructors. This promise was consistent with TU's ads, which were approved by Trump (*id.* at 280:5-16). Those ads promised consumers they would "[l]earn from Donald Trump's handpicked experts" at the seminars. *See, e.g.*, Ex. 3 (TU 62091).

Trump recently confessed under oath that he did ***not*** handpick a single TU live events instructor (Ex. 2 at 135:2-4, 135:15-136:6, 137:24-139:4, 140:10-15, 476:16-477:10); and that he personally did nothing to confirm their purported qualifications (*id.* at 240:10-23). Trump could not identify a single live events instructor or mentor by name or pick one out of a photo lineup. *Id.* at 100:14-111:20, 117:3-4, 118:14-119:13, 120:19-25, 122:11-21, 124:12-125:5, 210:21-211:1, 235:7-17, 240:10-13, 280:24-281:17. Similarly, Trump confessed that he neither "certif[ied]" the mentors, as promised, nor did anything to confirm their qualifications. *Id.* at 234:24-235:6, 240:10-23, 247:24-249:5, 250:8-253:7, 300:3-25.

Had Trump cared to do any due diligence on his "handpicked" experts, he would have discovered they were primarily high-pressure salesmen, not real estate experts. *See* Ex. 2 at 412:25-413:1, 427:6-430:7; Ex. 4, ¶¶5-7. Trump would have discovered that TU's top producer, James Harris, who held himself out as having a personal relationship with Trump, was a convicted felon. *See, e.g.*, Ex. 5. But because Trump had no hand in TU's hiring process and did not even meet Harris (*see, e.g.*, Ex. 2 at 428:1-430:7), people with no real estate experience, like Michael Sexton, made these decisions. *See* Ex. 2 at 154:21-155:16. As he was not involved, Trump

conceded Harris could have "slipped through the cracks."  *See* Ex. 2 at 426:14-24.

Harris is not a one-off example.  At his deposition, Trump was confronted with scripted misrepresentations delivered by each of the primary TU live events instructors – including Steve Goff, Gerald Martin, and Keith Sperry – all claiming to be close to Trump.  *See* Ex. 2 at 329:4-333:10; *see* Exs. 6, 8-9, 13.  One-by-one, Trump admitted he did not know them, failed to interview or otherwise screen them, and acknowledged that too could have "slipped through the cracks."  *See, e.g.*, Ex. 2 at 425:2-427:5.   So-called "top Trump certified" mentor, Kerry Lucas, was so unqualified (***he had never bought or sold real estate before being hired by TU in 2009***) that, while watching Lucas's deposition video, Trump spontaneously remarked "he defrauded us," that he should "sue him," and his only explanation was that Lucas "probably" embellished his record to the people who hired him.  *See* Ex. 10; Ex. 2 at 412:8-415:12, 414:2-14; *see also* Ex. 11 at 48:5-23.  Trump's testimony is oblivious to the fact that he had assured student-victims that ***he*** was the person doing the hiring as he "handpicked" everyone.

Nothing in Makaeff's trial testimony could provide Trump with a defense to these misrepresentations, as she has no knowledge of the actual inner-workings of TU.

### 2. Trump Recently Confessed that He Was Not Involved in the Live Events Classes

In contrast to Trump's promises made in his promotional video that, if students could not "learn from me" and his handpicked instructors, they would not make it "in terms of success," he recently confessed under oath that, "I wasn't involved in the – in the classes."  *See* Ex. 2 at 185:25-186:20, 187:19-188:2, 216:8-11, 228:10-24, 282:5-20.  At his deposition, Trump also confessed that he had no involvement in the creation or review of the materials presented at the live events (*id.* at 312:8-313:16, 316:3-11, 317:7-14); he did not know the instructors or what they were supposedly teaching or representing to student-victims (*id.* at 228:19-24, 407:4-8, 477:11-478:10); and he did not run TU (*id.* at 389:2-3).  Again, nothing in Makaeff's trial testimony

will provide Trump with a defense to these facts about the falsity of Trump's promotional statements.

