IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA


TARLA MAKAEFF, *ET AL.*,                )       10-CV-0940-GPC
      PLAINTIFFS,                       )
                             )
VS.                                     )       SAN DIEGO, CA
                             )       MARCH 11, 2016
TRUMP UNIVERSITY, LLP, *ET AL.*,        )       1:30 P.M.
      DEFENDANTS.                       )



TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE GONZALO P. CURIEL

UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS:   ROBBINS GELLAR RUDMAN & DOWD LLP
                      BY:  RACHEL L. JENSEN, ESQ.
                           JASON A. FORGE, ESQ.
                      655 W. BROADWAY, SUITE 1900
                      SAN DIEGO, CA  92101
                      AND
                      ZELDES HAEGGQUIST & ECK, LLP
                      BY:  AMBER L. ECK, ESQ.
                      225 BROADWAY, SUITE 2050
                      SAN DIEGO, CA  92101


FOR THE DEFENDANTS:   O'MELVENY & MYERS LLP
                      BY:  DANIEL M. PETROCELLI, ESQ.
                           DAVID L. KIRMAN, ESQ.
                      1999 AVENUE OF THE STARS, SUITE 700
                      LOS ANGELES, CA  90067
                      AND
                      TRUMP NATIONAL GOLF CLUB, LOS ANGELES
                      BY:  JILL A. MARTIN, ESQ.
                      ONE TRUMP NATIONAL DRIVE
                      RANCHO PALOS VERDES, CA  90275

(APPEARANCES CONTINUED)

COURT REPORTER:        FRANK J. RANGUS, OCR
                       U. S. COURTHOUSE
                       333 W. BROADWAY, SUITE 420
                       SAN DIEGO, CA  92101
                       (619) 318-8590

PROCEEDINGS RECORDED BY ELECTRONIC STENOGRAPHY; TRANSCRIPT
PRODUCED BY COMPUTER.

I  N  D  E  X

PROCEEDINGS:                    PAGE

*ARGUMENTS OF COUNSEL*

MS. JENSEN                          5

MR. PETROCELLI                     15

MR. FORGE                          31

MR. PETROCELLI                     37

```
 1              THE DEPUTY CLERK:  NUMBER FIVE ON CALENDAR, CASE
 2   10-CV-0940, MAKAEFF VS. TRUMP UNIVERSITY, LLC, ET AL., FOR A
 3   MOTION HEARING.
 4              THE COURT:  APPEARANCES.
 5              MS. JENSEN:  GOOD AFTERNOON, YOUR HONOR.
 6              RACHEL JENSEN FOR PLAINTIFFS.
 7              MR. FORGE:  GOOD AFTERNOON, YOUR HONOR.
 8              JASON FORGE FOR THE CLASS.
 9              MS. ECK:  AND, YOUR HONOR, AMBER ECK FOR THE
10   PLAINTIFFS.
11              THE COURT:  GOOD AFTERNOON.
12              MR. PETROCELLI:  GOOD AFTERNOON.
13              DANIEL PETROCELLI FOR THE DEFENDANTS.
14              MR. KIRMAN:  GOOD AFTERNOON, YOUR HONOR.
15              DAVID KIRMAN FOR THE DEFENDANTS.
16              MS. MARTIN:  GOOD AFTERNOON, YOUR HONOR.
17              JILL MARTIN FOR THE DEFENDANTS.
18              THE COURT:  GOOD AFTERNOON TO YOU ALL.
19              WE ARE HERE ON PLAINTIFF MAKAEFF'S MOTION FOR
20   WITHDRAWAL.  THE COURT HAS REVIEWED ALL THE PLEADINGS, AND I
21   HAVE SOME QUESTIONS THAT I WANTED TO POSE TO BOTH SIDES.
22              LET ME BEGIN WITH PLAINTIFF.  WHO WILL BE ADDRESSING
23   THE QUESTIONS?
24              MISS JENSEN.
25              MS. JENSEN:  YES, YOUR HONOR.
```

