1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| TARLA MAKAEFF, et al., on Behalf of Herself and All Others Similarly Situated,<br><br>                                     Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive,<br><br>                                     Defendants. | Case No. 10cv0940 GPC (WVG)<br><br>**ORDER REGARDING PLAINTIFF TARLA MAKAEFF'S MOTION TO WITHDRAW**<br><br>[ECF Nos. 443, 466, 470] |

11
12
13
14
15
16
17
18
19

Before the Court is Plaintiff Tarla Makaeff's motion to withdraw as a class representative. Pl. Mot., ECF No. 443. The motion has been fully briefed. Def. Opp., ECF No. 458; Pl. Reply, ECF No. 462. A hearing on the motion was conducted on March 11, 2016, at 1:30 p.m. ECF No. 464.

20
21
22
23

For the foregoing reasons, the Court intends to grant in part and deny in part Makaeff's motion to withdraw.

24

## FACTUAL AND PROCEDURAL BACKGROUND

25

The facts of this case having been delineated in previous orders, the Court will not repeat them at length here. *See, e.g.*, Order Granting in Part and Denying in Part Defendant Donald J. Trump's Motion for Summary Judgment ("Summary

26
27
28

Judgment Order"), ECF No. 423. In short, this case is a class action lawsuit on behalf of individuals who purchased Trump University, LLC ("TU") real estate investing seminars, including three-day fulfillment seminars and Trump Elite Programs. *See id.* at 4.

On April 30, 2010, Plaintiffs filed a class action complaint against TU, alleging violations of California consumer statutes as well as several common law causes of action, with Makaeff as the sole named plaintiff. *See* Compl. 15, ECF No. 1. On June 16, 2010, Plaintiffs filed a first amended complaint, which added a California elder abuse claim and a New York consumer claim and added Brandon Keller, Ed Oberkrom, Patricia Murphy, and Sheri Winkelmann as named plaintiffs. Am. Compl., ECF No. 10. On December 16, 2010, following an Order from the Court granting in part and denying in part Defendants' motion to dismiss, ECF No. 33, Plaintiffs filed a second amended complaint, removing Sheri Winkelmann as a named plaintiff and adding Donald Trump as a defendant, Second Am. Compl., ECF No. 41.

Discovery commenced on October 17, 2011. Scheduling Order, ECF No. 88. On September 16, 2012, following the conduct of depositions on Plaintiffs Makaeff, Oberkrom, and Keller, *see* Joint Motion to Revise Scheduling Order, Ex. A, ECF No. 106, Plaintiffs filed the operative third amended complaint ("TAC"), removing Patricia Murphy and adding Sonny Low, J.R. Everett, and John Brown as named plaintiffs, TAC, ECF No. 128.[12]  The TAC also added two causes of action alleging

---

[1] The TAC named Plaintiffs included Makaeff, Low, Everett, Brown, Keller, and Oberkrom. Defendants included TU and Donald Trump. The TAC alleged the following causes of action: (1) unlawful, fraudulent and unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) deceptive practices and misrepresentation in violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (3) untrue and misleading advertisement in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) breach of contract against TU; (5) breach of the implied covenant of good faith and fair dealing against TU; (6) money had and received; (7) negligent misrepresentation; (8) fraud; (9) false promise; (10) deceptive acts and practices in violation of § 349 of New York's General Business Law; (11) financial elder abuse in violation of Cal. Welf. & Inst. Code § 15600 *et seq.*; (12) unfair competition, practices, or acts in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*; (13) misleading advertisement in violation of Florida's Misleading Advertising Law ("MAL"), Fla. Stat. § 817.41; and

violations of Florida consumer and elder rights laws.

On February 21, 2014, the Court granted in part and denied in part Plaintiffs' motion for class certification. Class Certification Order, ECF No. 298. The Court noted that Plaintiffs alleged that Defendants made the following "core" misrepresentations: "(1) Trump University was an accredited university; (2) students would be taught by real estate experts, professors and mentors hand-selected by Mr. Trump; and (3) students would receive one year of expert support and mentoring." *Id.* at 4. The Court granted Plaintiffs' motion for class certification for the following class and five subclasses:

> All persons who purchased a Trump University three-day live "Fulfillment" workshop and/or a "Elite" program ("Live Events") in California, New York and Florida, and have not received a full refund, divided into the following five subclasses:
> (1) a California UCL/CLRA/Misleading Advertisement subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in California within the applicable statute of limitations;
> (2) a California Financial Elder Abuse subclass of purchasers of the Trump University Fulfillment and Elite Seminars who are over the age of 65 years of age and purchased the program in California within the applicable statute of limitations;
> (3) a New York General Business Law § 349 subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in New York within the applicable statute of limitations;
> (4) a Florida Misleading Advertising Law subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in Florida within the applicable statute of limitations; and
> (5) a Florida Financial Elder Abuse subclass of purchasers of the Trump University Fulfillment and Elite Seminars who are over the age of 60 years of age and purchased the program in Florida within the applicable statute of limitations.[3]

*Id.* at 35–36. For the remaining claims, the Court either denied, or Plaintiffs did not seek, class certification. *Id.* at 28–32. Makaeff is a California resident under the age of 65 years and represents one of the five subclasses, that is, the California UCL/CLRA Misleading Advertisement subclass (the "UCL" subclass), while Low

---

(14) unjust enrichment.

