1              UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3  TARLA MAKAEFF, et al., on      .
   Behalf of Themselves and All   .
4  Others Similarly Situated,     .
                                  . Docket
5             Plaintiffs,         . No. 10-cv-00940-GPC-WVG
                  v.              .
6                                 .
   TRUMP UNIVERSITY, LLC,         .
7  et al.,                        .
              Defendants.         . San Diego, California
8  . . . . . . . . . . . . . . . . May 6, 2016

9          TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
           BEFORE THE HONORABLE GONZALO P. CURIEL
10              UNITED STATES DISTRICT JUDGE

11                  A-P-P-E-A-R-A-N-C-E-S
   For the Plaintiffs:    Robbins Geller Rudman & Dowd LLP
12                         655 West Broadway, Suite 1900
                           San Diego, California 92101
13                         By:  JASON A. FORGE, ESQ.
                                RACHEL L. JENSEN, ESQ.
14                              XAVIER JAY ALVAREZ, ESQ.
                                DANIEL JACOB PFEFFERBAUM, ESQ.
15                         – and –
                           Zeldes Haeggquist & Eck, LLP
16                         225 Broadway, Suite 2050
                           San Diego, California 92101
17                         By:  AMBER LEE ECK, ESQ.

18 For the Defendants:     O'Melveny & Myers LLP
                           1999 Avenue of the Stars, Suite 700
19                         Los Angeles, California 90067
                           By:  DAVID L. KIRMAN, ESQ.
20                              DANIEL M. PETROCELLI, ESQ.
                           – and –
21                         JILL ANN MARTIN, ESQ.
                           Trump National Golf Club, Los Angeles
22                         One Trump National Drive
                           Rancho Palos Verdes, California 90275
23
   Court Reporter:         Chari L. Possell, RPR, CRR
24                         333 West Broadway, Suite 420
                           San Diego, California 92101
25 Reported by Stenotype, Transcribed by Computer

```
 1            SAN DIEGO, CALIFORNIA; MAY 6, 2016; 1:33 P.M.
 2                              -o0o-
 3            THE CLERK:  Number 10 on calendar, case 10-cv-0940,
 4   Makaeff v. Trump University, et al., for a final pretrial
 5   conference.
 6            MR. FORGE:  Good afternoon, Your Honor.  Jason Forge,
 7   Amber Eck, Daniel Pfefferbaum, Jay Alvarez, and Rachel Jensen
 8   for the plaintiffs.
 9            THE COURT:  Good afternoon.
10            MR. PETROCELLI:  Good afternoon, Your Honor.  Daniel
11   Petrocelli for defendants.
12            MR. KIRMAN:  David Kirman for defendants.
13            MS. MARTIN:  Jill Martin for defendants.
14            THE COURT:  Good afternoon.  It's good to see you
15   all.
16       We are here for a pretrial conference.  I have had the
17   opportunity to review the submissions.  And as a starting
18   point, I wanted to express my disappointment.  Back in
19   December, we were here, and I asked the parties to do all they
20   could to try to work out as many issues as they could, and so I
21   was looking forward to the parties meeting and conferring and
22   working out the issues that you can.  And I keep in mind this
23   is an adversarial system.  No one is expecting anyone to roll
24   over.  At the same time, we know that, within the hierarchy of
25   things, that there's issues of greater importance than others.
```

1        The fact that we at this time cannot even agree on a

2   statement of the case -- that's disturbing.  And I must

3   confess, I agree with the defense that, with respect to the

4   statement of the case that's been offered by the plaintiffs, it

5   is argument and it isn't a fair statement of the case.  There's

6   going to be plenty of opportunities for the parties to assert

7   their positions and to argue vigorously and argue, to the

8   extent that the law provides, the position of their respective

9   parties.

10        I also noted that, with respect to the proposed special

11  verdict forms, that you all are on polar opposites in terms of

12  what would be a proper special verdict form.  And the fact of

13  the matter is the special verdict form is going to be somewhere

14  in the middle.  It is not going to be as specific as requested

15  by the defense; it is not going to be as general as requested

16  by the plaintiffs.

17        And so all of the attorneys here are very experienced,

18  probably some of the top legal minds in the country.  So I am

19  looking forward to you all using that legal knowledge that you

20  have so that we can streamline this case to the extent

21  possible.

