DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DAVID L. KIRMAN (S.B. #235175)
dkirman@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

JILL A. MARTIN (S.B. #245626)
jmartin@trumpmational.com
TRUMP NATIONAL GOLF CLUB
One Trump National Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 202-3225
Facsimile: (310) 265-5522

Attorneys for Defendants
DONALD J. TRUMP and TRUMP
UNIVERSITY, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONNY LOW et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>TRUMP UNIVERSITY, LLC et al.,<br><br>                    Defendants. | Case Nos.  10-CV-0940-GPC(WVG)<br>                     13-CV-2519-GPC(WVG)<br><br>**[CLASS ACTION]**<br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO AMEND PROTECTIVE ORDER**<br><br>Hearing: June 30, 2016<br>Time:  1:30 p.m.<br>Courtroom:  2d<br>Judge:  Hon. Gonzalo P. Curiel |
| ART COHEN, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP,<br><br>                    Defendant. | |

## I.    INTRODUCTION

Plaintiff and various news organizations are seeking to inject into the public domain videos of depositions taken during discovery in these two actions. These deposition videos, taken pursuant to the liberally construed provisions contained in the Federal Rules of Civil Procedure, are filled with discovery that is irrelevant, inadmissible, and prejudicial. They are entirely duplicative of deposition transcripts, many of which are already in the public domain through legal filings. Depending on the availability of witnesses and the nature and substance of the testimony, use of these deposition videos may be disallowed or limited by the Federal Rules of Evidence. If made public, these deposition videos will be widely disseminated in the media. Owing to the danger that a video may create in eliciting bias on the part of its viewer, the Court has a duty to prevent their disclosure because they can taint the jury pool.[1] Undoubtedly, these videos also will be used by the media and others in connection with the presidential campaign.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c), the Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Courts properly issue protective orders upon showing of good cause. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). "'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). The Court has "substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984).

---

[1] Defendants respectfully request that the Court defer ruling on Plaintiff's *ex parte* or the Intervenors' motion regarding confidential designations, Dkts. 230, 233, 236, pending the resolution of this motion.

## III. GOOD CAUSE EXISTS TO PREVENT FILING OR OTHER DISSEMINATION OF DEPOSITION VIDEOS

There is no good reason for allowing the public dissemination of video depositions taken in this case. Written transcripts contain the complete deposition testimony of each deponent. In contrast, allowing public access to the video depositions creates a significant risk of irrevocably tainting the jury pool. As the Court is aware, this litigation is being covered by the national media, and heavily scrutinized as to issues related to Mr. Trump. Countless news stories have been released, often quoting from the deposition transcripts gratuitously included in and filed with Plaintiffs' briefs for purposes wholly unrelated to this litigation. As many courts have recognized, "[v]ideotapes are subject to a higher degree of potential abuse than transcripts. They can be cut and spliced and used as 'sound-bites' on the evening news or sports shows." *Felling v. Knight*, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001). And unlike in other cases where it was unclear that "out of context snippets" would be broadcast because the "media frenzy" around the case had died down, *see Condit v. Dunne*, 225 F.R.D. 113, 118 (S.D.N.Y. 2004), the "media frenzy" surrounding this case is certain to continue through the election.

### A. Good Cause Exists Because the Videos May Taint the Jury Pool.

Many federal courts have recognized the dangers of video exhibits in prejudicing the proceedings and tainting the jury pool. *See, e.g.*, *United States v. Dimora*, 862 F. Supp. 2d 697, 711 (N.D. Ohio 2012) ("That these exhibits are videos increases the probability that they will be widely disseminated and thus taint the jury pool."). To avoid such prejudice, courts issue protective orders preventing these videos from being publicly filed or otherwise disseminated. *See Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (protective order issued prohibiting distribution of video because release would add to media frenzy over

case, interfere with administration of justice, and subject the deponent to annoyance, embarrassment, oppression, or undue expense or burden).

For example, in *Lopez v. CSX Transportation, Inc.*, 2015 WL 3756343, at *6 (W.D. Pa. June 16, 2015), the court granted a defendant's request for a protective order preventing public disclosure of video depositions where the defendant argued that "altered images from the video depositions could be used . . . for sensationalism or to taint the jury pool." Recognizing that the defendant had "demonstrated that disclosure of the depositions [would] cause a clearly defined and serious injury," the court found that the defendant had satisfied the good cause standard and granted a protective order covering the video depositions. *Id.*; *accord Dimora*, 862 F. Supp. 2d at 707 ("The Court is thus loathe to release any exhibits at this time that might make it more difficult to ensure that Dimora's due process right to a fair and unbiased jury is preserved . . . .").

The need to prevent such "sensationalism" is particularly acute here because of Mr. Trump's unique circumstances in running for President of the United States. "[T]here is a strong judicial tradition of proscribing public access to recordings of testimony given by a sitting President." *See, e.g.*, *United States v. McDougal*, 103 F.3d 651, 659 (8th Cir. 1996) (affirming district court's denial of access to video deposition testimony after President Clinton filed a motion for protective order to preclude its distribution); *accord Jones v. Clinton*, 12 F. Supp. 2d 931, 934–35 (E.D. Ark. 1998) (allowing dissemination of deposition transcripts after granting summary judgment, but barring dissemination of videotapes); *United States v. Poindexter*, 732 F. Supp. 170 (D.D.C. 1990) (refusing to allow the press physical copies of President Reagan's videotaped deposition eleven days prior to defendant's criminal trial, citing proximity of trial and defendant's right to a fair trial). These same cautions and concerns apply with full force here to a presidential candidate whose every move is being covered by the media. Mr. Trump may be a

sitting President by the time the *Low* case goes to trial, in which case these principles apply with even greater force.

