1   DANIEL M. PETROCELLI (S.B. #97802)
    dpetrocelli@omm.com
2   DAVID L. KIRMAN (S.B. #235175)
    dkirman@omm.com
3   O'MELVENY & MYERS LLP
4   1999 Avenue of the Stars
    Los Angeles, California 90067-6035
5   Telephone:  (310) 553-6700
    Facsimile:    (310) 246-6779
6
7   JILL A. MARTIN (S.B. #245626)
    jmartin@trumpmational.com
8   TRUMP NATIONAL GOLF CLUB
    One Trump National Drive
9   Rancho Palos Verdes, CA 90275
    Telephone: (310) 202-3225
10  Facsimile: (310) 265-5522
11
    Attorneys for Defendants
12  DONALD J. TRUMP and TRUMP
    UNIVERSITY, LLC
13

14                **UNITED STATES DISTRICT COURT**

15              **SOUTHERN DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17  SONNY LOW et al., on Behalf of Themselves and All Others Similarly | Case Nos. 10-CV-0940-GPC(WVG) |
| 18  Situated, | 13-CV-2519-GPC(WVG) |
| | **[CLASS ACTION]** |
| 19              Plaintiffs, | **DEFENDANTS' CONSOLIDATED REPLY IN** |
| | **SUPPORT OF MOTION TO** |
| 20      v. | **AMEND PROTECTIVE ORDER** |
| 20  TRUMP UNIVERSITY, LLC et al., | |
| 21              Defendants. | Hearing:  July 13, 2016 |
| 22 | Time:  1:30 p.m. |
| | Courtroom:  2d |
| 23 | Judge:  Hon. Gonzalo P. Curiel |
| 23  ART COHEN, Individually and | |
| 24  on Behalf of All Others Similarly Situated, | |
| 25 | |
| 26              Plaintiffs, | |
| 27      v. | |
| 27  DONALD J. TRUMP, | |
| 28              Defendant. | |

## I.     INTRODUCTION

This Court's paramount duty is to ensure a fair trial and to protect the integrity of these proceedings.  Both of these considerations require that the Court grant defendants' motion to prevent public disclosure of deposition videos. Contrary to Intervenors' and Plaintiffs' (collectively, "Respondents") claims, defendants' request does not limit *any* public right of access to the substance of Donald J. Trump's depositions.  Nor does it render anything "secret."  *Defendants voluntarily made verbatim transcripts of the depositions available.*  Disclosure of the video depositions serves no legitimate purpose in the litigation and will only taint the jury pool to the defendants' extreme prejudice and otherwise imperil defendants' right to a fair trial.  This Court should not let the judicial process be abused in this way.

Respondents cannot identify any case authority supporting their position. For good reason, since whether analyzed under the good cause or compelling interest standard, there is no legitimate reason discovery deposition videos should be made available outside the courtroom, especially before trial.  The potential for harm and prejudice is too great.  Courts regularly protect dissemination of video depositions, including for public figures in cases of public interest.  A district court recently considered a similar issue relating to the video deposition of a Hillary Clinton aide on a politically charged subject and refused to release the video of the deposition because a transcript was available.  There is no reason for a different result in this case.

## II.     UNDER ANY STANDARD, DEFENDANTS' MOTION SHOULD BE GRANTED

### A.     The Court Should Apply the Good Cause Standard

Although the video depositions easily qualify for protection under either standard, a threshold issue raised by Respondents is whether to analyze defendants' motion under a "good cause" or "compelling interest" standard.

DEFS.' REPLY ISO
MOT. AMEND PROTECTIVE ORDER

1    Unfiled discovery is governed by the "good cause" standard and is generally not

2    accessible to the public.  *See Springs v. Ally Fin., Inc.*, 2014 WL 7778947, at *6–7

3    (W.D.N.C. Dec. 2, 2014) (applying good cause standard, rather than compelling

4    interest standard, to restrict plaintiff's use of deposition video never filed, shown

5    at trial, or made public); *Larson v. Am. Family Mut. Ins.*, 2007 WL 622214, at *1

6    (D. Colo. Feb. 23, 2007) (Rule 26's good cause standard prevented video

7    depositions "used for any purpose unrelated to th[e] lawsuit" unless "admitted at

8    trial into evidence and . . . properly a part of the public record").  As such, un-filed

9    videos from a civil deposition are mere discovery material—not a judicial

10   record—and thus not entitled to a presumption of public access.  *See, e.g.*, *Seattle

11   Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).  Indeed, cases universally hold

12   that raw deposition videos not yet admitted into evidence, such as Mr. Trump's

13   here, are *not* judicial records with right of public access.  *See, e.g.*, *Jones v.

