UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, a New York Limited Liability Company, and DONALD J. TRUMP,<br><br>Defendants. | Case No.: 3:10-cv-0940-GPC-WVG<br><br>**ORDER:**<br><br>**DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE RENEWED MOTION FOR DECERTIFICATION**<br><br>**DENYING PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER TO FILE A MOTION TO CLARIFY OR AMEND THE COURT'S CLASS CERTIFICATION ORDERS**<br><br>**[ECF Nos. 482, 489]** |

Before the Court is Defendants Trump University LLC and Donald J. Trump's ("Defendants") June 3, 2016 Motion for Leave to File Renewed Motion for Decertification ("Def. Mot."), ECF No. 482, as well as Plaintiffs Sonny Low, J.R. Everett, and John Brown's ("Plaintiffs") June 17, 2016 Motion to Modify Scheduling Order to File a Motion to Clarify or Amend the Court's Class Certification Orders ("Pl. Mot."), ECF No. 489. The motions have been fully briefed. *See* Plaintiffs' Opposition to Defendants' Motion for Leave to File Renewed Motion for Decertification ("Pl. Resp."),

ECF No. 488; Defendants' Reply in Support of Motion for Leave to File Renewed Motion for Decertification ("Def. Reply"), ECF No. 493; Defendants' Opposition to Plaintiffs' Motion to Amend the Court's Class Certification Order ("Def. Resp."), ECF No. 495; Plaintiffs' Reply in Support of Motion to Modify Scheduling Order to File a Motion to Clarify or Amend the Court's Class Certification Orders ("Pl. Reply"), ECF No. 496. A hearing was conducted on July 22, 2016. ECF No. 499.

Upon consideration of the moving papers, parties' oral arguments, and the applicable law, and for the following reasons, the Court **DENIES** both motions.

## BACKGROUND

On February 21, 2014, the Court granted in part and denied in part Plaintiffs' motion for class certification ("Initial Cert. Order"). ECF No. 298. The Court noted that Plaintiffs alleged that Defendants made the following "core" misrepresentations: "(1) Trump University was an accredited university; (2) students would be taught by real estate experts, professors and mentors hand-selected by Mr. Trump; and (3) students would receive one year of expert support and mentoring." *Id.* at 4.

On September 18, 2015, the Court granted in part and denied in part Defendants' motion for decertification of the class action ("Decert. Order"). ECF No. 418. The Court denied the motion to decertify on liability issues as to all causes of action, but granted the motion on damages issues as to all causes of action, and bifurcated the damages issues to follow trial on the liability phase. *Id.* at 21. The Court also granted Plaintiffs' motion to clarify the Court's class certification order, and clarified that the class definition going forward would be:

> All persons who purchased a Trump University three-day live "Fulfillment" workshop and/or a "Elite" program ("Live Events") in California, New York and Florida, and have not received a full refund, divided into the following five subclasses:
> (1) a California UCL/CLRA/Misleading Advertisement subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in California within the applicable statute of limitations;

(2) a California Financial Elder Abuse subclass of purchasers of the Trump University Fulfillment and Elite Seminars who were over the age of 65 years of age when they purchased the program in California within the applicable statute of limitations;
(3) a New York General Business Law § 349 subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in New York within the applicable statute of limitations;
(4) a Florida Deceptive and Unfair Trade Practices Act (FDUTPA)/Misleading Advertising Law subclass of purchasers of the Trump University Fulfillment and Elite Seminars who purchased the program in Florida within the applicable statute of limitations; and
(5) a Florida Financial Elder Abuse subclass of purchasers of the Trump University Fulfillment and Elite Seminars who were over the age of 60 years of age when they purchased the program in Florida within the applicable statute of limitations.[1]

*Id.* at 22.

On September 21, 2015, the Court granted in part and denied in part Plaintiffs' motion for approval of class notice and directing class notice procedures. ECF No. 419. On November 15, 2015, the opt-out period expired. *See id.* at 11.

On November 18, 2015, the Court granted in part and denied in part Defendants' motion for summary judgment. ECF No. 423. The Court granted Defendants' motion for summary judgment with respect to Plaintiffs' claims for injunctive relief under California law, and denied summary judgment as to all other claims. *Id.* at 44.

On April 20, 2016, the Court granted in part and denied in part Plaintiff Tarla Makaeff's motion to withdraw. ECF No. 475. The Court permitted Plaintiff Makaeff to withdraw, but on the condition that Defendants were entitled to depose Plaintiff Low, the other California class representative, again. *Id.* at 2.[2]

A pretrial conference was held on May 6, 2016. ECF No. 478. A trial is set for

---

[1] Excluded from the class are Defendants, their officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which Defendants have a controlling interest, any Judge assigned to this case and their immediate families. Decert. Order 22.

[2] On April 15, 2026, the parties notified the Court telephonically that the deposition of Low was completed pursuant to the Court's order. ECF No. 475 at 2.

