# EXHIBIT

# A

GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN (89747)
hgradstein@gradstein.com
MARYANN R. MARZANO (96867)
mmarzano@gradstein.com
DANIEL B. LIFSCHITZ (285068)
dlifschitz@gradstein.com
6310 San Vicente Blvd., Suite 510
Los Angeles, California 90048
Tel: 323-776-3100

SUSMAN GODFREY L.L.P.
STEPHEN E. MORRISSEY (187865)
smorrissey@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KALPANA SRINIVASAN (237460)
ksrinivasan@susmangodfrey.com
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO INC., a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | Case No. CV13-05693 PSG (GJSx)<br><br>**PLAINTIFF FLO & EDDIE, INC'S MEMORANDUM IN OPPOSITION TO SIRIUS XM RADIO INC.'S *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE**<br><br>**DECLARATION OF STEPHEN E. MORRISSEY FILED HEREWITH** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page

**I.**     **INTRODUCTION** ....................................................................1

**II.**    **BACKGROUND** .................................................................2

     A.    The November 15, 2016 Trial Date In this Case was set on January 25, 2016 After Consideration of the Parties' Scheduling Proposals. ..................................................................2

     B.    Sirius XM's Counsel Continues to Fail to Inform the Courts and Parties in Either Action of Any Potential Conflict. ...................3

     C.    Sirius XM Finally Claims a Scheduling Conflict After the Passage of More than Three Additional Months ...................4

**III.**   **ARGUMENT** ...................................................................6

     A.    Sirius XM Has Not Shown Any Basis for Granting Relief on an *Ex Parte* Basis. ..................................................................6

     B.    Sirius XM Has Not Shown Good Cause to Vacate the Trial Date. ........8

**IV.**   **CONCLUSION** ...............................................................11

# TABLE OF AUTHORITIES

**Cases**

*Agile Sky Alliance Fund LP v. RBS Citizens, N.A.,*
    2011 WL 378842 (D.Colo. 2011) .................................................................. 10

*Arnold v. Krause, Inc.,*
    232 F.R.D. 58 (W.D.N.Y. 2004) ................................................................. 10

*Burden v. Bar Louie Anaheim, Inc.,*
    No. SACV 15-0638 AG (E), 2016 WL 551993 (C.D. Cal. Feb. 10, 2016)...... 9

*F.D.I.C. v. Cleveland,*
    No. CIV. A. 91-3142, 1992 WL 193506 (E.D. La. Aug. 3, 1992) ................ 10

*Gestetner Corp. v. Case Equip. Co.,*
    108 F.R.D. 138 (D. Me. 1985) .................................................................. 5, 9

*In re Intermagnetics America, Inc.,*
    101 B.R. 191 (C.D. Cal. 1989) ..................................................................... 6

*Jackson v. Laureate, Inc.,*
    186 F.R.D. 605 (E.D. Cal. 1999) ................................................................ 10

*Johnson v. Mammouth Recreations, Inc.,*
    975 F.2d 604 (9th Cir. 1992) ............................................................... 5, 8, 9

*Knopick v. Downey,*
    No. 1:09-CV-1287, 2014 WL 257315 (M.D. Pa. Jan. 23, 2014).................... 9

*Low, et al. v. Trump University, LLC and Donald Trump,*
    S.D. Cal. No. 10-cv-940 ......................................................................... 1, 3

*Lynch v. Waitman,*
    1995 WL 7991 (S.D.N.Y. 1995) ................................................................ 10

*Mission Power Eng'g v. Cont'l Cas. Co.,*
    883 F. Supp. 488 (C.D. Cal. 1995)........................................................... 6, 7

*Villasenor v. Sears, Roebuck & Co.,*
    2010 WL 4679957 (C.D. Cal. Nov. 9, 2010) ........................................... 6, 7

*United States v. Approximately $156,000 in United States Currency,*
    2012 U.S. Dist. LEXIS 37782 *3 (E.D. Cal. Mar. 20, 2012) ......................... 9

**Rules**

C.D. Cal. L.R. 7-17 ........................................................................................ 6

EXHIBIT A
ii
4

C.D. Cal. L.R. 7-19 ......................................................................................................... 2

C.D. Cal. L.R. 7-3 .......................................................................................................... 2, 5

Fed. R. Civ. P. 16 ............................................................................................................. 8

Fed. R. Civ. Pro. 16(b)(1), 16(b)(4) ............................................................................... 8

Federal Rule of Civil Procedure 16(b)(3)(vi) .................................................................. 7

Plaintiff Flo & Eddie, Inc. ("Flo & Eddie"), on behalf of the certified Class and through undersigned counsel, respectfully submits this memorandum in opposition to Sirius XM's *ex parte* application for a continuance of the scheduled trial date in this action.

## I. <u>INTRODUCTION</u>

By its *ex parte* application, Sirius XM seeks an emergency continuance of the November 15, 2015 trial date in this case based on a purported conflict with the November 28, 2016 trial date in *Low, et al. v. Trump University, LLC and Donald Trump*, No. 10-cv-940, pending before the Hon. Gonzalo P. Curiel in the Southern District of California. The application should be denied for the following reasons:

(1) **There is no conflict**. This case is set for a seven-day trial, and thus will be completed by November 25, 2016, in advance of the trial setting in the *Trump* case. Plaintiff is prepared to allocate the trial time on a 50/50 basis with Sirius XM and complete the trial—which, in light of the Court's prior summary judgment ruling on liability involves primarily the limited issues of the amount of class-wide damages and punitive damages—well within the allowed time period.

(2) **There is no emergency warranting *ex parte* relief**. Sirius XM's application is based on a purported "emergency" that was entirely of its own making. Sirius XM has known about the alleged conflict between the two trial dates for *four months*, and it could have raised the purported conflict with its lead trial counsel's schedule at any time. It did not. To the contrary, the Reporter's Transcript of the May 6, 2016 proceedings in the *Trump* case show the trial date in that case was set in consultation with the parties *more than four months after the trial date in this case had been set*, and that counsel for Sirius XM had no objection to the November 28, 2016 trial date in the *Trump* case based on the previously scheduled trial date in this action. By its own

admission, Sirius XM did not inform Plaintiff's counsel of its desire to request a continuance until August 22, 2016, and it did not alert the Court to the issue until a few minutes before midnight on the evening of August 31, 2016.[1]

(3)     **Plaintiff would be prejudiced by the requested continuance, and Sirius XM would not be prejudiced by proceeding as scheduled.**  Plaintiff would be prejudiced by the requested relief which would come after a lengthy stay previously requested by Sirius in this case.  Fact and expert witnesses along with counsel have planned their schedules and those of fact and expert witnesses based on the trial date. Additionally, class notice has been issued informing the Class of the scheduled trial date. By contrast, apart from the inconvenience to its lead trial counsel that is just part of life for any busy trial lawyer (particularly one who fails to address potential conflicts well in advance), Sirius XM has not shown that any prejudice would occur if the trial proceeded as scheduled or would be avoided if the continuance were granted.

For each of those reasons, Sirius XM's *ex parte* application for a continuance should be denied.

## II.     BACKGROUND

A.     **The November 15, 2016 Trial Date In this Case was set on January 25, 2016 After Consideration of the Parties' Scheduling Proposals.**

The November 15, 2016 trial date in this action was set more than seven months ago, on January 25, 2016. Dkt. 272. Previously, in the parties' December 14,

---

[1] Although C.D. Cal. L.R. 7-19 requires any party making an *ex parte* application to notify opposing counsel of "the date" of the application, counsel for Sirius XM did not do so. Sirius XM also claimed that the meet and confer requirement of C.D. Cal. L.R. 7-3 is inapplicable to *ex parte* applications, and then proceeded to file its application at 11:57 p.m. on August 31, 2016, thereby requiring Plaintiff to file a response by 3:00 p.m. on the Friday of Labor Day Weekend, barely 15 hours after its application was field. This was, at a minimum, remarkably discourteous.

Case 3:10-cv-00940-GPC-WVG Document 503-1 Filed 09/06/16 Page 8 of 43
Case 3:10-cv-00940-GPC-WVG Document 380-1 Filed 09/06/16 Page 8 of 43
#:12059

1  2015 joint status report, Flo & Eddie had requested an August 8, 2016 trial date, and

2  Sirius XM had requested a September 2, 2016 pre-trial conference and a September

3  19, 2016 trial date. Dkt. 263. The parties and the Court discussed potential trial dates

4  at the December 21, 2015 status conference, during which time the Court informed

5  the parties the scheduled ten-week trial in a capital case could potentially interfere

6  with Flo & Eddie's requested date. Morrissey Decl. Exh. 2 (Dec. 21, 2015 Tr. at

7  28:21-25).

