1  ROBBINS GELLER RUDMAN & DOWD LLP
   PATRICK J. COUGHLIN (111070)
2  patc@rgrdlaw.com
   X. JAY ALVAREZ (134781)
3  jaya@rgrdlaw.com
   JASON A. FORGE (181542)
4  jforge@rgrdlaw.com
   RACHEL L. JENSEN (211456)
5  rjensen@rgrdlaw.com
   DANIEL J. PFEFFERBAUM (248631)
6  dpfefferbaum@rgrdlaw.com
   BRIAN E. COCHRAN (286202)
7  bcochran@rgrdlaw.com
   JEFFREY J. STEIN (265268)
8  jstein@rgrdlaw.com
   655 West Broadway, Suite 1900
9  San Diego, CA  92101
   Telephone:  619/231-1058
10
   ZELDES HAEGGQUIST & ECK, LLP
11 AMBER L. ECK (177882)
   ambere@zhlaw.com
12 AARON M. OLSEN (259923)
   aarono@zhlaw.com
13 225 Broadway, Suite 2050
   San Diego, CA  92101
14 Telephone:  619/342-8000

15 Class Counsel

16            UNITED STATES DISTRICT COURT

17          SOUTHERN DISTRICT OF CALIFORNIA

18 SONNY LOW, J.R. EVERETT and          )  No. 3:10-cv-0940-GPC(WVG)
                                        )
19 JOHN BROWN, on Behalf of             )  CLASS ACTION
   Themselves and All Others Similarly  )
20 Situated,                            )  PLAINTIFFS' OPPOSITION TO
                                        )  ADMISSION OF NON-
21                         Plaintiffs,  )  REPRESENTATIVE STUDENT
                                        )  TESTIMONY DURING PHASE 1 OF
22        vs.                           )  TRIAL
                                        )
23 TRUMP UNIVERSITY, LLC, a New         )  DATE:     Under Submission
   York Limited Liability Company and   )  TIME:     Under Submission
24 DONALD J. TRUMP,                     )  CTRM:     2D
                                        )  JUDGE:    Hon. Gonzalo P. Curiel
25                         Defendants.  )
   _____)

26

27

28

1184964_1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND .............................................................................. 2

    A.    Applicable Standards for Liability ........................................ 2

    B.    Defendants' Proposed Testimony ......................................... 3

III.  STANDARD OF REVIEW ............................................................. 3

IV.   ARGUMENT ................................................................................... 4

    A.    Non-Representative Student Testimony Is Irrelevant to
        Common Liability Issues ....................................................... 4

        1.    The Testimony Is Irrelevant Under Defendants' Own
            Case........................................................................... 4

        2.    Defendants Have No Legitimate Reason to Call Non-
            Representative Students for Phase 1 of Trial ............ 7

            a.    Uniformity ................................................... 8

            b.    Falsity ......................................................... 9

            c.    Materiality ................................................. 10

            d.    Reliance ..................................................... 11

    B.    Any Probative Value Is Far Outweighed by the Risk of Unfair
        Prejudice, Confusion of Issues, and Misleading the Jury.................. 12

    C.    Allowing Non-Representative Student Testimony Would
        Significantly Lengthen Phase 1 of the Trial ........................ 14

    D.    Exclusion Will Not Violate Defendants' Rights ................. 14

V.    CONCLUSION ............................................................................. 15

1

# TABLE OF AUTHORITIES

2
**Page**

3
**CASES**

4
*Am. Pipe & Constr. Co. v. Utah*,
5
    414 U.S. 538 (1974) ........................................................................................ 14

6
*Baghdasarian v. Amazon.Com, Inc.*,
7
    258 F.R.D. 383 (C.D. Cal. 2009) ........................................................................ 5

8
*Barnes v. D.C.*,
    924 F. Supp. 2d 74 (D.D.C. 2013) ..................................................................... 6
9

10
*Barrett v. Negrete*,
    No. 02-cv-2210-L (CAB), 2010 U.S. Dist. LEXIS 52258
11
    (S.D. Cal. May 25, 2010) .................................................................................... 7

12
*Bruhl v. PricewaterhouseCoopers Int'l*,
13
    No. 03-23044-Civ.-MARRA/JOHNSON,
    2010 U.S. Dist. LEXIS 129504 (S.D. Fla. Dec. 8, 2010) ................................ 12
14

15
*Chickadaunce v. Minott*,
    No. 1:13-cv-01223-WTL-MJD, 2014 U.S. Dist. LEXIS 141722
16
    (S.D. Ind. Oct. 6, 2014) ...................................................................................... 7

17
*Comm. of Cent. Am. Refugees v. Immigration & Naturalization Serv.*,
18
    682 F. Supp. 1055 (N.D. Cal. 1988).................................................................... 7

19
*Cruz v. Dollar Tree Stores, Inc.*,
20
    No. 07-2050 SC, 2011 U.S. Dist. LEXIS 24860
    (N.D. Cal. Mar. 8, 2011) ..................................................................................... 7
21

22
*Ellis v. Costco Wholesale Corp.*,
    285 F.R.D 492 (N.D. Cal. 2012) ...................................................................... 15
23

24
*Gamco Investors, Inc. v. Vivendi, S.A.*,
    927 F. Supp. 2d 88 (S.D.N.Y. 2013)................................................................. 11

25
*Gen. Tel. Co. v. EEOC*,
26
    446 U.S. 318 (1980) .......................................................................................... 13

27
*Gorman v. Wolpoff & Abramson, LLP*,
28
    584 F.3d 1147 (9th Cir. 2009).............................................................................. 9

**Page**

*In re Lucent Techs., Inc. Sec. Litig.*,
    No. 00 CV 621 (JAP), 2002 U.S. Dist. LEXIS 24973
    (D.N.J. July 16, 2002) ........................................................................... 5

