ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN (111070)
patc@rgrdlaw.com
X. JAY ALVAREZ (134781)
jaya@rgrdlaw.com
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
DANIEL J. PFEFFERBAUM (248631)
dpfefferbaum@rgrdlaw.com
BRIAN E. COCHRAN (286202)
bcochran@rgrdlaw.com
JEFFREY J. STEIN (265268)
jstein@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: 619/342-8000

Class Counsel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP UNIVERSITY, LLC, a New York Limited Liability Company and DONALD J. TRUMP,<br><br>Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' MOTION *IN LIMINE* NO. 1: GROUND RULES FOR PHASE 1 OF TRIAL<br><br>DATE: November 10, 2016<br>TIME: 1:30 p.m.<br>CTRM: 2D<br>JUDGE: Hon. Gonzalo P. Curiel |

1198379_1

Plaintiffs Sonny Low, J.R. Everett, and John Brown ("plaintiffs") respectfully move the Court for an order *in limine* requiring certain general procedures for the upcoming Phase 1 of trial.

## I. INTRODUCTION

Phase 1 of trial is set to begin on November 28, 2016, the Monday after Thanksgiving. In order to facilitate a fair and efficient trial with the hope of concluding before the December holidays, and to promote the integrity of the trial proceedings, plaintiffs seek to confirm some basic ground rules. Specifically, plaintiffs respectfully request that the Court:

1. Preclude the same witness from being called to testify more than once (except for witnesses re-called in rebuttal);

2. Preclude defendants from presenting any live witnesses who were not available for plaintiffs to call live during their case-in-chief;

3. Permit plaintiffs to use leading questions to examine witnesses associated with defendants Donald J. Trump ("Trump") or Trump University, LLC ("TU");

4. Preclude any argument or testimony about the attorneys and law firms that have represented the parties in the litigation;

5. Preclude evidence and argument related to political affiliation, voting preferences, and contributions; and

6. Exclude from the courtroom non-party percipient witnesses.

## II. APPLICABLE LEGAL STANDARDS

District courts have the authority to issue rulings on motions *in limine* pursuant to their inherent authority over the management of trials in their courtroom. *See* Fed. R. Evid. ("FRE") 103(c); *Luce v. United States*, 469 U.S. 38, 41 (1984). Rulings on motions *in limine* are committed to the sound discretion of the trial court. "The Supreme Court has recognized that a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999).

## III. ARGUMENT

### A. Each Witness Shall Be Called to Testify Only Once

To avoid wasting time, the Court should order that witnesses be examined only once – either live or by deposition – during Phase 1 of trial. FRE 611(a) provides that the "court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time." *Id*. Having witnesses appear only once promotes an efficient trial and ensures all parties have a full and fair opportunity to present their case. *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, No. 99-CV-351-RHW, 2001 U.S. Dist. LEXIS 26331, at *11 (S.D. Cal. June 11, 2001) (granting motion *in limine* that "promotes judicial economy and efficiency by avoiding needless presentation of evidence").

Here, defendants should be precluded from recalling a witness during their case-in-chief whom plaintiffs previously called during their case-in-chief. There is no reason why defendants cannot conduct their examination of the witness immediately after plaintiffs conclude theirs. This is especially true here because both sides intend to call Trump, former President of TU, Michael Sexton ("Sexton"), and former TU instructors Stephen Goff and Gerald Martin. To allow defendants to recall these witnesses during their case-in-chief would only waste precious time.

