| | |
|---|---|
| 1 | DANIEL PETROCELLI (S.B. #97802) |
| | dpetrocelli@omm.com |
| 2 | DAVID L. KIRMAN (S.B. #235175) |
| | dkirman@omm.com |
| 3 | O'MELVENY & MYERS LLP |
| | 1999 Avenue of the Stars |
| 4 | Los Angeles, California 90067-6035 |
| | Telephone: (310) 553-6700 |
| 5 | Facsimile: (310) 246-6779 |
| 6 | JILL A. MARTIN (S.B. #245626) |
| | jmartin@trumpnational.com |
| 7 | TRUMP NATIONAL GOLF CLUB |
| | One Trump National Drive |
| 8 | Rancho Palos Verdes, CA 90275 |
| | Telephone: (310) 202-3225 |
| 9 | Facsimile: (310) 265-5522 |
| 10 | Attorneys for Defendant |
| | DONALD J. TRUMP and |
| 11 | TRUMP UNIVERSITY, LLC |

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SONNY LOW et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC et al.,<br><br>Defendants. | Case No. 10-CV-0940-GPC(WVG)<br><br>**[CLASS ACTION]**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE SPECIFIC EVIDENCE OF NON-CERTIFIED ALLEGED MISREPRESENTATIONS**<br><br>**MOTION *IN LIMINE* NO. 1**<br><br>Hearing: November 10, 2016<br>Time: 1:30 p.m.<br>Courtroom: 2d<br>Judge: Hon. Gonzalo P. Curiel |

| | |
|---|---|
| 1 | **TO PARTIES AND THEIR COUNSEL OF RECORD:** |
| 2 | **PLEASE TAKE NOTICE** that on November 10, 2016 at 1:30 p.m., |
| 3 | Defendants Trump University, LLC and Donald J. Trump ("defendants") will and |
| 4 | hereby do move for the exclusion of evidence based on the Court's certification |
| 5 | order, Federal Rule of Civil Procedure 23, and Federal Rules of Evidence 401, 403, |
| 6 | and 404. Defendants believe in good faith that class representative plaintiffs Sonny |
| 7 | Low, Joann Everett, and John Brown ("plaintiffs") intend to offer, during Phase |
| 8 | One of the trial set to begin on November 28, 2016, evidence and argument |
| 9 | concerning alleged misrepresentations other than the two misrepresentations |
| 10 | certified by the Court. |
| 11 | This Motion is made on the grounds that (a) any such evidence is irrelevant |
| 12 | because it has no connection to the three named plaintiffs and it is not one of the |
| 13 | alleged misrepresentations certified by the Court for class treatment; and (b) the |
| 14 | introduction of any such evidence would be substantially prejudicial with little or |
| 15 | no probative value. |
| 16 | This Motion is based on the Notice of Motion, the Memorandum of Points |
| 17 | and Authorities thereto, the files in this action, and additional submissions and |
| 18 | argument as may be presented at or before the hearing on this Motion. |
| 19 | Dated: October 20, 2016     O'MELVENY & MYERS LLP |
| 20 |                                        DANIEL M. PETROCELLI |
| 21 |                                        DAVID L. KIRMAN |
| 22 |                                        By:    /s/ Daniel M. Petrocelli |
| 23 |                                                Daniel M. Petrocelli |
| 24 |                                        Attorneys for Defendants |
| 25 |                                        TRUMP UNIVERSITY, LLC and DONALD J. TRUMP |
| 26 | |
| 27 | |
| 28 | |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As this case nears trial, it is about certain statements plaintiffs allege were (1) made by defendants (2) to five classes of people, (3) in three states, (4) that were false, (5) were relied upon by the three named plaintiffs, (6) were material to a reasonable consumer, and (7) caused injury to each of the three named plaintiffs. Plaintiffs initially sought to certify this case based on a variety of additional alleged statements and conduct. Defendants opposed certification, and demonstrated such statements and conduct were not made uniformly to the class. In response, and to secure class certification, plaintiffs reduced their claims to two "core" alleged misrepresentations—Trump University ("TU") was an "accredited university" and its instructors were "handpicked by Donald Trump." Relying explicitly on that "streamlined" and "simple" case, the Court certified the class. *See* Dkt. 298 at 20.[1]

