DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DAVID L. KIRMAN (S.B. #235175)
dkirman@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:   (310) 553-6700

JILL A. MARTIN (S.B. #245626)
jmartin@trumpnational.com
TRUMP NATIONAL GOLF CLUB
One Trump National Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 202-3225

Attorneys for Defendants Trump University, LLC
and Donald J. Trump

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY LOW et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC et al.,<br><br>Defendants. | Case No.  10-CV-0940-GPC(WVG)<br>Judge:  Hon. Gonzalo P. Curiel<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION  TO EXCLUDE EVIDENCE RELATED TO STUDENTS' FINANCIAL CONDITION**<br><br>**MOTION *IN LIMINE* NO. 6.**<br><br>Hearing: November 10, 2016<br>Time:  1:30 p.m.<br>Courtoom: 2d<br>Judge: Hon. Gonzalo P. Curiel |

**PLEASE TAKE NOTICE** THAT ON NOVEMBER 10, 2016 AT 1:30 p.m., Defendants Trump University, LLC and Donald J. Trump ("Defendants") will and hereby do move for the exclusion of evidence based on Federal Rules of Evidence Nos. 401, 402, 403, 801, 802, and 803.  Plaintiffs Sonny Low, Joann Everett, and John Brown ("plaintiffs") intend to offer into evidence during Phase One of the trial set to begin on November 28, 2016 evidence and argument concerning financial condition of former TU students.

This Motion is made on the grounds that evidence related to students' finances is (a) irrelevant to the issues in this case (b) hearsay; and (c) unduly prejudicial and misleading.

This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities thereto, the files in this action, and additional submissions and argument as may be presented at or before the hearing on this Motion.  Defendants ask this Court for an order directing plaintiffs' counsel to caution, warn, and instruct their witnesses to follow the same order.

Dated:  October 20, 2016

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
DAVID L. KIRMAN


By:     /s/ Daniel M. Petrocelli

Attorneys for Defendants
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

## I. INTRODUCTION

This trial is about two specific allegations—that Trump University ("TU") and Donald J. Trump (collectively "defendants") misrepresented on a class-wide basis that TU was an "accredited university" and "students would be taught by real estate experts, professors and mentors hand-selected by Mr. Trump." Dkt. 298 at 4. The ability of individual students to afford the courses they purchased in light of their personal finances, and any evidence of students' efforts to accumulate sufficient funds to purchase TU's products, are irrelevant to the issues in this case. The evidence plaintiffs seek to introduce—*see*, *e.g.*, Kirman Decl., Ex. 101 (PX 702)[1]—also contains inadmissible hearsay. Finally, any marginal probative value from such evidence is substantially outweighed by the undue prejudice and confusion that would result from introducing evidence of students' individual financial circumstances.

## II. EVIDENCE IN DISPUTE

The inadmissible evidence of students' financial condition consists of statements by students regarding their own personal financial problems and any other testimony and evidence referring to individual students' financial circumstances. For example, Exhibit 103 (PX 583) is an email containing the following statement from named plaintiff John Brown: "I have little remaining in savings, and all of my paycheck now goes to pay bills." *Id.* at TU 135715. *See* Appendix A.[2]

## III. ARGUMENT

Pursuant to this Court's certification order—the document which sets the parameters and scope of this case—plaintiffs allege consumer fraud based on two,

---

[1] Unless noted, "Ex." refers to exhibits attached to the Kirman Declaration.

[2] There may be similar exhibits among plaintiffs' other exhibits that fit the parameters of the motion. Defendants reserve the right to object and move to exclude those exhibits and BBB-related testimony at the time of trial.

- 1 -
DEFS.' MOT. IN LIMINE TO PRECLUDE
STUDENTS' FINANCIAL CONDITION
10-CV-0940-GPC (WVG)

and only two, "core" alleged misrepresentations: (1) that TU "was an accredited university" and (2) that "students would be taught by real estate experts, professors and mentors hand-selected by Mr. Trump." Dkt. 298 at 4. The primary facts of consequence to be decided in this phase are (generally speaking): whether the two certified alleged representations were: made uniformly to the class and throughout the class period; actionable; false; relied upon; material; and caused injury to the class. *See, e.g.,Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (UCL, FAL, CLRA); *Wurtz v. Rawlings Co.*, LLC, 2014 WL 4961422, at *8 (E.D.N.Y. Oct. 3, 2014) (N.Y. Gen. Bus. L. § 349); *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed. App'x 565, 567 (11th Cir. 2009) (FDUTPA); *Joseph v. Liberty Nat'l Bank*, 873 So. 2d 384, 388 (2004) (Florida MAL).

