DANIEL M. PETROCELLI (S.B. #97802)
dpetrocelli@omm.com
DAVID L. KIRMAN (S.B. #235175)
dkirman@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:   (310) 553-6700
Facsimile:   (310) 246-6779

JILL A. MARTIN (S.B. #245626)
jmartin@trumpnational.com
TRUMP NATIONAL GOLF CLUB
One Trump National Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 202-3225
Facsimile: (310) 265-5522

Attorneys for Defendants Trump University, LLC and Donald J. Trump

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY LOW et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC et al.,<br><br>Defendants. | Case No.  10-CV-0940-GPC(WVG)<br><br>**[CLASS ACTION]**<br><br>**DEFENDANTS TRUMP UNIVERSITY'S AND DONALD J. TRUMP'S MOTION TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO: (1) NEW YORK EDUCATION LAW;(2) NEW YORK STATE EDUCATION DEPARTMENT; AND (3) NEW YORK ATTORNEY GENERAL CASE**<br><br>**MOTION *IN LIMINE* NO. 5**<br><br>Trial Date: Nov. 28, 2016<br>Time:           1:30 p.m.<br>Courtroom: 2d<br>Judge:  Hon. Gonzalo P. Curiel |

**PLEASE TAKE NOTICE** that on November 10, 2016 at 1:30 p.m., Defendants Trump University, LLC and Donald J. Trump ("Defendants") will and hereby do move for the exclusion of evidence and argument based on the Court's certification order and Federal Rules of Evidence 401, 403, 701, and 802.  Plaintiffs have identified numerous exhibits and designated witnesses and testimony related to the New York State Education Department ("NYSED"), its communications with defendants about New York licensing requirements, and an enforcement action brought by the New York Attorney General ("NYAG") concerning the same subject matter.

This Motion is made on the grounds that all such evidence and argument (1) is not probative on any issue before the jury; (2) is unduly prejudicial and risks confusing the issues and wasting time; (3) is improper opinion testimony; and (4) is inadmissible hearsay not falling within an exception to the hearsay rule.

This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities thereto, the files in this action, and additional submissions and argument as may be presented at or before the hearing on this Motion.

Dated:  October 20, 2016

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
DAVID L. KIRMAN

By:     /s/ Daniel M. Petrocelli
Daniel M. Petrocelli

Attorneys for Defendants
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case was certified as a class action based on two "core" affirmative representations—that Trump University was an "accredited university" and its instructors were "handpicked by Donald Trump."[1] Four months ago, plaintiffs asked the Court to modify its certification order to include a new theory: [a] the State of New York requires a license to utilize the word "university" in a business name; [b] defendants knowingly "violated" the New York regulation; and [c] defendants failed to disclose their violation to the class. According to plaintiffs, contrary to the certification order itself, this case was actually about defendants' alleged "fraudulent omission that they used the university name illegally and in defiance of the New York State Education Department directive." Dkt. 488 at 14; Dkt. 489-1 at 4-6 ("concealed unlawfulness of defendants' use of the term 'university'"). The Court denied plaintiffs' motion as untimely. Dkt. 506 at 9.

Blocked from modifying the scope of the case directly, plaintiffs are now trying to do so indirectly by smuggling into this trial extraneous evidence and argument that—in plaintiffs' own words from their recently-submitted pretrial conference order—establish that "the New York State Education Department had warned Trump that it was unlawful to use the 'university' title, but he continued doing so." Kirman Decl. Ex. 90 (Plaintiffs' proposed pretrial order at 1).[2]

This is improper. The evidence and argument identified in this motion must be precluded for the following independent reasons:

1.    <u>Violates Court Order</u> | <u>Exceeds Scope of Certification</u>. The Court's certification order set the parameters of this case. Plaintiffs tried to modify it. The

---

[1] Plaintiffs withdrew a third certified representation about "mentoring." Dkt. 466 at 4 n.3 ("Consistent with this streamlined approach as laid out at the class certification hearing, plaintiffs do not intend to move forward with the one-year mentoring misrepresentation at trial.").

[2] Unless noted, exhibits are attached to the Kirman Declaration.

Court said no. Plaintiffs cannot do indirectly what the court directly prohibited.

2. <u>Irrelevant</u>. Whatever licensing requirements the State of New York might impose on a business that operates in New York and uses the word "university" in the title are irrelevant to any issue in this case. None of the regulations, correspondence about the regulations, or the New York Attorney General's views about them tends to prove or disprove that defendants made a "false" or "misleading" representation about being an "accredited university."

