1   DANIEL M. PETROCELLI (S.B. #97802)
    dpetrocelli@omm.com
2   DAVID L. KIRMAN (S.B. #235175)
    dkirman@omm.com
3   O'MELVENY & MYERS LLP
4   1999 Avenue of the Stars
    Los Angeles, California  90067-6035
5   Telephone:  (310) 553-6700

6   JILL A. MARTIN (S.B. #245626)
7   jmartin@trumpnational.com
    TRUMP NATIONAL GOLF CLUB
8   One Trump National Drive
    Rancho Palos Verdes, CA 90275
9   Telephone: (310) 202-3225

10  Attorneys for Defendants Trump University,
    LLC and Donald J. Trump
11

12              **UNITED STATES DISTRICT COURT**

13             **SOUTHERN DISTRICT OF CALIFORNIA**

14  SONNY LOW et al., on Behalf of          Case No.  10-CV-0940-GPC(WVG)
    Themselves and All Others Similarly     Judge:  Hon. Gonzalo P. Curiel
15  Situated,
                                            **CLASS ACTION**
16
                    Plaintiffs,             **DEFENDANTS' MOTION  TO**
17                                          **EXCLUDE EVIDENCE**
18  v.                                      **RELATED TO BETTER**
                                            **BUSINESS BUREAU**
19  TRUMP UNIVERSITY, LLC et al.,           **COMPLAINT RESOLUTION**
                                            **PROCESS, RATINGS, AND**
20                  Defendants.             **MEMBERSHIP APPLICATIONS**
21
                                            **MOTION *IN LIMINE* NO. 4.**
22
23                                          Hearing: November 10, 2016
                                            Time:  1:30 p.m.
24                                          Courtoom: 2d
                                            Judge: Hon. Gonzalo P. Curiel
25
26
27
28
                                                DEFS.' NOT OF MOT. IN LIMINE TO
                                                PRECLUDE BBB-RELATED EVIDENCE
                                                10-CV-0940-GPC (WVG)

1        **PLEASE TAKE NOTICE** THAT ON NOVEMBER 10, 2016 AT 1:30

2 p.m., Defendants Trump University, LLC and Donald J. Trump ("Defendants") will

3 and hereby do move for the exclusion of evidence based on Federal Rules of

4 Evidence Nos. 401, 402, 403, 701, 801, 802, and 803.  Plaintiffs intend to offer into

5 evidence during Phase One of the trial set to begin on November 28, 2016 evidence

6 and argument concerning: The Better Business Bureau's ("BBB") ratings of Trump

7 University, LLC ("TU"), its evaluation of TU for membership in the BBB,

8 complaints filed with the BBB against TU, and communications regarding the

9 same.

10        This Motion is made on the grounds that (a) BBB-related evidence is

11 irrelevant to the issues in this case (b) it constitutes improper lay opinion testimony;

12 (c) it is hearsay; and (d) it is confusing, wasteful, and prejudicial.

13        This Motion is based on the Notice of Motion, the Memorandum of Points

14 and Authorities thereto, the files in this action, and additional submissions and

15 argument as may be presented at or before the hearing on this Motion.  Defendants

16 ask this Court for an order directing plaintiffs' counsel to caution, warn, and

17 instruct their witnesses to follow the same order.

18

19

20

21

22

23

24

25

26

27

28

1        This Motion is based on this Notice, the Memorandum of Points and

2   Authorities filed herewith, Federal Rules of Evidence 401, 402, 403, and 802, the

3   Court's file in this action, and any other such matters as may be presented by

4   defendants at the hearing on this motion.

5

6        Dated:  October 20, 2016

    O'MELVENY & MYERS LLP
    DANIEL M. PETROCELLI

7       DAVID L. KIRMAN

8

9       By:    /s/ Daniel M. Petrocelli

10

11      Attorneys for Defendants
    TRUMP UNIVERSITY, LLC and

12      DONALD J. TRUMP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.     INTRODUCTION**

2            This Court certified two allegations that are proceeding to trial—that

3    defendants Trump University ("TU") and Donald J. Trump misrepresented on a

4    class-wide basis that TU was an "accredited university" and that "students would be

5    taught by real estate experts, professors and mentors hand-selected by Mr. Trump."

6    Dkt. 298 at 4.  Going far beyond these specific allegations, plaintiffs seek to

7    introduce more than 30 exhibits related to the Better Business Bureau's ("BBB")

8    membership, ratings, and complaint resolution processes, as proof of general

9    wrongdoing or bad business practices by TU.  These exhibits and proposed

10   testimony include unverified hearsay complaints from a handful of students, the

11   BBB's notes about the complaints, and documents concerning the BBB's decision

12   not to grant TU member status.

