ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN (111070)
patc@rgrdlaw.com
X. JAY ALVAREZ (134781)
jaya@rgrdlaw.com
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
DANIEL J. PFEFFERBAUM (248631)
dpfefferbaum@rgrdlaw.com
BRIAN E. COCHRAN (286202)
bcochran@rgrdlaw.com
JEFFREY J. STEIN (265268)
jstein@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000

Class Counsel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>     vs.<br><br>TRUMP UNIVERSITY, LLC, a New York Limited Liability Company and DONALD J. TRUMP,<br><br>                              Defendants. | No. 3:10-cv-0940-GPC(WVG)<br><br>CLASS ACTION<br><br>PLAINTIFFS' MOTION *IN LIMINE* NO. 4 MOTION TO ALLOW LIVE TRIAL TESTIMONY VIA CONTEMPORANEOUS VIDEO TRANSMISSION FROM A DIFFERENT LOCATION<br><br>DATE:        November 10, 2016<br>TIME:        1:30 p.m.<br>CTRM:       2D<br>JUDGE:      Hon. Gonzalo P. Curiel |

1198713_1

## I.    INTRODUCTION

Trump University, LLC ("TU") provided live seminars and in-person mentorships (the "Live Events") throughout the United States.  As a consequence, many of the percipient witnesses to the alleged misconduct in this case, including defendants' former employees and independent contractors, live outside of this Court's 100-mile radius of subpoena power.  *See* Fed. R. Civ. P. ("Rule") 45(c).

While the parties were able to depose many witnesses and will present their deposition testimony at trial, a crucial witness – James Harris ("Harris"), TU's "top nationwide instructor" – failed to appear at his noticed deposition and did not resurface until after close of discovery in the related *Cohen* case.  Fortunately, Rule 43(a) provides that the Court may permit plaintiffs to examine Harris at trial via contemporaneous video transmission from a courtroom near his home.[1]  *See* Fed. R. Civ. P. 43(a).  In the alternative, plaintiffs request the Court allow them to play at trial Harris's videotaped CNN interview regarding critical facets of the case (Plfs' Final Trial Ex. 196).

Further, although plaintiffs believe testimony of non-representative TU students is irrelevant, improper and prejudicial (*see* Dkt. 509), if the Court allows defendants to present testimony from non-representative TU students, plaintiffs will have no choice but to present as close as possible a proportional amount of testimony from other live event attendees.  With dozens of such potential witnesses presenting brief testimony, it is impractical to bring them into court from across the country.  Plaintiffs request that the Court allow plaintiffs to introduce their testimony to the extent necessary via contemporaneous video transmission pursuant to the Video Protocol.

---

[1]    A proposed order and protocol for live video testimony in accordance with Rule 43(a) is attached hereto as Attachment A to the Proposed Order Granting Plaintiffs' Motion *in Limine* No. 4 (the "Video Protocol").  This is similar to other video protocols that have been found to provide appropriate safeguards in similar circumstances.  *See, e.g.*, *In Re: Actos (Pioglitazone) Products Liability Litig.*, No. 6:12-cv-00064-RFD-PJH,  Order/Case  Management  Order:  Protocol  for Contemporaneous Transmission of Live Testimony, Dkt. 494 (W.D. La. Jan. 8, 2014).

## II.     LEGAL STANDARDS

A court may ordinarily only compel a witness to testify at trial if located "[w]ithin 100 miles of where the person resides, is employed, or regularly transacts business in person."  Rule 45(c)(1)(A).  However, even for witnesses outside this 100-mile radius, courts may permit their testimony "by contemporaneous transmission from another location" if "[f]or good cause in compelling circumstances and with appropriate safeguards."  Rule 43(a).

