1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

| | |
|---|---|
| SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRUMP UNIVERSITY, LLC, a New York Limited Liability Company, and DONALD J. TRUMP,<br><br>Defendants. | Case No.:  3:10-cv-00940-GPC-WVG<br><br>**NOTICE OF TENTATIVE RULING ON PLAINTIFFS' AND DEFENDANTS' MOTIONS IN LIMINE**<br><br>**[ECF Nos. 518, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533.]** |

19
20
21
22
23
24
25
26
27
28

On October 20, 2016, Plaintiffs Sonny Low, J.R. Everett, and John Brown (collectively, "Plaintiffs"), filed seven motions in limine.  (Dkt. Nos. 518, 520, 521, 523, 525, 530, 533.)[1]  Defendants Trump University, LLC ("TU"), and Donald J. Trump (collectively, "Defendants") filed responses to Plaintiffs' motions.  (Dkt. Nos. 545, 546, 548, 553, 554, 557, 559.)

On October 20, 2016, Defendants filed eight motions in limine.  (Dkt. Nos. 522, 524, 526, 527, 528, 529, 531, 532.)  Plaintiffs filed responses to Defendants' motions.

---

[1] Citations to the record are based upon the pagination generated by the CM/ECF system.

1  Dkt. Nos. 547, 549, 550, 551, 552, 555, 556, 558.)

2      Having reviewed the parties' moving papers and the applicable law, and for the

3  following reasons, the Court is prepared to **GRANT IN PART AND DENY IN PART**

4  Plaintiffs' and Defendants' motions in limine.

5              **ADMISSIBILITY OF ABSENT CLASS MEMBER TESTIMONY**

6      The Court finds it appropriate to first address the admissibility of absent class

7  member testimony, because the issue pervades both parties' motions in limine.  Pursuant

8  to the Court's Order on August 2, 2016 (Dkt. No. 502), the parties filed supplemental

9  briefing on the issue (Dkt. Nos. 505, 509).  Having reviewed the parties' briefing and the

10  applicable law, the Court concludes as follows.

11      Defendants argue that non-representative student testimony is admissible pursuant

12  to their Seventh Amendment right to a jury trial and pursuant to Federal Rule of Evidence

13  402.  (Dkt. No. 505 at 8–10.)  Defendants maintain that class certification does not

14  relieve Plaintiffs of their burden of proof or restrict Defendants from presenting their

15  defense, citing, *inter alia*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  (*Id.* at

16  10–13.)  Defendants contend that the proposed non-representative student testimony is

17  relevant to materiality, uniformity, falsity, and reliance.  (*Id.* at 13–20.)

18      Plaintiffs maintain that non-representative student testimony is irrelevant to

19  liability and accordingly inadmissible during phase one of trial.  (Dkt. No. 509 at 8.)

20  They contend that even if non-representative student testimony were relevant to liability,

21  it should be excluded because its probative value is outweighed by the risk of unfair

22  prejudice, confusion of the issues, and misleading the jury.  (*Id.* at 19–21.)  Plaintiffs

23  briefly cite concerns that allowing non-representative student testimony will significantly

24  lengthen phase one of trial.  (*Id.* at 21.)  Finally, Plaintiffs argue that exclusion of absent

25  class member testimony will not violate Defendants' Seventh Amendment or due process

26  rights, as Defendants have the ability to present individualized defenses during phase two

27  of trial.  (*Id.* at 21–22.)

28

2

The Court begins by rejecting Plaintiffs' position that non-representative student testimony should be excluded wholesale from phase one of trial.  *C.f. Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS MANX, 2013 WL 6535164, at *21 (C.D. Cal. Dec. 9, 2013) (declining to issue a blanket ruling on the admissibility of absent class member testimony).  Plaintiffs cite *Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479 (S.D. Fla. 1996), to argue that "in light of the Court's decision to restrict the trial to common issues only, the testimony of opt-outs . . . on the issue of reliance is irrelevant." 172 F.R.D. at 489.  Plaintiffs only cursorily argue that *Dukes* does not undermine *Waters*. (Dkt. No. 509 at 19.)  In light of the Supreme Court's statement in *Dukes* that to invoke the "fraud on the market" presumption of reliance in securities class actions, plaintiffs must "prove *again* at trial" the facts giving rise to the presumption "in order to make out their case on the merits," *Dukes*, 564 U.S. at 351 n.6, this Court concludes that Plaintiffs must do the same to invoke the benefit of the inference of reliance.  The Court accordingly declines to issue a blanket order excluding testimony of non-representative students.

The Court likewise declines to rule that non-representative student testimony is admissible without limit.  In *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS MANX, 2013 WL 6535164 (C.D. Cal. Dec. 9, 2013), the defendant moved to exclude the plaintiffs' absent class member testimony.  The plaintiffs represented to the court that they "d[id] not intend to introduce testimony from individual class members to show reliance and causation," but that the evidence would be relevant to show, *inter alia*, "that the alleged misrepresentations were in fact uniform, that [the defendant] engaged in two or more predicate acts under RICO, and that the asserted enterprise was ongoing." 2013 WL 6535164, at *21.  In light of these representations, the court stated that the "testimony may be relevant for reasons *other than* reliance or causation" and declined to issue a blanket ruling on the admissibility of non-representative testimony before trial. *Id.* (emphasis added).  Moreover, the court concluded that because the case was about

"alleged uniform misrepresentations, not about the particularities of specific . . . sales," subjective testimony from absent class members would be irrelevant.  *Id.* at *9, *21 n.13.

Here, Defendants similarly intend to offer absent class member testimony to illustrate how individual class members subjectively understood and interpreted Defendants' alleged misrepresentations.  (Dkt. No. 505 at 14–18.)  Given that this case involves alleged uniform misrepresentations, absent class member testimony as to the particularities of specific sales is likewise irrelevant.  Furthermore, unlike the defendant in *Negrete*, *see* 2013 WL 6535164, at *20, here, Plaintiffs contend that absent class member testimony is irrelevant to all elements of liability, not just irrelevant as to reliance.  The Court accordingly examines the relevance of non-representative student testimony as to materiality, falsity, and the inference of reliance below.

**1. Materiality**

As Defendants acknowledge (Dkt. No. 505 at 14), materiality is an objective, not a subjective, element.  *See, e.g.*, *Vasquez v. Superior Court*, 484 P.2d 964, 973 (Cal. 1971). Defendants' arguments are not persuasive as to how individualized testimony by absent class members is relevant to the jury's objective determination of materiality.

