| | |
|---|---|
| 1 | ROBBINS GELLER RUDMAN & DOWD LLP |
| | PATRICK J. COUGHLIN (111070) |
| 2 | patc@rgrdlaw.com |
| | X. JAY ALVAREZ (134781) |
| 3 | jaya@rgrdlaw.com |
| | JASON A. FORGE (181542) |
| 4 | jforge@rgrdlaw.com |
| | RACHEL L. JENSEN (211456) |
| 5 | rjensen@rgrdlaw.com |
| | DANIEL J. PFEFFERBAUM (248631) |
| 6 | dpfefferbaum@rgrdlaw.com |
| | BRIAN E. COCHRAN (286202) |
| 7 | bcochran@rgrdlaw.com |
| | JEFFREY J. STEIN (265268) |
| 8 | jstein@rgrdlaw.com |
| | 655 West Broadway, Suite 1900 |
| 9 | San Diego, CA 92101 |
| | Telephone: 619/231-1058 |

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: 619/342-8000

Class Counsel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY LOW, J.R. EVERETT and JOHN BROWN, on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TRUMP UNIVERSITY, LLC, a New York Limited Liability Company and DONALD J. TRUMP, <br><br> Defendants. | No. 3:10-cv-0940-GPC(WVG) <br><br> CLASS ACTION <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO CONTINUE TRIAL DATE <br><br> DATE: *Ex Parte* <br> TIME: *Ex Parte* <br> CTRM: 2D <br> JUDGE: Hon. Gonzalo P. Curiel |

1206334_1

## I. INTRODUCTION

This is not a separation-of-powers issue. Nor is it any other form of Constitutional issue. It is not even a close call. Defendant Donald J. Trump has provided over 10 hours of video-recorded sworn testimony about the facts and circumstances at issue here. There is no reason to believe President-Elect Trump has any additional admissible testimony to offer, let alone testimony so important that he would be prejudiced if he is not able to present it at trial. He has submitted 510 pages of briefing and exhibits without identifying a single admissible fact that his testimony could establish that is not already in the record here. For all practical purposes, this is a concession that no such fact exists.

The legal standard for moving a trial date is the same for defendant Trump, candidate Trump, and President-Elect Trump: he must establish good cause. Because President-Elect Trump has failed to suggest, let alone establish, a single admissible fact that he will be unable to present at the currently scheduled trial, he has failed to establish good cause for delay. We do know that any delay would be a slippery slope because President-Elect Trump's life *is* only going to get more complicated and unpredictable as time goes by. Besides, his *ex parte* application concedes that he is available to testify prior to his inauguration, which means that he is available to testify at trial.

Plaintiffs respectfully request that the Court deny defendants' *ex parte* application in its entirety, including Trump's requests to continue the trial date, permit testimony prior to opening statements, and force the *Cohen* class to accept Trump's trial testimony long before that case is prepared for trial.

## II. LEGAL STANDARDS

This is defendant Trump's second *ex parte* application to continue trial in as many months, so the legal standard is familiar to everyone:

> "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard "primarily considers the diligence of the party seeking the amendment."

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension. If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citation and internal quotation marks omitted).

Dkt. 513 at 1-2.

The sole basis for Trump's *ex parte* application is his desire to seek additional testimony. From himself. This is, therefore, a request to reopen discovery. *Integra Lifesciences I, Ltd. v. Merck KgaA*, 190 F.R.D. 556, 559 (S.D. Cal. 1999) (there is no "distinction in the Federal Rules between trial and discovery depositions") (citing *Henkel v. XIM Prods., Inc.*, 133 F.R.D. 556, 557 (D. Minn. 1991)). For this reason, courts consistently find that parties fail to establish good cause where they want to re-depose witnesses in order to ask questions they could have asked in earlier depositions. *See, e.g.*, *EEOC v. Prod. Fabricators Inc.*, 285 F.R.D. 418, 423 (D. Minn. 2012); *Schultz v. Olympic Med. Ctr.*, No. C07-5377 FDB, 2008 WL 3977523, at *5 (W.D. Wash. Aug. 22, 2008); *Henkel*, 133 F.R.D. at 557; *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CIV 12-399-TUC-CKJ (LAB), 2014 WL 11512606, at *3 (D. Ariz. July 8, 2014).

