ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (111070)
patc@rgrdlaw.com
X. JAY ALVAREZ (134781)
jaya@rgrdlaw.com
JASON A. FORGE (181542)
jforge@rgrdlaw.com
RACHEL L. JENSEN (211456)
rjensen@rgrdlaw.com
DANIEL J. PFEFFERBAUM (248631)
dpfefferbaum@rgrdlaw.com
BRIAN E. COCHRAN (286202)
bcochran@rgrdlaw.com
JEFFREY J. STEIN (265268)
jstein@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ambere@zhlaw.com
AARON M. OLSEN (259923)
aarono@zhlaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SONNY LOW, J.R. EVERETT and
JOHN BROWN, on Behalf of
Themselves and All Others Similarly
Situated,

                              Plaintiffs,

        vs.

TRUMP UNIVERSITY, LLC, a New
York Limited Liability Company and
DONALD J. TRUMP,

                              Defendants.

_____

[Caption continued on following page.]

No. 3:10-cv-0940-GPC(WVG)

CLASS ACTION

JOINT MOTION FOR
PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

CTRM:        2D
JUDGE:       Hon. Gonzalo P. Curiel

1216814_2

| | |
|---|---|
| 1   ART COHEN, Individually and  on | )   No. 3:13-cv-02519-GPC-WVG |
| 2   Behalf of All Others Similarly Situated, | ) |
| | )   <u>CLASS ACTION</u> |
| 3                    Plaintiff, | ) |
| 4      vs. | ) |
| 5   DONALD J. TRUMP, | ) |
| 6                   Defendant. | ) |
| | ) |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................... 1

II.    RELEVANT PROCEDURAL BACKGROUND .......................................... 2

III.   OVERVIEW OF THE SETTLEMENT ..................................................... 5

IV.   APPLICABLE LEGAL STANDARDS ..................................................... 7

V.    THE COURT SHOULD PRELIMINARILY APPROVE THE
SETTLEMENT ...................................................................................... 8

     A.    The Settlement Provides a Fair, Adequate, and Reasonable
Result for Class Members ........................................................ 8

           1.    Amount Offered in Settlement ..................................... 9

           2.    The Strength of Plaintiffs' Case and the Risk, Expense,
and Delay of Further Litigation, and Risk of
Decertification .......................................................... 10

           3.    The Extent of Discovery Completed, and the Stage of the
Proceedings .............................................................. 11

           4.    The Experience and Views of Counsel ..................... 11

     B.    Class Counsel Are Providing Their Years of Services *Pro Bono* ...... 12

     C.    The Settlement Provides the Best Class Notice Practicable .............. 12

     D.    Class Members Already Had an Opportunity to Opt Out ................. 14

VI.   THE PARTIES' PROPOSED SCHEDULE OF EVENTS .......................... 15

VII.  CONCLUSION ................................................................................... 16

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Bellinghausen v. Tractor Supply Co.*,

5

306 F.R.D. 245 (N.D. Cal. 2015) ........................................................ 9

6

*Capps v. Law Offices of Peter W. Singer*,

7

No. 15-cv-02410-BAS(NLS), 2016 U.S. Dist. LEXIS 161137
(S.D. Cal. Nov. 21, 2016) ............................................................ 9, 13

8

*Castillo v. ADT LLC*,

9

No. 2:15-383 WBS DAD, 2016 U.S. Dist. LEXIS 151423

10

(E.D. Cal. Nov. 1, 2016) .................................................................. 9

11

*Cervantez v. Celestica Corp.*,

12

No. EDCV 07-729-VAP, 2010 U.S. Dist. LEXIS 78342
(C.D. Cal. July 6, 2010) ................................................................ 11

13

*Churchill Vill., L.L.C. v. GE*,

14

361 F.3d 566 (9th Cir. 2004) ........................................................... 8

15

*Class Plaintiffs v. Seattle*,

16

955 F.2d 1268 (9th Cir. 1992) .......................................................... 7

17

*Dalton v. Lee Publ'ns, Inc.*,

18

No. 08-CV-1072-GPC-NLS, 2014 U.S. Dist. LEXIS 148240
(S.D. Cal. Oct. 17, 2014) ............................................................ 7, 9

19

*Grunin v. Int'l House of Pancakes*,

20

513 F.2d 114 (8th Cir. 1975) .......................................................... 13

21

*Hanlon v. Chrysler Corp.*,

22

150 F.3d 1011 (9th Cir. 1998) .......................................................... 8

23

*Hart v. Colvin*,

24

No. 15-cv-00623-JST, 2016 U.S. Dist. LEXIS 155799

25

(N.D. Cal. Nov. 9, 2016) ............................................................ 7, 8

26

*In re Immune Response Sec. Litig.*,

27

497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................ 11

28

1

2                                                                                    **Page**

3

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................ 7, 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
    *Practices, & Prods. Liab. Litig.*,
    No. 8:10ML 02151 JVS, 2013 U.S. Dist. LEXIS 123298
    (C.D. Cal. July 24, 2013) ............................................................................. 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.*
    *Liab. Litig.*,
    MDL No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374
    (N.D. Cal. Oct. 25, 2016) ........................................................................... 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .................................................................................. 12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................... 14

