Gary B. Friedman (NY Bar Reg. 2205466) *
Attorney at Law
154 Grand Street, 5th Floor
New York, NY 10013
Telephone: (917) 568-5024
gfriedman@flgllp.com

Andrew G. Celli, Jr. (NY Bar Reg. 2434025)*
Ilann M. Maazel (NY Bar Reg. 2899425)*
EMERY CELLI BRINCKERHOFF + ABADY
  LLP
600 Fifth Avenue
New York, NY 10020
(212) 763-5000
acelli@ecbalaw.com
imaazel@ecbalaw.com

*not admitted in S.D. Cal.; pro hac vice application forthcoming

Edward S. Zusman (SBN 154366)
Kevin K. Eng (SBN 209036)
MARKUN ZUSMAN
  FRENIERE & COMPTON LLP
465 California Street, Suite 401
San Francisco, CA 94104
Telephone: (415) 438-4515
Facsimile: (415) 434-4505

Attorneys for Nonparty Class Member and Objector Sherri B. Simpson

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONNY LOW, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>TRUMP UNIVERSITY LLC　and DONALD J. TRUMP,<br><br>　　　　　Defendants. | Case No. 3:10-cv-0940-GPC-WVG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON TO PROPOSED CLASS ACTION SETTLEMENT**<br><br>Date:　　　March 30, 2017<br>Time:　　　1:00 p.m.<br>Courtroom: 2D<br>　　　　　Hon. Gonzalo P. Curiel<br><br>[Caption continued on next page] |

| | |
|---|---|
| ART COHEN, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP,<br><br>Defendant | No. 3:13-cv-02519-GPC-WVG |

Case No. 3:10-cv-0940-GPC-WVG

**MEMORANDUM IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................... 1

FACTUAL BACKGROUND...................................................................... 1

ARGUMENT ............................................................................................. 5

    I.    THE PROPOSED SETTLEMENT VIOLATES THE DUE PROCESS RIGHTS OF ABSENT CLASS MEMBERS TO OPT OUT OF A DAMAGES CLASS ACTION ........................................ 5

    II.    THE COURT SHOULD REQUIRE A SETTLEMENT-STAGE OPT-OUT OPPORTUNITY UNDER FED. R. CIV. P. 23(e)(4) ... 6

CONCLUSION ....................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Dare v. Knox Cty.*,
   457 F. Supp. 2d 52 (D. Me. 2006) ............................................................................ 7

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ..................................................................................... 7

*Gooch v. Life Inv'rs Ins. Co. of Am.*,
   672 F.3d 402 (6th Cir. 2012) .................................................................................... 9

*Hainey v. Parrott*,
   617 F. Supp. 2d 668 (S.D. Ohio 2007) ..................................................................... 7

*In re Auto. Refinishing Paint Antitrust Litig.*,
   2004 U.S. Dist. LEXIS 29163 (E.D. Pa. 2004) ....................................................... 7

*Litwin v. iRenew Bio Energy Sols., LLC*,
   226 Cal. App. 4th 877 (2014) ................................................................................... 5

*Maywalt v. Parker & Parsley Petrol. Co.*,
   67 F.3d 1072 (2d Cir. 1995) ..................................................................................... 5

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................................. 5

*Olden v. LaFarge Corp.*,
   472 F. Supp. 2d 922 (E.D. Mich. 2007) ................................................................... 8

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797, 105 S. Ct. 2965 (1985) ................................................................. 5, 6

*Rodriguez v. Taco Bell Corp.*,
   2013 U.S. Dist. LEXIS 156588 (E.D. Cal. 2013) .................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541 (2011) ................................................................. 5, 6

## OTHER AUTHORITIES

2003 Adv. Comm. Notes to Rule 23, subd. (e)(3) .......................................................... 7

American Law Institute, Principles of Aggregate Litigation, §3.11
   (2010) ........................................................................................................................ 8

Jeanette Cox, *Information Famine, Due Process, And The Revised
Class Action Rule: When Should Courts Provide A Second
Opportunity To Opt Out?*, 80 Notre Dame L. Rev. 377, 401 (2004) ................... 8