### 3. Trump Recently Confessed that He Knew About the 2005 NYSED Investigation into TU

In the same video that Trump used to influence students to enroll in TU, he held out TU as an elite university comparing favorably to his alma mater, Wharton. Yet, as he confessed at his deposition, Trump was aware of the issues concerning the illegal use of the "university" moniker for years prior to changing the name. *See* Ex. 2 at 273:3-277:25. Makaeff's trial testimony could not be expected to provide Trump a defense to these facts.

### B. Trump's Testimony Undercuts His "Happy Student" Defense

Defendants' primary, if not sole, defense has been that student-victims were happy, even if deceived. But Makaeff's early reviews, as well as those of the other purportedly happy students, only confirm the scheme's effectiveness: "As the recent Ponzi-scheme scandals involving onetime financial luminaries like Bernard Madoff and Allen Stanford demonstrate, victims of con artists often sing the praises of their victimizers until the moment they realize they have been fleeced." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 271 (9th Cir. 2013). When Makaeff submitted the surveys and responded to questions posed on video, she was unaware of Trump's false advertising, still hoping to receive what had been promised, and did not want to risk alienating the people she hoped would help her. *See, e.g.*, Dkt. 17-2 at 2-3.

Trump knows the "surveys" were not anonymous, and that students were promised networking opportunities. *See* Ex. 2 (1/21/16 DJT Tr.) at 452:18-454:11. As a business man who has donated generously to politicians, Trump understands the importance of not biting the hand that feeds. *Id.* at 454:23-471:4. And so he explains his past praise for politicians he now condemns as a natural consequence of speaking as businessman anticipating the need for assistance and because he later learned more about these individuals. *Id.*; Ex. 12. Trump's own testimony confirms the

1  unreliability of positive surveys completed when student-victims were anticipating the

2  need for assistance and before they knew the truth.[4]

3      Further, Trump confessed that he had real-time awareness of millions of dollars

4  in refunds he had paid long before any lawsuits because it "was the honorable thing to

5  do" and explained that TU was more like the Home Shopping Network than Wharton.

6  *See* Ex. 2 at 432:11-437:19, 479:5-19.  It is apparent that self-preservation, not honor,

7  motivated Trump to pay off some of his victims.  But, once exposed, Trump's sense of

8  "honor" morphed into bullying, resulting in an $800,000 award against the

9  "university" he used to sue Makaeff.

10      **C.    Defendants Have No Legitimate Legal Interest that Will Be Prejudiced by Makaeff's Withdrawal**

11

12      Trump acknowledges that Rule 41 allows a plaintiff to withdraw absent legal

13  prejudice.  *See* Dkt. 458 at 9.  Indeed, dismissal should be granted absent "clear legal

14  prejudice, other than the prospect of a subsequent suit on the same facts."  *In re*

15  *Morning Song Bird Food Litig.*, No. 3:12cv1592-JAH-RBB, 2015 U.S. Dist. LEXIS

16  176519, at *5 (S.D. Cal. Nov. 19, 2015).  "[L]egal prejudice" means "prejudice to

17  some legal interest, some legal claim, some legal argument."  *Id.*  It is not "merely

18  because the defendant will be inconvenienced by having to defend in another forum or

19  where a plaintiff would gain a tactical advantage by that dismissal.'"  *Id.*

20      Here, defendants cannot point to one relevant legal argument that would be

21  harmed by Makaeff's withdrawal.  Their entire argument is illogical to the point of

22  being nearly incomprehensible:  the absence Makaeff's live trial testimony "would

23  cripple Defendants' ability to defend this case."  Dkt. 458 at 2.  Makaeff is not even a

24  member of the Florida or New York classes, so are defendants admitting they have no

25  defense to those claims?  What if Makaeff moved out of the country?  Defendants

26  themselves moved for summary judgment against Makaeff individually.  *See* Dkt.

---

27  [4]   This is leaving aside myriad other problems with the surveys, including there are
28  more surveys than paying student-victims, they include free seminars, and student-victims were told they must give the instructor "all fives."  *See* Ex. 13 at TU 97047.