1          THE COURT:  ALL RIGHT.  SO IT'S MY UNDERSTANDING THAT

2     THE NINTH CIRCUIT HAS RULED THE DISTRICT COURT SHOULD GRANT A

3     MOTION FOR VOLUNTARY DISMISSAL UNDER RULE 41 UNLESS THE COURT

4     FINDS THAT THE DEFENDANT WILL SUFFER SOME LEGAL PREJUDICE AS A

5     RESULT, AND AS I UNDERSTAND THE POSITION OF THE PLAINTIFF, THE

6     PLAINTIFF SAYS THE DEFENDANT WON'T SUFFER ANY LEGAL PREJUDICE.

7          HOWEVER, ONE OF THE CASES THAT'S TAKEN UP THIS ISSUE

8     IS BP WEST COAST PRODUCTS LLC, AND ONE OF THE FACTORS THAT WAS

9     TAKEN INTO ACCOUNT WHETHER OR NOT THERE WAS IN FACT LEGAL

10    PREJUDICE IS WHETHER THE CLAIMS HAVE BEEN EXTENSIVELY

11    LITIGATED.  YOU WOULDN'T DISPUTE THAT IN THIS CASE THE CLAIMS

12    OF MISS MAKAEFF HAVE BEEN EXTENSIVELY LITIGATED.

13          MS. JENSEN:  YES, YOUR HONOR.  WE WOULD NOT DISPUTE

14    THAT THE CLAIMS HAVE BEEN EXTENSIVELY LITIGATED.  HOWEVER, OUR

15    POSITION IS THAT THE DEFENDANTS WOULD NOT SUFFER ANY LEGAL

16    PREJUDICE BECAUSE THE CLASS CLAIMS THAT WILL BE PROCEEDING FOR

17    THE LIABILITY PHASE OF TRIAL WILL FOCUS, WILL FOCUS

18    EXCLUSIVELY ON THE DEFENDANTS' FALSE OR MISLEADING

19    ADVERTISEMENTS, THEIR MISREPRESENTATIONS, MATERIAL OMISSIONS,

20    AND WHETHER THEY WERE LIKELY TO DECEIVE THE GENERAL PUBLIC.

21    AND SO, THEREFORE, THE DEFENDANTS' CLAIM OF LEGAL PREJUDICE IS

22    INCORRECT BECAUSE IT APPLIES ONLY TO WHAT THEY'RE SEEKING TO

23    DISCREDIT MISS MAKAEFF ON ON HER DAMAGES, AND THAT IS NOT

24    GOING TO BE AN ISSUE AS A CLASS --

25          THE COURT:  DON'T THEY ALSO RAISE THE ISSUE OF

1    RELIANCE?

2         MS. JENSEN:  YES, YOUR HONOR.  UNDER CALIFORNIA LAW

3    AND *IN RE TOBACCO*, ALL THAT IS REQUIRED IS THAT SHE, THAT THE

4    INJURY WAS CAUSED, THE SUBSTANTIAL FACTOR OF THAT INJURY WAS

5    THE FALSE ADVERTISING AND THE REPRESENTATIONS THAT WERE MADE.

6         NOW, THE DEFENDANT --

7         THE COURT:  DOES THAT ALSO APPLY TO A CRLA CLAIM?

8         MS. JENSEN:  SO, UNDER THE CLRA, FOR THE CLASS

9    CLAIMS, IT IS A PRESUMPTION OF RELIANCE THAT ARISES IF THE

10   REPRESENTATIONS ARE MATERIAL, AND THAT IS ADJUDGED BY AN

11   OBJECTIVE STANDARD, NOT MISS MAKAEFF'S SUBJECTIVE STANDARD.

12   AND HERE, THEY WON'T BE PREJUDICED AT ALL BECAUSE, IF

13   ANYTHING, IT'S ONE LESS PERSON THAT WILL HAVE TO PROVE

14   RELIANCE.  HERE, WE'VE GOT SONNY LOW, WHO WAS APPOINTED BY

15   YOUR HONOR AS A CLASS REPRESENTATIVE AT THE VERY SAME TIME

16   THAT MISS MAKAEFF WAS APPOINTED AS CLASS REPRESENTATIVE, AND

17   SO --

18        THE COURT:  WAS HE ORIGINALLY APPOINTED AS CLASS

19   REPRESENTATIVE FOR ALL OF THE CALIFORNIA CAUSES OF ACTION,

20   INCLUDING THE ELDER ABUSE?

21        MS. JENSEN:  YES, YOUR HONOR.

22        THE COURT:  SO HE WASN'T JUST APPOINTED ON THE ELDER

23   ABUSE.

24        MS. JENSEN:  CORRECT.

25        AND SO, YOUR HONOR, IF ANYONE WERE TO SUFFER LEGAL

1  PREJUDICE, IT WOULD BE THE PLAINTIFFS, BECAUSE WE WOULD HAVE

2  ONE LESS CLASS REPRESENTATIVE TO DO SO.  BUT SONNY LOW WILL BE

3  APPEARING AT TRIAL.  HE WILL BE THE CLASS REPRESENTATIVE FOR

4  THE CALIFORNIA CLAIMS, AND THE DEFENDANTS WILL SUFFER NO LEGAL

5  PREJUDICE IN TERMS OF SONNY LOW, HIS CLASS CLAIMS, BECAUSE

6  THEY'VE HAD AMPLE OPPORTUNITY TO TAKE HIS DISCOVERY, AND, AS

7  YOUR HONOR IS AWARE, THIS CASE HAS BEEN FULLY, FULLY VETTED IN

8  TERMS OF DISCOVERY OF THE FACTS, WITH A DISCOVERY CUTOFF OF

9  MARCH 20.

10      THE COURT:  LET ME ASK YOU SOMETHING.  THE DEFENDANTS

11  ARGUE THAT THEIR DISCOVERY STRATEGY HAS BEEN NOT DESTROYED,

12  BUT IT'S BEEN ADVERSELY AFFECTED BECAUSE IN THIS CASE THEY PUT

13  ALL THEIR EGGS IN THE MAKAEFF BASKET, IF NOT ALL OF THEIR

14  EGGS, MOST OF THEIR EGGS, AND THAT THEY DIDN'T PROCEED OR

15  PURSUE MR. LOW IN THE SAME MANNER.  WHAT WOULD BE YOUR

16  POSITION WITH RESPECT TO THE COURT ORDERING FURTHER

17  DEPOSITIONS OF MR. LOW IN ORDER TO CURE ANY POSSIBLE PREJUDICE

18  THAT MAY ARISE WITH RESPECT TO THE DISCOVERY?

19      MS. JENSEN:  WELL, YOUR HONOR, WHAT I CAN SAY IS THAT

20  THE DEFENDANTS HAVE HAD OPPORTUNITY TO TAKE MR. LOW'S FULL

21  DISCOVERY.  I DON'T HAVE THE NUMBER OF DOCUMENTS THAT HE'S

22  PRODUCED IN THIS MATTER, BUT I CAN TELL YOU IT'S VOLUMINOUS.

23  THEY'VE ALSO HAD AN OPPORTUNITY TO TAKE A FULL DAY'S

24  DEPOSITION OF HIM, AND THEY'VE ALSO ASKED HIM INTERROGATORIES,

25  REQUESTS FOR ADMISSION.

1          SO THEY HAVE HAD AMPLE OPPORTUNITY, AND WE BELIEVE

2     THAT IF THEY ARE MAKING THAT ARGUMENT, IT REALLY IS PRETEXT

3     BECAUSE, AS YOUR HONOR CAN SEE, THAT WHAT THEY'RE TRYING TO DO

4     WITH MISS MAKAEFF IS TO DISTRACT THE COURT AND THE JURY FROM

5     THE REAL ISSUES AT HAND BY CASTING ASPERSIONS ON HER

6     CHARACTER, AND THEY REALLY FOCUS ALL THEIR FIREPOWER ON HER,

7     WHEREAS SHE IS ONLY ONE OF FOUR CLASS REPRESENTATIVES, AND THE

8     REAL TELL HERE IS THAT SHE DOESN'T EVEN REPRESENT FLORIDA OR

9     NEW YORK CLASS MEMBERS.

10          SO WE DON'T REALLY THINK THERE'S ANY LEGAL PREJUDICE.

11     AGAIN, IF ANYONE SUFFERS PREJUDICE, IT'S OURS, BECAUSE NOW

12     WE'RE LEFT WITH ONE CLASS REPRESENTATIVE WHO WE'LL HAVE TO PUT

13     ALL OF OUR EGGS IN THAT BASKET, AND THE DEFENDANTS HAVE KNOWN

14     ABOUT SONNY LOW ALL ALONG.

15          THE COURT:  ONE OF THE POINTS THAT THE DEFENSE -- I'M

16     SORRY -- THAT THE PLAINTIFF MAKES WITH RESPECT TO POSSIBLE

17     PREJUDICE BY MISS MAKAEFF NOT CONTINUING AS A REPRESENTATIVE

18     IS THAT MISS MAKAEFF'S DEPOSITION COULD BE RELIED UPON BY THE

19     DEFENSE TO AN EXTENT OTHERWISE INADMISSIBLE.  ARE YOU FAMILIAR

20     WITH ANY CASE WHERE THAT'S ACTUALLY OCCURRED, WHERE A FORMER

21     NAMED CLASS MEMBER HAS HAD THEIR DEPOSITION OFFERED AT TRIAL?

22          MS. JENSEN:  SO WHAT I CAN DIRECT YOUR HONOR'S

23     ATTENTION TO IS JUDGE HOUSTON'S RECENT ORDER IN THE MORNING

24     SONG CASE, IN WHICH A CLASS MEMBER WAS WITHDRAWN, AND JUDGE

25     HOUSTON SAID, TO THE EXTENT THAT IT'S RELEVANT, THEY'VE GOT

1    THAT DEPOSITION.  AND THERE ARE OTHER CASES AS WELL THAT WE

2    CITE IN OUR PAPERS WHERE THE COURT SAID IT'S NOT LEGAL

3    PREJUDICE IF YOU'VE GOT THE DEPOSITION.

4         NOW, IT REMAINS TO BE SEEN HOW THE COURT AND THE

5    PARTIES WILL WORK OUT WHICH EVIDENCE COMES IN THE TRIAL, AND

6    AS YOUR HONOR IS AWARE, WE HAVE OUR FINAL PRETRIAL CONFERENCE

7    COMING UP IN A MATTER OF SOME WEEKS.  BUT WHAT IS IMPORTANT

8    HERE IS THAT THERE'S NO SUBSTANTIVE DIFFERENCE.  IF THEIR

9    POINT IS THEY WANT TO TAKE THE TACK OF DESTROYING MISS MAKAEFF

10   ON THE WITNESS STAND, THAT IS NOT LEGAL PREJUDICE.  THEY'VE

11   GOT FOUR VOLUMES OF DEPOSITION TESTIMONY.  IF YOUR HONOR DEEMS

12   IT RELEVANT, THEY CAN USE THAT.

13        THE COURT:  ALL RIGHT.  THE PLAINTIFF HAS MADE A

14   NUMBER OF MOTIONS.  ONE IS TO WITHDRAW, AND ONE IS TO ENTER

15   PARTIAL JUDGMENT WITH RESPECT TO THE SLAPP, AND THEN ONE TO