[2] On January 30, 2013, the case was transferred to the undersigned judge. Transfer Order, ECF No. 190.

[3] Excluded from the class are Defendants, their officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which Defendants have a controlling interest, any Judge assigned to this case and their immediate families. Class Certification Order 36.

is a California senior citizen and was appointed to represent the California UCL and financial elder abuse subclasses.  The Court also appointed Everett and Brown as class representatives for the Florida and New York subclasses respectively. *Id.* at 36.[4]

Discovery was completed on December 19, 2014. ECF No. 349. On September 18, 2015, the Court granted in part and denied in part Defendants' motion for decertification of the class action. ECF No. 418. The Court denied the motion to decertify on liability issues as to all causes of action, but granted the motion on damages issues as to all causes of action, and bifurcated the damages issues to follow trial on the liability phase. *Id.* at 21. The Court also clarified that the class definition going forward would be:

> All persons who purchased a Trump University three-day live "Fulfillment" workshop and/or a "Elite" program ("Live Events") in California, New York and Florida, and have not received a full refund, divided into the following five subclasses:
> (1) a California UCL/CLRA/Misleading Advertisement subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in California within the applicable statute of limitations;
> (2) a California Financial Elder Abuse subclass of purchasers of the Trump University Fulfillment and Elite Seminars who were over the age of 65 years of age when they purchased the program in California within the applicable statute of limitations;
> (3) a New York General Business Law § 349 subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in New York within the applicable statute of limitations;
> (4) a Florida Deceptive and Unfair Trade Practices Act (FDUTPA)/Misleading Advertising Law subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in Florida within the applicable statute of limitations; and
> (5) a Florida Financial Elder Abuse subclass of purchasers of the Trump University Fulfillment and Elite Seminars who were over the age of 60 years of age when they purchased the program in Florida within the applicable statute of limitations.

*Id.* at 22.

---

[4] The Court declined to appoint Oberkrom as a class representative since he was not a resident of California, New York, or Florida, *id.* at 17 n.11, and Keller because he did not seek to be one, *id*. at 7 n.7.

On September 21, 2015, the Court directed class notice procedures. ECF No. 419. On November 18, 2015, the Court granted in part and denied in part Defendants' motions for summary judgment, granting summary judgment as to Plaintiffs' claims for injunctive relief under the UCL, FAL, and CLRA, and denying summary judgment as to all other claims. ECF No. 423.

Meanwhile, on May 26, 2010, Defendant TU filed a counterclaim against Makaeff for defamation. ECF No. 4. On June 30, 2010, Makaeff filed a motion to strike Defendant's counterclaim against her pursuant to California's anti-SLAPP ("Strategic Lawsuits Against Public Participation") statute, California Code of Civil Procedure § 425.16, ECF No. 14, which the Court denied on August 23, 2010. ECF No. 24. Following Makaeff's appeal, the Ninth Circuit reversed this Court's order denying Makaeff's motion to strike and remanded to this Court for further proceedings. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013). On June 16, 2014, this Court granted Makaeff's motion to strike. ECF No. 328. On April 9, 2015, the Court granted in part and denied in part Makaeff's request for fees and costs incurred in connection with the anti-SLAPP motion, awarding Makaeff $790,083.40 in fees and $8,695.81 in costs. ECF No. 404 at 51.

On February 8, 2016, Plaintiffs filed this motion to withdraw which is supported by a declaration setting out a number of reasons for the request. ECF No. 443. On February 26, 2016, Defendants filed an opposition. ECF No. 458. On March 3, 2016, Plaintiffs filed a reply. ECF No. 462. A hearing was conducted on March 11, 2016. ECF No. 464. At the hearing, Makaeff presented medical records which reportedly corroborated her claim that she had suffered significant health problems since the case was filed. Thereafter, on March 16, 2016, Makaeff offered to have her medical records reviewed in camera with restrictions as to who could review the records and prohibitions on copying of information in the records. ECF

No. 466. On March 18, 2016, Defendants opposed the proposed method of reviewing Makaeff's medical records and asserted that the existing protective order offers sufficient protection of the Makaeff's privacy interests. Finding insufficient support to justify the requested restrictions, the Court will decide the motion based upon the current state of the pleadings, records and argument of counsel.[5]

In addition, the March 16, 2016 pleading requests a status hearing to address a trial date.  That request is **DENIED** and the Court confirms the pretrial conference that is currently set for May 6, 2016. ECF No. 442.

### LEGAL STANDARD

Under Rule 41(a)(2) of the Federal Rules of Civil Procedure, after an opposing party has served an answer or motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. Rule 41(a)(2). "The purpose of the rule is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced, or unfairly affected by dismissal." *Stevedoring Servs. of Am. v. Armilla Int'l, B.V.,* 889 F.2d 919, 921 (9th Cir. 1989). In resolving a motion under Rule 41(a)(2), the Court must make three separate determinations: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed. *See* Fed. R. Civ. P. Rule 41(a)(2); *Williams v. Peralta Cnty. Coll. Dist.,* 227 F.R.D. 538, 539 (N.D. Cal. 2005).