22        I recognize this is part of the adversarial system, that

23  both sides are allowed to make arguments that are plausible,

24  arguments that are viable.  At the same time, that doesn't mean

25  we need to spend a lot of time on things that really, at the

1    end of the day, either aren't going to matter that much or the

2    law is going to lead to a particular conclusion.

3        So I say that to begin because I am going to ask you all

4    to go back and meet and confer so that you can get closer to

5    what an appropriate statement of the case looks like or would

6    be in this matter.

7        Reviewing the submitted materials, I see at this point we

8    have gone from what I thought had been a two-week trial to what

9    appears to be a three- to four-week trial; 14 days for Phase I

10   and three to five days for Phase II.

11       And let me inquire, first, with respect to that estimate,

12   is this 14 days for both the plaintiff and defense case,

13   Mr. Forge?

14           MR. FORGE:  14 court days.  Yes, Your Honor.

15           THE COURT:  For both sides?

16           MR. FORGE:  Yes.

17           THE COURT:  And then three to five days for Phase II.

18   Keeping in mind we only go from Monday through Thursday, then,

19   as a result, a 17-day trial would take at least four weeks, and

20   that creates potential scheduling issues for me.

21       But even looking at this as a 14-day trial, let me

22   inquire.  I have looked at the number of exhibits, and I see

23   that there's about 300 exhibits that are referenced by the

24   plaintiffs, and I think there's also some indication that that

25   might be whittled down some; is that correct?

1          MR. FORGE:  That is correct, Your Honor.  That is

2     already whittled down.  It will be whittled down further.  It

3     started out just south of 1,000, and now it's down in the

4     neighborhood of 300.

5          But the days estimates -- Your Honor, one of the main

6     sticking points in our discussions is basically the scope of

7     the evidence that comes into the case in terms of whether this

8     is a representative type of trial, where it's about the class

9     representatives, or whether it is any former student can

10    testify, and that will really dictate a lot in terms of timing.

11    If that cuts the way we have been advocating, then I think this

12    trial, for both sides, is under two weeks.  If it cuts against

13    where we are advocating, then it could be longer.

14         THE COURT:  Do you agree, Mr. Petrocelli?

15         MR. PETROCELLI:  Your Honor, I think the trial is

16    going to take longer no matter how it cuts.  I think jury

17    selection will be an extremely challenging endeavor, whenever

18    this trial is scheduled, just that process alone.

19         And we have serious questions about whether it should be

20    divided into two phases.  I think we have set forth some

21    different ideas and various proposals.

22         THE COURT:  Right.  And I will get to that in a

23    moment.

24         MR. PETROCELLI:  Right.  But putting aside how the

25    trial is managed, I think we are looking at three to four

1    weeks, minimum, especially at four days per week, Your Honor.

2           THE COURT:  Is that for Phase I, or Phase I and II?

3           MR. PETROCELLI:  I am thinking of -- if what you mean

4    by "Phase II" is damages related to the class representatives,

5    yeah.

6           THE COURT:  Right.

7           MR. PETROCELLI:  Looking at those two phases

8    together, my judgment is that, with jury selection, we are

9    looking at a minimum of four weeks with four court days per

10   week.

11          THE COURT:  And so, at this point, let me inquire.

12   As I understand it, the parties are in agreement as to the need

13   for a jury questionnaire, and the parties have come to an

14   agreement as to what the proper questionnaire questions would

15   be?

16          MR. FORGE:  That's correct, Your Honor.

17          THE COURT:  So that's good.  That means you all

18   worked together on that, and I am prepared to go forward with

19   the questionnaire as a starting point.  I don't think there is

20   any other way to select a jury that's fair and impartial

21   without that process, or at least there's no way that we can

22   conduct that process within a reasonable period of time because

23   it's going to be potentially problematic in identifying

24   individuals that can be fair and impartial considering all of

25   the circumstances of this case.

1          Let's talk about these phases.  It appears that both

2     sides, in different ways, have inserted the issue of damages

3     into the equation.  It appears that the plaintiffs have

4     inserted damages in the context of punitive damages and the

5     necessary predicate findings that would permit a jury to find

6     punitive damages.

7          And then, if I am not mistaken, it appears that the

8     defense is seeking to have the jury make a threshold

9     determination with respect to damages and, at Phase I or

10    Phase A, for the jury to weigh in and determine whether or not

11    the plaintiffs' theory of damages -- the full-refund model --

12    is in fact supported by the evidence.