### B. Good Cause Exists Because Release of the Videos Will Only Serve to Harass Defendants.

Disclosure of the video depositions serves no purpose because transcripts of deposition testimony relied on in this litigation are already public, and public dissemination of the videos would only serve to harass the deponents, including Mr. Trump. Rule 26(c) governs protective orders and provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Federal courts find that good cause exists for such a protective order when it will protect parties or others from harassment. *See Centeno-Bernuy v. Becker Farms*, 219 F.R.D. 59, 62 (W.D.N.Y. 2003) (finding that plaintiffs demonstrated good cause for protective order because former owner of defendant company demonstrated a threat of harassment should certain personal information be disclosed); *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 892 (6th Cir. 1991) (finding no abuse of discretion in granting protective order against taking deposition of witness, where, *inter alia*, witness provided evidence that defendant's primary purpose was to harass and annoy her).

### C. Good Cause Exists Because Video From a Private Legal Dispute Should Not Be Used Solely For the Media or Entertainment.

Good cause exists because making public video depositions that may *not even be used at this trial* is not only oppressive and burdensome to the deponents, but also compromises the judicial process itself. Because of the rules permitting broad discovery, the latitude of questions that may be asked of a deponent at a deposition is not confined to admissible or relevant evidence. *See* Fed. R. Civ. P. 26(b)(1); *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 579 (D.S.D.

2006) ("[t]h[e] broad scope of discovery applies to depositions"). Deponents must therefore answer all deposition questions that are posed to them—with very few exceptions. *See* Fed. R. Civ. P. 30(c)(2); *Van Stelton v. Van Stelton*, 2013 WL 5574566, at *15 (N.D. Iowa Oct. 9, 2013) ("[A] deponent must answer all deposition questions, even if his or her attorney objects, unless the attorney expressly instructs the deponent not to answer or moves to suspend the deposition."); *Detoy v. City & Cty. of S.F.*, 196 F.R.D. 362, 365 (N.D. Cal. 2000) ("As a rule, instructions not to answer questions at a deposition are improper."); *see also Stewart v. Colonial W. Agency, Inc.*, 87 Cal. App. 4th 1006, 1014 (2001) ("Deponent's counsel should not even raise an objection to a question counsel believes will elicit irrelevant testimony at the deposition. Relevance objections should be held in abeyance until an attempt is made to use the testimony at trial.").

As a result, much of the testimony elicited in a deposition will never come into evidence at trial, because it is irrelevant, highly prejudicial, or otherwise inadmissible. *See, e.g.*, *Hertz v. Graham*, 23 F.R.D. 17, 23 (S.D.N.Y. 1958) (admitting deposition at trial provided that "any portions that are inapplicable and unduly prejudicial to the rights of the defendant would be eliminated"); *Juneau Square Corp. v. First Wis. Nat'l Bank of Milwaukee*, 475 F. Supp. 451, 462 (E.D. Wis. 1979) (finding deposition sections properly excluded from trial that contained hearsay, speculation, or lacked adequate foundation).

There is no justifiable reason why deposition videos should be made available outside the courtroom. *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999) ("Rule 30(b)(2) . . . was not intended to be a vehicle for generating content for broadcast and other media."). In *Paisley Park*, the court ordered that the videotape of a deposition of musical artist Prince be used solely for that litigation, and required that no one was permitted to view, audit, or copy the tapes. *Id.* at 349–50. In reaching this decision, the court acknowledged

that the judicial system is for resolution "of what usually are private disputes," even for a public figure, even though "members of the public have an interest in every imaginable detail" of their lives. *Id.* at 349. But, as the court explained, the public also has an interest in ensuring that each person in society—including well-known individuals such as Prince, or Mr. Trump—has access to a fair and impartial judicial system "without having to pay too high a price of admission in the form of surrender of personal privacy" through unnecessary disclosure. *Id.* "Courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role." *Id.*

Dissemination of the deposition videos in this litigation would not only prejudice Defendants' rights, but would undermine the function of discovery by deterring others from appearing for videotaped depositions. *See Apple Ipod Itunes Antitrust Litig.*, 75 F. Supp. 3d 1271, 1276 (N.D. Cal. 2014) (denying media intervenors access to video deposition of Steve Jobs for copying because "if releases of video depositions routinely occurred, witnesses might be reticent to submit voluntarily to video depositions in the future, knowing they might one day be publicly broadcast"); *see also In re Application of Am. Broad. Cos.*, 537 F. Supp. 1168, 1171 n.10 (D.D.C. 1982) (noting that if depositions recorded for use at trial could be copied and broadcast, it is "likely that future witnesses might reasonably resist videotape recordation," and that "[s]uch a result would be counter to the Rule and would impede the utilization at trial of a practical instrument of modern technology").

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the protective order be modified for good cause to (1) prohibit the filing of any videotaped deposition, unless under seal; and (2) to bar the dissemination of any videotaped deposition.

| | | |
|---|---|---|
| 1 | Dated:  June 15, 2016 | Respectfully submitted, |
| 2 | | O'MELVENY & MYERS LLP |
| 3 | | DANIEL M. PETROCELLI |
| 4 | | DAVID L. KIRMAN |
| 5 | | By:   /s/ Daniel M. Petrocelli |
| 6 | | Daniel M. Petrocelli |
| 7 | | Attorneys for Defendants |
|   | | E-mail: dpetrocelli@omm.com |

7

DEFS.' MEMO. ISO MOT. TO AMEND
PROTECTIVE ORDER
10-CV-0940-GPC(WVG)
13-CV-2519-GPC (WVG)