14   Clinton*, 12 F. Supp. 2d 931, 938 (E.D. Ark. 1998).[1]

15        The "compelling interest" standard applies to certain evidence filed with the

16   Court.  *See Oregonian Publ'g Co. v. Dist. Court*, 920 F.2d 1462, 1466–67 (9th

17   Cir. 1990).  This heightened standard is justified by the public's presumption of

18   access to material evidence relied upon by the Court in its rulings, which sets this

19   evidence apart from "documents that do not serve as the basis for a substantive

20   determination."  *In re NBC Universal, Inc.*, 426 F. Supp. 2d 49, 52–54 (E.D.N.Y.

21   2006) (citation omitted).  Under the compelling interest standard, the party

---

[1] *See also United States v. McDougal*, 103 F.3d 651, 656 (8th Cir. 1996) ("[W]e hold as a matter of law that the videotape itself is a not a judicial record."); *Apple iPod iTunes Antitrust Litig.*, 75 F. Supp. 3d 1271, 1275 (N.D. Cal. 2014) ("Jobs Deposition is not a judicial record" because "[i]t was not admitted into evidence as an exhibit"); *Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (same); *Condit v. Dunne*, 225 F.R.D. 113, 119 (S.D.N.Y. 2004) (same).

1   opposing disclosure must show that their request is warranted and narrowly

2   tailored.  *See Leigh v. Salazar*, 677 F. 3d 892, 900 (9th Cir. 2012).

3          The good cause standard applies here.  While plaintiffs *attempted to file*

4   certain video exhibits, the Court rejected their improper filing.[2]  Dkt. 228.

5   Defendants have also opposed plaintiffs' most recent attempt to file the videos

6   because (1) they are irrelevant to consideration of defendant's pending summary

7   judgment motion or any other pending motions,[3] (2) the Court has identical

8   information in transcript form, and (3) the purpose of plaintiffs' filing was plainly

9   to inject the videos into the public record to provide access to the media and others

10   and to prejudice Mr. Trump.[4]  And even if filed, their minimal relevance to issues

11   before the Court renders any presumption of access inapplicable unless and until

12   the court reviews and relies on the videos in making a decision in this case.  *See*

13   *NBC Universal*, 426 F. Supp. 2d at 52–54.  Filed or not, the good cause standard

14   should apply here.

15          **B.    Defendants Demonstrated Good Cause**

16          Defendants have demonstrated good cause for the narrow relief requested.

17   The public has access to *all* of the underlying information in the videos because

18   defendants voluntarily withdrew the remaining confidentiality designations of Mr.

19   Trump's testimony.  Dkt. 251 at 1.  Contrary to Respondents' mischaracterization

20   of the content as "secret," Dkt. 253 at 1, the complete content of the requested

21

22   [2] Defendants do not oppose Media Intervenors' motion to intervene, but narrowly
     oppose the public filing and publication of the deposition videos.

23

24   [3] *See Atkinson v. Cnty. of Tulare*, 790 F. Supp. 2d 1188, 1201 (E.D. Cal. 2011)
     ("[A] court does not make credibility determinations" on summary judgment.).

25   [4] *See, e.g.*, *Lopez v. CSX Transp., Inc.*, 2015 WL 3756343, at *6 (W.D. Pa. June
     16, 2015) (granting protective order because "altered images from the video

26   depositions could be used . . . for sensationalism or to taint the jury pool" (internal
     quotation marks omitted); *United States v. Dimora*, 862 F. Supp. 2d 697, 711, 714

27   (N.D. Ohio 2012) (noting publicly disseminated videos will "taint the jury pool.").