November 28, 2016. *Id.*

## LEGAL STANDARD

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time"). In deciding whether to decertify a class, a court may consider "subsequent developments in the litigation." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

## DISCUSSION

### I. Defendants' Motion for Leave to File Renewed Motion for Decertification

Defendants make several arguments as to why the Court should consider a renewed decertification motion following the pretrial conference. Namely, Defendants argue that: (1) class members were not uniformly exposed to the alleged "core" misrepresentations; (2) individual issues of reliance, causation, and materiality predominate; (3) Low's recent testimony establishes that he lacks standing; and (4) the Court's reliance on FTC cases "violates binding Ninth Circuit law." *See* Def. Mot. 13–25. However, none of Defendants' arguments are persuasive.

First, as to Defendants' first two arguments, both arguments were extensively considered by the Court in its previous certification orders. *See* Initial Cert. Order 14–26. Almost all of the evidence proffered by Defendants here was available to Defendants at the time of the earlier certification orders, *see* Pl. Resp., Ex. A, which is unsurprising considering that discovery closed more than a year and a half ago on December 19, 2014, *see* ECF No. 349. The Court "declines to revisit these previously resolved issues . . . especially where no intervening events have led to changed circumstances." *See In re Apple iPod iTunes Antitrust Litig.*, 2014 U.S. Dist. LEXIS 165254 (N.D. Cal. Nov. 25, 2014) (rejecting motion for decertification where "Apple presented many of these arguments while opposing earlier certification motions").

Second, the Court finds Defendants' third argument that Plaintiff Low's new

testimony establishes that he lacks standing unpersuasive. Defendants argues that Low's new testimony demonstrates that he did not actually rely on Defendants' representations in purchasing TU programs. Def. Mot. 21. However, Defendants' arguments rely on a selective interpretation of Low's new testimony.

First, Defendants argue that Low was not concerned with whether TU was an accredited university. *Id.* Defendants point to deposition testimony where Low stated that he did not recall ever seeing the word "accredited" used in TU materials, Low Dep. 109:19–21, Def. Mot., Ex. 11, and where Low stated that whether TU was an accredited university "was not even a consideration for me. I went there because it was Trump University, that he created." *Id.* at 116:11–15.

However, Low also testified:

> Donald J. Trump, besides being a multi-billionaire in real estate, he set up Trump University, which I would presume that he took all the steps necessary to set up a proper institution that he could call a university, with his name next to it. And when he sent out the special invitation, signed by Donald J. Trump himself, "Come to one of my free seminars and learn through my handpicked instructors and mentors the secrets to become rich, be a success in real estate,["] that was very important to me.

Low Dep. 32:7–17, Pl. Resp., Ex. F. Similarly, when Low was asked,

> Q. [For your declaration in support of class certification,] where did you get the words "legitimate academic institution"?
> A. I got that - - Donald J. Trump created this institution. He went through the process, just like any university would go through, that - - that's why he called it a university. And it has certain, you know, standards and qualifications, which I don't know about, which I - - he knows.
> . . .
> Q. . . . What do you mean by the word "legitimate"?
> A. Donald J. Trump went to the Wharton School of the University of Pennsylvania. I went to University of California. These are legitimate institutions. Trump University was created by Donald J. Trump, and, therefore, presumably, he went through all of the same process as those schools did, to be called a legitimate university.
> Q. Sir, is it your testimony that you believed that Trump University

5

was like the University of California at Berkley and the University of Washington?

. . .

[A.] It better be, because Donald J. Trump is a multi-millionaire, a major success in real estate, and he created this institution, and that which costs all of us a lot of money to attend. So it better be.

Low Dep. 101:5–12; 101:19–102:10. Low's testimony demonstrates that, even if Low was unfamiliar with the technical term "accredited," Low understood TU to have undergone the same "processes . . . to be called a legitimate university" involving "standards and qualifications" as other accredited universities, such as the University of Pennsylvania and the University of California. Moreover, Low's testimony demonstrates that this understanding was an important factor to Low in purchasing in TU programs.

Second, Defendants argue that Low's definition of handpicked to mean "whatever Donald J. Trump used with his determination, that he would pick the people," Low Dep. 157:7–9, is imprecise, and that Low's testimony that he believed his TU instructors "had not spoken with Mr. Trump," *id.* at 129:20–23, demonstrates that he did not rely on Defendants' representation that TU instructors would be "handpicked" by Defendant Trump. Def. Mot. 21.

However, whether Low believed that his TU instructors had "spoken" with Defendant Trump is quite obviously a separate matter from whether Low believed that Defendant Trump had "handpicked" his TU instructors. Moreover, Low also testified,

Q. At that time, as you walk out of that seminar and you purchased the three-day seminar, did you believe that Donald J. Trump had personally handpicked James Harris?
A. Yes.
Q. And then you went to the three-day seminar and then you heard Steven Goff, correct?
A. Yes.
Q. And you heard him for three days?
A. Yes.
Q. And after hearing him for three days, did you believe that he had been personally selected by Donald J. Trump?

> . . .
> [A.] At that time, I was thinking not just the final day, all three days, that he was handpicked by Donald J. Trump.