8       Notably, when Sirius XM requested a September 19, 2016 trial date in this

9  case, its lead counsel had been informed of the likely scheduling of a two-week

10  August 2016 trial date in the *Trump* case. Morrissey Decl. Exh. 1, Transcript of Dec.

11  4, 2015 Status Conference, *Low, et al. v. Trump University, LLC and Donald*

12  *Trump*, S.D. Cal. No. 10-cv-940, Dkt. 433) at 14:3-9 ("The Court: Then with respect

13  to a follow-up retrial conference, I think we would be looking at a date round June .

14  . . And then we would have motions in limine in July, and a trial date in August.").

15  At the time, Sirius XM and its counsel raised no objection to the scheduling of

16  potential back-to-back trials in the *Trump* case and this case, although it then

17  appeared that the *Trump* trial would likely proceed first, and the trial in this case

18  could proceed shortly thereafter in September 2016. Had the trial dates been

19  scheduled in accordance with the requests made by counsel for Sirius XM, there

20  would have been little or no time between the two trials, just as there will be now.

21  **B.**    **Sirius XM's Counsel Continues to Fail to Inform the Courts and**
22           **Parties in Either Action of Any Potential Conflict.**

23       Sirius XM's counsel continued to keep any claim to a conflict between the

24  two trial dates to himself over the next several months, even as he discussed

25  scheduling matters with the Court in the *Trump* case. For instance, at the March 16,

26  2016 conference on the named plaintiff's motion to withdraw in the *Trump* case,

27  Sirius XM's lead trial counsel indicated that he would want to push the trial date

28  back into later in 2016 if the motion was granted. Morrissey Decl. Exh. 3,

1 Transcript of Mar. 16, 2016 Proceedings at 28:25-31:8, 35:7-19, *Low, et al. v.*
2 *Trump University, LLC and Donald Trump*, S.D. Cal. No. 10-cv-940. There was no
3 mention by Sirius XM's lead counsel of the fact that this Court had set a November
4 15 trial date in this action, and there was no claim that the November 15 trial date in
5 this action would conflict with the scheduling of a trial in the *Trump* case any time
6 this Fall.

7       The November 28, 2016 trial date in the *Trump* case was set at a status
8 conference held on May 6, 2016. Petrocelli Decl. Ex. A. at 19:3-11. Sirius XM's
9 lead counsel states that he did not mention the previously scheduled trial date in this
10 action "because it did not immediately come to mind," and "[n]or was it clear that
11 an actual conflict would occur." *Id.* ¶ 5. Before filing its application, Sirius XM
12 stated that even if Mr. Petrocelli had remembered he might not have even mentioned
13 it to the Court in the *Trump* case: "Had Dan also thought about the Sirius XM trial
14 date, he might have mentioned that as an additional reason [to support his preferred
15 February 2017 trial setting]." Morrissey Decl. Exh. 4. *See also Ex Parte* App. at
16 9:27-10:1 ("While Mr. Petrocelli might have mentioned the trial date in this case [at
17 the May status conference] had it come to mind, this likely would not have made a
18 difference.").

19     **C.**     **Sirius XM Finally Claims a Scheduling Conflict After the Passage**
20                 **of More than Three Additional Months**

21       Although Sirius XM's counsel indicates that the claimed scheduling conflict
22 "did not immediately come to mind" at the conference held on May 6, 2016 in the
23 *Trump* case, Sirius XM offers no explanation for its inaction during the ensuing
24 three months. Surely the alleged conflict "came to mind" in the rest of May, June,
25 July, and August 2016, but Sirius XM's counsel still did absolutely nothing. As
26 Sirius XM notes, it filed a motion to modify the scheduling order in this case on
27 June 24, 2016 based on an argument that it should be permitted to take additional
28 discovery. Dkt. 325. That motion made no mention of any scheduling conflict, and

EXHIBIT A
9

1   nor did Sirius XM raise the issue at any time before August 22, 2016.

2          Sirius XM's motion suggests that it cavalierly deferred disclosing to the Court

3   or Judge Curiel any claim for relief from the trial schedule to see whether motion

4   practice would result in a delay: "Nor was it clear that an actual conflict would

5   occur. At the time, the parties in this case were in the midst of litigating class notice

6   and distribution issues as well as absent class member discovery, <u>all of which</u>

7   <u>circumstances suggested the need for additional time before trial could proceed.</u>" *Ex

8   Parte* App. at 3:4-7 (internal record citations omitted). Whatever Mr. Petrocelli

9   hoped would happen in this case is no excuse to ignore the scheduling order that this

10  Court entered. "A scheduling order 'is not a frivolous piece of paper, idly entered,

11  which can be cavalierly disregarded by counsel without peril.'" *Johnson v.*

12  *Mammouth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (quoting *Gestetner*

13  *Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985))

14         Nor does Sirius XM offer any explanation why only its lead trial counsel

15  would be accountable for addressing scheduling matters with the Court and

16  opposing counsel on a timely basis and without any need for an emergency

17  application on the eve of a holiday weekend. Sirius XM's trial team in this case

18  includes at least one additional partner and at least several associates who could

19  have prompted its lead counsel to alert the Courts to any claimed conflict at some

20  point after the May status conference in the *Trump* case and seek any corrective

21  measures that might have been viewed as appropriate pursuant to normally timed

22  procedures that would permit deliberative and just resolution of any claimed

23  conflict. Instead, Mr. Petrocelli and his 6-to-8-member trial team sat on the

24  supposed conflict they now claim for three more months before raising it to this

25  Court at the stroke of midnight the night before Flo & Eddie's opposition to Sirius

26  XM's motion to decertify the class (a major substantive filing) is due.

27         It was not until August 22, 2016 that Sirius XM first indicated that it would

28  be requesting a 60 day continuance, and would be doing so on an *ex parte* basis.

1   Sirius XM declined to confer with counsel for Plaintiff to discuss an agreed

2   schedule for addressing this scheduling matter with the Court, and claimed that it

3   was not required to meet and confer under C.D. Cal. L.R. 7-3. Morrissey Decl. Exh.

4   4 (Sept. 1 email from C. Seto, timestamped 3:59 p.m.)

5           Even though we are not required to meet and confer before filing an ex

6           parte application, we have explained the bases for our application and

7           provided more than the requisite notice.  Needless to say, we disagree

8           with your email, but do not see a need for additional exchanges since

9           you've made clear that you will oppose our motion and are unwilling to

10          move from your position.

11          As for the hearing date, we were not proposing a modified briefing

12          schedule, but merely that, to the extent the Court is inclined to hold a

13          hearing on our application, it be scheduled for September 12 since the

14          parties are already scheduled to appear that day.

15  Morrissey Decl. Exh. 4. Instead of cooperating in some amicable means of bringing

16  its request for a continuance to the Court's attention, at 11:57 p.m that day, without

17  even informing counsel of the date its *ex parte* application would be filed as

18  required by C.D. Cal. L.R. 7-17, Sirius XM filed its application, suddenly claiming

19  an emergency about an alleged conflict that first arose in early May 2016.

20  **III.   ARGUMENT**

21          **A.      Sirius XM Has Not Shown Any Basis for Granting Relief on an *Ex***

22          ***Parte* Basis.**

23          This Court and its standing order is clear: "[e]x parte applications are solely

24  for extraordinary relief." *Villasenor v. Sears, Roebuck & Co.*, 2010 WL 4679957 at

25  *1 (C.D. Cal. Nov. 9, 2010) (citing ¶ 10 of this Court's standing order). The

26  "opportunities for legitimate ex parte applications are extremely limited." *In re*

27  *Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989); *see also Mission*

28

4493168v1/015185                         EXHIBIT A
                                            11

1   *Power Eng'g v. Cont'l Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995). *Mission*

2   *Power* warns:

3       It is rare that a lawyer's credibility is more on the line, more vulnerable,

4       than when he or she has created this kind of interruption. Lawyers must

5       understand that filing an ex parte motion . . . is the forensic equivalent

6       of standing in a crowded theater and shouting, "Fire!" There had better

7       be a fire."