*In re Nassau Cty. Strip Search Cases*,
    No. 99-CV-3126(DRH), 2009 U.S. Dist. LEXIS 21215
    (E.D.N.Y. Mar. 16, 2009)...................................................................... 7

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
    No. 3:05-cv-1018-GPC-WVG, 2013 U.S. Dist. LEXIS 20314
    (S.D. Cal. Feb. 14, 2013) ................................................................ 4, 12

*In re Worlds of Wonder Sec. Litig.*,
    No. C-87-5491 SC (FSL), 1992 U.S. Dist. LEXIS 10503
    (N.D. Cal. July 9, 1992) ........................................................... 5, 10, 14

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
    No. 05CV633 JLS (CAB), 2008 U.S. Dist. LEXIS 118344
    (S.D. Cal. July 8, 2008) ......................................................................... 7

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014),
    *cert. denied*, __U.S.__, 135 S. Ct. 2835 (2015) ................................. 15

*Knight v. Mill-Tel, Inc.*,
    No. 11-1143-EFM, 2013 U.S. Dist. LEXIS 105622
    (D. Kan. July 29, 2013) ......................................................................... 7

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
    No. 02 C 5893, 2005 U.S. Dist. LEXIS 8610
    (N.D. Ill. Apr. 18, 2005)........................................................................ 5

*McCrary v. Elations Co., LLC*,
    No. EDCV 13-00242 JGB (OPx), 2014 U.S. Dist. LEXIS 8443
    (C.D. Cal. Jan. 13, 2014) ...................................................................... 9

*Miller v. Fuhu Inc.*,
    No. 2:14-cv-06119-CAS-AS, 2015 U.S. Dist. LEXIS 162564
    (C.D. Cal. Dec. 1, 2015).................................................................... 10

**Page**

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  287 F.R.D. 590 (C.D. Cal. 2012) .......................................................... 9

*Negrete v. Allianz Life Ins. Co.*,
  No. CV 05-6838 CAS, 2013 U.S. Dist. LEXIS 176313
  (C.D. Cal. Dec. 9, 2013) ..................................................................... 6

*On the House Syndication, Inc. v. Fed. Express Corp.*,
  203 F.R.D. 452 (S.D. Cal. 2001), *later decision on unrelated
  issues*, aff'd in part and rev'd in part, 79 F. App'x 247
  (9th Cir. 2003) ........................................................................ 5, 9, 11

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ........................................................................ 14

*Plascencia v. Lending 1st Mortg.*,
  No. C 07-4485 CW, 2011 U.S. Dist. LEXIS 136078
  (N.D. Cal. Nov. 28, 2011) ...........................................................*passim*

*Sessions v. Owens-Illinois, Inc.*,
  No. 1:07-CV-1669, 2011 U.S. Dist. LEXIS 62670
  (M.D. Pa. June 13, 2011) ................................................................... 5

*Skydive Ariz., Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) ......................................................... 10

*Smith v. Small*,
  No. 10cv2429-LAB, 2013 U.S. Dist. LEXIS 188106
  (S.D. Cal. Oct. 21, 2013) ................................................................. 15

*Sprint/United Mgmt. Co. v. Mendelsohn*,
  552 U.S. 379 (2008) .......................................................................... 4

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ........................................................... 2

*Tritchler v. Cty. of Lake*,
  358 F.3d 1150 (9th Cir. 2004) ........................................................... 3

**Page**

*Tyson Foods, Inc. v. Bouaphakeo*,
 __U.S.__, 136 S. Ct. 1036 (2016) ................................................... 15

*United States v. Layton*,
 767 F.2d 549 (9th Cir. 1985) ....................................................... 12

*United States v. Lindsey*,
 No. 14-10004, 2016 U.S. App. LEXIS 11763
 (9th Cir. June 28, 2016) .............................................................. 10

*United States v. Lopez*,
 803 F.2d 969 (9th Cir. 1986) ......................................................... 3

*United States v. Philip Morris USA, Inc.*,
 566 F.3d 1095 (D.C. Cir. 2009) .................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ................................................................... 12

*Wargnier v. Nat'l City Mortg., Inc.*,
 No. 09cv2721-GPC-BGS, 2013 U.S. Dist. LEXIS 102376
 (S.D. Cal. July 22, 2013) .............................................................. 8

*Waters v. Int'l Precious Metals Corp.*,
 172 F.R.D. 479 (S.D. Fla. 1996) ........................................... 5, 12, 13

*Whiteway v. Fedex Kinkos Office & Print Servs.*,
 No. C 05-2320 SBA, 2007 WL 1456046
 (N.D. Cal. May 17, 2007) .............................................................. 6

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
 594 F.3d 1087 (9th Cir. 2010) ....................................................... 2

*Young v. Cty. of Cook*,
 No. 06 C 552, 2009 U.S. Dist. LEXIS 64404
 (N.D. Ill. July 27, 2009) ................................................................. 7

**Page**

**STATUTES, RULES AND REGULATIONS**

U.S. Constitution
Seventh Amendment ................................................................. 1, 14, 15

Federal Rules of Civil Procedure
Rule 23 ................................................................................... 1, 2, 8
Rule 42(b) .............................................................................. 14

Federal Rules of Evidence
Rule 401 ................................................................................. 7
Rule 402 ................................................................................. 15
Rule 403 ................................................................................. 12, 14, 15

# I.     INTRODUCTION

Long before the Court certified this case as a class action for Trump University ("TU") live event students in California, Florida, and New York, defendants aggressively sought out "satisfied" former students nationwide.  They sent email blasts, made calls, and enlisted their legal team to write declarations.  All while perpetuating their deception:  none of these former students was informed that TU had been operating illegally, that the most fundamental promise of learning from live events instructors and mentors whom Donald Trump had handpicked was a lie, or that signing a declaration could cost them the right to recover their "tuition."