### B. Defendants Must Make Witnesses Available to Plaintiffs for Their Case-in-Chief

A close cousin to the above request is that the Court should preclude defendants from calling for live testimony any witness who refused to provide live testimony during plaintiffs' case-in-chief. Under FRE 611(a), the Court has discretion over "the mode and order of examining witnesses and presenting evidence so as to (1) make those procedures effective for determining truth" and "(2) avoid wasting time." FRE 611(a). In a similar situation, "the court may utilize [FRE] 611 and preclude [defendants] from introducing witnesses who are not available to testify during the plaintiff's case in chief because this is the fairest method of making sure the complete

1 truth is told to the jury in this case and the least likely method of wasting time." *In re*
2 *Disaster at Detroit Metro. Airport*, 130 F.R.D. 647, 650 n.4 (E.D. Mich. 1989); *see*
3 *also Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 806 (N.D. Ill. 2002) (prohibiting
4 witness's testimony during defendants' case-in-chief where witness was under
5 defendants' control and initially refused to testify); *Maran Coal Corp. v. Societe*
6 *Generale de Surveillance S.A.*, No. 92 CIV. 8728 (DLC), 1996 U.S. Dist. LEXIS 172,
7 at *4 (S.D.N.Y. Jan. 10, 1996) ("Courts have used their discretion under [FRE 611] to
8 preclude parties who refuse to honor a reasonable request for production of a key
9 witness subject to their control, and thereby force an opponent to use a deposition,
10 from calling the witness to testify personally during their presentation of evidence.").

11 Here, in fairness, plaintiffs should be able to call a witness live if defendants
12 intend to call that same witness for live testimony. Otherwise, valuable time would be
13 wasted by introducing deposition testimony during plaintiffs' case-in-chief and then
14 live testimony by the same witness during defendants' case-in-chief. It is well within
15 the Court's discretion under FRE 611 to prevent this kind of gamesmanship.

16 Similarly, the Court should preclude defendants from introducing deposition
17 testimony of a witness under their control. Generally, a party may introduce
18 deposition testimony of a witness who is unavailable as contemplated by FRE
19 804(b)(1). Defendants should not be permitted to introduce deposition testimony of a
20 witness under their control, including employees (Mark Covais is an example), as
21 such witnesses are not unavailable within the meaning of FRE 804. *See* FRE
22 804(a)(5); *Chesler v. Trinity Indus., Inc.*, No. 99 C 3234, 1999 WL 498592, at *3 n.1
23 (N.D. Ill. July 6, 1999) ("Courts ordinarily assume that a defendant's employees will
24 be available to testify regardless of venue, since they are under defendant's
25 control[.]"). Similarly, defendants should not be able to rely on Federal Rule of Civil
26 Procedure ("Rule") 32(a)(4)(D), as they can procure the attendance of a witness that is
27 under their control.

28

## C. Plaintiffs Should Be Permitted to Examine Witnesses Identified with Defendants with Leading Questions

Plaintiffs intend to call witnesses who are former officers, employees, and/or independent contractors associated with Trump or TU. Plaintiffs should be permitted to examine these witnesses using leading questions, pursuant to FRE 611(c).

FRE 611(c) provides that, "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party," interrogation may be by leading questions. FRE 611(c). Courts have "broad discretion" to permit leading questions. *See United States v. Nelson*, 137 F.3d 1094, 1106 n.8 (9th Cir. 1998). The phrase """witness identified with an adverse party" is intended to apply broadly to an identification based upon employment by the party or by virtue of a demonstrated connection to an opposing party.'" *United States v. McLaughlin*, No. 95-CR-113, 1998 U.S. Dist. LEXIS 18588, at *3 (E.D. Pa. Nov. 19, 1998).[1] That includes a witness employed by defendant during the relevant time frame. *See, e.g.*, *Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1478 (11th Cir. 1984) (reversing refusal to allow plaintiff to lead defendant's employee who was present when acts occurred until actual hostility was established); *Ellis v. Chicago*, 667 F.2d 606, 612-13 (7th Cir. 1981) ("the district court should have permitted leading questions during plaintiffs' direct examinations" of officers who were employees of defendant present when the events occurred and no longer employed by the defendant at the time of trial); *Doud v. Yellow Cab of Reno, Inc.*, No. 3:13-cv-00664-WGC, 2015 U.S. Dist. LEXIS 134721, at *8-*9 (D. Nev. Oct. 2, 2015) (identifying general manager of defendant company Yellow Cab as a witness with an adverse party and thus permitting leading questions).