Plaintiffs now seek to smuggle into the trial *other* alleged misrepresentations not certified by the Court and not otherwise relevant: a TU speaker and/or the sales team allegedly "guaranteed" a student would make his tuition fee back; a TU representative allegedly promised the equivalent of "24/7" mentoring; and an instructor supposedly told students that he had "dinner" with Mr. Trump. These other alleged misrepresentations are outside the scope of the two certified misrepresentations; were not made uniformly to the class; were not made to any of the three class representatives; and would result in protracted and prejudicial inquiries at trial as to whether the representation was made, in what context, whether it was true or false, and if it was material. The Court's certification order, Rule 23, Federal Rules of Evidence 401, 403, and 404, and prudent judicial

---

[1] Plaintiffs withdrew a third certified representation about "mentoring." Dkt. 466 at 4 n.3 ("Consistent with this streamlined approach as laid out at the class certification hearing, plaintiffs do not intend to move forward with the one-year mentoring misrepresentation at trial.").

administration bar plaintiffs from introducing such evidence and converting a specific two-statement certified class into a free-for-all.

## II. THE EVIDENCE AT ISSUE

This motion addresses the following specific evidence (hereinafter "challenged evidence"):

### A. "Guaranteed" Success

Plaintiffs have put forth exhibits and designated deposition testimony that imply that TU "guaranteed" its students financial success to induce them to pay for its courses, such as:

- Plaintiffs' Exhibit 715, which purports to be a transcript of a "Fast Track to Foreclosure" event with James Harris on April 3–5, 2009 in Denver, Colorado wherein he says, "The goal on the first deal is how much? . . . . Now you guys have the folders in front of you, the investment for this Gold Elite program, you have a 100% return on your investment, so whether you put it on credit cards, five of them, ten of them. Cut a check, whatever[.]" Kirman Decl., Ex. 8 (PX 715) at TU 97153.[2]

- Deposition testimony from TU live events coordinator Corinne Sommer, Ex. 76 at 71:22–25; 72:2–22. Ms. Sommer said that she did not "personally guarantee any student that if they took the program, they were going to make X dollars" but stated she heard the sales team say, "'Max out your credit cards because you'll make your money back.'" *Id.* Sommer also testified that she heard sales team tell students that they "would make their money back if they maxed out their credit cards and 'Open as many credit cards as you can.'" *Id.*

### B. Scope of TU Mentorships

Plaintiffs have put forth exhibits and deposition testimony concerning complaints by TU students as to the scope and quality of their mentorships such as:

- Plaintiffs' Exhibit 902, which includes a complaint filed by a former TU student, Steve Krauss with the Better Business Bureau, wherein he states he was "told a mentor would be assigned to [him] and available to [him] via email or telephone 10am-10pm M–F." Ex. 60 (PX 902) at

---

[2] Unless noted, "Ex." refers to exhibits attached to the Kirman Declaration.

000257. Krauss then states that he "did not hear back from [his] mentor for ten days" and that from his perspective, "once you pay your money all contact just seems to stop and there isn't much guidance happening." *Id.*

- Plaintiffs' Exhibit 858, which sets forth a complaint from former TU students Charles and Sonya Wren, wherein they state, "we believed in and trusted the Donald Trump name and joined Trump Initiative to receive 1-YR [sic] of consulting on an as needed basis with a mentor[.]" Ex. 10 (PX 858) at TU-PLTF00714. The Wrens stated that, "when specifically questioned about the details of the 1-YR [sic] Consulting, we were not told the truth." *Id.*

### C. Dinner with Mr. Trump

Plaintiffs have put forth exhibits and testimony concerning statements allegedly made by a TU instructor that he had dinner with Mr. Trump. For example, Plaintiffs' Exhibit 138 purports to be a transcript from an event called "Profit from Real Estate Investing - Free Introductory Class" apparently held on June 17, 2009 in San Juan, Puerto Rico by a TU instructor named Gerald Martin. Ex. 3 (PX 138) at 1. None of the named plaintiffs attended this presentation. Plaintiffs apparently seek to introduce the following statement from page 12 of PX 138:

> "But folks, you know, <u>we had a business dinner the other evening and Donald Trump said</u> that, 'Real estate is the only industry for whom the banks or whom the stores(ph) [sic] have a huge sell [sic].' People want to leave from the store. Why are they running away from the store when they are offering abundance?"

Similarly, PX 758 purports to be a transcript from a live event with a similar statement—only this transcript has no location or date associated with it. *See* Ex. 9 (PX 758). Several other of plaintiffs' exhibits purport to be scripts or versions of PowerPoint presentations for instructors at TU that contain some variant of the statement "we had a business dinner with Donald Trump." *See, e.g.*, Ex. 5 (PX 328) at DT0018227; Ex. 6 (PX 348) at 29; Ex. 7 (PX 353) at DT0054953; Ex. 1 (PX 42) at GOFF00013; Ex. 2 (PX 71) at 27; Ex. 4 (PX 146) at TU-

JORDAN0000115.