Evidence related to former TU students' finances adds nothing to this inquiry. The personal financial condition of individual students who purchased TU products does not tend to prove or disprove any fact pertinent to whether class members were reasonably misled regarding alleged "handpicked" and "accredited university" representations.

### A. Irrelevant (FRE 401)

Evidence that TU students struggled to afford the programs they purchased is not relevant to any element of any cause of action. The state consumer fraud statutes concern false, misleading, or unlawful conduct that led a reasonable consumer to purchase something (Cal. Bus. & Prof. Code § 17200; Cal. Civ. Code § 1750.; N.Y. Gen. Bus. L. § 349; Fla. Stat. § 501.201). California and Florida elder abuse statutes concern the willful and wrongful appropriation of elders' property (Cal. Welf. & Inst. Code § 15610.30; Fla. Stat. § 501.2077(a)).[3] Whether

---

[3] The plaintiffs' financial status is not a consideration or element in determining whether elder abuse has occurred. Under these statutes, an "elder" is simply "any person residing in [California who is] 65 years or older" or any person 60 years of age or older residing in Florida, without reference to financial condition. *See* Cal. Welf. & Inst. Code § 15610.27; Fla. Stat. § 501.2077(a).

a student is rich, middle class, on hard times, or somewhere in between is not relevant to any of those issues.

Plaintiffs' decisions as to how to spend their own money and whether a purchase was wise in the context of their personal finances is merely a prejudicial sideshow.  There are <u>no</u> claims in this case related to the affordability of TU.  Nor are there claims that defendants preyed on low-income students, coerced plaintiffs into making purchases, or guaranteed class members' financial wellbeing and then failed to deliver on that promise.  The jury will decide only whether defendants' advertising with respect to "handpicked" and "accredited" was false or misleading—and the answers to those questions do not change on the basis of individual plaintiffs' financial resources or lack thereof.

To be relevant, evidence must tend to make a material fact more or less probable than it would be without the evidence.  FED. R. EVID. 401.  In the liability phase of this case, whether individual plaintiffs were millionaires or insolvent, their financial status has zero impact on whether they were reasonably misled by the core misrepresentations.

Equally irrelevant is evidence about the plaintiffs' financial issues allegedly flowing from TU's failure to provide the services plaintiffs hoped would ensure their financial stability.  For example, plaintiffs apparently intend to introduce secondhand statements made by individual students to the New York Attorney General's Office and other agencies that their lack of success in real estate after purchasing TU programs resulted in financial hardship.  *See* Ex. 102 (PX 902) at 000339 ("Due to the misrepresentation of real estate deals and believing in unreal expectations … we had to move out of our apartment … my wife lost her job … my job is rocky and hardly making enough to survive.").  This is not relevant to whether the certified alleged misrepresentations were false, misleading, and material to students' decisions to purchase in the first place.

**B.     Prejudice Substantially Outweighs Probative Value (FRE 403)**

Even if evidence of individual plaintiffs' finances were relevant, the prejudicial effect of such evidence and its tendency to confuse and distract the jury make it inadmissible.  *See* FED. R. EVID. 403.  Evidence of plaintiffs' financial hardship would tend to heighten the jury's sympathy for plaintiffs for reasons not relevant to the legal issues at hand, and would erode the crucial distinction between plaintiffs' negative financial experiences and whether they suffered any specific injuries caused by defendants' alleged core misrepresentations.  *See, e.g., Prescott v. CSX Transp., Inc.*, 2013 WL 1192820 (S.D. Ga. 2013) (granting motion *in limine* to exclude evidence "regarding the parties' size, status, wealth, or relative financial conditions" as irrelevant and prejudicial).  Arguments regarding TU's alleged targeting of "poor people" are inflammatory and are intended only to inflame the jury.  Ex. 102 (PX 902) at 000289 ("I think they are just using a famous name to steal poor people's money.").