Outside of New York, the New York State Education Department ("NYSED") is not the authority or arbiter of what "university" means and when, where, and how it can be used. More than 40 other states have no licensing restriction on the use of the term "university." Moreover, even in New York, the existence of a regulation is not relevant unless the class members knew about it and factored it into their decision-making. *See Mason v. Coca Cola*, 774 F.Supp.2d 699 (D.N.J. 2011). Here, there is no evidence that any of the class representatives or other class members knew about it.

3. <u>Improper Importation of Foreign State Law</u>. Plaintiffs' attempt to "import" an alleged violation of New York licensing law into the "unlawful" prong of California's Unfair Competition claim has been rejected. The "law" for the "unlawful" prong of the UCL must be California or federal law, not the law of another state. *Hilton v. Apple Inc.*, 2014 WL 10435005, at *3 (C.D. Cal. Apr. 18, 2014) (UCL claim cannot be "based on the violation of foreign [state's] law.")

4. <u>Improper Lay Opinion and Hearsay</u>. Parts of the "New York evidence" must also be excluded because they contain inadmissible hearsay and the non-expert opinion of a single state employee about what the state law means and how it should be interpreted.

5. <u>Unduly Prejudicial</u>. Extreme confusion, waste of time, and prejudice will occur if plaintiffs veer this case toward a determination of whether defendants needed a license in New York, how the absence of such a license affected decision-

1 making, what other states do—or do not do—with respect to the term "university."

2 **II.    PERTINENT BACKGROUND | EVIDENCE AT ISSUE**

TU launched in 2005.  Shortly thereafter, an employee of the NYSED named Joseph Frey sent a letter to TU expressing his opinion that, based on a review of TU's press release, TU required a license to operate in New York.  *See* Ex. 26 (PX 2).  For three months, Frey and Michael Sexton, the President of TU, corresponded about New York's licensing requirements.  Ex. 33 (PX 81), 44 (PX 381).  TU operated openly and continuously in New York during the class period, until it changed its name to Trump Entrepreneurial Initiative ("TEI") in May 2010.

In March 2009, a former TU student named Carmen Mendez, who is not a class representative, not a trial witness, and was not deposed, submitted a letter to the NYSED claiming "she did not get the assistance that was promised" and "she thought Trump was a real university."  Ex. 27 (PX 43) at NYSED 000067, 45 (PX 383).  NYSED and TU exchanged correspondence and, years later, the New York Attorney General brought an enforcement action related to the licensing requirements.  The proceedings are ongoing but the trial court ruled in favor of TU on statute of limitations grounds with respect to Education Law § 224—the "university" part of the action.[3]  Plaintiffs seek to introduce into evidence:

- Internal TU correspondence and correspondence between a NYSED regulator and TU about what steps TU should take to use the word "university", *see* Ex. 26, 28-30, 31, 33-34, 35, 36, 37-39, 43-44, 46, 47, 48-49, 50, 51-52, 54, 55;

- Complaints from NY students—who were not deposed or designated as a trial witness—to the NYSED, *see* Ex. 27, 40-41, 42, 52, 53, 88;

- Testimony of Joseph Frey, a NYSED employee who sent and received the communications; and

---

[3] On appeal, the New York Appellate Division affirmed the dismissal of the Education Law § 224 claim as untimely.  The Appellate Division, however, also affirmed the trial court's entry of summary judgment against TEI under Education Law section 5001 for failing to obtain a license. *See Matter of People v. Trump Entrepreneur Initiative, LLC*, 2016 NY Slip. Op. 01430, (March 1, 2016).  On May 24, 2016, the New York's Court of Appeals granted certiorari to review the Appellate Division's opinion.

- 3 -

DEFS.' MOT. *IN LIMINE* TO EXCLUDE
EVIDENCE AND ARGUMENT RE: NYSED
10-CV-0940-GPC(WVG)

- Pleadings, court decisions, and other "evidence" related to allegations made by the New York Attorney General ("NYAG") that TU operated in New York without a license, *see* Ex. 56, 57-65, 66, 67, 70.

## III. EVIDENCE OF THIS COLLATERAL ISSUE MUST BE EXCLUDED.

### A. Violates the Court's Order | Exceeds Scope of Certification.

In June 2016, as discovery confirmed defendants did not misrepresent TU's accreditation status, plaintiffs filed a motion seeking to expand the "accredited university" misrepresentation to include a fraudulent omission theory based on TU's purported violation of New York licensing law. *See* Dkt. 489 at 4–6; *see also* Dkt. 488 at 14. Although the Court rejected this attempt, Dkt. 506, plaintiffs continue to attempt to advance the argument that New York defines "university," Trump University did not meet the criteria set by New York, defendants were told they did not meet the requirements, but they proceeded anyway without disclosing to consumers they were operating in violation of the law. Kirman Decl. Ex. 90 (Plaintiffs' proposed pretrial order).