13           None of this evidence is relevant.  All of it is prejudicial to defendants.

14   Plaintiffs do not claim TU falsely represented it was a member of BBB.  TU is not

15   on trial for general business practices, and even if it were, the BBB's opinions on

16   the matter would be irrelevant.  Whether someone at the BBB determined that TU

17   did or did not meet the BBB's internal, non-legal "pillars" of superior business

18   practices is entirely irrelevant to the question whether defendants may be found

19   liable under California, Florida, and New York statutes for specific allegations

20   having nothing to do with the BBB.  The proposed exhibits are also rife with

21   multiple hearsay and are inadmissible for the truth.  And if offered not for the truth,

22   they have no probative value.

23           Finally, any marginal probative value is substantially outweighed by the

24   confusion, undue prejudice, and waste of time that inevitably will occur if plaintiffs

25   are permitted to try the "BBB case."  Defendants will be forced to challenge each

26   customer complaint and the BBB's reasons for denying TU membership.

27   **II.    EVIDENCE IN DISPUTE**

28           The inadmissible BBB evidence consists of a group of trial exhibits and the

- 1 -

DEFS.' MOT. IN LIMINE TO PRECLUDE
BBB-RELATED EVIDENCE
10-CV-0940-GPC (WVG)

1    testimony of a BBB representative named Claire Rosenzweig.  *See* Appendix A.[1]

2    The evidence falls in two categories:

3    **(1) Documents and Testimony Related to BBB Dispute Resolution**

4    **Process**.  This category includes a handful of former TU students' complaints filed

5    with the BBB; the BBB's letters notifying TU about each received complaint; TU's

6    responses to the BBB's notification letters; and further correspondence between

7    TU, the BBB, and former students referencing these complaints.

8        None of the named plaintiffs submitted complaints to BBB.  None of the

9    correspondence is to or about the named plaintiffs.  None of the complaints

10   concerns allegations that TU misrepresented being an "accredited university" or

11   that instructors had not been "handpicked" by Trump.  And the complaints are not

12   uniform.  Rather, documents on plaintiffs' exhibit list contain complaints regarding

13   a variety of issues: (1) mentor resigned midway through mentorship, Kirman Decl.

14   Ex. 60[2] (PX 902) at 00230, Gaudey BBB Compl.); (2) "their smooth talker Don

15   Rud [said] confidently that this [good] results will be a no-brainer to achieve in

16   short period of time" (*id*. at 00170, Andreev BBB Compl.); (3) failure to offer

17   documentation for owner financing (*id*. at 00178, Arroyave BBB Compl.); (4)

18   dissatisfaction with content (*id*. at 00184, Benabib BBB Compl.); and (5) lack of

19   responsiveness by mentors (*id*. at 00261, Krauss BBB Compl.).

20       **(2) Documents and Testimony Related to BBB Ratings and Membership**.

21       This category includes references to the BBB's ratings of TU and TU's

22   applications for membership in the BBB.  None of these documents or testimony

23   concerns the named plaintiffs, or the "handpicked" representation or, to our

24   knowledge, deals with any elder issues.  One document—PX 943 at TU 137017—

25

26   [1] There may be similar exhibits among plaintiff's other 962 exhibits that fit the

27   parameters of the motion. Defendants reserve the right to object and move to
     exclude those exhibits and BBB-related testimony at the time of trial.

28   [2] Unless noted, "Ex." refers to exhibits attached to the Kirman Declaration.

DEFS.' MOT. IN LIMINE TO PRECLUDE
PRECLUDE BBB-RELATED EVIDENCE
10-CV-0940-GPC (WVG)

1  reflects the BBB asking TU to explain an alleged statement on the TU website that

2  it was "accredited," and we address that exhibit specifically below.[3]

3  **III.   ARGUMENT**

4        This case is <u>not</u> a referendum on TU's business practices.  Instead, pursuant

5  to this Court's certification order—the document which sets the parameters and

6  scope of this case—plaintiffs allege consumer fraud based on two, and only two,

7  "core" alleged misrepresentations: that TU "was an accredited university" and

8  "students would be taught by real estate experts, professors and mentors hand-

9  selected by Mr. Trump."  Dkt. 298 at 4.  The primary facts of consequence to be

10  decided at trial are (generally speaking): whether the two certified alleged

11  representations were made uniformly to the class and throughout the class period;

12  actionable; false; relied upon; material; and caused injury.  *See, e.g., Williams v.*

13  *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (UCL, FAL, CLRA); *Wurtz*

14  *v. Rawlings Co.*, LLC, 2014 WL 4961422, at *8 (E.D.N.Y. Oct. 3, 2014) (N.Y.