In allowing remote video testimony under Rule 43(a), courts reflect a "'consistent sensitivity to the utility of evolving technologies that may facilitate more efficient, convenient, and comfortable litigation practices.'"  *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010).  Live video testimony is particularly useful for undeposed and unavailable witnesses because it may be the sole means available to allow them to effectively "appear in open court."  *Allen v. Takeda (In re Actos® (Pioglitazone) Prods. Liab. Litig.)*, No. 12-cv-00064, 2014 U.S. Dist. LEXIS 2231, at *35, 54-56 (W.D. La. Jan. 8, 2014) (granting motion to allow defendant's former employees to appear via live video testimony).  Live testimony also allows an out-of-jurisdiction witness to appear under oath and with the opportunity for cross-examination, both of which help ensure the reliability of the testimony.  *See Official Airline Guides, Inc. v. Churchfield Publications*, 756 F. Supp. 1393, 1399 n.2 (D. Or. 1990), *aff'd Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385 (9th Cir. 1993) (permitting the use of telephonic testimony where witness not present in jurisdiction and subject to cross examination); *Beltran-Tirado v. INS*, 213 F.3d 1179, 1185-86 (9th Cir. 2000) (same).

The more important the witness's testimony to the issues for trial, the greater the likelihood good cause and compelling circumstances will exist under Rule 43(a).  *See Lyons v. Leonhardt*, No. 3:05-CV-400 JCM (VPC), 2013 U.S. Dist. LEXIS 101212, at *28-29 (D. Nev. July 19, 2013) (noting the anticipated importance of the testimony at issue in finding good cause under Rule 43(a)); *Dagen v. CFC Grp.*

1    *Holdings Ltd.*, No. 00 Civ. 5682 (CBM), 2003 U.S. Dist. LEXIS 20029, at *4

2    (S.D.N.Y. Nov. 7, 2003) (finding good cause, in part, because of potential prejudice to

3    requesting party if remote video testimony not allowed).

**III.    ARGUMENT**

    **A.    TU's "Top Instructor" Harris**

        **1.    Good Cause in Compelling Circumstances Exists for Harris to Testify Via Contemporaneous Video Transmission at Trial**

8    The Court should permit Harris to appear at trial via contemporaneous video

9    transmission. During his time at TU, Harris held himself out as TU's "top nationwide

10   instructor" who was "handpicked" by Donald Trump ("Trump"). *Cohen* Dkt. 243-1,

11   Ex. 26 at TU 97578 & Ex. 29 at TU 98008. Harris was so successful at selling TU

12   live events that a transcript of his presentation was used as a training tool for other

13   instructors. *Cohen* Dkt. 243-1, Ex. 14 at TRUMP 00137397. Harris is a critical

14   witness vis-à-vis the class representatives in this litigation. Harris was Trump's

15   "handpicked expert" at both Sonny Low's Preview seminar (Dkt. 388-22 at 10) and

16   John Brown's 3-day Fulfillment seminar. *See* Dkt. 122-3 at 306, ¶10.

17   During discovery in this case and in the related *Cohen* case, plaintiffs attempted

18   to depose Harris, but he evaded service multiple times. *Cohen* Dkt. 116 at 2. In the

19   fall of 2013, Harris was finally served with a subpoena to testify, but defense counsel

20   refused to go forward with the deposition due to a purported scheduling conflict. *Id*.

21   After repeated attempts, plaintiff Art Cohen successfully served Harris with a

22   subpoena to testify in early 2015 in Atlanta, Georgia, but Harris failed to appear for

23   the deposition. *Id*. Only after plaintiffs filed an order to show cause, and made

24   multiple attempts at serving that document on him, did Harris surface by calling

25   plaintiffs' counsel and indicate that he would comply and sit for a deposition.

26   However, by that time, discovery in *Cohen* had closed, and the Magistrate Judge

27   denied plaintiff's request to reopen discovery in order to take his deposition for use at

28   trial. *Cohen* Dkt. 128 at 6-7.

1      Recently, Harris granted an interview with The Washington Post, and appeared

2  on a recorded video interview with CNN ("CNN Video Admission").  CNN aired the

3  Harris interview on July 13, 2016, over a year after plaintiffs' fruitless efforts to

4  depose him.   The interview that Harris provided to CNN Senior Investigative

5  Correspondent Drew Griffin directly addressed issues at the core of this case,

6  including whether instructors were personally selected by Trump and whether TU

7  operated as a legitimate university.  In fact, Griffin questioned Harris about documents

8  that were produced in this litigation.