Furthermore, the cases Defendants enlist do not aid their argument that absent class member testimony should be allowed to rebut evidence of materiality.  Defendants first cite *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110–11 (9th Cir. 2012) for the proposition that the Ninth Circuit has "expressly rejected plaintiffs' contention that because materiality is 'objective,' it may only be proven through surveys or by experts." (Dkt. No. 505 at 14.)  Here, however, Plaintiffs do not argue that materiality may only be proven through surveys or by experts.  (Dkt. No. 509 at 17–18.)  Moreover, as Plaintiffs correctly point out, *Skydive Arizona* was not a class action case, *see* 673 F.3d at 1108, and accordingly does not bolster Defendants' contention that absent class member testimony should be admitted on the question of materiality.

Defendants next cite *Plasencia v. Lending 1st Mortg.*, No. C 07-4485 CW, 2011 WL 5914278, at *1–2 (N.D. Cal. Nov. 28, 2011).  Here, Defendants incorrectly conflate

the element of materiality with the *Plascencia* court's ruling that class member testimony
may be admitted to rebut the elements giving rise to an inference of reliance—*Plascencia*
does not speak to the admissibility of absent class member testimony with respect to the
element of materiality. *Id.* Accordingly, Defendants may not proffer non-representative
student testimony with respect to materiality.

### 2. Falsity

"Determining whether or not a statement is a fraudulent representation is an
objective inquiry that can be made on a class-wide basis." *Negrete v. Allianz Life Ins.
Co. of N. Am.*, 287 F.R.D. 590, 610 n.11 (C.D. Cal. 2012). The only legal authority that
Defendants cursorily cite in their supplemental briefing does not aid Defendants' position
that absent class member testimony may be admitted to rebut evidence of falsity. (Dkt.
No. 505 at 17–18.) A jury can assess, according to a reasonable person standard, whether
the misrepresentations were in fact merely non-actionable puffery without evaluating
absent class member testimony. Defendants may not proffer non-representative student
testimony with respect to falsity.

### 3. Reliance

#### a. Uniformity

"If the trial court finds that material misrepresentations have been made to the
entire class, an inference of reliance arises as to the class." *In re Vioxx Class Cases*, 103
Cal. Rptr. 3d 83, 95 (Cal. Ct. App. 2009). To obtain the inference of reliance, Plaintiffs
therefore must establish that the misrepresentations were (1) material and that they were
(2) uniformly made to the entire class. The Court has already addressed materiality and
will address only the issue of uniformity here.

Contrary to Defendants' reading of *Plascencia*, the court held that "the class-wide
presumption cannot be rebutted by showing that individual absent class members did not
rely upon the fraudulent omissions." 2011 WL 5914278, at *2. Rather, the "presumption
could be rebutted on a class-wide basis only if there is evidence that can be properly
generalized to the class as a whole." *Id.* In *Plascencia*, the court held that Defendants'

depositions of absent class members could not be properly generalized to the class, as "the depositions ordered would not be statistically representative of the class as a whole" and were accordingly not relevant. *Id.* at *2 – 3. Here, as Plaintiffs argue, given that Defendants propose offering testimony of class opt-outs and other individual absent class members, the jury would be left with a skewed perspective not statistically representative of the class. (Dkt. No. 509 at 20.) Accordingly, Defendants may not offer absent class member testimony to rebut the inference of reliance in its entirety. Instead, as explained below, Defendants may offer such testimony only to rebut a showing that the material misrepresentations were uniformly made.

The Court rejects Plaintiffs' position that absent class member testimony is inadmissible to address uniformity for purposes of rebutting the inference of reliance. Contrary to Plaintiffs' reading, the *Plascencia* court held that "Defendants may defeat the presumption by showing that the incomplete disclosures were not uniform or would not be material to a reasonable person. They may also rebut the presumption by introducing evidence specific to the named Plaintiffs." 2011 WL 5914278, at *2. Accordingly, Defendants may offer non-representative student testimony to rebut the uniformity prong of the inference of reliance by countering Plaintiffs' showing that the material misrepresentations were uniformly made to the class. The Court reserves the right pursuant to Federal Rule of Evidence 403 to prevent the presentation of unduly cumulative evidence at trial.

## PLAINTIFFS' MOTIONS IN LIMINE

**I.    Plaintiffs' Motion in Limine No. 1: Ground Rules for Phase 1 of Trial (Dkt. No. 518)**

Plaintiffs first seek to establish ground rules for the liability phase of trial. (Dkt. No. 518 at 2.) Plaintiffs assert six requests in their first motion in limine. (*Id.*) Defendants oppose all but the sixth request. (Dkt. No. 553.) The Court addresses the six requests in turn.

1.  Citing reasons of judicial economy and efficiency, Plaintiffs seek to "[p]reclude the same witness from being called to testify more than once (except for witnesses re-called in rebuttal)." (Dkt. No. 518 at 2–3.)  Defendants respond that Plaintiffs may not restrict Defendants' "right to present their case in the manner of their choosing," and that Plaintiffs' request would result in "disjointed examinations and inevitable confusion." (Dkt. No. 553 at 5–6.)  The Court declines to issue a blanket procedural ruling and is prepared to **DENY** Plaintiffs' first request.

2.  Plaintiffs request a ruling to (a) "[p]reclude [D]efendants from calling for live testimony any witness who refused to provide live testimony during [P]laintiffs' case-in-chief" and to (b) "[p]reclude [D]efendants from introducing deposition testimony of a witness under their control." (Dkt. No. 518 at 3–4.)  Defendants respond that Federal Rule of Evidence 611 does not impose an obligation on Defendants to make unavailable witnesses appear for live testimony during Plaintiffs' case-in-chief. (Dkt. No. 553 at 6.)  Defendants contend that Plaintiffs' request to preclude Defendants from introducing deposition testimony of a witness purportedly under Defendants' control conflicts with Federal Rule of Civil Procedure 32(a)(4). (*Id.* at 7–8.)  Defendants respond that Plaintiffs fail to identify specific witnesses that Defendants purportedly control. (*Id.* at 8.)  Because Plaintiffs' request is overbroad, the Court is prepared to **DENY** Plaintiffs' second request for lack of specificity.