Courts likewise regularly reject requests to modify scheduling orders based on tactical decisions that may not have panned out. *Shukh v. Seagate Tech., LLC*, No. CIV. 10-404 (JRT/JJK), 2013 WL 53835, at *5 (D. Minn. Jan. 3, 2013) ("the 'wait and see' approach is a tactical decision, and does not demonstrate diligent pursuit of discovery");[1] *Davis v. Cal. Dep't of Corr. & Rehab.*, No. C 08-4481 SBA, 2013 WL 1208965, at *4-*5 (N.D. Cal. Mar. 25, 2013) (strategic decision to proceed to trial without taking any depositions not excusable neglect); *Mann v. Fernandez*, 615 F. Supp. 2d 1277, 1286-87, 1289 (D.N.M. 2009) (strategic decision to rely on treating physician versus hired expert not good cause).

---

[1] Citations and footnotes are omitted and emphasis is added unless otherwise noted.

For example, the district court in *George v. Ford Motor Co.*, No. 03CIV.7643(GEL), 2007 WL 2398806, at *11-*12 (S.D.N.Y. Aug. 17, 2007) denied a motion to take a so-called trial deposition after close of discovery:

> Plaintiffs had every opportunity to seek the deposition of Auiler by seeking enforcement of a subpoena in the appropriate district under Rule 45(a)(2)(B) during the discovery period. Such a deposition would then have been available for use at trial. Plaintiffs instead made a strategic decision not to do so, but instead to seek to depose Auiler in a similar litigation in New Jersey, and then to offer that deposition into evidence in this case. That plan came undone when the United States District Court for the District of New Jersey rejected the application for a deposition as untimely and unnecessary in that case.

Similarly, in *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990), the Fifth Circuit warned that allowing parties to flout deadlines degrades the integrity of judicial proceedings:

> Regardless of [the plaintiff's] intentions, or inattention, which led to the flouting of discovery deadlines, such delays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings.

## III.   PROCEDURAL HISTORY

This case has been pending for more than six-and-a-half years. *See* Dkt. No. 1. plaintiff Sonny Low, a representative for an elder abuse class, is nearly 75 years old. Dkt. No. 122-3, Ex. 5 (Low Decl.), ¶1.

On September 12, 2012, Trump provided about three hours (168 pages) of sworn deposition testimony in this case. *See* Dkt. 492-2, Ex. 1.

On December 19, 2014, discovery in this case closed. Dkt. 349 at 1.

On July 2, 2015, discovery in *Cohen v. Trump*, No. 13-cv-2519-GPC-WVG closed, with the exception of Trump's deposition and two others. *See Cohen* Dkt. 58 at 3.

At a December 4, 2015 status conference, the Court informed the parties of its hope to get this case to trial in June of 2016. Dkt. 512-2, Ex. 1 (12/4/15 Hrg. Tr.) at 4:8-10, 9:3-5.

On December 10, 2015, Trump provided five hours (366 pages) of sworn deposition testimony in the *Cohen* case.

On January 21, 2016, Trump provided an additional two hours (110 pages) of sworn deposition testimony in the *Cohen* case.[2]

On March 11, 2016, this Court held a hearing, during which the Court entertained Trump's request to delay trial until after the Republican National Convention in July. *See* Dkt. 512-2, Ex. 2 (3/11/16 Hrg. Tr.) at 28:15-21, 29:15-21, 35:7-18. Plaintiffs requested a June trial date. *Id.* at 35:21.