*Ridgeway v. Wal-Mart Stores, Inc.*,
    No. 08-cv-05221-SI, 2016 U.S. Dist. LEXIS 116748
    (N.D. Cal. Aug. 30, 2016) ......................................................................... 14

*Riker v. Gibbons*,
    No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841
    (D. Nev. Oct. 28, 2010) ........................................................................ 11, 12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...................................................................... 10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 7

*Stetson v. Grissom*,
    821 F.3d 1157 (9th Cir. 2016) .................................................................... 12

*United States v. Armour & Co.*,
    402 U.S. 673 (1971) ................................................................................... 9

1216814_2

1
2                                                                              **Page**
3
**STATUTES, RULES AND REGULATIONS**
4
Federal Rules of Civil Procedure
5        Rule 23...........................................................................................16
6        Rule 23(b)(3) .................................................................................14
        Rule 23(c)(2)...................................................................................12
7        Rule 23(e) .........................................................................................7
8        Rule 23(e)(3)...................................................................................15
        Rule 23(e)(4)...................................................................................14
9
10   Local Civil Rules
        Rule 7.2(c) ......................................................................................15
11
12   **SECONDARY AUTHORITIES**

13   4 Alba Conte & Herbert B. Newberg,
        *Newberg on Class Actions* (4th ed. 2002)
14       §11:47 ..............................................................................................11
15
     *Manual for Complex Litigation* (4th ed. 2004)
16       §21.63 ...................................................................................7, 12, 15
17
18
19
20
21
22
23
24
25
26
27
28

1216814_2

## I.     INTRODUCTION

After six-and-a-half-years of hard-fought litigation, and on the eve of trial, the Parties reached a global settlement to resolve not only these Actions, but also the New York Attorney General ("NYAG") Action pending in New York state court since 2013.  The settlement terms are reflected in the Stipulation of Class Action Settlement which, along with its exhibits, is referred to as the "Agreement" and attached hereto as Exhibit 1.[1]

Under the Agreement, Trump University will pay $25 million to settle these Actions and the NYAG Action without an admission or a finding of wrongdoing, liability, or fault.  The Net Settlement Fund to be distributed to Eligible Class Members in these Actions is nearly $21 million, which is expected to yield payments to Eligible Class Members, estimated to be half of what they paid for TU Live Events, less any refunds received.[2]  And Class Counsel are providing their years of legal services to Plaintiffs and the Class Members on a *pro bono* basis, further increasing Class Member recoveries.

By any metric, this is a fair, adequate, and reasonable settlement.  Both Plaintiffs and Defendants believe in the merits of their cases and compromised to reach this result.  The outcome of the liability trial in the *Low* Action was uncertain; even if Plaintiffs prevailed, onerous individual damages proceedings would have followed for Class Members because damages were decertified.  A decertification motion was pending in *Cohen*, and if Plaintiffs maintained certification, *Cohen* would require a second jury trial.  Lengthy appeals were also likely to follow any judgment. This Settlement provides immediate relief to Class Members, who will not have to deal with uncertainty and wait through lengthy trials and appeals.

---

[1]   Capitalized terms shall have the same meaning as set forth in the Agreement, unless otherwise noted.

[2]   $4 million will be paid to the NYAG to settle his action pending in New York state court and provide monetary relief to non-class members covered by that action.

The Parties request, therefore, that the Court grant their joint motion for preliminary approval, order the Class Notices to be sent out, and set a date and time for a fairness hearing pursuant to Federal Rule of Civil Procedure ("Rule") 23(e)(2).

## II.   RELEVANT PROCEDURAL BACKGROUND

The procedural history of these Actions is extensive and well-known to the Court. Therefore, the Parties limit their recitation here to facts relevant to the issues at hand.

On April 30, 2010, a putative class action complaint was filed in the *Low* Action against TU for violations of certain state laws, seeking refunds and other relief. *See Low* Dkt. 1.  Donald J. Trump ("Trump") was named as an individual defendant on December 16, 2010.  *See Low* Dkt. 41.

On August 12, 2011, the Parties in *Low* participated in a mandatory Early Neutral Evaluation Conference ("ENE") before Magistrate Judge Gallo.  *See Low* Dkt. 79.  All the parties, including Trump and the named plaintiffs at the time, attended along with Class Counsel and Defendants' former counsel.  The Parties exchanged settlement proposals as part of the ENE, but were unable to make progress toward settlement.  Judge Gallo ordered discovery to commence in *Low*.  *See Low* Dkt. 80.

On August 24, 2013, the NYAG filed an action in New York state court against TU, Trump, and other defendants for violations of New York law.  *See The People of the State of New York by Eric T. Schneiderman, et al. v. The Trump Entrepreneur Initiative LLC, f/k/a Trump University LLC, et al.*, Dkt. No. 310 (Index No. 451463/13) (N.Y. Sup. Ct. filed Aug. 24, 2013).