Mark C. Weber, *A Consent-Based Approach to Class Action*

*Settlement: Improving* Amchem Products, Inc. v. Windsor, 59 Ohio
St. L.J. 1155, 1193-1213 (1998)......................................................................... 8

**<u>RULES</u>**

FED. R. CIV. P. 23................................................................................... 6, 7, 8, 10

**<u>TREATISES</u>**

18A Wright & Miller, Federal Practice and Procedures § 4455 (2010) ................... 9

## Preliminary Statement

Sherri B. Simpson, a class member, objects to the proposed Class Action Settlement. The Settlement Agreement violates the class members' due process-protected rights to seek exclusion from the Settlement – rights that the class members retained under the express terms of the 2015 Class Notice. As approved by the Court, the 2015 Class Notice promised the class member that, if she chose to remain in the class rather than opting out, and if the parties later settled out of court, the class member would be afforded an opportunity to "ask to be excluded from any settlement." 2015 Class Notice, Ex. 1 to the accompanying Declaration of Gary B. Friedman, at 6, § 13. The proposed Class Action Settlement impermissibly extinguishes the ability of class members to seek exclusion from the settlement.

Further, under Federal Rule of Civil Procedure 23(e)(4), this Court should "refuse to approve [the] settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." The rule is designed for precisely this situation: there were no settlement terms on the table at the expiration of the 2015 opt-out period, much less a broad release covering claims that could not have been brought in these class actions.

## Factual Background

Donald Trump defrauded Sherri Simpson. She trusted Trump when he told her that she could learn the "secrets" of his real estate investing success studying under professionals that Trump himself had personally "hand-picked" to deliver "Ivy League quality" instruction at his "university." Declaration of Sherri B. Simpson, dated March 2, 2017, at ¶ 3. It was expensive, to be sure: up to $35,000 for the Gold Elite course. *Id.* But it was a rare opportunity. She would receive "unlimited personal mentoring" for a year, direct from the apostles of the master. *Id.*; *see e.g.*, Pltfs. Mem. ISO Class Cert., *Cohen* Dkt. 39-1 at 9-12.

When Sherri Simpson signed up for the seminars, she did not understand Donald Trump to be a mendacious huckster. She believed him. If she hadn't, she would not have paid tens of thousands of dollars in a bid to improve her life. And yet, there were no hand-picked instructors. There was no mentoring. There were no materials at all that one couldn't have just grabbed off the internet. It was pure flim-flam – a hoax, a scam. There were "instructors" who cajoled their students to increase their credit card limits – ostensibly to improve their credit ratings, but really (and transparently) to enroll them in more, and increasingly expensive, Trump University programs. Simpson Decl., ¶¶ 4, 5. In due course, Ms. Simpson saw that she had been victimized, and she felt violated and humiliated. So she called and wrote Trump University, demanding her money back. But she got no response. *Id.*, ¶ 5.

Ms. Simpson then met with a lawyer to file suit on her behalf. *Id.* But before filing, she learned of the pendency of the instant class case and, upon investigating, decided against initiating litigation of her own. *Id.* Ever since, she has been an attentive and interested class member, monitoring proceedings and occasionally speaking by phone with Class Counsel.

Over the ensuing years, from the perspective of an absent class member such as Ms. Simpson, the case proceeded very well. Class Counsel prosecuted the case with vigor, performing excellent work. In February 2014, this Court certified the class in *Low* (for the most part)[1] and, in October 2014, it certified the nationwide and overlapping class in *Cohen*. See Joint Mem. ISO Prelim. Approval, *Low* Dkt. 583 at 2-3. And then, in September 2015, the Court approved the terms of a Long Form Notice, drafted and submitted by Class Counsel, advising class members that the classes had been certified (the "2015 Class Notice," Friedman Decl., Ex. 1).