1    375-1 at 4.  Was this an attempt to "cripple" their defense?  Defendants filed their

2    motion to get Makaeff out of this case after discovery was closed so their "we would

3    have conducted discovery differently if we had not been counting on Makaeff

4    remaining in the case" (paraphrasing) argument (Dkt. 458 at 10-11) is no more

5    credible than their other arguments.  Plaintiffs are not suggesting that they would

6    submit evidence of Makaeff's personal experience, so how could her absence from

7    trial be detrimental to the defense of the claims for which no such evidence will be

8    presented?  Defendants do not attempt to answer this question because the obvious

9    answer is that Makaeff's absence could not be detrimental to the defense of the class

10   claims in this case.  They simply lack a legitimate defense – with or without Makaeff.

11         One specific example is all it takes to discredit both defendants' argument that

12   their entire defense turns on their plan to impeach Makaeff and their purported

13   impeachment evidence.  Defendants accuse Makaeff of actively seeking to exploit

14   Trump's potential Presidential campaign to fleece him and TU.  Dkt. 458 at 13

15   (redacted in public filing) (citing Sealed Ex. 9).[5]  Defendants' purported impeachment

16   evidence, however, impeaches only them.  Far from their characterization, this email

17   chain proves that Makaeff was not actively or passively seeking to "fleece" Trump or

18   TU.  The only reference to any fleecing was in Makaeff's then-boyfriend's email, but

19   he was not suggesting that Makaeff try to fleece Trump or TU.  Rather encouraging

20   her to expose Trump's scheme to fleece vulnerable victims:

21         I'd really focus on the fact that they go after the elderly, recently
         unemployed and those desperate to improve their financial situation in a
22       very difficult economy then fleece them for all that that they can by
         promising them they can make a fortune in a very high risk business that
23       takes a ton of risk capital that almost none of their students can afford.

24   Jensen Decl., Ex. 14 (TU-MAKAEFF 5552).  This attempt to disparage Makaeff and

25   deceive the Court epitomizes the abusive litigation tactics Trump and TU have used in

26   this case.

27

28   _____
     [5]   Plaintiff de-designated the portion of this exhibit that Trump misrepresents.

1    In contrast to the absence of prejudice to defendants, they do not dispute the

2  detriment to Makaeff if she is forced to remain in the case.[6]  In fact, they revel in it.

3  *See* Dkt. 458 at 13 ("Litigation is hard.  Witnesses are compelled all the time to testify

4  . . . healthy or ill.").  Defendants' argument that the Court should disregard Makaeff's

5  health concerns because she has suffered from them for years is as meritless as it is

6  heartless.  *See id*.  Makaeff has health issues, and the stress of this litigation has, and

7  continues to, aggravate them.  There is no good reason to deny her request for relief.[7]

8       **D.    Trump's Opposition Reinforces the Need to Protect Against Retaliation**

9       Courts routinely require parties to bear their own costs and fees.  *See, e.g.*,

10  *Morning Song Bird Food Litig.*, 2015 U.S. Dist. LEXIS 176519, at *7 (granting

---

11  [6]   Even if this Court determines that Makaeff's testimony somehow remains relevant,
12  defendants can simply use her deposition testimony at trial.  *See Ormond v. Anthem,
    Inc.*, No. 1:05-cv-1908-TWP-TAB, 2012 U.S. Dist. LEXIS 63275, at *9 (S.D. Ind.
13  May 4, 2012).  As Judge Houston has explained, "[w]hile live testimony is preferable
    to deposition testimony, that alone is insufficient to constitute plain legal prejudice."
14  *Morning Song Bird Food Litig.*, 2015 U.S. Dist. LEXIS 176519, at *10.  Given the
    breadth of Makaeff's deposition testimony, and the fact that they have already
15  designated portions as part of their pretrial disclosures in this case (*see* Dkt. 450-2),
    defendants will suffer no legal prejudice.