16   BASICALLY PROHIBIT THE DEFENDANT FROM PURSUING ATTORNEY FEES

17   IN AN ACTION BASED UPON THE MOTION TO WITHDRAW.  LET ME ASK,

18   TO THE EXTENT THAT THE COURT WERE PREPARED TO GRANT A MOTION

19   TO WITHDRAW WITHOUT GRANTING THE ADDITIONAL RELIEF THAT IS

20   BEING SOUGHT BY MISS MAKAEFF, WOULD THAT AFFECT HER DESIRE TO

21   OBTAIN WITHDRAWAL?

22        MS. JENSEN:  SO, YOUR HONOR, HER REQUEST IS TO

23   WITHDRAW WITHOUT PREJUDICE ONLY WITH RESPECT TO HER RIGHTS AS

24   AN ABSENT CLASS MEMBER.  THE PROPOSED ORDER THAT WE SUBMITTED

25   TO THE COURT MAKES THAT ABUNDANTLY CLEAR.  SO IT'S WITH

1    PREJUDICE IN EVERY OTHER WAY.  SO, IN OTHER WORDS, MISS

2    MAKAEFF CAN'T GO OUT AND FILE ANOTHER --

3            THE COURT:  RIGHT.  NO, I UNDERSTAND THAT.

4            MS. JENSEN:  AND SO SHE WOULD ONLY REMAIN AN ABSENT

5    CLASS MEMBER, AND THE DEFENDANTS HAVE ALREADY STIPULATED TO

6    HER BEING ABLE TO PARTICIPATE AS A COHEN CLASS MEMBER BACK

7    WHEN SHE DISMISSED SOME OF HER INDIVIDUAL CLAIMS.  SO THAT'S

8    ALREADY BEEN STIPULATED TO.  YOUR HONOR HAS ALREADY ENTERED

9    THAT ORDER, AND ALL WE WOULD WISH TO DO IS TO PRESERVE HER

10   RIGHTS AS AN ABSENT CLASS MEMBER AND, OF COURSE, ANY RIGHTS

11   THAT SHE MAY HAVE AS TO THE SLAPP JUDGMENT.

12           THE COURT:  WELL, AND THEN THERE'S ALSO A REQUEST,

13   ISN'T THERE, TO ENTER THE JUDGMENT?  CORRECT?

14           MS. JENSEN:  YES, YOUR HONOR.

15           THE COURT:  ON THE SLAPP.  AND THEN TO PRECLUDE THE

16   DEFENDANTS FROM SEEKING ATTORNEY FEES OR PURSUING A MALICIOUS

17   PROSECUTION CLAIM BASED UPON THE MOTION TO WITHDRAW.  CORRECT?

18           MS. JENSEN:  YES, YOUR HONOR.  AND ESSENTIALLY

19   ANOTHER ISSUE IS THAT COURTS DO AND YOUR HONOR HAS ALLOWED

20   VOLUNTARY DISMISSAL, SUCH AS IN THE SHERMAN V. YAHOO CASE,

21   WITHOUT PREJUDICE ALONG THESE SAME LINES AND DENIED ATTORNEY'S

22   FEES AND COSTS.  NOW --

23           THE COURT:  WELL, THE SHERMAN CASE WAS DIFFERENT.

24           MS. JENSEN:  -- THERE COULD POTENTIALLY BE -- I'M

25   SORRY.

1          THE COURT:  SHERMAN WAS DIFFERENT IN THE SENSE THAT

2   THE SHERMAN REQUEST TO WITHDRAW OCCURRED FAR BEFORE ANY REAL

3   SUBSTANTIVE MOTIONS.  AS I RECALL, IT OCCURRED BEFORE THE

4   MOTION TO CERTIFY WAS FILED AND BEFORE THE MOTION FOR SUMMARY,

5   WELL, THE FINAL MOTION FOR SUMMARY JUDGMENT, AND SO THE

6   DISCOVERY WAS STILL UNDER WAY, AND THERE IT APPEARED THAT

7   THERE MAY HAVE BEEN SOME GAMESMANSHIP, PERHAPS, TO AVOID A

8   DEPOSITION OF MR. SHERMAN.

9          SO THERE I GRANTED THE REQUEST TO WITHDRAW, BUT I

10  ATTACHED CONDITIONS, AND THAT'S ONE OF THE THINGS THAT I'M

11  WONDERING IN THIS CASE WHETHER OR NOT, IF THE COURT DID GRANT

12  THE MOTION TO WITHDRAW, WHETHER OR NOT IT SHOULD IMPOSE OR

13  ATTACH CERTAIN CONDITIONS, SUCH AS ATTORNEY FEES, AND EVEN IF

14  I WEREN'T TO TAKE THOSE UP AT THIS TIME AND DEFER THEM UNTIL A

15  LATER POINT IN TIME, WHETHER OR NOT THAT WOULD BE APPROPRIATE.

16          WHAT'S YOUR RESPONSE TO THAT?

17          MS. JENSEN:  SO, YOUR HONOR, AND JUST TO ADDRESS YOUR

18  HONOR'S PRIOR POINT ABOUT THE PROPOSED ORDER, WHAT WE'RE

19  REALLY SEEKING IS JUST FOR THE PARTIES TO BEAR THEIR OWN FEES

20  AND COSTS, WHICH IS WHAT YOU JUST HIT ON.  YOUR HONOR, TO THE

21  EXTENT THAT THERE ARE ANY COSTS THAT ARE TRULY UNIQUE TO MISS

22  MAKAEFF AND NOT RELATED TO THE SLAPP ACTION, WE WOULD BE

23  WILLING TO MEET AND CONFER WITH THE DEFENSE ABOUT THOSE.

24          BUT AGAIN, AS TO ATTORNEY'S FEES, THE CASE IS A CLASS

25  ACTION, AND VIRTUALLY ALL THE WORK IN THIS CASE HAS BEEN THE

1    CLASS CLAIMS, AND SO WE DON'T THINK IT'S AN APPROPRIATE CASE

2    FOR ATTORNEY'S FEES.  BUT AGAIN, IF THERE WERE SOME OFFSET OF

3    COSTS THAT NEEDED TO BE DISCUSSED AMONG THE PARTIES, WE WOULD

4    BE, WE WOULD BE WILLING AND ABLE TO DO THAT.

5            THE COURT:  ALL RIGHT.  AND ONE OF THE BASES OF THE

6    DEFENDANTS' ARGUMENT RELATING TO LEGAL PREJUDICE WAS THAT IN

7    THE EVENT THAT MISS MAKAEFF HAD NOT BEEN A CLASS

8    REPRESENTATIVE, THAT THE COURT WOULD HAVE SOMEHOW RULED

9    DIFFERENTLY ON ONE OR MORE MOTIONS.  HOW DO YOU RESPOND?

10           MS. JENSEN:  YOUR HONOR, I HAVE TO SAY THAT I

11   SCRATCHED MY HEAD WHEN I READ THAT, BECAUSE, AGAIN, MISS

12   MAKAEFF IS ONLY ONE OF FOUR CLASS REPRESENTATIVES AND ONLY ONE

13   OF TWO CALIFORNIA REPRESENTATIVES.  SO THERE'S ALWAYS BEEN

14   OTHER PLAINTIFFS IN THIS CASE.  THIS CASE IS REALLY ABOUT A

15   FRAUDULENT SCHEME, AND FOR PURPOSES OF THE CALIFORNIA CLAIMS,

16   IT FOCUSES ON THE DEFENDANTS' ACTIONS.

17           SO, WERE THE REPRESENTATIONS FALSE?  WERE THEY NOT?

18   NONE OF THESE ISSUES HAVE ANYTHING TO DO WITH MISS MAKAEFF,

19   AND SO WE DON'T THINK THAT ANY OF THE RULINGS WOULD HAVE BEEN

20   DIFFERENT, AND IT'S REALLY, I THINK, TELLING BECAUSE THERE

21   WERE OTHER CLASS REPRESENTATIVES AND THEY ARE STILL STANDING

22   AS WELL.

23           THE COURT:  ALL RIGHT.  AND THEN LET ME ASK YOU ONE

24   LAST QUESTION, OR LAST SET OF QUESTIONS.  I ASKED PLAINTIFFS'

25   COUNSEL TO PROVIDE TO THE COURT *IN CAMERA* CERTAIN MEDICAL

1   RECORDS THAT WOULD CORROBORATE, SUBSTANTIATE MISS MAKAEFF'S

2   ASSERTIONS THAT SHE HAS SUFFERED PHYSICALLY AND MENTALLY DUE

3   TO THE STRESS CREATED BY THIS ACTION, DUE TO THE APPREHENSION

4   CREATED DURING THE COURSE OF THESE PROCEEDINGS, AND I KNOW

5   THAT YOU ASKED FOR IT TO BE AN *IN CAMERA* SUBMISSION.  MY

6   QUESTION IS:  DO YOU HAVE ANY OBJECTION TO THE DEFENSE BEING

7   ALLOWED TO REVIEW IT ALONG WITH THE COURT IN CHAMBERS WITH

8   PLAINTIFFS' COUNSEL ALSO PRESENT?

9           MS. JENSEN:  YES, YOUR HONOR.  THE COURT'S MARCH 9TH

10  ORDER SUGGESTED OR ORDERED US TO BRING THE DOCUMENTATION FOR

11  THE COURT'S REVIEW.  WE INTERPRETED THAT ORDER TO BE IN LINE

12  WITH OUR OFFER, WHICH WAS THAT IT WOULD BE *IN CAMERA*, AND

13  BECAUSE IT --

14          THE COURT:  AND *IN CAMERA* BEING THAT IT WOULD

15  EXCLUSIVELY BE FOR THE COURT --

16          MS. JENSEN:  YES, YOUR HONOR.

17          THE COURT:  -- AND NOT TO BE SHARED WITH THE DEFENSE

18  ATTORNEYS.

19          MS. JENSEN:  SO, UNFORTUNATELY, I DON'T HAVE ANY

20  AUTHORIZATION FROM MY CLIENT, WHOSE SENSITIVE MEDICAL HISTORY

21  IS INCLUDED IN THOSE DOCUMENTS, TO PROVIDE ANY FURTHER

22  DISTRIBUTION THAN JUST THE COURT.

23          THE COURT:  ALL RIGHT.  AND IT MAY BE THAT I'LL ASK

24  YOU TO DETERMINE WHETHER OR NOT THERE'S ANY PORTION OF THIS

25  THAT YOUR CLIENT WOULD BE AGREEABLE TO MAKE AVAILABLE FOR

1    INSPECTION BY DEFENSE COUNSEL IN THIS, AND THEN, IN ADDITION,

2    TO THE EXTENT THAT SHE WOULD NOT BE WILLING TO MAKE ANY

3    PORTION OF THESE RECORDS AVAILABLE, WHETHER OR NOT THE COURT

4    CAN TAKE THESE RECORDS INTO ACCOUNT *IN CAMERA* WITHOUT

5    PROVIDING THE BENEFIT OF OR WITHOUT GIVING THE OPPORTUNITY TO

6    INSPECT TO THE DEFENSE.