### DISCUSSION

**I.     Whether to Allow Dismissal**

The initial question for the Court is whether to allow dismissal of Makaeff's claims at all. Whether to grant a voluntary dismissal under Rule 41(a)(2) rests in a

---

[5] The Court has not reviewed the medical records presented at the March 11, 2016 hearing.

district court's sound discretion. *Smith v. Lenches,* 263 F.3d 972, 975 (9th Cir. 2001). However, the Ninth Circuit has instructed that a "district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result." *Id.*

"'[L]egal prejudice' means 'prejudice to some legal interest, some legal claim, some legal argument.'" *Id.* at 976 (quoting *Westlands Water Dist. v. United States,* 100 F.3d 94, 97 (9th Cir. 1996)). In evaluating legal prejudice, courts have considered factors such as the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial; the plaintiff's diligence in prosecuting the action or in bringing the motion; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss. *See, e.g., BP West Coast Products LLC v. SKR Inc.*, 989 F. Supp. 2d 1109, 1116 (W.D. Wash. 2013) (in evaluating plain legal prejudice, court may consider whether party seeking voluntary dismissal has been dilatory in doing so, whether party is doing so to avoid adverse ruling, whether claims have been extensively litigated, and whether allowing dismissal would create potential for future inconsistent rulings); *see also* 8 James Wm. Moore et al., *Moore's Federal Practice* § 41.40[6] (3rd ed. 2015) (citing cases).

"'[U]ncertainty because a dispute remains unresolved' or because 'the threat of future litigation . . . causes uncertainty does not result in plain legal prejudice.'" *Smith*, 263 F.3d at 976 (quoting *Westlands Water Dist.,* 100 F.3d at 96–97). "Also, plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal." *Id.* (citing *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982)).

10cv0940 GPC (WVG)

Here, Makaeff contends that this Court should allow her to voluntarily dismiss her claims without prejudice because Makaeff will be barred from bringing any new claims related to TU and because Plaintiff Low can adequately represent the California subclass.[6] Pl. Mot. 7.  Makaeff seeks to withdraw because of the personal and professional toll that the case has taken on her, arguing that she suffered "tremendous stress and anxiety" during the litigation of Defendants' defamation counterclaim, and that Trump's use of his "bully pulpit" to continue to publicly criticize Makaeff has affected her work opportunities. *Id.* at 6. In addition, she expresses concern that involvement with a "high-profile trial" will exacerbate her existing health problems, take her away from family obligations, and cause her to "miss too much work as she attempts to transition into a new career." *Id.*

Defendants counter that the Court should not allow dismissal of Makaeff's claims for five reasons. The Court will address them in turn.

### A.     Discovery

First, Defendants argue that Makaeff's removal would undermine Defendants' discovery strategy, since Defendants conducted more depositions with Makaeff than with Low. Def. Opp. 10–11. The inability to conduct sufficient discovery for a defense can amount to legal prejudice. *See Westlands Water Dist.*, 100 F.3d at 97). However, concerns regarding a defendant's ability to conduct discovery can be addressed by the terms and conditions of dismissal, including the mandating of additional depositions. *See infra* Part III.1.

### B.     Live Trial Testimony

Second, Defendants argue that the absence of Makaeff's live trial testimony would "cripple Defendant's ability to defend this case." Def. Opp. 2. Specifically,

---

[6] Since "Low has submitted himself to deposition and produced documents and other information pursuant to defendants' many discovery demands," and "Low is already a class representative so defendants will not have to conduct any further discovery." Pl. Mot. 7.

Defendants argue that they intended to compel two witnesses to testify at trial regarding "Makaeff's positive experience with TU as well as her pattern of starting but failing to complete seminar programs." Def. Opp. 11–12. A review of the California causes of action that Makaeff and Low represent reveal that "Makaeff's positive experience" has nothing to do with any affirmative defense and little to do with any of the elements to these causes of action. As to the alleged core misrepresentations, Defendants conceded at the hearing that Makaeff's testimony is unnecessary to establish two of the three core representations, *i.e.*, whether Trump University was an accredited university and whether Donald Trump falsely claimed that students would be taught by experts, professors and mentors hand-selected by Trump. Ultimately, Defendants seek to show that Makaeff was not deceived or injured by the mentoring representation. However, under California law, the test for reliance and causation focus on the materiality of the widely made representation versus the subjective and personalized experience of one class member.[7]

At trial, it will be up to Sonny Low, the remaining California class representative, to prove through common evidence that the three core representations were made to the public, were material and were not true. In the event that discovery responses or deposition testimony of Makaeff are relevant and admissible on these questions, the Court will permit Defendants to introduce the

---

[7] "[T]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). The Ninth Circuit has affirmed the California rule " 'that relief under the UCL is available without individualized proof of deception, reliance and injury.' " *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) (quoting *In re Tobacco II*, 46 Cal. 4th at 320). Meanwhile, in a class action alleging violation of the CLRA, "[c]ausation, on a classwide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Id.* Stated differently, "reliance on the alleged misrepresentations may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members." *Chavez v. Blue Sky Natural Bev.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010).

evidence. Given the legal issues at trial, Makaeff's absence would not "cripple Defendants' ability to defend this case."