13         And I want to let the parties know how I see it at this

14    point.  When I ruled on the motion to declassify the class, I

15    decided that we were going to have a bifurcated trial, at least

16    a bifurcated trial, and at that first portion of the

17    proceedings, we would have issues relating to liability

18    addressed -- liability; not punitive damages and not factual

19    determinations related to punitive damages nor threshold

20    questions whether or not the plaintiffs demonstrated that they

21    were entitled to a full refund.

22         So at this point, I do not see this case being presented

23    in a way where, at Phase I, the damages -- either the

24    full-refund model or, under the punitive damages, predicate

25    findings -- will be addressed.  So that's number one.

1      With respect to the question regarding proceeding with a

2  bench trial on the equitable claims in advance of or before the

3  legal claims, my view is that the Seventh Circuit would not

4  permit that in this case.  I have reviewed the cases referenced

5  by the defense.  I think there's a *Park Lane* case that's

6  referenced by the defense.  It does not appear to be

7  particularly germane, given the background of the *Park Lane*

8  case and the *Beacon Theaters* case.  The Court is of the view

9  that the *Danjaq v. Sony* case is -- if not on all fours, is more

10 instructive as to how the Court should proceed in this matter.

11     So I am not prepared to hold a bench trial on the

12 equitable claims prior to the impaneling of the jury and

13 allowing the jury to decide the legal claims that are involved

14 in this case.

15     There have been certain questions raised with respect to

16 the use of a special master if we reach that point.  I don't

17 think we really need go there, particularly at this point.  I

18 am aware -- but I do appreciate that the parties have provided

19 the Court with your views on that because that is something

20 that I will be looking at closely, and I said that last

21 December, and so I appreciate hearing your respective positions

22 on the employment or use of a special master.  And if it comes

23 down to that, where there is liability found against the

24 defendants, then I will be in a position to make a decision on

25 whether or not a special master will be utilized or how we will

1   go forward.  And keeping in mind that there are a number of

2   considerations that may come into play between now and that

3   time; and I don't think I need to, at this juncture, go into

4   detail about all of those circumstances.  So I am not prepared

5   to discuss the special master's issue.

6        At this point, what I would like to do is talk about trial

7   dates and motions in limine hearing dates.  The plaintiffs have

8   offered a trial date in the July-August time frame.  And the

9   plaintiffs point to the defendants' failure to give a proposed

10  trial date.

11       Mr. Petrocelli, do you have a trial date at this time you

12  are asking the Court to consider?

13          MR. PETROCELLI:  Your Honor, did Your Honor receive

14  the proposal that we -- the brief that we sent you late

15  yesterday?  Because in that brief --

16          THE COURT:  I received a lot of documents.

17          MR. PETROCELLI:  In that brief, Your Honor, we asked

18  the Court to exercise its discretion not to set this case for

19  trial today but to defer setting it for trial until after the

20  nation's presidential election in November.  And the reason

21  that I believe that is an appropriate exercise of the Court's

22  discretion is, given the, frankly, unprecedented circumstances

23  in which we all find ourselves, that we have Mr. Trump, a

24  personal defendant in this case, as the presumptive nominee of

25  the Republican Party to be president of United States.  He has

1    the Republican National Convention starting on July 18.  I

2    think that goes through July 21st.  And assuming he will be the

3    nominee, the presidential election, of course, is in November.

4         And I think it would be -- it's unnecessary to set this

5    trial before November.  And I do believe that it will cause an

6    unwarranted intrusion on the election process because this case

7    will become a lightning rod in the political arena.  It already

8    has become that.  It's been a recurring topic of discussion

9    during the campaign so far.  And beyond that, Mr. Trump must

10   devote all of his full-time efforts and energies to running his

11   campaign and running for office, and I don't believe that it

12   would be fair to him -- in fact, I think it would be a

13   virtually impossible burden on him to have to defend himself at

14   trial between now and November.

15        If Mr. Trump is unsuccessful in November, I suspect he

16   will have plenty of time on his hands, and we can set a trial

17   date.