28

DEFS.' REPLY ISO
                                       MOT. AMEND PROTECTIVE ORDER

1    video files is fully available to the public.  That "substantial access . . . has been

2    accorded the press and the public" weighs strongly toward granting defendants'

3    motion.  *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 432 n.21 (5th Cir. 1981);

4    *accord Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 907–

5    08 (E.D. Pa. 1981) (denying public access to raw data attached to public filing

6    because public's interest was "essentially satisfied" by other records and "interests

7    favoring nondisclosure [we]re strong").

8         Recently, a district court in Washington, D.C. protected video depositions

9    from disclosure under similar circumstances in a case involving Hillary Clinton.

10    *See Judicial Watch, Inc. v. U.S. Dep't of State*, No. 1:13-cv-01363-EGS, (D.D.C.

11    May 26, 2016 Minute Order).  In that case, as here, the deponent feared release of

12    her deposition video would allow others to "manipulate [her] testimony, and

13    invade her personal privacy, to advance a partisan agenda that should have

14    nothing to do with this litigation."  *Id.* Dkt. 79 at 3.  As here, the deponent did not

15    oppose release of her transcript, but only the video.  That court granted the motion

16    to seal the video of her deposition.  Since the transcripts were available, it was

17    "unnecessary to also make the audiovisual recording of [the] deposition public."

18    *Id.* (May 26, 2016 Minute Order).  The same reasoning and result apply here.

19         Mr. Trump has adequately demonstrated that disclosure of the videos will

20    cause him serious injury.  Contrary to Respondents' argument, there is no burden

21    in requiring to prove that a fair trial would be impossible.[5]  Rather, the good cause

22    determination of whether fair trial rights will be harmed by disclosure rests on the

23

---

24    [5] *See Belo*, 654 F.2d at 431 (trial court need not have "positive proof of the
impossibility of assuring defendant a fair trial before access may be denied"

25    because "[a] forecast of future difficulty is by definition uncertain"); *United States*
*v. Ahmed Abdellatif Sherif Mohamed Youssef Samir Megahed*, 2008 U.S. Dist.

26    LEXIS 31162, at *6–8 (M.D. Fla. Mar. 31, 2008) (finding "real and substantial
risk" that video's release would adversely impact defendant's fair trial rights

27    despite absence of "empirical data or studies" demanded by media company).

28

DEFS.' REPLY ISO
MOT. AMEND PROTECTIVE ORDER

1  informed and considered judgment of the trial judge.  *See Hagestad v. Tragesser*,

2  49 F.3d 1430, 1434 (9th Cir. 1995) (decision to seal records is "one best left to the

3  sound discretion of the trial court, a discretion to be exercised in light of the

4  relevant facts and *circumstances of the particular case*" (emphasis added)).

5       Avoiding unnecessary pretrial publicity to ensure a defendant's right to a

6  fair trial is a quintessential reason to preclude public access.  *See, e.g.*, *United*

7  *States v. Poindexter*, 732 F. Supp. 170, 173 (D.D.C. 1990) ("[T]he need to avoid

8  maximizing pretrial publicity on a vast scale to the detriment of the defendant's

9  right to a fair trial clearly outweighs any right the news organizations might have

10  to physical possession of copies of the videotape.").[6]  The trial judge has "primary

11  responsibility to provide the fair trial that the Constitution guarantees," and release

12  of these deposition videos "presents an unacceptable risk to the court's ability to

13  impanel an impartial jury and to ensure that the ultimate verdict is based solely on

14  the evidence presented in court." *United States v. Mitchell*, 2010 U.S. Dist.

15  LEXIS 21004, at *20–21 (D. Utah Mar. 8, 2010) (denying the media access to

16  video clips played during a competency hearing).  Intervenors' collaboration to

17  seek these videos is itself evidence of that.

18       The release of Mr. Trump's video deposition would be unprecedented.

19  Respondents concede as much by failing to identify a single comparable case and

20  instead focus their analysis on *Condit v. Dunne*, 225 F.R.D. 113 (S.D.N.Y. 2004).