Low. Dep. 144:14–145:7. In this testimony, Low demonstrates that he understood his TU instructors to have been "handpicked" by Defendant Trump, and implicitly equates the term "handpicked" with "personally selected." Moreover, as pointed out earlier, Low also testified that "when he sent out the special invitation, signed by Donald J. Trump himself, 'Come to one of my free seminars and learn through my handpicked instructors and mentors the secrets to become rich, be a success in real estate,['] that was very important to me." Low Dep. 32:12–17. Thus, Low both seems to have a commonsense understanding of what the term "handpicked" means, and to have relied upon Defendants' representation that Defendant Trump "handpicked" TU instructors in deciding to purchase TU programs.

Finally, the Court finds unpersuasive Defendants' fourth argument that "[t]he Court's reliance on FTC cases violates binding Ninth Circuit law." Def. Mot. 22. Defendant argues that under *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007), the Court erred in analogizing to Federal Trade Commission (FTC) Act cases where a full-refund damages theory was found appropriate, such as *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993), in order to conclude that Plaintiffs' full-refund damages theory was consistent with their theory of liability in the instant case.

*Lozano*, however, found that, in a situation where the California courts had not yet determined how to define the "unfair" prong of California's Unfair Competition Law ("UCL"), the Ninth Circuit would decline to apply the three-pronged FTC Act test "in the absence of a clear holding from the California Supreme Court." 504 F.3d at 736. It is unclear how this 2007 case "bind[s]" the Court from analogizing to FTC Act cases in

order to uphold the viability of a damages theory under *Comcast*.[3]

Accordingly, the Court **DENIES** Defendants' motion for leave to file a renewed motion for decertification.

## II. Plaintiffs' Motion to Modify Scheduling Order to File a Motion to Clarify or Amend the Court's Class Certification Orders

The Court addressed the first component of Plaintiffs' motion at the July 22, 2016 hearing, where the Court set forth a possible procedure by which Plaintiffs' counsel could retain their involvement in the case following the conclusion of the liability stage. *See* Hr'g Tr. 4–5, ECF No. 500.[4] In the second component, Plaintiffs argue that the core misrepresentation certified by the Court that "Trump University was an accredited university," Decert. Order 2, should be "clarified" because "Defendants purport beguilement over the variety of adjectives that [P]laintiffs have used over the years to modify university . . . [including] 'legitimate,' 'accredited,' 'elite,' 'actual,' and 'real,'" Pl. Mot. 5. Plaintiffs are not explicit on how exactly they wish the class certification Order to be "clarified," except insofar as they suggest that "the class notice in this case

---

[3] Similarly, in *Jones v. ConAgra Foods, Inc.*, a district court simply stated that there was "no reason" to import remedies from the FTC Act into a UCL or False Advertising Law ("FAL") case concerning natural foods, and that the Plaintiffs had pointed to "no authority that does so," not that doing so would be impermissible. 2014 WL 2702726, at *19 n.37 (N.D. Cal. June 13, 2014).

[4] "[The Court:] . . . In addition, within the motion, there is an issue raised which the Court believes is a legitimate issue that has to be addressed and that relates to what will happen in the event that the plaintiffs prevail at trial on the issue of liability to the extent that the Court has decertified the damages class or the class as it relates to damages.

This is how I see it, and to the extent that the parties have any additional views, I am happy to entertain them. In the event that the defendants prevail, then obviously it is a moot point. To the extent that the plaintiffs prevail, then what I would anticipate is that we would issue, provide notices to the class members advising them of the fact that liability has been determined in this case against the defendants and that they will be given a certain period of time to provide a notice to the Court of their intention to pursue damages in the case. And then it would be my expectation, to the extent that there's someone who seeks to recover damages, that they will retain counsel.

One of them could retain Robbins Geller or one of the other firms representing the plaintiffs, and at that point, then, Robbins Geller can return into the case. Theoretically, it's possible that none of the class members would, but I can't believe that that would happen given the plaintiffs' counsel's involvement in the case. So at that point, we won't have this question about who is going to proceed representing the interests of the now-successful class members." Hr'g Tr. 4–5.

accurately conveys the 'university' aspect of [P]laintiffs' class claims." *Id.* at 6.

The Court rejects Plaintiffs' effort as untimely. This Court first certified the core misrepresentations (that "(1) Trump University was an accredited university; (2) students would be taught by real estate experts, professors and mentors hand-selected by Mr. Trump; and (3) students would receive one year of expert support and mentoring") over two and a half years ago, and neither party challenged those core misrepresentations in the ensuing period of time. *See* Initial Cert. Order 4; Decert. Order 2. Moreover, Plaintiffs offer no authority for the proposition that the scope of the certified claims in a class action should be determined in accordance with the class notice, rather than the Court's class certification order.

Accordingly, Plaintiffs' motion to modify scheduling order to file a motion to clarify or amend the Court's class certification orders is **DENIED**.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Leave to File Renewed Motion for Decertification, ECF No. 482, is **DENIED**.
2. Plaintiffs' Motion to Modify Scheduling Order to File a Motion to Clarify or Amend the Court's Class Certification Orders, ECF No. 489, is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 29, 2016

Hon. Gonzalo P. Curiel
United States District Judge