8   *Id.* The "well-settled" rule in this Circuit is that, to justify *ex parte* relief, "the

9   moving party must establish (1) that its cause will be irreparably prejudiced if the

10  underlying motion is heard according to the regular noticed motion procedures, and

11  (2) that it is without fault in creating the crises that requires *ex parte* relief, or that

12  the crises occurred as a result of excusable neglect. *Villasenor*, 2010 WL 4679957 at

13  *1 (citing *Mission Power*, 883 F. Supp. at 492).

14      Sirius XM's claim to some irreparable harm that could conceivably have

15  necessitated its late night *ex parte* application fails both prongs of the *Mission*

16  *Power* standard. Sirius XM's only supposed basis for claiming prejudice could

17  result from not considering its request on a normally noticed motion is that, by

18  October 31, 2016 (the next open motion date on the Court's calendar), all pretrial

19  disclosures would be due. But Sirius XM's application does not ask the Court to

20  modify any part of the schedule except the trial date. Nor does Sirius XM provide

21  any reason why abiding by the pretrial disclosure deadlines somehow would

22  prejudice Sirius XM. The entire *ex parte* application involves Mr. Petrocelli's

23  claimed conflict with the trial date, nothing else. Sirius XM surely can handle

24  pretrial disclosures and other pretrial matters with its large trial team drawn from

25  one of the largest law firms in the country. Moreover, Sirius XM flat-out refused to

26  consider Plaintiff's proposal for an expedited briefing schedule to allow its request

27  for a continuance to be teed up for argument before the court on September 12, 2016

28  when the parties will be appearing to argue Sirius XM's motion for partial summary

EXHIBIT A<sub>7</sub>

1   judgment; by agreeing to such a schedule, Sirius XM could have avoided the

2   claimed "emergency" altogether, and the *ex parte* would have been limited to a

3   <u>stipulated</u> request to shorten time on its motion.

4        The application also fails the second prong of the *Mission Power* standard.

5   This supposed "crisis" is entirely of Sirius XM's own making. The trial schedule

6   was set in the Trump case <u>five months</u> after this Court set a trial date. Sirius XM

7   walked into Judge Curiel's courtroom in May 2016 fully aware of the conflict and

8   allowed Judge Curiel to set a "conflicting date." <u>Four months</u> after that, Sirius XM

9   finally decides to try to do something about the "conflict" after passing up several

10   opportunities to avoid it or ameliorate it through properly noticed and deliberative

11   motion practice.

12       **B.**     **Sirius XM Has Not Shown Good Cause to Vacate the Trial Date.**

13        Federal Rule of Civil Procedure 16(b)(3)(vi) requires the Court to enter a

14   scheduling order that sets dates for pretrial conferences and for trial. That schedule

15   "may be modified only for good cause and with the judge's consent." Fed. R. Civ.

16   Pro. 16(b)(1), 16(b)(4).

17        As a threshold and dispositive matter, <u>there is no conflict between the trial</u>

18   <u>dates in the two cases</u> that could constitute good cause for vacating the trial date.

19   This case is scheduled for a seven-day trial starting on November 15, 2016, and the

20   *Trump* trial is scheduled to begin on November 28, 2016. There is no reason why

21   the trial in this case cannot be completed within the allotted time, particularly given

22   that the Court has already found Sirius XM liable, such that the issues remaining for

23   trial consist principally of the amount of class-wide damages and the issue of

24   whether punitive damages should be awarded.

25        Further, the good-cause standard focuses on the diligence of the party seeking

26   the modification: "carelessness is not compatible with a finding of diligence and

27   offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975

28   F.2d 604, 607–08 (9th Cir. 1992). If the party seeking modification "was not

1    diligent, the inquiry should end." *Id.*; *see also* Fed. R. Civ. P. 16 Advisory

2    Committee Notes (1983 amendment) ("After consultation with the attorneys for the

3    parties . . . the court may modify the schedule on a showing of good cause if it

4    cannot reasonably be met despite the diligence of the party seeking the extension.").

5       Sirius XM was far from diligent in its efforts to comply with this Court's

6    scheduling order and manage its own docket. This Court entered a scheduling order

7    setting the November 15, 2016 trial date in January 2016, <u>five months before</u> Judge

8    Curiel entered the scheduling order in the *Trump* case on May 6, 2016. Sirius XM

9    knew about this trial setting for nine months and before alerting Judge Curiel; and it

10    has knew about Judge Curiel's trial setting for more than three months before

11    alerting Flo & Eddie or this Court. At the May scheduling conference in the *Trump*

12    case, Sirius XM should have alerted Judge Curiel of any claimed conflict. In

13    *Knopick v. Downey*, No. 1:09-CV-1287, 2014 WL 257315, at *2–3 (M.D. Pa. Jan.

14    23, 2014), counsel had conflicting trial dates and moved the court that entered the

15    first scheduling order to continue the trial date. The Court noted that "Plaintiff's trial

16    in the Eastern District of Pennsylvania was scheduled 45 days after—and with

17    Plaintiff's knowledge of—trial in this matter" and concluded "that counsel is unable

18    to make a showing that denying this motion for extension of time would result in

19    actual, unfair prejudice to the complaining litigant, since counsel had been aware of

20    the date of trial in this matter for 223 days, knew of the conflict in Breedlove for 85

21    days, and knew of the conflict in Zimmerman for 180 days." *Id.* Additionally, the

22    Court required the plaintiff to seek a continuance from the courts that had entered

23    the later-in-time scheduling orders.

24       Second, Sirius XM has conceded that the reason why it had not raised this

25    issue with Judge Curiel or this Court is pure negligence. Negligence is not good

26    cause. While Sirius XM asserts it had expected this trial date to move because of the

27    substantive motions being briefed and argued, a "scheduling order 'is not a frivolous

28    piece of paper, idly entered, which can be cavalierly disregarded by counsel without

1   peril.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)

2   (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).

3   "[A] laundry list of excuses for her tardiness don't amount to good cause to modify

4   the Scheduling Order." *Burden v. Bar Louie Anaheim, Inc.*, No. SACV 15-0638 AG

5   (E), 2016 WL 551993, at *4 (C.D. Cal. Feb. 10, 2016). If Sirius XM planned to

6   contend that back-to-back trials posed an insurmountable conflict for its lead trial

7   counsel, Sirius XM should have alerted Flo & Eddie and the Court of the claimed

8   conflict during the through many months that it was aware of the issue.

9       Third, the busy trial schedule of Sirius XM's lead trial counsel does not

10  constitute good cause, and Court's routinely reject motions to modify a scheduling

11  order because of foreseeable conflicts in trial counsel's busy schedule. *United States*

12  *v. Approximately $156,000 in United States Currency*, 2012 U.S. Dist. LEXIS

13  37782 *3 (E.D. Cal. Mar. 20, 2012) ("Conflicts with other obligations that were

14  known at the time of a scheduling conference do not constitute good cause to

15  modify a scheduling order."); see also *Jackson v. Laureate, Inc.*, 186 F.R.D. 605,

16  608 (E.D. Cal. 1999) (good cause requires that a conflict "could not have been

17  reasonably foreseen or anticipated" at the time of the scheduling conference); *see*

18  *also F.D.I.C. v. Cleveland*, No. CIV. A. 91-3142, 1992 WL 193506, at *1 (E.D. La.

19  Aug. 3, 1992) ("While the court appreciates that counsel have other cases and

20  commitments, pre-trial deadlines must be enforced to effectively manage the court's

21  crowded docket. The busy schedules of counsel and the FDIC's bureaucratic

22  obstacles simply do not establish good cause for upsetting of pre-trial deadlines and

23  trial dates."); *Arnold v. Krause, Inc*. 232 F.R.D. 58, 65 (W.D.N.Y. 2004), adopted,

24  233 F.R.D. 126 (W.D.N.Y.2005) ("Plaintiffs' counsel offers in support of Plaintiffs'

25  motion to modify the Second Amended Scheduling Order, a litany of personal

26  commitments which arose after entry of the Second Amended Scheduling Order ....

27  however, none of the reasons, either individually or cumulatively, impress one as of

28  such a nature that an experienced litigator ... could not overcome with a modest

EXHIBIT A
10
15

1  degree of foresight and even a minimum amount of attention to the requirements of

2  Plaintiffs' case, including the Second Amended Scheduling Order"); *Lynch v.*

3  *Waitman*, 1995 WL 7991, *3 (S.D.N.Y. 1995) ("The press of other business does

4  not amount to good cause for failure to complete discovery"); *Agile Sky Alliance*

5  *Fund LP v. RBS Citizens, N.A.*, 2011 WL 378842, *2 (D.Colo. 2011) ("Delay due to

6  the press of other business does not give rise to good cause to extend deadlines").