After this Court certified this case as a class action, and while students were deciding whether to remain or opt out, Trump leveraged his celebrity by launching an unprecedented, nationwide multi-media campaign that lauded TU, condemned its detractors, and continued to conceal the truth.  All of these efforts failed miserably. Out of 7,611 former students in this and the related *Cohen* case, only 13 opted out. Even at a 99% confidence level, this number is statistically non-existent.  Now, defendants seek to parade a few needles before the jury – and destroy the class-action status of this case in the process by forcing plaintiffs to present the entire haystack so the jury is not misled (roughly 600 students for each opt-out would be representative).

Contrary to defendants' sensationalist claims – already rejected by this and other courts – class actions do not violate the Seventh Amendment.  Trying the common issues of liability in this case on a representative basis ("Phase 1") will not compromise any of defendants' rights and will provide the efficiencies for which Rule 23 was intended.  If somehow necessary, the Court can consider the testimony of non-representative former students at the damages phase ("Phase 2").  For now, the Court should preserve the class-action status of Phase 1 by ruling that the testimony of all non-representative TU students is inadmissible at the upcoming November trial.

## II.   BACKGROUND

### A.   Applicable Standards for Liability

The Court has held that, in this case, "issues of liability are common and can be *decided based on common proof*."[1] Dkt. 418 at 19.  "[U]nder California law, the test for reliance and causation focus on the materiality of the widely made representation versus the subjective and personalized experience of one class member." Dkt. 472 at 9.  Liability under the UCL and FAL "may be found *without any individualized proof* of deception and solely on the basis a defendant's conduct was likely to deceive customers." Dkt. 298 at 19-20.  Whether a statement is misleading under the FAL is assessed "by the effect it would have on a *reasonable consumer*," not a particular customer.  *Id.* (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010)).  For the CLRA, reliance may be established classwide through evidence of materiality, an objective standard judged by whether a "*reasonable man* would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  *Id.* at 22-23 (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011)).  The New York and Florida statutes apply the same causation and reliance standards as California, *see id.* at 23-24, and the elder abuse claims will be proven on the same common evidence at trial.  *See id.* at 26.

The Court has repeatedly reaffirmed these holdings.  In bifurcating these proceedings, the Court decided that Phase 1 will focus on common classwide liability issues and Phase 2 "will permit available defenses to be litigated and economies of class certification to be realized." Dkt. 418 at 18.  Recently, in denying defendants leave to file another decertification motion, the Court rejected arguments that the uniformity of the misrepresentations, reliance, causation, or materiality would require individualized inquiries, noting that these arguments "were extensively considered by the Court in its previous certification orders."  Dkt. 506 at 4.

---

[1]   Here, and throughout, emphasis added and internal quotation marks, citations, and footnotes are omitted, unless otherwise noted.

**B.      Defendants' Proposed Testimony**

Defendants seek to call eight students:   Paul Canup, Marla Rains Colic, Michelle Gunn, Amy H., Paula Levand, Tarla Makaeff, Meena Mohan, and Mette Nielsen.[2]  *See* Pltfs' Pretrial Order, Defs' Ex. A.  Each is a non-class member or "opt-out," except Makaeff.[3]  Yet, defendants seek to offer up their subjective impressions. Colic is illustrative of the testimony defendants hope to elicit:

> Marla Rains Colic is a former TU student who knew at the time she was taking TU courses that TU was not an accredited university but rather a business seminar.  She also understood that TU was one of many companies under Defendant's umbrella of companies and did not expect Defendant to be personally involved in the company. Based on Defendant's reputation, she expected excellence, and that is what she believed she received at TU. She worked hard to apply the techniques she learned and was successful in her investments.

Pltfs' Pretrial Order, Defs' Ex. A.  This testimony has no place at Phase 1 of trial.

In order to avoid giving the jury a skewed perspective, for each non-representative student called by defendants, plaintiffs should be allowed to call nearly 600 Class members.  Notwithstanding Trump's public attacks against student-victims who dare to stand up for their rights, there is no shortage of student-victims willing to do so.  *See, e.g.*, Jensen Decl., Exs. 1-50 (50 student-victim declarations).[4]

## III.    STANDARD OF REVIEW

Federal Rules of Evidence ("FRE") 402 and 403 confer "broad discretion" to exclude irrelevant evidence and evidence of slight probative value.  *United States v. Lopez*, 803 F.2d 969, 972 (9th Cir. 1986); *see also Tritchler v. Cty. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004) (same).  Appellate courts show "deference to a district

---

[2]    Plaintiffs exclude from the count students defendants reserved the right to call.  *See* Pltfs' 4/29/16 Proposed Pretrial Order ("Pltfs' Pretrial Order"), Defs' Ex. B.  Plaintiffs reserved the right to call Class members, but only in the event that the Court allows defendants' non-representative TU student testimony.  *See* Pltfs' Pretrial Order at 11.

[3]    *See* Dkts. 488 at 12 & 154-1; *Cohen* Dkt. 166.  Canup also recently submitted a request to opt out.  *See* Declaration of Rachel L. Jensen ("Jensen Decl."), ¶3 & Ex. 57, filed concurrently.  In addition, Colic and Nielsen testified that they chose to opt out. *Cohen* Dkt. 221 at 8.

[4]    References to "Ex." or "Exs." are to the Exhibits attached to the Jensen Decl.

1   court's familiarity with the details of the case and its greater experience in evidentiary

2   matters." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008).

3   **IV.    ARGUMENT**

4       **A.    Non-Representative Student Testimony Is Irrelevant to Common Liability Issues**

5           **1.    The Testimony Is Irrelevant Under Defendants' Own Case**

6         The parties may disagree on a lot of things, but there is common ground here.

7   Plaintiffs agree, for example, with defendants' view that "*Plascencia* is on point."  *See*

8   Dkt. 505 at 9 (citing *Plascencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2011 U.S.

9   Dist. LEXIS 136078 (N.D. Cal. Nov. 28, 2011)).  But plaintiffs' reason for agreeing is

10  consistent with the Court's holding, whereas defendants' citation is not.