Here, plaintiffs should be permitted to lead witnesses who have been identified with defendants. For example, plaintiffs should be permitted to lead former TU President, Sexton. In addition to his position as TU's President, Sexton was

---

[1] All citations and footnotes are omitted and emphasis is added unless otherwise noted.

represented by Trump's counsel at his depositions. Ex. 1 at 9:7-11, attached hereto. *See McLaughlin*, 1998 U.S. Dist. LEXIS 18588, at *3 ("'witness identified with an adverse party'" is based at least in part upon "'demonstrated connection to an opposing party'"). Plaintiffs should similarly be permitted to lead other current or former employees or independent contractors who worked with or for Trump, TU, or Trump's other companies, other witnesses represented by Trump's counsel, and any witness who signed a declaration that a defendant has used in this case, as well as the *Cohen* or New York Attorney General cases. *See id.*

Conversely, defendants' counsel should be prohibited from "cross examin[ing]" Trump and any current or former employee or independent contractor by asking them leading questions, even if these witnesses are put on by plaintiffs. *See* FRE 611(c); *Shultz v. Rice*, 809 F.2d 643 (10th Cir. 1986) (defense counsel not permitted to lead defendant on cross-examination); *Perkins v. Volkswagen of Am., Inc.*, 596 F.2d 681, 682 (5th Cir. 1979) (error for trial court to rule that employee of defendant would be plaintiff's witness if plaintiff called him). The Court should, therefore, also prohibit defendants from leading any witness identified with them.

### D. There Should Be No Argument or Evidence About the Attorneys or Law Firms

Plaintiffs move to exclude any direct or indirect reference to the parties' current and former attorneys and law firms, as well as any other attorneys and law firms not involved in the underlying facts of the case in any way. Under FRE 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." As a corollary, FRE 402 precludes irrelevant evidence.

Here, references to attorneys or law firms that represent or have represented the parties, as well as attorneys and law firms unconnected to the underlying alleged misconduct will not tend to make the existence of any fact at issue more or less probable. For example, contrary to Trump's baseless public statements, William

Lerach, Mel Weiss, Steven Schulman, David Bershad and Milberg Weiss have never been connected to this case in any shape or form, and thus are unrelated to the claims and defenses at issue here. Any reference to them would be for the sole purpose of prejudicing plaintiffs and maligning their counsel. It is axiomatic, however, that "disparaging remarks directed at . . . counsel are reprehensible," can engender prejudice and are therefore improper and inadmissible at trial. *United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001); *United States v. Amlani*, 111 F.3d 705, 712 (9th Cir. 1997) (finding disparagement of defense counsel inappropriate); *United States v. Glover*, 596 F.2d 857, 861 (9th Cir. 1979) (Court condemns disparaging remarks made about counsel); *United States v. Santiago*, 46 F.3d 885, 892 (9th Cir. 1995) ("A personal attack on defense counsel's integrity could constitute misconduct."). Plaintiffs' counsel would never think of mentioning at trial the fact that defense counsel previously represented clients who jurors likely hold in low regard.

Likewise, on numerous occasions, both in proceedings before this Court and in the media, defendants have demonstrated an apparent desire to turn the trial into a referendum on plaintiffs, plaintiffs' counsel, and purported "lawyer-driven" litigation. For example, Trump has publically and repeatedly levied unsubstantiated attacks against the plaintiffs and their lawyers in this case to an audience of millions, using his bully pulpit as the presidential nominee of a major political party to attempt to tarnish their character and to undermine the integrity of these proceedings.[2] In his sworn