Plaintiffs also designated for introduction at trial the deposition testimony of former employees or instructors at TU referencing or discussing these objectionable trial exhibits. For example, plaintiffs designated testimony from:

- Former consultant for TU William Conroy, discussing his involvement in revising a "script" that contains reference to dinner with Mr. Trump. Ex. 75 (Conroy Dep. at 85:12–86:10; 90:10–91:1; 91:2–93:24; 102:4–102:19; 104:21–105:16; 106:9–107:11; 111:8–111:10; 111:17–111:22; 112:4–113:6; 119:13–119:23; 120:5–124:23; 125:7–127:23; 127:24–128:2; 129:5–13).

- Former instructor Gerald Martin wherein he is questioned about the above PX 138, and the statement regarding dinner with Mr. Trump. Ex. 71 (Martin Dep. at 147:19–155:13; 181:21–182:19).

- Former President of Trump University Michael Sexton, discussing the above-mentioned "scripts" containing the statement about dinner with Mr. Trump, and working with Conroy on them. Ex. 77 (Sexton Dep. (5-15-15) at 254:7–255:6; 255:17–256:12; 256:22–261:13).

- Former consultant for TU David Early concerning working with Conroy and Deane Jordan on the aforementioned "scripts." Ex. 73 (Early Dep. (4-21-15) at 194:2–195:2; 216:14–217:2); Ex. 74 (Early Dep. (5-6-15) at 97:6–98:7).

### III. ARGUMENT

The challenged evidence must be excluded from trial because it is irrelevant to the two representations certified for trial; it was not presented to, heard by, or relied upon by any of the class representatives; and its probative value, if any, is vastly outweighed by the prejudice and confusion it will engender and additional time it will consume.

#### A. Irrelevant (FED. R. EVID. 401)

Evidence is relevant if "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. The primary facts of consequence to

be decided in this trial are (generally speaking):

- whether the two certified alleged misrepresentations were made;
- whether the two certified alleged misrepresentations were made uniformly to the class and throughout the class period;
- whether the two certified misrepresentations are actionable;
- whether the two certified misrepresentations are false;
- whether the class members generally (and the class representatives specifically) relied on the two certified misrepresentations;
- whether the two certified misrepresentations were material to a reasonable consumer; and
- whether the three named plaintiffs were injured.

The challenged evidence—which concerns random alleged statements concerning guarantees, mentorships, and dinners—has no tendency whatsoever to make any of these facts more or less probable. Their introduction into the trial would confuse issues and be unfairly prejudicial. Simply put, whether TU instructor James Harris allegedly told one group of would-be Colorado students that if they bought a course, they would see a "100% return on [their] investment," as reflected in PX 715, has no bearing on the named plaintiffs or the certified issues. *See also* Ex. 76 (Sommer Dep. at 71:22–25; 72:2–22). Any alleged promises by a TU speaker that students would definitely recoup their tuition money does not pertain *at all* to whether TU represented it was an accredited university, nor that its instructors, such as Mr. Harris, were "handpicked" by Mr. Trump. Plaintiffs have shown no connection—such as that accredited universities promise that students will make their tuition back, or that persons "handpicked" by Mr. Trump do so.

Similarly, whether TU student Mr. Krauss purchased his mentorship because he was told he would have 10:00 a.m. to 10:00 p.m. coverage does not pertain to any named plaintiff or their experiences, nor is it at all related to any certified issue. Any alleged promises regarding TU's mentorship program or its coverage is not

related to whether a university is "accredited"—one-on-one professional mentorships such as TU's are not even prevalent at so-called "accredited" universities—and the amount of time a mentor promised to spend, or did spend, with a student is not correlated to whether Mr. Trump "handpicked" him or her, under any definition of "handpicked." Further, plaintiffs themselves represented to the Court and to defendants that they did "not intend to move forward with the one-year mentoring misrepresentation at trial." Dkt. 466 at 4 n.3. Having withdrawn the mentoring representation, plaintiffs may not backdoor the subject now.