Evidence regarding individual students' finances would also tend to confuse and mislead the jury in that it would improperly suggest that financial hardship is a class-wide issue.  The existing classes were not certified as to any common personal finance issues, and plaintiffs should be foreclosed from introducing new complaints about TU which have not been vetted for class-wide application.

**C.     Hearsay (FRE 801)**

Plaintiffs no doubt intend to introduce students' statements about their finances in order to demonstrate that TU students were *in fact* financially unstable and to suggest to the jury that TU somehow took advantage of them.  Plaintiffs have no reason to introduce this evidence except to prove the truth of the matter, that certain students were impoverished—an entirely irrelevant and prejudicial consideration, as explained above—and to elicit the jury's sympathy on that basis.  These out-of-court statements introduced for the truth of the matter are hearsay and in some cases double hearsay, and no exception applies:

TU's Internal Student Records. Certain exhibits on plaintiffs' exhibit list consist of internal TU records of communications between employees and students. For example, Exhibit 101 (PX 702) contains a record of communications between TU employees and Joanne Moniz, in which various authors paraphrase their phone conversations with Ms. Moniz. Even if the record itself (and other student records) might qualify as an opposing party statement under Rule 801(2), as plaintiffs will presumably argue, the content of the record is hearsay within hearsay. The records convey not just the author's out-of-court statements (first level of hearsay), but the students' statements (second level of hearsay), as interpreted by the author. *See, e.g.*, Ex. 101 (PX 702) ("Student claims she called James Harris … student did not feel confident about being able to afford this program.") Plaintiffs must be prohibited from introducing this unreliable evidence to prove that students were impoverished either before or because of their purchase of TU programs.

Statements By Non-Class Representatives. The hearsay problem is particularly egregious in cases where the plaintiffs seek to introduce out-of-court statements by a class member about his or her finances where the declarant is not a class representative, not a trial witness, cannot be cross-examined, and was not deposed. *See*, *e.g.*, *Boddicker v. Am. Honda Motor Co.*, 2011 WL 6132099, at *4 (N.D. Iowa Dec. 8, 2011) ("Even if the documents constitute business records, the complaints described on the documents are themselves hearsay. That is, none of the complainants have been identified as witnesses and, therefore, are unavailable for cross-examination regarding the truth of the allegations.") (emph. omitted); *Escoto v. Miller*, 2014 WL 2112037, at *8 (C.D. Cal. May 14, 2014) ("complaint letter constituted inadmissible hearsay"). For example, Exhibit 102 (PX 902) contains a complaint by a former TU student to the Consumer Sentinel Network stating that after purchasing TU classes, she is "now receiving section 8 housing and living on [Social Security]." *Id.* at 000357. Such out-of-court statements are unreliable and one-sided, which is precisely what the hearsay rule is meant to prevent.

## IV. CONCLUSION

Evidence about a student's financial situation is not relevant to determining defendants' liability in Phase 1 of this case. Introduction of individualized personal hardships, in contrast, will have an irrevocable prejudicial impact on the jury's determination of the claims in this case. Defendants respectfully request that the Court exclude irrelevant, misleading, and highly prejudicial documents and testimony related to individual students' financial situations.

Dated: October 20, 2016

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
DAVID L. KIRMAN

By:    /s/ Daniel M. Petrocelli

Attorneys for Defendants
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

## **APPENDIX A**

1. **Ex. 103 (PX 583)** (Email string from Jason Schauer to Tiffany Brinkman re Mentor guidebook, PDF)
2. **Ex. 101 (PX 702)** (Contact Notes for Joanne Moniz)
3. **Ex. 102 (PX 902)** at 000357 (Verified Petition and Exhibits A-JJ to the Affirmation of Assistant Attorney General Tristan C. Snell)
4. **Ex. 104** at 663:3–25; 666:10–13 (Excerpts of the April 13, 2012 Deposition of Tarla Makaeff).