This is exactly the theory plaintiffs asserted in their rejection motion to modify the scope of trial. There is no basis to reconsider that ruling and certainly no basis to do so *sub silentio* or indirectly through introduction of evidence to support a theory that is not part of this case. Dkt. 506 at 9. *See* also *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 254 (6th Cir. 2012) ("Fraud by omission is not the same, at law, as fraud by misrepresentation, and has substantially different elements.").

### B. Irrelevant and Improper Legal Opinion (FRE 401, 701).

Evidence is relevant only if it has tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED. R. EVID. 401. The NYSED issues are not probative to prove—or disprove—any class-wide issue in this case.

1. **Class Members Did Not Know of Regulation.** The NYSED issues

are irrelevant because there is no evidence demonstrating that class members in California, Florida, or New York knew about or relied upon New York's licensing requirements. Under plaintiffs' theory, an allegation that a company violated a state's licensing requirement can be used to help prove that a company name was "false" or "misleading," even though the reasonable consumer had no idea the law existed. Courts reject similar attempts to reverse engineer a consumer fraud case without <u>connecting</u> the class to the regulation through uniform knowledge.

In *Mason v. Coca Cola*, for example, plaintiffs argued that Coca Cola cans containing the word "Plus" and the language "Diet Coke with Vitamins and Minerals" misled consumers because they violated FDA regulations. 774 F.Supp.2d at 701. The court disagreed:

> [N]ot every regulatory violation amounts to an act of consumer fraud. It is simply not plausible that consumers would be aware of FDA regulations regarding "nutrient content" and restrictions on the enhancement of snack foods. The distinction is a fine but important one. The complaint does not allege that consumers bought the product because they knew of and attributed something meaningful to the regulatory term "Plus" and therefore relied on it. *Id. at* 705 n.4.

*cf. Mosley v. Pena*, 100 F.3d 1515, 1518 (10th Cir. 1996) (rejecting tolling argument based on EEOC regulation because "plaintiff does not claim to have relied upon the C.F.R. sections she cites"). Compliance or lack of compliance with the NYSED regulation has no bearing on whether consumers were misled because there is no evidence that the class representatives—including California and Florida—knew about the regulation at the time they purchased TU services.

2. **Inadmissible legal opinions.** What one state regulator or its employee believed TU's "university" moniker conveyed does not create a uniform standard for California, New York, Florida, or the other states across the country. Like other agencies, the NYSED may require businesses operating in New York to obtain certificates if they want to do or say certain things, but those regulations do not define the word "university" for purposes of consumer laws, including what a

1  reasonable consumer might understand.

2      Indeed, New York is an outlier; a majority of states—including California
3  and Florida—do not restrict the use of term "university."  California prohibits only
4  a few words related to the highly-regulated banking and insurance fields (*e.g.*,
5  "bank," "trust," "insurer," etc.).  *See* Cal. Corp. Code § 17701.08(b), (e).  Florida
6  also does not proscribe use of "university." Fla. Stat. Ann. § 605.0112(c–d); *see*
7  *also* Del. Code Ann. tit. 6, § 18-102 (only "'bank,' or any variation thereof");
8  Arizona Rev. Stat. 29-602 (prohibiting "'bank', 'deposit', 'credit union', 'trust' or
9  'trust company'"); *see also* Iowa Code Ann. § 489.108(1) (no word restriction);
10 Indiana Code Ann. 23-18-2-8 (same).  Not only are New York's licensing
11 requirements irrelevant to what reasonable consumers understood and believed, the
12 jury's consideration of the evidence would require defendants to offer rebuttal
13 evidence relating to the many other states that do <u>not</u> regulate or restrict
14 "university" during the class period and jury instructions regarding the same.

15     Moreover, testimony of a lay witness in the form of opinions or inferences is
16 limited to those opinions or inferences which are (a) rationally based on the
17 perception of the witness, (b) helpful to a clear understanding of the witness'
18 testimony or the determination of a fact in issue, and (c) not based on scientific,
19 technical, or other specialized knowledge within the scope of Rule 702.  FED. R.
20 EVID. 701.  Rule 701 prevents parties from evading Rule 702's expert reliability
21 requirements "through the simple expedient of proffering an expert in lay witness
22 clothing." FED. R. EVID. 701 Advisory Committee Notes.  *United States v. White*,
23 492 F.3d 380, 403-404 (6th Cir. 2007), illustrates application of the rule.  There,
24 despite Medicare witnesses personal knowledge of the facts and helpful testimony,
25 the court held that the district court erred in admitting the testimony because their
26 testimony relied "to a significant degree on specialized knowledge acquired over
27 years of experience as Medicare auditors." *Id.*

28     The same applies here.  Joseph Frey opined during his deposition that NY

licensing law applied to TU and TU violated it. He also believed that TU misled consumers by calling itself "Trump University." Ex. 72 at 75:2-76:10 ("some consumers . . . will believe that [TU] is a university" because Mr. Trump "[compared it] to other schools"); *id.* at 33:14-39:11 (testifying about the legal requirements of New York Education Law). But Frey is not a designated expert in this case, and his opinions cannot be smuggled into the trial. Plaintiffs did not notice Frey as an expert in consumer marketing, they did not establish he is qualified to render an opinion about misleading advertising, and they certainly didn't prove Frey's opinions were "the product of reliable principles and methods." Fed. R. Civ. P. 702. Rather, Frey conceded in his deposition that his opinions were based on his extensive experience working for the NYSED, Ex. 72 at 39:25; 75:12-76:25. Accordingly, his testimony is improper under Rule 701. The same is true of the exhibits plaintiffs seek to introduce opinion on the issue. *See, e.g.*, Ex. 27.

Plaintiffs' description of Frey's anticipated—"[i]t is unlawful for [TU] to use the title 'university' because it did not qualify as [sic] 'university'" (Ex. 89, Ex. 1 at 1)—underscore that it is an impermissible legal opinion which could invade the province of the jury. *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012) ("matters of law are inappropriate" subjects for opinion testimony).

**C.    Unduly Prejudicial, Confusing, Waste of Time (FRE 403).**

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of … undue prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). Such is the case here:

- **NYDOE issues are now being adjudicated in New York.** Litigating them here will result in a highly-technical trial within a trial concerning issues of a New York regulatory scheme on appeal in New York's highest court. Any harm caused by TU's licensing violation will be remedied in New York.

- **NYDOE issues require introduction of other states' laws.** The jury would be also required to evaluate conflicts and extraterritorial application of the laws.

- **NYDOE issues require evidence relating to various legal questions:** applicability of the NYDOE law to TU, disclosure obligations, estoppel, statute of limitations, conflicts of laws, extraterritorial application of NY law, New York civil and appellate procedure.

- **NYDOE issues will require fact finding on many other issues:** the meaning of Frey's letter; the meaning of terms such as "physical presence" under the NYSED; corporate custom and practice of using fictitious names and addresses for certain purposes; whether TU complied or attempted to comply with the Frey letter in good faith; why Frey delayed four years from taking any action against TU; whether there are any political motivations for the NYAG's action.

- **Undue weight to NYDOE employee and issues.** Evidence of action by New York agencies may lead the jury to abandon its role as factfinder and give undue weight to the irrelevant but highly prejudicial testimony. *See Rambus, Inc. v. Infineon Tech. AG*, 222 F.R.D. 101 (E.D. Va. 2004) (excluding from a patent infringement suit factual findings made by an ALJ in a parallel FTC case because it would become the "central focus of its trial presentation," jurors would give "undue weight" to findings of ALJ, and the findings were "preliminary in nature," which "casts doubts upon its trustworthiness."); *Lewis v. City of Chicago*, 563 F. Supp. 2d 905, 920 (N.D. Ill. 2008), *aff'd sub nom. Lewis v. City of Chicago Police Dep't*, 590 F.3d 427 (7th Cir. 2009) (affirming district court's exclusion of evidence under Rule 403 because "[t]his evidence created an undue risk of confusion in that the jury might simply adopt the result of the internal investigation rather than come to its own conclusion after hearing all the evidence"); *U.S. v. Cook*, 557 F.2d 1149 (5th Cir. 1977) (unfairness of admitting evidence from other litigation] lies in the danger of jurors being *unable to consider them only for the specific purpose for which they were created*.)

**F.     The NYSED issues contains layers of inadmissible hearsay.**

Much of the proffered evidence contains inadmissible hearsay. *See* FED. R. EVID. 801(c). Written complaints by former TU student, Carmen Mendez, who is not trial witness, and was not deposed, are inadmissible. *Boddicker v. Am. Honda Motor Co.*, 2011 WL 6132099, at *4 (N.D. Iowa Dec. 8, 2011) ("Even if the documents constitute business records, the complaints described on the documents are themselves hearsay. That is, none of the complainants have been identified as witnesses and, therefore, are unavailable for cross-examination regarding the truth of the allegations."); *Escoto v. Miller*, 2014 WL 2112037, at *8 (C.D. Cal. May 14, 2014) ("complaint letter constituted inadmissible hearsay").

**D.     New York Law Cannot Serve as the Predicate for a UCL Violation.**

Violations of a foreign state's law cannot serve as the predicate act for

1  establishing liability under California's UCL. *Hilton*, 2014 WL 10435005, at *3
2  ("California law does not permit … a UCL claim based on the violation of foreign
3  law."). Other courts agree. *Van Slyke v. Capital One Bank*, 2007 U.S. Dist. LEXIS
4  82690, at *40–42 (N.D. Cal. Nov. 7, 2007) ("No decision, however, has been found
5  that allows a plaintiff to import either statutes or precedent from another state as an
6  unlawful business practice."); *McDermott v. Cummins, Inc.*, 2016 WL 3287335, at
7  *4 (D.N.J. June 7, 2016) ("Plaintiffs' other claims . . . that are brought under the
8  laws of other states cannot be used to support a claim under California's UCL.").

In *Hilton*, plaintiffs attempted to rely on the "unlawful" prong of the UCL by alleging that defendant's product violated the FDUTPA—a theory that the court noted at the outset was "devoid of legal precedent" and "misconstrue[d] the scope of the UCL." 2014 WL 10435005, at *3. While the UCL's language is "broad, no courts have allowed a plaintiff to import either statutes or precedent from another state as an unlawful business practice," and "allowing a plaintiff to do so would raise significant due process problems." *Id*. (citation omitted). *Van Slyke*—another district court within the Ninth Circuit—also considered and rejected plaintiffs' argument that "the Unfair and Deceptive Practices Acts statutes of other states . . . can be borrowed as the basis of an unlawful practice claim." 2007 U.S. Dist. LEXIS 82690, at *40–42. The court reasoned that absent a "clear directive from above, [the court] declines to borrow precedent or statutes from *other states*" because California's unfair competition law was not intended "to avenge every shady business practice across the country." *Id.*(emphasis added).

Despite this authority, plaintiffs argue that California consumers should be awarded full refunds because TU purportedly violated a New York regulation that is unknown to California consumers is currently being adjudicated in New York. But plaintiffs' case—*Chavez v. Blue Sky National Beverage Co.*, 2011 U.S. Dist. LEXIS 109738 (N.D. Cal. Sept. 27, 2011)—is inapposite. *Chavez* involved allegations that the defendant violated California and *federal law*, not the law of

another state. *See* 2011 U.S. Dist. LEXIS 109738, at *18–19.

Plaintiffs also previously cited *Process Specialties, Inc. v. Sematech, Inc.*, 2001 U.S. Dist. LEXIS 26261 (E.D. Cal. Nov. 8, 2001). *Process Specialties* is an unpublished outlier that is contrary to three subsequent published cases and was, by its terms, limited to its unique facts. Further, its analysis was based on a generic policy—the broad nature of the UCL—that has been limited by the California Supreme Court where there are extraterritorial issues. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (courts should not apply the UCL to "occurrences outside the state" without clear guidance from the legislature).[4]

## IV. CONCLUSION

Defendants respectfully request that the Court grant this motion and exclude all evidence, witnesses, and argument related to the NYSED.

Dated: October 20, 2016

Respectfully submitted,

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
DAVID L. KIRMAN

By:  /s/ Daniel M. Petrocelli
   Daniel M. Petrocelli

Attorneys for Defendants
TRUMP UNIVERSITY, LLC and
DONALD J. TRUMP

---

[4] Plaintiffs proposed pretrial order assert without support that: "Violations under the unlawful prong include the FTC Act, 15 U.S.C. §57b; Cal. Civ. Code §§1572 (actual fraud), 1573 (constructive fraud), 1709, and 1710 (deceit), 1750 et seq. (the CLRA); Cal. Bus. & Prof. Code §17500 (false advertising); Cal. Welf. & Inst. Code §15600 (elder abuse); N.Y. Gen. Bus. Law §349; and N.Y. Educ. Law §§224, 5001." Ex. 90 at 3 n.3. Defendants dispute that any of these laws are the appropriate basis for a UCL claim or properly before the Court.