15  Gen. Bus. L. § 349); *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 Fed.

16  App'x 565, 567 (11th Cir. 2009) (FDUTPA); *Joseph v. Liberty Nat'l Bank*, 873 So.

17  2d 384, 388 (2004) (Florida MLA).

18        Evidence about the BBB's ratings, membership applications, and complaint

19  resolution process adds nothing to this inquiry.  The BBB applies its own set of

20  business standards to determine membership and ratings, and none of the consumer

21  complaints refers to either alleged misrepresentation.  Instead, such evidence

22  merely creates the misconception that an official-sounding organization—the

23  BBB—already concluded TU is liable.

24

25

26  [3] Defendants have provisionally included additional BBB-related documents on

27  their trial exhibit list in order to facilitate a response to plaintiffs' evidence and
argument on this topic.  To the extent this motion is granted, defendants will

28  remove its BBB exhibits from their list.

DEFS.' MOT. IN LIMINE TO PRECLUDE
PRECLUDE BBB-RELATED EVIDENCE
10-CV-0940-GPC (WVG)

## A.     Irrelevant (FRE 401)

Under the Federal Rules of Evidence, evidence is relevant only if it tends to make a fact more or less probable, and that fact is of consequence in determining the action.  FED. R. EVID. 401.  Neither criterion exists here.

None of the exhibits and none of Ms. Rosenzweig's testimony concern any representation or statement that TU said its instructors were "handpicked" by Mr. Trump or whether that representation was material to any consumer's decision to purchase a TU program (much less the class representatives' decisions).  *See*, *e.g.*, Kirman Decl. Ex. 17 (PX 3)[4]; Ex. 18 (PX 5), Ex. 20 (PX 7), Ex. 21 (PX 200), Ex. 60 (PX 902) and Ex. 25 (PX 943).  To our knowledge, none of the exhibits or testimony is relevant to any issue encompassed by the two "elder abuse" claims, which concern (generally) the willful targeting and taking advantage of elderly consumers.  Cal. Welf. & Inst. Code § 15610.30 et seq. and Fla. Stat. § 501.201 *et seq*.

Likewise, with the exception of three related documents Exs. 18, 20, and 25, which we address below, there are no BBB-related exhibits that contain reference to TU being an "accredited university."  Those three documents do not bear on whether a reasonable consumer would be misled into believing TU was an "accredited university," since the BBB personnel who evaluate companies and engage in the dispute resolution process are carrying out a specific process prescribed by their organization's internal rules.[5]  They are not consumers and cannot speak with first-hand percipient knowledge about what was represented at any TU program.

---

[4] Unless noted, "Ex." refers to exhibits attached to the Kirman Declaration.

[5] The BBB gives public ratings to companies based only on the information voluntarily made available to it and focus primarily on participation in the BBB's own resolution process.  Thus, a company might have resolved a complaint to a customer's satisfaction, but if it does not formally report that resolution to the BBB in response to a complaint, its rating may be negatively affected.

DEFS.' MOT. IN LIMINE TO PRECLUDE
PRECLUDE BBB-RELATED EVIDENCE
10-CV-0940-GPC (WVG)

1       Unlike consumers of TU's products, BBB employees did not directly engage

2    with the company or purchase products and did not experience the context

3    necessary to form relevant views about whether the certified alleged

4    misrepresentations were misleading and in a material way. *See, e.g., Haskell v.*

5    *Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (whether a reasonable

6    consumer would be misled must be evaluated "in context"). In a similar

7    circumstance, the Eighth Circuit affirmed a district court's exclusion from a product

8    liability action an assessment by Consumer Reports about the vehicle that was the

9    subject of the lawsuit. *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 270 (8th Cir.

10   1993).

11      Excluding such irrelevant information is particularly appropriate here, where

12   the BBB is addressing consumer's complaints under a completely separate set of

13   criteria from that which is applicable in this trial, and in a way that is not objective

14   or standardized. The BBB simply offers membership, or "accreditation," based on

15   its employees' opinion that a company abides by the BBB's national "Standards for

16   Trust," namely: (1) build trust, (2) advertise honestly, (3) tell the truth, (4) be

17   transparent, (5) honor promises, (6) be responsive, (7) safeguard privacy, and (8)

18   embody integrity.[6] TU is not on trial to determine whether it abided by these

19   standards. TU's participation in the BBB's dispute resolution process and

20   satisfaction of the BBB's pillars of good business have no bearing on the certified

21   questions in this case, and even the few documents referring to "accredited" contain

22   inadmissible lay opinion, constitute hearsay, and/or are unduly prejudicial and

23   misleading, as described in detail below.

24      **B.    Inadmissible Opinion (FRE 701)**

25      Much of the evidence plaintiffs seek to introduce is also inadmissible opinion

26   testimony of a BBB representative or former TU student. For example, Ex. 25 (PX

27   _____

28   [6] Better Business Bureau of Metropolitan New York, http://www.bbb.org/new-
     york-city/get-to-know-us/vision-mission-and-values/bbb-standards-for-trust/

- 5 -

1   943) states: "[Y]our firm does not meet the established definition of a 'university."

2   Ex 60 (PX 902) at 00211 states: "The training was nothing as advertised or

3   promoted, which is a breach of contract."

4           This type of opinion testimony is barred by Federal Rule of Evidence 701.

5   Plaintiffs have not sought to (and cannot) qualify any BBB representative as an

6   expert witness. The testimony of a lay witness in the form of opinions or inferences

7   is limited to those opinions or inferences which are (a) "rationally based on the

8   witness's perception," (b) "helpful to clearly understanding the witness's testimony

9   or to determining a fact in issue," and (c) "not based on scientific, technical, or

10   other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701.

11   None of the BBB's opinions is based on any first-hand perception of a BBB

12   representative having attended a TU seminar or event. Rather, the correspondence

13   reflects BBB's opinions based on unverified and unfounded claims presented by a

14   non-representative handful of TU students.

15           Rule 701 is intended to eliminate precisely the risk that exists here — that a

16   party will attempt to evade the Rule 702 expert reliability requirements "through

17   the simple expedient of proffering an expert in lay witness clothing." FED. R. EVID.

18   701 Advisory Committee Notes. *See also U.S. v. White*, 492 F.3d 380, 403-404

19   (6th Cir. 2007) (Medicare auditors could not give opinions as lay witnesses because

20   their testimony relied "to a significant degree on specialized knowledge acquired

21   over years of experience as Medicare auditors."). BBB personnel's

22   communications regarding TU's credibility as a business and qualifications for

23   BBB accreditation fall squarely within the categories restricted under Rule 701,

24   because the BBB's opinions on these issues are not based on percipient observation

25   (701(a)) and are instead based on "specialized knowledge." (701(c)). No employee

26   at the BBB had first-hand, percipient knowledge regarding whether any consumer

27   was misled by particular acts or statements by TU; they acquired this information

28   second-hand via a complaint submission process, and from that formed an opinion

DEFS.' MOT. IN LIMINE TO PRECLUDE
PRECLUDE BBB-RELATED EVIDENCE
10-CV-0940-GPC (WVG)

1    regarding TU's rating and suitability for accreditation.  This type of second-hand

2    knowledge is prohibited.  *See, e.g., Plyler v. Whirlpool Corp.*, 751 F.3d 509, 514

3    (7th Cir. 2014) (a lay witness may testify only to what he observed, *e.g.*, a fire, but

4    may not opine as to the cause of what he observed, because cause is not based on

5    the witness's "perception").

6           The former students' complaints also contain inadmissible opinions by the

7    complaining students.  Ex. 60 (PX 902) at 000283, for example, states: "[T]he

8    information taught by some individuals … was questionable from a legal standpoint

9    and even questionable from a moral standpoint."  Such lay opinions are only

10   admissible when they meet all three requirements of FED. R. EVID. 701, including

11   that they be "helpful to clearly understanding the witness's testimony or to

12   determining a fact in issue."  In this case, the students who filed BBB complaints

13   are not providing testimony; nor are their unfiltered opinions about various

14   perceived shortcomings in the different events they attended relevant to

15   determining any pertinent fact.

16          Finally, all witness testimony opining on the ultimate legal question is

17   prohibited.  *See, e.g., Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)

18   ("The problem with testimony containing a legal conclusion is in conveying the

19   witness' unexpressed, and perhaps erroneous, legal standards to the jury.").  Hence,

20   the BBB's opinion that the TU's name "may potentially lead reasonable consumers

21   to believe that [TU] is an academic institution," PX 943 — is not admissible.  *See,*

22   *e.g., Smith v. Pac. Bell Telephone Co., Inc.,* 649 F. Supp. 2d 1073 (E.D. Cal. 2009)

23   (sustaining objections to admission of lay person's affidavit stating that he had

24   notified the defendants of problems with a GPS system and that they then failed to

25   investigate, finding that there was "nothing in the affidavit to establish [the

26   declarant] [wa]s knowledgeable about or qualified to opine on the reliability of GPS

27   equipment.").

28

DEFS.' MOT. IN LIMINE TO PRECLUDE
PRECLUDE BBB-RELATED EVIDENCE
10-CV-0940-GPC (WVG)

### C.     Hearsay (FRE 801)

Plaintiffs intend to offer TU students' complaints to the BBB and the BBB's letters denying accreditation to prove their truth.  These complaints, submitted largely to obtain refunds after the fact, are the least reliable kind of hearsay because they are both self-serving and untested.  *See, e.g., Idaho v. Wright*, 497 U.S. 805, 820 (1990).  The letters from the BBB to TU discussing accreditation and ratings are similarly offered for the truth of the substance of those letters — *e.g.*, that the word "accredited" appeared on TU's website and was misleading.  Ex. 25 (PX 943).  This is hearsay, and no exception applies:

Not a Business Record.  The business records exception does not apply to the BBB's letters.  The employees who wrote them did not witness and record the matters described within the letters, but, rather, formed an opinion based on written or verbal complaints received by individuals weeks and sometimes months after the fact.  FED. R. EVID. 803(6).  This is not a record "made at or near the time by—or from information transmitted by—someone with knowledge" of the underlying facts, nor is there any systematic or "regular practice" for students to lodge complaints.  FED. R. EVID. 803(6)(A), (C).  *See, e.g., Ricciardi v. Children's Hosp. Med. Ctr.*, 811 F.2d 18, 20 (1st Cir. 1987) (physician's chart entry not admissible under business records exception because he did not have "personal knowledge" of the fact recorded).  Moreover, given the nature and variability of the information gathered, and recorded, and evaluated by BBB personnel, its records lack independent indicia of trustworthiness necessary to bring them within the business records exception in the first place.  FED. R. EVID. 803(6)(E); *see also Rambus, Inv. v. Infineon Tech. AG*, 222 F.R.D. 101 (E.D. Va. 2004) (an ALJ's decision in an FTC action inadmissible under Rule 803).

Offered For Truth.  Plaintiffs may argue the complaints are not offered for the truth of the matters asserted therein, but for the mere "fact" that complaints were filed.  The "fact" that some students submitted complaints with the BBB is

1   irrelevant to any issue in this case.

2       **D.    Prejudice Substantially Outweighs Probative Value (FRE 403)**

3       BBB-related evidence also should be excluded because it is unduly

4   prejudicial and misleading and would result in wasteful excursions into the merits

5   of the BBB complaints as well as the BBB's accreditation and rating processes and

6   decisions.  *See* FED. R. EVID. 403.  Rule 403 compels exclusion on at least three

7   independent grounds:

8       [1] Because the BBB is a national, bureaucratic organization that offers

9   seemingly official ratings and accreditation for businesses and has a dispute

10  resolution function, jurors will likely see it as having a quasi-governmental or

11  quasi-judicial function and give undue weight to evidence of its opinions.  *See*

12  *Rambus,* 222 F.R.D. at 109-110 (E.D. Va. 2004); *see also Dillon v. Nissan Motor*

13  *Co.*, 986 F.2d 263, 270 (8th Cir. 1993) (holding it was not an abuse of discretion for

14  the district court to exclude a Consumer Reports article which described safety test

15  results in a products liability action concerning the same vehicle).

16      [2] The jury is likely to be misled or confused because the BBB refers to

17  approval of a membership application as "accreditation."  Ex. 25 (PX 943).  The

18  jury could conflate accreditation by the BBB with accreditation referenced in the

19  Court's certification order (Dkt. 298 at 4).  They are not the same, and plaintiffs do

20  not contend TU represented it was accredited by the BBB.

21      [3] BBB-related evidence is also unduly prejudicial because it would unfairly

22  emphasize the opinions of those who, for whatever reasons, chose to submit

23  complaints.  Fewer than 40 complaints were filed over a five-year period.  *See* DX

24  2062 at TU 01462 - TU 01464.  During this same time period, thousands of

25  students purchased and consumed TU programs without complaint.  Defendants

26  would have no opportunity to cross-examine the students who submitted

27  complaints.

28      The prejudice that would result from a parade of evidence regarding

1    unrelated rating, accreditation, and dispute resolution processes based on an

2    organization's internal, non-legal standards far outweighs any probative value of

3    the documents and testimony at issue and would constitute an abuse of discretion.

4    *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

5          The introduction of BBB-related evidence would violate Rule 403's

6    proscription against wastefulness.  If plaintiffs are permitted to introduce evidence

7    of BBB complaints, ratings, membership applications, and related correspondence

8    and testimony, defendants will be compelled to present witnesses and exhibits to

9    respond to each complaint.  The result would be highly confusing and distracting

10   mini-trials—and all for no purpose, since none of the complaints concerns

11   "accredited" or "handpicked."  *See, e.g., Freeman v. Astrue*, 405 Fed. Appx. 148,

12   151-152 (9th Cir. 2010) (affirming trial court's exclusion of evidence that "would

13   [have] require[d] the SSA [Social Security Administration] to present evidence that

14   would refuse the validity of each co-worker's [Equal Employment Opportunity

15   complaint]" and noting the trial court's legitimate decision to avoid a "series of

16   mini-trials" on each of the complaints.).

17   **IV.   CONCLUSION**

18         Defendants respectfully submit that ratings based on the BBB's "pillars" of

19   good business be left to the exclusive province of the BBB, while the factual issues

20   in this trial are left to the exclusive province of the jury.  The Court should preclude

21   plaintiffs from introducing irrelevant, misleading, and highly prejudicial documents

22   and testimony related to BBB complaints, ratings, and applications for membership.

23

24

25

26

27

28

DEFS.' MOT. IN LIMINE TO PRECLUDE
PRECLUDE BBB-RELATED EVIDENCE
10-CV-0940-GPC (WVG)

1    Dated:  October 20, 2016          Respectfully submitted,

2                                      O'MELVENY & MYERS LLP
                                       DANIEL M. PETROCELLI
3                                      DAVID L. KIRMAN

4
                                       By:      /s/ Daniel M. Petrocelli
5                                              Daniel M. Petrocelli

6
                                       Attorneys for Defendants
7                                      TRUMP UNIVERSITY, LLC and
                                       DONALD J. TRUMP
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       DEFS.' MOT. IN LIMINE TO PRECLUDE
                                       PRECLUDE BBB-RELATED EVIDENCE
                                       10-CV-0940-GPC (WVG)

**APPENDIX A**

1. **Ex. 14 (PX 187)** (Lazarus, David, "Donald Trump tried to get me fired after I wrote about Trump," Los Angeles Times (Mar. 9, 2016))

2. **Ex. 15 (PX 3)** (BBB Standard Business Questionnaire for Trump University LLC)

3. **Ex. 16 (PX 4)** (BBB Standard Business Questionnaire for Trump University)

4. **Ex. 18 (PX 5)** (Letter from BBB NY to Sam Empson, Marketing Analyst, Trump University re BBB Business Accreditation)

5. **Exs 19, 25 (PX 6**, **PX 943)** (Letter to Sam Empson from BBB re BBB Business Accreditation)

6. **Ex. 20 (PX 7)** (Email string from Claire Rosenzweig to Michael Sexton re urgent matter requires attention)

7. **Ex. 21 (PX 200)** (Email from Michael Sexton to Claire Rosenzweig, Susan McMillan re urgent matter requires attention)

8. **Ex. 60 (PX 902)** (excerpt, BBB complaints)

9. **Ex. 105 (PX 586)** (Email string from David Highbloom to Michael Sexton re BBB Application)

10. **Ex. 106 (PX 587)** (Email from James Harris to Michael Sexton re Please Read Gang = This is What We R Dealing With!)

11. **Ex. 107 (PX 595)** (Email string from Mark Covais to April Neumann re Calvin Lee (Waiting for 5k refund for 6 months))

12. **Ex 108. (PX 598)** (Email from Gillian Birnie to Michael Sexton re Personal)

13. **Ex. 109 (PX 705)** (Email from Charles Wren to Donald Trump, et al. re Misrepresentation of Services and Breach of Contract of the Trump Gold Elite Program - Request for Cancellation and Refund)

14. **May 27, 2015 Deposition of Claire Rosenzweig**, President and CEO of the BBB Serving Metropolitan New York (all excerpts designated by Plaintiffs are BBB-related)

DEFS.' MOT. IN LIMINE TO PRECLUDE
PRECLUDE BBB-RELATED EVIDENCE
10-CV-0940-GPC (WVG)