9      For instance, when asked about the veracity of his representations from a

10 verbatim transcript of one of his TU presentations, Harris answered that he was not

11 prepared to respond.   When confronted about his representation during another

12 presentation, in which he delivered the TU-scripted dinner vignette (withheld by

13 defendants until June 2013), Harris finally came clean:

14     DREW GRIFFIN: Did you ever have dinner with him?

15     JAMES HARRIS: I never had dinner with him.

16 Ex. 1 (CNN Tr.) at 6:3-9.

17     Harris admitted TU's intense focus on sales rather than education, which

18 highlights the difference between its seminars and those of a legitimate university.  He

19 explained his job was to sell Live Events without regard to students' ability to afford

20 them:

21     JAMES HARRIS: We did o[u]r job.

22     DREW GRIFFIN: Regardless of if they could afford it or not?

23     JAMES HARRIS: Regardless if they could afford it or not. I didn't know
   if they could afford it or not.  That was not my position, that was not my
24 job. Other people did that. I don't know if they could afford it or not. We
   were we were told to show them all the ways that they could afford it
25 and could come up with the finances to get into the business. Period. End
   of story.

26 *Id*. at 7:25-8:11.

27

28

1    Similarly, in his interview with The Washington Post, Harris said: "I was told

2    to do one thing . . . .   And that one thing was: . . . to show up to teach, train and

3    motivate people to purchase the Trump University products and services and make

4    sure everybody bought. That is it."  Tom Hamburger, Rosalind S. Helderman and

5    Dalton Bennett Washington Post, *Donald Trump said 'university' was all about*

6    *education. Actually, its goal was: 'Sell, sell, sell!'* (June 4, 2016),

7    https://www.washingtonpost.com/politics/donald-trump-said-university-was-all-

8    about-education-actually-its-goal-was-sell-sell-sell/2016/06/04/5b6545d0-2819-11e6-

9    ae4a-3cdd5fe74204_story.html (last visited Oct. 20, 2016).  The Washington Post

10   article says "Harris, the former instructor, recalled one of his typical pitches to urge

11   customers to find money for programs: 'Do you have any equity on your home?  Do

12   you have a 401(k) or IRA?'"  *Id.*  The article relays that Alan Garten, Trump's lawyer,

13   "said Harris was one of the most highly rated instructors."  *Id.*   Finally, in The

14   Washington Post interview, Harris said he met Trump once in the early 1990s,

15   backstage at an event at the Taj Mahal casino.  "Here is the truth," he said.  "When I

16   was at Trump University, I had not one interaction with him ever.  Not one."  *Id.*

17       It is beyond dispute that Harris has very important testimony that plaintiffs

18   believe goes to the very crux of establishing their claims at trial.  As such, good cause

19   in compelling circumstances exists to permit Harris to testify via live video feed from

20   the nearest United States courthouse pursuant to Rules 43(a) and 45.  *See Lyons v.*

21   *Leonhardt*, No. 3:05-CV-400 JCM (VPC), 2013 U.S. Dist. LEXIS 101212, at *29 (D.

22   Nev. July 19, 2013) (finding good cause to allow witness to testify via live video feed

23   given witness's out-of-state residence and importance of the anticipated testimony)

24   *aff'd sub. nom. Lyons v. Barth*, 637 F. App'x. 278 (9th Cir. 2015).

25       Further, while plaintiffs respectfully disagree with the Magistrate Judge's order

26   declining to reopen discovery to allow plaintiffs to take Harris's deposition, permitting

27   Harris's trial testimony via video does not conflict with that order.  Indeed, plaintiffs

28   have been, and will forever be, denied the opportunity to depose Harris for discovery

1   purposes and gain its attendant benefits, including any follow-on discovery and

2   support for briefing at the dispositive motions stage in *Cohen*, or for purposes of

3   obtaining his testimony in advance of trial so that plaintiffs could carefully weigh the

4   pros and cons of presenting it to the Court and the jury at trial.  Nonetheless, given

5   Harris's pivotal role as TU's most prolific pitchman and the anticipated gravity of his

6   testimony, good cause exists to allow his live testimony via contemporaneous video

7   transmission at trial and plaintiffs are prepared to proceed without the benefit of

8   deposing him first.

9               **2.     Alternatively, the Court Should Allow Plaintiffs to
                        Present the Harris CNN Video Admission at Trial**

10

11          If the Court decides not to allow Harris to submit live video testimony or if he

12   fails to appear as directed, then the Court should allow plaintiffs to introduce the

13   Harris CNN Video Admission into evidence at trial.  *See* Pltfs' Final Trial Ex. 196.

14          Courts allow TV interviews into evidence where, as here, they are relevant and

15   qualify for a hearsay exception.  *See, e.g.*, *United States v. Exec. Recycling, Inc.*, No.

16   11-cr-00376-WJM, 2012 U.S. Dist. LEXIS 171084, at *6-*7 (D. Colo. Dec. 2, 2012)

17   (denying motion to exclude 60 Minutes TV segment showing defendant interview

18   because the video was relevant and not unduly prejudicial); *see also United States v.

19   Jayyousi*, 657 F.3d 1085, 1107-08 (11th Cir. 2011) (approving district court's

20   admission of CNN television interview from non-party).

21          With live testimony and a deposition off the table, the CNN Video Admission

22   represents the ***only*** means by which plaintiffs can present to the Court and the jury at

23   trial Harris's statements relating to the core allegations of plaintiffs' claims.

24   Moreover, the probative value of these statements is quite high, whereas the risk of

25   any ***unfair*** prejudice is very remote.  *See Jayyousi*, 657 F.3d at 1108 (affirming

26   admissibility of portions of CNN interview under Rule 403).

27          Further, the CNN Video Admission qualifies for a hearsay exception under the

28   Federal Rules of Evidence ("FRE").  First, there is no way that Harris would have

1   made these statements unless he believed them to be true.   Harris's statements

2   undermine his professional reputation and undermine his ability to ever sell a product

3   again to a consumer because he essentially confessed to lying to his clients about the

4   TU products that he was peddling and pushing them on vulnerable customers who

5   may have lacked the money to buy what he was selling.  *See* FRE 804(b)(3); §III.A.1.

6   Harris's admissions not only undermine his professional reputation, but also opens

7   him up to civil liability and even criminal liability for wire or mail fraud.  *See Cohen*

8   Dkt. 268 at 7.  These circumstances "clearly indicate its trustworthiness" and thus the

9   CNN Video Admission should be admissible at trial.  *See* FRE 804(b)(3)(B); *see, e.g.*,

10  *United States v. Boone*, 229 F.3d 1231, 1234 (9th Cir. 2000) (upholding admission of

11  "self-incriminating" taped statements pursuant to FRE 804(b)(3) hearsay exception).

12      Second, the CNN Video Admission falls within the residual hearsay exception,

13  which applies when a statement: (1) has "circumstantial guarantees of

14  trustworthiness"; (2) "is offered as evidence of a material fact"; (3) "is more probative

15  . . . than any other evidence that the proponent can obtain"; and (4) "will best serve . .

16  . the interests of justice" through its admission.  FRE 807.  The Ninth Circuit has used

17  this exception to admit videotaped evidence, finding that it "shows the demeanor of

18  the witness, allowing a jury to use visual cues to assess credibility." *United States v.*

19  *Leal-Del Carmen*, 697 F.3d 964, 974 (9th Cir. 2012).  Here, admitting the CNN Video

20  Admission would serve the interests of justice because Harris evaded discovery in this

21  case, and his statements directly relate to plaintiffs' claims as both a Live Events

22  instructor to two of the three class representatives in this case and as TU's "top

23  instructor."  *See* §III.A.1.  Again, the CNN Video Admission's trustworthiness is

24  ensured because the statements Harris made were directly against his own pecuniary

25  interest and exposed him to civil and/or criminal liability.  No rational person would

26  have made those statements unless he believed them to be true.  As such, the Court

27  should admit the CNN Video Admission into evidence at trial.

28

**B.     Undeposed, Non-Representative TU Customers**

The Court has bifurcated the trial and ordered that Phase 1 must be limited to classwide liability issues only.  Dkt. 418 at 18-19.  In this case, "issues of liability are common and can be decided based on common proof."  *Id.* at 19.  This, in turn, will allow for a streamlined trial of the class claims, which do not require proof of "the subjective and personalized experience of one class member."  Dkt. 472 at 9.

Nevertheless, defendants seek to call up to 25 non-representative TU customers to testify about their individualized, subjective experiences with TU.  *See* Defs' 10/18/2016 Proposed Pretrial Order, Exs. A, B.  As the Court is aware, plaintiffs oppose allowing non-representative student testimony for the reasons set forth elsewhere.  *See generally* Dkt. 509.  If the Court allows defendants to introduce the atypical testimony of non-representative TU customers at trial, however, it will become paramount that plaintiffs are provided the chance to offer the testimony of a proportional number of TU customers with experiences consistent with those of the representative plaintiffs and other class members by a nearly 600-to-1 ratio.  *See* Dkt. 509 at 12-14.  However, many of these class members never sat for a deposition in this case, due to the representative nature of the action, and live across the country. Thus, it would be logistically impractical to coordinate the in-person testimony of the dozens (or hundreds) of potential witnesses who would be providing brief testimony. Should the Court allow non-representative TU customers to testify (which plaintiffs oppose), plaintiffs respectfully request that the Court allow these witnesses to appear via contemporaneous video transmission from a courthouse near their residence pursuant to Rule 43(a) and the Video Protocol attached as Attachment A to plaintiffs' proposed order, submitted concurrently herewith.

**IV.   CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Court issue an order *in limine* permitting Harris to appear via contemporaneous transmission from another location, or, alternatively, admitting into evidence the CNN interview of

1    Harris.  Additionally, if the Court allows non-representative students to testify during

2    Phase 1 of trial, plaintiffs request that the Court permit them to offer the testimony of

3    undeposed TU live event attendees via contemporaneous transmission from another

4    location pursuant to Rule 43(a) and the Video Protocol attached as Exhibit A to

5    plaintiffs' proposed order, submitted concurrently herewith.

6    DATED:  October 20, 2016                     Respectfully submitted,

7                                                 ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
8
                                                      s/ X. Jay Alvarez
9                                                     X. JAY ALVAREZ

10

11                                               ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
12                                               PATRICK J. COUGHLIN
                                                 X. JAY ALVAREZ
13                                               JASON A. FORGE
                                                 RACHEL L. JENSEN
14                                               DANIEL J. PFEFFERBAUM
                                                 BRIAN E. COCHRAN
15                                               JEFFREY J. STEIN
                                                 655 West Broadway, Suite 1900
16                                               San Diego, CA  92101
                                                 Telephone:  619/231-1058
17                                               619/231-7423 (fax)

18                                               ZELDES HAEGGQUIST & ECK, LLP
                                                 AMBER L. ECK
19                                               AARON M. OLSEN
                                                 225 Broadway, Suite 2050
20                                               San Diego, CA  92101
                                                 Telephone:  619/342-8000
21                                               619/342-7878 (fax)

22                                               Class Counsel

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 20, 2016.

s/ X. Jay Alvarez
X. JAY ALVAREZ

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:      jaya@rgrdlaw.com

## Mailing Information for a Case 3:10-cv-00940-GPC-WVG Low v. Trump University, LLC et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Xavier Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick J Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanm@rgrdlaw.com

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,lmix@rgrdlaw.com,llendzion@rgrdlaw.com,e_file_sd@rgrdlaw.com,hbrown@rgrdlaw.com,mbacci@rgrdlaw.com,JayA@rgrdlaw.com,KLavelle

- **David Lee Kirman**
  dkirman@omm.com,awyman@omm.com,tmoore@omm.com,iyanniello@omm.com,hleewong@omm.com,sbrown@omm.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Daniel M. Petrocelli**
  dpetrocelli@omm.com

- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

- **Jeffrey J. Stein**
  JStein@rgrdlaw.com

- **Helen Irene Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`