3.  Plaintiffs request a ruling permitting them to use leading questions when examining "former officers, employees and/or independent contractors associated with [Defendants]." (Dkt. No. 518 at 5–6.)  Plaintiffs request that Defendants be prohibited from using leading questions when cross-examining witnesses associated with Defendants. (*Id.* at 6.)  Defendants respond that Plaintiffs have not identified the hostile witnesses, with the exception of Michael Sexton, that they intend to call, and that Plaintiffs have not adequately shown that such witnesses are hostile within the meaning of Federal Rule of Evidence 611. (Dkt. No. 553 at 9–

10.)  Due to Plaintiffs' lack of specificity in identifying relevant witnesses, the Court is prepared to **DEFER** ruling on Plaintiffs' third request until any adverse witnesses are called at trial.

4.  Plaintiffs move to exclude as irrelevant any argument or testimony about the attorneys and law firms that have represented the parties in the instant litigation. (Dkt. No. 518 at 6–7.)  Defendants respond that Plaintiffs' request is unnecessary, and that Plaintiffs have not presented any basis for a blanket order at this stage. (Dkt. No. 553 at 10–11.)  Agreeing that Plaintiffs have not identified specific evidence that they wish to exclude, the Court is prepared to **DENY** the Plaintiffs' fourth request without prejudice to Plaintiffs raising objections at trial.

5.  Plaintiffs move to exclude as irrelevant any evidence or argument relating to witnesses' political affiliation, voting preferences, and political contributions. (Dkt. No. 518 at 8–9.)  Defendants respond that such evidence "may bear on witness credibility and bias."  (Dkt. No. 553 at 11.)  Because such evidence has no apparent relevance and may be unduly inflammatory, the Court is prepared to **GRANT** the Plaintiffs' fifth request. The Court directs the parties' counsel to provide advance notice to the Court outside the presence of the jury if they intend to offer evidence of witnesses' political affiliation.

6.  Pursuant to Federal Rule of Evidence 615, Plaintiffs move to exclude from the courtroom non-party percipient witnesses.  (Dkt. No. 518 at 9–10.)  Defendants do not oppose this request.  Accordingly, the Court is prepared to **GRANT** Plaintiffs' sixth request.

## II.   Plaintiffs' Motion in Limine No. 2: Exclude Evidence and Argument Unrelated to Liability During Phase One of Trial  (Dkt. No. 520)

Plaintiffs move to exclude from phase one of trial any evidence of TU's value and other damages issues on grounds of irrelevance and confusion to the jury.  (Dkt. No. 520 at 3–5.)  Plaintiffs move to exclude four categories of evidence: (1) student testimonials, "success stories," and evaluations; (2) damages-related testimony from non-

8

representative former students; (3) damages-related testimony from instructors and employees; and (4) paid TU course materials. (*Id.* at 5–10.) Defendants respond that the contested evidence is relevant to falsity and materiality. (Dkt. No. 559 at 3–5.) They further contend that such evidence is relevant to prove Plaintiffs' "full refund" theory. (*Id.* at 11–12.)

First, the Court has previously addressed the admissibility of non-representative student testimony and will not repeat its analysis here. Second, the Court will address the admissibility of student evaluations in its analysis of Plaintiffs' Motion in Limine No. 7 and the admissibility of online products in its analysis of Plaintiffs' Motion in Limine No. 3. Third, to the extent that Defendants seek to admit "success stories" at trial—either via former students or via instructors and employees of TU—to establish the subjective value of TU courses to individual students, the Court finds that such evidence is irrelevant to the liability phase of trial and appropriate only in the damages phase of trial. Finally, the Court will **DEFER** until trial ruling on the admissibility of TU course materials.

Accordingly, the Court is prepared to (1) **GRANT IN PART** Plaintiffs' motion as to "success stories" to establish subjective value, (2) **GRANT IN PART** Plaintiff's motion as to non-representative student testimony as discussed above, and (3) **DENY IN PART** Plaintiffs' motion without prejudice as to the course materials. As to the course materials, Plaintiffs may renew their objection to specific testimony at trial.

### III.   Plaintiffs' Motion in Limine No. 3: Limit Evidence and Argument to Class Products (Dkt. No. 521)

Plaintiffs request a broad ruling limiting evidence to the class products at issue in this case. (Dkt. No. 521 at 2.) Plaintiffs move to exclude four categories of evidence: (1) evidence regarding the online instructors and whether Mr. Trump handpicked those instructors; (2) materials from courses and other offerings outside of the Live Events, as well as emails and other communications regarding the marketing of these non-class products; (3) documents related to other entities, namely Trump Institute and Trump

University Canada; and (4) Trump Entrepreneur Initiative ("TEI") marketing and course materials, as well as TEI's rating with the Better Business Bureau ("BBB").  (*Id.* at 4–9.)

The Court **DEFERS** until trial ruling on the admissibility of the course materials and online materials.  Next, as addressed *infra*, the Court is prepared to **GRANT IN PART** and **DENY IN PART** the motion to exclude certain evidence of the BBB's ratings of TU and TEI.  Accordingly, the Court plans to **DENY** Plaintiffs' motion without prejudice.  Plaintiffs may renew their objection to specific testimony at trial.

## IV. Plaintiffs' Motion in Limine No. 4: Allow Live Trial Testimony Via Contemporaneous Video Transmission From a Different Location (Dkt. No. 533)

Plaintiffs move to allow James Harris, TU's "top nationwide instructor," to testify at trial via contemporaneous video transmission from a courtroom near his residence pursuant to Federal Rule of Civil Procedure 43(a).  (Dkt. No. 533 at 2.)  Plaintiffs assert that "good cause in compelling circumstances" exists, as Mr. Harris is an important witness to the case and had evaded service on multiple occasions and failed to comply with the deposition process.  (*Id.* at 4.)  In the alternative, Plaintiffs request that the Court allow them to play Harris's videotaped CNN interview at trial (Plaintiffs' Exhibit 196).  (*Id.*)  Plaintiffs also assert a request to allow a proportional number of non-representative witnesses to testify at trial via contemporaneous video transmission.  (*Id.*)  Plaintiffs note that this request is contingent upon the Court's decision to allow Defendants to introduce testimony of non-representative students.  (*Id.*)

Defendants respond that Plaintiffs have failed to show that good cause exists to allow Mr. Harris to testify via contemporaneous video transmission.  (Dkt. No. 545 at 5.)  Defendants point out that Plaintiffs have failed to identify the potential student-witnesses who may be called to testify via contemporaneous video transmission.  (*Id.*)  At minimum, Defendants urge the Court to defer ruling on the unnamed witnesses until Plaintiffs demonstrate "good cause in compelling circumstances" pursuant to Rule 43(a).

(*Id.* at 8.)  Finally, Defendants contend that the CNN interview of Mr. Harris is inadmissible hearsay and unduly prejudicial.  (*Id.* at 10–15.)

Federal Rule of Civil Procedure 43(a) provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." The advisory committee notes to Rule 43(a) emphasize that "[t]he importance of presenting live testimony in court cannot be forgotten" and that contemporaneous transmission "is permitted only on showing good cause in compelling circumstances." The Court has discretion to grant or deny requests to allow witnesses to testify by contemporaneous video transmission.  *Draper v. Rosario*, 836 F.3d 1072, 1081 (9th Cir. 2016).

Here, Plaintiffs have not carried their burden to establish that "good cause in compelling circumstances" exists to permit examination of Mr. Harris via contemporaneous video transmission.  Plaintiffs argue that Mr. Harris's testimony is important to their case, and that his evasion of service and lack of cooperation during discovery have prejudiced Plaintiffs.  (Dkt. No. 533 at 6–7.)  While the Court expresses concern with Mr. Harris's lack of cooperation during discovery, the Court notes that Plaintiffs have not provided any information about Mr. Harris's current whereabouts or any related correspondence regarding attempts to procure his presence at trial.  (*Id.* at 4.) Absent a showing of "good cause in compelling circumstances," the Court is unwilling to grant Plaintiffs' Rule 43(a) request.  Accordingly, the Court is prepared to **DENY** Plaintiffs' request to allow Mr. Harris to testify via contemporaneous video transmission. For similar reasons, the Court is prepared to **DENY** Plaintiffs' Rule 43(a) motion as to the currently unidentified non-representative students.

Finally, finding that the CNN video of Mr. Harris is heavily redacted and does not qualify for a hearsay exception, and that its probative value is substantially outweighed by the danger of unfair prejudice, the Court is prepared to **DENY** Plaintiffs' request to play the CNN video of Mr. Harris.

1
2

**V.      Plaintiffs' Motion in Limine No. 5:  Exclude Evidence and Argument Related to the Court's Class Action Orders (Dkt. No. 530)**

3      In broad brush strokes, Plaintiffs move to exclude "argument and evidence seeking

4   to challenge this Court's (multiple) prior orders certifying this action as a class action for

5   purposes of liability." (Dkt. No. 530 at 2.)  Plaintiffs seek to exclude four categories of

6   evidence: (1) testimony of non-representative TU customers concerning their

7   individualized, subjective experiences; (2) declarations of TU customers concerning their

8   individualized, subjective experiences; (3) exhibits of paid TU course materials that

9   Plaintiffs believe Defendants will use to argue that TU courses varied from class to class;

10  and (4) evidence of TU customer evaluations, surveys, and testimonials that Plaintiffs

11  believe Defendants will use to argue that TU customers had varying experiences at TU

12  and varied interactions with TU personnel.  (*Id.* at 4–11.)

13      Defendants respond that Plaintiffs' motion inaccurately frames Defendants'

14  proposed evidence as a veiled "collateral attack" on the Court's certification order.  (Dkt.

15  No. 548 at 5.)  Defendants argue that the evidence is relevant to how a reasonable person

16  would interpret and understand the two certified misrepresentations, and that the evidence

17  is not being used to challenge Court's certification orders.  (*Id.* at 6–12.)  Defendants

18  contend that Plaintiffs' motion is vague and overbroad, and that Plaintiffs have failed to

19  analyze why the contested evidence is not properly generalized to the entire class.  (*Id.* at

20  6–7, 12–13.)

21      Like Plaintiffs' Motions in Limine Nos. 2 and 3, this motion also seeks to exclude

22  course material evidence in an overbroad manner.  The Court's conclusion as to the

23  admissibility of testimony, evidence, and argument regarding non-representative students

24  has already been addressed at the outset of this Order, and the Court will not repeat its

25  ruling or analysis here.  Accordingly, the Court is prepared to **GRANT IN PART**

26  Plaintiffs' motion with respect to non-representative student testimony that has no

27  bearing on whether the misrepresentations were uniformly made, and **DENY IN PART**

28

1   the remainder of Plaintiffs' Motion in Limine No. 5.  Plaintiffs may renew their objection

2   to specific testimony at trial.

3   **VI.    Plaintiffs' Motion in Limine No. 6: Exclude Undisclosed Witnesses,**

4   **Exhibits, and Defenses (Dkt. No. 525)**

5           Plaintiffs request a ruling prohibiting Defendants from (1) calling witnesses whom

6   Defendants did not identify in their Federal Rule of Civil Procedure 26(a)(1) disclosures;

7   (2) offering into evidence documents that Defendants "withheld from discovery"; and (3)

8   "directly or indirectly asserting any reliance on counsel—in testimony, exhibits, or

9   argument."  (Dkt. No. 525 at 2.)

10          With respect to witnesses, Defendants respond that with the exception of Meredith

11  McIver, all of the witnesses Plaintiffs object to were disclosed in Rule 26(a)(1)

12  disclosures in the *Cohen* case; disclosed in Rule 26(a)(3) disclosures in February and

13  March of this year; identified on Plaintiffs' own witness lists; deposed in this case or in

14  *Cohen*; are former class members who notified Plaintiffs' counsel of their intent to opt

15  out of the class within the last six months; and/or are document custodians whose

16  testimony is offered to authenticate documents.  (Dkt. No. 557 at 5.)  With respect to

17  documents, Defendants respond that contrary to Plaintiffs' claim, they have not withheld

18  the contested exhibits from discovery.  (*Id.* at 13–14.)  Defendants maintain that Plaintiffs

19  used many of the disputed exhibits in depositions and filings in the instant case and in

20  *Cohen*; that Plaintiffs have had access to these documents; that Defendants have offered

21  to make all physical exhibits available to Plaintiffs for inspection; and that there is no

22  prejudice resulting to Plaintiffs.  (*Id.* at 6.)  Finally, Defendants respond that Plaintiffs'

23  request that Mr. Trump be barred from invoking an "advice of counsel" defense is

24  unnecessary, premature, and moot.  (*Id.* at 14–15.)

25          The Court has discretion to issue sanctions pursuant to Federal Rule of Civil

26  Procedure 37(c)(1).  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106

27  (9th Cir. 2001).  Rule 37(c) is described as a "self-executing, automatic sanction to

28  provide a strong inducement for disclosure of material[.]"  *Id.* (internal citation, quotation

marks, and alteration omitted).  "Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless."  *Id.*  The party facing sanctions has the burden to prove harmlessness.  *Id.* at 1107.

The Court begins by noting that while the parties "agreed that fact discovery in one action may be cross-designated for use in the other action," the specific language of the parties' cross-designation agreement—stating that "all written discovery and depositions from the *Makaeff* case may be designated for use in either case by either Plaintiff or Defendant"—appears to be more limited than Defendants suggest.[2] (*Compare* Dkt. No. 425 at 3 *with* Dkt. No. 425-1 at 10.)  Nonetheless, because the agreement states that "any deposition taken going forward that is taken in *Cohen* and is cross-designated in *Makaeff* counts against the *Makaeff* deposition limit," the Court, in assessing harmlessness, will take into account whether the disputed witnesses were disclosed to Plaintiffs in *Cohen*.  The Court will thus focus its inquiry on the witnesses and documents recently disclosed in Defendants' October 6, 2016 disclosures, as Plaintiffs have had over half of a year's notice of the witnesses and documents Defendants disclosed in February and March of this year.

Plaintiffs maintain that fourteen witnesses were disclosed for the first time in Defendants' October 6, 2016 disclosures, less than two months before trial.  (Dkt. No. 525 at 4.)  Based on a review of Defendants' chart illustrating Plaintiffs' contacts with the fourteen disputed witnesses (Dkt. No. 557-1 at 1), the Court finds that Defendants' untimely disclosure of Daniel Berman, Aleshia Boerin-dlock, Meredith McIver, and

---

[2] The Court also takes note of Plaintiff's citation of an order from Magistrate Judge Gallo providing that "[a]ll deposition taken in this action shall relate to this action only[.]"  (Dkt. No. 525 at 7.)  However, because Judge Gallo's order was issued on November 20, 2014, one year prior to the parties' submission of their cross-designation agreement on November 20, 2015, the Court credits the agreement as reflective of the parties' understanding regarding cross-designation.

1   Richard Nichilo is not substantially justified or harmless, and that Defendants have failed

2   to carry their burden to prove that they qualify for an exception from Rule 37(c)(1).

3          As for exhibits, the Court finds that Defendants have failed to carry their burden to

4   demonstrate that their untimely disclosure was substantially justified or harmless.  Based

5   on a comparative review of Plaintiffs' list of disputed exhibits (Dkt. No. 525-1 at 1) and

6   Defendants' appended explanatory chart of disputed exhibits (Dkt. No. 557-1 at 2), the

7   Court is prepared to exclude Defendants' exhibits, numbered as follows: 4390, 4439,

8   4442, 4481, 4543, 4544, 4545, 4546, 4547, 4548, 4549, 4550, 4551, 4552, 4553, 4554,

9   4556, 4557, 4558, 4559, 4560, 4561, 4562, 4563, 4564, 4565, 4567, and 4575.  Although

10  a number of these exhibits were identified as publically available by Defendants, the fact

11  that exhibits were publicly available does not justify Defendants' untimely disclosure.

12         Accordingly, the Court is prepared to **GRANT IN PART** and **DENY IN PART**

13  Plaintiffs' motion to exclude previously undisclosed witnesses and documents.  In

14  addition, the Court is prepared to **DENY** Plaintiffs' premature request to exclude any

15  direct or indirect "reliance on counsel" defense.  Plaintiffs may renew their objection to

16  specific testimony at trial.

17  **VII.  Plaintiffs' Motion in Limine No. 7: Exclude Evidence and Argument About
         Trump University's Purported Approval Rating and Student-Victim
18       Evaluations (Dkt. No. 523)**

19

20         Plaintiffs move to exclude evidence regarding TU's purported "98% approval

21  rating" or student-victim evaluations.  (Dkt. No. 523 at 2.)  Plaintiffs contend that the

22  rating is irrelevant to falsity and materiality and only relevant to prove damages during

23  phase two of trial.  (*Id.* at 4.)  Plaintiffs further contend that the rating and evaluation

24  forms that formed the basis for the rating are inadmissible hearsay, and that the survey

25  evidence does not meet the requirements of Federal Rule of Evidence 702.  (*Id.* at 5–9.)

26  Plaintiffs move to prohibit Mr. Trump from testifying about the rating or the student-

27  victim evaluations for lack of personal knowledge.  (*Id.* at 9–11.)  Finally, Plaintiffs

28

1  contend that the rating and student-victim evaluations are misleading, confusing, and

2  unfairly prejudicial.  (*Id.* at 11.)

3       Defendants respond that the evaluations and rating are relevant to falsity and

4  materiality; that they show that Defendants lacked knowledge of the alleged deception;

5  that they show that Plaintiffs lacked actual injury; and that they are relevant to establish,

6  *inter alia*, witnesses' state of mind, which classes witnesses attended, which instructors

7  taught those classes, and when they attended those classes.  (Dkt. No. 554 at 7–10.)

8  Defendants contend that using the evidence to establish Defendants' lack of knowledge

9  does not constitute hearsay, and that independently, the evaluations and rating are

10  admissible under exceptions for business records, present sense impression, and then-

11  existing mental, emotional, or physical condition.  (*Id.* at 11–13.)  Defendants argue that

12  the surveys are not expert evidence and are thus not subject to *Daubert* requirements or

13  Federal Rule of Evidence 702.  (*Id.* at 14–15.)

14       The Court first finds that the 98% rating derived from the evaluations is irrelevant

15  to falsity and materiality.  The measure of approval for the three-day workshops does not

16  tend to prove or disprove the "handpicked" or "university" misrepresentations.  The

17  feedback questions posed to the students—inquiring, *inter alia*, how TU could help

18  attendees "meet [their] goals" and whether instructors were "friendly, professional, and

19  approachable" (*see, e.g.*, Dkt. No. 554-1 at 7)—do not inquire about the two

20  misrepresentations.  A post-hoc approval rating derived from questions that have no

21  bearing on the two misrepresentations is irrelevant to establish whether the

22  misrepresentations were material to purchasers of the three-day workshops or to

23  purchasers of the Elite package.  Nor is Defendants' argument that the 98% rating

24  establishes Defendants' lack of knowledge of the misrepresentations credible.

25       For the same reasons, the evaluation forms are irrelevant with respect to students

26  who purchased only the three-day Fulfillment workshop.  Assuming, *arguendo*, that the

27  evaluation forms are relevant to disprove materiality with respect to class representatives

28  who purchased the Elite program, Defendants may offer the forms as party-opponent

16

admissions.  Given the Court's conclusion that non-representative student testimony may be offered only to rebut a showing that material misrepresentations were uniformly made, Defendants may not produce evaluation forms by non-representative students at trial.

And if Defendants offer evaluation forms by non-representative students at trial to rebut a showing of uniformity, the evidence will need to qualify for a hearsay exception. The Court finds preliminarily that the evidence does not qualify for the business records exception under Federal Rule of Evidence 803(6).  The "business records exception applies only where the person furnishing the information is 'acting routinely, under a duty of accuracy, with the employer reliance on the result, or in short in the regular course of business.'"  *Shimozono v. May Dep't Stores Co.*, No. 00-04261 WJR AJWX, 2002 WL 34373490, at *13 (C.D. Cal. Nov. 20, 2002) (quoting *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983)) (internal quotation marks omitted).  Here, customers of the three-day workshops were "under no duty to report accurately."  *Id.* (excluding customer service survey response cards).  Whether the evidence qualifies for the present sense impression or state-of-mind exceptions depends on how Defendants intend to offer the evidence at trial.

Accordingly, the Court is prepared to **GRANT** Plaintiffs' motion to exclude the 98% rating.  As for the evaluation forms, the Court is prepared to **GRANT** Plaintiffs' request to exclude the forms with respect to representatives who purchased only the three-day workshop and **DENY** Plaintiffs' request with respect to representatives who purchased the Elite program.  Plaintiffs may renew their objection to specific testimony at trial.

## DEFENDANTS' MOTIONS IN LIMINE

**I.    Defendants' Motion in Limine No. 1: Exclude Specific Evidence of Non-Certified Alleged Misrepresentations (Dkt. No. 522)**

Defendants move to exclude three categories of evidence: (1) evidence implying that TU "guaranteed" its students financial success to induce them to pay for its courses; (2) evidence concerning complaints by TU students as to the scope and quality of their

mentorships; and (3) statements allegedly made by a TU instructor that he had dinner with Mr. Trump.  (Dkt. No. 522 at 4–6.)  Defendants argue that such evidence is irrelevant to the two certified misrepresentations, confusing and unfairly prejudicial, and comprises improper character evidence.  (*Id.* at 6–11.)

Plaintiffs move the Court to deny as moot Defendants' request to exclude evidence that Defendants "guaranteed" TU customers could recoup their payments, as Plaintiffs do not intend to present any arguments to that effect at trial.  (Dkt. No. 547 at 4.)  Plaintiffs also move the Court to deny as moot Defendants' request to exclude testimony about the scope and quality of TU mentorships, as Plaintiffs do not intend to make arguments to that effect at trial.  (*Id.* at 5.)  Plaintiffs additionally point out that Defendants' first two requests are overbroad and will exclude permissible uses of the contested evidence.  (*Id.* at 2.)  As to the third category of evidence Defendants seek to exclude, Plaintiffs respond that statements about instructors dining with Mr. Trump are directly relevant to the "handpicked" misrepresentation and are admissible as impeachment evidence.  (*Id.* at 5–10.)

Declining to adopt Defendants' restrictive interpretation of relevance, the Court at this stage finds that statements by TU instructors about dinner with Mr. Trump are relevant to the "handpicked" misrepresentation and may be admissible as impeachment evidence.  Given Plaintiffs' position that they do not intend to offer the contested evidence in the manner that Defendants object to, the Court is prepared to **DENY AS MOOT** Defendants' motion.

## II.   Defendants' Motion in Limine No. 2: Exclude Certain Statements By or About Donald Trump (Dkt. No. 524)

Citing concerns of relevance, unfair prejudice, and improper character evidence, Defendants move to exclude "evidence and argument relating to statements made by or about Mr. Trump outside of the adjudicative process."  (Dkt. No. 524 at 3–8.)  Defendants list fifteen broad categories of evidence that they wish to exclude.  (*Id.* at 4.)  Plaintiffs oppose, arguing that Defendants' motion is vague and premature, and that

various categories of evidence Defendants move to exclude are relevant and not unfairly prejudicial.  (Dkt. No. 549 at 3–11.)

Defendants have not identified specific evidence that they wish to exclude. Accordingly, the Court declines to issue a blanket ruling at this time and is prepared to **DENY** Defendants' motion without prejudice.  Defendants may renew their objection to specific testimony at trial.

### III.   Defendants' Motion in Limine No. 3: Exclude Evidence and Argument Regarding David Lazarus and *LA Times* (Dkt. No. 526)

Defendants move to exclude evidence and argument regarding *Los Angeles Times* ("*LA Times*") columnist David Lazarus.  (Dkt. No. 526 at 2.)  Specifically, Defendants move to exclude three articles written by Mr. Lazarus: (1) "Trump Spins in Foreclosure Game," dated December 12, 2007 (Plaintiffs' Exhibit 185), (2) "Trump's a Grump About Column on His 'Priceless' Tips," dated December 16, 2007 (Plaintiffs' Exhibit 186), and (3) "Donald Trump Tried to Get Me Fired After I Wrote About Trump University," dated March 9, 2016 (Plaintiffs' Exhibit 187).  (*Id.* at 3.)  Defendants also move to exclude a letter to the editor attributed to Mr. Trump, which the *LA Times* published on December 13, 2007 (Plaintiffs' Exhibit 1000).  (*Id.*)  Mr. Lazarus is not a class member and attended only a free "preview" event for TU in 2007.  (*Id.*)  Accordingly, Defendants contend that the contested evidence is irrelevant and unduly prejudicial, and that the articles constitute improper lay opinion and hearsay.  (*Id.* at 5–11.)  Finally, Defendants also make a broad request for exclusion of all other media coverage of TU.  (*Id.* at 12.)

Plaintiffs respond that Mr. Lazarus's testimony and the related exhibits are relevant to show that Mr. Trump had notice that TU's Live Events were being conducted by instructors whom he did not handpick—specifically, Stephen Goff.  (Dkt. No. 550 at 2.) Plaintiffs state that they intend to limit Mr. Lazarus's testimony to his article identifying Mr. Goff and Mr. Trump's response to the article.  (*Id.* at 4–5.)

Given Plaintiffs' intentions, the Court is prepared to **DENY** Defendants' motion. Plaintiffs may use the contested evidence for the limited purpose of establishing notice.

The Court is prepared to **DENY** Defendants' request to exclude all other media coverage of TU for lack of specificity.  Defendants may renew their objection to specific testimony at trial.

IV. **Defendants' Motion in Limine No. 4: Exclude Evidence Related to Better Business Bureau ("BBB") Complaint Resolution Process, Ratings, and Membership Applications (Dkt. No. 531)**

Defendants move to exclude (1) documents and testimony related to the BBB dispute resolution process and (2) documents and testimony related to BBB ratings and membership.  (Dkt. No. 531 at 5.)  Defendants move that the contested evidence is irrelevant, as the evidence does not concern the "handpicked" representation.  (*Id.* at 7.) Defendants posit that even the exhibits that contain reference to TU being an "accredited university" are irrelevant, as they were generated pursuant to internal BBB rules, rather than by consumers with percipient knowledge about Defendants' representations.  (*Id.*) Defendants also argue that Plaintiffs' evidence constitutes inadmissible lay opinion testimony by BBB representatives or former TU students, as well as inadmissible opinion on the ultimate legal question.  (*Id.* at 8–10.)  Defendants finally argue that TU students' complaints to the BBB and the BBB's letters denying accreditation are inadmissible hearsay and unduly prejudicial.  (*Id.* at 11–13.)

Plaintiffs respond that the BBB evidence is highly probative of the falsity and materiality of the "university" misrepresentation.  (Dkt. No. 556 at 3 – 5.)  Moreover, Plaintiffs argue that the evidence is relevant to show that the Defendants had notice or knowledge of the alleged falsity of their marketing campaign, and that the evidence may be used as impeachment or rebuttal evidence.  (*Id.* at 4–5.)  Plaintiffs contend that the evidence is not inadmissible hearsay, as the BBB records qualify for the business records exception, and TU's correspondence with the BBB qualify as party-opponent admissions. (*Id.* at 7–9.)  Finally, Plaintiffs argue that the evidence is not unduly prejudicial, and state that they do not intend to offer non-representative student evidence if Defendants

likewise do not offer non-representative testimony as to "student satisfaction." (*Id.* at 10–11.)

Given the Court's conclusion that Defendants may offer absent class member testimony only to rebut Plaintiffs' showing that the material misrepresentations were not uniformly made, Defendants' motion is moot as to Plaintiffs' non-representative student evidence. The Court finds that the BBB evidence is relevant to show that Defendants had knowledge or notice of the misrepresentations. The Court is prepared to **DENY** Defendants' motion and allow Plaintiffs to use the BBB evidence for the limited, non-hearsay purpose of establishing knowledge and notice.

## V.   Defendants' Motion in Limine No. 5: Exclude Evidence and Argument Relating to (1) New York Education Law; (2) New York State Education Department; and (3) New York Attorney General Case (Dkt. No. 529)

Defendants move to exclude exhibits, witnesses, and testimony related to the New York State Education Department ("NYSED"), its communications with Defendants about New York licensing requirements, and an enforcement action brought by the New York Attorney General. (Dkt. No. 529 at 3.) The categories of disputed evidence are: (1) internal TU correspondence and correspondence between a NYSED regulator and TU about steps TU should take to use the word "university"; (2) complaints from NY students to the NYSED; (3) testimony of Joseph Frey, a NYSED employee who sent and received the communications; and (4) pleadings, court decisions, and other evidence relating to the New York Attorney General's enforcement action against TU. (*Id.* at 5–6.) Defendants argue that the evidence exceeds the scope of class certification by improperly injecting a fraudulent omission theory into the case. (*Id.* at 6.) Defendants further contend that the evidence is irrelevant to the misrepresentations, as the class members did not know of the applicable New York regulation, and that it constitutes an improper legal opinion. (*Id.* at 6–9.) Defendants argue that the evidence is unduly prejudicial, confusing, and a waste of time, given that, *inter alia*, the pending prosecution in New York will require introduction of New York law and will require fact finding on

1    many other issues not litigated in this case.  (*Id.* at 9–10.)  Finally, Defendants argue that

2    New York law cannot serve as the predicate for a UCL violation.  (*Id.* at 10–12.)

3         Plaintiffs respond that the NYSED evidence is highly relevant to the common

4    liability issues.  (Dkt. No. 558 at 4–6.)  In particular, Plaintiffs assert that the 2005

5    NYSED cease-and-desist letter is relevant to falsity and materiality.  (*Id.* at 6–7.)

6    Plaintiffs contend that the NYSED evidence is not excludable as hearsay and urge the

7    Court to defer ruling on hearsay objections until trial.  (*Id.* at 7.)  Plaintiffs posit that Mr.

8    Frey's testimony is permissible under Federal Rule of Evidence 701.  (*Id.* at 8–9.)

9    Plaintiffs maintain that the disputed evidence is not unfairly prejudicial, and that the New

10   York enforcement action is "inextricably linked" to the evidence in this case.  (*Id.* at 9–

11   11.)

12        In response to Defendants' argument that New York law is an improper predicate

13   for the UCL's unlawful prong, Plaintiffs contend that state law violations unique to

14   domiciled companies in the state of incorporation are actionable under the UCL.  (*Id.* at

15   11.)  Plaintiffs' lone piece of legal authority is *Process Specialties, Inc. v. Sematech, Inc.*,

16   No. CIV. S-00-414FCD PAN, 2001 WL 36105562 (E.D. Cal. Nov. 8, 2001).  In *Process*

17   *Specialties*, the court held that the plaintiff may bring its UCL claim based on a violation

18   of Delaware law.  2001 WL 36105562, at *15.  However, the violation was fact-specific:

19   the defendant, a Delaware corporation, had committed *ultra vires* acts in violation of its

20   certificate of incorporation.  *Id.*  Here, there is no analogous violation.  And even if

21   Plaintiffs could successfully analogize their position to *Process Specialties*, recent case

22   law clearly points to the opposite conclusion.  *See, e.g.*, *Hilton v. Apple Inc.*, No.

23   CV137674GAFAJWX, 2014 WL 10435005, at *3 (C.D. Cal. Apr. 18, 2014) ("California

24   law does not permit the assertion of a UCL claim based on the violation of foreign law.").

25        The Court preliminarily finds that Mr. Frey's testimony is permissible under

26   Federal Rule of Evidence 701.  Plaintiffs state that Mr. Frey is slated to testify based on

27   firsthand knowledge that "the actions he took were on behalf of the NYSED in the course

28   of his official duties, including sending the 2005 cease-and-desist directive."  (Dkt. No.

558 at 8.)  To that end, Mr. Frey's testimony is admissible.  *See United States v. Matsumaru*, 244 F.3d 1092, 1102 (9th Cir. 2001) (holding that government witnesses' opinions were rationally based on their perception of the documents (visa petitions), and that the witnesses did not prove impermissible legal conclusions in testifying as to how knowing certain facts could have affected their decisionmaking).  Whether or not Mr. Frey's testimony constitutes an improper opinion as to the legal conclusion of the case will depend on how Mr. Frey testifies at trial.

The Court is prepared to **DENY IN PART** Defendants' motion with respect to the NYSED evidence, which may be admissible for the limited purpose of demonstrating Defendants' knowledge and notice of the misrepresentations, and with respect to the testimony of Mr. Frey.  Defendants may reassert their objection to specific testimony at trial.  The Court is prepared to **GRANT IN PART** Defendants' motion with respect to the pending New York Attorney General enforcement action.

## VI.     Defendants' Motion in Limine No. 6: Exclude Evidence Related to Students' Financial Condition (Dkt. No. 527)

Defendants move to exclude evidence related to TU students' financial condition. (Dkt. No. 527 at 3.)  Defendants contend that the students' ability to afford the courses they purchased in light of their personal finances, and evidence of students' efforts to accumulate sufficient funds to purchase TU's products, are irrelevant, unduly prejudicial, and inadmissible hearsay.  (*Id.*)  Defendants note that statements by non-class representatives raise particularly problematic hearsay issues.  (*Id.* at 7.)

Plaintiffs respond that Defendants' motion is overbroad and vague.  (Dkt. No. 551 at 7.)  Plaintiffs emphasize that evidence of students' financial condition is relevant to proving the class representatives' reliance on Defendants' misrepresentations.  (*Id.* at 4–5.)  Plaintiffs again reiterate their position that non-representative testimony is inadmissible.  (*Id.* at 5–8.)

As the Court has already addressed the admissibility of non-representative student testimony, Defendants' motion as to statements by absent class members is moot.

Because Defendants' motion is overbroad and premature at this stage, and because evidence of the students' financial condition is relevant to the issue of reliance, the Court is prepared to **DENY** Defendants' motion without prejudice.  Defendants may reassert their objection to specific testimony at trial.

### VII.  Defendants' Motion in Limine No. 7: Exclude Opinion Testimony of Gary Eldred (Dkt. No. 528)

Defendants move to exclude specific excerpts and testimony of Dr. Gary Eldred, but do not move to exclude Dr. Eldred as a witness entirely.  (Dkt. No. 528 at 3.) Defendants note that while Dr. Eldred's testimony constitutes expert opinion, Dr. Eldred was not designated as an expert witness, and that accordingly, his expert opinion testimony is inadmissible.  (*Id.* at 3–7.)  Defendants argue that Dr. Eldred also does not offer admissible lay opinion—he lacked firsthand knowledge of the TU materials that Plaintiffs asked him to review; his opinion requires specialized knowledge; and his opinion is not helpful to the jury.  (*Id.* at 7–11.)

Plaintiffs begin by stating that they will not use the disputed portions of Dr. Eldred's testimony so long as no evidence or argument about the "substance or value, or lack thereof, of TU's Live Events' materials" during phase one of trial.  (Dkt. No. 555 at 4.)  Plaintiffs respond that Dr. Eldred's testimony is in fact admissible, because his opinion does not constitute an expert opinion on the value of TU Live Events' materials. (*Id.* at 5–6.)  Plaintiffs argue that his testimony is admissible lay testimony based on his particularized knowledge, and that his testimony is less technical than lay witness testimony admitted in other cases.  (*Id.* at 6–7.)  Finally, Plaintiffs unconvincingly analogize Dr. Eldred's testimony to in-court identification testimony.  (*Id.* at 7–9.)

The disputed portions of Dr. Eldred's testimony are not based upon Dr. Eldred's percipient knowledge, and thus cannot qualify as lay opinion under Federal Rule of Evidence 701.  The testimony is instead based on Dr. Eldred's expertise in his field. (Dkt. No. 528 at 5–6.)  Accordingly, the Court is prepared to **GRANT** Defendants' motion to exclude only the specific, disputed portions of Dr. Eldred's testimony.

## VIII.  Defendants' Motion in Limine No. 8: Exclude Evidence Related to TU Instructors' Bankruptcy Proceedings (Dkt. No. 532)

Defendants move to exclude evidence that certain former instructors of TU had filed for bankruptcy protection, arguing that such evidence is irrelevant and unfairly prejudicial.  (Dkt. No. 532 at 4–6.)  Plaintiffs respond that the Court may deny as moot Defendants' motion so long as phase one of trial is limited to liability issues only.  (Dkt. No. 552 at 2.)  Plaintiffs maintain that if evidence about "positive attributes of TU instructors" or what the instructors purported to offer students is admitted, then evidence of the instructors' bankruptcy proceedings is admissible to rebut evidence of the instructors' value or qualifications.  (*Id.* at 3–7.)

Defendants cite cases wherein evidence of bankruptcy proceedings was excluded as unduly prejudicial.  (*Id.* at 5–6.)  Given the potential for bankruptcy proceedings to invoke social stigma, the Court is prepared to **GRANT** Defendants' motion.  Should evidence of the instructors' bankruptcy proceedings become relevant to rebut Defendants' evidence during the course of trial, the Court is prepared to allow Plaintiffs to point to the evidence's relevance at trial.

## CONCLUSION

Counsel are advised that the Court's rulings are tentative.  The Court will entertain additional argument at the hearing on November 10, 2016.

**IT IS SO ORDERED.**

Dated:  November 10, 2016

Hon. Gonzalo P. Curiel
United States District Judge