On May 6, 2016, this Court held the final pretrial conference, during which plaintiffs requested a trial date in July or August. Dkt. 512-2, Ex. 3 (5/6/16 Hrg. Tr.) at 9:7-8, 16:21-17:1; *see also* Dkt. 466 at 2-4. Defendants asked to postpone trial to a date uncertain after the November 8, 2016 Presidential election. Dkt. 512-2, Ex. 3 (5/6/16 Hrg. Tr.) at 10:12-14. After the Court suggested accommodating Trump's request by setting the trial to begin on November 28, 2016, plaintiffs' counsel acquiesced on the condition that it was a date certain – even if Trump won the election:

> If we know for certain, okay, we are going to go to trial – elected, not elected, whatever might happen, if we are going to go to trial immediately after Thanksgiving, we absolutely would accept that, and we would advocate for that, certainly more so than any trial date that is at all dependent upon the outcome of the election because, frankly, that is just fraught with peril, and that is really no trial date at all because there's way more uncertainty than certainty if we are making this contingent upon the election outcome.

---

[2] Plaintiffs have no objection to Trump introducing at trial any otherwise admissible portions of his three depositions.

1  *Id*. at 18:3-12.  The Court then confirmed the November 28, 2016 trial date.  *Id.* at
2  19:3-11. Even the hearings on motions *in limine* and jury instructions were scheduled
3  after the election.  *Id*. at 19:12-22.

4        On September 12, 2016, Trump's counsel filed an *ex parte* application to
5  continue the trial date until January 2, 2017 or, alternatively, December 12, 2016 –
6  both dates prior to the inauguration.  *See* Dkt. 510 at 3.

7        On September 15, 2016, the Court denied defendants' request, finding they had
8  failed to establish "good cause" to continue the November 28, 2016 trial date.  *See*
9  Dkt. 513 at 2.  In denying defendants' request, the Court emphasized the age of the
10 case and the fact that the Court had "repeatedly accommodated Defendants' requests
11 with respect to scheduling trial," which included setting the trial date and important
12 pretrial hearings after the election at Trump's request.  *See id.*

13       On November 12, 2016, Trump filed the present *ex parte* application to
14 continue the trial date, this time to January, or February, or some other yet-to-be-
15 determined time *after* Trump assumes the powers, responsibilities and commitments
16 of the presidency.  Dkt. 567.  In his *ex parte* application, Trump concedes that he is
17 available to testify prior to his inauguration.  *Id.* at 2.  Trump's *ex parte* application
18 does not identify any new admissible facts that his testimony could establish.  *See id.*
19 at 3.

20 **IV.  ARGUMENT**

21     **A.    Trump Has Failed to Establish Good Cause**

22      There are at least three undisputed facts that are each independently fatal to
23 Trump's *ex parte* application.

24         **1.    Trump Has No New Testimony to Offer**

25      First, realizing his inability to establish the requisite good cause to delay trial,
26 Trump's *ex parte* application ignores the standard altogether.  That is why this is not a
27 close call.  By failing to identify a single admissible fact that his testimony could
28 establish that is not already in the record, Trump has failed to establish any cause

1  whatsoever – good or otherwise.  This fact alone is fatal to Trump's request inasmuch
2  as there is absolutely no reason to delay trial if the evidence in a delayed trial would
3  be the same as the evidence in the scheduled trial.  *See, e.g.*, *Salek v. Reload, Inc.*, No.
4  11-2585-SAC, 2014 WL 11497890, at *3 (D. Kan. Jan. 9, 2014) (finding no
5  likelihood that reopened discovery will lead to relevant evidence where, "[u]pon
6  further inquiry by the court during the hearing, it became apparent that [the plaintiff]
7  had already explored these topics during previous depositions").

### 2. Trump Cannot Demonstrate Diligence

9  Second, in failing to identify a single admissible fact that his testimony could
10 establish that is not already in the record, Trump has failed to establish any
11 justification for not providing such testimony during any of his three deposition
12 sessions, two of which occurred after Trump was favored to become the Republican
13 Presidential nominee.  This, too, is independently fatal to Trump's request:

> Defendants made strategic decision about what to ask Mr. Breaux during his deposition, and about when to depose him. . . . . "[T]he Court cannot find good cause allowing it to grant the Motion to Re–Depose based upon [a party]'s choice not (or even his neglect) to ask questions he could have asked at the ... deposition."

17 *Prod. Fabricators Inc.*, 285 F.R.D. at 422-23; *Integra Lifesciences*, 190 F.R.D. at 559
18 (no good cause where "[d]uring the discovery deposition, defense counsel did not ask
19 any questions").  As the Ninth Circuit holds, "[i]f the party seeking the modification
20 'was not diligent, the inquiry should end' and the motion to modify should not be
21 granted."  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).
22 Because Trump's *ex parte* application concerns his own testimony, he cannot possibly
23 establish that he was diligent, yet failed to provide any relevant testimony in his three
24 depositions.

### 3. Trump Is Available to Testify at the Scheduled Trial

26 Third, Trump's *ex parte* application concedes that he is available to testify prior
27 to his inauguration.  Dkt. 567 at 2 ("President-Elect Trump will make himself
28 available for trial examination in January 2017, by which time, much of the transition

1  process will have been concluded."). This is the clearest proof that Trump's *ex parte*
2  application is simply a redux of his failed September *ex parte* application. Conceding
3  that he can afford to set aside a day in January 2017 to testify in this case is the same
4  as conceding that he can set aside a day in early December to do so. Since Trump has
5  complete control over when he makes what decisions, he can simply shift his schedule
6  one day, testify, and then pick up with the transition process right where he left off.
7  Therefore, Trump can choose between testifying live or submitting his prior
8  deposition testimony. Neither option would prejudice his defense. *Cf Fid. Nat. Fin.,*
9  *Inc. v. Nat'l Union Fire Ins. Co.*, 308 F.R.D. 649, 653 (S.D. Cal. 2015) ("this Court
10 rejects NU's assertion that it will be prejudiced if it proceeds to trial without being
11 able to proffer live testimony from Mr. Felton, as it is free to rely on and submit his
12 deposition testimony given his unavailability to testify personally").

### B.   Plaintiffs Will Be Further Prejudiced by Any Further Delay

14 Each of defendants' "modest" requests to delay this trial has been just a prelude
15 to another request. In March, they asked for August. In May, they asked for
16 November. In September, they asked for December. Now, they are asking for
17 January. Or February. Or who knows. This Court has recognized that plaintiffs and
18 the class have already waited too long for their claims to be adjudicated, and that the
19 advanced age of plaintiff Low and multiple class members affords them a preference
20 under California law. Dkt. 512-2, Ex. 3 (5/6/16 Hrg. Tr.) at 12:20-15:14. Defendants
21 are well aware, for example, that plaintiff Low has multiple medical issues and will
22 turn 75 years old before the November 28, 2016 trial. Memories fade, people's health
23 degrades, and with each passing month, plaintiffs face a greater challenge. The Court
24 has been more than generous in accommodating defendants' multiple delay requests,
25 but after six-and-a-half-years of waiting, plaintiffs cannot afford any further delays.
26 *See, e.g.*, *Wakefield v. Glob. Fin. Private Capital, LLC*, No. 15CV0451 JM(JMA),
27 2015 WL 12699870, at *1, *3 (S.D. Cal. Sept. 17, 2015) (exercising discretion "to set
28 this matter for trial as early as practicable" where plaintiff was elderly and her health

deteriorating). Moreover, now that we are this close to trial, a several-month delay would mean plaintiffs' counsel would have to prepare for this trial twice, which would be a tremendous waste of time and money.[3]

### C. Proceeding to Trial Does Not Implicate the Separation-of-Powers Doctrine

There is no separation-of-powers concern here. The Court is not being asked to compel Trump to do anything. He is free to testify, not testify, or use any of the more than 10 hours of deposition testimony he has already provided in these cases at trial. Trump is also not yet a sitting president. As his own exhibits to his application recognize, Trump's presidential authority does not begin until "being sworn into office." Dkt. 576-2, Ex. 1 at 4.

Even if Trump *were* a sitting president, and even if the Court *was* asking him to provide testimony, the Supreme Court has made clear that such a scenario does not pose any separation-of-powers problem. In *Clinton v. Jones*, 520 U.S. 681 (1997), the Court "rejected the argument that the potential burdens on the President violate separation of powers principles" in a civil lawsuit against then-President Bill Clinton for alleged misconduct prior to his taking office. *Id.* at 707. The Court found it to be "'settled law that the separation-of-powers doctrine does not bar every exercise of jurisdiction over the President of the United States.'" *Id.* at 705. Although the Court recognized that the trial court had discretion to manage actual scheduling conflicts that arose from the presidential office, "[t]he proponent" of a "decision to postpone the trial . . . bears the burden of establishing its need." *Id.* at 708. The Court found that, because Clinton had failed to provide a particularized need to postpone the trial other than a generic concern "that a trial may consume some of the President's time and attention," he had failed to satisfy this burden. *Id.* Here, Trump has provided a far weaker showing than the insufficient showing in *Clinton*. He is not a sitting president;

---

[3] Although Trump's *ex parte* application pays lip service to a potential settlement, no case has ever gotten closer to resolution by postponing trial.

he has already provided more than 10 hours of testimony in this case; he has failed to identify a single new relevant fact his further testimony would establish; he has not identified any actual scheduling conflict; and, to the extent he wants to add to his testimony, he has already conceded his availability to do so between now and the inauguration.

The *Clinton* Court also distinguished the other case on which defendants primarily rely, *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), which involved an alleged retaliatory firing of an official during the Nixon administration. Whereas *Nixon* involved potential liability stemming from official acts while in office, the *Clinton* Court found the reasoning of that case "provides no support for an immunity for **unofficial** conduct." 520 U.S. at 694 (emphasis in original). Instead, the Court cited approvingly the majority holding of the appellate court in the matter before it, that "'the President, like all other government officials, is subject to the same laws that apply to all other members of our society.'" *Id*. at 688; *see also Barnett v. Norman*, 782 F.3d 417, 422 (9th Cir. 2015) ("No one, not even the President of the United States, can automatically avoid testifying in a deposition, before a grand jury, or in a courtroom.").[4]

The only separation-of-powers concern implicated by Trump's request is his attempt to use the prospect of his future presidency to delay this trial *ad infinitum*.

---

[4] Defendants' remaining case citations further confirm their request lacks merit. The courts in *United States v. McDougal*, 934 F. Supp. 296 (E.D. Ark. 1996), *United States v. Poindexter*, 732 F. Supp. 142 (D.D.C. 1990), and *United States v. Fromme*, 405 F. Supp. 578 (E.D. Cal. 1975), each found that the needs of criminal defendants were sufficient to compel testimony from Presidents Clinton, Reagan and Ford, respectively. Not only are these cases inapposite, given that plaintiffs are not asking for the Court to compel any testimony from Trump, they only demonstrate the need to balance the interests of all parties. As the *Poindexter* court eloquently put it, "it would be inconceivable – in a Republic that subscribes neither to the ancient doctrine of the divine right of kings nor to the more modern conceit of dictators that they are not accountable to the people whom they claim to represent or to their courts of law – to exempt [a President] from the duty of every citizen to give evidence." 732 F. Supp. at 160. The facts of *In re Bush*, 287 S.W.3d 899, 901-02 (Tex. App. 2009), are even further afield, as there, the testimony of President Bush was not even necessary to the claims at issue.

1  Plaintiffs have waited more than six-and-a-half years for their day in court, and it
2  would be an injustice to them and undermine the independence and truth-seeking-
3  function of the judiciary to ask them to wait until Trump assumes office and the
4  demands of the presidency turn from mere preparation to actual practice.

## V. CONCLUSION

This trial, like so many Trump University student-victims' credit-card bills, is past due.  For all the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' *ex parte* application and confirm the November 28, 2016 trial.[5]

DATED:  November 14, 2016            Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
X. JAY ALVAREZ
JASON A. FORGE
RACHEL L. JENSEN
DANIEL J. PFEFFERBAUM
BRIAN E. COCHRAN
JEFFREY J. STEIN


                s/ Jason A. Forge
               JASON A. FORGE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
AARON M. OLSEN
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

---

[5] For the same reasons, the Court should deny defendants' request for a "temporary stay of proceedings" (Dkt. 567 at 10 n.12), which is simply a request to continue in alternative relief's clothing.

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 14, 2016.

s/ Jason A. Forge
JASON A. FORGE

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:      jforge@rgrdlaw.com

1206334_1

3:10-cv-0940-GPC(WVG)