On October 18, 2013, a putative class action complaint was filed in the *Cohen* Action against Trump for violation of the Racketeer Influenced and Corrupt Organizations Act, seeking refunds and other relief.  *See Cohen* Dkt. 1.

On February 21, 2014, the Court certified a class of TU Live Event purchasers in California, Florida, and New York in the *Low* Action.  *See Low* Dkt. 298.  On October 27, 2014, the Court certified an overlapping class of TU Live Event purchasers nationwide in the *Cohen* Action.  *See Cohen* Dkt. 53.

On April 10, 2014, Class Counsel and Defendants' prior counsel participated in a telephonic ENE before Judge Gallo in *Cohen*. *See Cohen* Dkt. 25. Again, the Parties exchanged proposals but did not make meaningful progress toward settlement. Thus, Judge Gallo ordered discovery to commence in *Cohen*. *See Cohen* Dkt. 26.

On December 19, 2014, discovery closed in the *Low* Action. *See Low* Dkt. 349.

On March 12, 2015, Parties in both Actions attended a mandatory joint settlement conference before Judge Gallo. *See, e.g.*, *Low* Dkt. 393. The Parties again exchanged proposals and submitted statements to Judge Gallo prior to the settlement conference. The Parties were again unable to reach a resolution.

In July 2015, discovery closed in the *Cohen* Action, with the exception of several depositions, including Trump's deposition, which was completed in January 2016. *See Cohen* Dkt. 58.

On September 18, 2015, the Court declined to decertify the Class in the *Low* Action, but decertified damages, and bifurcated damages issues from liability issues for purposes of trial. *See Low* Dkt. 418.

On September 21, 2015, the Court ordered a joint class notice ("Notice of Pendency") to be mailed to all potential Class Members in both Actions, providing them an opportunity to "opt-out" and ordering that "[a]ny Class Member who does not send a completed, signed request for exclusion to the Notice Administrator post-marked on or before the Opt-Out Deadline will be deemed to be a Member of the Class for all purposes and bound by all further orders and judgments of the Court." *Low* Dkt. 419 at 10-11; *Cohen* Dkt. 130 at 10-11. On November 16, 2015, the Opt-Out Deadline expired in both Actions. *Low* Dkt. 419 at 11; *Cohen* Dkt. 130 at 10. Thirteen (13) individuals filed formal opt-out requests, including three (3) late opt outs that were granted by this Court. *See Cohen* Dkt. 154-1; *Low* Dkt. 430-1.

During spring of 2016, the Parties engaged in informal settlement discussions under the auspices of the Honorable Daniel H. Weinstein (ret.). The Parties also

1    participated in a settlement conference in the *Cohen* Action before Judge Gallo on

2    March 29, 2016.  *See Cohen* Dkt. 175.  Again, the Parties failed to reach a resolution.

3            On August 2, 2016, the Court issued an order setting trial in the *Low* Action to

4    begin on November 28, 2016.  *See Low* Dkt. 502.

5            During the November 10, 2016 motions *in limine* hearing in the *Low* Action,

6    the Court encouraged the Parties to explore a possible resolution with the assistance of

7    the Honorable Jeffrey T. Miller, who had offered his services.  *See* 11/10/16 Tr. at

8    11:4-12:6.  The Parties took up the Court, and Judge Miller, on the offer.

9            On November 16, 2016, Judge Miller oversaw an extended day of settlement

10   negotiations.   Counsel for the Class and for Defendants were present, with a

11   representative of Defendants present in person and Plaintiffs available by phone.

12   Representatives of the NYAG's office were also available by phone.  At the end of the

13   lengthy mediation session, the Parties reached an agreement on the basic framework

14   for a global resolution of these Actions, and the NYAG Action.   Thereafter, the

15   Parties engaged in an intensive negotiation among themselves and with the NYAG's

16   office, exchanging seven (7) different versions of the term sheet.  The Parties' efforts

17   resulted in a November 18, 2016 Term Sheet, which reflects the principal terms of the

18   Parties' settlement of these Actions on a classwide basis, and a November 18, 2016

19   Memorandum of Agreement between the defendants and the NYAG in the NYAG

20   state action.  *See* 11/18/16 Tr. at 2:15-7:2.

21           In the intervening weeks, the Parties have drafted, revised, and negotiated the

22   Agreement and its six (6) exhibits.  The exhibits to the Agreement include the two

23   Class Notices, the Claim Form, the Preliminary Approval Order ("PAO"), Final

24   Approval Order, and a Final Judgment.  The Parties exchanged multiple drafts of the

25   Agreement and all of its exhibits, and held many phone calls among themselves and

26   with the NYAG and BBB before executing the Agreement on December 19, 2016.

27

28

### III.   OVERVIEW OF THE SETTLEMENT

The classwide Settlement of these Actions is straightforward and provides the opportunity for Class Members to submit a simple Claim Form to receive an Award for a significant portion of the price paid for TU Live Events.  The Class Members who are eligible for Awards under the Settlement fall within the definitions of the overlapping Classes certified by this Court in the Actions.  *Compare* Ex. 1 at ¶II.7,[3] *with Low* Dkt. 298 at 35, *and Cohen* Dkt. 53 at 22-23.  Accordingly, no additional class certification is required for settlement purposes.

On or before January 18, 2017, TU will pay $25 million into an Escrow Account to fund the Settlement.  ¶IV.A.1.  As part of the Agreement, Trump is personally guaranteeing that the full Settlement Amount will be paid by the Due Date.  ¶¶II.21, IV.A.4.  In the Settlement, Defendants do not admit and there is no finding of wrongdoing, liability, or fault whatsoever.  ¶¶X.2-3.  Of the Settlement Amount, $21 million (less Service Awards and Taxes and Tax Expenses for the Escrow Account) will be distributed to Eligible Class Members on a *pro rata* basis.  ¶¶II.26, III.1.  Class Counsel will not seek any legal fees or costs, as they are providing their legal services *pro bono*.  ¶IX.1.  Plaintiffs will seek Service Awards of up to $15,000 for each Court-appointed class representative in the Actions.  ¶IX.2.  $4 million will be paid to the NYAG to settle his action pending in New York state court and provide monetary relief to non-class members covered by that action, cover all the Notice and Administration Expenses incurred for these Actions and the NYAG Action, and pay any civil penalties and/or costs.[4]  ¶IV.3.

Based on the total purchases by Class Members in the United States, and depending on the claims rate, Eligible Class Members will receive Awards estimated to be 50% of what they paid for the TU Live Events, less any refunds received.  The

---

[3]   All "¶___" references are to the Stipulation.

[4]   Any remainder will revert to the Net Settlement Fund for an additional distribution to Eligible Class Members in these Actions.

Settlement provides that, within fifteen (15) days of this Court's entry of the PAO, the Settlement Administrator will mail and email the Long-form Notice and Claim Form to all known Class Members based on the most current contact information available to the Parties, Epiq Systems (the "Notice Administrator"), the NYAG, and the Settlement Administrator.  ¶¶II.8, 9, 23.  The Settlement Administrator will also publish the Summary Notice within fifteen (15) days of the PAO in the national edition of USA Today.  ¶II.48.  The Class Notices will direct Class Members to the Settlement Website, where the Long-form Notice, the Agreement, the PAO, and other documents and information will be posted.  ¶V.5.  In addition, the Class Notices will advise Class Members of their rights and options, including the deadlines to submit a Claim Form, object, and/or notice their intent to appear at the Final Approval Hearing. ¶II.8.  As the definition of the Class Members for purposes of the Settlement is the same as the overlapping Classes previously certified by this Court in the Actions, and as the Court previously ordered the dissemination of individual Notices of Pendency to all Class Members with ample opportunity to "opt out," Class Members will not be given a second opportunity to do so.  ¶VII.1.

Due to the passage of time and other factors, Trump University may not have 100% complete purchase and refund data.  Accordingly, the Settlement provides a simple, straightforward claims process by which Class Members may obtain an Award from the Settlement.  The process for submitting a Claim Form is designed to be as easy as possible:  the Claim Form is a one-page, simple questionnaire that Class Members may submit by mail, fax, email, or via the Settlement Website. ¶III.2 & Ex. A3.  If there is documentation of purchase available in the Parties' records, no further documentation will be required from the claimant.  ¶III.6.  If there is no documentation available that verifies purchase, the Settlement Administrator will contact the claimant to request documentation and remedy any deficiencies in the Claim Form.  *Id.*  This claims process imposes the least amount of burden, while ensuring that Awards only go to Eligible Class Members.  In addition, the Settlement

1    Administrator will undertake best efforts to follow up with Eligible Class Members
2    and ensure that their Award checks are cashed.  If any money remains in the Net
3    Settlement Fund after the initial distribution (due to uncashed checks past the stale
4    date), the Settlement Administrator will make additional *pro rata* distributions to
5    those Eligible Class Members who have cashed their Award checks, until the Net
6    Settlement Fund is exhausted.  ¶III.8.

7         To provide timely relief to Class Members, the Parties' proposed PAO provides
8    that the Court will schedule the Final Approval Hearing one hundred (100) days from
9    entry of the PAO, at its convenience.

## IV.    APPLICABLE LEGAL STANDARDS

11        "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement
12   of class actions."  *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 U.S. Dist. LEXIS
13   155799, at *13 (N.D. Cal. Nov. 9, 2016) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d
14   1268, 1276 (9th Cir. 1992)).  First, though, the Court must "determine whether a
15   proposed settlement is 'fundamentally fair, adequate and reasonable'" pursuant to
16   Rule 23(e).  *Dalton v. Lee Publ'ns, Inc.*, No. 08-CV-1072-GPC-NLS, 2014 U.S. Dist.
17   LEXIS 148240, at *3 (S.D. Cal. Oct. 17, 2014) (Curiel, J., presiding) (quoting *Staton
18   v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).  "'The initial decision to approve or
19   reject a settlement proposal is committed to the sound discretion of the trial judge.'"
20   *Hart*, 2016 U.S. Dist. LEXIS 155799, at *13 (quoting *Seattle*, 955 F.2d at 1276).

21        The *Manual for Complex Litigation* describes a three-step process for approving
22   a class action settlement: (1) preliminary approval of the proposed settlement;
23   (2) dissemination of notice of the settlement to class members; and (3) a final approval
24   hearing.  *See Manual for Complex Litigation* §21.63 (4th ed. 2004).  "The Court's task
25   at the preliminary approval stage is to determine whether the settlement falls 'within
26   the range of possible approval.'"  *Hart*, 2016 U.S. Dist. LEXIS 155799, at *14
27   (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.
28   2007)).  "The proposed settlement must be 'taken as a whole, rather than the

1   individual component parts' in the examination for overall fairness." *Hart*, 2016 U.S.

2   Dist. LEXIS 155799, at *15 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

3   (9th Cir. 1998)).  "Courts do not have the ability to 'delete, modify, or substitute

4   certain provisions'; the settlement 'must stand or fall in its entirety.'" *Id.* (citing

5   *Hanlon*, 150 F.3d at 1026).

6        The Parties request that the Court take the first and second steps in the

7   settlement approval process by granting preliminary approval and ordering the

8   dissemination of the Class Notices to Class Members.

9   **V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

10

11        **A.    The Settlement Provides a Fair, Adequate, and Reasonable Result for Class Members**

12        "Preliminary approval of a settlement is appropriate if 'the proposed settlement

13   appears to be the product of serious, informed, non-collusive negotiations, has no

14   obvious deficiencies, does not improperly grant preferential treatment to class

15   representatives or segments of the class, and falls within the range of possible

16   approval.'" *Hart*, 2016 U.S. Dist. LEXIS 155799, at *14 (quoting *Tableware*, 484 F.

17   Supp. 2d at 1079).  "The proposed settlement need not be ideal, but it must be fair and

18   free of collusion, consistent with counsel's fiduciary obligations to the class." *See id.*

19   at *14-*15 (citing *Hanlon*, 150 F.3d at 1027).  The Court considers:

20          (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity,

21        and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

22        (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

23        governmental participant; and (8) the reaction of the class members to the proposed settlement.

24   *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004).

25        "Because some of these factors cannot be fully assessed until the Court

26   conducts a final fairness hearing, a full fairness analysis is unnecessary at this stage."[5]

27   _____

28   [5]   Internal quotation marks, citations, and footnotes are omitted, and emphasis is supplied, unless otherwise noted.

1  *Dalton*, 2014 U.S. Dist. LEXIS 148240, at *4-*5. "At the preliminary approval stage,

2  a court need only review the parties' proposed settlement to determine whether it is

3  within the permissible 'range of possible approval' and thus, whether the notice to the

4  class and the scheduling of a formal fairness hearing is appropriate." *Id.* Moreover,

5  because the Class Notices and CAFA Notice have not yet been sent out, the Class

6  Members' reactions and governmental participation are not yet known and, therefore,

7  will be addressed by the Parties in the final approval papers.

8  **1.    Amount Offered in Settlement**

9  The Settlement Amount represents a fair, adequate, and reasonable result for

10  Class Members. "As explained by the Supreme Court, '[n]aturally, the agreement

11  reached normally embodies a compromise; in exchange for the saving of cost and

12  elimination of risk, the parties each give up something they might have won had they

13  proceeded with litigation.'" *Capps v. Law Offices of Peter W. Singer*, No. 15-cv-

14  02410-BAS(NLS), 2016 U.S. Dist. LEXIS 161137 (S.D. Cal. Nov. 21, 2016) (quoting

15  *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). Courts routinely approve

16  settlements that provide a far lower rate of recovery than the Settlement does here.

17  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015)

18  (approving class settlement of 11%-27% recovery); *In re Toyota Motor Corp.*

19  *Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML

20  02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, at *300 (C.D. Cal. July 24,

21  2013) (finding consumer settlement with 42% recovery an "exceptional result");

22  *Castillo v. ADT LLC*, No. 2:15-383 WBS DAD, 2016 U.S. Dist. LEXIS 151423, at

23  *22 (E.D. Cal. Nov. 1, 2016) (33% recovery "well within a reasonable range").

24  Here, based on the total purchases of Class Members in the United States, and

25  depending on the claims rate, Eligible Class Members will receive payments estimated

26  to be half of what they spent on the TU Live Events, less any refunds received.

27  Nearly 6,000 Class Members (net of refunds) purchased the $1,495 3-day Fulfillment

28  seminar, and approximately 1,000 Class Members (net of refunds) purchased an Elite

package, including an in-person mentorship, ranging from $9,995 to $34,995.  *Low* Dkt. 139, Ex. 6, ¶6.d; *Cohen* Dkt. 39-2, Ex. 40, ¶6.d.  With a nearly $21 million Net Settlement Fund, this translates into significant payments to Eligible Class Members whether they purchased the $1,495 3-day Fulfillment, the $34,995 Gold Elite, both, or something in between.  By any metric, this recovery is fair, reasonable, and adequate.

## 2. The Strength of Plaintiffs' Case and the Risk, Expense, and Delay of Further Litigation, and Risk of Decertification

While Plaintiffs are confident in the strength of their class claims, Defendants were confident in their defenses.  Plaintiffs acknowledge the risk that they would be unable to obtain a jury verdict against Defendants, and TU's financial condition meant collecting any judgment against it would be difficult.  Further, Plaintiffs faced the risk that, even if they won on liability in the *Low* Action, they may not persuade the jury that they were entitled to damages.  Even if they prevailed, Class Members faced the risk, expense, and delay of having to litigate their damages individually, which could have taken years.  Even then, Plaintiffs faced the risk of lengthy appeals after the damages proceedings were completed, holding up any recovery for Class Members for several more years.  Finally, there was a possibility that the *Cohen* Action could be stayed during Trump's presidency (or some portion thereof); that the Court would decide to decertify *Cohen* in whole or part, presenting further risks and delays; and that Plaintiffs could not obtain a jury verdict in their favor in *Cohen.*

Accordingly, "Plaintiffs' strong claims are balanced by the risk, expense, and complexity of their case, as well as the likely duration of further litigation."  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374, at *748 (N.D. Cal. Oct. 25, 2016). "Settlement is favored in cases [such as this one] that are complex, expensive, and lengthy to try."  *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)).  Thus, these risk and delay factors support approval of the Settlement.

### 3. The Extent of Discovery Completed, and the Stage of the Proceedings

Where, as here, extensive discovery was taken, the parties thoroughly litigated the various issues, and trial is near "weigh[] in favor of the proposed settlement." *Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP (OPx), 2010 U.S. Dist. LEXIS 78342, at *13 (C.D. Cal. July 6, 2010). The Parties took extensive discovery for four years, and the Court ruled on multiple motions for class certification and summary judgment in the Actions. *Low* Dkts. 298, 423; *Cohen* Dkts. 53, 268. The Parties were days from delivering their opening statements at the liability phase of trial in *Low*. Thus, as in *Cervantez*, this factor weighs strongly in favor of approving the proposed Settlement. *See* 2010 U.S. Dist. LEXIS 78342, at *13.

### 4. The Experience and Views of Counsel

"The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 U.S. Dist. LEXIS 120841, at *14-*16 (D. Nev. Oct. 28, 2010) (citing *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)). "'The weight accorded to the recommendation of counsel is dependent on a variety of factors; namely, length of involvement in litigation, competence, experience in the particular type of litigation, and the amount of discovery completed.'" *Id.* (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002)).

Plaintiffs and Class Members are represented by Robbins Geller Rudman & Dowd LLP ("RGRD"), a leading class action firm which has achieved landmark results in large, complex class actions. *See, e.g.*, www.rgrdlaw.com/firm.html (last visited on Dec. 16, 2016); *Riker*, 2010 U.S. Dist. LEXIS 120841, at *15 (finding plaintiffs' counsel had distinguished record in practice area). Zeldes Haeggquist & Eck ("ZHE") is an experienced plaintiffs' class action firm in San Diego. *See* http://zhlaw.com/about (last visited on Dec. 16, 2016). Class Counsel believe that the

Settlement provides a fair, adequate, and reasonable recovery for Class Members. As Class Counsel are experienced attorneys in this field, their opinion that the Settlement is fair, adequate, and reasonable for Class Members also weighs in favor of approval of the Settlement. *Riker*, 2010 U.S. Dist. LEXIS 120841, at \*16.

### B.   Class Counsel Are Providing Their Years of Services *Pro Bono*

Class Counsel are providing their years of legal services to Plaintiffs and the Class on a *pro bono* basis. Class Counsel will not apply for any attorneys' fees or litigation expenses from the common fund. *See, e.g.*, *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016) ("In the absence of a contractual or statutory basis for awarding fees, the district court may award reasonable fees as a matter of federal common law when class counsel has recovered a common fund."). Instead, Class Counsel will forego payment in order to maximize the recoveries for former TU students. Similarly, Class Counsel will forgo payment of their litigation expenses, including the costs of sixty-five depositions, experts, legal research, and much more. The fact that Class Counsel are not receiving any attorneys' fees or expenses from these Actions is further evidence that there was no collusion, and that Class Counsel are representing the best interests of Class Members in this Settlement.

### C.   The Settlement Provides the Best Class Notice Practicable

The second step of the approval process is to disseminate notice about the settlement to the class. *See Manual for Complex Litigation*, *supra*, at §21.63. Class members must receive the best notice practicable about the settlement, *see* Fed. R. Civ. P. 23(c)(2), which means notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards

1   imposed by due process." *Capps*, 2016 U.S. Dist. LEXIS 161137, at \*26 (quoting

2   *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975)).

3      Here, Class Counsel will provide the Settlement Administrator with the most

4   current list of names, email addresses, and physical addresses of Class Members based

5   on Defendants' records, student inquiries, the Notice Administrator's updated records

6   from the Notice of Pendency, and inquiries made to the NYAG.  The Settlement

7   Administrator will then mail and email the Long-form Notice and Claim Form to all

8   known Class Members. ¶¶II.8, 9, 23.  The Long-form Notice directs Class Members

9   to the Settlement Website, where they can find Settlement-related documents,

10   including the Agreement, Long-form Notice, Claim Form, the PAO, and other

11   documents.  ¶V.5.  The Settlement Administrator will also publish the Summary

12   Notice in the national edition of USA Today.  ¶II.48.  Finally, Class Counsel will post

13   the Long-form Notice and Claim Form on their websites.  ¶VII.2.

14      The Class Notice plan described in the Agreement and PAO is consistent with

15   what this Court previously found to satisfy Due Process for purposes of the Notice of

16   Pendency.  *See Low* Dkt. 419 at 9-11; *Cohen* Dkt. 130 at 9-11.  In fact, the Class

17   Notices here are superior because the Settlement Administrator will mail and email

18   (where possible) all known Class Members the full, detailed Long-form Notice; Class

19   Counsel and the Notice Administrator have updated the contact information for

20   hundreds of Class Members; and national press attention has increased awareness by

21   Class Members about the status of these Actions and the Settlement relief available.

22      Further, the proposed Class Notices are plain and easily understood, consistent

23   with the guidelines set forth by the Federal Judicial Center.  *See* http://www.fjc.gov/

24   (last visited on Dec. 12, 2016).  The Class Notices provide neutral, objective, and

25   accurate information about the nature of the Actions and the Settlement. *See id.*  The

26   Class Notices describe the claims, the Class Members, the relief provided under the

27   Settlement, and Class Member's rights and options, including the deadlines and means

28

1   of submitting a Claim Form, objecting, and/or appearing at the Final Approval

2   Hearing personally or through counsel.  *See id*.

3       The Parties submit that the Class Notices provide the best notice practicable

4   under the circumstances and will be highly effective in reaching the Class Members.

5       **D.    Class Members Already Had an Opportunity to Opt Out**

6       As described above, Class Members will have an opportunity to submit a Claim

7   Form or to object to the Settlement.  However, there will not be a second opportunity

8   to opt out because the Court previously ordered the dissemination of individual notice

9   to reasonably-identifiable Class Members and ample opportunity to opt out.

10      In the Ninth Circuit, members of a Rule 23(b)(3) class need not be given a

11  second chance to opt out at the settlement stage.  *See Officers for Justice v. Civil Serv.*

12  *Comm'n*, 688 F.2d 615, 623 (9th Cir. 1982); *cf. Ridgeway v. Wal-Mart Stores, Inc.*,

13  No. 08-cv-05221-SI, 2016 U.S. Dist. LEXIS 116748, at *12 (N.D. Cal. Aug. 30,

14  2016) (distinguishing *Officers for Justice* as holding that class members need not be

15  given a second opportunity to opt out after the opt-out deadline to avoid a settlement

16  agreement); *see also* Fed. R. Civ. P. 23(e)(4) (courts have discretion whether to

17  approve a settlement without a second opportunity to opt out).

18      Though class members must be given an opportunity to object to a class action

19  settlement, they need not be given a second opportunity to opt out of the class:

20      All named plaintiffs and class members were given the opportunity to
        exclude themselves from the class.  Byrd did not. His argument amounts
21      to a request to now exercise that option once passed over, and after being
        fully informed of the terms of the settlement.  Although some class
22      action settlements have provided such an opt-out feature, they are
        unusual and probably result from the bargaining strength of the class
23      negotiators.  Nevertheless, ***we have found no authority of any kind***
        ***suggesting that due process requires that members of a Rule 23(b)(3)***
24      ***class be given a second chance to opt out.  We think it does not.*** Byrd's
        rights are protected by the mechanism provided in the rule: approval by
25      the district court after notice to the class and a fairness hearing at which
        dissenters can voice their objections, and the availability of review on
26      appeal. Moreover, to hold that due process requires a second opportunity
        to opt out after the terms of the settlement have been disclosed to the
27      class would impede the settlement process so favored in the law.

28  *Officers for Justice*, 688 F.2d at 634-35.

On September 21, 2015, the Court ordered a joint Notice of Pendency to be disseminated to all Class Members in these Actions—the same Class Members included in the Settlement, providing them with an opportunity to "opt-out." *Low* Dkt. 419 at 10-11; *Cohen* Dkt. 130 at 10-11.  In its order, the Court explicitly ordered that "[a]ny Class Member who does not send a completed, signed request for exclusion to the Notice Administrator post-marked on or before the Opt-Out Deadline will be deemed to be a Member of the Class *for all purposes and bound by all further orders and judgments of the Court*." *Low* Dkt. 419 at 10-11; *Cohen* Dkt. 130 at 10-11.  On November 16, 2015, the Opt-Out Deadline expired in both Actions in accordance with the Court's September 21, 2015 order.  *See Low* Dkt. 419 at 11; *Cohen* Dkt. 130 at 10.  Ten (10) former students submitted timely opt-out requests, and three (3) others submitted late opt-out requests, which were granted by the Court as recently as September 21, 2016.  *See, e.g.*, *Cohen* Dkt. 278.

The Court has provided Class Members with individual notice of these Actions, ample opportunity to opt out, and an explicit warning that failure to opt out would mean that they would be deemed a Class Member for all purposes and that all future orders and judgments would be binding on them.  Thus, as in *Officers of Justice*, Class Members need not be given a second opportunity to opt out at the settlement stage.

## VI.   THE PARTIES' PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Final Approval Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(3).  *See Manual for Complex Litigation*, *supra*, at §21.63.

The Parties have submitted a proposed PAO concurrently with this joint motion, pursuant to Local Civil Rule 7.2(c), setting forth the proposed schedule of events from here through final approval.  The Parties believe that the Court may enter the PAO without the need for a hearing, unless the Court has questions, given that the Court will hold a Final Approval Hearing once Class Members weigh in.

Specifically, the Parties propose the following schedule:

| Settlement Amount Due Date | January 18, 2017 |
|---|---|
| Deadline for commencing the mailing of the Long-form Notice and Claim Form and publishing the Summary Notice | 15 calendar days after entry of the PAO |
| Deadline for filing a final approval motion and application for Service Awards | 60 calendar days after entry of the PAO |
| Deadline for submitting Claim Forms | 75 calendar days after entry of the PAO |
| Deadline for objecting to the Settlement | |
| Deadline for filing a reply in support of final approval and Service Awards; deadline for Settlement Administrator declaration | 7 calendar days before Final Approval Hearing |
| Final Approval Hearing | Approximately 100 calendar days after entry of the PAO, at the Court's convenience |

The Parties respectfully submit that this proposed schedule complies with Rule 23 and CAFA, while securing the recoveries for Class Members in a timely fashion.

## VII.   CONCLUSION

The Parties respectfully request that the Court grant their motion for preliminary approval and enter an order substantially in the form of their proposed PAO, which is Exhibit A to the Agreement.

DATED:  December 19, 2016          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
X. JAY ALVAREZ
JASON A. FORGE
RACHEL L. JENSEN
DANIEL J. PFEFFERBAUM
BRIAN E. COCHRAN
JEFFREY J. STEIN


                    s/ Rachel L. Jensen
                  RACHEL L. JENSEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
AARON M. OLSEN
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Class Counsel

DATED:  December 19, 2016

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
DAVID MARROSO
DAVID L. KIRMAN


              s/ Daniel M. Petrocelli
            DANIEL M. PETROCELLI

1999 Avenue of the Stars
Los Angeles, California 90067–6035
Telephone:  310/ 553-6700
310/246-6779 (fax)

JILL A. MARTIN
c/o TRUMP NATIONAL GOLF CLUB
One Trump National Drive
Rancho Palos Verdes, CA 90275
Telephone:  310/202-3225
310/265-5522 (fax)

Attorneys for Defendants
DONALD J. TRUMP and
TRUMP UNIVERSITY, LLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 19, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 19, 2016.

s/ Rachel L. Jensen
RACHEL L. JENSEN

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  rachelj@rgrdlaw.com

## Mailing Information for a Case 3:10-cv-00940-GPC-WVG Low v. Trump University, LLC et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Wallace Moore Allan**
  tallan@omm.com

- **Xavier Jay Alvarez**
  jaya@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian E. Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Patrick J Coughlin**
  patc@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanm@rgrdlaw.com

- **Amber Lee Eck**
  ambere@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Jason A Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jeffrey L. Goldman**
  jgoldman@bbwg.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com,winkyc@zhlaw.com,nadiak@zhlaw.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,lmix@rgrdlaw.com,llendzion@rgrdlaw.com,e_file_sd@rgrdlaw.com,hbrown@rgrdlaw.com,mbacci@rgrdlaw.com,JayA@rgrdlaw.com,

- **David Lee Kirman**
  dkirman@omm.com,awyman@omm.com,tmoore@omm.com,iyanniello@omm.com,hleewong@omm.com,sbrown@omm.com

- **David Marroso**
  dmarroso@omm.com

- **Jill Ann Martin**
  jmartin@trumpnational.com,lvincent@trumpnational.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Maureen E. Mueller**
  mmueller@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Aaron M. Olsen**
  aarono@zhlaw.com,winkyc@zhlaw.com

- **Daniel M. Petrocelli**
  dpetrocelli@omm.com

- **Daniel Jacob Pfefferbaum**
  dpfefferbaum@rgrdlaw.com

- **Jeffrey J. Stein**
  JStein@rgrdlaw.com

- **Helen Irene Zeldes**
  helenz@zhlaw.com,winkyc@zhlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)