---

[1] The Court declined to certify certain claims for class treatment, including claims for common law fraud. *Low* Dkt. 298. And subsequent to the class certification decision, but before the class notice was distributed, the Court partially decertified the *Low* class, leaving all damages to be proven on an individual non-class basis *Low,* Dkt. 418.

1 | The 2015 Class Notice advised class members: "You have to decide whether to stay in the Classes or ask to be excluded before the trial, and you have to decide this now." Friedman Decl., Ex. 1 at 6. It explained that, if "if you do exclude yourself," then "you can start or continue your own lawsuit against Trump University and Trump regarding their Live Events." *Id.* at § 14. On the other hand, it explained, "[b]y doing nothing" you "stay in the classes," and will "be legally bound by all of the Orders and judgments the Court makes in these class actions." *Id.* at § 13.

Nonetheless – and most relevant for present purposes – the 2015 Class Notice provided that, if there is a future settlement of the case, then the class member will receive another notice that will tell her how to request exclusion from that settlement at that time. In the section entitled "*What If I Do Nothing?*" the 2015 Class Notice provides in relevant part: "If you stay in, and the Plaintiffs obtain money or benefits, either as a result of the trial or a settlement, you will be notified about how to obtain a share (or how to **ask to be excluded from any settlement**)." Friedman Decl., Ex. 1 at 6, § 13 (emphasis added). In other words, the 2015 Class Notice unequivocally informed the class member that she will be allowed to submit a request for exclusion come settlement time.

The 2015 Class Notice was distributed in the Fall of 2015 and, on November 16, 2015, the opt-out deadline expired in both class cases. *Low* Dkt. 419 at 11; *Cohen* Dkt. 130 at 10. From the point of view of class members such as Ms. Simpson, there was precious little reason to exercise the right to opt out at that juncture. The case was barreling towards trial, by all accounts. The plaintiffs' lawyers were obtaining excellent results, having prevailed against hotly litigated dispositive motions. And, if the case were to settle down the road, the class member could rest assured that she would be afforded the opportunity to "ask to be excluded from any settlement" at that point.

3           Case No. 3:10-cv-0940-GPC-WVG

**MEMORANDUM IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON**

And sure enough, only ten people did opt out by the deadline, plus three more whom the Court permitted to file late opt-out notices. Joint Mem., Dkt 583 at 9. Moreover, even this tiny handful of opt-outs apparently consisted in large part of supporters of Mr. Trump, who did not wish to be associated with litigation against him.[2] In any event, none have initiated litigation on their own, to the best knowledge of Ms. Simpson and her counsel.

On November 8, 2016, defendant Trump was elected President of the United States. Ten days later, and shortly before the scheduled commencement of trial in the *Low* action, the parties reached a tentative settlement. Joint Mem., Dkt. 583 at 4. On December 19, 2016, the proposed Settlement Agreement was finalized and executed. The Court granted preliminary approval of the Settlement the following day and directed class notice. *Low* Dkt. 584 & *Cohen* Dkt. 282. On January 4, 2017, the settlement administrator mailed notice of the settlement and claim forms to potential class members (the "2017 Class Notice"). See Joint Mem. ISO Final Approval, *Low* Dkt. 589-1 at 2.

For purposes of the instant Objection, the pertinent term of the Settlement Agreement is located in ¶ VII.1: "the Parties agree that no new opportunity to opt out will be provided as part of this Settlement." *Cohen* Dkt. 281-1 at 21. In the Joint Memorandum seeking preliminary settlement approval, the settling parties seek to justify the no opt-out provision of ¶ VII.1 by arguing that the absent class members had "ample opportunity" to opt out in response to the 2015 Class Notice, *Low* Dkt. 583 at 6, 14. And, they argue, courts are not *required* to permit a second opt-out opportunity under Ninth Circuit law and Rule 23(e)(4). *Id* at 14.

What the Joint Memorandum does not mention is that the 2015 Class Notice assured class members that, if the case settles out of court, the class member may "ask to be excluded from any settlement." The Joint Memorandum quotes liberally

---

[2] Several of the opt-outs provided testimony on behalf of Mr. Trump, including Meena Mohan and Paul Cranup. See e.g., *Cohen* Dkt. 180-2 at Exs. 12, 16; *Cohen* Dkt. 154-1; *Low* Dkt. 430-1.

4     Case No. 3:10-cv-0940-GPC-WVG

**MEMORANDUM IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON**

from the 2015 Class Notice, *id.* at 15, but it never brings to the attention of the Court the unequivocal assurance the 2015 Class Notice gave class members that they would have a new opportunity to submit a request for exclusion in the event of a settlement.

# ARGUMENT

## I. THE PROPOSED SETTLEMENT VIOLATES THE DUE PROCESS RIGHTS OF ABSENT CLASS MEMBERS TO OPT OUT OF A DAMAGES CLASS ACTION

The opt-out right is what makes damages class actions constitutionally permissible. The damages claims of absent class members are *choses in action*; they are property rights. Before any such property right may be extinguished, the absent class member is entitled to due process. As for what process is due, the Supreme Court has established a solid floor. The absent class member is entitled, at a minimum, to adequate notice and the right to opt out. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363, 131 S. Ct. 2541, 2559 (2011) ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965 (1985) ("due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.")

The notice to which the class member is entitled is accurate notice, "actually informing the absentee" of her rights and options – a "mere gesture" will not do. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In the class action context, "[d]ue process requires that the notice to class members fairly apprise the … members of the class of the terms of the proposed settlement and of the options that are open to them." *Maywalt v. Parker & Parsley Petrol. Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995); see *Litwin v. iRenew Bio Energy Sols., LLC*, 226

Cal. App. 4th 877, 879 (2014) (where class notice "does not fairly apprise class members of their options associated with the settlement," it "violate[s] class members' due process rights, [and an] order granting final approval of the settlement ha[s] to be reversed.")

Measured against these standards, the proposed Settlement violates due process. The no-opt out provision of Settlement Agreement ¶ VII.1 robs class members of their right to request exclusion. The class members' right to submit a request for exclusion was not extinguished by the 2015 Class Notice. It was modified. The 2015 Class Notice provided that the class member's right to request exclusion would expire in November 2015 *but*, in the event the parties settle out of court, the 2015 Class Notice explicitly provided that "you will be notified about … how to ask to be excluded from any settlement."

The parties did settle out of court and a new notice, the 2017 Class Notice, was sent. But the 2017 Class Notice does not provide a mechanism for requesting exclusion. It does not "notif[y] [members] about … how to ask to be excluded from any settlement," as promised by the 2015 Class Notice. To the contrary, the 2017 Class Notice and Settlement Agreement purport to *extinguish* the class members' right to be excluded from the settlement.

Accordingly, class members were denied constitutionally adequate notice of their opt-out rights. And they were deprived of their constitutionally protected right to opt out, under *Shutts* and *Dukes*. For these reasons, the proposed Class Settlement should be rejected.

## II. THE COURT SHOULD REQUIRE A SETTLEMENT-STAGE OPT-OUT OPPORTUNITY UNDER FED. R. CIV. P. 23(e)(4)

Separate and apart from the constitutional imperative to reject the settlement on the grounds that class members have been deprived of adequate notice and opportunity to request exclusion, this Court should exercise its discretion to require a settlement-stage opt-out opportunity, under Rule 23(e)(4).

6     Case No. 3:10-cv-0940-GPC-WVG
**MEMORANDUM IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON**

Rule 23(e)(4) provides: "If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." The Advisory Committee notes explain the driving principle: "A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known." 2003 Adv. Comm. Notes to Rule 23, subd. (e)(3) (since renumbered as (e)(4)). As factors informing the exercise of the court's discretion, the Advisory Committee cites "changes in the information available to class members since expiration of the first opportunity to request exclusion, and the nature of the individual class members' claims." *Id.*

The key question under Rule 23(e)(4) is whether the proposed settlement represents material new information. Typically, in cases where the court rejects a second opt-out, it is because the basic settlement terms were known at the time of the initial opt out election. *See, e.g., Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("the original notice informed all class members of the basic settlement terms… An additional opt-out period is not required with every shift in the marginal attractiveness of the settlement"); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("a second opt-out period is not warranted. The terms of the settlement agreement have not changed appreciably since notice of the settlement was provided and the expiration of the original opt-out period"); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 U.S. Dist. LEXIS 29163, at *8-9 (E.D. Pa. 2004) ("We are aware of no significant developments since the original opt-out [and proposed settlement] that would require us to provide for a second opt-out period.")

On the other hand, where there has previously been no settlement, the logic behind Rule 23(e)(4) strongly supports a second opt-out period. *See, e.g., Dare v. Knox Cty.*, 457 F. Supp. 2d 52, 53 (D. Me. 2006) (applying (e)(4) to reject damages

**MEMORANDUM IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON**

settlement that "does not provide for a second opportunity" to opt out because, prior to the settlement, class members couldn't know the "elements of the proposed settlement," including "the breadth of" the claims "covered by the settlement" or its release provision); see generally, *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 935 (E.D. Mich. 2007) ("Allowing individuals who would otherwise be bound by a settlement agreement a second opportunity to exclude themselves is not unfair; in fact, it is encouraged by Rule 23(e)(3)").

Commentators agree. The American Law Institute argues that courts should apply "a presumption in favor of the second opt-out and require[e] on-the-record findings where a second opt-out is not provided for class members." American Law Institute, Principles of Aggregate Litigation, §3.11 (2010). And as Professor Jeanette Cox has observed, due process is universally understood to require detailed notice of settlement terms to ensure an informed opt-out right in a settlement-only class. Jeanette Cox, *Information Famine, Due Process, And The Revised Class Action Rule: When Should Courts Provide A Second Opportunity To Opt Out?*, 80 Notre Dame L. Rev. 377, 401 (2004). Why should it require any less just because a class was earlier certified? *Id.* See Mark C. Weber, *A Consent-Based Approach to Class Action Settlement: Improving* Amchem Products, Inc. v. Windsor, 59 Ohio St. L.J. 1155, 1193-1213 (1998) ("it is incorrect to assume that the willingness to accept representation by the class representative and her attorney constitutes willingness to settle on whatever terms they arrange… [A] fairness determination by the district judge… is no substitute for individual choice").

In any event, the circumstances in the instant case provide the most compelling possible basis for allowing settlement-stage opt out under Rule 23(e)(4). <u>First</u>, there simply was no settlement at all, and no prospective settlement terms on the table, at the time the initial opt-out period expired.

<u>Second</u>, the 2015 Class Notice assured class members they would have an opportunity to request exclusion from the settlement, as discussed above. That

8    Case No. 3:10-cv-0940-GPC-WVG

**MEMORANDUM IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON**

assurance would reasonably induce some class members to expect a settlement-stage opt out opportunity. And the foreclosure of that opportunity, in Settlement Agreement ¶ VII.1, marks a hugely material change in the information available to class members.

Third, in the *Low* case in particular, there was virtually no reason for an absent class member to opt out in response to the 2015 Class Notice. In its partial decertification decision (*Low* Dkt. 418), the Court ruled that the class action in *Low* would proceed on liability issues only; for damages, each class member would proceed separately. At most, then, the class case would establish liability – which greatly diminishes the incentives for any class member to opt out.

Fourth, the Settlement Agreement releases Trump for liability on claims that the class could not have brought in the class action and which, as a consequence, each class member could have brought on his own even after a trial on the merits in the class action. In certifying the *Low* class, the Court held that common law fraud claims under Florida law, among other claims, could not be maintained on a class basis. *Low* Dkt. 298 at 29-31. For that reason, if the class actions had proceeded to trial, a class member such as Ms. Simpson would not have been barred under principles of res judicata, or the subsidiary doctrine against claim splitting, from pursuing a fraud claim against Trump under Florida law: "Pursuant to the same general principle that claim preclusion does not apply to matters that could not be advanced in a prior action, individual actions remain available to pursue any other questions that were expressly excluded from the class action." 18A Wright & Miller, Federal Practice and Procedures § 4455 (2010); see, *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 428 n.16 (6th Cir. 2012) ( "a class action, of course, is one of the recognized exceptions to the rule against claim-splitting") (quotations omitted); *Rodriguez v. Taco Bell Corp.*, 2013 U.S. Dist. LEXIS 156588, at *8-9 (E.D. Cal. 2013) (the "the claim splitting doctrine does not extinguish a subsequent claim when the plaintiff[s] [were] unable to present the claim in the prior [class]

**MEMORANDUM IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON**

action, such as where there are .. restrictions on their authority to entertain multiple theories or demands for multiple remedies.") The fact that the broad Settlement release would cover even the fraud claim that Ms. Simpson would have otherwise retained, even after a trial in *Low*, likewise marks a material change in the available information, and militates strongly in favor of the opportunity for exclusion.[3]

Rule 23(e)(4) was adopted for a reason. While district courts have broad discretion whether to apply the (e)(4) procedure, such discretion is never unlimited. And once we accept that there are *some* outer limits on a court's discretion to refuse a settlement-stage opportunity to opt out, then it is clear that Rule 23(e)(4) must be applied in this case. If this case does not demand application of Rule 23(e)(4), it is difficult to understand what would.

CONCLUSION

Class counsel has achieved a laudable result and many victims of Donald Trump's frauds may justifiably be satisfied. If the Settlement indeed represents 50 cents on the dollar of loss, as has been reported, it is certainly a beneficial settlement by the standards of class actions. But there is no principle of law or fairness that requires Sherri Simpson to accept 50 cents on the dollar. What Ms. Simpson seeks is her day in court, at which she will press for the complete vindication of all her rights, including her full damages plus punitive damages and injunctive relief. Due process guarantees her the autonomy to pursue these goals.[4]

For all the foregoing reasons, class member and objector Sherri B. Simpson respectfully requests that this Court reject the Class Action Settlement, unless and

---

[3] Concededly, if the class plaintiffs went to trial and lost, it is possible that principles of *issue* preclusion, or collateral estoppel, would doom the subsequent fraud suit. But if plaintiffs prevailed, even partially, the subsequent claim would be unimpeded by principles of res judicata and claim-splitting.
[4] In the exercise of caution, Ms. Simpson has also submitted the claim form that was distributed along with the 2017 Class Notice. That Notice provides that persons who do not complete the claim form by March 6, 2017 will be deemed to have forfeited their interests in the settlement fund. In the event this objection were denied, Ms. Simpson does not wish to have forfeited her interests in the settlement funds.

**MEMORANDUM IN SUPPORT OF OBJECTION OF SHERRI B. SIMPSON**

until the class members are afforded the opportunity to "ask to be excluded from [the] settlement."

|  |  |
|---|---|
|  | Respectfully submitted, |
| March 3, 2017 | GARY B. FRIEDMAN |
|  | s/ Gary B, Friedman<br>154 Grand Street, 5th Floor<br>New York, NY 10013<br>Telephone: (917) 568-5024<br>gfriedman@flgllp.com<br>(*pro hac vice* application pending) |
|  | Andrew G. Celli, Jr. (NY Bar Reg. 2434025)*<br>Ilann M. Maazel (NY Bar Reg. 2899425)*<br>EMERY CELLI BRINCKERHOFF + ABADY LLP<br>600 Fifth Avenue<br>New York, NY 10020<br>(212) 763-5000<br>acelli@ecbalaw.com<br>imaazel@ecbalaw.com<br>*Not admitted in S.D. Cal.; motion for pro hac vice admission forthcoming* |
|  | Edward S. Zusman (SBN 154366)<br>Kevin Eng (SBN 209036)<br>MARKUN ZUSMAN FRENIERE COMPTON LLP<br>465 California Street, Suite 500<br>San Francisco, CA 94104<br>Telephone: (415) 438-4515<br>keng@mzclaw.com |
|  | Attorneys for Sherri B. Simpson |