16  [7]   Defendants' delay and bad faith arguments ring hollow given the undisputed fact
    that, within three weeks of the Court's Order Scheduling Pretrial Proceedings,
17  Makaeff requested defendants' concurrence in her withdrawal from the case.  *See* Dkt.
    434; *see also* Dkt. 443-1.  Moreover, this Court's decision in *Sherman v. Yahoo! Inc.*,
18  No. 13cv0041-GPC-WVG, 2015 U.S. Dist. LEXIS 14032 (S.D. Cal. Feb. 5, 2015),
    cited by defendants, actually supports plaintiff's position.  There, the Court granted a
19  motion to dismiss without prejudice, conditioned on plaintiff sitting for deposition,
    and refused to award any fees or costs to defendants.  *See id.* at *22.  None of the
20  other cases cited by defendants commands a different result here.  *See Perdum v.
    Wells Fargo Bank, N.A.*, No. 14-cv-02477-HSG, 2015 U.S. Dist. LEXIS 122307, at *2
21  (N.D. Cal. Sept. 14, 2015) (court already granted a motion to dismiss); *Cent. Mont.
    Rail v. BNSF Ry. Co.*, 422 F. App'x 636, 638 (9th Cir. 2011) (forum shopping); *In re
22  Flash Memory Antitrust Litig.*, No: C 07-0086 SBA, 2010 U.S. Dist. LEXIS 66466
    (N.D. Cal. June 10, 2010) (decision involved motion to amend); *Davis v. Huskipower
23  Outdoor Equip. Corp.*, 936 F.2d 193, 199 (5th Cir. 1991) (magistrate had already
    issued an adverse recommendation against plaintiffs); *Zagano v. Fordham Univ.*, 900
24  F.2d 12, 14 (2d Cir. 1990) (motion in individual action brought one week before trial);
    *Robles v. Atl. Sounding Co.*, 77 F. App'x 274, 275-76 (5th Cir. 2003) (***affirming***
25  voluntary dismissal); *Lesti v. Wells Fargo Bank NA*, No. 2:11-cv-695-FtM-29DNF,
    2014 U.S. Dist. LEXIS 27360 (M.D. Fla. Mar. 4, 2014) (plaintiff was attempting to
26  avoid discovery); *Hancock v. Chi. Title Ins. Co.*, No. 3:07-CV-1441-D, 2010 U.S.
    Dist. LEXIS 102773, at *10 (N.D. Tex. Sept. 28, 2010) (lack of jurisdiction); *In re
27  Vitamins Antitrust Litig.*, 198 F.R.D. 296, 297 (D.D.C. 2000) (***granting*** motion
    conditioned on outstanding discovery); *Buller v. Owner Operator Indep. Driver Risk
28  Retention Group, Inc.*, 461 F. Supp. 2d 757 (S.D. Ill. 2006) (granting motion).

---

1    dismissal without prejudice and denying fees and costs).  That is all Makaeff asks in

2    seeking an order requiring both sides to bear their own costs and explicitly providing

3    that her withdrawal does not constitute grounds for later action by Trump.

4         Makaeff's proposed order does not constitute a prior restraint on defendants.

5    Unlike defendants' cited cases, the proposed order does not require Trump to obtain

6    leave of court before filing a claim.[8]  *See Molski v. Evergreen Dynasty Corp.*, 500

7    F.3d 1047, 1050 (9th Cir. 2007) (vexatious litigant pre-filing order); *Cromer v. Kraft*

8    *Foods N. Am., Inc.*, 390 F.3d 812, 819 (4th Cir. 2004) (enjoining further motions).

9    Defendants' reliance on *Molski* is misplaced because, there, the Ninth Circuit

10   ***affirmed*** an order finding plaintiff to be "a vexatious litigant" and requiring "leave of

11   the court" before filing another claim in that district.  *See* 500 F.3d at 1050, 1062.

12   Thus, even if the proposed order were somehow deemed a pre-filing injunction (which

13   it is not), it would still be appropriate given that defendants had notice and an

14   opportunity to be heard, and the record is ample to find that Trump directed frivolous

15   litigation against Makaeff and has threatened her counsel.  *See id.* at 1057.

16         **E.    Makaeff Should Not Bear the Burden and Risk of Delay as**
            **to the Anti-SLAPP Fees and Costs**

17

18         Defendants' opposition provides no basis to delay entry of partial final

19   judgment as to Makaeff's previously (and voluntarily) dismissed individual claims

20   and the Anti-SLAPP Orders.  To the contrary, judgment should be entered so that

21   Makaeff can commence her collection efforts.   This outcome favors "judicial

22   administrative interests as well as the equities involved." *Curtiss-Wright Corp. v.*

23   *Gen'l Elec. Co.*, 446 U.S. 1, 8 (1980).  First, in weighing judicial interests, the claims

24   at issue are separable from the remaining class claims.  *See Curtiss-Wright*, 446 U.S.

25   at 8.  Trump's counterclaim and anti-SLAPP fees are distinct and separable, as the

26   SLAPP suit has no effect on the other class representatives or the class members they

27   _____
     [8]   *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 434 (1982), is irrelevant as it
28   involved whether a state agency could dismiss an employment claim based on the
     running of a deadline when the agency failed to follow its own procedures.

1   represent.[9]  *See* Dkt. 298.  This is why Judge Gonzalez stayed the counterclaim during

2   Makaeff's anti-SLAPP appeal, but not the class claims.  Dkt. 58 at 4.  The dismissed

3   claims are also separable as defendants stipulated to dismissal with no right to fees or

4   costs.  *See* Dkts. 389, 394.  Thus, neither side contests those claims, and there is no

5   risk of appeal.  *See Wood v. GCC Bend, LLC*, 422 F.3d 873, 881-82 (9th Cir. 2005).

6          The equities also urge entry of partial final judgment.  *See United States v.*

7   *Distribuidora Batiz CGH, S.A. DE C.V.*, No. 07cv370-WQH-JMA, 2009 U.S. Dist.

8   LEXIS 69844, at *21 (S.D. Cal. Aug. 10, 2009).  TU has been dormant for five years

9   and is a bankruptcy risk.  *See Curtiss-Wright*, 446 U.S. at 12-13 (concerns about

10  defendant's financial condition weighs in favor of finding no just reason for delay);

11  *Capital Distrib. Servs. v. Ducor Express Airlines, Inc.*, 462 F. Supp. 2d 354, 358

12  (E.D.N.Y. 2006) (dissipation may cause "'irreparable injury'").  The anti-SLAPP

13  statute is intended to protect individuals like Makaeff from retaliatory suits, and that

14  purpose would be undermined if Makaeff were forced to bear more risk of a TU

15  bankruptcy filing from more delay.  *See Language Line Servs. v. Language Servs.*

16  *Assoc., LLC*, No. C10-02605 JW, 2012 U.S. Dist. LEXIS 7494, at *9 (N.D. Cal. Jan.

17  23, 2012) (prevailing party should not bear burden of delay).

18  **III.    CONCLUSION**

19          Makaeff respectfully requests that the Court grant her motion in its entirety.

20  DATED:  March 3, 2016                    Respectfully submitted,

21                                          ROBBINS GELLER RUDMAN
                                             & DOWD LLP
22

23                                             s/ Rachel L. Jensen
                                            RACHEL L. JENSEN
24

25

26  ─────────────────────
    [9]    Even if a claim and counterclaim share some factual basis, that does not preclude
27  partial final judgment.  *See, e.g.*, *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797-98 (9th
    Cir. 1991) ("'The Rule 54(b) claims do not have to be separate from and independent
28  of the remaining claims.'").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
PATRICK J. COUGHLIN
JASON A. FORGE
RACHEL L. JENSEN
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
DANIEL J. PFEFFERBAUM
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
MAUREEN E. MUELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
HELEN I. ZELDES
ALREEN HAEGGQUIST
AARON M. OLSEN
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 3, 2016.

s/ Rachel L. Jensen
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:      rachelj@rgrdlaw.com

# Mailing Information for a Case 3:10-cv-00940-GPC-WVG Makaeff v. Trump University, LLC et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick J Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanm@rgrdlaw.com

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,robyns@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,llendzion@rgrdlaw.com,mbacci@rgrdlaw.com,e_file_sd@rgrdlaw.com,KLavelle@rgrdlaw.com

- **David Lee Kirman**
  dkirman@omm.com,sbrown@omm.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Daniel M. Petrocelli**
  dpetrocelli@omm.com

- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)