7              MS. JENSEN:  UNDERSTOOD, YOUR HONOR.

8              THE COURT:  ALL RIGHT.  THANK YOU.

9              MS. JENSEN:  COULD I ADDRESS JUST ONE MORE POINT?

10             THE COURT:  YES.

11             MS. JENSEN:  AND THAT IS THAT I THINK INTERRELATED

12   WITH YOUR QUESTION ABOUT THE STAGE OF THE PROCEEDINGS, I

13   WANTED TO ADDRESS THE ISSUE OF WHY NOW?  WHY AT THIS TIME?

14   AND, YOUR HONOR, WITHIN A FEW WEEKS OF YOUR ISSUING THE

15   SCHEDULING ORDER LATE LAST FALL, WE APPROACHED THE DEFENSE TO

16   ASK THEM ABOUT MISS MAKAEFF, BECAUSE SHE MADE IT CLEAR THAT,

17   UNDER THE CIRCUMSTANCES THAT WE FACE RIGHT NOW, SHE WAS UNABLE

18   TO CONTINUE FOR HEALTH REASONS.  MR. PETROCELLI'S INITIAL

19   RESPONSE WAS, I DON'T SEE A PROBLEM.  I'LL ADVISE MY CLIENT TO

20   ALLOW IT.  AND NOW WE SEE THIS RESPONSE IN THE BRIEFING.

21             BUT I WANTED TO MAKE ONE POINT, AND THAT IS THAT THIS

22   MOTION AND THIS CASE OBVIOUSLY INVOLVES HUMANS AND HUMAN

23   CONDITIONS AND HUMAN EMOTIONS, AND I DON'T THINK ANYBODY COULD

24   HAVE ANTICIPATED A YEAR AGO WHERE WE WOULD FIND OURSELVES.

25   AND MISS MAKAEFF HAS NOT ONLY SUFFERED THROUGH A

1    MILLION-DOLLAR COUNTERCLAIM THAT WAS DIRECTED BY MR. TRUMP

2    PERSONALLY, BUT SHE'S NOW BEEN DERIDED AND CALLED OUT BY NAME

3    ON THE CAMPAIGN TRAIL, ON TWITTER, AND EVEN ON THE GOP

4    PRESIDENTIAL STAGE.

5         I DON'T THINK THAT MISS MAKAEFF SIGNED UP FOR THAT.

6    AND EVEN IF SOMEONE COULD HAVE SAID, OH, WELL, HE HAS

7    POLITICAL ASPIRATIONS, I DON'T THINK EVEN THE MOST BRILLIANT

8    POLITICAL MIND COULD HAVE ANTICIPATED WE WOULD BE WHERE WE

9    ARE, WITH THE VERY REAL POSSIBILITY IF THIS CASE GOES TO TRIAL

10   DURING THE ELECTION, AND MISS MAKAEFF SIMPLY HAS BEEN PUT

11   THROUGH TOO MUCH, AND SO WE WOULD RESPECTFULLY REQUEST THAT

12   THE COURT ALLOW HER TO WITHDRAW.

13         THE COURT:  ALL RIGHT.  THANK YOU.

14         MR. PETROCELLI.

15         LET ME ASK YOU AS A STARTING POINT, IN YOUR PAPERS

16   YOU PROVIDED THE COURT WITH A NUMBER OF CASES WHERE A PARTY

17   WAS NOT ALLOWED TO SUBSTITUTE SOMEONE ELSE IN THEIR PLACE.

18   YOU HAVE CASES THAT RELY UPON RULE 15 AND RULE 16.  DO YOU

19   HAVE ANY CASE THAT WAS DECIDED IN THE NINTH CIRCUIT ADDRESSING

20   A RULE 41 MOTION TO WITHDRAW WHERE WITHDRAWAL WAS DENIED?

21         MR. PETROCELLI:  OFF THE TOP OF MY HEAD, YOUR HONOR,

22   I CAN'T ANSWER THAT QUESTION.  I WOULD HAVE TO REVIEW OUR

23   BRIEF.  I WILL SAY THAT I DO NOT BELIEVE WE HAVE SEEN ANY

24   CASES WHERE WITHDRAWAL WAS PERMITTED, ESPECIALLY ON THIS

25   UNCONDITIONAL BASIS THAT'S BEEN REQUESTED SIX YEARS INTO A

1   CASE, WHERE ALL THAT REMAINS IS THE COMPLETION OF TRIAL

2   PREPARATION AND TRIAL.

3          YOUR HONOR CORRECTLY SET OUT THE LAW, IN MY VIEW, IN

4   THE SHERMAN VS. YAHOO CASE IN WHICH YOU WENT THROUGH THE

5   THREE-PART INQUIRY IN DEALING WITH THE CASE THAT WAS, AS YOU

6   POINTED OUT, IN A MUCH EARLIER STAGE OF LITIGATION, BEFORE THE

7   CLASS CERTIFICATION, BEFORE MR. SHERMAN WANTED TO WITHDRAW

8   WITHOUT PREJUDICE AND YOUR HONOR ALLOWED THAT TO HAPPEN,

9   POINTING OUT THAT IT WAS VERY EARLY ON IN THE CASE, AND ALSO

10  CONDITIONING IT ON A DEPOSITION OF MR. SHERMAN IN ORDER TO

11  MITIGATE AGAINST ANY PREJUDICE, AND AT THE END OF THE DAY THIS

12  WHOLE ANALYSIS IS ABOUT PREJUDICE AND WHETHER --

13         THE COURT:  THE THING ABOUT THAT, HOW ARE YOU

14  PREJUDICED BY THIS?

15         MR. PETROCELLI:  YOUR HONOR, HONESTLY, I DON'T THINK

16  I'VE SEEN A CASE ANYTHING CLOSE TO THIS LEVEL AND MAGNITUDE OF

17  THE DEPTH OF PREJUDICE, AND LET ME EXPLAIN WHY.  WE HAVE BEEN

18  PREJUDICED BACKWARDS; WE HAVE BEEN PREJUDICED FORWARDS.

19         ON BACKWARDS, YOUR HONOR, MISS MAKAEFF WASN'T JUST

20  ONE OF A NUMBER OF FOLKS WHOSE EVIDENCE AND WHOSE ARGUMENTS

21  AND WHOSE CLAIMS WERE PROFFERED TO THE COURT.  SHE WAS THE

22  FIRST PLAINTIFF, THE LEAD PLAINTIFF, DESPITE OTHER CLASS

23  REPRESENTATIVES COMING IN AND OUT ALL DURING THE SIX YEARS.

24  SHE REMAINED CONSTANT THROUGHOUT.  AND IF YOU GO BACK AND

25  REVIEW THE BRIEFING ON THE MOTION TO DISMISS, WHICH YOUR HONOR

1    DENIED, ON THE MOTION THAT THEY FILED FOR CERTIFICATION, WHICH

2    YOUR HONOR GRANTED, ON THE MOTION FOR SUMMARY JUDGMENT THAT WE

3    FILED, WHICH YOUR HONOR DENIED, ON THE MOTION FOR --

4              THE COURT:  BY THE WAY, WAS I THE JUDGE THAT DENIED

5    THE MOTION TO DISMISS?

6              MR. PETROCELLI:  YOU KNOW WHAT?  YOU'RE CORRECT.

7              THE COURT:  IT WAS JUDGE GONZALEZ.

8              MR. PETROCELLI:  IT WAS JUDGE GONZALEZ.  THAT'S

9    CORRECT, AND I DIDN'T MEAN TO PERSONALIZE IT TO YOUR HONOR.

10   THE COURT.

11             THE COURT:  ALL RIGHT.

12             MR. PETROCELLI:  OKAY?  THANK YOU FOR THAT

13   CLARIFICATION.

14             AND ALSO THE MOTION TO DECERTIFY AS TO LIABILITY,

15   WHICH WAS DENIED BY THE COURT, ALTHOUGH GRANTED AS TO DAMAGES.

16   IF YOU GO BACK, AND WE HAVE, YOUR HONOR, AND YOU REVIEW THE

17   BRIEFING, IT'S ALL A MATTER OF RECORD.  MISS MAKAEFF'S

18   EVIDENCE, MISS MAKAEFF'S DEPOSITION, MISS MAKAEFF'S

19   DECLARATION, AND MISS MAKAEFF'S INDIVIDUAL CLAIMS WERE THE

20   PILLAR OF THE POSITIONS ADVANCED BY THE PLAINTIFFS TO SECURE

21   DECISIVE COURT RULINGS IN THEIR FAVOR.

22             THE COURT:  LET ME ASK YOU ABOUT THAT.

23             MR. PETROCELLI:  PLEASE.

24             THE COURT:  ULTIMATELY, THE COURT IDENTIFIED THREE

25   CORE REPRESENTATIONS, OR MISREPRESENTATIONS --

```
 1              MR. PETROCELLI:  CORRECT.

 2              THE COURT:  -- INVOLVING --

 3              MR. PETROCELLI:  FOR, FOR CERTIFICATION.

 4              THE COURT:  RIGHT.  AND SO THE FIRST ONE WAS WITH

 5   RESPECT TO TRUMP UNIVERSITY --

 6              MR. PETROCELLI:  CORRECT.

 7              THE COURT:  -- WHETHER OR NOT IT WAS AN ACCREDITED

 8   UNIVERSITY.  WITH RESPECT TO THAT PARTICULAR CORE

 9   MISREPRESENTATION, IT'S NOT NECESSARY TO HAVE MISS MAKAEFF

10   TESTIFY AT TRIAL IN ORDER FOR THE DEFENSE TO PROPERLY OR BE

11   FAIRLY ABLE TO DEFEND AGAINST THAT CLAIM.

12              MR. PETROCELLI:  WELL, YOUR HONOR, YOU COULD SAY

13   THAT, I SUPPOSE, ABOUT ALL OF THEM, BUT I DON'T THINK THAT'S

14   THE PROPER ANALYSIS.  THAT WAS, THAT WAS THE PERSON AND THE

15   EVIDENCE THAT WAS THE CENTERPIECE OF THIS LITIGATION.  THAT'S

16   THE CASE WE'VE BEEN LITIGATING, AND NOW, SIX YEARS LATER, WHEN

17   ALL THAT REMAINS FOR HER TO CARRY OUT HER FINAL DUTIES AS THE

18   CLASS REPRESENTATIVE IS TO SHOW UP IN TRIAL FOR ONE OR TWO

19   DAYS AND TESTIFY, SHE WANTS TO BAIL.  THERE'S ABSOLUTELY NO

20   BASIS FOR THAT, YOUR HONOR.

21              THE COURT:  ALL RIGHT.  YOU SAID THERE'S NO BASIS

22   WHATSOEVER --

23              MR. PETROCELLI:  CORRECT.

24              THE COURT:  -- FOR MISS MAKAEFF.  I MEAN, ARE YOU

25   SERIOUS, THERE'S NO BASIS?
```

1            MR. PETROCELLI:  WELL, YOUR HONOR, LET'S TALK ABOUT

2   WHAT SHE'S ADVANCED.  OKAY?  SHE SAYS THAT "I DON'T WANT THE

3   PUBLICITY."  SHE STARTED THE PUBLICITY, YOUR HONOR.  SHE WAS

4   VERY ACTIVE PUBLICLY EVEN BEFORE THIS CASE WAS FILED, AND

5   THROUGHOUT THE CASE WAS VERY PUBLIC IN GIVING INTERVIEWS ABOUT

6   THE CASE, AND YOU SAW THE RECORD ON THAT.

7            SECONDLY, YOUR HONOR --

8            THE COURT:  BUT THROUGH 2012, I BELIEVE, WAS THERE

9   MUCH, WAS THERE MUCH IN TERMS OF THIS CAMPAIGN FOLLOWING 2012?

10           MR. PETROCELLI:  MY RECOLLECTION IS, MY

11  UNDERSTANDING, I SHOULD SAY, IS, UNTIL ABOUT A COUPLE WEEKS

12  AGO, YOUR HONOR, THIS WAS RELATIVELY QUIET AND WASN'T ON THE

13  RADAR, AND THEN ALL OF A SUDDEN IT SHOWS UP IN PRESIDENTIAL

14  CAMPAIGNS, WITH BRIEFS FILED BY THE PLAINTIFFS A DAY BEFORE

15  THE FILING ON THE DAY OF THE NATIONAL DEBATES AND QUESTIONS

16  BEING ASKED BY THE MEDIA TAKEN FROM THE BRIEFS, YOUR HONOR,

17  DEPOSITIONS BEING FILED AS A MATTER OF RECORD WHEN THERE'S NO

18  NEED TO FILE THEM.  YOU SEE THE REPLY SUBMISSION IN THIS CASE.

19  IT HAS VIRTUALLY NOTHING TO DO, IT HAS NOTHING TO DO, YOUR

20  HONOR, WITH THE ISSUES IN THIS CASE.

21           THE COURT:  BUT THAT SUGGESTS THAT THIS IS A CASE

22  THAT'S OUT OF THE NORM.  CORRECT?  THIS IS A UNIQUE CASE.

23           MR. PETROCELLI:  FOR SURE, THE CASE IS OUT OF THE

24  NORM.  THIS CASE IS OUT OF THE NORM, YOUR HONOR.  BUT, YOU

25  KNOW, SIX YEARS LATER, AFTER SHE HAS BEEN THE PILLAR OF THEIR

1    CASE AND OUR DEFENSE, OUR DISCOVERY DECISIONS, THE WAY THE

2    DEPOSITIONS THAT WERE TAKEN, THE DEPOSITIONS THAT WERE NOT

3    TAKEN, THE EMPHASIS ON THE DEPOSITIONS.

4              THE COURT:  WELL, LET ME ASK YOU THIS.  WHICH

5    DEPOSITIONS WEREN'T TAKEN?

6              MR. PETROCELLI:  WELL, IF SHE HAD NOT BEEN IN THE

7    CASE, YOUR HONOR, PUTTING ASIDE WHETHER YOU WOULD HAVE OR

8    ANOTHER JUDGE WOULD HAVE RULED DIFFERENTLY ON THOSE MOTIONS,

9    OTHER CALIFORNIA CLASS MEMBERS MIGHT HAVE BEEN SOUGHT TO BE

10   DEPOSED.  RIGHT NOW, THERE'S ONLY A COUPLE HUNDRED PAGES FROM

11   MR. LOW AND --

12             THE COURT:  ALL RIGHT, LET ME ASK YOU, IF THE COURT

13   WERE TO PERMIT MISS MAKAEFF TO WITHDRAW WITH THE CONDITION OF

14   FURTHER DEPOSITION OF MR. LOW, HOW WOULD YOU BE DENIED --

15             MR. PETROCELLI:  YOUR HONOR, WE GO FAR BEYOND, IN OUR

16   VIEW, GETTING ANOTHER DAY.  WE WOULD (A) NEED TO REVISIT ALL

17   THE PRIOR RULINGS THAT THE COURT HAS MADE TO SEE WHETHER AND

18   TO WHAT, WHETHER THEY HAVE BEEN ADVERSELY IMPACTED BY MISS

19   MAKAEFF'S DISMISSAL OF HER CLAIMS.  SHE'S ASKING FOR HER

20   CLAIMS TO BE DISMISSED, WHICH MEANS THAT EVIDENCE THAT WAS

21   PREVIOUSLY SUBMITTED IS OF NO CONSEQUENCE ANYMORE, AND IT

22   CAN'T BE HEADS, I WIN; TAILS, YOU LOSE.  THEY GET TO USE THE

23   EVIDENCE TO SECURE KEY LEGAL RULINGS AND THEN, WHEN IT COMES

24   TIME TO PROVE THE CASE IN COURT, SHE WANTS TO DROP OUT OF THE

25   CASE.  THAT'S JUST FUNDAMENTALLY WRONG, YOUR HONOR.

1        AND THE OTHER ISSUES WHEN YOU CHALLENGED ME ON NO

2    BASIS WHATSOEVER, SHE TALKED ABOUT THE PUBLICITY.  SHE TALKED

3    ABOUT THE MEDICAL REASONS.  WE HAVE NO VISIBILITY INTO THAT.

4    WE ASKED OPPOSING COUNSEL RIGHT BEFORE THE HEARING BEGAN TO

5    LET US SEE THESE RECORDS.  THERE'S A PROTECTIVE ORDER.

6    THERE'S EVEN AN ATTORNEY'S-EYES-ONLY PROVISION.  WE'VE BEEN

7    DENIED ACCESS TO THAT.  SO, I MEAN, I HAVE NO BASIS TO JUDGE

8    HER MEDICAL REASONS, AND AS YOUR HONOR WELL KNOWS, PEOPLE WHO

9    ARE VERY ILL, EXTREMELY ILL, ARE REQUIRED TO TESTIFY IN COURT

10   CASES ALL THE TIME.

11        THE COURT:  BUT YOU'D HAVE TO CONFESS THAT THIS IS A

12   LITTLE BIT DIFFERENT FROM THE TYPICAL CASE WHERE YOU TALK

13   ABOUT THE GLARE OF THE MEDIA.

14        MR. PETROCELLI:  THE PUBLICITY, YOUR HONOR.

15        THE COURT:  RIGHT.

16        MR. PETROCELLI:  YES, YOUR HONOR, PUBLICITY THAT WE

17   DID NOT, UNTIL RECENTLY, WE DID NOT BRING AND WHICH, I

18   SUGGEST, HAS BEEN FUELED BY OPPOSING FORCES, NOT --

19        THE COURT:  NOT MISS MAKAEFF.

20        MR. PETROCELLI:  EXCUSE ME?

21        THE COURT:  MISS MAKAEFF.  NOT MISS MAKAEFF.

22        MR. PETROCELLI:  I DON'T KNOW, YOUR HONOR.

23        THE COURT:  DO YOU HAVE ANY PROOF?

24        MR. PETROCELLI:  ALL I CAN TELL YOU IS THAT I READ

25   TODAY IN THE *NEW YORK TIMES* THAT AN EXPERT HIRED BY THE

1   PLAINTIFFS, NEVER DISCLOSED TO US, IS GIVING COMMENTS ADVERSE

2   TO OUR CASE TODAY.  I MEAN, MISS MAKAEFF IS THE PLAINTIFF IN

3   THIS CASE.  SHE AND HER COUNSEL HAVE FIDUCIARY DUTIES, YOUR

4   HONOR, AND THERE ARE VERY SERIOUS ISSUES BEING RAISED ABOUT

5   WHETHER THE DEFENDANTS CAN EVER GET A FAIR TRIAL IF THE

6   ATMOSPHERE AND THE ENVIRONMENT ARE BEING POISONED.  THERE IS

7   NO REASON TO BE RELEASING DEPOSITIONS.

8           THE COURT:  THERE ARE ALSO ALLEGATIONS THAT THE

9   POISON IS A TWO-WAY STREET.

10          MR. PETROCELLI:  I DON'T THINK THOSE ALLEGATIONS ARE

11  FAIR.

12          THE COURT:  ALL RIGHT, SO YOU DON'T BELIEVE AND I'M

13  SURE THE PLAINTIFF DOESN'T BELIEVE TO THE CONTRARY, BUT

14  ULTIMATELY BOTH SIDES ARE MAKING THIS ARGUMENT.

15          MR. PETROCELLI:  WE MAY HAVE TO GET TO THE BOTTOM OF

16  IT, YOUR HONOR.

17          BUT WITHOUT GETTING DISTRACTED ON THAT, I WANT TO

18  RETURN TO THE PREJUDICE, YOUR HONOR, BECAUSE IN ADDITION TO

19  WHAT WAS OUTLINED IN OUR PAPERS, THE EFFECT THAT SHE'S HAD ON

20  THE STAGE AND THE CONDUCT AND THE OUTCOME OF THE LITIGATION TO

21  DATE AND THE LACK OF OPPORTUNITY THAT WE HAD TO RECALIBRATE

22  WHAT WE WOULD HAVE DONE ABSENT MISS MAKAEFF, WE HAVE THE ISSUE

23  OF PREJUDICE GOING FORWARD, AND THE ARGUMENT THAT'S BEING MADE

24  IS THAT WE DON'T UNDERSTAND WHAT THEY'RE ASKING FOR, YOUR

25  HONOR, AND I BELIEVE THIS IS UNPRECEDENTED.  THEY ARE ASKING

1    FOR AN ORDER RIGHT NOW, EVEN WHEN NO TRIAL DATE HAS BEEN SET,

2    THAT SHE BE EXCUSED FROM TESTIFYING LIVE AT TRIAL, EVEN THOUGH

3    SHE MAY WELL BE SUBJECT TO THE JURISDICTION OF THE COURT.

4    THERE'S NO BASIS FOR THAT.

5              THE COURT:  WELL, LET ME ASK YOU ABOUT THAT.

6              MR. PETROCELLI:  WHETHER SHE -- I'M SORRY.

7              THE COURT:  WHAT IS THE LAW ON CALLING UNNAMED -- SHE

8    WOULD BECOME AN UNNAMED CLASS REPRESENTATIVE -- AS A WITNESS

9    AT TRIAL?

10             MR. PETROCELLI:  SHE'S SUBJECT TO THE JURISDICTION.

11   WE ISSUE A TRIAL SUBPOENA.  OPPOSING COUNSEL OR OPPOSING

12   PARTIES CAN OFTENTIMES MOVE TO QUASH, TO SAY THAT SOMEBODY IS

13   NOT RELEVANT, AND SHE WOULD BE DIRECTLY RELEVANT, YOUR HONOR.

14   AND THE FACT THAT THERE ARE A THOUSAND PAGES, OR 15 HOURS, OR

15   WHATEVER, HER PRIOR DEPOSITION, THERE'S NO SUBSTITUTE FOR

16   PUTTING HER ON LIVE ON EACH OF THE THREE CORE REPRESENTATIONS.

17   I MEAN, SHE WAS --

18             THE COURT:  THAT WOULD BE A SEPARATE ISSUE FOR THE

19   COURT TO TAKE UP AT THE APPROPRIATE TIME.

20             MR. PETROCELLI:  WELL, TO BE CLEAR, I WOULD AGREE

21   THAT IT WOULD BE IMPROVIDENT AND CERTAINLY PREMATURE FOR THE

22   COURT TO ISSUE AN ORDER EXCUSING HER FROM TESTIFYING AT TRIAL,

23   BUT THAT'S THE RELIEF THAT I UNDERSTAND IS BEING REQUESTED, IN

24   ADDITION TO ALLOWING HER TO DISMISS HER CLAIMS WITHOUT

25   PREJUDICE, YOUR HONOR, AND I DON'T THINK THAT'S WARRANTED AT

1    ALL, AND THERE'S REALLY NO AUTHORITY FOR THAT PROPOSITION.

2            THE COURT:  CAN YOU POINT ME SPECIFICALLY TO THE

3    RECORD WHERE THAT SPECIFIC REQUEST IS MADE, THAT IS, A REQUEST

4    TO PREVENT THE COURT FROM ISSUING A SUBPOENA?

5            MR. PETROCELLI:  WELL, YOU KNOW, YOUR HONOR, WE IN

6    OUR OPPOSITION ARGUED THAT THAT'S WHAT THEY ARE SEEKING, AND

7    IN THE REPLY BRIEF, BECAUSE IT WAS NOT EXACTLY CLEAR, BUT IN

8    THEIR REPLY BRIEF WHAT THEY CAME BACK AND SAID THAT -- AND IF

9    I'M MISTAKEN ON THIS, BY THE WAY, IF THEY'RE NOT SEEKING THAT

10   RELIEF, THEN I DON'T NEED TO ARGUE ABOUT THIS.

11           THE COURT:  ALL RIGHT.  I'M NOT -- WELL, WHAT I'M

12   SAYING IS, I DIDN'T SEE THAT AS A SPECIFIC REQUEST.  I DO SEE

13   AT FOOTNOTE SIX ON PAGE EIGHT THE PLAINTIFF SAYS, EVEN IF THIS

14   COURT DETERMINES THAT MAKAEFF'S TESTIMONY SOMEHOW MAKES

15   RELEVANT, THE DEFENDANTS CAN SIMPLY USE HER DEPOSITION

16   TESTIMONY AT TRIAL.

17           MR. PETROCELLI:  THAT'S THE POINT I WAS GOING TO GET

18   TO.  SO, WHEN YOU READ THE REPLY BRIEF, THERE WASN'T ANY

19   STATEMENTS TO THE EFFECT THAT, NO, NO, NO, YOU'VE GOT IT

20   WRONG.  THAT'S NOT WHAT WE'RE ASKING FOR, YOUR HONOR.  IN

21   FACT, THAT APPEARS TO BE WHAT THEY'RE ASKING FOR, AND I THINK

22   THAT THAT IS COMPLETELY UNWARRANTED.

23           THE COURT:  I STILL DON'T SEE WHERE THAT'S BEEN ASKED

24   FOR, BUT I UNDERSTAND THAT THAT'S YOUR ARGUMENT.

25           MR. PETROCELLI:  OKAY.  BECAUSE, YOU KNOW, WE HAVE

1    STRUCTURED OUR DEFENSE TO MAKE HER THE CENTERPIECE OF THE

2    DEFENSE, BECAUSE WE BELIEVE THAT WHEN CALLED TO TESTIFY AT THE

3    TRIAL, THAT THROUGH HER TESTIMONY, LARGELY THROUGH HER

4    TESTIMONY, WE WILL BE ABLE TO DISPROVE THE FALSITY OF THESE

5    MISREPRESENTATIONS, OR THE FACT THAT THEY WERE NOT MATERIAL,

6    OR THE FACT THAT THEY DID NOT RELY ON THEM.  ALL OF THESE

7    ELEMENTS ARE ELEMENTS OF PROOF THAT THE PLAINTIFF MUST MAKE IN

8    ADDITION, YOUR HONOR, TO THE ISSUE OF DAMAGES, WHICH WE'VE NOT

9    DISCUSSED.

10        BUT WE'VE HAD AN INITIAL CONVERSATION, AND WE WERE

11   GOING TO MEET AND CONFER AND COME BACK AT SOME POINT WITH YOUR

12   HONOR TO TALK ABOUT HOW TO ADDRESS THE ISSUE OF DAMAGES.  BUT

13   MISS MAKAEFF ALSO WANTS TO KEEP HER CLAIM FOR RECOVERY AS A

14   CLASS MEMBER, AND SO SURELY SHE'S GOING TO HAVE TO SUBMIT TO

15   SOME KIND OF EXAMINATION ABOUT HER DAMAGES, IN ADDITION TO THE

16   CORE ELEMENTS.

17        SO I JUST -- I SEE, YOUR HONOR, THAT THIS LATE IN THE

18   GAME, SIX YEARS LATER, WITH ALL THAT SHE HAS TO DO TO IS SHOW

19   UP AND TESTIFY FOR A COUPLE OF DAYS IN TRIAL, WHY THIS

20   DISMISSAL SHOULD BE PERMITTED.

21        THE COURT:  LET ME ASK YOU SOMETHING.  THE 17200 AND

22   THE 17500 CLAIMS, THOSE ARE EQUITABLE CLAIMS THAT ARE TRIED TO

23   THE COURT.  IS THAT YOUR UNDERSTANDING?

24        MR. PETROCELLI:  YOU KNOW, I DON'T ACTUALLY, I DON'T

25   ACTUALLY DEFINITIVELY KNOW, YOUR HONOR.

```
1              THE COURT:  I THINK THE ANSWER IS YES.

2              MR. PETROCELLI:  IT MAY WELL BE.  I JUST AM NOT CLEAR

3    WHETHER THOSE CLAIMS ENTIRELY ARE EQUITABLE CLAIMS AND ONLY

4    TRIED TO THE COURT.  THERE'S A THIRD CAUSE OF ACTION, THOUGH.

5              THE COURT:  THERE'S THE CLRA, AND WHAT'S YOUR

6    POSITION AS TO WHETHER OR NOT THE CLRA IS A LEGAL CLAIM THAT

7    WOULD REQUIRE A JURY TRIAL?

8              MR. PETROCELLI:  IS YOUR -- TO BE CLEAR, AS I

9    UNDERSTAND THE PLEADING, MISS MAKAEFF HAS THREE CLAIMS, THE

10   FIRST, SECOND, AND THIRD OF THEIR OPERATIVE COMPLAINT, SECTION

11   17200, THE UNFAIR COMPETITION LAW, SECTION 17050,

12   CALIFORNIA, THE CONSUMER LAW REMEDY ACT, I GUESS IT'S CALLED,

13   AND 17500, UNTRUE AND MISLEADING ADVERTISING.

14             THE COURT:  RIGHT.

15             MR. PETROCELLI:  IT'S BEEN MY GENERAL EXPERIENCE,

16   YOUR HONOR, HAVING NOT THOUGHT ABOUT THIS QUESTION, CANDIDLY,

17   THAT THOSE ARE EQUITABLE CLAIMS, AND, YOU KNOW, IN CALIFORNIA

18   EQUITABLE CLAIMS WOULD PRECEDE LEGAL CLAIMS.  IN FEDERAL

19   COURT, IT'S THE OTHER WAY AROUND.  IF THERE'S A JURY CLAIM

20   LEFT IN THE CASE, THE JURY HEARS THE LEGAL CLAIMS FIRST, AND

21   THEN THE COURT PICKS UP AND DECIDES THE EQUITABLE CLAIMS OUT

22   OF THAT TRIAL, AND MAYBE EVEN BIFURCATE THE TRIAL.  SO THE

23   PROCEDURE IS A LITTLE BIT, I THINK, DIFFERENT BETWEEN STATE

24   AND FEDERAL COURT, BUT YOU'RE ASKING ME AN INTRIGUING

25   QUESTION.  I'M NOT SURE WHY YOU'RE ASKING, BUT --
```

1          THE COURT:  WELL, IT GOES TO THE QUESTION OF

2     PREJUDICE.

3          MR. PETROCELLI:  HOW SO?

4          THE COURT:  IF ALL WE HAD WAS A 17200 AND A 17500

5     ACTION, WHICH ARE THE ONES THAT MAKAEFF IS ONE OF THE

6     REPRESENTATIVES FOR, AND THAT'S EQUITABLE CAUSE OF ACTION,

7     EQUITABLE CAUSES OF ACTION, RIGHT?  TO BE HEARD BY ME.  YOU'RE

8     TALKING ABOUT EVIDENCE THAT THE JURY WOULD NEVER EVEN BE

9     EXPOSED TO, AREN'T YOU?

10          MR. PETROCELLI:  WELL, THE TRIER OF FACT.

11          THE COURT:  WELL, THE JURY.  I WOULD --

12          MR. PETROCELLI:  WHETHER IT'S THE COURT OR THE TRIER

13     OF FACT --

14          THE COURT:  OKAY.

15          MR. PETROCELLI:  -- I DON'T KNOW THAT THAT WOULD

16     CHANGE THE ANALYSIS AT ALL.  WE WOULD STILL --

17          THE COURT:  BECAUSE IT SEEMS TO ME THAT YOU'RE

18     RELYING UPON MISS MAKAEFF TO SOMEHOW DEFEND AGAINST ALL THE

19     CAUSES OF ACTION --

20          MR. PETROCELLI:  CORRECT.

21          THE COURT:  -- THE NEW YORK AND FLORIDA.

22          MR. PETROCELLI:  NEW YORK AND FLORIDA, BECAUSE IT'S

23     THE SAME SET OF FACTS, YOUR HONOR.  THERE MAY BE DIFFERENT

24     NUANCES TO THE INDIVIDUAL STATUTES, AND I'M NOT SAYING SHE'S A

25     CLASS REP FOR THE FLORIDA OR NEW YORK CLAIM, BUT IT'S THE SAME

1   FACTS.  AND HER CREDIBILITY, WHICH, FRANKLY, WE HAVE FEATURED

2   AS A CENTERPIECE OF OUR LITIGATION IN OUR DEFENSE, AND YOU CAN

3   EVEN LOOK AT THE TRIAL MATERIALS THAT HAVE BEEN PUT TOGETHER

4   AND ALREADY FILED WITH THE COURT, I MEAN, WE HAVE TO BASICALLY

5   START ALL OVER AGAIN, YOUR HONOR, IF SHE'S DISMISSED NOW.  AND

6   AGAIN, I ASK THE COURT, FOR WHAT REASON OTHER THAN HER DESIRE

7   TO NOT FINISH WHAT SHE STARTED.  NOW, YES, IT'S A HIGH-PROFILE

8   CASE.  I GET THAT, YOUR HONOR.

9          THE COURT:  HAVE YOU EVER HAD A HIGHER-PROFILE CASE?

10   I KNOW YOU'VE HAD SOME OTHERS.

11          MR. PETROCELLI:  OH, I'VE HAD TWO.  I'VE HAD TWO,

12   BUT, YOU KNOW --

13          THE COURT:  AND I ASKED.  DO YOU THINK THIS CASE,

14   WHEN IT GOES TO TRIAL, WILL HAVE AS MUCH MEDIA ATTENTION?

15          MR. PETROCELLI:  THIS WILL BE A ZOO IF IT WERE TO GO

16   TO TRIAL, AND, YOU KNOW, WE TALKED LAST TIME, YOUR HONOR, ON

17   THAT SUBJECT, ABOUT (PAUSE) --

18          THE COURT:  AND LET ME ASK YOU THIS.

19          MR. PETROCELLI:  -- SETTING THIS CASE FOR TRIAL,

20   WHICH WE DECIDED TO DEFER UNTIL AFTER THE JULY CONVENTION TO

21   SEE WHAT HAPPENS.

22          THE COURT:  RIGHT.

23          MR. PETROCELLI:  BECAUSE I'M GOING TO HAVE A LOT TO

24   SAY ON THAT SUBJECT IF MR. TRUMP IS THE NOMINEE.

25          THE COURT:  ALL RIGHT, AND SO LET ME ASK YOU.  TO THE

1  EXTENT THAT HE IS THE NOMINEE, ARE YOU GOING TO ASK THE COURT

2  TO SET THE MATTER FOR TRIAL IN AUGUST?

3       MR. PETROCELLI:  I AM NOT, YOUR HONOR, IN ALL

4  LIKELIHOOD, AND I MAY ASK THE COURT (PAUSE) -- AND, HONESTLY,

5  THE REASON WHY I RAISED THIS ISSUE OF POLLUTING THE

6  ENVIRONMENT IS BECAUSE I AM VERY HOPEFUL THAT THIS WILL STOP,

7  BECAUSE I DO THINK IT WILL HAVE AN EFFECT ON THE INTEGRITY OF

8  THE PROCEEDINGS IF IT CONTINUES.  WE SHOULD NOT BE LITIGATING

9  THIS CASE ON A PUBLIC DEBATE FORUM FOR PRESIDENT OF THE UNITED

10  STATES, AND IT'S DEEPLY PREJUDICING.  EVERYBODY THAT COMES UP

11  TO ME NOW KNOWS ABOUT THIS CASE, AND BASED ON WHAT THEY READ

12  IN THE PAPERS, THEY USUALLY DON'T HAVE SOMETHING NICE TO SAY

13  TO ME ABOUT IT, AND I THINK IF IT CONTINUES, IT'S ONLY GOING

14  TO DIG A DEEPER HOLE FOR US, YOUR HONOR.

15       THE COURT:  SO LET ME ASK YOU THIS.  TO THE EXTENT

16  THAT THE COURT, THEN, IS WILLING TO ACCOMMODATE THIS REQUEST

17  TO CONTINUE THE TRIAL PAST AUGUST, AND WE'RE NOW AT MARCH, SO

18  WE'RE TALKING ABOUT A TRIAL DATE THAT WOULD BE, AT A MINIMUM,

19  FIVE, SIX, SEVEN, EIGHT MONTHS FROM NOW, WHY WOULDN'T THAT

20  GIVE YOU ENOUGH TIME AT THIS POINT TO FURTHER DEPOSE MR. LOW

21  AND TAKE FURTHER STEPS TO RECALIBRATE YOUR STRATEGY?

22       MR. PETROCELLI:  WELL, YOUR HONOR, THE SHORT ANSWER

23  IS THAT IT MIGHT.  IT MIGHT DEFER.  I MEAN, I DON'T THINK IT'S

24  FAIR THAT WE HAVE TO DO THIS AGAIN.  I THINK LEGAL PREJUDICE

25  HAS ALREADY OCCURRED, AND I KNOW THAT YOUR HONOR IS TRYING TO

1    NAVIGATE BECAUSE THE LAW SAYS THAT IF YOU'RE GOING TO LET

2    SOMEBODY DISMISS, THERE SHOULD BE CONDITIONS TO TRY TO

3    MITIGATE.  I'M TELLING YOU WE'VE PASSED THE POINT OF NO

4    RETURN.

5           BUT, YOU KNOW, IF YOUR HONOR IS GOING TO ALLOW THIS

6    PERSON TO DISMISS HER CLAIMS, (A) IT SHOULD BE WITH PREJUDICE.

7    SHE SHOULD NOT BE ABLE TO CONTINUE TO RECOVER AS A CLASS

8    MEMBER, BUT AT THE LAST SECOND SAY, YOU KNOW WHAT?  LET

9    SOMEBODY ELSE PROVE MY CLAIM.  I DON'T WANT TO DO IT ANYMORE.

10   I DON'T THINK THERE'S ANY BASIS TO LET HER OUT WITHOUT

11   PREJUDICE.

12          BUT EVEN IF IT'S WITH PREJUDICE, YOUR HONOR, I'M

13   SUGGESTING TO YOU THAT IT WOULD TAKE A LOT MORE THAN TAKING

14   ANOTHER DAY OF MR. LOW'S DEPOSITION, THAT WE WOULD WANT TO GO

15   BACK AND REVIEW WHETHER AND TO WHAT EXTENT WE HAD A BASIS TO

16   REVISIT PRIOR RULINGS OF THE COURT.  AND I KNOW IT'S THE LAST

17   THING YOUR HONOR WANTS TO HEAR FROM ME, BECAUSE YOU TOLD ME

18   LAST TIME THIS IS THE SECOND-OLDEST CASE ON YOUR DOCKET.  IT

19   MAY NOT BE THE OLDEST, BUT I DON'T WANT TO PUT YOU ON THE

20   SPOT.

21          THE COURT:  MY OLDEST CASE IS A 1951 CASE.

22          MR. PETROCELLI:  OH, THAT'S RIGHT.  THAT'S RIGHT.

23          THE COURT:  THAT CASE WILL BE AROUND LONG AFTER.

24          MR. PETROCELLI:  WE'VE GOT A WAYS TO GO ON THAT, YOUR

25   HONOR.  BUT I ALSO BELIEVE THAT WE WOULD EFFECTIVELY HAVE TO

1   DO A DO-OVER, AND I DON'T THINK THAT THE LAW GOES THAT FAR IN

2   SEEKING TO CURE OR MITIGATE PREJUDICE.  I BELIEVE THAT IF YOU

3   WEIGH ALL THE FACTORS, YOUR HONOR, THAT SHE HAS NOT MADE A

4   COMPELLING CASE TO BE RELIEVED AS A CLASS REPRESENTATIVE IN

5   THIS CASE.

6           THE COURT:  ALL RIGHT.

7           MR. PETROCELLI:  THANK YOU VERY MUCH.

8           THE COURT:  THANK YOU.

9           LET ME ASK ONE FURTHER QUESTION OF PLAINTIFFS'

10  COUNSEL, MISS JENSEN.  WITH RESPECT TO THIS QUESTION THAT CAME

11  UP DURING MY QUESTION TO MR. PETROCELLI, WHAT'S YOUR POSITION

12  AS TO WHETHER OR NOT THE DEFENDANTS WOULD BE ABLE, WOULD HAVE

13  THE RIGHT TO SUBPOENA MISS MAKAEFF AT TRIAL?

14          MR. FORGE:  YOUR HONOR, MAY I ADDRESS THAT?

15          THE COURT:  MR. FORGE.  YES.

16          MR. FORGE:  YOUR HONOR, YOU WERE CORRECT WHEN YOU

17  POINTED OUT THAT WE HAD NOT MADE THAT REQUEST TO EXCLUDE HER

18  FROM THE TRIAL, ALTHOUGH I'M OBLIGATED TO POINT OUT THAT IF

19  MISS MAKAEFF WERE NOT A PARTY TO THIS CASE, SHE WOULD BE

20  OUTSIDE THE JURISDICTION OF THE COURT FOR PURPOSES OF PROCESS.

21  SO THE DEFENSE WOULD NOT BE ABLE TO SUBPOENA HER TO APPEAR AT

22  TRIAL.  AND EVEN THE IDEA OF IT OBVIOUSLY DEFEATS THE PURPOSE

23  OF THE MOTION ITSELF, BECAUSE THAT WOULD STILL SUBJECT HER TO

24  THE SAME ANXIETY, THE SAME STRESS, THE SAME MEDIA CIRCUS THAT

25  HAS BEEN STIRRED UP NOT BY THE PLAINTIFFS IN THIS CASE, YOUR

1    HONOR, AND I WOULD LIKE TO ADDRESS THAT ISSUE BRIEFLY.

2              MR. PETROCELLI MENTIONED A *NEW YORK TIMES* ARTICLE

3    FROM TODAY.  THERE WAS NO ONE WHO SPOKE IN THAT ARTICLE WITH

4    ANY AUTHORIZATION FROM ANYONE FROM THE PLAINTIFFS.  THERE IS,

5    HOWEVER, SOMEONE WHO WAS QUOTED IN THAT ARTICLE WHO IS HERE IN

6    THIS COURTROOM, AND IT'S THE MAN WHO WAS POUNDING THE LECTERN

7    ABOUT US POISONING THE ATMOSPHERE FOR THIS TRIAL.  SO I THINK

8    THAT THAT IS A METAPHOR FOR VIRTUALLY ALL OF MR. PETROCELLI'S

9    ARGUMENTS, WHICH IS TO GO SO AGGRESSIVELY ON THE OFFENSIVE, TO

10   IGNORE THE FACT THAT HE'S ARGUING THE OPPOSITE OF WHAT THE

11   DEFENSE HAS BEEN DOING.

12             THE FASTEST MR. PETROCELLI RAN FROM ONE OF THE

13   QUESTIONS YOUR HONOR RAISED WAS WHEN YOUR HONOR TRIED TO FOCUS

14   ON THE ACTUAL ISSUES THAT ARE GOING TO BE LITIGATED IN THE

15   LIABILITY PHASE OF THIS TRIAL, WHICH IS THE ENTIRE TRIAL.  WE

16   ONLY HAVE A CLASS ACTION FOR LIABILITY, SO ALL WE'RE TALKING

17   ABOUT IS LIABILITY.  AND AS YOUR HONOR APTLY POINTED OUT,

18   THERE IS NOTHING, AND MISS MAKAEFF CAN BE THE GREATEST WITNESS

19   OR WORST WITNESS ON THE STAND, IT WOULD NOT IMPACT AT ALL THE

20   ALLEGATION REGARDING THE MISLEADING NATURE OF THE NAME TRUMP

21   UNIVERSITY (INDICATING QUOTATION MARKS), DESPITE BEING TOLD

22   NOT TO USE THE NAME.

23             AGAIN, SHE CAN BE THE GREATEST WITNESS OR THE WORST

24   WITNESS.  IT WOULD NOT AFFECT AT ALL THE MISLEADING NATURE OF

25   MR. TRUMP'S REPRESENTATIONS THAT ALL THE INSTRUCTORS WERE

1    HANDPICKED.  IT WOULD NOT AFFECT AT ALL THE ALLEGATIONS

2    REGARDING THE MENTORSHIP.  THE FACT OF THE MATTER IS, THE

3    ISSUES TO BE TRIED IN THIS LIABILITY PHASE ARE DISCRETE AND

4    THEY HAVE NOTHING TO DO WITH MISS MAKAEFF'S TESTIMONY.

5    WHETHER IT'S THE GREATEST TESTIMONY OR THE WORST TESTIMONY,

6    THEY'D BE INEFFECTIVE.

7         I THINK, YOUR HONOR, THIS EVIDENCE WOULD NOT COME IN

8    IN THE LIABILITY PHASE WHETHER SHE'S A PARTY TO THE CASE OR

9    NOT AT THAT POINT, AND THAT'S WHY WHY I REALLY THINK THE FOCUS

10   NEEDS TO BE, AND ONLY THERE, TO REVEAL THAT THERE IS NO

11   PREJUDICE HERE.  THERE'S NOT EVEN A POSSIBILITY OF PREJUDICE

12   HERE TO THE DEFENSE, BECAUSE MISS MAKAEFF SIMPLY IS NOT A

13   RELEVANT WITNESS TO THOSE ISSUES.

14        THE COURT:  PREJUDICE AS TO THE MERITS.

15        MR. FORGE:  AS TO THE MERITS.  EXACTLY.

16        THE COURT:  NOT PREJUDICE AS TO THE AMOUNT OF TIME

17   AND THE RESOURCES BEING DEVOTED TO PREPARE FOR TRIAL WITH

18   RESPECT TO MISS MAKAEFF.

19        MR. FORGE:  WELL, THOSE TWO ARE SOMEWHAT TIED

20   BECAUSE, SINCE THERE IS NO PREJUDICE TO THE MERITS, I DON'T

21   THINK IT WOULD BE FAIR TO SAY THAT ALL THE TIME WE DEDICATED

22   TO NON-MERITORIOUS, NON-MERIT-BASED ISSUES HAS SOMEHOW

23   PREJUDICED US.  I MEAN, I DO THINK EVEN THAT IS RELATED, YOUR

24   HONOR.

25        THE COURT:  ALL RIGHT.  LIKE I SAID, I THINK THAT THE

1   DISTRICT COURT IN BP WEST COAST PRODUCTS LOOKED AT WHETHER OR

2   NOT THE CLAIMS HAVE BEEN EXTENSIVELY LITIGATED, AND I DON'T

3   THINK THERE'S ANY QUESTION IN THIS CASE THE CLAIMS HAVE BEEN

4   EXTENSIVELY LITIGATED.

5           MR. FORGE:  ABSOLUTELY.  BUT MY POINT IS, HER

6   WITHDRAWAL WOULD NOT PREJUDICE THAT EFFORT.  WE WOULD STILL BE

7   WHERE WE ARE TODAY IF SHE HAD NEVER, IF SHE HAD NEVER APPEARED

8   IN THIS CASE, OR IF SHE HAD WITHDRAWN FIVE YEARS AGO, BECAUSE

9   WE WOULD STILL HAVE THREE CLASS REPRESENTATIVE WHO YOUR HONOR

10  INDEPENDENTLY VETTED AND INDEPENDENTLY APPROVED AS CLASS

11  REPRESENTATIVES.

12          AND AGAIN YOUR HONOR WILL RECALL, THEY TRIED TO HAVE

13  THE CASE FOR MISS MAKAEFF THROWN OUT ON SUMMARY JUDGMENT.  SO

14  I REALLY THINK THAT, AGAIN, THAT'S ANOTHER EXAMPLE OF -- I'M

15  NOT GOING TO POUND ON THE LECTERN TO MAKE THIS POINT.  I'M NOT

16  GOING TO -- MY VOICE IS NOT GOING TO ECHO OFF THE WALLS HERE,

17  BUT I FEEL VERY STRONGLY ABOUT IT, AND I THINK THE RECORD

18  PROVES IT.  THERE SIMPLY IS NOT SUBSTANCE TO BACK UP WHAT

19  THEY'RE SAYING, BECAUSE THEY THEMSELVES ASKED FOR MISS

20  MAKAEFF, MISS MAKAEFF'S CLAIMS, HER ALONE, TO BE THROWN OUT,

21  TO BE AWARDED SUMMARY JUDGMENT, AND SO THAT'S AFTER THE FACT

22  THAT DISCOVERY IS CLOSED, THEY HAD MADE ALL THE DECISIONS THEY

23  MADE BEFORE, AND THEY INDEPENDENTLY ARGUE IN THEIR SUMMARY

24  JUDGMENT MOTION THAT MISS MAKAEFF CANNOT PROVE HER CLAIMS.

25          NOW, THEY DID IT FOR EACH OF THE FOUR CLASS

1    REPRESENTATIVES, TO BE SURE, BUT THE FACT THAT THEY MADE IT AN

2    INDEPENDENT ARGUMENT FOR EACH ONE, AND AGAIN THIS IS THEIR

3    MOTION, THEY'RE HOPING THAT YOU AWARD THEM SUMMARY JUDGMENT AS

4    TO MISS MAKAEFF'S CLAIMS AFTER THE DISCOVERY HAS BEEN SETTLED,

5    AFTER DISCOVERY HAS ENDED, AND SO THAT TO ME, YOUR HONOR,

6    SHOULD SETTLE THE QUESTION.

7             THE COURT:  ALL RIGHT.  LET ME ASK YOU A QUESTION

8    THAT I ASKED MR. PETROCELLI ABOUT THE TRIAL DATE.  WHEN WE

9    WERE HERE LAST DECEMBER OR JANUARY, WE HAD TALKED ABOUT

10   SETTING THE MATTER FOR A PRETRIAL CONFERENCE IN MAY, WITH THE

11   UNDERSTANDING THAT WE WOULDN'T SET A TRIAL BEFORE AUGUST IN

12   ORDER TO PERMIT MR. TRUMP TO MOVE FORWARD WITH THE REPUBLICAN

13   NATIONAL CONVENTION IN JULY, AND THAT AT THIS POINT MR.

14   PETROCELLI INDICATED THAT AT THIS POINT, IF IT WAS UP TO THEM,

15   THIS CASE WOULDN'T BE TRIED BEFORE THE ELECTION BECAUSE OF ALL

16   OF THE, IF NOT THE HISTRIONICS, ALL OF THE ATTENTION THAT'S

17   BEEN FOCUSED ON THIS CASE AND HOW THAT WOULD MAKE IT VERY

18   DIFFICULT TO AFFORD BOTH SIDES A FAIR TRIAL.  DO YOU AGREE

19   WITH THAT?

20            MR. FORGE:  YOUR HONOR, MY FIRST REACTION WAS, WELL,

21   IF WE CAN'T GO IN AUGUST, LET'S GO IN JUNE, BUT LOOK, IT IS --

22   I WOULD BE, I WOULD BE FOOLISH TO EVEN PRETEND TO KNOW HOW A

23   CASE LIKE THIS SHOULD BE HANDLED AT THIS POINT BECAUSE IT

24   REALLY IS AN UNPRECEDENTED LEVEL OF PUBLICITY --

25            THE COURT:  SCRUTINY.

1          MR. FORGE:  -- AND UNPRECEDENTED, DIFFERENT FORMS OF

2     THAT PUBLICITY.  WE'VE ALL SEEN HIGH-PROFILE CASES, BUT

3     NOTHING LIKE THIS.  NOW, WHETHER THAT IMPACTS OUR ABILITY TO

4     PICK A FAIR JURY, IT WOULD BE FOOLISH FOR ME TO SAY IT

5     WOULDN'T.  I MEAN, OF COURSE IT WOULD.  WHETHER IT MAKES IT

6     IMPOSSIBLE, I JUST, I JUST DON'T KNOW.  BUT IT WOULD BE, I

7     WILL AGREE, IT WOULD BE DIFFICULT.  THAT DOES NOT MEAN THAT WE

8     DON'T GO FORWARD ON SOME CLAIMS.  WE CAN CERTAINLY GO FORWARD

9     ON SOME OF THE CLAIMS THIS YEAR, IN AUGUST.

10          THE COURT:  WELL, I DON'T KNOW IF I UNDERSTAND.  TO

11     THE EXTENT THAT THIS SCRUTINY, THIS FOCUS, THIS OBSESSION WITH

12     THIS CASE IS WHAT IT IS, HOW WOULD IT BE POSSIBLE TO AVOID ALL

13     OF THAT WITH ANY FORM OF TRIAL IN THIS CASE?

14          MR. FORGE:  WELL, I WAS JUST, I WAS JUST ALLUDING TO

15     THE FACT THAT YOU DO HAVE TWO BENCH TRIALS IN THE CASE, YOUR

16     HONOR.  YOUR HONOR RAISED THAT, AND I WAS SIMPLY ALLUDING TO

17     THE FACT THAT -- I KNOW WE HAVE ONE FAIR AND UNBIASED

18     FACT-FINDER HERE, AND SO, WHO WOULD UNAFFECTED BY THE

19     PUBLICITY.

20          THE COURT:  WELL, AND I BELIEVE MR. PETROCELLI

21     INDICATED THAT, IN HIS VIEW, THE LAW IN FEDERAL COURT IS THAT

22     THE LEGAL CLAIMS GO BEFORE THE EQUITABLE.

23          MR. FORGE:  I HAVE NOT --

24          THE COURT:  DO YOU DISPUTE THAT?

25          MR. FORGE:  I LOOKED AT THE ISSUE, YOUR HONOR.  I

1    CAN'T SAY I'VE FOCUSED ON IT.  I'VE LOOKED AT THE CASES.  I

2    HAVE NEVER SEEN A CASE THAT SAID THAT, NO, BUT THE EQUITABLE

3    CLAIMS CANNOT BE TRIED TO A BENCH TRIAL FIRST.  I HAVEN'T SEEN

4    THAT.  I'M NOT SAYING IT DOESN'T EXIST, BUT I HAVE NOT SEEN

5    IT.

6             THE COURT:  I WANT TO SAY THAT THE RESEARCH THAT

7    WE'VE DONE IN THE PAST SUGGESTS THAT THE ANSWER IS YOU WOULD

8    TRY THE EQUITABLE AFTER THE LEGAL, BUT THAT'S SOMETHING I

9    THINK WE'LL KEEP LOOKING AT AS WE PROCEED.

10             MR. FORGE:  AND, YOUR HONOR, I'M NOT SUGGESTING THAT

11   THAT HASN'T BEEN THE PRACTICE, BUT WHAT I'M SUGGESTING, I

12   HAVEN'T SEEN THAT THAT IS SOMEHOW MANDATORY, AND I'M NOT

13   SUGGESTING THAT WE EVEN DO THAT.  I WOULD LIKE TO GET THE CASE

14   TO TRIAL AS SOON AS WE COULD ON ALL THE CLAIMS, BUT IF WE'RE

15   THROWING OUT IDEAS, THAT IS ONE THAT SHOULD BE CONSIDERED.

16             THE COURT:  ALL RIGHT.  WELL, THOSE ARE ALL THE

17   QUESTIONS THAT I HAVE.

18             MR. PETROCELLI:  MAY I JUST BRIEFLY RESPOND?

19             THE COURT:  YES, BRIEFLY.

20             MR. PETROCELLI:  I JUST WANT TO ADDRESS THE POINT

21   THAT MR. FORGE SAID ABOUT A LACK OF SUBSTANTIVE PREJUDICE,

22   YOUR HONOR, BECAUSE I COULD NOT DISAGREE MORE WITH THAT.

23             FIRST OF ALL, ON THE MOTION FOR SUMMARY JUDGMENT,

24   THAT WAS AS TO THE ENTIRE CASE, AND IT WAS DENIED.  SO THERE

25   WASN'T ANY -- THE ARGUMENT THAT BECAUSE WE WERE MAKING A

1    MOTION TO DISMISS THE ENTIRE CASE, SOMEHOW WE WERE PREPARED TO

2    GO FORWARD WITHOUT MISS MAKAEFF JUST DOESN'T MAKE ANY SENSE TO

3    ME.

4            BUT SECONDLY, AND THE MORE IMPORTANT POINT, YOUR

5    HONOR, IS THAT THE PLAINTIFFS HAVE THIS VIEW THAT THEY CAN

6    SOMEHOW TRY THIS CASE EXACTLY THE WAY THEY WANT TO TRY IT,

7    WITH JUST PUTTING ON A COUPLE OF WITNESSES FROM THE DEFENSE TO

8    SAY, YOU KNOW, WAS THE INSTRUCTOR HANDPICKED, OR ARE YOU A

9    REAL UNIVERSITY?  THAT'S -- THEY'VE GOT A BURDEN, YOUR HONOR,

10   TO PROVE THE FALSITY OF THE MISREPRESENTATIONS.  THEY'VE GOT A

11   BURDEN TO PROVE MATERIALITY.  THEY HAVE A BURDEN TO PROVE

12   RELIANCE.

13           THE COURT:  AS FAR AS FALSITY, HOW WOULD IT DEPEND

14   UPON MISS MAKAEFF'S TESTIMONY AS TO WHETHER OR NOT THAT

15   STATEMENT THAT TRUMP HANDPICKED HIS INSTRUCTORS, WHETHER

16   THAT'S FALSE?

17           MR. PETROCELLI:  LET ME GIVE YOU A PERFECT EXAMPLE,

18   YOUR HONOR.  SHE MAY TESTIFY, I DIDN'T THINK THAT HE

19   HANDPICKED THE INSTRUCTORS.  I DIDN'T UNDERSTAND IT THAT WAY.

20   I DIDN'T THINK HE REALLY --

21           THE COURT:  BUT THAT'S DIFFERENT FROM WHETHER OR NOT

22   THE STATEMENT IS TRUE.

23           MR. PETROCELLI:  WELL, NO, BECAUSE IT MAY NOT BE

24   PERCEIVED AS A FACTUAL STATEMENT IN WHICH TRUTH OR FALSITY IS

25   NOT REALLY RELEVANT.

1          THE COURT:  BUT IS THAT A QUESTION OF RELIANCE?

2          MR. PETROCELLI:  WELL, THERE'S A BETTER EXAMPLE THAN

3  THAT, YOUR HONOR.  LET'S TAKE THE THIRD MISREPRESENTATION THAT

4  THEY'RE ALLEGING THAT YOU CERTIFIED, WHICH IS EFFECTIVELY THAT

5  THERE WAS NO MENTORSHIP PROGRAM.  THAT'S GOING TO DEPEND

6  ENTIRELY ON HER TESTIMONY.  SHE'S GOING TO HAVE TO GET UP

7  THERE AND EXPLAIN HOW SHE COULD SAY THAT THAT REPRESENTATION

8  WAS FALSE, GIVEN HER EXTENSIVE ACTIVITIES IN THE MENTORING

9  PROGRAM, INCLUDING ACTUALLY MAKING AN INVESTMENT IN A HOME IN

10  CONNECTION WITH ONE OF THE MENTORING ACTIVITIES.  SO, I MEAN,

11  THE PLAINTIFFS, TO SUGGEST THAT THEY CAN PROVE THEIR CASE

12  WITHOUT PLAINTIFFS' TESTIMONY AND THAT WE WOULD HAVE NO RIGHT

13  TO CALL WITNESSES IS PREPOSTEROUS, YOUR HONOR, AND THAT'S

14  WHAT'S BEING SUGGESTED.

15          THE COURT:  WELL, I DON'T THINK THAT THAT'S WHAT'S

16  BEING SUGGESTED, BECAUSE THE BURDEN OF PROOF, OBVIOUSLY,

17  BEGINS WITH THE PLAINTIFF --

18          MR. PETROCELLI:  WELL --

19          THE COURT:  -- AND IT'S UP TO THE PLAINTIFF, IT'S

20  INCUMBENT UPON THE PLAINTIFF TO CALL WITNESSES, TO PUT ON THE

21  TESTIMONY TO PROVE EACH OF THE ELEMENTS OF THE CAUSE OF

22  ACTION.  IF THEY DON'T DO THAT, THEN YOU WIN.

23          MR. PETROCELLI:  BUT WE WILL HAVE THE ABILITY TO CALL

24  WITNESSES, TOO, YOUR HONOR, AND WE CAN CALL MISS MAKAEFF OR A

25  COUPLE OF OTHER WITNESSES WHO WILL DIRECTLY CONTRADICT WHAT

1    SONNY LOW MAY SAY OR SOME OTHER WITNESS THAT THEY CALL.

2    THAT'S WHY WE HAVE TRIALS.  BUT TO SAY THAT SHE SHOULD BE

3    IMMUNIZED FROM APPEARING AT TRIAL, IT'S JUST WHOLLY

4    UNJUSTIFIED IN THE LAW, YOUR HONOR.

5            THE COURT:  WELL, I MEAN, AND I GUESS IT DEPENDS ON

6    HOW YOU DEFINE IMMUNITY.  TO THE EXTENT THAT THE PLAINTIFF

7    ISN'T ENTITLED TO RELY UPON THE TESTIMONY OF MISS MAKAEFF,

8    THAT ULTIMATELY THEY GET NO BENEFIT FROM WHAT SHE HAS TO SAY,

9    THEY CAN'T RELY UPON IT, AND THEN THEY'VE MADE THAT --

10           MR. PETROCELLI:  WE WANT TO RELY ON IT.

11           THE COURT:  ALL RIGHT.  WELL --

12           MR. PETROCELLI:  WE WANT TO RELY ON IT BECAUSE

13   IT'S --

14           THE COURT:  IT'S RELIED UPON BY THE PLAINTIFF TO MAKE

15   THEIR CASE.

16           MR. PETROCELLI:  IT'S EXTREMELY DAMAGING TO THEIR

17   CASE, AND IT TYPIFIES WHY THEIR CASE LACKS MERIT, YOUR HONOR.

18   WE WANT TO.  THAT'S WHAT OUR WHOLE CASE LITIGATION STRATEGY

19   HAS BEEN.

20           THE COURT:  AND IT SOUNDS LIKE IT'S MORE FACT-BASED

21   THAN LEGAL-DEFENSE BASED, THE STATUTE OF LIMITATIONS OR SOME

22   OTHER LEGAL DEFENSE THAT THE NINTH CIRCUIT HAS RECOGNIZED AS

23   BEING SOMETHING PROPERLY CONSIDERED IN DENYING THE MOTION TO

24   WITHDRAW WITHOUT PREJUDICE.

25           MR. PETROCELLI:  THESE ARE ADMISSIONS OF THE LEAD

1    PLAINTIFF MADE DURING SIX YEARS OF LITIGATION THAT, IN OUR

2    VIEW, NOT ONLY UNDERMINE BUT REFUTE THE BASIC CLAIMS IN THE

3    CASE, AND TO SAY THAT NOW SOMEHOW WE ARE DEPRIVED OF HAVING

4    THE TRIER OF FACT BE PRESENTED WITH THAT TESTIMONY -- AND BY

5    THE WAY, YOUR HONOR, THE IDEA THAT ALL OF A SUDDEN THIS

6    WITNESS WOULD BECOME UNAVAILABLE TO US BECAUSE SHE'S NOW GOING

7    TO FLEE THE JURISDICTION OR LEAVE THE JURISDICTION, IF SHE'S

8    NOT ALREADY LEFT THE JURISDICTION, I THINK, IS ANOTHER EXAMPLE

9    OF PREJUDICE TO US, YOUR HONOR.  SHE COMMITTED IN HER

10   DECLARATION THAT SHE WOULD BE AVAILABLE TO TESTIFY AT TRIAL.

11   THE COURT RELIED ON THAT DECLARATION AND GRANTED CERTIFICATION

12   BASED ON THAT, AS WELL AS THE COURT HAVING RELIED ON MANY

13   OTHER THINGS THAT SHE SAID AND DID THAT WAS PRESENTED TO THE

14   COURT.

15           THE COURT:  AND RELIED UPON DECLARATIONS OF MANY

16   OTHER WITNESSES.

17           MR. PETROCELLI:  OH, YOU KNOW, YOUR HONOR, THAT IS

18   REALLY BEING OVERSTATED, IN ALL DUE RESPECT TO OPPOSING

19   COUNSEL.  I WENT BACK AND ACTUALLY COUNTED THEM.  OKAY?  IF

20   YOU COUNT THE CITATIONS TO TARLA MAKAEFF VS. THE CITATIONS TO

21   SONNY LOW, FOR EXAMPLE, I THINK IT'S A FACTOR OF TWO-TO-ONE,

22   AND IF MAKAEFF WASN'T SUCH AN IMPORTANT WITNESS TO THEM, WHY

23   DID THEY RELY SO PROMINENTLY ON HER TESTIMONY, ON HER

24   DECLARATION, ON HER DEPOSITION, ON HER CLAIMS, ON HER

25   ARGUMENTS?  SO I JUST SEE NO WAY THAT THE DEFENDANTS COULD

1   EVER GET A FAIR TRIAL, JUDGE OR JURY, IF WE'RE SOMEHOW

2   DEPRIVED OF THE OPPORTUNITY TO PUT THIS PERSON ON.

3        AND BY THE WAY, IF SHE IS GOING TO BE OUT OF THE

4   JURISDICTION, THEN WE SHOULD BE ENTITLED TO TAKE HER

5   DEPOSITION.  SHE SHOULD BE ORDERED TO APPEAR AND GIVE TRIAL

6   TESTIMONY, YOUR HONOR, EVEN IF IT HAS TO BE IN A DEPOSITION,

7   BUT I DON'T THINK THAT SHE SHOULD BE ALLOWED TO LEAVE AT THE

8   LAST MINUTE NOW THAT SHE HAS TO GET ON THE WITNESS STAND AND

9   ACTUALLY PROVE ALL THE THINGS THAT SHE'S BEEN SAYING.

10        THE COURT:  ALL RIGHT.

11        MR. PETROCELLI:  THANK YOU.

12        THE COURT:  THANK YOU ALL.

13        I'M GOING TO TAKE THE MATTER UNDER SUBMISSION, AND WE

14   HOPE TO HAVE A RULING WITHIN A WEEK OR SO.

15        MR. PETROCELLI:  THANK YOU VERY MUCH, YOUR HONOR.

16        MR. FORGE:  THANK YOU, YOUR HONOR.

17        (PROCEEDINGS ADJOURNED AT 2:30 P.M.)

18   -----------------------------------------------------------

19                    (END OF TRANSCRIPT)

20

21

22

23

24

25

1          I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

2    HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

3    ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

4

5          S/FRANK J. RANGUS

6          FRANK J. RANGUS, OCR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25