Defendants cite a number of cases to support the proposition that "[c]ourts have regularly denied substitution of class representatives where, as here, allowing substitution would prejudice defendants' ability to prepare their defense." *Id.* at 12. However, all of the cases Defendants cite involve district courts finding that permitting plaintiffs to amend their complaints in order to *add* new named plaintiffs unduly prejudiced defendants under Fed. R. Civ. P. Rules 15(a) and 16(b).  In *Soto v. Castlerock Farming & Transportation, Inc.*, 2011 U.S. Dist. LEXIS 87680, at *17–19 (E.D. Cal. Aug. 8, 2011), the district court found that permitting plaintiffs in a class action to amend their complaint to add a new named plaintiff following the completion of class-certification discovery would prejudice the defendant under Rule 15(a) since the defendant had been "preparing its defense [to the class certification motion] based upon the specific identities" of the existing named plaintiffs. Similarly, in *In re Flash Memory Antitrust Litig.*, 2010 U.S. Dist. LEXIS 59491, at *74 (N.D. Cal. June 9, 2010), the district court found that permitting plaintiffs to substitute nine new plaintiffs in place of twelve currently-named plaintiffs at the class certification stage would unduly prejudice defendants under Rule 15(a). And in *Osakan v. Apple Am. Group*, 2010 U.S. Dist. LEXIS 53830, at *13–14 (N.D. Cal. May 5, 2010), the district court found that a motion seeking joinder of four new plaintiffs would prejudice defendants under both Rules 15(a) and 16(b) where Defendants would have to conduct additional discovery to ascertain whether any of the proposed plaintiffs were subject to unique defenses.

None of those concerns apply squarely here, where the issue is the *removal* of a named plaintiff. Even if Makaeff does not provide live testimony, nothing

10cv0940 GPC (WVG)

precludes Defendants from using her deposition testimony at trial subject to the Federal Rules of Evidence. *See In re Morning Song Bird Food Litig.*, 2015 U.S. Dist. LEXIS 176519, at *11 (S.D. Cal. Nov. 16, 2015) ("While live testimony is preferable to deposition testimony, that alone is insufficient to constitute plain legal prejudice."). Removing a named plaintiff, unlike adding one, does not create the prospect of a defendant facing new claims or defenses. And Rule 41(a), unlike Rule 15(a), explicitly permits the Court to condition voluntarily dismissal upon the imposition of terms and conditions, which can include the mandating of further discovery. "[P]lain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal." *Smith*, 263 F.3d at 975 (citing *Hamilton*, 679 F.2d at 145).

### C.   Delay

Third, Defendants argue that Makaeff has been dilatory in filing this motion after nearly six years of litigation. Def. Opp. 14. An advanced stage of litigation is not a dispositive factor in considering a motion for voluntary dismissal. *See Hamilton*, 679 F.2d at 145 (affirming dismissal despite claim that defendant had been put to significant expense in preparing counterclaim and crossclaim, had proceeded with discovery, and had begun trial preparations); *Willenberg v. United States*, 1995 U.S. Dist. LEXIS 16666, at *2 (E.D. Cal. Oct. 31, 1995) ("The fact that the defendant has already incurred substantial expenses in trial preparation, however, does not necessarily constitute sufficient prejudice or hardship to justify denying a plaintiff's motion to dismiss the action without prejudice.").

However, it is also true that courts have been more willing to grant motions for voluntary dismissal when litigation is in an earlier rather than later stage.

*Compare, e.g.*, *Westlands Water Dist.*, 100 F.3d at 96 (finding plaintiffs were not dilatory where they filed the motion within a month after the district court denied their motion for a preliminary injunction and before the defendants filed their motions for summary judgment), *Burnette*, 828 F. Supp. 1439, 1449 (N.D. Cal. 1993) (granting dismissal of RICO claim when defendants had not counterclaimed or otherwise filed for affirmative relief sufficient to be prejudiced), *and Watson v. Clark*, 716 F. Supp. 1354, 1356 (D. Nev. 1989), *aff'd*, 909 F.2d 1490 (9th Cir. 1990) (noting that dismissal would be appropriate because extensive discovery had not occurred and motion came only shortly after defendant's answer and motion for summary judgment, but finding that subject matter jurisdiction was lacking), *with Cent. Mont. Rail v. BNSF Ry. Co.*, 422 Fed. Appx. 636, 638 (9th Cir. 2011) (upholding denial of voluntary dismissal where "after almost four years of litigation [plaintiff] has given no explanation for why it delayed so long in requesting voluntary dismissal"), *Davis v. Huskipower Outdoor Equip. Corp.*, 936 F.2d 193, 199 (5th Cir. 1991) (upholding denial of dismissal where plaintiffs "moved to dismiss this case without prejudice more than a year after the case was removed to federal court . . . and after the magistrate had considered the case and issued a comprehensive recommendation that was adverse to their position"), *and Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. N.Y. 1990) (upholding denial of dismissal where "the action had been pending for over four years, during which it was contested vigorously, if sporadically, and extensive discovery had taken place" and plaintiff only moved for voluntary dismissal "when the trial was less than ten days away").

Plaintiff Makaeff argues that she was not dilatory in filing this motion "within three weeks of the Court's Order Scheduling Pretrial Proceedings." Pl. Reply 8.

Makaeff states that intervening personal circumstances, including the death of her mother, the development of significant health problems, and the possibility of missing work due to participation in the trial, as well as the "reality of a trial against a presidential candidate during an election year," have combined to impel the motion to withdraw. Pl. Mot. 6; Makaeff Decl. 2, ECF No. 443.  Defendants respond that Makaeff's stress and financial difficulties are ongoing, that "[h]er alleged health issues obviously did not deter her from engaging in a highly orchestrated public press tour to generate negative publicity against Defendants in hopes of extracting a quick payment," and that Makaeff was aware that Trump could be a presidential candidate as early as 2011. Def. Opp. 13.

On the one hand, it is undisputed that this litigation has been ongoing for nearly six years and has entered into pre-trial proceedings. On the other hand, Defendants' argument that Makaeff has failed to provide any justifiable basis for the request lacks merit. Makaeff has undoubtedly suffered stress as a result of this litigation well before now, not least because of the $1 million counterclaim filed against her that was pending from 2010 until 2014. But Defendants' assertion that Makaeff anticipated in 2011 the degree to which this case would attract public attention due to the 2016 presidential campaign is risible. Neither pundits, counsel, or the parties anticipated the media obsession that this case would create due to Defendant Trump becoming a candidate for President of the United States. It is also plain that with every additional candidates' debate and state primary, the attention given to the case has grown.[8]

While Makaeff's request to withdraw at the pre-trial stage is unusual, so is the unforeseen degree of attention this case has engendered at the present stage of the

---

[8] The Court notes that defense counsel acknowledges that trial in this case would create a "zoo" like atmosphere and that the media attention will make it difficult to empanel a fair jury.

10cv0940 GPC (WVG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

litigation.  Nor, given the degree of public scrutiny to which Makaeff has been recently subjected, is her apprehension that experiencing further publicity as a named plaintiff would have a negative impact on her professional prospects unreasonable. *See* Pl. Reply, Ex. 1. Here, unlike in *Cent. Mont. Rail*, Makaeff has provided plausible rationales for why she is requesting voluntary dismissal at this late juncture.  And unlike in *Davis* and *Zagano*, Makaeff is not requesting voluntary dismissal because she faces the prospect of an unfavorable judgment.

### D.    Bad Faith

Fourth, Defendants argue that Plaintiffs have filed this motion in bad faith. Def. Opp. 15. Defendants argue that Plaintiffs have presented a "revolving door of class representatives . . . requiring Defendants each time to shift their analysis and adapt their strategy to whomever Plaintiffs wish to name at that time." *Id.* "Ninth Circuit caselaw intimates that a district court may refuse to grant dismissal under Rule 41(a)(2) when exceptional circumstances suggest bad faith and/or vexatious tactics on the part of the plaintiff, and that the defendant may suffer the 'legal prejudice' of never having claims resolved." *Manuel Shipyard Holdings,* 01–cv–883–WHA, 2001 WL 1382050, at *3 (N.D. Cal. Nov.5, 2001) (citing *In re Exxon Valdez,* 102 F.3d 429, 432 (9th Cir.1996) (affirming denial of Rule 41(a)(2) motions because, among other reasons, the court considered them to be a "thinly-veiled attempts to avoid discovery" where there had been total refusal to provide discovery)).

Here, the record demonstrates that although Plaintiffs amended their complaint several times, the named plaintiffs have remained the same since the filing of the third amended complaint on September 26, 2012, nearly three and a

half years ago. Third Am. Compl., ECF No. 128. Discovery remained opened for over two years following the filing of the third amended complaint. ECF No. 349.

Moreover, the filing of the third amended complaint was not opposed by defendants. *See* Order Granting Motion for Leave to Amend Plaintiffs' Second Amended Class Action Complaint, ECF No. 137. Since that time, and unlike in *In re Exxon Valdez,* Plaintiffs have not obstructed resolution of the claims on the merits, but have instead participated extensively in the case. And as discussed above, Makaeff proffers plausible reasons for moving to withdraw at the present time. *See supra* Part I.C. As such, the Court finds that Plaintiffs' conduct does not amount to bad faith warranting refusal to grant dismissal. *See also* Blacks Law Dictionary, 149 (9th ed. 2009) (defining "bad faith" as "dishonesty of belief or purpose").

### E.    Different Outcomes

Fifth, Defendants argue that "[k]ey motions may have been decided differently without Makaeff as a class representative," *id.* at 16, adverting to the Court's reliance on Makaeff's testimony in previous orders, *id.* at 1. In particular, Defendants argue that without Makaeff's allegations, there would be no support for the third amended complaint's allegations that TU engaged in "constant up-sell pressure" and "instructed its students to engage in illegal practices." Def. Opp. 16.

Defendants provide no authority to support the proposition that a court's reliance on a plaintiff's allegations or testimony in previous orders means that a defendant would be legally prejudiced by that plaintiff's later withdrawal. *See id.* at 16–17.  Moreover, in none of those orders did the Court exclusively rely on Makaeff's allegations testimony to support the Court's findings in this representative action. Instead, in each case, the Court has relied on the testimony of

1
2
3
4
the other plaintiff representatives. *See* Class Certification Order 16 n.11, ECF No. 298 (citing deposition testimony from Makaeff, Low, Everett, and Oberkrom); Summary Judgment Order 13-17, 20–21, 23–28, ECF No. 423 (citing deposition testimony from both Makaeff and Low).

5
6
7
8
9
10
11
12
13
In addition, neither the "upselling" nor encouragement of illegal practices allegations Defendants identify as relying on Makaeff's involvement in the case were among the "core" misrepresentations that Plaintiffs ultimately asserted and provide the underpinnings to this representative action, which were whether: "(1) Trump University was an accredited university; (2) students would be taught by real estate experts, professors and mentors handselected by Mr. Trump; and (3) students would receive one year of expert support and mentoring." Class Certification Order 4 & n.6.

14
15
16
17
18
19
20
21
In sum, Defendants' deposition and live testimony—related concerns can be alleviated by imposing terms and conditions on Makaeff's withdrawal. While it is true that it is unusual to grant a motion to withdraw at the pre-trial stage, it is also true that the circumstances that presently surround this case are unique, and that given those circumstances Makaeff has well-founded reasons for seeking to withdraw at the present time. Finally, Defendants' bad faith and different outcome arguments are without merit. The Court thus finds that a consideration of the relevant factors weighs in favor of granting Makaeff's motion to withdraw.

22
### II.    Whether the Dismissal Should Be With or Without Prejudice

23
24
25
26
27
The next question for the Court is whether the dismissal of Makaeff's claims should be with or without prejudice. Dismissal pursuant to Rule 41(a)(2) is without prejudice unless the order dismissing the case states otherwise. Fed. R. Civ. P. 41(a)(2). "Whether to allow dismissal with or without prejudice is discretionary

28

with the court, and it may order the dismissal to be with prejudice where it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action." *Burnette*, 828 F. Supp. at 1443. "The following factors are relevant in determining whether the dismissal should be with or without prejudice: (1) the defendant's effort and expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, [and] (3) insufficient explanation of the need to take a dismissal." *Id.* at 1443–44 (citation omitted) (internal quotation marks omitted); *see also* Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Ch. 16–G, § 16:359. Additionally, "the district court must weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." *Id.* at 1444 (citation omitted) (internal quotation marks omitted).

Makaeff seeks to dismiss her claims without prejudice so that she may remain an absent class member. Pl. Mot. 7. However, in order to alleviate any concerns about Makaeff refiling her claims, Plaintiffs expressly request that the Court condition the voluntary dismissal such that Makaeff may not refile her individual claims against Defendants. *Id.*

As discussed above, although Defendants have gone to considerable effort and expense in preparing for trial, Plaintiffs have otherwise been diligent in litigating the case, and Plaintiffs have advanced reasonable explanations for seeking to withdraw at the present time. Moreover, conditioning the dismissal without prejudice on Makaeff not refiling her individual claims against Defendants substantially alleviates the risk of relitigation.[9] Thus, the Court intends to grant

---

[9] Defendants also contend that if the Court grants Makaeff's motion to withdraw, dismissal of the entire *case* is warranted, citing *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) ("[T]he inherent powers permit a district court to go as far as to dismiss entire actions to rein in abusive conduct."), and arguing that Defendants "should not be required to defend what amounts to a new case." Def. Opp. 17. However, as discussed above, the Court has already found that Plaintiffs

Plaintiffs' request to permit Makaeff to dismiss her claims without prejudice as to her rights as an absent class member in this and the related action *Cohen v. Trump*, 3:13-cv-02519-GPC-WVG, while dismissing her individual claims with prejudice.

### III.    Terms and Conditions of Dismissal

Finally, the Court must consider what terms and conditions, if any, should be imposed on the dismissal of Makaeff's claims, including (1) whether additional depositions should be directed; (2) whether fees and costs should be imposed; (3) whether partial final judgment should be imposed; and (4) whether Defendants should be barred from suing Makaeff in connection with her withdrawal.

### 1.    Additional Depositions

As discussed above, Defendants argue that they would suffer legal prejudice should Makaeff be permitted to withdraw, because they conducted their deposition and litigation strategy with a view towards Makaeff's presence at trial. As noted above, the inability to conduct sufficient discovery for a defense can amount to legal prejudice. *See Westlands Water Dist.,* 100 F.3d at 97 ("In this circuit, we have stated that a district court properly identified legal prejudice when the dismissal of a party would have rendered the remaining parties unable to conduct sufficient discovery to untangle complex fraud claims and adequately defend themselves against charges of fraud."). A court may, but need not, condition a Rule 41(a)(2) dismissal on a plaintiff's deposition or production of discovery. *Compare Dysthe v. Basic Research, LLC,* 273 F.R.D. 625, 629–30 (C.D. Cal. 2011) (holding that the named plaintiff in a class action was subject to deposition despite the fact that he had a pending motion to be dismissed from the action because his anticipated testimony was relevant to class certification issues as well as the merits) *and In re Wellbutrin*

---

have not acted in bad faith in filing the motion to withdraw, and that Makaeff's withdrawal would not amount to legal prejudice to Defendants.

*XL,* 268 F.R.D. 539, 543–44 (E.D. Pa. 2010) (holding that dismissal of original plaintiff in class action was conditioned on the production of discovery to avoid possible prejudice to the defendant) *with Roberts v. Electroluz Home Prods.,* No. 12–cv–1644-CAS, 2013 WL 4239050, at *1–3 (C.D. Cal. Aug. 14, 2013) (denying the defendant's request to condition the named plaintiffs' withdrawal on deposing them).

The Court concludes that Makaeff's withdrawal should be conditioned on Defendants being entitled to conduct an additional deposition on Low.  Deposing Low again would allow Defendants to "focus[] greater discovery on . . . Low," as Defendants claim they would have done had they known Makaeff would seek to withdraw. Def. Opp. 11.

## B.     Attorneys' Fees and Costs

Defendants contend that should Makeff be permitted to withdraw, the Court should award Defendants all costs related to litigating the case against Makaeff. Def. Opp. 17. In addition, Defendants request supplemental briefing to account for the "unnecessary expenses dedicated to conducting discovery and litigating this case in reliance on Makaeff's involvement."

While a court can protect a defendant's interests by conditioning a Rule 41(a)(2) dismissal upon the payment of appropriate attorneys' fees and costs, the imposition of fees and costs as a condition for dismissing without prejudice is not mandatory. *Westlands Water Dist.,* 100 F.3d at 97. Further, fees and costs should only be awarded for work which cannot be used in continuing or later litigation. *See id.*; *see also Koch v. Hankins,* 8 F.3d 650, 651 (9th Cir. 1993). "In determining whether to award costs to a defendant after a voluntary dismissal without prejudice, courts generally consider the following factors: (1) any excessive and duplicative

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

expense of a second litigation; (2) the effort and expense incurred by a defendant in preparing for trial; (3) the extent to which the litigation has progressed; and (4) the plaintiff's diligence in moving to dismiss." *Fraley v. Facebook, Inc.,* No. 11–cv–1726–LHK, 2012 WL 893152, at *4 (N.D. Cal. Mar. 13, 2012) (citation and internal quotation marks omitted).

Here, Defendants are likely entitled to some award of fees and costs in connection with the expenses incurred litigating the case in reliance on Makaeff's involvement. However, the Court intends to defer any consideration of appropriate fees and costs until after trial has been concluded for the purposes of judicial economy. *Cf. Impact Fin. Servs., LLC v. Six400 Check Solutions, LLC,* 2011 U.S. Dist. LEXIS 39738, at *3–4 (D. Ariz. Apr. 1, 2011) ("Moreover, the individual defendants are members of Six400 and trial is scheduled to occur in about five months. . . . Any hardship to the individual defendants caused by their having to wait is outweighed by the burden of piecemeal appeals and motions for attorneys' fees."). In addition, it will be unclear until trial is concluded the extent to which Makaeff's deposition testimony will be used in the continuing litigation.

### C.    Entry of Partial Final Judgment

Plaintiffs seek the entry of final judgment as to both her individual claims and TU's defamation counterclaim, including the anti-SLAPP fees and costs. Pl. Mot. 9–10. Fed. R. Civ. P. Rule 54(b) provides that when more than one claim for relief is presented in an action, or when multiple parties are involved, the district court may enter final judgment as to one or more but fewer than all of the claims or parties "only if the court expressly determines that there is no just reason for delay." Plaintiffs argue that the counterclaim and anti-SLAPP fees are distinct and separable from the class claims, and that TU is a bankruptcy risk, creating a risk that

Makaeff could suffer the "irreparable injury" of being able to collect her already awarded fees and costs. Pl. Reply 9–10. Defendants respond that entry of final judgment should be delayed because Defendants are entitled to an offset of the fees and costs awarded in the anti-SLAPP action by the fees and costs related to unnecessary expenses litigating the main class claims in reliance on Makaeff's involvement in the case. Def. Opp. 20.

The Court intends to deny Plaintiffs' request because there are just reasons for delay. The Court has already found that Defendants are likely entitled to some measure of fees and costs, and that addressing this issue at the present time would strain the Court's resources on the eve of trial. *See supra* Part III.C (citing *Impact Fin. Servs., LLC*, 2011 U.S. Dist. LEXIS 39738, at \*3–4 (denying entry of partial final judgment when "trial is scheduled to occur in about five months [as] [a]ny hardship to the individual defendants caused by their having to wait is outweighed by the burden of piecemeal appeals and motions for attorneys' fees.")). The Court has also found that the extent of the offset could be influenced by the degree to which Makaeff's deposition testimony is relied upon by Defendants at trial. *See id.*

### D.    Bar on Further Litigation

Finally, Plaintiffs request that the Court bar Defendants from using Makaeff's motion to withdraw "as a basis for any claim of attorneys' fees or costs, malicious prosecution, abuse of process, or bad faith, against plaintiff or her counsel." Pl. Mot. 9. Parties dispute whether such an order would constitute an unconstitutional prior restraint. *See* Def. Opp. 18; Pl. Reply 9.

The All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (citing *Weissman v.*

*Quail Lodge Inc.,* 179 F.3d 1194, 1197 (9th Cir. 1999)). However, such pre-filing orders are an extreme remedy that should rarely be used. *Id.* (citing *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990)). Courts should not enter pre-filing orders with undue haste because such sanctions can tread on a litigant's due process right of access to the courts. *Id.* (citations omitted). A court should enter a pre-filing order constraining a litigant's scope of actions in future cases only after a cautious review of the pertinent circumstances. *Id.*

The Ninth Circuit has outlined four factors for district courts to examine before entering pre-filing orders. First, the litigant must be given notice and a chance to be heard before the order is entered. *De Long,* 912 F.2d at 1147. Second, the district court must compile "an adequate record for review." *Id.* at 1148. Third, the district court must make substantive findings about the frivolous or harassing nature of the plaintiff's litigation. *Id.* Finally, the vexatious litigant order "must be narrowly tailored to closely fit the specific vice encountered." *Id.*

Here, Defendants have been given notice and an opportunity to be heard in opposing Plaintiffs' motion. The Court has compiled an adequate record for review. And the vexatious litigant order is "narrowly tailored" in that it only bars Defendants from using the motion to withdraw as a basis for further claims. However, as evidence that Defendants are vexatious litigants, Plaintiffs only proffer the evidence of Trump's threats to sue Plaintiffs and their counsel in the future, as well as Trump's authorization of TU's defamation counterclaim. Pl. Mot. 8–9. However, courts have typically declined to find litigants vexatious on the basis of a single case. *See, e.g.*, *Ringgold-Lockhart v. Cty. of Los Angeles*, 761 F.3d 1057, 1064 (9th Cir. 2014) (observing that "two cases is far fewer than what other courts have found inordinate" (citations omitted) (internal quotation marks omitted)).

Moreover, "litigiousness alone is not enough . . . [t]he [litigant's] claims must not only be numerous, but also be patently without merit." *Id.* (citations omitted) (internal quotation marks omitted). Here, this Court initially denied Plaintiffs' motion to strike TU's counterclaim, ECF No. 24, and was reversed by the Ninth Circuit, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013), which held that because TU was a limited public figure with respect to the subject of its advertising, in order to prevail on its defamation claim, TU must demonstrate that the customer acted with actual malice, a bar which it had not met. The Ninth Circuit's careful analysis suggests that TU's counterclaim was not "patently without merit."

In addition, at least one other circuit has disapproved of imposing conditions on the non-moving party in the context of a motion for voluntary dismissal, on the grounds that "[t]he purpose of authorizing terms and conditions on a voluntary dismissal is to protect the defendant from prejudice." *See Cross Westchester Dev. Corp. v. Chiulli*, 887 F.2d 431, 432 (2d Cir. 1989) (citations omitted). Thus, the Court intends to deny Plaintiffs' request to impose a pre-filing condition on Defendants.

Accordingly, the Court intends to grant in part and deny in part Makaeff's motion to withdraw, by conditioning Makaeff's withdrawal on the conduct of an additional deposition of Low and the imposition of fees and costs to be calculated at the appropriate juncture, while denying entry of partial final judgment or a bar on further litigation. If Plaintiffs are not amenable to these conditions, they may withdraw their Motion. *See Lau v. Glendora Unified Sch. Dist.,* 792 F.2d 929, 930 (9th Cir.1986) (for a Rule 41(a)(2) dismissal, the district court must provide the plaintiff "a reasonable period of time within which to refuse the conditional voluntary dismissal by withdrawing [the] motion for dismissal or to accept the

dismissal despite the imposition of conditions"). Therefore, the Court gives Plaintiffs 7 days from the entry of this Order to withdraw their Motion.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

(1) the Court gives Plaintiffs notice that it intends to grant in part and deny in part Plaintiffs' Motion to Withdraw Plaintiff Tarla Makaeff's claims, pursuant to Federal Rule of Civil Procedure 41(a)(2), ECF No. 443, but with the conditions that (1) Defendants are entitled to depose Low again; and (2) appropriate fees and costs will be determined at a later juncture;

(2) if Plaintiffs are not amenable to the conditions imposed by the Court, Plaintiffs must withdraw their Motion within 7 calendar days of the entry of this Order;

(3) if Plaintiffs are amenable to the conditions imposed by the Court, the deposition of Plaintiff Sonny Low will take place within 21 calendar days of the entry of this Order;

(4) the Parties will notify the Court regarding the completion of Plaintiff Sonny Low's deposition within 28 calendar days of the entry of this Order;

(5) upon satisfying the condition of Defendants deposing Low, the Court will excuse Plaintiff Tarla Makaeff from her duties as a class representative in this action, without prejudice as to her rights as an absent class member in this and the related action *Cohen v. Trump*, 3:13-cv-02519-GPC-WVG, while dismissing her individual claims with prejudice;

(6)     the Court will invite briefing on fees and costs in connection with the motion to withdraw at an appropriate juncture;

(7)     Plaintiffs' Motion for Status Conference Hearing, ECF No. 466, is **DENIED**;

(8)     Defendants' Ex Parte Motion for Leave to File a Response to Plaintiffs' Supplemental Memorandum, ECF No. 470, is accordingly **DENIED** as moot.

**IT IS SO ORDERED.**

DATED:  March 21, 2016

HON. GONZALO P. CURIEL
United States District Judge