18        If Mr. Trump is elected president in November -- I am

19   fully aware of the Supreme Court's decision in *Clinton v.*

20   *Jones*.  Under the separation of powers, there is no immunity

21   for a sitting president to face private litigation.  It's up to

22   the discretion of the Court.  The opinion -- the Supreme Court

23   counsels even a moderate delay in setting a case for trial for

24   a sitting president but indicated that there was no automatic

25   rule, for example, for staying a case pending the entire term

1    of the president's office.  So I would imagine that, were

2    Mr. Trump successful, we could pick a date after the election,

3    sometime in the beginning of the year, and have our trial then.

4    I don't believe there is any compelling reason, given that the

5    case is already six years old, why it has to be tried now,

6    particularly given the effects that it could have on the

7    election process.

8              THE COURT:  Let me ask you.  To the extent that we

9    got past the election, is there any reason why this case

10   shouldn't be tried between the election and Mr. Trump's being

11   sworn in as president, if he were elected?

12             MR. PETROCELLI:  I would think it would be more

13   reasonable to wait until after the inauguration because that is

14   an extremely hectic time, when a president is putting together

15   a transition team, making all sorts of extremely important

16   appointments, not to mention you have a couple of holidays in

17   there, with Thanksgiving and Christmas and New Year's.  And I

18   would think, for example -- early February is what I would

19   propose be a reasonable time.

20       I also want to point out to the Court that, as we

21   indicated in our filing, we will be making a motion in this

22   case to decertify the liability issues based on subsequent

23   developments.  We already have a pending motion for

24   decertification in the related Cohen case, which is set to be

25   heard on July 18.  And Your Honor, we also have, I think, as

1    you realize, a motion for summary judgment to be heard on that

2    date, and I would be prepared to get our motion for

3    decertification in the Makaeff case set for that date as well.

4         The reason why I think that's important is because it's

5    difficult to conceive of having one trial, let alone two

6    separate trials, on what are essentially the same facts.  And

7    while, frankly, from a tactical standpoint, there are lots of

8    good reasons why, on our side, we would not want to combine

9    these cases -- for example, the plaintiffs have no experts in

10   the Makaeff case and they do in the Cohen case.

11        At the same time, just being reasonable about this, I

12   can't imagine subjecting Mr. Trump to two of these trials

13   within a short period of time.

14        So I would think that, to the extent the Cohen case

15   survives summary judgment -- and we would hope that it does

16   not -- it is only asserted against Mr. Trump, not against Trump

17   University.  There might be some way to then take what survives

18   of these two cases, in class form or otherwise, and figure out

19   a manageable plan that makes more efficient sense.

20             THE COURT:  Well, one of the points that the

21   plaintiff raises with respect to Mr. Low is that, given his

22   age -- he is the representative for the elder class abuse

23   claim -- that ultimately he is entitled to some preference.

24   And under California law, in California state court, he would

25   be receiving preference given his age.

1    What is your position as to whether or not the Court

2    should take into account Mr. Low's age?

3         MR. PETROCELLI:  I think it's reasonable to take into

4    account an elderly person's age.  I know under the California

5    statute, Your Honor, there is a preference given.  It's not

6    mandatory, and I am not aware he has any imminent health

7    issues.  I may be mistaken on that; I would be prepared to be

8    corrected.  But in any event, we are only talking about ten

9    months -- nine months, ten months, in that neighborhood.  It's

10   not -- under the unique circumstances of having chosen to sue

11   Mr. Trump, it is not unreasonable.

12        THE COURT:  Given the fact that he is elderly, if he

13   passed away, he is, I believe, the only representative for the

14   elder abuse class; is that correct?

15        MR. PETROCELLI:  I think that's correct.

16        MR. FORGE:  That's correct.

17        THE COURT:  If something happened to him, we would

18   have to, essentially, find a new class representative, and we

19   would have to go through the whole discovery process after

20   that.

21        MR. PETROCELLI:  It's somewhat speculative, Your

22   Honor, but yes.  They had no problem, you know, removing Tarla

23   Makaeff after six years.  I assume they could find somebody

24   else to substitute in for Mr. Low.  He obviously can't be the

25   only elder.

1          THE COURT:  No.  And I think you know what I am

2     saying, is that -- my concern is that --

3          MR. PETROCELLI:  Yeah.

4          THE COURT:  -- this case is from 2010.  And this is,

5     as I said before, the second oldest case that I have on my

6     docket.  And my oldest case is from 1951, and that case will be

7     here after I am long gone.  There's nothing I can do about that

8     riparian rights case, but there is something I can do about

9     this case.  So to the extent it is a 2010 case, as I said last

10    December, I am anxious to move this case forward.

11         And I am trying to accommodate Mr. Trump's circumstances,

12    and I am continuing to try to do that, keeping in mind what the

13    court views as the most important consideration, which is to

14    afford Mr. Trump, Trump University, and the plaintiffs a fair

15    trial.  And the way I can see that I can help that happen, to

16    make that happen is, number one, do all that I can so we can

17    select a fair jury.  Along those lines, a jury questionnaire

18    will help us.  We will take as long as we need to arrive at a

19    fair jury.

20         And second is to have the jury decide the case based on

21    the evidence and the law and not outside circumstances, not

22    outside publicity, media, not outside events.  And we have seen

23    that there have been some events that have coincided with the

24    election campaign process, and I am sensitive to the fact that

25    there could be events that the jury would learn about entering

1    the courthouse or some other way that could unduly influence

2    them and could prevent a fair trial from being delivered to all

3    the parties.

4         That's my number one concern is delivering a fair trial;

5    my second concern is doing that in a reasonable time frame.

6         And it just seems to me that waiting for president Trump

7    to begin his first term ends up placing us in a situation where

8    a sitting president is taking time from their work as the

9    leader of the free world in order to deal with this case.

10        I am more inclined to hold a trial between the election,

11   November 4 or 5, whatever the date is, and January.  And my

12   view would be to have the jury selection begin right after

13   Thanksgiving.  So that's how I see the case at this moment, but

14   let me hear from the plaintiffs.

15             MR. FORGE:  Thank you, Your Honor.

16        Your Honor, we are obviously anxious to get the case to

17   trial.  We share the Court's priorities, although ours might be

18   reversed, simply because I think we reach a point where --

19   reversed as to the second one is our top priority and the first

20   one is our second, only because I do believe in the principle

21   that justice delayed is justice denied, and it is particularly

22   acute here, where we have a senior class, as Your Honor pointed

23   out, and we have a substantial amount of money on an individual

24   basis at issue here.  This is not a prototypical class action,

25   where we are talking about -- we have -- both sides have cited

1    cases involving cranberry juice or a protein bar or things of

2    the like.  These are real people who spent money, significant

3    money, they had set aside for their retirement.  These are

4    people who are still paying the debt on the money they paid to

5    Trump University.  So for them, it is impacting their lives and

6    has impacted their lives every day.

7        So I would urge Your Honor to set a trial without

8    regard -- that does not turn on any election or election

9    outcome because my fear would be, along the lines of what Your

10   Honor expressed, that if Mr. Trump were to be elected

11   president, we would have a whole new host of -- and I don't

12   mean to imply they would be illegitimate arguments, but we

13   would have a whole new host of arguments as to why the trial

14   could not go in February or in March or in April.  There's just

15   no way to anticipate all the different issues that could arise

16   under those circumstances.

17       I think -- nobody would have predicted where we are here

18   in the election.  I don't think anybody in this courtroom

19   anticipated -- even if Mr. Trump was going to prevail as the

20   nominee, I don't think anybody anticipated that he would be the

21   presumptive nominee as of May 6.  And I agree with

22   Mr. Petrocelli, that is where things stand, which, to me, puts

23   July on the table a little more prominently and more

24   realistically than it was previously because, unlike

25   Mr. Trump's counterparts on the Democratic side, he is not --

1    he is not still competing for the nomination.

2         So he could -- not just theoretically but realistically --

3    get this case tried and done by the time the Democratic

4    convention concludes.

5              THE COURT:  I realize there's two aspects of holding

6    a trial before the November election.  One is in terms of

7    Mr. Trump's availability to prepare, to participate in the

8    trial.  That's one thing.  But then second is the -- if not

9    Pandora's box, the unleashing of forces that we can only

10   speculate would occur in the event that we held a trial in this

11   courthouse prior to the election date.  We can look at the

12   events of the last month or two to give us some indication of

13   what might happen, and so to the extent that the past is

14   prologue to what might happen, I am thinking of my jury.  I am

15   thinking of will they be able to stay clear of the media frenzy

16   that will occur, that will arise?  Will we be able to insulate

17   them from events that may occur around this courthouse?

18        So ultimately, that's my number one concern.

19             MR. FORGE:  I understand that, Your Honor.  And

20   that's, obviously, a very fair concern, and a reasonable one.

21   And if it -- look, if we can get a date certain immediately

22   after the Thanksgiving holidays, we would appreciate it.  We

23   would take that.  Obviously, the sooner the better.

24        And I say that not because there's going to be a

25   tremendous injustice if we have to wait four months, from July

1    to November; it's just that with each month that passes,

2    there's more opportunity for there to be new events that

3    compromise the trial date.  If we know for certain, okay, we

4    are going to go to trial -- elected, not elected, whatever

5    might happen, if we are going to go to trial immediately after

6    Thanksgiving, we absolutely would accept that, and we would

7    advocate for that, certainly more so than any trial date that

8    is at all dependent upon the outcome of the election because,

9    frankly, that is just fraught with peril, and that is really no

10   trial date at all because there's way more uncertainty than

11   certainty if we are making this contingent upon the election

12   outcome.

13       If we say we will go to trial the first Tuesday or Monday

14   after Thanksgiving, or whenever Your Honor says, shortly after

15   Thanksgiving, and we all understand this is -- we are going to

16   trial whether or not Mr. Trump is elected, we can't reasonably

17   ask for more than that.  But we also can't, in the interest of

18   justice, ask for less than that either.

19            THE COURT:  Let me ask you, Mr. Petrocelli, do you

20   know whether or not Mr. Trump intends to be present throughout

21   the trial or whether or not he's indicated he will be here for

22   a day --

23            MR. PETROCELLI:  No, I think he would intend to be

24   present for most if not all of the trial given that he

25   currently is a personal defendant as to which punitive damages

1  are being sought, and he certainly intends to testify.

2        THE COURT:  All right.  Thank you.

3     So given the respective positions of the parties, given

4  what the Court has observed regarding our circumstances, what I

5  am prepared to do is set trial to begin with jury selection on

6  November 28th, 2016.  There's a possibility that I may direct

7  that the jury selection process begin a couple of weeks

8  earlier, and then, after we have the jury selected, we would

9  start the trial on the 28th.  I am still considering that.  But

10 as of this moment, we will start no later than November 28 for

11 trial.

12    We will have the motions in limine hearing on

13 November 10th of 2016 at 1:30 p.m., and at that motion in

14 limine hearing, I also plan to address objections to video

15 depositions so that, to the extent that there are objections,

16 then we can have them ruled upon sufficiently in advance of

17 trial so that the video can be edited to reflect what the Court

18 is prepared to admit.

19    Then we will have a jury instruction and special verdict

20 conference on November 18.  And then we will look closely at

21 what instructions are appropriate and what special verdict form

22 language we need to have.

23    And on a related matter, with respect to the Cohen v.

24 Trump motion for summary judgment, that's currently scheduled

25 for July 18.  At this point, given the amount of material

1   that's been presented, I am going to continue that until

2   July 22 at 1:30 p.m.

3        And then, let's see.  Are there any other issues that

4   could benefit from our taking them up at this moment?

5              MR. FORGE:  Your Honor, I don't think necessarily at

6   the moment I would ask you to take this up, but I think it

7   would help both sides if we could get a ruling from Your Honor

8   well in advance of the in limine date regarding the issue of

9   the scope of the evidence, and I say that in an overarching

10  manner.  Plaintiffs' perspective is that, as a class action,

11  the Court has already gone through the process of vetting the

12  class representatives and confirming that their experiences

13  are, in fact, representative of the class, and that's what

14  makes this a class action.  And therefore, our understanding is

15  that means that we try the case as to those three individuals;

16  it is the same as trying the case as to all.  And therefore,

17  the evidence must pertain to -- for the most part, from the

18  students' perspective at least, the evidence must pertain to

19  those individuals.

20       The defense has a number of former students on their

21  witness list who are not class representatives, and I am not

22  going to attempt to make Mr. Petrocelli's argument for him, but

23  there's a disagreement as to whether or not

24  nonclass-representative former students and evidence related to

25  those folks is admissible.

1    And the reason why I would ask Your Honor to set that for

2  a hearing prior to the in limine date is I really do think that

3  will change significantly the parties' positions on evidence,

4  exhibits that are going to be used, and on testimony that's

5  going to be submitted, so I would ask for that.

6    And the only other issue I would raise, Your Honor, is

7  Mr. Petrocelli mentioned that they will be filing another

8  motion for decertification.  They can certainly file a motion

9  for leave to file another motion for decertification, but the

10  deadline for motions passed February of last year so -- I don't

11  think we should put the cart before the horse.  I will save my

12  arguments on why I don't think such a motion would be

13  meritorious, but I also don't want to sit idly by and just

14  assume they are entitled to file another motion.

15    THE COURT:  All right.  Mr. Petrocelli, first of all,

16  let me ask, do you agree that it would be productive to hold a

17  pre-motion in limine hearing to address this issue with respect

18  to what witnesses the defense would be entitled to call upon to

19  rebut the plaintiffs' case?

20    MR. PETROCELLI:  I do, Your Honor, except that I

21  would broaden that a bit to also include discussion of and

22  determination by the Court of how the trial will actually be

23  conducted.  We have made some arguments why we think it would

24  be more efficient to not break this up into two phases with the

25  same jury, but because of overlapping evidence and not having

1    to call witnesses a second time and for a whole number of

2    reasons that we could address to you more fully, we think it

3    might make sense to just have one trial that would decide

4    certain class issues and certain individual issues in one

5    setting and with a special verdict form.

6         But those are the sorts of issues that I do think we would

7    benefit from -- I agree with Mr. Forge -- in having earlier

8    guidance from the Court.  And that would help, I also think,

9    with making judgments about witnesses.

10        We do believe we are entitled to call absent class members

11   and we are not just limited to cross-examining the three class

12   representatives, but we can address all that at a later date.

13            THE COURT:  All right.  Well, let me give that some

14   thought.  And then I will issue an order to the extent that I

15   agree that we should have a pre-motion in limine hearing date.

16   And to the extent that I do conclude that we should have such a

17   hearing date, I will give you the date, and then I will define

18   the parameters, what we would be addressing.

19        And then with respect to the second point raised by

20   Mr. Forge, as to a contemplated renewed motion for

21   decertification, I think Mr. Forge has correctly identified

22   what the process would be at this point given that we are way

23   past the motions cutoff.  There would have to be a motion for

24   leave to file a motion --

25            MR. PETROCELLI:  I will -- I will file that motion

 1    for leave, but I do believe that the law is that a court must

 2    examine the question of decertification at any point in time.

 3    I do not believe that this is subject to some motion deadline.

 4    But I would be happy to brief that for Your Honor.

 5              THE COURT:  Why don't you make that motion for leave

 6    and set out your reasons why you are entitled to have -- if not

 7    reconsideration, to have the Court consider decertification,

 8    and then the plaintiffs can respond, and then we can address it

 9    in that manner.

10         Let me make sure I don't forget anything.

11         There was a disagreement as to the number of jurors that

12    we should impanel.  We are still months away from that process,

13    but I am not inclined to go with a 12-person jury.  I would be

14    more inclined to go with an eight- or nine-person.  So that's

15    my tentative thoughts on that.

16         And so is there anything else before we conclude?

17              MR. PETROCELLI:  Not from us.  Thank you, Your Honor.

18              MR. FORGE:  Just one clarification.  I assume, when

19    Your Honor referenced all of the issues with regard to the

20    motions for summary judgment, you are including the expert

21    issues and that all of those motions are moved to July 22?

22              THE COURT:  Right.  Right.  That's exactly right.

23         And I will ask the parties to meet and confer and then

24    provide the Court with an amended or updated pretrial

25    conference order and which addresses this question of the

1    statement of the case in a manner that's agreeable to both

2    sides.

3              MR. PETROCELLI:  Thank you, Your Honor.  Thank you

4    very much.

5              MR. FORGE:  Thank you.

6              THE COURT:  Thank you.

7        (End of proceedings at 2:12 p.m.)

8                            -o0o-

9                    C-E-R-T-I-F-I-C-A-T-I-O-N

10

11             I hereby certify that I am a duly appointed,

12   qualified and acting official Court Reporter for the United

13   States District Court; that the foregoing is a true and correct

14   transcript of the proceedings had in the aforementioned cause;

15   that said transcript is a true and correct transcription of my

16   stenographic notes; and that the format used herein complies

17   with rules and requirements of the United States Judicial

18   Conference.

19             DATED:  May 13, 2016, at San Diego, California.

20

21                       /s/  Chari L. Possell

22                       _____
                         Chari L. Possell
23                       CSR No. 9944, RPR, CRR

24

25