21  In *Condit*, a former Congressman brought a defamation suit against a television

22

---

23  [6] *See also Ahmed*, 2008 U.S. Dist. LEXIS 31162, at *4–5 (in a case with a "great
24  deal of attention from the media and the public," releasing video of defendant's
     statements "would only increase pre-trial publicity" and would be inappropriate at
25  "a particularly sensitive time in the proceedings, just before jury selection");
     *Burgess v. Wallingford*, 2012 WL 4344194, at *13–14 (D. Conn. Sept. 21, 2012)
26  (given potential misuse, good cause exists to prevent publishing or dissemination
     of deposition recordings, which should be used solely by parties to prepare for
27  trial).

28

DEFS.' REPLY ISO
                              MOT. AMEND PROTECTIVE ORDER

1   commentator.  The defendant moved to seal his deposition video based on

2   potential jury taint, an argument the court rejected as speculative: even "assuming

3   part or all of the video is disseminated to the public, memories fade," and there

4   was no evidence the video would stay relevant given, among other things, "the

5   notoriously short attention span of journalists with regard to the sometimes glacial

6   speed of civil litigation."  *Id.* at 117–18.  Thus, the Court concluded that any

7   impact from the video could be "remedied through voir dire."  *Id.* at 118.

8         The circumstances here could not be more different than *Condit*.  The

9   videos here are virtually certain to be extensively disseminated by the media and

10  used by others in connection with the current presidential campaign.  Nor can it be

11  fairly disputed that this exploitation will persist through the eve of trial.  The

12  concerns at issue here are more akin to those expressed in *Stern v. Cosby*:

13        I am concerned that release of the video and transcript would create
          additional impediments to the fair and efficient administration of
14        justice, without serving any legitimate purpose.  Videotaped
          depositions are permitted to facilitate the presentation of evidence to
15        juries; they are not intended to provide "a vehicle for generating
          content for broadcast and other media."
16

17  529 F. Supp. 2d 417, 422–23 (S.D.N.Y. 2007).

18        **C.    If the Videos Are Filed, the Court Must Seal Them Because
                  Defendant Has Demonstrated a Compelling Interest**
19

20        Access to judicial records is not absolute.  This Court "has supervisory

21  power over its own records and files," which includes the right to seal the videos.

22  *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978); *San Jose Mercury*

23  *News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999) (same); *Foltz v.*

24  *State Farm Mut. Auto. Ins., Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (same).

25  Contrary to Respondents' arguments, public access must be subordinated to other

26  considerations when, as here, such access will "interfere with the administration of

27  justice and hence may have to be curtailed."  *Newman v. Graddick*, 696 F.2d 796,

28  803 (11th Cir. 1983); *Belo*, 654 F.2d at 434 (affirming denial of access to

DEFS.' REPLY ISO
                                      MOT. AMEND PROTECTIVE ORDER

1    audiotapes admitted into evidence out of concern with defendant's right to a fair

2    trial).  Therefore, in deciding whether to grant defendants' narrow request to

3    amend the protective order, this Court must balance the public's right of access

4    against competing interests such as "the salutary interests served by maintaining

5    confidentiality of the information sought to be sealed."  *IDT Corp. v. eBay*, 709

6    F.3d 1220, 1223 (8th Cir. 2013).  Relevant factors include whether the records are

7    sought for illegitimate purposes such as scandal, whether access is likely to

8    promote public understanding, and, notably, whether the press has *already been*

9    *permitted substantial access* to the content of the records.  *See Nixon*, 435 U.S. at

10    598–603; *Apple*, 75 F. Supp. 3d at 1273–74.  Also at issue is whether the request

11    is narrowly tailored.  *See Leigh*, 677 F.3d at 900.

12         All factors favor sealing the videos.  First, contrary to their claim, plaintiffs

13    filed the videos in order to make them public—there is no need to view the videos

14    in addressing the motion for summary judgment given that the Court has the full

15    transcripts.  Even if the Court wanted to see the videos, they can be viewed *in*

16    *camera*.  Second, Respondents have no meaningful response to the fact that the

17    public already has access to the transcripts and that disclosure would not further

18    promote public understanding of this case.  Prior disclosure of the transcripts also

19    demonstrates defendants' request is narrowly tailored.  Third, once released, the

20    videos can and will be broadcast by "less reputable outlets" and for less reputable

21    reasons.  *See Mitchell*, 2010 U.S. Dist. LEXIS 21004, at *19–21.  There would be

22    no limit to "the manner in which the contents could be manipulated, or the

23    purposes for which the recordings could be used" including for harassment or

24    political gain.  *Id.* at *22–23.

25         **D.**      **Mr. Trump's Status as a Public Figure and His Defensive Public**
             **Statements Do Not Impact the Analysis**

26

27         Plaintiffs' opposition is dedicated to highlighting Mr. Trump's public

28    statements as justification for releasing the videos.  As explained in defendants'

DEFS.' REPLY ISO
MOT. AMEND PROTECTIVE ORDER

1 Motion, however, Mr. Trump's status as a public figure—a status shared by many

2 who face litigation—does not strip him of his right to privacy. Mot. at 4–6. In

3 contrast to cases Respondents cite, this action is *not* related to the legality of Mr.

4 Trump's behavior in office. *See, e.g.*, *Flaherty v. Seroussi*, 209 F.R.D. 295, 299

5 (N.D.N.Y. 2001).[7] Mr. Trump's privacy—and the privacy of other videotaped

6 deponents—and the need to preserve the integrity of these proceedings far

7 outweigh the public's right to view superfluous video clips not admitted to

8 evidence or played at trial. *See Stern*, 529 F. Supp. 2d at 422 (countervailing

9 interests such as "strong privacy interest in resisting disclosure" and "danger that

10 judicial efficiency would be impaired by the premature release of the videotape"

11 outweigh public's right to access).

12     Respondents' attempts to distinguish cases recognizing the important

13 privacy rights of public figures are unpersuasive. For example, Respondents'

14 attempt to limit the holding of *Paisley Park Enterprises, Inc. v. Uptown Products*,

15 54 F. Supp. 2d 347, 348–50 (S.D.N.Y. 1999), to a concern about "commercial

16 interests," Dkt. 253 at 17 & n.10; Dkt. 492 at 12, ignores the core principle

17 underlying the court's holding in *Paisley Park*, 54 F. Supp. 2d at 349:

18     While many members of the public have an interest in every
imaginable detail about the life of a rock star, virtually all have an

19 interest in ensuring that everyone in our society have access to a fair
and impartial judicial system without having to pay too high a price

20 of admission in the form of the surrender of personal privacy.
[C]ourts must be vigilant to ensure that their processes are not used

21 improperly for purposes unrelated to their role.

22

23 This is precisely the situation here. This Court must be vigilant in protecting

24

25 [7] Respondents' reliance on *Flaherty* is also unfounded. *Flaherty* involved a pre-
deposition motion to prevent disclosure of the movant's entire deposition. 209

26 F.R.D. at 296. Defendants have already released Mr. Trump's deposition
transcripts, and this motion, unlike *Flaherty*, seeks to protect disclosure of only

27 the superfluous video files.

28

    DEFS.' REPLY ISO
MOT. AMEND PROTECTIVE ORDER

1  defendants' rights to a fair process and to prevent plaintiffs from exploiting the

2  judicial process to defendants' prejudice.[8]

3  ### III.   POLICY CONSIDERATIONS AND COMMON SENSE REQUIRE THAT THE COURT GRANT DEFENDANTS' MOTION

4

5  Contrary to Respondents' accusations that Mr. Trump "made the decision to

make the litigation an issue in his presidential campaign," Dkt. 253 at 3, 19; Dkt.

6  492 at 4–6, this litigation was raised initially and repeatedly by Mr. Trump's

7  political opponents.[9]  The near certainty that the video depositions would be used

8  for political purposes—having nothing to do with the merits of this litigation—

9  only underscores the Court's duty to prevent misuse of these judicial proceedings

10  by prohibiting public release of the videos.  Therefore, the Court should amend the

11  protective order to preclude their release.  *See Burgess*, 2012 WL 4344194, at *8

12  ("In affording parties additional means to record deposition testimony, Congress

13  chose to assist parties in preparing their cases," not provide a "litigant . . . an

14  unrestrained right to disseminate information that has been obtained through

15  pretrial discovery"); *Paisley Park*, 54 F. Supp. 2d at 349 ("Rule 30(b)(2) . . . was

16  not intended to be a vehicle for generating content for broadcast."); *see also Joy v.*

17  *North*, 692 F.2d 880, 893 (2d Cir. 1982) ("Discovery involves the use of

18

19

20  ---

[8] These concerns are underscored by the "strong judicial tradition of proscribing
21  public access to recordings of testimony given by a sitting President." *McDougal*,
103 F.3d at 659; *accord Jones v. Clinton*, 12 F. Supp. 2d at 934–35, 938;
22  *Poindexter*, 732 F. Supp. at 172.  Respondents' attempts to distinguish these cases
on the basis that Mr. Trump is running for President ignore that Mr. Trump may
23  be elected President of the United States by the time the *Low* trial takes place.

24  [9] In contrast, in *Condit*, Dunne had "publicly accused" Condit's attorney of
25  "bullying him during his deposition."  225 F.R.D. at 119.  The court allowed
access to the video because it disapproved of Dunne's use of the deposition as
26  both a sword and a shield.  There is no such issue here.  Despite Respondents'
accusations, Dkt. 492 at 13; Dkt. 253 at 3, 14–20, defendants have not placed the
27  depositions, or the videos, at issue in any way that invites public scrutiny.

28

DEFS.' REPLY ISO
MOT. AMEND PROTECTIVE ORDER

1  compulsory process to facilitate orderly preparation for trial, not to educate or

2  titillate the public.").

3          The Ninth Circuit has cautioned strongly about "[i]nterference with

4  impending elections" because rulings that impact elections implicate

5  "extraordinary" relief and consequences not just to the parties, but to every citizen.

6  *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir.

7  2003); *see McComish v. Brewer*, 2008 WL 4629337, at *12 (D. Ariz. Oct. 17,

8  2008) ("This Court will not interfere with the fortuitous currents and eddies of this

9  vital democratic process."). Video depositions were not intended for broadcast

10  media or to be used to further a political agenda. This Court cannot allow judicial

11  tools to be hijacked for these purposes.[10]

12          The impact of not granting defendants' motion will extend far beyond this

13  case. To illustrate, Intervenors' argument that litigants must sit for a video

14  deposition is simply wrong. While a party may seek a video deposition under

15  Rule 30(b)(2), committee notes make clear that the deponent may object and seek

16  a protective order. *See also Saunders v. Knight*, 2007 WL 38000, at *4 (E.D. Cal.

17  Jan. 4, 2007) (allowing a video deposition when deponent "demonstrates no

18  grounds" to prevent it). Such objections will create additional litigation and

19  ultimately harm the adversarial process by curtailing video depositions, which will

20  deprive juries and trial judges of their benefits at trial.

21  **IV.    CONCLUSION**

22          Defendant's motion to amend the protective order should be granted.

23  —————————————————

24  [10] The oppositions do not credibly counter these grave concerns. Plaintiffs refer to
the relief defendants request as "special treatment" that should have been pursued
25  earlier in these proceedings. Dkt. 492 at 9. The disclosure of the video deposition
files under the circumstances here would be unprecedented, not "special
26  treatment." Defendants' motion is also timely; the parties have been litigating the
*Low* case for over six years, and neither party before plaintiffs' recent filing had
27  sought to gratuitously file duplicative deposition videos with the Court—not *once*.

28

1

2
      Dated:  June 27, 2016          Respectfully submitted,

3
O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI

4
DAVID L. KIRMAN

5
By:   /s/ Daniel M. Petrocelli

6
       Daniel M. Petrocelli

7
Attorneys for Defendants

8
DONALD J. TRUMP and
TRUMP UNIVERSITY, LLC

9
E-mail: dpetrocelli@omm.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11