7  **IV.    CONCLUSION**

8       For each of the foregoing reasons, Sirius XM's application for *ex parte* relief

9  should be denied.

10

11  Dated:  September 2, 2016

12                                        GRADSTEIN & MARZANO, P.C.
                                          Henry Gradstein
13                                        Maryann R. Marzano
                                          Daniel B. Lifschitz
14                                        Evans S. Cohen

15                                        SUSMAN GODFREY L.L.P.
16                                        Stephen E. Morrissey
                                          Steven G. Sklaver
17                                        Kalpana Srinivasan

18
                                          SUSMAN GODFREY L.L.P.
19                                        Rachel S. Black, Admitted PHV
20                                        1201 Third Avenue, Suite 3800
                                          Seattle, WA 98101
21                                        Telephone: (206) 516-3880
22                                        Fax: (206) 516-3883
                                          rblack@susmangodfrey.com
23
                                          SUSMAN GODFREY L.L.P.
24                                        Brian Hogue, Admitted PHV
25                                        1000 Louisiana Street, Suite 5100
26                                        Houston, Texas 77002-5096
                                          Telephone: (713) 651-9366
27                                        Fax (713) 654-6666
28                                        bhogue@susmangodfrey.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:*/s/ Stephen E. Morrissey*

*Attorneys for Plaintiff and the Class*

1  GRADSTEIN & MARZANO, P.C.
   HENRY GRADSTEIN (89747)
2  hgradstein@gradstein.com
   MARYANN R. MARZANO (96867)
3  mmarzano@gradstein.com
   DANIEL B. LIFSCHITZ (285068)
4  dlifschitz@gradstein.com
   6310 San Vicente Blvd., Suite 510
5  Los Angeles, California 90048
   Tel:  323-776-3100
6
   SUSMAN GODFREY L.L.P.
7  STEPHEN E. MORRISSEY (187865)
   smorrissey@susmangodfrey.com
8  STEVEN G. SKLAVER (237612)
   ssklaver@susmangodfrey.com
9  KALPANA SRINIVASAN (237460)
   ksrinivasan@susmangodfrey.com
10 1901 Avenue of the Stars, Suite 950
   Los Angeles, CA 90067-6029
11 Tel:  310-789-3100
   Fax: 310-789-3150
12
   Attorneys for Plaintiff and the Class
13

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16                    **WESTERN DIVISION**

| | |
|---|---|
| 17  FLO & EDDIE, INC., a California corporation, individually and on behalf of all others similarly situated, | Case No. CV13-05693 PSG (GJSx) |
| 18 | **DECLARATION OF STEPHEN E. MORRISSEY IN SUPPORT OF** |
| 19           Plaintiff, | **PLAINTIFFS' OPPOSITION TO SIRIUS XM RADIO INC.'S** *Ex* |
| 20      v. | *PARTE* **APPLICATION TO MODIFY THE SCHEDULING** |
| 21  SIRIUS XM RADIO, INC., a Delaware corporation; and DOES 1 through 10, | **ORDER AND CONTINUE THE NOVEMBER 15, 2016 TRIAL** |
| 22 | **DATE** |
| 23           Defendants. | |

24

25

26

27

28

4492707v1/015185

                        EXHIBIT A
                           18

1     I, Stephen E. Morrissey, hereby declare and state as follows:

2     1.    I am a Partner at Susman Godfrey L.L.P., counsel for Plaintiff Flo &
3 Eddie, Inc. ("Flo & Eddie") and for the certified class in the above-captioned action.
4 I am a member in good standing with the bar of the State of California and am
5 admitted to practice in this Court. I attest to the following matters from personal
6 knowledge, and if called as a witness, could competently testify to the matters set
7 forth herein.

8     2.    Attached hereto as **Exhibit 1** is a true and correct copy of the transcript
9 from the December 4, 2015 status conference held in the case *Low v. Trump*
10 *University, LLC*, No. 10-cv-00940-GPC-WVG.[1]

11     3.    Attached hereto as **Exhibit 2** is a true and correct copy of of the
12 transcript from the December 21, 2015 status conference held in this case.

13     4.    Attached hereto as **Exhibit 3** is a true and correct copy of the transcript
14 from the March 16, 2016 motion hearing held in the case *Low v. Trump University,*
15 *LLC*, No. 10-cv-00940-GPC-WVG.

16     5.    Attached hereto as **Exhibit 4** is a true and correct copy of the email
17 chain reflecting the meet-and-confer exchanges between Flo & Eddie and Sirius XM
18 regarding Sirius XM's present application for *ex parte* relief.

19     6.    On August 22, 2016, Sirius XM called Flo & Eddie to raise for the first
20 time the scheduling conflict asserted in its application for *ex parte* relief.

22    Signed this 2nd day of September, 2016, at Seattle, Washington.

23         */s/ Stephen E. Morrissey*
24         Stephen E. Morrissey

---

27    [1] This case was previously captioned *Makaeff v. Trump*, until Ms. Makaeff
28 withdrew as lead plaintiff.

# Exhibit 1

```
 1                    UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3   TARLA MAKAEFF, et al., on       .
     Behalf of Themselves and All    .
 4   Others Similarly Situated,      .
                                     .  Docket
 5              Plaintiffs,          .  No. 10-cv-00940-GPC-WVG
                    v.               .
 6                                   .
     TRUMP UNIVERSITY, LLC,          .
 7   et al.,                         .
                Defendants.          .  San Diego, California
 8   . . . . . . . . . . . . . . . . .  December 4, 2015

 9                  TRANSCRIPT OF STATUS HEARING
              BEFORE THE HONORABLE GONZALO P. CURIEL
10                  UNITED STATES DISTRICT JUDGE

11                    A-P-P-E-A-R-A-N-C-E-S
     For the Plaintiffs:     Robbins Geller Rudman & Dowd LLP
12                           655 West Broadway, Suite 1900
                             San Diego, California 92101
13                           By:  JASON A. FORGE, ESQ.
                                  RACHEL L. JENSEN, ESQ.
14                                DANIEL J. PFEFFERBAUM, ESQ.
                             - and -
15                           Zeldes Haeggquist & Eck, LLP
                             625 Broadway, Suite 1000
16                           San Diego, California 92101
                             By:  AMBER LEE ECK, ESQ.
17
     For the Defendants:     Foley & Lardner, LLP
18                           3579 Valley Centre Drive, Suite 300
                             San Diego, California 92130
19                           By:  NANCY L. STAGG, ESQ.
                                  BENJAMIN J. MORRIS, ESQ.
20                           - and -
                             O'Melveny & Myers LLP
21                           1999 Avenue of the Stars, Suite 700
                             Los Angeles, California 90067
22                           By:  DAVID L. KIRMAN, ESQ.
                                  DANIEL M. PETROCELLI, ESQ.
23
     Court Reporter:         Chari L. Possell, RPR, CRR
24                           333 West Broadway, Suite 420
                             San Diego, California 92101
25   Reported by Stenotype, Transcribed by Computer
```

1       THE COURT:  I think that makes sense.

2       MR. FORGE:  Thank you, Your Honor.

3       THE COURT:  Then with respect to a follow-up pretrial

4  conference, I think we would be looking at a date around June.

5  I don't know if I need to set that at this point, but just to

6  let you know, that's kind of what I think makes sense with an

7  August trial date.  And then we would have motions in limine in

8  July, and then a trial date in August.  So that would be the

9  plan moving forward.

10      MR. FORGE:  Your Honor, I don't know if the Court

11  would -- if we want to tackle some of the issues and questions

12  Mr. Petrocelli raised, if we want to set up a schedule for that

13  now, we could work through concurrently.

14      What we are planning on doing is presenting the

15  disclosures and preparing this case for trial as we see it,

16  which is kind of along the lines of what Your Honor said:

17  Everything having to do with liability and taking it all the

18  way through damages with the named plaintiffs.  That might not

19  wind up being the case.  We might wind up doing something

20  differently.  But we are going to do that.

21      THE COURT:  Let me ask you, Mr. Forge, as to the case

22  in chief you will be presenting, do you have an estimate how

23  long it would take to present your case in chief?

24      MR. FORGE:  I think two weeks, Your Honor.  I think

25  two weeks.  I was thinking three weeks for the whole trial in

```
 1                    C-E-R-T-I-F-I-C-A-T-I-O-N

 2

 3           I hereby certify that I am a duly appointed,

 4   qualified and acting official Court Reporter for the United

 5   States District Court; that the foregoing is a true and correct

 6   transcript of the proceedings had in the aforementioned cause;

 7   that said transcript is a true and correct transcription of my

 8   stenographic notes; and that the format used herein complies

 9   with rules and requirements of the United States Judicial

10   Conference.

11              DATED:  December 9, 2015, at San Diego,

12   California.

13

14                      /s/  Chari L. Possell

15                      _____
                        Chari L. Possell
16                      CSR No. 9944, RPR, CRR

17

18

19

20

21

22

23

24

25
```

# Exhibit 2



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE


FLO & EDDIE, INC., INDIVIDUALLY AND          )
ON BEHALF OF ALL OTHERS SIMILARLY            )
SITUATED,                                     ) CASE NO.
                                              ) CV 13-5693 PSG
                 PLAINTIFFS,                  )
                                              )
        VS.                                   )
                                              )
SIRIUS XM RADIO, INC., A DELAWARE             )
CORPORATION; AND DOES 1 THROUGH 10,           )
                                              )
                 DEFENDANTS.                  )
_____)


REPORTER'S TRANSCRIPT OF
SCHEDULING CONFERENCE
MONDAY, DECEMBER 21, 2015
2:28 P.M.
LOS ANGELES, CALIFORNIA


MAREA WOOLRICH, CSR 12698, CCRR
FEDERAL OFFICIAL COURT REPORTER
255 EAST TEMPLE STREET, ROOM 181-K
LOS ANGELES, CALIFORNIA 90012
mareawoolrich@aol.com

1  middle of a death penalty case.  So that date wouldn't work.

2      I'm not suggesting we change our dates because of the

3  death penalty case because I don't -- who knows what ultimately

4  happens in criminal cases.  But I'm just alerting you to a

5  problem.

6              MR. GELLER:  And that's certainly fair.  That would

7  seem to encompass both the trial date that we've suggested as

8  well as the trial date Sirius XM has suggested.

9              THE COURT:  Correct.

10             MR. GELLER:  Maybe the government will come to their

11 senses.

12             THE COURT:  I have no say.

13             MR. GELLER:  That was -- so I don't know what to say

14 then.  We have a situation now where we are seven months into

15 the class, and the class has not received any notice.  The

16 class is being horribly prejudiced by what Sirius XM is doing.

17 And it's being horribly prejudiced by not being able to move

18 the case forward.

19     So I don't -- I don't have an answer for the ten-week

20 period other than --

21             THE COURT:  I just wanted to alert you so you are

22 not hit cold with it.  I suspect sometime between now and June,

23 if things are going to change, they are going to change

24 quickly.  We may have -- I don't know.  I don't know the

25 answer.

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5            I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME COURT

 6    REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

 7    CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

 8    TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

 9    IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

10    REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

11    THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

12    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

13

14

15                          DATED THIS  29TH  DAY OF FEBRUARY, 2016.

16

17

18                          /S/ MAREA WOOLRICH

19                          MAREA WOOLRICH, CSR NO. 12698, CRR
                            FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25
```

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA


TARLA MAKAEFF, *ET AL.*,           )    10-CV-0940-GPC
          PLAINTIFFS,              )
                                   )
VS.                                )    SAN DIEGO, CA
                                   )    MARCH 11, 2016
TRUMP UNIVERSITY, LLP, *ET AL.*,   )    1:30 P.M.
          DEFENDANTS.              )


TRANSCRIPT OF MOTION HEARING

BEFORE THE HONORABLE GONZALO P. CURIEL

UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFFS:   ROBBINS GELLAR RUDMAN & DOWD LLP
                      BY:  RACHEL L. JENSEN, ESQ.
                           JASON A. FORGE, ESQ.
                      655 W. BROADWAY, SUITE 1900
                      SAN DIEGO, CA  92101
                      AND
                      ZELDES HAEGGQUIST & ECK, LLP
                      BY:  AMBER L. ECK, ESQ.
                      225 BROADWAY, SUITE 2050
                      SAN DIEGO, CA  92101


FOR THE DEFENDANTS:   O'MELVENY & MYERS LLP
                      BY:  DANIEL M. PETROCELLI, ESQ.
                           DAVID L. KIRMAN, ESQ.
                      1999 AVENUE OF THE STARS, SUITE 700
                      LOS ANGELES, CA  90067
                      AND
                      TRUMP NATIONAL GOLF CLUB, LOS ANGELES
                      BY:  JILL A. MARTIN, ESQ.
                      ONE TRUMP NATIONAL DRIVE
                      RANCHO PALOS VERDES, CA  90275

```
1    FACTS.  AND HER CREDIBILITY, WHICH, FRANKLY, WE HAVE FEATURED

2    AS A CENTERPIECE OF OUR LITIGATION IN OUR DEFENSE, AND YOU CAN

3    EVEN LOOK AT THE TRIAL MATERIALS THAT HAVE BEEN PUT TOGETHER

4    AND ALREADY FILED WITH THE COURT, I MEAN, WE HAVE TO BASICALLY

5    START ALL OVER AGAIN, YOUR HONOR, IF SHE'S DISMISSED NOW.  AND

6    AGAIN, I ASK THE COURT, FOR WHAT REASON OTHER THAN HER DESIRE

7    TO NOT FINISH WHAT SHE STARTED.  NOW, YES, IT'S A HIGH-PROFILE

8    CASE.  I GET THAT, YOUR HONOR.

9             THE COURT:  HAVE YOU EVER HAD A HIGHER-PROFILE CASE?

10   I KNOW YOU'VE HAD SOME OTHERS.

11            MR. PETROCELLI:  OH, I'VE HAD TWO.  I'VE HAD TWO,

12   BUT, YOU KNOW --

13            THE COURT:  AND I ASKED.  DO YOU THINK THIS CASE,

14   WHEN IT GOES TO TRIAL, WILL HAVE AS MUCH MEDIA ATTENTION?

15            MR. PETROCELLI:  THIS WILL BE A ZOO IF IT WERE TO GO

16   TO TRIAL, AND, YOU KNOW, WE TALKED LAST TIME, YOUR HONOR, ON

17   THAT SUBJECT, ABOUT (PAUSE) --

18            THE COURT:  AND LET ME ASK YOU THIS.

19            MR. PETROCELLI:  -- SETTING THIS CASE FOR TRIAL,

20   WHICH WE DECIDED TO DEFER UNTIL AFTER THE JULY CONVENTION TO

21   SEE WHAT HAPPENS.

22            THE COURT:  RIGHT.

23            MR. PETROCELLI:  BECAUSE I'M GOING TO HAVE A LOT TO

24   SAY ON THAT SUBJECT IF MR. TRUMP IS THE NOMINEE.

25            THE COURT:  ALL RIGHT, AND SO LET ME ASK YOU.  TO THE
```

1    EXTENT THAT HE IS THE NOMINEE, ARE YOU GOING TO ASK THE COURT

2    TO SET THE MATTER FOR TRIAL IN AUGUST?

3         MR. PETROCELLI:  I AM NOT, YOUR HONOR, IN ALL

4    LIKELIHOOD, AND I MAY ASK THE COURT (PAUSE) -- AND, HONESTLY,

5    THE REASON WHY I RAISED THIS ISSUE OF POLLUTING THE

6    ENVIRONMENT IS BECAUSE I AM VERY HOPEFUL THAT THIS WILL STOP,

7    BECAUSE I DO THINK IT WILL HAVE AN EFFECT ON THE INTEGRITY OF

8    THE PROCEEDINGS IF IT CONTINUES.  WE SHOULD NOT BE LITIGATING

9    THIS CASE ON A PUBLIC DEBATE FORUM FOR PRESIDENT OF THE UNITED

10   STATES, AND IT'S DEEPLY PREJUDICING.  EVERYBODY THAT COMES UP

11   TO ME NOW KNOWS ABOUT THIS CASE, AND BASED ON WHAT THEY READ

12   IN THE PAPERS, THEY USUALLY DON'T HAVE SOMETHING NICE TO SAY

13   TO ME ABOUT IT, AND I THINK IF IT CONTINUES, IT'S ONLY GOING

14   TO DIG A DEEPER HOLE FOR US, YOUR HONOR.

15        THE COURT:  SO LET ME ASK YOU THIS.  TO THE EXTENT

16   THAT THE COURT, THEN, IS WILLING TO ACCOMMODATE THIS REQUEST

17   TO CONTINUE THE TRIAL PAST AUGUST, AND WE'RE NOW AT MARCH, SO

18   WE'RE TALKING ABOUT A TRIAL DATE THAT WOULD BE, AT A MINIMUM,

19   FIVE, SIX, SEVEN, EIGHT MONTHS FROM NOW, WHY WOULDN'T THAT

20   GIVE YOU ENOUGH TIME AT THIS POINT TO FURTHER DEPOSE MR. LOW

21   AND TAKE FURTHER STEPS TO RECALIBRATE YOUR STRATEGY?

22        MR. PETROCELLI:  WELL, YOUR HONOR, THE SHORT ANSWER

23   IS THAT IT MIGHT.  IT MIGHT DEFER.  I MEAN, I DON'T THINK IT'S

24   FAIR THAT WE HAVE TO DO THIS AGAIN.  I THINK LEGAL PREJUDICE

25   HAS ALREADY OCCURRED, AND I KNOW THAT YOUR HONOR IS TRYING TO

1  NAVIGATE BECAUSE THE LAW SAYS THAT IF YOU'RE GOING TO LET

2  SOMEBODY DISMISS, THERE SHOULD BE CONDITIONS TO TRY TO

3  MITIGATE.  I'M TELLING YOU WE'VE PASSED THE POINT OF NO

4  RETURN.

5          BUT, YOU KNOW, IF YOUR HONOR IS GOING TO ALLOW THIS

6  PERSON TO DISMISS HER CLAIMS, (A) IT SHOULD BE WITH PREJUDICE.

7  SHE SHOULD NOT BE ABLE TO CONTINUE TO RECOVER AS A CLASS

8  MEMBER, BUT AT THE LAST SECOND SAY, YOU KNOW WHAT?  LET

9  SOMEBODY ELSE PROVE MY CLAIM.  I DON'T WANT TO DO IT ANYMORE.

10 I DON'T THINK THERE'S ANY BASIS TO LET HER OUT WITHOUT

11 PREJUDICE.

12          BUT EVEN IF IT'S WITH PREJUDICE, YOUR HONOR, I'M

13 SUGGESTING TO YOU THAT IT WOULD TAKE A LOT MORE THAN TAKING

14 ANOTHER DAY OF MR. LOW'S DEPOSITION, THAT WE WOULD WANT TO GO

15 BACK AND REVIEW WHETHER AND TO WHAT EXTENT WE HAD A BASIS TO

16 REVISIT PRIOR RULINGS OF THE COURT.  AND I KNOW IT'S THE LAST

17 THING YOUR HONOR WANTS TO HEAR FROM ME, BECAUSE YOU TOLD ME

18 LAST TIME THIS IS THE SECOND-OLDEST CASE ON YOUR DOCKET.  IT

19 MAY NOT BE THE OLDEST, BUT I DON'T WANT TO PUT YOU ON THE

20 SPOT.

21          THE COURT:  MY OLDEST CASE IS A 1951 CASE.

22          MR. PETROCELLI:  OH, THAT'S RIGHT.  THAT'S RIGHT.

23          THE COURT:  THAT CASE WILL BE AROUND LONG AFTER.

24          MR. PETROCELLI:  WE'VE GOT A WAYS TO GO ON THAT, YOUR

25 HONOR.  BUT I ALSO BELIEVE THAT WE WOULD EFFECTIVELY HAVE TO

1    DO A DO-OVER, AND I DON'T THINK THAT THE LAW GOES THAT FAR IN

2    SEEKING TO CURE OR MITIGATE PREJUDICE.  I BELIEVE THAT IF YOU

3    WEIGH ALL THE FACTORS, YOUR HONOR, THAT SHE HAS NOT MADE A

4    COMPELLING CASE TO BE RELIEVED AS A CLASS REPRESENTATIVE IN

5    THIS CASE.

6            THE COURT:  ALL RIGHT.

7            MR. PETROCELLI:  THANK YOU VERY MUCH.

8            THE COURT:  THANK YOU.

9            LET ME ASK ONE FURTHER QUESTION OF PLAINTIFFS'

10   COUNSEL, MISS JENSEN.  WITH RESPECT TO THIS QUESTION THAT CAME

11   UP DURING MY QUESTION TO MR. PETROCELLI, WHAT'S YOUR POSITION

12   AS TO WHETHER OR NOT THE DEFENDANTS WOULD BE ABLE, WOULD HAVE

13   THE RIGHT TO SUBPOENA MISS MAKAEFF AT TRIAL?

14           MR. FORGE:  YOUR HONOR, MAY I ADDRESS THAT?

15           THE COURT:  MR. FORGE.  YES.

16           MR. FORGE:  YOUR HONOR, YOU WERE CORRECT WHEN YOU

17   POINTED OUT THAT WE HAD NOT MADE THAT REQUEST TO EXCLUDE HER

18   FROM THE TRIAL, ALTHOUGH I'M OBLIGATED TO POINT OUT THAT IF

19   MISS MAKAEFF WERE NOT A PARTY TO THIS CASE, SHE WOULD BE

20   OUTSIDE THE JURISDICTION OF THE COURT FOR PURPOSES OF PROCESS.

21   SO THE DEFENSE WOULD NOT BE ABLE TO SUBPOENA HER TO APPEAR AT

22   TRIAL.  AND EVEN THE IDEA OF IT OBVIOUSLY DEFEATS THE PURPOSE

23   OF THE MOTION ITSELF, BECAUSE THAT WOULD STILL SUBJECT HER TO

24   THE SAME ANXIETY, THE SAME STRESS, THE SAME MEDIA CIRCUS THAT

25   HAS BEEN STIRRED UP NOT BY THE PLAINTIFFS IN THIS CASE, YOUR

1   HONOR, AND I WOULD LIKE TO ADDRESS THAT ISSUE BRIEFLY.

2          MR. PETROCELLI MENTIONED A *NEW YORK TIMES* ARTICLE

3   FROM TODAY.  THERE WAS NO ONE WHO SPOKE IN THAT ARTICLE WITH

4   ANY AUTHORIZATION FROM ANYONE FROM THE PLAINTIFFS.  THERE IS,

5   HOWEVER, SOMEONE WHO WAS QUOTED IN THAT ARTICLE WHO IS HERE IN

6   THIS COURTROOM, AND IT'S THE MAN WHO WAS POUNDING THE LECTERN

7   ABOUT US POISONING THE ATMOSPHERE FOR THIS TRIAL.  SO I THINK

8   THAT THAT IS A METAPHOR FOR VIRTUALLY ALL OF MR. PETROCELLI'S

9   ARGUMENTS, WHICH IS TO GO SO AGGRESSIVELY ON THE OFFENSIVE, TO

10  IGNORE THE FACT THAT HE'S ARGUING THE OPPOSITE OF WHAT THE

11  DEFENSE HAS BEEN DOING.

12          THE FASTEST MR. PETROCELLI RAN FROM ONE OF THE

13  QUESTIONS YOUR HONOR RAISED WAS WHEN YOUR HONOR TRIED TO FOCUS

14  ON THE ACTUAL ISSUES THAT ARE GOING TO BE LITIGATED IN THE

15  LIABILITY PHASE OF THIS TRIAL, WHICH IS THE ENTIRE TRIAL.  WE

16  ONLY HAVE A CLASS ACTION FOR LIABILITY, SO ALL WE'RE TALKING

17  ABOUT IS LIABILITY.  AND AS YOUR HONOR APTLY POINTED OUT,

18  THERE IS NOTHING, AND MISS MAKAEFF CAN BE THE GREATEST WITNESS

19  OR WORST WITNESS ON THE STAND, IT WOULD NOT IMPACT AT ALL THE

20  ALLEGATION REGARDING THE MISLEADING NATURE OF THE NAME TRUMP

21  UNIVERSITY (INDICATING QUOTATION MARKS), DESPITE BEING TOLD

22  NOT TO USE THE NAME.

23          AGAIN, SHE CAN BE THE GREATEST WITNESS OR THE WORST

24  WITNESS.  IT WOULD NOT AFFECT AT ALL THE MISLEADING NATURE OF

25  MR. TRUMP'S REPRESENTATIONS THAT ALL THE INSTRUCTORS WERE

1    HANDPICKED.  IT WOULD NOT AFFECT AT ALL THE ALLEGATIONS

2    REGARDING THE MENTORSHIP.  THE FACT OF THE MATTER IS, THE

3    ISSUES TO BE TRIED IN THIS LIABILITY PHASE ARE DISCRETE AND

4    THEY HAVE NOTHING TO DO WITH MISS MAKAEFF'S TESTIMONY.

5    WHETHER IT'S THE GREATEST TESTIMONY OR THE WORST TESTIMONY,

6    THEY'D BE INEFFECTIVE.

7         I THINK, YOUR HONOR, THIS EVIDENCE WOULD NOT COME IN

8    IN THE LIABILITY PHASE WHETHER SHE'S A PARTY TO THE CASE OR

9    NOT AT THAT POINT, AND THAT'S WHY WHY I REALLY THINK THE FOCUS

10   NEEDS TO BE, AND ONLY THERE, TO REVEAL THAT THERE IS NO

11   PREJUDICE HERE.  THERE'S NOT EVEN A POSSIBILITY OF PREJUDICE

12   HERE TO THE DEFENSE, BECAUSE MISS MAKAEFF SIMPLY IS NOT A

13   RELEVANT WITNESS TO THOSE ISSUES.

14        THE COURT:  PREJUDICE AS TO THE MERITS.

15        MR. FORGE:  AS TO THE MERITS.  EXACTLY.

16        THE COURT:  NOT PREJUDICE AS TO THE AMOUNT OF TIME

17   AND THE RESOURCES BEING DEVOTED TO PREPARE FOR TRIAL WITH

18   RESPECT TO MISS MAKAEFF.

19        MR. FORGE:  WELL, THOSE TWO ARE SOMEWHAT TIED

20   BECAUSE, SINCE THERE IS NO PREJUDICE TO THE MERITS, I DON'T

21   THINK IT WOULD BE FAIR TO SAY THAT ALL THE TIME WE DEDICATED

22   TO NON-MERITORIOUS, NON-MERIT-BASED ISSUES HAS SOMEHOW

23   PREJUDICED US.  I MEAN, I DO THINK EVEN THAT IS RELATED, YOUR

24   HONOR.

25        THE COURT:  ALL RIGHT.  LIKE I SAID, I THINK THAT THE

1    DISTRICT COURT IN BP WEST COAST PRODUCTS LOOKED AT WHETHER OR

2    NOT THE CLAIMS HAVE BEEN EXTENSIVELY LITIGATED, AND I DON'T

3    THINK THERE'S ANY QUESTION IN THIS CASE THE CLAIMS HAVE BEEN

4    EXTENSIVELY LITIGATED.

5         MR. FORGE:  ABSOLUTELY.  BUT MY POINT IS, HER

6    WITHDRAWAL WOULD NOT PREJUDICE THAT EFFORT.  WE WOULD STILL BE

7    WHERE WE ARE TODAY IF SHE HAD NEVER, IF SHE HAD NEVER APPEARED

8    IN THIS CASE, OR IF SHE HAD WITHDRAWN FIVE YEARS AGO, BECAUSE

9    WE WOULD STILL HAVE THREE CLASS REPRESENTATIVE WHO YOUR HONOR

10   INDEPENDENTLY VETTED AND INDEPENDENTLY APPROVED AS CLASS

11   REPRESENTATIVES.

12        AND AGAIN YOUR HONOR WILL RECALL, THEY TRIED TO HAVE

13   THE CASE FOR MISS MAKAEFF THROWN OUT ON SUMMARY JUDGMENT.  SO

14   I REALLY THINK THAT, AGAIN, THAT'S ANOTHER EXAMPLE OF -- I'M

15   NOT GOING TO POUND ON THE LECTERN TO MAKE THIS POINT.  I'M NOT

16   GOING TO -- MY VOICE IS NOT GOING TO ECHO OFF THE WALLS HERE,

17   BUT I FEEL VERY STRONGLY ABOUT IT, AND I THINK THE RECORD

18   PROVES IT.  THERE SIMPLY IS NOT SUBSTANCE TO BACK UP WHAT

19   THEY'RE SAYING, BECAUSE THEY THEMSELVES ASKED FOR MISS

20   MAKAEFF, MISS MAKAEFF'S CLAIMS, HER ALONE, TO BE THROWN OUT,

21   TO BE AWARDED SUMMARY JUDGMENT, AND SO THAT'S AFTER THE FACT

22   THAT DISCOVERY IS CLOSED, THEY HAD MADE ALL THE DECISIONS THEY

23   MADE BEFORE, AND THEY INDEPENDENTLY ARGUE IN THEIR SUMMARY

24   JUDGMENT MOTION THAT MISS MAKAEFF CANNOT PROVE HER CLAIMS.

25        NOW, THEY DID IT FOR EACH OF THE FOUR CLASS

1    REPRESENTATIVES, TO BE SURE, BUT THE FACT THAT THEY MADE IT AN

2    INDEPENDENT ARGUMENT FOR EACH ONE, AND AGAIN THIS IS THEIR

3    MOTION, THEY'RE HOPING THAT YOU AWARD THEM SUMMARY JUDGMENT AS

4    TO MISS MAKAEFF'S CLAIMS AFTER THE DISCOVERY HAS BEEN SETTLED,

5    AFTER DISCOVERY HAS ENDED, AND SO THAT TO ME, YOUR HONOR,

6    SHOULD SETTLE THE QUESTION.

7            THE COURT:  ALL RIGHT.  LET ME ASK YOU A QUESTION

8    THAT I ASKED MR. PETROCELLI ABOUT THE TRIAL DATE.  WHEN WE

9    WERE HERE LAST DECEMBER OR JANUARY, WE HAD TALKED ABOUT

10   SETTING THE MATTER FOR A PRETRIAL CONFERENCE IN MAY, WITH THE

11   UNDERSTANDING THAT WE WOULDN'T SET A TRIAL BEFORE AUGUST IN

12   ORDER TO PERMIT MR. TRUMP TO MOVE FORWARD WITH THE REPUBLICAN

13   NATIONAL CONVENTION IN JULY, AND THAT AT THIS POINT MR.

14   PETROCELLI INDICATED THAT AT THIS POINT, IF IT WAS UP TO THEM,

15   THIS CASE WOULDN'T BE TRIED BEFORE THE ELECTION BECAUSE OF ALL

16   OF THE, IF NOT THE HISTRIONICS, ALL OF THE ATTENTION THAT'S

17   BEEN FOCUSED ON THIS CASE AND HOW THAT WOULD MAKE IT VERY

18   DIFFICULT TO AFFORD BOTH SIDES A FAIR TRIAL.  DO YOU AGREE

19   WITH THAT?

20           MR. FORGE:  YOUR HONOR, MY FIRST REACTION WAS, WELL,

21   IF WE CAN'T GO IN AUGUST, LET'S GO IN JUNE, BUT LOOK, IT IS --

22   I WOULD BE, I WOULD BE FOOLISH TO EVEN PRETEND TO KNOW HOW A

23   CASE LIKE THIS SHOULD BE HANDLED AT THIS POINT BECAUSE IT

24   REALLY IS AN UNPRECEDENTED LEVEL OF PUBLICITY --

25           THE COURT:  SCRUTINY.

1          I, FRANK J. RANGUS, OFFICIAL COURT REPORTER, DO

2     HEREBY CERTIFY THAT THE FOREGOING TRANSCRIPT IS A TRUE AND

3     ACCURATE TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

4

5          S/FRANK J. RANGUS

6          FRANK J. RANGUS, OCR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit 4

**Joel Tan**

| | |
|---|---|
| **From:** | Seto, Cassandra <cseto@omm.com> |
| **Sent:** | Thursday, September 01, 2016 3:39 PM |
| **To:** | Steven G. Sklaver |
| **Cc:** | Steve Morrissey; Rachel S. Black; Kalpana Srinivasan; Maryann Marzano; hgradstein@gradstein.com; Petrocelli, Daniel; LaGrange, Jennifer; Tran, Jeremy N.; Rakow, Lauren S.; McNally, Patrick S.; Daniel Lifschitz; Joel Tan |
| **Subject:** | RE: Request for Continuance |

Even though we are not required to meet and confer before filing an ex parte application, we have explained the bases for our application and provided more than the requisite notice. Needless to say, we disagree with your email, but do not see a need for additional exchanges since you've made clear that you will oppose our motion and are unwilling to move from your position.

As for the hearing date, we were not proposing a modified briefing schedule, but merely that, to the extent the Court is inclined to hold a hearing on our application, it be scheduled for September 12 since the parties are already scheduled to appear that day.

Cassie

**From:** Steven G. Sklaver [mailto:ssklaver@SusmanGodfrey.com]
**Sent:** Wednesday, August 31, 2016 7:39 AM
**To:** Seto, Cassandra
**Cc:** Steve Morrissey; Rachel S. Black; Kalpana Srinivasan; Maryann Marzano; hgradstein@gradstein.com; Petrocelli, Daniel; LaGrange, Jennifer; Tran, Jeremy N.; Rakow, Lauren S.; McNally, Patrick S.; Daniel Lifschitz; Joel Tan
**Subject:** RE: Request for Continuance

Cassie, left a VM. Feel free to call if easier on my cell. We oppose for the reasons stated in my email below and we do not believe the good cause requirement is satisfied for a trial continuance for the following reasons:

*First,* this is Sirius XM's second request for a trial continuance. Sirius XM filed one on June 24, 2016 (Dkt. 325), seeking a 6 month continuance. No mention was made in that filing of the SD Cal case nor events at that case's May 6, 2016 PTC. The motion was denied by the Court on June 30, 2016 (Dkt. 331). Repackaging that denied motion and filing a new one is not good cause.

*Second,* there is no conflict – the trials are set on different dates – Nov. 15 and Nov. 28.

*Third*, failing to inform the SD Cal court in May 6, 2016 about the Sirius XM trial, long set by our Court in January 2016, is not good cause.

*Fourth,* from the below, as best I can tell, the reason provided for the failure to mention the Sirius XM trial at the May 6, 2016 SD Cal hearing was alleged inadvertence. ("Had Dan also thought about the Sirius XM trial date, he might have mentioned that as an additional reason.") That too is not good cause.

*Fifth,* unless I missed it on the docket or otherwise, and please send if so --- no follow-up correction or filing was made in SD Cal between May 6, 2016 (pretrial at which the Court asked about trial conflicts) and August 2, 2016 (when SD Cal set trial date). However, you did, during that *same* window of time, file in our case numerous filings, including a motion to modify the scheduling order, fighting class notice (including appeals to the 9th Circuit), etc.

1

EXHIBIT A

40

*Sixth,* even after the August 2, 2016 order was issued in SD Cal, no disclosure of or reference to the Sirius XM trial was made in that Court until weeks later, on August 26, 2016, when it was finally raised at a hearing. That transcript states:

> MR. PETROCELLI: That [Sirius XM] trial date was set in January of this year, prior to the time the Court set the trial in this case, because the Court did not set the trial in this case --

> THE COURT: Was that raised?

> MR. PETROCELLI: *It was not raised.* And I am in the process of -- in case the Court is wondering, I had various reasons to believe that that [the Sirius XM trial] date was going to move, and it has not moved so far.

Please let us know the factual basis for this last statement, as Judge Gutierrez has never stated that our trial date "was going to move," but we'd like to know as part of the meet and confer what Sirius XM plans to inform the Court about that statement.

Finally, as to the Sept. 12 hearing date issue, what briefing schedule are you proposing if the request is for the motion to be heard on that date?

Thanks,
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Email:  ssklaver@susmangodfrey.com
Direct: 310-789-3123
Web Bio

---

**From:** Seto, Cassandra [mailto:cseto@omm.com]
**Sent:** Monday, August 29, 2016 6:04 PM
**To:** Steven G. Sklaver
**Cc:** Steve Morrissey; Rachel S. Black; Kalpana Srinivasan; Maryann Marzano; hgradstein@gradstein.com; Petrocelli, Daniel; LaGrange, Jennifer; Tran, Jeremy N.; Rakow, Lauren S.; McNally, Patrick S.; Daniel Lifschitz; Joel Tan
**Subject:** Re: Request for Continuance

Steven,

This is not a question of the relative importance of the two cases, but the impossibility of Dan -- who is lead counsel in both cases -- being in two places at once and preparing for two major jury trials at the same time.

As I explained last week, the trial date in the Trump University case is difficult to change given the unique circumstances surrounding Mr. Trump's candidacy for president. In the May 6, 2016 transcript cited in your email, Dan asked the Court to defer setting a trial date until after the election, as you well know. In response to the Court's question whether there was any reason the trial could not go forward after the election but before the inauguration, Dan stated that it would be more reasonable to wait until after the inauguration, and proposed early February 2017 as a reasonable time for trial. Had Dan also thought about the Sirius XM trial date, he might have mentioned that as an additional reason. The Court declined to set the trial for February 2017, and instead set it to commence on November 28, 2016. Substantial pre-trial work and preparation will take place throughout November. In addition, there are pre-trial hearing dates on November 10 and 18, 2016.

The trial in this case is set to commence on November 15. Although the trial estimate is seven days, there's a strong likelihood the trial will exceed that estimate -- especially given that it's a class-wide jury trial. Even if that trial did conclude within seven court days, that would only leave two court days before the Trump University trial, which is not adequate time to prepare.

Dan alerted the Court in the Trump University case to this situation on Friday, as you can see from the attached transcript, and invited him to discuss the scheduling conflict with Judge Gutierrez if he wished.

We will proceed with our ex parte application this week and request that, to the extent the Court is inclined to have a hearing, it be scheduled for September 12, 2016 to coincide with the summary judgment hearing.  We will advise the Court that you oppose our application; let us know if you agree with our proposal with respect to the hearing date.

Cassie


-----Original Message-----
From: Steven G. Sklaver [mailto:ssklaver@SusmanGodfrey.com]
Sent: Friday, August 26, 2016 7:43 PM
To: Seto, Cassandra
Cc: Steve Morrissey; Rachel S. Black; Kalpana Srinivasan; Maryann Marzano; hgradstein@gradstein.com; Petrocelli, Daniel; LaGrange, Jennifer; Tran, Jeremy N.; Rakow, Lauren S.; McNally, Patrick S.; Daniel Lifschitz; Joel Tan
Subject: Re: Request for Continuance

Sorry about the delay in responding.   Was in Court this morning.

Can you send me a transcript of today's hearing in your case in SD Cal, so that we can review?

A few issues we should discuss:


·       There is no conflict.  Our case is set for trial on Nov. 15<x-apple-data-detectors://1>, with a 7 day estimate.   (Dkt. 272).  The case below is set for trial on Nov. 28.<x-apple-data-detectors://2>


·       On Jan. 25, 2016, the Court issued its order in our case setting this case for trial on Nov. 15, 2016<x-apple-data-detectors://4>.  As best we can tell, the Court in the SD Cal case set that case for trial on Aug. 2, 2016.   If that's right, please let us know when you first told the SD Cal Court about the Sirius XM trial date?   The transcript of the May 6, 2016 PTC in that case asks (page 11, DKT. 481):


o  The Court: "Let me ask you.  To the extent that we got past the election, is there any reason why this case shouldn't be tried between the election and Mr. Trump's being sworn in as president, if he were elected"?


An answer is given about how it is a "hectic time" after an election for Mr. Trump, but totally absent from that exchange is any mention of the Sirius XM Nov. 15<x-apple-data-detectors://7> trial date, which had been set already at that point for 4 months.  Let us know why in the below case you failed to mention our trial date, when that trial date was being set.  Or if you did mention our trial and I missed it in the transcript, let me know.


·       Why is the below case considered more "important" than our certified class action, such that our trial should be delayed, especially after failing to tell that Court about our trial, apparently until today?

Will call to discuss but wanted to lay out some of the issues and request for the transcript as well.

Thanks,
Steven

On Aug 26, 2016, at 3:55 PM, Seto, Cassandra <cseto@omm.com<mailto:cseto@omm.com>> wrote:

Steven,

I have not yet heard back from you about the voicemail I left this morning, following up on the request we made earlier this week for a two-month continuance of the November 15, 2016 trial date in the Flo & Eddie California case in light of Dan's November 28, 2016 trial date in the Trump University case.

At a hearing in the Trump University case today, Dan advised Judge Curiel about the scheduling conflict and noted that we reached out to your firm request the continuance—and would request the continuance from Judge Gutierrez in any event. Dan also suggested that Judge Curiel could call Judge Gutierrez to discuss the scheduling conflict if he wished.

Please let us know if you will agree to the modest extension we requested so that we can promptly submit an application to the Court.

Thanks.


O'Melveny

Cassandra L. Seto
cseto@omm.com<mailto:cseto@omm.com>
O: +1-310-246-6703

O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067
Website<http://www.omm.com/> | LinkedIn<https://www.linkedin.com/company/o'melveny-&-myers-llp> | Twitter<https://twitter.com/omelvenymyers>

This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.