11        *Plascencia* **rejected** the argument that class member testimony was relevant.

12  *Compare* Dkt. 505 at 9 *with Plascencia*, 2011 U.S. Dist. LEXIS 136078, at *7-*8.  So

13  irrelevant that the court would not permit absent-class-member **discovery**.  Instead, the

14  court held that defendants could only rebut the classwide presumption of reliance for

15  plaintiffs' common law fraud claim with evidence that "***can be properly generalized

16  to the class as a whole***."  *Plascencia*, 2011 U.S. Dist. LEXIS 136078, at *7-*8.  Thus,

17  "the class-wide presumption cannot be rebutted by showing that individual absent

18  class members did not rely upon the fraudulent omissions[, instead] Defendants can

19  proffer such evidence ***only with respect to . . . the class representatives***."  *Id.*  In

20  language seemingly tailor-made for defendants' proposal here, the court overruled an

21  order allowing 15 absent class member depositions on the basis that such evidence

22  was irrelevant as not "statistically representative of the class as a whole."  *Id.* at *9.

23        *Plascencia* is not alone.  Despite defendants' bold claim to the contrary, there is

24  an abundance of cases holding class member evidence irrelevant.  For example, this

25  Court followed *Plascencia* in finding class member testimony irrelevant where it was

26  not "properly generalized to the class as a whole."  *In re Nat'l W. Life Ins. Deferred*

27  *Annuities Litig.*, No. 3:05-cv-1018-GPC-WVG, 2013 U.S. Dist. LEXIS 20314, at *15-

28

*16 (S.D. Cal. Feb. 14, 2013) (citing *Plascencia*, 2011 U.S. Dist. LEXIS 136078, at *7-*8).  Other courts have found absent class members irrelevant to common issues. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 486, 489 (S.D. Fla. 1996) (excluding opt-outs and class members in light of "decision to restrict the trial to common issues only"); *In re Worlds of Wonder Sec. Litig.*, No. C-87-5491 SC (FSL), 1992 U.S. Dist. LEXIS 10503, at *12-*14 (N.D. Cal. July 9, 1992) (class members not "relevant" to classwide reliance, knowledge of falsity, or materiality); *see also, e.g.*, *On the House Syndication, Inc. v. Fed. Express Corp.*, 203 F.R.D. 452, 456 (S.D. Cal. 2001) (class members not "relevant to common questions nor . . . necessary for the resolution at trial"), *later decision on unrelated issues*, *aff'd in part and rev'd in part*, 79 F. App'x 247 (9th Cir. 2003); *Sessions v. Owens-Illinois, Inc.*, No. 1:07-CV-1669, 2011 U.S. Dist. LEXIS 62670, at *5-*9 (M.D. Pa. June 13, 2011) (class members irrelevant to common issues); *Baghdasarian v. Amazon.Com, Inc.*, 258 F.R.D. 383, 387 (C.D. Cal. 2009) (no reliance required for UCL); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2005 U.S. Dist. LEXIS 8610, at *14 (N.D. Ill. Apr. 18, 2005) (class member reliance "irrelevant to any class-wide liability issues"); *In re Lucent Techs., Inc. Sec. Litig.*, No. 00 CV 621 (JAP), 2002 U.S. Dist. LEXIS 24973, at *5 (D.N.J. July 16, 2002) (41 class members not helpful).  While many of these decisions were in the discovery or class certification context – reflecting the rarity of class trials – the standard for relevance there is far broader than at trial.  *Cf.* Dkt. 472 at 9 (trial evidence is "***relevant and admissible***").

Here, defendants seek to call less than ***0.002*** of all live event students to speak for the entire Class (despite not being class members themselves).  *See* §II.B, *supra*. There are always anomalies due to quirky perspectives, dumb luck, or any number of other reasons.  That is why the small number of witnesses is extremely telling, given Trump's aggressive multi-media campaign to enlist students as his shields.  *See, e.g.*, Dkts. 195-1, Ex. 73 (sealed) & 443-1 at 5 (citing "98% approval" website).  The fact that defendants only found a few willing candidates, despite Trump's celebrity and

1  power, only bolsters plaintiffs' point that these are outliers.  In contrast, thousands of
2  student-victims withstood Trump's carrot-and-stick tactics to remain in the Class;
3  many hundreds have contacted class counsel and the notice administrator;  and in just
4  the past two weeks, 50 student-victims signed declarations, demonstrating even
5  further that Trump's witnesses are aberrations.  *See* Jensen Decl., ¶¶4-5 & Exs. 1-51.
6  These facts bring into sharp focus why a few outliers simply cannot meet the threshold
7  test for relevance in defendants' own case that is, "properly generalized to the class as
8  a whole."  *Plascencia*, 2011 U.S. Dist. LEXIS 136078, at *8.

9       This is not to say that absent class member testimony can never be relevant,
10  particularly in cases where – unlike this one – liability turns on plaintiffs' conduct.
11  For example, *Whiteway v. Fedex Kinkos Office & Print Servs.*, No. C 05-2320 SBA,
12  2007 WL 1456046 (N.D. Cal. May 17, 2007), cited by defendants, was a wage-and-
13  hour case about whether center managers qualified as "executive exempt" under labor
14  laws.  *See id.* at *1.  Liability turned on their actual job duties and responsibilities to
15  which plaintiffs' experiences were relevant.  *See id.* at *2 (*Whiteway* was also thrown
16  out on summary judgment shortly after the ruling defendants cite).  Similarly, *Barnes
17  v. D.C.*, 924 F. Supp. 2d 74 (D.D.C. 2013), was a civil rights case about overdetention
18  – which varied from one to another – and the court found "value in having
19  representative class members explain the process by which they were overdetained."
20  *See id.* at 91-92.  In contrast, this case revolves not around plaintiffs' conduct but
21  defendants' misconduct in a misleading marketing scheme.  *See* §IV.A.2, at 7-8 *infra*.

22       *Negrete v. Allianz Life Ins. Co.*, No. CV 05-6838 CAS (MANx), 2013 U.S.
23  Dist. LEXIS 176313 (C.D. Cal. Dec. 9, 2013), also does not help defendants.  *See* Dkt.
24  505 at 6.  There, the court held that absent class member testimony was ***irrelevant*** to
25  classwide issues of causation, reliance, materiality and deception.  *See Negrete*, 2013
26  U.S. Dist. LEXIS 176313, at *26-*27, *63 & n.13.  The court left the door open that it
27  "may" be relevant for "other" reasons, but reserved that issue for another day.  *See id.*
28  at *63-*64.  Here, the Court should not wait until trial to decide because defendants

1    have not shown that the testimony is relevant to any common liability issue, it would

2    be highly prejudicial and confusing to the jury, and it would create great uncertainty

3    about the schedule for, and length of, Phase 1 trial.[5]  *See* §IV.C, *infra*.

### 2.    Defendants Have No Legitimate Reason to Call Non-Representative Students for Phase 1 of Trial

4
5            Defendants seek to admit non-representative student testimony on four grounds:

6    (1) uniformity; (2) falsity; (3) materiality; and (4) reliance.   *See* Dkt. 505 at 7.

7    Notably, evidence is relevant only if it "has any tendency to make a fact more or less

8    probable" and that "fact is of consequence in determining the action."  FRE 401; *see,*

9    *e.g.*, *Barrett v. Negrete*, No. 02-cv-2210-L (CAB), 2010 U.S. Dist. LEXIS 52258, at

10   *10 (S.D. Cal. May 25, 2010) (excluding irrelevant evidence where non-probative).

11   Defendants flunk this test as to each of their four proffered reasons.

12           At the outset, the Court has held that falsity, materiality, reliance, or causation

13   (to the extent required) are ***objective*** standards susceptible to classwide evidence.  *See*

14   Dkt. 298 at 18-26.  Thus, the "primary" evidence for and against liability consists of

15   the "advertising itself."  *Id.* at 19.  In contrast, subjective impressions are irrelevant:

16
17           "Makaeff's positive experience" has nothing to do with any affirmative
             defense and little to do with any of the elements to these causes of
18           action.  As to the alleged core misrepresentations, Defendants conceded
             at the hearing that Makaeff's testimony is unnecessary to establish two
19           of the three core representations . . . .  Ultimately, Defendants seek to
             show that Makaeff was not deceived or injured by the . . . representation.

20   _____

[5]    Defendants' other cases are similarly distinguishable.  *See, e.g.*, *Iorio v. Allianz*
21   *Life Ins. Co. of N. Am.*, No. 05CV633 JLS (CAB), 2008 U.S. Dist. LEXIS 118344, at
     *95-*98 (S.D. Cal. July 8, 2008) (absent class members "irrelevant to the class-
22   certified portion of plaintiffs' fraud claim" and manageability concerns can be
     addressed "[t]hrough pretrial *motions in limine*"); *Chickadaunce v. Minott*, No. 1:13-
23   cv-01223-WTL-MJD, 2014 U.S. Dist. LEXIS 141722, at *6 (S.D. Ind. Oct. 6, 2014)
     (law enforcement detention case in which absent class members' experiences relevant
24   to liability); *Young v. Cty. of Cook*, No. 06 C 552, 2009 U.S. Dist. LEXIS 64404, at *3
     (N.D. Ill. July 27, 2009) (same); *In re Nassau Cty. Strip Search Cases*, No. 99-CV-
25   3126(DRH), 2009 U.S. Dist. LEXIS 21215, at *6 (E.D.N.Y. Mar. 16, 2009) (same);
     *Comm. of Cent. Am. Refugees v. Immigration & Naturalization Serv.*, 682 F. Supp.
26   1055, 1057 (N.D. Cal. 1988) (same); *Knight v. Mill-Tel, Inc.*, No. 11-1143-EFM, 2013
     U.S. Dist. LEXIS 105622, at *6-*7 (D. Kan. July 29, 2013) (wage-and-hour case in
27   which decision related to class notice only); *Cruz v. Dollar Tree Stores, Inc.*, No. 07-
     2050 SC, 2011 U.S. Dist. LEXIS 24860, at *3 (N.D. Cal. Mar. 8, 2011) (permitting
28   discovery in wage-and-hour about exempt classification).  It does not appear any case
     was bifurcated for common issues first and individual ones later.

1
2

However, under California law, the test for reliance and causation focus on the materiality of the widely made representation versus the subjective and personalized experience of one class member.

3   Dkt. 472 at 9.

4   Undeterred, defendants seek to conjure up individualized issues that this Court

5   already rejected, attempting to replace objective standards with subjective ones, turn

6   common issues into individualized issues, and jettison the efficiencies of class

7   proceedings for a trial en masse.  Defendants cannot justify overruling this law of the

8   case.  *See, e.g.*, *Wargnier v. Nat'l City Mortg., Inc.*, No. 09cv2721-GPC-BGS, 2013

9   U.S. Dist. LEXIS 102376, at *4 (S.D. Cal. July 22, 2013) ("'Under the law of the case

10  doctrine, a court is ordinarily precluded from reexamining an issue previously decided

11  by the same court . . . .'").  Defendants should not be allowed to accomplish in

12  practice a standard for liability that has been rejected by this Court as a matter of law.

13  ### a.    Uniformity

14  In another area of common ground, plaintiffs agree with defendants that

15  "[c]ertification is procedural" and does not modify the parties' substantive rights.  *See*

16  Dkt. 505 at 4.  The corollary is that certification does not modify the elements that

17  plaintiffs must prove at trial.  For that reason, plaintiffs part ways with defendants in

18  their suggestion that plaintiffs must prove at trial that defendants made the same

19  misrepresentation or omission to every Class member.  *See id.* at 10.

20  Requiring plaintiffs to prove all Class members were exposed to the

21  misrepresentations is inconsistent with the representative nature of the trial and would

22  improperly turn class certification considerations into a substantive issue of fact for

23  the jury, rather than a procedural ruling by the Court made pursuant to Rule 23.

24  Unsurprisingly, defendants cite no case where the jury was required to decide this

25  issue.  *See* Dkt. 505 at 10 n.3 (citing cases at class-certification stage or earlier, not

26  trial).  To the extent any such case exists, it would be the exception, rather than the

27  rule: verdict forms from past class action trials ask whether the defendants made

28  misleading representations, whether they were material, and whether they caused

1  harm, without any uniformity determinations.  *See, e.g.*, Jensen Decl., Exs. 52-56.

2  In any event, whether a student remembers seeing a misrepresentation says

3  nothing about whether defendants made them.  *See, e.g.*, *Plascencia*, 2011 U.S. Dist.

4  LEXIS 136078, at \*7-\*8 (holding evidence from a few absent class members is

5  irrelevant to classwide reliance).  As this Court has already found, in rejecting the

6  argument that "the diversity of TU students requires individualized inquiries,"

7  defendants' "multi-media promotional campaign was uniform, highly orchestrated,

8  concentrated and focused on its intended audience."  Dkt. 298 at 22 & n.13.

9  ### b.    Falsity

10  Non-representative student testimony is equally irrelevant as to whether the

11  misrepresentations were "actionably false or misleading," by which defendants

12  apparently mean students were deceived.  *See* Dkt. 505 at 7, 11-12.  But plaintiffs

13  need not prove actual deception.  *See* Dkt. 298 at 19.  And it is irrelevant whether a

14  student purports to know the truth, *see On the House Syndication*, 203 F.R.D. at 457

15  (rejecting relevance of "individual knowledge" of falsity), or how they subjectively

16  interpreted the misrepresentations.  *See McCrary v. Elations Co., LLC*, No. EDCV 13-

17  00242 JGB (OPx), 2014 U.S. Dist. LEXIS 8443, at \*43-\*45 (C.D. Cal. Jan. 13, 2014)

18  ("'individual interaction with the product'" irrelevant); *Negrete v. Allianz Life Ins. Co.*

19  *of N. Am.*, 287 F.R.D. 590, 610 n.11 (C.D. Cal. 2012) ("[W]hat individual class

20  members understood the alleged misrepresentations to mean is irrelevant.").

21  At trial, the "'focus . . . is on the actions of the defendants, ***not on the subjective***

22  ***state of mind of the class members*.'"  *McCrary*, 2014 U.S. Dist. LEXIS 8443, at \*44.

23  Both sides will present evidence about the ads versus reality, and it will be up to the

24  jury – the collective "reasonable person" of the community – to decide whether the

25  statements were false, not a handful of outlier students who were not told the truth.

26  *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)

27  ("'"jury's unique competence in applying the "reasonable man" standard"'").

28

### c.      Materiality

Though defendants acknowledge that materiality is an "objective element," they seek to disprove it through entirely subjective views.  *See* Dkt. 505 at 8.

Defendants' proposal is inconsistent with this Court's order that this "class action has the ability to determine **on a class wide basis** whether misrepresentations were made and whether they were material."  Dkt. 298 at 15.  It is also out-of-step with the well-established standard for "materiality, [which] like the reasonable consumer test, concerns **objective features** of allegedly fraudulent representations and omissions, **not subjective questions** of how those representations and omissions were perceived by each individual consumer."  *Miller v. Fuhu Inc.*, No. 2:14-cv-06119-CAS-AS, 2015 U.S. Dist. LEXIS 162564, at *47 (C.D. Cal. Dec. 1, 2015).

*Worlds of Wonder* is instructive.  The court held that, where (as here) materiality is "objective" and measured by the "reasonable" person standard, "no useful evidence relating to materiality could be gained through" individual class member testimony because none can claim the mantel of the "hypothetical reasonable" person.  *See* 1992 U.S. Dist. LEXIS 10503, at *12.  Instead, "[t]he finder of fact **must make its own determination** as to this standard."  *Id.*; *see also United States v. Lindsey*, No. 14-10004, 2016 U.S. App. LEXIS 11763, at *12-*13 (9th Cir. June 28, 2016) (Where "[m]ateriality is an objective test[,]" it is "'not measured by effect or magnitude,' but rather by 'the intrinsic capabilities of the false statement itself.'").  Accordingly, student-victims' subjective viewpoints are irrelevant.  *See United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1122 (D.C. Cir. 2009) (materiality requires "no subjective evidence regarding any particular person").

Defendants cite *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012), for the proposition that survey evidence is not the "only" way to show materiality.  *See* Dkt. 505 at 8.  Plaintiffs have never argued it was; for example, both sides may put on evidence of the misrepresentations' prominence in defendants' advertising and the money that defendants invested in the deception.  But *Skydive*

1    *Ariz.* **was not a class action** and thus says nothing about the relevance of class

2    members' testimony to **common issues** in a class trial.  Materiality provides no basis

3    to admit non-representative testimony at Phase 1 of the trial.

4                                   **d.      Reliance**

5            Despite being shut down multiple times in arguing that the class claims here

6    require "individualized determinations as to reliance and causation" (*see, e.g.*, Dkt.

7    298 at 20-23), defendants still seek admission of testimony on this phantom issue.

8            Defendants seem to be confused about how causation will be proven under the

9    CLRA.  At the outset, the July 22 hearing was about the RICO claim in *Cohen*.  And

10   contrary to defendants' assertion about the classwide presumption of reliance, under

11   the CLRA, "[c]ausation, on a classwide basis, **may be _established_** by **materiality**.  If

12   the trial court finds that material misrepresentations have been made to the entire

13   class, an inference of reliance arises as to the class."  Dkt. 298 at 22-23 (second

14   emphasis in original).  In other words, if the jury finds that a misrepresentation or

15   omission was material, causation may be proved classwide.  Full stop.

16           In *On the House Syndication*, a class of FedEx customers alleged FedEx made

17   misrepresentations in its express service guarantees.  In certifying the class, the district

18   court held it was "'not necessary that each Plaintiff must prove individual knowledge

19   and reliance.'"  203 F.R.D. at 457.  Defendants nonetheless sought discovery of absent

20   class members to gather evidence of whether certain individuals knew the truth or did

21   not rely on them.  *See id.*  The magistrate judge rejected these attempts as not

22   "necessary for the resolution at trial" of common liability issues and "an improper

23   challenge to the decision of the District Judge."  *See id.* at 456-57.  Instead, any such

24   evidence would be more appropriate for the "set-off" phase of proceedings as to

25   individual class members after common liability issues were decided.  *Id.* at 458.

26           Here, too, to the extent that any individualized issues remain after Phase 1,

27   defendants will have an opportunity to present proof as to specific students during

28   Phase 2.  *See, e.g.*, *Gamco Investors, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 100

1  (S.D.N.Y. 2013) ("[Q]uestions of individual reliance will call for individualized proof,

2  which may be taken at separate trials after the class-wide trial has completed."). For

3  this reason, *Waters* remains on point, despite defendants' protestations. *See* 172

4  F.R.D. at 486, 489 (granting *motion in limine* to exclude opt-outs and absent class

5  members in light of the "decision to restrict the trial to common issues only"). And

6  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), does not undermine *Waters*, but

7  merely commented that some merits issues in securities fraud cases may be addressed

8  at the class certification stage. *Compare id*. at 351 n.6 *with* Dkt. 505 at 14.

9          Defendants wrongly represent that this Court favorably acknowledged *Bruhl v.*

10  *PricewaterhouseCoopers Int'l*, No. 03-23044-Civ.-MARRA/JOHNSON, 2010 U.S.

11  Dist. LEXIS 129504 (S.D. Fla. Dec. 8, 2010). *See* Dkt. 505 at 13. Actually, the Court

12  found arguments based on *Bruhl* "unpersuasive." *Nat'l W. Life*, 2013 U.S. Dist.

13  LEXIS 20314, at *16. The distinction was not the procedural posture but whether the

14  evidence could "rebut an inference of reliance on a classwide basis." *Id*. at *17. The

15  ruling in *Bruhl* hinged on the fact that the evidence was "necessary" to liability in a

16  securities action and the case was "slated to proceed to trial on all issues in one

17  phase," neither of which is present here. 2010 U.S. Dist. LEXIS 129504, at *7-*10.

18          In sum, defendants have not come forward with any common liability issue to

19  which non-representative student testimony is relevant. Thus, it should be excluded.

20  **B.     Any Probative Value Is Far Outweighed by the Risk of Unfair**
        **Prejudice, Confusion of Issues, and Misleading the Jury**

21

22          Even assuming non-representative student testimony has some minimal

23  relevance, it should be excluded because its probative value is outweighed by the risk

24  of unfair prejudice, confusion of issues, and misleading the jury. *See* FRE 403. This

25  weighing process "of balancing the probative value of the proffered evidence against

26  its potential for unfair prejudice or confusion of the issues – is primarily for the

27  district court to perform." *United States v. Layton*, 767 F.2d 549, 553 (9th Cir. 1985).

28          There is a significant risk of unfair prejudice here. In certifying the Class, the

1   Court vetted the Class Representatives to ensure their typicality and adequacy and

2   appointed them to represent the interests of thousands of Class members.  *See* Dkt.

3   298 at 15-17.  The Court analyzed plaintiffs John Brown, J.R. Everett, and Sonny

4   Low's claims and determined that, despite variations in the "specific program, benefit,

5   or price of each TU product," "the nature of the claims are the same and Plaintiffs'

6   purchases of TU programs are typical to that of the proposed class members."  Dkt.

7   298 at 16; *see Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) ("The typicality

8   requirement is said to limit the class claims to those fairly encompassed by the named

9   plaintiff's claims.").  To allow non-class members who were not scrutinized by the

10   Court to effectively speak on behalf of the Class would undermine the representative

11   action and create a false parity between typical students and atypical ones.

12          Given that of 7,611 Class members, only 13 chose to opt out, it would take

13   nearly 600 Class members to each defense student witness to provide a balanced view.

14   As this is not practicable, the jury would end up hearing a skewed cross-section of

15   conflicting testimony and be left with the misleading impression that the margins

16   represent the other side of the middle.  *See Plascencia*, 2011 U.S. Dist. LEXIS

17   136078, at *9 (class member testimony not "statistically representative of the class as

18   a whole").  This misperception is precisely what defendants want.  *See* Dkt. 505 at 13

19   ("Such proof would be . . . ***more persuasive*** . . . .").  The unfair prejudice would be

20   compounded by the fact that these students were culled by defendants to present a

21   curated viewpoint contrary to the Class.  As mentioned before, they were identified

22   after a nationwide campaign, which defendants did not initially disclose was for

23   litigation.  *See* Dkt. 195-1, Ex. 73 (sealed).  These witnesses consist of students who

24   either opted out or were never part of the Class to begin with.  *See Waters*, 172 F.R.D.

25   at 489 ("the testimony of opt-outs . . . is irrelevant").[6]  They would present a deeply

26

27   ─────────────────────
     [6]   Defendants either disagree with themselves on the relevance of opt-out testimony

28   or carelessly cribbed a brief from another case.  *See* Dkt. 505 at 15 n.4 (defendants
     disagreeing with the "other two cases cited ***by defendants***").

1    skewed perspective.

2         Allowing this testimony would risk confusing the issues, because the jury may

3    supplant the appropriate objective standard of materiality with the personal, subjective

4    perspective of this or that witness.  "[I]t is for *the trier of fact* to decide whether

5    defendants' omissions were, in fact, material," not a modicum of atypical witnesses.

6    *See Worlds of Wonder*, 1992 U.S. Dist. LEXIS 10503, at *14.  Thus, if the Court does

7    not exclude the testimony as irrelevant, it should be excluded under FRE 403.

8         **C.    Allowing Non-Representative Student Testimony Would**
          **Significantly Lengthen Phase 1 of the Trial**
9
          There is also a practical consideration at play.  Allowing this testimony would
10
    dramatically lengthen the trial at the expense of the efficiencies this class action was
11
    intended to accomplish.  *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974);
12
    Dkts. 298 at 34 & 418 at 18.  As explained above, if defendants call even one student,
13
    plaintiffs would need to call 600 Class members for a fair ratio.  Even if an honest
14
    ratio is not permitted, plaintiffs would seek to call dozens (if not hundreds) of Class
15
    members to lessen the prejudice, exponentially increasing the number of witnesses
16
    and the length of trial, which would otherwise last two weeks.  *See* Pltfs' Pretrial Order,
17
    Pltfs' Ex. 1, Defs' Ex. A (parties anticipate calling 23 witnesses, excluding non-
18
    representative students).  Allowing this testimony would upend this Court's decision to
19
    restrict Phase 1 to common liability issues for the "*economies of class certification to*
20
    *be realized*."  Dkt. 418 at 18.  It is well within the Court's discretion in managing the
21
    proceedings to exclude such testimony for Phase 1 of trial.  Fed. R. Civ. P. 42(b).
22
          **D.    Exclusion Will Not Violate Defendants' Rights**
23
          Defendants ratchet up the rhetoric and beat the constitutional drum in hopes the
24
    din will drown out the law, the facts, and commonsense.  *See* Dkt. 505 at 2-7.  The
25
    Seventh Amendment right to a jury trial is not absolute, however.  *Parklane Hosiery*
26
    *Co. v. Shore*, 439 U.S. 322, 336 (1979) ("The Seventh Amendment has never been
27
    interpreted in the rigid manner advocated by the petitioners.  On the contrary, many
28

1    procedural devices . . . have diminished the civil jury's historic domain have been

2    found not to be inconsistent with the Seventh Amendment.").  Taking defendants'

3    "sky-is-falling" argument to its logical end, FRE 402 and 403 would violate the

4    constitution, but that is not so.  *See, e.g.*, *Smith v. Small*, No. 10cv2429-LAB (WMc),

5    2013 U.S. Dist. LEXIS 188106, at *18-*19 (S.D. Cal. Oct. 21, 2013) ("There is no

6    constitutional right to present evidence that is irrelevant or otherwise inadmissible

7    under evidentiary rules of procedure.").  Moreover, a representative class action does

8    not violate defendants' constitutional right to a jury trial.  *See, e.g.*, *Tyson Foods, Inc.*

9    *v. Bouaphakeo*, __U.S.__, 136 S. Ct. 1036, 1046 (2016) (approving representative

10   evidence on liability and rejecting that such evidence "absolves each [absent class

11   member] of the responsibility to prove personal injury"); *Jimenez v. Allstate Ins. Co.*,

12   765 F.3d 1161, 1167 (9th Cir. 2014) (finding "representative testimony . . . acceptable

13   . . . to determine liability"), *cert. denied*, __U.S.__, 135 S. Ct. 2835 (2015).

14          Accordingly, this Court rightly held maintaining a class action for the liability

15   phase will not deprive defendants of their constitutional rights.  Defendants' ability to

16   present statutory and other individualized defenses during Phase 2 of the bifurcated

17   trial "comports with due process."  Dkt. 418 at 17-19; *see Ellis v. Costco Wholesale*

18   *Corp.*, 285 F.R.D 492, 543-44 (N.D. Cal. 2012) (bifurcated classwide liability and

19   damages trials before different juries are constitutional).  The Court should not allow

20   defendants to turn individualized issues into common ones because, to do so, would

21   conflict with this Court's prior orders, applicable liability standards, and the FRE.

22   **V.      CONCLUSION**

23          Plaintiffs respectfully request that the Court exclude the testimony of any

24   former TU students not appointed to serve as a class representative at Phase 1 of trial.

25   DATED:  September 9, 2016                Respectfully submitted,
                                             ROBBINS GELLER RUDMAN
26                                            & DOWD LLP

27                                                 s/ Rachel L. Jensen
28                                             RACHEL L. JENSEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PATRICK J. COUGHLIN
X. JAY ALVAREZ
JASON A. FORGE
RACHEL L. JENSEN
DANIEL J. PFEFFERBAUM
BRIAN E. COCHRAN
JEFFREY J. STEIN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
AARON M. OLSEN
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 9, 2016.

    s/ Rachel L. Jensen
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:      rachelj@rgrdlaw.com

## Mailing Information for a Case 3:10-cv-00940-GPC-WVG Low v. Trump University, LLC et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Xavier Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick J Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanm@rgrdlaw.com

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,lmix@rgrdlaw.com,llendzion@rgrdlaw.com,e_file_sd@rgrdlaw.com,hbrown@rgrdlaw.com,mbacci@rgrdlaw.com,JayA@rgrdlaw.com,KLavelle

- **David Lee Kirman**
  dkirman@omm.com,awyman@omm.com,tmoore@omm.com,iyanniello@omm.com,hleewong@omm.com,sbrown@omm.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Daniel M. Petrocelli**
  dpetrocelli@omm.com

- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

- **Jeffrey J. Stein**
  JStein@rgrdlaw.com

- **Helen Irene Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)