---

[2] At a May 27, 2016 campaign rally in San Diego, Trump stated he was being "railroaded" in this case by "class action lawyers" and a "legal system that, frankly, they should be ashamed" and, further, that "class action lawyers are the worst, it's a scam," among other inflammatory comments about plaintiffs, plaintiffs' lawyers and this litigation. *Donald J. Trump Rally, San Diego,* CA, YouTube (May 27, 2016), https://www.youtube.com/watch?v=aRPGTWIrnZo (last visited Oct. 19, 2016) (excerpt begins around 1:36:15 mark). Similarly, Trump insinuated at a February 2016 Arkansas rally – completely without basis – that plaintiffs' counsel had paid "fifteen thousand or a lot of money [to New York] attorney general" Eric Schneiderman in exchange for having him sue Trump for fraud. *See* Ryan Grim and Christine Wilkie, *Trump: Obama Bribed New York's Attorney General to Sue Trump University*, The Huffington Post, Aug. 17, 2016, *available at* http://www.huffingtonpost.com/entry/donald-trump-eric-schneiderman-trump-university_us_57b2340ae4b0a8e15024e470 (last visited Oct. 19, 2016); *see also*

deposition, Trump admitted his prior public reference to plaintiffs' counsel as "scam artists" was completely baseless inasmuch as he was referring to attorneys who have never had anything to do with this case, and were never part of either of the law firms representing plaintiffs. *See Cohen* Dkt. 254-2, Ex. 2 at 445-448.

As numerous courts have held, an "argument aimed at a party's counsel is improper and risks depriving the party of a fair trial." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 761 (7th Cir. 2013) (finding character attacks on the plaintiff's counsel improper and remanding for new trial); *see also United States v. Rodrigues*, No. 97-10113, 1998 U.S. App. LEXIS 36919, at *30 (9th Cir. Oct. 28, 1999) (finding "slander" of opposing counsel "prejudicial to the point of denying . . . a fair trial"); *Koufakis v. Carvel*, 425 F.2d 892, 904 & n.16 (2d Cir. 1970) (remanding for new trial in part because of attacks on opposing counsel). Defendants cannot be allowed to level baseless, inflammatory attacks on plaintiffs' counsel or the circumstances of their representation of plaintiffs in this case at trial.

### E. The Court Should Preclude Evidence and Argument Related to Political Affiliation, Voting Preferences, or Contributions

On numerous occasions, defendants have contended that plaintiffs' and/or plaintiffs' counsel's political affiliations or contributions are somehow relevant to the allegations in the complaint. They are not. Moreover, a witness's party affiliation or voting preferences has nothing to do with his or her credibility in this case. When this lawsuit was filed in 2010, Trump was not necessarily a Republican, much less the Republican presidential nominee. In fact, not long before plaintiffs commenced this case, Trump openly supported Democratic candidates, including his current rival for the presidency, Hillary Clinton. *See, e.g.*, *Donald Trump Said Hillary Clinton Would*

---

Steven Brill, *What the Legal Battle Over Trump University Reveals About Its Founder* Time Magazine, Nov. 5, 2015, *available at* http://time.com/4101290/what-the-legal-battle-over-trump-university-reveals-about-its-founder/ (last visited Oct. 19, 2016) (describing Trump's defense "strategy" as "attack the attackers," including by characterizing plaintiffs' counsel as "known scam artists" who have "behaved unethically").

*'Make a Good President' in 2008*, Wall St. J., July 11, 2016, *available at* http://www.wsj.com/articles/donald-trump-said-hillary-clinton-would-make-a-good-president-in-2008-1468281714 (last visited Oct. 20, 2016). Any suggestions of political motivation or bias would be irresponsibly inaccurate.

Courts have held that evidence of political affiliation or political contributions are substantially more prejudicial than probative. *See, e.g.*, *Am. Heartland Port, Inc. v. Am. Port Holdings, Inc.*, No. 5:11CV50, 2014 U.S. Dist. LEXIS 88374, at *2-*5 (N.D.W. Va. June 30, 2014) (excluding any evidence regarding plaintiffs' political beliefs pursuant to Rule 402 and Rule 403, finding such evidence "irrelevant to any fact of consequence in this matter, and . . . is of the kind that has the potential to create unfair prejudice with the members of the jury"); *United States v. Rubin/Chambers*, 828 F. Supp. 2d 698, 712-13 (S.D.N.Y. 2011) (holding that evidence related to reimbursements of political contributions should be excluded as they would introduce entirely collateral issues and would "confuse the jury, waste time and contribute nothing to the jury's consideration" of the appropriate issues).

Evidence relating to a trial participant's party affiliations, voting preferences, or political contributions would only serve to confuse or prejudice the jury by opening up extraneous, emotionally-charged issues. Such evidence is not relevant to any issue for trial and should, therefore, be excluded under FRE 402 and 403.

### F. Non-Party Percipient Witnesses Should Be Excluded from the Courtroom

FRE 615 provides that, "[a]t a party's request, the court *must* order witnesses excluded so that they cannot hear other witnesses' testimony." FRE 615. Preventing a witness from hearing the testimony of other witnesses reduces the risk of fabrication, collusion, and inaccuracy. *See* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* §615.02 (2d ed. 2003). The sequestration of percipient witnesses under FRE 615 properly extends to opening statements and closing arguments to fulfill the purpose of promoting truthful testimony free from the

influence of lawyers' remarks and the testimony of others. *See* 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* §339, at 561-62 (2d ed. 1994).

Plaintiffs hereby request that the Court exclude trial witnesses from the courtroom until they are called to testify. *See United States v. Brewer*, 947 F.2d 404, 408 (9th Cir. 1991) (Because Rule 615 states that the court, at the request of a party, shall order witnesses excluded, "'[t]he rule makes the exclusion of witnesses a matter of right and the decision is no longer committed to the court's discretion as it once was.'"); *Venture Corp. v. Barrett*, No. 5:13-cv-03384-PSG, 2015 U.S. Dist. LEXIS 59477, at *9 (N.D. Cal. May 5, 2015) ("At a party's request, the court must exclude witnesses so they cannot hear the testimony of other witnesses.").

## IV. CONCLUSION

For the foregoing reasons, plaintiffs request the Court enter an order confirming the basic ground rules outlined above.

DATED: October 20, 2016

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP

s/ X. Jay Alvarez
X. JAY ALVAREZ

ROBBINS GELLER RUDMAN
 & DOWD LLP
PATRICK J. COUGHLIN
X. JAY ALVAREZ
JASON A. FORGE
RACHEL L. JENSEN
DANIEL J. PFEFFERBAUM
BRIAN E. COCHRAN
JEFFREY J. STEIN
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

|   |   |
|---|---|
| 1 | ZELDES HAEGGQUIST & ECK, LLP |
| 2 | AMBER L. ECK |
| 3 | AARON M. OLSEN<br>225 Broadway, Suite 2050 |
| 4 | San Diego, CA 92101<br>Telephone: 619/342-8000 |
| 5 | 619/342-7878 (fax) |
|   | Class Counsel |

# CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 20, 2016.

s/ X. Jay Alvarez
X. JAY ALVAREZ

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:    jaya@rgrdlaw.com

**Mailing Information for a Case 3:10-cv-00940-GPC-WVG Low v. Trump University, LLC et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Xavier Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick J Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanm@rgrdlaw.com

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,lmix@rgrdlaw.com,llendzion@rgrdlaw.com,e_file_sd@rgrdlaw.com,hbrown@rgrdlaw.com,mbacci@rgrdlaw.com,JayA@rgrdlaw.com,KLavelle

- **David Lee Kirman**
  dkirman@omm.com,awyman@omm.com,tmoore@omm.com,iyanniello@omm.com,hleewong@omm.com,sbrown@omm.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Daniel M. Petrocelli**
  dpetrocelli@omm.com

- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

- **Jeffrey J. Stein**
  JStein@rgrdlaw.com

- **Helen Irene Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)