Finally, whether an instructor told an audience in San Juan, Puerto Rico—a location that is not even part of the classes of California, New York, or Florida—that he and others "had a business dinner the other evening and Donald Trump" told a metaphor about sales at retail stores, as reflected in Ex. 3 (PX 138), has no bearing at all on whether the two certified alleged misrepresentations were made, made uniformly, or made throughout the class period; whether they were true or false; whether the class generally or named plaintiffs specifically relied on the certified alleged misrepresentations; whether they were material.[3] That a TU instructor may have said he had dinner with the company's Chairman is not connected to whether TU is an "accredited" university—there is no relationship between having dinner with a Chairman and being accredited. And whether an instructor boasted of such a dinner, or whether it occurred, does not bear on whether that person, or any other TU instructor or mentor, was "handpicked" by Mr. Trump, either.

Plaintiffs are incorrect that the challenged evidence is relevant "color" that puts the certified "handpicked" representation into proper context. To the best of

---

[3] *See* Dkt. 298 at 35 (granting Plaintiffs' motion for class certification for class and subclass of "[a]ll persons who purchased a Trump University three-day live 'Fulfillment' workshop and/or a 'Elite' program ('Live Events') in California, New York, and Florida, and have not received a full refund, divided into . . . five subclasses[.]").

DEFS.' MOT. *IN LIMINE* TO EXCLUDE
EVIDENCE OF NON-CERTIFIED STMTS.
10-CV-0940-GPC(WVG)

our knowledge, none of the exhibits that are the subject of this motion concerns a presentation given to a named plaintiff. To the extent plaintiffs intend to prove that a supposed "guarantee," "mentorship," or "dinner" statement was made at all, they would need to establish it was made uniformly to the class, something not even plaintiffs claim in good faith.[4]

It is hornbook law that the court's certification order defines and circumscribes the parameters of the class and class claims. *See* FED. R. CIV. P. 23(c)(1)(B); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 597–98 (N.D. Cal. 2015). The Court did not certify any misrepresentation related to any statements a TU instructor may have made regarding guarantees of financial success made to students or having dinner with Donald Trump. This is because any such statements, even if made, were not uniformly made. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006) ("[A] case may be unsuited for class treatment 'if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.'"); *Dufour v. BE LLC*, 291 F.R.D. 413, 423 (N.D. Cal. 2013) (For a claim based on fraudulent misrepresentations, "[t]he class certification dispute for the fraud claims centers on whether [defendant's] alleged misrepresentations were *sufficiently uniform*, which implicates both Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.") (emphasis added).

### B. Highly prejudicial with little substantive value, and improper character evidence (FED. R. EVID. 403, 404)

According to plaintiffs, if an instructor said he went to dinner with Trump— and he did not—the jury could infer that defendants also misled consumers that TU was "accredited" and that Mr. Trump personally "handpicked" every instructor.

---

[4] To the extent plaintiffs seek to introduce these documents for other, permissible reasons, defendants insist they be redacted to remove the content pertaining to the non-certified representations discussed herein.

DEFS.' MOT. *IN LIMINE* TO EXCLUDE
EVIDENCE OF NON-CERTIFIED STMTS.
10-CV-0940-GPC(WVG)

Evidence of this type and for this purpose is inadmissible. *See* FED. R. EVID. 404(a)(1) and (b)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait" and "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *Allen v. City of L.A.*, 2012 WL 1641712, at *3 (C.D. Cal. May 7, 2012) (granting defendants' motion *in limine* under FED. R. EVID. 404(b) and excluding evidence of "personnel complaint investigations, internal affairs investigations and conclusions, prior civil suits involving the officers, and unrelated allegations" to prove liability in case at hand).

Evidence of one-off anecdotes or statements made at certain times—*not even to the named plaintiffs*—is also confusing and unduly prejudicial. *See* FED. R. EVID. 403. Not only will the jury hear evidence about statements not uniformly made or alleged to have caused any harm, but then defendants will be forced to respond to each example by establishing the truth of the statement and/or that students from Colorado, Puerto Rico, and other places did not consider these statements important (material). These are precisely the kind of attenuated, collateral issues that Rule 403 is designed to prevent from introduction at trial. FED. R. EVID. 403 ("probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]"); *Fahmy v. Jay Z*, 2015 WL 5680299, at *15 (C.D. Cal. Sept. 24, 2015) (granting defendants' motion *in limine* to preclude plaintiff from introducing evidence of other allegations made against defendants where "evidence of these prior allegations will result in mini-trials" regarding these "alleged instances" of "unrelated" conduct which will "unduly delay these proceedings and may confuse the jury.").

## IV. CONCLUSION

For the foregoing reasons, the Court should grant this motion and bar plaintiffs from offering evidence or argument, or from eliciting testimony, regarding the challenged evidence.

Dated: October 20, 2016

Respectfully submitted,

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
DAVID L. KIRMAN

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli

Attorneys for Defendants
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP